# Exhibit 61



Case 2:04-cv-09049-SGL-RNB     Document 4992     Filed 03/10/2009     Page 1 of 31

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:  213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,                   **Consolidated with**
                                           **Case No. CV 04-09059**
14        v.                               **Case No. CV 05-2727**

15   MATTEL, INC., a Delaware             **PHASE II DISCOVERY MATTER**
     corporation,
16                                         **ORDER NO. 3, REGARDING:**
              Defendant.
17                                            **(1)  MOTION OF MGA**
18                                            **ENTERRTAINMENT, INC.,**
                                              **ISAAC LARIAN AND MGA**
19                                            **ENTERTAINMENT (HK)**
                                              **LIMITED TO QUASH**
20                                            **NON-PARTY SUBPOENAS; and**

21                                            **(2)  MOTION OF MATTEL, INC.**
22                                            **TO COMPEL PRODUCTION OF**
                                              **DOCUMENTS RESPONSIVE TO**
23                                            **THE SAME NON-PARTY**
                                              **SUBPOENAS**
24
     ┌─────────────────────────────┐
25   │ CONSOLIDATED WITH            │
     │ MATTEL, INC. v. BRYANT and   │
26   │ MGZ ENTERTAINMENT, INC. v.   │
     │ MATTEL, INC.                 │
27   └─────────────────────────────┘

28

ARENT FOX LLP                         1                    ORDER NO. 3
ATTORNEYS AT LAW                                 [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT ___61___

PAGE ___745___

1   This Order sets forth the Discovery Master's ruling on: (1) the motion of
2   MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited
3   (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]
4   and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of
5   documents responsive to the same non-party subpoenas [Docket Numbers 4769 and
6   4788] (collectively, the "Motions").

7   The Motions came on regularly for hearing before the Discovery Master on
8   March 4, 2009. All interested parties were represented by counsel and afforded the
9   opportunity to present oral argument on the Motions. The Discovery Master,
10  having considered the papers filed in support of and in opposition to the Motions,
11  and having heard oral argument thereon, rules as set forth below.

12  **I.    INTRODUCTION**

13

14  **A.    The Court's February 11, 2009 Ruling**

15  On February 11, 2009, the Court heard oral argument on various motions
16  filed by the parties. During the proceedings, counsel took the opportunity to orally
17  request clarification by the Court regarding whether the parties' respective motions
18  relating to the subpoenas served by Mattel on various entities allegedly related to
19  MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's
20  prior orders.

21  In response, the Court stated: "I will instruct the Discovery Master this
22  afternoon, in no uncertain terms, that there is no stay on any discovery related to
23  this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],
24  99:8 – 10). Counsel for MGA then referred to the fact that the Court had
25  previously declined to allow Mattel to serve certain discovery accompanying
26  Mattel's motion for a receiver and characterized the third-party subpoenas as an
27  attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court
28  stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

EXHIBIT _____

PAGE _____ 746

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

> Then the question becomes – and this is a question for the
> Discovery Master, not for this Court – whether or not the
> discovery is related to Phase 2. If it is, it is. I'm not going to
> pass any judgment whatsoever. I'm going to leave that
> completely up to the Discovery Master. ... The question for the
> [D]iscovery [M]aster will be whether or not the disputed
> discovery request is related or relevant to the trial that has now
> been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in deciding the motions relating to the Subpoenas, the Discovery Master should consider whether there is a nexus between the information sought by the Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial in March 2010, on the other hand. If the information sought by the Subpoenas is, to use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2] trial," then that information could potentially be the subject of appropriate discovery requests by Mattel.[1]

**B.    Information Sought By The Subpoenas**

The information sought by Mattel's Subpoenas falls into two broad categories. First, Mattel seeks documents from third parties Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing Entities") involving, among other things, their internal ownership and operations and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2 claims, (*Id.*, pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2. (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather, Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

1   "Financing Discovery"). Based on the information presented at the February 11,
2   2009 hearing and in connection with the pending motions, it does not appear that
3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have
4   an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).
5       Second, Mattel seeks documents from third parties IGWT Group, LLC and
6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding
7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the
8   "Transferee Discovery"). MGA does not dispute that the Transferee Entities are
9   owned and/or controlled by Larian. (*See, e.g.*, MGA's Reply in support of its
10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz
11  inventory by the Transferee Entities as "Larian's purchase of those . . .
12  products . . . .").[3]

13  **II.   MGA's Motion To Quash**

14      Because it could dispose of all outstanding discovery issues related to the
15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on
16  February 3, 2009.

17      **A.   Legal Standard**

18      As the party moving to quash the Subpoenas, MGA bears the burden of
19  satisfying the standard set forth in Rule 45(b), which provides that the court may
20  "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.
21  P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.
22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24  [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The
25  Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
    does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a
26  legitimate Phase 2 issue, seek to obtain this information from MGA.

    [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including
27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
    that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address
28  of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -



ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____
PAGE _____ **748**

1   with the subpoena would be unreasonable and oppressive" (internal quotations
2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The
3   burden of proving that a subpoena is oppressive is on the party moving to quash];
4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the
5   burden is on the movant to establish that a subpoena duces tecum should be
6   quashed]). "The burden is particularly heavy to support a 'motion to quash as
7   contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City
8   of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash
9   supported by two affidavits]).

10      **B.    Arguments Made By MGA In Support Of Its Motion To Quash**
11          The sole argument set forth in MGA's Motion to Quash is that the Court's
12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the
13   information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).
14   But that argument fails for the reasons set forth above. The Court made it clear at
15   the hearing on February 11, 2009 that:

16          There is no stay on discovery. Period. . . . . [The forensic auditor
17          appointed by the Court] is acting at the Court's discretion to
             inform the Court of information. . . . That's an entirely separate
18          matter. And I have not stayed any discovery and there should be
19          no reliance on that. If that was misunderstood, it's clarified now.

20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21          Recognizing that its only argument has been rejected by the Court, MGA
22   argues for the first time in its Reply that its Motion to Quash should be granted
23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*
24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).
25   However, MGA did not make this argument in its opening brief. It instead declared
26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues
27   is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the
28   subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -



1   consider the argument in connection with the Motion to Quash.

2   The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers. A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond. This rule is routinely adhered to by courts in the Ninth

7   Circuit. (See, e.g., United States v. Boyce, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); Leick v. Hartford Life and Acc. Ins. Co., 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); Stewart v. Wachowski, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); Hamilton v. Willms, 2007 WL 2558615, *11 (E.D.Cal.2007); see

11   also United States v. Cox, 7 F.3d 1458, 1463 (9th Cir.1993); United States v.

12   Wright, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13   Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (See Section III

17   below).

18   Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In Bryant v. Mattel, Inc., 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

25

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____ 61

P^^E ____ 750

III.  **Mattel's Motions To Compel**

    A.  **The Purported Procedural Defects Barring Mattel's Motions To Compel**

    MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

        1.  **The Court's January 7, 2009 Order**

    As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

        2.  **Local Rule 37**

    The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case. Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6] Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
A TTORNEYS AT LAW
LOS ANGELES

- 7 -

[Case No. CV 04-9049 SGL (RNBx)]

ORDER NO. 3



EXHIBIT _____

PAGE _____ 751

1    "all third parties subject to discovery requests . . . in this litigation shall be bound

2    by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3    order applies to the Financing Entities as well as the Transferee Entities, and its

4    procedures replace those set forth in Local Rule 37. (Id., p. 4).

### 3.   Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7          The Financing Entities and MGA further argue that Mattel's Motion to

8    Compel should be denied because it exceeds the page limitations set forth in Local

9    Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (See Financing

10   Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11   Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12   The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13   governs discovery disputes in this case, and it does not impose any page limit on

14   such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15   requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16   even permits the parties to agree to alternative procedures, including, presumably,

17   filing briefs that are more than 25 pages in length. (See Discovery Master Order, p.

18   4). Thus, while the Discovery Master encourages the parties to be as efficient as

19   possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20   directly permitted under the Discovery Master Order (since no page limitation was

21   imposed by the Court) or implicitly allowed (since the parties may agree to

22   alternate procedures). He further recognizes that the complex nature of this case

23   may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages. (See Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT _____

PAGE _____ 752

1   these reasons, filings in excess of 25 pages are permitted.[9]

2   **4.   Local Rule 6-1**

3   The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9   applicability here.

10   **5.   Failure To Name MGA In The Motion To Compel**

11   MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena. In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21   **6.   Mattel's Separate Statement**

22   MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   _____

28   [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT _____ 61

753

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive.  Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6            **7.    Meeting And Conferring**

7            As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10   motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11   Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12           **a.    Applicable Procedure**

13           Prior to filing its motion to compel, Mattel had an obligation to comply with

14   both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15   Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16   compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17   Similarly, the Discovery Master Order states that unless an "alternative procedure"

18   is agreed upon or otherwise ordered by the Discovery Master, the

19   > moving party shall first identify each dispute, state the relief
     > sought, and identify the authority supporting the requested relief
20   > in a meet and confer letter that shall be served on all parties by
     > facsimile or electronic mail. The parties shall have five court
21   > days from the date of service of that letter to conduct an in-person
     > conference to attempt to resolve the dispute.  If the dispute has
22   > not been resolved within five court days after such service, the
     > moving party may seek relief from the Discovery Master by
23   > formal motion or letter brief . . .

24   (Discovery Master Order, p. 4).

25   //

26

27   _____

     [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28   separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -    EXHIBIT No. ___ [Case No. CV 04-09049-SGL (RNBx)]

1
2

           **b.**    **Mattel's Meet And Confer Regarding The Financing
Entities**

3        In challenging Mattel's meet and confer effort, the Financing Entities first

4  claim that Mattel violated the Discovery Master Order because no "in-person

5  meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6  p. 8). But that argument is without merit, since Mattel and the Financing Entities

7  agreed to an alternative procedure that disposed of the in-person meet and confer

8  requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9  Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10  2009 memorializing the parties' agreement and establishing a schedule whereby the

11  parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12  Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13  Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14  Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15  Entities' counsel received this letter and acted in accordance with its terms is

16  evidenced by, among other things, the fact that they served objections to the

17  Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18  letter) and started meeting and conferring with Mattel's counsel telephonically on

19  January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20  and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21  Entities in person since the parties had agreed to waive that obligation.

22        Nevertheless, Mattel still had an obligation to meet and confer with the

23  Financing Entities in good faith. Good faith cannot be shown merely through

24  perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25  attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26
27
28

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -



EXHIBIT _CV 04-09049 SGL (RNBx)_

PAGE _____ 755

1    Proc. 37(a)(1)).

2         Because the evidence and declarations submitted by Mattel and the Financing

3    Entities are in conflict regarding what transpired during their respective meet and

4    confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5    Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6    February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7    doubt and concludes that it adequately met and conferred with respect to Omni 808

8    Investors, LLC and Vision Capital, LLC.

9         By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5).  No

14   "good faith" meeting could therefore have taken place.

15        Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC.  The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23              c.      **Mattel's Efforts To Meet And Confer Regarding The**

24                      **Transferee Entities**

25        Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   ---
[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -                                    ORDER NO. 3
[Case No. CV 04-9049 SGL (RNBx)]

EXHIBIT

PAGE        756

1 (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2 Transferee Entities concede that their counsel engaged in multiple meet and confer

3 teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4 between the parties as part of the meet and confer process. (*Id.*). In light of these

5 interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6 favor of resolving the issues on the merits and concludes that it adequately met and

7 conferred with the Transferee Entities.

