# Exhibit 69

1  Patricia L. Glaser, State Bar No. 055668
   Pglaser@glaserweil.com
2  Joel N. Klevens, State Bar No. 045446
   Jklevens@ glaserweil.com
3  GLASER, WEIL, FINK, JACOBS
     & SHAPIRO, LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  310-553-3000
   Facsimile:  310-556-2920
6
7  Russell J. Frackman, State Bar No. 049087
   rjf@msk.com
8  MITCHELL, SILBERBERG & KNUPP, LLP
   11377 West Olympic Boulevard
9  Los Angeles, California 90064
   Telephone:  310-312-2000
10 Facsimile:  310-312-3100

11 Attorneys for the MGA Parties For Phase Two

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                   EASTERN DIVISION

15 CARTER BRYANT, an individual     )  Case No. CV 04-9049 SGL (RNBx)
                                    )
16              Plaintiff,          )  Consolidated with
                                    )  Case No. 04-09059
17 v.                               )  Case No. 05-02727
                                    )
18                                  )  **DISCOVERY MATTER**
   MATTEL, INC., a Delaware         )
19 Corporation                      )  **MGA PARTIES' OPPOSITION TO**
                                    )  **MATTEL, INC.'S 3/4/09 RENEWED**
20              Defendant.          )  **MOTION FOR**
                                    )  **RECONSIDERATION OF**
21 _____ )  **PORTIONS OF DISCOVERY**
                                    )  **MASTER'S DECEMBER 31, 2007**
22 AND CONSOLIDATED ACTIONS         )  **ORDER**
                                    )
23                                  )  [Declaration of Amman Khan filed
                                    )  concurrently herewith]
24                                  )
                                    )  Date:    April 21, 2009
25                                  )  Time:    10:00 a.m.
                                    )  Place:   555 West 5th St., Suite 4800
26                                  )           Los Angeles, CA 90013
27
28

3-11                          EXHIBIT _____ 69

## OPPOSITION TO MATTEL, INC.'S RENEWED MOTION FOR RECONSIDERATION

Mattel's 3/4/09 Renewed Motion for Reconsideration of Portions of Discovery Master's December 31, 2007 Order is moot and is indicative of the hyper-aggressive and unreasonable positions taken by Mattel in this litigation.  Mattel's Renewed Motion is unnecessary because, more than a month, ago Isaac Larian agreed to produce responsive documents, if any (*i.e.*, post-2005 communications between Larian and Mattel employees) in order to <u>avoid</u> a needless motion.  Further, Mattel's Renewed Motion is now, ***indisputably***, mooted by the fact that Larian has provided Mattel with a supplemental response to Request for Production No. 198 stating that ***no responsive post-2005 documents exist.***  (Declaration of Amman Khan ("Khan Decl."), Ex. A [Letter dated March 11, 2009 from Amman Khan to Jon Corey, enclosing Larian's Supplemental Response to Request for Production No. 198].)  Yet, Mattel insists on taking up everyone's time and money with its Renewed Motion, despite the fact there are no issues left to resolve.

Specifically, former Discovery Master Infante's December 31, 2007 Order, directed Isaac Larian to produce communications between himself and former Mattel employees, while they were employed at Mattel, from 1999 through 2005 (Request for Production No. 198 – Set One to Larian).  After the Phase 2 discovery stay was lifted on January 6, 2009, Mattel threatened to bring a motion for reconsideration of Judge Infante's Order if Larian did not agree to produce responsive documents reflecting ***post-2005*** communications.  (See Exhibit 1 to Corey Declaration attached to Renewed Motion.)  Following the parties' February 6, 2009 and February 9, 2009 meet and confer conferences, Larian agreed that he would provide responsive, non-privileged documents that post-dated 2005, if any existed.

Subsequent to the agreement, Mattel then demanded that Larian stipulate to a Court Order amending Judge Infante's December 31, 2007 Order to include post-2005 communications.  (See Exhibits 2-4 to Corey Declaration attached to Renewed

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   Motion.)  On February 27, 2009, Larian's counsel informed Mattel that there was no

2   need to enter into a stipulation in light of the fact that Larian had already agreed to

3   produce any responsive documents and urged Mattel not to file its Renewed Motion

4   because the issue would be moot when Larian made his production (or as the case

5   turned out, provided a supplemental response to Request No. 198 stating that no

6   responsive documents exist).  (See Exhibit 5 to Corey Declaration attached to

7   Renewed Motion [Email dated February 27, 2009 (10:17 a.m.) from Amman Khan to

8   Jon Corey].)  Apparently not satisfied with Larian's response, Mattel filed this instant

9   Renewed Motion.

10       Larian's agreement to produce post-2005 communications with Mattel

11   employees, if any, was done solely to avoid another pointless Mattel motion and not

12   because Mattel is correct in its most recent contention that its Counter-Claim alleges

13   post-2005 trade secret theft.  In fact, Mattel's July 12, 2007 Second Amended Answer

14   and Counterclaim ("SAAC") does not allege any trade secret misappropriation "up to

15   the present."  Mattel alleges that former Mattel employees Machado, Trueba and

16   Vargas misappropriated trade secrets in 2004 (SAAC ¶¶ 39-54), that former Mattel

17   employee Brawer misappropriated information in 2004 (SAAC ¶¶ 63-66), and that

18   former Mattel employee Brisbois misappropriated information in 2005 (SAAC ¶ 74)

19   and that other unidentified past employees misappropriated trade secrets *in the past*

20   (SAAC ¶ 77).  This is the reason that former Discovery Master Infante limited

21   Larian's production of responsive documents to pre-2006 communications.

22       Further, Mattel  falsely represents that its "allegations are not limited to [the

23   pre-2006] time period" and that, "in connection with its RICO claims, Mattel alleged

24   that the MGA Defendants, including Larian, are engaged in an ongoing, open-ended

25   conspiracy that includes the theft of Mattel's trade secrets."  (Renewed Motion at

26   3:17-20.)  In stark contrast, Mattel's RICO allegations are based entirely on the

27   purported trade secret misappropriations by former Mattel employees Machado,

28   Trueba, Vargas, Brawer and Brisbois, allegations that are limited to pre-2006

689788

EXHIBIT ___69___

PAGE ___850___

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES

1   conduct. (SAAC ¶¶ 91-92.) In addition, Mattel's SAAC does not allege that there

2   have been any post-2006 instances of trade secret theft by former Mattel employees,

3   only that there has been an alleged "continuing use" of the previously "stolen" trade

4   secrets by MGA post-2006 which constitutes the purported "ongoing conspiracy."

5   (SAAC ¶¶ 91-92). This misrepresentation in Mattel's papers by itself warrants denial

6   of its Renewed Motion.

7       In any event, not only did Larian agree on February 9, 2009 to produce the

8   documents (which by itself obviated any need by Mattel to file a Renewed Motion),

9   but Larian has now provided Mattel with a supplemental response to Request for

10  Production No. 198, which states that, despite a diligent search and reasonable

11  inquiry, no such responsive documents exist. This moots Mattel's Renewed Motion,

12  notwithstanding Mattel's false accusations and spin on the deposition testimony cited

13  in the Renewed Motion. Thus, Larian has done everything there is to do with respect

14  to this Request, and there is nothing left for the Discovery Master to consider.

15       Accordingly, Mattel's Renewed Motion should be denied as moot.

16

17  Dated: March 11, 2009             Patricia L. Glaser

                                Joel N. Klevens

18                         GLASER, WEIL, FINK, JACOBS

                           &amp; SHAPIRO, LLP

19

20                         Russell J. Frackman

                        MITCHELL, SILBERBERG & KNUPP, LLP

21

22               By: _Amman Khan_____

                        Amman Khan

23                         Attorneys for the MGA Parties

                        for Phase Two

24

25

26

27

28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On March 11, 2009, I served the foregoing document described as:

**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 3/4/09 RENEWED MOTION FOR RECONSIDERATION OF PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☒ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒ (BY EMAIL) I caused such documents to be delivered via email to the addressee(s).

☐ (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 11th day of March, 2009, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
YUMI CHUNG

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES<br>GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP<br>10250 CONSTELLATION BOULEVARD<br>NINETEENTH FLOOR<br>LOS ANGELES, CALIFORNIA 90067<br>310-553-3000

1

<u>SERVICE LIST</u>

2  Robert C. O'Brien
   Discovery Master
3  Arent Fox LLP
   555 West 5th St., Suite 4800
4  Los Angeles, CA 90013
   **[By Personal Service]**

5

6  John Quinn, Esq.
   (johnquinn@quinnemanuel.com)
   Jon D. Corey, Esq.
7  (joncorey@quinnemanuel.com)
   Michael T. Zeller, Esq.
8  (michaelzeller@quinnemanuel.com)
   Quinn Emanuel Urquhart Oliver & Hedges, LLP
9  865 South Figueroa Street, 10th Floor
   Los Angeles, CA 90017-2543
10 **[By Email Service]**

11 Russell J. Frackman, Esq.
   (rjf@msk.com)
12 Patricia H. Benson, Esq.
   (phb@msk.com)
13 Mitchell, Silberberg & Knupp, LLP
   11377 W. Olympic Blvd.
14 Los Angeles, CA 90067
   (310) 312-2000
15 **[By Email Service]**

16 Thomas J. Nolan, Esq.
   (tnolan@skadden.com)
17 Raoul D. Kennedy, Esq.
   (rkennedy@skadden.com)
18 Jason D. Russell, Esq.
   (Jason.russell@skadden.com)
19 Skadden, Arps, Slate, Meagher & Flom LLP
   300 South Grand Avenue, Suite 3400
20 Los Angeles, CA 90071-3144
   (213) 687-5000
21 **[By Email Service]**

22 Mark E. Overland, Esq.
   moverland@obsklaw.com
23 Alexander H. Cote, Esq.
   acote@obsklaw.com
24 Overland Borenstein Scheper & Kim LLP
   601 W. 5th Street, 12th Floor
25 Los Angeles, CA 90017
   **[By Email Service]**

26

27

28

6

## SERVICE LIST (continued)

1

2   Todd E. Gordinier, Esq.
    todd.gordinier@bingham.com
3   Bingham McCutchen LLP
    600 Anton Blvd., 18th Floor
4   Costa Mesa, CA 92626
    [By Email Service]
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S OPPOSITION TO MATTEL, INC.'S 3/4/09 RENEWED MOTION FOR RECONSIDERATION

669786

PAGE _____ 854

**Exhibit 70**

**Filed Under Seal**
**Pursuant to Protective Order**

# Exhibit 71

**Filed Under Seal
Pursuant to Protective Order**

# Exhibit 72

3589

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                          EASTERN DIVISION

4                            - - -

5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                            - - -

7   MATTEL, INC.,                    )

8                   PLAINTIFF,        )

9          VS.                       )    NO. CV 04-09049

10  MGA ENTERTAINMENT, INC., ET. AL.,)

11                  DEFENDANTS.       )    TRIAL DAY 17
                                      )    AFTERNOON SESSION
12  AND CONSOLIDATED ACTIONS,        )    PAGES 3589-3689

13

14

15          REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                      RIVERSIDE, CALIFORNIA

17                    TUESDAY, JUNE 24, 2008

18                         2:55 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
                RIVERSIDE, CALIFORNIA  92501
25                   951-274-0844
                WWW.THERESALANZA.COM  EXHIBIT _____ 79

                                      PAGE _____ 880

3590

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF MATTEL, INC.:

 4                           QUINN EMANUEL
                       BY:   JOHN QUINN
 5                           JON COREY
                             MICHAEL T. ZELLER
 6                           HARRY OLIVAR
                             TIMOTHY ALGER
 7                     865 S. FIGUEROA STREET,
                       10TH FLOOR
 8                     LOS ANGELES, CALIFORNIA  90017

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                       BY:   THOMAS J. NOLAN
12                           JASON RUSSELL
                             RAOUL SLOAN
13                           LAUREN AGUIAR
                             CARL ROTH
14                     300 SOUTH GRAND AVENUE
                       LOS ANGELES, CALIFORNIA  90071-3144
15                     213-687-5000

16

17   ON BEHALF OF THIRD-PARTY DEFENDANT PETER MARLOW:

18                           LAW OFFICE OF STEVEN M. GOLDSOBEL
                       BY:   STEVEN M. GOLDSOBEL
19                     1900 AVENUE OF THE STARS
                       SUITE 1800
20                     LOS ANGELES, CA  90067
                       310-552-4848
21

22

23

24

25
```

EXHIBIT 72

PAGE 881

TUESDAY, JUNE 24, 2008                     TRIAL DAY 17, AFTERNOON SESSION

3591

```
 1                        I N D E X

 2                                              PAGE

 3   DEFENSE CASE (CONTINUED) ........................  3592

 4   PLAINTIFF WITNESS...............................  3619

 5

 6   DEFENSE
     WITNESS        DIRECT      CROSS    REDIRECT    RECROSS
 7   JACQUELINE PRINCE (VIA VIDEO DEPOSITION)

 8   BY MR. ZELLER    3592

 9

10   PLAINTIFF
     WITNESS        DIRECT      CROSS    REDIRECT    RECROSS
11   PETER MARLOW

12   BY MR. ZELLER      3619
     BY MS. AGUIAR              3658
13

14

15
            EXHIBITS          RECEIVED
16
              61               3618
17            62               3618
           5723 (PP. 1,2)      3632
18         10034               3678

