# Exhibit 83

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
~~Duane R. Lyons (Bar No. 125091)~~
5 | ~~(duanelyons@quinnemanuel.com)~~
865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13 v. | MATTEL, INC.'S THIRD~~SECOND~~ AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |
| 14 | |
| 15 MATTEL, INC., a Delaware corporation, | 1. COPYRIGHT INFRINGEMENT; 2. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 16 Defendant. | |
| 17 | |
| 18 ~~MGA ENTERTAINMENT, INC. a~~ | 3. CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 19 ~~California corporation,~~ | |
| 20 ~~Plaintiff,~~ | 4. MISAPPROPRIATION OF TRADE SECRETS; |
| 21 ~~v.~~ | 5. BREACH OF CONTRACT; 6. INTENTIONAL INTERFERENCE WITH CONTRACT; |
| 22 ~~MATTEL, INC., a Delaware corporation, and DOES 1-10,~~ | 7. BREACH OF FIDUCIARY DUTY; 8. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; |
| 23 ~~Defendants.~~ | 9. BREACH OF DUTY OF LOYALTY; |
| 24 | |
| 25 | |
| 26 | **CONFIDENTIAL FILED UNDER SEAL, PURSUANT TO PROTECTIVE ORDER** |
| 27 | |

28 |

~~Volume I~~ EXHIBIT ___ **83**

~~PAGE~~ ___ **1030**

1  MATTEL, INC., a Delaware
   corporation,
2
                   Counter-claimant,
3
4          v.

5  MGA ENTERTAINMENT, INC., a
   California corporation; ISAAC
6  LARIAN, an individual; CARTER
   BRYANT, an individual; MGA
7  ENTERTAINMENT (HK) LIMITED,
   a Hong Kong Special Administrative
8  Region business entity; MGAE DE
   MEXICO, S.R.L. DE C.V., a
9  Mexico business entity; CARLOS
   GUSTAVO MACHADO GOMEZ, an
10 individual; and DOES 1 through 10,

11                 Counter-defendants.

12  AND CONSOLIDATED CASES

13

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION;
~~12.~~13. AVOIDANCE OF
    INTENTIONAL AND
    CONSTRUCTIVE FRAUDULENT
    TRANSFERS UNDER UNIFORM
    FRAUDULENT TRANSFER ACT;
    AND
~~13.~~14. DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2875224.1

EXHIBIT  83

PAGE  1631

-1-
THIRD~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

## THIRD~~SECOND~~ AMENDED ANSWER

~~Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,~~
Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules of Civil Procedure</u> in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this <u>Third</u>~~Second~~ Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

1  and in many cases does not identify, or does not sufficiently or properly identify, the
2  item depicted in the photographs. All of these factors, as well as the use of these
3  photographs and headings out of context, or with an insufficient context, impair the
4  ability of Mattel to fully respond to these photographs and headings, or to any
5  purported allegations involving, or relying upon, the use of such photographs and
6  accompanying headings. By way of a general response, Mattel therefore does not
7  admit the authenticity of any photograph, or the accuracy or adequacy of any
8  heading, nor does it admit any allegation or inference that is based on, or purports to
9  be based on, any photograph or accompanying heading in the Complaint. Mattel
10 reserves the right to challenge the authenticity of any photograph and the accuracy
11 or adequacy of any heading (either as included in the Complaint or in the context of
12 additional material not included). Further, with reference to all photographs and
13 accompanying headings, or any averments based on the Complaint's use of such
14 photographs and headings, which might be offered into evidence, Mattel specifically
15 reserves its right to object to any use of such photographs, headings, and averments,
16 or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17      To the extent that Mattel has endeavored to answer any particular
18 allegation containing any such photographs and headings, any admission concerning
19 the item purported to be depicted in such photograph, or described in such headings,
20 shall not constitute an admission that the photograph is authentic, adequate, or
21 admissible, nor that any heading is accurate, adequate, or admissible. All such items
22 purportedly depicted in such photographs, and described in such headings, "speak
23 for themselves."— Accordingly, to the extent that any such referenced materials are
24 deemed allegations against Mattel, they are denied.

25                              Responses

26      1.    Answering paragraph 1 of the Complaint, Mattel admits that
27 plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California
28 corporation with a principal place of business in Van Nuys, California.

EXHIBIT 83

1633

1     2.     Answering paragraph 2 of the Complaint, Mattel admits that
2   Mattel is a Delaware corporation with a principal place of business in El Segundo,
3   California.

4     3.     Answering paragraph 3 of the Complaint, Mattel denies that
5   there has been wrongful conduct on its part and states that it is without knowledge
6   or information sufficient to form a belief as to the truth or falsity of the remaining
7   allegations set forth therein and, on that basis, denies them.

8     4.     Answering paragraph 4 of the Complaint, Mattel admits that
9   plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and
10   (c), California Business and Professions Code §§ 17200 et seq., California Business
11   and Professions Code § 14330 and California common law, denies that plaintiff is
12   entitled to any relief thereunder and denies the truth of the remaining allegations set
13   forth in paragraph 4.

14     5.     Answering paragraph 5 of the Complaint, Mattel admits that it is
15   subject to personal jurisdiction in this District and denies the truth of the remaining
16   allegations set forth in paragraph 5.

17     6.     Answering paragraph 6 of the Complaint, Mattel admits that
18   venue is proper in this District and denies the truth of the remaining allegations set
19   forth in paragraph 6.

20     7.     Answering paragraph 7 of the Complaint, Mattel admits that
21   MGA has filed the instant lawsuit and denies the truth of the remaining allegations
22   set forth in paragraph 7.

23     8.     Answering paragraph 8 of the Complaint, Mattel states that it is
24   without knowledge or information sufficient to form a belief as to the truth or falsity
25   of the allegations regarding MGA's history set forth therein and, on that basis,
26   denies them, states that MGA has made conflicting representations, including in
27   sworn statements, that are at odds with the allegations of the Complaint and denies
28   the truth of the remaining allegations set forth in paragraph 8.

**EXHIBIT 83**

**1634**

1          9.    Answering paragraph 9 of the Complaint, Mattel admits that

2   MGA filed this action, states that Mattel's web site and corporate governance

3   policies speak for themselves and denies the truth of the remaining allegations set

4   forth in paragraph 9.

5          10.    Answering paragraph 10 of the Complaint, Mattel admits that it

6   is the world's most successful toy company, states that the first doll in its BARBIE

7   line was publicly introduced in 1959 and that BARBIE-branded dolls have been the

8   world's best-selling toys, states that Mattel's sales and stock price speak for

9   themselves, and denies the truth of the remaining allegations set forth in paragraph

10  10.

11         11.    Answering paragraph 11 of the Complaint, Mattel admits that

12  Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding an alleged statement by Ms. Fontanella, and denies the

15  truth of the remaining allegations set forth in paragraph 11.

16         12.    Answering paragraph 12 of the Complaint, Mattel is without

17  knowledge or information sufficient to form a belief as to the truth or falsity of the

18  allegations regarding alleged statements by unidentified "analysts," states that

19  Mattel's sales and stock price speak for themselves, and denies the truth of the

20  remaining allegations set forth in paragraph 12.

21         13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill

22  Barad became President and Chief Executive Officer of Mattel in January 1997, that

23  Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired

24  Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,

25  that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned

26  by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company

27  at the time of that entity's acquisition, and denies the truth of the remaining

28  allegations set forth in paragraph 13.

EXHIBIT _____ 83

PAGE _____ 1035

14.    Answering paragraph 14 of the Complaint, Mattel states that its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

15.    Answering paragraph 15 of the Complaint, Mattel states that its stock price and its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

16.    Answering paragraph 16 of the Complaint, Mattel states that its stock price speaks for itself, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the remaining allegations set forth therein.

17.    Answering paragraph 17 of the Complaint, Mattel admits that Ms. Barad resigned in February 2000.

18.    Answering paragraph 18 of the Complaint, Mattel admits that Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the views of unnamed "[i]nvestors" and others, and denies the truth of the remaining allegations set forth in paragraph 18.

19.    Answering paragraph 19 of the Complaint, Mattel admits that the *Wall Street Journal* published an article on August 10, 2000 the content of which speaks for itself, and denies the truth of the remaining allegations set forth therein.

20.    Answering paragraph 20 of the Complaint, Mattel admits that it disposed of the Learning Company in October 2000, states that its sales and revenues speak for themselves, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth in paragraph 20.

**EXHIBIT** **83**

**PAGE** **1036**

2875224.1

1        21.    Answering paragraph 21 of the Complaint, Mattel admits that

2  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

3  other product lines and states that the remainder of the allegation contained

4  therein—consisting of a sentence fragment—is unintelligible and on that basis

5  denies the truth of any such remaining allegation set forth therein.

6        22.    Answering paragraph 22 of the Complaint, Mattel admits that

7  products in plaintiff's "Bratz" line compete with Mattel products, states that the

8  remainder of the allegations contained therein are characterizations, not factual

9  assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)

10  and, to the extent any further response is required, denies the truth of any remaining

11  allegations set forth therein.

12        23.    Answering paragraph 23 of the Complaint, Mattel states that

13  MGA has made conflicting statements, including in sworn statements, that are

14  inconsistent with the allegations set forth in paragraph 23 of the Complaint and

15  states that it is therefore without knowledge or information sufficient to form a

16  belief as to the truth or falsity of the allegations set forth therein and, on that basis,

17  denies them.

18        24.    Answering paragraph 24 of the Complaint, Mattel states that the

19  "look" of the referenced dolls speak for themselves and denies the truth of the

20  remaining allegations set forth therein.  By way of further answer, Mattel states that

21  the photographs and their accompanying caption on page 7 of the Complaint are

22  false and misleading to the extent they are intended to suggest that MGA has

23  produced or used a consistent packaging shape or look or that it has protectible

24  rights in the matters depicted in the photographs.

25        25.    Answering paragraph 25 of the Complaint, Mattel admits that

26  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

27  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were

28  intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

1   dolls "looked like no other" and denies the truth of the remaining allegations set

2   forth in paragraph 25.

3       26.     Answering paragraph 26 of the Complaint, Mattel states that the

4   use of the term "classic" is unintelligible, since Mattel has designed and sold

5   different dolls using different heads and with different fashions and themes over the

6   years, and denies the truth of any remaining allegations. By way of further answer,

7   Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8   Complaint is misleading in that it depicts one of the doll heads that have been used

9   as part of the BARBIE line for many years, and therefore ignores that Mattel has

10  long designed and sold an array of different BARBIE line dolls that use different

11  doll heads, including doll heads which depict different ethnicities, and that are

12  dressed in different clothing and fashion styles.

13      27.     Answering paragraph 27 of the Complaint, Mattel admits that

14  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15  denies that MGA originated or otherwise has rights to that phrase, admits that one

16  audience for products in the "Bratz" line has been "tweens" and denies the truth of

17  the remaining allegations set forth in paragraph 27.

