1 | proprietary information, and affirmed that he did not copy or disclose any of the
2 | listed documents or the information that they contained to anyone outside of
3 | Mattel, and denied having possession of any of the listed documents. He also
4 | affirmed that he returned to Mattel all of its confidential and proprietary documents
5 | by representing that he "brought them in on March 12, 2006, filed them and put
6 | together a summary of ongoing projects for supervisor, Brenda [Ray-Martin]."

7 | 84. Despite his affirmations to the contrary, as of Friday, March 10,
8 | 2006, Castilla had created a folder on his Mattel network share drive that he labeled
9 | "To Take." The folder contained approximately 56 megabytes of information. The
10 | bulk of that information was made up of documents containing Mattel trade secrets
11 | and confidential information, including documents related to inventory
12 | management and forecasting for Mattel, as well as a highly confidential document
13 | prepared by Mattel's senior executives that laid out Mattel's future international
14 | business strategies and marketing priorities not only up to today, but also for the
15 | coming years.

16 | 85. Just prior to his resignation, Castilla entered Mattel's
17 | headquarters building at approximately 9:30 a.m. on Sunday, March 12, 2006 and
18 | departed at approximately 2:00 p.m. By Monday, March 13, 2006, Castilla had
19 | deleted the "To Take" folder and its contents from his network share drive. Castilla
20 | had transferred the information in the "To Take" folder and potentially the folder
21 | itself to an e-mail account <hoclau04@gmail.com>, <hoclau04@yahoo.com>
22 | and/or to a personal digital assistant device.

23 | 86. When he was later interviewed by the FBI about his theft, on
24 | information and belief Castilla turned over to the FBI agents the storage media
25 | from his personal digital device which contained Mattel trade secrets. When
26 | deposed in connection with this case, Castilla refused to answer questions about his
27 | misconduct and instead invoked the Fifth Amendment nearly 500 times.

28 |

EXHIBIT 83

--54--
THIRD SECOND-AMENDED ANSWER AND COUNTER
PAGE 1084

2875224.1

1     87.    Much of the Mattel trade secrets and confidential information

2     that Castilla took from Mattel related to the successful processes for efficient and

3     cost-effective management of inventory and the use of sophisticated forecasting

4     techniques that Mattel, through significant investment, developed to obtain a

5     competitive advantage in the toy industry with its unique order, manufacture and

6     delivery cycles. The former Mattel employees working at MGA recognized the

7     value of Castilla's knowledge. MGA was in dire need of improved inventory

8     management and forecasting, and to remedy this problem MGA targeted Castilla—

9     and the Mattel-specific knowledge that he possessed—and lured him to MGA.

10    With the benefit of the information that he brought with him, on information and

11    belief, MGA, including through Castilla, has used that proprietary and confidential

12    information to improve MGA's sales forecasting and inventory planning, thus

13    saving MGA many millions of dollars.

14    ~~VI.~~VII.    **MGA STEALS MATTEL TRADE SECRETS IN CANADA**

15    ~~70.~~88.    In an effort to increase its market share and sales in

16    Canada and elsewhere, MGA stole Mattel trade secrets regarding Mattel's

17    customers, sales, projects, advertising and strategy, not only for Canada, but the

18    United States and the rest of the world.

19    ~~71.~~89.    Janine Brisbois was a Director of Sales for the Girls

20    Division in Canada. Mattel hired her as a National Account Manager in August

21    1999. When she was hired as a Mattel employee, Brisbois agreed that she would

22    preserve and would not disclose Mattel's proprietary or confidential information.

23    For example, Brisbois agreed:

24            You must keep Mattel's Proprietary Information confidential,

25            and you may only use or disclose such information as necessary

26            to perform your job responsibilities in accordance with Mattel

27            policies. Your obligation to keep Mattel's Proprietary

28

EXHIBIT **83**

PAGE **108**

1    Information confidential will continue even after any termination

2    of your employment with your employer.

3    . . .

4    Mattel takes steps to maintain the secrecy and confidential nature

5    of Mattel's Proprietary Information and, if a competitor

6    discovered Mattel's Proprietary Information, it could

7    significantly damage Mattel and your Employer.

8    ~~72.~~90._____While with Mattel, Brisbois had responsibility for Mattel's

9    account with TRU and later had responsibility for Mattel's Wal-Mart account.  In

10    her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to

11    Mattel confidential and proprietary information regarding Mattel's future product

12    lines, advertising and promotional campaigns and product profitability.

13    ~~73.~~91._____On September 26, 2005, Brisbois resigned from Mattel to

14    take a position as Vice President of Sales at MGA.  Mattel is informed and believes

15    that in that position Brisbois has responsibility for MGA's accounts with both TRU

16    and Wal-Mart.  During Brisbois' exit interview she was specifically asked whether

17    she was "taking anything."  Brisbois responded, "No."  Both during and after her

18    exit interview, Brisbois was advised by Mattel of her obligations to preserve

19    Mattel's confidential and proprietary information.

20    ~~74.~~92._____Mattel is informed and believes that Brisbois spoke with

21    Isaac Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m.,

22    when he called Ms. Brisbois at her home.  Mattel subsequently learned that on the

23    same day that she spoke with Mr. Larian and four days before she resigned,

24    Brisbois copied approximately 45 Mattel documents on to a USB or "thumb" drive

25    with the volume label "BACKPACK."  On information and belief, Brisbois

26    removed the thumb drive from Mattel Canada's office by concealing it in her

27    backpack or gym bag the last time that she left that office.  These documents

28    contained Mattel trade secret and proprietary information, and included:

2875224.1

--56--

EXHIBIT 53

THIRD ~~SECOND~~-AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ 1086

1       •   a document containing the price, cost, sales plan and quantity of every

2           Mattel product ordered by every Mattel customer in 2005 and 2006;

3       •   the BARBIE television advertising strategy and information concerning

4           sales increases generated by television advertisements;

5       •   competitive analysis of Mattel vis-à-vis its competitors in Canada;

6       •   an analysis of Mattel's girls business sales beginning in 2003 and

7           forecasts through 2006;

8       •   profit and loss reviews for Mattel's products being sold in Wal-Mart,

9           including margins and profit in not only Canada, but in the United

10          States and Mexico; and

11       •   a document containing the product launch dates and related advertising

12          for all Mattel new products between Fall 2005 and Spring 2006.

13          75.93.     After Mattel discovered that Brisbois had copied these

14 sensitive documents to a thumb drive, Mattel notified Canadian law enforcement

15 authorities. Canadian law enforcement authorities recovered from Brisbois a

16 thumb drive with the volume label "BACKPACK" containing the documents that

17 Brisbois had copied from Mattel's computer system. Mattel later learned that while

18 she was working as a Vice President of Sales at MGA, Brisbois accessed and

19 modified documents on that thumb drive.

20          76.94.     After joining MGA, Brisbois repeatedly traveled to

21 MGA's offices in Van Nuys, California and met with Larian and Brawer. In

22 February, 2006, knowing that Mattel trade secrets had been seized from MGA's

23 Mexico City offices and that at least three MGA employees were under criminal

24 investigation, MGA nonetheless issued a press release trumpeting its 2005

25 performance, with Larian himself concluding, "Our international teams in Mexico

26 and Canada have done a fantastic job."

27

28

EXHIBIT    83

## VIII. AT MGA'S DIRECTION, MATTEL EMPLOYEES IN ADDITION TO BRYANT SECRETLY WORK ON BRATZ FOR YEARS

95.    MGA also knowingly bribed and secretly used Mattel employees in addition to Bryant to work on MGA products such as Bratz while they were Mattel employees and, furthermore, fraudulently concealed such activity.  On December 28, 2007, MGA vendor and agent Veronica Marlow revealed at her deposition that, beginning in 2000 and continuing over a time period spanning at least five years, at least three Mattel employees in addition to Bryant worked on Bratz while employed by Mattel:  Ana Isabel Cabrera, Beatriz Morales and Maria Elena Salazar.  Like Bryant, these Mattel employees all signed agreements assigning Mattel all rights to intellectual property they created while employed by Mattel.  Each of the three Mattel employees worked for MGA through Marlow, to whom MGA and Bryant have paid millions of dollars since 2000.

96.    Following Marlow's December 2007 deposition, Ms. Cabrera and Ms. Morales, who were still Mattel employees,  admitted to being paid for and working on Bratz while Mattel employees and to knowing that such conduct was wrong.  Both specifically acknowledged that they continued to work on Bratz even after Mattel had made them aware of this litigation involving Bryant's secret, illegal work with MGA and had reiterated the need to protect Mattel's intellectual property.  Both admitted that they tried to conceal their work for MGA.

97.    MGA and Larian knew that their bribery and use of Mattel employees was wrongful and took steps to conceal that misconduct.  Among other things:  (a) MGA and Larian, by and through their agents Peter Marlow and Veronica Marlow, used devices such as paying the Mattel employees in cash and using false names and false social security numbers in tax and other business records; (b) MGA and Larian continued their acts of bribery and other misconduct after this litigation was filed; (c) MGA and Larian failed to disclose their payments to these Mattel employees despite Court Orders compelling them to disclose any

--58--

EXHIBIT 83

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE 688

1  such instances; and (d) MGA and Larian hired Maria Elena Salazar after she left

2  Mattel, even though she specifically touted in her employment application to MGA

3  that she worked on the "first patterns for [the] Bratz doll and release;" and (e) in an

4  email from Peter Marlow to Larian and Paula Garcia of MGA dated June 20, 2005,

5  Marlow informed MGA that the pattern and sample makers "have secure day jobs

6  with an outlook of many more years of stability," they "moonlight" to work on

7  Bratz and "[t]hey have more than 100 years total of doll-making experience

8  between them."

