Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:   213.629.7400
Facsimile:    213.629.7401
obrien.robert@arentfox.com

Discovery Master

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>            v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant. | Case No.  CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 14, REGARDING:**<br><br>***EX PARTE* APPLICATION OF MATTEL, INC. FOR AN ORDER FOR PRESERVATION OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1    This Order sets forth the Discovery Master's ruling on the *ex parte*

2  application of Mattel, Inc. ("Mattel") filed on or about April 3, 2009 (the

3  "Application") [Docket Number 5133].

4    The Discovery Master determines that it is not necessary to conduct a hearing

5  prior to issuing his ruling, and notes that the interested parties have provided

6  various written submissions, including the Application and related papers, multiple

7  letters and e-mails.  Having considered all of the submitted papers, the Discovery

8  Master rules as follows.

9  **I.    RELIEF SOUGHT BY MATTEL**

10    In the Application, Mattel seeks an order requiring that Lexington Financial

11  Limited ("Lexington") "preserve documents sought by Mattel's subpoenas until

12  further order of the Court."  (Application, p. 2).  While it has not issued or effected

13  service of any subpoena on Lexington,[1] Mattel argues that a preservation order is

14  necessary and that the Discovery Master is authorized to issue such a ruling.

15  Specifically, Mattel contends that (1) there is a "genuine threat that documents will

16  be destroyed or lost" by Lexington, (*id*., p. 7), (2) the destruction of any documents

17  would cause Mattel irreparable harm, (*id*., p. 10), (3) Lexington is "capable of

18  maintaining its own financial and corporate records," (*id*., p. 11), and (4) the

19  Discovery Master may issue an order requiring the preservation of documents

20  because the Court has personal jurisdiction over Lexington, (*id*., pp 11 – 19).

21  **II.   LEXINGTON'S RESPONSE**

22    In its written communications requesting that the Discovery Master

23  summarily deny the Application or alternatively that it be given until April 15, 2009

24  to file a written opposition, Lexington asserts that the Application "fails at every

25  level, procedurally and substantively . . ."  (April 3, 2009 letter from Todd

26

27  [1] *See* Application, p. 1 of the notice section [stating that to date Lexington "has evaded service of Mattel's subpoena"]; *see also* Application, p. 1 [noting that Lexington has not "accept[ed] service of Mattel's subpoena"] and p. 11 [stating that "Mattel's ultimate ability to obtain . . . documents [from Lexington] will depend upon proper

28  service of a subpoena"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1    Gordinier to Robert C. O'Brien, p. 1).  Initially, Lexington argues that Mattel fails

2    to "satisfy the requirements for *ex parte* relief."  (*Id*., p. 2; *see also* April 6, 2009

3    letter from Peter Villar to Robert C. O'Brien, p. 1 and 2).  Lexington next argues

4    that Mattel "is not subject to the jurisdiction of this Court."  (April 3, 2009 letter

5    from Todd Gordinier to Robert C. O'Brien, p. 1).  Finally,  Lexington argues that

6    "unless and until [Mattel] issues and serves a subpoena pursuant to the governing

7    United States and international laws and treaties, this Court has no . . . authority to

8    compel Lexington to do anything."  (*Id*., p. 2).

9    **III.    FAILURE TO SATISFY THE DISCOVERY MASTER ORDER'S**

10           **GOOD CAUSE REQUIREMENT**

11           Under the procedures set forth in the Court's order appointing a discovery

12   master dated December 6, 2006 ("Discovery Master Order"), Mattel must

13   demonstrate that "good cause" exists for hearing the Application "on shortened

14   time" and that it will "be prejudiced absent prompt resolution" of the issue.

15   (Discovery Master Order, pp. 4 – 5).  This standard is not satisfied here.

