| | |
|---|---|
| 1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP |
| | John B. Quinn (Bar No. 090378) |
| 2 | (johnquinn@quinnemanuel.com) |
| | Michael T. Zeller (Bar No. 196417) |
| 3 | (michaelzeller@quinnemanuel.com) |
| | Jon D. Corey (Bar No. 185066) |
| 4 | (joncorey@quinnemanuel.com) |
| | 865 South Figueroa Street, 10th Floor |
| 5 | Los Angeles, California  90017-2543 |
| | Telephone:  (213) 443-3000 |
| 6 | Facsimile:  (213) 443-3100 |
| 7 | Attorneys for Mattel, Inc. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, an individual, | | CASE NO. CV 04-9049 SGL (RNBx) |
| | | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| Plaintiff, | | |
| vs. | | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| Defendant. | | **MATTEL, INC.'S OPPOSITION TO BINGHAM MCCUTCHEN LLP'S OBJECTIONS TO AND MOTION TO STRIKE REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA** |
| AND CONSOLIDATED ACTIONS | | |

Hearing Date: April 21, 2009
Time: 10:00 a.m.
Place: Arent Fox, LLP
555 West Fifth Street
48th Floor
Los Angeles, CA 90013

**Phase 2:**
Disc. Cut-off: December 11, 2009
Pre-trial Conf.: March 1, 2010
Trial Date: March 23, 2010

07975/2868567.1

OPPOSITION TO BINGHAM MCCUTCHEN LLP'S OBJECTIONS TO AND MOTION TO STRIKE REPLY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ......................................................................................................... 1

I.  BINGHAM'S "MOTION" SHOULD BE DENIED AND ITS SUR-REPLY STRICKEN BECAUSE IT IS PROCEDURALLY DEFECTIVE. ................................................................................................ 1

II. THE DISCOVERY MASTER SHOULD REJECT BINGHAM'S REQUEST TO STRIKE PORTIONS OF MATTEL'S REPLY AND THE SUPPORTING EXHIBITS. ...................................................................... 2

    A.   Mattel's Reply Does Not Assert New Arguments. ................................ 3

    B.   The Wachovia Documents Were Not Available When Mattel Filed Its Motion To Compel. ............................................................... 4

III. BINGHAM'S ATTEMPT TO RECONCILE THE WACHOVIA DOCUMENTS WITH ITS PRIOR REPRESENTATIONS FAILS. ............... 6

    A.   Bingham Does Not Dispute That IGWT 826 Investments Funded Omni 808 .................................................................................. 8

    B.   Bingham Has Not Shown That Larian Does Not Have An Interest In Omni ..................................................................................... 9

    C.   Bingham's Argument Regarding MGA's And Omni's Affiliate Status Also Fails ................................................................................ 11

IV. BINGHAM'S REMAINING ARGUMENTS ARE WITHOUT MERIT. ...... 13

    A.   As Mattel Has Shown, Its Subpoena To Bingham Is Relevant To Phase 2 ............................................................................................. 13

    B.   Mattel Seeks Unique, Relevant Documents From Bingham Which Were Not Included In The Wachovia Production .................... 14

    C.   Mattel Is Entitled To Obtain The Requested Documents From Bingham .............................................................................................. 15

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

Page

**Cases**

Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.,
   524 F. Supp. 2d 1184 (C.D. Cal. 2007)...................................................... 3

Crater Corp. v. Lucent Techs., Inc.,
   255 F.3d 1361 (Fed. Cir. 2001) .................................................................. 6

Giovanazzi v. Schuette,
   2009 WL 649187 (C.D. Cal. 2009) ............................................................ 1

Hill v. Hunt,
   2008 WL 4108120 (N.D. Tex. 2008) ......................................................... 6

Hooker v. Adams,
   2008 WL 2788404 (E.D. Cal. 2008) .......................................................... 1

Jones v. Deutsche Bank AG,
   2006 WL 648369 (N.D. Cal. Mar. 10, 2006) ..................................... 11, 13

Lane v. Department of Interior,
   523 F.3d 1128 (9th Cir. 2008) .................................................................... 6

Netherby Limited v. Jones Apparel Group, Inc.,
   2005 WL 1214345 (S.D.N.Y. 2005) ................................................... 11, 13

Sullivan v. Kelly Servs.,
   2008 WL 618928 (N.D. Cal. 2008) ............................................................ 2

