QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

**Hon. Stephen G. Larson**

[PUBLIC REDACTED]

MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL, INC. TO COMPEL DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA;

MEMORANDUM OF POINTS AND AUTHORITIES

[Notice of Lodging and Declaration of Scott B. Kidman filed concurrently]

Hearing Date: June 1, 2009
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 2**

Discovery Cutoff: Dec. 11, 2009
Pre-trial Conference: March 1, 2010
Trial: March 23. 2010

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 1, 2009, or as soon thereafter as counsel may be heard, in the Courtroom of The Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule the portion of the Discovery Master's March 31, 2009 Order No. 11 Regarding Motion of Mattel, Inc. to Compel the Depositions of Pablo Vargas and Mariana Trueba.

This Motion is made pursuant to Federal Rules of Civil Procedure 72(a) on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Scott B. Kidman, the concurrently filed Notice of Lodging, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

**Statement of Rule 37-1 Compliance**

The parties met and conferred regarding this motion on April 1, 2009 and thereafter.[1]

DATED: April 13, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By

Michael T. Zeller
Attorneys for Mattel, Inc.

---

[1] See letter from Jon Corey to Joel Klevens, dated April 1, 2009, attached to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec.") as Exh. 1; Letter from Amman Khan to Jon Corey, dated April 8, 2009, Kidman Dec., Exh. 2.

00505.07209/2881495.2

-2-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL, INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 10

I. THE DISCOVERY MASTER'S FINDING THAT VARGAS AND TRUEBA ARE NOT MANAGING AGENTS IS CLEARLY ERRONEOUS AND CONTRARY TO LAW .......... 11

A. Vargas and Trueba Have Responsibilities of "Managing Agents" Respecting Matters Involved In This Litigation .......... 12

B. Vargas And Trueba Were "Managing Agents" At The Relevant Time Period For The Issues At Stake In The Litigation .......... 14

C. Vargas And Trueba Can Be Relied Upon To Give Testimony At MGA Mexico's Request .......... 17

D. There Are No Persons in Higher Authority In The Area For Which Information Is Sought .......... 18

E. Vargas' and Trueba's Interests Are Aligned With The MGA Parties .......... 19

II. VARGAS AND TRUEBA SHOULD BE ORDERED TO APPEAR FOR DEPOSITION IN LOS ANGELES .......... 21

CONCLUSION .......... 24

00505.07209/2881495.2

-i-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

# TABLE OF AUTHORITIES

**Page**

## Cases

Afram Export Corp. v. Metallurgiki Halyps, S.A., 772 F.2d 1358 (7th Cir. 1985) .......... 23

Boston Diagnostics Development Corp., Inc. v. Kollsman Mfg. Co., 123 F.R.D. 415 (D. Mass. 1988) .......... 12, 15, 16, 19

Cadent Ltd., v. 3M Unitek Corp., 232 F.R.D. 625 (C.D. Cal. 2005) .......... 21, 22, 23

Calixto v. Watson Bowman Acme Corp., 2008 WL 4487679 (S.D. Fla. 2008) .......... 15, 17, 20

Curry v. States Marine of Del., 16 F.R.D. 376 (S.D.N.Y. 1954) .......... 15, 20

Custom Form Mfg. v. Omron Corp., , 196 F.R.D. 333 (N.D. Ind. 2000) .......... 22

Delphi Automotive Systems LLC v. Shinwa International Holdings Ltd., 2008 WL 2906765 (S.D. Ind. July 23, 2008) .......... 22

Dubai Islamic Bank v. Citibank, N.A., 2002 WL 1159699 (S.D.N.Y. 2002) .......... 15, 17, 20, 21

Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F. 2d 1448, 256 U.S. App. D.C. 54 (C.A. D.C. 1986) .......... 15

Mediatek, Inc. v. Sanyo Electronic Co. Ltd., 2006 WL 5709449 (E.D. Tex. August 9, 2006) .......... 22

New Medium Techs. LLC v. Barco N.V., 242 F.R.D. 460 (N.D. Ill. 2007) .......... 22, 23

Philadelphia Indem. Ins. Co. v. Federal Ins. Co., 215 F.R.D. 492 (E.D. Pa. 2003) .......... 14

Salve Regina College v. Russell, 499 U.S. 225 (1991) .......... 23

Smith v. Shoe Show of Rocky Mountain, Inc., 2001 WL 1757184 (D. Mass. Aug. 26, 2001) .......... 15, 19

South Seas Catamaran, Inc. v. Motor Vessel "Leeway", 120F.R.D. 17 (D.N.J. 1988) .......... 23

Stacey v. ZF Lemforder, 2007 WL 201018 (E.D. Mich. Jan. 23, 2007) .......... 12, 14, 18

Sugarhill Records, Ltd. v. Motown Records Corp., 105 F.R.D. 166 (S.D.N.Y. 1985) .......... 7, 12, 13, 14, 18, 21

Terry v. Modern Woodmen of America, 57 F.R.D. 141 (W.D. Mo. 1972) .......... 19

Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94 (S.D.N.Y. 1968) .......... 13

United States v. Afram Lines, Ltd., 159 F.R.D. 408 (S.D.N.Y 1994) .......... 21

Zurich Ins. Corp. v. Essex Crane Rental Corp., 1991 WL 12133 (S.D.N.Y. January 29, 1991) .......... 19

## Statutes

Fed. R. Civ. Proc. 30 .......... 16

Fed. R. Civ. Proc. 30(b)(1) .......... 7, 16

Fed. R. Civ. Proc. 32 .......... 17

Fed. R. Civ. Proc. 32(a)(3) .......... 16

Fed. R. Civ. Proc. 72(a) .......... 10, 12

00505.07209/2881495.2

-iii-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Pablo Vargas San Jose and Mariana Trueba Almada are key witnesses in this case. Vargas is the Director of Sales for MGA Mexico, a named defendant. Trueba is its Director of Marketing. Both are former Mattel executives who, along with another former Mattel executive and named defendant, Carlos Gustavo Machado, were recruited by MGA and Isaac Larian in 2004 to establish and run MGA's new Mexico operation. Before leaving Mattel, the three stole virtually every type of information that MGA would need to enter into the market in Mexico and to compete with Mattel worldwide. When Mexican criminal authorities executed a search warrant at MGA's offices in Mexico City in October 2005, they found and seized scores of documents containing Mattel's trade secrets and proprietary information, including those taken by Vargas, Trueba and Machado. The theft and use of these trade secrets and confidential information are key elements of Mattel's claims and defenses in Phase 2 and are specifically alleged in Mattel's claims.

