1  PATRICIA L. GLASER (Bar No. 055668)
   pglaser@glaserweil.com
2  GLASER WEIL FINK JACOBS & SHAPIRO
   10250 Constellation Blvd., 19th Floor
3  Los Angeles, California  90067
   Telephone:  (310) 553-3000
4  Facsimile:  (310) 557-9815

5  RUSSELL J. FRACKMAN (Bar No. 49087)
   rjf@msk.com
6  PATRICIA H. BENSON (Bar No. 60565)
   phb@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
8  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
9  Facsimile: (310) 312-3100

10 Attorneys for Defendants
   MGA Entertainment, Inc., MGA Entertainment HK, Ltd.,
11 MGAE De Mexico, S.R.L. De C.V., and Isaac Larian

12                UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

| | |
|---|---|
| 14  CARTER BRYANT, an individual, | CASE NO.  CV 04-9049 SGL (RNBX) CONSOLIDATED WITH |
| 15         Plaintiff, | CASE NO.  CV 04-09059 CASE NO.  CV 05-02727 |
| 16     v. | **DISCOVERY MATTER** |
| 17  MATTEL, INC., a Delaware corporation, | **[TO BE HEARD BY DISCOVERY MASTER ROBERT O'BRIEN PURSUANT TO ORDER OF JANUARY 6, 2009]** |
| 18 | |
| 19         Defendant. | |
| 20  AND CONSOLIDATED CASES | **MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 15, 2008 ORDER** |
| 21 | |
| 22 | |
| 23 | **[DECLARATION OF JEAN PIERRE NOGUES FILED CONCURRENTLY HEREWITH]** |
| 24 | Hearing Date:  April, 27, 2009 |
| 25 | Time:  10:00 a.m. |
| | Place:  Arent Fox LLP |
| 26 | |
| 27 | **Phase 2** |
| | Dis. Cut-off:  Dec. 11, 2009 |
| 28 | Pre-Trial Conf.:  March 1, 2010 |
| | Trial Date:  March 23, 2010 |

Mitchell
Silberberg &
Knupp LLP

2198372.1

# TABLE OF CONTENTS

**Page(s)**

I.    Introduction ................................................................................................ 2

II.   The Interrogatories and Responses ..................................................... 4

III.  MGA's Responses Are Adequate ......................................................... 9

IV.   MATTEL'S CONTENTIONS REGARDING OBJECTIONS OVER WHICH MGA ANSWERED HAVE BEEN WAIVED AND ARE WITHOUT MERIT ................................................................. 16

    A.   Mattel Has Waived Its Belated Arguments Regarding MGA's Objections ................................................................... 16

    B.   MGA's Objections Are Valid, and, In Any Event, MGA Has Provided More Than Sufficient Answers Notwithstanding Those Objections .......................................... 18

        1.   Privilege Objections ................................................... 18

        2.   Compound Objections ................................................. 18

        3.   Objections that Information Has Already Been Produced or Is More Readily Accessible to Mattel ................. 22

        4.   Expert Analysis ........................................................... 22

        5.   Undue Burden ............................................................. 23

CONCLUSION ....................................................................................................... 24

Mitchell
Silberberg &
Knupp LLP

2198372.1

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Am. Oil Co. v. Penn. Ptero. Co.,*
    23 F.R.D. 680 (D.R.I. 1959)...................................................................13

*Audiotext Communications Network v. US Telecom, Inc.,*
    1995 WL 625953 (D. Kansas Oct. 5, 1995)........................................12

*Auto Meter, Products, Inc. v. Maxima Technologies & Systems, LLC,*
    2006 WL 3253636 (N.D. Ill. Nov. 6, 2006)........................................12

*Clean Earth Remediation & Constr. Servs. v. American Intern. Group, Inc.,*
    245 F.R.D. 137 (S.D.N.Y. 2007) .........................................................11

*Dang v. Cross,*
    2002 WL 432197 (C.D. Cal. March 18, 2002) ...................................13

*General Motors Corp. v. Let's Make A Deal,*
    223 F.Supp.2d 1183 (D.Nev. 1998) ...................................................19

*Grynberg v. Total S.A.,*
    2006 WL 1186836 (D. Colo. May 3, 2006)...............................11, 12

*Hiskett v. Wal-Mart Stores, Inc.,*
    180 F.R.D. 403 (D. Kan. 1998).....................................................12, 13

*IBP, Inc. v. Mercantile Bank of Topeka,*
    179 F.R.D. 316 (D. Kan. 1998)...........................................................12

*In re Veeco Instruments, Inc. Securities Litigation,*
    2007 WL 724555 (S.D.N.Y. March 9, 2007) ..............................14, 18

*King v. Georgia Power Co.,*
    50 F.RD. 134, 136 (N.D. Ga. 1970).....................................................13

*Moseley v. V Secret Catalogue, Inc.,*
    537 U.S. 418 (2003)..............................................................................20

Mitchell Silberberg & Knupp LLP

2198372.1

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Moses v. Halstead,*
    236 F.R.D. 667 (D. Kan. 2006)...................................................................11, 13

*Nissan Motor Co. v. Nissan Computer Corp.,*
    378 F.3d 1002 (9th Cir. 2004)...................................................................20

*Pension Benefit Guaranty Corp. v, Ziffer,*
    1994 WL 11654 (N.D. Ill. Jan. 6, 1994) .......................................................13

*Schaap v. Executive Indus., Inc.,*
    130 F.R.D. 384 (N.D. Ill. 1990)..................................................................13

*Stoldt v. Centurion Indus., Inc.,*
    No. 03-2634-CM-DJW, 2005 WL 3756670 (D. Kan. Feb. 3,
    2005)......................................................................................................11

*Tennison v. San Francisco,*
    226 F.R.D. 615 (N.D. Cal. 2005) ..............................................................12

*Twigg v. Pilgrim's Pride Corp.,*
    2007 WL 676208 (N.D. W. Va. Mar. 1, 2007).........................................13

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) ................................................................................19

*Williams v The Art Inst. Of Atlanta,*
    2006 WL 3694649 (N.D. Ga. Sept. 1, 2006) ...............................................13

*Zapata v. IBP, Inc.,*
    1997 WL 122588 (D. Kan. 1997) ...............................................................13

## STATUTES

15 U.S.C. § 1125(a)...........................................................................................19

15 U.S.C. § 1125(a)(3) ......................................................................................19

15 U.S.C. § 1125(c)...........................................................................................20

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY MATER'S FEBRUARY 15, 2008 ORDER

## I.   Introduction

Mattel has used the Court's reference to the present Discovery Master as an excuse to file a supplemental brief raising issues that Mattel never argued to the prior Discovery Master and/or never included in its Appeal to the District Court, and that Mattel therefore waived.  In any event, MGA's responses were sufficient and its objections proper.

