1  PATRICIA L. GLASER (Bar No. 055668)
   pglaser@glaserweil.com
2  GLASER WEIL FINK JACOBS & SHAPIRO
   10250 Constellation Blvd., 19th Floor
3  Los Angeles, California 90067
   Telephone: (310) 553-3000
4  Facsimile: (310) 557-9815

5  RUSSELL J. FRACKMAN (Bar No. 49087)
   rjf@msk.com
6  PATRICIA H. BENSON (Bar No. 60565)
   phb@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
8  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
9  Facsimile: (310) 312-3100

10 Attorneys for Defendants
   MGA Entertainment, Inc., MGA Entertainment HK, Ltd.,
11 MGAE De Mexico, S.R.L. De C.V., and Isaac Larian

12              UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

| | |
|---|---|
| 14 CARTER BRYANT, an individual, | CASE NO.  CV 04-9049 SGL (RNBx) |
| 15                Plaintiff, | Consolidated with<br>Case No.  CV 04-09059<br>Case No.  CV 05-02727 |
| 16          v. | |
| 17 MATTEL, INC., a Delaware<br>18 corporation, | **DISCOVERY MATTER**<br>**[TO BE HEARD BY DISCOVERY**<br>**MASTER ROBERT O'BRIEN**<br>**PURSUANT TO ORDER OF** |
| 19          Defendant. | **JANUARY 6, 2009]**<br>**[PUBLIC REDACTED]** |
| 20 AND CONSOLIDATED CASES | **DECLARATION OF JEAN PIERRE**<br>**NOGUES IN SUPPORT OF MGA'S** |
| 21 | **SUPPLEMENTAL OPP. TO**<br>**MATTEL'S RENEWED MOTION** |
| 22 | **OBJECTING TO DIS. MASTER'S**<br>**FEBRUARY 15, 2008 ORDER** |
| 23 | **[EXS. E AND L FILED UNDER**<br>**SEAL]** |
| 24 | **[SUPPLEMENTAL OPP. FILED**<br>**CONCURRENTLY HEREWITH]** |
| 25 | Hearing Date:        April, 27, 2009<br>Time:              10:00 a.m. |
| 26 | Place:             Arent Fox LLP<br>**Phase 2** |
| 27 | Dis. Cut-off:       Dec. 11, 2009<br>Pre-Trial Conf.:    March 1, 2010 |
| 28 | Trial Date:        March 23, 2010 |

Mitchell
Silberberg &
Knupp LLP

2196707.1

1    ## DECLARATION OF JEAN PIERRE NOGUES

2

3    I, JEAN PIERRE NOGUES, declare:

4

5    1.    I am an attorney at law duly licensed to practice law in the State of

6    California and before this Court. I am, through my professional corporation, a

7    partner in the law firm of Mitchell Silberberg & Knupp LLP, attorneys of record

8    for MGA Parties in this matter and have personal knowledge of the following facts

9    and, if called and sworn as a witness, could and would competently testify thereto.

10

11    2.    Appended hereto as Exhibit A is a copy of the complaint of MGA

12    Entertainment Inc. filed herein.

13

14    3.    Appended hereto as Exhibit B is a copy of the Phase 1 Discovery

15    Master's February 15, 2008 order (the "February 2008 Order")addressing Mattel's

16    motion to compel further responses to various discovery requests, including

17    Interrogatories 48 through 50.

18

19    4.    Appended hereto as Exhibit C is a copy of the Court's March 31, 2008

20    Order affirming the February Order in most respects, and declining to rule with

21    respect to Mattel's objections to Interrogatories 48 through 50.

22

23    5.    Appended hereto as Exhibit D is a copy of the Court's March 12,

24    2009 Order referring Mattel's renewed objections to the February 2008 Order to

25    the Phase 2 Discovery Master.

26

27    6.    Appended hereto as Exhibit E is a copy of MGA's Supplemental

28    Response to Interrogatory 2 propounded by Mattel herein.

Mitchell
Silberberg &
Knupp LLP
2196707.1

2

1    7.    Appended hereto as Exhibit F is a copy of Mattel's original objections

2    to and appeal from the February 2008 Order.

3

4    8.    Appended hereto as Exhibit G is a copy of Mattel's Seventh Set of

5    Interrogatories to the MGA Parties.

6

7    9.    Appended hereto as Exhibit H is a copy of Mattel's renewed appeal

8    from the February 2008 Order.

9

10    10.    Appended hereto as Exhibit I is a copy of excerpts of Plaintiff Mattel

11    Inc.'s Objections and Responses to Defendant's First Set of Interrogatories dated

12    July 16, 2004.

13

14    11.    Appended hereto as Exhibit J is a copy of excerpts of Plaintiff Mattel

15    Inc.'s Objections and Supplemental Responses to Defendant's First Set of

16    Interrogatories (Interrogatory Nos. 1-3, 6, 10-13 and 16) dated May 16, 2005.

17

18    12.    Appended hereto as Exhibit K is a copy of excerpts of Mattel Inc.'s

19    Amended and Supplemental Responses to MGA Entertainment Inc.'s Second Set

20    of Requests for Admissions dated January 5, 2006.

21

22

23

24

25

26

27

Mitchell
Silberberg &  28
Knupp LLP
2196707.1

3

1   13. Appended hereto as Exhibit L is a copy of the Second Supplemental

2 Response to MGA's First Set of Interrogatories to Mattel dated May 23, 2008.

3

4   I declare under penalty of perjury under the laws of the United States of

5 America that the foregoing is true and correct.

6

7   Executed this 15th day of April, 2009, at Los Angeles, California.

8

9

10                   _____

11                     Jean Pierre Nogues

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2196707.1

4

DECLARATION OF JEAN PIERRE NOGUES IN SUPPORT OF MGA'S SUPPLEMENTAL OPPOSITION

# EXHIBIT A

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT A

# TO DECLARATION OF

# JEAN PIERRE NOGUES

FILED

1  DALE M. CENDALI
   *(of counsel, not admitted in California)*
2  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. #193126)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
5  Facsimile:  (213) 430-6407
   email:    dtorres@omm.com
6
   PATRICIA GLASER (S.B. # 55668)
7  CHRISTENSEN, MILLER, FINK,
   JACOBS, GLASER, WEIL &
8  SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA  90067
   Telephone:  (310) 553-3000
10 Facsimile:  (310) 556-2920

11 Attorneys for Plaintiff
   MGA Entertainment, Inc.
12

13

14              UNITED STATES DISTRICT COURT

15           CENTRAL DISTRICT OF CALIFORNIA

                        CV 05-02727 CBM (RZx)

16  MGA ENTERTAINMENT, INC.,        Case No.

17                   Plaintiff,     **COMPLAINT FOR FALSE
                                    DESIGNATION OF ORIGIN,**
18        v.                        **AFFILIATION, ASSOCIATION OR
                                    SPONSORSHIP (15 U.S.C. § 1125**
19  MATTEL, INC., a Delaware        **(a)); UNFAIR COMPETITION (15
    Corporation, and DOES 1-10,**   **U.S.C. § 1125 (a), Cal. Bus. & Prof.
20                                   Code § 17200 et seq. and California
                     Defendants.    Common Law); DILUTION (15**
21                                  **U.S.C. § 1125 (c), Cal. Bus. & Prof
                                    Code § 14330 and California Common
22                                  Law); AND UNJUST ENRICHMENT**

23                                  **DEMAND FOR JURY TRIAL**

24

25

26

27

28
                                    **EXHIBIT: A**
                                    **PAGE:  05**

1    Plaintiff MGA Entertainment, Inc. for its complaint against

2    Defendants Mattel, Inc. and DOES 1-10 alleges and avers as follows:

3

4                            **PARTIES**

5    1.    Plaintiff MGA Entertainment, Inc. ("MGA") is a California

6    corporation organized and existing under the laws of the State of California, with a

7    principal place of business in Van Nuys, California.

8    2.    MGA is informed and believes, and based thereon alleges, that

9    Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with a principal place

10   of business in El Segundo, California.

11   3.    MGA is ignorant of the true names and capacities of the defendants

12   sued herein under the fictitious names DOES 1 through 10 inclusive. MGA will

13   seek leave of court to amend this complaint to allege such names and capacities

14   when they are ascertained. MGA is informed and believes, and based thereon

15   alleges, that each of the fictitiously named DOE defendants is responsible in some

16   manner for the wrongful conduct alleged herein. MGA further alleges that each

17   defendant acted in concert with, as agent or representative for, or at the request or

18   on behalf of another or Mattel. Each charging allegation contained herein is,

19   therefore, also hereby alleged against each fictitiously named DOE defendant.

20

21                    **JURISDICTION AND VENUE**

22   4.    Through this action MGA asserts claims against Mattel arising under

23   the Lanham Act, 15 U.S.C. Sections 1125 (a) and (c), California Business and

24   Professions Code Sections 17200 *et seq.*, California Business and Professions Code

25   Section 14330 and California common law. This Court has original subject matter

26   jurisdiction over MGA's federal claims pursuant to 15 U.S.C. Sections 1116 and

27   1121, 28 U.S.C. Section 1338(a), and 28 U.S.C. Section 1331, and supplemental

28

1

1    subject matter jurisdiction over MGA's state law claims pursuant to 28 U.S.C.

2    Section 1367(a).

3       5.     This Court has specific personal jurisdiction over Mattel, as it has

4    purposefully committed, within the State of California, the acts from which these

5    claims arise and/or has committed tortious acts outside California, knowing and

6    intending that such acts would cause injury to MGA within the state. The Court

7    also has general personal jurisdiction over Mattel, as it conducts continuous,

8    systematic and routine business within the State of California and the County of

9    Los Angeles.

10      6.     Venue is proper in the United States District Court for the Central

11    District of California pursuant to 28 U.S.C. Sections 1391(b) and 1391(c).

12

13                 **FACTUAL BACKGROUND**

14      7.     MGA seeks by this action to halt Mattel's habitual and unfair tactics of

15    competition-by-intimidation and serial copycatting of MGA's products, which

16    Mattel has used in an unbridled effort to cause confusion in the market place and

17    eliminate MGA as a competitor in the toy and fashion doll market long dominated

18    and controlled by Mattel.

19      8.     MGA is a privately-held company in the San Fernando Valley that

20    began in 1979 as a small consumer electronics business. In 1987, the company

21    made its first foray into the toy business when it secured rights to market handheld

22    LCD games featuring licensed Nintendo® characters. Building on that small

23    success, the company began marketing products for popular licensed properties

24    such as the "Power Rangers"® and "Hello Kitty"®. This little-known but

25    successful company, however, was propelled into the limelight after its daring

26    release in June 2001 of an innovative line of fashion dolls called "BRATZ".

27    "BRATZ" are multi-ethnic fashion dolls that sport a fresh new urban and

28    contemporary look and fashion. At the time of the release of "BRATZ", "Barbie"

2

1    sales were in a slump, Mattel was in turmoil, and the market was ripe for something

2    new, exciting and inventive. "BRATZ" fit the bill. It is the first fashion doll that

3    has been able to seriously challenge "Barbie" for market share, and begin to loosen

4    Mattel's 50-year iron-fisted grip on the fashion doll market.

5        9.      Mattel has not taken kindly to the challenge. Either unable or

6    unwilling to compete against "BRATZ" fairly, and on a level-playing field, Mattel

7    has, instead, taken a more expeditious approach, resorting to unfair and anti-

8    competitive business practices. Wielding its substantial clout and influence in the

9    toy industry, Mattel has tried to muscle MGA out of business. MGA is informed

10   and believes that Mattel has intimidated, coerced and threatened retailers, licensees,

11   suppliers and others in the industry – both in the U.S. and internationally – in order

12   to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA

13   from obtaining licensees, contracts and supplies for its products. Mattel has also

14   serially imitated and copy-catted the look of MGA products, trade dress,

15   trademarks, themes, ideas, advertising and packaging, including for the "BRATZ"

16   line of dolls. MGA brings this action to stop Mattel's tortious, unfair and anti-

17   competitive conduct and to recover the extensive damage that Mattel's illicit

18   behavior has caused, and continues to cause, MGA. Mattel's own website states:

19   "As the global leader in the toy industry, we believe that how we achieve success is

20   just as important as the success itself." It also proclaims that "unwavering integrity

21   defines our corporate culture on every level, guiding how we work and how we do

22   business." Mattel's own corporate governance standards require it to "play by the

23   rules," complete fairly and be a good corporate citizen. Mattel's actions, however,

24   speak louder than its words.

25

26

27

28

3

EXHIBIT: A
PAGE: 08

**Mattel History and Performance**

10.    Mattel is the world's largest toy company, but it owes its immense success chiefly to a single product: "Barbie." Since her debut in 1959, "Barbie" has been the fuel for Mattel's growth and success, turning Mattel into an international powerhouse. By the late 1990's, Mattel's annual sales of the doll approached or topped $1.8 billion and Mattel stock reached a record high of approximately $45.00 a share. At that time, the average American girl had eight "Barbie" dolls, and "Barbie" was the world's best-selling toy.

11.    Mattel's reliance on a single, 40-year old product for as much as 50% of its business turned out to be a risky business model, however. Resting on its laurels, Mattel failed to react to the shifting tastes of consumers, changing dynamics in the industry, and an increasing focus on technologically advanced and interactive toys. "Barbie's" record sales fell into a tailspin. According to one report, Adrienne Fontanella, Mattel's "Barbie" brand president, would later be quoted as saying that, "The world changed very quickly, and we missed a beat. . . Barbie wasn't talking to girls. She just wasn't hitting it."

12.    Sales began to plunge in 1997, and Mattel began posting a series of net income losses. In the first quarter of 1998, sales of the "Barbie" brand dropped 17%. This steep slide was followed by another in the second quarter, when sales fell again, down by 15%. By the end of 1998, Mattel reported an overall 14% decline in "Barbie" sales for the year and analysts were using words such as "devastating" and "a catastrophe" to describe Mattel's earnings. The company's stock fell as much as 27% in a single day. "Barbie" was having a crisis.

13.    Jill Barad, who had taken over as Mattel's chairman and chief executive in January 1997, at the height of Mattel's success, had to do something fast. Instead of focusing on and investing in new product development, however, which would obviously take time, Mattel embarked on a series of acquisitions that were seemingly aimed at quickly diversifying the company's product line and

4

1   reducing its reliance on "Barbie" and on traditional retailers, such as Toys-R-Us

2   and Wal-Mart. Mattel spent a reported $881 million in March 1997 to purchase

3   Tyco Toys and acquire the "Matchbox" toy car brand. Just more than a year later,

4   it spent $700 million for the Pleasant Co., a mail-order doll company and maker of

5   the "American Girl" doll collection. And in December 1998, Mattel announced

6   plans to fork out a monumental $3.5 billion to buy the Learning Company,

7   followed quickly by Mattel's purchase, in March 1999, of a software company,

8   Purple Moon.

9       14.   Despite these acquisitions, the company continued to struggle. The

10   retail environment and buying patterns had unquestionably changed, but Mattel had

11   not kept up. Despite Mattel's feverish acquisitions, Mattel's mainstay and primary

12   profit-generator was still "Barbie." But "Barbie" had grown stale, and sales

13   languished. Posting additional losses in the first quarter of 1999, Mattel announced

14   that it would lay off 3,000 employees – 10% of its work force.

15       15.   Mattel's stock plummeted again in late 1999, dropping 30% on

16   Mattel's announcement that it would fall as much as 55% short of analysts' earning

17   estimates for the third quarter. Mattel blamed its troubles primarily on its

18   expensive, $3.5 billion acquisition of the Learning Company, which had turned out

19   to be a disaster fraught with licensing and distribution problems, bad debt, high

20   product returns and high advertising costs.

21       16.   By early 2000, Mattel's stock had crashed to as low as $8 per share,

22   and some analysts considered Mattel vulnerable to a takeover. Investors clamored

23   for Ms. Barad's resignation, and got their wish.

24       17.   Jill Barad resigned from Mattel in February 2000.

25       18.   For three months, the company was without a permanent chief

26   executive until Robert Eckert took the helm in May 2000. Mr. Eckert had spent 23

27   years at Kraft Foods, a subsidiary of Altria Group, Inc., and was widely credited

28

EXHIBIT: A
PAGE: 10

1    with reviving its ailing cheese business. Investors looked for him to do the same
2    for Mattel.

3        19.    Upon his arrival at Mattel, Mr. Eckert's promise, according to *Wall*
4    *Street Journal* reports, was to deliver a "leaner and meaner" Mattel.

5        20.    The "leaner" Mattel came quickly. Mr. Eckert laid off hundreds,
6    closed factories in the United States, shipped production to Mexico, and sold off the
7    Learning Company at a fraction of what Mattel had paid for it. It helped Mattel's
8    bottom-line, but did nothing to spur sales growth. Even under Mr. Eckert's "leaner
9    meaner" leadership, domestic "Barbie" sales remained in a slump into 2001. In an
10   industry that had become increasingly driven by consumer whims and fads, and the
11   hot, must-have toys of the moment, Mattel remained disinterested in devoting its
12   resources to searching for or developing a new blockbuster toy. Mr. Eckert's
13   business plan was not to diversify, but to build upon and expand sales of its existing
14   brands. Mattel was, after all, still generating billions in revenue despite the decline
15   of "Barbie." And so, Mattel remained committed to its age-worn icon and its two
16   other core brands, Fisher-Price and Hot Wheels, with each of the three accounting
17   for approximately a third of the company's sales.

18       21.    Then came the competition – MGA's "BRATZ".

19

20   **"BRATZ" Dolls Revolutionize The Fashion Doll Market**

21       22.    "BRATZ" challenged "Barbie's" half-century domination of the
22   fashion-doll market like nothing ever before had been able to do.

23       23.    MGA unveiled a preliminary sample of the "BRATZ" doll at the Hong
24   Kong Toy Fair in January 2001, while continuing to finalize the product throughout
25   that spring. Finished products were first shipped in May 2001. MGA introduced
26   the line to consumers in June 2001.

27

28

6

24.   Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

### MGA's "BRATZ"



25.   At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

7

EXHIBIT: A
PAGE: 12

26. Indeed, the classic "Barbie" look was nowhere to be seen in these dolls; they would never be confused with "Barbie".

**MGA's "BRATZ"**                    **Mattel's "Barbie"**

        

27. Featuring and embodying the slogan "The Girls With a Passion for Fashion!", "BRATZ" dolls revitalized, transformed and expanded the fashion doll market, in particular proving popular among "tween" age girls – those between childhood and adolescence – who had been all but abandoned as a market by Mattel.

28. The "BRATZ" line – with its unique and distinctive look – is well recognized and has been critically acclaimed and praised by consumers, retailers and toy industry analysts alike. In 2001, the "BRATZ" line won the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award. In 2002, the "BRATZ" line again won the TIA People's Choice Toy of the Year Award and the Family Fun Toy of the Year Award. LIMA, the licensing industry's official arm, awarded MGA's "BRATZ" the best character license of the year as well as the overall best licensed property of the year for 2003. MGA's "BRATZ" also earned the coveted TIA "Property of the Year" and "Girl Toy of the Year" for 2003, as well as the Family Fun Toy of the Year Award. MSNBC named "BRATZ" the "Hottest Toy of the Year," and both MGA and "BRATZ" received several other accolades in

8

1  2004, including the Suppliers Performance Award by Retail Category (the
2  "SPARC" award) in the Girls' Toys category sponsored by DSN Retailing
3  Today/Apparel Merchandising.

4      29.    Although but a tiny fraction of Mattel's size, with "BRATZ", MGA
5  was able to chip away at Mattel's stranglehold on the fashion doll market, gaining
6  shelf space and market share as "Barbie" sales remained flat or, at times, declined.

7      30.    The competition that MGA (once a licensee of Mattel!) and "BRATZ"
8  posed to Mattel was unexpected and unwelcomed by Mattel.  Where "Barbie" had
9  once enjoyed a 90% share of the fashion doll market in 1997, that share had already
10  slipped to 85% or less by the time of the release of "BRATZ".  With the company
11  still struggling under Mr. Eckert to overcome prior years of declining sales and
12  mounting debt, "Barbie," Mattel – and Mr. Eckert – simply could not afford the
13  untimely competition.  Mr. Eckert's "leaner" Mattel was not enough to battle more
14  potential erosion in "Barbie's" market share.  Mattel had to combat "BRATZ" and
15  MGA, and in the process revealed Mr. Eckert's "meaner" Mattel.

16

17  **Mattel's Response to "BRATZ" and Efforts to Thwart MGA's Competition**

18      31.    Mattel was not poised to nimbly respond to "BRATZ" with a new,
19  creative product of its own – indeed, it had been antithetical to Mattel's corporate
20  culture and mentality for Mattel to even conceive that a product might vie for shelf
21  space with "Barbie", let alone be available for sale to consumers mere months after
22  first being shown to retailers.  Mattel had to take a more expeditious route.

23      32.    Instead of fairly competing, Mattel waged war against MGA using a
24  wide-array of tortious, unfair and anti-competitive practices including systematic,
25  serial copycatting and intellectual property infringement, aided by intimidation,
26  threats and other acts of unfair competition and anti-competitive conduct, all with
27  one goal in mind – to banish MGA from the market – or minimize its ability to
28  capture any meaningful share before it could do any real harm to Mattel.

9

**EXHIBIT: A**
**PAGE: 14**

1    **Mattel's serial copycatting and intellectual property infringement**

2        33.    Mattel's serial copycatting of MGA's product lines began with the

3    "BRATZ" dolls themselves, but quickly extended to MGA's packaging, themes,

4    accessories, advertising and even other product lines.

5        34.    The first four "BRATZ" dolls that MGA launched in 2001, named

6    Jade, Yasmin, Cloe and Sasha, met their wannabe "BRATZ PACK" members in

7    October 2002 with Mattel's launch of three "My Scene" dolls named Madison,

8    Chelsea and "Barbie." This was no ordinary "Barbie", however. Indeed, not even

9    close. Mattel designed its "My Scene" dolls to evoke the unique and distinctive

10   look of the "BRATZ" – also with disproportionately oversized heads, artfully

11   made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip

12   clothes and hair styles, and over-sized feet.

13

14   **Mattel's Traditional "Barbie"**                    **Mattel's "My Scene" Doll**

15                                    circa 2002              circa 2004



10

**EXHIBIT:  A**
**PAGE:  15**

1    35.    These confusingly similar "BRATZ" imitators may have been

2  originally intended to buy Mattel time while it worked to release another product

3  the following summer, called "Flavas". MGA's founder, Isaac Larian, was quoted

4  by the media as having predicted that the move would backfire on Mattel, and it

5  did. Released in July 2003, Mattel's "Flavas" dolls took the urban, "hip-hop" look

6  too far, and were widely viewed as portraying a trampy, "bad-girl" image. The

7  dolls were not well-received, and rumor has it that Mattel had to sell them at below

8  cost prices to get rid of inventory. Most apparently wound up in discount bins, and

9  Mattel has seemingly abandoned the line.

10    36.    Realizing that "My Scene" was its best bet for riding MGA's

11  successful coattails and capitalizing on the unique and inherently distinctive look

12  that MGA had developed in its "BRATZ" dolls – and MGA's substantial goodwill

13  – Mattel has systematically proceeded to modify the "My Scene" dolls since their

14  original release, particularly their eyes, to increase their similarity to "BRATZ"

15  more and more over time.

16    37.    Indeed, when Mattel found out that its initial line of "My Scene" dolls

17  had trouble competing with "BRATZ", they simply *became* "BRATZ", in every

18  version, whether blonde, brunette or African American. A few pictures here are

19  worth a thousand words.

20                                   **BLONDE**

21    **Mattel's**                **Mattel's**                **Mattel's**
    **Traditional "Barbie"**    **Original "My Scene"**    **Recent "My Scene"**
22

23

24      

25

26

27

28

11

EXHIBIT: A
PAGE: 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Mattel's
Traditional "Barbie"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**



**BRUNETTE**

**Mattel's
Traditional "Theresa"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**





12

**EXHIBIT: A
PAGE: 17**

# AFRICAN AMERICAN

| **Mattel's Traditional "Barbie"** | **Mattel's Original "My Scene"** | **Mattel's Recent "My Scene"** |
|:---:|:---:|:---:|
|  |  |  |
|  |  |  |

38.   The original "My Scene" eye, as shown here, for example, has recently turned into a virtual carbon-copy of the "BRATZ" eye.

## Original Mattel "My Scene" Eye




13

39.    The "My Scene" eye pictured above, for instance, has lashes that radiate almost straight out, circumferentially, from the eyelids and, although the eye is more almond shaped than a "Barbie" eye, the eye is not so sleepy and heavy lidded as a "BRATZ" eye and is only lightly shadowed. The new "My Scene" eye, in contrast, is dramatically more similar to a "BRATZ" eye, as shown below in a side-by-side comparison. The doe-eyed innocent look of the "My Scene" eye shown above is gone; replaced with a sultrier look, characteristic of "BRATZ." The new "My Scene" eye, as shown below, boasts lashes that sweep out and away from the outer corner of the eye, just like the "BRATZ" eye. The new "My Scene" eye is also more heavy lidded and thickly lined, and the make-up is more markedly pronounced and dramatic.

**MGA's "BRATZ" Eye**                     **New Mattel "My Scene" Eye**

          

40.    Indeed, the progression of the "My Scene" eye, as it has departed from "Barbie" and edged closer and closer to "BRATZ", is readily apparent from virtually every angle, as shown here:

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BLONDE

**Mattel's
Traditional "Barbie"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**



## BRUNETTE

**Mattel's
Traditional "Theresa"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**



15

EXHIBIT: A
PAGE: 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Mattel's
Traditional "Theresa"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**

**AFRICAN AMERICAN**

**Mattel's
Traditional "Barbie"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**

16

EXHIBIT: A
PAGE: 21

41.     Mattel has not stopped at the eyes, however.  Mattel has also
incrementally but steadily modified its "My Scene" packaging, and the manner in
which the dolls are displayed, to more closely mimic the packaging, trade-dress and
overall look and total image of MGA's "BRATZ".

42.     To illustrate, Mattel's "My Scene" dolls were initially marketed like
this:

### Mattel's Early "My Scene" Packaging

 

43.     Little by little, however, the packaging has changed, creeping ever
closer and closer to the open and transparent style of the "BRATZ" packaging.
First, the panels seen running down each side of the front of the "My Scene" box
shown above, framing the doll and giving the packaging a closed-in look, were
changed as shown here:

### Intermediate Mattel "My Scene" Packaging



17

EXHIBIT: A
PAGE: 22

44.    Mattel replaced this intermediate packaging style with another that looked even more similar to the "BRATZ" packaging, as shown here in a side-by-side comparison:

**MGA's "BRATZ"**
**"Wintertime Wonderland" Packaging**



**Mattel's "My Scene"**
**"Chillin' Out" Packaging**



45.    Then later, Mattel changed its packaging and product display yet again to look even more closely and confusingly similar to MGA's packaging and "*tout ensemble*," as shown here:

**MGA's "BRATZ"**
**"SPORTZ" Packaging**



**Mattel's Recent "My Scene"**
**"MIAMI GETAWAY" Packaging**



18

EXHIBIT: A
PAGE: 23

46.   In this incarnation, Mattel notably abandoned the signature figure-eight style design that had appeared on its prior "My Scene" packaging, making this recent version clearer and more transparent on the front and sides than ever before, and much more like "BRATZ", accordingly.  Mattel also discarded its traditional, rectangular shaped box and, like "BRATZ", adopted an unusual, non-rectangular shaped box.  Mattel even adopted the "flying banner" ribbon-style slogan running across the middle of the box, similar to that used on the "BRATZ" packaging.

47.   As if these pointed and deliberate efforts to confuse and mislead consumers were not enough, Mattel exacerbated the confusion, and furthered the impression that the "My Scene" line and the "BRATZ" line are related, by taking up MGA's practice of regularly releasing new dolls in connection with a theme – but not just *any* theme, often *MGA's theme.*

48.   For example, when MGA released its "Wintertime Wonderland" theme in Fall 2003, Mattel released its "Chillin Out!" theme.  Each doll in MGA's line came with winter-sports accessories, such as a snowboard or skis and ski boots. Each doll in Mattel's line featured winter sports accessories, also including snowboards or ski and ski boots.  Even MGA's color schemes and some of the clothing styles seemed to have made their way into the Mattel products.

49.   When MGA released its "Formal Funk" theme, Mattel released its "Night on the Town" theme.  "BRATZ Formal Funk" was an elaborately themed line with its dolls in hip formalwear; so was Mattel's "Night on the Town."

50.   When MGA released its distinctive "Sun-Kissed Summer" theme, Mattel released its confusingly similar "Jammin' in Jamaica" theme.  Each line featured a bright blue-and-orange color scheme, beach accessories, such as surfboards, and beachwear clothing.  Mattel's "Jammin' in Jamaica" "Guava Gulch Tiki Lounge" playset also contained elements remarkably similar to MGA's "Sun-Kissed Summer" playset.

EXHIBIT: A
PAGE: 24

1    51.    Mattel also began running television commercials for its "My Scene"

2  dolls bearing a remarkable similarity to "BRATZ" commercials, combining live

3  action with animated sequences set to similar sounding pop music and lyrics.

4    52.    Mattel even stooped so low as to mimic "BRATZ" accessories and

5  related products in order to further create consumer confusion in the marketplace.

6    53.    For instance, when MGA came up with its distinctive "BRATZ"

7  "Runway Disco", Mattel came out with a "My Scene" Sound Lounge with

8  packaging that imitated MGA's trapezoidal box.

9    54.    Mattel's conduct cannot be explained by sheer coincidence, nor is it

10  merely fair competition. It is a calculated and intentional effort unquestionably

11  designed to trade off of MGA's hard work and goodwill, create confusion in the

12  marketplace, steal MGA's thunder and momentum, and dilute and blur away the

13  novelty and distinctiveness of MGA's products. Out of the seemingly endless

14  possibilities that Mattel could have chosen for a new line of dolls, packaging,

15  themes, color schemes, commercials, accessories and playsets, Mattel deliberately

16  chose *not* to come out with something unique, new or different and has, instead,

17  focused its efforts and resources on flooding the market with something so close to

18  "BRATZ" that the public will, can, and does, simply mistake it for "BRATZ".

19    55.    As yet another example of this, when MGA came out with a "BRATZ"

20  "Funky Fashion Makeover Head," Mattel came out with a confusingly similar –

21  indeed, practically identical – "My Scene" styling head.

22

23

24

25

26

27

28

20

EXHIBIT: A
PAGE: 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

|  MGA's "BRATZ" "Funky Fashion Makeover Head" | Mattel's "My Scene" "Stylin' Head" |

  

  

    56.    Indeed, Mattel's "My Scene" styling head is so close to the "BRATZ" styling head that even the press have mistakenly pictured and identified it as MGA's "BRATZ". The picture of Mattel's "My Scene" styling head shown below, for instance, appeared in the press with a caption indicating that the child was trying out different hairstyles "on a *Bratz* hair and makeup doll head."

Hairstyle practice



21

57.   Creating further confusion, Mattel's television commercial for its "My Scene" styling head was like watching a re-run of MGA's commercial for its "Funky Fashion Makeover Head".

58.   At one point in time, Mattel also used a portion of the "BRATZ" dolls' now-famous trademarked tag line "The Girls With a Passion for Fashion" on Mattel's' website for its "Diva Starz" dolls, asking its website users: "Do you have a passion for fashion?"

59.   Mattel has even recently come out with a confusingly similar line of "My Scene" plush pets, which adopt the distinctive look of MGA's "BRATZ" line. The "My Scene" pets feature large, humanlike eyes and wear clothing making them remarkably and confusingly similar to "BRATZ" products, including "BRATZ PETZ", as seen in this example where the pets each wear a jacket, a cap and carry a purse:

**MGA's "BRATZ Dogz"**                     **Mattel's "My Scene" dog**

                     

60.   And here too, Mattel chose to package its pets the same way that MGA packaged its "BRATZ PETZ", sitting in an open box, with no top and with partial side panels that slope from a narrow front panel to a higher back panel.

61.   Indeed, the similarity of the "My Scene" pets to "BRATZ PETZ" has confused even sophisticated retailers who have mistakenly merchandised "My Scene" dogs in the middle of the "BRATZ" section of a retail display, next to and as if they were part of MGA's "BRATZ Petz" line. It comes as no surprise that

22

1   customers too have been confused.

2       62.   Indeed, Mattel's television commercials and "My Scene" products
3   have become so confusingly similar to MGA's that even advertising executives
4   have expressed concern. One went so far as to say that although imitation is the
5   best form of flattery, what the individual had seen at Mattel's showroom, and how
6   its "My Scene" dolls now look so confusingly similar to "BRATZ", was
7   "shocking." This person further opined that it was clear that Mattel is intending to
8   confuse customers and capture "BRATZ" market share, and even asked MGA if it
9   was considering legal action.

10      63.   The press also has taken notice of Mattel's attempts to confuse
11  consumers. On or about February 18, 2005, a visitor to MGA's showroom from a
12  prominent news publication stated, "Oh my, I just came from Mattel's showroom
13  and their new 'My Scene' packaging is just like 'BRATZ' minus the handle."
14  Another member of the press visiting MGA's showroom offered the unsolicited
15  comment, "have you seen the new 'My Scene' dolls eyes are exactly like
16  'BRATZ'?" Yet another opined that Mattel's "My Scene" line was exactly like
17  "BRATZ", indeed, so much so that the reporter confusingly thought that Mattel had
18  bought "BRATZ", and still another has commented on Mattel's imitation of MGA.
19  On or about February 16, 2005, during an interview of a Mattel representative on
20  local network news in New York, "My Scene Barbie" was displayed by a Mattel
21  representative. During conversation about the dolls, the interviewer exclaimed that
22  they looked like "BRATZ". The Mattel representative just laughed – but this is no
23  laughing matter. This colloquy was available for replay and viewing, and was even
24  transcribed, on the internet.

25      64.   Customers too have been similarly confused. Some actually contacted
26  MGA seeking to purchase "My Scene" dolls.

27      65.   Mattel's conduct is planned, deliberate and intentional. Mattel has
28  systematically, copied, imitated and liberally borrowed many of the distinctive,

23

1    essential elements that identify and make "BRATZ" dolls "BRATZ" dolls, diluting
2    the brand, creating customer confusion, and unfairly stifling competition.

3    66.    Ironically, Mattel sued one of its other competitors in Europe for doing
4    much the same thing: "systematically copying and borrowing elements" from "My
5    Scene", on grounds that "this conduct constitutes unfair competition and passing
6    off." Indeed it does.

7    67.    What is more, Mattel's conduct has reached beyond "BRATZ" and
8    "BRATZ"-related products to include other new MGA toy lines.

9    68.    For example, MGA's "4-Ever Best Friends" line was the obvious, and
10   well-recognized model for Mattel's "Wee 3 Friends" line. Mattel even adopted
11   changes to the color scheme of its similarly-shaped packaging to create confusion
12   with MGA's distinctive packaging.

**MGA's "4-Ever Best Friends"**          **Mattel's "Wee 3 Friends"**






24

69.    In the second half of 2002, MGA's "Mommy's Little Patient," originally designed as the first in a series of "Mommy's Little . . ." dolls, was followed by Mattel's "Little Mommy" doll.

<table>
<tr><td style="text-align:center"><strong>MGA's<br>"Mommy's Little Patient"</strong></td><td style="text-align:center"><strong>Mattel's<br>"Little Mommy Potty Training Baby Doll"</strong></td></tr>
</table>

 

70.    Sparing nothing, Mattel has also extended its monkey-see monkey-do behavior into its boys' line.  When MGA came out with its "Alien Racers" line of toy racing vehicles, for instance, Mattel rushed to revamp and rename one of its "Hot Wheels" lines.  Although well-known and clearly branded for decades as "Hot Wheels", Mattel's answer to MGA's "Alien Racers" was to re-brand and market its Hot Wheels Highway 35 line under an "AcceleRacerS" logo.  MGA's line consists of "extreme" radio controlled racing vehicles marketed in connection with a strong, almost battle-like, science fiction theme.  MGA's logo accentuates the "A", "R", and "S" in compressed block lettering.  Mattel's line also consists of extreme racing vehicles marketed in connection with a strong, almost battle-like, theme.  Mattel's logo too accentuates the "A", "R", and "S" in compressed block lettering.

25

71.  Here, too, Mattel's mimicry has spilled over into Mattel's advertising and thematic presentation and marketing of this toy line.  In particular, Mattel has adopted MGA's "other-worldly" theme in its commercials.  For instance, in Mattel's commercials, the product, whose logo appears as "AcceleRacerS", now compete against alien-like Cyborgs engaged in a "race to save the world," mimicking MGA's alien theme and commercials in which MGA's "Alien Racers" are engaged in a "race to save the universe."

72.  None of this is coincidence.  Mattel has deliberately adopted a pattern and practice of coming out with variations of MGA's products to create confusion in the marketplace, interfere with MGA's business and divert profits away from MGA.  Mattel says, on its website, that it is in the business of creating "[t]he world's premier toy brands [of] today and tomorrow."  It seemingly does so, however, by borrowing liberally from its competitors, even when it refreshes its own existing brands and products.

73.  MGA has suffered extensive injury from Mattel's conduct.  Mattel's habitual, serial simulation of MGA's products, product lines and trade dress has allowed Mattel to take a free ride on the extensive amount of time, expense and creative development MGA expends on developing new products, product packaging and presentation, giving Mattel an unfair advantage, and making it virtually impossible for MGA to compete with Mattel on a level playing field.

**Mattel's additional unfair, manipulative, anti-competitive conduct**

74.  This already substantial injury has been exacerbated by the strong-arm tactics, and other illegitimate, unfair and anti-competitive means that Mattel has used to manipulate the market and ensure that its control and domination of the industry can continue unabated.

26

EXHIBIT: A
PAGE: 31

1    75.    For example, wielding the litigation privilege as a potential shield for
2    intimidating conduct, Mattel has sent threatening letters to several of its former
3    employees who now work for MGA warning them not to disclose *even publicly*
4    *available information* about Mattel, including the names and positions of Mattel
5    employees.  Mattel even went so far as to sue one of its former senior executives,
6    after he had the temerity to resign and join MGA in October 2004.  Not only was
7    Mattel's lawsuit dismissed for failure to state a viable claim, but Mattel thereafter
8    seemingly could not muster up a shred of evidence sufficient to support an amended
9    complaint.  As a result, Mattel's case against its former executive was dismissed
10   with prejudice.

11   76.    Mattel has also warned a number of companies, including the biggest
12   publishing entity in the United Kingdom, not to license MGA products, or risk
13   retribution.  The threats are not idle.  In May 2004, Mattel terminated one of its
14   licensees, apparently in retribution for licensing "BRATZ".  While some companies
15   have been courageous enough to take the risk, others have not, and MGA has lost
16   valuable licensing opportunities as a result.

17   77.    Mattel has used similar intimidation to pressure distributors and
18   retailers, particularly in foreign countries, not to distribute "BRATZ", to reduce
19   shelf and display space for "BRATZ" and to place "BRATZ" in unfavorable
20   locations at retail outlets.

21   78.    When MGA faced a shortage of doll hair in October 2002, MGA is
22   informed and believes that the reason for that shortage was that Mattel had locked
23   MGA out by buying up the supply from the two main hair supply companies.

24   79.    Mattel has also manipulated the retail market.  For instance, Mattel
25   merchandisers have been caught tampering with MGA's retail displays, replacing
26   favorably located MGA merchandise with Mattel merchandise instead.  MGA is
27   also informed and believes that Mattel has falsely told a major United States retailer
28   that MGA was giving another major United States retailer below-market pricing

27

EXHIBIT: A
PAGE: 32

1    and falsely told a United Kingdom retailer that MGA was discontinuing one of its

2    lines, in order to make such line less attractive to buyers and thereby attempt to

3    increase sales of the competitive Mattel product and improve its own sales, at

4    MGA's expense.

5        80.    Even supposedly unbiased and impartial industry organizations have

6    fallen prey to Mattel's abusive wield of power, to MGA's detriment.

7        81.    NPD Funworld ("NPD"), for one, is the leading supplier of sales

8    statistics in the toy industry. Accurate NPD statistics are essential for efficient

9    product-line management. Without these statistics, it is difficult, if not impossible,

10    for toy companies to assess and measure the relative success of their products in

11    key categories. It is, however, a subscription service, and NPD restricts the manner

12    in which its subscribers may use the data it provides.

13        82.    Mattel has regularly ignored the restrictions – using NPD data about

14    Mattel's comparative standing relative to other companies in press releases and in

15    communications with retailers and financial investors who are not NPD subscribers.

16        83.    Mattel generates substantially more annual subscription revenue for

17    NPD than does MGA, and carries more clout.

18        84.    After MGA had subscribed to the service for more than 12 years, NPD

19    terminated MGA's subscription in 2003 theoretically on the grounds that MGA

20    misused NPD data in a press release.

21        85.    MGA is informed and believes that the termination was the result of

22    pressure from Mattel, notwithstanding Mattel's own frequent violations of NPD's

23    restrictions.

24        86.    In addition to this, the market share numbers that NPD generates are

25    heavily dependent on the category in which NPD places a particular product. MGA

26    is informed and believes that Mattel also pressured NPD into changing certain

27    product classifications for its "BRATZ" products in order to manipulate the data

28

28

EXHIBIT: A
PAGE: 33

1  and preserve Mattel's market share rankings in the critical fashion doll category –
2  and thereby lower MGA's.

3      87.    The Children's Advertising Review Unit ("CARU") is another
4  organization that, upon information and belief, appears to have been subject to
5  improper influence by Mattel. CARU is the toy industry's supposedly independent
6  self-regulatory body in charge of maintaining standards in advertising. CARU's
7  approval is considered critical within the toy industry to avoiding regulatory action
8  by the Federal Trade Commission.

9      88.    CARU is heavily subsidized by Mattel.

10     89.    Upon information and belief, Mattel has used its influence as a major
11 contributor to CARU's budget to induce CARU to place onerous restrictions on
12 MGA advertisements, and require MGA to amend aspects of commercials that have
13 gone unchallenged in other parties' commercials.

14     90.    As a result of CARU's restrictions, MGA has been forced to incur
15 unnecessary costs for reshooting and producing or re-editing its commercials.

16     91.    On several occasions, CARU has also either strongly suggested, if not
17 also required, that MGA respond to inquiries about its website policies and make
18 substantial changes to the "BRATZ" website notably and significantly in excess of
19 restrictions imposed on Mattel and others.

20     92.    Even TIA, the toy industry's trade association, is apparently not
21 untainted by Mattel's influence and power. Each year, TIA presents the Toy-of-
22 the-Year Awards, the most prestigious of which had been the award for Toy of the
23 Year. Winning the Toy of the Year Award is a significant achievement that not
24 only very likely increases the sales of the winning toy, but also denotes the winning
25 company as a leader in toy innovation and generates substantial goodwill with
26 retailers, distributors, licensees, and customers.

27     93.    For the years 2000 (the first year of the award), 2001 and 2002, the
28 Toy of the Year award was chosen by consumer vote. The awards ceremony was

29

EXHIBIT: A
PAGE: 34

1   then held the following year, at a dinner in New York. (For example, the awards

2   dinner for the year 2000 award was held in February 2001). Leap Frog won the

3   2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002

4   People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award,

5   however, the rules suddenly changed. Now, the award is selected by members of

6   the industry.

7       94.   Upon information and belief, this change was orchestrated by a Fisher

8   Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of

9   TIA.

10      95.   Perhaps not surprisingly given this change in the winner selection

11  procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year

12  2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal

13  Funk Super Stylin' Runway Disco."

14      96.   TIA has refused to provide MGA with the vote count procedure and

15  totals for this award, despite repeated requests.

16      97.   MGA is also informed and believes that Mattel was instrumental in

17  attempting to keep MGA from participating as a sponsor in this year's "Kids'

18  Choice Awards."

19      98.   Mattel has clearly engaged in tortious, illegal and unethical behavior in

20  its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently

21  Mattel's current *modus operandi* when it comes to "competing" in the industry.

22  The once immensely successful "LeapFrog" interactive learning product, for

23  example, has apparently been one of Mattel's other recent victims.

24      99.   Mattel may not shield its illegal, unfair and unethical business practices

25  from the public eye. It is time for the truth to be told, and the world to know of

26  Mattel's unfair, unethical and illegal business practices and unfair competition.

27  "Barbie" does not "play nice" with others (particularly her competitors), and needs

28  to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

30

1　allowed to continue to be the playground bully and trample on the rights of others,

2　including MGA.

3　　100.  As a result of Mattel's manipulative, illegal, unfair, unethical and anti-

4　competitive conduct, MGA has suffered and, unless abated, will continue to suffer

5　lost sales, lost licensing fees, lost contracts, lost relationships, lost business

6　opportunities and other damages and harm for which there is no adequate remedy at

7　law.  Its ability to enter new markets and product lines has been hampered and

8　delayed.  Its production costs have increased, its reputation and relationships with

9　important players in the industry have been negatively impacted, the value of its

10　business has been diminished, and its ability to attract, hire and retain employees

11　has been affected.

12

13　　　　　　　　　　　**FIRST CLAIM FOR RELIEF**

14　**(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**

15　　101.  MGA repeats and realleges the allegations contained in paragraphs 1

16　through 100 of this Complaint and incorporates them by reference as though fully

17　and completely set forth herein.

18　　102.  MGA's "BRATZ" line has a unique and distinctive style and

19　distinctive characteristics, such as the disproportionately large head, large dramatic

20　eyes with a distinctive presentation (including the eye shape, make-up and lashes),

21　pouty, plump lips with a distinctive presentation (including the lip shape and make-

22　up), small, thin bodies, oversized feet, and up-to-date fashions.  MGA's "BRATZ"

23　line is known for and recognized by the total image that is presented by its product

24　and the style and arrangement of the packaging and display.  This "*tout ensemble*"

25　is representatively described and depicted herein.  The characteristics of MGA's

26　"BRATZ" line, alone or in combination, have come to identify the "BRATZ" line

27　and its source, MGA, and thus serve as protectable trade dress.  MGA's trade dress

28　in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it

31

1   is not essential to the purpose, quality or source identifying attributes of the

2   aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has

3   acquired distinction within the meaning of the Lanham Act.

4       103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also

5   has its own unique and distinctive characteristics, such as the humanlike eye and

6   unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ"

7   line has become known for and recognized by the total image that is presented by

8   the product and the style and arrangement of its packaging. This "*tout ensemble*" is

9   representatively described and depicted herein. The characteristics of MGA's

10  "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ

11  PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's

12  trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if

13  any utility exists, it is not essential to the purpose, quality or source identifying

14  attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is

15  inherently distinctive or has acquired distinction within the meaning of the Lanham

16  Act.

17      104. Mattel's production, sale and marketing of "My Scene" dolls,

18  including styling heads and doll heads, and "My Scene" pets that are confusingly

19  similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's

20  permission or consent, constitutes designation and use of a term, symbol, device or

21  combination thereof that is false or misleading within the meaning of 15 U.S.C.

22  Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as

23  to the affiliation, connection, or association, or as to the origin, sponsorship, or

24  approval of Mattel's goods or commercial activities, within the meaning of 15

25  U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

26      105. Mattel's conduct has been intentional and willful, and is calculated

27  specifically to trade off the goodwill that MGA has developed in its successful

28  "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

32

1    features of MGA's "BRATZ" line in connection with goods sold and distributed in

2    interstate commerce, Mattel has infringed and is likely to continue to infringe on

3    MGA's substantial rights in and to the "BRATZ" line trade dress. In so doing,

4    Mattel has falsely represented and designated to the public generally and consumers

5    of fashion doll products specifically the source and origin of Mattel's "My Scene"

6    fashion doll products in violation of 15 U.S.C. § 1125(a).

7         106. MGA has been damaged by, and Mattel has profited from, Mattel's

8    wrongful conduct in an amount to be proven at trial.

9         107. For each act of infringement, MGA is entitled to recover its actual

10   damages as well as Mattel's profits from such infringement.

11        108. Monetary relief alone, however, is not adequate to address fully the

12   irreparable injury that Mattel's illegal actions have caused and will continue to

13   cause MGA, if not enjoined. MGA is therefore entitled to preliminary and

14   permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade

15   dress.

16                          **SECOND CLAIM FOR RELIEF**

17        **(Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair**

18   **Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof.**

19            **Code § 17200 *et seq*. and California Common Law)**

20        109. MGA repeats and realleges the allegations contained in paragraphs 1

21   through 108 of this Complaint and incorporates them by reference as though fully

22   and completely set forth herein.

23        110. Mattel has deliberately and, indeed, repeatedly adopted, imitated and

24   mimicked the make-up, appearance, features, trade dress, and image of MGA's

25   products, packaging and advertising, including its repackaging and refreshing of

26   older Mattel toys. Mattel's actions were and are done with the intent to deceive

27   consumers, cause confusion and mistake, and interfere with the ability of

28   consumers to identify the source of goods by appearance and packaging. By this

                                    33

1    conduct, Mattel pirates and exploits, by subliminal or conscious association with
2    MGA, the goodwill and reputation of MGA and derives benefit therefrom.

3       111.  Mattel has particularly and deliberately poached upon the commercial
4    magnetism of MGA's "BRATZ" and the success of "BRATZ". Mattel's conduct
5    has been intentional and willful, and is calculated specifically to trade off the
6    goodwill that MGA has developed in its successful "BRATZ" line.

7       112.  By its acts, including its intentional imitation of the distinctive features
8    of MGA's "BRATZ" dolls, which has progressively become closer and closer, as
9    well as its imitation of "BRATZ" themes, packaging and the overall look, feel and
10   total image of the "BRATZ" line, imitation of other MGA products, packaging and
11   advertising, and other conduct alleged herein, Mattel has engaged in unfair
12   competition under both federal and California state law.

13      113.  Mattel has also willfully and maliciously used its power, influence and
14   intimidation to threaten certain retailers, suppliers, licensees, distributors and
15   manufacturers so as to limit, if not prevent, MGA from doing business with these
16   retailers, suppliers, licensees, distributors and manufacturers, using its power and
17   influence to intimidate and manipulate industry bodies. Mattel has further used its
18   power and influence to attempt to, if not actually, intimidate and threaten MGA's
19   current and potential employees so as to cause MGA competitive injury.

20      114.  Alone, in combination, or in totality, Mattel's actions discussed and
21   alleged herein constitute unfair competition and unfair business practices within the
22   meaning of federal law, California statutory law and/or California common law.

23      115.  As a result of its conduct, Mattel has derived substantial monetary and
24   non-monetary benefit and business advantage.  Mattel has also wrongfully diverted
25   profits away from MGA and to Mattel and, on information and belief, deprived
26   MGA of the patronage of a large number of actual and potential customers.

27      116.  MGA has been damaged by, and Mattel has profited from, Mattel's
28   wrongful conduct in an amount to be proven at trial.

34

EXHIBIT: A
PAGE: 39

1    117.  Monetary relief alone, however, is not adequate to address fully the

2    irreparable injury that Mattel's actions have caused and will continue to cause

3    MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent

4    injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from

5    engaging in acts of unfair competition and unfair business practices.

6    118.  MGA is further entitled to relief whereby Mattel is ordered to pay

7    restitution for damages resulting from Mattel's unfair competition and unfair

8    business practices.

9    ## THIRD CLAIM FOR RELIEF

10    **(Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330**

11    **and California Common Law)**

12    119.  MGA repeats and realleges the allegations contained in paragraphs 1

13    through 118 of this Complaint and incorporates them by reference as though fully

14    and completely set forth herein.

15    120.  The look and trade dress of the MGA products referenced herein are

16    distinctive and famous, and have been since before Mattel launched its similar

17    versions.  By its aforesaid acts, Mattel caused and continues to cause blurring and

18    dilution of the distinctive look of MGA's products and trade dress, which

19    previously served as a unique source identifier for MGA, within the meaning of the

20    Lanham Act, California Business and Professions Code § 14330 and/or California

21    common law.

22    121.  Mattel's conduct has been intentional and willful, calculated

23    specifically to trade on MGA's goodwill and reputation and to cause dilution of

24    MGA's famous marks, particularly those connected with MGA's famous and

25    successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky

26    Fashion Makeover Head" and "BRATZ PETZ" line.

27    122.  MGA has been damaged by, and Mattel has profited from, Mattel's

28    wrongful conduct in an amount to be proven at trial.

EXHIBIT: A
PAGE: 40

1    123.  Monetary relief alone, however, is not adequate to address fully the

2    irreparable injury that Mattel's actions have caused and will continue to cause

3    MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent

4    injunctive relief to stop Mattel's ongoing dilution.

5                                **FOURTH CLAIM FOR RELIEF**

6                                        **(Unjust Enrichment)**

7    124.  MGA repeats and realleges the allegations contained in paragraphs 1

8    through 123 of this Complaint and incorporates them by reference as though fully

9    and completely set forth herein.

10    125.  As a result of the conduct alleged herein, Mattel has been unjustly

11    enriched to MGA's detriment.  MGA seeks a worldwide accounting and

12    disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable

13    activities.

14

15                                **PRAYER FOR RELIEF**

16    WHEREFORE, MGA prays for relief, as follows:

17    1.      That Mattel, its agents, servants and employees and all persons acting

18    in concert be restrained preliminarily and permanently from directly or indirectly:

19              a.      using confusingly similar trade dress;

20              b.      improperly influencing, or attempting to improperly influence,

21                      standard-setting and industry organizations;

22              c.      engaging in unfair competition and unfair business practices;

23                      and

24              d.      diluting MGA's trade dress;

25    2.      For general and actual damages, according to proof at trial but

26    believed to reach or exceed tens of millions of dollars;

27    3.      For the disgorgement of all profits derived by Mattel for its acts of:

28              a.      false designation of origin or affiliation;

36

EXHIBIT: A
PAGE: 41

1    b.  unfair competition and unfair business practices; and

2    c.  dilution;

3   4.  For costs of suit and reasonable attorneys' fees;

4   5.  For punitive and/or exemplary damages as a result of Mattel's willful

5 and malicious conduct to the extent allowable by law; and

6   6.  For such other and further relief as the Court deems just and proper.

7

8 Dated:   April 13, 2005     PATRICIA GLASER

9                   CHRISTENSEN, MILLER, FINK,
                    JACOBS, GLASER, WEIL &
10                  SHAPIRO LLP

11                DALE M. CENDALI
                  DIANA M. TORRES
12               PAULA E. AMBROSINI
                  O'MELVENY & MYERS LLP

13

14

15              By:
                  Diana M. Torres
16              Attorneys for Plaintiff
                  MGA ENTERTAINMENT, INC.

17

18

19

20

21

22

23

24

25

26

27

28

             37      EXHIBIT: A
                      PAGE: 42

1

## DEMAND FOR JURY TRIAL

2

3          MGA hereby demands a jury trial on all triable issues.

4

5    Dated:        April 13, 2005              PATRICIA GLASER
                                               CHRISTENSEN, MILLER, FINK,
6                                              JACOBS, GLASER, WEIL &
                                               SHAPIRO LLP

7                                              DALE M. CENDALI
                                               DIANA M. TORRES
8                                              PAULA E. AMBROSINI
                                               O'MELVENY & MYERS LLP
9

10

11                                             By:
                                                  Diana M. Torres
12                                             Attorneys for Plaintiff
                                               MGA ENTERTAINMENT, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38

# EXHIBIT B
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT B
# TO DECLARATION OF
# JEAN PIERRE NOGUES

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,

13 |            Plaintiff,

14 | v.

15 |

16 | MATTEL, INC., a Delaware corporation,

17 |            Defendant.

18

19

20 | CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
21 | MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

CASE NO. CV 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND
DENYING IN PART MATTEL'S
MOTION TO COMPEL RESPONSES
TO INTERROGATORY NOS. 27-44
AND 46-50 BY THE MGA PARTIES**

22 | ## I. INTRODUCTION

23 | On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24 | to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  MGA Entertainment, Inc., MGA

25 | Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26 | referred to as "MGA parties") submitted an opposition on December 31, 2007.  Mattel submitted

27 | a reply on January 7, 2008.  On February 8, 2008, the MGA parties submitted their second

28 | Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1  supplemental responses and third supplemental responses to the interrogatories at issue. The

2  matter was heard on February 11, 2008.

3                                    II. BACKGROUND

4        Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5  21, 2007, asking each of them the same fifteen questions (Nos. 27-41). Mattel served its Fourth

6  Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7  interrogatories (Nos. 42-45). Mattel served an Amended Fourth Set on October 23, 2007,

8  removing No. 45, but retaining Nos. 42-44. Mattel served its Fifth Set of Interrogatories on

9  October 19, 2007, which consisted of two additional questions (Nos. 46-47). On October 23,

10  2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11  replace the previously withdrawn interrogatory. On October 25, 2007, Mattel served its Seventh

12  Set of Interrogatories, which consisted of Nos. 48-50.

13        In November of 2007, the MGA parties served responses and objections to Mattel's

14  interrogatories, and in some instances supplemental responses. For the most part, the answers of

15  each of the MGA parties are substantially similar. However, in several instances where MGA

16  Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17  S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18  party."

19        The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20  responses. The MGA parties offered to provide supplemental responses by January 7, 2008.

21  Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22  was inadequate. Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23        Mattel contends that the interrogatories at issue seek information relevant to central issues

24  in the case, such as: MGA's contentions regarding which Bratz inventions were created before,

25

26  _____

27        [1] One of the issues raised in the motions papers –whether the interrogatories exceed the 50 interrogatory
   per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's
   Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                                    2

EXHIBIT: B
PAGE: 45

1  during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2  storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3  the sources of information from which MGA has collected documents in this litigation which

4  relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5  MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6  by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7  including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8  inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9  rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10  innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11  employees that have been employed by MGA; non-privileged facts concerning the dispute

12  leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13  this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14  Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15  products MGA asserts MGA has copied or infringed. Mattel's Motion at pp. 2-3.

16       Mattel contends that although it has received responses to all of the interrogatories except

17  Nos. 39, 46 and 47, all of the responses are deficient. As an initial matter, Mattel contends that

18  the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19  overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20  control of MGA, seek information protected by the attorney-client privilege, work product or joint

21  defense privileges, and call for a legal conclusion – are without merit. Mattel contends that the

22  MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23  Mattel also contends that its interrogatories do not require the disclosure of privileged information

24  or work product, but rather require the MGA parties to state their contentions about facts or the

25  application of law to facts.

26       Mattel further contends that some of the MGA parties' responses are deficient in that they

27  merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT: B
PAGE: 46

1   details.  Mattel contends that its contention interrogatories, including the purportedly "negative"

2   interrogatories asking for every fact which supports the denial of a statement or allegation, are

3   commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4   showing of undue burden.  Indeed, Mattel points to decisions by the district judge which it

5   contends supports its use of the contention interrogatories at issue.  Mattel also points out that it

6   provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7   supplemental interrogatory response, and contends that the MGA parties ought to provide

8   comparable details to Mattel.

9        Mattel also contends that the MGA parties have unilaterally limited many of their

10   responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11   Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12   they intend to rely upon, as requested by some of the interrogatories.

13        Mattel acknowledges that fully responding to the interrogatories will require some effort.

14   However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15   litigation.  Mattel contends that its need to discover MGA's key contentions outweighs any effort

16   the MGA parties will be required to undertake to disclose the requested information.

17   Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18   the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19        The MGA parties contend that their current responses comply with Rule 33 of the Federal

20   Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21   of reasons.  The MGA parties raise four main arguments in opposition to Mattel's motion.  First,

22   the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23   counsel because such information is protected by the attorney-client privilege or the work product

24   doctrine.  Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25   data that has been requested.  Third, the MGA parties contend that Mattel's contention

26   interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27   require a recitation of all facts supporting the MGA parties' contentions.  Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

1  contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2  than the principal factual and legal bases for the response.

3  ### III. STANDARDS

4      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

7  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8  2004) ("District courts need not condone the use of discovery to engage in 'fishing

9  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15      Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24      Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry. "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

1   33(b)(3).  "The grounds for objecting to an interrogatory must be stated with specificity."

2   Fed.R.Civ.P. 33(b)(4).

3                                          IV. DISCUSSION

4   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5          Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6   three different time periods, namely before, during and after Bryant's employment with Mattel:

7          **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU
           contend was CREATED, in whole or in part, prior to January 4, 1999, and for
8          each BRATZ INVENTION so identified state all FACTS that support YOUR
           contention that such BRATZ INVENTION (or aspects or portions thereof) was
9          CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with
10         knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
           such facts.

11

12         **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
           contend was CREATED, in whole or in part, after October 19, 2000 and before
13         June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
           that support YOUR contention that such BRATZ INVENTION (or aspects or
14         portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
           and IDENTIFY all PERSONS with knowledge of such facts and all
15         DOCUMENTS which REFER OR RELATE TO such facts.

16

17         **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
           was CREATED, in whole or in part, after January 3, 1999 and before October 21,
18         2000, and for each BRATZ INVENTION so identified state all FACTS that
           REFER OR RELATE TO the timing of the creating of such BRATZ
19         INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
           DOCUMENTS which REFER OR RELATE TO such facts.

20

21   Mattel contends that these interrogatories seek information that is plainly relevant and

22   discoverable, and that the MGA parties do not contend otherwise.  Mattel further contends that

23   the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24   INVENTION is inadequate.  Mattel also contends that the MGA parties have failed to carry their

25   burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26   importance of the information sought.  Mattel emphasizes that the information sought will prove

27   liability as to a number of its claims.  Moreover, Mattel contends that knowing which inventions

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    6

1   MGA claims were created before and just after Bryant's second period of employment at Mattel

2   is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3   chronology of Bratz design and development.

4        The MGA parties contend that Mattel is using misleading and unfair definitions to create

5   jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ

6   INVENTION," which they contend contains separate component parts ("representation, idea,

7   concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8   Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9   works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements"). The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at

15  2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22       Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further. The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

7

EXHIBIT: B
PAGE: 50

1  supporting a particular allegation are *inherently improper*.").

2      Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3  the interrogatories are overbroad and unduly burdensome. The definition of "Bratz Invention" is

4  extremely broad, encompassing numerous intellectual property concepts. Mattel has not shown

5  how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6  relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7  Confidential Information and Inventions Agreement," signed by Bryant. The breadth and undue

8  burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9  extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  supporting documents. Not all contention interrogatories requiring a recitation of all facts,

12  documents and witness are objectionable. See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  to the exact amount of detail a party has to supply in response to a contention interrogatory). In

18  the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  deposition testimony in search of information relating to "any representation, idea, concept, work,

21  process, procedure, plan, improvement, design or other development" that refers or relates to

22  Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  relate to Bratz. It is not the MGA parties' responsibility to re-write the interrogatories in a

26  manner that will yield Mattel the most amount of information to support Mattel's claims and

27  defenses. On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

1   outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2   amount in controversy, the parties' resources, the importance of the issues at stake in the

3   litigation, and the importance of the proposed discovery in resolving the issues.

4        In any event, the MGA parties' responses are adequate under the circumstances. Faced

5   with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6   the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7   and identify the principal documents or categories of documents that support each contention.

8   See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006). For example, in response to

9   Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10   fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11   patented as a utility patent because fashion dolls were in the public domain for the purposes of

12   utility patent protection. However, the MGA parties contend that Bryant's idea of a line of

13   fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14   law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15        The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16   parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17   patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18   in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19   flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20   that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21   manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22   2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23   MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24   standard fashion model poses, and thus were not novel or original. Further, the MGA parties'

25   supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26   drawings Bryant completed in August and September of 1998 contained original expression

27   covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

    9

EXHIBIT: B
PAGE: 52

1  Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2  numerous individuals having knowledge of the facts supporting their contentions, and identify

3  documents that are relevant to the MGA parties' contentions.

4  B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5      Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6  "who are now or have been employed" by MGA since January 1, 1999. More specifically,

7  Interrogatory No. 41 asks the MGA parties to:

8      IDENTIFY all PERSONS who at any time have been employed by or under
    contract with MATTEL who are now or have been employed by or under contract

9      with YOU since January 1, 1999, and, for each such PERSON, state his or her
    name, date of hire or effective date of contract, the date on which YOU first had

10      contact with such PERSON regarding potential employment or contracting, the
    date(s) on which such PERSON was interviewed for possible employment or

11.      contracting, each title (if any) such PERSON has held while employed by or
    under contract with YOU, and the date of termination (if applicable).

12
In their supplemental response, the MGA parties assert numerous objections, but also provide a

13
list of well over a hundred individuals with their position title and employment dates.

14
15      Mattel contends that the MGA parties' response is incomplete because it does not contain

16  the date of first contact regarding potential employment or contracting, as well as the interview

date for potential employment or contracting.

17
    The MGA parties contend that during the meet and confer process, they agreed to

18
investigate whether the additional requested information was reasonably available. The MGA

19.
parties represent that they are in the process of looking for the requested information, and that

20
they will supplement their response if the information is reasonably available without undue

21
burden.

22
    Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

23
The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

24
contend otherwise. In particular, the date of first contact, interview date, start date and end date

25
for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

26
parties' response. The MGA parties shall provide the missing information for Bryant. In

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                             10

**EXHIBIT: B**
**PAGE: 53**

1   addition, the MGA parties shall provide the interview dates for each of the individuals identified

2   in their supplemental responses. The interview dates are potentially relevant to Mattel's claim

3   that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4   However, the MGA parties are not required to provide the date of first contact for each individual

5   because the burden of producing such information outweighs its likely benefit, taking into

6   account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7   <u>C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)</u>

8         Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9   product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10   "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11   persons with knowledge and documents that refer or relate to the foregoing. In the responses, the

12   MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13   No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition. The MGA parties

14   also respond that, in general, at MGA, product development is completed 7-8 months before the

15   first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16        Mattel contends that the information it seeks is relevant to its defense against MGA's

17   claims that Mattel copied or infringed MGA's products. One of Mattel's defenses is that "Mattel

18   was the one who came up with relevant matters first – before MGA – and that MGA was the one

19   who copied or stole from Mattel." Mattel's Motion at p.23. Mattel contends that the MGA

20   parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21   Interrogatory No. 3 requested different information, namely the dates on which the products were

22   first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23        In response to the instant motion to compel, the MGA parties represent that they are

24   assessing whether they can provide more specific information without undue hardship, and will

25   supplement their responses if such information is available. MGA's Opposition at p.29.

26        Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27   The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

EXHIBIT: B
PAGE: 54

1    their products have been copied or infringed by certain Mattel products. Although the MGA

2    parties served supplemental responses after filing their opposition brief, the supplemental

3    responses do not include the requested information. The MGA parties have failed to establish

4    that the interrogatories are unduly burdensome.

5    D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6        Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7          **Interrogatory No. 48:** Separately IDENTIFY each trade dress that YOU
contend MATTEL has copied, infringed or diluted or that is otherwise the

8          subject of YOUR claims, defenses or allegations in THIS ACTION.

9          **Interrogatory No. 49:** For each trade dress identified in response to
Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL

10          product, packaging or other matter that YOU contend copies, infringes or dilutes
such trade dress, including without limitation by describing fully and separately,

11          for each such MATTEL product, packaging or other matter, each and every
element of the claimed trade dress that YOU contend MATTEL has copied,

12          infringed or diluted.

13          **Interrogatory No. 50:** For each trade dress identified in response to
Interrogatory No. 48, separately and completely IDENTIFY all facts that support

14          YOUR contention that such trade dress is protectible, all DOCUMENTS that
REFER OR RELATE to the foregoing and all PERSONS with knowledge of the

15          foregoing.

16        Mattel contends that these interrogatories seek core contentions underlying the MGA

17    parties' trade dress infringement claims and that the partial responses provided are inadequate

18    because they set forth only the "basic facts" without identifying a single product that MGA

19    alleges was infringed or any other details. Mattel also contends that the responses are improper

20    insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21    this interrogatory will be the source of expert testimony and an expert may identify additional

22    facts that support MGA's contentions. Mattel contends that such a limitation would allow MGA

23    to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24        As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25    directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26    Phase 2. Nevertheless, the MGA parties contend that their responses provide Mattel with the

27    principal facts supporting their contentions in compliance with Rule 33.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

1    Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied. The
2  MGA parties are in substantial compliance with Rule 33, having identified numerous elements of
3  trade dress they contend Mattel has infringed. More specifically, the MGA parties' responses
4  identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their
5  trade dress. The MGA parties also set forth the principal facts supporting their contention that
6  their trade dress is protectible under the applicable trade dress legal principles, including that the
7  trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary
8  meaning. That the interrogatory responses include a reservation of rights to supplement during
9  expert discovery does not render the responses inherently improper or inadequate. Mattel does
10  not contest that the identification of the elements and products subject to trade dress infringement
11  will be a subject of expert testimony.

12  E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13    Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial
14  institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or
15  for YOUR benefit, since January 1, 1999." The MGA parties objected to this interrogatory as
16  seeking information "not relevant to the claims or defenses of any party to the action and not
17  reasonably calculated to lead to the discovery of admissible evidence.

18    Mattel contends that the information sought is discoverable because it may lead to direct
19  evidence of liability regarding Mattel's allegations of commercial bribery against MGA and
20  Larian. More specifically, Mattel contends that the timing and amounts of payments made to
21  Bryant and to other then-Mattel employees from MGA's bank accounts would establish
22  commercial bribery and other tortious conduct. Mattel also contends that the timing of such
23  payments would also be indicative of the timing of Bryant's first involvement with MGA.
24  Further, Mattel contends that the requested information is relevant to establish net worth for
25  purposes of calculating punitive damages. Mattel also contends that the MGA parties' objection
26  based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is
27  independently relevant to many issues in the liability phase of trial, and is not just directed at

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

1 | seeking discovery in aid of a judgment or execution.

2 |     The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3 | in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4 | information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5 | even more private financial information. Further, the MGA parties contend that Mattel has

6 | already received substantial financial information from MGA Entertainment, Inc. directly, and

7 | has not shown how that information is insufficient. More specifically, the MGA parties point out

8 | that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9 | audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10 | reports; various financial documents relating to Veronica Marlow; documents showing royalty

11 | payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12 | month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13 | expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14 | documents showing MGA's amortization and depreciation of certain capital assets and

15 | expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16 | including income and expense accounts, reserves and liabilities; and documents sufficient to

17 | explain MGA's various accounts as presently and historically maintained in MGA's books and

18 | records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19 | profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20 | witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21 |     Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22 | grounds that the financial information sought is cumulative of other discovery already sought and

23 | obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24 | documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25 | other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26 | Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27 | Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT: B
PAGE: 57

1   obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2   such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

3   Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4   In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5   unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6   F. Contention Interrogatories (Nos. 30-38 and 42)

7          Mattel served several contention interrogatories on several additional topics. The

8   remaining contention interrogatories at issue are set forth below.

9          **Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so
10   contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
     to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
11   priority over and/or has superior rights to MATTEL as to such BRATZ
     INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
12   all DOCUMENTS that REFER OR RELATE TO such facts.

13         **Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so
     contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
14   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

15         **Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so
16   contend, that MATTEL is not or would not be entitled to injunctive relief as
     requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
17   determined that MATTEL owns one or more BRATZ INVENTIONS, and
     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
18   that REFER OR RELATE TO such facts.

19         **Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so
     contend, that MATTEL is not entitled to an award of punitive or exemplary
20   damages against YOU, and IDENTIFY all PERSONS with knowledge of such
     facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21         **Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so
22   contend, that YOU did not intentionally interfere with the INVENTIONS
     AGREEMENT when BRYANT purported to TRANSFER and MGA purported
23   to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
     of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24         **Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so
25   contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
     loyalty owed by BRYANT to MATTEL when BRYANT performed work or
26   services with or for MGA while BRYANT was employed by MATTEL, and
     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
27   that REFER OR RELATE TO such facts.

28         **Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so

EXHIBIT: B
PAGE: 58

1    contend, that YOU acted with an innocent state of mind or reasonably believed
     that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2    purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ,
     and IDENTIFY all PERSONS with knowledge of such facts and all
3    DOCUMENTS that REFER OR RELATE TO such facts.

4    **Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5    BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY
     all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
6    OR RELATE TO such facts.

7    **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
8    duties to MATTEL when BRYANT performed work or services with or for
     MGA while BRYANT was employed by MATTEL, and IDENTIFY all
9    PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
     RELATE TO such facts.
10

11   **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so
     contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
12   created by BRYANT on or before October 19, 2000, and IDENTIFY all
     PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
13   RELATE TO such facts.

14
15   Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

16   including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

17   MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

18   inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

19   owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

20   relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

21   Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

22   and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

23   created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

24   protectible. Mattel contends that the MGA parties cannot show burden sufficient to outweigh

25   Mattel's need for the information sought.

26       In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

27   MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

28
     Bryant v. Mattel, Inc.,                                                            16
     CV-04-09049 SGL (RNBx)

EXHIBIT: B
PAGE: 59

1   As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2   assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3   they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4   represent that they responded to the interrogatories in good faith by providing the principal facts

5   supporting their contentions, and therefore are in compliance with Rule 33.

6        Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7   Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8   request for all facts, the identity of all persons and all supporting documents, render the

9   interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10  reasonably sufficient response.  The MGA parties' supplemental response includes their

11  contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12  MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13  Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14  three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15  sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16  2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17  have produced shapes that were different from the actual shape of the final three-dimensional

18  Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19  MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20  released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21  practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22  1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23  fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24  to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25  existing doll parts that was never intended to, and did not, provide an accurate representation of

26  what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27  arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

1   conception of what could have been developed into a tangible item that would have qualified for

2   protection under a design patent, such conception would not have covered the shape of the final

3   Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4   nor any subsequent three-dimensional Bratz shape. The MGA parties' supplemental responses to

5   Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6   persons with knowledge and documents relevant to the MGA parties' contentions.

7         Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8   The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9   identified persons with knowledge, and identified documents to support their contentions. To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12        Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15        Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17        **Interrogatory No. 40:** IDENTIFY each and every STORAGE DEVICE that
          YOU have used for any purpose which contains or contained DIGITAL
18        INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
          to January 1, 2002.

19

20        **Interrogatory No. 47:** IDENTIFY each and every SOURCE OF
          INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
21        ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
          RELATE TO the time period prior to February 28, 2001 (regardless of when such
22        DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
          transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002. The MGA parties did not provide any substantive

25  response to No. 47.

26        Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information. Further, Mattel contends

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          18

EXHIBIT: B
PAGE: 61

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information.  Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices.  In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10   Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15   During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47.  The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24   The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

1   Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2   than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3   pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4   cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5   collection of documents produced in this action.  The MGA parties also represent that they have

6   agreed to provide additional testimony on this topic.

7          Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8   The interrogatories seek relevant information about the identity of each storage device that

9   contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10   sources of information from which the MGA parties collected documents in this action that refer

11   or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12   not a reasonable substitute for the information requested in the interrogatories because it would

13   not necessarily identify all storage devices used by the MGA parties during the relevant period.

14   The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15   other information.  The MGA parties have failed to establish that the interrogatories are unduly

16   burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17   Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18   witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19   in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20   H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21          Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22          **Interrogatory No. 46:**  Without disclosing the content of communications which
      are protected by the attorney-client privilege, state fully and in detail all facts
23      which REFER OR RELATE TO any dispute regarding THIS ACTION between,
      on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the
24      other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
      any and all disputes which were or have been asserted as a basis for, or which
25      underlie, contributed to or were a factor in, the withdrawal, termination and/or
      substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this
26      ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
      DOCUMENTS that REFER OR RELATE TO such facts.

27

28

1 | Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2 | information protected by either the attorney-client privilege or the work product doctrine.

3 | Further, Mattel contends that the requested facts are relevant and discoverable. Mattel reasons

4 | that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5 | motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6 | be relevant to the case. For example, Mattel contends that O'Melveny may have withdrawn

7 | because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8 | conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9 | the State Bar Act." Mattel's Motion at p. 38.

10 | The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11 | "dispute" with former counsel, and moreover, that the information sought is protected by the

12 | work product doctrine and/or attorney-client privilege. The MGA parties reason that even if

13 | Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14 | claims and defenses in this action, and therefore the requested information is irrelevant and

15 | outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16 | this action, such that revelation of the substance of the dispute would necessarily reveal the

17 | thought processes of trial counsel and the communication of those thought processes to the MGA

18 | parties.

19 | Mattel's motion to compel is denied as to Request No. 46. The interrogatory is not

20 | tethered to any particular claim or defense. Nor is the interrogatory directed at uncovering the

21 | factual events giving rise to any claim or defense. Instead, the interrogatory assumes that there

22 | was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23 | misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24 | and that this "dispute" potentially relates to a claim or defense in this suit. There is no evidence,

25 | however, to substantiate such a series of assumptions. Although the publicly available

26 | information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27 | without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28 |

EXHIBIT: B
PAGE: 64

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5      The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine. Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege. See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007). Nor have the MGA parties

10  waived the attorney-client privilege. Although the MGA parties discussed the reasons for their

11  substitution of counsel with the press, there has been no showing that the information they

12  disclosed revealed the substance of an attorney-client privileged communication.

13                          V. CONCLUSION

14      For the reasons set forth above, it is hereby ordered as follows:

15      1. Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16  43-44 and 47. The MGA parties shall serve supplemental responses to said interrogatories no

17  later than February 26, 2008.

18      2. Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19  50.

20  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21  Mattel shall file this Order with the Clerk of Court forthwith.

22

23  Dated: February 15, 2008

24                                      HON. EDWARD A. INFANTE (Ret.)
                                             Discovery Master
25

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                            22

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 15, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT: B
PAGE: 66

# EXHIBIT C
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT C
# TO DECLARATION OF
# JEAN PIERRE NOGUES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: March 31, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
==========================================================================
=
PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                          Theresa Lanza
        Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER              ATTORNEYS PRESENT FOR MATTEL:
BRYANT: Matthew M. Werdegar              Jon D. Corey

ATTORNEYS PRESENT FOR MGA:
Thomas J. Nolan


PROCEEDINGS:    ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION
                (DOCKET #2386) FOR REVIEW OF DISCOVERY MASTER'S FEBRUARY
                15, 2008, AND FEBRUARY 20, 2008, ORDERS

                ORDER RE USE OF "ATTORNEY EYES ONLY" DOCUMENTS IN
                SETTLEMENT DISCUSSIONS

                ORDER RE UNDER SEAL DOCUMENTS

                                                            Initials of Deputy Clerk: jh
                                                            Time: 00/58


EXHIBIT: C
PAGE: 67

## I. Discovery Motion

The Court **GRANTS IN PART AND DENIES IN PART** Mattel's Motion Objecting to Portions of the Discovery Master's February 15 and February 20 Orders.

As to Interrogatories 27-29, the Court leaves undisturbed the Discovery Master's findings regarding burdensomeness. The Court notes, however, that the Discovery Master's conclusion that the interrogatories are overly broad appears to have been based on an erroneous standard of relevancy. By requiring that Mattel "show[] how each and every concept embedded in its multi-faceted definition of 'Bratz invention' is relevant to interpreting the term 'invention' for purposes of enforcing the 'Employee Confidential Information and Inventions Agreement' signed by Bryant," the Discovery Master appears to have applied a higher standard of relevancy than that which should be applied in discovery. See Fed. R. Civ. P. 26(b)(1) (setting forth the discovery relevancy standard). The parties' competing legal arguments regarding the proper interpretation of the Inventions Agreement are yet to be resolved and therefore should not be used to limit discovery on relevant issues.

However, the Court also recognizes that, as the Discovery Master accurately found, responding to these interrogatories is no small undertaking. The interrogatories ask for identification of all Bratz inventions in three different distinct periods of time. The interrogatories themselves broadly define their relevant terms. The interrogatories are made no less burdensome by the requirement that the responding party "identify all personal with knowledge" and identify "all documents which refer or relate to" such facts.

Mattel's offer to limit these interrogatories to alleviate the attendant burden comes too late in the process to be given serious consideration by the Court; the Court's duty at this juncture is to determine whether the Discovery Master's ruling on the interrogatories -- as propounded -- is clearly erroneous or contrary to law.

In the Court's view, the Discovery Master underestimated the weight on the Rule 26(b)(2)(C)(iii) "benefit" side of the scale by applying an inappropriate relevancy standard, but he nevertheless correctly determined that the "burden" side of the scale bears a heavy load. After a re-evaluation by the Court of the benefit of the discovery sought under the discovery relevance standard, seeking to strike the required balance, the Court is led to the same conclusion as was the Discovery Master, and thus finds that the ruling on Interrogatories 27-29 was neither clearly erroneous nor contrary to law.

In light of the financial discovery already produced in these consolidated actions, the Discovery Master's ruling that Interrogatory 39 is cumulative is neither clearly erroneous nor contrary to law.

As to Interrogatory 41, in light of the possibility that casual interactions between MGA and Mattel employees may have constituted "first contact" between former Mattel employees and MGA, the Discovery Master's ruling, which sought to strike a balance between the burden and likely

Initials of Deputy Clerk: jh
Time: 00/58

EXHIBIT: C
PAGE: 68

benefit of such discovery, is neither clearly erroneous nor contrary to law.

The Discovery Master's ruling regarding Interrogatory 46 is neither clearly erroneous nor contrary to law. With that interrogatory, Mattel seeks discovery regarding MGA's dispute with its former counsel related to this action. Mattel's supposition that such discovery may prove to be relevant is, as counsel conceded at oral argument, speculation.

The Court reserves ruling on Interrogatories 48-50, regarding MGA's trade dress claims against Mattel. As recognized by the parties, this is a Phase 2 issue, and the Court denies this part of Mattel's motion without prejudice. Mattel may raise the issue again at an appropriate time after the Court lifts the stay on Phase 2 discovery.

Based on the discovery provided by Carter Bryant, the Discovery Master concluded that Carter Bryant was in substantial compliance with Interrogatory 47. Upon review, the Court is unable to conclude that the Discovery Master's ruling on this issue is clearly erroneous or contrary to law.

The Court **GRANTS** Mattel's motion as to one issue: That MGA be required to identify documents by Bates number. The Court recognizes that this imposes a significant burden, but in striking the balance between burden and benefit, the Court considers, *inter alia*, "the needs of the case." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, identification by Bates number the documents in response to any party's contention interrogatory is imperative to narrowing the potential for dispute between the parties at trial as to whether a particular document falls into those "identified" in response to a given contention interrogatory. Accordingly, the Court **GRANTS** Mattel's motion on this limited issue. The remainder of Mattel's motion is **DENIED**.

## II. Use of "Attorney Eyes Only" Documents in Mediation

At the request of the Settlement Officer, the Court invited the parties' comments regarding the use of "Attorney Eyes Only" documents during settlement conference. The Court has reviewed the position statements, and makes the following ruling:

With the exception of forward-looking documents (including documents related to future product development, future marketing strategies, and financial projections) and documents related to Isaac Larian's personal family finances, the Settlement Officer shall have the discretion to use documents previously designated as "Confidential" and/or "Attorney Eyes Only" to further settlement discussions. Absent further Order of the Court, anyone participating in settlement discussions with the Settlement Officer are prohibited from taking notes regarding such documents or removing such documents, in any form, from any settlement discussions, or otherwise disclosing the contents of such documents outside the settlement discussions.

The Settlement Officer shall provide all participants of settlement discussions with notice of this order. A failure to comply with this Order shall be punishable as contempt of court.

EXHIBIT: C
PAGE: 69

### III. Under Seal Filings

As the Court has noted on a number of occasions, an inordinate amount of documents have been filed under seal in this case. It is the Court's intention, consistent with its duties under the First Amendment, to order that the entire record in this case be unsealed, subject only to certain exceptions identified by the parties and supported by a showing of good cause.

The parties are ordered to prepare a joint report identifying all documents within the Court record that any party contends should remain under seal following the hearing on the parties' motions for partial summary judgment. The report shall set forth all parties' respective positions regarding all identified documents and shall itself be filed under seal no later than April 18, 2008.

Should the Court order that any document remain under seal, in order to prevent inadvertent disclosure, the party requesting that the document remain sealed will be required to file a notice that provides to the Court all locations of such document in the Court's record by providing the date of filing, the docket number of the filing, any relevant exhibit number, and any relevant page number(s).

**IT IS SO ORDERED.**

**EXHIBIT: C**
**PAGE: 70**

## NOTICE PARTY SERVICE LIST

Case No.   CV 04-09049 SGL(RNBx)   **Case Title**   Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of March 31, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |

**Initials of Deputy Clerk** jh

**EXHIBIT:  C**
**PAGE:  71**

# EXHIBIT D

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT D

# TO DECLARATION OF

# JEAN PIERRE NOGUES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                                    Date: March 12, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                                 None Present
        Courtroom Deputy                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                               None Present

PROCEEDINGS:    **ORDER REFERRING (1) MOTION FOR REVIEW OF PORTIONS OF
                DISCOVERY MASTER'S FEBRUARY 15, 2008, ORDER (DOCKET #4717)
                AND (2) MOTION FOR ISSUANCE OF LETTER OF REQUEST (DOCKET
                #4721) TO DISCOVERY MASTER**

        The Court has received the above-referenced discovery motions, and refers them to the
Discovery Master.

        The Discovery Master may issue appropriate dispositions of these motions. The Discovery
Master shall consider the issues presented by the motion for review as if presented to him in the
first instance; he should not apply the "clearly erroneous or contrary to law" standard that the Court
would apply.

        This procedure – in which the Phase 2 Discovery Master may review prior discovery orders
– shall apply only to motions seeking review of discovery orders issued previously by the Phase 1
Discovery Master to which timely objections were made prior to the imposition of the stay as to
Phase 2 discovery. The parties may not seek leave to review before the Phase 2 Discovery
Master any other discovery orders issued previously by the Phase 1 Discovery Master.

        **IT IS SO ORDERED.**

MINUTES FORM 90                                     Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            1

EXHIBIT: D
PAGE: 72

# EXHIBIT E

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT E

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

2144409.1

# EXHIBIT F
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT F
# TO DECLARATION OF
# JEAN PIERRE NOGUES

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|----|----|----|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09039<br>Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware<br>corporation, | MATTEL, INC.'S NOTICE OF<br>MOTION AND MOTION |
| 16 | Defendant. | OBJECTING TO PORTIONS OF<br>DISCOVERY MASTER'S (1) |
| 17 | | FEBRUARY 15, 2008 ORDER<br>REGARDING MATTEL'S MOTION |
| 18 | AND CONSOLIDATED ACTIONS | TO COMPEL RESPONSES TO<br>INTERROGATORIES BY THE MGA |
| 19 | | PARTIES; AND (2) FEBRUARY 20,<br>2008 ORDER REGARDING |
| 20 | | MATTEL'S MOTION TO COMPEL<br>RESPONSES TO |
| 21 | | INTERROGATORIES BY CARTER<br>BRYANT; AND MEMORANDUM OF |
| 22 | | POINTS AND AUTHORITIES |
| 23 | | [Notice of Lodging and Declaration of<br>B. Dylan Proctor filed concurrently] |
| 24 | | |
| 25 | | Hearing Date:     March 24, 2008<br>Time:               10:00 a.m.<br>Place:              Courtroom 1 |
| 26 | | |
| 27 | | **Phase 1**<br>Discovery Cut-off:       January 28, 2008<br>Pre-trial Conference:   April 21, 2008 |
| 28 | | Trial Date:               May 27, 2008 |

EXHIBIT: F
PAGE: 92

07209/2420393.1

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 81 of 185   Page ID
#:169246
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 2 of 31

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that on March 24, 2008, at 10:00 a.m., or as soon

3 | thereafter as counsel may be heard, in the Courtroom of The Honorable Stephen G.

4 | Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and

5 | counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to

6 | overrule portions of (1) the Discovery Master's February 15, 2008 Order Granting in

7 | Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos.

8 | 27-44 and 46-50 by the MGA Parties; and (2) the Discovery Master's February 20,

9 | 2008 Order Denying Mattel's Motion to Compel Responses to Interrogatory Nos. 27-

10 | 33, 36-40, 42, 45 and 47 by Carter Bryant.

11 |     This Motion is made pursuant to Federal Rules of Civil Procedure 72(a) on the

12 | grounds that the Discovery Master's Orders were clearly erroneous and contrary to

13 | law in its rulings denying Mattel's motions to compel the MGA parties to provide

14 | responses to Interrogatory Nos. 27-39, 41 and 46-50 and to compel Carter Bryant to

15 | provide responses to Interrogatory Nos. 27-33, 36-39, 42 and 47.

16 |     This Motion is based on this Notice of Motion and Motion, the accompanying

17 | Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

18 | concurrently herewith, the Notice of Lodging filed concurrently herewith, and all

19 | other matters of which the Court may take judicial notice.

20 |                     **Statement of Rule 7-3 Compliance**

21 |     The parties met and conferred regarding this motion on February 26, 2008, and

22 | dates thereafter.

23 |

24 | DATED:  March 3, 2008           QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

25 |

26 |

                           By /s/ B. Dylan Proctor

27 |                               B. Dylan Proctor
                              Attorneys for Mattel, Inc.

28 |

EXHIBIT: F
PAGE: 93

-2-

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 82 of 185   Page ID
#:169247
Case 2:04-cv-09049-SGL-RNB     Document 2386     Filed 03/03/2008     Page 3 of 31

1

# TABLE OF CONTENTS

2

**Page**

3

PRELIMINARY STATEMENT ................................................................................... 1

4

5

FACTUAL BACKGROUND ........................................................................................ 4

6

ARGUMENT ................................................................................................................ 6

7   I.      THE DISCOVERY MASTER'S ORDERS ARE CLEARLY
           ERRONEOUS OR CONTRARY TO LAW AS TO
8          INTERROGATORY NOS. 27-29 BECAUSE DEFENDANTS
9          IMPROPERLY LIMIT THEIR RESPONSES TO PATENTS ........................... 7

10  II.     THE DISCOVERY MASTER'S ORDERS AS TO INTERROGATORY
           NO. 39 ARE CLEARLY ERRONEOUS OR CONTRARY TO LAW ........... 10
11

12          A.      The Discovery Master's Order Denying Mattel's Motion to
                   Compel the MGA Parties to Provide Responses to Interrogatory
13                 No. 39 Is Clearly Erroneous ..................................................................... 11

14

15          B.      The Discovery Master's Order Denying Mattel's Motion to
                   Compel Carter Bryant to Provide a Response to Interrogatory No.
16                 39 Is Clearly Erroneous ........................................................................... 13

17  III.    THE DISCOVERY MASTER'S ORDER AS TO INTERROGATORY
           NO. 41 IS CLEARLY ERRONEOUS OR CONTRARY TO LAW ................ 15
18

19  IV.     THE DISCOVERY MASTER'S ORDER AS TO INTERROGATORY
           NO. 46 IS CLEARLY ERRONEOUS OR CONTRARY TO LAW ................ 17
20

21  V.      THE DISCOVERY MASTER'S ORDER AS TO INTERROGATORY
           NOS. 48-50 IS CLEARLY ERRONEOUS OR CONTRARY TO LAW ........ 19
22

23  VI.     THE DISCOVERY MASTER'S ORDER AS TO BRYANT'S
           RESPONSE TO INTERROGATORY NO. 47 IS CLEARLY
24         ERRONEOUS OR CONTRARY TO LAW ...................................................... 20

25  VII.    THE DISCOVERY MASTER'S ORDERS ARE CLEARLY
           ERRONEOUS OR CONTRARY TO LAW BECAUSE THEY DO NOT
26         REQUIRE DEFENDANTS TO SPECIFICALLY IDENTIFY
27         DOCUMENTS ................................................................................................. 23

28

i

EXHIBIT: F
PAGE: 94

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 83 of 185   Page ID
#:169248
Case 2:04-cv-09049-SGL-RNB     Document 2386     Filed 03/03/2008     Page 4 of 31

1  CONCLUSION..........................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT: F
PAGE: 95

07209/2420393.1

ii

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S FEBRUARY 15, 2008 AND
FEBRUARY 20, 2008 ORDERS

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

## CASES

5

A. Farber and Partners, Inc. v. Garber,
   234 F.R.D. 186 (C.D. Cal. 2006) ........................................................ 14

6

7

Clean Earth Remediation and Const. Serv's, Inc. v. American Intern,
   245 F.R.D. 137 (S.D.N.Y. 2007)......................................................24

8

In re Heritage Bond Litigation,
   2004 WL 1970058 (C.D. Cal. July 23, 2004) ................................... 14

9

10

In re Katrina Canal Breaches Consolidated Litig.,
   2007 WL 1959193 (E.D. La. 2007) ................................................... 16

11

Johnson v. Kraft Foods North America, Inc.,
   236 F.R.D. 535 (D. Kan. 2006).......................................................... 25

12

13

King v. Georgia Power Co.,
   50 F.R.D. 134 (N.D. Ga. 1970).......................................................... 16

14

Miller v. Federal Express Corp.,
   186 F.R.D. 376 (W.D. Tenn. 1999).................................................... 24

15

16

Morgan v. Woessner,
   997 F.2d 1244 (9th Cir. 1993)............................................................ 13

17

18

Schaap v. Executive Indus., Inc.,
   130 F.R.D. 384 (N.D. Ill. 1990) ........................................................ 20

19

Seff v. General Outdoor Advertising Co.,
   11 F.R.D. 597 (N.D. Ohio 1951)........................................................ 16

20

21

U.S. Equal Employment Opportunity Comm'n v. Ian Schrager Hotels, Inc.,
   2000 WL 307470, at *4 (C.D. Cal. 2000)........................................... 13

22

Ukiah Automotive Investments v. Mitsubishi Motors of North America,
   2006 WL 1348562 (N.D. Cal. May 17, 2006) ................................... 24

23

24

Ultratech, Inc. v. Tamarach Scientific Co.,
   2005 WL 40074 (N.D. Cal. Jan 05, 2005) ......................................... 24

25

26

VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
   1999 WL 386949 (D. Kan 1999) ....................................................... 24

27

Wright v. Touhy,
   2003 WL 22439864, at *4 (N.D. Ill. 2003).......................................... 8

28

EXHIBIT: F
PAGE: 96

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 85 of 185   Page ID
#:169250
Case 2:04-cv-09049-SGL-RNB     Document 2386     Filed 03/03/2008     Page 6 of 31

1                              <u>**STATUTES**</u>

2   Cal. Penal Code § 641.3 ............................................................................................ 12

3   Fed R. Civ. P. 26(b)(2) .............................................................................................. 16

4   Fed. R. Civ. P. 26(b)(1) ............................................................................................. 18

5   Fed. R. Civ. P. 33(d) ................................................................................................. 24

6   Fed. R. Civ. Proc. 72(a) .............................................................................................. 6

7

8                          <u>**OTHER AUTHORITIES**</u>

9   California Rule of Professional Conduct 3-700(c) ....................................................... 18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                              **EXHIBIT: F**

28                                                              **PAGE: 97**

07209/2420393.1

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S FEBRUARY 15, 2008 AND
FEBRUARY 20, 2008 ORDERS

Case 2:04-cv-09049-DOC-RNB  Document 5192-2  Filed 04/15/09  Page 86 of 185  Page ID
#:169251
Case 2:04-cv-09049-SGL-RNB    Document 2386    Filed 03/03/2008    Page 7 of 31

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### Preliminary Statement

3    The Discovery Master's February 15, 2008 and February 20, 2008 Orders deny

4  Mattel discovery of critical information.  In response to interrogatories seeking

5  information plainly relevant to the claims and defenses in this case, Defendants have

6  responded either by providing no answers or by providing incomplete and evasive

7  answers.  Mattel is entitled to complete responses consistent with the Federal Rules of

8  Civil Procedure.  The Discovery Master's Orders denying Mattel such responses are

9  clearly erroneous and/or contrary to law and should be overruled.

10    First, Defendants have failed to provide any legitimate response to

11  interrogatories Mattel first served nine months ago seeking the identification of Bratz

12  inventions created during critical time periods -- during Bryant's employment with

13  Mattel, and the periods immediately prior to and after.  Knowing precisely which

14  Bratz designs and other inventions Defendants contend were created before or just

15  after Bryant worked at Mattel, and which they admit were created while Bryant was

16  employed by Mattel, is obviously crucial information.  Yet in their responses,

17  Defendants identify no Bratz inventions at all, instead limiting their responses to a

18  definition of "inventions" "as used in patent law," which conflicts with the definition

19  in Mattel's interrogatories and is simply bizarre since this is not a patent case.  The

20  Discovery Master failed to address that improper limitation in finding Defendants'

21  non-responses "adequate."

22    Second, Defendants refuse to identify the financial accounts they have

23  maintained since January 1, 1999.  The Discovery Master previously compelled Isaac

24  Larian to provide nearly identical information, recognizing that it is relevant to net

25  worth and also "likely to lead to information regarding payments from Larian to

26  Bryant, which is relevant to, among other things, the timing of the creation of Bratz."

27  Yet, the Discovery Master found that to compel MGA and Bryant to provide similar

28  information would be duplicative and cumulative.  Not so.  MGA and Bryant have

07209/2420393.1

**EXHIBIT: F**
**PAGE: 98**

-1-

Case 2:04-cv-09049-DOC-RNB  Document 5192-2  Filed 04/15/09  Page 87 of 185  Page ID
#:169252
Case 2:04-cv-09049-SGL-RNB  Document 2386  Filed 03/03/2008  Page 8 of 31

1  only produced limited financial information. The identity of MGA's and Bryant's
2  accounts, which may be the only accounts that reflect payments to Bryant or other
3  witnesses, or payments to other Mattel employees while employed by Mattel, are not
4  duplicative of the identity of Larian's accounts.

5  Third, MGA refuses to provide the date it first contacted former Mattel
6  employees who now work for MGA or have worked for MGA since January 1, 1999.
7  The Discovery Master recognized that such information was "clearly relevant to
8  Mattel's claims" and "conspicuously absent from the MGA parties' response," yet
9  nevertheless denied Mattel the information, finding that to compel it would pose an
10  undue burden. MGA, however, failed to make any showing of burden at all. Mattel
11  is entitled to the information, which is central to Mattel's claims that MGA poached
12  Mattel employees and encouraged them to abscond with Mattel's trade secrets.

13  Fourth, MGA refuses to provide any information regarding the facts
14  surrounding its dispute with its former counsel. The Discovery Master found that
15  Mattel's interrogatory seeking that information was overbroad because it seeks facts
16  regarding "any and all" disputes. But Mattel's interrogatory was narrowly tailored to
17  only those disputes relating to this case. The Discovery Master also held that the
18  information was protected by the attorney-client privilege. That finding ignores that
19  Mattel expressly carved out of its interrogatory "communications which are protected
20  by the attorney-client privilege." In any event, the underlying facts are not privileged.
21  Indeed, MGA has already publicly discussed some facts regarding the dispute,
22  showing they are not privileged.

23  Fifth, MGA has failed to identify basic information regarding its trade dress
24  claims against Mattel. Mattel's interrogatories ask MGA to identify the trade dress
25  that MGA contends Mattel has infringed. Mattel also asks MGA to specifically
26  identify allegedly infringing Mattel products. Mattel needs this information in order
27  to adequately prepare its defense. Yet, MGA has provided only general responses,
28  without identifying specific trade dress or allegedly infringing products. Even MGA

07209/2420393.1

EXHIBIT: F
PAGE: 99

-2-

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 88 of 185   Page ID
#:169253
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 9 of 31

1   recognizes that its responses are inadequate; it represented to the Discovery Master

2   that it would supplement them in connection with Phase 2 discovery.

3   Notwithstanding MGA's admission, the Discovery Master ruled that MGA's

4   responses were "in substantial compliance," thus depriving Mattel of information

5   critical to its defense.

6       Sixth, Bryant refuses to provide an adequate response to Mattel's interrogatory

7   seeking the sources of information from which Bryant searched for and/or collected

8   key documents in this case -- documents that relate to Bratz and the period prior to

9   February 28, 2001. Although the Discovery Master recognized the importance of this

10  information and compelled MGA to provide a complete response, the Discovery

11  Master found Bryant's response adequate even though Bryant provided only a broad,

12  useless description of where he searched for documents. Mattel is entitled to a

13  complete, detailed response that will serve the purpose of the interrogatory -- to

14  enable Mattel to test Bryant's production. That is especially important here, where

15  Bryant has misrepresented his document collection and production efforts and there is

16  substantial evidence that Bryant has spoliated evidence.

17      Last, as the Discovery Master has previously held, in responding to

18  interrogatories that seek the identification of documents, Defendants are required to

19  specifically identify the documents by Bates number where possible. Defendants

20  have failed to identify documents by Bates number in nearly all of their responses.

21  Mattel raised this issue before the Discovery Master. Despite the Discovery Master's

22  previous ruling on the issue, his February 15, 2008 and February 20, 2008 Orders do

23  not require Defendants to identify documents with specificity. They are thus clearly

24  erroneous and contrary to the very law the Discovery Master has previously cited.

25      The Court should overrule the Discovery Master's Orders in part, and compel

26  (1) the MGA parties to provide further responses to Interrogatory Nos. 27-39, 41 and

27  46-50, and (2) Carter Bryant to provide further responses to Interrogatory Nos. 27-33,

28  36-39, 42 and 47.

-3-

EXHIBIT: F
PAGE: 100

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 89 of 185   Page ID
#:169254
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 10 of 31

1                              **Factual Background**

2          Mattel's Interrogatories and Defendants' Responses.  Between September 21,

3    2007 and October 25, 2007, Mattel served five sets of interrogatories on defendants

4    Carter Bryant ("Bryant") and MGA, MGA Hong Kong, MGAE de Mexico S.R.L. de

5    C.V., Isaac Larian and Carlos Gustavo Machado Gomez (collectively "MGA" or "the

6    MGA parties").[1]  Those five sets of interrogatories ask each of the defendants the

7    same 24 questions (Interrogatory Nos. 27-50).[2]  These interrogatories were re-served

8    after a number of them were previously served in June 2007;[3] by Order dated

9    September 5, 2007, the Discovery Master instructed Mattel to re-serve the

10   interrogatories with his guidance on numerosity and counting issues.[4]

11         Defendants' initial responses to these interrogatories consisted almost entirely

12   of objections.[5]  On December 13, 2007, Mattel filed a motion to compel Carter

13   Bryant to provide further responses to Interrogatory Nos. 27-33, 36-40, 42, 45 and

14

15

16        [1]  See Mattel's Revised Third Set of Interrogatories, dated September 21, 2007, attached as Exhibit 1 to the concurrently filed Declaration of B. Dylan Proctor, dated
17   March 3, 2007 ("March 3 Proctor Dec."); Mattel's Amended Fourth Set of Interrogatories, dated October 23, 2007, March 3 Proctor Dec., Exh. 2; Mattel's Fifth
18   Set of Interrogatories, dated October 19, 2007, March 3 Proctor Dec., Exh. 3; Mattel's Sixth Set of Interrogatories, dated October 23, 2007, attached as Exhibit 11 to the
19   Declaration of B. Dylan Proctor, dated December 20, 2007, Notice of Lodging, Exh. 4 ("December 20 Proctor Dec."); Mattel's Seventh Set of Interrogatories, dated
20   October 25, 2007, March 3 Proctor Dec., Exh. 4.
          [2]  Id.
          [3]  See Mattel's Third Set of Interrogatories, dated June 7, 2007, December 20
21   Proctor Dec., Exh. 34.
          [4]  See Order Granting Joint Motion for Protective Order, dated September 5,
22   2007, at pp. 4-5, December 20 Proctor Dec., Exh. 33.
          [5]  See MGA Parties' Responses and Objections to Mattel's Revised Third Set of
23   Interrogatories, December 20 Proctor Dec., Exhs. 13, 21-24; MGA Parties' Responses and Objections to Mattel's Amended Fourth Set of Interrogatories, December 20
24   Proctor Dec., Exhs. 14, 25-28;  MGA Parties' Responses and Objections to Mattel's Fifth Set of Interrogatories, December 20 Proctor Dec., Exhs. 15-18; MGA Parties'
25   Responses and Objections to Mattel's Seventh Set of Interrogatories, December 20 Proctor Dec., Exhs. 20, 29-32; Bryant's Responses and Objections to Mattel's Revised
26   Third Set of Interrogatories, dated November 15, 2007, attached as Exhibit 5 to the Declaration of B. Dylan Proctor, dated December 13, 2007, Notice of Lodging, Exh.
27   2 ("December 13 Proctor Dec."); Bryant's Responses and Objections to Mattel's Amended Fourth Set of Interrogatories, dated November 15, 2007, December 13
28   Proctor Dec., Exh. 6; Bryant's Responses and Objections to Mattel's Fifth Set of Interrogatories, dated November 21, 2007, December 13 Proctor Dec., Exh. 7.

07209/2420393.1

**EXHIBIT: F
PAGE: 101**

-4-

Case 2:04-cv-09049-DOC-RNB Document 5192-2 Filed 04/15/09 Page 90 of 185 Page ID
#:169255
Case 2:04-cv-09049-SGL-RNB    Document 2386    Filed 03/03/2008    Page 11 of 31

1 | 47.[6] One week later, Mattel filed a motion to compel the MGA parties to provide

2 | further responses to Interrogatory Nos. 27-44 and 46-50.[7]

3 | After Mattel filed its motions to compel, Defendants supplemented their

4 | responses. Carter Bryant supplemented certain of his responses on December 17,

5 | 2007 and again on January 28, 2008.[8] The MGA parties supplemented certain of

6 | their responses on January 7, 2008 and again on January 28, 2008.[9] However, many

7 | of Defendants' responses remain deficient, consisting either of no answer, or

8 | incomplete and evasive answers.

9 | The Discovery Master's Orders. On February 11, 2008, the parties had an

10 | approximately one-hour hearing before the Discovery Master at which both of

11 | Mattel's motions to compel were addressed along with five other discovery motions.[10]

12 | On February 15, 2008, the Discovery Master entered an Order Granting in Part and

13 | Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44

14

15

16

17 | [6] Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27-33, 36-
40, 42, 45 and 47) by Carter Bryant, dated December 13, 2007, Notice of Lodging,
18 | Exh. 1.
[7] Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27-44 and
19 | 46-50) by the MGA Parties, dated December 20, 2007, Notice of Lodging, Exh. 3.
[8] See Supplemental Werdegar Declaration in Support of Carter Bryant's
Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories, dated
20 | February 6, 2008, Notice of Lodging, Exh. 17 ("Supp. Werdegar Dec."), ¶ 4; Bryant's
Second Supplemental Responses and Objections to Mattel's Revised Third Set of
21 | Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 5; Bryant's
Second Supplemental Responses and Objections to Mattel's Amended Fourth Set of
22 | Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 6; Bryant's
Second Supplemental Responses and Objections to Mattel's Fifth Set of
23 | Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 7.
[9] See Supplemental Declaration of Timothy A. Miller in Support of MGA
24 | Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to
Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties, dated February 8, 2008,
25 | Notice of Lodging, Exh. 18 ("Supp. Miller Dec."), ¶ 2; MGA Parties' Third
Supplemental Responses to Mattel's Revised Third Set of Interrogatories, dated
26 | January 28, 2008, March 3 Proctor Dec., Exh. 8 and Supp. Miller Dec., Exhs. 1, 5, 7,
9; MGA Parties' Third Supplemental Responses to Mattel's Amended Fourth Set of
27 | Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 9 and Supp.
Miller Dec., Exhs. 3, 6, 8, 10.
[10] Transcript of February 11, 2008 Hearing before Discovery Master, March 3
28 | Proctor Dec., Exh. 10.

EXHIBIT: F
PAGE: 102

07209/2420393.1

-5-

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 91 of 185   Page ID
#:169256
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 12 of 31

1 and 46-50 by the MGA Parties.[11]  In that Order, the Discovery Master denied Mattel's

2 motion to compel as to Interrogatory Nos. 27-29, 39, 41 (in part), 46 and 48-50.[12]  On

3 February 20, 2008, the Discovery Master entered an Order Denying Mattel's Motion

4 to Compel Responses to Interrogatory Nos. 27-33, 36-40, 42, 45 and 47 by Carter

5 Bryant.[13]

6      The Parties' Meet and Confer.  On February 25, 2008, Mattel wrote to counsel

7 for MGA seeking to meet and confer regarding Mattel's intended appeal of portions

8 of the Discovery Master's February 15, 2008 Order.[14]  The parties met and conferred

9 on February 29, 2008, but were unable to come to an agreement regarding Mattel's

10 intended appeal.[15]

11      On February 27, 2008, Mattel wrote to counsel for Carter Bryant seeking to

12 meet and confer regarding Mattel's intended appeal of portions of the Discovery

13 Master's February 20, 2008 Order.[16]  On February 28, 2008, counsel for Carter Bryant

14 responded to Mattel's letter, reiterating Bryant's position and stating that further meet

15 and confer did not seem necessary.[17]

16 **Argument**

17      By the stipulation and court order appointing a Discovery Master, the

18 Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings

19 should be overruled if they are "clearly erroneous or [] contrary to law." Fed. R. Civ.

20 Proc. 72(a).

21

22   [11]  Order Granting in Part and Denying in Part Mattel's Motion to Compel
Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated

23 February 15, 2008, March 3 Proctor Dec., Exh. 11 ("February 15 Order").
  [12]  Id.

24   [13]  Order Denying Mattel's Motion to Compel Responses to Interrogatory Nos.
27-33, 36-40, 42, 45 and 47 by Carter Bryant, dated February 20, 2008, March 3

25 Proctor Dec., Exh. 12 ("February 20 Order").
  [14]  Letter from Proctor to Miller, dated February 25, 2008, March 3 Proctor Dec.,

26 Exh. 13.
  [15]  March 3 Proctor Dec., ¶ 14.

27   [16]  Letter from Proctor to Werdegar, dated February 27, 2008, March 3 Proctor
Dec., Exh. 14.

28   [17]  Letter from Werdegar to Proctor, dated February 28, 2008, March 3 Proctor
Dec., Exh. 15.

-6-

EXHIBIT: F
PAGE: 103

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 92 of 185   Page ID
#:169257
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 13 of 31

**I.    THE DISCOVERY MASTER'S ORDERS ARE CLEARLY
        ERRONEOUS OR CONTRARY TO LAW AS TO INTERROGATORY
        NOS. 27-29 BECAUSE DEFENDANTS IMPROPERLY LIMIT THEIR
        RESPONSES TO PATENTS**

The Discovery Master based his denial of Mattel's motion to compel both the

MGA parties and Bryant to provide responses to Interrogatory Nos. 27-29 on the

grounds that the interrogatories are "overbroad and unduly burdensome," and that

Mattel has not justified its definition of "Bratz Invention," which "encompass[es]

numerous intellectual property concepts."[18]  The Discovery Master found that the

MGA parties' and Bryant's responses were thus "adequate under the circumstances."[19]

That finding is clearly erroneous.

Interrogatory Nos. 27-29 seek the identity of Bratz inventions created during

key time periods -- during Bryant's employment at Mattel and shortly prior to or after

Bryant's employment at Mattel.[20]  This information is critical to Mattel's claims.

---

[18]  February 15 Order, at pp. 8-9; February 20 Order, at pp. 3-4.
[19]  Id.
[20]  Interrogatory Nos. 27-29 read as follows:

Interrogatory No. 27:  IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999 and for each BRATZ INVENTION so identified state all facts that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 28:  IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 29:  IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creation of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

(footnote continued)

-7-

07209/2420393.1

EXHIBIT: F
PAGE: 104

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 93 of 185   Page ID
#:169258
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 14 of 31

1  Whether Bryant invented Bratz while employed by Mattel, and thereby assigned the
2  rights to Bratz to Mattel pursuant to the terms of the Inventions Agreement, is at the
3  heart of this case. In order for Mattel to prepare for trial, it must know Defendants'
4  positions regarding precisely which Bratz works were created or conceived during
5  these critical periods of time, as well as the facts supporting those positions. See,
6  e.g., Wright v. Touhy, 2003 WL 22439864, at *4 (N.D. Ill. 2003) (the Federal Rules
7  "are designed to promote liberal discovery in an effort to narrow the issues for trial
8  and to prevent unfair surprise").

9       Defendants' responses provide no such information. The MGA parties and
10  Bryant identified *no* Bratz inventions, unilaterally narrowing the scope of their
11  responses to their own definition of "invention," which they both limit to "as the term
12  is used in utility patent law" and "[w]ith respect to design patents."[21] That limitation
13  makes no sense and cannot be "adequate." This is not a patent case and Mattel did
14  not ask patent law interrogatories.

15       The reason for Defendants' arbitrary limitation is clear. By limiting the
16  definition of "invention" to patents, Defendants avoid identifying key intellectual
17  property at issue in this case, including copyrightable Bratz works that Bryant created
18  while employed by Mattel. Defendants have made clear they intend to argue that the
19  Inventions Agreement applies only to patents and not other types of inventions, such
20  as copyrightable designs. Mattel disagrees with that position. While Defendants are
21  free to argue at summary judgment that only patents are subject to the Inventions
22  Agreement, that position does not preclude Mattel from discovery regarding *other*
23  Bratz inventions created or conceived during the limited time periods at issue, like
24  copyrightable works and ideas. That information is critical. Indeed, the identity of

25

26  Mattel's Revised Third Set of Interrogatories, dated September 21, 2007, March 3
    Proctor Dec., Exh. 1.
         21  MGA's Third Supplemental Responses to Mattel's Revised Third Set of
27  Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 8; Bryant's
    Second Supplemental Responses and Objections to Mattel's Revised Third Set of
28  Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 5.

                                        -8-

EXHIBIT: F
PAGE: 105

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 94 of 185   Page ID
#:169259
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 15 of 31

1  those Bratz inventions could, in and of itself, prove liability as to a number of

2  Mattel's claims. The Discovery Master's finding that Defendants' responses, limited

3  to patents, were "adequate" precludes discovery of this plainly critical information

4  and is thus clearly erroneous or contrary to law.

5      The Discovery Master's finding that the definition of "BRATZ INVENTION"

6  is overbroad is also clearly erroneous.[22] Mattel's definition is necessarily

7  comprehensive because Defendants endlessly play games with definitions in

8  discovery. For example, in response to a Mattel request for admission regarding

9  whether MGA believed it was lawful to market "BRATZ" at the time it entered into

10  its September 2000 agreement with Bryant, MGA repeatedly objected that "the term

11  'BRATZ' is vague and ambiguous and, as defined by Mattel, renders the RFA

12  nonsensical as no BRATZ then existed,"[23] based on MGA's contention that "Bratz"

13  just refers to "Bratz dolls," which had not yet been created. However, Mattel had

14  defined the term "Bratz" more broadly, and indeed stated expressly in its definition

15  that "the term 'BRATZ' does not and shall not require that there be a doll existing at

16

17  [22]  The definitions of "BRATZ INVENTION" and "DESIGN" provided by Mattel
are comprehensive, but straightforward:

18
19      "BRATZ INVENTION" means any representation, idea, concept, work,
process, procedure, plan, improvement, design, or other development, whether
fixed in tangible form or not, that REFERS OR RELATES TO BRATZ,
20      including but not limited to any DESIGN that REFERS OR RELATES TO
BRATZ."

21      "DESIGN" or "DESIGNS" means any and all representations, whether two-
dimensional or three-dimensional, and whether in tangible, digital, electronic
22      or other form, including but not limited to all works, designs, artwork,
sketches, drawings, illustrations, representations, depictions, blueprints,
23      schematics, diagrams, images, sculptures, prototypes, models, samples,
rotocasts, reductions to practice, developments, inventions and/or
24      improvements, as well as all other items, things and DOCUMENTS in which
any of the foregoing are or have been expressed, embodied, contained, fixed
25      or reflected in any manner, whether in whole or in part.

26  Mattel's Revised Third Set of Interrogatories, dated September 21, 2007, at p. 4,
March 3 Proctor Dec., Exh. 1.
27      [23]  See MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth
Set of Requests for Admission, dated August 22, 2007, at pp. 3-6, attached as Exhibit
28  3 to the Supplemental Declaration of B. Dylan Proctor, dated January 7, 2008, Notice
of Lodging, Exh. 13 ("January 7 Proctor Dec.").

07209/2420393.1

-9-

EXHIBIT: F
PAGE: 106

1  the time of the event . . . that is the subject of, or otherwise relevant or responsive to

2  the Requests."[24]

3      Defendants' responses here demonstrate the same evasiveness and highlight the

4  reason the definition of "Bratz Invention" must be broad and comprehensive; if it

5  were not, and indeed even though it is, Defendants arbitrarily limit the scope of

6  "inventions" to patents. That limitation allows Defendants to shield from discovery

7  the identity of countless inventions that Mattel believes are subject to the Inventions

8  Agreement and are thus Mattel property. Mattel's definition is tailored to obtain the

9  identification of all Bratz creations or conceptions that Mattel believes are subject to

10  the Inventions Agreement and therefore Mattel's property -- information to which

11  Mattel is entitled.

12  **II.    THE DISCOVERY MASTER'S ORDERS AS TO INTERROGATORY**

13  **NO. 39 ARE CLEARLY ERRONEOUS OR CONTRARY TO LAW**

14      Interrogatory No. 39 asks the MGA parties and Bryant to identify financial

15  accounts they have maintained since January 1, 1999.[25] Defendants provided no

16  response at all. Nevertheless, the Discovery Master denied Mattel's motion to compel

17  responses to this interrogatory as to both the MGA parties and Bryant. The

18  Discovery Master's rulings are clearly erroneous or contrary to law.

19

20

21

22

23

24

25      [24]   Mattel, Inc.'s Fifth Set of Requests for Admission to MGA Entertainment, Inc.,

26  dated June 8, 2007, at p. 2, January 7 Proctor Dec., Exh. 4.
        [25]   Interrogatory No. 39 asks Defendants to "IDENTIFY each and every bank or
        financial institution account that REFERS OR RELATES TO YOU, including

27  accounts in YOUR name or for YOUR benefit, since January 1, 1999." Mattel's
        Revised Third Set of Interrogatories, dated September 21, 2007, March 3 Proctor

28  Dec., Exh. 1.

EXHIBIT: F
PAGE: 107

1
2
3

**A.     The Discovery Master's Order Denying Mattel's Motion to Compel
         the MGA Parties to Provide Responses to Interrogatory No. 39 Is
         Clearly Erroneous**

4        With respect to the MGA parties, the Discovery Master found that "the

5   financial information sought is cumulative of other discovery already sought and

6   obtained by Mattel."[26]  That is incorrect.

7        It is undisputed that the identity of financial accounts maintained by MGA are

8   relevant. In fact, the Discovery Master previously compelled Isaac Larian to produce

9   documents in response to a document request nearly identical to the interrogatory at

10  issue here.[27]  In compelling Larian to produce documents sufficient to identify each

11  of his bank accounts, financial institutions or other banking relationships since

12  January 1, 1999, the Discovery Master held that "the requested information is likely

13  to lead to information regarding payments from Larian to Bryant, which is relevant

14  to, among other things, the timing of the creation of Bratz. The requested

15  information is also likely to show Larian's income and net worth, which are relevant

16  to damages."[28]  The same is true here. It is not cumulative or duplicative to obtain the

17  same type of information from MGA. Larian's accounts provide no evidence of

18  MGA's net worth or evidence of payments made to Bryant from MGA accounts. For

19  the same reason the Discovery Master compelled Larian to produce documents

20  sufficient to identify his accounts, the MGA parties should be compelled to identify

21  their financial accounts.

22        Moreover, to the extent the Discovery Master based his ruling on the limited

23  financial information already produced by MGA, the Discovery Master's ruling is

24  also clearly erroneous. The limited financial information MGA has produced is

25

26  [26]  February 15 Order, at p. 14.
27  [27]  Order Granting in Part and Denying in Part Mattel's Motion to Compel
     Production of Documents by Isaac Larian, dated December 31, 2007, at pp. 15-16,
     March 3 Proctor Dec., Exh. 16.
28  [28]  Id.

EXHIBIT: F
PAGE: 108

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 97 of 185   Page ID
#:169262
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 18 of 31

1   clearly insufficient. For example, the only payments to Bryant -- evidence relevant to

2   show the timing of the creation Bratz -- that MGA has acknowledged providing are

3   "[d]ocuments showing royalty payments to Carter Bryant."[29] But all payments,

4   whether royalty payments or otherwise, are plainly relevant, especially payments that

5   predate the Bryant/MGA contract.

6         Moreover, the information requested may lead to direct evidence of liability

7   regarding Mattel's allegations of commercial bribery against MGA and Larian, which

8   are explicitly alleged as predicate acts for Mattel's RICO claims.[30] Payments to

9   Mattel employees, including Carter Bryant and others, during the course of their

10   Mattel employment, would themselves establish commercial bribery and other

11   tortious conduct that are the subject of Mattel's claims, but MGA has failed to provide

12   such information. See Cal. Penal Code § 641.3 (stating that any employee who

13   "solicits, accepts, or agrees to accept money or any thing of value from a person other

14   than his employer" without the employer's knowledge and in exchange for using his

15   position to benefit that other person is guilty of commercial bribery). Mattel recently

16   learned of three additional Mattel employees who worked on Bratz while employed

17   by Mattel for years.[31] Mattel is entitled to discovery that could show payments made

18   by MGA or Bryant to those individuals. The Discovery Master's Order did not

19   address the clear relevance of payments to those other than Bryant.

20

21

22

23

24

---

[29]   MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
Responses to Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties, dated
December 31, 2007, at pp. 10-11, Notice of Lodging, Exh. 10.
[30]   Mattel, Inc.'s Second Amended Answer in Case No, 05-2727 and
Counterclaims, dated July 12, 2007, ¶¶ 94-97, Prayers ¶ 12, December 20 Proctor
Dec., Exh. 41.
[31]   See Deposition of Veronica Marlow at 306:8-25, 363:15-21, January 7 Proctor
Dec., Exh. 11.

EXHIBIT: F
PAGE: 109

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 98 of 185   Page ID
#:169263
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 19 of 31

1    **B.    The Discovery Master's Order Denying Mattel's Motion to Compel**
2         **Carter Bryant to Provide a Response to Interrogatory No. 39 Is**
3         **Clearly Erroneous**

4         The Discovery Master also denied Mattel's motion to compel Carter Bryant to
5    respond to Interrogatory No. 39. That ruling was also clearly erroneous and contrary
6    to law.

7         First, the Discovery Master found the interrogatory to be overbroad.[32] But, as
8    described in Section II.B above, the Discovery Master compelled Isaac Larian to
9    produce documents in response to a document request nearly identical to
10   Interrogatory No. 39.[33] Mattel is likewise entitled to the identity of Bryant's accounts.
11   Those accounts are relevant to show, among other things, payments from MGA
12   and/or Larian to Bryant, payments by Bryant to others related to Bratz, and Bryant's
13   net worth. That information is directly relevant to the timing of the creation of Bratz
14   (secret payments to Bryant in 1999 or early 2000 would obviously be telling),
15   Mattel's commercial bribery claim, bias and damages. Mattel has punitive damages
16   claims against Bryant.[34] In assessing punitive damages, the jury is entitled to
17   consider Bryant's net worth. See, e.g., U.S. Equal Employment Opportunity Comm'n
18   v. Ian Schrager Hotels, Inc., 2000 WL 307470, at *4 (C.D. Cal. 2000) (information
19   about a party's net worth "is relevant under Rule 26(b) to plaintiff's claims for
20   damages and punitive damages"). Indeed, under California law Mattel is required to
21   introduce evidence of Bryant's financial condition to obtain an award of punitive
22   damages against him. See Morgan v. Woessner, 997 F.2d 1244, 1259 (9th Cir. 1993)
23   (citing Adams v. Murakami, 54 Cal. 3d 105 (1991)).

24

25   _____

26   [32] February 20 Order, at p. 5.
     [33] Order Granting in Part and Denying in Part Mattel's Motion to Compel
     Production of Documents by Isaac Larian, dated December 31, 2007, at pp. 15-16,
27   March 3 Proctor Dec., Exh. 16.
     [34] Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and
28   Counterclaims, Prayers ¶ 12, December 13 Proctor Dec., Exh. 22.

EXHIBIT: F
PAGE: 110

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 99 of 185   Page ID
#:169264
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 20 of 31

1        Second, the Discovery Master found that the interrogatory "implicates Bryant's
2   (and others) privacy interests, without reasonable justification."[35] However, the
3   Discovery Master's decision failed to address the fact that the protective order in this
4   case adequately prevents the use of confidential information outside of this litigation.
5   That protection sufficiently addresses any privacy concerns, as the Discovery Master
6   himself has previously found.[36] See, e.g., A. Farber and Partners, Inc. v. Garber, 234
7   F.R.D. 186, 191 (C.D. Cal. 2006) ("Resolution of a privacy objection . . . requires a
8   balancing of the need for the information sought against the privacy right asserted . . .
9   *Here, plaintiff's need for defendant Garber's financial documents outweighs*
10  *defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of*
11  *the information can be protected by a 'carefully drafted' protective order*.") (citing In
12  re Heritage Bond Litigation, 2004 WL 1970058, *5 n.12 (C.D. Cal. July 23, 2004)
13  ("Any privacy concerns Kasirer defendants have in their bank records and related
14  financial statements are adequately protected by the protective order, and are not
15  sufficient to prevent production in this matter"). In any case, Mattel is not asking that
16  Bryant identify or produce a vast quantity of sensitive financial records. It is asking
17  only that he identify the institutions and accounts since January 1, 1999 that refer or
18  relate to him.

19       Last, the Discovery Master found that "to the extent Interrogatory No. 39 seeks
20  relevant information, that information is readily available through alternative less
21  intrusive sources."[37] Not so. It is hard to imagine what source other than an
22  interrogatory to Bryant could be less intrusive in obtaining the identity of Bryant's
23  accounts, and no alternatives have been identified. The Discovery Master's Order
24  denying Mattel this critical information is clearly erroneous or contrary to law.

25

26  _____

27  [35]  February 20 Order, at p. 5.
    [36]  Order Granting Mattel's Motion to Compel Production of Documents, dated
28  January 25, 2007, at p. 14, December 20 Proctor Dec., Exh. 54.
    [37]  February 20 Order, at p. 5.

07209/2420393.1

EXHIBIT: F
PAGE: 111

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 100 of 185   Page ID
#:169265
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 21 of 31

1  **III.    THE DISCOVERY MASTER'S ORDER AS TO INTERROGATORY**
2  **NO. 41 IS CLEARLY ERRONEOUS OR CONTRARY TO LAW**

3          Interrogatory No. 41 seeks the identity of former Mattel employees who are
4  now or have been employed by MGA since January 1, 1999, including the date of
5  hire or effective date of contract, date of interview and the first date of contact with
6  MGA regarding potential employment or contracting.[38] The Discovery Master
7  recognized that the date of interview and first contact "is clearly relevant to Mattel's
8  claims" but "conspicuously absent from the MGA parties' response."[39] Yet, the
9  Discovery Master held that MGA need provide only the interview date, and could
10  conceal the earlier first date of contact for each individual identified.[40] That decision
11  is clearly erroneous or contrary to law.

12          The date on which MGA first contacted former Mattel employees regarding
13  potential employment or contracting is critical evidence relevant to Mattel's claims
14  that MGA has, while poaching Mattel's employees, also induced them to abscond
15  with Mattel's trade secrets.[41] The dates of first contact could show that Mattel
16  employees were involved with MGA for lengthy periods of time while still employed
17  by Mattel, in breach of their duties to Mattel. That could lead to admissible evidence
18  of commercial bribery, among other things. Date of first contact information could

19

20     [38]   Interrogatory No. 41 reads as follows:

21          IDENTIFY all PERSONS who at any time have been employed by or under
       contract with MATTEL who are now or have been employed by or under
22          contract with YOU since January 1, 1999, and, for each such PERSON, state
       his or her name, date of hire or effective date of contract, the date on which
23          YOU first had contact with such PERSON regarding potential employment or
       contracting, the date(s) on which such PERSON was interviewed for possible
24          employment or contracting, each title (if any) such PERSON has held while
       employed by or under contract with YOU, and the date of termination (if
25          applicable).

26  Mattel's Revised Third Set of Interrogatories, dated September 21, 2007, March 3
    Proctor Dec., Exh. 1.
27     [39]   February 15 Order, at p. 10.
       [40]   Id. at p. 11.
       [41]   See Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and
28  Counterclaims, dated July 12, 2007, December 20 Proctor Dec., Exh. 41.

EXHIBIT: F
PAGE: 112

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 101 of 185   Page ID
#:169266
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 22 of 31

1   also show when MGA first had access to sensitive Mattel trade secret information in
2   the possession of those Mattel employees who left for MGA. That showing is critical
3   because, as the Court has previously observed, one of Mattel's defenses and responses
4   to MGA's erroneous infringement and copying contentions is that MGA stole its
5   "innovations" from Mattel.[42] Mattel is entitled to learn precisely when MGA first
6   contacted the employees it poached from Mattel to discover when it first had access
7   to Mattel's information.

8         The Discovery Master's finding that "the burden of producing such information
9   outweighs its likely benefit"[43] is not supported by the record. MGA made no
10  showing before the Discovery Master that providing the date of first contact would
11  pose any burden at all.[44] Even were MGA able to show a burden, the critical
12  information sought and the amount in controversy clearly justifies any work
13  responding fully will require. <u>See, e.g., Fed R. Civ. P.</u> 26(b)(2); <u>In re Katrina Canal</u>
14  <u>Breaches Consolidated Litig.</u>, 2007 WL 1959193, at *6 (E.D. La. 2007) (overruling
15  "overly burdensome" objection and granting discovery request because "[a]lthough
16  the responsive materials are undoubtedly voluminous, considering the amount in
17  controversy, the parties' resources and the vital importance of these materials to the
18  litigation . . . the benefits of production outweigh the burden or expense of
19  production"); <u>King v. Georgia Power Co.</u>, 50 F.R.D. 134, 136 (N.D. Ga. 1970)
20  (overruling defendant's objection that interrogatory was burdensome and oppressive,
21  even though preparation of answer would be time-consuming and costly, because
22  information was crucial to the issues of the suit and in exclusive custody of
23  defendant); <u>Seff v. General Outdoor Advertising Co.</u>, 11 F.R.D. 597, 598 (N.D. Ohio
24  1951) (overruling "overly burdensome" objection because value of information to

25

26  [42]   Order Regarding Mattel's Motion for Leave to Amend, dated January 12, 2007,
     at pp. 19-20, December 20 Proctor Dec., Exh. 57.
     [43]   February 15 Order, at p. 11.
27  [44]   MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
     Responses to Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties, dated
28  December 31, 2007, at pp. 31-33, Notice of Lodging, Exh. 10.

07209/2420393.1

EXHIBIT: F
PAGE: 113

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 102 of 185   Page ID
#:169267
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 23 of 31

1 | plaintiff clearly outweighed any annoyance or expense involved in disclosure by
2 | defendant).

3 | **IV.     THE DISCOVERY MASTER'S ORDER AS TO INTERROGATORY**
4 | **NO. 46 IS CLEARLY ERRONEOUS OR CONTRARY TO LAW**

5 | The Discovery Master's denial of Mattel's motion to compel the MGA parties
6 | to respond to Interrogatory No. 46 is also clearly erroneous or contrary to law.
7 | Interrogatory No. 46 seeks the facts regarding MGA's dispute with its former counsel
8 | related to this action.[45] Those facts are not privileged and are reasonably likely to
9 | lead to admissible evidence.

10 | The Discovery Master found the interrogatory to be "overbroad in seeking
11 | information about 'any and all disputes' with former counsel, regardless of whether
12 | such disputes relate to a claim or defense in the case."[46] Yet, Mattel limited the
13 | interrogatory to disputes "relating to THIS ACTION."[47] And, given the
14 | circumstances surrounding the withdrawal of O'Melveny & Myers, MGA's former
15 | counsel, it is reasonably likely that the dispute between MGA and its former counsel
16 | was related to a claim or defense in this case. In its application to the Court regarding
17 | its withdrawal, the O'Melveny firm cited California Rule of Professional Conduct 3-

18 |
19 |

20 | [45]   Interrogatory No. 46 reads as follows:

21 |    Without disclosing the content of communications which are protected by the
   | attorney-client privilege, state fully and in detail all facts which REFER OR
22 |    RELATE TO any dispute relating to THIS ACTION between, on the one
   | hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand,
23 |    O'MELVENY and/or CHRISTENSEN, including but not limited to any and
   | all disputes which were or have been asserted as a basis for, or which
24 |    underlie, contributed to or were a factor in, the withdrawal, termination and/or
   | substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in
25 |    this ACTION, and IDENTIFY all PERSONS with knowledge of such facts
   | and all DOCUMENTS that REFER OR RELATE TO such facts.

26 | Mattel's Fifth Set of Interrogatories, dated October 19, 2007, March 3 Proctor Dec.,
   | Exh. 3.
27 |    [46]   February 15 Order, at p. 22.
   |    [47]   Mattel's Fifth Set of Interrogatories, dated October 19, 2007, March 3 Proctor
28 | Dec., Exh. 3.

-17-

EXHIBIT: F
PAGE: 114

Case 2:04-cv-09049-DOC-RNB Document 5192-2 Filed 04/15/09 Page 103 of 185 Page ID
#:169268
Case 2:04-cv-09049-SGL-RNB Document 2386 Filed 03/03/2008 Page 24 of 31

1 700(c) as a basis for its withdrawal.[48] Although it did not identify which of the
2 eleven prongs of that section applied, a number would relate directly to the claims
3 and defenses in this case. As one example, if O'Melveny attempted to withdraw
4 because MGA was seeking "to pursue an illegal course of conduct" or "insist[ed] that
5 the members pursue a course of conduct that is illegal or that is prohibited under
6 these rules or the State Bar Act," such information would be both non-privileged and
7 highly relevant to Mattel's case.

8     The Discovery Master's finding that there "is no evidence . . . to substantiate"
9 that MGA's dispute with its counsel is relevant[49] puts the cart before the horse.
10 Mattel does not have substantial *evidence* of what the dispute was about because that
11 information is exclusively within MGA's possession. But the information Mattel now
12 seeks will show this. Mattel's interrogatory is certainly reasonably calculated to lead
13 to the discovery of admissible evidence, which is all that is required. See Fed. R.
14 Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged,
15 that is relevant to the claim or defense of any party. . . . Relevant information need
16 not be admissible at trial if the discovery appears reasonably calculated to lead to the
17 discovery of admissible evidence.").

18     The Discovery Master also found the interrogatory "objectionable because it
19 intrudes upon MGA's relationship with former counsel, and thus necessarily intrudes
20 upon the protections afforded by the attorney-client privilege and work product
21 doctrine."[50] That ignores that Mattel limited the interrogatory solely to the
22 underlying facts and expressly requested a response that "[did not disclose] the
23 content of communications which are protected by the attorney-client privilege."[51]

24

25 [48] *Ex Parte* Application of O'Melveny & Myers LLP for Order Shortening Time for Hearing its Motion to Withdraw and Requiring *In Camera* Inspection of
26 Supporting Documents, dated October 8, 2007, at p. 1, December 20 Proctor Dec., Exh. 51.
     [49] February 20 Order, at p. 21.
27 [50] Id., at p. 22.
     [51] Mattel's Fifth Set of Interrogatories, dated October 19, 2007, March 3 Proctor
28 Dec., Exh. 3.

EXHIBIT: F
PAGE: 115

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 104 of 185   Page ID
#:169269
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 25 of 31

1  Indeed, MGA has made public statements regarding some facts underlying its dispute
2  with its former counsel.[52]  Therefore, non-privileged facts regarding the dispute
3  necessarily exist, or MGA has disclosed otherwise privileged information regarding
4  the dispute and thereby waived the privilege. In either case, Mattel is entitled to a
5  response detailing the facts of MGA's dispute with former counsel.

6  **V.      THE DISCOVERY MASTER'S ORDER AS TO INTERROGATORY**
7  **NOS. 48-50 IS CLEARLY ERRONEOUS OR CONTRARY TO LAW**

8         Interrogatory Nos. 48-50 ask MGA to identify (1) each trade dress that is
9  subject of MGA's claims, defenses or allegations, (2) each Mattel product that MGA
10  claims infringes that trade dress, and (3) all facts that support MGA's contention that
11  the trade dress that is the subject of its claims is protectible.[53]  In response to these
12  requests, the MGA parties described only general categories of allegedly protected
13  trade dress and allegedly infringing products.[54]  The MGA parties failed to identify
14  all the particular trade dress they claim is at issue or all the particular Mattel products

15

16  [52]   Article entitled Behind the Scenes, Bratz Doll Case Heats Up, published on
17  Law.com on November 11, 2007, December 20 Proctor Dec., Exh. 53.
       [53]   Interrogatory Nos. 48-50 read as follows:

18     Interrogatory No. 48: Separately IDENTIFY each trade dress that YOU
19     contend MATTEL has copied, infringed or diluted or that is otherwise the
       subject of YOUR claims, defenses or allegations in THIS ACTION.

20     Interrogatory No. 49: For each trade dress identified in response to
21     Interrogatory No. 48, separately and fully IDENTIFY each and every
       MATTEL product, packaging or other matter that YOU contend copies,
       infringes or dilutes such trade dress, including without limitation by describing
22     fully and separately, for each such MATTEL product, packaging or other
       matter, each and every element of the claimed trade dress that YOU contend
23     MATTEL has copied, infringed or diluted.

24     Interrogatory No. 50: For each trade dress identified in response to
25     Interrogatory No. 48, separately and completely IDENTIFY all facts that
       support YOUR contention that such trade dress is protectible, all
       DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS
26     with knowledge of the foregoing.

     Mattel's Seventh Set of Interrogatories, dated October 25, 2007, March 3 Proctor
27  Dec., Exh. 4.
       [54]   MGA Parties' Responses and Objections to Mattel's Seventh Set of
28  Interrogatories, December 20 Proctor Dec., Exhs. 20, 29-32.

07209/2420393.1

EXHIBIT: F
PAGE: 116

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 105 of 185   Page ID
#:169270
Case 2:04-cv-09049-SGL-RNB   Document 2386   Filed 03/03/2008   Page 26 of 31

1  they claim infringe that trade dress.[55]  Indeed, recognizing this, MGA represented to

2  the Discovery Master that it would "supplement these responses in the course of

3  Phase 2 discovery."[56]  In spite of the admission that its responses were not complete,

4  the Discovery Master found the responses to be "in substantial compliance with Rule

5  33,"[57] effectively granting MGA license to sandbag Mattel with "new" infringement

6  contentions whenever it chooses.  That finding is clearly erroneous or contrary to law.

7  See, e.g., Schaap v. Executive Indus., Inc., 130 F.R.D. 384-88 (N.D. Ill. 1990)

8  (compelling responses to interrogatories seeking factual bases for contentions

9  because "for the litigation to proceed fairly and effectively, there must be mutual

10  access to all relevant facts.").

11        Without the identity of the specific trade dress MGA claims supports its

12  claims, Mattel cannot prepare its defense.  The same is true with the identity of the

13  specific Mattel products that MGA alleges infringe MGA's trade dress.  Mattel is

14  entitled to discovery of these MGA contentions.  MGA's responses describing its

15  contentions in general terms are insufficient.

16  **VI.    THE DISCOVERY MASTER'S ORDER AS TO BRYANT'S RESPONSE**

17  **TO INTERROGATORY NO. 47 IS CLEARLY ERRONEOUS OR**

18  **CONTRARY TO LAW**

19        The Discovery Master denied Mattel's motion to compel Carter Bryant to

20  provide responses to Interrogatory No. 47.  That interrogatory asks Bryant to identify

21  the sources of information from which he collected documents in this action that both

22  refer or relate to Bratz and refer or relate to the time period prior to February 28,

23  2001.[58]  It is undisputed that Interrogatory No. 47 seeks highly relevant information.

24

25    [55]  Id.
26    [56]  MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
      Responses to Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties, dated
      December 31, 2007, at p. 30, Notice of Lodging, Exh. 10.
27    [57]  February 15 Order, at p. 13.
      [58]  Interrogatory No. 47 reads as follows:

28    (footnote continued)

EXHIBIT: F
PAGE: 117

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 106 of 185   Page ID
#:169271
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 27 of 31

1 | Indeed, the Discovery Master compelled the MGA parties to provide responses to the
2 | same interrogatory, finding it "narrowly tailored to a key subject, namely early Bratz
3 | documents and other information."[59]  For the same reason Bryant should be
4 | compelled to produce further responses.  The Discovery Master's denial of Mattel's
5 | motion to compel further responses is clearly erroneous or contrary to law.

6 |   The Discovery Master held that Bryant's supplemental response to
7 | Interrogatory No. 47 is "in substantial compliance with Rule 33."[60]  The Discovery
8 | Master specifically identified Bryant's provision of "responsive information about an
9 | HP desktop computer and a Compaq Presario Laptop" and identification of "portions
10 | of [Bryant's] testimony by page and line number where he discusses the use of a
11 | computer at his parents' home and his occasional use of Elise Cloonan's computer" as
12 | a sufficient response.[61]  However, that information was responsive to Interrogatory
13 | No. 40, which asked for the identity of every storage device used by Bryant that
14 | contained information related to Bratz prior to January 1, 2002.[62]  The Discovery
15 | Master's written Order does not address why Bryant's response to Interrogatory No.
16 | 47 is purportedly proper.[63]

17 |   It is not.  Bryant's response merely provides generalized information regarding
18 | where he looked for information.  He does not identify the source of information for
19 | any particular documents and does not identify, for example, which sources he
20 |
21 |

22 |   IDENTIFY each and every SOURCE OF INFORMATION from which YOU
have COLLECTED DOCUMENTS in THIS ACTION that REFER OR
23 | RELATE TO BRATZ and that also REFER OR RELATE TO the time period
prior to February 28, 2001 (regardless of when such DOCUMENT was, in
24 | whole or part, created, drafted, generated, sent, received or transmitted).

25 | Mattel's Fifth Set of Interrogatories, dated October 19, 2007, March 3 Proctor Dec.,
Exh. 3.
26 |  [59] February 15 Order, at p. 20.
 [60] February 20 Order, at p. 7.
 [61] Id.
27 |  [62] Mattel's Revised Third Set of Interrogatories, dated September 21, 2007,
March 3 Proctor Dec., Exh. 1.
28 |  [63] February 20 Order, at p. 7.

-21-

EXHIBIT: F
PAGE: 118

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 107 of 185   Page ID
#:169272
Case 2:04-cv-09049-SGL-RNB     Document 2386      Filed 03/03/2008     Page 28 of 31

1  searched for early Bratz documents but did not find any.[64]  His responses therefore do
2  not allow Mattel to test the sufficiency of Bryant's searches and production, which is
3  the point of the interrogatory.  By identifying the source of this information, Mattel
4  will be able to discover what sources Bryant has examined to produce the key
5  documents in this case, and perhaps more important, the sources Bryant has *not*
6  examined.

7      That discovery is particularly important here, because Bryant has repeatedly
8  misrepresented his efforts to collect documents from his computers and there is
9  substantial evidence of spoliation.[65]  For example, early in this litigation Bryant and
10 his counsel repeatedly represented that Bryant had possession of a single desktop
11 computer that he had purchased the day after he resigned from Mattel.  Bryant
12 claimed to have searched for responsive documents on that desktop and said there
13 were none.[66]  After Mattel finally obtained access to that desktop, however, it learned
14 Bryant ran a program called "Evidence Eliminatory" on the drive.[67]  Years later
15 Bryant admitted to having imaged the hard drive of a laptop computer early in the
16 case as well.[68]  When Mattel finally received the hard drive of Bryant's laptop, Mattel
17 learned that "Evidence Eliminator" had been run on it both two days before it was
18 imaged by Bryant's counsel and on the same day its was imaged by Bryant's counsel,

19

20

21

22  [64]  Bryant's Second Supplemental Responses and Objections to Mattel's Revised
23  Third Set of Interrogatories, dated January 28, 2008, March 3 Proctor Dec., Exh. 5.
        [65]  See, e.g., Mattel's Motion Objecting to Portions of Discovery Master's
24  December 31, 2007 Order Regarding Hard Drives, dated January 16, 2008, at pp. 2-6,
     March 3 Proctor Dec., Exh. 17.
25       [66]  See, e.g., Letter from Jacoby to Quinn, dated November 1, 2004, at p. 2,
     attached as Exhibit 1 to the Declaration of Scott B. Kidman, dated January 16, 2007,
26  March 3 Proctor Dec., Exh. 18 ("Kidman Dec.").
        [67]  See Forensic Analysis Report No. 2 by Mark Menz, dated February 10, 2008,
27  March 3 Proctor Dec., Exh. 21.
        [68]  Letter from Zeller to Wickham, dated April 6, 2007, Kidman Dec., Exh. 15.

28
07209/2420393.1

-22-

EXHIBIT: F
PAGE: 119

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 108 of 185   Page ID
#:169273
Case 2:04-cv-09049-SGL-RNB     Document 2386     Filed 03/03/2008     Page 29 of 31

1   after this lawsuit was filed.[69] "Evidence Eliminator" deleted more than 9,400 files

2   from Bryant's laptop the first time it was run alone.[70]

3       Given this history, it is particularly important that Mattel obtain detailed

4   information regarding where Bryant searched for key documents, and where they

5   could and could not be found, not simply the general, incomplete descriptions he has

6   provided. The Discovery Master's ruling denying Mattel further information is

7   clearly erroneous or contrary to law.

8   **VII.**   **THE DISCOVERY MASTER'S ORDERS ARE CLEARLY**

9        **ERRONEOUS OR CONTRARY TO LAW BECAUSE THEY DO NOT**

10       **REQUIRE DEFENDANTS TO SPECIFICALLY IDENTIFY**

11       **DOCUMENTS**

12       Nearly all the interrogatories at issue in Mattel's motions to compel seek the

13   identification of documents relating to the particular interrogatory.[71] Mattel's

14   interrogatories define "IDENTIFY" with respect to documents as "to describe each

15   DOCUMENT by Bates number."[72] Defendants' responses fail to do so.

16       In its papers before the Discovery Master and at the hearing on its motions to

17   compel, Mattel raised Defendants' failure to identify specific documents in response

18   to any of the interrogatories at issue.[73] Although the Discovery Master's Orders

19

20

21   [69] See Forensic Analysis Report No. 1 by Mark Menz, dated February 10, 2008,

22   March 3 Proctor Dec., Exh. 20.
    [70] Forensic Analysis Report No. 1 by Mark Menz, dated February 10, 2008,

23   March 3 Proctor Dec., Exh. 20.
    [71] See Interrogatory Nos. 27-38, 42, 46-47 and 50; Mattel's Revised Third Set of

24   Interrogatories, dated September 21, 2007, March 3 Proctor Dec., Exh. 1; Mattel's
Amended Fourth Set of Interrogatories, dated October 23, 2007, March 3 Proctor

25   Dec., Exh. 2; Mattel's Fifth Set of Interrogatories, dated October 19, 2007, March 3
Proctor Dec., Exh. 3; Mattel's Seventh Set of Interrogatories, dated October 25, 2007,

26   March 3 Proctor Dec., Exh. 4.
    [72] Id.

27     [73] See. e.g., Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos.
27-44 and 46-50) by the MGA Parties, dated December 20, 2007, at p. 17, Notice of

28   Lodging, Exh. 3; February 11, 2008 Hearing Transcript, at 31:14-18, March 3 Proctor
Dec., Exh. 10.

07209/2420393.1

-23-

**EXHIBIT: F
PAGE: 120**

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 109 of 185   Page ID
#:169274
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 30 of 31

1  acknowledge that Mattel raised the issue, the Orders do not compel Defendants to

2  specifically identify documents and do not otherwise address the subject.[74]

3  As the Discovery Master has previously held, interrogatory responses must

4  identify any referenced documents specifically and in detail, either by Bates numbers

5  or through a sufficiently detailed description that allows the interrogating party to

6  ascertain which specific documents are being referenced. Order Granting Mattel's

7  Motion to Compel Response to Interrogatory No. 1, dated April 17, 2007 at p. 6,

8  March 3 Proctor Dec., Exh. 22 ("MGA is required, but has failed, to provide

9  sufficient detail to permit Mattel to locate and to identify, as readily as can MGA, the

10 records from which the answers may be ascertained. . . To comply with Rule 33(d),

11 Fed.R.Civ.P., MGA should, if possible, provide Bates numbers for the invoices")

12 (citing Ultratech, Inc. v. Tamarach Scientific Co., 2005 WL 40074 (N.D. Cal. Jan 05,

13 2005) (No. C 03-3235 CRB JL)); see also Ukiah Automotive Investments v.

14 Mitsubishi Motors of North America, 2006 WL 1348562 at *1 (N.D. Cal. May 17,

15 2006) (plaintiff's response to interrogatory, which requested identification of all

16 documents that support plaintiff's calculation of damages, was insufficient where

17 plaintiff merely referenced its financial statements and records and did not identify

18 the documents by Bates-number or file number); Clean Earth Remediation and Const.

19 Serv's, Inc. v. American Intern, 245 F.R.D. 137, 140 (S.D.N.Y. 2007) (plaintiff's

20 interrogatory response which referenced "correspondence demonstrating same in the

21 form of numerous letters and e-mails between and among [plaintiff] and Defendants"

22 did not adequately identify the documents and required supplemental response);

23 Miller v. Federal Express Corp., 186 F.R.D. 376, 385 (W.D. Tenn. 1999) ("[t]he

24 responding party must specify the documents from which the answer may be derived

25 with sufficient detail to permit the requesting party to locate it"); VNA Plus, Inc. v.

26 Apria Healthcare Group, Inc., 1999 WL 386949, at *5 (D. Kan 1999) (party may not

27

28  [74]  February 15 Order, at p. 4.

**EXHIBIT: F**
**PAGE: 121**

07209/2420393.1

-24-

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 110 of 185   Page ID
#:169275
Case 2:04-cv-09049-SGL-RNB      Document 2386      Filed 03/03/2008      Page 31 of 31

1   "simply refer generically" to documents produced in interrogatory response); <u>Johnson</u>
2   <u>v. Kraft Foods North America, Inc.,</u> 236 F.R.D. 535, 545 (D. Kan. 2006) ("A party
3   may answer an interrogatory by referring another party to documents attached to the
4   responsive pleadings or to documents previously produced or disclosed. With that
5   said, the reference shall be in sufficient detail to permit the interrogating party to
6   locate and to identify, as readily as can the party served, the records from which the
7   answer may be ascertained.").

8          Consistent with the Discovery Master's previous ruling and the law cited by the
9   Discovery Master, the MGA parties and Bryant should be required to identify
10  documents with sufficient particularity. Specifically, MGA should be required to
11  specifically identify documents in response to Interrogatory Nos. 27-38, 46-47 and
12  50, and Bryant should be required to specifically identify documents in response to
13  Interrogatory Nos. 27-33, 36-38, 42 and 47. The Discovery Master's ruling that
14  Defendants need not do so is contrary to law.

15                                          **Conclusion**

16         For the foregoing reasons, Mattel respectfully requests that the Discovery
17  Master's February 15, 2008 and February 20, 2008 Orders be overruled and that (1)
18  the MGA parties be ordered to provide full and complete responses to Interrogatory
19  Nos. 27-29, 39, 41, 46 and 48-50, (2) Carter Bryant be ordered to provide full and
20  complete responses to Interrogatory Nos. 27-29, 39 and 47, (3) the MGA parties be
21  ordered to identify documents with specificity (including by Bates number) in
22  response to Interrogatory Nos. 27-38, 46-47 and 50, and (4) Carter Bryant be ordered
23  to identify documents with specificity (including by Bates number) in response to
24  Interrogatory Nos. 27-33, 36-38, 42 and 47.

25  DATED: March 3, 2008             QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
26

27
                                        By /s/ B. Dylan Proctor
28                                         B. Dylan Proctor
                                           Attorneys for Mattel, Inc.
07209/2420393.1
                                             -25-

EXHIBIT: F
PAGE: 122

# EXHIBIT G
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT G
# TO DECLARATION OF
# JEAN PIERRE NOGUES

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)

13 | Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727

14 | vs.

15 | MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S SEVENTH SET OF INTERROGATORIES

16 | Defendant. | Discovery Cut-off: January 14, 2008
Pre-trial Conference: April 7, 2008
17 | | Trial Date: April 29, 2008

18 | AND CONSOLIDATED ACTIONS | Discovery Cutoff: March 3, 2008
Final Pretrial Conf.: June 2, 2008
19 | | Trial Date: July 1, 2008

20 |

21 |

22 | PROPOUNDING PARTY: Mattel, Inc.

23 | RESPONDING PARTIES: MGA Entertainment, Inc., Isaac Larian, Carter

24 | Bryant, MGA Entertainment (HK) Limited, MGAE

25 | de Mexico S.R.L. de C.V., and Carlos Gustavo

26 | Machado Gomez

27 | SET NO.: SEVENTH

28 |

EXHIBIT: G
PAGE: 123

1          Pursuant to Federal Rule of Civil Procedure 33, plaintiff Mattel, Inc.

2 ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter Bryant,

3 MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Carlos

4 Gustavo Machado Gomez (collectively, "the Responding Parties") individually answer

5 the following Interrogatories separately and fully, in writing and under oath, within 30

6 days after service hereof. The Responding Parties shall be obligated to supplement

7 their responses to the Interrogatories at such times and to the extent required by the

8 Federal Rules of Civil Procedure.

9

10                         **Definitions**

11        1.   "YOU" and "YOUR" mean each of the Responding Parties.

12        2.   "MGA" means MGA Entertainment, Inc., any of its current or

13 former employees, officers, directors, agents, representatives, attorneys, experts,

14 divisions, AFFILIATES (including without limitation MGA Entertainment (HK)

15 Limited and MGAE de Mexico S.R.L. de C.V.), predecessors-in-interest and

16 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

17 authority or subject to its control. Without limiting the foregoing, "MGA" includes the

18 entities known as ABC International Traders or ABC International Traders, Inc. For

19 purposes of the these Interrogatories, "MGA" does not include BRYANT.

20        3.   "MATTEL" means Mattel, Inc., its current employees, officers,

21 directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

22 AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

23 PERSON acting on its behalf, pursuant to its authority or subject to its control.

24        4.   "AFFILIATES" means any and all corporations, proprietorships,

25 d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

26 indirectly, in whole or in part, own or control, are under common ownership or control

27 with, or are owned or controlled by a PERSON, party or entity, including without

28 limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

07209/2264383.1/07209/2                    -2-
63218.1

EXHIBIT: G
PAGE: 124

1    5.    "PERSON" or "PERSONS" means all natural persons, partnerships,
2  corporations, joint ventures and any kind of business, legal or public entity or
3  organization, as well as its, his or her agents, representatives, employees, officers and
4  directors and any one else acting on its, his or her behalf, pursuant to its, his or her
5  authority or subject to its, his or her control.

6    6.    "SOLD," "SELL" or "SALE" means to distribute, market, license,
7  sell, offer to sell, or convey or transfer in any way for compensation.

8    7.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
9  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
10  therewith.

11    8.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
12  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
13  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
14  to, all writings and records of every type and description including, but not limited to,
15  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
16  ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
17  any kind, statements, reports, minutes, recordings, transcripts and summaries of
18  meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
19  discs, printouts and records of all types, studies, instruction manuals, policy manuals
20  and statements, books, pamphlets, invoices, canceled checks and every other device or
21  medium by which or through which information of any type is transmitted, recorded or
22  preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall
23  include all copies that differ in any respect from the original or other versions of the
24  DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
25  originals containing initials, comments, notations, insertions, corrections, marginal
26  notes, amendments or any other variation of any kind.

27    9.    "REFER OR RELATE TO" a given subject matter means relate to,
28  refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,

07209/2254383.1 07209/22
6321 E.1

-3-

1  state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,
2  or in any way pertain to that subject matter, either directly or indirectly.

3             10.    "IDENTIFY" or "IDENTITY" means the following:

4             (a)    with reference to an individual or individuals, means to state,
5  fully and separately as to each, such individual's full name, any known business title,
6  current or last known business affiliation, current or last known residential address,
7  current or last known business address, current or last known relationship to MGA, and
8  current or last known telephone number.

9             (b)    with reference to an entity or entities, means to state, fully and
10  separately as to each, such entity's full name, state (or country) of incorporation or
11  organization, present or last known address, and present or last known telephone
12  number.

13             (c)    with reference to a product or packaging, means to state, fully
14  and separately as to each, the full name of the product or, in the case of packaging, the
15  product or item with which the packaging is used; the SKU number or any other
16  applicable unique identifier or designation of the product or, in the case of packaging,
17  the product or item with which the packaging is used; the time period during which the
18  product was, has been or will be SOLD or, in the case of product packaging, the time
19  period during which the product packaging was, has been or will be used; and the
20  IDENTITY of each PERSON who has licensed from YOU the right to SELL such
21  product or, in the case of product packaging, the IDENTITY of the PERSON who has
22  licensed from YOU the right to use the packaging or to SELL the products with which
23  the packaging is used.

24             (d)    with reference to any other DOCUMENT or DOCUMENTS,
25  means to describe each DOCUMENT by Bates number.  In the event that a
26  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each
27  such DOCUMENT, to provide a complete description of it such that it may be the
28  subject of a request for the production of documents, including by stating the date,

07209/2264383.107209/2
63218.1

-4-

EXHIBIT: G
PAGE: 126

1   identity of the author, addressee(s), signatories, parties, or other PERSONS identified

2   therein, its present location or custodian and a description of its contents.

3           (e)    with reference to a trade dress, means to describe, fully and

4   separately, each and every element that makes up the claimed trade dress and to

5   IDENTIFY each and every product or product packaging SOLD by YOU or YOUR

6   licensees that embodies, uses or employs the claimed trade dress.

7           (f)    with reference to the protectibility of a trade dress, means to

8   state, fully and separately, all facts that support YOUR contention that such trade dress

9   is inherently distinctive or has acquired secondary meaning and that such trade dress is

10  famous if YOU so contend that such trade dress is famous; the date that YOU contend

11  such trade dress acquired secondary meaning and, if YOU contend the trade dress is

12  famous, the date on which YOU contend that it became famous; all facts that support

13  YOUR contention that such trade dress is not functional; and, if YOU are relying on

14  advertising to establish secondary meaning or fame, the dollar amounts, by year, spent

15  by YOU or anyone acting on YOUR behalf on advertising that features such trade

16  dress.

17          11.    "Any" as used in these interrogatories includes the word "all," and

18  the word "all" as used in these interrogatories includes the word "any."

19          12.    The singular form of a noun or pronoun includes within its meaning

20  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

21  form of a pronoun also includes within its meaning the feminine form of the pronoun so

22  used, and vice versa; the use of any tense of any verb includes also within its meaning

23  all other tenses of the verb so used, whenever such construction results in a broader

24  request for information; and "and" includes "or" and vice versa, whenever such

25  construction results in a broader disclosure of documents or information.

26

27

28

EXHIBIT: G
PAGE: 127

## Instructions

A. When an interrogatory requests disclosure of a COMMUNICATION or other information as to which YOU claim any privilege or protection as a ground for nondisclosure, identify each PERSON who participated in or had knowledge of the COMMUNICATION or other information and provide the following:

    (i)    the privilege or protection that YOU claim precludes disclosure;

    (ii)    the subject matter of the COMMUNICATION or information (without revealing the content as to which the privilege is claimed); and

    (iii)    any additional facts or grounds on which YOU base YOUR claim of privilege or protection.

B. When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts. If YOU cannot completely answer the interrogatory after making diligent efforts to do so, please so state. Then describe in detail all efforts made to answer the interrogatory; identify every PERSON involved in such efforts; and state the additional information YOU need, if any, to respond completely to the interrogatory.

MATTEL'S SEVENTH SET OF INTERROGATORIES

EXHIBIT: G
PAGE: 128

## Interrogatories

### INTERROGATORY NO. 48:

Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or diluted or that is otherwise the subject of YOUR claims, defenses or allegations in THIS ACTION.

### INTERROGATORY NO. 49:

For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product, packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packaging or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted.

### INTERROGATORY NO. 50:

For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectible, all DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

DATED:  October 25, 2007          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP


                                  By_____
                                     Michael T. Zeller
                                     Attorneys for Plaintiff
                                     Mattel, Inc.

07209/2264383.1072209/72
63218.1

-7-

EXHIBIT: G
PAGE: 129

# EXHIBIT H
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT H
# TO DECLARATION OF
# JEAN PIERRE NOGUES

Case 2:04-cv-09049-DOC-RNB  Document 5192-2  Filed 04/15/09  Page 120 of 185  Page ID
#:169285
Case 2:04-cv-09049-SGL-RNB    Document 4717    Filed 01/20/2009    Page 1 of 4

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

12 | CARTER BRYANT, an individual,

13 | Plaintiff,

14 | vs.

15 | MATTEL, INC., a Delaware
corporation,

16 |

17 | Defendant.

18 | AND CONSOLIDATED ACTIONS

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

| CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

MATTEL, INC.'S NOTICE OF
RENEWED MOTION AND
RENEWED MOTION OBJECTING
TO PORTIONS OF DISCOVERY
MASTER'S (1) FEBRUARY 15, 2008
ORDER REGARDING MATTEL'S
MOTION TO COMPEL RESPONSES
TO INTERROGATORIES BY THE
MGA PARTIES

[Notice of Lodging to be filed on or
before March 9, 2009]

Date:    March 23, 2009
Time:    10:00 a.m.
Place:   Courtroom 1

**Phase 2**
Pre-Trial Conference:   Not Set
Trial Date:             Not Set

**EXHIBIT: H**
**PAGE: 130**

07975/2766292.1

-1-

MATTEL'S RENEWED MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S 2/15/08 ORDER

Case 2:04-cv-09049-DOC-RNB Document 5192-2 Filed 04/15/09 Page 121 of 185 Page ID
#:169286
Case 2:04-cv-09049-SGL-RNB Document 4717 Filed 01/20/2009 Page 2 of 4

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that on March 23, 2009, at 10:00 a.m., or as soon
3 | thereafter as counsel may be heard, in the Courtroom of The Honorable Stephen G.
4 | Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and
5 | counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, make a renewed
6 | motion for the Court to overrule portions of the Discovery Master's February 15,
7 | 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel
8 | Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.

9 | This Motion is made pursuant to Federal Rules of Civil Procedure 72(a) and
10 | pursuant to the Court's Order Granting In Part and Denying In Part Mattel's Motion
11 | for Review of Discovery Master's February 15, 2008, and February 20, 2008 Orders.
12 | By Motion dated March 3, 2008, Mattel timely objected to the Discovery Master's
13 | February 15, 2008 Order, in part. Because the Court had stayed Phase 2 discovery
14 | at that time, the Court declined to rule on the portion of Mattel's Motion as it related
15 | to Interrogatory Nos. 48-50 regarding MGA's trade dress claims against Mattel. The
16 | Court granted Mattel leave to re-raise the issue with the Court. See March 31, 2008
17 | Order at 3 ("The Court reserves ruling on Interrogatories 48-50, regarding MGA's
18 | trade dress claims against Mattel. As recognized by the Parties, this is a Phase 2
19 | issue, and the Court denies this part of Mattel's motion without prejudice. Mattel
20 | may raise the issue again at an appropriate time after the Court lifts the stay on
21 | Phase 2 discovery.").

22 | In light of the Court's decision to lift Phase 2 discovery, Mattel renews its
23 | motion objecting to the February 15, 2008 order as it relates to Interrogatory Nos.
24 | 48-50 on the grounds that the Discovery Master's Orders were clearly erroneous and
25 | contrary to law.

26 | This Motion is based on:

27 | • this Notice of Motion and Motion,

28 |

EXHIBIT: H
PAGE: 131

-2-

Case 2:04-cv-09049-DOC-RNB   Document 5192-2   Filed 04/15/09   Page 122 of 185   Page ID
#:169287
Case 2:04-cv-09049-SGL-RNB     Document 4717     Filed 01/20/2009     Page 3 of 4

1    • the previously filed Memorandum of Points and Authorities dated March 3,

2       2008, Part V (Docket No. 2386);

3    • the March 3, 2008 Declaration of B. Dylan Proctor In Support of Mattel, Inc.'s

4       Motion Objecting to Portions of Discovery Master's (1) February 15, 2008

5       Order Regarding Mattel's Motion to Compel Responses to Interrogatories by

6       the MGA Parties; and (2) February 20, 2008 Order Regarding Mattel's Motion

7       to Compel Responses to Interrogatories by Carter Bryant (Docket Nos. 2528-

8       2529);

9    • Mattel, Inc.'s Notice Of Lodging In Support Of Motion Objecting To Portions

10      Of Discovery Master's (1) February 15, 2008 Order Regarding Mattel's

11      Motion To Compel Response To Interrogatories By The MGA Parties; And

12      (2) February 20, 2008 Order Regarding Mattel's Motion To Compel

13      Responses To Interrogatories By Carter Bryant (Docket Nos. 2561-2562 and

14      2565-2569) dated March 3, 2008;

15   • Mattel, Inc's Reply Memorandum Of Point And Authorities In Support Of

16      Motion Objecting To Portions Of Discovery Master's (1) February 15, 2008

17      Order Regarding Mattel's Motion To Compel Response To Interrogatories By

18      The MGA Parties; And (2) February 20,2008 Order Regarding Mattel 'S

19      Motion To Compel Responses To Interrogatories By Carter Bryant (Part V)

20      (Docket No. 2760-1) dated March 24, 2008); and

21   • Declaration Of Bernard B. Smyth In Support Of Motion Objecting To

22      Portions Of Discovery Master's (1) February 15, 2008 Order Regarding

23      Mattel's Motion To Compel Response To Interrogatories By The MGA

24      Parties; And (2) February 20,2008 Order Regarding Mattel 'S Motion To

25      Compel Responses To Interrogatories By Carter Bryant dated March 24, 2008

26      (Docket No. 2760-2);

27   • and all other matters of which the Court may take judicial notice.

28                                              **EXHIBIT: H**
                                                **PAGE: 132**

Case 2:04-cv-09049-DOC-RNB Document 5192-2 Filed 04/15/09 Page 123 of 185 Page ID
#:169288
Case 2:04-cv-09049-SGL-RNB Document 4717 Filed 01/20/2009 Page 4 of 4

1        For the convenience of the Court, Mattel has attached as Exhibit A to

2 this Notice a copy of the Court's March 31, 2008 Order. For the further convenience

3 of the Court, Mattel identifies the following documents as those submitted by the

4 MGA Parties in opposition to the original motion:

5    • The MGA Parties' Opposition to Mattel, Inc.'s Motion Objecting to Portions

6       of Discovery Master's February 15, 2008 Order Regarding Mattel's Motion to

7       Compel Responses to Interrogatories by the MGA Parties, with Appendix 1,

8       dated March 17, 2008 (Docket Nos. 2685-1-2); and

9    • Declaration of Timothy Miller in Support of MGA Entertainments, Inc.'s

10      Opposition to Mattel, Inc.'s Motion Objecting to Portions of Discovery

11      Master's February 18, 2008 Order Regarding Mattel's Motion to Compel

12      Responses to Interrogatories by the MGA Parties dated March 17, 2008

13      (Docket No. 2685-3).

14        For the further convenience of the Court, Mattel will also lodge copies of the

15 relevant portions of papers filed in connection with Mattel's motion, which Mattel

16 hereby respectfully renews.

17               **Statement of Rule 7-3 Compliance**

18        The parties met and conferred regarding this motion on February 26, 2008

19 and dates thereafter.

20

21 DATED: January 20, 2009      QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP

22

23

24                      By /s/ Jon Corey
                           Jon Corey

25                         Attorneys for Mattel, Inc.

26

27

28                               **EXHIBIT: H**
                                **PAGE: 133**

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:    (415)774-2611
Facsimile:    (415)982-5287

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

|  |  |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff, v. MATTEL, INC., a<br><br>Delaware corporation,<br><br>    Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with Case<br>No. CV 04-09059 Case<br>No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MATTEL'S<br>MOTION TO COMPEL RESPONSES<br>TO INTERROGATORY NOS. 27-44<br>AND 46-50 BY THE MGA PARTIES** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

### I. INTRODUCTION

On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties. MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively referred to as "MGA parties") submitted an opposition on December 31, 2007. Mattel submitted a reply on January 7, 2008. On February 8, 2008, the MGA parties submitted their second

Bryant v. Mattel, Inc., CV-04-
09049 SGL (RNBx)

*£-/r-o&*

EXHIBIT: H
PAGE: 134

supplemental responses and third supplemental responses to the interrogatories at issue. The matter was heard on February 11,2008.

## II. BACKGROUND

Mattel served its Revised Third Set of Interrogatories on the MGA parties on September 21,2007, asking each of them the same fifteen questions (Nos. 27-41). Mattel served its Fourth Set of Interrogatories on the MGA parties on October 12,2007, propounding four additional interrogatories (Nos. 42-45). Mattel served an Amended Fourth Set on October 23,2007, removing No. 45, but retaining Nos. 42-44. Mattel served its Fifth Set of Interrogatories on October 19,2007, which consisted of two additional questions (Nos. 46-47). On October 23, 2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to replace the previously withdrawn interrogatory. On October 25,2007, Mattel served its Seventh Set of Interrogatories, which consisted of Nos. 48-50.

In November of 2007, the MGA parties served responses and objections to Mattel's interrogatories, and in some instances supplemental responses. For the most part, the answers of each of the MGA parties are substantially similar. However, in several instances where MGA Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another party."

The parties met and conferred on December 10 and 12, 2007 regarding the supplemental responses. The MGA parties offered to provide supplemental responses by January 7, 2008. Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses was inadequate. Therefore, Mattel filed the instant motion on December 20, 2007.[1]

Mattel contends that the interrogatories at issue seek information relevant to central issues in the case, such as: MGA's contentions regarding which Bratz inventions were created before,

---

[1] One of the issues raised in the motions papers -whether the interrogatories exceed the 50 interrogatory per side limit – has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7,2008.

Bryant v. Mattel, Inc., CV-04-
09049 SGL (RNBx)

EXHIBIT: H
PAGE: 135

during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic storage devices MGA used prior to 2002 for digital information related to Brat?; the identity of the sources of information from which MGA has collected documents in this litigation which relate to Bratz and the time period prior to February 28,2001; the facts allegedly supporting MGA's contention that the Bratz dolls are not based on designs Bryant created while employed by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others, including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz inventions to MGA and services with or for MGA while employed by Mattel affect who owns the rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel employees that have been employed by MGA; non-privileged facts concerning the dispute leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the products MGA asserts MGA has copied or infringed. Mattel's Motion at pp. 2-3.

Mattel contends that although it has received responses to all of the interrogatories except Nos. 39,46 and 47, all of the responses are deficient. As an initial matter, Mattel contends that the MGA parties' "boilerplate" objections - that the interrogatories are vague and ambiguous, overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or control of MGA, seek information protected by the attorney-client privilege, work product or joint defense privileges, and call for a legal conclusion - are without merit. Mattel contends that the MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive. Mattel also contends that its interrogatories do not require the disclosure of privileged information or work product, but rather require the MGA parties to state their contentions about facts or the application of law to facts.

Mattel further contends that some of the MGA parties' responses are deficient in that they merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

EXHIBIT: H
PAGE: 136

details. Mattel contends that its contention interrogatories, including the purportedly "negative" interrogatories asking for every fact which supports the denial of a statement or allegation, are commonly used and well accepted to elucidate facts regarding a party's contentions, absent a showing of undue burden. Indeed, Mattel points to decisions by the district judge which it contends supports its use of the contention interrogatories at issue. Mattel also points out that it provided the MGA parties with the details supporting its contentions in a one hundred-ten page supplemental interrogatory response, and contends that the MGA parties ought to provide comparable details to Mattel.

Mattel also contends that the MGA parties have unilaterally limited many of their responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories. Further, Mattel contends that the MGA parties have failed to identify with specificity documents they intend to rely upon, as requested by some of the interrogatories.

Mattel acknowledges that fully responding to the interrogatories will require some effort. However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort the MGA parties will be required to undertake to disclose the requested information. Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

The MGA parties contend that their current responses comply with Rule 33 of the Federal Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First, the MGA parties contend that Mattel is not entitled to information about MGA's substitution of counsel because such information is protected by the attorney-client privilege or the work product doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial data that has been requested. Third, the MGA parties contend that Mattel's contention interrogatories contain misleading and unfair definitions and are unduly burdensome in that they require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT: H
PAGE: 137

contend that Rule 33 does not require a response to a contention interrogatory to set forth more than the principal factual and legal bases for the response.

### III. STANDARDS

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); <u>Rivera v. NIBCO, Inc.</u>, 364 F.3d 1057,1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); <u>Bernstein v. Travelers Ins. Co.</u>, 447 F.Supp.2d 1100,1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1,2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C).

Rule 33 of the Federal Rules of Civil Procedure allows a party to propound interrogatories, for which the responding party is required to furnish such information as is available to the party after conducting a reasonable inquiry. "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

Bryant v. Mattel, Inc., CV-04-
09049 SGL (RNBx)

EXHIBIT: H
PAGE: 138

33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

Fed.R.Civ.P. 33(b)(4).

### IV. DISCUSSION A. Interrogatories

About the Identity of Bratz Inventions (Nos. 27,28 and 29)

Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

three different time periods, namely before, during and after Bryant's employment with Mattel:

> Interrogatory No. 27: IDENTIFY each and every BRATZ INVENTION YOU
> contend was CREATED, in whole or in part, prior to January 4,1999, and for each
> BRATZ INVENTION so identified state all FACTS that support YOUR contention
> that such BRATZ INVENTION (or aspects or portions thereof) was CREATED
> prior to January 4,1999, and IDENTIFY all PERSONS with knowledge of such facts
> and all DOCUMENTS which REFER OR RELATE TO such facts.

> Interrogatory No. 28: IDENTIFY each and every BRATZ INVENTION YOU
> contend was CREATED, in whole or in part, after October 19,2000 and before June
> 1,2001, and for each BRATZ INVENTION so identified state all FACTS that
> support YOUR contention that such BRATZ INVENTION (or aspects or portions
> thereof) was CREATED after October 19,2000 and before June 1, 2001, and
> IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
> which REFER OR RELATE TO such facts.

> Interrogatory No. 29: IDENTIFY each and every BRATZ INVENTION that was
> CREATED, in whole or in part, after January 3,1999 and before October 21, 2000,
> and for each BRATZ INVENTION so identified state all FACTS that REFER OR
> RELATE TO the timing of the creating of such BRATZ INVENTION and
> IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
> which REFER OR RELATE TO such facts.

Mattel contends that these interrogatories seek information that is plainly relevant and

discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that the

partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

burden of showing that the interrogatories are burdensome or oppressive, particularly given the

importance of the information sought. Mattel emphasizes that the information sought will prove

liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

Bryant v. Mattel, Inc., CV-04-
09049 SOL (RNBx)

EXHIBIT: H
PAGE: 139

MGA claims were created before and just after Bryant's second period of employment at Mattel is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants' chronology of Bratz design and development.

The MGA parties contend that Mattel is using misleading and unfair definitions to create jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ INVENTION," which they contend contains separate component parts ("representation, idea, concept, work, process, procedure, plan, improvement, DESIGN or other development"), and Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements"). The MGA parties contend that including all of these concepts in the definition "improperly conflates distinct issues of patent law, copyright protection, trade secret law and the common law protecting original ideas, many of which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at 2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have provided adequate responses to the interrogatories using the common and ordinary meaning of the term "invention," and should not be required to provide anything further.

Next, the MGA parties contend that they have given Mattel the principal factual and legal bases for their contentions, and Rule 33 does not require them to provide anything further. The MGA parties contend that requiring a narrative response setting forth all evidence in support of their contentions would render the interrogatories unduly burdensome and "inherently improper." See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group. 245 F.R.D. 137, 141 (S.D. N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

Bryant v. Mattel, Inc., CV-
04-09049 SGL (RNBx)

supporting a particular allegation are *inherently improper").*

Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because the interrogatories are overbroad and unduly burdensome. The definition of "Bratz Invention" is extremely broad, encompassing numerous intellectual property concepts. Mattel has not shown how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is relevant to interpreting the term "invention" for purposes of enforcing the "Employee Confidential Information and Inventions Agreement," signed by Bryant. The breadth and undue burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all supporting documents. Not all contention interrogatories requiring a recitation of all facts, documents and witness are objectionable. See ej». Tatum v. Schwartz. 2007 WL 2220977 at * 1 (E.D. Cal. Aug. 2,2007) (noting that contention interrogatories can impose undue burdens, but that "courts have otherwise approved of them when they are limited to discrete, narrow factual events"); Roberts v. Heim. 130 F.R.D. 424,427 (N.D. Cal. 1989) (recognizing a broad spectrum of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as to the exact amount of detail a party has to supply in response to a contention interrogatory). In the instant case, however, Mattel's contention interrogatories would force the MGA parties to review the nearly 4 million pages of documents produced in this action and more than 50 days of deposition testimony in search of information relating to "any representation, idea, concept, work, process, procedure, plan, improvement, design or other development" that refers or relates to Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or relate to Bratz. It is not the MGA parties' responsibility to re-write the interrogatories in a manner that will yield Mattel the most amount of information to support Mattel's claims and defenses. On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

8

EXHIBIT: H
PAGE: 141

outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

In any event, the MGA parties' responses are adequate under the circumstances. Faced with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting the contentions identified in the interrogatories, identify persons with knowledge of those facts, and identify the principal documents or categories of documents that support each contention. See e.g. Moses v. Halstead. 236 F.R.D. 667, 674 (D. Kan. 2006). For example, in response to Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been patented as a utility patent because fashion dolls were in the public domain for the purposes of utility patent protection. However, the MGA parties contend that Bryant's idea of a line of fashion dolls he called Bratz was sufficiently novel and original to be protected under California law as a confidential novel idea under Desny v. Wilder. 46 Cal.2d 715 (1956) and its progeny.

The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes that were different from the actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by MGA in or about June 2001; that the final physical shape of the first generation of Bratz dolls released on the market by MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used standard fashion model poses, and thus were not novel or original. Further, the MGA parties' supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the drawings Bryant completed in August and September of 1998 contained original expression covered by copyright, but that subsequent modifications and versions of the drawings made by

EXHIBIT: H
PAGE: 142

1   Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2   numerous individuals having knowledge of the facts supporting their contentions, and identify

3   documents that are relevant to the MGA parties' contentions. B. Interrogatory About the

4   Identity of Former Mattel Employees Hired by MGA (No. 41)

5        Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6   "who are now or have been employed" by MGA since January 1,1999. More specifically,

7   Interrogatory No. 41 asks the MGA parties to:

8        IDENTIFY all PERSONS who at any time have been employed by or under contract
         with MATTEL who are now or have been employed by or under contract with YOU
9        since January 1,1999, and, for each such PERSON, state his or her name, date of
         hire or effective date of contract, the date on which YOU first had contact with such
10       PERSON regarding potential employment or contracting, the date(s) on which such
         PERSON was interviewed for possible employment or contracting, each title (if any)
11       such PERSON has held while employed by or under contract with YOU, and the
         date of termination (if applicable).

12
    In their supplemental response, the MGA parties assert numerous objections, but also provide a
13
    list of well over a hundred individuals with their position title and employment dates.
14
         Mattel contends that the MGA parties' response is incomplete because it does not contain
15
    the date of first contact regarding potential employment or contracting, as well as the interview
16
    date for potential employment or contracting.
17
         The MGA parties contend that during the meet and confer process, they agreed to
18
    investigate whether the additional requested information was reasonably available. The MGA
19
    parties represent that they are in the process of looking for the requested information, and that they
20
    will supplement their response if the information is reasonably available without undue burden.
21
         Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.
22
    The requested information is clearly relevant to Mattel's claims, and the MGA parties do not
23
    contend otherwise. In particular, the date of first contact, interview date, start date and end date for
24
    Bryant's employment are highly relevant, but are conspicuously absent from the MGA parties'
25
    response. The MGA parties shall provide the missing information for Bryant. In
26

27                                                                              10
    Bryant v. Mattel, Inc.,
28  CV-04-09049SGL(RNBx)

EXHIBIT: H
PAGE: 143

1    addition, the MGA parties shall provide the interview dates for each of the individuals identified

2    in their supplemental responses. The interview dates are potentially relevant to Mattel's claim

3    that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4    However, the MGA parties are not required to provide the date of first contact for each individual

5    because the burden of producing such information outweighs its likely benefit, taking into

6    account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P. C. Interrogatories re Allegedly

7    Copied or Infringed Products (Nos. 43-44)

8            Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9    product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10   "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11 ,  persons with knowledge and documents that refer or relate to the foregoing. In the responses, the

12   MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13   No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition. The MGA parties

14   also respond that, in general, at MGA, product development is completed 7-8 months before the

15   first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16           Mattel contends that the information it seeks is relevant to its defense against MGA's

17   claims that Mattel copied or infringed MGA's products. One of Mattel's defenses is that "Mattel

18   was the one who came up with relevant matters first - before MGA - and that MGA was the one

19   who copied or stole from Mattel." Mattel's Motion at p.23. Mattel contends that the MGA

20   parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21   Interrogatory No. 3 requested different information, namely the dates on which the products were

22   first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23           In response to the instant motion to compel, the MGA parties represent that they are

24   assessing whether they can provide more specific information without undue hardship, and will

25   supplement their responses if such information is available. MGA's Opposition at p.29.

26           Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27 -  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28
      Bryant v. Mattel, Inc., CV-04-
      09049SGL(RNBx)

1    their products have been copied or infringed by certain Mattel products. Although the MGA

2    parties served supplemental responses after filing their opposition brief, the supplemental

3    responses do not include the requested information. The MGA parties have failed to establish

4    that the interrogatories are unduly burdensome.

5    D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6         Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7         Interrogatory No. 48: Separately IDENTIFY each trade dress that YOU
          contend MATTEL has copied, infringed or diluted or that is otherwise the
8         subject of YOUR claims, defenses or allegations in THIS ACTION.

9         Interrogatory No. 49: For each trade dress identified in response to Interrogatory
          No. 48, separately and fully IDENTIFY each and every MATTEL product,
10        packaging or other matter that YOU contend copies, infringes or dilutes such trade
          dress, including without limitation by describing fully and separately, for each such
11        MATTEL product, packaging or other matter, each and every element of the
          claimed trade dress that YOU contend MATTEL has copied, infringed or diluted.
12
          Interrogatory No. 50: For each trade dress identified in response to Interrogatory
13        No. 48, separately and completely IDENTIFY all facts that support YOUR
          contention that such trade dress is protectible, all DOCUMENTS that REFER OR
14        RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

15        Mattel contends that these interrogatories seek core contentions underlying the MGA

16   parties' trade dress infringement claims and that the partial responses provided are inadequate

17   because they set forth only the "basic facts" without identifying a single product that MGA

18   alleges was infringed or any other details. Mattel also contends that the responses are improper

19   insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

20   this interrogatory will be the source of expert testimony and an expert may identify additional

21   facts that support MGA's contentions. Mattel contends that such a limitation would allow MGA

22   to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

23        As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

24   directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

25   Phase 2. Nevertheless, the MGA parties contend that their responses provide Mattel with the

26   principal facts supporting their contentions in compliance with Rule 33.

27
     Bryant v. Mattel, Inc.,                                          12
     CV-04-09049 SGL (RNBx)
28

EXHIBIT: H
PAGE: 145

1       Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied. The

2   MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3   trade dress they contend Mattel has infringed. More specifically, the MGA parties' responses

4   identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5   trade dress. The MGA parties also set forth the principal facts supporting their contention that

6   their trade dress is protectible under the applicable trade dress legal principles, including that the

7   trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8   meaning. That the interrogatory responses include a reservation of rights to supplement during

9   expert discovery does not render the responses inherently improper or inadequate. Mattel does

10   not contest that the identification of the elements and products subject to trade dress infringement

11   will be a subject of expert testimony. E. Interrogatory About the Identity of MGA's Bank

12   Accounts (No. 39)

13       Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14   institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15   for YOUR benefit, since January 1,1999." The MGA parties objected to this interrogatory as

16   seeking information "not relevant to the claims or defenses of any party to the action and not

17   reasonably calculated to lead to the discovery of admissible evidence.

18       Mattel contends that the information sought is discoverable because it may lead to direct

19   evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20   Larian. More specifically, Mattel contends that the timing and amounts of payments made to

21   Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22   commercial bribery and other tortious conduct. Mattel also contends that the timing of such

23   payments would also be indicative of the timing of Bryant's first involvement with MGA.

24   Further, Mattel contends that the requested information is relevant to establish net worth for

25   purposes of calculating punitive damages. Mattel also contends that the MGA parties' objection

26   based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27   independently relevant to many issues in the liability phase of trial, and is not just directed at

28

1     seeking discovery in aid of a judgment or execution.

2         The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3 in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4 information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5 even more private financial information. Further, the MGA parties contend that Mattel has

6 already received substantial financial information from MGA Entertainment, Inc. directly, and

7 has not shown how that information is insufficient. More specifically, the MGA parties point out

8 that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9 audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10 reports; various financial documents relating to Veronica Marlow; documents showing royalty

11 payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12 month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13 expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14 documents showing MGA's amortization and depreciation of certain capital assets and

15 expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16 including income and expense accounts, reserves and liabilities; and documents sufficient to

17 explain MGA's various accounts as presently and historically maintained in MGA's books and

18 records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19 profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20 witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21         Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22 grounds that the financial information sought is cumulative of other discovery already sought and

23 obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24 documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25 other banking relationships since January 1,1999. See Order Granting in Part and Denying in

26 Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27 Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28

EXHIBIT: H
PAGE: 147

obtained deposition testimony regarding payments to Mr. Larian, including the account to which

such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6). In

light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P. F.

Contention Interrogatories (Nos. 30-38 and 42)

Mattel served several contention interrogatories on several additional topics. The

remaining contention interrogatories at issue are set forth below.

> Interrogatory No. 30: State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

> Interrogatory No. 31: State all facts that support YOUR contention, if YOU so contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

> Interrogatory No. 32: State all facts that support YOUR contention, if YOU so contend, that MATTEL is not or would not be entitled to injunctive relief as requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately determined that MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

> Interrogatory No. 33: State all facts that support YOUR contention, if YOU so contend, that MATTEL is not entitled to an award of punitive or exemplary damages against YOU, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

> Interrogatory No. 34: State all facts that support YOUR contention, if YOU so contend, that YOU did not intentionally interfere with the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

> Interrogatory No. 35: State all facts that support YOUR contention, if YOU so contend, that YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

> Interrogatory No. 36: State all facts that support YOUR contention, if YOU so

EXHIBIT: H
PAGE: 148

1    contend, that YOU acted with an innocent state of mind or reasonably believed that
     MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2    purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and
     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
3    that REFER OR RELATE TO such facts.

4    Interrogatory No. 37: State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5    BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY all
     PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
6    RELATE TO such facts.

7    **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach BRYANT'S duty of loyalty or fiduciary
8    duties to MATTEL when BRYANT performed work or services with or for MGA
     while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
9    knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
     facts.

10   **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so
11   contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created
     by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with
12   knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
     facts.

13

14   Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

15   including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-a-vis

16   MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

17   inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

18   owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

19   relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

20   Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

21   and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

22   created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

23   protectible. Mattel contends that the MGA parties cannot show burden sufficient to outweigh

24   Mattel's need for the information sought.

25       In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

26   MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

27

28
     Bryant v. Mattel, Inc.,                                                          16
     CV-04-09049 SGL (RNBx)

1    As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly
2    assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why
3    they should not be punished for developing Bryant's ideas. Nevertheless, the MGA parties
4    represent that they responded to the interrogatories in good faith by providing the principal facts
5    supporting their contentions, and therefore are in compliance with Rule 33.

6         Mattel's motion to compel a further response to Interrogatory No. 30 is denied. Like
7    Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the
8    request for all facts, the identity of all persons and all supporting documents, render the
9    interrogatory overbroad and unduly burdensome. In any event, the MGA parties have provided a
10   reasonably sufficient response. The MGA parties' supplemental response includes their
11   contention that the "Inventions Agreement" did not apply to design patent rights. Further, the
12   MGA parties contend that (a) the pre-October 21,2000 drawings of characters that Bryant named
13   Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for
14   three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant
15   sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,
16   2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would
17   have produced shapes that were different from the actual shape of the final three-dimensional
18   Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by
19   MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,
20   released on the market by MGA in or about June 2001 was "conceived of and "reduced to
21   practice" by Margaret Leahy, working on behalf of MGA, after October 20,2000 and before June
22   1,2001, along with other MGA agents and employees; (e) Bryant's drawings used standard
23   fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant
24   to his meeting with MGA on September 1,2000, was merely an assemblage of random pre-
25   existing doll parts that was never intended to, and did not, provide an accurate representation of
26   what became the Bratz sculpt. Based on the foregoing, the MGA parties contend that, assuming
27   arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                      17

EXHIBIT: H
PAGE: 150

1  conception of what could have been developed into a tangible item that would have qualified for

2  protection under a design patent, such conception would not have covered the shape of the final

3  Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4  nor any subsequent three-dimensional Bratz shape. The MGA parties' supplemental responses to

5  Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6  persons with knowledge and documents relevant to the MGA parties' contentions.

7       Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8  The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9  identified persons with knowledge, and identified documents to support their contentions. To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12       Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents. G. Interrogatories

14  About MGA's Searches for Documents (40 and 47)

15       Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17       Interrogatory No. 40: IDENTIFY each and every STORAGE DEVICE that YOU
18       have used for any purpose which contains or contained DIGITAL INFORMATION
         that REFERS OR RELATES TO BRATZ and/or ANGEL prior to January 1,2002.

19       Interrogatory No. 47: IDENTIFY each and every SOURCE OF INFORMATION
20       from which YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER
         OR RELATE TO BRATZ and that also REFER OR RELATE TO the time period
21       prior to February 28, 2001 (regardless of when such DOCUMENT was, in whole or
         part, created, drafted, generated, sent, received or transmitted).

22  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

23  worldwide at MGA prior to January 1,2002. The MGA parties did not provide any substantive

24  response to No. 47.

25       Mattel contends that the interrogatories are designed to test MGA's productions in this

26  litigation and obtain additional responsive documents and information. Further, Mattel contends

27
    Bryant v. Mattel, Inc.,
28  CV-04-09049 SGL (RNBx)                                                                    18

1    that there is legal precedent allowing access to a party's information storage systems where the

2    party is shown to have improperly withheld relevant documents or information. Mattel contends

3    that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4    storage devices because Mattel may have a right to access such storage devices. In particular,

5    Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6    of specific storage devices, the individuals who have used them, the persons who currently

7    possess them, and the dates on which they were destroyed or copied, if any. Mattel contends that

8    the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9    withheld responsive documents and to enable Mattel to obtain such documents.

10    Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11    the sources of information - i.e. the media - from which the MGA parties have collected

12    documents relating to Bratz and the period prior to February 28, 2001. Mattel contends that the

13    information it seeks will enable it to determine what sources the MGA parties have examined and

14    have not examined to produce documents in the case.

15    During the meet and confer process, the MGA parties proposed that the parties exchange

16    "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17    and 47. The "source logs" would provide each document's Bates number, the identity of the

18    individual associated with or who maintained the document and the location where the document

19    was found. Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20    seeking information about key early Bratz documents, not every document produced in the case.

21    Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22    would not reveal sources that contain early Bratz documents that MGA has not produced

23    documents from, or where MGA looked for documents, as well as where MGA failed to look.

24    The MGA parties contend that the interrogatories assume, without any factual support, that

25    the MGA parties are aware of the existence of Bratz documents on their computer systems that

26    relate to the time period prior to January 1, 2002, and have not produced those documents. The

27    MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

1   Interrogatory Nos. 40 and 47. The MGA parties emphasize that they have already produced more

2   than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3   pages of documents. Furthermore, the MGA parties contend that these interrogatories are

4   cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5   collection of documents produced in this action. The MGA parties also represent that they have

6   agreed to provide additional testimony on this topic.

7        Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8   The interrogatories seek relevant information about the identity of each storage device that

9   contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10   sources of information from which the MGA parties collected documents in this action that refer

11   or relate to Bratz and the time period prior to February 28, 2001. The "source log" information is

12   not a reasonable substitute for the information requested in the interrogatories because it would

13   not necessarily identify all storage devices used by the MGA parties during the relevant period.

14   The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15   other information. The MGA parties have failed to establish that the interrogatories are unduly

16   burdensome. Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17   Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18   witness might be able to recall in the course of a deposition. Furthermore, the information sought

19   in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20   H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21        Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22        **Interrogatory No. 46:** Without disclosing the content of communications which are
       protected by the attorney-client privilege, state fully and in detail all facts which
23        REFER OR RELATE TO any dispute regarding THIS ACTION between, on the one
       hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand,
24        O'MELVENY and/or CHRISTENSEN, including but not limited to any and all
       disputes which were or have been asserted as a basis for, or which underlie,
25        contributed to or were a factor in, the withdrawal, termination and/or substitution of
       O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION, and
26        IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that
       REFER OR RELATE TO such facts.
27

28
     Bryant v. Mattel, Inc.,                                                        20
     CV-04-09049 SGL (RNBx)

EXHIBIT: H
PAGE: 153

1    Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2    information protected by either the attorney-client privilege or the work product doctrine. Further,

3    Mattel contends that the requested facts are relevant and discoverable. Mattel reasons that

4    O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its motion

5    to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could be

6    relevant to the case. For example, Mattel contends that O'Melveny may have withdrawn because

7    MGA sought to provide false testimony, or was seeking "to pursue an illegal course of conduct" or

8    "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under the State Bar

9    Act." Mattel's Motion at p. 38.

10        The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11    "dispute" with former counsel, and moreover, that the information sought is protected by the

12    work product doctrine and/or attorney-client privilege. The MGA parties reason that even if

13    Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14    claims and defenses in this action, and therefore the requested information is irrelevant and

15    outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16    this action, such that revelation of the substance of the dispute would necessarily reveal the

17    thought processes of trial counsel and the communication of those thought processes to the MGA

18    parties.

19        Mattel's motion to compel is denied as to Request No. 46. The interrogatory is not

20    tethered to any particular claim or defense. Nor is the interrogatory directed at uncovering the

21    factual events giving rise to any claim or defense. Instead, the interrogatory assumes that there

22    was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23    misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24    and that this "dispute" potentially relates to a claim or defense in this suit. There is no evidence,

25    however, to substantiate such a series of assumptions. Although the publicly available

26    information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27    without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT: H
PAGE: 154

1                                                                                    28

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              22

EXHIBIT: H
PAGE: 155

propos s" with former counsel, regardless of whether such disputes relate to a claim or defense in the

ed case.

discove       The interrogatory is also objectionable because it intrudes upon MGA's relationship with

ry former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

outwei privilege and work product doctrine. Mattel's rank speculation that there were attorney-client

ghs its discussions of wrongdoing is insufficient to vitiate the attorney-client privilege. See e^ In re

likely Napster, Inc. Copyright Litig.. 479 F.3d 1078,1090 (9th Cir. 2007). Nor have the MGA parties

benefit waived the attorney-client privilege. Although the MGA parties discussed the reasons for their

under substitution of counsel with the press, there has been no showing that the information they

Rule disclosed revealed the substance of an attorney-client privileged communication.

26(b)(2

)(C),                          **V. CONCLUSION**

Fed.R.       For the reasons set forth above, it is hereby ordered as follows:

Civ.P.       1. Mattel's motion to compel is granted as to Interrogatory Nos. 38,40,41 (as narrowed),

Further 43-44 and 47. The MGA parties shall serve supplemental responses to said interrogatories no

more, later than February 26, 2008.

the        2. Mattel's motion to compel is denied as to Interrogatory Nos. 27-37,39,42,46 and 48-

     50.

interrog Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

<del>it forthwith</del>

    Dated: February 15, 2008         _Os < *^ , MA I^7^J^^._

                                WARDA.IN1FAN

                               Discovery Master

atory is Mattel shall file this Order with the CleTk of    Cot

grossly

overbro

ad in

seeking

inform

ation

about

"any

and all

dispute

EXHIBIT: H
PAGE: 156

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15,2008,1 served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. Michael H. Page, Esq. Christa Anderson, Esq. Matthew M. Werdegar, Esq. John E. Trinidad, Esq. Audrey Walton-Hadlock, Esq. John | Keker & Van Nest<br>Keker & Van Nest<br>Keker & Van Nest<br>Keker & Van Nest<br>Keker & Van Nest<br>Keker & Van Nest | jkeker@kvn.com , mhp@kvn.com<br>cma@kvn.com mwerdeQar@kvn.com<br>itrinidad@kvn.com awalton-<br>hadlock@kvn.com<br>johnquinn@quinnemanuel.com<br>michaelzeller@quinnemanuel.com |
| Quinn Esq. Michael Zeller Esq. Jon Corey Esq. Duane Lyons Esq. Timothy Alger Esq. Dominic Surprenant Esq. B. Dylan Proctor Esq. Shane McKenzie Esq. Bridget Hauler Esq. Tamar Buchakjian Esq. Juan Pablo Alban, Esq. Thomas J. Nolan, Esq. Raoul D. Kennedy, Esq. Amy S. Park, Esq. Harriet S. Posner, Esq. Carl Alan Roth, Esq.-Timothy A. Miller, Esq. Marcus R. Mumford, Esq. Paul M. Eckles, Esq. Robert J. Herrington, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Skadden, Arps, Slate, Meagher & Flom LLP | joncorey@quinnemanuel.com<br>duanelyons@quinnemanuel.com<br>timalger@quinnemanuel.com<br>DominicSurprenant@QuinnEmanuel.com<br>dylanproctor@quinnemanuel.com<br>shanemckenzie@quinnemanuel.com<br>bridgethauler@quinnemanuel.com<br>tamarbuchakjian@quinnemanuel.com<br>juanpabloalban@quinnemanuel.com<br>tnolan@skadden.com<br>rkennedy@skadden.com<br>apark@skadden.com h<br>posner@skadden. com<br>croth@skadden.com<br>tmiller@skadden.com<br>Mmumford@skadden.com<br>Paul.eckles@skadden.com<br>Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 15, 2008, at San Francisco, California.

*Sandra Chan*

Sandra Chan

EXHIBIT: H
PAGE: 157

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), A0279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 2/19/2008 at 2:56 PM PST and filed on 2/19/2008

**Case Name:**          Carter Bryant v. Mattel Inc
**Case Number:**        2:04-cv-9049
**Filer:**              Mattel Inc
**Document Number:** 2266

### Docket Text:

Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties filed by Defendant Mattel Inc re: MOTION to Compel Responses to Interrogatories by the MGA Parties *(Nos. 27-44 and46-50)[\3\7]* (Proctor, Brett)

### 2:04-cv-9049 Notice has been electronically mailed to:

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Linda M Burrow    burrow@caldwell-leslie.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Melissa Grant    melissagrant@quinnemanuel.com

Emil W Herich    eherich@kmwlaw.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

EXHIBIT: H
PAGE: 158

https://ecf.cacd.uscourts.gov/cgi-bin/Dispatch.pl?245598662032311                    2/19/2008

John W Keker   jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy   rkennedy@skadden.com

Alisa Morgenthaler Lever   amorgenthaler@chrisglase.com

Larry W McFarland   lmcfarland@kmwlaw.com

Nathan Meyer   nmeyer@kayescholer.com, ddow@kayescholer.com

Cyrus S Nairn   cyrusnaim@quinnemanuel.com

Thomas J Nolan   tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland   moverland@obsklaw.com

Michael H Page   mhp@kvn.com

Kenneth A Plevan   kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor   dylanproctor@quinnemanuel.com

John B Quinn   johnquinn@quinnemanuel.com

David C Scheper   dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar   alexstolyar@quinnemanuel.com

John Elliot Trinidad   jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock   awaltonhadlock@kvn.com

Matthew M Werdegar   mmw@kvn.com

Michael T Zeller   michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:Main** Document
**Original filename:** C:\Documents and Settings\laurakinsey\Desktop\Order re Motion to Compel.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/19/2008] [FileNumber=5381686-0]
[643f3427701adadlbfb3880576efb3c91150eb5f693240ae485529023da3f2864add
e9800830a44a4c86425534eadl6e2d9b58cbceeblaba019aal836347bcbd]]

**EXHIBIT: H**
**PAGE: 160**

2/19/2008

EXHIBIT: H
PAGE: 161

# EXHIBIT I
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT I
# TO DECLARATION OF
# JEAN PIERRE NOGUES



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
4  Facsimile:  (213) 443-3100

5  Attorneys for Plaintiff
   Mattel, Inc.
6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 MATTEL, INC., a Delaware          )  Case No. CV 04-3431 NM (RNBx)
   corporation,                      )
12                                   )
                  Plaintiff,         )  PLAINTIFF MATTEL, INC.'S
13                                   )  OBJECTIONS AND RESPONSES
            v.                       )  TO DEFENDANT'S FIRST SET OF
14                                   )  INTERROGATORIES
   CARTER BRYANT, an individual; and )
15 DOES 1 through 10, inclusive,     )
                                     )
16                Defendants.        )
                                     )
17

18

19

20

21

22

23

24

25

26

27

28

07209/594726.1

                              RESPONSE TO INTERROGATORIES

EXHIBIT: I
PAGE: 162

1    A statement by Mattel that it will produce documents in response to

2  an Interrogatory is not intended to suggest, nor should it be construed to mean,

3  that any such documents exist, or that they are in Mattel's possession, custody or

4  control.

5

6                       Specific and General Responses

7       Each of the following objections and responses to the Interrogatories

8  is expressly made subject to the above Preliminary Statement and General

9  Objections, all of which are incorporated in each of the following objections and

10  responses to specific Interrogatories.

11

12  INTERROGATORY NO. 1:

13       State all facts supporting YOUR contention, if YOU so contend, that

14  Bryant performed services or did any work for a third party or for himself while in

15  the employ of MATTEL.

16

17  RESPONSE TO INTERROGATORY NO. 1:

18       In addition to the general objections stated above, Mattel specifically

19  objects to this Interrogatory on the grounds that it calls for the disclosure of

20  information subject to the attorney-client privilege, the attorney work-product

21  doctrine and other applicable privileges.  Mattel further objects to this

22  Interrogatory on the ground that it calls for the disclosure of confidential and/or

23  proprietary information, which Mattel will disclose only subject to and in reliance

24  upon a suitable protective order.  Mattel further objects to this Interrogatory as

25  unreasonably burdensome and overbroad in that it purports to require Mattel to

26  summarize all facts on this subject, including without limitation facts that are

27  known to or in the possession, custody and control of defendant and nonparties,

28  including nonparties associated with defendant.  Mattel further objects to this

07209/594726.1                               -4-

EXHIBIT: I
PAGE: 163

1  Interrogatory on the grounds that it is premature in that it purports to seek to all
2  facts relating to this subject at the outset of discovery in this action and also seeks
3  to circumvent the expert disclosure provisions of the Federal and Local Rules.

4       Subject to and without waiving the foregoing general and specific
5  objections, Mattel responds as follows:

6       On January 4, 1999, upon starting his second term of Mattel
7  employment, and as a condition of and in consideration for his employment,
8  defendant entered into an Employee Confidential Information and Inventions
9  Agreement (the "Employee Agreement"). Among other things, defendant agreed
10 that he would not, without Mattel's express written consent, "engage in any
11 employment or business other than for [Mattel], or invest in or assist (in any
12 manner) any business competitive with the business or future business plans of
13 [Mattel]." Defendant further acknowledged that he held a position of trust with
14 Mattel. In addition, defendant assigned to Mattel all right, title and interest in
15 "inventions," including without limitation "designs," that he created, conceived or
16 reduced to practice, whether alone or jointly with others, during his employment
17 by Mattel under the terms set forth in his Employee Agreement. A copy of
18 defendant's Employee Agreement with Mattel, dated January 4, 1999, is attached
19 to the Complaint as Exhibit A and is hereby incorporated into this response by this
20 reference.

21      Furthermore, on January 4, 1999, defendant executed a Conflict of
22 Interest Questionnaire (the "Conflict Questionnaire"). Among other things,
23 defendant certified in the Conflict Questionnaire that, other than as disclosed, he
24 had not worked for any competitor of Mattel in the prior twelve months and had
25 not engaged in any business venture or transaction involving a Mattel competitor
26 that could be construed as a conflict of interest. Defendant specifically agreed that
27 he would immediately notify his supervisor of any change in his situation that
28 would cause him to change any of the foregoing certifications. The only conflict

-5-

EXHIBIT: I
PAGE: 164

1   disclosure that defendant made on the Conflict Questionnaire (or at any time
2   subsequently) concerned what defendant stated was "freelance" work that is
3   unrelated to the conduct alleged herein. A copy of the Conflict Questionnaire
4   executed by Bryant is attached as Exhibit B to the Complaint and is hereby
5   incorporated into this response by this reference.

6          In late November 2003, Mattel obtained a copy of a contract
7   evidencing that defendant had secretly aided, assisted and worked as a designer for
8   MGA, a Mattel competitor, while defendant was employed by Mattel and was
9   being paid by Mattel for his exclusive services as a designer. Defendant's
10  agreement with MGA obligated defendant to provide design services to MGA on a
11  "top priority" basis. In addition, defendant's agreement with MGA purported to
12  assign MGA rights to preexisting works by defendant and to deem work and
13  services furnished by defendant to MGA under the agreement as "works for hire."
14  Furthermore, defendant's agreement with MGA provided that defendant would be
15  paid for such services and receive royalties and other consideration for products
16  on which defendant provided aid or assistance. A copy of defendant's agreement
17  with MGA, in the form obtained by Mattel, is attached to the Declaration of
18  Michael T. Zeller in Support of Motion for Remand as Exhibit 2 and is hereby
19  incorporated into this response by this reference. Defendant, while he was
20  employed by Mattel, also secretly used Mattel resources, as well as defendant's
21  time on the job, to aid and assist MGA and to further his own personal interests
22  over the interests of Mattel. During the time that defendant was employed by
23  Mattel and thereafter, defendant concealed these actions from Mattel, including
24  without limitation by failing to notify his supervisor of his conflict of interest
25  regarding MGA and by making affirmative misrepresentations to Mattel
26  management upon his departure from Mattel.

27          By way of further answer, pursuant to Federal Rule of Civil Procedure
28  33(d), Mattel will produce responsive, non-privileged documents and tangible

-6-

EXHIBIT: I
PAGE: 165

1 items in its possession, custody or control from which the answer to this

2 Interrogatory may be derived.

3 By way of further answer, Mattel currently has not yet received

4 discovery from defendant or MGA, has not yet obtained any deposition testimony

5 and has not yet had the opportunity to obtain information from other third parties

6 who may possess relevant information. Mattel therefore reserves the right to

7 supplement this response after Mattel receives more information about defendant's

8 activities. By way of further answer, this topic may be the subject of expert

9 testimony, which will be disclosed in the manner, and at the time, required for

10 expert disclosures pursuant to the Federal and Local Rules.

11

12 INTERROGATORY NO. 2:

13 State all facts supporting YOUR contention, if YOU so contend, that

14 Bryant for his own gain, or the gain of any third party, at any time converted,

15 improperly used, sold, assigned or otherwise transferred any work product of his

16 creation which YOU believe was owned by MATTEL.

17

18 RESPONSE TO INTERROGATORY NO. 2:

19 In addition to the general objections stated above, Mattel specifically

20 objects to this Interrogatory on the grounds that it calls for the disclosure of

21 information subject to the attorney-client privilege, the attorney work-product

22 doctrine and other applicable privileges. Mattel further objects to this

23 Interrogatory on the ground that it calls for the disclosure of confidential and/or

24 proprietary information, which Mattel will disclose only subject to and in reliance

25 upon a suitable protective order. Mattel further objects to this Interrogatory as

26 unreasonably burdensome and overbroad in that it purports to require Mattel to

27 summarize all facts on this subject, including without limitation facts that are

28 known to or in the possession, custody and control of defendant and nonparties,

07209/594726.1

-7-

1  including nonparties associated with defendant. Mattel further objects to this

2  Interrogatory on the grounds that it is premature in that it purports to seek to all

3  facts relating to this subject at the outset of discovery in this action and also seeks

4  to circumvent the expert disclosure provisions of the Federal and Local Rules.

5          Subject to and without waiving the foregoing general and specific

6  objections, Mattel responds as follows:

7          On January 4, 1999, upon starting his second term of employment

8  with Mattel, and as a condition of and in consideration for his employment,

9  defendant entered into an Employee Agreement. Among other things, defendant

10  agreed that he would not, without Mattel's express written consent, "engage in any

11  employment or business other than for [Mattel], or invest in or assist (in any

12  manner) any business competitive with the business or future business plans of

13  [Mattel]." Defendant further acknowledged that he held a position of trust with

14  Mattel. In addition, defendant assigned to Mattel all rights, title and interest in

15  "inventions," including without limitation "designs," that he conceived, created or

16  reduced to practice, whether alone or jointly with others, during his employment

17  by Mattel under the terms set forth in his Employee Agreement. A copy of

18  defendant's Employee Agreement with Mattel, dated January 4, 1999, is attached

19  to the Complaint as Exhibit A and is hereby incorporated into this response by this

20  reference.

21          Furthermore, on January 4, 1999, defendant executed a Conflict

22  Questionnaire. Among other things, defendant certified in the Conflict

23  Questionnaire that, other than as disclosed, he had not worked for any competitor

24  of Mattel in the prior twelve months and had not engaged in any business venture

25  or transaction involving a Mattel competitor that could be construed as a conflict

26  of interest. Defendant specifically agreed that he would immediately notify his

27  supervisor of any change in his situation that would cause him to change any of

28  the foregoing certifications. The only conflict disclosure that defendant made on

07209/594726.1

-8-

EXHIBIT: I
PAGE: 167

1  the Conflict Questionnaire (or at any time subsequently) concerned what

2  defendant stated was "freelance" work that is unrelated to the conduct alleged

3  herein. A copy of the Conflict Questionnaire executed by Bryant is attached as

4  Exhibit B to the Complaint and is hereby incorporated into this response by this

5  reference.

6          In late November 2003, Mattel obtained a copy of a contract

7  evidencing that defendant had secretly aided, assisted and worked as a designer for

8  MGA, a Mattel competitor, while defendant was employed by Mattel and was

9  being paid by Mattel for his exclusive services as a designer. Defendant's

10  agreement with MGA obligated defendant to provide design services to MGA on a

11  "top priority" basis. In addition, defendant's agreement with MGA purported to

12  assign MGA rights to preexisting works by defendant and to deem work and

13  services furnished by defendant to MGA under the agreement as "works for hire."

14  Furthermore, defendant's agreement with MGA provided that defendant would be

15  paid for such services and receive royalties and other consideration for products

16  on which defendant provided aid or assistance. A copy of defendant's agreement

17  with MGA, in the form obtained by Mattel, is attached to the Declaration of

18  Michael T. Zeller in Support of Motion for Remand as Exhibit 2 and is hereby

19  incorporated into this response by this reference. Defendant, while he was

20  employed by Mattel, also secretly used Mattel resources, as well as defendant's

21  time on the job, to aid and assist MGA and to further his own personal interests

22  over the interests of Mattel. During the time that defendant was employed by

23  Mattel and thereafter, defendant concealed these actions from Mattel, including

24  without limitation by failing to notify his supervisor of his conflict of interest

25  regarding MGA and by making affirmative misrepresentations to Mattel

26  management upon his departure from Mattel.

27          Mattel was entitled to, *inter alia*, defendant's exclusive services and

28  the exclusive ownership of his inventions as defined in and set forth in his

RESPONSE TO INTERROGATORIES

EXHIBIT: 1
PAGE: 168

1   Employee Agreement and pursuant to law, while he was employed by Mattel and

2   being paid by Mattel for his exclusive services as a designer. However, defendant

3   provided such services, and aided and assisted a Mattel competitor, including

4   without limitation by purporting to confer convey rights to MGA, during the time

5   of his Mattel employment. All inventions, including without limitation ideas,

6   concepts, designs, proprietary information, and other property conceived, created

7   or reduced to practice by defendant (whether alone or jointly with others) while

8   employed by Mattel, and all work product, proceeds and benefits derived

9   therefrom, were and are owned by Mattel as set forth in his Employee Agreement

10  and pursuant to law.

11          By way of further answer, pursuant to Federal Rule of Civil Procedure

12  33(d), Mattel will produce responsive, non-privileged documents and tangible

13  items in its possession, custody or control from which the answer to this

14  Interrogatory may be derived.

15          By way of further answer, Mattel currently has not yet received

16  discovery from defendant or MGA, has not yet obtained any deposition testimony

17  and has not yet had the opportunity to obtain information from other third parties

18  who may possess relevant information. Mattel therefore reserves the right to

19  supplement this response after Mattel receives more information about defendant's

20  activities. By way of further answer, this topic may be the subject of expert

21  testimony, which will be disclosed in the manner, and at the time, required for

22  expert disclosures pursuant to the Federal and Local Rules.

23

24  INTERROGATORY NO. 3:

25          State all facts supporting YOUR contention, if YOU so contend, that

26  Bryant for his own gain, or the gain of any third party, at any time converted, used,

27  sold, assigned or otherwise transferred any MATTEL work product owned at any

28  time by MATTEL or created by any MATTEL employee other than Bryant, or by

EXHIBIT: I
PAGE: 169

1  DATED: July 16, 2004

2

3                                    QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
4
        By _____
5                Michael T. Zeller
                 Attorneys for Plaintiff
6                Mattel, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/594726.1                        -30-
                                                    RESPONSE TO INTERROGATORIES

EXHIBIT: I
PAGE: 170

# EXHIBIT J

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT J

# TO DECLARATION OF

# JEAN PIERRE NOGUES

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2 |   Michael T. Zeller (Bar No. 196417)
    Jon D. Corey (Bar No. 185066)
3 | 865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4 | Telephone: (213) 443-3000
    Facsimile:  (213) 443-3100
5 |
    Attorneys for Plaintiff
6 | Mattel, Inc.

7

8 |                UNITED STATES DISTRICT COURT

9 |           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 | MATTEL, INC., a Delaware          ) CASE NO. CV 04-9059 NM (RNBx)
     corporation,
12 |                   Plaintiff,      )
                                      ) PLAINTIFF MATTEL, INC.'S
13 |        v.                        ) OBJECTIONS AND
                                      ) SUPPLEMENTAL RESPONSES TO
14 | CARTER BRYANT, an individual, and ) DEFENDANT'S FIRST SET OF
     DOES 1 through 10, inclusive,    ) INTERROGATORIES
15 |                   Defendants.    ) (INTERROGATORY NOS. 1-3, 6,
                                      ) 10-13 AND 16)
16 |
17 | CARTER BRYANT, on behalf of      )
     himself, all present and former )
18 | employees of Mattel, Inc., and the )
     general public,                  )
19 |                                  )
                   Counter-Claimant,  )
20 |                                  )
            v.                        )
21 |                                  )
     MATTEL, INC., a Delaware         )
22 | corporation,                     )
                                      )
23 |                   Counter-Defendant. )

24

25

26

27

28

PLAINTIFF MATTEL, INC.'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES

EXHIBIT: J
PAGE: 171

1  defendants' counsel has denied that anyone engaged in destructive sampling or
2  analysis of Bryant's original drawings. Defendants have not, however, explained
3  the origin of the holes in the original drawings.

4          Ramona Prince, a third-party witness, has raised other questions
5  about the integrity of Bryant's documents. According to both Ms. Prince and
6  Bryant, Bryant showed Ms. Prince his Bratz drawings in August 1999, when he
7  was employed by Mattel. Ms. Prince, however, has testified that markings which
8  now appear on the copy of a Bratz drawing produced by defendants did *not* appear
9  on the original drawing that Bryant showed her in 1999. This conflicts with
10 Bryant's testimony about the drawing. He claims that he created the drawing in its
11 entirety in August 1998, before he showed it to Ms. Prince.

12         By way of further answer, pursuant to Federal Rule of Civil
13 Procedure 33(d), Mattel will produce responsive, non-privileged documents and
14 tangible items in its possession, custody or control from which the answer to this
15 Interrogatory may be derived.

16         By way of further answer, Mattel currently has not yet received
17 discovery from defendant or MGA, has not yet obtained any deposition testimony
18 and has not yet had the opportunity to obtain information from other third parties
19 who may possess relevant information. Mattel therefore reserves the right to
20 supplement this response after Mattel receives more information about defendant's
21 activities. By way of further answer, this topic may be the subject of expert
22 testimony, which will be disclosed in the manner, and at the time, required for
23 expert disclosures pursuant to the Federal and Local Rules.

24

25 INTERROGATORY NO. 2:

26         State all facts supporting YOUR contention, if YOU so contend, that
27 Bryant for his own gain, or the gain of any third party, at any time converted,

28

EXHIBIT: J
PAGE: 172

1  improperly used, sold, assigned or otherwise transferred any work product of his

2  creation which YOU believe was owned by MATTEL.

3

4  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

5  In addition to the general objections stated above, Mattel specifically

6  objects to this Interrogatory on the grounds that it calls for the disclosure of

7  information subject to the attorney-client privilege, the attorney work-product

8  doctrine and other applicable privileges. Mattel further objects to this

9  Interrogatory on the ground that it calls for the disclosure of confidential and/or

10  proprietary information, which Mattel will disclose only subject to and in reliance

11  upon a suitable protective order. Mattel further objects to this Interrogatory as

12  unreasonably burdensome and overbroad in that it purports to require Mattel to

13  summarize all facts on this subject, including without limitation, facts that are

14  known to or in the possession, custody and control of defendant Bryant,

15  defendant-in-intervention MGA Entertainment, Inc. and nonparties, including

16  nonparties associated with Bryant and/or MGA. Mattel only undertakes to make a

17  good-faith, reasonable effort to summarize facts currently known to it in

18  responding to this Interrogatory. Mattel further objects to this Interrogatory on the

19  grounds that it is premature in that it purports to seek to all facts relating to this

20  subject at the outset of discovery in this action and also seeks to circumvent the

21  expert disclosure provisions of the Federal Rules of Civil Procedure and the Local

22  Rules.

23  Subject to and without waiving the foregoing general and specific

24  objections, Mattel responds as follows:

25  On January 4, 1999, upon starting his second term of Mattel

26  employment, and as a condition of and in consideration for his employment,

27  defendant Bryant entered into an Employee Confidential Information and

28  Inventions Agreement (the "Employee Agreement"). Among other things, Bryant

SUPPLEMENTAL INTERROGATORY RESPONSES

1 | agreed that he would not, without Mattel's express written consent, "engage in any
2 | employment or business other than for [Mattel], or invest in or assist (in any
3 | manner) any business competitive with the business or future business plans of
4 | [Mattel]." Bryant further acknowledged that he held a position of trust with
5 | Mattel. In addition, Bryant assigned to Mattel all right, title and interest in
6 | "inventions," including without limitation "designs," that he created, conceived or
7 | reduced to practice, whether alone or jointly with others, during his employment
8 | by Mattel under the terms set forth in his Employee Agreement. A copy of
9 | defendant's Employee Agreement with Mattel, dated January 4, 1999, is attached
10 | to the Complaint as Exhibit A and is hereby incorporated into this response by this
11 | reference. Before his departure from Mattel, Bryant confirmed his obligations in a
12 | Proprietary Information Checkout form, which Bryant agreed to and signed. A
13 | copy of this additional agreement has been produced in this action and is hereby
14 | incorporated into this response by this reference.

15 | Also on January 4, 1999, Bryant executed a Conflict of Interest
16 | Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant
17 | certified in the Conflict Questionnaire that, other than as disclosed, he had not
18 | worked for any competitor of Mattel in the prior twelve months and had not
19 | engaged in any business venture or transaction involving a Mattel competitor that
20 | could be construed as a conflict of interest. Bryant specifically agreed that he
21 | would immediately notify his supervisor of any change in his situation that would
22 | cause him to change any of the foregoing certifications. The only conflict
23 | disclosure that Bryant made on the Conflict Questionnaire concerned what
24 | defendant stated was "freelance" work for Ashton-Drake that is unrelated to the
25 | conduct alleged herein. At no time did Bryant disclose to Mattel that he was
26 | working with MGA, a known competitor, while employed by Mattel, or that he
27 | was paid by MGA for services rendered to MGA while he was a Mattel employee.
28 |

-14-

SUPPLEMENTAL INTERROGATORY RESPONSES

EXHIBIT: J
PAGE: 174

1 │ A copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B
2 │ to the Complaint and is hereby incorporated into this response by this reference.

3 │        In late November 2003, Mattel obtained a copy of a contract
4 │ evidencing that Bryant had aided and assisted, and worked as a designer with,
5 │ MGA, a Mattel competitor, while he was employed by Mattel and was being paid
6 │ by Mattel for his exclusive services as a designer.  Bryant's agreement with MGA
7 │ obligated him to provide design services to MGA on a "top priority" basis.  In
8 │ addition, his agreement with MGA purported to assign to MGA rights to
9 │ preexisting works by Bryant and to deem work and services furnished by Bryant to
10 │ MGA under the agreement as "works for hire."  Furthermore, Bryant's agreement
11 │ with MGA provided that he would be paid for such services and receive royalties
12 │ and other consideration for products on which he provided aid or assistance.  A
13 │ copy of defendant's agreement with MGA, in the form obtained by Mattel, has
14 │ been produced in this case and is hereby incorporated into this response by this
15 │ reference.

16 │        Although discovery and Mattel's investigation are on-going,
17 │ additional documents, testimony and other evidence thus far obtained have
18 │ confirmed that Bryant worked with and aided MGA, and advanced his own
19 │ personal interests over Mattel's, during the term of his Mattel employment without
20 │ Mattel's express written permission.  First, Bryant admitted at deposition that he
21 │ did so, although he sought to minimize and conceal the time period and extent of
22 │ his aid to and work with MGA.  Among other things, Bryant testified that (1) he
23 │ made pitches to MGA concerning the Bratz project during the term of his
24 │ employment; (2) he used Mattel personnel and other Mattel resources to assist him
25 │ in such pitches, including without limitation by using Mattel personnel and
26 │ resources to make what he called a "dummy" and others have called a three-
27 │ dimensional prototype; (3) he used Mattel personnel and other Mattel resources to
28 │ work on the Bratz project during his Mattel employment, including without

-15-

SUPPLEMENTAL INTERROGATORY RESPONSES

EXHIBIT: J
PAGE: 175

1  limitation by (a) obtaining information about a Mattel hair vendor, which Bryant
2  then contacted for his own and MGA's benefit and which Bryant told he was
3  working with MGA; and (b) identifying others who Bryant knew as a consequence
4  of his Mattel employment to work on the project and enlisting them to work on the
5  Bratz project during the term of his Mattel employment; (4) he worked on what
6  Bryant characterized as a "test project" to aid and assist MGA and benefit himself,
7  at Mattel's expense, during the term of his Mattel employment;  (5) he entered into
8  his agreement with MGA during the term of his Mattel employment and used
9  Mattel resources in connection with the negotiation and execution of that
10  agreement; and (6) he received monetary payments and other benefits from MGA
11  during the term of his Mattel employment, and both Bryant and MGA benefitted
12  further as a consequence of his aid and assistance to and work with MGA during
13  the term of his Mattel employment.

14          Second, MGA and those associated with MGA have made statements,
15  including under oath, that confirm Bryant assisted and worked with MGA during
16  his Mattel employment.  Among his many statements to the press, for example,
17  MGA's CEO, Isaac Larian, told the *Wall Street Journal* that "he chose
18  Mr. Bryant's idea for the Bratz over several others after holding a sort of
19  fashion-doll design contest in late 1999"--a time when Bryant was employed by
20  Mattel.  In a sworn affidavit filed in a Hong Kong lawsuit brought by MGA,
21  Isaac Larian stated that "[t]he Bratz dolls were first exhibited in the USA in
22  November 2000," which further confirms that Bryant was working with and aiding
23  MGA on the project prior to his departure from Mattel on or about October 20,
24  2000.  Additionally, Isaac Larian has been sued for fraud and other claims by his
25  brother and one-time partner in MGA, Farhad Larian.  Farhad Larian's verified
26  Complaint alleges, among other things, that "in or about late 1999 and early 2000,
27  Isaac became aware of a potential new product line that had tremendous potential
28  for [MGA].  The new product line involved the 'Bratz' dolls and related products."

-16-
                                                   SUPPLEMENTAL INTERROGATORY RESPONSES

1  The verified Complaint further alleges: "In or about early 2000, Isaac called a

2  meeting to discuss the new Bratz product line with selected individuals" at MGA,

3  and took affirmative steps "to conceal" from Farhad Larian MGA's "plans for the

4  Bratz line" in February, March and May 2000. Bryant was working for Mattel

5  during each of these time periods.

6        Third, although discovery is still in its early stages, other witnesses

7  who have testified thus far in the case have provided testimony revealing that

8  Bryant aided and worked with MGA during his Mattel employment. Bryant

9  testified that he pitched the Bratz project to MGA in late August and September

10 2000. Bryant also testified that he had no contact with MGA until August 2000

11 and had never even heard of MGA before July 2000. Bryant claims that he

12 discussed the Bratz project with Anna Rhee--and introduced Ms. Rhee to MGA--

13 only after he stopped working for Mattel in late October 2000. After Bryant

14 introduced Ms. Rhee to MGA (which is undisputed--Bryant and Ms. Rhee agree

15 that she had no involvement with MGA prior to Bryant's introduction), Ms. Rhee

16 painted Bratz doll heads.

17        During the six months from August 2004 (when MGA made its initial

18 document production in this case) to January 2005, MGA produced a mere eight

19 pages of payment records relating to work that Ms. Rhee performed on Bryant-

20 related projects in the year 2000. These pages relate exclusively to work that

21 Ms. Rhee did on Bryant-related projects in December 2000, after Bryant left

22 Mattel, which would be consistent with Bryant's testimony.

23        After Bryant testified and after MGA made its initial production of

24 Anna Rhee documents, however, Anna Rhee produced documents pursuant to

25 subpoena in mid-January 2005. Included in Ms. Rhee's production were

26 approximately twenty invoices for work that she performed on Bryant-related

27 MGA projects in the year 2000, none of which MGA or Bryant had disclosed.

28 These invoices also revealed that Ms. Rhee performed work with Bryant and

-17-

1  MGA on at least seven separate occasions before Bryant's departure from Mattel--
2  including one invoice that dates to June 12, 2000, when Bryant purportedly had
3  never even heard of MGA.

4         After Ms. Rhee produced these documents, MGA then made a
5  supplemental production of certain internal documents relating to work performed
6  by Ms. Rhee during the June-October 2000 time period. These belatedly produced
7  MGA records purport to show that Ms. Rhee's work during that time period
8  related to a project known as "Angel" and/or "Prayer Angels."

9         At her deposition, however, Ms. Rhee testified that her work during
10  that time period was for Bratz and that "Angel" was MGA's and Bryant's code
11  name for Bratz. Thus, Ms. Rhee testified that her June 12, 2000 work was for face
12  painting on two Bratz doll heads; her late August 2000 work was for face painting
13  on four Bratz doll heads; and her work as of September 8, 2000 was for face
14  painting on additional Bratz doll heads. All of these are times when Bryant was
15  employed by Mattel.

16         At the deposition, defendants' counsel repeatedly tried--and failed--to
17  persuade Ms. Rhee to agree with their claim that "Angel" and/or "Prayer Angels"
18  was a different doll project than Bratz and that she worked on that project in the
19  June 2000, not Bratz. For example, defendants' counsel asked whether the
20  June 12, 2000 invoice--which Ms. Rhee had testified was for work on Bratz--
21  "could" instead relate to the doll "that ultimately came to market as Prayer
22  Angels." Ms. Rhee responded: "There's no way."

23         Ms. Rhee further testified that during a time when Bryant was
24  necessarily employed by Mattel, he had contacted her about the "big" and "secret"
25  project that he was working on. Bryant instructed Anna Rhee not to tell anyone
26  about the "secret" project, including Mattel employees. He discussed this project
27  with Ms. Rhee while she was visiting the Mattel Design Center where Bryant was
28

07209/655298.1                          -18-

EXHIBIT: J
PAGE: 178

1  working and informed her that he had engaged a "corporate attorney" to help him

2  with the "secret" project.

3         Fourth, while working for Mattel, Bryant concealed and affirmatively

4  misrepresented his aid and assistance to MGA in other ways. In particular, despite

5  his obligations to do so, Bryant failed to notify his Mattel supervisor of his

6  conflict of interest in working with MGA. Prior to and upon his departure, Bryant

7  further misrepresented to Mattel, including to Ivy Ross and Sandy Yamamoto, his

8  future plans by stating that he was not going to work with a competitor.

9         Finally, both Bryant and MGA have spoliated evidence relating to the

10  timing and extent of Bryant's aid to and work with MGA during his Mattel

11  employment. One example was revealed by the testimony of Victoria O'Connor, a

12  former MGA executive. According to Ms. O'Connor, Bryant faxed a signed copy

13  of a Bryant/MGA contract to MGA from Mattel. Upon receipt, each page of the

14  contract included a fax header that read "Barbie Collectibles" and bore the number

15  of the Mattel fax machine that it came from, revealing that it came from Mattel's

16  Designer Center where Bryant worked. When Ms. O'Connor brought this to the

17  attention of Isaac Larian, Mr. Larian instructed her to "white-out" the fax header

18  information on all pages of the contract and send the contract, as altered, to an

19  outside MGA attorney. At Mr. Larian's direction, Ms. O'Connor proceeded to

20  alter each page of the contract in order to conceal, as Ms. O'Connor testified, the

21  fact that Bryant "was still employed at Mattel at the time the contract [between

22  MGA and Bryant] was executed."

23         As further examples, Bryant has produced documents that appear to

24  have been altered to conceal information. These include, most notably, a fax of

25  Bratz drawings that has a fax header date of April 10, 2000--six months before

26  Bryant left Mattel's employ. Although the fax header information on the page

27  produced by Bryant states that it was the third page of a fax transmission, neither

28  preceding nor subsequent pages, nor any cover sheet, has been produced. Further,

07209/655298.1

-19-
SUPPLEMENTAL INTERROGATORY RESPONSES

EXHIBIT: J
PAGE: 179

1   even though the fax header on the produced page has fields for both the sender's
2   name and the sender's telephone number, neither the name of the sender nor the
3   sender's telephone number appears in the fax header.

4   Both MGA and Bryant also have failed and refused to provide Mattel
5   with access to original documents, despite the fact that one or both apparently
6   have already performed destructive ink chemistry analyses on Bryant's original
7   drawings and despite their agreement to provide those originals. Bryant's counsel
8   agreed to produce all of Bryant's original Bratz drawings at his deposition.
9   Despite these promises, Bryant brought only a few of his original drawings to the
10  deposition. Some of these drawings--including the originals of documents
11  BRYANT 192 and BRYANT 210--had holes in them, indicating that samples had
12  been extracted for ink chemical dating analysis. Bryant testified that his drawings
13  did not have holes in them when he turned them over to defendants' counsel and
14  that he was unaware of the origin of the holes. Appearances notwithstanding,
15  defendants' counsel has denied that anyone engaged in destructive sampling or
16  analysis of Bryant's original drawings. Defendants have not, however, explained
17  the origin of the holes in the original drawings.

18  Ramona Prince, a third-party witness, has raised other questions
19  about the integrity of Bryant's documents. According to both Ms. Prince and
20  Bryant, Bryant showed Ms. Prince his Bratz drawings in August 1999, when he
21  was employed by Mattel. Ms. Prince, however, has testified that markings which
22  now appear on the copy of a Bratz drawing produced by defendants did *not* appear
23  on the original drawing that Bryant showed her in 1999. This conflicts with
24  Bryant's testimony about the drawing. He claims that he created the drawing in its
25  entirety in August 1998, before he showed it to Ms. Prince.

26  By way of further answer, pursuant to Federal Rule of Civil
27  Procedure 33(d), Mattel will produce responsive, non-privileged documents and
28

-20-

SUPPLEMENTAL INTERROGATORY RESPONSES

EXHIBIT: J
PAGE: 180

1 | tangible items in its possession, custody or control from which the answer to this
2 | Interrogatory may be derived.

3 |    By way of further answer, Mattel currently has not yet received
4 | discovery from defendant or MGA, has not yet obtained any deposition testimony
5 | and has not yet had the opportunity to obtain information from other third parties
6 | who may possess relevant information. Mattel therefore reserves the right to
7 | supplement this response after Mattel receives more information about defendant's
8 | activities. By way of further answer, this topic may be the subject of expert
9 | testimony, which will be disclosed in the manner, and at the time, required for
10 | expert disclosures pursuant to the Federal and Local Rules.

11 |

12 | **INTERROGATORY NO. 3:**

13 |    State all facts supporting YOUR contention, if YOU so contend, that
14 | Bryant for his own gain, or the gain of any third party, at any time converted, used,
15 | sold, assigned or otherwise transferred any MATTEL work product owned at any
16 | time by MATTEL or created by any MATTEL employee other than Bryant, or by
17 | any independent contractor, during the time that such PERSON was working for
18 | MATTEL.

19 |

20 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

21 |    In addition to the general objections stated above, Mattel specifically
22 | objects to this Interrogatory on the grounds that it calls for the disclosure of
23 | information subject to the attorney-client privilege, the attorney work-product
24 | doctrine and other applicable privileges. Mattel further objects to this
25 | Interrogatory on the ground that it calls for the disclosure of confidential and/or
26 | proprietary information, which Mattel will disclose only subject to and in reliance
27 | upon a suitable protective order. Mattel further objects to this Interrogatory as
28 | unreasonably burdensome and overbroad in that it purports to require Mattel to

SUPPLEMENTAL INTERROGATORY RESPONSES

EXHIBIT: J
PAGE: 181

1   RESPONSE TO INTERROGATORY NO. 16:

2           In addition to the general objections stated above, Mattel objects to

3   this Interrogatory as overbroad and unduly burdensome on the grounds that it

4   seeks the identification of all employees or independent contractors who worked

5   with Bryant on "any project he worked on for MATTEL" for a period of several

6   years. For the same reasons, Mattel further objects to this Interrogatory on the

7   grounds that it seeks information that is not relevant to this action or reasonably

8   calculated to lead to the discovery of admissible evidence. Mattel further objects

9   to this Interrogatory on the grounds that this information is equally available to

10  defendant, as defendant necessarily possesses superior firsthand knowledge of the

11  people with whom he personally interacted at Mattel.

12          Subject to and without waiving the foregoing general and specific

13  objections, Mattel responds as follows:

14          Please see response to Interrogatory No. 15, which identifies Mattel

15  personnel who directly supervised Carter Bryant during his employment at Mattel.

16          By way of further answer, pursuant to Federal Rule of Civil

17  Procedure 33(d), Mattel will produce responsive, non-privileged documents and

18  tangible items in its possession, custody or control from which the answer to this

19  Interrogatory may be derived.

20

21  DATED: May 16, 2005

22                                  QUINN EMANUEL URQUHART
                                    OLIVER & HEDGES, LLP
23

24                                  By _____
                                       Jon D. Corey
25                                     Attorneys for Plaintiff
                                       Mattel, Inc.
26

27

28

07209/655298.1                              -73-
                        Mattel, Inc.'s Supplemental Responses to Bryant's First Set of Interrogatories

EXHIBIT: J
PAGE: 182

# EXHIBIT K
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT K
# TO DECLARATION OF
# JEAN PIERRE NOGUES

1
2
3
4
5
6
7
8

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:(213) 443-3000
Facsimile:(213) 443-3100

Attorneys for Plaintiff and Counter-defendant
Mattel, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware<br>corporation,<br><br>                    Defendant. | Case No. CV 04-09059 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-9059 and<br>Case No. CV 05-2727<br><br>MATTEL, INC.'S AMENDED AND<br>SUPPLEMENTAL RESPONSES TO<br>MGA ENTERTAINMENT, INC.'S<br>SECOND SET OF REQUESTS FOR<br>ADMISSION |

13
14
15
16
17
18
19
20
21
22
23

24  PROPOUNDING PARTY:     MGA ENTERTAINMENT, INC.

25  RESPONDING PARTY:      MATTEL, INC.

26  SET NUMBER:            TWO (2)

27
28

07209/2030035.1

AMENDED AND SUPPLEMENTAL RESPONSES TO MGA ENTERTAINMENT, INC.'S SECOND SET OF REQUESTS FOR ADMISSION

1          7.     Mattel objects to the Requests on the grounds that such discovery
2    from Mattel is overbroad, unduly burdensome, oppressive and not likely to the lead
3    to the discovery of admissible evidence in that Mattel's actions in relation to the
4    "Bratz" line of products are not at issue in this action and are irrelevant to the claims
5    and defenses in this suit. Rather, at issue are the actions of defendants and third
6    parties associated with defendants in connection with, among other things, the
7    design and development of Bratz during the term of his Mattel employment and/or
8    with defendant MGA, which is information known to and within the possession,
9    custody and control of defendants and their associated third parties, not Mattel,
10   including because defendants refuse to disclose it.

11         8.     Mattel objects to the Requests on the grounds that they seek
12   confidential, proprietary and trade secret information. Such information, to the
13   extent it is relevant to this action and either has been or will be produced, has been
14   and will be produced in reliance upon and pursuant to protective order.

15         9.     Mattel objects to the Requests on the grounds that they seek
16   confidential, proprietary and trade secret information that has no bearing on the
17   claims or defenses in this case.

18         10.    Mattel objects to the Requests on the grounds that they are
19   premature and seek to circumvent the expert disclosure provisions of the Federal
20   and Local Rules. Mattel has not yet computed or calculated its damages and has not
21   yet engaged any testifying expert to compute or calculate its damages or on any
22   other matter contained within the Requests that may be the subject of expert
23   testimony. Mattel will disclose such testimony in the manner, and at the time,
24   provided for by the Federal and Local Rules and the Court's Orders.

25         **Specific Objections And Responses To Requests For Admission**

26         Each of the following objections and responses to the Requests is
27   expressly made subject to the above Preliminary Statement and General Objections,

28

1  all of which are incorporated in each of the following objections and responses to
2  specific requests.

3

4  REQUEST FOR ADMISSION NO. 47:

5       Admit that BRYANT's work on BRATZ is intellectual property whose
6  conversion is one basis of YOUR damage requests.

7

8  RESPONSE TO REQUEST FOR ADMISSION NO. 47:

9       In addition to the foregoing general objections, which are incorporated
10  herein by reference, Mattel objects to this Request on the grounds that it is vague,
11  ambiguous and unintelligible.  In particular, the terms "Bratz" and "Bryant's work
12  on" in this context are vague and ambiguous.  Mattel further objects on the grounds
13  that the Request is vague, ambiguous and uncertain as to time.  Mattel further
14  objects on the ground that the issue to which this Request was directed, namely the
15  amount in controversy, has been resolved and the Request is therefore irrelevant.
16  Mattel further objects to this Request as compound and conjunctive.  Mattel further
17  objects to this Request on the grounds that it is undefined, oppressive, overbroad
18  and unduly burdensome in that it seeks an admission for each "image, character,
19  logo, doll, toy, accessory, product, packaging, or other thing or matter that is or has
20  ever been manufactured, marketed or sold by MGA, or others under license, as part
21  of a line of goods or merchandise commonly known as, or sold and marketed under
22  the 'Bratz' trademark or trade dress."  Mattel further objects to this Request as
23  unreasonably burdensome and premature in that the facts necessary to determine the
24  full nature and extent of Mattel's relief and damages from defendants' acts or
25  omissions are known by defendants and third parties associated with defendants, but
26  the facts are not known by Mattel at this juncture because of defendants' refusals to
27  produce basic discovery, including as to matters that are the subject of pending
28  motions to compel.

EXHIBIT: K
PAGE: 185

1          Subject to and without waiving the foregoing general and specific
2  objections, Mattel admits that Judge Manella determined in her March 4, 2005
3  Order Denying Plaintiff Mattel's Motion to Remand that "the rights to Bratz were
4  and are in controversy." Mattel further admits that Bryant worked on Bratz while he
5  was a Mattel employee and, as a result of that work, Mattel was damaged. Mattel
6  reserves the right to supplement or amend this response and further states that its
7  damages may be the subject of expert opinion, which will be disclosed at the time
8  and in the manner required by the Rules and Court Order.

9

10  REQUEST FOR ADMISSION NO. 49:

11          Admit that BRYANT's work on BRATZ INTELLECTUAL
12  PROPERTY is intellectual property whose conversion is one basis of YOUR
13  damage requests.

14

15  RESPONSE TO REQUEST FOR ADMISSION NO. 49:

16          In addition to the foregoing general objections, which are incorporated
17  herein by reference, Mattel objects to this Request on the grounds that it is vague,
18  ambiguous and unintelligible . In particular, the terms "Bratz Intellectual Property"
19  and "Bryant's work on" in this context are vague and ambiguous. Mattel further
20  objects on the grounds that it is vague, ambiguous and uncertain as to time. Mattel
21  further objects to this Request on the grounds that the issue which this Request was
22  directed, namely the amount in controversy, has been resolved, and the Request is
23  therefore irrelevant. Mattel further objects to this Request as compound and
24  conjunctive. Mattel further objects to this Request on the grounds that it is
25  undefined, oppressive, overbroad and unduly burdensome. Mattel further objects to
26  this Request as unreasonably burdensome and premature in that the facts necessary
27  to determine the full nature and extent of Mattel's relief and damages from
28  defendants' acts or omissions are known by defendants and third parties associated

EXHIBIT: K
PAGE: 186

1  with defendants, but the complete facts are not known by Mattel at this juncture
2  because of defendants' refusals to produce basic discovery, including as to matters
3  that are the subject of pending motions to compel.

4         Subject to and without waiving the foregoing general and specific
5  objections, Mattel admits that Judge Manella determined in her March 4, 2005
6  Order Denying Plaintiff Mattel's Motion to Remand that "the rights to Bratz were
7  and are in controversy." Mattel further admits that Bryant worked on Bratz
8  Intellectual Property, including specifically that which is the subject of VA 1-378-
9  648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653,
10  VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA
11  1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273, while
12  he was a Mattel employee, and as a result of that work, Mattel was damaged. Mattel
13  reserves the right to supplement or amend this response and further states that its
14  damages may be the subject of expert opinion, which will be disclosed at the time
15  and in the manner required by the Rules and Court Order.

16

17  REQUEST FOR ADMISSION NO. 51:

18         Admit that BRYANT's work on the BRATZ CONCEPT is intellectual
19  property whose conversion is one basis of YOUR damage requests.

20

21  RESPONSE TO REQUEST FOR ADMISSION NO. 51:

22         In addition to the foregoing general objections, which are incorporated
23  herein by reference, Mattel objects to this Request on the grounds that it is vague,
24  ambiguous and unintelligible. In particular, the terms "Bratz Concept" and
25  "Bryant's work on" in this context are vague and ambiguous. Mattel further objects
26  to the Request on the grounds that the Request is vague, ambiguous and uncertain as
27  to time. Specifically, the facts necessary to determine the whether "images,
28  drawings, pictures, sculpts, molds, prototypes and any other form of artwork" both

EXHIBIT: K
PAGE: 187

1   predate the "First Bratz Dolls" and are "'Bratz'-related" are known by defendants and
2   third parties associated with defendants, but are not known by Mattel at this
3   juncture. Mattel further objects to this Request as compound and conjunctive.
4   Mattel further objects on the grounds that the issue to which this Request was
5   directed, namely the amount in controversy, has been resolved and the Request is
6   therefore irrelevant. Mattel further objects to this Request on the grounds that it is
7   undefined, oppressive, overbroad and unduly burdensome. Mattel further objects to
8   this Request as unreasonably burdensome and premature in that the facts necessary
9   to determine the full nature and extent of Mattel's relief and damages from
10  defendants' acts or omissions are known by defendants and third parties associated
11  with defendants, but the complete facts are not known by Mattel at this juncture
12  because of defendants' refusals to produce basic discovery, including as to matters
13  that are the subject of pending motions to compel. Mattel further objects on the
14  ground that the Request is wholly duplicative of Request Nos. 67 through 146.

15          Subject to and without waiving the foregoing general and specific
16  objections, Mattel responds as follows:  MGA propounded a specific Request for
17  each document identified in the definition of "Bratz Concept." *See* Mattel's
18  Amended Responses to Request Nos. 67 through 106.

19

20  REQUEST FOR ADMISSION NO. 53:

21          Admit that BRYANT's work on the FIRST BRATZ DOLLS is
22  intellectual property whose conversion is one basis of YOUR damage requests.

23

24  RESPONSE TO REQUEST FOR ADMISSION NO. 53:

25          In addition to the foregoing general objections, which are incorporated
26  herein by reference, Mattel objects to this Request on the grounds that it is vague,
27  ambiguous and unintelligible. In particular, the terms "First Bratz Dolls" and
28  "Bryant's work on" in this context are vague and ambiguous. Mattel further objects

EXHIBIT:  K
PAGE:  188

1  on the ground that the Request is vague, ambiguous and uncertain as to time. Mattel

2  further objects on the ground that the issue to which this Request was directed,

3  namely the amount in controversy, has been resolved and the Request is therefore

4  irrelevant. Mattel further objects to this Request on the grounds that it is undefined,

5  oppressive, overbroad and unduly burdensome in that it seeks an admission for each

6  "image, character, logo, doll, toy, accessory, product, packaging, or other thing or

7  matter that is or has ever been manufactured, marketed or sold by MGA, or others

8  under license, as part of a line of goods or merchandise commonly known as, or sold

9  and marketed under the 'Bratz' trademark or trade dress" for eight different SKU

10  numbers. Mattel further objects to this Request as unreasonably burdensome and

11  premature in that the facts necessary to determine the full nature and extent of

12  Mattel's relief and damages from defendants' acts or omissions are known by

13  defendants and third parties associated with defendants, but the complete facts are

14  not known by Mattel at this juncture because of defendants' refusals to produce

15  basic discovery, including as to matters that are the subject of pending motions to

16  compel.

17           Subject to and without waiving the foregoing general and specific

18  objections, Mattel admits that Judge Manella determined in her March 4, 2005

19  Order Denying Plaintiff Mattel's Motion to Remand that "the rights to Bratz were

20  and are in controversy." Mattel further admits that Bryant worked on Bratz while he

21  was a Mattel employee and as a result of that work, Mattel was damaged. Mattel

22  reserves the right to supplement or amend this response and further states that its

23  damages may be the subject of expert opinion, which will be disclosed at the time

24  and in the manner required by the Rules and Court Order.

25

26  REQUEST FOR ADMISSION NO. 55:

27           Admit that BRYANT's work on BRATZ DOLLS is intellectual

28  property whose conversion is one basis of YOUR damage requests.

1 | goods or merchandise commonly known as, or sold and marketed under the 'Bratz'
2 | trademark or trade dress."

3 | Subject to and without waiving the foregoing general and specific
4 | objections, Mattel states that it is not asserting in this action claims for infringement
5 | of the Toon Teens copyright. Mattel further states that Bryant saw Toon Teens
6 | designs while he was a Mattel employee and that his exposure to those designs tends
7 | to establish that Bryant created Bratz while he was a Mattel employee.

8 |

9 | DATED:  January 5, 2006      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

10 |

11 |

12 | By _____
Michael T. Zeller
13 | Attorneys for Plaintiff and Counter-
defendant Mattel, Inc.

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

07209/2030035.1      60
AMENDED AND SUPPLEMENTAL RESPONSES TO MGA ENTERTAINMENT, INC.'S SECOND SET OF REQUESTS FOR ADMISSION

EXHIBIT: K
PAGE: 190

# EXHIBIT L

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT L

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER