1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    CRAIG A. TAGGART (SBN 239168)
4   craig.taggart@bingham.com
    600 Anton Boulevard, 18th Floor
5   Costa Mesa, CA 92626-1924
    Telephone: 714.830.0600
6   Facsimile: 714.830.0700

7
    Attorneys for Non-parties
8   Omni 808 Investors, LLC, Omninet Capital,
    LLC and Vision Capital, LLC

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-2727 |
| v. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| Mattel, Inc., a Delaware Corporation, | |
| Defendant. | **DECLARATION OF PETER N. VILLAR IN OPPOSITION TO MATTEL, INC.'S MOTION FOR RECONSIDERATION OF PHASE II DISCOVERY MASTER ORDER NO. 3** |
| AND CONSOLIDATED ACTIONS. | Date: May 5, 2009<br>Time: 10:00 a.m.<br>Place: Arent Fox LLP<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA 90013 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A/73014261.1

1  I, Peter N. Villar, hereby declare as follows:

2      1.      I am a partner at the law firm of Bingham McCutchen LLP and

3  counsel of record for non-parties Omni 808 Investors, LLC, Omninet Capital, LLC

4  and Vision Capital, LLC (the "Non-party Financing Entities"). I make this

5  declaration in support of the Non-party Financing Entities' Opposition to Mattel,

6  Inc.'s Motion for Reconsideration of Phase II Discovery Master Order No. 3. I

7  have personal knowledge of the matters stated herein, and if called upon could and

8  would testify competently to them.

9      2.      On March 13, 2009, Mattel's counsel, Jon Corey, faxed me a letter

10  indicating that Mattel intended to file a motion for reconsideration of Phase II

11  Discovery Master Order No. 3. This was three days <u>before</u> Mattel claims to have

12  received the documents produced by Wachovia on March 16. A true and correct

13  copy of Mr. Corey's letter is attached hereto as Exhibit A.

14      3.      Mattel attaches 50 exhibits to the declaration of Jon Corey in support

15  of its Motion for Reconsideration. However, Mattel fails to attach the actual

16  Master Assignment and Exchange Agreement entered into by Omni 808 and

17  Wachovia on or about September 3, 2008. A true and correct copy of the signed

18  Agreement is attached hereto as Exhibit B.

19      I declare under penalty of perjury under the laws of the United States that

20  the foregoing is true and correct. Executed on April 17, 2009.



                                                    _____
23                                                  Peter N. Villar

-1-

# EXHIBIT A

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| | | |
|---|---|---|
| NEW YORK<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100 | LOS ANGELES<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100 | SAN FRANCISCO<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700 |
| SILICON VALLEY<br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100 | CHICAGO<br>250 South Wacker Drive, Suite 230<br>Chicago, IL 60606<br>(312) 463-2981<br>Facsimile: (312) 463-2982 | LONDON<br>16 Old Bailey<br>London EC4M 7EG United Kingdom<br>+44(0) 20 7653 2000<br>Facsimile: +44(0) 20 7653 2100 | TOKYO<br>Akasaka Twin Tower Main Building, 6th Floor<br>17-22 Akasaka 2-Chome<br>Minato-ku, Tokyo 107-0052 Japan<br>+81 3 5561-1711<br>Facsimile: +81 3 5561-1712 |

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:** March 13, 2009          **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Thomas Nolan, Esq.<br>Jason Russell, Esq.<br>*Skadden, Arps, Slate, Meagher & Flom LLP* | (213) 687-5000 | (213) 687-5600 |
| Patricia Glaser, Esq.<br>Amman Khan, Esq.<br>*Glaser, Weil, Fink, Jacobs & Shapiro, LLP* | (310) 553-3000 | (310) 556-2920 |
| Russell J. Frackman, Esq.<br>*Mitchell, Silberberg & Knupp, LLP* | (310) 312-2000 | (310) 312-3100 |
| Todd E. Gordinier, Esq.<br>Peter Villar, Esq.<br>*Bingham McCutchen LLP* | (714) 830-0622 | (714) 830-0717 |
| Jeffrey B. Valle, Esq.<br>*Valle & Associates* | (310) 476-0300 | (310) 476-0333 |

**FROM:**     Jon D. Corey

**RE:**     Mattel, Inc. v. MGA Entertainment, et al.

**MESSAGE: PLEASE SEE THE ATTACHED CORRESPONDENCE.**

07209/2835593.1

| CLIENT # | 07209 | ROUTE/<br>RETURN TO: Suzanne Johnson -10 | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|
| OPERATOR: | | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE          Exhibit A Page 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

March 13, 2009

### VIA FACSIMILE AND U.S. MAIL

Todd E. Gordinier, Esq.                    Thomas Nolan, Esq.
Peter Villar, Esq.                         Jason Russell, Esq.
Bingham McCutchen LLP                      Skadden, Arps, Slate, Meagher & Flom LLP
600 Anton Boulevard, 18th Floor            300 South Grand Avenue, Suite 3400
Costa Mesa, CA 92626-1924                  Los Angeles, CA 90071

Patricia L. Glaser, Esq.                   Russell J. Frackman, Esq.
Amman Khan, Esq.                           Mitchell, Silberberg, & Knupp, LLP
Glaser, Weil, Fink, Jacobs, & Shapiro, LLP 11377 West Olympic Boulevard
10250 Constellation Boulevard, 19th Floor  Los Angeles, CA 90064
Los Angeles, CA 90067

Jeffrey B. Valle, Esq.
Valle & Associates
11911 San Vicente Boulevard Suite 324
Los Angeles, CA 90049

Re:    Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

I write pursuant to paragraph 5 of the Discovery Master Stipulation to request a meeting of
counsel regarding Mattel's contemplated motion for reconsideration of the Discovery Master's
Order No. 3. Specifically, Mattel will ask Discovery Master O'Brien to reconsider his Order as it
pertains to Omni 808, OmniNet and Vision Capital (the "Entities").

As the Discovery Master's Order expressly recognizes, Isaac Larian's and MGA's net worth and
financial condition are unquestionably at issue in Phase 2 of this case. Whether or not MGA is
in fact under an obligation to pay back any of the more than $300 million in debt that it claims to
owe to the Entities—and if so, how much—is a question that goes directly to the net worth of
both MGA and Isaac Larian, and is thus squarely within the scope of discovery. It is of

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

07975/2833685.1          SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

particular importance given the evidence suggesting that the Entities' acquisition of this debt was
a sham or related-party transaction.

Given MGA's long history of misrepresentations and obstruction—including MGA's fraudulent
concealment of its wrongdoing as found by the Phase 1 jury and Mr. Larian's perjury at trial as
found by the Court—Mattel is not required to seek this discovery from MGA in the first
instance. See, e.g., Viacom Intern., Inc. v. YouTube, Inc., 2008 WL 3876142, at *3 (N.D. Cal.
2008) ("[T]here is no general rule that plaintiffs cannot seek nonparty discovery of documents
likely to be in defendants' possession."). Nor could it. As the Entities' counsel admitted at the
March 4, 2009 hearing, the Financing Entities possess relevant documents and information
which MGA does not. See March 4, 2009 Hearing Tr. at 55:22-56:2 ("Now, it's true MGA was
not a party directly to the transaction between Omni 808 and Wachovia. They had to sign some
guarantees, I think, or some indemnifications, I'm not sure exactly, I'm not a corporate guy. But
that deal was negotiated between Omni 808 and Wachovia.").

Accordingly, the Discovery Master's Order No. 3, which only requires Omni 808 (and not
OmniNet or Vision Capital) to produce documents showing (1) the existence of any debt owed
by MGA to Omni 808 and (2) communications between MGA and Omni 808 regarding such
debt, is unduly limited, and Mattel will ask the Discovery Master to reconsider it.

Please let me know when you are available to meet and confer in advance of a Mattel motion for
reconsideration of the Discovery Master's Order.

Additionally, please confirm in writing by the close of business on Monday, March 16, 2009 that
your respective clients continue to preserve all documents that could conceivably fall within the
scope of the requests pending final resolution of the disputes arising from Mattel's subpoenas.

I look forward to hearing from you.

Best regards,

Jon Corey

Exhibit A Page 4

# EXHIBIT B

EXECUTION VERSION

## MASTER ASSIGNMENT AND EXCHANGE AGREEMENT

THIS MASTER ASSIGNMENT AND EXCHANGE AGREEMENT (this "Agreement"), dated as of September 3, 2008, is by and among OMNI 808 Investors LLC, a California limited liability company, as Assignee ("Assignee"), each of the Assignors listed on the signature pages hereof (each an "Assignor" and collectively, "Assignors"), MGA Entertainment Inc., a California corporation ("Borrower"), MGA Entertainment (Mexico), Inc., a California corporation ("MGA Mexico") and The Little Tikes Company, an Ohio corporation ("Little Tikes" and, collectively with MGA Mexico, the "Subsidiary Guarantors"), and Wachovia Bank, National Association ("Wachovia"), as Agent under the Credit Agreement referred to below (in such capacity, "Agent"). It is understood and agreed that the rights and obligations of the Assignors hereunder are several and not joint. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Credit Agreement referred to below; unless otherwise specified, references to the Credit Agreement mean the Credit Agreement as in effect on the date hereof.

### RECITALS:

A.      Borrower, Agent and Assignors are currently parties to that certain Credit Agreement, dated as of October 27, 2006, as amended (the "Credit Agreement"), pursuant to which Assignors have made certain credit facilities available to Borrower and Borrower has issued certain notes evidencing indebtedness thereunder (the "Existing Notes").

B.      Each Assignor desires to sell, assign and delegate, for value, its respective Assigned Interest (as defined below) to the Assignee.

C.      Assignee desires to purchase and assume, for value, the Assigned Interests, and to receive New Assignee Notes (as defined below) from Borrower evidencing the Assigned Interests.

D.      Each Assignor desires to cancel its Existing Notes and, to the extent not already terminated, terminate its respective Commitments (as defined in the Credit Agreement) under the Credit Agreement in exchange for (a) a new senior promissory note (including any replacement thereof, each a "Senior Promissory Note" and collectively, the "Senior Promissory Notes") to be issued by Borrower separate and apart from the Credit Agreement in an original principal amount equal to such Assignor's ratable portion of the aggregate principal amount of the Loans set forth on Schedule II-B attached hereto (collectively, the "Exchanged Loans", and as to each Assignor its ratable portion being its "Exchanged Loan"), and (b) other good and valuable consideration pursuant to the Exchange Transaction Documents.

E.      Assignee desires to receive New Assignee Notes evidencing the Assigned Interests, which New Assignee Notes will be subordinate to the Senior Promissory Notes pursuant to and in accordance with the terms of the Guarantee and Subordination Agreement (as defined below) by and among Assignee, Assignors, Borrower and each Subsidiary Guarantor.

F.      Wachovia desires to resign as Agent and Assignee desires to accept appointment as successor agent under the Credit Agreement, each pursuant to Section 11.9 thereof.

A/72635657.7/3001762-0000334318

Exhibit B Page 5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010394

NOW THEREFORE, in consideration of the mutual promises set forth herein and other valuable consideration, the receipt of which are hereby acknowledged, each of the parties hereto hereby agrees as follows:

SECTION I.    ASSIGNMENT.   On the Effective Date, the following events shall occur contemporaneously:

1.1    Assignment of Assigned Interests.   Each Assignor hereby irrevocably sells, transfers, assigns, grants and conveys to Assignee, and Assignee hereby irrevocably purchases and assumes from the respective Assignors, as of the Effective Date, all of the respective Assignors' rights and obligations in the Assigned Interests. For purposes of this Agreement:

"Assigned Interests" means each Assignor's right, title, and interest in, to and under the Loans identified on Schedule II-A attached hereto (including without limitation any letters of credit, guarantees, and swingline loans included in such facilities), but does not include any Retained Interests or Rights and Claims.

"Retained Interests" means (a) the Agent's and each Assignor's right, title, and interest in, to and under (i) any claims (including "claims" as defined in Bankruptcy Code §101(5)), suits, causes of action or any other right of the Agent or such Assignor, whether known or unknown (including contract claims, tort claims, malpractice claims, and claims under any law governing the purchase and sale of, or indentures for, securities), against Agent, or any Assignor, or any attorney, accountant, financial advisor or other entity engaged by or otherwise providing services to our on behalf of Agent or any Assignor arising under or in connection with the Credit Agreement or the transactions related thereto or contemplated thereby, in each case related to events or circumstances occurring or arising prior to the Effective Date, (ii) any claim of the Agent or such Assignor (a "Reimbursement Claim") arising in connection with the return, disgorgement or reimbursement by the Agent or such Assignor to Borrower, or any other entity, of all or any portion of any payment or transfer received by the Agent or such Assignor on account of the Assigned Interests prior to the Effective Date, including any claims arising under Bankruptcy Code §502(h), (iii) the Exchanged Loans identified on Schedule II-B attached hereto, (iv) any reports, memoranda or other work product of any kind prepared by any attorney or financial or other advisor to Agent or any Assignor before or after the Effective Date, and (v) Obligations with respect to Derivative Contracts and Banking Service Obligations (which through the Effective Date shall, in each case, be satisfied by payment made by Borrower on the Effective Date in an amount not to exceed $-0-), and (b) each Assignor's obligations under, and Agent's right, title, and interest in, to and under, Article 11 and Sections 12.2 and 12.9 of the Credit Agreement and any other provision benefiting Agent, with respect to any actions taken or omitted to be taken by Agent, its sub-agents and their respective Related Parties while Wachovia was acting as Agent under the Loan Documents.

In addition, and without limitation of the foregoing, Agent and each Assignor shall retain the following (the "Rights and Claims"): (1) an undivided interest in any claim the Agent or such Assignor may have against Borrower or any of its Affiliates or Subsidiaries pursuant to the indemnities under any provision of the Loan Documents, including, without limitation, Sections 3.12, 4.1, 4.4, 4.10, 11.8, 12.2, 12.4 and 12.9 of the Credit Agreement, Section 20 of the Security Agreement and Section 12 of the Pledge Agreement, relating to events or circumstances

2

A/72635657.7/3001762-0000934318

Exhibit B Page 6

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010395

occurring or arising prior to the Effective Date, and (2) any other right, remedy or claim that the Agent or such Assignor may have pursuant to Sections 11.9, 12.5 and 12.10 of the Credit Agreement or any other provision of any Loan Document that is intended to survive for the benefit of an assignor of Loans or a retiring Agent.

1.2     **Limited Recourse Nature of Assignment.** Each such sale and assignment is without recourse to any Assignor (other than with respect to the breach of any representation and warranty of any such Assignor contained herein) and, except as expressly provided in this Agreement, without representation or warranty by any Assignor.

1.3     **Each Sale and Assignment is an Assignment under Credit Agreement.** Borrower acknowledges and agrees that each such sale and assignment shall be considered an assignment pursuant to Section 12.5 of the Credit Agreement.

1.4     **Payments Received by Agent or Assignors.** Subject to the terms of Section 2 below, all payments of principal and interest, any late charges, prepayment fees, premiums, commitment fees, out-of-pocket expenses, professional fees and expenses and all other sums paid and received by Agent or any Assignor prior to the Effective Date shall be the property of the Agent and such Assignor, as applicable, under the terms of the Loan Documents.

1.5     **Payments Received by Assignee.** Subject to the provisions of the Guarantee and Subordination Agreement, all payments of principal and interest, any late charges, prepayment fees, premiums, commitment fees, out-of-pocket expenses, professional fees and expenses and all or other sums paid and received on and after the Effective Date by Assignee pursuant to the Loan Documents shall be the property of Assignee, and any such sums actually received by Agent or Assignor on or after the Effective Date (other than the Purchase Price hereunder) shall be held by Agent or such Assignor in trust for Assignee and shall be promptly remitted (without interest thereon) to Assignee in the form received by Agent or such Assignor, except that in the case of any such payment or credit received by Agent or such Assignor in the form of a check, draft or other negotiable instrument paid to the order of Agent or such Assignor, Agent or such Assignor shall endorse such check, draft or other instrument to Assignee, without recourse, representation or warranty.

1.6     **Subrogation for Claims.** To the extent that Borrower or any other person enforces any claim for return, disgorgement or reimbursement against any Assignor for all or any portion of any payment or transfer received by such Assignor on account of the Assigned Interests prior to the Effective Date and receives payment or satisfaction from such Assignor in respect thereof, the parties agree that, to the extent permitted by law and without the need for further action on the part of any party, such Assignor shall be subrogated to the rights of Assignee against any other person, including Borrower, with respect to such claim (including the right to assert any Reimbursement Claims).

1.7     **Payment of Purchase Price.** The consummation of the assignment transaction contemplated hereby shall be effected at a closing (the "Closing") which is to occur on the Effective Date, at the offices of Assignee's special counsel, Bingham McCutchen LLP, at Three Embarcadero Center, San Francisco, California 94111, or at such other location upon which the Parties may agree. The aggregate consideration to be paid for the Assigned Interests is

3

Exhibit B Page 7

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010396

$109,723,845.00 (the "Purchase Price").    Upon the Effective Date, Assignee shall (a) pay $104,723,845.00 to the Agent, for the benefit of each Assignor in accordance with its respective Assigned Interest, by wire transfer of immediately available funds to an account designated in writing by Agent and (b) order Agent to release the $5,000,000 Deposit as more particularly described in that certain Letter of Intent dated as of August 18, 2008 by and among Assignee, Agent and each of the Assignors signatory thereto (the "Letter of Intent"), which Deposit shall immediately be applied to the payment of the balance of the Purchase Price.

1.7.1   Each Assignor shall deliver to Borrower for cancellation each Existing Note (or if lost, destroyed or otherwise missing, an affidavit of lost note) evidencing the Loans outstanding as of the Effective Date and Borrower shall deliver to each Assignor a Senior Promissory Note substantially in the form of Exhibit A attached hereto, which Senior Promissory Note shall be (a) unsecured and (b) issued (i) in an aggregate principal amount equal to such Assignor's Exchanged Loan set forth on Schedule II-B attached hereto and (ii) separate and apart from the credit facilities set forth in the Credit Agreement.

1.7.2   Upon delivery of each Senior Promissory Note, (a) each Existing Note shall be cancelled, (b) each Assignor shall be deemed to have consented and agreed that such Assignor's Exchanged Loan shall cease to be an Obligation outstanding and owing under or otherwise evidenced by the Credit Agreement and the Loans Documents and instead shall be exchanged for, and treated as, as a separate and independent obligation of Borrower payable in accordance with the terms of such Senior Promissory Note and the applicable Exchange Transaction Documents, (c) to the extent not already terminated, the respective Commitment of such Assignor under the Credit Agreement shall automatically be terminated, (d) each Assignor shall no longer be a Lender under the Credit Agreement and (e) all of such Assignor's rights, remedies, powers, privileges and interests in, to or under the Credit Agreement and the other Loan Documents and any Liens and security interests on the Collateral shall automatically and without further action terminate and be released as a result of the assignment and other transactions contemplated hereby, other than such Assignor's Retained Interests and Rights and Claims.

1.7.3   Wachovia shall be deemed to have resigned as Agent and Assignee shall be deemed to have been appointed as successor Agent (in such capacity, the "Successor Agent"), each pursuant to Section 11.9 of the Credit Agreement, and Wachovia, in its capacity as Agent, and its sub-agents and their respective Related Parties shall each continue to be a beneficiary of the provisions of Article 11 and Sections 12.2 and 12.9 of the Credit Agreement in respect of any actions taken or omitted to be taken by any of them while Wachovia was acting as Agent under the Loan Documents, including, without limitation, any actions taken or omitted to be taken pursuant to any fact or circumstance described in the recitals to the Release Agreement (as defined below) or the Indemnity (as defined below) and any Claims (as defined in the Release Agreement) or Indemnified Costs (as defined in the Indemnity).

1.7.4   Wachovia and each of the New Lenders shall enter into an agency agreement (the "New Agency Agreement") pursuant to which Wachovia will serve as agent (the "Senior Promissory Note Agent") for the Assignors in connection with the Senior Promissory Notes.

4

A/72635657.7/3001762-0000334318

Exhibit B Page 8

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010397

1.7.5  Assignee, Agent on behalf and for the benefit of the New Lenders, and Borrower and each Subsidiary Guarantor shall execute and deliver the Guarantee and Subordination Agreement (in the form previously agreed upon by the parties) dated as of the Effective Date (the "Guarantee and Subordination Agreement").

1.7.6  Mr. Isaac Larian shall execute and deliver the Indemnity in the form previously agreed upon by the parties) dated as of the Effective Date (the "Indemnity").

1.7.7  Borrower, each of the Subsidiary Guarantors, Mr. Isaac Larian, each other stockholder of Borrower listed on Schedule IV hereto, Agent and each Assignor shall execute and deliver the Release Agreement in the form previously agreed upon by the parties) dated as of the Effective Date (the "Release Agreement").

1.8  **Defined Terms.**  The transactions above are collectively referred to herein as the "Transactions". The Senior Promissory Notes, the New Agency Agreement, the Guarantee and Subordination Agreement, the Indemnity, the Release Agreement and each of the agreements, instruments, releases, indemnities and other documents executed in connection therewith are collectively referred to herein as the "Exchange Transaction Documents".

**SECTION 2.    RETURN OF PROCEEDS OF REMEDIES.**  On the Effective Date, Agent will pay to Borrower and to Little Tikes, in each case, an amount (the "Proceeds of Remedies") equal to (a) the aggregate proceeds received by Agent through the Effective Date as a result of the exercise of remedies under the Loan Documents (subject to reasonable confirmation by Borrower and Assignee of the amount thereof), minus, in the case of Borrower, (b) the sum of (i) accrued interest, fees, charges and reasonable professional expenses through the Effective Date plus (ii) a holdback of $100,000 (the "Holdback") to be used to pay the reasonable fees and expenses of professionals after the Effective Date. Any part of the holdback not expended within six months following the Effective Date shall be promptly returned to Borrower.

**SECTION 3.    FURTHER ASSURANCES.**  Following the Effective Date, Borrower, each of the other Loan Parties, Assignors, Assignee, Agent and Senior Promissory Note Agent shall (at Assignee's expense, in the case of Assignors, Agent and the Senior Promissory Note Agent, except that fees, expenses and costs of Agent's counsel in connection therewith shall be reimbursed from the Holdback so long as the Holdback has not been depleted or otherwise returned to Borrower), execute and deliver to the other parties hereto all such documents as any other party hereto may reasonably deem necessary from time to time, to (a) effect the assignment and transfer of the Assigned Interests in accordance with the terms of this Agreement and (b) continue, in favor of Successor Agent, for the benefit of Assignee, the perfection and priority of the security interests of Agent, for the benefit of Assignors, and of each Assignor with respect to the Collateral, the Loan Documents and the Assigned Interests, including, without limitation, any and all (i) authorizations to file assignments of the financing statements with respect to the Assigned Interests on Form UCC-3, (ii) assignments of loan documents, (iii) assignments of security instruments and (iv) assignments, powers of attorney or such other documents as shall be reasonably necessary with respect to titled collateral.

5

Exhibit B Page 9

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010398

**SECTION 4.   CONDITIONS TO EFFECTIVENESS.**   This Agreement shall become effective on the date that each of the following conditions shall have been satisfied (the "Effective Date"):

**4.1   Receipt of Documents by Assignee.**   Assignee and Agent (on behalf of Assignors) shall have received each of the following, each in form and substance reasonably satisfactory to Assignee and Agent:

(a)   duly executed counterparts of this Agreement, signed by each of the parties hereto;

(b)   duly executed originals of a Revolving Note, Swingline Note and Alternate Currency Note (collectively, the "New Assignee Notes"), substantially in the forms specified in the Credit Agreement and with the subordination legends required under the Guarantee and Subordination Agreement;

(c)   duly executed counterparts of the Guarantee and Subordination Agreement, signed by each of the parties thereto;

(d)   duly executed counterparts of the Senior Promissory Notes issued by Borrower to the Assignors (and guaranteed by Assignee and the Subsidiary Guarantors) pursuant to this Agreement;

(e)   duly executed counterparts of the Release Agreement, signed by each of the parties thereto;

(f)   duly executed counterparts of the Indemnity, signed by each of the parties thereto;

(g)   a certificate from a Responsible Officer of Borrower to the effect that (i) the information set forth on Schedule II hereto is true and correct, and setting forth, after giving effect to the transactions contemplated hereunder, the outstanding principal balance of all Loans and the stated amount of any outstanding Letters of Credit, (ii) the Loan Documents listed on Schedule III hereto constitute all of the documents evidencing or securing the Loans, including, without limitation, each Note, each Guaranty and each Security Document in effect as of the Effective Date, and in each case any and all amendments thereto, (iii) the information set forth on Schedule IV is true and correct, and setting forth a complete list of owners as of the Effective Date of Borrower's outstanding capital stock or similar equity interests and setting forth the percentage of such stocks or similar equity interests held by each such party, (iv) except as disclosed on Schedule III hereto, the Loan Documents have not been amended, waived or modified in any material respect, and (v) Borrower is not a party to, or bound by, any document or agreement that could materially and adversely affect the Assigned Interests or Assignee's rights and remedies under this Agreement or the Loan Documents;

(h)   a certificate from Wachovia, in its capacity as Agent, (i) attaching true, complete and correct copies, and certifying the delivery, of letters rescinding and terminating all notices to account debtors regarding the direction of payment to Agent, and (ii) certifying that Wells Fargo Bank, N.A. has been directed to cease setting off pursuant to the Loan Documents;

6

A/72535657.7/3001762-0000334318

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010399

(i)    each of the original stock certificates evidencing equity interests in any Person that has been pledged to Agent as Collateral for the Obligations pursuant to the Pledge Agreement or any of the other Loans Documents, along with associated stock powers, and each other item of original Collateral, if any, that has been delivered to, and is in the possession of, Agent as "possessory" collateral for purposes of perfecting Agent's security interest therein pursuant to the Security Agreement or any of the other Loans Documents; and

(j)    Borrower and Assignee shall have entered into a letter agreement, dated as of the Effective Date, pursuant to which Borrower, among other things, provides further assurances that it will in good faith cooperate with Assignee to negotiate and enter into, as promptly as practicable after the Effective Date, an amendment and restatement of the Credit Agreement and certain of the other Loan Documents consistent with the basic business terms to be set forth therein and otherwise as to be mutually agreed.

**4.2    Representations and Warranties of the Assignors and Assignee.** Each of the representations and warranties of Assignors and Assignee contained herein shall be true and correct in all material respects.

**SECTION 5.    REPRESENTATIONS OF THE ASSIGNOR.** In order to induce Assignee to enter into this Agreement and pay the Purchase Price for the Assigned Interests, each Assignor, separately but not jointly, represents and warrants to Assignee and agrees as follows:

**5.1    Legal and Beneficial Owner.** It is the legal and beneficial owner of the relevant Assigned Interest.

**5.2    No Liens.** Such Assigned Interest is free and clear of any lien, encumbrance or other adverse claim.

**5.3    Power and Authority.** Such Assignor has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated hereby.

**5.4    Schedule II Information.** The information with respect to such Assignor set forth on Schedule II hereto is true and correct.

**5.5    Loan Documents.** Assignor has delivered, or caused Agent to deliver, to Assignee, true and complete copies of each of the Loan Documents listed on Schedule III hereto.

**5.6    No Amendments.** Other than as set forth in any of the Loan Documents listed on Schedule III attached hereto, none of the Loan Documents listed on Schedule III to which such Assignor is a party, whether as a Lender, Agent or otherwise, have been amended, waived or otherwise modified in writing.

Other than as set forth above, Assignors assume no responsibility with respect to (a) any statements, warranties or representations made in or in connection with the Credit Agreement or any other Loan Document, (b) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Loan Documents or any collateral thereunder, (c) the financial condition of Borrower, any of its Subsidiaries or Affiliates or any other Person

7

A/72635657.7/3001762-0000334318

Exhibit B Page 11

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010400

obligated in respect of any Loan Document or (d) the performance or observance by Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Loan Document.

SECTION 6.    ASSIGNEE'S REPRESENTATIONS.    In order to induce the Assignors to enter into this Agreement and assign the Assigned Interests to Assignee, Assignee represents and warrants to Assignors and agrees as follows:

6.1    **Power and Authority.**  It has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement.

6.2    **Obligations of a Lender.**  From and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the relevant Assigned Interest, shall have the obligations of a Lender thereunder.

6.3    **Sophisticated Party.**  Assignee (i) is a sophisticated person with respect to the purchase of the Assigned Interests, (ii) is able to bear the economic risk associated with the purchase of the Assigned Interests, (iii) has adequate information concerning the business and financial condition of Borrower and its Subsidiaries and Affiliates to make an informed decision regarding the purchase of the Assigned Interests, (iv) has such knowledge and experience, and has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights and assumption of liabilities of the type contemplated in this Agreement and (v) has independently, and without reliance upon Agent or any Assignor, and based on such information as Assignee has deemed appropriate, made its own analysis and decision to enter into this Agreement. Assignee acknowledges that Agent and no Assignor has given Assignee any investment advice, credit information or opinion on whether the purchase of the Assigned Interests is prudent.

6.4    **Receipt of Loan Documents; Financial Statements.**  It has received a copy of the Credit Agreement and has received or has been accorded the opportunity to receive copies of the most recent financial statements delivered pursuant to Sections 8.1 and 8.2 thereof, as applicable, and such other documents and information as it deems appropriate to make its own credit analysis and decision to enter into this Agreement and to purchase the Assigned Interests.

6.5    **Independent Credit Analysis.**  It (a) has, independently and without reliance upon the Agent or any Assignor, and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement and to purchase the Assigned Interests, and (b) will, independently and without reliance on the Agent or any Assignor, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Documents.

6.6    **No Reliance.**  Assignee acknowledges that (i) Agent and any Assignor currently may have, and later may come into possession of, information with respect to the Assigned Interests or Borrower or its Subsidiaries or Affiliates that is not known to Assignee and that may be material to a decision to purchase the Assigned Interests ("Assignee Excluded Information"),

8

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010401

(ii) Assignee has determined to purchase the Assigned Interests notwithstanding its lack of knowledge of the Assignee Excluded Information, (iii) Agent and the Assignors are under no obligation whatsoever to provide any Assignee Excluded Information to Assignee, including, without limitation, any work product prepared by attorneys and financial and other advisors to Agent or Assignors, whenever generated, (iv) except as otherwise provided in this Agreement, Assignee has not relied and will not rely on Agent or any Assignor to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of Borrower or any of its Subsidiaries or Affiliates or any other matter concerning Borrower or any of its Subsidiaries or Affiliates, and (v) neither Agent nor any Assignor shall have any liability to Assignee, and Assignee acknowledges and agrees that it shall have no claim against Agent or any Assignor, with respect to the nondisclosure of the Assignee Excluded Information in connection with the Transactions.

### SECTION 7. REDUCTION OF COMMITMENT; EXISTING DEFAULTS.

7.1 **Borrower Acknowledgement of Existing Defaults.** Borrower hereby acknowledges, confirms and agrees (a) that Events of Default have occurred and are continuing under the Loan Documents as of the Effective Date, including, without limitation, each of the Existing Defaults listed on Schedule I attached hereto; (b) that on July 21, 2008 (the "Acceleration Date"), Agent, on behalf of Assignors, accelerated the then outstanding Loans and all other Obligations owing to Assignors and Agent under the Credit Agreement and other Loan Documents, and that such Obligations as remain outstanding as of the Effective Date, after giving effect to the Transactions contemplated hereby and by the other Exchange Transaction Documents, are presently due and owing in full; (c) that on the Acceleration Date, Agent, on behalf of Assignors, terminated each of the Commitments and that as of the Effective Date no Assignor has any outstanding Commitment to make any Loans or to extend any other credit under the Credit Agreement or any other Loan Document to or for the benefit of Borrower, any Subsidiary Guarantor or any other Loan Party; and (d) that it has no affirmative defenses or offsets with respect to any of the Existing Defaults and, to the extent that Borrower or any Subsidiary Guarantor or any Subsidiary or Affiliate of Borrower has any such affirmative defenses or offsets, such affirmative defenses and offsets are hereby waived to the fullest extent permitted by law.

7.2 **Reservation of Rights.** Assignee expressly reserves the right to declare, in accordance with the terms of the Loan Documents, additional Events of Default, at any such time as such additional Events of Default shall otherwise occur and be continuing. This Section 7.2 shall constitute notice that, subject to the terms and conditions set forth in the Loan Documents, any forbearance by Assignee, by the Successor Agent or any other Lender from the exercise of its respective rights, remedies, powers and privileges shall be done solely at the election of Assignee, the Successor Agent and such other Lenders, shall be temporary and on a day-to-day basis and that Assignee, the Successor Agent and such other Lenders reserve the right, without any further notice or action, to immediately commence the exercise of any such default rights, remedies, powers and privileges in accordance with the terms of the Loan Documents. Neither Borrower nor any Subsidiary Guarantors or other Loan Party should assume that because only certain actions have been taken as of the date hereof, that additional default rights and remedies will not be exercised in the future. Borrower acknowledges and agrees that the forbearance by Assignee, the Successor Agent and each other Lender of any such rights and remedies shall not

9

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010402

constitute a waiver of any of such rights and remedies, and that Assignee, the Successor Agent and each other Lender hereby expressly reserve all such rights and remedies that they have or may have against the Loan Parties or any other party to the Loan Documents whether under the Loan Documents, applicable law or otherwise.

**SECTION 8.**   **NOTICES.**  Unless otherwise provided herein, all notices and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given when delivered, if delivered personally, or if sent by overnight mail or overnight courier, or if sent by facsimile transmission with confirmed receipt, provided that in the case of notice sent by facsimile transmission, the party sending the notice shall confirm such notice by one of the other means provided for above, to the parties at the following addresses (or at such other addresses as shall be specified by like notice):

(a)   If to Assignee at:

OMNI 808 Investors LLC
9420 Wilshire Boulevard, Suite 400
Beverly Hills, California 90212
Attention: Chief Executive Officer
Telephone: (310) 300-4100
Facsimile: (310) 300-4101

with a copy to:

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
Attention: Peter Carson, Esq.
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

(b)   If to the Agent or any Assignor:

Wachovia Bank, National Association
One Wachovia Center
301 South College Street
Charlotte, North Carolina 28288
Attention: Thomas M. Cambern, Managing Director
Telephone: (704) 383-1172
Facsimile: (704) 383-6249

10

A/72635657.7/3001762-0000334318

Exhibit B Page 14

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010403

with a copy to:

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Attention: John Fouhey, Esq.
Telephone: (212) 450-4358
Facsimile: (212) 450-3538

(c)    If to the Borrower at:

MGA Entertainment Inc.
16830 Roscoe Boulevard, Suite 200
Van Nuys, California 91460
Attention: General Counsel
Telephone:  (818) 894-2525
Facsimile:  (818) 895-0771

with a copy to:

MGA Entertainment Inc.
16830 Roscoe Boulevard, Suite 200
Van Nuys, California 91460
Attention:  Isaac Larian, Chief Executive Officer
Telephone:  (818) 894-3150
Facsimile:  (818) 894-1267

The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice.

## SECTION 9.    MISCELLANEOUS PROVISIONS.

9.1    **Confidentiality**. Each party hereto agrees that, without the prior consent of each other party, it shall not disclose the contents of this Agreement (or the Letter of Intent, including the Purchase Price) to any person, except that any party may make any such disclosure (a) as required to implement or enforce this Agreement, (b) if required to do so by any law, court, regulation, subpoena or other legal process, (c) to any governmental authority or self-regulatory entity having or asserting jurisdiction over it, (d) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity or sanctions that may be imposed by any governmental authority, or (e) to its Affiliates, professional advisors and auditors.

9.2    **Severability**. Each part of this Agreement is intended to be severable. If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and shall have full force and effect as if the invalid or unenforceable part had not been included.

11

A/72635657.7/3001762-0000334318

Exhibit B Page 15

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010404

**9.3    Closing Expenses.**  Except as set forth in Sections 2 and 3 above, each of the parties hereto shall be responsible for the payment of its respective costs and expenses in negotiating and carrying out its obligations under this Agreement, including, without limitation, the costs of its counsel.

**9.4    Amendment.**  This Agreement may not be amended except by an instrument in writing signed by a duly authorized representative of each of the parties hereto.

**9.5    Headings.**  The headings contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

**9.6    Construction.**  Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural of such noun or pronoun, pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender and references to a particular Section or Schedule shall be deemed to mean the particular Section of this Agreement and any Schedule attached hereto.  The parties acknowledge that each party and its counsel have reviewed this Agreement and the parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto.

**9.7    Successors and Assigns.**  This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the Schedules hereto, shall be binding upon and shall inure to the benefit of the undersigned parties and their respective successors and assigns.

**9.8    Prior Understandings; Integrated Agreement.**  This Agreement supersedes any and all prior discussions and agreements, written or oral, between the parties hereto with respect to the assignment of the Loan Documents and other matters contained herein, and this Agreement contains the sole, final and complete expression and understanding between the parties hereto with respect to the transaction contemplated herein.

**9.9    Reaffirmation of Loan Documents.**  Borrower and each Subsidiary Guarantor expressly acknowledges and agrees that, after giving effect hereto, the Credit Agreement and the other Loan Documents to which it, or any of its Subsidiaries, is a party are valid and enforceable by Assignee against it and such Subsidiaries, and expressly reaffirms each of its and its Subsidiaries' Obligations under each such Loan Document.

**9.10    Counterparts.**  This Agreement may be executed and delivered in any number of counterparts, each of which shall constitute an original, but all of which shall constitute but one and the same instrument.

**9.11    Governing Law.**  This Agreement shall be construed, and the rights and obligations of the parties hereunder determined, in accordance with the substantive laws of the State of New York, without regard to conflict of law principles.

12

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010405

**9.12    No Third-Party Beneficiaries.** No Person, organization or association other than the parties hereto shall have any rights or claims under this Agreement. This Agreement shall confer no rights upon Borrower or any of its Subsidiaries or Affiliates or any other Person.

**9.13    Waiver Of Jury Trial.** EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES THE RIGHT EACH MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREE THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

13

A/72635657.7/3001762-0000334318

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010406

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

ASSIGNEE:

OMNI 808 INVESTORS LLC, a California limited liability company

By: _____

Name:  Neil Kadisha

Title:  Chief Executive Officer

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005                    WACHOVIA 010407

ASSIGNORS:

WACHOVIA BANK, NATIONAL
    ASSOCIATION, as Agent and as a
    Lender

By: _____

    Name: Thomas M. Gambern
    Title: Managing Director

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 19

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010408

WELLS FARGO HSBC TRADE BANK,
NATIONAL ASSOCIATION

By: _____

Name: DARRYL HALLER

Title: Vice President / Principal

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 20

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WESTLB AG, NEW YORK BRANCH

By: _____

Name: E. KEITH MIN
Title: EXECUTIVE DIRECTOR

By: _____

Name:
Title: SALVATORE BATTINELLI
MANAGING DIRECTOR

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 21

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010410

UBS LOAN FINANCE LLC

By: _____
    Name:   Richard L. Tavrow
    Title:    Director
             Banking Products
             Services, US

By: _____
    Name:   Mary E. Evans
    Title:    Associate Director
             Banking Products
             Services, US

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 22

WACHOVIA 010411

HSBC BANK USA, NATIONAL
ASSOCIATION

By: _____

Name: _____
Title: BRUCE F. DENIL

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 23

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010412

BANK OF THE WEST

By: _Michael Creith_

Name: MICHAEL CREITH

Title: V. P.

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 24

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010413

BANK OF CHINA, LOS ANGELES
BRANCH

By: _____
Name:    Feng Chang
Title:   Branch Manager & VP

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 25

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010414

CHANG HWA COMMERCIAL BANK,
LTD., NEW YORK BRANCH

By: _____
Name: Jim C.Y. Chen
Title: V.P. & General Manager

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 030415

MIDFIRST BANK

By: _____
Name: Glen Shigley
Title: Senior Vice President

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 27

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010416

**BORROWER:**

**MGA ENTERTAINMENT INC.,** a California
corporation

By: _____

Name: _____ISAAC LARIAN_____

Title: _____CEO_____

**SUBSIDIARY GUARANTORS:**

**MGA ENTERTAINMENT (MEXICO), INC.,** a
California corporation

By: _____

Name: _____ISAAC LARIAN_____

Title: _____CEO_____

**THE LITTLE TIKES COMPANY,** an Ohio
corporation

By: _____

Name: _____ISAAC LARIAN_____

Title: _____CEO_____

[SIGNATURE PAGE TO MASTER ASSIGNMENT AND EXCHANGE AGREEMENT]

Exhibit B Page 28

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 010417