
1  Bingham McCutchen LLP
   TODD E. GORDINIER (SBN 82200)
2  todd.gordinier@bingham.com
   PETER N. VILLAR (SBN 204038)
3  peter.villar@bingham.com
   CRAIG A. TAGGART (SBN 239168)
4  craig.taggart@bingham.com
   600 Anton Boulevard, 18th Floor
5  Costa Mesa, CA 92626-1924
   Telephone: 714.830.0600
6  Facsimile: 714.830.0700

7  Attorneys for Non-Parties
   LEON NEMAN, FRED MASHIAN
8  and NEIL KADISHA

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13  CARTER BRYANT, an individual,         | Case No. CV 04-9049 SGL (RNBx)
14              Plaintiff,                | Consolidated with Case No.
                                          | CV 04-09059 and Case No. CV 05-2727
15        v.
                                          | **DISCOVERY MATTER**
16  MATTEL, INC., a Delaware              | **To be heard by Discovery Master**
    Corporation,                          | **Robert C. O'Brien**
17
                Defendant.                | **REPLY MEMORANDUM OF
18                                        | POINTS AND AUTHORITIES IN
                                          | SUPPORT OF MOTION TO QUASH
19                                        | AND/OR FOR PROTECTIVE
                                          | ORDER RE SUBPOENAS ISSUED
20                                        | BY MATTEL, INC. TO NON-
                                          | PARTIES LEON NEMAN, FRED
21                                        | MASHIAN AND NEIL KADISHA**
22                                        | [SUPPLEMENTAL DECLARATION
                                          | OF PETER N. VILLAR FILED
23                                        | CONCURRENTLY]
24                                        | Date:  May 5, 2009
                                          | Time:  10:00 a.m.
25                                        | Place: Arent Fox LLP
                                          |        555 West Fifth Street
26                                        |        48th Floor
                                          |        Los Angeles, CA 90013
27
28  AND CONSOLIDATED ACTIONS.

A/72917268.2

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | MATTEL'S CONTENTION THAT THE NON-PARTY DEPONENTS' OBJECTIONS TO THE SUBPOENAS WERE "UNTIMELY" IS DEMONSTRABLY FALSE | 4 |
| III. | THE COURT HAS WIDE DISCRETION TO QUASH SUBPOENAS AND/OR ISSUE A PROTECTIVE ORDER WHERE, AS HERE, THE COURT HAS DETERMINED THAT THE INFORMATION SOUGHT FROM THE WITNESSES IS IRRELEVANT TO THE LITIGATION | 6 |
| IV. | MATTEL'S ATTEMPT TO CIRCUMVENT THE DISCOVERY MASTER'S MARCH 10, 2009 ORDER IS UNAVAILING | 8 |
| | A. Mashian and Neman Have No Information That Is Relevant To Phase 2 | 8 |
| | B. Mr. Kadisha Has No Potentially Relevant Information Beyond What Is Already Being Produced By Omni 808 | 9 |
| | C. Mattel Does Not Dispute That The Documents Sought From Kadisha Are Completely Subsumed By The Discovery Master's Order No. 3 | 10 |
| V. | MATTEL'S MOTION FOR RECONSIDERATION CHANGES NOTHING REGARDING THE IMPROPRIETY OF THE DEPOSITION SUBPOENAS TO THE NON-PARTY DEPONENTS | 11 |
| VI. | THERE IS AMPLE AUTHORITY FOR QUASHING SUBPOENAS TO NON-PARTIES SEEKING INFORMATION THAT CAN BE OBTAINED FROM PARTIES | 12 |
| VII. | MATTEL'S FAILURE TO CONFER WITH OPPOSING COUNSEL BEFORE SCHEDULING THE DEPOSITIONS IS GROUNDS FOR A PROTECTIVE ORDER | 13 |
| VIII. | CONCLUSION | 14 |

A/72917268.2

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Anderson v. Abercrombie & Fitch Stores, Inc.,*
    No. 06cv991-WQH (BLM), 2007 WL 1994059 (S.D. Cal. Jul. 2, 2007) ........... 13

*Anderson v. Air West, Inc.,*
    542 F.2d 1090 (9th Cir. 1976) ............................................................................. 7

*Berning v. UAW Local 2209,*
    No. 1:06-CV-00087, 2007 WL 1385367 (N.D. Ind. May 4, 2007) ................... 6

*Bucher v. Richardson Hosp. Authority,*
    160 F.R.D. 88 (N.D. Tex. 1994) ........................................................................ 7

*E.E.O.C. v. Greater Metroplex Interiors, Inc.,*
    2009 WL 412934 (N.D. Tex. Feb. 17, 2009) .................................................... 7

*Exxon Shipping Co. v. U.S. Dept. of Interior, et al.,*
    34 F.3d 774 (9th Cir. 1994) .............................................................................. 6

*Hackmann v. Auto Owners Ins. Co.,*
    No. 2:05-cv-876, 2009 WL 330314 (S.D. Ohio Feb. 6, 2009) .......................... 6

*Koninklike Philips Electronics N.V. v. KXD Technology, Inc.,*
    No. 2:05-cv-1532-RLH-GWF, 2007 WL 3101248 (D. Nev. Oct. 16, 2007) ............................................................................................................... 13

*Lizotte v. Praxair, Inc.,*
    No. C07-1868RSL, 2009 WL 159249 (W.D. Wash. Jan. 22, 2009) .................. 6

*Mansourian v. Board of Regents of University of Cal. at Davis,*
    2007 WL 4557104 (E.D. Cal. Dec. 21, 2007) ................................................... 7

*Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D. Cal. 2005) ..................................................................... 12

*Perius v. Abbott Laboratories,*
    2008 WL 3889942 (N.D. Ill. Aug. 20, 2008) .................................................... 7

# TABLE OF AUTHORITIES
(continued)

Page

*Ray v. BlueHippo Funding, LLC*,
   No. C-06-1807 JSW (EMC), 2008 WL 3399392 (N.D. Cal. Aug. 11, 2008) ............................................................................................. 13

*Seabrook Medical Systems, Inc. v. Baxter Healthcare Corp.*,
   164 F.R.D. 232 (S.D. Ohio 1995) ....................................................... 13

*Smock v. Iowa Interstate Railroad, LTD*,
   No. C07-0051, 2008 WL 2674878 (N.D. Iowa July 7, 2008) ............. 6

*Theofel v. Farey-Jones*,
   341 F.3d 978 (9th Cir. 2003) ............................................................... 6

*Universal Trading & Inv. Co. v. Kiritchenko*,
   2006 WL 3798157 (N.D. Cal. Dec. 22, 2006) .................................... 7

*Valvida v. Kmart Corp.*,
   2000 WL 1739215 (D. Virgin Islands 2000) .................................... 14

**RULES**

Federal Rule of Civil Procedure 26(c) ........................................................ 6

Rule 26(b)(2)(C) ......................................................................................... 7

Rule 26(c) and Rule 45(c)(3) ..................................................................... 6

Rule 26 and Rule 45 ................................................................................... 6

Rule 45(c) ................................................................................................... 6

A/72917268.2

## I. INTRODUCTION

Mattel, Inc.'s Opposition to the Non-party Deponents' Motion to Quash and/or for Protective Order further demonstrates that the deposition subpoenas were abusively drawn for the purpose of annoying, harassing and exerting pressure on the non-party Financing Entities and their affiliates. There is no good faith basis for compelling the depositions of Messrs. Kadisha, Neman and Mashian (the "Non-party Deponents"), and certainly not at this stage of the proceedings.

Mattel erroneously contends that Neman's and Mashian's objections to the document subpoenas issued by Mattel were "untimely" and therefore have been waived. However, the document subpoenas issued to Neman and Mashian are not even the subject of this motion. The Non-party Deponents have moved to quash the deposition subpoenas issued by Mattel. There is no dispute that the Non-party Deponents' objections to the deposition subpoenas, which are the subject of this motion, were timely.

Though not directly relevant to this motion, but highly relevant to Mattel's credibility, both Neman and Mashian served timely objections to the document subpoenas as well. Indeed, Mattel's counsel's declaration confirms that Neman's objections to the document subpoena were timely served on February 23. Moreover, while Mashian's objections to the document subpoena were served a week after the initial due date, Mattel fails to disclose that it expressly gave Mashian "an additional week to respond" to the subpoena. Therefore, Mattel's arguments are false, misleading and disingenuous.

Mattel does not dispute that the subpoenas to the Non-party Deponents seek the exact same information that Mattel sought to compel from the Financing Entities. The Discovery Master correctly determined that "Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue." (Order No. 3 at 25:5-6.) The Discovery Master permitted only the discovery of limited categories of documents evidencing

1  "MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the
2  alleged Wachovia debt" on the ground that they are potentially relevant to "MGA's
3  net worth (and hence punitive damages)." (Order No. 3 at 19:18-22.) Faced with
4  the Discovery Master's Order, Mattel *now claims* that the depositions of the Non-
5  party Deponents seek information relating to MGA's "net worth." This argument
6  is both specious and unavailing.

7  As Mattel knows, the Discovery Master correctly found that <u>none</u> of the
8  information sought from Omninet Capital, LLC and Vision Capital, LLC is
9  relevant to Phase 2. (Order No. 3 at 28.) The Discovery Master reasoned that the
10 "**analysis is fundamentally different for OmniNet Capital, LLC and Vision
11 Capital, LLC because neither entity is alleged by Mattel to be a creditor of
12 MGA Entertainment, Inc. … Because [Mattel] admits that OmniNet Capital,
13 LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to
14 show that the information sought from those entities has any bearing on
15 MGA's financial condition.**" (Order No. 3 at 19, fn 17, emphasis added.) Mr.
16 Neman is a principal of Vision Capital, and Mr. Mashian is an attorney for Vision
17 Capital. In fact, Mashian has "no affiliation with or relationship to MGA
18 Entertainment, Inc. or Isaac Larian." (Decl. of Mashian in Opp. to Mattel Ex Parte
19 App. re Lexington ¶ 7.) Therefore, as the Discovery Master correctly observed in
20 his Order, Neman and Mashian have no information that is conceivably relevant to
21 Phase 2.

22 In addition, while the Discovery Master has permitted limited <u>document</u>
23 discovery relating to "MGA's indebtedness to Omni 808 Investors, LLC from the
24 purchase of the alleged Wachovia debt," it does not justify opening the floodgates
25 so that Mattel can depose Omni 808's principal, Mr. Kadisha (and all other
26 employees and affiliates of MGA creditors for that matter), and certainly not at this
27 stage of the proceedings. Because all potentially relevant information will be
28 produced by Omni 808 pursuant to the Discovery Master's Order, there is no basis

A/72917268.2                                      2

or need to depose Mr. Kadisha. Moreover, Mattel does not dispute that the 44 categories of documents requested from Kadisha are <u>completely subsumed by the Discovery Master's Order No. 3</u> and, thus, should be quashed.

Well aware that the Discovery Master's Order No. 3 negates Mattel's relevance arguments, Mattel contends that its pending Motion for Reconsideration presents "new evidence" that purportedly sheds new light on the Financing Entities' counsel's prior statements and the Discovery Master's prior findings. This is also wrong. As explained in the Financing Entities' Opposition to Motion for Reconsideration, Mattel's purported "new evidence" is not inconsistent with any of the Financing Entities' statements or any of the Discovery Master's findings and, <u>more fundamentally</u>, does not in any way change the Discovery Master's determination that "Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue." (Order No. 3 at 25:5-6.)

Indeed, Mattel's only argument is that the purported new evidence (as Mattel misinterprets it) raises a question whether MGA is under an *actual* obligation to repay the $300 million debt to Omni 808. Mattel's far-fetched theory -- is not only specious, irrational and contradicted by the evidence, but entirely misses the point.

First, the Discovery Master already has ordered Omni 808 to produce documents relating to the existence and validity of any debt owed by MGA to Omni 808 (*including* the debt purchased from Wachovia), and all communications between Omni 808 and the MGA parties (*including* Mr. Larian) regarding any such indebtedness. (Order No. 3 at 29.) Therefore, Mattel's purported concerns regarding the validity of the debt owed by MGA to Omni 808 are already taken into account in the Discovery Master's Order No. 3.

Second, to the extent Mattel wishes to further explore its factually baseless contention that MGA or Mr. Larian has any interest in Omni 808, beyond the

A/72917268.2                                      3

1 | 10,000 documents already produced by Wachovia and the documents to be
2 | produced by Omni 808 and IGWT, the Discovery Master specifically left open that
3 | "Mattel could, upon establishing a nexus to a legitimate Phase 2 issue, seek to
4 | obtain this information from MGA." (Order No. 3 at 4 fn 2.)

Finally, Mattel's alleged concerns regarding the validity of MGA's debt have nothing whatsoever to do with Omninet Capital, LLC or Vision Capital, LLC, who, as Mattel admitted and the Discovery Master correctly found, are not creditors of MGA. (Order No. 3 at 19, fn 17.) Therefore, this purported new information has <u>no effect</u> on the Discovery Master's Order with respect to the Omninet Capital and Vision Capital subpoenas and consequently has no bearing on Mattel's deposition subpoenas to Neman and Mashian.

For these reasons, the Non-party Deponents respectfully request that the Court quash the subpoenas and/or issue a protective order forbidding the depositions from going forward.

## II. MATTEL'S CONTENTION THAT THE NON-PARTY DEPONENTS' OBJECTIONS TO THE SUBPOENAS WERE "UNTIMELY" IS DEMONSTRABLY FALSE

In its opposition, Mattel contends that "Mashian and Neman failed to serve timely objections to the subpoenas" and therefore have waived any objections. (Mattel Opp. at 7:10-16.) Mattel's contention is demonstrably false.

First, the <u>document</u> subpoenas issued to Mr. Mashian and Mr. Neman, that Mattel is referring to, <u>are not even the subject of this motion</u>. The Non-party Deponents have moved to quash the <u>deposition</u> subpoenas issued to Mashian and Neman on February 25, 2009 and February 26, 2009, respectively. (*See* Original Villar Decl. in Supp. of Mot. to Quash/Prot. Order, "Original Villar Decl.," Exs. B,

C.)[1] Mattel does not dispute, nor can it dispute, that Mashian and Neman served timely objections to the <u>deposition</u> subpoenas <u>that are the subject of this motion.</u> (*See* Original Villar Decl. Exs. G, H.)

Second, though not directly relevant to this motion, but highly relevant to Mattel's credibility, both Mr. Neman and Mr. Mashian served timely objections to the <u>document</u> subpoenas as well. As Mattel concedes in its opposition, "Mattel served document subpoenas on Leon Neman and Fred Mashian on February 9, 2009, and January 31, 2009, respectively." (Mattel Opp. at 6:9-10; Corey Decl. Exs. 1 & 3.) Pursuant to the Federal Rules of Civil Procedure, and as expressly set forth in the subpoenas, Neman's and Mashian's responses were due 14 days later, February 23, 2009 and February 16, 2009, respectively.

Mattel concedes that Neman served his objections to the document subpoena on February 23, 2009. (Corey Decl. Ex. 6.) Therefore, Neman's objections were timely. Further, although Mashian's response was <u>initially</u> due by February 16, Mattel fails to disclose to the Court that it gave Mashian "an additional week to respond" to the subpoena until February 23. (*See* Supplemental Villar Decl., Ex. 1.) Since Mashian served his objections to the document subpoena on February 23 (Corey Decl. Ex. 8), his objections also were timely.

Significantly, since Neman and Mashian timely served their objections to the document subpoenas on February 23 -- <u>nearly two months ago</u> -- Mattel has never asserted that their objections were untimely, or that they had waived their objections, until it filed its opposition to this motion.

Therefore, Mattel's arguments are untrue, misleading and disingenuous.

---

[1] The Non-party deponents also have moved to quash the deposition subpoena to Mr. Kadisha (which includes requests for production of documents). (Original Villar Decl. Ex. A.) Mattel does not contend that Mr. Kadisha's objections were untimely.

### III. THE COURT HAS WIDE DISCRETION TO QUASH SUBPOENAS AND/OR ISSUE A PROTECTIVE ORDER WHERE, AS HERE, THE COURT HAS DETERMINED THAT THE INFORMATION SOUGHT FROM THE WITNESSES IS IRRELEVANT TO THE LITIGATION

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey-Jones*, 341 F.3d 978, 984 (9th Cir. 2003). Rule 45(c), "is intended to protect nonparties to litigation from, in effect, suffering inconvenience or expense from having to participate in someone else's quarrel." *Hackmann v. Auto Owners Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009). Furthermore, under Federal Rule of Civil Procedure 26(c), "[t]he Court has discretion to issue a protective order forbidding or limiting discovery." *Lizotte v. Praxair, Inc.*, No. C07-1868RSL, 2009 WL 159249, at *1 (W.D. Wash. Jan. 22, 2009); *see also Exxon Shipping Co. v. U.S. Dept. of Interior, et al.*, 34 F.3d 774, 779 (9th Cir.1994) ("Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas....").

Faced with the Discovery Master's Order No. 3 demonstrating that the information sought by from these Non-party Deponents is not relevant to this litigation, Mattel erroneously asserts that orders precluding depositions on relevance grounds are disfavored. Mattel's argument is meritless and, in fact, further amplifies that these are the precise circumstances where a motion to quash or for a protective order is justified and warranted under Rule 26 and Rule 45.

Contrary to Mattel's argument, depositions, like all discovery, are subject to the restrictions of Rule 26 and 45 of the Federal Rules of Civil Procedure. *See, e.g., Smock v. Iowa Interstate Railroad, LTD*, No. C07-0051, 2008 WL 2674878, at * (N.D. Iowa July 7, 2008) (granting protective order prohibiting plaintiff from redeposing plaintiff); *Berning v. UAW Local 2209*, No. 1:06-CV-00087, 2007 WL

A/72917268.2

6

1385367, at *3 (N.D. Ind. May 4, 2007) (granting motion for protective order and to quash subpoena where information was duplicative and party issuing subpoena did not make detailed showing of relevance). Moreover, the "prior Discovery Master" Order cited to in Mattel's opposition <u>supports</u>, rather than contradicts, the Non-party Deponents' position that the Court should quash and/or issue a protective order prohibiting the depositions from going forward. The Court specifically stated: "***<u>All discovery</u> . . . is subject to the limitations imposed by Rule 26(b)(2)(C)* . . . .**" (Corey Decl., Ex. 17, p. 184.) Although the Court determined under those circumstances that the depositions could go forward on <u>certain</u> issues based on its determination that the witnesses had information relevant to the Phase I litigation, the Court, citing Rule 26(b)(1), declined to permit the depositions to go forward on topics where the subpoena exceeded "**the bound of relevant discovery**" and where it was "cumulative and unduly burdensome." (Corey Decl., Ex. 17, pp. 186-88, emphasis added.)

None of the cases that Mattel cites are applicable or persuasive since, in each case, the court found that, unlike the Non-party Deponents, the deponents were either an actual party to the case or had information directly relevant to the action. *See Mansourian v. Board of Regents of University of Cal. at Davis*, 2007 WL 4557104, *2 (E.D. Cal. Dec. 21, 2007) (deponent "had direct, personal knowledge of facts relevant to . . . action"); *Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) (deponent was a party to the litigation and had relevant information); *E.E.O.C. v. Greater Metroplex Interiors, Inc.*, 2009 WL 412934, *2 (N.D. Tex. Feb. 17, 2009) (deponent was a party to litigation and had information that was "unquestionably relevant"); *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976) (record supported that deponent "probably" had some knowledge); *Perius v. Abbott Laboratories*, 2008 WL 3889942, * 9 (N.D. Ill. Aug. 20, 2008) (one of the deponents was a party to the litigation and deponents had information that may be relevant); *Universal Trading & Inv. Co. v. Kiritchenko*,

A/72917268.2

7

2006 WL 3798157, at *2-3 (N.D. Cal. Dec. 22, 2006) (denying protective order where deponent had relevant information but sought to postpone the deposition until after the criminal proceedings against him were complete).

## IV. MATTEL'S ATTEMPT TO CIRCUMVENT THE DISCOVERY MASTER'S MARCH 10, 2009 ORDER IS UNAVAILING

Mattel does not dispute that the subpoenas to the Non-party Deponents seek the <u>exact same information</u> that Mattel sought to compel from the Financing Entities. The Discovery Master correctly determined that "Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue." (Order No. 3 at 25:5-6.) The Discovery Master permitted only the discovery of limited categories of documents evidencing "MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt" on the ground that they are potentially relevant to "MGA's net worth (and hence punitive damages)." (Order No. 3 at 19:18-22.) Faced with the Discovery Master's Order, Mattel *now claims* that the depositions of the Non-party Deponents seek information relating to MGA's "net worth." This argument is both specious and unavailing.

### A. <u>Mashian and Neman Have No Information That Is Relevant To Phase 2</u>

In his March 10, 2009 Order, the Discovery Master correctly found that <u>none</u> of the information sought from Omninet Capital, LLC and Vision Capital, LLC was relevant to Phase 2. (Order No. 3 at 28.) The Discovery Master reasoned that the "**analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc.** To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] … [which] appears to be owned funded by a company

Case 2:04-cv-09049-DOC-RNB   Document 5205   Filed 04/17/09   Page 13 of 18   Page ID
 #:169624

called Vision Capital, LLC." (*Id.*) **Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition."** (Order No. 3 at 19, fn 17, emphasis added.)

Mr. Neman is a principal of Vision Capital, and Mr. Mashian is an attorney for Vision Capital. In fact, as Mr. Mashian previously testified, he has "no affiliation with or relationship to MGA Entertainment, Inc. or Isaac Larian." (Decl. of Mashian in Opp. to Mattel Ex Parte App. re Lexington ¶ 7.) Therefore, as the Discovery Master correctly observed in his Order, Neman and Mashian have no information that is conceivably relevant to Phase 2, and their deposition subpoenas should be quashed.

### B. Mr. Kadisha Has No Potentially Relevant Information Beyond What Is Already Being Produced By Omni 808

While the Discovery Master has permitted limited <u>document</u> discovery from Omni 808 Investors, LLC potentially relating to "MGA's net worth," that does not justify harassing Mr. Kadisha (or all other employees and affiliates of MGA creditors) with a deposition subpoena. All requested information relating to the "existence of any debt" and the "communications between Omni 808 Investors, LLC and MGA parties regarding such indebtedness" will be contained within the documents that Omni 808 will be producing pursuant to this Court's Order. There is simply no need to depose Mr. Kadisha given that the information sought will be contained within the documents. At a minimum, the Court should quash the subpoena to Mr. Kadisha and require Mattel to demonstrate to this Court, after reviewing the documents, what additional information it needs before subjecting Mr. Kadisha to a deposition.

### C. Mattel Does Not Dispute That The Documents Sought From Kadisha Are Completely Subsumed By The Discovery Master's Order No. 3

In addition to the testimony sought from the Non-party Deponents, Mattel's subpoena to Mr. Kadisha also requests that he produce documents in response to 44 irrelevant, overbroad, and duplicative document requests. Mattel does not dispute that the documents sought are the <u>exact same documents</u> that Mattel sought from the Financing Entities and which this Court concluded were not relevant to the Phase 2 proceedings. (*See* Original Villar Decl. Ex. A; Order No. 3 at 29) Since the Court determined that the Financing Entities were not required to produce the documents that Mattel is seeking from Mr. Kadisha, there is no basis to require Mr. Kadisha to produce them.

Furthermore, based on the Court's March 10, 2009 Order, the only documents that could plausibly be relevant to Phase 2 are documents evidencing "the existence of any debt" and "communications between Omni 808 Investors, LLC and the MGA parties regarding any such indebtedness." (Order No. 3 at 29.) However, these documents are being produced by Omni 808, and therefore the requests to Mr. Kadisha are duplicative. Thus, to the extent Mr. Kadisha even has relevant documents in his possession, there is no basis to require him to produce these exact same documents.[2] Therefore, the Court should quash the document subpoena to Kadisha.

---

[2] Mattel's contention that the requested documents are relevant to its disgorgement claim is equally absurd. As the Discovery Master correctly observed, Mattel's disgorgement claim is based on allegations that assets were siphoned <u>out</u> of MGA. However, as Mattel admits, Omni 808 is a **creditor** of MGA who has infused capital <u>into</u> MGA. Indeed, under Mattel's far-fetched theory, Omni 808 is not only infusing capital into MGA, but is not asking for payment in return, which clearly cannot form the basis of a disgorgement remedy.

## V. MATTEL'S MOTION FOR RECONSIDERATION CHANGES NOTHING REGARDING THE IMPROPRIETY OF THE DEPOSITION SUBPOENAS TO THE NON-PARTY DEPONENTS

Well aware that the Discovery Master's Order No. 3 negates Mattel's relevance arguments, Mattel contends that its pending Motion for Reconsideration presents "new evidence" that purportedly sheds new light on the Financing Entities' counsel's prior statements and the Discovery Master's prior findings. This is also wrong. As explained in the Financing Entities' Opposition to Motion for Reconsideration, the documents produced by Wachovia are not inconsistent with any of the Financing Entities' statements or any of the Discovery Master's findings. It is still the case, as the Discovery Master has correctly observed, that **MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian do not have, and have never had, any ownership interest in, or control over, the Financing Entities**.

More fundamentally, Mattel's purported new evidence does not in any way change the Discovery Master's determination that "Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue." (Order No. 3 at 25:5-6.) Indeed, it is no coincidence that Mattel pointedly *avoids* trying to tie the Wachovia documents to any of the particular requests in the Financing Entities' subpoenas, or to any claim or defense in Phase 2. Instead, Mattel claims that the Wachovia documents (as Mattel misinterprets them) raise a question whether MGA is under an *actual* obligation to repay the $300 million debt to Omni 808. Mattel's far-fetched theory is not only specious, irrational and contradicted by the evidence, but entirely misses the point.

First, the Discovery Master already has ordered Omni 808 to produce documents relating to the existence and validity of any debt owed by MGA to Omni 808 (including the debt purchased from Wachovia), and all communications

between Omni 808 and the MGA parties (including Mr. Larian) regarding any such indebtedness. (Order No. 3 at 29.) Therefore, Mattel's purported concerns regarding the validity of the debt owed by MGA to Omni 808 are already taken into account in the Discovery Master's Order No. 3.

Second, to the extent Mattel wishes to further explore its factually baseless contention that MGA or Larian has any interest in Omni 808, beyond the 10,000 documents already produced by Wachovia and the documents to be produced by Omni 808 and IGWT, the Discovery Master specifically left open that "Mattel could, upon establishing a nexus to a legitimate Phase 2 issue, seek to obtain this information from MGA." (Order No. 3 at 4 fn 2.)

Finally, Mattel's alleged concerns regarding the validity of MGA's debt have nothing whatsoever to do with Omninet Capital, LLC or Vision Capital, LLC, who, as Mattel admitted and the Discovery Master correctly found, are not creditors of MGA. (Order No. 3 at 19, fn 17.) Therefore, this purported new information has <u>no effect</u> on the Discovery Master's Order with respect to the Omninet Capital and Vision Capital subpoenas and consequently has no bearing on Mattel's deposition subpoenas to Neman and Mashian.

## VI. THERE IS AMPLE AUTHORITY FOR QUASHING SUBPOENAS TO NON-PARTIES SEEKING INFORMATION THAT CAN BE OBTAINED FROM PARTIES

Contrary to Mattel's unsupported assertion in its opposition, there is ample authority in the Ninth Circuit for the proposition that a party is required to seek information from parties before burdening non-parties. *See, e.g., Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing non-party subpoena when the "requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty"); *Dibel v. Jenny Craig, Inc.*, Civil No. 06cv2533 BEN(AJB), 2007 WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007) (granting motion to quash third party

1  subpoena because request for documents was "duplicative and overly burdensome"
2  when the requested documents were available from defendants); *Anderson v.*
3  *Abercrombie & Fitch Stores, Inc.*, No. 06cv991-WQH (BLM), 2007 WL 1994059,
4  at *1 (S.D. Cal. Jul. 2, 2007) ("District courts also have broad discretion to limit
5  discovery. For example, a court may limit the scope of any discovery method if it
6  determines that the discovery sought is 'unreasonably cumulative or duplicative, or
7  is obtainable from some other source that is more convenient, less burdensome, or
8  less expensive.'") (citing Fed. R. Civ. P. 26(b)(2)(C)).

Mattel is purportedly seeking information relating to Omni 808's acquisition of debt in MGA. However, Mattel has not exhausted its ability to obtain this information from MGA or other parties to the litigation. Rather, Mattel's pattern and practice has been to send subpoenas seeking the exact same information to as many non-party entities as possible. Thus, at a minimum, the Court should require Mattel to seek the information from MGA or other parties to this action before burdening non-parties.

## VII. MATTEL'S FAILURE TO CONFER WITH OPPOSING COUNSEL BEFORE SCHEDULING THE DEPOSITIONS IS GROUNDS FOR A PROTECTIVE ORDER

Contrary to Mattel's assertion in its opposition, "The failure to meet and confer in scheduling a deposition . . . is a factor in deciding whether a protective order should be granted." *Koninklike Philips Electronics N.V. v. KXD Technology, Inc.*, No. 2:05-cv-1532-RLH-GWF, 2007 WL 3101248, at *17 (D. Nev. Oct. 16, 2007); *Ray v. BlueHippo Funding, LLC*, No. C-06-1807 JSW (EMC), 2008 WL 3399392, at *2-3 (N.D. Cal. Aug. 11, 2008) (granting protective order preventing the deposition from taking place on the scheduled date where the defendants' counsel was unavailable on the noticed dates); *Seabrook Medical Systems, Inc. v. Baxter Healthcare Corp.*, 164 F.R.D. 232, 233 (S.D. Ohio 1995) (issuing protective order staying deposition of third party when parties failed to "discuss

and agree to a deposition date before the issuance of the subpoena, not after"); *Valvida v. Kmart Corp.*, 2000 WL 1739215, at *2 (D. Virgin Islands 2000) (ordering parties to confer and agree on dates for depositions of witnesses).

After arguing that it has no obligation to confer with opposing counsel in scheduling depositions, Mattel erroneously asserts that it did confer with opposing counsel before setting the Non-party Deponents' depositions. However, contrary to Mattel's assertion, Mattel cites only to correspondence asking Mr. Kadisha's counsel to "accept service" of the subpoena, and to a March 9 letter sent to opposing counsel well after noticing the depositions and threatening to bring a motion to compel. (Corey Decl., Exs. 10, 11, 13.) In all events, going forward, Mattel should be required to consult with opposing counsel before unilaterally noticing depositions if for no other reason than as a professional courtesy.

## VIII. CONCLUSION

For the foregoing reasons, the Non-party Deponents respectfully request that the Court issue a protective order and/or quash the subpoenas in their entirety.

DATED: April 17, 2009

Bingham McCutchen LLP

By: _____
Peter N. Villar
Attorneys for Non-parties
LEON NEMAN, FRED MASHIAN
and NEIL KADISHA

A/72917268.2

14