# Exhibit 1



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

**FILED**
CLERK, U.S. DISTRICT COURT

JAN - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

        Plaintiff,

        v.

CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

        Defendants.

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

        Counter-Claimant,

        v.

MATTEL, INC., a Delaware Corporation,

        Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

EXHIBIT _1_

PAGE _5_

07272/625581.2

PROTECTIVE ORDER

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)   Personnel files and other private or confidential employment, contractor or vendor information;

EXHIBIT __1__

PAGE __6__

07272/625581.2

-2-

PROTECTIVE ORDER

1    (2)    The specific terms of agreements with, and information received

2 from, third parties that a Party is required to disclose only under conditions of

3 confidentiality;

4    (3)    Personal or private financial information, and confidential

5 financial data that is not known generally to the trade or to competitors, including

6 financial data relating to specific sales, cost and profit information for specific

7 products and product lines; and

8    (4)    Business plans and product information that are not known

9 generally to the trade or to competitors, including non-public information relating to

10 product development and design.

11

12    WHEREFORE, believing that good cause exists, the Parties HEREBY

13 STIPULATE that, subject to the Court's approval, the following procedures shall be

14 followed in this Action to facilitate the orderly and efficient discovery of relevant

15 information while minimizing the potential for unauthorized disclosure or use of

16 confidential or proprietary information:

17

18    <u>SCOPE OF THIS ORDER</u>

19

20    1.    This Protective Order shall apply to trade secret, confidential and

21 proprietary information, documents and things that are produced or disclosed in any

22 form during the course of the Action by any Party or any nonparty:

23    (a)    through discovery;

24    (b)    in any pleading, document or other writing; or

25    (c)    in testimony given at a deposition.

26 (The foregoing information, documents and things shall be referred to hereinafter

27 collectively as "Litigation Materials.")

28

**EXHIBIT** _1_

**PAGE** _2_

1    <u>CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION</u>

2

3         2.    Any Party or nonparty producing or disclosing Litigation

4    Materials in this Action may designate such information as "CONFIDENTIAL" or

5    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner

6    set forth in paragraph 3 below.   The designation of Litigation Materials as

7    "CONFIDENTIAL" shall be limited to information which the disclosing Party or

8    nonparty believes in good faith contains, constitutes or reveals confidential design,

9    engineering or development information, confidential commercial information, non-

10   public financial information, confidential or private information about current or

11   former employees, contractors or vendors (including employee, contractor and vendor

12   personnel records), or other information of a confidential, proprietary, private or

13   personal nature.   The designation of information as "CONFIDENTIAL --

14   ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential

15   commercial information, including without limitation non-public designs and

16   drawings, which the disclosing Party or nonparty in good faith believes will result in

17   competitive disadvantage or harm if disclosed to another Party to this Action without

18   restriction upon use or further disclosure.   Information designated as

19   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only

20   be used and disclosed as provided in this Protective Order.

21

22        <u>MANNER OF DESIGNATION OF MATERIALS</u>

23

24        3.    A Party or nonparty may designate Litigation Materials as

25   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the

26   following manner:

27              (a)    <u>Documents or Things</u>.   "CONFIDENTIAL" or

28   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

-4-

EXHIBIT _1_

PAGE _8_    PROTECTIVE ORDER

1    obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --
2    ATTORNEYS' EYES ONLY" on the particular document or thing.

3         (b)   Interrogatory Answers and Responses to Requests for
4    Admissions.  In answering any interrogatory or request for admission, or any
5    part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or
6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the
7    legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
8    ONLY."  Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
9    EYES ONLY" answers shall be made on separate pages from any other
10   answers or portions thereof that are not designated as "CONFIDENTIAL" or
11   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12        (c)   Deposition Testimony.  Any Party or nonparty giving
13   deposition testimony in this Action may obtain "CONFIDENTIAL" or
14   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by
15   designating, during the course of that testimony, for which "CONFIDENTIAL"
16   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,
17   the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL
18   -- ATTORNEYS' EYES ONLY,"  or alternatively by designating the entire
19   testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
20   EYES ONLY," subject to a good faith obligation to identify any non-
21   confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"
22   portions in the event that the entire testimony is designated "CONFIDENTIAL
23   -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after
24   receipt of the transcript of the testimony.  The reporter shall separately
25   transcribe and bind the testimony so designated as "CONFIDENTIAL" and
26   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face
27   of the separate bound transcript containing such testimony with the term
28   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

EXHIBIT _1_

PAGE _9_     PROTECTIVE ORDER

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given. Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

EXHIBIT _1_

PAGE _10_   PROTECTIVE ORDER

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d)    Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e)    Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

**EXHIBIT** ___/___

**PAGE** ___//___   PROTECTIVE ORDER

be fully subject to this Protective Order. No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.     Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose. As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.     Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

EXHIBIT _1_

PAGE _12_

07272/625581.2

-8-

PROTECTIVE ORDER

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

EXHIBIT _1_

PAGE _13_

PROTECTIVE ORDER

6.     Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys.  For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)     such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

EXHIBIT _1_

-10-     PAGE _14_

PROTECTIVE ORDER

1            (g)    professional court reporters engaged to transcribe

2    deposition testimony, professional videographers engaged to videotape

3    deposition testimony and translators.

4            7.    None of the following is bound by or obligated under this Order

5    in any respect and specifically are not bound or obligated to treat information

6    designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7    ONLY" in any particular manner: The Court hearing this Action (including the Court

8    having jurisdiction of any appeal), Court personnel, court reporters working for the

9    Court, translators working for the Court, or any jury impaneled in this Action.

10            8.    Other than those identified in Paragraph 7 above, each person to

11    whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12    ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13    Protective Order and agree to be bound by it before disclosure to such persons of any

14    such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15    not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --

16    ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17    certified that they have read this Protective Order and have manifested their assent

18    to be bound thereby by signing a copy of the Assurance of Compliance attached

19    hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20    it shall not be necessary for that person to sign a separate Assurance of Compliance

21    each time that person is subsequently given access to confidential material. Any

22    person who signed an Assurance of Compliance in connection with the Stipulation

23    for Protection of Confidential Information and Protective Order filed September 16,

24    2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County

25    Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26    shall, by virtue of his or her prior signature, be deemed to have signed the attached

27    Assurance of Compliance.

28

**EXHIBIT** _1_

**PAGE** _15_

PROTECTIVE ORDER

9.    The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the <u>Local Rules</u>. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

EXHIBIT __/__

PAGE __/6__

PROTECTIVE ORDER

1         13.    If a Party or nonparty through inadvertence produces or provides

2  discovery that it, he or she believes is subject to a claim of attorney-client privilege

3  or work product immunity, the producing Party or nonparty may give written notice

4  to the receiving Party that the document is subject to a claim of attorney-client

5  privilege or work product immunity and request that the document be returned to the

6  producing Party or nonparty. The receiving Party shall promptly return to the

7  producing Party or nonparty the inadvertedly disclosed document and all copies of

8  such document. Return of the document by the receiving Party shall not constitute

9  an admission or concession, or permit any inference, that the returned document is,

10  in fact, properly subject to a claim of attorney-client privilege or work product

11  immunity, nor shall it foreclose any Party from moving the Court for an Order that

12  such document has been improperly designated or should be producible for reasons

13  other than a waiver caused by the inadvertent production.

14         14.    Nothing contained in this Protective Order shall affect the right

15  of any Party or nonparty to make any objection, claim any privilege, or otherwise

16  contest any request for production of documents, interrogatory, request for admission,

17  or question at a deposition or to seek further relief or protective orders from the Court

18  in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>.

19  Nothing in this Protective Order shall constitute an admission or waiver of any claim

20  or defense by any Party.

21

22             <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

23

24         15.    Except when the filing under seal is otherwise authorized by

25  statute or federal rule, the Parties shall seek the Court's prior approval for the filing

26  under seal of pleadings and other documents containing properly designated

27  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

28  information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

EXHIBIT _1_

PAGE _7_  PROTECTIVE ORDER

1  Rule may be amended from time to time.  Prior to the time that a Party receiving the
2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
3  information from any other Party files with the Court an application and the other
4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to
5  time, to seal the producing Party's confidential information, the receiving Party shall
6  consult with the producing Party's attorney to determine whether the producing Party
7  will re-designate the previously designated confidential information so as to avoid the
8  need for the request to file such information under the seal.  Upon the default of a
9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any
11 Party may subsequently seek the approval of the Court to file that document under
12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule
13 may be amended from time to time.

14
15       THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS
16
17       16.    If any Party or nonparty receives a subpoena or document request
18 from a third party which purports to require the production of materials in that Party's
19 possession which have previously been designated as "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,
21 the Party or nonparty receiving such subpoena or document request (a) shall object
22 and refuse to produce documents absent a Court Order or the consent of the Party or
23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL
24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who
25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --
26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,
27 and (c) shall not oppose any effort by the Party or nonparty which designated the
28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

07272/625581.2

-14-

EXHIBIT __/__

PAGE __/8__   PROTECTIVE ORDER

1  ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2  material.

### DISCOVERY FROM NONPARTIES

6        17.    Discovery of nonparties may involve receipt of information,

7  documents, things or testimony which include or contain "CONFIDENTIAL" or

8  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A

9  nonparty producing such material in this case may designate as "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11  produces in the same manner provided for in this Protective Order with respect to

12  material furnished by or on behalf of the Parties.  Any Party may also designate as

13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17  nonparty has also so designated.  In addition, a nonparty may also designate as

18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19  materials or information produced by a Party that constitute "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22  producing Party has also so designated.  In either such an event, the designation

23  providing for the greater level of protection for the material information shall control,

24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated

25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26  nonparty or Party shall be governed by the terms of this Protective Order.

EXHIBIT _1_

PAGE _19_

PROTECTIVE ORDER

## CONCLUSION OF LITIGATION

18.     Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession.  In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties.  Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order.  This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.     The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court.  In addition, a Party may at any time apply to the Court for modification of this

EXHIBIT 1

PAGE 20

PROTECTIVE ORDER

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4      **IT IS SO STIPULATED.**

5

6   DATED: December 22, 2004          QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP
7

8                                     By ___Jon Corey_____

9                                        Jon Corey
                                         Attorneys for Plaintiff
10                                       Mattel, Inc.

11
     DATED: December ___, 2004         LITTLER MENDELSON
12

13                                    By _____
                                         Douglas A. Wickham
14                                       Attorneys for Defendant
                                         Carter Bryant
15

16   DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17

18                                    By _____
                                         Diana M. Torres
19                                       Attorneys for Interventor-Defendant
                                         MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23   DATED: ___1/4/05___

24                                         ROBERT N. BLOCK
                                      THE HONORABLE ROBERT N. BLOCK
25                                       United States Magistrate Judge

26

27

28                                    EXHIBIT _1_

                                      PAGE _21_
07272/625581.2                   -17-
                                                   PROTECTIVE ORDER

1 | Stipulation and Protective Order pursuant to a motion brought in accordance with the
2 | rules of the Court.

3 |

4 |     **IT IS SO STIPULATED.**

5 |

6 | DATED: December ___, 2004          QUINN EMANUEL URQUHART
7 |                                    OLIVER & HEDGES, LLP

8 |

9 |                                    By_____
                                       Jon Corey
10|                                    Attorneys for Plaintiff
                                       Mattel, Inc.
11|

12| DATED: December 2/, 2004           LITTLER MENDELSON

13|                                    By _____
14|                                    Douglas A. Wickham
                                       Attorneys for Defendant
15|                                    Carter Bryant

16| DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17|

18|                                    By_____
                                       Diana M. Torres
19|                                    Attorneys for Intervenor-Defendant
                                       MGA Entertainment, Inc.

20|

21|     **IT IS SO ORDERED.**

22|

23| DATED: _____
24|                                    THE HONORABLE ROBERT N. BLOCK
                                       United States Magistrate Judge
25|

26|

27|

28|

07272/625581.2                        -17-

                                                        PROTECTIVE ORDER

EXHIBIT 1

PAGE 22

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December ___, 2004        QUINN EMANUEL URQUHART
                                    OLIVER & HEDGES, LLP
7

8                                   By_____
9                                      Jon Corey
                                       Attorneys for Plaintiff
10                                     Mattel, Inc.
11

12  DATED: December ___, 2004        LITTLER MENDELSON

13                                   By_____
                                       Douglas A. Wickham
14                                     Attorneys for Defendant
                                       Carter Bryant
15

16  DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17
                                     By_____
18                                      Diana M. Torres
                                        Attorneys for Intervenor-Defendant
19                                      MGA Entertainment, Inc.

20

21                                   **IT IS SO ORDERED.**

22

23  DATED: _____

24                                   _____
                                     THE HONORABLE ROBERT N. BLOCK
25                                   United States Magistrate Judge

26

27

28

07272/625581.2                              -17-

                                                              PROTECTIVE ORDER

EXHIBIT _1_

PAGE _23_

## EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

07272/625581.2

EXHIBIT _1_

PAGE _24_

PROTECTIVE ORDER

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA** )
**COUNTY OF LOS ANGELES** )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.


Ivana Maiorano
Print Name

Signature

EXHIBIT _1_

PAGE _23_

1    Robert F. Millman, Esq.
     Douglas A. Wickham, Esq.
2    Keith A. Jacoby, Esq.
     Littler Mendelson
3    A Professional Corporation
     2049 Century Park East, 5th Floor
4    Los Angeles, California 90067-3107
     Phone: 310-553-0308
5    Fax: 310-553-5583

6    Diana M. Torres, Esq.
     O'Melveney & Meyers
7    400 S. Hope Street
     Los Angeles, CA 90071
8    Phone: 213-430-6000
     Fax: 213-430-6407

9

10    Daniel J. Warren, Esq.
     Sutherland, Asbill & Brennan
11    999 Peachtree Street NE
     Atlanta, GA 30309-3996
12    Phone: 404-853-8698
     Fax: 404-853-8806

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

EXHIBIT _1_

PAGE _26_

# Exhibit 2

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA  90071-2899
4   Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407
5   Email:       jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA  90067
    Telephone:  (310) 553-3000
9   Facsimile:   (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

11  DOUGLAS A. WICKHAM (S.B. #127268)
    KEITH A. JACOBY (S.B. #150233)
12  LITTLER MENDELSON
    A Professional Corporation
13  2049 Century Park East, 5th Floor
    Los Angeles, CA  90067.3107
14  Telephone:  (310) 553-0308
    Facsimile:   (310) 553-5583

15

16  Attorneys for Carter Bryant

                    **UNITED STATES DISTRICT COURT**
17                  **CENTRAL DISTRICT OF CALIFORNIA**
                            **EASTERN DIVISION**
18

19  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
             Plaintiff,
20
          v.                             **DECLARATION OF PAULA D.
21                                       GARCIA IN SUPPORT OF CARTER
    MATTEL, INC., a Delaware             BRYANT AND MGA'S REQUEST FOR
22  Corporation,                         CLARIFICATION,
                                         RECONSIDERATION AND/OR
             Defendant.                  FURTHER PROTECTION**
23

24  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
25  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.

26

27

28

    LA2:823147.1                                    DECLARATION OF PAULA D. GARCIA
                                                     CV 04-09049 SGL (RNBX)

                                                     EXHIBIT 2

                                                     2-23

                                                     PAGE 27

I, Paula D. Garcia, declare and state:

1.     I have personal knowledge of the following and, if called upon to do so, could competently testify thereto under oath.

2.     I am employed by MGA Entertainment, Inc. as Vice President of Product Design and Development. In this position, I am responsible for the design and development of some of MGA's line of "Bratz" dolls. I also work closely with Carter Bryant, the creator of the original "Bratz" doll drawings, on MGA's development of some of the "Bratz" line.

3.     MGA's "Bratz" products, first released in the summer of 2001, are now sold worldwide and compete directly with certain products marketed by Mattel, Inc. ("Mattel").

4.     Without question, a toy manufacturer's unreleased toy concepts, *i.e.*, those that have not been made public, are among its most highly valuable trade secrets. The drawings and designs for those concepts represent works in progress and ideas for advancing and developing product lines. Although such drawings and designs are valuable even *after* the product's public release, their value is enormous prior to their public release because it is the new ideas and designs that are most likely to generate new sales.

5.     MGA protects its product designs and drawings through a number of ways. For example, employees are required to sign confidentiality agreements, computers are password protected, our product design buildings have security guards who prohibit entry to unauthorized personnel and who check even authorized personnel on their way out. Even vendors, manufacturers, suppliers and other third parties who may see a product design late in the development process are required to sign strict confidentiality agreements.

6.     MGA's drawings for some of its yet-unreleased "Bratz" products are even more closely protected. When we begin to develop a new "Bratz" line, only a very limited number of people know about it. In fact, with respect to some new

EXHIBIT 2

PAGE 28

1  "Bratz" products, Carter Bryant and I are the *only* people who know what the

2  concept is and who see the early product drawings. Even after I approve and we

3  have finalized the concept for those dolls, only a small number of people on the

4  "Bratz" development team have exposure to the drawings.

5       7.      The creative development process is one that is fluid, not static. To

6  develop a product, we may create and develop scores of drawings that we modify

7  and improve throughout the development cycle. At MGA, the development process

8  is constant and extremely rapid. In fact, MGA, which is not burdened by extensive

9  corporate bureaucracy, is known in the toy industry for its development speed and

10  market responsiveness. Often in this fast-paced development process, we go back

11  to, or build on, prior drawings. To be forced to turn over these drawings throughout

12  the development process before the product line is finalized, particularly as we are

13  operating under such short development cycles, would not only substantially

14  compromise the strict confidentiality measures that we have in place but would be

15  extremely disruptive to our ability to do business and therefore significantly impact

16  our ability to compete.

17

18       Dated:  February 23, 2007

19

20                                                        _____
                                                         Paula D. Garcia
21

22

23

24

25

26

27

28

1-02-823497.1                          - 3 -                DECLARATION OF PAULA D. GARCIA
                                                           CV 04-09049 SGL (RNBx)

EXHIBIT 2

PAGE 27

# Exhibit 3

1  DALE M. CENDALI (admitted *pro hac vice*)
   DIANA M. TORRES (S.B. #162284)
2  JAMES P. JENAL (S.B. # 180190)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA  90071-2899
4  Telephone:  (213) 430-6000
   Facsimile:   (213) 430-6407
5  Email:        jjenal@omm.com

6  Attorneys for MGA Entertainment, Inc.

7  DOUGLAS A. WICKHAM (S.B. #127268)
   KEITH A. JACOBY (S.B. #150233)
8  LITTLER MENDELSON
   A Professional Corporation
9  2049 Century Park East, 5th Floor
   Los Angeles, CA  90067.3107
10 Telephone:  (310) 553-0308
   Facsimile:   (310) 553-5583
11 Email: dwickham@littler.com

12 Attorneys for CARTER BRYANT

13            UNITED STATES DISTRICT COURT
14            CENTRAL DISTRICT OF CALIFORNIA
15                   EASTERN DIVISION

| | |
|---|---|
| 16  CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
| 17                 Plaintiff, |  |
|          v. | **DISCOVERY MATTER** |
| 18  MATTEL, INC., a Delaware | **CARTER BRYANT AND MGA** |
| 19  Corporation, | **ENTERTAINMENT INC.'S MOTION FOR CLARIFICATION OF THE** |
| 20                 Defendant. | **DISCOVERY MASTER'S JANUARY 25, 2007 ORDER** |
| 21  | **OR FOR PROTECTIVE ORDER PURSUANT TO RULE 26(c)** |
| 22  AND CONSOLIDATED ACTIONS | [To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006] |
| 23 |  |
| 24 | Discovery Cut-off:  None Set |
| 25 | Pre-trial Conference:  None Set |
|  | Trial Date:  None Set |
| 26 |  |

27
28

MTN. FOR CLARIFICATION OF JAN. 25,
2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT 3

PAGE 30

2-23

I.     **INTRODUCTION**

MGA Entertainment, Inc. ("MGA") and Carter Bryant respectfully submit this motion for clarification of the Discovery Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007 (the "Order"), or in the alternative, for a protective order pursuant to Federal Rule of Civil Procedure 26(c). The Order, which granted Mattel's motion against Bryant with respect to documents relating to the development of Bratz and other projects that Bryant worked on for MGA, arguably requires that Bryant produce the drawings and designs for MGA products on which he worked[1] and that are currently under development and not yet released to the public. Such drawings and designs are not relevant to the claims at issue in this case and are highly sensitive documents, and should therefore be distinguished from the general category of documents referenced in the Order. MGA and Bryant therefore respectfully request a clarification that the Order does not require the production of drawings or designs for products that have not yet been released. In the alternative, MGA and Bryant move for a protective order providing that the production of such documents is not required or will not be required until after the products have been released.

II.    **FACTUAL BACKGROUND**

The Order granted Mattel's motion to compel the production of documents in Bryant's possession relating to the development of Bratz and any other projects that Bryant worked on for MGA, rejecting Bryant's objections on relevancy and overbreadth grounds to the production of such documents relating to work Bryant performed for MGA after June 30, 2001. (Order, 12-13.) Although neither party briefed or argued the issue with respect to products currently in development, Mattel has taken the position that the broad scope of the Order requires that Bryant

---

[1] Bryant is involved in only some "Bratz" dolls.

2

MTN. FOR CLARIFICATION OF JAN. 25, 2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT _3_

produce drawings and designs in his possession for products currently under development and not yet released to the public.

MGA's "Bratz" products, first released in the summer of 2001, are now sold worldwide and compete directly with certain products marketed by Mattel. (*See* Declaration of Paula D. Garcia in Support of Carter Bryant and MGA's Request for Clarification, Reconsideration and/or Further Protection, dated February 9, 2007 ("Garcia Decl."), ¶ 3.) Without question, a toy manufacturer's unreleased toy concepts, *i.e.*, those that have not been made public, are among its most highly valuable trade secrets. (Garcia Decl., ¶ 4.) The drawings and designs for those concepts represent works in progress and ideas for advancing and developing product lines. (Garcia Decl., ¶ 4.) Although such drawings and designs are valuable even *after* the product's public release, their value is enormous prior to their public release because it is the new ideas and designs that are most likely to generate new sales. (Garcia Decl., ¶ 4.)

The creative development process is one that is fluid, not static. (Garcia Decl., ¶ 7.) To develop a product, MGA employees may create and develop scores of drawings that they modify and improve throughout the development cycle. (Garcia Decl., ¶ 7.) At MGA, the development process is constant and extremely rapid. (Garcia Decl., ¶ 7.) In fact, MGA, which is not burdened by extensive corporate bureaucracy, is known in the toy industry for its development speed and market responsiveness. (Garcia Decl., ¶ 7.) Often in this fast-paced development process, MGA goes back to, or builds on, prior drawings. (Garcia Decl., ¶ 7.)

MGA protects its product designs and drawings through a number of ways. For example, employees are required to sign confidentiality agreements, computers are password protected, MGA's product design buildings have security guards who prohibit entry to unauthorized personnel and who check even authorized personnel on their way out. (Garcia Decl., ¶ 5.) Even vendors, manufacturers, suppliers and

3

MTN. FOR CLARIFICATION OF JAN. 25, 2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT 3

PAGE 32

other third parties who may see a product design late in the development process are required to sign strict confidentiality agreements. (Garcia Decl., ¶ 5.)

MGA's drawings for some of its yet-unreleased "Bratz" products are even more closely protected. When MGA begins to develop a new "Bratz" line, only a very limited number of people know about it. (Garcia Decl., ¶ 6.) In fact, with respect to some new "Bratz" products, there are *only two* people at most – Carter Bryant (for those dolls on which he works) and Paula Garcia – who know what the concept is and who see the early product drawings. (Garcia Decl., ¶ 6.) Even after Garcia approves and the concept is finalized, only a small number of people on the "Bratz" development team have exposure to the development drawings. (Garcia Decl., ¶ 6.)

MGA and Bryant have informed Mattel of the risk to both sides that current product designs might be compromised by this litigation, and requested that Mattel "agree to a limitation on the disclosure of product drawings and designs for product in development until after that product has been made available for public sale." (Declaration of Diana M. Torres in Support of MGA's Motion for Clarification of the Discovery Master's January 25, 2007 Order or for Protective Order Pursuant to Rule 26(c), dated February 15, 2007 ("Torres Decl."), Exh. A.) On February 7, 2007, Mattel rejected this proposal, and asserted that designs for MGA products currently in development might still be relevant because they could conceivably include designs "to which Mattel *may* have rights." (Torres Decl., Exh. A.) (emphasis added). Although the parties had further discussions regarding the disclosure of product drawings and designs for product in development, they were unable to reach an agreement, even though MGA and Bryant offered to treat Mattel's documents reciprocally. (Torres Decl.,¶3.)

## III.   **ARGUMENT**

Even if some of the "Bratz" drawings that Bryant created for MGA after June

4

EXHIBIT 3

PAGE 33

MTN. FOR CLARIFICATION OF JAN. 25, 2007 ORDER
CV 04-09049 SGL (RNBX)

30, 2001 may be relevant to claims at issue in this action, drawings for unreleased products are not.  Further, such drawings are highly valuable trade secret documents whose disclosure, particularly prior to the products' release, could severely jeopardize MGA's business.

### A.   No Party Should Be Required To Produce Drawings For Unreleased MGA Products Because Such Drawings Are Not Relevant To Any Claim Or Defense In This Litigation

Drawings relating to products currently under development are not relevant to any of Mattel's claims.  As an initial matter, Mattel cannot possibly have suffered any cognizable injury relating to MGA products that have not yet been released, and indeed has never before taken the position that such products are relevant.

Specifically, drawings are not relevant to Mattel's counterclaim for copyright infringement.  Mattel's complaint clearly indicates that its copyright claim is based on its allegation that Bryant created the original "Bratz" drawings *while employed at Mattel.* (1/12/07 Complaint ¶26.)  Mattel did not argue in its motion papers or at oral argument that drawings and designs for products *currently* under development – over six years after the termination of Bryant's employment at Mattel – are relevant to its copyright infringement or ownership claims.  Indeed, at oral argument on Mattel's motion for leave to amend its complaint, Mattel's lead counsel, John Quinn, stated that Mattel's copyright theories rest on its contention that Bryant created the original "Bratz" drawings while employed at Mattel. (Torres Decl., ¶4.)  Another Mattel attorney, Michael Zeller, confirmed this during a meet and confer on February 12, 2007.  (Torres Decl., ¶4.)  Such documents are similarly not relevant to any of Mattel's claims in its original complaint, which alleged only that Bryant breached his confidentiality obligations *while employed by Mattel.* (04/27/04 Complaint ¶12.)  Mattel has repeatedly confirmed that it has only ever stated alleged claims for employment-based duties in the *Mattel v. Bryant*

action.[2] Designs and drawings for products currently under development, over six years later, therefore have no relevance to Mattel's original contract and fiduciary claims.

Nor are such documents relevant to Mattel's other counterclaims. Mattel's trade secret claim is based on allegations of theft of *business information*, not of designs and drawings. Consequently, designs and drawings are not relevant to any of Mattel's counterclaims founded on its allegations of trade secret theft. Moreover, even if designs and drawings were relevant to Mattel's trade secret claim, Mattel has failed to provide a designation of its alleged trade secrets "with particularity," as called for by the California Code of Civil Procedure section 2019.210 (formerly 2019(d)), which provides that "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." Further, discovery on all of Mattel's other claims, which are factually dependent on its allegations of trade secret misappropriation, must similarly be stayed pending a more particularized

[2] For example, in Mattel's July 12, 2004 Reply in Support of Motion for Remand, it stated, "Mattel has alleged breach of contract and other state law claims for defendant's violations of his employment agreement and state law duties. Nowhere does the Complaint invoke remedies under the Copyright Act, and none of Mattel's claims alleges copyright infringement under 17 U.S.C. § 106. To the contrary, even…the profits disgorgement and injunction sought by Mattel are expressly for breach of *contract*. Both of these remedies are also authorized by state contract law and, in fact, injunctive relief is authorized by the terms defendant's Employment Agreement with Mattel." (Torres Decl., Exh. B.) (emphasis in original). Mattel also has stated that its complaint in *Mattel v. Bryant* is limited to claims based on state-law employment-based duties in the following additional examples:

- Mattel's June 14, 2004 Motion to Remand, at 7-10 (Torres Decl., Exh. C);
- Mattel's November 30, 2004 Motion for Order Remanding Action (Torres Decl., Exh. D), at 21 ("the claims arise under state, not federal law");
- Mattel's December 6, 2004 Motion to Dismiss Bryant's Complaint for Declaratory Relief (Torres Decl., Exh. E). at 11 ("To be sure, Mattel has sued Bryant, but not for copyright infringement); and
- Mattel's July 22, 2005 Opening Brief for Appellant Mattel, Inc. (Torres Decl., Exh. F), at 30 ("Mattel's state-law claims against Bryant called into question Bryant's rights to Bratz…")

identification of the trade secrets allegedly misappropriated. *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2nd Dist. 2005) (where all of the plaintiff's 10 claims were "factually dependent" on its trade secret claim, discovery on any of the claims could only commence after the allegedly misappropriated trade secrets had been identified with reasonable particularity).

But even if it is determined that such documents *are* relevant to any of Mattel's counterclaims, discovery relating to those claims may ultimately be unnecessary. Judge Larson recently issued a scheduling order setting trial for Mattel's original claims in February, 2008, with discovery continuing thereafter for, and trial on, MGA's affirmative claims and Mattel's counterclaims later that year, in March and July, respectively. Thus, even if it is determined that drawings and designs relating to unreleased products may conceivably be relevant to Mattel's counterclaims, the immediate production of such documents should not be required at this time.

**B.     No Party Should Be Required To Produce Drawings For Unreleased MGA Products In Development Because Such Drawings Are Extremely Valuable And The Protective Order Does Not Provide Adequate Protection**

In the event determines that drawings for unreleased MGA products under development are somehow relevant and properly within the scope of the Court's Order, MGA and Bryant move in the alternative for a protective order pursuant to Federal Rule of Civil Procedure 26(c) providing additional protections not currently available under the protective order currently in place. Rule 26(c) provides for the issuance of a protective order upon motion by a party that has conferred in good faith in an effort to resolve the dispute without court action, and for good cause shown. As stated above, Mattel has rejected Bryant and MGA's efforts to resolve this dispute.

Rule 26(c) provides for the issuance of "any order which justice requires," and suggests various additional methods of protection that are not available to

MTN. FOR CLARIFICATION OF JAN. 25, 2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT 5

PAGE 36

MGA under the confidentiality agreement currently in place. Such an order could provide for discovery "only on specified terms and conditions, including a designation of the time or place." FED. R. CIV. P. 26(c)(2). Specifically, the rule provides for an order "that a trade secret or other confidential research, development, or commercial information not be revealed or revealed only in a designated way." FED. R. CIV. P. 26(c)(7).

In determining whether such an order should be granted, the Ninth Circuit requires that a court balance the risk to the disclosing party of inadvertent disclosure of trade secrets to competitors against the risk to the moving party that protection of the trade secret would impair the prosecution of its claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.) (upholding protective order granting access to source codes and other trade secret materials only to an independent consultant), *cert. denied sub nom.*, *BB Asset Mgmt., Inc. v. Symantec Corp.*, 506 U.S. 869 (1992). The fact that MGA and Mattel are direct competitors weighs significantly in favor of protection of confidential information. *See Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C.*, No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276 *10 (D. Nev. July 24, 2006) ("The courts generally hold that there is a greater likelihood of harm where disclosure of trade secrets is sought in litigation between competitors") (citation omitted).

Drawings for unreleased products fit squarely within this category of trade secret information and "should not be revealed" at all or, at the least, "should not be revealed" prior to public release of the products. FED. R. CIV. P. 26(c)(7). A trade secret is defined under California law as information that "(1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1(d).

Both prongs of this test are met in this case. First, a toy manufacturer's unreleased toy concepts, *i.e.*, those that have not been made public, are among its most highly valuable trade secrets. (Garcia Decl., ¶ 4.) Although such drawings and designs are valuable even *after* the product's public release, their value is enormous prior to their public release because they represent works in progress and new ideas for advancing and developing product lines; it is the new ideas and designs that are most likely to generate new sales. (Garcia Decl., ¶ 4.)

Second, because of their tremendous value, MGA protects its product drawings in a number of ways: restricting access to a very small number of people, requiring strict confidentiality agreements, using password-protected computers, and security guards at their facilities who prohibit entry to unauthorized personnel and who check even authorized personnel on their way out. (Garcia Decl., ¶ 5-6.) And, as set forth above, MGA takes even greater efforts to protect some of its yet-unreleased "Bratz" products, severely restricting access to drawings and other design documents to one or two people even after the concept is finalized. (Garcia Decl., ¶ 6.)

There is good cause for heightened protection of drawings for unreleased products. As set forth above, any relevance of such drawings to the issues in *Mattel v. Bryant,* which, according to Mattel, has only ever stated alleged claims for employment-based duties, is marginal at best. In contrast, the potential damage to MGA of any disclosure of the drawings, or even the concepts represented by the drawings, is substantial. This potential disclosure is real: both sides have a substantial number of personnel working on this case. Indeed, MGA has counted 13 lawyers at Quinn Emanuel who have recently been named in or on briefs submitted by Mattel. Without question, there are numerous other staff members and outside vendors -- such as copy services, couriers, court reporters, experts and their respective staffs -- who also handle documents in this case on a regular basis.

MTN. FOR CLARIFICATION OF JAN. 25,
2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT 3

PAGE 38

The current Protective Order allows disclosure to each of these groups of people even for documents restricted as "Attorneys Eyes Only." The fact that such a large number of people can have access to documents accorded even the highest level of confidentiality under the Protective Order, by necessity, magnifies the potential for disclosure, which, even if inadvertent, could be tremendously valuable to a competitor and tremendously harmful to MGA.

Moreover, it has been Mattel's practice to summarize or paraphrase the contents of confidential documents or testimony in briefs and other papers filed with the Court.[3] If Mattel's attorneys were allowed to review drawings of unreleased MGA products in development and then summarize them even conceptually that information would be publicly available -- and hence available to Mattel itself and other MGA competitors. This possibility alone warrants delaying the production of drawings of MGA's products in development until after the products themselves have been released.

### C.     Production Of Drawings For MGA Products Under Development Prior To Their Public Release Would Impose An Unwarranted Burden

Good cause to delay production is further warranted given the broad scope of the drawings requested. In *Intersong-USA, Inc. v. CBS, Inc.*, a case of alleged copyright infringement by Julio Iglesias and others, the plaintiff had requested information on *all* musical compositions that the defendants had authored. 1 Fed.

---

[3] In fact, as recently as February 5, in its lengthy filing entitled "Mattel's Portions of Rule 26(f) Report," Mattel included confidential information regarding early "Bratz" development in its descriptions of documents designated "attorneys' eyes only" and of deposition testimony also designated "attorneys' eyes only." (*See* Torres Decl., Exh. G.) For instance, Mattel described information found on a confidential invoice provided to MGA by one of its vendors, Veronica Marlow. (Torres Decl., Exh. G at 4:16-19. ) Mattel also used information found in an email designated "attorney's eyes only" to describe the work performed by Stephen Lee and Cecelia Kwok, employees of MGA Hong Kong, on "Bratz." (Torres Decl., Exh. G at 2:13-15, 3:3-5.) Mattel also used the AEO testimony of MGA's CEO, Isaac Larian, purportedly to describe the duties of Paula Garcia, MGA's Vice President of Product Design and Development and a product manager on the "Bratz" line. (Torres Decl., Exh. G at 2:1-4.)

R. Serv. 3d 609 (S.D.N.Y. 1985). Recognizing the overbreadth of this request, the Court held that the defendants should produce information for musical compositions "actually published" over a ten-year period. *Id.* Similarly, production of drawings in this case should be limited to drawings for products that have been released to the public.

More significantly, there is good cause for delayed production given the tremendous disruption it would cause MGA to be required to produce drawings by Bryant of unreleased products in development. The creative development process is one that is fluid, not static. (Garcia Decl., ¶ 7.) For some "Bratz" products, Bryant may create and develop scores of drawings that he and Ms. Garcia modify and improve throughout the development cycle. (Garcia Decl., ¶ 7.) At MGA, the development process is constant and extremely rapid. (Garcia Decl., ¶ 7.) In fact, MGA, which is not burdened by extensive corporate bureaucracy, is known in the toy industry for its development speed and market responsiveness. (Garcia Decl., ¶ 7.) Often in this fast-paced development process, MGA goes back to, or builds on, prior drawings. (Garcia Decl., ¶ 7.) To be forced to turn over these drawings throughout the development process before the product line is finalized, particularly as MGA is operating under such short development cycles, would not only substantially compromise the strict confidentiality measures that MGA has in place but would be extremely disruptive to its ability to do business and therefore significantly impact its ability to compete. (Garcia Decl., ¶ 7.)

**D.     In The Alternative, Any Production Of Drawings For Unreleased MGA Products Should Be Subject To Far Greater Protection Than Currently Available Under The Protective Order**

In the event that production of these drawings by Bryant of products in development is deemed necessary prior to public release, Rule 26(c) provides for the issuance of an order stating that confidential documents may be "revealed only in a designated way." FED. R. CIV. P. 26(c)(7). If it is ultimately determined that

11

MTN. FOR CLARIFICATION OF JAN. 25, 2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT  3

PAGE  40

such documents must be produced prior to release of the associated products, MGA and Bryant request a protective order requiring that "discovery be conducted with no one present except persons designated by the court." FED. R. CIV. P. 26(c)(5); *see Brown Bag Software*, 960 F.2d at 1471 (protective order providing for disclosure to an independent consultant constituted a "reasonable balance" between the plaintiff's interest in disclosure and the defendant's interest in confidentiality). For example, as stated above, MGA has proposed to Mattel that an escrow agreement be put in place, under which designs and drawings would be placed in escrow for an expert to review, but could not be copied or taken out by any party, counsel, or expert. *See Forterra Sys. v. Avatar Factory*, No.: C-05-04472 PVT, 2006 U.S. Dist. LEXIS 63100 *4 (N.D. Cal. August 22, 2006) (requiring that production of source code be made only to a designated expert of the moving party). Given that MGA will be seeking discovery relating to "My Scene" and other Mattel products, both parties would have an interest in preventing the disclosure of drawings and designs for products not yet released to the public.

Finally, if none of the previously-requested resolutions are deemed acceptable, MGA and Bryant respectfully request, as a last alternative, a protective order providing that drawings and designs for unreleased products be produced for inspection only by an independent expert at the offices of MGA's counsel, with no copying, photographing or sketching permitted. *See* FED. R. CIV. P. 26(c)(2).

MTN. FOR CLARIFICATION OF JAN. 25, 2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT 3

PAGE 41

IV.   **CONCLUSION**

For the foregoing reasons, MGA and Bryant ask that the Court clarify that the order does not require the production of drawings by Bryant for "Bratz" dolls not yet released to the public.  Alternatively, MGA and Bryant respectfully request a protective order pursuant to Rule 26(c) providing that such documents need not be produced, providing for the production of such documents only after the products have been released to the public, or providing for production under other very restrictive conditions to protect their confidentiality.

Dated:  February 23, 2007          O'MELVENY & MYERS LLP

By:  Diana M. Torres
Attorneys for MGA Entertainment, Inc.


Dated:  February 23, 2007          LITTLER MENDELSON, P.C.

By: Douglas A. Wickham
Attorneys for Carter Bryant

13

MTN. FOR CLARIFICATION OF JAN. 25,
2007 ORDER
CV 04-09049 SGL (RNBX)

EXHIBIT _3_

PAGE _42_

# Exhibit 4

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email:      jjenal@omm.com

6   Attorneys for MGA ENTERTAINMENT, INC.

7   DOUGLAS A. WICKHAM (S.B. #127268)
    KEITH A. JACOBY (S.B. #150233)
8   LITTLER MENDELSON
    A Professional Corporation
9   2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
10  Telephone: (310) 553-0308
    Facsimile: (310) 553-5583
11  Email: dwickham@littler.com

12  Attorneys for CARTER BRYANT

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

16  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-2727)
17              Plaintiff,
                                        **DISCOVERY MATTER**
        v.
18                                      **MGA ENTERTAINMENT INC. AND**
    MATTEL, INC., a Delaware            **CARTER BRYANT'S JOINT REPLY**
19  Corporation,                        **IN SUPPORT OF ITS MOTION FOR**
                                        **CLARIFICATION OF THE SPECIAL**
                Defendant.              **MASTER'S JANUARY 25, 2007**
20                                      **ORDER OR FOR PROTECTIVE**
21                                      **ORDER PURSUANT TO RULE 26(c)**

22  AND CONSOLIDATED ACTIONS           [To be heard by Discovery Master Hon.
                                        Edward Infante (Ret.) Pursuant to the
23                                      Court's Order of December 6, 2006]

24                                      Discovery Cut-offs:  October 22, 2007
25                                      Pre-trial Conference: January 14, 2008
                                        Trial Date:          February 12, 2008
26

27

28

                                        EXHIBIT _4_

                                        PAGE _43_                3-7

Calendar 3/7/07

EXHIBIT 4

PAGE 44

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................2

II.   ARGUMENT .......................................................................................3

    A.   Mattel Should Not Be Allowed To Compel Production Of Such Highly Valuable Design Documents Without Addressing The Issue Openly In Its Papers And Thereby Allowing The Special Master To Weigh The Danger Of Disclosure Against Their Nonexistent (Or At Most Limited) Relevance ......................................3

    B.   The Potential Danger of Production of Such Valuable Trade Secret Documents Far Outweighs Their Relevance To The Claims And Defenses ............................................................................4

        1.   Drawings Relating to Products In Development Are Not Relevant to Any of Mattel's Claims ...........................................4

        2.   There Is No Need For Production Of MGA's Most Closely Held Trade Secrets At This Time ...................................7

    C.   The Current Protective Order Does Not Provide Adequate Protection for MGA's Most Closely Held Trade Secrets .....................7

III.  CONCLUSION ...................................................................................9

- i -

EXHIBIT _4_

PAGE _45_

# I.   **INTRODUCTION**

By pointing to the Discovery Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007 (the "Order"), Mattel seeks to require Bryant to produce all drawings for Bratz-related products, even those drawings that are for products currently in development. These products will not be publicly available until some are released to U.S. retail markets in August or September of 2007, and others in the spring of 2008. It is beyond dispute that these drawings are among MGA's most closely guarded and highly valuable trade secrets, and even the most restrictive provision of the Protective Order is inadequate to safeguard such commercially sensitive documents. Because no party briefed or argued this issue on Mattel's Motion to Compel, MGA and Bryant do not believe the Special Master considered this issue or ruled that Mattel is entitled to receive and review these highly valuable documents. Therefore, MGA and Bryant seek clarification that the Order does not require Bryant to produce MGA drawings in Bryant's possession for products currently in development and that have not been commercialized. In the alternative, MGA and Bryant seek reconsideration of that Order or further protection for MGA's highly valuable design documents.[1]

---

[1] Mattel attempts to characterize this motion as a motion for reconsideration rather than one for clarification and/or further protection. Mattel's efforts are pointless, however, as MGA and Bryant filed their motion pursuant to Federal Rules of Civil Procedure that govern all three types of motions. Moreover, Mattel's own cited authorities recognize that a motion for reconsideration is a motion seeking a "substantive change of mind." *Bordallo v. Reyes*, 763 F.2d 1098, 1101-1102 (9th Cir. 1985) (treating motion as a motion for clarification because it did not request a "substantive change of mind by the court," as required for a motion for reconsideration); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (motion properly characterized as a Rule 60 motion where no substantive change of mind by the court was required); *see also Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 635-636 (9th Cir. 1989) (same). An order cannot be *reconsidered* if the issue at hand was never *considered* in the first place. In this instance, however, the procedural vehicle of the motion is immaterial as the relevant factors strongly weigh against allowing Mattel access to the drawings at issue, regardless of the type of motion.

EXHIBIT 4

PAGE 46

## II.  **ARGUMENT**

### A.  **Mattel Should Not Be Allowed To Compel Production Of Such Highly Valuable Design Documents Without Addressing The Issue Openly In Its Papers And Thereby Allowing The Special Master To Weigh The Danger Of Disclosure Against Their Nonexistent (Or At Most Limited) Relevance**

MGA and Bryant make this motion because no party, nor in all likelihood the Special Master, understood that MGA's extremely valuable drawings for products in development were at issue in Mattel's motion to compel Bryant to produce documents.[2] These drawings were not expressly referenced in the document requests at issue, no party addressed them in briefing or at oral argument, and not surprisingly, the Order does not refer specifically to them. Nonetheless, Mattel now seeks to take unfair advantage of the Order to compel production of these drawings without having provided MGA or Bryant adequate notice and a fair opportunity to object to their production. Mattel should not be permitted to gain such an unfair advantage by sneaking the issue past MGA, Bryant or the Special Master.

Where a party seeks to compel the production of highly valuable trade secrets from its competitor, a Court must weigh the evidentiary value of those trade secrets against the potential prejudice of their disclosure.[3] *See, e.g., Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979); *Centurion Industries, Inc. v.*

---

[2] If MGA had known that Mattel sought to compel production of such drawings from Bryant's possession, MGA would have opposed the motion or sought a protective order to safeguard its trade secrets, and Mattel cannot credibly contend otherwise. Similarly, if Bryant had understood Mattel to be seeking these drawings, he would have raised it in his opposition brief and at argument. On the other hand, if Mattel *did* anticipate using the Order to obtain production of these drawings, then it apparently has schemed deliberately to obtain them without addressing the issue head-on.

[3] This test is comparable to that set forth for greater protection under Rule 26(c), and thus is applicable here regardless of the procedural posture of this motion. Under controlling Ninth Circuit law, a protective order is not adequate if the risk of disclosure of trade secrets to competitors outweighs the risk that protection of the trade secret would impair the prosecution of the movant's claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.), *cert. denied sub nom., BB Asset Mgmt., Inc. v. Symantec Corp.*, 506 U.S. 869 (1992). This review must be done on a case-by-case basis regardless of the counsel's in-house or outside status, because "proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any counsel, whether in-house or retained.*" *Brown Bag*, 960 F.2d at 1470 (emphasis added.)

EXHIBIT __4__

PAGE __42__

1   *Warren Steurer & Associates*, 665 F.2d 323, 325 (10th Cir. 1981); *Coca-Cola*

2   *Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del.

3   1985).  In balancing these competing interests, *the court must give strong weight to*

4   *the harm that may result from disclosure to a party who is in competition with the*

5   *holder of the trade secret. See Puritan-Bennett Corp. v. Pruitt*, 142 F.R.D. 306,

6   310 (S.D. Iowa 1992) (disclosure of trade secrets is particularly harmful when made

7   to a competitor); *Coca-Cola*, 107 F.R.D. at 293 (same, *citing United States v.*

8   *United Fruit Co.*, 410 F.2d 553, 556 (5th Cir.), *cert. denied*, 396 U.S. 820, 90 S. Ct.

9   59 (1969)).  Here, the risk that Mattel, a direct competitor of MGA, could make use

10  of MGA's plans for products in development is a significant risk weighing heavily

11  in favor of nondisclosure.  Because this issue was not raised, MGA did not have a

12  fair opportunity to assert its rights to protect its trade secrets, and the Special Master

13  did not engage in the kind of balancing that would be expected if the Order actually

14  contemplated production of these trade secrets.

15  **B.  The Potential Danger of Production of Such Valuable Trade**
    **Secret Documents Far Outweighs Their Relevance To The Claims**
16  **And Defenses**

17  **1.  Drawings Relating to Products In Development Are Not**
    **Relevant to Any of Mattel's Claims**
18

19      Mattel's attempt to avoid openly addressing the propriety of an order

20  compelling production of drawings for products in development appears to have

21  been a calculated attempt to avoid having the Special Master weigh Mattel's weak

22  relevancy arguments against MGA's extraordinarily strong interests in protecting

23  its crown jewels from disclosure to its competitor Mattel.  As set forth more fully in

24  MGA and Bryant's motion, drawings of MGA's unreleased products in

25  development are simply not relevant to Mattel's claims and can have no bearing on

26  any conceivable injury allegedly suffered by Mattel as those products will not be

27  commercialized until they are released in the fall of 2007 and the spring of 2008.[4]

28  ───────────────
    [4] Mattel's argument that allowing Bryant to withhold drawings of MGA's products in

1    First, Mattel's argument that MGA's drawings of products currently in

2    development are relevant to its claims of "ongoing" fiduciary and contract breaches

3    and copyright infringements fails. In making this assertion, Mattel directly

4    contradicts its own consistent position that its claims allege wrongdoing only *while*

5    *Bryant was employed by Mattel.* (Motion at 5.)[5]

6    Mattel's claims that such drawings are relevant to its alleged trade secret

7    claims similarly lack merit. In making this argument, Mattel points to its allegation

8    that MGA stole Mattel's line lists, which allegedly "included information for

9    BARBIE products for the upcoming year." (Zeller Decl. Exh. 9 at ¶ 49.) Mattel

10   alleges, however, that the Barbie line list "for the upcoming year" was a line list

11   that existed and was taken *in the Spring of 2004* (*id.*) and thus would have pertained

12   to products to be released by Mattel in *2005.*[6] Thus, it is inconceivable how

13   MGA's drawings for products currently in development have any bearing on these

14   trade secrets allegations.

15   Nor should Mattel be permitted to take any discovery on its trade secret

16   claims before complying with California Code of Civil Procedure section 2019.210,

17   which requires a party to designate its trade secrets with particularity before it may

18   commence discovery on its trade secret claims. Although Mattel argues that C.C.P.

19   2019.210 does not apply in federal court, this provision of California law applies in

20   federal court because it does not conflict with the Federal Rules of Civil Procedure,

21   which have no analogous trade secret discovery provisions. *Excelligence Learning*

22   development would allow Bryant and MGA to withhold drawings created years ago while
Bryant was at Mattel merely by claiming that they are using these drawings to develop
23   yet-unreleased products is a red herring. MGA and Bryant are not seeking to withhold
documents created before Bryant left Mattel but instead are seeking to withhold only
24   those drawings created in 2006 or later.
    [5] Mattel asserts that it *has* taken such a position before, citing only its own reply in
25   support of its motion to compel the documents at issue. (Opp. at 9 n. 20.) But Mattel
makes no effort to square that position, taken for the first time in an effort to compel the
26   production of as many documents as possible, with the position it had taken many times
previously that its claims were limited to conduct during Bryant's employment at Mattel.
27   [6] Moreover, no party -- not even Mattel --has ever claimed that Mattel's traditional
"Barbie" products are in any way similar to "Bratz." Rather the only allegations of this
28   nature have concerned Mattel's "MyScene" line.

1   *Corp. v. Oriental Trading Co., Inc.*, NO. 5:03-cv-4947 JF (RS), 2004 U.S. Dist.

2   LEXIS 28125, n.3 (N.D. Cal. June 14, 2004) ("since there is no parallel trade secret

3   discovery provision set forth in the Federal Rules of Civil Procedure, the Court

4   utilizes the state's discovery requirements"); *Advante International Corp. v. Mintel*

5   *Learning Technology*, NO. C 05-01022 JW (RS), 2006 WL 3371576 n. 4 (N.D.

6   Cal. November 21, 2006) (same).  Relying solely on a decision by Magistrate Judge

7   Hollows in the Eastern District of California,[7] Mattel wholly ignores the

8   overwhelming number of federal court cases applying C.C.P. § 2019.210.  *See*

9   *HiRel Connectors, Inc. v. United States*, CV 01-11069 DSF (VBKx), 2005 U.S.

10   Dist. LEXIS 44181, *11-12 (C.D. Cal. July 15, 2005) (plaintiff's failure to

11   designate its trade secrets caused significant delay, forcing defendants "to seek the

12   Court's assistance in getting what they were entitled to under section 2019(d)"); *see*

13   *also Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985

14   (S.D. Cal. 1999); *Synapsis v. Evergreen Data Sys.*, NO. C 05-1524 JF, 2006 US

15   Dist LEXIS 53928, 7-8 (N.D. Cal. July 21, 2006); *Neothermia Corp. v. Rubicor*

16   *Medical, Inc.*, 345 F. Supp. 2d 1042 (N.D. Cal. 2004); *Pixion, Inc. v. PlaceWare,*

17   *Inc.*, 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005).  Because the well-established

18   law in this Circuit supports the application of C.C.P. § 2019.210 in federal court,

19   Mattel cannot conduct discovery on its trade secret claims before designating its

20   trade secrets with particularity, and thus cannot demand production of its

21   competitor's current development documents by pointing to its trade secrets

22   claims.[8]

---

23   [7] *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, CIV. NO. S-06-0533 GEB GGH,

24   2007 U.S. Dist. LEXIS 8870 (E.D. Cal. January 29, 2007).  This case appears to be the
*only* decision on this issue that supports Mattel's position and is an outlier that should not

25   be followed.
[8] Recognizing the weakness of its legal argument, Mattel asserts that it has satisfied this

26   requirement by means of a letter identifying well over 14,000 pages of produced
documents. (Zeller Decl. Exh. 15.)  But this purported identification does not designate

27   trade secrets "with particularity" and utterly fails to clarify the scope of Mattel's claims.
Thus, until Mattel identifies with particularity – and in a workable manner – the trade

28   secrets that were allegedly misappropriated, discovery on all of Mattel's claims that are
factually dependent on its trade secret claim must be stayed.

### 2. There Is No Need For Production Of MGA's Most Closely Held Trade Secrets At This Time

Even if drawings of MGA's products in development were relevant to any of Mattel's claims (which they are not), production should not be required at this time. The discovery cut-off for Mattel's original claims concerning Bryant's breach of his employment duties is October 22, 2007. The discovery cutoff for the remainder of the case, including Mattel's counterclaims, is not until March 3, 2008, nearly five months later. (Zeller Decl. Exh. 10.) There is plenty of time after the release of MGA's Fall 2007 products for Mattel to take discovery on the drawings for those products.[9] Despite Mattel's expressed concerns about the costs of such a delay, MGA faces far greater financial concerns over the protection of its valuable trade secrets. The risk that Mattel could make use of MGA's plans for products in development is simply too great. Allowing for a reasonable delay in the production of these drawings until after the release of the relevant products could protect these valuable trade secrets without compromising any party's interests in the litigation. See Intersong-USA, Inc. v. CBS, Inc., 1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985).

### C. The Current Protective Order Does Not Provide Adequate Protection for MGA's Most Closely Held Trade Secrets

Mattel argues that MGA and Bryant's motion should be denied because the current Protective Order provides adequate protection. Mattel is wrong. The Protective Order permits free access to the documents by any one of the many lawyers and personnel at Quinn Emanuel, as well as their copy services, couriers, court reporters, experts and those entities' respective staffs, all of whom could simply leave these drawings lying in the open in their offices and thus facilitate, however inadvertently, the disclosure of these enormously valuable trade secrets.

---

[9] Bryant currently has some drawings for products scheduled to be released in Fall 2008. Because this case is scheduled to be completed by that time, there should be no need for discovery of those drawings at all, as MGA will not have commercialized those products prior to resolution of all issues.

-7-   EXHIBIT 4

PAGE 51

1    Moreover, in addition to the enormous potential for *inadvertent* disclosure of
2    these documents, there is also justifiable concern regarding the possibility of more
3    deliberate disclosure of such documents, as Mattel's counsel has demonstrated a
4    practice of disclosing the contents of documents marked "Attorneys Eyes Only" in
5    public filings. While claiming that its attorneys have "cautiously" kept MGA's
6    confidential information secret, Mattel does not and cannot dispute the specific
7    examples to the contrary identified by MGA. (Motion at n.3.)[10] Thus, the risk of
8    future disclosure of information about MGA's product development plans, whether
9    inadvertent or otherwise, is significant.

10    Mattel's argument that MGA should be bound by the current Protective
11    Order, regardless of its adequacy, simply because MGA participated in negotiating
12    it has no merit. The current protective order was negotiated by the parties at the
13    inception of the case when the only claims in the case were those in Mattel's
14    original complaint against Bryant, which Mattel consistently characterized as
15    referring only to conduct during Bryant's employment by Mattel. MGA was then a
16    third party. Had MGA been aware that Mattel would seek the production of
17    MGA's drawings of unreleased products in development, it most certainly would
18    have objected to their production and, at the very least, insisted upon far greater
19    protections in the Protective Order than are currently in place.

20    Finally, Mattel's attempts to distinguish the case law on which MGA and
21    Bryant rely fail. MGA and Bryant have suggested several forms of additional
22    protection pursuant to Rule 26(c). Attacking each suggestion in systematic fashion
23    as not supported by precedent, Mattel overlooks one key fact: Rule 26(c) provides
24    for the issuance of "*any* order which justice requires," and suggests various forms
25    that such an order could take. FED. R. CIV. P. 26(c). Mattel provides no authority
26    limiting the Court's discretion to fashion an appropriate remedy in this case, and its

27    ───────────────
[10] Mattel attempts to dispute only one of these examples, and fails even there. Mattel's
28    disclosure of the AEO testimony of Mr. Larian far exceeded the scope of the facts
contained in the Times Magazine article cited by Mattel.

EXHIBIT 4

PAGE 52

1    insistence that the Court reject *every* one of MGA's reasonable suggestions should

2    not be rewarded.

3         Finally, Mattel mischaracterizes the authority on which MGA and Bryant

4    rely. For example, in attempting to distinguish *Intersong-USA, Inc. v. CBS, Inc.*,

5    Mattel relies on the Special Master's determination that its requests are not

6    overbroad, even though it is clear that that determination had not been made

7    without drawings for unreleased products in mind.[11] In fact, *Intersong's* restriction

8    of production to compositions "actually published" would be an appropriate remedy

9    in this case, especially given that Mattel has utterly failed to explain the absence of

10   any cognizable injury resulting from drawings for unreleased products. 1 Fed. R.

11   Serv. 3d 609 (S.D.N.Y. 1985).

12   **III.   CONCLUSION**

13        For the foregoing reasons, and for the reasons set forth in its opening brief,

14   MGA and Bryant ask that the Court clarify that the Order does not require the

15   production of drawings by Bryant for "Bratz" dolls not yet released to the public.

16   Alternatively, MGA and Bryant respectfully request limited reconsideration of that

17   Order and/or further protection pursuant to Rule 26(c) by providing that such

18   documents need not be produced until after the products are released to the public.

19

20

21

22

23

24

25

26   [11] Similarly, Mattel provides no explanation for its disingenuous attempt to distinguish

27   *Forterra v. Avatar*, No. C-05-04472 PVT, 2006 U.S. Dist. LEXIS 63100, on the grounds that it involved the "unique context" of source code. Like the source code in that case,

28   drawings for unreleased products are extremely valuable trade secrets whose disclosure would put MGA at a significant competitive disadvantage.

-9-

EXHIBIT 4

PAGE 53

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: March 7, 2007

O'MELVENY & MYERS LLP

By: Diana Torres
Attorneys for MGA Entertainment, Inc.

Dated: March 7, 2007

LITTLER MENDELSON

By: Douglas A. Wickham
Attorneys for Carter Bryant

EXHIBIT 4

PAGE 54

## PROOF OF SERVICE

I, Mila D. Sucgang, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California  90071-2899.  On March 7, 2007, I served the within document:

**MGA ENTERTAINMENT INC. AND CARTER BRYANT'S JOINT REPLY IN SUPPORT OF ITS MOTION FOR CLARIFICATION OF THE SPECIAL MASTER'S JANUARY 25, 2007 ORDER OR FOR PROTECTIVE ORDER PURSUANT TO RULE 26(c)**

☒    by sending by electronic mail the document(s) listed above to the person(s) listed below.

Sandra Chan
Case Manager
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
schan@jamsadr.com

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
michaelzeller@quinnemanuel.com

Douglas A. Wickham, Esq.
Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, Fifth Floor
Los Angeles, CA 90067
dwickham@littler.com; kjacoby@littler.com

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
pglaser@chrisglase.com

LA2:820508.1

EXHIBIT 4    PROOF OF SERVICE

PAGE 55

1    ☒    by causing to be personally served and by sending an electronic mail
          the document listed above to the person listed below.

2

3          Michael T. Zeller, Esq.
          Quinn Emanuel Urquhart Oliver & Hedges, LLP
          865 South Figueroa Street, 10th Floor

4          Los Angeles, CA 90017
          michaelzeller@quinnemanuel.com

5

6          I declare under penalty of perjury under the laws of the United States

7    that the above is true and correct.

8          Executed on March 7, 2007, at Los Angeles, California.

9

10                                              Mila D. Sucgang

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:820508.1                                      PROOF OF SERVICE

EXHIBIT _4_

PAGE _56_

# Exhibit 5

CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                           EASTERN DIVISION

10

11 CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12            Plaintiff,

13       v.                               Consolidated with
                                          Case No. CV 04-09059
14 MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                  **ORDER MODIFYING PROTECTIVE
                                          ORDER**
16

17 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
18 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
19

20                            I. INTRODUCTION

21      Presently pending for decision is MGA Entertainment, Inc.'s ("MGA") and Carter

22 Bryant's ("Bryant") "Motion for Clarification Of The Discovery Master's January 25, 2007 Order

23 Or For Protective Order Pursuant to Rule 26(c)." At issue is whether the January 25, 2007 Order

24

25

26

27

28

EXHIBIT  5

PAGE  57

1    ("Order") requires Bryant to produce drawings and designs in his possession that he created in

2    2006 or later[1] for products currently under development and not yet released to the public.

3    MGA and Bryant filed their motion on February 23, 2007; Mattel submitted an opposition brief

4    on March 2, 2007; and MGA and Bryant submitted a reply brief on March 7, 2007.  The matter

5    was heard via telephonic conference on March 19, 2007, and taken under submission pending the

6    parties' submission of a stipulated protective order, which was received on April 23, 2007.

7         Having considered the motion papers and comments of counsel at the hearing, and for the

8    reasons set forth below, the motion for clarification of the Order is denied.  There is good cause,

9    however, to modify the current protective order to further limit the disclosure of drawings and

10   designs for MGA products currently under development and not yet released to the public.

11                                    II. BACKGROUND

12        The Order that is the subject of this motion granted Mattel's motion to compel Bryant to

13   produce documents responsive to numerous document requests relating to the development of

14   Bratz and other projects that Bryant worked on for MGA.  In ruling on Mattel's motion, the

15   Discovery Master rejected Bryant's relevancy and overbreadth objections to producing

16   documents relating to work that Bryant performed for MGA after the release of the First

17   Generation Bratz dolls on June 30, 2001.

18        Neither party specifically addressed whether Mattel was entitled to drawings and designs

19   for MGA products on which Bryant worked and that are currently under development and not yet

20   released to the public.  Mattel has taken the position that the Order requires production of such

21   documents.

22        During the meet and confer process, MGA and Bryant requested that Mattel "agree to a

23   limitation on the disclosure of product drawings and designs for products in development until

24   after that product has been made available for public sale."  Torres Decl., Ex. A.  Mattel rejected

25

26   ─────────────────

        [1]   MGA and Bryant's Reply Brief at 4:28-5:28, n. 4.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                          2

EXHIBIT 5

PAGE 58

1  the proposal, asserting that the proposal "would allow Bryant and/or MGA to unilaterally deem

2  something to be 'in development' and thus not produce it, including for designs Bryant previously

3  created and to which Mattel may have rights." Torres Decl., Ex. A. The parties had further

4  discussions regarding the disclosure of drawings and designs for products in development but

5  were unable to reach an agreement.

6      MGA and Bryant now request "a clarification that the Order does not require the

7  production of drawings or designs for products that have not yet been released." MGA and

8  Bryant's Motion at 2:13-15. In the alternative, MGA and Bryant move for a protective order

9  pursuant to Rule 26(c), Fed.R.Civ.P., providing that drawings or designs for products that have

10 not yet been released (1) need not be produced, or (2) shall be produced only after the products

11 have been released to the public, or (3) shall be produced under other very restrictive conditions

12 to protect their confidentiality. MGA and Bryant contend that "[e]ven if some of the 'Bratz'

13 drawings that Bryant created for MGA after June 30, 2001, may be relevant to claims at issue in

14 this action, drawings for unreleased products are not." MGA and Bryant's Motion at 4:28-5:2.

15 Further, they contend that such drawings are highly valuable trade secret documents whose

16 disclosure could severely jeopardize MGA's business.

17     Mattel opposes the motion on numerous grounds. First, it contends that the motion for

18 clarification is, in effect, an improper motion for reconsideration that does not satisfy the

19 standards for reconsideration, and is another attempt to withhold highly probative evidence that

20 bears directly on Mattel's claims and defenses. Mattel contends that the Order clearly requires

21 Bryant to produce his drawings, and that MGA and Bryant are now precluded from withholding

22 documents relating to unreleased products because they failed to raise the issue earlier. Second,

23 Mattel asserts that drawings and designs for unreleased products are relevant to its claims for

24 breach of contract, breach of fiduciary duty, breach of the duty of loyalty, copyright infringement,

25 and misappropriation of trade secrets. Third, Mattel contends that the protective order currently

26 in place, which addresses trade secret information in particular, is adequate to protect MGA and

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                                3

EXHIBIT 5

PAGE 59

1    Bryant's interests.  Fourth, Mattel contends that the additional protections MGA and Bryant seek

2    under Rule 26(c), Fed.R.Civ.P., would hamstring its ability to investigate and prosecute its claims

3    and defend against MGA's claims.

### III. DISCUSSION

4

5    A. The Order Requires Production of Drawings and Designs for Products Not Yet Released

6              The Order clearly requires Bryant to produce all documents in his possession, custody or

7    control relating to Bratz and other products that Bryant has worked on with or for MGA.  Among

8    other things, the Order requires Bryant to produce documents responsive to Mattel's Request Nos.

9    12, 19, 40, 41, and 54.  Request No. 12 seeks production of all documents that refer or relate to

10   work or services that Bryant performed for or on behalf of MGA after October 20, 2000.  See

11   Zeller Decl., Ex. 4.  Request No. 19 seeks production of all documents that refer or relate to

12   designs that Bryant created, authored, produced, conceived of or reduced to practice after October

13   20, 2000 as purported "works-made-for-hire," whether in whole or in part for or on behalf of

14   MGA.  Id.  Request No. 40 seeks production of documents that refer or relate to Bryant's

15   participation in the conception, creation, design, development, sculpting, tooling, production or

16   manufacture of Bratz.  Id.  Request No. 41 seeks production of all documents that refer or relate

17   to designs for Bratz.  Id.  Request No. 54 seeks production of all prototypes, models, samples and

18   tangible items that refer or relate to Bratz.  Id.  Each of these requests covers drawings and

19   designs for Bratz products, regardless of when the drawings and designs were created or whether

20   the products to which they relate have been released.

21              Nowhere does the Order exempt, or even arguably exempt, from production responsive

22   documents relating to products that have not been released.  To the contrary, the Order rejects

23   Bryant's objections based upon relevancy and overbreadth.  In particular, the Order rejects

24   Bryant's "First Generation Bratz" limitation, which sought to limit discovery to only those

25   documents relating to the first dolls sold to the public in the summer of 2001.  Thus, under the

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 5

PAGE 60

1  Order, Bryant is required to produce drawings and designs in his possession for products currently

2  under development and not yet released to the public.

3      Because the terms of the Order are clear, MGA's and Bryant's request for clarification of

4  the Order is denied.

5  B.  There is Good Cause to Modify the Protective Order as to Drawings and Designs for Products

6  Not Yet Released

7      In the event that designs and drawings for unreleased products under development are

8  found relevant and within the scope of the Order, MGA and Bryant move in the alternative for a

9  protective order pursuant to Rule 26(c), Fed.R.Civ.P., that would provide additional protections

10  not available under the protective order currently in place. More specifically, MGA and Bryant

11  seek either (1) an order that the designs and drawings for MGA's unreleased products not be

12  revealed at all; (2) an order delaying production of designs and drawings for MGA's unreleased

13  products until the products are released; (3) an order requiring the designs and drawings to be

14  placed in an escrow for an expert to review and prohibiting the expert from removing or copying

15  the documents; or (4) an order providing that the drawings and designs for unreleased products be

16  produced for inspection by only an independent expert at the offices of MGA's counsel, with no

17  copying, photographing or sketching permitted. Because there is already a protective order in

18  place, MGA and Bryant's motion is construed as one for modification of the existing protective

19  order.[2]

20                  1. Rule 26 Standards

21      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

22  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

23

24  _____

25  [2] Mattel's contention that the present motion is an improper motion for reconsideration is without merit. To the extent MGA and Bryant seek protection under Rule 26(c), Fed.R.Civ.P., their motion raises issues that were not within the scope of Mattel's motion to compel production of documents from Bryant. Furthermore, paragraph 19 of

26  the protective order currently in place provides that a party may, at any time, apply to the Court for a modification of its terms.

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                                            5

EXHIBIT 5

PAGE 61

1 | party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

2 | discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

3 | Even when discovery is permissible under Rule 26(b)(1), however, discovery may be limited

4 | pursuant to Rule 26(c), Fed.R.Civ.P., which provides for the issuance of a protective order upon

5 | motion by a party that has conferred in good faith in an effort to resolve the dispute without court

6 | action, and for good cause shown.  Rule 26(c) provides for "any order which justice requires to

7 | protect a party or person from annoyance, embarrassment, oppression or undue burden or

8 | expense," including, among other things, "(1) that the disclosure or discovery not be had; (2) that

9 | the discovery may be had only on specified terms and conditions, including a designation of the

10 | time or place . . . (5) that the discovery be conducted with no one present except persons

11 | designated by the court" and "(7) that a trade secret or other confidential research, development,

12 | or commercial information not be revealed or revealed only in a designated way."  In general, in

13 | determining whether a protective order should issue for trade secrets, the Ninth Circuit requires

14 | that a court balance the risk to the disclosing party of inadvertent disclosure of trade secrets to

15 | competitors against the risk to the moving party that protection of the trade secret would impair

16 | the prosecution of its claims. Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th

17 | Cir. 1992) (upholding protective order granting access to source code and other trade secret

18 | materials to only an independent consultant).

19 | ### 2. The Documents At Issue Are Relevant

20 | In support of its motion for a protective order, MGA and Bryant contend that drawings

21 | and designs for products not yet released to the public are not relevant to any of Mattel's claims.

22 | As an initial matter, MGA and Bryant contend that Mattel cannot possibly have suffered a

23 | cognizable injury relating to MGA's products that have not yet been released, and that Mattel has

24 | never taken the position that such products are relevant.  MGA and Bryant next contend that the

25 | drawings and designs for unreleased products are not relevant to Mattel's counterclaim for

26 | copyright infringement because that claim is premised on an allegation that Bryant created the

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 5

PAGE 62

1    original Bratz drawings while still employed at Mattel.  MGA and Bryant similarly contend that

2    drawings and designs for products not yet released to the public are not relevant to Mattel's

3    original claim that Bryant breached his confidentiality obligations while still employed by Mattel.

4    Because Mattel's claims are based upon events occurring while Bryant was still employed by

5    Mattel, MGA and Bryant believe that drawings and designs for products currently under

6    development -- over six years after the termination of Bryant's employment at Mattel -- have no

7    relevance.  MGA and Bryant further contend that the drawings and designs for products currently

8    under development are not relevant to Mattel's counterclaim for trade secret misappropriation.

9    MGA and Bryant reason that the trade secret claim is based on the alleged theft of business

10   information, not drawings and designs for products.

11            Consistent with the analysis previously set forth in the Order, the Discovery Master finds

12   that drawings and designs for unreleased products are relevant to Mattel's claims against Bryant.

13   Mattel claims that it owns works created by Bryant during his Mattel employment, regardless of

14   whether the works resulted in a Bratz doll released at a particular time.  Further, Mattel's

15   complaint alleges that Bryant breached his confidentiality obligations while employed by Mattel.

16   As Mattel points out, Bryant has a continuing obligation not to use Mattel's confidential and

17   proprietary information.

18            Drawings and designs for unreleased products are also relevant to Mattel's copyright

19   infringement claim.  It is true, as MGA and Bryant point out, that Mattel claims it owns

20   copyrights in Bratz works created by Bryant while still employed by Mattel.  Mattel, however,

21   also asserts that Bryant has infringed Mattel's alleged copyrights in Bratz works through his

22   ongoing conduct of reproducing and creating derivative works.

23            · Drawings and designs for unreleased products are also relevant to Mattel's counterclaim

24   for trade secret misappropriation.  Among other things, Mattel alleges that MGA stole its future

25   line lists that detail the Barbie products that Mattel anticipated producing in 2004.  Drawings of

26   unreleased MGA products that resemble unreleased products on Mattel's line lists may support

27

28
      Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)

                                                                                          7

                                                        EXHIBIT 5

                                                        PAGE 63

1    Mattel's allegation of trade secret misappropriation, even if the line list might potentially be

2    outdated. Further, proof of trade secret theft is also relevant to Mattel's defense against MGA's

3    unfair competition claims.[3]

4              3. The Drawings and Designs Are Entitled to Heightened Protection

5              MGA and Bryant contend that drawings and designs for unreleased products fall squarely

6    within the category of trade secret information and should not be revealed at all, or in the

7    alternative, should not be revealed prior to release of the products. They contend that there is

8    good cause for heightened protection for drawings and designs for unreleased products because

9    any relevance of such drawings and designs is marginal at best, and the potential damage to MGA

10   of any disclosure is substantial. According to MGA and Bryant, there are thirteen lawyers at

11   Mattel's retained law firm who have recently been named in or on briefs submitted by Mattel. In

12   addition, MGA and Bryant estimate that there are numerous other staff members and outside

13   vendors – such as copy services, couriers, court reporters, experts and their respective staffs—

14   who also handle documents in this case on a regular basis. MGA and Bryant contend that the

15   current protective order allows disclosure to each of these groups of people, even for documents

16   restricted as "Confidential – Attorneys' Eyes Only." Moreover, MGA and Bryant contend that

17   Mattel has a practice of summarizing or paraphrasing contents of confidential documents or

18   testimony in briefs and other papers filed with the Court. MGA and Bryant suspect that Mattel

19   may follow this practice with respect to drawings and designs of unreleased products, and thereby

20   release MGA's trade secret information to the public.

21             Mattel opposes any modification of the existing protective order, asserting that the parties

22   contemplated exchanging trade secret information, including "non-public information relating to

23

24             [3]  MGA and Bryant's contention that discovery of drawings and designs for unreleased products is barred
     unless and until Mattel complies with California Code of Civil Procedure section 2019.210 is without merit.
25   Drawings and designs for unreleased products are relevant to claims other than the trade secret misappropriation
     claim, such as Mattel's claim for copyright infringement. Furthermore, the case relied upon by MGA and Bryant,
26   Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826 (2nd Dist. 2005), is distinguishable from
     the present case in that not all of Mattel's claims are "factually dependent" on the trade secret claim.

27

28
     Bryant v. Mattel, Inc.,                                                                                    8
     CV-04-09049 SGL (RNBx)

EXHIBIT  S

PAGE  64

1    product development and design,"[4] and agreed to certain safeguards for trade secret information.

2    Mattel contends that there is little to no risk of unwarranted disclosure of MGA's trade secrets

3    because Mattel's in-house counsel and employees are not permitted to inspect or know the

4    contents of documents designated as "Confidential--Attorneys' Eyes Only." Mattel also denies

5    disclosing MGA's confidential information in briefs filed with the court.

6        Mattel's argument that MGA is limited to the terms of the current protective order is

7    without merit. The current protective order was negotiated by the parties at the inception of the

8    case, well before all of the claims and defenses were established. At that time, the parties did not

9    fully understand or foresee what documents and trade secrets would be relevant and discoverable

10    under Rule 26, Fed.R.Civ.P. Moreover, paragraph 19 of the protective order provides that a party

11    may, at any time, apply to the court for a modification of its terms.

12        On balance, there is good cause for heightened protection for drawings and designs for

13    unreleased products. MGA and Mattel are direct competitors. MGA has submitted the

14    declaration of Paula Garcia to support its claim of trade secrets. Ms. Garcia is the Vice President

15    of Product Design and Development and is responsible for the design and development of Bratz

16    products. She states that "[w]ithout question, a toy manufacturer's unreleased toy concepts . . .

17    are among its most highly valuable trade secrets." Garcia Decl. at ¶4. She states that "[a]lthough

18    such drawings and designs are valuable even after the product's public release, their value is

19    enormous prior to their public release because it is the new ideas and designs that are most likely

20    to generate new sales." Id. She further states that MGA protects its product designs and drawings

21    by using confidentiality agreements, computer passwords, and security guards. She also states

22    that vendors, manufacturers, suppliers and other third parties who may see a product design late in

23    the development process are required to sign strict confidentiality agreements. Ms. Garcia states

24    that "MGA's drawings for some of its yet-unreleased 'Bratz' products are even more closely

25

26       _____

[4] Protective Order at 2-3.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                9

EXHIBIT 5

PAGE 65

1  protected." Id. at ¶6. More specifically, she declares that when MGA begins to develop a new

2  Bratz line, only a very limited number of people know about it. Further, Ms. Garcia asserts, "[i]n

3  fact, with respect to some 'Bratz' products, Carter Bryant and I are the only people who know

4  what the concept is and who see the early product drawings. Even after I approve and we have

5  finalized the concept, only a small number of people on the 'Bratz' development team have

6  exposure to the drawings." Id. Thus, drawings and designs for MGA products not yet released to

7  the public are unquestionably valuable trade secret information.

8          Although the protective order currently in place provides for two tiers of protection, MGA

9  points out that even under the higher "Confidential – Attorneys' Eyes Only" tier, MGA's

10  drawings and designs for unreleased products could be disclosed to at least thirteen of Mattel's

11  lawyers, as well as staff members, and also outside vendors such as copy services, court reporters,

12  experts and their staff. Given the number of people involved in the case, MGA is justifiably

13  concerned about the possibility of inadvertent disclosures of trade secrets that could lead to

14  substantial economic injury.

15          In comparison to the potential risk of harm to MGA, Mattel's need for drawings and

16  designs for unreleased products is relatively small. Mattel's claims and defenses are centered

17  upon Bryant's conduct during his employment at Mattel, which ended in October of 2000, and

18  events leading up to the release of the First Generation of Bratz dolls in the summer of 2001.

19  Although the lawsuit is much broader than the First Generation of Bratz dolls, events occurring

20  after the summer of 2001 become less relevant as more time passes. Approximately six years

21  have passed since the launch of the First Generation Bratz dolls. Furthermore, for purposes of

22  determining damages, drawings and designs for released products are far more relevant than

23  drawings and designs for yet unreleased products. Indeed, as MGA and Bryant point out, it is

24  unlikely that Mattel could have suffered any cognizable injury from MGA products that have not

25  yet been released.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 5

PAGE 66

1        In summary, the potential for inadvertent disclosure under the terms of the existing

2    protective order outweighs Mattel's need for drawings and designs for unreleased products.

3    Accordingly, MGA and Bryant are entitled to additional protective measures to prevent

4    inadvertent disclosure of drawings and designs for unreleased products.

5                   4. Delaying Production of Drawings and Designs Until

6          Products Are Released Would Impair Mattel's Ability To Prosecute Its Claims

7        MGA and Bryant seek a protective order delaying production of drawings and designs for

8    products under development until the products are actually released.  MGA and Bryant anticipate

9    releasing products in the fall of 2007 and the spring of 2008.  MGA and Bryant's Reply at 4:26-

10   28.  MGA and Bryant contend that production of drawings and designs for products under

11   development prior to their release date would impose an unwarranted burden for two reasons.

12   First, MGA and Bryant assert that Mattel's requests are broad.  Second, they contend that

13   requiring production of drawings and designs would be disruptive to the product development

14   process.  They explain that the creative process is fluid, constant, and extremely rapid.  They

15   explain that for some Bratz products, Bryant may create and develop scores of drawings that are

16   modified and improved throughout the development cycle.  Further, MGA often goes back to, or

17   builds on, prior drawings.  MGA and Bryant contend that "to be forced to turn over these

18   drawings throughout the development process before the product line is finalized, particularly as

19   MGA is operating under such short development cycles, would not only substantially compromise

20   the strict confidentiality measures that MGA has in place but would be extremely disruptive to its

21   ability to do business and therefore significantly impact its ability to compete."  MGA and

22   Bryant's Motion at 11:16-22.

23       MGA and Bryant's proposal to delay production until products are released is unworkable.

24   Although MGA anticipates releasing products in the fall of 2007 and the spring of 2008, there is

25   no guarantee that MGA will meet those release dates.  If there are delays in the release dates,

26   Mattel might not have sufficient time to review the drawings and designs and conduct follow up

27

28     Bryant v. Mattel, Inc.,
  CV-04-09049 SGL (RNBx)

                                              11

EXHIBIT 5

PAGE 67

1   discovery under the current schedule.  Trial on Mattel's original claims is scheduled for February

2   of 2008, and trial on MGA's claims and Mattel's counterclaims is scheduled for July of 2008.

3   In light of the trial schedule, any delay beyond June 29, 2007 would unduly prejudice Mattel's

4   ability to prepare for trial.

5                                   5. Additional Procedures

6       At the hearing, the parties represented that they would submit a stipulation and proposed

7   order with additional terms governing the production of drawings and designs for MGA's

8   products that are under development.  On April 23, 2007, the parties submitted a stipulation and

9   proposed order.  The parties stipulated to define "Subject Documents" as "documents (defined to

10  include both tangible items and electronic data) created after January 1, 2006 that pertain to

11  products which are currently unreleased and scheduled for public release in 2007 or 2008 and

12  that constitute highly sensitive trade secrets of the producing Party." Stipulation and Proposed

13  Order at ¶1.  The main terms of the stipulation are as follows:

14      1. That "Subject Documents" may be withheld from production to the other parties until

15  June 29, 2007.  Id. at ¶2.

16      2. That "Subject Documents" may be designated as "Highly Confidential – Restricted

17  Attorneys' Eyes Only," and that documents so designated "shall not be disclosed in any way to,

18  nor their contents summarized or discussed in substance with, any person other than: (i) up to

19  three attorneys at the receiving Party's outside law firm; (ii) such independent, outside expert(s)

20  for the receiving Party who outside counsel deems necessary to show such documents for

21  purposes of providing expert opinion or expert testimony; (iii) one assistant or paralegal for each

22  Party . . . (iv) the Court, including the Discovery Master and other personnel identified in

23  paragraphs 6(g) and 7 of the Protective Order; (v) the authors, senders, addressees and

24  designated copy recipients of any document designated 'Highly Confidential – Restricted

25  Attorneys' Eyes Only'; and (vi) such other persons as may be consented to in writing or on the

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                          12

EXHIBIT 5

PAGE 68

1  record by the Party designating such documents 'Highly Confidential – Restricted Attorneys'
2  Eyes Only.'" Id. at ¶3(b).

3         3. That "[d]ocuments designated as 'Highly Confidential – Restricted Attorneys' Eyes
4  Only' shall not be copied except to create one archival file copy, one working copy for the
5  designated attorneys and/or any designated expert, or for use as exhibits at deposition or trial or
6  in filings with the Court, including the Discovery Master." Id. at ¶3(d).

7         4. That "[e]ach receiving Party's original copy set and all copies of Subject Documents,
8  including any copies for use as exhibits or in motion practice, shall be maintained in a secure,
9  locked file at all times when not physically being used by the receiving party's counsel or
10 expert." Id. at ¶3(e); and

11        5. That the producing Party "shall re-designate or de-designate Subject Documents
12 relating to a product within fourteen (14) days of the following events, whichever occurs earlier:
13 (a) the production is first shipped, or (b) the product is first disclosed to a third party without an
14 express confidentiality agreement." Id. at ¶4

15        Good cause appearing, the stipulation is hereby approved and shall be entered as a
16 separate order of the court.

17                              V. CONCLUSION

18        For the reasons set forth above, MGA and Bryant's motion for clarification of the Order is
19 denied. MGA and Bryant's alternative motion for a protective order pursuant to Rule 26(c),
20 Fed.R.Civ.P., is granted. The parties shall abide by the terms of the stipulation and order to
21 modify the protective order.

22        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
23 Master, MGA shall file this Order with the Clerk of Court forthwith.

24 Dated: May 15, 2007                    _____
                                          HON. EDWARD A. INFANTE (Ret.)
25                                            Discovery Master

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                              13

EXHIBIT 5

PAGE 69

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER MODIFYING PROTECTIVE ORDER in the within

action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson. | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California

Anthony Sales

EXHIBIT 5

PAGE 70

# Exhibit 6



CONFORMED COPY

1    [Counsel listed on following page]

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10   CARTER BRYANT, an individual,        )   Case No. CV 04-09049 SGL (RNBx)

11                   Plaintiff,           )   Consolidated with
                                          )   Case No. CV 04-09059
12          v.                            )   Case No. CV 05-02727
                                          )
13   MATTEL, INC., a Delaware             )
     corporation,                         )   **DISCOVERY MATTER**
14                                        )
                    Defendant.            )   Hon. Edward A. Infante (Ret.)
15                                        )
                                          )   Discovery Master
16                                        )
17                                            **STIPULATION TO MODIFY**
                                              **PROTECTIVE ORDER; AND**
18
19                                            ~~[PROPOSED]~~ **ORDER THEREON**

20                                            Discovery Cut-Off: October 22, 2007
                                              Pre-Trial Conference: January 14, 2008
21                                            Trial Date:   February 12, 2008

22

23

24

25

26

27

28

                                              Case No. CV 04-09049 SGL (RNBx)
                                     STIPULATION AND ORDER RE PROTECTIVE ORDER

EXHIBIT  6

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemnauel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8  LITTLER MENDELSON
      Robert F. Millman (Bar No. 062152)
9     Douglas A. Wickham (Bar No. 127268)
      Keith A. Jacoby (Bar No. 150233)
10 2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
11 Telephone:  (310) 553-0308
   Facsimile:   (310) 553-5583
12
   Attorneys for Carter Bryant
13
   O'MELVENY & MYERS LLP
14    Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
15 Los Angeles, California 90017
   Telephone:  (213) 430-6000
16 Facsimile:   (213) 430-6407

17 O'MELVENY & MYERS LLP
      Dale Cendali
18 Times Square Tower
   7 Times Square
19 New York, NY 10036

20 CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
      Patricia Glaser (Bar No. 55668)
21 10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
22 Telephone: (310) 553-3000
   Facsimile: (310) 556-2920
23
   Attorneys for MGA Entertainment, Inc.
24

25

26

27

28

- 2 -

STIPULATION AND ORDER RE PROTECTIVE ORDER

EXHIBIT 6

PAGE 72

1      WHEREAS, on January 24, 2007, Discovery Master Infante heard
2  Mattel, Inc.'s ("Mattel") Motion to Compel Carter Bryant ("Bryant") to Produce
3  Documents ("Motion to Compel");

4      WHEREAS, on January 25, 2007, Discovery Master Infante issued an
5  Order granting Mattel's Motion to Compel (the "Order");

6      WHEREAS, on March 19, 2007, Discovery Master Infante heard
7  Bryant's and MGA Entertainment, Inc.'s ("MGA") Motion for Clarification,
8  Reconsideration and/or Further Protection of the Discovery Master's January 25,
9  2007 Order or for Protective Order Pursuant to Rule 26(c) (the "Motion");

10      WHEREAS, Discovery Master Infante denied the Motion to the extent
11  it sought clarification of the Order and stated that design drawings of currently
12  unreleased products are relevant to the parties' claims and defenses; and

13      WHEREAS, Discovery Master Infante granted the Motion to the extent
14  it sought further protection pursuant to Rule 26 and paragraph 19 of the Protective
15  Order entered by the Court as of January 4, 2005 (the "Protective Order") so as to
16  afford further restrictions on the handling of Subject Documents (defined below) for
17  purposes of providing additional protection for their confidentiality and directed the
18  parties to provide specifics for such modification.

19      NOW, THEREFORE, Mattel, Bryant and MGA, by and through their
20  respective counsel of record, hereby stipulate and agree as follows:

21      1.   As used herein, "Subject Documents" means documents (defined
22  to include both tangible items and electronic data) created after January 1, 2006 that
23  pertain to products which are currently unreleased and scheduled for public release
24  in 2007 or 2008 and that constitute highly sensitive trade secrets of the producing
25  Party. The parties are presently negotiating and may enter an additional stipulation
26  concerning a subset of Subject Documents that pertain to products which are
27  currently unreleased and scheduled for public release in 2008 and that constitute
28  highly sensitive trade secrets of the producing Party (the "2008 Subject

-3-

STIPULATION AND ORDER RE PROTECTIVE ORDER

EXHIBIT 6

PAGE 73

1  Documents"). In the event the parties do not reach a stipulation with respect to the
2  2008 Subject Documents, MGA and/or Bryant are not, by entering into this
3  stipulation, waiving any rights to seek review by Judge Larson of the aspects of the
4  Order or Ruling on the Motion that pertain to the 2008 Subject Documents. Until
5  such time that the parties execute a stipulation with respect to the 2008 Subject
6  Documents and in the event that neither MGA nor Bryant seek the afore-mentioned
7  review by Judge Larson, the 2008 Subject Documents shall be treated in the manner
8  set forth herein for the Subject Documents, provided that such 2008 Subject
9  Documents meet the definition for "Subject Documents" set forth above.

10         2.      A Party may withhold from production to other Parties Subject
11  Documents until June 29, 2007.

12         3.      Upon production (whether before, on or after June 29, 2007), a
13  producing Party may designate Subject Documents as "HIGHLY CONFIDENTIAL
14  – RESTRICTED ATTORNEYS' EYES ONLY."

15              (a)    Subject Documents designated as "HIGHLY CONFIDENTIAL
16  – RESTRICTED ATTORNEYS' EYES ONLY" shall be so designated in the
17  manner set forth in paragraph 3 of the Protective Order.

18              (b)    Documents designated as "HIGHLY CONFIDENTIAL –
19  RESTRICTED ATTORNEYS' EYES ONLY" shall not be disclosed in any way to,
20  nor their contents summarized or discussed in substance with, any person other than:
21  (i) up to three attorneys at the receiving Party's outside law firm; (ii) such
22  independent, outside expert(s) for the receiving Party who outside counsel deems
23  necessary to show such documents for purposes of providing expert opinion or
24  expert testimony; (iii) one assistant or paralegal for each Party (for the purposes of
25  photocopying and maintaining files as set forth in subparagraph (d) below); (iv) the
26  Court, including the Discovery Master, and other personnel identified in paragraphs
27  6(g) and 7 of the Protective Order; (v) the authors, senders, addressees and
28  designated   copy   recipients   of   any   document   designated   "HIGHLY

- 4 -

STIPULATION AND ORDER RE PROTECTIVE ORDER

EXHIBIT _6_

PAGE _74_

1   CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY"; and (vi) such
2   other persons as may be consented to in writing or on the record by the Party
3   designating such documents "HIGHLY CONFIDENTIAL – RESTRICTED
4   ATTORNEYS' EYES ONLY."

5        (c)   The Experts described in subsection (ii) of paragraph 3(b) above
6   shall not have access to "HIGHLY CONFIDENTIAL – RESTRICTED
7   ATTORNEYS' EYES ONLY" documents until he/she has certified that he/she has
8   read the Protective Order and this Stipulation and Order and has manifested his/her
9   assent to be bound by signing the Assurance of Compliance attached to the
10  Protective Order as Exhibit A; any such expert who has previously signed an
11  Assurance of Compliance must be shown this Stipulation and Order and sign an
12  Assurance of Compliance that encompasses this Stipulation and Order.

13       (d)   Documents designated as "HIGHLY CONFIDENTIAL –
14  RESTRICTED ATTORNEYS' EYES ONLY" shall not be copied except to create
15  one archival file copy, one working copy for the designated attorneys and/or any
16  designated expert, or for use as exhibits at deposition or trial or in filings with the
17  Court, including the Discovery Master. In the event and to the extent that copies are
18  provided to counsel in attendance at a deposition where documents designated as
19  "HIGHLY CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY" are
20  shown or marked at deposition, the Party who so designated the documents may
21  require that any such additional copies be returned to the designating Party's counsel
22  or destroyed.   Any document designated as "HIGHLY CONFIDENTIAL –
23  RESTRICTED ATTORNEYS' EYES ONLY" that is marked as a deposition exhibit
24  shall not be bound with the exhibits to the deposition transcript but shall be
25  separately maintained by the deposing party.   The parties shall work together to
26  agree upon a proposed procedure for handling such documents at trial if necessary.

27       (e)   Each receiving Party's original copy set and all copies of Subject
28  Documents, including any copies for use as exhibits or in motion practice, shall be

STIPULATION AND ORDER RE PROTECTIVE ORDER

EXHIBIT 6

PAGE 75

1  maintained in a secure, locked file at all times when not physically being used by the

2  receiving party's counsel or expert.

3      4.`   The producing Party shall re-designate or de-designate Subject

4  Documents relating to a product within fourteen (14) days of the following events,

5  whichever occurs earlier: (a) the product is first shipped, or (b) the product is first

6  disclosed to a third party without an express confidentiality agreement. Any Subject

7  Documents initially designated "HIGHLY CONFIDENTIAL – RESTRICTED

8  ATTORNEYS' EYES ONLY" may be re-designated a lesser degree of

9  confidentiality under the Protective Order, such as "CONFIDENTIAL" or

10  "CONFIDENTIAL – ATTORNEYS' EYES ONLY," as appropriate under the

11  Protective Order. Such re-designated or de-designated documents shall thereafter be

12  handled and treated in accordance with the terms of the Protective Order for

13  "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY"

14  material, whichever the case may be.

15      5.   The Protective Order is hereby amended to add the phrase

16  "HIGHLY CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY" to

17  paragraphs 2, 3, 4, 7, 8, 9, 10, 12, 15, 16, 17 and 18 of the Protective Order.

18      6.   Except as modified herein, all other provisions of the Protective

19  Order shall remain in full force and effect and are incorporated herein by reference.

20  Without limiting the generality of the foregoing, documents produced as "HIGHLY

21

22

23

24

25

26

27

28

STIPULATION AND ORDER RE PROTECTIVE ORDER

- 6 -

EXHIBIT 6

PAGE 76

1   CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY" shall be subject

2   to the provisions of paragraphs 13 and 14 of the Protective Order.

3

4       **SO STIPULATED.**

5   Dated: April 18, 2007

6                                           DOUGLAS A. WICKHAM
7                                           LITTLER MENDELSON
                                            A Professional Corporation
8                                           Attorneys for CARTER BRYANT

9   Dated: April 18, 2007

10                                          DIANA M. TORRES
11                                          O'MELVENY & MYERS LLP
                                            Attorneys for MGA
12                                          ENTERTAINMENT, INC.

13  Dated: April 18, 2007

14                                          MICHAEL ZELLER
15                                          QUINN EMANUEL URQUHART
                                            OLIVER & HEDGES, LLP
16                                          Attorneys for MATTEL, INC.

17      **IT IS SO ORDERED.**

18

19  DATED:  4 - 23 - , 2007   By

20                                          Hon. Edward Infante (Retired)
21                                          Discovery Master

22

23

24

25

26

27

28

- 7 -

STIPULATION AND ORDER RE PROTECTIVE ORDER

EXHIBIT 6

PAGE 27

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 24, 2007,

I served the attached STIPULATION AND ORDER TO MODIFY PROTECTIVE ORDER

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 24, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 6

PAGE 78

# Exhibit 7