Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@ glaserweil.com
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  310-553-3000
Facsimile:  310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone:  310-312-2000
Facsimile:  310-312-3100

Attorneys for the MGA Parties For Phase Two

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br>Consolidated with: Case No. CV 04-9059, Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard by Discovery Master Robert C. O'Brien Pursuant to Order of January 6, 2009]**<br><br>**[PUBLIC REDACTED] DECLARATION OF CAROLINE H. MANKEY IN SUPPORT OF MGA ENTERTAINMENT, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS FROM MGA'S SECOND AND FIFTH SETS OF REQUESTS FOR PRODUCTION AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**<br><br>[Honorable Stephen G. Larson]<br><br>**Phase 2**<br>Discovery Cut-off:  December 11, 2009<br>Pre-Trial Conference:  March 1, 2010<br>Trial Date:  March 23, 2010 |

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

674063

DECLARATION OF CAROLINE H. MANKEY

LAW OFFICES

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**DECLARATION OF CAROLINE H. MANKEY**

I, Caroline H. Mankey, hereby declare that:

1.  I am an attorney at law, duly licensed to practice before all Courts of the State of California, and am a partner of the law firm of Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP, Phase 2 attorneys of record herein for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V.  I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.  The concurrently filed motion to compel (the "Motion") concerns Mattel, Inc.'s ("Mattel") responses to the following interrogatories and requests for production:

- MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things in Case No. 05-2727, dated March 27, 2007;

- MGA's Fifth Set of Requests for Production of Documents and Things in Case No. 05-2727, dated August 3, 2007; and

- MGA's Second Set of Interrogatories to Mattel, Inc., dated December 4, 2007.

Many of these requests relate to MGA's defense of Mattel's Phase 2 counterclaims. Although Mattel refused to comply with these requests, MGA was precluded from seeking enforcement by the Court due to the February 4, 2008 Order placing a stay on all Phase 2 discovery.  After the stay was lifted, MGA's Phase 2 counsel initiated the meet and confer process as required by Rule 37-1.

3.  Attached hereto as Exhibit A is a true and correct copy of Mattel's Response to Interrogatory No. 1 from Mattel's Supplemental Responses to MGA's First Set of Interrogatories dated December 7, 2007.

4.  Attached hereto as Exhibit B is a true and correct copy of MGA's Second Set of Interrogatories to Mattel, Inc. dated December 4, 2007.

5.  Attached hereto as Exhibit C is a true and correct copy of Mattel's Objections and Responses to MGA's Second Set of Interrogatories dated Jan. 3, 2008.

674063

6.     Attached hereto as Exhibit D is a true and correct copy of the Phase 2 Discovery Matter Order No. 6, dated March 13, 2009.

7.     Attached hereto as Exhibit E is a true and correct copy of the Phase 2 Discovery Matter Order No. 17, dated April 14, 2009.

8.     Attached hereto as Exhibit F is a true and correct copy of a March 25, 2009 letter from me to Jon Corey and Michael Zeller regarding Mattel's responses to the interrogatories and requests for production discussed in the Motion filed concurrently herewith.

9.     Attached hereto as Exhibit G is a true and correct copy of an April 14, 2009 letter from me to Diane Hutnyan confirming the substance of our telephonic conferences on March 31 and April 13 regarding Mattel's responses to the interrogatories and requests for production discussed in the Motion filed concurrently herewith.

10.    Attached hereto as Exhibit H is a true and correct copy of an April 16, 2009 letter from Ms Hutnyan to me regarding our conversation earlier that day about the instant discovery dispute.

11.    Attached hereto as Exhibit I is a true and correct copy of an April 17, 2009 letter from me to Ms. Hutnyan responding to her April 16 correspondence.

12.    As indicated in the attached meet and confer letters, Ms. Hutnyan and I engaged in telephonic conferences regarding the discovery at issue on March 31, April 13, and April 16, 2009.

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on this 20th day of April, 2009, in Los Angeles, California.

_____/s/ Caroline H. Mankey_____
Caroline H. Mankey

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

674063

# EXHIBIT A

(FILED UNDER SEAL PURSUANT TO THE STIPULATED
PROTECTED ORDER ENTERED BY THE COURT IN THIS
ACTION ON JANUARY 4, 2005)

# EXHIBIT "B"

1 | THOMAS J. NOLAN (Bar No. 066992)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
4 | E-mail:   tnolan@skadden.com

5

6 | KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
7 | New York, NY  10036
Telephone:  (212) 735-3000
8 | Facsimile:  (212) 735-2000
E-mail:      kplevan@skadden.com

9

Attorneys for Counter-Defendants,
10 | MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
(HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation | **MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.** |
| Defendant. | |
| | Honorable Stephen G. Larson Courtroom 1 |

Ex B p. 69

1

2    Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v.

3    MATTEL, INC.

4

5   **PROPOUNDING PARTY:**   **MGA ENTERTAINMENT, INC.**

6   **RESPONDING PARTY:**   **MATTEL, INC.**

7   **SET NUMBER:**       **SECOND**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc.

2  ("Mattel") respond to the following Second Set of Interrogatories separately, fully,

3  and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within

4  (30) days of service, in accordance with the definitions and instructions set forth

5  herein.

6  **DEFINITIONS**

7  1.   "AFFILIATES" means any and all corporations, proprietorships, d/b/a's,

8  partnerships, joint ventures and business entities of any kind that, directly or

9  indirectly, in whole or in part, own or control, are under common ownership or

10  control with, or are owned or controlled by a PERSON, party or entity, including

11  without limitation each parent, subsidiary and joint venture of such person, party or

12  entity.

13  2.   "ALLEGED COPYRIGHTED WORKS" means the copyrighted works

14  alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-

15  2727 and Counterclaim in THIS ACTION.

16  3.   "ALLEGED TRADE SECRETS" means the trade secret material

17  alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case

18  No. 05-2727 and Counterclaim in THIS ACTION.

19  4.   "BARBIE" means and refers to each image, character, logo, doll, toy,

20  styling head, plush toy, play set, accessory, product, packaging or any other thing

21  that is or has ever been manufactured, marketed or sold by YOU, or others under

22  licensed by YOU, as part of a line of goods or merchandise commonly known as, or

23  sold and marketed under the name "Barbie."

24  5.   "BRYANT" means Carter Bryant individually and does not include his

25  agents, representatives, attorneys, experts or any other PERSON acting on his behalf,

26  pursuant to his authority or subject to his control.

27  6.   "BRATZ" means and refers to each image, character, logo, doll, fashion

28  doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or

2  others under license, as part of a line of goods or merchandise commonly known as,

3  or sold and marketed under the "Bratz" trademark or trade dress.

4        7.    "COLLECT," "COLLECTED" or "COLLECTION" with reference to

5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,

6  analyze or in any other way collect or review or attempt to collect or review such

7  DOCUMENTS in connection with YOUR search for, review of and/or production of

8  DOCUMENTS in this ACTION."

9        8.    The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to

10 Mattel's form of employment agreement concerning, _inter alia_, relations, if any,

11 between Mattel's employees, suppliers, and/or competition, whether known by the

12 title "Conflict of Interest Questionnaire" or any other title, including without

13 limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest

14 Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15       9.   "CONTESTED MATTEL PRODUCTS" means:

16     (a) each female fashion doll and its packaging that is or has ever been

17 manufactured, marketed or sold by MATTEL, or others under license by MATTEL,

18 as part of a line of goods or merchandise commonly known as, or sold and marketed

19 under the "My Scene" trademark or trade dress;

20     (b) each image, character, logo, fashion doll, doll, toy, accessory, product,

21 packaging or other thing or matter that is or has ever been manufactured, marketed or

22 sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

23 merchandise commonly known as, or sold and marketed under the "My Scene"

24 "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"

25 trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade

26 dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;

27     (c) each plush toy and its packaging that is or has ever been manufactured,

28 marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

1   of goods or merchandise commonly known as, or sold and marketed under the "My

2   Scene" trademark or trade dress;

3        (d)  each styling head that is or has ever been manufactured, marketed or sold

4   by MATTEL, or others under license by MATTEL, as part of a line of goods or

5   merchandise commonly known as, or sold and marketed under the "My Scene"

6   trademark or trade dress;

7        (e) the "My Scene Sound Lounge" play set and packaging;

8        (f) each image, character, logo, doll, toy, accessory, product, packaging or any

9   other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

10   others under license by MATTEL, as part of a line of goods or merchandise

11   commonly known as, or sold and marketed under the name "Little Mommy";

12       (g) each image, character, logo, doll, toy, accessory, product, packaging or any

13   other thing that is or has ever been manufactured, marketed or sold by YOU, or

14   others under licensed by YOU, as part of a line of goods or merchandise commonly

15   known as, or sold and marketed under the name "Wee 3 Friends"; and

16       (h) each image, character, logo, toy, accessory, product, packaging or any

17   other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

18   others under license by MATTEL, as part of a line of goods or merchandise

19   commonly known as, or sold and marketed under the name "AcceleRacerS."

20      10.  "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer

21   and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer

22   Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer

23   Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.

24   Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary

25   Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of

26   Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.

27   Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.

28   Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

1    11.    "DESCRIBE THE SALES AND PROFITS" means to state fully and

2  separately for each MATTEL PRODUCT by year (a) the number of units of each

3  such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net

4  revenue received by YOU from such sales of each such MATTEL PRODUCT, (c)

5  all costs YOU have incurred in connection with each such MATTEL PRODUCT,

6  including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net

7  profits from each such MATTEL PRODUCT.

8    12.    "DESIGN" or "DESIGNS" means any and all representations, whether

9  two-dimensional or three dimensional, and whether in tangible, digital, electronic or

10  other form, including but not limited to all works, designs, artwork, sketches,

11  drawings, illustrations, representations, depictions, blue prints, schematics, diagrams,

12  images, sculptures, prototypes, models, samples, rotocasts, reductions to practice,

13  development, inventions, or improvements, as well as all other items, things and

14  DOCUMENTS in which any of the foregoing are or have been expressed, embodied,

15  contained, fixed or reflected in any manner, which in whole or in part.

16    13.    "DIGITAL INFORMATION" means any information created or stored

17  digitally, including but not limited to electronically, magnetically, or optically.

18    14.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

19  Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

20  DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and

21  property, of any kind, that are now or that have been in YOUR actual or constructive

22  possession, custody or control, including, but not limited to, any handwritten,

23  typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded,

24  transcribed, graphic or photographic matter of any kind or nature, in, through, or

25  from which information may be embodied, translated, conveyed or stored, whether

26  an original, a draft or copy, however produced or reproduced, whether sent or

27  received or neither, including, but not limited to, notes, memoranda, correspondence,

28  letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other memorializations of any conversations, meetings and conference, by telephone or otherwise. The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

15.    The term "EMPLOYEE INVENTIONS AGREEMENT" refers to Mattel's form of employment agreement concerning, inter alia, (i) ownership of inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title "Employee Confidential Information and Inventions Agreement" or any other title, including without limitation the form of Employee Inventions Agreement entitled "Employee Confidential Information and Inventions Agreement" executed by Carter Bryant on or about January 4, 1999.

16.    "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

- With reference to an *individual*, means to state fully and separately for each, such individual's full name, any known business title, current or

last known business affiliation, current or last known residential address, current or last known business address, current or last known relationship with MATTEL, and current or last known phone number(s).

• With reference to an *entity*, means to state, fully and separately for each, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number(s).

• With reference to any *DOCUMENT*, means to describe each DOCUMENT by Bates number. If the DOCUMENT does not have a Bates number, IDENTIFY means to provide a complete description of the DOCUMENT such that it may be the subject of a request for production of documents, including by stating the date, identity of the author, addresses(s), recipient(s), signatories, parties, or other PERSONS identified in the DOCUMENT, its present location or custodian and a description of its contents.

• With reference to any MATTEL or MGA product, means to state fully and separately for each, the full name of the product; the number of the product; the SKU of the product; any other applicable designation of the product; the period of time in which the product has been sold; and IDENTIFY each PERSON who has licensed such product.

17. "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any of its past or present officers, directors, employees, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, and joint venture partners.

18. "MATTEL EMPLOYEE" means any of MATTEL's current or former employees.

19. "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims, and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against Bryant and MGA, dated January 5, 2007 and any supplemental or amendment thereto.

7

20. "MATTEL PRODUCTS," includes all products sold or offered by sale by MATTEL under or using the name "Barbie," including without limitation, all CONTESTED MATTEL PRODUCTS, all MY SCENE DOLLS, and any doll sold or offered for sale under the name "Diva Starz."

21. "MY SCENE" means and refers to each image, character, logo, doll, fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "My Scene."

22. "MY SCENE DOLL" means any fashion doll that is or has ever been distributed, marketed, sold or offered for sale under the name "My Scene" or as part of the "My Scene" line, including separate themes.

23. "PERSON" or "PERSONS" means all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers and directors and any one else acting on its, its or her behalf, pursuant to its, its or her authority or subject or its, its or her control.

24. "REFERRING OR RELATING TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

25. "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION" means to (i) describe in detail the complete factual for the identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE TO that contention; and (iii) IDENTIFY all witnesses who may have information that REFERS OR RELATES TO the contention.

26. "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether

8

permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store, or maintain DIGITAL INFORMATION.

27.   "SOURCE OF INFORMATION" means any PERSON or medium containing DOCUMENTS, DIGITAL INFORMATION, or other information, whether in paper, electronic or other form, including, but not limited to any STORAGE DEVICE, file, file cabinet, or any other source of information or DOCUMENTS.

28.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated therewith.

29.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of documents or information.


## INSTRUCTIONS

1.   Mattel is instructed to serve written responses to these Interrogatories on MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP, 300 South Grand Avenue, Los Angeles, California 90071.

2.   Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its answers under oath within 30 days of service.

3.   If, in responding to these Interrogatories, Mattel asserts an ambiguity in either a particular Interrogatory or an Instruction of Definition applicable thereto, Mattel shall identify in the response to such Interrogatory the language it contends is ambiguous and state the interpretation used in responding.

4.      These Interrogatories impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

5.      If, in responding to these Interrogatories, any information is not being provided based on an objection or otherwise, IDENTIFY the information not be provided and explain the complete basis supporting YOUR refusal and/or failure to provide that information.

6.      Unless otherwise noted, these Interrogatories seek information from January 1, 1995, to the present.

10

# INTERROGATORIES

INTERROGATORY NO. 12:

IDENTIFY each version of the EMPLOYEE INVENTIONS AGREEMENT adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the IDENTITY of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the EMPLOYEE INVENTIONS AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 13:

Describe in detail each instance in which any provision of an EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into an EMPLOYEE INVENTIONS AGREEMENT, including without limitation: (a) a complete description of the conduct comprising said breach; and (b) a complete description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

INTERROGATORY  NO. 14:

IDENTIFY each version of the CONFLICT OF INTEREST QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the identity of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the CONFLICT OF INTEREST QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

INTERROGATORY  NO. 15:

Describe in detail each instance in which any provision of a CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without limitation: (a) a description of the conduct comprising said breach; and (b) a description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

1   INTERROGATORY  NO. 16:

2       STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

3   that MATTEL has a viable affirmative claim for relief against MGA even if the

4   evidence establishes both of the following:  (i) in August and/or September, 1998,

5   Carter Bryant conceived of the line of fashion dolls that he named Bratz, and (ii) the

6   design for the BRATZ dolls sold by MGA in 2001 was reduced to practice after

7   October 20, 2000.

8

9   INTERROGATORY  NO. 17:

10       STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

11   that MATTEL employees in the Design Center who personally knew Carter Bryant

12   did not know and/or believe, immediately following the launch of MGA's Bratz

13   dolls in 2001, that Carter Bryant was the creator of the concept for the BRATZ line

14   of dolls.

15

16   INTERROGATORY  NO. 18:

17       STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

18   that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA

19   violate or infringe any of MATTEL'S intellectual property and/or proprietary rights.

20

21   INTERROGATORY  NO. 19:

22       IDENTIFY with specificity each element of each ALLEGED

23   COPYRIGHTED WORK that MATTEL contends is an original element protectable

24   under the United States Copyright Laws.

25

26

27

28

13

INTERROGATORY NO. 20:

IDENTIFY with specificity each ALLEGED TRADE SECRET, including the IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each ALLEGED TRADE SECRET.

INTERROGATORY NO. 21:

IDENTIFY each PERSON who has had access to each ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access to; and (b) the date or dates each PERSON had this access.

INTERROGATORY NO. 22:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.

INTERROGATORY NO. 23:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that the ALLEGED TRADE SECRETS are protectable.

INTERROGATORY NO. 24:

DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that has been sold or offered for sale by YOU or YOUR licensees. (The time period applicable to this interrogatory is from January 1, 1990 to the present).

INTERROGATORY NO. 25:

IDENTIFY, fully and separately, each and every PERSON who was involved in the development or marketing of the CONTESTED MATTEL PRODUCTS by stating each PERSON'S name, role, and start/end date. (As used in this Interrogatory, the phrase "development or marketing" means the entire process of

14

1 creating and selling a new product or design, including without limitation, the
2 marketing, advertising, promotion, licensing, offering for sale, conception, origin,
3 creation, design, development, sculpting, engineering, reduction to practice, tooling
4 or painting of a product or embodiment of a product).

5

6 **INTERROGATORY NO. 26:**

7      Describe in detail all instances in which a PERSON expressed confusion as to
8 source or sponsorship between any MATTEL products, packaging or advertising
9 (including, but not limited to, the CONTESTED MATTEL PRODUCTS) and any
10 MGA products, packaging or advertising (including, but not limited to, "BRATZ"),
11 by: (i) stating the facts and circumstances of each instance; (ii) IDENTIFYING all
12 DOCUMENTS that REFER OR RELATE TO each instance; and (iii)
13 IDENTIFYING all witnesses who may have information that REFER OR RELATE
14 TO each instance.

15

16 **INTERROGATORY NO. 27:**

17      For each PERSON listed in MATTEL'S INITIAL DISCLOSURES,
18 IDENTIFY each PERSON and describe in detail each PERSON's alleged
19 knowledge of the subjects or information identified in MATTEL'S INITIAL
20 DISCLOSURES.

21

22 **INTERROGATORY NO. 28:**

23      Describe in detail the complete factual basis for YOUR COUNTERCLAIMS,
24 including, without limitation all facts, DOCUMENTS, and witnesses that REFER
25 OR RELATE TO YOUR COUNTERCLAIMS.

26

27

28

Ex B p. 84

1   INTERROGATORY NO. 29:

2       Describe in detail any estimate or calculation of damage, loss, injury, or unjust

3   enrichment, by reason of any act or omission alleged in YOUR COUNTERCLAIMS,

4   that YOU have made or that has been made on YOUR behalf or at YOUR request,

5   including all facts, DOCUMENTS or witnesses RELATING TO each estimate or

6   calculation.

7

8   INTERROGATORY 30:

9       IDENTIFY each and every SOURCE OF INFORMATION from which YOU

10   have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

11

12   INTERROGATORY 31:

13       STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

14   that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ

15   DESIGNS created by Carter Bryant on or before October 19, 2000.

16

17

18   DATED:  December 4, 2007

19                        SKADDEN, ARPS, SLATE, MEAGHER &
                            FLOM, LLP

20                        By: _____

21                           Robert J. Herrington
                     Attorneys for Counter-Defendants, MGA

22                      ENTERTAINMENT, INC., ISAAC LARIAN,
                     MGA ENTERTAINMENT (HK) LIMITED,

23                      AND MGAE de MEXICO S.R.L. de C.V.

24

25

26

27

28

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On December 4, 2007, I served the foregoing document described as:

**MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

| | | | |
|---|---|---|---|
| [X] | (BY PERSONAL SERVICE) | ☐ | By personally delivering copies to the person served. (FEDERAL) |
| | | [X] | I caused such document to be hand delivered to the office of the addressee. (FEDERAL) [As Noted.] |

[X] **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. [As Noted.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 4, 2007 at Los Angeles, California.

Allison G. Velkes
PRINT NAME                                    SIGNATURE

1

SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
(213)  443-3000
(213)  443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111
(415)  391-5400
(415)  397-7188 (Fax)

Attorneys for Carter Bryant
[Mail]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA  90071
(213)  613-4655
(213)  613-4656 (Fax)

Attorneys for Carlos Gustavo Machado
Gomez
[Mail]

2

# EXHIBIT "C"

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Plaintiff and Cross-
   Defendant
9  MATTEL, Inc.

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

14            Plaintiff,                  Consolidated with:
                                          Case No. CV 04-09059
15       vs.                              Case No. CV 05-02727

16  MATTEL, INC., a Delaware             MATTEL, INC.'S OBJECTIONS AND
    corporation,                         RESPONSES TO MGA
17                                        ENTERTAINMENT, INC.'S SECOND
            Defendant.                    SET OF INTERROGATORIES
18
19  CONSOLIDATED WITH                     Hon. Stephen G. Larson

20  MATTEL, INC. v. BRYANT, and

21  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.,
22
            Cross-Defendant.
23

24

25  PROPOUNDING PARTY:  MGA ENTERTAINMENT, INC.

26  RESPONDING PARTY:   MATTEL, INC.

27  SET NO.:            TWO (2)

28  NOS.:               12 - 31

07975/2338502.1

_____
          MATTEL'S OBJECTIONS AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES

## Preliminary Statement

Mattel, Inc. ("Mattel") has not yet completed its investigation of the facts relating to this action, has not yet reviewed all documents relating to this action, has not yet interviewed all witnesses in this action, and has not completed discovery from defendants Carter Bryant ("Bryant") or MGA Entertainment, Inc. ("MGA") or any third parties with regard to this action.  Consequently, Mattel reserves the right to amend and/or supplement these responses if and when additional facts or documents are discovered.  Additionally, because Mattel's responses are based on facts and documents that Mattel has identified to date, they do not preclude Mattel from later relying on facts or documents discovered or generated pursuant to subsequent investigation or discovery.  Mattel's response to any of Defendant's Second Set of Interrogatories (the "Interrogatories") is not to be construed as a waiver of any of its objections or its right to object to any other discovery request.

## General Objections

Mattel generally objects to each of the Interrogatories on each and every one of the following grounds, which are incorporated into and made a part of Mattel's response to each and every individual Interrogatory:

1.   Mattel objects to the Interrogatories on the grounds that they seek to impose obligations upon Mattel beyond those imposed by the Federal Rules of Civil Procedure.

2.   Mattel objects to the Interrogatories on the grounds that they call for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, including the privilege against disclosure of the identities and work product of consulting experts.  Such information and documents will not be produced.

3.     Mattel objects to the Interrogatories on the grounds that they call for production or disclosure of confidential, proprietary and/or private information. Such information and documents will not be disclosed or produced except pursuant to and in reliance upon the operative protective order.

4.     Mattel objects to the Interrogatories on the grounds that they seek the disclosure of information or documents that are in the possession, custody and control of independent parties over whom Mattel has no control, and seek the disclosure of information or documents that are in the possession, custody and control of defendant MGA or are publicly available and hence equally available to all parties to this litigation.

5.     Mattel objects to the Interrogatories on the grounds that they call for information that is neither relevant to the claims or defenses in the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

6.     Mattel objects to the Interrogatories on the grounds that they are unduly burdensome and oppressive.

7.     Mattel further objects to the Interrogatories on the grounds that they purport to circumvent the expert disclosure provisions of the Federal and Local Rules. Such disclosures will be made in accordance with the requirements of, and at the times specified by, the Court's Orders and the Rules.

8.     Mattel objects to the Interrogatories on the grounds that they seek the disclosure of information or documents in violation of the terms of agreements or protective orders entered into with third parties, or in violation of the privacy, contractual, or other rights of third parties.

9.     Mattel objects to the Interrogatories on the grounds that the definitions of "Mattel," "Bratz," "Contested Mattel Products" and "MY SCENE" are overbroad, vague and ambiguous and unduly burdensome.

10.     Mattel objects to the Interrogatories on the grounds that the defendants have exceeded the limit on the number of interrogatories they may

1 | properly serve on Mattel without leave of the Court, which defendants have neither
2 | sought nor obtained.
3 |
4 | **Specific and General Responses**
5 |     Each of the following objections and responses to the Interrogatories is
6 | expressly made subject to the above Preliminary Statement and General Objections,
7 | all of which are incorporated in each of the following objections and responses to
8 | specific Interrogatories.
9 |
10 |
11 | **RESPONSES TO INTERROGATORIES**
12 | **INTERROGATORY NO. 12:**
13 |     IDENTIFY each version of the EMPLOYEE INVENTIONS
14 | AGREEMENT adopted and/or used by or on behalf of MATTEL, including,
15 | without limitation, (a) the IDENTITY of all persons who participated in or were
16 | consulted concerning the creation, drafting, adoption, and/or use of the EMPLOYEE
17 | INVENTIONS AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S
18 | used each version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the
19 | reason(s) for the changes between each version.
20 |
21 | **RESPONSE TO INTERROGATORY NO. 12:**
22 |     In addition to the general objections stated above, Mattel specifically
23 | objects to this Interrogatory on the grounds that defendants' Second Set of
24 | Interrogatories purports to require Mattel to answer interrogatories that are in excess
25 | of the number of interrogatories allowed defendants, including pursuant to the
26 | Discovery Master's guidelines set forth in his Order of September 5, 2007. Because
27 | defendants have neither sought nor obtained leave of the Court to serve such excess
28 | number of interrogatories, they are improper. Mattel further objects to this

07975/2338502.1

-4-

MATTEL'S OBJECTIONS AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES

1  Interrogatory on the grounds that it seeks information that is not relevant nor likely

2  to lead to the discovery of admissible evidence.  Mattel further objects to this

3  Interrogatory as unreasonably burdensome, overbroad and compound, including

4  without limitation in that it seeks information about provisions of agreements that

5  have no bearing on this action and regardless of whether any such agreements are at

6  issue in this case.  Mattel further objects to this Interrogatory on the grounds that it

7  calls for the disclosure of information subject to the attorney-client privilege, the

8  attorney work-product doctrine and other applicable privileges.  Mattel further

9  objects to this Interrogatory as vague and ambiguous, including without limitation in

10 its use of the terms "participated in" and "use" in this context.  Mattel further objects

11 to this Interrogatory on the grounds that it calls for the disclosure of confidential

12 and/or proprietary information, which Mattel will disclose only subject to and in

13 reliance upon the operative protective order.

14

15 **INTERROGATORY NO. 13:**

16          Describe in detail each instance in which any provision of an

17 EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be

18 breached by an employee, independent contractor, or any other person with whom

19 MATTEL had entered into an EMPLOYEE INVENTIONS AGREEMENT,

20 including without limitation:  (a) a complete description of the conduct comprising

21 said breach; and (b) a complete description of all steps taken by MATTEL in

22 response to said breach or alleged breach *(including, for example, conducting an*

23 *investigation or arranging that an investigation be conducted on MATTEL'S behalf,*

24 *issuing a warning, whether written or oral; issuing any other notification, whether*

25 *written or oral; initiating civil litigation, including the name, case number and court*

26 *of any such litigation; initiating any other legal proceeding, including but not*

27 *limited to criminal proceedings, including the name, case number and court of any*

28 *such proceeding; making an exception, whether written, oral, express, or implied;*

1  *making a determination that no breach occurred, whether or not such determination*

2  *was documented; or no action).*

3

4  **RESPONSE TO INTERROGATORY NO. 13:**

5        In addition to the general objections stated above, Mattel specifically

6  objects to this Interrogatory on the grounds that defendants' Second Set of

7  Interrogatories purports to require Mattel to answer interrogatories that are in excess

8  of the number of interrogatories allowed defendants, including pursuant to the

9  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

10  defendants have neither sought nor obtained leave of the Court to serve such excess

11  number of interrogatories, they are improper.  Mattel further objects to this

12  Interrogatory on the grounds that it seeks information that is not relevant nor likely

13  to lead to the discovery of admissible evidence.  Mattel further objects to this

14  Interrogatory as unreasonably burdensome, overbroad and compound, including

15  without limitation in that it seeks information about agreements and provisions of

16  agreements that are not at issue in this case and about employees, independent

17  contractors and other persons who have no bearing on this action.  Mattel further

18  objects to this Interrogatory on the grounds that it calls for the disclosure of

19  information subject to the attorney-client privilege, the attorney work-product

20  doctrine and other applicable privileges.  Mattel further objects to this Interrogatory

21  on the grounds that it calls for the disclosure of confidential and/or proprietary

22  information, which Mattel will disclose only subject to and in reliance upon the

23  operative protective order.

24

25  **INTERROGATORY NO. 14:**

26        IDENTIFY each version of the CONFLICT OF INTEREST

27  QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including,

28  without limitation, (a) the identity of all persons who participated in or were

1    consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT

2    OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates

3    MATTEL'S used each version of the CONFLICT OF INTEREST

4    QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

5

6    **RESPONSE TO INTERROGATORY NO. 14:**

7            In addition to the general objections stated above, Mattel specifically

8    objects to this Interrogatory on the grounds that defendants' Second Set of

9    Interrogatories purports to require Mattel to answer interrogatories that are in excess

10    of the number of interrogatories allowed defendants, including pursuant to the

11    Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

12    defendants have neither sought nor obtained leave of the Court to serve such excess

13    number of interrogatories, they are improper.  Mattel further objects to this

14    Interrogatory on the grounds that it seeks information that is not relevant nor likely

15    to lead to the discovery of admissible evidence.  Mattel further objects to this

16    Interrogatory as unreasonably burdensome, overbroad and compound, including

17    without limitation in that it seeks information about provisions of conflict of interest

18    questionnaires that have no bearing on this action and regardless of whether any

19    such questionnaires are at issue in this case.  Mattel further objects to this

20    Interrogatory on the grounds that it calls for the disclosure of information subject to

21    the attorney-client privilege, the attorney work-product doctrine and other applicable

22    privileges.  Mattel further objects to this Interrogatory as vague and ambiguous,

23    including without limitation in its use of the terms "participated in" and "use" in this

24    context.  Mattel further objects to this Interrogatory on the grounds that it calls for

25    the disclosure of confidential and/or proprietary information, which Mattel will

26    disclose only subject to and in reliance upon the operative protective order.

27

28

**INTERROGATORY NO. 15:**

Describe in detail each instance in which any provision of a CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without limitation: (a) a description of the conduct comprising said breach; and (b) a description of all steps taken by MATTEL in response to said breach or alleged breach *(including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf, issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action).*

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to the general objections stated above, Mattel specifically objects to this Interrogatory on the grounds that defendants' Second Set of Interrogatories purports to require Mattel to answer interrogatories that are in excess of the number of interrogatories allowed defendants, including pursuant to the Discovery Master's guidelines set forth in his Order of September 5, 2007. Because defendants have neither sought nor obtained leave of the Court to serve such excess number of interrogatories, they are improper. Mattel further objects to this Interrogatory on the grounds that it seeks information that is not relevant nor likely to lead to the discovery of admissible evidence. Mattel further objects to this Interrogatory as unreasonably burdensome, overbroad and compound, including

1  without limitation in that it seeks information about conflict of interest
2  questionnaires and provisions of such questionnaires that are not at issue in this case
3  and about employees, independent contractors and other persons who have no
4  bearing on this action.  Mattel further objects to this Interrogatory on the grounds
5  that it calls for the disclosure of information subject to the attorney-client privilege,
6  the attorney work-product doctrine and other applicable privileges.  Mattel further
7  objects to this Interrogatory on the grounds that it calls for the disclosure of
8  confidential and/or proprietary information, which Mattel will disclose only subject
9  to and in reliance upon the operative protective order.

10

11  **INTERROGATORY NO. 16:**

12          STATE THE COMPLETE FACTUAL BASIS FOR YOUR
13  CONTENTION that MATTEL has a viable affirmative claim for relief against
14  MGA even if the evidence establishes both of the following:  (i) in August and/or
15  September, 1998, Carter Bryant conceived of the line of fashion dolls that he named
16  Bratz, and (ii) the design for the BRATZ dolls sold by MGA in 2001 was reduced to
17  practice after October 20, 2000.

18

19  **RESPONSE TO INTERROGATORY NO. 16:**

20          In addition to the general objections stated above, Mattel specifically
21  objects to this Interrogatory on the grounds that defendants' Second Set of
22  Interrogatories purports to require Mattel to answer interrogatories that are in excess
23  of the number of interrogatories allowed defendants, including pursuant to the
24  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because
25  defendants have neither sought nor obtained leave of the Court to serve such excess
26  number of interrogatories, they are improper.  Mattel further objects to this
27  interrogatory in that it asks Mattel to make assumptions that are contrary to the
28  evidence, including without limitation to facts admitted to by defendants and/or their

1  witnesses, and are contrary to the logical inferences stemming from defendants'

2  conduct, including their concealment and spoliation of evidence.  Mattel further

3  objects to this Interrogatory as unreasonably burdensome and overbroad in that it

4  purports to require Mattel to summarize all facts on this subject, including without

5  limitation, facts that are known to or in the possession, custody and control of

6  defendants MGA and Bryant and that such defendants have concealed despite Court

7  Orders to provide them, and despite defendants' refusals to answer interrogatories

8  with the same or comparable language.  Mattel further objects to this Interrogatory

9  as compound.  Mattel further objects to this Interrogatory on the grounds that it calls

10  for the disclosure of information subject to the attorney-client privilege, the attorney

11  work-product doctrine and other applicable privileges.  Mattel further objects to this

12  Interrogatory on the grounds that it calls for the disclosure of confidential and/or

13  proprietary information, which Mattel will disclose only subject to and in reliance

14  upon the operative protective order.

15

16  **INTERROGATORY NO. 17:**

17          STATE THE COMPLETE FACTUAL BASIS FOR YOUR

18  CONTENTION that MATTEL employees in the Design Center who personally

19  knew Carter Bryant did not know and/or believe, immediately following the launch

20  of MGA's Bratz dolls in 2001, that Carter Bryant was the creator of the concept for

21  the BRATZ line of dolls.

22

23  **RESPONSE TO INTERROGATORY NO. 17:**

24          In addition to the general objections stated above, Mattel specifically

25  objects to this Interrogatory on the grounds that defendants' Second Set of

26  Interrogatories purports to require Mattel to answer interrogatories that are in excess

27  of the number of interrogatories allowed defendants, including pursuant to the

28  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

1  defendants have neither sought nor obtained leave of the Court to serve such excess

2  number of interrogatories, they are improper.  Mattel further objects to this

3  interrogatory in that it misstates Mattel's contentions.  Mattel further objects to this

4  interrogatory on the ground that it seeks information that is not relevant nor

5  reasonably calculated to lead to the discovery of admissible evidence, including

6  without limitation in that knowledge or notice of such matters are irrelevant to

7  defendants' purported statute of limitations and laches defenses.  Mattel further

8  objects to this Interrogatory as unreasonably burdensome and overbroad in that it

9  purports to require Mattel to summarize all facts on this subject, despite defendants'

10  own refusals to answer interrogatories with the same or comparable language.

11  Mattel further objects to this Interrogatory as compound.  Mattel further objects to

12  this Interrogatory on the grounds that it calls for the disclosure of information

13  subject to the attorney-client privilege, the attorney work-product doctrine and other

14  applicable privileges.  Mattel further objects to this Interrogatory on the grounds that

15  it calls for the disclosure of confidential and/or proprietary information, which

16  Mattel will disclose only subject to and in reliance upon the operative protective

17  order.

18

19  **INTERROGATORY NO. 18:**

20          STATE THE COMPLETE FACTUAL BASIS FOR YOUR

21  CONTENTION that any of the fashions and/or accessories for the BRATZ line of

22  dolls sold by MGA violate or infringe any of MATTEL'S intellectual property

23  and/or proprietary rights.

24

25  **RESPONSE TO INTERROGATORY NO. 18:**

26          In addition to the general objections stated above, Mattel specifically

27  objects to this Interrogatory on the grounds that defendants' Second Set of

28  Interrogatories purports to require Mattel to answer interrogatories that are in excess

1  of the number of interrogatories allowed defendants, including pursuant to the

2  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

3  defendants have neither sought nor obtained leave of the Court to serve such excess

4  number of interrogatories, they are improper.  Mattel further objects to this

5  interrogatory on the ground that it seeks information that is not relevant nor

6  reasonably calculated to lead to the discovery of admissible evidence, including in

7  that it purports to require Mattel to identify matters that are the subject of claims not

8  asserted in this action and/or are asserted in other actions.  Mattel further objects to

9  this Interrogatory on the grounds that it is unreasonably burdensome and overbroad,

10  including in that it purports to require Mattel to summarize all facts on this subject,

11  despite defendants' own refusals to answer interrogatories with the same or

12  comparable language.  Mattel further objects to this Interrogatory as compound.

13  Mattel further objects to this Interrogatory on the grounds that it calls for the

14  disclosure of information subject to the attorney-client privilege, the attorney work-

15  product doctrine and other applicable privileges.  Mattel further objects to this

16  Interrogatory on the grounds that it calls for the disclosure of confidential and/or

17  proprietary information, which Mattel will disclose only subject to and in reliance

18  upon the operative protective order.

19

20  **INTERROGATORY NO. 19:**

21          IDENTIFY with specificity each element of each ALLEGED

22  COPYRIGHTED WORK that MATTEL contends is an original element protectable

23  under the United States Copyright Laws.

24

25  **RESPONSE TO INTERROGATORY NO. 19:**

26          In addition to the general objections stated above, Mattel specifically

27  objects to this Interrogatory on the grounds that defendants' Second Set of

28  Interrogatories purports to require Mattel to answer interrogatories that are in excess

1  of the number of interrogatories allowed defendants, including pursuant to the

2  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

3  defendants have neither sought nor obtained leave of the Court to serve such excess

4  number of interrogatories, they are improper.  Mattel further objects to this

5  interrogatory on the ground that it seeks information that is not relevant nor

6  reasonably calculated to lead to the discovery of admissible evidence.  Mattel

7  further objects to this Interrogatory on the grounds that it is unreasonably

8  burdensome and overbroad, including in that it purports to require Mattel to identify

9  "each element" of numerous works, despite defendants' own refusals to answer

10  interrogatories with the same or comparable language.  Mattel further objects to this

11  Interrogatory as compound.  Mattel further objects to this Interrogatory on the

12  grounds that it calls for the disclosure of information subject to the attorney-client

13  privilege, the attorney work-product doctrine and other applicable privileges.  Mattel

14  further objects to this Interrogatory on the grounds that it calls for the disclosure of

15  confidential and/or proprietary information, which Mattel will disclose only subject

16  to and in reliance upon the operative protective order.

17

18  **INTERROGATORY NO. 20:**

19  　　　　IDENTIFY with specificity each ALLEGED TRADE SECRET,

20  including the IDENTITY of each DOCUMENT that embodies or REFERS OR

21  RELATES to each ALLEGED TRADE SECRET.

22

23  **RESPONSE TO INTERROGATORY NO. 20:**

24  　　　　In addition to the general objections stated above, Mattel specifically

25  objects to this Interrogatory on the grounds that defendants' Second Set of

26  Interrogatories purports to require Mattel to answer interrogatories that are in excess

27  of the number of interrogatories allowed defendants, including pursuant to the

28  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

1  defendants have neither sought nor obtained leave of the Court to serve such excess

2  number of interrogatories, they are improper.  Mattel further objects to this

3  Interrogatory on the grounds that it is unreasonably burdensome, overbroad and

4  duplicative of other discovery requests propounded in this action.  Mattel further

5  objects to this Interrogatory on the grounds that it calls for the disclosure of

6  information subject to the attorney-client privilege, the attorney work-product

7  doctrine and other applicable privileges.  Mattel further objects to this Interrogatory

8  on the grounds that it calls for the disclosure of confidential and/or proprietary

9  information, which Mattel will disclose only subject to and in reliance upon the

10  operative protective order.

11

12  **INTERROGATORY NO. 21:**

13        IDENTIFY each PERSON who has had access to each ALLEGED

14  TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON

15  had access to; and (b) the date or dates each PERSON had this access.

16

17  **RESPONSE TO INTERROGATORY NO. 21:**

18        In addition to the general objections stated above, Mattel specifically

19  objects to this Interrogatory on the grounds that defendants' Second Set of

20  Interrogatories purports to require Mattel to answer interrogatories that are in excess

21  of the number of interrogatories allowed defendants, including pursuant to the

22  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

23  defendants have neither sought nor obtained leave of the Court to serve such excess

24  number of interrogatories, they are improper.  Mattel further objects to this

25  Interrogatory on the grounds that it is unreasonably burdensome, overbroad and

26  duplicative of other discovery requests propounded in this action.  Mattel further

27  objects to this interrogatory as vague and ambiguous, including as to time.  Mattel

28  further objects to this Interrogatory on the grounds that it calls for the disclosure of

1  information subject to the attorney-client privilege, the attorney work-product

2  doctrine and other applicable privileges.  Mattel further objects to this Interrogatory

3  on the grounds that it calls for the disclosure of confidential and/or proprietary

4  information, which Mattel will disclose only subject to and in reliance upon the

5  operative protective order.

6

7  **INTERROGATORY NO. 22:**

8          STATE THE COMPLETE FACTUAL BASIS FOR YOUR

9  CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.

10

11  **RESPONSE TO INTERROGATORY NO. 22:**

12          In addition to the general objections stated above, Mattel specifically

13  objects to this Interrogatory on the grounds that defendants' Second Set of

14  Interrogatories purports to require Mattel to answer interrogatories that are in excess

15  of the number of interrogatories allowed defendants, including pursuant to the

16  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

17  defendants have neither sought nor obtained leave of the Court to serve such excess

18  number of interrogatories, they are improper.  Mattel further objects to this

19  Interrogatory on the grounds that it is unreasonably burdensome, overbroad and

20  duplicative of other discovery requests propounded in this action, including that it

21  purports to require Mattel to identify facts that are known to or in the possession,

22  custody and control of defendants but that defendants have failed and refused to

23  discuss and including in that it purports to require Mattel to summarize all facts on

24  this subject, despite defendants' own refusals to answer interrogatories with the

25  same or comparable language.  Mattel further objects to this Interrogatory on the

26  grounds that it calls for the disclosure of information subject to the attorney-client

27  privilege, the attorney work-product doctrine and other applicable privileges.  Mattel

28  further objects to this Interrogatory on the grounds that it calls for the disclosure of

1 | confidential and/or proprietary information, which Mattel will disclose only subject

2 | to and in reliance upon the operative protective order.

3 |

4 | **INTERROGATORY NO. 23:**

5 |  STATE THE COMPLETE FACTUAL BASIS FOR YOUR

6 | CONTENTION that the ALLEGED TRADE SECRETS are protectable.

7 |

8 | **RESPONSE TO INTERROGATORY NO. 23:**

9 |  In addition to the general objections stated above, Mattel specifically

10 | objects to this Interrogatory on the grounds that defendants' Second Set of

11 | Interrogatories purports to require Mattel to answer interrogatories that are in excess

12 | of the number of interrogatories allowed defendants, including pursuant to the

13 | Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

14 | defendants have neither sought nor obtained leave of the Court to serve such excess

15 | number of interrogatories, they are improper.  Mattel further objects to this

16 | Interrogatory on the grounds that it is unreasonably burdensome, overbroad and

17 | duplicative of other discovery requests propounded in this action, including in that it

18 | purports to require Mattel to summarize all facts on this subject, despite defendants'

19 | own refusals to answer interrogatories with the same or comparable language.

20 | Mattel further objects to this Interrogatory on the grounds that it calls for the

21 | disclosure of information subject to the attorney-client privilege, the attorney work-

22 | product doctrine and other applicable privileges.  Mattel further objects to this

23 | Interrogatory on the grounds that it calls for the disclosure of confidential and/or

24 | proprietary information, which Mattel will disclose only subject to and in reliance

25 | upon the operative protective order.

26 |

27 |

28 |

07975/2338502.1

MATTEL'S OBJECTIONS AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES

Ex C, p 103

**INTERROGATORY NO. 24:**

DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that has been sold or offered for sale by YOU or YOUR licensees.  (The time period applicable to this interrogatory is from January 1, 1990 to the present).

**RESPONSE TO INTERROGATORY NO. 24:**

In addition to the general objections stated above, Mattel specifically objects to this Interrogatory on the grounds that defendants' Second Set of Interrogatories purports to require Mattel to answer interrogatories that are in excess of the number of interrogatories allowed defendants, including pursuant to the Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because defendants have neither sought nor obtained leave of the Court to serve such excess number of interrogatories, they are improper.  Mattel further objects to this interrogatory on the ground that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Mattel further objects to this Interrogatory on the grounds that it is unreasonably burdensome and overbroad, including in that it seeks information about Mattel sales and products not at issue in this case.  Mattel further objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and/or proprietary information, which Mattel will disclose only subject to and in reliance upon the operative protective order.

**INTERROGATORY NO. 25:**

IDENTIFY, fully and separately, each and every PERSON who was involved in the development or marketing of the CONTESTED MATTEL PRODUCTS by stating each PERSON'S name, role, and start/end date.  (As used in this Interrogatory, the phrase "development or marketing" means the entire process of creating and selling a new product or design, including without limitation, the

Ex C, p 104

1 | marketing, advertising, promotion, licensing, offering for sale, conception, origin,

2 | creation, design, development, sculpting, engineering, reduction to practice, tooling

3 | or painting of a product or embodiment of a product).

4 |

5 | **RESPONSE TO INTERROGATORY NO. 25:**

6 | In addition to the general objections stated above, Mattel specifically

7 | objects to this Interrogatory on the grounds that defendants' Second Set of

8 | Interrogatories purports to require Mattel to answer interrogatories that are in excess

9 | of the number of interrogatories allowed defendants, including pursuant to the

10 | Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

11 | defendants have neither sought nor obtained leave of the Court to serve such excess

12 | number of interrogatories, they are improper.  Mattel further objects to this

13 | Interrogatory on the grounds that it is unreasonably burdensome and overbroad,

14 | including in that it seeks information about Mattel sales and products not at issue in

15 | this case.  Mattel further objects to this Interrogatory on the grounds that it calls for

16 | the disclosure of confidential and/or proprietary information, which Mattel will

17 | disclose only subject to and in reliance upon the operative protective order.

18 |

19 | **INTERROGATORY NO. 26:**

20 | Describe in detail all instances in which a PERSON expressed

21 | confusion as to source or sponsorship between any MATTEL products, packaging

22 | or advertising (including, but not limited to, the CONTESTED MATTEL

23 | PRODUCTS) and any MGA products, packaging or advertising (including, but not

24 | limited to, "BRATZ"), by:  (i) stating the facts and circumstances of each instance;

25 | (ii) IDENTIFYING all DOCUMENTS that REFER OR RELATE TO each instance;

26 | and (iii) IDENTIFYING all witnesses who may have information that REFER OR

27 | RELATE TO each instance.

28 |

**RESPONSE TO INTERROGATORY NO. 26:**

In addition to the general objections stated above, Mattel specifically objects to this Interrogatory on the grounds that defendants' Second Set of Interrogatories purports to require Mattel to answer interrogatories that are in excess of the number of interrogatories allowed defendants, including pursuant to the Discovery Master's guidelines set forth in his Order of September 5, 2007. Because defendants have neither sought nor obtained leave of the Court to serve such excess number of interrogatories, they are improper. Mattel further objects to this Interrogatory on the grounds that it seeks information that is not relevant nor likely to lead to the discovery of admissible evidence and is unreasonably burdensome and overbroad, including in that it seeks information about products, packaging and other matters not at issue in this case. Mattel further objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and/or proprietary information, which Mattel will disclose only subject to and in reliance upon the operative protective order.

**INTERROGATORY NO. 27:**

For each PERSON listed in MATTEL'S INITIAL DISCLOSURES, IDENTIFY each PERSON and describe in detail each PERSON's alleged knowledge of the subjects or information identified in MATTEL'S INITIAL DISCLOSURES.

**RESPONSE TO INTERROGATORY NO. 27:**

In addition to the general objections stated above, Mattel specifically objects to this Interrogatory on the grounds that defendants' Second Set of Interrogatories purports to require Mattel to answer interrogatories that are in excess of the number of interrogatories allowed defendants, including pursuant to the Discovery Master's guidelines set forth in his Order of September 5, 2007. Because

07975/2338502.1

-19-

Ex C, p 106

1  defendants have neither sought nor obtained leave of the Court to serve such excess

2  number of interrogatories, they are improper.  Mattel further objects to this

3  Interrogatory on the grounds that it seeks information that is unreasonably

4  burdensome and overbroad.  Mattel further objects to this Interrogatory on the

5  grounds that it calls for the disclosure of confidential and/or proprietary information,

6  which Mattel will disclose only subject to and in reliance upon the operative

7  protective order.

8

9  **INTERROGATORY NO. 28:**

10       Describe in detail the complete factual basis for YOUR

11  COUNTERCLAIMS, including, without limitation all facts, DOCUMENTS, and

12  witnesses that REFER OR RELATE TO YOUR COUNTERCLAIMS.

13

14  **RESPONSE TO INTERROGATORY NO. 28:**

15       In addition to the general objections stated above, Mattel specifically

16  objects to this Interrogatory on the grounds that defendants' Second Set of

17  Interrogatories purports to require Mattel to answer interrogatories that are in excess

18  of the number of interrogatories allowed defendants, including pursuant to the

19  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

20  defendants have neither sought nor obtained leave of the Court to serve such excess

21  number of interrogatories, they are improper.  Mattel further objects to this

22  Interrogatory on the grounds that it is unreasonably burdensome, overbroad and

23  compound, including in that it purports to require Mattel to summarize all facts on

24  these multiple subject, despite defendants' own refusals to answer interrogatories

25  with the same or comparable language.  Mattel further objects to this Interrogatory

26  on the grounds that it calls for the disclosure of information subject to the attorney-

27  client privilege, the attorney work-product doctrine and other applicable privileges.

28  Mattel further objects to this Interrogatory on the grounds that it calls for the

1  disclosure of confidential and/or proprietary information, which Mattel will disclose
2  only subject to and in reliance upon the operative protective order.

3

4  **INTERROGATORY NO. 29:**

5         Describe in detail any estimate or calculation of damage, loss, injury, or
6  unjust enrichment, by reason of any act or omission alleged in YOUR
7  COUNTERCLAIMS, that YOU have made or that has been made on YOUR behalf
8  or at YOUR request, including all facts, DOCUMENTS or witnesses RELATING
9  TO each estimate or calculation.

10

11  **RESPONSE TO INTERROGATORY NO. 29:**

12         In addition to the general objections stated above, Mattel specifically
13  objects to this Interrogatory on the grounds that defendants' Second Set of
14  Interrogatories purports to require Mattel to answer interrogatories that are in excess
15  of the number of interrogatories allowed defendants, including pursuant to the
16  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because
17  defendants have neither sought nor obtained leave of the Court to serve such excess
18  number of interrogatories, they are improper.  Mattel further objects to this
19  Interrogatory on the grounds that it is unreasonably burdensome, overbroad and
20  compound, including in that it purports to require Mattel to summarize all facts on
21  these multiple subject, despite defendants' own refusals to answer interrogatories
22  with the same or comparable language.  Mattel further objects to this Interrogatory
23  on the grounds that it calls for the disclosure of information subject to the attorney-
24  client privilege, the attorney work-product doctrine and other applicable privileges.
25  Mattel further objects to this Interrogatory on the grounds that it purports to require
26  Mattel to disclose the identity of consulting experts.  The identity of any such
27  experts will not be disclosed.  Mattel further objects to this Interrogatory on the
28  grounds that it calls for the disclosure of confidential and/or proprietary information,

1   which Mattel will disclose only subject to and in reliance upon the operative

2   protective order.  Mattel further objects to this Interrogatory on the grounds that it

3   purports to circumvent the expert disclosure provisions of the <u>Federal</u> and <u>Local</u>

4   <u>Rules</u>.  Such disclosures will be made in accordance with the requirements of, and at

5   the times specified by, the Court's Orders and the <u>Rules</u>.

6

7   **INTERROGATORY NO. 30:**

8           IDENTIFY each and every SOURCE OF INFORMATION from which

9   YOU have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

10

11  **RESPONSE TO INTERROGATORY NO. 30:**

12          In addition to the general objections stated above, Mattel specifically

13  objects to this Interrogatory on the grounds that defendants' Second Set of

14  Interrogatories purports to require Mattel to answer interrogatories that are in excess

15  of the number of interrogatories allowed defendants, including pursuant to the

16  Discovery Master's guidelines set forth in his Order of September 5, 2007.  Because

17  defendants have neither sought nor obtained leave of the Court to serve such excess

18  number of interrogatories, they are improper.  Mattel further objects to this

19  Interrogatory on the grounds that it is unreasonably burdensome, overbroad and

20  compound, including in that it purports to require Mattel to summarize all facts on

21  these multiple subject, despite defendants' own refusals to answer interrogatories

22  with the same or comparable language.  Mattel further objects to this Interrogatory

23  on the grounds that it calls for the disclosure of information subject to the attorney-

24  client privilege, the attorney work-product doctrine and other applicable privileges.

25  Mattel further objects to this Interrogatory on the grounds that it purports to require

26  Mattel to disclose the identity of consulting experts.  The identity of any such

27  experts will not be disclosed.  Mattel further objects to this Interrogatory on the

28  grounds that it calls for the disclosure of confidential and/or proprietary information,

-22-

MATTEL'S OBJECTIONS AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES

1 | which Mattel will disclose only subject to and in reliance upon the operative
2 | protective order.

3

4 | **INTERROGATORY NO. 31:**

5 | STATE THE COMPLETE FACTUAL BASIS FOR YOUR
6 | CONTENTION that any BRATZ doll is substantially similar to, a copy or a
7 | derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19,
8 | 2000.

9

10 | **RESPONSE TO INTERROGATORY NO. 31:**

11 | In addition to the general objections stated above, Mattel specifically
12 | objects to this Interrogatory on the grounds that defendants' Second Set of
13 | Interrogatories purports to require Mattel to answer interrogatories that are in excess
14 | of the number of interrogatories allowed defendants, including pursuant to the
15 | Discovery Master's guidelines set forth in his Order of September 5, 2007. Because
16 | defendants have neither sought nor obtained leave of the Court to serve such excess
17 | number of interrogatories, they are improper. Mattel further objects to this
18 | Interrogatory on the grounds that it is unreasonably burdensome, overbroad and
19 | compound, including in that it purports to require Mattel to summarize all facts on
20 | these multiple subject, despite defendants' own refusals to answer interrogatories
21 | with the same or comparable language. Mattel further objects to this Interrogatory
22 | on the grounds that its description of Mattel's positions in this suit is erroneous and
23 | incomplete. Mattel further objects to this Interrogatory on the grounds that it calls
24 | for the disclosure of information subject to the attorney-client privilege, the attorney
25 | work-product doctrine and other applicable privileges. Mattel further objects to this
26 | Interrogatory on the grounds that it purports to require Mattel to disclose the identity
27 | of consulting experts. The identity of any such experts will not be disclosed. Mattel
28 | further objects to this Interrogatory on the grounds that it calls for the disclosure of

1   confidential and/or proprietary information, which Mattel will disclose only subject

2   to and in reliance upon the operative protective order.

3

4   DATED:  January 3, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                     By _Michael Zeller (By Heidi Frahm)_

7                       Michael T. Zeller
                       Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "D"

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5

6  Discovery Master

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,                Consolidated with
                                          Case No. CV 04-09059
14          v.                            Case No. CV 05-2727

15  MATTEL, INC., a Delaware              **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                        **ORDER NO. 6, REGARDING:**
              Defendant.
17                                            **(1)  MOTION OF MATTEL, INC.
                                              TO COMPEL PRODUCTION OF
18                                            DOCUMENTS RESPONSIVE
                                              TO ITS FIRST AND THIRD
19                                            SETS OF REQUESTS FOR
                                              PRODUCTION; and**
20
                                              **(2)  MOTION OF MGA TO
21                                            COMPEL PRODUCTION OF
                                              DOCUMENTS RESPONSIVE TO
22                                            THE DOCUMENT REQUEST
                                              NOS. 526 AND 528**
23

24  ┌────────────────────────────────┐
    │ CONSOLIDATED WITH              │
25  │ MATTEL, INC. v. BRYANT and     │
    │ MGA ENTERTAINMENT, INC. v.     │
26  │ MATTEL, INC.                   │
    │                                │
27  │                                │
    └────────────────────────────────┘
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                ORDER NO. 6
                                    [Case No. CV 04-09049 SGL (RNBx)]

## I.      INTRODUCTION

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.     THE MATTEL MOTION

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15).  However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.      The Discovery Sought

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664."  (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel."  (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 113

**B.**     **Phase 1 Ruling**

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88. Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7). The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7 - 8).

**C.**     **Objections of MGA Entertainment**

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents. First, MGA Entertainment argues that Mattel failed to meet and confer. Second, MGA Entertainment argues that the requests are overbroad. Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

     **1.**     **Purported Failure To Meet And Confer**

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer. (MGA Opposition, pp. 9 - 10). However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].) MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

Arent Fox LLP
Attorneys At Law
Los Angeles

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 114

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.)  However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion. Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14        **2.      Overbreadth Objection**

15        MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17  Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8).  But MGA Entertainment's argument fails to recognize

25  //

26

27  ───────────────

28  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically" since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9), and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 115

1   the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2        The touchstone for determining whether a particular discovery request is

3   reasonably calculated to lead to the discovery of admissible evidence in this case is

4   whether the request bears some relation to the issues to be tried in Phase 2.

5   Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6   Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7   not linked to a single discrete product or even multiple products.  Instead, the issues

8   to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9   Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14   • "engaged in a pattern of stealing and using [Mattel's] property and trade

15      secrets," (*Id.*,    ¶ 1);

16   • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17      dolls] on numerous occasions," including by hiring away three key Mattel

18      employees in Mexico who "stole virtually every category of Mattel's

19      sensitive and trade secret business plans and information for the Mexican

20      market as well as a significant quantity of sensitive and trade secrete

21      information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22   • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23      advertising and strategy, not only for Canada, but the United States and the

24      rest of the world," (*Id.*, ¶ 70);

25   //

26

27   _____

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it
28   would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    - 4 -                        ORDER NO. 6
                                                        [Case No. CV 04-09049 SGL (RNBx)]

Ex D 116

- "took from Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States," (*Id.*, ¶ 4);

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

- stole "Mattel's plans, strategy and business information for the Mexican market and materials related to Mattel's worldwide business strategies," (*Id.*, ¶ 37);

- "enticed [Mattel's employees] to steal Mattel's most sensitive business planning materials, and then hired them to assist in establishing and running MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

- "directed [certain Mattel employees'] to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor would need to enter the Mexican market, and to unlawfully compete with Mattel in Mexico, in the United States and elsewhere," such as "global internal future line lists that detailed anticipated future products; production and shipping costs for Mattel products, daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies, merchandising plans; retail pricing and marketing strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 117

1      • "targeted certain Mattel employees who have broad access to Mattel

2       proprietary information in an effort to induce and encourage them to join

3       MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4       Mattel confidential information and trade secrets," including by "promising

5       these employees salaries 25 percent or more higher than they earn at Mattel

6       and stating to them that they should not be concerned by legal action taken

7       by Mattel to protect its trade secrets and its rights because such claims are

8       hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9      • "hired directly from Mattel's United States operations at least 25 employees,

10      from Senior Vice-President level to lower level employees," and that some of

11      these individuals misappropriated "Mattel confidential and proprietary

12      information, including Mattel's strategic plans; business operations; methods

13      and systems; marketing and advertising strategies and plans; future product

14      lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15      In light of the foregoing allegations, the documents requested by Mattel fall

16  within the purview of permissible discovery allowed by Federal Rule of Civil

17  Procedure 26.  Rule 26 permits the discovery of information that is "relevant to the

18  claim or defense of any party."  Fed.R.Civ.P. 26(b)(1).  Accordingly, Mattel's

19  request for "all personnel and vendor files" of individuals who either (1) work at

20  MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21  of MGA Entertainment and used to work with or had contact with Mattel appears to

22  be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23      **3.    Privacy Rights Objection**

24      MGA Entertainment's final argument is that the records sought by Mattel

25  (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26  be produced under *California law* unless the individuals affected are given advance

27  notice of the requests and afforded an opportunity to object to the production.

28  (MGA's Opposition, pp. 10 – 14).  Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

1    the California Constitution and California Code of Civil Procedure § 1985.3

2    together constitute a fundamental public policy in California that do not allow

3    MGA Entertainment to "place its employees privacy rights at risk." (*Id.*).  But each

4    of these contentions is unavailing.

5            As an initial matter, a protective order has been entered in this case.  (Mattel

6    Reply, p. 2).  This fact is crucial to analyzing the privacy concerns raised by MGA

7    Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8    where such an order has been (or will be) entered, state-based privacy laws do not

9    bar production of personnel files.[3]  *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-

19   Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &

22   Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25           Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26   _____

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
information may be appropriately disclosed if a protective order is in place.  (*See, e.g., Valley Bank of Nev. v.
27   Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
28   and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 119

1    held that "personnel files are discoverable in federal question cases . . . despite

2    claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3    1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4    Cir. 1975)), and this includes any claim of privilege resulting from California Code

5    of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6    Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7    Procedure § 1985.3 do not apply in federal question cases because "federal law

8    applies in terms of substantive, privilege and discovery law."]).   Accordingly, the

9    privacy concerns raised by MGA Entertainment have no applicability here.

10          Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15   Mattel restated this position at the hearing.

16          The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22   **D.    Conclusion**

23          The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25   [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)

26   and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

27   [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.

28   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 120

1   2 claims, and are not protected from disclosure on the grounds of third-party

2   privacy rights or any other ground cited by MGA Entertainment.

3   **III.   MATTEL'S REQUEST FOR SANCTIONS**

4          In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5   fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6   *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7   however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8   stage that could have been raised in the moving papers.[7] This rule is routinely

9   adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16         Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.   MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19        **REQUEST NOS. 526 AND 528**

20         In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

---

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                            - 9 -                    ORDER NO. 6
                                                          [Case No. CV 04-09049 SGL (RNBx)]

### A.      The Discovery Sought

1     The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

### B.      Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 122

1   privileged.

2          **1.    Overbreadth Objection**

3         Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition.  Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53).  The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office.  (*Id.*, ¶ 53).  Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75).  Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive.  (*Id.*, ¶

14   75).

15         Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21         Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28         Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 123

1    nonetheless argues in its Opposition that Request No. 526 is overbroad because

2    Mattel's civil claims are wholly separate and independent from any criminal relief

3    it is seeking.  (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4    MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point.  The issue is not whether Mattel's

6    communications with law enforcement officials constitute the basis of Mattel's

7    claims.  Rather, the issue is whether those communications are reasonably

8    calculated to lead to the discovery of admissible evidence regarding what Mattel

9    itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10   secret misappropriation.  Mattel does not dispute that its subsequent

11   communications with law enforcement involve the same conduct that is the basis of

12   the civil claims.  On the contrary, Mattel has alleged in its SACC that it is

13   concurrently seeking relief through the criminal justice system and this civil action

14   based on the same documents allegedly stolen by MGA and confirmed that fact

15   during the meet and confer process.  (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16   judicial file in the criminal proceedings in Mexico" are among the "documents

17   *relating to Mattel's Counterclaims.*"] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19   disclose what Mattel told the investigating authorities about what information was

20   taken, the people who have knowledge of the thefts, and any supposed criminal

21   intent on the part of MGA or the former Mattel employees who supposedly took the

22   information.  Given this admitted overlap in subject matter, the communications

23   between Mattel and law enforcement agencies are discoverable.  (*See, e.g., In re*

24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25   plaintiff permitted discovery of materials provided to law enforcement authorities

26   concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 124

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14        Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26        **2.**    **Work Product Objection**

27        Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 125

1  agencies, would violate the attorney work-product doctrine by revealing counsel's

2  strategy and mental processes. (Mattel Opposition, p. 6).

3      To qualify for work-product protection under Federal Rule Civil Procedure

4  26, documents must meet two requirements: (1) they must be "prepared in

5  anticipation of litigation or for trial," and (2) they must be prepared "by or for

6  another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7  *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the

8  doctrine is applicable to a particular document, "the court must consider the

9  *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10 party's efforts in *preparing for litigation*.'" *Johnson v. Finn*, 2007 WL 3232253,

11 *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree

12 that the purpose of the work product doctrine is "to establish a zone of privacy for

13 *strategic litigation planning*." (Opposition, p. 6 quoting *United States v. Adlman*,

14 68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15      Here, Mattel does not demonstrate any connection between its

16 communications with law enforcement officials, on the one hand, and its litigation

17 strategy in the present civil case, on the other hand. Rather, it appears that Mattel's

18 primary purpose in communicating with, and disclosing the disputed documents to,

19 various law enforcement officials was to instigate criminal prosecutions by

20 prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent

21 the selection of particular documents by Mattel's counsel reveals counsel's

22 impressions and mental processes, the window into counsel's thinking relates to

23 counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24 There is no showing that counsel's thinking regarding how best to achieve *that*

25 purpose would also reveal counsel's strategies and impressions in any matter

26 related to the current civil litigation. In short, Mattel has made an insufficient

27 showing that the communications and documents at issue constitute work product

28 in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 126

1     Further, even if the work-product doctrine somehow applied to Mattel's

2  communications with law enforcement agencies, Mattel waived it, in at least two

3  ways.  First, Mattel admits that it has already produced some of those

4  communications to MGA.  (See Alger Decl., ¶ 16.)

5     Second, to the extent Mattel's communications with law enforcement

6  officials disclose its conclusions and theories to law enforcement officials, such a

7  disclosure also constitutes a waiver.  Mattel admits that the work-product doctrine

8  is waived when material is "voluntarily disclosed such that it may become readily

9  accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)).  In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of …trial preparation.'  Thus, disclosure in such a situation

14  results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary." *Id.*

21     Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based.  Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved." (Mattel Opposition, p. 5).  Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 127

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5              **3.      Privilege Objections**

6              Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11             That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16             However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24             Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 128

1    *liability* under California tort law and federal anti-trust law, respectively – not that

2    such parties are immune from *discovery* in civil suits.

<b>a.   The Litigation Privilege</b>

4        The California Supreme Court described the scope of the litigation privilege

5    in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6    According to Mattel, *Hagberg* stands for the proposition that a communication to

7    law enforcement officials about suspected criminal activity "enjoys an unqualified

8    privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9    addresses the issue presented here, namely whether communications and documents

10   passed from the reporting party to the law enforcement agency is discoverable in

11   litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12   in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13   statements made when a citizen contacts law enforcement personnel to report

14   suspected criminal activity…." 32 Cal. 4th at 355 (emphasis added).  The Court

15   answered that question in the affirmative. *Id.*

16       The other California cases cited by Mattel are in accord.  See *Jacob B. v.

17   County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18   principles underlying section 47(b)'s litigation privilege in many cases….  [P]ublic

19   agencies… must be permitted to provide such information without fear of being

20   harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21   3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22   "afford[s] litigants and witnesses… the utmost freedom of access to the courts

23   without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24   added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25   judgment against plaintiff's claims for slander and malicious prosecution based on

26   Section 47(b)).

<b>b.   The <i>Noerr-Pennington</i> Doctrine</b>

28       "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 129

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

### c.   **Application To The Present Case**

13       Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials. If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits. In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

### C.   **Conclusion**

21       The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity. However, in that case (which arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those

28  communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Ex D 130

## V.   DISPOSITION

1. The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2. Mattel's request for sanctions is **DENIED**.

3. The MGA Motion is **GRANTED**.

4. All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5. All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6. The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7. All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:        March 13, 2009

By:        /s/ Robert C. O'Brien
            ROBERT C. O'BRIEN
            Discovery Master

Ex D 131