# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: December 3, 2007
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER           ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Matthew M. Werdegar                    Michael T. Zeller
                                       B. Dylan Proctor
                                       Jon D. Corey

ATTORNEYS PRESENT FOR MGA:             ATTORNEY PRESENT FOR CARLOS
                                       GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                        Alexander H. Cote
Carl A. Roth
Ryan Weinstein

PROCEEDINGS:   ORDER GRANTING MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL
               INTERROGATORY; ORDER DENYING MOTION TO STRIKE (OR
               ALTERNATIVELY, FOR SUMMARY JUDGMENT AS TO) AFFIRMATIVE
               DEFENSES

        The Court heard argument on these motions on December 3, 2007.  For reasons discussed
on the record, the Court GRANTS the motion for leave to serve a supplemental interrogatory.
Mattel may serve on all opposing parties, and all parties served shall answer without objection
thereto, the following interrogatory:

        State the facts upon which YOU intend to rely at trial to support YOUR
        affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts and

MINUTES FORM 90                                    Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1              Time: 00/45

EXHIBIT __1__
PAGE __4__

all DOCUMENTS that REFER OR RELATE TO those facts.

In light of the Court's granting of the motion for leave to file a supplemental interrogatory, the motion to strike (or alternatively, for summary judgment as to) MGA's affirmative defenses is DENIED WITHOUT PREJUDICE pending completion of discovery in this action.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                              2 .

Initials of Deputy Clerk __jh_____
Time: 00/45

EXHIBIT ___1___
PAGE ___5___

# EXHIBIT 2



1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                         Consolidated with
14        v.                             Case No. CV 04-09059
                                         Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                         **PHASE 2 DISCOVERY MATTER**
16
                Defendant.               **AMENDED[1] ORDER NO. 11,**
17                                       **REGARDING:**

18                                       **(1) MOTION OF MATTEL, INC.
                                         TO COMPEL RESPONSES TO
19                                       INTERROGATORIES AND
                                         PRODUCTION OF DOCUMENTS
20                                       BY MGA ENTERTAINMENT, INC.
                                         AND ISAAC LARIAN; and**
21
22  CONSOLIDATED WITH                    **(2) MOTION OF MATTEL, INC.
    MATTEL, INC. v. BRYANT and           TO COMPEL THE DEPOSITIONS
23  MGA ENTERTAINMENT, INC. v.           OF PABLO VARGAS AND
    MATTEL, INC.                         MARIANA TRUEBA**
24
25
26
27  _____
    [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28  requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
    days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                        AMENDED ORDER NO. 11
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __6__

1    This Order sets forth the Discovery Master's ruling on two motions filed by

2    Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3    production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4    ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5    to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6    (the "Deposition Motion") (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 19, 2009.  All interested parties were represented by counsel and afforded

9    the opportunity to present oral argument on the Motions.  The Discovery Master,

10    having considered the papers filed in support of and in opposition to the Motions,

11    and having heard oral argument, rules as set forth below.

12  **I.   MATTEL'S WRITTEN DISCOVERY MOTION**

13    In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14    documents responsive to 40 separate document requests[2] and provide answers to 12

15    different interrogatories.  (Separate Statement in Support of the Written Discovery

16    Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17    documents responsive to 3 separate document requests and provide answers to 11

18    different interrogatories.[3]  (*Id.*, pp. 41 – 43 and 49 – 102).

19    **A.   Document Requests**

20      **1.   Document Requests Propounded On MGA**

21    Document Request Nos. 4 through 37 seek financial information from MGA

[2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45). (*Compare* Separate Statement in Support of the Written Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14). Because Mattel has in reality moved to compel responses to Document Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42. Moreover, any reference to a document request relating to MGA in this Order shall refer to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

[3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  2
PAGE  7

1   related to sales, revenues, costs, profits, customer returns, customer rebates and

2   customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3   sufficient to identify customers who purchased any Bratz Product from MGA or its

4   licensees.  (Watson Decl., Ex. 1 at pp. 7 – 12).

5           Document Request Nos. 43, 44 and 46 similarly seek financial information

6   from MGA related to the Bratz product line:

7           • Document Request No. 43 (erroneously numbered in Mattel's Separate

8             Statement as request number 42): "All sales, profit and cash flow

9             projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10            BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

11          • Document Request No. 44 (erroneously numbered in Mattel's Separate

12            Statement as request number 43): "All DOCUMENTS that REFER

13            OR RELATE TO the value of the Bratz brand." (Id.).

14          • Document Request No. 46 (erroneously numbered in Mattel's Separate

15            Statement as request number 45): "All DOCUMENTS that evidence,

16            reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17            fashion doll market, including, without limitation, the extent to which

18            Bratz has been or is gaining or losing market share in the fashion doll

19            market." (Id., p. 14).

20          Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23          • Document Request No. 40: "All DOCUMENTS that describe YOUR

24   ───────────────
     [4] Mattel defines the term "Bratz Product" as follows:
25            'Bratz Product' means any product whether two-dimensional or three-dimensional,
              and whether in tangible, digital or electronic or other form:  (i) that is or has ever
26            been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
              line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES
              TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
27            packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists
              of or REFERS OR RELATES TO BRATZ.
28   (Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     2
PAGE       6

1    cost allocation procedures." (*Id.*, p. 13).

2    • Document Request No. 41: "YOUR general ledgers from January 1,

3    1995 through the present." (*Id.*).

4    • Document Request No. 45 (erroneously numbered in Mattel's Separate

5    Statement as request number 44): "DOCUMENTS sufficient to

6    calculate YOUR net worth on a yearly basis for each year from 1999

7    to the present." (*Id.*).

8    **2.    Document Requests Propounded On Larian**

9    The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13   each account with any bank or financial institution that YOU have or

14   have had, or that YOU have or have had any legal or beneficial interest

15   in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish

17   YOUR gross income, and the sources of that gross income, for the

18   years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate

20   YOUR net worth on a yearly basis for each year from 1999 to the

21   present." (*Id.*, p. 63).

22   **3.    Phase 1 Rulings**

23   This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue. Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __9__

1    the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2    Because the prior discovery master compelled MGA to produce information

3    responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4    Larian to produce information responsive to Document Request Nos. 207, 208 and

5    269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6    Civil Procedure 26 to supplement their prior productions, and (2) that the

7    information the MGA Parties "are withholding is relevant to the damages Mattel

8    seeks," (Written Discovery Motion, pp. 8 – 9).

9                    **4.     Objections Of MGA**

10   In their Opposition, the MGA Parties rely on two grounds for refusing to

11   supplement their prior document productions regarding Document Request Nos. 4 –

12   37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13   failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14   Parties argue that the requested information is not relevant to the claims and

15   defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16                    **a.     Purported Failure To Meet And Confer**

17   Because it could dispose of the outstanding discovery issues related to the

18   document requests that are the subject of the present dispute, the Discovery Master

19   first addresses the MGA Parties' argument that Mattel failed to meet and confer

20   properly prior to filing its Written Discovery Motion.

21   The MGA Parties argue that Mattel's motion to compel should be denied

22   because Mattel failed to comply with the meet and confer requirements of Local

23   Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24   however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25   discovery disputes in this case.  The applicable meet and confer procedures are set

26   forth in the Court's order appointing a discovery master dated December 6, 2006

27   ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28   Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __1&__

1  requires that, before filing a motion to compel, the moving party must meet and
2  confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3  　　　Because Rule 37 and the Discovery Master Order govern the meet and confer
4  process in this case, the Discovery Master construes the MGA Parties' meet and
5  confer argument in light of the good faith requirement embedded in Rule 37. The
6  MGA Parties claim that Mattel did not meet and confer in good faith because its
7  counsel sent them "a meet and confer letter inviting [them] to further meet and
8  confer on February 11, 2009" and then filed a motion to compel one "day before
9  the proposed meet and confer session" was scheduled to occur (i.e., on February 10,
10  2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2
11  [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to
12  provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).
13  However, the record available to the Discovery Master demonstrates that Mattel
14  made several prior attempts to meet and confer with the MGA Parties, including
15  engaging in the following:

16  　　　• On January 6, 2009, Mattel's counsel sent a letter demanding that the
17  　　　　MGA Parties supplement their production concerning the document
18  　　　　requests by February 1, 2009, (Watson Decl., Ex. 17);

19  　　　• Counsel for the MGA Parties never responded to Mattel's January 6,
20  　　　　2009 letter, (Written Discovery Motion, p. 6);

21  　　　• Counsel for Mattel sent counsel for the MGA Parties a second copy of
22  　　　　the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23  　　　• Counsel for Mattel and counsel for the MGA Parties then spoke on
24  　　　　February 6, 2009, and were supposed to discuss, among other things,
25  　　　　the document requests at issue, but counsel for the MGA Parties was
26  　　　　not prepared to discuss the requests at the appointed time, (Watson
27  　　　　Decl., ¶ 22); and

28  　　　• Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -
AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 2
PAGE 11

1      9, 2009 to discuss the document requests but counsel for the MGA

2      Parties was still not prepared to discuss the issues, (*Id.*).

3      In light of foregoing facts (which are not disputed by the MGA Parties), it is

4  clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement. The

5  plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6  for an order compelling . . . discovery . . . [if] the movant has in good faith

7  conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8  37(a) [emphasis added]). Because it attempted to meet and confer with counsel for

9  the MGA Parties on at least two occasions (but was unable to do so because the

10 MGA Parties were not prepared to meet and confer during either of the agreed upon

11 times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12            **b.**    **Relevance Of The Document Requests To Phase 2**

13     The MGA Parties also oppose Mattel's demand for a supplemental

14 production on the ground that none of the document requests as issue seek

15 information reasonably calculated to lead to the discovery of admissible evidence.

16 (Opposition, pp. 5 – 7).

17            **(1)**    **Document Request Nos. 207, 208 And 269**

18     With respect to the three document requests directed to Larian (i.e.,

19 Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20 not relevant to any Phase 2 claims. (Opposition, p. 6).

21     Each of the requests seeks information related to Larian's financial condition,

22 Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23 Answer and Counterclaim ("SAAC") are true. For example, Document Request

24

[5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the
25 requested information following the filing of the Written Discovery Motion. It is, therefore, unclear what could have
been accomplished by an additional meet and confer on these issues. Moreover, Mattel's counsel stated at oral
26 argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they
still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.
27 68:7-9). Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on
February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery
28 procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
            - 6 -
AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 2
PAGE 12

1    Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2    No. 269) and gross income (Request No. 208).  Such information relates to Phase 2

3    damages issues, including, among other things, damages sought against Larian in

4    connection with Mattel's unfair competition cause of action as well as the

5    calculation of Larian's net worth for purposes of litigating the propriety of any

6    "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166).  It is

7    therefore discoverable.

8         In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9    Mattel's employees for the express purpose of misappropriating Mattel's

10   confidential and proprietary information, and that the MGA Parties promised such

11   individuals increased salaries at MGA.  (*See, e.g.*,  SAAC, ¶¶ 69 and 77).  Mattel's

12   request for documents sufficient to identify Larian's bank accounts (i.e., Request

13   No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14   evidence regarding the source of any payments that may have been made by Larian

15   to former Mattel employees.[7]

16                    **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                                   **46**

18        Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19   37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20   financial information "related to Bratz dolls, which was a Phase 1 issue,"

21   (Opposition, p. 5).  Specifically, the MGA parties argue that:

22              [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

---

24   [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he
     concludes that Larian should not be required to provide updated information concerning his net worth and gross
25   income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase
     2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question
26   deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial
     information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by
27   the verdict rendered in Phase 1 or recent economic conditions.

28   [7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to
     produce documents identifying his bank accounts as part of Phase 1.



EXHIBIT  2
PAGE  13

1                related financial information in order to establish its Phase

2                2 damages ignores the jury's Phase 1 damages award . . . .

3                Mattel sought disgorgement of all Bratz profits during

4                Phase 1 and the jury made its award.  Mattel may not

5                relitigate this issue in Phase 2.

6  (*Id.*, p. 6).

7        However, Document Request Nos. 40, 41 and 45[8] make no mention of

8  financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9  (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10  (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11  through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12  net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13  Therefore, MGA's argument does not apply to these document requests.

14        Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15  Separate Statement as request number 44) are further reasonably calculated to lead

16  to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17  the touchstone for determining whether a particular discovery request is reasonably

18  calculated to lead to the discovery of admissible evidence in this case is whether the

19  request bears some relation to the issues to be tried in Phase 2.  That standard is met

20  here, since MGA's general ledgers, net worth, and cost allocation procedures all

21  bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22  damages.

23        As for the remainder of the document requests directed to MGA (i.e.,

24  Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

---

[8]  Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

[9] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

[10] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

[11] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __14__

1   financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6        As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10       Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11  Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12  Separate Statement as request number 43), and 46 (erroneously numbered in

13  Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14  claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15  action, misappropriation of trade secrets claim, and unfair competition cause of

16  action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17  fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18  proprietary information to fuel MGA's growth."  (SAAC, ¶¶ 1, 88, 98, 106, and

19  163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20  has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21  act[s] or practice[s]" in violation of California Business and Professions Code

22  section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23  misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24  arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25       Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27  [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (*See*
    Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or
28  correct its disclosure or response . . . in a timely manner").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT     2
PAGE       15

1   Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2   of the purported racketeering activities was the "altering [of] numerous original

3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5   calculated to lead to the discovery of admissible evidence in Phase 2.

6        The Discovery Master cannot predict whether the Court will ultimately

7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9   presenting any evidence that it has been damaged by such misconduct at the Phase

10  2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11  Given that the discovery here need only appear reasonably calculated to lead to the

12  discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13  Master finds that the aforementioned document requests are sufficiently related to

14  Mattel's Phase 2 claims to be discoverable at this time.

15        **5.    Conclusion**

16       For all of the foregoing reasons, Mattel's motion to compel responses to

17  Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18  Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19       **B.    Interrogatories Propounded On MGA And Larian**

20       The second part of Mattel's Written Discovery Motion addresses various

21  interrogatories propounded on the MGA Parties.

22        **1.    Interrogatory No. 45 Propounded On MGA**

23       Interrogatory No. 45 asks MGA[13] to:

24            IDENTIFY each BRATZ PRODUCT that has been

25            SOLD by [MGA] or [its] licensees and, for each such

26

27  ───────────────
    [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
    Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
28  INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                              - 10 -        AMENDED ORDER NO. 11
                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  2
PAGE  14

1               BRATZ PRODUCT, state . . . (a) the number of units of

2               each such BRATZ PRODUCT SOLD by [MGA] or [its]

3               licensees, (b) the gross and net revenue received by

4               [MGA] from such SALES of each such BRATZ

5               PRODUCT, (c) all costs [MGA] incurred in connection

6               with each such BRATZ PRODUCT, including but not

7               limited to [MGA's] costs of goods sold, and (d) [MGA's]

8               gross and net profits from each such BRATZ PRODUCT.

9 (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10 Written Discovery Motion, p. 9).

11                   **a.**    **Phase 1 Rulings**

12      As with the document requests discussed above, Mattel concedes that "MGA

13 identified and produced documents responsive to [Interrogatory No. 45] in

14 December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15 Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16 supplement its response" without justification. (*Id.*)

17                   **b.**    **Objections Of MGA**

18      In its Opposition, MGA argues that it does not have to provide the

19 information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20 like the document requests propounded on MGA, "Mattel's entitlement to gross and

21 net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22 Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23 (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24 identical to the documents sought by Document Request Nos. 21 (requesting

25 "DOCUMENTS sufficient to show the number of units of each BRATZ

26 PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27 sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28 PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS



EXHIBIT  2

PAGE  17

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above. Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[14]

10       MGA also argues that it should not be required to provide the information

11  requested by Interrogatory No. 45 because it "has already provided information that

12  is current through the second fiscal quarter of 2008" and it would be unduly

13  burdensome to gather the documents necessary to update that information.

14  (Opposition, pp. 7 – 8).  MGA did not argue, however, in its Opposition that it

15  would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16  24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17  documents responsive to those requests and refer Mattel to those materials. (*See*

18  Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19  examining . . . a party's business records . . . the responding party may answer by

20  specifying the records that must be reviewed . . ."]).

21       The MGA Parties' argument that it is overly burdensome to require MGA to

22  spend 320 hours to inform Mattel of the most recent sales figures concerning the

23  Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25  [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
    enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from
26  presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
    was previously litigated and resolved in Phase 1.  Nevertheless, in light of the fact that the discovery need only
27  appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
    Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable
28  at this time.

EXHIBIT  2
PAGE  18

1   information requested and the wide-ranging extent of the discovery to date. As

2   explained above, the information sought is relevant to the constructive trust

3   imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4   claims. Also, while 320 hours may be unduly burdensome in certain

5   circumstances, it is not unreasonable on its face here given that the MGA Parties

6   have already produced more than 4 million documents.[15] (*See Cappacchione v.*

7   *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8   ["Requiring a responding party to perform extensive research or to compile

9   substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13                         **c.      Conclusion**

14        For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17                **2.      Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                          **Larian**

19        Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22        • Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23            MGA has obtained, received, reviewed, copied, reproduced,

24            transmitted, requested, or used at any time since January 1, 1999, and

25            IDENTIFY all PERSONS with knowledge of such facts and all

26            DOCUMENTS that REFER OR RELATE TO such MATTEL

27   _____

28   [15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -                              AMENDED ORDER NO. 11
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___2___
PAGE ___19___

1    DOCUMENTS." (Separate Statement in Support of Written

2    Discovery Motion, p. 49).

3    • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4    OR RELATE TO any MATTEL product or plan that any of the

5    FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6    to, shared with or used on behalf of MGA at any time since January 1,

7    1999, and IDENTIFY all PERSONS with knowledge of such facts."

8    (Id., p. 52).

9    • Interrogatory No. 58: "State all facts which support YOUR

10    contention, if YOU so contend, that YOU and/or MGA did not obtain

11    any MATTEL DOCUMENTS through improper means, and

12    IDENTIFY all PERSONS with knowledge of such facts and all

13    DOCUMENTS that REFER OR RELATE TO such facts." (Id., p.

14    54).

15    • Interrogatory No. 59: "State all facts which support YOUR

16    contention, if YOU so contend, that any information in the MATTEL

17    DOCUMENTS does not and/or did not derive independent economic

18    value from not being generally known to the public or other

19    PERSONS who can obtain economic value from its disclosure or use,

20    and IDENTIFY all PERSONS with knowledge of such facts and all

21    DOCUMENTS that REFER OR RELATE TO such facts." (Id., p.

22    57).

23    • Interrogatory No. 60: "State all facts which support YOUR

24    contention, if YOU so contend, that any information in the MATTEL

25    DOCUMENTS was known to the public or to PERSONS who can

26    obtain economic value from its disclosure or use, and IDENTIFY all

27    PERSONS with knowledge of the foregoing and All DOCUMENTS

28    that REFER OR RELATE TO the foregoing." (Id., p. 61).

EXHIBIT 2
PAGE 20

1       • Interrogatory No. 61: "State all facts which support YOUR

2         contention, if YOU so contend, that YOU and/or MGA independently

3         developed, or did not otherwise use or disclose, any information in the

4         MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5         knowledge of such facts and all DOCUMENTS that REFER OR

6         RELATE TO such facts." (*Id.*, pp. 64 – 65).

7       • Interrogatory No. 62: "State all facts which support YOUR contention

8         that YOUR use or disclosure of information in the MATTEL

9         DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10         IDENTIFY all PERSONS with knowledge of such facts and all

11         DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12         69).

13       • Interrogatory No. 63: "State all facts which support YOUR

14         contention, if YOU so contend, that YOU and/or MGA had, has or

15         have any right to copy, possess, use or disclose any MATTEL

16         DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17         facts and all DOCUMENTS that REFER OR RELATE TO such

18         facts." (*Id.*, p. 73).

19            **a.**     **Objections Of MGA And Larian**

20      In their Opposition, the MGA Parties rely on four basic grounds for refusing

21 to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22 that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23 – 10). Second, the MGA Parties argue that the interrogatories presuppose facts

24 that are not true. (*Id.*, p. 8). Third, the MGA Parties argue that all 8 interrogatories

25 are impermissibly compound and exceed the number of allotted interrogatories.

26 (*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27 and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

28

EXHIBIT 2
PAGE 21

### (1)    Unduly Burdensome Objection

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10). While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10). Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party. (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal importance. We're asking for . . . their core contentions related to the trade secret claims."]). As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20). Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

1    • stole "Mattel's plans, strategy and business information for the

2     Mexican market and materials related to Mattel's worldwide business

3     strategies," (*Id.*, ¶ 37);

4    • "directed [certain Mattel employees'] to steal virtually all Mattel

5     confidential and proprietary information that they could access and

6     bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7     type of document a competitor would need to enter the Mexican

8     market, and to unlawfully compete with Mattel in Mexico, in the

9     United States and elsewhere . . ." (*Id.*, ¶ 48);

10   • "targeted certain Mattel employees who have broad access to Mattel

11    proprietary information in an effort to induce and encourage them to

12    join MGA and to steal or otherwise wrongfully misappropriate Mattel

13    confidential information and trade secrets," including by "promising

14    these employees salaries 25 percent or more higher than they earn at

15    Mattel and stating to them that they should not be concerned by legal

16    action taken by Mattel to protect its trade secrets and its rights because

17    such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18   • "hired directly from Mattel's United States operations at least 25

19    employees, from Senior Vice-President level to lower level

20    employees," and that some of these individuals misappropriated

21    "Mattel confidential and proprietary information, including Mattel's

22    strategic plans; business operations; methods and systems; marketing

23    and advertising strategies and plans; future product lines; product

24    profit margins, and customer requirements." (*Id.*, ¶ 77).

25   Therefore, this is not a situation where Mattel has alleged that the MGA

26 Parties stole a handful of documents.  The SAAC instead alleges that the MGA

27 Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28 "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

          - 17 -    AMENDED ORDER NO. 11
                 [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  2
PAGE  23

1    market, and to unlawfully compete with Mattel in Mexico, in the United States and
2    elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA
3    Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-
4    19), including all of the documents that have been identified as the MATTEL
5    DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are
6    regarding whether or not those documents constitute trade secrets, particularly
7    given that such information is exclusively within the control of the MGA Parties.
8    As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial
9    accusing MGA and the other defendants of stealing all of these documents . . . and
10   [the MGA Parties are] going to have to articulate what their contentions are with
11   respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*
12   81:9-10 [wherein Mattel's counsel states that these documents "are the ones that
13   Mattel is going to be proceeding to trial on."]).

14       Also, the MGA Parties' claim of undue burden does not take into account the
15   vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel
16   propounded 4,647 requests for admission, 2,889 requests for production, and 71
17   interrogatories in Phase 1]). The MGA Parties do not provide any supporting
18   declaration or specific evidence to support their assertion of burden beyond their
19   statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.
20   For example, the MGA Parties have not provided the Discovery Master with details
21   regarding: (1) a time estimate as to how long it would take to respond to the
22   Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the
23   extent to which any facts that must be set forth in answering the Interrogatories are
24   voluminous; or (4) an estimate of the number of documents and/or persons that may
25   have knowledge of such responsive facts. Therefore, the Discovery Master finds
26   that the MGA Parties have not met their burden of demonstrating that answering
27   //
28   //

EXHIBIT  2
PAGE  24

1  the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2  *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3  discovery request is unduly burdensome must allege specific facts which indicate

4  the nature and extent of the burden, usually by affidavit or other reliable

5  evidence."]).

6       While there is no specific evidence in the record demonstrating that the MGA

7  Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8  56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9  demand for "all facts" relating to what could be thousands of different documents

10  could be construed by Mattel in a manner that could place an unreasonable burden

11  on the MGA Parties, particularly when that information is requested via a written

12  interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13  issue[17] and requires that the MGA Parties identify all facts, documents and

14  witnesses that they currently intend to rely on at summary judgment or trial to

15  demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16  means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17  documents did not derive independent economic value (i.e., Interrogatory No. 59),

18  (iii) any information in the MATTEL DOCUMENTS was known to the public,

19  (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20  not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21  (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22  of the information in the MATTEL DOCUMENTS nor harmed Mattel

23  (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24  possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25       The Discovery Master finds that this limitation is appropriate because Mattel

26

27  [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their
position on this issue. (Opposition, pp. 9 – 10).

28  [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 2
PAGE 25

1   conceded in its Reply that it was not asking the MGA Parties "to provide

2   facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3   "specific contentions Defendants may make regarding the [allegedly] stolen

4   documents," (*id.*, p. 17).  Mattel's counsel reiterated this position again at oral

5   argument, wherein he declared that Mattel was not necessarily interested in "a

6   parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7   Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8                   **(2)    Purported Presuppositions Regarding**

9                       **Interrogatory Nos. 56 and 58 – 63.**

10      The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11   objectionable because they require the MGA Parties to presuppose that they are "in

12   possession of documents stolen or taken from Mattel by former employees – a fact

13   that MGA denies." (Opposition, p. 8).  The MGA Parties further assert that "each

14   of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15   Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16   assertions . . . which make the interrogatories unanswerable and incomprehensible."

17   (*Id.*, p. 9).  However, the MGA Parties cite no legal authority, and the Discovery

18   Master has found none, standing for the proposition that a party may refuse to

19   respond to an interrogatory merely because the interrogatory assumes a fact the

20   responding party disputes.

21                   **(3)    Compound And Excessive Objections**

22      The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23   impermissibly compound and exceed the allotted number of interrogatories.

24   (Opposition, pp. 10 and 11).  Each of these contentions is unavailing.

25      As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26   [18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
27   judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
     information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
28   its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
     . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 2
PAGE 24

1    and 58 – 60 on the ground that they are compound. Nor did they object to any of

2    the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3    Therefore, the MGA Parities waived any such objections to those interrogatories.

4    (See, e.g., Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th

5    Cir. 1992) [stating that "failure to object to discovery requests within the time

6    period required constitutes a waiver of any objection."]).

7          As for the interrogatories where the objections were asserted, the MGA

8    Parties have not demonstrated that the interrogatories are compound or exceed the

9    allotted limit. The fact that the interrogatories ask MGA to identify witnesses, facts

10   and documents related to the MATTEL DOCUMENTS does not render the

11   interrogatories compound because the questions in each interrogatory refer to one

12   common theme and count as a single interrogatory. (See Swackhammer v. Sprint

13   Corp. PCS, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14   subparts directed at eliciting details concerning a 'common theme' should generally

15   be considered a single question"]). The prior discovery master applied this precise

16   rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17   supporting a contention, the identity of persons with knowledge, and documents are

18   not counted separately for the purposes of applying the . . . interrogatory limit."

19   (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                    (4)    **Establishing A Negative Proposition Objection**

21         As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22   Parties assert that three of the interrogatories improperly ask them to establish a

23   negative proposition (i.e., Interrogatory Nos. 58, 59 and 62). (Opposition, pp. 11 –

24   12). The relevant question, however, is not whether an interrogatory may require a

25   party to prove a negative. Rather, all of the cases cited by the parties concerning

26   this issue examine whether the interrogatory in question imposes an unreasonable

27   //

28   //

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __27__

1   burden on the responding party.[19]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

4                      **b.      Conclusion**

5         For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

8                **3.      Interrogatory Nos. 67 – 69 Propounded On MGA And**

9                        **Larian**

10        Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11   These interrogatories ask the MGA Parties to provide information regarding any

12   payments they may have made to former Mattel employees and any persons

13   identified in the parties' initial disclosures:

14        • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15              payment of money or other item of value that YOU have made or

16              given, or any promise, agreement, proposal [o]r offer by YOU to pay

17              money or given any item of value, to or on behalf of any PERSON

18              identified in any of the parties' initial disclosures in this ACTION at

19              any time when such person was not an employee of MGA, including

20              without limitation with respect to legal fees incurred by or on behalf of

21              such PERSON."  (Separate Statement in Support of Written Discovery

22              Motion, p. 88).

23        • Interrogatory No. 68: "To the extent not disclosed in prior

24   _____

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -
25   448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both
     address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases
26   cited by Mattel. (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding
     that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison*
27   *v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all
     facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,
28   2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).



EXHIBIT  2
PAGE  79

1     Interrogatories, IDENTIFY fully and separately each and every

2     payment of money or other item of value that MGA has made, or any

3     promise, agreement, proposal or offer by MGA to pay money or given

4     any item of value, to or on behalf of any of the FORMER MATTEL

5     EMPLOYEES, including without limitation with respect to legal fees

6     incurred by or on behalf of any of the FORMER MATTEL

7     EMPLOYEES." (*Id.*, p. 91).

8     •   Interrogatory No. 69: "To the extent not disclosed in prior

9     Interrogatories, IDENTIFY fully and separately each and every

10     payment of money or other item of value that YOU have made, or any

11     promise, agreement, proposal or offer by YOU to pay money or given

12     any item of value, since January 1, 1998 to or on behalf of any

13     PERSON who has been employed by MATTEL (excluding ordinary

14     salary and benefits paid to such PERSON while an MGA employee),

15     including without limitation with respect to legal fees incurred by or

16     on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17     p. 92).

18            **a.    Objections Of MGA And Larian**

19     In their Opposition, the MGA Parties rely on two basic grounds for refusing

20 to provide responses to these three interrogatories. First, the MGA Parties argue

21 that the interrogatories are impermissibly compound and exceed the number of

22 allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that

23 interrogatories are overly broad. (*Id.*, pp. 12 – 14).

24            **(1)    Compound And Excessive Objections**

25     Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26 that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27 allotted number of interrogatories. (Opposition, pp. 10 and 11). But those

28 arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __29__

1

### (2)   Overly Broad Objection

2        The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is

3    that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is

4    overbroad because it seeks information regarding payments by MGA to any persons

5    identified in the initial disclosures, not just former Mattel employees. (Opposition,

6    pp. 12 – 13).

7        While a payment to a potential witness could be relevant to the issue of bias

8    and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281,

9    283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which

10   may simply relate to the credibility of a witness or other evidence in the case."]),

11   the SAAC merely alleges that the MGA Parties bribed former Mattel employees —

12   not every single witness in this case. In the absence of an allegation suggesting that

13   other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not

14   relevant at this time.[20]  Accordingly, Mattel's motion to compel a response to

15   Interrogatory No. 67 is denied at this stage.

16       As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the

17   "burden and expense of determining whether each individual contemplated by these

18   interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely

19   benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no

20   evidence to support such a claim. (*See Jackson*, 173 F.R.D. at 528-9 ["The party

21   claiming that a discovery request is unduly burdensome must allege specific facts

22   which indicate the nature and extent of the burden, usually by affidavit or other

23   reliable evidence."]).

24       The MGA Parties only remaining complaint is that Interrogatory No. 69

25   seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___2___
PAGE ___3℮___

1    employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2    EMPLOYEES as including specific individuals as well as each such person's

3    "current or former employees, agents, representatives, attorneys, accountants,

4    vendors, consultants, independent contractors, predecessors-in-interest and

5    successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6    to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7    While they assert these definitional objections, counsel for the MGA Parties

8    nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9    Mattel employees, for other than their salary as MGA employees, I think that is a

10   fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11       Therefore, the Discovery Master orders the MGA Parties to identify fully and

12   separately each and every payment of money or other item of value that they have

13   made or offered to pay to or on behalf of any "former employee of Mattel" since

14   January 1, 1998 but limits the definition of former Mattel employees to "all

15   individuals that the MGA Parties are aware of that worked for Mattel and who

16   received any payment (excluding ordinary salary and benefits paid to such person

17   while an MGA employee) from the MGA Parties."[21]

18                   **b.      Conclusion**

19       For all of the foregoing reasons, Mattel's motion to compel is denied with

20   respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's

21   motion to compel responses to the interrogatories is granted, subject to the

22   limitations discussed above.

23       **C.      Summary Of Ruling Regarding The Written Discovery Motion**

24       Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25   **part.**

26   _____

27   [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
     Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a
     request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.

28   Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -                                    AMENDED ORDER NO. 11
                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___Z___
PAGE ___31___

## II.    MATTEL'S DEPOSITION MOTION

### A.    Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1.    Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004. Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business. Vargas currently serves as the Director of Sales for MGA Mex. In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex. Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex. She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

#### 2.    Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles. In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses. On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __32__

1    the Witnesses (as well as others). Mattel's application was stayed with other Phase

2    2 discovery and then denied without prejudice on September 23, 2008. After the

3    Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4    depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5    Once again, the MGA Defendants objected on the ground that neither of the

6    Witnesses is an officer, director or managing agent of MGA Mex. After the parties

7    were unable to resolve their dispute, Mattel filed the Deposition Motion.

8         **B.    Discussion**

9         Mattel argues that (1) the Witnesses are directors and/or managing agents of

10    MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11    Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are

12    acting in bad faith and without justification to frustrate Mattel's legitimate

13    discovery rights. In response, the MGA Defendants argue that (1) the Witnesses

14    are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15    (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16    Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The

17    MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18    adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19    ("Khan") and then served a redacted version of the Deposition Motion on a

20    different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21    was out of town.[23] According to MGA Mex, Mattel only served a complete,

22    unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23    days before the deadline for the Opposition.

24         **1.    Legal Standard**

25         If a corporation is a party to an action, any other party may take the

26    deposition of that corporation by identifying a specific officer, director, or

27    _____

28    [23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including
MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  2
PAGE  33

1    managing agent to be deposed and noticing that person's deposition under Rule
2    30(b)(1). Notice alone is enough to compel the managing agent to attend the
3    deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*
4    *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of
5    compelling a corporate officer's deposition, courts do not recognize a distinction
6    between an "apex" official or director and other high corporate officials. (*Resort*
7    *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.
8    Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes
9    ["There is slight warrant for the present distinction between officers and managing
10   agents on the one hand and directors on the other."]).

11          The case law provides somewhat ambiguous guidance with respect to the
12   burden of proof for demonstrating managing agent status. Generally, the burden is
13   on the discovering party to establish the status of the witness. (See *Sugarhill*
14   *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);
15   *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same
16   time, however (and as Mattel points out in its papers), courts resolve doubts in
17   favor of the examining party, at least during the discovery phase. (See *Sugarhill*,
18   105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97
19   (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of
20   providing enough evidence to show that it is at least a close question whether the
21   proposed deponent is a managing agent." (*United States of America v. Afram Lines*
22   *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23          The identification of a managing agent in any given case is fact-sensitive.
24   "[B]ecause of the vast variety of factual circumstances to which the concept must
25   be applied, the standard . . . remains a functional one to be determined largely on a
26   case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*
27   *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the
28   question of whether a particular person is a 'managing agent' is to be answered

EXHIBIT  2
PAGE  34

1  pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2  C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3  citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)). Whether a

4  proposed deponent falls into a particular category of employee or agent is therefore

5  less relevant than the individual's specific functions and authority.

6        As both parties acknowledge, federal courts have formulated a set of factors

7  to assist in determining whether person is a party's "managing agent," and therefore

8  subject to deposition under Rule 30(b)(1):

9        1)    whether the individual is invested with general powers allowing him to

10              exercise judgment and discretion in corporate matters;

11       2)    whether the individual can be relied upon to give testimony, at his

12             employer's request, in response to the demands of the examining

13             party;

14       3)    whether any person or persons are employed by the corporate

15             employer in positions of higher authority than the individual

16             designated in the area regarding which the information is sought by the

17             examination;

18       4)    the general responsibilities of the individual "respecting the matters

19             involved in the litigation;" and

20       5)    whether the individual can be expected to identify with the interests of

21             the corporation.

22  (*Sugarhill*, 105 F.R.D. at 170).

23        According to Mattel, the most important of these factors is "whether the

24  witness can be expected to identify with the employer corporation's interest as

25  opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26  *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)). Applying that test,

27  Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28  they helped to found the company and part of the "tight" group that manages its

EXHIBIT 2
PAGE 35

1   day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),
2   the Witnesses are managing agents of MGA Mex.

3        Mattel's emphasis on the employee's loyalty as the main test for determining
4   his or her status is unwarranted. Federal courts have effectively challenged the
5   notion that the employee's loyalty to the employer is entitled to special weight.
6   (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the
7   *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .
8   apparent fidelity to the principal's interests, because it would apply to many agents
9   and employees who do not function with the degree of authority over a company's
10  affairs connoted by the term 'managing' agent." (*Id.*, at 350). Moreover, the
11  *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a
12  rationale that no longer applies. Specifically, the court traced the rule to *Newark*
13  *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the
14  analytical underpinning of the "loyalty" factor.

15       In that case, the court was concerned with the evidentiary problem facing a
16  litigant seeking to obtain and use the testimony of an adversary corporation's most
17  senior employees. Under the then-existing rule, a litigant could not call such an
18  employee to testify at trial in his or her individual capacity without waiving the
19  right to impeach the witness. This presented a problem for the party seeking to
20  elicit the testimony, because, as the court reasoned, a corporation's ranking
21  employee having possession of pertinent information will always "give his
22  testimony in the light most favorable to the principal," but would, at the same time,
23  be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that
24  an adversary should be able to obtain such testimony from the employee in his or
25  her capacity as the representative of the corporation (who could, therefore, be
26  subject to impeachment).

27       However, as the court in *Libbey Glass* noted, the concerns expressed in
28  *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __36__

1   ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior
2   employee of an adversary corporation in his individual capacity and may
3   nonetheless still seek to impeach that testimony.  In other words, characterizing a
4   particular witness as a "managing agent" no longer provides any substantive
5   advantage to the deposing party, only procedural advantages (i.e., the ability to take
6   the deposition without a subpoena).

7         Having discarded the notion that the witness' loyalty to his employer is the
8   main factor to be considered in ascertaining his status as a managing agent, the
9   court in *Libbey Glass* instead focused on "the nature of the deponent's activities on
10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass*,
11  197 F.R.D. at 350).  The court reasoned:

12              For the purpose of determining whether an individual is a
13              'managing agent' within the meaning of the discovery rules, the
14              alter ego theory provides a useful analogy.  As in the arena of
15              corporate liability, the focus begins with the character of the
16              individual's control.  In addition, we can profitably examine both
17              the degree to which the interests of the individual and the
18              corporation converge, and how helpful the individual will be in
19              fact finding on the matter at issue, in comparison to others
20              associated with the corporation.  As in all matters appertaining to
21              discovery, it is the ends of justice that are to be served.

22  (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*,
23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the
24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most
25  practical and well-reasoned test for determining whether the Witnesses are
26  managing agents of MGA Mex, and applies that test below.

27

28  _____
[24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

EXHIBIT __2__
PAGE __3?__

1           2.     **Analysis Of The Witnesses' Job Functions And Managerial**
2                  **Authority**
3                  a.     **The Nature Of The Witnesses' Activities On Behalf**
4                         **Of, And Control Over, MGA Mex.**

5           In accordance with the approach outlined in *Libbey Glass*, the Discovery

6    Master begins his analysis by examining the Witnesses' activities on behalf of, and

7    managerial control over the operations of, MGA Mex.

8           Mattel relies heavily on documentary evidence regarding the role of

9    Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10   Master finds that this evidence, which is limited to events that occurred five years

11   ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12   and authority.[25] The only evidence presented by the parties concerning the

13   Witnesses' current role in the company is the testimony of Kuemmerle. That

14   testimony derives from three sources: (1) her declaration filed on February 27,

15   2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16   deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17   Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18   Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19          The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20   states in its entirety:

21                 All of the day to day operations of MGA Mexico are managed

22                 locally in Mexico. For example, MGA Mexico's Finance

23                 Director, Sales Director and Marketing Director are all based in

24                 Mexico and all of the marketing and finance functions are

25                 handled in Mexico.

26   (First Kuemmerle Decl., ¶ 6).

27   _____

28   [25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this
question as to whether these [Witnesses] are managing agents? And the answer, of course, is now." (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___2___
PAGE ___3b___

1    There are two main excerpts from Kuemmerle's deposition transcript cited

2    by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3    pricing for the products sold by MGA Mex is set by means of a "combined team

4    effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5    p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26] Kuemmerle testifies that these

6    individuals (which apparently include the Witnesses) continue to set the pricing of

7    MGA Mex products in the same manner to this day. (Id.).

8    Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9    testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10   tight of a group, not enough employees, that we were all forced to multitask."

11   (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12   In her second declaration, Kuemmerle testifies regarding the chain of

13   command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14   her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15   (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16   functions performed by, or general authority exercised by, either of the Witnesses.

17   Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18   all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19   supervises anyone. (Id., ¶ 3).

20   In the absence of any evidence directly addressing the Witnesses' current

21   role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22   managing agents based on the Witnesses' job titles and past participation in the

23   "tight group" that made operational decisions for the fledgling company several

24   years ago. However, such an inference is not supported by the scant evidence

25   before the Discovery Master. For instance, the Discovery Master cannot attribute

26

27   [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel
     is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and
28   Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9
     to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   2
PAGE      29

1    such status to Trueba, who supervises no employees, and whose scope of

2    responsibility is circumscribed to public relations.[27]

3         Likewise, although Mattel emphasizes that Vargas supervises approximately

4    8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5    p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6    necessary context by identifying the number of total MGA Mex employees.  If, for

7    instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8    employees would tend to indicate he does not have such authority.[28]  Because the

9    necessary contextual information is not provided, the Discovery Master is unable to

10   assess the significance (if any) of the evidence that is provided regarding Vargas'

11   current role at MGA Mex.

12        In sum, the evidence currently before the Discovery Master is insufficient to

13   allow him to determine that the Witnesses' functions on behalf of, and control over,

14   MGA Mex is such that they can be deemed its "managing agents."

15                      **b.    Other Factors**

16        Since there is virtually no evidence addressing the critical factor governing

17   whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18   above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19   at best.  Even if all those factors were satisfied – which they are not – the record

20   would still be insufficient to enforce the deposition notices at issue here.  However,

21   in order to create a complete record and to address the arguments made by the

22   parties, the Discovery Master nonetheless briefly discusses those factors below.

23        As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she
submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to
dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing."  (Deposition
Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 –
16), but there is no admissible evidence before the Discovery Master to support such an assertion.  Further, such a
contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees
at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-34-

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT  2
PAGE  40

1  on the issue of whether an employee is a managing agent is whether he or she "is

2  invested with *general* powers allowing him to exercise judgment and discretion in

3  corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4  current scope of Trueba's authority appears to be the opposite of "general:" she is

5  responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6  attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7  broader than that of Trueba, appears to be confined primarily to sales. (Second

8  Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9  authority over such things as internal administrative functions, budgeting, contracts

10  with vendors, and various other aspects of running a business.

11      The second *Sugarhill* factor (whether the individual can be relied upon to

12  give testimony at the employer's request) is satisfied, since the Witnesses are

13  current employees of MGA Mex who will presumably cooperate in their

14  employer's defense of Mattel's counterclaims by providing testimony at a

15  deposition.

16      Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17  employees in positions of higher authority than the Witnesses in the area regarding

18  which the information is sought), the Discovery Master finds that the undisputed

19  testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20  Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21  Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22  the Witnesses are "managing agents."

23      With respect to fourth factor (the general responsibilities of the Witnesses

24  respecting the matters involved in the litigation), Mattel's papers demonstrate that

25  the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26  Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27  contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28  Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

1   Witnesses to be managing agents.

2       The last factor is the "loyalty" inquiry discussed above, namely whether the

3   Witnesses can be expected to identify with the interests of MGA Mex. Because

4   they are being subjected to investigation in Mexico, have their own lawyers and the

5   MGA Defendants may take the position that if any Mattel documents were taken,

6   the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7   align with the MGA Defendants in this matter. It is unclear on this record whether

8   this factor weighs in favor of or against deeming the Witnesses to be managing

9   agents.

10       **C.**    **Summary Of The Discovery Master's Findings In Connection**

11           **With The Deposition Motion**

12       At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex. The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this

16   is not such a case.[29]

17       Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30] Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22       **D.**    **Sanctions**

23           **1.**    **Mattel's Request For Sanctions**

24       Having found that the MGA Defendants have articulated a meritorious legal

---

25   [29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is

26   unnecessary for him to reach the question of where the depositions may be taken.

27   [30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities. However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have

28   authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 2
PAGE 42

1    and factual basis for their objections to the subject deposition notices, the Discovery

2    Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3    was justified. Accordingly, Mattel's request for sanctions is **DENIED**.

4              **2.    The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6    conduct related to Mattel's service of the Deposition Motion. First, the MGA

7    Defendants contend that Mattel should have served the Deposition Motion on

8    Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9    counsel had been communicating regarding the subject depositions. The MGA

10   Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11   on Kahn's colleague, Glaser, while the latter was out of town. However, the MGA

12   Defendants do not explain why other attorneys in their office who were assigned to

13   the matter were not notified of the delivery of the Deposition Motion given Ms.

14   Glaser's absence. Further, Mattel has submitted the declaration of its counsel,

15   Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16   served the Deposition Motion on all three law firms representing the MGA

17   Defendants at the same time (February 6, 2009) that the motion was filed. (See

18   Suppl. Zeller Decl., Exh. E).

19       Second, the MGA Defendants argue that Mattel only served a redacted

20   version of the Deposition Motion on them at some later point, leaving them only

21   two days to draft and file opposing papers, and refused Kahn's request for a

22   reasonable extension of time. (Kahn Decl., ¶¶ 3 - 4). However, the Kahn Decl. is

23   vague regarding the date and manner in which Mattel is alleged to have belatedly

24   served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25   Master is unable to ascertain whether Kahn's belated receipt of the motion was

26   caused by some conduct of Mattel, or instead, caused by internal delays within

27   Glaser Weil in routing the papers to the appropriate attorney.

28       Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __2__
PAGE __45__

## III.   DISPOSITION

   A.   Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

   1.   Document Request Nos. 207, 208 and 269 directed to Larian:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

   2.   Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

   3.   Interrogatory No. 45 directed to MGA:  The Motion is **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

   4.   Interrogatory Nos. 56 – 63 directed to MGA and Larian:

      a.   The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

      b.   Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations: The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

EXHIBIT __2__
PAGE __44__

1    MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2    (ii) that the information in the MATTEL documents did not derive independent

3    economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4    DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5    Parties independently developed, or did not otherwise use or disclose, any

6    information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7    the MGA Parties have not benefited by their use of the information in the MATTEL

8    DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9    Parties had or have a right to copy, possess, use or disclose any MATTEL

10   DOCUMENT (Interrogatory No. 63).

11                    c.      The MGA Parties responses to interrogatories numbered

12   56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13   applicable confidentiality designations available under the Protective Order.

14           5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

15   is **DENIED**.

16           6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18   Parties are ordered to identify fully and separately each and every payment of

19   money or other item of value that they have made or offered to pay to or on behalf

20   of any former employee of Mattel since January 1, 1998, with the definition of

21   former Mattel employees re-defined as "all individuals that the MGA Parties are

22   aware of that worked for Mattel and who received any payment (excluding ordinary

23   salary and benefits paid to such person while an MGA employee) from the MGA

24   Parties."  The MGA Parties responses to these interrogatories shall be served within

25   30 days of the original Order No. 11, subject to any applicable confidentiality

26   designations available under the Protective Order.

27       **B.**    Mattel's Deposition Motion:

28           1.      Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 39 -          AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT _2_
PAGE _45_

1          2.      Mattel's request for sanctions is **DENIED**.

2          3.      The MGA Defendants' request for sanctions is **DENIED**.

3

4    Dated: March 31, 2009

5

6                                          By:      /s/ Robert C. O'Brien

7                                                   ROBERT C. O'BRIEN
                                                    Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___2___
PAGE ___4ᒫ___

# EXHIBIT 3

CALENDARED

Case 2:04-cv-09049-SGL-RNB    Document 5192    Filed 04/15/2009    Page 1 of 27

RECEIVED

APR 1 5 2009

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California 90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for Defendants
    MGA Entertainment, Inc., MGA Entertainment HK, Ltd.,
11  MGAE De Mexico, S.R.L. De C.V., and Isaac Larian

12              UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

14  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBX)
                                           CONSOLIDATED WITH
15              Plaintiff,                  CASE NO. CV 04-09059
                                           CASE NO. CV 05-02727
16
         v.
17                                         DISCOVERY MATTER
    MATTEL, INC., a Delaware              [TO BE HEARD BY DISCOVERY
18  corporation,                           MASTER ROBERT O'BRIEN
                                           PURSUANT TO ORDER OF
19              Defendant.                  JANUARY 6, 2009]

20  AND CONSOLIDATED CASES                MGA'S SUPPLEMENTAL
                                           OPPOSITION TO MATTEL'S
21                                         RENEWED MOTION OBJECTING
                                           TO DISCOVERY MASTER'S
22                                         FEBRUARY 15, 2008 ORDER

23                                         [DECLARATION OF JEAN PIERRE
                                           NOGUES FILED CONCURRENTLY
24                                         HEREWITH]
                                           Hearing Date:    April, 27, 2009
25                                         Time:            10:00 a.m.
                                           Place:           Arent Fox LLP
26
                                           Phase 2
27                                         Dis. Cut-off:    Dec. 11, 2009
                                           Pre-Trial Conf.: March 1, 2010
28                                         Trial Date:      March 23, 2010

Mitchell
Silberberg &
Knupp LLP

2198372.1

4.15

EXHIBIT 2
PAGE 47

1

## **TABLE OF CONTENTS**

2                                                                                    **Page(s)**

3    I.    Introduction ................................................................................................ 2

4    II.   The Interrogatories and Responses ................................................................. 4

5    III.  MGA's Responses Are Adequate ..................................................................... 9

6    IV.   MATTEL'S CONTENTIONS REGARDING OBJECTIONS
           OVER WHICH MGA ANSWERED HAVE BEEN WAIVED
7          AND ARE WITHOUT MERIT .................................................................... 16

8          A.   Mattel Has Waived Its Belated Arguments Regarding
                MGA's Objections ............................................................................ 16
9
           B.   MGA's Objections Are Valid, and, In Any Event, MGA
10              Has Provided More Than Sufficient Answers
                Notwithstanding Those Objections .................................................... 18
11
                1.    Privilege Objections ................................................................ 18
12
                2.    Compound Objections ............................................................. 18
13
                3.    Objections that Information Has Already Been
14                    Produced or Is More Readily Accessible to Mattel .................. 22

15              4.    Expert Analysis ...................................................................... 22

16              5.    Undue Burden .......................................................................... 23

17   CONCLUSION ............................................................................................... 24

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg & 28
Knupp LLP

2198372.1

i

EXHIBIT   3
PAGE   48

1

# TABLE OF AUTHORITIES

2                                                                                   Page(s)

3

4                                          ## CASES

5    *Am. Oil Co. v. Penn. Ptero. Co.,*
6         23 F.R.D. 680 (D.R.I. 1959)..............................................................................13

7    *Audiotext Communications Network v. US Telecom, Inc.,*
8         1995 WL 625953 (D. Kansas Oct. 5, 1995).....................................................12

9    *Auto Meter, Products, Inc. v. Maxima Technologies & Systems, LLC,*
10        2006 WL 3253636 (N.D. Ill. Nov. 6, 2006).....................................................12

11   *Clean Earth Remediation & Constr. Servs. v. American Intern. Group, Inc.,*
12        245 F.R.D. 137 (S.D.N.Y. 2007) .....................................................................11

13   *Dang v. Cross,*
14        2002 WL 432197 (C.D. Cal. March 18, 2002) ................................................13

15   *General Motors Corp. v. Let's Make A Deal,*
16        223 F.Supp.2d 1183 (D.Nev. 1998) .................................................................19

17   *Grynberg v. Total S.A.,*
18        2006 WL 1186836 (D. Colo. May 3, 2006)...............................................11, 12

19   *Hiskett v. Wal-Mart Stores, Inc.,*
20        180 F.R.D. 403 (D. Kan. 1998)....................................................................12, 13

21   *IBP, Inc. v. Mercantile Bank of Topeka,*
22        179 F.R.D. 316 (D. Kan. 1998)........................................................................12

23   *In re Veeco Instruments, Inc. Securities Litigation,*
24        2007 WL 724555 (S.D.N.Y. March 9, 2007) ...........................................14, 18

25   *King v. Georgia Power Co.,*
26        50 F.RD. 134, 136 (N.D. Ga. 1970)................................................................13

27   *Moseley v. V Secret Catalogue, Inc.,*
28        537 U.S. 418 (2003) ..........................................................................................20

ii

EXHIBIT   3
PAGE   49

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

*Moses v. Halstead,*
4     236 F.R.D. 667 (D. Kan. 2006)................................................................ 11, 13

5
*Nissan Motor Co. v. Nissan Computer Corp.,*
6     378 F.3d 1002 (9th Cir. 2004)...................................................................... 20

7 *Pension Benefit Guaranty Corp. v, Ziffer,*
8     1994 WL 11654 (N.D. Ill. Jan. 6, 1994) ....................................................... 13

9 *Schaap v. Executive Indus., Inc.,*
10     130 F.R.D. 384 (N.D. Ill. 1990)...................................................................... 13

11 *Stoldt v. Centurion Indus., Inc.,*
     No. 03-2634-CM-DJW, 2005 WL 3756670 (D. Kan. Feb. 3,
12     2005)............................................................................................................... 11

13
*Tennison v. San Francisco,*
14     226 F.R.D. 615 (N.D. Cal. 2005) .................................................................. 12

15 *Twigg v. Pilgrim's Pride Corp.,*
16     2007 WL 676208 (N.D. W. Va. Mar. 1, 2007)............................................. 13

17 *Two Pesos, Inc. v. Taco Cabana, Inc.,*
18     505 U.S. 763 (1992)....................................................................................... 19

19 *Williams v The Art Inst. Of Atlanta,*
20     2006 WL 3694649 (N.D. Ga. Sept. 1, 2006) ................................................ 13

21 *Zapata v. IBP, Inc.,*
     1997 WL 122588 (D. Kan. 1997) .................................................................. 13
22

23

### STATUTES

24 15 U.S.C. § 1125(a)........................................................................................... 19

25 15 U.S.C. § 1125(a)(3) ...................................................................................... 19

26 15 U.S.C. § 1125(c)............................................................................................ 20

27

28

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT 3
PAGE 50

1    I.    **Introduction**

2        Mattel has used the Court's reference to the present Discovery Master as an

3    excuse to file a supplemental brief raising issues that Mattel never argued to the

4    prior Discovery Master and/or never included in its Appeal to the District Court,

5    and that Mattel therefore waived.  In any event, MGA's responses were sufficient

6    and its objections proper.

7        In December 2007, Mattel filed a motion to compel further responses from

8    the MGA Parties to twenty-three  interrogatories from six different sets that Mattel

9    had served, including Interrogatories 48 through 50 of Mattel's Seventh Set of

10   Interrogatories.  Interrogatories 48 through 50, which in certain respects duplicated

11   interrogatories Mattel previously had propounded, sought information about the

12   trade dress the MGA Parties contend Mattel infringed and about the Mattel

13   products the MGA parties contend are infringing.

14       By order dated February 15, 2008 ("February 2008 Order"), the former

15   Discovery Master denied Mattel's motion to compel further responses to seventeen

16   of the twenty-three interrogatories at issue, including Interrogatories 48 through

17   50. As to Interrogatories 48 through 50, which are the subject of the instant

18   Motion, the former Discovery Master ruled:

19           "The MGA parties are in substantial compliance with Rule 33, having

20           identified numerous elements of the trade dress they contend Mattel has

21           infringed.  More specifically, the MGA parties' responses identify Mattel's

22           "My Scene" fashion dolls and pet dolls as the Mattel products that infringe

23           their trade dress.  The MGA parties also set forth the principal facts

24           supporting their contention that their trade dress is protectable under

25           applicable trade dress legal principles, including that the trade dress is

26           aesthetic and non-functional, inherently distinctive, and has acquired

27           secondary meaning.  That the interrogatory responses include a reservation

Mitchell
Silberberg &   28
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT   3
PAGE   51

1  of rights to supplement during expert discovery does not render the

2  responses inherently improper or inadequate. Mattel does not contest that

3  the identification of the elements and products subject to trade dress

4  infringement will be a subject of expert testimony."

5  Ex. B to Nogues Decl. at 56:1-11 (the "February 2008 Order").

6      Mattel appealed the February 2008 Order to the District Court (the

7  "Appeal"). While the Court affirmed the February 2008 Order in most respects, it

8  declined to rule on Interrogatories 48 through 50 at that time because they were

9  directed to Phase 2 claims, which had been stayed. Ex. C to Nogues Decl. at 3.

10  The Court stated that its decision on Interrogatories 48 through 50 was without

11  prejudice, and that "Mattel may raise the issue again at an appropriate time after

12  the Court lifts the stay on Phase 2 Discovery." *Id.*

13      On January 20, 2009, Mattel filed a motion with the District Court, renewing

14  its Appeal as to Interrogatories 48 through 50 ("Renewed Appeal"). In connection

15  therewith, Mattel lodged the papers the parties had filed in 2008 in support of and

16  opposition to Mattel's original Appeal of the February 2008 Order. Ex. H to

17  Nogues Decl. at 133:14-16. On March 12, 2009, the Court issued a minute order,

18  referring Renewed Appeal to the present Discovery Master, and directing that the

19  "Discovery Master shall consider the issues presented by the motion for review as

20  if presented to him in the first instance; he should not apply the clearly erroneous

21  or contrary to law standard that the Court would apply." Ex. D to Nogues Decl.

22  The Court's March 12, 2009 Order limits the Phase 2 Discovery Master's "review

23  [of] prior discovery . . . only to motions seeking review of discovery orders

24  previously issued by the Phase 1 Discovery master to which timely objections were

25  made prior to the imposition of the stay as to Phase 2 discovery." Thus, the Court

26  did not give Mattel permission to reopen matters and issues that had not been

27  preserved by timely objection/appeal in 2008.

28

Mitchell Silberberg & Knupp LLP
2198372.1

3

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT 3
PAGE 52

1     When they originally opposed Mattel's Appeal of the February 2008 Order,
2  the MGA Parties properly focused on the standard by which the District Court
3  reviews such orders: they are not to be overturned unless clearly erroneous or
4  contrary to law.  The Court's March 12, 2009 Order expressly directs the
5  Discovery Master *not* to apply that standard, and instead to consider the motion to
6  compel as though presented to him in the first instance.

7     On April 3, 2009, Mattel filed a supplemental memorandum in support of its
8  Renewed Appeal.  That supplemental memorandum raises new issues not
9  preserved by Mattel's 2008 Appeal, and which, in at least some instances, were not
10  even raised by Mattel in its original motion regarding Interrogatories 48 through
11  50.

12

13  **II.    The Interrogatories and Responses**

14     At issue in this motion are three interrogatories served on October 25, 2007.
15  In those interrogatories, Mattel requested that the MGA Parties (a) indentify each
16  trade dress they contend Mattel "copied, infringed or diluted or that is otherwise
17  the subject of [MGA's] claims, defenses or allegations in this ACTION"
18  (Interrogatory 48); (b) identify "each and every MATTEL product, packaging or
19  other matter [MGA] contends copies, infringes or dilutes such trade dress [and]
20  each and every element of the claimed trade dress" the MGA Parties claim was
21  copied (Interrogatory 49); and (c) for each trade dress identified in response to
22  Interrogatory 48, identify all facts supporting "the contention that the trade dress is
23  protectable, all DOCUMENTS that REFER OR RELATE to the foregoing and all
24  PERSONS with knowledge of the foregoing" (Interrogatory 50).

25
26
27
28

Mitchell
Silberberg &
Knupp LLP

2198372.1

4

EXHIBIT  3
PAGE  53

1   The MGA Parties objected to Mattel's interrogatories on various grounds,

2   including that the definitions[1] made them compound, burdensome and oppressive,

3   but nevertheless provided substantive responses. In response to Interrogatory 48,

4   requesting MGA to identify the trade dress it claimed Mattel had copied, infringed

5   or diluted, MGA responded:

6   "The unique and distinctive trade dress of MGA's 'Bratz' line of dolls that

7   Mattel has copied, infringed or diluted is comprised of the following elements:

8   • the unique, unusual geometric-shaped packaging with increased

9       transparency including transparent open sides, and with a 'flying

10      banner' style slogan;

11  • the proportions and special arrangements of the eyes, noses, mouths

12      and hairlines;

13  • the shape of the eyes, faces, heads and lips;

14  • the unique face paint, design, and color scheme depicting facial

15      features;

16  • the disproportionately oversized heads;

17  • the oversized shoes; and

18  • the trendy, hip clothing and hair styles.

19

20

21

22  [1] MGA's objections included an objection to Mattel's definition of "IDENTIFY."
    In its initial motion Mattel itself raised the issue that MGA contended the
23  definition of "IDENTIFY" (and other terms) caused Mattel's interrogatories to
    have multiple distinct subparts, which in turn caused Mattel to exceed the 50
24  interrogatory limit in this case. Notwithstanding the fact that it raised this issue,
    Mattel now contends in its Supplemental Memorandum (for the very first time),
25  that MGA has waived the issue by allegedly failing to raise it before Judge Infante.
    That contention is wrong. MGA did not have to repeat an issue that Mattel had
26  already raised with the Discovery Master in order to preserve it. Indeed, it is
    Mattel that has waived its right to challenge MGA's objection to the definition of
27  IDENTIFY because Mattel failed to raise this objection in its original Appeal of
    the Discover Master's order. See discussion at 3:23-4:2, supra.

Mitchell
Silberberg &   28
Knupp LLP
                                            5
2198372.1      MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
                                   MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT    3
PAGE      54

1     The unique and distinctive trade dress of MGA's 'Bratz Petz' line of dolls

2    that Mattel has copied, infringed and diluted is comprised of the following

3    elements:

4        ●   the open box packaging with no top cover and with partial side panels

5            that slope from a narrow front panel to a higher back panel;

6        ●   the large, humanlike, artfully made-up eyes with long eyelashes that

7            sweep out and away from the outer corner of the eye;

8        ●   the disproportionately oversized heads; and

9        ●   the trendy human clothing."  (Ex. 3 to Corey Decl.)[2]

10

11     In addition, MGA responded that "MGA's trade dress . . . will be the subject

12   of expert testimony at trial.  MGA objects to this interrogatory to the extent it seeks

13   to limit the expert testimony MGA may seek to introduce at trial.  MGA will

14   identify its experts and make related disclosures in accordance with the Court's

15   orders and applicable rules."  *Id.*[3]

16     In response to Interrogatory 49, requesting identification of the Mattel

17   products that infringed MGA's trade dress as identified in the previous response,

18   MGA responded:

19     "Each of Mattel's 'My Scene' fashion dolls copied, infringed and diluted:

20

21

22

23   [2] For photographs depicting these protectable elements, Mattel need look no
further that MGA's Complaint, which contains numerous photographs depicting

24   the protectable elements copied, infringed and diluted by Mattel as well as
photographs of examples of the Mattel products which copied, infringed or diluted

25   MGA's protectable trade dress. Ex. A to Nogues Decl.

26   [3] MGA notes that this response followed several other responses to similar and/or
duplicative Mattel-propounded interrogatories, notably including its response to

27   Mattel Interrogatory 2, *see* Ex. E to Nogues Decl., which provided additional detail
on the MGA products and designs copied by Mattel, including specific product
descriptions and SKU numbers.

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

6

EXHIBIT   3

PAGE   55

1       •   the unique, unusual geometric-shaped packaging with increased
2          transparency including transparent open sides, and with a 'flying
3          banner' style slogan;
4       •   the proportions and special arrangements of the eyes, noses, mouths
5          and hairlines;
6       •   the shape of the eyes, faces, heads and lips;
7       •   the unique face paint, design, and color scheme depicting facial
8          features;
9       •   the disproportionately oversized heads;
10      •   the oversized shoes; and
11      •   the trendy, hip clothing and hair styles.
12  Each of Mattel's 'My Scene' pet dolls copied, infringed and diluted:
13      •   the large, humanlike, artfully made-up eyes with long eyelashes that
14         sweep out and away from the outer corner of the eye;
15      •   the disproportionately oversized heads;
16      •   the trendy human clothing; and
17      •   the open box packaging with no top cover and with partial side panels
18         that slope from a narrow front panel to a higher back panel." (*Id.*)
19
20       As it did with respect to Interrogatory 48, MGA noted that Interrogatory 49
21  "is premature because MGA's trade dress . . . will be the subject of expert
22  testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit
23  the expert testimony MGA may seek to introduce at trial. MGA will identify its
24  experts and make related disclosures in accordance with the Court's orders and
25  applicable rules." *Id.*
26       Similarly, in response to Interrogatory 50, which requested that MGA
27  identify the facts, documents and witnesses supporting its contention that the trade
28

Mitchell
Silberberg &
Knupp LLP

2198372.1

7

EXHIBIT __3__
PAGE __56__

1  dress identified in response to Interrogatory 48 was protectable, MGA responded
2  substantively, notwithstanding its objections:

3          "That the elements of MGA's trade dress in its 'Bratz'
4          and 'Bratz Petz' lines are aesthetic and non-functional is
5          apparent from an examination of the Bratz products and
6          packaging, compared to other leading fashion dolls. That
7          MGA's packaging was and is inherently distinctive is
8          apparent from a comparison of said packaging to the state
9          of fashion doll packaging when Bratz was introduced in
10         2001, the fact that following the Bratz introduction
11         competitors have copied significant, innovative elements
12         of the Bratz packaging, and the fact that the packaging
13         has won industry awards. MGA's trade dress has also
14         acquired secondary meaning as a source indicator for
15         'Bratz' as a result of the enormous success of the Bratz
16         dolls in the market, and the marketing and promotional
17         efforts employed by MGA to support Bratz.

18              Documents evidencing the market strength of the
19         Bratz trade dress features include documents evidencing
20         (i) sales totals; (ii) package awards; (iii) package related
21         design patents; (iv) publicity given to the Bratz dolls and
22         their success; and (v) documents evidencing industry
23         awards given to MGA on account of the success of the
24         Bratz dolls and/or their innovative packaging, and the
25         fact that said packaging has been copied and mimicked
26         by competitors.

27

28

8
MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT  3
PAGE  57

1          Persons with knowledge of the packaging issues

2          include Steffan Smith (Director of Structural

3          Engineering/Creative Package Development). Leon

4          Djiguerian (in Product Development), Samir Khare and

5          Aileen Storer (Creative Director of Bratz & Dolls)  Such

6          issues also fall within the scope of expert testimony.

7          Many individuals are knowledgeable of the striking

8          similarities between the protected trade dress of Bratz

9          and features of My Scene Barbie dolls and packaging.

10         These included Carter Bryant and Paula Garcia.

11         That the unique aspects of the Bratz dolls heads/facial

12         features have acquired secondary meaning falls within

13         the scope of expert testimony." *Id.*[4]

14

15    **III.    MGA's Responses Are Adequate**

16         As Judge Infante correctly concluded, MGA's responses adequately answer

17    Interrogatories 48 through 50, particularly since MGA's response to

18    Interrogatory 2 identifies each Bratz product copied or infringed by Mattel by

19    name and SKU number.  See Ex. E to Nogues Decl.  MGA describes particular and

20    itemized common elements of MGA's "Bratz" and Bratz Petz" lines of dolls and

21    packaging it contends Mattel copied.  Response to Interrogatory 48 quoted *supra*.

22    It explains that Mattel's "My Scene" dolls and "My Scene" pet dolls and their

23    packaging are the products and items which improperly copy MGA's trade dress,

24

25    ───────────────

      [4] As with its other responses, MGA also noted that Interrogatory 50 "is premature
      because MGA's trade dress . . . will be the subject of expert testimony at trial.

26    MGA objects to this interrogatory to the extent it seeks to limit the expert
      testimony MGA may seek to introduce at trial. MGA will identify its experts and

27    make related disclosures in accordance with the Court's orders and applicable
      rules." *Id.*

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

9

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT  3
PAGE  58

1    and details the elements of trade dress improperly copied by common elements of

2    those lines of products and their packaging. Response to Interrogatory 49 quoted

3    *supra*. It sets out facts supporting its trade dress claims and lists witnesses with

4    knowledge of the relevant facts and identifies documents relevant to the issues by

5    category. Response to Interrogatory 50 quoted *supra*. Based on these responses,

6    Mattel knows *precisely* what it is that MGA claims constitutes its protectable trade

7    dress (the listed common elements of the "Bratz" and "Bratz Petz" lines) which

8    Mattel has copied, what Mattel products (Mattel's "My Scene" dolls and doll pets

9    and packaging) improperly copy that trade dress, and facts, witnesses and

10   documents which MGA contends support its position.

11        Not satisfied with these answers, Mattel sought further responses, claiming

12   that MGA had "failed to identified with specificity a single product that MGA

13   alleges was infringed," Mattel's Motion at 24:18-19. Mattel's assertion misses the

14   point. MGA's contentions are not limited to "single" products: MGA contends

15   that the trade dress elements common to *all* Bratz and Bratz pets dolls and

16   packaging were copied and are infringed by *all* of Mattel's "My Scene" dolls and

17   "My Scene" pet dolls and packaging.[5] That is what MGA said in its responses, and

18   that is a more than adequate answer to the questions asked.[6]

19        In this renewed motion, Mattel apparently seeks to force MGA (i) to list all

20   individual Bratz dolls containing the common protectable elements copied and

21

22   [5] In its supplemental memorandum, Mattel complains about MGA's identification
23   of Mattel's "My Scene" line of dolls as copying, infringing or diluting MGA's
     trade dress because that line "consist[s] of dozens of dolls." Mattel Supp. Memo.
24   at 5:16-19. But MGA responded as it did because all of those dozens of dolls that
     comprise the My Scene line (and the packaging for such dolls) have common
25   elements that copy, infringe or dilute the common elements of the Bratz line (and
     packaging) specified in the responses.

26   [6] Mattel's arguments in this regard are also disingenuous. As Mattel is well
     aware, MGA has identified each Bratz and Bratz Pet product improperly copied by
27   Mattel specifically and most often by SKU number in response to Interrogatory
     No. 2. Ex. E to Nogues Decl.

Mitchell
Silberberg &
Knupp LLP

2198372.1

28

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER



EXHIBIT   3
PAGE   69

1   diluted by Mattel, (ii) to list all individual Mattel "My Scene" dolls whose

2   common elements copy, infringe or dilute the common and protectable trade dress

3   of MGA's Bratz dolls, (iii) to state more facts than MGA has already provided that

4   demonstrate its trade dress is protectable, (iv) to identify every person who might

5   know anything at all about those facts, and (v) to compel MGA to review the

6   millions of pages of documents produced in this action to identify each and every

7   document that might possibly support its contentions. Unquestionably, Mattel's

8   interpretation of its contention interrogatories would impose an undue burden on

9   MGA. Many courts reject out of hand this type of contention interrogatory as

10   overly broad, unduly burdensome and therefore "inherently improper."[7] *Clean*

11   *Earth Remediation & Constr. Servs. v. American Intern. Group, Inc.*, 245 F.R.D.

12   137, 141 (S.D.N.Y. 2007) ("[A] number of cases have held that interrogatories

13   seeking identification of all facts supporting a particular allegation are ***inherently***

14   ***improper***.") (emphasis added) (collecting cases). *See, e.g., Moses v. Halstead*,

15   236 F.R.D. 667, 674 (D. Kan. 2006) ("'[C]ontention interrogatories' are overly

16   broad and unduly burdensome on their face if they seek 'all facts' supporting a

17   claim or defense, such that the answering party is required to provide a narrative

18   account of its case."); *Grynberg v. Total S.A.*, 2006 WL 1186836, at \*6-\*7 (D.

19   Colo. May 3, 2006).

20        Those courts that permit the type of contention interrogatories propounded

21   by Mattel have held that the duty to respond is limited to an identification of the

22   "'principal or material' facts which support" the contention. *Moses*, 236 F.R.D.

23   at 674 (quoting *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM-DJW, 2005 WL

24

25   [7] Judge Larson specifically noted, in rejecting Mattel's appeal from another of
26   Judge Infante's orders denying Mattel's motion to compel the production of
     documents, the use of the phrase "all documents that refer or relate to" a particular
27   topic is "that fraught with the possibility that the request will be overly broad and
     unduly burdensome." *See* 5/12/08 Order Ruling on Discovery Motions, Ex. to
     Nogues Decl.

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

11

EXHIBIT  3
PAGE  60

1    3756670 at *5 (D. Kan. Feb. 3, 2005)).  *See also Grynberg*, 2006 WL 1186836,

2    at *7 ("It is proper, of course, to inquire about the material facts supporting specific

3    factual matters raised in the pleadings."); *IBP, Inc. v. Mercantile Bank of Topeka*,

4    179 F.R.D. 316, 321 (D. Kan. 1998) ("An interrogatory may reasonably ask for the

5    material or principal facts which support a contention.").  As one court explained,

6    "to require specifically 'each and every' fact and application of law to fact . . .

7    would too often require a laborious, time-consuming analysis, search, and

8    description of incidental, secondary, and perhaps irrelevant and trivial details." *Id.*

9    at 321.  Courts recognize that contention interrogatories should not require the

10   responding party to lay out a narrative account of every factual detail supporting

11   their case:

12               Interrogatories should not require the answering party to
             provide a narrative account of its case. They should not
13           duplicate initial disclosures. The court will generally
             find them overly broad and unduly burdensome on their
14           face to the extent they ask for every fact which supports
             identified allegations or defenses. Interrogatories may,
15           however, properly ask for the principal or material facts
             which support an allegation or defense.
16

17   *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998) (citations

18   and internal quotation marks omitted).[8]

19

20   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [8] The cases cited by Mattel do not support its position. For example, in *Auto
     *Meter, Products, Inc. v. Maxima Technologies & Systems, LLC*, 2006 WL 3253636
21   (N.D. Ill. Nov. 6, 2006), the answering party was forced to respond to "all facts"
     interrogatories only after it added new contentions following the close of fact
22   discovery. *Id.* at *2. *Ternison v. San Francisco*, 226 F.R.D. 615 (N.D. Cal. 2005),
     is likewise inapposite because the interrogatory responses merely referred to
23   various pleadings and papers in response to a request for facts supporting claims,
     leaving the court to conclude that further responses were necessary because the
24   defendant "should not have to guess" the plaintiff's position. *Id.* at 618.  As
     discussed below, MGA has not simply referred to a mass of pleadings or
25   documents, but has set forth the principal facts supporting its contentions in this
     action.  The court in *Audiotext Communications Network v. US Telecom, Inc.*, 1995
26   WL 625953 (D. Kansas Oct. 5, 1995), rejected an argument that "all facts"
     interrogatories are "necessarily improper," but found such interrogatories to be
27   "unnecessary and unreasonable" where they require identification of thousands of
     company employees "no matter how small or insignificant (their] involvement" in
28   the events at issue in the litigation. *Id.* at *1-* 2. Indeed, more recent decisions
                                                                        (…continued)

                                            12
─────────────────────────────────────────────────────────
     MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
                          MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT   3
PAGE   61

1    MGA has identified in its Response to Interrogatory No. 48 the common

2    elements of all Bratz dolls which it claims are its protectable trade dress that Mattel

3    copied, infringed or diluted.  It has identified in its response to Interrogatory 49 the

4    common characteristics of all Mattel "My Scene" dolls and pets which copy,

5    infringe or dilute MGA's protectable trade dress .  Demanding that MGA provide

6    (another) list of all dolls that comprise the Bratz line in response to

7    Interrogatory 48 is burdensome and unnecessary, particularly since MGA already

8    has provided such a listing in response to Interrogatory No. 2.  Demanding that

9    MGA identify every single "My Scene" doll by name or SKU number, when *all*

10   "My Scene" dolls share the common characteristics that copy, infringe and dilute

11

12   (...continued)
13   from the same district court reaffirmed that "'[c]ontention interrogatories' are
     overly broad and unduly burdensome on their face if they seek 'all facts' supporting
     a claim or defense, such that the answering party is required to provide a narrative
14   account of its case." *Moses*, 236 F.R.D. at 674; *see Hiskett*, 180 F.R.D. at 405
     ("Interrogatories should not require the answering party to provide a narrative
15   account of its case.").

16   The other authorities cited by Mattel for this proposition fare no better. *See Twigg
     v. Pilgrim's Pride Corp.*, 2007 WL 676208, at *11-12 (N.D. W. Va. Mar. 1, 2007)
17   (deciding for purposes of fee motion that objections were not substantially
     justified; the court "emphasize[d]" that its discussion "is not about how the Court
18   would have ruled had specific objections been presented"); *Williams v The Art Inst.
     Of Atlanta*, 2006 WL 3694649, at *6-*7 (N.D. Ga. Sept. 1, 2006) (party provided
19   no substantive responses to contention interrogatories served two weeks before
     discovery cut-off even though no discovery was needed to respond); *Zapata v.
20   IBP, Inc.*, 1997 WL 122588, at *1 (D. Kan. 1997) (responding party required to
     supplement where initial response did not respond to request; interrogatory sought
21   "factual basis" for affirmative defenses rather than "all facts" or "each and every
     fact"); *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 388 (N.D. Ill. 1990)
22   (same); *Pension Benefit Guaranty Corp. v, Ziffer*, 1994 WL 11654, at *1 (N.D. Ill.
     Jan. 6, 1994) (authorizing seven "all facts" interrogatories but noting that in other
23   circumstances such interrogatories "may be vague and... open-ended"); *King v.
     Georgia Power Co.*, 50 F.RD. 134, 136 (N.D. Ga. 1970) (court ordered response to
24   interrogatory requiring plaintiff to "specify in detail how the provisions of [a]
     collective bargaining agreement are applied,"; not a contention or all
25   facts/documents/witnesses interrogatory); *Dang v. Cross*, 2002 WL 432197 at *4
     (C.D. Cal. March 18, 2002) (while district court affirmed magistrate's ruling as not
26   "manifestly wrong," it noted that "reasonable people (or Magistrate Judges) might
     disagree about the burden imposed by these interrogatories"); *Am. Oil Co. v. Penn.
27   Ptero. Co.*, 23 F.R.D. 680, 683 (D.R.I. 1959) (interrogatories concerning plaintiff's
     damages and calculations, not all facts/witnesses/documents).

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

13

EXHIBIT   3
PAGE    62

1   MGA's trade dress, is unnecessarily burdensome and harassing, particularly when

2   Mattel knows the names and SKU numbers of its own products far better than

3   MGA.

4        Similarly, as the Phase 1 Discovery Master found, the MGA Parties'

5   responses to Interrogatories 48 through 50 provide the "principal facts supporting

6   their contention that their trade dress is protectable under applicable trade dress

7   legal principles, including that the trade dress is aesthetic and non-functional,

8   inherently distinctive, and has acquired a secondary meaning." Ex. B to Nogues

9   Decl. at 56:1-11. In its newly-filed supplemental memorandum, Mattel raises for

10  the first time an argument that MGA's recitation of the facts supporting trade dress

11  protectability consists of nothing more than "conclusory, circular arguments" and

12  "legal conclusions" and do not set out the facts sought by Mattel. Mattel Supp.

13  Memo. at 5-6 and n.16. To begin with, by failing to raise this issue in its original

14  motion or in its initial Appeal of Judge Infante's ruling, Mattel has waived this

15  argument. *In re Veeco Instruments, Inc. Securities Litigation*, 2007 WL 724555 at

16  *11 (S.D.N.Y. March 9, 2007) ("Conversely, if lead plaintiff means to suggest that

17  it has an especially acute need for those documents sought in its original motion to

18  compel that related to internal controls, it failed to raise the argument before [the

19  Magistrate Judge] and has thereby waived it.")

20       As important, Mattel is just plain wrong. The facts supporting MGA's

21  claims that its trade dress is protectable are set out in its responses taken as a whole

22  and not truncated by Mattel's selective quotations in its supplemental

23  memorandum. MGA certainly did state that the identified trade dress elements are

24  aesthetic and non-functional, but noted that "is apparent from an examination of

25  the Bratz products and packaging, compared to other leading fashion dolls." Ex. 3

26  to Corey Decl. at 46:27-47:1. MGA went on to point out other facts supporting its

27  position: a comparison of the Bratz packaging to "the state of fashion doll

Mitchell
Silberberg &   28
Knupp LLP

2198372.1

14

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT  3
PAGE  63

1   packaging when Bratz was introduced," industry awards received for the

2   packaging, and secondary meaning acquired as a result of marketing and

3   promotional efforts and the enormous success of the Bratz line. *Id.* at 47:1-15  It

4   identified supporting documents including package awards, package related design

5   patents and other industry awards. *Id.*  It identified persons who knew about

6   packaging matters and similarities between Bratz and My Scene dolls (many of

7   which are obvious from just looking at the two lines[9]). *Id.* at 47:16-22.

8        A review of MGA's answers and the authorities cited above resulted in

9   Judge Infante denying Mattel's initial motion to compel as to Interrogatories 48

10  through 50.  While MGA recognizes that the Court has directed the Phase 2

11  Discovery Master to address Judge Infante's ruling de novo, MGA submits that

12  Judge Infante got it right when he denied Mattel's motion and held that "[t]he

13  MGA parties are in substantial compliance with Rule 33," have "identified

14  numerous elements of the trade dress they contend Mattel has infringed," have

15  "identif[ied] Mattel's "My Scene" fashion dolls and pet dolls as the Mattel

16  products that infringe their trade dress," and have "set forth the principal facts

17  supporting their contention that their trade dress is protectable under applicable

18  trade dress legal principles, including that the trade dress is aesthetic and non-

19  functional, inherently distinctive, and has acquired secondary meaning." Ex. B to

20  Nogues Decl. at 56:1-11.

21       To be sure, MGA noted that the subjects under inquiry would be matters for

22  expert testimony, and reserved its right to supplement its responses to account for

23  expert testimony at an appropriate juncture.[10]  But as Judge Infante correctly noted,

24

25  [9] *See* photographs incorporated in MGA's Complaint. Ex. A to Nogues Decl.

26  [10] Mattel asserts that MGA "agreed to supplement their responses in Phase 2."
    Mattel Supp. Memo. at 2:17-18.  Once again, Mattel has mischaracterized MGA's

27  statements.  MGA did no more than reserve the right to supplement its responses as
    discovery progressed (exactly as Mattel has done in its own discovery responses)

28  and specifically reserved the right to supplement with any applicable expert
                                                          (...continued)

Mitchell
Silberberg &
Knupp LLP

2198372.1

15

1   where, as here, "Mattel does not contest that the identification of the elements and

2   products subject to trade dress infringement will be a subject of expert testimony,"

3   a reservation of rights to supplement with expert testimony at the appropriate time

4   was appropriate. *Id.*

5        For all the reasons set forth above, the Discovery Master should once again

6   deny Mattel's motion to compel further responses to Interrogatories 48 through 50.

7

8   IV.   **MATTEL'S CONTENTIONS REGARDING OBJECTIONS OVER**

9        **WHICH MGA ANSWERED HAVE BEEN WAIVED AND ARE**

10       **WITHOUT MERIT**

11       Not surprisingly, Mattel has not attached a copy of its Seventh Set of

12  Interrogatories to any of the original or supplemental papers filed in support of this

13  Motion. That is presumably so the Discovery Master does not see that the Seventh

14  Set consists of a single page containing three interrogatories, prefaced by *four*

15  pages of convoluted "definitions" and a fifth page of "instructions," all of which

16  one must refer to in order to know what information is sought, and all of which

17  render the Interrogatories impermissibly burdensome and compound. *See* Ex. G to

18  Nogues Decl.

19       As discussed below, Mattel has waived its right to challenge MGA's

20  objections to these overreaching definitions, but even without regard to waiver,

21  MGA's objections well-founded and entirely proper.

22       A.   <u>Mattel Has Waived Its Belated Arguments Regarding MGA's</u>

23            <u>Objections</u>

24       Mattel's Supplemental Memorandum filed April 3, 2009, raises arguments

25  that Mattel did not raise in its Appeal of the February 15, 2008 Order respecting

26  _____

27  (...continued)
    testimony during expert discovery. *See* Ex. 4 to Corey 4/3/09 Decl. at 84:5-8, and
    84:20-85:2.

28

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
                        MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT   3
PAGE   65

1   Interrogatories 48 through 50. While the Court directed the Discovery Master to
2   consider Mattel's Renewed Appeal as if presented to him in the first instance and
3   without regard to the clearly erroneous/contrary to law standard which would have
4   applied had the Court heard the Renewed Appeal, it did not give Mattel free rein to
5   make objections to the February 15, 2008 Order that were not made or preserved
6   when Mattel filed its original Appeal in 2008.

7       That Mattel is now raising new (and unpreserved) issues is clear from a
8   review of its original Appeal of Judge Infante's rulings on Interrogatories 48
9   through 50. Mattel's original Appeal to that part of Judge Infante's order
10  comprised approximately one page, and asserted the following: (1) the MGA
11  Parties had only provided "general categories of allegedly protected trade dress and
12  allegedly infringing products; (2) the MGA parties failed to identify all the
13  "particular trade dress they claim is at issue or all the particular Mattel products
14  they claim infringed that trade dress;" (3) MGA's representation that it would
15  supplement its responses to these interrogatories in the course of Phase 2 discovery
16  was an admission that the responses were inadequate; (4) in light of the putative
17  "admission," Judge Infante's order finding the responses in substantial compliance
18  was erroneous; and (5) without "the identity of specific trade dress" MGA
19  contends was infringed and "specific Mattel products" which MGA contends
20  infringed that trade dress, Mattel could not prepare its defense. Ex. F to Nogues
21  Decl. at 116-17.

22      Mattel did not address any of the MGA's objections to Interrogatories 48
23  through 50 in its original Appeal.[11] Yet that is the principal focus of its

24  
[11] Mattel generically addressed objections that some interrogatories were
overbroad, unduly burdensome, oppressive or sought privileged information in its
original motion to compel. But none of Mattel's assertions about the propriety of
these objections was specifically addressed to Interrogatories 48 through 50.
Further, Mattel's original moving papers nowhere mentioned MGA's objections to
those interrogatories (or many others) on grounds that they were compound or
sought information already produced. And, none of the objections addressed
                             (...continued)

17

Mitchell Silberberg & Knupp LLP
2198372.1

EXHIBIT 3
PAGE 66

1   supplemental memorandum, occupying more than half of the argument. Because it

2   failed to preserve any issues relating to MGA's objections when it filed its 2008

3   Appeal, Mattel has waived any right to now challenge those objections.. *In re*

4   *Veeco Instruments, Inc.* 2007 WL 724555 at *11. Accordingly, the Discovery

5   Master should disregard Part II of Mattel's Supplemental Memorandum.

6       **B.**   **MGA's Objections Are Valid, and, In Any Event, MGA Has**

7               **Provided More Than Sufficient Answers Notwithstanding Those**

8               **Objections**

9           **1.**   **Privilege Objections**

10       MGA's privilege objections were made to preserve MGA's ability to protect

11   privileged documents and information in the face of broad-ranging interrogatories

12   that, among other things, purport to require MGA to identify all documents that

13   "refer or relate to" various matters. MGA is fully aware of its obligation to

14   provide privilege logs when privileged documents and information are responsive

15   to discovery, and has provided such logs if appropriate. But given some of the

16   assertions and arguments made in this case to date, it cautiously and properly made

17   it clear that it was not waiving the attorney-client privilege and would not produce

18   any privileged information or documents responsive to Mattel's requests.

19       In any event, MGA answered each of the interrogatories in question.

20           **2.**   **Compound Objections**

21       In its Supplemental Memorandum, Mattel argues that the interrogatories at

22   issue are not compound because each refers to "one common theme."[12] First, that

23

24   (...continued)

25   generically in Mattel's original motion was addressed in Mattel's Appeal of Judge Infante's ruling.

26   [12] None of Mattel's memoranda in support of its motion to compel, its separate

27   statement filed in support of that motion, or its original Appeal of the Phase 1 Discovery Master's ruling addressed the "compound" and subpart objections made in MGA's responses to Interrogatories 48 through 50.

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT   3
PAGE   67

1    alone does not excuse the compound nature of the interrogatories. Second, that

2    assertion is not correct. Each of Interrogatories 48 through 50 asks about trade

3    dress "copied, infringed or diluted." "Infringement" and "dilution" refer to

4    separate and distinct claims under federal law.

5         Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), governs trade

6    dress infringement--adoption of similar trademarks or trade dress to mislead

7    consumers as to the origin of the products bearing those trademarks or containing

8    that trade dress.[13] "A party's adoption of a trade dress confusingly similar to

9    another's may be actionable under § 43(a). A three part test has evolved for

10   evaluating whether a trade dress is protected under this statute: (1) whether the

11   trade dress is inherently distinctive or has acquired distinctiveness through

12   secondary meaning; (2) whether the trade dress is not functional; and (3) whether

13   there is any likelihood of confusion between a party's trade dress and an alleged

14   infringer's." *General Motors Corp. v. Let's Make A Deal*, 223 F.Supp.2d 1183,

15   1195 (D.Nev. 1998). *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763,

16   769-70 (1992) (describing these same three elements for a trade dress infringement

17   action). The gravamen of a Lanham Act trademark or trade name infringement

18   claim is consumer confusion:

19              "Traditional trademark infringement law is a part of the

20              broader law of unfair competition..., that has its sources

21              in English common law, and was largely codified in the

22              Trademark Act of 1946 (Lanham Act). That law broadly

23              prohibits uses of trademarks, trade names, and trade dress

24              that are likely to cause confusion about the source of a

25              product or service. Infringement law protects consumers

26

27   [13] The terminology "trade dress infringement" is used only in the context of a
     Section 43(a) claim. *See* 15 U.S.C. § 1125(a)(3).

Mitchell
Silberberg &   28
Knupp LLP
                                              19
2198372.1

EXHIBIT    3

PAGE    68

1          from being misled by the use of infringing marks and

2          also protects producers from unfair practices by an

3          "imitating competitor...." *Moseley v. V Secret*

4          *Catalogue, Inc.*, 537 U.S. 418, 428 (2003).

5          By contrast, the Trademark Dilution Revision Act (TDRA), 15 U.S.C.

6    1125(c), governs trademark or trade dress dilution claims. "Dilution is 'the

7    lessening of the capacity of a famous mark to identify and distinguish goods or

8    services, regardless of the presence or absence of (1) competition between the

9    owner of the famous mark and other parties, or (2) likelihood of confusion,

10   mistake, or deception....' As the Supreme Court explained, the purpose of the

11   FTDA[14] 'is to protect famous trademarks from subsequent uses that blur the

12   distinctiveness of the mark or tarnish or disparage it, even in the absence of a

13   likelihood of confusion.'" *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d

14   1002, 1011 (9th Cir. 2004). "Unlike traditional infringement law, the prohibitions

15   against trademark dilution are not the product of common-law development, and

16   are not motivated by an interest in protecting consumers." *Moseley v. V Secret*

17   *Catalogue, Inc.*, 537 U.S. at 429.

18         Thus, each of Interrogatories 48 through 50 asks about at least two different

19   types of claims asserted by MGA, trade dress infringement claims and trade dress

20   dilution claims. These claims are separately stated in the first (infringement) and

21   third (dilution) claims for relief in MGA's complaint.

22         The compound nature of the interrogatories is exacerbated by the many

23   separate subparts created by Mattel's "definitions" of terms such as IDENTITY

24   and IDENTIFY.[15]  For example, Mattel's definition of IDENTIFY in the context

25

26   [14] The Federal Trademark Dilution Act (FTDA) is the predecessor of the TDRA.
27   [15] Even though Mattel's supplemental memorandum raises the issue of MGA's
     "compound" objections to Interrogatories 48 through 50 for the very first time,
     Mattel contends that MGA has waived its right to argue about the propriety of
28                                                                    (...continued)
Mitchell
Silberberg &
Knupp LLP                                          20
2198372.1    ─────────────────────────────────────────────────────────────────
             MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
                              MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT __3__
PAGE __69__

1    of "protectability of trade secrets"[16] purports to require (a) all facts that support
2    MGA's contention that the trade dress is inherently distinctive or has acquired
3    secondary meaning and that such trade dress is famous, (b) the date MGA contends
4    that the trade dress acquired secondary meaning or became famous, (c) all facts
5    supporting a contention that the trade dress is not functional, and (d) "if YOU are
6    relying on advertising to establish secondary meaning or fame, the dollar amounts,
7    by year, spent by YOU or anyone acting on YOUR behalf on advertising that
8    features such trade dress." Ex. G to Nogues Decl. at 5 (definition 10(f)); Ex. 3 to
9    Corey Decl. at 45:24-46:8 (MGA's objection to definition of IDENTIFY). This
10   definition not only uses terminology applicable to the distinct legal concepts of
11   trade dress infringement ("inherently distinctive" and "secondary meaning") and
12   trade dress dilution ("famous"), it asks for various discrete kinds of information
13   ranging from facts regarding those concepts to dollar amounts spent on advertising.
14   Mattel's abuse of specialized definitions that purport to vary depending upon
15   context makes the interrogatories in question ever more compound and adds
16   additional subparts.

17        Thus, to the extent the Discovery Referee finds that Mattel has not waived
18   its right to challenge MGA's objections, he should rule that Mattel's
19   interrogatories are improperly compound and contain multiple subparts.

20

21   (...continued)
22   those objections by failing to make such an argument in opposition to Mattel's original motion to compel or Appeal. Mattel's argument that MGA should have
23   made arguments about objections that Mattel did not challenge is patently specious. Certainly, none of the cases cited by Mattel for its "waiver" argument
24   supports such a principle. And MGA most certainly *did* address its objections that various "definitions" used by Mattel in its interrogatories had the impact of
25   creating discrete subparts that put Mattel over the 50 interrogatory limit. *See, e.g.,* Ex. 4 to Corey Decl. at 71:17-72:22. MGA has not waived any of its objections or
26   arguments.

27   [16] Mattel used varying definitions of the same words dependent on "context." *See* Ex. G to Nogues Decl. at 124-28 (definitions from Mattel's Seventh Set of Interrogatories).

28

Mitchell Silberberg & Knupp LLP
2198372.1

21

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY MATER'S FEBRUARY 15, 2008 ORDER


EXHIBIT 3
PAGE 20

1          **3.**    **Objections that Information Has Already Been Produced or**

2                          **Is More Readily Accessible to Mattel**

3       Mattel is dissatisfied with MGA's identification of common protectable

4 elements found in all Bratz dolls and Bratz Pets, and demands that MGA list every

5 MGA product whose trade dress was infringed or diluted by Mattel. Mattel has

6 already provided such a list in its response to Interrogatory 2. Ex. E to Nogues

7 Decl. There is no good reason to compel MGA to repeatedly provide the same

8 information in response to duplicative interrogatories. The "already provided"

9 objection is very well taken.

10       MGA's objection that Mattel seeks to have MGA provide information that is

11 more readily available to Mattel from other sources is particularly meritless in the

12 context of Interrogatories 48 through 50. Among other things, Mattel demands

13 that MGA list every *Mattel* product in the My Scene lines and the SKU numbers

14 *Mattel* has assigned to them. That is information more readily (if not exclusively)

15 available to Mattel from its own records.[17] There is no rational basis for

16 demanding that MGA be put to the undue burden of attempting to compile

17 information Mattel already has, and Mattel will learn nothing of significance from

18 such an exercise.[18]

19          **4.**    **Expert Analysis**

20       MGA did not refuse to answer any interrogatory on the ground that it would

21 be the subject of expert testimony. MGA simply noted that "MGA's trade dress

22 (and other legal concepts that may be relevant) will be the subject of expert

23 testimony at trial," objected to the interrogatories "to the extent [they seek] to limit

24

25   [17] Mattel itself has asserted this objection in response to interrogatories. Ex. J
    at 182:8-11.
26
  [18] Once again, Mattel never raised this issue with respect to Interrogatories 48
27   through 50 before submitting its supplemental memorandum. Mattel has waived
    its right to argue that these objections should be overruled.

Mitchell
Silberberg &
Knupp LLP

2198372.1

28
                     22
MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT 3
PAGE 71

1   the expert testimony that MGA may seek to introduce," stated that it would

2   identify its experts and make required disclosures as required by court order and

3   applicable rules, and said it would supplement its responses at the appropriate

4   juncture to account for any relevant expert testimony. *See, e.g.,* Supp. Responses

5   to Interrogatories 48, 49 and 50, Ex. 3 to Corey 4/3/09 Decl. at 37, 41-42 46; Ex. 4

6   to Corey 4/3/09 Decl. at 84. As the Judge Infante held, given that Mattel does not

7   dispute the fact that trade dress issues will be the subject of expert testimony, such

8   a reservation of the right to rely on expert testimony was entirely proper. Ex. B to

9   Nogues Decl. at 56. Indeed, Mattel has done much the same thing in its responses

10  to MGA's discovery. *See* Nogues Decl., Ex. I at 163:28-164:3, 167:1-8; Ex. J

11  at 172:21-23, 173:18-22, 181:8-10, 182:8-11; Ex. K at 184:18-24, 186:5-8, 187:12-

12  15, 189:21-24; and Ex. L at 193:3-6, 195:1-3, 198:1-3, 199:1-3.[19]

13

14          **5.      Undue Burden**

15          MGA objected to Interrogatory 50 as "oppressive, harassing and unduly

16  burdensome insofar as it requires MGA to compile detailed financial reports and

17  information not reasonably available." Mattel never challenged this objection in

18  the motion before Judge Infante or in its Appeal of Judge Infante's February 15,

19  2005 Order, and has waived its right to do so now.

20          In any event, the objection is well-taken. It was directed at Mattel's abusive

21  definitions that include, within the convoluted, page and a half definition of

22  ─────────────────────────────
    [19] For example, in responding to MGA's second set of requests for admission,
23  "Mattel object[ed] to the Requests on the grounds that they are premature and seek
    to circumvent the expert disclosure provisions of the Federal and Local Rules.
24  Mattel has not yet computed or calculated its damages and has not yet engaged any
    testifying expert to compute or calculate its damages or on any other matter
25  contained within the Requests that might be the subject of expert testimony.
    Matter will disclose such testimony in the manner, and at the time, provided for by
26  the Federal and Local Rules and the Court's Orders." Ex. K to Nogues Decl.
    at 184:18-24 (general objection 10) (underlining in original). This language is
27  nearly identical to the objections which Mattel belatedly challenges in this motion.
    *See* note 4 *supra.*

Mitchell
Silberberg &   28
Knupp LLP
                                              23
2198372.1       MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
                                    MATER'S FEBRUARY 15, 2008 ORDER

                                                            EXHIBIT   3
                                                            PAGE     72

1 | IDENTIFY, a requirement that MGA provide information on the amounts spent to

2 | advertise products containing its trade dress, apparently on a product by product,

3 | year by year basis. Mattel's argument that MGA "failed" to specify the burden

4 | involved" is untrue. MGA specifically objected that the burden involved

5 | "compiling detailed financial reports and information not readily available."

6 | Mattel's argument that MGA failed to "submit proof" of the "substantiality" of the

7 | burden is baseless. (Supp. Brief at 13.) "Proof" was unnecessary (but was clearly

8 | apparent from the interrogatory itself) because Mattel did not raise this issue in its

9 | Motion to Compel.

10

11 | **CONCLUSION**

12 | For all the reasons set forth above and in MGA's prior briefs relating to this

13 | matter, Mattel's Renewed Objections to the Discovery Master's February 15, 2008

14 | Order should be overruled. Judge Infante's rulings on Interrogatories 48 through

15 | 50 were and are correct, and should not be disturbed.

16

17 | DATED: April 15, 2009            RUSSELL J. FRACKMAN
                                     PATRICIA H. BENSON
18                                   MITCHELL SILBERBERG & KNUPP LLP

19

20 |                                 By::           /s/                    .
                                        Patricia H. Benson
21                                      Attorneys for Defendants
                                        MGA Entertainment, Inc., MGA
22                                      Entertainment HK, Ltd., MGAE De
                                        Mexico, S.R.L. De C.V., and Isaac Larian
23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2198372.1

MGA'S SUPPLEMENTAL OPPOSITION TO MATTEL'S RENEWED MOTION OBJECTING TO DISCOVERY
MATER'S FEBRUARY 15, 2008 ORDER

EXHIBIT  3
PAGE  73

# EXHIBIT 4

RECEIVED

FEB 0 7 2005

1   DIANA M. TORRES (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
2   ALICIA C. MEYER (S.B. #230189)
    O'MELVENY & MYERS, LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5
    Attorneys for Defendant-in-Intervention,
6   MGA Entertainment, Inc.

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10  MATTEL, INC., a Delaware          Case No.  CV04-9059 NM (RNBx)
    Corporation,
11                                    **MGA'S FIRST SET OF
                    Plaintiff,        INTERROGATORIES TO MATTEL,
12                                    INC.**
            v.
13
    CARTER BRYANT, an individual,
14  and MGA ENTERTAINMENT,
    INC., a California Corporation
15
                    Defendant and
16                  Defendant-in-
                    Intervention.
17

18

19  PROPOUNDING PARTY:    MGA ENTERTAINMENT, INC.

20  RESPONDING PARTY:     MATTEL, INC.

21  SET:                  ONE

22

23

24

25

26

27

28

EXHIBIT __4__
PAGE __74__

1    Defendant-In-Intervention, MGA Entertainment Inc. ("MGA"), hereby

2    requests that Plaintiff, Mattel Inc. ("Mattel") answer the following Interrogatories

3    separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil

4    Procedure, within thirty (30) days of service, in accordance with the definitions and

5    instructions set forth herein.

## DEFINITIONS

7    1. "BRATZ" means and refers to each image, character, logo, doll, toy,

8    accessory, product, packaging or other thing or matter that is or has ever been

9    manufactured, marketed or sold by MGA, or others under license, as part of a line of

10   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

11   trademark or trade dress including but not limited to the "BRATZ CONCEPT,"

12   "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK", "LIL' BRATZ,"

13   "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ.

14   2. "BRATZ CONCEPT" means and refers to each "BRATZ"-related image,

15   drawing, picture, sculpt, mold, prototype and any other form of artwork predating the

16   FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's

17   testimony and produced by Mr. Bryant bearing Bates serial numbers Bryant 00175-

18   177; 00179-00182; 00189-00190; 00192-00196; 00198-00216; 00218; 00341; 00972;

19   01014; and 01116-01118.

20   3. "FIRST BRATZ DOLLS" means and refers to each image, character, logo,

21   doll, toy, accessory, product, packaging or other thing or matter that is or has ever

22   been manufactured, marketed or sold by MGA, or others under license, as part of a

23   line of goods or merchandise commonly known as, or sold and marketed under the

24   "Bratz" trademark or trade dress and consisting of the following: "Bratz Cloe", SKU

25   248521; "Bratz Cloe", SKU 248538; "Bratz Jade", SKU 248545; "Bratz Sasha, SKU

26   248552; "Bratz Yasmin", SKU 248569; "Bratz Pajama Power Fashion", SKU

27   248576; "Bratz Study Hall Fashion", SKU 248583; and "Bratz Dynamite Dance

28   Fashion", SKU 248682.

EXHIBIT __4__
PAGE __75__

1

1    4. "BRATZ DOLLS" means and refers to each image, character, logo, doll,

2    toy, accessory, product, packaging or other thing or matter that is or has ever been

3    manufactured, marketed or sold by MGA, or others under license, as part of a line of

4    goods or merchandise commonly known as, or sold and marketed under the "Bratz"

5    trademark or trade dress excluding the "FIRST BRATZ DOLLS", "LIL' BRATZ,"

6    "BRATZ PETZ," and "BRATZ BABYZ" and including, without limitation, the

7    styling head commonly known as or sold and marketed as the "Bratz Funky Fashion

8    Make Over" styling head, and specifically including, without limitation, the images,

9    characters, dolls, playsets and other products and toys called or referred to as, or

10    named or marketed in association with the names "Cloe", "Jade", "Sasha", "Yasmin",

11    "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby",

12    "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin",

13    "Flaunt It," "Beach Party", "Micro Bratz", "Xpress It", "Bratz Boyz", "Funk 'n'

14    Glow", "Funky Fashion Makeover", "Holiday Bratz – Sweetheart", "Holiday Bratz –

15    Spring Fling", "Holiday Bratz – Independence Dance", "Slumber Party", "Strut It",

16    "Spring Break", "Formal Funk", "Bratz Boyz Formal Funk", "Wintertime

17    Wonderland", "Style It!", "Funky Fashion Makeover", "Funk Out!", "Sun-Kissed

18    Summer", "Girls Nite Out!", "Wild Life Safari", and any other released, or yet to be

19    released, BRATZ named character or product theme.

20    5. "BRATZ PACK" means and refers to any collection, compilation or

21    grouping of two or more images, characters or dolls that are or have ever been

22    manufactured, marketed or sold by MGA, or others under license, as part of a line of

23    goods or merchandise commonly known as, or sold and marketed under the "Bratz"

24    trademark or trade dress including, without limitation, the collection, compilation or

25    grouping of four female images, characters or dolls individually named, called or

26    referred to as "Bratz Cloe", "Bratz Jade", "Bratz Sasha", and "Bratz Yasmin" and any

27    other similar collection, compilation or grouping of two or more images, characters or

28    dolls, male or female, and specifically including, without limitation, the images,

2

EXHIBIT ___4___
PAGE ___76___

1  characters and dolls called or referred to as, or named or marketed in association with

2  the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna",

3  "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia",

4  "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", and any other released, or yet

5  to be released, BRATZ character.

6      6. "LIL' BRATZ" means and refers to each image, character, logo, doll, toy,

7  accessory, product, packaging or other thing or matter that is or has ever been

8  manufactured, marketed or sold by MGA, or others under license, as part of a line of

9  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

10  trademark or trade dress and commonly labeled, called, referred to, named or

11  identified as "LIL' BRATZ", and specifically including, without limitation, the

12  images, characters, dolls, playsets and other products and toys called or referred to as,

13  or named or marketed in association with the names "Cloe", "Yasmin", "Sasha",

14  "Jade", "Ailani", "Nazalia", "Talia", "Zada", "Lil' Boyz", "Cameron", "Dylan",

15  "Eitan", "Koby", "Mikko", "Colin", "Deavon", "Lakin", "Lil' Bratz Slumber Party",

16  "Lil' Bratz Tote", "Lil' Bratz Spring Break", "Lil Bratz Dancefloor Funk", "Lil' Boyz

17  Dancefloor Funk", and any other released, or yet to be released, LIL' BRATZ

18  character or product theme.

19      7. "BRATZ PETZ" means and refers to each image, character, logo, doll, toy,

20  accessory, product, packaging or other thing or matter that is or has ever been

21  manufactured, marketed or sold by MGA, or others under license, as part of a line of

22  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

23  trademark or trade dress and commonly labeled, called, referred to, named or

24  identified as "BRATZ PETZ", and specifically including, without limitation, the

25  images, characters and toys called or referred to as, or named or marketed in

26  association with the names, "Bratz Catz", "Brigitte", "Jolie", "Kendall", "Daphne",

27  "Bratz Petz Tokyo Catz", "Kyoto", "Cho", "Nami", "Yukiko", "Bratz Petz Foxz",

28  "Carly", "Reilly", "Shayna", "Bree", "Bratz Petz Dogz", "Shae", "Kali", "Pilar",

3

EXHIBIT __4__
PAGE __77__

1    "Abby", and any other released, or yet to be released, BRATZ PETZ character or
2    product theme.
3        8. "BRATZ BABYZ" means and refers to each image, character, logo, doll,
4    toy, accessory, product, packaging or other thing or matter that is or has ever been
5    manufactured, marketed or sold by MGA, or others under license, as part of a line of
6    goods or merchandise commonly known as, or sold and marketed under the "Bratz"
7    trademark or trade dress and commonly labeled, called, referred to, named or
8    identified as "BRATZ BABYZ", and specifically including, without limitation, the
9    images, characters and dolls called or referred to as, or named or marketed in
10   association with the names, "Cloe", "Sasha", "Jade," "Yasmin", and any other
11   released, or yet to be released, BRATZ BABYZ character or product theme.
12       9. "BRATZ BOYZ" means and refers to each male image, character, logo, doll,
13   toy, accessory, product, packaging or other thing or matter that is or has ever been
14   manufactured, marketed or sold by MGA, or others under license, as part of a line of
15   goods or merchandise commonly known as, or sold and marketed under the "Bratz"
16   trademark or trade dress and commonly labeled, called, referred to, named or
17   identified as "BRATZ BOYZ", and specifically including, without limitation, the
18   images characters, dolls, playsets and other products and toys called or referred to as,
19   or named or marketed in association with the names "Cameron", "Dylan", "Eitan",
20   "Koby", "Cade", "Mikko", "Colin", "Deavon", "Lakin", "Bratz Boyz Formal Funk",
21   "Boyz Funk Out!", "Boyz Sun-Kissed Summer", and any other released, or yet to be
22   released BRATZ BOYZ character or product theme.
23       10.   "BRATZ INTELLECTUAL PROPERTY" means all intellectual and
24   industrial property rights in and to BRATZ including, without limitation, all
25   copyrights, patents, trademarks, industrial designs, trade secrets, contract and
26   licensing rights, design rights, moral rights and trade dress rights, in any country of
27   the world.
28       11.   "BRYANT" means defendant Carter Bryant.

4

EXHIBIT __4__
PAGE __76__

12.   "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail.  Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

13.   "COMPLAINT" means and refers to the Complaint filed by Mattel Inc. in this matter on April 27, 2004 and now designated as Case No. CV 04-9059 NM (RNBx) in the United States District Court for the Central District of California.

14.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 24, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot

5

EXHIBIT __4__
PAGE __79__

1   advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

2   charts, drawings, sketches, messages, photographs and data contained in or

3   accessible through any electronic data processing system, including, but not limited

4   to, computer databases, data sheets, data processing cards, computer files and tapes,

5   computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic

6   mail, website and web pages and transcriptions thereof and all other

7   memorializations of any conversations, meetings and conference, by telephone or

8   otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where

9   such copy is not an identical duplicate of the original, whether because of deletions,

10  underlinings, showing of blind copies, initialing, signatures, receipt stamps,

11  comments, notations, differences in stationery or any other difference or

12  modification of any kind.

13      15.   "MARKET RESEARCH" means any type of research, study, survey or

14  analysis of consumers or potential consumers of a product or potential product

15  including, without limitation, focus groups, consumer surveys, market analyses,

16  behavioral analyses and consumer research.

17      16.   "MATTEL," "PLAINTIFF," "YOU" or "YOUR" means plaintiff

18  MATTEL, Inc. and any of its past or present officers, directors, agents, employees,

19  representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

20  predecessors-in-interest and successors-in-interest, entities and persons acting in joint

21  venture or partnership relationships with YOU and any others acting on YOUR

22  behalf, pursuant to YOUR authority or subject to YOUR control.

23      17.   MGA" means MGA Entertainment, Inc. and any of its past or present

24  officers, directors, agents, employees, representatives, consultants, attorneys, parents,

25  subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest,

26  entities and persons acting in joint venture or partnership relationships with MGA

27

28

6

EXHIBIT __4__
PAGE __60__

1   and any others acting on MGA's behalf, pursuant to its authority or subject to its

2   control.

3       18.    "MGA PRODUCTS" means any and all products offered for sale by

4   MGA Entertainment, Inc., other than BRATZ, including, without limitation, "4-Ever

5   Best Friends" and "Alien Racers".

6       19.    "PERSON" or "PERSONS" means all natural persons, partnerships,

7   corporations, joint ventures and any kind of business, legal or public entity or

8   organization, as well as its, his or her agents, representatives, employees, officers and

9   directors and any one else acting on its, his or her behalf, pursuant to its, his or her

10  authority or subject to its, his or her control.

11      20.    "PROPERTY" or "PROPERTIES" means all ideas, concepts, rights,

12  designs, proprietary and confidential information, and other intellectual and

13  intangible property including, without limitation, copyrights, patents, trademarks,

14  design rights and trade secrets.

15      21.    The singular form includes the plural, and vice versa.

16      22.    The terms "any" and "all" are interchangeable.

17      23.    The terms "and" and "or" shall be construed disjunctively and

18  conjunctively, and each shall include the other whenever such dual construction will

19  serve to bring within the scope of any interrogatory, information that would

20  otherwise not be within its scope.

21      24.    As used herein, the terms "relating to" and "referring to" should each be

22  construed in the broadest possible sense to mean concerning, consisting of, referring

23  to, describing, discussing, constituting, evidencing, containing, reflecting,

24  mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or

25  factual connection with the matter discussed.

26                              **INSTRUCTIONS**

27      1.    Mattel is instructed to serve written responses to these Interrogatories

28

7

EXHIBIT __4__
PAGE __81__

1    upon MGA's counsel at O'Melveny & Myers LLP, 400 South Hope Street, Los

2    Angeles, California 90071.

3        2.    These Interrogatories are deemed to be continuing in nature. If, after

4    responding, Mattel discovers additional information responsive to any Interrogatory,

5    or part thereof, MGA requests that Mattel provide such information to MGA within

6    thirty days after acquiring knowledge of its existence or advise MGA in writing as to

7    why such additional information cannot be provided within the specified period.

8        3.    For any information withheld based on any ground, including privilege,

9    provide a written statement setting forth: (a) the identity of all person(s) from and to

10   whom the information has been communicated; (b) the names and organization

11   position, if any, of each such person; (c) a brief description of the subject matter of the

12   information; and (d) the legal ground upon which you rely in withholding the

13   information; and (e) if work product is asserted, the proceeding for or during which

14   the information was obtained or created.

15       4.    Whenever in these Interrogatories there is a request to "IDENTIFY" a

16   COMMUNICATION, the answering party shall state the date of the

17   COMMUNICATION, the places of origin and reception of the COMMUNICATION,

18   the persons present during any portion of the COMMUNICATION if oral, the type of

19   COMMUNICATION (*i.e.* letter, facsimile, face-to-face conversation, telephone, etc.),

20   the substance of the COMMUNICATION and the DOCUMENT(S), if any, that

21   constitute, record, show or refer to the COMMUNICATION.

22       5.    Whenever in these Interrogatories there is a request to state the

23   "IDENTITY" of a PERSON, the answering party shall set forth the person's name,

24   present or last known business address, residence address and telephone numbers,

25   dates of employment, job capacity, title, status, position, rank or classification or, with

26   respect to a non-natural person, the name and address of the principal office or place

27   of business, all names under which it is doing business or ever has done business, the

28   nature of the venture (*i.e.* sole proprietorship, partnership , corporation, etc.), and the

8

EXHIBIT    4
PAGE    8 2

1 | identities of its officers, directors, partners or administrators.

2 |      6.    Whenever in these Interrogatories there is a request to state the

3 | "IDENTITY" of a DOCUMENT, the answering party shall identify, by name, all

4 | authors and recipients of the DOCUMENT, the date of the DOCUMENT, the person

5 | or entity who currently has possession, custody and control of the DOCUMENT, and

6 | describe the DOCUMENT in a manner sufficient for MGA to draft a discovery

7 | demand requesting production of the DOCUMENT.

8 |      7.    Whenever in these Interrogatories there is a request to "IDENTIFY"

9 | PROPERTY, the answering party shall describe the PROPERTY as specifically as

10 | possible, state the name and current employer, if known, of the author(s), inventor(s),

11 | owner(s) and any assignee(s) and licensee(s) of the PROPERTY, state any copyright

12 | registration, recordation information relative to a copyright interest, trademark

13 | registration and patent numbers of the PROPERTY, if any, and state the dates of

14 | conception, authorship, invention and reduction to practice of the PROPERTY.

15 |

16 | **INTERROGATORIES**

17 | **INTERROGATORY NO. 1.:**

18 |     State all facts, with particularity, and IDENTIFY all DOCUMENTS that

19 | support YOUR contention, if YOU so contend, that YOU have suffered harm as a

20 | result of any act or omission of MGA.

EXHIBIT  4

PAGE  83

1  **INTERROGATORY NO. 11.:**

2    State, with particularity, when and how MATTEL first learned that BRYANT

3  conceived of the BRATZ CONCEPT.

4

5  Dated: February 4, 2005

6

7

8

9

10

DIANA M. TORRES
PAULA E. AMBROSINI
ALICIA C. MEYER
O'MELVENY & MEYERS LLP

Paula E. Ambrosini,
Attorneys for MGA Entertainment, Inc.

11  LA2:746290.2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

EXHIBIT 4
PAGE 84