# EXHIBIT 8

**COPY**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:   (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                       EASTERN DIVISION

12   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                          Consolidated with
13                   Plaintiff,           Case No. CV 04-09059
                                          Case No. CV 05-02727
14          vs.
                                          **DISCOVERY MATTER**
15   MATTEL, INC., a Delaware
     corporation,                         [To Be Heard By Discovery Master
16                                        Hon. Edward Infante (Ret.) Pursuant
                     Defendant.           To The Court's Order of December 6,
17                                        2006]

18   ─────────────────────────────        REPLY IN SUPPORT OF MATTEL,
                                          INC.'S MOTION TO COMPEL
19   AND CONSOLIDATED ACTIONS             RESPONSES TO
     ─────────────────────────────        INTERROGATORIES (NOS. 27-44,
20                                        46-50) BY THE MGA PARTIES

21                                        [Filed Concurrently with Supplemental
                                          Proctor Declaration, Tayback
22                                        Declaration and Consolidated Separate
                                          Statement]

23   **CONFIDENTIAL -- ATTORNEYS'         Date:   TBD
     EYES ONLY, FILED UNDER SEAL          Time:   TBD
24   PURSUANT TO PROTECTIVE               Place:  JAMS
     ORDER**                                      Two Embarcadero Center
25                                                Suite 1500
                                                  San Francisco, California
26
                                          Phase 1:
27                                        Discovery Cut-off: January 28, 2008
                                          Pre-trial Conference:  May 5, 2008
28                                        Trial Date:  May 27, 2008

03437/2338883.4                                                /-7

                                          REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT   8
PAGE   191

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ........................................................................................... 4

I.    MGA'S RESPONSES ARE INCOMPLETE AND NON-RESPONSIVE. ................................................................................ 4

II.   MGA'S SPECIFIC OBJECTIONS ARE WITHOUT MERIT ....................... 8

    A.   Mattel's Interrogatories Seeking the Identity of Bratz Inventions Are Proper ........................................................................ 8

        1.   MGA's Argument That Mattel's Defined Terms Include Disparate Concepts Under Intellectual Property Law is a Red Herring .................................................................... 9

        2.   MGA's Contention That Mattel's Interrogatories Seek to Mislead the Jury is Without Merit ................................ 12

        3.   MGA's "50 Interrogatory Limit" Objection is Meritless, and MGA Has Waived It In Any Event. ................................ 13

    B.   Mattel's Contention Interrogatories (Nos. 27 - 38, 42 and 50) Are Proper. ........................................................................ 15

        1.   MGA's Assertion That "All Facts" Interrogatories Are Inherently Improper Is Disingenuous. ........................... 16

        2.   Mattel's Interrogatories Are Contention Interrogatories, Not "Denial" Interrogatories ........................................ 17

        3.   Particularly Where They Address Discrete Subjects As Mattel's Interrogatories Do, "All Facts" Interrogatories Are Proper. ........................................................................ 19

        4.   Answering Mattel's "All Facts" Interrogatories Would Not Be "Unduly" Burdensome ........................................ 22

        5.   MGA Has Not Provided Even The "Material" Facts. ............... 25

    C.   MGA's Responses to Mattel's Interrogatories Regarding MGA's Claims Are Plainly Inadequate. ........................................... 26

        1.   MGA's Failure To Identify The Dates On Which Its Allegedly Infringed Products Originated Is Improper ............... 26

        2.   MGA's Responses To Mattel's Interrogatories Regarding MGA's Trade Dress Infringement Claims (Nos. 48-50) Are Also Inadequate ........................................................ 27

-i-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT   8

PAGE   192



3.  A Reservation Of Rights To Supplement An Interrogatory Response Is Not A License To Hold Back Information Already In MGA's Possession .................................................... 28

D.  MGA's Refusal to Identify Its Computer Storage Equipment Is An Improper Attempt to Insulate Its Witnesses from Cross-Examination And Conceal Evidence ...................................... 29

E.  MGA's Objections To Mattel's Interrogatory About The Identity of MGA's Bank Accounts Are Improper. .............................. 31

F.  Interrogatory No. 46 Does Not Invade the Attorney-Client Relationship.................................................................. 33

III.  MATTEL HAD NO OBLIGATION TO WAIT FOR MGA'S DELAY TACTICS TO RUN THEIR COURSE ........................................ 35

CONCLUSION ............................................................................. 37

03437/2338883.4

-ii-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 8
PAGE 193

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agyeman v. Bohl,*
2007 WL. 4181721 (E.D. Cal. 2007) ............................................................... 19

*Audiotext Communications Network,*
1995 WL. 625953 ............................................................................................ 21

*Audiotext Communications Network v. US Telecom, Inc.,*
Civ. A. No. 94-2395-GTV, 1995 WL. 625953 (D. Kansas Oct. 5, 1995) .......... 28

*Auto Meter Prods., Inc. v. Maxima Technologies & Sys., LLC,*
2006 WL. 3253636 (N.D. Ill. 2006) ..................................................... 15, 16, 20

*Beach v. City of Olathe,*
203 F.R.D. 489 (D. Kan. 2001) ...................................................................... 23

*Benas v. Bacas,*
2003 WL. 21697750 (C.D. Cal. 2003) ........................................................... 19

*Blaine v. Adams,*
2007 WL. 2688814 (E.D. Cal. 2007) ............................................................. 19

*Chapman v. California Dept. of Education,*
2002 WL. 32854376 (N.D. Cal. 2002) ........................................................... 18

*Dang v. Cross,*
2002 WL. 432197 (C.D. Cal. 2002) .......................................................... 19, 21

*Doe v. Karadzic,*
1997 WL. 45515 (S.D.N.Y. 1997) ................................................................. 29

*Garcia v. City of El Centro,*
214 F.R.D. 587 (S.D. Cal. 2003) .................................................................. 33

*Gardias v. San Jose State University,*
2007 WL. 3101255 (N.D. Cal. 2007) ............................................................. 19

*In re H&R Block Mortgage Corp., Prescreening Litig.,*
2007 WL. 325351 (N.D. Ind. 2007) ......................................................... 19, 23

*Hoffman v. United Telecomms., Inc.,*
117 F.R.D. 436 (D. Kan. 1987) .................................................................... 23

*In re Katrina Canal Breaches Consolidated Litig.,*
2007 WL. 1959193 (E.D. La. 2007) ......................................................... 22, 23

*King v. Georgia Power Co.,*
50 F.R.D. 134 (N.D. Ga. 1970) .............................................................. 22, 23

*Krawczyc v. City of Dallas,*
2004 WL. 614842 (N.D. Tex. 2004) .............................................................. 14

EXHIBIT 8
PAGE 194

*Lawrence v. First Kansas Bank & Trust Co.,*
  169 F.R.D. 657 (D. Kan. 1996) ...................................................15, 17, 18, 21, 23

*Leibforth v. Belvidere Nat. Bank,*
  2001 WL. 649596 (N.D. Ill. 2001) ................................................................23

*Mead Corp. v. Riverwood Natural Resources Corp.,*
  145 F.R.D. 512 (D. Minn. 1992) ...................................................................20

*Miller v. National School of Health Technology,*
  73 F.R.D. 628 (D. Pa. 1977) .........................................................................7

*Oakes v. Halvorsen Marine Ltd.,*
  179 F.R.D. 281 (C.D. Cal. 1998) .............................................................27, 35

*Pension Benefit Guaranty Corp. v. Ziffer,*
  No. 91 C7762, 1994 WL. 11654 (N.D. Ill. 1994) .........................................19

*Pulliam v. Continental Cas. Co.,*
  2003 WL. 1085939 (D.D.C. 2003) ................................................................20

*Safeco of America v. Rawstron,*
  181 F.R.D. 441 (C.D. Cal. 1998) .........................................................15, 17, 18

*Schaap v. Executive Industries, Inc.,*
  130 F.R.D. 384-387-88 (N.D. Ill. 1990)........................................................18

*Seff v. General Outdoor Advertising Co.,*
  11 F.R.D. 597 (N.D. Ohio 1951) ..................................................................23

*Sloan v. Oakland Police Dept.,*
  2006 WL. 753013 (N.D. Cal. 2006) ..............................................................7

*Tennison v. San Francisco,*
  226 F.R.D. 615 (N.D. Cal. 2005) .........................................................15, 19, 20, 21

*Trane Co. v. Klutznick,*
  87 F.R.D. 473 (D. Wis. 1980) .......................................................................7

*Upjohn Co. v. United States,*
  449 U.S. 383 (1981) .................................................................................33, 34

*Weil v. Investment/Indicators, Research and Managment, Inc.,*
  647 F.2d 18 (9th Cir. 1981)...........................................................................34

*Williams v. The Art Inst. of Atl.,*
  2006 WL. 3694649 (N.D. Ga. 2006)..............................................................22

*Wright v. Touhy,*
  2003 WL. 22439864 (N.D. Ill. 2003) ......................................................12, 18

*Zanowic v. Reno,*
  2000 WL. 1376251 (S.D.N.Y. 2000) ............................................................29

-iv-

03437/2338883.4

EXHIBIT 8
PAGE 195



1

**Statutes**

2   Fed R. Civ. P. 26(b)(2) ....................................................................22, 23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

03437/2338883.4

-v-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 8
PAGE 196

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA's opposition presents an artful explanation for why MGA should be permitted to continue to hide the ball, as it has effectively done to date, and eventually sandbag Mattel at trial. Putting the creativity of its counsel aside, MGA's arguments simply do not hold water. Without question, MGA plans and intends -- based on what it knows today -- to introduce far more, varied and different facts and theories at the trial that is set to commence in less than five months than it has disclosed to date. This is not a case where MGA genuinely has disclosed even the "material" facts on which it plans to rely but may have omitted a detail or two. To the contrary, all MGA has done is disclose a few of its *theories* -- and virtually no *facts* -- in perfunctory fashion. Without question, MGA is relying on its "principal facts" limitation to disclose whatever it chooses with no risk of preclusion or any other sanction with teeth, in order to sandbag Mattel. MGA's disregard of the definitions is designed to do the same.

A recent MGA filing exemplifies this. In its Joint Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements, dated December 19, 2007, MGA argued -- for the first time -- that Bryant was not required to disclose to Mattel, and did not assign, any copyrightable materials he developed on his own because the term "copyright subject matter" was omitted from Bryant's agreements, but included in prior and subsequent agreements used by Mattel which MGA identified with specificity.[1] MGA also argued for the first time in this motion that Bryant was not required to disclose his Bratz drawings allegedly from 1998 when he signed his Conflict of Interest Questionnaire with Mattel because other versions of Mattel's agreements, which MGA identified with specificity, have more specific provisions requiring such disclosure than Bryant's agreement did. Neither of

---

[1] See MGA's and Carter Bryant's Joint Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements, dated December 19, 2007, at 3, Supp. Proctor Dec., Exh. 1.

03437/2338883.4

-1-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT ___6___
PAGE ___197___

1  these important contentions appears anywhere in the supplemental responses that MGA
2  served on November 30, 2007, or in any of Bryant's supplemental responses. Indeed,
3  Mattel knows of this MGA contention now for only one reason: MGA chose to
4  disclose it in an offensive motion it wanted to file. That is unfair. Mattel is entitled to
5  learn the facts on which MGA plans to rely whether it wishes to disclose them or not.
6  MGA should be ordered to disclose those facts.

7        That MGA offered to provide what it claimed would be "substantial
8  supplement" to its interrogatory responses -- which it now says it is "reevaluating" --
9  makes clear that even MGA knows it is withholding facts it could easily disclose
10  simply by putting pen to paper.  That MGA nowhere states that all responsive
11  information has been provided as for even a single interrogatory -- not in its
12  supplemental responses, not in its opposition -- also shows it is withholding facts.
13  Mattel is entitled to have discovery responses that it can rely upon to prepare for trial
14  and at trial.  To have that, this Court must overrule MGA's objections and require it
15  respond to the interrogatories in a meaningful way.

16        MGA cites some courts that have indeed sustained its proffered "principal
17  facts" limitation. Mattel has cited many others that have compelled complete responses
18  to "all facts" contention interrogatories. However the Court rules on this issue, it must
19  compel complete responses, which have not yet been provided under any notion of the
20  word "complete." MGA apparently contends that its responses are proper because they
21  merely "apprise Mattel of its *contentions*." Opp. at 30.  Mattel already knows the
22  contentions; the interrogatories seek the facts supporting them. Mattel does not contest
23  that Mattel's interrogatories all seek information that is central to the claims in this
24  case. This is an extraordinarily high-stakes litigation involving years of conduct and
25  millions upon millions of dollars. When MGA's lawyers stand up to address the jury,
26  they will not stand mute. What they say will contain far more information than what
27  they have disclosed to date. Whatever burdens are involved in providing complete

28

03437/2338883.4

-2-

EXHIBIT   8
PAGE   198

1   responses are heavily outweighed by the benefits of the discovery, particularly in light
2   of the amount in controversy.

3   　　　That is especially true because Mattel has permitted discovery of its own
4   contentions already, without burdening the Court with motion practice. Indeed, though
5   MGA is wont to attack Mattel for its purportedly abusive discovery practices, even
6   MGA acknowledges that Mattel has provided robust interrogatory responses. See Opp.
7   at 3-4 n.1 (stating that Mattel's supplemental responses to MGA and Bryant, which
8   were 117 and over 500 pages respectively, "provided MGA with a better understanding
9   of Mattel's contentions in this action and enabled MGA to respond more directly to
10  those contentions"). Anything less than an order granting this motion in full would
11  reward MGA for refusing to do what Mattel voluntarily did at MGA's request in
12  response to MGA's own "all facts" contention interrogatories -- provide detailed,
13  factually-intensive interrogatory responses, notwithstanding the burdens in involved in
14  doing so.

15  　　　Finally, MGA's assertion that Mattel filed prematurely should be rejected.
16  As the Court has seen, MGA's consistent practice in this case has been to make and
17  then break promises to delay providing discovery for as long as possible. At this late
18  stage of the litigation, in the face of a January 28, 2008 Phase 1 discovery cutoff date,
19  Mattel has no obligation to see every one of MGA' stall strategies through to its
20  conclusion. As the record shows, at the meet and confers MGA (1) refused to specify
21  which responses would be supplemented, (2) expressly indicated that its promised
22  second supplemental responses would be limited by the objections briefed in this
23  motion, (3) refused to identify documents with specificity, and (4) refused to respond to
24  the interrogatories as Mattel had phrased them. Faced with an offer that was inadequate
25  on its face, Mattel rightfully sought, and seeks, relief from the Court. The Court should
26  order the provision of complete responses.

27

28

-3-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT ___8___
PAGE __199__

1

## Argument

2 **I.    MGA'S RESPONSES ARE INCOMPLETE AND NON-RESPONSIVE.**

3          MGA suggests that there are "only four areas of dispute" between the

4 parties. Opp. at 1. This ignores, however, one crucial fact that MGA cannot genuinely

5 dispute: *all* of its responses are incomplete, and withhold relevant information.

6          MGA's original response to every interrogatory at issue was a non-

7 response—it served only objections.[2] After Mattel requested a meet and confer but

8 before the meet and confer took place, MGA supplemented most of its non-responses.[3]

9 However, those responses were perfunctory, and MGA's attorneys made clear during

10 the parties' meet and confers that all responsive information had not been provided as to

11 nearly all of the interrogatories.[4]

12          Because they are so perfunctory, the Supplemental Responses are

13 inadequate on their face.  Interrogatory No. 27 is exemplary.  This interrogatory

14 provides as follows:

15          ·         IDENTIFY each and every BRATZ INVENTION YOU
                      contend was CREATED, in whole or in part, prior to
16                    January 4, 1999, and for each BRATZ INVENTION so
17                    identified state all facts that support YOUR contention that
                      such BRATZ INVENTION (or aspects or portions thereof)
18                    was CREATED prior to January 4, 1999, and IDENTIFY all

19

20

―――――――――――――――――――

21    [2]  Proctor Dec., Exhs. 13-15, 19-20.
      [3]  Proctor Dec., Exhs. 21, 25 and 29.
22    [4]  Letter from B. Dylan Proctor to Timothy Miller, dated December 13, 2007,
23 Proctor Dec., Exh. 5. MGA chastises Mattel for not "waiting" for it to respond to
   this purportedly "inaccurate" letter. Mattel sent this letter on December 13, 2007
24 and filed its motion on December 21, 2007, without having received any substantive
25 response. The letter is wholly accurate. If MGA truly thought Mattel had misstated
   something in any significant way, it undoubtedly would have responded in the days
26 before Mattel filed, but acknowledges it did not. The parties consistent practice in
27 this case belies it assertion that 8 days was not enough time for it to purportedly
   "correct" the record. Notably, to this day, Mattel has never received a substantive
28 response to its letter.

-4-

EXHIBIT   8
PAGE   200

PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.[5]

This interrogatory is not complex or confusing. In plain English, the interrogatory asks MGA to identify the Bratz inventions, which includes "drawings," it claims were created prior to January 4, 1999 -- the first day of Bryant's second term of employment with Mattel -- and to state the facts that support its contentions and identify the relevant witnesses and documents.

MGA's original response was two pages of objections followed by the statement that "MGA is willing to meet and confer with Mattel regarding this interrogatory and the *obligation of Mattel to supplement* its responses to MGA's First Set of Interrogatories" -- responses which Mattel long ago provided, without burdening the Court with motion practice, even though it took many, many weeks of work to do so.

MGA's supplemental response to Interrogatory No. 27 restates all of its meritless objections in their entirety. MGA then goes on to say, in substance, that it is not making "any affirmative contentions" (whatever that means) as to whether there were any "inventions," but if there were, they were before January, 1999 or after October 20, 2000, and do not "fall within the scope of the term "inventions" as used in [Bryant's] contract with Mattel" (but MGA does not say why not). MGA then identifies Bryant, Bryant's mother, father, and four other people as having "knowledge" (though the response does not rule out the possibility of other people having relevant knowledge), and vaguely identifies types of documents that "may be relevant" (though MGA expressly does not limit the universe of responsive documents to those identified, does not identify *any* document with *any* specificity and does not even state that all relevant documents have been produced and are buried somewhere in its production).

---

[5]   Mattel, Inc.'s Revised Third Set of Interrogatories, at 9, Proctor Dec., Exh. 7.

03437/2338883.4

-5-


EXHIBIT   8
PAGE   201

1     As a result of all of the objections, doubletalk, qualification and generality,
2  Mattel has a response that is so completely hedged as to be useless. One of the most
3  basic and potentially dispositive issues in this case is when Bryant created his Bratz
4  drawings. It should not be too challenging for MGA to identify the Bratz drawings,
5  etc., it claims Bryant created before he worked at Mattel. Yet MGA's supplemental
6  response provides no identification of *any*, let alone all, relevant Bratz inventions,
7  essentially no supporting facts (let alone all facts) supporting its contentions as to when
8  Bryant created his (non-identified) inventions (nor any facts supporting its contentions
9  that Bryant's drawings do not constitute "inventions" within the meaning of Bryant's
10 Inventions Agreement with Mattel, some of which it disclosed in its recently-filed
11 Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to
12 Mattel's Employee Agreements), and no assurance that all knowledgeable persons and
13 relevant documents have been identified. It is a complete waste. MGA's desire not to
14 use Mattel's defined terms because it does not want to provide Mattel with "sound
15 bites" to use at trial, Opp. at 13;1-21, does not justify the useless responses it has
16 provided.

17     MGA's responses to Mattel's Interrogatory Nos. 43 and 44, which seek the
18 dates upon which the MGA products MGA is suing upon were conceived and fixed in
19 tangible form, are also exemplary. These responses do little more than point Mattel to
20 MGA's response to a different interrogatory propounded by Mattel that seeks the dates
21 of different events. The only information MGA does supply -- *e.g.,* "in general, at
22 MGA, product development is completed 7-8 months before the first invoice date" -- is
23 again useless because it does not provide any information about any specific products at
24 issue. Mattel has requested specific, relevant information it does not already have with
25 Interrogatory Nos. 43 and 44. MGA has not provided such information by design,
26 knowingly, to conceal it for as long as possible. MGA's offer to provide a real answer
27 if it can do so "without undue burden to MGA," and not by any date certain, Opp. at
28 29:11-14, is inadequate.

03437/2338883.4                                          -6-
                                                              REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT ___8___
PAGE ___202___

1    Even what MGA described as its "best" answer during the parties' meet
2  and confer – its response to Interrogatory No. 41 – is incomplete on its face.[6] In fact,
3  MGA now acknowledges, in its opposition, that its response is only partial.
4  Interrogatory No. 41 seeks the dates upon which *pre-employment* contacts and
5  interviews were made with Mattel employees who later worked for MGA -- dates
6  which may significantly predate their actual dates of employment with MGA, and dates
7  which could provide powerful evidence supporting Mattel's claims that MGA has,
8  while poaching Mattel's employees, also induced them to abscond with Mattel's trade
9  secrets.[7]  MGA's assertion that it "is looking for the requested information, and if it is
10 reasonably available without undue burden to MGA, it will supplement its response,"
11 Opp. at 31:23-24, is not a response that Mattel or the Court can rely upon.

12    Mattel is entitled to answers -- firm, specific, complete answers, verified
13 under penalty of perjury, without qualification, doubletalk, or hedging, and by a date
14 certain.   See, e.g., Trane Co. v. Klutznick, 87 F.R.D. 473, 476 (D. Wis. 1980)
15 (responding party must give "full and complete" answers to interrogatories); Miller v.
16 National School of Health Technology, 73 F.R.D. 628, 632 (D. Pa. 1977) ("Answers
17 must be complete, explicit and responsive."); Sloan v. Oakland Police Dept., 2006 WL
18 753013, at *3 (N.D. Cal. 2006) (where party provides evasive or incomplete responses
19 to interrogatories, propounding party may seek order to compel).  As of now, MGA has
20 not confirmed that its response to a single interrogatory at issue in this motion is not
21 limited by its objections.  Even a glance at the supplemental responses shows it is
22 continuing to withhold key information.

23
24
25
26
27  [6]  Supp. Proctor Dec., at ¶ 4.
28  [7]  See Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and
     Counter-Claims, Proctor Dec., Exh. 41.

03437/2338883.4
-7-



EXHIBIT  8
PAGE  203

## II.   MGA'S SPECIFIC OBJECTIONS ARE WITHOUT MERIT

### A.   Mattel's Interrogatories Seeking the Identity of Bratz Inventions Are Proper

Interrogatory Nos. 27-29 present a simple and straightforward, though critically important inquiry. They ask MGA to identify each of the Bratz-related items (whether tangible or intangible) which MGA contends Carter Bryant created shortly before (No. 27) or shortly after (No. 28) he worked at Mattel, and which items MGA admits Bryant created during his employment with Mattel (No. 29).[8] Whether Bryant invented Bratz while employed by Mattel, and thereby assigned the rights to Bratz to Mattel pursuant to the terms of his Inventions Agreement, is at the heart of this litigation. Thus, in order for Mattel to prepare for trial, it must know MGA's positions regarding precisely which Bratz works were created or conceived during these periods of time, as well as the facts supporting those positions.  Interrogatory Nos. 27-29 unquestionably seek relevant, discoverable information, and MGA does not contend otherwise.

Interrogatory Nos. 30 and 42 are similarly straightforward and likewise aim to discover vital information regarding MGA's contentions.[9] These interrogatories seek the factual bases for two core MGA contentions: (1) its contention that the Bratz dolls are not based on any designs created by Bryant, whether before or during his employment with Mattel, and hence would not be infringing even if Mattel does own the works created by Bryant (No. 42), and (2) its contention that MGA is entitled to priority over Mattel as to Bratz designs even if they were assigned to Mattel, under 17

---

[8]   Mattel's Revised Third Set of Interrogatories, dated September 21, 2007, at 9-10, Proctor Dec., Exh. 7.
[9]   MGA addresses Interrogatory Nos. 30 and 42 together with Nos. 27, 28 and 29.  Accordingly, Mattel does the same here for the convenience of the Court.

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT __8__
PAGE __204__

1  U.S.C. § 205(d), which is an affirmative defense MGA has pleaded, or otherwise (No.

2  30).[10]

3         MGA does not deny that these interrogatories seek relevant information. It

4  also does not deny that its responses are far from complete. Instead, MGA says that

5  these interrogatories are allegedly improper because Mattel's defined terms (1) include

6  disparate concepts under intellectual property law, (2) are designed to mislead the jury,

7  and (3) render the interrogatories compound.  These contentions lack merit.

8              **1.    MGA's Argument That Mattel's Defined Terms Include**

9                     **Disparate Concepts Under Intellectual Property Law is a**

10                    **Red Herring**

11        MGA argues that Mattel's defined terms, such as "BRATZ INVENTION"

12  and "DESIGN," are "improper" because they purportedly "include disparate concepts

13  under intellectual property law."[11]  This is merely a distraction designed to justify

14  MGA's inadequate responses.

15        Contrary to MGA's assertions, Mattel's interrogatories do ***not*** ask MGA

16  "to address discrete issues of patent, trade secret, copyright and California common

17  law."  Opp. at 18.  In fact, these interrogatories do not ask MGA to address legal

18  theories at all.  As indicated above, they all seek ***factual*** information from MGA -- the

19  identity of Bratz-related designs and inventions that Bryant created during key time

20  periods, and the factual bases for MGA's contentions about these creation dates.

21  MGA's subjective belief that the requested facts have some significance under patent

22  law or other areas of intellectual property law is not a legitimate basis for refusing to

23  answer Mattel's interrogatories.  More pointedly, MGA's apparent belief that Mattel's

24  terms can have significance <u>only</u> under patent law -- and hence that it need only

25

26        [10] MGA's Amended Answer and Affirmative Defenses to Mattel's Second

27  Amended Answer and Counterclaims, dated September 19, 2007, Supp. Proctor
   Dec., Exh. 2.

28        [11] Opp. at 13.


EXHIBIT 8
PAGE 205

1   respond insofar as the facts have some significance under patent law -- is misguided.

2   This is not a patent case, and Mattel has not asked patent law interrogatories.

3          Rather, Mattel has defined its terms in an effort to avoid precisely the type

4   of evasive gamesmanship in which MGA nevertheless is engaging.  Mattel has to

5   provide specific, comprehensive definitions to its terms because MGA otherwise adopts

6   its own arbitrary definitions, so that it can "truthfully" respond that it possesses no

7   information responsive to Mattel's discovery requests -- only to later sandbag Mattel at

8   trial.  In the past, MGA has repeatedly done exactly this.

9          For example, in response to Mattel's requests for admission regarding

10  whether MGA believed it was lawful to market "BRATZ" at the time it entered into its

11  September 2000 agreement with Bryant, MGA repeatedly objected that "the term

12  'BRATZ' is vague and ambiguous and, as defined by Mattel, renders the RFA

13  nonsensical as no BRATZ then existed,"[12] based on MGA's contention that "Bratz" just

14  refers to the "Bratz dolls," which had not yet been created.  However, Mattel had

15  defined the term "Bratz" far more broadly, and indeed stated expressly in its definition

16  that "the term 'BRATZ' does not and shall not require that there be a doll existing at the

17  time of the event . . . that is the subject of, or otherwise relevant or responsive to the

18  Requests" specifically to prevent MGA from this type of evasion.[13]  The evasions

19  nevertheless ensued.

20         Paula Garcia employed similar tactics during her deposition when she

21  claimed she did not understand what the term "Bratz" referred to.  Mattel's counsel

22  repeatedly advised Ms. Garcia that Bratz referred to "any product that has ever been

23  called Bratz or people ever thought about calling Bratz" and conducted the deposition

24

25   ————————————————
     [12]  See MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s
26  Fifth Set of Requests for Admission, dated August 22, 2007, at 3-6, Supp. Proctor
27  Dec., Exh. 3.
     [13]  Mattel, Inc.'s Fifth Set of Requests for Admission to MGA Entertainment,
28  Inc., dated June 8, 2007, at 2, Supp. Proctor Dec., Exh. 4.


EXHIBIT 2
PAGE 206

1   based on that definition.[14]  Inexplicably, however, after a day and a half of answering

2   questions about Bratz, Ms. Garcia informed counsel for Mattel for the first time that

3   "when she referred to Bratz, [she] always qualified that as materials or representations

4   of what is or has been manufactured as the toy product."[15]

5           To avoid the reoccurrence of such evasions, the terms in Mattel's

6   interrogatories at issue here have definitions that are both comprehensive and clear. For

7   example, the definitions of the terms "BRATZ INVENTION" and "DESIGN" provided

8   by Mattel are straightforward:

9       "BRATZ INVENTION" means any representation, idea, concept, work,
        process, procedure, plan, improvement, design or other development,
10      whether fixed in tangible form or not, that REFERS OR RELATES TO
        BRATZ, including but not limited to any DESIGN that REFERS OR
11      RELATES TO BRATZ.[16]

12      "DESIGN" or "DESIGNS" means any and all representations, whether
        two-dimensional or three-dimensional, and whether in tangible, digital,
13      electronic or other form, including but not limited to all works, designs,
        artwork, sketches, drawings, illustrations, representations, depictions,
14      blueprints, schematics, diagrams, images, sculptures, prototypes, models,
        samples, rotocasts, reductions to practice, developments, inventions and/or
15      improvements, as well as all other items, things and DOCUMENTS in
        which any of the foregoing are or have been expressed, embodied,
16      contained, fixed or reflected in any manner, whether in whole or in part.[17]

17   These definitions are broad by design in order to prevent MGA from withholding

18   information about when Bryant actually did relevant work on Bratz by using a narrow

19   definition of "drawing," for example, as MGA has done in the past.

20           Nevertheless, MGA has still unilaterally imposed its own narrow,

21   unreasonable definitions of Mattel's defined terms in order to avoid providing

22   responsive information.  In response to Interrogatory Nos. 27 and 28, for example,

23   MGA completely disregards Mattel's definition of "BRATZ INVENTION" and

24   responds:

25   _____
     [14]  See, e.g., Deposition of Paula Garcia, dated May 24, 2007, at 137:8-138:4,
26   Supp. Proctor Dec., Exh. 5.
     [15]  Id. at 627:5 - 636:22.
27   [16]  Mattel, Inc.'s Revised Third Set of Interrogatories, at 4, Proctor Dec., Exh. 7.

28

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT   8
PAGE   207

With respect to "inventions" as that term is used in utility patent law, MGA does not make any affirmative contentions as to whether there were any such inventions, except that MGA contends that the conception and/or reduction to practice of any such invention occurred before January 1999 and/or after October 20, 2000. With respect to design patents, in August or September of 1998, Carter Bryant, inspired by images he was exposed to, including in the August 1998 issue of Seventeen Magazine, the appearance of teenagers, as well as other images in the public domain, conceived of an idea for a line of dolls he named Bratz. At the same time, Bryant sketched a series of drawings to illustrate his idea. To the extent said idea contained elements covered by design patent law, no such invention was "reduced to practice" until after October 20, 2000.[18]

This is simply bizarre. Whether there were any inventions "for purposes of utility patent law or design patent law" has no import here -- this is not a patent case. MGA's responses hide information to which Mattel is entitled, and contravene the <u>Federal Rules</u>. <u>See, e.g.</u>, <u>Wright v. Touhy</u>, 2003 WL 22439864, at *4 (N.D. Ill. 2003) (the <u>Federal Rules</u> "are designed to promote liberal discovery in an effort to narrow the issues for trial and to prevent unfair surprise").

### 2. MGA's Contention That Mattel's Interrogatories Seek to Mislead the Jury is Without Merit

MGA also claims that Mattel's interrogatories are purportedly improper because they seek a "misleading 'sound bite.'" Thus, MGA argues that "Mattel's gambit would allow it to parade before the jury its 'Inventions Agreement' and then argue to the jury that in response to an interrogatory, MGA admitted that Carter Bryant had indeed made an 'invention' while working at Mattel in 1999/2000." Opp. at 15. This complaint is both erroneous and irrelevant.

Mattel is entitled to define its own terms. MGA cannot simply change the meaning of Mattel's defined terms as it sees fit to change the import of the interrogatories; yet that is exactly what it has done. If MGA thinks a Mattel definition does not comport with everyday understandings of the words in the defined term, it can object at trial or explain about what it meant to the jury. But it cannot simply refuse to

---

[17] <u>Id</u> at 3.

03437/2338883.4

-12-

EXHIBIT 8
PAGE 208

1  answer the interrogatories. Mattel is entitled to answers to the questions it asks; the
2  "revised-definition" non-responsive answers that MGA has given are improper.
3  Notably, MGA has not cited a single authority suggesting that an interrogatory is
4  improper because a truthful response could provide a "sound bite" to the propounding
5  party. The Court should reject MGA's argument that it does not have to provide the
6  requested information because Mattel may use MGA's responses to successfully argue
7  its case to the jury.

8         Moreover, the fact is that these are interrogatories, not requests for
9  admission. Mattel is not asking MGA to "admit" anything. Rather, Mattel merely
10 seeks responsive, factual information. Precisely for this reason, in an attempt to
11 compromise and avoid unnecessary motion practice, Mattel repeatedly advised MGA
12 during the meet and confer process that it would accept either (1) a response that
13 responds using Mattel's defined terms, or (2) a response that provides the requested
14 information without using those terms, to avoid this "sound bite" effect of which MGA
15 now complains.[19] Nevertheless, MGA has made quite clear it is not willing to answer
16 Mattel's interrogatories in either fashion. Opp. at 13:4-8. This is not about avoiding a
17 sound bite, it is about hiding the ball.

18      **3.   MGA's "50 Interrogatory Limit" Objection is Meritless, and**
19           **MGA Has Waived It In Any Event.**

20         MGA claims in its responses that Mattel has purportedly exceeded the fifty
21 interrogatory limit set by the Court. This objection is directly contravened by the
22 Discovery Master's September 5, 2007 Order. In that Order, the Discovery Master held
23 that Interrogatory Nos. 12, 13 and 14 of Mattel's Third Set of Interrogatories -- which
24
25
26
27 [18]  MGA's Supplemental Responses to Mattel, Inc.'s Revised Third Set of
   Interrogatories, dated November 30, 2007, Proctor Dec., Exh. 21.
28 [19]  Supp. Proctor Dec., at ¶ 3; Opp. at 15:1.

03437/2338883.4
                                      -13-
                              REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT  8
PAGE  209

1  are literally identical to, and included the same definitions as, Interrogatory Nos. 27-29

2  -- each constitute a single interrogatory.[20]

3         The Court's prior ruling was undoubtedly correct.  MGA complains that

4  Mattel's defined terms render the interrogatories compound because they relate to

5  disparate areas of law.  Opp. at 14:24-25.  But, as discussed above, that is just an MGA

6  construct.  Mattel's interrogatories do not relate to <u>any</u> area of intellectual property law.

7  Rather, they seek identification of Bratz inventions -- of any type -- created by Bryant

8  at key points in time.  That Mattel's definitions must be comprehensive – to avoid

9  further MGA evasions – does not render them compound.  Where Mattel has sought

10  multiple pieces of information in a single interrogatory, all the pieces are closely

11  related, and therefore are of a type that courts, including this one, have repeatedly found

12  to be proper subcategories of single questions.  <u>See, e.g.,</u> Order Granting Joint Motion

13  for Protective Order, dated September 5, 2007, at 5-7, Proctor Dec., Exh. 33 (holding

14  that Mattel's interrogatories asking the responding party to state all facts, identify all

15  persons with knowledge, and to identify all documents do not consist of discrete

16  subparts, as "the subparts are related and directed to the underlying details of a

17  specifically identified contention (or contentions)"); <u>Krawczyc v. City of Dallas,</u> 2004

18  WL 614842, at *3 (N.D. Tex. 2004) (holding that an interrogatory asking a party to

19  state facts supporting a contention and to identify persons with knowledge of those

20  facts counts as a single interrogatory because "[w]itnesses and their statements are

21  facts," and hence the subpart is "factually subsumed within and necessarily related to

22  the primary question").

23         Moreover, MGA has waived this purported objection.  In a letter dated

24  December 3, 2007, counsel for MGA represented that "the MGA entities and Isaac

25  Larian [did] *not* stand on their objection that Mattel's Fifth Set of Interrogatories

26  exceed the 50-interrogatory limit as a basis for refusing to respond to the

27

28    [20]  <u>See</u> Order Granting Joint Motion for Protective Order, dated September 5, (footnote continued)

03437/2338883.4

-14-


EXHIBIT 8
PAGE 210

1   interrogatories in [Mattel's] Fifth Set."[21]  During the meet and confer process,

2   counsel for MGA then re-confirmed that MGA was *not* refusing to respond to *any* of

3   Mattel's interrogatories based on this objection.[22]  Additionally, as MGA has

4   provided some answer (albeit incomplete) for almost every interrogatory, it is clear

5   that MGA has waived any objection on this basis.  MGA has provided no authority

6   for its odd suggestion that it can use this objection to answer the portions of Mattel's

7   interrogatories it does not mind answering, but not others.  MGA wants to get credit

8   for responding, while excluding responsive information from its answers in order to

9   sandbag Mattel at trial.  It should not be permitted to do so.

10       **B.      Mattel's Contention Interrogatories (Nos. 27 - 38, 42 and 50) Are**

11               **Proper.**

12               Interrogatories seeking the factual basis for a party's contentions have been

13   held proper time and time again.  See, e.g., Auto Meter Prods., Inc. v. Maxima

14   Technologies & Sys., LLC, 2006 WL 3253636, at *2-5 (N.D. Ill. 2006) (compelling

15   defendant to answer interrogatories requesting "all supporting facts, documents,

16   exhibits, testimony and/or expert opinions" in support of contentions); Tennison v. San

17   Francisco, 226 F.R.D. 615, 618 (N.D. Cal. 2005) (requiring plaintiff to answer

18   interrogatory that requested "all facts" supporting denial of allegation).  Indeed, the fact

19   is that Judge Larson has already compelled defendants to respond to interrogatories

20   seeking the facts supporting their contentions in the face of their Lawrence and Safeco

21   arguments.[23]  This alone should be dispositive, yet MGA ignores it altogether.

22               MGA attempts to justify its inadequate responses on the basis that it is

23   only obligated to provide Mattel with the "principal" or "material" facts because

24

25   2007, at 8, Proctor Dec., Exh. 33.

    [21]   Letter from Miller to Zeller, dated December 3, 2007, at 1-2, Proctor Dec.,
26   Exh. 4.

    [22]   Letter from Proctor to Miller, dated December 13, 2007, at 1, Proctor Dec.,
27   Exh. 5.

    [23]   Court's Order, dated December 3, 2007, at 1-2, Proctor Dec., Exh. 38.
28

03437/2338883.4

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT 8

PAGE 211

1   providing all supporting facts would be unduly burdensome.  Opp. at 21:20-22:20.

2   This excuse fails as a justification for MGA's responses for several reasons. First, "all

3   facts" interrogatories have been held proper in this case and others, particularly where,

4   as here, the issues are complex and discovery is coming to a close.  *See, e.g.,* Judge

5   Larson's Order dated December 3, 2007, Proctor Dec., Exh. 38 (granting Mattel leave

6   to serve interrogatory providing: "State the facts upon which YOU intend to rely at trial

7   to support YOUR affirmative defenses, and IDENTIFY all PERSONS with knowledge

8   of those facts and all DOCUMENTS that REFER OR RELATE to those facts," to

9   which Defendants were compelled to respond "without objection"); <u>Auto Meter</u>

10  <u>Prods., Inc.</u>, 2006 WL 3253636, at *2-5 ("all facts" contention interrogatory held proper

11  in trademark infringement action; where discovery request came near close of

12  discovery).  Second, in this case, in light of the amount in controversy, any burdens

13  imposed by responding to contention interrogatories are justified.  Indeed, Mattel has

14  already done so, without burdening the Court with motion practice.  And third, even if

15  its purported "material facts" limitation were proper, MGA has not even begun to

16  provide that.

17          **1.      MGA's Assertion That "All Facts" Interrogatories Are**

18                  **Inherently Improper Is Disingenuous.**

19          MGA argues that Mattel's interrogatories seeking "all facts" are inherently

20  improper.  That is disingenuous at best, as MGA has repeatedly propounded such

21  interrogatories on Mattel.[24]  Indeed, MGA has served interrogatories that are far

22  broader and more burdensome than Mattel's. For example, MGA's Interrogatory No. 1

23  asks Mattel to state "<u>all facts</u>, with particularity, . . . that support YOUR contention, if

24  YOU so contend, that YOU have suffered harm as a result of any act or omission of

25  MGA."[25]  As MGA has acknowledged, Mattel provided detailed, robust responses to

26

27  [24]  <u>See, e.g.</u>, MGA's First Set of Interrogatories to Mattel, dated February 4,
     2005, at 9, Supp. Proctor Dec., Exh. 6.

28  [25]  <u>Id.</u> at 9.

                                        -16-



EXHIBIT  8
PAGE  212

1   this interrogatory and others, which "provided MGA with a better understanding of
2   Mattel's contentions in this action and enabled MGA to respond more directly to those
3   contentions."[26] Indeed, Mattel's response to this one interrogatory alone was over 61
4   pages long, not including objections.[27]   MGA, by contrast, has done the opposite,
5   concealing the factual basis for its contentions in an effort to gain an unfair advantage
6   at trial.  MGA's efforts to sandbag Mattel should not be permitted.

       **2.**    **Mattel's Interrogatories Are Contention Interrogatories, Not**
8                **"Denial" Interrogatories**

9          MGA's reliance upon <u>Lawrence v. First Kansas Bank & Trust Co.</u>, 169
10  F.R.D. 657 (D. Kan. 1996) and <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 447-
11  448 (C.D. Cal. 1998) is misplaced.  The interrogatories at issue in both <u>Lawrence</u> and
12  <u>Safeco</u> were clearly and unambiguously directed at denials to allegations.  In <u>Lawrence</u>,
13  for example, the interrogatories asked defendant to identify facts supporting denials in
14  its answer to 58 separate paragraphs in the complaint.  169 F.R.D. at 660.  The
15  interrogatories in <u>Safeco</u> accompanied a set of requests for admissions and requested
16  supporting facts for every response to the requests for admissions that "was not an
17  unqualified admission." 181 F.R.D. at 442. Mattel's interrogatories are fundamentally
18  different in nature than those considered in <u>Lawrence</u> and <u>Safeco</u>.

19         Contrary to MGA's assertion, Mattel's interrogatories are not "denial"
20  interrogatories; they are contention interrogatories.  Indeed, MGA itself admits this in
21  its Separate Statement. <u>Compare</u> Opp. at 19:23-28 (Interrogatory Nos. 27-29 "ask
22  MGA, as the defendant in this case, to 'prove the negative' by, in effect, requiring MGA
23  to support its denial of Mattel's contention in this case that Bryant invented Bratz while
24  employed by Mattel"); <u>with</u> MGA's Resp. to Separate Statement at 21:4-5
25  ("Interrogatories Nos. 27-29 . . . along with Interrogatories 30 and 42, are classic
26  contention interrogatories related to the origination and ownership of Bratz").  Mattel is

27  ───────────────
   [26]   Opp. at 3-4 n.1.
28

                         REPLY IN SUPPORT OF MOTION TO COMPEL


EXHIBIT 8
PAGE 213

1  not asking MGA to state all facts upon which a *denial* is based, but is instead asking
2  MGA to state all facts upon which particular *contentions* are based.

3          MGA asks the Court to extend the holdings of <u>Lawrence</u> and <u>Safeco</u> well-
4  beyond the narrow context of those cases, to establish a bright line rule precluding
5  inquiry into the factual basis for any contention that might be characterized as a denial
6  to an allegation.  The Court should not oblige.  By MGA's reasoning, a responding
7  party may conceal the basis for its contentions on any issue for which it does not bear
8  the burden of proof merely because the other party has not yet met its burden of proof
9  at trial.  Such a framework would subject plaintiffs to routine unfair surprise at trial and
10  would contravene the policies underlying the discovery rules.  <u>See</u> <u>Wright v. Touhy</u>,
11  2003 WL 22439864, at *4 (N.D. Ill. 2003) (the <u>Federal Rules</u> "are designed to promote
12  liberal discovery in an effort to narrow the issues for trial and to prevent unfair
13  surprise); <u>cf.</u> <u>Schaap v. Executive Industries, Inc.</u>, 130 F.R.D. 384-387-88 (N.D. Ill.
14  1990) (compelling responses to interrogatories seeking factual bases for contentions
15  because "for the litigation to proceed fairly and effectively, there must be mutual access
16  to all relevant facts").  If MGA does not make a relevant contention, it can simply say
17  so without a further response.  But if it does so contend, it should be ordered to provide
18  the factual basis for its contention so that Mattel is not sandbagged at trial.  Nothing in
19  <u>Lawrence</u> or <u>Safeco</u> holds or suggests otherwise.

20          Further, neither <u>Lawrence</u> nor <u>Safeco</u> holds that an interrogatory seeking
21  facts in support of a denial of an allegation is *per se* improper.  Rather, each merely
22  recognizes that such an interrogatory may be unduly burdensome under some
23  circumstances.  <u>See</u> <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376, at
24  *2 (N.D. Cal. 2002) ("While interrogatories that call for all facts, documents and
25  witnesses may, in some circumstances, place an unreasonable burden on the responding
26  party . . . an interrogatory that requests 'all facts' in support of a refusal to admit specific

27

28  <u>               </u>
    [27]   Supp. Proctor Dec., ¶ 6.

-18-

REPLY IN SUPPORT OF MOTION TO COMPEL


EXHIBIT   8
PAGE   214

1  relevant facts is not burdensome and oppressive *per se*.").  Indeed, other courts have

2  compelled responses even where the contentions at issue are effectively denials to the

3  asking party's allegations, as MGA asserts here.  See, e.g., Tennison, 226 F.R.D. at 618

4  (requiring plaintiff to answer interrogatory that requested "all facts" supporting denial

5  of allegation); Benas v. Bacas, 2003 WL 21697750, at *2 (C.D. Cal. 2003)

6  (interrogatory asking for all facts supporting plaintiff's denials of requests for

7  admissions held not burdensome or oppressive); Dang v. Cross, 2002 WL 432197, at

8  *4 (C.D. Cal. 2002) (affirming magistrate judge's holding that interrogatories

9  requesting "all facts" in support of a denial of a statement were not unduly

10  burdensome); Pension Benefit Guaranty Corp. v. Ziffer, No. 91 C7762, 1994 WL

11  11654 at * 1 (N.D. Ill. 1994) (finding interrogatories seeking "all facts" supporting

12  denials of allegations proper under circumstances of case).  As set forth more fully

13  below, Mattel's interrogatories are not unduly burdensome in this case.

14      **3.**      **Particularly Where They Address Discrete Subjects As**

15                      **Mattel's Interrogatories Do, "All Facts" Interrogatories Are**

16                      **Proper.**

17          Mattel cited nine cases in its motion that compelled responses to "all facts"

18  discovery, but could have cited many more.  There are numerous cases compelling

19  responses to "state all facts" contention interrogatories.  See, e.g., Agyeman v. Bohl,

20  2007 WL 4181721, at *2 (E.D. Cal. 2007) (granting motion to compel response to

21  interrogatory that asked plaintiff to "state all facts" in support of contention and stating

22  that plaintiff "must provide all factual allegations that he has personal knowledge of

23  that specifically respond" to the interrogatory); Gardias v. San Jose State University,

24  2007 WL 3101255, at *6 (N.D. Cal. 2007) (compelling plaintiff to state "all facts" in

25  response to interrogatory and noting that Court had previously explained that

26  "defendant is entitled to know before trial what facts there are to support his claims"

27  and that "plaintiff needed to identify all facts he believes will show that he is correct");

28  Blaine v. Adams, 2007 WL 2688814, at *3 (E.D. Cal. 2007) (holding that

03437/2338883.4

-19-



EXHIBIT ___8___

PAGE ___215___

1  interrogatories seeking "all facts" in support of contentions are proper); <u>In re H&R</u>
2  <u>Block Mortgage Corp., Prescreening Litig.</u>, 2007 WL 325351, at *6-7 (N.D. Ind. 2007)
3  (ordering plaintiff to respond to interrogatories asking for "all facts" in support of
4  contentions); <u>Pulliam v. Continental Cas. Co.</u>, 2003 WL 1085939, at *5 (D.D.C. 2003)
5  (overruling objection that interrogatory seeking "all facts" was "overly broad" and
6  compelling an answer); <u>Mead Corp. v. Riverwood Natural Resources Corp.</u>, 145 F.R.D.
7  512, 515-16 (D. Minn. 1992) (rejecting defendant's objection that interrogatory seeking
8  "all facts" on which defendant intended to rely was unduly burdensome because
9  defendant "presented no specific facts to support this objection").

10          Moreover, MGA has not meaningfully distinguished the many authorities
11  Mattel cited in its brief. For example, the court in <u>Auto Meter Prods., Inc. v. Maxima</u>
12  <u>Technologies & Systems</u>, 2006 WL 3253636, at *2 (N.D. Ill. 2006), was confronted
13  with a defendant that repeatedly added new contentions *after* serving responses to
14  plaintiff's contention interrogatories. The court concluded that given the "late stage of
15  the case," it was time for defendant "to fully and completely answer [plaintiff's]
16  interrogatories." <u>Id.</u> at *3. In so holding, the court expressly noted that contention
17  interrogatories "require the answering party to commit to a position and give factual
18  specifics supporting its claims." <u>Id.</u> (internal quotation and citation omitted). After
19  compelling defendant to fully respond to the interrogatories at issue, the court made
20  clear that "[a]ny facts or documents not so disclosed cannot be relied upon in this case."
21  <u>Id.</u> at *4. The <u>Auto Meter</u> holding is directly applicable here, because like the
22  defendant in that case, MGA now attempts to add additional contentions (such as the
23  contentions included in its Joint Motion to Overrule Mattel's Relevance Objection,
24  referenced above) that nowhere appear in its November 30, 2007 supplemental
25  interrogatory responses (or any prior discovery responses). With the close of discovery
26  just a few weeks away, the time has come for MGA to commit to its position and fully
27  disclose the basis for its contentions.

28

03437/2338883.4

-20-

REPLY IN SUPPORT OF MOTION TO COMPEL


EXHIBIT 8
PAGE 216

1    Similarly, the decision in Tennison v. San Francisco, 226 F.R.D. 615

2  (N.D. Cal. 2005) is pertinent.  The court in Tennison overruled the responding party's

3  objections and compelled him to provide a "full and complete response" to

4  interrogatories seeking "all facts" in support of his contentions.  The district court

5  stated:

6          At this juncture, discovery is nearly complete, and hence Plaintiff is in a
         position to provide meaningful answers. Furthermore, the interrogatory
7          will advance the litigation as it will pin down Mr. Tennison's position as
         the parties prepare for trial regarding the exact state of his (and his
8          attorney's) knowledge (a fact Mr. Tennison concedes is relevant to this
         suit as discussed below), and the knowledge of the individual defendants
9          regarding exculpatory evidence prior to his conviction. Although a great
         deal of information obviously is in the hands of Mr. Hendrix, the
10         information about Mr. Tennison's knowledge about the exculpatory
         information is not. Finally, the interrogatory is not unduly burdensome as
11         Mr. Tennison presumptively is in the final stages of organizing and
         preparing his case for presentation of evidence at trial. Thus, embodying
12         this information into an interrogatory response is feasible.

13  Id. at 618.  The same reasoning applies here.  With discovery coming to a close and

14  trial just a few months away, MGA is in the final stages of organizing and preparing its

15  case. MGA's claim that disclosing the facts which support its positions in this litigation

16  -- information which is plainly in MGA's possession -- would impose an undue burden

17  should be rejected.

18    As Mattel showed in its Motion, Dang v. Cross, 2002 WL 432197 (C.D.

19  Cal. 2002), affirmed the magistrate judge's holding that the interrogatories at issue --

20  which required the plaintiff to "state all facts which support [his] denial" of allegations -

21  - were not unduly burdensome.  Moreover, it did so after expressly considering some of

22  the same cases MGA now cites, such as Lawrence and Safeco. 2002 WL 432197 at *3.

23  That case cannot be meaningfully distinguished on the ground that it "primarily"

24  addressed whether the definition of the term "identify" rendered the interrogatories

25  compound.  The same issue has been raised in this case by MGA, and the Dang Court

26  specifically found that the interrogatories were not excessively burdensome there, just

27  as they are not excessively burdensome here.

28

-21-

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT ___9___
PAGE ___211___

1    In <u>Audiotext Communications Network</u>, 1995 WL 625953 at *2, the Court
2  ordered responses to interrogatories requesting all facts, and only found the
3  interrogatories overbroad where they sought identification of thousands of company
4  employees "no matter how small or insignificant [their] involvement."  No such
5  discovery is at issue here; indeed, Mattel's interrogatories that seek witness names are
6  expressly limited to those persons who have knowledge of particular topics.  Mattel is
7  seeking the facts supporting MGA's primary contentions in this case -- it is not
8  conducting a fishing expedition for insignificant facts.

9    MGA's attempts to distinguish the balance of the precedent cited by Mattel
10  are equally unavailing.  *See* Opp. at 23, fn. 8.  The five cases addressed in MGA's
11  footnote all addressed arguments raised and rejected by the party who was ordered to
12  respond to "all facts" discovery.  In <u>Williams v. The Art Inst. of Atl.</u>, 2006 WL
13  3694649, at *7 (N.D. Ga. 2006), for example, the court granted a motion to compel
14  interrogatories requesting "all facts" supporting defendant's contentions. The nature of
15  the specific objections made by the parties in <u>Williams</u> and Mattel's other cited cases is
16  immaterial to their applicability here; what matters is that in each case the "all facts"
17  discovery request was determined to be a proper discovery request.    Mattel's
18  interrogatories are proper, as has been repeatedly held.

19    **4.    Answering Mattel's "All Facts" Interrogatories Would Not**
20        **Be "Unduly" Burdensome**

21    To be sure, in some cases courts have held "all facts" interrogatories to be
22  unduly burdensome. However, Mattel's Interrogatories are not ***unduly*** burdensome in
23  this action. All interrogatories are burdensome to some degree because they require
24  work to answer. These interrogatories are indisputably critical, and the amount in
25  controversy justifies the work responding fully will require.  <u>See, e.g.</u>, <u>Fed R. Civ. P.</u>
26  26(b)(2); <u>In re Katrina Canal Breaches Consolidated Litig.</u>, 2007 WL 1959193, at *6
27  (E.D. La. 2007) (overruling "overly burdensome" objection and granting discovery
28  request because "[a]lthough the responsive materials are undoubtedly voluminous,

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT   8
PAGE   218

considering the amount in controversy, the parties' resources and the vital importance of these materials to the litigation . . . the benefits of production outweigh the burden or expense of production"); King v. Georgia Power Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) (overruling defendant's objection that interrogatory was burdensome and oppressive, even though preparation of answer would be time-consuming and costly, because information was crucial to the issues of the suit and in exclusive custody of defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951) (overruling "overly burdensome" objection because value of information to plaintiff clearly outweighed any annoyance or expense involved in disclosure by defendant). Even MGA's own authority recognizes that the "same interrogatory may impose different burdens upon parties," Lawrence, 169 F.R.D. at 663, depending on Rule 26(b)(2)'s factors in a given case. In "making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information." Hoffman v. United Telecomms., Inc., 117 F.R.D. 436, 438 (D. Kan. 1987). Courts have repeatedly granted discovery requests where, in light of the needs of the case, the amount in controversy, the parties' resources, and the importance of the requested discovery, the benefit of obtaining that discovery outweighed any burden or expense in producing it. See, e.g., In re H&R Block Mortgage Corp., Prescreening Litig., 2007 WL 325351, at *6-7 (N.D. Ind. 2007) (compelling responses to "all facts" contention interrogatories early in discovery, because the Court recognized "that Interrogatories Nos. 11-14 seek information as to central issues in this case and thus [plaintiff's] responses to the disputed interrogatories may be crucial at the summary judgment stage"); In re Katrina Canal, 2007 WL 1959193 at *6 (benefits of production outweighed burden or expense in light of "in controversy, the parties' resources and the vital importance of these materials to the litigation"); Beach v. City of Olathe, 203 F.R.D. 489, 494 (D. Kan. 2001) ("The Court finds that the benefit to the plaintiffs of having the information propounded by these interrogatories outweighs the burden on the City in responding to



EXHIBIT ___8___
PAGE ___219___

1  them."); Leibforth v. Belvidere Nat. Bank, 2001 WL 649596, at *1 (N.D. Ill. 2001)
2  (compelling response to interrogatory because "the burden does not outweigh the likely
3  benefit of the information"); King, 50 F.R.D. at 136; Seff, 11 F.R.D. at 598.

4         This is no ordinary litigation involving narrow issues and limited amounts
5  in controversy.  This is a high-stakes, multi-party litigation involving many years of
6  conduct, sophisticated litigants and millions of dollars. MGA claims it seeks "billions"
7  of dollars from Mattel on its claims alone, which many of the interrogatories at issue go
8  to (e.g., Nos. 48-50).[28]  Mattel's claims put at issue the rights to the Bratz brand.
9  Mattel's interrogatories are targeted and directly relevant to MGA's core contentions. If
10 there is any "balancing" to be performed here, the scale clearly tips in favor of granting
11 Mattel discovery.

12        This logic also applies to MGA's failure to identify any responsive
13 documents with specificity.  Although MGA claims that providing Mattel with "all
14 facts" that support some of its contentions would require it to review "4 million" pages
15 of documents, Opp. at 21, that assumes that MGA has yet to begin reviewing such
16 documents and collecting facts to support its contentions in preparation for trial.  That
17 is disingenuous. MGA is certainly well into the process of gathering and evaluating the
18 facts and documents it will use to support its various positions.  In fact, when it suits it
19 to do so, MGA has identified documents with specificity, in other contexts -- for
20 example, in its recent motion MGA discussed and attached specific documents it
21 believes support its contention that Bryant's Inventions Agreement with Mattel does not
22 apply to copyright subject matter.[29]  MGA's failure to identify documents with
23 specificity here is by choice and part of its strategy to sandbag Mattel, not because
24 doing so would be unduly burdensome.  Notably, MGA has not confirmed even that all
25 documents on which it will rely have even been produced.

26

27  [28]  See Proctor Dec., Exh. 8.
28  [29]  Joint Motion to Overrule Mattel's Relevance Objection, dated December 19, 2007, at 8-9, Supp. Proctor Dec., Exh. 1.

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT    8
PAGE    220

**5.   MGA Has Not Provided Even The "Material" Facts.**

Finally, MGA's arguments regarding the "all facts" interrogatories are irrelevant in the end.  Even if the Court were to apply the standard that MGA proposes, MGA has not even provided the *"principal"* or *"material"* facts in its responses.  Interrogatory No. 27 is exemplary once again.  There, Mattel asks MGA to identify each Bratz invention that was created prior to January 4, 1999, and for each, to state all facts supporting MGA's contention that its creation date was prior to January 4, 1999.  In its supplemental response, MGA states that it is not making "any affirmative contentions" as to whether there were any such inventions, but then paradoxically also states that "the conception and/or reduction to practice of any such invention occurred before January 1999 and/or after October 20, 2000."[30]  MGA then provides four sentences of text that it apparently contends constitute the "principal" or "material" facts supporting that contention:  (1) in August or September, 1998, Bryant "conceived of an idea for a line of dolls he named Bratz" and "sketched a series of drawings to illustrate his idea"; (2) Bryant "was inspired by images he was exposed to, including in the August 1998 issue of Seventeen Magazine, the appearance of teenagers, as well as other images in the public domain"; and (3) "no such invention was 'reduced to practice' until after October 20, 2000," nor did it "fall within the scope of the term "inventions" as used in [Bryant's] contract with Mattel."[31]

These do not, and could not possibly, constitute even the principal or material facts, much less "all" supporting facts.  To the contrary, these are bare positions or contentions.  The material facts supporting these contentions are absent.

For example, MGA discloses its position in this response, in a sentence, that whatever was done by Bryant was not an "invention" within the meaning of Bryant's contract with Mattel.  However, it offers zero facts to support that position.

---

[30]   MGA Entertainment, Inc.'s Supplemental Response to Mattel, Inc.'s Revised Third Set of Interrogatories, at 13, Proctor Dec., Exh. 21.
[31]   Id.

-25-

EXHIBIT  8
PAGE  221

1    One "material" fact MGA obviously believes supports this position is the "fact" that

2    different versions of the Inventions Agreement used by Mattel which Bryant did not

3    sign specifically assign to Mattel "copyright subject matter," while Bryant's agreement

4    did not.[32]   That "material" fact – and any and all others – are not disclosed in MGA's

5    responses.

6           The material facts supporting MGA's contentions as to the timing of

7    Bryant's creation of the non-identified inventions are also absent.  For example, MGA

8    has not disclosed, in material part or at all:  (1) *which* images Bryant took inspiration

9    from in Seventeen magazine; (2) *which* teenagers inspired Bryant, *where* he saw them,

10   and what exactly about them he used to form his doll "idea"; (3) How he purportedly

11   came up with the name "Bratz" in 1998; or (4) what facts support MGA's position that

12   the non-identified inventions were not "reduced to practice" until after October 20,

13   2000.  MGA's perfunctory responses would not be adequate even under its cited

14   authorities.

15          C.      **MGA's Responses to Mattel's Interrogatories Regarding MGA's**

16                  **Claims Are Plainly Inadequate.**

17                  1.      **MGA's Failure To Identify The Dates On Which Its**

18                          **Allegedly Infringed Products Originated Is Improper**

19          MGA's attempt to defend its responses to Interrogatory Nos. 43 and 44 is

20   feeble.  MGA does not dispute that these interrogatories -- which seek the dates on

21   which the products it claims Mattel infringed were conceived and fixed in tangible form

22   -- are relevant.  Nor does it dispute its responses are inadequate -- indeed, MGA

23   provides literally no information in them.  Nevertheless, MGA suggests that an order is

24

25   [32]   Joint Motion to Overrule Mattel's Relevance Objection, dated December 19,
     2007, at 2, Supp. Proctor Dec., Exh. 1.  In this motion, Defendants specifically
26   discuss and attach specific documents, namely other versions of the Inventions
     Agreement which purportedly differ from the one Bryant signed to support their
27   contention that, in Bryant's case, the Inventions Agreement does not apply to
     "copyright subject matter."  Id.
28

03437/2338883.4

-26-

EXHIBIT   8
PAGE   222

1  somehow unnecessary because it "is assessing" whether it can provide more
2  information "without undue burden," and will do so if it can.  That odd position should
3  be rejected as a purported basis for denying Mattel relief.  If MGA thinks these
4  interrogatories are somehow unduly burdensome, it bears the burden of substantiating
5  that objection with evidence.  See Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281,
6  283 (C.D. Cal. 1998) (the party who resists discovery has the burden to show that
7  discovery should not be allowed, and has the burden of clarifying, explaining, and
8  supporting its objections).  MGA has not even attempted to do so.

9          2.    **MGA's Responses To Mattel's Interrogatories Regarding**
10             **MGA's Trade Dress Infringement Claims (Nos. 48-50) Are**
11             **Also Inadequate**

12         MGA's responses to Mattel's trade dress infringement interrogatories are
13 similarly inadequate.  Here, MGA attempts to support its generalized responses with a
14 variety of different excuses.  First, MGA contends that it need not respond further
15 because MGA's claims will be addressed in Phase 2.  Opp. at 30:4-8.  But the fact that
16 such claims will be addressed in Phase 2 does not make the required information any
17 less discoverable now, as both the Discovery Master and Judge Larson have repeatedly
18 ruled.[33]

19         MGA also contends that it has provided the "principal" facts on which it is
20 relying, sufficient to "apprise Mattel of MGA's contentions on this Phase 2 issue."
21 Opp. at 30.  That shows how inadequate the responses are.  Merely "apprising Mattel of
22 MGA's contentions" is insufficient.  Mattel is entitled to discover facts, not just
23 contentions or theories.

24
25

26  [33]  See, e.g., District Court's Order Granting in Part and Denying in Part MGA's
27  Motion Re Discovery Master's May 15, 2007 Order, and Denying MGA's Motion
    Re Discovery Master's May 16, 2007 Order, dated July 2, 2007, at 3, Supp. Proctor
28  Dec., Exh. 7 ("There has been no bifurcation of discovery.").

03437/2338883.4

-27-



EXHIBIT   8
PAGE   223

1        Nor is attempting to leave the door open for an expert to introduce new

2  facts under the guise of expert "opinion," after the close of fact discovery, proper. <u>Id.</u>

3  In fact, MGA makes its plan to sandbag Mattel quite apparent here, stating that MGA's

4  experts may "identify other MGA products or elements of MGA products that have

5  been infringed by Mattel."  Opp. at 30-31.  Mattel is entitled to a specific and

6  comprehensive identification of the trade dress and products at issue in MGA's claims

7  <u>now</u>, whether or not those facts will be the subject of expert testimony later, and

8  whether or not the legal effect of those facts will be addressed in Phase 2.  In fact, both

9  the Discovery Master and Judge Larson have confirmed that information that will be

10  the subject of expert testimony is discoverable.[34]

11       **3.**    **A Reservation Of Rights To Supplement An Interrogatory**

12              **Response Is Not A License To Hold Back Information**

13              **Already In MGA's Possession**

14        As to these interrogatories and others, MGA suggests that its incomplete

15  responses are proper because it has reserved the right to supplement them. <u>See, e.g.,</u>

16  Opp. at 30.  Relatedly, MGA falsely claims Mattel has asserted it is improper to reserve

17  a right to supplement interrogatory responses. <u>Id.</u>  Neither is accurate.  Mattel has no

18  issue with such a reservation, but it cannot be used as a license to hold back information

19  that is <u>already</u> in Defendants' possession, which is what MGA has done.  Even if, for

20  example, Mattel had itself failed to produce documents, as MGA contends elsewhere,

21  that does not affect *MGA's* obligation to respond to Mattel's discovery with the

22  information it does possess.  <u>See, e.g.,</u> <u>Audiotext Communications Network v. US</u>

23  <u>Telecom, Inc.</u>, Civ. A. No. 94-2395-GTV, 1995 WL 625953 at *1 (D. Kansas Oct. 5,

24  1995) ("A party, however, may not withhold discovery solely because it has not

25  obtained to its satisfaction other discovery.").

26

27    [34] <u>Id.</u> at 5 ("That net worth is generally the subject of expert testimony at trial --

28  a proposition disputed by neither Mattel nor the Court -- does not render it an
improper subject for a Rule 30(b)(6).").

-28-

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT   8

PAGE   224

**D.** **MGA's Refusal to Identify Its Computer Storage Equipment Is An Improper Attempt to Insulate Its Witnesses from Cross-Examination And Conceal Evidence**

Interrogatory Nos. 40 and 47 ask MGA to identify all storage devices it used for Bratz in 2001 and earlier and sources of documents it searched for early Bratz documents. MGA concedes it has not provided complete responses. Though it says little about storage devices, MGA states that it offered to provide a source log for documents actually produced in this litigation. MGA argues that this offer, in concert with its agreement to provide a 30(b)(6) witness on this topic, is sufficient to respond to Mattel's requests. (*See* Opp. at 32:9 to 33:18). It is not.

First, an interrogatory response is different than deposition testimony. Responses to an interrogatory can be made with the assistance of counsel and set forth in writing, following a diligent investigation. See 11 Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial, 11:1748 (The Rutter Group 2007) ("[I]f information is known to persons in the party's employ, or over whom he or she has control, the responding party is under a duty to obtain such information and provide it"); Zanowic v. Reno, 2000 WL 1376251, at *3, n.1 (S.D.N.Y. 2000) (responding party is "under a duty to make a reasonable inquiry" concerning the information sought in interrogatories); Doe v. Karadzic, 1997 WL 45515, at *6 (S.D.N.Y. 1997) (same). Thus, MGA's contention interrogatory responses -- if proper -- will be far more thorough and comprehensive than any deposition testimony it could offer. Precisely because providing the detailed information sought in these interrogatories can be difficult to accomplish in a deposition, orally, the Court has ordered in the past that interrogatories are more appropriate vehicles for obtaining such detailed information.[35] And in any case, the information sought by Mattel will enable Mattel to intelligently

[35]   Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6), at 8:4-7, Proctor Dec., Exh. 47.

03437/2338883.4

-29-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT  8
PAGE  225

1   question MGA's witnesses about MGA's searches for early Bratz documents.
2   Declining to provide a response is an attempt to shield MGA's witnesses from cross-
3   examination with the benefit of the relevant information sought in these interrogatories
4   -- information Mattel could use to learn from the witnesses the full extent to which
5   MGA has not complied with its discovery obligations.

6          MGA also complains that Mattel's interrogatory improperly "assumes"
7   that MGA has not searched for or produced early Bratz documents, and that Mattel has
8   made no such "showing." Opp. at 32-33. That has it precisely backwards. Although
9   Mattel strongly suspects this is so, it has not assumed it. Rather, these interrogatories
10  are designed to enable Mattel to discover this crucial information.

11         Next, MGA asserts that the Court should require Mattel to "identify the
12  'key documents' to which it refers, and MGA will identify for Mattel the sources of
13  information from which those documents were obtained (to the extent that information
14  is reasonably available to MGA)." Opp at 33. This again misses the point. Mattel
15  seeks to discover not only where early Bratz documents MGA has produced came from
16  – if that were all Mattel sought, it would have accepted MGA's inadequate "source log"
17  proposal. Mattel also properly seeks to discover (1) where MGA should have but has
18  not searched for such documents and (2) where MGA claims no such documents could
19  be found, even though they should be contained there. MGA's objection is a non-
20  sequitor.

21         Last, as part of its now commonplace attempts to disparage Mattel and
22  obscure the issues, MGA complains that Mattel "still has not produced documents from
23  its ZEUS computer system, but instead has delayed any meaningful meet and confer on
24  a search of that system." Opp. at 33. That is patently false. Indeed, it shows the lengths
25  to which MGA is willing to go to mislead the Court and obscure its own misconduct.
26  First, Mattel has indeed produced documents from Zeus, and has repeatedly so advised
27
28

03437/2338883.4
                                              -30-
                                                    REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT __8__
PAGE __226__

1  MGA.[36]  Moreover, as set forth in detail in the accompanying Tayback Declaration,

2  Mattel diligently sought to meet and confer with MGA immediately after this Court

3  ordered the parties to meet and confer regarding parameters to further search the Zeus

4  system, on September 12, 2007; it is *MGA* that delayed and refused.[37]

5          MGA's bald assertion that Mattel "has not produced documents" from

6  Zeus and "delayed" a meet and confer on Zeus search issues is a deliberate attempt to

7  mislead the Court and diverts the Court's attention from MGA's own failure to provide

8  the information sought by Mattel's interrogatories.

9      **E.      MGA's Objections To Mattel's Interrogatory About The Identity**

10          **of MGA's Bank Accounts Are Improper.**

11          Interrogatory No. 39 merely asks Defendants to identify their financial

12  institutions and accounts.  MGA objects on the basis that Mattel "has not shown good

13  cause for the invasive and burdensome third party discovery to which a response will

14  inevitably lead."  These objections are meritless for several reasons.

15          First, this objection puts the "cart before the horse."  The requests at issue

16  here are not third party subpoenas.  They are party interrogatories, and MGA's assertion

17  improperly conflates the two.  Mattel is not asking that MGA produce a vast quantity of

18  sensitive financial records.  It is asking only that it identify the institutions and

19  accounts.   MGA has absolutely no basis for withholding even that identifying

20  information.   Whatever objections MGA or a financial institution may have to a

21  subsequent subpoena are not relevant to the issues presented by the instant motion.

22          Second, MGA's claim that it has provided "substantial financial

23  information" to Mattel, even if true, does not imply that Mattel cannot obtain other

24  relevant information from other sources.  Mattel has pleaded commercial bribery; it is

25  entitled to a full identification of Larian's and MGA's bank accounts to attempt to

26  locate evidence to support that claim.  MGA states that the "only financial documents

27  _____

36  Tayback Declaration, ¶ 3.

28

03437/2338883.4

-31-



EXHIBIT __8__

PAGE __227__

1   that could possibly be relevant to this allegation are documents showing payments by
2   MGA to Bryant," and asserts that "MGA witness Lisa Tonnu has already testified about
3   such payments." This ignores both that evidence of payments to other MGA employees
4   would also be relevant to Mattlel's RICO claims and Mattel's allegations of a pattern of
5   racketeering activity, and that Mattel is not obligated to simply take MGA's word for it
6   -- it is entitled to obtain evidence to verify MGA's statements.

7           Nor is the prospect of discovering evidence of MGA payments to other
8   Mattel employees speculative.  Just a week ago, one of MGA's vendors, Veronica
9   Marlow, identified for the first time three *other* Mattel employees who worked on Bratz
10  while employed by Mattel, as early as 2000.[38]  At least two of these individuals, Isabel
11  Ana Cabrera and Beatriz Morales, worked on Bratz while employed by Mattel for
12  *years*.[39]  Ms. Cabrera was a co-worker of Mr. Bryant's in Mattel's Barbie Collector
13  department and worked directly with Mr. Bryant.[40]  The other Mattel employee
14  identified by Ms. Marlow as also working on Bratz while employed by Mattel was
15  Maria Elean Salazar.[41]  Defendants had never before disclosed that any of these
16  individuals worked on Bratz while employed by Mattel.

17          Finally, MGA's Opposition ignores that this Court has already found the
18  discovery at issue here to be permissible in considering other requests.  See Court's
19  Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of
20  Documents by Isaac Larian, dated December 31, 2007 (compelling the production of
21  financial documents, including documents sufficient to identify each of Larian's banks
22  or financial institutions since January 1, 1999, because Mattel's requests were
23  "reasonably calculated to lead to the discovery of admissible evidence relevant to

24

25  [37]  Tayback Decl., ¶¶ 4-10.
    [38]  See Deposition of Veronica Marlow at 306:8-25, 363:15-21, Supp. Proctor
26  Dec., Exh. 11.
    [39]  Id. at 288:8-289:21, 307:8-308:1.
27  [40]  Id. at 296:18-24.
28  [41]  Id. at 363:15-21.

03437/2338883.4

-32-

EXHIBIT  2
PAGE  228

1 │ several issues in the case"); Court's Order Granting in Part and Denying in Part Mattel's

2 │ Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition

3 │ Under Rule 30(b)(6), dated September 25, 2007 (compelling MGA to produce a

4 │ witness on the topic of payments to Larian, including the accounts to which such

5 │ payments were made, because "MGA's payments to Isaac Larian may be relevant to

6 │ Mattel's claim for punitive damages").   Defendants' continue to withhold this

7 │ information notwithstanding these orders only because they seek to hide the facts.[42]

8 │ **F.    Interrogatory No. 46 Does Not Invade the Attorney-Client**

9 │ **Relationship.**

10 │ MGA contends that Interrogatory No. 46 (which seeks information

11 │ regarding the reasons for MGA's substitution of attorneys) seeks what it calls

12 │ "privileged evidence." Opp. at 8:1-9:6. This is incorrect for several reasons.

13 │ First, the interrogatory itself expressly excludes privileged attorney-client

14 │ communications from its scope. That is itself dispositive. Moreover, *facts* do not

15 │ become privileged simply because they are the subject of a privileged communication,

16 │ as MGA suggests -- the facts remain discoverable. See Upjohn Co. v. United States,

17 │ 449 U.S. 383, 390 (1981) (the protection of the attorney-client privilege extends only to

18 │ communications;  it  does  not  extend  to  the  facts  revealed  in  privileged

19 │ communications); see also Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal.

20 │ 2003) ("[B]ecause the work product doctrine is intended only to guard against

21 │ divulging the attorney's strategies and legal impressions, it does not protect *facts* . . .

22 │ contained within work product."). MGA's suggestion that the facts relating to any

23 │ dispute are privileged because any dispute "must have been" the subject of a

24 │

25 │ [42]   Further, as discussed in the Motion, Mattel seeks punitive damages against
     │ MGA, and the specific financial circumstances and solvency of MGA is directly
26 │ relevant to Mattel's damages claim as well.  MGA does not rebut any of this.
27 │ Moreover, evidence of payments and transfers between Larian and MGA could
     │ provide evidence to support Mattel's assertion that MGA and Larian are alter egos
28 │ of one another. This is an independent reason why it is entitled to this information.

03437/2338883.4

-33-

EXHIBIT    8

PAGE    229

1   communication between attorney and client is simply wrong. Facts do not become
2   privileged merely because they are discussed by lawyer and client. See Order Granting
3   Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual
4   Capacity and as a 30(b)(6) Designee; Denying Request for Sanctions, at 12, Proctor
5   Dec., Exh. 50 ("The protections [of the attorney-client privileged] extend only to
6   communications; however, it does not extend to the facts underlying privileged
7   communications.") (citing Upjohn, 449 U.S. at 390).

8        Second, MGA waived any privilege when it chose to discuss the reasons
9   for its substitution of counsel with the press.   See Weil v. Investment/Indicators,
10  Research and Managment, Inc., 647 F. 2d 18, 24 (9th Cir. 1981) ("[I]t has been widely
11  held that voluntary disclosure of the content of a privileged attorney communication
12  constitutes waiver of the privilege as to all other such communications on the same
13  subject"). Indeed, MGA itself vehemently makes this point in a motion it just filed.[43]
14  MGA's claim that there was no waiver here because it merely "discussed the reasons
15  for the change in counsel generally," Opp. at 9, again is contrary to law. See Weil, 647
16  F.2d at 24.

17       MGA next protests that Mattel "has not introduced a shred of evidence
18  supporting that there was a 'dispute' between MGA and its prior counsel." Opp. at 8.
19  First, that O'Melveny & Myers filed an *ex parte* application to withdraw, and that
20  O'Melveny forcefully disagreed with MGA's in-house counsel's representations about
21  the course of the breakdown in their relationship in a conference with Judge Larson,
22  tend to show this.[44] The relevance of this dispute is also apparent -- one does not have
23  to look far to find examples of clients that have been fired by their attorneys for hiding

24  _____

25  [43]   MGA's and Carter Bryant's Joint Motion to Compel an Unredacted Version
    of M0074400, Mattel's Investigative File 02-299 and the Further Deposition of
26  Richard De Anda, dated January 4, 2008, Supp. Proctor Dec., Exh. 10.
27  [44]   Attached as Exhibit 9 is a true and correct copy of the Transcript of the
    October 10, 2007 Hearing before the Honorable Stephen G. Larson, Supp. Proctor
28  Dec., Exh. 9.

03437/2338883.4

-34-

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT   8
PAGE   230

1    evidence and/or suborning perjury.  In any case, Mattel does not bear the burden to

2    "prove" this dispute to obtain discovery about it.  See Oakes v. Halvorsen Marine Ltd.,

3    179 F.R.D. 281, 283 (C.D. Cal. 1998) (the party who resists discovery has the burden to

4    show that discovery should not be allowed, and has the burden of clarifying,

5    explaining, and supporting its objections).  Such a requirement would turn Rule 26 on

6    its head because information would only be discoverable if it has already been

7    disclosed.

8             Of course, if MGA believes it can truthfully respond that there was no

9    dispute, it should do so.  But it cannot refuse to respond at all, as it has done.

10    **III.    MATTEL HAD NO OBLIGATION TO WAIT FOR MGA'S DELAY**

11         **TACTICS TO RUN THEIR COURSE**

12            Last, MGA argues that Mattel's motion is "premature" in light of MGA's

13    promise to serve a *second* supplement to its answers.  Opp. at 7:15-25.  That is

14    nonsense.  As the record shows – and as MGA's Opposition shows -- MGA is not

15    willing to provide responses Mattel believes it is entitled to.  The parties clearly dispute

16    MGA's obligations, and did so at the meet and confers.  MGA's original  and first

17    supplemental responses all advance and rely upon meritless objections and are all

18    incomplete, and MGA forecasted that its promised *second* supplemental responses

19    would likewise be limited and incomplete.  Mattel had no obligation to wait, as MGA

20    suggests it should have, to see if the second supplemental responses really were as

21    incomplete as MGA said they would be.

22            Relatedly, MGA's claim that Mattel's counsel "misrepresent[ed]" the meet

23    and confer discussions, Opp. at 5:6 - 7:14, is disingenuous.  Mattel spent many hours

24    over a period of days meeting with MGA to discuss its responses.[45]  When the parties

25    first spoke, Mattel was surprised to hear MGA say its responses were indeed

26

27

28    [45]    Supp. Proctor Dec., ¶ 2.

REPLY IN SUPPORT OF MOTION TO COMPEL



EXHIBIT   8

PAGE    231

1  "complete."[46]  Then, as discussion ensued, MGA "clarified," time and again, that its

2  responses "actually" were limited by one objection or another -- by its "interpretation"

3  of the term "INVENTION" and other terms, which (as MGA itself notes in its

4  Opposition) is not the interpretation its responses say it will use; by its "principal facts"

5  limitation, which would enable MGA to simply disclose whatever it chooses with no

6  downside risk; by its protestation that Mattel cannot "improperly limit" MGA to the

7  facts, theories or contentions it chooses to disclose.

8        After the meet and confers, Mattel sent MGA a letter on December 13,

9  2007 that accurately summarized these meet and confer discussions and requested that

10  MGA "please let [Mattel] know if MGA [was] willing to agree to supplement any of

11  the interrogatories as to which it has not yet responded with its position."[47]  Mattel then

12  waited for over a week before filing its motion, during which time Mattel received

13  neither any assurance from MGA that it would supplement beyond what it had said

14  previously nor any criticism of Mattel's summary of the meet and confer discussions.

15  The record speaks for itself.  MGA's responses show they are limited.  Its Opposition

16  shows this as well.  Mattel's motion to overrule MGA's objections and limitations, and

17  to compel complete responses, is ripe for decision and should be granted.

18

19

20

21

22

23

24

25

26

---

[46]   Supp. Proctor Dec., ¶ 2.
[47]   Letter from Proctor to Miller, dated December 13, 2007, at 5, Proctor Dec.,
Exh. 5.

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT  8
PAGE  232

1  <u>**Conclusion**</u>

2      For the foregoing reasons, the Discovery Master should (1) compel the

3  MGA Entity Defendants and Isaac Larian to answer completely Interrogatory Nos. 27-

4  44 and 46-50 in Mattel's Revised Third, Amended Fourth, Fifth and Seventh Sets of

5  Interrogatories, and (2) overrule all of MGA's objections.

6

7  DATED:  January 7, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                           By/s/ B. Dylan Proctor
                           B. Dylan Proctor

10                             Attorneys for Plaintiff
                           Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-37-

EXHIBIT  8

PAGE  233