# EXHIBIT 11

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

December 13, 2007

**VIA FACSIMILE AND U.S. MAIL**

Timothy A. Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:   Mattel, Inc. v. Carter Bryant, et al.

Dear Tim:

I write further to our meet and confers of Monday, December 10, 2007, and Wednesday, December 12, 2007,  regarding the MGA Parties' ("MGA") responses and supplemental responses to Mattel's Revised Third, Amended Fourth, Fifth, Sixth and Seventh sets of interrogatories.

First, MGA confirmed, as it had stated in prior correspondence, that it does not stand on the objection that Mattel's Third, Fourth or Fifth Sets of Interrogatories purportedly exceeds the 50-interrogatory limit as a basis for refusing to respond to these interrogatories.  You also stated that MGA was not standing on this objection with respect the Sixth and Seventh sets as well, and indeed, MGA has provided a partial response to Mattel's 48th, 49th and 50th interrogatories.

Second, you confirmed that the responses and supplemental responses MGA has provided to date merely lay out what MGA views as the "basic facts" or a "fair representation of the facts," and do not provide details.  You explained, regarding Mattel's contention interrogatories, that all the facts on which MGA intends to rely are encompassed by the facts it has disclosed, but that MGA

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2321626.2

EXHIBIT ___11___
PAGE ___288___

has not articulated all of those facts.  MGA also confirmed that, in some cases, it has unilaterally limited its responses by disregarding the definitions in Mattel's requests, and instead answering as though Mattel's defined terms do not have the definitions specified in the interrogatories. MGA also confirmed that it has not and will not identify documents with specificity for Mattel's requests that call for an identification of documents.  As we explained, Mattel disagrees with these limitations on MGA's responses.

MGA did offer to provide Mattel with what it said should be a "substantial supplement" to many of its responses to provide addition detail by January 7, 2007.  However, when I asked which interrogatories MGA is willing to supplement, you stated that MGA was not yet certain of this. You also would not commit to providing a full and complete response not limited by objections to any of Mattel's interrogatories.  You also said MGA would not use the definitions of "Bratz Invention" and other terms provided in Mattel's interrogatories in forming its responses, and may or may not fully respond in light of the meaning of those terms specified in the interrogatories, and would not commit to identify all documents by Bates number.

MGA also identified several interrogatories for which MGA refuses to provide any supplemental response, namely Nos. 39 and 46.

<u>Interrogatories Nos. 27, 28, 29</u>

MGA stated that in responding to Nos. 27, 28 and 29, it did not use the definition of the term "Bratz Invention" provided by Mattel in its Revised Third Set of Interrogatories, but instead interpreted these interrogatories by using the more limited definition of the term "invention" that MGA believes is used in utility patent law.  Mattel pointed out that this significantly limited MGA's response, and also directly contradicted MGA's assurance in its Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories that MGA "[would] respond using words contained within the Mattel definition in their normal accepted meaning."  You confirmed that MGA had not so responded.

MGA also stated that the facts it had identified as supporting its contentions were, as with the other requests, the "basic facts" on which it intends to rely, but not the "details."  I explained that Mattel disagrees with that limitation, and with MGA's failure to identify documents for these and all other requests that call for an identification of documents.

<u>Interrogatories Nos. 30, 31, 32, 34, 35, 36, 37, 38, 42</u>

Mattel pointed out that all of MGA's responses to these interrogatories are incomplete for one or more reasons, either because they fail to adequately disclose the facts supporting MGA's contentions, do not identify any witnesses with knowledge of the facts on which MGA's contentions are based, or do not identify any documents at all, by category or number.  You confirmed that, while these responses do not contain a detailed explanation of all the facts on which MGA's contentions are based, they do provide the "basic facts" or a "fair representation of MGA's position" with respect to the subject of each of these interrogatories.

EXHIBIT __11__
PAGE __289__

With respect to Interrogatory No. 34, you stated that some of the documents to be identified are privileged, as reflected in the Responses, and that MGA would not produce such documents. I asked whether MGA would identify them on its privilege logs. You said you would consider that.

<u>Interrogatory No. 39</u>

In response to MGA's inquiry as to why bank account information is relevant, Mattel has explained more than once that it is entitled to third party discovery, including from bank and financial institutions, in order to verify relevant financial information provided by MGA or any other party in the suit and to obtain financial information that MGA has failed to produce. We also pointed out that Judge Infante has already effectively ruled on this issue. Furthermore, both parties have put MGA's financial information and status directly at issue. MGA engaged in financial transactions that directly relate to and thus evidence the timing of Bratz. MGA has committed acts in commercial bribery, which makes its financial transactions directly at issue. MGA itself has chosen put entire acquisitions, such as those involving Zapf and Smoby, at issue in its unclean hands defense. Furthermore, Mattel has punitive damages claims to which MGA's financials are pertinent.

<u>Interrogatory No. 41</u>

Mattel pointed out that MGA's response is incomplete in that it fails to provide either the date of first contact or the date of any employment interview(s) for any of the employees listed in the response. Mattel also pointed out that MGA provided no dates of employment whatsoever with respect to Carter Bryant. MGA promised to investigate this matter, and consider whether it would supplement. MGA confirmed that the list of employees it has provided is complete to the best of its knowledge, and not limited by objections. Please let me know if MGA is willing to supplement its response to this interrogatory as soon as possible.

<u>Interrogatories Nos. 43 and 44</u>

Mattel pointed out that MGA's responses to Nos. 43 and 44 are improper in that they simply refer to MGA's response to Interrogatory No. 3 of Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, which do not provide the information requested in these interrogatories.

<u>Interrogatory No. 45</u>

MGA stated that it produced the documents needed to obtain the information sought in this interrogatory, on Friday, Dec. 7, 2007 and Wednesday, December 12, 2007.

<u>Interrogatory No. 46</u>

MGA continues to refuse to respond to Interrogatory No. 46. When I asked why, you stated that MGA's position is that all of the information requested is protected by the attorney-client privilege. As I explained, we disagree with that assertion.

EXHIBIT ___11___
PAGE ___290___

Interrogatories Nos. 40 and 47

MGA did not commit to provide an additional supplemental response to No. 40 or any substantive response to No. 47, but instead proposed that Mattel and MGA exchange "source logs" regarding the entirety of their productions in lieu of MGA's provision of a response. According to MGA's proposal, these "source logs" would provide certain information for every document produced by MGA, including each document's Bates number, the identity of the individual who created the document and the location where the document was located by MGA for production, e.g. the server where it was found. MGA stated that it has already gathered this information for 90% of the documents it produced in this case. Mattel pointed out that the interrogatory is both more narrow and more broad than this -- it does not request source information for every document in this case, and instead seeks information only about key early Bratz documents, but it also does seek additional information MGA proposes not be included on the source logs.

According to MGA's proposal, Mattel must waive its right to seek a full response to this interrogatory were it to accept. Mattel is unwilling to agree to MGA's proposal because, under it, MGA would not provide the information Mattel seeks. MGA then said it would consider whether it would supplement its response. Please let me know if it intends to.

Interrogatory No. 48

Mattel pointed out that MGA's response is incomplete in that it fails to identify each product which MGA contends has been infringed by Mattel. MGA responded that its answer contains the "basic facts." MGA also added that its answer may be incomplete as the subject matter of this interrogatory will be the source of expert testimony, and an expert may identify additional facts that support MGA's contention. That is not acceptable since it necessarily will allow MGA to sandbag Mattel by introducing new products into the litigation at the time of expert reports and thus after fact discovery has closed.

Interrogatory No. 49

Mattel stated that MGA's response is incomplete in that it fails to identify each Mattel product that MGA contends copies, infringes or dilutes any MGA trade dress. MGA responded that it contends that every MY SCENE doll infringes each identified element of the trade dress of the Bratz line of dolls and each MY SCENE PET doll infringes upon each identified element of the trade dress of the Bratz Petz line of dolls.

Interrogatory No. 50

MGA stated that its response to No. 50 is a "fair representation of MGA's position" with respect to its contention that any trade dress identified in No. 48 is protectible, though details are not provided.

EXHIBIT  11
PAGE    291

As we discussed, please let me know if MGA is willing to agree to supplement any of the
interrogatories as to which it has not yet responded with its position.


Very truly yours,

*B. Dylan Proctor /MJM*

B. Dylan Proctor

EXHIBIT __11__
PAGE __292__

# EXHIBIT 12

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:   (415) 774-2611
Facsimile:      (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                  Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                  Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

Presently pending are two separate motions pertaining to Mattel's Third Set of Interrogatories:  (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9-05-07

EXHIBIT 12
PAGE 293

1    Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2    Third Set of Interrogatories.[2]  Having considered the motion papers and the comments of counsel

3    at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4    interrogatory responses is denied.  MGA's request for sanctions in connection with Mattel's

5    motion to compel interrogatory responses is also denied.[3]

6                                    II. BACKGROUND

7           In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8    Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9    In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10   Bryant four questions and MGA seven questions.  Of these, three interrogatories to Bryant were

11   identical to three interrogatories to MGA.  In December of 2006, Mattel served MGA with its

12   First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13   interrogatories.

14          During a scheduling conference held on February 12, 2007, the district court imposed a

15   limit on interrogatories of "50 for each side for both cases."  February 27, 2007 Minute Order,

16   Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7.  When MGA asked

17   whether all Defendants would count as one "side" under the court's order, the court confirmed

18   that was its intent:  "there's one party, essentially, on the other side, and [defendants] have two

19   parties."  Tr. of scheduling conference, Proctor Dec., Ex. 7.  After MGA clarified that there were

20   actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23   ――――――――――――

24   [1]  Defendants submitted their joint motion on July 10, 2007.  Mattel submitted its opposition on July 17, 2007.  Defendants submitted their reply brief on July 20, 2007.

25   [2]  Mattel submitted its motion to compel on July 18, 2007.  Defendants submitted an opposition on August 1, 2007.  Mattel submitted its reply brief on August 6, 2007.

26
27   [3]  The Discovery Master determined that a hearing was not necessary.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT 12 [2]
PAGE 294

interrogatories on Mattel in addition to MGA's interrogatories.  Bryant stated that he probably would not.  The court responded as follows:

> Let's try to work within the confines of the 50 interrogatories, and if you need more, again, the court is going to be forthcoming, if there's a need for it. And it's the type of order that if you can stipulate amongst yourselves, you're not going to need an order from the court.
>
> But if you're not agreeing amongst yourselves, then you're going to have to come back to the court before you bust those limits.  Unlike every other order the court issues, where once the court issues an order and you need an order from the court to alter that, this is one that I will give you authority amongst yourselves to stipulate to a greater number.  But [let's] be reasonable.  I can't imagine you can't work this out.  I just don't want to have open-ended numbers of interrogatories and experts.

Id. at 24:5-18.  The court also directed the parties to return to court if they were unable to reach an agreement.  Id. at 24:23.

On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" – MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant – asking each of these four defendants the same nineteen questions.  On July 9, 2007, MGA, MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of Interrogatories and no responses.  The parties met and conferred on July 10, 2007.  Defendants refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty interrogatory limit and that the interrogatories were otherwise objectionable on several grounds. Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories that are compound and by serving interrogatories on multiple responding parties on the "same side."  By Defendants' calculations, when each discrete subpart of each of Mattel's interrogatories served on each of the responding parties are counted separately, Mattel has served, at a minimum, 227 separate interrogatories.  In contrast, Mattel contended that its interrogatories are not compound, and that each identical interrogatory it serves should be counted as one, regardless of how many parties it serves on the "other side."  By Mattel's calculations, it has propounded a total of forty-three non-identical interrogatories.  The parties

EXHIBIT 12
PAGE 295

1 | also discussed potentially stipulating to a greater number of interrogatories but apparently did not
2 | reach an agreement.
3 |      Defendants move for a protective order preventing Mattel from serving additional
4 | interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify
5 | which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed
6 | by the district court. Mattel opposes the motion, contending that it has not exceeded the 50
7 | interrogatory limit set by the district court. In a separate motion, Mattel moves to compel
8 | Defendants to provide responses to its Third Set of Interrogatories.

### III. STANDARDS

10 |      Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice
11 | requires to protect a party or person from annoyance, embarrassment, oppression, or undue
12 | burden or expense," including "that the disclosure or discovery not be had."

### IV. DISCUSSION

14 |      Defendants' motion for a protective order raises essentially three issues: (1) whether an
15 | identical interrogatory served on several Defendants should be counted as only one interrogatory
16 | or counted separately for each Defendant served with the identical interrogatory; (2) whether an
17 | interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of
18 | such facts," and "identify all documents" should be counted as a single interrogatory or three
19 | separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal
20 | theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21 | A. The Fifty "Per Side" Limit

22 |      The district court limited interrogatories to fifty "per side." Although the district court's
23 | order does not speak directly to this issue, the most reasonable approach is to count one identical
24 | interrogatory served on all six of the Defendants as one interrogatory. Under this approach,
25 | Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants
26 | collectively may serve a total of 50 non-identical interrogatories on Mattel.

27
28



EXHIBIT 12
PAGE 296

4

1    Defendants' alternative approach is not realistic because it would leave Mattel with far

2    fewer interrogatories than the 50 permitted by the district court.  Indeed, Defendants' approach

3    would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4    Rule 33(a), Fed.R.Civ.P.  Under Defendants' approach, Mattel would be limited to approximately

5    eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6    interrogatories on Mattel.  Such an imbalance would be fundamentally unfair.

7    Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8    served on all six of the Defendants is counted as one interrogatory.

9    B. Interrogatories Requiring Responding Party to:  (1) state all facts; (2) identify all persons with

10   knowledge; and (3) identify all documents

11   Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12   counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13   interrogatories a party may serve upon any other party.  Although Rule 33(a) does not define the

14   term "discrete subparts," The Advisory Committee addresses this issue and provides the

15   following guidance as to when subparts should and should not count as separate interrogatories:

16   Each party is allowed to serve 25 interrogatories upon any other party, but must
     secure leave of court (or stipulation from the opposing party) to serve a larger

17   number. Parties cannot evade this presumptive limitation through the device of
     joining as 'subparts' questions that seek information about discrete separate

18   subjects. However, a question asking about communications of a particular type
     should be treated as a single interrogatory even though it requests that the time,

19   place, persons present, and contents be stated separately for each such
     communication.

20

21   Advisory Committee Notes for the 1993 Amendments to Rule 33.  A leading treatise has

22   explained that "it would appear that an interrogatory containing subparts directed at eliciting

23   details concerning the common theme should be considered a single question, although the

24   breadth of an area inquired about may be disputable."  8A Charles A. Wright, Arthur R. Miller &

25   Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994).  "Although

26   there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28

1   weight of authority interpreting <u>Rule 33(a)</u> requires examining whether the subparts are

2   'logically or factually subsumed within and necessarily related to the primary question.'"

3   <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4   <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting <u>Ginn v. Gemini</u>

5   <u>Inc.</u>, 137 F.R.D. 320, 322 (D. Nev. 1991).

6          Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7   whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8   (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9   documents referring or relating to such facts.  On the one hand, for example, in <u>United States ex</u>

10  <u>rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.</u>, 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11  the court explained that an "interrogatory may properly seek identification of documents and facts

12  supporting a contention, but it may not do so in a single interrogatory."  <u>See also</u> <u>Nobles v. Jacobs</u>

13  <u>IMC</u>, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14  responding party to state all facts regarding a particular issue and to identify all persons having

15  knowledge of such information is two separate interrogatories); <u>Chapman v. California Dept. of</u>

16  <u>Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17  disclosure of facts (including the identity of persons with knowledge) and documents as two

18  separate interrogatories); <u>Kendall v. GES Exposition Services, Inc.</u>, 174 F.R.D. 684, 685-86 (D.

19  Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20  treated as two subparts).  On the other hand, for example, in <u>Krawczyc v. City of Dallas</u>, 2004

21  WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22  facts supporting a contention and to identify persons with knowledge of those facts counts as one

23  interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24  "factually subsumed within and necessarily related to the primary question."

25          In the instant case, most of Mattel's interrogatories follow the same format, asking the

26  responding party to state all facts supporting a contention or contentions, to identity persons with

27

28

EXHIBIT 12
PAGE 298

6

1   knowledge, and to identify all documents that refer or relate to such acts.  Notwithstanding

2   caselaw to the contrary, these subparts are not discrete.  Rather, the subparts are related and

3   directed to the underlying details of a specifically identified contention (or contentions) in a

4   manner similar to the example given in the Advisory Committee Notes:  "a question asking about

5   communications of a particular type should be treated as a single interrogatory even though it

6   requests that the time, place, persons present, and contents be stated separately for each such

7   communication."  Therefore, subparts seeking facts supporting a contention, the identity of

8   persons with knowledge, and documents are not counted separately for purposes of applying the

9   50 interrogatory limit.

10  C. Interrogatories Addressing Several Discrete Issues

11          Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12  compound because they address discrete issues.  For example, Mattel has propounded the

13  following interrogatory:

14          State all facts that support YOUR contention, if YOU so contend, that one
            or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole
15          or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
            IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
16          that REFER OR RELATE TO such facts.[4]

17  This interrogatory is directed to four separate and discrete defense theories:  unclean hands,

18  estoppel, waiver and consent.  Therefore, the interrogatory is compound and each of the four

19  discrete subparts should be counted as a separate interrogatory.  See Safeco of America, 181

20  F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21  interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22  be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23  2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25  _____

26      [4]   Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT __12__
PAGE __299__

7

1   about all elements of a given claim was compound and explaining that each element of a claim is

2   discrete and constitutes a separate interrogatory).

3         Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4   factual matters:

5               State all facts that support YOUR contention, if YOU so contend, that
                YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
6               any other agreement or contract between MATTEL and BRYANT, or aid or abet
                any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
7               when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
                rights to BRATZ or when BRATZ performed work or services with or for MGA
8               while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
                knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
9               such facts.[5]

10   This interrogatory includes three different legal contentions: (1) intentional interference with the

11   Inventions Agreement; (2) intentional interference with any other agreement or contract between

12   Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13   owed by Bryant to Mattel.[6]   In addition, this interrogatory asks the responding party to apply two

14   different sets of factual allegations to the three different legal contentions.  Therefore, the

15   interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16         The following additional interrogatories contain similar types of discrete and separate

17   subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18   subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19   discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20   discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21   into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24   _____

        [5]  Id. (No. 21).

25

        [6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
26   of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
     presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                          8

                                                    EXHIBIT   12
                                                    PAGE      300

1  propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2  order.

3  <u>V. CONCLUSION</u>

4  For the reasons set forth above, Defendants' motion for a protective order is granted, and

5  Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6  serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7  imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8  compel interrogatory responses is denied.

9  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, MGA shall file this Order with the Clerk of Court forthwith.

11

12

13  Dated: September 5, 2007

14  HON. EDWARD A. INFANTE (Ret.)
   Discovery Master

15

16

17

18

19

20

21

22

23

24

25

26

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 12
PAGE 301

9

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5,
2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE
ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S
MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail
addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT  12
PAGE  302

# EXHIBIT 13

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 17, REGARDING:**<br><br>**(1) THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY ON TRADE DRESS CLAIMS;**<br><br>**(2) MOTION OF MATTEL, INC. TO ENFORCE PRIOR COURT ORDER AND TO COMPEL RESPONSES TO INTERROGATORIES; and**<br><br>**(3) *EX PARTE* APPLICATION FILED BY MATTEL, INC. FOR AN ORDER TO SHOW CAUSE RE: MGA ENTERTAINMENT, INC.'S FAILURE TO COMPLY WITH COURT ORDER** |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13
PAGE 303

1    This Order sets forth the Discovery Master's ruling on the following

2    discovery matters:  (1) the motion for a protective order staying discovery on trade

3    dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,

4    MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")

5    ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.

6    ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")

7    to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental

8    Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and

9    (3) the *ex parte* application filed by Mattel for an order to show cause regarding

10   MGA's failure to comply with a prior court order ("Application") [Docket No.

11   4997] (collectively, the "Motions").

12       The Motions came on regularly for hearing before the Discovery Master on

13   April 14, 2009.  All interested parties were represented by counsel and afforded the

14   opportunity to present oral argument on the Motions.  The Discovery Master,

15   having considered the papers filed in support of and in opposition to the Motions,

16   and having heard oral argument, rules as set forth below.

17   **I.**    **THE TRADE DRESS DISCOVERY AT ISSUE**

18       All of the Motions concern discovery related to MGA's trade dress claims.

19   **A.    Interrogatory Nos. 43 And 44**

20       On October 23, 2007, Mattel served its Amended Fourth Set of

21   Interrogatories on MGA, including Interrogatory Nos. 43 and 44.  (Declaration of

22   Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at

23   pp. 7 – 8).  These interrogatories ask MGA to identify, for each design, product

24   and packaging that MGA contends Mattel copied, the date of conception and the

25   date it was first fixed in a tangible medium:

26   •  Interrogatory No. 43:  "For each concept, design, product, product

27       packaging or other matter that YOU contend MATTEL copied or

28       infringed, including but not limited to those identified in MGA's



EXHIBIT 13
PAGE 304

- 1 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2   Unfair Competition, Response To Interrogatory No. 2 (and any

3   Supplemental Responses to such Interrogatory), state the date that each

4   such concept, design, product, product packaging or other matter was

5   conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6   DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,

7   Ex. 1 at p. 7).

8   • Interrogatory No. 44: "For each concept, design, product, product

9   packaging or other matter that YOU contend MATTEL copied or

10   infringed, including but not limited to those identified in MGA's

11   Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12   Unfair Competition, Response To Interrogatory No. 2 (and any

13   Supplemental Responses to such Interrogatory), state the date that each

14   such concept, design, product, product packaging or other matter was

15   first fixed in any tangible medium of expression (if ever), and

16   IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17   that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and

18   8).

19   MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20   November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21   supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On

22   December 20, 2007, Mattel moved to compel further responses to the

23   interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's

24   motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,

25   MGA served its second and third set of supplemental responses to Interrogatory

26   Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27   On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28   February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT 13
PAGE 365

-2-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    Mattel's motion to compel, finding that the "requested information is relevant to

2    Mattel's defense against the MGA [P]arties' claims that their products have been

3    copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –

4    12). The prior discovery master further ruled that the supplement responses

5    provided by MGA were deficient, reasoning as follows:

6            Although the MGA [P]arties served supplemental

7            responses after filing their opposition brief, the

8            supplemental responses do not include the requested

9            information. The MGA [P]arties have [also] failed to

10           establish that the interrogatories are unduly burdensome.

11   (*Id.*, Ex. 8 at p. 12). The prior discovery master then ordered MGA to

12   supplement its responses "no later than February 26, 2008." (*Id.*, Ex. 8

13   at p. 22).

14           On March 3, 2008, seven days after the deadline specified in the prior

15   discovery master's order, MGA supplemented its responses to Interrogatory Nos.

16   43 and 44 for a fourth time, objecting that the discovery in question related to

17   Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on

18   Phase 2 discovery on February 4, 2008. (*Id.*, Ex. 9 at pp. 7 – 16). On April 22,

19   2008, the prior discovery master granted the MGA Parties' motion for clarification

20   concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation

21   to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby

22   stayed until further order of the district court lifting the stay on Phase 2 discovery."

23   (*Id.*, Ex 10 at p. 3).

24           **B.    Supplemental Interrogatory Nos. 51 – 55 And 64**

25           On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55

26   and 64 on MGA. (*Id.*, Ex 11 at p. 12 – 14 and 16). These interrogatories seek

27   information regarding MGA's allegations that Mattel copied, infringed or diluted

28   MGA's products:



EXHIBIT 13
PAGE 306

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Supplemental Interrogatory No. 51: "For each concept, design, product, product packaging or other matter that YOU contend MATTEL has copied, infringed, or diluted, including but not limited to those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), describe, fully and separately, each and every concept, design, product, product packaging or other matter of or by MATTEL that YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s), product(s), product packaging or other matter. Your answer should describe the Mattel concept, design, product, product packaging or other matter with specificity and in detail (including without limitation by product name, product number, SKU, or bar code number), and specify those elements or attributes of YOUR claimed concept, design, product, product packaging or other matter that YOU contend were copied, infringed or diluted by MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).

- Supplemental Interrogatory No. 52: "For each trade dress that YOU contend MATTEL copied, infringed, or diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade dress and, for each such product, separately state (a) the number of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue received by YOU from such SALES of each such product; (c) all costs YOU have incurred in connection with each product; including but not limited to YOUR cost of good sold, and (D) YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p. 13).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 13
PAGE 367

1      •   <u>Supplemental Interrogatory No. 53</u>: "For each MATTEL concept,
2         design, product, product packaging or other matter that YOU contend
3         is likely to cause confusion, to cause mistake, or to deceive as to
4         affiliation, connection, or association, or as to origin, sponsorship, or
5         approval, separately state all facts that support YOUR contention of
6         such, including but not limited to all facts that support YOUR
7         contention, if YOU so contend, that any of the SLEEKCRAFT
8         FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
9         with knowledge of such facts, and all DOCUMENTS that REFER OR
10        RELATE TO such facts." (<i>Id.</i>).
11     •   <u>Supplemental Interrogatory No. 54</u>: "For each concept, design,
12        product, product packaging or other matter that YOU contend
13        MATTEL copied, infringed or diluted, state all facts that support
14        YOUR contention, if YOU so contend, that such copying or
15        infringement was intentional or willful, and IDENTIFY all PERSONS
16        with knowledge of such facts, and all DOCUMENTS that REFER OR
17        RELATE TO such facts." (<i>Id.</i>).
18     •   <u>Supplemental Interrogatory No. 55</u>: "State all facts which support the
19        allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL
20        has "caused and continues to cause blurring and dilution of the
21        distinctive look of MGA's products and trade dress," and IDENTIFY
22        all PERSONS with knowledge of such facts, and all DOCUMENTS
23        that REFER OR RELATE TO such facts." (<i>Id.</i>, Ex. 11 at p. 14).
24     •   <u>Supplemental Interrogatory No. 64</u>: "To the extent YOU have not
25        previously disclosed such information in a prior interrogatory response
26        YOU provided to Mattel, state all facts which support YOUR claims
27        against Mattel in THIS ACTION, and IDENTIFY all PERSONS with
28        knowledge of such facts, and all DOCUMENTS that REFER OR

EXHIBIT 13
PAGE 308

1         RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2         MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3 February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4 therefore stayed.   (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5       **C.**    **The Court Lifts The Stay On Phase 2 Discovery**

6         On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7 (Watson Decl., Ex. 13 at p. 2).  Mattel's counsel subsequently wrote to counsel for

8 MGA on January 20, 2009 to ask when MGA planned to serve the required

9 responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10 previously ordered answered. (*Id.*, Ex. 14).

11         Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12 parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64. (*Id.*,

13 Ex. 15 at pp. 2 – 3).  Counsel for the parties then spoke on February 6, 2009

14 regarding Mattel's eight trade dress interrogatories. (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15 During the conference, MGA stated, that it would provide responses to

16 Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17 "not later than 30 days after the Court decides the trade dress summary judgment

18 motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19         On February 18, 2009, the parties met and conferred regarding Mattel's

20 contemplated summary judgment motion concerning MGA's trade dress claims and

21 again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22 Ex. 23 at p. 1).  The next day, MGA informed Mattel that it would not agree to

23 provide further responses to the interrogatories. (*Id.*).  Rather, MGA said that it

24 planned to request a protective order to stay its obligation to respond and that it

25 would only provide responses:  (1) if their planned protective order was denied; or

26 (2) if the protective order is granted, 21 days after the Court decides Mattel's

27 summary judgment motion, to the extent any trade dress claims remain after that

28 decision. (*Id.*).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 13
PAGE 309

1   On February 26, 2009, the MGA Parties filed the Protective Order Motion.

2   Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application

3   on March 10, 2009.

4   **II.     THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER**

5   The Discovery Master first addresses the MGA Parties' Protective Order

6   Motion.

7   **A.     The Relief Sought By The MGA Parties**

8   The MGA Parties "seek a stay to defer responding to eight specific

9   interrogatories relating to MGA's trade dress claims until 21 days after the Court

10   rules on Mattel's [contemplated] summary judgment motion." (Motion for a

11   Protective Order, p. 5). "The MGA Parties also seek a stay of all discovery relating

12   to MGA's trade dress claims for the same period." (*Id.*).

13   **B.     Mattel's Opposition**

14   Mattel opposes the Protective Order Motion on five grounds.  First, Mattel

15   argues that the motion is inconsistent with the Court's January 6, 2009 order lifting

16   the stay on Phase 2 discovery. (Opposition, pp. 12 – 13).  Second, Mattel argues

17   that any request to stay discovery is not properly directed to the Discovery Master.

18   (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is

19   commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13

20   – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the

21   trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –

22   15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is

23   no corresponding undue burden placed on the MGA Parties. (*Id.*, pp. 16 – 20).

24   **C.     Legal Standard**

25   In general, parties may obtain discovery regarding any matter, not privileged,

26   that is relevant to the claim or defense of any party. (Fed. Rule Civ. P. 26(b)(1)).

27   The motion brought by the MGA Parties to stay discovery is made pursuant to

28   Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

EXHIBIT 13
PAGE 316

1    Rule 26(c) provides that a protective order may be issued "for good cause" and "to
2    protect a party or person from annoyance, embarrassment, oppression, or undue
3    burden or expense." (Fed. Rule Civ. P. 26(c)).

4        A district court is afforded considerable discretion in deciding whether to
5    issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,
6    130 (10th Cir. 1990). While it is within a district court's discretion to stay
7    discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367
8    F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*
9    *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.
10   June 11, 2008) ["Unless some compelling reason is presented, in the usual case
11   discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.
12   296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay
13   discovery even though dispositive motions are pending."]).

14       The underlying principle in determining whether to grant or deny a stay is
15   that "[t]he right to proceed in court should not be denied except under the most
16   extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio*
17   *Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of
18   the normal proceedings of a court should be the exception rather than the rule.

19       Nonetheless, a stay may be appropriate if "resolution of a preliminary motion
20   may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.
21   689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a
22   result of the ruling thereon; where the facts sought through uncompleted discovery
23   would not affect the resolution of the motion, or where discovery on all issues of
24   the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at
25   298).

26       In deciding whether to stay discovery pending the resolution of a dispositive
27   motion, federal courts in California conduct the following inquiry: (1) Is the
28   pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 13
PAGE 311

- 8 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1  the issue at which discovery is directed," and, if so (2) can the pending dispositive

2  motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*

3  *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)). If the court

4  answers both questions in the affirmative, it may then analyze other factors,

5  including the likelihood that the dispositive motion will be granted, (*id.*), and/or

6  "(1) plaintiff's interests in proceeding expeditiously with the civil action and the

7  potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the

8  convenience to the court; (4) the interests of persons not parties to the civil

9  litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,

10  2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11      **D.    Analysis**

12      The MGA Parties' primary argument in favor of the requested stay is that, in

13  the event Mattel's contemplated motion for summary judgment is granted, "the

14  Trade Dress Interrogatories may prove unnecessary or may be substantially

15  narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).

16  The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when

17  a dispositive motion, such as a summary judgment motion, 'would obviate the need

18  for discovery.'" (*Id.*, p. 11 (citation omitted)).

19      The Discovery Master finds this rationale unpersuasive for the following

20  reasons.

21      **1.    The Discovery Master Does Not Have the Power To Issue**

22           **The Requested Stay**

23      First, the Discovery Master does not have authority to render a ruling that

24  could directly override the Court's scheduling order and delay the Phase 2 trial.

25  While the Discovery Master has been appointed to resolve "any and all . . .

26  discovery disputes in this case,"[1] and may issue orders that indirectly impact the

27  _____

28  [1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master Order) and the Order appointing the current Discovery Master dated January 6, 2009.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  13
PAGE  312

1   scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2   is nothing in the order appointing the Discovery Master that authorizes him to

3   override the scheduling order directly.[3]  Indeed, the power to control scheduling in

4   this matter is vested with the Court, as evidenced by the scheduling order issued by

5   it on February, 11, 2009.[4]  (Order dated February 11, 2009, p. 2).  Because the

6   Court, not the Discovery Master, established the applicable discovery cut-off and

7   trial dates for Phase 2, (*id.*), the Discovery Master cannot issue a stay that overrides

8   that order.

9               **2.      The Court Previously Indicated That the Parties Should**

10                        **Proceed With Phase 2 Discovery.**

11          Second, the Court advised the Discovery Master on February 11, 2009 that

12   "[t]here is no stay on discovery.  Period." (Reporter's Transcript of Proceedings,

13   February 11, 2009, p. 97:15).  It further instructed the Discovery Master "in no

14   uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15   (*id.*, p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16   precluding *any* discovery that is properly sought for the trial that is scheduled," (*id.*,

17   p. 101:22:24 [emphasis added]).  While these statements admittedly arose in the

18   context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19   nevertheless believes that they are instructive of the Court's view that any request

20

21   [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's

22   ruling might impact upon the Court's scheduling order does not relieve the parties of following
     this procedure.")

23
     [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is

24   clear, because the requested stay is of an indefinite duration.  Although the MGA Parties request a
     stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,

25   (Protective Order Motion, p. 5), no such motion is pending before the Court.  Nor is there a
     hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be

26   able to issue a ruling disposing of it.

27   [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the

28   current Discovery Master.

EXHIBIT   13
PAGE   313

- 10 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2   extraordinary circumstances not present here.

3        **3.**    **There Is No Dispositive Motion Pending**

4        Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5   because no dispositive motion is pending before the Court. The MGA Parties

6   concede in their moving papers and again in their Reply that Mattel has merely

7   represented that it will file a summary judgment motion at some point in the future.

8   (Protective Order Motion, p. 4; Reply, p. 4). In the absence of a *pending*

9   dispositive motion, there is no basis for granting the requested stay.[5]

10        **4.**    **Mattel's Contemplated Summary Judgment Motion Will**

11                   **Not Dispose Of MGA's Trade Dress Claims**

12        Even assuming a dispositive motion had been filed with the Court, the MGA

13

14   [5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case,

15   the party seeking the discovery stay was the party who had brought the pending dispositive motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant

16   who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St.*

17   *Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,

18   alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for

19   summary judgment, properly sought and obtained a protective order staying discovery propounded on it by plaintiffs.]); *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on

20   discovery upheld in favor of party who raised immunity issue via a summary judgment motion]; *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant

21   who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend

22   to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary

23   judgment motion, which the MGA Parties believe should be denied, is resolved.

24        Further, the five cases cited by the MGA Parties all involved situations where a dispositive

25   motion had already been filed with the Court. (*Id.*)

     Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage.

26   Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*,

27   506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at 282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for

28   several years.

EXHIBIT 13
PAGE 314

- 11 -

1   Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2   of the entire case, or at least dispositive on the issue at which discovery is directed."

3   (*Qwest Communications Corp.*, 2007 WL 2288299, *2).  Mattel's contemplated

4   summary judgment motion will not dispose of MGA's trade dress claims because it

5   is undisputed that MGA's trade dress claims "concern products and other matters

6   that will not be the subject of Mattel's contemplated motion."  (Opposition, p. 15;

7   *see also* Reply p. 11 n.6).

8        The MGA Parties nevertheless argue in their Reply that "it would make far

9   more sense for MGA to compile responsive information once the summary

10   judgment motion is decided and the full scope of the trade dress claims is settled."

11   (Reply, p. 11 n. 6).  Phrased differently, the MGA Parties argue not that the

12   summary judgment motion may moot all of the requested discovery, but only that,

13   if granted, it would narrow the scope of the trade dress discovery.  Because

14   discovery will inevitably be required on certain portions of MGA's trade dress

15   claims, this is not a situation where the contemplated motion is potentially

16   dispositive of the issue at which the discovery is directed.  Accordingly, the stay

17   requested by the MGA Parties can be denied for that reason alone.

18        **5.      Other Factors Also Weigh Against Issuing The Requested**

19              **Stay**

20        Finally, many, if not all, of the other factors a court may consider in deciding

21   whether a stay is appropriate pending the resolution of a dispositive motion weigh

22   in favor of denying the requested stay.

23        **a.      The Merits Of The Dispositive Motion**

24        As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25   of the additional factors a court may consider is whether the merits of the pending

26   dispositive motion make it likely that the motion will be granted.  Although the

27   Discovery Master cannot perform such an analysis here (because no dispositive

28   motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 13
PAGE 315

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2   (Protective Order Motion, p. 13). In light of this statement, the MGA Parties are

3   precluded from arguing that it is likely Mattel's motion will be granted in order to

4   justify their request for a stay. Accordingly, the Discover Master finds that – based

5   on the record presented – this factor weighs against issuing the requested stay.[6]

6             **b.**    **Prejudice To Mattel**

7        Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8   delaying the ultimate resolution of the matter and increasing litigation costs. As

9   explained above, the stay requested by the MGA Parties is of an indefinite duration

10   and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11   after the stay is lifted. Moreover, Mattel could be forced to depose the same

12   witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13   trade dress claims and later with respect to those trade dress issues that remain

14   following the disposition of Mattel's contemplated summary judgment motion).

15   For these reasons, this factor weighs against staying the trade dress discovery.

16             **c.**    **The MGA Parties Have Not Demonstrated They Will**

17                      **Suffer Any Undue Burden**

18        While the MGA Parties claim that it will "be extremely difficult, time-

19   consuming and costly" to respond to the eight trade dress interrogatories at issue,

20   (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21   have to be taken regardless of the outcome of Mattel's anticipated summary

22   judgment motion. Further, while it is possible that Mattel's contemplated summary

23   judgment motion, if granted, could simplify the issues for trial and reduce the costs

24   imposed on the MGA Parties, it is also possible that the resolution of the motion

25   will not have any bearing on the scope of the discovery needed in this case.

26   Regardless, a party is always burdened with costs when it voluntarily chooses to

27

28   [6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated
     summary judgment motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 13
PAGE 316

- 13 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    pursue a claim, whether the case ultimately is dismissed, summary judgment is

2    granted, the case is settled, or a trial occurs. If the MGA Parties wish to avoid these

3    costs in connection with MGA's trade dress claims, MGA can always dismiss them.

4    Because any hardship that MGA might face is one of its own making, any burden

5    imposed on it in having to respond to the discovery is justified. Accordingly, this

6    factor weighs against issuing the requested stay.

7                    **d.    The Interests Of The Judiciary And The General**

8                            **Public**

9          The Court, using funds supplied by the general public, has already expended

10   a great deal of effort and resources in this matter, including conducting a lengthy

11   trial in Phase 1. The Court further issued a scheduling order that established a

12   specific trial date and discovery cut-off for Phase 2. Consequently, the general

13   interests of controlling the court's docket and the fair and speedy administration of

14   justice weigh heavily in favor of denying the requested stay.

15         **E.    Summary Of Ruling Regarding The Protective Order Motion**

16         For all of the foregoing reasons, the MGA Parties have failed to meet their

17   burden of demonstrating that good cause exists for issuance of a protective order

18   staying their obligation to respond to the subject discovery.

19   **III.   MATTEL'S MOTION TO COMPEL**

20         Having denied the Protective Order Motion, the Discovery Master now turns

21   to Mattel's Motion To Compel.

22         **A.    Interrogatory Nos. 43 and 44**

23                 **1.    Orders Issued By The Prior Discovery Master**

24         As explained in Section I.A., above, this is not the first time that Mattel has

25   moved to compel responses to Interrogatory Nos. 43 and 44. The prior discovery

26   master ordered MGA to supplement its responses to these interrogatories as part of

27   his February 15, 2008 order ("February 15, 2008 Order"). (Watson Decl., Ex. 8 at

28   pp. 11 – 12). Seven days after the deadline specified in the February 15, 2008

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT 13
PAGE 317

- 14 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2   served objections stating that the discovery in question related to Phase 2 and had

3   been stayed pursuant to a February 4, 2008 order from the Court.  (*Id.*, Ex. 9 at pp.

4   7 – 16).  After having been advised of the stay imposed by the Court on

5   February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6   on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7   obligation to supplement their responses . . . [was] stayed until further order of the

8   district court lifting the stay on Phase 2 discovery."  (*Id.*, Ex. 10 at p. 3).

9              **2.      The Relief Sought By Mattel**

10        Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11   44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12   requests that the Discovery Master enforce the February 15, 2008 Order and require

13   MGA to supplement its responses.  (Motion To Compel, pp. 9 – 10).

14             **3.      MGA's Opposition**

15        In its Opposition, MGA relies on two grounds for refusing to provide

16   responses to Interrogatory Nos. 43 and 44.  First, MGA argues that it is not in

17   violation of the prior discovery master's February 15, 2008 Order because that

18   order was subsequently stayed by the April 22, 2008 Order, which "did not include

19   any specific date, or time period, after the Phase 2 stay was lifted within which

20   MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21   9 and 11).  Second, MGA argues that it has not refused to answer Interrogatory

22   Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23   either provide further responses following the denial of that motion or, in the event

24   the motion is granted, after the Court decides Mattel's contemplated summary

25   judgment motion.  (*Id.*, pp. 11 – 12).

26        The Discovery Master does not find either of these arguments persuasive.

27             **a.      The April 22, 2008 Order**

28        While MGA is correct that the prior discovery master temporarily stayed the



EXHIBIT   13
PAGE   318

1   enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2   argument that it does not have any obligation to supplement the responses to

3   Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4   time within which MGA had to provide responses is not supported by the record.

5        As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6   supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7   February 15, 2008 Order returned.  Indeed, the plain language of the prior

8   discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9   supplement their responses . . . are hereby stayed **until further order of the**

10  **district court lifting the stay on Phase 2 discovery.**" (Watson Decl., Ex. 10 at p.

11  3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12  January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13  of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14       Further, MGA had, at most, eleven days following the lifting of the stay on

15  Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16  (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17  15, 2008 Order required MGA to provide its supplemental responses within eleven

18  days of the order (i.e., on February 26, 2008).  (*Id.*, Ex. 8 at p. 22).  Giving MGA

19  the benefit of the doubt and assuming that all eleven of those days remained at the

20  time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21  provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22  plus 2 additional days because January 17, 2009 falls on a Saturday).   Because

23  more than three months have passed without a response, MGA has not complied

24  with the terms of the prior discovery master's February 15, 2008 Order.

              **b.     MGA's Offer To Produce The Supplemental**

26                     **Responses Following The Disposition Of The**

27                     **Protective Order Motion**

28       The contention that MGA somehow remedied its failure to supplement its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT 13
PAGE 319

- 16 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2   following the ruling on the Protective Order Motion is likewise unavailing. (*Id.*,

3   pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found

4   none, supporting the proposition that a party may refuse to respond to an

5   interrogatory after it has been ordered to do so by subsequently filing a motion for a

6   protective order. Nor would such a rule be logical, as it would permit the party

7   ordered to respond to thereby nullify the effect of the court order. Regardless, the

8   Discovery Master denied the Protective Order Motion and finds that it cannot be

9   used as a basis for failing to comply with the February 15, 2008 Order.

10              **4.      Conclusion**

11         For all of the foregoing reasons, MGA must promptly provide full and

12   complete responses to Interrogatory Nos. 43 and 44.

13         **B.    Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**

14                **And 44**

15         In its Motion To Compel, Mattel also requests that the Discovery Master

16   sanction MGA in the amount of $4,515 for failing to comply with the prior

17   discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In

18   response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19   "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20   only when, and MGA had already brought the 'when' question to the Discovery

21   Master one week before Mattel filed the instant motion to compel" as part of its

22   Protective Order Motion. (Opposition, p. 13). However, the fact that one party has

23   moved for a protective order does not prevent the party opposing that motion from

24   subsequently filing a motion to enforce a prior court order, particularly where the

25   latter motion requests that the Discovery Master compel MGA to provide responses

26   to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27   while the motion for a protective order indicates that MGA will respond to the

28   interrogatories, at the earliest, "within 21 days after" the denial of the Protective

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -                          ORDER NO. 17
                         [Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT   13
PAGE   320

1    Order Motion, (Protective Order Motion, p. 10).

2        MGA next argues that sanctions should be denied because its Protective

3    Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4    "it would be a perversion of every conceivable notion of economy and efficiency,

5    not to mention fairness . . . if a motion to compel could be used to sanction a party

6    for exercising its legal right to seek a protective order." (Id., p. 14).  But these

7    arguments are not persuasive for the same reasons discussed in Section II and

8    Section III.A.3.b., above, namely that the Protective Order Motion is not

9    meritorious and MGA has not cited any legal authority supporting the proposition

10   that a party may refuse to respond to an interrogatory after it has been ordered to do

11   so by subsequently filing a motion for a protective order.

12       Finally, MGA argues that it "has not appealed, challenged or otherwise

13   refused to obey" the prior discovery master's order, (id.), but merely requested that

14   the "Discovery Master temporarily defer the time to respond . . . based upon the

15   new, intervening circumstances that arose between the issuance of that order and

16   the lifting of the discovery stay," (id., p. 15).  However, this is just another way of

17   saying that MGA refused to supplement its responses as required by the prior

18   discovery master due to its mistaken belief that the Protective Order Motion

19   obviated the need to comply with the February 15, 2008 Order.  Because that

20   argument has already been rejected, MGA has failed to show that it had substantial

21   justification for opposing the enforcement of the February 15, 2008 Order.

22   Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23   **C.    Supplemental Interrogatory Nos. 51 – 55 And 64**

24       **1.    The Relief Sought By Mattel**

25       Mattel next requests that the Discovery Master overrule MGA's objections

26   and compel it to provide full and complete responses to Supplemental Interrogatory

27   ───────────────

28   [7] Having determined that MGA lacked substantial justification for failing to comply with the February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT  13
PAGE  321

- 18 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    Nos. 51 – 55 and 64. (Motion To Compel, pp. 12 – 21).

2            **2.    MGA's Opposition**

3            In its Opposition, MGA initially argues that Mattel failed to meet and confer

4    in good faith. (Opposition, pp. 16 – 18). It further argues that even if Mattel did

5    meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6    they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7    other interrogatories, (4) improperly seek expert witness information, privileged

8    information, and information better known to Mattel, and/or (5) impose an undue

9    burden) are meritorious and should be sustained. (*Id.*, pp. 18 – 26).

10           **a.    Purported Failure To Meet And Confer**

11           Because it could dispose of the outstanding discovery issues related to

12   Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13   addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14   to filing its motion.

15           MGA argues that Mattel did not meet and confer in good faith because its

16   "meet and confer letter concerning these interrogatories is utterly devoid of any

17   reference whatsoever to the putative impropriety of the objections it now challenges

18   . . ." (Opposition, p. 17). However, MGA admits that the parties did meet and

19   confer about certain issues regarding these interrogatories. (*Id.*, p. 18 ["While the

20   parties did meet and confer about the timing of MGA's response to Interrogatory

21   Nos. 51 – 55 and 64 . . ." (emphasis omitted)]). The record further reflects Mattel

22   sent a meet and confer letter and had multiple phone calls with MGA's counsel

23   about these specific interrogatories. (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24   In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25   "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

27   ───────────────
     [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson
     Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and

28   ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



EXHIBIT 13
PAGE 322

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   Interrogatories] based on . . . any other objections . . ."  (Watson Decl., Ex. 15).

2   Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3   37's "good faith" meet and confer requirement.

4         **b.   Definitional Objections**

5       MGA's first substantive argument in opposition to Supplemental

6   Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7   ambiguous because of the manner in which the term "SALES" is defined.

8   (Opposition p. 19).  MGA likewise asserts that Supplemental Interrogatory Nos. 51

9   – 55 are ambiguous because of the definition used for the term "MATTEL."  (*Id.,*

10   pp. 19 – 20).  However, MGA has not cited any legal authority in support of its

11   position.

12       Moreover, MGA did not set forth the grounds for its objections "with

13   specificity," at the time it objected to the interrogatories, as required by Federal

14   Rule of Civil Procedure 33(b)(4).  To the contrary, it merely "incorporate[d]

15   General Objection Nos. 14 – 15 (regarding Definitions), including without

16   limitation its objection to the definition of the term 'MATTEL" for Supplemental

17   Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18   "SALES" with respect to Supplemental Interrogatory No. 52 (*id.,* pp. 5 – 6).  This

19   incorporation by reference of a list of general objections is insufficient to preserve

20   an objection.  (*Convertino v. U.S. Dept. of Justice,* 565 F.Supp.2d 10, 12 – 13

21   (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC,* 2008 WL 2714422, *2 (E.D.Va.

22   July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.,* 2007 WL 2874423, *5

23   - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24       Regardless, the Discovery Master is not persuaded that MGA is unable to

25   understand the terms MATTEL and SALES.  Accordingly, the definitional

26   objections are overruled.  MGA must answer the interrogatories.[9]

27

28

---

[9] The prior discovery master repeatedly required MGA to respond to discovery that used these definitions, including Interrogatory Nos. 43 and 44.  (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT 13
PAGE 323

- 20 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1             **c.**     **Expert Witness Objection**

2        With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts

3 that it "has simply interposed an objection that preserves [its] right to rely on expert

4 testimony." (Opposition, p. 21). Since that is the full extent of MGA's expert

5 witness objection, the Discovery Master agrees that the objection, as limited by

6 MGA, is valid. What MGA cannot do is assert that this objection permits it to

7 withhold information that is now available to it. Accordingly, the objection is

8 sustained to the extent that MGA's interrogatory response merely includes a

9 reservation of rights to supplement the response during expert discovery.

10             **d.**     **Objection That The Information Is Better Known By**

11                  **Mattel**

12        Regarding Supplemental Interrogatory No. 51, MGA asserts that the request

13 for it to identify Mattel products by stock keeping number or bar code number is

14 objectionable because that information is better known to Mattel. (*Id.*, p. 21).

15 However, MGA cannot withhold information on the ground that Mattel knows

16 which people have knowledge of Mattel's purported copying of MGA's intellectual

17 property. Mattel is entitled to discover the information MGA possesses and the

18 factual bases of its trade dress claims.

19        As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks

20 it to identify all persons with knowledge of certain facts even though it does not

21 know everyone who may possess such information, (*id.*, pp. 21 – 22), it is

22 incumbent upon MGA to provide the information that is within its custody,

23 possession or control. In fact, MGA concedes that it will provide "whatever

24 information it has." (*Id.*, p. 22).

25             **e.**     **Compound Objection**

26        MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are

27 impermissibly compound. (Opposition, pp. 22 – 23). This contention is

28 unavailing. The questions in each interrogatory refer to one common theme and a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 13
PAGE 324

-21-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*

2   *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing

3   subparts directed at eliciting details concerning a 'common theme' should generally

4   be considered a single question"]). Accordingly, the objection is overruled.

### f.   Duplicative Objection

6   MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are

7   duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.

8   23 – 24). But MGA has failed to demonstrate that this is the case. As an initial

9   matter, MGA does not explain why Supplemental Interrogatory No. 51 is

10  duplicative of other interrogatories. Rather, it simply states that Mattel "does not

11  take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel

12  addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.

13  19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory

14  No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts

15  regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel

16  products it contends copied, infringed, or diluted MGA's products by SKU number,

17  as requested by Interrogatory 51."]). Because it has not analyzed Interrogatory No.

18  51, MGA's objection to that interrogatory is overruled.

19  MGA's claim that Supplemental Interrogatory No. 52 is duplicative of

20  Interrogatory No. 45 is also unpersuasive. Supplemental Interrogatory No. 52 seeks

21  MGA profit, costs and revenue associated with each trade dress MGA contends

22  Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas

23  Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and

24  to identify the profits, costs and revenue associated with each such product.

25  The questions are therefore not the same.[10] Accordingly, the objections are

26  ─────────────────

27  [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be able to respond to the latest interrogatories by cutting and pasting its responses to the prior interrogatories. However, as discussed below, MGA alleges that responding to Supplemental

28  Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  13
PAGE   325

-22-

1    overruled.

2              **g.    Undue Burden Objection**

3              MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4    unduly burdensome.

5              However, MGA has not provided any evidence in connection with its Motion

6    To Compel to support its claim of burden.  (*See Jackson,* 173 F.R.D. at 528-9 ["The

7    party claiming that a discovery request is unduly burdensome must allege specific

8    facts which indicate the nature and extent of the burden, usually by affidavit or

9    other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10   are unduly burdensome when Mattel merely seeks information regarding the extent

11   of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12   products, Mattel has the right to discover the scope of the alleged claims.

13   Accordingly, the objections are overruled.

14             **h.    Privilege Objection**

15             Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16   that it asserted a privilege objection merely to "preserve [its] ability to protect,

17   privileged documents and information . . . . [and to make] clear that it was not

18   waiving the attorney-client privilege . . .." (Opposition, p. 25).   Since that is the

19   full extent of MGA's privilege objection, the Discovery Master agrees that

20   objection as so limited is valid.  Accordingly, the objection is sustained on that

21   limited ground.

22             **3.    Conclusion**

23             For all of the foregoing reasons, MGA must promptly provide full and

24   complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25   limited above.

26             **D.    Summary Of Ruling Regarding The Motion To Compel**

27             Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



EXHIBIT   13
PAGE   326

1    request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2    granted.

3    IV.    **MATTEL'S *EX PARTE* APPLICATION**

4         Several days after Mattel filed its Motion to Compel on March 6, 2009,

5    Mattel filed its Application for issuance of an order to show cause regarding

6    contempt.  The Application addresses Interrogatory Nos. 43 and 44 (the

7    "Interrogatories") and is based on the same facts summarized above with respect to

8    the Motion to Compel and Protective Order Motion.  However, unlike the Motion

9    to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10   Master is not authorized to issue contempt sanctions.  By order dated March 12,

11   2009, the Court referred the Application to the Discovery Master, who was

12   instructed to review it in the first instance and recommend a disposition to the

13   Court.  (Order dated March 12, 2009, p. 1).

14        A.    **Basis For The Application**

15             1.    **Circumstances Warranting *Ex Parte* Relief.**

16        In the introductory section of its Application preceding the Memorandum of

17   Points and Authorities, Mattel sets forth the following grounds for *ex parte* relief:

18             [F]or two months, MGA failed and refused to produce Phase 2

19             discovery, including such discovery that was previously ordered.

20             MGA also has a history of flouting Court Orders, but remains

21             undeterred by prior warnings and prior awards of sanctions.

22             Absent prompt intervention by this Court, MGA will continue to

23             block even ordered Phase 2 discovery.  Furthermore, MGA's

24             conduct is a direct challenge to the authority of the court and the

25             Discovery Master, and additional delay would inappropriately

26             reward MGA for its refusals to comply with the [prior discovery

27             master's February 15, 2008] Order.

28   (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT   13
PAGE   327

- 24 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    In its Reply, Mattel offers the following as a further justification for bringing

2  the matter on an *ex parte* basis:

3    MGA has repeatedly employed the procedural tactic of refusing

4    to comply with discovery requests and forcing Mattel to return to

5    court for multiple successive orders and sanctions compelling

6    discovery.  In so doing, MGA effectively halts the discovery

7    process and deprives Mattel of crucial information to which it is

8    entitled. ... Requiring Mattel to repeat the process of filing a

9    regularly noticed motion would unduly reward MGA for its

10    refusal to comply with the [February 15, 2008] Order and

11    enhance MGA's ability to perpetually deprive Mattel of crucial

12    time in which to conduct discovery.

13  (Reply, pp. 3-4).

14        **2.    Circumstances Warranting Issuance Of An Order To Show**

15             **Cause**

16    In its Application, Mattel argues that, although MGA has improperly refused

17  to respond to all of the discovery referenced in the Motion to Compel (including the

18  Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to

19  the Interrogatories, because MGA had already been ordered to provide responses to

20  those Interrogatories pursuant to the prior discovery master's February 15, 2008

21  Order.  Mattel therefore argues that MGA's failure to provide responses to the

22  Interrogatories should be singled out for special treatment as contempt of the Court.

23        **3.    Relief Sought**

24    MGA seeks issuance of an order to show cause that MGA is in contempt, a

25  finding of contempt, and the following monetary relief:

26    • An award of  coercive sanctions against MGA in the amount of $5,000

27       for each day that MGA fails to produce full and complete responses to

28       Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 13
PAGE 328

- 25 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1   event that MGA does not comply within five days of the Court's

2   Order, the amount of coercive sanctions should be increased to

3   $10,000 per day (with all such per diem fine amounts being paid to the

4   Court); and

5   • An award of monetary sanctions against MGA in the amount of

6   $7,000, which represents a portion of the costs incurred by Mattel in

7   bringing the Application.

8   (Application, pp. i - ii).

9   **B.     Discussion**

10          **1.     *Ex Parte* Relief Is Not Justified**

11          As MGA notes, the Court's standing order indicates that *ex parte*

12   applications are "solely for extraordinary relief." This directive was underscored

13   by the Court's Discovery Master Order, which requires that a party applying for *ex*

14   *parte* relief must show that "good cause" exists for hearing any dispute "on

15   shortened time" and that it will "be prejudiced absent prompt resolution" of the

16   issue. (Discovery Master Order, pp. 4 – 5).

17          This standard is not satisfied here. Mattel does not adequately demonstrate

18   that it will be prejudiced if the underlying motion is heard according to regularly

19   noticed motion procedures. The discovery cut-off is still eight months in the future

20   (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21   argues that it would be unfair to require Mattel to seek relief by means of a

22   regularly noticed motion, given the relevant history:

23          Mattel *already* followed this course of action and already

24          obtained an Order that MGA produce amended interrogatory

25          responses. MGA refuses to obey that [February 15, 2008] Order.

26          Requiring Mattel to repeat the process of filing a regularly

27          noticed motion would unduly reward MGA for its refusal to

28          comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __13__
PAGE __329__

- 26 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    ability to perpetually deprive Mattel of crucial time in which to
2    conduct discovery.
3    (Reply, p. 4, emphasis in original).
4        Mattel's frustration is understandable; Mattel has already been through this
5    process twice (counting the pending motion to compel) with respect to the identical
6    interrogatories which are the subject of the Application.  However, Mattel's
7    assertion that it should be allowed to dispense with a noticed motion ignores one
8    important point: the Application seeks relief which both parties acknowledge is
9    entirely different in character than an award of ordinary monetary sanctions for
10   discovery abuses.  Unlike its motions to compel, the Application seeks a finding
11   that MGA has deliberately disobeyed a Court order and should be punished by an
12   award of coercive sanctions until it complies with the order.  This is the first time
13   Mattel has sought such relief, and MGA has never previously been provided the
14   opportunity to oppose the requested relief in connection with a regularly noticed
15   motion.  Thus, while Mattel's above quoted argument might have some application
16   if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not
17   justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.
18       Moreover, the chronology of events tends to negate the assertion that Mattel
19   is suffering immediate and irreparable prejudice from the delay occasioned by
20   MGA's failure to respond to the Interrogatories.  MGA has refused to respond to
21   the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,
22   2009.  Nevertheless Mattel did not file its Application until two months later, after
23   MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel
24   MGA to respond to the outstanding trade dress discovery, including providing
25   responses to the Interrogatories.  The timing of these events undermines Mattel's
26   argument that expedited relief is necessary.
27       In the absence of some exigency, the Discovery Master believes that the
28   severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13
PAGE 330

1   the time and opportunity to present their arguments in the context of a regularly

2   noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3   *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4   regularly noticed motion and because the Discovery Master is not inclined to

5   recommend that the Court grant the relief Mattel seeks at this time, I address the

6   substantive issues raised by the Application below.

7           **2.**    **MGA's Alleged Disobedience Of The Prior Order**

8              **a.**    **Legal Standard**

9      As the Ninth Circuit has observed:

10       Courts are invested with inherent powers that are 'governed not

11       by rule or statute but by the control necessarily vested in courts to

12       manage their own affairs so as to achieve the orderly and

13       expeditious disposition of cases.'

14  (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15  F.2d 363, 368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16  with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17  *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18  Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19  discovery order as contempt.

20      The Ninth Circuit has further observed that "courts have strictly adhered to

21  the principle that the power to punish for contempt is limited to '(t)he least possible

22  power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23  Cir. 1980) (citations omitted)).

24      Mattel acknowledges that it must meet an exacting standard in order to

25  prevail on its Application.  Specifically, the party seeking imposition of civil

26  contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27  contemnors violated a *specific and definite* order of the court." (*United States v.*

28  *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



EXHIBIT 13
PAGE 331

- 28 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)).  Further, any doubts

2    as to whether the requirements for civil contempt have been met in a particular case

3    must be resolved in favor of the party accused of civil contempt.  (*In re Chief*

4    *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5         In accordance with this standard, contempt sanctions will not be imposed

6    unless the language of the order allegedly violated is clear and unambiguous.

7    (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8    1982) (affirming district court's denial of applications to hold defendants in

9    contempt for violating terms of consent judgment where, among other things,

10   certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11   *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12   and for sanctions where the discovery at issue was open to interpretation: "Any

13   ambiguities or uncertainties in the court order must be read in a light favorable to

14   the person charged with contempt. ... Contempt power should not be used where

15   there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16   power of the court to punish for contempt should be used with caution and

17   deliberation.")).

18              **b.     Application To The Facts**

19         Mattel argues that MGA violated the February 15, 2008 Order, and that it

20   continued to do so for two months before the prior discovery master stayed MGA's

21   obligation to respond to the Interrogatories on April 22, 2008. (Application, p. 13).

22   That assertion is not accurate.  In granting MGA's motion for clarification of the

23   February 15, 2008 Order, the prior discovery master in essence retroactively found

24   that MGA should not have been ordered to immediately provide supplemental

25   responses because the Interrogatories involved Phase 2 issues and were therefore

26   subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27   the February 15, 2008 Order.

28         When the stay was lifted, on January 6, 2009, the Court did not set a new

EXHIBIT  13
PAGE  332

1   deadline for MGA to provide supplemental responses in compliance with the

2   February 15, 2008 Order, nor did Mattel request that either the Court or the current

3   Discovery Master do so.  However, one month after the stay was lifted, Mattel did

4   meet and confer with MGA in an attempt to obtain responses.  At that time, MGA

5   took the position that it would provide responses to the Interrogatories "not later

6   than 30 days after the Court decides the trade dress summary judgment motion

7   which Mattel has indicated it will be bringing." (Ex. 16 to Watson Decl. in support

8   of Application).  Three weeks later, MGA filed the Protective Order Motion

9   seeking a stay of its obligation to respond to the Interrogatories.

10        As set forth above, the Discovery Master finds that, in pursuing this course of

11   conduct instead of responding to the Interrogatories and other discovery that is the

12   subject of Mattel's Motion to Compel, MGA acted without substantial justification

13   and therefore grants Mattel's Motion To Compel and also awards sanctions against

14   MGA.  The question raised by the Application is whether MGA should *also* be

15   ordered to appear and show cause why it should not be held in contempt and subject

16   to further sanctions for failing to comply with the February 15, 2008 Order.

17        Since Mattel, as the moving party, has the burden of demonstrating by clear

18   and convincing evidence that MGA has committed civil contempt and should be

19   punished, Mattel must, in the first instance, identify the existence of a "specific and

20   definite" provision of the February 15, 2008 Order which MGA has violated.

21   (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22        The Discovery Master's [February 15, 2008] Order directed

23        MGA to provide full, complete and updated responses to

24        Interrogatories Nos. 43 and 44 within eleven days.  MGA did not

25        comply with that Order and refused to do so for two months

26        before the Discovery Master stayed MGA's obligation to respond

27        while the Court's Phase 2 stay was in place.

28   (Application, p. 13).  However, as indicated above, MGA's failure to provide the

EXHIBIT 13
PAGE 333

1  responses specified in the February 15, 2008 Order cannot reasonably be viewed to
2  be a violation of that order during the period of February 15, 2008 to April 22, 2008
3  because the prior discovery master himself retracted the portion of his ruling
4  requiring MGA to comply in response to MGA's motion for clarification.  In other
5  words, the prior discovery master found, in effect, that MGA had *properly* withheld
6  supplemental responses on the ground that the subject Interrogatories sought Phase
7  2 discovery, which had been stayed by the Court nearly two weeks *before* the prior
8  discovery master issued the February 15, 2008 Order.  Given the prior discovery
9  master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can
10  hardly be deemed to have been in violation of the February 15, 2008 Order while
11  the Court's stay of Phase 2 discovery was in place.  A party who believes a ruling is
12  in error has the right to seek clarification or reconsideration, and doing so is not
13  equivalent to willfully disobeying the court.

14      Mattel also argues that MGA "resumed" its violation of the February 15,
15  2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on
16  January 6, 2009.  While the Discovery Master does not agree that any violation
17  resumed on January 6, 2009, as set forth above, I do agree that MGA should have
18  promptly complied with the February 15, 2008 Order once the stay was lifted by
19  serving supplemental responses within 11 days of the lifting of the stay. *Lucero v.*
20  *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all
21  objections to interrogatories served before a stay was issued by failing to respond
22  within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240
23  (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be
24  complied with promptly.'").

25      However, today's ruling that MGA should have promptly provided responses
26  to the Interrogatories upon the stay being lifted by the Court is not equivalent to a
27  finding that MGA deliberately violated a "specific and definite" provision in the
28  February 15, 2008 Order.  That order arguably does not contemplate the situation


EXHIBIT  13
PAGE  334

1   which ensued after the order was issued, namely, the prior discovery master's

2   decision to suspend MGA's obligation to respond to the Interrogatories without

3   setting a new deadline to run from the lifting of the stay.

4        While it is reasonable to conclude, as the Discovery Master has done, that the

5   same 11-day deadline imposed by the February 15, 2008 Order would apply once

6   the stay was lifted, an inference, however reasonable, is not the same thing as an

7   express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8   (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9   proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10  within list of activities expressly forbidden by earlier protective order]; *Independent*

11  *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12  defendant's supposed "understanding," based on oral comments by the Court that

13  he was being ordered to request that search engines discontinue using infringing

14  phrase, was not the same as express provision of injunction and could not serve as

15  basis for civil contempt]).  Further, as noted above, any doubts regarding

16  disobedience of a court order are to be resolved in favor of the party charged with

17  contempt.  Accordingly, the Discovery Master declines, under the applicable case

18  law and on the record presented, to find that MGA deliberately disobeyed the

19  Court, thereby meriting sanctions for civil contempt.  The Discovery Master also

20  declines to recommend that the Court issue the requested order to show cause.

21       However, as set forth in the Disposition section below, the Discovery

22  Master's ruling today *does* contain an express deadline by which MGA must

23  respond fully and without objection to the Interrogatories (as well as the other

24  discovery that is the subject of Mattel's Motion to Compel).  If MGA fails to

25  comply with the express, definite deadline imposed by this Order, the Discovery

26  Master reserves the right to recommend that the Court impose appropriate sanctions

27  from the date of MGA's non-compliance should Mattel renew its request for an

28  order to show cause regarding contempt by filing a noticed motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 13
PAGE 335

1  **V.      DISPOSITION**

2      A.      MGA's Protective Order Motion is **DENIED**.

3      B.      Mattel's Motion To Compel is **GRANTED**, except as limited above.

4  MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10)

5  days of this Order, subject to any applicable confidentiality designations available

6  under the Protective Order.  MGA's responses to Supplemental Interrogatories Nos.

7  51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any

8  applicable confidentiality designations available under the Protective Order.

9      C.      Mattel's request for sanctions against MGA in connection with its

10  Motion To Compel is **GRANTED**.  MGA shall pay $4515 to Mattel within ten (10)

11  days of this Order.

12      D.      MGA's request for sanctions in connection with Mattel's Motion To

13  Compel is **DENIED**.

14      E.      Mattel's Application for issuance of an order to show cause regarding

15  contempt is **DENIED,** without prejudice to any noticed motion for an order to show

16  cause regarding contempt that Mattel may deem appropriate in the event that MGA

17  fails to comply with any provision of the present Order.

18  Dated:  April 14, 2009

19

20               By:   /s/ Robert C. O'Brien

21                   ROBERT C. O'BRIEN

                 Discovery Master

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  13
PAGE  336

- 33 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]