1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12                                        Consolidated with
            Plaintiff,                    Case No. CV 04-09059
13                                        Case No. CV 05-02727
        vs.
14                                        Hon. Stephen G. Larson
    MATTEL, INC., a Delaware
15  corporation,                          [PUBLIC REDACTED] MATTEL,
                                          INC.'s EX PARTE APPLICATION
16          Defendant.                    FOR AN ORDER TO SHOW CAUSE
                                          RE: OMNI 808's FAILURE TO
17                                        COMPLY WITH COURT ORDER OR,
    _____           IN THE ALTERNATIVE, FOR AN
18  AND CONSOLIDATED ACTIONS              ORDER SHORTENING TIME TO
                                          HEAR MOTION FOR SUCH RELIEF;
19                                        AND

20                                        MEMORANDUM OF POINTS AND
                                          AUTHORITIES
21
                                          [Declarations of Michael T. Zeller and
22                                        Jon Corey filed concurrently herewith]

23                                        Hearing Date: TBA
                                          Time: TBA
24                                        Place: TBA

25                                        **Phase 2**
26                                        Discovery Cut-off: December 11, 2009
                                          Pre-trial Conference: March 1, 2010
27                                        Trial Date: March 23, 2010

28

1    Mattel, Inc. ("Mattel") hereby respectfully applies ex parte, pursuant to

2    Federal Rule of Civil Procedure 45(e) and the Court's inherent authority, for an Order

3    To Show Cause with respect to Omni 808 Investors, LLC's ("Omni 808") failure and

4    refusal to comply with the Discovery Master's Order of March 10, 2009 (the "Order")

5    requiring Omni 808 to produce documents no later than April 9, 2009.   In the

6    alternative, Mattel seeks an order shortening time to hear a motion seeking such relief.

7    Mattel makes this Application on the grounds that Omni 808 has failed and

8    refused to comply with the Order.   Documents recently produced by third parties

9    demonstrate that--directly contrary to Omni 808's prior representations to the Court and

10   the Discovery Master--Omni 808 is affiliated with MGA Entertainment, Inc. ("MGA")

11   and largely funded by Isaac Larian.   The MGA Parties have a long history of flouting

12   Court Orders in order to obstruct Mattel from obtaining discoverable information.

13   Omni 808's deliberate refusal to produce the ordered documents is interfering with

14   Mattel's ability to obtain relevant information and conduct necessary follow-up

15   discovery within the deadlines established by the Court.   It has been more than three

16   months since Mattel served the underlying subpoena, and well over a month since the

17   Discovery Master's Order compelling Omni 808 to produce documents, yet Mattel has

18   not received a single document from Omni 808.   Additional delay will encourage

19   disrespect and disregard of duly issued Orders, further prejudice Mattel's ability to

20   complete discovery, and wrongly reward Omni 808 and its affiliates for refusing to

21   comply with the Discovery Master's Order.   Absent ex parte consideration of this

22   Motion, Omni 808 will have effectively managed to grant itself a unilateral extension

23   of the Discovery Master's Order, providing Larian and MGA additional time to conceal

24   and transfer assets and further increasing the likelihood that discovery and trial in this

25

26

27

28

1  matter will be delayed.  Accordingly, good cause exists to seek this relief on an <u>ex parte</u>

2  basis, and Mattel requests that this Court:[1]

3      (1)    issue an Order to Show Cause regarding Omni 808's failure and

4  refusal to comply with the Order;

5      (2)    adjudge Omni 808 to be in contempt of Court;

6      (3)    award coercive sanctions against Omni 808 in the amount of $5,000

7  for each day that Omni 808 fails to produce responsive documents as mandated by the

8  Order, and, in the event that Omni 808 does not comply within five days of the Court's

9  Order, the amount of coercive sanctions should be increased to $10,000 per day (with

10  all such per diem fine amounts being paid to the Court); and

11      (4)    award monetary sanctions against Omni 808 in the amount of

12  $6,000, which represents a portion of the costs and fees incurred by Mattel in bringing

13  this motion.

14      Pursuant to <u>Local Rule</u> 7-19, on April 17, 2009 and times thereafter,

15  Mattel's counsel gave notice of this Application and the relief being sought to counsel

16  for Omni 808, Peter Villar, Esq., Bingham McCutchen LLP, Plaza Tower, 18th Floor,

17  600 Anton Boulevard, Costa Mesa, California 92626.  Counsel for Omni 808 has

18  indicated that Omni 808 opposes the relief sought in this Application.

19

20

21

22  [1]  As with its <u>ex parte</u> application for an order to show cause re MGA

23  Entertainment, Inc.'s failure to comply with the Discovery Master's Order of February 15, 2008, Mattel recognizes that the Court may refer this application to the Discovery Master for resolution.  However, because the relief Mattel seeks includes contempt

24  sanctions, which by the terms of the Discovery Master Stipulation are outside the bounds of the Discovery Master's authority, <u>see</u> Stipulation for Appointment of a

25  Discovery Master and Order, dated December 6, 2006 at ¶ 4, attached as Exhibit 5 to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec."), Mattel brings

26  this application to the Court.  As was true with Mattel's earlier application, Mattel has no objection to the Court's referral of this application to the Discovery Master for

27  resolution in the first instance through a Report and Recommendation if the Court so chooses.

28

1    This Application is based on this Notice of Application, the accompanying

2   Memorandum of Points and Authorities, the Declaration of Scott B. Kidman filed

3   concurrently herewith, the concurrently lodged declarations of Michael T. Zeller, David

4   Antolin and Jon Corey, the records and files of this Court and all other matters of which

5   the Court may take judicial notice.

6   DATED:  April 21, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

7

8                                   By /s/ Michael T. Zeller
9                                      Michael T. Zeller
                                       Attorneys for Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2896733.2

-iii-

EX PARTE RE OSC

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

PRELIMINARY STATEMENT .........................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT ..................................................................................................12

I.    OMNI 808 IS IN CLEAR VIOLATION OF THE DISCOVERY
      MASTER'S ORDER AND ONLY EX PARTE CONSIDERATION
      CAN ADDRESS SUCH A VIOLATION..........................................12

II.   THE COURT SHOULD HOLD OMNI 808 IN CONTEMPT.....................13

III.  MATTEL'S MOTION FOR RECONSIDERATION OF PORTIONS
      OF THE DISCOVERY MASTER'S ORDER DOES NOT EXCUSE
      OMNI 808'S NONCOMPLIANCE.....................................................14

IV.   THE COURT SHOULD IMPOSE COERCIVE SANCTIONS TO
      OBTAIN OMNI 808'S COMPLIANCE WITH THE ORDER ......................15

V.    THE COURT SHOULD AWARD SANCTIONS TO MATTEL IN
      THE FORM OF ATTORNEYS FEES..................................................17

CONCLUSION................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

Braley v. Campbell,
    832 F.2d 1504 (10th Cir. 1987) .................................................................. 18

Continental Ins. Co. v. Atlantic Cas. Ins. Co.,
    2008 WL 3852046 (S.D.N.Y 2008) ............................................................ 14

Donovan v. Mazzola,
    716 F.2d 1226 (9th Cir. 1983) .............................................................. 12, 14

Dunkin' Donuts Franchised Restaurants LLC v. Grand Central Donuts, Inc.,
    2009 WL 973363 (E.D.N.Y. 2009) ............................................................ 13

FTC v. Affordable Media LLC,
    179 F.3d 1228 (9th Cir. 1990) .................................................................... 13

General Signal Corp. v. Donallco, Inc.,
    787 F.2d 1376 (9th Cir. 1986) .............................................................. 13, 17

International Business Machines Corp. v. U.S.,
    493 F.2d 112 (2nd 1973) ............................................................................ 16

International Union, United Mine Workers v. Bagwell,
    512 U.S. 821, 114 S. Ct. 2552 (1994) .................................................. 16, 17

Koch v. The Burlington Northern & Santa Fe Railway Co.,
    2006 WL 2927665 (W.D. Wash. 2006) ...................................................... 17

Maness v. Meyers,
    419 U.S. 449 (1975) .............................................................................. 12, 14

Natural Gas Pipeline Co. v. Energy Gathering, Inc.,
    86 F.3d 464 (5th Cir. 1996) ........................................................................ 16

PPA Prods. Liability Litig.,
    460 F.3d at 1228 (citing Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002)) ................................................................................................................ 17

PaineWebber Inc. v. Acastar Ins. Co.,
    211 F.R.D. 247 (S.D.N.Y 2002) ................................................................ 14

RTC v. Dabney,
    73 F.3d 262 (10th Cir. 1995) ...................................................................... 18

Richmark Corp. v. Timber Falling Consultants,
    959 F.2d 1468 (9th Cir. 1992) .................................................................... 16

Roadway Express, Inc. v. Piper,
    447 U.S. 752 (1980) .................................................................................... 13

Soroko v. Aina,
    1998 WL 395139 (D.D.C. Jul. 09, 1998) .......................................................... 16

U.S. v. Westinghouse Elec. Corp.,
    648 F.2d 642 (9th Cir. 1981) ........................................................................... 16

Unigard Security Insurance Co. v. Lakewood Engineering &
    Manufacturing Corp.,
    982 F.2d 363 (9th Cir. 1992) ........................................................................... 13

United States v. Ayers,
    116 F.3d 991 (9th Cir. 1999) ........................................................................... 13

United States v. Innis,
    2005  WL 2155558 (E.D. Cal. 2005) ............................................................... 14

United States v. Rose,
    437 F. Supp. 2d 1166 (S.D. Cal. 2006) ........................................................... 13

United States v. United Mine Workers of  America,
    330 U.S. 258, 67 S. Ct. 677 (1947) .................................................................. 16

Whittaker Corp. v. Execuair Corp.,
    953 F.2d 510 (9th Cir. 1992) ..................................................................... 15, 16

**Statutes**

28 U.S.C. § 1927 ....................................................................................................... 1

Fed. R. Civ. P. 45(e) ........................................................................................... 13, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Court Orders must be complied with.  Omni 808 refuses to heed this indisputable rule, which is essential to the proper functioning of the judicial system and to ensuring fairness to all litigants.  Mattel served Omni 808 with the underlying subpoena more than three months ago, shortly after the Court lifted the Phase 2 discovery stay.  On March 10, 2009, the Discovery Master issued an order compelling Omni 808 to produce certain categories of documents no later than April 9, 2009.  That deadline came and went without Omni 808 producing a single responsive document.  In fact, it came and went without any comment or communication from Omni.

Only after Mattel was forced to inquire as to Omni 808's missing production did Omni 808 claim, as an excuse for its non-compliance with the Discovery Master's Order, that for reasons of claimed efficiency and convenience it should be allowed to withhold the documents it was ordered to produce because Mattel had filed a motion for reconsideration asking for *additional* categories of documents.  Omni 808 is not allowed to pick and chose what Orders it will comply with based on what is most efficient or convenient for it.  Absent an actual, existing stay, even appealed orders must be obeyed.  This rule has been enforced throughout this litigation: indeed, the Discovery Master recently held that MGA's filing of a motion for a protective order with a promise of future compliance could not excuse its non-compliance with an Order.  Here, by contrast, Omni 808 did not even seek, let alone obtain, a stay of the Discovery Master's Order.

Ex parte consideration of Mattel's motion is the only way to avoid rewarding Omni 808 for its blatant disrespect of the Discovery Master's Order.  Addressing Omni 808's defiance as a regularly scheduled motion would allow Omni 808 the equivalent of a unilateral stay for weeks or months, making a mockery of the specific deadline set by the Discovery Master and substantially delaying the progress of discovery in this case.  It would not only unfairly prejudice Mattel's efforts to conduct

1  follow-up discovery, but would afford MGA and Larian more time to transfer and

2  conceal assets, and increase the likelihood that this Court's scheduling Order will not

3  be met.

4          Omni 808 has not only attempted to conceal documents it is required to

5  produce, but has affirmatively misrepresented the facts relating to the financial

6  transactions orchestrated by MGA and Larian during the Phase 1 trial that are directly

7  relevant both to Phase 1 relief and the claims at issue in Phase 2.  Recently produced

8  documents show that -- contrary to Omni 808's representations to the Court and the

9  Discovery Master -- Omni 808 is affiliated with MGA and most of its funding came

10  from Isaac Larian and family.  Even the partial production Mattel received from other

11  third parties reveals that ████████████████████████████

12  ██████████████.  Omni 808 CEO Neil Kadisha has already been found, in a prior

13  court action, to have engaged in a series of unlawful activities designed to thwart the

14  judicial process.   MGA was already found in this case to have engaged in fraudulent

15  concealment.  MGA, Isaac Larian and their affiliates also have a well-document history

16  of refusing to produce discoverable information until ordered to do so; even then, it has

17  often taken multiple orders to secure compliance.  Mattel should not be forced to spend

18  months waiting for the next regularly scheduled hearing, or pursuing further order, to

19  obtain discovery that is already overdue, especially given the risk that further delay will

20  allow Larian and MGA to continue to manipulate their finances in the interim.

21          Mattel respectfully requests that this Court issue an Order to Show Cause,

22  hold Omni 808 in contempt, and impose escalating sanctions to ensure prompt

23  compliance with the Discovery Master's Order.  In the event that the Court does not

24  believe this matter should be decided on an ex parte basis, Mattel respectfully requests

25  that the Court issue an Order setting this application for expedited hearing.

26                              **Background**

27          **Mattel's Subpoenas to the Omni Parties and the IGWT Parties.**  After

28  the Court lifted the Phase 2 discovery stay, Mattel served subpoenas seeking the

1  production of documents on Omni 808 Investors, LLC,[2] OmniNet Capital, LLC[3] and

2  Vision Capital, LLC[4] (hereinafter, collectively, the "Omni Parties"), and IGWT Group,

3  LLC[5] and IGWT 826 Investments, LLC[6] (hereinafter, collectively, the "IGWT

4  Parties"), among others.  The MGA Parties filed a motion to quash the subpoenas, and

5  Mattel moved to compel the Omni Parties and the IGWT Parties to produce documents

6  responsive to the subpoenas on February 3, 2009.

7         On March 10, 2009, the Discovery Master issued an Order denying the

8  MGA Parties motion to quash and denying in part and granting in part Mattel's motion

9  to compel.[7]  Specifically, Mattel's motion was denied with respect to OmniNet and

10 Vision Capital.[8]  Mattel's motion to compel documents from Omni 808 was granted for

11 Request Nos. 1-3, 13, 15, and 17 with respect to documents relating to (1) the existence

12 of any debt owed by MGA to Omni 808, and (2) any communications between Omni

13 808 and MGA regarding that debt,[9] but was otherwise denied.[10]  The Discovery Master

14 granted all but one of Mattel's requests for documents from the IGWT Parties, with

15 certain limitations.[11]

16 **The Discovery Master Limited Discovery Based On The**

17 **Representation That MGA and Larian Did Not Have An Interest In The Omni**

18 **Parties**.  In limiting discovery against the Omni parties, the Discovery Master

19

20 [2]   Omni 808 Investors, LLC (Beverly Hills) and Omni 808 Investors, LLC (Los
   Angeles) subpoenas, dated January 9, 2009, attached as Exhibit 6 to Declaration of Jon
21 Corey In Support Of Mattel, Inc's Motion for Reconsideration of Phase II Discovery
   Matter Order No. 3, lodged concurrently herewith.
22 [3]   OmniNet Capital, LLC subpoena, dated January 9, 2009, Corey Dec., Exh. 7.
   [4]   Vision Capital, LLC subpoena, dated January 13, 2009, Corey Dec., Exh. 8.
23 [5]   IGWT Group, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 9.
   [6]   IGWT 826 Investments, LLC subpoena, dated January 12, 2009, Corey Dec.,
24 Exh. 10.
   [7]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Corey
25 Dec., Exh. 1.
   [8]   See id. at 28.
26 [9]   See id. at 28-29.
   [10]  See id. at 29.
27 [11]  See id. at 29-30.

28

07209/2896733.2

-3-

EX PARTE RE OSC

considered them "outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties."[12]  His conclusion was based directly on the Omni Parties' representation that Larian and MGA did not fund and are not affiliated with the Omni Parties.  The Discovery Master expressly noted:  "Based on the information presented at the February 11, 2009 hearing and in connection with the pending motions, it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities."[13]

The Discovery Master's analysis was "necessarily different" with respect to the IGWT Parties, as to which the Discovery Master granted Mattel's Motion in large part, because:  (1) the IGWT Parties are "affiliated with—if not wholly owned by—Larian"; (2) the requests to IGWT involve issues relevant to Phase 2, including "the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling"; and (3) the IGWT requests seek some Phase 2 documents "which presumably cannot be obtained from MGA."[14] Accordingly, the Discovery Master concluded that Mattel's requests were reasonably calculated to lead to the discovery of admissible evidence and granted Mattel's motion in large part.[15]

**The Evidence of Related-Party Transactions**.  In its Motion to Compel, Mattel offered evidence that MGA and Larian had actually engaged in numerous related-party transaction during the course of the Phase 1 trial, and during the damages phase in particular.  Mattel showed in its Motion that MGA's transactions with the Omni Parties appeared to be intentionally structured to conceal the ultimate source of

---

[12]  See id. at 16 n.13.
[13]  See id. at 4.
[14]  See id. at 25.
[15]  See id. at 29-30.

-4-

EX PARTE RE OSC

funds.   Mattel's showing was based on the following evidence, which was (and remains) essentially unrefuted:

- Omni 808 Investors, LLC, a single-purpose entity formed on August 12, 2008 during the damages phase of trial, had purported to purchase a substantial portion of the more than $300 million debt that MGA owed to Wachovia, taking an alleged security interest in certain MGA assets.[16]

- According to the Omni Parties' UCC Financing Statements, Omni 808 appears to be owned and funded by a company called Vision Capital, LLC which, like Omni 808, was formed during the damages phase of the trial.[17]

- The Omni Parties' UCC Financing Statements also claim that Vision Capital in turn obtained money to fund Omni 808, and presumably MGA, from a company called Lexington Financial Limited ("Lexington"). Lexington is an offshore company registered in the Caribbean island of Nevis, a country well-known for its corporate and banking secrecy laws.[18] Lexington also has an address in London at a "virtual office" location that provides a mail drop and answering service.[19]

---

[16] See UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Corey Dec., Exh. 11. More specifically, ███████████████████████████████████████████████████████████. See Supplemental Declaration of Michael Zeller iso (1) Mattel's Application for Receiver and (2) Mattel's Opposition to Omni 808's Application for Leave to Intervene, dated March 23, 2009 ("Supp. Zeller Dec."), at ¶¶ 13-16 and Exhs. 11-16, lodged concurrently herewith.

[17] See Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec., Exh. 12.

[18] See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 14.

[19] See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 15. Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 16.

- Fred Mashian, a Sunset Boulevard trust and estates lawyer, is identified as the Lexington contact on a UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with its ownership interest in Omni 808.[20]   Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008—three days after the jury's damages verdict against MGA and Larian.[21]

- 1525 South Broadway in Los Angeles—the address for Vision Capital provided in the August 29, 2008 UCC Financing Statement[22]—is the address of Neman Brothers & Associates.[23]   Leon Neman is a principal of Neman Brothers & Associates and owns the building at 1525 Broadway.[24]

- Leon Neman is Isaac Larian's brother-in-law and has served as a director of MGA.[25]   Mr. Mashian, the agent for Lexington Financial, is the listed agent for several entities that Leon Neman owns.[26]   Indeed, Rock-Hill Holdings, LLC, a Leon Neman entity that lists Mashian as its registered agent, also has a Delaware address that is the same as Vision Capital's claimed Delaware address.[27]

The Omni Parties nevertheless represented to the Discovery Master that their purported acquisition of the majority of MGA's debt was an "arm's length transaction" for which the MGA Parties did not provide funding or have an interest:

> What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt?  ***I can tell you there are none***.   This is a ready, fire, aim

---

[20]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13.
[21]   Id.
[22]   See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.
[23]   Id.
[24]   See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's Ex Parte Application to Intervene, dated February 5, 2009, at ¶ 6 ("Zeller Dec."), lodged concurrently herewith.
[25]   See Zeller Dec. ¶ 4.
[26]   See Zeller Dec. ¶ 11.
[27]   See Zeller Dec. ¶ 12.

situation.  The allegations that were made and were made publicly are unconscionable and can't be undone.[28]

**The Omni Parties Made Similar Representations To The District Court**.  The Omni Parties had made similar representations to the District Court when claiming that Omni 808 should be permitted to intervene because its interests are not aligned with those of MGA and Larian.  Omni 808 claimed that its ostensible acquisition of the Wachovia loan debt was "a straightforward, arm's-length business deal."[29]  When the Court directly inquired whether the funds for the transaction had come from MGA or Larian, the Omni Parties represented that they had not:

> THE COURT:  You're representing to the Court, though, that this was not MGA's money; that this was -- from wherever. it came from, it came from someplace else.
>
> MR. GORDINIER:  Your Honor, two things.  I've never met Mr. Larian, and I know less about MGA than almost everybody else.
>
> THE COURT:  I'm not asking about what you know from MGA but of what you know from your client.
>
> MR. GORDINIER:  What I know from my client is, he put in many millions of dollars.  He had a couple of investors with him to put in many millions of dollars.
>
> THE COURT:  Those investors and that money did not come from MGA?
>
> MR. GORDINIER:   That's the best of my understanding, Your Honor.  That's true.[30]
>
> * * *
>
> THE COURT:  Your representation, then, is that based on your information and belief, the proceeds for that were not proceeds -- I said MGA, but MGA, Isaac Larian, any other MGA entity.

---

[28]  See March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Corey Dec., Exh. 17 (emphasis added).
[29]  See Omni 808 *Ex Parte* Application for Leave to Intervene, dated February 3, 2009, at 2:6-7, Corey Dec., Exh. 18; see also id. at 10:1-15 (denying that Omni 808 and MGA are aligned).
[30]  See February 11, 2009 Hearing Transcript, at 71:16-72:5, Corey Dec., Exh. 19.

-7-

EX PARTE RE OSC

1  MR. GORDINIER:  As far as I know, Your Honor, this was structured by Mr. Kadisha and the monies went to Wachovia.

3  THE COURT:  I know that part.  The question is where the monies came from.

5  MR. GORDINIER: I know at least $50 million came from Mr. Kadisha and his immediate -- that's -- it's serious money, Your Honor. This was an arm's length transaction.[31]

In the March 10, 2009 Order, the Discovery Master relied on the Omni Parties' representations to the Court and to the Discovery Master to conclude that "it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities"[32] and limited Mattel's discovery from the Omni Parties on that basis.

**Documents Produced By Wachovia Following The Discovery Master's Order Reveal That The Representations Of The Omni Parties Were Incorrect**. On March 16, 2009, six days after the Discovery Master's Order,  non-party Wachovia Bank produced documents showing that the Omni Parties' representations to the Court and to the Discovery Master were not correct and that the Omni Parties are in fact affiliated with MGA and funded by Larian.  Among the newly-produced evidence is a copy of OmniNet's offer letter to Wachovia, dated July 29, 2008, relating to the ostensible loan acquisition.  In that letter, OmniNet stated that "████████████████████████████████████████"[33]

Similarly, Paragraph 3 of the "████████████████████" between MGA and Omni 808 produced by Wachovia states that █████████████████████████████████████████

---

[31] See id. at 78:9-19.
[32] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Corey Dec., Exh. 1.
[33] OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Corey Dec., Exh. 2 (emphasis added).

-8-

EX PARTE RE OSC

1  ████████████████████████[34]  Another agreement to which MGA was a party

2  specifically identifies and treats Omni as an "██████" of MGA.[35]  Additionally,

3  following the issuance of the Discovery Master's Order, Leon Neman -- who is Isaac

4  Larian's brother-in-law and has been a director of MGA -- belatedly admitted that he is

5  a principal of Vision Capital.[36]

6  **Documents Produced By The IGWT Parties Following The Discovery**

7  **Master's Order Further Confirm That The Representations Of The Omni Parties**

8  **Were Incorrect**.  Nonetheless, in papers dated April 2, 2009, Omni 808's counsel again

9  denied that MGA and Larian have any interest in these "Financing Entities."[37]

10

_____

[34]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Corey Dec., Exh. 1.

[35]  See Senior Promissory Note, dated September 3, 2008, Corey Dec., Exh. 4 (█████████████████████████████); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec., Exh. 5 (summarizing terms of Wachovia's Senior Note and stating that ███████████████████████████████████).

[36]  See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.

[37]  See Bingham McCutchen, LLP's Objections to and Motion to Strike Reply in Support of Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated April 2, 2009, true and correct excerpts from which are attached to the Second Supplemental Declaration of Michael T. Zeller ISO (1) Mattel's Application for Receiver and (2) Mattel's Opposition to Omni 808's Application for Leave to Intervene lodged concurrently herewith ("Second Supplemental Zeller Dec.") as Exh. 1 at 7 ("[T]he excerpts from the Wachovia documents . . . say *nothing* about MGA's or Mr. Larian's ownership interest in the Financing Entities because they have no such interest.") (emphasis added).  Further, Bingham has represented that "***IGWT has no interest in OMNI 808***" and no "right to make any decisions with respect to Omni 808's investment in MGA's debt obligation".  Bingham McCutchen, LLP's Reply In Support Of Objections to and Motion to Strike Mattel, Inc.'s Reply in Support of Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated April 14, 2009, true and correct excerpts from which are attached to the Second Supplemental Zeller Dec. as Exhibit 3 at 9-10 (emphasis added).  See also Second Supplemental Zeller Dec., Exh. 1 at 7-8 ("Second, Mattel references a sentence in a 'secured Delayed Draw Demand Note' between MGA and Omni 808 dated October 16, 2008, which states that 'OMNI shall have previously received the proceeds . . . of a loan in the principal amount of, and for the purpose of funding, such requested Draw made by IGWT 826 Investments, LLC . . . to OMNI 808 under that Senior Promissory Note dated October 16, 2008 by and between OMNI 808, as maker, and IGWT.' (Hauss Dec. Ex. 5). . . . This related to an unsecured loan from IGWT 826 Investments, LLC ('IGWT') to Omni 808 apart from and after the original transaction.  Like MGA and Mr. Larian, **IGWT has no ownership interest in, or control over, OMNI 808, and no equity interest in, or** (footnote continued)

However, documents recently produced by the IGWT Parties pursuant to the Discovery Master's Order show that Larian has provided, at a minimum, most of Omni 808's funding, including through IGWT.  Significantly, those documents demonstrate that -- directly contrary to counsel's representations that Larian did not fund Omni 808's purported acquisition of the Wachovia debt -- ████████████████████████

████████████████████████████████████████████████████████████████████

████████ [38] Other documents recently produced by IGWT confirm that ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████".[39]  Another document in IGWT's recent production suggests that the ultimate source of funds was or included MGA.  In an August 28, 2008 email, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████"[40]

Documents in IGWT's recent production also show that ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

right to make any decisions, with respect to OMNI 808's investment in MGA's debt obligations.") (emphasis added).

[38] See Second Supp. Zeller Dec, ¶ 7 and exhibits referenced therein.
[39] See Id. at Ex. 8 (email from Peter Carlson to Moshe Kupietzky and others, dated August 28, 2008, so stating at IGWT 07750).
[40] A true and correct copy of this email, so stating at IGWT 07484-85, is attached to the Second Supp. Zeller Dec. as Exhibit 9 (emphasis added).
[41] Second Supp. Zeller Dec., ¶ 11 and exhibits referenced therein.

1 ████████████████████████████████████████

2 ████████████████████████████████.[42]

3 **Mattel's Motion For Reconsideration Of Portions Of The Discovery**

4 **Master's Order**.  On March 24, 2009, Mattel filed a motion for reconsideration with

5 respect to certain categories of documents the Discovery Master did not order Omni

6 808 to produce based on his conclusion that MGA and Larian had no interest in the

7 Omni Parties.[43]   The motion for reconsideration is based on the  newly produced

8 documents showing that the Omni Parties' representations in that regard were neither

9 accurate nor candid.[44]  That motion is set to be heard by the Discover Master on May 5,

10 2009.  The motion seeking additional documents, however, in no way challenges, much

11 less negates, the obligation of Omni 808 to comply with the more limited discovery

12 order issued on March 10.

13 **The Omni Parties Refusal To Comply With The Other Portions Of**

14 **The Discovery Master's Order**.  Omni 808 has nonetheless failed and refused to

15 produce the documents the Discovery Master ordered it to produce by no later than

16 April 9, 2009.  Specifically, Omni 808 failed to produce documents relating to the

17 existence of any debt owed by MGA to Omni 808 or any communications between

18 Omni 808 and the MGA parties regarding any such indebtedness by April 9, 2009 as

19 mandated by the Discovery Master's Order.  On April 16, 2009, Mattel sent a letter to

20 Omni 808's counsel pointing out that Omni 808 was in violation of the Discovery

21 Master's Order and asking whether it intended to bring itself into compliance.[45]  On

22 April 17, 2009, Omni 808 responded that it was "neither efficient nor necessary" to

23 search for or produce the ordered documents until the Discovery Master ruled on

24

25 [42]   Id. at ¶ 12 and exhibit referenced therein.
   [43]   See Mattel's Motion for Reconsideration, dated March 24, 2009, Kidman Dec.,

26 Ex. 6.
   [44]   Id.

27 [45]   Letter from Jon Corey to Todd Gordinier and Peter Villar dated April 16, 2009,
   Kidman Dec., Exh. 1.

28

1   Mattel's motion for reconsideration.[46]   On April 20, 2009, Omni 808 sent a letter to the
2   Discovery Master stating, without citing any authority, that it understood Mattel's
3   motion for reconsideration to "effectively" stay enforcement of the Discovery Master's
4   Order.[47]

5                                    **Argument**

6   **I.    OMNI 808 IS IN CLEAR VIOLATION OF THE DISCOVERY**
7         **MASTER'S ORDER AND ONLY EX PARTE CONSIDERATION CAN**
8         **ADDRESS SUCH A VIOLATION**

9            It is a basic rule of law that court orders must be obeyed.  See Maness v.
10  Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders
11  and judgments of courts must be complied with promptly."); Donovan v. Mazzola,
12  716 F.2d 1226, 1240 (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts
13  must be complied with promptly.'").  Litigants cannot simply select which orders they
14  wish to obey and which they wish to ignore.  The Discovery Master's Order directed
15  Omni 808 to produce responsive documents by no later than April 9, 2009.[48]   Nothing
16  in Mattel's motion for reconsideration addresses, much less challenges, the obligations
17  imposed by the Order.  It did not "effectively" stay Omni 808's obligation to produce.
18  Unless this motion is heard on an ex parte basis, Omni 808 will have managed to secure
19  a stay of a valid and unchallenged Court Order by its unilateral and deliberate violation
20  of it.    Anything less than ex parte or expedited consideration would reward such
21  noncompliance at the expense of respect for the Discovery Master's Orders and the
22  rules mandating prompt compliance with court orders.  That Mattel has and will be
23  prejudiced by such delay cannot be disputed.

24

25

26  [46]  Letter from Peter Villar to Jon Corey dated April 17, 2009, Kidman Dec., Exh. 2.
    [47]    Letter from Todd E. Gordinier to Discovery Master Robert C. O'Brien dated
27  April 20, 2009, Kidman Dec., Exh. 4.
    [48]    Order at 30, ¶ 5, Corey Dec., Ex. 1.
28

## II.   THE COURT SHOULD HOLD OMNI 808 IN CONTEMPT

Courts have long exercised the authority to compel compliance with their orders through civil contempt and other remedies.  See Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp., 982 F.2d 363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980) (court's inherent power includes "the contempt sanction, 'which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court.'").[49]  A litigant who fails to comply with a court order commits civil contempt. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).

Additionally, Rule 45(e) specifically authorizes the Court to treat the failure to obey a subpoena as contempt. Fed. R. Civ. P. 45(e) ("The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."); see also Dunkin' Donuts Franchised Restaurants LLC v. Grand Central Donuts, Inc., 2009 WL 973363 at *3 (E.D.N.Y. 2009) (noting that Rule 45(e) gives district courts the power to hold a nonparty in civil contempt if that nonparty "having been served, fails without adequate excuse to obey the subpoena").  Under

---

[49]   The standard for civil contempt "is well settled:  [t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply." United States v. Rose, 437 F. Supp. 2d 1166, 1170 (S.D. Cal. 2006) (quoting FTC v. Affordable Media LLC, 179 F.3d 1228, 1239 (9th Cir. 1990)).  A party that has "taken 'all reasonable steps' to comply with a court order" will not be held in civil contempt. General Signal Corp., 787 F.2d at 1379. "A finding of civil contempt may be made without an evidentiary hearing so long as due process is otherwise satisfied." Rose, 437 F. Supp. 2d at 1170 (citing United States v. Ayers, 116 F.3d 991, 995-96 (9th Cir. 1999) (where facts supporting noncompliance with a court order are not seriously disputed, due process is satisfied by ample notice and an opportunity to respond).  The fact that Mattel has filed a motion for reconsideration of other portions of the Order concerning other requests for production does not excuse Omni 808's obligation to comply with the Discovery Master's Order. See Section III below.

Rule 45(e), the contempt remedy is available "whether the disobedience is of the subpoena itself or of a court order entered somewhere further along the way directing the nonparty to do something." See Commentary, Subdivision (e); see also Continental Ins. Co. v. Atlantic Cas. Ins. Co., 2008 WL 3852046 at *2 (S.D.N.Y 2008) (granting motion for contempt and sanctions against nonparty under Rule 45(e) for failing to obey subpoena or comply with court order compelling compliance with same); PaineWebber Inc. v. Acastar Ins. Co., 211 F.R.D. 247, 248-49 (S.D.N.Y 2002) (same).

Omni 808 continues to violate a specific and definite Order compelling it to produce certain documents responsive to Mattel's subpoena. There is nothing vague about the Discovery Master's Order or Omni 808's duties under it: Omni 808 is required to produce documents relating to (1) the existence of any debt owed by MGA to Omni 808, and (2) any communications between Omni 808 and MGA regarding that debt by no later than April 9, 2009. The deadline for compliance has long past. Yet Omni 808 has failed to comply and indeed refuses to comply. The Court should find that Omni 808 is in contempt.

## III.   MATTEL'S MOTION FOR RECONSIDERATION OF PORTIONS OF THE DISCOVERY MASTER'S ORDER DOES NOT EXCUSE OMNI 808'S NONCOMPLIANCE.

Omni 808's attempt to excuse its deliberate violation of the Discovery Master's Order by pointing to Mattel's motion for reconsideration has no merit. Omni 808 is not at liberty to unilaterally decide whether or when to comply with an Order based in its own determination of need or efficiency. The law is clear that absent an actual, existing stay, even appealed orders must be obeyed. Maness, 419 U.S. at 458 ("If a person to whom a court directs an order believes that order is incorrect, the remedy is to appeal, but, *absent a stay, he must comply promptly with the order* pending appeal.") (emphasis added); see also Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983) ("Absent a stay, all orders and judgments of courts must be complied with promptly.") (internal quotations omitted); United States v. Innis, 2005

1    WL 2155558 at *1 (E.D. Cal. 2005) ("[T]he fact that respondents filed an appeal to the

2    Ninth Circuit . . . does not excuse the failure to comply with" court orders "in the

3    absence of a stay pending appeal.").  This rule has been consistently applied in this

4    case.  The Discovery Master recently held that MGA's filing of a protective order

5    motion with a promise of future compliance could not excuse its non-compliance with

6    an Order.[50]  Indeed, MGA was previously sanctioned for disobeying a prior discovery

7    Order absent a stay.[51]

8            Omni 808's other argument--that it "understood" Mattel's motion for

9    reconsideration to "effectively" stay the Discovery Master's Order--fares no better.[52]  It

10   offers no credible explanation as to how Mattel's motion--which seeks to compel the

11   production of addition documents--could relieve Omni 808 of its obligation to produce

12   any documents when not even an appeal by Omni 808 would accomplish that result.

13   **IV.    THE COURT SHOULD IMPOSE COERCIVE SANCTIONS TO OBTAIN**

14   **         OMNI 808'S COMPLIANCE WITH THE ORDER**

15           Coercive sanctions imposed for civil contempt are appropriate "for two

16   purposes: to coerce the defendant into compliance with the court's order, and to

17   compensate the complainant for losses sustained."  <u>Whittaker Corp. v. Execuair Corp.</u>,

18   953 F.2d 510, 517 (9th Cir. 1992) (citing <u>United States v. United Mine Workers of</u>

19

20   [50]  Discovery Master Order No. 17, at 16-17, Kidman Dec., Exh. 7 ("The contention
21   that MGA somehow remedied its failure to supplement its responses to Interrogatory
     Nos. 43 and 44 by offering to provide further responses following the ruling on the
22   Protective Order Motion is likewise unavailing.  MGA cites no legal authority, and the
     Discovery Master has found none, supporting the proposition that a party may refuse to
     respond to an interrogatory after it has been ordered to do so by subsequently filing a
23   motion for a protective order.  Nor would such a rule be logical, as it would permit the
     party ordered to respond to thereby nullify the effect of the court order.") (citation
24   omitted).
     [51]  <u>See</u> Order Granting in Part Mattel's Motion to Enforce the Court's Order of May
25   16, 2007, To Compel MGA to Produce Witnesses for Deposition Pursuant to <u>Rule</u>
     30(b)(6), and Granting Request for Sanctions, dated August 14, 2007, Kidman Dec.,
26   Exh. 8 (holding that it was "egregious" for MGA to "persist in its refusal" to comply
     with a discovery Order and "gamble[]" that the Court would grant it <u>ex parte</u> relief to
27   extend the time for compliance).
     [52]  April 20, 2009 letter, Kidman Dec., Exh. 4.
28

EX PARTE RE OSC

1   <u>America</u>, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701 (1947)).   Coercive monetary

2   sanctions often take the form of a per diem fines.  Such "daily fines.... constitute '[t]he

3   paradigmatic coercive, civil contempt sanction.'" <u>Soroko v. Aina</u>, 1998 WL 395139, *1

4   (D.D.C. Jul. 09, 1998) (quoting <u>International Union, United Mine Workers v. Bagwell</u>,

5   512 U.S. 821, 828, 114 S.Ct. 2552, 2557 - 58 (1994)).   Furthermore, courts endorse

6   "traditional sanctions, such a monetary penalty increasing each day of [contemnor's]

7   noncompliance, as the exercise of the least power necessary to accomplish the court's

8   purpose." <u>Natural Gas Pipeline Co. v. Energy Gathering, Inc.</u>, 86 F.3d 464, 467-68 (5th

9   Cir. 1996).[53]  "A court, in determining the amount and duration of a coercive fine, must

10  'consider the character and magnitude of the harm threatened by continued contumacy,

11  and the probable effectiveness of any suggested sanction in bringing about the result

12  desired.'" <u>Whittaker</u>, 953 F.2d at 516 (quoting <u>United States v. United Mine Workers

13  of America</u>, 330 U.S. 258, 304 (1947)).

14          The Court should impose coercive sanctions to effectuate Omni 808's

15  compliance with the Discovery Master's Order.  As shown above, recently produced

16  documents demonstrate that--contrary to counsel's representations to the Court and the

17  to the Discovery Master--Omni 808 is affiliated with MGA and funded by Isaac Larian.

18  MGA, Larian and their affiliates have engaged in a pattern of refusing to produce

19  discoverable information until ordered to do so--and even then it has often taken

20  multiple orders to compel compliance.  Omni 808's flagrant violation of the Discovery

21  Master's Order is part of this pattern of obstructionist conduct.  At this stage of the

22  litigation, Mattel should not be required to spend months pursuing additional orders for

23  documents that are already overdue.  The Discovey Master has already found that the

24

25  [53]  "Where the purpose of a civil contempt sanction is to coerce good faith efforts to
    comply with a discovery request, contempt is proper." <u>Richmark Corp. v. Timber
26  Falling Consultants,</u> 959 F.2d 1468, 1480 (9th Cir. 1992) (upholding use of coercive
    monetary sanctions to secure compliance with a discovery order); <u>U.S. v. Westinghouse
27  Elec. Corp.,</u> 648 F.2d 642, 651-652 (9th Cir. 1981) (same); <u>International Business
    Machines Corp. v. U.S.,</u> 493 F.2d 112, 115-116 (2nd 1973) (same).

28

1   ordered documents are relevant to Mattel's Phase 2 claims, including its claim for

2   punitive damages.[54]  Omni 808's contempt is prejudicing Mattel because it threatens to

3   undermine Mattel's right and ability to prove its claims, denies Mattel the discovery

4   period that it is entitled to, is imposing burden and cost,[55] and allows MGA, Larian and

5   their affiliates to continue to manipulate their finances.

6          Omni 808 cannot complain that coercive sanctions would be onerous.

7   Aside from the fact that these sanctions are the result of willful noncompliance with an

8   Order that Omni 808 has had ample time to comply with, Omni 808 can avoid further

9   sanctions at any time simply by producing the documents called for by the Order.  See

10  International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 828

11  (1994) ("In these circumstances, the contemnor is able to purge the contempt and obtain

12  his release by committing an affirmative act, and thus 'carries the keys of his prison in

13  his own pocket.'") (citation omitted).  Coercive sanctions should be awarded in the

14  amount of $5,000 per day for Omni 808's continued noncompliance and, in the event

15  that Omni 808 does not comply within five days of the Court's Order, the amount of

16  coercive sanctions should be increased to $10,000 per day, with the per diem fine

17  amounts being paid to the Court.

18  **V.     THE COURT SHOULD AWARD SANCTIONS TO MATTEL IN THE**

19          **FORM OF ATTORNEYS FEES**

20          In addition to other sanctions, courts can award attorneys' fees on a finding

21  of contempt.  See General Signal, 787 F.2d at 1380-81.  Independently, sanctions may

---

[54]   Order No. 3 at 20, Corey Dec., Exh. 1.

[55]   Actual prejudice may "consist of costs or burdens of litigation."  PPA Prods.
Liability Litig., 460 F.3d at 1228 (citing Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th
Cir. 2002)).  Here, Mattel has been forced to incur the cost and burden of bringing the
present motion to compel Omni 808's compliance with the Discovery Master's Order.
See Koch v. The Burlington Northern & Santa Fe Railway Co., 2006 WL 2927665, at
*2 (W.D. Wash. 2006) (rejecting defendant's argument that plaintiff was not prejudiced
by delay because "[defendant's] dilatory conduct, including months of unfulfilled
promises, forced plaintiff to file a motion to compel to obtain discovery which
defendant was undisputedly required to provide months ago").

1  be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so

2  multiplies the proceedings in any case unreasonably and vexatiously may be required

3  by the court to satisfy personally the excess costs, expenses, and attorneys' fees

4  reasonably incurred because of such conduct."   Sanctions under this section are

5  appropriate "for conduct that, viewed objectively, manifests either intentional or

6  reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262,

7  265 (10th Cir. 1995), quoting Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.

8  1987).

9       Omni 808's disobedience of the Discovery Master's Order warrants an

10  award of sanctions in the form of attorneys' fees.  It is only fair that Omni 808 be

11  required to reimburse Mattel for being forced to file this application simply to obtain

12  compliance with an existing discovery Order and obtain discovery from Omni 808 that

13  the Discovery Master has squarely held Mattel is entitled to.

14                            **Conclusion**

15       For the foregoing reasons, Mattel respectfully requests that the Court:

16  (1) issue an Order to Show Cause regarding Omni 808's failure and refusal to comply

17  with the Order; (2) adjudge Omni 808 to be in contempt of Court; (3) award coercive

18  sanctions against Omni 808 in the amount of $5,000 for each day that Omni 808 fails to

19  produce responsive documents as mandated by the Order, and, in the event that Omni

20  808 does not comply within five days of the Court's Order, the amount of coercive

21  sanctions should be increased to $10,000 per day; and (4) award monetary sanctions

22  against Omni 808 in the amount of $7,000, which represents a portion of the fees and

23  costs incurred by Mattel in bringing this Application.

24  DATED:  April 21, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
25

26                              By /s/ Michael T. Zeller
27                                 Michael T. Zeller
                                   Attorneys for Mattel, Inc.
28

EX PARTE RE OSC