1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12        Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13      vs. | **DISCOVERY MATTER** |
| 14  MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 15        Defendant. | [PUBLIC REDACTED] |
| 16 | CONSOLIDATED REPLY IN SUPPORT OF MATTEL, INC.'S |
| 17  AND CONSOLIDATED ACTIONS | MOTION FOR RECONSIDERATION OF PHASE II DISCOVERY MATTER |
| 18 | ORDER NO. 3 |
| 19 | [Supplemental Declaration of Jon Corey filed concurrently] |
| 20 | |
| 21 | Hearing Date: May 5, 2009 |
|    | Time: 10:00 a.m. |
| 22 | Place: Arent Fox, LLP |
|    | 555 West Fifth Street, |
| 23 | 48th Floor |
|    | Los Angeles, CA |
| 24 | **Phase 2:** |
| 25 | Disc. Cut-off: December 11, 2009 |
|    | Pre-trial Conf.: March 1, 2010 |
| 26 | Trial Date: March 23, 2010 |
| 27 | |
| 28 | |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .......................................................................................................... 2

I.   MATTEL IS ENTITLED TO RECONSIDERATION, AND NEITHER
     MGA NOR THE OMNI PARTIES HAVE SHOWN OTHERWISE. ............. 2

II.  NEWLY-PRODUCED DOCUMENTS FROM IGWT REVEAL
     THAT THE OMNI PARTIES' REPRESENTATIONS WERE FALSE. ......... 4

     A.   The Newly-Produced IGWT Documents Reveal That ███
          ████████████████████████████████████ ..................................... 4

     B.   New Evidence Produced By IGWT Further Shows That ██████
          ████████████████████████████████████ .................................... 7

III. THE OMNI PARTIES' ATTEMPT TO RECONCILE THE NEW
     EVIDENCE WITH THEIR PRIOR STATEMENTS FAILS. .......................... 9

     A.   The Omni Parties Do Not Dispute That IGWT 826 Investments
          Funded Omni 808. ............................................................................ 9

     B.   The Omni Parties Have Not Shown That Larian Does Not Have
          An Interest In The Omni Parties. .................................................... 10

     C.   The Omni Parties' Argument Regarding MGA's And The Omni
          Parties' Affiliate Status Also Fails. ................................................ 12

IV.  AS MATTEL HAS SHOWN, ITS SUBPOENAS TO THE OMNI
     PARTIES ARE RELEVANT TO PHASE 2 .................................................. 14

     A.   The Requests Are Relevant To MGA's And Larian's Net Worth. ......... 14

     B.   The Requests Are Relevant To Disgorgement. ................................ 17

     C.   The Requests Are Relevant To Mattel's Unfair Competition
          Claim. ............................................................................................. 18

V.   THE OMNI PARTIES' REMAINING ARGUMENTS ARE
     WITHOUT MERIT. ..................................................................................... 19

     A.   Mattel Is Entitled To Obtain The Requested Documents From
          The Omni Parties. ............................................................................ 19

     B.   Mattel Is Entitled To Discovery From OmniNet And Vision
          Capital. ............................................................................................ 20

07975/2898340.1

VI.   MGA'S RECORD OF FALSE STATEMENTS AND DISCOVERY
      VIOLATIONS SHOWS THAT MATTEL'S THIRD-PARTY
      DISCOVERY IS PROPER....................................................................21

CONCLUSION......................................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

Jones v. Deutsche Bank AG,
    2006 WL 648369 (N.D. Cal. Mar. 10, 2006) ................................................... 11, 13

Netherby Limited v. Jones Apparel Group, Inc.,
    2005 WL 1214345 (S.D.N.Y. 2005) ........................................................... 11, 13

Viacom Intern., Inc. v. YouTube, Inc.,
    2008 WL 3876142 (N.D. Cal. 2008) ............................................................... 19

## Miscellaneous

Local Rule 7-18 ............................................................................................ 2-3

Local Rule 11-6 .................................................................................................. 2

1

## **Preliminary Statement**

2              The Discovery Master's March 10, 2009 Order denying Mattel

3    discovery as to OmniNet and Vision Capital and granting limited discovery as to

4    Omni 808 was premised on a factual representation that has since been proven false:

5    that the Omni Parties are separate and independent from MGA and Isaac Larian and

6    that Larian provided none of their funding.  As demonstrated on Mattel's Motion for

7    Reconsideration, documents produced by non-party Wachovia *after* the Discovery

8    Master issued his Order revealed that Omni 808 and OmniNet are "affiliates" of

9    MGA, and IGWT 826 Investments, LLC (a Larian-controlled entity) directly funded

10   Omni 808's purported extension of alleged "credit" to MGA.  Additional documents

11   produced by the IGWT entities on April 9, 2009 confirm that ████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████

16              In response, MGA does not even deny that the Omni Parties made

17   material misstatements.  For their part, the Omni Parties attempt to backpaddle from

18   their prior representations, claiming that Larian does not hold an "equity interest" in

19   Omni 808, as if only an equity interest would negate "independence."  Certainly, the

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ██████████████  Moreover, neither the Omni Parties nor MGA dispute that ████████

23   ████████████████████████████████████████████████████

24   ██████████████████████████████████████  As previously shown, Larian

25   is directly affiliated with Vision Capital through its principal Leon Neman—Larian's

26   brother-in-law and a former MGA director.  It is thus critical that Mattel obtain

27   discovery not only as to Omni 808, but also as to Vision Capital and OmniNet, so

28

07975/2898340.1

1    that it may assess whether and how Larian has retained control over the purported

2    Omni debt, even if he has done so surreptitiously or indirectly.

3           These new facts also establish the required nexus between Mattel's

4    requests and a Phase 2 issue, which the Discovery Master previously found lacking.

5    Whether or not MGA is under an actual obligation to pay back any of the more than

6    $300 million in debt that it claims to owe to these entities, and if so, how much, is a

7    question that goes directly to the net worth of both MGA and Isaac Larian. Mattel's

8    requests—which seek information regarding the Omni Parties' formation, funding

9    and operation, as well as the nature of their relationships with each other and with

10   MGA and Larian—are reasonably calculated to obtain discovery of the *validity* of

11   the Omni transactions and the true value of MGA.

12          Mattel respectfully requests that the Discovery Master reconsider the

13   March 10 Order and order the Omni Parties to produce documents in response to all

14   of Mattel's document requests.

15   <u>**Argument**</u>

16   **I.    <u>MATTEL IS ENTITLED TO RECONSIDERATION, AND NEITHER</u>**

17   **<u>MGA NOR THE OMNI PARTIES HAVE SHOWN OTHERWISE.</u>**

18          MGA and the Omni Parties concede that reconsideration is appropriate

19   when there is "a material difference in fact or law from that presented to the Court

20   before such decision that in the exercise of reasonable diligence could not have been

21   known to the party moving for reconsideration at the time of such decision," <u>Local</u>

22   <u>Rule</u> 7-18(a), or because of "the emergence of new material facts or a change of law

23   occurring after the time of such decision," <u>Local Rule</u> 7-18(b). (MGA Opp. at 4;

24   Omni Opp. at 5).[1]  As Mattel's Motion for Reconsideration established, new material

25

---

26      [1]  The Omni Parties argue in a footnote that Mattel's Motion for Reconsideration

27   should be denied because it purportedly exceeds the maximum page limit proscribed by
     <u>Local Rule</u> 11-6 and the Court's Standing Order. (<u>See</u> Omni Opp. at 6 n.2).  According to

28   (footnote continued)

1   facts emerged on March 16, 2009—*after* the Discovery Master issued his Order—

2   when non-party Wachovia Bank produced documents revealing Larian's and MGA's

3   involvement in the Omni Parties' supposed acquisition of the majority of MGA's

4   debt; documenting Larian's use of the Omni Parties to mask capital contributions to

5   MGA as debt; and establishing that Larian and MGA are affiliated with the Omni

6   Parties.   (Mot. at 9-10).[2]   Moreover, as set forth more fully below, additional

7   evidence produced by the IGWT entities on April 9, 2009 (nearly a month *after* the

8   Discovery Master's March 10 Order) demonstrates that— ████████████████

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████.[3]

13          In response, MGA does not deny that the Omni Parties made material

14  misstatements to the Discovery Master, without correction by MGA or Larian.   It

15  offers no declaration from Isaac Larian or any other MGA employee disputing that

16

17  _____

18  the Omni Parties, "[s]ince Mattel brought this motion under the Local Rules, Mattel cannot contend that the page limit mandated by the Local Rules does not apply."   The Omni Parties are wrong.   While Local Rule 7-18 provides the relevant *standard* for

19  reconsideration, the December 6, 2006 Discovery Master Order governs discovery filings

20  in this case and the Discovery Master has already ruled that, under that Order, "filings in excess of 25 pages are permitted."   See Phase II Discovery Matter Order No. 3, dated

21  March 10, 2009, at 8-9, attached as Exhibit 1 to the Declaration of Jon Corey in support of

22  Mattel's Motion for Reconsideration, dated March 24, 2009 ("Corey Dec.").

    [2]   The Omni Parties point to the fact that Mattel sent a meet and confer letter regarding

23  its anticipated Motion for Reconsideration prior to Wachovia's March 16, 2009 production,

24  to argue that the newly-produced Wachovia evidence cannot support reconsideration. (Omni Opp. at 1).   This argument is nonsense.   As Mattel's Motion demonstrated, the

25  Wachovia documents constitute new material facts which emerged after the Discovery

26  Master's Order was issued, and which reveal that the Omni Parties made material misstatements to the Court and the Discovery Master.   That Mattel may have previously

27  contemplated moving for reconsideration on other grounds is irrelevant.

    [3]   See Section II infra.

28

1    Larian holds an interest in the Omni Parties, or that Omni 808 is an affiliate of

2    MGA, or that Larian and his family funded the Omni transactions.  Instead, MGA

3    seeks to simply avoid the consequences of these deceptions, preferring to "leave it to

4    the [Omni] Parties" to respond, "rather than engage in a costly and unnecessary

5    repetition of that effort."  (MGA Opp. at 2).  While MGA may find it more cost-

6    effective to remain mute regarding these misstatements, it offers neither any

7    evidence nor any argument to rebut the obvious conclusion that MGA and Larian,

8    with the Omni Parties, misrepresented and omitted material facts to the Discovery

9    Master.  Under these circumstances, reconsideration must be had.

10          The Omni Parties, for their part, at least seem to recognize that the

11   newly-discovered evidence and the misstatements warrant reconsideration.  But, as

12   discussed below, their attempt to somehow square the Wachovia documents with

13   their prior representations to the Discovery Master and the Court utterly fails; they

14   cannot be reconciled, and reconsideration cannot be avoided.

15   **II.   NEWLY-PRODUCED DOCUMENTS FROM IGWT REVEAL THAT**

16          **THE OMNI PARTIES' REPRESENTATIONS WERE FALSE.**

17          **A.    The Newly-Produced IGWT Documents Reveal That** ████████████

18   ██████████████████████████████████████████████████

19   ███████████████████████████████████

20          Attempting to distract from their prior misstatements, the Omni Parties

21   infuse their Opposition with technical, contorted denials.  However, the Omni

22   Parties were not asked and did not make representations regarding MGA's or

23   Larian's "equity interest" in the Omni Parties.  Nor were they asked about IGWT's

24   "right to make any decisions, with respect to Omni 808's investment in MGA's debt

25   obligation."

26          Rather, at the February 11, 2009 hearing on the parties' post-trial

27   motions, Judge Larson asked the Omni Parties, directly and unequivocally, whether

28   Omni's funds came from "***MGA, Isaac Larian [or] any other MGA entity.***"  In

07975/2898340.1

1   response to that unambiguous inquiry, the Omni Parties represented that they had

2   not.[4]  Likewise, at the March 4, 2009 Discovery Master hearing, the issue was not

3   whether IGWT was authorized to make Omni's investment decisions.  Rather, the

4   Omni Parties clearly stated that MGA and Larian had not paid money to Omni 808:

> MR. GORDINIER:  What documents do we have
> that show that *either Mr. Larian or MGA paid money into
> this* to purchase this debt?  *I can tell you there are none.*
> This is a ready, fire, aim situation.  The allegations that
> were made and were made publicly are unconscionable
> and can't be undone.[5]

However, there is abundant evidence showing that these statements were false and that ████████████████████████████ Documents produced by the IGWT entities on April 9, 2009—nearly a month *after* the Discovery Master issued his Order—reveal that ████████████ ████████████████████████████████████ ████████████████[6]  Specifically:

- ████████████████████████████
  ████████████████████████████
  ████████████████████████████
  ████████████████████████████[7]

  [4]   See February 11, 2009 Hearing Transcript, at 71:16-72:5, 78:9-19, Corey Dec., Exh. 19 (emphasis added).
  [5]   See March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Corey Dec., Exh. 17 (emphasis added).
  [6]   See Second Supplemental Declaration of Michael T. Zeller ISO (1) Mattel's Application for Receiver and (2) Mattel's Opposition to Omni 808's Application for Leave to Intervene, dated April 17, 2009, at ¶ 7 ("Second Supp. Zeller Dec."), lodged with the Discovery Master in support of Mattel's Motion for Reconsideration on April 17, 2009.
  [7]   See ████████████████████████████████████, Second Supp. Zeller Dec., Exh. 6.  ████████████████████████████████

- ████████████████████████████████████
████████████████████████████████████
████████[8]

- ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████[9]

- ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████[10]   Leon Neman—Isaac Larian's brother-in-law and a former MGA director—is a principal of Vision Capital, as he has now admitted.[11]

---

[8] See ████████████████████████████████, Second Supp. Zeller Dec., Exh. 3; see also ████████████████, Second Supp. Zeller Dec., Exh. 4.

[9] See ████████████████████████████, Second Supp. Zeller Dec., Exh. 5.  As evidenced previously, Angela Larian is Isaac Larian's wife. Shirin Larian Makabi is Isaac Larian's sister; Jahangir Eli Makabi is an MGA director and Isaac Larian's brother-in-law; and both are shareholders of MGA through various trusts. See Second Supp. Zeller Dec., at ¶ 7(c).

[10] See ████████████████████████, Second Supp. Zeller Dec., Exh. 6.

[11] See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.

07975/2898340.1

1  **B.**   <u>**New Evidence Produced By IGWT Further Shows That**</u> █████

2  ████████████████████████████████████████

3  ████████████████████████.

4  The newly-produced IGWT documents show that, ████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ████████████  ██████████████████████████

8  ████████████████████████████████

9  ████████████████████████████████

10 ████████████████████████[12]

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████[13]

15 The newly-produced IGWT documents further reveal that █████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ████████████████████████████████████████

20 ████████████████████████████████████████

21 ████████████████████████████████████████

22 ──────────

23 [12] <u>See</u> ████████████████████████████████

24 ████, Second Supp. Zeller Dec., Exh. 13 (emphasis added).

25 [13] <u>See</u> ████████████, Second Supp. Zeller Dec., Exh. 14.

26 [14] <u>See</u> ████████████████, Second Supp. Zeller Dec., Exh. 10.

27 [15] <u>See</u> ████████████████████, Second Supp. Zeller Dec., Exh. 11 ████

28 (footnote continued)

07975/2898340.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15      [18]

16          Thus, the newly-revealed IGWT documents confirm what the

17  Wachovia production already revealed:   that the Omni Parties made material

18  misstatements to the Court and the Discovery Master, and that Isaac Larian is in fact

19  _____

20

21      [16]    See

22                                          , Second Supp. Zeller Dec., Exh. 15

23

24                      , Second Supp. Zeller Dec., Exh. 16

25

26      [17]    See

27                  , Second Supp. Zeller Dec., Exh. 12 (emphasis added).

28

1   using IGWT 826 Investments and Omni 808 to improperly mask capital
2   contributions to MGA as debt.[19]

## III.   THE OMNI PARTIES' ATTEMPT TO RECONCILE THE NEW EVIDENCE WITH THEIR PRIOR STATEMENTS FAILS.

### A.   The Omni Parties Do Not Dispute That IGWT 826 Investments Funded Omni 808.

The Omni Parties seek to dismiss the Secured Delayed Draw Demand Note,[20] which memorializes Larian's funding of Omni 808, by stating that "**IGWT has no ownership interest in, or control over, Omni 808, and no equity interest in, or right to make any decisions, with respect to Omni 808's investment in MGA's debt obligation.**"  (Omni Opp. at 9-10) (emphasis in original).   This statement proves nothing.  As noted above, the Omni Parties were not asked and did not make representations regarding such technical hair-splitting.  Rather, the Omni Parties unambiguously assured the Court and the Discovery Master that neither "*MGA, Isaac Larian [or] any other MGA entity*" provided the funds for the Omni transactions.[21]

---

[18]   See ███████████████████████████, Second Supp. Zeller Dec., Exh. 10 (emphasis added).

[19]   Mattel's investigation—████████████████████████████████—is continuing.  However, at least one document in IGWT's recent, partial production suggests that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, Second Supp. Zeller Dec., Exh. 9 (emphasis added).

[20]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.

[21]   See February 11, 2009 Hearing Transcript, at 71:16-72:5, 78:9-19, Corey Dec., Exh. 19 (emphasis added); March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Corey Dec., Exh. 17.

1    The Secured Delayed Draw Demand Note—like ███████████

2    ████████████—shows that these statements to the Court and the Discovery

3    Master were false.  Notably, the Omni Parties *do not dispute* that, as set forth in

4    Paragraph 3 of the Note, IGWT 826 Investments, an entity which the Discovery

5    Master has already recognized is "affiliated with—if not wholly owned by—

6    Larian,"[22] directly funded Omni 808.  Such funding cannot be reconciled with the

7    Omni Parties' past representations.

8    **B.    The Omni Parties Have Not Shown That Larian Does Not Have An**

9    **Interest In The Omni Parties.**

10    As Mattel showed in its Motion for Reconsideration, the July 29, 2008

11    offer letter to Wachovia reveals that—contrary to the Omni Parties' prior

12    representations that the acquisition of the Wachovia note was an "arms-length"

13    transaction by an independent investor—"Isaac Larian will have a non-voting

14    limited interest in the Loan Acquisition."[23]  The Omni Parties respond that the offer

15    letter merely "refers to a contemplated non-voting, non-controlling interest that *was*

16    *rejected* and *never actually happened*."  (Omni Opp. at 7) (emphasis in original).

17    Tellingly, however, the Omni Parties do not submit a single document or

18    communication evidencing this alleged rejection.

19    The only evidence cited by the Omni Parties is the Master Assignment

20    and Exchange Agreement entered into by Omni 808 and Wachovia, which they

21    argue proves that Larian holds no interest.[24]  (See Omni Opp. at 8).  The Omni

22    _____

23    [22]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Corey

24    Dec., Exh. 1.
       [23]   See OmniNet Capital, LLC's Offer Letter to Wachovia Bank, dated July 29, 2008,

25    Corey Dec., Exh. 2.
       [24]   The Omni Parties accuse Mattel of trying to conceal this Agreement by

26    "conveniently" failing to attach it to the declaration in support of Mattel's Motion for

27    Reconsideration. (Omni Opp. at 7-8).  Contrary to the Omni Parties' baseless insinuations,
       Mattel *has* submitted a copy of the Master Assignment and Exchange Agreement to the

28    (footnote continued)

07975/2898340.1

Parties' reliance on this Agreement is misplaced.   The fact that the Master Assignment and Exchange Agreement assigns Wachovia's interest in the debt to Omni 808 as an entity proves nothing, except that Larian has used Omni 808 *to conceal* his interest in the loan acquisition.   The newly-produced IGWT documents confirm this; they show that while Omni 808 purported to purchase the Wachovia debt, it was Isaac Larian and his family who provided most (if not all) of the funding for the transaction.[25]   Indeed, the ███████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████[26]

     Nor are the Omni Parties' latest, carefully-framed denials of Larian's interest sufficient to defeat this motion.   Mattel is seeking discovery.   One cannot avoid discovery by simply disputing claims of wrongdoing.   The purpose of discovery, after all, is to test the allegations and claims.   See Jones v. Deutsche Bank AG, 2006 WL 648369, at *2 (N.D. Cal. Mar. 10, 2006) (ordering production of documents related to defendant's transactions with third parties because "[e]ven if [defendant] thinks [plaintiff's RICO] allegations are wrong, discovery to test the truth of [plaintiff's] allegations is appropriate"); Netherby Limited v. Jones Apparel Group, Inc., 2005 WL 1214345, at *1 (S.D.N.Y. 2005) ("Plaintiff need not accept defendant's account of its dealings with its Canadian sub-licensee, but can seek to determine whether the sub-licensee's documents and testimony confirm or undermine discovery obtained from defendants.").   As Mattel has already shown in its Motion for Reconsideration, its requests to the Omni Parties are narrowly tailored

---

Discovery Master.   See Master Assignment and Exchanged Agreement, attached as Exhibit 6 to the Declaration of Stephen Hauss in Support of Mattel's Reply in Support of its Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 18, 2009.

[25]   See Second Supp. Zeller Dec., at ¶¶ 7-9.

1 to elicit discovery of evidence directly relevant to Phase 2 issues, including to
2 MGA's and Larian's financial condition, and Mattel's disgorgement and unfair
3 competition claims. Mattel is entitled to discovery into the Omni Parties' formation
4 and operation in order to test for itself whether Larian in fact holds an interest in the
5 Omni Parties and in MGA's supposed "debt."

6     **C.**    **The Omni Parties' Argument Regarding MGA's And The Omni**
7          **Parties' Affiliate Status Also Fails.**

8     Finally, the Omni Parties respond to the September 3, 2008 Senior
9 Promissory Note identifying Omni 808 as an "affiliate" of MGA[27] by claiming that
10 (1) Section 9(b) of the Note defines Omni 808 as an MGA affiliate "[f]or purposes
11 of this covenant," (Omni Opp. at 8-9), and (2) the very fact that the Note includes
12 the "[f]or purposes of this covenant" caveat proves that Omni 808 cannot possibly
13 be an MGA affiliate for any other purpose. The arguments are non-sensical.

14     The Senior Promissory expressly defines an "affiliate" as:

15     . . . a Person directly or indirectly controlling, controlled
by or under common control with, such Person. For
16 purposes of this definition, "control" (including with
correlative meanings, the terms "controlling", "controlled
17 by" and "under common control with") means the
possession directly or indirectly of the power to direct or
18 cause the direction of the management and policies of a
Person, whether through the ownership of voting securities
19 or by contract or otherwise. The affiliates of a Person
shall include any officer or director of such Person.[28]

20
21
22

23   [26]   See ███████████████████████████
24 ████████, Second Supp. Zeller Dec., Exh. 8.
  [27]   See Senior Promissory Note, dated September 3, 2008, Corey Dec., Exh. 4 (section
25 9(b) states that "purchaser"—*i.e.*, Omni 808—is an "affiliate" of MGA under the terms of
the Note); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey
26 Dec., Exh. 5 (summarizing terms of Wachovia's Senior Note and stating that "[a]ffiliate
27 transactions are restricted (and Omninet is considered an affiliate)").
  [28]   See Senior Promissory Note, dated September 3, 2008, at 1, Corey Dec., Exh. 4.
28

07975/2898340.1

1   The fact that one of the key documents in this transaction defines Omni 808 as an
2   "affiliate" of MGA, thereby indicating that Omni is either "controlled by" or "under
3   common control with" MGA, is highly relevant to the Phase 2 trial.  It also directly
4   contradicts the Omni Parties' repeated representations, including in the Omni Parties'
5   Opposition, that MGA in no way controls Omni 808.  (See Omni Opp. at 7 (stating
6   that "MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac
7   Larian do not have . . . control over, the Financing Entities")).  The Omni Parties'
8   offered reading—suggesting that Omni 808 is an MGA affiliate *solely* for purposes
9   of this covenant and not for any other purpose (see Omni Opp. at 8-9)—is not even
10  supported by the plain language of the Note.  Nothing on the face of the Senior
11  Promissory Note in any way limits Omni 808's and MGA's affiliation.[29]

12          But, even if this apparent affiliation is limited to the context of the
13  Omni-Wachovia transaction as the Omni Parties claim, the Omni Parties' argument
14  still is unavailing.  The Omni-Wachovia transaction is the very transaction for which
15  Omni 808 was formed and into which Mattel is seeking discovery.  So, even if
16  supposedly "limited," the affiliation here is for the same purposes that are relevant
17  here.  And, again, the Omni Parties' belated efforts to minimize Omni 808's and
18  MGA's "affiliate" status simply have no bearing on the outcome of the present
19  motion.  Mattel is entitled to take discovery to confirm the actual facts of the
20  relationship for itself.[30]  See Jones, 2006 WL 648369, at *2; Netherby, 2005 WL
21  1214345, at *1.

22

23

24  [29]  See id.
25  [30]  The Omni Parties' denials regarding OmniNet's "affiliate" status with MGA, as set
    forth in the September 8, 2008 Wachovia Memo, are irrelevant for the same reason.  See
26  September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec., Exh. 5
27  (summarizing terms of Wachovia's Senior Note and stating that "[a]ffiliate transactions are
    restricted (and Omninet is considered an affiliate)").

28

1   **IV.   AS MATTEL HAS SHOWN, ITS SUBPOENAS TO THE OMNI**
2        **PARTIES ARE RELEVANT TO PHASE 2.**

3        **A.   The Requests Are Relevant To MGA's And Larian's Net Worth.**

4              MGA and the Omni Parties argue that, notwithstanding the newly-
5   produced Wachovia and IGWT documents refuting the central representations that
6   lead to the limitations on Mattel's discovery, Mattel has not articulated the necessary
7   connection between its discovery requests and any Phase 2 issue. (MGA Opp. at 11;
8   Omni Opp. at 11). The argument fails.

9              Mattel's requests to Omni 808, OmniNet and Vision Capital are directly
10  relevant to MGA's and Larian's net worth and financial condition.   As Mattel
11  showed in its Motion for Reconsideration, a key to determining MGA's "book
12  value," and thus its net worth, is whether the reported liabilities—prominently
13  including the more than $300 million in debt that MGA purports to owe to the Omni
14  Partes—are legitimate. (Mot. at 15-16). If there is any reasonable possibility that
15  MGA will not be required to pay those alleged liabilities in full, then they should not
16  be counted against MGA's net worth.[31]   In order to evaluate whether MGA's
17  purported debt is truly a liability, documents related to the source(s) of the funding,
18  the ultimate owners of the purported debt, and the agreements or understandings
19  between MGA or Larian and the source(s) of the funds—documents which Mattel's
20  subpoenas are reasonably calculated to discover—are critically important.[32]

21             The Discovery Master's March 10, 2009 Order denied Mattel this
22  critical discovery as to OmniNet and Vision Capital, and granted only a limited
23  portion of it with respect to Omni 808, based on representations which have since
24  been proven false—namely, that the Omni Parties are wholly separate and

25

26  ——————————
27  [31]  Wagner Dec., ¶¶ 10-11.
    [32]  Wagner Dec., ¶¶ 9-15.
28

1   independent from MGA and Larian.[33]  The newly-produced Wachovia and IGWT
2   documents confirm that ███████████████████████████████████████
3   ████████████████████████████████████████████████, with MGA
4   and Omni 808 being expressly deemed "affiliates."[34]

5          The Omni Parties do not deny that the Discovery Master's Order
6   denying Mattel's discovery was premised on their misrepresentations.  Instead, with
7   their misstatements revealed, the Omni Parties seek to reframe the issue.
8   Abandoning their prior assurances that MGA and Larian did not *fund* the Omni
9   transactions, the Omni Parties now claim that, as a technical matter, Larian does not
10  hold an "equity· interest" in the Omni Parties.  (Omni Opp. at 7-10).  Whatever
11  explanations the Omni Parties wish to offer for their misrepresentations, the
12  evidence shows conclusively that limiting Mattel's discovery based Larian's alleged
13  lack of funding to or control over the Omni Parties was incorrect.

14         The Omni Parties' and MGA's reliance on the Discovery Master's
15  existing Order regarding Omni 808 is also misplaced.  They claim that the March 10
16  Order already requires "Omni 808 to produce documents relating to [the] existence
17  and validity of any debt owed by MGA to Omni 808."  (Omni Opp. at 13).
18  However, at present, the Order only grants Mattel discovery into "the *existence* of
19  any debt owed by MGA Entertainment, Inc. to Omni 808 Investors, LLC" and
20  related communications.[35]  What the balance of Mattel's requests to the Omni
21  Parties specifically seeks is information regarding the *validity* of the alleged debt.
22  The Omni Parties all but concede that Mattel is entitled to such information, urging
23  as they do that they have already been compelled to provide it.

24  ─────────────────

25  [33]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at at 16 n.13,
26  Corey Dec., Exh. 1.
     [34]  See Section II infra.

07975/2898340.1

1    Moreover, as currently limited, the March 10, 2009 Order does not
2    account for the possibility that Larian's interest in the Omni Parties is not express.
3    With ███████████████████████████████████████, the Omni
4    Parties cling to their claim that Larian and MGA do not hold "equity" in Omni 808.
5    (Omni Opp. at 7-10). They do not refute, however, that ███████████
6    ████████████████████████████████████████████████████
7    ██████████████████████[36] As previously shown, Larian is directly
8    affiliated with Vision Capital through its principal Leon Neman—Larian's brother-
9    in-law and a former MGA director.[37] Mattel needs the discovery it has been denied
10   to flesh out, among other things, the extent to which Larian retains control over
11   Omni 808 through this and other interests. Thus, there plainly exists a nexus
12   between Mattel's requests and a Phase 2 issue (Larian's and MGA's financial
13   condition). For example, the subpoenas seek documents "setting forth the
14   relationship" among the various third-party entities,[38] between the Omni Parties and
15   MGA,[39] and between the Omni Parties and Larian or his family members.[40]
16   Likewise, they seek documents "referring or relating to the source of funding" for
17   the Omni Parties,[41] and "referring or relating to the formation and governance" of
18

---

19   [35]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, Corey Dec.,
20   Exh. 1.
     [36]   See ███████████████████████████████, Second Supp. Zeller
21   Dec., Exh. 6.
     [37]   See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian
22   and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.
     [38]   See Mattel's Request Nos. 6, 7 and 8 to Omni 808; Mattel's Request Nos. 7, 8 and 9
23   to Vision Capital; Mattel's Request Nos. 5, 6 and 7 to OmniNet.
24   [39]   See Mattel's Request No. 9 to Omni 808; Mattel's Request No. 10 to Vision Capital;
     Mattel's Request No. 8 to OmniNet.
25   [40]   See Mattel's Request No. 10 to Omni 808; Mattel's Request No. 11 to Vision
26   Capital; Mattel's Request No. 9 to OmniNet.
     [41]   See Mattel's Request Nos. 11, 12 and 13 to Omni 808; Mattel's Request Nos. 12, 13
27   and 15 to Vision Capital; Mattel's Request Nos. 10, 11 and 12 to OmniNet.
28

07975/2898340.1

1  the Omni Parties.[42]  Responsive documents must be provided if Mattel is to discover

2  how and in what ways Larian has retained control over the purported Omni debt,

3  even if he has done so surreptitiously or indirectly.

4          The Discovery Master should reconsider his Order and compel the

5  Omni Parties to produce documents related not only to the existence of MGA's debt

6  and related communications, but also related to the Omni Parties' ownership and

7  management, so that Mattel may determine whether these are truly arms-length

8  transactions or not, whether MGA is under a *bona fide* obligation to pay on the

9  alleged liability and whether the ostensible $300 million in debt has any validity or

10  not.

11          **B.     The Requests Are Relevant To Disgorgement.**

12          MGA argues that the Omni Parties' actions are irrelevant to Mattel's

13  disgorgement claims because the Omni Parties "have not bought or sold any Bratz

14  products" and therefore have not generated any Bratz profits.  (MGA Opp. at 12).

15  For their part, the Omni Parties argue that they have not "siphoned" any assets out of

16  MGA, but rather have only "infused capital into MGA."  (Omni Opp. at 14)

17  (emphasis in original).

18          The newly-produced Wachovia and IGWT documents reveal that Omni

19  808 received funds directly from ███████████████████████ IGWT

20  826 Investments[43]—a Larian-controlled entity which the Discovery Master has

21  already recognized is involved in the sale of "inventory which generate revenues in

22  which Mattel has an interest."[44]  This previously undisclosed transfer of funds from

23  ████████████████ IGWT 826 Investments to Omni 808—which Omni 808 then

24  

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

      [42]  See Mattel's Request No. 5 to Omni 808; Mattel's Request No. 6 to Vision Capital.

26  [43]  See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3; Second Supp. Zeller
    Dec., ¶¶ 7-12.

27  

28

1   used to extend MGA additional "debt"[45] ████████████████████████████

2   ████[46]—is plainly relevant to Mattel's disgorgement claim.  Larian appears to be

3   using Omni 808 and IGWT 826 Investments as shells to mask his own capital

4   contributions to MGA, which he, MGA and the Omni Parties are mischaracterizing

5   as debt.  At trial, MGA and Larian may seek to deduct interest owed or paid to

6   Omni 808 on this purported liability, and thereby artificially reduce the profits to be

7   disgorged.  This is improper, and Mattel is entitled to discovery in order to ascertain

8   the true state of MGA's profits.

9          **C.     The Requests Are Relevant To Mattel's Unfair Competition Claim.**

10          MGA argues that the Omni Parties' conduct has no bearing on Mattel's

11   unfair competition claim because the Omni Parties "have not bought or sold any

12   Bratz products."  (MGA Opp. at 12).  The Omni Parties meanwhile contend that

13   Omni 808 is merely a "creditor" of MGA, its conduct cannot form the basis for an

14   unfair competition claim. (Omni Opp. at 14).

15          The Discovery Master has already held, however, that Larian's use of

16   the IGWT entities "to enrich himself by depriving Mattel of the true profits to be

17   paid to Mattel pursuant to the Court's [December 3, 2008] order" potentially

18   constitutes "an anti-competitive business practice that is unlawful, unfair or

19   fraudulent to other toy manufacturers, including Mattel."[47]  The newly-produced

20   evidence indicates that Omni 808 is directly involved in this very scheme.  As a

21   recipient of proceeds from IGWT 826, Omni 808 appears to be a participant in

22

23   _____

24   [44]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 26, Corey

25   Dec., Exh. 1.
        [45]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.

26      [46]   See Second Supp. Zeller Dec., ¶¶ 7-12.
        [47]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 27, Corey

27   Dec., Exh. 1.

28

07975/2898340.1

1    Larian's fraudulent efforts to conceal MGA's true profits.  Discovery into this issue
2    is proper under the terms of the Discovery Master's prior Order.

3    **V.      THE OMNI PARTIES' REMAINING ARGUMENTS ARE WITHOUT**
4    **         MERIT.**

5         **A.      Mattel Is Entitled To Obtain The Requested Documents From The**
6                 **Omni Parties.**

7              The Omni Parties argue that to the extent Mattel is entitled to obtain the
8    requested discovery, Mattel should be required to seek it from MGA.  (Omni Opp.
9    at 14).  However, as Mattel showed in its Motion for Reconsideration, the Omni
10   Parties have themselves admitted that they are in the sole possession of certain
11   documents sought by Mattel.  (Mot. at 18-19).  According to Omni itself, "Omni is
12   in the best (and perhaps only) position to describe the facts and circumstances
13   surrounding its purchase of the Senior Bank Credit Facility from Wachovia."[48]
14   Neither MGA nor the Omni Parties dispute these admissions, nor do they claim that
15   MGA in fact possesses the requested documents.  This alone supports enforcement
16   of Mattel's subpoenas to the Omni Parties.  As the Discovery Master noted in
17   granting Mattel's requests to the IGWT entities:   "The unavailability of these
18   relevant documents from any other source weighs heavily in favor of enforcing the
19   Subpoena to IGWT Group LLC."[49]

20             Mattel's Motion also showed that, in any event, parties have a right to
21   non-party discovery without regard to the discovery they can obtain from parties to
22   the litigation.  (See Mot. at 20, citing Viacom Intern., Inc. v. YouTube, Inc., 2008
23   WL 3876142, at *3 (N.D. Cal. 2008) ("Thus, there is no general rule that plaintiffs
24
25   _____
26   [48]   See Omni 808 Investors, LLC's Reply in Support of *Ex Parte* Application for Leave
     to Intervene, dated February 9, 2009, at 10, Corey Dec., Exh. 23.
27   [49]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 26, Corey
     Dec., Exh. 1.
28

07975/2898340.1

1  cannot seek discovery of documents likely to be in defendants' possession.")).

2  Neither MGA nor the Omni Parties cite authority to the contrary.

3       **B.**    **Mattel Is Entitled To Discovery From OmniNet And Vision**

4              **Capital.**

5          The Omni Parties further argue that "Mattel's purported concerns

6  regarding the validity of the MGA debt have nothing whatsoever to do with the

7  Omninet Capital or Vision Capital subpoenas."   (Omni Opp. at 15).   But,

8  information regarding the real parties behind Vision Capital and OmniNet is directly

9  relevant to determining the legitimacy of the more than $300 million in debt which

10  MGA purports to owe to Omni 808.  The evidence strongly suggests that Larian is

11  seeking to conceal his true interest and role in Omni 808 and its alleged acquisition

12  of the Wachovia debt.  Discovery into Vision Capital's formation and operation will

13  enable Mattel to determine the extent to which Larian has maintained control over

14  the so-called Omni debt, since, ████████████████████████

15  ████████████████████████████████████,[50] and also has

16  an alleged security interest in its assets.  Neither MGA nor the Omni Parties dispute

17  that Larian is affiliated with Vision Capital through its principal, Leon Neman—

18  who is Isaac Larian's brother-in-law and a former MGA director.[51]   Moreover,

19  OmniNet—of which Omni 808's CEO, Neil Kadisha, is the principal—made the

20  initial offer to Wachovia to purchase its debt without any due diligence,[52] showing

21  that it too is likely to possess discoverable information.[53]

22

23

24      [50]   See ████████████████████████, Second Supp. Zeller Dec., Exh. 6.

25      [51]   See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.

26      [52]   See OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008,

27  Corey Dec., Exh. 2.

    [53]   Wagner Dec., at ¶ 13.

28

1    Mattel is entitled to discovery regarding OmniNet's and Vision
2 Capital's formation and operation.[54]

3 **VI.   MGA'S RECORD OF FALSE STATEMENTS AND DISCOVERY**
4 **VIOLATIONS SHOWS THAT MATTEL'S THIRD-PARTY**
5 **DISCOVERY IS PROPER.**

6    MGA devotes nearly its entire brief to a single contention: that it was
7 improper for Mattel to include a discussion of MGA's and Larian's lack of
8 trustworthiness and repeated violations of Court Orders in its Motion for
9 Reconsideration. (See Opp. at 1-2, 5-10). MGA argues that defendants' long record
10 of false statements and discovery violations "provides[s] no basis for a motion for
11 reconsideration." (Opp. at 2). MGA misses the point.

12    Mattel's Motion does not present defendants' misrepresentations and
13 discovery abuses as the *basis* for reconsideration of the Discovery Master's March
14 10, 2009 Order. Rather, as noted, reconsideration is plainly appropriate here in light
15 of newly-produced documents, which reveal that the Omni Parties' repeated
16 representations to the Court and to the Discovery Master—representations that the
17 Discovery Master ultimately relied on in limiting Mattel's discovery—were
18 incorrect. Mattel recounted defendants' history of untrustworthiness in order to

19 _____

20   [54]   The Omni Parties' suggestion that Mattel's discovery should be denied because
Mattel purportedly failed to meet and confer with OmniNet Capital is without merit. Any
21 alleged failure to meet and confer previously was rectified by Mattel's efforts to meet and
confer with OmniNet in connection with the present motion. As the Omni Parties concede
22 in their Opposition, Mattel sent a meet and confer letter to all parties—including
OmniNet—in compliance with Paragraph 5 of the Discovery Master Order, on March 13,
23 2009. See Exhibit A to the Declaration of Peter Villar, dated April 17, 2009. A
conference of counsel was scheduled for Monday, March 23, 2009, at the request of
24 MGA's counsel. See Supplemental Declaration of Jon Corey in Support of Mattel's
25 Motion for Reconsideration, dated April 22, 2009, at ¶¶ 5-6. Mattel's counsel did meet and
confer with MGA's counsel on that date. See id., at ¶ 8. However, while Mattel's counsel
26   (footnote continued)

27
28

1  rebut the Omni Parties continuing,[55] erroneous claim that Mattel must seek its
2  discovery from MGA in the first instance.  As Mattel demonstrated in its Motion,
3  MGA cannot be trusted to provide relevant discovery.  (See Mot. at 20-26).
4  Throughout the course of this litigation, MGA has repeatedly concealed evidence of
5  relevant facts until their deception was exposed through third-party discovery.  (See
6  id.).  As such, Mattel's requests to the Omni Parties are plainly proper.

### Conclusion

8         For the foregoing reasons, Mattel respectfully requests that the
9  Discovery Master grant Mattel's Motion for Reconsideration of Phase II Discovery
10 Matter Order No. 3 and compel the Omni Parties to produce documents in response
11 to all of Mattel's document requests.

12 DATED:  April 22, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

14                               By /s/ Michael T. Zeller
15                                  Michael T. Zeller
                                    Attorneys for Mattel, Inc.

---

18 called and left voicemails for Todd Gordinier and Peter Villar, counsel for OmniNet,
19 neither Mr. Gordinier nor Mr. Villar returned Mattel's counsel's messages.  See id., at ¶ 8.
   [55] As noted above, the Omni Parties incorrectly contend in their Opposition to Mattel's
20 Motion for Reconsideration that Mattel should be required to seek its discovery from
   MGA in the first instance.  (See Omni Opp. at 14).  Likewise, the Omni Parties' counsel,
21 Bingham McCutchen LLP, recently argued that Mattel's discovery requests to Bingham
22 should have been addressed to MGA instead.  See Objections to and Motion to Strike
   Reply in Support of Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce
23 Documents Responsive to Subpoena, dated April 2, 2009, at 11.  Given Bingham's
24 insistence that the Omni Parties are separate and independent from MGA and Larian, it is
   curious that Bingham would identify MGA as the proper source for (1) documents
25 regarding the payment of the Omni Parties' legal fees, and (2) documents relating to the
   Omni Parties' formation, operation and membership.  Indeed, Bingham's suggestion that
26 MGA might possess such documents simply serves to cast yet more doubt on the Omni
27 Parties' representations to the Court and the Discovery Master regarding the "arms-length"
   nature of the Omni-MGA transactions.

28

07975/2898340.1