1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    CRAIG A. TAGGART (SBN 239168)
4   craig.taggart@bingham.com
    600 Anton Boulevard, 18th Floor
5   Costa Mesa, CA  92626-1924
    Telephone:  714.830.0600
6   Facsimile:  714.830.0700

7   Attorneys for Non-party
8   Omni 808 Investors, LLC

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

| Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| v. | |
| Mattel, Inc., a Delaware Corporation, | Hon. Stephen G. Larson |
| Defendant. | **NON-PARTY OMNI 808 INVESTORS, LLC'S OPPOSITION TO MATTEL, INC.'S** *EX PARTE* **APPLICATION FOR AN ORDER TO SHOW CAUSE RE:  OMNI 808'S FAILURE TO COMPLY WITH COURT ORDER, OR IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME TO HEAR MOTION FOR SUCH RELIEF** **[DECLARATION OF PETER N. VILLAR FILED CONCURRENTLY]** |
| AND CONSOLIDATED ACTIONS. | **Phase 2:** Discovery Cut-off:        Dec. 11, 2009 Pre-trial Conference:   March 1, 2010 Trial Date:                March 23, 2010 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................1

II.     MATTEL'S DESCRIPTION OF THE "BACKGROUND" FACTS IS
        FALSE, MISLEADING AND IRRELEVANT TO ITS EX PARTE
        APPLICATION ..................................................................................7

III.    THERE IS NO LEGAL BASIS FOR EX PARTE RELIEF ........................11

        A.      Mattel's Ex Parte Application Should Be Denied Because It
                Has Failed To Show Any Exigent Circumstances Or Irreparable
                Harm ..................................................................................11

        B.      Mattel's Ex Parte Should Be Denied Because It Failed To
                Provide Notice Under Local Rules 7-19 And 7-19.1 And Judge
                Larson's Standing Order ........................................................12

        C.      Omni Is Being Unfairly Prejudiced By Ex Parte Filings Such as
                This ....................................................................................13

IV.     MATTEL'S EX PARTE APPLICATION IS ENTIRELY
        UNNECESSARY AND THE RELIEF REQUESTED IS NOT ONLY
        UNCALLED FOR BUT WOULD BE A CLEAR VIOLATION OF
        DUE PROCESS ..................................................................................14

        A.      There Is No Basis To Issue An Order To Show Cause Given
                That Omni Has Requested Relief From The Discovery Master
                And There Is No Question That It Will Fully Comply With The
                Discovery Master's Decisions Regarding the Scope of Its
                Discovery Obligations ..........................................................14

        B.      Mattel Cannot Obtain A Contempt Order On An Ex Parte Basis ......17

V.      MATTEL'S REQUEST FOR  SANCTIONS IS MERITLESS ...................20

VI.     CONCLUSION ..................................................................................21

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Continental Ins. Co. v. Atlantic Cas. Ins. Co.,*
    2008 WL 3852046 (S.D.N.Y 2008).............................................................19, 20

*Dunkin' Donuts Franchised Restaurants LLC v. Grand Central Donuts, Inc.,*
    2009 WL 973363 (E.D.N.Y. 2009) ...............................................................20

*Dusa Pharmaceuticals, Inc. v. Skin Deep,*
    Case No. CIV-F-05-1482 AWI SMS 2007 U.S. Dist. LEXIS 33841 (E.D.
    Cal. April 21, 2007) ........................................................................................18

*General Signal Corp. v. Donallco, Inc.,*
    787 F.2d 1376 (9th Cir. 1986) .......................................................................19

*Green v. Baca,*
    No. CV02-04744MMM(MANX), 2004 WL 1146595 (C.D. Cal. April
    26, 2004) ........................................................................................................14

*Hoffman v. Beer Drivers & Salesman's Local Union No. 888,*
    536 F.2d 1268 (9th Cir. 1976) .......................................................................18

*In re Oliver,*
    333 U.S. 257 (1948).......................................................................................18

*Int'l Union, United Mine Workers of America v. Bagwell,*
    512 U.S. 821 (1994).......................................................................................19

*Manez v. Bridgestone Firestone North American Tire, LLC,*
    533 F.3d 578 (7th Cir. 2008) .........................................................................19

*Mattel, Inc. v. Walking Mountain Productions,*
    353 F.3d 792 (9th Cir. 2003) ...........................................................2, 5, 16, 21

*Mission Power Engineering Co. v. Continental Cas. Co.,*
    883 F. Supp. 488 (C.D. Cal 1995) ....................................................4, 11, 13, 14

*PaineWebber Inc. v. Acastar Ins. Co.,*
    211 F.R.D. 247 (S.D.N.Y 2002)....................................................................20

# TABLE OF AUTHORITIES
(continued)

Page

*Pennwalt Corp. v. Durand-Wyland, Inc.,*
    708 F.2d 492 (9th Cir. 1983) ............................................................... 18

*Samsung SDI Co. v. Matsushita Electric Indust. Co.,*
    No. 05-8493 PA (SHx), 2006 WL 5097404 (C.D. Cal. June 15, 2006)............. 11

*Schoenberg v. Shapolsky Publishers, Inc.,*
    971 F.2d 926 (2nd Cir. 1992) ............................................................... 18

*Tranzact Tech., Inc. v. 1Source Worldsite,*
    406 F.3d 851 (7th Cir. 2005) ............................................................... 18

*U.S. v. Alter,*
    482 F.2d 1016 (9th Cir. 1973) ............................................................. 18

*U.S. v. Powers,*
    629 F.2d 619 (9th Cir. 1980) .......................................................... 18, 20

*Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.,*
    982 F.2d 363 (9th Cir. 1992) ............................................................... 20

*United States v. Hawkins,*
    501 F.2d 1029 (9th Cir. 1974), *cert. denied,* 419 U.S. 1079 (1974) ................ 18

*United States v. Rose,*
    437 F. Supp. 2d 1166 (S.D. Cal. 2006)................................................... 19

*Williams v. Sprint/United Management Co.,*
    No. 03-2200-JWL-DJW, 2006 WL 3694862 (D. Kan. Dec. 13, 2006) ............. 14

STATE CASES

*Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd.,*
    No. CV 05-3945 PA.......................................................................... 11

RULES

Fed. R. Civ. P. 43(a)............................................................................. 18

Fed. R. Civ. P. 43(e)[ ............................................................................ 18

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

Local Rule 7-19......................................................................................5, 12, 13

4

Local Rule 7-19.1.........................................................................................12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Mattel, Inc.'s *ex parte* application is not only procedurally and substantively defective, it is also completely unnecessary given that this issue is <u>already before the Discovery Master</u>.[1]  Non-party Omni 808 Investors, LLC ("Omni") made a written request to the Discovery Master to allow Omni to defer producing documents called for by Order No. 3 until after the Discovery Master decides Mattel's Motion for Reconsideration of that same Order.  There is ample precedent in the Ninth Circuit, and in this case, for granting such relief.  Rather than respond to Omni's straightforward request, Mattel opted to bring an unnecessary and needlessly inflammatory *ex parte* application for contempt, which is procedurally improper, factually baseless, legally unsupportable and much more costly for Omni and time consuming for the Court.

The pending application is but the latest manifestation of the scorched-earth strategy Mattel has adopted toward Omni that has nothing to do with the issues framed in Phase 2 of this litigation between Mattel and MGA, but everything to do with Mattel's ongoing efforts to have a receiver appointed for MGA and improperly have Omni's lawfully acquired security interest subordinated to Mattel's inchoate unsecured contingent claims.[2]

In support of this ill-concealed strategy, Mattel has adopted tactics that have already been recognized in this action by the Discovery Master to be overbroad and entirely untethered to the claims at issue in Phase 2.  Unwilling to accept that result, Mattel has taken to repeating a series of false statements regarding Omni and its counsel over and over as if the mere repetition of unsupportable assertions

[1] The application also violates the Local Rules of the Central District, this Court's Standing Order and well-established Ninth Circuit precedent.

[2] The Discovery Master has only but to notice the recent filings by Mattel relating to the receiver issue and the materials Mattel is proffering now to see the true objective behind this abusive discovery maneuvering.

1

1  can lend them weight. Nor is this tactical approach new for Mattel or its counsel.

2  Judge Ronald Lew has found both Mattel and this counsel both to be prone to a

3  "pattern" of "abusing," "annoying," "harassing" and "exerting pressure" on non-

4  parties for tactical reasons and "not really for the purpose of getting information,"

5  a conclusion affirmed by a panel of Ninth Circuit judges. *See Mattel, Inc. v.*

6  *Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003).

7      Omni is a non-party secured creditor of MGA by virtue of its acquisition of

8  an MGA debt obligation from Wachovia Bank. The Discovery Master correctly

9  determined in Phase II Discovery Master Order No. 3 that Mattel's document

10  requests to Omni were not relevant to any Phase 2 claims or defenses, but that

11  "limited information, as it relates to the purchase by [Omni] of the debt obligation

12  previously held by Wachovia Bank, is reasonably calculated to lead to the

13  discovery of admissible evidence concerning Phase 2 issues, including the

14  calculation of MGA's net worth for purposes of calculating punitive damages."

15  (Order No. 3 at 20.) Accordingly, the Discovery Master ordered Omni to produce

16  documents relating to the existence of any debt owed by MGA and any

17  communications between Omni and the MGA parties regarding any such

18  indebtedness. (Order No. 3 at 29.)

19      Within 48 hours of the issuance of Order No. 3, Mattel claimed to be

20  dissatisfied with it as "unduly limited" and notified Omni's counsel that they

21  intended to file a motion for reconsideration to have it changed. Two weeks later,

22  on March 24, Mattel filed its Motion for Reconsideration. Omni understood

23  Mattel's Motion for Reconsideration to effectively stay enforcement of Order No.

24  3 and intended to make a production of the pertinent materials as a single

25  production once the Discovery Master resolved Mattel's request for

26  reconsideration.

27      Indeed, Mattel has taken the same position as Omni takes here with respect

28  to those portions of the Order with which it disagrees. Even though the Discovery

2

1   Master found that most of the categories of documents are not relevant to this

2   litigation, Mattel has insisted that Omni (and the other Financing Entities) continue

3   to preserve documents **pending the resolution of its Motion for**

4   **Reconsideration**.  Perhaps it is not surprising that Mattel wants the best of all

5   worlds by insisting on a de facto stay of that portion of the Order with which it

6   disagrees, while insisting on interim compliance with that portion of the Order with

7   which it has no quarrel - <u>but</u> this is neither fair, efficient nor appropriate.

8       There is no reason that Omni should be required to conduct serial searches

9   or productions to comply with Order No. 3 given Mattel's determination to have

10   the Order reconsidered - particularly where it is Mattel that is seeking the

11   reconsideration.  The burden and expense this would subject non-party Omni to

12   entirely outweighs any argument Mattel has for piecemeal resolution of this matter.

13   It is neither efficient nor appropriate for Omni to conduct seriatim searches for

14   documents responsive to the same subpoena and Order thereon.  This would

15   multiply the burden and expense on a non-party and would be particularly

16   cumbersome vis-à-vis electronic discovery since the search terms will be

17   determined by the scope of the Order.

18       Mattel has no good faith basis on which to object to this approach, and has

19   articulated no harm or prejudice that it may suffer by receiving one production

20   once <u>Mattel's own Motion for Reconsideration</u> of the Order has been decided and

21   the scope of the material to be produced is finally resolved.  Nor could it have done

22   so.  Predictably, Mattel substitutes ad hominem rhetoric and baseless efforts to

23   conflate its disagreements over MGA's alleged conduct with its unsupportable

24   paranoic ramblings about the ownership of non-party Omni.  It remains the case, as

25   both Judge Larson and the Discovery Master have been told, that neither MGA nor

26   Mr. Larian have any ownership interest in or control over Omni and the transaction

27

28

3

by which Omni acceded to the Wachovia debt was a straightforward, arms-length transaction.[3]

Mattel's *ex parte* application must be denied on procedural grounds <u>alone</u> because this application, like all of its predecessors directed at Omni, does not comply with the Central District Local Rules, this Court's Standing Order or Ninth Circuit precedent. "[F]iling an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995). It is evident from Mattel's *ex parte* application that there is no smoke, let alone fire.

Mattel has not shown any emergency, nor any other legitimate basis for ignoring the applicable notice requirements before seeking *ex parte* relief. Nor has it shown any prejudice, let alone irreparable harm, it would suffer if the Discovery Master permits Omni to produce documents in one production after Mattel's Motion for Reconsideration has been decided. Indeed, Mattel waited <u>two weeks</u> to raise this issue and provides absolutely <u>no evidentiary support</u> for its careless accusations that adhering to the notice requirements will give "Larian and MGA additional time to conceal and to transfer [unspecified] assets," or that it will cause any unwarranted "delay" of discovery or the trial. Likewise, Mattel's assertion, that providing Omni a fair opportunity to respond to its baseless charges will indirectly "reward" Omni, is absurd and not a basis for *ex parte* relief. If Mattel's stated reasons justify *ex parte* relief, it is difficult to envision a scenario under which a party would ever be required to file a noticed motion.[4]

---

[3] Indeed, Mattel has argued, in its court filings to date, that the documents already produced by Wachovia are largely the same documents to be produced by Omni.

[4] Additionally, Mattel brought its ex parte application in violation of the Central District Local Rules and this Court's Standing Order by failing to advise Omni or its counsel in advance of the date and time of the proposed ex parte application.

(Footnote Continued on Next Page.)

1       In addition to all of the fatal procedural and substantive flaws with Mattel's

2   *ex parte* application, it is essential for the Court to take into consideration that

3   Mattel is attempting to hold a non-party in "contempt" for conduct that **Mattel has**

4   **routinely engaged in** since it first began seeking discovery from Omni.  In fact,

5   just in the last few weeks alone, Mattel unilaterally granted itself extensions of

6   time to comply with Court-ordered deadlines, on at least five separate occasions,

7   without first (and in certain instances ever) obtaining approval from the Court or

8   Discovery Master.  For instance:

9       • Mattel's Opposition to Motion to Quash and/or for Protective Order re

10          Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil

11          Kadisha was due on March 19, pursuant to the briefing schedule

12          mandated by the Court's December 6, 2006 Order for Appointment of

13          a Discovery Master ("Court Order").  The day after this Court-ordered

14          deadline had passed, Mattel faxed a letter to the Discovery Master

15          asking for an extension of time.  Mattel's request was granted after its

16          non-compliance with the Court Order.  (Villar Decl. ¶ 4.)

17      • Approximately one hour before the Discovery Master's newly ordered

18          deadline for Mattel's Opposition to Motion to Quash and/or for

19          Protective Order re Subpoenas Issued by Mattel to Leon Neman, Fred

20          Mashian and Neil Kadisha, Mattel faxed a letter to the Discovery

21          Master requesting another extension of time to file its Opposition.

22      _____

23      (Footnote Continued from Previous Page.)

24      While Mattel threatened to file an ex parte application at an unspecified future date by letter dated April 16, Mattel had no further communications with Omni and

25      never advised Omni that it would be filing an application on the night of April 21. Indeed, given that Omni requested an extension from the Discovery Master, Omni

26      believed that Mattel had reconsidered its contemplated ex parte application.  In all events, since Mattel failed to provide proper notice under Local Rule 7-19,

27      Mattel's non-compliant ex parte application "**will not be considered.**" (Judge Larson's Standing Order, Dkt. No. 33, emphasis added.)

28

5

1        The Court-ordered deadline <u>passed</u> again, so Mattel unilaterally

2        granted itself the extension anyway.  Mattel's request was granted

3        <u>after</u> its non-compliance with the Court Order.  (Villar Decl. ¶ 5.)

4     • Mattel's Reply in Support of its Motion to Compel Bingham to

5        Produce Documents Responsive to Subpoena was due on March 17,

6        pursuant to the Court Order.  Approximately an hour and a half before

7        the Court-ordered deadline, Mattel faxed a letter to the Discovery

8        Master asking for an extension of time to file its Reply.  The Court-

9        ordered deadline <u>passed</u>, so Mattel unilaterally granted itself the

10       extension anyway.  Mattel's request was granted a day <u>after</u> its non-

11       compliance with the Court Order.  (Villar Decl. ¶ 6.)

12    • Mattel's Reply to MGA's Opposition to Mattel's Motion for

13       Reconsideration of Phase II Discovery Master Order No. 3 was due on

14       April 8, pursuant to the Court Order.  Mattel apparently sought and

15       received an informal agreement from MGA for an extension of time

16       to file its Reply.  However, to date, Mattel has <u>still not sought or</u>

17       <u>obtained relief or approval from the Court or the Discovery Master</u>.

18       (Villar Decl. ¶ 7.)

19    • Mattel's Reply to Omni's Opposition to Mattel's Motion for

20       Reconsideration of Phase II Discovery Master Order No. 3 was due on

21       April 22, pursuant to the Court Order.  However, Mattel filed and

22       served its Reply <u>after</u> the Court-ordered "prior to 6:00 p.m." deadline

23       <u>without seeking or obtaining relief from the Court or the Discovery</u>

24       <u>Master</u>.  (Villar Decl. ¶ 8.)

25      Accordingly, Mattel's request that non-party Omni be held in "contempt" for

26 seeking an extension of time to respond to Order No. 3 is not only legally

27 unsupportable but is inconsistent with both Mattel's own course of conduct in this

28 case and with a standard that has been applied to Mattel, <u>repeatedly</u>.  Omni would

1   have made the request earlier had it known either that its unremarkable request

2   would engender such a response, let alone that Mattel was going to ask the Court

3   to hold Omni to a different set of standards.[5]

4        Omni respectfully requests that Mattel's *ex parte* application be denied.

5   **II.    MATTEL'S DESCRIPTION OF THE "BACKGROUND"**

6   **        FACTS IS FALSE, MISLEADING AND IRRELEVANT TO ITS**

7   **        EX PARTE APPLICATION**

8        In Mattel's *ex parte* application, and in numerous other recent court filings

9   by Mattel, Mattel purports to describe the background of its discovery disputes

10   with Omni and other non-parties, the prior Discovery Master Orders, and the

11   import of documents that Mattel received from Wachovia Bank, which is the

12   subject of Mattel's pending Motion for Reconsideration.  In each instance, Mattel

13   provides a false and misleading account of the facts (supported by false and

14   foundationless declarations of its counsel).  Mattel and its counsel seem to believe

15   that if they keep repeating the same falsehoods, they can stay ahead of efforts by

16   others to correct the misstatements.

17        In its original motion to compel the non-party Finance Entities' compliance

18   with subpoenas, Mattel argued that the subpoenaed documents were relevant to

19   Mattel's RICO claim, unfair competition claim, disgorgement remedy, unclean

20   hands defense, and credibility issues.  The Discovery Master correctly rejected all

21   of the arguments made in Mattel's motion in holding that the documents are not

22   relevant to any Phase 2 claims, defenses or remedies, except for a limited category

23   of documents evidencing "MGA's indebtedness to Omni 808 Investors, LLC from

24   the purchase of the alleged Wachovia debt" on the ground that they are potentially

25   relevant to "MGA's net worth (and hence punitive damages)." (Order No. 3 at

26   _____

27   [5] Omni hereby expressly reserves all of its rights and remedies with respect to
     Mattel's conduct described above.

28

7

1   19:18-22.)

2       Forty-eight hours after the Discovery Master issued his March 10 Order, and

3   three days <u>before</u> Mattel had even received the Wachovia documents, Mattel's

4   counsel notified the Financing Entities' counsel in writing that they intended to

5   seek reconsideration of the March 10 Order on the tenuous theory that it was

6   "unduly limited."  After the Financing Entities' counsel advised Mattel's counsel

7   that they could not seek reconsideration without any new facts or law, Mattel

8   latched on to purported "new evidence produced by Wachovia."

9       However, contrary to Mattel's repeated false assertions, none of the

10  Wachovia documents are inconsistent with the Financing Entities' counsel's prior

11  statements or, <u>more importantly</u>, the Discovery Master's findings in Order No. 3

12  (upon which Mattel's motion for reconsideration is based) that the Financing

13  Entities are "outsiders to the litigation" and that "it does not appear that either

14  MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an

15  ownership interest in the Financing Entities."  (Order No. 3 at 4:2-4; 16, fn 13.)  It

16  is still the case, as the Discovery Master has correctly observed, that **MGA**

17  **Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian do**

18  **not have, and have never had, any ownership interest in, or control over, the**

19  **Financing Entities**.

20      The excerpts from the Wachovia documents that Mattel selectively attaches

21  to its reconsideration motion out of context (as well as the thousands of other

22  documents that Mattel selectively chose not to attach to its motion) say <u>nothing</u>

23  about MGA's or Mr. Larian's ownership interest in the Financing Entities because

24  they have no such interest.  The alleged "non-voting limited interest in the Loan

25  Acquisition" of Mr. Larian, proposed in the initial June 29, 2008 offer letter to

26  Wachovia, refers to a contemplated non-voting, non-controlling interest that was

27  <u>rejected</u> and <u>never actually happened</u>.  In fact, the actual signed Master

28  Assignment and Exchange Agreement dated September 3, 2008 between Omni 808

8

1    and Wachovia (which Mattel conveniently fails to attach to its motion) assigns <u>no</u>

2    <u>interest to Mr. Larian</u>.  Therefore, Mattel's reliance on a rejected offer letter over

3    the <u>actual signed Agreement</u> is illustrative of both its approach here and the merits

4    of its arguments.

5        Well aware that MGA and Larian have no interest in the Financing Entities,

6    Mattel references an unsecured loan from IGWT 826 Investments, LLC ("IGWT")

7    to Omni.  This does not conflict with any statements made by the Financing

8    Entities or any findings of the Discovery Master either and, in all events, **IGWT**

9    **has no ownership interest in, or control over, Omni, and no equity interest in,**

10   **or right to make any decisions, with respect to Omni's investment in MGA's**

11   **debt obligation.**[6]  Because the Discovery Master's factual findings in Order No. 3

12   were 100% correct, the <u>entire premise</u> of Mattel's motion for reconsideration (i.e.,

13   that the Discovery Master's findings regarding the ownership of the Financing

14   Entities were inaccurate) is fatally flawed.

15       <u>More importantly</u>, Mattel fails to explain how the Wachovia documents

16   (whether or not Mattel *claims* they are inconsistent with the Financing Entities'

17   prior statements) in any way change the Discovery Master's analysis regarding the

18   Financing Discovery at issue.  The Discovery Master's March 10 Order was

19   premised on **Mattel's failure to demonstrate "a nexus between the information**

20   **sought by the Subpoenas, on the one hand, and the Phase 2 claims and**

21   **counterclaims set for trial in March 2010, on the other hand."**  (Order No. 3 at

22   3:10-12.)  The purported new information regarding the Omni 808-Wachovia

23   transaction (even as misinterpreted by Mattel) does not make Mattel's requests for

24   all documents relating to the Financing Entities' "formation, operations and history

25

26   _____

[6] Mattel also makes a reference to Omni being "treated as an affiliate" of MGA.
27   As discussed below, this reference has been intentionally distorted in Mattel's
     motion and, properly understood, actually undermines Mattel's position.

28

9

1    of transactions" (Order No. 3 at 21:2) any more relevant to Phase 2 of the Bratz

2    doll litigation between Mattel and MGA.

3         It is no coincidence that Mattel pointedly *avoids* trying to tie the Wachovia

4    documents to any of the particular requests in the Financing Entities' subpoenas, or

5    to any claim or defense in Phase 2.  That is because it cannot do so.  Instead,

6    Mattel claims that the Wachovia documents (as Mattel misconstrues them) raise a

7    question whether MGA is under an *actual* obligation to repay the $300 million

8    debt.  This is nonsense.

9         First, even assuming for the moment Mattel's tortured interpretation of the

10   Wachovia documents were true, Mattel's purported interest in "verifying" the debt

11   (**which it concedes was a perfectly valid debt the moment before it was**

12   **purchased by Omni**) still does not explain why all documents relating to the

13   Financing Entities "formation, operations and history of transactions" are remotely

14   relevant to Phase 2.  Indeed, it also remains entirely unclear how Mattel claims to

15   have suffered any harm by Omni's infusion of capital into MGA.  Under Mattel's

16   far-fetched and unsupported theory, Omni gifted millions of dollars to MGA with

17   no expectation of repayment -- which if true would put Mattel in a far better

18   position than it was in when Wachovia owned the debt.

19        Second, the fact that Mattel claims to have concerns regarding the debt owed

20   by MGA to Omni misses the point.  The Discovery Master already has ordered

21   Omni to produce documents relating to existence and validity of any debt owed by

22   MGA to Omni (*including* the debt purchased from Wachovia), and all

23   communications between Omni and the MGA parties (*including* Mr. Larian)

24   regarding any such indebtedness.  (Order No. 3 at 29-30.)  Therefore, Mattel's

25   purported concerns regarding the validity of the debt owed by MGA to Omni are

26   already taken into account in the Discovery Master's Order No. 3.

27        Finally, to the extent Mattel wishes to further explore its factually baseless

28   contention that MGA or Mr. Larian has any interest in Omni, beyond the 10,000

                                           10

1   documents already produced by Wachovia and the documents to be produced by

2   Omni and IGWT, the Discovery Master specifically left open that "Mattel could,

3   upon establishing a nexus to a legitimate Phase 2 issue, seek to obtain this

4   information from MGA."  (Order No. 3 at 4 fn 2.)

**III.   THERE IS NO LEGAL BASIS FOR EX PARTE RELIEF**

**A.   <u>Mattel's Ex Parte Application Should Be Denied Because It Has</u>**
**<u>Failed To Show Any Exigent Circumstances Or Irreparable Harm</u>**

8       "An *ex parte* application is solely for extraordinary relief." *Jamdat Mobile,*

9   *Inc. v. Jamster Int'l Sarl Ltd.*, No. CV 05-3945 PA (FMOx), 2005 WL 5960924, at

10   *1 (C.D. Cal. Oct. 4, 2005).  "Ex parte motions are rarely justified …." *Mission*

11   *Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal

12   1995).  Indeed, "filing an ex parte motion, whether of the pure or hybrid type, is

13   the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'

14   There had better be a fire." *Id.*  Under well established precedent in this district, *ex*

15   *parte* relief requires a showing of exigent circumstances and irreparable harm.

16   *Id.*; *see also Samsung SDI Co. v. Matsushita Electric Indust. Co.*, No. 05-8493 PA

17   (SHx), 2006 WL 5097404, at *1 (C.D. Cal. June 15, 2006).  None of these factors

18   are satisfied in this case.

19       Mattel has not shown any emergency, nor any other legitimate basis for

20   ignoring the applicable notice requirements and seeking *ex parte* relief.  Nor has it

21   shown any prejudice or irreparable harm it would suffer if the Discovery Master

22   permits Omni to produce documents after Mattel's Motion for Reconsideration is

23   decided.  Indeed, Mattel waited <u>two weeks</u> to raise this issue and provides

24   absolutely <u>no evidentiary support</u> for its baseless accusations that adhering to the

25   notice requirements will give "Larian and MGA additional time to conceal and to

26   transfer [unspecified] assets," or that it will cause any unwarranted "delay" of

27   discovery or the trial.  Likewise, Mattel's assertion, that providing Omni a fair

28   opportunity to respond to its baseless charges will indirectly "reward" Omni, is

11

1    absurd and not a basis for *ex parte* relief.

2           Accordingly, because Mattel has not demonstrated any exigent

3    circumstances or irreparable harm to relieve it from following the regular noticed

4    motion procedures, this Court should deny Mattel's *ex parte* application.

5    **B.     Mattel's Ex Parte Should Be Denied Because It Failed To Provide**

6           **Notice Under Local Rules 7-19 And 7-19.1 And Judge Larson's**

7           **Standing Order**

8           Central District Local Rule 7-19.1 provides, in pertinent part:

9                  It shall be the duty of the attorney so applying (a) to make a

10                 good faith effort to advise counsel for all other parties, if

11                 known, of the date, time and substance of the proposed ex

12                 parte application and (b) to advise the Court in writing of

13                 efforts to contact other counsel and whether any other

14                 counsel, after such advice, opposes the application or has

15                 requested to be present when the application is presented to

16                 the Court.

17          The Court's Standing Order is explicit: "[*Ex parte*] Applications which fail

18   to conform with Local Rules 7-19 and 7-19.1, **including a statement of opposing**

19   **counsel's position**, will not be considered." (Judge Larson's Standing Order, Dkt.

20   No. 33) (emphasis in original).[7]

21          Mattel brought its *ex parte* application in violation of the Central District

22   Local Rules and this Court's Standing Order by failing to advise Omni or its

23   counsel in advance of the date and time of the proposed *ex parte* application.

24   

25   _____

     [7] Mattel concedes that because it is seeking contempt sanctions, the procedures set
26   forth in the Stipulation for Appointment of a Discovery Master and Order dated
     December 6, 2006 do not apply.  Therefore, Mattel's *ex parte* application is
27   governed by the Central District Local Rules, the Court's Standing Order, and
     Ninth Circuit case law.  (*See* Mattel Ex Parte App. at fn 1.)

28

1   While Mattel threatened to file an *ex parte* application at an unspecified future date

2   by letter dated April 16, Mattel had <u>no further communications</u> with Omni and

3   never advised Omni that it would be filing an application on the night of April 21.

4   Indeed, given that Omni requested an extension from the Discovery Master, Omni

5   believed that Mattel had reconsidered its contemplated *ex parte* application.  In all

6   events, since Mattel failed to provide proper notice under Local Rule 7-19,

7   Mattel's non-compliant *ex parte* application "**will not be considered**."  (Judge

8   Larson's Standing Order, Dkt. No. 33, emphasis added.)

9      **C.**      **<u>Omni Is Being Unfairly Prejudiced By *Ex Parte* Filings Such as</u>**

10              **<u>This</u>**

11      Mattel filed its application requesting that this Court decide very significant

12   issues on an *ex parte* basis.  Mattel's repeated filings to require Omni, a non-party,

13   to respond to a series of *ex parte* applications on an expedited basis itself

14   constitutes an abuse of process and will result in substantial prejudice to Omni if

15   not immediately stopped.

16      The *Mission Power* court explained the significant problems that *ex parte*

17   motions create:

18      Though the adversary does have a chance to be heard, the parties'

19      opportunities to prepare are grossly unbalanced.  Often, the moving

20      party's papers reflect days, even weeks of investigation and

21      preparation; the opposing party has perhaps a day or two.  This is due

22      primarily to gamesmanship.

23                        …

24      All of this detracts from a fundamental purpose of the adversary

25      system, namely, to give the court the best possible presentation of the

26      merits and demerits of the case on each side.  The opposing party can

27      rarely make its best presentation on such short notice.

28   883 F. Supp. at 490-91.

1      The *Mission Power* court's analysis is particularly instructive in this instance

2   considering that Omni is a non-party and that Mattel did not even bother to comply

3   with the *ex parte* notice requirements under the Central District Local Rules and

4   the Court's Standing Order.

5   **IV.   MATTEL'S EX PARTE APPLICATION IS ENTIRELY**

6         **UNNECESSARY AND THE RELIEF REQUESTED IS NOT**

7         **ONLY UNCALLED FOR BUT WOULD BE A CLEAR**

8         **VIOLATION OF DUE PROCESS**

9         **A.    There Is No Basis To Issue An Order To Show Cause Given**

10              **That Omni Has Requested Relief From The Discovery Master**

11              **And There Is No Question That It Will Fully Comply With The**

12              **Discovery Master's Decisions Regarding the Scope of Its**

13              **Discovery Obligations**

14      Omni made a written request to the Discovery Master to allow Omni to

15   produce its documents in one production after the Discovery Master decides

16   Mattel's Motion for Reconsideration of the same Order.  There is ample precedent

17   granting such relief.  *See, e.g., Williams v. Sprint/United Management Co.*, No. 03-

18   2200-JWL-DJW, 2006 WL 3694862, at *5 (D. Kan. Dec. 13, 2006) (granting

19   motion to stay production of documents pending review of magistrate judge's

20   order by the district judge); *Green v. Baca*, No. CV02-04744MMM(MANX), 2004

21   WL 1146595, at *2 (C.D. Cal. April 26, 2004) (noting that the court granted stay

22   of discovery order pending motion for reconsideration).

23      Omni is a non-party secured creditor of MGA by virtue of its acquisition of

24   an MGA debt obligation from Wachovia Bank.  As explained above, Omni

25   understood Mattel's Motion for Reconsideration to effectively stay enforcement of

26   Order No. 3 and intended to make a production of the pertinent materials as a

27   single production once the Discovery Master resolved Mattel's request for

28   reconsideration, set to be heard on May 5.

14

1    In fact, Mattel has taken the <u>same position</u> as Omni takes here with respect

2    to those portions of the Order with which it disagrees.  Even though the Discovery

3    Master found that most of the categories of documents are not relevant to this

4    litigation, Mattel has insisted that Omni (and the other Financing Entities) continue

5    to preserve documents **pending the resolution of its Motion for**

6    **Reconsideration**.  Mattel wants the best of all worlds by insisting on a de facto

7    stay of that portion of the Order with which it disagrees, while insisting on interim

8    compliance with that portion of the Order with which it has no quarrel.  This is

9    neither fair, efficient nor appropriate.[8]

10   There is no reason that Omni should be required to conduct serial searches

11   or productions to comply with Order No. 3 (as it presently reads) given Mattel's

12   determination to have the Order reconsidered -- particularly where it is Mattel that

13   is seeking the reconsideration.  The burden and expense this would subject non-

14   party Omni to entirely outweighs any argument Mattel has for piecemeal resolution

15   of this matter.  It is neither efficient nor appropriate for Omni to conduct seriatim

16   searches for documents responsive to the same subpoena and Order thereon.  This

17   would multiply the burden and expense on a non-party and would be particularly

18   cumbersome vis-à-vis electronic discovery since the search terms will be

19   determined by the scope of the Order.

20   Mattel has no good faith basis on which to object to this approach, and has

21   articulated no harm or prejudice that it may suffer by receiving one production

22   once <u>Mattel's own Motion for Reconsideration</u> of the Order has been decided and

23   the scope of the material to be produced is finally resolved.  Indeed, Mattel has

24   argued, in its court filings to date, that the documents already produced by

---

[8] Also, while Mattel has engaged in ongoing communications and stipulations with IGWT regarding its compliance with Order No. 3 (Mattel is not seeking reconsideration of Order No. 3 as it relates to IGWT), it had not even mentioned Omni's compliance until April 16.

1   Wachovia are largely the same documents to be produced by Omni.  There is little

2   doubt that Mattel has embarked on a course of conduct designed principally to

3   impose as much burden and expense as possible on a non-party and this is just the

4   latest example.

5        Moreover, Omni asks the Court to take into consideration that Mattel is

6   attempting to hold a non-party in "contempt" for conduct that <u>Mattel has routinely</u>

7   <u>engaged</u> in since it first began seeking discovery from Omni.  In fact, just in the

8   last few weeks alone, Mattel unilaterally granted itself extensions of time to

9   comply with Court-ordered deadlines, <u>on at least five separate occasions</u>, without

10  first (and in certain instances ever) obtaining approval from the Court or Discovery

11  Master.  For instance:

12       • Mattel's Opposition to Motion to Quash and/or for Protective Order re

13          Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil

14          Kadisha was due on March 19, pursuant to the briefing schedule

15          mandated by the Court's December 6, 2006 Order for Appointment of

16          a Discovery Master ("Court Order").  The day after this Court-ordered

17          deadline had passed, Mattel faxed a letter to the Discovery Master

18          asking for an extension of time.  Mattel's request was granted after its

19          non-compliance with the Court Order.  (Villar Decl. ¶ 4.)

20       • Approximately one hour before the Discovery Master's newly ordered

21          deadline for Mattel's Opposition to Motion to Quash and/or for

22          Protective Order re Subpoenas Issued by Mattel to Leon Neman, Fred

23          Mashian and Neil Kadisha, Mattel faxed a letter to the Discovery

24          Master requesting another extension of time to file its Opposition.

25          The Court-ordered deadline passed again, so Mattel unilaterally

26          granted itself the extension anyway.  Mattel's request was granted

27          after its non-compliance with the Court Order.  (Villar Decl. ¶ 5.)

28       • Mattel's Reply in Support of its Motion to Compel Bingham to

16

1   Produce Documents Responsive to Subpoena was due on March 17,

2   pursuant to the Court Order.  Approximately an hour and a half before

3   the Court-ordered deadline, Mattel faxed a letter to the Discovery

4   Master asking for an extension of time to file its Reply.  The Court-

5   ordered deadline passed, so Mattel unilaterally granted itself the

6   extension anyway.  Mattel's request was granted a day after its non-

7   compliance with the Court Order.  (Villar Decl. ¶ 6.)

8   • Mattel's Reply to MGA's Opposition to Mattel's Motion for

9   Reconsideration of Phase II Discovery Master Order No. 3 was due on

10   April 8, pursuant to the Court Order.  Mattel apparently sought and

11   received an informal agreement from MGA for an extension of time

12   to file its Reply.  However, to date, Mattel has still not sought or

13   obtained relief or approval from the Court or the Discovery Master.

14   (Villar Decl. ¶ 7.)

15   • Mattel's Reply to Omni's Opposition to Mattel's Motion for

16   Reconsideration of Phase II Discovery Master Order No. 3 was due on

17   April 22, pursuant to the Court Order.  However, Mattel filed and

18   served its Reply after the Court-ordered "prior to 6:00 p.m." deadline

19   without seeking or obtaining relief from the Court or the Discovery

20   Master.  (Villar Decl. ¶ 8.)

21   Accordingly, Mattel's improper application seeking to hold non-party Omni

22   in "contempt" for making a request for a single rather than seriatim document

23   productions is inconsistent with both Mattel's own course of conduct in this case

24   and with a standard that repeatedly has been applied to Mattel.

25   **B.    Mattel Cannot Obtain A Contempt Order On An Ex Parte Basis**

26   It is basic law in the United States that a party may only be held liable for

27   contempt after being provided due process.  In contempt proceedings, "due process

28   of law … requires that one charged with contempt of court be advised of the

17

1   charges against him, have a reasonable opportunity to meet them by way of

2   defense or explanation, have the right to be represented by counsel, and have a

3   chance to testify and call other witnesses in his behalf, either by way of defense or

4   explanation." *In re Oliver*, 333 U.S. 257, 275 (1948). "A court may not impose a

5   contempt sanction without first satisfying the procedural requirements that are

6   rooted in the due process clause." Moore's Fed. Practice 3d., § 37.51[7][a]. "A

7   contempt proceeding of any kind should be preceded by **clear notice** of the alleged

8   disobedience, as well as an **adequate opportunity to present a defense to the**

9   **allegations**." *Id* (emphasis added)., *see also Schoenberg v. Shapolsky Publishers,*

10  *Inc.*, 971 F.2d 926, 935 (2nd Cir. 1992); *Tranzact Tech., Inc. v. 1Source Worldsite*,

11  406 F.3d 851, 855 (7th Cir. 2005) ("Due process requires a district court to resolve

12  relevant factual disputes-allowing discovery and holding an evidentiary hearing if

13  necessary-in a civil contempt proceeding.").

14          In the Ninth Circuit, alleged contemnors in contempt proceedings are

15  "entitled to the procedural safeguards of notice and a **reasonable time to prepare**

16  **a defense**." *U.S. v. Powers*, 629 F.2d 619, 626 (9th Cir. 1980) (emphasis added);

17  *see also United States v. Hawkins,* 501 F.2d 1029, 1031 (9th Cir. 1974), *cert.*

18  *denied*, 419 U.S. 1079 (1974). A civil contempt proceeding in the Ninth Circuit is

19  "a trial within the meaning of Fed. R. Civ. P. 43(a) rather than a hearing on a

20  motion within the meaning of Fed. R. Civ. P. 43(e)[;] ... the issues may not be tried

21  on the basis of affidavits." *Pennwalt Corp. v. Durand-Wyland, Inc.*, 708 F.2d 492,

22  495 (9th Cir. 1983); *quoting Hoffman v. Beer Drivers & Salesman's Local Union*

23  *No. 888*, 536 F.2d 1268, 1277 (9th Cir. 1976). Due process requires an

24  "uninhibited adversary hearing ... The constitutional guarantee of due process of

25  law means more than a silhouette of justice; it requires that judicial determinations

26  affecting the freedom of the individual be openly arrived at after full, fair, and

27  vigorous debate on both sides of all substantial issues." *U.S. v. Alter*, 482 F.2d

28  1016, 1024 (9th Cir. 1973); *see also Dusa Pharmaceuticals, Inc. v. Skin Deep,*

18

1 | Case No. CIV-F-05-1482 AWI SMS 2007 U.S. Dist. LEXIS 33841, *6 (E.D. Cal.

2 | April 21, 2007)(recognizing that unless the affidavits in support of contempt are

3 | uncontroverted, a full hearing is normally held).

4 |      In its *ex parte* application, Mattel argues that the "court should find Omni

5 | 808 is in contempt" (Ex Parte at 14) and that "[a] finding of civil contempt may be

6 | made without an evidentiary hearing so long as due process is otherwise satisfied."

7 | (Ex Parte at 13, n.49.)  However, Mattel fails to cite a single case where a Court is

8 | authorized to summarily adjudge a party in contempt, without providing the party

9 | with a reasonable opportunity to respond and a hearing.  Indeed, the Supreme

10 | Court has repeatedly and explicitly held that "further procedural protections are

11 | afforded for contempts occurring out of court, where the considerations justifying

12 | expedited procedures do not pertain. Summary adjudication of indirect contempts

13 | is prohibited." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S.

14 | 821, 832 (1994) *see also Manez v. Bridgestone Firestone North American Tire,*

15 | *LLC*, 533 F.3d 578, 591 (7th Cir. 2008) ("while we have no doubt that the court

16 | possessed inherent authority to address [contempt], that does not mean that it could

17 | dispense with such fundamental incidents of due process as adequate notice and an

18 | opportunity to be heard").

19 |      Furthermore, the cases that Mattel relies on support Omni's argument that

20 | due process requires notice, reasonable time to respond and a hearing on a motion

21 | for contempt.  *See e.g., United States v. Rose*, 437 F. Supp. 2d 1166, 1170 (S.D.

22 | Cal. 2006) (party found in contempt of IRS summons was provided adequate

23 | notice of contempt allegations, time to respond to motion for contempt and two

24 | hearings to present defenses to court); *General Signal Corp. v. Donallco, Inc.*, 787

25 | F.2d 1376, 1379 (9th Cir. 1986) (party in contempt of consent decree had an

26 | opportunity to respond to contempt allegations); *Continental Ins. Co. v. Atlantic*

27 | *Cas. Ins. Co.*, 2008 WL 3852046 at *2 (S.D.N.Y 2008) (court permitted party 41

28 | days from date of notice to respond to motion for contempt and held party in

19

1   contempt for failing to respond to motion for contempt, in defiance of court's

2   order); *PaineWebber Inc. v. Acastar Ins. Co.*, 211 F.R.D. 247, 248-49 (S.D.N.Y

3   2002) (providing party reasonable time to oppose motion for discovery sanctions);

4   *Dunkin' Donuts Franchised Restaurants LLC v. Grand Central Donuts, Inc.*, 2009

5   WL 973363 at *3 (E.D.N.Y. 2009), (court denied contempt sanctions.);   *Unigard*

6   *Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

7   F.2d 363, 368 (9th Cir. 1992) (analyzing whether the court would allow expert

8   testimony in a products liability case, which had nothing to do with civil contempt,

9   and is therefore completely inapposite here).

10          Therefore, not even Mattel disputes that Omni is entitled to clear notice of

11   the alleged contempt, an opportunity to adequately respond to these serious

12   charges and a hearing at which Omni may present to the Court its defenses, before

13   a motion for contempt can be adjudged.  Even assuming Mattel's *ex parte*

14   application were proper and provided the requisite "clear notice," which it does

15   not, it is without question that a mere 36 hours to respond to such serious

16   allegations does not allow either an adequate opportunity to respond nor reasonable

17   time to prepare a defense.  *See U.S. v. Powers*, 629 F.2d at 626; *c.f. Continental*

18   *Ins. Co. v. Atlantic Cas. Ins. Co.*, 2008 WL 3852046 at *2.

19          Mattel's request that the court summarily adjudge the contempt allegations

20   not only is factually and legally absurd, it is inconsistent with contempt

21   jurisprudence and would violate Omni's due process rights.  Indeed, Mattel failed

22   to cite a single case to support this erroneous argument.  Accordingly, any order by

23   the Court on Mattel's contempt charges before Omni can adequately respond to

24   Mattel's allegations and present its defenses to the Court during a hearing, would

25   be premature and violate Omni's constitutional due process rights.

26   **V.     MATTEL'S REQUEST FOR SANCTIONS IS MERITLESS**

27          Given these circumstances, and the multiple procedural and substantive

28   problems with Mattel's *ex parte* application, sanctions are not warranted or

1    appropriate.  Indeed, if anyone is to be sanctioned, it is Mattel for refusing to

2    respond to Omni's reasonable request to produce the documents after Mattel's own

3    request for reconsideration is resolved and, instead, opting to bring an *ex parte*

4    application for contempt, which is procedurally improper, factually baseless,

5    legally unsupportable and much more tedious and costly for all parties and the

6    Court.  This continues Mattel's "pattern" of "abusing," "annoying," "harassing"

7    and "exerting pressure" on non-parties for tactical reasons and "not really for the

8    purpose of getting information." *See Mattel, Inc. v. Walking Mountain*

9    *Productions*, 353 F.3d 792, 814 (9th Cir. 2003).

10   **VI.    CONCLUSION**

11          For the foregoing reasons, Omni respectfully requests that the Court deny

12   Mattel's *ex parte* application and all relief requested therein.  Omni further

13   requests that the Court enter an Order permitting Omni to respond to these matters

14   in a single production once the Discovery Master issues his decision on Mattel's

15   Motion for Reconsideration and the scope of Omni's third-party discovery

16   obligation is resolved.

17

18   DATED:  April 23, 2009           Bingham McCutchen LLP

19

20

21   By: _____
              Todd E. Gordinier

22            Attorneys for Non-party
              Omni 808 Investors, LLC

23

24

25

26

27

28

                                        21