# EXHIBIT 32

CALENDARED

COPY

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,            CASE NO. CV 04-9049 SGL (RNBx)

13 |                 Plaintiff,               Consolidated with
                                             Case No. CV 04-09059
14 |        vs.                              Case No. CV 05-02727

15 | MATTEL, INC., a Delaware corporation,   Hon. Stephen G. Larson

16 |                 Defendant.              MATTEL, INC.'S NOTICE OF
                                            MOTION AND MOTION FOR
17 | AND CONSOLIDATED ACTIONS               LEAVE TO FILE THIRD AMENDED
                                            ANSWER AND COUNTERCLAIMS;
18 |                                         AND

19 | CONFIDENTIAL -- ATTORNEYS'             MEMORANDUM OF POINTS AND
     EYES ONLY                              AUTHORITIES IN SUPPORT
20 |                                         THEREOF
     FILED UNDER SEAL PURSUANT
21 | TO PROTECTIVE ORDER                    [[Proposed] Third Amended Answer
                                            and Counterclaims lodged concurrently
22 |                                         herewith]

23 |                                         [Notice of Lodging and Declaration of
                                            Scott B. Kidman filed concurrently
24 |                                         herewith]

25 |                                         Hearing Date: June 1, 2009
                                            Time: 10:00 a.m.
26 |                                         Place: Courtroom 1

27 |                                         **Phase 2**
                                            Discovery Cut-off: December 11, 2009
28 |                                         Pre-trial Conference: March 1, 2010
                                            Trial Date: March 23, 2010

LODGED

2009 APR -8 PM (illegible)
CLERK U.S. DIST. CT.
CENTRAL DIST OF
RIVERSIDE

00505 07975/2858537 2

EXHIBIT __32__
PAGE __381__

MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that on June 1, 2009 at 10:00 a.m., or as soon as the
3 | matter may otherwise be heard, in the courtroom of the Honorable Stephen G. Larson,
4 | located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. ("Mattel")
5 | will, and hereby does, move this Court pursuant to Rule 15(a), Rule 15(d), and Rule
6 | 16(b) of the Federal Rules of Civil Procedure for an order granting Mattel leave to file a
7 | Third Amended Answer and Counterclaims lodged concurrently herewith and, if and to
8 | the extent necessary, modifying the Scheduling Order to allow Mattel to do so.

9 | This Motion is made on the grounds that Mattel's investigation and discovery in
10 | this case have revealed facts showing that Mattel has a right to additional and further
11 | relief against the named counter-defendants; counter-defendants also have engaged in
12 | further related conduct since Mattel's Second Amended Answer and Counterclaims was
13 | filed for which Mattel seeks relief; counter-defendants will not be unduly prejudiced by
14 | amendment; Mattel has not unduly delayed seeking its requested relief; and Mattel's
15 | proposed amendment is made in good faith.

16 | This Motion is based on this Notice of Motion and Motion, the accompanying
17 | Memorandum of Points and Authorities, the concurrently-filed Declaration of Scott B.
18 | Kidman, the concurrently-filed Notice of Lodging, the concurrently-lodged proposed
19 | Third Amended Answer and Counterclaims, the pleadings and other papers on file in
20 | this action, any matters of which this Court may take judicial notice, and such further
21 | evidence and argument as may be presented at or before the hearing on this matter.

22

23

24

25

26

27

28

EXHIBIT 32
PAGE 382

-2-

MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

## Local Rule 7-3 Certification

This motion is made following the conference of counsel in compliance with Local Rule 7-3, which took place on March 13, 2009 and thereafter.

DATED: April 8, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

EXHIBIT 32
PAGE 383

00505.07975/2858537 2

-3-

MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ........................................................................................................ 13

I.  MATTEL SHOULD BE PERMITTED TO AMEND ITS COUNTERCLAIMS UNDER RULE 15(A) ................................................ 13

    A.  Amending Pleadings Under Rule 15(A) Is Strongly Favored .............. 13

    B.  Amendment Will Not Unfairly Prejudice Counter-Defendants............ 14

        1.  MGA Has Been On Notice Of The Subject Of The Amendments ................................................................................ 14

        2.  The Amendments Will Not Significantly Expand The Scope Of The Case, If At All........................................................ 16

    C.  Mattel Has Timely Sought To Amend Its Complaint............................ 18

    D.  Mattel Seeks To Amend The Complaint In Good Faith........................ 20

    E.  Mattel's Amendment Is Meritorious, Not Futile .................................... 20

II.  MATTEL SHOULD BE PERMITTED TO SUPPLEMENT ITS COUNTERCLAIMS UNDER RULE 15(D) ................................................ 21

III. IF AND TO THE EXTENT NECESSARY, GOOD CAUSE EXISTS FOR MODIFYING THE SCHEDULING ORDER TO ALLOW MATTEL'S AMENDMENT .......................................................................... 23

CONCLUSION ...................................................................................................... 24

EXHIBIT 32
PAGE 384

00505 07975/2858537 2

-i-

# TABLE OF AUTHORITIES

**Page**

### Cases

Allwaste, Inc. v. Hecht,
65 F.3d 1523 (9th Cir. 1995) ................................................................. 18

Beery v. Hitachi Home Elecs. (Am.), Inc.,
157 F.R.D. 481 (C.D. Cal. 1994) ........................................................... 14

Cabrera v. City of Huntington Park,
159 F.3d 374 (9th Cir. 1998) ................................................................. 23

DCD Programs, Ltd. v. Leighton,
833 F.2d 183 (9th Cir. 1987) ................................................................. 14

Eminence Capital, LLC v. Aspeon, Inc.,
316 F.3d 1048 (9th Cir. 2003) ............................................................... 14

Foman v. Davis,
371 U.S. 178 (1962) ....................................................................... 14, 22

Gabrielson v. Montgomery Ward & Co.,
785 F.2d 762 (9th Cir. 1986) ................................................................. 14

Howey v. United States,
481 F.2d 1187 (9th Cir. 1973) ............................................................... 21

Islamic Republic of Iran v. The Boeing Co.,
771 F.2d 1279 (9th Cir. 1985) ............................................................... 21

Keith v. Volpe,
858 F.2d 467 (9th Cir. 1988) ................................................................. 22

Miller v. Rykoff-Sexton, Inc.,
845 F.2d 209 (9th Cir. 1988) ................................................................. 21

SAES Getters, S.p.A. v. Aeronex, Inc.,
219 F. Supp. 2d 1081 (S.D. Cal. 2002) .............................................. 15, 21

Sherman v. Winco Fireworks, Inc.,
532 F.3d 709 (8th Cir. 2008) ................................................................. 24

Sierra Club v. Union Oil Co. of California,
813 F.2d 1480 (9th Cir. 1987), rev'd on other grounds,
485 U.S. 931 (1988) ...................................................................... 15, 16

Streck v. Peters,
855 F. Supp. 1156 (D. Hawaii 1994) ...................................................... 18

00505 07975/2858537 2
EXHIBIT 32
PAGE 385

MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Town of Kearny v. Hudson Meadows Urban Renewal Corp.,
    829 F.2d 1263 (3d Cir. 1987) ............................................................. 18

Travelers Prop. Cas. Co. of Am. v. Noveon, Inc.,
    248 F.R.D. 87 (D. Mass. 2008) ........................................................... 15

U.S. v. Webb,
    655 F.2d 977 (9th Cir. 1981) .............................................................. 14

United States v. Boffa,
    513 F. Supp. 444 (D.C. Del. 1980)....................................................... 18

United States v. Mayer,
    775 F.2d 1387 (9th Cir. 1985) ............................................................ 18

United States v. Welch,
    327 F.3d 1081 (10th Cir. 2003) ............................................................. 3

William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,
    668 F.2d 1014 (9th Cir. 1982) ........................................................15, 22

**Statutes**

18 U.S.C.
    § 1957 ............................................................................................. 18
    § 1961(1)........................................................................................... 18

Cal. Penal Code
    § 641.3 ............................................................................................ 18

Fed. R. Civ. P.
    Rule 15(a) ........................................................................................ 13
    Rule 15(d) ...................................................................................21, 22
    Rule 16(b) ........................................................................................ 24

EXHIBIT 32
PAGE 386

MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

00505 07975/2858537 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Through discovery and investigation, Mattel has uncovered facts that support additional allegations and claims of wrongdoing against MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Larian") and other counter-defendants. Mattel now seeks leave to file a proposed Third Amended Answer and Counterclaim to add these further allegations and claims.[1] The amendments are based upon both newly discovered, past conduct as well as further actionable conduct that has occurred since Mattel filed its Second Amended Answer and Counterclaims and in some instances after the Phase 1 trial began.

It is well-settled that amendments to pleadings should be liberally granted. Rule 15(d) of the Federal Rules of Civil Procedure expressly permits "supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading." Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires." The Court only recently lifted the stay of Phase 2 discovery and the parties are now in the midst of that discovery.

The amendments will not cause the MGA parties undue prejudice. The MGA parties have been on notice of the additional matters set forth in the Third Amended Answer and Counterclaims at least since Mattel learned of them. Because the underlying facts are relevant to Mattel's existing claims, they have already been the subject of discovery—in many instances court-ordered discovery—and motion practice, and will continue to be litigated regardless of amendment. Mattel seeks to amend in good faith, and its additional claims are meritorious, not futile. The interests of judicial

---

[1] Mattel is lodging concurrently herewith its proposed Third Amended Answer and Counterclaims. A redlined copy of the proposed Third Amended Answer and Counterclaims showing changes and new material, as compared to Mattel's Second Amended Answer and Counterclaims, is submitted herewith for the Court's convenience as Exhibit 81 to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec.").

00505 07975/2858537 2

-1-

EXHIBIT 32

PAGE 387

1  economy strongly favor the resolution of Mattel's claims in a single action, rather than
2  forcing Mattel to bring a separate action against MGA, Larian and related parties.
3  Mattel respectfully submits that it should be granted leave to file its Third Amended
4  Answer and Counterclaims.

### Statement of Facts

6      *The Prior Pleadings.* Mattel filed its original Complaint on April 27, 2004,
7  alleging that a former Mattel design employee, Carter Bryant ("Bryant"), breached his
8  duties to Mattel by working with and assisting a Mattel competitor, MGA, while
9  employed by Mattel.[2]  MGA intervened in that case on December 7, 2004, asserting
10 that its purported rights with respect to Bratz were at stake.[3]  Later, in April 2005,
11 MGA filed an unfair competition complaint against Mattel, alleging trade dress
12 infringement and claims regarding alleged Mattel business practices.[4]  The Court
13 subsequently consolidated the cases.[5]

14     On November 20, 2006, Mattel sought leave to file an amended complaint to add
15 MGA and four other defendants and nine new legal claims, including claims for
16 copyright infringement, violation of RICO, conspiracy to violate RICO,
17 misappropriation of trade secrets, unfair competition and other state law tort claims.
18 On January 12, 2007, the Court granted Mattel leave to file its proposed amendments in
19 the form of an amended answer and counterclaims in the case that MGA had filed
20 against Mattel.[6]  On July 12, 2007, following a round of pleading motions brought by
21 Bryant and the MGA parties that were largely denied, Mattel filed its Second Amended

22

23    [2]  Mattel's Complaint in Case No. 04-9059 SGL (RNBx), dated April 27, 2004,
      Kidman Dec., as Exh. 1.
24    [3]  Stipulation Permitting MGA Entertainment to Intervene in Case No. 04-9059,
      dated December 3, 2004, Kidman Dec., Exh. 50.
25    [4]  MGA's Complaint in Case No. CV 05-2727, dated April 13, 2005, Kidman Dec.,
      Exh. 4.
26    [5]  Order Consolidating Case Nos. CV 04-9049, CV-9059 and CV 05-2727, dated
27    June 19, 2006, Kidman Dec., Exh. 5.
      [6]  Court's Order allowing Mattel to file an Amended Answer and Counterclaims in
28    Case No. CV 05-2727, dated January 11, 2007, Kidman Dec., Exh 51.

1  Answer and Counterclaims against MGA, MGA Entertainment (HK) Limited, MGA de
2  Mexico, S.R.L. de C.V., Carter Bryant, Isaac Larian, Carlos Gustavo Machado Gomez,
3  and DOES 4 through 10 (the "SAAC"). Among other things, the SAAC alleges that the
4  MGA parties and others have engaged in an ongoing, widespread pattern of illegal acts
5  targeting Mattel, including without limitation by inducing Mattel employees to steal
6  Mattel's trade secrets, confidential information and other property and take them to
7  MGA to further MGA's business interests and to harm Mattel.[7] The SAAC alleges that
8  the MGA parties and others have carried out their ongoing, illegal scheme through a
9  pattern of racketeering activity that includes repeated acts of mail fraud, wire fraud,
10 commercial bribery, evidence tampering and destruction and criminal copyright
11 infringement.[8] The SAAC further alleges that the MGA parties have engaged in other
12 illegal practices in their efforts to compete unfairly with Mattel, such as by making
13 misrepresentations to retailers and others about Mattel and its products.[9]

14      ***The Phase 1 Proceedings.*** On February 12, 2007, the Court bifurcated trial in
15 this matter, generally putting claims related to Bryant's theft of Bratz from Mattel, and
16 MGA's and Larian's complicity therein, in Phase 1.[10] On February 4, 2008, the Court
17 stayed all discovery related solely to Phase 2.[11]

18      In Phase 1, the jury found that Bryant conceived and created key Bratz
19 inventions while he was a Mattel employee.[12] As a consequence, Mattel is the owner of
20 the copyrights in the Bratz doll designs, among other properties.[13] The jury also found
21 MGA and Larian liable for tortious interference with contract, conversion, aiding and

22

23      [7]  Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-
24  Claims, dated July 12, 2007 (exhibits omitted), Kidman Dec., Exh. 6.
        [8]  Id. at ¶¶ 88-93.
25      [9]  Id. at ¶¶ 78-81.
        [10]  Hearing Transcript dated February 12, 2007, Kidman Dec., Exh. 7.
26      [11]  Civil Minutes - General, dated February 4, 2008, Kidman Dec., Exh. 8.
        [12]  See Final Verdict Form as Given, dated July 17, 2008, Kidman Dec., Exh. 10.
27      [13]  See Court's Phase B Jury Instructions as Given, dated August 20, 2008, Kidman
28  Dec., Exh. 9.

EXHIBIT 22
PAGE 289

1   abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty and
2   infringing Mattel's copyrights in the Bratz works that Mattel owned.  The jury also
3   found that MGA fraudulently concealed the bases for Mattel's claims for intentional
4   interference and conversion.[14]   On December 3, 2008, the Court issued Orders in
5   connection with Mattel's claims for equitable relief granting Mattel (1) a declaratory
6   judgment of ownership, (2) a permanent injunction enjoining MGA's further
7   manufacture, distribution and sale of infringing Bratz dolls and its further use of the
8   "Bratz" name, and (3) a constructive trust over Bratz marks.[15]  The Court stayed the
9   orders pending its consideration of the parties' post-trial motions and pending further
10  order of the Court.[16]  MGA appealed the injunction Orders to the Ninth Circuit, which
11  appeal Mattel successfully moved to dismiss.[17]

12      *The Phase 2 Proceedings.*  On January 6, 2009, the Court vacated the stay on
13  Phase 2 discovery.[18]  At a subsequent hearing on February 11, 2009, the Court set pre-
14  trial and trial dates for Phase 2, including a December 11, 2009 discovery cut-off date
15  and a March 23, 2010 trial date.[19]

16      *New Information Mattel Has Discovered Which Shows That Larian and MGA*
17  *Are Manipulating Their Finances and Concealing the Proceeds of Their Wrongful*
18  *Conduct as Debt.*  In connection with applications for an order staying the December
19  3, 2008 injunctive Orders, MGA represented to this Court and to the Ninth Circuit that,
20  as a result of this case, it has been unable to obtain credit.[20]  Since the Phase 1B verdict,
21

---

[14]   See Final Verdict Form as Given, dated July 17, 2008, Kidman Dec., Exh. 10;
Phase B Verdict Form as Given, dated August 26, 2008, Kidman Dec., Exh. 11.
[15]   December 3, 2008 Order at 5-6, Kidman Dec., Exh. 12.
[16]   Id. at 16, Kidman Dec., Exh. 12.
[17]   Ninth Circuit Order Dismissing MGA's Appeal, dated January 12, 2009, Kidman
Dec., Exh. 57.
[18]   Order Appointing Discovery Master, dated January 6, 2009, at 2, Kidman Dec.,
Exh. 13.
[19]   Hearing Transcript dated February 11, 2009 at 94:25-95:7, Kidman Dec., Exh.
14.
[20]   See Declaration of Brian Wing in Support of the MGA Parties' Request for a
Stay, dated December 11, 2008, at ¶ 13, Kidman Dec., Exh. 7.

EXHIBIT **32**                                    -4-
MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

PAGE **390**

however, Omni 808 Investors, LLC ("Omni 808") has purported to take a security interest in certain of MGA's assets.[21] After Mattel brought the Omni 808 transaction to the Court's attention (the MGA parties never disclosed it), and contrary to MGA's earlier, sworn representations, MGA belatedly admitted that Omni 808 had extended it additional funding.[22]  Additional evidence uncovered by Mattel shows that MGA's transactions with Omni 808 and other transactions involving entities named Vision Capital, LLC and Lexington Financial Limited (collectively with Omni 808 the "Omni Parties") appear to be related-party transactions structured to conceal the ultimate source of the funds. This evidence includes:

- Omni 808, a single-purpose entity formed on August 12, 2008 during the Phase 1B trial, purported to purchase a substantial portion of the more than $300 million debt that MGA owed to Wachovia Bank, taking an alleged security interest in certain MGA assets.[23]

- By Omni 808's account, it offered Wachovia $109,723,845 to purchase the debt—35% of its face value.  Subsequently, Omni 808 and Wachovia reached an agreement whereby Omni 808 ostensibly acquired all but $21,944,769 of the debt.[24]

---

[21]   UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Kidman Dec., Exh. 49.

[22]   MGA Parties' Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2, Kidman Dec., Exh. 37.

[23]   See UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Kidman Dec., Exh. 49.  The purported security interest was only in MGA's account receivables, inventory and certain capital stock; it did not include other assets such as intellectual property.  See Supplemental Declaration of Michael Zeller iso (1) Mattel's Application for Receiver and (2) Mattel's Opposition to Omni 808's Application for Leave to Intervene, dated March 23, 2009 ("Supp. Zeller Dec."), at ¶¶ 13-16 and Exhs. 11-16, lodged concurrently herewith.

[24]   UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Kidman Dec., Exh. 49.

-5-

EXHIBIT 32 MOTION. FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

PAGE 391

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- According to the Omni Parties' UCC Financing Statements, Omni 808 appears to be owned and funded by Vision Capital, LLC ("Vision Capital") which, like Omni 808, was formed during Phase 1B trial.[25]

- The Omni Parties' UCC Financing Statements also claim that Vision Capital in turn obtained money to fund Omni 808, and presumably MGA, from Lexington Financial Limited ("Lexington"). Lexington is an offshore company, registered in the Caribbean island of Nevis, a country notorious for its corporate and banking secrecy laws.[26] Lexington also has listed its supposed business offices in London as being at the same location as a company that provides "virtual office" services, i.e., mail drop and answering service.[27]

- Fred Mashian, an attorney, is identified as the Lexington contact on a UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with an ownership interest in Omni 808.[28] Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008—three days after the jury's damages verdict against MGA and Larian.[29]

---

[25]   See Vision Capital, LLC Certificate of Formation dated August 19, 2008, Kidman Dec. Exh. 56.

[26]   See UCC Financing Statement dated August 29, 2008, Kidman Dec., Exh. 19 (with Lexington taking a security interest in Vision Capital's ownership interest in Omni 808); see also "Offshore-Based Limited Liability Company (LLC)," as obtained from the website at www.offshore-protection.com/nevisLLC.html., Kidman Dec., Exh. 58.

[27]   See UCC Financing Statement dated August 29, 2008, Kidman Dec., Exh. 19; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 59. Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), attached as Exhibit 10 to the Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, ("Zeller Dec."), lodged concurrently herewith.

[28]   See UCC Financing Statement dated August 29, 2008, Kidman Dec., Exh. 19.

[29]   Id.

---

00503.07975/2858537.2

-6-

1  • Leon Neman is Isaac Larian's brother-in-law and has served as a director
2  of MGA.[30] 1525 South Broadway in Los Angeles—the address for Vision
3  Capital provided in the August 29, 2008 UCC Financing Statement[31]—is
4  the address of Neman Brothers & Associates.[32]  Leon Neman is a
5  principal of Neman Brothers & Associates and owns the building at 1525
6  Broadway.[33] Mr. Mashian is the listed agent for several entities that Leon
7  Neman claims to own.[34] Rock-Hill Holdings, LLC, a Leon Neman entity
8  that lists Mashian as its registered agent, also has a Delaware address that
9  is the same as Vision Capital's alleged Delaware address.[35]

10  Despite this evidence, the Omni Parties' counsel flatly represented to the Court
11 and to the Discovery Master—without contradiction or correction by counsel for MGA
12 and Larian—that the Omni Parties' purported acquisition of MGA's debt was an "arm's
13 length transaction" for which Larian and MGA provided no funding and in which they
14 had no interest.[36]

15  Subsequently, on March 16, 2009, Wachovia Bank produced documents refuting
16 these representations and showing that Omni 808 is in fact affiliated with MGA and
17 funded by Larian.  Among the newly-produced evidence is a copy of a July 29, 2008
18 offer letter to Wachovia relating to the ostensible loan acquisition.  That letter stated
19 that *"Isaac Larian will have a non-voting limited interest in the Loan Acquisition."*[37]
20 Similarly, a "Secured Delayed Draw Demand Note" between MGA and Omni 808

21 _____
22  [30]  See Zeller Dec. ¶ 4.
    [31]  See Declaration of David Antolin, dated February 4, 2009, lodged concurrently
23 herewith.
    [32]  Id.
24  [33]  See Zeller Dec., ¶ 6.
    [34]  See Zeller Dec. ¶ 11.
25  [35]  See Zeller Dec. ¶ 12.
26  [36]  Hearing Transcript dated February 11, 2009 at 78:15-25, Kidman Dec., Exh. 14;
    Discovery Master Hearing Transcript dated March 4, 2009, 51:3-8, Kidman Dec., Exh.
27 68.
28

00505 07975/2858537.2

-7-

1  states that Omni 808's supposed funding to MGA comes from IGWT 826 Investments
2  ("IGWT 826").[38] IGWT 826 is an entity which is "affiliated with—if not wholly owned
3  by—Larian."[39] Another agreement to which MGA was a party specifically identifies
4  and treats Omni 808 as an "affiliate" of MGA.[40] Despite repeated requests by Mattel in
5  discovery, neither the MGA parties nor the Omni Parties produced any of these
6  documents. Additionally, Leon Neman—Isaac Larian's brother-in-law who has served
7  as an MGA director—has now belatedly admitted that he is a principal of Vision
8  Capital, which has claimed an alleged ownership interest in Omni 808.[41]

9  *New Evidence Mattel Has Discovered Which Shows That Larian Is Setting Up*
10  *New Companies to Purchase Bratz Products from MGA for Pennies on the Dollar.*
11  Recently discovered evidence also shows that Larian appears to be transferring assets
12  out of MGA as well. For example, through a company called IGWT Group (apparently
13  an abbreviation of "In God We Trust"), Larian is purchasing Bratz product for pennies
14  on the dollar for apparent resale. Larian created this company on June 26, 2008—
15  during the Phase 1 trial—and registered its place of business as his home address.[42]
16  Larian also created IGWT 826 on August 27, 2008—the day after the Phase 1 trial
17  ended.[43] IGWT 826 is registered at the home address of Shirin Makabi and Eli
18
19
20
21  [37] OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Kidman Dec., Exh. 60 (emphasis added).
22  [38] Supp. Zeller Dec., Exh. 5. at ¶ 3.
23  [39] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Kidman Dec., Exh. 61.
24  [40] See Senior Promissory Note, dated September 3, 2008, Kidman Dec., Exh. 62 (section 9(b) states that "purchaser"—*i.e.,* Omni 808—is an "affiliate" of MGA under the Note); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886,
25  Kidman Dec., Exh. 63 (summarizing terms of Wachovia's Senior Note and stating that "[a]ffiliate transactions are restricted (and Omninet is considered an affiliate)").
26  [41] See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil Kadisha, dated March 12, 2009, at 2, Kidman Dec., Exh. 64.
27  [42] IGWT Group, LLC registration information, Kidman Dec., Exh. 20.
28  [43] IGWT 826 Investments, LLC registration information, Kidman Dec., Exh. 21.

-8-

EXHIBIT **32** MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

PAGE **394**

1    Makabi.[44]  Shirin Makabi is Isaac Larian's sister, Eli Makabi is Isaac Larian's brother-

2    in-law, and both are shareholders in MGA through trusts.[45]  After Mattel (not MGA)

3    brought these IGWT entities to the Court's attention, MGA admitted that it purportedly

4    sold some $65 million in Bratz inventory to Larian through IGWT at a "substantial

5    discount."[46]  In fact, the few pages of documents that MGA has provided to the Court

6    showed that the discount was massive[47]—and also showed that, for good measure,

7    MGA continues to provide and pay for storage space for the products that Larian

8    "purchased."[48]

9         Multiple other related-party transactions, including mid-trial transactions,

10   involving MGA, Larian and Larian family members, are reflected in documents

11   recently produced by Wachovia, but which were never disclosed by MGA.   In

12   approximately August 2007, MGA made loans in an amount of 2.5 million euros for

13   investments in another toy company, Zapf, "on behalf of" Isaac Larian and his "family."

14   In November 2007, another 12 million euros was due, for which amount MGA became

15   "liable if Isaac [Larian] does not contribute."[49]  By May of 2008, Larian was already

16   engaged in a "de facto liquidation" of MGA.[50]  In August 2008 alone, during the

17   damages phase of trial, Isaac Larian, Angela Larian (Isaac Larian's wife who is also an

18   MGA shareholder through trusts), Eli Makabi and Shirin Makabi engaged in no fewer

19   than 44 financial transactions with MGA purportedly valued at more than $19

20   _____

21   [44] Id.
     [45] See Supp. Zeller Dec. at ¶ 11; Master Assignment and Exchange Agreement,
22   dated September 3, 2008, at Schedule IV, Supp. Zeller Dec., Exh. 10; Deposition of
     Lisa Tonnu dated January 17, 2008 at 804:18-805:7, Kidman Dec., Exh. 70.
23   [46] See MGA Parties' Opposition to Mattel, Inc.'s Ex Parte Application For
     Appointment of a Receiver, dated December 30, 2008, at 10, Kidman Dec., Exh. 22.
24   [47] See Declaration of Cyrus Naim in Support of Mattel's Ex Parte Application For
     Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Kidman Dec., Exh. 23.
25   [48] See Inventory Purchase Agreement, dated as of July 7, 2008, at ¶ 6, attached as
     Exhibit B to the Declaration of John Woolard in Support of the MGA Parties'
26   Opposition to Mattel's Ex Parte Application For Receiver, dated December 30, 2008,
     Kidman Dec., Exh. 82.
27   [49] Supp. Zeller Dec., ¶ 9, Exh. 8.
     [50] Id. at ¶ 10, Exh. 9.
28

1 | million—transactions that MGA later conceded violated its loan agreement with
2 | Wachovia.[51]

3 | *New Information Mattel Has Discovered Since Filing The SAAC Regarding*
4 | *MGA's And Larian's Additional Trade Secret Thefts.* Since the filing of the SAAC,
5 | Mattel has developed evidence of additional Mattel employees who stole Mattel trade
6 | secrets and other property and took it with them to MGA. One such employee is Jorge
7 | Castilla. At Mattel, Castilla prepared, launched and evaluated Mattel's sales forecasting
8 | system and was also responsible for setting up Mattel's Electronic Data Warehouse
9 | system, which contained highly confidential business information such as sales, future
10 | and pending orders, product availability and sales forecasts at the stock keeping level.[52]
11 | When he resigned, Castilla held the title of Planning Specialist in Mattel's Operations
12 | Planning and Finances department.[53]

13 | MGA hired Castilla at a higher salary to perform approximately the same
14 | functions. Despite signing agreements with Mattel during his employment barring him
15 | from taking or disclosing confidential and proprietary information, Castilla did just that,
16 | creating a folder on his Mattel network share drive labeled "To Take" and transferring
17 | its contents to an email account and perhaps to a personal digital assistant device before
18 | departing.[54] The "To Take" folder contained 56 megabytes of information, the bulk of
19 | which was Mattel's confidential and proprietary information, including proprietary
20 | information regarding Mattel's inventory management system and its sophisticated

21
22
23
24

---

25 | [51] Id. at ¶ 11, Exh. 10.
26 | [52] Proposed Third Amended Answer and Counterclaims, lodged concurrently herewith, at ¶ 79.
27 | [53] Id. at ¶ 77.
28 | [54] Id. at ¶¶ 84-85.

00505.07975/2858537.2

EXHIBIT 37
PAGE 396

1 | forecasting techniques.[55] At his deposition, Castilla asserted his claimed rights against

2 | self-incrimination under the Fifth Amendment nearly 500 times.[56]

3 | *New Information Mattel Has Discovered Since Filing The SAAC Regarding*

4 | *MGA's and Larian's Additional Acts of Commercial Bribery.* New information

5 | discovered by Mattel since the filing of the SAAC further supports Mattel's allegations

6 | that MGA and Larian carried out their fraudulent scheme by, among other things,

7 | bribing Mattel employees. For example, starting in late December 2007 and in the

8 | following months, Mattel learned that MGA bribed three Mattel Design Center

9 | employees who worked in Mattel's El Segundo Design Center to secretly work on

10 | hundreds of Bratz products over the span of five years.[57] MGA's unlawful commercial

11 | bribery was carried out through the operations of two MGA vendors, Veronica and

12 | Peter Marlow, who paid these Mattel employees in cash and prepared bogus

13 | documentation using false names and false security numbers to conceal their illegal

14 | conduct.[58]

15 | *New Information Mattel Has Discovered Since Filing The SAAC Regarding*

16 | *Additional Instances of Evidence Tampering.* Farhad Larian, Isaac Larian's brother

17 | and a former MGA director and executive, admitted at his deposition in February 2008

18 | that he destroyed documents relevant to Mattel's claims against MGA. Farhad Larian

19 | acknowledged that he destroyed the evidence while still on MGA's payroll, with full

20 | knowledge that Mattel's action was pending, for the purpose of keeping the evidence

21 |

22 |

23 |

[55] Id. at ¶ 84.

24 | [56] Id. at ¶ 86; see also Deposition Transcript of Jorge Castilla dated October 22,

25 | 2008, at 16:19-17:4, 25:12-23, 49:20-50:13, 146:11-148:8, 247:15-256:11, 270:17-273:10, Kidman Dec., Exh. 46,

[57] See Deposition Transcript of Veronica Marlow taken December 28, 2008 at

26 | 306:14-308:1, 363:15-365:17, Kidman Dec., Exh. 81; Deposition Transcript of Peter

27 | Marlow Vol. 2, dated June 16, 2008, at 409:19-410:5, 420:14-421:7, Kidman Dec., Exh. 24.

28 | [58] See Peter Marlow Tr. at 448:15-19, 453:3-454:9, Kidman Dec., Exh. 24.

1  from Mattel.[59] The destruction occurred after Farhad Larian asked his brother via email

2  if there was anything he could do to help MGA in its pending litigation with Mattel.[60]

3          ***New Information Mattel Has Discovered Since Filing The SAAC Regarding***

4  ***MGA's and Larian's Perjury and Obstruction of Justice.***  Mattel has also discovered

5  additional evidence which shows that Larian and MGA have conspired to commit

6  perjury and other acts of obstruction of justice in furtherance of their RICO conspiracy

7  to misappropriate Mattel's intellectual property and to manipulate their finances,

8  including Larian's repeated sworn testimony during the Phase 1 trial that Bryant had

9  told him, and that he believed, that Bryant had created Bratz while not employed by

10  Mattel; MGA's and Larian's submission of false statements regarding MGA's ability to

11  receive outside funding in pleadings before the Ninth Circuit; and numerous false

12  statements regarding MGA's financial condition in this action.[61]

13          ***Mattel's Proposed Third Amended Answer and Counterclaims.***  Mattel seeks to

14  add a new counterclaim for avoidance of intentional and constructive fraudulent

15  transfers, including based on MGA's and Larian's transfer of tens of millions of dollars

16  of Bratz inventory from MGA to the Larian-controlled IGWT entities.  In addition,

17  Mattel seeks to add new allegations regarding the Omni Parties and IGWT transactions

18  in support of its existing unfair competition and RICO claims, including allegations

19  regarding additional predicate acts of money laundering, concealing assets and

20  engaging in monetary transactions involving property derived from unlawful activity.

21  Mattel seeks to add new allegations regarding additional predicate acts of commercial

22  bribery, destruction of evidence and obstruction of justice based on MGA's secret

23  payments to Mattel employees who worked on Bratz while employed by Mattel, Farhad

24  Larian's destruction of documents and Isaac Larian's false statements regarding the

25

---

26  [59]  See Deposition Transcript of Farhad Larian dated February 4, 2008 at 56:9-
27  58:11, 65:21-67:2, 170:10-174:5, Kidman Dec., Exh. 35.
   [60]  Id.
28  [61]  Proposed Third Amended Answer and Counterclaims, ¶¶ 103-104.

1 | origin of Bratz. Mattel also seeks to include new allegations regarding Jorge Castilla's
2 | theft of trade secrets in support of its existing trade secret theft, RICO, unfair
3 | competition and conversion claims.

4 | **Argument**

5 | **I.  MATTEL SHOULD BE PERMITTED TO AMEND ITS**
6 | **COUNTERCLAIMS UNDER RULE 15(A)**

7 | **A.  Amending Pleadings Under Rule 15(A) Is Strongly Favored**

8 | Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend
9 | "shall be freely given when justice so requires." The Ninth Circuit has repeatedly noted
10 | the Supreme Court's instruction to lower courts to "heed carefully the command of Rule
11 | 15(a), by freely granting leave to amend where justice so requires." DCD Programs,
12 | Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (quoting Gabrielson v.
13 | Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir. 1986)); see also Beery v. Hitachi
14 | Home Elecs. (Am.), Inc., 157 F.R.D. 481, 482 (C.D. Cal. 1994) ("Federal policy
15 | strongly favors determination of cases on their merits."). This policy favoring
16 | amendments to pleadings is to be applied with "extreme liberality." Id. (quoting United
17 | States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)); see also Eminence Capital, LLC v.
18 | Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (same); DCD Programs, 833 F.2d at
19 | 186 ("This liberality in granting leave to amend is not dependent on whether the
20 | amendment will add causes of action or parties.").

21 | "Four factors are commonly used to determine the propriety of a motion for leave
22 | to amend. These are: bad faith, undue delay, prejudice to the opposing party, and
23 | futility of amendment." Id.; see also Foman v. Davis, 371 U.S. 178, 183 (1962);
24 | Eminence Capital, 316 F.3d at 1051-52. The four factors are not, however, of equal
25 | importance. DCD Programs, 833 F.2d at 186-87. The absence of unfair prejudice is a
26 | strong factor supporting amendment. Eminence Capital, 316 F.3d at 1052. Delay, even
27 | where it exists, "is insufficient to justify denial of leave to amend." DCD Programs,
28 | 833 F.2d at 186.

1       Here, no unfair prejudice can be shown, and the remaining factors also support

2   amendment.

3       **B.    Amendment Will Not Unfairly Prejudice Counter-Defendants**

4       Prejudice is the "touchstone" of the amendment analysis. Eminence Capital, 316

5   F.3d at 1052. Absent a showing of prejudice, there is a presumption in favor of

6   granting leave to amend. See id. ("The party opposing the amendment bears the

7   burden of showing prejudice."); SAES Getters, S.p.A. v. Aeronex, Inc., 219 F. Supp. 2d

8   1081, 1086 (S.D. Cal. 2002).

9       **1.    MGA Has Been On Notice Of The Subject Of The Amendments**

10      The MGA parties cannot credibly claim unfair prejudice arising from Mattel's

11  amendment. They have been on notice of the facts underlying Mattel's amendment

12  since at least when Mattel discovered them. See Sierra Club v. Union Oil Co. of

13  California, 813 F.2d 1480, 1492 (9th Cir. 1987), rev'd on other grounds, 485 U.S. 931

14  (1988) ("[W]here a defendant is on notice of the facts contained in an amendment to a

15  complaint, there is no serious prejudice to defendant in allowing the amendment.");

16  William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., 668 F.2d 1014,

17  1053, n. 68 (9th Cir. 1982) (no prejudice existed, though new conspiracy claims were

18  raised on the eve of trial, because the defendant "had received notice of [the new]

19  claims one year before the trial commenced"); see also Travelers Prop. Cas. Co. of

20  Am. v. Noveon, Inc., 248 F.R.D. 87, 91 (D. Mass. 2008) (finding no prejudice where it

21  was "undisputed that the . . . [d]efendants were put on notice" of the new claims shortly

22  after they were revealed through discovery).

23      Mattel raised the transactions involving the Omni Parties and the IGWT entities

24  as soon as it learned about them through its own investigation in December 2008.[62] Of

25  course, even before Mattel raised these transactions, MGA and Larian were fully aware

26  of them and, at least with respect to the Omni Parties, put them in issue by falsely

27

28  
    EXHIBIT **32**
    PAGE **400**

                        MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  representing to the Court that MGA had been unable to obtain funding due to the jury's
2  Phase 1 trial verdict.[63]   Mattel sought leave to take discovery regarding these
3  transactions even before the Court lifted the Phase 2 discovery stay. Since the stay was
4  lifted, these transactions have been the subject of numerous discovery requests, to
5  MGA and a number of the other involved entities, and the subject of ongoing discovery
6  disputes.[64] Amendment will not cause MGA any undue prejudice.

7        Discovery put MGA on notice of the subject of most, if not all, of the remaining
8  amendments. Mattel disclosed then-known details of Jorge Castilla's trade secret theft
9  in supplemental interrogatory responses served in December 2007.[65]   Mattel sought
10 discovery from MGA regarding Castilla months earlier.[66] Castilla was twice ordered to
11 appear for deposition because his trade secret theft is already within the scope of
12 Mattel's pleadings.[67]

13       MGA has also long been aware that destruction and spoliation of evidence are at
14 issue in this lawsuit, including as predicate acts for Mattel's RICO claims.[68]   Even
15 before Farhad Larian admitted to destroying documents to keep them from Mattel at

16 _____

17  [62]  See Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s *Ex Parte* Application
    For Stay of Injunction Pending Appeal, dated December 23, 2008 (Docket No. 2335).
18  [63]   In Sierra Club , 813 F.2d at 1492, the Ninth Circuit found that there could be no
19  prejudice because the defendants had been put on notice by "their own records" of the
    events in question. The plaintiff in that case sought leave to amend to add new claims
20  that it had learned of through its discovery efforts, despite the defendant's concealment.
    Id. at 1485-86. As in Sierra Club, MGA's and Larian's own involvement in and records
21  regarding the financial transactions at issue have provided them with ample notice.
    Accordingly, even if Mattel had not repeatedly brought its new findings to the attention
22  of MGA, MGA could not demonstrate prejudice.
    [64]   Kidman Dec., ¶ 19.
23  [65]   Mattel's Supplemental Response to MGA's First Set of Interrogatories,
    Interrogatory No. 1, Kidman Dec., Exh. 55.
24  [66]  Mattel, Inc.'s Fourth Set of Requests for Production of Documents and Things to
    MGA Entertainment, Inc., dated October 25, 2007, Request Nos, 36-38, Kidman Dec.,
25  Exh. 65.
    [67]   See Civil Minutes - General, dated Sept. 2, 2008, Kidman Dec., Exh. 75; Order
26  dated October 10, 2008, Kidman Dec., Exh. 76.
    [68]   Second Amended Answer and Counterclaims, ¶ 93(c); Hearing transcript dated
27  May 15, 2007 at 9:15-25, Kidman Dec., Exh. 41 (in which Mattel argued that requested
28  discovery is "relevant to spoliation, which is definitely at issue in this case.").

1 deposition in February 2008, Mattel's discovery requests put MGA on notice that
2 Farhad Larian's evidence destruction and spoliation on behalf of MGA and Larian was
3 at issue. In a subpoena served on Farhad Larian in August 2007, Mattel specifically
4 requested all documents relating to any instruction by Isaac Larian or MGA to destroy
5 or withhold any document since January 1, 1998.[69]

6 When Mattel learned for the first time that three additional Mattel Design Center
7 employees had been secretly working on Bratz for years at the deposition of Veronica
8 Marlow on December 28, 2007 (despite MGA's prior, sworn claims that falsely denied
9 these activities), Mattel immediately and repeatedly put MGA on notice that the
10 payments to these individuals may constitute acts of commercial bribery within the
11 scope of Mattel's RICO claims.[70]

12         **2.**    **The Amendments Will Not Significantly Expand The Scope Of**
13                 **The Case, If At All**

14 The subjects of the amendments are relevant to existing issues in this case and
15 therefore will be litigated whether or not Mattel is granted leave to amend. As such, the
16 factual matters raised by the amendments will not significantly expand the scope of the
17 case and will not prejudice counter-defendants. For example, the purported Omni and
18 IGWT transactions are relevant to the MGA parties' financial condition, which is
19 relevant to Mattel's claims for damages, including punitive damages for the MGA
20 parties' misappropriation of Mattel's trade secrets and to Mattel's disgorgement
21 remedies. Indeed, the Discovery Master has already found that the IGWT transactions

22

---

23    [69] Farhad Larian Subpoena served September 1, 2007, Kidman Dec., Exh. 74.
   [70] See Mattel, Inc.'s Notice of Motion and Motion to Compel Additional Deposition
24 Testimony and Production of Documents By Veronica Marlow, dated January 28,
2008, at 5, Kidman Dec., Exh. 67 ("the payments to these employees may constitute
25 instances or acts of commercial bribery that are predicate acts for Mattel's RICO claims
in this action"); Hearing Transcript, dated April 22, 2008, at 188:23-189:5, Kidman
26 Dec., Exh. 39 ("And I will note that characterization of our claim is a little bit, I think,
too narrow. The fact is that there was commercial bribery not only because MGA paid
27 Carter Bryant[.] Carter Bryant paid others. And we also believe that, when discovery
is finished on people like Cabrera, Morales, and so on[,] [t]hat there will be more
28 (footnote continued)

EXHIBIT 3
PAGE 402

1 are relevant to Mattel's claim for damages.[71] Moreover, even without amendment, the

2 transactions relate to Mattel's RICO claims and, at a minimum, raise a host of RICO

3 predicate violations and are relevant to counter-defendants' intent and pattern. See, e.g.,

4 18 U.S.C. § 1957 (use of unlawful funds), 18 U.S.C. § 2314 (transportation of

5 converted funds), 18 U.S.C. § 152 (concealing proceeds from unlawful activity).

6 Larian's perjury regarding the origin of Bratz is also relevant as a predicate act in

7 furtherance of the illegal RICO scheme,[72] and will be relevant in any event to his

8 credibility at Phase 2 trial. Similarly, payments to the three Mattel employees for their

9 secret work on Bratz while employed by Mattel and Farhad Larian's destruction of

10 documents are relevant to the predicate acts of commercial bribery and evidence

11 tampering and have been the subject of discovery.[73] And, as shown above, discovery

12 regarding Jorge Castilla's theft of trade secrets has already been compelled by the Court

13 because it is relevant to Mattel's existing claims.[74]

14

15 evidence of commercial bribery and unfair competition running to both MGA and

16 Carter Bryant.").

17 [71] Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 29-30, Kidman Dec., Exh. 61.

18 [72] 18 U.S.C. § 1961(1)(B) (acts indictable under the obstruction of justice statute are RICO predicate acts); United States v. Mayer, 775 F.2d 1387, 1391 (9th Cir. 1985)

19 (stating that a false statement to a magistrate could be properly charged as obstruction); Streck v. Peters, 855 F. Supp. 1156, 1162 (D. Hawaii 1994) ("this Court believes the

20 better reasoned position is that acts of perjury may, under the appropriate circumstances, constitute RICO predicate acts."); Town of Kearny v. Hudson Meadows

21 Urban Renewal Corp., 829 F.2d 1263, 1269 (3d Cir. 1987) ("Moreover the perjured 1980 testimony could be found to establish the continued existence of the RICO

22 enterprise through that time, and that perjury was a part of the pattern of racketeering activity.").

23 [73] Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1526 (9th Cir. 1995) (finding that plaintiff stated RICO cause of action based on predicate acts that included violations of Cal.

24 Penal Code § 641.3, California's commercial bribery statute); United States v. Welch, 327 F.3d 1081, 1098 (10th Cir. 2003) (Colorado commercial bribery statute could

25 provide predicate act for RICO); United States v. Boffa, 513 F. Supp. 444, 480 (D.C. Del. 1980) (falsification of evidence constituted RICO predicate act of obstruction of

26 justice); 18 U.S.C. § 1961(1)(B) (acts indictable under the obstruction of justice statute are RICO predicate acts).

27 [74] Nonetheless, the MGA parties have refused to provide relevant discovery with respect to a number of these subject matters based on the purported scope of the

28 allegations in the SAAC. For example, the MGA parties have argued that the (footnote continued)

-17-
...TION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT
PAGE

1    Mattel's amendments would not unduly prejudice counter-defendants.

2    **C.    Mattel Has Timely Sought To Amend Its Complaint**

3    The IGWT entities and Omni 808 did not even exist until the Phase 1 trial was

4    underway, and Mattel did not uncover the transactions until December, after MGA and

5    Larian made false representations to this Court and to the Ninth Circuit about MGA's

6    financial condition in connection with its stay motions that, as a result of this case, it

7    has been unable to obtain funding.[75]    Mattel was unable to serve any discovery

8    regarding the transactions until after the Court lifted the Phase 2 discovery stay in

9    January 2009. On March 16, 2009, Wachovia produced documents which show that

10   the Omni Parties' representations that MGA and Isaac Larian did not have an interest in

11   the Omni Parties are incorrect and which instead appear to demonstrate that the Omni

12   Parties and the IGWT entities are shells that Larian is using to mask his own capital

13   contributions to MGA, which he, MGA and the Omni Parties are mischaracterizing as

14   debt.[76]    That recent Wachovia production also revealed new evidence, never produced

15   by MGA and Larian, showing additional acts by Larian to siphon assets and property

16   ——————————————

17   transactions with the Omni Parties and the IGWT entities cannot be relevant because
     they took place years after Mattel's complaint was filed. (See Hearing Transcript dated
18   March 4, 2009 at 42:21-43:14, Kidman Dec., Exh. 68; MGA Parties' Reply in Support
     of their Motion to Quash Receiver Subpoenas Issued by Mattel, dated March 4, 2009, at
19   5-12, Kidman Dec., Exh. 38.)   They have even argued that any communications
     between Isaac Larian and Jorge Castilla in March 2006 when he left Mattel and went to
20   MGA could not be relevant to Mattel's theft of trade secret claim because the SAAC
     does not allege any specific instances of theft after 2005. See MGA Parties' Opposition
21   to Mattel, Inc.'s 3/4/09 Renewed Motion for Reconsideration of Portions of Discovery
     Master's December 31, 2007 Order, dated March 11, 2009, Kidman Dec., Exh. 69.
22   Granting Mattel leave to amend is not only consistent with the policy that strongly
     favors amendment, it would serve the salutary purpose of eliminating these specious
23   arguments so that relevant discovery can go forward without further impediments by
     the MGA parties and their related entities.

24   [75]   See Declaration of Brian Wing in Support of the MGA Parties' Request for a
     Stay, dated December 11, 2008, at ¶ 18, Kidman Dec., Exh. 17.

25   [76]   See OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008,
     Kidman Dec., Exh. 60; See also Senior Promissory Note, dated September 3, 2008,
26   Kidman Dec., Exh. 62 (section 9(b) states that "purchaser"—*i.e.*, Omni 808—is an
     "affiliate" of MGA under the Note); see also September 8, 2008 Wachovia Memo. at
27   WACHOVIA 001886, Kidman Dec., Exh. 63 (summarizing terms of Wachovia's
28   (footnote continued)

EXHIBIT **3** ~~N~~ FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

PAGE **404**

1  out of MGA.[77] There has been no delay, let alone undue delay, in seeking amendment
2  with respect to these transactions.

3      Other amendments are based on facts that Mattel did not discover until shortly
4  before or, in some instances, after the Phase 2 discovery stay on February 4, 2008. For
5  example, after MGA claimed under oath for years that Carter Bryant was the only
6  employee of Mattel who worked on Bratz while a Mattel employee,[78] Mattel first
7  learned of MGA's secret payments to three additional Mattel employees for work on
8  Bratz during Veronica Marlow's deposition in late December 2007—a deposition which
9  MGA had long obstructed from happening.[79] Only upon further discovery did Mattel
10 learn that these illegal payments had been concealed by paying the employees in cash
11 and through the use of false names and false social security numbers.[80] Mattel did not
12 learn the fact of Farhad Larian's destruction of documents until his deposition in
13 February 2008. And, of course, Mattel did not learn of Isaac Larian's perjury regarding
14 the origin of Bratz during the Phase 1 trial until he gave the testimony.

15     MGA cannot legitimately complain that Mattel unfairly delayed in seeking
16 amendment, particularly given that it has been only some three months since the Court
17 lifted the Phase 2 discovery stay. In any case, even where (unlike here) undue delay
18 exists, "delay, by itself, is insufficient to justify denial of leave to amend." DCD

19

20 Senior Note and stating that "[a]ffiliate transactions are restricted (and Omninet is
21 considered an affiliate)").
       [77] See, e.g., supra at nn. 37-41; see generally Supp. Zeller Dec.
22     [78] See Deposition of Lisa Tonnu, Vol. 2, dated September 24, 2007, at 297:15-
23 298:10, Kidman Dec., Exh. 71. During more than three years of discovery, MGA never
   disclosed these facts, despite Court Orders compelling MGA to fully disclose Mattel
24 employees who were working on Bratz. (See Order Granting Mattel's Motion to
   Compel Production of Documents and Interrogatory Responses by MGA, dated May
25 15, 2007, at 12, Kidman Dec., Exh. 44.)
       [79] See generally Mattel, Inc.'s Ex Parte Application to (1) Compel Depositions of
26 Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative,
   Modify the Scheduling Order; and Memorandum of Points and Authorities in Support
27 Thereof, and Declaration of B. Dylan Proctor in Support dated November 15, 2007
   (Docket No. 1117).
28     [80] See Trial Transcript, June 24, 2008 at 3673:5-3674:1, Kidman Dec., Exh. 72.

1  Programs, 833 F.2d at 186 (citing U.S. v. Webb, 655 F.2d 977, 980 (9th Cir. 1981)

2  ("[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to

3  amend."); Islamic Republic of Iran v. The Boeing Co., 771 F.2d 1279, 1287 (9th Cir.

4  1985) (*two year* delay between discovery of the counterclaims and moving to amend

5  did not, by itself, necessitate denial of leave to amend); Howey v. United States, 481

6  F.2d 1187, 1191 (9th Cir. 1973) ("Only where prejudice is shown or the movant acts in

7  bad faith are courts protecting the judicial system or other litigants when they deny

8  leave to amend a pleading.").

9      **D.    Mattel Seeks To Amend The Complaint In Good Faith**

10      The "bad faith" that courts consider in determining whether to grant leave to

11  amend is "understood to mean such tactics as, for example, seeking to add a defendant

12  merely to destroy diversity jurisdiction." SAES Getters, 219 F. Supp. 2d at 1086 (citing

13  Sorosky v. Burroughs Corp., 826 F.2d 794, 805 (9th Cir. 1987)).  Here, there is no

14  question that Mattel's motion is not in bad faith.  The proposed Third Amended Answer

15  and Counterclaims will not alter the Court's jurisdiction.  If Mattel is not permitted to

16  amend the pleadings to add the new claim and allegations, it will be forced to

17  commence a new proceeding.  That would entail needless duplication of effort and

18  would be wasteful of judicial and party resources.

19      **E.    Mattel's Amendment Is Meritorious, Not Futile**

20      The standard for denying a motion for leave to amend based upon futility is

21  exceedingly high.  Under the law of this Circuit, "a proposed amendment is futile only

22  if *no* set of facts can be proved under the amendment to the pleadings that would

23  constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845

24  F.2d 209, 214 (9th Cir. 1988) (reversing denial of leave to amend answer).  As the

25  Supreme Court stated in Foman, "[i]f the underlying facts or circumstances relied upon

26  by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity

27  to test his claims on the merits." 371 U.S. at 181.

28

EXHIBIT 37
PAGE 406

1      Defendants cannot demonstrate that Mattel's proposed amendment is futile
2   as a matter of law.  There is no basis to deny leave to amend.

3   **II.   MATTEL SHOULD BE PERMITTED TO SUPPLEMENT ITS**
4   **COUNTERCLAIMS UNDER RULE 15(D)**

5      Rule 15(d) of the Federal Rules of Civil Procedure provides that "[u]pon motion
6   of a party the court may, upon reasonable notice and upon such terms as are just, permit
7   the party to serve a supplemental pleading setting forth transactions or occurrences or
8   events which have happened since the date of the pleading sought to be supplemented."
9   Rule 15(d) "is intended to give district courts broad discretion in allowing supplemental
10  pleadings." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988) (citing Fed. R. Civ. P.
11  15(d), advisory committee's note).  Rule 15(d) "is a tool of judicial economy and
12  convenience," and its "use is therefore favored." Id.  In fact, the Ninth Circuit has held
13  that supplemental pleadings are "[s]o useful . . . and of such service in the efficient
14  administration of justice that they ought to be allowed as of course, unless some
15  particular reason for disallowing them appears, though the court has the unquestioned
16  right to impose terms upon their allowance when fairness appears to require them." Id.
17  (quoting New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 28-29 (4th Cir. 1963), cert.
18  denied, 376 U.S. 963 (1964)).

19     "The clear weight of authority . . . permits the bringing of new claims in a
20  supplemental complaint to promote the economical and speedy disposition of the
21  controversy." Id. (citing William Inglis & Sons Baking Co., 668 F.2d at 1057 ("The
22  purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between
23  the parties as possible by allowing the addition of claims which arise after the initial
24  pleadings are filed.")).  It is not required under Rule 15(d) that the new claims "arise
25  out of the same transaction or occurrence" as the existing claims.  Id.  ("While some
26  relationship must exist between the newly alleged matters and the subject of the
27  original action, they need not all arise out of the same transaction.").  Instead, the Ninth
28  Circuit has required only "a relationship among the claims." Id; see also Cabrera v.

-21-

EXHIBIT 3**7**  TION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS
PAGE **407**

1  City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998) ("Rule 15(d) permits the

2  filing of a supplemental pleading which introduces a cause of action not alleged in the

3  original complaint and not in existence when the original complaint was filed.")

4  (quoting United States v. Reiten, 313 F.2d 673, 674 (9th Cir. 1963)).

5       Here, the transactions underpinning the fraudulent conveyance claim and the

6  related allegations regarding the Omni Parties and the IGWT entities occurred after the

7  filing of the SAAC. As demonstrated above, Omni 808 was not even created until after

8  the Phase 1A verdict and Omni 808 registered its supposed acquisition of Wachovia's

9  debt on August 29, 2008, three days after the Phase 1B verdict. Likewise, IGWT, a

10  sham enterprise that has its address at Larian's home, was not created until June 26,

11  2008, during the Phase 1 trial. IGWT 826, which has the home of Larian's sister as its

12  supposed offices, was not created until August 27, 2008, the day after the Phase 1 trial

13  ended.

14       There is a clear relationship between these underlying fraudulent transactions and

15  the claims alleged in the SAAC. Although they involve certain newly created entities,

16  these transactions are an extension of the fraudulent scheme at the heart of Mattel's

17  existing RICO claims. The purpose of these fraudulent transactions is to launder or

18  otherwise conceal both the fact of, and the ill-gotten gains from, MGA's and Larian's

19  ongoing conspiracy to defraud Mattel and steal its property and to engage in further acts

20  of criminal copyright infringement that are the subject of Mattel's existing claims. The

21  fraudulent schemes are clearly connected.

22       As set forth above, MGA will suffer no prejudice if Mattel is permitted to

23  supplement its counterclaims to include the allegations regarding the fraudulent

24  transactions with the Omni Parties and the IGWT entities. Judicial efficiency is served

25  by adjudicating all claims in one action because they involve primarily the same RICO

26  conspiracies and the same general purposes of stealing from, competing unfairly with

27  and defrauding Mattel.

28

00505 07975/2858537 2

EXHIBIT 37
PAGE 408

-22-
MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

III.  **IF AND TO THE EXTENT NECESSARY, GOOD CAUSE EXISTS FOR MODIFYING THE SCHEDULING ORDER TO ALLOW MATTEL'S AMENDMENT**

At that hearing where it bifurcated this matter, the Court stated that "[a]ny further amendments or the addition of parties in either of these cases is going to require leave of court."[81]  That same day, the Court issued a "Schedule of Trial and Pretrial Dates" for Phase 2 setting, among other things, a trial date of July 1, 2008 and stating that the "last date to amend pleadings or add parties" was "closed."[82]  The Court has vacated each of the dates in its original schedule. On February 11, 2009, the Court set new trial and pretrial dates for Phase 2. The Court's Order did not reference a deadline by which to amend the pleadings.[83]

Rule 16(b) provides that the deadlines in a scheduling order may be modified "for good cause and with the judge's consent." See also Fed. R. Civ. P. 16(b) advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of goods cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008) ("The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.").

To the extent there is a Phase 2 scheduling order deadline for amending the pleadings and that deadline has passed, good cause exists for modifying the scheduling order to permit Mattel's amendment.  As set forth above, the amendments will not unduly prejudice the MGA parties.  Moreover, the failure to meet any such deadline was not due to Mattel's lack of diligence.  Indeed, nearly all of the conduct at issue had

---

[81]  Hearing Transcript dated February 12, 2007, at 22:10-11, Kidman Dec., Exh. 77.
[82]  Civil Minutes dated February 12, 2007, Kidman Dec., Exh. 78.  On February 21, the Court issued a scheduling order pursuant to Rule 16(b).  The scheduling order set forth the dates from the "Schedule of Trial and Pretrial Dates" but made no reference to a deadline to amend the pleadings or add new parties.  (See Kidman Dec., Exh. 79.)
[83]  Civil Minutes dated February 11, 2009, Kidman Dec., Exh. 80.

00505 07975/2858537 2

EXHIBIT 52
PAGE 409

-23-
... FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

1 | not been discovered by Mattel as of the date of the Court's original scheduling order
2 | and in many instances had not yet even occurred. In addition, judicial economy will be
3 | served by the resolution of Mattel's claims in a single lawsuit.

4 | ### Conclusion

5 | For the reasons set forth above, Mattel respectfully requests that the Court grant
6 | it leave to file its Third Amended Answer and Counterclaims.

7 |

8 | DATED: April 8, 2009      QUINN EMANUEL URQUHART OLIVER &
9 | HEDGES, LLP

10 |
11 | By /s/ Michael T. Zeller
     Michael T. Zeller
     Attorneys for Mattel, Inc.

EXHIBIT
PAGE 410

MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

00505 07975/2858537.2

# EXHIBIT 33

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 34

76760/2898733.1

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**