1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California 90067
    Telephone:  (310) 553-3000
4   Facsimile:  (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for Defendants
    MGA Entertainment, Inc., MGA Entertainment HK, Ltd.,
11  MGAE De Mexico, S.R.L De C.V., and Isaac Larian

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

| | |
|---|---|
| 14  CARTER BRYANT, an individual,, | CASE NO.  CV 04-9049 SGL (RNBx) |
| 15           Plaintiff, | Consolidated with |
| 16      v. | Case No.  CV 04-09059 <br> Case No.  CV 05-02727 |
| 17  MATTEL, INC., a Delaware <br> corporation,, | Hon. Stephen G. Larson |
| 18 | **[PUBLIC REDACTED]** |
| 19           Defendant. | |
| 20  AND CONSOLIDATED CASES | **MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS** |
| 21 | |
| 22 | **[DECLARATIONS OF PATRICIA H. BENSON AND ALFREDO ORTEGA IN SUPPORT OF OPPOSITION FILED CONCURRENTLY HEREWITH]** |
| 23 | |
| 24 | Date:      May 11, 2009 |
| 25 | Time:     10:00 a.m. <br> Place      Courtroom 1 |
| 26 | **Phase 2** |
| 27 | Discovery Cut-Off:      Dec. 11, 2009 <br> Pre-Trial conference:   March 1, 2010 <br> Trial Date:                 March 23, 2010 |
| 28 | |

Mitchell
Silberberg &
Knupp LLP

2213723.1

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ........................................................................... 1

II.   MATTEL MISSTATES AND FAILS TO MEET THE
      STANDARDS FOR AMENDING AND SUPPLEMENTING
      ITS SAAC ................................................................................... 1

      A.    Mattel's Motion Is Governed By Rule 16. ........................... 2

      B.    Additional Requirements Of Rule 15(a). .............................. 4

      C.    Leave To Supplement Pursuant To Rule 15(d). .................... 4

III.  MATTEL SHOULD NOT BE PERMITTED TO ADD NEW
      CLAIMS RELATING TO 2008 FINANCIAL
      TRANSACTIONS ........................................................................ 5

      A.    Claims Based On 2008 Financial Transactions Would
            Radically Expand The Scope Of The Litigation. ................... 5

      B.    The Allegations of "Financial Manipulation" Cannot Be
            RICO Predicate Acts ......................................................... 10

      C.    Adding The Claims Would Seriously Prejudice The
            MGA Parties ...................................................................... 11

IV.   THE "PERJURY" CLAIMS SHOULD NOT BE PERMITTED ................. 11

V.    NONE OF MATTEL'S PROPOSED AMENDED CLAIMS
      SHOULD BE PERMITTED .......................................................... 14

      A.    Jorge Castilla's Alleged Theft Of Trade Secrets ................ 14

      B.    Mattel's Motion to Add Farhad Larian's "Evidence
            Tampering" As A RICO Predicate Act Should Be Denied ... 19

      C.    The Proposed Amendment Alleging "Commercial
            Bribery" Of Three Seamstresses Should Not Be Allowed ... 22

      D.    Mattel's Proposed Amendment Of The Copyright
            Infringement Claim Is Improper And Should Not Be
            Allowed ............................................................................ 25

Mitchell
Silberberg &
Knupp LLP

2213723.1

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acri v. Int'l. Ass'n of Machinists & Aerospace Workers,*
  781 F.2d 1393 (9th Cir. 1986) .......................................................................... 16

*Amerisourcebergen Corp. v. Dialysist West, Inc.,*
  465 F.3d 946 (9th Cir. 2006) ............................................................................. 15

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) .......................................................................................... 13

*Ascon Properties, Inc. v. Mobil Oil Co.,*
  866 F.2d 1149 (9th Cir. 1989) ...................................................................... 4, 20

*Bradberry v. Schriro,*
  2009 WL 971298 (D. Az. April 8, 2009) ........................................................ 4, 9

*Burka v. Aetna Life Ins. Co.,*
  945 F. Supp. 313 (D.D.C. 1996) ............................................................... 5, 9, 12

*Chaset v. Fleer/Skybox Intern., LP,*
  300 F.3d 1083 (9th Cir. 2002) ....................................................................... 9, 21

*Chodos v. West Publishing Co., Inc.,*
  292 F.3d 992 (9th Cir. 2002) ............................................................................. 16

*City of Merced v. Fields,*
  997 F. Supp. 1326 (E.D. Cal. 1998) ................................................................... 6

*Coleman v. Quaker Oats Co.,*
  232 F.3d 1271 (9th Cir. 2000) ........................................................................ 2, 3

*DeMauro v. DeMauro,*
  115 F.3d 94 (1st Cir. 1997) .............................................................................. 11

*Edwards Lifesciences LLC v. Cook Inc.,*
  2008 WL 913328 (N.D. Cal. 2008) ................................................................... 20

*Esteem v. City of Pasadena,*
  2007 WL 4270360 (C.D. Cal. Sept. 11, 2007) ................................................... 4

Mitchell
Silberberg &
Knupp LLP

2213723.1

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Gabrielson v. Montgomery Ward & Co.,*
    785 F.2d 762 (9th Cir. 1986)..........................................................................21

*Gidding v. Anderson,*
    2008 WL 4065814 (N.D. Cal. Aug. 27, 2008).........................................13, 21

*Glatt v. Chicago Park Dist.,*
    87 F.3d 190 (7th Cir. 1996)................................................16, 17, 18, 19, 24

*In re Allustiarte,*
    786 F.2d 910 (9th Cir. 1986)...........................................................................6

*Johns v. Autonation USA Corp.,*
    246 F.R.D. 608 (D. Az. 2006).........................................................................2

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992)..............................................................2, 3, 4, 15

*Krulikowsky v. Metropolitan Dist. Council of Philadelphia and Vicinity,*
    270 F. Supp. 122 (D. Pa. 1967).......................................................................6

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991).........................................................................13

*Lincoln House, Inc. v. Dupre,*
    903 F.2d 845 (1st Cir. 1990) .........................................................................10

*M/V American Queen v. San Diego Marine Const. Corp.,*
    708 F.2d 1483 (9th Cir. 1983).................................................................22, 25

*Mariano v. Everett Housing Authority,*
    166 Fed. Appx. 273, 2006 WL 92495 (9th Cir. 2006).............................17, 21

*Mullen v. Surtshin,*
    590 F. Supp. 2d 1233 (N.D. Cal. 2008) ...................................................4, 5, 9

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007)...........................................................................8

Mitchell
Silberberg &
Knupp LLP

2213723.1

iii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Oparaji v. New York City Dept. of Edu.,*
    172 Fed. Appx. 352, 2006 WL 522364 (2d Cir. 2006)..................16

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,*
    754 F.2d 738 (7th Cir. 1985)..................9

*Planned Parenthood of Southern Arizona v. Neely,*
    130 F.3d 400 (9th Cir. 1997)..................4

*Resolution Trust Corp. v. Keating,*
    186 F.3d 1110 (9th Cir. 1999)..................21

*Roth v. Garcia Marquez,*
    942 F. 2d 617 (9th Cir. 1991)..................21

*Sonora Diamond Corp. v. Superior Court,*
    83 Cal. App. 4th 523 (2000)..................8

*Streck v. Peters,*
    855 F. Supp. 1156 (D. Hawaii 1994)..................12

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008)..................13

*Thomas v. Baca,*
    2009 WL 117983 (9th Cir. Jan. 9, 2009)..................10

*Town of Kearney v. Hudson Meadows Urban Renewal Corp.,*
    829 F. 2d 1263 (3rd Cir. 1987)..................12

*TWM Homes, Inc. v. Atherwood Realty & Inv. Co., Inc.,*
    214 Cal. App. 2d 826 (1963)..................6

*U.S. v. Gonzalez-Mares,*
    752 F.2d 1485 (9th Cir. 1985)..................12

*U.S. v. Mayer,*
    775 F.2d 1387 (9th Cir. 1985)..................12

*U.S. v. Princeton Gamma-Tech, Inc.,*
    817 F. Supp. 488 (D.N.J. 1993)..................2

Mitchell
Silberberg &
Knupp LLP

2213723.1

iv

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*U.S. v. Ryan,*
   455 F.2d 728 (9th Cir. 1972)..............................................................14

*Weekes v. Atlantic Nat. Ins. Co.,*
   370 F.2d 264 (9th Cir. 1966)................................................................5

*Western Shoshone Nat. Council v. Molini,*
   951 F.2d 200 (9th Cir. 1991)........................................................22, 25


## STATUTES

18 U.S.C.
   § 1001 ..............................................................................................12
   § 1503 ........................................................................................12, 13
   § 1961(1) ..........................................................................................12
   § 1964(c) ..........................................................................................13

Cal. Civ. Code
   § 3439.04(a)........................................................................................7
   § 3439.05............................................................................................7
   §§ 3439 *et seq*...................................................................................5

California Penal Code
   § 641.3 ..............................................................................................24

Mitchell
Silberberg &
Knupp LLP

2213723.1

v

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## RULES

Fed. R. Civ. P.

| | |
|---|---|
| 4(m) | 6 |
| 8 | 11 |
| 9(b) | 13 |
| 12(f) | 11 |
| 15 | 2, 3, 4 |
| 15(a) | 1, 3, 4 |
| 15(d) | 4 |
| 16 | 2 |
| 16(b) | 2, 3, 4, 15 |
| 19(a) | 6 |
| 24(a)(2) | 7 |

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

## I.    INTRODUCTION

In early January 2007, this Court permitted Mattel to "radically alter the litigation" by amending its answer and counterclaims. *See* Kidman Decl. in support of Motion, Ex. 51. As a result, existing deadlines were extended, the trial date was changed, and the case was split into phases. Mattel should not be permitted to again yank this case in an entirely new direction. For, despite Mattel's glib assertions to the contrary, each of the proposed amended and supplemental claims it wants to add would dramatically expand the nature and scope of the Phase 2 issues remaining to be tried, and prolong the litigation of this already years-old case.

Mattel baldly asserts that the factual matters raised by its proposed additions will be litigated whether or not leave to amend is granted. Mot. at 1, 16. Although the MGA parties disagree strongly with that position, it raises an issue of admissibility of certain evidence, to be determined by the Court in the context of the trial and not on (an admittedly unnecessary) motion to amend.

At this late stage, and after a Scheduling Order that "closed" further amendments over two years ago, Mattel's motion is not analyzed under the "liberal" standards of Fed. R. Civ. P. 15(a), as Mattel argues. Mot. at 1. The governing tests include whether Mattel acted diligently, whether the new claims would promote judicial economy, and whether they are legally or factually meritorious. Mattel fails each of these.

## II.    MATTEL MISSTATES AND FAILS TO MEET THE STANDARDS FOR AMENDING AND SUPPLEMENTING ITS SAAC[1]

Mattel seeks both to amend and to supplement its SAAC. Mattel misstates the standards for doing so at this late stage of the litigation, and fails to satisfy the standards for either amending or supplementing.

---

[1] As used herein, "SAAC" refers to the Second Amended Answer and Counterclaims, and "PTAAC" refers to the Proposed Third Amended Answer and Counterclaims.

Mitchell
Silberberg &
Knupp LLP
2213723.1

1

A.   **Mattel's Motion Is Governed By Rule 16.**

Mattel would like to pretend there was no deadline for amending pleadings. Mot. at 23:9-11. This is not correct; the deadline for amending pleadings expired over two years ago. On February 22, 2007, the Court issued a Rule 16(b) Scheduling Order for Case No. 05-2727 (the "Scheduling Order"), ordering that the "last date to Amend Pleadings or Add Parties" was "closed." *See* Kidman Decl., Ex. 79. While the Court subsequently reset other deadlines in the Scheduling Order, it did not modify or extend the deadline for amending pleadings, nor did Mattel ever request that it do so.[2]

Thus, Rule 15's "liberal policy" regarding amendment is not the applicable standard, as Mattel argues. *See* Mot. at 1:11-12. "Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings that rule's standards control[]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (denying motion to amend because court had "established a timetable for amending the pleadings and the deadline had expired"); *U.S. v. Princeton Gamma-Tech, Inc.*, 817 F. Supp. 488, 497 (D.N.J. 1993) (denying motion to supplement pleading filed after deadline in scheduling order).

Under Rule 16(b), courts may only modify a scheduling order for "good cause." Fed. R. Civ. P. 16(b). "The standard for granting an extension pursuant to Rule 16 is markedly different from the standard pursuant to Rule 15." *Johns*, 246

---

[2] Mattel suggests that the Court reopened the time for amendment of pleadings because it reset certain other deadlines and set a new trial date without mentioning the deadline for amendment. Mot. at 23. Failure to mention the already-passed deadline did not reopen it. *See, e.g., Johns v. Autonation USA Corp.*, 246 F.R.D. 608, 610 (D. Az. 2006) (deadline for amending pleadings set forth in initial scheduling order controlled because "subsequent Rule 16 Scheduling Orders did not mention the deadline due to the deadline having already passed at the time the orders were entered ... [and] Defendants never requested an extension of the time for it to amend its answer").

Mitchell Silberberg & Knupp LLP
2213723.1

1   F.R.D. at 609-10.  "Unlike Rule 15(a)'s liberal amendment policy, which focuses

2   on the bad faith of the party seeking to interpose an amendment and the prejudice to

3   the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the

4   diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.  Also

5   unlike Rule 15, Rule 16(b) does not require the party opposing an amendment to

6   show prejudice from the delay.  *See, e.g., Coleman*, 232 F.3d at 1295 (9th Cir.

7   2000) (prejudice is "not required under Rule 16(b)").  If the moving party was not

8   diligent (as Mattel was not), ***the inquiry should end***."  *Johnson*, 975 F.2d at 609

9   (emphasis added).

10        Mattel fails the diligence test with respect to all its proposed amendments.  It

11   knew about the matters alleged as to Jorge Castilla in March 2006 – ***eight months***

12   ***before Mattel sought leave to amend the first time, and more than three years***

13   ***before it filed the instant motion***.  (*See* discussion in Part V.A., *infra*.)  It offers no

14   explanation for failing to include these allegations when it originally moved to

15   amend.  Further, Mattel admits it learned ***over a year ago*** of Farhad Larian's

16   document destruction and the supposed "bribery" of three moonlighting Mattel

17   seamstresses.  Mot. at 11; Kidman Decl. Exs. 81, 35.  (Indeed, both these "new

18   facts" were litigated in Phase 1.)  Mattel invokes the Court's stay of Phase 2

19   discovery to "explain" its delay.  Mot. at 19.  That is no excuse.  The Court stayed

20   Phase 2 ***discovery***; it did not stay Mattel's right to seek to amend.  And, even if the

21   Phase 2 discovery stay had prevented Mattel from presenting new claims, Mattel

22   fails to explain why it waited until ***after*** a Phase 2 Scheduling Order had been

23   entered to seek to add "claims" it knew about before the discovery stay was

24   entered.[3]  Since Mattel has failed to offer any justification for its lengthy delay in

25

26   [3]  Mattel stood silent when the Court issued its Phase 2 Scheduling Order and set
     the Phase 2 trial date, never mentioning that there were additional "claims" it
27   wanted to add.  *See* Benson Decl. Ex. I (2/11/09 Tr. at 90:12-95:16).  One month
     after the Court had set a discovery cutoff that was earlier than Mattel had requested
28   (*id.* at 91:23-25, 94:8-13), Mattel announced its intent to add new claims.

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1   seeking leave to amend, its motion should be denied on that ground alone.

2   *Johnson*, 975 F.2d at 609 (If a party is not diligent, "the inquiry should end.").

3   **B.   Additional Requirements Of Rule 15(a).**

4   Even if Mattel could show "good cause" to amend under Rule 16(b) (it

5   cannot), it still "must demonstrate that amendment was proper under Rule 15."

6   *Johnson*, 975 F.2d at 609; *Esteem v. City of Pasadena*, 2007 WL 4270360, *13

7   (C.D. Cal. Sept. 11, 2007) (same). "[T]he liberality in granting leave to amend is

8   subject to several limitations." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d

9   1149, 1160 (9th Cir. 1989). "Leave need not be granted where the amendment of

10  the complaint would cause the opposing party undue prejudice, is sought in bad

11  faith, constitutes an exercise in futility, or creates undue delay." *Id.* Further, "[t]he

12  district court's discretion to deny leave to amend is particularly broad where

13  plaintiff has previously amended the complaint." *Id.*; *Mullen v. Surtshin*, 590 F.

14  Supp. 2d 1233, 1236 (N.D. Cal. 2008) (same). Each of Mattel's proposed

15  amendments not only fails to meet Rule 16(b) standards, but also fails all of Rule

16  15(a)'s additional tests.

17  **C.   Leave To Supplement Pursuant To Rule 15(d).**

18  "While Rule 15(a) explicitly requires that leave to amend be freely granted,

19  no comparable admonition applies to motions to supplement under Rule 15(d)."

20  *Bradberry v. Schriro*, 2009 WL 971298, *3 (D. Az. April 8, 2009). "Rather, the

21  Court has broad discretion when deciding whether or not to allow a party to

22  supplement his complaint." *Id.* While Mattel refers to the goal of Rule 15(d) –

23  "judicial economy" (which, as discussed below, is the opposite of what would

24  result here) – completely absent from Mattel's discussion are two important

25  considerations that must inform a Court's discretion.

26  First, a supplemental pleading "cannot be used to introduce a separate,

27  distinct and new cause of action." *Planned Parenthood of Southern Arizona v.*

28  *Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotations and citation omitted);

Mitchell
Silberberg &
Knupp LLP

2213723.1

4

1   *Mullen*, 590 F. Supp. 2d at 1238 ("The court may deny a motion to supplement

2   when the supplemental pleading could be the subject of a separate action.").

3   Second, "in deciding whether to grant or deny a motion to supplement, the Court

4   may consider the *merits* of the proposed new pleading." *Burka v. Aetna Life Ins.*

5   *Co.*, 945 F. Supp. 313, 317 (D.D.C. 1996) (*citing Weekes v. Atlantic Nat. Ins. Co.*,

6   370 F.2d 264 (9th Cir. 1966)) (emphasis added).  Leave to supplement is properly

7   denied where the additional claims are legally or factually defective. *See Burka*,

8   945 F. Supp. at 318.

9   **III.    MATTEL SHOULD NOT BE PERMITTED TO ADD NEW CLAIMS**

10  **RELATING TO 2008 FINANCIAL TRANSACTIONS**

11       Mattel's counterclaim under California's version of Uniform Fraudulent

12  Transfer Act ("UFTA"), Cal. Civ. Code §§ 3439 *et seq.*, and the RICO predicate

13  acts it attempts to construct upon that flimsy foundation, are supplemental claims

14  based entirely on facts and transactions occurring after the SAAC was filed.  There

15  is no legitimate reason these claims should be added to this lawsuit.

16       **A.    Claims Based On 2008 Financial Transactions Would Radically**

17       **Expand The Scope Of The Litigation**

18       The SAAC asserts common law and RICO causes of action based on trade

19  secret misappropriation and breaches of contractual duties by former Mattel

20  employees.  Mattel now proposes to add an entirely new, separate, and factually

21  and legally distinct counterclaim under the UFTA, and a new RICO counterclaim

22  based on allegations about a new, separate and distinct RICO "enterprise" involving

23  17 new individuals and entities, and financial transactions that occurred years after

24  the alleged trade secret thefts and contract breaches.  (PTAAC ¶ 136).  Remarkably,

25  Mattel argues that piling these vastly dissimilar and chronologically distinct claims

26  upon the already complex claims asserted in the SAAC will somehow promote

27  judicial efficiency.  Mot. at 22.  That position is untenable.

28

Mitchell
Silberberg &
Knupp LLP

2213723.1

5

1    **First**, adding the UFTA claim will **necessitate** the addition of at least **17 new**

2    **parties:** specifically, those persons and entities to whom or to which Mattel alleges

3    MGA fraudulently transferred assets.[4] Mattel conveniently ignores the fact that it

4    cannot simply bring its UFTA claim against MGA. It **must** join each of the alleged

5    transferees. *See, e.g., TWM Homes, Inc. v. Atherwood Realty & Inv. Co., Inc.*, 214

6    Cal. App. 2d 826, 848 (1963) ("The transferees ... are necessary parties defendant

7    in an action to set aside a fraudulent conveyance.").[5] Mattel has not even sought

8    leave to join the recipients of the alleged conveyances.

9       Moreover, the necessity of joining these additional parties will result in

10   practical and procedural difficulties that will endlessly protract this litigation.

11   Before proceeding, Mattel must serve all of the transferees. *See* Fed. R. Civ. P.

12   4(m); *City of Merced v. Fields*, 997 F. Supp. 1326, 1338 (E.D. Cal. 1998) ("[W]hen

13   a party is given leave to amend a complaint to add new parties, Rule 4(m) provides

14   that party with 120 days to serve the amended complaint."). Certain transferees

15   may object to the jurisdiction of this Court.[6] If Mattel cannot serve certain of the

16   transferees or the Court finds it lacks jurisdiction over any of them, the UFTA

17   claim may not be capable of proceeding in their absence. *See Krulikowsky v.*

18   *Metropolitan Dist. Council of Philadelphia and Vicinity*, 270 F. Supp. 122, 126 (D.

19   Pa. 1967) ("Brotherhood has not been served with process and since it is an

20

21   [4] PTAAC ¶¶ 16-19, 138, 217 (identifying IGWT Group LLC, IGWT 826 Investments LLC, Lexington Financial Limited, Omni 808 Investors LLC, Vision

22   Capital LLC, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Makabi, Angela Larian, The Makabi Living Trust, The Larian Living Trust,

23   The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, and The Shirin Larian

24   Makabi Qualified Annuity Trust. PTAAC ¶¶ 16-19, 138, 217).

     [5] State law determines whether a party must be joined as a necessary party to a
25   UFTA claim. *See In re Allustiarte*, 786 F.2d 910, 915-16 (9th Cir. 1986)
     ("California law controls" the resolution of whether an individual is a necessary
26   party that must be joined as a defendant). Fed. R. Civ. P. 19(a) also requires
     joinder.
27
     [6] For example, Mattel alleges that Lexington Financial Limited is based in Nevis.
28   PTAAC ¶ 107.

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1  indispensable party the action must be dismissed.").  Further, once these parties are

2  joined as counterclaim defendants, they will be entitled to retain their own counsel,

3  take discovery and otherwise defend their interests (which are not necessarily

4  aligned with MGA's).  As a result, resolution of Phase 2 may be unnecessarily

5  delayed.[7]

6      ***Second***, the proposed UFTA and new RICO claims also add a host of ***new***

7  ***issues***.  The existing Phase 2 claims assert, directly and as repackaged RICO

8  predicate acts, trade secret misappropriation by, and breaches and interference with

9  the contracts of, former Mattel employees in 2004 and 2005.  The new UFTA and

10  related RICO claims center on financial transactions in 2008 in which no former

11  Mattel employee is alleged to have participated.  *See* PTAAC ¶¶ 16-18, 105-121.

12  Those financial transactions involve a host of third parties who are not alleged to

13  have participated in the predicate acts that underlie the existing RICO claim.  *See*

14  SAAC at ¶¶ 21-77, 89-91, 134, 137.  The UFTA requires resolution of such arcane

15  financial issues as whether, at the time of any challenged transfer, MGA or Larian

16  was "unable to pay its debts as they became due," or "was about to engage in a

17  business for which its remaining assets were unreasonably small," or "reasonably

18  should have believed it would incur debts beyond its ability to pay."  PTAAC ¶

19  221; Cal. Civ. Code § 3439.05.  The UFTA count also requires a determination of

20  the value of the Bratz inventory Mattel claims was "fraudulently transferred"

21  (PTAAC ¶ 222), and whether MGA received a reasonably equivalent value for the

22  transfer.  Cal. Civ. Code § 3439.04(a).  None of these issues is remotely raised by

23  Mattel's current counterclaims.

24

25  [7] Even if the alleged transferees were not necessary parties (which they are), they
26  would still have the right to intervene to protect their interests. *See* Fed. R. Civ. P.
   24(a)(2).  At least one alleged transferee (Omni 808) has already moved to
27  intervene as a result of Mattel's demand for the appointment of a Receiver.  Mattel
   has opposed Omni's motion.  The Court has deferred ruling on such intervention.
28  Benson Decl. Ex 1 (2/11/09 Tr. at 80:17-24).

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1    In addition, the newly proposed UFTA/RICO financial claims inject new

2    allegations (*entirely* on "information and belief") that Isaac Larian is the alter ego

3    of *at least* five LLCs and *at least* five trusts. PTAAC ¶¶16-18. "Alter ego is an

4    extreme remedy, sparingly used," and there are a myriad of factors that are relevant

5    to the analysis. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523,

6    538-539 (2000) (listing factors). These alter ego issues will have to be litigated for

7    *at least* ten different entities.

8    Further, the PTAAC alleges an entirely new RICO enterprise that is separate

9    and distinct from the two alleged RICO enterprises currently alleged in the SAAC.

10   *See* PTAAC ¶¶134, 135, 138. Mattel calls this the "IGWT Enterprise" (PTAAC ¶

11   138) to distinguish it from the previously alleged "MGA Criminal Enterprise"

12   (comprised of MGA, MGA (HK), MGA Mexico, Bryant, Machado, Trueba,

13   Vargas, Brawer, and Brisbois) and the "Bratz Criminal Enterprise" (comprised of

14   MGA, MGA (HK), Larian and Bryant). *See* SAAC ¶ 89. Thus, all of the issues

15   necessary to establish the existence of a RICO enterprise, and liability flowing from

16   conducting or participating in the conduct of its affairs through predicate acts that

17   comprise a "pattern" of racketeering activity, would have to be litigated for a third,

18   and entirely new, enterprise. For example, discovery would have to be taken, and

19   the trial would involve, among other things, whether the IGWT Enterprise existed,[8]

20

21   [8] The PTAAC does not allege what the IGWT Enterprise consists of -- only who supposedly was employed by or associated with it. (*See* PTAAC ¶ 136).

22   Presumably Mattel is attempting to allege an "associated-in-fact" enterprise. To prove that allegation, Mattel would have to establish, among other things: (1) that

23   the IGWT Enterprise existed "separate and apart from the pattern of activity in which it engage[d]," and (2) that the IGWT Enterprise constituents "associated for

24   'a common purpose of engaging in a course of conduct,'" which, in turn, will require Mattel to prove that (3) that the Enterprise is "an ongoing organization,

25   formal or informal," and (4) "that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551-52 (9th Cir. 2007) (citations

26   omitted). All this Mattel will have to prove with respect to 17 *new* persons and entities Mattel is alleging as the IGWT Enterprise, and with respect to alleged

27   financial misconduct which is *separate* from the purported RICO "pattern" alleged in the SAAC of misappropriation of Mattel's trade secrets and confidential

28   information. *See, e.g.*, SAAC ¶ 90 (alleging the MGA Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to

(...continued)

Mitchell
Silberberg &
Knupp LLP
2213723.1

8

1  whether the counterclaim defendants conducted or participated in the affairs of that

2  Enterprise through a pattern of specifically enumerated predicate acts, and whether

3  those specifically enumerated predicate acts – which are based on conduct different

4  in kind and time from the conduct charged as the "pattern" for the other two

5  Enterprises – proximately caused damage to Mattel.  *See Chaset v. Fleer/Skybox*

6  *Intern., LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002).

7      The claims relating to the newly proposed "IGWT Enterprise" and its alleged

8  financial misconduct would effectively require a separate trial, about a separate

9  RICO enterprise, within the trial of the RICO counterclaim.  Leave to supplement

10  should be denied where "granting the motion would, in effect, result in two separate

11  trials within [the same] case." *Bradberry*, 2009 WL 971298 at *3 (denying motion

12  to supplement because "judicial efficiency would not be served:" case had been

13  pending with the Court for "nearly four years," had already encountered "numerous

14  difficulties and delays," and the supplementation would "result in two separate

15  trials" within the case); *see also Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754

16  F.2d 738, 743 (7th Cir. 1985) (denial of motion to supplement because

17  "supplementation would raise new issues, require new discovery and necessarily

18  prolong the litigation"); *Mullen*, 590 F. Supp 2d at 1238 (denying motion to

19  supplement because "case has been pending for over five years" and "[t]o continue

20  adding claims or defendants will prolong the suit for an indefinite amount of

21  time"); *Burka*, 945 F. Supp. at 318 (finding motion to supplement "at this juncture

22  to be yet another tactic by the plaintiffs to avoid this Court ever putting this case to

23  rest" and denying the motion because "[t]he further delay of this suit would be

24  costly and burdensome to all concerned").

25

26

(...continued)

27  improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed various predicate acts) and ¶¶ 91, 92, 93(a), 93(b), 102 to the same effect.

28

Mitchell
Silberberg &
Knupp LLP

2213723.1

9

1     ***Third***, it is simply not true, as Mattel asserts, that the 2008 financial

2     transactions "are relevant to existing issues in this case and therefore will continue

3     to be litigated whether or not Mattel is granted leave to amend." Mot. at 16. The

4     Discovery Master ***rejected*** Mattel's arguments that discovery from non-parties

5     Omni 808 Investors LLC, OmniNet Capital LLC and Vision Capital LLC regarding

6     their internal ownership and operations, and their role in providing financing to

7     MGA, was relevant to Mattel's RICO claims, disgorgement, punitive damages, the

8     credibility of MGA witnesses, unclean hands or Mattel's unfair competition

9     counterclaim. Benson Decl. Ex. 2 (Discovery Master Order No. 3). While the

10    Discovery Master allowed ***limited*** discovery concerning the existence of any debt

11    owed by MGA to Omni 808 Investors, LLC, he did so on the ground it was relevant

12    to assessing MGA's net worth for purposes of Mattel's punitive damages claim,

13    and nothing more. *Id.* at 20:13-21.

14       **B.      The Allegations of "Financial Manipulation" Cannot Be RICO**

15              **Predicate Acts**

16          As a matter of law, the 2008 financial transactions will not support a

17    predicate act because any putative injury these transactions arguably might cause

18    Mattel is contingent on the final judgment in this action, which has not yet been

19    entered, let alone affirmed on appeal. *Lincoln House, Inc. v. Dupre*, 903 F.2d 845,

20    847 (1st Cir. 1990) (dismissing RICO claim based on alleged fraudulent transfers

21    because that "claim involves uncertain and contingent events that may not occur as

22    anticipated, or indeed may not occur at all" – "the only injury alleged by [plaintiff]

23    is its hypothetical inability to recover from [defendant], *if* [plaintiff] obtains a

24    judgment, in some amount, in the pending state court breach of contract action. . . .

25    In these circumstances, [plaintiff's] RICO claim is not now ripe for judicial

26    resolution.") (italics in original); *Thomas v. Baca*, 2009 WL 117983, at *1 (9th Cir.

27    Jan. 9, 2009) (dismissal of RICO action: "the alleged injury to plaintiffs' *Thomas I*

28    cause of action resulting from the nondisclosure of [certain information] is

Mitchell
Silberberg &
Knupp LLP

2213723.1

10

1   insufficiently concrete to grant RICO standing. *Thomas I* is still pending, and so it

2   remains unknown whether plaintiffs will prevail or whether the purportedly

3   concealed information will alter the outcome.") (*citing DeMauro v. DeMauro*, 115

4   F.3d 94, 97 (1st Cir. 1997) ("Plaintiff's mere expectation of a favorable decree . . .

5   does not constitute a property interest protected under RICO")) (citation omitted).

6   **C.    Adding The Claims Would Seriously Prejudice The MGA Parties**

7   Although prejudice is not required to warrant denial of leave to supplement,

8   prejudice clearly exists here. Mattel is attempting to inject into this case entirely

9   legitimate but complex financial transactions a jury cannot possibly understand.[9] It

10  is obvious from Mattel's highly improper pleading why it is stretching to include

11  these transactions as part of this case. Mattel wants to deflect the jury's attention

12  from relevant facts with innuendo (*e.g.,* PTAAC ¶ 107 (Lexington is a "shell

13  corporation" "based in the Caribbean island nation of Nevis that is notorious for its

14  secrecy laws")), and to prejudice the jury by throwing around foreign sounding

15  names, and engaging in character assassination (*see* PTAAC ¶108 at 64).[10]

16  **IV.    THE "PERJURY" CLAIMS SHOULD NOT BE PERMITTED**

17  The new "predicate acts" Mattel seeks to add based upon Isaac Larian's

18  alleged "perjurious testimony" during the Phase 1 trial, and MGA's allegedly

19  _____

20  [9] As discussed in detail in MGA's opposition to Mattel's application for
    appointment of a Receiver, Mattel's characterization of legitimate corporate
    financing transactions as unlawful "financial manipulation" do not survive scrutiny.

21  Nothing about these transactions was in the least untoward, nor did they result in
    any harm to Mattel. All that happened is that Omni 808 acquired a portion of the

22  *existing* Wachovia debt after Wachovia froze MGA's line of credit and swept all its
    cash following the Phase 1(a) verdict. As a result of the transactions, money was

23  injected into MGA, not taken out. No additional debt was created. Not only did
    this transaction not harm Mattel or its position as a potential MGA creditor, but if

24  anything, it bettered Mattel position. Without this transaction, Mattel would have
    stood behind some $310 million of Wachovia secured debt. At *MGA's* suggestion,

25  a court-appointed forensic auditor has examined these transactions and, to the best
    of our knowledge, has not found them improper.

26  [10] In blatant violation of federal pleading rules, Mattel alleges that "Neil
    Kadisha…a Larian co-conspirator, was found by a court after trial to be 'no more

27  than a common thief,'" and goes on to make inflammatory allegations about
    matters having nothing to do with Larian or MGA. *See* Fed. R. Civ. P. 8, 12(f).

28

1   "perjurious" court filings during Phase 1 (PTAAC ¶¶ 104, 141(d)(ii), (iii)), should

2   not be allowed.

3     ***First***, the claims are not viable as a matter of law. *See Burka*, 945 F. Supp. at

4   318 (denying motion to supplement where additional claims were "legally …

5   deficient"). Mattel obviously recognizes that perjury is not a predicate act under

6   RICO (*see* 18 U.S.C § 1961(1) (listing federal offenses that qualify as predicate

7   acts)), so it has relabeled the alleged perjury as "obstruction of justice," a

8   questionable proposition at best.[11] *See* Mot. at 17, fn. 72. However, even assuming

9   perjury can be a predicate act in some circumstances, those circumstances do not

10  exist here, where the alleged perjury did not cause any cognizable damage to

11  Mattel.

12

13

14  [11] None of the cases Mattel cites supports its position that perjury-repackaged-as-obstruction-of-justice is a RICO predicate act. *U.S. v. Mayer*, 775 F.2d 1387 (9th Cir. 1985), was a prosecution under 18 U.S.C.§ 1001, not 18 U.S.C.§ 1503. The *Mayer* court held the conduct at issue (submission of false reference letters to a sentencing judge) could not be prosecuted under § 1001, but suggested in *dicta* it could have been prosecuted under § 1503, citing *U.S. v. Gonzalez-Mares*, 752 F.2d 1485 (9th Cir. 1985). *See Mayer*, 775 F.2d at 1391. In *Gonzalez-Mares*, the Ninth Circuit held only that "[f]alse statements made under oath may, ***under some circumstances***, constitute obstruction of justice under § 1503." 752 F.2d at 1491 (emphasis added). The *Gonzalez-Mares* court found such circumstances existed under the facts before it (false statements to a probation officer) because "***[u]nlike false testimony offered at trial, the veracity of appellant's statements could not be readily tested through cross-examination***." *Id.* Unlike *Gonzales-Mares* and *Mayer*, Mattel relies on statements that could be (and largely were) tested through cross-examination.

  Mattel's other two cases, *Streck v. Peters*, 855 F. Supp. 1156 (D. Hawaii 1994) and *Town of Kearney v. Hudson Meadows Urban Renewal Corp.*, 829 F. 2d 1263 (3rd Cir. 1987) are equally unhelpful. The *Streck* court, in ***dismissing*** a RICO claim, simply noted that "acts of perjury may, ***under the appropriate circumstances***, constitute RICO predicate acts," but did not discuss what those circumstances might be. *Id.* at 1162 (emphasis added). In *Town of Kearny*, the predicate acts alleged were bribery, not obstruction of justice. 829 F.2d at 1266. In rejecting a defendant's argument that summary judgment was warranted because plaintiff's damage was caused by her perjury in a state court action, and not by the bribery, the Third Circuit made the curious observation that "the perjured 1980 testimony…was part of the pattern of racketeering activity" (*id.* at 1269), even though plaintiff had not alleged perjury as a predicate act and could not have done so, since the perjury had occurred in state court. *See* 18 U.S.C. § 1503 (proscribing conduct only in "court[s] of the United States.").

Mitchell Silberberg & Knupp LLP
2213723.1

12

1    To prevail on a RICO claim, a plaintiff must allege damage to its business or
2    property. 18 U.S.C. § 1964(c). It also must establish that the injury "was
3    proximately caused by a RICO violation. ... In order to establish proximate
4    cause, plaintiffs must demonstrate that there exists a 'direct relation between the
5    injury asserted and the injurious conduct alleged.'" *Gidding v. Anderson*, 2008 WL
6    4065814, at *5 (N.D. Cal. Aug. 27, 2008) (citations omitted); *see also Sybersound
7    Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) ("'When a court
8    evaluates a RICO claim for proximate causation, the central question it must ask is
9    whether the alleged violation led directly to plaintiff's injuries.'") (*quoting Anza v.
10   Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).
11   Mattel cannot show the requisite causal link between the alleged perjury at
12   trial and in court filings, and harm to Mattel. First, Mattel won all of its claims in
13   the Phase 1 trial, so whatever perjury it contends transpired in the litigation did not
14   cause it RICO injury. *See Anza*, 547 U.S. at 457 ("'a plaintiff's right to sue under
15   [18 U.S.C. § 1964(c)] required a showing that the defendant's violation not only
16   was a 'but for' cause of his injury, but was the proximate cause as well.'") (citation
17   omitted). Second, the damage of which Mattel complains flows from the alleged
18   theft of Bratz, theft of trade secrets, and hiring away of its employees. Any such
19   damage resulted from conduct alleged to have taken place outside the courtroom,
20   not from what happened during trial or in law and motion practice in this case. *See
21   id.* at 461 (the "cause of Ideal's asserted harms, however, is a set of actions
22   (offering lower prices) entirely distinct from the alleged RICO violation
23   (defrauding the State).")[12]

24   _____
25   [12] Mattel's allegations about MGA's "[unidentified] submission of false
     information in sworn applications to the U.S. Copyright Office" (PTAAC ¶¶ 104;
     141(d)(i)) fail for at least two reasons in addition to lack of injury. First, these
26   allegations sound in fraud, but Mattel fails to plead them with particularity as Fed.
     R.Civ. P. 9(b) requires. *See, e.g., Lancaster Community Hosp. v. Antelope Valley
27   Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (RICO plaintiff must allege the time,
     place and manner of the each act of fraud, and the role of each defendant in the
28   fraud). Second, "in order to constitute an offense under Section 1503, the act
     (...continued)

Mitchell Silberberg & Knupp LLP

2213723.1

13

1    ***Second,*** Allowing Mattel to assert claims based on Larian's alleged perjury

2    in the Phase 1 trial would effectively require most of Phase 1 to be re-tried in Phase

3    2.[13] The fact that the jury ruled against MGA and Larian does not mean that

4    Larian's testimony was perjurious; otherwise any civil litigant could be charged

5    with perjury any time that litigant lost a case.  There is a vast legal and logical

6    chasm between losing a case and concluding that a witness committed perjury,

7    particularly where, as here, the judgment is not even final and may be reversed on

8    appeal.  A party can lose a lawsuit for any number of reasons, including that a jury

9    disbelieved a witness who testified truthfully, concluded that the witness' memory

10   was wrong, or simply found the other side's evidence more persuasive.

11   **V.    NONE OF MATTEL'S PROPOSED AMENDED CLAIMS SHOULD**

12   **BE PERMITTED**

13   **A.    <u>Jorge Castilla's Alleged Theft Of Trade Secrets</u>**

14   Mattel seeks to amend its misappropriation of trade secrets and tortious

15   interference claims by adding untimely, prejudicial, and, as to the MGA Parties,

16   ***knowingly*** baseless allegations concerning Jorge Castilla, a former Mattel

17   employee who came to work for MGA in 2006.  *See* PTAAC ¶¶ 77-87, 157, 173

18   (the "Castilla Amendments").  The Court should deny Mattel leave to add the

19   Castilla Amendments.

20

21   (...continued)
     charged must be in relation to a proceeding pending in the federal courts." *U.S. v.*
22   *Ryan*, 455 F.2d 728, 733 (9th Cir. 1972).  The PTAAC does not even allege there
     was a federal judicial proceeding pending when the submissions were made, let
23   alone that they were made "in relation to" such a proceeding.

24   [13] Mattel alleges that Larian knowingly gave false testimony that Bryant told him,
     and he believed, that Bryant created Bratz while not employed at Mattel (PTAAC ¶
25   104).  To prove or disprove that allegation, the parties would have to introduce in
     the Phase 2 trial huge amounts of the evidence that was adduced during the Phase 1
26   trial, such as when and under what circumstances Bryant first contacted MGA; all
     of the communications between Bryant and Larian, between counsel for Bryant and
27   counsel for Larian, between others at MGA and Bryant, and between others at
     MGA and Larian; what Larian believed and why; when MGA first began
28   developing Bratz; why certain drawings bore certain dates, and so forth.

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1    *First*, Mattel was not diligent in seeking to amend as to Castilla.  *See* Fed. R.

2    Civ. P. 16(b); *Johnson*, 975 F.2d at 609.  The Castilla Amendments are premised

3    entirely on facts Mattel knew as early as *March 2006* (*three years ago*), and *eight*

4    *months before Mattel originally sought leave to amend to add counterclaims for*

5    *trade secret misappropriation.*

6        Mattel admits Castilla informed it on *March 13, 2006,* that he was leaving to

7    work for MGA.  PTAAC ¶ 83.  Documents recently produced by Mattel (only *after*

8    being ordered to do so) show that ████████████████████████████████████

9    ███████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████

16   ███████████████████████████

17       Mattel apparently made a tactical decision not to include allegations of trade

18   secret theft by Castilla when it moved to file its SAAC in November 2006.  Rather

19   than admit this, Mattel states in conclusory (and misleading) fashion that it

20   "developed evidence" that Castilla "stole" Mattel trade secrets and property *after* it

21   filed the SAAC, without identifying what new evidence it developed or when it was

22   developed.  Mot. at 10.  The fact that Mattel knew about this alleged trade secret

23   "theft" *before* it moved to file its SAAC, coupled with its failure to offer any

24   plausible justification for its failure to seek to add the Castilla Amendments before

25   now, is ground to deny its motion.  *See, e.g., Amerisourcebergen Corp. v. Dialysist*

26   ████████████████████████████████████████████████████████████████

27   █████████████████████████████████████████████████████████

28   █████████████████████████████████████████████████████████████

Mitchell
Silberberg &
Knupp LLP

2213723.1

15

1   *West, Inc.*, 465 F.3d 946, (9th Cir. 2006) (denial of motion to amend because at the
2   time plaintiff filed its answer, "it had all the information necessary to raise the
3   affirmative defense it now pursues" and "[e]ven though eight months of discovery
4   remained, requiring the parties to scramble and attempt to ascertain [the merit of the
5   defense] would have unfairly imposed potentially high, additional litigation costs
6   on [defendant];" *Chodos v. West Publishing Co., Inc.*, 292 F.3d 992, 1003 (9th Cir.
7   2002) (denial of motion to amend because "new facts had been available to Chodos
8   even before the first amendment to his complaint," amendment would "result in
9   prejudice to [defendant,]" and "motion was a dilatory tactic"); *Acri v. Int'l. Ass'n of
10  Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (denial of
11  motion to amend where plaintiff made tactical decision not to bring cause of action
12  in original pleading); *Oparaji v. New York City Dept. of Edu.*, 172 Fed. Appx. 352,
13  355, 2006 WL 522364, 1 (2d Cir. 2006) (denial of motion to supplement because
14  plaintiff "sought to add claims relating to an event that took place several months
15  before [plaintiff] had filed his amended complaint and "declin[ing] to treat his
16  motion as one to file an amended complaint, given that he had already amended his
17  complaint once in this action and could have included the proposed claims in that
18  pleading").

19          ***Second,*** Mattel "fail[s] to substantiate" its proposed amendments concerning
20  the MGA parties' supposed involvement in Castilla's misconduct. *Glatt v. Chicago
21  Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). Nowhere does Mattel proffer any
22  ***evidence,*** "newly developed" or otherwise, that MGA "lured [Castilla] to MGA,"
23  that MGA asked Castilla to bring any of Mattel's confidential information with him
24  to MGA, or that Castilla gave or otherwise shared any of Mattel's confidential
25  information with anyone at MGA. PTAAC ¶ 87. To the contrary, the
26  uncontroverted evidence is that Castilla sought employment at MGA, not the other
27  way around; MGA had no involvement in Castilla's alleged attempt to

1  misappropriate Mattel's information; and MGA never asked for or received any

2  confidential information from Castilla.  Castilla testified:



20  Having failed to identify an iota of evidence it "developed" to support its

21  charge that MGA "lured" Castilla away, or requested or used Mattel trade secrets,

22  Mattel's motion to amend must be denied.  *See, e.g., Mariano v. Everett Housing*

23  *Authority*, 166 Fed. Appx. 273, 274-275, 2006 WL 92495 at *1 (9th Cir. 2006)

24  (denial of motion to add retaliation claims because defendant provided

25  "uncontroverted evidence that it did not know of plaintiff's pending complaint until

26  after plaintiff's benefits were denied").

27  In view of the foregoing, Mattel cannot argue that its allegations will be

28  substantiated through further discovery.  As the court said in *Glatt*:

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1    The good ground for denying Glatt's motion was that Glatt failed to

2    substantiate it.  He says that it's just a pleading; substantiation is for

3    later, when the pleading is challenged by a motion for summary

4    judgment.  This is true of an original complaint but not of a motion to

5    amend or supplement the complaint, a motion that being addressed to

6    the discretion of the district court requires more to compel acceptance

7    than the fact that the pleading sought to be added states a claim.

8    Especially when the motion is filed long after the original complaint

9    was filed (16 months after, in this case), and is based solely on a

10   document that the movant had discovered more than a year earlier, the

11   court is entitled to demand reasons for thinking that the denial of the

12   motion would work a serious injustice. 87 F.3d at 194.

13   ***Third***, Mattel's proposed amendment would be highly prejudicial.  As

14   discussed above, Mattel waited for three years after it was aware of the "facts"

15   before proposing the Castilla Amendments, and memories of the pertinent events

16   by now have faded.[15]  Moreover, given the evidence showing MGA played no role

17   in Castilla's alleged attempt to take confidential information, it is apparent that

18   Mattel seeks to add the Castilla Amendments ███████████████████████████

19   ██████████████████████████████████████████████████████████

20   ████████████████████████   "The court not only may but should

21   consider the likelihood that the new claim is being added in a desperate effort to

22   protract the litigation and complicate the defense; its probable merit; whether the

23

24

25   [15] Mattel brazenly claims that MGA has not been prejudiced because it was "on notice of" Mattel's claims about Castilla when Mattel finally chose to disclose this information to MGA in December 2007, ***almost two years after*** Mattel knew about it, and less than two months before Phase 2 discovery was stayed. Mot. at 15. But Mattel fails to mention that it designated this interrogatory response as ***Attorneys Eyes Only***, so that counsel for the MGA Parties could not even discuss the response with their clients. *See* Ex. 55 to Kidman Decl.

1   claim could have been added earlier; and the burden on the defendant of having to

2   meet it." *Glatt*, 87 F.3d at 194.

3       **B.    Mattel's Motion to Add Farhad Larian's "Evidence Tampering"**

4           **As A RICO Predicate Act Should Be Denied**

5       One of Mattel's most disingenuous arguments is that Farhad ("Fred") Larian

6   destroyed documents "after Farhad Larian asked his brother [Isaac] via e-mail if

7   there was anything he could do to help MGA in its pending litigation with Mattel."

8   Motion at 12. Based on this egregious distortion of the facts, Mattel seeks to add a

9   claim, once again "*on information and belief,*" that Fred Larian, acting as an

10  "agent and co-conspirator" of Isaac Larian, engaged in a predicate act of

11  "obstruction of justice." PTAAC, ¶¶ 103, 141(c)(iii). Having fully litigated this

12  subject in Phase 1, Mattel cannot now hide behind "information and belief."

13      ***First***, Mattel tries to cast Fred Larian's destruction of his records – a few

14  days after he had abandoned his arbitration against Isaac – as furthering Isaac's

15  alleged concealment of wrongdoing. Mattel bases this untenable theory on the

16  argument that Fred's post-arbitration conduct occurred "after" Fred sent an e-mail

17  asking Isaac if there was anything he could do to help in the Mattel litigation. *Id.* at

18  ¶12. But as Mattel well-knows, that e-mail was sent in May 2004, and Fred's

19  record-destruction did not occur until ***more than one year later.*** Benson Decl. Ex.

20  6 (F. Larian Depo) 56:9-58:11; 65:21-67:2; 172:16-173:5; 175:12-25; 300: 9-19;

21  Ex. 7 (DX 4234). Isaac never even acknowledged the 2004 e-mail, let alone

22  accepted Fred's offer. Benson Decl. Ex. 6 (F. Larian Depo) 301:8-17).

23      Further, Mattel's disingenuous characterization of Fred as the "agent or co-

24  conspirator" of Isaac, flies in the face of the indisputable evidence that the Larian

25  brothers were not even ***speaking*** until well after the 2005 arbitration ended, and

26  remained distant even at the time of the Phase 1 trial. Benson Decl. Ex. 8 (I. Larian

27

28

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1   Depo) 492:1-6; Ex. 10 (F. Larian Depo) 347:10-348:4; 355:9-356:2).][16] Having

2   had more than ample opportunity during Phase 1 to investigate and litigate the issue

3   of Fred's post-arbitration document destruction and any instigation of that conduct

4   by Isaac (*see, e.g.* Benson Decl. Ex. 11 Trial transcript ("Tr.") at 3781:22-3782:20),

5   and having come up empty handed,[17] Mattel cannot now hide behind "information

6   and belief" as a basis for asking the Court to give it a second bite at the apple. *See*

7   *Ascon Properties, Inc. v. Mobile Oil Co.*, 866 F.2d 1149, 1160 ((9th Cir. 1989)

8   (leave to amend may be denied where the amendment "is sought in bad faith.");

9   *Edwards Lifesciences LLC v. Cook Inc.*, 2008 WL 913328, *4 (N.D. Cal. 2008)

10  ("Bad faith in filing a motion for leave to amend exists when the addition of new

11  legal theories are baseless and presented for the purpose of prolonging the

12  litigation.").

13       ***Second***, the proposed amendment is futile.  Even if Fred's post-arbitration

14  record destruction had been part of some nefarious conspiracy with Isaac (which it

15  manifestly was not), the alleged "predicate act" did not proximately cause any

16  damage to Mattel.  Mattel's counsel actually reviewed the supposedly "destroyed"

17  documents before the arbitration began -- at Fred's invitation and without MGA's

18  knowledge.  Benson Decl. Exs. 5, 9 (TX 4226, TX 4236).  Thereafter, Mattel got

19  copies of what Fred destroyed from Fred's lawyers.  Benson Decl. Ex. 13 (May 1,

20  2008 Infante Order at 8-9); Ex. 11, Tr. 3781:22-3782:20.  To this day Mattel has

21  not proffered a scintilla of evidence showing that Fred destroyed a single document

22  material to this case.  Further, because Mattel prevailed on all of its Phase 1 claims,

23

24  [16] Mattel's statement that Fred destroyed documents "while still on MGA's payroll"
    is also seriously misleading.  Fred was no longer an employee of MGA as of
25  January 1, ***2001***, when he entered into an agreement to consult as an ***independent***
    ***contractor***.  Benson Decl. Ex. 12 (TX 13108).  Mattel cites no authority for the
26  proposition that MGA had any duty with respect to document preservation efforts
    by an independent contractor.
27
    [17] The jury specifically found that Isaac Larian did ***not*** fraudulently conceal the
28  basis of any of Mattel's claims.

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1   Fred's "predicate act" did not cause it any legally cognizable damage, which is a

2   necessary RICO element. *See Gidding, supra; Chaset v. Fleer/Skybox Intern., LP,*

3   300 F.3d at 1086-87 ("a civil RICO plaintiff must show that his injury was

4   proximately caused by the [prohibited] conduct. [Further,] the plaintiff must show

5   that he has suffered a concrete financial loss.") (citations omitted); *Resolution Trust*

6   *Corp. v. Keating,* 186 F.3d 1110, 1117 (9th Cir. 1999) ("Recovery under RICO is

7   limited to those injuries flowing from predicate acts.").

8       Leave to amend is properly denied where, as here, the proposed amendment

9   "constitutes an exercise in futility." *See, e.g., Mariano v. Everett Housing*

10  *Authority,* 166 Fed. Appx. 273, 274-275, 2006 WL 92495 at *1 (9th Cir. 2006)

11  (denial of motion to file supplemental retaliation claims because defendant

12  provided "uncontroverted evidence that it did not know of plaintiff's pending

13  complaint until after plaintiff's benefits were denied"); *Roth v. Garcia Marquez,*

14  942 F. 2d 617, 628 (9th Cir. 1991) (denial of motion to amend: "[w]ere amendment

15  allowed, the claim would certainly be defeated at summary judgment"); *Gabrielson*

16  *v. Montgomery Ward & Co.,* 785 F.2d 762, 766 (9th Cir. 1986) (same).

17      ***Third,*** the amendment would significantly expand the trial. The existing

18  counterclaims allege the targeting of Mattel employees in three different countries,

19  and their thefts of Mattel trade secrets. Mattel now proposes that the trial meander

20  down an entirely different path, which will require testimony (again) about the

21  relationship between Fred and Isaac Larian, the arbitration brought by Fred and

22  Fred's abandonment of same, what documents Fred disposed of after the arbitration

23  and why, the relevance of those documents to Mattel's claims, and whether and to

24  what extent Mattel obtained copies of those documents from other sources,

25  including MGA and Fred's attorneys.

26      Fred Larian left MGA's employ at the end of 2000. He filed the first of

27  several lawsuits against Isaac in 2003. Benson Decl. Ex. 6 (F. Larian Depo) 231:1).

28  He did not render any consulting services to MGA after 2002. *Id.* at 231:2-24.

Mitchell
Silberberg &
Knupp LLP

2213723.1

1   Nothing he destroyed even arguably could have related to trade secrets allegedly
2   taken by former Mattel employees in 2004 and 2005 that are the focus of the
3   existing counterclaims. *See* SAAC ¶¶ 37-76. To add a sideshow about feuding
4   brothers, and an irrelevant claim about destruction of documents by a non-party, is
5   unwarranted and prejudicial, particularly since this matter was already litigated
6   during Phase 1. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th
7   Cir. 1991) (denial of motion to amend because "the introduction of a major new
8   evidentiary issue at such a late stage in the litigation will require extensive
9   additional discovery" and would prejudice defendant); *M/V American Queen v. San*
10  *Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (denial of motion
11  to amend, where "[t]he new allegations would totally alter the basis of the action, in
12  that they covered different acts, employees and time periods necessitating
13  additional discovery.").

14      C.    **The Proposed Amendment Alleging "Commercial Bribery" Of**
15            **Three Seamstresses Should Not Be Allowed**

16      ***First***, Mattel claims it discovered in December 2007, when it took the
17  deposition of independent contractor Veronica Marlow, that MGA had made
18  "secret payments" to three moonlighting Mattel seamstresses and had "concealed"
19  these "illegal payments" through the use of false names and social security
20  numbers. (Mot. at 19).[18] As Mattel well knows, there is no evidence MGA was
21  aware of the Marlows' activities in working with moonlighting Mattel
22  seamstresses, let alone concealed such information. Veronica Marlow was an
23  independent contractor/fashion designer on the Bratz line for many years; Peter
24  Marlow also worked as an independent contractor. Benson Decl. Ex. 15, Tr.

25  ─────────────────────────
    [18] Mattel's assertion that MGA "long obstructed" this deposition "from happening"
26  (Mot. at 19:8-9) is a typically gratuitous and unfounded accusation. *See generally*
    Ana Elise Cloonan's, Margaret Hatch-Leahy's , and Veronica Marlow's Opposition
27  to Mattel's ex parte Application to (1) Compel Depositions of Ana Elise Cloonan,
    Margaret Hatch-Leahy, and Veronica Marlow or (2) In The Alternative, Modify
28  The Scheduling Order [dckt 1124] Benson Decl. Ex. 14.

Mitchell
Silberberg &
Knupp LLP

2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

832:14-833:8; Ex. 16, Tr. 3619:18-3621:3, 3664:7-12. At various times between 2000 and 2005, Veronica Marlow used the moonlighting seamstresses to assist her in sewing and pattern making. *Id.* Ex. 16, Tr. 3630:9-13, 3639:9-12, 3669:23-3670:22. The seamstresses did the Marlows' work on nights and weekends in their own homes. *Id.* at Tr. 3661:18-3662:16.) Peter Marlow testified that he never told MGA, Larian or even Bryant that the Marlows were using Mattel employees for this work. *Id.* at Tr. 3659:1-3660:1, 3670:19-22. Isaac Larian confirmed this. Benson Decl. Ex. 18, Tr. 1826:17-1827:2.

Nothing the Marlows submitted to MGA identified these women by name, let alone as Mattel employees: At best, all MGA and Larian "knew" was that the Marlows sometimes submitted invoices for reimbursement for "third-party sewing and pattern-making support." Benson Decl. Ex. 16, Tr. 3660:2-3661:4, 3951:7-22; Ex. 20 (TX 606).[19] At trial, Mattel tried to show knowledge based on a 2005 e-mail from Peter Marlow to Paula Garcia, with a cc to Larian, explaining that the Marlows' third party vendors (described in the e-mail as older women with "years of doll making experience" unwilling to risk their "secure day jobs") did not wish to become full time MGA employees. Benson Decl. Ex. 19 (TX 13223). But to infer knowledge from that e-mail requires a hefty logical leap. Larian testified he did not remember reading the e-mail, which makes no mention of Mattel; therefore, Mattel hung its hat on the oblique reference to "doll making" to establish MGA "knew" that the Marlows were paying then-Mattel employees. However, as Peter Marlow and Larian explained, that reference could mean the women worked for any number of Southern California toy companies. Benson Decl. Ex. 17, Tr.

[19]   At trial Mattel tried in vain to establish MGA knowledge of the Marlows' use of Mattel employees by establishing that one of the seamstresses, Maria Salazar, went to work as a seamstress for MGA in 2003 and therefore someone (Ms. Salazar herself) knew she had previously worked for MGA while a Mattel employee. However, the Court agreed that her knowledge of her own activities could hardly be imputed to MGA – especially since Ms. Salazar testified she never informed anyone at MGA of her previous work for the Marlows while at Mattel. Benson Decl. Ex. 17, Tr. at 3921:18-3925:15.

Mitchell
Silberberg &
Knupp LLP

2213723.1

23

1   3947:18-3950:14, 3952:16-3953:11; Ex. 18, Tr. 1832:17-1838:9, 1839:7-17,

2   1840:1-12; Ex. 19 (TX 13223). Mattel nevertheless seeks it to amend its

3   counterclaims so that it can relitigate before a second jury a claim it knows it

4   cannot prove. Such a bad faith amendment should not be allowed. *Glatt, supra,* 87

5   F.3d at 94.

6         ***Second***, the proposed amendment is futile. In a tortured attempt to shoehorn

7   the subject of the moonlighting seamstresses into its existing counterclaims, Mattel

8   posits that the ***Marlows'*** payments to them constituted "commercial bribery" by the

9   MGA Parties, and that this, in turn supports a RICO predicate act of "obstruction of

10   justice" because the ***Marlows*** tried to "conceal" the alleged bribery by using false

11   names and social security numbers. *See* PTAAC,¶ 141 (c)(iv). But California Penal

12   Code section 641.3, the statute upon which this trembling house of cards rests,

13   penalizes only the offer of money (or other thing of value) to an employee "in

14   return for using...her ***position*** [at another employer] for the benefit of" the alleged

15   briber. Nowhere in the PTAAC does Mattel allege, nor can it, that any of the three

16   seamstresses used her position at Mattel to benefit MGA. Moonlighting on one's

17   own time ***may*** give rise to a breach of the employee's contract with her "daytime"

18   employer, but it does not constitute "commercial bribery," because the requisite

19   *quid pro quo* is absent.

20         ***Third***, the proposed amendment would unnecessarily expand the scope of the

21   Phase 2 trial. Mattel's current counterclaims "all stem[] from allegations that MGA

22   cherry-picked certain high-ranking Mattel executives in foreign markets (many also

23   named as defendants []) or designers (namely, Bryant), and then enticed or

24   encouraged those same individuals to steal various trade and proprietary secrets (be

25   it sales plans, sales projections, customer profiles, or intellectual property) from

26   Mattel and hand them over to MGA before going to work at MGA." Kidman Decl.,

27   Ex. 51. Mattel now proposes adding a claim based on allegations that an

28   independent contractor for MGA paid three seamstresses – who are ***not*** alleged to,

Mitchell
Silberberg &
Knupp LLP
2213723.1

OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS

1   and did not, bring any trade secrets to MGA – to "moonlight" at MGA.[20]  There is

2   no reason to inject into a case involving the alleged theft of trade secrets by

3   allegedly high level employees, the entirely separate issue of moonlighting

4   seamstresses, especially when the role of the seamstresses, and MGA/Larian's (lack

5   of) knowledge of same, was litigated *ad nauseum* during Phase 1.  *Western*

6   *Shoshone Nat. Council, supra.*, 951 F.2d at 204; *M/V American Queen, supra.*, 708

7   F.2d at 1492 (9th Cir. 1983).

8   **D.    Mattel's Proposed Amendment Of The Copyright infringement**

9   **Claim Is Improper And Should Not Be Allowed**

10   Buried within the 103-page PTAAC, but nowhere mentioned in Mattel's

11   Motion, are proposed amendments to the Copyright Infringement Claim (First

12   Count) to add additional copyrights.  PTAAC ¶ 128 at p. 70.  Mattel's copyright

13   infringement claim was the subject of the now-concluded Phase 1 trial, and leave to

14   amend is therefore improper.

15

16   DATED:  April 27, 2009              RUSSELL J. FRACKMAN
                                        PATRICIA H. BENSON
17                                      MITCHELL SILBERBERG & KNUPP LLP

18

19                                      By: /Patricia H. Benson/

20                                          Patricia H. Benson
                                            Attorneys for Defendants
21                                          MGA Entertainment, Inc., MGA
                                            Entertainment HK, Ltd., MGAE De
22                                          Mexico, S.R.L. De C.V., and Isaac Larian

23

24

25   ───────────────────────────────
     [20] The seamstresses worked on their own time, at their own homes, sewing fabric
26   given to them by MGA independent contractor Veronica Marlow (not taken from
     Mattel) using design patterns Ms. Marlow gave them.  *See, e.g.*, Benson Decl. Ex.
27   21 (Cabrera Depo) 62:21-24, 118:2-4, 119:3-5, 119:17-22); Benson Decl. Ex. 22
     (Morales Depo) 107:10-15, 118:5-12).  Benson Decl. Ex. 21 (Cabrera Depo)
28   116:20-117:3 ("I was just sewing.")

Mitchell
Silberberg &
Knupp LLP

2213723.1
                                        25
─────────────────────────────────────────────────────
OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED ANSWER/COUNTERCLAIMS