# EXHIBIT 5

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 5

# TO THE DECLARATION OF

# PATRICIA H. BENSON

**quinn emanuel** trial lawyers

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | PALM SPRINGS | SAN DIEGO

WRITER'S DIRECT DIAL NO.
(213) 443-3675

WRITER'S INTERNET ADDRESS
taniakrebs@quinnemanuel.com

November 28, 2005

Robert Wilson
Cotkin Collins & Ginsburg
300 South Grand Avenue, 24th Floor
Los Angeles, CA 90071

Dear Bob:

As you know, this firm represents Mattel in ongoing litigation against Carter Bryant and MGA that involves, at least in part, events pertaining to Bratz dolls, including the conception, design, development and marketing of Bratz dolls.

We are aware that your client is in possession of documents that fall into the following general categories, among others: (1) internal MGA emails dating from the mid-1990s through 2005; (2) emails between MGA employees and individuals outside MGA dating from the mid-1990s through 2005; (3) emails between your client and various individuals regarding the timing of Bratz development in 2000; and (4) other emails between your client and Isaac Larian.

Documents that we are aware are in your client's possession, custody and control which are relevant to Mattel's litigation include -- but are in no way limited to -- the following:

- An internal MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references Bratz.

- An email from Fred Larian to Isaac Larian dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

- A November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

**quinn emanuel urquhart oliver & hedges, llp**

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: 213-624-7707 FAX 213-624-0643
805 Third Avenue, 11th Floor, New York, New York 10022 | TEL: 212-702-8100 FAX 212-702-8200
201 Sansome Street, 6th Floor, San Francisco, California 94104 | TEL: 415-986-5700 FAX 415-986-5707
555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: 610-620-4500 FAX 650-620-4555
45-025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL: 760-345-4757 FAX 760-345-2414
4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL: 858-812-3107 FAX 858-812-1336

EXHIBIT: 5
PAGE: 66

4226-1

(3 pgs)
Exhibit no. 4226
Date: 2/14/08
F. Larian   P. Pyburn

EX 4226-0001

- An August 19, 2005 Fred Larian email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning Bratz, as well associated communications.

- An August 22, 2005 Fred Larian email to Colleen O'Higgins (colleenohiggins@msn.com) asking about Carter Bryant and Bratz licensees, as well as associated communications.

- Communications with Bin Ton regarding Bratz, including without limitation those relating to actual and/or draft Bin Ton declaration(s) regarding Bratz.

- Communications with Michael Lingg regarding Bratz, including without limitation those relating to actual and/or draft Lingg declaration(s) regarding Bratz.

- Communications with Jennifer Maurus regarding Bratz, including without limitation those relating to actual and/or draft Maurus declarations regarding Bratz.

- A December 21, 2000 email from Isaac Larian to Paul Warner, with copies to Dennis Medici and Fred Larian, that mentions TRU purchases for products including Bratz.

- An August 1, 2005 email from Fred Larian to Victoria O'Connor regarding Bratz licensees, as well as associated communications.

- An August 1, 2005 email chain between Fred Larian and employees at dng.com asking about Bratz, as well as associated communications.

- An August 7, 2005 email from Mark Fragel answering questions regarding Bratz materials shown to Paulette Prim in November 2000.

- A document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to an August 11, 2000 email from Dennis Medici to Isaac Larian and Fred Larian.

- A May 24, 2000 Fred Larian email to Isaac Larian which asserts that Isaac had instructed Fred to withhold the originals of documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

- An August 14, 2000 Isaac Larian email to Medici, Warner and Fred Larian that references cost tracking software used by Mattel that Isaac Larian says he learned about from interviewing Mattel employees.

- Emails between Isaac Larian and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Makabi's protestation that he never had any such certificates, as well as associated communications.

- A January 31, 2001 email from Isaac Larian to All in Marketing and Product Development, Medici and Didi Brown asserting that he (Isaac Larian) had been

2

EXHIBIT: 5
PAGE: 67

4226-2

EX 4226-0002

diagnosed with "Alzheimer's" and denying in substance that he ever said anything that cannot be confirmed by a writing.

- A November 15, 2000 Paula Treantafelles email to Fred Larian that says MGA will be selling a Bratz backpack and states that a design for it is attached.

As you also are aware, the MGA/Bryant litigation is currently stayed pending an interlocutory appeal to the Ninth Circuit on jurisdictional issues. When discovery resumes, we plan to serve your client with a subpoena for the production of documents that include without limitation the documents listed above as well as such other documents in his possession, custody or control that refer or relate to the design, development, marketing, sale and/or any other activities regarding Bratz prior to June 30, 2001. You and your client are obligated to ensure that your client preserves all such documents in the interim. Moreover, you and your client have an obligation to retain all electronic copies or versions of such documents that he has in his possession, custody or control and their associated metadata.

If you disagree with our view on the preservation obligations that you and your client have, or if your client has taken or intends to take any steps to dispose of or to otherwise dispossess himself of such documents, please let me know immediately so that we can seek Court intervention on the matter. Thank you in advance for your anticipated cooperation.

Very truly yours,

Tania M. Krebs

3

EXHIBIT: 5
PAGE: 68

4226-3

EX 4226-0003

# EXHIBIT 6

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 6

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# EXHIBIT 7

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 7

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 8

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 8

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 9

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 9

# TO THE DECLARATION OF

# PATRICIA H. BENSON

RECEIVED

JUL 1 0 2007

LAW OFFICES

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
310-282.6217
EMAIL:  PGLASER@CHRISGLASE.COM

July 5, 2007

Tiii MERITAS LAW FIRMS WORLDWIDE

**VIA FACSIMILE AND U.S. MAIL**

John B. Quinn
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

     Re:    MGA Entertainment v. Mattel

Dear John:

     This is in response to your letter of May 29, 2007 concerning your law firm's improper and unethical communications with Fred Larian and Fred Larian's counsel in 2005, the circumstances of which have only recently come to our client's attention.

     Our client has determined that in the fall of 2005, members of your law firm met with Fred Larian and/or his attorney, Robert Wilson, and spent **two days** reviewing numerous confidential and privileged documents of MGA Entertainment, Inc. ("MGA") which were in Fred Larian's possession, including documents which are relevant to the pending litigation between MGA and Mattel, and documents which are covered by the protective order in this litigation.  As you know, Fred Larian is the brother of Isaac Larian, MGA's Chairman and Chief Executive Officer, and was Isaac Larian's business colleague for over 20 years.  The business relationship of the Larian brothers encompassed the ownership and operation of various ventures and businesses over many years, including ABC International Traders, Inc. (now called MGA and MGA Entertainment (HK), Ltd.).  The Larian brothers each owned 45% of the stock in MGA until 2000; another family member owned the remaining 10% of the company's shares.  Fred Larian served as MGA's Executive Vice President and Treasurer until 2000, served on the company's Board of Directors until 2002 (including during the time period which is relevant to this litigation) and acted as a paid consultant for the company until December 31, 2005 (including during the time period in which members of your law firm engaged in communications with him).

     In these capacities, Fred Larian was involved in numerous privileged and confidential matters at the company, including providing litigation consulting services for the company and being privy to an extensive amount of privileged attorney-client communications, as well as high level, confidential business matters.  Further, Fred Larian was provided with or had access to an

500006 v2

Exhibit 43 , Page 607

(4 pgs)
Exhibit no. 4236
Date: 2/4/08
F. Larian (P. Pyburn)

**EXHIBIT: 9**
**PAGE: 87**

EX 4236-0001

John B. Quinn, Esq.
July 5, 2007
Page 2

extensive number of privileged and confidential company documents, including documents which are relevant to this litigation. In this regard, Fred Larian was copied on numerous privileged and confidential communications which are uniquely relevant to this litigation, such as numerous communications related to the development and initial sales of the "Bratz" products. As you know, in 2005, Fred Larian was in possession of numerous confidential MGA documents, including privileged documents, and was precluded from disclosing MGA's trade secrets and confidential information pursuant to a confidentiality agreement which he had previously entered into with the company.

During your communications with Fred Larian and his counsel, members of your law firm requested and reviewed privileged and confidential information of MGA which is relevant to this action, including documents which are subject to the protective order herein, a copy of which is attached. Your letter dated November 28, 2005 to Robert Wilson, Fred Larian's then counsel ("November 28, 2005 Letter"), demonstrates this. In particular, the November 28, 2005 Letter states that your firm was aware (e.g., apparently from your discussions with Fred Larian and/or his counsel) that Fred Larian was in possession of certain general categories of documents from MGA, some of which necessarily included privileged communications, and requested that Fred Larian provide you with such documents as well as 18 other specific categories of documents which were described as "relevant to Mattel's litigation." A copy of your firm's November 28, 2005 Letter also is attached.

Your actions apparently were designed to induce Fred Larian to breach his fiduciary duties to MGA, including inducing a breach of his confidentiality agreement with MGA, *and to improperly obtain documents subject to the protective order herein without complying with such order.* You also violated your ethical obligations, including but not limited to, Rule 4.2 of the ABA Model Rules of Professional Conduct ("Rule 4.2") ("...[A] lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so") and Canon 9 of the ABA Code of Professional Responsibility ("Canon 9") ("A lawyer should avoid even the appearance of professional impropriety").

Case law prohibits counsel from seeking privileged information from former employees of an adverse party and specifies the imposition of serious remedies for engaging in such conduct. E.g., American Protection Insurance Co. v. MGM Grand Hotel-Las Vegas, Inc., 1986 WL 57464, *1, 6, 7 (D. Nev. 1986) (a violation of ethical rules and disqualification resulted where attorney had ex parte contact with a former officer of adverse party who remained a consultant for the adverse party and was privy to confidential information related to the litigation); In re Data General Corp. Antitrust Litigation, 1986 U.S. Dist. LEXIS 21923, *10 (N.D. Cal. 1986) (counsel precluded from interviewing and hiring former employees of adverse party because employees' knowledge of privileged information of adverse party was intermingled with knowledge that might have been unprotected); Butler v. Biocore Medical Technologies, Inc., 348 F.3d 1163, 1169-72 (10th Cir. 2003) (counsel violated Canon 9 and other ethical rules by contacting former employee of adverse party who possessed confidential

Exhibit 43 , Page 608

**EXHIBIT: 9**
**PAGE: 88**

EX 4236-0002

John B. Quinn, Esq.
July 5, 2007
Page 3

information; court stated that access to privileged information of adverse party may be grounds to disqualify an attorney); Rentclub, Inc. v. Transamerica Rental Finance Corp., 811 F. Supp. 651, 657-58 (M.D. Fl. 1992) (court disqualified counsel who hired as consultant former officer of adverse party who was privy to adverse party's confidential and proprietary information, noting ex parte contact with former employees of adverse party should be barred to prevent disclosure of any inadvertent confidential communications).

For example, in Kaiser v. American Telephone & Telegraph, 2002 U.S. Dist. LEXIS 25758, *30-32 (D. Ariz. 2002), the court disqualified and imposed sanctions on plaintiff's counsel for seeking information relevant to plaintiff's lawsuit from a former employee of defendant after holding that counsel violated Rule 4.2. Recognizing that the majority of cases prohibit inquiry into any confidential or privileged information possessed by an adverse party's former employee, the court concluded that "[i]f a former employee occupie[s] a high ranking position such that his or her exposure to confidential or privileged information may be assumed, or occupie[s] a position giving rise to a plaintiff's claims, then no *ex parte* contact should be permitted absent notice to the former employer." Id. at *19-20 (emphasis in original). The court in Kaiser further explained as follows: "The interest of the corporation in protecting information - especially privileged information - acquired by an employee during the course of employment from disclosure to an opponent in litigation remains after the employee leaves the corporation....[A]t least with respect to former highly-placed former employees, such as former officers and directors of the corporation, the potential for the release of such information makes the corporation's interest paramount to the plaintiff's interest in ex parte contact." Id. at *20-21.

Fred Larian is the very type of highly-placed former employee with whom ex parte contact is disallowed, as instructed by the Kaiser court, as it can be assumed that he was privy to confidential and privileged information of MGA. Indeed, Fred Larian was a paid consultant for MGA at the time of the subject communications, and in this capacity, he had been involved with high-level issues at the company, including certain litigation matters. Thus, the holding in Kaiser provides that your conduct in contacting Fred Larian and seeking confidential and privileged information of MGA from him violates your ethical duties and entitles MGA to appropriate relief, including your disqualification and sanctions.

Given the egregious nature of your misconduct and the prejudice to MGA, we intend to bring your actions to the attention of the Court and seek all appropriate remedies. In the interim, we demand that you stipulate to (1) return all documents which you obtained from Fred Larian and/or his counsel and all notes from your meetings with Fred Larian and/or his counsel; (2) refrain from introducing or using in any fashion any documents or information obtained from Fred Larian or his counsel or derived from information or documents obtained from Fred Larian; (3) cease any further contact with Fred Larian or any of his counsel; and (4) compensate MGA for its attorneys' fees and costs in investigating this matter. We will give you until July 19, 2007 to respond to our requested stipulation before we bring your actions to the attention of the Court and seek all appropriate remedies. Some of the remedies we shall seek will include the

Exhibit 43 , Page 609

**EXHIBIT: 9**
**PAGE: 89**

EX 4236-0003

John B. Quinn, Esq.
July 5, 2007
Page 4

following, among others: an order seeking to disqualify your law firm as counsel for Mattel herein; an order excluding any evidence you obtained from Fred Larian; an adverse inference instruction to the jury based on your misconduct; an order precluding you from further communication with Fred Larian; an order prohibiting you from filing documents containing or referring to any information or documents obtained from Fred Larian or derived from information or documents obtained from Fred Larian; and an order for monetary sanctions against your law firm for the costs incurred by MGA in investigating this matter and seeking such remedies.

Nothing contained herein shall be deemed as a waiver of any of our client's rights and remedies, at law or in equity, all of which are hereby expressly reserved and preserved.

Very truly yours,

Patricia L. Glaser
of CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP

PLG/eb
cc:     Daphne Gronich, Esq.
        Craig Holden, Esq.
        Dale Cendali, Esq.

Exhibit 43 , Page 610

**EXHIBIT: 9**
**PAGE: 90**

EX 4236-0004

# EXHIBIT 10

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 10

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 11

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 11

# TO THE DECLARATION OF

# PATRICIA H. BENSON

3690

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                  - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

**CERTIFIED COPY**

7   MATTEL, INC.,                    )
                                     )
8                   PLAINTIFF,       )
                                     )
9           VS.                      )   NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)
                                     )
11                  DEFENDANTS.      )   TRIAL DAY 18
    _____ )   MORNING SESSION
12  AND CONSOLIDATED ACTIONS,        )   PAGES 3690-3821
    _____ )

13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             TUESDAY, JULY 1ST, 2008

18                  8:44 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              FEDERAL OFFICIAL COURT REPORTER
24               3470 12TH STREET, RM. 134
              RIVERSIDE, CALIFORNIA  92501
25                  951-274-0844
              WWW.THERESALANZA.COM

**EXHIBIT: 11**
**PAGE: 97**

3781

1          BUT YOU HAD INFORMATION ABOUT BRATZ TRADEMARKS;

2   CORRECT?

3   A    I DID.  AS I SAID, I WAS DOING THE TRADEMARKING.

4   Q    FOR WHATEVER REASON, YOU HAD THAT -- CONCERNING ROYALTIES

5   AND OTHER E-MAILS RELATING TO BRATZ AS WELL; CORRECT?          11:13

6   A    CORRECT.

7   Q    IN TOTAL, I THINK YOU HAD SOME TEN TO 15 BOXES OF

8   INFORMATION THAT YOU HAD GIVEN YOUR ATTORNEYS; CORRECT?

9   A    I THINK TEN TO 15 BOXES INCLUDED PLEADINGS, AND I THINK BY

10  THE TIME YOU'RE REFERRING TO, 2005 -- BY THE TIME THAT I        11:13

11  DROPPED THE LAWSUIT, THERE MAY HAVE BEEN TEN TO 15 BOXES.

12  Q    THAT WAS THE VOLUME OF INFORMATION THAT YOU HAD; CORRECT?

13  A    SOUNDS RIGHT.  AS I SAID, MULTIPLE COPIES OF SOME

14  PLEADINGS, MAYBE, AND OTHER THINGS.

15  Q    OKAY.                                                      11:13

16          AND THEN YOU ULTIMATELY DISMISSED YOUR CLAIMS AGAINST

17  ISAAC LARIAN; CORRECT?

18  A    YES, I DID.

19  Q    AND YOU DID THAT IN ORDER TO -- YOU HOPED TO FACILITATE

20  FAMILY HARMONY?                                                 11:14

21  A    THAT WAS ONE OF THE REASONS.

22  Q    A FEW DAYS AFTER DROPPING THAT LITIGATION, YOU GOT RID OF

23  ALL OF THOSE DOCUMENTS YOU HAD COLLECTED IN CONNECTION WITH

24  YOUR CASE; CORRECT?

25  A    NOT CORRECT.                                               11:14

**EXHIBIT: 11**
**PAGE: 98**

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

3782

```
 1    Q    WELL, YOU HAD THIS -- WHAT DO YOU CALL IT? -- USB DEVICE?
 2    A    YES.
 3    Q    YOU ERASED THAT; CORRECT?
 4    A    I PROBABLY ERASED IT.  I USED THE USB DEVICE IN THE COURSE
 5    OF BUSINESS.  SO AFTER I HAD GIVEN IT TO MY ATTORNEY AND THEY          11:14
 6    HAD MADE THEIR OWN COPY, WHEN I GOT IT BACK, IF I NEEDED TO PUT
 7    OTHER THINGS ON THE USB DEVICE, I WOULD.
 8    Q    AND THESE VARIOUS DOCUMENTS YOU HAD COLLECTED, E-MAILS AND
 9    THINGS RELATED TO BRATZ, YOU DESTROYED THOSE?
10    A    SOME OF THEM.  NOT ALL OF THEM.                                    11:14
11    Q    THIS TEN TO 12 BOXES OF DOCUMENTS, YOU DON'T HAVE THOSE
12    ANYMORE.  THEY DON'T EXIST.
13    A    THAT'S NOT TRUE.
14    Q    YOU HAVE THEM?
15    A    I HAVE A LOT OF THEM.  I DO HAVE A LOT OF THEM.                    11:15
16    Q    SO YOU'RE SAYING THE INFORMATION THAT YOU HAD COLLECTED
17    RELATED TO BRATZ FOR YOUR CASE, YOU STILL HAVE THAT.
18    A    WHATEVER I HAVE HAD, WHATEVER I HAD, I GAVE TO MY
19    ATTORNEY, AND I KNOW THEY GAVE YOU 12,000 PAGES OF DOCUMENTS.
20    TO SAY I DON'T HAVE IT, IT'S A MISCHARACTERIZATION.                    11:15
21    Q    SIR, YOU ERASED WHATEVER WAS ON THE USB DEVICE; CORRECT?
22    A    AS I SAID, IN THE COURSE OF BUSINESS, I USE A USB DEVICE
23    FOR MY WORK, FOR MY KIDS' HOMEWORK, AND WE OVERWROTE
24    INFORMATION ON IT.  IF I DIDN'T NEED THE INFORMATION ON THE USB
25    DEVICE, OF COURSE, I ERASED IT.                                        11:15
```

**EXHIBIT: 11**
**PAGE: 99**

# EXHIBIT 12

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 12

# TO THE DECLARATION OF

# PATRICIA H. BENSON

<u>CONSULTING AGREEMENT</u>

This Consulting Agreement is entered into this ___1___ day of $\overline{J\partial N}$ _____,

2001, by and between ABC International Traders Inc., a California corporation

("Company") and Farhad Larian ("Consultant")


WHEREAS, CONSULTANT was a former shareholder, Director and employee of

COMPANY


WHEREAS, COMPANY desires to have CONSULTANT perform certain services on

behalf of COMPANY as an Independent Contractor.


NOW, THEREFORE, for valuable consideration, it is hereby agreed by the

parties hereto as follows


     1.    <u>TERM</u>

        The term of this Agreement shall be for a period of five years,

commencing January 1, 2001 and terminating December 31, 2005, unless earlier

terminated as provided hereinafter.

     2.    <u>SERVICES</u>

        (a) CONSULTANT agrees to provide and make himself available

to perform general administrative services, at the request of COMPANY, and/or

otherwise make himself available to COMPANY for consultation by telephone, for

a total period of time not more than ten hours per month, during the normal

1

**EXHIBIT: 12**
**PAGE: 100**

FL 6515

EX 13108-0001

business hours of COMPANY

(b)  COMPANY hereby acknowledges that during the term of this Agreement, CONSULTANT may engage in any other business or professional activity provided that such activity does not directly compete with the business of COMPANY within Los Angeles County, California, and the performance of such activity does not interfere with his present work as a consultant for COMPANY

(c)  CONSULTANT hereby acknowledges that he is being employed as an Independent Contractor to render the services described herein and that CONSULTANT shall be solely responsible for any Federal and State Income Tax withholding or Estimated Tax Payments that CONSULTANT may be required to file and/or pay

3.    COMPENSATION

For all services rendered by CONSULTANT under this Agreement, COMPANY shall pay to CONSULTANT the sum of $7,500 00 per month payable on the first day of each month of the term hereof

4.   TERMINATION

This Agreement may be terminated by either party for cause or for breach by the other party of any provision contained in this Agreement COMPANY may not terminate CONSULTANT for a breach of this Agreement until COMPANY has furnished CONSULTANT with written notice of the breach contended by COMPANY and CONSULTANT fails to cure said breach within ten (10) days of receipt of said notice.

After five years from the date hereof but not before, this Agreement may be terminated by COMPANY upon payment in full of the promissory note given by Isaac Larian to CONSULTANT as part of the purchase of CONSULTANT'S shares of COMPANY.

2

**EXHIBIT: 12**
**PAGE: 101**

FL 6516

EX 13108-0002

This Agreement may be terminated by CONSULTANT, at any time, without cause, upon giving COMPANY thirty (30) days prior written notice

5       TRADE SECRETS

CONSULTANT acknowledges and represents that the sources of COMPANY's services, techniques, methods, products, manufacturing techniques, manufacturing requirements, pricing, customer lists and vendor lists are a trade secret and the property of COMPANY   It is agreed that all such data is confidential and that it shall not be disclosed, directly or indirectly, or used by CONSULTANT in any way, except on behalf of COMPANY, either during the term of this Agreement or at any time thereafter

6       NOTICES

Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the principal office of COMPANY or personal residence of CONSULTANT

7.      COUNTERPARTS

The within Agreement may be executed in duplicate counterparts and each such signed duplicate counterpart shall be deemed to be an original

8.      TITLES AND CONSTRUCTION

The titles of the paragraphs in this Agreement are set forth for convenience only.  This Agreement shall not be construed or interpreted for or against either of the parties hereto by reason of its draftsmanship by either party.

9.      ASSIGNMENT

The rights, benefits, duties and obligations of COMPANY and CONSULTANT under this Agreement may not be assigned without the express written permission of the other.

3

**EXHIBIT: 12**
**PAGE: 102**

FL 6517

EX 13108-0003

10    ARBITRATION

Any controversy between the parties arising out of this Agreement shall be submitted to Morad Zarabi who shall serve as sole arbitrator with respect to said disputes   If Morad Zarabi is unable to so act, Kambiz Zarabi is appointed arbitrator   Either arbitrator can select another person or entity to serve as arbitrator, either currently or prospectively, if neither of the above two named arbitrators are available to so serve.  The decision of the arbitrator shall be final and binding upon both parties

11.    ATTORNEYS' FEES

If any action or any other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which they may be entitled

12    ENTIRE AGREEMENT

(a)   This Agreement constitutes the entire Agreement between the parties and contains all of the agreement between the parties with respect to the subject matter hereof; this Agreement supersedes any and all other agreements, either oral or in writing, between parties hereto with respect to the subject matter hereof.

(b)   No change or modification of this Agreement shall be valid unless the same be in writing and signed by the person or party to be charged.

13.  GOVERNING LAW

This Agreement shall be subject to and governed by the laws of the State of California.

4

**EXHIBIT: 12**
**PAGE: 103**

FL 6518

EX 13108-0004

DATED.   JUN 1 _____ , 2001

COMPANY ·                              CONSULTANT:

ABC INTERNATIONAL TRADERS INC.

                                       _Farhad Lari_____
By· _____            FARHAD LARIAN
    Isaac Larian, President

5

**EXHIBIT: 12**
**PAGE: 104**

FL 6519

EX 13108-0005