# EXHIBIT 13

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 13

# TO THE DECLARATION OF

# PATRICIA H. BENSON

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:    (415) 774-2611
Facsimile:    (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN GLASER FINK JACOBS WEIL & SHAPIRO LLP** |

### I. INTRODUCTION

On February 29, 2008, Mattel, Inc. ("Mattel") submitted a Motion to Compel Deposition and Production of Documents of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro ("Christensen Glaser"). Specifically, Mattel seeks an order compelling Christensen Glaser to appear for

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT: 13
PAGE: 105

1  deposition on Topic Nos. 1-3, 5, and 7-13 and to produce documents responsive to Request for

2  Production Nos. 1-6, 8, and 10-22 pursuant to a subpoena served January 18, 2008. On March 21,

3  2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

4  Mexico S.R.L. de C.V. (collectively "MGA") and Christensen Glaser submitted separate

5  oppositions. On March 28, 2008, the parties submitted a joint report in which they advised the

6  court that despite further meet and confer efforts, the parties were unable to resolve or narrow the

7  instant motion. On March 31, 2008, Mattel submitted a reply. Pursuant to Paragraph 5 of the

8  Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it

9  appropriate to take the motion under submission for decision without oral argument.

10                                          II. BACKGROUND

11          Christensen Glaser has served as legal counsel to MGA and Isaac Larian in connection

12  with this action and a variety of other matters since 1999. Gizer Decl.¶2. Christensen Glaser was

13  trial counsel of record for MGA and Isaac Larian in this very action from the filing of the case in

14  April 2004 until October 2007. Id. Although Christensen Glaser is no longer trial counsel of

15  record, the firm continues to provide legal advice to MGA and Isaac Larian in connection with

16  this action and still represents them in other matters. Id. Christensen Glaser also represents

17  Farhad Larian in connection with this action. Christensen Glaser Opposition at p. 1.

18          On January 7, 2008, the district court granted Mattel leave to take Christensen Glaser's

19  deposition, along with approximately forty-five other individuals and entities. The district court

20  held that Mattel had "shown good cause to grant additional discovery given the complexity of the

21  case, the number of parties, recent developments related to the substitution of counsel, the

22  concerns regarding retention and spoliation of evidence, and the delay in receiving discovery

23  caused by numerous discovery disputes and a Court imposed stay requested by MGA upon

24  substitution of counsel." Albán Decl., Ex. 12.

25          Mattel served a subpoena on Christensen Glaser on January 18, 2008. The subpoena

26  contains twenty-two document requests and seeks, *inter alia*, information related to the Carter

27

28

1   Bryant-MGA Agreement, the origination of Bratz, MGA's document preservation efforts, fee and

2   indemnity agreements entered into by MGA, and the documents that Farhad Larian's former

3   counsel showed to Mattel.  The subpoena contains fourteen deposition topics on the same subject

4   matters as the document requests.  On January 28, 2008, Christensen Glaser served objections to

5   Mattel's subpoena.

6         On January 28, 2008, Mattel filed an *ex parte* application with the district court requesting

7   leave to take third party depositions, including Christensen Glaser's deposition, after the discovery

8   cut-off.  During the hearing conducted on February 4, 2008, Christensen Glaser requested that the

9   Court clarify that the January 7, 2008 Order granted Mattel leave to depose Christensen Glaser on

10   only one issue.  The district court responded as follows:

11         That is not the case, and the request is DENIED.  Mattel has been granted relief
          from the numerical limitations that previously restricted its ability to depose those
12         individuals and entities addressed by the Court's January 7, 2008, Order,
          including its ability to depose Christensen, Glaser.  Unless otherwise restricted by
13         the Discovery Master upon proper presentation of the issue to him, Mattel may
          depose Christensen, Glaser on any relevant, non-privileged matter.

14

15   March Decl., Ex. A.

16         Mattel contends that the deposition topics and document requests in the subpoena are all

17   relevant to central issues in the case.  Mattel's motion, however, focuses on three general issues,

18   without reference to specific topics or document requests.  First, Victoria O'Connor testified that

19   Isaac Larian ("Larian") instructed her to redact a Mattel facsimile identifier on the Bratz

20   agreement between MGA and Bryant (the "Agreement") and to send the Agreement to Patricia

21   Glaser of Christensen Glaser.  Ms. O'Connor testified that she followed Larian's instructions and

22   sent the Agreement.  Larian denies ever giving that instruction to Ms. O'Connor.  Mattel seeks

23   documents and deposition testimony to explore Christensen Glaser's receipt of that Agreement,

24   which Mattel contends is relevant to show spoliation of evidence.

25         Second, Mattel seeks information about Farhad Larian, whom Christensen Glaser

26   represents in this action.  According to Mattel, Farhad Larian admitted in late November 2005,

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                                              3

1  while he was on MGA's payroll as a consultant and while Christensen Glaser represented MGA,

2  he destroyed evidence directly relevant to this action with the express intent of keeping such

3  evidence from Mattel.

4      Further, Mattel emphasizes that Christensen Glaser threatened to disqualify Mattel's

5  counsel based on counsel's purportedly improper and unethical contact with Farhad Larian and his

6  counsel in connection with Mattel's review of documents in Farhad Larian's possession in the fall

7  of 2005.  Farhad Larian destroyed most of the documents Mattel reviewed.  Mattel contends that

8  information in Christensen Glaser's possession is relevant to Bratz, Farhad Larian's alleged

9  spoliation of evidence, and Mattel's defense to Christensen Glaser's disqualification threat.

10     Third, Mattel seeks information from Christensen Glaser about payments from MGA to

11  Bryant and other witnesses in this action.  Mattel contends that evidence of payments is relevant

12  to bias and credibility of the witnesses.

13     Christensen Glaser contends that Mattel's subpoena does not satisfy the elements set forth

14  in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), which limits the depositions

15  of opposing counsel.  Rather, Christensen Glaser contends that all of the documents and

16  information requested by the subpoena are either privileged or available from another source, and

17  are not crucial to Mattel's preparation of its case.

18     MGA also opposes Mattel's motion, contending that the subpoena is overly broad, invades

19  privileged matters, unnecessarily disrupts the adversarial process, and unreasonably burdens and

20  harasses MGA and its counsel.  Moreover, MGA contends that Mattel fails to make the required

21  showing that there is no other means by which Mattel can obtain the information it seeks, or that

22  the information it seeks is crucial (or even necessary) to its case, as required under Shelton, supra.

23  MGA also contends that the information sought is duplicative and cumulative in view of prior

24  discovery Mattel has already sought and received in this case.

25  //

26  //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

1                                  III. STANDARDS

2          In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is

3    relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). All discovery, however, is

4    subject to the limitations imposed by Rule 26(b)(2)(C), Fed.R.Civ.P., which provides that the

5    court must limit the frequency or extent of discovery otherwise allowed by the Federal Rules of

6    Civil Procedure or by local rule if it determines that: "(i) the discovery sought is unreasonably

7    cumulative or duplicative, or can be obtained from some other source that is more convenient,

8    less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to

9    obtain the information by discovery in the action; or (iii) the burden or expense of the proposed

10   discovery outweighs its likely benefit, considering the needs of the case, the amount in

11   controversy, the parties' resources, the importance of the issues at stake in the action, and the

12   importance of the discovery in resolving the issues."

13         Fed.R.Civ.P. 30(a) provides that depositions may be taken of "any person." There is no

14   express prohibition against deposing opposing counsel. See Shelton, 805 F.2d at 1327. Courts,

15   however, have cautioned that depositions of opposing counsel should be allowed only in limited

16   circumstances. In Shelton, the Eighth Circuit Court of Appeals explained the judicial attitude

17   toward such depositions as follows:

18              We do not hold that opposing trial counsel is absolutely immune from being
                deposed. We recognize that circumstances may arise in which the court should
19              order the taking of opposing counsel's deposition. But those circumstances
                should be limited to where the party seeking to take the deposition has shown that
20              (1) no other means exist to obtain the information than to depose opposing
                counsel, see e.g., Fireman's Fund Ins. Co. v. Superior Court, 72 Cal.App.3d 786,
21              140 Cal. Rptr. 677 (1977); (2) the information sought is relevant and
                nonprivileged; and (3) the information is crucial to the preparation of the case.
22
     Shelton, 805 F.2d at 1327.[1]
23

24
     ─────────────
     [1]  In its reply, Mattel contends that Shelton is not the law of this circuit, and asserts that this court should instead
25   follow the Second Circuit's reasoning in In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003).
     In Friedman, the court held that the following factors should be considered when deciding whether the deposition of a
26   lawyer should take place:

27                                                                              (continued...)

28                                                                                              5
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT: 13
PAGE: 109

1

### IV. DISCUSSION

2  A. Information re Carter Bryant's Agreement with MGA

3       The information Mattel seeks regarding the Agreement between MGA and Bryant is

4  relevant, and indeed crucial, to the claims and defenses in the case.  The Agreement is at the heart

5  of this case and is the very document by which Bryant purportedly assigned Bratz to MGA.  The

6  date and circumstances under which the Agreement was transmitted to Christensen Glaser are

7  relevant because they might disclose whether or not (a) Bryant and MGA finalized the Agreement

8  while Bryant still worked for Mattel and (b) MGA believed in good faith that Bryant had the

9  rights to Bratz – an affirmative defense MGA has raised.

10       Further, the information Mattel seeks is relevant and crucial to Mattel's counterclaims,

11  which include a RICO claim that is predicated, in part, upon an allegation that defendants altered

12  Bryant's Agreement to conceal evidence that Bryant faxed the Agreement from the Barbie

13  Collectibles department of Mattel, using a fax machine owned by Mattel and while Bryant was

14  employed by Mattel.  The information Mattel seeks is also relevant and crucial to Mattel's

15  spoliation claim against MGA.[2]

16

17

18    (...continued)
    the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery

19      is sought and in relation to the pending litigation, the risk of encountering privilege and work-
    product issues, and the extent of discovery already conducted.... Under this approach, the fact that

20      the proposed deponent is a lawyer does not automatically insulate him or her from a deposition
    nor automatically require prior resort to alternative discovery devices, but it is a circumstance to

21      be considered.

22  Friedman, 350 F.3d at 72; see also Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007) (finding
    Second Circuit's reasoning in Friedman to be more persuasive than Shelton).

23

24      The Ninth Circuit has not adopted Shelton, supra.  However, Shelton is generally regarded as the leading
    case on deposing opposing counsel.  In any event, Rule 26(b)(2)(C), Fed.R.Civ.P., ultimately dictates the appropriate
    limits of discovery.

25

26      [2] Arguably, Ms. O'Connor redacted the Agreement at a time when MGA was not under any duty to preserve
    evidence.  Whether Mattel will ultimately prevail on its spoliation claim, however, is not the test for determining
    whether information is discoverable under Rule 26, Fed.R.Civ.P.

27

28

EXHIBIT: 13
PAGE: 110

1    Ms. O'Connor and Larian testified that Christensen Glaser received a version of the

2   Agreement.  Only Christensen Glaser can verify the condition of the Agreement Ms. O'Connor

3   faxed to its office.  Furthermore, MGA has failed to establish that the Agreement Ms. O'Connor

4   faxed to Christensen Glaser is privileged.  There is no evidence that the Agreement itself – as

5   compared to any communication that might have accompanied the Agreement – is privileged.

6    MGA next contends that "merely disclosing the timing and other circumstances

7   surrounding MGA's transmittal of that contract to Christensen Glaser would divulge details about

8   a request by MGA for legal advice from its counsel, and would likely reveal legal strategies

9   surrounding one or more legal matters."  MGA's Opposition at p.13.  Mattel, however, represents

10   that it is not seeking privileged information from Christensen Glaser, but rather non-privileged

11   information regarding the date, time and manner of the Agreement's transmission, as well as the

12   form in which the Agreement was transmitted.  In view of Mattel's representation regarding the

13   limited nature of its inquiry, MGA's concerns regarding potential privileged information are

14   unfounded, and in any event, premature until Mattel poses a specific question to Christensen

15   Glaser that calls for the disclosure of privileged information.  If and when that occurs, MGA's

16   claims of privilege can be addressed on a question-by-question basis.

17    Therefore, Mattel's motion is granted to the extent Mattel seeks production of the

18   Agreement Ms. O'Connor faxed to Christensen Glaser.  Mattel's motion is also granted to the

19   extent Mattel seeks testimony regarding the date, time and manner of the Agreement's

20   transmission and the condition of the Agreement when it arrived at Christensen Glaser's office.

21   The information Mattel seeks is relevant and crucial to both Phase 1 and Phase 2 issues, and

22   accordingly Christensen Glaser's deposition should proceed without delay.

23    To the extent Mattel's subpoena seeks documents and testimony beyond the Agreement

24   itself and the date, time and manner of the Agreement's transmission and the condition of the

25   Agreement when it arrived at Christensen Glaser's office, Mattel's subpoena exceeds the bounds

26   of relevant discovery under Rule 26(b)(1), Fed.R.Civ.P., and intrudes, without justification, upon

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                7

1   MGA's attorney-client relationship and privileged communications with Christensen Glaser,

2   taking into consideration all of the factors in Rule 26(b)(2)(C), Fed.R.Civ.P.  Mattel has had

3   ample opportunity to take discovery regarding Bryant's Agreement with MGA from multiple

4   sources.  Other than the limited discovery of Christensen Glaser permitted by this Order, Mattel

5   has not shown that Christensen Glaser possesses non-privileged information beyond that which it

6   has already sought and obtained.  The requested discovery is also cumulative and unduly

7   burdensome.

8   B. Information re Farhad Larian's Alleged Spoliation and Mattel's Threatened Disqualification

9          The information Mattel seeks regarding Farhad Larian's alleged destruction of evidence is

10   relevant and crucial to Mattel's allegations of spoliation.  Farhad Larian has testified that he

11   destroyed documents and information related to Bratz with the express intent of keeping them

12   from Mattel.  The documents Farhad Larian destroyed included:  (1) MGA Bratz-related emails

13   from the 2000 and 2001 time period; (2) financial forecasts and shipping spreadsheets that

14   included Bratz; (3) signed and draft declarations of persons knowledgeable about Bratz during the

15   2000 time period; and (4) information from the Larian v. Larian matter.

16          Christensen Glaser was MGA's counsel and was involved in MGA's evidence preservation

17   efforts.  Further, Christensen Glaser has represented Farhad Larian with respect to the instant

18   lawsuit.  Given Christensen Glaser's involvement with MGA's evidence preservation efforts and

19   Christensen Glaser's representation of Farhad Larian, it is reasonable to infer that Christensen

20   Glaser possesses information potentially relevant to Mattel's allegations regarding spoliation of

21   evidence.[3]

22          Furthermore, the information Mattel is seeking about the documents Farhad Larian has

23   admitted he destroyed and regarding the factual bases for MGA's threatened disqualification of

24   Mattel's counsel appear to be uniquely within Christensen Glaser's possession.  Mattel has a list of

25   ────────────────────

26          [3] In its opposition papers, Christensen Glaser neither admits nor denies involvement with or knowledge of MGA's efforts, if any, to preserve potential evidence in Farhad Larian's possession.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

8

1   the documents it inspected at the offices of Farhad Larian's attorneys in November 2005, but not

2   the documents themselves. Farhad Larian no longer has the documents, and MGA has not

3   produced copies of those documents to date.

4       MGA and Christensen Glaser have asserted valid concerns regarding the potential

5   intrusion upon privileged information and work product. These concerns do not automatically

6   insulate Christensen Glaser from Mattel's subpoena, particularly because of the gravity of the

7   spoliation allegations and the lack of alternative sources for the documents Farhad Larian has

8   admitted he destroyed. Further, the privilege issues cannot be addressed in a vacuum but must

9   await the outcome of Christensen Glaser's document production and deposition.

10       However, to the extent Mattel's subpoena seeks documents and testimony beyond

11   document preservation efforts relating to Farhad Larian and Mattel's threatened disqualification,

12   the subpoena exceeds the bounds of relevant discovery under Rule 26(b)(1), Fed.R.Civ.P., and

13   intrudes, without justification, upon MGA's attorney-client relationship with Christensen Glaser

14   and privileged communications, taking into consideration all of the factors in Rule 26(b)(2)(C),

15   Fed.R.Civ.P.

16   C. Payments to Witnesses

17       Lastly, Mattel seeks information regarding payments made to witnesses to this lawsuit.

18   The information sought is clearly relevant to credibility and bias, but not crucial to Mattel's

19   preparation of its case. Furthermore, Mattel has had ample opportunity to pursue such discovery,

20   and indeed has obtained such discovery from many other sources. The requested information is

21   also duplicative and cumulative of other discovery Mattel has sought and received, and unduly

22   burdensome, taking into consideration all of the factors set forth in Rule 26(b)(2)(C)(iii),

23   Fed.R.Civ.P.

24             V. CONCLUSION

25       For the reasons set forth above, Mattel's motion to compel the deposition of Christensen

26   Glaser and for documents is granted in part and denied in part as follows:

27

28

EXHIBIT: 13
PAGE: 113

1.      No later than May 15, 2008, Christensen Glaser shall produce all non-privileged documents that are responsive to the following requests: Nos. 1 (limited to the Agreement that Ms. O'Connor testified she sent to Christensen Glaser), 17, 21 (limited to documents sought by or the subject of Request Nos. 1 (as limited above) and 17) and 22 (limited to documents sought by or the subject of Request No. 17). Documents withheld on the basis of privilege must be identified on a privilege log, which shall be produced to Mattel no later than May 15, 2008.

2.      Christensen Glaser shall appear for deposition and testify regarding Topic Nos. 8 and 13. Topic No. 13 is limited to the Agreement Ms. O'Connor testified she sent to Christensen Glaser, the date, time and manner of the Agreement's transmission, and the condition of the Agreement when it arrived at Christensen Glaser's office. The deposition shall proceed at a place and time mutually convenient to all parties and witness(es), and shall be completed no later than May 20, 2008.

3.      All claims of privilege are preserved. Nothing in this Order is intended to authorize or preclude any party from asserting claims of privilege with respect to specific documents and/or deposition questions, if appropriate.

4.      Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., Mattel's motion is denied with respect to all topics and document requests set forth in the subpoena that are not specifically identified in paragraphs 1 and 2 above.

5.      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 1, 2008                              /S/
                                      _____

                                      HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master

### PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 1, 2008, I served the
attached ORDER GRANTING IN PART AND DENYING IN PARTMATTEL'S MOTION TO COMPEL
DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN GLASER FINK JACOBS
WEIL & SHAPIRO LLP in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Patricia L. Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgenthaler@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true
and correct.

Executed on May 1, 2008, at San Francisco, California.

Anthony Sales

**EXHIBIT: 13
PAGE: 115**

CM/ECF - California Central District                                    Page 1 of 3

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Nolan, Thomas on 5/1/2008 at 5:09 PM PDT and filed on
5/1/2008

**Case Name:**     Carter Bryant v. Mattel Inc
**Case Number:**   2:04-cv-9049
**Filer:**         Isaac Larian
               MGA ENTERTAINMENT INC., INTERVENOR RE: CV04-09059
               MGA Entertainment HK Limited
               MGAE De Mexico SRL De Cv

**Document Number:** 3420

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Deposition and Production of
Documents of Christensen Glaser Fink Jacobs Weil & Shapiro LLP filed by Counter Defendants Isaac
Larian, MGA Entertainment HK Limited, MGAE De Mexico SRL De Cv, MGA ENTERTAINMENT
INC., INTERVENOR RE: CV04-09059 (Nolan, Thomas)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Linda M Burrow    burrow@caldwell-leslie.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com, feseroma@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Scott E Gizer    sgizer@chrisglase.com

Melissa Grant    melissagrant@quinnemanuel.com

Emil W Herich    eherich@kmwlaw.com

**EXHIBIT: 13
PAGE: 116**

CM/ECF - California Central District                                    Page 2 of 3

Diane C Hutnyan     dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Stan Karas     stankaras@quinnemanuel.com, gayleduran@quinnemanuel.com,
westonreid@quinnemanuel.com

John W Keker     jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Michael P Kelly     mikelly@skadden.com

Raoul D Kennedy     rkennedy@skadden.com

Alisa Morgenthaler Lever     amorgenthaler@chrisglase.com

Larry W McFarland     lmcfarland@kmwlaw.com

Cyrus S Naim     cyrusnaim@quinnemanuel.com

Thomas J Nolan     tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Randa A F Osman     randaosman@quinnemanuel.com

Mark E Overland     moverland@obsklaw.com, jhibino@obsklaw.com

Michael H Page     mhp@kvn.com, efiling@kvn.com

Kenneth A Plevan     kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor     dylanproctor@quinnemanuel.com

Rebekah L Punak     rpunak@kvn.com, ihartzlewis@kvn.com

John B Quinn     johnquinn@quinnemanuel.com

Jason D Russell     jrussell@skadden.com, allison.velkes@skadden.com

David C Scheper     dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar     alexstolyar@quinnemanuel.com

John Elliot Trinidad     jtrinidad@kvn.com, cparker@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock     awaltonhadlock@kvn.com

Matthew M Werdegar     mmw@kvn.com

Michael T Zeller     michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Lauren E Aguiar

**EXHIBIT: 13**
**PAGE: 117**

Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington, DC 20005-2111

Marina Vladimir Bogorad
Skadden Arps Slate Meagher & Flom
300 S Grand Ave, Ste 3400
Los Angeles, CA 90071-3144

David W Foster
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

James E Lyons
Skadden Arps Slate Meagher & Flom
4 Embarcadero Center
Ste 3800
San Francisco, CA 94111-5974

Nathan Meyer
Kaye Scholer
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\temp\CONVERT\Order re Deposition and Documents of Christensen Glaser.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=5/1/2008] [FileNumber=5787046-0]
[50642bce9c9715cc19dfce7381d58980ed769abd7e2ea65c76c47196c5542d335c7e8
d8d380e1a7895b30fc0dc20d494b492fdd2552ed8b57fbd2543d8ec1879]]

EXHIBIT: 13
PAGE: 118

# EXHIBIT 14

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 14

# TO THE DECLARATION OF

# PATRICIA H. BENSON

1  Larry McFarland (Bar No. 129668)
   Christian Dowell (Bar No. 241973)
2  KEATS, McFARLAND & WILSON LLP
   9720 Wilshire Blvd.
3  Penthouse Suite
   Beverly Hills, CA 90212
4  Telephone:  (310) 248-3830
   Facsimile:   (310) 860-0363
5  Email:   lmcfarland@kmwlaw.com
            cdowell@kmwlaw.com
6
7  Attorneys for
   Ana Elise Cloonan, Margaret Hatch-Leahy, and
8  Veronica Marlow
9
                UNITED STATES DISTRICT COURT
10
                CENTRAL DISTRICT OF CALIFORNIA
11
                        EASTERN DIVISION
12

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | Case No.: CV 04 – 09049 SGL (RNBx) |
| 14            Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 15      v. | Hon. Stephen G. Larson |
| 16  MATTEL, INC., a Delaware | ANA ELISE CLOONAN'S, MARGARET |
| 17  corporation; | HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S |
| 18           Defendant. | EX PARTE APPLICATION TO (1) |
| 19  | COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH- |
| 20  AND RELATED ACTIONS. | LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY |
| 21  | THE SCHEDULING ORDER |
| 22  | |
| 23  | Hearing Date:   November 20, 2007 |
| 24  | Time:              10:00 a.m. |
| 25  | Place:              Courtroom 1 |

26
27                                            EXHIBIT: 14
28                                            PAGE: 119

## I.     INTRODUCTION

In its Standing Order, the Court reminds counsel "that <u>ex parte</u> applications are solely for extraordinary relief."  Court's Standing Order at 5.  Had Mattel heeded this admonition, it would not have burdened the Court with an *ex parte* application and 44 accompanying exhibits to resolve a simple dispute over when to schedule the depositions of ***non***-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow (collectively, the "Non-Party Witnesses").[1]

Contrary to Mattel's gross mischaracterizations, the Non-Party Witnesses and their counsel have fully cooperated with Mattel in its document discovery of them and in scheduling depositions.  Indeed, for the past few months, the Non-Party Witnesses have repeatedly agreed to be deposed even though Mattel waited until yesterday to serve deposition subpoenas on them for the first time.  At issue here are the following deposition dates which the Non-Party Witnesses have proposed to Mattel and which represent the earliest dates on which they and their counsel are reasonably available: December 12, 2007 for Ms. Hatch-Leahy; December 14, 2007 for Ms. Cloonan; and January 9, 2008 for Ms. Marlow.

Mattel offers no compelling reason why the depositions cannot proceed on these dates.  As to Ms. Hatch-Leahy and Ms. Cloonan, the proposed dates are within a week of the December 7, 2007 date by which Mattel wants to complete their depositions.  For Ms. Marlow, the proposed date is well before Phase I fact discovery cutoff and is the first available date on which she can be deposed without suffering any undue burden, harassment or expense.

---

[1] Curiously, although Mattel believes that the Court should resolve this non-party discovery dispute, Mattel has asserted that disputes regarding the Non-Party Witnesses' production of documents should be handled by the Discovery Master.  The Non-Party Witnesses disagree with Mattel in both respects and believe that all such non-party discovery disputes should be decided by Magistrate Judge Block. Nevertheless, because Mattel's *ex parte* application is unfounded, the Court should simply deny the application rather than refer it to Magistrate Judge Block.

- 1 -

OPPOSITION TO
EX PARTE APPLICATION

**EXHIBIT: 14**
**PAGE: 120**

1    Moreover, the only two arguments that Mattel offers in support of its *ex parte*

2    application are either irrelevant or unsubstantiated.  That the Non-Party Witnesses

3    possess discoverable information may entitle Mattel to depose them, but it has no

4    bearing on when those depositions should be scheduled.  In addition, Mattel fails to

5    explain what "follow-up discovery" it could legitimately need as a result of the Non-

6    Party Witnesses' depositions that has not already been covered by the mountains of

7    discovery that Mattel has sought and obtained in this case over the past three years.

8    Mattel's *ex parte* application is entirely without merit and a waste of the Court's

9    valuable time and resources.  Accordingly, the Non-Party Witnesses respectfully

10   request that the Court deny Mattel's *ex parte* application.

11   **II.    SUMMARY OF FACTS**

12   Mattel's description of "facts" relating to the scheduling of the Non-Party

13   Witnesses' depositions is incorrect and misleading.  In particular, Mattel fails to

14   include numerous interactions which plainly show that the Non-Party Witnesses and

15   their counsel were working in good faith to schedule depositions and that much of the

16   delay was caused by Mattel's efforts to expand the scope of document production by

17   the Non-Party Witnesses in advance of their depositions.  A more complete and

18   accurate summary of the relevant facts is set forth below.

19   In March and May 2005, Mattel served the Non-Party Witnesses with

20   subpoenas in the 04-9059 case requesting that they produce a broad range of

21   documents and things.  (Declaration of Larry W. McFarland ("McFarland Decl."),

22   Exs. 1-3.)  Shortly thereafter, the action was stayed pending Mattel's appeal to the

23   Ninth Circuit.  In June 2007, after the stay was lifted and the cases were consolidated,

24   Mattel's counsel contacted the Non-Party Witnesses' counsel, Larry McFarland, to

25   discuss production of documents in response to the previously issued subpoenas.

26   (Proctor Decl., Ex. 3.)

27   At the same time though, Mattel sought to broaden substantially the scope of its

28   document discovery with respect to the Non-Party Witnesses.  For example, Mattel

- 2 -

OPPOSITION TO
EX PARTE APPLICATION
**EXHIBIT: 14**
**PAGE: 121**

Case 2:04-cv-09049-DOC-RNB   Document 5272-5   Filed 04/27/09   Page 20 of 33   Page ID
#:171856
Case 2:04-cv-09049-SGL-RNB      Document 1124      Filed 11/16/2007      Page 4 of 13

1    attempted to subpoena virtually all bank records relating to the Non-Party Witnesses

2    since 1999. (McFarland Decl., Ex. 4.) The Non-Party Witnesses objected to the

3    subpoenas as overly broad and agreed to produce a narrower set of records limited to

4    matters relevant to the litigation. (McFarland Decl., Ex. 5.)

5         In June 2007, Mattel's counsel also began demanding that the Non-Party

6    Witnesses provide Mattel copies of their entire computer hard drives without regard to

7    what, if any, actually relevant or responsive documents were stored on them.

8    (McFarland Decl., Ex. 6.) It was not until September 2007—after about three months

9    of negotiations—that Mattel's counsel finally agreed to a more reasonable approach

10   for identifying and producing responsive, non-privileged documents from the Non-

11   Party Witnesses' hard drives. (Proctor Decl., Ex. 16.)

12        In July 2007, Mattel also sought to expand the scope of document production

13   by asserting that it was "entitled to any documents Ms. Marlow, Ms. Leahy … or Ms.

14   Cloonan have relating to Bratz or Bratz derivative works *through the present time …*

15   [and] documents relating to Angel, Angel Baby, Prayer Angel or *any other product on*

16   *which any of [the Non-Party Witnesses] worked with Carter Bryant.*" (McFarland

17   Decl., Ex. 8 (emphasis added).) Rather than engage in protracted discussions about

18   the relevance of such additional documents, the Non-Party Witnesses agreed to re-

19   review their documents for these other materials in an effort to move the document

20   production toward completion. (Proctor Decl., Ex. 8, 16)

21        It was against this backdrop of broadening document discovery that Mattel first

22   broached the issue of the Non-Party Witnesses' depositions. Mattel contends that

23   after first agreeing to check on witness availability in June 2007, the Non-Party

24   Witnesses' counsel, Mr. McFarland, did not respond for three months. (*Ex Parte*

25   App. at 3.) To the contrary, in July 2007, Mr. McFarland conferred with Mattel's

26   counsel about scheduling depositions after completing the document productions in

27   light of the new document production issues being raised by Mattel. (McFarland

28   Decl., Ex. 7.) In particular, Mr. McFarland explained that "it makes sense that we

- 3 -

1   have the document production finalized before you take their depositions.  Because

2   these individuals are third party witnesses, it is particularly important that they not be

3   burdened with more than one day of deposition which might occur if they were to be

4   deposed before you and I have resolved the document production issues."  (*Id.*)

5        Consistent with that approach, once Mr. McFarland and Mattel's counsel had

6   resolved most of the document production issues in September 2007, they began

7   discussing scheduling of the Non-Party Witnesses' depositions. (Proctor Decl., Exs.

8   9, 11, 12 & 14.)  By late September, depositions of all of the Non-Party Witnesses had

9   been set and were scheduled to take place in late October 2007 and the first half of

10   November 2007.  (Proctor Decl., Ex. 14.)

11        However, rather than follow the normal practice of issuing deposition

12   subpoenas for these agreed-upon dates, Mattel's counsel requested that the Non-Party

13   Witnesses execute a stipulation and order for the deposition dates. (Proctor Decl., Ex.

14   15.)  The reason for Mattel's tactic was apparent in the recitals of Mattel's proposed

15   stipulation and order, which stated that Mattel had been "actively seeking" deposition

16   dates since June 2007 but that the Non-Party Witnesses had made no effort to

17   cooperate until September 2007.  (*Id.*)  Understandably, the Non-Party Witnesses did

18   not agree to sign the document.

19        On October 15, 2007, the Court entered a "soft stay" in the case until October

20   31, 2007.  "Specifically all proceedings ***and discovery*** are STAYED during that time."

21   (Docket Item 1089 (emphasis added).)  On October 31, 2007, the Court issued another

22   stay until November 15, 2007.  The Court's order expressly stated that "[n]o

23   depositions shall be conducted during this time."  (Docket Item 1104.)

24        As a result of these stays, the Non-Party Witnesses' depositions were taken off

25   calendar.  Although Mattel contends that Mr. McFarland "cancel[ed]" the depositions,

26   the record is clear that the depositions were postponed by operation of the Court's stay

27   orders, not through any unilateral action taken by Mr. McFarland.  Moreover, Mattel's

28   suggestion that the Non-Party Witnesses and their counsel were in cahoots with MGA

-4-

OPPOSITION TO
EX PARTE APPLICATION
**EXHIBIT: 14**
**PAGE: 123**

1   to obtain a stay only to delay the Non-Party Witnesses' depositions is nothing more

2   than pure conjecture and has no basis in fact.

3        Following entry of the second stay, Mattel's counsel requested that the

4   depositions of Ms. Leahy and Ms. Marlow be scheduled in late November and that the

5   deposition of Ms. Cloonan be scheduled by early December. (Proctor Decl., Ex. 25.)

6   Mr. McFarland responded with dates reasonably close to those requested by Mattel's

7   counsel: December 12, 2007 for Ms. Leahy; December 14, 2007 for Ms. Cloonan; and

8   January 9, 2008 for Ms. Marlow. (Proctor Decl., Ex. 28.)

9        These proposed dates represent the earliest dates on which the Non-Party

10  Witnesses and their counsel are reasonably available for deposition in view of prior

11  commitments, travel schedules, and the holiday season. For example, starting in late

12  November, Ms. Marlow will be out of the country for a long planned three-week trip

13  to Brazil. (McFarland Decl., ¶ 11.) In addition, Ms. Cloonan, who recently gave

14  birth, has limited availability because she is the primary caregiver of her baby and has

15  very limited help. (Id.) Mr. McFarland also has other client and personal

16  commitments in late November and December, including a week-long trip in late

17  December. (Id.)

18       Mattel's counsel objected to the proposed dates on the sole ground that Mattel

19  would be prejudiced in its ability to take "follow-up discovery" before the Phase I fact

20  discovery cutoff, which is currently set for January 28, 2008. (Proctor Decl., Ex. 29.)

21  Mattel, however, has already obtained ample discovery in this case. Since 2004, when

22  this litigation commenced, Mattel has served more than 30 subpoenas for non-party

23  discovery, all of its allotted 50 interrogatories, thousands of requests for admissions

24  and over 800 document requests. (McFarland Decl., ¶ 13.) In addition, excluding the

25  three Non-Party Witnesses, Mattel has used 20 of the 24 depositions that it is allowed

26  to take in this case. (Id.)

27       In a November 13, 2007 letter, Mattel's counsel requested that Mr. McFarland

28  contact him by the end of the following day to discuss about alternative arrangements

**EXHIBIT: 14**
- 5 - **PAGE: 124**

OPPOSITION TO
X PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 5272-5   Filed 04/27/09   Page 23 of 33   Page ID
#:171859
Case 2:04-cv-09049-SGL-RNB      Document 1124      Filed 11/16/2007      Page 7 of 13

1    for the depositions. (Proctor Decl., Ex. 29.) However, unwilling to wait that long,

2    Mattel's counsel called Mr. McFarland at 2:15 p.m. on November 14 to give notice

3    that Mattel would be filing an *ex parte* application. (McFarland Decl., ¶ 12.)

4    Contrary to Mattel's assertion, its counsel made no attempt to actually "discuss[] the

5    matter" during the call. (*Id.*) On November 15, the same day it filed its *ex parte*

6    application, Mattel served for first time deposition subpoenas on the Non-Party

7    Witnesses. (Proctor Decl., Exs. 39-41.)

8    **III.    MATTEL'S *EX PARTE* APPLICATION SHOULD BE DENIED**

9    **         BECAUSE MATTEL HAS NOT MADE THE REQUISITE SHOWING.**

10   **         A.    *Ex Parte* Relief Is Justified Only Where the Applicant Will Suffer**

11   **               Irreparable Prejudice Absent Emergency Relief and the Applicant**

12   **               Did Not Contribute to Creating the Problem.**

13   "Ex parte motions are rarely justified." *Mission Power Engineering Co. v.*

14   *Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). Indeed, as the Court's

15   Standing Order makes clear, "ex parte applications are solely for extraordinary relief."

16   Court's Standing Order at 5, citing *Mission Power*, 883 F. Supp. 488. Because of the

17   urgency that attends *ex parte* applications, courts hold such requests and those who

18   file them to greater scrutiny than in the case of regularly filed motions. *See Mission*

19   *Power*, 883 F. Supp. at 492 ("Lawyers must understand that filing an ex parte motion

20   ... is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'

21   There had better be a fire.").

22   *Ex parte* relief is only warranted where the movant establishes that (1) the

23   movant will suffer irreparable prejudice absent the requested relief, and (2) "the

24   moving party is without fault in creating the crisis that requires ex parte relief, or that

25   the crisis occurred as a result of excusable neglect." *Id.* "To show that the moving

26   party is without fault, or guilty only of excusable neglect, requires more than a

27   showing that the other party is the sole wrongdoer. ... For example, merely showing

28   that trial is fast approaching and that the opposing party still has not answered crucial

**EXHIBIT: 14**
- 6 -   **PAGE: 125**

OPPOSITION TO
EX PARTE APPLICATION

1   interrogatories is insufficient to justify ex parte relief. The moving party must also
2   show that it used the entire discovery period efficiently and could not have, with due
3   diligence, sought to obtain the discovery earlier in the discovery period." *Id.* at 493.

4        As is shown below, Mattel has not established either of the elements necessary
5   to justify granting its requested *ex parte* relief.

6        **B.      Mattel Will Not Be Prejudiced if the Non-Party Witnesses'**
7                  **Depositions Occur on the Dates that They Have Proposed.**

8        Mattel offers only two arguments in support of its *ex parte* application. First,
9   Mattel argues that the Non-Party Witnesses possess discoverable information. *Ex*
10  *Parte* App. at 7-8. Second, Mattel argues that absent its requested relief, Mattel will
11  be prejudiced because it will not have sufficient time to take "follow-up discovery"
12  after the depositions. *Id.* at 8-11. Both arguments fail to support its *ex parte*
13  application.

14       Mattel's first argument is irrelevant to the resolution of Mattel's *ex parte*
15  application and appears to have been included solely to give Mattel an opportunity to
16  argue its version of the case to the Court. That the Non-Party Witnesses have
17  discoverable information does not dictate or even influence when the depositions of
18  those witnesses should be scheduled. It is merely a basis for Mattel to assert that the
19  depositions should occur sometime during fact discovery, which the Non-Party
20  Witnesses do not deny and have worked diligently to accomplish.

21       Mattel's second argument regarding prejudice is also unfounded because Mattel
22  relies on a false sense of urgency and does not substantiate its purported need for
23  "follow-up discovery." Although Mattel contends that it will be harmed if Ms. Hatch-
24  Leahy and Ms. Cloonan's depositions proceed on their proposed dates of December
25  12 and December 14, respectively, those dates are within one week of the December 7
26  date requested in Mattel's *ex parte* application. Mattel cannot reasonably assert that it
27  will be prejudiced, let alone irreparably prejudiced, by having to wait an extra week to
28  depose Ms. Hatch-Leahy and Ms. Cloonan.                    **EXHIBIT: 14**
                                                               **PAGE: 126**

OPPOSITION TO
EX PARTE APPLICATION

1    Mattel also fails to explain how it will be prejudiced with regard to "follow-up

2  discovery" if the Non-Party Witnesses are deposed on the dates they have proposed.

3  Mattel does not explain what possible "follow-up discovery" would be necessitated as

4  a result of the Non-Party Witnesses' depositions. Indeed, by Mattel's account, all of

5  the pertinent information that Mattel seeks resides with the Non-Party Witnesses and

6  presumably will be obtained at their depositions. Phase I fact discovery also does not

7  close until January 28, 2008, giving Mattel three weeks from the proposed date of Ms.

8  Marlow's deposition and six weeks from the proposed dates of Ms. Hatch-Leahy and

9  Ms. Cloonan's depositions to wrap up any remaining discovery issues.

10    Moreover, it is hard to believe that Mattel could have any legitimate "follow-up

11  discovery" arising from depositions that have not already been addressed in the

12  mountains of discovery that Mattel has sought and obtained in this case. Mattel has

13  spent the past three years taking discovery regarding Phase I issues. In that time,

14  Mattel has served literally thousands of requests for admissions, more than 800

15  document requests, all of its allotted interrogatories, and more than 30 subpoenas for

16  non-party discovery. (McFarland Decl., ¶ 13.) Excluding the depositions of the Non-

17  Party Witnesses, Mattel also has used 20 of its allotted 24 depositions and will have

18  only one more deposition available once it deposes the Non-Party Witnesses. (*Id.*) In

19  view of such exhaustive discovery efforts, Mattel's argument that the Non-Party

20  Witnesses' depositions will reveal information previously unknown or unavailable to

21  Mattel that will require two months of additional discovery simply is not credible.

22    Glaringly absent from Mattel's *ex parte* application is any discussion of the

23  burden and expense to the Non-Party Witnesses if Mattel's requested relief is granted.

24  Federal Rule of Civil Procedure 45 requires Mattel and its counsel to "take reasonable

25  steps to avoid imposing undue burden or expense" on the Non-Party Witnesses.

26  Fed.R.Civ.P. 45(c)(1). "Underlying the protections of Rule 45 is the recognition that

27  "'the word non-party" serves as a constant reminder of the reasons for the limitations

28  that characterize third-party' discovery." *Gonzales v. Google, Inc.*, 234 F.R.D. 674,

**EXHIBIT: 14**
**- 8 PAGE: 127**

OPPOSITION TO
EX PARTE APPLICATION

1   680 (N.D. Cal. 2006), quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646,

2   649 (9th Cir. 1980). Courts are "particularly concerned anytime enforcement of a

3   subpoena imposes an economic burden on a non-party." *Gonzales*, 234 F.R.D. at 683.

4         Mattel attempts to avoid having to address these protections afforded non-

5   parties by asserting that the Non-Party Witnesses and their counsel are closely aligned

6   with MGA and Carter Bryant. It is undisputed, however, that none of the Non-Party

7   Witnesses is a party to this action or is employed by or is an agent of MGA or Carter

8   Bryant. In short, the Non-Party Witnesses are exactly that—***non***-party witnesses—

9   and they should be treated accordingly.

10        Forcing the Non-Party Witnesses to sit for deposition on dates earlier than the

11   dates they have proposed would impose an undue burden and expense. The dates

12   proposed by the Non-Party Witnesses are the earliest dates on which they and their

13   counsel are reasonably available in view of their schedules and prior obligations.

14   (McFarland Decl., ¶ 11.) Ms. Marlow, for example, will be on a long planned three-

15   week trip to Brazil starting in late November, and then will be hosting many of her

16   family members during the December and early January holidays. (*Id.*) It would be

17   unduly burdensome, expensive and harassing to require Ms. Marlow to sacrifice these

18   travel and family commitments merely because Mattel wants, but in no way needs, to

19   take her deposition before January 9, 2008. Similarly, it would be an undue burden to

20   force Ms. Cloonan, who is the primary caregiver of her new baby and has very limited

21   help (*id.*), to make undesirable childcare arrangements just so that Mattel can depose

22   during the week prior to the date she proposed for her deposition.

23        Because Mattel has not shown any need for its requested relief or irreparable

24   harm if such relief is not granted, Mattel's *ex parte* application must be denied.

25        **C.    Mattel's Own Actions Contributed to this Dispute.**

26        Mattel's attempts to seek overly broad discovery from the Non-Party Witnesses

27   contributed to the delay in scheduling their depositions and serve as a separate and

28   independent basis for rejecting Mattel's *ex parte* application. *See Mission Power*, 883

**EXHIBIT: 14**
**- 9 - PAGE: 128**

OPPOSITION TO
EX PARTE APPLICATION

1    F. Supp. at 493 ("The moving party must also show that it used the entire discovery

2    period efficiently and could not have, with due diligence, sought to obtain the

3    discovery earlier in the discovery period."). Although Mattel blames the Non-Party

4    Witnesses and their counsel for delaying the scheduling of their depositions, the

5    record shows otherwise.

6         As discussed above, the Non-Party Witnesses and their counsel have acted

7    diligently and in good faith not only to schedule the depositions, but to provide Mattel

8    in advance of those depositions all of the non-privileged documents responsive to

9    Mattel's document subpoenas. (*See* § II above.) To the extent there was any

10   unreasonable delay in scheduling the depositions, Mattel has only itself to blame since

11   it delayed the completion of that production by spending months trying to expand the

12   scope of documents to be produced by the Non-Party Witnesses. (*See id.*)

13        Because Mattel is not without fault in delaying the scheduling of the Non-Party

14   Witnesses' depositions, Mattel's *ex parte* application must fail.

15   **IV.   CONCLUSION**

16        For the foregoing reasons, the Non-Party Witnesses respectfully request that the

17   Court deny Mattel's *ex parte* application.

18

19   Dated: November 16, 2007          KEATS MCFARLAND & WILSON LLP

20

21

22                                     Larry W. McFarland, Esq.

23                                     Attorneys for Non-Parties Ana Elise Cloonan,
                                       Margaret Hatch-Leahy, and
24                                     Veronica Marlow

25

26

27

28                                              **EXHIBIT: 14**
                                                **PAGE: 129**

- 10 -                                           OPPOSITION TO
                                                 EX PARTE APPLICATION

## DECLARATION OF SERVICE

*CARTER BRYANT v. MATTEL, INC.*
*Case No.: CV 04 – 09049 SGL (RNBx)*
*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

I, the undersigned say, I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding. My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Keats, McFarland & Wilson LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On November 16, 2007, I served the following document(s):

1. ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

2. DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

upon counsel and interested parties named below or on an attached service list, by placing a true and correct copy thereof in an envelope addressed as follows:

### See Attached Service List

[XX] **BY MAIL:**    I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Beverly Hills, California.  I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

[  ]  **BY FACSIMILE:**    The above referenced document(s) was transmitted by facsimile transmission and the transmission was reported as completed and without error.  Pursuant to C.R.C. 2009(i), I either caused, or had someone cause, the transmitting machine to properly transmit the attached documents to the facsimile numbers shown on the service list.

[  ]  **BY OVERNIGHT DELIVERY:**    I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of documents for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express, UPS, DHL or the like, or by Express Mail via the United States Postal Service.

[  ]  **BY EMAIL OR ELECTRONIC TRANSMISSION:**    I caused the document(s) to be sent to the persons at the e-mail addresses as listed above and/or on the attached Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2007, at Beverly Hills, California.

Janice L. Trayes

**EXHIBIT: 14**
**PAGE: 130**

Keats McFarland
& Wilson
720 Wilshire Blvd.
Penthouse
Beverly Hills, CA
90212

1

## SERVICE LIST

2

**CARTER BRYANT v. MATTEL, INC.**

3

*Case No.: CV 04 – 09049 SGL (RNBx)*
*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

4

| Counsel | Tele/Fax/E-Mail | Party |
|---|---|---|
| **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP** 865 South Figueroa Street, 10th Fl. Los Angeles, CA  90017  Dylan Proctor, Esq. | Tel:    213.443.3000 Fax:    213.443.3100  Email:dylanproctor@quinnemanuel.com | MATTEL, INC. |
| **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES** 300 South Grand Avenue, Suite 3400 Los Angeles, CA  90017  Thomas J. Nolan, Esq. | Tel:    213.687.5250 Fax:    213.621.5250 Email:  tnolan@skadden.com | MGA |
| **KEKER & VAN NEST, LLP** 710 Sansome Street San Francisco, CA 94111  Michael H. Page, Esq. | Tel:    415.391.5400 Fax:    415.397.7188 Email: mpage@kvn.com | CARTER BRYANT |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT: 14**
**PAGE: 131**

# EXHIBIT 15

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 15

# TO THE DECLARATION OF

# PATRICIA H. BENSON

1               UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4                       - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                       - - -        **CERTIFIED**

7   MATTEL, INC.,                         **COPY**
                                    )
8                    PLAINTIFF,    )   NO. CV 04-09049
                                    )
9            VS.                    )   TRIAL DAY 5
                                    )
10  MGA ENTERTAINMENT, INC., ET. AL., )   MORNING SESSION
                                    )
11                   DEFENDANTS.   )   PAGES 823-882
    _____)
12  AND CONSOLIDATED ACTIONS,       )
    _____)
13

14

15      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17              FRIDAY, MAY 30, 2008

18                  9:09 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
              RIVERSIDE, CALIFORNIA  92501
25                  951-274-0844
              WWW.THERESALANZA.COM           **EXHIBIT: 15**
                                             **PAGE: 132**

832

1  A    I REMEMBER IT BEING VERY, VERY CLOSELY RELATED TO THE

2  RELEASE OF MY PDF.

3  Q    SO IF SOMEONE SAID THAT THE FIRST INTERNAL SALES MEETING

4  WHERE BRATZ WAS INTRODUCED TO THE MGA SALES FORCE WAS IN

5  SEPTEMBER OF 2000, WOULD THAT BE RIGHT?                        09:18

6  A    NO.

7  Q    WERE YOU THE PERSON AT MGA RESPONSIBLE FOR OVERSEEING

8  DEVELOPMENT OF THE FASHIONS FOR A NEW DOLL LINE?

9  A    YES.

10  Q    AND DID YOU RETAIN ANYONE TO ASSIST YOU WITH THE FASHIONS?  09:18

11  A    CAN YOU BE MORE --

12  Q    SURE.  IT WAS AN OVERLY COMPLICATED QUESTION FOR WHAT I

13  MEANT TO ASK.

14          DID YOU WORK WITH AN OUTSIDE VENDOR ON FASHIONS?

15  A    YES.                                                     09:19

16  Q    WHO WAS THAT?

17  A    VERONICA MARLOW.

18  Q    WHEN YOU HIRED MS. MARLOW, WAS SHE A MATTEL EMPLOYEE?

19  A    NO.

20  Q    AND DO YOU KNOW WHEN MS. MARLOW WORKED AT MATTEL?        09:19

21  A    NO.

22  Q    WHY WAS IT NECESSARY TO GET VERONICA MARLOW INVOLVED IN

23  THIS PROJECT IF YOU ALREADY HAD MR. BRYANT AROUND?

24  A    VERONICA MARLOW CONTRIBUTED SOMETHING VERY DIFFERENT TO

25  THE PROCESS.  I THINK EVERYBODY WAS INCREDIBLY SPECIAL AND    09:19

**EXHIBIT: 15**
**PAGE: 133**

MAY 30, 2008                    TRIAL DAY 5, MORNING SESSION

833

1    VERY, VERY POWERFUL FOR THEIR OWN ABILITY IN THE PROCESS.

2    CARTER BRYANT IS A VERY GOOD FASHION DESIGNER.  HE'S AN AWESOME

3    FASHION DESIGNER.  BUT HE HAD NO ABILITY TO ACTUALLY SEW THE

4    FASHIONS.  HE'S NOT A SEAMSTRESS.  HE DIDN'T KNOW HOW TO

5    TRANSLATE HIS SKETCHES INTO SOMETHING THAT HE COULD SEW AND          09:19

6    MAKE 3-D, SO VERONICA WAS INTEGRAL TO ACTUALLY PULL IT

7    TOGETHER, LITERALLY, YOU KNOW, MAKE IT POSSIBLE TO BE PUT INTO

8    A 3-D FORM, IN A SEWING FORM FOR HIM.

9    Q    DID MR. BRYANT, TO YOUR KNOWLEDGE, HAVE ANY EXPERIENCE IN

10   PATTERN MAKING?                                                     09:20

11   A    NO.

12   Q    AND TO YOUR KNOWLEDGE, WAS MR. BRYANT A SEAMSTRESS?

13   A    NO.

14   Q    HAD HE EVER, TO YOUR KNOWLEDGE, MADE ACTUAL CLOTHES FOR

15   HUMANS OR FOR DOLLS?                                                09:20

16   A    NOT TO MY KNOWLEDGE, NO.

17   Q    YOU WERE SHOWN A NUMBER OF E-MAILS YESTERDAY BY MR. PRICE,

18   WHERE, IN ONE OF THEM, FOR EXAMPLE, YOU HAD CHARACTERIZED, IN

19   AN E-MAIL TO HONG KONG, THE FASHIONS AS BEING FINAL IN LATE

20   OCTOBER.                                                            09:21

21        DO YOU REMEMBER THAT?

22   A    YES.

23   Q    CAN YOU DESCRIBE FOR ME, IN YOUR OWN WORDS, WHY YOU KNOW

24   THAT AS OF LATE OCTOBER, THE FASHIONS FOR BRATZ WERE NOT

25   FINALIZED.                                                          09:21

**EXHIBIT: 15**
**PAGE: 134**