# EXHIBIT 18

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 18

# TO THE DECLARATION OF

# PATRICIA H. BENSON

1753

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    ---

4    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5    ---

6    MATTEL, INC.,                    :    PAGES 1753 - 1888
                                      :
7            PLAINTIFF,               :
                                      :
8        VS.                          :    NO. ED CV04-09049-SGL
                                      :    [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,         :    CV04-9059 & CV05-2727]
     ET AL.,                          :
10                                    :
             DEFENDANTS.          ____:
11

12

13

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16    RIVERSIDE, CALIFORNIA

17    FRIDAY, JUNE 6, 2008

18    JURY TRIAL - DAY 9

19    AFTERNOON SESSION

20

21

22                            MARK SCHWEITZER, CSR, RPR, CRR
                              OFFICIAL COURT REPORTER
23                            UNITED STATES DISTRICT COURT
                              181-H ROYBAL FEDERAL BUILDING
24                            255 EAST TEMPLE STREET
                              LOS ANGELES, CALIFORNIA 90012
25                            (213) 663-3494

CERTIFIED COPY

EXHIBIT: 18
PAGE: 161

1826

1   Q.   You would not -- strike that.

2         You would agree that it would have been wrong for

3   Veronica Marlow to use Mattel employees to sew fashions for

4   Bratz dolls?

5         MR. NOLAN:   Your Honor, I object to the relevance.

6         THE COURT:   Overruled.   You may answer.

7         THE WITNESS:   If she did, yes, she would be wrong.

8   Q.   BY MR. PRICE:   Is it correct that if you had discovered

9   that, you would have stopped her from working on any Bratz

10  dolls?

11  A.   I would have stopped her if I knew that she was working

12  on -- she was using Mattel employees to work on Bratz dolls,

13  I would definitely stop her, yes.

14  Q.   And that's because you know that that simply is

15  inappropriate activity.

16  A.   That's correct.

17  Q.   But isn't it true that you came to know that and did not

18  stop her from working on Bratz dolls?

19  A.   I came to know about it during the course of this

20  litigation just recently.

21  Q.   Didn't you know before that that --

22  A.   I did --

23  Q.   Wait.   Let me finish the question.   Didn't you know

24  before that that Veronica Marlow was using employees from

25  another doll company to work on the fashions for Bratz dolls?

**EXHIBIT: 18**
**PAGE: 162**

1827

1    **A.**   I did not.  Veronica Marlow was a free-lance contractor

2    for MGA, and I had no idea who she was using.

3    **Q.**   If she had told you that, you would have done something

4    about it; right?

5    **A.**   If she would have told me that, yes, I would not -- I

6    would stop her.

7    **Q.**   And her husband told you that in 2005, didn't he?

8              MR. NOLAN:  Your Honor, objection.  Relevancy with

9    respect to the time period.

10             THE COURT:  Overruled.  Goes to other issues.  You

11   may answer.

12             THE WITNESS:  I'm sorry.  Can you repeat?

13   **Q.**   BY MR. PRICE:  It's true that her husband told you that

14   in 2005, and you did nothing about it?

15   **A.**   I can't recall.  I'm sorry.

16   **Q.**   If you look in your binder, Exhibit 13223.

17             MR. NOLAN:  Would the Court entertain a quick

18   sidebar?

19             THE COURT:  Yes.

20             **(SIDEBAR CONFERENCE HELD.)**

21             MR. NOLAN:  Your Honor, I just wanted to make

22   certain, we're now into the year 2005, and Mattel is pushing

23   and pushing and pushing this date, this relevant date of what

24   work was being done on Bratz by people not involved or hired

25   by MGA with no knowledge.

**EXHIBIT: 18**
**PAGE: 163**

1832

1          THE COURT:  Don't worry.  Mr. Price and Mr. Quinn

2   can watch the clock.

3          MR. PRICE:  Whose time does this count against?

4          MR. NOLAN:  Me.

5          MR. PRICE:  For the record, Mr. Nolan did offer to

6   sell us hours for a million bucks an hour.

7          MS. AGUIAR:  Just to get closure, though, on one

8   thing, Mr. Zeller said that he thinks this information is

9   relevant not just to the credibility of this single witness,

10  but goes to the larger question of --

11         THE COURT:  You raise a good point on that,

12  Counsel, and I'm just allowing this for credibility.  No, you

13  did raise a good point, and I'll leave it at that.

14         MS. AGUIAR:  Thank you.

15         **(CONCLUSION OF SIDEBAR CONFERENCE.)**

16         THE COURT:  You may proceed.

17  **Q.**  BY MR. PRICE:  You have 13223 in front of you,

18  Mr. Larian?

19  **A.**  Yes, I do.

20  **Q.**  And you see it contains an e-mail from a Peter Marlow to

21  Paula Garcia, you, and M. Woods?

22  **A.**  I see that this is to Paula Garcia, and I'm copied, and

23  somebody named M. Woods is copied.

24         MR. PRICE:  Move Exhibit 13223 into evidence.

25         MR. NOLAN:  Objection.  Relevance, your Honor.

**EXHIBIT: 18**
**PAGE: 164**

1833

1     THE COURT:  I'm going to sustain the objection,

2  Counsel.  I don't know if the entire document is relevant.

3     Let's go to particular sections.

4     MR. PRICE:  Pardon?

5     THE COURT:  Let's lay foundation for the relevance

6  of the particular sections.

7     MR. PRICE:  Sure.

8  Q.  If you look at the second page of the document, and you

9  see, by the way, this is an e-mail from Peter Marlow,

10  Veronica Marlow's husband, concerning the services she has

11  been providing to MGA; correct?

12  A.  This is an e-mail that she's -- or he's sending to Paula

13  Garcia, and I see that I'm copied.  I don't know what is it

14  concerning.  If you'd like me to read it, I don't believe

15  I've seen this before.

16  Q.  Well, if you'd look at the second page.  There is a

17  paragraph at the end beginning with "if."

18     Do you see that?

19  A.  I do.

20  Q.  And the topic is Ms. Marlow talking about the people who

21  work for her.  Do you see that?

22     THE COURT:  Counsel, which paragraph in particular?

23  You're on page 2?

24     MR. PRICE:  Second page, and it's the last

25  paragraph.

1834

1       THE COURT:  The last paragraph.  That spills over

2   to the next page?

3       MR. PRICE:  Yes.

4       THE COURT:  Very well.  You're moving to introduce

5   that particular paragraph?

6       MR. PRICE:  Pardon?

7       THE COURT:  Are you moving to introduce that

8   particular paragraph?

9       MR. PRICE:  Yes.

10       MR. NOLAN:  Objection with respect to foundation.

11   There's no foundation laid that he's seen this paragraph.

12       THE COURT:  Based on what's been established so

13   far, I'll overrule the foundational objection and the

14   relevancy objection to that paragraph alone.  That paragraph

15   alone may be published.

16       **(Exhibit 13223, Page 2, last paragraph, received.)**

17   **Q.**   BY MR. PRICE:  (Reading.)  "If Veronica goes to work for

18   MGA, she will no longer be able to work with her team of

19   pattern and sample makers.  They have secured day jobs with

20   an outlook of many more years of stability that they" --

21       THE COURT:  Just the first paragraph.

22       MR. PRICE:  "They only moonlight for Veronica.

23   About six months ago, we offered each of them full-time

24   employment at double their present salaries with a very

25   generous benefits package, but they all refused."

1835

1    Do you see that?

2  **A.**   I do.

3  **Q.**   So this is communicating that whoever these people are,

4  they have a day job and they are moonlighting.

5  **A.**   That's what the paragraph says.  Your reading is as good

6  as mine.

7  **Q.**   And the paragraph right after that.

8          THE COURT:  One second, Counsel.

9          MR. PRICE:  And I request that that be moved into

10 evidence.

11         THE COURT:  Are there any other portions of this

12 e-mail that you are going to be seeking to introduce,

13 Counsel?

14         MR. PRICE:  It would just be the --

15         THE COURT:  Let's address this all at once.

16         MR. PRICE:  The sixth paragraph down there

17 beginning with "so."  It's really the third sentence

18 beginning with "they," which is important.

19         THE COURT:  Counsel, objections to these two

20 paragraphs, paragraphs 2 and 6 on page 3 of the exhibit,

21 Exhibit 13223.

22         MR. NOLAN:  Consistent with the prior ruling, we

23 have no objection.

24         THE COURT:  Very well.  So those two paragraphs can

25 come in.

**EXHIBIT: 18**
**PAGE: 167**

1836

1    **(Exhibit 13223, Page 3, paragraphs 2 and 6**

2    **received.)**

3    **Q.**   BY MR. PRICE:  Let's look at that first paragraph

4    beginning with these.  "These are older ladies, comfortable

5    with the way things are, and they don't want to change.  We

6    pay them very generously because they are risking their day

7    jobs, even a nice retirement, to work for us.  If they were

8    ever discovered, they'd certainly be painfully humiliated and

9    fired."

10          You see that?

11   **A.**   I do.

12   **Q.**   And so this e-mail informs you that Ms. Marlow has these

13   folks working for her who have secure day jobs, who are

14   moonlighting, and would certainly be fired if it was

15   discovered that they would be moonlighting.

16   **A.**   Yes.

17          MR. NOLAN:  Your Honor, I'm sorry.  In addition to

18   these paragraphs, could we just have the date of this e-mail?

19          THE COURT:  I was going to get to that, Counsel.

20   Let's make sure that we have a document that has the from,

21   sent, to, and subject line along with the three paragraphs

22   the Court has admitted on a singular piece of paper.  And why

23   don't we go ahead and put that up at this time.

24          MR. NOLAN:  Thank you very much, your Honor.

25          THE COURT:  The from, sent, to, and the subject

1837

1  line.  Thank you, Counsel.

2          MR. PRICE:  We will put this in one document.  It's

3  from Peter Marlow, August 1, 2005, forward, Veronica Marlow.

4  And what we are looking at now is the e-mail from Peter

5  Marlow to Paula Garcia, Isaac Larian, two e-mails to Isaac

6  Larian, and M. Woods, dated June 20, 2005, subject, Veronica

7  Marlow.

8          THE COURT:  Very well, Counsel.  Leave it on the

9  screen.

10          MR. PRICE:  The only way digitally it can be done

11  is if it's in the background --

12          THE COURT:  Very well.  We've reached our technical

13  limits.

14          MR. PRICE:  All right.  If we can get back to the

15  these are older ladies.

16  Q.  At this point, reading this e-mail, you know these

17  ladies work for another toy company, don't you?

18  A.  No.

19  Q.  You know they have day jobs.  They are moonlighting, and

20  if it's discovered, they will be painfully humiliated and

21  fired.  You know that, don't you?

22  A.  That's what he said.

23  Q.  So that tells you they are working for another toy

24  company.

25  A.  No, it doesn't.

**EXHIBIT: 18**
**PAGE: 169**

1838

1    Q.    So this --

2    A.    I have no idea who they were working for.

3    Q.    So this would give you no concern whatsoever that the

4    women working and making the patterns for Bratz are working

5    for a competitor?

6    A.    I had no idea -- I have no idea even today who is he

7    talking about.  I don't even recall reading this e-mail.

8    It's a long e-mail sent to Paula, I was just copied on it.

9    So I have no idea.

10   Q.    Well, this was in the midst of a discussion that you

11   were having with Peter Marlow about how much Veronica Marlow

12   was charging; correct?

13   A.    I believe I had concerns how much money we were paying

14   to Veronica Marlow for the work she was doing, yes.

15   Q.    And you recall there are e-mails between you and Paula

16   and Veronica Marlow about her coming in house to work at MGA?

17   A.    Yes, I believe there are.

18   Q.    And this e-mail is part of that discussion where she's

19   saying I can't come in house and provide you the services.

20   A.    It's possible it is, yes.

21   Q.    So this is part of a conversation you were involved in

22   at this time frame, 2005.

23   A.    Which conversation?

24   Q.    About Veronica Marlow coming in house, about how much

25   she was costing; correct?

**EXHIBIT: 18**
**PAGE: 170**

1839

1   **A.**   I know that I was concerned with the amount of money we

2   were paying her to do free-lance contract work for us.

3   **Q.**   And this is Peter Marlow's response as to why Veronica

4   Marlow should not come in house; correct?

5   **A.**   I have no idea if that's his response.  Possibly, yes.

6   But I cannot say it for sure.

7   **Q.**   And reading those paragraphs, sitting here right now as

8   someone who has been in the toy industry for now a number of

9   years, '87 to 2008, 21 years, that's telling you these ladies

10  work at a competitor.

11  **A.**   No.  It says they are sample makers, and what's the

12  other word?  Pattern makers.  And in Southern California,

13  there are many, many companies in downtown L.A. in the

14  textile industry, in the clothing industry.  So they could be

15  from any of those companies.  I have no idea.

16  **Q.**   Not necessarily a doll making.

17  **A.**   That's correct.

18  **Q.**   So in that case, let's look at the next paragraph, the

19  paragraph that we talked about beginning with "so."

20          "So how do we get any work done like this?  Maybe

21  it's just that they are so talented.  They have more than 100

22  years total of doll-making experience between them."

23  **A.**   I see.

24  **Q.**   You see that?

25  **A.**   Yes.

**EXHIBIT: 18**
**PAGE: 171**

1  Q.   So it's fair, Mr. Larian, that after reading this, that

2  these women have secure day jobs with stability, that they

3  are unwilling to leave, and that they moonlight, that if they

4  are discovered, they will be painfully humiliated and fired,

5  that they are talented doll makers, that they have more than

6  a hundred years of doll making experience between them.  All

7  of these certainly lead you to suspect that Veronica Marlow

8  is using a competitor's employees to make the fashions for

9  your Bratz dolls.

10  A.   I did not pay attention, as I told you, to this whole

11  long e-mail, nor did I read every line as you're doing right

12  now.

13  Q.   Well, it's certainly accurate to say that you did not do

14  anything in response to this e-mail to determine whether or

15  not the woman making fashions for Bratz was using competitors

16  of an employee.

17  A.   I did not do anything one way or another that I recall,

18  no.

19  Q.   And you didn't, for example, communicate with Mr. Marlow

20  or Veronica Marlow and say identify who these ladies are who

21  have a hundred years total doll-making experience and have

22  this secure employment and who are moonlighting and who would

23  be fired and humiliated if it was discovered.

24  A.   Again, as I testified, I did not read this long e-mail.

25  It was not sent to me.  It was sent to Paula.  I was copied

# EXHIBIT 19

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 19

# TO THE DECLARATION OF

# PATRICIA H. BENSON

From:        Peter Marlow
Sent:        Monday, August 01, 2005 12:31 PM
To:          'cbe1068@sbcglobal.net'
Subject:     FW: Veronica Marlow

-----Original Message-----
From: Peter Marlow [mailto:pmarlow@socal.rr.com]
Sent: Monday, June 20, 2005 3:14 PM
To: Paula Garcia
Cc: Isaac Larian (ilarian@mgae.com); 'Isaac Larian (President / CEO)'; 'nwoods@mgae.com';
'CBE1068@cs.com'
Subject: Veronica Marlow

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002915

**EXHIBIT: 19**
**PAGE: 173**

EX 13223-0001

If Veronica goes to work for MGA, she will no longer be able to work with her team of pattern and sample makers. They have secure day jobs with an outlook of many more years of stability that they

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002916

**EXHIBIT: 19**
**PAGE: 174**
EX 13223-0002

are unwilling to leave. They only moonlight for Veronica. About 6 months ago we offered each of them full-time employment at double their present salaries with a very generous benefits package but they all refused.

These are older ladies, comfortable with the way things are and they don't want to change. We pay them very generously because they are risking their day jobs - even a nice retirement - to work for us. If they were ever discovered they'd certainly be painfully humiliated and fired. Yet they have told Veronica several times that they don't work for her for the money.

So, how do they get any work done like this? Maybe it's just that they are so talented. They have more than 100 years total of doll making experience between them. They are extremely fast and accurate. Despite the TV and the laughter, they work at a very intense pace. More importantly, though, they just love what they do. They are having fun. And what Veronica does through her love for these women, perhaps without even realizing it, is create a work environment where that fun never goes away. It's as close as you can get to a Santa's workshop.

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002917

EXHIBIT: 19
PAGE: 175
EX 13223-0003

# EXHIBIT 20

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 20

# TO THE DECLARATION OF

# PATRICIA H. BENSON

11086

ABC INTERNATIONAL TRADERS, INC.

ABC International Traders, Inc.                                                                    11086

| VENDOR ID | NAME | PAYMENT NUMBER | CHECK DATE |
|---|---|---|---|
| MARLOW | VERONICA MARLOW | 012885 | 12/8/00 |

| OUR VOUCHER NUMBER | YOUR VOUCHER NUMBER | DATE | AMOUNT | AMOUNT PAID | DISCOUNT | WRITE-OFF | NET |
|---|---|---|---|---|---|---|---|
| 026604 | G000625 | 11/14/00 | $4,400.00 | $4,400.00 | $0.00 | $0.00 | $4,400.00 |
| 026605 | G000626 | 11/14/00 | $2,430.00 | $2,430.00 | $0.00 | $0.00 | $2,430.00 |
| | | | $6,830.00 | $6,830.00 | $0.00 | $0.00 | $6,830.00 |

COMMENT

SFMS01042-1

Safeguard

TO REORDER CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 323-838-9696

M97SF004796



Exhibit _____
Brode
8,152 /07  Pgs. 7
Jana Siegers, CSR 10845

Confidential - For Attorney's Eyes Only

MGA 0072161

**EXHIBIT: 20**
**PAGE: 176**

EX 606-0001

# Veronica Marlow

12250 Woodley Ave.
Granada Hills CA, 91344
(818) 360-9158

## INVOICE

**INVOICE NO.:** G000625

**DATE:** 11/14/00

**Sold To:**

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

**Ship To:** Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| | PO03521 | 10/26/00 | | | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | "Bratz" dolls research, development and support services from 9/29/00 to 10/20/00. | | |
| 18 hrs. | Brainstorm and development meetings. | 50.00 | 900.00 |
| 12 hrs. | Support for body sculpting and packaging. | 50.00 | 600.00 |
| 18 hrs. | Fashion research. | 50.00 | 900.00 |
| 19 hrs. | Fashion development and support. | 50.00 | 950.00 |
| 21 hrs. | Pattern and sample development. | 50.00 | 1,050.00 |

| | |
|---|---|
| SUBTOTAL | 4,400.00 |
| SALES TAX @ 8.25% | 363.00 |
| SHIPPING & HANDLING | |
| TOTAL DUE | 4,763.00 |

*Only pay (per P.O.)*  $4,400.00

**Customer Signature**

*THANK YOU FOR YOUR BUSINESS!*

**EXHIBIT: 20**
**PAGE: 177**

Confidential - For Attorney's Eyes Only

MGA 0072162

EX 606-0002

## PURCHASE ORDER

ABC International Traders, Inc
dba MGA Entertainment
16730 Schoenborn St.
North Hills
CA            91343-6122

PO Number:   PO03521
Date:            11/1/00
Page:            1

| | | | | | | |
|---|---|---|---|---|---|---|
| Order From: | VERONICA MARLOW<br>12250 WOODLEY AVENUE | | Deliver to: | L.A. MAIN WAREHOUSE<br>16730 SCHOENBORN ST | | |
| | GRANADA HILLS<br>91344 | CA | | NORTH HILLS<br>CA | | 91343 |

| Your Item Number<br>Item Description | Our Reference | Qty Ordered<br>Date Requested | Units | Unit Cost<br>Date Promised | Extension |
|---|---|---|---|---|---|
| | BRATZ | 18.00 | Each | 50.00 | $900.00 |
| 1 | BRAINSTORM AND DEVELOPMENT MEETIN | 10/26/00 | | | |
| | BRATZ | 12.00 | Each | 50.00 | $600.00 |
| 2 | SUPPORT FOR BODY SCULPTING AND PA | 10/26/00 | | | |
| | BRATZ | 18.00 | Each | 50.00 | $900.00 |
| 3 | FASHION RESEARCH | 10/26/00 | | | |
| | BRATZ | 19.00 | Each | 50.00 | $950.00 |
| 4 | FASHION DEVELOPMENT AND SUPPORT | 10/26/00 | | | |
| | BRATZ | 21.00 | Each | 50.00 | $1,050.00 |
| | PATTERN AND SAMPLE DEVELOPMENT | 10/26/00 | | | |

Please Quote Purchase Order Number on all correspondence.

| | |
|---|---|
| Subtotal: | $4,400.00 |
| Freight: | $0.00 |
| Tax amount: | $0.00 |
| Total Value: | $4,400.00 |

Confidential - For Attorney's Eyes Only

MGA 0072163

**EXHIBIT: 20**
**PAGE: 178**

EX 606-0003

Requisition # REQ02753
Requester   KLEEG
Date

** REQUISITION **

Page: 1

| item Number | Quantity | Units | Cost | Due Date | Total |
|---|---|---|---|---|---|
| BRATZ BRAINSTORM AND DEVELOPMENT MEETING 8322-400 - | 18.00 | Each Site: 01 | $50.00 | 10/26/00 Creditor: MARLOW | $900.00 |
| BRATZ SUPPORT FOR BODY SCULPTING AND PACKAGING 8322-400 - | 12.00 | Each Site: 01 | $50.00 | 10/26/00 Creditor: MARLOW | $600.00 |
| BRATZ FASHION RESEARCH 8322-400 - | 18.00 | Each Site: 01 | $50.00 | 10/26/00 Creditor: MARLOW | $900.00 |
| BRATZ FASHION DEVELOPMENT AND SUPPORT 8322-400 - | 19.00 | Each Site: 01 | $50.00 | 10/26/00 Creditor: MARLOW | $950.00 |
| BRATZ PATTERN AND SAMPLE DEVELOPMENT 8322-400 - | 21.00 | Each Site: 01 | $50.00 | 10/26/00 Creditor: MARLOW | $1,050.00 |

PO 3521
P - 7 349

Requisition Total     $4,400.00

**EXHIBIT: 20**
**PAGE: 179**

Confidential - For Attorney's Eyes Only

MGA 0072164

EX 606-0004

# Veronica Marlow

**12250 Woodley Ave.**
**Granada Hills CA, 91344**
**(818) 360-9158**

# INVOICE

INVOICE NO.: G000626

DATE: 11/14/00

**Sold To:**

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

**Ship To:**

Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| | PO03522 | 10/26/00 | | | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | "Bratz" dolls third party services from 10/13/00 to 10/20/00. | | |
| 49 hrs. | Third party sewing and pattern making support. | 30.00 | 1,470.00 |
| 32 hrs. | Third party sewing and pattern making support. | 30.00 | 960.00 |

| | |
|---|---|
| SUBTOTAL | 2,430.00 |
| SALES TAX @ 8.25% | 200.48 |
| SHIPPING & HANDLING | |
| **TOTAL DUE** | 2,630.48 |

*Only pay $2,430.00*
*(per P.O.)*

**Customer Signature**

*THANK YOU FOR YOUR BUSINESS!*

**EXHIBIT: 20**
**PAGE: 180**

Confidential - For Attorney's Eyes Only

MGA 0072165

EX 606-0005

## PURCHASE ORDER

ABC International Traders, Inc
dba MGA Entertainment
16730 Schoenborn St.
North Hills
CA            91343-6122

PO Number:   PO03522
Date:            11/1/00
Page:            1

| Order From: | VERONICA MARLOW | | Deliver to: | L.A. MAIN WAREHOUSE |
| | 12250 WOODLEY AVENUE | | | 16730 SCHOENBORN ST |
| | GRANADA HILLS | | | NORTH HILLS |
| | 91344 | CA | | CA | 91343 |

| Your Item Number Item Description | Our Reference | Qty Ordered Date Requested | Units | Unit Cost Date Promised | Extension |
|---|---|---|---|---|---|
| | BRATZ | 49.00 | Each | 30.00 | $1,470.00 |
| THIRD PARTY SEWING AND PATTERN MAK | | 10/26/00 | | | |
| 1 | BRATZ | 32.00 | Each | 30.00 | $960.00 |
| THIRD PARTY SEWING AND PATTERN MAK | | 10/26/00 | | | |

Please Quote Purchase Order Number on all correspondence.

| | |
|---|---|
| Subtotal: | $2,430.00 |
| Freight: | $0.00 |
| Tax amount: | $0.00 |
| Total Value: | $2,430.00 |

Confidential - For Attorney's Eyes Only

MGA 0072166

**EXHIBIT: 20**
**PAGE: 181**

EX 606-0006

Requisition # REQ02754                                        * * REQUISITION * *
Requestor   KLEGG
Date                                                                                      Page: 1

| Item Number | Quantity | Units | Cost | Due Date | Total |
|---|---|---|---|---|---|
| BRATZ | 49.00 | Each | $30.00 | 10/26/00 | $1,470.00 |
| THIRD PARTY SEWING AND PATTERN MAKING SUPI | | Site: 01 | | Creditor: MARLOW | |
| 8322-400 - | | | | | |
| BRATZ | 32.00 | Each | $30.00 | 10/26/00 | $960.00 |
| THIRD PARTY SEWING AND PATTERN MAKING SUPI | | Site: 01 | | Creditor: MARLOW | |
| 8322-400 - | | | | | |

*PO 3522*

*P - 7350*

Requisition Total          $2,430.00

Confidential - For Attorney's Eyes Only

MGA 0072167

**EXHIBIT: 20**
**PAGE: 182**

EX 606-0007

# EXHIBIT 21

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 21

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# EXHIBIT 22

# TO THE DECLARATION OF

# PATRICIA H. BENSON

# EXHIBIT 22

# TO THE DECLARATION OF

# PATRICIA H. BENSON

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)    CASE NO.
V. )    CV 04-9049 SGL
)    (RNBX)
MATTEL, INC., A DELAWARE )    [CONSOLIDATED WITH
CORPORATION, )    NO. 04-9059 AND CASE NO. 05-2727]
)
DEFENDANTS. )
_____ )
)
AND CONSOLIDATED ACTION (S). )
_____ )

# DEPOSITION OF BEATRIZ MORALES

# APRIL 29, 2008



COURT REPORTERS

REPORTED BY:
RENEE PACHECO
CSR NO. 11564
JOB NO. 08AE327-RP

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT: 22
PAGE: 190

1    THAT AND IRONING.  THAT WAS IT.

2    BY MR. WEBSTER:

3        Q.    AND WHERE WERE THE MATERIALS COMING FROM

4    FOR YOU TO WORK ON, WHEN YOU WERE DOING THAT WORK

5    FOR MS. MARLOW?

6        A.    VERONICA WAS BRINGING EVERYTHING.

7        Q.    WHERE WAS THAT WORK BEING DONE, WHEN YOU

8    STARTED WORKING FOR MS. MARLOW?

9        A.    WHICH PLACE?

10       Q.    WHEN YOU FIRST STARTED WORKING IN

11   OCTOBER 2001, WHERE WERE YOU DOING THE WORK?

12       A.    AT ANA'S HOUSE.

13       Q.    DID YOU ALWAYS DO THE WORK FOR VERONICA

14   MARLOW AT ANA CABRERA'S HOUSE?

15       A.    YES.

16       Q.    APART FROM THE MATERIALS THAT WERE USED

17   TO WORK ON THE BRATZ DOLLS; THAT IS, THE MATERIALS

18   THAT YOU SAY MS. MARLOW PROVIDED, WHAT -- WHAT

19   EQUIPMENT DID YOU HAVE TO DO THE WORK?

20       A.    SIMPLY SCISSORS, RULE -- RULERS, PINS.

21   THAT'S IT.

22       Q.    AND YOU HAD A SEWING MACHINE?

23       A.    NOT ME.

24       Q.    DID SOMEBODY HAVE A SEWING MACHINE?

25       A.    ANA HAD, BECAUSE SHE'S THE ONE WHO WAS

107

**EXHIBIT: 22**
**PAGE: 191**

```
 1    TO USE FOR EACH PATTERN.

 2              AND REGARDING THE BEADS, THOSE ARE

 3    DETAILS THAT SHE WAS DOING AT THE END.  I DON'T

 4    KNOW ANYTHING ABOUT THAT.

 5         Q.   OKAY.  THE NEXT EXHIBIT -- STILL ON THIS

 6    ONE EXHIBIT, MS. MORALES, IT'S YOUR TESTIMONY THAT

 7    VERONICA PROVIDED ALL THE FABRICS AND ALL THE

 8    MATERIALS; IS THAT CORRECT?

 9         A.   YES.

10         Q.   WAS THAT ALWAYS TRUE OR WAS THAT TRUE ON

11    EVERY OCCASION THAT YOU WORKED ON THE BRATZ DOLLS?

12         A.   YES.

13         MR. WEBSTER:  LET'S MARK AS THE NEXT EXHIBIT.

14    THAT'S M 261594.

15              (MORALES EXHIBIT NUMBER 5401 WAS

16              MARKED FOR IDENTIFICATION AND

17              IS BOUND UNDER SEPARATE COVER.)

18    BY MR. WEBSTER:

19         Q.   AND DO YOU RECOGNIZE THIS DOLL?

20         A.   NO.

21         Q.   DID YOU WORK ON THE BAG OR PURSE ON THIS

22    DOLL?

23         MS. BERTENTHAL:  VAGUE AS TO "WORK ON."

24         THE DEPONENT:  I DO NOT RECOGNIZE VERY WELL

25    THIS DOLL, BUT I BELIEVE THAT WE DID WORK ON THE
```

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

**EXHIBIT: 22**
**PAGE: 192**

1    STATE OF CALIFORNIA      )

                             )   SS.

2    COUNTY OF LOS ANGELES   )

3            I,   RENEE A. PACHECO   , CERTIFIED

4    SHORTHAND REPORTER, CERTIFICATE NUMBER 11564, FOR

5    THE STATE OF CALIFORNIA, HEREBY CERTIFY:

6            THE FOREGOING PROCEEDINGS WERE TAKEN

7    BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH,

8    AT WHICH TIME THE DEPONENT WAS PLACED UNDER OATH BY

9    ME;

10           THE TESTIMONY OF THE DEPONENT AND ALL

11   OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE

12   RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER

13   TRANSCRIBED;

14           THE FOREGOING TRANSCRIPT IS A TRUE AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

16           I FURTHER CERTIFY THAT I AM NEITHER

17   COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

18   NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

19           IN WITNESS WHEREOF, I HAVE HEREUNTO

20   SUBSCRIBED MY NAME THIS _5ᵗʰ_ DAY OF

21   _May_____, 2008.

22

23           _Renee A. Pacheco_

24

25

                                                      241

**EXHIBIT: 22**
**PAGE: 193**