1  PATRICIA L. GLASER (Bar No. 055668)
   pglaser@glaserweil.com
2  GLASER WEIL FINK JACOBS & SHAPIRO
   10250 Constellation Blvd., 19th Floor
3  Los Angeles, California 90067
   Telephone:  (310) 553-3000
4  Facsimile:  (310) 557-9815

5  RUSSELL J. FRACKMAN (Bar No. 49087)
   rjf@msk.com
6  PATRICIA H. BENSON (Bar No. 60565)
   phb@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
8  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
9  Facsimile: (310) 312-3100

10 Attorneys for Defendants
   MGA Entertainment, Inc., MGA Entertainment HK, Ltd.,
11 MGAE De Mexico, S.R.L De C.V., and Isaac Larian

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

| | |
|---|---|
| 14 CARTER BRYANT, an individual,, | CASE NO.  CV 04-9049 SGL (RNBx) |
| 15      Plaintiff, | Consolidated with Case No.  CV 04-09059 |
| 16      v. | Case No.  CV 05-02727 |
| 17 MATTEL, INC., a Delaware | **Hon. Stephen G. Larson** |
| 18 corporation,, | **[PUBLIC REDACTED]** |
| 19      Defendant. | **DECLARATION OF ALFREDO ORTEGA IN SUPPORT OF MGA PARTIES' OPPOSITION TO** |
| 20 AND CONSOLIDATED CASES | **MATTEL'S MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER** |
| 21 | **AND COUNTERCLAIMS** |
| 22 | **[EXS. 1, 5 AND 6 FILED UNDER SEAL]** |
| 23 | **[OPPOSITION FILED CONCURRENTLY HEREWITH]** |
| 24 | |
| 25 | Date:       May 11, 2009 |
| 26 | Time:       10:00 a.m. Place       Courtroom 1 |
| 27 | **Phase 2** |
| 28 | Discovery Cut-Off:        Dec. 11, 2009 Pre-Trial conference:    March 1, 2010 Trial Date:        March 23, 2010 |

Mitchell
Silberberg &
Knupp LLP

2213809.1

## DECLARATION OF ALFREDO ORTEGA

I, ALFREDO ORTEGA, declare:

1.      I am an attorney at law duly licensed to practice law in the State of California and before this Court.  I am an associate with the law firm of Mitchell Silberberg & Knupp LLP, attorneys of record for MGA Entertainment, Inc., MGA Entertainment HK, Ltd., MGAE De Mexico, S.R.L. De C.V. and Isaac Larian ("Larian") (collectively, the "MGA Parties"), in these consolidated actions.  I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2.      Attached hereto as Exhibit 1 is a correct copy of an e-mail dated March 14, 2006, addressed from Richard De Anda to "Tracy" and "Ken," at the email addresses ███████████████████████.  Exhibit 1 was produced by Mattel on or about April 13, 2009, pursuant to the Order referred to in paragraph 9, below, and bears Bate stamp numbers M0925929-M0925930.

3.      In an effort to ascertain the identities of the parties to whom Exhibit 1 was addressed, I conducted a search on the internet.

4.      First, I visited www.leo.gov,  which I discovered was "Law Enforcement Online," a website affiliated with the Federal Bureau of Investigation, and which is described on its home page as a "controlled-access communications and information sharing data repository" for "public safety, law enforcement, antiterrorism and intelligence agencies in support of the Global War on Terrorism." Attached hereto as Exhibit 2 is a correct copy of a print out of a web page reflecting the results of this search.

5.      Next, I conducted a Google search for "Tracy Marquis Kierce," which was a name that I had seen in document M0925731, another email directed to tkierce@leo.gov. That search resulted in a number of web pages that identified Tracy Marquis Kierce as an FBI agent in the Los Angeles field office.  Attached

1  hereto collectively as Exhibit 3 are correct copies of print outs of web pages

2  reflecting the results of this search.

3       6.     A Google search for "Ken McGuire" resulted in a list of irrelevant web

4  pages. To narrow the results, I ran a search for "Ken McGuire FBI." The resulting

5  web pages indicated that Ken McGuire is also an FBI agent in the Los Angeles field

6  office.  Attached hereto collectively as Exhibit 4 are correct copies of print outs of

7  the results of that search.

8       7.     Attached hereto as Exhibit 5 is a correct copy of a document bearing

9  Bate stamp number M0924041, which was produced by Mattel on or about April 13,

10  2009.

11       8.     Attached hereto as Exhibit 6 is a correct copy of a document bearing

12  Bate stamp numbers M0926802-M0926812 that Mattel produced on April 24, 2009

13  as a supplement to its April 13, 2009 production.

14       9.     Attached hereto as Exhibit 7 is a correct copy of Discovery Master

15  Order No. 6 Regarding: (1) Motion of Mattel, Inc. to Compel Production of

16  Documents Responsive To Its First And Third Sets of Requests For Production; and

17  (2) Motion Of MGA To Compel Production Of Documents Responsive To The [sic]

18  Document Request [sic] Nos. 526 and 528, dated March 13, 2009.

19

20       I declare under penalty of perjury under the laws of the United States of

21  America that the foregoing is true and correct.

22       Executed this 27th day of April, 2009, at Los Angeles, California.

23

24                                 _____

25                                   Alfredo Ortega

26

27

28

Mitchell
Silberberg &
Knupp LLP
2213809.1

2

DECLARATION OF ALFREDO ORTEGA

# EXHIBIT 1
# TO THE DECLARATION OF ALFREDO ORTEGA

# EXHIBIT 1
# TO THE DECLARATION OF ALFREDO ORTEGA

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 2
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# EXHIBIT 2
# TO THE DECLARATION OF
# ALFREDO ORTEGA



# LAW ENFORCEMENT ONLINE

Securely sign in to LEO here:

User ID: [          ]   Password: [          ]   Log In

**WARNING!** You are accessing a U.S. Government information system, which includes this computer, this computer network, all computers connected to this network, and all devices and/or storage media attached to this network or to a computer on this network. This information system is provided for U.S. Government-authorized use only. Unauthorized or improper use of this system may result in disciplinary action, and civil and criminal penalties. By using this information system, you understand and consent to the following: You have no reasonable expectation of privacy regarding any communications transmitted through or data stored on this information system. At any time, the government may monitor, intercept, search and/or seize data transiting or stored on this information system. Any communications transmitted through or data stored on this information system may be disclosed or used for any U.S. Government-authorized purpose.

*WARNING! The use of publicly accessible computers ( e.g. libraries, airports, cafes, hotels, etc.) to access LEO is unauthorized. This type of usage may result in the involuntary dissemination of information to unauthorized entities. Data may be left on this computer resulting in the next person using this machine the ability to view your data.*

LEO supports the FBI's ten priorities by providing cost-effective, time-critical national alerts and information sharing to public safety, law enforcement, antiterrorism and intelligence agencies in support of the Global War on Terrorism. LEO is provided to members of the law enforcement community at no cost to their respective agencies. It is the mission of LEO to catalyze and enhance collaboration and information exchange across the FBI and mission partners with state-of-the-art commercial off-the-shelf communications services and tools, providing a user-friendly portal and software for communications and information exchange.

LEO is a 7 days a week, 24 hours a day online (real-time), controlled-access communications and information sharing data repository. It provides an Internet accessible focal point for electronic Sensitive But Unclassified (SBU) communication and information sharing for the international, federal, state, local, and tribal law enforcement agencies. LEO also supports antiterrorism, intelligence, law enforcement, criminal justice, and public safety communities worldwide. Users anywhere in the world can communicate securely using LEO.

**Click Here to View the LEO Membership Criteria**

**Click Here to Download the LEO User Application**



**EXHIBIT: 2**
**PAGE: 5**

# National Alert System

The LEO National Alert System (NAS) is an alert system that can deliver secure information to 20,000 users/command centers within 5 minutes. The NAS is capable of sending up to 160,000 unsecured notifications to pagers, cellular phones, and other wireless devices to advise that an alert has been sent.



# Virtual Command Center

The VCC is a situational awareness mechanism and crisis management tool that is used for tracking, displaying, and disseminating intelligence and tactical information. In addition, the VCC provides ready access to a wide range of reference materials that are appropriate to the event and/or venue. Because the VCC resides on the LEO system, it can be utilized and/or reviewed by authorized members from multiple, geographically dispersed locations.



# N-DEx, OneDOJ, and LEO Access

The Law Enforcement National Data Exchange (N-DEx), the OneDOJ, and the Law Enforcement Online (LEO) are the FBI CJIS Division Services & Systems currently covered by the access forms you will be downloading. Access to the N-DEx during Increment 1 will be through the LEO, so both accounts must be established. When requesting access, be aware that N-DEx, OneDOJ, and LEO, are official U.S. Government systems for authorized use only by authorized members of the law enforcement, criminal justice, and public safety community. You must submit both the Access Request and Rules of Behavior to be processed.

Click here to select the appropriate access form.

# LEO Support Center

- (888) 334-4LEO (4536)
- TTY: (304) 625-3963

# EXHIBIT 3
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# EXHIBIT 3
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# Google

| tracy marquis kierce |  | Search | Advanced Search |
|---|---|---|---|
| | | | Preferences |

**Web**                                                    Results **1 - 10** of about **299** for **tracy marquis kierce**. **(0.11** seconds)

### DirecTV secrets allegedly pilfered - CNET News
According to an affidavit from FBI agent **Tracy Marquis Kierce**, the operator of the DSS hacking site said he was contacted by someone who identified himself **...**
news.cnet.com/DirecTV-secrets-allegedly-pilfered/2100-1025_3-979001.html - 67k - Cached - Similar pages

### Alexandre de Prouville - Wikipedia, the free encyclopedia
Mar 15, 2009 **...** After driving out the Dutch from the West Indies in 1664, the **Marquis** de **Tracy** was appointed lieutenant-général of New France. **...**
en.wikipedia.org/wiki/Alexandre_de_Prouville - 23k - Cached - Similar pages

### Information Security News: College student charged with **...**
community," FBI agent **Tracy Marquis Kierce** said in court records. A woman who answered the phone at the family's apartment in Los Angeles **...**
seclists.org/isn/2003/Jan/0013.html - Similar pages

### CATHOLIC ENCYCLOPEDIA: Alexandre de Prouville, **Marquis** de **Tracy**
Viceroy of New France, born in France, 1603, of noble parents; died there in 1670.
www.newadvent.org/cathen/15006a.htm - 11k - Cached - Similar pages

### Student in DirecTV Probe Faces Charges
Serebryany "specifically stated that he wanted to help the ... hacking community," FBI agent **Tracy Marquis Kierce** said in court records. **...**
www.starswelove.com/scriptsphp/news.php?newsid=1695 - 22k - Cached - Similar pages

### People - Student Work - **Tracy Marquis** - Graduate Students - **Tracy ...**
**Tracy Marquis** Graduate Students. previous education: bachelor of arts-art history and classics|german-union college-schenectady, ny-1998 **...**
www.arch.umd.edu/student_work/app.cfm?id=182 - 18k - Cached - Similar pages

### Joshua Halpern: ZoomInfo Business People Information
AFFIDAVIT of **Tracy Marquis Kierce** - [Cached Version] Published on: 11/22/2001 Last Visited: 4/11/2006. 3. The facts set forth below are based upon my own **...**
www.zoominfo.com/people/Halpern_Joshua_81977978.aspx - 32k - Cached - Similar pages

### Joseph Farino - Email, Address, Phone number, everything **...**
AFFIDAVIT I, **Tracy Marquis Kierce**, being duly sworn hereby depose and ... Threat Management Services for ICG, and Joseph Farino, Senior . **...**
www.123people.com/s/joseph+farino - Similar pages

### [PDF] U.S. v. Igor Serebryany
File Format: PDF/Adobe Acrobat - View as HTML
Dec 27, 2002 **...** I, **Tracy Marquis Kierce**, being duly sworn hereby depose and say as follows: 1. I am employed as a Special Agent (SA) of the Federal **...**
news.findlaw.com/hdocs/docs/directtv/usserebryanny123102aff.pdf - Similar pages

### Laurel School
Feb 14, 2007 **...** 1976 **Tracy** M. **Kierce** (**Marquis**) 1976 Michelle F. Langmaid (Case) 1975 Hilary Colvin (Bohannon) 1975 Sally Hood 1975 Judith Marshall **...**
www.laurelschool.org/alumnae/lost.cfm?decade=1970 - 24k - Cached - Similar pages

1 2 3 4 5 6 7 8 9 10    **Next**

tracy marquis kierce          Search

Search within results - Language Tools - Search Help - Dissatisfied? Help us improve - Try Google Experimental

Google Home - Advertising Programs - Business Solutions - Privacy - About Google

**EXHIBIT: 3**
**PAGE: 8**



Note: Portions Redacted by FindLaw

## AFFIDAVIT

I, Tracy Marquis Kierce, being duly sworn hereby depose and say as follows:

1.    I am employed as a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since February, 1987.  Since June, 2001, I have been assigned to investigate computer technology and intellectual property crimes. I have previously investigated a variety of white collar crime allegations including fraud against the government, bank fraud, advance fee schemes and telemarketing fraud.  I have received training from the FBI regarding computer technology and intellectual property crimes.

2.    I make this affidavit in support of a search warrant to search the premises located at ********************, ********* ***, Los Angeles, California, 90046, more thoroughly described in Paragraph 4 below (the "Subject Premises"), for evidence of violations of Title 18, United States Code, Section 1832 (Theft of Trade Secrets).  I also make this affidavit in support of a criminal complaint and arrest warrant charging Igor Serebryany with violating Title 18, United States Code, Section 1832 (Theft of Trade Secrets).  For the reasons set forth below, there is probable cause to believe that Igor Serebryany has knowingly stolen, and has without authorization appropriated, taken, and carried away, the trade secrets of DirecTV and NDS Americas,

1

# EXHIBIT 4
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# EXHIBIT 4
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# Google

ken mcguire fbi

Search    Advanced Search
Preferences

**Web**                                                        Results **1 - 10** of about **13,700** for **ken mcguire fbi**. **(0.08** seconds)

[PDF] **Federal Bureau of Investigation Los Angeles Field Office Computer ...**
File Format: PDF/Adobe Acrobat - View as HTML
FBI Los Angeles identified Michael Calce and provided info to RCMP who obtained voice &
data .... Special Agent **Ken McGuire**. • Contact Information: ...
media.ais.ucla.edu/BTseminars/**fbi**_slides.pdf - Similar pages

**Ken McGuire**, director of Police Services, West Jordan, City Of ...
**Ken McGuire** of West Jordan, City Of's information, including email, business address
and ... Maryland, and the National **FBI** Academy in Quantico, Virginia. ...
www.spoke.com/info/p7E3hL1/**KenMcGuire** - 41k - Cached - Similar pages

Court Reinstates Suit Vs. **FBI** in Mob Case - AP Online ...
Court Reinstates Suit Vs. **FBI** in Mob Case - **KEN MAGUIRE**, Associated Press Writer AP
Online 05-11-2004 Dateline: BO : Encyclopedia.com.
www.encyclopedia.com/doc/1P1-94430425.html - Similar pages

Follow the Leader
CPA **Ken McGuire** packs a pistol. No, he's not a renegade; he's among the 5 percent of
**FBI** agents who are CPAs. **McGuire** says the **FBI** actively recruits CPAs ...
www.calcpa.org/Content/yourcareer/follow.aspx - 34k - Cached - Similar pages

Federal Bureau of Investigation - Press Room - "**FBI, This Week** ...
**FBI** Agent **Ken McGuire** has worked these cyber crimes... Mr. **McGuire**: "Typically the stuff
we've seen over the last four or five years have been non-delivery ...
www.**fbi**.gov/thisweek/archive/thisweek050506.htm - 19k - Cached - Similar pages

Hacker Tricked Into Jail | **Ken McGuire**
... first selling to a private investigator before selling to an **FBI** agent which got him
indicted ... View **Ken McGuire** (ken@kenmc.com)'s profile on LinkedIn ...
kenmc.com/2006/01/30/hacker-tricked-into-jail/ - 33k - Cached - Similar pages

SCAM TIME IN VALLEY SENIORS LURED BY OFFER OF 'CONTEST WINNINGS ...
``This is a new variation," said **Ken McGuire**, a supervisory special agent with the **FBI** who
investigates such scams. ``What they're trying to do is ...
www.thefreelibrary.com/SCAM+TIME+IN+VALLEY+SENIORS+LURED+
BY+OFFER+OF+'CONTEST+WINNINGS'-a01397... - 26k - Cached - Similar pages

Neil F. Johnson - publications
National Public Radio (NPR) 23 July 2001: Dr. Neil F. Johnson and Special Agent **Ken
McGuire (FBI)** together appeared on "Air Talk" with Larry Mantle; ...
www.jjtc.com/pub/inthepress.html - 23k - Cached - Similar pages

Thoughts of a Teenage Bot Master
May 9, 2008 ... "Up to then, we hadn't seen anything as blatant," **FBI** agent **Ken McGuire**
said in a 2006 interview. "Anybody who's blatant enough to advertise ...
www.securityfocus.com/news/11517/2 - 21k - Cached - Similar pages

[PPT] Cyber Crime
File Format: Microsoft Powerpoint - View as HTML
**Ken McGuire**. 310.996.3854. **kenneth.mcguire@ic.fbi.gov**. The phishing email contain hot
links that direct the web page browser to a mirrored web site of the ...
www.ibls.com/events/2006/ppt/**Kenneth**_McGuir.ppt - Similar pages

**EXHIBIT: 4**
**PAGE: 10**

ken mcguire fbi          Search

Search within results - Language Tools - Search Help - Dissatisfied? Help us improve - Try Google Experimental

Google Home - Advertising Programs - Business Solutions - Privacy - About Google

**EXHIBIT: 4**
**PAGE: 11**

EXHIBIT: 4
PAGE: 12



# Questions?

- ## Special Agent Ken McGuire
- ## Contact Information:

    Federal Bureau of Investigation

    Los Angeles Field Office

    Computer Crime Squad (Squad WCC-3)

    11000 Wilshire Blvd., Suite 1700

    Los Angeles, California 90024

    email: los.angeles@fbi.gov

    Main telephone number: (310) 477-6565

# EXHIBIT 5
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# EXHIBIT 5
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 6
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# EXHIBIT 6
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# FILED UNDER SEAL

# PURSUANT TO

# PROTECTIVE ORDER

# EXHIBIT 7
# TO THE DECLARATION OF
# ALFREDO ORTEGA

# EXHIBIT 7
# TO THE DECLARATION OF
# ALFREDO ORTEGA

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5

6   Discovery Master

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,                Consolidated with
                                          Case No. CV 04-09059
14        v.                              Case No. CV 05-2727

15  MATTEL, INC., a Delaware             **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                        **ORDER NO. 6, REGARDING:**
              Defendant.
17                                            **(1)  MOTION OF MATTEL, INC.
                                              TO COMPEL PRODUCTION OF**
18                                            **DOCUMENTS RESPONSIVE
                                              TO ITS FIRST AND THIRD**
19                                            **SETS OF REQUESTS FOR
                                              PRODUCTION; and**
20
                                              **(2)  MOTION OF MGA TO**
21                                            **COMPEL PRODUCTION OF
                                              DOCUMENTS RESPONSIVE TO**
22                                            **THE DOCUMENT REQUEST
                                              NOS. 526 AND 528**
23

24  ┌─────────────────────────────
25  │ CONSOLIDATED WITH
    │ MATTEL, INC. v. BRYANT and
26  │ MGA ENTERTAINMENT, INC. v.
    │ MATTEL, INC.
27  └─────────────────────────────                **EXHIBIT: 7**
                                                   **PAGE: 25**
28

ARENT FOX LLP                                      ORDER NO. 6
ATTORNEYS AT LAW                          [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

## I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15).  However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664."  (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel."  (*Id.*, p. 5).

EXHIBIT: 7
PAGE: 26

1    **B.    Phase 1 Ruling**

2       This is not the first time that Mattel has moved to compel responses to

3    Document Request Nos. 87 and 88. Mattel previously moved to compel responses

4    to these requests as part of Phase 1, but its motion was denied because "Request

5    Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase

6    2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7). The former discovery

7    master's April 14, 2008 Order denying Mattel's original motion to compel further

8    held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is

9    intended to authorize or preclude Mattel from seeking further production of

10   documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7

11   - 8).

12   **C.    Objections of MGA Entertainment**

13      In its Opposition, MGA Entertainment relies on three basic grounds for

14   refusing to produce the requested documents. First, MGA Entertainment argues

15   that Mattel failed to meet and confer. Second, MGA Entertainment argues that the

16   requests are overbroad. Finally, MGA Entertainment argues that California's

17   privacy laws prevent it from producing the requested documents.

18   **1.    Purported Failure To Meet And Confer**

19      As indicated above, MGA Entertainment first asserts that Mattel's Motion to

20   Compel should be denied because Mattel failed to adequately meet and confer.

21   (MGA Opposition, pp. 9 - 10). However, MGA Entertainment admits that Mattel

22   did meet and confer regarding the two requests at issue prior to filing its original

23   motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on

24   meet and confer discussions held over one year ago with MGA's prior lead

25   counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)

26   MGA further provides no legal authority, and the Discovery Master has found

27   none, supporting the proposition that a party must meet and confer again before

28   renewing a motion to compel that was denied merely because the case had been

**EXHIBIT: 7**
**PAGE: 27**

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5          Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute.  (MGA Opposition,

8   pp. 1, 6.)  However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88.  (*Id.*, 7–9.)  It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion.  Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14          **2.      Overbreadth Objection**

15          MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad."  (MGA

17  Opposition, pp. 14 – 15).  Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.)  Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery.  (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8).   But MGA Entertainment's argument fails to recognize

25  //

26

27  _____

28  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically" since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9), and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 7**
**PAGE: 28**

1  the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2         The touchstone for determining whether a particular discovery request is

3  reasonably calculated to lead to the discovery of admissible evidence in this case is

4  whether the request bears some relation to the issues to be tried in Phase 2.

5  Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6  Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7  not linked to a single discrete product or even multiple products.  Instead, the issues

8  to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9  Entertainment stole "a vast array of trade secrets and other confidential information

10  that comprise Mattel's intellectual infrastructure," including, among other things,

11  stealing "Mattel's proprietary business methods, practices and information."

12  (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13  its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14       • "engaged in a pattern of stealing and using [Mattel's] property and trade

15         secrets," (*Id.*,     ¶ 1);

16       • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17         dolls] on numerous occasions," including by hiring away three key Mattel

18         employees in Mexico who "stole virtually every category of Mattel's

19         sensitive and trade secret business plans and information for the Mexican

20         market as well as a significant quantity of sensitive and trade secrete

21         information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22       • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23         advertising and strategy, not only for Canada, but the United States and the

24         rest of the world," (*Id.*, ¶ 70);

25  //

26

27  ───────────────────

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it
28  would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

Arent Fox LLP
Attorneys At Law
Los Angeles

- 4 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 7
PAGE: 29

Case 2:04-cv-09049-DOC-RNB   Document 5272-8   Filed 04/27/09   Page 27 of 41   Page ID
#:171956
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009      Page 6 of 20

1    • "took from Mattel documents containing proprietary advertising, project,

2        sales, customer and strategy information for not only Canada, but for the

3        United States," (*Id.*, ¶ 4);

4    • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5        employees to steal Mattel's confidential information or other property and

6        take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7    • stole "Mattel's plans, strategy and business information for the Mexican

8        market and materials related to Mattel's worldwide business strategies," (*Id.*,

9        ¶ 37);

10   • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11       planning materials, and then hired them to assist in establishing and running

12       MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13   • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14       and proprietary information that they could access and bring it with them to

15       MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16       would need to enter the Mexican market, and to unlawfully compete with

17       Mattel in Mexico, in the United States and elsewhere," such as "global

18       internal future line lists that detailed anticipated future products; production

19       and shipping costs for Mattel products, daily sales data for Mattel products;

20       customer data; sales estimates and projections; marketing projections;

21       documents analyzing changes in sales performance from 2003 to 2004;

22       budgets for advertising and promotional expenses; strategic research

23       reflecting consumer responses to products in development; media plans;

24       consumer comments regarding existing Mattel products customer discounts

25       and terms of sale; customer inventory level data; assessments of promotional

26       campaign success; market size historical data and projections; marketing

27       plans and strategies, merchandising plans; retail pricing and marketing

28       strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 7
PAGE: 30**

1     •   "targeted certain Mattel employees who have broad access to Mattel

2        proprietary information in an effort to induce and encourage them to join

3        MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4        Mattel confidential information and trade secrets," including by "promising

5        these employees salaries 25 percent or more higher than they earn at Mattel

6        and stating to them that they should not be concerned by legal action taken

7        by Mattel to protect its trade secrets and its rights because such claims are

8        hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9     •   "hired directly from Mattel's United States operations at least 25 employees,

10       from Senior Vice-President level to lower level employees," and that some of

11       these individuals misappropriated "Mattel confidential and proprietary

12       information, including Mattel's strategic plans; business operations; methods

13       and systems; marketing and advertising strategies and plans; future product

14       lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15        In light of the foregoing allegations, the documents requested by Mattel fall

16 within the purview of permissible discovery allowed by Federal Rule of Civil

17 Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18 claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19 request for "all personnel and vendor files" of individuals who either (1) work at

20 MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21 of MGA Entertainment and used to work with or had contact with Mattel appears to

22 be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23        **3.**      **Privacy Rights Objection**

24        MGA Entertainment's final argument is that the records sought by Mattel

25 (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26 be produced under *California law* unless the individuals affected are given advance

27 notice of the requests and afforded an opportunity to object to the production.

28 (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

**EXHIBIT: 7**
**PAGE: 31**

1  the California Constitution and California Code of Civil Procedure § 1985.3

2  together constitute a fundamental public policy in California that do not allow

3  MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4  of these contentions is unavailing.

5      As an initial matter, a protective order has been entered in this case. (Mattel

6  Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7  Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8  where such an order has been (or will be) entered, state-based privacy laws do not

9  bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10  2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11  personnel files and stating "[a]ny other privacy concerns defendant may have

12  should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13  *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14  protect an employee's privacy interest in his personnel file is to obtain, either by

15  stipulation or motion, a properly crafted protective order under Rule 26(c)");

16  *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17  30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18  protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19  *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20  employees' privacy interests, documents shall be produced pursuant to an

21  attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22  *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23  production of employee information, pursuant to a protective order, despite privacy

24  claims under California law).

25      Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26  _____

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential

27  information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.

Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be

28  useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure

and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 7
PAGE: 32

1    held that "personnel files are discoverable in federal question cases . . . despite

2    claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3    1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4    Cir. 1975)), and this includes any claim of privilege resulting from California Code

5    of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6    Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7    Procedure § 1985.3 do not apply in federal question cases because "federal law

8    applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9    privacy concerns raised by MGA Entertainment have no applicability here.

10            Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15   Mattel restated this position at the hearing.

16            The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22        **D.**    **Conclusion**

23            The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

25   [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)

26   and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

27   [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.

28   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

**EXHIBIT: 7**
**PAGE: 33**

1  2 claims, and are not protected from disclosure on the grounds of third-party

2  privacy rights or any other ground cited by MGA Entertainment.

3  **III.    MATTEL'S REQUEST FOR SANCTIONS**

4        In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5  fees and costs it incurred in drafting the reply.  (Mattel's Reply, pp. 11 – 13; *see*

6  *also* Decl. of Zachary Krug, ¶ 14).  As the Discovery Master has previously stated,

7  however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8  stage that could have been raised in the moving papers.[7]  This rule is routinely

9  adhered to by courts in the Ninth Circuit.  *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16        Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.    MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19        **REQUEST NOS. 526 AND 528**

20        In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion.  Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 7**
**PAGE: 34**

### A.   <u>The Discovery Sought</u>

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528). The complete text of the Requests is as follows:

- **Request No 526**: All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**: All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

### B.   <u>Mattel's Objections</u>

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents. First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence. Second, Mattel argues that the documents are protected by the work product doctrine. Finally, Mattel argues that the documents are

**EXHIBIT: 7**
**PAGE: 35**

Case 2:04-cv-09049-DOC-RNB   Document 5272-8   Filed 04/27/09   Page 33 of 41   Page ID
#:171962
Case 2:04-cv-09049-SGL-RNB   Document 5018   Filed 03/13/2009   Page 12 of 20

1  privileged.

2  **1.   Overbreadth Objection**

3  Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4  RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5  SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6  its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7  details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8  de Mexico and suggests that Mattel communicated with the authorities regarding

9  their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10  alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11  that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12  (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13  regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14  75).

15  Mattel has also acknowledged that at least some of the documents responsive

16  to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17  in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18  *and some of those materials reflected communications between Mattel and law*

19  *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20  Decl."], ¶ 16 (emphasis added).)

21  Given Mattel's allegations regarding the theft of its trade secrets, its

22  communications with law enforcement officials, and the overlap between the civil

23  and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24  threshold matter, MGA has made a prima facie case that the Requests seeking the

25  documents Mattel provided to law enforcement officials, as well as Mattel's

26  communications with those officials, are reasonably calculated to lead to the

27  discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28  Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 7
PAGE: 36

1   nonetheless argues in its Opposition that Request No. 526 is overbroad because

2   Mattel's civil claims are wholly separate and independent from any criminal relief

3   it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4   MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point. The issue is not whether Mattel's

6   communications with law enforcement officials constitute the basis of Mattel's

7   claims. Rather, the issue is whether those communications are reasonably

8   calculated to lead to the discovery of admissible evidence regarding what Mattel

9   itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10  secret misappropriation. Mattel does not dispute that its subsequent

11  communications with law enforcement involve the same conduct that is the basis of

12  the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13  concurrently seeking relief through the criminal justice system and this civil action

14  based on the same documents allegedly stolen by MGA and confirmed that fact

15  during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16  judicial file in the criminal proceedings in Mexico" are among the "documents

17  *relating to Mattel's Counterclaims.*"] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19  disclose what Mattel told the investigating authorities about what information was

20  taken, the people who have knowledge of the thefts, and any supposed criminal

21  intent on the part of MGA or the former Mattel employees who supposedly took the

22  information. Given this admitted overlap in subject matter, the communications

23  between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24  *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25  plaintiff permitted discovery of materials provided to law enforcement authorities

26  concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28  enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 7**
**PAGE: 37**

1    thousands of documents that pertain to the underlying facts of Mattel's

2    counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3    does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4    and different." (*Id.*). According to Mattel, the "different" information sought by

5    Request No. 528 is information that would enable "MGA's executives to defend

6    against actual or potential criminal charges . . ." (*Id.*). However, since those

7    possible criminal charges are based on the same conduct as Mattel's civil claims, it

8    would be inappropriate to bar MGA from obtaining that information for use in this

9    lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14        Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26        **2.    Work Product Objection**

27        Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 7
PAGE: 38

1   agencies, would violate the attorney work-product doctrine by revealing counsel's

2   strategy and mental processes.  (Mattel Opposition, p. 6).

3          To qualify for work-product protection under Federal Rule Civil Procedure

4   26, documents must meet two requirements:  (1) they must be "prepared in

5   anticipation of litigation or for trial," and (2) they must be prepared "by or for

6   another party or by or for that other party's representative."  *In re Cal. Pub. Utils.*

7   *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989).  In determining whether the

8   doctrine is applicable to a particular document, "the court must consider the

9   *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10  party's efforts in *preparing for litigation.*'"  *Johnson v. Finn*, 2007 WL 3232253,

11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added).  The authorities Mattel cites agree

12  that the purpose of the work product doctrine is "to establish a zone of privacy for

13  *strategic litigation planning.*"  (Opposition, p. 6 quoting *United States v. Adlman*,

14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15         Here, Mattel does not demonstrate any connection between its

16  communications with law enforcement officials, on the one hand, and its litigation

17  strategy in the present civil case, on the other hand.  Rather, it appears that Mattel's

18  primary purpose in communicating with, and disclosing the disputed documents to,

19  various law enforcement officials was to instigate criminal prosecutions by

20  prosecutorial agencies, not pursue its civil claims against MGA.  Thus, to the extent

21  the selection of particular documents by Mattel's counsel reveals counsel's

22  impressions and mental processes, the window into counsel's thinking relates to

23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24  There is no showing that counsel's thinking regarding how best to achieve *that*

25  purpose would also reveal counsel's strategies and impressions in any matter

26  related to the current civil litigation.  In short, Mattel has made an insufficient

27  showing that the communications and documents at issue constitute work product

28  in *this* litigation.  Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 7**
**PAGE: 39**

1    Further, even if the work-product doctrine somehow applied to Mattel's

2    communications with law enforcement agencies, Mattel waived it, in at least two

3    ways.  First, Mattel admits that it has already produced some of those

4    communications to MGA.  (See Alger Decl., ¶ 16.)

5    Second, to the extent Mattel's communications with law enforcement

6    officials disclose its conclusions and theories to law enforcement officials, such a

7    disclosure also constitutes a waiver.  Mattel admits that the work-product doctrine

8    is waived when material is "voluntarily disclosed such that it may become readily

9    accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10   *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)).  In fact,

11   the courts have specifically held that "disclosing information to governmental

12   authorities in the hope that they will attack an adversary . . . cannot be said to be

13   done 'in the pursuit of …trial preparation.'  Thus, disclosure in such a situation

14   results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15   *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16   provides information to law enforcement agencies and "harbor[s] the hope, even if

17   un-communicated, that its disclosures would encourage the Government to

18   prosecute" a third party, this disclosure constitutes waiver because it "substantially

19   increase[s] the potential that the information gained during the investigation would

20   be disclosed to [the] adversary." *Id.*

21   Given that Mattel disclosed the documents to these entities with the intention

22   of triggering criminal prosecution of MGA and its representatives, the intended

23   effect of Mattel's disclosure is to make those documents available to MGA under

24   the applicable rules of criminal procedure, which would entitle MGA to the

25   documentary evidence on which any alleged criminal liability is based.  Mattel

26   itself concedes this fact when it acknowledges that MGA can request disclosure of

27   the information provided to law enforcement officials "in accordance with the

28   applicable law in the countries involved." (Mattel Opposition, p. 5).  Mattel knew

**EXHIBIT: 7**
**PAGE: 40**

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7).  Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

### 3.    Privilege Objections

6        Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities.  Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action.  (Mattel Opposition, p. 8).

11       That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16       However, that speculative foray is entirely non-responsive to the MGA

17   Motion.  The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims.  *That* is the reason MGA

23   offers for seeking the subject documents.

24       Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings.  Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here.  Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

**EXHIBIT: 7**
**PAGE: 41**

1  *liability* under California tort law and federal anti-trust law, respectively – not that

2  such parties are immune from *discovery* in civil suits.

### a.   The Litigation Privilege

4      The California Supreme Court described the scope of the litigation privilege

5  in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6  According to Mattel, *Hagberg* stands for the proposition that a communication to

7  law enforcement officials about suspected criminal activity "enjoys an unqualified

8  privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9  addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity…." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative.  *Id.*

16      The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases….  [P]ublic

19  agencies… must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses… the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

### b.   The *Noerr-Pennington* Doctrine

28  "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

**EXHIBIT: 7**
**PAGE: 42**

1    competitive conduct undertaken to influence or petition government bodies, or to

2    utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3    *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]).  In *Forro*, the plaintiff

4    brought suit against IBM for assisting a police search of his business premises.

5    Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6    antitrust claim could not be based on IBM's solicitation of aid from the police

7    department that resulted in the police investigation and search of his premises, or on

8    IBM's assistance in these activities.  (*Id.* at 1053 ["IBM's actions in assisting the

9    police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10   added]) .  In short, the "privilege" at issue in *Forro* dealt with freedom from

11   antitrust liability, not freedom from discovery.[8]

12              **c.      Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising

14   out of Mattel's communication with law enforcement officials.  If and when MGA

15   attempts to do so, it may well be appropriate for Mattel to assert the privileges

16   discussed above in an attempt to defeat any such claims on the merits.  In the

17   meantime, MGA is simply defending Mattel's civil claims in the present action, and

18   no privilege cited by counsel prevents MGA from conducting discovery regarding

19   the basis for those claims.

20      **C.      Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23   2 claims, and are not protected from disclosure under any of the privileges or

24   doctrines cited by Mattel.

25   //

26

27

28

---

[8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity.  However, in that case (which arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those communications.  *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 7**
**PAGE: 43**

V.   **DISPOSITION**

    1.    The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

    2.    Mattel's request for sanctions is **DENIED**.

    3.    The MGA Motion is **GRANTED**.

    4.    All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

    5.    All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.    The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

    7.    All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:       March 13, 2009

By:       /s/ Robert C. O'Brien
        ROBERT C. O'BRIEN
        Discovery Master

**EXHIBIT: 7**
**PAGE: 44**