UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===============================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

       Cindy Sasse                                    None Present
       Courtroom Deputy                               Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

None Present                             None Present

**PROCEEDINGS:**    **ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
MATTER OF LAW (DOCKET #4498)**

                          **ORDER GRANTING IN PART AND DENYING IN PART MGA'S
MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
#4496)**

                          **ORDER AMENDING IN PART ORDER RE FINDING OF
LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
(DOCKET #4441);**

                          **ORDER GRANTING IN PART AND DENYING IN PART MGA'S
MOTION FOR REMITTITUR (DOCKET #4495, #4523)**

                          **ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)**

                          **ORDER FOR ACCOUNTING OF PROFITS OF
BRATZ PRODUCTS**

                          **ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED**

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11, 2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF PERMANENT RECEIVER**

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on [an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  Sufficient evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the scope of infringement of the Bratz dolls.  Specifically, Mattel argues that "[e]ach core Bratz fashion doll sold by MGA infringes Mattel's copyrights."  Motion at 4.  Mattel acknowledges that the judgment it seeks would alter neither the jury's damages award nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an alternative basis for the relief it has already been awarded.  Without ruling on the merits of the argument, the Court declines to adopt this alternative basis because it is not necessary to support the relief awarded to Mattel.  The jury, in the Phase 1B verdict, found that the Bratz dolls infringed Mattel's copyrights, but the scope of that infringement was not explicitly found by the jury.  Even if the Court were to grant the relief sought by Mattel, the amount the jury awarded for copyright infringement, $10 million, would be unchanged.  Moreover, the Court, sitting in equity, made an express factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz fashion dolls infringed Mattel's copyrights.  This portion of Mattel's motion is therefore **DENIED**.

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt.  This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate.  Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate.  This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

### II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows:  MGA Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

Initials of Deputy Clerk __cls_____

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty. Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages. The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue. As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims. Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits. The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3] This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

Initials of Deputy Clerk __cls_____

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery.  See Court's June 4, 2009, Final Pretrial Conference Order.  Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz."  To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits.  The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement.  California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls.  Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument.  The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

Bratz dolls, infringe Mattel's copyrights.  The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt.  The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived.  Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law.  Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits.  A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings.  Trial Tr. at 800.  When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships."  Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK.  The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

### III.  MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00.  The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings.  The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).  One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur.  Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence.  If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . .  But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to the jury's findings. If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative. This is not a completely unappealing argument. For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian. Totaled, this award is $90 million. Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times. Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation. The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount. The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5]  A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v. Asbury Automotive Group, LLC  2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6]  The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

Initials of Deputy Clerk __cls_____

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court _**must**_ leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury _**meant**_ by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

MINUTES FORM 90
CIVIL -- GEN                                  9                    Initials of Deputy Clerk __cls_____

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to _**all**_ tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order.  At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts.  Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases.  That Order related only to documents filed on or before May 27, 2008.  Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

Initials of Deputy Clerk __cls_____

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009.  The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal.  In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal.  For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report.  Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court.  The Court reserves at this time release of the supporting documentation that is attached to the report.  This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document.  It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order.  Failure to do may result in waiver of that privilege.  After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor.  For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

status as a secured creditor of MGA." <u>See</u> Ex Parte Application to Intervene (docket #4761) at 1.  This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene.  The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

<u>Id.</u>  The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

<u>United States Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements.  Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. <u>Id.</u>  Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2).  <u>See id.</u> (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation.").  However, this particular request for intervention is not one that falls into this general category.  Rather, it is an intervention for a very limited

MINUTES FORM 90                                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                         14

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability.  By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties.  Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property.  This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver.  According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties.  Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972).  It is sufficient that the would-be intervenor shows that the representation "may be inadequate."  Id.  Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor.  Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel:  One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene.  Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues.  As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m.  At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              15

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel."  Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief.  The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9]  Specifically, the Court finds as follows:

1.    The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.    As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.    Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.    Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

_____

[9]  The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver.  Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report.  The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

and related entities (as defined below) are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunction herein;

5.     Good cause exists to believe that the MGA parties, agents, and related entities (as defined below) will continue to engage in such transactions, acts, practices, and courses of conduct and business to the immediate and irreparable loss and damage to Mattel, and contrary to the interests of justice, unless restrained and enjoined.

6.     It is appropriate and in the interests of justice that, pursuant to L.R. 66, that a Temporary Receiver be appointed and that an Order to Show Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.     Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to L.R. 66 for the MGA entities to manage, supervise and oversee the assets of the MGA entities and the Bratz Brand and all Bratz Assets as these terms are defined herein (the "Temporary Receiver").

2.     The Temporary Receiver is appointed and is hereby directed and ordered to take full and exclusive control over, and to manage, preserve, and maximize the profits of, the MGA entities and the Bratz Brand and Bratz Assets as of the date hereof, including, without limitation, by locating, taking possession and ownership of, preserving, protecting, managing, supervising and overseeing the Bratz Assets.

3.     The Temporary Receiver is further directed to investigate the financial affairs of the MGA entities, and specifically investigate transfers and transactions made by the MGA entities from and after July 17, 2008.

4.     The Temporary Receiver shall have the power to take any and all action which may be necessary, appropriate or advisable to effectuate the purposes of the Temporary Receivership, including, but not limited to, the power to:

       a.     take custody, control and possession of the assets of the MGA entities and Bratz Assets in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate (collectively, "the MGA parties,

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.    open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

out the Temporary Receiver's mandate under this Order;

l.     protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.     retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order.  The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.     retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.     record this Order in any jurisdiction;

p.     the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.     take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.     institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

except insofar as the Court orders or invites the Temporary Receiver to do so; and,

s.      perform such further and additional acts as the Temporary Receiver deems necessary or advisable to preserve the Bratz Assets, maximizing the profits derived therefrom, ensure the successful manufacture, delivery and marketing of Bratz-branded dolls and products for the spring and fall 2009 seasons and otherwise carry out the Temporary Receiver's mandate under this Order, including, without limitation, any acts which could be lawfully carried out by a corporation in the state of California.

5.      The Temporary Receiver, the Temporary Receiver's employees and agents as well as any and all of the professionals employed by the Temporary Receiver, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them on behalf of the receivership estate. The Temporary Receiver shall serve written notice upon counsel of record for the parties of the amount to be paid to each payee, with an itemization of the services rendered or expenses incurred. Upon service of said notice, the itemized fees and expenses may be paid by the Temporary Receiver on an interim basis. In the event that extraordinary services are performed by the Temporary Receiver, he shall be entitled to extraordinary compensation according to proof and approval of this Court. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services. In the event there are insufficient funds in the receivership estate to fully compensate the Temporary Receiver and his professionals, the Court retains jurisdiction to allocate the costs and expenses of this receivership against Mattel, as the party who sought the appointment of the Temporary Receiver, and/or Isaac Larian, as the principal owner and beneficiary of the MGA entities.

6.      Upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver regarding implementation of this Order, including transferring funds at his direction and producing records related to the assets of the MGA entities.

7.      The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90
CIVIL -- GEN

20

Initials of Deputy Clerk __cls_____

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

Initials of Deputy Clerk __cls_____

brand.

g.    All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.    The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.    As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order.  Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers.  The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).  The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10.   Additional Provisions.

a.   In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures.  Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

b.   The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

c.   The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court.  Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

d.   During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand.  All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

e.   Effective as of the date of this Order, the MGA parties, agents, and

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof.  These revenues shall not be released pending further order of the Court.  The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.     To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.     The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.     No bond shall be required in connection with the appointment of the Temporary Receiver.  Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.     It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court.  However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order.  Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.     In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

et seq. for the MGA entities without prior permission of this Court.

k.      The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all   financial and other documentation requested by the Temporary Receiver.

l.      The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.      The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.     Order to Show Cause.  All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver.  Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.     Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.     The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009.  This report shall be filed with the Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**