# Exhibit 18

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:  (415) 774-2611
4  Facsimile:  (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
13  |                               | JAMS Reference No. 1100049530   |
    |            Plaintiff,          |                                 |
14  |                               |                                 |
    |               v.              | Consolidated with               |
15  |                               | Case No. CV 04-09059            |
    | MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727     |
16  |                               |                                 |
    |            Defendant.          | **ORDER GRANTING IN PART AND**  |
17  |                               | **DENYING IN PART MATTEL'S**    |
    |                               | **MOTION TO COMPEL RESPONSES**  |
18  |                               | **TO INTERROGATORY NOS. 27-44** |
    |                               | **AND 46-50 BY THE MGA PARTIES**|
19
20  | CONSOLIDATED WITH             |
    | MATTEL, INC. v. BRYANT and    |
21  | MGA ENTERTAINMENT, INC. v. MATTEL, INC. |

22                      I. INTRODUCTION

23       On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties. MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007. Mattel submitted

27  a reply on January 7, 2008. On February 8, 2008, the MGA parties submitted their second

28  Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

                              2·15·08

                                              Exhibit 18
                                              Page 285

1    supplemental responses and third supplemental responses to the interrogatories at issue.  The

2    matter was heard on February 11, 2008.

3                                   II. BACKGROUND

4            Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5    21, 2007, asking each of them the same fifteen questions (Nos. 27-41).  Mattel served its Fourth

6    Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7    interrogatories (Nos. 42-45).  Mattel served an Amended Fourth Set on October 23, 2007,

8    removing No. 45, but retaining Nos. 42-44.  Mattel served its Fifth Set of Interrogatories on

9    October 19, 2007, which consisted of two additional questions (Nos. 46-47).  On October 23,

10   2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11   replace the previously withdrawn interrogatory.  On October 25, 2007, Mattel served its Seventh

12   Set of Interrogatories, which consisted of Nos. 48-50.

13           In November of 2007, the MGA parties served responses and objections to Mattel's

14   interrogatories, and in some instances supplemental responses.  For the most part, the answers of

15   each of the MGA parties are substantially similar.  However, in several instances where MGA

16   Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17   S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18   party."

19           The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20   responses.  The MGA parties offered to provide supplemental responses by January 7, 2008.

21   Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22   was inadequate.  Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23           Mattel contends that the interrogatories at issue seek information relevant to central issues

24   in the case, such as:  MGA's contentions regarding which Bratz inventions were created before,

25

26           [1]  One of the issues raised in the motions papers --whether the interrogatories exceed the 50 interrogatory
27   per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's
     Motion for Leave to Take Additional Discovery, dated January 7, 2008.
28
     Bryant v. Mattel, Inc.,                                                                    2
     CV-04-09049 SGL (RNBx)

Exhibit 18
Page 286

1   during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2   storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3   the sources of information from which MGA has collected documents in this litigation which

4   relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5   MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6   by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7   including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8   inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9   rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10  innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11  employees that have been employed by MGA; non-privileged facts concerning the dispute

12  leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13  this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14  Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15  products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16       Mattel contends that although it has received responses to all of the interrogatories except

17  Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18  the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19  overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20  control of MGA, seek information protected by the attorney-client privilege, work product or joint

21  defense privileges, and call for a legal conclusion – are without merit.  Mattel contends that the

22  MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23  Mattel also contends that its interrogatories do not require the disclosure of privileged information

24  or work product, but rather require the MGA parties to state their contentions about facts or the

25  application of law to facts.

26       Mattel further contends that some of the MGA parties' responses are deficient in that they

27  merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

Exhibit 18
Page 247

1   details. Mattel contends that its contention interrogatories, including the purportedly "negative"
2   interrogatories asking for every fact which supports the denial of a statement or allegation, are
3   commonly used and well accepted to elucidate facts regarding a party's contentions, absent a
4   showing of undue burden. Indeed, Mattel points to decisions by the district judge which it
5   contends supports its use of the contention interrogatories at issue. Mattel also points out that it
6   provided the MGA parties with the details supporting its contentions in a one hundred-ten page
7   supplemental interrogatory response, and contends that the MGA parties ought to provide
8   comparable details to Mattel.
9          Mattel also contends that the MGA parties have unilaterally limited many of their
10  responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.
11  Further, Mattel contends that the MGA parties have failed to identify with specificity documents
12  they intend to rely upon, as requested by some of the interrogatories.
13         Mattel acknowledges that fully responding to the interrogatories will require some effort.
14  However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes
15  litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort
16  the MGA parties will be required to undertake to disclose the requested information.
17  Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling
18  the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.
19         The MGA parties contend that their current responses comply with Rule 33 of the Federal
20  Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number
21  of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,
22  the MGA parties contend that Mattel is not entitled to information about MGA's substitution of
23  counsel because such information is protected by the attorney-client privilege or the work product
24  doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial
25  data that has been requested. Third, the MGA parties contend that Mattel's contention
26  interrogatories contain misleading and unfair definitions and are unduly burdensome in that they
27  require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit 18
Page 288

1  contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2  than the principal factual and legal bases for the response.

3  ### III. STANDARDS

4        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

7  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8  2004) ("District courts need not condone the use of discovery to engage in 'fishing

9  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15        Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24        Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry. "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

Exhibit 18
Page 269

1  33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2  Fed.R.Civ.P. 33(b)(4).

3  IV. DISCUSSION

4  A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5       Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6  three different time periods, namely before, during and after Bryant's employment with Mattel:

7  **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU
   contend was CREATED, in whole or in part, prior to January 4, 1999, and for

8  each BRATZ INVENTION so identified state all FACTS that support YOUR
   contention that such BRATZ INVENTION (or aspects or portions thereof) was

9  CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with

10  knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
   such facts.

11

12  **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
   contend was CREATED, in whole or in part, after October 19, 2000 and before

13  June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
   that support YOUR contention that such BRATZ INVENTION (or aspects or

14  portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
   and IDENTIFY all PERSONS with knowledge of such facts and all

15  DOCUMENTS which REFER OR RELATE TO such facts.

16

17  **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
   was CREATED, in whole or in part, after January 3, 1999 and before October 21,

18  2000, and for each BRATZ INVENTION so identified state all FACTS that
   REFER OR RELATE TO the timing of the creating of such BRATZ

19  INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
   DOCUMENTS which REFER OR RELATE TO such facts.

20

21  Mattel contends that these interrogatories seek information that is plainly relevant and

22  discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that

23  the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24  INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

25  burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26  importance of the information sought. Mattel emphasizes that the information sought will prove

27  liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

Exhibit 18
Page 290

1   MGA claims were created before and just after Bryant's second period of employment at Mattel

2   is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3   chronology of Bratz design and development.

4        The MGA parties contend that Mattel is using misleading and unfair definitions to create

5   jury confusion.  In particular, the MGA parties object to Mattel's definition of "BRATZ

6   INVENTION," which they contend contains separate component parts ("representation, idea,

7   concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8   Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9   works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements").  The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'"  MGA Parties' Opposition at

15  2:11-13.  The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement."  Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel.  The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22       Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further.  The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

Exhibit 18
Page 291

1    supporting a particular allegation are *inherently improper*.").

2         Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3    the interrogatories are overbroad and unduly burdensome. The definition of "Bratz Invention" is

4    extremely broad, encompassing numerous intellectual property concepts. Mattel has not shown

5    how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6    relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7    Confidential Information and Inventions Agreement," signed by Bryant. The breadth and undue

8    burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9    extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10   supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11   supporting documents. Not all contention interrogatories requiring a recitation of all facts,

12   documents and witness are objectionable. See *e.g.* Tatum v. Schwartz, 2007 WL 2220977 at *1

13   (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14   that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15   events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16   of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17   to the exact amount of detail a party has to supply in response to a contention interrogatory). In

18   the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19   review the nearly 4 million pages of documents produced in this action and more than 50 days of

20   deposition testimony in search of information relating to "any representation, idea, concept, work,

21   process, procedure, plan, improvement, design or other development" that refers or relates to

22   Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23   depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24   rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25   relate to Bratz. It is not the MGA parties' responsibility to re-write the interrogatories in a

26   manner that will yield Mattel the most amount of information to support Mattel's claims and

27   defenses. On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    8

Exhibit 18
Page 292

1  outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2  amount in controversy, the parties' resources, the importance of the issues at stake in the

3  litigation, and the importance of the proposed discovery in resolving the issues.

4         In any event, the MGA parties' responses are adequate under the circumstances.  Faced

5  with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6  the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7  and identify the principal documents or categories of documents that support each contention.

8  See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For example, in response to

9  Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10 fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11 patented as a utility patent because fashion dolls were in the public domain for the purposes of

12 utility patent protection.  However, the MGA parties contend that Bryant's idea of a line of

13 fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14 law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15        The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16 parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17 patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18 in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19 flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20 that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21 manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22 2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23 MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24 standard fashion model poses, and thus were not novel or original.  Further, the MGA parties'

25 supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26 drawings Bryant completed in August and September of 1998 contained original expression

27 covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

Exhibit 18
Page 203

1    Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2    numerous individuals having knowledge of the facts supporting their contentions, and identify

3    documents that are relevant to the MGA parties' contentions.

4    B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5          Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6    "who are now or have been employed" by MGA since January 1, 1999.  More specifically,

7    Interrogatory No. 41 asks the MGA parties to:

8          IDENTIFY all PERSONS who at any time have been employed by or under
           contract with MATTEL who are now or have been employed by or under contract
9          with YOU since January 1, 1999, and, for each such PERSON, state his or her
           name, date of hire or effective date of contract, the date on which YOU first had
10         contact with such PERSON regarding potential employment or contracting, the
           date(s) on which such PERSON was interviewed for possible employment or
11         contracting, each title (if any) such PERSON has held while employed by or
           under contract with YOU, and the date of termination (if applicable).
12
13   In their supplemental response, the MGA parties assert numerous objections, but also provide a

14   list of well over a hundred individuals with their position title and employment dates.

15         Mattel contends that the MGA parties' response is incomplete because it does not contain

16   the date of first contact regarding potential employment or contracting, as well as the interview

17   date for potential employment or contracting.

18         The MGA parties contend that during the meet and confer process, they agreed to

19   investigate whether the additional requested information was reasonably available.  The MGA

20   parties represent that they are in the process of looking for the requested information, and that

21   they will supplement their response if the information is reasonably available without undue

22   burden.

23         Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

24   The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

25   contend otherwise.  In particular, the date of first contact, interview date, start date and end date

26   for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

27   parties' response.  The MGA parties shall provide the missing information for Bryant.  In

28
     Bryant v. Mattel, Inc.,                                                                 10
     CV-04-09049 SGL (RNBx)

Exhibit 18
Page 294

1    addition, the MGA parties shall provide the interview dates for each of the individuals identified

2    in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3    that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4    However, the MGA parties are not required to provide the date of first contact for each individual

5    because the burden of producing such information outweighs its likely benefit, taking into

6    account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7    C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8            Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9    product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10   "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11   persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12   MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13   No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14   also respond that, in general, at MGA, product development is completed 7-8 months before the

15   first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16           Mattel contends that the information it seeks is relevant to its defense against MGA's

17   claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18   was the one who came up with relevant matters first – before MGA – and that MGA was the one

19   who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20   parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21   Interrogatory No. 3 requested different information, namely the dates on which the products were

22   first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23           In response to the instant motion to compel, the MGA parties represent that they are

24   assessing whether they can provide more specific information without undue hardship, and will

25   supplement their responses if such information is available.  MGA's Opposition at p.29.

26           Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27   The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Exhibit 18
Page 295

1   their products have been copied or infringed by certain Mattel products.  Although the MGA

2   parties served supplemental responses after filing their opposition brief, the supplemental

3   responses do not include the requested information.  The MGA parties have failed to establish

4   that the interrogatories are unduly burdensome.

5   <u>D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)</u>

6   Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7   **Interrogatory No. 48**:  Separately IDENTIFY each trade dress that YOU
    contend MATTEL has copied, infringed or diluted or that is otherwise the

8   subject of YOUR claims, defenses or allegations in THIS ACTION.

9   **Interrogatory No. 49**:  For each trade dress identified in response to
    Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL

10  product, packaging or other matter that YOU contend copies, infringes or dilutes
    such trade dress, including without limitation by describing fully and separately,

11  for each such MATTEL product, packaging or other matter, each and every
    element of the claimed trade dress that YOU contend MATTEL has copied,

12  infringed or diluted.

13  **Interrogatory No. 50**:  For each trade dress identified in response to
    Interrogatory No. 48, separately and completely IDENTIFY all facts that support

14  YOUR contention that such trade dress is protectible, all DOCUMENTS that
    REFER OR RELATE to the foregoing and all PERSONS with knowledge of the

15  foregoing.

16  Mattel contends that these interrogatories seek core contentions underlying the MGA

17  parties' trade dress infringement claims and that the partial responses provided are inadequate

18  because they set forth only the "basic facts" without identifying a single product that MGA

19  alleges was infringed or any other details.  Mattel also contends that the responses are improper

20  insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21  this interrogatory will be the source of expert testimony and an expert may identify additional

22  facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23  to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24  As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25  directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26  Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27  principal facts supporting their contentions in compliance with Rule 33.

28

Exhibit 18
Page 296

1    Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied.  The

2  MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3  trade dress they contend Mattel has infringed.  More specifically, the MGA parties' responses

4  identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5  trade dress.  The MGA parties also set forth the principal facts supporting their contention that

6  their trade dress is protectible under the applicable trade dress legal principles, including that the

7  trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8  meaning.  That the interrogatory responses include a reservation of rights to supplement during

9  expert discovery does not render the responses inherently improper or inadequate.  Mattel does

10  not contest that the identification of the elements and products subject to trade dress infringement

11  will be a subject of expert testimony.

12  E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13    Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14  institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15  for YOUR benefit, since January 1, 1999."  The MGA parties objected to this interrogatory as

16  seeking information "not relevant to the claims or defenses of any party to the action and not

17  reasonably calculated to lead to the discovery of admissible evidence.

18    Mattel contends that the information sought is discoverable because it may lead to direct

19  evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20  Larian.  More specifically, Mattel contends that the timing and amounts of payments made to

21  Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22  commercial bribery and other tortious conduct.  Mattel also contends that the timing of such

23  payments would also be indicative of the timing of Bryant's first involvement with MGA.

24  Further, Mattel contends that the requested information is relevant to establish net worth for

25  purposes of calculating punitive damages.  Mattel also contends that the MGA parties' objection

26  based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27  independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

Exhibit 18
Page 297

1   seeking discovery in aid of a judgment or execution.

2        The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3   in Interrogatory No. 39.  The MGA parties are particularly concerned that Mattel will use the

4   information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5   even more private financial information.  Further, the MGA parties contend that Mattel has

6   already received substantial financial information from MGA Entertainment, Inc. directly, and

7   has not shown how that information is insufficient.  More specifically, the MGA parties point out

8   that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9   audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10   reports; various financial documents relating to Veronica Marlow; documents showing royalty

11   payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12   month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13   expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14   documents showing MGA's amortization and depreciation of certain capital assets and

15   expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16   including income and expense accounts, reserves and liabilities; and documents sufficient to

17   explain MGA's various accounts as presently and historically maintained in MGA's books and

18   records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19   profit centers.  MGA's Opposition at pp. 10-11.  Further, the MGA parties contend that MGA's

20   witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21        Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22   grounds that the financial information sought is cumulative of other discovery already sought and

23   obtained by Mattel, as outlined above by the MGA parties.  Mattel has also sought and obtained

24   documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25   other banking relationships since January 1, 1999.  See Order Granting in Part and Denying in

26   Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27   Sanctions (Document Request No. 207).  Further, as Mattel acknowledges, Mattel has sought and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit 18
Page 293

1    obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2    such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

3    Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4    In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5    unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6    F. Contention Interrogatories (Nos. 30-38 and 42)

7         Mattel served several contention interrogatories on several additional topics. The

8    remaining contention interrogatories at issue are set forth below.

9         **Interrogatory No. 30**: State all facts that support YOUR contention, if YOU so
     contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION

10   to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
     priority over and/or has superior rights to MATTEL as to such BRATZ

11   INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
     all DOCUMENTS that REFER OR RELATE TO such facts.

12

13        **Interrogatory No. 31**: State all facts that support YOUR contention, if YOU so
     contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and

14   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

15        **Interrogatory No. 32**: State all facts that support YOUR contention, if YOU so
     contend, that MATTEL is not or would not be entitled to injunctive relief as

16   requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
     determined that MATTEL owns one or more BRATZ INVENTIONS, and

17   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

18

19        **Interrogatory No. 33**: State all facts that support YOUR contention, if YOU so
     contend, that MATTEL is not entitled to an award of punitive or exemplary

20   damages against YOU, and IDENTIFY all PERSONS with knowledge of such
     facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21        **Interrogatory No. 34**: State all facts that support YOUR contention, if YOU so
     contend, that YOU did not intentionally interfere with the INVENTIONS

22   AGREEMENT when BRYANT purported to TRANSFER and MGA purported
     to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge

23   of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24        **Interrogatory No. 35**: State all facts that support YOUR contention, if YOU so
     contend, that YOU did not aid or abet any breach of fiduciary duty or duty of

25   loyalty owed by BRYANT to MATTEL when BRYANT performed work or
     services with or for MGA while BRYANT was employed by MATTEL, and

26   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

27

28        **Interrogatory No. 36**: State all facts that support YOUR contention, if YOU so

Exhibit 18
Page 299

1    contend, that YOU acted with an innocent state of mind or reasonably believed
that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2    purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ,
and IDENTIFY all PERSONS with knowledge of such facts and all
3    DOCUMENTS that REFER OR RELATE TO such facts.

4    **Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so
contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5    BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY
all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
6    OR RELATE TO such facts.

7    **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so
contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
8    duties to MATTEL when BRYANT performed work or services with or for
MGA while BRYANT was employed by MATTEL, and IDENTIFY all
9    PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
RELATE TO such facts.

10

11    **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so
contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
12    created by BRYANT on or before October 19, 2000, and IDENTIFY all
PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
13    RELATE TO such facts.

14

15   Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

16   including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

17   MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

18   inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

19   owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

20   relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

21   Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

22   and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

23   created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

24   protectible.  Mattel contends that the MGA parties cannot show burden sufficient to outweigh

25   Mattel's need for the information sought.

26       In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

27   MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

Exhibit 18
Page 300

1   As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2   assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3   they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4   represent that they responded to the interrogatories in good faith by providing the principal facts

5   supporting their contentions, and therefore are in compliance with Rule 33.

6        Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7   Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8   request for all facts, the identity of all persons and all supporting documents, render the

9   interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10  reasonably sufficient response.  The MGA parties' supplemental response includes their

11  contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12  MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13  Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14  three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15  sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16  2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17  have produced shapes that were different from the actual shape of the final three-dimensional

18  Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19  MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20  released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21  practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22  1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23  fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24  to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25  existing doll parts that was never intended to, and did not, provide an accurate representation of

26  what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27  arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

Exhibit 18
Page 301

1  conception of what could have been developed into a tangible item that would have qualified for

2  protection under a design patent, such conception would not have covered the shape of the final

3  Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4  nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5  Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6  persons with knowledge and documents relevant to the MGA parties' contentions.

7        Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8  The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9  identified persons with knowledge, and identified documents to support their contentions.  To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12        Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15        Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17      **Interrogatory No. 40:**  IDENTIFY each and every STORAGE DEVICE that
       YOU have used for any purpose which contains or contained DIGITAL
18      INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
       to January 1, 2002.

19      **Interrogatory No. 47:**  IDENTIFY each and every SOURCE OF
20      INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
       ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
21      RELATE TO the time period prior to February 28, 2001 (regardless of when such
       DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
22      transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25  response to No. 47.

26        Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information.  Further, Mattel contends

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

Exhibit 18
Page 302

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information. Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices. In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any. Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10          Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11  the sources of information – i.e. the media – from which the MGA parties have collected

12  documents relating to Bratz and the period prior to February 28, 2001. Mattel contends that the

13  information it seeks will enable it to determine what sources the MGA parties have examined and

14  have not examined to produce documents in the case.

15          During the meet and confer process, the MGA parties proposed that the parties exchange

16  "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17  and 47. The "source logs" would provide each document's Bates number, the identity of the

18  individual associated with or who maintained the document and the location where the document

19  was found. Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20  seeking information about key early Bratz documents, not every document produced in the case.

21  Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22  would not reveal sources that contain early Bratz documents that MGA has not produced

23  documents from, or where MGA looked for documents, as well as where MGA failed to look.

24          The MGA parties contend that the interrogatories assume, without any factual support,

25  that the MGA parties are aware of the existence of Bratz documents on their computer systems

26  that relate to the time period prior to January 1, 2002, and have not produced those documents.

27  The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

Exhibit 18
Page 303

1  Interrogatory Nos. 40 and 47. The MGA parties emphasize that they have already produced more

2  than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3  pages of documents. Furthermore, the MGA parties contend that these interrogatories are

4  cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5  collection of documents produced in this action. The MGA parties also represent that they have

6  agreed to provide additional testimony on this topic.

7      Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8  The interrogatories seek relevant information about the identity of each storage device that

9  contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10  sources of information from which the MGA parties collected documents in this action that refer

11  or relate to Bratz and the time period prior to February 28, 2001. The "source log" information is

12  not a reasonable substitute for the information requested in the interrogatories because it would

13  not necessarily identify all storage devices used by the MGA parties during the relevant period.

14  The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15  other information. The MGA parties have failed to establish that the interrogatories are unduly

16  burdensome. Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17  Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18  witness might be able to recall in the course of a deposition. Furthermore, the information sought

19  in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20  H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21      Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22  **Interrogatory No. 46:** Without disclosing the content of communications which
   are protected by the attorney-client privilege, state fully and in detail all facts

23  which REFER OR RELATE TO any dispute regarding THIS ACTION between,
   on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the

24  other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
   any and all disputes which were or have been asserted as a basis for, or which

25  underlie, contributed to or were a factor in, the withdrawal, termination and/or
   substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this

26  ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
   DOCUMENTS that REFER OR RELATE TO such facts.

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                          - 20

Exhibit 18
Page 304

1    Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2    information protected by either the attorney-client privilege or the work product doctrine.

3    Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4    that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5    motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6    be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7    because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8    conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9    the State Bar Act."  Mattel's Motion at p. 38.

10          The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19          Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20   tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25   however, to substantiate such a series of assumptions.  Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                          21

Exhibit 18
Page 305

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5         The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine.  Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege.  See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007).  Nor have the MGA parties

10 waived the attorney-client privilege.  Although the MGA parties discussed the reasons for their

11 substitution of counsel with the press, there has been no showing that the information they

12 disclosed revealed the substance of an attorney-client privileged communication.

13                              V. CONCLUSION

14        For the reasons set forth above, it is hereby ordered as follows:

15        1.  Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16 43-44 and 47.  The MGA parties shall serve supplemental responses to said interrogatories no

17 later than February 26, 2008.

18        2.  Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19 50.

20 Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21 Mattel shall file this Order with the Clerk of Court forthwith.

22

23 Dated: February 15, 2008

24                                      HON. EDWARD A. INFANTE (Ret.)
                                        Discovery Master
25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                    22

Exhibit 18
Page 306

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I
served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION
TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA
PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above
is true and correct.

Executed on February 15, 2008, at San Francisco, California.

Sandra Chan

Exhibit 18
Page 207

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Proctor, Brett on 2/19/2008 at 2:56 PM PST and filed on 2/19/2008

**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**      2:04-cv-9049
**Filer:**            Mattel Inc
**Document Number:** 2266

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties filed by Defendant Mattel Inc re: MOTION to Compel Responses to Interrogatories by the MGA Parties *(Nos. 27-44 and 46-50)*[1317] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Linda M Burrow    burrow@caldwell-leslie.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Melissa Grant    melissagrant@quinnemanuel.com

Emil W Herich    eherich@kmwlaw.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Exhibit 18
Page 309

John W Keker     jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy     rkennedy@skadden.com

Alisa Morgenthaler Lever     amorgenthaler@chrisglase.com

Larry W McFarland     lmcfarland@kmwlaw.com

Nathan Meyer     nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim     cyrusnaim@quinnemanuel.com

Thomas J Nolan     tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland     moverland@obsklaw.com

Michael H Page     mhp@kvn.com

Kenneth A Plevan     kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor     dylanproctor@quinnemanuel.com

John B Quinn     johnquinn@quinnemanuel.com

David C Scheper     dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar     alexstolyar@quinnemanuel.com

John Elliot Trinidad     jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock     awaltonhadlock@kvn.com

Matthew M Werdegar     mmw@kvn.com

Michael T Zeller     michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\Documents and Settings\laurakinsey\Desktop\Order re Motion to Compel.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/19/2008] [FileNumber=5381686-0]
[643f3427701adad1bfb3880576efb3c91150eb5f693240ae485529023da3f2864add
e9800830a44a4c86425534ead16e2d9b58cbceeb1aba019aa1836347bcbd]]

Exhibit  14
Page  309

# Exhibit 19

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13             Plaintiff, | Consolidated with |
| 14       vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16             Defendant. | **[To Be Heard By Discovery Master Robert O'Brien[** |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF |
| 19 | RENEWED MOTION OBJECTING TO PORTIONS OF DISCOVERY |
| 20 | MASTER'S FEBRUARY 15, 2008 ORDER REGARDING MATTEL'S |
| 21 | MOTION TO COMPEL RESPONSES TO INTERROGATORIES BY THE |
| 22 | MGA PARTIES [INTERROGATORY NOS. 48-50] |
| 23 | [Declaration of Jon Corey filed concurrently herewith] |
| 24 | |
| 25 | Hearing Date: April 27, 2009<br>Time:          10:00 a.m.<br>Place:         Arent Fox LLP |
| 26 | |
| 27 | **Phase 2**<br>Discovery Cut-off: December 11, 2009 |
| 28 | Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

00505.07975/2868281.2

-4|5|09

Exhibit 19
Page 210

## **TABLE OF CONTENTS**

Page

I.   MGA'S PRIOR RESPONSES TO INTERROGATORY NOS. 48-50 ARE DEFICIENT ........................................................................................ 5

II.  THE DISCOVERY MASTER SHOULD OVERRULE MGA'S OBJECTIONS TO INTERROGATORY NOS. 48 THROUGH 50 ............... 7

    A.   The Discovery Master Should Overrule MGA's Boilerplate Privilege Objections ............................................................................. 7

    B.   The Discovery Master Should Overrule MGA's Compound Objections ............................................................................................... 8

    C.   The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information Already Produced Or More Easily Obtainable Elsewhere .................................................. 12

    D.   The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information That May Be Subject To Expert Analysis ...................................................................... 12

    E.   The Discovery Master Should Overrule MGA's Undue Burden Objection to Interrogatory No. 50 ................................................. 13

CONCLUSION ................................................................................................ 16

00505.07975/2868281.2

-i-

Exhibit 19
Page 311

# TABLE OF AUTHORITIES

Page

### Cases

Am. Oil Co. v. Penn. Petro. Co.,
  23 F.R.D. 680 (D.R.I. 1959) .................................................................. 14

Audiotext Comm. Network, Inc. v. U.S. Telcomm., Inc.,
  1995 WL 625953 (D. Kan. 1995) .......................................................... 14

Auto Meter Prods., Inc. v. Maxima Technologies & Sys., LLC,
  2006 WL 3253636 (N.D. Ill. 2006).......................................................... 14

Burton Mechanical Contractors, Inc. v. Foreman,
  148 F.R.D. 230 (N.C. Inc. 1992) ............................................................. 14

Capacchione v. Charlotte-Mecklenburg Schools,
  182 F.R.D. 486 (W.D.N.C. 1998) ........................................................... 15

Convergent Business Systems, Inc. v. Diamond Reporting, Inc.,
  1989 WL 92038 (E.D.N.Y. 1989)............................................................. 7

Dang v. Cross,
  2002 WL 432197 (C.D. Cal. 2002).......................................................... 14

Eidukonis v. Southeastern Pennsylvania Transp. Authority,
  1987 WL 16321 (E.D. Pa. August 27, 1987) ......................................... 11

Fleet Systems, Inc. v. Federal Coach, LLC,
  2007 WL 2264618 (D. Neb. August 6, 2007) ....................................... 11

In re Heritage Bond Litigation,
  2004 WL 1970058 (C.D. Cal. 2004)........................................................ 8

Jackson v. Montgomery Ward & Co., Inc.,
  173 F.R.D. 524 (D. Nev. 1997)............................................................... 14

King v. E.F. Hutton & Co., Inc.,
  117 F.R.D. 2 (D.D.C. 1987)................................................. 7, 13, 14, 15

Montecatini Edison, S. p. A. v. Rexall Drug & Chemical Co.,
  288 F. Supp. 486 (D.Del. 1968)............................................................... 4

Morgenstern v. Int'l Alliance of Theatrical Stage Empl.,
  2006 WL 2385233 (N.D. Cal. Aug. 17, 2006) ..................................... 11

Nagele v. Electronic Data Systems Corp.,
  193 F.R.D. 94 (W.D.N.Y. 2000).............................................................. 13

-ii-

Exhibit 19
Page 312

Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh,
  2005 WL 318811 (N.D. Cal. January 5, 2005)........................................9

Pension Ben. Guar. Corp v. Ziffer,
  1994 WL 11654 (N.D. Ill. 1994) .....................................................15

Putnam v. Eli Lilly and Co.,
  508 F. Supp. 2d 812 (C.D. Cal. 2007)...............................................8

Richmark Corp. v. Timber Falling Consultants,
  959 F.2d 1468 (9th Cir. 1992) .......................................................11

Roberts v. Heim,
  130 F.R.D. 424 (N.D. Cal. 1989).....................................................13

Schaap v. Executive Indus., Inc.,
  130 F.R.D. 384 (N.D. Ill. 1990).......................................................15

Seff v. General Outdoor Advertising Co.,
  11 F.R.D. 597 (N.D. Ohio 1951) .....................................................16

Swackhammer v. Sprint Corp. PCS,
  225 F.R.D. 658 (D. Kan. 2004).........................................................9

Tennison v. San Francisco,
  226 F.R.D. 615 (N.D. Cal. 2005) .....................................................14

Twigg v. Pilgrim's Pride Corp.,
  2007 WL 676208 (N.D. W. Va. 2007)................................................14

Wal-Mart Stores, Inc. v. Samara Bros., Inc.,
  529 U.S. 205 (2000) .....................................................................6

Williams v. The Art Inst. of Atl.,
  2006 WL 3694649 (N.D. Ga. 2006) ..................................................14

Zapata v. IBP, Inc.,
  1997 WL 122588 (D. Kan. 1997) .....................................................10

### Statutes

Fed. R. Civ. P. 33(a)(2) ....................................................................7

Fed. R. Civ. P. 33(b)(4) ...................................................................13

Fed. R. Civ. P. 33(b).........................................................................4

Exhibit 19
Page 313

**Other Authorities**

Wright & Miller, 8A <u>Fed. Prac. & Proc. Civ. 2d</u> § 2168.1 at 261...............................9

00505.07975/2868281.2

-iv-

Exhibit 19
Page 314

1      On March 12, 2009, Judge Larson issued an Order providing that the

2  Discovery Master should consider *de novo* Mattel's objections to the prior Discovery

3  Master's rulings on Mattel's motion for an order overruling objections and

4  compelling full and complete responses to Interrogatory Nos. 48-50.   Mattel

5  respectfully submits this Supplemental Brief in light of the fact that Mattel's motion

6  to Judge Larson that has now been referred to the Discovery Master applied a

7  different (and more exacting) standard than *de novo* consideration.

8                         **Preliminary Statement**

9      Interrogatory Nos. 48 through 50 ask MGA to identify the trade dress that

10  MGA contends Mattel has infringed or diluted, to specifically identify allegedly

11  infringing Mattel products, and to provide facts supporting its claim that its trade

12  dress is protectable.   MGA acknowledged that its responses were deficient and

13  represented to the prior Discovery Master that "*MGA will supplement these*

14  *responses in the course of Phase 2 discovery.*"  Phase 2 discovery is here, and MGA

15  has not supplemented the responses to these basic contention interrogatories.

16      By the time this motion is heard, these claims will be four-years old.  MGA

17  must have this information to prepare its own case for trial.  Mattel is entitled to a

18  clear statement of MGA's trade dress infringement contentions to adequately focus

19  and conduct appropriate follow-up discovery, prepare its defenses to those claims

20  and ensure that it is not surprised at trial.

21      MGA's interrogatory responses on these key points failed to identify either

22  specific trade dress that it claims that Mattel infringes or the allegedly infringing

23  products.   MGA has refused to make good on its representation that it would

24  supplement these deficient answers.  Mattel has no choice but to seek an order

25  overruling MGA's objections and compelling complete responses by a date certain.

26

27

28

00505.07975/2866281.2

-1-

Exhibit 19
Page 315

**Procedural Posture**

Interrogatory Nos. 48-50 are contention interrogatories requesting basic information regarding MGA's trade dress infringement and dilution claims. The interrogatories read as follows:

Interrogatory No. 48: Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or diluted or that is otherwise the subject of YOUR claims, defenses or allegations in THIS ACTION.

Interrogatory No. 49: For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product, packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packaging or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted.

Interrogatory No. 50: For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectable, all DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.[1]

MGA initially provided no responses to these interrogatories, just objections.[2] A few days later, MGA supplemented its responses,[3] but the supplemental responses were incomplete, evasive, and ignored specific questions.[4] Without withdrawing its objections, MGA agreed to supplement their responses during Phase 2 discovery.[5]

---

[1] See Mattel's Seventh Set of Interrogatories, dated October 25, 2007, Declaration of Jon Corey ("Corey Dec.") filed concurrently herewith, Exh. 1.
[2] See MGA's Responses and Objections to Mattel's Seventh Set of Interrogatories, Corey Dec., Exh. 2.
[3] MGA's Supplemental Responses and Objections to Mattel's Seventh Set of Interrogatories, Corey Dec., Exh. 3.
[4] See Supplemental Responses and Objections to Mattel's Seventh Set of Interrogatories, Corey Dec., Exh. 3, at 8-11, 14-16, and 18-21.
[5] MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, (footnote continued)

00505.07975/2868281.2

Exhibit 19
Page 316

On February 15, 2008, the prior Discovery Master entered an Order granting in part and denying in part Mattel's motion to compel responses to a number of interrogatories, including these.[6]  Notwithstanding the many problems with the responses to Nos. 48-50, and MGA's own recognition that they should be supplemented in Phase 2, the prior Discovery Master found they were "in substantial compliance with Rule 33."[7]  Mattel timely objected to that Order,[8] but because Phase 2 discovery had been stayed, the Court declined to rule on the adequacy of MGA's responses to these interrogatories.[9]

After the Court lifted the stay of Phase 2 discovery, Mattel renewed its motion objecting to the prior Discovery Master's February 15, 2008 Order.[10]  On

---

40, 41, 42, 43, 44 and 46, 47, 48, 49, 50) by the MGA Parties, dated December 31, 2007, at p. 30, Corey Dec., Exh. 4.

[6]  Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interogatory Nos. 27-44 and 46-50 by the MGA Parties, dated February 15, 2008 (February 15 Order"), Corey Dec., Exh. 5.

[7]  February 15 Order, at p. 13.

[8]  Mattel, Inc.'s Notice of Motion and Motion Objecting to Portions of Discovery Master's (1) February 15, 2008 Order Regarding Mattel's Motion to Compel Responses to Interrogatories by the MGA Parties; and (2) February 20, 2008 Order Regarding Mattel's Motion to Compel Responses to Interrogatories by Carter Bryant; and Memorandum of Points and Authorities, dated March 3, 2008, Corey Dec., Exh. 6.

[9]  See March 31, 2008 Order at 3 ("The Court reserves ruling on Interrogatories 48-50, regarding MGA's trade dress claims against Mattel.  As recognized by the Parties, this is a Phase 2 issue, and the Court denies this part of Mattel's motion without prejudice.  Mattel may raise the issue again at an appropriate time after the Court lifts the stay on Phase 2 discovery."), Corey Dec., Exh. 7.

[10]  See Mattel, Inc.'s Notice of Renewed Motion and Renewed Motion Objecting to Portions of Discovery Master's (1) February 15, 2008 Order Regarding Mattel's Motion to Compel Responses to Interrogatories by the MGA Parties, dated January 20, 2009, Corey Dec., Exh. 8.

Exhibit 19
Page 317

1  March 12, 2009, the Court referred Mattel's motion to the Discovery Master.[11]  The

2  Court instructed the Discovery Master to "consider the issues presented by the

3  motion for review as if presented to him in the first instance; he should not apply the

4  'clearly erroneous or contrary to law' standard that the Court would apply."[12]  Mattel

5  respectfully submits this supplemental memorandum in light of the Court's direction

6  that the Discovery Master consider Mattel's Motion *de novo.*

7                                                  **Argument**

8          Interrogatory Nos. 48-50 seek basic information regarding MGA's trade dress

9  claims.  They ask MGA to identify (1) each trade dress that is the subject of MGA's

10  claims, defenses or allegations, (2) each Mattel product that MGA claims infringes

11  that trade dress, and (3) the facts that support MGA's contention that the trade dress

12  that is the subject of its claims is protectable.[13]  Mattel has a right to such basic

13  information.  It needs substantive responses to these interrogatories to develop

14  further discovery, to narrow the issues for trial, to prepare and prosecute its own

15  claims, and to defend against MGA's trade dress claims.[14]  MGA's prior responses to

16  these interrogatories are deficient and its objections to them should be overruled.

17

18

19  [11]  See Order Referring (1) Motion for Review of Portions of Discovery Master's
    February 15, 2008, Order (Docket #4717) and (2) Motion for Issuance of Letter of
20  Request (Docket #4721) to Discovery Master, dated March 12, 2009, Corey Dec.,
21  Exh. 9.
    [12]  Id.
22  [13]  See Mattel's Seventh Set of Interrogatories, dated October 25, 2007, Corey
23  Dec., Exh. 1.
    [14]  Contention interrogatories such as Mattel's Interrogatories 48-50 "can be
24  most useful in narrowing and sharpening the issues, which is a major purpose of
25  discovery."  Fed. R. Civ. P. 33(b), Advisory Committee Notes.  See also
    Montecatini Edison, S. p. A. v. Rexall Drug & Chemical Co., 288 F.Supp. 486, 489
26  (D.Del. 1968) (contention interrogatories are useful and appropriate to "ferret out or
27  narrow the issues").

28

00505.07975/2868281.2

-4-

MATTEL'S SUPP. RE DISCOVERY MASTER'S FEB. 15, 2008 ORDER

Exhibit 19
Page 319

1    **I.**    **MGA'S PRIOR RESPONSES TO INTERROGATORY NOS. 48-50 ARE**

2        **DEFICIENT**

3        In response to these requests, MGA has described only general categories of

4 allegedly protected trade dress and allegedly infringing products and has offered

5 only vague, conclusory assertions about the protectability of its claimed trade dress

6 rather than the specific factual support sought by Mattel's interrogatories.[15] In

7 particular:

8        Interrogatory No. 48. In response to Interrogatory No. 48, MGA provided a

9 litany of baseless objections so that it is unclear whether it has provided a full and

10 complete response to the interrogatory. MGA has had over four years to determine

11 what trade dress it alleges Mattel infringed. MGA's meritless objections should be

12 overruled, and MGA should confirm that it has provided a full and complete

13 response to this interrogatory.

14        Interrogatory No. 49. In response to Interrogatory No. 49, which seeks

15 identification of each allegedly infringing Mattel product and the associated

16 allegedly copied trade dress, MGA only generically identified Mattel MY SCENE

17 dolls (which is an entire line consisting of dozens of dolls) and refused to

18 specifically identify any particular Mattel product that allegedly infringes its

19 purported trade dress. Nor did MGA identify the elements of trade dress that any

20 specific product allegedly infringed.

21        Interrogatory No. 50. Interrogatory No. 50 seeks basic information, asking

22 MGA to provide the factual basis for the contention that its own claimed trade dress

23 is protectable and to identify persons with knowledge of such facts and supporting

24 documents. In response, MGA simply says that the "Bratz" and "Bratz Petz" lines

25

26    [15]   MGA's Supplemental Responses and Objections to Mattel's Seventh Set of

27 Interrogatories, Corey Dec., Exh. 3.

28

**Exhibit** 19
**Page** 320

1   "are aesthetic and non-functional is apparent from an examination of the Bratz

2   products and packaging, compared to other leading fashion dolls" and that MGA's

3   trade dress has acquired secondary meaning "as a result of the enormous success of

4   the Bratz dolls in the market" and because of MGA's "marketing and promotional

5   efforts." Such conclusory, circular pronouncements that the trade dress that MGA

6   seeks to assert is protectable is not a factual response to a contention interrogatory.[16]

7       Responses like these provide Mattel and its experts with no guidance as to

8   how to prepare defenses to MGA's Phase 2 claims. MGA itself recognized this. In

9   its briefing before the prior Discovery Master, it represented that *"MGA will*

10  *supplement these responses in the course of Phase 2 discovery."*[17]  It should be

11  ordered to do so now so that Mattel can understand the alleged basis for MGA's

12  claims and proceed with the depositions and other follow-up discovery that will be

13  necessary once MGA's claims are defined.  "[A] certain amount of burdensome

14  labor is to be expected in complex [] cases, and where the party is simply being

15

16      [16]  The design elements of a product are only protectable trade dress if they are
17  not functional and they have "acquired distinctiveness," which is also known as a
    "secondary meaning." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205,
18  210, 216 (2000) (explaining that a plaintiff must prove a protectable product design
19  element is non-functional and holding that "a product's design is distinctive, and
    therefore protectible, only upon a showing of secondary meaning."). Furthermore, a
20  design element "has acquired distinctiveness... if it has developed secondary
21  meaning, which occurs when, 'in the minds of the public, the primary significance
    of [the element] is to identify the source of the product rather than the product
22  itself.'" Id. at 211. Thus, MGA's response to Interrogatory No. 50 merely recites
23  elements necessary for protectability without providing the facts to support its
    claims. MGA does not discharge its duty to explain the factual basis for its claims
24  by simply reciting such legal conclusions.
25      [17]  MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
    Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39,
26  40, 41, 42, 43, 44 and 46, 47, 48, 49, 50) by the MGA Parties, dated December 31,
27  2007, at p. 30, Corey Dec., Exh. 4.

28

Exhibit 19
Page 321

1  asked to substantiate the claims that they alleged, they must accept that burden."
2  Convergent Business Systems, Inc. v. Diamond Reporting, Inc., 1989 WL 92038, at
3  *2 (E.D.N.Y. 1989).   "The plaintiffs brought [the] lawsuit and can not properly
4  complain of the burden which would be imposed upon them to give as detailed and
5  as complete answers as now possible." King v. E.F. Hutton & Co., Inc., 117 F.R.D.
6  2, 7 (D.D.C. 1987).

7  **II.   THE   DISCOVERY   MASTER   SHOULD   OVERRULE   MGA'S**
8  **OBJECTIONS TO INTERROGATORY NOS. 48 THROUGH 50**

9      **A.   The Discovery Master Should Overrule MGA's Boilerplate**
10        **Privilege Objections**

11      MGA objects to Interrogatory Nos. 48-50 on the grounds that they "seek
12  information that is not subject to disclosure under any applicable privilege, the work
13  product doctrine, the right of privacy, and all other privileges recognized under the
14  constitutional, statutory, or decisional law of the United States of America, the State
15  of California, or any other applicable jurisdiction."[18]   Their blanket assertions of
16  privilege in response to contention interrogatories should be overruled.  Parties are
17  required to answer interrogatories that ask them to state their contentions about facts
18  or the application of law to facts. Fed. R. Civ. P. 33(a)(2). Such inquiries do not
19  violate the attorney-client privilege or the protections afforded work product.  See
20  Convergent, 1989 WL 92038, at *1  ("Seeking the facts and documents which
21  support a particular allegation in a complaint violates neither the attorney-client or
22  work product privileges."); King, 117 F.R.D. at 5 n.3 (interrogatories seeking factual
23  specifics which party contends supports a contention do not implicate the work
24  product doctrine:  "If this elementary principle were not applicable, contention

25  _____

26     [18]   MGA's Supplemental Objections and Responses to Mattel's Seventh Set of
27  Interrogatories (Nos. 48-50), Corey Dec., Exh. 3.

28

Exhibit 19
Page 322

1   interrogatories would not exist.  As the Advisory Committee Note reflects, as to
2   requests for even opinions or contentions that call for the application of law to fact,
3   they are permissible and can be most useful in narrowing and sharpening the issues,
4   which is the major purpose of discovery.").  Mattel is entitled to learn the facts and
5   identities of persons who know the facts that MGA believes support its claims.

6        MGA's assertion of other privileges is indefensible.  The information sought
7   in these interrogatories is not protected by the "right of privacy" or other "privileges
8   recognized under the constitutional, statutory, or decisional law of the United States
9   of America, the State of California, or any other applicable jurisdiction."  MGA
10  does not identify any other "recognized privilege" nor does it identify any other
11  "applicable jurisdiction."  Furthermore, the Court and the former Discovery Master
12  have previously recognized that (a) there is no right of privacy applicable in this
13  federal case, and (b) the Protective Order entered by the Court in this litigation is
14  sufficient to protect any confidentiality interests that may exist.[19]

15  **B.    The Discovery Master Should Overrule MGA's Compound**
16        **Objections**

17        MGA objects that Interrogatory Nos. 48-50 are compound and contain
18  "discrete subparts" because of Mattel's definitions of the terms IDENTITY and
19  IDENTIFY.  MGA also complains that the definition of the terms IDENTITY AND

---

22  [19]  Order Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 14; Order Dated July
23  2, 2007, at 3, Corey Dec., Exh. 15. See also Putnam v. Eli Lilly and Co., 508 F.
    Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a protective order "can strike the
24  appropriate balance between the need for the information and the privacy concerns"
25  of the party opposing production); In re Heritage Bond Litigation, 2004 WL
    1970058, at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have
26  in their bank records and related financial statements are adequately protected by the
27  protective order, and are not sufficient to prevent production in this matter").

28

00505.07975/2868281.2

-8-

**Exhibit** 19
**Page** 323

1  IDENTIFY are overbroad, unduly burdensome, vague and ambiguous and
2  oppressive.

3      The interrogatories are not compound. Each refers to one common theme and
4  thus counts as one interrogatory. See Phase 2 Discovery Matter, Amended Order
5  No. 11, dated March 31, 2009, at 21, Corey Dec., Exh. 13 (explaining "[t]he fact
6  that the interrogatories ask MGA to identify witnesses, facts and documents ... does
7  not render the interrogatories compound because the questions in each interrogatory
8  refer to one common theme and count as a single interrogatory."); Pacific Lumber
9  Co. v. National Union Fire Ins. Co. of Pittsburgh, 2005 WL 318811, at *7 (N.D.
10 Cal. January 5, 2005) (interrogatory that asked the "same question regarding a
11 common group of people" was not compound) (citing Wright & Miller, 8A Fed.
12 Prac. & Proc. Civ. 2d § 2168.1 at 261); Swackhammer v. Sprint Corp. PCS, 225
13 F.R.D. 658, 664 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at
14 eliciting details concerning a 'common theme' should generally be considered a
15 single question.").

16     Interrogatory No. 48 asks MGA to identify the trade dress Mattel allegedly
17 infringed or diluted. Interrogatory No. 49 asks MGA to identify the Mattel products
18 it accuses of infringement. Neither of these interrogatories is compound.

19     Interrogatory 50 asks MGA to explain why MGA believes that its trade dress
20 is protectable and to identify documents relating to such assertions and persons with
21 knowledge of the protectability of the claimed trade dress. Both Discovery Masters
22 have ruled that such interrogatories with "subparts seeking facts supporting a
23 contention, the identity of persons with knowledge, and documents are not counted

24
25
26
27
28

00505.07975/2868281.2

-9-

Exhibit 19
Page 324

1  separately for the purposes of applying the. . . interrogatory limit."[20]   The

2  interrogatories are not compound.

3        Furthermore, none of these interrogatories are made compound, burdensome

4  or oppressive by Mattel's definitions of the words IDENTITY or IDENTIFY.

5  Mattel has simply defined these terms precisely to make clear what is being sought

6  about MGA's own claims and the level of precision with which MGA should

7  respond to the interrogatories.   The definitions simply request enough detail to allow

8  Mattel to understand, without confusion, exactly which trade dress elements,

9  products and persons are referred to in MGA's responses.   As previously explained,

10  "[t]he fact that the interrogatories ask MGA to identify witnesses, facts and

11  documents ... does not render the interrogatories compound because the questions in

12  each interrogatory refer to one common theme and count as a single interrogatory."

13  Phase 2 Discovery Matter, Order No. 11, dated March 30, 2009, at 21, Corey Dec.,

14  Exh. 13.   Nor does that fact that Mattel requests different types of details make the

15  interrogatories burdensome or oppressive.   See, e.g., Zapata v. IBP, Inc., 1997 WL

16  122588, at *1 (D. Kan. 1997) (ordering defendant to fully answer interrogatory

17  asking for factual basis for each of defendant's defenses, as well as all witnesses

18  with knowledge of and all documents relating to those facts).   Indeed, MGA has

19  previously been compelled to answer interrogatories which used very similar

20  definitions of IDENTITY or IDENTIFY.   See Mattel Inc.'s Second Set of

21  Interrogatories to Defendant MGA Entertainment, Inc., Corey Dec., Exh. 16; Order

22  Granting Mattel's Motion to Compel Production of Documents and Interrogatory

23

24  _____

25

26  [20]  Phase 2 Discovery Matter, Order No. 11, dated March 30, 2009, at 21, Corey

27  Dec., Exh. 13; Order Granting Joint Motion for Protective Order Regarding Mattel's
    Interrogatories, dated September 5, 2007, at 5-7, Corey Dec., Exh. 11.

28

Exhibit 19
Page 325

1    Responses by MGA, dated May 15, 2007, Corey Dec., Exh. 17 (ordering MGA to
2    respond to Mattel's Interrogatory Nos. 5, 7 and 8, among others).

3           Finally, in any event, MGA did not cite any objection to the definitions of
4    IDENTITY and IDENTIFY in its Opposition to Mattel's original motion to compel
5    further responses to these interrogatories.[21]  As such, the objection was waived.  See
6    Morgenstern v. Int'l Alliance of Theatrical Stage Empl., 2006 WL 2385233, at *2
7    n.5 (N.D. Cal. Aug. 17, 2006) ("These objections, however, are not raised in
8    defendant's opposition to plaintiff's current motion and are therefore waived."); Fleet
9    Systems, Inc. v. Federal Coach, LLC, 2007 WL 2264618, *3, n.2 (D. Neb. August
10   6, 2007) ("To the extent the defendant made other objections in its response, the
11   defendant did not argue such objections continued to be applicable in its brief in
12   opposition to the motion to compel. Accordingly, such objections are deemed
13   waived."); Eidukonis v. Southeastern Pennsylvania Transp. Authority, 1987 WL
14   16321, *5 (E.D. Pa. August 27, 1987) (holding that party's failure to raise an
15   objection in opposing a prior motion on the same documents "constitutes a waiver of
16   an objection" and compelling production).  See also Richmark Corp. v. Timber
17   Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) (holding that objection
18   was waived when not raised "at the very least" in response to a motion to compel.).

19
20
21
22
23
24
25   [21]   See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to
26   Compel Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44 and 46, 47, 48, 49, 50) by the MGA, dated December 31,
27   2007, Corey Dec., Exh. 4.
28

-11-

Exhibit 19
Page 320

**C.    The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information Already Produced Or More Easily Obtainable Elsewhere**

MGA objects to Interrogatory Nos. 48-50 on the grounds that they seek information that can be derived from documents that have or will be produced. Mattel should not be forced to go to other sources for information from which it can divine the factual basis of MGA's *own* claims. The idea that there is an entity other than MGA that is a better, and more accessible, source for information about MGA's claims is absurd, and MGA does not even try to substantiate it.[22]    Nor can MGA avoid the interrogatories because it may, at some unspecified future time, produce documents containing an answer. These are contention interrogatories, going to the core of MGA's claims. Mattel is entitled to the information now, not at some uncertain and remote date.

**D.    The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information That May Be Subject To Expert Analysis**

MGA objects to the interrogatories as "premature" because they seek information that "may be the subject of expert witness analysis and testimony."[23] The Court has already rejected in this case the claim that because information may be subject to expert testimony, it is premature to seek discovery or that discovery may otherwise be withheld. See Civil Minutes, dated July 2, 2007, at 5 ("That net worth is generally the subject of expert testimony at trial -- a proposition disputed by

---

[22]   MGA's objection is especially puzzling given its repeated argument to the Discovery Master that discovery should first be directed to it, not third parties, as an alleged basis to quash subpoenas.
[23]   MGA's Supplemental Objections and Responses to Mattel's Seventh Set of Interrogatories (Nos. 48-50), Corey Dec., Exh. 3.

Exhibit 19
Page 327

1 | neither Mattel nor the Court -- does not render it an improper subject for a Rule

2 | 30(b)(6)"), Corey Dec., Exh. 12; see also Roberts v. Heim, 130 F.R.D. 424, 429-30

3 | (N.D. Cal. 1989) (overruling objection on the ground that the response was

4 | dependent, in part, on expert testimony and compelling plaintiffs to answer the

5 | interrogatory); King, 117 F.R.D. at 5 ("while an expert . . . may be necessary to

6 | refine the evidence of their losses, the plaintiffs must have had some factual basis

7 | for concluding they had sustained losses at the time the complaint was filed . . . It is

8 | no answer for plaintiffs to assert that they will need . .. to consult with an expert to

9 | determine their losses. They should have answered the interrogatories with such

10 | information as they then possessed"). MGA's objections should be overruled.

11 | **E.    The Discovery Master Should Overrule MGA's Undue Burden**

12 | **Objection to Interrogatory No. 50**

13 | MGA claims that Interrogatory No. 50 is unduly burdensome because it

14 | requires MGA "to compile detailed financial reports of information not reasonably

15 | available solely for the purpose of responding to the interrogatory." This objection

16 | must be overruled for several reasons. First, burden objections must be specific and

17 | supported by evidence, as both the prior Discovery Master[24] and the current

18 | Discovery Master[25] have held. Here, MGA fails to specify the burden involved,

19 | much less to submit proof of its substantiality.[26]   Second, this is a contention

20 |

21 |

22 | [24]  See, e.g., Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 14

23 | ("Once again, MGA has failed to substantiate any of its objections with supporting declarations or legal authorities.").

24 | [25]  See Order No. 11, March 30, 2009, at 18 ("The MGA parties do not provide any supporting declaration or specific evidence to support their assertion of

25 | burden").

26 | [26]  See Fed. R. Civ. P. 33(b)(4) (grounds for objecting to an interrogatory must

27 | be stated "with specificity"); Nagele v. Electronic Data Systems Corp., 193 F.R.D. (footnote continued)

28 |

00505.07975/2868281.2

-13-

Exhibit  19
Page  328

1    interrogatory that goes to the core of MGA's claims.  There can be no undue burden

2    in requiring a party to identify its own claims and the factual basis for those claims.

3    See Auto Meter Prods., Inc. v. Maxima Technologies & Sys., LLC, 2006 WL

4    3253636, at *2-5 (N.D. Ill. 2006) (compelling defendant to answer interrogatories

5    requesting "all supporting facts, documents, exhibits, testimony and/or expert

6    opinions" in support of contentions); Tennison v. San Francisco, 226 F.R.D. 615,

7    618 (N.D. Cal. 2005) (requiring plaintiff to answer interrogatory that requested "all

8    facts" supporting denial of allegation); Dang v. Cross, 2002 WL 432197, at *4 (C.D.

9    Cal. 2002) (affirming magistrate judge's holding that interrogatories requesting "all

10   facts" in support of a denial of a statement were not unduly burdensome); King, 117

11   F.R.D. at  7 (holding that plaintiffs must undertake a "studied and diligent effort to

12   gather the required data and information" to adequately respond to interrogatories

13   with "concrete and detailed information"); Am. Oil Co. v. Penn. Petro. Co., 23

14   F.R.D. 680, 683 (D.R.I. 1959) ("Since the information sought here will undoubtedly

15   be assembled by the defendant prior to trial in the preparation of its defenses, it

16   cannot be said that these interrogatories are objectionable as being burdensome.").[27]

17

18   _____

19   94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting
     party failed to particularize basis for objection).  See also Jackson v. Montgomery
20   Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a
21   discovery request is unduly burdensome must allege specific facts which indicate
     the nature and extent of the burden, usually by affidavit or other reliable evidence.")
22   (citing Burton Mechanical Contractors, Inc. v. Foreman, 148 F.R.D. 230, 233 (N.D.
23   Ind. 1992)).
     [27]   See also Twigg v. Pilgrim's Pride Corp., 2007 WL 676208, at *11-12 (N.D.
24   W. Va. 2007) (holding interrogatory asking party to state "each fact" in support of
25   contention is proper); Williams v. The Art Inst. of Atl., 2006 WL 3694649, at *7
     (N.D. Ga. 2006) (granting plaintiff's motion to compel as to interrogatories asking
26   defendant to "[s]tate all facts that support defendant's contentions"); Audiotext
27   Comm. Network, Inc. v. U.S. Telcomm., Inc., 1995 WL 625953, at *1 (D. Kan.
         (footnote continued)
28

00505.07975/2868281.2

-14-

Exhibit  A
Page  329

1    Furthermore, as the Discovery Master has ruled, whether an undue burden
2  exists depends on the value of the information sought versus the burden alleged by
3  the responding party.[28]   Interrogatory No. 50 indisputably seeks information central
4  to MGA's claims against Mattel.   Isaac Larian has claimed that MGA will be
5  seeking "billions" of dollars in damages from Mattel.[29]   Thus, any burden of
6  compiling this information is *not* undue in light of the scale of claims in this
7  litigation and the importance this information holds to the claims at issue in Phase 2.
8  See Phase 2 Discovery Matter, Amended Order No. 11, dated March 31, 2009,
9  Corey Dec., Exh. 13, at 12-13 (explaining that given the importance of certain
10 information and in light of the wide-ranging extent of discovery, MGA should be
11 compelled to produce the information); Capacchione v. Charlotte-Mecklenburg
12 Schools, 182 F.R.D. 486, 491 (W.D.N.C. 1998) ("Requiring a responding party to
13 perform extensive research or to compile substantial amounts of data and
14 information does not automatically constitute an undue burden . . . Imposing such a
15 burden is particularly proper where, as here, the information sought is crucial to the
16 ultimate determination of a crucial issue and where the location of the documents is
17 best known by the responding party."); King, 50 F.R.D. at 136 (overruling

18 _____

19
20 1995) (approving contention interrogatories seeking "all facts" because "parties 'are
   entitled to know the factual basis' of the claims, defenses, or denials of their
21 opponents"); Pension Ben. Guar. Corp v. Ziffer, 1994 WL 11654, at *1 (N.D. Ill.
   1994) (interrogatories asking for "all facts" supporting contentions "are
22 appropriately made"); Schaap v. Executive Indus., Inc., 130 F.R.D. 384, 388 (N.D.
23 Ill. 1990) (compelling responses to interrogatories seeking factual bases for
   contentions because "for the litigation to proceed fairly and effectively, there must
24 be mutual access to all relevant facts.").
25 [28]   Phase 2 Discovery Matter, Amended Order No. 11, dated March 31, 2009,
   Corey Dec., Exh. 13, at 16:9-11.
26 [29]   Transcript of ABC Nightline, dated December 23, 2006, at 6, Corey Dec.,
27 Exh. 18.

28

00505.07975/2868281.2

-15-

Exhibit 19
Page 330

1    defendant's objection that interrogatory was burdensome and oppressive, even
2    though preparation of answer would be time-consuming and costly, because
3    information was crucial to the issues of the suit and in exclusive custody of
4    defendant); <u>Seff v. General Outdoor Advertising Co.</u>, 11 F.R.D. 597, 598 (N.D.
5    Ohio 1951) (overruling "overly burdensome" objection because value of
6    information to plaintiff clearly outweighed any annoyance or expense involved in
7    disclosure by defendant).

8        MGA's burden objection to Interrogatory No. 50 should be overruled.

9                             **Conclusion**

10        For the foregoing reasons, the Discovery Master should overrule MGA's
11    objections and order MGA to provide complete responses to Mattel's Interrogatory
12    Nos. 48-50.

13

14    DATED:  April 3, 2009               QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

15

16                               By  /s/ Jon Corey

17                                 Jon Corey
                                    Attorneys for Mattel, Inc.

18

19

20

21

22

23

24

25

26

27

28

00505.07975/2868281.2

Exhibit 19
Page 331

# Exhibit 20



1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile:  213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12   CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                        **Consolidated with**
14        v.                            **Case No. CV 04-09059**
                                        **Case No. CV 05-2727**
15   MATTEL, INC., a Delaware
     corporation,                       **PHASE II DISCOVERY MATTER**
16
                Defendant.              **ORDER NO. 3, REGARDING:**
17
                                            **(1) MOTION OF MGA**
18                                          **ENTERNTAINMENT, INC.,**
                                            **ISAAC LARIAN AND MGA**
19                                          **ENTERTAINMENT (HK)**
                                            **LIMITED TO QUASH**
20                                          **NON-PARTY SUBPOENAS; and**

21                                          **(2) MOTION OF MATTEL, INC.**
                                            **TO COMPEL PRODUCTION OF**
22                                          **DOCUMENTS RESPONSIVE TO**
                                            **THE SAME NON-PARTY**
23                                          **SUBPOENAS**

24   ┌─────────────────────────────┐
25   │ CONSOLIDATED WITH           │
     │ MATTEL, INC. v. BRYANT and  │
26   │ MGZ ENTERTAINMENT, INC. v.  │
     │ MATTEL, INC.                │
27   └─────────────────────────────┘

28   ─────────────────────────────────────────────────────────────
ARENT FOX LLP                    1              ORDER NO. 3
ATTORNEYS AT LAW                          [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

Exhibit 20
Page 332

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2  MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3  (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4  and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5  documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6  4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8  March 4, 2009.  All interested parties were represented by counsel and afforded the

9  opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument thereon, rules as set forth below.

12  **I.    INTRODUCTION**

13

14    **A.    The Court's February 11, 2009 Ruling**

15    On February 11, 2009, the Court heard oral argument on various motions

16  filed by the parties.  During the proceedings, counsel took the opportunity to orally

17  request clarification by the Court regarding whether the parties' respective motions

18  relating to the subpoenas served by Mattel on various entities allegedly related to

19  MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20  prior orders.

21    In response, the Court stated: "I will instruct the Discovery Master this

22  afternoon, in no uncertain terms, that there is no stay on any discovery related to

23  this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24  99:8 – 10).  Counsel for MGA then referred to the fact that the Court had

25  previously declined to allow Mattel to serve certain discovery accompanying

26  Mattel's motion for a receiver and characterized the third-party subpoenas as an

27  attempt to circumvent the Court's ruling.  (Tr., 101:12 – 17).  In response, the Court

28  stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -       ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 333

1

2         Then the question becomes – and this is a question for the
Discovery Master, not for this Court – whether or not the
3         discovery is related to Phase 2. If it is, it is. I'm not going to
pass any judgment whatsoever. I'm going to leave that
4         completely up to the Discovery Master. … The question for the
5         [D]iscovery [M]aster will be whether or not the disputed
discovery request is related or relevant to the trial that has now
6         been scheduled for March [2010] or not.

7 (Tr., 101:18 – 22; 103:1 – 3).

8       The Discovery Master understands the Court's ruling as indicating that, in
9
deciding the motions relating to the Subpoenas, the Discovery Master should
10
consider whether there is a nexus between the information sought by the
11
Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial
12
in March 2010, on the other hand. If the information sought by the Subpoenas is, to
13
use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]
14
trial," then that information could potentially be the subject of appropriate
15
discovery requests by Mattel.[1]
16
    **B.**    **Information Sought By The Subpoenas**
17
      The information sought by Mattel's Subpoenas falls into two broad
18
categories. First, Mattel seeks documents from third parties Omni 808 Investors,
19
LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing
20
Entities") involving, among other things, their internal ownership and operations
21
and their role in providing financing to MGA during the summer of 2008 (the
22

23    [1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
24 inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
25 claims, (*Id.*, pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2. (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
26 in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
27 Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
28 Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

**Exhibit** 20
**Page** 334

1   "Financing Discovery"). Based on the information presented at the February 11,

2   2009 hearing and in connection with the pending motions, it does not appear that

3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4   an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5         Second, Mattel seeks documents from third parties IGWT Group, LLC and

6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8   "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9   owned and/or controlled by Larian. (*See, e.g.*, MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13  **II.**   **MGA's Motion To Quash**

14         Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17      **A.**   **Legal Standard**

18         As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24   [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26   legitimate Phase 2 issue, seek to obtain this information from MGA.

27   [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and

28   that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 335

1    with the subpoena would be unreasonable and oppressive" (internal quotations

2    omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3    burden of proving that a subpoena is oppressive is on the party moving to quash];

4    *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5    burden is on the movant to establish that a subpoena duces tecum should be

6    quashed]).   "The burden is particularly heavy to support a 'motion to quash as

7    contrasted to some more limited protection.'"   (*Westinghouse Electric Corp. v. City

8    of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9    supported by two affidavits]).

10      **B.     Arguments Made By MGA In Support Of Its Motion To Quash**

11          The sole argument set forth in MGA's Motion to Quash is that the Court's

12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13   information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14   But that argument fails for the reasons set forth above.   The Court made it clear at

15   the hearing on February 11, 2009 that:

16          There is no stay on discovery. Period. . . . . [The forensic auditor
17          appointed by the Court] is acting at the Court's discretion to
         inform the Court of information. . . . That's an entirely separate
18          matter.  And I have not stayed any discovery and there should be
19          no reliance on that.  If that was misunderstood, it's clarified now.

20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21          Recognizing that its only argument has been rejected by the Court, MGA

22   argues for the first time in its Reply that its Motion to Quash should be granted

23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25   However, MGA did not make this argument in its opening brief.  It instead declared

26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27   is beside the point."   (*Id.*, p. 5).  Because MGA did not address the relevance of the

28   subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 336

1   consider the argument in connection with the Motion to Quash.

2      The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers. A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond. This rule is routinely adhered to by courts in the Ninth

7   Circuit. (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13      Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17   below).

18      Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would

25   not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to

27   Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas .

28   . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 337

1    **III.    Mattel's Motions To Compel**

2          **A.      The Purported Procedural Defects Barring Mattel's Motions To**

3                   **Compel**

4          MGA, the Financing Entities, and the Transferee Entities all argue that that

5    Mattel's Motion to Compel should be denied on several different procedural

6    grounds.

7                        **1.      The Court's January 7, 2009 Order**

8          As an initial matter, the Transferee Entities and the Financing Entities repeat

9    the argument made by MGA in its Motion to Quash that the Court's January 7,

10   2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11   sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to

12   Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13   pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's

14   Motion to Quash and is rejected for the reasons discussed in Section II above.

15                       **2.      Local Rule 37**

16         The Financing Entities and the Transferee Entities also argue that Mattel's

17   Motion to Compel should be denied because Mattel failed to comply with Local

18   Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19   stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20   and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21   [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished

22   from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23   discovery disputes in this case. Rather, the applicable procedure is the one adopted

24   by the Court in its order appointing a discovery master dated December 6, 2006

25   ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

26

27   ───────────────

     [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a

28   discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery
     Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

Exhibit  20
Page  338

1   "all third parties subject to discovery requests . . . in this litigation shall be bound

2   by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3   order applies to the Financing Entities as well as the Transferee Entities, and its

4   procedures replace those set forth in Local Rule 37.  (*Id.*, p. 4).

### 3.   Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7        The Financing Entities and MGA further argue that Mattel's Motion to

8   Compel should be denied because it exceeds the page limitations set forth in Local

9   Rule 11-6 and Paragraph 4(b) of the Court's Standing Order.  (*See* Financing

10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11  Mattel's Motion to Compel, pp. 18 - 19).  Each of these contentions is unavailing.

12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13  governs discovery disputes in this case, and it does not impose any page limit on

14  such motions.[7]  In fact, the Discovery Master Order dispenses with the formatting

15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16  even permits the parties to agree to alternative procedures, including, presumably,

17  filing briefs that are more than 25 pages in length.  (*See* Discovery Master Order, p.

18  4).  Thus, while the Discovery Master encourages the parties to be as efficient as

19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20  directly permitted under the Discovery Master Order (since no page limitation was

21  imposed by the Court) or implicitly allowed (since the parties may agree to

22  alternate procedures).  He further recognizes that the complex nature of this case

23  may periodically necessitate the filing of briefs that exceed 25 pages.[8]  For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 339

1    these reasons, filings in excess of 25 pages are permitted.[9]

2        **4.    Local Rule 6-1**

3        The Financing Entities argue in passing that Mattel's motion to compel

4    should be denied because it violates Local Rule 6-1. (Financing Entities'

5    Opposition to Mattel's Motion to Compel, p. 6).    However, the Discovery Master

6    Order adopts a completely different set of deadlines than the Local Rules for the

7    filing of motions, oppositions and replies, and a different schedule for noticing

8    hearing dates. (Discovery Master Order, p. 4).  Therefore, Local Rule 6-1 has no

9    applicability here.

10        **5.    Failure To Name MGA In The Motion To Compel**

11        MGA next argues that Mattel's motion to compel is procedurally improper

12    because MGA was not named in the Motion to Compel and Mattel should not be

13    allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14    to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15    Master has found none, standing for the proposition that a party must name in its

16    motion to compel all parties who have objected to an underlying subpoena even if

17    they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18    Motion to Compel should have been brought against MGA makes no sense given

19    that it could not possibly comply with any order compelling a response to the

20    Subpoenas.

21        **6.    Mattel's Separate Statement**

22        MGA also contends that Mattel's Motion to Compel should be denied

23    because its' separate statement "is another classic example of . . . inefficiency."

24    (*Id.*, p. 19).  Once again, nothing in the Discovery Master Order prevents a party

25    from filing a separate statement that first identifies the request in dispute and then

26

27    _____

28    [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    - 9 -

                                        ORDER NO. 3
                                [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 340

1   sets forth the various contentions of the parties, even if the information regarding

2   the various requests happens to be repetitive.  Regardless, MGA has not cited any

3   legal authority in support of its position and the Discovery Master finds no reason

4   to dispose of Mattel's Motion to Compel merely because it filed a separate

5   statement that contains duplicative arguments.[10]

6           **7.    Meeting And Conferring**

7           As their final procedural argument in opposition to the Motion to Compel,

8   the Transferee Entities and the Financing Entities assert that the motion should be

9   denied because Mattel failed to adequately meet and confer prior to filing the

10  motion.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12          **a.    Applicable Procedure**

13          Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

19          moving party shall first identify each dispute, state the relief
            sought, and identify the authority supporting the requested relief
20          in a meet and confer letter that shall be served on all parties by
            facsimile or electronic mail.  The parties shall have five court
21          days from the date of service of that letter to conduct an in-person
            conference to attempt to resolve the dispute.  If the dispute has
22          not been resolved within five court days after such service, the
            moving party may seek relief from the Discovery Master by
23          formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27  _____
    [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28  separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 341

        **b.**    **Mattel's Meet And Confer Regarding The Financing Entities**

In challenging Mattel's meet and confer effort, the Financing Entities first claim that Mattel violated the Discovery Master Order because no "in-person meeting occurred."  (Financing Entities' Opposition to Mattel's Motion to Compel, p. 8).  But that argument is without merit, since Mattel and the Financing Entities agreed to an alternative procedure that disposed of the in-person meet and confer requirement.[11]  Indeed, MGA's counsel sent counsel for Mattel, counsel for the Transferee Entities and counsel for the *Financing Entities* a letter on January 23, 2009 memorializing the parties' agreement and establishing a schedule whereby the parties would "meet and confer on January 29 and 30 . . ."  (Mattel's Reply in Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10; Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2).  That the Financing Entities' counsel received this letter and acted in accordance with its terms is evidenced by, among other things, the fact that they served objections to the Subpoenas on January 28, 2009 (which was the deadline specified in the January 23 letter) and started meeting and conferring with Mattel's counsel telephonically on January 30.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3 and 4).  Accordingly, Mattel did not have any obligation to meet with the Financing Entities in person since the parties had agreed to waive that obligation.

Nevertheless, Mattel still had an obligation to meet and confer with the Financing Entities in good faith.  Good faith cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means.  (Fed. R. Civ.

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference.  However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 342

1  Proc. 37(a)(1)).

2      Because the evidence and declarations submitted by Mattel and the Financing

3  Entities are in conflict regarding what transpired during their respective meet and

4  confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5  Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6  February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7  doubt and concludes that it adequately met and conferred with respect to Omni 808

8  Investors, LLC and Vision Capital, LLC.

9      By contrast, Mattel arguably did not even begin the meet and confer process

10 with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11 for the Financing Entities informed Mattel that they did not receive that Subpoena

12 until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13 date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5).  No

14 "good faith" meeting could therefore have taken place.

15     Although the meet and confer with respect to OmniNet Capital, LLC was

16 inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17 Motion to Compel in all respects, including concerning the Subpoena served on

18 OmniNet Capital, LLC.  The Discovery Master does so for purposes of efficiency

19 (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20 LLC are essentially identical to those that must be addressed in connection with the

21 subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22 because addressing the merits of the motion does not alter the outcome.[12]

23          **c.    Mattel's Efforts To Meet And Confer Regarding The**

24                 **Transferee Entities**

25     Like the Financing Entities, the Transferee Entities contend that Mattel's

26 motion to compel should be denied because it did not meet and confer in good faith.

27

28  ---

[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 343

1    (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).  Yet, the

2    Transferee Entities concede that their counsel engaged in multiple meet and confer

3    teleconferences.   (*Id.* at pp. 3 - 4).  Several emails and letters were also exchanged

4    between the parties as part of the meet and confer process.  (*Id.*).  In light of these

5    interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6    favor of resolving the issues on the merits and concludes that it adequately met and

7    conferred with the Transferee Entities.

8         **B.    Legal Standard Governing Enforcement Of The Subpoenas**

9         Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . .. The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence."  Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18        The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden.  Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -                ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 344

1        Moreover, the Federal Rules distinguish between discovery from non-parties

2  to a lawsuit (governed under Rule 45) and discovery from parties (governed

3  generally by Rule 26), based in part on the recognition that the former is inherently

4  more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5  *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6  significant when determining whether compliance with a discovery demand would

7  constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8  F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9  is one factor that the Court may weigh in determining whether the discovery

10  requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11  have interpreted these rules to afford non-parties special heightened protection

12  against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14        Accordingly, requests for documents that pertain to a party and that can be

15  more easily and inexpensively obtained from that party also impose an undue

16  burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17  Further, if the documents sought are neither relevant nor calculated to lead to the

18  discovery of admissible evidence, "then any burden whatsoever imposed upon the

19  non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20  *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21        Each of the moving parties bears the burden of establishing the basis for the

22  relief it seeks. As the party moving to compel compliance with the Subpoenas,

23  Mattel bears the burden of "establishing that the information sought is relevant and

24  necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25  *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26        Finally, in deciding whether to enforce a subpoena, the Discovery Master

27  must balance "the relevance of the discovery sought, the requesting party's need,

28  and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 345

1    *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2    *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3        **C.**    **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4        As its first ground for moving to compel production of the documents sought

5    by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6    making it necessary and appropriate for Mattel "to obtain an accurate understanding

7    of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8    Mattel, MGA's supposed misrepresentations have placed its financial condition at

9    issue, and have opened the door to discovery of any information bearing on MGA's

10   finances.  (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11   own statements *alone*."] (emphasis added)).

12       However, after Mattel filed its Motion, the Court made it clear that the

13   validity of the Subpoenas must be evaluated with reference to whether they relate to

14   the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15   Court's ruling, the Subpoenas cannot be justified merely because they seek

16   information regarding some contention made during Phase 1, without regard to

17   Phase 2.  In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18   suffice to render that fact the proper subject of discovery in Phase 2.

19       Thus, to the extent Mattel's first argument asserts that MGA's statements,

20   standing alone, warrant discovery from the Subpoena recipients, that argument is

21   rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22   finances is warranted in light of the issues to be adjudicated in Phase 2.

23       Further, even if Mattel were not required to demonstrate some nexus between

24   the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25   Subpoenas are justified because MGA placed its financial condition at issue would

26   still fail for the simple reason that Mattel is not seeking discovery from MGA but

27   rather *non- parties*. Mattel does not cite any statements or conduct by the

28   //

Exhibit 20
Page 346

1      Financing Entities putting their financial affairs at issue in this litigation.[13]

2 Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3 to the Financing Entities and construed as their consent to discovery of their

4 internal financial affairs. Such an assumption is unwarranted.

5      **D.**     **Mattel's Contention That The Subject Discovery Is Relevant To**

6         **Phase 2**

7        **1.**     **Subpoenas To The Financing Entities**

8     Mattel next argues that the Subpoenas to the Financing Entities seek

9 information relevant to a variety of Phase 2 issues.[14]

10        **a.**     **Mattel's RICO Counterclaim**

11     Mattel first asserts in its Motion to Compel that the discovery it seeks is

12 relevant to its RICO counterclaim because "Mattel alleges that the counter-

13 defendants have operated a widespread criminal enterprise that has engaged in

14 numerous acts of mail and wire fraud and other predicate acts in violation of the

15 RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16 non-operating entities" is "a continuation of that pattern of racketeering activity."

17 (Motion, p. 18).

18

---

19 [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of

20 them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has
been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing

21 Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
parties.

22 [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's

23 Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
(2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to

24 Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is
based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*

25 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As

26 for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to

27 when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines
to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to

28 strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 347

1   But Mattel's allegations in support of its RICO counterclaim turn on

2   misappropriation of trade secrets and confidential information, and make no

3   mention of improper transfers of funds or any other predicate act similar to MGA's

4   purported business transactions with any of the Financing Entities.[15]   Accordingly,

5   these financial transactions are not a "continuation" of the "pattern" of conduct

6   Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7   *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8   RICO claimant must show "[a]n interrelationship between acts, suggesting the

9   existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17   At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   ---

[15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA

24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed

25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in

26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises because they are "designed to and did unlawfully acquire the confidential business information and property of

27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to

28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-defendants "schemed to defraud Mattel and steal its property and trade secret information"].

Exhibit 20
Page 348

1    transactions Mattel seeks to investigate here.[16]

2          Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10         In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16                 **b.       Mattel's Disgorgement Remedy**

17         Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372

23   (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated, among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the

24   Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of

25   this motion, money laundering." (*Id.*, at 375). "The alleged money laundering consisted of repeated deposits into various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and

26   depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their nature, source and location – that is, by transferring funds between defendants and between various accounts

27   maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has

28   not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions with third parties.

Exhibit 20
Page 349

> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of the Financing Entities is alleged to have "received money that properly belonged to Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of MGA. Therefore, Mattel has not demonstrated how any of the categories of documents sought from the Financing Entities would aid it in ascertaining the amount defendants must disgorge.

### c.   Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they "seek documents relevant to MGA's financial condition" and other "factors relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22). Depending on the particular scope of the document request, such discovery from Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages).[17] As the Court noted in its February 11, 2009 ruling:

> I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

Exhibit 20
Page 350

1    financial condition of the company as it relates to damages in the
2    Phase 2 and also issues that the receiver is looking at. And
     without making a ruling on any of this, I would not suggest for a
     moment that these are mutually exclusive categories.

3    (Tr., 101:3 - 8)

4        Mattel argues that the necessary connection between the Financing

5    Discovery and Phase 2 damages exists because the Financing Entities have acquired

6    a security interest in MGA's assets, which, in turn, affects MGA's financial

7    condition.  Specifically, Mattel argues that Omni 808 Investors, LLC is:

8
9        directly involved in providing funding to MGA in exchange for a
         security interest. Such funding, and security interests, are in and
         of themselves directly relevant to the financial condition of the
10       MGA Parties, including the amount of the security interests, the
         terms and conditions of the funding, and the rate of funding. . . .
11
12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   _____
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase 1 trial. (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

     [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                            - 20 -                    ORDER NO. 3
                                                              [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 351

1   would require the Financing Entities to produce virtually every document in their

2   possession regarding their formation, operations, and history of transactions.

3   Among other things, the Subpoenas to the Financing Entities seek:

4       •    All records that "substantiate transfers of assets" by the Financing

5           Entities "to other entities, individuals, and/or parties, within the U.S.

6           and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7           of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8           Motion To Compel Production of Documents Responsive to Third-

9           Party Subpoenas, Attachment A, ¶ 16);

10       •    All documents "detailing or setting forth the relationship" between

11           each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12       •    All documents referring or relating to the "all contributions, loans and

13           any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14       •    All documents referring or relating to the "source of funding" of other

15           non-parties (*Id.* at ¶ 16);

16       •    All documents showing detail of "all loan facilities" referring or

17           relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18       •    All documents referring or relating to "transactions involving any

19           compensation, loans, advances, payments, fees or any other form of

20           consideration" paid to other non-parties (*Id.* at ¶ 15);

21       •    All "communications" referring or relating to the Financing Entities

22           and other non-parties (*Id.* at ¶ 17).

23       Accordingly, the Discovery Master concludes that most of the categories of

24   documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25   the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26   Section IV below (entitled "Disposition").

27   //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 352

1     **d. Credibility Of MGA Witnesses**

2   Mattel's fourth argument consists of a single, conclusory paragraph asserting

3 that it is entitled to its discovery in order to determine the credibility of MGA's

4 witnesses. To support this argument, Mattel first states that information is

5 discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel,

6 p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D.

7 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made

8 statements under oath about their financial condition as well as about the role of

9 Omni 808 and the other non-operating entities in providing MGA with additional

10 funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not

11 attempt to show that the specific discovery that it has propounded is reasonably

12 calculated to lead to the discovery of the evidence that it contends would be

13 admissible.

14   Discoverable information generally includes evidence relevant to the

15 credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285,

16 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D.

17 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D.

18 Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the

19 discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is

20 liberally interpreted to permit wide ranging discovery of all information reasonably

21 calculated to lead to discovery of admissible evidence."]) But Mattel has not taken

22 any steps to connect its discovery to such evidence. As discussed above, Mattel

23 bears the burden of demonstrating that its discovery is reasonably calculated to lead

24 to the discovery of admissible evidence. Here, Mattel has only stated that

25 credibility evidence can be admissible and that credibility is at issue in this case –

26 without referring at all to specific categories of documents in the Subpoenas or

27

28 [20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

Exhibit 20
Page 353

1   linking those categories of documents to prior or anticipated testimony of MGA's

2   witnesses. Simply stating that credibility evidence is discoverable does nothing

3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4   here is reasonably calculated to lead to the discovery of such evidence.

### e.    MGA's Unclean Hands

6        Mattel next argues in its Motion to Compel that MGA has asserted an

7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9   sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.) But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16       Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

Exhibit 20
Page 354

1    1996)).

2          Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA). Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11                    f.      **Mattel's Unfair Competition Counterclaim**

12         As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all.  Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

Exhibit 20
Page 355

1     **g.** **Summary Of The Discovery Master's Findings With**

2       **Respect To The Subpoenas Directed To The Financing**

3       **Entities**

4    For the foregoing reasons, the Discovery Master finds that, based on the

5 record before him, Mattel has failed to sufficiently articulate the necessary

6 connection between most of the Financing Discovery and any Phase 2 issue.

7 Moreover, while there is a connection between the Financing Discovery and some

8 of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9 Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10 Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11 discovery is permissible in light of the case law interpreting Rules 26 and 45.

12    Accordingly, Mattel's motion to compel the Financing Entities to comply

13 with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14    **2.** **Subpoenas To The Transferee Entities**

15    In their briefs regarding the enforceability of the Subpoenas, Mattel and

16 MGA do not, as a general rule, make a distinction between the Financing Entities

17 and the Transferee Entities, but rather direct the same arguments to both groups

18 collectively. However, there are important distinctions between the two groups,

19 including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20 with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21 sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22 pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23 documents relevant to Phase 2 issues which presumably cannot be obtained from

24 MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25 parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas

26 directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27 parties' above-referenced arguments differs, as follows.

28 //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 356

1         a.    **Non-Party Considerations**

2         To begin with, the distinction between a party and non-party here is less

3  compelling given the MGA parties' apparent admission that the Transferee Entities

4  are single purpose entities created and controlled by Larian (who is, of course,

5  himself a party) to dispose of inventory that is the subject of this litigation.  Further,

6  the MGA parties presumably do not have custody of the sales contracts whereby

7  IGWT Group LLC sold Bratz products to third parties.  The Discovery Master also

8  notes that counsel for the Transferee Entities has submitted a declaration stating

9  that there are "hundreds of sales contracts at issue, and as such, thousands of

10  documents responsive to Mattel's requests."  (Declaration of Jeffrey B. Valle dated

11  February 17, 2009 ["Valle Decl."], ¶ 7).  The unavailability of these relevant

12  documents from any other source weighs heavily in favor of enforcing the

13  Subpoena to IGWT Group LLC.

14         b.    **Relevance To Phase 2 Issues**

15             1.    **Phase 2 Damages**

16         As mentioned above, Mattel argues that the Subpoenas "seek documents

17  relevant to MGA and Larian's financial condition, net worth, and ability to pay" on

18  the ground that such information is relevant to Mattel's Phase 2 damages claims,

19  including Mattel's claim for punitive damages.

20  For the reasons previously discussed, the Discovery Master finds that, with respect

21  to the Financing Entities, the discovery requests were, for the most part overbroad,

22  and/or not sufficiently linked to Phase 2 issues.  However, the Discovery Master's

23  analysis is necessarily different with respect to entities which were created and

24  apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and

25  which are admittedly selling inventory which generate revenues in which Mattel

26  has an interest.  Specifically, Mattel contends that Larian has caused MGA to sell

27  the inventory at a deep (80%) discount to the Transferee Entities.  This practice, if

28  true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 351

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.    Mattel's Unfair Competition Counterclaim**

7          Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10  Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11  practice within the meaning of the Unfair Competition Law and the scope of

12  Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13  imposes a constructive trust on the proceeds of MGA's sale of the subject

14  inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15  Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16  Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17  such conduct would constitute an unlawful attempt to circumvent the Court's order

18  and arguably render the transaction between MGA and the Transferee Entities an

19  anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20  manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21  could violate the Unfair Competition Law.

22         Moreover, although Mattel asserted its counterclaim for violation of the

23  Unfair Competition Law prior to the alleged misconduct (and long before the

24  Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26  _____

[21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 359

1    enough to potentially encompass subsequent acts of unfair competition which

2    perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3    RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4    not purport to rest on a list of enumerated, factually detailed and carefully defined

5    acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6    of unfair competition" which include, "without limitation" certain illustrative

7    examples.  (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will

9    ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11   will seek (and the Court permit) amendment of the counterclaim to expressly

12   reference such alleged misconduct.  Nevertheless, in light of the fact that the

13   discovery need only appear reasonably calculated to lead to the discovery of

14   admissible evidence, the Discovery Master finds that certain aspects of the

15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16              **c.      Summary Of The Discovery Master's Findings With**

17                       **Respect To The Subpoenas Directed To The**

18                       **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently

20   articulated a connection between some of the Transferee Discovery and its Phase 2

21   claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.   Disposition**

24       1.   The Motion to Quash filed by MGA is **DENIED**.

25       2.   Mattel's Motion to Compel the Financing Entities to produce

26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27   Capital, LLC and Vision Capital, LLC.

28       3.   Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 20
Page 359

1    documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2    **DENIED** in part, as follows:

3         a.    Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4    with respect to documents relating to (1) the existence of any debt owed by MGA

5    Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6    from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7    LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8    regarding any other documents sought by these requests.

9         b.    Requests 4 through 12, 14 and 18:  The Motion is denied.

10        4.    Mattel's Motion to Compel the Transferee Entities to produce

11   documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12   IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13        5.    Mattel's Motion to Compel the Transferee Entities to produce

14   documents responsive to the Subpoenas is **GRANTED**, as follows:

**<u>Subpoena To IGWT Group LLC</u>**

16        a.    Request 1:  The Motion is granted with respect to documents

17   relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18   including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19   or their spouses, or any entity or person affiliated with them.

20        b.    Request 2:  The Motion is granted

21        c.    Request 3:  The Motion is granted with respect to documents

22   relating to any ownership interest by Larian, his spouse, his children, his siblings,

23   or their spouses, or any entity or person affiliated with them.

24        d.    Request 4:  The Motion is granted with respect to documents

25   relating to any sources of funding by Larian, his spouse, his children, his siblings,

26   or their spouses, or any entity or person affiliated with them.

27        e.    Request 5:  The Motion is granted with respect to documents

28   relating to any compensation, loans, advances, payments, fees or any other form of

**Exhibit** 20
**Page** 360

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3        f.    Request 7: The Motion is granted.

4        **Subpoena To IGWT 826 Investments LLC**

5        a.    Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9        b.    Request 2: The Motion is granted

10        c.    Request 3: The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13        d.    Request 4: The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16        e.    Request 5: The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20        f.    Request 7: The Motion is granted.

21      5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24      6.    Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

Exhibit 20
Page 361

1    Dated:  March 10, 2009

2

3

4                                          By:        /s/ Robert C. O'Brien
5                                                     ROBERT C. O'BRIEN
                                                     Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 20
Page 362

# Exhibit 21

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Plaintiff and Counter-
    Defendant Mattel, Inc.

8

9                       UNITED STATES DISTRICT COURT

10                    CENTRAL DISTRICT OF CALIFORNIA

11                            EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
13  |                               |                               |
    |          Plaintiff,           | Consolidated with             |
14  |                               | Case No. CV 04-09059          |
    |                               | Case No. CV 05-02727          |
15  |     v.                        |                               |
    |                               | MATTEL, INC.'S THIRD          |
16  |                               | SUPPLEMENTAL OBJECTIONS       |
    | MATTEL, INC., a Delaware      | AND RESPONSES TO MGA          |
17  | Corporation,                  | ENTERTAINMENT, INC.'S SECOND  |
    |                               | SET OF REQUESTS FOR           |
18  |                               | PRODUCTION OF DOCUMENTS       |
    |          Defendant.           | AND THINGS (NOS. 148, 162, AND|
19  |                               | 178) IN CASE NO. 05-2727      |
20  | AND CONSOLIDATED ACTIONS      | Hon. Stephen G. Larson        |
21  |                               |                               |
22  

23  PROPOUNDING PARTY:      MGA ENTERTAINMENT, INC.

24  RESPONDING PARTY:       MATTEL, INC.

25  SET NO.:                TWO

26  NOS.                    148, 162, 178

27

28

07975/2908259.1

         MATTEL'S THIRD SUPP. RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION

                                                    Exhibit 21
                                                    Page 363

**Preliminary Statement**

Mattel, Inc. ("Mattel") has not yet completed its investigation of the facts relating to this action, has not yet reviewed all documents relating to this action, has not yet interviewed all witnesses in this action, and has not yet received all requested discovery from defendants and third parties with regard to this action. Consequently, Mattel reserves the right to amend and/or supplement its responses if and when additional facts or documents are discovered. Additionally, because Mattel's responses are based on facts and documents that Mattel has identified to date, they do not preclude Mattel from later relying on facts discovered pursuant to further investigation or discovery or on subsequently discovered or generated documents. Mattel's response to any of MGA Entertainment, Inc.'s ("MGA") Second Set of Requests for Production of Documents and Things in Case No. 05-2727 (the "Requests") is not to be construed as a waiver of any of its objections or its right to object to any other request.

**General Objections**

Mattel generally objects to each of the Requests on each and every one of the following grounds, which are incorporated into and made a part of the response to each and every individual request:

1.     Mattel objects to the Requests on the grounds and to the extent that they seek to impose discovery obligations beyond those required or permitted by the Federal Rules of Civil Procedure.

2.     Mattel objects to the Requests on the grounds and to the extent they call for the production of documents subject to the attorney-client privilege, the attorney work product doctrine, the right to privacy as set forth in the United States and/or California Constitutions, or any other applicable law, privilege, immunity, doctrine or other ground of privilege. Mattel will not produce such privileged documents.

3.     Mattel objects to the Requests on the grounds and to the extent they are overly broad, unduly burdensome, oppressive or unreasonably cumulative.

4.     Mattel objects to the Requests on the grounds and to the extent they seek information which is not relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

5.     Mattel objects to the Requests on the grounds and to the extent they seek documents equally or more available to, or already in the possession, custody or control of MGA.

6.     Mattel objects to the Requests on the grounds and to the extent they seek documents not in Mattel's possession, custody or control.

7.     Mattel objects to the Requests on the grounds that they are unduly burdensome and vague and ambiguous in that they purport to require Mattel to identify and produce documents relating to matters that are currently known to and in the possession, custody and control of defendants and third parties, including third parties associated with defendants, and that are not known to Mattel.

8.     Mattel objects to the Requests on the grounds that they seek the production of documents or information that are in the possession, custody and control of independent parties over whom Mattel has no control, including without limitation defendants, and seek the disclosure of information or documents that are in the possession, custody and control of defendants or are publicly available and hence equally available to all parties to this litigation.

9.     Mattel objects to the Requests on the ground and to the extent they seek trade secret, proprietary or otherwise confidential information of Mattel or third parties or would violate the terms of any agreement or contracts with third parties.  Any such documents that are produced, if any, will be produced only pursuant to and in reliance upon the Protective Order entered in this case.

Exhibit 21
Page 365

10.     Mattel objects to the Requests on the grounds that the definitions of the terms "MATTEL," "MGA," and "BRATZ" are overbroad, vague and ambiguous, and unduly burdensome.

11.     Mattel objects to each and every Request that seeks "all" documents which constitute, mention, refer or relate to a given topic on the grounds of undue burden and oppression.  Mattel will make available for inspection and copying those documents and tangible items, if any, that it is able to locate after a reasonable, good-faith search for and review of non-privileged responsive documents.

12.     Mattel objects to each and every Request to the extent that they seek documents already produced in this action.  Documents which have already been produced will not be produced again in response to these requests.

13.     Objection to the production of any document or category of documents described in the Requests, or agreement to produce any such documents, is not and shall not be construed as an admission by Mattel that any such documents or category of documents exist.  Where the responses indicate that he will produce such responsive documents, such documents, if any, will be produced if and to the extent any such documents are in his possession, custody or control.

14.     Mattel objects to the time, place and manner of production specified in defendant's Requests.  Mattel will produce such responsive, non-privileged documents and tangible things, if any and to the extent not previously produced, in accordance with its responses at a time and place and in a manner that is reasonable, convenient and mutually agreed upon by the parties.

**SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS**

Each of the following objections and responses to the Requests is expressly made subject to the above Preliminary Statement and General Objections, all of which are incorporated in each of the following objections and responses to

07975/2908259.1

-3-

Exhibit 21
Page 366

1   specific requests.  A statement that Mattel will produce documents or tangible things

2   in response to a Request is not intended to suggest, nor should it be construed to

3   mean, that any such documents or tangible things exist, or that they are in Mattel's

4   possession, custody or control.

5

6   **REQUEST FOR PRODUCTION NO. 148:**

7           All DOCUMENTS REFERRING OR RELATING TO MATTEL's

8   involvement in the seizure of materials at the facilities of MGAE de Mexico, S.R.L.

9   de C.V. in Mexico City by Mexican authorities.

10

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

12          In addition to the general objections stated above which are

13  incorporated herein by reference, Mattel objects to this Request on the grounds that

14  it is overbroad, unduly burdensome and unintelligible, including in that it seeks all

15  documents on this subject without limitation as to time, and regardless of whether

16  such documents relate to products or matters at issue in this case.  Mattel further

17  objects to the Request on the grounds that it seeks documents that are not relevant to

18  this action or likely to lead to the discovery of admissible evidence.  Mattel further

19  objects to this Request on the grounds that it seeks confidential, proprietary and

20  trade secret information, including such information that has no bearing on the

21  claims or defenses in this case.  Mattel further objects on the grounds that the

22  Request seeks documents that are evidence in or pertain to criminal proceedings,

23  disclosure of which might interfere with such proceedings.  Mattel further objects to

24  this Request on the grounds that it calls for the disclosure of information subject to

25  the attorney-client privilege, the attorney work-product doctrine and other applicable

26  privileges.

27          Subject to the foregoing objections, Mattel responds as follows:  Mattel

28  will produce responsive, non-privileged documents that refer or relate to Mattel's

07975/2908259.1

-4-

MATTEL'S THIRD SUPP. RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION

Exhibit 21
Page 367

1  involvement, if any, in the seizure of materials at the facilities of MGAE de Mexico,

2  S.R.L. de C.V. in Mexico City by Mexican authorities that are in Mattel's

3  possession, custody, or control, if any, that Mattel has been able to locate after a

4  diligent search and reasonable inquiry, to the extent not previously produced.

5

6  **REQUEST FOR PRODUCTION NO. 162:**

7      All DOCUMENTS REFERRING OR RELATING TO MATTEL's

8  involvement in the seizure by Canadian law enforcement authorities of a thumb

9  drive from BRISBOIS referenced in paragraph 75 of YOUR COUNTERCLAIMS.

10

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

12      In addition to the general objections stated above which are

13  incorporated herein by reference, Mattel objects to this Request on the grounds that

14  it is overbroad, unduly burdensome and unintelligible, including in that it seeks all

15  documents on this subject without limitation as to time, and regardless of whether

16  such documents relate to products or matters at issue in this case.  Mattel further

17  objects to the Request on the grounds that it seeks documents that are not relevant to

18  this action or likely to lead to the discovery of admissible evidence.  Mattel further

19  objects to this Request on the grounds that it seeks confidential, proprietary and

20  trade secret information, including such information that has no bearing on the

21  claims or defenses in this case.  Mattel further objects on the grounds that the

22  Request seeks documents that are evidence in or pertain to criminal proceedings,

23  disclosure of which might interfere with such proceedings.  Mattel further objects to

24  this Request on the grounds that it calls for the disclosure of information subject to

25  the attorney-client privilege, the attorney work-product doctrine and other applicable

26  privileges.

27      Subject to the foregoing objections, Mattel responds as follows:  Mattel

28  will produce responsive, non-privileged documents referring or relating to Mattel's

1   involvement, if any, in the seizure by Canadian law enforcement authorities of a

2   thumb drive from BRISBOIS that are in Mattel's possession, custody, or control, if

3   any, that Mattel has been able to locate after a diligent search and reasonable

4   inquiry, to the extent not previously produced.

5

6   **REQUEST FOR PRODUCTION NO. 178:**

7        All DOCUMENTS REFERRING OR RELATING TO any

8   investigation, surveillance, inspection, inquiry, survey or analysis into the activities,

9   including but not limited to electronic and computer related activities, alleged in

10   YOUR COUNTERCLAIMS.

11

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 178:**

13        In addition to the general objections stated above which are

14   incorporated herein by reference, Mattel objects to this Request on the grounds that

15   it is overbroad, unduly burdensome and unintelligible, including in that it seeks all

16   documents on this subject without limitation as to time, and regardless of whether

17   such documents relate to products or matters at issue in this case.  Mattel further

18   objects to the Request on the grounds that it seeks documents that are not relevant to

19   this action or likely to lead to the discovery of admissible evidence.  Mattel further

20   objects to this Request on the grounds that it seeks confidential, proprietary and

21   trade secret information, including such information that has no bearing on the

22   claims or defenses in this case.  Mattel further objects on the grounds that the

23   Request seeks documents that are evidence in or pertain to criminal proceedings,

24   disclosure of which might interfere with such proceedings.  Mattel further objects to

25   this Request on the grounds that it calls for the disclosure of information subject to

26   the attorney-client privilege, the attorney work-product doctrine and other applicable

27   privileges.

28

1     Subject to the foregoing objections, Mattel responds as follows:  Mattel

2   will produce responsive, non-privileged documents relating to the discovery of

3   MGA's thefts of trade secret and other confidential Mattel information, as well as

4   other wrongful conduct alleged in Mattel's Counterclaims, that are in Mattel's

5   possession, custody, or control, if any, that Mattel has been able to locate after a

6   diligent search and reasonable inquiry, to the extent not previously produced.

7

8

9   DATED:  April 29, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

10

11                                  By /s/ B. Dylan Proctor
                                       B. Dylan Proctor
12                                     Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2908259.1

-7-

# Exhibit 22

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    michaelzeller@quinnemanuel.com
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Plaintiff and
   Counter-Defendant Mattel

8

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                       EASTERN DIVISION

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)

13 |                 Plaintiff,      | Consolidated with:
                                     | Case No. CV 04-09059
14 |                                 | Case No. CV 05-02727

15 |          v.                     | MATTEL'S SECOND
                                     | SUPPLEMENTAL RESPONSES TO
16 | MATTEL, INC., a Delaware        | MGA'S FIFTH SET OF REQUESTS
     Corporation,                    | FOR PRODUCTION (NOS. 486 AND
17 |                                 | 489)

18 |                 Defendant.      | Hon. Stephen G. Larson

19 | ─────────────────────────────

20 | AND CONSOLIDATED ACTIONS

21 | ─────────────────────────────

22 PROPOUNDING PARTY:       MGA ENTERTAINMENT, INC.

23 RESPONDING PARTY:        MATTEL, INC.

24 SET NO.:                 FIVE

25 NOS.                     486, 489

26

27

28

07975/2908516.1

1

## **Preliminary Statement**

2        Mattel, Inc. ("Mattel") has not yet completed its investigation of the

3  facts relating to this action, has not yet reviewed all documents relating to this

4  action, has not yet interviewed all witnesses in this action, and has not yet received

5  all requested discovery from defendants and third parties with regard to this action.

6  Consequently, Mattel reserves the right to amend and/or supplement its responses if

7  and when additional facts or documents are discovered.  Additionally, because

8  Mattel's responses are based on facts and documents that Mattel has identified to

9  date, they do not preclude Mattel from later relying on facts discovered pursuant to

10  further investigation or discovery or on subsequently discovered or generated

11  documents.  Mattel's response to any of MGA Entertainment, Inc.'s ("MGA") Fifth

12  Set of Requests for Production of Documents and Things in Case No. 05-2727 (the

13  "Requests") is not to be construed as a waiver of any of its objections or its right to

14  object to any other request.

15

## **General Objections**

16        Mattel generally objects to each of the Requests on each and every one

17  of the following grounds, which are incorporated into and made a part of the

18  response to each and every individual request:

19        1.    Mattel objects to the Requests on the grounds and to the extent

20  that they seek to impose discovery obligations beyond those required or permitted

21  by the <u>Federal Rules of Civil Procedure</u>.

22        2.    Mattel objects to the Requests on the grounds and to the extent

23  they call for the production of documents subject to the attorney-client privilege, the

24  attorney work product doctrine, the right to privacy as set forth in the United States

25  and/or California Constitutions, or any other applicable law, privilege, immunity,

26  doctrine or other ground of privilege.  Mattel will not produce such privileged

27  documents.

28

Exhibit 22
Page 372

1        3.     Mattel objects to the Requests on the grounds and to the extent

2 they are overly broad, unduly burdensome, oppressive or unreasonably cumulative.

3        4.     Mattel objects to the Requests on the grounds and to the extent

4 they seek information which is not relevant to the subject matter of this action nor

5 reasonably calculated to lead to the discovery of admissible evidence.

6        5.     Mattel objects to the Requests on the grounds and to the extent

7 they seek documents equally or more available to, or already in the possession,

8 custody or control of MGA and/or Carter Bryant.

9        6.     Mattel objects to the Requests on the grounds and to the extent

10 they seek documents not in Mattel's possession, custody or control.

11        7.     Mattel objects to the Requests on the grounds that they are

12 unduly burdensome and vague and ambiguous in that they purport to require Mattel

13 to identify and produce documents relating to matters that are currently known to

14 and in the possession, custody and control of defendants and third parties, including

15 third parties associated with defendants, and that are not known to Mattel.

16        8.     Mattel objects to the Requests on the grounds that they seek the

17 production of documents or information that are in the possession, custody and

18 control of independent parties over whom Mattel has no control, including without

19 limitation defendants, and seek the disclosure of information or documents that are

20 in the possession, custody and control of defendants or are publicly available and

21 hence equally available to all parties to this litigation.

22        9.     Mattel objects to the Requests on the ground and to the extent

23 they seek trade secret, proprietary or otherwise confidential information of Mattel or

24 third parties or would violate the terms of any agreement or contracts with third

25 parties.  Any such documents that are produced, if any, will be produced only

26 pursuant to and in reliance upon the Protective Order entered in this case.

27        10.    Mattel objects to the Requests on the grounds that the definitions

28 of the terms "ADVERTISEMENT," "ACCELERACERS," "BRATZ,"

Exhibit 22
Page 373

1   "CONTESTED MGA PRODUCTS," "DIVA STARZ," "FISHER-PRICE,"

2   "MATTEL," "MGA," "MY SCENE," and "POLLY POCKET COLOR SURPRISE

3   POLLY" are overbroad, vague and ambiguous, unduly burdensome, and extend

4   beyond those products and matters placed at issue in this litigation.

5       11.   Mattel objects to each and every Request that seeks "all"

6   documents which constitute, mention, refer or relate to a given topic on the grounds

7   of undue burden and oppression.  Mattel will make available for inspection and

8   copying those documents and tangible items, if any, that it is able to locate after a

9   reasonable, good-faith search for and review of non-privileged responsive

10  documents.

11      12.   Mattel objects to the Requests on the grounds that they seek

12  information about matters that are not within the subject matter jurisdiction of the

13  Court.  Production by Mattel, if any, will be limited to those matters within the

14  Court's jurisdiction, and only in the event and to the extent that it is permitted by or

15  otherwise in compliance with foreign laws limiting disclosure and discovery and

16  only in the event and to the extent that the documents are within Mattel's possession,

17  custody or control pursuant to governing law.

18      13.   Mattel objects to each and every Request to the extent that it

19  seeks documents already produced in this action.  Documents which have already

20  been produced will not be produced again in response to these Requests.

21      14.   Objection to the production of any document or category of

22  documents described in the Requests, or agreement to produce any such documents,

23  is not and shall not be construed as an admission by Mattel that any such documents

24  or category of documents exist.  Where the responses indicate that Mattel will

25  produce such responsive documents, such documents, if any, will be produced if and

26  to the extent any such documents are in Mattel's possession, custody or control.

27      15.   Mattel objects to the time, place and manner of production

28  specified in the Requests.  Mattel will produce such responsive, non-privileged

-3-

Exhibit 22
Page 374

1    documents and tangible things, if any and to the extent not previously produced, in

2    accordance with its responses at a time and place and in a manner that is reasonable,

3    convenient and mutually agreed upon by the parties.

4

5                    **RESPONSES TO REQUESTS FOR PRODUCTION**

6                    Each of the following objections and responses to the Requests is

7    expressly made subject to the above Preliminary Statement and General Objections,

8    all of which are incorporated in each of the following objections and responses to

9    specific Requests.  A statement that Mattel will produce documents or tangible

10   things in response to a Request is not intended to suggest, nor should it be construed

11   to mean, that any such documents or tangible things exist, or that they are in Mattel's

12   possession, custody or control.

13

14   **REQUEST FOR PRODUCTION NO. 486:**

15                   All DOCUMENTS REFERRING OR RELATING TO YOUR or

16   YOUR attorney's or agent's knowledge of or participation in the investigation or

17   search of MGAE de Mexico, S.R.L. de C.V. in Mexico City.

18

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 486:**

20                   In addition to the general objections stated above which are

21   incorporated herein by reference, Mattel objects to this Request on the grounds that

22   it is overbroad, unduly burdensome and unintelligible, including in that it seeks all

23   documents on this subject without limitation as to time, and regardless of whether

24   such documents relate to products or matters at issue in this case.  Mattel further

25   objects to the use of the term "YOUR or YOUR attorney's or agent's knowledge of

26   or participation in the investigation or search of MGAE de Mexico, S.R.L. de C.V."

27   in this context as vague and ambiguous.  Mattel further objects to this Request on

28   the grounds that it calls for the disclosure of information subject to the attorney-

Exhibit 22
Page 375

1   client privilege, the attorney work-product doctrine and other applicable privileges.

2   Mattel further objects to the Request on the grounds that it seeks documents that are

3   not relevant to this action or likely to lead to the discovery of admissible evidence.

4   Mattel further objects to this Request on the grounds that it seeks confidential,

5   proprietary and trade secret information, including such information that has no

6   bearing on the claims or defenses in this case.

7         Subject to the foregoing objections, Mattel responds as follows:  Mattel

8   will produce responsive, non-privileged documents referring or relating to Mattel's

9   participation, if any, in the search of MGAE de Mexico, S.R.L. de C.V. in Mexico

10   City, as well as Mattel's communications with Mexican law enforcement personnel,

11   if any, that are in Mattel's possession, custody, or control, that Mattel has been able

12   to locate after a diligent search and reasonable inquiry, to the extent not previously

13   produced.

14

15   **REQUEST FOR PRODUCTION NO. 489:**

16         All DOCUMENTS REFERRING OR RELATING TO YOUR or

17   YOUR attorney's or agent's knowledge of or participation in the seizure of Brisbois'

18   thumb drive by Canadian law enforcement.

19

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 489:**

21         In addition to the general objections stated above which are

22   incorporated herein by reference, Mattel objects to this Request on the grounds that

23   it is overbroad, unduly burdensome and unintelligible, including in that it seeks all

24   documents on this subject without limitation as to time, and regardless of whether

25   such documents relate to products or matters at issue in this case.  Mattel further

26   objects to the use of the term "YOUR or YOUR attorney's or agent's knowledge of

27   or participation in the seizure of Brisbois' thumb drive by Canadian law

28   enforcement" in this context as vague and ambiguous.  Mattel further objects to the

Exhibit 22
Page 370

1 | Request on the grounds that it seeks documents that are not relevant to this action or
2 | likely to lead to the discovery of admissible evidence.  Mattel further objects to this
3 | Request on the grounds that it seeks confidential, proprietary and trade secret
4 | information, including such information that has no bearing on the claims or
5 | defenses in this case.  Mattel further objects to this Request on the grounds that it
6 | calls for the disclosure of information subject to the attorney-client privilege, the
7 | attorney work-product doctrine and other applicable privileges.

8 |       Subject to the foregoing objections, Mattel responds as follows:  Mattel
9 | will produce responsive, non-privileged documents referring or reflecting Mattel's
10 | participation, if any, in the seizure of Brisbois' thumb drive by Canadian law
11 | enforcement, as well as regarding Mattel's communications with Canadian law
12 | enforcement personnel, that are in Mattel's possession, custody, or control, if any,
13 | that Mattel has been able to locate after a diligent search and reasonable inquiry, to
14 | the extent not previously produced.

15 |
16 | DATED:  April 29, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
17 |
18 |         By /s/ B. Dylan Proctor
19 |         B. Dylan Proctor
        Attorneys for Mattel, Inc.

Exhibit 22
Page 377