Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@glaserweil.com
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: 310-553-3000
Facsimile: 310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: 310-312-2000
Facsimile: 310-312-3100

Attorneys for the MGA Parties For Phase 2

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware Corporation

Defendant.

AND CONSOLIDATED ACTIONS

**PUBLIC REDACTED**

Case No. CV 04-9049 SGL (RNBx)
Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727

**DISCOVERY MATTER**
**[To Be Heard by Discovery Master Robert C. O'Brien]**

**[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF HARD DRIVES FROM COMPUTERS USED BY ISAAC LARIAN AFTER FEBRUARY 27, 2008**

[Declarations of Joel N. Klevens, Samuel S. Rubin and Mark Karnick filed and served concurrently herewith]

Hearing Date: TBA
Time: TBA
Place: Arent Fox, LLP

**Phase 2**
Discovery Cut-off: December 11, 2009
Pre-Trial Conference: March 1, 2010
Trial Date: March 23, 2010

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

# TABLE OF CONTENTS

**Page**

I. Preliminary Statement ........ 1

II. Statement of Facts ........ 4

III. Argument ........ 10

A. Mattel Misrepresents the Facts Here – There Is No Evidence of Spoliation, Much Less "Continuous" Spoliation. ........ 10

B. Mr. Larian Has Fully Complied With the February 27, 2008 Order. ........ 11

C. Mr. Larian Has No Duty to Supplement Because His Prior Production is Not Incomplete or Incorrect In Any Respect. ........ 12

D. Information Currently Contained on Mr. Larian's Hard Drives is Not Relevant to Mattel's Phase 2 Claims. ........ 12

E. Mattel Seeks Information Which the Order Expressly Disallowed. ........ 13

F. Mr. Larian Should Not Be Subjected to The Burden and Invasion of His Privilege and Privacy Rights When The Same Information May Be Obtained Through Less Intrusive Means. ........ 14

G. Mattel's Fishing Expedition To Discover Information For New, Proposed Claims Should Not Be Permitted. ........ 15

H. Mattel's Request to Inspect All "Active" Files on Mr. Larian's Current Hard Drives Is Improper. ........ 15

I. Mattel's Counsel Should be Sanctioned For Improperly Using a Discovery Motion To Request the Discovery Master to Expand the Court's Order ........ 16

IV. Conclusion ........ 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Akros Installations, Inc.*, 834 F.2d 1526 (9th Cir. 1987) ........ 17

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004) ........ 15

*United States v. Bauer*, 132 F.3d 504 (9th Cir. 1997) ........ 14

## STATUTES

28 U.S.C. § 1927 ........ 17

Fed. R. Civ. P. 26(e)(1)(A) ........ 12, 15

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

675730

ii

[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S 4/23/09 MOTION TO COMPEL LARIAN'S HARD DRIVES

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL PRODUCTION OF LARIAN'S HARD DRIVES**

## I. Preliminary Statement

Buried in a footnote in its Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian After February 27, 2008 (the "Motion"), Mattel disingenuously asks the Discovery Master to compel inspection of information to which it is not entitled, that Judge Larson's February 27, 2008 Order expressly disallowed, and that Mattel agreed in writing not to inspect. Specifically, Mattel demands that ***it*** be allowed to inspect "[REDACTED]." (Motion, p. 4, fn. 10.) But the February 27, 2008 Order did not allow Mattel to inspect "documents," the content of documents, or "active user files." The inspection expressly was limited to a review by Mattel's alleged ***expert*** of pre-February 2008 ***data*** on mirrored hard drives solely to determine whether and when anyone had deleted, lost, or spoliated evidence, or attempted to do so, and whether any deleted, lost or spoliated evidence was recoverable. By definition, such a review does ***not*** involve inspection of "active user files," because active user files are still in existence, and Mattel executed a written inspection protocol to that effect. Nor did the review allow the expert to review the ***content*** of documents – the expert was allowed to examine only deletion activity and other digital artifacts to identify evidence of potential data destruction. Mattel's contention that the inspection protocol to which it agreed (in writing) "[REDACTED]" was thoroughly debunked by MGA's expert, and Mattel's expert admitted as much at his deposition.[1]

Allowing Mattel unrestricted access to documents and active user files on Mr. Larian's current hard drives is tantamount to permitting Mattel to rifle through his office and bedside drawers. What Mattel really seeks is a search warrant, something

[1] Declaration of Samuel S. Rubin ("Rubin Decl."), ¶ 2, Exh. A, p. 4.

they are not entitled to under the Order or the Federal Rules of Civil Procedure. Mattel has the right to ask MGA to produce specific documents; it does not have the right to go into Mr. Larian's electronic "drawers" to see what is there.

Further, Mattel steps very close to, if not over, the Rule 11 line when it asserts that its expert "[redacted]." (Motion, p. 4). Mattel's expert's report was entirely discredited by MGA's expert, [redacted].[2] Mattel also fails to point out that its expert's report originally claimed [redacted] (Motion, p. 4:9) – [redacted]. (Rubin Decl., ¶ 2, Exh. A, p. 5-9.) Indeed, MGA's expert so discredited Mattel's expert's report that Mattel did not call its expert at trial, even though document destruction and "cover up" was a theme it played loud and clear in every other way that it could.[3]

---

[2] Rubin Decl., ¶ 2, Exh. A, p. 4 [redacted]'" (Declaration of Joel N. Klevens ("Klevens Decl."), ¶ 4, Exh. A, p. 116:13-16.)

[3] For example, Mattel introduced evidence of Carter Bryant's use of an application called "Evidence Eliminator" to remove information from his computer. It also interrogated Mr. Larian's estranged brother, Farhad ("Fred"), about Fred's

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

The fact that Mattel did not call at trial an expert, who had spent over [REDACTED] hours (at a cost of $[REDACTED])[4] to try and find evidence of intentional destruction of evidence by Mr. Larian, speaks volumes about the reliability of that expert's conclusions.

Mattel's Motion should be denied in its entirety for at least the following reasons.

First, the document request itself – seeking production of hard drives – is not relevant to the Phase 2 issues. The fact that the hard drives "[REDACTED]" misses the point. (Motion, p. 9 (emphasis added).) Mattel has the right to request that Larian produce relevant ***documents***. What it does not have the right to demand is the media on which those documents reside. Nor does the fact that Mattel's Second Amended Complaint and Counterclaims ("SAAC") alleges predicate acts of document destruction alter the analysis. The SAAC expressly alleges that the counterclaim defendants "[REDACTED]" It does not, as Mattel suggests, allege "[REDACTED]."

Second, the MGA Parties fully complied with the Court's February 27, 2008 Order by making Mr. Larian's hard drives available for inspection and copying in June 2008, to see if there was any evidence of document destruction. Mattel came up empty handed. Mattel's demand for additional inspection of Mr. Larian's current hard drives is unsupported by the Order, which makes clear that Mr. Larian has no ongoing duty to produce his computer hard drives again and again. The prior production of Mr. Larian's hard drives was complete because Mr. Larian produced all the information he was required to produce pursuant to that Order. As a matter of law, there is no duty to supplement because the production of Mr. Larian's hard

---

destruction of certain records, and tried unsuccessfully to link that destruction to Mr. Larian.

[4] Rubin Decl., ¶ 2, Exh. A, p. 3.

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

drives in June 2008 was neither incomplete nor incorrect in any respect, much less any material respect.

Third, even if there were grounds to order another inspection of Mr. Larian's hard drives (which there are not), Mattel improperly asks the Discovery Master to expand the scope of Judge Larson's prior Order to allow Mattel unrestricted access to the ***content*** of information on Mr. Larian's hard drives, including access to "active files" on the hard drives, which have no relevance to any purported allegations of evidence destruction. If Mr. Larian is required to "supplement" his prior response by again producing hard drives, then Mattel must abide by the same inspection protocol that governed the initial response.[5]

Fourth, Mr. Larian should not be subjected to the burden and wholesale invasion of his privilege and privacy rights that would result from producing his personal computer hard drives, particularly when the same information may be obtained through a simple document request.

For the foregoing reasons, and for those set forth below, Mattel's Motion should be denied in its entirety. In addition, the MGA Parties respectfully request that the Court impose sanctions on Mattel for making a motion that is without justification, because Mattel is improperly using a motion to compel a supplemental response as a vehicle to obtain information it never sought and is not entitled to.

## II. Statement of Facts

In June 2007, Mattel requested production of each "storage device" used by Mr. Larian "to create, prepare, generate, copy, transmit, receive, delete or modify any digital information relating to Bratz, Angel,[6] or Bryant." (Klevens Decl., ¶ 6, Exh. C

[5] Attached hereto as Exhibit A (the "Letter of Agreement"); Klevens Decl., ¶ 5, Exh. B.

[6] As defined in Mattel's First Set of Document Requests to Isaac Larian, "ANGEL" refers to those projects, products, dolls or DESIGNS or any portion thereof, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, including without limitation all

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

(Request No. 222).)[7] Mr. Larian refused to produce his then-existing hard drives because Mattel's request was overbroad, unduly burdensome, duplicative, and wholly invaded his privilege and privacy rights. (Klevens Decl., ¶ 7, Exh. D, at p. 16:19-20.) Indeed, Mr. Larian uses his computers for matters relating to all aspects of his life, including to communicate with his litigation counsel and in-house counsel via email. (Klevens Decl., ¶ 2.)

Mattel then moved to compel production of Mr. Larian's hard drives. On December 31, 2007, Judge Infante, among other things, denied Mattel's motion to compel production of documents responsive to Request No. 222. (Klevens Decl., ¶ 7, Exh. D, at p. 16-17.) In that Order, Judge Infante noted that Mattel's "attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence" suggest that Mattel is "launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure." (*Id.* at p. 17:2-12.) Judge Infante reasoned that Mattel's stated purpose for inspecting Mr. Larian's hard drives "does not justify the breadth of Request No. 222" because

---

prototypes, models, samples and versions thereof. As used herein, "products, dolls or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, "ANGEL" includes any such project, product, doll or DESIGN, regardless of what any such project, product, doll or DESIGN has in fact been called, and regardless of what any such project, product, doll or DESIGN is or has been also, previously or subsequently called. Also without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein." (Klevens Decl., ¶ 6, Exh. C.)

[7] Mattel also references its Request No. 225 to Carter Bryant throughout its Motion in an attempt to obfuscate the issues here. Request No. 225 – a broader request that looks to storage devices used in connection with digital information "relating to Bratz, Angel, or ***MGA***" (emphasis added) is not at issue here. Mattel only seeks to compel additional inspection of Mr. Larian's – and not Mr. Bryant's – hard drives in the instant Motion. (*Id.*)

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  Mattel's request "encompasses every storage device that Larian has used to copy

2  digital information relating to Bratz.  Mattel does not need every CD and DVD

3  containing copies of Bratz-related video and audio content, but that is what the

4  request seeks." (*Id.* at 17:12-16.)  Judge Infante also noted that Request No. 222  was

5  duplicative because it requested information that is sought in numerous other requests

6  served on Mr. Larian and MGA.  Given the fact that Mr. Larian had complied with

7  Mattel's requests for documents and communications relating to Bratz, Angel and

8  Bryant, which required Mr. Larian to search for documents in both hard-copy and

9  electronic form, Judge Infante determined that "it is unnecessary for Larian to also

10  produce the requested storage devices." (*Id.* at 17:16-21.)

11         On January 16, 2008, Mattel filed its Motion Objecting to Portions of the

12  Discovery Master's December 31, 2007 Order.  (Klevens Decl., ¶ 8, Exh. E.)  In

13  particular, Mattel argued that its RICO claim is based on alleged destruction of

14  evidence "███████████████████████████████████."  (Klevens

15  Decl., ¶ 8, Exh. E at p. 9:6-10 (emphasis added).)

16         On February 27, 2008 (the "Order"), Judge Larson granted Mattel's January

17  16, 2008 Motion and overruled, in part, the Discovery Master's December 31, 2007

18  Order regarding Request No. 222.  (Klevens Decl., ¶ 9, Exh. F.)  Judge Larson found

19  that "[d]estruction of evidence is relevant to Mattel's claims, including specific

20  predicate acts alleged in Mattel's RICO counterclaims." (Klevens Decl., ¶ 9, Exh. F

21  at 2:12-14.)  However, in that Order, Judge Larson expressly limited the scope of

22  Request No. 222, ordering Mr. Larian only to produce:

23            All hard drives from, or that were at any time connected to,

24            any computer used by either Isaac Larian or Carter Bryant at

25            any time from 1999 to present [February 27, 2008] and that

26

27

28

675730

**6**

contain or previously contained any digital information referring or relating to Bratz, Angel, MGA or Bryant.[8]

(Klevens Decl., ¶ 9, Exh. F at 2:19-23.)

Judge Larson further limited Mattel's inspection of Mr. Larian's hard drives solely to determine the following:

(a) whether, when and by whom any information was deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable;

(b) whether, when and by whom any attempts were made to delete, destroy, write over, export, move, spoliate or otherwise render inaccessible or unreadable any information on those hard drives;

(c) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(d) whether any information deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be recovered; and

(e) to recover any such information, in whole or in part.

(Klevens Decl., ¶ 9, Exh. F at p. 3:4-17.)

On April 22, 2008, Skadden, Arps, Slate, Meagher & Flom, LLP (Phase 1 counsel for the MGA Parties) and Mattel's counsel entered into a written agreement setting forth a protocol for Mattel's expert's inspection of Mr. Larian's hard drives (the "Letter of Agreement").[9] In the Letter of Agreement, Mattel expressly agreed

---

[8] Mattel's Request No. 222 only seeks "digital information relating to Bratz, Angel or Bryant" – and not information relating to MGA. In ordering Mr. Larian to produce "digital information referring or relating to Bratz, Angel, MGA or Bryant," Judge Larson mistakenly conflated Request No. 222 to Mr. Larian and Request No. 225 to Carter Bryant, which seeks "digital information referring or relating Bratz, Angel, and MGA."

[9] Attached hereto as Klevens Decl., ¶ 5, Exh. B.

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

that its consultant would "not access the user generated content of any active file that exists on the hard drives." (*Id.*, ¶ 6.) As its name suggests, a so-called "active" file is one that is currently available for use on a computer or computer network. (Declaration of Mark Karnick ("Karnick Decl."), ¶ 2.) An "active" file is not one that has been deleted or destroyed. (*Id.*) Indeed, this term in the Letter of Agreement was agreed upon because the Order expressly limited Mattel's inspection of Mr. Larian's hard drives solely to determine if documents had been ***destroyed*** and did not permit inspection of actual documents that had been created, received or sent by Mr. Larian. Pursuant to the terms of the Order and the Letter of Agreement, Mattel's expert reviewed Mr. Larian's hard drives in June 2008. Following its review, Mattel's expert released its examination reports, dated June 9, 2008 and June 24, 2008, detailing its forensic findings, (collectively, the "June Reports"). (Rubin Decl., ¶ 2, Exh. A.)

In a subsequent forensic report, dated July 1, 2008, the findings in Mattel's June Reports were found (the "July Report"). (Rubin Decl., ¶ 2, Exh. A.) Based on an independent review of Mattel's June Reports and Mr. Larian's hard drives, MGA's forensic expert concluded that (*Id.* at 2 (emphasis added).) Among other things, the July Report explained:

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000



LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

In sum, the July Report found . (*Id.*) As a result, Mattel

did not even tender at the Phase 1 trial the testimony of its alleged expert or the discredited report upon which it now relies so heavily. (Klevens Decl., ¶ 3.)

Almost a year later, on March 18, 2009, Mattel's counsel sent a letter demanding additional inspection of Mr. Larian's hard drives. (Klevens Decl., ¶ 11, Exh. H.) On March 25, 2009, counsel for the MGA Parties responded, explaining that Mr. Larian had fully complied with Judge Larson's Order by making information contained on Mr. Larian's hard drives, up to and including the date of that Order (February 27, 2008), available for inspection and copying. (Klevens Decl., ¶ 12, Exh. I.) Counsel for the MGA Parties further explained that Mr. Larian was under no duty to supplement the prior production of Mr. Larian's hard drives in June 2008 because such production was neither incomplete nor incorrect in any respect, let alone in a material respect. (Klevens Decl., ¶ 12, Exh. I.)

On March 27, 2009, counsel for the Parties met and conferred via telephone regarding Mattel's demand for additional inspection of Mr. Larian's current hard drives. The MGA Parties sent Mattel's counsel a letter dated March 31, 2009, memorializing that phone conversation. (Klevens Decl., ¶ 13, Exh. J.) Nothing further was heard from Mattel's counsel on this issue until Mattel filed the instant Motion on April 23, 2009.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

## III. Argument

### A. Mattel Misrepresents the Facts Here – There Is No Evidence of Spoliation, Much Less "Continuous" Spoliation.

As a preliminary matter, Mattel has no evidence of spoliation other than its own indefensible expert reports (the "June Reports"), which were discredited in a subsequent forensic expert report, dated July 1, 2008. (Rubin Decl., ¶ 2, Exh. A.) Based on an independent review of Mattel's June Reports and Mr. Larian's hard drives, MGA's forensic expert concluded that [REDACTED] " (*Id.* at 2 (emphasis added).) In fact, each of



the three specifically identified files that Mattel now trumpets as having been "[redacted]" (Motion, p. 4) was found by MGA's expert to have been [redacted]. (Klevens Decl., ¶ 10, Exh. G, Deposition of Samuel S. Rubin, Exh. 6035, p. 1.) Mattel's expert [redacted] (Klevens Decl., ¶ 4, Exh. A.)[10]

Obviously recognizing that its expert's report about [redacted] was completely indefensible and unsupported by the forensic evidence, Mattel did not even call its forensic expert to testify at trial. (Klevens Decl., ¶ 3.)

Mattel's disingenuous argument that there has been [redacted] (Motion, p. 12 (emphasis in original).)

**B. <u>Mr. Larian Has Fully Complied With the February 27, 2008 Order.</u>**

Mattel's reliance on the February 27, 2008 Order to compel additional inspection of Mr. Larian's hard drives is entirely misplaced. The Court expressly limited Mattel's inspection of Mr. Larian's hard drives to any computer used by him from "1999 to present." (Klevens Decl., ¶ 9, Exh. F.) By its express terms, the Order only required Mr. Larian to produce for inspection his hard drives up to and including the date of that Order, February 27, 2008. Mattel does not dispute that Mr. Larian has already made such information available to Mattel. Accordingly, Mr. Larian has fully complied with the Order.

Mattel now argues that the Order somehow allows Mattel to inspect Mr. Larian's hard drives up to and including today, and ostensibly, without any limitation as to time whatsoever. The Order was not intended to allow Mattel an ongoing right

[10] Klevens Decl., ¶ 4, Exh. A, p. 116:13-20.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  to inspect and copy Mr. Larian's hard drives any time it pleases. Notably absent from

2  the Order is any language allowing Mattel such unlimited access to Mr. Larian's

3  current hard drives. Moreover, as set forth below, information placed on Mr. Larian's

4  hard drives since June 2008 is not relevant to Mattel's Phase 2 claims, including its

5  allegations of past evidence destruction – all of which relate to prior (and not

6  ongoing) acts.

**C.    Mr. Larian Has No Duty to Supplement Because His Prior Production is Not Incomplete or Incorrect In Any Respect.**

9  The duty to supplement or correct prior disclosures or discovery responses

10 arises only "if the party learns that in some *material respect* the disclosure or

11 response is *incomplete or incorrect*." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

12 As set forth above, Mr. Larian has fully complied with the Order, and there is no duty

13 to supplement the information previously produced because that production was

14 neither incomplete nor incorrect in any respect, much less any material respect.

**D.    Information Currently Contained on Mr. Larian's Hard Drives is Not Relevant to Mattel's Phase 2 Claims.**

17 Mattel misrepresents its own Counterclaims by asserting that "ongoing" acts of

18 tampering with evidence are relevant to Mattel's RICO claims. (Motion, p. 8:18-9:1;

19 11:6.) In fact, Mattel's Counterclaims make no mention whatsoever of "ongoing"

20 destruction of evidence by Mr. Larian or anyone else. To the contrary, Mattel only

21 alleges that ███████████████████████████████████

22 ██████████:

23 ████████████████████████████████

24 ████████████████████████████████████

25 ███████████████████████████████

26 ██████████████████████████████████████

27 ████████████████████████████████████

28 █████████████████████

675730

(Klevens Decl., ¶ 14, Exh. K (SAAC) at ¶ 93(c)(iii)(emphasis added).) Mattel mixes apples with oranges by arguing that the hard drives might contain [REDACTED] (Motion, p. 13:15-17.) Indeed, Mattel can ask for those documents, and has done so. But having a right to ***documents*** does not give Mattel a right to the ***media*** on which those documents reside. To hold otherwise would be tantamount to saying that a party in the "paper world" does not need to ask for relevant documents, but instead gets the drawers with the documents in them. Mattel cites no authority to support such a proposition because there is none.

**E. Mattel Seeks Information Which the Order Expressly Disallowed.**

The Court's February 27, 2008 Order did not give Mattel the right to review documents on Mr. Larian's hard drives. The Order expressly limited Mattel's inspection of Mr. Larian's hard drives solely to an expert's examination for the purpose of determining whether electronic evidence had been destroyed. (Klevens Decl., ¶ 9, Exh. F at p. 2:12-13.) Pursuant to the Order, Mattel's expert was only allowed to inspect digital data on Mr. Larian's hard drives to determine the following:

(a) whether, when and by whom any information was ***deleted***, ***destroyed***, ***written over***, ***lost***, ***exported***, ***moved***, ***spoliated*** or otherwise ***rendered inaccessible*** or ***unreadable***;

(b) whether, when and by whom any attempts were made to ***delete***, ***destroy***, ***write over***, ***export***, ***move***, ***spoliate*** or otherwise render ***inaccessible*** or ***unreadable*** any information on those hard drives;

(c) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(d) whether any information ***deleted***, ***destroyed***, ***written over***, ***lost***, ***exported***, ***moved***, ***spoliated*** or otherwise rendered ***inaccessible*** or ***unreadable*** may be recovered; and

(e) to recover any such information, in whole or in part.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

(Klevens Decl., ¶ 9, Exh. F at p. 3:4-17 (emphasis added).)

As the Court's prior Order (and the Parties' agreed upon inspection protocol) make clear, Mattel is not entitled to inspect Mr. Larian's hard drives for any purpose other than to determine if evidence prior to February 2008 has been deleted, destroyed or spoliated.

**F. Mr. Larian Should Not Be Subjected to The Burden and Invasion of His Privilege and Privacy Rights When The Same Information May Be Obtained Through Less Intrusive Means.**

Mattel's Motion entirely ignores the fact that less intrusive means are available to obtain relevant, non-privileged documents relating to Mattel's Phase 2 claims. Indeed, Mattel's requests for production require Mr. Larian to search for documents in both hard-copy ***and electronic form***. Mattel's argument that it is should be permitted to inspect Mr. Larian's current hard drives simply because information relating to its Phase 2 claims ***may*** exist on those hard drives should therefore be rejected. If Mattel wants such documents, then it should be required to specifically request them. There is no reason to allow Mattel to wholly invade Mr. Larian's privilege and privacy interests in the information contained on his computer hard drives to obtain information that is otherwise available to Mattel through less intrusive or burdensome means. Indeed, Mr. Larian's personal computer hard drives contain privileged email communications with his litigation and in-house counsel. (Klevens Decl., ¶ 2); *see United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) (recognizing that the attorney-client privilege is "the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system"). Mr. Larian should not be subjected to the burden and wholesale invasion of his privilege and privacy rights that would result from producing his personal computer hard drives, particularly when the same information may be obtained through a simple document request.

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**G. Mattel's Fishing Expedition To Discover Information For New, Proposed Claims Should Not Be Permitted.**

Mattel improperly claims that information on Mr. Larian's current hard drives is relevant to Mattel's allegations of "[REDACTED]." (Motion, p. 15:6-8.) However, Mattel entirely ignores the fact that Request No. 222 does not even seek information relating to any purported "[REDACTED]." (Klevens Decl., ¶ 6, Exh. C.) Indeed, Request No. 222 only seeks "information relating to Bratz, Angel, or Bryant." (*Id.*) Thus, in its Motion, Mattel improperly seeks to compel information that is not even responsive to Request No. 222.

Moreover, Mattel's Counterclaims contain no allegations of "[REDACTED]." Mattel's Motion for Leave to File Third Amended Answer and Counterclaims, dated April 8, 2009, has not been granted by the Court. As a matter of law, Mattel's contention that information contained on Mr. Larian's present hard drives is somehow relevant to claims that it has merely proposed to the Court is without merit. The plain language of Rule 26 limits discovery to any non-privileged matter, "that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Fishing expeditions to discover new claims are not permitted by the Federal Rules. *See id.*; *Rivera v. NIBCO, Inc.* 364 F.3d 1057, 172 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"). Thus, Mattel's Motion should be seen for what it really is – an attempt to launch a "fishing expedition" to develop its new claims.

Further, even if "[REDACTED]" was relevant here (which it is not), that would merely give Mattel the right to request documents relating to such allegations, not to inspect hard drives.

**H. Mattel's Request to Inspect All "Active" Files on Mr. Larian's Current Hard Drives Is Improper.**

Not only does Mattel erroneously rely on the February 27, 2008 Order in support of its demand for additional inspection of Mr. Larian's current hard drives,

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1 | Mattel also seeks to unduly expand the scope of that Order and to violate the terms of
2 | the Parties' prior inspection protocol.
3 |      On April 22, 2008, the Parties entered into a written agreement, whereby
4 | Mattel expressly agreed that its consultant "***shall not access user generated content***
5 | ***of any 'active' file that exists on the hard drives***."[11]  Despite that agreed upon
6 | protocol and the Order expressly limiting Mattel's inspection of Mr. Larian's prior
7 | hard drives, Mattel improperly asks the Discovery Master to allow inspection of
8 | ██████████████████████████████████████████████
9 | ████████ (Motion, p. 4, fn. 10).  Mattel disingenuously claims that the prior
10 | ██████████████████████████████████████████████
11 | ██████████████████████  (*Id.*)  However, Mr. Larian's "active" user
12 | generated files have nothing to do with any purported spoliation because such files
13 | have not been deleted.  (Karnick Decl., ¶ 2.)  Mattel's request for unrestricted access
14 | to Mr. Larian's hard drives should be denied because such unfettered access is
15 | unsupported by the Order, seeks information that is wholly irrelevant to Mattel's
16 | purported spoliation of evidence allegations, and is in breach of Mattel's express
17 | agreement to the contrary.

18 | **I.**    **Mattel's Counsel Should be Sanctioned For Improperly Using a**
19 |     **Discovery Motion To Request the Discovery Master to Expand the**
20 |     **Court's Order.**

21 |     Mattel's counsel should be sanctioned for improperly asking the Discovery
22 | Master to revisit and expand the scope of Judge Larson's prior Order with respect to
23 | Request No. 222, which expressly limited Mattel's inspection of Mr. Larian's then-
24 | existing hard drives to determine if documents had been destroyed.  Mattel now asks
25 | the Discovery Master to effectively override the Court's limitations on Mattel's
26 | inspection (and Mattel's written agreement to limit its inspection) and permit Mattel
27 | to conduct a wholesale invasion of Mr. Larian's current hard drives.  Such

28 | 

---

[11]    (Klevens Decl., ¶ 5, Exh. B) (emphasis added).

675730

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  misconduct should not be permitted and sanctions against Mattel's counsel are

2  entirely appropriate.  *See* 28 U.S.C. § 1927 ("[a]ny attorney…who so multiplies the

3  proceedings in any case unreasonably and vexatiously may be required by the court to

4  satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

5  because of such conduct"); *see also In re Akros Installations, Inc.*, 834 F.2d 1526,

6  1531 (9th Cir. 1987) (district court may impose sanctions on counsel based upon "the

7  inherent power of the judiciary, or upon the authority conferred by 28 U.S.C. §

8  1927") (overruled on unrelated grounds).  Thus, Mattel should be sanctioned in the

9  sum of $4,500 for misrepresenting the scope of Judge Larson's Order improperly

10  seeking to expand it.  (Klevens Decl., ¶ 18.)

11  **IV.    Conclusion**

12      Based on the foregoing, the MGA Parties respectfully request that Mattel's

13  Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian

14  After February 27, 2008 be denied in its entirety.  The MGA Parties also respectfully

15  request that the Court impose sanctions of $4,500 on Mattel.

16

17  Dated:  May 1, 2009                          Patricia L. Glaser
                                                 Joel N. Klevens
18                                               GLASER, WEIL, FINK, JACOBS
                                                   HOWARD & SHAPIRO, LLP
19
                                                 Russell J. Frackman
20                                               MITCHELL, SILBERBERG & KNUPP, LLP

21                                               By: _____/s/ Amman A. Khan_____
                                                    Amman A. Khan
22                                                  Attorneys for the MGA Parties
                                                    for Phase Two
23

24

25

26

27

28

**[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S 4/23/09 MOTION TO COMPEL
LARIAN'S HARD DRIVES**

# EXHIBIT A

EXHIBIT A

PAGE 18

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:** April 22, 2008

**NUMBER OF PAGES, INCLUDING COVER:** 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

**FROM:** Jon D. Corey

**RE:** Mattel, Inc.

**MESSAGE:**

FAXED
APR 22 2008

CLIENT # 7209

ROUTE/ RETURN TO: Johanna Lopez (1 extra copy)

☐ CONFIRM FAX
☐ INCLUDE CONF. REPORT

OPERATOR: Priscilla

CONFIRMED? ☐ NO ☐ YES: ____________

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE

04/22 2008 14:21 FAX 12134433100 QEUOH-LAO-2 001

********************
*** TX REPORT ***
********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 0891 |
| RECIPIENT ADDRESS | 76706#7209#12136215432 |
| DESTINATION ID | |
| ST. TIME | 04/22 14:19 |
| TIME USE | 01'29 |
| PAGES SENT | 5 |
| RESULT | OK |

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:** April 22, 2008

**NUMBER OF PAGES, INCLUDING COVER:** 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

**FROM:** Jon D. Corey

**RE:** Mattel, Inc.

**MESSAGE:**

EXHIBIT A

PAGE 20

quinn emanuel trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 22, 2008

VIA FASCIMILE AND U.S. MAIL

Lance A. Etcheverry
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, California 90071-3144

Re: Bryant vs. Mattel, Inc.

Dear Lance:

I write regarding Mr. Isaac Larian's hard drives and Mr. Farhad Larian's USB drive. I have set forth below what I believe to be the agreement that we reached.

1. On a mutually agreeable date no later than April 25, 2008, Skadden Arps Slate Meagher & Flom, LLP ("Skadden") will make available at its facilities those hard drives responsive to the Court's Order compelling production of Isaac Larian's hard drives and Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen") will make available the USB device ("Device") about which Mr. Farhad Larian testified during his February 4, 2008 deposition.

2. The hard drives and the USB device will be made available at the location of ____________, which is a consultant identified by Skadden.

3. Skadden's consultant shall make EnCase images of the hard drives and the USB device in the presences of Mattel's consultant, 42 Consulting, LLC. The EnCase images shall remain in the possession of Skadden's consultant. Skadden's consultant, however, shall make those hard drives and USB devices available for inspection at a time convenient to 42 Consulting, LLC so that it may perform the analysis necessary. Skadden's consultant shall also provide essentials for the analysis to occur, such as electrical power, lighting, reasonable work space, internet access, etc.

quinn emanuel urquhart oliver & hedges, llp
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2463006.1

EXHIBIT A
PAGE 21

4. Skadden's consultant shall be allowed to observe the inspection of the hard drives and the USB device. At no time shall Skadden's consultant interfere with or otherwise hinder the inspection and, if at any time, 42 Consulting, LLC representatives are not present and a search or inspection is being run (such as overnight), then Skadden's consultant shall not take any steps to interfere with, affect, inspect, access or use the hardware or software running any search.

5. With respect to the USB Device, 42 Consulting, LLC may inspect the image of the Device for any and all agreed-upon information (the "Information").

(a) The "Information" shall mean:

(i) information relating to the manufacture date and first use of the Device;

(ii) documents or files, whether previously deleted or currently on the Device, that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant, including without limitation the documents that Farhad Larian testified he downloaded from MGA's computer system as part of his efforts to obtain evidence for the Larian v. Larian proceedings; and

(iii) all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A) whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B) whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D) whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E) to recover any such information, in whole or in part.

(b) 42 Consulting, LLC shall inspect the entire Image of the USB device for Information using search terms and parameters that Mattel will provide him or her.

(c) 42 Consulting, LLC shall then provide to Christensen print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d) 42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

(e) Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC Expert a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

6. With respect to the hard drives, 42 Consulting, LLC may inspect the Images of the hard drives in their entirety, including but not limited to link files, registry files, system volume information, logs and log files, recycle bin info2 records, application files, file listing and metadata for all files (allocated and unallocated), page/swap files, deleted/unallocated data, all files and folders, file system, e-mail trash or deleted files, unallocated space (volume slack, unused disk space, unallocated clusters), file slack, recycle bin/recycler. Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives. 42 Consulting, LLC shall not be deemed to have accessed user generated content by loading any Outlook archive files or any other archive file that may contain information relating to deleted items.

(a) Information available for inspection shall also include:

(i) information relating to the manufacture date and first use of each hard drive:

(ii) documents or files previously deleted, attempted to be deleted, or otherwise rendered inaccessible that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant; and

(iii) all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A) whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B) whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D) whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E) to recover any such information, in whole or in part.

(b) 42 Consulting, LLC shall inspect the unallocated space on any hard drive or any other location in which deleted files or documents may otherwise reside or where information related to such deleted files or documents may resided.

(c) 42 Consulting, LLC shall then provide to Skadden print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d) 42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

(e) Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

7. If there is any issue or question regarding the authenticity, correctness, integrity or completeness of the Information, then nothing here shall preclude Mattel from seeking production and inspection of the original hard drives or USB device. Mattel also reserves the right to seek additional information of both the USB device and the hard drives.

8. The Parties agree that the actions described herein shall not constitute a waiver of any claim of attorney-client privilege or work product privilege with respect to (a) the information on any hard drive, (b) the information on the USB device, or (c) the conduct, notes, searches, search terms, communications or any other act performed by any consultant or attorney in connection with these hard drives or USB devices.

Should you have any questions regarding the foregoing, please do not hesitate to call.

Sincerely,

Jon Corey

Jon Corey