1   Patricia L. Glaser, State Bar No. 055668
    Pglaser@glaserweil.com
2   Joel N. Klevens, State Bar No. 045446
    Jklevens@glaserweil.com
3   GLASER, WEIL, FINK, JACOBS,
      HOWARD & SHAPIRO, LLP
4   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
5   Telephone:  310-553-3000
    Facsimile:  310-556-2920
6

7   Russell J. Frackman, State Bar No. 049087
    rjf@msk.com
8   MITCHELL, SILBERBERG & KNUPP, LLP
    11377 West Olympic Boulevard
9   Los Angeles, California 90064
    Telephone:  310-312-2000
10  Facsimile:  310-312-3100

11  Attorneys for the MGA Parties For Phase Two

12              UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

14

| | |
|---|---|
| CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
| v. | **DISCOVERY MATTER**<br>**[To Be Heard by Discovery Master Robert C. O'Brien]** |
| MATTEL, INC., a Delaware Corporation | **[PUBLIC REDACTED] DECLARATION OF JOEL N. KLEVENS IN SUPPORT OF MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF HARD DRIVES BY ISAAC LARIAN AFTER FEBRUARY 27, 2008** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date:  TBA<br>Time:  TBA<br>Place:  Arent Fox, LLP |
| **PUBLIC REDACTED** | **Phase 2**<br>Discovery Cut-off:  December 11, 2009<br>Pre-Trial Conference:  March 1, 2010<br>Trial Date:  March 23, 2010 |

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

675540                                1

# DECLARATION OF JOEL N. KLEVENS

I, Joel N. Klevens, hereby declare that:

1.      I am an attorney at law, duly licensed to practice before the Courts of the State of California, and am a partner of the law firm of Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP ("Glaser Weil"), Phase 2 attorneys of record herein for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, "the MGA Parties"). The facts set forth herein are true of my own personal knowledge and, if called upon to testify thereto, I could and would competently do so under oath. I submit this declaration in support of the MGA Parties' Opposition to Mattel, Inc.'s Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian After February 27, 2008.

2.      Isaac Larian frequently communicates with me and my colleagues at Glaser Weil (Phase 2 counsel for the MGA Parties) and MGA's in-house counsel via email to seek legal advice in connection with this litigation. These communications contain attorney-client privileged information and attorney work product.

3.      Mattel's forensic expert, Christopher Pavan, who authored Mattel's Preliminary Examination Report, Larian Hard Drives & USB Drive, dated June 24, 2008, did not testify during the Phase 1 trial in this matter.

4.      Attached hereto as Exhibit A is a true and correct copy of excerpts of the Transcript of the Deposition of Christopher Pavan, dated June 26, 2008

5.      Attached hereto as Exhibit B is a true and correct copy of the Letter of Agreement, between Mattel and Mr. Larian, dated April 22, 2008.

6.      Attached hereto as Exhibit C is a true and correct copy of excerpts of Mattel, Inc.'s First Set of Requests for Documents and Things to Isaac Larian Dated June 13, 2007.

7.      Attached hereto as Exhibit D is a true and correct copy of the Discovery Master Order Granting in Part and Denying in Part Mattel's Motion to Compel

1

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  Production of Documents by Isaac Larian; Denying Request for Sanctions, Dated

2  December 31, 2007.

3        8.    Attached hereto as Exhibit E is a true and correct copy of excerpts

4  Mattel, Inc.'s Notice of Motion and Motion Objecting to Portions of Discovery

5  Master's December 31, 2007 Order Regarding Hard Drives, dated January 16, 2008.

6        9.    Attached hereto as Exhibit F is a true and correct copy of the Order

7  Granting Mattel, Inc.'s Motion Objecting to Portions of Discovery Master's

8  December 31, 2007 Order Regarding Hard Drives, dated February 27, 2008.

9        10.    Attached hereto as Exhibit G is a true and correct copy of a chart that

10  was submitted into evidence at the July 3, 2008 deposition of Samuel Rubin as

11  Exhibit 6035.

12        11.    Attached hereto as Exhibit H is a true and correct copy of the letter from

13  Marshall Searcy to Amman Khan, dated March 17, 2009.

14        12.    Attached hereto as Exhibit I is a true and correct copy of the letter from

15  Amman Khan to Jon Corey, dated March 25, 2009.

16        13.    Attached hereto as Exhibit J is a true and correct copy of the letter from

17  Amman Khan to Marshall Searcy, dated March 31, 2009.

18        14.    Attached hereto as Exhibit K is a true and correct copy of the public

19  redacted version of Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and

20  Counterclaims ("SAAC"), dated July 12, 2007 (without exhibits).

21        15.    My partner, Amman A. Khan, and I supervised Lisa M. Zepeda, the

22  Glaser Weil associate responsible for researching and preparing drafts of the papers

23  submitted in opposition to Mattel's Motion.  Ms. Zepeda's billing rate is $430 per

24  hour.  She spent about 20 hours drafting the MGA Parties' opposition papers.

25  Another associate, Adil M. Khan, spent over 8 hours on these papers.  His billing rate

26  is $315 per hour.  Amman Khan's hourly billing rate is $500 per hour and he spent

27  approximately 3 hours reviewing and preparing the concurrently filed papers.

28

16.     My hourly rate is $625 an hour and I have practiced civil litigation in California for almost 40 years.  I spent about one hour on these papers.  The billing rate for the attorneys at Glaser Weil (including myself) who will attend the hearing on Mattel's Motion ranges from $500 to $625.  Based on my professional legal experience and knowledge of the local legal community, I believe that Glaser Weil's billing rates conform to the standard billing rates in the Los Angeles community for work of this type by comparable firms.

17.     I estimate that the MGA Parties have incurred more than $13,000 in attorneys' fees and costs for legal research in opposing Mattel's Motion.  In addition, it will cost approximately $3,000 for counsel for the MGA Parties to attend and argue the hearing related to the pending Motion.  The MGA Parties seek $4,500 in sanctions from Mattel, Inc. for partial reimbursement for its costs and fees for opposing this Motion.

I declare under penalty of perjury under the laws of the State of California, the United States of America that the foregoing is true and correct.

Executed on this 1st day of May, 2009, in Los Angeles, California.


                              /s/ Joel N. Klevens
                              Joel N. Klevens

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

3

# EXHIBIT A

EXHIBIT _A_

PAGE _4_

# THIS EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT B

EXHIBIT _B_

PAGE _11_

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<table>
<tr>
<td><u>NEW YORK</u><br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100</td>
<td><u>LOS ANGELES</u><br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100</td>
<td><u>SAN FRANCISCO</u><br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700</td>
</tr>
<tr>
<td><u>TOKYO</u><br>Akasaka Twin Tower Main Building, 6th Floor<br>17-22 Akasaka 2-Chome<br>Minato-ku, Tokyo 107-0052, Japan<br>+81 3 5561-1711<br>Facsimile: +81 3 5561-1712</td>
<td></td>
<td><u>SILICON VALLEY</u><br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100</td>
</tr>
</table>

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:    April 22, 2008                    NUMBER OF PAGES, INCLUDING COVER: 4

|  | NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
|  | Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

FROM:    Jon D. Corey

RE:      Mattel, Inc.

MESSAGE:

FAXED
APR 2 2 2008

| CLIENT # 7209 | ROUTE/<br>RETURN TO: | Johanna Lopez<br>(1 extra copy) | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|
| OPERATOR: PRISCILLA | | CONFIRMED?  ☐ NO  ☐ YES: _____ |  |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT B
PAGE 12

04/22 2008 14:21 FAX 1213443311CO          QEUOH-LA0-2                          ⌐001

```
                        *********************
                        ***  TX REPORT   ***
                        *********************

        TRANSMISSION OK

        TX/RX NO           0891
        RECIPIENT ADDRESS  76706#7209#12136215432
        DESTINATION ID
        ST. TIME           04/22 14:19
        TIME USE           01'29
        PAGES SENT         5
        RESULT             OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 649-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

DATE:     April 22, 2008          NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

FROM:     Jon D. Corey

RE:       Mattel, Inc.

MESSAGE:

EXHIBIT *B*
PAGE *13*

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 22, 2008

VIA FASCIMILE AND U.S. MAIL

Lance A. Etcheverry
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, California 90071-3144

Re:     Bryant vs. Mattel, Inc.

Dear Lance:

I write regarding Mr. Isaac Larian's hard drives and Mr. Farhad Larian's USB drive.  I have set forth below what I believe to be the agreement that we reached.

1.      On a mutually agreeable date no later than April 25, 2008, Skadden Arps Slate Meagher & Flom, LLP ("Skadden") will make available at its facilities those hard drives responsive to the Court's Order compelling production of Isaac Larian's hard drives and Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen") will make available the USB device ("Device") about which Mr. Farhad Larian testified during his February 4, 2008 deposition.

2.      The hard drives and the USB device will be made available at the location of _____, which is a consultant identified by Skadden.

3.       Skadden's consultant shall make EnCase images of the hard drives and the USB device in the presences of Mattel's consultant, 42 Consulting, LLC.  The EnCase images shall remain in the possession of Skadden's consultant.  Skadden's consultant, however, shall make those hard drives and USB devices available for inspection at a time convenient to 42 Consulting, LLC so that it may perform the analysis necessary.  Skadden's consultant shall also provide essentials for the analysis to occur, such as electrical power, lighting, reasonable work space, internet access, etc.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2463006.1

EXHIBIT *B*

PAGE /4

4.     Skadden's consultant shall be allowed to observe the inspection of the hard drives and the USB device. At no time shall Skadden's consultant interfere with or otherwise hinder the inspection and, if at any time, 42 Consulting, LLC representatives are not present and a search or inspection is being run (such as overnight), then Skadden's consultant shall not take any steps to interfere with, affect, inspect, access or use the hardware or software running any search.

5.     With respect to the USB Device, 42 Consulting, LLC may inspect the image of the Device for any and all agreed-upon information (the "Information").

(a)     The "Information" shall mean:

(i)     information relating to the manufacture date and first use of the Device;

(ii)     documents or files, whether previously deleted or currently on the Device, that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant, including without limitation the documents that Farhad Larian testified he downloaded from MGA's computer system as part of his efforts to obtain evidence for the Larian v. Larian proceedings; and

(iii)     all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A)     whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)     whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C)     the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D)     whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)     to recover any such information, in whole or in part.

(b)     42 Consulting, LLC shall inspect the entire Image of the USB device for Information using search terms and parameters that Mattel will provide him or her.

(c)     42 Consulting, LLC shall then provide to Christensen print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)     42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

EXHIBIT _B_
PAGE _15_

(e)      Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC Expert a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

6.      With respect to the hard drives, 42 Consulting, LLC may inspect the Images of the hard drives in their entirety, including but not limited to link files, registry files, system volume information, logs and log files, recycle bin info2 records, application files, file listing and metadata for all files (allocated and unallocated), page/swap files, deleted/unallocated data, all files and folders, file system, e-mail trash or deleted files, unallocated space (volume slack, unused disk space, unallocated clusters), file slack, recycle bin/recycler. Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives. 42 Consulting, LLC shall not be deemed to have accessed user generated content by loading any Outlook archive files or any other archive file that may contain information relating to deleted items.

(a)      Information available for inspection shall also include:

(i)      information relating to the manufacture date and first use of each hard drive:

(ii)      documents or files previously deleted, attempted to be deleted, or otherwise rendered inaccessible that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant; and

(iii)      all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A)      whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)      whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C)      the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D)      whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)      to recover any such information, in whole or in part.

EXHIBIT B

PAGE 16

(b)      42 Consulting, LLC shall inspect the unallocated space on any hard drive or any other location in which deleted files or documents may otherwise reside or where information related to such deleted files or documents may resided.

(c)      42 Consulting, LLC shall then provide to Skadden print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)      42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

(e)      Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted.  Mr. Larian will serve Mattel and the 42 Consulting, LLC a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

7.      If there is any issue or question regarding the authenticity, correctness, integrity or completeness of the Information, then nothing here shall preclude Mattel from seeking production and inspection of the original hard drives or USB device.  Mattel also reserves the right to seek additional information of both the USB device and the hard drives.

8.      The Parties agree that the actions described herein shall not constitute a waiver of any claim of attorney-client privilege or work product privilege with respect to (a) the information on any hard drive, (b) the information on the USB device, or (c) the conduct, notes, searches, search terms, communications or any other act performed by any consultant or attorney in connection with these hard drives or USB devices.

Should you have any questions regarding the foregoing, please do not hesitate to call.

Sincerely,

*Jon Corey*

Jon Corey

EXHIBIT  *B*

PAGE  *17*

# EXHIBIT C

EXHIBIT _C_

PAGE _18_

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                 EASTERN DIVISION

12  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                Consolidated with
                                        Case No. CV 04-09059
14       .v.                            Case No. CV 05-02727

15  MATTEL, INC., a Delaware            MATTEL, INC.'S FIRST SET OF
    corporation,                        REQUESTS FOR DOCUMENTS AND
16                                       THINGS TO ISAAC LARIAN
            Defendant.
17

18  AND CONSOLIDATED CASES.

19

20

21

22

23

24

25

26

27

28

07209/2142932.1

                                        C4 | 13 | c 7

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

EXHIBIT  C
PAGE  19

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,
2  Inc. hereby requests that defendant Isaac Larian ("Larian") respond to these
3  document requests ("Requests") and make available for inspection and copying
4  originals of the following documents within 30 days of service at the offices of
5  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th
6  floor, Los Angeles, CA 90017.  Larian shall be obligated to supplement the
7  responses to these Requests at such times and to the extent required by Rule 26(e) of
8  the Federal Rules of Civil Procedure.
9
10  I.    **DEFINITIONS**
11
12    For purposes of these Requests, the following definitions apply:
13    A.    "YOU," "YOUR" and "LARIAN" mean Isaac Larian and any
14  individual or entity acting directly or indirectly by, through, under or on behalf of
15  Isaac Larian, including but not limited to current or former directors, officers,
16  agents, attorneys, employees, partners, joint venturers, contractors, accountants, or
17  representatives of Isaac Larian or any entity under the control or direction of Isaac
18  Larian (including but not limited to MGA), and any corporation, partnership,
19  association, trust, predecessor-in-interest and successor-in-interest, and any other
20  PERSON acting on behalf of Isaac Larian or pursuant to his authority or subject to
21  his control.
22    B.    "MGA" means MGA Entertainment, Inc. and all current or
23  former directors, officers, employees, agents, contractors, attorneys, accountants,
24  representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and
25  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
26  authority or subject to its control.
27    C.    "MATTEL" means Mattel, Inc. and all current or former
28  directors, officers, employees, agents, contractors, attorneys, accountants,

07209/2142932.1

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

EXHIBIT _C_
PAGE _20_

1   representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and

2   successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

3   authority or subject to its control.

4          D.     "BRYANT" means Carter Bryant, any of his current or former

5   agents, representatives, attorneys, employees, partners, joint venturers,

6   predecessors-in-interest and successors-in-interest, and any other PERSON acting

7   on his behalf, pursuant to his authority or subject to his control.  For purposes of

8   these Requests, "MGA" and "LARIAN" do not include "BRYANT."

9          E.     "DOCUMENT" or "DOCUMENTS" means all "writings" and

10  "recordings" as those terms are defined in <u>Rule</u> 1001 of the <u>Federal Rules of</u>

11  <u>Evidence</u> and <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and shall include all

12  writings, including but not limited to handwriting, typewriting, printing, image,

13  photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

14  to) electronic mail (including instant messages and text messages) or facsimile,

15  video and audio recordings, and every other means of recording upon any tangible

16  thing, any form of communication or representation, and any record thereby created,

17  regardless of the manner in which the record has been stored, and all non-identical

18  copies of such DOCUMENTS, in the possession, custody, or control of YOU,

19  YOUR counsel, or any other PERSON acting on YOUR behalf.

20         F.     "COMMUNICATION," in the plural as well as the singular,

21  means any transmittal and/or receipt of information, whether such was oral or

22  written, and whether such was by chance, prearranged, formal or informal, and

23  specifically includes, but is not limited to, conversations in person, telephone

24  conversations, electronic mail (including instant messages and text messages),

25  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

26  articles, and video and audio transmissions.

27         G.     "DESIGN" or "DESIGNS" means any and all representations,

28  whether two-dimensional or three-dimensional, and whether in tangible, digital,

-3-

EXHIBIT _C_

PAGE _2 1_

1 electronic or other form, including but not limited to all works, designs, artwork,

2 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

3 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

4 practice, developments, concepts, ideas, inventions and/or improvements, as well as

5 all other items, things and DOCUMENTS in which any of the foregoing are or have

6 been expressed, embodied, contained, fixed or reflected in any manner, whether in

7 whole or in part.

8        H.    "BRATZ" means any project, product, doll or DESIGN or any

9 portion thereof ever known by that name, that is now or has ever been known as, or

10 sold or marketed under, the name or term "Bratz" or that is now or has ever been

11 sold or marketed as part of the "Bratz" line, including without limitation all

12 prototypes, models, samples and versions thereof. As used herein, "products, dolls

13 or DESIGNS or any portion thereof" also includes without limitation any names,

14 fashions, accessories, artwork, packaging or any other works, materials, matters or

15 items included or associated therewith. Without limiting the generality of the

16 foregoing, "BRATZ" includes any such project, product, doll or DESIGN,

17 regardless of what any such project, product, doll or DESIGN has in fact been

18 called, and regardless of what any such project, product, doll or DESIGN is or has

19 been also, previously or subsequently called. Also without limiting the generality of

20 the foregoing, and contrary to MGA's recent assertions in connection with other

21 Mattel discovery requests, the term "BRATZ" does not require that there be a doll

22 existing at the time of the event, incident or occurrence that is the subject of, or

23 otherwise relevant or responsive to, the Requests herein.

24        I.    "ANGEL" refers to those projects, products, dolls or DESIGNS

25 or any portion thereof, sometimes called "Angel Faces" and/or "Prayer Angels," that

26 MGA has claimed are the subject of MGA000706-08, MGA000710-12,

27 MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, including

28 without limitation all prototypes, models, samples and versions thereof. As used

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

07209/2142932.1

EXHIBIT _C_

PAGE _22_

1 herein, "products, dolls or DESIGNS or any portion thereof" also includes without

2 limitation any names, fashions, accessories, artwork, packaging or any other works,

3 materials, matters or items included or associated therewith. Without limiting the

4 generality of the foregoing, "ANGEL" includes any such project, product, doll or

5 DESIGN, regardless of what any such project, product, doll or DESIGN has in fact

6 been called, and regardless of what any such project, product, doll or DESIGN is or

7 has been also, previously or subsequently called. Also without limiting the

8 generality of the foregoing, and contrary to MGA's recent assertions in connection

9 with other Mattel discovery requests, the term "ANGEL" does not require that there

10 be a doll existing at the time of the event, incident or occurrence that is the subject

11 of, or otherwise relevant or responsive to, the Requests herein.

12        J.    "AFFILIATES" means any and all corporations, proprietorships,

13 d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

14 indirectly, in whole or in part, own or control, are under common ownership or

15 control with, or are owned or controlled by a PERSON, party or entity, including

16 without limitation each parent, subsidiary and joint venture of such PERSON, party

17 or entity.

18        K.    "IDENTIFY" or "IDENTITY" means the following:

19           (a)    With reference to an individual, means such individual's

20 name, current or last known business title, current or last known business affiliation,

21 current or last known relationship to YOU, current or last known residential and

22 business address, and current or last known telephone number.

23           (b)    With reference to an entity or governmental organization,

24 means such entity's or organization's name, present or last-known address, and

25 present or last-known telephone number and the IDENTITY of each individual who

26 has served or participated as a contact for or on behalf of such entity or organization.

27           (c)    With reference to an account with a bank or financial

28 institution, means the name and address of the bank or financial institution, the

-5-

EXHIBIT _C_

PAGE _23_

1  account number(s) for or otherwise associated with such account and the name of

2  each holder, including without limitation each beneficial holder, of each such

3  account.

4          (d)     With reference to a STORAGE DEVICE, means the

5  manufacturer name, brand, model name and number, serial number and all other

6  manufacturer identifiers, and the technical specifications and capacities of such

7  STORAGE DEVICE.

8          L.     "ACTION" means this action now consolidated under Case No.

9  04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first

10  filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA

11  Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses

12  therein.

13          M.     "DIGITAL INFORMATION" means any information created or

14  stored digitally, including but not limited to electronically, magnetically or optically.

15          N.     "STORAGE DEVICE" means any computer hard drive,

16  memory, USB device, tape, storage array or any other device or medium that allows

17  a user, whether permanently, temporarily or otherwise, to create, generate, prepare,

18  transmit, copy, retain, store or maintain DIGITAL INFORMATION.

19          O.     "FAMILY MEMBER" means any PERSON who at any time is,

20  was or has been a parent, spouse, or child of another PERSON.

21          P.     "RELATING," "RELATING TO," "REFERRING OR

22  RELATING TO," or "REFER OR RELATE TO" means any and all of the following

23  terms and their synonyms: refer to, discuss, constitute, evidence, pertain to,

24  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

25  identify, state, deal with, concern, comment on, summarize, respond to, relate to, or

26  describe.

27          Q.     "PERSON," in the plural as well as the singular, means any

28  natural person, association, partnership, corporation, joint venture, government

EXHIBIT _____ C

PAGE _____ 24

1  entity, organization, trust, institution, proprietorship, or any other entity recognized

2  as having an existence under the laws in the United States or any other nation.

3        R.    "BRATZ PRODUCT" means any product, whether two-

4  dimensional or three-dimensional, and whether in tangible, digital, electronic or

5  other form: (i) that is or has ever been distributed, marketed or sold under the name

6  "Bratz" or as part of the "Bratz" line; (ii) that depicts, incorporates, embodies,

7  consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever

8  been distributed, marketed or sold in any packaging that includes the name "Bratz"

9  or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

10 BRATZ.

11       S.    "BRATZ DOLL" means any doll that is or has ever been

12 distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

13 the "Bratz" line.

14       T.    "BRATZ MOVIE" means any motion picture or film that

15 depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ

16 or any BRATZ DESIGN.

17       U.    "BRATZ TELEVISION SHOW" means any production

18 exhibited on television that depicts, incorporates, embodies, consists of or REFERS

19 OR RELATES TO BRATZ or any BRATZ DESIGN.

20       V.    "DIVA STARZ" means any project, product, doll or DESIGN or

21 any portion thereof ever known by that name, that is now or has ever been known

22 as, or sold or marketed under, the name or term "DIVA STARZ" or that is now or

23 has ever been sold or marketed as part of the "DIVA STARZ" line, including

24 without limitation "Chat Girls," "Brats," and "Chat Brats," and including without

25 limitation all prototypes, models, samples and versions thereof.  As used herein,

26 "products, dolls or DESIGNS or any portion thereof" also includes without

27 limitation any names, fashions, accessories, artwork, packaging or any other works,

28 materials, matters or items included or associated therewith.  Without limiting the

-7-

EXHIBIT _C_

PAGE _25_

1  generality of the foregoing, "DIVA STARZ" includes any such project, product, doll
2  or DESIGN, regardless of what any such project, product, doll or DESIGN has in
3  fact been called, and regardless of what any such project, product, doll or DESIGN
4  is or has been also, previously or subsequently called.  Also without limiting the
5  generality of the foregoing, and contrary to MGA's recent assertions in connection
6  with other Mattel discovery requests, the term "DIVA STARZ" does not require that
7  there be a doll existing at the time of the event, incident or occurrence that is the
8  subject of, or otherwise relevant or responsive to, the Requests herein.

9          W.    The singular form of a noun or pronoun includes within its
10  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
11  the masculine form of a pronoun also includes within its meaning the feminine form
12  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes
13  also within its meaning all other tenses of the verb so used, whenever such
14  construction results in a broader request for information; and "and" includes "or"
15  and *vice versa*, whenever such construction results in a broader disclosure of
16  documents or information

17

18  **II.**    **INSTRUCTIONS**

19

20          A.    YOU are to produce all requested DOCUMENTS in YOUR
21  possession, custody or control.

22          B.    If YOU contend that YOU are not required to produce certain
23  DOCUMENTS called for by these Requests on the grounds of a privilege or
24  protection that YOU are not prepared to waive, identify each such DOCUMENT
25  and provide the following information:

26          1.        the date and type of the DOCUMENT, the author(s) and
27                  all recipients;

28

2.       the privilege or protection that YOU claim permits YOU to withhold the DOCUMENT;

3.       the title and subject matter of the DOCUMENT;

4.       any additional facts on which YOU base YOUR claim of privilege or protection; and

5.       the identity of the current custodian of the original of the DOCUMENT.

C.    DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.    The DOCUMENTS should be produced in their complete and unaltered form. Attachments to DOCUMENTS should not be removed. The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance. If emails are produced that had attachments, the attachments shall be attached when produced.

E.    DOCUMENTS in electronic form shall be produced in that form.

F.    In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1.       the date and type of the DOCUMENT, the author(s) and all recipients;

2.       the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3.       the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.       the PERSONS who were authorized to carry out such destruction or discard;

EXHIBIT __C__

PAGE __27__

1   5.      the PERSONS who have knowledge of the content,

2           origins, distribution and destruction of the DOCUMENT;

3           and

4   6.      whether any copies of the document exist and, if so, the

5           name of the custodian of each copy.

6

7   **III.   REQUESTS FOR DOCUMENTS AND THINGS**

8

9   REQUEST FOR PRODUCTION NO. 1:

10          All DOCUMENTS prepared, drafted, written, transmitted or received

11  (whether in whole or in part) prior to December 31, 2001 RELATING TO BRATZ.

12

13  REQUEST FOR PRODUCTION NO. 2:

14          All DOCUMENTS RELATING TO BRATZ and RELATING TO any

15  time prior to December 31, 2001 (regardless of when such DOCUMENT was

16  prepared, written, transmitted or received, whether in whole or in part).

17

18  REQUEST FOR PRODUCTION NO. 3:

19          All DOCUMENTS RELATING TO the origin(s), conception and

20  creation of BRATZ, including without limitation all DOCUMENTS RELATING

21  TO the timing and the method and manner in which BRATZ first came to YOUR or

22  MGA's attention.

23

24  REQUEST FOR PRODUCTION NO. 4:

25          All DOCUMENTS RELATING TO the modeling, prototyping,

26  rotocasting, sculpting or DESIGN of BRATZ at any time prior to June 30, 2001,

27  including without limitation all DOCUMENTS RELATING to the creation,

28  preparation or modification of any three-dimensional representation of BRATZ.

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

EXHIBIT _____C_____

PAGE _____28_____

1  REQUEST FOR PRODUCTION NO. 219:

2       All DOCUMENTS RELATING TO YOUR knowledge of any testing

3  of or sampling from any DOCUMENTS RELATING TO BRATZ or BRYANT.

4

5  REQUEST FOR PRODUCTION NO. 220:

6       All DOCUMENTS RELATING TO Erich Speckin.

7

8  REQUEST FOR PRODUCTION NO. 221:

9       All DOCUMENTS RELATING TO YOUR payment of, or offer,

10  promise or agreement to pay, fees or costs in connection with the representation of

11  or provision of legal advice or legal services to any PERSON who is not, as of June

12  8, 2007, an MGA employee, including without limitation all contracts and

13  agreements RELATING thereto, the amounts YOU have so paid or agreed to pay to

14  such PERSON and the dates on which such payments were made.

15

16  REQUEST FOR PRODUCTION NO. 222:

17       Each STORAGE DEVICE that YOU have used to create, prepare,

18  generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION

19  RELATING TO BRATZ, ANGEL or BRYANT.

20

21  REQUEST FOR PRODUCTION NO. 223:

22       DOCUMENTS sufficient to IDENTIFY each STORAGE DEVICE that

23  YOU have used to create, prepare, generate, copy, transmit, receive, delete or

24  modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or

25  BRYANT.

26

27

28

07209/2142932.1

-54-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

EXHIBIT _C_

PAGE _29_

1  REQUEST FOR PRODUCTION NO. 224:

2         All DOCUMENTS RELATING TO the purchase, acquisition,

3  installation, transfer, shipment, destruction or disposition of each STORAGE

4  DEVICE that YOU have used to create, prepare, generate, copy, transmit, receive,

5  delete or modify any DIGITAL INFORMATION RELATING TO BRATZ,

6  ANGEL or BRYANT.

7

8  REQUEST FOR PRODUCTION NO. 225:

9         Each STORAGE DEVICE that BRYANT has used to create, prepare,

10  generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION

11  RELATING TO BRATZ, ANGEL or MGA.

12

13  REQUEST FOR PRODUCTION NO. 226:

14         DOCUMENTS sufficient to IDENTIFY each STORAGE DEVICE that

15  BRYANT has used to create, prepare, generate, copy, transmit, receive, delete or

16  modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL, YOU

17  or MGA.

18

19  REQUEST FOR PRODUCTION NO. 227:

20         All DOCUMENTS RELATING TO the purchase, acquisition,

21  installation, transfer, shipment, destruction or disposition of each STORAGE

22  DEVICE that BRYANT has used to create, prepare, generate, copy, transmit,

23  receive, delete or modify any DIGITAL INFORMATION RELATING TO BRATZ,

24  ANGEL, YOU or MGA.

25

26  REQUEST FOR PRODUCTION NO. 228:

27         All DOCUMENTS RELATING TO the purchase, acquisition,

28  installation, transfer, shipment, destruction or disposition of each STORAGE

-55-

EXHIBIT _C_

PAGE _30_

1  REQUEST FOR PRODUCTION NO. 273:

2          All DOCUMENTS RELATING TO the ownership of MGAE de

3  Mexico, S.r.l. de C.V.

4

5  REQUEST FOR PRODUCTION NO. 274:

6          An electronic copy of each DOCUMENT that YOU have produced in

7  this action, or that is responsive to these Requests, that is or was created, prepared,

8  generated, maintained or transmitted in digital form.

9

10  REQUEST FOR PRODUCTION NO. 275:

11          The metadata for each DOCUMENT that YOU have produced in this

12  action, or that is responsive to these Requests, that is or was created, prepared,

13  generated, maintained or transmitted in digital form.

14

15  REQUEST FOR PRODUCTION NO. 276:

16          To the extent not produced in response to any other Request for

17  Production, all DOCUMENTS and tangible things upon which YOU intend to rely

18  in this ACTION.

19

20  DATED:  June 13, 2007          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
21

22
                        By  *Michael T. Zeller*
23                          Michael T. Zeller

24                          Attorneys for Mattel, Inc.

25

26

27

28

07209/2142932.1

-64-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

EXHIBIT __C__

PAGE __31__

## PROOF OF SERVICE

1
2        I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4        On June 13, 2007, I served true copies of the following document(s) described as
**MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS TO**
5   **ISAAC LARIAN** on the parties in this action as follows:

6

7        John W. Keker, Esq.
         Michael H. Page, Esq.
8        Christa M. Anderson, Esq.
         KEKER & VAN NEST, LLP
9        710 Sansome Street
         San Francisco, California  94111

10

11

12  **BY MAIL:**  I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver &
    Hedges for collecting and processing correspondence for mailing with the United States Postal
13  Service.  Under that practice, it would be deposited with the United States Postal Service that
    same day in the ordinary course of business.  I enclosed the foregoing in sealed envelope(s)
14  addressed as shown above, and such envelope(s) were placed for collection and mailing with
    postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary
15  business practices.

16        I declare that I am employed in the office of a member of the bar of this Court at whose
    direction the service was made.
17

18        Executed on June 13, 2007, at Los Angeles, California.

19

20        Elaine Chavarria

21

22

23

24

25

26

27

28

09819/2143538.1

EXHIBIT  C
PAGE  32

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On June 13, 2007, I served true copies of the following document(s) described as **MATTEL, INC'.S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS TO ISAAC LARIAN** on the parties in this action as follows:

Diana M. Torres, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California 90071

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 13, 2007, at Los Angeles, California.

_____
DAVE QUINTANA

EXHIBIT C
PAGE 33

# EXHIBIT D

EXHIBIT D
PAGE 54

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                               Consolidated with
                                           Case No. CV 04-09059
15                                         Case No. CV 05-2727
    MATTEL, INC., a Delaware corporation,
16                                         ORDER GRANTING IN PART AND
                Defendant.                 DENYING IN PART MATTEL'S
17                                         MOTION TO COMPEL PRODUCTION
                                           OF DOCUMENTS BY ISAAC LARIAN;
18                                         DENYING REQUEST FOR
                                           SANCTIONS
19

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23                          I. INTRODUCTION

24        On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

25  of Documents by Isaac Larian and for Award of Monetary Sanctions."  Specifically, Mattel seeks

26  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

27  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              1

                                    12-31

EXHIBIT D
PAGE 35

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT __D__

PAGE __36__

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT D
PAGE 37

1  he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2  to documents from his so-called "personal files."  See Opposition at 2:2-3.

3        Mattel's counsel "never agreed that Larian could limit his response to the above requests

4  to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5  response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6  Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7  Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8  parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9  points out, it "would create a situation by which responsive and highly relevant documents might

10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12  <u>Market Research for Products Not at Issue:  Request Nos. 79-81</u>

13        In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15  his supplemental response, Larian agrees to produce the following documents, subject to his

16  general objections:

17        Larian will produce all documents within his possession, custody, or control that
           relate to focus groups for "MGA contested products" and "Mattel contested

18        products," as those terms are defined in Mattel's First Requests for Production
           regarding Claims of Unfair Competition, if any, and that have not already been

19        produced, that he discovers in the course of his reasonable search and diligent
           inquiry, and to which no privilege or other protection applies, including without

20        limitation, the attorney-client privilege or attorney's work product doctrine.

21

22  Mattel's Consolidated Separate Statement at pp. 20-21.

23        In Request No. 80, Mattel seeks all documents relating to any services or work performed

24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25  videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27  the request and to which no privilege or other protection applies.

28

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2  supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3  Angel or Bryant that are responsive to the request and to which no privilege or other protection

4  applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6  information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7  directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8  and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9  MGA is guilty of copying Mattel's Barbie and My Scene products.

10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

11  example, Larian points to Request No. 80, which requests all documents relating to any services

12  or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13  and defenses in the action or any of the products at issue.  Larian similarly contends that Request

14  Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

    defense in this case.

15    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16  is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

17  documents are relevant to several issues in the case, including the origin, conception and creation

18  of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

19  supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

20  definitions of "contested MGA products" encompass only those products that provide a basis for

21  any claim by MGA against Mattel, and not claims by Mattel against MGA.

22    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23  80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

24  reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

25  Focus and Alaska Momma without regard to whether the services or work the companies

26  provided has any relation to any product at issue.

27    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28

EXHIBIT  D

PAGE  39

1   documents related to the products at issue:  Bratz and Angel.  In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel."  However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7        Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used.  It is, however, not apparent how deviations from standard procedures would impact

    credibility or bias.

11       As to Request No. 81, Mattel contends that the documents showing the relationship

12  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

13  specifically relate to Bratz, Angel or Bryant.  Mattel contends that communications from Larian

14  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

15  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

16  and Bryant's stories about how and when they came to be introduced.  Mattel also contends that

17  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

18  the issues of bias and credibility.  Mattel's supposition about the types of documents that might

19  exist does not justify the type of far-reaching request it has propounded.  Request No. 81 is also

20  not limited by either subject matter or time.

21       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

22  accordance with his supplemental responses.

23

24  Bryant's Attorney and Niece:  Request Nos. 113-115

25       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA.  In Request No.

    114, Mattel seeks all documents, including without limitation all communications, between

27

28

EXHIBIT ___D___

PAGE ___40___

1   Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies.  Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6       Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof.  Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his

    burden of demonstrating that the requests are overly burdensome.

11      Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13  do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that

14  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15  Bryant may be relevant to the issues of credibility and bias.

16      Mattel contends that Request No. 115 seeks documents that are relevant to determine

17  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18  that had been installed and run on the hard drive.  Bryant claims to have given his computer to his

19  niece.  Mattel also contends that the requested documents are relevant to the issues of credibility

20  and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21  inadequate, because evidence of any communication between Larian and his niece, regardless of

22  subject matter, is significant.

23      Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24  because they lack any subject matter or time constraints.  Further, Larian contends that the

25  requests constitute an improper fishing expedition and necessarily sweep in documents that are

26  not relevant to any claim or defense.

27  //

28

EXHIBIT _D_
PAGE _41_



1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The
2    requests are overbroad because they are not focused on relevant subject matter and are untethered
3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,
4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility
5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and
7    responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in
8    accordance with his supplemental responses.

9    The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

10    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and
11    suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all
12    documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad
13    Larian against Larian, including without limitation all declarations, affidavits, transcripts, video
14    and/or audio recordings and sworn testimony given by any person in such suit or arbitration
15    proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,
16    resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad
17    Larian. In his supplemental responses, Larian agrees to produce all documents referring or
18    relating to Bratz that are responsive to the requests and to which no privilege or other protection
19    applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between
21    Larian and his brother are relevant because they involve, among other matters, the conception and
22    creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit
23    the requests to the exclusion of potentially relevant documents. For example, Mattel contends
24    that documents that relate to the business, activities and plans of MGA in early 2000 are relevant
25    to the timing of the development of Bratz, whether or not they specifically refer to Bratz. Mattel
26    also contends that the requested documents are relevant to the value of the Bratz brand and
27    the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

EXHIBIT _D_

PAGE _42_

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8        Larian contends the instant requests are overbroad and unduly burdensome.  Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother.  Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17       Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations.  Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23       Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel.  For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___D___

PAGE ___43___

1   also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9   Telephone Records:  Request Nos. 178-181

10          In Request No. 178, Mattel seeks all documents relating to, including without limitation

11  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13          In Request No. 179, Mattel seeks all documents relating to, including without limitation

14  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17  this motion, however, Larian contends that he should be permitted to produce documents

18  responsive to Request No. 179 in redacted form as discussed more fully below.

19          In Request No. 180, Mattel seeks all documents relating to, including without limitation

20  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22          In Request No. 181, Mattel seeks all documents relating to, including without limitation

23  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25  communications made prior to January 1, 2001 that are responsive to the request and to which no

26  privilege or other protection applies.

27  //

28

EXHIBIT   D
PAGE      44

1  Mattel contends that Request No. 178 seeks documents relevant to show Larian's
2  communications with Bryant and other Mattel employees while such employees may still have
3  been employed by Mattel and before Larian claims to have known about Bratz.  Similarly, Mattel
4  contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and
5  Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them
6  to steal Mattel trade secrets.
7      Further, Mattel contends that the requested documents regarding telephone records are
8  relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show
9  communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent
10 they show communications with current and former Mattel employees, including Machado,
11 Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements
12 Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses.  With respect to
13 burden, Mattel contends that it would be more burdensome to attempt to produce the requested
14 records in redacted form, and further, that the protective order in place is sufficient to protect
   Larian's privacy concerns.
15     Larian contends that the requests regarding telephone records are overbroad, completely
16 unbounded as to subject matter, and necessarily sweep in private information that is completely
17 irrelevant to any of the claims or defenses in the case.  Larian also points out that the court
18 previously considered similar requests served on Bryant and allowed production of redacted
19 copies of telephone records as long as Bryant provided a signed verification that none of his
20 redactions related to Bratz, MGA or any other project he worked on for MGA.  Specifically,
21 Bryant was permitted to produce redacted phone records as long as he provided a "signed
22 verification that none of the telephone records that were redacted relate or refer in any way to
23 MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."
24 Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production
25 of Documents by Bryant).  Larian contends that he should be permitted to redact responsive
26 documents consistent with the court's prior order.  During the meet and confer, Larian offered to
27 provide redacted records and a signed verification that none of the redacted information was
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11


EXHIBIT _D_
PAGE _45_

1   relevant to the case, but Mattel did not respond to the offer.

2       Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3   relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4   request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5   private information that is completely irrelevant to the case. Larian should not be subjected to

6   such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7   the request to the communications, claims, and defenses identified above.

8       In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9   for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns. More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16  or that are otherwise relevant to the case.

17      Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

19  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. <u>See</u>

21  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

22  responsive to Request No. 180 in redacted form as specified above with respect to Request No.
    179.

23      Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24  is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25  to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27  without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

EXHIBIT _D_

PAGE _46_

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   <u>Statements to the Media:  Request Nos. 190-192, 194-197 and 199</u>

5       In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

    damages.

14      Larian contends that the requests are overbroad and unduly burdensome, particularly

15  because several of the requests seek publicly available information.  Further, Larian points out

16  that the court has already considered and rejected as overbroad a nearly identical request served

17  on MGA that called for all documents relating to any communications by MGA with any news

18  organization regarding the contested MGA products or the contested Mattel products.  Larian

19  contends that the same reasoning applies to the instant requests.

20      Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21  199 is denied.  Although several of the requests encompass potentially relevant documents, the

22  requests are overbroad and encompass documents that have little to no relevance to the claims and

23  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26  or damages.

    //

27

28

EXHIBIT _D_
PAGE _47_

1    Furthermore, many of these overbroad requests seek publicly available information that is

2    readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested

3    documents and information are not publicly available, such documents and information are

4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5    In either case, the burden and expense of searching for and producing responsive documents are

6    unjustified.

7

8    Communications With Mattel Employees: Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual

     while the individual was employed by Mattel.  Mattel contends that this request is directly

10   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

11   burden of production.

12   Larian contends that the request is overbroad and unduly burdensome because it is

13   unrestricted as to time and subject matter.  Larian also points out that the court has previously

14   found a similar request overbroad.  Larian further contends that employees in the toy industry are

15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as

16   Mattel is likely to have a high number of employees communicating with MGA or its officers,

17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18   Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19   to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although

20   the request is not limited by subject matter, it is limited in other respects to seek relevant

21   documents without imposing an undue burden.  The request is limited to communications

22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23   Mattel.  The request is also limited to only those communications that took place while the

24   individuals were employed at Mattel.

25   Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26   allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in

27   1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                          14

EXHIBIT _D_

PAGE _48_

1    No. 198 that are limited to the time frame 1999 to 2005.

2

3    Personal Financial Data:  Request Nos. 207-209 and 269

4         In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5    or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6    208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7    income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8    and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9    documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10   1999 to the present.

11        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12   information showing the timing of payments to Bryant and others, which in turn is relevant to the

13   timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14   208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15   condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16   information regarding the sources of Larian's income to determine whether they are attributable

17   to the alleged misconduct and thus subject to disgorgement.

18        Larian contends that the requested personal financial information is not relevant to the

19   claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20   banks nor his gross income have any bearing upon either compensatory or punitive damages or

21   Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22   Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23        Larian also contends that all three of the requests overlap substantially with requests

24   Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25   burden posed by these requests to him.  Further, Larian contends that the court has previously

26   found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27   no reason why the same result should not apply here.

28        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT  D
PAGE  49

1  requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2  several issues in the case.  For example, the requested information is likely to lead to information

3  regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4  the creation of Bratz.  The requested information is also likely to show Larian's income and net

5  worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6  unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7  information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8       Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9  Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  <u>Storage Devices:  Request Nos. 222 and 224</u>

13       In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19       Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system."  <u>See</u>

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27       Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT D

PAGE 50

1    With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2    authorize the routine production of a party's electronic devices. Mattel attempts to justify

3    Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4    Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5    laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6    months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7    destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8    these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9    has a right to inspect Larian's storage devices to ensure that relevant information has not been

10   deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11   launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12   Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13   purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14   Among other things, Request No. 222 encompasses every storage device that Larian has used to

15   copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

16   copies of Bratz-related video and audio content, but that is what the request seeks.

17        Request No. 222 is also duplicative because it requests information that is sought in

18   numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

19   requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

20   with the requests, Larian was required to search for documents in both hard-copy and electronic

21   form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22   devices.

23        Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24   and defenses in the case, and therefore do not justify the burden of production on Larian.

25   Bryant's Storage Devices: Request Nos. 225, 227 and 228

26        In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27   relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

EXHIBIT *D*

PAGE *51*

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2       Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices.  Mattel's Consolidated Separate Statement at p. 206.  Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7       Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10  <u>MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273</u>

11      In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

    Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12  Mexico"), both of which are named defendants.  In his supplemental responses, Larian agrees to

13  produce documents sufficient to show the ownership of these entities.

14      Mattel contends that the requests seek information relevant to refute MGA Mexico's

15  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16  attributable to the entities.  Mattel also contends that Larian's (or MGA's) ownership interest in

17  these companies is relevant to net worth.  Mattel contends that Larian's supplemental response is

18  inadequate because it would allow Larian to withhold contradictory information and conceal the

19  true ownership of the business entities.  Furthermore, Mattel contends that it is entitled to know

20  the ownership of these entities at times when different allegedly wrongful acts took place and to

21  determine if the ownership structure changed as a means of concealing assets or concealing the

22  payments of commercial bribes.

23      Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA.  Further, Larian contends that the requests are duplicative of a request

    Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

25  served on MGA.  Moreover, Larian contends that the requests are overbroad and unduly

26  burdensome, and that at most, he should only have to produce a list of owners.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18



EXHIBIT _D_
PAGE _52_

1        Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source.  Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4        Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

                                                      **IV. CONCLUSION**

8        For the reasons set forth above, it is hereby ordered as follows:

9

10       1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

11   produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

12   146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

13   documents that are responsive to these Requests.

14       2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

15       A.    produce, without limitation, all non-privileged documents that are

16   responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

17   269; and

18       B.    produce, in accordance with his supplemental responses, non-privileged

19   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

20   209.

21       C.    Larian may produce documents responsive to Request Nos. 179, 180 and

22   181 in redacted form as provided herein.

23       D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

24   209, 222, 224, 225, 227, 228, 272 and 273.

25       3.    Larian shall produce all non-privileged documents that are required by this Order

26   that are in his possession, custody or control and that have not already been produced no later

27   than January 11, 2008.

28       4.    Larian shall produce a privilege log no later than January 15, 2008.

EXHIBIT __D__

PAGE __53__

1          5.      Mattel's request for sanctions is denied.

2          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3   Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5   Dated: December 31, 2007                    _____
                                                 HON. EDWARD A. INFANTE (Ret.)
6                                                     Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,                                                        20
    CV-04-09049 SGL (RNBx)

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT _D_
PAGE _55_

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Proctor, Brett on 1/3/2008 at 10:45 AM PST and filed on 1/3/2008

**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**      2:04-cv-9049
**Filer:**            Mattel Inc
**Document Number:** 1439

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions filed by Defendant Mattel Inc re: MOTION to Compel [1092] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Emil W Herich    eherich@kmwlaw.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

EXHIBIT D

PAGE 56

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmv@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Larian Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/3/2008] [FileNumber=5143390-0]
[5a2187944fc1d22750aedb257eb3d8e53a9b8728f71d46135a28cce1a78d4d01e2732
dde016f334ddcc72b8e691e63a2605761dac19ba72309568688b0698f2c]]

EXHIBIT D
PAGE 57