# EXHIBIT E



EXHIBIT E
PAGE 58

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING HARD DRIVES; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declaration of Scott B. Kidman filed concurrently]<br><br>Hearing Date:   February 25, 2008<br>Time:              10:00 a.m.<br>Place:             Courtroom 1<br><br>**Phase 1**<br>Discovery Cut-off:    January 28, 2008<br>Pre-trial Conference:  April 21, 2008<br>Trial Date:            May 27, 2008 |

07209/2348965.1

1-16

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of The Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule portions of the Discovery Master's December 31, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions relating to the production of hard drives used by Isaac Larian and Carter Bryant.  In the alternative, Mattel asks this Court to appoint an expert witness in the field of computer forensics and electronic data recovery to determine if data relevant to this action has been deleted or permanently destroyed off of hard drives in the possession of Isaac Larian.

This Motion is made pursuant to Federal Rules of Civil Procedure 72(a) and Federal Rule of Evidence 706 on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law in its ruling denying Mattel's motion to compel production of Isaac Larian's and Carter Bryant's hard drives relating to Bratz, and on the grounds that there is good cause for the appointment of an independent, neutral expert in these areas because the analyses to be performed are highly relevant, and to protect any privacy interests raised by Isaac Larian.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Scott B. Kidman filed concurrently herewith, and all other matters of which the Court may take judicial notice.

07209/2348965.1

-2-

EXHIBIT _E_

PAGE _60_

1

## Statement of Rule 37-1 Compliance

2       The parties met and conferred regarding this motion on January 10,

3  2008.

4

5  DATED:  January 16, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
6

7                                    By /s/ Scott B. Kidman
                                        Scott B. Kidman
8                                       Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2348965.1

-3-

EXHIBIT E

PAGE 61

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

A. Spoliation by Carter Bryant .......... 2

B. Spoliation by Isaac Larian .......... 6

C. Mattel's Amended Complaint .......... 8

D. Discovery Master's Order Denying Motion to Compel Production of Isaac Larian and Carter Bryant Hard Drives. .......... 9

ARGUMENT .......... 11

I. THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE SPOLIATION IS AN ELEMENT OF MATTEL'S CLAIMS .......... 12

II. EVEN IF SPOLIATION WERE NOT PART OF MATTEL'S CLAIMS, IT WOULD STILL BE RELEVANT .......... 13

III. IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A NEUTRAL EXPERT WITNESS .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Bridgeport Music, Inc. v. Universal Music Group, Inc.*,
    244 F.R.D. 271 (S.D.N.Y. 2007)..................................................12

*DeAngelis v. A. Tarricone, Inc.*,
    151 F.R.D. 245 (S.D.N.Y. 1993)..................................................15

*Glover v. BIC Corp.*,
    6 F.3d 1318 (9th Cir. 1993)........................................................13

*Kucala Enterprises, Ltd.*,
    2003 WL. 21230605 .................................................................13

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.*,
    2003 WL. 21230605 (N.D. Ill. 2003).........................................13

*Leon v. IDX Systems Corp.*,
    464 F.3d 951 (9th Cir. 2006)......................................................13

*In re Philadelphia Mortgage Trust*,
    930 F.2d 306 (3d Cir. 1991).......................................................14

*Rambus, Inc. v. Infineon Technologies AG*,
    222 F.R.D. 280 (E.D. Va. 2004)..................................................13

*Students of California School for the Blind v. Honig*,
    736 F.2d 538 (9th Cir. 1984),
    vacated on other grounds, 471 U.S. 148 (1985)..................14, 15

### Statutes

18 U.S.C. §§ 1961(1) ........................................................................8

Fed. R. Evid. 706 .....................................................................14, 15

Fed. R. Evid. 706(a)................................................................14, 15

Fed. R. Civ. Proc. 72(a) .........................................................11, 12

-ii-

EXHIBIT _E_

PAGE _63_

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel has uncovered serious evidence of spoliation. Among other things, after a drawn out discovery battle, Mattel discovered that evidence on Carter Bryant's hard drives was destroyed using a software program entitled "Evidence Eliminator." There is also deposition testimony that Isaac Larian routinely switches computers at least once a year, and has the old computer wiped of all information, and that often Larian has rendered the entire computer unusable. There is testimony that Larian ordered another MGA executive to white-out Mattel fax headers from Carter Bryant's signed contract with MGA in an attempt to hide the fact that Carter Bryant was working at Mattel at the time. These facts ultimately became part of the basis for Mattel's counterclaims alleging RICO violations.

In an attempt to learn the extent of this damage, and establish RICO liability, Mattel served requests for production on Isaac Larian seeking hard drives that were used by either him or Carter Bryant and relating to this action. After Mattel moved to compel, the Discovery Master denied production of these drives, finding them "minimally relevant (if at all)."

Far from being irrelevant, these drives—and the destruction of data on them—are specifically referenced in Mattel's counterclaims. The destruction of the data is one of the elements of these claims. Moreover, and as defendants themselves acknowledged in their motion for terminating sanctions, evidence of spoliation could ultimately result in a directed verdict for Mattel.

The Discovery Master's Order is clearly erroneous and contrary to law. It prevents Mattel from access to drives necessary to establish its claims, and it incorrectly applies a relevance standard to prevent investigation into spoliation, even where evidence has been adduced that spoliation occurred.

Finally, at a minimum, the Court should appoint its own expert witness in computer forensics and electronic data recovery to investigate spoliation. If

07209/2348965.1

-1-

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MAS~

EXHIBIT E

PAGE 64

1   Mattel cannot access these drives, having an independent expert do so would be the

2   only way of establishing whether in fact spoliation occurred.

3                    **Factual Background**

4           During the course of discovery in this case, Mattel has uncovered

5   evidence of spoliation by defendants Carter Bryant and Isaac Larian.

6   A.   **Spoliation by Carter Bryant**

7           During the course of discovery, Bryant repeatedly represented that he

8   had possession of a single Desktop computer that he had purchased the day after he

9   resigned from Mattel. His counsel represented that it searched the drive and found

10  no responsive documents. Bryant confirmed this in a November 1, 2004 letter to

11  Mattel claiming that the Desktop "has been retrieved and searched for responsive

12  documents, and none have been located."[1]  Mattel wrote back asking that the

13  Desktop hard drive be preserved.[2]

14          Again, in January 2005, in response to a motion to compel production

15  of the hard drive, Bryant's counsel represented to the Court that he had "tirelessly

16  searched for and inspected" the Desktop drive "for relevant information" and had

17  made an "extensive and diligent search" for responsive information.[3]  Bryant's

18  _____

19  [1]   Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John

20  Quinn, counsel for Mattel, at p. 2, attached as Exhibit 1 to the Declaration of Scott

21  B. Kidman, dated January 16, 2007 filed concurrently herewith ("Kidman Dec.")

    ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made

22  further inquir[i]es on that subject to Mr. Bryant and my colleagues. Mr. Bryant did

    not own a home computer during his time at Mattel. He later purchased a computer,

23  which he used for a time, and then gave away to his niece. That computer has been

24  retrieved and searched for responsive documents, and none have been located. Mr.

    Bryant declines to produce his hard drive for inspection for the reasons articulated in

25  his response to Mattel's document request.").

26  [2]   Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith

    A. Jacoby, Kidman Dec., Exh. 2.

27  [3]   Joint Stipulation Re: Mattel's Motion to Compel Production of Documents,

28  filed on January 6, 2005 (excerpts) ("Joint Stipulation") at 62:1-13, Kidman Dec.,

        (footnote continued)

EXHIBIT E
PAGE 65

1  counsel averred that he had "extensively" examined the Desktop and that the firm

2  had spent "scores of attorney hours" searching for responsive documents, and had

3  found none.[4]

4          Due to an intervening discovery stay, Mattel's original motion to

5  compel was not ruled on.  After Mattel renewed its motion, Bryant represented that

6  he had conducted a "diligent" search for the hard drives and stated that the *only*

7  drive he could locate was from the Desktop.[5]  Though Carter Bryant had previously

8  stated that he used two other computers, including one belonging to a laptop

9  computer, Bryant said they could not be found.[6]

10         The Discovery Master granted Mattel's motion to compel.[7]  Shortly

11  before the production deadline, Bryant asked Mattel for an extension of time to

12  comply with the Discovery Order, claiming additional time was required because (i)

13  the quantity of responsive documents "may be significant" and (ii) because Bryant

14

15

16

_____

17  Exh. 3; [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and

18  Cross-Claimant Carter Bryant's Portion of Joint Stipulation (excerpted and without

19  exhibits) ("2005 Jacoby Dec.") at ¶¶ 22, 23, attached as Exh. 4 to the Kidman Dec.
    Bryant's opposition also made clear that the hard drive purportedly searched was

20  from the Desktop. Id. at ¶ 23 (referencing the "hard drive from Bryant's home
    computer, which he gave to his niece in 2002").

21     [4]    Joint Stipulation at 62:2-13, 18-20, Kidman Dec., Exh. 3; 2005 Jacoby Dec. at

22  ¶¶ 23, 24, Kidman Dec., Exh. 4.
       [5]    Separate Statement of Defendant Carter Bryant in Opposition to Mattel's

23  Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement")

24  at 39, Kidman Dec., Exh. 5; Declaration of Keith A. Jacoby in Support of Carter
    Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents

25  (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Kidman Dec., Exh.

26  6.
       [6]    Bryant's 2007 Separate Statement at 39, Kidman Dec., Exh. 5.

27     [7]    Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25,

28  2007 at 17, Kidman Dec., Exh. 7.

07209/2348965.1

EXHIBIT  E

PAGE  66

1  would be traveling.[8]  Mattel agreed to extend Bryant's time to produce the hard
2  drives.[9]

3          Four days later, in a February 27, 2007 email, Bryant asserted a new
4  reason for failing to produce the hard drives, i.e., that it contained some unspecified
5  "highly private material" and seeking "some sort of agreement" on that issue.[10]
6  Mattel's counsel agreed to extend the deadline.  In return, Bryant agreed to provide a
7  log of the "highly private" files at issue by no later than the end of the following
8  week (by March 23, 2007).[11]  By March 26, 2007, Bryant had still not produced that
9  log.[12]

10         In view of Bryant's failure to comply with the January 25, 2007 Order,
11 Mattel sought to meet and confer in advance of a motion to enforce it.[13]  Bryant's
12 counsel then made two new claims:

13         First, although Bryant had previously represented to the Court that he
14 *only* had the Desktop hard drive,[14] he now stated that forensic images of *two* Bryant

15

16  _____

17  [8]   Stipulation and Order re: Request to Extend Deadline Within Which Carter
    Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting
18  Mattel's Motion to Compel Production of Documents dated February 23, 2007,
    Kidman Dec., Exh. 8.
19  [9]   Id.
    [10]  E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and
20  Michael Zeller, Kidman Dec., Exh. 9.
21  [11]  Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller,
    Kidman Dec., Exh. 10; letter dated March 16, 2007 from Douglas Wickham to
22  Michael Zeller, Kidman Dec., Exh. 11;  letter dated March 27, 2007 from Douglas
23  Wickham to Michael Zeller, Kidman Dec., Exh. 12.
    [12]  Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham,
24  Kidman Dec., Exh. 16.
25  [13]  Id.
    [14]  Bryant's 2007 Separate Statement at 39, Kidman Dec., Exh. 5; 2007 Jacoby
26  Dec. at ¶31, Kidman Dec., Exh. 6; Letter dated March 26, 2007 from Douglas
27  Wickham to Michael Zeller, Kidman Dec. Exh. 13; Letter dated March 27, 2007
    from Douglas Wickham to Michael Zeller, Kidman Dec. Exh. 14.
28

EXHIBIT ____E____

PAGE __67__

1  hard drives had been made in *July 2004*—after this suit was filed and long before

2  Bryant's representations to the Court that *only* the Desktop drive had been located.[15]

3  Bryant claimed that one of these forensic images made in July 2004 was the laptop

4  drive that Bryant had represented to the Court had not been located.[16]  The existence

5  of these drives had thus been concealed since July 2004.[17]  Bryant further informed

6  Mattel that the imaged data were from the 2002 and 2003 time period, giving the

7  impression that the computers from which the hard drives were imaged were not in

8  use before that time.[18]

9        Second, in response to Mattel's specific requests for an explanation

10  regarding the status of the Desktop hard drive, Bryant's counsel stated that it no

11  longer knew the whereabouts of the Desktop.[19]  Counsel stated that it was "not sure"

12  about the accuracy of its prior representations—i.e., that the Desktop drive had been

13  retrieved from Bryant's niece—and that it may have been "wrong."[20]

14  _____

15  [15] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman
16  Dec., Exh. 15.
[16] Id.  More specifically, Bryant identified the two images that were made in
17  July 2004 as being of (1) a 20 GB Travelstar hard drive from a Compaq Presario
18  laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive. Id., p. 1.  Also during
the meet and confer process, Bryant's counsel represented that Bryant was still in
19  possession of the physical hard drive from the laptop but no longer had the Quantum
20  hard drive. Id., p. 1.
[17] Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller,
21  Kidman Dec. Exh. 14.  Bryant's counsel further disclosed that there were additional
22  "hard drive(s)" that had been "recently copied in Missouri," and that "[a]fter further
examination, it appears that these drives also contain highly private, non-responsive
23  documents." Id.  As noted above, in subsequent conversations, Bryant's counsel
24  stated that there were three images of these additional drives, for a total of at least
five hard drive images.  Letter dated April 6, 2007 from Michael Zeller to Douglas
25  Wickham, Kidman Dec., Exh. 15.
26  [18] Id.
[19] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman
27  Dec., Exh. 15.
[20] Id.
28

07209/2348965.1

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

EXHIBIT ___E___

PAGE ___68___

1    Faced with these starkly conflicting representations, Mattel moved to
2  enforce the Court's January 25, 2007 Order and again compel Bryant to produce the
3  computer hard drives.[21]  The day before Bryant's Opposition was due, Bryant's
4  counsel wrote stating that it had discovered an image of the Desktop in its
5  possession, and would now make it available to Mattel.[22]  Mattel imaged that drive,
6  and took its motion off calendar.[23]  Shortly after, Bryant's counsel (now at Keker &
7  Van Nest) subsequently produced the Laptop drive and the image.

8    Upon reviewing the drives, Mattel discovered that a software program
9  titled "Evidence Eliminator" had been installed and run on them.  Evidence
10 Eliminator purports to be a program designed to permanently destroy data to prevent
11 its use in legal proceedings:  "Evidence Eliminator ... the data destroyed is 'gone
12 forever' and it is impossible to create mirror images of defendants' hard drives ..."[24]
13 This meant that, although it is undisputed that Bryant used the Desktop from
14 October 21, 2000 to November 2003, data from 2000 – 2001 had been eliminated—
15 perhaps explaining why Bryant had represented that (without explanation) only data
16 from 2002 to 2003 was present on the drive.

17    **B.**   **Spoliation by Isaac Larian**

18    Carter Bryant is not the only defendant to have apparently destroyed
19 evidence.  To date, Mattel has uncovered evidence pointing to two types of actions
20 by Isaac Larian and MGA that have destroyed or altered relevant evidence.

21

22

23 [21]   See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce
Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer
24 Hard Drive, dated April 10, 2007, Kidman Dec., Exh. 16.
25 [22]   Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller, Kidman
Dec., Exh. 17.
26 [23]   Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order
to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop
27 Computer Hard Drive, Kidman Dec., Exh. 18.
28 [24]   Kidman Dec. ¶ 20, Exh. 19.

07209/2348965.1

EXHIBIT __E__
PAGE __69__

1     **Removal of Fax Headers from Carter Bryant's Contract.** When

2 Larian first hired Carter Bryant, he was a Mattel employee.  Bryant sent his signed

3 contract with MGA to MGA from a Mattel fax machine.  Upon receiving this

4 document, Larian ordered an MGA executive to remove the fax headers showing

5 that the fax was sent from Mattel.  As this MGA executive testified:

6         When the original contract was executed by Carter Bryant,

7         it was sent to me via fax, and on the top of the fax listed

8         the phone number from where it was faxed, which said

9         "Barbie Collectibles," and at one point my boss, Isaac

10         Larian, asked me to white that out and send it to a lawyer,

11         Patty Glaser.[25]

12     **Destruction of Computers and Computer Hard Drives.** Isaac

13 Larian has also destroyed his computers and the information contained on them,

14 including since the inception of this case.   Larian generally switches computers at

15 least once a year.[26]  In the process, he and MGA wipe the information from those

16 older hard drives of Mr. Larian's computers, preserving only a portion of the

17 information they contained.[27]  An MGA employee testified,

18         Q.   Have any of Mr. Larian's laptops that have been

19         replaced not been wiped?

20         A.   No.

21         Q.   They all have been wiped?  We had a double

22         negative there.  All of the laptops that Mr. Larian -- all of

23         the hard drives of the laptops that Mr. Larian has replaced

24         have been wiped?

25 

26   [25]  Tr. of Victoria O'Connor Depo. at 18:13-18, Kidman Dec., Exh. 20.

27   [26]  See Depo. Tr. of Ken Lockhart (Vol. 2), dated June 15, 2007 at 255:20-21, Kidman Dec., Exh. 21.

28   [27]  Id. at 255:2-258:9.

-7-

EXHIBIT _E_

PAGE _70_

1          A.   The ones which were -- where the computer was

2          still functional get reimaged before anyone else is allowed

3          to use them.[28]

4 Larian has damaged many of his older computers so that they are no longer

5 functional. That same witness testified that, although Larian's computers are

6 frequently changed, "most of the time when we're replacing laptops for him, they're

7 generally nonfunctional."[29]

8     **C.**   <u>**Mattel's Amended Complaint**</u>

9         In July of 2007, after this Court's Order allowing Mattel to file its

10 counterclaims, Mattel incorporated the facts regarding spoliation as a basis for its

11 RICO claims—Mattel's RICO claim was explicitly based on alleged destruction of

12 evidence on the hard drives of Carter Bryant and Isaac Larian:

13        93.   The pattern of racketeering activity, as defined by 18

14             U.S.C. §§ 1961(1) and (5), presents both a history of

15             criminal conduct and a distinct threat of continuing

16             criminal activity . . . .These racketeering activities

17             included repeated acts of: . . .

18         (c)   Tampering With a Witness, Victim or

19             Informant:  Counter-defendants MGA, MGA

20             Entertainment (HK) Limited, MGA de

21             Mexico, Larian, Bryant, Machado and Does 4

22             through 10, aided and abetted by each other

23             and some or all of the remaining members of

24             the MGA Criminal Enterprise, did corruptly

25             alter, destroy, mutilate, or conceal more than

26

27   [28] <u>Id.</u> at 257:24-258:9.

28   [29] <u>Id.</u> at 256:4-5.

-8-

EXHIBIT _E_

PAGE _71_

1     one a record, document, or other object, or
2     attempted to do so, with the intent to impair
3     the object's integrity or availability for use in
4     an official proceeding, including this action,
5     including without limitation by . . .
6         (iii)   destroying electronic and other evidence,
7                 including by **destroying evidence**
8                 **previously contained on Carter**
9                 **Bryant's and Isaac Larian's computer**
10                **hard drives**.[30]
11    **D.    Discovery Master's Order Denying Motion to Compel Production**
12            **of Isaac Larian and Carter Bryant Hard Drives.**
13            On June 13, 2007, Mattel propounded its First Set of Requests for
14    Production of Documents and Things To Isaac Larian.[31]  Among these requests were
15    two seeking the production of Isaac Larian's hard drives that were used to store data
16    related to Bryant or Bratz, and any hard drives used by Carter Bryant to store
17    information relating to Bratz or MGA in Larian's possession.[32]  For the Court's
18    convenience, the text of these Requests is included verbatim, below:
19
20
21
22
23
24    _____
      [30]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12,
25    2007 (public redacted version, without exhibits), at ¶ 93, Kidman Dec., Exh. 22.
26    [31]   Kidman Dec., ¶ 24.
      [32]   Request Nos. 222 and 225, found in the excerpts of Mattel, Inc.'s
27    Consolidated Separate Statement in Support of Motion to Compel Production of
28    Documents by Isaac Larian at pp. 193-197, Kidman Dec., Exh. 23.

EXHIBIT E
PAGE 72

1  **REQUEST FOR PRODUCTION NO. 222:**

2       Each STORAGE DEVICE that YOU have used to create, prepare, generate,

3  copy, transmit, receive, delete or modify any DIGITAL INFORMATION

4  RELATING TO BRATZ, ANGEL or BRYANT.

5  **REQUEST FOR PRODUCTION NO. 225:**

6       Each STORAGE DEVICE that BRYANT has used to create, prepare,

7  generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION

8  RELATING TO BRATZ, ANGEL or MGA.[33]

9

10       Larian refused to provide any documents in response to these and other

11  Requests, and Mattel moved to compel their production on October 11, 2007.[34] In

12  its motion and reply, Mattel showed that its counterclaims were based on, among

13  other things, destruction of evidence from computer hard drives.[35] Moreover,

14  defendants had placed spoliation in issue in their motion for terminating sanctions

15  against Mattel, and Mattel argued that it should have a right to inquire in this area on

16  that basis alone.[36] Of course, the sanctions for spoliation of evidence can be

17  significant.

18       In Opposition, Larian argued that he should not have to produce his

19  hard drives because Mattel had shown no improper conduct sufficient to justify

20  production of the drives, and that he had privacy interests that would be impinged

21  upon by their production.[37]

22

23  _____

24  [33]  Id.
   [34]  Kidman Dec., ¶ 25.

25  [35]  Excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of

26  Motion to Compel Production of Documents by Isaac Larian at p. 203, Kidman Dec., Exh. 23.

27  [36]  Id.

28  [37]  Id. at 199-203.

-10-

EXHIBIT E

PAGE 73

1    Judge Infante ruled on the motion on December 31, 2007.[38]  In
2  considering the issue of the hard drive, Judge Infante stated that the only basis
3  Mattel had shown for seeking access to the hard drives was, "to ensure that relevant
4  information has not been deleted or permanently destroyed."[39]  As such, he stated
5  that Mattel was seeking to launch a "fishing expedition" for new claims.  This
6  ignored that Mattel was seeking access to drives specifically referenced in its
7  allegations regarding spoliation in its existing counterclaims.[40]  The Discovery
8  Master also found that the request was overbroad, because it could be interpreted to
9  encompass every CD and DVD in MGA's possession containing copies of Bratz-
10  related video and audio content.[41]  Finally, the Discovery Master ruled that the
11  request was duplicative, because other Mattel requests sought documents that would
12  require Larian and MGA to search the drives themselves.[42]

13                         **Argument**

14    By the stipulation and court order appointing a Discovery Master, the
15  Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings
16  should be overruled if they are "clearly erroneous or [] contrary to law." Fed. R. Civ.
17  Proc. 72(a).

18
19
20
21
22  [38]  Discovery Master's Order Granting in Part and Denying in Part Mattel's
    Motion to Compel Production of Documents by Isaac Larian; Denying Request for
23  Sanctions, dated December 31, 2007, Kidman Dec., Exh. 24.
24  [39]  Id. at 17.
    [40]  Id.
25  [41]  Id.  Mattel does not believe the request is unduly burdensome, but is prepared
26  to limit its Request to seek only those hard drives that are or were in the possession
    of Isaac Larian or Carter Bryant personally, or that stored files created or worked
27  with by either of these two individuals.
28  [42]  Id.

07209/2348965.1

-11-
MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

EXHIBIT _E_
PAGE _74_

## I.   THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE SPOLIATION IS AN ELEMENT OF MATTEL'S CLAIMS

As noted above, the Discovery Master's Order clearly stated as a basis for his ruling his belief that Mattel's search for evidence of deletion of relevant evidence "suggests that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure."

Mattel is not "fishing" for new claims because it has *already alleged* the destruction of computer evidence as a basis for its existing counterclaims. In order to prove those allegations, Mattel must have access to the computers. See Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."); Bridgeport Music, Inc. v. Universal Music Group, Inc., 244 F.R.D. 271, 272-273 (S.D.N.Y. 2007) (upholding magistrate judge's ruling that documents should be produced where they were encompassed in language of complaint).

Mattel cannot confirm whether evidence has been destroyed without obtaining the hard drives. It has discovered destruction of evidence on two drives already.[43] It has deposition testimony that data was destroyed on the drives at issue here.[44] But, without access to the computer hard drives, Mattel will be unable to prove its claims for the simple reason that it has been denied access to the very items it needs in order to do so.

In this context, the Discovery Master's findings that the requests are "duplicative" misses the point. The issue is not whether these drives have been reviewed for relevant documents. The issue is whether defendants deliberately destroyed relevant documents from the drives *before* having them reviewed. That

---

[43] Kidman Dec. ¶ 20, Exh. 19.
[44] Depo. Tr. of Ken Lockhart (Vol. 2), dated June 15, 2007 at 255:2-258:9, Kidman Dec., Exh. 21.

EXHIBIT E
PAGE 75

1 they did so is part of the basis for Mattel's RICO claims.  Whether MGA or Larian

2 have since reviewed drives and found that no relevant information is currently

3 present has no bearing on this issue.

4       Because the Discovery Master did not consider that spoliation of

5 information on computers is part of the very claims Mattel has made, his ruling is

6 clearly erroneous, and should be modified to require production of the drives.

7 **II.   EVEN IF SPOLIATION WERE NOT PART OF MATTEL'S CLAIMS,**

8      **IT WOULD STILL BE RELEVANT**

9       Even if electronic spoliation were not an element of Mattel's claims, the

10 Order would still be contrary to law.  The Discovery Master stated that investigation

11 into spoliation would be a "fishing expedition" for new claims.  But courts routinely

12 permit discovery on spoliation issues, particularly in cases like this, where Mattel

13 has adduced a basis to believe spoliation has occurred.  That spoliation might be a

14 basis for a new claim has not been an obstacle to such discovery.  See, e.g., Kucala

15 Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL 21230605, *1 (N.D. Ill. 2003)

16 (noting prior order to produce drive for inspection for spoliation); Rambus, Inc. v.

17 Infineon Technologies AG, 222 F.R.D. 280, 296 (E.D. Va. 2004) (permitting

18 discovery on spoliation issues).

19       Potential spoliation is a relevant and proper subject of discovery.  As

20 MGA argued in its motion for terminating sanctions, one possible result of

21 spoliation could be a directed verdict in Mattel's favor.  See, e.g., Leon v. IDX

22 Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal of action for

23 deletion of files from computer hard drive); Kucala Enterprises, Ltd., 2003 WL

24 21230605 at *6 (dismissing action for use of Evidence Eliminator software to delete

25 computer files).  At the least, such spoliation would potentially give Mattel a

26 valuable presumption at trial of Bryant's work on Bratz while employed at Mattel.

27 See, e.g., Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).

28

07209/2348965.1

EXHIBIT E
PAGE 76

1    Finally, it cannot be argued that Mattel is fishing for new claims, when

2 it was defendants who first raised the issue of spoliation, and made it a part of this

3 case. Since defendants have opened the door, Mattel should be permitted its own

4 share of inquiry in this area.

5  **III.   IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A**

6        **NEUTRAL EXPERT WITNESS**

7    At a minimum, the Court should appoint a neutral expert to investigate

8 possible spoliation. This is the only other method Mattel would have to prove its

9 counterclaims, and determine the extent of spoliation. The Court's power to appoint

10 expert witnesses is codified at Federal Rule of Evidence 706. Under that Rule,

11        The court may on its own motion or on the motion of any

12        party enter an order to show cause why expert witnesses

13        should not be appointed, and may request the parties to

14        submit nominations. The court may appoint any expert

15        witnesses agreed upon by the parties, and may appoint

16        expert witnesses of its own selection.

17 Fed. R. Evid. 706(a). By nature, "a court-appointed expert witness is neutral with

18 regard to all parties." In re Philadelphia Mortgage Trust, 930 F.2d 306, 309 (3d Cir.

19 1991). Such an expert would also alleviate any of Isaac Larian's alleged concerns

20 regarding privacy and privilege, since Mattel would not have direct access to the

21 drives.

22    The Court has broad discretion to appoint experts whenever it deems

23 such appointments advisable. See Students of California School for the Blind v.

24 Honig, 736 F.2d 538, 549 (9th Cir. 1984) (affirming *sua sponte* reopening of trial

25 and appointment of neutral expert in light of conflicting expert testimony proffered

26 by parties), vacated on other grounds, 471 U.S. 148 (1985); Fed. R. Evid. 706

27 advisory comm. notes ("The inherent power of a trial judge to appoint an expert of

28 his own choosing is virtually unquestioned."). Provided the requirements expressly

07209/2348965.1

-14-

EXHIBIT  E

PAGE  77

1   set forth in the <u>Rule</u> are satisfied,[45] a court's appointment of experts will be upheld.

2   See <u>Students of California School for the Blind</u>, 736 F.2d at 549 ("As required by

3   Rule 706, the judge allowed both parties to thoroughly cross-examine its appointed

4   expert.  Thus, under Rule 706, the district court's appointment of a neutral expert

5   was proper."); <u>DeAngelis v. A. Tarricone, Inc.</u>, 151 F.R.D. 245, 246 (S.D.N.Y.

6   1993) (granting defendant's motion for appointment of experts because there was

7   good cause:  "Use of one or more court-appointed experts . . . is appropriate where

8   called for by specific circumstances, provided that the parties have advance notice

9   and an opportunity to participate in selection of the expert and in the definition of

10  the expert's duties.").

11                                  <u>Conclusion</u>

12          For the foregoing reasons, Mattel respectfully requests that its motion

13  be granted in its entirety.

14

15  DATED:  January 16, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
16

17                                    By /s/ Scott B. Kidman
18                                      Scott B. Kidman
                                        Attorneys for Mattel, Inc.
19

20

21

22

23

24

25  _____

26  [45]   Appointed experts must consent to act, act pursuant to written instructions
        from the Court, advise the parties of their findings, be willing to testify at deposition
27      and/or trial at the request of any party, and be subject to cross-examination by any
        party.  See <u>Fed. R. Evid.</u> 706(a).
28

07209/2348965.1

                                        -15-

EXHIBIT  E

PAGE  78

# EXHIBIT F

EXHIBIT F
PAGE 79



1
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
 865 South Figueroa Street, 10th Floor
5 Los Angeles, California 90017-2543
 Telephone: (213) 443-3000
6 Facsimile: (213) 443-3100

7 Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 12 | Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 13 | vs. | |
| 14 | MATTEL, INC., a Delaware corporation, | [~~PROPOSED~~] ORDER GRANTING MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING HARD DRIVES |
| 15 | | |
| 16 | Defendant. | |
| 17 | AND CONSOLIDATED ACTIONS | **Phase 1** |
| 18 | | Discovery Cut-Off:    January 28, 2008 Pre-Trial Conference: May 5, 2008 Trial Date:          May 27, 2008 |

19

20

21

22

23

24

25

26

27

28

07209/2414052.3

EXHIBIT F
PAGE 80

1  [~~PROPOSED~~] ORDER

2

3          Having considered Mattel, Inc.'s Motion Objecting To Portions Of

4  Discovery Master's December 31, 2007 Order Regarding Hard Drives and all

5  supporting papers, all papers submitted in opposition to the Motion, and having

6  considered the arguments of counsel, the Court finds good cause to grant the Motion

7  and to overrule in part the Discovery Master's Order Granting in Part and Denying

8  in Part Mattel's Motion to Compel Production of Documents by Isaac Larian;

9  Denying Request for Sanctions, dated December 31, 2007, as to Request Nos. 222

10  and 225:

11          IT IS HEREBY ORDERED THAT the Discovery Master's Order is

12  overruled as to Request Nos. 222 and 225.  Destruction of electronic evidence on

13  hard drives is relevant to Mattel's claims, including specific predicate acts alleged in

14  Mattel's RICO counterclaims.  The Discovery Master's Order denying such evidence

15  to Mattel was clearly erroneous and contrary to law.

16          IT IS FURTHER ORDERED THAT Isaac Larian shall make available

17  within ten (10) calendar days the following hard drives that are in his possession,

18  custody, or control for inspection and copying:

19          1.      All hard drives from, or that were at any time connected to, any

20                  computer used by either Isaac Larian or Carter Bryant at any time from

21                  1999 to the present and that contain or previously contained any digital

22                  information referring or relating to Bratz, Angel, MGA or Bryant (as

23                  those terms are defined in Mattel's Requests).

24  A consultant of Mattel's choosing, who Mattel will identify before the inspection,

25  shall be allowed to inspect each of the hard drives produced.  Mattel's consultant

26  shall be allowed to make a forensically sound image of each hard drive produced.

27  The inspection may take place at a location of Larian's choosing in this District, so

28  long as the location has the minimum requirements necessary to inspect and create a

07209/2414052.3

-2-

EXHIBIT ___5___

PAGE __81__

1 forensically sound image of the produced hard drives.  A consultant of Larian's
2 choosing, who Larian will identify before the inspection, shall be allowed to observe
3 the inspection and imaging of the hard drives.
4      IT IS FURTHER ORDERED THAT Mattel's consultant shall have the
5 right to inspect any and all information on said hard drives to determine:
6      (a)   whether, when and by whom any information was deleted,
7 destroyed, written over, lost, exported, moved, spoliated or otherwise rendered
8 inaccessible or unreadable;
9      (b)   whether, when and by whom any attempts were made to delete,
10 destroy, write over, export, move, spoliate or otherwise render inaccessible or
11 unreadable any information on those hard drives;
12      (c)   the current or past presence or use of any hardware or software
13 tool to accomplish any of the actions identified above;
14      (d)   whether any information deleted, destroyed, written over, lost,
15 exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be
16 recovered; and
17      (e)   to recover any such information, in whole or in part.
18
19 DATED:   2/27  ,2008
20                    Hon. Stephen G. Larson
                   United States District Judge

07209/2414052.3

[PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE HARD DRIVES

EXHIBIT F
PAGE 82

# EXHIBIT G

EXHIBIT G

PAGE 83

# THIS EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT H

EXHIBIT _H_

PAGE _93_

**quinn emanuel** trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3152

WRITER'S INTERNET ADDRESS
marshallsearcy@quinnemanuel.com

March 17, 2009

VIA FACSIMILE

Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:   MGA Entertainment, Inc. v. Mattel, Inc.

Dear Amman:

I write concerning MGA's duty to supplement its production under Fed. R. Civ. P. 26(e)(1)(A). As you know, on February 27, 2008, the Court ordered that:

> Isaac Larian shall make available...the following hard drives that are in his possession, custody or control for inspection and copying:

> 1.   Mattel's consultant would be allowed to inspect and copy hard drives in the possession of Isaac Larian that were connected to any computer used by either Isaac Larian or Carter Bryant at any time from 1999 to the present that contain or previously contained any digital information referring or relating to Bratz, Angel, MGA or Bryant (as those terms are defined in Mattel's requests).

Mattel's consultant reviewed Mr. Larian's hard drives in June of 2008. Undoubtedly, since that time, information falling within the scope of the Court's Order has been placed on hard drives within Mr. Larian's possession, custody or control. However, neither MGA nor Mr. Larian have provided any such additional hard drives for further review .

**quinn emanuel urquhart oliver & hedges, llp**
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL. 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL. 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL. 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL. +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT  H
PAGE  94

Under Rule 26(e)(1)(A), MGA and Mr. Larian are required to seasonably supplement their prior production and allow additional inspection of Mr. Larian's hard drives by Mattel's consultant. See also United States v. Boyce, 148 F.Supp.2d 1069, 1088 (S.D. Cal. 2001).
Accordingly, please let us know the date upon which this inspection may take place. Alternatively, if MGA and Mr. Larian do not intend to voluntarily permit inspection of additional hard drives falling within the scope of Judge Larson's Order, please consider this letter to be a request to meet and confer pursuant to Paragraph 5 of the Discovery Master Stipulation and Discovery Master's Order No. 1, and let me know when we may have a conference within the next five days.

I look forward to hearing from you.

Very truly yours,

Marshall Searcy

cc:     Russell Frackman, Esq.
        Jason Russell, Esq.
        Caroline Mankey, Esq.

2

EXHIBIT   H
PAGE   95

# EXHIBIT I

EXHIBIT _I_

PAGE _96_

Mar. 25. 2009  4:31PM   Glaser Weil                          No. 0792   P. 1

**, LAW OFFICES**
**GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP**
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067

⫿ MERITAS LAW FIRMS WORLDWIDE

**FAX TRANSMISSION**

TELEPHONE NO.: (310) 553-3000
FACSIMILE NO.:  (310) 556-2920

Number of Pages:
(including this page)

FROM:   **Amman Khan**

DATE:   **March 25, 2009**

Client Reference No.:   03460-024

TO:

Jon D. Corey, Esq.

FAX NO.:

213-443-3100

CONFIRMATION NO:

213-443-3000

**Sender's Comments:**

Please see attached.

**If you have received this Transmission in error, please call: (310) 553-3000 and mail it to the above address. Thank you.**

NOTE: THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND, AS SUCH, IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE BY MAIL. THANK YOU.

EXHIBIT *I*
PAGE *97*

LAW OFFICES

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

March 25, 2009

᠁᠁ MERITAS LAW FIRMS WORLDWIDE

<u>VIA E-MAIL AND FACSIMILE</u>

Jon D. Corey, Esq.
Quinn, Emanuel, Urquhart,
  Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:  *Bryant v. Mattel, Inc. and Consolidated Actions*
     U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Jon:

This responds to your letter sent via facsimile on March 18, 2009 (but dated March 17, 2009), which seeks additional inspection of hard drives currently in Mr. Larian's control. Your request is improper, as a matter of law, for at least the following reasons:

First, there is no nexus between the information currently on Mr. Larian's hard drives and the Phase 2 claims, which focus on purported misappropriation of trade secrets by former Mattel employees for the MGA Parties' benefit. (Mattel's Second Amended Answer & Counterclaims, ¶ 20 (summarizing claims), ¶¶ 37-77 (alleging misappropriation of trade secrets and confidential information by former Mattel employees who joined MGA), ¶¶ 78-81 (alleging misrepresentations by MGA to retailers about Mattel). Indeed, Mattel makes no attempt whatsoever to demonstrate how the discovery Mattel seeks is relevant to any of the Phase 2 issues.

Second, the February 27, 2008 Court Order limited Mattel's inspection and copying of Mr. Larian's hard drives to any computer used by him from "1999 to the present." (February 27, 2008 Order, 2:21.) The MGA Parties have fully complied with that Order by making information contained on Mr. Larian's hard drives, up to and including February 27, 2008, available for inspection and copying. The duty to supplement arises only if a party learns that its original disclosure was incomplete or incorrect in some material respect. The MGA Parties' production of Mr. Larian's hard drives in June 2008 was neither incomplete nor incorrect in any respect, let alone in a material respect.

Very truly yours,

*[signature]*

Amman Khan
of GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

AK:la

670719

EXHIBIT  *I*

PAGE  *98*

# EXHIBIT J

EXHIBIT J

PAGE 99

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

March 31, 2009

℀ MERITAS LAW FIRMS WORLDWIDE

VIA E-MAIL AND FACSIMILE

Marshall M. Searcy, Esq.
Quinn, Emanuel, Urquhart,
   Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   *Bryant v. Mattel, Inc. and Consolidated Actions*
      U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Marshall:

This responds to Mattel's recent demand that Isaac Larian produce his computer hard drives for a second time, this time for inspection and copying of post-June 2008 information. There is no legitimate basis for this demand.

In an effort to rationalize this gross and abusive intrusion into Mr. Larian's privacy and attorney/client communications, Mattel advances three equally untenable arguments.

First, Mattel incorrectly claims that under the Court's February 27, 2008 Order, Mr. Larian has an ongoing duty to produce his computer hard drives. The Court's February 27, 2008 Order expressly limited Mattel's inspection of Mr. Larian's hard drives to any computer used by him from "1999 to the present." Since the order was issued on February 27, 2008, that is the pertinent cut-off date. The Order was not meant to allow Mattel an ongoing right to inspect and copy Mr. Larian's hard drives. Otherwise the Order would have simply said so.

Second, Mattel makes the generalized claim that post-June 2008 information placed on Mr. Larian's hard drives is relevant to Mattel's misappropriation of trade secrets, copyright infringement and RICO claims. However, you were unable to point to any particular allegations in Mattel's Second Amended Answer and Counterclaims ("SAAC") to support this assertion. In fact, the assertion is unfounded. All of Mattel's allegations regarding misappropriation of trade secrets concern alleged misappropriation that occurred in 2005 or earlier. See for example SAAC, ¶ 20 (summarizing claims), ¶ 37-77 (alleging misappropriation of trade secrets and confidential information by former Mattel employees who joined MGA), ¶ 78-81 (alleging misrepresentations by MGA to retailers about Mattel). Thus Mattel has not demonstrated and

671543v2

EXHIBIT ___J___
PAGE ___100___

Marshall Searcy, Esq.
March 31, 2009
Page No. 2

cannot demonstrate that any information placed on Mr. Larian's hard drives since June 2008 has any relevance to Mattel's Phase 2 claims.

Third, Mattel claims that FRCP 26(e) requires Mr. Larian to supplement the information from his hard drives he produced in June 2008. But in order to invoke this duty, you must show that the information previously produced was either incomplete or incorrect in any respect, something you have failed to do. In fact, the prior production is complete because Mr. Larian has produced all the information he is required to produce pursuant to the February 27, 2008 Order.

In conclusion, Mr. Larian has fully complied with the Court's Order to produce his computer hard drives. There is simply no basis for requiring that he produce the hard drives again.

Very truly yours,

Amman A. Khan
of GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

AAK/atj

EXHIBIT    J
PAGE   101