QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. Stephen G. Larson

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Hearing Date: May 11, 2009
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 2**
Discovery Cut-off: Dec. 11, 2009
Pre-trial Conference: March 1, 2010
Trial Date: March 23, 2010

# TABLE OF CONTENTS

Page


I. RULE 16 DOES NOT BAR MATTEL'S MOTION ..... 1

II. DEFENDANTS' FINANCIAL TRANSACTIONS ARE ACTIONABLE ..... 2

A. Alleged Expansion of the Lawsuit Is Not Grounds For Denial ..... 2

B. The Financial Transactions Are Actionable Under RICO ..... 6

III. LARIAN'S PERJURY AND OBSTRUCTION ARE ACTIONABLE ..... 8

IV. CASTILLA'S THEFT OF TRADE SECRETS IS PROPERLY PLED ..... 9

V. FARHAD LARIAN'S EVIDENCE DESTRUCTION IS ACTIONABLE ..... 11

VI. THE COMMERCIAL BRIBERY CLAIMS SHOULD BE ALLOWED ..... 11

VII. ADDITIONAL REGISTRATIONS ARE PROPERLY INCLUDED ..... 12

# TABLE OF AUTHORITIES

Page

## Cases

Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393 (9th Cir. 1986) ....10

In re Allustiarte, 786 F.2d 910 (9th Cir. 1986) ....2

Altmann v. Republic of Austria, 142 F. Supp. 2d 1187 (C.D. Cal. 2001) ....3

Am. Arb. Ass'n, Inc. v. DeFonseca, 1996 WL 363128 (S.D.N.Y. June 28, 1996) ....6

Amerisourcebergen Corp. v. Dialysist West, Inc., 465 F.3d 946 (9th Cir. 2006) ....10

Anheuser-Busch, Inc. v. Natural Beverage Dist., 69 F.3d 337 (9th Cir. 1995) ....11

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)....8

Arakaki v. Cayetano, 324 F.3d 1078 (9th Cir. 2003) ....4

Bradberry v. Schriro, 2009 WL 971298 (D. Ariz. April 8, 2009) ....5

Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254 (C.D. Cal. 2007) ....11

Burka v. Aetna Life Ins. Co., 945 F. Supp. 313 (D.D.C. 1996)....5, 7

C & W Const. Co. v. Broth. of Carpenters & Joiners of Am., Local 745, 687 F. Supp. 1453 (D. Haw. 1988)....8

Chaset v. Fleer/Skybox Intern., LP, 300 F.3d 1083 (9th Cir. 2002) ....11

Chodos v. West Publishing Co., Inc., 292 F.3d 992 (2002)....10

Conley v. Gibson, 355 U.S. 41 (1957)....9

Corley v. Rosewood Care Center, 388 F.3d 990 (7th Cir. 2004) ....7

DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 188 (9th Cir. 1987) ....9

Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio, 900 F.2d 882 (6th Cir. 1990) ....4

Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861 (9th Cir. 2004) ....3

Eastman Kodak Co. v. Camarata, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006)....6

Fremont Inv. & Loan v. Beckley Singleton, Chtd., 2007 WL 1213677 (D. Nev. Apr. 24, 2007)....1

Gabrielson v. Montgomery Ward & Co., 785 F.2d 762 (9th Cir. 1986) ....9

Gee Chan Choi v. Jeong-Wha Kim, 2006 WL 3535931 (E.D.N.Y. 2006) ....8

Gidding v. Anderson, 2008 WL 4065814 (N.D. Cal. Aug. 27, 2008) ....8, 11

Glatt v. Chicago Park Dist., 87 F.3d 190 (7th Cir. 1996) ....9

Griffin v. County School Bd. of Prince Edward Cty., 377 U.S. 218 (1964)....5, 6

Gutierrez v. Givens, 989 F. Supp. 1033 (S.D. Cal. 1997)....6

Hatch v. Dep. for Children, Youth & Their Families, 274 F.3d 12 (1st Cir. 2001)....7

Jiminez v. R. Sambrano, 2009 WL 937042 (S.D. Cal. Apr. 6, 2009)....1, 10

Keith v. Volpe, 858 F.2d 467 (9th Cir. 1988) ....5

Klapper v. Commonwealth Realty Trust, 657 F. Supp. 948 (D. Del. 1987)....4

Levin v. Garfinkle, 514 F. Supp. 1160 (D.C. Pa. 1981)....4

Levine v. Torino Jewelers, Ltd., 2006 WL 709098 (S.D.N.Y. Mar. 22, 2006)....6

Lincoln House, Inc. v. Dupre, 903 F.2d 845 (1st Cir. 1990)....7

Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353 (9th Cir. 2005) ....8

Malley-Duff & Assoc. Inc. v. Crown Life Ins. Co., 792 F.2d 341 (3d Cir. 1986)....8

Marshall & Isley Trust Co. v. Pate, 819 F.2d 806 (7th Cir. 1987) ....7

Miller v. Glen & Helen Aircraft, Inc., 777 F.2d 496 (9th Cir. 1985) ....8

Miller v. Rykoff-Sexton, Inc., 845 F.2d 209 (9th Cir. 1988) ....9

Mullen v. Surtshin, 590 F. Supp. 2d 1233 (N.D. Cal. 2008) ....5

Ohio Valley Envt'l. Coalition v. U.S. Army Corps of Eng'rs, 243 F.R.D. 253 (S.D. W.Va. 2007) ....1

PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65 (2d Cir. 1998) ....4

Planned Parenthood of Southern Arizona v. Neely, 130 F.3d 400 (9th Cir. 1997) ....5

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968) ....2

Pujol v. Shearson/American Express, Inc., 877 F.2d 132 (1st Cir. 1989) ....3

Qwest Commc'ns Corp. v. Weisz, 278 F. Supp. 2d 1188 (S.D. Cal. 2003) ....3

RAD Servs., Inc. v. Aetna Cas. & Surety Co., 808 F.2d 271 (3d Cir. 1986) ....10

Raduga USA Corp. v. U.S. Dept. of State, 440 F. Supp. 2d 1140 (S.D. Cal. 2005) ....6

Resolution Trust Corp. v. Keating, 186 F.3d 1110 (9th Cir. 1999) ....11

Ross v. Pioneer Life Ins. Co., 545 F. Supp. 2d 1061 (C.D. Cal. 2008) ....10

Roth v. Garcia Marquez, 942 F.2d 617 (9th Cir. 1991) ....9

S.E.C. v. Interlink Data Network of Los Angeles, Inc., 1993 WL 603274 (C.D. Cal. Nov. 15, 1993) ....10

Sierra Club v. Union Oil Co. of California, 813 F.2d 1480 (9th Cir. 1987) ....10

Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc., 2006 WL 3491027 (N.D. Cal., Dec. 1, 2006) ....3

Streck v. Peters, 855 F. Supp. 1156 (D. Haw. 1994) ....8

Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008) ....................8

Thomas v. Baca, 2009 WL 117983 (9th Cir. Jan. 9, 2009) ....................7

Town of Kearny v. Hudson Meadows Urban Renewal Corp., 829 F.2d 1263 (3d Cir. 1987) ....................7, 8

U.S. v. Fawell, 2003 WL 21544239 (N.D. Ill. July 9, 2003) ....................8

U.S. v. Int'l Broth. of Teamsters, 708 F. Supp. 1388 (S.D.N.Y. 1989) ....................4

Virden v. Graphics One, 623 F. Supp. 1417 (C.D. Cal. 1985) ....................7

Washington v. Daley, 173 F.3d 1158 (9th Cir. 1999) ....................3

Weekes v. Atlantic Nat. Ins. Co., 370 F.2d 264 (9th Cir. 1966), cited by MGA ....................7

William Inglis & Sons Baking Co., 668 F.2d 1014 (9th Cir. 1981) ....................5, 10

**Other**

485 U.S. 931 (1988) ....................10

Fed. R.Civ. P. 16(b) ....................1,2

Fed. R. Civ. P.15(d) ....................1, 5, 7

## I. RULE 16 DOES NOT BAR MATTEL'S MOTION

MGA claims that Mattel's motion is governed, and barred, by Rule 16. That Rule, however, does not even come into play where a party seeks to supplement pleadings under Rule 15(d) as opposed to amend under 15(a).[1] It is undisputed that Mattel's proposed fraudulent conveyance claim and its allegations regarding the Omni Parties, IGWT transactions and Larian's perjury fall under the rubric of Rule 15(d), the events having occurred since Mattel filed its last pleading.

MGA also fails to acknowledge, when urging that the deadline to amend expired over two years ago, that the Court vacated the Phase 2 scheduling order it points to.[2] Hence, there is no extant Order containing a deadline for Phase 2 pleading amendments. In any event, this Court has broad discretion to modify its scheduling order were that required. See, e.g., Jiminez v. R. Sambrano, 2009 WL 937042, at *2-3 (S.D. Cal. Apr. 6, 2009) (exercising its "broad discretion" under Rule 16: "if the trial court determines that refusal to allow modification of a pretrial order could result in injustice, while allowing the modification would result in no substantial injury to the opponent and no more than a slight inconvenience to the court, modification is appropriate"). MGA argues that Mattel's amendments regarding the commercial bribery of three Mattel employees and Farhad Larian's destruction of evidence should not be allowed because Mattel was not "diligent" in pursuing them. But on MGA's theory the deadline for amendments (February 22, 2007 or earlier) expired long before Mattel even *learned* of these events, and there is no suggestion that Mattel is at fault for

---

[1] See Fremont Inv. & Loan v. Beckley Singleton, Chtd., 2007 WL 1213677, at *7 (D. Nev. Apr. 24, 2007) ("Unlike motions to amend, however, Rule 16's plain language does not require courts to set a deadline for filing a motion to supplement and the parties in this case did not set such a deadline in their Scheduling Order."); Ohio Valley Envt'l. Coalition v. U.S. Army Corps of Eng'rs, 243 F.R.D. 253, 256 (S.D. W.Va. 2007) ("Rule 16 does not require courts to set a deadline for supplemental pleadings and the Court did not set such a deadline . . . [a]ccordingly, [Rule] 16(b) is inapplicable in this matter and Plaintiffs need not demonstrate good cause in order to supplement their Complaint."). The Rule 16 Court Order that MGA claims barred further Phase 2 amendments is silent as to supplements to pleadings. See Order dated February 22, 2007, Supp. Kidman Dec., Exh. 1.

[2] Order dated October 31, 2007, at 2, Supp. Kidman Dec., Exh. 2.

not having discovered them earlier.[3] And MGA does not deny that Mattel put it on notice that the subjects of these amendments were at issue in this lawsuit as soon as it learned of them, nor has it shown it will suffer "substantial injury" by the amendments.

## II. DEFENDANTS' FINANCIAL TRANSACTIONS ARE ACTIONABLE

Defendants do not deny that Mattel has acted diligently and without delay as to their unlawful financial transactions. The challenges they do make are misguided.

### A. Alleged Expansion of the Lawsuit Is Not Grounds For Denial

MGA warns that Mattel's financial transaction claims would "radically expand" the scope of the lawsuit. (Opp. at 5.) That is neither true nor controlling. Defendants' fraudulent transactions are already very much at issue in this case, including as relevant to receivership issues.[4] They are also relevant to existing Phase 2 trial issues, including punitive damages since the validity of the Omni 808/MGA/IGWT/Larian transactions substantially affects MGA's net worth.[5]

MGA protests that Mattel's UFTA claim cannot be added without adding "at least 17 new parties" under California law (Opp. at 6), and urges those essential additions would cause needless delay. But under federal law -- which, contrary to MGA's assertions, controls[6] -- the claim can proceed without joining these parties. Mattel

---

[3] Diligence, for purposes of a Rule16 amendment, is diligence in meeting the scheduled deadline for amendments. See Fed. R.Civ. P. 16(b) ad. comm. note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Also, MGA's argument that the Phase 2 stay did not prevent Mattel from seeking to amend sooner is inconsistent with the spirit of the Court's stay Order, which was designed to allow the parties to focus on and complete Phase 1. See Feb. 4, 2008 Hearing Tr. at 9:23-10:24, Supp. Kidman Dec., Exh. 3.

[4] See, e.g., 4/27/09 Order at 16 ("Good cause exists to believe that the MGA parties . . . have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other right in and to the Bratz Brand and Bratz Assets"), Supp. Kidman Dec., Exh. 4.

[5] Order No. 3, dated 3/10/2009, at 20:13-17; 25-26, Kidman Dec., Exh. 61.

[6] MGA cites In re Allustiarte, 786 F.2d 910 (9th Cir. 1986), as support for its incorrect statement that "California law controls" whether a party must be joined as a defendant in federal court in a UFTA claim. But Allustiarte merely held that California law controls the substantive issue whether a spouse has an interest in disputed real property. 786 F.2d at 915. The Supreme Court long-ago established that joinder of parties is a procedural issue decided
(footnote continued)

seeks UFTA relief that does not depend on any absent parties, including an injunction against future fraudulent transfers by MGA and Larian and a monetary recovery from MGA and Larian for fraudulent transfers. MGA does not contest the viability of these claims, nor could it.[7] Indeed, [REDACTED].[8] The Court can grant Mattel meaningful relief without joinder of new parties into the case.[9] And as for IGWT and others, whatever their interest in the transactions, they are not necessary parties because their interests are adequately protected by an existing party. "Absent parties are not necessary parties if their interests are adequately represented by existing parties." Altmann v. Republic of Austria, 142 F. Supp. 2d 1187, 1212 (C.D. Cal. 2001).[10] Here, Mattel expressly alleges that the IGWT entities are controlled by and alter egos of Larian.[11] Likewise, Mattel

---

under federal law. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968) ("To be sure, state-law questions may arise in determining what interest the outsider actually has, but the ultimate question whether, given those state defined interests, a federal court may proceed without the outsider is a federal matter.").

[7] See Qwest Commc'ns Corp. v. Weisz, 278 F. Supp. 2d 1188, 1190-92 (S.D. Cal. 2003) (claim under the UFTA may provide for, *inter alia*, injunctive and monetary relief against any "person *for whose benefit* the transfer was made," including "the majority shareholder of a corporation [who] would stand to benefit if the assets of his failing business were fraudulently transferred" – in our case, Isaac Larian) (emphasis in original).

[8] See [REDACTED] [Docket No. 5274].

[9] Under federal law, the "determination concerning joinder is 'a practical one and fact specific.'" Washington v. Daley, 173 F.3d 1158, 1165 (9th Cir. 1999) (quotation omitted). Generally, a party is necessary only if "the absence of the party would preclude the district court from fashioning meaningful relief as between the parties," or if "the absent party's participation is necessary to protect its legally cognizable interests or to protect other parties from a substantial risk of incurring multiple or inconsistent obligations because of those interests." Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 879-80 (9th Cir. 2004).

[10] See also Washington, 173 F.3d at 1167 ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."); Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 135 (1st Cir. 1989) (subsidiary not necessary because its interests were aligned with those of parent corporation, which was a party); Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc., 2006 WL 3491027 at *4 (N.D. Cal., Dec. 1, 2006) (same).

[11] TAAC at ¶¶ 16-19; see Order No. 3, dated March 10, 2009, at 25-26 (observing that "the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian" and that "the Transferee Entities are single purpose entities created and controlled by Larian . . . to dispose of inventory that is the subject of this litigation."), Kidman Dec., Exh. 61.

alleges that the various Larian family trusts to which MGA has given funds are controlled by and alter egos of Larian [redacted].[12] Because the interests of these entities are aligned with Larian, they need not be joined.[13] In fact, the Court ***already*** exercised jurisdiction over their alleged assets, having given the Receiver control over "Bratz Assets" that are "in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian, and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate."[14]

MGA also claims that proof relating to Mattel's ostensibly "new RICO counterclaim" (Opp. at 5) would radically expand the case. Mattel's existing pleadings allege "ongoing" and "continuing" RICO violations, and an ongoing RICO conspiracy.[15] Where an "original complaint alleges that the [defendants' enterprise] is a continuing enterprise," the plaintiff "ought to have leave to amend the complaint to add examples of the continuing violations it claims have occurred since the filing of the complaint."[16] None of the cases cited by MGA involves amendments to specify subsequent predicate acts of racketeering, which courts regularly permit.[17] Mattel's

---

[12] TAAC at ¶ 17; [redacted].

[13] Supra n. 10; see also Levin v. Garfinkle, 514 F.Supp. 1160, 1163 (D.C. Pa. 1981) (no need to substitute fraudulent transferee entities where "[plaintiff]'s theory throughout has been that the various corporate entities in question are the alter ego of [defendant], and that this court should consider any action by them to be an action by [defendant]").

[14] April 27, 2009 Order at 17, Supp. Kidman Dec., Exh. 4. As for the transferees' alleged rights to intervene (Opp. at 7 n.7), most have no such right since their interests are already protected by Larian, see Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003) ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises."), and Omni 808 has already intervened.

[15] SAAC at, e.g., ¶ 92, Kidman Dec., Exh. 6.

[16] U.S. v. Int'l Broth. of Teamsters, 708 F. Supp. 1388, 1407 (S.D.N.Y. 1989), distinguished on unrelated grounds, PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998).

[17] See, e.g., Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio, 900 F.2d 882, 887 (6th Cir. 1990) (reversing denial of leave to allege additional predicate acts); Klapper v. Commonwealth Realty Trust, 657 F. Supp. 948, 958 (D. Del. 1987) (granting "leave to amend to include any additional entities as possible enterprises").

new predicate act allegations are all intimately related to this case – they are actions taken by Larian to, among other things, frustrate this Court's rulings.[18] It would make no sense to force Mattel to separately bring a new RICO complaint alleging them.

Even if Mattel's pleading will expand the case, leave should still be granted. "The clear weight of authority . . . permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988) (citing William Inglis & Sons Baking Co., 668 F.2d 1014, 1057 (9th Cir. 1981) ("The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed.")). Rule 15(d) "is a tool of judicial economy and convenience" and its "use is therefore favored," id., even when new parties must be added.[19] Only "a relationship among the claims," which "need not all arise out of the same transaction," is required. Id. at 473. Such a relationship plainly exists here. The recent financial transactions are intimately connected to the wrongdoing already at issue in Mattel's Counterclaims – they are an extension of the fraudulent scheme at the heart of Mattel's existing RICO claims.[20]

---

[18] TAAC at ¶¶ 7, 119. As Mattel alleges, the IGWT entities were formed during the trial in this case, id. ¶¶ 16, 112, and even the name "IGWT 826 Investments" appears related to this case – "8/26" was the date of the jury's damages verdict. See Kidman Dec., Exh. 11.

[19] Griffin v. County School Bd. of Prince Edward Cty., 377 U.S. 218, 231 (1964) ("[Rule 15(d)] plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added if necessary."); Keith, 858 F.2d at 476 ("there is ample authority for adding new defendants in a supplemental complaint").

[20] Mattel alleges that all three enterprises, including the IGWT Criminal Enterprise, "shared the common purpose of enabling MGA to defraud Mattel and infringe its rights, and obtain confidential, proprietary and otherwise valuable Mattel property through improper means, and conceal and transfer, transport or launder the ill-gotten gains from such misconduct, and secret MGA assets and purportedly obtain priority over Mattel, in order to assist MGA in illegally competing with Mattel domestically and throughout the world." TAAC ¶ 139. MGA's authority does not support denying leave to amend here. See Planned Parenthood of Southern Arizona v. Neely, 130 F.3d 400, 402 (9th Cir. 1997) (plaintiff sought to add new claim after original action had already been settled); Bradberry v. Schriro, 2009 WL 971298 at *3 (D. Ariz. April 8, 2009) (pro se plaintiff attempted to supplement a claim involving a wholly distinct incident after he had already been granted three extensions to file an amended complaint); Burka v. Aetna Life Ins. Co., 945 F. Supp. 313, 317 (D.D.C. 1996)

(footnote continued)

That defendants' transactions implicate the Court's ability to enforce its rulings also justifies granting leave to amend.[21] There is no reason to force Mattel to raise these allegations in a new case.

**B. The Financial Transactions Are Actionable Under RICO**

MGA urges that Mattel lacks RICO standing because its injuries are "contingent on the final judgment" in this action. (Opp. at 10.) The argument fails. Courts hold that a party injured by initial unlawful activity -- which is undisputed here -- has RICO standing to assert claims arising from subsequent unlawful financial transactions that could prolong the enterprise's activities. See, e.g., Levine v. Torino Jewelers, Ltd., 2006 WL 709098, at *4 (S.D.N.Y. Mar. 22, 2006) (plaintiff had standing for RICO claims based on money laundering because it was "conceivable" that laundering of embezzled funds assisted defendant's scheme and "helped her steal more from plaintiff than [defendant] otherwise would have").[22] Mattel has alleged that defendants' transactions caused it injury (TAAC ¶¶ 140, 144), including by "assist[ing] MGA in illegally competing with Mattel" (¶ 139), permitting defendants to "continue[] with

---

(court denied Rule 15(d) motion filed after discovery had closed, summary judgment motion had been filed and parties had stipulated, after remand following appeal, that no other issues remained); Mullen v. Surtshin, 590 F. Supp. 2d 1233, 1236 (N.D. Cal. 2008) (pro se inmate confined to state hospital sought to add a First Amendment retaliation claim to action on confinement conditions filed five years earlier).

[21] See Griffin, 377 U.S. at 224-27 (supplemental pleading proper – even though it was filed ten years after case started -- where new claims were brought to prevent defendants from circumventing a prior ruling since "the basic aim of the rules [is] to make pleadings a means to achieve an orderly and fair administration of justice"); Raduga USA Corp. v. U.S. Dept. of State, 440 F. Supp. 2d 1140, 1151 (S.D. Cal. 2005) ("Because Raduga's new complaint alleges a failure to comply in good faith with the Court's previous order, the grant of Plaintiffs' 15(d) motion is permissible.").

[22] See also Eastman Kodak Co. v. Camarata, 2006 WL 3538944, at *11 (W.D.N.Y. Dec. 6, 2006) (plaintiff's allegations that money laundering not only "conceal[ed] a completed crime" but "allowed it to continue for longer than it otherwise would have" held sufficient to confer standing); Gutierrez v. Givens, 989 F. Supp. 1033, 1040 (S.D. Cal. 1997) (plaintiffs' allegations "that the large fortune amassed by [defendant] derived in part from illegal fraud and misrepresentation" and that "these unlawfully obtained funds were fraudulently laundered in numerous interstate transactions" conferred standing); Am. Arb. Ass'n, Inc. v. DeFonseca, 1996 WL 363128, at *6 (S.D.N.Y. June 28, 1996) (standing found where complaint alleged a "two-tiered scheme of embezzlement and money laundering" and subsequent financial acts were "a substantial factor in the sequence of responsible causation").

their wrongful activities despite the jury's verdict against them" (¶ 119), and funding further infringement of Mattel's intellectual property by enterprise members (¶ 122). One of the express purposes of the IGWT Criminal Enterprise is to "infringe Mattel's rights" (¶ 138). There is nothing contingent about these injuries to Mattel.

In any case, Mattel need not show that it has been injured by every predicate act alleged. See, e.g., Virden v. Graphics One, 623 F. Supp. 1417, 1425 (C.D. Cal. 1985) (plaintiff need not be injured by every predicate act, and to obtain damages may "demonstrate a causal link between [plaintiff's] own injury" and *either* "(i) a predicate act . . . or (ii) the pattern of racketeering activity").[23] Even if the transactions had caused no injury, contrary to Mattel's allegations, Mattel can rely on them to prove the existence and liability of the RICO enterprises it has alleged.[24]

---

[23] See also Corley v. Rosewood Care Center, 388 F.3d 990, 1004 (7th Cir. 2004) ("a plaintiff need not demonstrate injury to himself from each and every predicate act making up the RICO claim"); Town of Kearny v. Hudson Meadows Urban Renewal Corp., 829 F.2d 1263, 1268 (3d Cir. 1987) (plaintiff need only show "an injury directly resulting from some or all of the activities comprising the violation"); Marshall & Isley Trust Co. v. Pate, 819 F.2d 806, 810 (7th Cir. 1987) ("Our research has disclosed no case holding that a civil RICO plaintiff is precluded from recovering damages because, while there was sufficient proof of an enterprise and a pattern of racketeering activity, the plaintiff failed to show injury directly resulting from *all* the predicate acts constituting the pattern").

[24] In the cases cited by MGA, the alleged injuries were "wholly contingent" and "purely speculative," in stark contrast to Mattel's allegations here. Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990); Thomas v. Baca 2009 WL 117983, at *1-2 (9th Cir. Jan. 9, 2009) (unpublished decision where question whether plaintiff had suffered injury depended entirely on the outcome of another pending action). Nor is MGA correct that Rule 15(d) requires a full-blown merits assessment in which Mattel's allegations are not credited. In Weekes v. Atlantic Nat. Ins. Co., 370 F.2d 264 (9th Cir. 1966), cited by MGA, the district court rejected on summary judgment defendant's res judicata defense. On appeal, one judge of the three-judge panel opined it was not necessary to reach the merits of the res judicata defense because defendant had not raised the defense in its answer; instead the judge "treated" the defendant's raising of the defense as a Rule 15(d) motion to supplement and the district court's rejection of the defense as a denial of the motion, which was deemed to be within the court's discretion. Id. at 271-72. Both the concurring and dissenting judges disavowed this "remarkable twist of a procedural rule." Id. at 275. Burka, which MGA also cites, considered the merits but only after discovery had closed, summary judgment motions had been filed, the parties stipulated that no other issues remained and the court found the motion to supplement to be "yet another tactic" by plaintiff to delay resolution. Burka, 945 F. Supp. at 319; see Hatch v. Dep. for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001) (standard is different following close of discovery and motion for summary judgment).

## III. LARIAN'S PERJURY AND OBSTRUCTION ARE ACTIONABLE

MGA suggests, without citing a single case, that Larian's perjury cannot be a RICO predicate. "[T]he more reasoned rule," C & W Const. Co. v. Broth. of Carpenters & Joiners of Am., Local 745, 687 F. Supp. 1453, 1467 (D. Haw. 1988), is that perjury is a form of obstruction, actionable under RICO.[25] MGA also argues that Mattel has not been harmed because it "won all of its claims in the Phase 1 trial." (Opp. at 13.) Mattel did indeed win key aspects of Phase 1, but as the Court noted "[t]he fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount."[26] The jury also awarded no punitive damages and did not find fraudulent concealment by Larian; Larian's perjurious testimony was key to these verdicts.[27] MGA argues that Mattel's damages flow from MGA's underlying wrongdoing, not the obstruction, but clearly both can be, and are, causes of Mattel's injuries.[28]

---

[25] See also Gee Chan Choi v. Jeong-Wha Kim, 2006 WL 3535931, at *9 (E.D.N.Y. 2006) ("perjury in federal court may qualify as RICO predicate act"); U.S. v. Fawell, 2003 WL 21544239, at *3 (N.D. Ill. July 9, 2003) (defendants' "predicate acts of mail fraud, obstruction of justice, and perjury provide ample predicate for the RICO convictions"). MGA claims that Streck v. Peters 855 F. Supp. 1156, 1162 (D. Haw. 1994), is "unhelpful" to Mattel (Opp. at 12 n.11), yet the courts, like Mattel, have relied on that case for the proposition that perjury can be actionable under RICO. See Gee Chan Choi, 2006 WL 3535931, at *9. Nor is the fact that some of Larian's perjury occurred at trial, subject to cross-examination, controlling. First, there is no rule that testimony subject to cross-examination cannot be obstruction. Streck, 855 F. Supp. at 1162 (perjured federal trial testimony could be obstruction). Second, as the Court knows, Larian provided his perjurious testimony confident that impeaching documents were shielded by the privilege; MGA's privilege assertions undermined the cross-examination MGA now relies on.

[26] April 27, 2009 Order at 8, Supp. Kidman Decl., Exh. 4.

[27] See, e.g., Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 364 (9th Cir. 2005) (party "settled their claims for a smaller percentage of their alleged damages than they could have received"); Malley-Duff & Assoc. Inc. v. Crown Life Ins. Co., 792 F.2d 341, 355 (3d Cir. 1986) (obstruction in initial trial led to "great expenses, delays and inconvenience"); Miller v. Glen & Helen Aircraft, Inc., 777 F.2d 496, 498 (9th Cir. 1985) ("allegations of witness intimidation, if proved, could be shown to have resulted in injury to [plaintiff] by hampering his ability to present an effective case against [defendant] in the earlier federal lawsuit"). In any case, as noted, Mattel need not independently prove injuries by every predicate act it alleges. See supra p. 7.

[28] Town of Kearny, 829 F.2d at 1269 (underlying wrongful conduct and perjury in litigation could be part of RICO pattern that harmed plaintiff). Notably, none of the cases cited by MGA even addresses when conduct that constitutes obstruction gives rise to RICO

(footnote continued)

## IV. CASTILLA'S THEFT OF TRADE SECRETS IS PROPERLY PLED

MGA argues the Castilla amendments should not be allowed because Mattel has failed to "substantiate" them. But Mattel is not required to prove its case to be granted leave to amend. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).[29] MGA cites to Castilla's deposition where, [REDACTED] (Opp. at 16-17.) But when [REDACTED][30] All told, he invoked nearly 500 times. The deposition, far from

---

claims or damages. See Gidding v. Anderson, 2008 WL 4065814, at *1, 5 (N.D. Cal. Aug. 27, 2008) (not addressing injuries arising from obstruction); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1146-47 (9th Cir. 2008) (same; case involved RICO claims based on infringement, not obstruction); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458, (2006) (case involved RICO claims based on tax evasion where the "direct victim of this conduct was the State of New York, not [plaintiff]"). The direct victim of defendants' obstruction has been Mattel. MGA also exaggerates the burden of proving that Larian committed perjury, claiming "huge amounts" of evidence would have to be presented. (Opp. at 14 n.13.) Yet a handful of documents currently the subject of motions before the Discovery Master establish the perjury. See Motion for Order Compelling Prod. of Comms. Made in Furth. of Crimes and Frauds and As to Which MGA Has Waived Attorney-Client Priv., dated 3/16/ 2009 [Docket No. 5035].

[29] See also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 188 (9th Cir. 1987) (amendment is futile only where "it appears beyond doubt" that the moving party can "prove no set of facts in support of their claims which would entitle them to relief") (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The cases cited by MGA are easily distinguished. Glatt v. Chicago Park Dist., 87 F.3d 190 (7th Cir. 1996), involved a litigant's attempt to prolong a frivolous lawsuit ***that had already been dismissed*** by claiming retaliation for bringing the suit in the first place. In Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 764-765 (9th Cir. 1986), the court granted summary judgment against the plaintiff and denied the plaintiff's motion to re-open discovery and amend the complaint where it was clear that neither would change the outcome. In Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir. 1991), the court referenced summary judgment language but found the claim could not survive a motion to dismiss, and no new facts or allegations could affect that finding.

[30] Castilla Depo. Tr. at 180:22-181:1, Supp. Kidman Dec., Exh. 5; see also id. at 270:18-22 (" [REDACTED] "); 128:15-20 ( [REDACTED]

(footnote continued)

establishing the futility of Mattel's case, is grounds for an adverse inference against MGA on its use of Mattel's trade secrets.[31]

MGA also argues that Mattel has not acted diligently, but "where a defendant has been on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment."[32] MGA has indisputably been on notice of Mattel's claims against Castilla since before the Phase 2 discovery stay.[33] This trade secret theft is already within the scope of Mattel's pleadings; the Court has twice ordered Castilla's deposition because it is relevant to existing claims.[34] Just last week the Discovery Master found the same, ruling that "MGA's reading of the SAAC is too narrow."[35] Mattel's pleadings should reflect what is already true --

[redacted]"); 255:15-19 ([redacted]); 255:21-256:3 ([redacted]).

[31] See, e.g., RAD Servs., Inc. v. Aetna Cas. & Surety Co., 808 F.2d 271, 275-276 (3d Cir. 1986) (adverse inference against corporation for invocation by its former employees); S.E.C. v. Interlink Data Network of Los Angeles, Inc., 1993 WL 603274, *8-*11 (C.D. Cal. Nov. 15, 1993) (granting adverse inference and precluding corporation from offering evidence on topics to which CEO asserted Fifth Amendment).

[32] Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1492 (9th Cir. 1987), vac'd on other grounds, 485 U.S. 931 (1988); see William Inglis & Sons Baking, 668 F.2d at 1053 n.68 (same); Jiminez v. R. Sambrano, 2009 WL 937042, at *2-3 (granting leave under Rule 16 where amendment would not cause "substantial injury"); Ross v. Pioneer Life Ins. Co., 545 F. Supp. 2d 1061, 1065-1066 (C.D. Cal. 2008) (granting leave under Rule 16).

[33] Mattel identified Castilla as a witness with knowledge of MGA's access to Mattel's trade secrets in January 2007 (Supp. Kidman Dec., Exh. 7); MGA served discovery regarding Mattel's claims against Castilla in September 2007 (Supp. Kidman Dec., Exh. 8); Mattel served document requests regarding Castilla in October 2007 (Kidman Dec., Exh. 65); Mattel disclosed then-known details of Castilla's trade secret theft in supplemental responses in December 2007 (Kidman Dec., Exh. 55). MGA's protests that Mattel designated those supplemental responses as "Attorneys' Eyes Only," but MGA fails to explain how this interfered with its ability to investigate Castilla's theft or why, if it did, MGA never asked Mattel to de-designate the responses under the Protective Order.

[34] See Kidman Dec., Exhs. 75 and 76; SAAC, ¶¶ 77, 89-93, Kidman Dec., Exh. 6.

[35] Order No. 22 at 34-35, Supp. Kidman Dec., Exh. 6. The cases cited by MGA do not require a different result. Amerisourcebergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 952-54 (9th Cir. 2006) (denial of leave to assert affirmative defense where amendment sought to contradict previous judicial admissions and such a "drastic[]" change in litigation theory at late stage of proceedings would prejudice opposing party); Chodos v. West Publishing Co., Inc., 292 F.3d 992, 1003 (2002) (denial of leave to add fraud claim after discovery had closed and defendant moved for summary judgment, finding that amendment was prejudicial and a "dilatory tactic"); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398-99 (9th Cir. 1986) (denial of leave to assert new theories to avoid summary judgment where plaintiff admitted that delay was a "tactical choice").

Castilla's thefts are at issue.

## V. FARHAD LARIAN'S EVIDENCE DESTRUCTION IS ACTIONABLE

MGA argues that Farhad Larian's admitted destruction of documents did not injure Mattel. (Opp. at 20.) Of course it did. Mattel was unable to present key evidence because of Farhad Larian's intentional destruction.[36] MGA also argues that "amendment would significantly expand the trial," this time because "[n]othing he destroyed even arguably could have related to trade secrets allegedly taken by former Mattel employees in 2004 and 2005 that are the focus of the existing counterclaims." (Opp. at 21-22.) Mattel's counterclaims are hardly so narrow. Mattel has *already* alleged destruction of evidence as part of its Phase 2 claims.[37] Farhad Larian's destruction of evidence relevant to Bratz is part of defendants' pattern of obstruction. Last, MGA weakly suggests bad faith, arguing that Mattel cannot establish that Farhad destroyed any evidence at Isaac Larian's behest. This is a fact dispute best left to the jury and hardly evidence of bad faith.

## VI. THE COMMERCIAL BRIBERY CLAIMS SHOULD BE ALLOWED

Mattel's new commercial bribery claims are comparable to those Mattel made for defendants' commercial bribery of Carter Bryant.[38] This Court already found those allegations sufficient to state a claim, and should find the same here.[39] MGA argues

---

[36] MGA claims that Mattel "got copies of what Fred destroyed" anyway, eliminating any injury. (Opp. at 20.) This is untrue, and in any event insufficient. See Anheuser-Busch, Inc. v. Natural Beverage Dist., 69 F.3d 337, 354 (9th Cir. 1995) (party was prejudiced by concealment of evidence, even though it had same information, "because it forced Anheuser to rely on incomplete and spotty evidence"). The Discovery Master found in Phase 1 discovery that this information was "relevant and crucial" to Mattel's claims. May 1, 2008 Order at 8, Benson Decl., Ex. 13. Notably, the cases cited by defendants do not even remotely relate to prejudice for destruction of evidence. See Chaset v. Fleer/Skybox Intern., LP, 300 F.3d 1083, 1086-1087 (9th Cir. 2002) (no injury from purchasing trading cards without receiving limited edition card); Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999) (issue of fact as to harm from alleged financial fraud); Gidding, 2008 WL 4065814, at *5 (no injury where it was "completely unclear to the Court what Plaintiffs purport to allege").

[37] See SAAC at ¶ 93(c), Kidman Dec., Exh. 6.

[38] See SAAC at ¶¶ 93(d), 165, Kidman Dec., Exh. 6.

[39] Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254, 1267 (C.D. Cal. 2007) ("Several allegations support a violation of § 641.3(a) . . . . Mattel has alleged that Bryant, while still employed by Mattel, entered into a contract with MGA to provide design services to MGA on (footnote continued)

that Mattel cannot prove MGA knew of the Bratz work done by these Mattel employees but there is evidence from which a jury could infer the knowledge that Mattel alleges[40] and more may emerge: Ms. Garcia was not questioned at deposition about this issue and numerous other witnesses from MGA are yet to be deposed. There is no basis for finding futility, let alone bad faith. Finally, these claims will not "unnecessarily expand the scope of Phase 2 trial," as MGA urges again. (Opp. at 24.) Mattel's Phase 2 claims are not strictly limited to thefts of trade secrets; they include, among other things, MGA's commercial bribery of Bryant and others. MGA's assertion that Mattel's other Phase 2 claims are "entirely separate" is mistaken.

## VII. ADDITIONAL REGISTRATIONS ARE PROPERLY INCLUDED

Last, defendants object to Mattel's inclusion of additional copyright registrations as to its infringement claims. These are additional registrations for designs created by Bryant which the MGA Parties have infringed and continue to infringe.[41] Mattel's inclusion of them merely reflects that defendants are liable for their ongoing infringement (pursuant to Mattel's infringement claims and as RICO predicate acts of criminal copyright infringement), which the Court has already required them to account for.[42] On this as well, leave to amend should be granted.

DATED: May 4, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

a 'top priority' basis, and used Mattel property, employees, and resources to develop and design the Bratz concept.").

[40] See TAAC at ¶¶ 95-97, 173. For example, Peter Marlow sent an email to Paula Garcia and Isaac Larian stating that the three worked for a toy company and would be humiliated and fired if their work for MGA were discovered. See TX 13223, Benson Dec., Exh. 19.

[41] See Trial Exhibits 13889-13900, Supp. Kidman Dec., Exhs. 9-20; Phase B Verdict Form as Given, Kidman Dec., Exh. 11; Order Granting Mattel, Inc.'s Motion for Permanent Injunction, dated December 3, 2008, at Exhs. 11-12 [Docket No. 4443].

[42] See Order dated April 27, 2009, at 12 (ordering accounting of profits of post trial Bratz sales), Supp. Kidman Dec., Exh. 4.