# EXHIBIT 1



RECEIVED

FEB 2 3 2007

CALENDARED

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  - Eastern Division
CIVIL MINUTES - GENERAL

Case No.    CV 04-09059 SGL(RNBx)                                    Date:  February 12, 2007
Title:      MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
            **Consolidated Action**
            CV 05-02727 SGL(RNBx)    MGA ENTERTAINMENT v. MATTEL, INC.,
====================================================================================
PRESIDING:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                              Theresa Lanza
Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for    Diana M. Torres for MGA
Mattel                                  Keith A. Jacoby for Carter Bryant

PROCEEDINGS:    SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

        The Court convened a scheduling conference pursuant to FRCP 16(b).   Court and counsel
discussed case management and thereafter the court set the following schedule:  See attachment
"Schedule of Trial and Pretrial Dates."

        Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial
officer or other private or non-profit dispute resolution body for mediation type settlement proceedings.
The Court approves the request and refers this case to an outside Mediator to act as the Settlement
Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as
soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory
settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL
(RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures
under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v.
Mattel, Inc.

        The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter
Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

        1.      Non-Expert Depositions are limited to a total of 24 for each side for both cases.
        2.      Expert Depositions are limited to a total of 20 for each side for both cases.
        3.      Interrogatories are limited to 50 for each side for both cases.

        IT IS SO ORDERED.

MINUTES FORM 90
CIVIL – GEN                      Page 1        FEB 2 2 2007        Initials of Deputy Clerk: jh
                                                                  00/30

EXHIBIT ____

PAGE ____

  

## SCHEDULE OF TRIAL AND PRETRIAL DATES

CASE NAME:     MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

CASE NO:       CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26[e](1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

## ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:    ☐ 1. CT/USMJ              ☑ 3. Outside ADR
to be discussed

                                    ☐ 2. Attorney Settlement Panel    ☐

DOE Dismissal:         Complaint Filed: 04/13/05        SET DATE
                       Dismissal Date:                  to be discussed

EXHIBIT ____1____
PAGE ____5____

# EXHIBIT 2

# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: October 31, 2007
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
=======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER           ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Christa Martine Anderson               John Quinn
Matthew M. Werdegar                    Jon D. Corey
                                       Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:             ATTORNEY PRESENT FOR CARLOS
                                       GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                        Alexander H. Cote
Carl A. Roth

PROCEEDINGS:    ORDER REGARDING STATUS CONFERENCE

        The Court held a status conference to consider the current schedule set for Phase 1 of the
consolidated cases as well as the issue of the selection of a settlement officer for both Phase 1
and Phase 2 of the consolidated cases.

        For reasons discussed on the record, the Court enters a two-week STAY in these actions,
beginning November 1, 2007, and continuing through November 14, 2007.  During that time, the
parties shall serve no discovery requests (including subpoenas) on parties or third parties.  The
obligation to respond to any outstanding discovery requests is likewise suspended for that time
frame.  No depositions shall be conducted during this time.  The matters to be heard before Judge
Infante, the discovery master herein, are to be rescheduled to a date determined by Judge Infante,

MINUTES FORM 90                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                    1                Time: 00/20

EXHIBIT ____2____

PAGE ____6____

provided, however, that such date is no earlier than November 26, 2007, and that no opposition or reply papers may be required to be filed during the pendency of the stay.

The Court CONTINUES the November 19, 2007, hearing on the Motion For Leave to Serve A Supplemental Interrogatory to December 3, 2007, at 10:00 a.m.

The current schedule regarding Phase 1 of the trial in these consolidated actions is modified as follows:

| | |
|---|---|
| Fact discovery cutoff: | 01/28/08 |
| Initial Expert Reports: | 02/11/08 |
| Rebuttal Expert Reports: | 03/17/08 |
| Last date for settlement conference: | VACATED (see below for Court's directive regarding mandatory settlement procedures) |
| Expert discovery cutoff: | 03/31/08 |
| Dispositive Motions hearing cutoff: | 03/31/08 @ 10:00 a.m. |
| Pretrial conference order and associated trial documents including proposed jury instructions: | 04/21/08 |
| Filing of Motions in Limine: | 05/05/08 |
| Pretrial conference: | 05/05/08 @ 11:00 a.m. |
| Hearing on Motions in Limine and Jury Instructions: | 05/19/08 @ 11:00 a.m. |
| Trial: | 05/27/08 @ 9:00 a.m. |

The schedule for Phase 2, previously set by the Court by Order filed February 22, 2007, in the case captioned MGA Entertainment, Inc. v. Mattel, Inc., et al., CV 05-02727, is VACATED. The Court will consider the scheduling of Phase 2 at a later date. However, the Court DENIES MGA's request to delay or otherwise bifurcate discovery regarding Phase 2 issues.

At the status conference, the parties acknowledged on the record their mutual agreement to the selection of Ambassador Pierre-Richard Prosper as the settlement officer for these

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____
Time: 00/20

EXHIBIT ____2____

PAGE ____7____

consolidated cases, and the Court hereby APPOINTS him in that capacity.  Counsel are directed to
contact Ambassador Prosper to schedule a settlement conference on or before December 1, 2007.
The settlement conference is to be directed towards resolution of both phases of this litigation.
Counsel are ORDERED to carefully and diligently follow Ambassador Prosper's directions
concerning preparation for and conduct at any settlement conferences.  The parties will be jointly
responsible for paying the Ambassador's reasonable and customary rate for services rendered.  A
failure to comply with this order, or a failure to provide reasonable compensation to the Settlement
Officer upon completion of the mediation, may result in the imposition of appropriate sanctions.
Ambassador Prosper is directed to provide a status report to the Court following the conclusion of
the settlement efforts.

     IT IS SO ORDERED.

c:    Judge Infante
     Ambassador Prosper

MINUTES FORM 90
CIVIL -- GEN                   3        Initials of Deputy Clerk __jh_____
                                      Time: 00/20

EXHIBIT ___2___

PAGE ___8___

# EXHIBIT 3

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                  - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7    CARTER BRYANT, ET. AL.,        )
                                    )
8                    PLAINTIFFS,    )
                                    )
9         VS.                       )    NO. ED CV 04-09049
                                    )    (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,         )
                                    )
11                   DEFENDANTS.    )    EX-PARTE APPLICATIONS
                                    )    RE:  DISCOVERY
12   AND CONSOLIDATED ACTIONS,      )
                                    )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17         MONDAY, FEBRUARY 4, 2008

18              10:15 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24           3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25              951-274-0844
            CSR11457@SBCGLOBAL.NET

**CERTIFIED COPY**



1    APPEARANCES:

2    ON BEHALF OF CARTER BRYANT:

3                            KEKER & VAN NEST
                            BY:   MICHAEL PAGE
4                            710 SANSOME STREET
                            SAN FRANCISCO, CALIFORNIA   94111-1704
5                            415-391-5400

6
     ON BEHALF OF MATTEL:
7
                            QUINN EMANUEL
8                            BY:   JOHN QUINN
                            BY:   JON COREY
9                            865 S. FIGUEROA STREET,
                            10TH FLOOR
10                            LOS ANGELES, CALIFORNIA   90017
                            213-624-7707
11

12   ON BEHALF OF MGA ENTERTAINMENT:

13                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                            BY:   THOMAS J. NOLAN
14                            BY:   CARL ALAN ROTH
                            BY:   ROBERT JAMES HERRINGTON
15                            300 SOUTH GRAND AVENUE
                            LOS ANGELES, CALIFORNIA   90071-3144
16                            213-687-5000

17
     ON BEHALF OF GUSTAVO MACHADO:
18
                            OVERLAND BORENSTEIN SCHEPER & KIM LLP
19                            BY:   ALEXANDER H. COTE
                            300 SOUTH GRAND AVENUE
20                            SUITE 2750
                            LOS ANGELES, CALIFORNIA   90071
21                            213-613-4660

22
     ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
                            KEATS MCFARLAND & WILSON LLP
24                            BY:   LARRY W. MCFARLAND
                            9720 WILSHIRE BOULEVARD
25                            BEVERLY HILLS, CA   90212
                            310-777-3750

FEBRUARY 4, 2008         EXHIBIT ___3___         ED CV 04-9059-SGL

                         PAGE ____10____

1   **APPEARANCES CONTINUED:**

2

    ON BEHALF OF NON-PARTY CHRISTENSEN GLASER:
3
                        CHRISTENSEN, GLASER, FINK, JACOBS,
4                        WEIL & SHAPIRO, LLP
                        BY:   SCOTT E. GIZER
5                       10250 CONSTELLATION BOULEVARD
                        LOS ANGELES, CA   90067
6                       310-553-3000

7
    ON BEHALF OF THIRD PARTIES ANA CABRERA & BEATRIZ MORALES:
8
                        ALLRED, MAROKO & GOLDBERG
9                       BY:   RAMIT MIZRAHI
                        6300 WILSHIRE BOULEVARD,
10                      SUITE 1500
                        LOS ANGELES, CA   90048
11                      323-653-6530

12
    ON BEHALF OF THIRD PARTY WITNESS GENTLE GIANT STUDIOS:
13
                        BAUTE & TIDUS LLP
14                      BY:   HENRY H. GONZALEZ
                        777 S. FIGUEROA STREET,
15                      SUITE 4900
                        LOS ANGELES, CA   90017
16                      213-630-5000

17
    ON BEHALF OF WACHOVIA:
18
                        DAVIS POLK & WARDWELL
19                      BY:   NEAL A. POTISCHMAN
                        1600 EL CAMINO REAL
20                      MENLO PARK, CA   94025
                        650-752-2000
21

22  ON BEHALF OF KAMI GILMOR:

23                      BUCHALTER NEMER
                        BY:   JOHN PATRICK PETRULLO
24                      1000 WILSHIRE BOULEVARD,
                        SUITE 1500
25                      LOS ANGELES, CA   90017-2457
                        213-891-0700

4

1                          I N D E X

2                                               PAGE

3     HEARING.........................................     5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FEBRUARY 4, 2008  EXHIBIT ___3___      ~~ED~~ CV 04-9059-SGL

               PAGE ___12___

```
 1      RIVERSIDE, CALIFORNIA; MONDAY, FEBRUARY 4, 2008; 10:15 A.M.

 2                              -OOO-

 3           THE CLERK:  CALLING CALENDAR ITEM NUMBER FIVE, IN THE

 4      MATTER OF CARTER BRYANT VERSUS MATTEL, INC., AND ALSO RELATED

 5      CONSOLIDATED ACTIONS, CASE NUMBER CV 04-9059.

 6           MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.

 7           MR. QUINN:  GOOD MORNING, YOUR HONOR.

 8      JOHN QUINN, JON COREY FOR MATTEL.

 9           THE COURT:  MR. QUINN, MR. COREY, GOOD MORNING.

10           MR. NOLAN:  GOOD MORNING, YOUR HONOR.

11      TOM NOLAN, CARL ROTH, AND ROB HERRINGTON ON BEHALF OF

12      THE MGA DEFENDANTS.

13           THE COURT:  GOOD MORNING, COUNSEL.

14           MR. COTE:  GOOD MORNING, YOUR HONOR.

15      ALEXANDER COTE ON BEHALF OF CARLOS GUSTAVO MACHADO.

16           THE COURT:  COUNSEL.

17           MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF

18      NONPARTIES MS. CLOONAN, MS. LEAHY, AND MS. MARLOW.

19           THE COURT:  MR. MCFARLAND, GOOD MORNING.

20           MR. GIZER:  GOOD MORNING, YOUR HONOR.

21      SCOTT GIZER FROM CHRISTENSEN & GLASER ON BEHALF OF

22      NON-PARTY CHRISTENSEN & GLASER.

23           THE COURT:  GOOD MORNING.

24           MR. PAGE:  GOOD MORNING, YOUR HONOR.

25      MICHAEL PAGE ON BEHALF OF CARTER BRYANT.
```

10:15
10:15
10:15
10:15

FEBRUARY 4, 2008   EXHIBIT _____3_____

PAGE _____13_____

ED CV 04-9059-SGL

8

1   PUT EVERYONE ON THE SAME PLAYING FIELD, THAT IN THE FUTURE --

2   BECAUSE I'M SURE, AS WE GET CLOSER TO HEARING DATES AND TRIAL

3   DATES, THAT THERE'S GOING TO BE A LOT OF THINGS FILED AND

4   YOU'RE GOING TO WANT TO GET A LOT OF STUFF BEFORE THE COURT.

5   IF YOU WANT ME TO READ IT, I NEED THAT COURTESY COPY.  THAT'S          10:18

6   WHAT'S CRITICAL.

7            WE HAVE A REINFORCED COURTESY BOX NOW FOR THAT

8   PURPOSE.

9            MR. NOLAN:  IS IT LARGER?

10           THE COURT:  IT'S LARGER AND IT'S WOOD, NOT PLASTIC.        10:18

11           I'D LIKE TO BEGIN, BECAUSE I THINK THIS MAY HELP

12  RESOLVE A NUMBER OF THESE APPLICATIONS, WITH MR. MACHADO'S

13  EX-PARTE APPLICATION, MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION,

14  FOR A CLARIFICATION OF THE COURT'S JANUARY 7, 2008 ORDER.

15           AND THE CONCERN THAT MR. MACHADO-GOMEZ EXPRESSED          10:19

16  THROUGH HIS EX-PARTE APPLICATION WAS JUST BASICALLY A

17  CLARIFICATION THAT THE COURT MEANT WHAT IT SAID BACK ON

18  OCTOBER 31ST, THAT PHASE TWO CASE MANAGEMENT DATES HAD BEEN

19  VACATED AND THAT THE DATES THAT I IMPOSED WERE FOR PHASE ONE,

20  INCLUDING THE DISCOVERY CUTOFF, WHICH HAS NOW COME AND GONE.        10:19

21  AND WHAT HAS COME AND GONE IS THE DISCOVERY CUTOFF FOR PHASE

22  ONE, NOT FOR PHASE TWO.

23           I INDICATED AT THAT TIME THAT I WAS DENYING MGA'S

24  REQUEST TO DELAY OR OTHERWISE BIFURCATE DISCOVERY REGARDING

25  PHASE TWO ISSUES, AND I THINK THE REASONING FOR THAT -- AND I        10:20

FEBRUARY 4, 2008   EXHIBIT ___3___

                   PAGE ___14___            ED CV 04-9059-SGL

1   TRIED TO ARTICULATE THIS IN MY JANUARY ORDER -- WAS THAT I DID

2   NOT WANT TO HAVE DISCOVERY BOGGED DOWN BY DISPUTES OVER WHETHER

3   OR NOT A PARTICULAR WITNESS'S OR DEPONENT'S TESTIMONY WAS PHASE

4   ONE DISCOVERY OR PHASE TWO DISCOVERY.  SO I THOUGHT IT MADE

5   SENSE, TO THE EXTENT THAT YOU WERE DOING A PHASE ONE                    10:20

6   DEPOSITION, IF THAT WITNESS HAD INFORMATION RELATED TO PHASE

7   TWO, THAT YOU GATHER THAT AT THE SAME TIME.

8        THAT IS NOT TO SUGGEST THAT SOMEHOW ALL PHASE TWO

9   DISCOVERY WAS TO BE COMPLETED BY JANUARY 28TH.  SO IN MY ORDER

10  THAT I WILL ISSUE TODAY, I WILL BASICALLY, I SUPPOSE, GRANT         10:20

11  MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION, TO CLARIFY THE ORDER

12  THAT THE COURT NEVER INTENDED FOR PHASE TWO DISCOVERY TO BE

13  COMPLETED BY JANUARY 28TH.

14       IN REFLECTING ON THIS, THOUGH, AND REFLECTING ON

15  WHERE WE ARE IN THE DISCOVERY -- AND, I SUPPOSE, TO KIND OF       10:21

16  GIVE YOU A PREVIEW AS TO WHERE I'M GOING WITH SOME OF THESE

17  OTHER APPLICATIONS -- THERE'S NO QUESTION THAT THE COURT WANTS

18  TO MAKE SURE ALL OF THE DISCOVERY THAT IT HAS ORDERED TO BE

19  CONDUCTED FOR PHASE ONE BE CONDUCTED AND COMPLETED.  AND I

20  CERTAINLY INTEND TO GIVE LEAVE TO BOTH PARTIES TO COMPLETE         10:21

21  WHATEVER DISCOVERY WAS ORDERED BEFORE THE DISCOVERY CUTOFF DATE

22  WITH REGARD TO PHASE ONE.

23       IT'S ALSO CLEAR TO ME, AT THIS TIME, IT MIGHT MAKE A

24  LOT OF SENSE TO STAY OR STOP PHASE TWO DISCOVERY UNTIL THE

25  PHASE ONE TRIAL IS COMPLETED.  HAVING READ THROUGH A NUMBER OF    10:21

FEBRUARY 4, 2008          EXHIBIT___3___          ED CV 04-9059-SGL

                          PAGE ___15___

1 THE BRIEFS OPPOSING THE VARIOUS EX-PARTE APPLICATIONS, I KNOW

2 THAT BOTH SIDES, OR ALL SIDES -- THERE'S NOT REALLY JUST TWO

3 SIDES HERE -- BUT ALL SIDES HAVE BEEN WORKING AT A FEVERISH

4 PACE, AND I APPRECIATE THE EFFORTS OF EVERYONE.  BUT I THINK

5 THAT WE HAVE TO BE REALISTIC AS WELL, AND I THINK THAT A FOCUS     10:22

6 ON -- WE'RE IN THE MONTH OF FEBRUARY NOW -- ON WRAPPING UP

7 PHASE ONE DISCOVERY SHOULD BE OUR PRIORITY.

8          I WOULD STILL WANT TO KEEP IN PLACE MY ADMONITION OR

9 DIRECTION THAT TO THE EXTENT THAT A PHASE ONE WITNESS IS BEING

10 DEPOSED AND HAS PHASE TWO INFORMATION, THAT THAT ALL BE TAKEN     10:22

11 AT THE SAME DEPOSITION.  I'M NOT CONTEMPLATING TRYING TO CREATE

12 MORE DEPOSITIONS DOWN THE ROAD BY SAYING THIS.

13          AND I THINK MATTEL CLEARLY IDENTIFIES A NUMBER OF

14 THESE WITNESSES AS CLEARLY PHASE TWO WITNESSES -- I JUST DON'T

15 THINK THAT'S A WISE IDEA, OR PRUDENT, FOR US TO BE HAVING THOSE    10:22

16 DEPOSITIONS GOING FORWARD IN FEBRUARY.  AND THERE'S A GOOD

17 NUMBER OF WITNESSES THAT HAVE BEEN IDENTIFIED BY MATTEL IN

18 THEIR PAPERS AS BEING PHASE TWO WITNESSES.

19          MY TENTATIVE THOUGHT THIS MORNING, OR OVER THIS

20 WEEKEND, IS THAT THOSE WITNESSES AND THOSE DEPOSITIONS BE PUT     10:22

21 OFF UNTIL WE'RE DONE WITH THIS PHASE ONE TRIAL, SO THAT WE CAN

22 FOCUS ALL OF THE RESOURCES -- AND ADMITTEDLY, THERE'S A LOT OF

23 RESOURCES -- BUT FOCUS THE RESOURCES ON FINISHING UP PHASE ONE

24 DISCOVERY.

25          SO THOSE ARE MY TENTATIVE THOUGHTS, I SUPPOSE, WITH      10:23

FEBRUARY 4, 2008  EXHIBIT ___3___

PAGE ___16___                    ~~ED~~ CV 04-9059-SGL

1   RESPECT TO MR. MACHADO-GOMEZ'S APPLICATION.  I WILL WANT TO

2   HEAR BRIEFLY FROM BOTH SIDES, IF THERE ARE ANY THOUGHTS OR

3   REACTIONS.

4          I'M TRYING TO THINK OF ALL OF THE UNINTENDED

5   CONSEQUENCES OF MAKING THIS MOVE, AND PRECISELY BECAUSE THEY'RE    10:23

6   UNINTENDED, I'M SURE I CAN'T CONTEMPLATE THEM; SO I HAVE TO

7   RELY ON COUNSEL TO ALERT ME TO ANY PROBLEMS IN GOING DOWN THIS

8   ROAD AT THIS POINT.

9          I DO RECOGNIZE, OF COURSE, THERE'S A DANGER OF A

10  DISPUTE OVER WHAT'S A PHASE ONE WITNESS AND WHAT'S A PHASE TWO    10:23

11  WITNESS.  I'VE GOT TO BELIEVE, THOUGH, THAT YOU'RE AT A POINT

12  IN THIS CASE WHERE YOU CAN IDENTIFY BETWEEN THE TWO.  IF IT'S

13  MIXED, THEN IT GOES FORWARD.  BUT IF IT'S JUST CLEARLY A PHASE

14  TWO WITNESS, I JUST CAN'T THINK OF A COMPELLING NEED TO BUSY UP

15  OUR TIME AT THIS POINT WITH THOSE WITNESSES.                      10:24

16         NO ONE IS FORFEITING ANY RIGHT TO TAKE THOSE

17  DEPOSITIONS.  YOU ALL NEED TO BE HAVING PLENTY OF LEAVE TO DO

18  WHATEVER DISCOVERY IS NECESSARY IN PHASE TWO, ONCE WE GET

19  THROUGH OUR PHASE ONE TRIAL, WHICH IS SCHEDULED TO BEGIN IN

20  MAY; BUT I JUST WANT US TO BE REALISTIC AS WE GO FORWARD.         10:24

21         SO I'LL HEAR WHOMEVER WISHES TO GO FIRST ON THIS.

22         MR. QUINN?

23         **MR. QUINN:**  GOOD MORNING, YOUR HONOR.

24         THERE'S TWO EX-PARTES THAT THE COURT HAS THAT DEAL

25  WITH DEPOSITIONS, AND I THINK I CAN ADDRESS BOTH OF THOSE         10:24

84

1   AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO THE

2   COURT WITH RESPECT TO THE CIRCUMSTANCES.

3          **THE COURT:**   I THINK THEY INDICATED THAT THEY ALREADY

4   HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING THAT

5   ON THIS.                                                          12:00

6          **MR. NOLAN:**   I APOLOGIZE FOR NOT UNDERSTANDING.

7          **THE COURT:**   AM I RIGHT, MR. QUINN?

8          **MR. QUINN:**   THAT WAS MY UNDERSTANDING.

9          **THE COURT:**   THEY JUST DIDN'T KNOW ANYTHING ABOUT THE

10  REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DON'T       12:00

11  WANT TO TALK TO ME ABOUT IT RIGHT NOW.

12          THANK YOU.   GOOD AFTERNOON.

13

14

15

16

17

18                          CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
23

24  _Theresa G. Lanza_                    _2-13-08_
    THERESA A. LANZA, CSR, RPR                DATE
25  FEDERAL OFFICIAL COURT REPORTER

FEBRUARY 4, 2008          EXHIBIT ___3___          ED CV 04-9059-SGL

                          PAGE ___18___

# EXHIBIT 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                           Date: April 27, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Cindy Sasse                              None Present
          Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

None Present                             None Present

PROCEEDINGS:     ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
                 MATTER OF LAW (DOCKET #4498)

                 ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                 MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
                 #4496)

                 ORDER AMENDING IN PART ORDER RE FINDING OF
                 LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
                 (DOCKET #4441);

                 ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                 MOTION FOR REMITTITUR (DOCKET #4495, #4523)

                 ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

                 ORDER FOR ACCOUNTING OF PROFITS OF
                 BRATZ PRODUCTS

                 ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1

                        EXHIBIT ____4____
                        PAGE ____19____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 21 of 46   Page ID
#:173774
Case 2:04-cv-09049-S___RNB   Document 5273   Filed ___7/2009   Page 2 of 25

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER**

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded. Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury. Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged. Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore
**DENIED**.

Initials of Deputy Clerk __cls_____

EXHIBIT ___4____

PAGE ___20____

Case 2:04-cv-09049-DOC-RNB Document 5335-3 Filed 05/04/09 Page 22 of 46 Page ID
#:173775
Case 2:04-cv-09049-S   RNB Document 5273 Filed   7/2009 Page 3 of 25

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that
sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of
independent creation of the Bratz fashion doll sculpt, TX 1136A.[1] In Phase 1A of the
trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is,
created -- by Carter Bryant, alone or jointly with others," during his employment with
Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the
Court's summary judgment order, was sufficient to place the sculpt within the
assignment clause of the Inventions Agreement which, in turn, conferred the rights to
the sculpt to Mattel. Therefore, as with the previous issue, this judgment is sought
merely as an alternative basis for the relief Mattel has been awarded, which the Court,
without deciding the merits, declines to adopt. This portion of Mattel's motion is
therefore similarly **DENIED**.

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and
MGA HK engaged in acts of fraudulent concealment. As to Isaac Larian, although there
was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and
later, as to *when* Bratz was created), he testified at trial that he did nothing to keep
Carter Bryant's *role* in the creation of Bratz hidden. Even in the face of evidence to the
contrary, the jury could have believed him; thus, judgment as a matter of law on this
point is not appropriate. Credibility determinations are for the jury, and the jury could
have made this credibility determination in favor of Isaac Larian. Winarto v. Toshiba
America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001). As for
MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found
to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as
a matter of law is not appropriate. This portion of Mattel's motion is therefore also
**DENIED**.

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law
is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1] For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's
claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that
Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2] The Court herein refers to all three MGA parties collectively and individually as follows: MGA
Entertainment, Inc., is referred to as "MGAE." MGA Entertainment (HK) Limited (also referred to in the
record as "MGA Hong Kong") is referred to herein as "MGA HK." All three defendants, Isaac Larian,
MGAE, and MGA HK are collectively referred to as "the MGA parties." When necessary to distinguish
them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the
MGA entities."

Initials of Deputy Clerk __cls_____

EXHIBIT ___4___

PAGE ___21___

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 23 of 46   Page ID
#:173776
Case 2:04-cv-09049-S   RNB   Document 5273   Filed   27/2009   Page 4 of 25

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty. Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages. The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue. As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims. Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits. The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3] This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90
CIVIL -- GEN

4

EXHIBIT ___4___

PAGE ___22___

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 24 of 46   Page ID
#:173777
Case 2:04-cv-09049-S____RNB   Document 5273   Filed ____7/2009   Page 5 of 25

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz." To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4] The Court finds waiver.

In any event, the argument fails on its merits. The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement. California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls. Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument. The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 25 of 46   Page ID
#:173778
Case 2:04-cv-09049-S◯RNB   Document 5273   Filed ◯7/2009   Page 6 of 25

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until **_after_** the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

EXHIBIT ____4_____
PAGE _____24_____

Case 2:04-cv-09049-DOC-RNB  Document 5335-3  Filed 05/04/09  Page 26 of 46  Page ID
#:173779
Case 2:04-cv-09049-S( )RNB  Document 5273  Filed ( )7/2009  Page 7 of 25

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur. Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . . But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

EXHIBIT ___4_____
PAGE _____25_____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 27 of 46   Page ID
#:173780
Case 2:04-cv-09049-S    RNB   Document 5273   Filed   7/2009   Page 8 of 25

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365.  The standard is exceptionally deferential to the jury's findings.  If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative.  This is not a completely unappealing argument.  For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian.  Totaled, this award is $90 million.  Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times.  Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative.  The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation.  The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount.  The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v. Asbury Automotive Group, LLC 2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90
CIVIL -- GEN                                        8                    Initials of Deputy Clerk __cls_____

EXHIBIT ____4____
PAGE ____26____

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **must** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **meant** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

MINUTES FORM 90                                           Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          9

EXHIBIT ___4_____
PAGE _____27_____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 29 of 46   Page ID
#:173782
Case 2:04-cv-09049-S(   )RNB   Document 5273   Filed 0(   )/2009   Page 10 of 25

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to **all** tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

EXHIBIT ___4___

PAGE ___28___

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 30 of 46   Page ID
#:173783
Case 2:04-cv-09049-S(   )RNB   Document 5273   Filed 0(   )/2009   Page 11 of 25

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          11

EXHIBIT ___4_____
PAGE _____29_____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 31 of 46   Page ID
#:173784
Case 2:04-cv-09049-S(   )RNB   Document 5273   Filed 0(   )7/2009   Page 12 of 25

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              12

EXHIBIT _____4_____
PAGE _____30_____

Case 2:04-cv-09049-DOC-RNB  Document 5335-3  Filed 05/04/09  Page 32 of 46  Page ID
#:173785
Case 2:04-cv-09049-S( )RNB   Document 5273   Filed 0( )/2009  . Page 13 of 25

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery,
which occurred on February 11, 2009.  The parties are **ORDERED** to file with the Court,
no later than forty-five days from the entry of this Order, a joint report that identifies by
docket number and pinpoint citation all materials the parties agree should remain under
seal, as well as the materials any party contends should remain under seal.  In all
instances, all materials that are contemplated by any party to be maintained by the
Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained
under seal.  For example, if there is good cause for maintaining under seal only a small
portion of an attachment, counsel should anticipate that they may be required to e-file a
public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF
## FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the
Forensic Auditor's Report.  Concurrently served, under seal, on each parties' counsel of
record, is a copy of the Forensic Auditor's preliminary report to the Court.  The Court
reserves at this time release of the supporting documentation that is attached to the
report.  This document is, until further Order of the Court, designated as a highly
restricted attorney-eyes-only document.  It may be reviewed, and its contents shared,
only with *counsel of record* in this case and the Court-appointed Temporary Receiver
appointed below; it may not be shared with either the parties or attorneys who are not
counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of
privilege within forty-eight hours of the entry of this Order.  Failure to do may result in
waiver of that privilege.  After the expiration of this forty-eight hour period, the Court will
make further Orders regarding the scope of the release of the report, including its
attachments.

The Court understands that certain requested information has only recently been
produced to the Forensic Auditor.  For that reason, and because he has represented to
the Court that certain analyses are ongoing, the Court continues the appointment of the
Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte
application to intervene for the limited purposes of responding to Mattel's ex parte
application for a receiver for MGA and to address "all other issues related to Omni's

EXHIBIT ___4___

PAGE _____31_____

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket #4761) at 1. This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene. The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id. The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id. Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation."). However, this particular request for intervention is not one that falls into this general category. Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____

EXHIBIT 4
PAGE 32

Case 2:04-cv-09049-DOC-RNB  Document 5335-3  Filed 05/04/09  Page 34 of 46  Page ID
#:173787
Case 2:04-cv-09049-SC RNB  Document 5273  Filed 0 /2009  Page 15 of 25

purpose – to address the issue of the appointment of a receiver – which is directly
related to debt collectability. By virtue of this case, Mattel claims a significant interest in
the assets of the MGA parties, including both money damages and rights to intellectual
property previously held by the MGA parties. Omni 808 now claims a superior interest
by virtue of a transaction that occurred after the jury returned its verdict as to ownership
of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control
of the Bratz assets, as that term is at length defined by its proposed order submitted
with its motion for appointment of a receiver. According to the testimony the Court
heard at trial, the Bratz assets are, at least historically, the most significant ones owned
by the MGA parties. Resolution of the disputes over the priority to these assets may
have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only
ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden."
Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is
sufficient that the would-be intervenor shows that the representation "may be
inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in
general the appointment of a receiver, their positions could differ significantly because
MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and
because Omni 808 has represented that it is an MGAE secured creditor, the Court finds
that the fourth element is met because of the vastly different roles played by MGAE and
Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a
competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is
a party to these consolidated cases for the limited purpose of addressing the
receivership issues. As such, it may file briefing in accordance with the schedule set
forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the
allegations set forth in Mattel's application for the appointment of a receiver and in its
opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its
counsel are restrained and enjoined, absent further order from this Court, from taking
any action to assert or enforce any purported rights against the MGA parties, including
but not limited to commencing an action against the MGA parties, taking any action to
foreclose on any collateral of the MGA parties, committing any act that interferes with
the Temporary Receiver's possession, control or use of the assets of the MGA entities,
or commencing or participating in any involuntary bankruptcy proceedings against any
MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that
hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90
CIVIL -- GEN                                    15                    Initials of Deputy Clerk __cls_____

EXHIBIT ___4___
PAGE ___33___

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 35 of 46   Page ID
#:173788
Case 2:04-cv-09049-S   RNB   Document 5273   Filed 0  7/2009   Page 16 of 25

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds as follows:

1.   The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.   As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.   Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.   Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

EXHIBIT _4_

PAGE _34_

Case 2:04-cv-09049-DOC-RNB    Document 5335-3    Filed 05/04/09    Page 36 of 46    Page ID
#:173789
Case 2:04-cv-09049-SC    RNB    Document 5273    Filed 0    /2009    Page 17 of 25

and related entities (as defined below) are engaged in a course of conduct
with related parties designed to frustrate the Court's Orders, Findings and
Injunction herein;

5.      Good cause exists to believe that the MGA parties, agents, and related
        entities (as defined below) will continue to engage in such transactions,
        acts, practices, and courses of conduct and business to the immediate
        and irreparable loss and damage to Mattel, and contrary to the interests of
        justice, unless restrained and enjoined.

6.      It is appropriate and in the interests of justice that, pursuant to L.R. 66,
        that a Temporary Receiver be appointed and that an Order to Show
        Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.      Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to
        L.R. 66 for the MGA entities to manage, supervise and oversee the assets
        of the MGA entities and the Bratz Brand and all Bratz Assets as these
        terms are defined herein (the "Temporary Receiver").

2.      The Temporary Receiver is appointed and is hereby directed and ordered
        to take full and exclusive control over, and to manage, preserve, and
        maximize the profits of, the MGA entities and the Bratz Brand and Bratz
        Assets as of the date hereof, including, without limitation, by locating,
        taking possession and ownership of, preserving, protecting, managing,
        supervising and overseeing the Bratz Assets.

3.      The Temporary Receiver is further directed to investigate the financial
        affairs of the MGA entities, and specifically investigate transfers and
        transactions made by the MGA entities from and after July 17, 2008.

4.      The Temporary Receiver shall have the power to take any and all action
        which may be necessary, appropriate or advisable to effectuate the
        purposes of the Temporary Receivership, including, but not limited to, the
        power to:

        a.      take custody, control and possession of the assets of the MGA
                entities and Bratz Assets in the possession, custody or control of
                the MGA entities, and/or any person or entity acting at their behest
                or direction or pursuant to their control, including, but not limited to,
                Isaac Larian and any successor-in-interest, subsidiary, corporate
                affiliate, agent, servant, attorney, accountant, officer, director,
                employee or other confederate (collectively, "the MGA parties,

EXHIBIT ____4____
PAGE ____35____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 37 of 46   Page ID
#:173790
Case 2:04-cv-09049-S   RNB   Document 5273   Filed 0   /2009   Page 18 of 25

agents, and related entities") whether or not claimed to be
encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the
Bratz Assets and perform all acts necessary or advisable to
preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities
and the Bratz Assets and products for profit, including, without
limitation, by selling Bratz-branded dolls and other goods through
appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities
and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable
to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and
ordinary expenses incurred by the receivership, provided, however,
that the Temporary Receiver shall maintain and shall not distribute,
disburse or pay to anyone any receivership funds except as needed
to satisfy the reasonable and ordinary expenses incurred by the
receivership;

g.    open bank accounts in the name of the Temporary Receiver and
transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to
collect and maintain, monies owed by virtue of the sale, licensing,
or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon
such terms and conditions as the Temporary Receiver deems
necessary or advisable to carry out the Temporary Receiver's
mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into
modifications to or amendments of such agreements and contracts,
as the Temporary Receiver deems necessary or advisable to carry
out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds,
assignments or other instruments necessary or advisable to carry

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN
                                    18

EXHIBIT ___4_____

PAGE ___36_____

Case 2:04-cv-09049-DOC-RNB    Document 5335-3    Filed 05/04/09    Page 38 of 46    Page ID
#:173791
Case 2:04-cv-09049-S( )RNB    Document 5273    Filed 0( )/2009    Page 19 of 25

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

EXHIBIT _____4_____

PAGE _____37_____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 39 of 46   Page ID
#:173792
Case 2:04-cv-09049-S(   )RNB   Document 5273   Filed 0(   )7/2009   Page 20 of 25

except insofar as the Court orders or invites the Temporary
Receiver to do so; and,

s.    perform such further and additional acts as the Temporary Receiver
deems necessary or advisable to preserve the Bratz Assets,
maximizing the profits derived therefrom, ensure the successful
manufacture, delivery and marketing of Bratz-branded dolls and
products for the spring and fall 2009 seasons and otherwise carry
out the Temporary Receiver's mandate under this Order, including,
without limitation, any acts which could be lawfully carried out by a
corporation in the state of California.

5.    The Temporary Receiver, the Temporary Receiver's employees
and agents as well as any and all of the professionals employed by
the Temporary Receiver, are entitled to compensation for services
rendered at their normal hourly rates and reimbursement for all
expenses incurred by them on behalf of the receivership estate.
The Temporary Receiver shall serve written notice upon counsel of
record for the parties of the amount to be paid to each payee, with
an itemization of the services rendered or expenses incurred.
Upon service of said notice, the itemized fees and expenses may
be paid by the Temporary Receiver on an interim basis.  In the
event that extraordinary services are performed by the Temporary
Receiver, he shall be entitled to extraordinary compensation
according to proof and approval of this Court.  All interim fees paid
shall be subject to final review and approval by this Court.  This
Court retains jurisdiction to award a greater or lesser amount as the
full, fair and final value of such services.  In the event there are
insufficient funds in the receivership estate to fully compensate the
Temporary Receiver and his professionals, the Court retains
jurisdiction to allocate the costs and expenses of this receivership
against Mattel, as the party who sought the appointment of the
Temporary Receiver, and/or Isaac Larian, as the principal owner
and beneficiary of the MGA entities.

6.    Upon service of a copy of this Order, all banks, broker-dealers,
savings and loans, escrow agents, title companies, commodity
trading companies, or other financial institutions shall cooperate
with all reasonable requests of the Temporary Receiver regarding
implementation of this Order, including transferring funds at his
direction and producing records related to the assets of the MGA
entities.

7.    The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __cls_____

EXHIBIT ____4____

PAGE ____38____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 40 of 46   Page ID
#:173793
Case 2:04-cv-09049-S⤵RNB   Document 5273   Filed 0⤵/2009   Page 21 of 25

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities. The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __cls._____

EXHIBIT ___4___

PAGE ___39___

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 41 of 46   Page ID
#:173794
Case 2:04-cv-09049-SL   RNB   Document 5273   Filed 0    /2009   Page 22 of 25

brand.

g.      All Bratz-related items referenced at Paragraph 3 and Paragraph 8
        (at lines 15-19) of the Court's Order granting Mattel's Motion for
        Permanent Injunction (docket #4443).

8.      The Temporary Receiver shall hereby be vested with, and is authorized,
        directed and empowered to exercise, all of the rights, powers or
        authorizations of the MGA entities, their officers, directors, general
        partners or persons who exercise similar powers and perform similar
        duties, including without limitation the sole authority and power to file or
        cause to be filed any suit or action in any court or arbitration tribunal other
        than this court, and filing, or causing to be filed, a petition for relief under
        the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA
        entities, their officers, agents, employees, representatives, directors,
        successors-in-interest, attorneys in fact and all persons acting in concert
        or participating with them are hereby divested of, restrained, enjoined, and
        barred from exercising, any of the rights, powers or authorities vested
        herein in the Temporary Receiver, including but not limited to filing, or
        causing to be filed, any suit or action in any court or arbitration tribunal
        other than this court, and/or filing, or causing to be filed, a petition for relief
        under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the
        MGA entities, except as otherwise specified herein or by further order of
        this Court.

9.      As set forth above, the Court leaves undisturbed the stay set forth in the
        Court's January 7, 2009, Order.  Moreover, the stay is hereby
        supplemented (a) to enable the Temporary Receiver to take the actions
        specified herein, and (b) to permit retailers who receive Bratz products
        pursuant to the authority of the Temporary Receiver, and who pay the
        Temporary Receiver monies due and owing for such Bratz products, to not
        remove such products from the shelves until January 10, 2010, at which
        time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's
        December 3, 2008, Order granting Mattel's Motion for Permanent
        Injunction (docket #4443) shall become effective as to such retailers.  The
        supplemental stay provisions shall not eliminate, alter or amend the
        obligations of any retailer, distributor, seller or other person or entity,
        including, without limitation, the MGA parties, who do not meet the
        foregoing requirements, to earlier recall or earlier obtain the recall of Bratz
        products as required by the mandatory provisions of Paragraphs 4, 6 and
        7 the Court's Order granting Mattel's Motion for Permanent Injunction
        (docket #4443).  The supplemental stay provisions shall not apply to
        permit, enable or authorize enjoined conduct by any enjoined party,
        except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          22

EXHIBIT _____4_____

PAGE_____40_____

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10.    Additional Provisions.

    a.    In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures.  Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

    b.    The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

    c.    The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court.  Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

    d.    During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand.  All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

    e.    Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90
CIVIL -- GEN

                        23

Initials of Deputy Clerk __cls_____

EXHIBIT ____4____

PAGE ____41____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 43 of 46   Page ID
#:173796
Case 2:04-cv-09049-S(   )RNB   Document 5273   Filed 0(   )/2009   Page 24 of 25

related entities shall turn over to the Temporary Receiver any and
all revenues they receive or obtain relating to the MGA entities and
Bratz in any manner and for any reason, including, without
limitation, in connection with any sale, distribution and/or licensing
thereof. These revenues shall not be released pending further
order of the Court. The MGA entities shall account for all such
revenues and interest paid thereon, and shall present to the Court,
the Temporary Receiver and Mattel reports reflecting such
accounting every ten days, commencing ten days from the date of
this Order.

f.    To the extent that the proceeds are insufficient at any point to fund
the cost of the receivership, the MGA entities are ordered to
provide the Temporary Receiver with such additional funds as the
Temporary Receiver requires to accomplish the purposes of the
receivership.

g.    The Court shall retain jurisdiction over the receivership for the
duration of its existence.

h.    No bond shall be required in connection with the appointment of the
Temporary Receiver. Except for acts of gross negligence, the
Temporary Receiver, and his agents and employees shall not be
liable for loss or damage incurred by the MGA entities, its officers,
agents, servants, employees, attorneys or others by virtue of any
act performed or omitted to be performed by the Temporary
Receiver in connection with the discharge of his duties and
responsibilities.

i.    It is further ordered that no officer, director, agent, servant,
employee or attorney of the MGA entities shall take any action in
the name of or on behalf of the MGA entities before any court of
any jurisdiction without the prior written consent of the Temporary
Receiver or Order of the Court. However, notwithstanding the
foregoing, nothing herein shall be deemed to deny the MGA parties
the right to appeal from the Order Granting Preliminary Injunction or
this Order. Moreover, this provision is subject to the right of the
MGA parties with respect to the current litigation, as set forth in
¶ 4.r.

j.    In light of the appointment of a Temporary Receiver, the MGA
entities, their officers, directors, agents, employees and attorneys
are hereby prohibited from filing, or causing to be filed, a petition for
relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN
                              24

EXHIBIT _____4_____

PAGE _____42_____

Case 2:04-cv-09049-DOC-RNB   Document 5335-3   Filed 05/04/09   Page 44 of 46   Page ID
#:173797
Case 2:04-cv-09049-S(   )RNB   Document 5273   Filed 0(   )/2009   Page 25 of 25

et seq. for the MGA entities without prior permission of this Court.

k.   The MGA entities are ordered to cooperate fully with the Temporary
Receiver, including without limitation providing all financial and
other documentation requested by the Temporary Receiver.

l.   The Temporary Receiver is authorized to contact the
Court-appointed Forensic Auditor, Ronald Durkin, and may utilize
the findings and conclusions reached by Mr. Durkin as the
Temporary Receiver deems appropriate.

m.   The Temporary Receiver is hereby ordered and directed to prepare
and provide to this court a report setting forth preliminary
conclusions, findings and recommendations in accordance with the
schedule set forth below.

11.   Order to Show Cause. All interested parties, and any interested creditor,
shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to
show cause, if there be any, why a permanent receiver should not be
appointed in the same scope and manner as the Court's appointment of
the Temporary Receiver. Any declarations, affidavits, points and
authorities or other submissions in support of, or in opposition to, the
appointment of a Permanent Receiver shall be filed with the Court and
served on all parties no later than May 14, 2009.

12.   Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be
served on all known creditors of the MGA entities within three days of the
date of this Order.

13.   The Temporary Receiver shall file a report and recommendation
concerning all actions taken as well as recommendations for further action
no later than Monday, May 11, 2009. This report shall be filed with the
Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**

MINUTES FORM 90
CIVIL -- GEN

25

Initials of Deputy Clerk __cls_____

EXHIBIT ___4_____

PAGE ____43_____

# EXHIBIT 5

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**