# EXHIBIT I

Case 2:04-cv-09049-DOC-RNB  Document 5340-3  Filed 05/04/09  Page 2 of 167  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 3798  Filed 05/21/2008  Page 1 of 10
#:174358

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  May 21, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                          Theresa Lanza
        Courtroom Deputy Clerk              Mark Schweitzer
                                            Court Reporters

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

Christa M. Anderson                         John B. Quinn
Matthew M. Werdegar                         Michael T. Zeller
                                            Jon D. Corey

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

Thomas J. Nolan
Jason D. Russell

PROCEEDINGS:   ORDER RE MOTION FOR RECONSIDERATION

               ORDER RE THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
               JUDGMENT

Exhibit I, p. 105

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 3 of 167   Page ID
#:174340
Case 2:04-cv-09049-SGL-RNB   Document 3758   Filed 05/21/2008   Page 2 of 10

This matter is before the Court on the parties' motions for partial summary judgment and Carter Bryant's and MGA's motion for reconsideration.[1]  The motions were heard on April 22, 2008, and again on May 19, 2008.  On April 25, 2008, the Court issued an order granting in part, denying in part, and deferring in part the motions for partial summary judgment.

The Court now issues the following further rulings regarding the motions for partial summary judgment and the motion for reconsideration.

## MOTION FOR RECONSIDERATION

The motion for reconsideration is based on the new California Supreme Court case of City of Hope Nat'l Medical Center v. Genentech, Inc., 43 Cal. 4th 375 (2008).  After fulling considering City of Hope, however, the Court finds that the case has little applicability to the present case and does not compel a conclusion regarding the existence of a fiduciary duty contrary to that reached by the Court.

City of Hope addresses whether a fiduciary duty can arise (or fail to arise) by operation of law due to the existence of confidential contractual relationship.  At issue in this case is whether the parties' agreement itself created a fiduciary duty.  Under California, these two situations that may give rise to a fiduciary duty -- operation of law or agreement -- are distinct, and California courts have long distinguished between the two.  Despite this clear distinction, Carter Bryant's partial summary judgment papers conflated these principles, as does the motion for reconsideration.

Related to these distinct legal concepts, there is a crucial factual difference between the present case and City of Hope.  The contract at issue in City of Hope did not contain any language that even arguably gave rise to a fiduciary duty.  In contrast, the contract at issue here, for the reasons set forth in the Court's April 25, 2008, Order, sets forth language that does give rise to such a duty.

MGA contends that this Court committed reversible error by holding that the language set forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty.  City of Hope, MGA contends, held that "the entrusting of secret or confidential information to another 'does not compel the imposition of fiduciary duties by operation of law.'"  Motion at 6 (quoting City of Hope).  As alluded to above, this argument, as well as the other two raised by MGA in the motion, overlooks both the differing contractual language in City of Hope and the present case, as well as the related legal distinction regarding the creation of fiduciary relationships.  Factually, the Inventions Agreement

---

[1]  At the hearing, upon representation of settlement between Mattel and Carter Bryant, and pursuant to the stipulation between Mattel and Carter Bryant, the motion is moot as to Carter Bryant.  However, the Court considers the motion because MGA has joined in the motion on the issue of fiduciary duty.  As set forth on the record, because the claims against Carter Bryant have been dismissed, the Court treats MGA as the moving party.

Exhibit I, p. 106

did more than merely entrust Bryant with confidential information; rather, as noted in the Court's first summary judgment Order, the Inventions Agreement explicitly conferred upon Bryant, and Bryant explicitly agreed to accept, a "position of trust" vis-à-vis that confidential information. No such explicit undertaking is found in the agreement at issue in City of Hope, the relevant portions of which are set forth in the California Supreme Court opinion.

On that note, the portion of City of Hope upon which MGA relies to support its argument addresses when a fiduciary relationship arises by operation of law. This argument is merely a continuation of Bryant's conflation, first appearing in Bryant's moving and opposition summary judgment papers, of fiduciary relationships that are created by contract and those that arise as a matter of law. The Court's summary judgment holding clearly rests on the former; the arguments raised on reconsideration are premised on the latter. Compare City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002) (cited by the Court and noting that a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .") with City of Hope, 43 Cal.4th 375, ___, 75 Cal. Rptr.3d 333, 347 (relied on by Bryant for the proposition that the entrusting of confidential information "does not compel the imposition of fiduciary duties by **operation of law**") (emphasis added).

Although the majority of the motion for reconsideration is unmeritorious, it raises important issues, which the Court must address, regarding the scope of the fiduciary duty created, as well as the breach thereof.

Although the parties argued at length as to whether the Inventions Agreement gave rise to a fiduciary duty, they did not focus on the scope of the fiduciary duty that was created. As noted in the Court's April 25, 2008, Order, the Court held Bryant had undertaken such a duty:

> Bryant . . . owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.").

April 25, 2008, Order at 5.

The Court also concluded that Bryant had breached that duty:

> [T]he undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

MINUTES FORM 90
CIVIL -- GEN                                    Page 3

Initials of Deputy Clerk: jh
Time:  2/52

**Exhibit I, p. 107**

Id. at 6.

Upon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion -- as a matter of law -- regarding whether the fiduciary duty extends beyond Mattel's confidential information.

The language creating the fiduciary relationship appears in the section of the Inventions Agreement related to "Trade Secrets" and "Proprietary Information," and is preceded by language (in the same sentence) that Mattel depends upon employees to "maintain that confidentiality." Just above the signature line of the Inventions Agreement, reference is made again to "IMPORTANT OBLIGATIONS OF TRUST," but that language is clearly meant not to create new obligations, but rather to alert the employee that those obligations are created elsewhere within the agreement.

The question of whether an agreement creates a fiduciary duty is generally a question of fact, although a Court may resolve the question as a matter of law where the relevant facts are uncontroverted. See City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1051 (N.D. Cal. 2002); GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 417 (2000). Here, although the Court concludes as a matter of law that the Inventions Agreement imposed a fiduciary duty as to Mattel's confidential information, it cannot reach a similar conclusion regarding any broader duty based on the undisputed facts.

Accordingly, the Court **VACATES** the above-quoted language from its April 25 Order finding that Bryant breached his fiduciary duty and leaves the determination of whether Bryant's fiduciary duty beyond Mattel's confidential information as an issue for trial.[2]

One more point raised in the motion for reconsideration is worthy of note. Although Carter Bryant has been dismissed from the case, he raised at least one issue in his motion, in which MGA has not joined, that should not pass without comment by this Court.[3] Clearly, and perhaps understandably, counsel for Carter Bryant were disappointed by the Court's rulings as set forth in the first summary judgment order.[4]

---

[2] The Court also notes that its previous holding necessarily rested on a finding that the materials provided to MGA were indisputably Mattel's property. As set forth in section I, relating to the summary judgment breach of contract issue, that conclusion cannot be drawn as a matter of law on the undisputed facts, and thus summary judgment may not appropriately be granted.

[3] Upon the Court's expression of concern regarding this issue at the hearing on this matter, counsel for MGA explicitly disavowed any joinder in this part of Bryant's motion.

[4] The Court addresses this part of the Order to counsel because counsel are officers of the Court and authors of the comment at issue. The Court also references "counsel" in the plural rather than the singular because all counsel -- author, editor, and signatory -- who were involved in this comment bear responsibility therefor.

Exhibit I, p. 108

However, in addressing what they saw as the deficiencies in the Court's Order, counsel painted with far too broad a brush. Rather than focus the Court's attention on a discrete issue -- or even a number of discrete issues -- counsel resorted to broad language incorporating every argument raised in their summary judgment papers and, without articulated foundation, impugns the integrity of this Court's deliberative process. Nowhere is this more clear than in footnote 7 of the motion for reconsideration; accordingly, the Court's discussion focuses on that portion of the motion, which reads as follows:[5]

> In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant's and MGA's favor. On this issue, and many others, the Court has failed to do so, instead accept Mattel's views of disputed facts and ignoring material factual disputes. Indeed, the Court declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's. Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

Motion at 11 n.7.

With this footnote, counsel first takes issue with the Court's application of the summary judgment standard, of which counsel and the Court are well aware. This standard requires the Court to view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of the doubt of both any disputes of fact and all reasonable inferences to be drawn from the evidence. Nevertheless, the Court's focus is on *material* facts, and the determination of what constitutes a material fact is shaped by legal rulings made by the Court. Some facts that seem material to the parties under their legal theories become immaterial in light of the Court's rulings that reject those theories.

In footnote 7, counsel misrepresents the Court's treatment of the evidence offered in support of and in opposition to the three motions for partial summary judgment. Bryant states that the Court "apparently summarily sustain[ed] all Mattel's objections [and] den[ied] all Bryant's [evidentiary objections]." Id. However, the Court merely noted that, where a ruling necessarily relied upon evidence to which parties had made objections, the objections thereto were implicitly overruled:

---

[5] Footnote 7, however, is not the only offending portion of the motion for reconsideration. See e.g., Motion at 2 n.1 (referring to "the Order's other errors, including misapplication of the summary judgment standard," stating that those errors "will also require correction," but noting that the motion "does not discuss those flaws in detail"); motion at 9 n.5 (incorporating unspecified portions of his summary judgment briefing).

Exhibit I, p. 109

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 7 of 167   Page ID
#:174344
Case 2:04-cv-09049-SGL-RNB   Document 3758   Filed 05/21/2008   Page 6 of 10

> The parties have made hundreds of objections to evidence
> offered in support of and in opposition to the motions for partial
> summary judgment. Although counsel for Bryant requested explicit
> rulings on the objections raised by Bryant, the Court declines to do so.
> To the extent that this Order necessarily relies on evidence subject to
> any party's objection, the objections are implicitly overruled.

April 25, 2008, Order at 1-2. This is a vastly different statement than that made by counsel.
Counsel's characterization of the Court's ruling implies that the Court, without inquiry into the
merits of Bryant's objections, arbitrarily denied them all. The Court's Order merely recognizes
that, by operation of law, to the extent a court relies upon objected-to evidence, and where, as
where, the evidence must be admissible to be relied upon for such ruling, any objections raised
thereto are implicitly overruled.

In addition to mounting an overly broad -- and baseless -- attack on the integrity of the
Court's deliberative process on a grand scale, counsel fail to support the more narrow point they
appear to be making in footnote 7. Footnote 7 is appended to text that takes issue with the Court's
conclusion that Bryant did nothing more than merely "prepare to compete" with his employer and,
thus, in Bryant's view, did not breach his duty of loyalty or fiduciary duty. See Motion at 10.

Although the footnote does not alert the Court to any particular material facts -- disputed or
undisputed -- which counsel contend were overlooked by the Court, the text to which the footnote
is appended provides valuable clues on this issue. From this text, the Court's attention is directed
to Bryant's Opposition at 23-24. The Court notes that the pages of that document refer to no
factual contentions; rather, those pages are devoted to legal arguments and conclusions.
However, reading further in the opposition, at page 29, the Court finally encounters a citation to the
facts upon which counsel rely. They reference "SGI 151" and SGI "154-156".

Although obvious to counsel who practice in this district, and certainly to counsel of record
here, to guide the uninitiated, the Court notes that in a summary judgment opposition filed in this
Court, "SGI" clearly refers to the "Statement of Genuine Issues" filed by a party opposing a
summary judgment motion. See Local Rule 56-2. Referring to that document, found at docket
# 2778, one finds that material facts are numbered sequentially, and that "SGI 151" refers to the
fact numbered "151." The subsequently cited facts, "154-156," not surprisingly, are found on the
page that follows.

Having thus traversed this far to ascertain the material facts upon which counsel relies for
its sweeping criticism of the Court's deliberative process, the Court notes those facts below.

Bryant signed the MGA contract on October 4, 2008, and gave notice of his resignation to
Mattel the same day. SGI 151. Before Bryant left Mattel, he told various Mattel employees,
including managerial employees, that he was going to start his own business as a freelance
designer, working on his own doll line as an independent contractor. SGI 154. Mattel's exit
interview form for Bryant reflects that during his exit interview, he told Mattel's HR representative,

Initials of Deputy Clerk: jh
Time: 2/52

**Exhibit I, p. 110**

Sandy Yonemoto, that he was leaving for a new job as a "business owner" in "illustration/product design" because an "[o]pportunity arose -- had to take it." SGI 155. Bryant did not tell anyone at Mattel that he was leaving Mattel to work with a non-competitor, nor did Mattel inquire. SGI 156.

In accordance with the summary judgment standard, the Court viewed these facts in the light most favorable to Bryant. However, on the "preparations to compete" point, these facts are not material. They relate to the circumstances of his departure; essentially, Bryant's point is that he did not lie to Mattel when he left. Although this may well be true, the circumstances surrounding the announcement of his resignation and the last days of his employment with Mattel tell only part of the story.

Even assuming Bryant gave notice of his resignation to Mattel the same day he signed his contract, it is uncontroverted that he continued working for Mattel after that date; so Bryant's fact, which tends to imply that he made a clean break with Mattel the moment he established a contractual relationship with MGA, becomes immaterial when viewed in connection with the uncontroverted fact that he continued working for Mattel after he signed his MGA contract, as the latter fact neutralizes the implication presented by the former fact when it stood alone. Additionally, notwithstanding the fact that Bryant gave notice of his resignation the same day he signed his contract, the substance of his contract remains the same, including Bryant's agreement to begin working for MGA on a "top priority" basis, as does the undisputed fact that he entered into a contract with Mattel's competitor to produce a competing product while he was still employed by Mattel.

Moreover, the fact that he gave Mattel various descriptions of what he intended to do professionally *in the future*, any one of which might imply that he was leaving to pursue independent interests that would compete with or had a tendency to compete with Mattel, similarly does not detract from his past and/or then-present actions, or the fact that he was already under contract to compete with Mattel.

Thus, counsel's criticism of the Court's deliberative process is both overly broad and unfounded. Perhaps footnote 7 should come as no surprise to the Court. The parties in this action are engaged in what they themselves have described as high-stakes "corporate warfare." However, whatever the rules of engagement may be for such warfare, those rules are decidedly **not** representative of the standard of conduct which the parties -- and their counsel -- should look to for guidance as to how they should conduct themselves in or before this Court.

Counsel for Carter Bryant, and indeed, all counsel in this case and who practice before this Court, are strongly urged to concisely and precisely articulate their requests for relief in a manner that refrains from the unintentional impugning of the integrity of the Court's deliberative process. Counsel for all parties are reminded that this Court has extended to all counsel and all parties a similar professional courtesy.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion for

Exhibit I, p. 111

reconsideration. The Court **VACATES** that portion of its April 25, 2008, order that found, as a matter of law, that Bryant breached his fiduciary duty.

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### I. BREACH OF CONTRACT

Mattel seeks summary judgment on its breach of contract claim. Resolution of the breach of contract issue is largely an issue of timing.

There are undisputed facts regarding the timing of the creation of three categories of materials, but there are factors regarding each of these three categories that preclude a grant of summary judgment at this time.

Specifically, it is uncontroverted that four drawings (each with a color and a black-and-white version) of dolls in evening wear, were created by Bryant during the period of his employment with Mattel. However, the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings.

It is also undisputed that, during the period of his employment, Bryant created a dummy doll, anticipating it would used in his pitch of Bratz to MGA. However, this dummy is apparently no longer in existence, and therefore the scope of any rights owned by Mattel cannot be ascertained from the undisputed facts.

Finally, it is undisputed that a drawing by Bryant, from which the sculpt of the Bratz doll was made, was created during the period of Bryant's employment with Mattel. However, the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt, nor is it clear what, if any, legal conclusions the Court could draw from a clear record on this issue.

Additionally, the larger timing issue regarding the remaining Bratz drawings, as admitted by the parties, involve triable issues of fact.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment as to its claim for breach of contract.

### II. COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

Exhibit I, p. 112

Here, Mattel asks the Court to undertake the fact-specific determination involved in the third element, aided in large part by expert testimony, when the first element is clearly in dispute. Although often summary adjudication of one element of a claim is appropriate, such is not the case here. In order to undertake the substantial similarity analysis, the Court must compare a copyrighted work with an allegedly infringing work. The Court may not perform a meaningful substantial similarity analysis without the copyrighted work that is the foundation of that analysis.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment on this issue.

### III. AIDING AND ABETTING

MGA and Larian are accused of aiding and abetting Bryant's breach of the duty of loyalty and breach of fiduciary duty.

For reasons ably set forth by counsel for MGA at the hearing, the Court finds that there are triable issues of fact as to the issue of aiding and abetting any breaches of the duty of loyalty and fiduciary duty by Carter Bryant and therefore **DENIES** Mattel's motion for summary judgment on this issue.

### IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations. The Court previously denied MGA's motion, noting however, that the first, third, and fifth elements were met, and that Mattel has raised a triable issue of fact as to the second element.[6]

However, upon reflection, and in light of the Court's ruling regarding the aiding and abetting claims, the Court now concludes that, although Mattel has raised a triable issue of fact regarding the third element, the Court may not at this point conclude that the undisputed facts establish the third element. The Court leaves undisturbed its ruling that Mattel has raised a triable issue of fact as to the second element.

As set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element.

Despite these minor changes in the Court's previous ruling, the disposition of this portion of

---

[6] The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

Initials of Deputy Clerk: jh

Time: 2/52

Exhibit I, p. 113

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 11 of 167   Page ID
#:174348
Case 2:04-cv-09049-SGL-RNB   Document 3758   Filed 05/21/2008   Page 10 of 10

MGA's motion remains unchanged:  MGA's motion is **DENIED** to the extent it seeks summary judgment on Mattel's claim for intentional interference with contractual relations.

## V. UNFAIR COMPETITION

As noted by counsel for MGA at the May 19, 2008, hearing, the Court's first summary judgment left unaddressed Mattel's statutory unfair competition claim to the extent that is based on fraudulent conduct.  Mattel did not contend in opposition to MGA's motion for partial summary judgment that this claim was based on any fraudulent conduct.

In its first summary judgment order, the Court eliminated two bases for Mattel's statutory unfair competition.  See April 25, 2008, Order (referring to the unfair competition claim to the extent it is based on copyright infringement and to the extent it is based on unfair conduct).  The Court now holds that this third basis can also be eliminated at this time.

## VI. STATUTE OF LIMITATIONS

At the second hearing on the motions for partial summary judgment, for the first time, counsel for MGA referenced evidence in support of its statute of limitations argument, attached to a declaration that had not been served on opposing counsel and that had been filed earlier the same afternoon. Counsel thereafter made legal arguments regarding the conclusions to be drawn from this evidence.

Mattel had little opportunity to respond to MGA's arguments, as it was not entirely clear at the hearing to what evidence MGA referred in making its arguments.  Accordingly, the Court has afforded Mattel the opportunity to respond to this argument and therefore **DEFERS** ruling on the statute of limitations issue until the Court has had the opportunity to review Mattel's response.

**IT IS SO ORDERED.**

**Exhibit I, p. 114**

# EXHIBIT J

Case 2:04-cv-09049-DOC-RNB Document 5340-3 Filed 05/04/09 Page 13 of 167 Page ID
#:174350
Case 2:04-cv-09049-SGL-RNB    Document 3826    Filed 05/27/2008    Page 1 of 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                                    Date: May 27, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Gina Guzman
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

    Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations. Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim. Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

---

[1]  Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

MINUTES FORM 90                                               Initials of Deputy Clerk: gg
CIVIL -- GEN                          Page 1                  Time: 0/00

Exhibit J, p. 115

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 14 of 167   Page ID
#:174351
Case 2:04-cv-09049-SGL-RNB      Document 3826      Filed 05/27/2008      Page 2 of 9

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for Bryant over several others after holding a sort of fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

Exhibit J, p. 116

Case 2:04-cv-09049-DOC-RNB Document 5340-3 Filed 05/04/09 Page 15 of 167 Page ID
#:174352
Case 2:04-cv-09049-SGL-RNB Document 3826 Filed 05/27/2008 Page 3 of 9

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does *not* deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003**.") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

Exhibit J, p. 117

Case 2:04-cv-09049-DOC-RNB Document 5340-3 Filed 05/04/09 Page 16 of 167 Page ID
#:174353
Case 2:04-cv-09049-SGL-RNB Document 3826 Filed 05/27/2008 Page 4 of 9

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the
"STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003,
letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge
of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the
effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on
November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the
California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g.,
Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a
claim within the limitations period after accrual of the cause of action." Fox v. Ethicon
Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable
proposition, however, the Court must determine what the California Supreme Court means by
"accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause
of action accrues at the time when the cause of action *is complete with all of its elements*," id.
at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further
to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific
legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of
wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California
Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action
until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted).
In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to
suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted).
Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and
*suspicion* of the remaining generic elements, the claim has accrued and the limitations period has
begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See
id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has
stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of
an injury, and are charged with knowledge of the information that would have been revealed by
such an investigation." Id. Of course, this statement must itself be viewed with the definition of
"injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in
determining the date of accrual of a cause of action, means both a person's physical condition and
its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of
limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

Page 4                    Initials of Deputy Clerk: gg
Time: 0/00

Exhibit J, p. 118

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an
> incentive to sue, she must decide whether to file suit or sit on her
> rights. So long as a suspicion exists, it is clear that the plaintiff must go
> find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

MINUTES FORM 90
CIVIL -- GEN                                    Page 5                          Initials of Deputy Clerk: gg
                                                                                Time: 0/00

Exhibit J, p. 119

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18. Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is time barred. Mattel points out that it has previously disavowed, and that it continues to disavow, any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions represent the better approach, the Court is guided by the California Supreme Court case cited above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff, suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at 802. During the course of discovery, she learned, through the testimony provided at the deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff amended the complaint to assert a products liability claim, the trial court, on statute of limitations grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id. at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent, the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff who seeks to assert the that products liability claim. In a sense, however, this analogy goes nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different from the potential claim for which it was on notice of in 2001. After all, both would be based on breach of contract and/or copyright claims, both would involve the same defendants, and both would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that Mattel's position is the stronger one. After discussing the application of its rule in the more narrow situation presented by the overlap of medical malpractice and products liability claims at issue in the case before it, the Fox Court explained:

Page 6

Exhibit J, p. 120

> More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

Id. at 813. In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims: Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel. This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements. This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

Exhibit J, p. 121

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening defendants." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3] The analysis is slightly different for the conversion claim. See infra at 9-10.

Page 8

Exhibit J, p. 122

Case 2:04-cv-09049-DOC-RNB Document 5340-3 Filed 05/04/09 Page 21 of 167 Page ID
#:174358
Case 2:04-cv-09049-SGL-RNB    Document 3826    Filed 05/27/2008    Page 9 of 9

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

Exhibit J, p. 123

# EXHIBIT K

Case 2:04-cv-09049-SGL-RNB     Document 3902     Filed 06/02/2008     Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  June 2, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.  v.  CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
============================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes
        Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
                (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues: (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                             Initials of Deputy Clerk:  jh
CIVIL -- GEN                          1

Exhibit K, p. 124

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]    This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

Initials of Deputy Clerk: jh

Exhibit K, p. 125

Case 2:04-cv-09049-DOC-RNB  Document 5340-3  Filed 05/04/09  Page 25 of 167  Page ID
#:174362
Case 2:04-cv-09049-SGL-RNB    Document 3902      Filed 06/02/2008    Page 3 of 4

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

Exhibit K, p. 126

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003). Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003. Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them. Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

IT IS SO ORDERED.

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

4

# EXHIBIT L



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**FINAL JURY INSTRUCTIONS AS GIVEN** |

## JURY INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence and will soon hear the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 30 of 167   Page ID
#:174675
Case 2:04-cv-09049-SGL-RNB   Document 4075   Filed 07/10/2008   Page 3 of 37

1

## JURY INSTRUCTION NO. 2

2

3

4      When a party has the burden of proof on any claim by a preponderance of

5   the evidence, it means you must be persuaded by the evidence that the claim is

6   more probably true than not true.

7

8      You should base your decision on all of the evidence, regardless of which

9   party presented it.

10

11      In criminal trials, the prosecution must prove that the defendant is guilty

12   beyond a reasonable doubt.  But in civil trials, such as this one, the party who is

13   required to prove something by a preponderance of the evidence need prove only

14   that it is more likely to be true than not true.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 ## JURY INSTRUCTION NO. 3

3

4    The law defines cause in its own particular way.  A cause of injury, damage,

5 loss or harm is something that is a substantial factor in bringing about an injury,

6 damage, loss or harm.

7

8    A "substantial factor" is something which is more than a slight, trivial,

9 negligible, or theoretical factor in producing a particular result.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit L, p. 131

1

2                    <u>**JURY INSTRUCTION NO. 4**</u>

3

4          You should decide the case as to each defendant separately.  Unless

5    otherwise stated, the instructions apply to all parties.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit L, p. 132**

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 33 of 167   Page ID
Case 2:04-cv-09049-SGL-RNB      Document 4715    Filed 07/10/2008     Page 6 of 37
#:174370

## <u>JURY INSTRUCTION NO. 5</u>

The evidence you are to consider in deciding what the facts are consists of:

   (1)  The sworn testimony of any witness;

   (2)  The exhibits which are received into evidence; and

   (3)  Any facts to which the lawyers have agreed.

-5-

1

2

## <u>JURY INSTRUCTION NO. 6</u>

3

4    In reaching your verdict, you may consider only the testimony and exhibits

5  received into evidence.  Certain things are not evidence, and you may not consider

6  them in deciding what the facts are.  I will list them for you.

7

8    (1)    Arguments and statements by lawyers are not evidence.  The lawyers

9    are not witnesses.  What they have said in their opening statements, closing

10   arguments, and at other times is intended to help you interpret the evidence,

11   but it is not evidence.  If the facts as you remember them differ from the way

12   the lawyers have stated them, your memory of them controls.

13

14   (2)    Questions and objections by lawyers are not evidence.  Attorneys

15   have a duty to their clients to object when they believe a question is

16   improper under the rules of evidence.  You should not be influenced by the

17   objection or by the court's ruling on it.

18

19   (3)    Testimony that has been excluded or stricken, or that you have been

20   instructed to disregard, is not evidence and must not be considered.  In

21   addition sometimes testimony and exhibits are received only for a limited

22   purpose; when I have given a limiting instruction, you must follow it.

23

24   (4)    Anything you may have seen or heard when the court was not in

25   session is not evidence.  You are to decide the case solely on the evidence

26   received at the trial.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# JURY INSTRUCTION NO. 7

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 135

1
2                    **JURY INSTRUCTION NO. 8**
3
4        Evidence may be direct or circumstantial.  Direct evidence is direct proof of
5   a fact, such as testimony by a witness about what that witness personally saw or
6   heard or did.  Circumstantial evidence is proof of one or more facts from which
7   you could find another fact.  You should consider both kinds of evidence.  The law
8   makes no distinction between the weight to be given to either direct or
9   circumstantial evidence.  It is for you to decide how much weight to give to any
10  evidence.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    -8-        Case No. Case No. CV 04-9049 SGL (RNBx)
                                               JOINT PROPOSED JURY INSTRUCTIONS

                                         **Exhibit L, p. 136**

1

2
### JURY INSTRUCTION NO. 9

3

4       If weaker and less satisfactory evidence is offered by a party, when it was

5  within that party's ability to produce stronger and more satisfactory evidence, the

6  evidence offered should be viewed with distrust.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 137

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 10

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

      (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

      (2)    the witness's memory;

      (3)    the witness's manner while testifying;

      (4)    the witness's interest in the outcome of the case and any bias or prejudice;

      (5)    whether other evidence contradicted the witness's testimony;

      (6)    the reasonableness of the witness's testimony in light of all the evidence; and

      (7)    any other factors that bear on believability.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

**Exhibit L, p. 138**

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 39 of 167   Page ID
#:174875
Case 2:04-cv-09049-SGL-RNB   Document 4875   Filed 07/10/2008   Page 12 of 37

1    The weight of the evidence as to a fact does not necessarily depend on the
2    number of witnesses who testify about it.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 40 of 167   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4175   Filed 07/10/2008   Page 13 of 37

## JURY INSTRUCTION NO. 11

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 140

1

## JURY INSTRUCTION NO. 12

2

3    The parties have agreed to certain facts to be placed in evidence.  You

4  should therefore treat these facts as having been proved.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit L, p. 141

## JURY INSTRUCTION NO. 13

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 142

1

2

**<u>JURY INSTRUCTION NO. 14</u>**

3      The evidence that a witness has lied under oath on a prior occasion or given

4  inconsistent testimony under oath may be considered, along with all other

5  evidence, in deciding whether or not to believe the witness and how much weight

6  to give to the testimony of the witness and for no other purpose.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

**Exhibit L, p. 143**

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 44 of 167   Page ID
#:174385
Case 2:04-cv-09049-SGL-RNB      Document 4385      Filed 07/10/2008      Page 17 of 37

# JURY INSTRUCTION NO. 15

Evidence has been presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand by the party that responded to the written interrogatories.

Exhibit L, p. 144

## JURY INSTRUCTION NO. 16

Evidence has been presented to you in the form of admissions of one of the parties to written requests submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures.  The matters admitted are deemed conclusively established as to the party that made the admission.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

**Exhibit L, p. 145**

## JURY INSTRUCTION NO. 17

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

-18-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 146

1

## <u>JURY INSTRUCTION NO. 18</u>

2

3

4          Certain charts and summaries not received in evidence have been shown to

5    you in order to help explain the contents of books, records, documents, or other

6    evidence in the case.  They are not themselves evidence or proof of any facts.  If

7    they do not correctly reflect the facts or figures shown by the evidence in the case,

8    you should disregard these charts and summaries and determine the facts from the

9    underlying evidence.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 147

1

## JURY INSTRUCTION NO. 19

2

3

4          Certain charts and summaries have been received into evidence to illustrate

5    information brought out in the trial.  Charts and summaries are only as good as the

6    underlying evidence that supports them.  You should, therefore, give them only

7    such weight as you think the underlying evidence deserves.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
                                               JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 148

Case 2:04-cv-09049-DOC-RNB    Document 5340-3    Filed 05/04/09    Page 49 of 167    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 4115    Filed 07/10/2008    Page 22 of 37
#:174386

1

## JURY INSTRUCTION NO. 20

2

3        All parties are equal before the law and a corporation is entitled to the same

4    fair and conscientious consideration by you as any party.

5

6        Under the law, a corporation is considered to be a person.  It can only act

7    through its employees, agents, directors, or officers.  Therefore, a corporation is

8    responsible for the acts of its employees, agents, directors, and officers performed

9    within the scope of authority.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 50 of 167   Page ID
#:174307
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 23 of 37

## JURY INSTRUCTION NO. 21

In its first claim, Mattel contends that it has certain rights to all Bratz-related ideas, concepts, drawings, designs, and other works "conceived or reduced to practice," that is, created, by Carter Bryant, alone or jointly with others, while he was employed by Mattel, including Bratz drawings and the idea for the name "Bratz."

MGA and Isaac Larian deny Mattel's contention.

Mattel's claim is based on a contract between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement." As a matter of law, the Inventions Agreement is a valid and enforceable agreement.

Section 2(a) of the Inventions Agreement provides:

"I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly [with] others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title

1   and interest in such inventions, and all my right, title and interest in any patents,

2   copyrights, patent applications or copyright applications based thereon. I will

3   assist the Company and/or its nominees (without charge but at no expense to me)

4   at any time in every proper way to obtain for its and/or their own benefit, patents,

5

6   and copyrights for all such inventions anywhere in the world and to enforce its

7   and/or their rights in legal proceedings."

8

9

10   The Inventions Agreement defines the term "inventions" as follows:

11

12   "[T]he term 'inventions' includes, but is not limited to, all discoveries,

13   improvements, processes, developments, designs, know-how, data computer programs

14   and formulae, whether patentable or unpatentable."

15

16   To prevail on its first claim, Mattel must show, by the preponderance of the

17   evidence, that any particular Bratz-related idea, concept, drawing, design or work was

18   "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly

19   with others, while employed by Mattel.

20

21   It is for you to decide what, if any, Bratz-related works were created by Mr.

22   Bryant, alone or jointly with others, while he was employed by Mattel.

23

24

25

26

27

28

-23-

# JURY INSTRUCTION NO. 22

In its second claim, Mattel contends that that MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant. To establish this claim, Mattel must prove the following by a preponderance of the evidence:

1. That there was a contract or contracts between Mattel and Carter Bryant;

2. That MGA and/or Mr. Larian knew of the contract;

3. That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4. That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5. That Mattel was harmed in some way; and

-24-

1    6.    That the conduct of MGA and/or Mr. Larian was a substantial factor

2    in causing Mattel's harm.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-                Case No. Case No. CV 04-9049 SGL (RNBx)

1
2
## <u>JURY INSTRUCTION NO. 23</u>
3
4
5   As a matter of law, there was a valid contract between Mattel and Mr.
6   Bryant, namely the Inventions Agreement.
7
8
9   As a matter of law, Mr. Bryant directly competed with Mattel by entering
10  into a contract with MGA, Mattel's competitor, to produce a competing product
11  while he was still employed by Mattel.  Whether the remaining requirements of
12  Mattel's claim for intentional interference with contractual relations have been
13
14  satisfied or not is for you to decide.
15
16
17  It is also a matter of law that MGA and/or Isaac Larian's mere offering of
18  employment to Carter Bryant would not be sufficient, by itself, to establish an
19  intentional interference with the contract between Mattel and Mr. Bryant.
20
21
22
23
24
25
26
27
28

-26-     Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 154

1

## <u>JURY INSTRUCTION NO. 24</u>

2

3     In deciding whether MGA or Isaac Larian acted intentionally, you may

4     consider whether they knew that a disruption in the performance of a contract or

5

6     contracts was substantially certain to result from their conduct.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 155

## JURY INSTRUCTION NO. 25

In its third and fourth claims, Mattel contends that MGA and Isaac Larian aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and (2) his duty of loyalty to Mattel. To establish that MGA and/or Mr. Larian are liable for aiding and abetting breaches of fiduciary duty or breach of the duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

1.    Mr. Bryant's conduct constituted a breach of such duty or duties;

2.    MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.    MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

# JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.    That Mr. Bryant owed a fiduciary duty to Mattel;

2.    That Mr. Bryant breached his fiduciary duty to Mattel;

3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

4.    That Mattel was harmed in some way; and

5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

Exhibit L, p. 157

## JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

    1.     That Mr. Bryant was Mattel's employee;

    2.     That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

    3.     That Mattel did not give informed consent to Mr. Bryant's conduct;

    4.     That Mattel was harmed in some way; and

    5.     That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

-30-

## JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company.  The value of that Proprietary information depends on it remaining confidential.  The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

-31-

1   "'Proprietary Information' means any information (including formula,

2   pattern, compilation, device, method, technique or process) that derives

3   independent economic value, actual or potential, from not being generally known

4

5   to the public or to other persons who can obtain economic value from its disclosure

6   or use, and includes information on the Company, its customers, suppliers, joint

7   ventures, licensors, licensees, distributors, and other persons and entities with

8

9   whom the Company does business."

10

11

12   As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

13   he entered into a contract with MGA, Mattel's competitor, while still employed by

14   Mattel, to produce a line of fashion dolls to be marketed in direct competition with

15   Mattel's products.

16

17

18   At the same time, merely seeking employment from a competitor, and a

19   failure to notify an employer of a decision to seek new employment until a

20   decision is final, does not constitute a breach of duty of loyalty.

21

22

23

24

25

26

27

28

-32-                Case No. Case No. CV 04-9049 SGL (RNBx)

## JURY INSTRUCTION NO. 29

1
2
3      In its final claim, Mattel contends that MGA, MGA Entertainment (HK)
4
5  Limited, and Isaac Larian wrongfully exercised control over Mattel's property,
6  including tangible Bratz-related works such as Mr. Bryant's drawings.  To establish
7  this claim for conversion, Mattel must prove the following by a preponderance of
8  the evidence:
9
10
11      1.      That tangible property was "conceived or reduced to practice" --- that
12  is, created --- by Carter Bryant, alone or jointly with others, during the period in
13
14  which he was employed by Mattel (January 4, 1999, to October 19, 2000);
15
16      2.      That any of the defendants intentionally took possession of such
17  property for a significant period of time;
18
19
20      3.      That Mattel did not consent;
21
22
23      4.      That Mattel was harmed; and
24
25
26      5.      That any one of the defendant's conduct was a substantial factor in
27  causing Mattel's harm.
28

Exhibit L, p. 161

## JURY INSTRUCTION NO. 30

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 162

1

2    ## JURY INSTRUCTION NO. 31

3

4        If it becomes necessary during your deliberations to communicate with me,

5    you may send a note through the bailiff, signed by your presiding juror or by one

6    or more members of the jury.  No member of the jury should ever attempt to

7    communicate with me except by a signed writing; I will communicate with any

8    member of the jury on anything concerning the case only in writing, or here in

9    open court.  If you send out a question, I will consult with the parties before

10   answering it, which may take some time.  You may continue your deliberations

11   while waiting for the answer to any question.  Remember that you are not to tell

12   anyone—including me—how the jury stands, numerically or otherwise, until after

13   you have reached a unanimous verdict or have been discharged.  Do not disclose

14   any vote count in any note to the court.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit L, p. 163**

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 64 of 167   Page ID
#:174401
Case 2:04-cv-09049-SGL-RNB     Document 4015     Filed 07/10/2008     Page 37 of 37

1

2                    **JURY INSTRUCTION NO. 32**

3

4          A verdict form has been prepared for you.  After you have reached

5    unanimous agreement on a verdict, your presiding juror will fill in the form that

6    has been given to you, sign and date it, and advise the court that you are ready to

7    return to the courtroom.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit L, p. 164

# EXHIBIT M

1
2
3
4
5
6
7
8   UNITED STATES DISTRICT COURT
9   CENTRAL DISTRICT OF CALIFORNIA
10   EASTERN DIVISION
11
12   MATTEL, INC.,                          CASE NO. CV 04-9049 SGL (RNBx)
13              Plaintiff,                   Consolidated with
                                             Case No. CV 04-09059
14        vs.                                Case No. CV 05-02727
15   MGA ENTERTAINMENT,                      Hon. Stephen G. Larson
16              Defendant.                   **FINAL VERDICT FORM AS GIVEN**
17
18   AND CONSOLIDATED ACTIONS
19
20
21
22
23
24
25
26
27
28

1
2

# VERDICT FORM

3

4    We answer the questions submitted to us as follows:

5

## Timing of Tangible Items

6
7    1.    For each of the items listed below, has Mattel proven by a

8    preponderance of the evidence that the item was "conceived or reduced to practice"

9    — that is, created — by Carter Bryant, alone or jointly with others, during the

10   period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

11

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

27
28

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 68 of 167   Page ID
#:174405
Case 2:04-cv-09049-SGL-RNB   Document 4125   Filed 07/17/2008   Page 3 of 8

| Yes | No | |
|:---:|:---:|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

-3-

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

**Exhibit M, p. 168**

3.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

4.      For each of the items listed below, has Mattel proven by a

preponderance of the evidence that the item was "conceived or reduced to practice"

— that is, created — by Carter Bryant, alone or jointly with others, during the

period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| **Trial Exhibit No.** | YES | NO |
|---|---|---|
| The Three Dimensional Item Presented at Pitch Meeting | X | ____ |
| Trial Exhibit 1136 | X | ____ |

## **Timing of Ideas**

5.      Has Mattel proven by a preponderance of the evidence that Carter

Bryant conceived the "Bratz" characters while employed by Mattel?

Yes    X

No    ____

6.      Has Mattel proven by a preponderance of the evidence that Carter

Bryant conceived the name "Bratz" while employed by Mattel?

Yes    X

No    ____

**<u>Intentional Interference with Contractual Relations</u>**

7.    Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional interference with contractual relations?

         Yes    _X_

         No    ____

8.    Is Isaac Larian liable to Mattel for intentional interference with contractual relations?

         Yes    _X_

         No    ____

**<u>Aiding and Abetting Breach of Fiduciary Duty</u>**

9.    Is MGA liable to Mattel for aiding and abetting breach of fiduciary duty?

         Yes    _X_

         No    ____

10.    Is Isaac Larian liable to Mattel for aiding and abetting breach of fiduciary duty?

         Yes    _X_

         No    ____

**<u>Aiding and Abetting Breach of the Duty of Loyalty</u>**

11.    Is MGA liable to Mattel for aiding and abetting breach of the duty of loyalty?

         Yes    _X_

         No    ____

07209/2554627.7

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

**Exhibit M, p. 171**

1       12.    Is Isaac Larian liable to Mattel for aiding and abetting breach of the
2  duty of loyalty?

3            Yes   X
4            No   _____

5

6                           **Conversion**

7       13.    Is MGA liable to Mattel for conversion?

8            Yes   X
9            No   _____

10

11      14.    Is Isaac Larian liable to Mattel for conversion?

12           Yes   X
13           No   _____

14

15      15.    Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16           Yes   X
17           No   _____

18

19

20      Once this verdict form is completed, the foreperson of the jury should sign
21  and date on the lines below.

22  DATED: July 17_____, 2008
23

24

25                                      Presiding Juror
26

27

28

# EXHIBIT N

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 75 of 167   Page ID
#:174422
Case 2:04-cv-09049-SGL-RNB   Document 4238   Filed 08/08/2008   Page 1 of 12

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date:  August 8, 2008

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
=============================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              None Present
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present


PROCEEDINGS:   **ORDER DENYING MOTION FOR MISTRIAL**

        This matter is before the Court on MGA's motion for a mistrial.[1]  The matter was heard on
August 4, 2008, at which time the Court announced its ruling.  This Order reiterates that ruling and
sets forth the rationale for the Court's ruling.

### I. BACKGROUND

        After the verdict in Phase 1(a) had been rendered, on July 25, 2008, and the day after
opening arguments in Phase 1(b) trial, Juror No. 6 delivered to the Court a note, stating:

        HEY, JUDGE LARSON, THERE IS AN ISSUE THAT CONCERNS
        ME THAT I'D LIKE TO TALK TO YOU ABOUT.  THE THING IS, I DON'T FEEL

---

[1] Herein, the Court refers collectively to the MGA entities defendants and Isaac Larian as "MGA."

Exhibit N, p. 173

Case 2:04-cv-09049-DOC-RNB  Document 5340-3  Filed 05/04/09  Page 76 of 167  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 4238  Filed 08/08/2008  Page 2 of 12
                                    #:174238

COMFORTABLE TALKING ABOUT IT IN FULL COURT.  COULD I SPEAK WITH
YOU AT SIDE-BAR WITH THE LAWYERS AND COURT REPORTER PRESENT?
OTHERWISE, I'LL KEEP THIS TO MYSELF.  THANKS, [JUROR] NUMBER 6.

July 25, 2008, Unsealed Tr. at 4.  After a preliminary interview with Juror No. 6 in the presence of
counsel, counsel agreed that the Court should interview Juror No. 6 in camera, outside the
presence of counsel.  Unsealed Tr. at 12-13.

     The Court's interview with Juror No. 6 revealed that Juror  No. 8 made inappropriate
remarks regarding defendant Isaac Larian's ethnicity.  As a result of this interview, the Court
determined that interviews of additional jurors was necessary; counsel consented to the additional
interviews.  Thereafter, the Court interviewed in chambers each juror individually.

     The transcripts of the juror interviews shall remain in camera and under seal; nevertheless,
those interviews may be summarized as follows:  All ten jurors were interviewed, including Juror
No. 8.  All jurors except one, Juror No. 2, were able to confirm that comments regarding the
ethnicity and/or national origin of Isaac Larian were made in the jury room.  Juror No. 8 herself
confirmed that she made comments regarding Mr. Larian's ethnicity and/or national origin.  Of
those nine jurors, six (including Juror No. 8 herself) recounted that the remarks at issue were
attributed by Juror No. 8 to her attorney-husband and that the remarks represented his
assessment of individuals of Persian ethnicity and/or Iranian national origin.[2]  Of the remaining nine
jurors, four of those independently recalled that Juror No. 8 used the word "stubborn" in recounting
her husband's assessment of Persians and/or Iranians.  One juror specifically recalled a remark to
the effect that Persians and/or Iranians "stole ideas."  Another juror recalled the adjective "stingy"
being used; yet another recalled the adjective "rude"; and finally, another recalled the verb "lie"
being used.  Juror No. 8's account differed:  She explained her remark was about immigrants and
the potential for a language barrier problem.

     As a result of those interviews, the Court made certain factual findings, which were set forth

---

[2] Although the distinction is not of any particular relevance to the Court's current inquiry, and is one that neither
the Court nor the parties have focused upon thus far, for the sake of precision, the Court must take note of the exact
nature of the improper remarks. Notably, it is unclear from the record whether the remarks were directed toward what
the Court understands to be Mr. Larian's ethnicity (Persian) or his national origin (Iranian), or both. It appears to the
Court that either they were directed toward both or that the speaker was unaware of any distinction to be made.
Regardless, this point does not bear on the Court's analysis and these remarks were inappropriate in any event.
Having taken note as to what the remarks were directed, the Court also takes note of to what the remarks were not
directed: Clearly, from the record, the remarks were not directly reflective of a broader group of ethnicities and/or
national origins generically described as those from "the Middle East," although it is clear that Persians and/or Iranians
fall into this broader category. Compare Tr. at 317 (MGA and Mr. Larian's counsel's reference to Mr. Larian having left
"the Middle East" at an early age). Similarly, the remarks were not directed toward Mr. Larian's race (Caucasian) rather
than his ethnicity or national origin, as suggested by MGA. See Motion at 25 (referring to Juror No. 8's "racial bias").
Finally, it is also clear from the record (and no party has suggested otherwise), that although Mr. Larian revealed his
religion during his testimony (Jewish), the remarks were not directed toward his religion.

MINUTES FORM 90                                                     Initials of Deputy Clerk: jh
CIVIL -- GEN

Exhibit N, p. 174

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 77 of 167   Page ID
#:174438
Case 2:04-cv-09049-SGL-RNB     Document 4238     Filed 08/08/2008     Page 3 of 12

in detail in the Court's July 25, 2008, Order.[3]  The Court found that specific inappropriate comments based on Mr. Larian's ethnicity were made during jury deliberations; that the jury foreperson and other jurors immediately admonished Juror No. 8 that there was no room in the deliberation process for such remarks; that the remarks were made toward the end of the deliberation process while the jury was attempting to reach a unanimous verdict on four specific drawings that were the subject of dispute among the jurors;[4] that the remarks did not influence the jury's verdict in Phase 1(a); that some jurors believed that Juror No. 8 should be removed from the jury; and that all jurors indicated that the remarks would have no effect on any deliberations or decision to be made in Phase 1(b) of this trial.  See docket # 4155 at ¶¶ 1-7.

After interviewing the jurors, the Court met with counsel, who agreed with the Court's assessment that Juror No. 8 should be excused.  Thereafter, the Court met with Juror No. 8 in chambers with counsel present.  The Court explained to Juror No. 8 that she would be excused from further service in this case based on the statements she had made and ordered her to refrain from speaking about this case until the conclusion of Phase 1(b) of this trial.

In a letter to the Court dated July 29, 2008, Juror No. 8 reiterated her denial of wrongdoing and, in her view, the "neutral context" in which she posited certain statements relating to Isaac Larian's ethnicity and/or national origin.  The letter also delves into Juror No. 8's subjective beliefs regarding the responsible approach she believes she took in the jury's deliberations.  She also conveyed her personal negative reaction to the Court's factual findings and decision to dismiss her from the jury.

Based on the Court's findings, MGA made an oral motion for a mistrial on July 25, 2008.  The Court granted leave to MGA to file its motion in written form and set an expedited briefing schedule for that motion.  It is MGA's written motion that is presently before the Court.

## II.  AMENDMENT TO COURT'S JULY 25, 2008, ORDER

### A.    Improper Remarks

Upon review of the transcript of the juror interviews, the Court finds that it must amend the factual findings set forth in its July 25, 2008, Order.  Specifically, the Court previously found, in ¶ 1 of that Order, that Juror No. 8 remarked to the other jurors that her husband has told her about a "client or clients who are Iranian and who are stubborn, rude, stingy, are thieves, and have stolen other person's ideas."  Id.

---

[3] Upon a more deliberated and comprehensive review of the transcript of the juror interviews, the Court finds that it must make a slight amendment the factual findings set forth in its July 25, 2008, Order.  That amendment, and the reasons therefor, are set forth infra, section II.

[4] The jury was ultimately unable to reach a verdict on these four drawings.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN

Exhibit N, p. 175

Although only one juror specifically recounted the remark regarding stealing another's ideas, the Court finds that the remark was made. It does so based on the fact that the juror recounting this fact was the same juror who brought this incident to the Court's attention, and who therefore had ample time to reflect upon his recollection before reporting it. Moreover, the content of this juror's interview and his demeanor throughout leads the Court to conclude that he not only recalled the details of this incident but that he also understood at the time the remarks were made that the notion of the theft of ideas was an important issue in Phase 1(a) of the trial. Finally, his recollection is supported by another juror's recollection that the term "lie" was used.

Relatedly, however, although the Court previously found that the term "thieves" was used, a review of the transcript of the interviews reveals that no juror recounted the use of that term.

The Court finds that Juror No. 8 used the term "stubborn" because it was specifically recalled, without prompting by the Court, by four of the eight jurors who heard the remarks.

The Court does not find that the adjective "stingy" was used. Only one juror recalled use of that term and, by her own admission, her recollection was not clear on this issue. In fact, the juror stated that she didn't remember the term Juror No. 8 used, but stated that she thought it was "stingy or something" or "[s]omething on that order."

The Court finds that Juror No. 8 used the term "rude" as recounted by one juror. Based on her statements during the Court's interview and her demeanor during the interview, the Court finds that the juror who recounted the use of the term "rude" was not equivocal in her recollection of the use of that term. The juror who recounted the use of the term "rude" was also personally involved in the immediate admonishment given to Juror No. 8 that there was no room in the deliberation process for such remarks and thus was, in the Court's view, fully engaged in this incident.

Accordingly, the Court **AMENDS** the factual findings set forth in the July 25, 2008, Order, by **VACATING** the second sentence of ¶ 1 and **SUBSTITUTING** the following sentence: "Specifically, Juror No. 8 indicated that her husband, an attorney, has told her about a client or clients who are Persian and/or Iranian and who are stubborn, rude, and who have stolen other people's ideas."

## B.    Effect of Remarks on Jury

The Court does not find it necessary to amend its factual findings regarding the effect of the remark on the other jurors, set forth at ¶ 5 of the Court's July 25, 2008, Order. Specifically, the Court found that "the remarks did not, in any way, effect or influence the decision made by the jury."

At the time of the juror interviews, the Court inquired of a number of the remaining jurors (and all jurors asked responded in the negative) whether Juror No. 8's comments affected their deliberations. The Court previously expounded upon the finding of fact set forth in ¶ 5 by noting

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

4

Exhibit N, p. 176

that "[a]ll the jurors clearly indicated, by both their verbal and non-verbal response to the Court's questioning, that the remarks had no impact on their decision in Phase 1(a)."

As acknowledged by both parties in connection with the present motion, Rule 606(b) of the Federal Rules of Evidence bars consideration of the jury's mental processes.[5] Therefore, the Court finds it appropriate to more fully articulate the basis for its finding of fact that the remarks had no impact on the jury's decision in Phase 1(a). The Court has re-examined the transcript of its juror interviews and reconsidered whether this factual finding should be made if the Court does not consider any juror's answer that may have been based on his or her mental processes. Excising such evidence, the Court reaffirms the finding set forth in ¶ 5 on an alternative, independent basis. Specifically, the Court finds that the improper remarks had no effect on the jury's decision based on the reaction of the individual jurors to the remarks and based on the timing of the remarks.

## III. FED. R. EVID. 606(b)

Both sides take positions on the Court's interviews of the jurors and how the fruits thereof may be considered. Mattel contends that the information obtained from the juror interviews may not, consistent with Fed. R. Evid. 606(b), be considered at all in connection with the current motion. MGA, for its part, contends that although information may be used to establish the existence of bias, the Court's inquiry must end there and a mistrial must be declared based on that limited inquiry. In the Court's view, neither side is correct about how the Court must apply Rule 606(b) and, in any event, both sides consented to the Court's interviews of the jurors without any limitation on how the results thereof could be used, thereby waiving the objections they now raise.

The Court's analysis begins with the language of the relevant Federal Rule of Evidence:

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).

---

[5] See Motion at 18; Opp. at 3; Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co., 206 F.3d 900, 908 (9th Cir. 2000) (citing Rushen v. Spain, 464 U.S. 114, 120 n.5 (1983)).

At issue here are Juror No. 8's recounting of statements made by her attorney-husband. These statements clearly were not part of the evidence submitted to the jury. Therefore, the Court concludes that the statements constituted "extraneous prejudicial information" into which the Court may inquire.

In cases in which extraneous information has been received by the jury, the Ninth Circuit directs the trial court to consider the following factors to determine whether a new trial is warranted:

(1) [W]hether the material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.

Estrada v. Scribner, 512 F.3d 1227, 1238 (9th Cir. 2008).

As to the first factor, it is clear that the material was actually received in the jury room.

As to the second and fourth factors, the Court found, as set forth in the July 25, 2008, Order, that the remarks were made toward the end of the deliberation and after the jury had reached agreement on the Verdict Form questions that were ultimately returned unanimously. All remaining jurors who heard the remark were in agreement that the remarks came very near the end of their deliberations, and four of them specifically recalled that the remarks were made after agreement had been reached on all subjects upon which the jury ultimately reached a verdict.

As to the third factor, the Court notes that all remaining jurors who heard the remark were either involved in or witnessed an immediate admonishment of Juror No. 8 that a jury room was no place to express such remarks. By all accounts, there was no discussion or consideration of the substance of Juror No. 8's remarks.

As to the fifth factor, the Court can discern no other issues that suggest in any way that the extrinsic material affected the verdict. In fact, the Court is very confident, based on both the verbal and, even more importantly, non-verbal responses to the Court's questioning that the extrinsic material had no effect on the verdict.

Thus, application of the Estrada factors clearly compel the conclusion that MGA's motion for mistrial be denied.

In any event, prior to the Court's interview of the jurors, both sides consented thereto without limitation, and thereby have waived any objection to the Court's inquiry or use of the

Exhibit N, p. 178

information from those interviews.

## IV. VOIR DIRE OF JUROR NO. 8

MGA also argues that the motion for mistrial should be granted because Juror No. 8 was dishonest in her responses – or more accurately, in her failure to respond -- to certain questions during voir dire. Claims of this type of juror misconduct are evaluated in accordance with McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984). The Ninth Circuit has articulated the relevant inquiry as follows: "(1) [W]hether 'a juror failed to answer honestly a material question on voir dire;' and (2) whether 'a correct answer would have provided a valid basis for a challenge for cause.'" Price v. Kramer, 200 F.3d 1237, 1254 (9th Cir. 2000) (quoting McDonough Power Equip.)).

At the outset, the Court must again note its factual finding is not that Juror No. 8 was biased in the legal sense, see section VI, infra, or even that she herself held certain preconceptions regarding Persians and/or Iranians. Rather, the Court found that "Juror No. 8 indicated that her husband, an attorney, has told her about a client or clients who are Persian and/or Iranian and who are stubborn, rude, and who have stolen other people's ideas." MGA's argument regarding dishonesty in voir dire is based on an unsound premise -- that the Court has found Juror No. 8 held the views expressed by her statements. See e.g., Motion at 21 ("Where a potential juror does not truthfully disclose biases or prejudices that would render them unable to be impartial and then participates in the verdict, a civil litigant has a right to a mistrial.").

Nevertheless, the Court is mindful of the Ninth's Circuit's suggestion that those who use racial slurs – and thus, by extension, statements regarding ethnocentric bias – generally subscribe to the views that the use of such terms imply. See e.g., United States v. Henley, 238 F.3d 1111, 1121 (9th Cir. 2001). Assuming, however, that the Court were to make the factual finding upon which MGA's argument is premised, MGA's argument would still be unpersuasive.

Counsel for MGA and Mr. Larian did not, in voir dire, ask any specific questions about Mr. Larian's ethnicity and/or national origin. The closest reference in voir dire related to Mr. Larian's experience as an "immigrant" from the "Middle East" and disclosure that the claims at issue involved allegations of dishonesty on his part. Motion at 24. Counsel for MGA and Mr. Larian failed to ask questions designed to ferret out preconceptions regarding Persians and/or Iranians (or even Middle Easterners in general), nor did he ask any questions regarding the jury panel's personal experiences or business dealings – or those of their family or friends – with other individuals who share Mr. Larian's ethnicity and/or national origin. MGA simply cannot fault a juror for failing to answer a question during voir dire that it did not ask. See e.g., Sanders v. Lamarque, 357 F.3d 943, 949 (9th Cir. 2004) (no juror dishonesty in failure to disclose past gang-related issues where questions were posed to jury panel in present tense); Hard v. Burlington Northern R. Co., 870 F.2d 1454, 1460 (9th Cir. 1989) (no duty to disclose past employment where juror was questioned regarding present but not past employment); U.S. v. Aguon, 851 F.2d 1158, 1170 (9th

Exhibit N, p. 179

Cir. 1988) (no duty to disclose juror was under investigation for crime similar to the one at issue in
the case in which he served as a juror).

The question wasn't asked; therefore, there was no answer to all, let alone a dishonest
answer. Therefore the first part of the McDonough Power Equip. test has not been met.
Moreover, in the absence of an answer, the Court cannot consider whether that answer would
have provided a basis for a challenge for cause. The second part of the McDonough Power Equip.
test has not been met.

The Court accordingly rejects MGA's contention that Juror No. 8 was dishonest in her voir
dire answers.

## V. APPLICABILITY OF SIXTH AMENDMENT PRECEDENT TO CIVIL TRIALS

The Sixth Amendment to the United States Constitution guarantees an accused the right to
a fair trial. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the
right to a speedy and public trial, by an impartial jury of the State and district wherein the crime
shall have been committed, which district shall have been previously ascertained by law, and to be
informed of the nature and cause of the accusation; to be confronted with the witnesses against
him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance
of Counsel for his defence."). Pursuant to the Sixth Amendment, the Ninth Circuit has held that
"[t]he bias . . . of even a single juror would violate [an accused's] right to a fair trial." Estrada v.
Scribner, 512 F.3d 1227, 1239 (9th Cir. 2008) (internal quotation marks and citation omitted).
MGA contends that this principle should be applied to the current civil trial because a fair trial by
jury is also guaranteed to civil litigants by virtue of the Seventh Amendment. See U.S. Const.
amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars,
the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise
reexamined in any Court of the United States, than according to the rules of the common law.").

MGA argues because both the Sixth and Seventh Amendments guarantee the right to a fair
trial, "the standards governing the Sixth and Seventh Amendment rights to a fair and impartial jury
are the same." Motion at 12 n.4. It makes this contention in support of its overarching argument
that the presence of one biased juror violates this right and, therefore, the Court should declare a
mistrial without further inquiry. Id. at 12-13. However, this argument is unpersuasive both on the
facts as found by the Court and on the authority cited by MGA in support of its argument.

As a factual matter, the Court has not found, and there is not evidence before the Court to
support a finding, that Juror No. 8 was biased in the legal sense of that term. See section VI, infra.

Moreover, in support of its argument, MGA cites authority that does not support the broad
proposition it advances. Specifically, MGA cites Sea Hawk Seafoods v. Alyeska Pipeline Service

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

8

Exhibit N, p. 180

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 83 of 167   Page ID
#:174428
Case 2:04-cv-09049-SGL-RNB   Document 4238   Filed 08/08/2008   Page 9 of 12

Co., 206 F.3d 900, 906 n.4 (9th Cir. 2000); Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir. 1983); and Caterpillar, Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1371 n.2 (Fed. Cir. 2004) .

A reading of the relied-upon footnote in the Sea Hawk case, as well as the text to which it is appended, reveals only the Ninth Circuit applies precedent on a specific Rule 606(b) issue developed in criminal cases (which implicate the Sixth Amendment) to civil cases (which implicate the Seventh Amendment).  206 F.3d at 906 ("Our precedents distinguish between introduction of 'extraneous evidence' to the jury, and ex parte contacts with a juror that do not include the imparting of any information that might bear on the case. Our precedents are mostly in criminal cases, but we have applied the same rules in civil cases.").  Absent from this case is any articulation of the wholesale incorporation of Sixth Amendment principles in cases implicating the Seventh Amendment.

In Rinker, the Ninth Circuit considered the issue of an unauthorized communication between a party and a juror regarding the jury's ongoing deliberations. 724 F.2d at 1353.  It appears that MGA cites this case for the unremarkable proposition that "the integrity of the jury system is no less to be desired in civil cases." Id. (internal quotation marks and citation omitted).  This proposition, like that stated in Sea Hawk, stops well short of the wholesale incorporation of Sixth Amendment principles to cases implicating the Seventh Amendment that MGA advances.

However, MGA's position is supported, at least up to a point, by the Ninth Circuit's reliance in Rinker, on a criminal case that sets up a rebuttable presumption of prejudice in cases in which a jury is presented with an outside influence such as a party's unauthorized communication with a juror. 724 F.2d at 1354 (citing United States v. Armstrong, 654 F.2d 1328, 1332 (9th Cir. 1981)). Nevertheless, this case severely undercuts MGA's overarching argument that the presence of one biased juror violates this right and therefore the Court should declare a mistrial without further inquiry.  In Rinker, the Ninth Circuit specifically noted that the district court failed to undertake an extensive enough investigation into the jury incident.  Rinker, 724 F.2d at 1354 ("Given the added fact that in questions about jury incidents, we are ultimately not so concerned with their nature as with the prejudice they may have worked on the fairness of the defendant's trial, we conclude that the question of prejudicial effect deserved more consideration.") (internal quotation marks, alteration mark, and citations omitted).

Finally, the cited-to portion of Caterpillar, when read in conjunction with the authority upon which it relies, Skaggs v. Otis Elevator Co., 164 F.3d 511, 514 (10th Cir. 1998), again stands only for the unremarkable proposition that both the Sixth and the Seventh Amendments guarantee the right to a fair trial, and that, therefore, juror issues arising in criminal cases are "germane" to civil cases.  The Caterpillar case, like Sea Hawk and Rinker, does not suggest that there has been a wholesale incorporation of Sixth Amendment principles to cases implicating the Seventh Amendment.

None of the cases cited by MGA support the contention that the mere presence of a juror

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

9

**Exhibit N, p. 181**

who makes improper remarks based on a party's ethnicity compels the Court to grant a mistrial without further inquiry. Therefore, as set forth in section III, supra, the Court has applied the test set forth in Estrada and denied the motion.

Related to MGA's argument discussed in this section is its argument that it is entitled to the unanimous verdict of all ten jurors. Implicit in this argument is that because Juror No. 8 was biased, her verdict should be treated as having been, more or less, excised from the jury's verdict, and thus MGA is left with a unanimous verdict of nine jurors although ten jurors deliberated. For support, MGA relies upon Parker v. Gladden, 385 U.S. 363 (1966).

In Parker, an accused was convicted of second-degree murder in a state-court proceeding. Id. at 363. During the jury's sequestration, a bailiff made statements on two occasions to two different jurors regarding his opinion of defendant's guilt, as well as his opinion that if the defendant was not guilty, the Supreme Court, through the appeal process, would "correct" the verdict. Id. The Supreme Court rejected the argument that, although a jury of twelve deliberated, the verdict could stand on the untainted verdict of the remaining ten jurors, as a jury of ten was permissible under the laws of the state in which the defendants was convicted. Id. at 365. The Supreme Court's decision was influenced, however, by a number of concerns not at issue here.

First, the Court was concerned with the weight of authority statements of the bailiff, as "an officer of the State" carried. Second, the Court was also concerned with the defendant's right to cross-examination. Neither of those issues are implicated here. The statements in the instant case were made not by any authority figure but by a peer. Certainly, there is no indication here that the other jurors accorded any additional weight to her statements because they were attributed to her attorney-husband. To the contrary, the record is clear that the other jurors gave no weight to her statements and, beginning with the foreperson, other jurors strongly rebuked Juror No. 8 for making the remarks. Accordingly, the concern of the lack of the opportunity to cross examine Juror No. 8 regarding her statements is of no moment because the remaining jurors could not have given any less weight to her statements.

In addition to the concerns regarding the appearance of official imprimatur on and lack of the right of cross-examination as to the remarks at issue in Parker, the Court was also concerned with the defendant's Confrontation Clause rights. That right is not implicated here. Austin v. United States, 509 U.S. 602, 608 n.4 (1993) (Confrontation Clause does not apply in civil cases).

Accordingly, the Court does not read Parker as requiring the Court to grant MGA's motion.

## VI. PRECONCEPTIONS AND PARTIALITY

In the events that gave rise to the present motion and in the proceedings that followed on the heels of those events, the term "bias" has been used, sometimes by the Court, without regard to the term's specific legal meaning in this particular context. When the Court and the parties use

Exhibit N, p. 182

the term "bias," what is implicated is a juror's impartiality – or more precisely, lack thereof. Cases decided under the Sixth Amendment jury trial right in a criminal case, cited by MGA, indeed conclude that the right is violated where just one biased juror participates in a verdict. See Motion at 3 (citing, e.g., United States v. Henley, 238 F.3d 1111, 1120 (9th Cir. 2001)). However, this rule invites the inquiry of what is meant by the term "bias."

Supreme Court precedent establishes what is not required of jurors. Courts do not require that jurors who are called upon to serve be without preconceived notions. Irvin v. Dowd, 366 U.S. 717, 723 (1961). Specifically, in the cited case, the Court did not require that the jurors be without preconceived notions of the guilt or innocence of a criminal defendant, which was the ultimate issue in the case. Id. ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.") (citation omitted). In a human system, we cannot expect perfection. Truly, perfect justice is not of this world. Our legal system and precedent take into account our inherent imperfections. Indeed, as has been observed before, and this Court today concurs, if a standard of perfection on jury verdicts were to be imposed, "[i]t is doubtful whether more than one in a hundred verdicts would stand such a test." Jorgensen v. York Ice, 160 F.2d 432, 435 (2d Cir.1947) (Hand, J.).

MGA contends that "'[d]oubts regarding bias must be resolved against the juror.'" United States v. Gonzalez, 214 F.3d 1109, 1114 (9th Cir. 2000) (quoting Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir. 1991)). The case upon which MGA relies was decided at the voir dire stage when the question at issue was whether a juror who was unable to state on the record that she was able to serve fairly and impartially. See id. ("When a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict."). Juror No. 8 had no such difficulty here. This Court repeatedly asked the venire, including Juror No. 8, whether each could be fair and impartial, and Juror No. 8 responded affirmatively. Notwithstanding MGA's protestations to the contrary, prospective jurors are presumed to be impartial. See Irvin, 366 U.S. at 723.

With this standard in mind, the Court cannot, and reiterates that it has not, found that Juror No. 8 is biased -- i.e., not impartial -- in the legal sense. Instead, as more fully set forth elsewhere, the Court has found only that Juror No. 8 introduced into the jury inappropriate comments attributed to her attorney-husband.

As explained at length herein, the jury's verdict in Phase 1(a) need not be set aside on the basis of a juror's bias.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

11

Case 2:04-cv-09049-DOC-RNB  Document 5340-3  Filed 05/04/09  Page 86 of 167  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 4238  Filed 08/08/2008  Page 12 of 12
#:174238

## VII. CONCLUSION

Nothing is more important to this Court than providing a fair trial to all parties. The right to trial by jury is certainly among the greatest contributions to the rule of law in the last millennium; nevertheless, this human system, as recognized by the Supreme Court, it is not a perfect system, nor could it survive if such was the standard. See e.g., Tanner v. United States, 483 U.S. 107, 120 (1987) (O'Connor, J.) ("There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it.").

The Court deeply regrets that Juror No. 8 introduced remarks into the jury room that have no place in any courthouse, as evidenced by Juror No. 8's dismissal from the jury. At the same time, the Court is encouraged, and deeply so, by the swift and decisive response of the foreperson and other jurors who heard the extraneous remarks, a response that demonstrates that this jury fully shares the Court's commitment to fairness and justice for all of the parties.[6] This jury reacted to extraneous, potentially prejudicial information exactly as a just society would have them react. They are to be commended, not disbanded.

After careful and deliberate consideration of the circumstances present, the Court finds that a mistrial is not required.

The motion for mistrial is **DENIED**.

**IT IS SO ORDERED.**

---

[6] Defendants complain that the jury failed to report the incident to the Court in a timely manner. However, it is clear from the record that the jurors acted very promptly. Immediately after the remarks were made, the foreperson and several other jurors immediately admonished Juror No. 8. Juror No. 10 submitted a note to the Court on the same day of the remarks indicating her discomfort with jury service (which she subsequently revealed to the Court was prompted by her disgust with Juror No. 8's remarks.) Juror No. 6 submitted his note to the Court, quoted in the opening paragraph of this Order, the second trial day after the remarks were made. His delay was due in part to his mistaken assumption that Juror No. 10's note reported the remark to the Court. His delay was also due to, and the foreperson's failure to report the remark was due to, the Court's own jury instruction on July 10, 2008. See docket # 4115 at 35. As such, the limited delay in bringing the matter to the Court's attention does not strike the Court as in any way indicating the jurors' acquiescence to the remarks; to the contrary, the jurors were rightfully outraged. Rather, their delay was due to the uncertainty about the propriety of submitting such information to the Court. This sentiment is borne out in Juror No. 6's remark.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

Exhibit N, p. 184

# EXHIBIT O

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  July 24, 2008

Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                                None Present
            Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn                           Thomas J. Nolan
B. Dylan Proctor                        Carl Alan Roth
Michael T. Zeller                       Jason Russell
Jon Corey                               Lauren Aguiar
 William Price                          David Hansen
Scott B. Kidman

PROCEEDINGS:  **POST-PHASE1A ORDER RE MOTION FOR PARTIAL SUMMARY
              JUDGMENT ON THE ISSUE OF SUBSTANTIAL SIMILARITY;**

              **ORDER RE PROCEEDINGS REGARDING LACHES AND OTHER
              EQUITABLE DEFENSES**

              **ORDER RE FRAUDULENT CONCEALMENT JURY ISSUE**

        These matters were heard on Friday, July 18, 2008, and again on Monday, July 21, 2008, at
which time the Court announced its rulings.  This Order sets forth those rulings and the rationale
therefor.

MINUTES FORM 90                                     Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit O, p. 185

## I. SUBSTANTIAL SIMILARITY AND SCOPE OF PROTECTABILITY

At a post-Phase 1A hearing on remaining legal issues to be addressed prior to commencement of the Phase 1B trial, counsel for MGA raised an issue regarding the scope of the protection to be given to the copyrighted drawings. This issue, in turn, implicates the arguments raised by the parties in the motions for partial summary judgment regarding originality and protectability (raised by MGA) and substantial similarity (an element of copyright infringement upon which Mattel seeks summary judgment).

To address these issues, the Court begins its analysis with a recitation of the elements of copyright infringement, which are (1) ownership of a valid copyright, (2) access by the defendant to the original, and (3) substantial similarity of the original and allegedly infringing works. North Coast Industries v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).

The first element, although not amenable to resolution on summary judgment, was decided by the jury's verdict in Phase 1A. The second element was not contested by MGA, and in any event, was also decided by virtue of the jury verdict. Thus, although the Court previously deferred the issue of substantial similarity, it is now appropriate to consider whether the record on summary judgment allows the Court to adjudicate the final element of copyright infringement in favor of Mattel.

To determine substantial similarity, the Court must apply both the extrinsic test and the intrinsic test.

To apply the extrinsic test, the Court must first examine the specific expressive elements of the works at issue and compare them to those found in the allegedly infringing work. Dr. Seuss Enterprises v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically dissecting works into their components in order to determine whether some – or all – similarities are attributable to unprotected elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached. Id. To apply the extrinsic test to visual works, such as the drawings at issue here, "[t]he basic mode of analysis for comparison of the literary elements applies . . . [, and] unprotect[a]ble elements should not be considered when applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26 (2002). However, "[t]he precise factors evaluated for literary works do not readily apply to art works. Rather, a court looks to the similarity of the objective details in appearance." Id. at 826.

To apply the intrinsic test, the Court examines the overall similarity of expression in the two works from the perspective of the ordinary observer. Olson v. National Broadcasting Co., 855 F.2d 1446, 1448-49 (9th 1988).

In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called "inverse ratio rule" which states that where, as here, a high degree of access to the original works

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

2

Exhibit O, p. 186

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 90 of 167   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4454   Filed 07/24/2008   Page 3 of 9
#:174454

is shown, the burden to show substantial similarity is reduced. <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir.2000).

In applying these principles, the Court cannot conclude that Mattel has shown that it is entitled to summary judgment on the issue of substantial similarity. On summary judgment, MGA offered evidence from its doll design expert pointing out a number of differences between the Bratz dolls and the registered drawings. Additionally, it offered the evidence of Paula Garcia regarding the changes that MGA wished to make in the process of creating the dolls from the drawings to make them less "edgy" and to better appeal to the "tween" market. MGA also offered evidence that its sculptor was given a certain amount of artistic freedom in creating the sculpt. All these combine to create a triable issue of fact regarding whether the dolls are substantially similar to the drawings.

Related to this issue is the one raised by MGA at Friday's hearing: What is the scope of the protectability of the copyrighted drawings? The Court cannot conclude that the scope is, as MGA contends, limited to the "thin" protection that would prohibit little more than virtual copying.

The Court's analysis begins with a presumption of protectability conferred by the registration of the drawings. Where, as here, the relevant works have registered copyrights, registration is prima facie evidence of the validity of a copyright. <u>See</u> 17 U.S.C. § 410(c). This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original, that is, that it is unworthy of copyright protection. <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 489 (9th Cir. 2000) (citation omitted). "Originality in this context means little more than a prohibition of actual copying." <u>Id.</u> (internal quotation marks and citation omitted).

In this vein, the Supreme Court described the low threshold for copyrightability:

The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. . . . Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

<u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>, 499 U.S. 340, 345 (1991). The Court elaborated: The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." <u>Id.</u> (internal quotation marks omitted).

Based on the record before the Court, it does not appear that MGA has contended that the registered drawings are unworthy of <u>any</u> protection; rather, it contends that it is worthy only of "thin" protection. The Court is guided on this point by the case of <u>Satava v. Lowry</u>, 323 F.3d 805 (9th Cir. 2003).

MINUTES FORM 90                                                                                   Initials of Deputy Clerk: jh
CIVIL -- GEN

3

Exhibit O, p. 187

Case 2:04-cv-09049-DOC-RNB  Document 5340-3  Filed 05/04/09  Page 91 of 167  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 4454  Filed 07/24/2008  Page 4 of 9
#:144484

In that case, an artist (Satava) began making glass-in-glass jellyfish sculptures. Id. at 807. When a second artist (Lowry) began making extremely similar sculptures, Satava sued for copyright infringement. Id. at 808-09. The idea to do such a sculpture was held to be beyond copyright protection. Id. at 810. Also outside the scope of copyright protection were the "elements of expression that naturally follow from the idea." Id. Thus, the Ninth Circuit held that Satava's sculptures were unprotected to the extent the physiology of jellyfish drove the presentation of the sculptures. Id. Relatedly, to the extent that traditional methods of glass-in-glass sculpture also influenced the presentation, the sculptures were also unprotected. Id.

Certain features did warrant protection, however. For instance, although the Court found unprotectable depiction of jellyfish swimming vertically, with bright colors, or with tendril-like tentacles attached to rounded bells, the Court found protectable Satava "distinctive curls of particular tendrils; the arrangement of certain hues [of color]; [and] the unique shape of the jellyfishes' bells." Id. at 811-12.

After this analysis, the Ninth Circuit did not place a high qualitative value on Satava's copyright. The Court stated it this way:

> Satava's copyright on these original elements (or their combination) is "thin," however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id. at 812.

The drawings at issue here, however, are not like Satava's jellyfish sculptures. Jellyfish anatomy is much simpler than human anatomy. Correspondingly, in general, there are far more variations in humans (at least that we humans discern). For instance, we regularly take notice of a vast number of particularized differences in facial features, ethnicity, size, shape, proportions, hair color, and hair texture and, of course, various particularized combinations and permutations thereof. Specifically, in the context of the content of the copyrighted drawings at issue, we can also observe the many details of the clothing which adorn the depicted figures.[1] Moreover, an

---

[1] As noted by the Court at Monday's conference, the Court rejects the argument raised by MGA, stated elsewhere in the record, that the protectability of doll clothing is limited in the same manner as is human clothing. Briefly stated, "[a]s a general rule, items of clothing are not entitled to copyright protection. . . . This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act." Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2006) (citations omitted). This general rule is tempered by a limited protection extended to "pictorial, graphic, or sculptural features" even when incorporated into useful articles. 17 U.S.C. § 101. The doll clothing at issue here -- as well as the clothing depicted in the

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

4

Exhibit O, p. 188

artistic expression based on a drawing is much less limited than a glass-in-glass sculpture.

Accordingly, although the Court has denied the motion for summary judgment on the substantial similarity issue, the Court cannot go so far as to find that the registered drawings are subject to only the "thin" protection -- the protection against copying -- referred to in Satava. The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above.

## II. LACHES AND OTHER EQUITABLE DEFENSES

At the hearing on Friday, July 18, 2008, three separate issues regarding the affirmative defense of laches were raised: (1) Whether there is, as MGA contends, a presumption that laches applies when, as here, a copyright claim would be time-barred but for the relation-back doctrine;[2] (2) whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense; and (3) whether the defense is legal (and must be presented to a jury) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury). In the ensuing discussion, the Court addresses each of these issues in turn.

The Court first considers whether there is, as MGA contends, a presumption that laches applies where, as here, a copyright claim would be time-barred but for the relation-back doctrine.

This argument is clearly based on the Jarrow Formulas case, cited at footnote 27 of MGA's opposition to Mattel's motion for partial summary judgment, which MGA relies upon to argue that, notwithstanding any contention that Mattel's copyright claim is timely based on the relation-back doctrine, there is a presumption that claims filed outside the limitations period are time barred. MGA reads Jarrow Formulas far too broadly. That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine. Therefore, its discussion regarding a "reversal" of the presumption of nonapplicability of laches is of little relevance here.[3]

---

copyrighted drawings – are not useful articles. The clothing is part of a toy, and the proposition that toys are unprotectable because they are "useful articles" as that term is used in copyright law has been rejected by courts. See, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983); Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1103 (N.D. Ill. 2005).

[2] The Court previously held that Mattel's copyright claim was timely as to MGA Entertainment because it was brought within the relevant statute of limitations. As to the remaining defendants, the claim was timely in light of the relation-back doctrine.

[3] The court's discussion regarding this issue states:

In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 93 of 167   Page ID
#:174480
Case 2:04-cv-09049-SGL-RNB   Document 4154   Filed 07/24/2008   Page 6 of 9

The Court, in its own research, has been unable to locate any authority that suggests that a related-back claim would be especially vulnerable to the defense of laches. To the contrary, to the extent that such authority is found, it suggests the contrary. See e.g., In re Prempro Products Liability Litigation, 417 F.Supp.2d 1058, 1061 (E.D. Ark. 2006) (dismissing certain plaintiffs from a case, allowing them to re-file their claims in a separate complaint, and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); Bush v. Sumitomo Bank and Trust Co., Ltd., 513 F.Supp. 1051, 1054 (D.C.Tex., 1981) (noting that the court would consider the related-back date of an amended claim to assess the merits of a laches defense); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F.Supp. 310, 313 (D.C. Del.,1985) (noting that the applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)).

The language of the rule allowing relation-back is in accord because it suggests that an amendment that relates back should be treated as if it was filed on the date of the original pleading. See Fed. R. Civ. P. 15(c) ("[a]n amendment to a pleading relates back to the date of the original pleading").

Therefore, in the absence of persuasive authority, the Court is unwilling to apply the "reversed" presumption suggested by MGA. Instead, the Court will continue to be guided by the touchstones of the doctrine of laches: Unreasonable delay and resulting prejudice.

The Court next considers whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense. The Court previously deferred, as it does now, the motion for summary judgment on the remaining affirmative defenses. The Court will consider those at the close of Phase B of the trial as set forth below.

Finally, the Court considers whether the defense of laches is legal (and must be presented to a jury rather than the Court) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).

At Friday's hearing, counsel for MGA stated that MGA had argued in written briefs before the Court that laches, at least insofar as it is applied to a claim of copyright infringement, is a legal defense that must be submitted to the jury. Tr. at 96. When questioned as to the source of the authority, counsel eventually identified the case of Haas v. Leo Feist, 234 F. 105 (S.D.N.Y. 1916). Tr. 102, 106. Referring to this case, counsel contended that "most courts agree that was the first time that laches was applied as a legal defense to copyright." Tr. at 102. However, this case does not address the defense of laches. It does not address what, if any, affirmative defenses to a

---

part of the defendant's conduct occurred within the limitations period.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

Exhibit O, p. 190

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 94 of 167   Page ID
#:144454
Case 2:04-cv-09049-SGL-RNB   Document 4154   Filed 07/24/2008   Page 7 of 9

copyright claim should be presented to a jury. The case does not even involve a trial by jury. This case was cited in MGA's opposition to Mattel's motion for partial summary judgment, but for an entirely different proposition, relating to the merits of the laches defense.

At Monday's hearing, the Court articulated its ruling on this issue on the record in much the same form that it appears herein. The Court referred specifically to the representations of counsel set forth above, noting that the Haas case did not involve a trial by jury and further did not address the defense of laches. Tr. at 5303.

After the Court articulated its ruling, counsel for MGA revealed that perhaps he "wasn't as clear as [he] should have been" regarding this argument, explaining that Haas was "the case from which most courts agree the doctrine of laches could apply to a copyright case." Tr. at 5306. This contention was clear from counsel's argument the previous Friday. What was not clear, however, and what ultimately became clear during Monday's hearing after the Court articulated its ruling, was the source of MGA's briefing on this issue, which was MGA's opposition to Mattel's motion in limine #4 and not MGA's summary judgment papers (which the Court had reviewed at length and in vain in its attempt to locate counsel's argument on this issue). Tr. at 5306.

Although the Court informed counsel that the briefing to which he referred was not included in the materials that the Court instructed the parties to prepare in advance of the Friday hearing, counsel nevertheless asked that the Court to "take another look" at its opposition to the motion in limine, citing specifically the cases of Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 896 (9th Cir. 1997), and United States Fidelity & Guar. Co. v. Lee Investments LLC, 551 F.Supp.2d 1114, 1128 (E.D. Cal. 2008).[4] Both these cases, as well as a third case cited in MGA's opposition to Mattel's motion in limine #4, San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C-04-04632 SI, 2007 WL 1450350 at *10 (N.D.Cal., May 14, 2007), merely represent examples of cases in which trial courts submitted resolution of certain equitable affirmative defenses to the jury. These cases do not stand for the proposition that a Court must submit for the jury's consideration the ultimate conclusion regarding equitable affirmative defenses.[5]

The defense of laches to a copyright claim is clearly an equitable defense. See, e.g., Kling v. Hallmark Cards Inc., 225 F.3d 1030, 1036 (9th Cir. 2000) (beginning its analysis of whether

---

[4] Despite counsel's contention that his argument is based on authority derived from the Haas case, that case is not cited in MGA's opposition to Mattel's motion in limine #4.

[5] MGA's other concern, that the jury's role as factfinder not be usurped, is a valid one. Notwithstanding Mattel's contention that there are no facts that are relevant to both the legal claims and the equitable affirmative defenses, see Mattel's reply to motion in limine #4 at 7-9, the Court will consider MGA's timely proposal for any special interrogatories it deems appropriate to address this concern. As previously indicated by the Court, the parties' proposed jury instructions (which should include any proposed special interrogatories) and verdict forms must be filed no later than July 24, 2008, with indexed and tabbed courtesy copies (in a three-ring binder) provided to the Court.

Exhibit O, p. 191

Case 2:04-cv-09049-DOC-RNB  Document 5340-3  Filed 05/04/09  Page 95 of 167  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 4054  Filed 07/24/2008  Page 8 of 9
#:174424

laches applied to a copyright claim by noting that laches is an "equitable defense"); Zuill v. Shanahan, 80 F.3d 1366, 1370 (9th Cir. 1996) (distinguishing the defense of statute of limitations as "legal" defense from the defense of laches an "equitable" defense). As such, it will be tried to the Court. See e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001) (noting that although the plaintiff had a jury trial right as to his copyright infringement claims, he did not have a right to a jury on the equitable defense of laches); accord Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir.1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

The Court previously suggested that it was inclined to seek an advisory jury verdict on the affirmative defenses; however, the Court is now disinclined to do so based on the risk of jury confusion. The Court is of the opinion that this jury's attention should be focused on the narrow range of issues it is being asked to decide in Phase B.

Therefore, the Court will have the parties present to the jury evidence relevant only to the remaining claims, the issue of fraudulent concealment (as discussed below), and any legal defenses to the remaining claims.

## III. FRAUDULENT CONCEALMENT JURY ISSUE

Also discussed at Friday and Monday's hearing was the issue of fraudulent concealment and its relationship with the previously-adjudicated statute of limitations issue. From the Court's perspective, two issues need to be resolved.

First is the jury's role with respect to a finding of fraudulent concealment. Both parties agree that the issue of whether Mattel has established a period of fraudulent concealment should be submitted to the jury. However, at Friday's hearing, Mattel suggested that the Court's findings as a matter of law on summary judgment regarding the statute of limitations places limitations on the time period during which the jury may find fraudulent concealment. Tr. at 100. Specifically, Mattel attempted to link the Court's findings regarding the earliest possible accrual date of Mattel's claims -- other than conversion and intentional inference with contractual relations -- with the period of fraudulent concealment to be determined by the jury regarding these two claims.

The Court's conclusion regarding the narrow range of possible accrual dates for Mattel's state-law claims, other than the conversion and intentional interference with contractual relations claims, was linked to a specific test relating to California's so-called "discovery rule," which the Court will not repeat here. See May 27, 2008, Order re Statute of Limitations Defense at 4 - 8. In the Court's June 2, 2008, Further and Final Order Re Statute of Limitations Defense, the Court noted that, because the claims for conversion and intentional interference with contractual relations are not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to" these claims. Id. at 3. As noted by the Court in that Order, "[w]hether a period of fraudulent concealment exists, as well as the

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

Exhibit O, p. 192

duration of any such period, . . . are . . . questions of fact for the jury." Id. If Mattel believes that
this approach is erroneous, then it may file, in an introductory statement to its proposed jury
instructions, a short statement of legal argument in support of its position, to which, of course,
MGA may respond.

Second is the scope of the relevant evidence regarding fraudulent concealment. As
articulated by the Court at Monday's hearing (and before that, in its statute of limitations summary
judgment orders cited above), the relevant issues -- or, stated otherwise, the ultimate facts -- are
whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact
that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel. See
Tr. at 5317-19. The relevant evidence, of course, may extend beyond that boundary. See Fed. R.
Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or less probable than
it would be without the evidence.") (emphasis added). For instance, evidence of Mattel's
knowledge of (and evidence regarding MGA's concealment of) the fact that Carter Bryant was
involved at some point with the Bratz project in general is relevant to -- but by no means
dispositive of -- the ultimate facts of whether and for what time period the MGA defendants
fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during
his period of employment with Mattel.

This distinction is in accord with that made by the Court yesterday regarding the admission
of "Phase 2 evidence" in Phase 1B. Although the relevant issues have been, more or less, neatly
dissected into various phases to facilitate efficient adjudication, the relevant evidence is not as
conducive to any surgical cuts and has thus far managed to allude such neat dissection.
Therefore, although counsel should conduct themselves in accordance with the general principles
articulated herein and elsewhere on the record, relevancy, and other limits thereon placed on
admissibility of evidence, most notably Fed. R. Evid. 403, will continue to be determined by the
Court as objections are raised at trial.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

Exhibit O, p. 193

# EXHIBIT P

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 98 of 167   Page ID
#:174435
Case 2:04-cv-09049-SGL-RNB   Document 4259   Filed 08/15/2008   Page 1 of 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                          Date:  August 15, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                            None Present
           Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present


PROCEEDINGS:   **ORDER RE MGA'S MOTION FOR CLARIFICATION/RECONSIDERATION**

        The Court has received and reviewed defendant MGA's motion for
clarification/reconsideration and plaintiff Mattel's response thereto.

        As clearly set forth in the case law and previously agreed to by both plaintiff and defendants,
the scope of copyright protection is for the Court to decide.  <u>See</u> <u>Apple Computer, Inc. v. Microsoft</u>
<u>Corp.</u>, 35 F.3d 1435, 1443 (9th Cir. 1994).  The Court shall determine the appropriate dissection and
filtration of the copyrighted drawing and, through that process, determine the protectable elements
of the copyrighted materials.  <u>Id.</u>  Because this process is a question of law, there is no need, and
it would be unduly confusing, to instruct the jury on how to do the filtration and dissection; rather,
the jury will be instructed as to the protectable elements of the copyrighted materials as well as the
extrinsic and intrinsic test and asked to consider whether the copyright-protectable elements
(extrinsic) of Carter Bryant's drawings and copyright-protected Carter Bryant's drawings as a whole
(intrinsic) are substantially similar to the allegedly infringing Bratz dolls and Bratz products.

        Based on all of the evidence submitted to date, the Court is able to tentatively identify the
following protectable and non-protectable elements of the copyrighted Carter Bryan drawings:

MINUTES FORM 90                                      Initials of Deputy Clerk: cls for jh
CIVIL -- GEN

                                    1

**Exhibit P, p. 194**

| Protectable elements of the copyrighted CB drawings | Non-protectable elements of the copyrighted CB drawings |
|---|---|
| 1.    Particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude.<br><br>2.    Particularized expression of the doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies).<br><br>3.    Particularized, non-functional doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style. | 1.    The resemblance or similarity to human form and human physiology.<br><br>2.    The mere presence of hair, heads, two eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and physiology.<br><br>3.    Human clothes, shoes, and accessories.<br><br>4.    Age, race, ethnicity, and "urban" or "rural" appearances.<br><br>5.    Common or standard anatomical features relative to others (doll nose and relatively thin, small bodies).<br><br>6.    Scenes a faire, or common or standard treatments of the subject matter. |

It is well-established that particularized expressions of human forms and human features as well as non-functional clothing are protectable. Mattel v. Goldberger Doll, 365 F.3d 133, 136 (2d Cir. 2004) ("One artist's version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year-old collector. Another artist's version, which to a grownup may look very like the first, will be a dud to the eight-year-old. . . . We can surmise that in the highly competitive, billion-dollar industry, getting the doll's face and expression exactly right is crucial to success."); Mattel, Inc. v. Azrak-Hamway Intern., Inc., 724 F.2d 357, 360 (2d Cir. 1983) ("[t]he rendering of such an idea [of a muscleman crouching] is not in itself protectable; only the particularized expression of that idea, for example, the particular form created by the decision to accentuate certain muscle groups relative to others, can be protected."). Having considered the very wide range (almost limitless) of possible expressions for the particularized expressions of the protectable elements, the Court finds that they are to be afforded broad protection. McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 321 (9th Cir. 1987) ("Works that are not factual receive much broader protection under the copyright laws because of the endless variations of expression available to the artist.").

Initials of Deputy Clerk: cls for jh

    The Court has already found that the "virtual identity" standard does not apply; rather, the standard to be applied to the protectable elements is the extrinsic/intrinsic substantial similarity test of the Ninth Circuit.  <u>See</u> July 24, 2008, Order at 2.

    **IT IS SO ORDERED.**

**Exhibit P, p. 196**

# EXHIBIT Q



1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                 CENTRAL DISTRICT OF CALIFORNIA
10                        EASTERN DIVISION
11  MATTEL, INC.,                    | CASE NO. CV 04-9049 SGL (RNBx)
12           Plaintiff,              |
13                                   | Consolidated with
14       vs.                         | CASE NO. CV 04-9059 SGL (RNBx)
15                                   | CASE NO. CV 05-2727 SGL (RNBx)
16  MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson
17                                   |
18  Defendants.                      |
19                                   | **COURT'S PHASE B JURY**
20  AND CONSOLIDATED ACTIONS         | **INSTRUCTIONS AS GIVEN**
21                                   |
22                                   |
23
24
25
26
27
28

Exhibit Q, p. 197

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 103 of 167   Page ID
#:174440
Case 2:04-cv-09049-SGL-RNB     Document 4267     Filed 08/20/2008     Page 2 of 56

# JURY INSTRUCTION NO. 1

Members of the Jury:

Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Exhibit Q, p. 198

1

## JURY INSTRUCTION NO. 2

2

You should decide the case as to each party separately. Unless otherwise stated,

3

the instructions apply to all parties.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

1

**JURY INSTRUCTION NO. 3**

2

Whether or not you have taken notes, you should rely on your own memory of

3

the evidence. Notes are only to assist your memory. You should not be overly influenced

4

by your notes or those of your fellow jurors.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

**Exhibit Q, p. 200**

# JURY INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits which are received into evidence; and

3.  any facts to which the lawyers have agreed or stipulated.

Exhibit Q, p. 201

## JURY INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

6

Exhibit Q, p. 202

## JURY INSTRUCTION NO. 6

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

7

Exhibit Q, p. 203

**JURY INSTRUCTION NO. 7**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I have ordered that evidence be stricken from the record. That means that when you are deciding the case, you must not consider that evidence.

8

## JURY INSTRUCTION NO. 8

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

9

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 111 of 167   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4287   Filed 08/20/2008   Page 10 of 56
#:174428

## JURY INSTRUCTION NO. 9

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the bailiff to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

Exhibit Q, p. 206

**JURY INSTRUCTION NO. 10**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial.

Exhibit Q, p. 207

# JURY INSTRUCTION NO. 11

You must not make any assumptions about a witness based solely upon the use of an interpreter to assist that witness.

12

Exhibit Q, p. 208

### JURY INSTRUCTION NO. 12

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

13

Exhibit Q, p. 209

1

## JURY INSTRUCTION NO. 13

2    The parties have agreed to certain facts. You should therefore treat these facts as

3    having been proved.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

Exhibit Q, p. 210

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 116 of 167   Page ID
#:174527
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 15 of 56

**JURY INSTRUCTION NO. 14**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person, including a videotaped deposition, may be used at the trial.

15

**Exhibit Q, p. 211**

# JURY INSTRUCTION NO. 15

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Exhibit Q, p. 212

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 118 of 167   Page ID
#:174256
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 17 of 56

## JURY INSTRUCTION NO. 16

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

17

Exhibit Q, p. 213

**JURY INSTRUCTION NO. 17**

Other charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Exhibit Q, p. 214

1

## JURY INSTRUCTION NO. 18

2

3

      You have heard evidence that both Mattel and MGA purchased and evaluated

4

each other's existing products and had those products in their respective facilities.  In this

5

trial, there is no allegation that it is illegal or improper for a company or person to

6

purchase, possess, or evaluate the publicly available product of a competitor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

Exhibit Q, p. 215

## JURY INSTRUCTION NO. 19

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

20

Exhibit Q, p. 216

**JURY INSTRUCTION NO. 20**

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement of certain items that you found in Phase A of this trial were created by Carter Bryant when he worked at Mattel. The defendants deny that claim.

Copyright is the exclusive right to copy.

This right to copy includes the exclusive rights to:

(1)   Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)   Recast, transform, or adopt the work, that is, to prepare derivative works based upon the copyrighted work;

(3)   Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)   Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.

As a matter of law, Mattel is the owner, by assignment, of the Bratz-related items that you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel, which items have been registered by Mattel at the U.S. Copyright Office. In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

21

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 123 of 167   Page ID
Case 2:04-cv-09049-SGL-RNB      Document 4207    Filed 08/20/2008    Page 22 of 56
#:174460

1       You must consider each defendant's acts separately to determine whether that

2    defendant has engaged in an act that is an infringement of Mattel's copyright.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit Q, p. 218

**JURY INSTRUCTION NO. 21**

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular way of expressing an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular way of expressing that idea in the work is not copied.

23

Exhibit Q, p. 219

## JURY INSTRUCTION NO. 22

Anyone who copies original elements of a copyrighted work without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for the Bratz-related items described above. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.    Mattel is the owner of a valid copyright; and

2.    The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

As a matter of law, the first element is satisfied because Mattel is the owner of each of the items you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel and which Mattel has registered with the U.S. Copyright Office.

Whether or not the second element is satisfied is for you to decide.

24

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 126 of 167   Page ID
#:174426
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 25 of 56

**JURY INSTRUCTION NO. 23**

      A copyright owner is entitled to exclude others from creating derivative works

based upon the owner's copyrighted work.  The term derivative work refers to a work

based on one or more pre-existing works.  Accordingly, Mattel is entitled to exclude

others from recasting, transforming, or adapting, without Mattel's permission, the

copyrighted works you found were created by Carter Bryant, alone or jointly with others,

while he was employed by Mattel.

**Exhibit Q, p. 221**

Case 2:04-cv-09049-DOC-RNB    Document 5340-3    Filed 05/04/09    Page 127 of 167    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 4267    Filed 08/20/2008    Page 26 of 56
#:174467

**JURY INSTRUCTION NO. 24**

An owner is entitled to copyright protection of a compilation. A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

26

Exhibit Q, p. 222

# JURY INSTRUCTION NO. 25

As explained above, Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work. There are two ways in which Mattel may meet that burden.

First, Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants actually copied a significant amount of protectable expression from the work.

Second, in the alternative, Mattel may also show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

It is undisputed in this case that defendants had access to Mattel's copyrighted works. Whether there are substantial similarities between the defendants' works and original elements of Mattel's works is for you to decide.

Exhibit Q, p. 223

**JURY INSTRUCTION NO. 26**

You are to make a determination regarding substantial similarity according to a two-step process, which includes application of the "extrinsic test" and the "intrinsic test." To prevail on its claims for copyright infringement, Mattel must satisfy both of these tests.

First, you must apply the extrinsic test. Under the extrinsic test, Mattel must establish that specific ideas and expressive elements of the works Mattel owns and the Bratz-related products that Mattel claims are infringing are substantially similar.

The Court has determined what elements of the works that you found were created by Carter Bryant, solely or jointly while working at Mattel, are protectable under copyright law. These are the elements that you should consider for the purpose of your comparisons to each of the allegedly infringing products under the extrinsic test:

First, the particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude;

Second, the particularized expression of a doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies); and

Third, the particularized doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style.

In contrast, certain basic elements of Carter Bryant's works are not protectable. Specifically, copying of protected expression or ideas cannot be established by the mere

28

1    fact that both Carter Bryant's works and the allegedly infringing designs bear a

2    resemblance or similarity to human form and human physiology; have hair, heads, two

3    eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and

4

5    physiology; wear or have human clothes, shoes, and accessories; depict a certain age,

6    race, ethnicity, or have an "urban" appearance; possess common or standard anatomical

7    features relative to others or depict common or standard treatment of fashion doll  subject

8    matter.  Nevertheless, particular compilations or combinations of these otherwise non-

9    protectable elements in the works which express a particular style or convey a distinct

10   look or attitude, are protectable.

11

12        You should consider only the elements I have just listed for purposes of the

13   extrinsic test.  Focusing on the protectable elements of the works by Carter Bryant as

14   compared to those elements in the allegedly infringing Bratz-related works, you must

15   determine whether Mattel has proven by the preponderance of the evidence that the works

16   are substantially similar.  If you so find, you must next consider the intrinsic test.  If you

17   do not so find, you must find for the defendants.

18

19        The intrinsic test looks at the overall similarity of ideas and expression in the

20   works from the perspective of an ordinary observer.  You should ask yourself whether the

21   ordinary, reasonable audience, in this case girls between the ages of 7 and 12, would

22   determine or recognize the defendants' products as reflecting the total concept and feel, or

23

24   as a "picturization," of the Bratz-related works that you have found Carter Bryant created

25   alone or jointly with others while employed by Mattel.

26        Mattel does not need to establish that the works it alleges are infringing are

27   identical or virtually identical to the works it owns, nor that the allegedly infringing

28

29

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 131 of 167   Page ID
Case 2:04-cv-09049-SGL-RNB      Document 4287   Filed 08/20/2008    Page 30 of 56
#:174468

1  works do not contain any non-infringing material.  However, Mattel does need to

2  establish that, focusing on the protectable elements of Carter Bryant's designs which I

3  have identified under the extrinsic test, and the overall look and feel of the works under

4  the intrinsic test, there are substantial similarities between the copyright-protected works

5  and the allegedly infringing works.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit Q, p. 226

1

**JURY INSTRUCTION NO. 27**

2

The degree of similarity required to support a finding of substantial similarity is

3

affected by the degree of access MGA, Isaac Larian and MGA Hong Kong had to Carter

4

Bryant's works. The greater the level of access, the lower the showing of similarity

5

required to support a finding of substantial similarity. However, the burden of proving

6

substantial similarity by a preponderance of the evidence always remains with Mattel.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit Q, p. 227

1

**JURY INSTRUCTION NO. 28**

2

Copyright law protects distinctive characters.  Defendants' works infringe

3

Mattel's copyrights if they copy recognizable and distinctive traits, attributes, and

4

elements of the personalities of the characters portrayed in Carter Bryant's works.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32

Exhibit Q, p. 228

1

## JURY INSTRUCTION NO. 29

2

3

4

5

6

7

8

9

10

11

12

     If you find that defendants had access to the copyrighted works and substantial similarity between the copyrighted works and allegedly infringing works, you must find that defendants infringed Mattel's copyrights. Defendants contend that certain Bratz-related works were created independently, that is, that defendants did not actually copy or prepare derivative works from Carter Bryant's works when they created these Bratz-related works, notwithstanding their admitted access to these works.  A claim of independent creation applies where a defendant can prove that he or she created the allegedly infringing work without copying or adapting or preparing derivative works from the original to which he or she had access.

13

     Defendants bear the burden of proof on the issue of independent creation.

14

15

16

17

     If you find that Mattel has shown the elements of infringement and defendants have not established independent creation by a preponderance of the evidence, then you must find for Mattel on its claim of copyright infringement.

18

19

20

21

22

23

24

25

26

27

28

33

**JURY INSTRUCTION NO. 30**

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll. A doll, which consists of different materials or includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe the drawing when the works are substantially similar in their appearance under the extrinsic and intrinsic tests. A three-dimensional work is not an independent creation merely because it includes or is a result of artistic or non-artistic work not included in the copyrighted work. Rather, the question is whether the three-dimensional work is substantially similar to the two-dimensional work as a whole using the extrinsic/intrinsic test described above.

Exhibit Q, p. 230

1

## JURY INSTRUCTION NO. 31

2

A copyright can be infringed by intermediate or preparatory works, including

3

4

works prepared in the product development or marketing stage, that are substantially

5

similar to a copyrighted work, regardless of whether the end product of the copying also

6

infringes the copyright.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35

**JURY INSTRUCTION NO. 32**

Mattel has presented evidence concerning certain copyright infringement lawsuits brought by MGA in Hong Kong pursuant to Hong Kong law.

The Court has excluded, and you may not consider, any reference to any legal arguments or legal conclusions associated with those lawsuits.

You may, however, consider any factual statements or factual representations that MGA made in those lawsuits.

It is for you to decide how much weight, if any, to give to those factual statements or factual representations.

36

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 138 of 167   Page ID
#:174475
Case 2:04-cv-09049-SGL-RNB     Document 4267     Filed 08/20/2008     Page 37 of 56

**JURY INSTRUCTION NO. 33**

If you find that MGA infringed Mattel's copyright in the Bratz works, you may

consider Mattel's claim that Isaac Larian vicariously infringed that copyright.  Mattel has

the burden of proving each of the following by a preponderance of the evidence:

      1.     Isaac Larian profited directly from the infringing activity of MGA;

      2.     Isaac Larian had the right and ability to supervise/control the infringing

activity of MGA; and

      3.     Isaac Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for

Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand,

Mattel has failed to prove any of these elements, your verdict should be for Isaac Larian

on Mattel's claim for copyright infringement, unless you find that Isaac Larian is liable

for contributory infringement under the instruction that follows.

37

Exhibit Q, p. 233

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 139 of 167   Page ID
#:174476
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 38 of 56

### JURY INSTRUCTION NO. 34

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, but that MGA Hong Kong and/or Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Isaac Larian contributorily infringed that copyright.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.    Isaac Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.    Isaac Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Isaac Larian, and also failed to prove direct or vicarious infringement by MGA Hong Kong and/or Isaac Larian, your verdict should be for those defendants.

Exhibit Q, p. 234

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 140 of 167   Page ID
#:174477
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 39 of 56

### JURY INSTRUCTION NO. 35

Mattel claims that defendants fraudulently concealed the facts underlying Mattel's claims of intentional interference with contract and conversion.  Defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence

(1)   the defendants took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel; and

(2)   Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel on its allegations of fraudulent concealment.  If not, you should find for defendants on the allegations of fraudulent concealment.

39

**JURY INSTRUCTION NO. 36**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

40

Exhibit Q, p. 236

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 142 of 167   Page ID
#:174479
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 41 of 56

**JURY INSTRUCTION NO. 37**

In Phase A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)   Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)   Punitive damages.

41

**JURY INSTRUCTION NO. 38**

In Phase A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits
        earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate, which is 7%, calculated from the
        date Mattel's claim arose;

(3)     Punitive damages.

42

**Exhibit Q, p. 238**

**JURY INSTRUCTION NO. 39**

Mattel is entitled to obtain disgorgement of profits as an element of its damages for the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found.  Accordingly, if you find that MGA and/or Isaac Larian obtained profits or advantages because of these specific wrongful acts, those profits and advantages should be awarded to Mattel.

43

Exhibit Q, p. 239

## JURY INSTRUCTION NO. 40

In Phase A of this trial, you found that Mattel had proved its claims for conversion of tangible property against MGA, Isaac Larian and MGA Hong Kong. You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called damages.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)   Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's property was converted;

(3)   Punitive damages.

Fair market value is measured as of the time the tangible item was converted. Fair market value is the highest price that a willing buyer would have paid to a willing seller assuming that there is no pressure on either one to buy or sell, and that the buyer and seller know all the uses and purposes for which the tangible items are reasonably capable of being used.

44

**JURY INSTRUCTION NO. 41**

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover any profits of the defendants attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.

45

Exhibit Q, p. 241

## JURY INSTRUCTION NO. 42

You may make an award of the defendants' profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue.

The defendants' profit is determined by deducting expenses from the defendants' gross revenue.

The defendants' gross revenue is all of the defendants' receipts from sale of a product containing or using the copyrighted work or associated with the infringement. Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Indirect profits are the defendants' profits with a less direct connection or link to the infringement. A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits. To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendants have the

46

1  burden of proving the portion of the profit, if any, attributable to factors other than

2  infringing the copyrighted work.

3      Defendants are not required to prove with precision the percentage of its profits

4  attributable to factors other than infringement, so long as the apportionment is reasonable

5
6  and just. However, in determining what portion of the defendants' profits are attributable

7  to copyright infringement, the benefit of the doubt should be given to Mattel and not

8  defendants.

9      If the copyrighted portions are so intermingled with the rest of the infringing

10  work that they cannot well be distinguished from it, the entire profits realized by the

11
12  defendants are to be given to the plaintiff. At the same time, defendants do not need to

13  demonstrate that the profits not attributable to infringement are completely free of

14  infringing material.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit Q, p. 243

**JURY INSTRUCTION NO. 43**

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights.  An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

    1.    The defendants engaged in acts that infringed the copyright; and

    2.    The defendants knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when the copyright infringement is willful.

Exhibit Q, p. 244

Case 2:04-cv-09049-DOC-RNB    Document 5340-3    Filed 05/04/09    Page 150 of 167    Page ID
#:174427
Case 2:04-cv-09049-SGL-RNB    Document 4267    Filed 08/20/2008    Page 49 of 56

1

## JURY INSTRUCTION NO. 44

2          Mattel seeks damages under more than one legal claim or theory and as to three

3    defendants.  In awarding damages as to any particular claim or defendant, you should not

4    consider or discount your award based on amounts, if any, that you award as to any other

5    claim or defendant.  That is, you should award the full amount of damages you find

6    appropriate, if any, as to each separate claim against each defendant.  The Court will

7

8    ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative

9    damages.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit Q, p. 245

**JURY INSTRUCTION NO. 45**

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Isaac Larian only if Mattel proves by clear and convincing evidence that Isaac Larian engaged in that conduct with malice, oppression, or fraud.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove one of the following by clear and convincing evidence:

1.  That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong; or

2.  That an officer, a director, or a managing agent of MGA or MGA Hong Kong had advance knowledge of the unfitness of another officer, director, or managing

50

1  agent of MGA or MGA Hong Kong and employed that person with a knowing disregard

2  of the rights or safety of others; or

3       3.    That the conduct constituting malice, oppression, or fraud was authorized by

4  one or more officers, directors, or managing agents of MGA or MGA Hong Kong; or

5

6       4.    That one or more officers, directors, or managing agents of MGA or MGA

7  Hong Kong knew of the conduct constituting malice, oppression, or fraud and adopted or

8  approved that conduct after it had occurred.

9       "Malice" means that a defendant acted with intent to cause injury or that a

10  defendant's conduct was despicable and was done with a willful and knowing disregard of

11  the rights or safety of another.  A defendant acts with knowing disregard when the

12  defendant is aware of the probable dangerous consequences of his or its conduct and

13

14  deliberately fails to avoid those consequences.

15       "Oppression" means that a defendant's conduct was despicable and subjected

16  Mattel to cruel and unjust hardship in knowing disregard of its rights.

17       "Despicable conduct" is conduct that is so vile, base, or contemptible that it

18  would be looked down on and despised by reasonable people.

19

20       "Fraud" means that a defendant intentionally misrepresented or concealed a

21  material fact and did so intending to harm Mattel.

22       An employee is a "managing agent" if he or she exercises substantial independent

23  authority and judgment in his or her corporate decision making such that his or her

24  decisions ultimately determine corporate policy.

25

26       There is no fixed formula for determining the amount of punitive damages, and

27  you are not required to award any punitive damages.  If you decide to award punitive

28

51

1 │ damages, you should consider all of the following separately for each defendant in

2 │ determining the amount:

3 │      a.    How reprehensible was that defendant's conduct?

4 │
5 │      b.    Is there a reasonable relationship between the amount of punitive damages

6 │ and Mattel's harm or between the amount of punitive damages and potential harm to

7 │ Mattel that the defendant knew was likely to occur because of his or its conduct?

8 │ Punitive damages may not be used to punish a defendant for the impact of its alleged

9 │ misconduct on persons other than Mattel.

10 │
11 │      c.    In view of that defendant's financial condition, what amount is necessary to

12 │ punish him or it and discourage future wrongful conduct?  You may not increase the

13 │ punitive award above an amount that is otherwise appropriate merely because a defendant

14 │ has substantial financial resources.  Any award you impose may not exceed that

15 │ defendant's ability to pay.

52

# JURY INSTRUCTION NO. 46

You have heard testimony regarding the prospect of an injunction being issued in this case. It is for the Court to decide what, if any, injunctive relief to order.

53

**JURY INSTRUCTION NO. 47**

When you begin your deliberations, your foreperson will preside over the deliberations and will speak for you here in Court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Exhibit Q, p. 250

## JURY INSTRUCTION NO. 48

1

2          If it becomes necessary during your deliberations to communicate with me, you

3    may send a note through the bailiff, signed by your presiding juror or by one or more

4    members of the jury. No member of the jury should ever attempt to communicate with me

5
     except by a signed writing; I will communicate with any member of the jury on anything
6
7    concerning the case only in writing, or here in open court. If you send out a question, I

8    will consult with the parties before answering it, which may take some time. You may

9    continue your deliberations while waiting for the answer to any question. Remember that

10   you are not to tell anyone—including me—how the jury stands, numerically or otherwise,

11
     until after you have reached a unanimous verdict or have been discharged. Do not
12
13   disclose any vote count in any note to the court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit Q, p. 251

1

## JURY INSTRUCTION NO. 49

2       A verdict form has been prepared for you.  After you have reached unanimous

3 agreement on a verdict, your presiding juror will fill in the form that has been given to

4

5 you, sign and date it, and advise the court that you are ready to return to the courtroom.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

56

# EXHIBIT R

Case 2:04-cv-09049-DOC-RNB   Document 5340-3   Filed 05/04/09   Page 159 of 167   Page ID
#:174496
Case 2:04-cv-09049-SGL-RNB      Document 4279    Filed 08/26/2008    Page 1 of 9



1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT OF CALIFORNIA

10              EASTERN DIVISION

11

12  | MATTEL, INC.,                          | CASE NO. CV 04-9049 SGL (RNBx)

13  |           Plaintiff,                    | Consolidated with
                                               Case No. CV 04-09059 SGL (RNBx)
14  |      vs.                                | Case No. CV 05-02727 SGL (RNBx)

15  | MGA ENTERTAINMENT, INC., et al.,        | Honorable Stephen G. Larson

16  |           Defendant.                    | **PHASE B VERDICT FORM AS
                                               GIVEN**

17
    | AND CONSOLIDATED ACTIONS
18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/2608
584.2

Exhibit R, p. 253

# VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

## I.  Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.     In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $     20   MILLION

As to Mr. Larian:  $     10   MILLION

### Aiding and Abetting Breach of Fiduciary Duty

2.     In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $     20 MILLION

As to Mr. Larian:  $     10  MILLION

### Aiding and Abetting Breach of the Duty of Loyalty

3.     In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $     20  MILLION

As to Mr. Larian:  $     10  MILLION

07209/2609529.2608584

-2-

1                         **Conversion**

2       4.     In Phase A of this trial, you found that MGA, Isaac Larian and MGA

3 Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4 conversion.  What amount of damages, if any, should be awarded to Mattel?

5               As to MGA:          $ *31,500 PLUS 7% INTEREST*

6               As to Mr. Larian:    $ *0*   *CALCULATED FROM*

7               As to MGA Hong Kong: $ *0*   *THE DATE MATTEL'S*

8                                     *PROPERTY WAS*

9                                     *CONVERTED.*

-3-

PHASE B VERDICT FORM AS GIVEN

Exhibit R, p. 255

1          **II.  Copyright Infringement**

2          5.      Has Mattel proven by a preponderance of the evidence that MGA is

3  liable to Mattel for copyright infringement?

4                  Yes        _X_

5                  No         ____

6      If your answer is "yes," then answer Question 6.

7      If your answer is "no," then answer Question 7.

8

9          6.      Was MGA's copyright infringement willful?

10                 Yes        ____

11                 No         _X_

12     Answer Question 7.

13

14         7.      Has Mattel proven by a preponderance of the evidence that Isaac Larian

15  is liable to Mattel for copyright infringement?

16                 Yes        _X_

17                 No         ____

18     If your answer is "yes," then answer Question 8.

19     If your answer is "no," then answer Question 9.

20

21         8.      Was Mr. Larian's copyright infringement willful?

22                 Yes        ____

23                 No         _X_

24     Answer Question 9.

25

26         9.      Has Mattel proven by a preponderance of the evidence that MGA Hong

27  Kong is liable to Mattel for copyright infringement?

28                 Yes        _X_

PHASE B VERDICT FORM AS GIVEN

**Exhibit R, p. 256**

1         No   ____

2   If your answer is "yes," then answer Question 10.

3   If your answer is "no," then answer Question 11.

4

5     10.   Was MGA Hong Kong's copyright infringement willful?

6         Yes   ____

7         No   _X_

8   Answer Question 11.

9

10     11.   What amount of damages, if any, should be awarded to Mattel for the

11   defendants' copyright infringement?

12     (a)   Copyright Infringement by MGA

13         $ _6 Million_

14     (b)   Copyright Infringement by Isaac Larian

15         Distributions Mr. Larian received from MGA attributable to Bratz-

16         related works:

17         $ _3 Million_

18         Value of Mr. Larian's ownership percentage of MGA attributable to

19         Bratz-related works:

20         $ _0_

21     (c)   Copyright Infringement by MGA Hong Kong:

22         $ _1 Million_

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

Exhibit R, p. 257

### III.   Punitive Damages

    12.    Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

        Yes  _____

        No   _X_

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

    13.    What amount of punitive damages, if any, should be awarded against MGA?

        $_____ ⊘ _____

Answer Question 14.

    14.    Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

        Yes  _____

        No   _X_

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

    15.    What amount of punitive damages, if any, should be awarded against Mr. Larian?

        $_____ ⊘ _____

Answer Question 16.

    16.    Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

        Yes  _____

PHASE B VERDICT FORM AS GIVEN

Exhibit R, p. 258

1        No    X

2        If your answer is "yes," then answer Question 17.

3        If your answer is "no," then answer Question 18.

4

5        17.    What amount of punitive damages, if any, should be awarded against

6  MGA Hong Kong?

7        $_____0_____

8        Answer Question 18.

PHASE B VERDICT FORM AS GIVEN

Exhibit R, p. 259

1        **IV.  Fraudulent Concealment**

2        (Answer all five questions in this section.)

3

4        18.    Has Mattel proven by a preponderance of the evidence that MGA

5    fraudulently concealed the bases for Mattel's claim of intentional interference with

6    contract against it until at least April 27, 2002?

7                    Yes    $\cancel{X}$

8                    No    _____

9

10        19.    Has Mattel proven by a preponderance of the evidence that Isaac Larian

11    fraudulently concealed the bases for Mattel's claim of intentional interference with

12    contract against him until at least April 27, 2002?

13                    Yes    _____

14                    No    $\cancel{X}$

15

16        20.    Has Mattel proven by a preponderance of the evidence that MGA

17    fraudulently concealed the bases for Mattel's claim of conversion against it until at

18    least April 27, 2001?

19                    Yes    $\cancel{X}$

20                    No    _____

21

22        21.    Has Mattel proven by a preponderance of the evidence that Mr. Larian

23    fraudulently concealed the bases for Mattel's claim of conversion against him until

24    at least April 27, 2001?

25                    Yes    _____

26                    No    $\cancel{X}$

27

28

07209/2609529.2608584.2

-8-

1      22.    Has Mattel proven by a preponderance of the evidence that MGA Hong

2   Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3   until at least April 27, 2001?

4         Yes   _____

5         No   _X_

6

7      Once this verdict form is completed, the foreperson of the jury should sign

8   and date on the lines below.

9

10   DATED: _August 26, 2008_

                     /s/

11                         Jury Foreperson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

Exhibit R, p. 261