1  PATRICIA L. GLASER (Bar No. 055668)
   pglaser@glaserweil.com
2  GLASER WEIL FINK JACOBS & SHAPIRO
   10250 Constellation Blvd., 19th Floor
3  Los Angeles, California 90067
   Telephone: (310) 553-3000
4  Facsimile: (310) 557-9815

5  RUSSELL J. FRACKMAN (Bar No. 49087)
   rjf@msk.com
6  PATRICIA H. BENSON (Bar No. 60565)
   phb@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
8  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
9  Facsimile: (310) 312-3100

10 Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER**<br>[To Be Heard By Discovery Master Robert O'Brien Pursuant To Order Of January 6, 2009] |
| Defendant. | |
| AND CONSOLIDATED CASES | **DECLARATION OF DANIEL M. HAYES IN SUPPORT OF THE MGA PARTIES' MOTION TO DE-DESIGNATE DOCUMENTS**<br>[MOTION TO DE-DESIGNATE AND DECLARATION OF ALFREDO ORTEGA FILED CONCURRENTLY] |
| | Time: TBD<br>Date: TBD<br>Place: TBD<br>Phase 2<br>Discovery Cut-Off: December 11, 2009<br>Pre-Trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

Mitchell
Silberberg &
Knupp LLP

2223178.2

DECLARATION OF DANIEL M. HAYES

## DECLARATION OF DANIEL M. HAYES

I, DANIEL M. HAYES, the undersigned, declare:

1. I am an attorney at law duly licensed to practice in the State of California. I am an associate with Mitchell Silberberg & Knupp LLP ("MSK"), counsel of record for the MGA Parties (collectively, "MGA"), in the action entitled *Bryant v. Mattel, Inc.*, Case No. CV 04-9049 SGL (RNBx) and the actions consolidated therewith. I know all of the facts stated in this declaration of my own personal knowledge, and if called as a witness in this action, I could and would competently testify thereto.

2. Attached hereto as Exhibit 1 is a true copy of the January 4, 2005 protective order entered in this case (the "Protective Order").

3. Attached hereto as Exhibit 2 is a true copy of Phase 2 Discovery Matter Order No. 6, filed on March 13, 2009.

4. Attached hereto as Exhibit 3 is a true copy of pages 18, 19, and 20 of the April 13, 2009 supplemental privilege log produced by Mattel.

5. Attached hereto as Ex. 4 is a true copy of a letter dated April 22, 2009, that I sent on that date to Jon D. Corey of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"), counsel of record for Mattel.

6. Attached hereto as Exhibit 5 is a true copy of a letter dated April 23, 2009, that I received from Diane C. Hutnyan of Quinn Emanuel in response to my April 22, 2009 letter to Mr. Corey.

7. Attached hereto as Exhibit 6 is a true copy of a letter dated April 23, 2009, that I sent a letter to Ms. Hutnyan after receiving her letter dated April 23, 2009.

8. Attached hereto as Exhibit 7 is a true copy of a letter dated April 27, 2009 from Ms. Hutnyan, that I received on April 27, 2009 at 1:32 p.m.

9. Because Ms. Hutnyan's April 27, 2009 letter, Exhibit 7, indicated that she would not be ready to meet and confer on April 27, 2009, I did not call Ms. Hutnyan at 4:00 p.m. as we previously agreed.

10. At 4:10 p.m. on April 27, 2009, I received a voicemail from Ms. Hutnyan. In her voicemail, Ms. Hutnyan stated "I haven't heard from you, which I take to mean that you agree with me that it would be better to take the additional time and be able to discuss everything more fully in a couple of days. But, I wanted to touch base with you and find out if the time that I had proposed was appropriate with your schedule, and if not, schedule a different time."

11. Attached hereto as Exhibit 8 is a true copy of a letter dated April 27, 2009, that I sent to Ms. Hutnyan on that date, after receiving her voicemail message.

12. Attached hereto as Exhibit 9 is a true copy of a letter from Ms. Hutnyan dated April 28, 2009, which I received at 12:11 p.m. on that date.

13. Attached hereto as Exhibit 10 is a true copy of a "chain" of certain e-mails between Ms. Hutnyan and me on April 28, 2009. I did not receive a response to my 2:16 p.m. email to Ms. Hutnyan nor to the request I had made therein.

14. On April 29, 2009, I had a telephone conversation with Ms. Hutnyan regarding Mattel's designation of documents bearing production nos. M 0920565 through M 00926800. Mr. Corey of Quinn Emanuel, and Alfredo Ortega, my colleague, also participated.

15. I began the call by suggesting that the most efficient way to proceed was, as I had stated in my meet and confer correspondence to Ms. Hutnyan before the call, for Ms. Hutnyan and/or Mr. Corey to identify which documents that they really felt deserved "Attorneys' Eyes Only" designation, and that we could discuss those. Mr. Corey and Ms. Hutnyan both refused to make any such identification, and stated that I should identify which documents I thought did *not* deserve

1  "Attorneys' Eyes Only" protection. I stated that I had done so in my letters to
2  them, that the MGA Parties' believed that all of the documents Mattel had
3  produced on April 13, 2009 were indiscriminately and improperly labeled
4  "Attorneys' Eyes Only," and that such designation was impeding our ability to
5  prepare our case since we could not share the documents with our client.

6       16. Mr. Corey took the position that, under Mexican law, court records
7  are not public, and therefore deserve "Attorneys' Eyes Only" protection under the
8  Protective Order. In response to a question from me, both Mr. Corey and Ms.
9  Hutnyan acknowledged that, as a category, Mexican court records did not fit the
10 definition of "Attorneys' Eyes Only" under the terms of the Protective Order. I
11 noted that Ms. Hutnyan had quoted the standard for "Attorneys' Eyes Only"
12 designation in a recent motion to de-designate that she had filed, namely, "[t]he
13 designation of information as 'CONFIDENTIAL – ATTORNEYS' EYES ONLY'
14 shall be limited to trade secrets or other confidential commercial information...."
15 Mr. Corey asked if I would stipulate to extend the application of the "Attorneys'
16 Eyes Only" designation to court records from Mexican judicial proceedings. I
17 stated that I would not so stipulate, but would confirm with my colleagues and the
18 client that this was MGA's position. I subsequently did so.

19      17. During the April 29, 2009 conversation, I asked Mr. Corey and Ms.
20 Hutnyan whether they thought that any of the court records from Mexican judicial
21 proceedings were "trade secrets or other confidential commercial information" that
22 warranted an "Attorneys' Eyes Only" designation under the terms of the Protective
23 Order. Mr. Corey stated that there were "thousands" that warranted such
24 protection. I asked them both to identify one such document, by Bates No. They
25 both refused. I stated that my colleague, Mr. Ortega, could help translate the
26 documents. Mr. Corey and Ms. Hutnyan both still refused to identify even a single
27 document that they felt warranted an "Attorneys' Eyes Only" designation under the
28 terms of the protective order. I asked them to identify a document they felt

4
DECLARATION OF DANIEL M. HAYES

warranted "Attorneys' Eyes Only" protection several times over the course of our call. Each time they refused.

18. Ms. Hutnyan stated that the way it would "play out" if we filed a motion to de-designate the documents would be that we would file a motion, and Mattel, in opposition, would search through the documents and find ones that deserved an "Attorneys' Eyes Only" designation. I asked Mr. Corey and Ms. Hutnyan whether they were thus acknowledging that some of the documents that they had designated "Attorneys' Eyes Only" were not in fact properly designated. I did not receive a coherent response.

19. Both Ms. Hutnyan and Mr. Corey acknowledged that, on a motion to de-designate documents designated "Attorneys' Eyes Only," the designating party bears the burden to justify the "Attorneys' Eyes Only" designation.

20. I asked Mr. Corey whether it was correct to say that under his view, a party should be entitled to designate every document it produced "Attorneys' Eyes Only" and thus shift the burden to the receiving party to ferret out which documents might actually be worthy of such designation. Mr. Corey never gave me a direct answer to my question. Mr. Corey then stated that if I was taking the position that the parties have to strictly adhere to the terms of the Protective Order, MGA is very "vulnerable." I stated that I was not aware of any instance in which MGA simply stamped everything that it produced "Attorneys' Eyes Only." Mr. Corey stated that I needed to "do my homework" regarding what happened before. I stated that it sounded like this was retaliation, which is not appropriate.

21. I asked Mr. Corey to divorce himself from this case and explain what he would think if an opposing party produced 6,000 pages of documents, all marked "Attorneys' Eyes Only," including family pictures and blank pages. I said that I personally would assume that the producing party either had given absolutely no thought to the designations, or had made a decision to indiscriminately mark everything "Attorneys' Eyes Only." I did not receive a coherent response.

22. I invited Mr. Corey and Ms. Hutnyan to participate in another meet and confer call with me the next day, April 30, 2009. They both stated that they were unavailable. Ms. Hutnyan remarked that my request for a further meet and confer was a "nonsequitor" and asked if I would have a telephone call with her at midnight to discuss balloons. I do not know what that question had to do with the issue under discussion, or what it meant. I asked Mr. Corey and Ms. Hutnyan if anyone else in their office would be available for a call. I did not get an answer. I asked again whether Ms. Hutnyan or Mr. Corey would identify which documents, by Bates No., that they thought really warranted "Attorneys' Eyes Only" designation. Again, they both refused to do so.

23. Ms. Hutnyan commented that I had not properly initiated the meet and confer process with respect to the last documents identified in my April 27, 2009 letter in order to have a meet and confer conversation on April 29. She stated that she was entitled to "five court days" to prepare for the discussion with respect to those documents. I stated that the issue was the same with respect to all of the documents, they were indiscriminately marked "Attorneys' Eyes Only." I stated that I had identified the documents by Bates No. that we contend were improperly marked "Attorneys' Eyes Only."

24. On May 1, 2009, I sent a letter to Mr. Corey and Ms. Hutnyan confirming our April 29, 2009 telephone conversation. Attached hereto as Exhibit 11 is a true copy of my May 1, 2009 letter to Mr. Corey and Ms. Hutnyan.

25. Attached hereto as Exhibit 12 are true copies of the cover page and pages 12 and 13 of the Court's April 27, 2009 minute order, docket no. 5273.

26. I spent at least four hours preparing and responding to meet and confer letters, participating in the April 29, 2009 telephonic meet and confer call, and reviewing the documents produced by Mattel and marked "Attorneys' Eyes Only." I have spent at least an additional ten hours preparing and revising the motion to declassify and supporting papers. My billing rate is $340 per hour.

Therefore, the total amount of attorneys' fees and costs incurred in connection with this motion will be at least $4760.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2009 at Los Angeles, California.

_____
Daniel M. Hayes