# EXHIBIT 1

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 1

# TO THE DECLARATION OF

# DANIEL M. HAYES



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

FILED
CLERK, U.S. DISTRICT COURT

JAN – 4 2005

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, | CASE NO. CV 04-9059 NM (RNBx) |
| Plaintiff, | STIPULATED PROTECTIVE ORDER; AND |
| v. | [PROPOSED] ORDER |
| CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | [Discovery Matter] |
| Defendants. | |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| Counter-Claimant, | |
| v. | |
| MATTEL, INC., a Delaware Corporation, | |
| Counter-Defendant. | |

DOCKETED ON CM

JAN – 5 2005

BY ___

07272/625581.2

E 1/4/05

PROTECTIVE ORD

EXHIBIT: 1
PAGE: 8

54

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)    Personnel files and other private or confidential employment, contractor or vendor information;

-2-

EXHIBIT: 1
PAGE: 9

PROTECTIVE ORDER

1    (2)    The specific terms of agreements with, and information received
2 from, third parties that a Party is required to disclose only under conditions of
3 confidentiality;
4    (3)    Personal or private financial information, and confidential
5 financial data that is not known generally to the trade or to competitors, including
6 financial data relating to specific sales, cost and profit information for specific
7 products and product lines; and
8    (4)  Business plans and product information that are not known
9 generally to the trade or to competitors, including non-public information relating to
10 product development and design.
11
12    WHEREFORE, believing that good cause exists, the Parties HEREBY
13 STIPULATE that, subject to the Court's approval, the following procedures shall be
14 followed in this Action to facilitate the orderly and efficient discovery of relevant
15 information while minimizing the potential for unauthorized disclosure or use of
16 confidential or proprietary information:
17
18            <u>SCOPE OF THIS ORDER</u>
19
20    1.    This Protective Order shall apply to trade secret, confidential and
21 proprietary information, documents and things that are produced or disclosed in any
22 form during the course of the Action by any Party or any nonparty:
23            (a)    through discovery;
24            (b)    in any pleading, document or other writing; or
25            (c)    in testimony given at a deposition.
26 (The foregoing information, documents and things shall be referred to hereinafter
27 collectively as "Litigation Materials.")
28

**EXHIBIT: 1**
**PAGE: 10**

07272/625581.2                          -3-

PROTECTIVE ORDER

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.      Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.  The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.    Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.      A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

          (a)     Documents or Things.     "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

PROTECTIVE ORDER

EXHIBIT: 1
PAGE: 11

1   obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --

2   ATTORNEYS' EYES ONLY" on the particular document or thing.

3           (b)    Interrogatory Answers and Responses to Requests for

4   Admissions. In answering any interrogatory or request for admission, or any

5   part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or

6   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the

7   legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

8   ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

9   EYES ONLY" answers shall be made on separate pages from any other

10   answers or portions thereof that are not designated as "CONFIDENTIAL" or

11   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12          (c)    Deposition Testimony.   Any Party or nonparty giving

13   deposition testimony in this Action may obtain "CONFIDENTIAL" or

14   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by

15   designating, during the course of that testimony, for which "CONFIDENTIAL"

16   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,

17   the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL

18   -- ATTORNEYS' EYES ONLY,"  or alternatively by designating the entire

19   testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

20   EYES ONLY," subject to a good faith obligation to identify any non-

21   confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"

22   portions in the event that the entire testimony is designated "CONFIDENTIAL

23   -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after

24   receipt of the transcript of the testimony.   The reporter shall separately

25   transcribe and bind the testimony so designated as "CONFIDENTIAL" and

26   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face

27   of the separate bound transcript containing such testimony with the term

28   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

07272/625581.2

-5-

PROTECTIVE ORDER

EXHIBIT: 1
PAGE: 12

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given. Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

07272/625581.2

-6-

1  accordance with the terms of this Protective Order. In addition, the provisions
2  of Paragraph 3(e) for later designating transcripts or exhibits shall apply after
3  the expiration of the fourteen (14) calendar day period described in this
4  Paragraph 3(c).

5          (d)   Typing or stamping the legend "CONFIDENTIAL" or
6  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a
7  collection of Litigation Materials which are bound together shall have the
8  effect of designating such collection in its entirety as "CONFIDENTIAL" or
9  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks,
10 tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling,
11 stamping or marking the outside of such disk, tape, CD-ROM, DVD or other
12 medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL
13 -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire
14 contents of such disk, tape, CD-ROM, DVD or other medium or device, and
15 all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL --
16 ATTORNEYS' EYES ONLY," as the case may be.

17         (e)   Except as otherwise provided in Paragraph 3(c) of this
18 Protective Order, the receiving Party shall not reveal any information produced
19 for a period of seven (7) calendar days following receipt. Failure to designate
20 a document, thing or other information as CONFIDENTIAL" or
21 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this
22 Protective Order shall not preclude any Party or nonparty desiring to so
23 designate the document, thing or information from so designating thereafter;
24 provided that the Party or nonparty proceeds promptly after discovery of any
25 omission of marking, in good faith marks the document, thing or other
26 information and requests, in writing, that each receiving Party so mark and
27 treat the document, thing or other information in accordance with this
28 Protective Order. Thereafter, the document, thing or other information shall

07272/625581.2

-7-

1    be fully subject to this Protective Order. No Party shall incur liability for any
2    disclosures made prior to notice of such designation, except to the extent that
3    any such disclosures occurred prior to the seven (7) day period described above
4    or prior to such other time periods as are provided by this Protective Order,
5    including without limitation such time periods as are provided in Paragraph
6    3(c) above.

7

8    RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

9

10        4.    Any Litigation Materials produced or disclosed in this Action,
11  whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL --
12  ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such
13  information for purposes of litigation and not for any other purpose, including
14  without limitation for any business or trade purpose. As used herein, the term
15  "litigation" shall mean preparation for, participation in and prosecution and defense
16  of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in
17  connection with any mediation or other alternative dispute resolution procedure that
18  this or any other court may order or that the Parties may agree to.

19        5.    Subject to Paragraph 7 herein, and unless as otherwise ordered by
20  the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be
21  disclosed to any person other than:

22            (a)    the attorneys for the Parties and their partners, shareholders,
23    associates, document clerks and paralegals who are necessary to assist such
24    attorneys;

25            (b)    secretaries, stenographers and other office or clerical
26    personnel employed by said attorneys and who are necessary to assist such
27    attorneys;

28

PROTECTIVE ORDER

EXHIBIT: 1
PAGE: 15

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

**EXHIBIT: 1**
**PAGE: 16**

07272/625581.2

-9-

PROTECTIVE ORDER

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)     such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

EXHIBIT: 1
PAGE: 17

07272/625581.2

-10-

PROTECTIVE ORDER

1              (g)    professional court reporters engaged to transcribe

2    deposition testimony, professional videographers engaged to videotape

3    deposition testimony and translators.

4           7.    None of the following is bound by or obligated under this Order

5    in any respect and specifically are not bound or obligated to treat information

6    designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7    ONLY" in any particular manner: The Court hearing this Action (including the Court

8    having jurisdiction of any appeal), Court personnel, court reporters working for the

9    Court, translators working for the Court, or any jury impaneled in this Action.

10          8.    Other than those identified in Paragraph 7 above, each person to

11    whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12    ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13    Protective Order and agree to be bound by it before disclosure to such persons of any

14    such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15    not have access to either "CONFIDENTIAL" or    "CONFIDENTIAL --

16    ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17    certified that they have read this Protective Order and have manifested their assent

18    to be bound thereby by signing a copy of the Assurance of Compliance attached

19    hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20    it shall not be necessary for that person to sign a separate Assurance of Compliance

21    each time that person is subsequently given access to confidential material.  Any

22    person who signed an Assurance of Compliance in connection with the Stipulation

23    for Protection of Confidential Information and Protective Order filed September 16,

24    2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County

25    Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26    shall, by virtue of his or her prior signature, be deemed to have signed the attached

27    Assurance of Compliance.

28

**EXHIBIT: 1**
**PAGE: 18**

PROTECTIVE ORDER

9.     The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

EXHIBIT: 1
PAGE: 19

PROTECTIVE ORDER

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertently disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the Federal Rules of Civil Procedure and the Local Rules. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## FILING AND USE IN COURT OF DESIGNATED MATERIALS

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in Local Rule 79-5.1, as such

PROTECTIVE ORDER
EXHIBIT: 1
PAGE: 20

1  Rule may be amended from time to time. Prior to the time that a Party receiving the
2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
3  information from any other Party files with the Court an application and the other
4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to
5  time, to seal the producing Party's confidential information, the receiving Party shall
6  consult with the producing Party's attorney to determine whether the producing Party
7  will re-designate the previously designated confidential information so as to avoid the
8  need for the request to file such information under the seal. Upon the default of a
9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any
11 Party may subsequently seek the approval of the Court to file that document under
12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule
13 may be amended from time to time.

## THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

17         16.    If any Party or nonparty receives a subpoena or document request
18 from a third party which purports to require the production of materials in that Party's
19 possession which have previously been designated as "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,
21 the Party or nonparty receiving such subpoena or document request (a) shall object
22 and refuse to produce documents absent a Court Order or the consent of the Party or
23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL
24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who
25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --
26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,
27 and (c) shall not oppose any effort by the Party or nonparty which designated the
28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

07272/625581.2

-14-

PROTECTIVE ORDER
EXHIBIT: 1
PAGE: 21

1  ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2  material.

3

4                          DISCOVERY FROM NONPARTIES

5

6          17.    Discovery of nonparties may involve receipt of information,

7  documents, things or testimony which include or contain "CONFIDENTIAL" or

8  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A

9  nonparty producing such material in this case may designate as "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11  produces in the same manner provided for in this Protective Order with respect to

12  material furnished by or on behalf of the Parties.  Any Party may also designate as

13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17  nonparty has also so designated.  In addition, a nonparty may also designate as

18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19  materials or information produced by a Party that constitute "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22  producing Party has also so designated.  In either such an event, the designation

23  providing for the greater level of protection for the material information shall control,

24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated

25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26  nonparty or Party shall be governed by the terms of this Protective Order.

27

28

                                                        EXHIBIT: 1
                                                        PAGE: 22

07272/625581.2
                                     -15-

## CONCLUSION OF LITIGATION

18.   Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.   The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

EXHIBIT: 1
PAGE: 23

07272/625581.2

-16-

PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4    **IT IS SO STIPULATED.**

5

6  DATED: December 22, 2004        QUINN EMANUEL URQUHART
                                    OLIVER & HEDGES, LLP
7

8                                  By _Jon Corey_
9                                     Jon Corey
                                      Attorneys for Plaintiff
10                                    Mattel, Inc.

11  DATED: December ___, 2004       LITTLER MENDELSON

12

13                                 By_____
                                      Douglas A. Wickham
14                                    Attorneys for Defendant
                                      Carter Bryant
15

16  DATED: December ___, 2004       O'MELVENY & MEYERS, LLP

17

18                                 By_____
                                      Diana M. Torres
19                                    Attorneys for Interventor-Defendant
                                      MGA Entertainment, Inc.

20

21    **IT IS SO ORDERED.**

22

23  DATED: ___1|4|05___

24                                  THE HONORABLE ROBERT N. BLOCK
                                    United States Magistrate Judge
25

26

27

28                                          **EXHIBIT: 1**
                                            **PAGE: 24**

07272/625581.2                              -17-
                                            PROTECTIVE ORDER

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4       **IT IS SO STIPULATED.**

5

6   DATED: December ___, 2004          QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES, LLP
7

8                                      By _____

9                                         Jon Corey
                                          Attorneys for Plaintiff
10                                        Mattel, Inc.

11  DATED: December 2_, 2004           LITTLER MENDELSON

12

13                                     By _____
                                          Douglas A. Wickham
14                                        Attorneys for Defendant
                                          Carter Bryant
15

16  DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17

18                                     By _____
                                          Diana M. Torres
19                                        Attorneys for Intervenor-Defendant
                                          MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23

24  DATED: _____             THE HONORABLE ROBERT N. BLOCK
                                   United States Magistrate Judge
25

26

27

28

07272/625581.2                    -17-
                                                          PROTECTIVE ORDER

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4        IT IS SO STIPULATED.

5

6   DATED: December ___, 2004          QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES, LLP
7

8                                      By
9                                         Jon Corey
                                          Attorneys for Plaintiff
10                                         Mattel, Inc.

11  DATED: December ___, 2004          LITTLER MENDELSON
12

13                                     By
                                          Douglas A. Wickham
14                                         Attorneys for Defendant
                                          Carter Bryant
15

16  DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17

18                                     By
                                          Diana M. Torres
19                                         Attorneys for Intervenor-Defendant
                                          MGA Entertainment, Inc.

20

21        IT IS SO ORDERED.

22

23  DATED: _____

24                                     THE HONORABLE ROBERT N. BLOCK
                                       United States Magistrate Judge
25

26

27

28

07272/625581.2                         -17-

                                                          PROTECTIVE ORDER

EXHIBIT: 1
PAGE: 26

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant*, Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

07272/625581.2

**EXHIBIT: 1**
**PAGE: 27**

PROTECTIVE ORDER

# PROOF OF SERVICE
1015A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA**       )
**COUNTY OF LOS ANGELES**   )

I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on  all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name

Signature

**EXHIBIT: 1**
**PAGE: 28**

1
2   Robert F. Millman, Esq.
    Douglas A. Wickham, Esq.
3   Keith A. Jacoby, Esq.
    Littler Mendelson
4   A Professional Corporation
    2049 Century Park East, 5th Floor
5   Los Angeles, California 90067-3107
    Phone: 310-553-0308
    Fax: 310-553-5583

6   Diana M. Torres, Esq.
    O'Melveny & Meyers
7   400 S. Hope Street
    Los Angeles, CA 90071
8   Phone: 213-430-6000
    Fax: 213-430-6407

9
10  Daniel J. Warren, Esq.
    Sutherland, Asbill & Brennan
11  999 Peachtree Street NE
    Atlanta, GA 30309-3996
12  Phone: 404-853-8698
    Fax: 404-853-8806

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                        -2-

                                EXHIBIT: 1
                                PAGE: 29

# EXHIBIT 2

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 2

# TO THE DECLARATION OF

# DANIEL M. HAYES

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
obrien.robert@arentfox.com

Discovery Master

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. | Case No.  CV 04-09049 SGL (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-2727 <br><br> **PHASE 2 DISCOVERY MATTER** <br><br> **ORDER NO. 6, REGARDING:** <br><br> **(1)  MOTION OF MATTEL, INC. TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO ITS FIRST AND THIRD SETS OF REQUESTS FOR PRODUCTION; and** <br><br> **(2)  MOTION OF MGA TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE DOCUMENT REQUEST NOS. 526 AND 528** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

**EXHIBIT: 2**
**PAGE: 30**

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

## I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664."  (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel."  (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 2
PAGE: 31**

### B.    Phase 1 Ruling

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88.  Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues."  (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery."  (*Id.*, pp.7 - 8).

### C.    Objections of MGA Entertainment

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents.  First, MGA Entertainment argues that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the requests are overbroad.  Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

#### 1.    Purported Failure To Meet And Confer

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer.  (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1.  (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)  MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-2-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 32

1    divided into phases and where the order denying the motion expressly noted that

2    nothing in the ruling was intended to "preclude Mattel from seeking further

3    production of documents in response" to the requests as part of Phase 2 discovery.[1]

4    (Order Apr. 14, 2008, pp. 7 - 8).

5         Even assuming such a requirement did exist, Mattel in fact met and conferred

6    with MGA Entertainment for a second time following the filing of its current

7    motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8    pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9    to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10    could have been accomplished by an additional meet and confer on these issues

11    prior to the filing of the motion. Regardless, Mattel met and conferred once before

12    filing its current motion to compel and that is all that is required by the Federal

13    Rules of Civil Procedure and the discovery procedures governing this case.

14         **2.    Overbreadth Objection**

15         MGA Entertainment's second argument in opposition to Mattel's Motion is

16    that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17    Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18    are improper because they are not tied "to any product(s) that Mattel alleged that

19    MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20    authority in support of this position, MGA Entertainment asserts that the current

21    Discovery Master should find that the requests are overbroad because the prior

22    discovery master merely compelled it to produce portions of personnel and vendor

23    files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24    Apr.14, 2008, pp. 7 - 8).  But MGA Entertainment's argument fails to recognize

25    //

26

27    [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"

28    since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9), and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 2
PAGE: 33**

1  the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2  　　　The touchstone for determining whether a particular discovery request is

3  reasonably calculated to lead to the discovery of admissible evidence in this case is

4  whether the request bears some relation to the issues to be tried in Phase 2.

5  Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6  Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7  not linked to a single discrete product or even multiple products.  Instead, the issues

8  to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9  Entertainment stole "a vast array of trade secrets and other confidential information

10  that comprise Mattel's intellectual infrastructure," including, among other things,

11  stealing "Mattel's proprietary business methods, practices and information."

12  (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13  its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14  　　　• "engaged in a pattern of stealing and using [Mattel's] property and trade

15  　　　　secrets," (*Id.*,　¶ 1);

16  　　　• "repeated—and even expanded—its pattern of theft [regarding the Bratz

17  　　　　dolls] on numerous occasions," including by hiring away three key Mattel

18  　　　　employees in Mexico who "stole virtually every category of Mattel's

19  　　　　sensitive and trade secret business plans and information for the Mexican

20  　　　　market as well as a significant quantity of sensitive and trade secrete

21  　　　　information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22  　　　• "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23  　　　　advertising and strategy, not only for Canada, but the United States and the

24  　　　　rest of the world," (*Id.*, ¶ 70);

25  //

26  　　　　　　　　　　　　　　　　　　　　**EXHIBIT: 2**
　　　　　　　　　　　　　　　　　　　　**PAGE: 34**

27  [2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it
would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
28  Mattel gave notice to the employees and obtained their consent for such disclosure."  (MGA Opposition, pp. 8 – 9).

1    • "took from Mattel documents containing proprietary advertising, project,

2       sales, customer and strategy information for not only Canada, but for the

3       United States," (*Id.*, ¶ 4);

4    • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5       employees to steal Mattel's confidential information or other property and

6       take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7    • stole "Mattel's plans, strategy and business information for the Mexican

8       market and materials related to Mattel's worldwide business strategies," (*Id.*,

9       ¶ 37);

10   • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11      planning materials, and then hired them to assist in establishing and running

12      MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13   • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14      and proprietary information that they could access and bring it with them to

15      MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16      would need to enter the Mexican market, and to unlawfully compete with

17      Mattel in Mexico, in the United States and elsewhere," such as "global

18      internal future line lists that detailed anticipated future products; production

19      and shipping costs for Mattel products, daily sales data for Mattel products;

20      customer data; sales estimates and projections; marketing projections;

21      documents analyzing changes in sales performance from 2003 to 2004;

22      budgets for advertising and promotional expenses; strategic research

23      reflecting consumer responses to products in development; media plans;

24      consumer comments regarding existing Mattel products customer discounts

25      and terms of sale; customer inventory level data; assessments of promotional

26      campaign success; market size historical data and projections; marketing

27      plans and strategies, merchandising plans; retail pricing and marketing

28      strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 35

- "targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA [Entertainment] and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets," including by "promising these employees salaries 25 percent or more higher than they earn at Mattel and stating to them that they should not be concerned by legal action taken by Mattel to protect its trade secrets and its rights because such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

- "hired directly from Mattel's United States operations at least 25 employees, from Senior Vice-President level to lower level employees," and that some of these individuals misappropriated "Mattel confidential and proprietary information, including Mattel's strategic plans; business operations; methods and systems; marketing and advertising strategies and plans; future product lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

In light of the foregoing allegations, the documents requested by Mattel fall within the purview of permissible discovery allowed by Federal Rule of Civil Procedure 26. Rule 26 permits the discovery of information that is "relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's request for "all personnel and vendor files" of individuals who either (1) work at MGA Entertainment and previously used to work for Mattel or (2) who are vendors of MGA Entertainment and used to work with or had contact with Mattel appears to be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

### 3.   Privacy Rights Objection

MGA Entertainment's final argument is that the records sought by Mattel (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot be produced under *California law* unless the individuals affected are given advance notice of the requests and afforded an opportunity to object to the production. (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

Arent Fox LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 36

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5       As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10  2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11  personnel files and stating "[a]ny other privacy concerns defendant may have

12  should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13  *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14  protect an employee's privacy interest in his personnel file is to obtain, either by

15  stipulation or motion, a properly crafted protective order under Rule 26(c)");

16  *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17  30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18  protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19  *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20  employees' privacy interests, documents shall be produced pursuant to an

21  attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22  *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23  production of employee information, pursuant to a protective order, despite privacy

24  claims under California law).

25       Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26  ─────────────────────
    [3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
27  information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.
    Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
28  useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
    and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 37

1  held that "personnel files are discoverable in federal question cases . . . despite

2  claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3  1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4  Cir. 1975)), and this includes any claim of privilege resulting from California Code

5  of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6  Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7  Procedure § 1985.3 do not apply in federal question cases because "federal law

8  applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9  privacy concerns raised by MGA Entertainment have no applicability here.

10       Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master finds that the requested documents

12  should exclude "health care specific information," because Mattel's counsel

13  conceded that Mattel is not seeking such information in its discussions with counsel

14  for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15  Mattel restated this position at the hearing.

16       The Discovery Master further orders MGA Entertainment to redact any

17  social security numbers, tax identification numbers, dates of birth, indication of

18  sexual orientation, bank account numbers, and checking account numbers that may

19  be included within the requested documents prior to production, as Mattel has not

20  made a showing at this time that such discrete personal information is reasonably

21  calculated to lead to the discovery of admissible evidence.

22       **D.**    **Conclusion**

23       The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

25  [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26  and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question
   grounds, (Mattel Reply, p. 5).

27  [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the
28  privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

1  2 claims, and are not protected from disclosure on the grounds of third-party

2  privacy rights or any other ground cited by MGA Entertainment.

3  **III.   MATTEL'S REQUEST FOR SANCTIONS**

4  In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5  fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6  *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7  however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8  stage that could have been raised in the moving papers.[7] This rule is routinely

9  adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.*,

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski*,

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms*, 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox*, 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16  Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.   MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19  **REQUEST NOS. 526 AND 528**

20  In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

---

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 2**
**PAGE: 39**

## A.   The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528). The complete text of the Requests is as follows:

- **Request No 526**: All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**: All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

## B.   Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents. First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence. Second, Mattel argues that the documents are protected by the work product doctrine. Finally, Mattel argues that the documents are

EXHIBIT: 2
PAGE: 40

1    privileged.

2             **1.    Overbreadth Objection**

3             Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4    RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5    SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6    its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7    details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8    de Mexico and suggests that Mattel communicated with the authorities regarding

9    their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14   75).

15            Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement.*" (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21            Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28            Although the Requests on their face relate to Phase 2 issues, Mattel

**EXHIBIT: 2**
**PAGE: 41**

Case 2:04-cv-09049-DOC-RNB    Document 5359-2    Filed 05/06/09    Page 37 of 75    Page ID
#:174684
Case 2:04-cv-09049-SGL-RNB    Document 5018    Filed 03/13/2009    Page 13 of 20

1    nonetheless argues in its Opposition that Request No. 526 is overbroad because

2    Mattel's civil claims are wholly separate and independent from any criminal relief

3    it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4    MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point. The issue is not whether Mattel's

6    communications with law enforcement officials constitute the basis of Mattel's

7    claims. Rather, the issue is whether those communications are reasonably

8    calculated to lead to the discovery of admissible evidence regarding what Mattel

9    itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10   secret misappropriation. Mattel does not dispute that its subsequent

11   communications with law enforcement involve the same conduct that is the basis of

12   the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13   concurrently seeking relief through the criminal justice system and this civil action

14   based on the same documents allegedly stolen by MGA and confirmed that fact

15   during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16   judicial file in the criminal proceedings in Mexico" are among the "documents

17   *relating to Mattel's Counterclaims.*"] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19   disclose what Mattel told the investigating authorities about what information was

20   taken, the people who have knowledge of the thefts, and any supposed criminal

21   intent on the part of MGA or the former Mattel employees who supposedly took the

22   information. Given this admitted overlap in subject matter, the communications

23   between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25   plaintiff permitted discovery of materials provided to law enforcement authorities

26   concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 42

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10  criminal cases (which may or may not ever be filed). Put another way, the

11  information sought by MGA to defend the civil claims does not become

12  "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13  defense of possible criminal claims.

14          Lastly, Mattel argues that both Requests are overbroad because they are not

15  limited to misconduct expressly alleged in the SAAC but also seek "documents

16  'concerning . . . any other alleged taking of confidential MATTEL information by

17  MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18  SAAC includes a catch-all allegation stating that unidentified "additional

19  employees accessed, copied and took from Mattel confidential and proprietary

20  information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21  allegation was to preserve its right to allege and prove other acts of

22  misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23  Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24  should likewise be entitled to conduct discovery to identify those additional acts

25  and to determine what evidence Mattel may have to prove them.

26          **2.      Work Product Objection**

27          Next, Mattel argues that production of Mattel's communications with law

28  enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 43

1   agencies, would violate the attorney work-product doctrine by revealing counsel's

2   strategy and mental processes. (Mattel Opposition, p. 6).

3       To qualify for work-product protection under Federal Rule Civil Procedure

4   26, documents must meet two requirements: (1) they must be "prepared in

5   anticipation of litigation or for trial," and (2) they must be prepared "by or for

6   another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7   *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the

8   doctrine is applicable to a particular document, "the court must consider the

9   *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10  party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,

11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree

12  that the purpose of the work product doctrine is "to establish a zone of privacy for

13  *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,

14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15      Here, Mattel does not demonstrate any connection between its

16  communications with law enforcement officials, on the one hand, and its litigation

17  strategy in the present civil case, on the other hand. Rather, it appears that Mattel's

18  primary purpose in communicating with, and disclosing the disputed documents to,

19  various law enforcement officials was to instigate criminal prosecutions by

20  prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent

21  the selection of particular documents by Mattel's counsel reveals counsel's

22  impressions and mental processes, the window into counsel's thinking relates to

23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24  There is no showing that counsel's thinking regarding how best to achieve *that*

25  purpose would also reveal counsel's strategies and impressions in any matter

26  related to the current civil litigation. In short, Mattel has made an insufficient

27  showing that the communications and documents at issue constitute work product

28  in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1      Further, even if the work-product doctrine somehow applied to Mattel's

2  communications with law enforcement agencies, Mattel waived it, in at least two

3  ways. First, Mattel admits that it has already produced some of those

4  communications to MGA. (See Alger Decl., ¶ 16.)

5      Second, to the extent Mattel's communications with law enforcement

6  officials disclose its conclusions and theories to law enforcement officials, such a

7  disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8  is waived when material is "voluntarily disclosed such that it may become readily

9  accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of ...trial preparation.' Thus, disclosure in such a situation

14  results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary." *Id.*

21      Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based. Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 45

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5    ### 3.    Privilege Objections

6    Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11   That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16   However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24   Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

**EXHIBIT: 2**
**PAGE: 46**

1   *liability* under California tort law and federal anti-trust law, respectively – not that

2   such parties are immune from *discovery* in civil suits.

### a.    The Litigation Privilege

4        The California Supreme Court described the scope of the litigation privilege

5   in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6   According to Mattel, *Hagberg* stands for the proposition that a communication to

7   law enforcement officials about suspected criminal activity "enjoys an unqualified

8   privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9   addresses the issue presented here, namely whether communications and documents

10   passed from the reporting party to the law enforcement agency is discoverable in

11   litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12   in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13   statements made when a citizen contacts law enforcement personnel to report

14   suspected criminal activity…." 32 Cal. 4th at 355 (emphasis added).  The Court

15   answered that question in the affirmative.  *Id.*

16        The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17   *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18   principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19   agencies... must be permitted to provide such information without fear of being

20   harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21   3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22   "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23   without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24   added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25   judgment against plaintiff's claims for slander and malicious prosecution based on

26   Section 47(b)).

### b.    The *Noerr-Pennington* Doctrine

28        "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 2**
**PAGE: 47**

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]).  In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities.  (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) .  In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

12              c.      **Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials.  If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits.  In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

20      **C.     Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity.  However, in that case (which

28  arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT: 2**
**PAGE: 48**

## V.     DISPOSITION

1.     The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.     Mattel's request for sanctions is **DENIED**.

3.     The MGA Motion is **GRANTED**.

4.     All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.     All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.     The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.     All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:          March 13, 2009

By:          /s/ Robert C. O'Brien
                    ROBERT C. O'BRIEN
                    Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT: 2
PAGE: 49

# EXHIBIT 3

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 3

# TO THE DECLARATION OF

# DANIEL M. HAYES

MATTEL V. CARTER BRYANT
AND CONSOLIDATED CASES

SUPPLEMENTAL PRIVILEGE LOG

April 13, 2009

| No. | Document Type | Date | From/Author | To/Recipient(s) | Description of Document and/or Redaction | Privilege[1] |
|---|---|---|---|---|---|---|
| 89. | Email | August 28, 2003 | O'Connor, Brian, Esq. | Clifford, Stephen, Esq. Fisher, Yvonne | Communication between legal counsel regarding provision of legal advice pertaining to advertising. | Attorney Client Privilege<br><br>Attorney Work Product |
| 90. | Advertising Review Form (Redacted)<br><br>M 0737483 | September 26, 2003 | Fisher, Yvonne | Haag, Debbie Zee, Jean Patel, Tina Leavitt, Margaret-Ann Weitekamp, Rosina Grove, Norma | Legal advice regarding advertising. | Attorney Client Privilege<br><br>Attorney Work Product |
| 91. | Advertising Review Form (Redacted)<br><br>M 0737484 | September 26, 2003 | Fisher, Yvonne | Haag, Debbie Zee, Jean Patel, Tina Leavitt, Margaret-Ann Weitekamp, Rosina Grove, Norma | Legal advice regarding advertising. | Attorney Client Privilege<br><br>Attorney Work Product |
| 92. | Email | November 2, 2003 | Rapp, Dawn | Fisher, Yvonne | Communication with counsel regarding legal advice for consumer research. | Attorney Client Privilege |
| 93. | Email | March 17, 2004 | Rosenbaum, Scott, Esq. | Bales, Betty, Esq. | Communication between counsel regarding licensing contract. | Attorney Client Privilege<br><br>Attorney Work Product |
| 94. | License Agreement (Redacted)<br><br>M 0151168-M 0151206 | April 1, 2004 | Mattel, Inc. (Licensor) | Springs Global US, Inc. (Licensee) | Royalty data and other proprietary information redacted. | Trade Secret |

EXHIBIT: 3
PAGE: 50

MATTEL V. CARTER BRYANT
AND CONSOLIDATED CASES

SUPPLEMENTAL PRIVILEGE LOG

April 13, 2009

| No. | Document Type | Date | From/Author | To/Recipient(s) | Description of Document and/or Redaction | Privilege[1] |
|---|---|---|---|---|---|---|
| 95. | License Agreement (Redacted)<br><br>M 0151246-M 0151284 | April 1, 2004 | Mattel, Inc. (Licensor) | Springs Global US, Inc. (Licensee) | Royalty data and other proprietary information redacted. | Trade Secret |
| 96. | License Agreement (Redacted)<br><br>M 0151342-M 0151380 | April 1, 2004 | Mattel, Inc. (Licensor) | Springs Global US, Inc. (Licensee) | Royalty data and other proprietary information redacted. | Trade Secret |
| 97. | License Agreement (Redacted)<br><br>M 0151503-M 0151542 | April 1, 2004 | Mattel, Inc. (Licensor) | Springs Global US, Inc. (Licensee) | Royalty data and other proprietary information redacted. | Trade Secret |
| 98. | License Agreement (Redacted)<br><br>M 0151544-M 0151582 | April 1, 2004 | Mattel, Inc. (Licensor) | Springs Global US, Inc. (Licensee) | Royalty data and other proprietary information redacted. | Trade Secret |
| 99. | License Agreement (Redacted)<br><br>M 0151583-M 0151622 | April 1, 2004 | Mattel, Inc. (Licensor) | Springs Global US, Inc. (Licensee) | Royalty data and other proprietary information redacted. | Trade Secret |

EXHIBIT: 3
PAGE: 51

MATTEL V. CARTER BRYANT
AND CONSOLIDATED CASES

SUPPLEMENTAL PRIVILEGE LOG

April 13, 2009

| No. | Document Type | Date | From/Author | To/Recipient(s) | Description of Document and/or Redaction | Privilege[1] |
|---|---|---|---|---|---|---|
| 100. | Email | April 7, 2004 | Hammons, Kathleen | Rosenbaum, Scott, Esq. Janicek, Aaron<br><br>cc: DeRosa, Christina<br>Levenson, Lesley<br>Armistead, Brad | Communication with counsel to obtain legal advice regarding licensing contract.<br><br>Includes royalty rate information. | Attorney Client Privilege<br><br>Trade Secret |
| 101. | Email with Handwritten Notes | April 7, 2004 | Hammons, Kathleen | Rosenbaum, Scott, Esq. Janicek, Aaron<br><br>cc: DeRosa, Christina<br>Levenson, Lesley<br>Armistead, Brad | Communication with counsel to obtain legal advice regarding licensing contract. | Attorney Client Privilege |
| 102. | Facsimile with Attachment (Redacted)<br><br>M 0151146-M 0151165 | April 19, 2004 | Siegel, Nancie | Hammons, Kitti | Royalty data and other proprietary information redacted. | Trade Secret |
| 103. | Letter of Intent (Redacted)<br><br>M 0151322-M 0151341 | April 19, 2004 | DeRosa, Christina | Siegel, Nancie | Royalty data and other proprietary information redacted. | Trade Secret |
| 104. | Memorandum | September 20, 2004 | De Anda, Richard | Thomas, Jill, Esq. | Communication with legal counsel regarding results of assignment, initiated pursuant to instructions from legal counsel. | Attorney Client Privilege<br><br>Attorney Work Product |

# EXHIBIT 4

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 4

# TO THE DECLARATION OF

# DANIEL M. HAYES



MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 22, 2009

VIA E-MAIL AND U.S. MAIL

Jon D. Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   **Bryant v. Mattel, Inc. – Bates Nos. M0920565 through M0922993**

Dear Mr. Corey,

We have reviewed the documents produced by Mattel, Inc. as Bates Nos. M0920565 through M0922993, which appear to consist entirely of records from judicial proceedings in Mexico, including pleadings submitted by counsel for Messrs. Vargas, Machado, and Ms. Trueba. All of the documents have been designated "Attorneys' Eyes Only."

Under the terms of the protective order, "[t]he designation of information as 'CONFIDENTIAL – ATTORNEYS' EYES ONLY' shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure." Given that there is no basis for designating these *court records* as "Attorneys' Eyes Only," the designation appears to have been made in bad faith.

Please either inform us in writing that the "Attorneys' Eyes Only" designation is withdrawn as to these documents, or meet and confer with us regarding the designation no later than April 29, 2009. In the event you neither withdraw designation or meet and confer before April 29, we will file a motion to have the designation removed and seek sanctions.

**EXHIBIT: 4**
**PAGE: 53**

11377 West Olympic Boulevard, Los Angeles, California  90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

MITCHELL SILBERBERG & KNUPP LLP

Jon D. Corey
April 22, 2009
Page 2

We are continuing to review the recent production and will notify you if there are any other improper designations.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb

**EXHIBIT: 4**
**PAGE: 54**

2210113.1/39416-00002

# EXHIBIT 5

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 5

# TO THE DECLARATION OF

# DANIEL M. HAYES

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 23, 2009

<u>VIA FACSIMILE AND E-MAIL</u>

Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683

Re:     <u>Mattel v. MGA Entertainment, Inc., et al.</u>

Dear Daniel:

Thank you for your April 21, 2009 letter to Jon Corey regarding the designation of documents
Mattel produced as M0920565 through M0922993 as "Attorneys' Eyes Only."

I am available to meet and confer with you about this on Monday, April 27 to see if a resolution
to this issue can be reached.  Would 4:00 p.m. work for you?

Sincerely,

Diane C. Hutnyan

cc:  Jason Russell, Esq.
     Amman Khan, Esq.

**EXHIBIT: 5**
**PAGE: 55**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

# EXHIBIT 6

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 6

# TO THE DECLARATION OF

# DANIEL M. HAYES

MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS&K**

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 23, 2009

VIA E-MAIL AND U.S. MAIL

Diane C. Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California  90017

Re:     **Bryant v. Mattel, Inc.**

Dear Ms. Hutnyan,

We have continued our review of the documents recently produced by Mattel, Inc., and have now reviewed the documents produced as Bates Nos. M 0922994 through M 0923654. As with Bates Nos. M 0920565 through M 0922993, these document appear to consist of more court records from judicial proceedings in Mexico, and they all have been designated "Attorney's Eyes Only." As already stated in my letter yesterday to your colleague, Jon Corey, there is no basis for this indiscriminate designation, and it appears to have been made in bad faith. In this set, you even marked emails to and from MGA Entertainment, Inc. employees "Attorneys' Eyes Only," documents which by no stretch of the imagination warrant attorney's eyes only protection.

I received your letter indicating your availability on Monday, April 27 at 4:00 p.m. to meet and confer regarding Mattel's improper designation of Bates Nos. M 0920565 through M 0922993 as "Attorneys' Eyes Only." I am available at that time. It would be efficient if we could also discuss Bates Nos. M 0922994 through M 0923654 as well. Please confirm you will be prepared to do so on Monday.

I hope we can resolve these issues without motion practice, but, as I stated in my letter yesterday to Mr. Corey, if you do not withdraw the designation, we will file a motion to have it removed and seek sanctions.

**EXHIBIT: 6**
**PAGE: 56**

2211678.1/39416-00002

11377 West Olympic Boulevard, Los Angeles, California  90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

MITCHELL SILBERBERG & KNUPP LLP

Diane C. Hutnyan
April 23, 2009
Page 2

At the risk of being repetitive, I renew my invitation to you to simply withdraw the improper designation now, given its obvious impropriety.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb

**EXHIBIT: 6**
**PAGE: 57**

# EXHIBIT 7

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 7

# TO THE DECLARATION OF

# DANIEL M. HAYES

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 27, 2009

<u>VIA FACSIMILE AND E-MAIL</u>

Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683

Re:     <u>Mattel v. MGA Entertainment, Inc., et al.</u>

Dear Mr. Hayes:

I am in receipt of your April 23 letter raising an issue as to Mattel's designation of Bates-numbered documents M0922994 through M0923654. We agree that it makes sense to discuss this issue, and the issue raised in your April 22 letter as to Bates-numbered documents M0920565 through M0922993, at the same time. However, we need some more time to prepare for a meaningful meet-and-confer discussion on all the documents and suggest delaying that discussion by a couple of days to allow us to do that. Are you available on Wednesday afternoon, April 29, for such a call? That is, as you acknowledged in your letters, within the time period accorded us for meeting and conferring as to all the issues you raised. Please let me know at your earliest convenience.

Sincerely,

Diane C. Hutnyan

cc:  Amman Khan, Esq.

**EXHIBIT: 7**
**PAGE: 58**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

# EXHIBIT 8

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 8

# TO THE DECLARATION OF

# DANIEL M. HAYES

MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS



Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 27, 2009

VIA E-MAIL AND U.S. MAIL

Diane C. Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

Re:     **Bryant v. Mattel, Inc.**

Dear Ms. Hutnyan,

I received your letter today requesting that we continue our meet and confer conversation until Wednesday afternoon, April 29. We will do so only if you are prepared to tell us exactly what documents you feel warrant "Attorney's Eyes Only" designation, if any, and why. We have continued our review of the documents that Mattel, Inc. recently produced, and do not believe any of the documents labeled Bates Nos. M 0920565 through M 00926800 warrant "Attorney's Eyes Only" designation.

I am available at 4:00 p.m. on April 29, please confirm that works for you and that you will be prepared to identify those specific documents you believe warrant "Attorney's Eyes Only" designation.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb
cc:     Amman Khan (via email only)

**EXHIBIT: 8**
**PAGE: 59**

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

# EXHIBIT 9

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 9

# TO THE DECLARATION OF

# DANIEL M. HAYES

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 28, 2009

<u>VIA FACSIMILE AND E-MAIL</u>

Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683

Re:     <u>Mattel v. MGA Entertainment, Inc., et al.</u>

Dear Mr. Hayes,

Since you did not make yourself available for our meet and confer conversation that was scheduled for 4:00 yesterday, your letter came a bit late to "agree" to my request to reschedule the call, much less attempt to impose conditions on that "agreement." However, I will make myself available again at 4:00 p.m. on Wednesday, the 29th, to discuss the issues you raised in your letters of April 22 and 23.

The Stipulation for Order Appointing a Discovery Master does not contemplate the preview of our position that you demand. But it does require that you adequately identify the dispute in your meet and confer letter. Your letter of yesterday fails to identify the basis for your position as to M0923655 - M0926800 and merely demands re-designation. This is improper. Please identify the basis for your position as to every category of document you believe is improperly designated so that I can understand your position and prepare to respond to it. When you have done that, I am happy to schedule a meet-and-confer call.

**EXHIBIT: 9**
**PAGE: 60**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Mr. Daniel M. Hayes
April 28, 2009

Sincerely,

Diane C. Hutnyan

cc:    Amman Khan, Esq.
       Jason Russell, Esq.

**EXHIBIT: 9**
**PAGE: 61**

2

# EXHIBIT 10

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 10

# TO THE DECLARATION OF

# DANIEL M. HAYES

## Hayes, Daniel

| | |
|---|---|
| **From:** | Hayes, Daniel |
| **Sent:** | Tuesday, April 28, 2009 2:16 PM |
| **To:** | 'Diane Hutnyan' |
| **Cc:** | 'jason.russell@skadden.com'; 'akhan@glaserweil.com' |
| **Subject:** | RE: MGA/Mattel Correspondence |

Your voicemail simply confirmed that you wished to reschedule our meet and confer call.  It was clear that you were not ready to discuss the issues.

In any event, you still have not addressed the important request in my email and letters.  Will you send me a list, by Bates No., of exactly which documents you really feel deserve "Attorneys' Eyes Only" designation before our call so that we can have a productive meet and confer tomorrow.  Alternatively, will you be able to identify exactly which documents you think really deserve an "Attorneys' Eyes Only" designation on our call.

The issue in both my April 22 and April 23 letters is your client's indiscriminate labeling of documents "Attorneys Eyes Only."

---

**From:** Diane Hutnyan [mailto:dianehutnyan@quinnemanuel.com]
**Sent:** Tuesday, April 28, 2009 1:58 PM
**To:** Hayes, Daniel
**Cc:** 'jason.russell@skadden.com'; 'akhan@glaserweil.com'
**Subject:** Re: MGA/Mattel Correspondence

I agree we should maintain a clear and accurate record. What happened is that I sent a letter asking to reschedule hours before the call. You neither responded nor called me at 4:00. Shortly after 4:00, I called you to see if we were having a call or not and/or get an answer to my letter. You were not there, nor did you return my voicemail. An hour later I received your overdue response letter. So while I had asked you to reschedule, I was available for the call but you were not.

As for the balance of your email, I am accorded a week's time under the Order to prepare, I have been traveling and am traveling again today, and will be ready to discuss the pertinent issues raised in your April 22 and 23 letters at that time. Please note that I actually have an additional day due me to prepare for the issues in your April 23 letter but have agreed to address those issues with the earlier-raised issues at your request.

Diane Cafferata Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Direct: (213) 443-3666
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail: dianehutnyan@quinnemanuel.com
Web: www.quinnemanuel.com

**EXHIBIT: 10**
**PAGE: 62**

Linked In: http://www.linkedin.com/in/dianehutnyan

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please

5/5/2009

notify us immediately by e-mail, and delete the original message.

---

**From:** Hayes, Daniel
**To:** Andrea Hoeven
**Cc:** jason.russell@skadden.com ; akhan@glaserweil.com ; Diane Hutnyan
**Sent:** Tue Apr 28 13:01:47 2009
**Subject:** RE: MGA/Mattel Correspondence

Diane,

We should maintain a clear and accurate record.  On April 23, you agreed to meet and confer with me at 4:00 p.m. yesterday, April 27, regarding your clients' "Attorney's Eyes Only" designation of recently produced documents.  At 1:32 p.m. yesterday, you sent me a letter by email stating that you needed to reschedule that meet and confer conference to Wednesday, April 29, in order "to prepare for a meaningful meet-and-confer discussion."  Therefore, it was you who were unavailable yesterday, not me.

You will have had seven days since my initial April 22 letter to have reconsidered your position regarding your clients' indiscriminate designation of documents as "Attorneys' Eyes Only."  As you know, you have gone so far as to assign that designation to such categories as court records, email correspondence to and from MGA employees, and apparent family photographs, only to name a few.  I expect that you will be prepared to identify exactly what documents you think really deserve such designation.  That is how to promote a meaningful and good faith meet and confer conference tomorrow.  Even better would be for you to identify such documents, by Bates No., in writing, before our call.

Please confirm you will be ready to identify the documents you feel really deserve "Attorneys' Eyes Only" designation.

Dan

---

**From:** Andrea Hoeven [mailto:andreahoeven@quinnemanuel.com]
**Sent:** Tuesday, April 28, 2009 12:11 PM
**To:** Hayes, Daniel
**Cc:** jason.russell@skadden.com; Glaser Weil Fink Jacobs & Shapiro LLP (akhan@glaserweil.com); Diane Hutnyan
**Subject:** MGA/Mattel Correspondence

Counsel:

Please see attached correspondence, also being sent by facsimile transmission.

**Andrea Hoeven**
Assistant to Diane Hutnyan, Bridget Hauler and Crystal Nix-Hines
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct Phone: (213) 443-3316
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
Email:  AndreaHoeven@quinnemanuel.com
Web:  www.quinnemanuel.com

**EXHIBIT: 10**
**PAGE: 63**

---

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and

5/5/2009

confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**EXHIBIT: 10**
**PAGE: 64**

5/5/2009

# EXHIBIT 11

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 11

# TO THE DECLARATION OF

# DANIEL M. HAYES

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS&K**

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

May 1, 2009

VIA E-MAIL AND U.S. MAIL

Jon D. Corey
Diane C. Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street 10th Floor
Los Angeles, California 90017

Re:   <u>Bryant v. Mattel, Inc. (Phase 2)</u>

Dear Mr. Corey and Ms. Hutnyan,

I write to confirm our telephone conversation on Wednesday afternoon, April 29, regarding
Mattel, Inc.'s recent designation of documents produced in response to MGA Entertainment,
Inc.'s document request nos. 526 and 528.

As you know, Mattel, Inc. designated almost an entire production of approximately 6,000 pages
of documents "Attorneys' Eyes Only," including, but not limited to, court records from judicial
proceedings in Mexico, correspondence to and from MGA employees, and even apparent family
photographs and blank pages. I began by suggesting that the most efficient way to proceed with
our meet and confer was, as I had stated in my correspondence to Ms. Hutyan before the call, for
you to identify which documents that you really felt deserved "Attorneys' Eyes Only"
designation, and that we could discuss those. You both refused and stated that I should identify
which documents I thought did not deserve "Attorneys' Eyes Only" protection. I stated that I
had done so in my letters to you, that all of the documents were indiscriminately and improperly
labeled "Attorneys' Eyes Only," and that such designation was impeding our ability to prepare
our case since we could not share the documents with our client.

Mr. Corey took the position that, under Mexican law, court records are not public, and therefore
deserve "Attorneys' Eyes Only" protection under our protective order. You both acknowledged
that, Mexican court records, as a category, did not fit the definition of "Attorneys' Eyes Only"
under the terms of our protective order. I noted that Ms. Hutnyan had quoted the standard for
"Attorneys' Eyes Only" designation in a recent motion to de-designate that she had filed,
namely, "[t]he designation of information as "CONFIDENTIAL – ATTORNEYS' EYES
ONLY" shall be limited to trade secrets or other confidential commercial information…"

Mr. Corey asked if I would stipulate to extend the application of the "Attorneys' Eyes Only"
designation to court records from Mexican judicial proceedings. I stated that I would not

11377 West Olympic Boulevard, Los Angeles, California  90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

**EXHIBIT: 11**
**PAGE: 65**

MITCHELL SILBERBERG & KNUPP LLP

Jon D. Corey
Diane C. Hutnyan
May 1, 2009
Page 2

stipulate, and would confirm that position with my colleagues and the client. I have confirmed that we are not willing to stipulate to extend the application of the "Attorneys' Eyes Only" designation to Mexican court records.

I asked you if you thought that any of the court records from Mexican judicial proceedings were "trade secrets or other confidential commercial information" that warranted an "Attorneys' Eyes Only" designation under the terms of the protective order. Mr. Corey stated that there were "thousands" that warranted such protection. I asked you both to name one, by Bates No. You refused. I stated that my colleague, Alfredo Ortega, who I informed you was in my office during the call, could help translate the documents. You both steadfastly refused to identify even a single document that you felt warranted an "Attorneys' Eyes Only" designation under the terms of the protective order. In fact, I asked you this same question over and over during the call. Each time, you both refused.

Ms. Hutnyan stated that the way it would "play out" if we filed a motion to de-designate the documents that you had designated "Attorneys' Eyes Only" is that we would file a motion, and Mattel, in opposition, would search through the documents and find ones that deserved an "Attorneys' Eyes Only" designation. I asked you whether you were thus acknowledging that some of the documents that you had designated "Attorneys' Eyes Only" were not in fact properly designated. I did not receive a coherent response.

You both acknowledged that, on a motion to de-designate documents designated "Attorneys' Eyes Only," the designating party bears the burden to justify the "Attorneys' Eyes' Only" designation.

I asked Mr. Corey whether it was correct to say that under his view, a party should be entitled to designate every document they produce "Attorneys' Eyes Only" and thus shift the burden to the receiving party to ferret out which documents might actually be worthy of such designation. Mr. Corey never gave me a direct answer to my question. Mr. Corey then stated that if I take the position that the parties have to strictly adhere to the terms of the protective order, MGA is very "vulnerable" and implied that MGA abuses the "Attorneys' Eyes Only" designation procedure. I stated that I was not aware of any instance in which MGA simply stamped everything that they produced "Attorneys' Eyes Only." My Corey stated that I needed to "do my homework" regarding what happened before. I noted that it sounded like this was retaliation, which is not appropriate.

I asked Mr. Corey to divorce himself from this case and explain what he would think if an opposing party produced 6,000 pages of documents, all marked "Attorneys' Eyes Only," including family pictures and blank pages. I said that I would assume that the producing party gave absolutely no thought to the designations, or that they had made the decision to indiscriminately mark everything "Attorneys' Eyes Only."

I invited both of you to participate in another meet and confer call with me the next day, April 30, at 4:00 p.m. You both stated that you were unavailable. Ms. Hutnyan stated that my request for a further meet and confer was a "nonsequitor" and asked rhetorically if I would have a telephone call with her at midnight to discuss balloons, a question that I was and still am at a loss

2219484.1/39416-00002

**EXHIBIT: 11**
**PAGE: 66**

MITCHELL SILBERBERG & KNUPP LLP

to understand. I asked if anyone else in your office was available. You didn't give me an answer. I asked, again, whether you would identify which documents, by Bates No., that you thought really warranted "Attorneys' Eyes Only" designation. You refused, again.

Ms. Hutnyan commented that she felt we had not properly initiated the meet and confer process with respect to the last documents identified in my April 27 letter in order to have a meet and confer conversation on April 29. She stated that she was entitled to "five court days" to prepare for the discussion with respect to those documents. I stated that the issue was the same with respect to all of the documents, they were indiscriminately labeled "Attorneys' Eyes Only." I stated that I had identified the documents by Bates No. that we contend were improperly labeled "Attorneys' Eyes Only." We ended the call.

Please let me know if you feel this letter does not accurately reflect our telephone conversation.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb
cc:    Alfredo Ortega

# EXHIBIT 12

# TO THE DECLARATION OF

# DANIEL M. HAYES

# EXHIBIT 12

# TO THE DECLARATION OF

# DANIEL M. HAYES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                  Date: April 27, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

            Cindy Sasse                         None Present
            Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFFS:                            DEFENDANTS:

None Present                           None Present

PROCEEDINGS:   **ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498)**

               **ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)**

               **ORDER AMENDING IN PART ORDER RE FINDING OF LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200 (DOCKET #4441);**

               **ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION FOR REMITTITUR (DOCKET #4495, #4523)**

               **ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)**

               **ORDER FOR ACCOUNTING OF PROFITS OF BRATZ PRODUCTS**

               **ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED**

MINUTES FORM 90                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1

**EXHIBIT: 12**
**PAGE: 68**

Case 2:04-cv-09049-DOC-RNB   Document 5359-2   Filed 05/06/09   Page 74 of 75   Page ID
#:174721
Case 2:04-cv-09049-SGL-RNB      Document 5273       Filed 04/27/2009      Page 12 of 25

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

Initials of Deputy Clerk __cls_____

**EXHIBIT: 12**
**PAGE: 69**

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90
CIVIL -- GEN                                          13                    Initials of Deputy Clerk __cls_____

**EXHIBIT: 12**
**PAGE: 70**