QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert O'Brien]** |
| Defendant. | DECLARATION OF MARSHALL M. SEARCY III IN SUPPORT OF REPLY IN SUPPORT OF MATTEL, INC'S MOTION TO COMPEL PRODUCTION OF HARD DRIVES FROM COMPUTERS USED BY ISAAC LARIAN AFTER FEBRUARY 27, 2008, FOR SUPPLEMENTAL INSPECTION PURSUANT TO FED. R. CIV. P. 26 (E) |
| AND CONSOLIDATED ACTIONS | |
| **PUBLIC -- EXHIBITS 1, 2, 4, 6, 8 FILED UNDER SEAL** | |
| | Hearing Date: TBA Time: TBA Place: Arent Fox LLP |
| | **Phase 2** Discovery Cut-off: December 11, 2009 Pre-trial Conference: March 1, 2010 Trial Date: March 23, 2010 |

1    I, Marshall M. Searcy, III, declare as follows:

2        1.    I am a member of the bar of the State of California and a partner at

3    Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").

4    I make this declaration of personal, firsthand knowledge and, if called and sworn as a

5    witness, I could and would testify competently thereto.

6        2.    Attached as Exhibit 1 is a true and correct copy of excerpts of the

7    deposition of Samuel Rubin, dated July 3, 2008.

8        3.    Attached as Exhibit 2 is a true and correct copy of Mattel's Second

9    Amended Answer and Counterclaims, dated July 12, 2007.

10       4.    Attached as Exhibit 3 is a true and correct copy of the Order

11   Granting Mattel, Inc.'s Motion Objecting to Portions of Discovery Master's December

12   31, 2007 Order Regarding Hard Drives, dated February 27, 2008.

13       5.    Attached as Exhibit 4 is a true and correct copy of IGWT 14488-

14   89.

15       6.    Attached as Exhibit 5 is a true and correct copy of Phase 2

16   Discovery Matter Amended Order No. 11 Regarding: (1) Motion of Mattel, Inc. to

17   Compel Responses to Interrogatories and Production of Documents by MGA

18   Entertainment, Inc. and Isaac Larian; and (2) Motion of Mattel, Inc. to Compel the

19   Depositions of Pablo Vargas and Mariana Trueba.

20       7.    Attached as Exhibit 6 is a true and correct copy of the Preliminary

21   Examination Report, Larian Hard Drives & USB Drive, by Christopher Pavan, dated

22   June 24, 2008.

23       8.    Attached as Exhibit 7 is a true and correct copy of the Letter of

24   Agreement between Mattel and Isaac Larian, dated April 22, 2008.

25       9.    Attached as Exhibit 8 is a true and correct copy of Exhibit 3 to the

26   Report of Samuel Ruben, dated July 1, 2008.

27   ///

28   ///

1    I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3    Executed this 7th day of May 2009, at Los Angeles, California.

4

5                                    /s/ Marshall M. Searcy III

6                                    Marshall M. Searcy III

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2922586.1

# EXHIBIT 1

# EXHIBIT FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 2

# EXHIBIT FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 3

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
  Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8           UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10             EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual,<br><br>12       Plaintiff,<br><br>13    vs.<br><br>14 MATTEL, INC., a Delaware<br>corporation,<br>15<br>      Defendant.<br>16 | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>[~~PROPOSED~~] ORDER GRANTING<br>MATTEL, INC.'S MOTION OBJECTING<br>TO PORTIONS OF DISCOVERY<br>MASTER'S DECEMBER 31, 2007 ORDER<br>REGARDING HARD DRIVES |
| 17 AND CONSOLIDATED ACTIONS | **Phase 1**<br>Discovery Cut-Off:   January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:       May 27, 2008 |

07209/2414052.3

[PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE HARD DRIVES

EXHIBIT 2
PAGE 106

1

## [PROPOSED] ORDER

2

3          Having considered Mattel, Inc.'s Motion Objecting To Portions Of

4   Discovery Master's December 31, 2007 Order Regarding Hard Drives and all

5   supporting papers, all papers submitted in opposition to the Motion, and having

6   considered the arguments of counsel, the Court finds good cause to grant the Motion

7   and to overrule in part the Discovery Master's Order Granting in Part and Denying

8   in Part Mattel's Motion to Compel Production of Documents by Isaac Larian;

9   Denying Request for Sanctions, dated December 31, 2007, as to Request Nos. 222

10   and 225:

11          IT IS HEREBY ORDERED THAT the Discovery Master's Order is

12   overruled as to Request Nos. 222 and 225.  Destruction of electronic evidence on

13   hard drives is relevant to Mattel's claims, including specific predicate acts alleged in

14   Mattel's RICO counterclaims.  The Discovery Master's Order denying such evidence

15   to Mattel was clearly erroneous and contrary to law.

16          IT IS FURTHER ORDERED THAT Isaac Larian shall make available

17   within ten (10) calendar days the following hard drives that are in his possession,

18   custody, or control for inspection and copying:

19          1.      All hard drives from, or that were at any time connected to, any

20                  computer used by either Isaac Larian or Carter Bryant at any time from

21                  1999 to the present and that contain or previously contained any digital

22                  information referring or relating to Bratz, Angel, MGA or Bryant (as

23                  those terms are defined in Mattel's Requests).

24   A consultant of Mattel's choosing, who Mattel will identify before the inspection,

25   shall be allowed to inspect each of the hard drives produced.  Mattel's consultant

26   shall be allowed to make a forensically sound image of each hard drive produced.

27   The inspection may take place at a location of Larian's choosing in this District, so

28   long as the location has the minimum requirements necessary to inspect and create a

07209/2414052.3

-2-

EXHIBIT ___3___
PAGE ___101___

1  forensically sound image of the produced hard drives. A consultant of Larian's

2  choosing, who Larian will identify before the inspection, shall be allowed to observe

3  the inspection and imaging of the hard drives.

4      IT IS FURTHER ORDERED THAT Mattel's consultant shall have the

5  right to inspect any and all information on said hard drives to determine:

6      (a)  whether, when and by whom any information was deleted,

7  destroyed, written over, lost, exported, moved, spoliated or otherwise rendered

8  inaccessible or unreadable;

9      (b)  whether, when and by whom any attempts were made to delete,

10  destroy, write over, export, move, spoliate or otherwise render inaccessible or

11  unreadable any information on those hard drives;

12      (c)  the current or past presence or use of any hardware or software

13  tool to accomplish any of the actions identified above;

14      (d)  whether any information deleted, destroyed, written over, lost,

15  exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be

16  recovered; and

17      (e)  to recover any such information, in whole or in part.

18

19  DATED:    2/27    , 2008     _S.G. Larson_

20      Hon. Stephen G. Larson
    United States District Judge

21

22

23

24

25

26

27

28

# EXHIBIT 4

EXHIBIT FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 5

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                       Consolidated with
14              v.                     Case No. CV 04-09059
                                       Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                       **PHASE 2 DISCOVERY MATTER**
16
                Defendant.             **AMENDED[1] ORDER NO. 11,
17                                     REGARDING:**

18                                     **(1)  MOTION OF MATTEL, INC.
                                       TO COMPEL RESPONSES TO
19                                     INTERROGATORIES AND
                                       PRODUCTION OF DOCUMENTS
20                                     BY MGA ENTERTAINMENT, INC.
                                       AND ISAAC LARIAN; and**
21
                                       **(2)  MOTION OF MATTEL, INC.
22  CONSOLIDATED WITH                  TO COMPEL THE DEPOSITIONS
    MATTEL, INC. v. BRYANT and         OF PABLO VARGAS AND
23  MGA ENTERTAINMENT, INC. v.         MARIANA TRUEBA**
    MATTEL, INC.
24

25

26

27  ────────────────────
    [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28  requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
    days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                      AMENDED ORDER NO. 11
                                              [Case No. CV 04-09049 SGL (RNBx)]

                    **EXHIBIT** ___5___

                    **PAGE** ___111___

1      This Order sets forth the Discovery Master's ruling on two motions filed by

2  Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3  production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4  ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5  to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6  (the "Deposition Motion") (collectively, the "Motions").

7      The Motions came on regularly for hearing before the Discovery Master on

8  March 19, 2009.  All interested parties were represented by counsel and afforded

9  the opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

12  **I.**    **MATTEL'S WRITTEN DISCOVERY MOTION**

13      In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[2] and provide answers to 12

15  different interrogatories.  (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[3]  (*Id.*, pp. 41 – 43 and 49 – 102).

19      **A.**    **Document Requests**

20          **1.**    **Document Requests Propounded On MGA**

21      Document Request Nos. 4 through 37 seek financial information from MGA

22

23  [2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its
Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels

24  Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document
Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written

25  Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion
("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document

26  Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not
Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer

27  to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of
Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

28  [3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___112___

- 1 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    related to sales, revenues, costs, profits, customer returns, customer rebates and

2    customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3    sufficient to identify customers who purchased any Bratz Product from MGA or its

4    licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5        Document Request Nos. 43, 44 and 46 similarly seek financial information

6    from MGA related to the Bratz product line:

7        • Document Request No. 43 (erroneously numbered in Mattel's Separate

8          Statement as request number 42): "All sales, profit and cash flow

9          projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10         BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

11       • Document Request No. 44 (erroneously numbered in Mattel's Separate

12         Statement as request number 43): "All DOCUMENTS that REFER

13         OR RELATE TO the value of the Bratz brand." (Id.).

14       • Document Request No. 46 (erroneously numbered in Mattel's Separate

15         Statement as request number 45): "All DOCUMENTS that evidence,

16         reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17         fashion doll market, including, without limitation, the extent to which

18         Bratz has been or is gaining or losing market share in the fashion doll

19         market." (Id., p. 14).

20       Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23       • Document Request No. 40: "All DOCUMENTS that describe YOUR

---

[4] Mattel defines the term "Bratz Product" as follows:

> 'Bratz Product' means any product whether two-dimensional or three-dimensional, and whether in tangible, digital or electronic or other form:  (i) that is or has ever been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz' line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

(Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

EXHIBIT _____5_____

PAGE _____113_____

- 2 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    cost allocation procedures." (*Id.*, p. 13).

2    • Document Request No. 41: "YOUR general ledgers from January 1,

3      1995 through the present." (*Id.*).

4    • Document Request No. 45 (erroneously numbered in Mattel's Separate

5      Statement as request number 44): "DOCUMENTS sufficient to

6      calculate YOUR net worth on a yearly basis for each year from 1999

7      to the present." (*Id.*).

8         **2.    Document Requests Propounded On Larian**

9         The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13     each account with any bank or financial institution that YOU have or

14     have had, or that YOU have or have had any legal or beneficial interest

15     in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish

17     YOUR gross income, and the sources of that gross income, for the

18     years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate

20     YOUR net worth on a yearly basis for each year from 1999 to the

21     present." (*Id.*, p. 63).

22        **3.    Phase 1 Rulings**

23        This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue.  Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7).  The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___114___

- 3 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   the present dispute).  (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2          Because the prior discovery master compelled MGA to produce information

3   responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4   Larian to produce information responsive to Document Request Nos. 207, 208 and

5   269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6   Civil Procedure 26 to supplement their prior productions, and (2) that the

7   information the MGA Parties "are withholding is relevant to the damages Mattel

8   seeks," (Written Discovery Motion, pp. 8 – 9).

9              **4.      Objections Of MGA**

10         In their Opposition, the MGA Parties rely on two grounds for refusing to

11  supplement their prior document productions regarding Document Request Nos. 4 –

12  37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13  failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14  Parties argue that the requested information is not relevant to the claims and

15  defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16             **a.      Purported Failure To Meet And Confer**

17         Because it could dispose of the outstanding discovery issues related to the

18  document requests that are the subject of the present dispute, the Discovery Master

19  first addresses the MGA Parties' argument that Mattel failed to meet and confer

20  properly prior to filing its Written Discovery Motion.

21         The MGA Parties argue that Mattel's motion to compel should be denied

22  because Mattel failed to comply with the meet and confer requirements of Local

23  Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24  however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25  discovery disputes in this case.  The applicable meet and confer procedures are set

26  forth in the Court's order appointing a discovery master dated December 6, 2006

27  ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28  Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5 _____

PAGE _____ 115 _____

-4-

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    requires that, before filing a motion to compel, the moving party must meet and
2    confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3         Because Rule 37 and the Discovery Master Order govern the meet and confer
4    process in this case, the Discovery Master construes the MGA Parties' meet and
5    confer argument in light of the good faith requirement embedded in Rule 37.  The
6    MGA Parties claim that Mattel did not meet and confer in good faith because its
7    counsel sent them "a meet and confer letter inviting [them] to further meet and
8    confer on February 11, 2009" and then filed a motion to compel one "day before
9    the proposed meet and confer session" was scheduled to occur (i.e., on February 10,
10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2
11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to
12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).
13   However, the record available to the Discovery Master demonstrates that Mattel
14   made several prior attempts to meet and confer with the MGA Parties, including
15   engaging in the following:

16        • On January 6, 2009, Mattel's counsel sent a letter demanding that the
17          MGA Parties supplement their production concerning the document
18          requests by February 1, 2009, (Watson Decl., Ex. 17);

19        • Counsel for the MGA Parties never responded to Mattel's January 6,
20          2009 letter, (Written Discovery Motion, p. 6);

21        • Counsel for Mattel sent counsel for the MGA Parties a second copy of
22          the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23        • Counsel for Mattel and counsel for the MGA Parties then spoke on
24          February 6, 2009, and were supposed to discuss, among other things,
25          the document requests at issue, but counsel for the MGA Parties was
26          not prepared to discuss the requests at the appointed time, (Watson
27          Decl., ¶ 22); and

28        • Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____
PAGE _____116_____

- 5 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    9, 2009 to discuss the document requests but counsel for the MGA

2    Parties was still not prepared to discuss the issues, (*Id.*).

3    In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8    37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12              **b.    Relevance Of The Document Requests To Phase 2**

13   The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17              **(1)    Document Request Nos. 207, 208 And 269**

18   With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims. (Opposition, p. 6).

21   Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true.  For example, Document Request

24

---

25   [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the

26   requested information following the filing of the Written Discovery Motion. It is, therefore, unclear what could have been accomplished by an additional meet and confer on these issues. Moreover, Mattel's counsel stated at oral argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they

27   still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p. 68:7-9). Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery

28   procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____            - 6 -            AMENDED ORDER NO. 11
                                         [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____10_____

1    Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2    No. 269) and gross income (Request No. 208).  Such information relates to Phase 2

3    damages issues, including, among other things, damages sought against Larian in

4    connection with Mattel's unfair competition cause of action as well as the

5    calculation of Larian's net worth for purposes of litigating the propriety of any

6    "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166).  It is

7    therefore discoverable.

8          In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9    Mattel's employees for the express purpose of misappropriating Mattel's

10   confidential and proprietary information, and that the MGA Parties promised such

11   individuals increased salaries at MGA.  (See, e.g.,  SAAC, ¶¶ 69 and 77).  Mattel's

12   request for documents sufficient to identify Larian's bank accounts (i.e., Request

13   No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14   evidence regarding the source of any payments that may have been made by Larian

15   to former Mattel employees.[7]

16                    **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                                **46**

18          Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19   37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20   financial information "related to Bratz dolls, which was a Phase 1 issue,"

21   (Opposition, p. 5).  Specifically, the MGA parties argue that:

22                 [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

24   ───────────────
     [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he
25   concludes that Larian should not be required to provide updated information concerning his net worth and gross
     income every few months.  Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase
     2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question
26   deponents about the figures provided, and give the data to its experts.  Further, acquiring updated financial
     information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by
27   the verdict rendered in Phase 1 or recent economic conditions.

     [7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to
28   produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____                    -7-                    AMENDED ORDER NO. 11
                                                           [Case No. CV 04-09049 SGL (RNBx)]
PAGE ____18____

1            related financial information in order to establish its Phase

2            2 damages ignores the jury's Phase 1 damages award . . . .

3            Mattel sought disgorgement of all Bratz profits during

4            Phase 1 and the jury made its award.  Mattel may not

5            relitigate this issue in Phase 2.

6   (*Id.*, p. 6).

7       However, Document Request Nos. 40, 41 and 45[8] make no mention of

8 financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9 (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10 (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11 through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12 net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13 Therefore, MGA's argument does not apply to these document requests.

14       Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15 Separate Statement as request number 44) are further reasonably calculated to lead

16 to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17 the touchstone for determining whether a particular discovery request is reasonably

18 calculated to lead to the discovery of admissible evidence in this case is whether the

19 request bears some relation to the issues to be tried in Phase 2.  That standard is met

20 here, since MGA's general ledgers, net worth, and cost allocation procedures all

21 bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22 damages.

23       As for the remainder of the document requests directed to MGA (i.e.,

24 Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

25

---

[8] Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26 [9] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27 [10] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28 [11] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____18_____

- 8 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6        As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10       Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11  Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12  Separate Statement as request number 43), and 46 (erroneously numbered in

13  Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14  claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15  action, misappropriation of trade secrets claim, and unfair competition cause of

16  action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17  fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18  proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19  163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20  has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21  act[s] or practice[s]" in violation of California Business and Professions Code

22  section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23  misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24  arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25       Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

---

27  [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (*See*

28  Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___          - 9 -          AMENDED ORDER NO. 11
                                        [Case No. CV 04-09049 SGL (RNBx)]
PAGE ___119___

Case 2:04-cv-09049-DOC-RNB   Document 5370-2   Filed 05/07/09   Page 25 of 66   Page ID
#:174896
Case 2:04-cv-09049-SGL-RNB      Document 5093      Filed 03/31/2009      Page 11 of 41

1    Enterprise." (SAAC, ¶¶ 89 and 100).  The SAAC further expressly alleges that one

2    of the purported racketeering activities was the "altering [of] numerous original

3    Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)).  These allegations are

4    sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5    calculated to lead to the discovery of admissible evidence in Phase 2.

6         The Discovery Master cannot predict whether the Court will ultimately

7    construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8    misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9    presenting any evidence that it has been damaged by such misconduct at the Phase

10   2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11   Given that the discovery here need only appear reasonably calculated to lead to the

12   discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13   Master finds that the aforementioned document requests are sufficiently related to

14   Mattel's Phase 2 claims to be discoverable at this time.

15              **5.    Conclusion**

16        For all of the foregoing reasons, Mattel's motion to compel responses to

17   Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18   Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19        **B.    Interrogatories Propounded On MGA And Larian**

20        The second part of Mattel's Written Discovery Motion addresses various

21   interrogatories propounded on the MGA Parties.

22              **1.    Interrogatory No. 45 Propounded On MGA**

23   Interrogatory No. 45 asks MGA[13] to:

24              IDENTIFY each BRATZ PRODUCT that has been

25              SOLD by [MGA] or [its] licensees and, for each such

26

27   _____

     [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
28   Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
     INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____                    - 10 -              AMENDED ORDER NO. 11
                                                      [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____120_____

1  BRATZ PRODUCT, state . . . (a) the number of units of
2  each such BRATZ PRODUCT SOLD by [MGA] or [its]
3  licensees, (b) the gross and net revenue received by
4  [MGA] from such SALES of each such BRATZ
5  PRODUCT, (c) all costs [MGA] incurred in connection
6  with each such BRATZ PRODUCT, including but not
7  limited to [MGA's] costs of goods sold, and (d) [MGA's]
8  gross and net profits from each such BRATZ PRODUCT.

9  (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*
10 Written Discovery Motion, p. 9).

### a.    Phase 1 Rulings

12 As with the document requests discussed above, Mattel concedes that "MGA
13 identified and produced documents responsive to [Interrogatory No. 45] in
14 December 2007, and later supplemented th[at] production mid-trial . . ." (Written
15 Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to
16 supplement its response" without justification. (*Id.*)

### b.    Objections Of MGA

18 In its Opposition, MGA argues that it does not have to provide the
19 information requested by Interrogatory No. 45 for two reasons. First, it claims that,
20 like the document requests propounded on MGA, "Mattel's entitlement to gross and
21 net profits from sales of Bratz products was an issue adjudicated in Phase 1, and
22 Mattel fails to explain how this discovery is relevant to or proper in Phase 2."
23 (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually
24 identical to the documents sought by Document Request Nos. 21 (requesting
25 "DOCUMENTS sufficient to show the number of units of each BRATZ
26 PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS
27 sufficient to show the revenue received by [MGA] from the sale of each BRATZ
28 PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____121____

- 11 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above.  Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[14]

10        MGA also argues that it should not be required to provide the information

11   requested by Interrogatory No. 45 because it "has already provided information that

12   is current through the second fiscal quarter of 2008" and it would be unduly

13   burdensome to gather the documents necessary to update that information.

14   (Opposition, pp. 7 – 8).  MGA did not argue, however, in its Opposition that it

15   would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16   24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17   documents responsive to those requests and refer Mattel to those materials.  (*See*

18   Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19   examining . . . a party's business records . . . the responding party may answer by

20   specifying the records that must be reviewed . . ."]).

21        The MGA Parties' argument that it is overly burdensome to require MGA to

22   spend 320 hours to inform Mattel of the most recent sales figures concerning the

23   Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25   [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
     enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from

26   presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
     was previously litigated and resolved in Phase 1.  Nevertheless, in light of the fact that the discovery need only

27   appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
     Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable

28   at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____122_____

- 12 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    information requested and the wide-ranging extent of the discovery to date. As

2    explained above, the information sought is relevant to the constructive trust

3    imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4    claims. Also, while 320 hours may be unduly burdensome in certain

5    circumstances, it is not unreasonable on its face here given that the MGA Parties

6    have already produced more than 4 million documents.[15] (*See Cappacchione v.*

7    *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8    ["Requiring a responding party to perform extensive research or to compile

9    substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13                          **c.      Conclusion**

14        For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17        **2.      Interrogatory Nos. 56 – 63 Propounded On MGA And**

18             **Larian**

19        Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22        •   Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23             MGA has obtained, received, reviewed, copied, reproduced,

24             transmitted, requested, or used at any time since January 1, 1999, and

25             IDENTIFY all PERSONS with knowledge of such facts and all

26             DOCUMENTS that REFER OR RELATE TO such MATTEL

27   _____

28   [15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____123_____                           - 13 -                    AMENDED ORDER NO. 11
                                                                  [Case No. CV 04-09049 SGL (RNBx)]

1   DOCUMENTS." (Separate Statement in Support of Written

2   Discovery Motion, p. 49).

3   • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4   OR RELATE TO any MATTEL product or plan that any of the

5   FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6   to, shared with or used on behalf of MGA at any time since January 1,

7   1999, and IDENTIFY all PERSONS with knowledge of such facts."

8   (*Id.*, p. 52).

9   • Interrogatory No. 58: "State all facts which support YOUR

10   contention, if YOU so contend, that YOU and/or MGA did not obtain

11   any MATTEL DOCUMENTS through improper means, and

12   IDENTIFY all PERSONS with knowledge of such facts and all

13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14   54).

15   • Interrogatory No. 59: "State all facts which support YOUR

16   contention, if YOU so contend, that any information in the MATTEL

17   DOCUMENTS does not and/or did not derive independent economic

18   value from not being generally known to the public or other

19   PERSONS who can obtain economic value from its disclosure or use,

20   and IDENTIFY all PERSONS with knowledge of such facts and all

21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22   57).

23   • Interrogatory No. 60: "State all facts which support YOUR

24   contention, if YOU so contend, that any information in the MATTEL

25   DOCUMENTS was known to the public or to PERSONS who can

26   obtain economic value from its disclosure or use, and IDENTIFY all

27   PERSONS with knowledge of the foregoing and All DOCUMENTS

28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___124___

- 14 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1

- Interrogatory No. 61: "State all facts which support YOUR
2
  contention, if YOU so contend, that YOU and/or MGA independently
3
  developed, or did not otherwise use or disclose, any information in the
4
  MATTEL DOCUMENTS, and IDENTIFY all PERSONS with
5
  knowledge of such facts and all DOCUMENTS that REFER OR
6
  RELATE TO such facts." (*Id.*, pp. 64 – 65).
7

- Interrogatory No. 62: "State all facts which support YOUR contention
8
  that YOUR use or disclosure of information in the MATTEL
9
  DOCUMENTS neither benefited YOU nor harmed MATTEL, and
10
  IDENTIFY all PERSONS with knowledge of such facts and all
11
  DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.
12
  69).
13

- Interrogatory No. 63: "State all facts which support YOUR
14
  contention, if YOU so contend, that YOU and/or MGA had, has or
15
  have any right to copy, possess, use or disclose any MATTEL
16
  DOCUMENT, and IDENTIFY all PERSONS with knowledge of such
17
  facts and all DOCUMENTS that REFER OR RELATE TO such
18
  facts." (*Id.*, p. 73).
19
### a.    Objections Of MGA And Larian
20
In their Opposition, the MGA Parties rely on four basic grounds for refusing
21
to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue
22
that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9
23
– 10). Second, the MGA Parties argue that the interrogatories presuppose facts
24
that are not true. (*Id.*, p. 8). Third, the MGA Parties argue that all 8 interrogatories
25
are impermissibly compound and exceed the number of allotted interrogatories.
26
(*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59
27
and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __5__

PAGE __125__

- 15 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

**(1)   Unduly Burdensome Objection**

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10). While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10). Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party. (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal importance. We're asking for . . . their core contentions related to the trade secret claims."]). As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20). Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5
PAGE _____ 126

- 16 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1        • stole "Mattel's plans, strategy and business information for the

2            Mexican market and materials related to Mattel's worldwide business

3            strategies," (*Id.*, ¶ 37);

4        • "directed [certain Mattel employees'] to steal virtually all Mattel

5            confidential and proprietary information that they could access and

6            bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7            type of document a competitor would need to enter the Mexican

8            market, and to unlawfully compete with Mattel in Mexico, in the

9            United States and elsewhere . . ." (*Id.*, ¶ 48);

10       • "targeted certain Mattel employees who have broad access to Mattel

11          proprietary information in an effort to induce and encourage them to

12          join MGA and to steal or otherwise wrongfully misappropriate Mattel

13          confidential information and trade secrets," including by "promising

14          these employees salaries 25 percent or more higher than they earn at

15          Mattel and stating to them that they should not be concerned by legal

16          action taken by Mattel to protect its trade secrets and its rights because

17          such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18       • "hired directly from Mattel's United States operations at least 25

19          employees, from Senior Vice-President level to lower level

20          employees," and that some of these individuals misappropriated

21          "Mattel confidential and proprietary information, including Mattel's

22          strategic plans; business operations; methods and systems; marketing

23          and advertising strategies and plans; future product lines; product

24          profit margins, and customer requirements." (*Id.*, ¶ 77).

25         Therefore, this is not a situation where Mattel has alleged that the MGA

26 Parties stole a handful of documents.  The SAAC instead alleges that the MGA

27 Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28 "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____127_____

- 17 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    market, and to unlawfully compete with Mattel in Mexico, in the United States and

2    elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA

3    Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4    19), including all of the documents that have been identified as the MATTEL

5    DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6    regarding whether or not those documents constitute trade secrets, particularly

7    given that such information is exclusively within the control of the MGA Parties.

8    As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9    accusing MGA and the other defendants of stealing all of these documents . . . and

10    [the MGA Parties are] going to have to articulate what their contentions are with

11    respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*

12    81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13    Mattel is going to be proceeding to trial on."]).

14       Also, the MGA Parties' claim of undue burden does not take into account the

15    vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16    propounded 4,647 requests for admission, 2,889 requests for production, and 71

17    interrogatories in Phase 1]). The MGA Parties do not provide any supporting

18    declaration or specific evidence to support their assertion of burden beyond their

19    statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20    For example, the MGA Parties have not provided the Discovery Master with details

21    regarding: (1) a time estimate as to how long it would take to respond to the

22    Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23    extent to which any facts that must be set forth in answering the Interrogatories are

24    voluminous; or (4) an estimate of the number of documents and/or persons that may

25    have knowledge of such responsive facts. Therefore, the Discovery Master finds

26    that the MGA Parties have not met their burden of demonstrating that answering

27    //

28    //

Arent Fox LLP
Attorneys At Law
Los Angeles

EXHIBIT _____5_____

PAGE _____128_____

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Case 2:04-cv-09049-DOC-RNB    Document 5370-2    Filed 05/07/09    Page 34 of 66    Page ID
#:174905
Case 2:04-cv-09049-SGL-RNB    Document 5093    Filed 03/31/2009    Page 20 of 41

1   the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2   *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3   discovery request is unduly burdensome must allege specific facts which indicate

4   the nature and extent of the burden, usually by affidavit or other reliable

5   evidence."]).

6         While there is no specific evidence in the record demonstrating that the MGA

7   Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8   56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9   demand for "all facts" relating to what could be thousands of different documents

10  could be construed by Mattel in a manner that could place an unreasonable burden

11  on the MGA Parties, particularly when that information is requested via a written

12  interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13  issue[17] and requires that the MGA Parties identify all facts, documents and

14  witnesses that they currently intend to rely on at summary judgment or trial to

15  demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16  means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17  documents did not derive independent economic value (i.e., Interrogatory No. 59),

18  (iii) any information in the MATTEL DOCUMENTS was known to the public,

19  (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20  not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21  (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22  of the information in the MATTEL DOCUMENTS nor harmed Mattel

23  (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24  possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25         The Discovery Master finds that this limitation is appropriate because Mattel

26

27  [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their
    position on this issue. (Opposition, pp. 9 – 10).

28  [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____                          - 19 -              AMENDED ORDER NO. 11
                                                          [Case No. CV 04-09049 SGL (RNBx)]
PAGE ____129____

1    conceded in its Reply that it was not asking the MGA Parties "to provide

2    facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3    "specific contentions Defendants may make regarding the [allegedly] stolen

4    documents," (*id.*, p. 17). Mattel's counsel reiterated this position again at oral

5    argument, wherein he declared that Mattel was not necessarily interested in "a

6    parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7    Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

         (2)    **Purported Presuppositions Regarding**

              **Interrogatory Nos. 56 and 58 – 63.**

10          The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11    objectionable because they require the MGA Parties to presuppose that they are "in

12    possession of documents stolen or taken from Mattel by former employees – a fact

13    that MGA denies." (Opposition, p. 8). The MGA Parties further assert that "each

14    of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15    Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16    assertions . . . which make the interrogatories unanswerable and incomprehensible."

17    (*Id.*, p. 9). However, the MGA Parties cite no legal authority, and the Discovery

18    Master has found none, standing for the proposition that a party may refuse to

19    respond to an interrogatory merely because the interrogatory assumes a fact the

20    responding party disputes.

         (3)    **Compound And Excessive Objections**

22          The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23    impermissibly compound and exceed the allotted number of interrogatories.

24    (Opposition, pp. 10 and 11). Each of these contentions is unavailing.

25          As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

---

[18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____130____

- 20 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2   the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3   Therefore, the MGA Parities waived any such objections to those interrogatories.

4   (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5   Cir. 1992) [stating that "failure to object to discovery requests within the time

6   period required constitutes a waiver of any objection."]).

7       As for the interrogatories where the objections were asserted, the MGA

8   Parties have not demonstrated that the interrogatories are compound or exceed the

9   allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10  and documents related to the MATTEL DOCUMENTS does not render the

11  interrogatories compound because the questions in each interrogatory refer to one

12  common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint*

13  *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14  subparts directed at eliciting details concerning a 'common theme' should generally

15  be considered a single question"]).  The prior discovery master applied this precise

16  rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17  supporting a contention, the identity of persons with knowledge, and documents are

18  not counted separately for the purposes of applying the . . . interrogatory limit."

19  (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20              **(4)    Establishing A Negative Proposition Objection**

21      As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22  Parties assert that three of the interrogatories improperly ask them to establish a

23  negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24  12).  The relevant question, however, is not whether an interrogatory may require a

25  party to prove a negative.  Rather, all of the cases cited by the parties concerning

26  this issue examine whether the interrogatory in question imposes an unreasonable

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____131_____

- 21 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   burden on the responding party.[19]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

**b.    Conclusion**

5       For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

**3.    Interrogatory Nos. 67 – 69 Propounded On MGA And Larian**

10      Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

- Interrogatory No. 67: "IDENTIFY fully and separately each and every payment of money or other item of value that YOU have made or given, or any promise, agreement, proposal [o]r offer by YOU to pay money or given any item of value, to or on behalf of any PERSON identified in any of the parties' initial disclosures in this ACTION at any time when such person was not an employee of MGA, including without limitation with respect to legal fees incurred by or on behalf of such PERSON." (Separate Statement in Support of Written Discovery Motion, p. 88).

- Interrogatory No. 68: "To the extent not disclosed in prior

---

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 - 448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]; *Tennison v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*, 2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____132____

- 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Interrogatories, IDENTIFY fully and separately each and every

2    payment of money or other item of value that MGA has made, or any

3    promise, agreement, proposal or offer by MGA to pay money or given

4    any item of value, to or on behalf of any of the FORMER MATTEL

5    EMPLOYEES, including without limitation with respect to legal fees

6    incurred by or on behalf of any of the FORMER MATTEL

7    EMPLOYEES." (*Id.*, p. 91).

8    • Interrogatory No. 69: "To the extent not disclosed in prior

9    Interrogatories, IDENTIFY fully and separately each and every

10    payment of money or other item of value that YOU have made, or any

11    promise, agreement, proposal or offer by YOU to pay money or given

12    any item of value, since January 1, 1998 to or on behalf of any

13    PERSON who has been employed by MATTEL (excluding ordinary

14    salary and benefits paid to such PERSON while an MGA employee),

15    including without limitation with respect to legal fees incurred by or

16    on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17    p. 92).

18           a.       **Objections Of MGA And Larian**

19       In their Opposition, the MGA Parties rely on two basic grounds for refusing

20    to provide responses to these three interrogatories.  First, the MGA Parties argue

21    that the interrogatories are impermissibly compound and exceed the number of

22    allotted interrogatories.  (*Id.*, pp. 10 – 11).  Second, the MGA Parties argue that

23    interrogatories are overly broad.  (*Id.*, pp. 12 – 14).

24           (1)      **Compound And Excessive Objections**

25       Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26    that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27    allotted number of interrogatories.  (Opposition, pp. 10 and 11).  But those

28    arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___133___

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1

### (2)   Overly Broad Objection

2       The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is

3   that they are overly broad.  The MGA Parties complain that Interrogatory No. 67 is

4   overbroad because it seeks information regarding payments by MGA to any persons

5   identified in the initial disclosures, not just former Mattel employees.  (Opposition,

6   pp. 12 – 13).

7       While a payment to a potential witness could be relevant to the issue of bias

8   and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281,

9   283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which

10   may simply relate to the credibility of a witness or other evidence in the case."]),

11   the SAAC merely alleges that the MGA Parties bribed former Mattel employees —

12   not every single witness in this case.  In the absence of an allegation suggesting that

13   other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not

14   relevant at this time.[20]  Accordingly, Mattel's motion to compel a response to

15   Interrogatory No. 67 is denied at this stage.

16       As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the

17   "burden and expense of determining whether each individual contemplated by these

18   interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely

19   benefit."  (*Id.*, pp. 13 and 14).  Once again, however, the MGA Parties provide no

20   evidence to support such a claim.  (*See Jackson*, 173 F.R.D. at 528-9 ["The party

21   claiming that a discovery request is unduly burdensome must allege specific facts

22   which indicate the nature and extent of the burden, usually by affidavit or other

23   reliable evidence."]).

24       The MGA Parties only remaining complaint is that Interrogatory No. 69

25   seeks information regarding payments to "or on behalf of" any person who has been

26   _____

27   [20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well.  To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims.  Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____134_____

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2    EMPLOYEES as including specific individuals as well as each such person's

3    "current or former employees, agents, representatives, attorneys, accountants,

4    vendors, consultants, independent contractors, predecessors-in-interest and

5    successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6    to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7    While they assert these definitional objections, counsel for the MGA Parties

8    nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9    Mattel employees, for other than their salary as MGA employees, I think that is a

10   fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11       Therefore, the Discovery Master orders the MGA Parties to identify fully and

12   separately each and every payment of money or other item of value that they have

13   made or offered to pay to or on behalf of any "former employee of Mattel" since

14   January 1, 1998 but limits the definition of former Mattel employees to "all

15   individuals that the MGA Parties are aware of that worked for Mattel and who

16   received any payment (excluding ordinary salary and benefits paid to such person

17   while an MGA employee) from the MGA Parties."[21]

18                   **b.    Conclusion**

19       For all of the foregoing reasons, Mattel's motion to compel is denied with

20   respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's

21   motion to compel responses to the interrogatories is granted, subject to the

22   limitations discussed above.

23       **C.    Summary Of Ruling Regarding The Written Discovery Motion**

24       Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25   **part**.

26

27   ────────────────────
[21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.

28   Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____135____

- 25 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    II.    **MATTEL'S DEPOSITION MOTION**

2         A.    **Introduction**

3         As indicated above, the Deposition Motion addresses the motion of Mattel to

4 compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba

5 Almada ("Trueba") (collectively, the "Witnesses").

6         1.    **Background**

7         The Witnesses are former employees of Mattel in Mexico[22] who, along with

8 another former Mattel manager and named defendant, Carlos Gustavo Machado

9 Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico

10 operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that

11 Machado and the Witnesses stole Mattel trade secrets.

12        The Witnesses are Mexican nationals who reside in Mexico, where MGA

13 Mex has its principal place of business.  Vargas currently serves as the Director of

14 Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9

15 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of

16 MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects

17 for MGA Mex.  She does not manage or supervise any employees of MGA Mex.

18 Trueba reports directly to Machado, who is MGA Mex's Director of Marketing.

19 Machado, in turn, reports to Kuemmerle.

20         2.    **Procedural History**

21        On January 10, 2008, Mattel served deposition notices pursuant to Federal

22 Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for

23 January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to

24 this action (the "MGA Defendants") asserted that neither of the Witnesses is a

25 "managing agent," and therefore Mattel must subpoena the Witnesses.  On

26 January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

27

28    [22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ J

PAGE _____ 136

- 26 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   the Witnesses (as well as others).  Mattel's application was stayed with other Phase

2   2 discovery and then denied without prejudice on September 23, 2008.  After the

3   Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4   depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5   Once again, the MGA Defendants objected on the ground that neither of the

6   Witnesses is an officer, director or managing agent of MGA Mex.  After the parties

7   were unable to resolve their dispute, Mattel filed the Deposition Motion.

8        **B.    Discussion**

9        Mattel argues that (1) the Witnesses are directors and/or managing agents of

10  MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11  Angeles.  Mattel also seeks sanctions on the ground that the MGA Defendants are

12  acting in bad faith and without justification to frustrate Mattel's legitimate

13  discovery rights.  In response, the MGA Defendants argue that (1) the Witnesses

14  are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15  (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16  Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico.  The

17  MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18  adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19  ("Khan") and then served a redacted version of the Deposition Motion on a

20  different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21  was out of town.[23]  According to MGA Mex, Mattel only served a complete,

22  unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23  days before the deadline for the Opposition.

24       **1.    Legal Standard**

25       If a corporation is a party to an action, any other party may take the

26  deposition of that corporation by identifying a specific officer, director, or

27  _____

28  [23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____137____

- 27 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  managing agent to be deposed and noticing that person's deposition under Rule
2  30(b)(1). Notice alone is enough to compel the managing agent to attend the
3  deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*
4  *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of
5  compelling a corporate officer's deposition, courts do not recognize a distinction
6  between an "apex" official or director and other high corporate officials. (*Resort*
7  *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.
8  Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes
9  ["There is slight warrant for the present distinction between officers and managing
10 agents on the one hand and directors on the other."]).

11        The case law provides somewhat ambiguous guidance with respect to the
12 burden of proof for demonstrating managing agent status. Generally, the burden is
13 on the discovering party to establish the status of the witness. (See *Sugarhill*
14 *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);
15 *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same
16 time, however (and as Mattel points out in its papers), courts resolve doubts in
17 favor of the examining party, at least during the discovery phase. (See *Sugarhill*,
18 105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97
19 (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of
20 providing enough evidence to show that it is at least a close question whether the
21 proposed deponent is a managing agent." (*United States of America v. Afram Lines*
22 *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23        The identification of a managing agent in any given case is fact-sensitive.
24 "[B]ecause of the vast variety of factual circumstances to which the concept must
25 be applied, the standard . . . remains a functional one to be determined largely on a
26 case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*
27 *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the
28 question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___138___

- 28 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2    C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3    citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)).  Whether a

4    proposed deponent falls into a particular category of employee or agent is therefore

5    less relevant than the individual's specific functions and authority.

6            As both parties acknowledge, federal courts have formulated a set of factors

7    to assist in determining whether person is a party's "managing agent," and therefore

8    subject to deposition under Rule 30(b)(1):

9        1)    whether the individual is invested with general powers allowing him to

10             exercise judgment and discretion in corporate matters;

11       2)    whether the individual can be relied upon to give testimony, at his

12             employer's request, in response to the demands of the examining

13             party;

14       3)    whether any person or persons are employed by the corporate

15             employer in positions of higher authority than the individual

16             designated in the area regarding which the information is sought by the

17             examination;

18       4)    the general responsibilities of the individual "respecting the matters

19             involved in the litigation;" and

20       5)    whether the individual can be expected to identify with the interests of

21             the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23           According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)).  Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____139_____

- 29 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),

2   the Witnesses are managing agents of MGA Mex.

3        Mattel's emphasis on the employee's loyalty as the main test for determining

4   his or her status is unwarranted. Federal courts have effectively challenged the

5   notion that the employee's loyalty to the employer is entitled to special weight.

6   (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the

7   *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8   apparent fidelity to the principal's interests, because it would apply to many agents

9   and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent." (*Id.,* at 350). Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies. Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15        In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees. Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness. This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27        However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____140_____

- 30 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2   employee of an adversary corporation in his individual capacity and may

3   nonetheless still seek to impeach that testimony.  In other words, characterizing a

4   particular witness as a "managing agent" no longer provides any substantive

5   advantage to the deposing party, only procedural advantages (i.e., the ability to take

6   the deposition without a subpoena).

7           Having discarded the notion that the witness' loyalty to his employer is the

8   main factor to be considered in ascertaining his status as a managing agent, the

9   court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11  197 F.R.D. at 350).  The court reasoned:

12              For the purpose of determining whether an individual is a

13              'managing agent' within the meaning of the discovery rules, the

14              alter ego theory provides a useful analogy.  As in the arena of

15              corporate liability, the focus begins with the character of the

16              individual's control.  In addition, we can profitably examine both

17              the degree to which the interests of the individual and the

18              corporation converge, and how helpful the individual will be in

19              fact finding on the matter at issue, in comparison to others

20              associated with the corporation.  As in all matters appertaining to

21              discovery, it is the ends of justice that are to be served.

22  (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25  practical and well-reasoned test for determining whether the Witnesses are

26  managing agents of MGA Mex, and applies that test below.

27  ─────────────

28  [24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___14___

-31-

1          **2.**      **Analysis Of The Witnesses' Job Functions And Managerial**

2               **Authority**

3              **a.**      **The Nature Of The Witnesses' Activities On Behalf**

4                   **Of, And Control Over, MGA Mex.**

5       In accordance with the approach outlined in *Libbey Glass*, the Discovery

6 Master begins his analysis by examining the Witnesses' activities on behalf of, and

7 managerial control over the operations of, MGA Mex.

8       Mattel relies heavily on documentary evidence regarding the role of

9 Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10 Master finds that this evidence, which is limited to events that occurred five years

11 ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12 and authority.[25] The only evidence presented by the parties concerning the

13 Witnesses' current role in the company is the testimony of Kuemmerle. That

14 testimony derives from three sources: (1) her declaration filed on February 27,

15 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16 deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17 Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18 Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19       The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20 states in its entirety:

21           All of the day to day operations of MGA Mexico are managed

22           locally in Mexico. For example, MGA Mexico's Finance

23           Director, Sales Director and Marketing Director are all based in

24           Mexico and all of the marketing and finance functions are

25           handled in Mexico.

26 (First Kuemmerle Decl., ¶ 6).

27

28

---

[25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents? And the answer, of course, is now." (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____142_____

- 32 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    There are two main excerpts from Kuemmerle's deposition transcript cited

2    by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3    pricing for the products sold by MGA Mex is set by means of a "combined team

4    effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5    p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26] Kuemmerle testifies that these

6    individuals (which apparently include the Witnesses) continue to set the pricing of

7    MGA Mex products in the same manner to this day. (Id.).

8    Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9    testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10   tight of a group, not enough employees, that we were all forced to multitask."

11   (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12   In her second declaration, Kuemmerle testifies regarding the chain of

13   command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14   her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15   (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16   functions performed by, or general authority exercised by, either of the Witnesses.

17   Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18   all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19   supervises anyone. (Id., ¶ 3).

20   In the absence of any evidence directly addressing the Witnesses' current

21   role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22   managing agents based on the Witnesses' job titles and past participation in the

23   "tight group" that made operational decisions for the fledgling company several

24   years ago. However, such an inference is not supported by the scant evidence

25   before the Discovery Master. For instance, the Discovery Master cannot attribute

26

27   [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and

28   Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5
PAGE _____ 143

- 33 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   such status to Trueba, who supervises no employees, and whose scope of

2   responsibility is circumscribed to public relations.[27]

3       Likewise, although Mattel emphasizes that Vargas supervises approximately

4   8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5   p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6   necessary context by identifying the number of total MGA Mex employees.  If, for

7   instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8   employees would tend to indicate he does not have such authority.[28]  Because the

9   necessary contextual information is not provided, the Discovery Master is unable to

10  assess the significance (if any) of the evidence that is provided regarding Vargas'

11  current role at MGA Mex.

12      In sum, the evidence currently before the Discovery Master is insufficient to

13  allow him to determine that the Witnesses' functions on behalf of, and control over,

14  MGA Mex is such that they can be deemed its "managing agents."

15                    **b.    Other Factors**

16      Since there is virtually no evidence addressing the critical factor governing

17  whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18  above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19  at best.  Even if all those factors were satisfied – which they are not – the record

20  would still be insufficient to enforce the deposition notices at issue here.  However,

21  in order to create a complete record and to address the arguments made by the

22  parties, the Discovery Master nonetheless briefly discusses those factors below.

23      As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing."  (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion.  Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____144_____

- 34 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   on the issue of whether an employee is a managing agent is whether he or she "is

2   invested with *general* powers allowing him to exercise judgment and discretion in

3   corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]).  Here, the

4   current scope of Trueba's authority appears to be the opposite of "general:" she is

5   responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6   attached as Exh. 9 to Kahn Decl.).  Likewise, Vargas' authority, although somewhat

7   broader than that of Trueba, appears to be confined primarily to sales. (Second

8   Kuemmerle Decl., ¶ 3).  There is no evidence that either of the Witnesses has any

9   authority over such things as internal administrative functions, budgeting, contracts

10  with vendors, and various other aspects of running a business.

11      The second *Sugarhill* factor (whether the individual can be relied upon to

12  give testimony at the employer's request) is satisfied, since the Witnesses are

13  current employees of MGA Mex who will presumably cooperate in their

14  employer's defense of Mattel's counterclaims by providing testimony at a

15  deposition.

16      Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17  employees in positions of higher authority than the Witnesses in the area regarding

18  which the information is sought), the Discovery Master finds that the undisputed

19  testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20  Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21  Kuemmerle Decl., ¶¶ 3 and 4).  Accordingly, this factor weighs against finding that

22  the Witnesses are "managing agents."

23      With respect to fourth factor (the general responsibilities of the Witnesses

24  respecting the matters involved in the litigation), Mattel's papers demonstrate that

25  the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26  Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27  contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28  Motion, pp. 4 – 7).  Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____145_____

- 35 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Witnesses to be managing agents.

2    The last factor is the "loyalty" inquiry discussed above, namely whether the

3    Witnesses can be expected to identify with the interests of MGA Mex. Because

4    they are being subjected to investigation in Mexico, have their own lawyers and the

5    MGA Defendants may take the position that if any Mattel documents were taken,

6    the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7    align with the MGA Defendants in this matter. It is unclear on this record whether

8    this factor weighs in favor of or against deeming the Witnesses to be managing

9    agents.

10   **C.    Summary Of The Discovery Master's Findings In Connection**

11   **With The Deposition Motion**

12   At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex. The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this

16   is not such a case.[29]

17   Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30] Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22   **D.    Sanctions**

23   **1.    Mattel's Request For Sanctions**

24   Having found that the MGA Defendants have articulated a meritorious legal

---

[29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities. However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____146_____

- 36 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   and factual basis for their objections to the subject deposition notices, the Discovery

2   Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3   was justified.  Accordingly, Mattel's request for sanctions is **DENIED**.

### 2.   The MGA Defendants' Request For Sanctions

5        The MGA Defendants request an award of sanctions against Mattel for

6   conduct related to Mattel's service of the Deposition Motion.  First, the MGA

7   Defendants contend that Mattel should have served the Deposition Motion on

8   Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9   counsel had been communicating regarding the subject depositions.  The MGA

10  Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11  on Kahn's colleague, Glaser, while the latter was out of town.  However, the MGA

12  Defendants do not explain why other attorneys in their office who were assigned to

13  the matter were not notified of the delivery of the Deposition Motion given Ms.

14  Glaser's absence.  Further, Mattel has submitted the declaration of its counsel,

15  Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16  served the Deposition Motion on all three law firms representing the MGA

17  Defendants at the same time (February 6, 2009) that the motion was filed.  (See

18  Suppl. Zeller Decl., Exh. E).

19        Second, the MGA Defendants argue that Mattel only served a redacted

20  version of the Deposition Motion on them at some later point, leaving them only

21  two days to draft and file opposing papers, and refused Kahn's request for a

22  reasonable extension of time.  (Kahn Decl., ¶¶ 3 - 4).  However, the Kahn Decl. is

23  vague regarding the date and manner in which Mattel is alleged to have belatedly

24  served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25  Master is unable to ascertain whether Kahn's belated receipt of the motion was

26  caused by some conduct of Mattel, or instead, caused by internal delays within

27  Glaser Weil in routing the papers to the appropriate attorney.

28        Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____5_____

PAGE _____147_____

- 37 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

III.   **DISPOSITION**

    **A.**   Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

    1.   Document Request Nos. 207, 208 and 269 directed to Larian:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    2.   Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    3.   Interrogatory No. 45 directed to MGA:  The Motion is **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    4.   Interrogatory Nos. 56 – 63 directed to MGA and Larian:

        a.   The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

        b.   Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations:  The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely at summary judgment or trial to demonstrate (i) they did not obtain any

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5 _____

PAGE _____ 148 _____

- 38 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2    (ii) that the information in the MATTEL documents did not derive independent

3    economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4    DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5    Parties independently developed, or did not otherwise use or disclose, any

6    information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7    the MGA Parties have not benefited by their use of the information in the MATTEL

8    DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9    Parties had or have a right to copy, possess, use or disclose any MATTEL

10   DOCUMENT (Interrogatory No. 63).

11              c.      The MGA Parties responses to interrogatories numbered

12   56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13   applicable confidentiality designations available under the Protective Order.

14              5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

15   is **DENIED**.

16              6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18   Parties are ordered to identify fully and separately each and every payment of

19   money or other item of value that they have made or offered to pay to or on behalf

20   of any former employee of Mattel since January 1, 1998, with the definition of

21   former Mattel employees re-defined as "all individuals that the MGA Parties are

22   aware of that worked for Mattel and who received any payment (excluding ordinary

23   salary and benefits paid to such person while an MGA employee) from the MGA

24   Parties."  The MGA Parties responses to these interrogatories shall be served within

25   30 days of the original Order No. 11, subject to any applicable confidentiality

26   designations available under the Protective Order.

27   **B.**    Mattel's Deposition Motion:

28              1.      Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___149___

- 39 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1        2.     Mattel's request for sanctions is **DENIED.**

2        3.     The MGA Defendants' request for sanctions is **DENIED.**

Dated:  March 31, 2009

By:＿＿＿＿ /s/ Robert C. O'Brien ＿＿＿＿＿

ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ＿＿＿ 5 ＿＿＿

PAGE ＿＿＿ 150 ＿＿＿

- 40 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

# EXHIBIT 6

# EXHIBIT FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 7

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   April 22, 2008

**NUMBER OF PAGES, INCLUDING COVER: 4**

|  |  |  |
|---|---|---|
| **NAME/COMPANY** | **PHONE NO.** | **FAX NO.** |
| Lance A. Etcheverry | 213.687.5432 | 213.621.5432 |
| Skadden, Arps, Slate, Meagher & Flom LLP | | |
| 300 South Grand Avenue | | |
| Los Angeles, California 90071-3144 | | |

**FROM:**   Jon D. Corey

**RE:**   Mattel, Inc.

**MESSAGE:**

FAXED
APR 2 2 2008

---

| | | | |
|---|---|---|---|
| **CLIENT #**  7209 | **ROUTE/ RETURN TO:** | Johanna Lopez (1 extra copy) | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
| **OPERATOR:** PRISCILLA | **CONFIRMED?** | ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT ___1___

PAGE ___182___

EXHIBIT ___25___

PAGE ___351___

```
04/22 2008 14:21 FAX  12134433100        QECON-LAO-2                              ☑001

                                   *******************
                                   ***   TX REPORT   ***
                                   *******************

            TRANSMISSION OK

            TX/RX NO              0891
            RECIPIENT ADDRESS     76706#7209#12136215432
            DESTINATION ID
            ST. TIME              04/22 14:19
            TIME USE              01'29
            PAGES SENT            5
            RESULT                OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   April 22, 2008

**NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
| --- | --- | --- |
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

**FROM:**   Jon D. Corey

**RE:**   Mattel, Inc.

**MESSAGE:**

EXHIBIT  25
PAGE  352

EXHIBIT  1
PAGE  183

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 22, 2008

VIA FASCIMILE AND U.S. MAIL

Lance A. Etcheverry
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, California 90071-3144

Re:   Bryant vs. Mattel, Inc.

Dear Lance:

I write regarding Mr. Isaac Larian's hard drives and Mr. Farhad Larian's USB drive. I have set forth below what I believe to be the agreement that we reached.

1.      On a mutually agreeable date no later than April 25, 2008, Skadden Arps Slate Meagher & Flom, LLP ("Skadden") will make available at its facilities those hard drives responsive to the Court's Order compelling production of Isaac Larian's hard drives and Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen") will make available the USB device ("Device") about which Mr. Farhad Larian testified during his February 4, 2008 deposition.

2.      The hard drives and the USB device will be made available at the location of _____, which is a consultant identified by Skadden.

3.      Skadden's consultant shall make EnCase images of the hard drives and the USB device in the presences of Mattel's consultant, 42 Consulting, LLC. The EnCase images shall remain in the possession of Skadden's consultant. Skadden's consultant, however, shall make those hard drives and USB devices available for inspection at a time convenient to 42 Consulting, LLC so that it may perform the analysis necessary. Skadden's consultant shall also provide essentials for the analysis to occur, such as electrical power, lighting, reasonable work space, internet access, etc.

EXHIBIT __25__
PAGE __353__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2463006.1

EXHIBIT __7__
PAGE __184__

4.     Skadden's consultant shall be allowed to observe the inspection of the hard drives and the USB device.  At no time shall Skadden's consultant interfere with or otherwise hinder the inspection and, if at any time, 42 Consulting, LLC representatives are not present and a search or inspection is being run (such as overnight), then Skadden's consultant shall not take any steps to interfere with, affect, inspect, access or use the hardware or software running any search.

5.     With respect to the USB Device, 42 Consulting, LLC may inspect the image of the Device for any and all agreed-upon information (the "Information").

     (a)     The "Information" shall mean:

          (i)     information relating to the manufacture date and first use of the Device;

          (ii)     documents or files, whether previously deleted or currently on the Device, that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant, including without limitation the documents that Farhad Larian testified he downloaded from MGA's computer system as part of his efforts to obtain evidence for the Larian v. Larian proceedings; and

          (iii)     all available metadata and file information about the documents described in paragraph (ii), including without limitation:

          (A)     whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

          (B)     whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

          (C)     the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

          (D)     whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

          (E)     to recover any such information, in whole or in part.

     (b)     42 Consulting, LLC shall inspect the entire Image of the USB device for Information using search terms and parameters that Mattel will provide him or her.

     (c)     42 Consulting, LLC shall then provide to Christensen print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

     (d)     42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

EXHIBIT  25
PAGE  354

EXHIBIT  1
PAGE  185

(e)    Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted.  Mr. Larian will serve Mattel and the 42 Consulting, LLC Expert a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

6.    With respect to the hard drives, 42 Consulting, LLC may inspect the Images of the hard drives in their entirety, including but not limited to link files, registry files, system volume information, logs and log files, recycle bin info2 records, application files, file listing and metadata for all files (allocated and unallocated), page/swap files, deleted/unallocated data, all files and folders, file system, e-mail trash or deleted files, unallocated space (volume slack, unused disk space, unallocated clusters), file slack,  recycle bin/recycler. Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives.  42 Consulting, LLC shall not be deemed to have accessed user generated content by loading any Outlook archive files or any other archive file that may contain information relating to deleted items.

(a)    Information available for inspection shall also include:

(i)    information relating to the manufacture date and first use of each hard drive:

(ii)    documents or files previously deleted, attempted to be deleted, or otherwise rendered inaccessible that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant; and

(iii)    all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A)    whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)    whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C)    the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D)    whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)    to recover any such information, in whole or in part.

EXHIBIT  1
PAGE  186

EXHIBIT  25
PAGE  355

(b)      42 Consulting, LLC shall inspect the unallocated space on any hard drive or any other location in which deleted files or documents may otherwise reside or where information related to such deleted files or documents may resided.

(c)      42 Consulting. LLC shall then provide to Skadden print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)      42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

(e)      Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

7.      If there is any issue or question regarding the authenticity, correctness, integrity or completeness of the Information, then nothing here shall preclude Mattel from seeking production and inspection of the original hard drives or USB device.  Mattel also reserves the right to seek additional information of both the USB device and the hard drives.

8.      The Parties agree that the actions described herein shall not constitute a waiver of any claim of attorney-client privilege or work product privilege with respect to (a) the information on any hard drive, (b) the information on the USB device, or (c) the conduct, notes, searches, search terms, communications or any other act performed by any consultant or attorney in connection with these hard drives or USB devices.

Should you have any questions regarding the foregoing, please do not hesitate to call.

Sincerely,

Jon Corey

Jon Corey

EXHIBIT 25
PAGE 356

EXHIBIT 7
PAGE 181

# EXHIBIT 8

# EXHIBIT FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER