1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
4  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000/Fax: (213) 687-5600
5

6  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN,
7  and MGA ENTERTAINMENT (HK) LIMITED

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11 CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL (RNBx)
                                        )
12              Plaintiff,              )  Consolidated with Case No. 04-9059
                                        )  and Case No. 05-2727
13        v.                            )
                                        )  Honorable Stephen G. Larson
14 MATTEL, INC., a Delaware corporation,)
                                        )
15              Defendant.              )  MGA PARTIES' *EX PARTE*
                                        )  APPLICATION AND MOTION FOR
16 ─────────────────────────────────── )  STAY PENDING APPEAL; and
                                        )
17 AND CONSOLIDATED ACTIONS.            )  MEMORANDUM OF POINTS AND
                                        )  AUTHORITIES IN SUPPORT THEREOF;
18 ─────────────────────────────────── )  **FILED UNDER SEPARATE COVER:**

19 **PUBLIC REDACTED**                     (1)  DECLARATIONS OF JASON D.
                                           RUSSELL, NINETTE PEMBLETON
20                                         [under seal], JOHN WOOLARD [under
                                           seal], and LARRY FALCON [under seal]
21                                         IN SUPPORT THEREOF;

22                                         (2)  COMPENDIUM OF THIRD PARTY
                                           DECLARATIONS IN SUPPORT
23                                         THEREOF [under seal];

24                                         (3)  COMPENDIUM OF EXPERT
                                           DECLARATIONS IN SUPPORT
25                                         THEREOF [under seal]; and

26                                         (4)  [PROPOSED] ORDERS [lodged under
                                           separate cover].
27
                                           Hearing Date: May 26, 2009
28                                         Time: 10:00 a.m.

**TO ALL PARTIES AND THEIR ATTORNEYS'OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-3, counter-defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian (collectively, the "MGA Parties"), respectfully submit this *ex parte* application seeking relief from the twenty-day requirement of Local Rule 7-3 and an expedited hearing on the MGA Parties' Motion For Stay Pending Appeal of this Court's December 3, 2008 Orders (the Order Granting Mattel, Inc.'s Motion for Permanent Injunction, the Order Granting Mattel, Inc.'s Motion for Declaratory Judgment; and the Order Granting Mattel, Inc.'s Motion for Constructive Trust and For Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200), as modified by the Court's April 27, 2009 Orders, pursuant to Federal Rule of Civil Procedure 62(c).

The MGA Parties seek expedited consideration on the grounds that the stay currently in place is limited, Mattel and the Temporary Receiver for MGA have stipulated to a schedule for posting public notices regarding the impending product recall that will be harmful to the Bratz brand, and because MGA must begin making significant investments in production of the Spring 2010 product line in June in order to fill orders in a timely fashion and to avoid any disruption in the availability of Bratz branded merchandise to retailers, distributors, licensees, and consumers, as discussed below. The MGA Parties seek a stay under Federal Rule of Civil Procedure 62(c) on the grounds that the MGA Parties and the Bratz brand will suffer irreparable harm if the current stay ending December 31, 2009 is not extended pending the resolution of the MGA Parties' appeal, and because the appeal presents substantial legal questions as implicated by the Orders. This Application and Motion is based on this notice, the accompanying memorandum of points and authorities, the concurrently filed declarations, and all other pleadings and papers on file with the Court in this action.

## Statement of Compliance with Local Rule 7-19

Counsel for Mattel, Inc. include Michael Zeller, Jon Corey, and B. Dylan Proctor of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP (telephone: 213-443-3000; address: 865

South Figueroa Street, 10th Floor, Los Angeles, CA 90017).

Pursuant to Local Rule 7-19.1, counsel for the MGA Parties gave notice of this Application to counsel for Mattel on May 6, 2009.  (See Declaration of Jason D. Russell dated May 8, 2009 ¶ 2.)   Counsel for Mattel indicated that Mattel would oppose the Application.  (Id.)  Counsel for Mattel did, however, agree to relieve MGA from complying with Local Rule 7-3, and to a stipulated briefing schedule and hearing date, subject to Court approval, which was filed on May 7, 2009 (Dkt 5366).


DATED:  May 8, 2009          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Thomas J. Nolan_____
                        Thomas J. Nolan
                        Attorneys for the MGA Parties

**1**

# TABLE OF CONTENTS

**2**

PAGE:

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT............................................................................................ 1

ARGUMENT ......................................................................................................................... 3

I.     STANDARDS FOR GRANTING A STAY PENDING APPEAL .................... 3

II.    THE MGA PARTIES WILL BE IRREPARABLY HARMED IF THE
       INJUNCTION ORDERS ARE NOT STAYED ................................................. 4

       A.    Without A Stay, The Bratz Brand Will Be Irreparably Damaged ........... 5

             1.    If Given To Mattel, The Bratz Brand Will Lose Its Identity ......... 6

             2.    Moving Bratz Back To MGA Would Further Damage The
                   Brand ........................................................................................... 10

       B.    Without a Stay, MGA Faces Extinction .................................................. 12

III.   MATTEL CANNOT SHOW IT WILL BE EQUALLY HARMED BY A
       STAY ................................................................................................................ 16

IV.    THE PUBLIC INTEREST FAVORS A STAY ................................................ 17

V.     MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW ........... 18

       A.    Substantial Legal Issues Arise From The Permanent Injunction
             Order ........................................................................................................ 19

       B.    Substantial Legal Issues Arise From The Constructive Trust and
             Declaratory Relief Orders ....................................................................... 21

       C.    Substantial Legal Issues Arise From Inextricably Intertwined
             Orders Underlying the 12/3 Orders ......................................................... 21

VI.    IF NECESSARY, A BOND COULD PROTECT MATTEL'S
       INTERESTS ..................................................................................................... 22

VII.   A STAY IS URGENTLY NEEDED ................................................................ 24

CONCLUSION .................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE:**

Advanced Cardiovascular System, Inc. v. Medtronic, Inc.,
 No. C95-03577-DLJ,
 2008 WL 4647384 (N.D. Cal. Oct. 20, 2008) ............................................................. 20

Advanced Medical Optics, Inc. v. Alcon Lab., Inc.,
 No. CIV.A. 03-1095-KAJ,
 2005 WL 3454283 (D. Del. Dec. 16, 2005) ............................................... 13, 16-17, 22

Azurin v. Von Raab,
 792 F.2d 914 (9th Cir. 1986) ..................................................................................... 18

BR Assocs. v. LaFramboise,
 No. 06-11870-BC,
 2007 WL 1840031 (E.D. Mich. June 26, 2007) ......................................................... 17

Bennigan's Franchising Co. v. Swigonski,
 No. CIVA 3:06CV2300G,
 2007 WL 603370 (N.D. Tex. Feb. 27, 2007) .............................................................. 18

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
 174 F.3d 1036 (9th Cir. 1999) ................................................................................... 21

Cadence Design Systems, Inc. v. Avant! Corp.,
 125 F.3d 824 (9th Cir. 1997) ..................................................................................... 17

Cargill, Inc. v. Sears Petroleum & Transp. Corp.,
 No. 5:03 CV 0530 (DEP),
 2004 WL 3507329 (N.D.N.Y. Aug. 27, 2004) ...................................................... 4, 22

Concrete Co. v. MMC Holdings, Inc.,
 201 F. Supp. 2d 1192 (M.D. Ala. 2001) ............................................................... 4, 18

Costco Wholesale Corp. v. Hoen,
 No. C04-360P,
 2006 WL 2645183 (W.D. Wash. Sept. 14, 2006) ...................................................... 18

Davila v. County of San Joaquin,
 No. CIV 506-2691 LKK/EFB,
 2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) ........................................................... 18

Designer Skin, LLC v. S & L Vitamins, Inc.,
 No. CV 05-3699-PHX-JAT,
 2008 WL 4174882 (D. Ariz. Sept. 5, 2008) .............................................................. 20

E.I. Du Pont de Nemours & Co v. Phillips Petroleum Co.,
 835 F.2d 277 (Fed. Cir. 1987) ................................................................................... 17

eBay, Inc. v. Bidder's Edge, Inc.,
 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ..................................................................... 17

eBay Inc. v. MercExchange, L.L.C.,
 547 U.S. 388 (2006)) ................................................................................................. 20

Extreme Networks, Inc. v. Enterasys Networks, Inc.,
No. 07-CV-229-BBC,
2009 WL 679602 (W.D. Wis. Mar. 16, 2009)..............................................................13

Friends of Yosemite Valley v. Kempthorne,
No. CVF 00-6191 AWI DLB,
2007 WL 896154 (E.D. Cal. Mar. 22, 2007)................................................................20

GTE Products Corp. v. Kennametal, Inc.,
772 F. Supp. 907 (W.D. Va. 1991).......................................................................17, 19

Golden Gate Restaurant Ass'n v. City of San Francisco,
512 F.3d 1112 (9th Cir. 2008) ..............................................................................4

In re Hayes Microcomputer Products, Inc. Patent Litig.,
766 F. Supp. 818 (N.D. Cal. 1991).......................................................................13, 22

Hilton v. Braunskill,
481 U.S. 770 (1987).............................................................................................4

Himebaugh v. Smith,
476 F. Supp. 502 (C.D. Cal. 1978) ..........................................................................20

Humane Society of U.S. v. Cavel Int'l, Inc.,
No. 07-5120, 2007 WL 4723381 (D.C. Cir. May 1, 2007)........................................13

Hynix Semiconductor, Inc. v. Rambus, Inc.,
F. Supp. 2d     , No. C-00-20905,
2009 WL 440473 (N.D. Cal. Feb. 23, 2009) ..............................................................20

Isaly Co. v. Kraft, Inc.,
619 F. Supp. 983 (M.D. Fla. 1985),
aff'd in part, rev'd in part,
AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531 (11th Cir. 1986) ........................................5

Isaly Co. v. Kraft, Inc.,
622 F. Supp. 62 (M.D. Fla. 1985)............................................................................5

Jake's Ltd., Inc. v. City of Coates,
169 F. Supp. 2d 1014 (D. Minn. 2001)....................................................................13

Le Sportsac, Inc. v. Dockside Research, Inc.,
478 F. Supp. 602 (S.D.N.Y. 1979) .........................................................................17

Los Angeles Police Protective League v. Gates,
995 F.2d 1469 (9th Cir. 1993) ..............................................................................19

MDY Industrial, LLC v. Blizzard Entertainment, Inc.,
No. CV-06-2555-PHX-DGC,
2009 WL 649719 (D. Ariz. Mar. 10, 2009)..............................................................13

Metro-Goldwyn-Mayer Studios, Inc.,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................................................20

Miller v. LeSea Broad., Inc.,
927 F. Supp. 1148 (E.D. Wis. 1996) .......................................................................4

National Instruments Corp. v. Mathworks, Inc.,
    No. CIV.A. 2:01-CV-11-TJW,
    2003 WL 24049230 (E.D. Tex. June 23, 2003) .......................................................... 13

Pacific Merchandise Shipping Association v. Cackette,
    No. CIVS062791 WBSKJM,
    2007 WL 2914961 (E.D. Cal. Oct. 5, 2007)................................................................. 20

Playboy Enterprises v. Netscape Communications Corp.,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ......................................................................... 17

Simon Properties Group, Inc. v. Taubman Ctrs., Inc.,
    262 F. Supp. 2d 794 (E.D. Mich. 2003) ........................................................................ 4

Standard Havens Products, Inc. v. Gencor Industrials, Inc.,
    897 F.2d 511 (Fed. Cir. 1990) ......................................................................... 12-13, 22

United States v. 1020 Electric Gambling Machine,
    38 F. Supp. 2d 1219 (E.D. Wash. 1999)....................................................................... 18

Wang Lab., Inc. v. Toshiba Corp.,
    No. CIV. 90-1477-A,
    1991 WL 333701 (E.D. Va. Aug. 23, 1991) ............................................................... 17

Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,
    599 F.2d 841 (D.C. Cir. 1977)..................................................................................... 13

Whittier College v. America Bar Ass'n,
    No. CV 07-1817 PA,
    2007 WL 1624100 (C.D. Cal. May 7, 2007)................................................................ 17

**STATUTES**

Fed. R. Civ. P. 62(c)........................................................................................................ 3

**MISCELLANEOUS**

2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) ..................................................... 17

1, 3 McCarthy on Trademarks and Unfair Competition
    § 2:15, § 17:24 (4th ed. 2009)........................................................................................ 6

## PRELIMINARY STATEMENT

The MGA Parties seek a stay pending appeal of the injunctions, constructive trusts, and declaratory relief that this Court granted to Mattel on December 3, 2008, and made final on April 27, 2009.[1] The 12/3 Orders address a wide range of highly complex and novel legal issues, as well as hotly disputed factual and expert questions, and provide for relief that includes perhaps the largest transfer of a brand in U.S. history and the largest toy recall in U.S. history, with an enormous cost imposed on retailers, distributors, licensees, and, if it can survive financially, MGA in complying with this uniquely broad order.

Unless stayed immediately, the 12/3 Orders will have an immediate impact on the Bratz brand that cannot be undone, despite the fact that the MGA Parties' appeal will present serious legal questions to the Ninth Circuit challenging the 12/3 Orders. Relinquishing control of the Bratz brand to Mattel will be devastating to the brand and devastating to MGA, thus rendering their appeal virtually meaningless. Once the Bratz brand is taken over by Mattel, the brand itself will be irrevocably altered and even if MGA were to prevail on its appeal, it will face substantial difficulties in reasserting control over the brand, resuming production, and reestablishing its hard-won relationships with consumers, retailer, distributors, and licensees. Compounding this harm, MGA is in dire financial straits, and cannot afford to lose the vital profits derived from selling Bratz. In light of the significant and novel legal questions raised by the MGA Parties' appeal, a stay is justified to preserve the status quo, to give clarity to the retailers and consumers, and to give the MGA Parties an opportunity for meaningful review. Mattel will not be harmed by the relatively short delay required for an expedited appeal, and its interests can be safeguarded with a bond if any security is necessary.

---

[1] These are the Order Granting Mattel, Inc.'s Motion for Permanent Injunction ("Injunction Order") (Dkt 4443), the Order Granting Mattel, Inc.'s Motion for Declaratory Judgment ("Declaratory Judgment Order") (Dkt 4442), and the Order Granting Mattel, Inc.'s Motion for Constructive Trust and For Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200 ("Constructive Trust Order") (Dkt 4441), as supported by the Court's Order Finding In Favor of Mattel As to The MGA Parties' Affirmative Defenses etc. ("12/3 Omnibus Order") (Dkt 4439), and modified by the Court's Order Denying Mattel's Motion for Judgment As A Matter Of Law etc. ("4/27 Order") (Dkt 5273) (collectively, the "12/3 Orders").

1    Transferring the Bratz brand to Mattel will mean the end of the Bratz that MGA
2  painstakingly developed. Mattel's iteration of the brand will necessarily bear little
3  resemblance to MGA's Bratz. Because the 12/3 Orders only grant Mattel "ownership" over
4  two dimensional drawings and a single sculpt that materially varies from the Bratz products
5  on the market today, Mattel will have to design its own Bratz dolls, and entirely new
6  environs for those dolls to live in. Although MGA may no longer label them "Bratz," the
7  little sisters, boys, pets, houses, cars, motorcycles, and other goods that comprise the vast
8  majority of the Bratz brand, as well as the packaging, fashions, face paint, and marketing
9  campaigns still belong exclusively to MGA – as do all of the Bratz characters outside the
10  original four. Mattel's new versions of Jade and her cohorts will need new clothes, new
11  packaging, new friends, new pets, new vehicles, and new housing – unless, of course, they
12  plan to move in with Barbie in her 50-year old dream house.

13    Yet the evidence in this case, and the harsh reality of the market place, have already
14  demonstrated that creativity and innovative thinking are not Mattel's strong suit, as
15  evidenced by Mattel's repeated failures to capture any meaningful share of the "tween"
16  market through their ill-fated "Flavas" line, among others. Mattel's devotion to Barbie and
17  the corporate culture that Mattel has developed to support its hegemony in the toy industry
18  present a very real danger to Bratz as a brand and to the availability of choices to consumers.
19  As explained below, moving Bratz from the creative, entrepreneurial environment at MGA
20  where it was the primary product to the rigid, bureaucratic environment at Mattel where
21  Bratz will be one of the smaller, less important product lines will necessarily change the
22  nature of the brand, and likely not for the better. The very fact of the transition will
23  undermine years of consumer loyalty, leaving the public, the retailers, the distributors, and
24  the licensees uncertain about the identity and meaning of a "Bratz" product.

25    This uncertainty will only be exacerbated, not undone, if MGA succeeds on appeal
26  and the brand returns to MGA. MGA will be forced to re-establish its relationships with
27  consumers and its network of retailers, distributors, and licensees, and will have to do so
28  under the worst possible circumstances. Due to the extended lead time needed to bring a

1 | season of Bratz from the drawing board to the shelves, MGA likely will miss a season of
2 | production, during which Bratz will be gone from the shelves.

3 | While MGA will make every effort to revitalize the brand if the appeal is successful,
4 | it could take years and cost millions and MGA may not have either. MGA's financial
5 | situation is dire. Losing the revenue from Bratz-related products will inflict grievous,
6 | perhaps fatal, wounds. ████████████████████████████████████████████████
7 | ████████████████████████████████████████, given the uncertainty created by the verdict
8 | and injunction orders, the international financial crisis, and unpredictable buyer demand, the
9 | loss of any revenue will be devastating to MGA and its employees. Without an extension of
10 | the stay currently in place, retailers, licensees and distributors will not purchase products
11 | from MGA's 2010 lines, will not hold shelf space for future Bratz products, and will thrust
12 | the costs of returning the products that they can no longer sell onto MGA. These factors
13 | mean MGA faces extinction absent a stay, denying it even the possibility of an appeal.

14 | In granting a stay permitting MGA to manufacture and sell Bratz through 2009, this
15 | Court has already recognized the significant harm likely to befall MGA and the Bratz brand
16 | should its orders take effect before the MGA Parties have a chance to appeal them. This is
17 | no less true now than it was in December – indeed, the need is now even more compelling.
18 | The MGA Parties have no desire to drag out the proceedings. They filed a notice of appeal
19 | with the Ninth Circuit on May 4 (Dkt 5340), and are seeking expedited treatment for their
20 | appeal, and expect to have the questions impacting Bratz ownership resolved in
21 | approximately one year. If the 12/3 Orders are affirmed, Mattel will have its Bratz line in
22 | short order and can reinvent Bratz as it pleases. But the MGA Parties have the right to
23 | argue before the Ninth Circuit that the 12/3 Orders should be overturned, and request this
24 | stay so that they can pursue a meaningful review.

25 | **ARGUMENT**

26 | **I.  STANDARDS FOR GRANTING A STAY PENDING APPEAL**

27 | This Court may grant a stay "[w]hile an appeal is pending from an interlocutory order
28 | or final judgment that grants, dissolves, or denies an injunction[.]" Fed. R. Civ. P. 62(c).

1  The factors regulating the issuance of a stay are: "(1) whether the stay applicant has made a
2  strong showing that he is likely to succeed on the merits; (2) whether the applicant will be
3  irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure
4  the other parties interested in the proceeding; and (4) where the public interest lies." Hilton
5  v. Braunskill, 481 U.S. 770, 776 (1987); see also Golden Gate Rest. Ass'n v. San Francisco,
6  512 F.3d 1112, 1115 (9th Cir. 2008).  These factors should be treated as "'two interrelated
7  legal tests' that 'represent the outer reaches of a single continuum.'" Golden Gate, 512 F.3d
8  at 1115.  The "irreparably injured" and "likelihood of success" factors are considered on "a
9  sliding scale in which the required degree of irreparable harm increases as the probability of
10 success decreases." Id. at 1115-16.  If the party seeking the stay shows a strong likelihood
11 of success, the mere possibility of irreparable injury absent relief warrants granting a stay.
12 Id.  Alternatively, if that party shows that "the balance of hardships tips sharply in its
13 favor," relief is warranted if there are "serious legal questions" on appeal.  Id.  "This
14 analysis is made against the backdrop of an acknowledged preference for maintaining the
15 status quo pending appeal." Cargill, Inc. v. Sears Petroleum & Transp. Corp., 2004 WL
16 3507329, at *12 (N.D.N.Y. Aug. 27, 2004) (emphasis added).

17 **II.   THE MGA PARTIES WILL BE IRREPARABLY HARMED IF THE**
18 **INJUNCTION ORDERS ARE NOT STAYED**

19        To ensure meaningful review, a stay pending appeal is imperative where there is a
   danger that the injunctive relief granted will be irreversible.   This principle applies
20 whenever an injunction mandates a change in the status quo that cannot readily be undone if
21 the injunction order is vacated.  See, e.g., Simon Prop. Group, Inc. v. Taubman Ctrs., Inc.,
22 262 F. Supp. 2d 794, 798-99 (E.D. Mich. 2003) (granting stay of injunction blocking
23 shareholders from voting their shares and blocking takeover where "it is not clear that
24 certain … steps [in the takeover process] would be reversible or compensable if Defendants
25 prevail on appeal"); Concrete Co. v. MMC Holdings, Inc., 201 F. Supp. 2d 1192, 1195
26 (M.D. Ala. 2001) (granting stay of injunction removing business partner where "the
27 difficulties involved in reinstating an ousted business partner promise to be substantial");
28 Miller v. LeSea Broad., Inc., 927 F. Supp. 1148, 1152 (E.D. Wis. 1996) (granting stay of

1  injunction for specific performance of contract for sale of television station where "[i]t
2  could be difficult, if not impossible, to undo the sale if LeSea is forced to complete the
3  sale ... at this time and if the appeal is subsequently resolved in favor of LeSea"). Here, a
4  stay is required for three reasons: (1) the Bratz brand will be irreparably damaged if the
5  injunction goes into effect, (2) retailers, licensees, and consumers will endure injury in
6  complying with the recall; and (3) MGA itself may cease to exist.

7      **A.   Without A Stay, The Bratz Brand Will Be Irreparably Damaged**

8          In infringement cases, a stay is required because "denying a stay would moot the
9  appeal for all practical and economic purposes." Isaly Co. v. Kraft, Inc., 622 F. Supp. 62,
10 63 (M.D. Fla. 1985).  In Isaly, the court found defendant's "Polar B'ar" ice cream bar
11 packaging infringed Isaly's Klondike bar packaging and enjoined the "manufacturing,
12 selling, distributing, offering for sale, advertising, promoting, displaying, soliciting and
13 filling orders for or otherwise marketing a five ounce chocolate covered ice cream bar
14 bearing a label, or contained in a tray bearing a label, which features a picture, drawing or
15 other representation of a polar bear" and/or other trade dress similar to the Klondike bar.
16 Isaly Co. v. Kraft, Inc., 619 F. Supp. 983, 997 (M.D. Fla. 1985), aff'd in part, rev'd in part,
17 AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531 (11th Cir. 1986).  The district court stayed the
18 injunction, finding "Defendant would be forced to incur substantial costs in changing its
19 package design and advertising the new changes" upon the injunction taking effect, and
20 "[o]nce these costs are incurred, the Defendant would find little or no value in reverting to
21 its original packaging even if it should prevail on appeal." 622 F. Supp. at 63 (emphasis
22 added).  The court noted that plaintiff "will continue to be injured if the stay is granted" but
23 that "these damages will be compensable should Defendant lose on its appeal." Id.

24          As discussed below, once the Bratz brand is taken over by Mattel, the brand itself
25 will be irrevocably altered and MGA will face substantial difficulties in reasserting control
26 over the brand, resuming production, and reestablishing its relationships with consumers,
27 retailer, distributors, and licensees.[2]  Thus, a stay of the injunctions is critical to ensure that

28 _____
   [2]     Courts also recognize that a stay should be granted where an injunction will leave a gap in
   *(cont'd)*

1  the Bratz brand survives through the appeal.

2  ### 1.   If Given To Mattel, The Bratz Brand Will Lose Its Identity

3  As this Court has acknowledged, "the measurable value to Bratz, the brand Bratz, to
4  the dolls Bratz, to everything that came of it, is so much a function of what Isaac Larian and
5  his team at MGA put into it" over the past eight years.  (11/10/08 Hearing Tr. 60:23-61:2.)
6  Yet, when a brand like Bratz changes hands, it loses the continuity that makes it
7  recognizable in the marketplace and thus loses its value as a brand.  This is particularly true
8  for the transition contemplated here, because Mattel has not been awarded the rights to
9  produce the Bratz brand in its entirety – it has been awarded only a subset of MGA's
10  intellectual property.   The product Mattel would call "Bratz" would necessarily be
11  something different from the one produced by MGA, as Mattel is not entitled to produce
12  any of the products that constitute the Bratz brand currently sold by MGA to consumers.[3]

13  Although Mattel has been granted the copyrights to Carter Bryant's original works as
14  well as MGA's trademarks, Mattel was **not** granted the rights to produce the products MGA

15

16  *(cont'd from previous page)*
   the market by preventing a comparable product from reaching consumers while the appeal is
17  pending. See GTE Prods. Corp. v. Kennametal, Inc., 772 F. Supp. 907, 920 (W.D. Va. 1991)
   (finding stay was favored where defendant introduced evidence of "strong reservations about
18  GTE's ability to adequately supply the demand that Kennametal's departure from the market would
   create" and some question whether plaintiff could market "comparable" product).   Mattel
19  maintains that it does not intend to let the Bratz brand "die" (12/30 Tr. 33:15-16) and that "[t]here
   will be no gap; retailers can have assurances that there will be product on the shelf" (1/5 Tr. 8:21-
20  9:2), but has not and cannot demonstrate that that "product" will be comparable or even similar to
   the MGA Bratz product, as discussed below.
21  [3]   A trademark law, like "Bratz," retains its value only if it is associated with a consistent
   product. See 1 McCarthy on Trademarks and Unfair Competition § 2:15 (4th ed. 2009) ("The fact
22  is that a trademark is merely one of the visible mediums by which the good will is identified,
   bought and sold, and known to the public. ... The recognition of a property interest in trademarks
23  is in reality the law's realization that trademarks are merely symbols of consumer recognition and
   of the incentive to purchase.").  Thus, substantial changes in the nature of the product being sold
24  may constitute abandonment of a trademark – the mark has no value unless it captures the goodwill
   that has been built up around particular goods.  Id. § 17:24 ("Since a trademark is not only a
25  symbol of origin, but a symbol of a certain type of goods or services and their level of quality, a
   substantial change in the nature or quality of the goods sold under a mark may so change the nature
26  of the thing symbolized . . . that the original rights are abandoned.")  The goodwill that is reflected
   in the Bratz trademark is based on the public's expectations of **MGA's** Bratz brand.    A
27  fundamental change in the Bratz brand while it is held by Mattel will mean that MGA must repeat
28  the process of building up goodwill for **its** products if the injunction is overturned on appeal.

1  is enjoined from producing.  (<u>Compare</u> Declaratory Judgment Order at 2-5 (awarding the
2  Bratz drawings and preliminary sculpt purportedly created by Bryant in 1999-2000);
3  Constructive Trust Order at 2 (awarding trademarks, service marks, and domain names
4  containing the terms "Bratz" or "Jade"), <u>with</u> Injunction Order at 2-7 (enjoining MGA use,
5  providing for recall and impoundment).)   Mattel owns the rights to Bryant's original
6  concept drawings of four dolls. (Declaratory Judgment Order at 2-5.)  Mattel may design
7  their own dolls based on those drawings, and may call them "Bratz." (Constructive Trust
8  Order at 2.)  But the fashions, the accessories, and the packaging would have to be Mattel's
9  own, as would any characters beyond the original four.   MGA retains unencumbered
10  intellectual property rights to its packaging (with the exception of a small subset of art (<u>see</u>
11  Injunction Order ¶ 1(e))) and all but the original four Bratz characters (<u>see id.</u> ¶ 1(f)).

12       Moreover, Mattel must create an entirely new universe of products to accompany its
13  new "Bratz."  Mattel has absolutely no rights to the associated, non-infringing products that
14  are an integral part of the Bratz brand, such as the younger versions of the Bratz characters,
15  the male Bratz dolls, the Pixiez, and so forth – those are still MGA's exclusive property.[4]
16  The same is true for all of the products that compose a Bratz doll's universe – Bratz cars,
17  Bratz pets, Bratz furniture.  Mattel would be forced to undertake a wholesale reworking and
18  redevelopment of the products, which would preclude any possibility of brand continuity.

19       The very fact that Bratz would be under Mattel's management would fundamentally
20  change the brand.

21
22
23
24
25
26

27  [4]     <u>See, e.g.</u>, Injunction Order ¶ 1(c)-(d) (excluding Cloe's sister (Ex. 3-277), younger Yasmin
    (Ex. 3-278), younger Alicia (Ex. 4-379), Pixiez (Exs. 5-551-555, 6-556-558, & 6-565.)  <u>See also</u>
28  Dec. 3 Omnibus Order at 10-11 (finding substantial similarity as to dolls that are the embodiments
    of the sculpts in Injunction Order Ex. 1 & 2, <u>i.e.</u>, core female dolls and variants).)



MGA Parties' Motion To Stay Dec. 3 Orders Pending Appeal - Case No. CV 04-9049 SGL (RNBx)



---

[6]     Even if Mattel were capable of preserving the character and success of the Bratz brand, it has no incentive to do so, especially during and pending appeal.  Barbie and Bratz are competing for the same consumers, so any Mattel attempt to exploit Bratz will only injure Barbie███████ ██████████████████████████.)  And since the Ninth Circuit could abruptly restore Bratz to MGA, Mattel's attempts to preserve the Bratz as a successful product line while the appeal is pending might ultimately benefit only MGA, meaning all Mattel's efforts would assist a diehard competitor.  That Mattel would truly strive, pending appeal, to successfully market a product that not only competes with Barbie but that could be returned to an avowed Mattel competitor begs credulity.

1

2

3

4

5

6   **2.   <u>Moving Bratz Back To MGA Would Further Damage The Brand</u>**

7   Little of the damage discussed above could be undone if MGA is successful on

8   appeal, and indeed, transitioning Bratz from Mattel back to MGA will likely wreak even

9   more havoc with the brand.

10

11

12

13

14

15

16

17

18   Even worse, it would impossible for MGA to immediately resume the sale of Bratz –

19   an absence from the market would be inevitable and further undermine MGA's

20   relationships with retailers, distributors, licensees, and consumers.

21

22

23

24

25

26

27

28



MGA Parties' Motion To Stay Dec. 3 Orders Pending Appeal - Case No. CV 04-9049 SGL (RNBx)



As a practical matter, the time and effort necessary to develop and market new Bratz products means that, should the Ninth Circuit overturn the award of Bratz to Mattel, it will be virtually impossible for MGA to restart its production of the Bratz if Mattel takes over in 2010.  MGA will have no time to prepare for the immediate effect of a Ninth Circuit reversal of the Dec. 3 Orders.  Regardless of the stage of development and/or marketing, Mattel can and presumably will immediately abandon the Bratz brand should MGA prevail on appeal, leaving MGA holding the (empty) bag.  For example, MGA's successful appeal will be for naught.

**B.    Without a Stay, MGA Faces Extinction**

A stay is likewise necessary where an injunction threatens to drive a company out of existence, as is often the case where a permanent injunction is granted in an infringement action.  In <u>Standard Havens Products, Inc. v. Gencor Industrials, Inc.</u>, the Federal Circuit stayed enforcement of a permanent injunction in a patent infringement case, explaining that the harm to the defendant absent a stay "would be both catastrophic and irreparable" as the

1  company was "likely to suffer irreparable harm in the form of employee layoffs, immediate
2  insolvency, and, possibly, extinction" – "[w]ithout a stay, [defendant] may well cease to
3  exist."   897 F.2d 511, 515-16 (Fed. Cir. 1990).   Other courts have followed Standard
4  Havens and stayed injunctions in infringement cases where enforcement of the injunction
5  would seriously damage or destroy the appealing defendant's business.   See, e.g., MDY
6  Indus., LLC v. Blizzard Entm't, Inc., 2009 WL 649719, at **2-3 (D. Ariz. Mar. 10, 2009)
7  (staying permanent injunction in copyright infringement case where serious questions were
8  presented because the "Ninth Circuit may choose to reconsider its position on some or all of
9  these [copyright] issues" and infringing company "would likely be put out of business" by
10  the injunction; "[e]ven if the permanent injunction ultimately is eliminated on appeal,
11  [defendants] likely will have lost all of their market share to competitors during the duration
12  of the appeal and will be unable to regain their business"); In re Hayes Microcomputer
13  Prods., Inc. Patent Litig., 766 F. Supp. 818, 822-24 (N.D. Cal. 1991) (staying permanent
14  injunction pending appeal of verdict in willful patent infringement case where court
15  concluded that likelihood that defendants would be "put out of business" – tantamount to "a
16  corporate death penalty" – posed a "serious risk" of irreparable injury).[8]   MGA is already in
17  dire financial straits, and the loss of the Bratz revenues – in addition to the other financial
18  ramifications of the injunction – may well mean the end of the company.

19       Absent a stay pending appeal, MGA is

20

21

22

23

24

25

---

[8]     See also Extreme Networks, Inc. v. Enterasys Networks, Inc., 2009 WL 679602, at *4 (W.D.
26  Wis. Mar. 16, 2009); Humane Soc'y of U.S. v. Cavel Int'l, Inc., 2007 WL 4723381, at *1 (D.C. Cir.
   May 1, 2007); Adv. Med. Optics, Inc. v. Alcon Labs., Inc., 2005 WL 3454283, at **10-12 (D. Del.
27  Dec. 16, 2005); Nat'l Instrums. Corp. v. Mathworks, Inc., 2003 WL 24049230, at *6 (E.D. Tex.
   June 23, 2003); Jake's Ltd. v. Coates, 169 F. Supp. 2d 1014, 1018 (D. Minn. 2001); Wash. Metro.
28  Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977).

1
2
3                                                                                    (Id.)
4        MGA is struggling financially at the present time and every dollar is crucial to
5   MGA's survival
6
7
8
9
10       Moreover, enforcement of the injunctions against MGA may have costs in addition to
11   the loss of revenues.
12
13
14
15
16
17
18       Further complicating MGA's financial condition is
19
20
21
22
23
24
25
26
27
28



Similarly,

MGA Parties' Motion To Stay Dec. 3 Orders Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

1

2

3    There is little doubt that absent a stay permitting MGA to sell and license the Bratz

4    products through appeal, MGA will face

5

6

7

8

9

10

11    Absent a stay,

12

13

14

15

16

17    **III.    MATTEL CANNOT SHOW IT WILL BE EQUALLY HARMED BY A STAY**

18    In contrast to the deprivation of appellate relief and extinction faced by MGA and the

19    Bratz brand, Mattel will suffer no irreparable harm from a stay. As a preliminary matter, it

20    is in Mattel's best interest, if Mattel truly wishes to preserve the brand, to let MGA continue

21    utilizing its expertise and experience in continuing to make Bratz products. Mattel will

22    have to expend nothing on research and development of its line of Bratz products while the

23    stay is in place. But if Mattel assumes ownership of the brand while the appeal is pending,

24    Mattel should be obligated to

25

26    Although the Court has concluded that Mattel will suffer harm based on "past

27    infringement and the high probability of continued acts of infringement" (12/3 Omnibus

28    Order at 13), this "harm" is given little weight in the stay context. Adv. Med. Optics, 2005

1  WL 3454283, at *11 ("While [plaintiff] will lose its right to exclusivity pending appeal and
2  may suffer some injury to its reputation as a company that enforces its patent rights, a
3  temporary stay [pending appeal] is not likely to cause irreparable harm."); GTE Prods. Corp.
4  v. Kennametal, Inc., 772 F. Supp. 907, 920-21 (W.D. Va. 1991) ("the inability to exclude
5  others causes injury in and of itself, however, I find that such injury is not substantial under
6  the present circumstances.").[9]  Furthermore, Mattel does not make any products that utilize
7  the "Bratz" name or the copyrighted works – a fact that weighs heavily against the notion
8  that Mattel will suffer "irreparable" harm while the case is on appeal. See Wang Labs., Inv.
9  v. Toshiba Corp., 1991 WL 333701, at *1 (E.D. Va. Aug. 23, 1991) (citing E.I. Du Pont de
10  Nemours & Co v. Phillips Petrol. Co., 835 F.2d 277, 278 (Fed. Cir. 1987) ("[T]he Court
11  notes that [plaintiff] does not manufacture the patented invention itself and has not
12  represented that it has attempted to exclude others from manufacturing it.  Hence, any harm
13  to [plaintiff] from staying the injunction is less and of a different nature than harm to a
14  patentee who is practicing its invention and fully excluding others.")); Cadence Design Sys.,
15  Inc. v. Avant! Corp., 125 F.3d 824, 828 (9th Cir. 1997) (noting presumption of harm from
16  infringement is rebutted where "plaintiff's copyrighted item is no longer on the market").

17  **IV.  THE PUBLIC INTEREST FAVORS A STAY**

18      As this Court noted, "[t]here is a strong economic interest, especially in these
19  troubled economic times, in maintaining a profitable enterprise as a going concern." (12/3
20  Order at 14.)[10]  As the MGA Parties noted in December, although the Court decided that
21  public interest concerns did not justify denying a permanent injunction, such concerns

---

22  [9]    Mattel's five year delay in seeking an injunction in the first place "suggests that there is, in
23  fact, no irreparable injury." Le Sportsac, Inc. v. Dockside Research, Inc., 478 F. Supp. 602, 609
    (S.D.N.Y. 1979) (denying preliminary injunction); see also Whittier Coll. v. Am. Bar Ass'n, 2007
24  WL 1624100, at *9 (C.D. Cal. May 7, 2007) (18-month delay "rebuts any contention of irreparable
    injury"); Playboy Enters. v. Netscape Commc'ns Corp., 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999)
25  (delay of 60 days); eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1068 (N.D. Cal. 2000)
    ("delay of two years would certainly raise serious doubts as the irreparability of any alleged harm").
26  [10]    See also 2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) (if "destruction or even
    an injunction against distribution will prevent exploitation of economically valuable materials,
27  problem is one of economic waste, certainly if the economic value of the plaintiff's copyright is
    less than the economic costs entailed in the destruction or injunction"); BR Assocs. v. LaFramboise,
28  2007 WL 1840031, at *10 (E.D. Mich. June 26, 2007) (denying injunction that would cause waste).

1 amply support an <u>interim stay</u> of the injunctions pending appeal.  Given current economic
2 conditions, the public interest weighs against impairing a significant California business,
3 stripping struggling state and local governments of tax revenue, and exacerbating the strain
4 on public resources by eliminating hundreds of jobs.  <u>See</u> <u>Concrete Co.</u>, 201 F. Supp. 2d at
5 1195 (public interest favored a stay because "[t]he employees and customers of the
6 company are best served by interactions with a company with stable management control"
7 and "the mere possibility that [the injunction will be reversed] counsels in favor of a stay
8 given the disruption that might otherwise ensue"); <u>U.S. v. 1020 Elec. Gambling Machs.</u>, 38
9 F. Supp. 2d 1219, 1225 (E.D. Wash. 1999) (public interest favored allowing casino
10 employees to retain jobs and "avoid dependence upon government-provided benefits," even
11 though certain casino operations were illegal and provided unfair edge over competitors);
12 <u>see also</u> <u>Bennigan's Franchising Co. v. Swigonski</u>, 2007 WL 603370, at *5 (N.D. Tex. Feb.
13 27, 2007) (public interest favored preserving employee's jobs).

14 Denying a stay will have global repercussions, given the irreparable harm to ▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  These companies, uninvolved in the suit between
16 Mattel and MGA, will ▮▮▮▮▮▮▮▮▮▮
17
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[11]

19 **V.   MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW**

20 "When the request for a stay is made to a district court, common sense dictates that
21 the moving party need not persuade the court that it is likely to be reversed on appeal."
22 <u>Costco Wholesale Corp. v. Hoen</u>, 2006 WL 2645183, at *2 (W.D. Wash. Sept. 14, 2006).
23 The Court may "believe [its] ruling was correct" but still find it presents "serious legal
24 questions."  <u>Davila v. County of San Joaquin</u>, 2008 WL 4426669, at *2 (E.D. Cal. Sept. 26,
25 2008); <u>see also</u> <u>Azurin v. Von Raab</u>, 792 F.2d 914, 915 (9th Cir. 1986).  MGA carries its

26 _____
27 [11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  burden here by showing the Court "ruled on an admittedly difficult legal question." <u>Pac.</u>
2  <u>Merch. Shipping Ass'n v. Cackette</u>, 2007 WL 2914961, at \*\*1-2 (E.D. Cal. Oct. 5, 2007);
3  <u>Friends of Yosemite Valley v. Kempthorne</u>, 2007 WL 896154, at \*2 (E.D. Cal. Mar. 22,
4  2007).  Where the legal issues raise "difficult questions of law and policy" or "there [is] no
5  Ninth Circuit authority directly on point," a stay is proper.  <u>Himebaugh v. Smith</u>, 476 F.
6  Supp. 502, 510 (C.D. Cal. 1978); <u>Friends of Yosemite Valley</u>, 2007 WL 896154, at \*2.

7  **A.  <u>Substantial Legal Issues Arise From The Permanent Injunction Order</u>**

8       As discussed in the MGA Parties' December 2008 motion for a stay, MGA
9  respectfully submits that the Court's decision to enjoin the sale of all Bratz-related products
10 presents several substantial legal questions for appeal.  (Dec. 11 Mot. for Stay (Dkt 4465) at
11 11-16.)  Two issues are particularly compelling, as they involve important legal questions
12 that either conflict with, or are at least unaddressed by the Ninth Circuit.  The first is the
13 Court's decision to undertake its own copyright analysis.  The Ninth Circuit has held that
14 "in a case where legal claims are tried by a jury and equitable claims are tried by a judge,
15 and the claims are based on the same facts, in deciding the equitable claims the Seventh
16 Amendment requires the trial judge to follow the jury's implicit or explicit factual
17 determinations," and that, in the case of a general verdict, the Court should draw whatever
18 inferences it can from the jury's damages award.  <u>Los Angeles Police Protective League v.</u>
19 <u>Gates</u>, 995 F.2d 1469, 1473-74 (9th Cir. 1993) (court bound by jury's implicit finding that
20 police officer had been wrongfully discharged because "[the jury] could not have awarded
21 the level of damages it awarded without finding that Gibson would not have been
22 discharged except for his refusal to be illegally searched").

23      Here, however, the Court held that no "principled inferences" could be drawn from a
24 general verdict except "[w]here a jury returns a monetary award based on a particular piece
25 of evidence such as an expert report."  (Dec. 3 Omnibus Order at 10.)  The MGA Parties
26 respectfully submit that the Court's analysis is inconsistent with precedent and that under
27 the Seventh Amendment the Court should have found that the *de minimus* copyright
28 damages award precluded a finding that MGA's products significantly infringed Mattel's

1   copyrights.  At the very least, the Court's narrow reading of the Seventh Amendment and
2   broad exercise of its equitable powers raises a serious question for the Ninth Circuit.

3       The Court's irreparable injury analysis differs from that of other district courts and
4   also raises a serious legal issue.  In the wake of the Supreme Court's decision in eBay Inc. v.
5   MercExchange, L.L.C., 547 U.S. 388 (2006), the showing of irreparable harm needed to
6   support a permanent injunction in an infringement action is one on which district courts
7   have taken divergent positions that the Ninth Circuit has not yet resolved.  (Dec. Omnibus
8   Order at 12 (noting that it is an "open question").)  Here, the Court found irreparable harm
9   based on the fact that the MGA Parties had infringed Mattel's copyrights in the past and
10  "remain steadfast in their intention to continue to produce their infringing products." (Id. at
11  13.)  In doing so, the Court followed the decision in Designer Skin, LLC v. S & L Vitamins,
12  Inc., 2008 WL 4174882 at *5 (D. Ariz. Sept. 5, 2008), which found that – even post-eBay –
13  past infringement combined with likely future infringement amounted to irreparable harm.
14  (Id. at 12.)  The Court further found that the MGA Parties' lost profits counted for little in
15  the balance of equities even though they created considerable hardship.  (Id. at 13-14.)

16      Other Ninth Circuit district courts have found that such an approach runs afoul of
17  eBay.  The court in Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, for example, found
18  that such an approach is tantamount to presuming injury – precisely what the eBay decision
19  ordered courts not to do.  518 F. Supp. 2d 1197, 1211 n.13 (C.D. Cal. 2007).  More recently,
20  another court opined that "where infringement is not willful, … the potential destruction of
21  an infringer's business should carry some weight in the balancing of harms under the four-
22  factor test reaffirmed in eBay.  To ignore the harm to the infringer … runs contrary to
23  eBay's mandate to 'consider[] the balance of hardships between the plaintiff and
24  defendant[.]'" Hynix Semiconductor, Inc. v. Rambus, Inc., 2009 WL 440473, at *15 (N.D.
25  Cal. Feb. 23, 2009).  Still other courts have focused on the requirement that the injury be
26  one that is not compensable by money damages, an issue not considered at length here.  See,
27  e.g., Adv. Cardiovascular Sys., Inc. v. Medtronic, Inc., 2008 WL 4647384, at *10 (N.D. Cal.
28  Oct. 20, 2008) (rescinding pre-eBay injunction where "ending the injunction might result in

1 | some market share loss" but "nothing suggests that this loss could have any significant
2 | effect on the continued ability of the plaintiff to effectively compete … or to continue to
3 | invest in relevant research and development," noting "[o]ther courts have denied injunctions
4 | where companies were as large as these and where money damages were available"). The
5 | MGA Parties maintain that these cases reflect the proper interpretation of the Supreme
6 | Court's eBay holding. In any event, absent Ninth Circuit guidance and given the district
7 | courts' varied approaches to the post-eBay inquiry, there can be no question that the Court's
8 | harm determination constitutes a substantial legal issue that is ripe for review.

9 |
10 |
**B.** **Substantial Legal Issues Arise From The Constructive Trust and Declaratory Relief Orders**

11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
The Constructive Trust and Declaratory Relief Orders also create substantial legal questions for examination on appeal, as discussed in the MGA Parties' previous motion to stay. (Dec. 11 Mot. for Stay at 16-19.) In awarding a constructive trust over MGA's trademarks, the Constructive Trust Order granted trademark rights in a situation that would not otherwise confer them. A person who invents a potential trademark has no exclusive rights to its use, only actual use creates a property right. Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046, 1052 (9th Cir. 1999). This Court's ruling circumvents that standard, finding that while a person who invents a potential trademark has no exclusive rights to its use, he may assign his right to another, and that act creates a protectible interest. Though neither federal trademark law nor California contract law establish the rights Mattel has claimed, their interaction has led the Court to this novel conclusion. As MGA established in December, the Declaratory Relief Order likewise involves California contract law concerning rights to ideas, and the interplay of that law with federal intellectual property law – specifically, copyright. The Court's orders chart new territory in intellectual property law and present substantial legal questions for review.

26 |
**C.** **Substantial Legal Issues Arise From Inextricably Intertwined Orders Underlying the 12/3 Orders**

27 | The MGA Parties in their December 2008 stay papers also demonstrated at length the
28 | many other serious legal questions raised by a number of orders that are inextricably

1  intertwined with the 12/3 Orders.  (See Dec. 11 Mot. for Stay at 19-25.)  Given that the
2  parties already briefed those issues at length, and the Court's rulings since that time have
3  not changed in any material aspect the nature of the arguments, and to avoid needlessly
4  wasting the Court's and the parties' time and effort simply repeating their prior briefs, the
5  MGA Parties incorporate by reference their prior arguments concerning orders other than
6  the 12/3 Orders and are prepared for the Court to simply refer to the parties' prior briefing
7  of those issues, which they contend establish a number of additional serious legal questions.

8  **VI.    IF NECESSARY, A BOND COULD PROTECT MATTEL'S INTERESTS**

9       Although the MGA Parties submit that the Court should issue a stay without any
10  security, as it did in December, the MGA Parties nonetheless are prepared to post a bond for
11  the duration of the stay to protect Mattel's claimed interests.  Specifically, the MGA Parties
12  are prepared to post a bond equal to

13
14                                                                      [12]  To assist the
15  Court in determining an appropriate bond, the MGA Parties offer
16
17                                                                         .

18       Courts seeking to fashion an appropriate security in cases such as this often look to
19  determine what would be an appropriate royalty relating to the profits accruing from the
20  sale of infringing portions of the products.  In re Hayes, 766 F. Supp. at 823; see also
21  Standard Havens, 897 F.2d at 516; Adv. Med. Optics, 2005 WL 3454283, at *12; Cargill,
22  2004 WL 3507329, at *13.  In effect, the royalty represents the portion of profit derived by
23  a defendant's use of copyrighted materials owned by the plaintiff.  At trial, both Mattel and
24  MGA presented apportionment evidence that essentially quantified the portion of Bratz

25  _____
   [12]
26
27
28

1 profits attributable to infringement as opposed to MGA's own efforts.  This analysis can be

2 used to determine the portion of Bratz profits going forward that constitutes an appropriate

3 bond to protect Mattel's interests.

4       To calculate an appropriate bond, the first step

13    According to industry reports

14    Bratz



**VII.   A STAY IS URGENTLY NEEDED**

The MGA Parties request that their request be considered on an expedited basis so that they may seek reconsideration in the Ninth Circuit if their request is denied and still produce and deliver its Spring 2010 products in a timely fashion if the stay is ultimately granted. As discussed above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (See Section II.A.2.) In June, MGA will have to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, as discussed

---

[15] It must be noted that MGA does not agree ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 || above, every day the uncertainty continues ███████████████████████████████

2 || ██████████████████████. (See id., Section II.A.1.)

3 ||     Even more importantly, the MGA Parties need resolution of their request for stay to

4 || ensure that there is in fact a market for their products and a network willing to get them to

5 || the public.  Mattel and the Temporary Receiver have stipulated to the mailing and posting

6 || of recall notices on May 19, 2009.  (Stip. (Dkt 5339).)  These recall notices will undermine

7 || MGA's attempts to market its Spring 2010 line and cause untold damage to its sales, to say

8 || nothing of the reaction MGA will face from its vendors, distributors, and licensees.  The

9 || Court has relieved the parties from posting those notices until the matter is considered at the

10 || May 18, 2009 hearing.  (Minute Order (Dkt 5367).)  It is the MGA Parties' hope that these

11 || notices will not be posted until this Court, and if needed, the Ninth Circuit, rules on their

12 || motion to stay.  In the event that they are, every day that they are allowed to stand will do

13 || further injury to MGA's already precarious financial condition and contractual relationships.

14 ||                                **CONCLUSION**

15 ||     For the foregoing reasons, the MGA Parties respectfully request that enforcement of

16 || the December 3 Orders be stayed pending appeal.

17 || DATED:  May 8, 2009          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

18

19 ||                     By:  _____ /s/ Thomas J. Nolan _____

20 ||                                    Thomas J. Nolan
                                 Attorneys for the MGA Parties

21

22

23

24

25

26

27

28