8      **B.**    **Legal Standard Governing Enforcement Of The Subpoenas**

9      Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10 actions of "any matter, not privileged, which is relevant to the subject matter

11 involved . . .. The information sought need not be admissible at the trial if the

12 information sought appears reasonably calculated to lead to the discovery of

13 admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14 discovery of all information reasonably calculated to lead to discovery

15 of admissible evidence; but the discoverable information need not be admissible at

16 the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17 250 (D.Kan.1993)).

18      The broad scope of discovery described in subsection (b)(1) is tempered by

19 provisions protecting the responding party from undue burden. Rule 26(b)(2)

20 provides that the frequency or extent of discovery otherwise allowed by the Rules

21 must be limited if the court determines that "(i) the discovery sought is

22 unreasonably cumulative or duplicative, or is obtainable from some other source

23 that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24 discovery has had ample opportunity by discovery in the action to obtain the

25 information sought; or (iii) the burden or expense of the proposed discovery

26 outweighs its likely benefit, taking into account the needs of the case, the amount in

27 controversy, the parties' resources, the importance of the issues at stake in the

28 litigation, and the importance of the proposed discovery in resolving the issues."

- 13 - EXHIBIT     ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 757

1    Moreover, the Federal Rules distinguish between discovery from non-parties
2    to a lawsuit (governed under Rule 45) and discovery from parties (governed
3    generally by Rule 26), based in part on the recognition that the former is inherently
4    more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*
5    *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is
6    significant when determining whether compliance with a discovery demand would
7    constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984
8    F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party
9    is one factor that the Court may weigh in determining whether the discovery
10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45
11   have interpreted these rules to afford non-parties special heightened protection
12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*
13   *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14        Accordingly, requests for documents that pertain to a party and that can be
15   more easily and inexpensively obtained from that party also impose an undue
16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).
17   Further, if the documents sought are neither relevant nor calculated to lead to the
18   discovery of admissible evidence, "then any burden whatsoever imposed upon the
19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*
20   *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21        Each of the moving parties bears the burden of establishing the basis for the
22   relief it seeks. As the party moving to compel compliance with the Subpoenas,
23   Mattel bears the burden of "establishing that the information sought is relevant and
24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*
25   *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26        Finally, in deciding whether to enforce a subpoena, the Discovery Master
27   must balance "the relevance of the discovery sought, the requesting party's need,
28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[CASE NO. CV 04-09049 SGL (RNBx)]

PAGE _____ 758

1  *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2  *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3      **C.**    **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4      As its first ground for moving to compel production of the documents sought

5  by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6  making it necessary and appropriate for Mattel "to obtain an accurate understanding

7  of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8  Mattel, MGA's supposed misrepresentations have placed its financial condition at

9  issue, and have opened the door to discovery of any information bearing on MGA's

10  finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone.*"] (emphasis added)).

12      However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2. As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19      Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected. Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23      Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties*. Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

EXHIBIT _____ 61
[Case No. CV 04-09049 SGL (RNBx)]
PAGE _____

ORDER NO. 3

1      Financing Entities putting their financial affairs at issue in this litigation.[13]

2  Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3  to the Financing Entities and construed as their consent to discovery of their

4  internal financial affairs.  Such an assumption is unwarranted.

5      **D.**    **Mattel's Contention That The Subject Discovery Is Relevant To**

6            **Phase 2**

7            **1.**    **Subpoenas To The Financing Entities**

8      Mattel next argues that the Subpoenas to the Financing Entities seek

9  information relevant to a variety of Phase 2 issues.[14]

10            **a.**    **Mattel's RICO Counterclaim**

11      Mattel first asserts in its Motion to Compel that the discovery it seeks is

12  relevant to its RICO counterclaim because "Mattel alleges that the counter-

13  defendants have operated a widespread criminal enterprise that has engaged in

14  numerous acts of mail and wire fraud and other predicate acts in violation of the

15  RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16  non-operating entities" is "a continuation of that pattern of racketeering activity."

17  (Motion, p. 18).

18

19  [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing

20  Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has

21  been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties.

22  [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's

23  Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to

24  Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*

25  Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As

26  for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to

27  when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to

28  strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

[EXHIBIT 61]
[Case No. CV 04-09049 SGL (RNBx)]
ORDER NO. 3
PAGE 760

1    But Mattel's allegations in support of its RICO counterclaim turn on

2 misappropriation of trade secrets and confidential information, and make no

3 mention of improper transfers of funds or any other predicate act similar to MGA's

4 purported business transactions with any of the Financing Entities.[15]  Accordingly,

5 these financial transactions are not a "continuation" of the "pattern" of conduct

6 Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7 *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8 RICO claimant must show "[a]n interrelationship between acts, suggesting the

9 existence of a pattern, [which] may be established...[by] proof of their temporal

10 proximity, or common goals, or similarity of methods, or repetitions' (citation

11 omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12 must be supported by a "pattern" of activity and "the mere fact that there are a

13 number of predicates is no guarantee that they fall into any arrangement or order.

14 A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15 requires the showing of a relationship between the predicates" (quotations and

16 internal citations omitted)]).

17    At this stage, Mattel has failed to demonstrate a relationship between the

18 predicate acts alleged by Mattel in its Counterclaims – which were bound together

19 by a purported scheme to misappropriate Mattel's trade secrets – and the

20 //

21 //

22 //

23 ---

[15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24 Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25 various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
26 because they are "designed to and did unlawfully acquire the confidential business information and property·of
Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
27 business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
"defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
28 Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
defendants "schemed to defraud Mattel and steal its property and trade secret information"]

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

EXHIBIT _____
[Case No. CV 04-09049 SGL (RNBx)]  ORDER NO. 3
PAGE _____ 161

1    transactions Mattel seeks to investigate here.[16]

2        Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery. While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10        In sum, absent some argument or evidence demonstrating a nexus between

11    the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12    transactions and other matters which are the subject of the Financing Discovery, on

13    the other hand, there has been no showing by Mattel that the Subpoenas to the

14    Financing Entities are reasonably calculated to lead to the discovery of admissible

15    evidence regarding the RICO counterclaim.

16            **b.**    **Mattel's Disgorgement Remedy**

17        Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18    information relevant to its remedy of disgorgement, which is an available remedy

19    for Mattel's Phase 2 counterclaim for misappropriation of trade secrets. Mattel

20    argues:

21

22    [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
23    (W.D.N.Y. 2006). There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
    among other violations, upon alleged money laundering violations. Specifically, the Complaint alleges that the
24    Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
    engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
25    this motion, money laundering." (*Id.*, at 375). "The alleged money laundering consisted of repeated deposits into
    various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
26    depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
    nature, source and location – that is, by transferring funds between defendants and between various accounts
27    maintained by those defendants." (*Id.* [emphasis added]). Thus, inquiry into the defendants' finances was
    appropriate as it was likely to reveal activity related to the alleged predicate acts. Here, on the other hand, Mattel has
28    not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
    with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

EXHIBIT ___ ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

PAGE ___ 762

> For purposes of establishing disgorgement, Mattel must take into
> account money transferred from MGA and Isaac Larian,
> regardless of the manner in which it was transferred. Mattel is
> entitled to discovery that shows all assets siphoned from MGA or
> Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
> prove the amount the defendants must disgorge. Money that
> properly belonged to Mattel was transferred from MGA or Isaac
> Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of
the Financing Entities is alleged to have "received money that properly belonged to
Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of
MGA. Therefore, Mattel has not demonstrated how any of the categories of
documents sought from the Financing Entities would aid it in ascertaining the
amount defendants must disgorge.

### c.     Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they
"seek documents relevant to MGA's financial condition" and other "factors
relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).
Depending on the particular scope of the document request, such discovery from
Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because
any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from
the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to
MGA's net worth (and hence punitive damages).[17] As the Court noted in its
February 11, 2009 ruling:

> I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchaser/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

- 19 -

EXHIBIT ___ 6l ___ ORDER NO. 5
[Case No. CV 04-09049 SGL (RNBx)]

PAGE ___ 763

1  financial condition of the company as it relates to damages in the
2  Phase 2 and also issues that the receiver is looking at. And
   without making a ruling on any of this, I would not suggest for a
3  moment that these are mutually exclusive categories.

(Tr., 101:3 - 8)

4

5     Mattel argues that the necessary connection between the Financing

6  Discovery and Phase 2 damages exists because the Financing Entities have acquired

7  a security interest in MGA's assets, which, in turn, affects MGA's financial

8  condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

9     directly involved in providing funding to MGA in exchange for a
      security interest. Such funding, and security interests, are in and
10    of themselves directly relevant to the financial condition of the
      MGA Parties, including the amount of the security interests, the
11    terms and conditions of the funding, and the rate of funding. . . .

12  (Motion to Compel, p. 22: 13 – 17).

13     The Discovery Master agrees that such limited information, as it relates to

14  the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15  Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16  evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17  for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18  compel responses from Omni 808 Investors, LLC is granted with respect to

19  documents relating to (1) the existence of any debt owed by MGA Entertainment,

20  Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21  Investors, LLC and the MGA parties regarding any such indebtedness.

22     The problem, however, is the vast majority of the document requests set forth

23  in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24  to obtain information demonstrating the amount and nature of MGA's indebtedness

25  (and hence net worth) or communications regarding any such debt,[19] but instead

26  ────────────────
    [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27  deferred discovery regarding the Wachovia debt until the middle of the Phase I trial. (Reporter's Transcript of
    Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28  from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

────────────────
[19] Nor did Mattel move to compel MGA to produce this information in the first instance.

EXHIBIT _____ _____ ORDER NO. 3
- 20 -                   [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 701

1   would require the Financing Entities to produce virtually every document in their

2   possession regarding their formation, operations, and history of transactions.

3   Among other things, the Subpoenas to the Financing Entities seek:

4       •   All records that "substantiate transfers of assets" by the Financing

5            Entities "to other entities, individuals, and/or parties, within the U.S.

6            and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7            of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8            Motion To Compel Production of Documents Responsive to Third-

9            Party Subpoenas, Attachment A, ¶ 16);

10      •   All documents "detailing or setting forth the relationship" between

11          each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12      •   All documents referring or relating to the "all contributions, loans and

13          any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14      •   All documents referring or relating to the "source of funding" of other

15          non-parties (*Id.* at ¶ 16);

16      •   All documents showing detail of "all loan facilities" referring or

17          relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18      •   All documents referring or relating to "transactions involving any

19          compensation, loans, advances, payments, fees or any other form of

20          consideration" paid to other non-parties (*Id.* at ¶ 15);

21      •   All "communications" referring or relating to the Financing Entities

22          and other non-parties (*Id.* at ¶ 17).

23      Accordingly, the Discovery Master concludes that most of the categories of

24   documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25   the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26   Section IV below (entitled "Disposition").

27   //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -   EXHIBIT ___
[Case No. CV 04-09049 SGL (RNBx)]
ORDER NO: 3

PAGE _____ 765

1              d.    **Credibility Of MGA Witnesses**

2          Mattel's fourth argument consists of a single, conclusory paragraph asserting

3    that it is entitled to its discovery in order to determine the credibility of MGA's

4    witnesses.  To support this argument, Mattel first states that information is

5    discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel,

6    p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D.

7    646, 650 (C.D. Cal. 1997)).[20]  Next, Mattel asserts that "MGA and Larian made

8    statements under oath about their financial condition as well as about the role of

9    Omni 808 and the other non-operating entities in providing MGA with additional

10   funding." (*Id.*)  But that is the full extent of Mattel's argument.  Mattel does not

11   attempt to show that the specific discovery that it has propounded is reasonably

12   calculated to lead to the discovery of the evidence that it contends would be

13   admissible.

14         Discoverable information generally includes evidence relevant to the

15   credibility of a party or a key witness. (See *Paulsen v. Case Corp.,* 168 F.R.D. 285,

16   287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D.

17   601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance,* 164 F.R.D. 493, 495 (C.D.

18   Cal. 1995)).  If Mattel's discovery were reasonably calculated to lead to the

19   discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is

20   liberally interpreted to permit wide ranging discovery of all information reasonably

21   calculated to lead to discovery of admissible evidence."])  But Mattel has not taken

22   any steps to connect its discovery to such evidence.  As discussed above, Mattel

23   bears the burden of demonstrating that its discovery is reasonably calculated to lead

24   to the discovery of admissible evidence.  Here, Mattel has only stated that

25   credibility evidence can be admissible and that credibility is at issue in this case –

26   without referring at all to specific categories of documents in the Subpoenas or

27

28   [20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                - 22 -          EXHIBIT ___ ORDER NO. 3
                                                               [Case No. CV 04-09049 SGL (RNBx)]

                                                               PAGE ___ 766

1   linking those categories of documents to prior or anticipated testimony of MGA's

2   witnesses.  Simply stating that credibility evidence is discoverable does nothing

3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4   here is reasonably calculated to lead to the discovery of such evidence.

5                      e.    MGA's Unclean Hands

6          Mattel next argues in its Motion to Compel that MGA has asserted an

7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9   sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.)  But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits.  To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16         Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless.  (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes.  But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)).  "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)).  Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __61__
PAGE __767__

1    1996)).

2         Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA). Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11            **f.**    **Mattel's Unfair Competition Counterclaim**

12        As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'" (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all. Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities). That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

AREN1 FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

EXHIBIT _61_

PAGE _768_

g.    **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

2.    **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively. However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

EXHIBIT _____ lol
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 767

#### a.   Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

#### b.   Relevance To Phase 2 Issues

##### 1.   Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

EXHIBIT _____ 6
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 770

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.      Mattel's Unfair Competition Counterclaim**

7            Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22           Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the
27   Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
28   spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering
     the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              - 27 -

1    enough to potentially encompass subsequent acts of unfair competition which

2    perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3    RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4    not purport to rest on a list of enumerated, factually detailed and carefully defined

5    acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6    of unfair competition" which include, "without limitation" certain illustrative

7    examples.  (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will

9    ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11   will seek (and the Court permit) amendment of the counterclaim to expressly

12   reference such alleged misconduct.  Nevertheless, in light of the fact that the

13   discovery need only appear reasonably calculated to lead to the discovery of

14   admissible evidence, the Discovery Master finds that certain aspects of the

15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16                    c.    **Summary Of The Discovery Master's Findings With**

17                          **Respect To The Subpoenas Directed To The**

18                          **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently

20   articulated a connection between some of the Transferee Discovery and its Phase 2

21   claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.    Disposition**

24       1.    The Motion to Quash filed by MGA is **DENIED**.

25       2.    Mattel's Motion to Compel the Financing Entities to produce

26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27   Capital, LLC and Vision Capital, LLC.

28       3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -                EXHIBIT ___ 6 ___  ORDER NO. 3
                     [Case No. CV 04-09049 SGL (RNBx)]

                     PAGE ___ 772 ___

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2   **DENIED** in part, as follows:

3           a.    Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4   with respect to documents relating to (1) the existence of any debt owed by MGA

5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8   regarding any other documents sought by these requests.

9           b.    Requests 4 through 12, 14 and 18:  The Motion is denied.

10       4.    Mattel's Motion to Compel the Transferee Entities to produce

11   documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12   IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13       5.    Mattel's Motion to Compel the Transferee Entities to produce

14   documents responsive to the Subpoenas is **GRANTED,** as follows:

15                    **Subpoena To IGWT Group LLC**

16           a.    Request 1:  The Motion is granted with respect to documents

17   relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18   including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19   or their spouses, or any entity or person affiliated with them.

20           b.    Request 2:  The Motion is granted

21           c.    Request 3:  The Motion is granted with respect to documents

22   relating to any ownership interest by Larian, his spouse, his children, his siblings,

23   or their spouses, or any entity or person affiliated with them.

24           d.    Request 4:  The Motion is granted with respect to documents

25   relating to any sources of funding by Larian, his spouse, his children, his siblings,

26   or their spouses, or any entity or person affiliated with them.

27           e.    Request 5:  The Motion is granted with respect to documents

28   relating to any compensation, loans, advances, payments, fees or any other form of

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3        f.    Request 7: The Motion is granted.

4        **Subpoena To IGWT 826 Investments LLC**

5        a.    Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9        b.    Request 2: The Motion is granted

10        c.    Request 3: The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13        d.    Request 4: The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16        e.    Request 5: The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20        f.    Request 7: The Motion is granted.

21      5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24      6.    Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //



1  Dated: March 10, 2009

2

3

4                                        By:        /s/ Robert C. O'Brien

5                                                   ROBERT C. O'BRIEN
                                                    Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    - 31 -

EXHIBIT ___ 6 ___
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]
PAGE ___ 775

# Exhibit 62

**Filed Under Seal**
**Pursuant to Protective Order**

**Exhibit 63**

**Filed Under Seal
Pursuant to Protective Order**

# Exhibit 64

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    CRAIG A. TAGGART (SBN 239168)
4   craig.taggart@bingham.com
    600 Anton Boulevard, 18th Floor
5   Costa Mesa, CA  92626-1924
    Telephone:  714.830.0600
6   Facsimile:  714.830.0700

7   Attorneys for Non-Parties
    LEON NEMAN, FRED MASHIAN
8   and NEIL KADISHA

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12

13  CARTER BRYANT, an individual,        Case No. CV 04-9049 SGL (RNBx)

14          Plaintiff,                   Consolidated with Case No.
                                         CV 04-09059 and Case No. CV 05-2727
15          v.
                                         **DISCOVERY MATTER**
16  MATTEL, INC., a Delaware             **To be heard by Discovery Master**
    Corporation,                         **Robert C. O'Brien**
17
            Defendant.                   **NOTICE OF MOTION AND**
18                                       **MOTION TO QUASH AND/OR FOR**
                                         **PROTECTIVE ORDER RE**
19                                       **SUBPOENAS ISSUED BY MATTEL,**
                                         **INC. TO NON-PARTIES LEON**
20                                       **NEMAN, FRED MASHIAN AND**
                                         **NEIL KADISHA; MEMORANDUM**
21                                       **OF POINTS AND AUTHORITIES IN**
                                         **SUPPORT**
22
                                         **[DECLARATION OF PETER N.**
23                                       **VILLAR FILED CONCURRENTLY]**

24                                       Date:      TBD
                                         Time:      TBD
25                                       Place:     Arent Fox LLP
                                                    555 West Fifth Street
26                                                  48th Floor
                                                    Los Angeles, CA  90013
27
    AND CONSOLIDATED ACTIONS.
28

A/72865234.2/3009108-0000337036              -1-

EXHIBIT _____ 64

PAGE _____ 800

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that Non-parties Leon Neman, Fred Mashian

3   and Neil Kadisha (collectively, "Non-party Deponents") will and hereby do move

4   pursuant to Federal Rules of Civil Procedure 26(c) and 45 for a protective order

5   and/or to quash the deposition subpoenas issued by Mattel, Inc. The motion will

6   be heard at a date and time to be determined before the Discovery Master, Robert

7   C. O'Brien.

8       The motion is made on the grounds that the deposition subpoenas are

9   objectionable on many grounds and that this Court should quash them and/or issue

10  a protective order under Rules 26(c) and 45 of the Federal Rules of Civil Procedure

11  because, among other things: (1) the subpoenas seek information that is not

12  relevant and beyond the scope of the Discovery Master's Order No. 3 issued on

13  March 10, 2009; (2) the subpoenas are duplicative of discovery already sought by

14  Mattel and abusively drawn for the purpose of annoying, harassing and exerting

15  pressure on the Non-party Deponents; (3) any information purportedly relevant to

16  Phase 2 should be first sought from the parties before burdening non-parties; and

17  (4) Mattel unilaterally set the deposition dates and times without consulting with

18  the Non-party Deponents or their counsel.

19      This motion is based on the Notice of Motion and Motion to Quash and/or

20  for Protective Order, the attached Memorandum of Points and Authorities in

21  support thereof, the supporting Declaration of Peter N. Villar filed herewith, the

22  pleadings and records on file in this action, any matters to which this Court may

23  take judicial notice, and any further evidence and argument as may be presented on

24  this motion.

25

26

27

28

EXHIBIT 64

PAGE 801

1   DATED:  March 12, 2009            Bingham McCutchen LLP

2

3                                     By: _____
4                                         Peter N. Villar
                                          Attorneys for Non-Parties
5                                         LEON NEMAN, FRED MASHIAN
                                          and NEIL KADISHA
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72865234.2/3009108-0000337036            -3-

EXHIBIT ____64____

PAGE ____802____

1

# TABLE OF CONTENTS

2                                                                                                    Page

3   I.     INTRODUCTION................................................................................................ 1

4   II.    STATEMENT OF FACTS.............................................................................. 4

5   III.   LEGAL ARGUMENT ..................................................................................... 6

6          A.    The Court Has The Discretion To Quash The Subpoenas

7                And/Or Issue A Protective Order........................................................ 6

8          B.    The Court's March 10, 2009 Order Affirms That Mattel's

9                Subpoenas To The Non-party Deponents Should Be Quashed........... 8

10               1.    Mattel's Deposition Subpoenas Are Improper And Seek

11                     Irrelevant Information............................................................. 8

12               2.    Mattel's Document Requests To Mr. Kadisha Should Be

13                     Quashed Because It Is Overbroad And Seeks Documents

14                     Irrelevant To Phase 2 ............................................................ 10

15         C.    Mattel's Subpoenas Should Be Quashed Because They Are

16               Duplicative, Overbroad And Abusively Drawn.................................. 12

17         D.    Mattel's Subpoenas Should Be Quashed Because Mattel Has

18               Made No Effort To Obtain The Information From The Parties

19               Before Burdening Non-Parties........................................................... 14

20         E.    The Court Should Quash The Subpoenas Because Mattel Failed

21               To Meet And Confer Before Scheduling The Depositions ............... 15

22   IV.   CONCLUSION .............................................................................................. 16

23

24

25

26

27

28

-i-

EXHIBIT    64

PAGE    803

1   ownership interest in the Financing Entities." (March 10, 2009 Discovery Master

2   Order at 4.)  Furthermore, after rejecting each of Mattel's relevance arguments,

3   the Discovery Master held that "Mattel's Motion to Compel the Financing Entities

4   to produce documents responsive to the Subpoenas is **DENIED** with respect to

5   OmniNet Capital, LLC and Vision Capital, LLC." (March 10, 2009 Discovery

6   Master Order at 28.) The Court specifically noted that "neither entity is alleged by

7   Mattel to be a creditor of MGA Entertainment, Inc." (March 10, 2009 Discovery

8   Master Order at 19 n. 17.) The Court also denied Mattel's motion to compel all

9   but a narrow subset of the documents sought from Omni 808.  The only documents

10  that the Court ordered to be disclosed are "documents relating to (1) the existence

11  of any debt owed by MGA Entertainment, Inc. to Omni 808 Investors, LLC,

12  including any debt purchased from Wachovia Bank, and (2) any communications

13  between Omni 808 Investors, LLC and the MGA parties regarding any such

14  indebtedness." (March 10, 2009 Discovery Master Order at 29.)

15       In light of the Court's March 10, 2009 Order, the deposition subpoenas are

16  improper and should be quashed.  Mr. Neman is a principal of Vision Capital.

17  Thus, because this Court determined that the subpoena to Vision Capital is

18  improper, there is no reason to depose Mr. Neman.  Further, Mr. Mashian is a

19  business attorney that has provided legal services on occasion for Vision Capital,

20  LLC.  Thus, there are no grounds to depose Mr. Mashian.

21       There is also no basis on which to depose or obtain documents from Mr.

22  Kadisha, a principal of Omninet Capital and Omni 808.  The Discovery Master

23  already found that information relating to Omninet Capital is not relevant to this

24  action, and found that information relating to Omni 808 is not relevant except for a

25  narrow subset of documents relating to "MGA's net worth."  Because all

26  potentially relevant information will be produced by Omni 808 pursuant to the

27  Discovery Master's March 10 Order, there is no basis or need to depose Mr.

28  Kadisha.  Moreover, each of the 44 broad categories of documents requested by

EXHIBIT _____ 64

PAGE_____ 804

1      Here, Mattel made no effort to meet and confer before scheduling the

2  depositions to determine the availability of counsel and the Non-Party Deponents.

3  On March 6, 2009, attorneys for MGA wrote a letter to Mattel informing them that

4  none of the deposition dates were cleared with them and, in fact, some of them

5  conflicted with hearings scheduled before this Court. (Ex. __ to Villar Decl.)

6  Similarly, counsel for the Non-party Deponents also sent a letter to Mattel's

7  attorney informing them that the depositions were premature, improper and that

8  none of the dates were cleared with the non-parties or their counsel. (Ex. E to

9  Villar Decl.)  Furthermore, even after the Court issued its March 10, 2009 ruling,

10  which essentially holds that the information Mattel is seeking is irrelevant to Phase

11  2, Mattel refused to withdraw its subpoenas or respond to either MGA's or the

12  Non-party Deponents' correspondence.  Given that the discovery cut-off date is

13  nine months away, there is no reason that Mattel could not have conferred with all

14  parties and counsel before noticing the depositions.

15      Because Mattel failed to meet and confer with the Non-party Deponents or

16  MGA regarding their availability for these depositions, the Non-party Deponents

17  respectfully request that the Court quash the subpoenas and/or issue a protective

18  forbidding the depositions from going forward.

19

20  **IV.   CONCLUSION**

21      For the forgoing reasons, the Non-party Deponents respectfully request that

22  the Court issue a protective order and/or quash the subpoeans in their entirety.

23

24

25

26

27

28  A/72865234.2/3009108-0000357036

-16-

EXHIBIT ___64___

PAGE ___808___

1   DATED:  March 12, 2009                Bingham McCutchen LLP

2

3                                         By: _____

4                                             Peter N. Villar
                                              Attorneys for Non-parties
5                                             LEON NEMAN, FRED MASHIAN
                                              and NEIL KADISHA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72865234.2/3009108-0000337036              -17-

EXHIBIT _____ 64

PAGE _____ 806

**Exhibit 65**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12                     EASTERN DIVISION

13 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)
14 |              Plaintiff,              | Consolidated with
   |                                      | Case No. CV 04-09059
15 |        vs.                           | Case No. CV 05-02727
16 | MATTEL, INC., a Delaware             | MATTEL, INC.'S FOURTH SET OF
   | corporation,                         | REQUESTS FOR DOCUMENTS AND
17 |                                      | THINGS TO MGA
   |              Defendant.              | ENTERTAINMENT, INC.
18 |
19 | AND CONSOLIDATED CASES
20

21

22        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, MGA

23 Entertainment, Inc. ("MGA") is required to make available for inspection and

24 copying, the following documents within 30 days of service, at the offices of Quinn

25 Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor,

26 Los Angeles, CA 90017.  MGA shall be obligated to supplement responses to these

27 requests at such times and to the extent required by Rule 26(e) of the Federal Rules

28 of Civil Procedure.

# I.   **DEFINITIONS**

For purposes of these Requests, the following definitions apply:

A.    "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any PERSON acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.    "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.    "BRAWER" means Ron Brawer, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

D.    "BRISBOIS" means Janine Brisbois, and all of her current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on her behalf, pursuant to her authority or subject to her control.

E.    "CASTILLA" means Jorge Castilla, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-

EXHIBIT ____ 65

1  interest, and any other PERSON acting on his behalf, pursuant to his authority or
2  subject to his control.

3       F.    "CONTRERAS" means Nic Contreras, and all of his current or
4  former employees, agents, representatives, attorneys, accountants, vendors,
5  consultants, independent contractors, predecessors-in-interest and successors-in-
6  interest, and any other PERSON acting on his behalf, pursuant to his authority or
7  subject to his control.

8       G.    "COONEY" means Daniel Cooney, and all of his current or
9  former employees, agents, representatives, attorneys, accountants, vendors,
10 consultants, independent contractors, predecessors-in-interest and successors-in-
11 interest, and any other PERSON acting on his behalf, pursuant to his authority or
12 subject to his control.

13      H.    "HAN" means Janet Han, and all of her current or former
14 employees, agents, representatives, attorneys, accountants, vendors, consultants,
15 independent contractors, predecessors-in-interest and successors-in-interest, and any
16 other PERSON acting on her behalf, pursuant to her authority or subject to her
17 control.

18      I.    "HINH" means Michael Hinh, and all of his current or former
19 employees, agents, representatives, attorneys, accountants, vendors, consultants,
20 independent contractors, predecessors-in-interest and successors-in-interest, and any
21 other PERSON acting on his behalf, pursuant to his authority or subject to his
22 control.

23      J.    "KAO" means Alice Kao, and all of her current or former
24 employees, agents, representatives, attorneys, accountants, vendors, consultants,
25 independent contractors, predecessors-in-interest and successors-in-interest, and any
26 other PERSON acting on her behalf, pursuant to her authority or subject to her
27 control.

28

EXHIBIT ___65___

PAGE ___809___

-3-

MATTEL'S FOURTH SET OF DOCUMENT REQUESTS TO MGA

1          K.    "MACHADO" means Carlos Gustavo Machado Gomez, and all

2   of his current or former employees, agents, representatives, attorneys, accountants,

3   vendors, consultants, independent contractors, predecessors-in-interest and

4   successors-in-interest, and any other PERSON acting on his behalf, pursuant to his

5   authority or subject to his control.

6          L.    "THOMPSON" means Marla Thompson, and all of her current

7   or former employees, agents, representatives, attorneys, accountants, vendors,

8   consultants, independent contractors, predecessors-in-interest and successors-in-

9   interest, and any other PERSON acting on her behalf, pursuant to her authority or

10   subject to her control.

11          M.    "TRUEBA" means Mariana Trueba Almada, and all of her

12   current or former employees, agents, representatives, attorneys, accountants,

13   vendors, consultants, independent contractors, predecessors-in-interest and

14   successors-in-interest, and any other PERSON acting on her behalf, pursuant to her

15   authority or subject to her control.

16          N.    "VARGAS" means Pablo Vargas San Jose, and all of his current

17   or former employees, agents, representatives, attorneys, accountants, vendors,

18   consultants, independent contractors, predecessors-in-interest and successors-in-

19   interest, and any other PERSON acting on his behalf, pursuant to his authority or

20   subject to his control.

21          O.    "FORMER MATTEL EMPLOYEES" means BRAWER,

22   CASTILLA, CONTRERAS, COONEY, HAN, HINH, KAO and THOMPSON.

23          P.    "MATTEL DOCUMENTS" means all DOCUMENTS authored

24   by MATTEL or taken from MATTEL and in the possession of MGA or any

25   FORMER MATTEL EMPLOYEE, including but not limited to those documents

26   which have been identified as Bates Numbers M 0019162-M 0019365, M 0019375-

27   M 0019491, M 0019492-M 0019586, M 0030576, M 0019587-M 0022008, M

28   0022009-M 0026076, M 0026077-M 0029024, M 0029025-M 0029042, M 65

07209/2175380.1

EXHIBIT _____

-4-

PAGE _____

1 | 0029043-M 0029044, M 0029045-M 0029050, M 0029051-M 0029053, M
2 | 0031471-M 0031473, M 0029054-M 0029255, M 0031474-M 0031485, M
3 | 0029226-M 0030163, M 0030164-M 0030173, M 0030174-M 0030183, M0030261-
4 | M 0030268, M 0030269-M 0030278, M 0030440-M 0030441, M 0030505-M
5 | 0030575, M 0030577-M 0030608, M 0019366-M 0019374, M 0030184-M
6 | 0030240, M 0030254-M 0030260, M 0030279-M 0030439, M 0030442-M
7 | 0030470, M 0030471-M 0030501, M 0030609, M 0030610-M 0030625, M
8 | 0030626-M 0030674, M 0030241-M 0030253, M 0030502-M 0030504, M
9 | 0030675-M 0030754, M 0030755-M 0030756, M 0030770-M 0030782, M
10 | 0030757-M 0030769, M 0030783-M 0030788, M 0030789-M 0030799, M
11 | 0030800-M 0030834, M 0030835, M 0030836-M 0030838, M 0030839-M
12 | 0030841, M 0030842-M 0030845, M 0030846-M 0030850, M 0030851- M
13 | 0030959, M 0030960-M 0030972, M 0030973-M 0031141, M 0031142-M
14 | 0031153, M 0031154-M 0031162, M 0031163-M 0031172, M 0031173, M
15 | 0031174-M 0031206, M 0031207-M 0031223, M 0031224-M 0031229, M
16 | 0031230-M 0031247, M 0031248-M 0031258, M 0031259-M 0031262, M
17 | 0031263-M 0031264, M 0031265, M 0031266, M 0031267, M 0031268, M
18 | 0031269, M 0031270-M 0031278, M 0031279-M 0031280, M 0031281-M
19 | 0031282, M 0031283-M 0031291, M 0031292-M 0031470, M 0032318, M
20 | 0031486-M 0031503, M 0031504-M 0031612, M 0031613-M 0031860, M
21 | 0031863-M 0031864, M 0031865-M 0031919, M 0031861-M 0031862, M
22 | 0031925-M 0032000, M 0031920-M 0031924, M 0032001-M 0032009, M
23 | 0032010-M 0032057, M 0032058, M 0032059-M 0032070, M 0032071-M
24 | 0032288, M 0032289, M 0032290-M 0032317, M 0059836-M 0059837, M
25 | 0075253-M 0075260, M 0075261-M 0075277, M 0075278-M 0075289, M
26 | 0075290-M 0075307, M 0075308-M 0075309, M 0075310-M 0075315, M
27 | 0075316-M 0075317, M 0075318-M 0075322, M 0075323-M 0075324, M
28 | 0075325, M 0075326-M 0075328, M 0075329-M 0075333, M 0075334-M

EXHIBIT

811

PAGE

1  0075375, M 0075376-M 0075378, M 0075379-M 0075380, M 0075381-M
2  0075384, M 0075385, M 0075386-M 0075388, M 0075389, M 0075390, M
3  0075391, M 0075392-M 0075398, M 0075399-M 0075400, M 0075401-M
4  0075407, M 0075408, M 0075409-M 0075416, M 0075417-M 0075420, M
5  0075421, M 0075422-M 0075469, M 0075470-M 0075490, M 0075491-M
6  0075494, M 0075495-M 0075515, M 0075516-M 0075531, M 0075532-M
7  0075552, M 0075553-M 0075572, M 0075573, M 0075574-M 0075594, M
8  0075595-M 0075616, M 0075617, M 0075618-M 0075619, M 0075620-M
9  0075635, M 0075636-M 0075654, M 0075655-M 0075661, M 0075662-M
10  0075699, M 0075700-M 0075709, M 0075710-M 0075713, M 0075714-M
11  0075775, M 0075776-M 0075780, M 0075781-M 0075798, M 0075799-M
12  0075842, M 0075843-M 0075906, M 0075907-M 0075949, M 0075950-M
13  0076018, M 0076019, M 0076020-M 0076132, M 0076133-M 0076143, M
14  0076144-M 0076145, M 0076146-M 0076148, M 0076149-M 0076155, M
15  0076156-M 0076169, M 0076170-M 0076171, M 0076172-M 0076196, M
16  0076197-M 0076215, M 0076216-M 0076250, M 0076251-M 0076264, M
17  0076265-M 0076279, M 0076280, M 0076281-M 0076311, M 0076312-M
18  0076362, M 0076363-M 0076370, M 0076371, M 0076372-M 0076425, M
19  0076426-M 0076427, M 0076428-M 0076431, M 0076432- M 0076442, M
20  0076443-M 0076446, M 0100646-M 0100653, M 0098687-M 0098688, M
21  0098689-M 0098697, M 0098698-M 0098723, M 0098724-M 0098771, M
22  0098772-M 0098832, M 0098833-M 0098846, M 0098847-M 0098865, M
23  0098866-M 0098879, M 0098880-M 0098883, M 0098884-M 0098933, M
24  0098934-M 0098936, M 0098937-M 0098971, M 0098972-M 0099436, M
25  0099437-M 0099439, M 0099440-M 0099448, M 0099449-M 0099461, M
26  0099462-M 0099471, M 0099472-M 0099476, M 0099477-M 0099493, M
27  0099494-M 0099529, M 0099530-M 0099594, M 0099595-M 0099597, M
28  0099598-M 0099601, M 0099602-M 0099618, M 0099619-M 0099628, M

07209/2175380.1

MATTEL'S FOURTH SET OF DOCUMENT REQUESTS TO MGA

EXHIBIT 65

PAGE 812

1  0099629-M 0099656, M 0099657-M 0099665, M 0099666-M 0099725, M
2  0099726-M 0100622, M 0100623-M 0100645, M 0100646-M 0100653, M
3  0100654-M 0100695, M 0100696-M 0100698, M 0100699-M 0100700, M
4  0100701-M 0100735, M 0100736-M 0100741, M 0100742-M 0100774, M
5  0100775-M 0100778, M 0100779-M 0100780, M 0100781, M 0100782, M
6  0100783-M 0100789, M 0100790-M 0100795, M 0100796-M 0100858, M
7  0100859-M 0100868, M 0100869-M 0100878, M 0100879-M 0100891, M
8  0100892-M 0100905, M 0100906-M 0100918, M 0100919-M 0100932, M
9  0100933-M 0100941, M 0100942-M 0100952, M 0100953, M 0100954-M
10  0100955, M 0100956-M 0100983, M 0100984-M 0101013, M 0101014-M
11  0101064, M 0101065 and M 0101069-M 0101128.

12      Q.   "O'MELVENY" means the law firm of O'Melveny & Myers,
13  LLP, and any of its current or former attorneys, partners, associates, employees,
14  agents, representatives, predecessors-in-interest and successors-in-interest, and any
15  other PERSON acting on its behalf, pursuant to its authority or subject to its control.

16      R.   "CHRISTENSEN" means the law firm of Christensen, Glaser,
17  Fink, Jacobs, Weil & Shapiro, LLP and any of its current or former attorneys,
18  partners, associates, employees, agents, representatives, predecessors-in-interest and
19  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
20  authority or subject to its control.

21      S.   "DOCUMENT" or "DOCUMENTS" means all "writings" and
22  "recordings" as those terms are defined in Rule 1001 of the Federal Rules of
23  Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all
24  writings, including but not limited to handwriting, typewriting, printing, image,
25  photograph, photocopy, digital file of any kind, transmittal by (or as an attachment
26  to) electronic mail (including instant messages and text messages) or facsimile,
27  video and audio recordings, and every other means of recording upon any tangible
28  thing, any form of communication or representation, and any record thereby created,

EXHIBIT 65
PAGE 813

1  regardless of the manner in which the record has been stored, and all non-identical

2  copies of such DOCUMENTS, in the possession, custody, or control of YOU,

3  YOUR counsel, or any other PERSON acting on YOUR behalf.

4          T.      "COMMUNICATION," in the plural as well as the singular,

5  means any transmittal and/or receipt of information, whether such was oral or

6  written, and whether such was by chance, prearranged, formal or informal, and

7  specifically includes, but is not limited to, conversations in person, telephone

8  conversations, electronic mail (including instant messages and text messages),

9  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

10  articles, and video and audio transmissions.

11          U.      "PERSON," in the plural as well as the singular, means any

12  natural person, association, partnership, corporation, joint venture, government

13  entity, organization, trust, institution, proprietorship, or any other entity recognized

14  as having an existence under the laws in United States or any other nation.

15          V.      "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-

16  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated

17  therewith.

18          W.      "RELATING TO," "REFERRING OR RELATING TO" and

19  "REFER OR RELATE TO" mean any and all of the following terms and their

20  synonyms:  refer to, discuss, constitute, evidence, pertain to, mention, support,

21  contradict, negate, bear on, touch on, contain, embody, reflect, identify, state, deal

22  with, concern, comment on, respond to, relevant to, or describe.

23          X.      "IDENTIFY" means the following:

24          (a)      with reference to an individual or individuals, means to

25  state, fully and separately as to each, such individual's full name, any known

26  business title, current or last known business affiliation, current or last known

27  residential address, current or last known business address, current or last known

28  relationship to MGA, and current or last known telephone number.

1     (b)  with reference to an entity or entities, means to state, fully

2 and separately as to each, such entity's full name, state (or country) of incorporation

3 or organization, present or last known address, and present or last known telephone

4 number.

5     (c)  with reference to any other DOCUMENT or

6 DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the

7 event that a DOCUMENT does not have a Bates number, IDENTIFY means, with

8 respect to each such DOCUMENT, to provide a complete description of it such that

9 it may be the subject of a request for the production of documents, including by

10 stating the date, identity of the author, addressee(s), signatories, parties, or other

11 PERSONS identified therein, its present location or custodian and a description of

12 its contents.

13    Y.  The singular form of a noun or pronoun includes within its

14 meaning the plural form of the noun or pronoun so used, and vice versa; the use of

15 the masculine form of a pronoun also includes within its meaning the feminine form

16 of the pronoun so used, and vice versa; the use of any tense of any verb includes

17 also within its meaning all other tenses of the verb so used, whenever such

18 construction results in a broader request for information; and "and" includes "or"

19 and vice versa, whenever such construction results in a broader disclosure of

20 documents or information.

21

22 **II.**  **INSTRUCTIONS**

23    A.  YOU are to produce all requested DOCUMENTS in YOUR

24 possession, custody or control.

25    B.  If YOU contend that YOU are not required to produce certain

26 DOCUMENTS called for by these Requests on the grounds of a privilege or

27 protection that YOU are not prepared to waive, identify each such DOCUMENT

28 and provide the following information:

EXHIBIT _____ 65

REQUEST FOR PRODUCTION NO. 33:

All COMMUNICATIONS between COONEY and any Toys 'R Us employee, agent or representative prior to May 31, 2007.

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS RELATING TO Toys 'R Us prepared, created, sent or transmitted by COONEY prior to May 31, 2007.

REQUEST FOR PRODUCTION NO. 35:

All COMMUNICATIONS between COONEY and any MGA customer prior to May 31, 2007.

REQUEST FOR PRODUCTION NO. 36:

All COMMUNICATIONS between YOU and CASTILLA prior to March 13, 2006.

REQUEST FOR PRODUCTION NO. 37:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and CASTILLA prior to March 13, 2006, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 38:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO CASTILLA prior to March 13, 2006.

EXHIBIT _____ 65

MATTEL'S FOURTH SET OF DOCUMENT REQUESTS TO MGA

PAGE _____ 816

1   REQUEST FOR PRODUCTION NO. 39:

2           All DOCUMENTS, including but not limited to all

3   COMMUNICATIONS, RELATING TO sales planning or inventory management

4   prepared, created, sent or transmitted, whether in whole or in part, by CASTILLA

5   prior to March 31, 2007.

6

7   REQUEST FOR PRODUCTION NO. 40:

8           All DOCUMENTS REFERRING OR RELATING TO BRISBOIS' job

9   title and job duties in each position BRISBOIS held while employed by MGA.

10

11  REQUEST FOR PRODUCTION NO. 41:

12          All COMMUNICATIONS between BRISBOIS and any employee,

13  agent or representative of Wal-Mart, including but not limited to Wal-Mart Canada,

14  prior to September 30, 2006.

15

16  REQUEST FOR PRODUCTION NO. 42:

17          All DOCUMENTS RELATING TO Wal-Mart, including but not

18  limited to Wal-Mart Canada, prepared, created, sent or transmitted by BRISBOIS

19  prior to September 30, 2006.

20

21  REQUEST FOR PRODUCTION NO. 43:

22          All COMMUNICATIONS between BRISBOIS and any employee,

23  agent or representative of Toys 'R Us, including but not limited to Toys 'R Us

24  Canada, prior to September 30, 2006.

25

26

27

28

EXHIBIT _____ 65

-20-

MATTEL'S FOURTH SET OF DOCUMENT REQUESTS TO MGA

PAGE _____ 817

1 | lists for such time period and all DOCUMENTS that REFER OR RELATE TO
2 | changes or amendments or contemplated or proposed changes or amendments
3 | thereto.
4 |
5 | REQUEST FOR PRODUCTION NO. 106:
6 |     All DOCUMENTS that REFER OR RELATE TO any dispute,
7 | disagreement or controversy relating to THIS ACTION between, on the one hand,
8 | MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand,
9 | O'MELVENY and/or CHRISTENSEN, including but not limited to any and all
10 | disputes which were or have been asserted as a basis for, or which underlie,
11 | contributed to or were a factor in, the withdrawal, termination and/or substitution of
12 | O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION.
13 |
14 | REQUEST FOR PRODUCTION NO. 107:
15 |     All DOCUMENTS that REFER OR RELATE TO YOUR corporate
16 | formation and administration, including but not limited to by-laws, article of
17 | incorporations, stock certificates, cancelled or void stock certificates, stock ledgers,
18 | stock transfer ledgers or records, stockholder or shareholder agreements, voting
19 | agreements or any other agreement that REFERS OR RELATES TO YOUR
20 | stockholders or shareholders.
21 |
22 |
23 |
24 | DATED:  October 25, 2007     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
25 |
26 |     By _Jon Corey_
27 |     Jon Corey
    Attorneys for Mattel, Inc.
28 |

-33-  EXHIBIT 65

MATTEL'S FOURTH SET OF DOCUMENT REQUESTS TO MGA

PAGE 818

1
**PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over

3   the age of eighteen years and not a party to the within action; my business address is

4   865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5        On October 26, 2007, I served true copies of the following documents

6   described as:  **MATTEL, INC.'S FOURTH SET OF REQUESTS FOR**

7   **DOCUMENTS AND THINGS TO MGA ENTERTAINMENT INC..**

8   on the parties in this action as follows:

9   John W. Keker, Esq.                    Mark E. Overland, Esq.
    Michael H. Page, Esq.                  David C. Scheper, Esq.
10  Christina M. Anderson, Esq.            Alexander H. Cote, Esq.
    **Keker & Van Nest, LLP**              **Overland Borenstein Scheper & Kim,**
11  710 Sansome Street                     **LLP**
    San Francisco, CA 94111                300 South Grand Avenue, Suite 2750
12                                         Los Angeles, CA 90071-3144

13      [√]    **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed

14  as shown above, and I deposited such envelope(s) in the mail at Los Angeles,

15  California.  The envelope was mailed with postage thereon fully prepaid.

16

17      Executed on October 26, 2007, at Los Angeles, California.

18

19                                      _Linda Cano_
                                        Linda Cano

20

21

22

23

24

25

26

27

28

07209/2266886.107209/22
65307 1 1

-3-

EXHIBIT Case No. CV 04 9049 SGL (RNBx)

PROOF OF SERVICE

PAGE 619

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On October 26, 2007, I served true copies of the following documents described as:  **MATTEL, INC.'S FOURTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA ENTERTAINMENT INC.** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, California 90071

[√ ]    [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on October 26, 2007, at Los Angeles, California.

Dave Quintana

07209/2266886.107209/2
65307.1.1

-2-

EXHIBIT __65__
PAGE _____820

Case No. CV 04-9049 SGL (RNBx)

PROOF OF SERVICE

# Exhibit 66

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6    Facsimile: (213) 443-3100

7    Attorneys for Mattel, Inc.

8

9                UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12

| | |
|---|---|
| 13   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 14          Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 15     v. | |
| 16   MATTEL, INC., a Delaware | Hon. Stephen G. Larson |
| 17   Corporation, | MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO |
| 18          Defendant, | MGA ENTERTAINMENT, INC. |
| 19 | |
| 20   AND CONSOLIDATED ACTIONS. | |

21

22

23

24

25

26

27                             EXHIBIT ____ 66

28                             PAGE ____ 821

MATTEL'S THIRD SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA ENTERTAINMENT

Pursuant to <u>Federal Rule of Civil Procedure</u> 36, MGA Entertainment, Inc. is requested to respond to the following requests for admission (the "Requests") within thirty days hereof. MGA Entertainment, Inc. shall be obligated to supplement its responses to the Requests at such times and to the extent required by the <u>Federal Rules of Civil Procedure</u>.

## Definitions

1. "BRYANT" means Carter Bryant individually and does not include his agents, representatives, attorneys, experts or any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

2. "YOU" and "MGA" mean MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, experts, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without limiting the foregoing, "MGA" includes the entities known as ABC International Traders or ABC International Traders, Inc. For purposes of the Requests, "MGA" does not include BRYANT.

3. "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

4. "BRATZ" means any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (regardless of what such doll is or has been also or previously called) or that is now or has ever

O7209/2059652.3

EXHIBIT ___ 6 7 ____

-1-

PAGE ___ 822 ____

MATTEL'S THIRD SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA ENTERTAINMENT

1  been sold or marketed as part of the "Bratz" line, and all prototypes, models,

2  samples and versions of such doll or any portion thereof.

3          5.      "BRATZ WORK" means any representation of BRATZ, whether

4  in whole or in part, whether two-dimensional or three-dimensional, and whether in

5  tangible, digital, electronic or other form, including but not limited to all works,

6  designs, artwork, sketches, drawings, illustrations, representations, depictions,

7  blueprints, schematics, diagrams, images, photographs, sculptures, prototypes,

8  models, samples, reductions to practice, developments, inventions and/or

9  improvements, as well as all other items, things and DOCUMENTS in which any of

10 the foregoing are or have been expressed, embodied, contained, fixed or reflected in

11 any manner, whether in whole or in part.

12         6.      "MATTEL" means plaintiff and counter-defendant Mattel, Inc.,

13 its current employees, officers, directors, agents, representatives, attorneys, parents,

14 subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-

15 interest, and any other PERSON acting on its behalf, pursuant to its authority or

16 subject to its control.

17         7.      "PERSON" or "PERSONS" means all natural persons,

18 partnerships, corporations, joint ventures and any kind of business, legal or public

19 entity or organization, as well as its, his or her agents, representatives, employees,

20 officers and directors and any one else acting on its, his or her behalf, pursuant to

21 its, his or her authority or subject to its, his or her control.

22         8.      "DOCUMENT" or "DOCUMENTS" means all "writings" and

23 "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

24 Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not

25 limited to, all writings and records of every type and description including, but not

26 limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

27 electronic mail ("e-mail"), records of telephone conversations, handwritten and

28 typewritten notes of any kind, statements, reports, minutes, recordings, transcripts

1 | and summaries of meetings, voice recordings, pictures, photographs, drawings,

2 | computer cards, tapes, discs, printouts and records of all types, studies, instruction

3 | manuals, policy manuals and statements, books, pamphlets, invoices, canceled

4 | checks and every other device or medium by which or through which information of

5 | any type is transmitted, recorded or preserved.  Without any limitation on the

6 | foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

7 | from the original or other versions of the DOCUMENT, including, but not limited

8 | to, all drafts and all copies of such drafts or originals containing initials, comments,

9 | notations, insertions, corrections, marginal notes, amendments or any other variation

10 | of any kind.

11 |        9.     "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV

12 | 04-9059 SGL (RNBx), filed by Mattel on April 27, 2004.

13 |        10.    The singular form of a noun or pronoun includes within its

14 | meaning the plural form of the noun or pronoun so used, and vice versa; the use of

15 | the masculine form of a pronoun also includes within its meaning the feminine form

16 | of the pronoun so used, and vice versa; the use of any tense of any verb includes

17 | also within its meaning all other tenses of the verb so used, whenever such

18 | construction results in a broader request for information; and "and" includes "or"

19 | and vice versa, whenever such construction results in a broader disclosure of

20 | documents or information.

21 |

22 | **Requests for Admission**

23 |

24 | REQUEST FOR ADMISSION NO. 1:

25 |       Admit that Carlos Gustavo Machado Gomez had access to confidential

26 | MATTEL information prior to April 19, 2004.

27 |

28 |

EXHIBIT ___66___

PAGE ___634___

-3-

MATTEL'S THIRD SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA ENTERTAINMENT

REQUEST FOR ADMISSION NO. 182:

Admit that, during the time that BRYANT was employed by MATTEL, MGA Entertainment, Inc. entered into a contract with BRYANT whereby BRYANT assigned to MGA Entertainment all then-existing intellectual property rights to BRATZ that BRYANT had created.

REQUEST FOR ADMISSION NO. 183:

Admit that, prior to July 1, 2003, MGA had not issued any press release that identified BRYANT as the creator of BRATZ.

REQUEST FOR ADMISSION NO. 184:

Admit that MGA is not aware of any press report or publication that identified BRYANT as the creator of BRATZ prior to July 15, 2003.

REQUEST FOR ADMISSION NO. 185:

Admit that the first press report or publication that identified BRYANT as the creator of BRATZ was the *Wall Street Journal* article entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd" and published on July 18, 2003.

REQUEST FOR ADMISSION NO. 186:

Admit that, as of December 21, 2006, one of the factories in China that manufactured BRATZ dolls for or on behalf of MGA was the Hua Tai 4K factory.

REQUEST FOR ADMISSION NO. 187:

Admit that, in response to a report from the National Labor Committee dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz," MGA stated to one or more members of the press that "MGA uses first rate factories in the orient to make its goods."

EXHIBIT ____ 66

PAGE ____ 66

07209/2059652.3

1  REQUEST FOR ADMISSION NO. 188:

2          Admit that, in response to a report from the National Labor Committee

3  dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the

4  Bratz," MGA stated to one or more members of the press that "[t]he same factories

5  make products for the world's biggest toy manufacturers including Mattel and

6  Hasbro."

7

8  REQUEST FOR ADMISSION NO. 189:

9          Admit that, as of December 21, 2006, the Hau Tai K4 factory did not

10  manufacture products for MATTEL.

11

12  REQUEST FOR ADMISSION NO. 190:

13          Admit that, as of December 21, 2006, MGA knew the Hau Tai K4

14  factory did not manufacture products for MATTEL.

15

16  REQUEST FOR ADMISSION NO. 191:

17          Admit that MGA represented to the U.S. Copyright Office that the

18  work registered as VA 1-090-287 is a derivative of the work registered as VA 1-

19  218-487.

20

21  REQUEST FOR ADMISSION NO. 192:

22          Admit that the work registered as VA 1-090-287 is a derivative of the

23  work registered as VA 1-218-487.

24

25  REQUEST FOR ADMISSION NO. 193:

26          Admit that the work registered as VA 1-090-287 is substantially similar

27  to the work registered as VA 1-218-487.

28

EXHIBIT _____ 66

07209/2059652.3

-36-

PAGE _____ 821

1  REQUEST FOR ADMISSION NO. 254:

2          Admit that, as of November 7, 2006, BRYANT had not recorded the

3  agreement produced by MGA as MGA000001-MGA000006, or any version thereof,

4  with any state or federal agency, department or entity.

5

6  REQUEST FOR ADMISSION NO. 255:

7          Admit that, as of November 7, 2006, BRYANT had not recorded the

8  agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any

9  version thereof, with the U.S. Copyright Office.

10

11  REQUEST FOR ADMISSION NO. 256:

12          Admit that, as of November 7, 2006, BRYANT had not recorded the

13  agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any

14  version thereof, with any state or federal agency, department or entity.

15

16  DATED: February 28, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
17

18                                     By _____
19                                        Michael T. Zeller
                                          Attorneys for Mattel, Inc.
20

21

22

23

24

25

26

27

28

O7209/2059652.3

EXHIBIT 66

-48-

MATTEL'S THIRD SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA ENTERTAINMENT

**Exhibit 67**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     James J. Webster (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
7    Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

14            Plaintiff,                 Consolidated with
                                         Case No. CV 04-09059
15       vs.                             Case No. CV 05-02727

16  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
17                                       **[To Be Heard By Discovery Master
            Defendant.                   Hon. Edward Infante (Ret.) Pursuant
18                                       To The Court's Order of December 6,
                                         2006]**
19  AND CONSOLIDATED ACTIONS
                                         MATTEL, INC.'S NOTICE OF
20                                       MOTION AND MOTION TO
                                         COMPEL ADDITIONAL
21                                       DEPOSITION TESTIMONY AND
                                         PRODUCTION OF DOCUMENTS BY
22                                       VERONICA MARLOW; AND

23                                       MEMORANDUM OF POINTS AND
                                         AUTHORITIES
24
                                         Date:   TBA
25                                       Time:   TBA
                                         Place:  Telephonic
26
                                         **Phase 1**
27                                       Discovery Cut-off:      January 28, 2008
                                         Pre-trial Conference:   April 21, 2008
28                                       Trial Date:             May 27, 2008

07209/2369078.1                          1-28

MATTEL'S MOTION TO COMPEL MARLOW DEPOSITION



1  TO THIRD-PARTY VERONICA MARLOW, ALL PARTIES AND THEIR
2  ATTORNEYS OF RECORD:

3  PLEASE TAKE NOTICE that, at a telephonic conference before
4  Discovery Master Hon. Edward Infante (Ret.) which will occur on a date and time to
5  be set by Judge Infante, Mattel, Inc. will, and hereby does, move the Court, pursuant
6  to Federal Rules of Civil Procedure 30(b)(6), 30(d), 34, and 37, to compel Veronica
7  Marlow to appear for further deposition testimony, and to produce documents in
8  unredacted form.

9  This Motion is made on the grounds that Mattel is entitled to additional
10  deposition time with Ms. Marlow because there are major relevant subjects
11  remaining on which Mattel needs to examine her.  Those subjects include new
12  information regarding wrongful conduct by Marlow which had previously been
13  concealed from Mattel, as well as subjects that Mattel had insufficient time to cover
14  in the 7 hours and 34 minutes of examination conducted thus far as a result of its
15  investigation into that new information. In addition, Ms. Marlow tactically withheld
16  documents relevant to her deposition until the very day of her deposition and
17  therefore thwarted Mattel's ability to question Ms. Marlow about them.

18  In addition, Ms. Marlow has produced documents in redacted form, and
19  then, after agreeing to produce all documents in unredacted form, failed to do so for
20  certain critical documents.

21  This Motion is based on this Notice of Motion and Motion, the
22  accompanying Memorandum of Points and Authorities, the Declaration of James J.
23  Webster filed concurrently herewith, the records and files of this Court, and all other
24  matters of which the Court may take judicial notice.

25
26
27
28

EXHIBIT ___67___

PAGE ___829___

-i-
MATTEL'S MOTION TO COMPEL MARLOW DEPOSITION

1

## Statement of Rule 37-1 Compliance

2       The parties met and conferred regarding this motion on January 4,

3   2008, and times thereafter.

4

5   DATED:  January 28, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
6

7
                                       By /s/ James J. Webster
8                                         James J. Webster
                                          Attorneys for Plaintiff
9                                         Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 67

PAGE _____ 830

-ii-

07209/2369078.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS...................................................................... 2

    A.    Mattel's Efforts to Depose Marlow......................................... 2

    B.    Marlow Is A Key Witness...................................................... 3

    C.    Marlow Testified That Additional Mattel Employees Worked On The Bratz Product Line................................................ 4

    D.    Marlow Produced Key Documents On The Day Of The Deposition. ...................................................................... 5

    E.    Mattel Has Yet To Obtain Access To Marlow's Computers And Hard Drives. ................................................... 6

    F.    The Parties Have Met and Conferred ..................................... 7

ARGUMENT...................................................................................... 7

I.    THE DISCOVERY MASTER SHOULD ORDER MARLOW TO PROVIDE ADDITIONAL DEPOSITION TESTIMONY............... 7

    A.    Marlow Is A Key Witness In The Bryant Case. ..................... 8

    B.    Marlow Is A Key Witness On MGA's Counterclaims ......... 10

    C.    Marlow Withheld Relevant Documents Without Justification............. 11

II.    MARLOW SHOULD BE ORDERED TO PRODUCE UNREDACTED DOCUMENTS AS PROMISED ....................... 11

CONCLUSION................................................................................. 13

EXHIBIT ___ 67

PAGE ___ 831

MATTEL'S MOTION TO COMPEL MARLOW DEPOSITION

07209/2369078.1

1 who prepared the Bratz dolls used at the Hong Kong Toy Fair just two and a half
2 months after Bryant left Mattel.[12]  In addition, she was one of two designers in
3 June 2000 who worked on an allegedly separate MGA doll project code-named
4 "Angel"[13] -- which another witness testified actually referred to Bratz.[14]  Marlow
5 also worked on multiple Bratz products through 2005, including with the newly
6 revealed Mattel employees.[15]  Many of these products are relevant to MGA's claims
7 as well as Mattel's claims.

8     **C.**     <u>**Marlow Testified That Additional Mattel Employees Worked On**</u>
9         <u>**The Bratz Product Line.**</u>

10        At deposition, Marlow revealed that beginning in 2000 and continuing
11 for five years, three additional Mattel employees -- Ana Isabel Cabrera, Beatriz
12 Morales, and Maria Salazar -- worked on Bratz while employed by Mattel.[16]
13 Marlow left Mattel's employment in June 2000.  She then engaged Mattel
14 employees Ana Cabrera, Beatrice Morales, and Maria Salazar to work for her for
15 MGA's benefit on Bratz.[17]

16        Like Bryant, Cabrera, Morales, and Salazar all signed agreements
17 assigning Mattel all rights to intellectual property they created while employed by
18 Mattel.[18]  Accordingly, their work provides an independent basis for Mattel's claims
19 of ownership in Bratz.  Further, in connection with MGA's claims for unfair
20 competition against Mattel based on MGA's purported ownership of Bratz products,
21 Mattel is entitled to conduct meaningful discovery as to whether it has a defense to

22

23    [12]  Marlow Depo. Tr. at 361:19-23, Webster Dec., Exh. 9.
24    [13]  Marlow Depo. Tr. at 383:24-384:2, Webster Dec., Exh. 9.
25    [14]  <u>E.g.</u>, Transcript of the Deposition of Anna Rhee dated February 3, 2005 ("Rhee Depo. Tr.") at 107:16-108:12, 132:22-134:18, Webster Dec., Exh. 11.
26    [15]  Marlow Depo. Tr. at 307:8-308:1, Webster Dec., Exh. 9.
27    [16]  Marlow Depo. Tr. at 306:14-308:1, 363:15-365:17, Webster Dec., Exh. 9.
     [17]  Marlow Depo. Tr. at 306:14-308:1, 363:15-365:17, Webster Dec., Exh. 9.
28    [18]  Webster Dec., Exhs. 12-14.

EXHIBIT ____ 67

07209/2369078.1

1    MGA's claims based on Mattel's ownership of such "Bratz" products. Finally, the
2    payments to these employees may constitute instances or acts of commercial bribery
3    that are predicate acts for Mattel's RICO claims in this action.

4        **D.**    <u>**Marlow Produced Key Documents On The Day Of The Deposition.**</u>

5           Frustrating Mattel's preparation for the deposition, Marlow produced
6    some documents on the day of the deposition that consisted primarily of very dark
7    photographs of paper documents. These pages could not be copied, and thus could
8    not be used as exhibits.[19] Included among them was a confidentiality agreement
9    between Marlow and MGA that had not been previously produced.[20] (The pages of
10   the contract were faxed to Mattel the day before the deposition, but because they
11   were dark photographic images, they were entirely black when faxed.[21]) Mattel
12   asked counsel for a legible copy of the document at the deposition, but did not
13   receive one.[22] Since then, Mattel has renewed its request in writing but neither
14   Marlow or MGA has responded or provided a legible copy of this belatedly revealed
15   contract.[23]

16          Marlow's earlier productions were similarly inadequate. Marlow has
17   provided numerous redacted documents throughout her production without
18   providing any justification for the redactions.[24] Among these redacted documents
19   were several time records for Ana Cabrera, one of the Mattel employees who
20
21
22

[19] Webster Dec., ¶ 19.
[20] Webster Dec., ¶ 19.
[21] Webster Dec., ¶ 18.
[22] Webster Dec., ¶ 20.
[23] Email from Michael Zeller to Larry McFarland dated January 4, 2008, Webster Dec., Exh. 15.
[24] Letter from B. Dylan Proctor to Larry McFarland, dated November 15, 2007, Webster Dec., Exh. 16; Letter from B. Dylan Proctor to Larry McFarland, dated November 28, 2007, Webster Dec., Exh. 17.

07209/2369078.1

EXHIBIT 67

-5-

1   worked on the Bratz dolls.[25]   Mattel met and conferred with Marlow's counsel in

2   December of 2007, and he promised that Marlow and his other clients would

3   "produce to you unredacted copies of all of the documents that we have produced

4   other than Ms. Leahy's planner."[26]   Though Marlow produced some unredacted

5   documents, she never did so for Cabrera's time sheets, among other documents.[27]

6       **E.**    **Mattel Has Yet To Obtain Access To Marlow's Computers And**

7               **Hard Drives.**

8          Ms. Marlow's counsel previously represented to Mattel that she did not

9   have any computer hard drives which she used for Bratz work.[28]   However, at her

10   deposition, Ms. Marlow testified that she has several computers, that she used at

11   least two of these computers for work-related e-mails, and at least one of these

12   computers to generate Bratz-related invoices for work done during 2000.[29]

13          Marlow was obliged to make these computers available for inspection

14   pursuant to a subpoena Mattel served on her nearly three years ago.[30]   Mattel was

15   unaware of the existence of these computers until it took Marlow's deposition, one

16   month before the close of discovery.   Mattel has since requested that the hard drives

17   be provided immediately to Mattel for imaging and analysis.[31]   Mattel has met and

18   conferred on this issue and is separately seeking an Order from Judge Larson

19   allowing Mattel to take forensic images of Ms. Marlow's drives.

20

21

    [25]   E.g., Webster Dec., Exh. 18.

22       [26]   Letter from Larry McFarland to B. Dylan Proctor, dated December 3, 2007,

23   Webster Dec., Exh. 19.

    [27]   Letter from James Webster to Larry McFarland, dated January 25, 2008,

24   Webster Dec., Exh. 20.

    [28]   Letter from B. Dylan Proctor to Larry McFarland, dated January 2, 2008,

25   Webster Dec., Exh. 21.

    [29]   Id.; Marlow Depo. Tr. at 15:10-17:22; 322:19-323:1, Webster Dec., Exh. 9.

26       [30]   Subpoena to Veronica Marlow dated March 16, 2005, Webster Dec., Exh. 22.

27       [31]   Letter from B. Dylan Proctor to Larry McFarland, dated January 2, 2008,

28   Webster Dec., Exh. 21.

07209/2369078.1

EXHIBIT **67**

## **Conclusion**

For the foregoing reasons, the Court should allow Mattel at least 14 additional hours to examine Ms. Marlow. She should also be ordered to produce all documents in legible and unredacted form, including any documents relating to her use of Mattel employees for the benefit of MGA at any time.

DATED:  January 28, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                  By /s/ James J. Webster
                                     James J. Webster
                                     Attorneys for Plaintiff
                                     Mattel, Inc.

07209/2369078.1

-13-

EXHIBIT 67

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On January 28, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS BY VERONICA MARLOW; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

Thomas J. Nolan, Esq.
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 So. Grand Ave.
Suite 3400
Los Angeles CA 90071

Larry McFarland, Esq.
**Keats McFarland & Wilson LLP**
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, CA 90212

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 28, 2008, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

07209/2169461.1

EXHIBIT ___67___

PAGE ___836___

1

### PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa

3    Street, 10th Floor, Los Angeles, California 90017-2543.

4    On January 28, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ADDITIONAL**

5    **DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS BY VERONICA MARLOW; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this

6    action as follows:

7       Larry McFarland, Esq.
        **Keats McFarland & Wilson LLP**

8       9720 Wilshire Boulevard, Penthouse Suite
        Beverly Hills, CA 90212

9

10   **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with

11   postage thereon fully prepaid.

12      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

13

14      Executed on January 28, 2008, at Los Angeles, California.

15

16                                          Yolonda J. Dekle

17

18

19

20

21

22

23

24

25

26

27

28

07209/2359511.1

EXHIBIT _67_

PAGE _837_

1

## PROOF OF SERVICE

2   I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa
3 Street, 10th Floor, Los Angeles, California 90017-2543.

4 On January 28, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ADDITIONAL**
5 **DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS BY VERONICA MARLOW; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this
6 action as follows:

7   John W. Keker      Mark E. Overland, Esq.
    Michael H. Page     David E. Scheper, Esq.
8   Christa M. Anderson    Alexander H. Cote, Esq.
    **Keker & Van Nest, LLP**   **Overland Borenstein Scheper & Kim,**
9   710 Sansome Street    **LLP**
    San Francisco, CA 94111   300 South Grand Avenue
10  **Attorneys for CARTER BRYANT** Suite 2750
             Los Angeles, CA 90071-3144
11             **Attorneys for Carlos Gustavo Machado**

12

13 **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
14 postage thereon fully prepaid.

15   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

16   Executed on January 28, 2008, at Los Angeles, California.

17

18           /s/ Yalonda J. Dekle

19           Yalonda J. Dekle

20

21

22

23

24

25

26

27

28

EXHIBIT 67

PAGE 838

# Exhibit 68

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

     Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

# CERTIFIED
# COPY

_____

AND CONSOLIDATED ACTIONS.

_____


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479

EXHIBIT _____ 68
PAGE _____ 829

877.955.3855
www.sarnoffcourtreporters.com
IRVINE □ LOS ANGELES □ SAN FRANCISCO □ LAS VEGAS □ SAN DIEGO

# SARNOFF
Court Reporters and
Legal Technologies

TRANSCRIPT OF PROCEEDINGS                03/04/09

```
 1              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
 2                  EASTERN DIVISION

 3

 4    CARTER BRYANT, an individual,

 5          vs.                      No. CV 04-9049 SGL (RNBx)
                                     Consolidated with
 6    MATTEL, INC., a Delaware       Nos. CV 04-9405 and
      corporation,                   05-2727
 7
              Defendants.
 8

 9

10

11    _____
      AND CONSOLIDATED ACTIONS.
12    _____

13

14

15

16         REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17    taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18    California, beginning at 10:08 a.m. and ending at

19    12:12 p.m. on Wednesday, March 4, 2009, before

20    CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
```

EXHIBIT ___ 68

PAGE ___ 840                2

**TRANSCRIPT OF PROCEEDINGS**                    03/04/09

```
 1    APPEARANCES:
 2
 3    Discovery Master:
 4          ROBERT C. O'BRIEN
             Attorney at Law
 5          555 West Fifth Street, Suite 4800
             Los Angeles, California  90013-1065
 6          (213) 629-7400
 7    For Defendant Mattel, Inc.:
 8          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
             BY:   MICHAEL T. ZELLER
 9          BY:   JON COREY
             Attorneys at Law
10          865 South Figueroa Street, 10th Floor
             Los Angeles, California 90017
11          (213) 624-7707
12          MATTEL, INC.
             BY:   JILL E. THOMAS
13          Assistant General Counsel
             333 Continental Boulevard
14          El Segundo, California 90245-5012
             (310) 252-2000
15
      For Defendants MGA and Isaac Larian:
16
             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
17          BY:   JASON D. RUSSELL
             BY:   JENNIFER K. DEL CASTILLO
18          Attorneys at Law
             300 South Grand Avenue
19          Los Angeles, California 90071
             (213) 687-5000
20
      For Defendant IGWT Group and IGWT 826 Investments:
21
             VALLE & ASSOCIATES
22          BY:   JEFFREY B. VALLE
             BY:   ILAN WISNIA
23          Attorneys at Law
             11911 San Vicente Boulevard, Suite 324
24          Los Angeles, California 90049
             (310) 476-0300
25
```

EXHIBIT        68

TRANSCRIPT OF PROCEEDINGS                    03/04/09

```
1    APPEARANCES (Continued):

2

3    For 808 Investors, LLC, Vision Capital, LLC, and OmniNet
     Capital, LLC:
4
          BINGHAM McCUTCHEN LLP
5         BY:   TODD E. GORDINIER
          BY:   PETER VILLAR
6         Attorneys at Law
          600 Anton Boulevard, 18th Floor
7         Costa Mesa, California 92626-1924
          (714) 830-0622
8
     Also Present:
9
          STEPHEN HAUSS
10        CRAIG HOLDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT _____ 60
PAGE _____ 842

1           MR. RUSSELL:  That's okay.

2           So going back to what I'll call the Omni

3    entities, the entities that purchased the Wachovia debt.

4    I just don't see the argument here, how that's relevant

5    even under any theory that Mr. Zeller articulated, and,

6    you know, when you put that against the burden -- and I do

7    think if we're going to -- while it is true there is not

8    the same standards of burden as in, say, New York, I think

9    it is fair to look at the burden that is imposed on third

10   parties, particularly -- if the argument is we want to

11   know the impact on MGA, whether it's a cost to MGA, they

12   can get that from MGA.  They did get some of this

13   information from MGA during phase 1.  They were allowed to

14   take discovery on the Wachovia issues.  If they're

15   dissatisfied with what they got, they know how to file

16   motions to compel on further discovery as to MGA.  But

17   let's not burden Omni since -- whether or not Omni is a

18   viable entity or where Omni got its money has nothing to

19   do with the merits, even under their theory.  What's

20   happening here is they've got a nice story they want to

21   tell, mail drops, the Isle of Nevis, that sounds great,

22   it's irrelevant.  Taking everything they say as true, and

23   we dispute it, it's still irrelevant.  It has nothing to

24   do with it.  Who cares -- Mr. Zeller told you, it doesn't

25   matter who the holder of the debt is.  I couldn't agree

EXHIBIT

41

1   more.  So on that piece, I just don't see, under any

2   theory here articulated, and our papers speak volumes to

3   this, how there can be any argument that the Omni-type

4   entities should be subjected to this discovery.

5         If there's any dispute, let's wait until after

6   Mr. Durkin finishes up his analysis, and get it from MGA.

7         And I'll note, parenthetically, that a lot of the

8   allegations that have been laid against MGA have now been,

9   in my view, cleared because Mr. Durkin has given an

10   interim report, having looked at all the domestic books

11   and records for MGA, and has determined that there was no

12   basis for a receiver based on these very allegations as to

13   Omni and as to IGWT.  So I think we can all breathe a

14   little easier.  And this is what our intention was in

15   allowing Mr. Durkin to be present in the first place.  So

16   a lot of what they're telling you has no merit.  And now

17   we can rely on Mr. Durkin and Mr. -- and Judge Larson's

18   interim rulings to this effect.

19         So with respect to Omni, I just don't see any

20   basis whatsoever for them to get the discovery.

21         With respect to the transferee entities, I think

22   the same analysis applies, and that is to say, in the

23   first instance, there's absolutely no nexus to the claims

24   that are plead in the complaint.  And whatever the size

25   and scope of the sales are -- one thing Mr. Zeller didn't

1    tell you, but they do admit in papers, they got a lot of

2    these materials already, directly from MGA.  If what they

3    care about is what was sold to IGWT, we gave them that

4    already.  MGA gave them that.  And they can take discovery

5    of MGA and find out what was sold and then they can have

6    their own experts opine on what the market value is.  Why

7    do they need to burden IGWT?  Assuming there's even

8    relevance to the claims, and I don't admit that there is,

9    but assuming that they're relevant, why do we need IGWT in

10   the first instance?  It doesn't make any sense,

11   particularly when it has nothing to do, again, with the

12   theft of trade secrets.  These are the sale of products

13   manufactured years and years after the alleged

14   transactions and occurrences that are in the complaint.

15   So we're not talking about, you know, these are the very

16   items that, you know, were lifted from Mattel's offices.

17   These are multiple generations down the line, they have

18   nothing to do with it, they're overstock product, and

19   everything they need, they either already have or they can

20   get from MGA.

21        MR. O'BRIEN:  Are those items that were sold to

22   IGWT subject to the constructive trust?  My understanding

23   is there was a constructive trust imposed --

24        MR. RUSSELL:  Pursuant to the December 3rd

25   orders?

TRANSCRIPT OF PROCEEDINGS                03/04/09

```
 1              MR. O'BRIEN:  Correct.
 2              MR. RUSSELL:  I believe the transactions all
 3    occurred prior to that date, but I don't -- I'd have to go
 4    back and look for you.  I think Mr. Valle might speak to
 5    that issue.  I don't know.
 6              MR. O'BRIEN:  Okay.  Were some of these -- was
 7    all of the product that was sold to the IGWT entities
 8    Bratz related that would have been covered by these
 9    orders?  My understanding is there are some Bratz products
10    that are covered by the orders, there are other Bratz
11    products that are not covered by the orders.  Was it a
12    mix --
13              MR. RUSSELL:  My understanding is that there were
14    some non-Bratz-type products included in this inventory,
15    you know, like Little Tykes, or something like that,
16    completely non-Bratz.  But what we're talking here, and
17    what I think they care about, are Bratz-related products,
18    would those fall within the scope of the Judge's
19    December 3rd orders if not stayed?  I think the answer is
20    yes, they would.  But there was no prohibition, even under
21    his Honor's orders, from selling those products.  There's
22    no question that they were appropriate transactions as of
23    that time.  There may be questions in their mind or
24    others, I don't know, depending on the timing, as to
25    whether they're entitled to those proceeds or to trace
```

1            I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3            That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11           Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15           I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18           IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:   MAR 0 9 2009

22

23                _Cheryl R. Kamalski_

             CHERYL R. KAMALSKI

24                CSR No. 7113

25

EXHIBIT _68_

PAGE _847_