19

20

21

22

23

24

25
```

EXHIBIT _72_

PAGE _882_

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

3672

1   A    CORRECT.

2   Q    SO CERTAINLY, SOMEBODY -- WHEN YOU TOLD US NO ONE AT MGA

3   KNEW, AT LEAST MARIA SALAZAR, AN MGA EMPLOYEE FROM 2003 ON, SHE

4   KNEW WHAT HAD HAPPENED; RIGHT?

5   A    CORRECT.                                                    04:57

6   Q    NOW, AS FAR AS YOU KNOW, MARIA SALAZAR, TO THIS DAY, IS AN

7   MGA EMPLOYEE; IS THAT TRUE?

8   A    I DON'T KNOW.

9   Q    WELL, LAST YOU KNEW, SHE WAS AN MGA EMPLOYEE; RIGHT?

10  A    RIGHT.                                                      04:57

11  Q    DIRECTING YOUR ATTENTION TO EXHIBIT 10034.  I THINK IN

12  RESPONSE TO -- SOME OF THE QUESTIONS YOU WERE ASKED WERE

13  BASICALLY, 'DID MARIA SALAZAR EVER KNOW?  DID YOU EVER TELL HER

14  THAT SHE HAD WORKED ON BRATZ, THAT THE PRODUCT SHE WAS WORKING

15  ON WAS BRATZ WHILE SHE WAS A MATTEL EMPLOYEE?'                   04:56

16         MS. AGUIAR:  OBJECTION.  MISSTATES THE QUESTION AND

17  THE TESTIMONY.

18         THE COURT:  SUSTAINED.

19         MR. ZELLER:  I'LL REPHRASE IT, THEN.

20  BY MR. ZELLER:

21  Q    IT'S TRUE, THEN, AT SOME POINT, MARIA SALAZAR BECAME AWARE

22  THAT THE PROJECT SHE WAS SECRETLY WORKING ON WHILE A MATTEL

23  EMPLOYEE WAS A MGA PROJECT CALLED "BRATZ"?

24  A    YES.

25  Q    AND ALSO ANA CABRERA LEARNED THAT AT SOME POINT; IS THAT   04:5

EXHIBIT _____ 72

PAGE _____ 883

3673

1    TRUE?

2    A    YES.

3    Q    AND BEATRIZ MORALES LEARNED THAT AT SOME POINT AS WELL?

4    A    YES.

5    Q    ISN'T IT TRUE THAT YOU USED PHONY NAMES IN DOCUMENTS TO          04:58

6    COVER UP THE FACT THAT THESE MATTEL EMPLOYEES WERE SECRETLY

7    WORKING ON BRATZ WHILE MATTEL EMPLOYEES?

8    A    IT WASN'T MY INTENT TO COVER ANYTHING UP.

9    Q    WHETHER YOU INTENDED TO OR NOT, THAT IS WHAT YOU DID; IS

10   THAT NOT TRUE?                                                        04:59

11   A    CORRECT.

12   Q    AND IN AT LEAST SOME OF THOSE DOCUMENTS THAT YOU

13   PROVIDED -- AND ALSO WHAT YOU DID IS, NOT ONLY USED PHONY NAMES

14   FOR PEOPLE IN THESE DOCUMENTS; YOU USED PHONY SOCIAL SECURITY

15   NUMBERS; CORRECT?                                                     04:59

16   A    I WASN'T AWARE THAT THEY WERE PHONY.

17   Q    I'M SORRY?

18   A    I WASN'T AWARE OF THAT AT THE TIME.

19   Q    YOU CERTAINLY BECAME AWARE OF IT AT SOME POINT THAT THAT'S

20   WHAT YOU WERE DOING; RIGHT?                                           04:59

21   A    RIGHT.

22   Q    IN FACT, BACK IN 2003, YOU GOT A NOTICE FROM THE I.R.S.

23   TELLING YOU THAT THOSE SOCIAL SECURITY NUMBERS FOR THE WORK

24   THAT WAS BEING DONE AND THE PAYMENTS THAT WERE BEING MADE WERE

25   WRONG.                                                                04:59

3674

| 1 | A    RIGHT. |
|---|---|

2   Q    SO YOU CERTAINLY HAD AN INKLING OR AN UNDERSTANDING BY

3   THAT POINT THAT THE SOCIAL SECURITY NUMBERS THAT WERE BEING

4   USED WERE PHONY.

5            MS. AGUIAR:  OBJECTION.  RELEVANCE.                    04:59

6            THE COURT:  OVERRULED.  THIS IS IMPEACHMENT.

7            THE WITNESS:  THAT'S RIGHT.

8   BY MR. ZELLER:

9   Q    AND WHAT DID YOU DO ONCE YOU RECEIVED THAT NOTICE FROM THE

10  I.R.S. THAT THERE WAS SOMETHING WRONG WITH THOSE TAX DOCUMENTS    05:00

11  BECAUSE YOU WERE USING PHONY SOCIAL SECURITY NUMBERS TO COVER

12  UP THE FACT THAT THESE MATTEL EMPLOYEES WERE WORKING ON BRATZ

13  SECRETLY?

14  A    I ASKED THE MATTEL EMPLOYEES TO PLEASE GIVE ME CORRECT

15  SOCIAL SECURITY NUMBERS.                                          05:00

16  Q    WHEN DID YOU DO THAT, SIR?

17  A    AFTER RECEIVING THE NEXT NOTICE.

18  Q    YOU DID THAT RIGHT WITHIN THE LAST COUPLE OF WEEKS.

19  A    WELL, ACTUALLY, IT WAS IN 2005.

20  Q    SO YOU WAITED THREE YEARS?  TWO YEARS?                       05:00

21  A    THAT WAS THE TIME I RECEIVED THE NEXT NOTICE.

22  Q    SO DIRECTING YOUR ATTENTION, THEN, TO EXHIBIT 10034.

23  A    RIGHT.

24  Q    YOU RECOGNIZE THIS, GENERALLY SPEAKING, AS AN EMPLOYMENT

25  APPLICATION THAT MARIA SALAZAR FILLED OUT FOR MGA BACK IN THE     05:0

EXHIBIT _____ 72

PAGE 885

3675

| | |
|---|---|
| 1 | 2003 TIME PERIOD; IS THAT TRUE? |
| 2 | MS. AGUIAR: OBJECTION. FOUNDATION. |
| 3 | THE COURT: ASK THE QUESTION, COUNSEL.. |
| 4 | MR. ZELLER: LET ME TRY IT THIS WAY, YOUR HONOR: THE |
| 5 | DOCUMENT IS IN EVIDENCE. |
| 6 | THE COURT: RELEVANCY HAS BEEN ESTABLISHED. |
| 7 | YOU MAY PUBLISH IT, COUNSEL. |
| 8 | MR. ZELLER: THANK YOU, YOUR HONOR. |
| 9 | IF WE COULD SHOW, PLEASE, EXHIBIT 10034. |
| 10 | THE COURT: I'M SOMEWHAT CONCERNED ABOUT THE TIME AT |
| 11 | THIS POINT. I KNOW THIS WITNESS HAS BEEN WAITING NUMEROUS |
| 12 | DAYS, AND THE ATTORNEYS HAVE BEEN WAITING. WE'RE AT THE 5:00 |
| 13 | HOUR. |
| 14 | BEFORE I ASK THE JURY IF THEY WILL WAIT FOR A FEW |
| 15 | MORE MINUTES, HOW MUCH LONGER DO YOU ANTICIPATE THAT YOU HAVE? |
| 16 | MR. ZELLER: I WOULD ANTICIPATE THAT IT IS PROBABLY |
| 17 | TEN MINUTES, YOUR HONOR. |
| 18 | THE COURT: MEMBERS OF THE JURY, ARE YOU ABLE TO |
| 19 | WAIT? IS ANYONE NOT ABLE TO WAIT? |
| 20 | YOU NEED TO LEAVE? |
| 21 | VERY GOOD. |
| 22 | WE'RE GOING TO HAVE TO RESUME WITH THIS ON JULY 1ST, |
| 23 | WHEN WE RESUME TESTIMONY. |
| 24 | YES, COUNSEL? |
| 25 | MR. GOLDSOBEL: I'LL BE OUT OF TOWN, YOUR HONOR, ON A |

05:01
05:01
05:01
05:01
05:02

3689

```
 1            HAVE A GOOD WEEK.  I'LL SEE YOU NEXT TUESDAY.

 2            THE CLERK:   COURT STANDS ADJOURNED.

 3

 4

 5

 6

 7

 8

 9

10                        CERTIFICATE

11

12   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
13   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
14   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
15

16

17   THERESA A. LANZA, RPR, CSR            6-30-08
     OFFICIAL COURT REPORTER                 DATE
18

19

20

21

22

23

24

25

                                    EXHIBIT _____ 72

TUESDAY, JUNE 24, 2008              TRIAL DAY 17, AFTERNOON SESSION
                                    PAGE  887
```

# Exhibit 73

## CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12            Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                   ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL MGA TO
16                                         ANSWER REQUESTS FOR
                                           ADMISSION
17  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21

22

23                        I. INTRODUCTION

24      On May 25, 2007, Mattel filed a "Motion To Compel MGA To Answer Requests For

25  Admission And To Compel Amended Answers Or Order Requests Admitted And For Monetary

26  Sanctions." On June 5, 2007, MGA filed an opposition, and on June 12, 2007, Mattel filed a

27  reply. Thereafter the motion was deferred pending the resolution of MGA's motion to dismiss

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___73___

PAGE ___888___

1   and completion of the meet and confer process.  See Order Deferring Mattel's Motion to Compel

2   MGA to Answer Requests for Admission.  On June 27, 2007, Judge Larson entered an order

3   denying MGA's motion to dismiss Mattel's trade secret claims, and on August 9, 2007, Mattel

4   submitted an updated Statement of Rule 37-1 Compliance.  Also on August 9, 2007, the parties

5   submitted a joint statement indicating that they were able to resolve substantially all of the issues

6   raised in Mattel's motion.  As a result of the parties' meet and confer efforts, only the following

7   requests for admission remain in dispute: Nos. 186-190, 192, 193, 199, 200, 206, 207, 213, 214,

8   222-224, 226, 228, 230, 232, 234, 236, 238 and 240 of Mattel's Third Set of Requests for

9   Admission.  Mattel also continues to seek monetary sanctions with respect to the requests for

    admission identified above.

10          For the reasons set forth below, Mattel's motion to compel is granted and the motion for

11  sanctions is denied.

12                                      II. BACKGROUND

13          On February 28, 2007, Mattel propounded its Third Set of Requests for Admission

14  to MGA (the "Requests for Admission").  Among other things, the requests for admission ask

15  MGA to admit that certain copyrighted works are derivative of other Bratz works and that certain

16  copyrighted works are "substantially similar" to other Bratz works (Nos. 192, 193, 199, 200, 206,

17  207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, and 240).[1]  Other requests ask MGA

18  to admit certain facts pertaining to statements MGA made to the press about MGA's and Mattel's

19  labor practices (Nos. 186-190).  The National Labor Committee issued a report titled "Made in

20  China: The Sweatshop Behind the Bratz" documenting "sweatshop" conditions and labor abuses

21  at the Hua Tai 4K factory in China where Bratz dolls are manufactured.  According to Mattel,

22  MGA stated in a press release that "it is not familiar with the company named in the report," that

23  "MGA uses first rate factories in the orient to make its goods," and that "[t]he same factories

24  make products for the world's biggest toy manufacturers including Mattel."  Associated Press

25

26          [1]  Hereinafter, these requests are collectively referred to as the "requests for admission regarding copyright
        registrations."

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ____73____

PAGE ____289____

article dated December 22, 2006, Kidman Decl., Ex. 21. Mattel's requests for admission ask MGA to admit that the Hua Tai 4k factory is one of the factories used by MGA to manufacture Bratz dolls (No. 186), that MGA made the above-reference statements to the media (Nos. 187-188), that as of the date of those statements, the Hua Tai 4K factory did not manufacture products for Mattel (No. 189), and that MGA knew the Hua Tai 4K factory did not manufacture products for Mattel (No. 190).

On March 30, 2007, MGA served its Responses objecting to the requests for admission regarding copyright registrations on the grounds that they called for "a legal conclusion" and "the disclosure of attorney-client privileged information or information protected from disclosure by the work-product doctrine, joint defense or common interests privilege or other privilege." Kidman Decl., Ex. 11. As for the remainder of the requests for admission at issue (Nos. 186-190), MGA objected that the requests were "vague and ambiguous" and sought information that was not relevant to any claim or defense in the suit. The instant motion ensued.

With respect to the requests for admission regarding copyright registrations, Mattel contends that Rule 36, Fed.R.Civ.P., authorizes requests that call for a legal conclusion so long as the legal conclusion relates to the facts of the case. Mattel contends that it has sued MGA for copyright infringement, and therefore the requests for admission regarding copyright registrations clearly relate to the facts of the case. Further, Mattel contends that MGA's privilege and work product objections are without merit. Mattel argues that a party cannot avoid answering requests for admission that involve the application of law to fact by claiming that it needs to confer with counsel in order to do so. Mattel contends that to hold otherwise would effectively gut the provision of Rule 36 authorizing such requests.

As to the remaining requests for admission, Mattel contends that they seek admissions that are clearly relevant to its claim that MGA has engaged in unfair competition by, among other things, "repeatedly issu[ing] false and misleading press releases" about Mattel. Mattel's Counterclaim, ¶¶81 and 165, Kidman Decl., Ex. 7. Mattel also contends that the requests for admission seek information relevant to Mattel's defenses to MGA's unfair competition claims and causation of alleged damages on those claims. For example, Mattel contends that the requests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 73
PAGE _____ 870

1  for admission could show that any decline in sales, lost profits or loss of goodwill and reputation

2  MGA seeks to attribute to Mattel's conduct was caused or contributed to the public's negative

3  reaction to MGA's alleged "sweatshop" labor practices.

4        In opposition, MGA stands by its objections that the requests for admission regarding

5  copyright registrations are improper because they call for a legal conclusion and require the

6  disclosure of information protected by the attorney-client privilege and work product doctrine.

7  MGA reasons that any knowledge it could have regarding whether copyright works are

8  "derivative" or "substantially similar" to other works must necessarily come from the opinions of

9  its counsel.

10       MGA contends that the remaining requests regarding its comments to the press are

11  irrelevant to any claim or defense.  MGA points out that Mattel's counterclaims do not mention

12  any comments regarding the Hua Tai 4K factory or MGA's or Mattel's labor practices.  Rather,

13  Mattel's counterclaims are based upon alleged comments by Isaac Larian regarding Mattel's

14  MyScene My Bling Bling dolls with real gems.  Furthermore, MGA contends that the Request

15  Nos. 186-190 cannot support any defense against MGA's unfair competition claims because those

16  claims were filed well before the alleged press statements were made.

17  III. DISCUSSION

18       Rule 36 of the Federal Rules of Civil Procedure governs requests for admission and

19  provides, in pertinent part, that "[a] party may serve upon any other party a written request for the

20  admission, for purposes of the pending action only, of the truth of any matters within the scope of

21  Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the

22  application of law to fact, including the genuineness of any documents described in the request."

23  Fed.R.Civ.P. 36(a).  Further, "[a] party who considers that a matter of which an admission has

24  been requested presents a genuine issue for trial may not, on that ground alone, object to the

25  request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons

26  why the party cannot admit or deny it."  Id.

27       "Rule 36 serves two vital purposes, both of which are designed to reduce trial time.

28  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____73___

PAGE _____891_____

from the case, and secondly, to narrow the issues by eliminating those that can be."  The Advisory Committee Notes to the 1970 Amendment to Rule 36; <u>see also</u> <u>Asea, Inc. v. Southern Pac. Transp. Co.</u>, 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.").

The Advisory Committee Notes to the 1970 Amendment to Rule 36 provide the following additional guidance:

> As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact.  It thereby eliminates the requirement that the matters be "of fact."  This change resolves conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the rule. . . .
>
>                                      *   *   *
>
> Not only is it difficult as a practical matter to separate "fact" from "opinion," see 4 *Moore's Federal Practice* ¶36.04 (2d ed. 1966); cf. 2A Barron & Holtzoff, *Federal Practice and Procedure* 317 (Wright ed. 1961), but an admission on a matter of opinion may facilitate proof or narrow the issues or both. An admission of a matter involving the application of law to fact may, in a given case, even more clearly narrow the issues.  For example, an admission that an employee acted in the scope of his employment may remove a major issue from the trial.  In *McSparran v Hanigan*, [225 F. Supp. 628 (E.D. Pa. 1963)], plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants, 225 F.Supp. at 636.  This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial.  The amended provision does not authorize requests for admissions of law unrelated to the facts of the case.

1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P.

<u>Requests For Admission re Copyright Registrations (Nos. 192, 193, 199, 200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, and 240)</u>

Mattel's requests for admission regarding copyright registrations are written in essentially the same format.  For example, Request No. 192 asks MGA to "[a]dmit that the work registered as VA 1-090-287 is a derivative of the work registered as VA 1-218-487."  Kidman Decl., Ex. 11. Request No. 193 asks MGA to "[a]dmit that the work registered as VA 1-090-287 is substantially similar to the work registered as VA 1-218-487."  <u>Id.</u>

Rule 36 plainly states that requests for admission may "relate to statements or opinions of fact or the application of law to fact."  Mattel's requests for admission fall within this permissible

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____73____

PAGE ____938____

1    category. Courts have required parties to answer requests for admission similar to Mattel's

2    requests. For example, in McSparran, supra, the plaintiff admitted that "the premises on which

3    said accident occurred, were occupied or under the control" of one of the defendants. In

4    Marchand v. Mercy Med. Ctr., 22 F.3d 933, 937 (9th Cir. 1994), the Ninth Circuit found that a

5    request to admit that defendant's care and treatment of plaintiff failed to comply with the

6    "applicable standards of care" was permissible. In First Options of Chicago, Inc. v. Wallenstein,

7    1996 WL 729816 (E.D. Pa. 1996), the court ordered defendants to answer requests to admit that

8    they "owed a fiduciary duty" to certain creditors to preserve corporate assets. Id. at *3. In

9    Treister v. PNC Bank, 2007 WL 521935 (S.D. Fla. 2007), the court found that a request for

10   defendant to admit that it was not required to provide plaintiffs with copies of cancelled checks

11   drawn on their accounts "clearly calls for an application of law to fact." Id. at *2.

12          Despite the stated purpose of the 1970 amendments to Rule 36  to "resolve conflicts in the

13   court decisions as to whether a request to admit matters of 'opinion' and matters involving 'mixed

14   law and fact' is proper under the rule, there apparently continues to exist a split of authority.

15   MGA cites to several cases for the proposition that a request for admission calling for legal

16   conclusion is improper.  See e.g., Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050 (S.D.

17   Cal. 1999) (defendant allowed to object to requests asking her to admit she was a public figure

18   and admit that a contract provision required her to obtain permission from plaintiff before using

19   "Playmate of the Year" because the requests asked for a conclusion of law); Tulip Computers

20   Int'l. B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002) ("Moreover, requests that

21   seek legal conclusions are not allowed under Rule 36."); Border Collie Rescue, Inc. v. Ryan, 418

22   F.Supp.2d 1330, n. 12 (M.D. Fla. 2006) (requests asking defendant to admit that he defamed

23   plaintiffs and "knowingly and maliciously published false statements of fact" concerning

24   plaintiffs deemed improper); Tuvalu v. Woodford, 2006 WL 3201096, at *7 (E.D. Cal. 2006)

25   ("[R]equests for admission should not be used . . . to demand that the other party admit the truth

26   of a legal conclusion, even if the conclusion is attached to operative facts. . .") (quotations

27   omitted); and Fuentes v. Knowles, 2007 WL 1946619, at *2 (E.D. Cal. 2007) (requests asking

28   defendant to admit that prisoners should be provided access to medical care, that defendant should

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

73

EXHIBIT

PAGE 893

1   not delay access to care, and that defendant was aware of his responsibilities under certain

2   caselaw and statute were held improper as seeking "interpretations of law which is outside the

3   scope of defendant's knowledge" and legal conclusions). None of these cases are binding

4   authority, however. Furthermore, without knowing all of the factual circumstances that led to the

5   decisions in each of the cases cited above, it appears that most of them are inconsistent with the

6   plain language of Rule 36 and the guidelines set forth in the Advisory Committee Notes. See e.g.,

7   Playboy Enterprises, Inc., supra; Tulip, supra, Border Collie Rescue, Inc., supra. Rule 36

8   expressly allows requests for admission relating to "the application of law to fact." Fed.R.Civ.P.

9   36(a). Furthermore, the Advisory Committee Notes provide two examples of such requests: an

10  admission that an employee acted in the scope of his employment; and an admission that the

11  premises on which an accident occurred were occupied or under the control of a defendant. The

12  Advisory Committee Notes make it clear that these types of requests calling for legal conclusions

13  are permissible, and in doing so, distinguish the requests that call for admissions of law unrelated

14  to the facts of the case, which are not authorized.

15  Mattel's requests for admission regarding copyright registrations do not ask for pure

16  conclusions of law unrelated to the facts of the case, and MGA does not contend otherwise. Each

17  of Mattel's requests relates to the copyrighted works allegedly owned by MGA. Furthermore,

18  these requests are clearly designed to help narrow the issues for trial, which is a major purpose of

19  Rule 36. See 1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P. Therefore, MGA's

20  "legal conclusion" objection is overruled.

21  MGA's privilege and work product objections are also without merit. The fact that MGA

22  may need to consult with counsel to respond to the requests does not make the response

23  privileged. To hold otherwise would effectively gut the provision of Rule 36 authorizing requests

24  that call for the application of law to fact. See also Convergent Business Systems, Inc. v.

25  Diamond Reporting, Inc., 1989 WL 92038, at *1 (E.D.N.Y. 1988) ("Seeking the facts and

26  documents which support a particular allegation in a complaint violates neither the attorney-client

27  or work product privileges.").

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___73___

PAGE ___894___

1    Mattel's motion is granted as to the requests for admission regarding copyright

2  registrations.

3

4    Requests for Admission re MGA's Alleged Statements To The Press (Nos. 186-190)

5    The requests for admission regarding MGA's alleged statements to the press seek relevant

6  information within the scope of Rule 26(b)(1), Fed.R.Civ.P. In its counterclaims, Mattel alleges

7  that MGA made false statements about Mattel's MyScene My Bling Bling products. Mattel

8  further alleges that "[s]uch conduct is not an isolated incident. MGA and Larian, in an effort to

9  gain an unfair advantage, repeatedly issued false and misleading press releases." Mattel's

10  Counterclaims, ¶81, Kidman Decl. Ex. 7. Request Nos. 186-190 are directly relevant to MGA

11  and Larian's allegedly ongoing conduct. These requests for admission are also relevant to support

12  Mattel's defense against MGA's unfair competition claim. Mattel intends to show that the public

13  report regarding MGA's alleged "sweatshop" labor practices may have caused or contributed to

14  the decline in sales, profits, and dilution of goodwill and reputation allegedly caused by Mattel's

15  anticompetitive conduct.

16    Therefore, MGA's objection based upon relevancy is overruled and MGA is ordered to

17  admit or deny Request Nos. 186-190 consistent with Rule 36(a), Fed.R.Civ.P.

18                              IV. CONCLUSION

19    For the reasons set forth above, Mattel's motion to compel is granted. MGA shall provide

20  responses to the requests for admission no later than August 30, 2007. Mattel's motion for

21  sanctions is denied.

22    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

23  Master, Mattel shall file this Order with the Clerk of Court forthwith.

24  Dated:  August 20 , 2007

25

26  _____
    HON. EDWARD A. INFÁNTE (Ret.)
27  Discovery Master

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

8

EXHIBIT ___73___

PAGE ___895___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 20, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO ANSWER REQUESTS FOR ADMISSION in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | crna@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 20, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT ___73___

PAGE ___896___

# Exhibit 74

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation

V.

CARTER BRYANT, an Individual; and DOES 1
through 10, inclusive

## SUBPOENA IN A CIVIL CASE

Case Number:[1] CV 04-9049-SGL
Consolidated with cases CV 04-9059 and
CV 05-2727

TO: Farhad Larian
160 Delfern Drive
Los Angeles, CA 90077

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.     Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | October 1, 2007 |
| 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | 9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | September 18, 2007 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017          (213) 443-3000 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael T. Zeller* | |
| Attorney for Plaintiff, Mattel, Inc. | August 31, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Michael T. Zeller, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017          (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

8/31

EXHIBIT 74 AO-88

PAGE 897

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 9/1/2007 | 160 Delfern Drive<br>Los Angeles, CA 90077 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| FARHAD LARIAN<br>(Witness Fee Paid $52.00) | Personal<br>(Served 9-1-07 at 4:25 p.m.) |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Michelle Zavala | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on | 9/4/2007 | _Michelle Zavala_ |
|---|---|---|
| | DATE | SIGNATURE OF SERVER |

Now Legal Service, 1301 W. 2nd St., #206, Los

ADDRESS OF SERVER

Angeles, CA 90026, (213) 482-1567, L.A. Cty. #5426

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises— or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena was issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Exhibit

PAGE _898_

## ATTACHMENT A

### Documents To Be Produced

1.   <u>DEFINITIONS.</u>

a.   "YOU" or "YOUR" means Morad Zarabi, and all of YOUR current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

b.   "FARHAD LARIAN" means Farhad Larian (also known as Fred Larian), and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to YOUR authority or subject to his control.

c.   "ISAAC LARIAN" means Isaac Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

d.   "CARTER BRYANT" means Carter Bryant, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

e.   "ERNEST DUTCHER" means Ernest Dutcher, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

f.   "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product,

EXHIBIT ___74___
PAGE ___899___

doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

g.    "ANGEL" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Angel" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Angel" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "ANGEL" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

h.    "PRAYER ANGELS" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Prayer Angels" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "PRAYER ANGELS" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

i.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork,

07209/1934291.1                                    - 2 -

EXHIBIT ___74___

PAGE ___900___

sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.  As used herein, the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

    j. "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

    k. "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

    l. "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

    m. "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, COMMUNICATIONS, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type

EXHIBIT  74

PAGE  90

is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

n.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

o.    "RELATING TO" means referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying, stating, dealing with, concerning, commenting on, summarizing, responding to, relating to, describing or discussing in any way.

p.    "FAMILY MEMBER" means any PERSON who at any time is, was or has been a spouse, or child of another PERSON.

r.    "IDENTIFY" or "IDENTITY" means the following:

(i)    With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder, including without limitation each beneficial holder, of each such account.

(ii)    With reference to a telephone subscription account, means the name and address of the carrier, the telephone number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account.

(iii)    With reference to an email account, means the name and address of the service provider of such account, the email address(es) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account.

EXHIBIT _____ 74

PAGE _____ 902

s.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

t.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of DOCUMENTS or information.

2.    INSTRUCTIONS.

a.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

(1)    The privilege or protection that you claim precludes disclosure;

(2)    The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

(3)    The date, author(s), addressee(s); and

(4)    Any additional facts on which YOU would base YOUR claim of privilege or protection.

c.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

d.    YOU are required to identify the source of all DOCUMENTS

EXHIBIT ___74___

PAGE ___903___

produced, and the person for whom, or department, division or office for which, such
DOCUMENTS are maintained.

e.   Each DOCUMENT shall be produced in its original file folder, or
in lieu thereof, any writing on the file folder from which each such DOCUMENT is
taken shall be copied and appended to such DOCUMENT.

## 3.   DOCUMENTS TO BE PRODUCED.

(1)   All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO any and all arbitration proceedings between FARHAD LARIAN and ISAAC
LARIAN, including without limitation all video and/or sound recordings, transcripts,
exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony
given by any PERSON in connection with such arbitration proceedings.

(2)   All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO the Agreement to Arbitrate and Selection of Arbitrator, entered into on or about
September 28, 2000, between FARHAD LARIAN and ISAAC LARIAN, including
without limitation any and all actual, proposed, offered or requested amendments or
modifications thereto.

(3)   All DOCUMENTS, including without limitation any and all pleadings,
briefs, decisions, orders, correspondence and other COMMUNICATIONS, created,
reviewed, transmitted or received by YOU in connection with any arbitration
proceedings, including any pre-arbitration and post-arbitration proceedings, or any
other dispute between FARHAD LARIAN and ISAAC LARIAN.

(4)   All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO the Agreement for Sale of Stock, entered into on or around December 4, 2000,
between FARHAD LARIAN and ISAAC LARIAN, including without any and all
actual, proposed, offered or requested amendments or modifications thereto.

(5)   All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO Los Angeles Superior Court Case No. BC301371 brought by FARHAD LARIAN
against ISAAC LARIAN and/or any related proceedings, including any appeal
thereof, and including without limitation all video and/or sound recordings,
transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations,
affidavits and sworn testimony given by any PERSON in connection with such suit
and/or related proceedings and/or any appeal related to such lawsuit.

07209/1934291.1                                    - 6 -

PAGE ___ 74 / 904

(6)     All DOCUMENTS RELATING TO CARTER BRYANT, including without limitation his agreement with MGA dated "as of" September 18, 2000, his work on BRATZ and his employment by MATTEL.

(7)     All DOCUMENTS RELATING TO BRATZ that discuss, concern or reference the time period prior to January 1, 2002, regardless of when such DOCUMENT was generated, created or transmitted.

(8)     All DOCUMENTS RELATING TO the origin(s), conception or creation of BRATZ, including without limitation any and all statements by ISAAC LARIAN or any other PERSON relating thereto at any time.

(9)     All DOCUMENTS RELATING TO ANGEL.

(10)    All DOCUMENTS RELATING TO PRAYER ANGELS.

(11)    All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by FARHAD LARIAN against YOU, ISAAC LARIAN, and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

(12)    ALL DOCUMENTS, including all COMMUNICATIONS, RELATING TO any financial appraisal of MGA and/or BRATZ, including without limitation any appraisal or appraisals performed by ERNEST DUTCHER and any instructions given to ERNEST DUTCHER regarding such appraisal or appraisals.

(13)    All DOCUMENTS RELATING TO any financial or other information considered, relied upon or used in any manner to conduct any valuation or appraisal of MGA and/or BRATZ, including without limitation for the time period of 1999, 2000 and/or 2001.

(14)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the meeting on or around January 26, 2003 between YOU, FARHAD LARIAN, ISAAC LARIAN, and Mike Shenasafar, including without limitation all video and/or

07209/1934291.1                                  - 7 -

EXHIBIT _____ 84

PAGE _____ 905

sound recordings and notes relating thereto.

(15)   DOCUMENTS sufficient to identify any and all appraisers, accountants and consultants who participated or were involved in any arbitration, including pre-arbitration proceedings, between FARHAD LARIAN and ISAAC LARIAN.

(16)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO allegations that ISAAC LARIAN concealed from FARHAD LARIAN and/or from YOU facts relating to BRATZ and/or CARTER BRYANT.

(17)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that ISAAC LARIAN, ISAAC LARIAN'S FAMILY MEMBERS, FARHAD LARIAN, FARHAD LARIAN'S FAMILY MEMBERS and/or MGA have made, have offered or have proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at any time from January 1, 1999 through the present.

(18)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that any PERSON has made, has offered or has proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS and that was related in any way to BRATZ, BRYANT, MGA or this ACTION at any time from January 1, 1999 through the present.

(19)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any contract or agreement, or any proposed, offered or requested contract or agreement, between YOU and/or any of YOUR FAMILY MEMBER, on the one hand, and ISAAC LARIAN, any FAMILY MEMBER of ISAAC LARIAN, FARHAD LARIAN, any FAMILY MEMBER of FARHAD LARIAN and/or MGA, on the other hand, at any time since January 1, 1999, including without limitation any and all actual, proposed, offered or requested amendments or modifications thereto, and including without limitation: (a) any and all employment and consulting agreements, (b) any and all fee or indemnification agreements.

(20)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any contract or agreement, or any proposed, offered or requested contract or agreement, between ISAAC LARIAN, any FAMILY MEMBER of ISAAC LARIAN and/or MGA, on the one hand, and FARHAD LARIAN or any FAMILY MEMBER of FARHAD LARIAN, on the other hand, including without limitation any and all

07209/1934291.)                                    - 8 -



employment and consulting agreements, any and all fee or indemnification agreements and any and all agreements, resolutions or compromises of any lawsuit, arbitration or other dispute.

(21) All DOCUMENTS RELATING TO this ACTION.

(22) All DOCUMENTS RELATING TO any instruction by YOU, ISAAC LARIAN, FARHAD LARIAN or MGA to destroy or withhold any DOCUMENT since January 1, 1998, including without limitation in connection with any lawsuit.

(23) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the preservation, retention or destruction of any DOCUMENT or DOCUMENTS that are sought by or the subject of Request Nos. 1 through 22, inclusive.

(24) DOCUMENTS sufficient to IDENTIFY (a) each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in, since January 1, 1999 through the present; (b) each telephone subscription service account that YOU have or have had, or that YOU use or have used, since January 1, 1999 through the present; and (c) each email account that YOU have or have had, or that YOU use or have used, since January 1, 1999 through the present.

EXHIBIT ___74___

PAGE ___707___

A088 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

_____CENTRAL_____ DISTRICT OF __CALIFORNIA__

MATTEL, INC., a Delaware Corporation

## SUBPOENA IN A CIVIL CASE

v.

CARTER BRYANT, an Individual; and DOES 1 through 10, inclusive

Case Number:[1] CV 04-9049-SGL
Consolidated with cases CV 04-9059 and CV 05-2727

TO:  Farhad Larian
     160 Delfern Drive
     Los Angeles, CA 90077

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.    Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | October 1, 2007 |
| 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | 9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | September 18, 2007 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017            (213) 443-3000 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael T. Z—* | |
| Attorney for Plaintiff, Mattel, Inc. | August 31, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Michael T. Zeller, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017      (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

8|31

EXHIBIT 74
PAGE 908

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|

SERVED

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

| | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT  74

PAGE  909

## ATTACHMENT A

### Documents To Be Produced

1.   **DEFINITIONS.**

     a.   "YOU" or "YOUR" means Farhad Larian, and all of YOUR current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

     b.   "MORAD ZARABI" means Morad Zarabi, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to YOUR authority or subject to his control.

     c.   "ISAAC LARIAN" means Isaac Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

     d.   "BRYANT" means Carter Bryant, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

     e.   "ERNEST DUTCHER" means Ernest Dutcher, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

     f.   "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold

EXHIBIT _____ 74

PAGE _____ 910

or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

   g. "ANGEL" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Angel" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Angel" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "ANGEL" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

   h. "PRAYER ANGELS" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Prayer Angels" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "PRAYER ANGELS" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

   i. "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

07209/1934291.1     - 2 -

EXHIBIT ___ 74

PAGE ___ 9(1

diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part. the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

        j.    "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

        k.    "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

        l.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

        m.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, COMMUNICATIONS, facsimiles, electronic mail, records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or

EXHIBIT _____ 74

PAGE _____ 912

other versions of the DOCUMENT, including without limitation all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

n.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

o.    "RELATING TO" means referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying, stating, dealing with, concerning, commenting on, summarizing, responding to, relating to, describing or discussing in any way.

p.    "FAMILY MEMBER" means any PERSON who at any time is, was or has been a spouse or child of another PERSON.

r.    "IDENTIFY" or "IDENTITY" means the following: (i) With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder, including without limitation each beneficial holder, of each such account. (ii) With reference to a telephone subscription account, means the name and address of the carrier, the telephone number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account. (iii) With reference to an email account, means the name and address of the service provider of such account, the email address(es) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account.

s.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

EXHIBIT _____ 74

PAGE _____ 913

t.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of DOCUMENTS or information.

2.    INSTRUCTIONS.

a.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

(1)    The privilege or protection that you claim precludes disclosure;

(2)    The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

(3)    The date, author(s), addressee(s); and

(4)    Any additional facts on which YOU would base YOUR claim of privilege or protection.

c.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

d.    YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

e.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

EXHIBIT       74

PAGE       714

3.    <u>DOCUMENTS TO BE PRODUCED.</u>

(1)    All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO any and all lawsuits and arbitration proceedings between YOU and ISAAC
LARIAN, including without limitation all video and/or sound recordings, transcripts,
exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony
given by any PERSON in connection with such arbitration proceedings.

(2)    All DOCUMENTS, including without limitation any and all pleadings,
briefs, decisions, orders, correspondence and other COMMUNICATIONS, created,
reviewed, transmitted or received by YOU in connection with any lawsuit or
arbitration proceedings, including without limitation any pre-arbitration and post-
arbitration proceedings, or any other dispute between YOU and ISAAC LARIAN.

(3)    All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO any contract or agreement, or any proposed, offered or requested contract or
agreement, between YOU and/or any of YOUR FAMILY MEMBER, on the one
hand, and ISAAC LARIAN, any FAMILY MEMBER of ISAAC LARIAN and/or
MGA, on the other hand, at any time since January 1, 1999, including without
limitation any and all actual, proposed, offered or requested amendments or
modifications thereto, and including without limitation: (a) the Agreement for Sale of
Stock, entered into on or around December 4, 2000, between YOU and ISAAC
LARIAN, (b) the Agreement to Arbitrate and Selection of Arbitrator, entered into on
or about September 28, 2000, between YOU and ISAAC LARIAN, (c) any and all
employment and consulting agreements, (d) any and all settlements, resolutions or
compromises of any kind, and (e) any and all fee or indemnification agreements.

(4)    All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO Los Angeles Superior Court Case No. BC301371 brought by YOU against ISAAC
LARIAN and/or any related proceedings, including any appeal thereof, and including
without limitation all video and/or sound recordings, transcripts, exhibits, pleadings,
briefs, memoranda, witness statements, declarations, affidavits and sworn testimony
given by any PERSON in connection with such suit and/or related proceedings and/or
any appeal related to such lawsuit.

(5)    All DOCUMENTS RELATING TO BRYANT, including without
limitation his agreement with MGA dated "as of" September 18, 2000, his work on
BRATZ and his employment by MATTEL.

EXHIBIT  74
PAGE  915

(6)    All DOCUMENTS RELATING TO BRATZ that discuss, concern or reference the time period prior to January 1, 2002, regardless of when such DOCUMENT was generated, created or transmitted.

(7)    All DOCUMENTS RELATING TO the creation, conception, development, design or origins of BRATZ, including without limitation all statements by ISAAC LARIAN, BRYANT or any other PERSON relating thereto at any time.

(8)    All COMMUNICATIONS to or from YOU RELATING TO BRATZ, including without limitation to or from ISAAC LARIAN, MORAD ZARABI, MGA, BRYANT, Veronica Marlow, Mercedeh Ward, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) and/or Anna Rhee, and including without limitation all diaries, notes, calendars, logs, phone records, letters and other DOCUMENTS relating thereto.

(9)    All planners, including without limitation any Franklin planner, used by YOU, ISAAC LARIAN or any other PERSON at MGA RELATING TO the time period between January 1, 1998 and December 31, 2002, inclusive.

(10)    All DOCUMENTS RELATING TO the timing of any meetings between YOU and anyone at MGA regarding BRATZ, including but not limited to any planners, calendars, or other meeting records.

(11)    All DOCUMENTS that REFER OR RELATE to any ownership rights or interest in BRATZ.

(12)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any actual, proposed, contemplated, considered or potential copyright, patent or any other application or registration RELATING TO BRATZ.

(13)    All DOCUMENTS RELATING TO ANGEL.

(14)    All DOCUMENTS RELATING TO PRAYER ANGELS.

(15)    All DOCUMENTS RELATING TO Elise Cloonan or any of her FAMILY MEMBERS, including without all COMMUNICATIONS to or from her RELATING TO BRYANT, MATTEL, BRATZ, ISAAC LARIAN and/or MGA, and

07209/1934291.1                                   - 7 -

EXHIBIT    74

PAGE    916

including without limitation all diaries, notes, calendars, logs, phone records, letters and other DOCUMENTS RELATING TO such COMMUNICATIONS.

(16)   All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by YOU against ISAAC LARIAN, MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

(17)   ALL DOCUMENTS, including all COMMUNICATIONS, RELATING TO any financial appraisal of MGA and/or BRATZ, including without limitation any appraisal or appraisals performed by ERNEST DUTCHER and any instructions given to ERNEST DUTCHER regarding such appraisal or appraisals.

(18)   All DOCUMENTS RELATING TO any financial or other information considered, relied upon or used in any manner to conduct any valuation or appraisal of MGA and/or BRATZ, including without limitation for the time period from 1999 to 2001.

(19)   All DOCUMENTS RELATING TO the value of MGA and/or BRATZ at any time since January 1, 1999.

(20)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO allegations that ISAAC LARIAN concealed from YOU and/or MORAD ZARABI facts relating to BRATZ and/or BRYANT.

(21)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the meeting on or around January 26, 2003 between YOU, MORAD ZARABI, ISAAC LARIAN, and Mike Shenasafar, including without limitation all video and/or sound recordings and notes relating thereto.

(22)   DOCUMENTS sufficient to identify any and all appraisers, accountants and consultants who participated or were involved in any lawsuit or arbitration, including pre-arbitration proceedings, or any other dispute between YOU and ISAAC LARIAN RELATING TO MGA or BRATZ.

EXHIBIT     74

PAGE     917

(23)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that ISAAC LARIAN, his FAMILY MEMBERS and/or MGA have made, have offered or have proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at any time from January 1, 1999 through the present.

(24)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that any PERSON has made, has offered or has proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS and that was related in any way to BRATZ, BRYANT, MGA or this ACTION at any time from January 1, 1999 through the present.

(25)   All DOCUMENTS RELATING TO this ACTION, including all COMMUNICATIONS relating thereto.

(26)   All COMMUNICATIONS between YOU and MATTEL since January 1, 1999, and all DOCUMENTS relating thereto.

(27)   All DOCUMENTS that YOU showed MATTEL at any time since January 1, 1999, including all such DOCUMENTS that YOU showed MATTEL in connection with this ACTION, including without limitation each of the following:

(a)   The MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references BRATZ.

(b)   YOUR email to ISAAC LARIAN dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

(c)   The November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

(d)   YOUR August 19, 2005 email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning BRATZ, as well associated COMMUNICATIONS.

(e)   YOUR August 22, 2005 email to Colleen O'Higgins asking about BRYANT and BRATZ, as well as associated COMMUNICATIONS.

07209/1934291.1                          - 9 -

EXHIBIT 74
PAGE 918

(f)     The COMMUNICATIONS with Bin Ton, Michael Lingg and Jennifer Maurus regarding BRATZ, including without limitation those relating to actual and/or draft declaration(s) by the foregoing regarding BRATZ.

(g)     The December 21, 2000 email from ISAAC LARIAN to Paul Warner, with copies to Dennis Medici and YOU, that mentions TRU purchases for products including BRATZ.

(h)     YOUR August 1, 2005 email to Victoria O'Connor regarding BRATZ licensees, as well as associated COMMUNICATIONS.

(i)     YOUR August 1, 2005 email chain with employees at dng.com asking about BRATZ, as well as associated COMMUNICATIONS.

(j)     The August 7, 2005 email from Mark Fragel responding to questions regarding BRATZ materials shown to Paulette Prim in November 2000.

(k)     YOUR May 24, 2000 email to ISAAC LARIAN that states ISAAC LARIAN had instructed YOU to withhold original documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

(l)     The document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11, 2000 email from Dennis Medici to ISAAC LARIAN and YOU.

(m)     The August 14, 2000 ISAAC LARIAN email to Medici, Warner and YOU that references cost tracking software used by MATTEL that ISAAC LARIAN says he learned about from interviewing MATTEL employees.

(n)     The emails between ISAAC LARIAN and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Mr. Makabi's protestation that he never had any such certificates, as well as associated COMMUNICATIONS.

(o)     The January 31, 2001 email from ISAAC LARIAN to All in Marketing and Product Development, Medici and Didi Brown asserting that he (ISAAC LARIAN) had been purportedly diagnosed with "Alzheimer's" and denying

EXHIBIT ____74____

PAGE ____9(9____

in substance that he ever said anything that cannot be confirmed by a writing.

(p)    The November 15, 2000 Paula Treantafelles email to YOU that says MGA will be selling a BRATZ backpack and states that a design for it is attached.

(28)    All DOCUMENTS that MATTEL provided to YOU or for YOUR review since January 1, 1999.

(29)    All DOCUMENTS RELATING TO the payment, offering or promising of money or anything of value by ISAAC LARIAN, MGA and/or YOU to any PERSON who was at the time employed by or worked for MATTEL.

(30)    DOCUMENTS sufficient to show each title and position that YOU have or have ever held with MGA and the nature and extent of any ownership interest of any kind that YOU have or have ever had in MGA, including without limitation DOCUMENTS showing the start and, if applicable, end dates with respect to each such title, position or ownership interest.

(31)    All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

(32)    All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR, ISAAC LARIAN's and/or MGA's receipt of such DOCUMENT.

(33)    All DOCUMENTS RELATING TO the hiring, engagement, or retention by YOU, ISAAC LARIAN and/or MGA of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

EXHIBIT ___ 74
PAGE ___ 900

(34)  All DOCUMENTS RELATING TO any effort by YOU, ISAAC LARIAN and/or MGA to recruit employees or contractors who have been or are employed by or who have worked for MATTEL since January 1, 1999.

(35)  All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of any MATTEL product prior to the time that such product had been announced or disclosed by MATTEL to retailers or the public.

(36)  All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of any DESIGN created by, on behalf of, or at the behest of MATTEL, or created by any PERSON employed by or under contract with MATTEL at the time of the DESIGN's creation, that was not manufactured for sale or placed into the retail market.

(37)  All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of MATTEL's employment or inventions agreements.

(38)  YOUR computer hard drives RELATING TO the time period from January 1, 1999 through December 31, 2002, inclusive.

(39)  All DOCUMENTS RELATING TO any instruction by YOU, ISAAC LARIAN or MGA to destroy or withhold any DOCUMENT since January 1, 1998, including without limitation in connection with any lawsuit.

(40)  All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the preservation, retention or destruction of any DOCUMENT or DOCUMENTS that are sought by or the subject of Request Nos. 1 through 39, inclusive.

(41)  DOCUMENTS sufficient to IDENTIFY since January 1, 1999 through the present (a) each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in; (b) each telephone subscription service account that YOU have or have had, or that YOU use or have used; and (c) each email account that YOU have or have had, or that YOU use or have used.

07209/1934291.1                    - 12 -

74

PAGE          921

# Exhibit 75

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                      Date: September 2, 2008

Title:     MATTEL, INC. -v- MGA, INC.
           AND CONSOLIDATED ACTIONS
============================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          None Present
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:   ORDER SETTING VARIOUS BRIEFING SCHEDULES

        The Court, having considered the positions of counsel at the hearing herein, as well as the
parties' proposed scheduling positions, hereby sets the following scheduling order for further
proceedings in this matter:

1.      The case is STAYED from the date of this order through September 19, 2008, except for
        efforts aimed in good faith at a complete and global settlement.  Principal corporate officers
        for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make
        themselves available, at a mutually agreeable time, to meet with counsel and Ambassador
        Prosper to discuss a global resolution of this matter.

2.      On September 29, 2008, the parties may file opening briefs and submissions regarding
        remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for
        injunctive relief, constructive trust, and/or other remedial measures.  Response briefs and
        submissions are due October 13, 2008.  Reply briefs and submissions are due October 20,
        2008.  A hearing not to exceed four hours will be conducted before this Court on **Monday,
        November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90
CIVIL -- GEN                        1              Initials of Deputy Clerk __jh_____

3.      Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for
        remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its
        issuance of any injunction(s), constructive trust(s), and/or other remedial measures.
        Response briefs are due 14 days following the opening briefs, and reply briefs are due 7
        days following the response briefs.  A hearing will be set by the Court after receiving the
        response briefs.  Depending on the outcome of the hearing, the Court may address or defer
        addressing the following additional issues: (1) Whether or not to issue a judgment or await
        completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will
        provide three proposed discovery masters in advance of the hearing to which counsel for
        the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.      All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3,
        except as follows:  For good cause shown, the Court ORDERS the deposition of **Carlos
        Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30
        days of September 19, 2008.  Any disputes concerning the taking of these depositions shall
        be presented to this District Judge in the manner prescribed in Local Rule 37.

        **IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                  2           Initials of Deputy Clerk __jh_____

                                                          EXHIBIT _____75_____

                                                          PAGE _____923_____

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**  MINUTES OF SEPTEMBER 2, 2008

| | | | |
|---|---|---|---|
| | Atty Sttlmnt Officer Panel Coordinator | | US Attorneys Office - Civil Division -L.A. |
| | BAP (Bankruptcy Appellate Panel) | | US Attorneys Office - Civil Division - S.A. |
| | Beck, Michael J (Clerk, MDL Panel) | | US Attorneys Office - Criminal Division -L.A. |
| | BOP (Bureau of Prisons) | | US Attorneys Office - Criminal Division -S.A. |
| | CA St Pub Defender (Calif. State PD) | | US Bankruptcy Court |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | | US Marshal Service - Los Angeles (USMLA) |
| | Case Asgmt Admin (Case Assignment Administrator) | | US Marshal Service - Riverside (USMED) |
| | Catterson. Cathy (9th Circuit Court of Appeal) | | US Marshal Service -Santa Ana (USMSA) |
| | Chief Deputy Admin | | US Probation Office (USPO) |
| | Chief Deputy Ops | | US Trustee's Office |
| | Clerk of Court | | Warden, San Quentin State Prison, CA |
| | Death Penalty H/C (Law Clerks) | | |
| | Dep In Chg E Div | | |
| | Dep In Chg So Div | | |
| | Federal Public Defender | | |
| | Fiscal Section | | |
| | Intake Section, Criminal LA | | |
| | Intake Section, Criminal SA | | |
| | Intake Supervisor, Civil | | |
| | PIA Clerk - Los Angeles (PIALA) | | |
| | PIA Clerk - Riverside (PIAED) | | |
| | PIA Clerk - Santa Ana (PIASA) | | |
| | PSA - Los Angeles (PSALA) | | |
| | PSA - Riverside (PSAED) | | |
| | PSA - Santa Ana (PSASA) | | |
| | Schnack, Randall (CJA Supervising Attorney) | | |
| | Statistics Clerk | | |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|
| Name: Ambassador Pierre-Richard Prosper | |
| Firm: | |
| Address (include suite or floor): P.O. Box 581103 | |
| Salt Lake City, UT  84158 | |
| *E-mail: Prosper.Pierre@Arentfox.com | |
| *Fax No.: | |
| * For CIVIL cases only | |

| **JUDGE / MAGISTRATE JUDGE (list below):** |
|---|
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT _____ 75

PAGE _____ 924

**Exhibit 76**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13   CARTER BRYANT, an individual,         CASE NO. CV 04-9049 SGL (RNBx)
                                           Consolidated with
14            Plaintiff,                    Case Nos. CV 04-09059 & CV 05-2727

15       vs.                               Hon. Stephen G. Larson

16   MATTEL, INC., a Delaware             **ORDER REGARDING JOINT
     corporation,                         STIPULATION RE DEPOSITION
17                                         OF JORGE CASTILLA**
              Defendant.
18   ──────────────────────────           **Phase 2**
                                           Discovery Cut-Off: TBD
19   AND CONSOLIDATED ACTIONS             Pre-Trial Conference: TBD
                                           Trial Date:         TBD
20

21

22

23

24

25

26

27

28

07209/2646232.1

EXHIBIT _____ 76

PAGE _____ 925

[PROPOSED] ORDER RE STIPULATION REGARDING CASTILLA

**ORDER**

Having considered the parties' Joint Stipulation Regarding the Deposition of Jorge Castilla (the "Stipulation"), and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

(1)   The Order dated September 2, 2008, is hereby amended to allow the deposition of Jorge Castilla to proceed after October 19, 2008, but no later than October 24, 2008.

**IT IS SO ORDERED.**

DATED:  October 10, 2008

_S. G. Larson_

Honorable Stephen G. Larson
United States District Judge

EXHIBIT _76_

PAGE _926_

07209/2646232.1

-2-
[PROPOSED] ORDER RE STIPULATION REGARDING CASTILLA

# Exhibit 77

1

1  UNITED STATES DISTRICT COURT

2  CENTRAL DISTRICT OF CALIFORNIA

3  EASTERN DIVISION

4  - - -

5  HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6  - - -

7  CARTER BRYANT,                       )
                                        )
8              PLAINTIFF,               )
                                        )
9        VS.                            )   NO. ED CV 04-09049
                                        )   (LEAD LOW NUMBER)
10  MATTEL, INC.,                       )
                                        )
11             DEFENDANTS.              )   STATUS/SCHEDULING
    _____)        CONFERENCE
12  AND RELATED ACTIONS,                )
                                        )
13  _____)

14

15  REPORTER'S TRANSCRIPT OF PROCEEDINGS

16  RIVERSIDE, CALIFORNIA

17  MONDAY, FEBRUARY 12, 2007

18  1:49 P.M.

19

20  **CERTIFIED COPY**

21

22

23  THERESA A. LANZA, RPR, CSR
    FEDERAL OFFICIAL COURT REPORTER
24  3470 12TH STREET, RM. 134
    RIVERSIDE, CALIFORNIA  92501
25  (951) 274-0844
    CSR11457@SBCGLOBAL.NET

EXHIBIT 77

PAGE 927

2

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

 4

 5                        QUINN EMANUEL
                         BY:   JOHN B. QUINN
 6                        865 S. FIGUEROA STREET,
                         10TH FLOOR
 7                        LOS ANGELES, CALIFORNIA  90017
                         (213) 624-7707

 8

 9   ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
     CARTER BRYANT:
10

11                        LITTLER MENDELSON
                         BY:   KEITH A. JACOBY
12                        2049 CENTURY PARK EAST,
                         FIFTH FLOOR
13                        LOS ANGELES, CALIFORNIA  90067
                         (310) 553-0308

14

15   ON BEHALF OF MGA ENTERTAINMENT:

16                        O'MELVENY & MYERS LLP
                         BY:   DIANA M. TORRES
17                        400 SOUTH HOPE STREET
                         LOS ANGELES, CA  90071-2899
18                        (213) 430-6556

19

20

21

22

23

24

25
```

EXHIBIT ___77___

2-12-07                    CV 04-09049   PAGE ___928___

21

1        MR. QUINN, I WILL ENTERTAIN A MOTION FROM THE

2   PLAINTIFFS IN -9059 FROM MATTEL THAT SOME OF THOSE LIMITED

3   CLAIMS, AS YOU JUST IDENTIFIED, ARE MORE APPROPRIATELY

4   CONSIDERED IN THAT FIRST CASE.  AND THEN OF COURSE THE DEFENSE

5   MAY OPPOSE THAT.                                               02:17

6        I CAN SEE HOW ONE OR MORE OF THOSE CLAIMS MIGHT BE,

7   BUT THEY MIGHT NOT BE AS WELL.  I'M NOT GOING TO DECIDE THAT

8   TODAY.  I'LL GIVE YOU LEAVE TO BRING THAT MOTION ON THAT NARROW

9   ISSUE IF THERE SHOULD BE CERTAIN CLAIMS THAT WE SHOULD DO IN

10  THIS FIRST PHASE AS OPPOSED TO THE SECOND PHASE.  BUT ABSENT AN   02:17

11  ORDER FROM THE COURT, THE ONLY CLAIMS THAT WE ARE GOING TO SET

12  IN THE FIRST TRIAL ARE THOSE SET FORTH IN 04-9059, AND THE ONLY

13  CLAIMS IN THE SECOND ARE GOING TO BE THE CLAIMS AND

14  COUNTERCLAIMS IN 05-2727.  I WILL GIVE YOU THAT OPPORTUNITY.

15       I'M GOING TO SET A JURY TRIAL DATE FOR FEBRUARY 12,      02:17

16  2008, ONE YEAR FROM TODAY, AT 9:30 A.M. IN 04-9049.  A HEARING

17  ON ANY MOTIONS IN LIMINE WILL BE SCHEDULED FOR FEBRUARY 4,

18  2008, 10:00 A.M., AND A FINAL PRE-TRIAL CONFERENCE WILL BE

19  CONDUCTED JANUARY 14, 2008, AT 11:00 A.M.

20       LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN THAT     02:18

21  CASE WILL BE DECEMBER 3, 2007; THE LAST DATE FOR HEARING ANY

22  DISPOSITIVE MOTIONS WILL BE NOVEMBER 19, 2007 AT 10:00 A.M.;

23  THE COMPLETE DISCOVERY CUTOFF ON THE FIRST CASE WILL BE

24  OCTOBER 22ND, 2007.

25       I'LL SPEAK IN A FEW MOMENTS ABOUT LIMITS IN TERMS OF     02:18

EXHIBIT ____ 77

2-12-07              CV 04-9049      729

22

1    WITNESSES AND INTERROGATORIES AND THE LIKE.

2         AS FAR AS 05-2727, THE JURY TRIAL DATE WILL BE

3    JULY 1, 2008; THE HEARING ON ANY MOTIONS IN LIMINE WILL BE

4    JUNE 23, 2008, 10:00 A.M.; THE FINAL PRE-TRIAL CONFERENCE WILL

5    BE JUNE 2, 2008, 11:00 A.M.; THE LAST DATE TO CONDUCT A                02:18

6    SETTLEMENT CONFERENCE IN THAT CASE WILL BE APRIL 21, 2008; THE

7    LAST DATE FOR HEARING DISPOSITIVE MOTIONS IN THAT CASE WILL BE

8    APRIL 7, 2008, 10:00 A.M.; DISCOVERY CUTOFF WILL BE MARCH 3,

9    2008.

10        ANY FURTHER AMENDMENTS OR THE ADDITION OF PARTIES IN       02:19

11   EITHER OF THESE CASES IS GOING TO REQUIRE LEAVE OF COURT.

12        THESE ARE THE LIMITS I'M GOING TO PUT ON EXPERT

13   DEPOSITIONS AND INTERROGATORIES.  NOW, THESE LIMITS ARE -- I

14   DON'T WANT TO SAY THEY ARE SOFT LIMITS, BUT THEY ARE LIMITS

15   WHICH THE COURT WOULD CERTAINLY UNDERSTAND OR WOULD INVITE        02:20

16   COUNSEL TO SUBMIT A MOTION TO EXPAND, IF THERE'S REASON TO.

17   BUT I JUST WANT TO HAVE SOME PARAMETERS PLACED ON THIS AT THE

18   OUTSET.

19        AS FAR AS NONEXPERT DEPOSITIONS, I'M GOING TO LIMIT

20   EACH SIDE TO 24; SO THAT WILL BE A TOTAL OF 48 BETWEEN THE TWO    02:20

21   SIDES, WHICH WOULD HOPEFULLY CAPTURE MOST OF THE INDIVIDUALS

22   WHO HAVE SOME INFORMATION TO PROVIDE IN THIS CASE.  I'M GOING

23   TO LIMIT THE NUMBER OF EXPERT WITNESSES TO 20 ON EACH SIDE, AND

24   THEN THE TOTAL NUMBER OF INTERROGATORIES TO A TOTAL NUMBER OF

25   50 TO EACH SIDE.                                                 02:20

EXHIBIT ____77____

PAGE ____930____

2-12-07                    CV 04-09049

1      AGAIN, IF YOU GET TO THE POINT WHERE YOU NEED 21

2  EXPERT WITNESSES FOR SOME REASON, OR YOU NEED 25 FACT

3  WITNESSES, YOU CAN MAKE APPLICATION TO THIS COURT AND THE COURT

4  WILL CONSIDER THAT AFTER YOU, OF COURSE, HAVE MET AND CONFERRED

5  AND TRIED TO WORK THAT OUT ON YOUR OWN.  BUT WE HAVE TO HAVE          02:2(

6  SOME PARAMETERS ON THIS.

7      ARE THERE ANY QUESTIONS?

8      THE COURT WILL BE ISSUING ITS SCHEMATIC WHICH WILL

9  HAVE ALL THESE DATES AND THE COURT'S SCHEDULING ORDERS AND

10  CALCULATIONS, BUT ARE THERE ANY GENERAL QUESTIONS ABOUT WHAT        02:21

11  THE COURT IS TRYING TO ACCOMPLISH HERE?

12      MS. TORRES:  YOUR HONOR, YOU JUST SAID 50

13  INTERROGATORIES EACH SIDE.  THE FEDERAL RULES ORDINARILY

14  PROVIDE FOR INTERROGATORIES TO PARTIES, AND THERE ARE A NUMBER

15  OF PARTIES THAT THEY ARE TRYING TO SERVE, WHO THEY MAY HAVE         02:21

16  ALREADY SERVED, I DON'T KNOW.

17      ARE THOSE PARTIES INCLUDED IN THAT 50 LIMIT?

18      THE COURT:  THERE'S ONE PARTY, ESSENTIALLY, ON THE

19  OTHER SIDE, AND YOU HAVE TWO PARTIES.

20      MS. TORRES:  WELL, THEY HAVE ALSO NAMED -- ACTUALLY            02:21

21  WE HAVE THREE PARTIES NOW; THEY SUED OUR CEO ISAAC LARIAN AND

22  THEY HAVE NAMED ANOTHER EMPLOYEE AND TWO INDIRECT SUBSIDIARIES.

23      THE COURT:  WELL, MR. JACOBY, YOU'RE HERE ON BEHALF

24  OF MR. BRYANT.  WOULD YOU REALLY NEED ANOTHER 50

25  INTERROGATORIES BEYOND WHAT MGA WOULD BE SUBMITTING ON THESE        02:22

77

25

1  AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND

2  LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM;

3  SO PLAN ACCORDINGLY.

4           MR. JACOBY:  THANK YOU, YOUR HONOR.

5           MR. QUINN:  THANK YOU, YOUR HONOR.                    02:23

6           THE COURT:  ALL RIGHT.  GOOD LUCK.

7

8

9

10

11

12

13

14

15

16

17                        CERTIFICATE

18

19  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
22

23  _____        2-22-07
    THERESA A. LANZA, CSR, RPR              DATE
24  FEDERAL OFFICIAL COURT REPORTER

25
                                                          77
                                                          932

**Exhibit 78**

Received:   2/22/07  3:32PM;           RightFAX -> JetFax M920;  Page 2
RightFAX              2/22/2007 3:16   PAGE 002/003   Fax Server

  

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  - Eastern Division
CIVIL MINUTES - GENERAL

Case No.   CV 04-09059 SGL(RNBx)                          Date:  February 12, 2007
Title:     MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
           **Consolidated Action**
           CV 05-02727 SGL(RNBx)   MGA ENTERTAINMENT v. MATTEL, INC.,
==================================================================
PRESIDING: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                               Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for     Diana M. Torres for MGA
Mattel                                   Keith A. Jacoby for Carter Bryant

PROCEEDINGS:      SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

     The Court convened a scheduling conference pursuant to FRCP 16(b).  Court and counsel
discussed case management and thereafter the court set the following schedule:  See attachment
"Schedule of Trial and Pretrial Dates."

     Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial
officer or other private or non-profit dispute resolution body for mediation type settlement proceedings.
The Court approves the request and refers this case to an outside Mediator to act as the Settlement
Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as
soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory
settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL
(RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures
under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v.
Mattel, Inc.

     The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter
Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

     1.   Non-Expert Depositions are limited to a total of 24 for each side for both cases.
     2.   Expert Depositions are limited to a total of 20 for each side for both cases.
     3.   Interrogatories are limited to 50 for each side for both cases.

     IT IS SO ORDERED.

MINUTES FORM 90
CIVIL – GEN                    Page 1        FEB 2 2 2007        Initials of Deputy Clerk: jh
                                                                00/30

Received:   2/22/07   3:32PM;                RightFAX -> JetFax M920;   Page 3
RightFAX              2/22/2007 3:16   PAGE 003/003   Fax Server

  

## SCHEDULE OF TRIAL AND PRETRIAL DATES

**CASE NAME:**   MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

**CASE NO:**   CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| (Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

## ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:
to be discussed

☐ 1. CT/USMJ                      ☑ 3. Outside ADR

☐ 2. Attorney Settlement Panel       ☐

DOE Dismissal:         Complaint Filed: 04/13/05        SET DATE
                       Dismissal Date:                  to be discussed

# Exhibit 79

**SEND**

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9      CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
10
11   MGA ENTERTAINMENT, INC.,              )   Case No. CV 05-02727 SGL(RNBx)
12                Plaintiff,               )   SCHEDULING ORDER [FRCP 16(b)]
13         v.                              )   1.   Establishing a Discovery Cut-off Date of
14   MATTEL, INC.,                                   March 3, 2008
15                Defendants.              )   2.   Non-Discovery Motion Hearing Cutoff
                                               date of April 7, 2008, at 10:00 a.m.
16
17                                             3.   Setting Final Pretrial Conference for
                                                    June 2, 2008, at 11:00 a.m.
18
                                               4.   Setting Jury Trial Date of July 1, 2008, at
19                                                  9:30 a.m.
20
21    **READ THIS ORDER CAREFULLY.  IT CONTROLS THE CASE**        FEB 2 2 2007
22    **AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**
23
24    The above matter is set for trial before the Honorable Stephen G. Larson, United
25    States District Judge, Courtroom 1, United States District Court, Eastern Division, 2nd
26    Floor, Riverside, California.
27
28    1.    **Discovery Cut-Off:** This is the last date to complete discovery, including

79

935

1  expert discovery, and the resolution of any discovery motions before this court.  If expert

2  witnesses are to be called at trial, the parties shall designate experts to be called at trial and

3  provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight weeks prior to the

4  discovery cutoff date.  Rebuttal expert witnesses shall be designated and reports provided as

5  required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks prior to the discovery cutoff

6  date.  Failure to timely comply with this deadline may result in the expert being excluded at

7  trial as a witness.  The Court requires compliance with Local Rule 37-1 and 37-2 in the

8  preparation and filing of discovery motions.  Discovery motions may not be heard on an ex

9  parte basis.

10      2.     **Joinder of Parties and Amendment of Pleadings:**  Any motions to join other

11  parties or for leave to amend the pleadings shall be filed within sixty (60) days of the date of

12  this Order so that they can be heard and decided prior to the deadline.  This deadline does

13  not apply if the deadline for joining parties or amending pleadings has already been

14  calendared or occurred by virtue of an order issued by another Judge.

15      In addition to the requirements of Local Rules 15-1, 15-2, and 15-3, all motions to

16  amend the pleadings shall (a) state the effect of the amendment; (b) be serially numbered to

17  differentiate the amendment from previous amendments and (c) state the page, line

18  number(s), and wording of any proposed change or addition of material.

19      3.     **Motion Filing Cut-Off:**  The Court hears motions on Mondays at 10:00 a.m.

20  The motion filing cut-off date is the last day motions may be heard (not filed).  The Court will

21  not decide late motions.  Issues left undetermined by the passage of the motion cut-off date

22  should be listed as issues for trial in the Final Pretrial Conference Order.  As an exception to

23  the above, motions in limine dealing with evidentiary matters may be heard at or before trial;

24  however, summary judgment motions disguised as motions in limine will not be heard.

25  Parties need not wait until the discovery cut-off to bring motions for summary judgment or

26  partial summary judgment.  However, in the usual case, the court expects that more than the

27  minimum notice will be provided to counsel opposing motions for summary judgment.  In the

28

2

EXHIBIT 79

PAGE 936

1  usual case, the parties should confer and agree on the date for setting such motions.

2       Ex parte applications are entertained solely for extraordinary relief.  See Mission Power

3  Eng. Co. v. Continental Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995).  Strict adherence to

4  proper ex parte procedures is required for any ex parte application filed with the Court.

5       4.  **Stipulations to Extend Time:**  Stipulations to extend the time to file any required

6  document or to continue any pretrial or trial date must set forth (a) the existing due date or

7  hearing date; (b) the current pretrial conference date and trial date; (c) the specific reasons

8  supporting good cause for granting the extension or continuance; and (d) whether there have

9  been any prior requests for extensions or continuances, and whether these were granted or

10  denied by the Court.

11       5.  **Summary Judgment Motions:**  The Separate Statement of Undisputed Facts is to

12  be prepared in a two-column format.  The left-hand column should set forth the allegedly

13  undisputed fact.  The right-hand column should set forth the evidence that supports the

14  factual statement.  The fact statements should be set forth in sequentially numbered

15  paragraphs.  Each paragraph should contain a narrowly focused statement of fact.  Each

16  numbered paragraph should address a single subject in as concise a manner as possible.

17       The opposing party's statement of genuine issues must be in two columns and

18  track the movant's separate statement exactly as prepared.  The document must be in two

19  columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand

20  column must indicate either undisputed, or disputed.  The opposing party may dispute all or

21  only a portion of the statement, but if disputing only a portion, must clearly indicate what part

22  is being disputed.  Where the opposing party is disputing the fact in whole or part, the

23  opposing party must, in the right-hand column, label and restate the moving party's evidence

24  in support of the fact, followed by the opposing party's evidence controverting the fact.

25  Where the opposing party is disputing the fact on the basis of an evidentiary objection, the

26  party must cite to the evidence alleged to be objectionable and state the ground of the

27

28

3

EXHIBIT ____ 79

PAGE ____ 937

1    objection and nothing more. **No argument should be set forth in this document.**

2      The opposing party may submit additional material facts that bear on or relate to the

3    issues raised by the movant, which shall follow the format described above for the moving

4    party's separate statement. These additional facts shall follow the movant's facts, shall

5    continue in sequentially numbered paragraphs (i.e., if movant's last statement of fact was set

6    forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set

7    forth in the right hand column the evidence that supports that statement.

8      The moving party, in its reply, shall respond to the additional facts in the same

9    manner and format that the opposition party is required to adhere to in responding to the

10    statement of undisputed facts, as described above.

11      (a) **Supporting Evidence:** No party should submit any evidence other than the

12    specific items of evidence or testimony necessary to support or controvert a proposed

13    statement of undisputed fact. Thus, for example, the entire transcript of a deposition, entire

14    sets of interrogatory responses, and documents that do not specifically support or controvert

15    material in the separate statements, should not be submitted in support or opposition to a

16    motion for summary judgment. Any such material will not be considered.

17      Evidence submitted in support of or in opposition to a motion should be submitted

18    either by way of stipulation or as exhibits to declarations sufficient to authenticate the

19    proffered evidence, and should not be attached to the Memorandum of Points and

20    Authorities. The Court will accept counsel's authentication of deposition transcript, of written

21    discovery responses, and of the <u>receipt</u> of documents in discovery <u>if the fact that the</u>

22    <u>document was in the opponent's possession is of independent significance</u>. Documentary

23    evidence as to which there is no stipulation regarding foundation must be accompanied by

24    the testimony, either by declaration or properly authenticated deposition transcript, of a

25    witness who can establish its authenticity.

26      If evidence in support of or in opposition to a motion exceeds twenty pages, the

27

28

4

EXHIBIT _____ 79

PAGE _____ 738

1   evidence must be in a separate bound volume and include a Table of Contents.

2   　　　　(b) **Objections to Evidence:** If a party disputes a fact based in whole or in part
3   on an evidentiary objection, the ground of the objection, as indicated above, should be
4   stated in the separate statement but not argued in that document.  Evidentiary objections
5   are to be addressed in a separate memorandum to be filed with the opposition or reply brief
6   of the party.  This memorandum should be organized **to track the paragraph numbers of**
7   **the separate statement in sequence**.  It should identify the specific item of evidence to
8   which objection is made, the ground of the objection, and a very brief argument with citation
9   to authority as to why the objection is well taken.  The following is an example of the format
10  contemplated by the Court:

11  　　　　Separate Statement Paragraph 1:  Objection to the supporting deposition transcript
12  　　　　of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible
13  　　　　hearsay and no exception is applicable.  To the extent it is offered to prove her
14  　　　　state of mind, it is irrelevant since her state of mind is not in issue.

15  　　　　Fed. R. Evid. 801, 802.

16  　　Do not submit blanket or boilerplate objections to the opponent's statements of
17  undisputed fact: these will be disregarded and overruled.

18  　　　　(c) **The Memorandum of Points and Authorities:** The movant's memorandum of
19  points and authorities should be in the usual form required under Local Rule 7-5 and should
20  contain a narrative statement of facts as to those aspects of the case that are before the
21  Court. All facts should be supported with citations to the paragraph number in the  Separate
22  Statement that supports the factual assertion and not to the underlying evidence.

23  　　　　Unless the case involves some unusual twist on Rule 56, the motion need only
24  contain a brief statement of the Rule 56 standard;  the Court is familiar with the Rule and
25  with its interpretation under _Celotex_ and its progeny.  If at all possible, the argument should
26  be organized to focus on the pertinent elements of the cause(s) of action or defense(s) in

27

28

5

1  issue, with the purpose of showing the existence or non-existence of a genuine issue of

2  material fact for trial on that element of the claim or defense.

3         Likewise, the opposition memorandum of points and authorities should be in the

4  usual form required by Local Rule 7-5, and where the opposition memorandum sets forth

5  facts, the memorandum should cite to paragraphs in the separate statement if they are not in

6  dispute, to the evidence that contravenes the fact where the fact is in dispute or, if the fact is

7  contravened by an additional fact in the statement of genuine issues, the citation should be

8  to such fact by paragraph number.

9         (d) **Timing:** In virtually every case, the Court expects that the moving party will

10  provide more than the minimum twenty-one (21) day notice for such motions.  The moving

11  party should deliver to chambers a copy of a diskette, in WordPerfect format (11.0 or earlier

12  versions), containing the Statement of Uncontroverted Facts and Conclusions of Law.

13     6.  **Motions in Limine:** The parties must file motions in limine addressing the

14  admissibility of evidence in accordance with Local Rule 7-3.  The parties shall file their

15  opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.

16     7.  **Pretrial Conference and Trial Setting:** Compliance with the requirements of

17  Local Rule 16 is mandatory.  Counsel shall submit carefully prepared Memoranda of

18  Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed Pre-

19  Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules 16-1

20  through 16-7. The Proposed Pre-Trial Conference Order shall conform to the example set

21  forth in Appendix A to the Local Rules, modified as necessary to comply with this order.

22         The Memoranda of Contentions of Fact and Law, Exhibit Lists, and Witness Lists

23  shall be served and filed no later than fourteen (14) calendar days before the Pre-Trial

24  Conference.  The Proposed Pre-Trial Conference Order shall be lodged fourteen (14)

25  calendar days before the Pre-Trial Conference.

26         The Proposed Pre-Trial Conference Order must contain a Table of Contents.  Place

27

28

6

EXHIBIT ___77___

PAGE ___940___

1 in all capital letters and in bold the separately numbered headings for each category in the

2 PTCO. Under paragraph 1, list each claim, counterclaim, or defense that has been

3 dismissed or abandoned. In multiple-party cases where not all claims or counterclaims will

4 be prosecuted against all remaining parties on the other side, please specify to which party

5 each claim or counterclaim is directed. The factual issues in dispute should track the

6 elements of a claim or defense upon which the jury would be required to make findings.

7 Counsel should state issues in ultimate fact form, not as evidentiary fact issues (i.e., "was the

8 defendant negligent," "was defendant's negligence the proximate cause of plaintiff's injury;"

9 not "was the plaintiff standing on the corner of 12th Street and Lemon Avenue at 10:00 a.m.

10 on March 1"). Issues of law should state legal issues upon which the Court will be required

11 to rule after the Pre-Trial Conference, including during the trial, and should not list ultimate

12 fact issues to be submitted to the trier of fact.

13         In drafting the PTCO, the court expects that counsel will attempt to agree on and

14 set forth as many non-contested facts as possible. The court will normally read the

15 uncontested facts to the jury at the start of the trial. Carefully drafted and comprehensively

16 stated stipulation of facts will reduce the length of trial and increase jury understanding of the

17 case.

18         If expert witnesses are to be called at trial, each party must list and identify its

19 respective expert witnesses, both retained and non-retained. <u>Failure of a party to list and</u>

20 <u>identify an expert witness in the  Proposed Pre-Trial Conference Order shall preclude a party</u>

21 <u>from calling that expert witness at trial.</u>

22         This case has been placed on calendar for a Final Pretrial Conference ("PTC")

23 pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, et seq., unless the PTC was expressly

24 waived at the Scheduling Conference by the court. Unless excused for good cause, each

25 party appearing in this action shall be represented at the PTC and all pretrial meetings of

26 counsel, by lead trial counsel. The failure to attend the PTC or to submit the required pretrial

27

28

7

1   documents may result in the dismissal of the action, striking the answer and entering a
2   default, and/or the imposition of sanctions.

3          A continuance of the Final Pretrial Conference at counsel's request or stipulation
4   will only be approved upon a showing of good cause.  Counsel should plan to do the
5   necessary pretrial work on a schedule which will insure its completion with time to spare
6   before the Final Pretrial Conference.  Specifically, failure to complete discovery work,
7   including expert discovery, is not a ground for a continuance.

8          Compliance with the requirements of Local Rules 16-1 to 16-13 is required by the
9   court.  Carefully prepared Memoranda of Contentions of Fact (which may also serve as the
10  trial brief) and a proposed Final Pretrial Conference Order shall be submitted in accordance
11  with the provisions of Local Rule 16-7 and the form of the proposed Final Pretrial Conference
12  Order shall be in conformity with the format set forth in Appendix A to the Local Rules.

13         At the PTC, counsel should be prepared to discuss means of streamlining the trial,
14  including, but not limited to: bifurcation, presentation of non-critical testimony by  deposition
15  excerpts, stipulations as to the content of testimony, presentation of testimony on direct
16  examination by declaration subject to cross-examination, and qualification of experts by
17  admitted resumes.  In certain cases where the PTC is waived by the court, counsel must
18  follow Local Rule 16-11.

19      8.  **Witness List and Times Estimates:**  Counsel shall prepare a list of their witnesses,
20  an estimate of the length of time needed for direct examination for each witness, and whether
21  the witness will testify by deposition or in person.  Counsel shall exchange these lists with
22  opposing counsel.[1]  **Counsel shall jointly file a single witness list, including estimates for**
23  **direct examination of their own witnesses and estimates for cross-examination of**
24  **opposing witnesses.**  This list shall be filed at the time counsel lodge the Proposed Pre-Trial

25

26  _____

27         [1] See "Joint Trial Witness Estimate Form" appended to this order.

28

EXHIBIT ___79___

PAGE ___942___

1  Conference Order, i.e., fourteen (14) days before the Pre-Trial Conference.

2      **9.    Jury Instructions and Verdict Forms:**  Fourteen (14) calendar days prior to

3  counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions

4  (general and special) and special verdict forms (if applicable).  Seven (7) calendar days prior

5  to the Rule 16-2 meeting, counsel shall exchange any objections to the instructions and

6  special verdict forms.  Prior to, or at the time of the Rule 16 meeting, counsel shall meet and

7  confer with the goal of reaching agreement on one set of joint jury instructions and one special

8  verdict form.

9          The parties should make every attempt to agree upon the jury instructions before

10  submitting them to the Court.  The Court expects counsel to agree on the substantial majority

11  of jury instructions, particularly when pattern instructions provide a statement of applicable law.

12  When the Manual of Model Civil Jury Instructions for the Ninth Circuit provides a version of an

13  applicable requested instruction, the parties should submit the most recent version of the

14  Model instruction.  Where language appears in brackets in the model instruction, counsel shall

15  select the appropriate text and eliminate the inapplicable bracketed text.  Where California law

16  applies, counsel should use Judicial Council of California Civil Jury Instructions (June 2006)

17  ("CACI").  If neither of the above sources is applicable, counsel are directed to use the

18  instructions from O'Malley, Grenig & Lee (formerly Devitt, et al.), Federal Jury Practice and

19  Instructions (latest edition).  Each requested jury instruction shall cover only one subject or

20  principle of law and shall be numbered and set forth in full on a separate page, citing the

21  authority or source of the requested instruction (except for the "clean" jury copy discussed

22  below).

23          When the parties disagree on an instruction, the party opposing the instruction must

24  attach a short statement (one to two paragraphs) supporting the objection, and the party

25  submitting the instruction must attach a short statement supporting the instruction.  Each

26  statement should be on a separate page and should follow directly after the disputed

27

28

9

EXHIBIT ___79___

PAGE ___743___

1    Instruction.

2           The parties ultimately must submit one document or, if the parties disagree over any

3    proposed jury instructions, two documents.  If the parties submit two documents, those

4    documents shall consist of: (a) a set of Joint Proposed Jury Instructions and (b) a set of

5    Disputed Jury Instructions, along with reasons supporting and opposing each disputed

6    instruction in the format set forth in the previous paragraph.

7           The parties must file proposed jury instructions fourteen (14) calendar days before

8    the Pre-Trial Conference.  If the court is closed that day, counsel shall file the proposed

9    instructions the preceding Friday.  No later than 4:00 p.m. on the date such instructions are

10   due, the parties must submit conformed courtesy copies to the Court's courtesy box located

11   outside the entrance to Courtroom 1, United States District Court, 3470 Twelfth Street, 2nd

12   Floor, Riverside, California.  Counsel shall also provide the Court with a 3½ inch diskette

13   compatible with WordPerfect version 11.0 or lower containing the proposed jury instructions, in

14   accordance with this paragraph and the previous paragraph.

15          The Court will send a copy of the instructions into the jury room for the jury's use

16   during deliberations.  Accordingly, in addition to the file copies described above, the diskette

17   submitted with the jury instructions shall contain a "clean set" of Joint Proposed and/or

18   Disputed Jury Instructions, containing only the text of each instruction set forth in full on each

19   page, with the caption "Court's Instruction No. ___" (eliminating titles, supporting authority,

20   indication of party proposing, etc.).

21          An index page shall accompany all jury instructions submitted to the Court.  The

22   index page shall indicate the following:

23          (a)  The number of the instruction;

24          (b)  A brief title of the instruction;

25          (c)  The source of the instruction and any relevant case citations; and

26          (d)  The page number of the instruction.

27

28

10

EXHIBIT ____ 79

PAGE ____ 944

**EXAMPLE:**

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

Along with the jury instructions, counsel shall submit any necessary special verdict form fourteen (14) calendar days before the Pre-Trial Conference.

10. **Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own voir dire after consulting any proposed voir dire submitted by counsel. After the Court conducts its own voir dire, counsel will be provided an opportunity to ask supplemental questions subject to Court approval.

11. **Joint Statement of the Case:** Counsel shall submit a joint statement of the case at the Pretrial Conference. The joint statement of the case will be read to the prospective panel of jurors prior to the commencement of voir dire. The statement should not exceed one page. The statement shall be filed with the Court no later than 4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

12. **Exhibits:** The parties shall file their witness lists and exhibits lists in accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them in three-ring binders labeled on the spine portion of the binder showing both the volume number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk and a duplicate set for the judge. The original exhibits shall be tagged with the appropriate exhibit tags in the upper or lower right corner of the first page of each exhibit and include the case number, case name, and exhibit number. Each binder shall contain a Table of Contents. Counsel must comply with Local Rule 26-3 when numbering the exhibits. The Clerk's Office, located at the United States District Court, 3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit tags.

11

EXHIBIT ___79___

PAGE ___945___

1       The Court requires the following to be submitted to the courtroom deputy clerk on the

2   first day of trial: (a) The original exhibits with the Court's exhibit tags; (b) one bench book with

3   a copy of each exhibit for the Court's use, tabbed as described above; (c) three (3) copies of

4   exhibit lists and a floppy disk containing the exhibit list; (d) three (3) copies of witness lists in

5   the order in which the witnesses will be called to testify; and (e) file a Notice of Lodging of

6   Deposition Transcripts  (original and 2 copies) and Lodge all anticipated trial deposition

7   transcripts directly with the deputy clerk in the courtroom.

8       All counsel are to meet no later than ten (10) calendar days before trial to discuss

9   and agree to the extent possible on issues including foundation and admissibility.

10       **13. Pre-Trial Exhibit Stipulation:**  The parties shall prepare a Pre-Trial Exhibit

11   Stipulation which shall contain each party's numbered list of trial exhibits, with objections, if

12   any, to each exhibit including the basis of the objection and the offering party's response.  All

13   exhibits to which there is no objection shall be deemed admitted.  All parties shall stipulate to

14   the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall

15   identify any exhibits whose authenticity has not been stipulated to and the specific reasons for

16   the party's failure to stipulate.

17       The Stipulation shall be substantially in the following form:

18           Pre-Trial Exhibit Stipulation

19   Plaintiff's Exhibits

20   Number    Description    Objection    Response to Question

21

22   Defendant's Exhibits

23   Number    Description    Objection    Response to Question

24

25       The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges the

26   Proposed Pre-Trial Conference Order.  Failure to comply with this paragraph may constitute a

27

28

12

EXHIBIT ___79___

PAGE ___0946___

1   waiver of all objections.

2   **14. Findings of Fact and Conclusions of Law:** For a non-jury trial, counsel for each

3   party shall lodge proposed findings of fact and conclusions of law fourteen (14) days before

4   trial. The parties should deliver to chambers a copy of these findings and conclusions of law

5   on disk in WordPerfect format.

6       (a)    Underline in red the portions which it disputes;

7       (b)    Underline in blue the portions which it admits;  and

8       (c)    Underline in black the portions which it deems not disputed, but deems

9           irrelevant.

10       Counsel may agree with a part of a finding or conclusion, disagree with a part of it

11   and/or consider a part of irrelevant.

12       Two marked copies of opposing counsel's proposed findings of fact and conclusions of

13   law shall be lodged with the court seven (7) days before trial and one marked copy shall be

14   served on opposing counsel.  Courtesy copies of the marked copies shall be deposited in the

15   drop box located outside the entrance of Courtroom 1 of the above-entitled court on the date

16   due.

17       **15. Settlement:** Local Rule 16-15.2 provides that the Settlement Conference shall be

18   conducted not later than 45 days before the Pretrial Conference. The Court believes that in

19   most cases completion of all discovery and dispositive motions will help the parties assess

20   their positions before they embark on the costly pre-trial process.  However, in many cases,

21   the parties find it more difficult to settle after they have incurred the cost of all discovery and

22   motion practice. Accordingly, the Court strongly encourages counsel and the parties to pursue

23   settlement earlier.

24       The Court has a keen interest in helping the parties achieve settlement.  If the parties

25   believe that it would be more likely that a settlement would be reached if they conduct

26   settlement conference at an earlier time than that specified by the Court, they should conduct

27

28

                    13

EXHIBIT _____ 79

PAGE _____ 947

1  it at that time.  In any event, the parties must file a Status Report re Settlement at the time

2  they lodge the Proposed Pretrial Order.

3      The Court will not conduct settlement conferences in non-jury cases which the Court will

4  try.  In jury cases, the Court will conduct a settlement conference at the parties' request if

5  three conditions exist: (a) The parties are satisfied that the fact issues in the case will be tried

6  to a jury; (b) all significant pre-trial rulings which Court must make have been made; and (c)

7  the parties desire the Court to conduct the conference, understanding that if settlement fails,

8  the Court will preside over the trial of the case.

9      **If a settlement is reached, it shall be reported immediately to this Court as**

10  **required by Local Rule 16-15.7.**

11      16.  The failure to attend the pretrial conference or to submit timely in conformity

12  with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation, joint

13  statement of the case, voir dire questions, summary of witness testimony and times estimates,

14  proposed Pretrial Conference Order or the memorandum of contentions of fact and law may

15  result in the dismissal of the action, striking the answer and entering default and/or the

16  imposition of sanctions.

17      **17. Telephonic Status Conference:**

18      Telephonic status conferences are sometimes set by the court to discuss settlement

19  status and other pending issues.  If a telephonic status conference has been set, all counsel

20  are ordered to discuss the matter with their clients and opposing counsel before the telephonic

21  status conference.  Plaintiff's counsel must make the arrangements and place the conference

22  call.  Plaintiff's counsel shall include all counsel of record and the Court on the date and time

23  scheduled.  The conference operator is to place the final call to the Court at (951) 328-4410.

24  To assist the Court and staff, participants shall identify themselves each time they speak.  No

25  cellular telephones or speaker telephones will be allowed.

26                              **Internet Site**

27

28

                              14

EXHIBIT ___79___

PAGE ___948___

1        Counsel are encouraged to review the Central District's website for additional information.

2   The address is "http: //www.cacd.uscourts.gov".

3

4        The courtroom deputy clerk is ordered to serve a copy of this Order by mail, facsimile or

5   e-mail on counsel for all parties to this action.

6

7        IT IS SO ORDERED.

8   Dated: _____ FEB 2 1 2007

9

10

11

12   STEPHEN G. LARSON
     UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT ____79____

PAGE ____949____

RightFAX                    2/22/2007 3:18    PAGE 017/017    Fax Server

Joint Trial Witness Estimate Form

Case: _____                                Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| | Total Estimates This Page: | | | | |

Instructions:
(1) List witnesses (last name first); (2) For description, be extremely brief, e.g., "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour, e.g. if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column, e.g., "Needs interpreter." (5) Entries may be in handwriting if very neat and legible.

-16-

EXHIBIT _____ 79

PAGE _____ 950

# Exhibit 80

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES - GENERAL

Case No.   CV 04-09049-SGL(RNBx)                    Date: February 11, 2009

Title:   CARTER BRYANT -v- MATTEL, INC.
=================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Cindy Sasse                              Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

John Quinn                               Thomas Nolan
Michael T. Zeller                        Jason Russell
Dylan Proctor                            Russell J. Frackman
                                         Joel Klevens

Also appearing: Alexander H. Cote
                Todd E. Gordinier

PROCEEDINGS:

       Court hears oral argument on the following motions and takes them under
submission:

    1)  Mattel Inc.'s Motion for Judgment as a Matter of Law (No. 4498);

    2)  MGA Parties' Renewed Motion for Judgment as a Matter of Law on the Basis of
    Preemption, Insufficient Evidence, and Lack of Ownership as a Matter of Law (No.
    4496); and,

    3)  MGA Parties' Motion for Remittitur (Nos. 4495, 4523)

       The Court also hears further oral argument on Omni 808's Ex Parte Application to
Intervene for Limited Purpose as a Matter of Right or in the alternative, for Permissive

MINUTES FORM 90                                    Initials of Deputy Clerk: cls
CIVIL -- GEN              Page 1                    Time: 02/30

EXHIBIT ____ 80

PAGE ____ 957

Intervention (No. 4761) and Mattel Inc.'s Ex Parte Application for Appointment of a Receiver for MGA or for Alternative Relief (No. 4540).  Both matters are held in abeyance.

MGA Parties Request for Conditional Briefing (No. 4759) is DENIED in favor of the procedure set forth in Local Rule 66.

As set forth more fully on the record, the parties may file briefs regarding whether the entry of a Rule 54(b) judgment is warranted as to Phase 1.  The Court directs counsel to file their briefs not later than February 13, 2009.

The Court sets the following briefing schedule for Phase 2:

Discovery Cut-off:          December 11, 2009

Motion Hearing:            February 1, 2010, at 10:00 a.m.

Pretrial Conference:        March 1, 2010, at 11:00 a.m.

Trial :                    March 23, 2010, at 9:30 a.m.

Last Date for Mandatory Settlement Conference:  December 11, 2009

As set for more fully on the record, the Court has lifted the stay as to Phase 2 discovery issues.  All discovery issues, including deviations from the maximum limits on discovery set forth in the Federal Rules of Civil Procedures and/or this Court's Local Rules, shall be presented in the first instance to the Court-appointed Discovery Master.

IT IS SO ORDERED.

EXHIBIT _____ 80

PAGE _____ 952

# Exhibit 81

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# Exhibit 82

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**