18      28.     Answering paragraph 28 of the Complaint, Mattel admits that

19  certain "Bratz" dolls have won certain awards, the terms of which speak for

20  themselves, states that it is without knowledge or information sufficient to form a

21  belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22  and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23  the truth of any remaining allegations set forth in paragraph 28.

24      29.     Answering paragraph 29 of the Complaint, Mattel admits that

25  dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26  Mattel has or has ever had a "stranglehold" on any market, states that the market

27  allegations contained in paragraph 29 are vague and ambiguous, including without

28  limitation in that the allegations fail to specify what products among the parties'

EXHIBIT _____ **83**

2875224.1

1 respective lines are being referred to and what time period is being referred to, and
2 denies the truth of any remaining allegations set forth in paragraph 29.

3          30.     Answering paragraph 30 of the Complaint, Mattel admits that
4 MGA has been a licensee of Mattel, states that the market allegations are vague and
5 ambiguous, including without limitation in that the allegations fail to specify what
6 products are being referred to and what time periods or points in time are being
7 referred to, and states that the remainder of the allegations contained therein are
8 characterizations, not factual assertions, and therefore no response is necessary
9 under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies
10 the truth of any remaining allegations set forth in paragraph 30.

11          31.     Answering paragraph 31 of the Complaint, Mattel states that the
12 allegations contained therein are characterizations, not factual assertions, and
13 therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any
14 further response is required, denies the truth of the allegations set forth in paragraph
15 31.

16          32.     Answering paragraph 32 of the Complaint, Mattel denies the
17 truth of the allegations set forth therein.

18          33.     Answering paragraph 33 of the Complaint, Mattel denies the
19 truth of the allegations set forth therein.

20          34.     Answering paragraph 34 of the Complaint, Mattel states that it
21 has released various MY SCENE dolls, including MY SCENE dolls named
22 "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY
23 SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE
24 dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff
25 has protectible rights, states that MGA has made conflicting representations that are
26 at odds with the allegations of the Complaint and that it is therefore without
27 knowledge or information sufficient to form a belief as to the truth or falsity of the
28 allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

2875224.1

--9--

EXHIBIT ___ 83
THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE ___ 1037

1 denies them, and denies the truth of the remaining allegations set forth therein. By

2 way of further answer, Mattel states that the photographs and their accompanying

3 captions on page 10 of the Complaint are misleading and false to the extent they are

4 intended to suggest that a particular Mattel doll has been changed over time as

5 purportedly depicted. Among other things, Mattel has long designed and sold an

6 array of different BARBIE line dolls using different doll heads, and the photographs

7 encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8 used, and continues to be used, as part of the BARBIE line. In addition, the

9 photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10 character called BARBIE that continues to be sold and/or marketed with that head,

11 and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12 SCENE doll character separate and apart from the one depicted in the "circa 2002"

13 image (and is not a revised character as plaintiff apparently attempts to imply).

14       35.    Answering paragraph 35 of the Complaint, Mattel admits that

15 Mattel released a product line called FLAVAS, states that the appearance of the

16 FLAVAS dolls speaks for themselves, states that it is without knowledge or

17 information sufficient to form a belief as to the truth or falsity of the allegations

18 regarding the "rumor" relied upon by plaintiff and the undefined "media"

19 purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20 has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21 set forth in paragraph 35.

22       36.    Answering paragraph 36 of the Complaint, Mattel denies the

23 truth of the allegations set forth therein.

24       37.    Answering paragraph 37 of the Complaint, Mattel denies the

25 truth of the allegations set forth therein. By way of further answer, Mattel states that

26 the unnumbered photographs and their accompanying captions on pages 11 through

27 16 of the Complaint -- which apparently were included to purportedly support the

28 allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

EXHIBIT **83**

1 specifically denies -- are false and misleading. Among other things, the heads
2 depicted are among an array of different doll heads that Mattel has used, and
3 continues to use, over the course of many years. Moreover, the images purport to
4 compare different Mattel doll lines to show alleged changes in appearance even
5 though, in fact, each of the heads are currently sold and/or marketed to the public.
6 The "Blonde" series of photographs encaptioned "original" and "recent" MY
7 SCENE is further and specifically misleading in that it purports to compare two
8 differently named and outfitted dolls in the MY SCENE doll line, both of which
9 continue to be sold and/or marketed.

10         38.     Answering paragraph 38 of the Complaint, Mattel states that the
11 phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,
12 denies that MGA was the originator of or the first to use the eye shape or makeup
13 depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has
14 copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations
15 contained in paragraph 38. By way of further answer, Mattel states that the
16 unnumbered photographs and accompanying caption on page 13 of the Complaint
17 are false and misleading. Among other things, the purported "Original Mattel 'My
18 Scene' Eye" is one of the eye and makeup designs that Mattel has used over the
19 course of many years, and Mattel continues to sell and/or market dolls using the eye
20 and makeup design depicted therein.

21         39.     Answering paragraph 39 of the Complaint, Mattel states that the
22 phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,
23 denies that MGA was the originator of or the first to use the eye shape or makeup
24 purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has
25 copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and
26 denies the truth of the remaining allegations contained in paragraph 39. By way of
27 further answer, Mattel states that the unnumbered photographs and accompanying
28 captions on page 14 of the Complaint are false and misleading. Among other things,

1 | the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs
2 | that Mattel has used over the course of many years, and Mattel continues to sell
3 | and/or market dolls using the eye and makeup design depicted on page 14 of the
4 | Complaint.

5 |       40.    Answering paragraph 40 of the Complaint, Mattel denies the
6 | truth of the allegations therein. By way of further answer, Mattel states that the
7 | unnumbered photographs and their accompanying captions on pages 15 to 16 are
8 | false and misleading. Among other things, the heads depicted are among an array of
9 | different doll heads that Mattel has used, and continues to use, over the course of
10 | many years. Moreover, the photographs purport to compare different Mattel doll
11 | lines to show alleged changes in appearance even though, in fact, each of the heads
12 | are currently sold and/or marketed to the public. The "Blonde" series of
13 | photographs encaptioned "original" and "recent" MY SCENE is further and
14 | specifically misleading in that it purports to compare two differently named and
15 | outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or
16 | marketed.

17 |       41.    Answering paragraph 41 of the Complaint, Mattel denies the
18 | truth of the allegations set forth therein.

19 |       42.    Answering paragraph 42 of the Complaint, Mattel admits that the
20 | photographs purport to depict two packages that were, among others, part of the MY
21 | SCENE line, state that the packages speak for themselves and denies the truth of any
22 | remaining allegations set forth therein.

23 |       43.    Answering paragraph 43 of the Complaint, Mattel admits that the
24 | photograph purports to depict one of the packages that were, among others, part of
25 | the MY SCENE line, states that the parties' packages speak for themselves, states
26 | that MGA has failed to establish that it originated, or has protectible rights in, an
27 | "open and transparent style" for packaging and denies the truth of the remaining
28 | allegations set forth therein.

EXHIBIT ___ 83

2875224.1

1        44.    Answering paragraph 44 of the Complaint, Mattel admits that

2 one photograph purports to depict one of the packages that were, among others, part

3 of the MY SCENE line, admits that the other photograph purports to depict one of

4 the packages that were, among others, used as part of the Bratz line, states that the

5 parties' packages speak for themselves, denies that MGA originated, or has

6 protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7 Complaint and denies the truth of any remaining allegations set forth therein.

8        45.    Answering paragraph 45 of the Complaint, Mattel admits that

9 one photograph purports to depict one of the packages that were, among others, part

10 of the MY SCENE line, admits that the other photograph purports to depict one of

11 the packages that were, among others, used as part of the Bratz line, states that the

12 parties' packages speak for themselves, denies that MGA originated, or has

13 protectible rights in, the packaging depicted in the Complaint and denies the truth of

14 any remaining allegations set forth therein.

15        46.    Answering paragraph 46 of the Complaint, Mattel states that it

16 has utilized a wide variety of packaging styles and shapes over the years, states that

17 the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18 "non-rectangular shaped box" packaging or in the other elements MGA claims in

19 paragraph 46, and denies the truth of the remaining allegations set forth therein.

20        47.    Answering paragraph 47 of the Complaint, Mattel denies that

21 any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22 any theme and denies the truth of the remaining allegations set forth therein.

23        48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24 released a doll called "Chillin Out!", states that it has released such themed dolls

25 over the course of many years, admits MGA released a "Wintertime Wonderland"

26 themed doll, denies that MGA originated or has rights to such theme, states that the

27 relevant products speak for themselves and denies the truth of the remaining

28 allegations set forth therein.

EXHIBIT _____ **83**

--13--

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____

1        49.    Answering paragraph 49 of the Complaint, Mattel admits that it
2  released a doll called "Night on the Town", states that it has released such themed
3  dolls over the course of many years, admits MGA released a "Formal Funk" themed
4  doll, denies that MGA originated or has rights to such theme, states that the relevant
5  products speak for themselves and denies the truth of the remaining allegations set
6  forth therein.

7        50.    Answering paragraph 50 of the Complaint, Mattel admits that it
8  released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki
9  Lounge", states that it has released such themed dolls and products over the course
10 of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and
11 playset, denies that MGA originated or has rights to such theme, states that the
12 relevant products speak for themselves and denies the truth of the remaining
13 allegations set forth therein.

14       51.    Answering paragraph 51 of the Complaint, Mattel admits that it
15 has aired television commercials for its MY SCENE line, states that such
16 commercials speak for themselves, denies the truth of the remaining allegations set
17 forth therein and specifically denies that MGA was the originator of or has rights to
18 commercials "combining live action with animated sequences" set to "pop music
19 and lyrics".

20       52.    Answering paragraph 52 of the Complaint, Mattel denies the
21 truth of the allegations set forth therein.

22       53.    Answering paragraph 53 of the Complaint, Mattel admits that it
23 released a MY SCENE "Sound Lounge", admits that MGA released a product called
24 "Runway Disco", states that the relevant products speak for themselves, denies that
25 it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and
26 denies the truth of the remaining allegations set forth therein.

27       54.    Answering paragraph 54 of the Complaint, Mattel denies the
28 truth of the allegations set forth therein.

--14--    EXHIBIT     83
THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE     644

1         55.    Answering paragraph 55 of the Complaint, Mattel admits that,

2  among the styling heads it has produced and sold over the course of many years, it

3  released a MY SCENE styling head, admits that MGA released a styling head called

4  "Funky Fashion Makeover Head", states that the relevant products speak for

5  themselves, denies that MGA has protectible rights and denies the truth of the

6  remaining allegations set forth in paragraph 55.

7         56.    Answering paragraph 56 of the Complaint, Mattel is without

8  knowledge or information sufficient to form a belief as to the truth or falsity of the

9  allegations set forth therein because plaintiff fails to identify the alleged instances of

10  confusion, including the source of the unidentified picture titled "Hairstyle practice",

11  and on that basis, denies them, and denies the truth of any remaining allegations set

12  forth in paragraph 56.

13        57.    Answering paragraph 57 of the Complaint, Mattel admits that it

14  has aired television commercials for its MY SCENE line, states that such

15  commercials speak for themselves and denies the truth of the remaining allegations

16  set forth therein.

17        58.    Answering paragraph 58 of the Complaint, Mattel admits that

18  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

19  denies that MGA originated that phrase or otherwise has rights to it, states that

20  Mattel's web site speaks for itself and denies the truth of the remaining allegations

21  set forth therein.

22        59.    Answering paragraph 59 of the Complaint, Mattel admits that,

23  among the plush products that it has produced and sold over the course of many

24  years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

25  themed product line, states that Mattel has for many years sold plush pets of the type

26  used with its MY SCENE dog, admits that MGA has released various Bratz pets,

27  states that MGA was not the originator of and has no rights to the features and other

28

2875224.1

1 | elements described therein, states that the relevant products speak for themselves
2 | and denies the truth of the remaining allegations set forth therein.

3 |       60.   Answering paragraph 60 of the Complaint, Mattel admits that,
4 | among the plush toys that it has released over the course of many years, its MY
5 | SCENE dog has been sold in packaging depicted (in part) on page 22 of the
6 | Complaint, states that Mattel has for many years sold plush pets and other plush
7 | products in packaging of the type used with its MY SCENE dog, admits that MGA
8 | has released a "Bratz" dog, states that MGA was not the originator of and has no
9 | rights to the packaging described therein, states that the relevant packages speak for
10 | themselves and denies the truth of the remaining allegations set forth therein.

11 |       61.   Answering paragraph 61 of the Complaint, Mattel denies that it
12 | has intended to cause any consumer confusion and states that it is without
13 | knowledge or information sufficient to form a belief as to the truth or falsity of the
14 | allegations set forth therein concerning unnamed retailers, customers and others
15 | because plaintiff fails to identify any source for the matters alleged and, on that
16 | basis, denies them and denies the truth of any remaining allegations set forth therein.

17 |       62.   Answering paragraph 62 of the Complaint, Mattel denies that it
18 | has intended to cause any confusion and states that it is without knowledge or
19 | information sufficient to form a belief as to the truth or falsity of the allegations set
20 | forth therein concerning alleged comments and conversations because plaintiff fails
21 | to identify any source for the alleged comments and conversations and, on that
22 | basis, denies them, and denies the truth of any remaining allegations set forth
23 | therein.

24 |       63.   Answering paragraph 63 of the Complaint, Mattel denies that it
25 | has intended to cause any confusion and states that it is without knowledge or
26 | information sufficient to form a belief as to the truth or falsity of the allegations set
27 | forth therein because plaintiff fails to identify any source for the alleged comments
28 |

EXHIBIT _____ **83**

1 and conversations and, on that basis, denies them, and denies the truth of any
2 remaining allegations set forth therein.

3       64.   Answering paragraph 64 of the Complaint, Mattel denies that it
4 has intended to cause any confusion and states that it is without knowledge or
5 information sufficient to form a belief as to the truth or falsity of the allegations set
6 forth therein because plaintiff fails to identify any source for the alleged comments
7 and conversations and, on that basis, denies them, and denies the truth of any
8 remaining allegations set forth therein.

9       65.   Answering paragraph 65 of the Complaint, Mattel denies the
10 truth of the allegations set forth therein.

11       66.   Answering paragraph 66 of the Complaint, Mattel admits that it
12 sued a competitor in the German courts for unfair competition for copying various
13 Mattel BARBIE line products, states that such claims exclusively arose under and
14 were the subject of German law, states that since that time the Federal Supreme
15 Court has rejected the contention made by MGA in paragraph 66 that
16 "systematically copying and borrowing elements" from competing dolls supports a
17 claim for unfair competition, and denies the truth of the remaining allegations set
18 forth therein.

19       67.   Answering paragraph 67 of the Complaint, Mattel denies the
20 truth of the allegations set forth therein.

21       68.   Answering paragraph 68 of the Complaint, Mattel admits that it
22 has released dolls called "Wee 3 Friends," admits that MGA has released dolls
23 called "4-Ever Best Friends," states that the relevant products speak for themselves,
24 denies that MGA's packaging is distinctive, denies that MGA has protectible rights
25 thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26       69.   Answering paragraph 69 of the Complaint, Mattel admits that its
27 Fisher Price division has released, among other dolls called "Little Mommy," the
28 "Little Mommy Potty Training Baby Doll," admits that MGA has released a

**EXHIBIT 83**

1 | "Mommy's Little Patient" doll and denies the truth of the remaining allegations set
2 | forth therein.

3 | 70. Answering paragraph 70 of the Complaint, Mattel admits that it
4 | has released die-cast cars and other products called "Acceleracers" as part of its
5 | HOT WHEELS line, admits that MGA has released products called "AlienRacers,"
6 | denies that MGA was the originator of or has rights to the elements and matters
7 | described in paragraph 70, states that the relevant products speak for themselves and
8 | denies the truth of the remaining allegations set forth therein.

9 | 71. Answering paragraph 71 of the Complaint, Mattel admits that it
10 | has aired commercials relating to "Acceleracers," states that such commercials
11 | speak for themselves, denies the truth of the remaining allegations set forth therein
12 | and specifically denies that MGA originated or has rights to commercials and other
13 | matters described therein.

14 | 72. Answering paragraph 72 of the Complaint, Mattel states that its
15 | web site speaks for itself, denies the truth of the remaining allegations contained in
16 | paragraph 72 and specifically denies that Mattel intended to create confusion in the
17 | marketplace.

18 | 73. Answering paragraph 73 of the Complaint, Mattel denies the
19 | truth of the allegations set forth therein.

20 | 74. Answering paragraph 74 of the Complaint, Mattel denies the
21 | truth of the allegations set forth therein.

22 | 75. Answering paragraph 75 of the Complaint, Mattel admits that it
23 | has reminded certain former employees who became employed by MGA by letter of
24 | their contractual and fiduciary obligation to maintain the secrecy of all Mattel
25 | confidential and proprietary business information, states that such letters were
26 | prepared and sent to their recipients in good faith contemplation of litigation, admits
27 | that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles
28 | Superior Court, entitled Mattel, Inc. v. Brawer, Case No. BC323381, on October 21,

EXHIBIT ____

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2  respond to the allegations in paragraph 75 relating to that action, and denies the truth

3  of the remaining allegations set forth in paragraph 75.

4          76.    Answering paragraph 76 of the Complaint, Mattel states that

5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6  including such acts that are lawful in foreign nations, and denies the truth of

7  allegations set forth therein.

8          77.    Answering paragraph 77 of the Complaint, Mattel states that

9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10  including such acts that are lawful in foreign nations, and denies the truth of the

11  allegations set forth therein.

12          78.    Answering paragraph 78 of the Complaint, Mattel states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16          79.    Answering paragraph 79 of the Complaint, Mattel states that

17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18  including such acts that are lawful in foreign nations, and denies the truth of

19  allegations set forth therein.

20          80.    Answering paragraph 80 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22          81.    Answering paragraph 81 of the Complaint, Mattel admits that

23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24  video games industries, admits that to Mattel's knowledge NPD restricts the use of

25  its subscriber information, states that MGA was sued by NPD and states that it is

26  without knowledge or information sufficient to form a belief as to the truth or falsity

27  of the allegations regarding the need of unspecified "toy companies" for NPD

28

EXHIBIT ___ 83

1  statistics and, on that basis, denies them and denies the truth of any remaining
2  allegations set forth therein.

3          82.    Answering paragraph 82 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5          83.    Answering paragraph 83 of the Complaint, Mattel states that it is
6  without knowledge or information sufficient to form a belief as to the truth or falsity
7  of the allegations set forth therein because MGA fails to quantify its annual
8  subscription fees and, on that basis, denies them.

9          84.    Answering paragraph 84 of the Complaint, Mattel states that it is
10 without knowledge or information sufficient to form a belief as to the truth or falsity
11 of the allegations set forth therein and, on that basis, denies them.

12         85.    Answering paragraph 85 of the Complaint, Mattel states that
13 MGA was sued by NPD, states that it is without knowledge or information sufficient
14 to form a belief as to such nature and grounds for such litigation (to which Mattel
15 was not a party) and, on that basis, denies the allegations relating thereto, and denies
16 the truth of the remaining allegations set forth therein.

17         86.    Answering paragraph 86 of the Complaint, Mattel denies the
18 truth of the allegations set forth therein.

19         87.    Answering paragraph 87 of the Complaint, Mattel admits that the
20 Children's Advertising Review Unit ("CARU") is the children's arm of the
21 advertising industry's self-regulation program, states that compliance with CARU's
22 Privacy Program can provide FTC-approved Safe Harbor under the Children's
23 Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining
24 allegations set forth therein.

25         88.    Answering paragraph 88 of the Complaint, Mattel admits that it
26 is one of dozens of CARU Supporters and denies the truth of the remaining
27 allegations set forth therein.

28

EXHIBIT _____ 83

1          89.    Answering paragraph 89 of the Complaint, Mattel denies the

2 truth of the allegations set forth therein.

3          90.    Answering paragraph 90 of the Complaint, Mattel states that it is

4 without knowledge or information sufficient to form a belief as to the truth or falsity

5 of the allegations as to the consequences to MGA of MGA's violations of CARU

6 standards and, on that basis, denies them.

7          91.    Answering paragraph 91 of the Complaint, Mattel states that it is

8 without knowledge or information sufficient to form a belief as to the truth or falsity

9 of the allegations as to the consequences to MGA of MGA violation of CARU

10 standards and, on that basis, denies them.

11          92.    Answering paragraph 92 of the Complaint, Mattel admits that the

12 Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits

13 that at certain times TIA has given awards called the People's Choice Toy of The

14 Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA

15 and states that it is without knowledge or information sufficient to form a belief as

16 to the truth or falsity of the remaining allegations set forth therein and, on that basis,

17 denies them.

18          93.    Answering paragraph 93 of the Complaint, Mattel states that the

19 allegations set forth therein are vague and ambiguous, including in that they fail to

20 properly identify the years in which the referenced awards were given and/or the

21 particular product which won such awards, and accordingly lacks knowledge or

22 information sufficient to form a belief as to the truth or falsity of the allegations set

23 forth therein and, on that basis, denies them.

24          94.    Answering paragraph 94 of the Complaint, Mattel admits that

25 Neil Freidman was the chairman of TIA from approximately May 2002 to May

26 2004, states that Fischer Price is a division of Mattel and denies the truth of the

27 remaining allegations set forth therein.

28

--21--
EXHIBIT **83**
THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE ___ **(45)**

1        95.   Answering paragraph 95 of the Complaint, Mattel admits that

2   Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the

3   remaining allegations set forth therein.

4        96.   Answering paragraph 96 of the Complaint, Mattel states that it is

5   without knowledge or information sufficient to form a belief as to the truth or falsity

6   of the allegations set forth therein and, on that basis, denies them.

7        97.   Answering paragraph 97 of the Complaint, Mattel denies the

8   truth of the allegations set forth therein.

9        98.   Answering paragraph 98 of the Complaint, Mattel denies the

10   truth of the allegations set forth therein.

11        99.   Answering paragraph 99 of the Complaint, Mattel denies the

12   truth of the allegations set forth therein.

13        100.   Answering paragraph 100 of the Complaint, Mattel denies the

14   truth of the allegations set forth therein.

15        101.   Answering paragraph 101 of the Complaint, Mattel repeats its

16   responses contained in paragraphs 1 through 100 of this ThirdSecond Amended

17   Answer and incorporates them by reference as though fully and completely set forth

18   herein.

19        102.   Answering paragraph 102 of the Complaint, Mattel denies the

20   truth of the allegations set forth therein and specifically denies that MGA's alleged

21   trade dress is distinctive.

22        103.   Answering paragraph 103 of the Complaint, Mattel denies the

23   truth of the allegations set forth therein and specifically denies that MGA's alleged

24   trade dress is distinctive.

25        104.   Answering paragraph 104 of the Complaint, Mattel denies the

26   truth of the allegations set forth therein.

27        105.   Answering paragraph 105 of the Complaint, Mattel denies the

28   truth of the allegations set forth therein.

EXHIBIT _____ **83**

1          106.   Answering paragraph 106 of the Complaint, Mattel denies the
2   truth of the allegations set forth therein.

3          107.   Answering paragraph 107 of the Complaint, Mattel denies the
4   truth of the allegations set forth therein.

5          108.   Answering paragraph 108 of the Complaint, Mattel denies the
6   truth of the allegations set forth therein and specifically denies that plaintiff is
7   entitled to injunctive relief.

8          109.   Answering paragraph 109 of the Complaint, Mattel repeats its
9   responses contained in paragraphs 1 through 108 of this Third~~Second~~ Amended
10  Answer and incorporates them by reference as though fully and completely set forth
11  herein.

12         110.   Answering paragraph 110 of the Complaint, Mattel denies the
13  truth of the allegations set forth therein.

14         111.   Answering paragraph 111 of the Complaint, Mattel denies the
15  truth of the allegations set forth therein.

16         112.   Answering paragraph 112 of the Complaint, Mattel denies the
17  truth of the allegations set forth therein.

18         113.   Answering paragraph 113 of the Complaint, Mattel denies the
19  truth of the allegations set forth therein.

20         114.   Answering paragraph 114 of the Complaint, Mattel denies the
21  truth of the allegations set forth therein.

22         115.   Answering paragraph 115 of the Complaint, Mattel denies the
23  truth of the allegations set forth therein.

24         116.   Answering paragraph 116 of the Complaint, Mattel denies the
25  truth of the allegations set forth therein.

26         117.   Answering paragraph 117 of the Complaint, Mattel denies the
27  truth of the allegations set forth therein and specifically denies that plaintiff is
28  entitled to injunctive relief.

2875224.1

EXHIBIT _____ **83**

1          118.   Answering paragraph 118 of the Complaint, Mattel denies the

2    truth of the allegations set forth therein.

3          119.   Answering paragraph 119 of the Complaint, Mattel repeats its

4    responses contained in paragraphs 1 through 118 of this Third~~Second~~ Amended

5    Answer and incorporates them by reference as though fully and completely set forth

6    herein.

7          120.   Answering paragraph 120 of the Complaint, Mattel denies the

8    truth of the allegations set forth therein.

9          121.   Answering paragraph 121 of the Complaint, Mattel denies the

10   truth of the allegations set forth therein.

11         122.   Answering paragraph 122 of the Complaint, Mattel denies the

12   truth of the allegations set forth therein.

13         123.   Answering paragraph 123 of the Complaint, Mattel denies the

14   truth of the allegations set forth therein and specifically denies that plaintiff is

15   entitled to injunctive relief.

16         124.   Answering paragraph 124 of the Complaint, Mattel repeats its

17   responses contained in paragraphs 1 through 123 of this Third~~Second~~ Amended

18   Answer and incorporates them by reference as though fully and completely set forth

19   herein.

20         125.   Answering paragraph 125 of the Complaint, Mattel denies the

21   truth of the allegations set forth therein.

22

23               <u>General Denial</u>

24         Unless specifically admitted herein, Mattel denies the truth of each and

25   every allegation set forth in plaintiff's Complaint and specifically denies that

26   plaintiff is entitled to any relief against Mattel.

27

28

EXHIBIT _____ 83

2875224.1

## Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

## First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

## Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

## Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

## Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

EXHIBIT _____ **83**

2875224.1

Sixth Affirmative Defense

1
2      Plaintiff's claims are barred in whole or in part by its lack of standing.
3
Seventh Affirmative Defense

4
5      Plaintiffs claims are barred in whole or in part by the applicable
6  statutes of limitation and the doctrine of laches.
7
Eighth Affirmative Defense

8
9      Plaintiffs claims are barred in whole or in part by the doctrines of
10  waiver, estoppel, ~~and~~ acquiescence, and abandonment.
11
Ninth Affirmative Defense

12
13      Plaintiffs claims are barred in whole or in part by Mattel's
14  constitutional rights of free speech, petitioning and association, including without
15  limitation by the litigation privilege as protected by and/or codified in *inter alia*
16  Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the
17  common interest privilege and by other privileges.
18
Tenth Affirmative Defense

19
20      Plaintiff's claims are barred in whole or in part by Mattel's federal and
21  state constitutional rights of free speech, including without limitation under the First
22  Amendment of the United States Constitution.
23
Eleventh Affirmative Defense

24
25      Plaintiff's claims are barred in whole or in part by the competitor
26  privilege.
27
28

EXHIBIT _____ **83**

2875224.1

1    ### Twelfth Affirmative Defense

2    Plaintiff's claims are in whole or in part preempted by the Copyright

3    Act and barred by the *Sears-Compco* doctrine.

4

5    ### Thirteenth Affirmative Defense

6    Plaintiff's requested relief, including plaintiff's requests for punitive

7    and/or enhanced damages, are barred in whole or in part because all of Mattel's

8    actions were in good faith.

9

10    ### Fourteenth Affirmative Defense

11    Plaintiff's damages, if any, were not caused by Mattel and are not

12    attributable to the acts or omissions of Mattel.

13

14    ### Fifteenth Affirmative Defense

15    Plaintiff has failed to mitigate its damages, if any.

16

17    ### Additional Defenses

18    Mattel has insufficient knowledge or information upon which to form a

19    belief as to whether additional defenses are available. Mattel reserves the right to

20    amend this Third~~Second~~ Amended Answer to add, delete, or modify additional

21    defenses based on legal theories which may or will be divulged through clarification

22    of the Complaint, through discovery, through change or clarification of the

23    governing law or through further legal analysis of plaintiff's positions in this

24    litigation.

25

26    ### Prayer for Relief

27

28    WHEREFORE, Mattel prays for relief as follows:

2875224.1

1

2        1.      That the Complaint be dismissed with prejudice;

3        2.      That plaintiff take nothing by reason of the Complaint against

4   Mattel and that judgment be entered in Mattel's favor;

5        3.      That Mattel recover its costs and attorneys' fees; and

6        4.      That this Court award such other and further relief as it deems

7   just and proper.

8

9                        **COUNTERCLAIMS**

10        Pursuant to the Court's Orders of, inter alia, January 12, 2007, and June

11  27, 2007, and incorporating its [Proposed] Amended Complaint dated November 19,

12  2006, Mattel, Inc. alleges as follows:

13                      **Preliminary Statement**

14        1.      For years MGA Entertainment, Inc. has engaged in a pattern of

15  stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

16  stolen property and trade secrets caused and continues to cause significant harm to

17  Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

18  stealing Mattel's confidential and proprietary information to fuel MGA's growth.

19  Even after Mattel originally filed this suit, MGA, Isaac Larian and their co-

20  conspirators continued this pattern of wrongdoing, engaging in additional acts of

21  commercial bribery, destruction of evidence, evidence tampering and perjury, and

22  in fraudulent conveyances and bankruptcy fraud.  Indeed, MGA, Larian and their

23  co-conspirators carried out several of these wrongs while the Phase 1 trial was on-

24  going and shortly after it concluded for the specific purpose of thwarting the

25  findings of the jury in Mattel's favor, obstructing the judicial process, and

26  damaging Mattel and its rights.

27        2.      Carter Bryant conceived, created and developed Bratz designs

28  while he was employed by Mattel as a doll designer.  He concealed his Bratz work

EXHIBIT _____ **83**

THIRD SECOND-AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ **1058**

2875224.1

1   from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

2   As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

3   owner of those Bratz designs, Mattel has registered copyrights for them and seeks

4   damages arising from MGA's repeated infringement of those copyrights.

5         3.    In 2008, the jury in the Phase 1 trial in this action found that

6   Carter Bryant conceived of and created Bratz, including without limitation Bratz

7   sculpts and prototypes, the Bratz name, the Bratz characters, and more than 70

8   Bratz design drawings, while working for Mattel and that MGA and Isaac Larian

9   unlawfully aided and abetted that wrongdoing and profited from their wrongful

10  acts.  Specifically, the jury found that MGA and Larian unlawfully infringed

11  Mattel's copyrights in Bratz works created by Bryant while a Mattel employee and

12  owned by Mattel, converted Bratz drawings from Mattel, tortiously interfered with

13  Bryant's contract with Mattel, aided and abetted Bryant's breach of his duty of

14  loyalty to Mattel, and aided and abetted Bryant's breach of his fiduciary duty to

15  Mattel.  The jury further found that MGA had fraudulently concealed its wrongful

16  conduct from Mattel.  Yet MGA's wrongful conduct has not ceased.  Undeterred by

17  the jury's findings, MGA continues to infringe even to this day, and threatens to

18  infringe in the future, Mattel's rights in Bratz.

19        ~~3.~~4.   MGA's illegal conduct in stealing Bratz was also just the

20  beginning.  Emboldened by the success of its earlier illegal conduct, MGA has

21  repeated—and even expanded through this day—its pattern of theft, bribery,

22  evidence destruction and tampering, perjury, obstruction, financial manipulations

23  and other illegal conduct ~~on numerous occasions~~.  For example, in or about 2004,

24  MGA decided to expand into Mexico.  To do so, and operating from its Southern

25  California offices, MGA hired away three key Mattel employees in Mexico, who,

26  on their way out, stole virtually every category of Mattel's sensitive and trade secret

27  business plans and information for the Mexican market, as well as a significant

28  quantity of sensitive and trade secret information for Mattel's U.S. and worldwide

EXHIBIT _____ 83

PAGE _____ 105

1 businesses, and took them to MGA. Armed with Mattel's confidential business
2 plans and methods, MGA claimed to have increased its market share in Mexico
3 alone by 90% in a single year.

4          4.5.  In 2005, MGA needed help in Canada. So MGA, again
5 operating from its Southern California headquarters, hired Janine Brisbois from
6 Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys
7 'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same
8 accounts, and she took from Mattel documents containing proprietary advertising,
9 project, sales, customer and strategy information for not only Canada, but for the
10 United States. Eliminating any doubt that MGA then proceeded to use those stolen
11 materials, Brisbois subsequently accessed and modified certain of those Mattel
12 documents while employed by MGA.

13          6.    Starting no later than 2000, and continuing until at least 2005,
14 MGA bribed Mattel employees in addition to Bryant to work on Bratz and other
15 products for MGA's benefit. In the face of Court Orders compelling MGA to
16 disclose such evidence, MGA falsely denied under oath that there were such other
17 Mattel employees. In December 2007, however, the truth came to light—MGA
18 agents had bribed at least three more Mattel employees over a five-year span,
19 including during times even after this suit was filed. MGA's agents acted to
20 conceal the bribery, including by paying Mattel employees in cash and using false
21 names and false social security numbers.

22          5.7.  These are not the only instances of such misconduct, which
23 MGA orchestrated and carried out from its headquarters in this District. Counter-
24 defendants have engaged in an ongoing, widespread pattern of illegal acts that
25 continues to this day and that threatens to continue into the future. Those acts
26 include, without limitation, , consisting of inducing Mattel employees to steal
27 Mattel's confidential information or other property and take it with them to MGA to
28 further MGA's business interests and to harm Mattel. They also include, without

2875224.1

EXHIBIT 83
--30--
PAGE 06
THIRD SECOND-AMENDED ANSWER AND COUNTERCLAIMS

1 | limitation, continued acts of copyright infringement, evidence destruction and

2 | perjury. They also include, without limitation, Larian's and MGA's illegal transfer,

3 | transport and laundering of their ill-gotten profits, including through their use of

4 | sham single-purpose entities created during or immediately after the Phase 1 trial,

5 | for the purpose of thwarting the jury's Phase 1 verdict against them, continuing

6 | with their acts of infringement, manipulating their financial condition and

7 | defrauding Mattel.

### Jurisdiction

9 |       6.8. This Court has federal question jurisdiction over this action

10 | pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

11 | This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

12 | 28 U.S.C. § 1367.

### Venue

14 |       7.9. Venue is proper in this District pursuant to 28 U.S.C.

15 | §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

### Parties

17 |       8.10. Mattel is a corporation organized and existing under the laws of

18 | the State of Delaware, with its principal place of business in El Segundo,

19 | California.

20 |       9.11. Counter-defendant MGA Entertainment, Inc. ("MGA") is a

21 | corporation organized and existing under the laws of the State of California, with

22 | its principal place of business in Van Nuys, California. Mattel is informed and

23 | believes, and on that basis alleges, that ABC International Traders, Inc. is a

24 | predecessor corporation to MGA and that until September 16, 2002, MGA was

25 | incorporated and known as ABC International Traders, Inc. Upon the filing of the

26 | Complaint, Mattel, being ignorant of the nature, extent and scope of MGA

27 | Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and

28 | having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having



1 discovered its involvement and complicity, Mattel previously amended~~hereby~~
2 ~~amends~~ its Complaint by substituting MGA Entertainment, Inc. for the fictitious
3 Doe name Doe 1.

4      ~~10.~~12.      Counter-defendant Carter Bryant ("Bryant") is an
5 individual who formerly was employed by Mattel and has worked for and
6 continues to work as a contractor~~contactor~~ for MGA.  Mr. Bryant currently resides
7 in the State of Missouri.

8      ~~11.~~13.      Counter-defendant MGA Entertainment (HK) Limited is a
9 business entity organized and existing under the laws of the Hong Kong Special
10 Administrative Region, with its principal place of business in Hong Kong.  Upon
11 the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope
12 of involvement and complicity of MGA Entertainment (HK) Limited in the conduct
13 alleged therein and having designated MGA Entertainment (HK) Limited in the
14 Complaint as Doe 2 and having discovered its involvement and complicity, Mattel
15 previously amended~~hereby amends~~ its Complaint by substituting MGA
16 Entertainment (HK) Limited for the fictitious Doe name Doe 2.

17      ~~12.~~14.      Counter-defendant MGAE de Mexico, S.R.L. de C.V.
18 ("MGA de Mexico") is a business entity organized and existing under the laws of
19 Mexico, with its principal place of business in Mexico City, Mexico.

20      ~~13.~~15.      Mattel is informed and believes, and on that basis alleges,
21 that Counter-defendant Larian is the President and CEO of MGA and an individual
22 residing in the County of Los Angeles.  Upon the filing of the Complaint, Mattel,
23 being ignorant of the nature, extent and scope of involvement and complicity of
24 Larian in the conduct alleged therein and having designated Larian in the
25 Complaint as Doe 3 and having discovered his involvement and complicity, Mattel
26 previously amended~~hereby amends~~ its Complaint by substituting Larian for the
27 fictitious Doe name Doe 3.

28

EXHIBIT  8 3

2875224.1

16. Mattel is informed and believes, and on that basis alleges, that Counter-defendant Larian is directly or indirectly principal, owner, member and/or controlling shareholder and alter-ego of IGWT Group, LLC ("IGWT Group") and IGWT 826 Investments, LLC ("IGWT 826 Investments"). On information and belief, the financial affairs of Larian and these limited liability companies—which were formed during and subsequent to the Phase 1 trial—are significantly intermingled and interconnected, the companies being mere shells which Larian used as conduits for his own business dealings, created and operated pursuant to an unlawful scheme as alleged herein.

17. Mattel is informed and believes, and on that basis alleges, that Counter-defendant Larian is directly or indirectly trustee, principal, owner, and/or controlling participant and alter-ego of several trusts devised by or on behalf of Larian for the purpose of manipulating MGA's and Larian's finances, including without limitation The Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, as well as other trusts and similar vehicles presently unknown to Mattel because of their concealment by Larian, MGA and their co-conspirators.

18. Mattel is informed and believes, and on that basis alleges, that Counter-defendant Larian is directly or indirectly principal, owner, member and/or controlling shareholder and alter-ego of several other sham entities devised by or on behalf of Larian for the purpose of manipulating MGA's and Larian's finances, including without limitation Omni 808 Investors, LLC, Vision Capital, LLC and Lexington Financial Limited (collectively, the "Omni Parties") as well as other entities currently unknown by name to Mattel because of their concealment by Larian, MGA, the Omni Parties and their co-conspirators.

19. Mattel is informed and believes, and on that basis alleges, that Counter-defendant Larian has employed, directly or indirectly, other co-

EXHIBIT

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

1063

2875234.1

1  conspirators to directly and indirectly carry out his intentional wrongdoing,

2  including in order to conceal and manipulate his and MGA's finances and to

3  conduct other fraudulent and illegal conduct, including without limitation Neil

4  Kadisha, Leon Neman, Fred Mashian, Jahangir Eli Makabi, Shirin Makabi, Farhad

5  Larian, Angela Larian, Veronica Marlow and Peter Marlow, as well as other

6  persons presently unknown to Mattel because of their concealment by Larian,

7  MGA, the Omni Parties and their co-conspirators.

8       20.   Mattel is informed and believes, and on that basis alleges, that at

9  all relevant times mentioned herein such individuals, trusts, Larian, the Omni

10 Parties, IGWT Group and IGWT 826 Investments, together with their employees,

11 officers, putative owners, members and principals, agents, representatives and

12 attorneys, were acting in concert and in active participation with each other in

13 committing the wrongful acts alleged herein, and were the agents of each other and

14 were acting within the scope and authority of that agency and with the knowledge,

15 consent and approval of each other.

16      ~~14.~~21.   Counter-defendant Carlos Gustavo Machado Gomez is an

17 individual who is employed by Counter-defendant MGA and who resided in this

18 District at the time he was named and served as a Counter-defendant in the Second

19 Amended Answer and Counterclaims and, on information and belief, currently

20 resides in Mexico~~the County of Los Angeles~~.

21      ~~15.~~22.   The true names and capacities of Counter-defendants sued

22 herein as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore

23 sues said Counter-defendants by such fictitious names.  Mattel will amend its

24 pleadings to allege their true names and capacities when the same are ascertained.

25                    **Factual Background**

26 **I.    MATTEL**

27      ~~16.~~23.   Mattel manufactures and markets toys, games, dolls and

28 other consumer products.  Harold Mattson and Eliot and Ruth Handler founded

EXHIBIT _____ **83**

**1664**

1  Mattel in 1945. The name of the company was created by incorporating the names
2  of two of its founders, "MATT-son" and "EL-liot." Originating from the Handlers'
3  garage in Southern California, the company greatly expanded its operations
4  following World War II. During the next several decades, Mattel became famous
5  for producing high-quality products at reasonable prices.

6          ~~17.~~24.        Critical to Mattel's success is its ability to design and
7  develop new products. Mattel invests millions of dollars in product design and
8  development and introduces hundreds of new products each year. Mattel maintains
9  a 180,000 square-foot design center in El Segundo, California, that houses
10  hundreds of designers, sculptors, painters and other artists, who work exclusively to
11  create the products on which Mattel's business depends.

12          ~~18.~~25.        Mattel also has invested substantial amounts over many
13  years to develop its business methods and practices, including, without limitation,
14  its marketing and advertising research, plans, methods and processes; its business
15  research and forecasts; its costs, budgets, pricing, credit terms, deal terms and
16  finances; its manufacturing, distribution, and sales methods and processes; and its
17  inventory methods and processes. These represent a material part of the intellectual
18  infrastructure of Mattel and are highly valuable.

19  **II.   MGA ENTERTAINMENT**

20          ~~19.~~26.        MGA is also a toy manufacturer. MGA began as a
21  consumer electronics business, but expanded into the toy business with licenses to
22  sell handheld electronic games. By approximately late 1999 or early 2000, MGA
23  developed a strategy to expand its business and compete directly with Mattel by
24  launching a fashion doll line, so it stole a fashion doll that was owned by Mattel –
25  "Bratz."

26          ~~20.~~27.        MGA intentionally stole not just specific Mattel property,
27  such as Bratz designs, prototypes and related materials, but also a vast array of
28  trade secrets and other confidential information that comprise Mattel's intellectual

2825224.1

**EXHIBIT** _____ **83**

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS
**PAGE**

1  infrastructure. MGA's rapid growth was not organic, but rather was based upon its

2  theft of Bratz. As a result, MGA lacked an appropriate intellectual infrastructure

3  for a company of its size and it became increasingly difficult to manage. To deal

4  with these problems, as detailed below, time and time again MGA simply stole

5  Mattel's proprietary business methods, practices and information. This not only

6  allowed MGA to avoid expending time, money and effort necessary to build a

7  legitimate business, but also allowed MGA to unfairly compete against Mattel by

8  taking Mattel's playbook.

9  **III. MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

10      ~~21.~~28.      Carter Bryant is a former Mattel employee. Bryant joined

11  Mattel in September 1995, where he worked in Mattel's Design Center as a

12  BARBIE product designer. In or about April 1998, Bryant resigned his position

13  with Mattel and moved to Missouri to live with his parents. Late in 1998, Bryant

14  applied to Mattel to be rehired. On January 4, 1999, he began working at Mattel in

15  Mattel's Design Center, again as a product designer, for Mattel's BARBIE

16  collectibles line.

17      ~~22.~~29.      Upon his return to Mattel in January 1999, Bryant

18  executed an Employee Confidential Information and Inventions Agreement (the

19  "Employment Agreement"), a true and correct copy of which is attached hereto as

20  Exhibit A.

21      ~~23.~~30.      Pursuant to his Employment Agreement and as a condition

22  of and in consideration for his employment, Bryant agreed, among other things,

23  that he held a position of trust with Mattel, that the designs and inventions he

24  created during his Mattel employment (with certain exceptions not relevant here)

25  were owned by Mattel, and that he would be loyal to the company by agreeing not

26  to assist or work for any competitor of Mattel while he was employed by Mattel.

27      ~~24.~~31.      On January 4, 1999, Bryant also executed Mattel's

28  Conflict of Interest Questionnaire (the "Conflict Questionnaire"). Among other

EXHIBIT _____ 83

PAGE _____ 1066

1   things, Bryant certified in the Conflict Questionnaire that, other than as disclosed,

2   he had not worked for any competitor of Mattel in the prior twelve months and had

3   not engaged in any business venture or transaction involving a Mattel competitor

4   that could be construed as a conflict of interest. Bryant understood what the

5   Conflict Questionnaire required because, among other things, he disclosed on it the

6   freelance work he had performed while in Missouri for Ashton-Drake, which is

7   unrelated to the conduct alleged herein. A true and correct copy of the Conflict

8   Questionnaire executed by Bryant is attached hereto as Exhibit B.

9           25.32.   Pursuant to the Conflict Questionnaire, Bryant also agreed

10   that he would immediately notify his supervisor of any change in his situation that

11   would cause him to change any of the foregoing certifications. Despite this

12   obligation, at no time did Bryant disclose to Mattel that he was engaging in any

13   business venture or transaction with MGA or any other Mattel competitor.

14           26.33.   More specifically, while Bryant was employed by Mattel,

15   Bryant and other Counter-defendants misappropriated and misused Mattel property

16   and Mattel resources for the benefit of Bryant and MGA. Such acts included, but

17   are not limited to, the following:

18           a.   using his exposure to Mattel development programs to

19   create the concept, design and name of Bratz;

20           b.   using Mattel resources, and while employed by Mattel,

21   Bryant worked by himself and with other Mattel employees and contractors to

22   design and develop Bratz, including without limitation by creating drawings and

23   three-dimensional models of Bratz dolls, and fashion designs for the dolls'

24   associated clothing and accessories; and

25           c.   using Mattel resources, and while employed by Mattel,

26   Bryant took steps to assist MGA to produce Bratz dolls.

27           27.34.   During the time that he was employed by Mattel and

28   thereafter, Bryant concealed these actions from Mattel, including by failing to

1 notify his supervisor of the conflict of interest he created when he began working
2 on MGA's behalf and when he began receiving payments from MGA. Bryant
3 additionally enlisted other Mattel employees to perform work on Bratz during the
4 time he was employed by Mattel and, by all indications, in at least some cases led
5 them to believe that they were performing work on a project for Mattel.

6 ~~28.~~35. Bryant also made affirmative misrepresentations to Mattel
7 management and employees immediately before his departure from Mattel on
8 October 20, 2000. For example, during his last few weeks at Mattel, Bryant told
9 his co-workers and supervisors that he was going to leave Mattel for "non-
10 competitive" pursuits. Bryant's representations to his supervisors and his co-
11 workers were false. Bryant knew at the time that those representations were false
12 and made those false statements to conceal from Mattel the fact that he was already
13 working with MGA and that he had contracted with MGA to assign Bratz works to
14 MGA and to provide design and development services to MGA, a Mattel
15 competitor.

16 ~~29.~~36. As a result of the efforts of Bryant and other Mattel
17 employees working on Bratz (which were done without Mattel's knowledge), the
18 Bratz dolls had been designed and were far along in development during the time
19 that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on
20 October 20, 2000. Not only did Bryant create and develop designs for the dolls as
21 well as other aspects of the products such as their fashion accessories during the
22 time he was employed by Mattel, but MGA showed Bratz prototypes and/or
23 product to both focus groups and retailers in November 2000, less than three weeks
24 after Bryant left Mattel. Bryant, Larian and others at MGA arranged these
25 meetings while Bryant was still employed by Mattel.

26 ~~30.~~37. Bryant and MGA employees also repeatedly and
27 continuously communicated with employees of MGA Entertainment (HK) Limited
28 on subjects such as design and manufacturing of Bratz. On information and belief,

2875224.1

--38--

EXHIBIT _____ 83
_____ 068

1   at all material times, MGA Entertainment (HK) Limited has maintained regular and

2   continuous contacts with persons in the County of Los Angeles; it regularly has

3   shipped products that it manufactures, or that are manufactured for it, to the County

4   of Los Angeles; and such products have been distributed to retailers and sold to

5   consumers in the County of Los Angeles.

6          ~~31.~~38.      Bratz also were shown to retailers at the Hong Kong Toy

7   Fair in January 2001. By early 2001, only a few months after Bryant resigned from

8   Mattel, MGA began having the Bratz fashion doll line and accessories

9   manufactured and then, shortly thereafter, began selling them at retail.

10         ~~32.~~39.      Since 2001, MGA has distributed and sold Bratz and

11  Bratz-related products throughout the world. Mattel is informed and believes that

12  MGA also licenses Bratz to third parties. Mattel is also informed and believes that

13  MGA has derived~~derives~~ annual revenue from its sales and licenses of Bratz in

14  excess of $500 million. Mattel is further informed and believes that MGA and

15  Bryant claim current ownership of Bratz, and all copyrights and copyright

16  registrations attendant thereto. MGA continues to market, sell and license Bratz

17  and has expressed an intention to continue to do so.

18         ~~33.~~40.      Mattel is informed and believes that MGA and Larian

19  encouraged, aided and financed Bryant to develop Bratz, knowing full well that

20  Bryant was still employed by Mattel at the time and that by performing such work,

21  including design-related work, for his own benefit and/or the benefit of MGA,

22  Bryant would be, and was, in breach of his contractual, statutory and common law

23  duties to Mattel. Mattel is also informed and believes that MGA proceeded to aid

24  and encourage Bryant to develop Bratz with the goal of obtaining a valuable

25  fashion doll line that would be commercially successful in the competitive, multi-

26  billion dollar market for fashion dolls.

27         ~~34.~~41.      Pursuant to Bryant's contract with Mattel, among other

28  things, Mattel is the true owner of Bratz designs and works, including those

EXHIBIT ___ **83**

--39--

PAGE ___ **061**

2875224.1

1  specifically that were conceived, created or reduced to practice during Bryant's

2  Mattel employment as well as all designs and works that are or have been derived

3  therefrom. Counter-defendants' continued use, sale, distribution and licensing of

4  Bratz thus infringes upon Mattel's rights, injures Mattel and unlawfully enriches the

5  Counter-defendants.

6      35.42.    Bryant and MGA deliberately and intentionally concealed

7  facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz.

8  Their acts of concealment include, but are not limited to, concealing the fact that

9  Bryant conceived, created, designed and developed Bratz while employed by

10  Mattel, including by tampering with and defacing documents which showed that, in

11  fact, Bryant was a Mattel employee while he was working for and with MGA;

12  concealing the fact that Bryant worked with and assisted MGA during the time

13  Bryant was employed by Mattel and was compensated for that assistance;

14  concealing that Bryant was providing consulting services to MGA; concealing

15  Bryant's role in Bratz by falsely claiming that Larian and others were the creators

16  of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among

17  other things, filing fraudulent registrations and/or amendments to registrations with

18  the United States Copyright Office claiming MGA as the author of Bratz as a work

19  for hire and altering relevant dates on such documents to further obscure the true

20  facts of when the works were created.

21      36.43.    Because of Bryant's and MGA's acts of concealment and

22  Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant

23  had worked with MGA, or assisted MGA, while he still employed by Mattel until

24  approximately November 24, 2003, when Mattel received, through an unrelated

25  legal action, a copy of Bryant's agreement with MGA which showed that the date

26  of Bryant's agreement with MGA predated Bryant's departure from Mattel. It was

27  then, as a result, that Mattel learned for the first time that Bryant had secretly aided,

28  assisted and worked for and with MGA while employed at Mattel and in violation

2825224.1

EXHIBIT 53

THIRD SECOND-AMENDED ANSWER AND COUNTERCLAIMS

PAGE 167

1   of his Mattel Employment Agreement.  Specifically, Bryant's agreement with

2   MGA obligated Bryant to provide product design services to MGA on a "top

3   priority" basis.  Bryant's agreement with MGA also provided that Bryant would

4   receive royalties and other consideration for sales of products on which Bryant

5   provided aid or assistance; that all works and services furnished by Bryant under

6   the agreement, including those he purportedly provided while still a Mattel

7   employee, purportedly would be considered "works for hire" of MGA; and that all

8   intellectual property rights to preexisting works by Bryant, including Bratz designs,

9   purportedly were assigned to MGA.

10  **IV.  MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

11           37.44.      On information and belief, in or about late 2003 or early

12  2004, MGA decided to open business operations in Mexico.  Faced with the

13  difficult task of developing an overall strategy for expanding into a market in which

14  it had only a nominal presence and no operations, MGA elected to steal Mattel's

15  plans, strategy and business information for the Mexican market and materials

16  related to Mattel's worldwide business strategies.  As detailed below, MGA and

17  Larian approached three employees of Mattel's Mexican subsidiary ("Mattel

18  Mexico"), enticed them to steal Mattel's most sensitive business planning materials,

19  and then hired them to assist in establishing and running MGA's new Mexican

20  subsidiary.

21          **A.     MGA Hires Three Senior Mattel Employees in Mexico**

22           38.45.      Carlos Gustavo Machado Gomez ("Machado") was the

23  Senior Marketing Manager, Boys Division, for Mattel Mexico, a position of trust

24  and confidence.  He was employed at Mattel Mexico from April 1, 1997 until April

25  19, 2004.  His duties included short, medium and long-term marketing planning,

26  generating product sales projections, and assisting in creation of the media plan.  In

27  his position, Machado had access to highly confidential and sensitive marketing

28  and product development information.  Machado had an employment agreement

EXHIBIT _____ **83**

PAGE _____ **767**

2875224.1

1   with Mattel in which he agreed to maintain the confidentiality of Mattel's protected

2   information. Mattel's policies also required Machado to protect Mattel's

3   proprietary information and not to disclose it to competitors.

4           39.46.       Mariana Trueba Almada ("Trueba") was the Senior

5   Marketing Manager, Girls Division, for Mattel Mexico, a position of trust and

6   confidence. She was employed at Mattel Mexico from November 3, 1997 until

7   April 19, 2004. Like Machado, her duties included short, medium and long-term

8   marketing planning, generating product sales projections, and assisting in creation

9   of the media plan. In her position, Trueba had access to highly confidential and

10  sensitive marketing and product development information. Trueba had an

11  employment agreement with Mattel in which she agreed to maintain the

12  confidentiality of Mattel's protected information. Mattel's policies also required

13  Trueba to protect Mattel's proprietary information and not to disclose it to

14  competitors.

15          40.47.       Pablo Vargas San Jose ("Vargas") was a Senior Trade

16  Marketing Manager with Mattel Mexico, a position of trust and confidence. He

17  was employed at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas

18  was responsible for ensuring that point-of-sale promotions were carried out,

19  analyzing the results of such promotions, negotiating promotion budgets, and

20  generally managing promotional activities. Vargas also had access to highly

21  confidential and sensitive marketing and product development information. Vargas

22  had an employment agreement with Mattel in which he agreed to maintain the

23  confidentiality of Mattel's protected information. Mattel's policies also required

24  Vargas to protect Mattel's proprietary information and not to disclose it to

25  competitors.

26          41.48.       Beginning in late 2003 or early 2004, Machado, Trueba

27  and Vargas began planning to leave Mattel Mexico to join MGA. In connection

28  with that plan, and with the encouragement of Larian and other MGA officers

2875224.1

--42--

EXHIBIT

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ 1079

1  operating in the United States, they began accessing, copying and collecting

2  proprietary Mattel documents to take with them. On April 19, 2004, Machado,

3  Trueba and Vargas each resigned their positions with Mattel, effective

4  immediately. They stated that they had been hired by a Mattel competitor, but

5  refused to identify that competitor. In fact, they had been offered and accepted

6  employment by MGA to establish and run MGA's new operation in Mexico.

7        **B.**    **Machado, Trueba and Vargas Stole Dozens of Confidential Trade**

8                   **Secret Marketing and Sales Documents for MGA's Benefit**

9         ~~42.~~49.     Following these resignations, Mattel discovered that

10  Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact

11  with MGA personnel, including Larian, for over three months prior to their

12  resignations. The primary vehicle for these communications in furtherance of their

13  "plot" was an America Online e-mail account with the address <plot04@aol.com>.

14  On information and belief, during this time, Machado, Trueba and Vargas supplied

15  Larian with certain Mattel confidential and proprietary information in order to

16  prove their value to MGA and to improve their negotiating position vis-à-vis their

17  respective employment contracts with MGA.

18         ~~43.~~50.     In March 2004, Machado, Trueba and Vargas were

19  making plans to travel from Mexico to Los Angeles to meet with MGA personnel

20  in person prior to resigning their positions at Mattel. Also, by at least March 3,

21  2004, Machado, Trueba and Vargas were discussing with MGA personnel,

22  including Larian, specific details regarding setting up MGA offices in Mexico City.

23  On information and belief, prior to their resignations, Larian and others at MGA

24  directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and

25  proprietary information that they could access and bring it with them to MGA.

26  This was reflected in, among things, e-mail messages that Mattel had discovered

27  after Machado, Trueba and Vargas had resigned. For example, on March 22, 2006,

28  approximately one month before they resigned, Machado, Trueba and Vargas wrote

2875224.1

--43--

EXHIBIT _____ **83**

1   an e-mail message from the <plot04@aol.com> e-mail account addressed to

2   Larian, MGA's General Manager Susan Kuemmerle and another MGA officer

3   Thomas Park.  In that e-mail message, Machado, Trueba and Vargas sought to

4   prove their value in this endeavor to MGA by writing: "Attached you will find our

5   analysis for future discussion.  We will be available during the nights of the week

6   after 16:30 Los Angeles time . . . ."  In another e-mail message, showing that the

7   participants intentionally sought to maximize the damage to Mattel from their

8   conduct, Kuemmerle wrote to Larian and Park: "Gustavo, Mariana and Pablo want

9   to resign (all at the same time, and you can believe my smile!) next Wednesday."

10          ~~44.~~51.    Beginning on April 12, 2004, a week before his

11   resignation and after numerous communications and meetings with Larian and

12   other MGA personnel, Machado began transferring additional Mattel confidential

13   and proprietary information to a portable USB storage device (also know as a

14   "thumb drive") that he connected to his Mattel computer.  On Friday, April 16,

15   2004, the last business day before he gave notice, Machado copied at least 70

16   sensitive documents to the portable USB storage device.

17          ~~45.~~52.    Starting on April 12, 2004, Vargas also copied a host of

18   confidential and proprietary materials to a portable USB storage device, including

19   sales plans, sales projections and customer profiles.

20          ~~46.~~53.    On April 16, 2004, Trueba also copied Mattel confidential

21   and proprietary information to a portable USB storage device connected to her

22   Mattel computer.

23          ~~47.~~54.    With full knowledge that she was going to leave Mattel for

24   a competitor, Trueba also took steps to increase further her access to Mattel's

25   confidential information shortly before her resignation.  For example, just four days

26   before leaving, Trueba went out of her way to seek to attend a meeting at which

27   Mattel personnel analyzed BARBIE programs for the United States, Canada and

28   South America.  Two days before her resignation, she contacted both a Mattel

1  employee located in El Segundo, California and Mattel's advertising agency to
2  request updated confidential information about advertising plans for BARBIE.  On
3  information and belief, Trueba acted at the direction of MGA and Larian and did so
4  in order to obtain further information that would allow MGA to obtain unfair
5  competitive advantage over Mattel.

6        ~~48.~~55.    Machado, Trueba and Vargas stole virtually every type of
7  document a competitor would need to enter the Mexican market and to unlawfully
8  compete with Mattel in Mexico, in the United States, and elsewhere.  They stole
9  global internal future line lists that detailed anticipated future products, production
10 and shipping costs for Mattel products; daily sales data for Mattel products;
11 customer data; sales estimates and projections; marketing projections; documents
12 analyzing changes in sales performance from 2003 to 2004; budgets for advertising
13 and promotional expenses; strategic research reflecting consumer responses to
14 products in development; media plans; consumer comments regarding existing
15 Mattel products customer discounts and terms of sale; customer inventory level
16 data; assessments of promotional campaign success; market size historical data and
17 projections; marketing plans and strategies; merchandising plans; retail pricing and
18 marketing strategies; and other similar materials.

19       ~~49.~~56.    The stolen data was not limited to the Mexican market.
20 The information stolen would, and did, give MGA an unfair competitive advantage
21 in the United States and around the world.  Further, the stolen information was not
22 located exclusively in Mexico, but included confidential and proprietary
23 information that resided on Mattel computers in Phoenix, Arizona and El Segundo,
24 California, and/or documents which were originally created by personnel in El
25 Segundo.  Included among these stolen documents was one of Mattel's earliest
26 internal global line lists, which included information for BARBIE products for the
27 upcoming year and included, for each product, the expected profit margin,
28 advertising expenditures, expected volume and marketing strategy.  On information

EXHIBIT ___ 83

1   and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or

2   another MGA officer during their negotiations with MGA.

3          ~~50.~~57.     MGA has used the information taken from Mattel to

4   obtain an unfair advantage over Mattel, including in both the United States and

5   Mexico. In fact, MGA later publicized its claim that, in 2005, it had increased its

6   Mexican market share by 90 percent over the prior year. This increase came at the

7   expense of Mattel, which lost market share during 2004 in Mexico and was forced

8   to increase its advertising and promotional spending to offset further losses.

9          ~~51.~~58.     Machado, Trueba and Vargas attempted to conceal their

10  widespread theft of Mattel's proprietary information. For example, Machado ran a

11  software program on his Mattel personal computer in an attempt to erase

12  information, including information that would reveal the addresses to which he had

13  sent, or from which he had received, e-mail messages. On information and belief,

14  for the same purpose Machado also damaged the hard drive of the personal

15  computer that he used at Mattel.

16         ~~52.~~59.     On information and belief, on April 19, 2004, immediately

17  after Machado, Trueba and Vargas simultaneously resigned, they traveled from

18  Mexico to Los Angeles to meet with MGA personnel, including Larian, in person.

19         ~~53.~~60.     Mattel notified Mexican authorities about the theft of its

20  trade secret and confidential information. On October 27, 2005, the Mexican

21  Attorney General Office obtained a search warrant from the Mexican Federal

22  Criminal Courts for MGA's facilities in Mexico City. In that search, the Mexican

23  authorities found and seized from MGA's offices both electronic and paper copies

24  of a large number of documents containing Mattel trade secrets, including those

25  that Mattel discovered through its forensic investigations, plus many others that

26  Mattel had not known had been stolen.

27         ~~54.~~61.     Based on Machado's "performance" in Mexico, Isaac

28  Larian subsequently promoted Machado, and he was transferred to MGA's main

EXHIBIT _____ **83**

--46--

1 | office in Van Nuys, California.  When deposed in connection with this case,
2 | Machado refused to answer questions about his misconduct and instead invoked the
3 | Fifth Amendment over 100 times.  On information and belief, Machado has resided
4 | at times relevant hereto in currently resides in the County of Los Angeles,
5 | California, and on information and belief, currently resides in Mexico.

6

7

8 | **V.    MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND**
9 | **GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF**
10 | **MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND**
11 | **PRACTICES**

12 | 55.62.    On October 1, 2004, Mattel's Senior Vice President and
13 | General Manager, Ron Brawer, left Mattel and joined MGA.  Tyco Toys, Inc.
14 | ("Tyco"), a predecessor to Mattel, had hired Brawer on April 22, 1996.  The same
15 | day, Brawer entered into an Employee Invention & Trade Secret Agreement with
16 | Tyco.  On April 9, 1997, Brawer became a Marketing Director for Mattel in Mount
17 | Laurel, New Jersey, and remained bound by his Employee Invention & Trade
18 | Secret Agreement.

19 | 56.63.    In January 2003, while Brawer held a position of trust and
20 | confidence at Mattel, Mattel's "Code of Conduct" was circulated to all Mattel
21 | employees worldwide.  Included in the Code of Conduct were statements that:

22 | Employees and Directors have an obligation to protect the
23 | confidentiality of Mattel's proprietary information.  Proprietary
24 | information is any information not generally known to the public
25 | that is useful to Mattel, that would be useful to its competitors or
26 | other third parties or that would be harmful to Mattel or its
27 | customers if disclosed.  Proprietary information includes trade
28 | secrets, revenue and profit information and projections, new

EXHIBIT 83
PAGE 1077

--47--

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

1                  product information, marketing plans, design and development

2                  efforts, manufacturing processes and any information regarding

3                  potential acquisitions, divestitures and investments.

4                  We can protect the security of Mattel's proprietary information

5                  by limiting access to it.  Confidential information should not be

6                  discussed with those who are not obligated to maintain the

7                  information in confidence and in public places where the

8                  information is not likely to be kept secret, such as planes,

9                  restaurants and elevators.  The obligation to preserve confidential

10                 information continues even after employment ends.

11 The Code of Conduct applied to Brawer and required that he meet his obligations

12 under the Code of Conduct.

13         ~~57.~~64.     By 2003, Brawer had advanced within Mattel to a Senior

14 Vice President position over customer marketing, a position of trust and

15 confidence.  In his executive position, Brawer was provided access to information

16 that was both sensitive and confidential, including, but not limited to, detailed

17 information related to development, manufacture, marketing, pricing, shipping, and

18 performance of Mattel's then-current and anticipated future product lines, and other

19 confidential business plans between Mattel and its most significant retail

20 customers.

21         ~~58.~~65.     In December 2003, Alan Kaye, Mattel's Senior Vice

22 President of Human Resources, asked Brawer whether he was discussing potential

23 employment with MGA.  Brawer denied that he had been in contact with MGA and

24 represented  that he would not talk to MGA.  Throughout 2004, Mattel reminded

25 and stressed to its employees, including Brawer, the importance of protecting

26 Mattel's confidential and proprietary materials and information.

27         ~~59.~~66.     On March 18, 2004, in response to a survey from the

28 President of Mattel Brands, Matt Bousquette, confirming compliance with Mattel's

EXHIBIT _____ **83**

--48--

2875224.1

1  Code of Conduct, Brawer wrote back that he "applaud[ed] the company's vigorous
2  protection of it's [sic] intellectual property," reflecting Brawer's clear
3  understanding that Mattel required its proprietary information to be kept
4  confidential.

5       ~~60.~~67.      In April 2004, Mattel promoted Brawer to Senior Vice
6  President/General Manager.  The General Manager position also is an executive
7  position of trust and confidence.  The role of a General Manager is to lead a cross-
8  functional "Customer Business Team."  Each General Manager is accountable for a
9  strategic partnership with a key Mattel retailer, covering all aspects of the business,
10  including both traditional toy sales and retail development of licensed products.

11       ~~61.~~68.      In or about late May 2004, Brawer began performing
12  General Manager duties, working with one of Mattel's major retail customer
13  accounts.  Thereafter, Brawer began receiving information related not only to the
14  Senior Vice President, Customer Marketing position that he still formally held, but
15  also began receiving detailed information related to his role as General Manager.
16  Brawer began requesting and analyzing detailed information related to Mattel and
17  its four key retail accounts.

18       ~~62.~~69.      On September 15, 2004, Brawer left work at noon for
19  observance of Rosh Hashanah.  As Brawer left, he carried a large cardboard box
20  with binders and other materials.  Several hours after his departure, Brawer
21  instructed his assistant to print Mattel's 2004 Sales Plan for one of Mattel's
22  significant customers and to provide it to him, falsely claiming he needed it for a
23  meeting

24       ~~63.~~70.      On September 17, 2004, Brawer returned to Mattel and
25  immediately informed his supervisor that he was leaving Mattel, effective October
26  1, 2004, to work for competitor MGA.

27       ~~64.~~71.      On September 20, 2004, Mattel hand-delivered a letter to
28  Brawer reminding him of his continuing obligation to preserve the confidentiality

EXHIBIT ____ 83

--49--

1   of Mattel's proprietary information and trade secrets not only through October 1,

2   2004, but continuing beyond the termination of his employment.

3          ~~65~~.72.      At his exit interview on September 29, 2004, Mattel

4   reminded Brawer that he had ongoing duties of confidentiality to Mattel, even after

5   the termination of his employment.  Brawer was given a copy of his Original

6   Confidentiality Agreement, which he had signed on April 22, 1996, and another

7   copy of the Code of Conduct.  During the exit interview, however, Brawer noted

8   that he had not signed the Code of Conduct, which he intended and Mattel

9   understood to mean that Brawer believed he was not bound by Mattel's policy

10   because he had not signed it.  Brawer was unwilling to complete or sign the form

11   that sought to confirm that Brawer understood his ongoing obligations under the

12   Code of Conduct, which included the obligation to preserve the confidentiality of

13   Mattel's proprietary and trade secret information.

14          ~~66~~.73.      On October 1, 2004, Brawer's final day of employment

15   with Mattel, Mattel hand-delivered to Brawer a letter that, among other things,

16   reminded Brawer of his confidentiality obligations to Mattel under the Code of

17   Conduct.

18          ~~67~~.74.      Upon joining MGA, Brawer became its Executive Vice-

19   President of Sales and Marketing.  In that role he was responsible for MGA's sales

20   worldwide.  As part of those responsibilities, Brawer had and continues to have

21   responsibility for MGA's accounts with the same retailers that he worked with

22   while at Mattel.

23          ~~68~~.75.      Brawer represented during his Mattel exit interview that

24   he had returned all proprietary information to Mattel.  That representation was

25   false.  On information and belief, Brawer removed proprietary and trade secret

26   information from Mattel that he did not return.  Mattel is informed and believes that

27   Brawer did not return to Mattel, for example, the information contained in his

28   contacts file.  The contacts file included contact information for Mattel customers,

1   most notably TRU, and extensive contact information for Mattel employees,

2   including titles, e-mail addresses and telephone numbers.

3   69.76.   BrawerMattel has usedrecently learned that Brawer has

4   been using that contact information on a regular basis, including within recent

5   months. Since leaving Mattel, Brawer has had contacts with Mattel employees,

6   both by telephone and by electronic mail. Based on his knowledge of Mattel's

7   operations and the roles of certain Mattel employees, he has targeted certain Mattel

8   employees who have broad access to Mattel proprietary information in an effort to

9   induce and encourage them to join MGA and to steal or otherwise wrongfully

10  misappropriate Mattel confidential information and trade secrets. Brawer has done

11  so by promising these Mattel employees salaries 25 percent or more higher than

12  they earn at Mattel and stating to them that they should not be concerned by legal

13  action taken by Mattel to protect its trade secrets and its rights because such claims

14  are hard to prove and easy to defeat.

15  **VI.   MGA HIRES OTHER KEY PERSONNEL FROM MATTEL IN**

16  **ORDER TO OBTAIN TRADE SECRET AND HIGHLY**

17  **CONFIDENTIAL INFORMATION REGARDING MATTEL'S**

18  **FORECASTING & INVENTORY MANAGEMENT SYSTEMS**

19  77.   On March 13, 2006, MGA recruited Jorge Castilla, Mattel's

20  Planning Specialist for Operations, Planning & Finance. Before he left Mattel,

21  Castilla stole on behalf of counter-defendants significant Mattel trade secrets and

22  proprietary information.

23  78.   Castilla joined Mattel in November 1999 and, in positions both

24  in Europe and the U.S., played a role in Mattel's development of highly proprietary

25  processes and systems for forecasting and inventory management in which Mattel

26  invested heavily. In Mattel's European operations, Mr. Castilla was involved in

27  Mattel's development of a pilot program to improve sales forecasting in the United

28

EXHIBIT _____ 83

2875224.1

1 | Kingdom, and later, with the potential application of the pilot program to Mattel's
2 | world-wide sales forecasting.

3 |      79.   In late 2004, Castilla worked with the International Planning
4 | group at Mattel's headquarters in El Segundo, California, where he was responsible
5 | for establishing Mattel's Electronic Data Warehouse system, a proprietary database
6 | containing highly confidential business information, such as sales, future/pending
7 | orders, product availability and sales forecasts at the stock keeping unit level.
8 | Additionally, he was responsible for implementing Mattel's customized sales
9 | forecasting system and preparing information for senior financial officers regarding
10 | inventory levels, sales demands and related topics.

11 |      80.   Throughout his tenure at Mattel, Castilla became privy to some
12 | of Mattel's most confidential and valuable information. Castilla acknowledged his
13 | position of trust confidence and agreed that he would preserve and would not
14 | disclose or misuse Mattel's proprietary or confidential information on numerous
15 | occasions. For example, in Castilla's Employee Confidential Information and
16 | Inventions Agreement, which he signed on October 29, 1999, he acknowledged
17 | that he would develop and have access to Mattel proprietary information. Castilla
18 | further agreed not to "disclose or use at any time either during or after my
19 | employment with [Mattel], any Proprietary Information," and to "cooperate with
20 | the Company and use [his] best efforts to prevent the unauthorized disclosure, use
21 | or reproduction of all Proprietary Information." He also agreed that when he left
22 | Mattel's employ, he would deliver to Mattel "all tangible, written, graphical,
23 | machine readable and other materials (including all copies in [his] possession or
24 | under [his] control containing or disclosing Proprietary Information."

25 |      81.   Castilla had agreed to the terms in Mattel's Code of Conduct to
26 | preserve Mattel's confidential and proprietary information and was specifically
27 | warned that "the unauthorized use or disclosure of [Mattel's] confidential,

28 |

EXHIBIT _____ 83

--52--

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

1 │ proprietary or trade secret information" may result in the termination of his
2 │ employment. He further agreed:

3 │      Employees have an obligation to protect the Company's
4 │      confidential and proprietary information. Confidential and
5 │      proprietary information is any information which is not
6 │      generally known to the public that is useful to the
7 │      Company and that would either be useful to the
8 │      Company's competitors or third parties or harmful to the
9 │      Company or its customers, if disclosed. Confidential and
10 │      proprietary information includes, but is not limited to,
11 │      trade secrets, revenue and profit information and
12 │      projections, new product information, sales and marketing
13 │      plans, design and development plans, manufacturing
14 │      processes, confidential personnel information and
15 │      information regarding potential acquisitions, divestitures
16 │      and/or investments.

17 │     82.  On Monday, March 13, 2006, Castilla informed Mattel that he
18 │ was resigning to take a position with MGA, as a Manager of Global Sales Planning,
19 │ with responsibilities that substantially paralleled those that he had at Mattel.

20 │     83.  During Castilla's exit interview on March 13, 2006, he was
21 │ provided with a document reminding him of his obligations to preserve Mattel's
22 │ confidential and proprietary information, including his obligations under Mattel's
23 │ Employee Confidential Information and Inventions Agreement, including but not
24 │ limited to "inventions, marketing plans, product plans, business strategies, forecasts
25 │ and personnel information." Further, Castilla filled out an exit interview checkout
26 │ form, in which he acknowledged receiving not only the reminder, but also the
27 │ Mattel Code of Conduct. Castilla also acknowledged that, during the course of his
28 │ employment at Mattel, he had received materials containing confidential and

EXHIBIT _____ 83