9  ~~VII.~~IX.    **MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL**

10                **TO JOIN MGA TO MISAPPROPRIATE MATTEL TRADE**

11                **SECRETS FOR THE BENEFIT OF MGA**

12             ~~77.~~98._____In the past few years, MGA has hired directly, or else

13  induced to secretly work for MGA while still Mattel employees, over 100 Mattel

14  ~~from Mattel's United States operations at least 25~~ employees, from Senior Vice-

15  President level to lower level employees.  On information and belief, many of these

16  employees were specifically targeted and recruited by MGA, including by Larian

17  and Brawer, based on the Mattel confidential and proprietary information they

18  could access.  Many of these employees had access to ~~information that Mattel~~

19  ~~considers to be highly~~ proprietary and confidential Mattel information.  Mattel

20  believes that some of those former Mattel employees may be observing their

21  obligations not to misappropriate, disclose or use Mattel's confidential and

22  proprietary information.  Mattel is informed and believes, however, that certain

23  additional employees accessed, copied and took from Mattel confidential and

24  proprietary information, including Mattel's strategic plans; business operations,

25  methods and systems; marketing and advertising strategies and plans; future

26  product lines; product profit margins; and customer requirements.  The

27  misappropriated confidential and proprietary information included information that

28  these Mattel employees were not authorized to access.  On information and belief,

EXHIBIT _____ **83**

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ **1069**

2875224.1

1  the misappropriated confidential and proprietary information taken from Mattel is

2  being disclosed to and used by MGA for the benefit of MGA and to the detriment

3  of Mattel.

4  ~~VIII.~~X.    **LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

5      **ABOUT MATTEL'S PRODUCTS**

6      ~~78.~~99.       Counter-defendants have engaged in other illegal practices

7  in their efforts to compete unfairly with Mattel.  Larian has a practice of sending e-

8  mail messages to a "Bratz News" distribution list that Larian created or that was

9  created for him.  Mattel is informed and believes that the recipients of e-mail

10  messages sent to the "Bratz News" distribution list include members of the media

11  as well as representatives of many of Mattel's most significant customers.

12      ~~79.~~100.    On May 12, 2006, Larian sent an e-mail message to the

13  "Bratz News" distribution list that included a reference to Mattel's updated MY

14  SCENE MY BLING BLING product with real gems.  Mattel had not publicly

15  announced this product at the time that Larian sent his May 12, 2006 e-mail.  In

16  fact, Mattel had guarded the identification of this particular product.

17      ~~80.~~101.    Shortly thereafter, Larian engaged in a campaign of calling

18  Mattel's most significant customers, including but not limited to Target and TRU,

19  regarding the MY SCENE MY BLING BLING product with real gems.  In an

20  effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

21  BLING product with real gems, Larian knowingly made false factual statements

22  about that product to each retailer.  As of the writing of this Third~~Second~~ Amended

23  Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

24  that each was the only retailer to purchase the product and that Mattel would not be

25  supporting the product with television advertising.  At the time that Larian made

26  these statements, he knew them to be false.  As a result of Larian's

27  misrepresentations, at least one retailer cancelled its order for 75,000 units of the

28  MY SCENE MY BLING BLING product with real gems.  Only after Mattel

EXHIBIT _____ **83**

1 learned of Larian's misrepresentations and was able to correct them was Mattel able
2 to assure the retailer that Larian's representations were false and to persuade the
3 retailer to reinstate the order.

4 ~~81.~~102.____ Such conduct is not an isolated incident. MGA and
5 Larian, in an effort to gain an unfair competitive advantage, repeatedly issued false
6 and misleading press releases and spread false rumors in the marketplace. In these
7 press releases and in their other statements made in marketplace, MGA and Larian
8 have deliberately misrepresented Bratz's sales, Bratz's market share, Bratz's
9 position vis-à-vis Mattel's BARBIE products, sales of Mattel's BARBIE products.
10 and the market share of Mattel's BARBIE products.

11 **XI. LARIAN AND MGA DESTROY DOCUMENTS, ENGAGE IN**
12 **PERJURY, CONSPIRACY TO COMMIT PERJURY AND**
13 **OBSTRUCTION OF JUSTICE**

14 103. On information and belief, Larian and MGA have themselves,
15 and through their agents and co-conspirators, destroyed, altered and fabricated
16 documents and engaged in other acts of spoliation to conceal the existence, nature
17 and breadth of their wrongful conduct. For example, and without limitation,
18 Farhad Larian, a former MGA executive and director and Isaac Larian's brother,
19 deliberately destroyed several boxes of documents relevant to Mattel's claims
20 against Bryant and MGA to keep them from Mattel. Farhad Larian did so while
21 still on MGA's payroll.

22 104. On information and belief, Larian and MGA have also conspired
23 to commit perjury and engaged in acts of perjury and other acts of obstruction in
24 connection with MGA's theft of Mattel's property and Mattel's claims relating
25 thereto. These actions include, among others, MGA's submission of false
26 information in sworn applications to the U.S. Copyright Office; Larian's repeated
27 sworn testimony during Phase 1 that Bryant told him, and that Larian believed, that
28 Bryant had not created Bratz while employed by Mattel; MGA's and Larian's

EXHIBIT

1 | submission of false statements regarding MGA's ability to receive outside funding
2 | in court pleadings and false statements regarding its financial condition in this
3 | action.

4 | **XII. MGA AND LARIAN LAUNDER MONEY, ENGAGE IN**
5 | **FRAUDULENT TRANSFERS AND ATTEMPT TO OBTAIN**
6 | **PRIORITY OVER MATTEL'S CLAIMS**

7 | 105.  MGA and Larian have, on information and belief, engaged in a
8 | complex scheme to transfer, launder or otherwise hide the ill-gotten funds they
9 | have obtained by virtue of their unlawful conduct and have gone to extensive
10 | lengths to cover up and obscure such activities.  On information and belief, this
11 | scheme was orchestrated and/or commenced no later than 2007, but accelerated
12 | during the pendency of trial, especially after the Jury's Phase 1A verdict in Mattel's
13 | favor.  This scheme continues to this day and threatens to continue into the future.

14 | 106.  On information and belief, in concert with various co-
15 | conspirators and shell companies controlled by them, acting on their behalf or in
16 | which they have an interest, MGA and Larian have transferred or transported, or
17 | caused to be transferred or transported, funds obtained through their unlawful
18 | conduct in interstate commerce, including without limitation out of the United
19 | States. At least some of these funds, on information and belief, were later returned
20 | to the United States through shell entities that attempt to disguise not only the true
21 | owners of the companies, but the origin and source of the funds as well.

22 | 107.  These entities have, on information and belief, funded further
23 | wrongdoing by MGA and Larian, including the purported purchase, at a substantial
24 | discount, of the note held by MGA's then-largest creditor, Wachovia.  By this
25 | scheme, Larian and his co-conspirators sought to disguise their identities and to
26 | obtain purported priority as an alleged secure creditor (rather than as a shareholder)
27 | over Mattel's claims against MGA's assets. On information and belief, MGA and
28 | Larian conducted and participated in this scheme with the purpose of concealing

1 and manipulating their assets and liabilities and the appearance of their financial
2 condition in anticipation of their liability to Mattel, and for the purpose of
3 minimizing any exposure due to that liability. The scheme has directly assisted
4 MGA and Larian in committing the other wrongs against Mattel identified herein.

5     **A.**    **Larian and MGA Create Various Shell and Off-Shore Entities**

6         108. On information and belief, Larian and MGA and those acting in
7 concert with them have created, affiliated with, employed or purchased one or more
8 shell entities to either transfer or assist in the transfer of proceeds generated by their
9 unlawful conduct and the criminal enterprises. These include, but are not limited
10 to, the following entities and transactions:

11     &bull; Lexington Financial Limited, a Nevis Company ("Lexington"), a
12       company based in the Caribbean island nation of Nevis that is notorious
13       for its secrecy laws. Lexington, whose purported London business
14       address listed in filings with the State of California is nothing more
15       than a virtual office provided by a London company for a few dollars a
16       month, appears to be a non-operating shell corporation. Lexington was
17       registered on March 3, 2006 by persons who , on information and
18       belief, were acting on behalf of or in concert with Larian, and Larian
19       and his co-conspirators used and continue to use Lexington to conceal,
20       receive, hold and transfer funds generated by the wrongful conduct
21       alleged herein.

22     &bull; Vision Capital, LLC, a Delaware limited liability company ("Vision
23       Capital"), which, on information and belief, was created by persons at
24       the direction or on behalf of Larian on August 19, 2008, just after the
25       Phase 1A verdict in Mattel's favor. On information and belief, Larian
26       and his co-conspirators used and continue to use Vision Capital to
27       conceal, receive, hold and transfer funds generated by their wrongful
28       conduct alleged herein.

EXHIBIT _____ 83

2875224.1

1  • Omni 808 Investors, LLC, a California limited liability corporation
2  ("Omni 808"), which, on information and belief, was created at the
3  direction or on behalf of Larian on August 12, 2008, just after the Phase
4  1A verdict in Mattel's favor.  On information and belief, Larian and his
5  co-conspirators used and continue to use Omni 808 to conceal, receive,
6  hold and transfer funds generated by their wrongful conduct alleged
7  herein.  In 2006, Neil Kadisha, the alleged CEO of Omni 808 and a
8  Larian co-conspirator, was found by a court after trial to be "no more
9  than a common thief" and was held liable for stealing millions of
10 dollars as part of a decade-long pattern of fraudulent conduct that
11 included perjury, subornation of perjury, fabrication of financial
12 records, sham transactions, preparation of back-dated documents,
13 fraudulent accountings, acts of looting, embezzlement and other
14 misappropriations of funds, breaches of fiduciary duty, conflicts of
15 interest and illegal self-dealing.

16      109. Lexington claims a purported security interest in the assets of
17 Vision Capital.  Vision Capital claims a purported security interest in the assets of
18 Omni 808.

19      110. MGA and Larian, and their co-conspirators, have, on information
20 and belief, used these entities to transfer their ill-gotten funds from the United
21 States and/or to move laundered funds back into the United States, including
22 without limitation in an attempt to obtain purported priority as an alleged secured
23 creditor over Mattel's claims and to deprive Mattel of assets to which it has a
24 legitimate claim.

25      111. On information and belief, Lexington, Vision Capital and Omni
26 808 are alter-egos of each other, the companies being mere shells created and
27 operated pursuant to a fraudulent scheme as alleged herein, and with their financial
28 affairs being significantly intermingled and interconnected.

EXHIBIT ____ 83

2825224.1

1      112. On information and belief, Larian, either alone or with other co-
2 conspirators, formed or caused to be formed the alter-ego entity IGWT Group on
3 June 26, 2008—during the Phase 1 trial—and registered its place of business as
4 Larian's home address. On information and belief, Larian, either alone or with
5 other co-conspirators, also formed or caused to be formed an affiliate alter-ego
6 entity called IGWT 826 Investments on August 27, 2008—the day after the Phase 1
7 trial ended. IGWT 826 Investments is registered at the home address of Shirin
8 Makabi and Jahangir Eli Makabi. Shirin Makabi is Isaac Larian's sister, Jahangir
9 Eli Makabi is Isaac Larian's brother-in-law, and both are shareholders or beneficial
10 shareholders of MGA through various trusts.

11      **B.      The Purported Acquisition of the Wachovia Debt**

12      113. After the Phase 1A verdict, MGA and Larian represented on
13 multiple occasions to both this Court and the Ninth Circuit that MGA was in dire
14 financial straits and might file imminently for bankruptcy. MGA and Larian
15 represented to the Court that MGA had not obtained and could not obtain credit (a
16 representation that MGA later was forced to retract as false). At the same time
17 MGA's largest lender, Wachovia, accelerated over $313 million dollars worth of
18 debt that MGA owed it and triggered the lock-box provision of its loan agreements
19 with MGA, which required the transfer to Wachovia of all, or substantially all, of
20 the revenue that MGA received.

21      114. On information and belief, Larian and MGA, and their co-
22 conspirators, in order to maintain control over MGA's revenue and to frustrate the
23 jury's verdicts in Mattel's favor, determined to purchase the Wachovia note
24 through various entities affiliated with Larian or with MGA. On information and
25 belief, Larian intended to use Lexington, Vision Capital and Omni 808 to distance
26 himself from the transaction and thereby conceal the true source of the funds used
27 to purportedly purchase the Wachovia note and to conceal that Larian in fact
28 participated in or controlled the acquisition of the debt, directly or indirectly. On

EXHIBIT _____ 83

1    information and belief, at Larian's urging and acting in concert with Larian, Omni

2    808 purportedly acquired the bulk of that debt at a massive discount.

3                 115.  Omni 808 has represented to the Court that its claimed

4    acquisition of the Wachovia note was an arms-length business deal.  Omni 808 has

5    also represented to the Court that the funds used for the purported acquisition did

6    not originate from MGA or Larian.  Wachovia, however, recently produced

7    documents that undermine these claims and representations.  A July 29, 2008 offer

8    letter to Wachovia states that Larian would have a non-voting limited interest in the

9    loan acquisition.  And a Senior Promissory Note between MGA and Wachovia,

10   dated September 3, 2008, specifically identifies Omni 808 as an affiliate of MGA.

11                 116.  Moreover, Vision Capital, which claims it holds a purported

12   security interest in Omni 808, is also affiliated with MGA.  Vision Capital has

13   listed its address as 1525 South Broadway, Los Angeles, California.  Mattel has not

14   been able to identify an active business named Vision Capital located there.  Mattel

15   did identify this as the location of Neman Brothers & Associates, a business owned

16   by Leon Neman, Larian's brother-in-law who has served as an MGA director.

17   After Mattel uncovered these facts, Mr. Neman claimed to be an alleged principal

18   of Vision Capital.

19                 117.  On information and belief, the funds Omni 808 used to

20   purportedly purchase the Wachovia note were, in whole or in part, generated by

21   Larian's and MGA's wrongful conduct directed towards Mattel.  On information

22   and belief, Larian has used, at least in part, IGWT Group, IGWT 826 Investments,

23   Lexington, Vision Capital and other shell and alter-ego companies as conduits to

24   transfer funds to Omni 808 and to conceal the source of such funds.

25                 118.  MGA and Larian have now also admitted that Omni 808

26   provided additional funds to MGA beyond the Wachovia debt purchase, though

27   MGA first denied that was the case.  MGA and Omni 808 entered into a Secured

28   Delayed Draw Demand Note on October 16, 2008.  Pursuant to the terms of that

1   Note, Omni 808 would make available up to $40 million of additional purported

2   credit to MGA. Pursuant to a written request submitted by MGA on October 17,

3   2008, Omni 808 loaned MGA an additional $6 million under that Note. On

4   information and belief, those funds also were, in whole or in part, generated by

5   Larian's and MGA's wrongful conduct towards Mattel and transferred through

6   Larian-controlled conduits to conceal the true source of the funds. In fact, the

7   Secured Delayed Draw Demand Note between MGA and Omni 808 states that

8   Omni 808's funding came, at least in part, from IGWT 826 Investments.

9         119. On information and belief, Omni 808's claimed acquisition of

10   the Wachovia note was not an "arms-length" transaction by an independent

11   investor or investors. Instead it was, on information and belief, an insider

12   transaction facilitated by Larian and MGA through the use of nominally

13   independent but affiliated entities, for the purpose of maintaining substantial

14   control over MGA's revenues in the near term, continuing with their wrongful

15   activities despite the jury's verdict against them and establishing purported priority

16   as a secured creditor over Mattel's claims in any eventual bankruptcy. On

17   information and belief, Larian participated and was involved in the purported

18   acquisition of MGA's debt, though the claimed acquisition was structured to

19   conceal it from Mattel.

20         120. While the precise mechanisms by which Larian transferred funds

21   and manipulated MGA's and Larian's finances through these conduits is not yet

22   known to Mattel because such information is in the exclusive possession and

23   control of MGA, Larian and their co-conspirators, and they have refused to disclose

24   or misrepresented even basic information such as the alleged owners of the entities,

25   on information and belief Larian and his affiliates have created shell entities for the

26   purpose of obscuring and concealing the true ownership of assets held and origin of

27   funds transferred, while Larian and his family members and affiliates further have

28

EXHIBIT 88

1 | engaged in a series of related-party transactions as part of a scheme to convert at
2 | least tens of millions of dollars in MGA equity into debt.

3 |       121. For example, according to an MGA Lender Update dated
4 | November 1, 2007, in approximately August 2007, MGA made purported loans in
5 | the amount of 2.5 million euros for investments in another toy company, called
6 | Zapf, purportedly on behalf of Larian and his family. Another 12 million euros
7 | were due in November 2007, for which MGA was liable if Larian did not
8 | contribute. As shown in a Master Assignment and Exchange Agreement between
9 | Omni 808, MGA, and MGA de Mexico and Wachovia and dated September 3,
10 | 2008, soon after the Phase 1A verdict and during the Phase 1B trial Larian and his
11 | family members (including, without limitation, Jahangir Eli Makabi and Shirin
12 | Larian Makabi as Co-Trustees of the Makabi Living Trust, Isaac Larian and Angela
13 | Larian as Trustees of the Larian Living Trust, the Angela Larian Qualified Annuity
14 | Trust, the Isaac E. Larian Qualified Annuity Trust, the Jahangir Eli Makabi
15 | Qualified Annuity Trust, Jahangir Eli Makabi, and the Shirin Larian Makabi
16 | Qualified Annuity Trust) executed a series of twenty-two separate transactions (on
17 | August 4, 5, 8, 19, 25, 2008) which purported to transfer as loans by shareholders
18 | over $13.3 million from U.S. based trust accounts to MGA Entertainment (HK)
19 | Limited. Another series of twenty-two transfers (also on August 4, 5, 8, 19, 25,
20 | 2008) show that Larian and these same family members, MGA shareholders, have
21 | also purported to loan nearly $6 million in funds to MGA.

22 |     **C.**   **Larian Loots MGA's Assets by Selling MGA Inventory to Himself**
23 |            **at Fire Sale Prices**

24 |       122. On information and belief, Larian and MGA have transferred and
25 | are continuing to transfer assets from MGA by coordinating the sale of significant
26 | MGA inventory, at substantial discounts, to companies affiliated with Larian.
27 | These transactions have had the effect of denuding MGA of its most valuable
28 | inventory, sold to Larian's own companies for pennies on the dollar, while

1  permitting Larian to substantially benefit by reselling MGA's inventory, and while

2  further infringing Mattel's intellectual property.

3       123.  On information and belief, Larian, through the Larian-controlled

4  IGWT entities, is purchasing Bratz products that infringe Mattel's rights and other

5  MGA products for steep discounts and reselling, distributing and offering for sale

6  such products.  MGA has admitted that it sold tens of millions of dollars in Bratz

7  inventory to IGWT entities at a "substantial discount."  Documents show that the

8  discount on this self-dealing transaction was in fact massive.

9       124.  In May of 2008, when MGA was undergoing cash-flow

10  problems for reasons that included Larian's on-going de facto liquidation of MGA

11  assets, Larian arranged to have MGA purportedly sell vast amounts of MGA

12  inventory, including infringing Bratz products, to himself through the IGWT

13  Group.  As shown by an Inventory Purchase Agreement between MGA and IGWT

14  Group, dated July 7, 2008, MGA purportedly agreed to sell hundreds of thousands

15  of inventory items to Larian's IGWT Group.  This agreement was signed by Larian

16  on behalf of both MGA and IGWT Group.  Through this transaction, MGA sold

17  inventory with a retail value of more than $65 million for just $5.3 million.

18       125.  MGA and Larian have claimed that the arrangement was to

19  MGA's benefit because the deal involved obsolete and overstock inventory.

20  However, as the Bill of Sale accompanying the agreement (which shows the SKUs

21  of the products IGWT Group purchased) shows, much of the inventory MGA sold

22  to IGWT Group was actually current inventory, including current Bratz products.

23       126.  The full extent of this and other transactions by which Larian has

24  arranged the substantially discounted sale of MGA assets to IGWT Group or other

25  Larian-controlled entities or affiliates is not yet known to Mattel because such

26  information is in the exclusive possession and control of MGA, Larian, the IGWT

27  entities and their co-conspirators, and they have refused to disclose information to

28  Mattel.  On information and belief, by arranging this type of transaction with

--69--

EXHIBIT 83

THIRD SECOND-AMENDED ANSWER AND COUNTERCLAIMS
PAGE 1099

2875224.1

1 | IGWT Group and other similar insider transactions yet unknown to Mattel, Larian
2 | has siphoned significant MGA assets for his own personal benefit.  On information
3 | and belief, the purported transaction with IGWT Group is only the most recent in a
4 | series of insider arrangement facilitated by Larian, which, by May 16, 2008, led
5 | Wachovia to conclude that Larian had engaged in a de-facto liquidation of MGA's
6 | assets over the course of 2008 and other times.

**CLAIMS FOR RELIEF**

**First Counterclaim**

**Copyright Infringement**

**(Against MGA, MGA Entertainment (HK) Limited,**

**Larian, Bryant and Does 4 through 10)**

12 | ~~82.~~127.____Mattel repeats and realleges each and every allegation set
13 | forth in paragraphs 1 through 126~~81~~, above, as though fully set forth at length.

14 | ~~83.~~128.____Mattel is the owner of copyrights in works that are fixed in
15 | tangible media of expression and that are the subject of valid, and subsisting,
16 | copyright registrations owned by Mattel.  These include, without limitation, the
17 | works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-
18 | 378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-
19 | 378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-
20 | 378-660, VAu 715-270, VAu 715-271 and VAu 715-273.  These also include,
21 | without limitation, the works that are the subject of Registrations VAu 960-439,
22 | VAu 964-304, VAu 964-306, VAu 964-308, VAu 964-309, VAu 964-310, VAu
23 | 964-311, VAu 964-315, VAu 964-318, VAu 964-319, VAu 964-320 and VAu 964-
24 | 321.

25 | ~~84.~~129.____Counter-defendants have reproduced, created derivative
26 | works from and otherwise infringed upon the exclusive rights of Mattel in its
27 | protected works without Mattel's authorization.  Counter-defendants' acts violate
28 | Mattel's exclusive rights under the Copyright Act, including without limitation

EXHIBIT **83**
PAGE **1100**

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

2875224.1

1    Mattel's exclusive rights to reproduce its copyrighted works and to create

2    derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and

3    501.

4         ~~85.~~130.    Counter-defendants' infringement (and substantial

5    contributions to the infringement) of Mattel's copyrighted works is and has been

6    knowingly made without Mattel's consent and for commercial purposes and the

7    direct financial benefit of Counter-defendants. Counter-defendants, moreover,

8    have deliberately failed to exercise their right and ability to supervise the infringing

9    activities of others within their control to refrain from infringing Mattel's

10   copyrighted works and have failed to do so in order to deliberately further their

11   significant financial interest in the infringement of Mattel's copyrighted works.

12   Accordingly, Counter-defendants have engaged in direct, contributory and

13   vicarious infringement of Mattel's copyrighted works.

14        ~~86.~~131.    By virtue of ~~Counter-~~defendants' infringing acts, Mattel is

15   entitled to recover Mattel's actual damages plus Counter-defendants' profits,

16   Mattel's costs of suit and attorneys' fees, and all other relief permitted under the

17   Copyright Act.

18        ~~87.~~132.    -Counter-defendants' actions described above have caused

19   and will continue to cause irreparable damage to Mattel, for which Mattel has no

20   remedy at law. Unless Counter-defendants are restrained by this Court from

21   continuing their infringement of Mattel's copyrights, these injuries will continue to

22   occur in the future. Mattel is accordingly entitled to injunctive relief restraining

23   Counter-defendants from further infringement.

24

25

26

27

28

2875224.1

EXHIBIT __83__

## Second Counterclaim

### Violation of the Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. §§ 1962(c) and 1964(c)

### (Against All Counter-defendants)

88. 133.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 132 87, above, as though fully set forth at length.

134.  Beginning at various times from approximately 1999 through the filing of this Third Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Castilla and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).

89. 135.    In addition, beginning at various times from approximately 1999 through the filing of this Third Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

136.  Further, beginning at least as early 2007, and through the filing of this Third Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

2875224.1

EXHIBIT _____ 83

PAGE _____ 1163

1   Limited and Larian, as well as IGWT Group, IGWT 826 Investments, Lexington,

2   Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli

3   Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The

4   Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E.

5   Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust,

6   The Shirin Larian Makabi Qualified Annuity Trust and certain of the Doe Counter-

7   defendants, and others acting in concert with or on behalf of the foregoing, were

8   employed by and associated-in-fact with another enterprise engaging in, and the

9   activities of which affect, interstate and foreign commerce (the "IGWT Criminal

10   Enterprise").

11          90.137.      MGA, MGA Entertainment (HK) Limited, MGA de

12   Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13   Brisbois, Castilla and the Other Former Employees, and each of them, for the

14   purpose of executing and attempting to execute the scheme to improperly defraud

15   Mattel and steal its trade secret or otherwise confidential and proprietary

16   information and infringe Mattel's rights and conceal such misconduct, by means of

17   tortious, fraudulent and criminal conduct, did and do unlawfully, willfully and

18   knowingly conduct and participate, directly and indirectly, in the conduct of the

19   MGA Criminal Enterprise's affairs and, in the case of MGA, MGA Entertainment

20   (HK) Limited, Larian, Bryant, and certain of the Doe Counter-defendants, the Bratz

21   Criminal Enterprise's affairs, through a pattern of racketeering activity.  Their

22   actions include multiple, related acts in violation of:  18 U.S.C. § 1341 (mail fraud),

23   18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1503 (influencing or injuring officer or

24   juror generally), 18 U.S.C. § 1512 (tampering with a witness victim, or informant),

25   18 U.S.C. § 1952 (interstate and foreign travel to aid racketeering), and 18 U.S.C. §

26   2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).

27          138. In addition, MGA, MGA Entertainment (HK) Limited, Larian,

28   IGWT Group, IGWT 826 Investments, Lexington, Omni 808, Vision Capital, Leon

EXHIBIT 83

2825224.1

1  Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian Makabi,

2  Angela Larian, The Makabi Living Trust, The Larian Living Trust, The Angela

3  Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The

4  Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified

5  Annuity Trust and Does 4 through 10, and each of them, for the purpose of

6  executing and attempting to execute the scheme to infringe Mattel's rights and

7  transfer, transport or launder the ill-gotten gains from their infringements and the

8  MGA and Bratz Criminal Enterprises' thefts and infringements, and secret MGA

9  assets and purportedly obtain priority over Mattel, by means of tortious, fraudulent,

10  and criminal conduct, did and do unlawfully, willfully, and knowingly conduct and

11  participate, directly and indirectly, in the conduct of the IGWT Criminal

12  Enterprise's affairs through a pattern of racketeering activity.  Their actions include

13  multiple, related acts in violation of:  18 U.S.C. § 1341 (mail fraud), 18 U.S.C.

14  § 1343 (wire fraud), 18 U.S.C. § 1952 (interstate and foreign travel to aid

15  racketeering), 18 U.S.C. § 152(7) (concealment of assets), 18 U.S.C. § 1956

16  (money laundering) and 18 U.S.C. § 1957 (use of unlawful funds) and 18 U.S.C. §

17  2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).

18         91. 139.    MGA, MGA Entertainment (HK) Limited, MGA de

19  Mexico, Larian, Bryant, Machado, Does 4 through 10, and the other members of

20  the MGA Criminal Enterprise, Bratz Criminal Enterprise and IGWT Criminal

21  EnterpriseBrawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and

22  each of them, shared the common purpose of enabling MGA to defraud Mattel and

23  infringe its rights, and obtain confidential, proprietary and otherwise valuable

24  Mattel property through improper means, and conceal and transfer, transport or

25  launder the ill-gotten gains from such misconduct, and secret MGA assets and

26  purportedly obtain priority over Mattel, in order to assist MGA in illegally

27  competing with Mattel domestically and throughout the world.

28

2875224.1

EXHIBIT ___ 83

1104

92. 140.   The MGA Criminal Enterprise, and Bratz Criminal Enterprise and IGWT Criminal Enterprise as described herein are and have been at all relevant times continuing enterprises because, among other reasons, each is designed to and did unlawfully acquire the confidential business information and property of Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and business methods, practices and processes. The conduct of each enterprise continues through the date of this ThirdSecond Amended Answer and Counterclaims and is ongoing, including by virtue of MGA's continuing use and infringement of Mattel's information, and property and rights, and its use of ill-gotten gains from such thefts, all to the detriment of Mattel. Said enterprises furthermore threaten to continue such conduct into the future, to the detriment of Mattel.

93. 141.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat of continuing criminal activity. This activity consists of multiple acts of racketeering by each member of the MGA Criminal Enterprise, and Bratz Criminal Enterprise and IGWT Criminal Enterprise, is interrelated, not isolated and is perpetrated for the same or similar purposes by the same persons. This activity extends over a substantial period of time, up to and beyond the date of this ThirdSecond Amended Answer and Counterclaims. These activities occurred after the effective date of 18 U.S.C. §§ 1961 et seq., and the last such act occurred within 10 years after the commission of a prior act of racketeering activity. These racketeering activities included repeated acts of:

(a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, and Does 4 through 10, as well as some or all other members of the MGA and IGWT Criminal Enterprises, aided and abetted by each other and some or all of the remaining members of the MGA.

EXHIBIT 25
--75--
THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE 100

1  ~~Criminal Enterprise~~, having devised a scheme or artifice to

2  defraud Mattel of its confidential trade secret information and

3  property by conversion, false representations, concealment and

4  breaches of fiduciary duty, <u>and transfer, transport or launder the</u>

5  <u>ill-gotten gains from such thefts, and secret MGA assets and</u>

6  <u>purportedly obtain priority over Mattel,</u> did for the purpose of

7  furthering and executing such a scheme or artifice to defraud,

8  deposited or caused to be deposited matters or things to be sent or

9  delivered by the Postal Service, or any private or commercial

10  interstate carrier, or took or received matters or things therefrom,

11  or knowingly caused matters or things to be delivered by mail or

12  such carrier according to the direction thereon, or at the place at

13  which it is directed to be delivered by the person to whom it is

14  addressed, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2, as

15  alleged with greater particularity in the foregoing paragraphs and

16  as evidenced by, among other <u>acts of mail fraud</u>~~things~~, the true

17  and correct copies of communications and other evidence

18  included in Exhibit C<u>, D and E</u>;

19  (b)  <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment

20  (HK) Limited, MGA de Mexico, Larian, Bryant, Machado<u>,</u> and

21  Does 4 through 10, <u>as well some or all other members of the</u>

22  <u>MGA and IGWT Criminal Enterprises,</u> aided and abetted by each

23  other ~~and some or all of the remaining members of the MGA~~

24  ~~Criminal Enterprise~~, having devised a scheme or artifice to

25  defraud Mattel of its confidential and trade secret information and

26  property by conversion, false representations, concealment and

27  breaches of fiduciary duty, <u>and transfer, transport or launder the</u>

28  <u>ill-gotten gains from such thefts, and secret MGA assets and</u>

purportedly obtain priority over Mattel, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other acts of wire fraud~~things~~, the true and correct copies of communications and other evidence included in Exhibit C, D and E;

(c)   Tampering With a Witness, Victim or Informant:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

     i.   altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax machine owned by Mattel and while Bryant was employed by Mattel;

     ii.   altering numerous original Bratz drawings created by Bryant by adding false and misleading date notations of "8/1998" and "© 8/1998" to the drawings even though the drawings were not created in August 1998; and

1               iii.     destroying electronic and other evidence, including

2   by destroying evidence previously contained on Carter Bryant's

3   and Isaac Larian's computer hard drives, and destroying or

4   causing to be destroyed evidence in possession of Farhad Larian;

5               iv.    altering tax records and other business documents,

6   including by use of false names and false social security numbers,

7   to conceal the bribery of Mattel employees;

8         Such actions are in violation of 18 U.S.C. § 1512 and 18

9   U.S.C. § 2, as alleged with greater particularity in the foregoing

10   paragraphs;

11     (d)   Influencing or Injuring Officer or Juror Generally:  Counter-

12   defendants MGA, MGA Entertainment (HK) Limited, MGA de

13   Mexico, Larian, Bryant, Machado and Does 4 through 10, as well

14   as some or all of the remaining members of the MGA Criminal

15   Enterprise, aided and abetted by each other, did seek to corruptly

16   impede, obstruct or influence the due administration of justice,

17   including without limitation by:

18              i.    Larian's and MGA' submission of false information

19   in sworn applications to the U.S. Copyright Office and the U.S.

20   Patent Office;

21             ii.    Larian repeatedly giving false testimony during the

22   Phase 1 trial that Bryant told him (and that Larian believed) that

23   Bryant had not created Bratz while employed by Mattel;

24            iii.    Larian's and MGA's submission of false statements

25   regarding MGA's ability to receive outside funding and

26   numerous false statements regarding its financial condition in this

27   action;

28

EXHIBIT ____ 83

2875224.1

1      Such actions are in violation of 18 U.S.C. § 1503 and 18

2      U.S.C. § 2, as alleged with greater particularity in the foregoing

3      paragraphs;

4   (d)(e) Interstate and Foreign Travel in Aid of Racketeering Enterprises:

5      Counter-defendants MGA, MGA Entertainment (HK) Limited,

6      MGA de Mexico, Larian, Bryant, Machado and Does 4 through

7      10, as well as aided and abetted by each other and some or all of

8      the remaining members of the MGA Criminal Enterprise and

9      IGWT Criminal Enterprise, aided and abetted by each other,

10      traveled in interstate and foreign commerce, or used the mail or

11      any facility in interstate or foreign commerce, with the intent to

12      promote, manage, establish, carry on and facilitate the promotion,

13      management, establishment and carrying on of unlawful activity,

14      *i.e.* bribery, in violation of the laws of the State of California,

15      *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and

16      18 U.S.C. § 2, as alleged with greater particularity in the

17      foregoing and following paragraphs: money laundering in

18      violation of 18 U.S.C. § 1956(a), as alleged with greater

19      particularity in the foregoing and following paragraphs; and

20      engaging in monetary transactions involving property derived

21      from unlawful activities in violation of 18 U.S.C. § 1957(a), as

22      alleged with greater particularity in the foregoing and following

23      paragraphs;

24   (f)   Money Laundering:  Counter-defendants MGA, MGA

25      Entertainment (HK) Limited and Larian and Does 4 through 10,

26      as well as some or all of the remaining members of the MGA and

27      IGWT Criminal Enterprises, aided and abetted by each other,

28      willfully engaged in financial transactions which were intended to

EXHIBIT _____ **83**

1 | conceal or disguise the nature, the location, the source, the
2 | ownership, or the control of the ill-gotten proceeds of their
3 | criminal activities or were intended to further promote the
4 | carrying on of their criminal activities, all in violation of 18
5 | U.S.C. § 1956(a), as alleged with greater particularity in the
6 | foregoing paragraphs;
7 | (g) Engaging in Monetary Transactions in Property Derived from
8 | Unlawful Activity:  Counter-defendants MGA, MGA
9 | Entertainment (HK) Limited, Larian, and Does 4 through 10, as
10 | well as some or all of the remaining members of the MGA and
11 | IGWT Criminal Enterprises, aided and abetted by each other,
12 | willfully engaged in monetary transactions in criminally derived
13 | property of a value greater than $10,000 derived from their
14 | unlawful criminal activities, all in violation of 18 U.S.C. §
15 | 1957(a), as alleged with greater particularity in the foregoing
16 | paragraphs;
17 | (h) Concealment of Assets:  Counter-defendants MGA, MGA
18 | Entertainment (HK) Limited, Larian, and Does 4 through 10, as
19 | well as some or all of the remaining members of the MGA and
20 | IGWT Criminal Enterprises, aided and abetted by each other,
21 | willfully sought to transfer or conceal property, and/or concealed,
22 | destroyed, mutilated, falsified or made false entries in recorded
23 | information relating to such property, in contemplation of a
24 | bankruptcy proceeding, all in violation of 18 U.S.C. § 152(7) &
25 | (8), as alleged with greater particularity in the foregoing
26 | paragraphs;
27 | (e)(i) Criminal Copyright Infringement: Counter-defendants MGA,
28 | MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

EXHIBIT B3

1     Bryant, Machado and Does 4 through 10, <u>as well as some or all</u>

2     <u>other members of the MGA and IGWT Criminal Enterprises,</u>

3     <u>aided and abetted by each other</u> ~~aided and abetted by each other~~

4     ~~and some or all of the remaining members of the MGA Criminal~~

5     ~~Enterprise,~~ willfully infringed <u>and continue to willfully infringe</u>

6     Mattel's copyrights, including <u>without limitation</u> with respect to

7     documents containing Mattel trade secret and confidential

8     information <u>and Bratz works created by Bryant and others while</u>

9     <u>Mattel employees,</u> for purposes of commercial advantage and

10     private financial gain, all in violation of 18 U.S.C. § 2319(a) and

11     17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in

12     the foregoing paragraphs.

13        ~~94.~~<u>142.</u>    The persons alleged herein to have violated 18 U.S.C.

14  § 1962(c) are separate from, though employed by or associated with, MGA, the

15  MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

16        ~~95.~~<u>143.</u>    MGA had a role in the racketeering activity that was

17  distinct from the undertaking of those acting on its behalf.  MGA also attempted to

18  benefit, and did benefit, from the activity of its employees and agents alleged

19  herein, and thus was not a passive victim of racketeering activity, but an active

20  perpetrator.

21        ~~96.~~<u>144.</u>    Mattel has been injured in its business or property as a

22  direct and proximate result of the Counter-defendants' and the other enterprise

23  members' violations of 18 U.S.C. § 1962(c), including injury by reason of the

24  predicate acts constituting the pattern of racketeering activity.

25        ~~97.~~<u>145.</u>    As a result of the violations of 18 U.S.C. § 1962(c), by

26  MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant,

27  Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois,<u> Castilla</u> and the

28  Other Former Employees, <u>and IGWT Group, IGWT 826 Investments, Lexington,</u>

EXHIBIT
83

1 | Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli
2 | Makabi, Shirin Larian Makabi, The Makabi Living Trust, The Larian Living Trust,
3 | The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity
4 | Trust, The Jahangir Eli Makabi Qualified Annuity Trust and The Shirin Larian
5 | Makabi Qualified Annuity Trust, Mattel has suffered substantial damages, in an
6 | amount to be proved at trial. Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to
7 | recover treble its general and special compensatory damages, plus interest, costs
8 | and attorneys, fees, incurred by reason of Counter-defendants' violations of 18
9 | U.S.C. § 1962(c).

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

15 | ~~98.~~146.    Mattel repeats and realleges each and every allegation set
16 | forth in paragraphs 1 through 145~~97~~, above, as though fully set forth at length.

17 | ~~99.~~147.    Beginning at various times from approximately 1999
18 | through the filing of this Third~~Second~~ Amended Answer and Counterclaims, in the
19 | Central District of California and elsewhere, Counter-defendants MGA, MGA
20 | Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4
21 | through 10, and Brawer, Trueba, Vargas, Brisbois, Castilla and the Other Former
22 | Employees willfully, knowingly and unlawfully, did conspire, combine,
23 | confederate and agree together to violate 18 U.S.C. § 1962(c).

24 |        148.  These conspirators were employed by and associated-in-fact with
25 | the MGA Criminal Enterprise engaging in, and the activities of which affect,
26 | interstate and foreign commerce. Specifically, the MGA Group, the Bryant Group,
27 | the Mexican Group and the Canadian Group, constituting a group of individuals
28 | associated-in-fact, did unlawfully, willfully, and knowingly participate in and

EXHIBIT **83**

2875224.1

1  conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a
2  pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK)
3  Limited, Larian and Bryant, and certain of the Doe Counter-defendants,
4  constituting a group of individuals associated-in-fact, did unlawfully, willfully, and
5  knowingly participate in and conduct, directly and indirectly, the Bratz Criminal
6  Enterprise's affairs through a pattern of racketeering activity.
7      149.  Beginning at least as early as 2007 through the filing of this
8  Third Amended Answer and Counterclaims, in the Central District of California
9  and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited,
10  MGA de Mexico, Larian, and Does 4 through 10, and IGWT Group, IGWT 826
11  Investments, Lexington, Omni 808, Vision Capital, Leon Neman, Fred Mashian,
12  Neil Kadisha, Angela Larian, Jahangir Eli Makabi, Shirin Larian Makabi, The
13  Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified
14  Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli
15  Makabi Qualified Annuity Trust and The Shirin Larian Makabi Qualified Annuity
16  Trust, willfully, knowingly and unlawfully, did conspire, combine, confederate and
17  agree together to violate 18 U.S.C. § 1962(c).
18      ~~100.~~150.   These conspirators were employed by and associated-in-
19  fact with the IGWT Criminal Enterprise engaging in, and the activities of which
20  affect, interstate and foreign commerce.  Specifically, MGA, MGA Entertainment
21  (HK) Limited, Larian, and IGWT Group, IGWT 826 Investments, Lexington, Omni
22  808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli
23  Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The
24  Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E.
25  Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust,
26  The Shirin Larian Makabi Qualified Annuity Trust and certain of the Doe Counter-
27  defendants, constituting a group of individuals associated-in-fact, did unlawfully,
28

2875224.1

--83--

EXHIBIT **83**

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ 113

1 | willfully, and knowingly participate in and conduct, directly and indirectly, the
2 | IGWT Criminal Enterprise's affairs through a pattern of racketeering activity.
3 | ~~101.~~151.   The pattern of racketeering activity, as defined by 18
4 | U.S.C. §§ 1961(1) and (5), includes~~including~~ acts of mail fraud in violation of 18
5 | U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C.
6 | § 1343 and 18 U.S.C. § 2; conspiracy to commit perjury and acts of influencing or
7 | injuring officer or juror generally in violation of 18 U.S.C. § 1503 and 18 U.S.C.
8 | § 2; acts of tampering with witnesses, victims or informants in violation of 18
9 | U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of
10 | racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; acts of
11 | unlawful concealment of assets in violation of 18 U.S.C. § 152(7) & (8); acts of
12 | money laundering in violation of 18 U.S.C. § 1956; acts of engaging in monetary
13 | transactions in property derived from unlawful activities in violation of 18 U.S.C.
14 | § 1957; and acts of criminal copyright infringement in violation of 18 U.S.C.
15 | § 2319(a) and 17 U.S.C. § 506(a)(1)(A).
16 | ~~102.~~152.   Counter-defendants and the other members of the MGA
17 | Criminal Enterprise schemed to improperly defraud Mattel and steal its ~~property~~
18 | ~~and~~ trade secret or otherwise confidential and proprietary information and infringe
19 | Mattel's rights and conceal such misconduct, as more fully set forth in the
20 | foregoing paragraphs.  Further, counter-defendants and the other members of the
21 | IGWT Criminal Enterprise schemed to infringe Mattel's rights and transfer,
22 | transport or launder the ill-gotten gains from their infringements and the MGA and
23 | Bratz Criminal Enterprises' thefts and infringements, and secret MGA assets and
24 | purportedly obtain priority over Mattel~~by means of false representation, breaches of~~
25 | ~~fiduciary duty, conversation and concealment,~~ as more fully set forth in the
26 | foregoing paragraphs.
27 |
28 |

--84--

EXHIBIT __83__

PAGE __114__

1    ~~103.~~153.    In furtherance of this unlawful conspiracy, and to effect its

2    objectives, Counter-defendants and various co-conspirators committed numerous

3    overt acts, including but not limited to those set forth in the foregoing paragraphs.

4    ~~104.~~154.    Mattel has been injured in its business or property as a

5    direct and proximate result of the Counter-defendants' and the other enterprise

6    members' violations of 18 U.S.C. § 1962(d), including injury by reason of the

7    predicate acts constituting the pattern of racketeering activity.

8    ~~105.~~155.    As a result of the conspiracies between and among all

9    Counter-defendants and the other conspirators to violate 18 U.S.C. § 1962(c),

10   Mattel has suffered substantial damages, in an amount to be proved at trial.

11   Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and

12   special compensatory damages, plus interest, costs and attorneys, fees, incurred by

13   reason of Counter-defendants' violations of 18 U.S.C. § 1962(d).

14                          **Fourth Counterclaim**

15                    **Misappropriation of Trade Secrets**

16                      **(_Cal. Civ. Code_ § 3426 _et seq._)**

17              **(Against Counter-defendants MGA, MGA de Mexico,**

18                 **Larian, Machado and Does 4 through 10)**

19   ~~106.~~156.    Mattel repeats and realleges each and every allegation set

20   forth in paragraphs 1 through 155~~105~~, above, as though fully set forth at length.

21   ~~107.~~157.    As used herein, "Trade Secret Material" shall mean the

22   documents, materials and information stolen by Machado, Trueba, Vargas,

23   Brisbois, Castilla, the Other Former Employees, and other persons acting for, on

24   behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-

25   defendants, the Trade Secret Materials gave Mattel a significant competitive

26   advantage over its existing and would-be competitors, including MGA.  This

27   advantage, as to MGA, has now been compromised as a result of Counter-

28   defendants' unlawful activities.

EXHIBIT _____ 53
PAGE _____ 115

1    108.158.   Mattel made reasonable efforts under the circumstances to
2  maintain the confidentiality of the Trade Secret Materials, including by having
3  employees and consultants who may have access the Trade Secret Materials sign
4  confidentiality agreements that oblige them not to disclose the Trade Secret
5  Materials or characteristics of the Trade Secret Materials; by limiting the
6  circulation of said materials within Mattel; by protecting and limiting access to
7  computers with log-in identifications and passwords; by limiting each employee's
8  access to electronic files to those that the particular employee needs to access; by
9  educating employees on the nature of Mattel's information that is confidential and
10 proprietary; and by reminding employees on a regular and periodic basis of their
11 obligation to protect and maintain Mattel's confidential and proprietary
12 information.

13    109.159.   Mattel's Trade Secret Materials derive independent
14 economic value from not being generally known to the public or to other persons
15 who can obtain economic benefit from their disclosure.

16    110.160.   Counter-defendants have illegally obtained the trade secret
17 materials, as set forth above, and through other means of which Mattel is presently
18 unaware.

19    111.161.   Counter-defendants have used and disclosed Mattel's
20 Trade Secret Materials without Mattel's consent and without regard to Mattel's
21 rights, and without compensation, permission, or licenses for the benefit of
22 themselves and others.

23    112.162.   Counter-defendants' conduct was, is, and remains willful
24 and wanton, and was taken with blatant disregard for Mattel's valid and enforceable
25 rights.

26    113.163.   Counter-defendants' wrongful conduct has caused and,
27 unless enjoined by this Court, will continue in the future to cause irreparable injury
28 to Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.

1 | Mattel is therefore entitled to a permanent injunction restraining and enjoining
2 | Counter-defendants, and each of them, as well as their agents, servants, and
3 | employees, and all persons acting thereunder, in concert with, or on their behalf,
4 | from further using in any manner Mattel's trade secrets.

5 | ~~114.~~164.    In addition, as a proximate result of Counter-defendants'
6 | misconduct, Mattel has suffered actual damages, and Counter-defendants have been
7 | unjustly enriched.

8 | ~~115.~~165.    The aforementioned acts of the Counter-defendants were
9 | willful and malicious, including in that Counter-defendants misappropriated
10 | Mattel's trade secrets with the deliberate intent to injure Mattel's business and
11 | improve their own. Mattel is therefore entitled to enhanced damages. Mattel is
12 | also entitled to reasonable attorney's fees.

### Fifth Counterclaim
### Breach of Contract
### (Against Bryant)

16 | ~~116.~~166.    Mattel repeats and realleges each and every allegation set
17 | forth in paragraphs 1 through 165~~115~~, above, as though fully set forth at length.

18 | ~~117.~~167.    Pursuant to his Employment Agreement, Bryant agreed
19 | that he would not, without Mattel's express written consent, engage in any
20 | employment or business other than for Mattel or assist in any manner any business
21 | competitive with the business or future business plans of Mattel during his
22 | employment with Mattel. Pursuant to his Mattel Employment Agreement, Bryant
23 | further assigned to Mattel all right, title and interest in "inventions," including
24 | without limitation "designs" and other works that he conceived, created or reduced
25 | to practice during his employment by Mattel. In addition, pursuant to the Conflict
26 | Questionnaire, Bryant certified that, other than as disclosed, he had not worked for
27 | any competitor of Mattel and had not engaged in any business venture or
28 | transaction involving a Mattel competitor that could be construed as a conflict of

1  interest. Bryant further promised that he would notify his supervisor immediately
2  of any change in his situation that would cause him to change any of the foregoing
3  certifications or representations.

4      ~~118.~~168.    The Employment Agreement and the Conflict
5  Questionnaire are valid, enforceable contracts, and Mattel has performed each and
6  every term and condition of the Employment Agreement and Conflict
7  Questionnaire required to be performed by Mattel.

8      ~~119.~~169.    Bryant materially breached the foregoing contracts with
9  Mattel, in that, among other things, he secretly aided, assisted and worked for a
10 Mattel competitor during his employment with Mattel without the express written
11 consent of Mattel.

12     ~~120.~~170.    As a consequence of Bryant's breach, Mattel has suffered
13 and will, in the future, continue to suffer damages in an amount to be proven at
14 trial. Such damages include, without limitation, the amounts paid by the
15 competitor to Bryant during his Mattel employment; the amounts paid by MGA to
16 Bryant during his Mattel employment; the amount that Mattel paid Bryant during
17 the time he wrongfully worked with MGA; the value of information and
18 intellectual property owned by Mattel which Bryant provided to MGA; the value of
19 the benefits that MGA obtained from Bryant during the time he was employed by
20 Mattel; and the value of the benefits that MGA obtained from Bryant as a result of
21 the work he performed for or with MGA during his Mattel employment.

22     ~~121.~~171.    Bryant's conduct has caused, and unless enjoined will
23 continue to cause, irreparable injury to Mattel that cannot be adequately
24 compensated by money damages and for which Mattel has no adequate remedy at
25 law. Bryant specifically acknowledged in his Employment Agreement that his
26 breach of the Agreement "likely will cause irreparable harm" to Mattel and that
27 Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to
28 damages and other available remedies." Accordingly, Mattel is entitled to orders

1 | mandating Bryant's specific performance of his contracts with Mattel and
2 | restraining Bryant from further breach.

### Sixth Counterclaim
### Intentional Interference with Contract
### (Against MGA, Larian and Does 4 through 10)

6 | ~~122.~~172.   Mattel repeats and realleges each and every allegation set
7 | forth in paragraphs 1 through 171~~121~~, above, as though fully set forth at length.

8 | ~~123.~~173.   Valid agreements existed between Mattel and the Mattel
9 | employees who MGA induced to steal or was complicit in stealing Mattel trade
10 | secrets and other proprietary and confidential information and who MGA bribed or
11 | induced to work for or assist MGA while Mattel employees (collectively, the
12 | "Mattel Employees"), including without limitation Bryant, Brawer, Machado,
13 | Trueba, Vargas, Brisbois, Castilla, Cabrera, Morales, Salazar, and the Other Former
14 | Employees. ~~(collectively, the "Mattel Employees")~~

15 | ~~124.~~174.   At all times herein mentioned, MGA, Larian and Does 4
16 | through 10 knew that the Mattel Employees had a duty under their agreements not
17 | to work for or assist any competitor of Mattel, such as MGA.  In addition, at all
18 | times mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had
19 | assigned to Mattel, and was obligated to disclose to Mattel all inventions, including
20 | designs and other works, created, conceived or reduced to practice during their
21 | employment with Mattel.

22 | ~~125.~~175.   Despite such knowledge, Counter-defendants MGA,
23 | Larian and Does 4 through 10 intentionally and without justification solicited,
24 | induced and encouraged the Mattel Employees to breach their contracts with
25 | Mattel.

26 | ~~126.~~176.   As a direct and proximate result of Counter-defendants'
27 | efforts and inducements, the Mattel Employees did breach their contracts with
28 | Mattel.

EXHIBIT _____ **83**

2875224.1

1    ~~127.~~177.   As a result of said breaches, Mattel has suffered damages
2  and will imminently suffer further damages, including the loss of its competitive
3  position and lost profits, in an amount to be proven at trial.

4    ~~128.~~178.   Counter-defendants performed the aforementioned
5  conduct with malice, fraud and oppression, and in conscious disregard of Mattel's
6  rights. Accordingly, Mattel is entitled to recover exemplary damages from
7  Counter-defendants in an amount to be determined at trial.

8                    **Seventh Counterclaim**
9                    **Breach of Fiduciary Duty**
10                   **(Against Bryant and Machado)**

11    ~~129.~~179.   Mattel repeats and realleges each and every allegation set
12  forth in paragraphs 1 through 178~~128~~, above, as though fully set forth at length.

13    ~~130.~~180.   Bryant and Machado held positions of trust and
14  confidence with Mattel. In their positions, Bryant and Machado had access to and
15  were entrusted with Mattel's proprietary and confidential information, supervised
16  the work of others, exercised discretion and worked independently in many of their
17  job assignments and duties. In their positions, Bryant and Machado also
18  represented Mattel in its dealings with third parties and, in actions in the course and
19  scope of their employment with Mattel, were agents of Mattel. They confirmed
20  their relationship of trust with Mattel in respective employee agreements. Bryant
21  and Machado thus owed Mattel a fiduciary duty that included, but was not limited
22  to, an obligation not to take any action that would be contrary to Mattel's best
23  interests or that would deprive Mattel of any opportunities, profit or advantage
24  which Bryant or Machado might bring to Mattel.

25    ~~131.~~181.   Bryant breached his fiduciary duty to Mattel in that, while
26  employed by Mattel, he secretly aided and assisted a competitor of Mattel,
27  including without limitation by entering into an agreement with a Mattel
28  competitor. As alleged above, Bryant also breached the aforementioned duty by

1  using Mattel property and resources for the benefit of, and to aid and assist, himself
2  personally and MGA.

3          ~~132.~~182.   Machado breached his fiduciary duty to Mattel, in that
4  while employed by Mattel, he secretly aided and assisted a competitor of Mattel by,
5  among other things, misappropriating Mattel trade secret and proprietary
6  information and providing said information to officers of MGA.  Machado also
7  breached the aforementioned duty by using Mattel property and resources for the
8  benefit of, and to aid and assist, himself personally and MGA.

9          ~~133.~~183.   As a direct and proximate result of Counter-defendants'
10  wrongful conduct, Mattel has incurred damages in an amount to be determined at
11  trial.

12          ~~134.~~184.   Counter-defendants acted with malice, fraud and
13  oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is
14  entitled to an award of exemplary damages against Counter-defendants in an
15  amount to be determined at trial.

16          ~~135.~~185.   Furthermore, Counter-defendants' conduct has caused, and
17  unless enjoined will continue to cause, irreparable injury to Mattel that cannot be
18  adequately compensated by money damages and for which Mattel has no adequate
19  remedy at law.  Accordingly, Mattel is entitled to an order restraining further
20  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants
21  from continuing to benefit from such breach.

22                          **Eighth Counterclaim**
23              **Aiding and Abetting Breach of Fiduciary Duty**
24              **(Against MGA, Larian and Does 4 through 10)**

25          ~~136.~~186.   Mattel repeats and realleges each and every allegation set
26  forth in paragraphs 1 through 185~~135~~, above, as though fully set forth at length.

27          ~~137.~~187.   At all times herein mentioned, MGA, Larian and Does 4
28  through 10 knew that Bryant held a position of trust and confidence at Mattel.  At

2875224.1

1  all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant
2  owed a fiduciary duty to Mattel not to take any action that would be contrary to
3  Mattel's best interests, including but not limited to secretly developing and
4  designing Bratz while employed by Mattel and by secretly assisting Larian and
5  MGA .

6      ~~138.~~188.   At all times herein mentioned, MGA, Larian and Does 4
7  through 10 knew that the Mattel Employees (excluding Bryant) held positions of
8  trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and
9  Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a
10  fiduciary duty to Mattel not to take any action that would be contrary to Mattel's
11  best interests, including but not limited to taking confidential trade secret
12  information from Mattel's premises and providing that information to a competitor.

13      ~~139.~~189.   Despite such knowledge, Counter-defendants MGA,
14  Larian and Does 4 through 10 intentionally and without justification solicited,
15  encouraged, aided and abetted and gave substantial assistance to the Mattel
16  Employees to breach their fiduciary duties to Mattel, knowing that their conduct
17  would constitute breaches of their fiduciary duties to Mattel.

18      ~~140.~~190.   As a direct and proximate result of Counter-defendants'
19  efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel
20  has incurred damages in an amount to be proven at trial.  Mattel, therefore, is
21  entitled to recover compensatory damages in an amount to be determined at trial.

22      ~~141.~~191.   In taking the aforesaid actions, MGA, Larian and Does 4
23  through 10 acted with malice, fraud and oppression, and in conscious disregard of
24  Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from
25  Counter-defendants in an amount to be determined at trial.

26
27
28

## **Ninth Counterclaim**

## **Breach of Duty of Loyalty**

## **(Against Bryant and Machado)**

112.192.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 191111, above, as though fully set forth at length.

113.193.    As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel.  Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

114.194.    Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor.  As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

115.195.    As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

116.196.    Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

117.197.    Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining further

2875224.1

EXHIBIT _____ **83**

--93--

PAGE _____ **1193**

1 | breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-
2 | defendants from continuing to benefit from such breach.

3 | ~~148.~~198.   In breaching their duty of loyalty to Mattel, Bryant and
4 | Machado acted with malice, fraud and oppression, and in conscious disregard of
5 | Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from
6 | Counter-defendants in an amount to be determined at trial.

7 | **Tenth Counterclaim**
8 | **Aiding and Abetting Breach of Duty of Loyalty**
9 | **(Against MGA, Larian and Does 4 through 10)**

10 | ~~149.~~199.   Mattel repeats and realleges each and every allegation set
11 | forth in paragraphs 1 through 198~~148~~, above, as though fully set forth at length.

12 | ~~150.~~200.   MGA, Larian and Does 4 through 10 knew that Bryant, as
13 | an employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and
14 | Does 4 through 10 knew that this duty included an obligation on the part of Bryant
15 | not to compete with Mattel or assist a competitor of Mattel during the term of his
16 | employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that
17 | Bryant was required to give preference to Mattel's business over his own, similar
18 | interests or those of Mattel's competitors. or those of Mattel's competitors during
19 | the course of his employment with Mattel.

20 | ~~151.~~201.   MGA, Larian and Does 4 through 10 knew that the Mattel
21 | Employees (excluding Bryant) were employed by Mattel, and, as employees of
22 | Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4
23 | through 10 knew that these duties included an obligation on the part of the Mattel
24 | Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
25 | Mattel during their Mattel employment.

26 | ~~152.~~202.   Despite such knowledge, Counter-defendants MGA,
27 | Larian and Does 4 through 10 intentionally and without justification solicited,
28 | encouraged, aided and abetted and gave substantial assistance to the Mattel

2875224.1

--94--

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 83

PAGE 1131

1 | Employees to breach their duties of loyalty to Mattel, knowing that their conduct
2 | would constitute breaches of their duties of loyalty to Mattel.

3 |    ~~153.~~203.    As a further consequence of Counter-defendants' efforts,
4 | Mattel has suffered injury and is entitled to compensatory damages in an amount to
5 | be proven at trial.

6 |    ~~154.~~204.    In taking the aforesaid actions, MGA, Larian and Does 4
7 | through 10 acted with malice, fraud and oppression, and in conscious disregard of
8 | Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from
9 | Counter-defendants in an amount to be determined at trial.

**Eleventh Counterclaim**

**Conversion**

**(Against All Counter-defendants)**

13 |    ~~155.~~205.    Mattel repeats and realleges each and every allegation set
14 | forth in paragraphs 1 through 204~~154~~, above, as though fully set forth at length.

15 |    ~~156.~~206.    Counter-defendants wrongfully converted Mattel property
16 | and resources by appropriating and using them for their own benefit and gain and
17 | for the benefit and gain of others, without the permission of Mattel.

18 |    ~~157.~~207.    Mattel was entitled to, among other things, the exclusive
19 | right and enjoyment in property and tangible materials owned by Mattel, including
20 | without limitation such proper and materials that were created by Bryant while he
21 | was a Mattel product designer.  Such property was taken by Bryant from Mattel to
22 | further his own interests and, in at least some instances, provided by Bryant to
23 | Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

24 |    ~~158.~~208.    In addition, Counter-defendants wrongfully converted
25 | Mattel's property by removing the Trade Secret Materials in electronic and paper
26 | form from Mattel's offices.  Counter-defendants did so without Mattel's permission
27 | and continue to possess them.

2875224.1

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT **83**

PAGE ____ 1185

1    159.209.   As a direct and proximate result of Counter-defendants'
2    wrongful conversion of Mattel property, including those relating to Bratz and
3    Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is
4    entitled to recover compensatory damages in an amount to be determined at trial.

5    160.210.   As a result of Counter-defendants' acts of conversion,
6    Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the
7    loss suffered, which is not measured by the value of the property misappropriated,
8    but includes the lost profits that Mattel suffered as a result of the conversion or,
9    alternatively, the profits generated by the Counter-defendants that would not have
10   been generated but for the conversion.  Only such a measure of damages would
11   fully and fairly compensate Mattel for the injury it suffered due to Counter-
12   defendants' acts of conversion.

13   161.211.   Counter-defendants performed the aforementioned
14   conduct with malice, fraud and oppression, and in conscious disregard of Mattel's
15   rights.  Accordingly, Mattel is entitled to recover exemplary damages from
16   Counter-defendants in an amount to be determined at trial.

17   162.212.   Furthermore, Counter-defendants' conduct has caused, and
18   unless enjoined will continue to cause, irreparable injury to Mattel that cannot be
19   adequately compensated by money damages and for which Mattel has no adequate
20   remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-
21   defendants from further conversion of Mattel property and resources and/or
22   restraining Counter-defendants from continuing to benefit from such conversion.

23                    **Twelfth Counterclaim**
24                    **Unfair Competition**
25         **(Common Law and *Cal. Bus. & Prof. Code* § 17200)**
26                    **(Against All Counter-defendants)**
27   163.213.   Mattel repeats and realleges each and every allegation set
28   forth in paragraphs 1 through 212162, above, as though fully set forth at length.

1        ~~164.~~214.    Section 17200 of the California Business and Professions

2   Code prohibits unfair competition, including "any unlawful, unfair or fraudulent

3   business act or practice . . . ."

4        ~~165.~~215.    By engaging in the foregoing conduct, Counter-defendants

5   have, individually and in combination, engaged in unlawful, unfair and/or

6   fraudulent acts of unfair competition in violation of both the common law of the

7   state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct

8   included, without limitation, MGA's commercial bribery of Bryant in violation of

9   *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18

10  U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and

11  Larian's disparagement of Mattel's products and misrepresentations as alleged

12  above.

13       ~~166.~~216.    As a result of the aforementioned conduct, Mattel has

14  suffered damages and will imminently suffer further damages, including but not

15  limited to lost profits in an amount to be proven at trial. No adequate remedy at

16  law exists for the wrongs and injuries Mattel has suffered and will continue to

17  suffer, and Mattel is entitled to an injunction enjoining Counter-defendants'

18  continued wrongful acts. Mattel is also entitled to recover compensatory and

19  exemplary damages pursuant to the doctrine of common law unfair competition and

20  *Cal. Civ. Code* § 3294.

21                          **Thirteenth Counterclaim**

22     **Avoidance of Intentional and Constructive Fraudulent Transfers Under**

23                      **Uniform Fraudulent Transfer Act**

24              **(Common Law and *Cal. Civil Code* §§ 3439 *et seq.*)**

25                          **(Against MGA and Larian)**

26       217.  Mattel repeats and realleges each and every allegation set forth in

27  paragraphs 1 through 216, above, as though fully set forth at length.

28

2825224.1

EXHIBIT _____ 83

1    218.   Mattel is a creditor of MGA and Larian, and his alter-egos,

2    because Mattel has substantial claims against MGA and Larian, including but not

3    limited to claims that have already resulted in a jury verdict in this action in

4    Mattel's favor.  *Cal. Civil Code* § 3439.01(b), (c).

5    219.   After Mattel's claims had been asserted and continuing until the

6    Phase 1A verdict and dates thereafter, MGA and Larian engaged in fraudulent

7    transfers, *Cal. Civ. Code* § 3439.01(i), 3439.04, 3439.05, including, without

8    limitation, by transferring tens of millions of dollars of Bratz inventory from MGA

9    to the Larian-controlled IGWT Group.  These transfers were at massive discounts,

10   and on information and belief MGA did not receive reasonably equivalent value for

11   the Bratz inventory that it transferred.

12   220.   On information and belief, and based on the foregoing, these

13   fraudulent transfers were made with actual intent to hinder, delay, and/or defraud

14   MGA's and Larian's creditor, Mattel.

15   221.   MGA has represented that it was on the verge of filing

16   bankruptcy.  If true, on information and belief at the time of the transfers MGA was

17   unable to pay its debts as they became due and was engaged in a transaction, or was

18   about to engage in a business, for which its remaining assets were unreasonably

19   small, and MGA was insolvent.  On information and belief, MGA intended to

20   incur, or believed or reasonably should have believed it would incur, debts beyond

21   its ability to pay as they became due.

22   222.   By virtue of the foregoing, MGA's and Larian's fraudulent

23   transfers, including without limitation the transfers of Bratz inventory to the IGWT

24   Group, should be avoided, the transferred assets and their proceeds, including

25   without limitation the Bratz inventory and/or and the proceeds of the sales of any

26   Bratz inventory by IGWT Group, should be restored to MGA and attached, and

27   injunctions should issue against any further fraudulent transfers and against any

28

--98--

THIRD SECOND AMENDED ANSWER AND COUNTERCLAIMS

2825224.1

EXHIBIT 83

PAGE 1128

1 | disposition of the transferred assets and/or their proceeds, pursuant to *Cal. Civil*
2 | *Code § 3439.07.*
3 | **Fourteenth Counterclaim**
4 | **Declaratory Relief**
5 | **(Against All Counter-defendants)**
6 | ~~167.~~223.   Mattel repeats and realleges each and every allegation set
7 | forth in paragraphs 1 through 222~~166~~, above, as though fully set forth at length.
8 | ~~168.~~224.   As shown in the foregoing paragraphs above, an actual
9 | controversy exists between Mattel and Counter-defendants regarding Counter-
10 | defendants' lack of ownership interests in Bratz and Mattel's rights in the same.
11 | ~~169.~~225.   Accordingly, Mattel seeks a declaration of the Court that
12 | Counter-defendants have no valid or protectable ownership rights or interests in
13 | Bratz, and that Mattel is the true owner of the same, and further seeks an
14 | accounting and imposition of a constructive trust over Bratz, including without
15 | limitation registrations and applications for registrations relating thereto made or
16 | filed by Counter-defendants and third parties, and over all revenues and other
17 | monies or benefits derived or obtained from MGA's and Bryant's purported
18 | ownership, use, sale, distribution and licensing of Bratz.
19 | ~~170.~~226.   Mattel seeks a declaration of the Court that any and all
20 | agreements between Bryant and/or any other individuals then-employed by Mattel,
21 | on the one hand, and MGA, on the other hand, in which Bryant or any of them
22 | purport~~purports~~ to assign to MGA any right, title or interests in any work or
23 | properties that they~~he~~ conceived, created or reduced to practice while a~~Mattel~~
24 | employees, including but not limited to the Bratz designs, is void and of no effect,
25 | including without limitation because Bryant and/or any other such individuals had
26 | previously assigned said right, title or interest to Mattel and because Mattel was
27 | otherwise the owner of said right, title or interest.
28 |

EXHIBIT 

**Prayer for Relief**

WHEREFORE, Mattel respectfully requests judgment:

1.   For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs, and works or properties conceived, made, created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2.   For a declaration that any agreement between Bryant and/or by any others then-employed by Mattel, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant or such others then-employed by Mattel purported to assign any right, title or interests in any work or properties that they he conceived, made, created or reduced to practice while employed by a Mattel employee, including but not limited to the Bratz designs, is void and of no effect;

3.   For an Order enjoining and restraining Counter-defendants, their agents, servants and employees, and all persons in active concert or participation with them, from further wrongful conduct, including without limitation from imitating, copying, distributing, importing, displaying, preparing derivatives from and otherwise infringing Mattel's copyright-protected works;

4.   For an Order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of Counter-defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by which copies of the works embodied in Mattel's copyrights may be reproduced or otherwise infringed;

5.   For an Order mandating that Counter-defendants return to Mattel all tangible items, documents, designs, diagrams, sketches or any other memorialization of inventions conceived, created, made or reduced to practice during Bryant's employment with Mattel as well as all Mattel property converted by Counter-defendants;

1       6.    For an Order mandating specific performance by Bryant to

2  comply with and satisfy Bryant's contractual obligations to Mattel;

3       7.    That Mattel be awarded, and Counter-defendants be ordered to

4  disgorge, all payments, revenues, profits, monies and royalties and any other

5  benefits derived or obtained as a result of the conduct alleged herein, including

6  without limitation of all revenues and profits attributable to Counter-defendants'

7  infringement of Mattel's copyrights under 17 U.S.C. § 504;

8       8.    For an accounting of all profits, monies and/or royalties from the

9  exercise of ownership, use, distribution, sales and licensing of Bratz;

10      9.    For the imposition of a constructive trust over Bratz, including

11  without limitation registrations and applications for registrations relating thereto

12  made or filed by Counter-defendants and third parties, and all profits, monies,

13  royalties and any other benefits derived or obtained from Counter-defendant's

14  exercise of ownership, use, sale, distribution and licensing of Bratz;

15      10.   That Mattel recover its actual damages and lost profits;

16      11.   That Counter-defendants be ordered to pay exemplary damages

17  in a sum sufficient to punish and to make an example of them, and deter them and

18  others from similar wrongdoing;

19      12.   That Counter-defendants be ordered to pay treble its general and

20  special damages, plus interest, costs and attorney's fees incurred by reason of

21  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

22      13.   That Counter-defendants be ordered to pay double damages due

23  to their willful and malicious misappropriation of Mattel's trade secrets with

24  deliberate intent to injure Mattel's business and improve its own;

25      14.   That Counter-defendants pay to Mattel the full cost of this action

26  and Mattel's attorneys' and investigators' fees;

27      15.   <u>For an Order that Larian is liable for all wrongs of his agents,</u>

28  <u>alter-egos or others committed on his behalf;</u>    EXHIBIT _____ **83**

1                ~~14.~~16.      That Counter-defendants' fraudulent transfers, including

2   their transfers of Bratz inventory, be avoided and set aside; the transferred assets

3   and their proceeds be restored to MGA and attached; and Counter-defendants be

4   enjoined against any further fraudulent transfers and any disposition of the

5   transferred assets and/or their proceeds; and

6

7

8

9

10

11

12

13              ~~15.~~17.      That Mattel have such other and further relief as the Court

14   may deem just and proper.

15

16   DATED:   April 8, 2009~~July 12, 2007~~      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

17

18                              By /s/ John B. Quinn

19                                John B. Quinn

                                   Attorneys for Defendant and Counter-

20                                claimant Mattel, Inc.

21

22

23

24

25

26

27

28

2875224.1

EXHIBIT **83**

THIRD ~~SECOND~~ AMENDED ANSWER AND COUNTERCLAIMS

PAGE **1132**

1

## DEMAND FOR JURY TRIAL

2

3          Mattel, Inc. respectfully requests a jury trial on all issues triable

4   thereby.

5

6   DATED: April 8, 2009July 12,          QUINN EMANUEL URQUHART OLIVER &
    2007                                   HEDGES, LLP

7

8                                          By /s/ John B. Quinn

9                                          John B. Quinn
                                           Attorneys for Defendant and Counter-
10                                         claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 83

2875224.1