16           In the introductory section of its Application preceding the Memorandum of

17   Points and Authorities, Mattel states that "good cause exists to seek . . . relief on an

18   ex parte basis because, absent, a preservation order, relevant evidence could be

19   spoliated before a regularly noticed motion could be heard."  (Application, p. 2 of

20   the notice section [underline omitted]).  That is the extent of Mattel's attempt to

21   satisfy its burden to demonstrate good cause.  The Memorandum of Points and

22   Authorities does not discuss what specific evidence is in danger of being destroyed

23   or how that evidence is relevant to any subpoena that has been served on Lexington.

24   Indeed, the sole basis for the Application appears to be that unspecified classes of

25   documents might potentially be destroyed because Lexington will not voluntarily

26   agree to be bound by the Discovery Master's Order No. 10.

27           However, the fact that a non-party who has not yet been served with a

28   subpoena will not agree to be bound by an order involving other entities (who have

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1  been served with subpoenas) is insufficient to establish that there is a "genuine

2  threat" of documents being destroyed, especially when such a promise could be

3  construed as an admission that Lexington possesses documents that relate to this

4  case (which Lexington may dispute).  Nor is it possible to ascertain what

5  documents allegedly in danger of being destroyed are relevant to this case in the

6  absence of a subpoena having been served on Lexington and the scope of the

7  document requests set forth.

8      For all of these reasons, Mattel has not demonstrated — at least on the record

9  presented to the Discovery Master — that *ex parte* relief is warranted   (*Cf. Mission*

10  *Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal.

11  1995)).

12  **IV.    MATTEL HAS NOT DEMONSTRATED THAT THE COURT HAS**

13      **PERSONAL JURISDICTION OVER LEXINGTON**

14      **A.    Specific Jurisdiction Arising Out Of Lexington's Forum-Related**

15          **Contacts**

16      In its Application, Mattel argues that the Court has specific jurisdiction over

17  Lexington "because:  (1) Lexington both purposefully availed itself of the privilege

18  of conducting activities in the forum and, purposefully directed its activities at the

19  forum state, either of which is sufficient; (2) the discovery at issue relates to

20  Lexington's forum-related activities; and (3) the exercise of jurisdiction is not

21  unreasonable."  (Application, p. 13).  As support for this position, Mattel cites

22  several cases, including *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th

23  Cir. 1998) ("*Panavision*").  In that case, the Ninth Circuit ruled that the "purposeful

24  availment" prong of the test for determining specific jurisdiction can be met by

25  demonstrating that the non-resident defendant has "aimed" its conduct so as to

26  create an injury in the forum.  (See, also, *Bancroft & Masters, Inc. v. Augusta Nat'l,*

27  *Inc*., 223 F. 3d 1082, 1087 (9th Cir. 2000), which describes this concept in terms of

28  "express aiming" of conduct "targeted" to a plaintiff residing in the forum).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1    A review of *Panavision* and the other cases cited by Mattel discloses that this

2    "express aiming" test applies where a court is asked to exercise jurisdiction over a

3    non-resident *defendant sued in tort or contract*.  These cases do not address the

4    situation presented here, where a court is asked to exercise jurisdiction over a non-

5    resident *non-party* who is not alleged to have committed any wrong or breach and

6    from whom a party merely seeks to obtain (as-yet unserved) discovery.

7    Nevertheless, Mattel argues that the Discovery Master should rely on the express

8    aiming test applied in the aforementioned cases as a basis for (1) finding that

9    Lexington directed its activities at California, (2) exercising specific jurisdiction

10   over Lexington, and (3) issuing an order restraining Lexington from destroying

11   evidence.

12   Such a result is not warranted.  In all of the cases relied upon by Mattel, the

13   party over whom jurisdiction was sought was alleged to have engaged in actionable

14   conduct which caused the plaintiff to suffer damage in the forum.  (See, e.g.,

15   *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1995 (9th Cir.); *Calder v. Jones*,

16   465 U.S. 783, 789 (1984)).  As a result, the courts in those cases were called upon

17   to determine whether jurisdiction existed for the purpose of requiring a *defendant to*

18   *appear and defend its conduct* in the forum.  The analysis turned on whether there

19   was a sufficient link between the defendant's bad act, on the one hand, and the

20   injury suffered in the forum state, on the other hand, such that it would be fair to

21   require the defendant to appear and litigate in the forum.  (*Id.*)

22   Here, Lexington is not a defendant, is not alleged to have committed any tort

23   or breached any contractual obligation, and is not being called upon to appear and

24   defend any claim in this forum.  Without such facts, the analysis undertaken in the

25   cases cited by Mattel cannot be performed, and there is neither a basis nor a reason

26   for exercising jurisdiction over Lexington.  The concept of specific jurisdiction

27   presupposes that the tribunal asserting jurisdiction does so for the purpose of

28   adjudicating some actionable conduct and rendering some cognizable relief or

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1    remedy for an injury, or enforcing some process of the court (such as a validly

2    issued subpoena).  In the absence of such allegations, Mattel's argument that MGA,

3    Larian and others "targeted Mattel specifically in order to, among other things,

4    conceal assets from Mattel and the Court," (Application, p. 15), is unavailing.  Even

5    assuming that these allegations are true and assuming that "concealing assets" is a

6    cognizable tort, the fact remains that Mattel is not asking the Court to exercise

7    jurisdiction over Lexington in order to adjudicate any claims Mattel has asserted

8    against Lexington for such conduct.  In short, the body of law cited by Mattel

9    relating to jurisdiction over non-resident defendants is inapposite to situations

10   where jurisdiction is sought over a non-party overseas entity for the purpose of

11   preserving evidence that may be the subject of future discovery.[2]

12        **B.      Lexington's Purported Consent To Jurisdiction**

13        In its Application, Mattel also argues that Lexington has waived any

14   challenge to the Court's exercise of personal jurisdiction by appearing before the

15   Court and by "threaten[ing]" judicial action against Mattel.  (Application, p. 18).  In

16   support of this assertion, Mattel states that counsel for Lexington (Messrs.

17   Gordinier and Villar) appeared at the March 4, 2009 hearing before the Discovery

18   Master and promised, on Lexington's behalf, that Lexington would not destroy

19   evidence.

20        As the record reflects, the hearing conducted on March 4, 2009 involved

21   subpoenas issued to non-parties Omni 808 Investors, LLC, OmniNet Capital, LLC

22   and Vision Capital, LLC.  Messrs. Gordinier and Villar's appearance at that hearing

23   was expressly entered on behalf of those non-parties – not Lexington (Transcript, p.

24   4:3-8; 5:18-6:8).  Accordingly, counsel's appearance cannot be deemed a general

25   appearance on behalf of Lexington.

26

27   _____
      [2] This conclusion also disposes of Mattel's contention that the other two prongs of the "purposeful availment"
      requirement have been met, since the dentire requirement only applies where a court seeks to exercise jurisdiction over
28   a non-resident defendant alleged to have committed a tort or breached an obligation causing injury in the forum.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                            - 5 -                    ORDER NO. 14
                                                                         [Case No. CV 04-09049 SGL (RNBx)]

1           With respect to Mattel's contention that Lexington's counsel made a promise

2   to preserve documents on behalf of Lexington at the March 4, 2009 hearing, the

3   following colloquy occurred between Mr. Gordinier and the Discovery Master

4   regarding Mattel's then-pending application to deem Lexington served with a

5   subpoena (the "Subpoena Application"). Because Lexington had requested an

6   extension of time to oppose the Subpoena Application, Mattel was concerned that

7   documents would be destroyed during any resulting delay that might ensue before

8   the Discovery Master could rule on the Subpoena Application:

9           MR. ZELLER:  There's a preservation issue that I'm

10          concerned about . . . [M]y point is that we have a situation

11          where Lexington, which we have suspicion about, for

12          obvious reasons, considers itself under no obligation of

13          the subpoena.  If they're willing to say that obviously they

14          understand that Lexington is under an obligation to

15          preserve documents *during this time period*, then Monday

16          is fine by me.  *But I don't want an argument that*

17          *somehow between the time that this got teed up and*

18          *Monday something's happened that somehow their legal*

19          *obligations are different from how we view them.*

20          MR. O'BRIEN:  Is that a representation you –

21          MR. GORDINIER:  Exhibit A.  Let me just tell you this,

22          *nothing is going to be destroyed between now and*

23          *Monday close of business.*  I'm not going to concede

24          anything else with respect to what he said.

25          MR. O'BRIEN:  I'm not asking – I don't want to get into

26          the issue of whether the subpoena was proper or not.

27          He's raised an issue about document preservation that he

28          believes your putative client – do you represent

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1    Lexington?

2        <u>MR. GORDINIER</u>:  It's a more complicated issue than

3    that.  We will address it on the papers on Monday but –

4        <u>MR. O'BRIEN</u>:  I will take your representation today that

5    Lexington or affiliated entities are not going to destroy

6    any documents that would have been subject to *the*

7    *subpoena* that may or may not have been served *so that*

8    *we can deal with that issue*, but there will be no document

9    destruction of any nature, and I'm going to ask you to

10   convey that to the Lexington people and let them know

11   that you've made that representation on their behalf.

12       <u>MR. GORDINIER</u>:  Will do.

13   (Transcript, p. 96:19 – 98:5, emphasis added).

14       As the foregoing exchange reflects, Mr. Gordinier's representation involved

15   Lexington's preservation of documents pending the Discovery Master's ruling on

16   Mattel's Subpoena Application.  The Discovery Master denied that application

17   pursuant to Order No. 8 issued on March 16, 2009.  In its Application, Mattel

18   nonetheless seeks to convert Mr. Gordinier's representation into:  (1) an ongoing,

19   obligation by Lexington to Mattel; and (2) consent to jurisdiction by the Court, at

20   least to the extent of enforcing Lexington's promise to preserve documents.

21       The record does not support such a characterization of the above-quoted

22   colloquy.  Both counsel for Mattel (Mr. Zeller) and counsel for Lexington (Mr.

23   Gordinier) indicated that Mattel's concern involved the preservation of documents

24   for the limited period until the Discovery Master could rule on the Subpoena

25   Application.  Indeed, the Discovery Master himself indicated that the issue before

26   him was the possible destruction of "documents that would have been subject to the

27   subpoena . . . so that we can deal with that issue," i.e., until the Discovery Master

28   could rule on the Subpoena Application.  (*Id.*, p. 97:25 – 98:1).  Nothing in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1  record indicates that Mr. Gordinier intended to or did undertake any other

2  obligation; on the contrary, he expressly stated, "I'm not going to concede anything

3  else with respect to what [Mr. Zeller] said."  (*Id.*, p. 97:12 – 13).

4       Accordingly, the Discovery Master declines to find, based on the record

5  before him, that Lexington undertook any ongoing obligation to preserve

6  documents after the adjudication of the Subpoena Application or that Lexington

7  submitted to the jurisdiction of the Court for purposes of allowing the Court to

8  enforce such an obligation.[3]

9       With respect to Mattel's argument that Lexington has "appeared" in this

10  litigation, the Discovery Master understands Mattel to be referencing Lexington's

11  opposition to the Subpoena Application.[4]  However, a party which successfully

12  opposes enforcement of a subpoena by establishing (as Lexington did here) that the

13  subpoena was never properly served on it does not make a general appearance

14  waiving its objections to the court's exercise of jurisdiction.  (*See Estate of Yaron*

15  *Ungar v. Palestinian Authority*, 400 F.Supp.2d 541, 551-52 (S.D.N.Y.2005)).

16       Lastly, Mattel contends that Lexington submitted to the Court's jurisdiction

17  by threatening to seek sanctions against Mattel, citing a March 30, 2009 letter from

18  Mr. Gordinier to Mr. Zeller.  Setting aside for the moment the question of whether

19  threatening to seek sanctions from a court is equivalent to making a general

20  appearance and submitting to the court's jurisdiction, the alleged threat is contained

21  in the second and third paragraphs of the above-referenced letter in response to

22

23  [3] In footnote 49 of its Application, Mattel cited the following passage of the March 4, 2009 transcript as support for its claim that Lexington consented to jurisdiction:

24       MR. GORDINIER:  What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt?  I can tell you there

25       are none.  This is a ready, fire, aim situation.  The allegations that were made and were made publicly are unconscionable and can't be undone.

   (Transcript, p. 51:3 – 8, cited in footnote 49 of the Application).  This passage does not contain any mention of

26  Lexington or any promise purportedly made on Lexington's behalf.

27  [4] While Mattel also references Mr. Gordinier's statements and appearance before the Court on February 11, 2009 at various points in its Application, the transcript reflects that Mr. Gordinier appeared on behalf of Omni 808 Investors,

28  LLC at that hearing, not on behalf of Lexington.  (Transcript of February 11, 2009 hearing, p. 3 and p. 5, ln. 19).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1    Mattel's statement that it might file another *ex parte* application if Lexington and

2    another entity, Neman Bros. & Associates ("Neman"), do not agree to preserve

3    documents.  In the subject paragraphs, Mr. Gordinier, who apparently represents

4    both entities, addresses the contemplated *ex parte* application *against Neman* and

5    states that, if Mattel files such an application, "[w]e fully intend to seek sanctions if

6    you move for the requested relief."  Given the context of that statement, Mr.

7    Gordinier appears to be speaking on behalf of his client Neman.  Moreover, even if

8    Lexington had made such a threat, Mattel does not cite, and the Discovery Master is

9    not aware of, any authority supporting the proposition that such a statement,

10   unaccompanied by the filing of a pleading with the Court, constitutes a general

11   appearance.[5]

## V.    MATTEL'S APPLICATION ALSO FAILS BECAUSE IT HAS NOT SERVED ANY SUBPOENA ON LEXINGTON

14         Even assuming personal jurisdiction existed over Lexington (which is not the

15   case based on the record presented to the Discovery Master), Mattel has not cited

16   any legal authority supporting the proposition that a court has the power to issue an

17   order compelling a non-party to preserve documents covered by a subpoena that has

18   not been served.  While it may later be shown that the Court has personal

19   jurisdiction over Lexington, it does not follow that the Discovery Master is

20   authorized to order a non-party, who has not been properly brought into the case via

21   the service of a subpoena under the Federal Rules of Civil Procedure, to take any

22   affirmative steps.  If the rule were otherwise, each time Mattel (or any other party in

23   this case) considered serving a subpoena, it could request an *ex parte* order

24   compelling that non-party to preserve documents prior to the subpoena being issued

25   or served.  At a minimum, a party seeking an order that concerns a non-party must

26

27   _____

[5] Mattel's request for permission to conduct jurisdictional discovery related to Lexington is denied by the Discovery

28   Master at this stage because, as discussed below in Section V, Mattel has not yet served Lexington with any subpoena.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

1   first sufficiently connect that non-party to the pending litigation through the service

2   of a valid subpoena or other authorized method (e.g., amending its complaint).

3          Put another way, the existence of jurisdiction in the abstract does not

4   empower a tribunal to issue orders over any party unless and until the subject entity

5   or individual has been properly associated with the case in accordance with

6   established principles of due process.  Because Lexington is a non-party that has

7   admittedly not been served with a subpoena by Mattel, it has not been sufficiently

8   linked to this litigation, and the Discovery Master is not empowered to order it to

9   indefinitely preserve unspecified classes of documents because it may eventually be

10  served with a subpoena.

11  **VI.     DISPOSITION**

12         For all of the foregoing reasons, the Application is **DENIED**.

13

14  Dated:  April 9, 2009

15

16

17                                          By:    /s/ Robert C. O'Brien

18                                                 ROBERT C. O'BRIEN
                                                   Discovery Master
19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]