Viacom Intern., Inc. v. YouTube, Inc.,
   2008 WL 3876142 (N.D.Cal. 2008) ......................................................... 15

**Miscellaneous**

Local Rule 7-10 ................................................................................................. 1

**Preliminary Statement**

Bingham's most recent filing is an unauthorized sur-reply which should be rejected on procedural grounds alone. If its merits are considered, which they should not be, Bingham's sur-reply offers absolutely no grounds for the Discovery Master to turn a blind eye to new evidence which establishes that Bingham's earlier representations as to its clients' independence from Larian and MGA were simply false. It is because this evidence both refutes Bingham's representations and validates Mattel's interest in the question of who is paying Bingham's legal bills that Bingham strives so mightily either to find its way around it or to force it to be ignored. It can do neither.

**Argument**

**I.  BINGHAM'S "MOTION" SHOULD BE DENIED AND ITS SUR-REPLY STRICKEN BECAUSE IT IS PROCEDURALLY DEFECTIVE.**

Bingham has captioned its filing as "objections to" and a "motion to strike" Mattel's Reply. Yet, Bingham spends only two pages in its twelve-page brief arguing that Mattel purportedly presents new arguments "for the first time" in its Reply—a contention which, as Mattel shows below, is entirely without merit. (Sur-Reply at 5-6). Instead, Bingham devotes nearly its entire brief to an unsuccessful attempt to rebut Mattel's Reply on the merits. (Sur-Reply at 1-4, 6-12). Bingham's brief is in fact a sur-reply which it did not seek leave to file.

Neither the Federal Rules of Civil Procedure nor the December 6, 2006 Order appointing a Discovery Master ("Discovery Master Order") provide a right to file a sur-reply. Indeed, the Local Rules in this District provide that a sur-reply may *not* be filed without prior, written leave of Court. See Local Rule 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply."). Here, Bingham did not obtain or even seek written consent before filing. Its sur-reply is therefore improper and should be stricken by the Discovery Master. See Giovanazzi v. Schuette, 2009 WL 649187, at *2 n.6 (C.D. Cal. 2009) (striking improper sur-reply because plaintiff had not sought leave); Hooker v. Adams, 2008 WL 2788404, at *1

(E.D. Cal. 2008) ("Plaintiff did not seek and was not granted permission to file a sur-reply and the sur-reply shall not be considered."); Sullivan v. Kelly Servs., 2008 WL 618928, at *1 (N.D. Cal. 2008) (granting motion to strike sur-reply where "defendant did not seek leave to file the sur reply").[1]

## II. THE DISCOVERY MASTER SHOULD REJECT BINGHAM'S REQUEST TO STRIKE PORTIONS OF MATTEL'S REPLY AND THE SUPPORTING EXHIBITS.

Even if the Discovery Master elects to consider Bingham's brief on the merits, which Mattel submits he should not, Bingham's request to strike portions of Mattel's Reply and the supporting Declaration of Stephen Hauss should be rejected. Contrary to Bingham's assertion, Mattel's Reply does not make any "new" arguments. Rather, it addresses the points presented in Mattel's opening brief and challenged in the first opposition filed by Bingham. While Mattel's Reply does cite new evidence—including recently-produced documents contradicting Bingham's prior representations that MGA and Isaac Larian were not involved in the purported acquisition of the Wachovia debt—these documents were not available to Mattel at the time it filed its Motion. Bingham, having served as counsel to its current clients in the Wachovia transaction, can hardly claim unfair surprise because Mattel did not have access to the facts its clients have concealed earlier.

---

[1] Bingham's request to strike Mattel's Reply should also be denied because Bingham failed to meet and confer in violation of the Discovery Master Order. Bingham's counsel did not serve a meet and confer letter prior to filing its brief, as required by Paragraph 5 of the Discovery Master Order. See Stipulation for Appointment of a Discovery Master and Order, dated December 6, 2006 at ¶ 5. Nor did Bingham's counsel otherwise attempt to contact Mattel's counsel to discuss its motion to strike. This complete failure to meet and confer is ironic given that Bingham has repeatedly (and unsuccessfully) complained that Mattel failed to meet and confer in good faith—even while acknowledging that Mattel's counsel had engaged in multiple telephone conferences and exchanged written correspondence with Bingham—prior to filing motions. See, e.g., Omni 808 Investors, LLC's, Vision Capital, LLC's, and OmniNet Capital, LLC's Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion to Compel Production of Documents Responsive to Third Party Subpoenas, dated February 10, 2009, Docket No. 4803, at 7-9.

### A.     Mattel's Reply Does Not Assert New Arguments.

Bingham claims that Mattel "for the first time in its reply brief improperly presents new arguments." (Sur-Reply at 5). This is incorrect. The arguments asserted in Mattel's Reply—specifically, that (1) the source of payment of Omni 808 Investors, LLC's, Vision Capital, LLC's and Lexington Financial Limited's (collectively, the "Omni Parties") legal fees is not privileged, and is relevant to the bias and credibility of percipient witnesses; and (2) documents showing who is paying the Omni Parties' legal fees and who is actually behind the Omni Parties are relevant to Phase 2 issues, including MGA's and Larian's net worth and financial condition—are precisely the same arguments that Mattel presented in its original Motion to Compel.[2]

The only supposedly "new" argument which Bingham identifies is Mattel's contention that its subpoena to Bingham is reasonably calculated to discover evidence of "whether MGA is under an *actual* obligation to repay the more than $300 million in debt that it claims to owe to the Entities," which is "indisputably relevant—and indeed critically important—to MGA's and Larian's net worth and financial condition." (See Sur-Reply at 10, citing Reply at 2). Far from "new," this argument is simply a continuation of and expansion upon the position that Mattel presented in its Motion to Compel, that "[t]he true identity of the persons and entities providing the funding and obtaining a security interest in MGA," as well as information regarding such funding and security interests, "including the amount of the security interests, the terms and conditions of the funding, and the rate of the funding," are relevant to MGA's and Larian's net worth and financial condition. (See Mot. to Compel at 10-11).[3] Cf. Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc., 524 F.Supp.2d 1184, 1203 (C.D. Cal. 2007)

---

[2]  Compare Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009, at 8-11 with Reply in Support of Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 18, 2009, at 4-10.

[3]  See also Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009, at 11 n. 42 (incorporating by reference the arguments made in Mattel's Motion to Compel Production of Documents Responsive to Third-
(footnote continued)

(denying application to file sur-reply, because "defendants' reply brief does not raise new arguments-it merely reiterates and elaborates on the grounds for dismissal asserted in the opening brief"). Bingham's suggestion that Mattel is seeking to "sandbag" Bingham with new arguments is without merit and should be rejected by the Discovery Master.

### B. The Wachovia Documents Were Not Available When Mattel Filed Its Motion To Compel.

Although Mattel's Reply does not raise new *arguments*, it does include newly-discovered *evidence*—specifically, documents which non-party Wachovia Bank recently produced and which show that Bingham's prior representations to the Court and to the Discovery Master regarding MGA's and Larian's involvement in the Omni transactions were not true. These documents include:

- A July 29, 2008 offer letter to Wachovia that states that Larian would have a non-voting limited interest in the loan acquisition.[4]
- A Secured Delayed Draw Demand Note between MGA and Omni 808, dated October 16, 2008, which indicates that Omni 808's funding came, at least in part, from IGWT 826 Investments.[5] As the Discovery Master has recognized, the IGWT entities are "affiliated with—if not wholly owned by—Larian."[6]

---

Party Subpoenas, dated February 3, 2009 and Mattel's Opposition to the MGA Parties' Motion to Quash Subpoenas Issued by Mattel, dated February 10, 2009).
  [4] See OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, attached as Exhibit 3 to the Declaration of Stephen Hauss in Support of Mattel's Reply in Support of its Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 18, 2009 ("Hauss Dec.").
  [5] See Secured Delayed Draw Demand Note, Hauss Dec., Exh. 5.
  [6] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Hauss Dec., Exh. 1.

-4-
OPPOSITION TO BINGHAM MCCUTCHEN LLP'S OBJECTIONS TO AND MOTION TO STRIKE REPLY

- A Senior Promissory Note between MGA and Wachovia, dated September 3, 2008, which identifies Omni 808 as an "affiliate" of MGA.[7]

As Mattel noted in its Reply, these materials suggest that Omni 808 and IGWT 826 Investments are merely shells that Larian is using to mask his own capital contributions to MGA that he and the third-party entities are then misrepresenting as debt. (Reply at 9-10). The newly-produced Wachovia documents thus illustrate a point which Mattel has repeatedly advanced (including in its opening brief)—that evidence showing that MGA's transactions with the third-party entities were related-party or sham transactions is relevant to MGA's and Larian's net worth and financial condition. (See Mot. to Compel at 10-11).

Bingham is correct that Mattel did not present this newly discovered evidence in its opening brief. (Sur-Reply at 1). Bingham ignores, however, that it would have been *impossible* for Mattel to have included these documents when it filed its Motion to Compel on March 5, 2009, since the documents were not yet available to Mattel.[8] Wachovia did not produce the documents to Mattel until March 16, 2009—nearly two weeks after Mattel filed its moving papers—while MGA, Larian, the Omni Parties and Bingham did not produce them at all.

---

[7] See Senior Promissory Note, dated September 3, 2008, Hauss Dec. 7 (section 9(b) states that "purchaser"—*i.e.*, Omni 808—is an "affiliate" of MGA under the terms of the Note); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Hauss Dec. 8. (summarizing terms of Wachovia's Senior Note and stating that "[a]ffiliate transactions are restricted (and Omninet is considered an affiliate)").

[8] Bingham may attempt to argue that the Wachovia documents were in fact "available" at the time of Mattel's opening brief, since Bingham had previously offered to produce some undefined set of "deal documents" regarding the Wachovia transaction. See March 4, 2009 Discovery Master Hearing Tr. at 54:14-20. This argument fails. First, Bingham never identified which specific documents fell within its definition of so-called "deal documents," and there is therefore no way to determine whether the documents offered by Bingham would have included the specific materials cited in Mattel's Reply. More importantly, however, Bingham made clear that it would not produce *any* documents—including the proffered "deal documents"—until *after* the Discovery Master had ruled on MGA's motion to quash Mattel's third-party subpoenas. The Discovery Master did not rule on that motion until March 10, 2009—five days *after* Mattel filed its opening brief.

Given that the Wachovia documents were not available until March 16, 2009, Mattel had good cause to cite them for the first time in its March 18 reply brief. Nor can Bingham, as counsel to its clients in the underlying transaction, claim unfair surprise—these documents relate to transactions it helped to structure. And in any case, the Ninth Circuit has recognized that a district court has discretion to consider issues that are genuinely new and raised for the first time in a reply brief. See e.g., Lane v. Department of Interior, 523 F.3d 1128, 1140 (9th Cir. 2008) ("[A] district court has the discretion to consider an argument first raised in a reply brief.") (citing Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1201-02 (9th Cir. 2001)). Critical evidence has been concealed from Mattel; a sampling of it was first produced after Mattel's Motion was filed. That evidence properly was submitted with the Reply. See Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361, 1368-69 (Fed. Cir. 2001) (considering new evidence raised for first time in reply brief; "since discovery was not granted until after Lucent's initial motion to dismiss . . . the only chance Lucent had to submit evidence produced during discovery was with its reply brief"); Hill v. Hunt, 2008 WL 4108120, at *18-19 (N.D. Tex. 2008) ("The Court also finds insufficient evidence that Defendant's motion is a tactical weapon. . . . while Defendant did file new evidence in support of his reply, some evidence was not available when Defendant filed his motion.").

### III. BINGHAM'S ATTEMPT TO RECONCILE THE WACHOVIA DOCUMENTS WITH ITS PRIOR REPRESENTATIONS FAILS.

Bingham seeks shelter behind the Discovery Master's March 10, 2009 Order, which denied Mattel's requests for production from OmniNet and Vision Capital, granted Mattel limited discovery from Omni 808 and largely granted Mattel's motion to compel documents from the IGWT Parties, with certain limitations.[9] According to Bingham, the March 10 Order "entirely disposes of Mattel's motion to compel." (Sur-Reply at 1). Bingham's reliance on this Order is misplaced.

As an initial matter, the subpoenas at issue in the March 10, 2009 Order sought different information and were addressed to different issues than the present requests to Bingham. Mattel's subpoena to Bingham seeks the production of fee agreements and related documents[10]—information which the March 10, 2009 Order did not address, and which the Court and former Discovery Master have repeatedly held to be non-privileged and relevant to bias and credibility.[11]

Additionally, as Mattel showed in its recently-filed motion for reconsideration of the March 10 Order, the Discovery Master limited discovery based on his determination that the Omni Parties are "outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties."[12] This conclusion was based directly on the Omni Parties' representation that Larian and MGA did not fund and are not affiliated with the Omni Parties. The Discovery Master expressly noted: "Based on the information presented at the February 11, 2009 hearing and in connection with the pending motions, it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities."[13] As the newly-discovered Wachovia documents confirm, however, Bingham's prior statements to the Court and to the Discovery Master were not accurate.

Recognizing that the newly-discovered evidence and the misstatements it reveals are fatal to its position, Bingham attempts to reconcile the Wachovia documents with its prior representations. It cannot be done.

---

[9] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, Hauss Dec., Exh. 1.
[10] See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, attached as Exhibit 1 to the Declaration of James J. Webster in Support of Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009 ("Webster Dec.").
[11] See Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009, at 7-9.
[12] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 16 n.13, Hauss Dec., Exh. 1.
[13] See id. at 4.

### A. **Bingham Does Not Dispute That IGWT 826 Investments Funded Omni 808**

With respect to the Secured Delayed Draw Demand Note,[14] Bingham states that "**IGWT has no ownership interest in, or control over, Omni 808, and no equity interest in, or right to make any decisions, with respect to Omni 808's investment in MGA's debt obligation**." (Sur-Reply at 8) (emphasis in original). This statement proves nothing. Bingham's counsel was not asked about and did not make representations regarding IGWT's "right to make any decisions, with respect to Omni 808's investment in MGA's debt obligation," or about its "equity interest in" or "control over" Omni. Rather, at the February 11, 2009 hearing on the parties' post-trial motions, Judge Larson asked Bingham's counsel, directly and unequivocally, whether Omni's funds came from MGA, or Isaac Larian or "*any other MGA entity*." In the face of the unambiguous inquiry, counsel represented that they had not:

> THE COURT: You're representing to the Court, though, that this was not MGA's money; that this was -- from wherever. it came from, it came from someplace else.
>
> MR. GORDINIER: Your Honor, two things. I've never met Mr. Larian, and I know less about MGA than almost everybody else.
>
> THE COURT: I'm not asking about what you know from MGA but of what you know from your client.
>
> MR. GORDINIER: What I know from my client is, he put in many millions of dollars. He had a couple of investors with him to put in many millions of dollars.
>
> THE COURT: Those investors and that money did not come from MGA?
>
> MR. GORDINIER: That's the best of my understanding, Your Honor. That's true.[15]
>
> * * *
>
> THE COURT: Your representation, then, is that based on your information and belief, the proceeds for that were

---

[14] See Secured Delayed Draw Demand Note, Hauss Dec., Exh. 5.
[15] See February 11, 2009 Hearing Transcript, at 71:16-72:5, Hauss Dec., Exh. 4.

|   | |
|---|---|
| 1 | not proceeds -- I said MGA, but ***MGA, Isaac Larian, any other MGA entity***. |
| 2 | MR. GORDINIER:  As far as I know, Your Honor, this was structured by Mr. Kadisha and the monies went to Wachovia. |
| 3 | |
| 4 | |
| 5 | THE COURT:  I know that part.  The question is where the monies came from. |
| 6 | MR. GORDINIER:  I know at least $50 million came from Mr. Kadisha and his immediate -- that's -- it's serious money, Your Honor.  ***This was an arm's length transaction***.[16] |
| 7 | |
| 8 | |

Likewise, at the March 4, 2009 Discovery Master hearing, counsel did not address IGWT's ability to make Omni's investment decisions.  Rather, Bingham's counsel clearly stated that MGA and Larian had not contributed money to Omni:

> MR. GORDINIER:  What documents do we have that show that ***either Mr. Larian or MGA paid money into this*** to purchase this debt? ***I can tell you there are none***.  This is a ready, fire, aim situation.  The allegations that were made and were made publicly are unconscionable and can't be undone.[17]

The Secured Delayed Draw Demand Note shows that these statements to the Court and to the Discovery Master were false.  Notably, Bingham does ***not dispute*** that, as set forth in Paragraph 3 of the Note, IGWT 826 Investments—an entity which the Discovery Master has already recognized is "affiliated with—if not wholly owned by—Larian"[18]—directly funded Omni 808.  Such funding simply cannot be reconciled with Bingham's past representations.

**B.    Bingham Has Not Shown That Larian Does Not Have An Interest In Omni**

As Mattel showed in its Reply, the July 29, 2008 offer letter to Wachovia reveals—contrary to Bingham's prior representations that the acquisition of the Wachovia note was an "arms-length" transaction by an independent investor—that

---

[16] See id. at 78:9-19 (emphasis added).
[17] See March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Hauss Dec., Exh. 2 (emphasis added).

"Isaac Larian will have a non-voting limited interest in the Loan Acquisition."[19] Bingham responds that the "Master Assignment and Exchange Agreement" offer letter merely "refers to a *contemplated* non-voting, non-controlling interest that *was not employed* and *never actually happened*." (Sur-Reply at 7) (emphasis in original). Bingham also charges that "Mattel conveniently chose *not* to attach" the Master Assignment and Exchange Agreement to its Reply. (Sur-Reply at 2-3, 7) (emphasis in original). Bingham is wrong on all counts.

First, Mattel *did* submit the Master Assignment and Exchange Agreement with its Reply, attached to the Declaration of Stephen Hauss as Exhibit 6. ***Nothing*** in the Master Assignment and Exchange Agreement even suggests, let alone definitively establishes, that Isaac Larian does not have an interest in Omni or the acquisition of the Wachovia note.[20] Bingham notably does not identify ***where*** the Master Assignment and Exchange Agreement purportedly provides that Larian does not have, and never had, an interest. Nor does Bingham attach a copy of the Agreement to its sur-reply (after incorrectly castigating Mattel for allegedly failing to do so), even though Bingham's client, Omni 808, is a party to the Agreement, the Agreement itself identifies Bingham as notice counsel, and Bingham undoubtedly has a copy of it.[21] Indeed, after implying that Mattel "selectively" failed to attach "thousands" of documents which purportedly demonstrate Larian's lack of ownership interest (Sur-Reply at 7)— documents which Bingham's clients either created themselves or else were parties to—

---

[18] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Hauss Dec., Exh. 1.
[19] See OmniNet Capital, LLC's Offer Letter to Wachovia Bank, dated July 29, 2008, Hauss Dec., Exh. 3.
[20] See Master Assignment and Exchange Agreement, Hauss Dec., Exh. 6. Perhaps Bingham is referring to the fact that the Agreement does not expressly identify Larian's interest. However, that the Agreement assigns Wachovia's interest in the debt to Omni 808 as an entity says nothing of the interests of Omni's individual officers, members or other stakeholders. As Bingham has represented to the Court, "Mr. Kadisha solicited various private investors" to fund Omni 808 and its acquisition of the Wachovia debt. See Omni 808 Investors, LLC's *Ex Parte* Application for Leave to Intervene, dated February 3, 2009, Docket No. 4761. Each of those investors undoubtedly has an interest in Omni and the loan acquisition. Yet, like Larian, none of those interest holders are expressly identified in the Master Assignment and Exchange Agreement.

Bingham does not submit a single document or piece of evidence in support of its claim to the contrary (nor in support of any of the other claims in its improper sur-reply).[22]

          Nor is Bingham's denial of Larian's interest even relevant. Mattel is seeking discovery on this motion. One cannot avoid discovery by simply disputing claims of wrongdoing. The purpose of discovery, after all, is to test the allegations and claims. See Jones v. Deutsche Bank AG, 2006 WL 648369, at *2 (N.D. Cal. Mar. 10, 2006) (ordering production of documents related to defendant's transactions with third parties because "[e]ven if [defendant] thinks [plaintiff's RICO] allegations are wrong, discovery to test the truth of [plaintiff's] allegations is appropriate"); Netherby Limited v. Jones Apparel Group, Inc., 2005 WL 1214345, at *1 (S.D.N.Y. 2005) ("Plaintiff need not accept defendant's account of its dealings with its Canadian sub-licensee, but can seek to determine whether the sub-licensee's documents and testimony confirm or undermine discovery obtained from defendants."). As Mattel has already shown in its Motion to Compel and Reply, and as further set forth below, Mattel's requests to Bingham are narrowly tailored to elicit discovery of evidence directly relevant to Phase 2 issues, including to MGA's and Larian's financial condition. Mattel is entitled to discovery into the Omni Parties' formation and operation in order to test for itself whether Larian in fact holds an ownership interest in the Omni Parties.

    **C.**    **Bingham's Argument Regarding MGA's And Omni's Affiliate Status Also Fails**

          Finally, Bingham responds to the September 3, 2008 Senior Promissory Note identifying Omni 808 as an "affiliate" of MGA[23] by claiming that (1) Section 9(b)

---

[21] See Master Assignment and Exchange Agreement, at 10, Hauss Dec., Exh. 6.
[22] Nor does it matter for purposes of deciding Mattel's Motion to Compel whether Larian's interest was in fact realized. Even if Larian's interest was merely "contemplated"—a fact which was itself concealed from the Court and the Discovery Master—Mattel would nonetheless be entitled to take discovery into the true parties behind the Omni Parties in order to, among others things, confirm the true nature of Larian's interest and ascertain whether any Larian family member or associate, or any MGA employee or affiliate, acquired an interest on Larian's behalf or at Larian's direction.
[23] See Senior Promissory Note, dated September 3, 2008, Hauss Dec. 7 (section 9(b) states that "purchaser"—i.e., Omni 808—is an "affiliate" of MGA under the terms of the (footnote continued)

of the Note defines Omni 808 as an MGA affiliate "[f]or purposes of this covenant," (Sur-Reply at 8-9), and (2) the very fact that the Note includes the "[f]or purposes of this covenant" caveat proves that Omni 808 cannot possibly be an MGA affiliate for any other purpose. The arguments are non-sensical.

The Senior Promissory defines an "affiliate" as:

> . . . a Person directly or indirectly controlling, controlled by or under common control with, such Person. For purposes of this definition, "control" (including with correlative meanings, the terms "controlling", "controlled by" and "under common control with") means the possession directly or indirectly of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities or by contract or otherwise. The affiliates of a Person shall include any officer or director of such Person.[24]

The fact that one of the key loan documents in this transaction defines Omni 808 as an "affiliate" of MGA, thereby indicating that Omni is either "controlled by" or "under common control with" MGA, is highly relevant to the Phase 2 trial. Moreover, it directly contradicts Bingham's repeated representations—including in the present, unauthorized sur-reply—that MGA in no way controls Omni 808. (See Sur-Reply at 7 (stating that "MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian do not have . . . control over, the Financing Entities")). That this apparent affiliation may be limited to the context of the Omni-Wachovia transaction—the very transaction for which Omni 808 was formed and into which Mattel is seeking discovery—in no way limits its relevance.

Moreover, Bingham's offered reading—suggesting that Omni 808 is an MGA affiliate *solely* for purposes of this covenant and not for any other purpose (See Sur-Reply at 8-9)—is not even supported by the plain language of the Note. Nothing on the face of the Senior Promissory Note in any way limits Omni 808's and MGA's

---

Note); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Hauss Dec. 8. (summarizing terms of Wachovia's Senior Note and stating that "[a]ffiliate transactions are restricted (and Omninet is considered an affiliate)").
[24] See Senior Promissory Note, dated September 3, 2008, at 1, Hauss Dec. 7

affiliation.[25] Section 9(b) can just as plausibly be read as affirming that Omni 808's and MGA's pre-existing or continuing relationship makes them "affiliates" as defined by the Note.[26] Again, Bingham's denials regarding Omni 808's and MGA's "affiliate" status simply have no bearing on the outcome of the present Motion to Compel. Mattel is entitled to take discovery to confirm the relationship for itself.[27] See Jones, 2006 WL 648369, at *2; Netherby, 2005 WL 1214345, at *1.

## IV. BINGHAM'S REMAINING ARGUMENTS ARE WITHOUT MERIT.

In a last ditch effort to preclude Mattel from obtaining the discovery to which it is entitled, Bingham offers three final arguments: that (1) Mattel has not established the necessary nexus between the requested discovery and Phase 2 issues; (2) Mattel is not entitled to obtain discovery from Bingham in light of the recent Wachovia production; and (3) to the extent Mattel is entitled to any additional discovery, it should be obtained only from MGA. Each should be rejected.

### A. As Mattel Has Shown, Its Subpoena To Bingham Is Relevant To Phase 2

First, Bingham repeats the argument previously asserted in its Opposition to Mattel's Motion to Compel (See Opp. at 13-17) that Mattel has failed to articulate the necessary connection between its requested discovery and the Phase 2 trial. (See Sur-Reply at 10). As Mattel has already demonstrated in both its Motion and Reply, this argument is without merit. Mattel's subpoena seeks documents relating to the source of payment of the Omni Parties' legal fees.[28] As Mattel repeatedly noted in its Motion and Reply, both Judge Larson and the former Discovery Master have consistently held that fee arrangements and related documents are not privileged and are relevant to bias and

---

[25] See id.
[26] See id.
[27] Bingham's denials regarding OmniNet's "affiliate" status with MGA, as set forth in the September 8, 2008 Wachovia Memo, are irrelevant for the same reason. See September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Hauss Dec. 8. (summarizing terms of Wachovia's Senior Note and stating that "[a]ffiliate transactions are restricted (and Omninet is considered an affiliate)").

credibility.[29]  (See Mot. to Compel at 8-9; Reply at 4-6).  Further, as set forth in Mattel's papers, witnesses associated with Omni 808, Vision Capital and the other third-party entities, including Leon Neman, Fred Mashian, Neil Kadisha and Peter Carson, will be called upon to testify (and indeed are the subject of deposition subpoenas served by Mattel) about the purported debt's terms, nature, amount and legitimacy (or lack thereof).  (See Motion to Compel at 9; Reply at 6).  The identity of the payor of these third-party witnesses' legal fees is directly relevant to the credibility and bias of percipient witnesses and a well-settled basis to question their testimony.

Mattel's papers have also shown that the Bingham subpoena is relevant to MGA's and Larian's net worth.  As Mattel demonstrated, the requests are reasonably calculated to discover (1) who is paying the Entities' legal fees, and (2) who is actually behind the Entities.  This information is directly relevant to determining whether the Entities' acquisition of the majority of MGA's claimed debt was arms-length or, as Mattel believes is the case, a mid-trial sham transaction carried out by Larian to manipulate MGA's finances.  The question whether MGA is under an *actual* obligation to repay the more than $300 million in debt that it claims to owe to the Entities is indisputably relevant—and indeed critically important—to MGA's and Larian's net worth and financial condition.  (See Motion to Compel at 10-11; Reply at 6-10).

### B.  Mattel Seeks Unique, Relevant Documents From Bingham Which Were Not Included In The Wachovia Production

Bingham next argues that Mattel's discovery requests to Bingham should be denied in light of the recent Wachovia production.  (Sur-Reply at 10-11).  This argument defies logic.  As noted, Mattel's subpoena to Bingham seeks (1) source of

---

[28] See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, Webster Dec., Exh. 1.
[29] See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34.

payment information relating to the payment of the Omni Parties' legal fees and (2) documents pertaining to the Omni Parties' formation and operation[30]—documents which are unlikely to be in Wachovia's possession, and which were not produced in connection with Wachovia's March 16, 2009 production.

Bingham offers no authority for its breathtaking suggestion that a party should be denied relevant, discoverable evidence from a third-party simply because another third-party produced a number of unrelated documents. This argument is frivolous.

### C. Mattel Is Entitled To Obtain The Requested Documents From Bingham

Finally, Bingham argues that to the extent Mattel is entitled to obtain the requested discovery, Mattel should be required to seek it from MGA. (Sur-Reply at 11). Given Bingham's insistence that the Omni Parties are separate and independent from MGA and Larian, it is curious that Bingham would identify MGA as the proper source for (1) documents regarding the payment of the Omni Parties' legal fees, and (2) documents relating to the Omni Parties' formation, operation and membership. Indeed, Bingham's suggestion that MGA might possess such documents simply provides further evidence that Bingham's representations to the Court and to the Discovery Master regarding the "arms-length" nature of the Omni-MGA transactions were untruthful.

In any event, parties have a right to non-party discovery without regard to the discovery they can obtain from parties to the litigation. See, e.g. Viacom Intern., Inc. v. YouTube, Inc., 2008 WL 3876142, at *3 (N.D.Cal. 2008) ("Thus, there is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession."). This is particularly true where, as here, the defendants have a long history of untrustworthiness and repeated violations of court orders. As Mattel demonstrated in its recently-filed Motion for Reconsideration of the Discovery Master's

---

[30] See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, Webster Dec., Exh. 1.

March 10, 2009 Order, third-party discovery—and only third-party discovery—has repeatedly exposed the falsity of MGA's and Larian's testimony and claims, including as found by the jury in Phase 1.[31]

Given MGA and Larian's record of misrepresentations under oath and to the Court about facts, financial condition, and discovery compliance, Mattel's efforts to obtain this discovery from third parties, including Bingham, is wholly proper and may be the only way the truth can be exposed.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master deny Bingham McCutchen LLP's Objections to and Motion to Strike Reply in Support of Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, and grant Mattel's underlying Motion to Compel, in their entirety.

DATED: April 9, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: /s/ B. Dylan Proctor
    B. Dylan Proctor
    Attorneys for Mattel, Inc.

---

[31] See Mattel, Inc.'s Notice of Motion and Motion for Reconsideration of Phase II Discovery Matter Order No. 3, dated March 24, 2009, at 20-26, Docket No. 5079. Mattel respectfully directs the Discovery Master's attention to these pages of Mattel's Motion for Reconsideration and incorporates them herein by reference.