Isaac Larian hired Vargas and Trueba to "[REDACTED]," and they did so, exercising judgment and discretion with respect to key events at issue here. Mattel first noticed their depositions more than a year ago. MGA initially promised to produce them, but then delayed, and the Court subsequently stayed Phase 2 discovery. After the Phase 2 stay was lifted, the MGA Parties refused to produce Vargas or Trueba, claiming that neither witness is a "managing agent" and that Mattel is required to subpoena them in Mexico.

Mattel moved to compel the depositions of Vargas and Trueba on February 6, 2009. The MGA Parties opposed the motion on the basis that the witnesses are purportedly not "managing agents." The Discovery Master denied Mattel's Motion in an Order dated March 31, 2009, finding that the witnesses are not managing agents of MGA Mexico on the grounds that Mattel had not shown that they are *currently* invested with general powers within the corporation.

00505.07209/2881495.2

-1-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

The Discovery Master's order denying Mattel's motion is clearly erroneous and contrary to law. The Discovery Master both misstated and misapplied the test for determining whether MGA must produce Vargas and Trueba. The Discovery Master clearly erred in examining Vargas and Trueba's responsibilities now and not during the time period at issue in this lawsuit; in conflating the tests for managing agents and corporate officers; and in concluding that since the MGA Parties *might* ultimately disavow Vargas and Trueba because of their wrongdoing, that destroyed the alignment of interest which would otherwise require that they produce their agents for a deposition.

## Factual Background

Mattel's allegations of trade secret theft by Vargas and Trueba. Vargas and Trueba are former senior-level employees of Mattel's Mexican subsidiary ("Mattel Mexico"). Vargas was the Senior Marketing Manager, Boys Division, and Trueba was the Senior Marketing Manager, Girls Division, both for Mattel Mexico.[2] On April 19, 2004, Vargas, Trueba and another senior-level employee of Mattel Mexico, Carlos Gustavo Machado Gomez ("Machado"), each resigned their positions with Mattel, effective immediately. They stated that they had been hired by a Mattel competitor, but refused to identify that competitor. In fact, they had been hired by MGA to form and run MGA's new operation in Mexico.[3]

Following their resignations, Mattel discovered that Vargas, Trueba and Machado had been in frequent telephonic and e-mail contact with MGA personnel, including Isaac Larian, MGA's CEO, for at least three months prior to leaving Mattel. By at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in

---

[2] Mattel, Inc.'s Second Amended Answer and Counterclaims, dated July 12, 2007, ¶¶ 39-40, ("Answer") a copy of which is lodged concurrently herewith.

[3] Id. at ¶ 41.

Mexico City and establishing MGA's new Mexico subsidiary.[4] Beginning on April 12, 2004, the three Mattel employees began copying trade secret and proprietary Mattel documents to portable USB storage devices connected to their Mattel computers.[5] Trueba also took steps to increase her access to Mattel's trade secret information. Just four days before leaving, Trueba went out of her way to attend a meeting at which Mattel personnel analyzed BARBIE programs for the United States, Canada and Latin America. Two days before her resignation, she contacted a Mattel employee in El Segundo, California and Mattel's advertising agency to request updated trade secret information about advertising plans for BARBIE.[6] When he left, Machado attempted to damage the hard drive on his assigned computer to conceal his theft.[7]

Vargas, Trueba and Machado stole virtually every type of document a competitor would need to enter the Mexican market and compete with Mattel there, in the United States, and elsewhere.[8] Mattel has alleged that MGA and Larian enticed Vargas, Trueba and Machado to steal Mattel's confidential and proprietary information and that they provided the information to MGA and Larian both before and after their resignations from Mattel.[9] On October 27, 2005, the Mexican Attorney General's Office obtained a search warrant from the Mexican Federal Criminal Courts for MGA's offices in Mexico City. In that search, Mexican authorities found and seized from MGA's offices both paper and electronic copies of a large number of documents containing Mattel's trade secrets.[10]

---

[4] Id.
[5] Id. at ¶¶ 44-46.
[6] Id. at ¶ 47.
[7] Id. at ¶ 51.
[8] Id. at 48-49.
[9] Id. at ¶ 37, 42-43 and 47.
[10] Id. at ¶ 53.

Vargas, Trueba and Machado form MGA Mexico. Immediately after resigning from Mattel, Vargas and Trueba started MGA Mexico; [REDACTED] [REDACTED].[11] Larian admits that he recruited Vargas and Trueba, along with Machado, "[REDACTED] [REDACTED]."[12] Larian personally extended written employment contracts to Vargas, Trueba and Machado,[13] referred to them in internal correspondence as the people who "[REDACTED]"[14] and compensated them commensurately.[15] Vargas manages 8 to 9 employees who report directly to him as Director of Sales.[16] Among other things, he approved sales of inventory,[17] negotiated transactions and entered into agreements on the company's behalf.[18] Trueba's

---

[11] Employment contract for Mariana Trueba Almada, dated April 14, 2004, attached as Exhibit 2 to the concurrently lodged Corrected Declaration of Michael T. Zeller Dec., ("Zeller Dec."); Employment contract for Pablo Vargas, dated April 14, 2004, Zeller Dec. Exh. 3; Employment contract for Gustavo Machado, dated April 14, 2004, Zeller Dec. Exh. 4.

[12] Declaration of Isaac Larian, dated April 11, 2007, ¶ 3, Zeller Dec., Exh. 5.

[13] Offer Letter from MGAE de Mexico to Pablo Vargas, dated March 30, 2004, Zeller Dec., Exh. 6; Offer Letter from MGAE de Mexico to Mariana Trueba Almada, dated March 30, 2004, Zeller Dec., Exh. 7.

[14] E-mail from Isaac Larian to Nancy Koppang, dated April 11, 2004, Zeller Dec., Exh. 8.

[15] Vargas and Trueba each received [REDACTED] [REDACTED] Zeller Dec. Exhs. 2 & 3. These far exceeded the salaries they earned at Mattel.

[16] Deposition of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle Tr.") at 97:5-15, Zeller Dec., Exh. 9.

[17] Email from Isaac Larian to Brad Schneider, dated August 30, 2006, Zeller Dec., Exh. 10.

[18] Email from Pablo Vargas to Isaac Larian, dated May 13, 2004 at MGA 0181077, Zeller Dec., Exh. 11.

00505.07209/2881495.2

-4-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

responsibilities include all media and public relations.[19] According to MGA Mexico's Vice President, Susana Kuemmerle, all of MGA Mexico's [redacted].[20] Indeed, MGA Mexico's management team is "[redacted]" that Kuemmerle, Trueba, Vargas and Machado are "[redacted]":[21] the four of them set the prices for MGA Mexico's products through "[redacted]."[22]

Vargas and Trueba fail to appear for deposition in January 2008. On January 10, 2008, Mattel served notices setting the depositions of Vargas and Trueba for January 24, 2008.[23] Neither witness appeared. The MGA Parties contended that neither their "Director of Marketing" nor their "Director of Sales" is a "managing agent."[24] Even though they never provided addresses for Vargas or Trueba and consistently represented that they could be contacted through MGA's counsel of record,[25] the MGA Parties maintained that Mattel was required to personally serve Vargas and Trueba with deposition subpoenas in Mexico.[26] On January 28, 2008, Mattel filed an ex parte application to compel the depositions of Vargas, Trueba and

---

19 Kuemmerle Tr. at 97:14-15, Zeller Dec., Exh. 9.

20 Declaration of Susana Kuemmerle, dated February 27, 2007, ¶ 6, attached to Zeller Dec., Exh. 12. Notably, Ms. Kuemmerle herself resides in New Jersey, not Mexico. Kummerle Tr. at 22:18-19, Zeller Dec., Exh. 9.

21 Kuemmerle Tr. at 135:8-136:5, Zeller Dec., Exh. 9.

22 Kuemmerle Tr. at 91:8-14, Zeller Dec., Exh. 9.

23 Zeller Dec., Exh. 13.

24 E-mail correspondence between Michael T. Zeller and MGA's counsel at Skadden Arps, dated January 13, 2008, Zeller Dec., Exh. 14.

25 MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. De C.V., and Isaac Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007 at 15, Zeller Dec., Exh. 59.

26 E-mail correspondence between Michael T. Zeller and MGA's counsel at Skadden Arps, dated January 14-18, 2008, Zeller Dec., Exh. 15.

others.[27] Mattel's application was stayed with other Phase 2 discovery,[28] then denied without prejudice along with all pending motions by a September 23, 2008 order.[29]

Vargas and Trueba fail to appear for deposition in January 2009. The Court lifted the Phase 2 discovery stay on January 6, 2009. Thereafter, on January 9, 2009, Mattel re-noticed the depositions of Vargas and Trueba for January 27 and 28, 2009, respectively.[30] On January 22, 2009, Jason Russell, of the Skadden firm, represented to Mr. Zeller, counsel for Mattel, that on January 26, 2009, MGA would provide firm dates for the depositions of Vargas and Trueba.[31] On January 26, 2009, MGA provided no dates for deposition. Instead, Amman Khan of the Glaser Weil firm reversed the MGA position even before receiving the Court's order allowing Glaser Weil to associate as counsel. At 11:40 p.m. on January 28, 2009, the day after Vargas' deposition was to occur and after the close of business on the day Trueba's deposition was noticed, Mr. Khan objected to the Vargas and Trueba deposition notices claiming that neither is an officer, director or managing agent of MGA Mexico and that Mattel would therefore have to serve them with deposition subpoenas in Mexico.[32]

Mattel moves to compel the Vargas and Trueba depositions. On February 6, 2009, Mattel filed a motion to compel Vargas and Trueba to appear for deposition in Los Angeles on the grounds that they are both managing agents of MGA Mexico. In their briefs, both Mattel and MGA set forth the multi-factor test applied by courts to

---

[27] Mattel's, Inc.'s Ex Parte Application to Compel Depositions, dated January 28, 2008, Zeller Dec., Ex. 16.

[28] Court's Order, dated February 4, 2008 at 3, Zeller Dec., Exh. 17.

[29] Court's Order, dated September 23, 2008, Zeller Dec., Exh. 18.

[30] Zeller Dec., Exh. 19. Mr. Russell also agreed to provide a firm date for the deposition of Shirin Salemnia, but that was not provided either. Instead, as with Vargas and Trueba, MGA refused to provide a firm date for her deposition. That deposition is beyond the scope of this motion.

[31] Zeller Dec., ¶ 21.

[32] Zeller Dec., Exhs. 20 & 21.

determine who is a managing agent for purposes of Rule 30(b)(1). That multi-factor test considers:

(1) whether the individual is invested by the corporation with general powers to exercise his judgment and discretion in dealing with corporate matters;

(2) whether the individual can be relied upon to give testimony at his employer's request in responding to the demands of the examining party;

(3) whether any person(s) are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination;

(4) the general responsibilities of the individual respecting the matters involved in the litigation; and

(5) whether the individual can be expected to identify with the interests of the corporation.[33]

In its motion and reply, Mattel presented evidence demonstrating that each of these factors weighed in favor of finding that both Vargas and Trueba are managing agents of MGA Mexico. That Vargas and Trueba exercise judgment and discretion in dealing with MGA matters is established by Larian's admissions that he recruited them to found the sales and marketing operations of MGA Mexico and that, together with Machado, they "run MGA Mexico;" by Ms. Kuemmerle's testimony that Vargas and Trueba are part of a "tight" group that founded and manages the day-to-day operations of MGA Mexico and, along with herself and Machado, make decisions through a "combined team effort" on matters such as the prices for MGA Mexico products; and by MGA's own documents showing that, among other things, Vargas approves sales, negotiates transactions and enters into agreements on MGA Mexico's behalf. As part of

---

[33] See, e.g. Sugarhill Records, Ltd. v. Motown Records Corp., 105 F.R.D. 166, 177 (S.D.N.Y. 1985); See also Mattel's Motion and Reply, Kidman Dec., Exs. 4 and 6; see also MGA Parties' Opposition at 10-11, Kidman Dec., Ex. 5.

the "[REDACTED]" group that founded and runs MGA Mexico - and indeed based on their continued employment by MGA Mexico for years now - Vargas and Trueba could be expected to identify with the interests of MGA Mexico rather than those of Mattel and to give testimony at MGA Mexico's request. Trueba already provided sworn testimony at MGA Mexico's direction in connection with its unsuccessful motion to dismiss Mattel's complaint on personal jurisdiction grounds, and both had been identified by MGA as witnesses with knowledge of facts to support MGA's defenses to Mattel's RICO and theft of trade secret claims. As MGA Mexico's director of sales and the person at the company responsible for media and public relations, Vargas' and Trueba's respective responsibilities correspond with the nature of the trade secrets alleged to have been misappropriated by MGA Mexico (and thus their responsibilities are relevant to matters involved in the litigation) and, as the individuals who, along with Machado, are alleged to have conspired with the MGA Parties to steal Mattel's trade secrets, they are in as good a position as anyone (indeed, potentially, the best position) at MGA Mexico to testify regarding that theft.[34]

In their opposition, the MGA Parties failed to address the evidence submitted by Mattel and did not even attempt to dispute a number of the factors, including whether Vargas and Trueba could be expected to identify with the interests of MGA Mexico and could be depended upon to carry out MGA Mexico's direction to give testimony.[35] They explained the critical e-mail in which Larian confirms that Vargas, Trueba and Machado "[REDACTED]" MGA Mexico by offering, that "[REDACTED]" and that "[REDACTED]."[36] Notably absent was any declaration from Mr. Larian himself endorsing such a reading of his abilities or intent; MGA conceded that Larian

---

[34] See Mattel's Motion and Reply, Kidman Dec., Exhs. 4 and 6, respectively.

[35] Mattel's Reply at 5, Kidman Dec., Ex. 6.

[36] See MGA Parties' Opposition at 10-11, Kidman Dec., Ex. 5.

00505.07209/2881495.2

-8-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

was "[redacted]."[37] The MGA Parties' opposition boiled down to Ms. Kuemmerle's claim that Vargas and Trueba are not managing agents because they report to others at MGA (Vargas to Kuemmerle and Trueba to Machado).[38] But as Mattel pointed out, that is not the test for determining managing agent status; otherwise, only the highest level officers of a corporation would qualify and the provision allowing for the deposition of managing agents by notice would be superfluous.[39]

The Discovery Master's Order. On March 31, 2009, the Discovery Master issued an Order denying Mattel's motion to compel.[40] The Discovery Master dismissed all of the evidence presented by Mattel regarding Vargas' and Trueba's role in establishing and running MGA Mexico on the grounds that managing agent status is determined as of the time the deposition is sought and Mattel's evidence was "only minimally probative of the *current scope* of the Witnesses' activities and authority."[41] The Discovery Master acknowledged the multi-factor test employed by courts in determining managing agent status, but found that because there supposedly was no "evidence directly addressing the Witnesses' ***current*** role" at MGA Mexico,[42] "[e]ven if all of those factors were satisfied . . . the record would still be insufficient to enforce the

---

[37] Id. at 10.
[38] Id.
[39] Mattel's Reply at 4, Kidman Dec., Ex. 6.
[40] Discovery Master's Amended Order No. 11, dated March 31, 2009 ("Order"), Kidman Dec., Exh. 3.
[41] Id. at 32. The Discovery Master cited no authority for the proposition that managing agent status for purposes of compelling a deposition turns on the witnesses "current role" with the corporate party. Instead, he pointed only to the assertion of MGA's counsel during oral argument. (Order at 32, n. 25.) MGA, in turn, did not even argue in its opposition that managing agent status is determined as of the time the deposition notice is served and, accordingly, cited no authority for this proposition.
[42] Id. at 33 (emphasis added).

00505.07209/2881495.2

-9-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

deposition notices at issue here."[43] The Discovery Master went on to examine the factors and found that two weighed in Mattel's favor--the second factor (whether the individual can be relied upon to give testimony at the employer's request) and the fourth factor (the general responsibilities of the individual respecting matters involved in the litigation).[44] The Discovery Master found that the first factor (whether the individual is invested with general powers allowing them to exercise judgment and discretion in corporate matters) weighed against Mattel because there was no evidence that Vargas and Trueba are currently invested with such powers and that the third factor (whether there are employees at MGA in the area regarding which the information is sought) weighed against Mattel because Ms. Kuemmerle supervises Vargas and (through Machado) Trueba.[45] As for the fifth factor, (whether the individual can be expected to identify with the interests of the corporation), the Discovery Master found that it is "unclear from the record whether this factor weighs in favor of or against deeming the Witnesses to be managing agents."[46]

## Argument

By the stipulation and court order appointing a Discovery Master, the Discovery Master's rulings are treated like those of a magistrate judge. Such rulings should be overruled if they are "clearly erroneous or []contrary to law." Fed. R. Civ. Proc. 72(a).

---

43 Id. at 34.
44 Id. at 35.
45 Id.
46 Id. at 36.

00505.07209/2881495.2

-10-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

## I.     THE DISCOVERY MASTER'S FINDING THAT VARGAS AND TRUEBA ARE NOT MANAGING AGENTS IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

The Discovery Master's Order is clearly erroneous and contrary to law in critical respects. First, the Discovery Master's ruling that, even if all of the factors employed by courts to determine managing agent status were satisfied, the record would still be insufficient to enforce deposition notices because of the purported lack of evidence regarding Vargas' and Trueba's current general responsibilities at MGA Mexico is clearly erroneous or contrary to law. Whether an individual is invested with general powers to exercise judgment and discretion in corporate matters is only one factor in the multi-factor analysis. Even where an individual is not vested with broad powers to manage the day-to-day operations of the corporation, it is well established that the individual can nonetheless be deemed a managing agent with respect to matters involved in the litigation. Indeed, the individual's responsibilities respecting matters involved in the litigation is one of the factors courts consider and one which the Discovery Master himself found weighed in Mattel's favor in this case. Second, the Discovery Master's finding that managing agent status for purposes of serving deposition notices (as opposed to determining whether the testimony will bind the corporation at trial) is based on the witness' responsibilities at the time of the deposition notice is clearly erroneous or contrary to law. Numerous cases hold that the relevant inquiry focuses on the individual's role with the corporate party at the time of the events at issue in the lawsuit. Here, that encompasses the time period when Vargas and Trueba were recruited by Isaac Larian to establish and run MGA Mexico and were alleged to have conspired with the MGA Parties to steal Mattel's trade secrets. Third, in addressing the remaining factors, the Discovery Master clearly erred in taking into account the possibility that MGA might one day disavow Vargas and Trueba and in suggesting that Kuemmerle might somehow adequately substitute for them. Finally, while the Discovery Master acknowledged well-established case law that any doubts at

00505.07209/2881495.2

-11-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

this stage of the proceedings regarding Vargas' and Trueba's status as managing agents are to be resolved in Mattel's favor, he failed to apply that standard here to what must, at a minimum, be considered a close question.

**A. Vargas and Trueba Have Responsibilities of "Managing Agents" Respecting Matters Involved In This Litigation**

The Discovery Master found that Trueba and Vargas are not vested with "*general* powers allowing [them] to exercise judgment and discretion in corporate matters" because Trueba is "responsible for handling media and public relations" and Vargas' authority "appears to be confined primarily to sales."[47] Based on this purported lack of evidence showing that Vargas and Trueba are currently invested with general powers in corporate matters, the Discovery Master ruled that even if all of the five factors enumerated in Sugarhill and other decisions were satisfied, "the record would still be insufficient to enforce the deposition notices at issue here."[48]

The Discovery Master wrongly interpreted *general* powers to mean that a managing agent must be in charge of broad company matters generally, akin to a high ranking corporate officer.[49] But managing agent is not so narrowly defined. An individual who is not vested with broad powers such that the individual is a managing agent with respect to the day-to-day operation of the corporation may nonetheless be a managing agent with respect to particular matters at issue in the lawsuit. See Stacey v. ZF Lemforder, 2007 WL 201018, at *3 (E.D. Mich. Jan. 23, 2007) (clearly erroneous to conclude that company auditors who investigated certain activities at issue in litigation were not managing agents for purposes of lawsuit); Boston Diagnostics Development Corp., Inc. v. Kollsman Mfg. Co., 123 F.R.D. 415, 416-17 (D. Mass. 1988) (engineer

[47] Id. at 35.
[48] Id. at 34.
[49] See id. at 35 ("Trueba's authority is the opposite of 'general:' she is responsible for media and public relations").

with decision-making authority for project at issue in litigation was managing agent for purposes of giving testimony regarding the project "even though he was responsible to higher authority to some extent"); Sugarhill Records, 105 F.R.D. at 170 (Director of Creative Administration deemed managing agent even though position's duties were unclear because she was charged with tasks at issue in the litigation); Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968) (engineers who were responsible for investigation at issue in litigation "may not be 'managing agents' in the course of their everyday duties for the defendant corporation" but "they are 'managing agents' for the purpose of giving testimony regarding the accident investigation.").

Here, Vargas and Trueba not only were directly involved in the theft and the provision of Mattel's trade secrets to the MGA Parties, but their responsibilities at MGA Mexico correspond with the nature of the trade secrets taken from Mattel. Vargas is the Director of Sales at MGA Mexico, and many of the stolen trade secrets pertain to sales, including daily sales data for Mattel products, sales projections and estimates, documents analyzing changes in sales performance, customer discounts and terms of sale and the like.[50] Similarly, the MGA Parties admit that Trueba is responsible for media and public relations at MGA Mexico;[51] other stolen trade secrets include media plans, budgets for advertising and promotional expense, advertising expenditures and assessments of promotional campaigns.[52] The Discovery Master himself found that "Mattel's papers demonstrate that the Witnesses do oversee aspects of [MGA Mexico] which are directly addressed by Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel contends, [MGA Mexico] conducts using stolen Mattel trade secrets)."[53]

---

[50] Answer, ¶¶ 48-49.
[51] Kuemmerle Tr. at 97:14-15, Zeller Dec., Ex. 9.
[52] Answer, ¶¶ 48-49.
[53] Order at 35, Kidman Dec., Ex. 3.

00505.07209/2881495.2

-13-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

The Discovery Master's finding that Mattel could not "enforce the deposition notices at issue here" even if all the Sugarhill factors were satisfied is therefore wrong on two counts: first, because it fails to properly weigh Vargas' and Trueba's responsibilities respecting matters at issue in this lawsuit, see Stacey, 2007 WL 201018, at *2 ("the court finds that the magistrate judge's . . . orders contrary to law in their conclusion that Fuerst and Roth are not 'managing agents' of Defendant. The magistrate judge placed too much emphasis on whether the employees were general 'decision-makers of Defendant, rather than looking as a whole at their functions, responsibilities and authority, particularly with respect to the subject matter of this litigation."); and second, because it elevates this single factor, wrongly defined, above all others in what is supposed to be a multi-factor test.

## B. Vargas And Trueba Were "Managing Agents" At The Relevant Time Period For The Issues At Stake In The Litigation

The Discovery Master all but ignored the virtually uncontested evidence offered by Mattel as to Vargas' and Trueba's roles and responsibilities in establishing and running MGA Mexico because it purportedly related to an earlier time period at issue in the litigation. His finding that "now" is the time that "we look at this question as to whether these [Witnesses] are managing agents" is unsupported by any authority other than statements by MGA's counsel at oral argument and is contrary to law,[54] and his refusal to take account of the events of "five years ago," a plainly relevant time period for this litigation, is clearly erroneous.

The determination of whether a witness is a managing agent is dependent "largely on functions, responsibilities and authority of the individual involved respecting the subject matters of the litigation." Philadelphia Indem. Ins. Co. v. Federal Ins. Co., 215 F.R.D. 492, 494 (E.D. Pa. 2003) (internal quotations omitted).

---

[54] Id.

00505.07209/2881495.2

-14-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

Those functions and responsibilities must be assessed "at the time of the transactions at issue in this lawsuit." Boston Diagnostics, 123 F.R.D. at 416 ("The real issue in dispute in this case is whether Mr. Gallagher was a managing agent of one or more of the plaintiff-corporations at the time of the transactions at issue in this lawsuit."). See Calixto v. Watson Bowman Acme Corp., 2008 WL 4487679, at *2 (S.D. Fla. 2008) ("Courts attribute managing agent status to persons who no longer have authority over the matters at issue and who no longer hold a position of authority within the corporation, 'so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests.'") (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F. 2d 1448, 1456, 256 U.S. App. D.C. 54, 62 (C.A. D.C. 1986)); Dubai Islamic Bank v. Citibank, N.A., 2002 WL 1159699, *5 (S.D.N.Y. 2002) (employee currently described as "clerk" found to be managing agent based on his responsibilities at time of events at issue in litigation); Smith v. Shoe Show of Rocky Mountain, Inc., 2001 WL 1757184, *2 (D. Mass. Aug. 26, 2001) (former district manager whose conduct was "at heart of Plaintiff's claims" deemed managing agent despite current status as store manager); see also Curry v. States Marine of Del., 16 F.R.D. 376, 377 (S.D.N.Y. 1954) (allowing a ship master in charge of a ship at the time of an accident to be deposed as a managing agent regarding the accident even though he was only a chief mate at the time of deposition).

Here, Vargas and Trueba undoubtedly held positions of authority with decision making power with regards to the matters at stake in the litigation. Larian admits that he recruited Vargas and Trueba, along with Machado, " [REDACTED] "[55] Larian extended written employment

[55] Declaration of Isaac Larian, dated April 11, 2007, ¶ 3, Zeller Dec.. Exh. 5.

contracts to Vargas, Trueba and Machado,[56] referred to them in internal correspondence as the people who "[REDACTED]"[57] and compensated them commensurately.[58] Indeed, it is uncontested that Vargas and Trueba were two of the four founding members of MGA Mexico charged with running its day-to-day operations at the time when Mattel alleges that they stole trade secrets from Mattel.[59]

In reaching a contrary result, the Discovery Master applied the timing rule applicable to "managing agents" for purposes of determining whether their depositions can be introduced at trial under Rule 32(a)(3) to the very different situation of when notice depositions are proper under Rule 30(b)(1). It only stands to reason that a party should not be bound by the testimony of an individual who was not a managing agent at the time he gave that testimony: the question whether someone is speaking for the company depends on their role at the time they are speaking. A much broader definition is and should be applied where the question is whether a party should be required to produce an employee for a deposition. Boston Diagnostics, 123 F.R.D. at 416 (noting that person can be "managing agent" for purposes of compelling a deposition under Rule 30 based on responsibilities at the time of the transactions at issue in lawsuit, even if not a managing agent at the time of deposition as required for

---

[56] Offer Letter from MGAE de Mexico to Pablo Vargas, dated March 30, 2004, Zeller Dec., Exh. 6; Offer Letter from MGAE de Mexico to Mariana Trueba Almada, dated March 30, 2004, Zeller Dec., Exh. 7.

[57] E-mail from Isaac Larian to Nancy Koppang, dated April 11, 2004, Zeller Dec., Exh. 8.

[58] Vargas and Trueba each received [REDACTED], Zeller Dec. Exhs. 2 & 3. These far exceeded the salaries they earned at Mattel.

[59] MGA Parties' Opposition at 10, Kidman Dec., Ex. 5 (in 2004, "Mr. Larian was simply explaining that these three individuals would be responsible for running the day-to-day operations in Mexico").

using the testimony at trial under Rule 32); Dubai, 2002 WL 1159699 at *4 ("This approach permits discovery to proceed while deferring until trial the ultimate question of whether the witness' testimony is binding on the corporation."). The only important issue relating to Vargas' and Trueba's current roles at MGA Mexico is that they are still current employees, which demonstrates an alignment of interest with their employer.[60] See Calixto, 2008 WL 4487679 at *3 (further employment at the corporation, or even a subsidiary of the corporation, demonstrates that a witness' interests are still aligned with her corporate employer). The Discovery Master's Order is clearly erroneous and contrary to law on the issue of timing.

**C. Vargas And Trueba Can Be Relied Upon To Give Testimony At MGA Mexico's Request**

The Discovery Master correctly found that Vargas and Trueba can be relied upon to give testimony at MGA Mexico's request.[61] MGA never contended otherwise and, indeed, Trueba has *already* provided sworn testimony at MGA Mexico's direction in connection with the company's unsuccessful motion to dismiss Mattel's complaint on personal jurisdiction grounds.[62] See Sugarhill Records, 105 F.R.D. at 171

---

[60] Furthermore, even if a narrower definition were applied, Vargas and Trueba would still be "managing agents" of MGA Mexico. Vargas is the Director of Sales and manages 8 to 9 employees who report directly to him. Deposition of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle Tr.") at 97:5-15, Zeller Dec., Exh. 9. Among other things, he approves sales, negotiates transactions and enters into agreements on the company's behalf. Email from Isaac Larian to Brad Schneider, dated August 30, 2006, Zeller Dec., Exh. 10; Email from Pablo Vargas to Isaac Larian, dated May 13, 2004 at MGA 0181077, Zeller Dec., Exh. 11. Trueba's responsibilities include all media and public relations. Kuemmerle Tr. at 97:14-15, Zeller Dec., Exh. 9. Along with Kuemmerle and Machado, they are responsible for setting the prices of MGA's products in Mexico. Kuemmerle Tr. at 91:8-14, Zeller Dec., Exh. 9.

[61] Order at 35, Kidman Dec., Ex. 3.

[62] Declaration of Mariana Trueba Almada, dated April 11, 2007, attached as Exhibit A to the concurrently lodged Supplemental Declaration of Michael T. Zeller, dated February 19, 2009.

00505.07209/2881495.2

-17-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

(finding employee of corporate defendant to be managing agent where "it is clear that Motown trusts Boyce to give testimony on its behalf as evidenced by the fact that Motown itself called upon her to provide testimony, in the form of an affidavit, in opposition to Sugarhill's motion for a preliminary injunction."). This factor weighs in Mattel's favor.

**D. There Are No Persons in Higher Authority In The Area For Which Information Is Sought**

Despite finding that Vargas and Trueba "oversee" aspects of MGA Mexico that are "directly addressed by Mattel's Phase 2 counterclaims, namely sales and public relations,"[63] the Discovery Master ruled that the factor that turns on whether there are employees in positions of higher authority in the areas for which information is sought weighed against Mattel because Ms. Kuemmerle testified that she supervises Vargas and (through Machado) Trueba.[64] But the test is not whether the individual reports to someone else in the corporation. If it were, only the highest level officers in the corporate hierarchy would qualify and the provision allowing for the deposition of "managing agents" of a corporate party (in addition to officers and directors) by notice would be superfluous.

The test is whether there are others in positions of higher authority in the areas *for which the information is sought*. Who reports to whom in the hierarchy is relevant only where both possess the information sought. See Stacey, 2007 WL 201018, at *2 (company auditors who investigated certain practices at issue in litigation were managing agents for purposes of lawsuit even though they were not ultimate decision-makers); Boston Diagnostics, 123 F.R.D. at 416-17 (engineer with decision-making authority for project at issue in litigation was managing agent for purposes of giving testimony regarding the project "even though he was responsible to higher

63 Order at 35, Kidman Dec., Ex. 3.

64 Id.

authority to some extent"). The MGA Parties failed to present any evidence that Ms. Kuemmerle, or anyone else at MGA, was senior to Vargas and Trueba with respect to the information being sought from them.

The MGA Parties have not presented any evidence that there is anyone in a better position at the company--higher or lower--than Vargas and Trueba to testify regarding their participation in the theft of Mattel's trade secrets or the provision of those trade secrets to the MGA Parties. See Shoe Show of Rocky Mount, 2001 WL 1757184, at *2 (former district manager who participated in harassment at issue in lawsuit was managing agent because his actions "lie at the heart of Plaintiff's claims"); Zurich Ins. Corp. v. Essex Crane Rental Corp., 1991 WL 12133, at *2 (S.D.N.Y. January 29, 1991) (inspectors who caused accident during inspection were managing agents; "the objective fact is that Mr. Flentje and Mr. Self were the only representatives of Essex with first-hand knowledge of the accident"); Terry v. Modern Woodmen of America, 57 F.R.D. 141, 143 (W.D. Mo. 1972) (finding insurance salesman to be managing agent for purposes of lawsuit based on fact that he made alleged misrepresentations to plaintiffs regarding their policies).

**E. Vargas' and Trueba's Interests Are Aligned With The MGA Parties**

The Discovery Master clearly erred and ruled contrary to law in concluding that "Vargas' and Trueba's interests do not necessarily align with the MGA Defendants in this matter" because "the MGA Defendants *may* take the position that if any Mattel documents were taken, the Witnesses did it on their own."[65] (Emphasis added.) That corporate defendants may at some point choose to disavow the acts of those whose decisions led to litigation does not and cannot provide a blanket exception for managing agents who might someday be on the receiving end of official rejection to avoid being deposed now.

---

65 Id. at 36.

First, courts have consistently held that current employment satisfies the alignment of interests test.  See Calixto, 2008 WL 4487679 at *2 (employment at the corporation, or even a subsidiary of the corporation, demonstrates that a witness' interests are still aligned with her corporate employer); Dubai, 2002 WL 1159699, at *5 (individuals continued employment after coming under "a cloud of suspicion" for involvement in fraud at issue in lawsuit "indicates an ongoing identity of interest" with corporate employer); Curry, 16 F.R.D. at 377 (allowing deposition as a managing agent of a "chief mate" who was formerly a "ship master" because continued employment indicated "that his interests are still identified with the defendant corporation").   It is undisputed that Vargas and Trueba are still MGA Mexico employees and this fact alone required this factor to be weighted in Mattel's favor.

Second, even apart from the current employment of Vargas and Trueba by MGA Mexico, the hypothetical concern about some future divergence of interest is not only unsupported and speculative, but is also contrary to record evidence.  Vargas and Trueba are former Mattel employees who took documents from Mattel for the benefit of MGA Mexico, a company they helped establish, that they knew they were leaving Mattel Mexico to establish and where they are still employed.  The MGA Parties themselves have identified Vargas and Trueba as witnesses who "may possess knowledge of facts in support of MGA's defenses to Mattel's RICO and trade secret counterclaims" and who are to be contacted through MGA's counsel of record.[66]  They can be expected to identify with the interests of the company they created.  See id. (the "purpose of the general rule against requiring former officers to testify - namely, to protect the party from the admissions of disgruntled former officers and agents" is

---

[66]  MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. De C.V., and Isaac Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007 at 15, Zeller Dec., Exh. 59.

00505.07209/2881495.2

-20-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

not frustrated when the witness' and the corporation's interests align). The Discovery Master's determination on this factor was clearly erroneous and contrary to law.

Had the Discovery Master properly applied the five factor test, he would have had to conclude, at the very least, that this was a close case. Mattel submits that the factors overwhelmingly support the finding that Vargas and Trueba were and are managing agents, but even MGA can not really claim that this isn't *close*. Mattel need show no more than that to be entitled to notice depositions; all doubts are to be resolved in favor of discovery. See Dubai, 2002 WL 1159699, at *4 (at pre-trial discovery stage the burden is "modest" and all doubts about an individual's status as a "managing agent" are "to be resolved in favor of the examining party"); United States v. Afram Lines, Ltd., 159 F.R.D. 408, 413 (S.D.N.Y 1994) (cases that fall into the "grey area" are resolved in favor of the examining party); Sugarhill Records, 105 F.R.D. at 171 ("I am to resolve close questions regarding the status of an employee as 'managing agent' in favor of the examining party since the issue of whether the witness' testimony can be used as a statement by the defendant still remains to be resolved at trial.") (citing cases). The Discovery Master's failure to apply that rule, even apart from his failure to properly (or indeed, at all) apply the five factor rule, requires that his decision be overruled.

## II. VARGAS AND TRUEBA SHOULD BE ORDERED TO APPEAR FOR DEPOSITION IN LOS ANGELES

Because the Discovery Master ruled that Vargas and Trueba were not managing agents of MGA Mexico, he did not reach the issue of where they should be required to appear for deposition. If the Court overrules the Discovery Master's Order, Vargas and Trueba should be compelled to appear for deposition in Los Angeles, as noticed.

In most cases, "[a] party may unilaterally choose the place for deposing the opposing party." Cadent Ltd., v. 3M Unitek Corp., 232 F.R.D. 625, 628 (C.D. Cal. 2005); see also Delphi Automotive Systems LLC v. Shinwa International Holdings Ltd., 2008 WL 2906765, *1 (S.D. Ind. July 23, 2008). Where the opposing party is a

00505.07209/2881495.2

-21-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11
REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

corporation, its officers, directors and managing agents are treated as "opposing parties" for purposes of this analysis. See Cadent, 232 F.R.D. at 628; Delphi, 2008 WL 2906765 at *3. Where location is contested, the determination is "ultimately an exercise in the vast discretion a district court has in supervising discovery." New Medium Techs. LLC v. Barco N.V., 242 F.R.D. 460, 462 (N.D. Ill. 2007). Courts consider a number of factors in making this determination, including the location of counsel for the parties, the likelihood of discovery disputes arising which would necessitate resolution by the forum court, whether the persons to be deposed often engage in travel for business purposes, and the equities with regard to the nature of the claim and the parties' relationship. Cadent, 232 F.R.D. at 629. Accordingly, "corporate defendants are frequently deposed in places other than the principal place of business, especially in the forum where the action is pending." Id. Mr. Machado, also an employee of MGA Mexico who Larian hired to "run" MGA Mexico with Vargas and Trueba, traveled to Los Angeles to be deposed.

Each of these factors weighs in favor of holding the depositions in Los Angeles where they were noticed. First, counsel for all parties, including MGA Mexico, are located in Los Angeles. See Mediatek, Inc. v. Sanyo Electronic Co. Ltd., 2006 WL 5709449 (E.D. Tex. August 9, 2006) (ordering depositions of Japanese corporate defendant to take place in California and noting that "it would be much easier for those witnesses to travel to California for deposition than for the gaggle of attorneys on both sides to travel to Japan").[67] Second, discovery disputes are far from uncommon in this case; requiring the depositions to take place in Mexico would raise obstacles to the Court's ability to resolve such disputes. See Custom Form Mfg. v. Omron Corp., 196 F.R.D. 333, 336-37 (N.D. Ind. 2000) (if depositions take place in Japan, "this court's authority to intervene, should it become necessary, is compromised"); New

---

[67] Taking the depositions in Mexico would require travel not only by counsel for all the parties, but also by a court reporter and videographer.

Medium, 242 F.R.D. at 467 (ordering depositions of Japanese corporate defendant to take place in Chicago where action was pending and noting that "an antecedent history of contentiousness is a sufficient . . . basis on which to require a deposition in a locale where judicial supervision will be available"). Third, MGA itself is located in Los Angeles, and Vargas and Trueba travel here for business.[68] Indeed, they both traveled here while still employed by Mattel to meet in person with Isaac Larian.[69] They can hardly be heard to complain about traveling here now for their depositions, particularly when MGA has identified them as witnesses. The equities regarding the nature of the claims also weighs in favor of a Los Angeles location: Mattel is located in Los Angeles and suffered the effects of Vargas and Trueba's theft of its trade secrets in this District. And, as this Court has already ruled, MGA Mexico is subject to jurisdiction in this District as well.

MGA Mexico bears the burden of showing that it will suffer prejudice or undue burden if the depositions of Vargas and Trueba are held in Los Angeles where they were noticed. Cadent, 232 F.R.D. at 629. It cannot meet its burden. Id. (ordering officers and managing agents of corporation who resided in Israel and New Jersey to appear for deposition in Los Angeles where noticed); see also Afram Export Corp. v. Metallurgiki Halyps, S.A., 772 F.2d 1358, 1365 (7th Cir. 1985) (affirming district court's order that Greek corporation's president be deposed in the United States where corporation made no showing of hardship), abrogated on other grounds, Salve Regina College v. Russell, 499 U.S. 225, 235-240 (1991); South Seas Catamaran, Inc. v. Motor Vessel "Leeway", 120F.R.D. 17, 21 n.5 (D.N.J. 1988) ("courts have often required corporate defendants to produce their officers or agents for depositions at locations

---

[68] Kuemmerle Tr. at 62:19-21, 63:13-25, Zeller Dec., Exh. 9; Deposition of Isaac Larian, dated March 26, 2008 at 335:20-25, 338:2-12 ("Larian Tr."), Zeller Dec., Exh. 58.

[69] Kuemmerle Tr. at 62:16-63:25, Zeller Dec., Exh. 9; Larian Tr. at 335:17-25, Zeller Dec., Exh. 58.

00505.07209/2881495.2

-23-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL. INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA

other than the corporation's principal place of business where there has been no showing that the defendant will suffer any resulting financial hardship.").

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court grant its motion in its entirety, overrule the portion of Discovery Master Order No. 11 regarding Mattel, Inc.'s Motion To Compel Depositions of Pablo Vargas and Mariana Trueba and order Vargas and Trueba to appear for deposition in Los Angeles forthwith.

DATED: April 13, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

00505.07209/2881495.2

-24-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 11 REGARDING MOTION OF MATTEL, INC. TO COMPEL DEPOSITIONS OF VARGAS AND TRUEBA