In December 2007, Mattel filed a motion to compel further responses from the MGA Parties to twenty-three  interrogatories from six different sets that Mattel had served, including Interrogatories 48 through 50 of Mattel's Seventh Set of Interrogatories.  Interrogatories 48 through 50, which in certain respects duplicated interrogatories Mattel previously had propounded, sought information about the trade dress the MGA Parties contend Mattel infringed and about the Mattel products the MGA parties contend are infringing.

By order dated February 15, 2008 ("February 2008 Order"), the former Discovery Master denied Mattel's motion to compel further responses to seventeen of the twenty-three interrogatories at issue, including Interrogatories 48 through 50.  As to Interrogatories 48 through 50, which are the subject of the instant Motion, the former Discovery Master ruled:

> "The MGA parties are in substantial compliance with Rule 33, having identified numerous elements of the trade dress they contend Mattel has infringed.  More specifically, the MGA parties' responses identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their trade dress.  The MGA parties also set forth the principal facts supporting their contention that their trade dress is protectable under applicable trade dress legal principles, including that the trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary meaning.  That the interrogatory responses include a reservation

Mitchell
Silberberg &
Knupp LLP

2198372.1

1    of rights to supplement during expert discovery does not render the

2    responses inherently improper or inadequate.  Mattel does not contest that

3    the identification of the elements and products subject to trade dress

4    infringement will be a subject of expert testimony."

5    Ex. B to Nogues Decl. at 56:1-11 (the "February 2008 Order").

6         Mattel appealed the  February 2008 Order to the District Court (the

7    "Appeal").  While the Court affirmed the  February 2008 Order in most respects, it

8    declined to rule on Interrogatories 48 through 50 at that time because they were

9    directed to Phase 2 claims, which had been stayed.  Ex. C to Nogues Decl. at 3.

10   The Court stated that its decision on Interrogatories 48 through 50 was without

11   prejudice, and that "Mattel may raise the issue again at an appropriate time after

12   the Court lifts the stay on Phase 2 Discovery." *Id.*

13        On January 20, 2009, Mattel filed a motion with the District Court, renewing

14   its Appeal as to Interrogatories 48 through 50 ("Renewed Appeal").  In connection

15   therewith, Mattel lodged the papers the parties had filed in 2008 in support of and

16   opposition to Mattel's original Appeal of the February 2008 Order.  Ex. H to

17   Nogues Decl. at 133:14-16.  On March 12, 2009, the Court issued a minute order,

18   referring Renewed Appeal to the present Discovery Master, and directing that the

19   "Discovery Master shall consider the issues presented by the motion for review as

20   if presented to him in the first instance; he should not apply the clearly erroneous

21   or contrary to law standard that the Court would apply." Ex. D to Nogues Decl.

22   The Court's March 12, 2009 Order limits the Phase 2 Discovery Master's "review

23   [of] prior discovery . . . only to motions seeking review of discovery orders

24   previously issued by the Phase 1 Discovery master to which timely objections were

25   made prior to the imposition of the stay as to Phase 2 discovery."  Thus, the Court

26   did not give Mattel permission to reopen matters and issues that had not been

27   preserved by timely objection/appeal in 2008.

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

3

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

1    When they originally opposed Mattel's Appeal of the February 2008 Order,

2    the MGA Parties properly focused on the standard by which the District Court

3    reviews such orders: they are not to be overturned unless clearly erroneous or

4    contrary to law.  The Court's March 12, 2009 Order expressly directs the

5    Discovery Master *not* to apply that standard, and instead to consider the motion to

6    compel as though presented to him in the first instance.

7    On April 3, 2009, Mattel filed a supplemental memorandum in support of its

8    Renewed Appeal.  That supplemental  memorandum raises new issues not

9    preserved by Mattel's 2008 Appeal, and which, in at least some instances, were not

10   even raised by Mattel in its original motion regarding Interrogatories 48 through

11   50.

12

13   **II.    The Interrogatories and Responses**

14   At issue in this motion are three interrogatories served on October 25, 2007.

15   In those interrogatories, Mattel requested that the MGA Parties (a) indentify each

16   trade dress they contend Mattel "copied, infringed or diluted or that is otherwise

17   the subject of [MGA's] claims, defenses or allegations in this ACTION"

18   (Interrogatory 48); (b) identify "each and every MATTEL product, packaging or

19   other matter [MGA] contends copies, infringes or dilutes such trade dress [and]

20   each and every element of the claimed trade dress" the MGA Parties claim was

21   copied (Interrogatory 49); and (c) for each trade dress identified in response to

22   Interrogatory 48, identify all facts supporting "the contention that the trade dress is

23   protectable, all DOCUMENTS that REFER OR RELATE to the foregoing and all

24   PERSONS with knowledge of the foregoing" (Interrogatory 50).

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

The MGA Parties objected to Mattel's interrogatories on various grounds, including that the definitions[1] made them compound, burdensome and oppressive, but nevertheless provided substantive responses.  In response to Interrogatory 48, requesting MGA to identify the trade dress it claimed Mattel had copied, infringed or diluted, MGA responded:

"The unique and distinctive trade dress of MGA's 'Bratz' line of dolls that Mattel has copied, infringed or diluted is comprised of the following elements:

- the unique, unusual geometric-shaped packaging with increased transparency including transparent open sides, and with a 'flying banner' style slogan;
- the proportions and special arrangements of the eyes, noses, mouths and hairlines;
- the shape of the eyes, faces, heads and lips;
- the unique face paint, design, and color scheme depicting facial features;
- the disproportionately oversized heads;
- the oversized shoes; and
- the trendy, hip clothing and hair styles.

---

[1]  MGA's objections included an objection to Mattel's definition of "IDENTIFY." In its initial motion Mattel itself raised the issue that MGA contended the definition of "IDENTIFY" (and other terms) caused Mattel's interrogatories to have multiple distinct subparts, which in turn caused Mattel to exceed the 50 interrogatory limit in this case.  Notwithstanding the fact that it raised this issue, Mattel now contends in its Supplemental Memorandum (for the very first time), that MGA has waived the issue by allegedly failing to raise it before Judge Infante. That contention is wrong.  MGA did not have to repeat an issue that Mattel had already raised with the Discovery Master in order to preserve it.  Indeed, it is Mattel that has waived its right to challenge MGA's objection to the definition of IDENTIFY because Mattel failed to raise this objection in its original Appeal of the Discover Master's order.  *See* discussion at 3:23-4:2, *supra*.

1    The unique and distinctive trade dress of MGA's 'Bratz Petz' line of dolls

2    that Mattel has copied, infringed and diluted is comprised of the following

3    elements:

4        •    the open box packaging with no top cover and with partial side panels

5             that slope from a narrow front panel to a higher back panel;

6        •    the large, humanlike, artfully made-up eyes with long eyelashes that

7             sweep out and away from the outer corner of the eye;

8        •    the disproportionately oversized heads; and

9        •    the trendy human clothing." (Ex. 3 to Corey Decl.)[2]

10

11    In addition, MGA responded that "MGA's trade dress . . . will be the subject

12    of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks

13    to limit the expert testimony MGA may seek to introduce at trial. MGA will

14    identify its experts and make related disclosures in accordance with the Court's

15    orders and applicable rules." *Id.*[3]

16    In response to Interrogatory 49, requesting identification of the Mattel

17    products that infringed MGA's trade dress as identified in the previous response,

18    MGA responded:

19    "Each of Mattel's 'My Scene' fashion dolls copied, infringed and diluted:

20

21

22

23    [2] For photographs depicting these protectable elements, Mattel need look no further that MGA's Complaint, which contains numerous photographs depicting

24    the protectable elements copied, infringed and diluted by Mattel as well as photographs of examples of the Mattel products which copied, infringed or diluted

25    MGA's protectable trade dress. Ex. A to Nogues Decl.

26    [3] MGA notes that this response followed several other responses to similar and/or duplicative Mattel-propounded interrogatories, notably including its response to

27    Mattel Interrogatory 2, *see* Ex. E to Nogues Decl., which provided additional detail on the MGA products and designs copied by Mattel, including specific product

28    descriptions and SKU numbers.

Mitchell Silberberg & Knupp LLP

2198372.1

6

1    •    the unique, unusual geometric-shaped packaging with increased

2         transparency including transparent open sides, and with a 'flying

3         banner' style slogan;

4    •    the proportions and special arrangements of the eyes, noses, mouths

5         and hairlines;

6    •    the shape of the eyes, faces, heads and lips;

7    •    the unique face paint, design, and color scheme depicting facial

8         features;

9    •    the disproportionately oversized heads;

10   •    the oversized shoes; and

11   •    the trendy, hip clothing and hair styles.

12   Each of Mattel's 'My Scene' pet dolls copied, infringed and diluted:

13   •    the large, humanlike, artfully made-up eyes with long eyelashes that

14        sweep out and away from the outer corner of the eye;

15   •    the disproportionately oversized heads;

16   •    the trendy human clothing; and

17   •    the open box packaging with no top cover and with partial side panels

18        that slope from a narrow front panel to a higher back panel." (*Id.*)

19

20        As it did with respect to Interrogatory 48, MGA noted that Interrogatory 49

21   "is premature because MGA's trade dress . . . will be the subject of expert

22   testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit

23   the expert testimony MGA may seek to introduce at trial. MGA will identify its

24   experts and make related disclosures in accordance with the Court's orders and

25   applicable rules." *Id.*

26        Similarly, in response to Interrogatory 50, which requested that MGA

27   identify the facts, documents and witnesses supporting its contention that the trade

Mitchell
Silberberg &
Knupp LLP

2198372.1

28

7

1   dress identified in response to Interrogatory 48 was protectable, MGA responded

2   substantively, notwithstanding its objections:

3            "That the elements of MGA's trade dress in its 'Bratz'

4            and 'Bratz Petz' lines are aesthetic and non-functional is

5            apparent from an examination of the Bratz products and

6            packaging, compared to other leading fashion dolls.  That

7            MGA's packaging was and is inherently distinctive is

8            apparent from a comparison of said packaging to the state

9            of fashion doll packaging when Bratz was introduced in

10           2001, the fact that following the Bratz introduction

11           competitors have copied significant, innovative elements

12           of the Bratz packaging, and the fact that the packaging

13           has won industry awards.  MGA's trade dress has also

14           acquired secondary meaning as a source indicator for

15           'Bratz' as a result of the enormous success of the Bratz

16           dolls in the market, and the marketing and promotional

17           efforts employed by MGA to support Bratz.

18              Documents evidencing the market strength of the

19           Bratz trade dress features include documents evidencing

20           (i) sales totals; (ii) package awards; (iii) package related

21           design patents; (iv) publicity given to the Bratz dolls and

22           their success; and (v) documents evidencing industry

23           awards given to MGA on account of the success of the

24           Bratz dolls and/or their innovative packaging, and the

25           fact that said packaging has been copied and mimicked

26           by competitors.

27

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

1          Persons with knowledge of the packaging issues
2          include Steffan Smith (Director of Structural
3          Engineering/Creative Package Development). Leon
4          Djiguerian (in Product Development), Samir Khare and
5          Aileen Storer (Creative Director of Bratz & Dolls)  Such
6          issues also fall within the scope of expert testimony.
7          Many individuals are knowledgeable of the striking
8          similarities between the protected trade dress of Bratz
9          and features of My Scene Barbie dolls and packaging.
10         These included Carter Bryant and Paula Garcia.
11         That the unique aspects of the Bratz dolls heads/facial
12         features have acquired secondary meaning falls within
13         the scope of expert testimony." *Id.*[4]

14

15   **III.    MGA's Responses Are Adequate**

16         As Judge Infante correctly concluded, MGA's responses adequately answer

17   Interrogatories 48 through 50, particularly since MGA's response to

18   Interrogatory 2 identifies each Bratz product copied or infringed by Mattel by

19   name and SKU number.  See Ex. E to Nogues Decl.  MGA describes particular and

20   itemized common elements of MGA's "Bratz" and Bratz Petz" lines of dolls and

21   packaging it contends Mattel copied.  Response to Interrogatory 48 quoted *supra*.

22   It explains that Mattel's "My Scene" dolls and "My Scene" pet dolls and their

23   packaging are the products and items which improperly copy MGA's trade dress,

24

_____

25   [4]  As with its other responses, MGA also noted that Interrogatory 50 "is premature
     because MGA's trade dress . . . will be the subject of expert testimony at trial.
26   MGA objects to this interrogatory to the extent it seeks to limit the expert
     testimony MGA may seek to introduce at trial.  MGA will identify its experts and
27   make related disclosures in accordance with the Court's orders and applicable
     rules." *Id.*

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

9

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

1  and details the elements of trade dress improperly copied by common elements of

2  those lines of products and their packaging.  Response to Interrogatory 49 quoted

3  *supra*.  It sets out facts supporting its trade dress claims and lists witnesses with

4  knowledge of the relevant facts and identifies documents relevant to the issues by

5  category.  Response to Interrogatory 50 quoted *supra*.  Based on these responses,

6  Mattel knows *precisely* what it is that MGA claims constitutes its protectable trade

7  dress (the listed common elements of the "Bratz" and "Bratz Petz" lines) which

8  Mattel has copied, what Mattel products (Mattel's "My Scene" dolls and doll pets

9  and packaging) improperly copy that trade dress, and facts, witnesses and

10  documents which MGA contends support its position.

11      Not satisfied with these answers, Mattel sought further responses, claiming

12  that MGA had "failed to identified with specificity a single product that MGA

13  alleges was infringed," Mattel's Motion at 24:18-19.  Mattel's assertion misses the

14  point.  MGA's contentions are not limited to "single" products:  MGA contends

15  that the trade dress elements common to *all* Bratz and Bratz pets dolls and

16  packaging were copied and are infringed by *all* of Mattel's "My Scene" dolls and

17  "My Scene" pet dolls and packaging.[5]  That is what MGA said in its responses, and

18  that is a more than adequate answer to the questions asked.[6]

19      In this renewed motion, Mattel apparently seeks to force MGA (i) to list all

20  individual Bratz dolls containing the common protectable elements copied and

21

22  _____

[5] In its supplemental memorandum, Mattel complains about MGA's identification

23  of Mattel's "My Scene" line of dolls as copying, infringing or diluting MGA's trade dress because that line "consist[s] of dozens of dolls."  Mattel Supp. Memo.

24  at 5:16-19.  But MGA responded as it did because all of those dozens of dolls that comprise the My Scene line (and the packaging for such dolls) have common

25  elements that copy, infringe or dilute the common elements of the Bratz line (and packaging) specified in the responses.

26  [6] Mattel's arguments in this regard are also disingenuous.  As Mattel is well aware, MGA has identified each Bratz and Bratz Pet product improperly copied by

27  Mattel specifically and most often by SKU number in response to Interrogatory No. 2.  Ex. E to Nogues Decl.

1     diluted by Mattel, (ii) to list all individual Mattel "My Scene" dolls whose

2     common elements copy, infringe or dilute the common and protectable trade dress

3     of MGA's Bratz dolls, (iii) to state more facts than MGA has already provided that

4     demonstrate its trade dress is protectable, (iv) to identify every person who might

5     know anything at all about those facts, and (v) to compel MGA to review the

6     millions of pages of documents produced in this action to identify each and every

7     document that might possibly support its contentions.  Unquestionably, Mattel's

8     interpretation of its contention interrogatories would impose an undue burden on

9     MGA.  Many courts reject out of hand this type of contention interrogatory as

10     overly broad, unduly burdensome and therefore "inherently improper."[7]  *Clean*

11     *Earth Remediation & Constr. Servs. v. American Intern. Group, Inc.*, 245 F.R.D.

12     137, 141 (S.D.N.Y. 2007) ("[A] number of cases have held that interrogatories

13     seeking identification of all facts supporting a particular allegation are ***inherently***

14     ***improper***.") (emphasis added) (collecting cases).  *See, e.g., Moses v. Halstead*,

15     236 F.R.D. 667, 674 (D. Kan. 2006) ("'[C]ontention interrogatories' are overly

16     broad and unduly burdensome on their face if they seek 'all facts' supporting a

17     claim or defense, such that the answering party is required to provide a narrative

18     account of its case."); *Grynberg v. Total S.A.*, 2006 WL 1186836, at *6-*7 (D.

19     Colo. May 3, 2006).

20         Those courts that permit the type of contention interrogatories propounded

21     by Mattel have held that the duty to respond is limited to an identification of the

22     "'principal or material' facts which support" the contention.  *Moses*, 236 F.R.D.

23     at 674 (quoting *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM-DJW, 2005 WL

24

25     ─────────────────
       [7]  Judge Larson specifically noted, in rejecting  Mattel's appeal from another of

26     Judge Infante's orders denying Mattel's motion to compel the production of documents, the use of the phrase "all documents that refer or relate to" a particular

27     topic is "that fraught with the possibility that the request will be overly broad and unduly burdensome."  *See* 5/12/08 Order Ruling on Discovery Motions, Ex.  to Nogues Decl.

Mitchell
Silberberg &
Knupp LLP

2198372.1

28

1   3756670 at *5 (D. Kan. Feb. 3, 2005)).  *See also Grynberg*, 2006 WL 1186836,

2   at *7 ("It is proper, of course, to inquire about the material facts supporting specific

3   factual matters raised in the pleadings."); *IBP, Inc. v. Mercantile Bank of Topeka*,

4   179 F.R.D. 316, 321 (D. Kan. 1998) ("An interrogatory may reasonably ask for the

5   material or principal facts which support a contention.").  As one court explained,

6   "to require specifically 'each and every' fact and application of law to fact . . .

7   would too often require a laborious, time-consuming analysis, search, and

8   description of incidental, secondary, and perhaps irrelevant and trivial details." *Id.*

9   at 321.  Courts recognize that contention interrogatories should not require the

10  responding party to lay out a narrative account of every factual detail supporting

11  their case:

12          Interrogatories should not require the answering party to
13          provide a narrative account of its case.  They should not
            duplicate initial disclosures.  The court will generally
14          find them overly broad and unduly burdensome on their
            face to the extent they ask for every fact which supports
15          identified allegations or defenses.  Interrogatories may,
            however, properly ask for the principal or material facts
16          which support an allegation or defense.

17  *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998) (citations

18  and internal quotation marks omitted).[8]

19  ───────────────────────────────

20  [8] The cases cited by Mattel do not support its position.  For example, in *Auto
    Meter, Products, Inc. v. Maxima Technologies & Systems, LLC*, 2006 WL 3253636
21  (N.D. Ill. Nov. 6, 2006), the answering party was forced to respond to "all facts"
    interrogatories only after it added new contentions following the close of fact
22  discovery. *Id.* at *2. *Tennison v. San Francisco*, 226 F.R.D. 615 (N.D. Cal. 2005),
    is likewise inapposite because the interrogatory responses merely referred to
23  various pleadings and papers in response to a request for facts supporting claims,
    leaving the court to conclude that further responses were necessary because the
24  defendant "should not have to guess" the plaintiff's position. *Id.* at 618.  As
    discussed below, MGA has not simply referred to a mass of pleadings or
25  documents, but has set forth the principal facts supporting its contentions in this
    action.  The court in *Audiotext Communications Network v. US Telecom, Inc.*, 1995
26  WL 625953 (D. Kansas Oct. 5, 1995), rejected an argument that "all facts"
    interrogatories are "necessarily improper," but found such interrogatories to be
27  "unnecessary and unreasonable" where they require identification of thousands of
    company employees "no matter how small or insignificant (their) involvement" in
28  the events at issue in the litigation. *Id.* at *1-* 2.  Indeed, more recent decisions
                                                                    (...continued)

Mitchell
Silberberg &
Knupp LLP

2198372.1

1         MGA has identified in its Response to Interrogatory No. 48 the common

2   elements of all Bratz dolls which it claims are its protectable trade dress that Mattel

3   copied, infringed or diluted.  It has identified in its response to Interrogatory 49 the

4   common characteristics of all Mattel "My Scene" dolls and pets which copy,

5   infringe or dilute MGA's protectable trade dress .  Demanding that MGA provide

6   (another) list of all dolls that comprise the Bratz line in response to

7   Interrogatory 48 is burdensome and unnecessary, particularly since MGA already

8   has provided such a listing in response to Interrogatory No. 2.  Demanding that

9   MGA identify every single "My Scene" doll by name or SKU number, when ***all***

10  "My Scene" dolls share the common characteristics that copy, infringe and dilute

---

12  (…continued)

13  from the same district court reaffirmed that "'[c]ontention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such-that the answering party is required to provide a narrative

14  account of its case." *Moses*, 236 F.R.D. at 674; *see Hiskett*, 180 F.R.D. at 405 ("Interrogatories should not require the answering party to provide a narrative

15  account of its case.").

16  The other authorities cited by Mattel for this proposition fare no better.  *See Twigg*

17  *v. Pilgrim's Pride Corp.*, 2007 WL 676208, at *11-12 (N.D. W. Va. Mar. 1, 2007) (deciding for purposes of fee motion that objections were not substantially justified; the court "emphasize[d]" that its discussion "is not about how the Court

18  would have ruled had specific objections been presented"); *Williams v The Art Inst. Of Atlanta*, 2006 WL 3694649, at *6-*7 (N.D. Ga. Sept. 1, 2006) (party provided

19  no substantive responses to contention interrogatories served two weeks before discovery cut-off even though no discovery was needed to respond); *Zapata v.*

20  *IBP, Inc.*, 1997 WL 122588, at *1 (D. Kan. 1997) (responding party required to supplement where initial response did not respond to request; interrogatory sought

21  "factual basis" for affirmative defenses rather than "all facts" or "each and every fact"); *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 388 (N.D. Ill. 1990)

22  (same); *Pension Benefit Guaranty Corp. v. Ziffer*, 1994 WL 11654, at *1 (N.D. Ill. Jan. 6, 1994) (authorizing seven "all facts" interrogatories but noting that in other

23  circumstances such interrogatories "may be vague and… open-ended"); *King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) (court ordered response to

24  interrogatory requiring plaintiff to "specify in detail how the provisions of [a] collective bargaining agreement are applied,"; not a contention or all

25  facts/documents/witnesses interrogatory); *Dang v. Cross*, 2002 WL 432197 at *4 (C.D. Cal. March 18, 2002) (while district court affirmed magistrate's ruling as not

26  "manifestly wrong," it noted that "reasonable people (or Magistrate Judges) might disagree about the burden imposed by these interrogatories"); *Am. Oil Co. v. Penn.*

27  *Ptero. Co.*, 23 F.R.D. 680, 683 (D.R.I. 1959) (interrogatories concerning plaintiff's damages and calculations, not all facts/witnesses/documents).

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

---

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

1   MGA's trade dress, is unnecessarily burdensome and harassing, particularly when

2   Mattel knows the names and SKU numbers of its own products far better than

3   MGA.

4        Similarly, as the Phase 1 Discovery Master found, the MGA Parties'

5   responses to Interrogatories 48 through 50 provide the "principal facts supporting

6   their contention that their trade dress is protectable under applicable trade dress

7   legal principles, including that the trade dress is aesthetic and non-functional,

8   inherently distinctive, and has acquired a secondary meaning." Ex. B to Nogues

9   Decl. at 56:1-11.  In its newly-filed supplemental memorandum, Mattel raises for

10  the first time an argument that MGA's recitation of the facts supporting trade dress

11  protectability consists of nothing more than "conclusory, circular arguments" and

12  "legal conclusions" and do not set out the facts sought by Mattel.  Mattel Supp.

13  Memo. at 5-6 and n.16.  To begin with, by failing to raise this issue in its original

14  motion or in its initial Appeal of Judge Infante's ruling, Mattel has waived this

15  argument. *In re Veeco Instruments, Inc. Securities Litigation*, 2007 WL 724555 at

16  *11 (S.D.N.Y. March 9, 2007) ("Conversely, if lead plaintiff means to suggest that

17  it has an especially acute need for those documents sought in its original motion to

18  compel that related to internal controls, it failed to raise the argument before [the

19  Magistrate Judge] and has thereby waived it.")

20       As important, Mattel is just plain wrong.  The facts supporting MGA's

21  claims that its trade dress is protectable are set out in its responses taken as a whole

22  and not truncated by Mattel's selective quotations in its supplemental

23  memorandum.  MGA certainly did state that the identified trade dress elements are

24  aesthetic and non-functional, but noted that "is apparent from an examination of

25  the Bratz products and packaging, compared to other leading fashion dolls." Ex. 3

26  to Corey Decl. at 46:27-47:1.  MGA went on to point out other facts supporting its

27  position: a comparison of the Bratz packaging to "the state of fashion doll

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

1   packaging when Bratz was introduced," industry awards received for the

2   packaging, and secondary meaning acquired as a result of marketing and

3   promotional efforts and the enormous success of the Bratz line. *Id.* at 47:1-15  It

4   identified supporting documents including package awards, package related design

5   patents and other industry awards. *Id.*  It identified persons who knew about

6   packaging matters and similarities between Bratz and My Scene dolls (many of

7   which are obvious from just looking at the two lines[9]). *Id.* at 47:16-22.

8       A review of MGA's answers and the authorities cited above resulted in

9   Judge Infante denying Mattel's initial motion to compel as to Interrogatories 48

10  through 50.  While MGA recognizes that the Court has directed the Phase 2

11  Discovery Master to address Judge Infante's ruling de novo, MGA submits that

12  Judge Infante got it right when he denied Mattel's motion and held that "[t]he

13  MGA parties are in substantial compliance with Rule 33," have "identified

14  numerous elements of the trade dress they contend Mattel has infringed," have

15  "identif[ied] Mattel's "My Scene" fashion dolls and pet dolls as the Mattel

16  products that infringe their trade dress," and have "set forth the principal facts

17  supporting their contention that their trade dress is protectable under applicable

18  trade dress legal principles, including that the trade dress is aesthetic and non-

19  functional, inherently distinctive, and has acquired secondary meaning." Ex. B to

20  Nogues Decl. at 56:1-11.

21      To be sure, MGA noted that the subjects under inquiry would be matters for

22  expert testimony, and reserved its right to supplement its responses to account for

23  expert testimony at an appropriate juncture.[10]  But as Judge Infante correctly noted,

24

25  [9] *See* photographs incorporated in MGA's Complaint.  Ex. A to Nogues Decl.

26  [10] Mattel asserts that MGA "agreed to supplement their responses in Phase 2."
    Mattel Supp. Memo. at 2:17-18.  Once again, Mattel has mischaracterized MGA's
27  statements.  MGA did no more than reserve the right to supplement its responses as
    discovery progressed (exactly as Mattel has done in its own discovery responses)
    and specifically reserved the right to supplement with any applicable expert
28                                                                      (...continued)

Mitchell
Silberberg &
Knupp LLP

2198372.1

1   where, as here, "Mattel does not contest that the identification of the elements and

2   products subject to trade dress infringement will be a subject of expert testimony,"

3   a reservation of rights to supplement with expert testimony at the appropriate time

4   was appropriate. *Id.*

5       For all the reasons set forth above, the Discovery Master should once again

6   deny Mattel's motion to compel further responses to Interrogatories 48 through 50.

7

8   **IV.   MATTEL'S CONTENTIONS REGARDING OBJECTIONS OVER**

9   **WHICH MGA ANSWERED HAVE BEEN WAIVED AND ARE**

10  **WITHOUT MERIT**

11      Not surprisingly, Mattel has not attached a copy of its Seventh Set of

12  Interrogatories to any of the original or supplemental papers filed in support of this

13  Motion.  That is presumably so the Discovery Master does not see that the Seventh

14  Set consists of a single page containing three interrogatories, prefaced by *four*

15  pages of convoluted "definitions" and a fifth page of "instructions," all of which

16  one must refer to in order to know what information is sought, and all of which

17  render the Interrogatories impermissibly burdensome and compound. *See* Ex. G to

18  Nogues Decl.

19      As discussed below, Mattel has waived its right to challenge MGA's

20  objections to these overreaching definitions, but even without regard to waiver,

21  MGA's objections well-founded and entirely proper.

22      **A.   Mattel Has Waived Its Belated Arguments Regarding MGA's**

23      **Objections**

24      Mattel's Supplemental Memorandum filed April 3, 2009, raises arguments

25  that Mattel did not raise in its Appeal of the February 15, 2008 Order respecting

26  ───────────

27  (...continued)
    testimony during expert discovery. *See* Ex. 4 to Corey 4/3/09 Decl. at 84:5-8, and
    84:20-85:2.

28

1    Interrogatories 48 through 50.  While the Court directed the Discovery Master to

2    consider Mattel's Renewed Appeal as if presented to him in the first instance and

3    without regard to the clearly erroneous/contrary to law standard which would have

4    applied had the Court heard the Renewed Appeal, it did not give Mattel free rein to

5    make objections to the February 15, 2008 Order that were not made or preserved

6    when Mattel filed its original Appeal in 2008.

7        That Mattel is now raising new (and unpreserved) issues is clear from a

8    review of its original Appeal of Judge Infante's rulings on Interrogatories 48

9    through 50.  Mattel's original Appeal to that part of Judge Infante's order

10   comprised approximately one page, and asserted the following:  (1) the MGA

11   Parties had only provided "general categories of allegedly protected trade dress and

12   allegedly infringing products; (2) the MGA parties failed to identify all the

13   "particular trade dress they claim is at issue or all the particular Mattel products

14   they claim infringed that trade dress;" (3) MGA's representation that it would

15   supplement its responses to these interrogatories in the course of Phase 2 discovery

16   was an admission that the responses were inadequate; (4) in light of the putative

17   "admission," Judge Infante's order finding the responses in substantial compliance

18   was erroneous; and (5) without "the identity of specific trade dress" MGA

19   contends was infringed and "specific Mattel products" which MGA contends

20   infringed that trade dress, Mattel could not prepare its defense.  Ex. F to Nogues

21   Decl. at 116-17.

22       Mattel did not address any of the MGA's objections to Interrogatories 48

23   through 50 in its original Appeal.[11]  Yet that is the principal focus of its

24

25   [11] Mattel generically addressed objections that some interrogatories were
     overbroad, unduly burdensome, oppressive or sought privileged information in its
26   original motion to compel.  But none of Mattel's assertions about the propriety of
     these objections was specifically addressed to Interrogatories 48 through 50.
27   Further, Mattel's original moving papers nowhere mentioned MGA's objections to
     those interrogatories (or many others) on grounds that they were compound or
28   sought information already produced.  And, none of the objections addressed

                                                                    (...continued)

Mitchell
Silberberg &
Knupp LLP

2198372.1

1  supplemental memorandum, occupying more than half of the argument.  Because it

2  failed to preserve any issues relating to MGA's objections when it filed its 2008

3  Appeal, Mattel has waived any right to now challenge those objections.. *In re*

4  *Veeco Instruments, Inc.* 2007 WL 724555 at *11.  Accordingly, the Discovery

5  Master should disregard Part II of Mattel's Supplemental Memorandum.

6        **B.**   **MGA's Objections Are Valid, and, In Any Event, MGA Has**

7             **Provided More Than Sufficient Answers Notwithstanding Those**

8             **Objections**

9          **1.**    **Privilege Objections**

10        MGA's privilege objections were made to preserve MGA's ability to protect

11  privileged documents and information in the face of broad-ranging interrogatories

12  that, among other things, purport to require MGA to identify all documents that

13  "refer or relate to" various matters.  MGA is fully aware of its obligation to

14  provide privilege logs when privileged documents and information are responsive

15  to discovery, and has provided such logs if appropriate.  But given some of the

16  assertions and arguments made in this case to date, it cautiously and properly made

17  it clear that it was not waiving the attorney-client privilege and would not produce

18  any privileged information or documents responsive to Mattel's requests.

19        In any event, MGA answered each of the interrogatories in question.

20          **2.**    **Compound Objections**

21        In its Supplemental Memorandum, Mattel argues that the interrogatories at

22  issue are not compound because each refers to "one common theme."[12]  First, that

23

24  (...continued)
25  generically in Mattel's original motion was addressed in Mattel's Appeal of Judge
Infante's ruling.

26  [12]  None of Mattel's memoranda in support of its motion to compel, its separate
statement filed in support of that motion, or its original Appeal of the Phase 1
27  Discovery Master's ruling addressed the "compound" and subpart objections made
in MGA's responses to Interrogatories 48 through 50.

28

1  alone does not excuse the compound nature of the interrogatories.  Second, that

2  assertion is not correct.  Each of Interrogatories 48 through 50 asks about trade

3  dress "copied, infringed or diluted."  "Infringement" and "dilution" refer to

4  separate and distinct claims under federal law.

5  Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), governs trade

6  dress infringement--adoption of similar trademarks or trade dress to mislead

7  consumers as to the origin of the products bearing those trademarks or containing

8  that trade dress.[13]  "A party's adoption of a trade dress confusingly similar to

9  another's may be actionable under § 43(a). A three part test has evolved for

10  evaluating whether a trade dress is protected under this statute: (1) whether the

11  trade dress is inherently distinctive or has acquired distinctiveness through

12  secondary meaning; (2) whether the trade dress is not functional; and (3) whether

13  there is any likelihood of confusion between a party's trade dress and an alleged

14  infringer's." *General Motors Corp. v. Let's Make A Deal*, 223 F.Supp.2d 1183,

15  1195 (D.Nev. 1998). *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763,

16  769-70 (1992) (describing these same three elements for a trade dress infringement

17  action).  The gravamen of a Lanham Act trademark or trade name infringement

18  claim is consumer confusion:

19  "Traditional trademark infringement law is a part of the

20  broader law of unfair competition…, that has its sources

21  in English common law, and was largely codified in the

22  Trademark Act of 1946 (Lanham Act).  That law broadly

23  prohibits uses of trademarks, trade names, and trade dress

24  that are likely to cause confusion about the source of a

25  product or service. Infringement law protects consumers

26

27  [13]  The terminology "trade dress infringement" is used only in the context of a
Section 43(a) claim.  *See* 15 U.S.C. § 1125(a)(3).

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

19

1         from being misled by the use of infringing marks and

2         also protects producers from unfair practices by an

3         "imitating competitor...." *Moseley v. V Secret*

4         *Catalogue, Inc.*, 537 U.S. 418, 428 (2003).

5         By contrast, the Trademark Dilution Revision Act (TDRA), 15 U.S.C.

6  1125(c), governs trademark or trade dress dilution claims. "Dilution is 'the

7  lessening of the capacity of a famous mark to identify and distinguish goods or

8  services, regardless of the presence or absence of (1) competition between the

9  owner of the famous mark and other parties, or (2) likelihood of confusion,

10  mistake, or deception....' As the Supreme Court explained, the purpose of the

11  FTDA[14] 'is to protect famous trademarks from subsequent uses that blur the

12  distinctiveness of the mark or tarnish or disparage it, even in the absence of a

13  likelihood of confusion.'" *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d

14  1002, 1011 (9th Cir. 2004). "Unlike traditional infringement law, the prohibitions

15  against trademark dilution are not the product of common-law development, and

16  are not motivated by an interest in protecting consumers." *Moseley v. V Secret*

17  *Catalogue, Inc.*, 537 U.S. at 429.

18         Thus, each of Interrogatories 48 through 50 asks about at least two different

19  types of claims asserted by MGA, trade dress infringement claims and trade dress

20  dilution claims. These claims are separately stated in the first (infringement) and

21  third (dilution) claims for relief in MGA's complaint.

22         The compound nature of the interrogatories is exacerbated by the many

23  separate subparts created by Mattel's "definitions" of terms such as IDENTITY

24  and IDENTIFY.[15]  For example, Mattel's definition of IDENTIFY in the context

25

26  [14] The Federal Trademark Dilution Act (FTDA) is the predecessor of the TDRA.

27  [15] Even though Mattel's supplemental memorandum raises the issue of MGA's "compound" objections to Interrogatories 48 through 50 for the very first time, Mattel contends that MGA has waived its right to argue about the propriety of

28                                                       (...continued)

Mitchell
Silberberg &
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

1  of "protectability of trade secrets"[16] purports to require (a) all facts that support

2  MGA's contention that the trade dress is inherently distinctive or has acquired

3  secondary meaning and that such trade dress is famous, (b) the date MGA contends

4  that the trade dress acquired secondary meaning or became famous, (c) all facts

5  supporting a contention that the trade dress is not functional, and (d) "if YOU are

6  relying on advertising to establish secondary meaning or fame, the dollar amounts,

7  by year, spent by YOU or anyone acting on YOUR behalf on advertising that

8  features such trade dress." Ex. G to Nogues Decl. at 5 (definition 10(f)); Ex. 3 to

9  Corey Decl. at 45:24-46:8 (MGA's objection to definition of IDENTIFY).  This

10  definition not only uses terminology applicable to the distinct legal concepts of

11  trade dress infringement ("inherently distinctive" and "secondary meaning") and

12  trade dress dilution ("famous"), it asks for various discrete kinds of information

13  ranging from facts regarding those concepts to dollar amounts spent on advertising.

14  Mattel's abuse of specialized definitions that purport to vary depending upon

15  context makes the interrogatories in question ever more compound and adds

16  additional subparts.

17          Thus, to the extent the Discovery Referee finds that Mattel has not waived

18  its right to challenge MGA's objections, he should rule that Mattel's

19  interrogatories are improperly compound and contain multiple subparts.

20

21  (…continued)
22  those objections by failing to make such an argument in opposition to Mattel's
   original motion to compel or Appeal.  Mattel's argument that MGA should have
23  made arguments about objections that Mattel did not challenge is patently
   specious.  Certainly, none of the cases cited by Mattel for its "waiver" argument
   supports such a principle.  And MGA most certainly *did* address its objections that
24  various "definitions" used by Mattel in its interrogatories had the impact of
   creating discrete subparts that put Mattel over the 50 interrogatory limit. *See, e.g.,*
25  Ex. 4 to Corey Decl. at 71:17-72:22.  MGA has not waived any of its objections or
   arguments.
26
   [16] Mattel used varying definitions of the same words dependent on "context." *See*
27  Ex. G to Nogues Decl. at 124-28 (definitions from Mattel's Seventh Set of
   Interrogatories).

Mitchell
Silberberg &
Knupp LLP

2198372.1

28

1    **3.      Objections that Information Has Already Been Produced or**

2    **Is More Readily Accessible to Mattel**

3    Mattel is dissatisfied with MGA's identification of common protectable

4    elements found in all Bratz dolls and Bratz Pets, and demands that MGA list every

5    MGA product whose trade dress was infringed or diluted by Mattel.  Mattel has

6    already provided such a list in its response to Interrogatory 2.  Ex. E to Nogues

7    Decl.  There is no good reason to compel MGA to repeatedly provide the same

8    information in response to duplicative interrogatories.  The "already provided"

9    objection is very well taken.

10   MGA's objection that Mattel seeks to have MGA provide information that is

11   more readily available to Mattel from other sources is particularly meritless in the

12   context of Interrogatories 48 through 50.  Among other things, Mattel demands

13   that MGA list every *Mattel* product in the My Scene lines and the SKU numbers

14   *Mattel* has assigned to them.  That is information more readily (if not exclusively)

15   available to Mattel from its own records.[17]  There is no rational basis for

16   demanding that MGA be put to the undue burden of attempting to compile

17   information Mattel already has, and Mattel will learn nothing of significance from

18   such an exercise.[18]

19   **4.      Expert Analysis**

20   MGA did not refuse to answer any interrogatory on the ground that it would

21   be the subject of expert testimony.  MGA simply noted that "MGA's trade dress

22   (and other legal concepts that may be relevant) will be the subject of expert

23   testimony at trial," objected to the interrogatories "to the extent [they seek] to limit

24

25   [17] Mattel itself has asserted this objection in response to interrogatories.  Ex. J at 182:8-11.

26   [18] Once again, Mattel never raised this issue with respect to Interrogatories 48 through 50 before submitting its supplemental memorandum.  Mattel has waived

27   its right to argue that these objections should be overruled.

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

1    the expert testimony that MGA may seek to introduce," stated that it would

2    identify its experts and make required disclosures as required by court order and

3    applicable rules, and said it would supplement its responses at the appropriate

4    juncture to account for any relevant expert testimony.  *See, e.g.,* Supp. Responses

5    to Interrogatories 48, 49 and 50, Ex. 3 to Corey 4/3/09 Decl. at 37, 41-42 46; Ex. 4

6    to Corey 4/3/09 Decl. at 84.  As the Judge Infante held, given that Mattel does not

7    dispute the fact that trade dress issues will be the subject of expert testimony, such

8    a reservation of the right to rely on expert testimony was entirely proper.  Ex. B to

9    Nogues Decl. at 56.  Indeed, Mattel has done much the same thing in its responses

10   to MGA's discovery.  *See* Nogues Decl., Ex. I at 163:28-164:3, 167:1-8; Ex. J

11   at 172:21-23, 173:18-22, 181:8-10, 182:8-11; Ex. K at 184:18-24, 186:5-8, 187:12-

12   15, 189:21-24; and Ex. L at 193:3-6, 195:1-3, 198:1-3, 199:1-3.[19]

13

14        **5.    Undue Burden**

15        MGA objected to Interrogatory 50 as "oppressive, harassing and unduly

16   burdensome insofar as it requires MGA to compile detailed financial reports and

17   information not reasonably available."  Mattel never challenged this objection in

18   the motion before Judge Infante or in its Appeal of Judge Infante's February 15,

19   2005 Order, and has waived its right to do so now.

20        In any event, the objection is well-taken.  It was directed at Mattel's abusive

21   definitions that include, within the convoluted, page and a half definition of

22   _____

23   [19] For example, in responding to MGA's second set of requests for admission, "Mattel object[ed] to the Requests on the grounds that they are premature and seek to circumvent the expert disclosure provisions of the <u>Federal</u> and <u>Local Rules</u>.

24   Mattel has not yet computed or calculated its damages and has not yet engaged any testifying expert to compute or calculate its damages or on any other matter

25   contained within the Requests that might be the subject of expert testimony. Matter will disclose such testimony in the manner, and at the time, provided for by

26   the Federal and Local Rules and the Court's Orders." Ex. K to Nogues Decl. at 184:18-24 (general objection 10) (underlining in original). This language is

27   nearly identical to the objections which Mattel belatedly challenges in this motion. *See* note 4 *supra*.

Mitchell
Silberberg &
Knupp LLP

2198372.1

28

23

1  IDENTIFY, a requirement that MGA provide information on the amounts spent to
2  advertise products containing its trade dress, apparently on a product by product,
3  year by year basis.  Mattel's argument that MGA "failed" to specify the burden
4  involved" is untrue.  MGA specifically objected that the burden involved
5  "compiling detailed financial reports and information not readily available."
6  Mattel's argument that MGA failed to "submit proof" of the "substantiality" of the
7  burden is baseless.  (Supp. Brief at 13.)  "Proof" was unnecessary (but was clearly
8  apparent from the interrogatory itself) because Mattel did not raise this issue in its
9  Motion to Compel.

10

11                              **CONCLUSION**

12         For all the reasons set forth above and in MGA's prior briefs relating to this
13  matter, Mattel's Renewed Objections to the Discovery Master's February 15, 2008
14  Order should be overruled.  Judge Infante's rulings on Interrogatories 48 through
15  50 were and are correct, and should not be disturbed.

16

17  DATED:  April 15, 2009            RUSSELL J. FRACKMAN
                                      PATRICIA H. BENSON
18                                    MITCHELL SILBERBERG & KNUPP LLP

19

20                                    By::_____/s/_____.
21                                       Patricia H. Benson
                                         Attorneys for Defendants
22                                       MGA Entertainment, Inc., MGA
                                         Entertainment HK, Ltd., MGAE De
23                                       Mexico, S.R.L. De C.V., and Isaac Larian

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER