# EXHIBIT 1

# Barbie acaba con las Bratz, se van de México

Finalmente la empresa juguetera Mattel, que encabeza en México Roberto Isaías, le ganó la partida a su competidora MGA Entertainment, que en nuestro país encabeza Susana Kuenmoerle.

El desenlace por la paternidad entre MGA y Mattel por las famosas muñecas Bratz termina en que MGA cerrará sus oficinas en México, las ventas que obtuvo el año pasado fueron cercanas a los 40 millones de dólares, contra aproximadamente 15 de este año.

MGA dejará sólo a tres empleados, el resto serán liquidados y bajará la cortina, el número de despidos alcanza los 100 trabajadores y generaba algo así como 500 empleos indirectos.

Los tres empleados que no serán liquidados son Pablo Yarbas, Gustavo Machado y Mariana Tuela, la trascendencia de estos personajes es que ellos trabajaban para Mattel que el primero de ellos llegó a Susana fuerte para sustituir a Kuenmoerle al mando de MGA en el país.

## EL NEGOCIO DE LAS PILAS EN EL DF

La Secretaría del Medio Ambiente del Gobierno del Distrito Federal que conduce Martha Delgado impulsa un programa de reciclaje de pilas, pero el argumento de que éstas contaminan lo que los principales participantes del mercado niegan, y argumentan, con, que pueden que de lo que se trata es de realizar el problema del mercado llega: las pilas alcalinas que rebasan más de 20 marcas de dudosa procedencia, la mayoría de país, y que éstas sí contaminan.

De acuerdo con estudios de la UNAM de José Narros del IPN de Enrique Villa, las pilas alcalinas que se comercializan en México no contienen sustancias tóxicas ni derraman líquido, tóxico al medio ambiente, por lo que no deben un programa de recolección apropio, pues no es sustentable ni ambiental ni económicamente.

Hablamos de sustancias como níquel, cadmio y mercurio, las cuales la industria formal aguarda a la Prevexplis de Daniel Basurto, que conforman Sony, Energizer, Duracell y Eveready, dejó de utilizar desde la década de los 90, por lo que son catalogadas como residuos sólidos urbanos y no como residuos de manejo especial.

La Secretaría de Hacienda de Agustín Carstens, Economía de Gerardo Ruiz Mateos y el INEGI de Eduardo Sojo, tienen registrado que fabrica el 2008 más de 80% de pilas que se importaron son fabricadas con sustancias seguras para el medio ambiente de acuerdo con estudios científicos de universidades de Canadá, Japón, EUA y Bélgica.

La mayor parte de las pilas que se consumen en México (80%) están elaboradas con dióxido de manganeso, carbón cinc y litio, sustancias que sustituyeron a las materias primas biodisponibles, no dañan los mantos acuíferos, el suelo y el aire.

El problema real es la piratería y el mercado de impuestos de los que controlan este negocio, el cual además de encontrar uno de sus principales mercados en la ciudad de México, genera ganancias de más de 200 millones de dólares.

De acuerdo con las autoridades de Medio Ambiente de Martha Delgado, el programa lo pretende impulsar y Martha Bibles Urbanos de Gerardo Cándamo como parte de su campaña de responsabilidad social, cuando la realidad es que esta empresa comercial, Los espacios publicitarios de las 200 columnas informativas que funa en la ciudad de México.

Recientemente la Secretaría del Medio ambiente informó que este columnas lo que pretende al zonozo de pilas era, entre otras cosas crear a entrar una práctica social de cuidado del medio ambiente entre la ciudadanía, ojalá que esto sirva, pero ojo, se como objetivo de separar la basura para que se reutilicen el basurero de nueva cuenta. Esto sólo se educar a los ciudadanos a desechar a

Finally, the Mattel toy company, headed in Mexico by **Roberto Isaías**, won the game against its competitor, MGA Entertainment, managed in our country by **Susana Kuemmerle**.

The outcome of the paternity suit between MGA and Mattel for the famous Bratz dolls ends with MGA closing its offices in Mexico. Last year, sales were close to $40 million, versus approximately 15 [million] this year.

MGA will leave only three employees, terminating the others; the show is over. The number of layoffs is 100 employees. The company used to generate about 500 indirect jobs.

The three employees who will not be terminated are **Pablo Vargas, Gustavo Machado and Mariana Tueba**. The significance of these characters is that they worked for Mattel, and the first of them was suggested as a replacement for Kuemmerle at the head of MGA in the country.

## Barbie does away with the Bratz dolls; they are leaving Mexico

### THE BUSINESS OF BATTERIES IN THE FD

The Ministry of the Environment of the Federal District, led by **Martha Delgado** is promoting a battery recycling program with the argument that they pollute, which the main market players deny, arguing that the idea is to eradicate the problem of the illegal market for alkaline batteries which exceeds 20 brands of dubious origin in the capital, and that these are the ones that pollute.

According to UNAM studies UNAM of **José Narro** and IPN studies of **Enrique Villa**, the alkaline batteries marketed in Mexico do not contain toxic substances nor do they leak toxic liquid into the environment, so they do not require a recycling or collection program, which is not sustainable either environmentally or economically.

We are talking about substances such as nickel, cadmium and mercury, which the formal industry grouped into Emexpilas managed by **Daniel Basurto**, and including Sony, Energizer, Duracell and Eveready, stopped using since the '90s, so that they are classified as municipal solid waste and not as waste requiring special handling.

The Ministry of Finance headed by **Agustín Carstens**, the Ministry of Economy headed by **Gerardo Ruiz Mateos**, and INEGI headed by **Eduardo Sojo**, recorded that in 2008 over 80% of batteries that were imported were manufactured with substances that are safe for the environment according to scientific studies conducted by universities in Canada, Japan, USA and Belgium.

Most batteries consumed in Mexico (80%) are made with manganese dioxide, carbon-zinc and lithium, substances which, since they do not leach and are not bioavailable, do not damage the groundwater, soil and air.

The real problem is piracy and zero taxes for those who control this business; in addition to finding one of its major markets in Mexico City, it generates profits of over $200 million.

According to Environmental authorities, headed by Martha Delgado, the program is sponsored by Imagenes y Muebles Urbanos managed by **Gerardo Cárdano** as part of their social responsibility campaign, although in reality, this company sells advertising spaces in the 280 publications existing in Mexico City.

Recently, the Ministry of the Environment informed this columnist that the collection of batteries was, in part, intended to generate a social practice of caring for the environment among the public; hopefully, this will be useful, but, careful, it is like separating the garbage just to throw it together in the dump again... far from educating the public, it is discouraging. ∎

EXHIBIT_____1

PAGE_____3



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
ORLANDO
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Hyojin Park, hereby certify that the document, "Barbie does away with the Bratz dolls; they are leaving Mexico" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Hyojin Park

Sworn to before me this

1st day of May 2009

Signature, Notary Public

Katharine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 2011
Stamp, Notary Public

EXHIBIT ____1____

PAGE ____4____

# EXHIBIT 2

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br><br>CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 22, REGARDING:**<br><br>**(1) MOTION FOR ISSUANCE OF LETTERS OF REQUEST;**<br><br>**(2) MOTION TO COMPEL CONSENT TO PRODUCTION OF ELECTRONIC MAIL MESSAGES;**<br><br>**(3) MOTION FOR RECONSIDERATION OF DECEMBER 31, 2007 ORDER; and**<br><br>**(4) MOTION OBJECTING TO PORTIONS OF FEBRUARY 15, 2008 ORDER** |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____

PAGE _____5_____

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    This Order sets forth the Discovery Master's ruling on the following

2  discovery matters: (1) the motion for issuance of letters of request filed by Mattel,

3  Inc. ("Mattel") ("Letter of Request Motion") [Docket No. 4721]; (2) the motion to

4  compel Carlos Gustavo Machado Gomez to consent to production of electronic

5  mail messages filed by Mattel ("Motion To Compel") [Docket No. 4884]; (3) the

6  motion for reconsideration of portions of the prior discovery master's December 31,

7  2007 order filed by Mattel ("Motion for Reconsideration") [Docket No. 4948]; and

8  (4) the motion objecting to portions of the prior discovery master's February 15,

9  2008 order regarding Mattel's motion to compel responses to interrogatories by

10  MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico,

11  S.R.L. De C.V. and Isaac Larian ('MGA Parties") filed by Mattel ("Objection

12  Motion") [Docket No. 4717] (collectively, the "Motions").

13    The Motions came on regularly for hearing before the Discovery Master on

14  April 27, 2009.  All interested parties were represented by counsel and afforded the

15  opportunity to present oral argument on the Motions.  The Discovery Master,

16  having considered the papers filed in support of and in opposition to the Motions,

17  and having heard oral argument, rules as set forth below.

18  **I.    MATTEL'S LETTER OF REQUEST MOTION**

19    The Discovery Master first addresses Mattel's Letter of Request Motion.

20    **A.    The Order Referring The Letter Of Request Motion To The**

21      **Discovery Master**

22    The Court referred Mattel's Letter of Request Motion to the Discovery

23  Master for disposition on or about March 12, 2009.  (*See* Minute Order dated

24  March 12, 2009).

25    **B.    The Relief Sought By Mattel**

26    Mattel requests that the Discovery Master issue an order recommending that

27  the Court execute a letter of request for international judicial assistance.  (*See*

28  Proposed Order filed in Support of the Letter of Request Motion).  Specifically,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____      - 1 -        ORDER NO. 22
PAGE _____6_____              [Case No. CV 04-09049 SGL (RNBx)]

1    Mattel seeks a letter of request "for the purpose of taking the deposition . . . of

2    Janine Brisbois ["Brisbois"] and MGA Canada."  (Letter of Request Motion, p. 1).

3    "Mattel further requests [that] the Letter of Request provide for the production of

4    documents by . . . Brisbois and MGA Canada."  (Id.).

5        **C.    The MGA Parties' Opposition**

6        The MGA Parties oppose the motion on two basic grounds.  First, the MGA

7    Parties argue that Document Request Nos. 7, 9 and 10 concerning both Brisbois and

8    MGA Canada are overbroad and/or unduly burdensome.  (Opposition to Letter of

9    Request Motion, pp. 2 – 5).  Second, the MGA Parties argue that both of the

10   persons most knowledgeable categories directed at MGA Canada are

11   incomprehensible and inappropriate.  (Id., pp. 6 – 8).

12       **D.    Legal Standard**

13       Under Federal Rule of Civil Procedure 28(b)(1), a "deposition may be taken

14   in a foreign country . . . under a letter of request, whether or not captioned a 'letter

15   rogatory.'"  Further, Rule 28 provides for the issuance of a letter of request "on

16   appropriate terms after an application and notice of it . . ."  (Fed R. Civ. Pro.

17   28(b)(2)).

18       **E.    Analysis**

19           **1.    The MGA Parties Have Not Challenged Several Aspects Of**

20                 **Mattel's Proposed Letter Of Request**

21       As a preliminary matter, the Discovery Master notes that the MGA Parties do

22   not question the authority of the Court to issue Mattel's proposed letter of request

23   under Rule 28.  Nor do the MGA Parties object to the form of the letter concerning

24   the six categories on which Mattel proposes to examine Brisbois.  The MGA Parties

25   likewise do not object to Document Request Nos. 1 – 6 and 8 with respect to either

26   Brisbois or MGA Canada.  Because they have not challenged the aforementioned

27   aspects of Mattel's proposed letter of request, the MGA Parties have implicitly

28   conceded that a letter of request may be issued in some form.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____        - 2 -        ORDER NO. 22
                                [Case No. CV 04-09049 SGL (RNBx)]
PAGE ____7____

2.     **The Document Requests Challenged By The MGA Parties**

The MGA Parties object to Document Request Nos. 7, 9 and 10 directed to Brisbois.  (Opposition to Letter of Request Motion, pp. 2 – 3).  Because they are almost identical to the same numbered requests for Brisbois, the MGA Parties also object to Document Request Nos. 7, 9 and 10 directed to MGA Canada.

a.     **Document Request No. 7 Directed To Brisbois And Document Request No. 7 Directed To MGA Canada**

Document Request No. 7 directed to Brisbois and the same numbered document request directed to MGA Canada request all personnel files created or maintained by MGA Canada concerning Brisbois.  Specifically, they request the following information:

- Request for Production No. 7 to Brisbois: "A copy of each personnel file maintained or created by MGA RELATING TO Brisbois." (Reply in Support of Letter of Request Motion, p. 2).

- Request for Production No. 7 to MGA Canada: "A copy of each personnel file maintained or created by YOU RELATING TO Brisbois." (*Id.*).

The two requests are collectively referred to below as "Document Request No. 7."

(1)     **Document Request No. 7 Seeks Information Relevant To Phase 2**

The MGA Parties first argue that Document Request No. 7 is overbroad because it "seek[s] private confidential information with no conceivable relevance to this case . . . ." (Opposition to Letter of Request Motion, pp. 2 and 4).  However, the Discovery Master recently ruled that Mattel's request for personnel files of individuals who work at MGA Entertainment, Inc. ("MGA") and who formerly worked for Mattel were reasonably calculated to lead to the discovery of admissible evidence. (Order No. 6, pp. 3 – 6).  The same reasoning supporting the Discovery

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___2___

PAGE ___8___

- 3 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

Master's Order No. 6 applies to any personnel files MGA Canada created or maintained for Brisbois.

The plain language of Mattel's Second Amended Answer and Counterclaims ("SAAC") confirms that any personnel files MGA Canada created or maintained concerning Brisbois bear some relation to the issues to be adjudicated in Phase 2. Brisbois is expressly identified in the SAAC as one of the former Mattel employees who allegedly misappropriated Mattel's trade secrets and other confidential information. (*See, e.g.,* SAAC, ¶¶ 4, 71 – 76, 89, 90, 97, 99, 107 and 123). For example, the SAAC alleges as follows:

- "In 2005, MGA needed help in Canada. So MGA, again operating from its Southern California headquarters, hired Janine Brisbois from Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys 'R Us ('TRU') and Wal-Mart. MGA gave her responsibility for those same accounts, and she took from Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States. Eliminating any doubt that MGA then proceeded to use those stolen materials, Brisbois subsequently accessed and modified certain of those documents while employed by MGA." (*Id.,* ¶ 4).

- "Mattel subsequently learned that . . . four days before she resigned, Brisbois copied approximately 45 Mattel documents on to a USB or 'thumb' drive with the volume label 'BACKPACK.' On information and belief, Brisbois removed the thumb drive from Mattel's Canada office by concealing it in her backpack or gym bag the last time that she left that office. These documents contained Mattel trade secret and proprietary information . . . ." (*Id.,* ¶ 74).

- "After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____          - 4 -          ORDER NO. 22
                                             [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 9 _____

1    authorities.  Canadian law enforcement authorities recovered from

2    Brisbois a thumb drive with the volume label 'BACKPACK' containing

3    the documents that Brisbois had copied from Mattel's computer system.

4    Mattel later learned that while she was working as a Vice President of

5    Sales at MGA, Brisbois accessed and modified documents on that thumb

6    drive."  (*Id.*, ¶ 75).

7        In light of these allegations, any personnel file created or maintained by

8    MGA Canada relating to Brisbois is relevant to Phase 2 and discoverable under

9    Federal Rule of Civil Procedure 26, subject to the limitations set forth below.

10                **(2)    The MGA Parties' Privacy Objections Are**

11                        **Resolved By The Protective Order And Mattel's**

12                        **Limitation Of Its Requests**

13        The MGA Parties next claim Document Request No. 7 is overbroad because

14    it seeks "medical and insurance" information.  (Opposition to Letter of Request

15    Motion, pp. 2 and 4).  However, this contention is unpersuasive for two reasons.

16        First, a protective order has been entered in this case and will act as a

17    safeguard to protect any private information.  (*See, e.g., Nakagawa v. Regents of*

18    *Univ. of Cal.*, 2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) [ordering

19    production of personnel files and stating "[a]ny other privacy concerns defendant

20    may have should be addressed by a protective order"]; *Grinzi v. Barnes*, 2004 WL

21    2370639, *1 (N.D. Cal. Oct. 20, 2004) ["The proper mechanism for an employer to

22    use to protect an employee's privacy interest in his personnel file is to obtain, either

23    by stipulation or motion, a properly crafted protective order under Rule 26(c)"];

24    *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

25    30, 2007) ["The court has already analyzed these non-party privacy rights, and the

26    protective order should serve to remedy any concern in this regard."]; *Walton v. K-*

27    *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ["In view of the

28    employees' privacy interests, documents shall be produced pursuant to an

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____          - 5 -          ORDER NO. 22
                                          [Case No. CV 04-09049 SGL (RNBx)]

PAGE ____10____

1   attorneys' eyes only protective order."]; *Keller-McIntrye v. Coll. Of Health &*

2   *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) [ordering

3   production of employee information, pursuant to a protective order, despite privacy

4   claims under California law]).

5       Second, and more importantly, Mattel has revised its letter of request to

6   specifically exclude "any portions [of Brisbois' personnel file] solely related to

7   medical or healthcare information." (Reply in Support of Letter of Request Motion,

8   p. 3 and Ex. A thereto at pp. 19 and 24). By virtue of this limitation, Mattel has

9   rendered the privacy objection raised by the MGA Parties moot.

10      Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master will further narrow Document Request

12  No. 7 to exclude any social security numbers, tax identification numbers, dates of

13  birth, indication of sexual orientation, bank account numbers, and checking account

14  numbers that may be included within the requested personnel file prior to

15  production, as Mattel has not made a showing at this time that such discrete

16  personal information is reasonably calculated to lead to the discovery of admissible

17  evidence.

18          **b.    Document Request No. 9 Directed To Brisbois And**

19                  **Document Request No. 9 Directed To MGA Canada**

20      The MGA Parties also object to Document Request No. 9 directed to Brisbois

21  and the same numbered document request directed to MGA Canada. (Opposition to

22  Letter of Request Motion, pp. 2 – 5). The requests seek the following information:

23  • Request for Production No. 9 to Brisbois: "ALL DOCUMENTS

24      RELATING TO COMMUNICATIONS between Brisbois, on the one

25      hand, and Toys 'R US or Wal-Mart on the other, or anyone acting on

26      behalf of Toys 'R Us or Wal-Mart, between September 7, 2005, and

27      January 1, 2007, including but not limited to her COMMUNICATIONS

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____        - 6 -         ORDER NO. 22
                                 [Case No. CV 04-09049 SGL (RNBx)]

PAGE _____11_____

1    with Toys 'R Us or Wal-Mart about promotions of MGA products." (*Id.*,

2    p. 2).

3    • Request for Production No. 9 to MGA Canada: "ALL DOCUMENTS

4    RELATING TO COMMUNICATIONS between YOU, on the one hand,

5    and Toys 'R US or Wal-Mart on the other, or anyone acting on behalf of

6    Toys 'R Us or Wal-Mart, between September 7, 2005, and January 1,

7    2007, regarding Ms. Brisbois or Ms. Brisbois' responsibility for the Toys

8    'R Us or Wal-Mart promotions or advertising for MGA products." (*Id.*, p.

9    4).

10    The two requests are collectively referred to below as "Document Request

11   No. 9."

### (1)    The Requests Are Not Overbroad

13   The MGA Parties assert that Document Request No. 9 is overbroad because it

14   is not limited to products "at issue in this litigation." (*Id.*, pp. 2 and 4). But Mattel's

15   Phase 2 claims are not linked to a single discrete product or even multiple products.

16   As the Discovery Master explained in Order No. 6, the issues to be litigated in

17   Phase 2 include, among other things, Mattel's claim that MGA stole "a vast array of

18   trade secrets and other confidential information that comprise Mattel's intellectual

19   infrastructure." (SAAC, ¶ 20). Mattel further alleges in its SAAC that MGA:

20    • "engaged in a pattern of stealing and using [Mattel's] property and trade

21    secrets," (*Id.*, ¶ 1);

22    • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23    advertising and strategy, not only for Canada, but the United States and

24    the rest of the world," (*Id.*, ¶ 70);

25    • "took from Mattel documents containing proprietary advertising, project,

26    sales, customer and strategy information for not only Canada, but for the

27    United States," (*Id.*, ¶ 4); and

28   //

1      • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

2          employees to steal Mattel's confidential information or other property and

3          take it with them to MGA," (*Id.*, ¶ 5).

4      Because this is not a case where Mattel has alleged that the MGA Parties

5  stole a specific product or group of products, but rather an instance where Mattel

6  alleges that the MGA Parties engaged in a massive and pervasive theft of Mattel's

7  proprietary information and trade secrets, Document Request No. 9 is reasonably

8  calculated to lead to the discovery of admissible evidence.

9                    **(2)    The Protective Order Resolves Any**

10                              **Confidentiality Issues**

11     The MGA Parties next assert that Document Request No. 9 seeks

12  confidential business information and trade secrets concerning MGA's products.

13  (Opposition to Letter of Request Motion, pp. 2 – 4).  But any such concern is

14  resolved by the protective order.

15                  **(3)    The Requests Seek Information Relevant To**

16                              **Phase 2**

17     Finally, the MGA Parties argue that Document Request No. 9 is overbroad

18  because it is "not linked to any of the legal or factual issues in this case."  (*Id.*, pp. 3

19  and 4 [emphasis omitted]).  This contention is not supported by the record.  As

20  explained above, Brisbois is identified in the SAAC as one of the principal actors

21  engaged in MGA's alleged scheme of wrongdoing.  (*See, e.g.,* SAAC, ¶¶ 4, 71 –

22  76, 89, 90, 97, 99, 107 and 123).  In fact, the SAAC alleges that MGA lured

23  Brisbois away from Mattel, gave her responsibility for the same accounts she was

24  previously handling there (i.e., Toys 'R Us and Wal-Mart), and misused "Mattel

25  documents containing proprietary advertising, project, sales, customer and strategy

26  information for not only Canada, but for the United States," (*id.*, ¶ 4), including

27  stealing Mattel documents that contained:

28          the price, cost sale plan and quantity of every Mattel product

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____          - 8 -                    ORDER NO. 22
                                                   [Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 13

1    ordered by every Mattel customer in 2005 and 2006; the BARBIE

2    television advertising strategy and information concerning sales

3    increase generated by television advertisements; competitive

4    analysis of Mattel vis-à-vis its competitors in Canada; an analysis

5    of Mattel's girls' business sales beginning in 2003 and the

6    forecasts through 2006; profit and loss reviews for Mattel's

7    products being sold in Wal-Mart, including margins and profits in

8    not only Canada but the United States and Mexico; and a

9    document containing product launch dates and related advertising

10   for all Mattel new products between Fall 2005 and Spring 2006.

11   (*Id.*, ¶ 74).  Therefore, Mattel's requests for Brisbois' communications with Toys

12   'R Us and Wal-Mart and the other information requested by Document Request No.

13   9 relates to Phase 2 issues and is discoverable.

                    c.      **Document Request No. 10 Directed To Brisbois And**

                            **Document Request No. 10 Directed To MGA Canada**

16       The MGA Parties final set of document request objections relate to Document

17   Request No. 10 directed to Brisbois and the same numbered request directed to

18   MGA Canada.  These requests seek the following information:

19   •   Request for Production No. 10 to Brisbois:  "ALL DOCUMENTS,

20       including but not limited to all COMMUNICATIONS with any PERSON,

21       created by Brisbois while employed by MGA RELATED TO MGA's

22       marketing of products that compete with Mattel's products, recruiting or

23       attempting to recruit Mattel's employees, or the theft of Mattel trade

24       secrets, confidential or proprietary information."  (Reply in Support of

25       Letter of Request Motion, p. 7).

26   •   Request for Production No. 10 to MGA Canada:  "ALL DOCUMENTS,

27       including but not limited to all COMMUNICATIONS with any PERSON,

28       created by Brisbois while employed by MGA RELATED TO MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____2_____

PAGE_____14

1    marketing of products that compete with Mattel's products, recruiting or

2    attempting to recruit Mattel's employees, or the theft of Mattel trade

3    secrets, confidential or proprietary information." (*Id.*).

4    The two requests are collectively referred to below as "Document Request

5    No. 10."

6    **(1)    The Requests Are Not Overbroad Or Vague**

7    The MGA Parties initially contend that Document Request No. 10 is

8    overbroad and vague because it "seek[s] every document created by Brisbois

9    related to marketing" and "[n]ot every MGA product that may at some level

10   'compete' with some Mattel product is at issue in this case." (Opposition to Letter

11   of Request Motion, pp. 3 and 5). However, each of these arguments ignores a

12   critical component of the SAAC. The SAAC does not allege that MGA stole trade

13   secrets related to one specific product or even multiple products. Instead, it alleges

14   that MGA (through Brisbois and others) also stole Mattel's "proprietary business

15   methods, practices and information." (SAAC, ¶ 20). Given that the SAAC alleges

16   that the MGA Parties engaged in the wholesale theft of Mattel's trade secrets, not

17   just products, and Mattel alleges that such information was used unlawfully by

18   MGA to compete in Canada and elsewhere, (*see, e.g., id.*, ¶¶ 4 and 70), Mattel is

19   entitled to discover how MGA marketed its products through MGA Canada and the

20   methods it used to do so.

21   Document Request No. 10 is not only relevant to Phase 2 issues but

22   reasonably tailored to defeat any claim of vagueness or overbreadth, since the

23   request only seeks documents created by Brisbois when she worked for MGA

24   involving MGA's "marketing of products that compete with Mattel's products,

25   recruiting or attempting to recruit Mattel's employees, or the theft of Mattel trade

26   secrets, confidential or proprietary information." (Reply in Support of Letter of

27   Request Motion, p. 7). Because Document Request No. 10 is limited in time as

28   well as scope, and tied to a single individual, it "adequately describe[s] the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  2

PAGE  15

1    requested materials." (*Boyer v. Gildea*, 2008 WL 4911267, *7 (N.D. Ind. Nov. 5,

2    2008).

                    (2)    **The Protective Order Resolves Any Trade**

                           **Secret Concerns**

5         The MGA Parties next assert that Document Request No. 10 seeks

6    confidential business information and trade secrets concerning MGA's products.

7    (*See* Opposition to Letter of Request Motion, pp. 3 and 5). Again, this objection is

8    defeated by the existence of the protective order.

                    (3)    **Document Request No. 10 Is Not Unduly**

                           **Burdensome**

11        The MGA Parties also argue that Document Request No. 10 is unduly

12   burdensome. (*Id.*). The Discovery Master finds this argument unpersuasive for

13   three reasons.

14        First, MGA cannot assert a claim of undue burden on behalf of a third party

15   (i.e., MGA Canada). (*See, e.g., G.K. Las Vegas Ltd. Partnership v. Simon Prop.*

16   *Group, Inc.*, 2007 WL 119148, *3 (D. Nev. Jan. 9, 2007) ["A party's objection that

17   the subpoena issued to the non-party . . . imposes an undue burden on the nonparty

18   are not grounds on which a party has standing to move to quash a subpoena issued

19   to a non-party . . ."]).

20        Second, MGA has not provided any evidence in connection with its

21   opposition to support its claim of burden. (*See Columbia Pictures Indus., Inc. v.*

22   *Bunnell*, 2007 WL 4916964, *5 (C.D. Cal. May 7, 2007) ["Defendant's 'unduly

23   burdensome' and harassing objection is overruled as such objection is conclusory,

24   and as defendants have provided no facts or evidence to support a finding that

25   production . . . would be unduly burdensome and/or harassing."]; *El-Shaddai v.*

26   *Wheeler*, 2009 WL 301824, *2 (E.D. Cal. Feb. 5, 2009) ["[F]ederal courts reject

27   claims of burdensomeness which are not supported by a specific, detailed showing,

28   usually by affidavit, of why weighing the need for discovery against the burden it

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___2___          - 11 -          ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE ___16___

1   will impose permits the conclusion that the court should not allow it."]; *Jackson v.*

2   *Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party

3   claiming that a discovery request is unduly burdensome must allege specific facts

4   which indicate the nature and extent of the burden, usually by affidavit or other

5   reliable evidence."]).

6          Finally, the MGA Parties fail to acknowledge the probative value of the

7   information sought by Document Request No. 10.  (*See King v. Georgia Power

8   Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer

9   will be time-consuming, and probably costly, the information is crucial to the issues

10  of this suit, and is in the exclusive custody of the defendant."]).

11                    **d.     Conclusion**

12         For all of the above reasons, the Discovery Master overrules the MGA

13  Parties' objections to the document requests directed to Brisbois and MGA Canada.

14            **3.     The Deposition Subjects Challenged By The MGA Parties**

15         Having addressed the MGA Parties' objections to the document requests, the

16  Discovery Master now turns to the MGA Parties' objections to the proposed

17  deposition of MGA Canada.

18         Mattel seeks to depose MGA Canada's person most knowledgeable on the

19  following subjects:

20   • Category No. 1: "Knowledge of MGA Entertainment Canada's methods

21       and procedures regarding the access, use, reproduction, copying, storage,

22       transmission, transfer, disclosure, retention, destruction, deletion or use of

23       any documents, data and/or information, that were prepared, made,

24       created, generated, assembled or compiled by or for MATTEL and that

25       MGA received, directly or indirectly, from Janine Brisbois."  (Opposition

26       to Letter of Request Motion, p. 6).

27   • Category No. 2: "Knowledge of MGA Entertainment Canada's methods

28       and procedures regarding the access, use, reproduction, copying, storage,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 17

- 12 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1 | transmission, transfer, disclosure, retention, destruction, deletion or use of
2 | any documents, data and/or information regarding MGA Entertainment
3 | Canada's advertising, project, sales, customer or strategy information
4 | related to any Bratz Product regardless of whether such information was
5 | received directly or indirectly from Janine Brisbois." (*Id.*).

6           **a.**    **Category No. 1 Relates To Mattel's Phase 2 Claims**

7        The MGA Parties first contend that Category No. 1 is not limited to trade

8 secret information but rather "sweeps in such amorphous concepts as 'information

9 . . . prepared, made[,] created, generated, assembled or compiled by or for Mattel'"

10 that MGA received from Brisbois. (*Id.*). On its face, Category No. 1 is admittedly

11 broader than trade secret information provided by Brisbois to MGA. However, the

12 category is nonetheless relevant to Phase 2 claims. The SAAC alleges that MGA

13 not only misappropriated trade secrets but stole other "confidential and proprietary

14 information" belonging to Mattel. (SAAC, ¶ 1; *see also id.* ¶¶ 5, 20 and 48). The

15 SAAC expressly alleges that Brisbois was involved in this misconduct. (*Id.*, ¶ 74).

16 Consequently, Mattel is entitled to discover any information regarding the theft of

17 that other proprietary information it claims Brisbois took "to MGA to further

18 MGA's business interests and to harm Mattel." (*Id.*, ¶ 5).

19           **b.**    **Category Nos. 1 And 2 Are Not Incomprehensible**

20        Finally, the MGA Parties object to Category Nos. 1 and 2 on the ground that

21 they employ "extraordinarily vague, broad, and complex" language that renders

22 them incomprehensible, namely the language "knowledge of . . . methods and

23 procedures regarding the access, use, reproduction, copying, storage, transmission,

24 transfer, disclosure, retention, destruction, deletion or use of any documents, data

25 and/or information." (Opposition to Letter of Request Motion, p. 7). The MGA

26 Parties reason that "[w]hatever it is Mattel is asking about, it appears to relate to

27 every document and piece of data that relates in any way to Bratz, no matter how

28 much or how little, and no matter how irrelevant those documents are to the issues

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 18 _____

- 13 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    presented in this case." (*Id.*).  This argument is contradicted by the plain language

2    of the categories.

3           As the MGA Parties acknowledge in their Opposition, Category No. 2 is

4    limited to MGA Canada's person most knowledgeable "regarding MGA

5    Entertainment Canada's advertising, project, sales, customer or strategy information

6    related to the Bratz Products." (*Id.*).  Category No. 1 is similarly linked to

7    documents in some manner generated "for MATTEL and that MGA received,

8    directly or indirectly, from Janine Brisbois." (*Id.*, p. 6).  Accordingly, the language

9    of each category is specifically limited to certain categories of documents related to

10   the Bratz, such as advertising, sales and customer information.  In fact, Mattel

11   concedes that it "is not seeking *every* document that *in any way* relates to Bratz."

12   (Reply in Support of Letter of Request Motion, p. 13 [emphasis in original]).

13   Therefore, it is precluded from taking such a position at the subject deposition and

14   must confine its questioning to the limited categories of documents referenced in

15   Category Nos. 1 and 2.

16                    **c.    Conclusion**

17          For all of the foregoing reasons, the Discovery Master overrules the MGA

18   Parties' objections to the deposition categories in the proposed letter of request

19   directed to MGA Canada.

20   **F.    Summary Of Ruling Regarding The Letter Of Request Motion**

21          Having considered all of the arguments presented by the parties, the

22   Discovery Master concludes that a letter of request should issue subject to the

23   additional limitations discussed in Section I.D.2.a.2. above.

24   **II.    MATTEL'S MOTION TO COMPEL**

25   **A.    Factual Background**

26          **1.    Machado Leaves Mattel To Work For MGA**

27   Defendant Carlos Gustavo Machado Gomez ("Machado") was employed by

28   Mattel until April 19, 2004, when he resigned to go to work for MGA.  One week

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 19

- 14 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   later, on April 27, 2004, Mattel filed this action against Carter Bryant.

2         **2.     Machado Opens The E-Mail Account**

3         In June, 2005 (i.e., after he began working for MGA but before being named

4   as a counterclaim defendant in this action), Machado opened a Yahoo! e-mail

5   account named gus_cmt@yahoo.com (the "Account").  Machado and his attorney

6   (who substituted into this case in September, 2007) have submitted declarations

7   stating that they have used the Account to engage in confidential attorney-client

8   communications.

9         **3.     Mattel Serves Document Requests On Machado, And He**

10                  **Invokes The Attorney-Client Privilege And The Fifth**

11                  **Amendment**

12        In or about November, 2006, Mattel amended its counterclaim to add

13  Machado and others as counter-defendants.

14        In September, 2007, Mattel served a document request on Machado

15  specifying 85 categories of documents to be produced, encompassing, among other

16  things, various categories that would also be included in Mattel's forthcoming

17  subpoena to Yahoo!.  Machado timely served responses and objections on October

18  15, 2007.  (Supplemental Corey Decl., Ex. 3).  Among other general objections,

19  Machado objected to producing any documents protected by the attorney-client

20  privilege (General Objection No. 2) or by his Fifth Amendment right against self-

21  incrimination (General Objection No. 3).  Moreover, in his objection to several of

22  the specific requests, including requests that would be included in the subpoena to

23  Yahoo! (e.g., Request No. 4 seeking e-mails sent to or from any e-mail address that

24  includes the suffix <mattel.com>), Machado repeated his objection based on the

25  Fifth Amendment.  Machado produced approximately 200 pages of documents in

26  response to the document request, but no e-mails.

27        **4.     Mattel Serves The Subpoena On Yahoo!**

28        On October 29, 2007, Mattel served a subpoena on Yahoo! (the "Subpoena")

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2_____

PAGE _____ 20_____

- 15 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

seeking documents relating to the Account. (Supplemental Corey Decl., Ex. 2). The Subpoena contains 22 document requests, which fall into the following seven categories:

- Category No. 1: Documents relating to the registration and ownership of the Account (Document Request Nos. 1 – 2);
- Category No. 2: E-mail messages sent to or from, or mentioning, Mattel (Document Request Nos. 3 – 6);
- Category No. 3: E-mail messages pre-dating April 20, 2004 or October 2, 2004, i.e., before Machado opened the Account (Document Request Nos. 7, 11 – 14, and 16);
- Category No. 4: E-mail messages referring to Larian and other MGA personnel (Document Request Nos. 8 – 10 and 16 – 17);
- Category No. 5: E-mail messages relating to the search by Mexican authorities of MGA's offices in Mexico (Document Request No. 15);
- Category No. 6: Documents reflecting any other e-mail accounts used by Machado (Document Request Nos. 18 – 19); and
- Category No. 7: Documents reflecting Yahoo! policies and procedures (Document Request Nos. 20 – 22).[1]

On the same day that Mattel served the Subpoena on Yahoo!, Mattel sent Machado a letter informing him that the Subpoena had been served and requesting his consent to the release of his e-mails pursuant to the Shared Electronic Communications Act. The letter enclosed a form for Machado to sign indicating his consent. On November 1, 2007, Machado's counsel responded. Among other things, he asserted that the Subpoena was overbroad and *duplicative* of Mattel's document request propounded on Machado. Counsel also inaccurately asserted that

---

[1] According to Machado, "Yahoo[!] has informed counsel for Mr. Machado that it would produce non-content documents in response to Mattel's subpoena." (Cote Decl. in Support of Opposition to Motion to Compel, ¶ 4.). Machado asserts that "these non-content documents presumably satisfy Requests 1, 2 and 18 – 22 of Mattel's subpoena." (Opposition to Motion to Compel, p. 3, fn. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____

PAGE _____21_____

- 16 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   Machado had already produced e-mails from the Account (but, in fact, no such e-

2   mails were among the documents Machado had produced).  Machado's counsel

3   further informed Mattel that Machado would not sign the consent form authorizing

4   Yahoo! to produce e-mails responsive to the Subpoena.

5         Having prevented Yahoo! from complying with the Subpoena by refusing to

6   sign the consent form and having previously objected to the duplicative document

7   requests served on him directly, Machado apparently did not deem it necessary to

8   serve separate objections to the Subpoena.  Mattel contends that this omission

9   constitutes a waiver, as discussed more fully below.

10        **5.    Mattel Seeks To Compel Machado's Consent**

11        Mattel then filed a motion to compel in November 2007 seeking to force

12   Machado to consent to the release of the e-mails requested by the Subpoena.

13   Machado filed his initial Opposition on November 26, 2007 and a Supplemental

14   Opposition on January 14, 2008.  In the latter pleading, Machado asserted, for the

15   first time in connection with the Subpoena, that communications responsive to the

16   Subpoena were privileged.  However, he did not provide a privilege log identifying

17   those communications.  Mattel's motion was still pending at the time the Court

18   imposed a stay on Phase 2 discovery on February 4, 2008.

19        Now that the stay has been lifted, Mattel renews its motion for an order

20   compelling Machado to give his consent to the release of the e-mails sought by the

21   Subpoena.

22   **B.    Relief Sought By Mattel**

23        The only item of relief sought by Mattel is an order directing Machado "to

24   provide his consent to the disclosure of relevant electronic mail messages" from the

25   //

26   //

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____    - 17 -    ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____22_____

1    Account.[2]  Because of the manner in which Mattel has framed its request for relief,

2    the Discovery Master is presented with the choice of giving Mattel "all or nothing."

3    Based on the record before him, the Discovery Master concludes that such relief is

4    not appropriate.  For the reasons explained below, the Discovery Master concludes

5    that the Subpoena seeks both discoverable and non-discoverable items, including

6    items which are potentially protected from disclosure by the attorney-client

7    privilege and Machado's right of privacy.  The Discovery Master cannot sever the

8    objectionable categories of documents from the permissible ones, requiring

9    Machado to consent only to the latter.

10          Accordingly, the "all or nothing" relief requested by Mattel would force the

11   Discovery Master to either (1) compel Machado to sign the release, in which case

12   Yahoo! would produce all requested e-mails, including confidential attorney-

13   communications or, alternately (2) deny Mattel's request to compel Machado's

14   consent, in which case Yahoo! would not have to produce any responsive e-mails,

15   including items which are potentially probative of Mattel's Phase 2 claims.

16          The Discovery Master does not believe that either alternative is in the

17   interests of justice.  Accordingly, as set forth below, the Discovery Master will

18   exercise his discretion to fashion relief that enforces Mattel's legitimate right to

19   discovery of Phase 2 evidence, on the one hand, while protecting Machado from the

20   disclosure of privileged communications with his attorney, on the other hand.

21          **C.      Analysis**

22          Machado relies on essentially three substantive arguments in his Opposition

23   //

24
_____

25   [2] Mattel's Notice of Motion states that Mattel seeks an order compelling Machado to provide his consent to the disclosure of relevant e-mail messages "from his internet service providers" in general, and, in the Memorandum of

26   Points and Authorities references one other account, plot04@aol.com. However, Mattel does not reference any subpoena to AOL in its motion or supporting declarations, and consequently the Discovery Master understands that the present motion is limited to the Yahoo! account.  Mattel also asserts in its Memorandum of Points and

27   Authorities (but not in its Notice of Motion) that Machado should be compelled to identify each e-mail account he has used in the past five years. (Motion to Compel, p. 6:15 – 17).  Given the fact that there is no pending motion by

28   Mattel to enforce any such interrogatory to Machado, that issue has not been properly raised and is not addressed by this Order.

EXHIBIT _____2_____              - 18 -              ORDER NO. 22
                                                 [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____23_____

1   to the motion.[3]  First, he asserts that some of the e-mails sought by the Subpoena

2   contain communications protected by the attorney-client privilege and/or attorney

3   work product doctrine.  Second, he asserts that the Subpoena is overbroad because

4   it supposedly seeks every e-mail Machado has ever sent or received that concerns

5   MGA or certain employees at MGA, thereby violating his right of privacy.  Third,

6   Machado argues that requiring him to consent to the disclosure of the subject e-

7   mails violates his Fifth Amendment privilege against self-incrimination, since the

8   e-mails sought might be used by Mattel to prove its claims that Machado engaged

9   in criminal acts, including the criminal theft of Mattel's trade secrets.  Each of these

10  arguments is addressed in turn below.

11  **1.    Attorney-Client Privilege/Attorney Work Product**

12  **Protection**

13  Mattel does not dispute the evidence submitted by Machado and his counsel

14  that some, if not all, of the e-mail communications made using the Account are

15  confidential attorney-client communications.  Instead, Mattel argues that Machado

16  has waived any protections attaching to those communications by failing to provide

17  a privilege log.

18  In response, Machado, citing a ruling by the prior discovery master,[4] argues

19  that no privilege log is required for communications occurring after the

20  commencement of the litigation in 2004.  However, as Mattel points out, Machado

21  did not become a party to the lawsuit until approximately the end of 2006 and

22  therefore should not be able to avoid logging allegedly privileged e-mails occurring

23  before that date.  The Discovery Master agrees that this later date is the appropriate

24

25  [3] In addition to these substantive arguments, Machado also asserts that Mattel failed to sufficiently meet and confer
26  regarding the waiver issue.  However, there is no indication that, given Machado's refusal to execute the release
    form, it would have made any difference for Mattel to initiate discussions with Machado on Mattel's contention that
27  Machado had waived his objections to the Subpoena.

28  [4] *See* May 6, 2008 Order Denying Mattel's Motion for Protective Order Limiting the Temporal Scope of its Privilege
    Log, attached as Exhibit A to the Declaration of Alexander H. Cote in Support of Opposition to the Motion to
    Compel.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____   - 19 -

PAGE _____24_____

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   cut-off for requiring a privilege log from Machado.[5]  The issue before the

2   Discovery Master therefore is whether any attorney-client communications

3   Machado may have had with counsel between the time he opened the Account in

4   June, 2005, on the one hand, and his entry into the lawsuit in November, 2006, on

5   the other hand, should be deemed to have been waived as a result of Machado's

6   failure to provide a privilege log identifying those communications.

7          As explained above, Machado learned of the Subpoena by means of the letter

8   Mattel sent him on October 29, 2007.  He asserted the attorney client privilege for

9   the first time in connection with the Subpoena in his Supplemental Opposition to

10  Mattel's Motion to Compel on January 14, 2008 – about 10 weeks later.  However,

11  he did not – and to this date has not – provided any privilege log.

12                 **a.     Legal Standard**

13         A party asserting privilege must promptly identify privileged documents.

14  The Ninth Circuit has ruled that, under certain circumstances, the failure to timely

15  identify privileged communications may be deemed a waiver of the privilege.

16  (*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir.

17  2005) [finding a waiver under the particular circumstances of that case but rejecting

18  a *per se* waiver rule that deems a privilege waived if a log is not produced within 30

19  days of service of a document request]).  The Advisory Committee notes to

20  Rule 26(b)(5) specifically anticipate waiver of privilege as a remedy for the failure

21  of a party to timely produce a privilege log.  (*See* Federal Rule Civil Procedure

22  26(b)(5) advisory committee's note (1993 Amendments) ["To withhold materials

23  without such notice is contrary to the rule, subjects the party to sanctions under

24  Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."]).

25         In determining whether a waiver has occurred, the Ninth Circuit has adopted

26  _____

27  [5] According to Mattel, the cut-off for requiring a privilege log should begin on the date Mattel filed its motion to amend to add Machado as a party (i.e., November 20, 2006) rather than the date the Court granted the motion.

28  (Reply in Support of Motion to Compel, p. 11).  The Discovery Master accepts Mattel's use of this date and finds that any e-mails between Machado and his counsel subsequent to November 20, 2006 are protected by the attorney-client privilege without the necessity of producing a detailed privilege log.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____          - 20 -          ORDER NO. 22
                                           [Case No. CV 04-09049 SGL (RNBx)]
PAGE ____25____

1    "a holistic reasonableness analysis, intended to forestall needless waste of time and

2    resources, as well as tactical manipulation of the rules and the discovery process."

3    (*Burlington*, 408 F.3d at 1149).  Pursuant to this approach, district courts are to

4    conduct a case-by-case determination of whether the privilege was waived, taking

5    into account the following four factors:  (1) the degree to which the objection or

6    assertion of privilege enables the litigant seeking discovery and the court to

7    evaluate whether each of the withheld documents is privileged; (2) the timeliness of

8    the objection and accompanying information about the withheld documents; (3) the

9    magnitude of the document production; and (4) other particular circumstances of

10   the litigation that make responding to the discovery unusually easy or unusually

11   hard.  (*Id.*).

### b.    Application

13        Here, the first *Burlington* factor weighs in favor of a finding of waiver,

14   because Machado has failed to provide any information that would enable Mattel or

15   the Discovery Master to determine whether any particular e-mail is in fact protected

16   by the privilege.

17        With respect to the second factor (timeliness of the objection), Machado first

18   asserted the objection in connection with the Subpoena in his supplemental

19   Opposition to Mattel's motion to compel instead of serving timely objections to

20   Mattel's subpoena pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) (stating

21   that objections must be served before the earlier of the time specified for

22   compliance in the subpoena or 14 days after the subpoena is served).  Still, although

23   untimely, the objection was asserted during the briefing of Mattel's motion, giving

24   Mattel an opportunity to address the objection.  Moreover, the relatively brief delay

25   in Machado's assertion of the privilege does not appear to have resulted in any

26   prejudice to Mattel, especially in light of the Court's decision shortly thereafter to

27   stay all Phase 2 discovery for nearly one year.  Finally, the Discovery Master notes

28   that Machado also raised an attorney-client privilege objection to the document

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____        - 21 -          ORDER NO. 22
                                    [Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 26 _____

1    requests that were propounded directly on him and which contained similar requests
2    as the Subpoena.  For all of these reasons, the Discovery Master concludes that this
3    factor weighs against a finding of waiver.

4        Turning to the third factor referenced in *Burlington*, there is no evidence in
5    the record regarding the number of e-mails in the Account.  However, Machado has
6    not asserted that the universe of privileged e-mails is voluminous or that it would be
7    unduly burdensome for him to provide a log identifying those e-mails.  Therefore,
8    this factor is either neutral or weighs in favor of a finding of waiver.

9        The fourth and final factor identified in *Burlington* likewise weighs in favor
10   of finding a waiver.  The discovery at issue involves only a single e-mail account.
11   Machado apparently can readily review past e-mails in that Account, as
12   demonstrated by his declaration, in which he states that he first sent an e-mail from
13   the account on July 13, 2005   (Declaration of Carlos Gustavo Machado Gomez
14   dated February 27, 2009 in Support of Opposition to Motion to Compel ("Machado
15   Decl."), ¶ 4).   Moreover, the fact that Machado was not named as a party to this
16   action until November, 2006 -- nearly one and a half years after he opened the
17   Account -- suggests that there would be few, if any privileged e-mails, at least with
18   respect to this case (although there may be privileged e-mails between Machado
19   and any attorney he may have retained in connection with his defense of criminal
20   proceedings in Mexico or elsewhere).

21       Although the four factors enumerated above on balance tend to weigh in
22   favor of finding a waiver, in *Burlington* the Ninth Circuit expressly cautioned
23   district courts against applying these factors mechanically, instead emphasizing that
24   the overriding consideration should be one of reasonableness within the context of
25   all the circumstances. (*Burlington*, 408 F.3d at 1149).  Following this admonition,
26   the Discovery Master concludes that the harsh penalty of waiver is not warranted at
27   this time, and that, as set forth below, Machado should be accorded a short period
28   in which to provide a log of the e-mails allegedly protected by the attorney-client

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___*V*___    - 22 -.    ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE ___27___

1  privilege sent to and received from the Account that are responsive to any of the

2  categories set forth in the Subpoena.  Such a log will enable Mattel to request that

3  the Discovery Master review the e-mails *in camera* for the purpose of ascertaining

4  whether production of those e-mails should be compelled.

5          **2.**    **Overbreadth**

6        As his second argument in opposition to Mattel's motion to compel,

7  Machado asserts that the Subpoena is overbroad:

8              because it seeks every email Mr. Machado has ever sent

9              or received that concerns Mattel, MGA, or certain

10              employees at MGA.  [citation omitted].   Mattel is Mr.

11              Machado's former employer, and MGA is his current

12              employer.  Clearly emails that merely mention one of

13              these companies or individuals will not be necessarily

14              relevant to this matter.  Because Mattel's motion makes

15              no effort to justify this overbroad subpoena, the motion

16              should be denied.

17  (Opposition to Motion to Compel, p. 4).  This argument applies to fewer than half

18  of the 22 document requests set forth in the Subpoena, namely Document Request

19  Nos. 3 – 6 (e-mail messages sent to or from, or mentioning, Mattel) and Document

20  Request Nos. 8 – 10 and 16 – 17 (e-mail messages referring to Larian and other

21  MGA personnel).[6]

22        In response, Mattel argues that Machado waived his overbreadth objection

23  (as he did his other objections) by failing to timely assert it.  As noted above, it is

24  undisputed that Machado did not timely serve any objections to the Subpoena.

25  While the Discovery Master finds that this omission should not, under the

26  applicable case law and the circumstances presented here, be deemed a waiver of

27

28

---

[6] Although Mattel also seeks to discover e-mail communications made to certain other MGA employees, six of those requests are limited to the period before Machado claims to have opened the Account in 2005 and therefore do not request information that exists unless Machado actually opened the account prior to the stated time.

1   *privileged* communications, the Discovery Master finds that it is appropriate to

2   deem this omission to be a waiver of other objections relating to *non-privileged*

3   documents, including Machado's overbreadth objection..

### 3.   Fifth Amendment Protection Against Self-Incrimination

5   As his final argument, Machado argues that consenting to the release of the

6   subject e-mails would, to the extent any incriminating information is contained in

7   those e-mails, constitute a violation of his Constitutional right against self-

8   incrimination:

9   As made clear in its motion, Mattel alleges that Mr.

10  Machado and others used the plot04@aol.com account, as

11  well as other unspecified accounts, in furtherance of

12  criminal acts, including the criminal theft of Mattel's

13  trade secrets. [citation omitted]  And Mattel has

14  instigated criminal prosecutions in Mexico against Mr.

15  Machado for his alleged criminal use of his email

16  accounts, and he is at risk of prosecution in the United

17  States for the same alleged criminal conduct.

18  (Opposition to Motion to Compel, p. 9).

19  In response, Mattel argues that compelling Machado to sign the consent form

20  does not infringe Machado's Fifth Amendment rights because:  (1) Machado

21  waived his right to assert it; and (2) the Fifth Amendment does not apply in the

22  present circumstances.

23  At the outset, the Discovery Master notes that, in their briefs, the parties

24  appear to be arguing different applications of the Fifth Amendment privilege.

25  Mattel argues that compelling Machado to sign the release form, and the attendant

26  production of responsive e-mails, would not violate Machado's Fifth Amendment

27  rights. (Motion to Compel, p. 6).  By contrast, Machado appears to argue only that

28  the Fifth Amendment precludes the Discovery Master from ordering him to *identify*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 29

- 24 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   the e-mail accounts he has used for the past five years. (Opposition to Motion to

2   Compel, p. 9). At the April 27, 2009 telephonic hearing on the Motion to Compel,

3   counsel for Machado further stated that Machado was not asserting his Fifth

4   Amendment rights as to the Account. Nevertheless, given the parties' differing

5   understanding of the scope of relief sought by Mattel, the Discovery Master will

6   proceed to analyze the applicability of the Fifth Amendment to the production of e-

7   mails from the Account.

### a.   Waiver

9       As set forth above, Machado failed to assert his Fifth Amendment rights in

10   response to the Subpoena Mattel served on Yahoo!. However, he did assert his

11   Fifth Amendment rights in connection with Mattel's document request which

12   Mattel served on him two months prior to the Subpoena (and which, as Mattel

13   admits, seeks many of the same e-mails sought by the Subpoena). Accordingly,

14   Mattel was on notice that Machado objected to the production of those e-mails on

15   the ground that producing them (or allowing a third party to produce them) could

16   incriminate him.

### b.   Applicability Of The Fifth Amendment

18       The Fifth Amendment provides individuals with a privilege against self-

19   incrimination. A violation of that privilege occurs when "the accused is compelled

20   to make a Testimonial Communication that is incriminating." (*Fisher v. United*

21   *States*, 425 U.S. 391, 408 (1976); *see also United States v. Authement*, 607 F.2d

22   1129, 1131 (5th Cir.1979) (articulating the three factor test of (1) compulsion,

23   (2) testimonial communication, and (3) incrimination)).

24       Generally, "a person inculpated by materials sought by a subpoena issued to

25   a third party cannot seek shelter in the Self-Incrimination Clause of the Fifth

26   Amendment." (*S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) ("*Jerry T.*

27   *O'Brien*")). The Ninth Circuit has applied *Jerry T. O'Brien* to overrule the

28   assertion of the Fifth Amendment privilege in situations where the documents

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___2___        - 25 -        ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE ___30___

1   sought are in the possession and custody of a third party. (*In re Grand Jury*

2   *Subpoena (Maltby)*, 800 F.2d 981, 983 (9th Cir. 1986)). There, the Ninth Circuit

3   upheld enforcement of a subpoena seeking records from a police department over

4   the objections of the person to whom the records pertained, noting that "[a] party is

5   privileged from producing the evidence [himself] but not from its production." (*Id.*

6   [internal citation omitted]).

7        In this case, there is, however, one element that was not present in the above-

8   referenced cases: unlike the aforementioned cases, the production of documents by

9   the third party here apparently cannot be effected without the consent of the

10   individual asserting the Fifth Amendment privilege (i.e., Machado). Therefore, the

11   documents are effectively in Machado's exclusive control. So long as he refuses to

12   consent to their release, the only way to obtain them – according to Mattel – is by

13   compelling Machado to consent to their release. Thus, the question becomes

14   whether ordering Machado to consent to the production of the subject e-mails can

15   be deemed "self-incrimination."

16        In *United States v. Doe*, 465 U.S. 605, 610 (1984) ("*Doe*"), the Supreme

17   Court barred enforcement of a subpoena issued to a small business owner in

18   connection with a grand jury investigation into corruption in the awarding of county

19   and municipal contracts. The court drew a distinction between the contents of the

20   underlying documents sought by a subpoena and the act of compelling the person

21   controlling the documents to produce them, stating, "[a]lthough the contents of a

22   document may not be privileged, the act of producing the document may be." (*Id.*,

23   at 612). Applying that distinction, the court found that the underlying business

24   records sought by the subpoena were not protected by the Fifth Amendment

25   because they were not prepared involuntarily or under compulsion. However, the

26   court also found that the act of producing the records was privileged because such

27   an act would constitute a tacit admission by the subpoenaed party that the

28   documents exist and are responsive to the categories set forth in the subpoena and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____          - 26 -          ORDER NO. 22
                                          [Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 31 _____

1   would further obviate the need for the government to authenticate the documents.

2   (*Id.*). Accordingly, the court held that the Fifth Amendment shielded the subpoena

3   recipient from responding to the subpoena, on the grounds that such a response

4   would constitute a compelled testimonial act of self incrimination.

5       Here, as in *Doe*, the contents of the documents sought by the Subpoena are

6   clearly not protected by the Fifth Amendment, since there is no showing that

7   Machado wrote the subject e-mails involuntarily. The only question is whether the

8   act of signing a consent form authorizing the production of the e-mails by Yahoo!

9   would constitute compelled testimonial self-incrimination. For the reasons set forth

10   below, the Discovery Master concludes that it would not. Machado's compelled

11   execution of the consent form would not have the same effect as the "tacit

12   admission" in *Doe*, because the documents would not be produced by Machado but

13   rather by Yahoo!. Accordingly, Machado's conduct would not give rise to any

14   inference that the documents actually produced by Yahoo! are authentic or

15   responsive to the Subpoena. (*Id.*, at 613). In other words, Machado's consent,

16   while compelled, would not be testimonial in nature.

17       This conclusion is confirmed by *United States v. Browne*, 624 F.Supp. 245

18   (N.D.N.Y. 1985) and *United States v. Ghidoni*, 732 F.2d 814 (11th Cir. 1984)

19   ("*Ghidoni*"), cases in which the court enforced orders compelling a defendant to

20   execute a consent directive releasing subpoenaed documents. In answering the

21   question of whether the signing of a consent form required to permit a bank to

22   release account information constitutes a compelled testimonial self-incrimination,

23   the *Ghidoni* Court, in language directly applicable here, distinguished *Doe* as

24   follows:

25           The subpoena duces tecum in *Doe* required the taxpayer,

26           a sole proprietor, to produce certain records in his

27           possession, thereby establishing existence, possession or

28           control, and authenticity, and removing the taxpayer's

EXHIBIT _____ 2 _____    - 27 -    ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 32 _____

1   ability to present arguments to the contrary. Conversely,

2   Ghidoni has to produce only a directive, which contains

3   no testimony regarding the existence of bank accounts or

4   his control of them. The account records, if they exist, are

5   held by the bank and any testimony on the existence,

6   control, or authentication elements of the records would

7   have to come from the records themselves and the bank

8   officials. After executing the directive, Ghidoni can still

9   maintain that the records do not exist, that he does not

10   control them, and that they are not authentic. These

11   factors demonstrate the nontestimonial nature of the

12   consent directive.

13   (*Ghidoni*, 732 F.2d at 819). Accordingly, the court in *Ghidoni* held that the order

14   requiring the respondent to sign the bank consent form was not testimonial, but

15   merely required him "to waive a barrier to permit [a third party] to produce

16   documents." (*Id.* at 819 fn.12). That same reasoning applies here, defeating

17   Machado's claim that an order compelling him to sign the requested consent form

18   would constitute compelled *testimonial* self-incrimination.

19       Moreover, even if Machado could somehow demonstrate that signing the

20   consent form would constitute a compelled, testimonial act, he would still not be

21   able to satisfy the third prong of the test required to successfully invoke the Fifth

22   Amendment, namely showing that the compelled, testimonial act constitutes self-

23   incrimination. A claim of Fifth Amendment privilege may be asserted only if there

24   are "'substantial hazards of self-incrimination that are real and appreciable, not

25   merely imaginary and unsubstantial,' that information sought" could be used as

26   evidence of criminal liability. (*U.S. v. Drollinger*, 80 F.3d 389, 392 (9th Cir. 1996)

27   (quoting *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir.1984)); *see also*

28   *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.1980)). In order to successfully

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 33

- 28 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    defeat a request for information, the party asserting the privilege "must have

2    'reasonable cause to apprehend [such] danger from a direct answer' to questions

3    posed to him." (*Id.* [internal citation omitted]).  Moreover, in order for a trial court

4    to determine whether the Fifth Amendment protection applies to a given request, it

5    must determine "whether a real and appreciable danger of incrimination exists" by

6    "examin[ing] 'the questions, their setting, and the peculiarities of the case.'" (*Id.*

7    [quoting *Neff*, 615 F.2d at 1240]).

8        Here, Machado asserts that, because Mattel has instigated criminal

9    proceedings against him in Mexico and is attempting to persuade law enforcement

10    officials in the United States to prosecute him, Mattel would likely use any relevant

11    e-mails to establish his criminal liability.  (Opposition to Motion to Compel, p. 9).

12    Machado reasons that, given this factual background, "the identification of

13    [Machado's] e-mail accounts is a direct link to potentially incriminating evidence."

14    (*Id.*).  Although Machado does not expressly so argue, the same reasoning would

15    presumably apply to individual e-mails contained in the Account that is the subject

16    of this motion.

17        Even conceding that point, Machado does not take the necessary next step of

18    making an offer of proof identifying specific e-mails that might be deemed

19    incriminating so that the Discovery Master could test the claim.[7]  Machado appears

20    to assume – incorrectly – that merely raising the general, abstract possibility that

21    *some* of the e-mails might be incriminating is sufficient to carry his burden of

22    establishing that the Fifth Amendment applies to bar production of *any and all* of

23    the e-mails.  Such an assumption is contrary to the law in this Circuit.  As Mattel

24    correctly points out:

25        [Machado's objection] on Fifth Amendment grounds . . .

26

27    [7] *See United States v. Bodwell*, 66 F.3d 1000, 1002 (9th Cir. 1995) ["In this case … [the respondent] presented his

28    Fifth Amendment claim and made an offer of proof in the district court contempt proceedings."]; *United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991) [remanding case to district court for *in camera* proceeding to determine, on a question-by-question basis, whether the respondent could properly invoke the Fifth Amendment]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -    ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1             [is] an improper blanket assertion of the privilege

2             preventing Mattel from even testing whether particular

3             documents are or are not subject to the privilege.  See

4             *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977)

5             (Party cannot invoke a blanket Fifth Amendment claim).

6             Rather, … any Fifth Amendment claim must be tested on

7             a document-by-document basis.

8 (Reply in Support of Motion to Compel, pp. 4 – 5).

9      Applying this standard here, Machado has failed to sufficiently identify any

10 potentially incriminating evidence contained in the subject e-mails.  In the absence

11 of such a showing, the Discovery Master cannot make the required determination of

12 "whether a real and appreciable danger of incrimination exists" (*Drollinger*, 80

13 F.3d at 392) such that the Fifth Amendment protection applies.

14     **D.**    **Machado's Request For Sanctions**

15      Machado contends that "Mattel's motion was wholly baseless and based on

16 misrepresentations and bad faith omissions designed to mislead the special master,"

17 and, on that basis requests sanctions of $3,000.  (Opposition to Motion to Compel,

18 p. 10).  After a careful review of the record, the Discovery Master finds that the

19 alleged "misrepresentations and omissions" alleged by Machado are illusory.

20 Taken as a whole, the Motion to Compel fairly and accurately reflects the record.

21 Instead of only attaching the Subpoena and relevant correspondence, Mattel has

22 provided the Discovery Master with additional documents necessary to allow him

23 to evaluate the circumstances and context surrounding the service of the Subpoena,

24 including Mattel's prior document requests to Machado and Machado's responses

25 and objections to the same.  These latter documents benefitted Machado by

26 enabling the Discovery Master to rule in Machado's favor on the issue of waiver of

27 the attorney-client privilege, and to otherwise provide a complete and balanced

28 evaluation of the parties' contentions.  Accordingly, there is no basis for Machado's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 35

- 30 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    claim that Mattel engaged in any conduct warranting sanctions.

2        **E.**    **Summary Of Ruling Regarding The Motion To Compel**

3        While Mattel requests that the Discovery Master compel Machado to sign a

4    consent form permitting Yahoo! to release all documents responsive to the

5    Subpoena, including e-mails protected by the attorney-client privilege and attorney

6    work-product doctrine, the Discovery Master finds that it is not reasonable or

7    equitable, under the facts and circumstances presented here, to deem Machado to

8    have waived those protections.

9        On the other hand, the Discovery Master does not believe that, simply

10   because there may be some privileged communications among the e-mails

11   responsive to the Subpoena, Machado should be able to shield *other* unprivileged e-

12   mails that are potentially probative of Mattel's Phase 2 claims from discovery.

13   Moreover, it is neither fair nor reasonable to require Mattel to accept Machado's

14   unsubstantiated, unilateral determination that no unprivileged, responsive e-mails

15   exist.

16       Accordingly, the Discovery Master will order Machado to sign a consent

17   form permitting that Yahoo! produce directly to the Discovery Master the

18   documents requested in the Subpoena.  The Discovery Master will direct his staff to

19   Bates number the documents produced by Yahoo! and will then forward them to

20   counsel for Machado.  Upon receipt of those documents, Machado shall prepare a

21   log and identify by bates range only all e-mails exchanged with his attorneys after

22   November 20, 2006.  Machado shall further prepare a log:  (1) identifying by date,

23   sender, recipient and subject matter, each and every e-mail in the Account that was

24   created prior to November 20, 2006 and claimed to be protected by the attorney

25   client privilege or attorney work product doctrine; and (2) setting forth a brief

26   explanation of the facts supporting that assertion.  Machado shall submit that log to

27   the Discovery Master and Mattel's counsel and shall simultaneously produce all

28   documents not identified in the log to Mattel.  As to those documents identified in

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____        - 31 -        ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 36 _____

1  the log as privileged, Mattel may request that the Discovery Master conduct an *in*
2  *camera* review of those documents to determine whether any further production is
3  warranted.

4  **III.   MATTEL'S MOTION FOR RECONSIDERATION**

5     **A.   Factual Background**

6        **1.   Mattel Serves The Subject Document Request**

7           On June 13, 2007, Mattel propounded its First Set of Requests for Production
8  of Documents and Things to Isaac Larian ("Larian").  That set of document
9  requests included Document Request No. 198, which requests "All
10  COMMUNICATIONS between YOU and any individual while the individual was
11  employed by MATTEL."  Document Request No. 198 is hereinafter referred to as
12  the "Request."  Larian objected to the Request and did not produce any responsive
13  documents.  On October 11, 2007, Mattel moved to compel the production of
14  documents responsive to the Request (together with other requests in the same set
15  of requests for production).  Neither party proposed or briefed any temporal limit
16  on the request for Larian's communications with Mattel employees.

17        **2.   The Prior Discovery Master's December 31, 2007 Order**

18           The prior discovery master ruled on Mattel's motion in an order dated
19  December 31, 2007 (the "Prior Order").  With respect to the Request, the prior
20  discovery master found that the Request "is reasonably tailored to the specific and
21  numerous allegations in the case regarding alleged trade secret theft."  At the same
22  time, however, he *sua sponte* limited the request to the time period of 1999 through
23  2005 based on his understanding that this was the only time period during which
24  Mattel had alleged trade secret theft by MGA:

25                Nevertheless, an additional temporal limitation is appropriate to
26                tailor the request to Mattel's allegations of trade secret theft.  The
27                alleged trade secret theft began with Bryant's conduct in 1999
28                and continued to 2005.  Accordingly, Larian shall produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____

PAGE ____37____

- 32 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    documents responsive to Request No. 198 that are limited to the

2    time frame 1999 to 2005.

3    Mattel argues that, in so ruling, the prior discovery master misconstrued the

4    scope of Mattel's counterclaims. Mattel points out that, in connection with its

5    RICO claims, Mattel alleged that the MGA Parties, including Larian, are engaged

6    in an ongoing, open-ended conspiracy that includes the theft of Mattel's trade

7    secrets. (SAAC, ¶¶ 89 – 93 and 99 – 102). In addition to the RICO allegations,

8    Mattel also argues that the SAAC alleges that in recent years MGA and Larian have

9    engaged in a pattern of targeting and recruiting Mattel employees with access to

10   Mattel's trade secret, confidential and proprietary information and that certain of

11   these employees copied and took Mattel information and disclosed it to MGA. (*Id.*,

12   ¶ 77).

13   Mattel further emphasizes that it has obtained evidence of various post-2005

14   instances of MGA's wrongdoing through the discovery process, including MGA's

15   alleged solicitation of Mattel employees to copy and disclose Mattel trade secrets to

16   MGA. (Motion for Reconsideration, pp. 4 – 5).

17      **3.    Mattel Seeks Reconsideration Of The Prior Order**

18   On January 16, 2008, Mattel filed a motion for reconsideration seeking to

19   amend the Prior Order to include Larian's post-2005 communications with Mattel

20   employees. The motion was stayed with other Phase 2 discovery, then denied

21   without prejudice by a September 23, 2008 order in which the Court denied all

22   pending motions without prejudice for reasons of administrative convenience.

23   The Court lifted the stay on Phase 2 discovery on January 6, 2009. Three

24   weeks later, on January 28, 2009, Mattel sent a letter to Larian's counsel requesting

25   a further meet and confer before filing this renewed motion for reconsideration. On

26   February 11, 2009, Larian agreed to produce his post-2005 communications with

27   Mattel employees. Larian subsequently served Mattel with a verified supplemental

28   response to the Request stating that no responsive post-2005 documents exist.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____          - 33 -          ORDER NO. 22
                                          [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____38_____

1   However, Larian declined Mattel's demand that he stipulate to amend the Court's

2   prior order excusing him from producing such communications.  Mattel then filed

3   the present Motion for Reconsideration.

### B.   Relief Sought By Mattel

5   Mattel requests that the Discovery Master amend the Prior Order to require

6   Larian to produce his post-2005 communications with Mattel employees.

### C.   Analysis

8   MGA advances two arguments in opposition to the Motion.  First, MGA

9   argues that Larian's post-2005 communications with Mattel employees are not

10  relevant to Mattel's RICO claims:

> Mattel's RICO allegations are based entirely on trade
> secret misappropriation by former Mattel employees
> Machado, Trueba, Vargas, Brawer, and Brisbois,
> allegations that are limited to pre-2006 conduct.  (SAAC
> ¶¶ 91 – 92).  In addition, Mattel's SAAC does not allege
> that there are any post-2006 instances of trade secret theft
> by former Mattel employees, only that there has been an
> alleged 'continuing use' of the previously 'stolen' trade
> secrets by MGA post-2006 which constitutes an on-going
> conspiracy.  (SAAC ¶¶ 91 – 92).

21  (Opposition to Motion for Reconsideration, pp. 3 – 4).

22  MGA's reading of the SAAC is too narrow.  Paragraph 92 of the SAAC

23  alleges as follows:

> The MGA Criminal Enterprise and Bratz Criminal
> Enterprise as described herein are … continuing
> enterprises because, among other reasons, each is
> designed to … unlawfully acquire the confidential
> business information and property of Mattel . . . .The

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____

PAGE ____39____

- 34 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1            conduct of each enterprise continues through the date of

2            this Second Amended Answer and Counterclaims and is

3            ongoing by virtue of MGA's continuing use of Mattel's

4            information and property . . .

5 (SAAC, ¶ 92). Contrary to MGA's assertion, Mattel does not allege that the *only*

6 reason the alleged criminal enterprise is "ongoing" is because MGA continues to

7 use Mattel's information and property. Additionally, Mattel alleges that the

8 purpose of the alleged criminal enterprises is to "*acquire* the confidential business

9 information and property of Mattel," and that this conduct "continues through the

10 date of [the SAAC (i.e., July 12, 2007)]."

11       Second, MGA argues that the Motion for Reconsideration is moot because

12 Larian has agreed to produce any responsive post-2005 documents and has served a

13 supplemental response stating that he has been unable to locate any such

14 documents. Mattel rejects that contention, arguing that the supplemental response

15 improperly seeks to "resurrect numerous general and specific objections that were

16 previously rejected by [the prior discovery master] in his December 31, 2007

17 Order." (Reply in support of Motion for Reconsideration, p. 3). According to

18 Mattel, this "litany of objections and limitations that render illusory any suggestion

19 by MGA that it is actually agreeing to produce the documents Mattel seeks." (*Id.*,

20 pp. 3 – 4).

21       Because of these allegedly improper qualifications and objections, Mattel

22 contends that Larian's supplemental response is unreliable. Mattel further argues

23 that "only an order can modify an order," (*id.*, p. 1), and suggests that MGA's

24 refusal to submit to court-ordered compliance is to "enable MGA to withhold

25 documents based on spurious or hidden limitations or caveats." (*Id.*)

26       The Discovery Master finds these arguments persuasive. Given the

27 allegations of the SAAC, Larian's compliance with the Request should not have

28 been limited to documents pertaining to communications before 2006.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 2 _____

PAGE _____ 40 _____

### D.     Summary Of Ruling Regarding The Motion For Reconsideration

For all of the above reasons, the Discovery Master grants the relief requested by Mattel and amends the Prior Order to remove the temporal restriction imposed by the prior discovery master.

## IV.     MATTEL'S OBJECTION MOTION

Mattel's Objection Motion involves three interrogatories related to MGA's trade dress claims.

### A.     Interrogatory Nos. 48 – 50

On October 25, 2007, Mattel served its Seventh Set of Interrogatories on the MGA Parties, including Interrogatory Nos. 48, 49 and 50 (the "Interrogatories"). (Declaration of Jon Corey in Support of Mattel's Supplemental Memorandum concerning the Objection Motion ("Corey Decl."), Ex. 1 at p. 7). The Interrogatories ask the MGA Parties to identify (1) each trade dress that has been infringed by Mattel, (2) the allegedly infringing Mattel products, and (3) all facts supporting MGA's contention that the trade dress is protectable:

- Interrogatory No. 48: "Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or dilute or that is otherwise the subject of YOUR claims, defenses or allegations in this action." (*Id.*)

- Interrogatory No. 49: "For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packing or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted." (*Id.*).

- Interrogatory No. 50: "For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectable, all

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 41

- 36 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   DOCUMENTS that REFER OR RELATE to the foregoing and all

2   PERSONS with knowledge of the foregoing." (*Id.*).

3   **B.   The MGA Parties' Responses To The Interrogatories**

4   The MGA Parties initially responded to the Interrogatories with only

5   objections. (*Id.*, Ex. 3 at pp. 6 – 8, 12 – 14 and 17 – 19). On November 30, 2007,

6   the MGA Parties supplemented their responses to the Interrogatories. (*Id.*, Ex. 3 at

7   pp. 8 – 11, 14 – 16 and 19 – 22). The substantive portion of the responses stated as

8   follows:

9   • Supplemental Response to Interrogatory No. 48: ". . . Subject to and

10   without waiving the foregoing objections, MGA provides the following

11   supplemental response:  The unique and distinctive trade dress of MGA's

12   'Bratz' line of dolls that Mattel has copied, infringed, and diluted is

13   comprised of the following elements:  the unique, unusual geometric-

14   shaped packaging, with increased transparency including transparent open

15   sides, and with a 'flying banner' style slogan; the proportions and special

16   arrangements of the eyes, noses, and mouths and hairlines; the shape of

17   the eyes, faces, heads and lips; the unique face paint, design, and color

18   scheme depicting facial features; the disproportionately oversized heads;

19   the oversized shoes; and the trendy, hip clothing and hair styles.  The

20   unique and distinctive trade dress of MGA's 'Bratz Petz' line of dolls that

21   Mattel has copied, infringed, and diluted is comprised of the following

22   elements:  the open box packaging with no top cover and with partial side

23   panels that slope from a narrow front panel to a higher back panel; the

24   large, humanlike, artfully made-up eyes with long eyelashes that sweep

25   out and away from the outer corner of the eye; the disproportionately

26   oversized heads; and the trendy human clothing." (*Id.*, Ex. 3 at pp. 10 –

27   11).

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 42

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1       • Supplemental Response to Interrogatory No. 49: ". . . Subject to and

2          without waiving the foregoing objections, MGA provides the following

3          supplemental response:  Each of Matte's 'My Scene' fashion dolls copied,

4          infringed and diluted:  the unique, unusual geometric-shaped packaging,

5          with increased transparency including transparent open sides, and with a

6          'flying banner' style slogan; the proportions and special arrangements of

7          the eyes, noses, and mouths and hairlines; the shape of the eyes, faces,

8          heads and lips; the unique face paint, design, and color scheme depicting

9          facial features; the disproportionately oversized heads; the oversized

10         shoes; and the trendy, hip clothing and hair styles.  Each of Mattel's 'My

11         Scene' pet dolls copied, infringed, and diluted:  the large, humanlike,

12         artfully made-up eyes with long eyelashes that sweep out and away from

13         the outer corner of the eye; the disproportionately oversized heads; the

14         trendy human clothing; and the open box packaging with no top cover and

15         with partial side panels that slope from a narrow front panel to a higher

16         back panel." (*Id.*, Ex. 3 at p. 16).

17      • Supplemental Response to Interrogatory No. 50: ". . . Subject to and

18         without waiving the foregoing objections, MGA provides the following

19         supplemental response:  That the elements of MGA's trade dress in its

20         'Bratz' and 'Bratz Petz' lines are aesthetic and non-functional is apparent

21         from an examination of the Bratz products and packaging, compared to

22         other leading fashion dolls.  That MGA's packaging was and is inherently

23         distinctive is apparent from a comparison of said packaging to the state of

24         fashion doll packaging when Bratz was introduced in 2001, the fact that

25         following the Bratz introduction competitors have copied significant,

26         innovative elements of the Bratz packaging, and the fact that the

27         packaging has won industry awards.  MGA's trade dress has also acquired

28         secondary meaning as a source indicator for 'Bratz' as a result of the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____          - 38 -          ORDER NO. 22
                                          [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 43 _____

enormous success of the Bratz dolls in the market, and the marketing and promotional efforts employed by MGA to support Bratz.  Documents evidencing the market strength of the Bratz trade dress features include documents evidencing (i) sales totals; (ii) package awards; (iii) package related designs patents; (iv) publicity given to the Bratz dolls and their success; and (v) documents evidencing industry awards given to MGA on account of the success of the Bratz dolls and/or their innovative packaging, and the fact that said packaging has been copied and mimicked by competitors.  Persons with knowledge of the packaging issues include Steffen Smith (Director of Structural Engineering/Creative Package Development), Leon Djiguerian (in Product Development), Samir Khare, and Aileen Storer (Creative Director of Bratz & Dolls). Such issues also fall within the scope of expert discovery.  Many individuals are knowledgeable of the striking similarities between the protected trade dress of Bratz and features of My Scene Barbie dolls and packaging.  These include Carter Bryant and Paula Garcia.  That the unique aspects of the Bratz dolls heads/facial features have acquired secondary meaning falls within the scope of expert testimony." (*Id.*, Ex. 3 at pp. 20 – 21).

**C.     Mattel's Motion To The Prior Discovery Master**

Unsatisfied with the MGA Parties' supplemental responses, Mattel moved to compel further responses to the Interrogatories on December 20, 2007. (Declaration of Jon Corey in Support of Mattel's Supplemental Reply concerning the Objection Motion ("Supplemental Corey Decl."), Ex. 7 at p. 39).  Mattel argued, among other things, that with respect to Interrogatory Nos. 48 and 49 the MGA Parties "merely provided what [they] claim[] are the 'basic facts,' without any details." (*Id.*, Ex. 7 at p. 24).  Mattel further asserted that the MGA Parties have "no basis for failing to provide full and complete responses to Interrogatory

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____

PAGE _____44_____

- 39 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   Nos. 48 and 49." (*Id.*, Ex. 7 at p. 25).

2   Mattel similarly argued that the MGA Parties' response to Interrogatory No.

3   50 contained only basic facts without any specific detail. (*Id.*, Ex. 7 at p. 29).

4   Mattel further argued that the response to Interrogatory No. 50 was artificially

5   limited by the MGA Parties' interpretation of Mattel's defined terms and

6   objections, and did not identify specific documents as required. (*Id.*, Ex. 7 at pp. 29

7   – 30 and 32). Finally, Mattel argued that the "Court should overrule MGA's

8   objections" and compel a complete response to Interrogatory No. 50. (*Id.*, Ex. 7 at

9   p. 32).

10   **D.      The Opposition The MGA Parties Filed With The Prior Discovery**

11   **Master**

12   The MGA Parties filed their opposition to Mattel's motion to compel on

13   December 31, 2007. (*Id.*, Ex. 5, p. 33). The MGA Parties' opposition was based

14   entirely on three arguments. First, MGA argued that the Interrogatories related to a

15   Phase 2 issue. (*Id.*, Ex. 5 at p. 30). Second, they argued that the substantive

16   responses they had provided to Mattel gave Mattel "the principal facts supporting

17   [their] contentions regarding Mattel's trade dress infringement, in compliance with

18   [their] Rule 33 obligations." (*Id.*) Finally, the MGA Parties argued that they were

19   permitted to reserve the right to supplement the Interrogatories during expert

20   discovery. (*Id.*, Ex. 5 at pp. 30 – 31). The MGA Parties did not argue that the

21   Interrogatories were objectionable on any other ground. (*Id.*).

22   **E.      The Reply Mattel Filed With The Prior Discovery Master**

23   On January 7, 2008, Mattel filed its reply in support of its motion to compel

24   and responded to each of the arguments raised by the MGA Parties in their

25   opposition. (*Id.*, Ex. 8 at pp. 27 – 28 and 37).

26   **F.      The Prior Discovery Master's February 15, 2008 Order**

27   On February 15, 2008, the prior discovery master denied Mattel's motion to

28   compel concerning the Interrogatories ("February 15, 2008 Order"), finding as

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____

PAGE _____45_____

- 40 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  follows:

2          The MGA parties are in substantial compliance with Rule

3          33, having identified numerous elements of the trade

4          dress they contend Mattel has infringed.  More

5          specifically, the MGA parties' responses identify Mattel's

6          'My Scene' fashion and pet dolls as the Mattel products

7          that infringe their trade dress.  The MGA parties also set

8          forth the principal facts supporting their contention that

9          their trade dress is protectible [sic] under the applicable

10         trade dress legal principles, including that the trade dress

11         is aesthetic and non-functional, inherently distinctive, and

12         has acquired a secondary meaning.  That the interrogatory

13         responses include a reservation of rights to supplement

14         during expert discovery does not render the responses

15         inherently improper or inadequate.  Mattel does not

16         contest that the identification of the elements and products

17         subject to trade dress infringement will be a subject of

18         expert discovery.

19 (Corey Decl., Ex. 5 at p. 13.

20     **G.**    **Mattel Appeals The Prior Discovery Master's February 15, 2008**

21           **Order**

22       On March 3, 2008, Mattel appealed the February 15, 2008 Order to the Court

23 ("Appeal").  (Corey Decl., Exh. 6, p. 25).  Although it affirmed the February 15,

24 2008 Order in most respects, the Court declined to rule on the Interrogatories

25 because they were directed at Phase 2 issues and such discovery had been stayed.

26 (Corey Decl., Ex. 6 at p. 3).  Nevertheless, the Court made it clear that Mattel could

27 "raise the issue again" once the stay on Phase 2 discovery was lifted.  (*Id.*)

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 46 _____

- 41 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

**H.     The Court Lifts The Stay On Phase 2 Discovery**

On January 6, 2009, the Court vacated the stay on Phase 2 discovery.  (Order dated January 6, 2009).  Mattel then renewed its Appeal by filing the Objection Motion on January 20, 2009.  (Corey Decl., Ex. 8).  The Objection Motion indicated that Mattel would "lodge copies of the relevant portions of papers filed in connection with" the Appeal.  (Objection Motion, p. 4).

**I.     Order Referring Mattel's Objection Motion To The Discovery Master**

On March 12, 2009, the Court referred Mattel's Objection Motion to the Discovery Master.  (*See* Order dated March 12, 2009 attached to the Corey Decl. as Ex. 9).  The Court instructed the Discovery Master to "consider the issues presented by the motion for review as if presented to him in the first instance . . ." (*Id.*).

**J.     The Relief Sought By Mattel's Objection Motion**

In its Objection Motion, Mattel requests that the Discovery Master overrule all of the MGA Parties' objections to the Interrogatories.  (*See* Supplemental Memorandum in Support of Objection Motion, p. 16).  Mattel also seeks an order requiring the MGA Parties "to provide complete responses to" the Interrogatories. (*Id.*).  However, this latter request was narrowed by Mattel in other parts of its pleadings, at least with respect to Interrogatory Nos. 48 and 49.  Specifically, Mattel indicated in its Supplemental Reply that, assuming the objections are overruled, Mattel merely seeks a supplemental response by the MGA Parties that "*confirm*[s] that [they have] provided a full and complete response to" Interrogatory No. 48.  (*See* Supplemental Reply, p. 9 [emphasis added]; *see also* Supplemental Memorandum, p. 5).  Mattel further stated that the response to Interrogatory No. 49 is only inadequate because "it is unclear what information [the] MGA [Parties are] holding back [due to their] meritless objections."  (Supplemental Reply, p. 10).

**K.     The MGA Parties' Opposition To The Objection Motion**

The MGA Parties oppose the Objection Motion on three grounds.  (*See*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____

PAGE ____47____

- 42 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    MGA's Supplemental Opposition, pp. 9 – 23). First, the MGA Parties argue that

2    Mattel waived its right to challenge the validity of their objections to the

3    Interrogatories. (*Id.*, pp. 16 – 18). Second, the MGA Parties argue that all of their

4    objections to the Interrogatories are meritorious. (*Id.*, pp. 18 – 24). Finally, the

5    MGA Parties argue that the substantive responses they provided are adequate. (*Id.*,

6    pp. 9 – 16).

7        **L.    Analysis**

8            **1.    The MGA Parties Abandoned The Vast Majority Of Their**

9                **Objections**

10       Both the MGA Parties and Mattel devote a significant portion of their briefs

11   to the topic of waiver. The MGA Parties initially raised the issue in their

12   Supplemental Opposition, claiming that Mattel waived any right to have the

13   objections they asserted to the Interrogatories overruled by not making such an

14   argument in its original Appeal of the February 15, 2008 Order. (*Id.*, pp. 16 – 18).

15   In response, Mattel argues that it not only preserved its right to challenge the

16   objections but that the MGA Parties waived their right to argue the majority of the

17   objections should be enforced by failing to assert them in their opposition to

18   Mattel's original motion to compel submitted to the prior discovery master.

19   (Supplemental Reply, p. 13 – 15).

20       The Discovery Master finds that Mattel has the more persuasive argument.

21   While the MGA Parties claim that "Mattel did not address any of MGA's

22   objections to Interrogatories 48 through 50 in its original Appeal" to the Court,

23   (Supplemental Opposition, p. 17), the sequence of events leading up to the Appeal

24   establish that Mattel did not need to make any such argument as part of the

25   Objection Motion.

26       In its motion submitted to the prior discovery master, Mattel argued that "the

27   Court should overrule MGA's objections and compel [a] complete response[] to

28   Interrogatory No[.] . . . 50." It further argued that "MGA had *no basis* for failing to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____2_____          - 43 -          ORDER NO. 22
                                          [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____48_____

1   provide complete and full responses to Interrogatory Nos. 48 and 49."

2   (Supplemental Corey Decl., Exh. 7, pp. 24 -25 [emphasis added]).   By directly

3   challenging the MGA Parties' objections to Interrogatory No. 50 and by stating that

4   they had "no basis" for refusing to provide more complete responses to

5   Interrogatories Nos. 48 and 49, Mattel placed the burden on the MGA Parties to

6   justify any objections that they wished to rely on to resist the discovery in their

7   opposition.   (*Marshall v. Rain*, 2008 WL 2186184, *1 (S.D. Cal. May 23, 2008)

8   ["the burden of resisting discovery is on the party opposing discovery"]; *El-*

9   *Shaddai v. Wheeler*, 2009 WL 301824, *2 (E.D. Cal. February 5, 2009) ["The party

10   opposing discovery has the burden of showing that discovery should not be

11   allowed, and of clarifying, explaining and supporting its objections"]).

12        As explained in one of the cases cited by the MGA Parties (i.e., *Moses v.*

13   *Halstead*), "[w]hen ruling on a motion to compel, the Court will consider only

14   those objections that have been (1) timely asserted, *and* (2) *relied upon in response*

15   *to the* motion to compel." (236 F.R.D. 667, 672 n. 8 (D. Kan. 2006) [emphasis

16   added]; *see also Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n. 15

17   (D.Kan.2005)).   "Objections initially raised but not relied upon in response to the

18   motion to compel will be deemed abandoned." (*Moses*, 236 F.R.D. 672 n. 8).   Put

19   another way, a party who fails to assert its objections in its opposition to a motion

20   to compel cannot later invoke the objections to resist the discovery. (*Morgenstern*

21   *v. Int'l Alliance of Theatrical Stage Empl.*, 2006 WL 2385233, *2 n. 5 (N.D. Cal.

22   August 17, 2006) ["When originally responding to plaintiff's requests, defendant

23   apparently raised several objections based on third person privacy and freedom of

24   association.   These objections, however, are not raised in defendant's opposition to

25   plaintiff's current motion and are therefore waived."]; *Fleet Systems, Inc. v. Federal*

26   *Coach, LLC*, 2007 WL 2264618, *3 n. 2 (D.Neb. August 6, 2007) ["To the extent

27   the defendant made other objections in its response, the defendant did not argue

28   such objections continued to be applicable in its brief in opposition to the motion to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 49

- 44 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    compel. Accordingly, such objections are deemed waived."]; *Eidukonis v. SE*

2    *Pennsylvania Transp. Auth.*, 1987 WL 16321, *5 (E.D. Pa. August 27, 1987)

3    [finding that plaintiff had waived all arguments and objections not made in

4    opposition to earlier discovery motion]; *see also Diapluse Corp. of America v.*

5    *Curtis Publishing Co.*, 374 F.2d 442, 445 (2d Cir. 1967) ["Any other 'conditions'

6    [not requested by plaintiff in opposition to defendant's motion to require production

7    of documents for discovery] are clearly afterthoughts which were waived by

8    plaintiffs failure to request them in opposition to defendant's motion"]).

9       Here, the MGA Parties did not assert the vast majority of their objections in

10   the opposition they submitted to the prior discovery master. (*See* Supplemental

11   Corey Decl., Ex. 5 at pp. 29 – 31). Specifically, they did not invoke any privilege

12   objection, compound objection, or unduly burdensome objection,[8] or claim that the

13   requested information has already been produced or is more readily accessible to

14   Mattel. (*Id.*). The only objection the MGA Parties raised in their opposition to the

15   prior discovery master regarding the Interrogatories was their ability to supplement

16   their responses "during expert discovery."[9] (*Id.*, p. 30). Accordingly, the MGA

17   Parties abandoned every other objection by failing to raise them in their original

18

---

19   [8] In the opposition it submitted to the prior discovery master, the MGA Parties admittedly did assert an unduly

20   burdensome objection to some of "Mattel's contention interrogatories." (Supplemental Corey Decl., Ex. 5 at pp. 19 –
21). However, that objection was never directly linked to any of the Interrogatories at issue. (*Id.*, Ex. 5 at pp. 19 –

21   21 and 29 – 31). Even assuming such a connection had been made, the MGA Parties failed to provide any evidence
to support their claim of burden regarding the Interrogatories, meaning any such objection could have been overruled

22   on that ground. (*See Columbia Pictures Indus.*, 2007 WL 4916964, *5 ["Defendant' 'unduly burdensome' and
harassing objection is overruled as such objection is conclusory, and as defendants have provided no facts or

23   evidence to support a finding that production . . . would be unduly burdensome and/or harassing."]; *El-Shaddai*, 2009
WL 301824, *2 ["Federal courts reject claims of burdensomeness which are not supported by a specific, detailed

24   showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the
conclusion that the court should not allow it."); *Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery

25   request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually
by affidavit or other reliable evidence."]).

26   [9] Notably, the sole objection that the prior discovery master addressed regarding the Interrogatories in his February

27   15, 2008 Order was the MGA Parties claim that they had the right to supplement their responses following expert
discovery. (Corey Decl., Ex. 5 at pp. 12 – 13 ["That the interrogatory responses include a reservation of rights to

28   supplement during expert discovery does not render the responses inherently improper or inadequate. Mattel does
not contest that the identification of the elements and products subject to trade dress infringement will be a subject of
expert discovery."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____      - 45 -      ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 56 _____

1    opposition.

2          Because the MGA Parties abandoned their privilege, compound and unduly

3    burdensome objections to the Interrogatories, as well as any claim that the

4    requested information had already been produced or is more readily accessible to

5    Mattel, *before* Mattel filed the Appeal of the February 15, 2008 Order, Mattel had

6    no affirmative obligation to challenge those objections in its Appeal or as part of its

7    renewed application comprising the Objection Motion.  Nor are the objections

8    revived by Mattel's superfluous decision requesting that the Discovery Master

9    overrule them in connection with the Objection Motion, since the obligation to

10   preserve the objections rested with the MGA Parties and they did not raise them in

11   connection with their opposition to Mattel's initial motion.

12         The decision to consider the objections abandoned is supported by the MGA

13   Parties' understanding of the Court's order referring the Objection Motion to the

14   Discovery Master.  As the MGA Parties state, "[w]hile the Court directed the

15   Discovery Master to consider [the Objection Motion] as if presented to him in the

16   first instance . . . it did not give Mattel [and by implication the MGA Parties] free

17   reign to make objections to the February 15, 2008 Order that were not made or

18   preserved when Mattel filed its original Appeal in 2008."[10]  (Supplemental

19   Opposition, p. 17).  Because the MGA Parties did not properly preserve the vast

20   majority of their objections to the Interrogatories, they cannot rely on the objections

21   now.[11]

22         **2.     The MGA Parties' Expert Discovery Objection Is Valid**

23         Having concluded that the MGA Parties abandoned most of their objections

24

---

25   [10] The Court's March 12, 2009 Order referring the Objection Motion to the Discovery Master further states that
     "[t]his procedure – in which the Phase 2 Discovery Master may review prior discovery orders – shall apply only to
26   motions seeking review of discovery orders issued previously by the Phase 1 Discovery Master to which timely
     objections were made prior to the imposition of the stay as to Phase 2 discovery."  (Order dated March 12, 2009
27   [emphasis in original]).

28   [11] For the reasons set forth in Section IV.L.3.a below, the MGA Parties may continue to assert their privilege
     objection in connection with Interrogatory No. 50.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  2

PAGE  51

- 46 -                          ORDER NO. 22
                    [Case No. CV 04-09049 SGL (RNBx)]

1  to the Interrogatories, the Discovery Master turns to the lone objection that they did

2  preserve (i.e., the expert discovery objection).  The MGA Parties claim in their

3  Supplemental Opposition that they "simply noted that 'MGA's trade dress and

4  other legal concepts that may be relevant) will be the subject of expert testimony at

5  trial," and interposed an objection that preserves their right to supplements their

6  responses to include information from their experts.  (Supplemental Opposition,

7  pp. 22 – 23).  Since that is the full extent of the expert discovery objection, the

8  Discovery Master agrees that the objection is valid.[12]  Consequently, the Discovery

9  Master finds that the fact that the "responses include a reservation of rights to

10  supplement during expert discovery does not render the responses inherently

11  improper or inadequate."  (Corey Decl., Ex. 5 at p. 13).

12        **3.**     **The MGA Parties' Supplemental Responses Are Inadequate**

13        The Discovery Master next addresses the MGA Parties' substantive

14  responses to the Interrogatories.

15            **a.**     **The MGA Parties' Responses Include Abandoned**

16                 **Objections**

17        As a preliminary matter, the Discovery Master notes that the MGA Parties'

18  supplemental responses are inadequate because they include objections that have

19  been abandoned (e.g., privilege objections, compound objections, undue burden

20  objections, and any claim that the information sought is equally or more readily

21  available to Mattel).  Accordingly, the Discovery Master orders the MGA Parties to

22  withdraw all objections to the Interrogatories except for the expert discovery

23  objection.

24        The MGA Parties may also continue to assert their attorney-client

25  privilege/attorney work product objection to Interrogatory No. 50, because that

26  interrogatory asks them to identify all documents that "REFER OR RELATE TO"

27

28  ---

[12] What the MGA Parties cannot do (and have not done) is assert that this objection permits them to withhold information that is currently known to them.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 2

PAGE 52

- 47 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1 | certain facts and the Discovery Master finds that the waiver of this objection is too
2 | severe of a penalty to the extent privileged documents are (or could subsequently
3 | be) requested by Mattel as a result of the objection being abandoned. The analysis
4 | is necessarily different with respect to Interrogatory Nos. 48 and 49, because those
5 | interrogatories do not ask about documents and the Discovery Master finds that
6 | they do not request any privileged information.

7 |     No other objections may be interposed by the MGA Parties in connection
8 | with the Interrogatories.

9 | **b.     Interrogatory No. 48**

10 |     The Discovery Master has already addressed Mattel's demand that "MGA's
11 | meritless objections" to Interrogatory No. 48 be overruled. (Supplemental
12 | Memorandum, p. 5). In light of the Discovery Master's ruling on those issues and
13 | given the statements made by Mattel in its pleadings, the Discovery Master
14 | understands that Mattel merely wants the MGA Parties to "*confirm* that [they have]
15 | provided a full and complete response to" Interrogatory No. 48. (*See* Supplemental
16 | Reply, p. 9 [emphasis added]; *see also* Supplemental Memorandum, p. 5 ["MGA's
17 | meritless objections should be overruled, and MGA should confirm that it has
18 | provided a full and complete response to this interrogatory."]). Since that is the
19 | extent of the remaining relief requested by Mattel concerning Interrogatory No. 48,
20 | the Discovery Master finds the request is justified.

21 |     MGA's trade dress claims have been pending for several years and it is
22 | reasonable to require MGA to identify the trade dress at issue, subject to the expert
23 | discovery objection discussed above. In fact, requiring the MGA Parties to state
24 | that their response is full and complete is consistent with their statement that they
25 | have described "particular and itemized common elements of [the] 'Bratz' and
26 | 'Bratz Petz' lines of dolls and packaging [MGA] contends Mattel copied."
27 | (Supplemental Opposition, p. 9; *see also id.* at p. 13 ["MGA has identified in its
28 | Response to Interrogatory No. 48 the common elements of all Bratz dolls which *it*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 53

- 48 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   *claims are its protectable trade dress that Mattel, copied, infringed or diluted.*"]

2   (emphasis added)).  If the MGA Parties have already set forth the trade dress

3   elements they "contend[] Mattel copied," they can easily supplement their response

4   to include a statement that the trade dress identified constitutes the full scope of

5   MGA's claims against Mattel, subject to their right to supplement the response in

6   connection with expert discovery.[13]

7           **c.**      **Interrogatory No. 49**

8        Regarding Interrogatory No. 49, Mattel first argued in its pleadings that

9   "MGA only generally identified Mattel MY SCENE dolls (which is an entire line

10  consisting of dozens of dolls) and refused to specifically identify any particular

11  Mattel product that allegedly infringes its purported trade dress."[14]  (Supplemental

12  Memorandum, p. 5).  In its Supplemental Opposition, the MGA Parties countered

13  that Mattel's

14          assertion misses the point.  MGA's contentions are not

15          limited to 'single' products:  MGA contends that the trade

16          dress elements common to **all** Bratz and Bratz pets dolls

17          and packaging were copied and are infringed by **all** of

18          Mattel's 'My Scene' dolls and 'My Scene' pet dolls and

19          packaging.  That is what MGA said in its responses, and

20          that is more than adequate to answer the questions asked.

21  (Supplemental Opposition, p. 10 [emphasis in original]).

22       Mattel responded to this contention by stating in its Supplemental Reply that,

23  while "MGA claims that it has fully answered [Interrogatory No. 49] because *all* of

24  Mattel's 'My Scene' dolls and 'My Scene' pet dolls, as well as their packaging,

25

---

26  [13] Mattel is not entitled to any broader statement because, as the prior discovery master found, it "does not contest that the identification of the elements and products subject to trade dress infringement will be a subject of expert

27  discovery." (Corey Decl., Ex. 5 at p. 13).

28  [14] Mattel also claimed that the MGA Parties did not "identify the elements of trade dress that any specific product allegedly infringed." (Supplemental Memorandum, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 49 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 2
PAGE _____ 54

1  purportedly infringe *all* of the 'common' elements of MGA's products that are
2  listed in [Interrogatory No. 48]," it is nonetheless "unclear what information MGA
3  is holding back because it continues to assert meritless objections" to Interrogatory
4  No. 49. (Supplemental Reply, p. 10 [emphasis in original]). But any such issue is
5  remedied by the Discovery Master's above ruling requiring the MGA Parties to
6  withdraw all of their objections to Interrogatory No. 49 except for the expert
7  discovery objection.[15]

8       Mattel's argument that "if there are any elements of MGA's claimed trade
9  dress that are infringed by only some Mattel products or packaging, MGA should
10 specifically identify the particular products and the trade dress that they allegedly
11 infringe, (Supplemental Reply, p. 10), is also unpersuasive. The MGA Parties have
12 expressly stated that their "contentions are not limited to 'single' products" but
13 rather that "the trade dress elements common to all Bratz and Bratz pets dolls and
14 packaging were copied and are infringed by all of Mattel's 'My Scene' dolls and
15 'My Scene' pet dolls and packaging." (Supplemental Opposition, p. 10 [emphasis
16 omitted]). Therefore, the Discovery Master orders the MGA Parties to supplement
17 their response to indicate that it is full and complete, subject to its right to
18 supplement during expert discovery.[16]

19            **d.    Interrogatory No. 50**

20      Mattel claims that the response to Interrogatory No. 50 is inadequate because
21 it "is conclusory" and constitutes a "circular pronouncement[] that the trade dress
22 that MGA seeks to assert is protectable . . ." (Supplemental Memorandum, p. 6).
23 Mattel further contends that such a response provides it no guidance and explains

24

---

25  [15] Mattel is not entitled to have the expert discovery objection stricken because it "does not contest that the
26  identification of the elements and products subject to trade dress infringement will be a subject of expert discovery."
    (Corey Decl., Ex. 5 at p. 13).

27  [16] Once again, it should be easy for the MGA Parties to confirm the full scope of the allegedly infringing items since
    they alleges in their pleadings "that Mattel's 'My Scene' dolls and 'My Scene' pet dolls and their packaging are *the
28  products and items* which improperly copy MGA's trade dress . . ." (Supplemental Opposition, p. 9 [emphasis
    added]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 55

- 50 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   why the MGA Parties represented to the prior discovery master that they would

2   supplement their responses to the Interrogatories in the course of Phase 2

3   Discovery." (*Id.*)

4        However, Mattel takes the MGA Parties' statement to the prior discovery

5   master out of context. While the record reflects that the MGA Parties informed the

6   prior discovery master that they would "supplement these responses in the course of

7   Phase 2 discovery," (Corey Decl., Ex. 4 at p. 30), that statement came *after* Mattel

8   had argued in its moving papers that the MGA Parties were not entitled to reserve

9   their right to supplement the response during expert discovery in Phase 2.

10  (Supplemental Corey Decl., Ex. 7 at p. 25). Further, when it made the statement,

11  the MGA Parties stated on the very same page that:

12             Mattel contends that it is improper to reserve the right to

13             supplement this interrogatory during expert discovery.

14             Mattel is wrong. Indeed, Mattel has stated in many of its

15             interrogatory responses that the response may be

16             supplemented in the course of expert discovery. Mattel

17             does not contest that the identification of the elements and

18             products subject to trade dress infringement will be a

19             subject of expert testimony. . . . If, in the course of their

20             analysis, MGA's experts identify other MGA products or

21             elements of MGA products that have been infringed by

22             Mattel, MGA will supplement its interrogatory responses

23             to identify those products or elements.

24  (Corey Decl., Ex. 4 at pp. 30 – 31). In light of the foregoing facts, the Discovery

25  Master finds that the statement made by the MGA Parties was linked to their expert

26  discovery objection and not a promise that they would supplement their responses

27  immediately upon the lifting of the stay on Phase 2 discovery due to deficiencies in

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 56

- 51 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  the responses.[17]  Regardless, Mattel has not cited any authority, and the Discovery

2  Master has found none, supporting the proposition that a promise to supplement a

3  response is sufficient to justify a motion to compel if the existing response is

4  adequate.

5        As support for its claim that the MGA Parties' response to Interrogatory No.

6  50 is inadequate, Mattel next alleges that the MGA Parties should be required to do

7  three things:  (1) to state more facts concerning why MGA's trade dress is

8  protectable, (2) to identify every person with knowledge of those facts, and (3) to

9  identify all documents that refer or relate to those facts.

10        Like the prior discovery master, I find that the MGA Parties have complied

11  with Federal Rule of Civil Procedure 33 by identifying the facts supporting MGA's

12  contention that its "trade dress is protectable under the applicable trade dress legal

13  principles, including that the trade dress is aesthetic and non-functional, inherently

14  distinctive, and has acquired a secondary meaning." (Corey Decl., Ex. 5 at p. 13).

15  The relevant language of the MGA Parties' substantive response states as follows:

16           That the elements of MGA's trade dress in its 'Bratz' and

17           'Bratz Petz' lines are aesthetic and non-functional is

18           apparent from an examination of the Bratz products and

19           packaging, compared to other leading fashion dolls.  That

20           MGA's packaging was and is inherently distinctive is

21           apparent from a comparison of said packaging to the state

22           of fashion doll packaging when Bratz was introduced in

23           2001, the fact that following the Bratz introduction

24           competitors have copied significant, innovative elements

25           of the Bratz packaging, and the fact that the packaging

26           has won industry awards.  MGA's trade dress has also

27

28

---

[17] This finding also applies to Mattel's claim that the MGA Parties promised to supplement their responses to Interrogatory Nos. 48 and 49.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 57 _____

- 52 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1                 acquired secondary meaning as a source indicator for

2                 'Bratz' as a result of the enormous success of the Bratz

3                 dolls in the market, and the marketing and promotional

4                 efforts employed by MGA to support Bratz.

5  (*Id.*, Ex. 4 at pp. 20 – 21).

6       This language is sufficient to apprise Mattel of the principal and material

7  facts supporting MGA's trade dress claim. (*See, e.g., Moses*, 236 F.RD. at 674;

8  *Hiskett v. Wal-Mart Stores*, Inc., 180 F.R.D. 403, 404-05 (D.Kan. 1998)

9  ["Interrogatories . . . may properly ask for the principal or material facts which

10  support an allegation or defense."]; *Grynberg v. Total, S.A.*, 2006 WL 1186836, *5

11  (D. Colo. May 3, 2006 ["It is proper, of course, to inquire about the material facts

12  supporting specific factual matters raised in the pleadings."]; *IBP, Inc. v.*

13  *Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D.Kan. 1998) ["An interrogatory

14  may reasonably ask for the material or principal facts which support a

15  contention"]); *see also Clean Earth Remediation & Constr. Servs. V. American*

16  *Intern. Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) ("[A] number of cases

17  have held that interrogatories seeking identification of all facts supporting a

18  particular allegation are inherently improper."). Nothing more is required from the

19  MGA Parties. There is always a greater degree of specificity that could be provided

20  by an interrogatory response. If Mattel wishes to obtain the details behind each and

21  every fact specified in the response to Interrogatory No. 50, Mattel may depose

22  MGA's person most knowledgeable regarding these issues under Federal Rule of

23  Civil Procedure 30(b)(6).

24       Although the MGA Parties' response regarding the trade dress "facts"

25  requested by Interrogatory No. 50 is adequate, their identification of witnesses with

26  knowledge of those facts and supporting documents is not. For example, the

27  response initially states that "[m]*any* individuals are knowledgeable of the striking

28  similarities between the protected trade dress of Bratz and features of My Scene

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Barbie dolls and packaging," and then proceeds to identify just two individuals (i.e.,

2   Carter Bryant and Paula Garcia).  (Corey Decl., Ex. 3 at p. 21 [emphasis added]).

3   This is insufficient.  The MGA Parties must identify each and every person that

4   they are aware of who have knowledge of the facts they have set forth in response

5   to Interrogatory No. 50.

6        Likewise, in identifying documents that refer or relate to such facts, the

7   MGA Parties have only described general categories.  (Corey Decl., Ex. 3 at p. 21

8   ["Documents evidencing the market strength of the Bratz trade dress features

9   include documents evidencing (i) sales totals; (ii) package awards; (iii) package

10  related designs patents; (iv) publicity given to the Bratz dolls and their success; and

11  (v) documents evidencing industry awards given to MGA on account of the success

12  of the Bratz dolls and/or their innovative packaging, and the fact that said

13  packaging has been copied and mimicked by competitors."]).  Again, this is

14  inadequate, since documents identified in response to an interrogatory must be

15  identified with specificity.  (*See, e.g., Gaeta v. Perrigo Pharmaceuticals Co.*, 2007

16  WL 3343043, *6 (N.D. Cal. November 9, 2007) ["To the extent plaintiff finds that

17  references to specific documents are responsive to interrogatory no. 3, plaintiff shall

18  set forth with specificity the relevant documents, records and literature."]; *see also*

19  Fed. R. Civ. P. 33(d) [stating that if records are used to answer an interrogatory

20  they must be set forth "in sufficient detail to enable the interrogating party to locate

21  and identify them as readily as the responding party could"]).

22       Accordingly, the MGA Parties must supplement their response to

23  Interrogatory No. 50 to identify (1) everyone they are currently aware of who has

24  knowledge of why MGA's trade dress is protectable and (2) all documents that

25  refer or relate to those facts with specificity.[18]

26  **M.    Summary Of Ruling Regarding The Objection Motion**

27       The Discovery Master concludes the MGA Parties must supplement their

28

---

[18] Again, the MGA Parties need not identify any privileged documents when responding to Interrogatory No. 50.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____2____

PAGE ____59____

- 54 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    answers to the Interrogatories in the manner specified above.

2    **V.    DISPOSITION**

3        **A.**    Mattel's Letter of Request Motion is **GRANTED**.  Within fifteen (15)

4    days of this Order, Mattel shall submit a revised letter of request reflecting the

5    additional limitations requested by the Discovery Master concerning Document

6    Request No. 7, namely to exclude any social security numbers, tax identification

7    numbers, dates of birth, indication of sexual orientation, bank account numbers, and

8    checking account numbers that may be included within the requested personnel

9    files prior to production.  Upon submission of the revised letter of request, the

10   Discovery Master will promptly issue an order recommending that the Court

11   execute the revised letter of request on behalf of Mattel.

12       **B.**    Mattel's Motion to Compel Machado to sign the consent form

13   permitting Yahoo! to comply with the Subpoena is **GRANTED,** provided that

14   Mattel serve an amended Subpoena on Yahoo! requiring that production of

15   responsive documents be made directly to the Discovery Master.

16           1.    Upon receiving the documents produced by Yahoo! pursuant to

17   the Subpoena, the Discovery Master will have them Bates numbered and then

18   forward them to counsel for Machado.  Upon receipt of the documents Bates-

19   numbered by the Discovery Master, Machado is **ORDERED**, within thirty (30)

20   days, to prepare and submit to the Discovery Master and counsel for Mattel a log:

21   (1) identifying by Bates number, date, sender, recipient and subject matter, each

22   and every e-mail in the Account that was created prior to November 20, 2006 and

23   claimed to be protected by the attorney-client privilege or attorney work product

24   doctrine; and (2) setting forth a brief explanation of the facts supporting that

25   assertion (the "Log").  The Log shall also identify, by Bates number only, all e-

26   mails after November 20, 2006 which are claimed to be protected by the attorney-

27   client privilege or attorney work product doctrine.

28           2.    Machado's failure to timely provide the Log in a form that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 55 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 2 _____

PAGE _____ 40 _____

1    satisfies all of the requirements set forth in Paragraph 1 above shall be deemed a

2    waiver by him of any applicable privileges.

3         3.    Simultaneously with his submission of the Log to the Discovery

4    Master and counsel for Mattel, Machado is **ORDERED** to produce to Mattel all

5    documents not identified in the Log.

6         4.    In the event Mattel wishes the Discovery Master to conduct an

7    *in camera* review of any documents identified in the Log to determine the

8    applicability of the attorney-client privilege or attorney work product doctrine,

9    Mattel shall provide a notice to the Discovery Master, with a copy to Machado,

10   identifying those documents to be reviewed.  The Discovery Master shall then

11   conduct the requested review and, if warranted, order Machado to produce

12   additional documents identified in the Log.

13        5.    Machado's request for sanctions in connection with the Motion

14   to Compel is **DENIED**.

15   **C.**   Mattel's Motion for Reconsideration is **GRANTED**.

16        1.    The Prior Order shall be, and hereby is, amended with respect to

17   Document Request No. 198 as follows:

18              ~~Nevertheless, an additional temporal limitation is~~

19              ~~appropriate to tailor the request to Mattel's allegations of~~

20              ~~trade secret theft.~~  The alleged trade secret theft began

21              with Bryant's conduct in 1999 ~~and continued to 2005~~.

22              Accordingly, Larian shall produce documents responsive

23              to Request No. 198 that are limited to the time frame 1999

24              to ~~2005~~ *the present*.

25        2.    In accordance with the foregoing amendment, Larian shall,

26   within thirty (30) days of this Order and without objection or limitation, produce

27   any documents not already produced by him responsive to Request No. 198.

28   **D.**   Mattel's Objection Motion is **GRANTED**.  The MGA Parties must

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2

PAGE _____ 61

- 56 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  supplement their answers to the Interrogatories within fifteen (15) days of this

2  Order. Specifically, they must:

3       1.    Withdraw all of the objections they abandoned (except for the

4  privilege objection to Interrogatory No. 50);

5       2.    Confirm that each supplemental response to the Interrogatories

6  is full and complete except for their reservation of its rights to supplement during

7  expert discovery;

8       3.    Identify all persons they are currently aware of who possess

9  knowledge of the facts set forth in Interrogatory No. 50; and

10       4.    Identify all documents that refer or relate to the facts set forth in

11  Interrogatory No. 50 with specificity.

12

13  Dated:     April 28, 2009

14

15                  By:     /s/ Robert C. O'Brien

16                         ROBERT C. O'BRIEN
                       Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 2 _____

PAGE _____ 62 _____

- 57 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

# EXHIBIT 3

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
) CASE NO.
V. ) CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, ET AL., )
)
DEFENDANTS. )
)

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)**

# DEPOSITION OF SUSANA KUEMMERLE

# JANUARY 28, 2008



REPORTED BY:
J'ANA SIEGERS
CSR NO. 10845
JOB NO. 08AE148-JS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _____ 3 _____

PAGE _____ 63 _____

# EXHIBIT 4

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

|  |  |  |
|---|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CASE NO. |
| V. | ) | CV 04-9049 SGL |
| | ) | (RNBX) |
| MATTEL, INC., A DELAWARE | ) | [CONSOLIDATED WITH |
| CORPORATION, | ) | NO.  04-9059 AND CASE NO. 05-2727] |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| AND CONSOLIDATED ACTION (S). | ) | |
| | ) | |

# C O N F I D E N T I A L

# DEPOSITION OF
# CARLOS GUSTAVO MACHADO GOMEZ

# OCTOBER 14, 2008



COURT REPORTERS

515 S. Flower Street
Suite 3600
Los Angeles. California 9007 1
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
PAULA A. PYBURN
CSR NO.  7304
JOB NO. 08AE863-PP

EXHIBIT _____ 4

PAGE _____ 64

# EXHIBIT 5

Case 2:04-cv-09049-DOC-RNB   Document 5388-3   Filed 05/11/09   Page 69 of 96   Page ID
#:175529
Case 2:04-cv-09049-SGL-RNB   Document 4293   Filed 09/02/2008   Page 1 of 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                      Date: September 2, 2008

Title:     MATTEL, INC. -v- MGA, INC.
           AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

       Jim Holmes                         None Present
       Courtroom Deputy Clerk             Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:    ORDER SETTING VARIOUS BRIEFING SCHEDULES

       The Court, having considered the positions of counsel at the hearing herein, as well as the
parties' proposed scheduling positions, hereby sets the following scheduling order for further
proceedings in this matter:

1.     The case is STAYED from the date of this order through September 19, 2008, <u>except</u> for
       efforts aimed in good faith at a complete and global settlement.  Principal corporate officers
       for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make
       themselves available, at a mutually agreeable time, to meet with counsel and Ambassador
       Prosper to discuss a global resolution of this matter.

2.     On September 29, 2008, the parties may file opening briefs and submissions regarding
       remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for
       injunctive relief, constructive trust, and/or other remedial measures.  Response briefs and
       submissions are due October 13, 2008.  Reply briefs and submissions are due October 20,
       2008.  A hearing not to exceed four hours will be conducted before this Court on **Monday,
       November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1

EXHIBIT _____5_____

PAGE _____65_____

3.  Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its issuance of any injunction(s), constructive trust(s), and/or other remedial measures. Response briefs are due 14 days following the opening briefs, and reply briefs are due 7 days following the response briefs. A hearing will be set by the Court after receiving the response briefs. Depending on the outcome of the hearing, the Court may address or defer addressing the following additional issues: (1) Whether or not to issue a judgment or await completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will provide three proposed discovery masters in advance of the hearing to which counsel for the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.  All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3, except as follows: For good cause shown, the Court ORDERS the deposition of **Carlos Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30 days of September 19, 2008. Any disputes concerning the taking of these depositions shall be presented to this District Judge in the manner prescribed in Local Rule 37.

    **IT IS SO ORDERED.**

EXHIBIT ____5____

PAGE ____66____

## NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title** Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**   MINUTES OF SEPTEMBER 2, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

| ✓ | ***ADD NEW NOTICE PARTY*** **(if sending by fax, mailing address must also be provided)** |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

EXHIBIT ___5___          Initials of Deputy Clerk _jh_

PAGE ___67___

# EXHIBIT 6



1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9
                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11
                          EASTERN DIVISION
12

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,               Consolidated with
                                         Case No. CV 04-09059
15      vs.                              Case No. CV 05-02727

16  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
17  corporation,                         **[To Be Heard By Discovery Master
                                         Hon. Edward Infante (Ret.)]**
18              Defendant.
                                         THIRD SUPPLEMENTAL
19                                       DECLARATION OF JON COREY IN
                                         SUPPORT OF MATTEL, INC.'S
20  _____          MOTION TO COMPEL DEPOSITION
                                         OF CARLOS GUSTAVO MACHADO
21  AND CONSOLIDATED ACTIONS             GOMEZ

22                                       Date:   January 16, 2008
                                         Time:   9:00 a.m.
23                                       Place:  Telephonic Hearing

24                                       **Phase 1**
                                         Discovery Cut-Off: January 28, 2008
25                                       Pre-Trial Conference: May 5, 2008
                                         Trial Date: May 27, 2008
26
             EXHIBIT _____6_____
27
             PAGE _____68_____
28

07209/2351295.1
                                1-14
                     THIRD SUPPLEMENTAL DECLARATION OF JON COREY

## THIRD SUPPLEMENTAL DECLARATION OF JON COREY

I, Jon Corey, declare as follows:

1.      I am a member of the bar of the State of California and the District of Columbia, am admitted to practice before this Court and am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      In paragraph 2 of the Declaration of Carlos Gustavo Machado Gomez submitted with his untimely supplemental Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion to Compel (1) Deposition of Carlos Gustavo Machado Gomez, and (2) Consent to Production of Electronic Mail Messages, he declared: "I am current [sic] restricted from traveling outside Mexico [sic], pursuant to court order." Mr. Machado, however, can obtain and has obtained leave of court to travel to the United States at MGA's request, including as recently as last month, when he was in the Los Angeles area for approximately one week. Mr. Machado was granted leave the same day that he asked for it.

3.      Late yesterday afternoon, January 15, 2008, I received documents which are submissions made by Mr. Machado's counsel in Mexico to the court in Mexico which sought an order allowing Mr. Machado leave to travel to the United States for MGA marketing meetings—technically leave not to comply with the weekly registration and signing requirements. It also includes the order of that court granting Mr. Machado leave. A true and correct copy of those documents is attached as Exhibit A. A true and correct copy of a translation of those documents (except the photocopy of the air travel ticket), and the certification, is attached as Exhibit B.

4.      Mr. Machado made his request for leave to travel to the United States on December 5, 2007, and it was granted on December 5, 2007 (the day before Mr. Machado's counsel offered to produce him for deposition in Mexico

EXHIBIT _____ 6

PAGE _____ 69

1  City).  I am informed and believe, based on the copy of the air travel ticket that Mr.

2  Machado submitted to the court in Mexico and the letter from MGA requesting that

3  he attend MGA marketing meetings, that he traveled to the United States on

4  December 5, 2007 and remained in the United States—specifically to attend

5  meetings at the request of MGA—until December 13, 2007.  MGA, a party to these

6  proceedings, can similarly request that Mr. Machado appear for deposition in the

7  United States and apparently can do so on a day or two of notice.

8          I declare under penalty of perjury under the laws of the United States

9  of America that the foregoing is true and correct.

10         Executed on January 14, 2008, at Los Angeles, California.

11

12                     By_____

13                         Jon Corey

14

15

16

17

18

19

20

21

22

23

24

25

26

27 **EXHIBIT** _____ 4 _____

28 **PAGE** _____ 70 _____

07209/2351295.1

-3-

THIRD SUPPLEMENTAL DECLARATION OF JON COREY

# EXHIBIT A

EXHIBIT _____ $6$ _____

PAGE _____ $71$ _____

FRANCO & FRANCO
BUFETE JURÍDICO, S.C.

PASEO DE LAS PALMAS 755-1201
LOMAS DE CHAPULTEPEC, 11000, MÉXICO D.F.

TEL. (52-55) 5520-7575
FAX. (52-55) 5202-9395

CAUSA PENAL: 130/2007-V

...EZA DÉCIMA DE DISTRITO DE PROCESOS
...LES FEDERALES EN EL DISTRITO FEDERAL

CARLOS GUSTAVO MACHADO GÓMEZ, promuevo en la
...citada al rubro y con todo respeto digo:

En auto de 17 de octubre de 2007, su señoría tuvo por exhibi-
...das las garantías fijadas para cumplir mis obligaciones por la concesión
de la libertad provisional que me otorgó.

En dicho auto me hizo saber diversas prevenciones, entre las
...ales se encuentran: la de firmar en el libro de control de procesados
...los días lunes de cada semana y la de no ausentarme del lugar sin
permiso de ese juzgado.

El próximo lunes 3 de diciembre cumpliré con mi obligación de
firmar el mencionado libro de control de procesados. Con fundamento
...del artículo 411 de Código Federal de Procedimientos Penales, solicito
atentamente permiso para ausentarme de este lugar, y no firmar el ci-
tado libro de control el lunes 10 de diciembre de 2007, por lo que el
lunes 17 de diciembre de 2007, continuaré cumpliendo con todas las
obligaciones impuestas.

Lo anterior significa que el permiso que solicito para ausentar-
me del lugar, no excede del marcado en el párrafo primero del señalado
artículo 411.

Agradezco su comprensión.

México, D.F., a 29 de noviembre de 2007.

CARLOS GUSTAVO MACHADO GÓMEZ

EXHIBIT _____ 6
PAGE _____ 72





En veintinueve de noviembre de dos mil siete, la secretaria da cuenta a la jueza, con el oficio 835/UEIDCSPCAJ/2007, firmado por la agente del Ministerio Público de la Federación, titular de la Mesa XXX UEIDCSPCAJ, adscrita a la Unidad Especializada en Investigación de Delitos Cometidos por Servidores Públicos y Contra la Administración de Justicia de la Subprocuraduría en Investigación Especializada en Delitos Federales de la Procuraduría General de la República; así como, con el oficio 4832, firmado por el secretario de acuerdos del Primer Tribunal Unitario en Materia Penal del Primer Circuito y con el escrito firmado por el procesado CARLOS GUSTAVO MACHADO GÓMEZ, recibidos en la oficina de correspondencia de este juzgado a las trece horas con cincuenta y dos minutos y catorce horas con diez minutos del día de ayer y a las once horas con cuarenta y ocho minutos del día de la fecha, registrados en el libro respectivo con los folios 12350, 12351 y 12359, respectivamente. CONSTE.

SECRETARIA.



MÉXICO, DISTRITO FEDERAL, VEINTINUEVE DE NOVIEMBRE DE DOS MIL SIETE.

Vista la razón de cuenta, se tiene por recibido el oficio 835/UEIDCSPCAJ/2007, por el cual, la agente del Ministerio Público de la Federación, titular de la Mesa XXX UEIDCSPCAJ, adscrita a la Unidad Especializada en Investigación de Delitos Cometidos por Servidores Públicos y Contra la Administración de Justicia de la Subprocuraduría en Investigación Especializada en Delitos Federales de la Procuraduría General de la República, solicita copia certificada de la presente causa penal, no como parte de la misma, sino como autoridad investigadora de hechos posiblemente constitutivos del delito contra la administración de justicia, cometido por el Magistrado del Primer Tribunal Unitario en Materia Penal, licenciado Jorge Fermín Rivera Quintana; asimismo, señala que sus oficinas se encuentran ubicadas en Insurgentes Sur número 235, onceavo piso, Colonia Roma, Delegación Cuauhtémoc, código postal 06700, en esta ciudad; atento lo anterior, con apoyo en el artículo 41 del Código Federal de Procedimientos Penales, no ha lugar a acordar de conformidad su petición, dado que como bien lo sostiene no es parte en la presente causa penal, por lo que tal petición, en todo caso, deberá realizarse a través del representante social Federal adscrito.

Por otra parte, glósese a los autos el oficio 4832, por el cual, el secretario de acuerdos del Primer Tribunal Unitario en Materia Penal del Primer Circuito, devuelve el testimonio enviado con motivo del recurso de apelación interpuesto contra el auto de nueve de noviembre del año en curso, a efecto de que sea debidamente integrado el respectivo testimonio de la causa penal, toda vez que aún y cuando les fue informado que se remitieron copias certificadas del expediente, con

EXHIBIT _____ 6

PAGE _____ 73



motivo de diverso recurso de apelación, la substanciación de los recursos interpuestos se manejarán por cuerda separada para emitir la resolución correspondiente, sin importar que el mismo tribunal conozca de diverso recurso de apelación relacionado con la misma causa penal; asimismo, refiere que una vez que se integre el testimonio, se envíe nuevamente a esa superioridad, para la debida substanciación de los recursos hechos valer ante esa alzada; atento lo anterior, a la brevedad posible, remítase copia certificada de la presente causa penal a la superioridad, en relación al recurso de apelación de que se trata.

En ese sentido, dado que el veintiséis de noviembre actual fue admitido diverso recurso de apelación interpuesto contra el auto de quince del presente mes y año, en el que se ordenó que únicamente se enviara al Tribunal Unitario en Materia Penal del Primer Circuito en turno, las constancias inherentes al recurso interpuesto, con apoyo en el artículo 41 del Código Federal de Procedimientos Penales, obténganse las copias de la presente causa penal y precédase a su certificación, para estar en aptitud de remitirlas para la substanciación del recurso admitido el veintiséis de los actuales.

En tales condiciones, dado el volumen de la presente causa penal, solicítese al departamento de reproducción del Consejo de la Judicatura Federal, con sede en este edificio, tenga a bien obtener tres copias del expediente constante de once tomos y cinco anexos, a fin de ser remitidos al Primer Tribunal Unitario en Materia Penal del Primer Circuito, y al de turno, para la substanciación de los recursos planteados, así como al representante social de la Federación.

Finalmente, glósese a los autos el escrito por el cual, el procesado **CARLOS GUSTAVO MACHADO GÓMEZ**, solicita permiso para ausentarse de este lugar (sic) y no firmar el libro de control de procesados, el lunes diez de diciembre de dos mil siete; atento lo anterior, con apoyo en el artículo 41 del ordenamiento procesal en cita, no ha lugar a acordar de conformidad su petición, toda vez que no expone los motivos por los cuales solicita tal autorización, ni mucho menos exhibe la documentación que acredite tal circunstancia.

**NOTIFÍQUESE Y PERSONALMENTE A CARLOS GUSTAVO MACHADO GÓMEZ.**

Así, lo proveyó y firma **VERÓNICA JUDITH SÁNCHEZ VALLE**, jueza Décimo de Distrito de Procesos Penales Federales en el Distrito Federal, asistida la secretaria **Lourdes Rosales Cabrera**, quien autoriza. DOY FE.

JUEZA                                                    SECRETARIA

EXHIBIT _____ 6

PAGE _____ 74

FRANCO & FRANCO
BUFETE JURÍDICO, S.C.

PASEO DE LAS PALMAS 755-1201
LOMAS DE CHAPULTEPEC, 11000, MÉXICO D.F.

TEL. (52-55) 5520-7575
FAX. (52-55) 5202-9395

CAUSA PENAL: 130/2007-V

JUEZA DÉCIMA DE DISTRITO DE PROCESOS
PENALES FEDERALES EN EL DISTRITO FEDERAL

**CARLOS GUSTAVO MACHADO GÓMEZ**, promuevo en la causa citada al rubro y con todo respeto digo:

He quedado debidamente notificado del auto de 29 de noviembre de 2007, en el que no acuerda de conformidad mi petición de no firmar el libro de control de procesados, el lunes 10 de diciembre de 2007.

Los motivos por los cuales reitero mi petición y exhibo la documentación correspondiente, son los siguientes:

En carta de 27 de noviembre de 2007, el señor Emilio Menotti, Director de Operaciones de MGAE, Sociedad de Responsabilidad Limitada, me ordenó trasladarme a la ciudad de Los Ángeles, California, Estados Unidos de América, con el fin de asistir a diversas reuniones de la empresa a la que presto mis servicios, del 5 al 13 de diciembre de 2007, que son de gran importancia para la misma, como resulta de la lectura del original de la carta que acompaño como anexo 1.

Así, el 3 del actual adquirí el boleto 5192 123600 3 expedido por Aeroméxico, para salir de esta Ciudad de México hacia Los Ángeles el día 5 y regreso el 13, todos del presente diciembre de 2007. Acompaño fotocopia certificada por notario del mencionado boleto como anexo 2.

Expuesto lo anterior, con todo respeto reitero el permiso que solicito para ausentarme de México, por un periodo que no excede del marcado en el párrafo primero del señalado artículo 411 del Código Federal de Procedimientos Penales.

Agradezco anticipadamente su acuerdo favorable.

México, D.F., a 4 de diciembre de 2007.

Carlos Gustavo Machado Gómez

EXHIBIT ___6___

PAGE ___75___



**Corporate Office:**

16380 Roscoe Blvd.
Van Nuys, CA 91406 USA
Tel 818.894.2525
Fax 818.892.9060

México, D.F., a 27 de noviembre de 2007

Señor Carlos Gustavo Machado Gómez:
P r e s e n t e

Comunico a usted que del 5 al 13 del próximo diciembre de 2007, se llevarán a cabo en la oficina matriz de MGAE, en la ciudad de Los Ángeles, California, Estados Unidos de América, reuniones internacionales de mercadotecnia, en las que se tratarán los siguientes temas:

Nueva línea de productos para la Temporada de 2008.
Estrategias de posicionamiento de las marcas de mayor importancia.
Diseños de comercialización y planeación para 2008.
Globalización de las estrategias y diseños para 2008.

Por lo anterior, por ser de su exclusiva competencia los temas señalados en los que participará, deberá trasladarse a Los Ángeles, California, Estados Unidos de América, del 5 al 13 de diciembre de 2007.

Atentamente

Emilio Menotti Velázquez
Director de Operaciones de MGAE

EXHIBIT ____6____

PAGE ____76____



EXHIBIT _____ 6

PAGE _____ 77



MIGUEL ANGEL ZAMORA VALENCIA, NOTARIO NUMERO SETENTA Y OCHO DEL DISTRITO FEDERAL, CERTIFICO: Que la presente copia fotostática en una foja, escrita solo por su frente, que rubrico y sello, concuerda fielmente con su original del que fue sacada, tuve a la vista y con el cual cotejé, y que es un boleto de avión de la línea "Aeromexico", de la Ciudad de México a los Angeles, para el día cinco de diciembre del presente año, a favor del señor CARLOS GUSTAVO MACHADO.- Este cotejo se expide con fundamento y para los efectos exclusivos de lo dispuesto en el  articulo ciento sesénta de la Ley del Notariado para el Distrito Federal.- Para constancia levanté hoy el Registro número MIL QUINIENTOS SETENTA Y CINCO del libro de registro número tres de cotejos del protocolo de esta Notaría.- México, Distrito Federal, a cuatro de diciembre del año dos mil siete.- DOY FE.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



EXHIBIT 6

PAGE 78



FORMA B-2

NTA Y
ostática
e con su
oleto de
a el día
STAVO
os de lo
Distrito
ENTOS
de esta
- DOY

En cinco de diciembre de dos mil siete, María de Lourdes Campos Campos, secretaria adscrita al Juzgado Décimo de Distrito de Procesos Penales Federales, **certifica:** que al tener a la vista el libro de control de firmas de procesados en libertad, tomo X, foja 195, se aprecia que el procesado **CARLOS GUSTAVO MACHADO GÓMEZ,** no ha dejado de cumplir con su obligación de presentarse a firmar el libro respectivo, certificación que se hace para los efectos legales a que haya lugar. **DOY FE.**

SECRETARIA

En la misma fecha, la secretaria da cuenta a la jueza, con el escrito firmado por el procesado **CARLOS GUSTAVO MACHADO GÓMEZ** y anexos, recibido en la oficina de correspondencia de este juzgado a las once horas con cincuenta minutos del día de ayer, registrado en el libro respectivo con el folio **12524,** así como con la certificación que antecede. **CONSTE.**

SECRETARIA.

**MÉXICO, DISTRITO FEDERAL CINCO DE DICIEMBRE DE DOS MIL SIETE.**

Agréguese a los autos el escrito por el cual, el procesado **CARLOS GUSTAVO MACHADO GÓMEZ,** reitera su petición para ausentarse de México del cinco al trece de diciembre del año en curso, por motivos laborales; asimismo, exhibe la documentación que acredita tal circunstancia y copia certificada del boleto 5192123600 3, expedido por Aeroméxico; atento lo solicitado, tomando en consideración la certificación de cuenta, en la que se advierte que hasta la fecha dicho procesado no ha dejado de cumplir con las obligaciones contraídas con este tribunal, al momento de obtener su libertad provisional, y únicamente solicita permiso de ausentarse del país por nueve días, esto es del cinco al trece del mes y año en curso, con fundamento en el artículo 411 del Código Federal de Procedimientos Penales, se concede el permiso solicitado por el procesado, por lo que deberá presentarse a firmar el libro respectivo hasta el diecisiete de los actuales; háganse las anotaciones correspondiente en el libro de firmas de procesados en libertad.

**NOTIFÍQUESE Y PERSONALMENTE A CARLOS GUSTAVO MACHADO GÓMEZ.**

Así, lo proveyó y firma **VERÓNICA JUDITH SÁNCHEZ VALLE,** jueza Décima de Distrito de Procesos Penales Federales en el Distrito Federal, asistida de María de Lourdes Campos Campos, secretaria quien autoriza. **DOY FE.**

JUEZA

SECRETARIA

Lic. LRC/elrm

EXHIBIT _____ 6 _____

PAGE _____ 79 _____

... _.. Distr. Federal, a las nueve horas del _Seis_ de
_diciembre_ de _2007_ se notificó por lista a las partes, el
que suscribe, Doy fe.

**CERTIFICACION**

EL SECRETARIO DEL JUZGADO DECIMO DE DISTRITO DE PROCESOS PENALES
FEDERALES EN EL DISTRITO FEDERAL, C E R T I F I C A QUE LA (S) PRESENTE
(S) COPIA (S) FOTOSTÁTICA (S) CONSTANTES DE _____ 8 _____, FOJAS ÚTILES
SON FIEL Y EXACTAS DE SUS ORIGINALES QUE OBRAN EN LOS AUTOS DEL EXPEDIENTE
NÚMERO _130/2007. V. Tomo XI_ , INSTRUIDO EN CONTRA DE
_Xomara Prolas Almeida y Otros_ POR LA COMISION DEL
DELITO DE _Peralio en el art 223 frac. V Ley de P.I._ DEL
INDICE DE ESTE JUZGADO, MISMA ... SE EXPIDEN A PETICIÓN DE
_la coordinación del Ministerio Público_
MÉXICO, D.F. A _20_ DE _Diciembre_ DEL _2007_

EL SECRETARIO

_Marisa ... les Campos. Campos_

PODER JUDICIAL DE LA FEDERACIÓN

EXHIBIT ___6___

PAGE ___80___

# EXHIBIT B

EXHIBIT_____6_____

PAGE_____81_____

[redacted]        *1*

Franco & Franco
Bufete Jurídico, S.C.

Paseo de las Palmas 755-1201                    Tel. (52-55) 5520-7575
Lomas de Chapultepec, 11000, Mexico, F.D.       Fax (52-55) 5202-9395

## CRIMINAL CASE: 130/2007-V

**TENTH DISTRICT JUDGE OF FEDERAL
CRIMINAL MATTERS IN THE FEDERAL DISTRICT**

[illegible stamp]

**CARLOS GUSTAVO MACHADO GÓMEZ**, appear in the case mentioned in reference and respectfully state:

In the order of October 17, 2007, Your Honor took note of the posting of the guarantees established in order to comply with my obligations in connection with my release on parole.

[illegible stamp]

In said order, your honor informed me of various obligations, including: to sign in the control book of defendants on the Monday of each week and **not to be absent from the place without the permission of this court.**

Next Monday, December 3, I will comply with my obligation of signing said control book of defendants. Pursuant to article 411 of the Federal Code of Criminal Procedure, I respectfully request permission to be absent from this place and **not to sign said control book on Monday, December 10, 2007,** so that I will continue complying with all obligations imposed on Monday, December 17, 2007.

The above means that the permission I request to be absent from the place does not exceed that indicated in paragraph one of said article 411.

I thank you for your understanding.
Mexico, F.D., November 29, 2007.


[signature]
**CARLOS GUSTAVO MACHADO GÓMEZ**

*12359*
[illegible]

EXHIBIT ____6____

PAGE ____82____

[stamp and text cut off]

[redacted]
FORM B-2

2

On the twenty-ninth day of November two thousand seven, the court office reports to the judge, by letter **835/UEIDCSPCAJ/2007**, signed by the Federal Prosecutor, head of Desk XXX UEIDCSPCAJ, of the Unit Specialized in Investigation of Crimes Committed by Public Servants and Against the Administration of Justice of the [illegible stamp]Assistant Prosecutor's Office for Investigation Specialized in Criminal Crimes of the Attorney General's Office, as well as letter **4832**, signed by the clerk of the First One-Judge Court in Criminal Matters of the First Circuit and the brief signed by defendant **CARLOS GUSTAVO MACHADO GÓMEZ**, received at the correspondence office of this court at one fifty-two P.M. and two ten P.M. yesterday and at eleven forty-eight A.M. today, recorded in the respective book on folios **12350, 12351** and **12359** respectively. *FOR THE RECORD.*

[illegible stamp]

[signature]
**CLERK.**

## MEXICO, FEDERAL DISTRICT, THE TWENTY-NINTH DAY OF NOVEMBER TWO THOUSAND SEVEN

In light of the above, we take note of the receipt of letter **835/UEIDCSPCAJ/2007**, by which the Prosecutor Head of Desk XXX UEIDCSPCAJ, of the Unit Specialized in Investigation of Crimes Committed by Public Servants and Against the Administration of Justice of the Assistant Prosecutor's Office for Investigation Specialized in Criminal Crimes of the Attorney General's Office, requests a certified copy of said criminal case, not as a party thereto, but as the investigating authority of facts possibly constituting a crime against the administration of justice committed by the Magistrate of the First One Judge Court in Criminal Matters, attorney Jorge Fermin Rivera Quintana; furthermore, he indicates that his offices are located at Insurgentes Sur number 235, eleventh floor, Colonia Roma, Delegacion Cuauhtemoc, zip code 06700, in this city; in light of the above, pursuant to article 41 of the Federal Code of Criminal Procedure, it is not appropriate to grant his request because, as sustained by him, he is not a party to this criminal case so that such request in any case must be made through the appropriate Federal social representative.

On the other hand, note will be made in the file of letter **4832**, by which the clerk of the First One Judge Court in Criminal Matters of the First Circuit returns the certified copy sent in connection with the appeal filed from the decision of November ninth of this year, to be duly integrated in the criminal case, because, even though he was informed that certified copies of the file were delivered, in

EXHIBIT _____ 6

PAGE _____ 83

[stamp cut off]

connection with a different appeal, the substantiation of the appeals filed will be handled under separate files, in order to issue the corresponding resolution regardless of the fact that the same court hears another appeal related to the same criminal case; furthermore, he indicates that after the inclusion of the certified copy, it should be sent again to this superior court for due substantiation of the appeals filed with this higher court; in light of the above, as soon as possible, a certified copy of this criminal case must be delivered to the higher court in connection with the appeal in question.                                                                                          [illegible]

In this sense, since on November twenty-sixth of this year, a different appeal was admitted, filed from the decision of the fifteenth of this month and year, ordering that the documents of the appeal be sent only to the Criminal One Judge Court of the First Circuit on [illegible stamp] duty, pursuant to article 41 of the Federal Code of Criminal Procedures, copies of the present criminal case will be obtained and they will be certified in order to be forwarded for substantiation of the file admitted on the twenty-sixth of this month.

Under these conditions, given the volume of this criminal case, we are requesting the reproduction department of the Council of the Federal Judicature headquartered in this building to obtain three copies of the file consisting of eleven volumes and five addenda in order to forward them to the First One Judge Court in Criminal Matters of the First Circuit and to the court on duty for the substantiation of the appeals file, as well as to the Federal social representative.

Finally, a note will be made in the documents concerning the brief by which defendant **CARLOS GUSTAVO MACHADO GÓMEZ** requests permission to be absent from this place (sic) and not to sign the control book of defendants on Monday, December 10, 2007; in light of the above, pursuant to article 41 of the procedural code quoted, it is not appropriate to grant his petition because he does not indicate the reasons for which he requests such authorization, nor does he submit any documentation proving such circumstance.

**TO BE PERSONALLY SERVED ON CARLOS GUSTAVO MACHADO GÓMEZ.**

So ordered and signed by **VERÓNICA JUDITH SÁNCHEZ VALLE**, District Judge number Ten of Federal Criminal Matters in the Federal District assisted by clerk **Lourdes Rosales Cabrera** who authorizes. **I CERTIFY.**

**JUDGE**                                             **SECRETARY**
[Signature]                                         [Signature]

EXHIBIT _____ 6 _____

PAGE _____ 84 _____

[redacted]     *3*

Franco & Franco
Bufete Jurídico, S.C.

Paseo de las Palmas 755-1201                        Tel. (52-55) 5520-7575
Lomas de Chapultepec, 11000, Mexico, F.D.          Fax. (52-55) 5202-9395

CRIMINAL CASE: 130/2007-V

*(1/2 attachments)*
*[illegible]*
*12524*

**TENTH DISTRICT JUDGE OF FEDERAL
CRIMINAL MATTERS IN THE FEDERAL DISTRICT**

**CARLOS GUSTAVO MACHADO GÓMEZ**, appearing in the case cited in reference, respectfully states:

[illegible stamp]

I was duly notified of the decision of November 29, 2007, which rejected my request not to sign the control book of defendants on Monday, December 10, 2007.

The reasons for which I repeat my request and produce the corresponding documentation are the following:

In a letter dated November 27, 2007, Mr. Emilio Menotti, Director of Operations of MGAE, Sociedad de Responsabilidad Limitada, ordered me to travel to Los Angeles, California, United States of America, to attend various meetings of the company for which I work, from December 5 to 13, 2007, which are of great importance for the company as arises from reading the original letter, which I enclose as exhibit 1.

Thus, on the 3rd of this month, I purchased ticket 5192123600 3 issued by Aeroméxico, to leave Mexico City going to Los Angeles on the 5th, returning on the 13th, this month of December 2007. I enclose a photocopy certified by notary of said ticket as exhibit 2.

After indicating the above, I respectfully repeat the request for permission to be absent from Mexico for a period not exceeding that indicated in the first paragraph of said article 411 of the Federal Code of Criminal Procedure.

I thank you in advance for your approval.

Mexico, F.D., December 4, 2007

[signature]

Carlos Gustavo Machado Gómez

EXHIBIT ____6____

PAGE ____85____

[redacted]          *4*

[logo:] [text cut off] GA
ENTERTAINMENT®

Entertainment Products Company

**Corporate Office:**
16380 Roscoe Blvd.
Van Nuys, CA 91406 USA
Tel 818.894.2525
Fax 818.892.9060

Mexico, F.D., November 27, 2007

Mr. Carlos Gustavo Machado Gómez:
By Messenger

I am informing you that next December 5 to 13, 2007, at the headquarters of MGAE in the city of Los Angeles, California, United States of America, international marketing meetings will be held and will discuss the following topics:
1. New product line for the 2008 season.
2. Strategies for positioning the major brands.
3. Designs for marketing and planning for 2008.
4. Globalization of the strategies and designs for 2008.
In light of the above, since the above topics are under your exclusive competence, you must participate and therefore travel to Los Angeles, California, United States of America, from December 5 to 13, 2007.

[illegible stamp]

Sincerely,
[signature]
Emilio Menotti Velázquez
Director of Operations of MGAE

EXHIBIT _____ 6 _____

PAGE _____ 86 _____

[illegible stamp]                                                    [redacted]        5

   [photocopy of airplane ticket, bilingual Spanish/English]

   [stamp:]
   ATTY. MIGUEL ANGEL ZAMORA VALENCIA
   ATTY. MIGUEL ANGEL ZAMORA Y VEGA              [stamp:]
   DEC. 4, 2007                                  COMPARED
   ASSOCIATED NOTARY OFFICES 78 AND 10 [illegible]
   MEXICO, F.D.


[illegible stamp]


                        EXHIBIT _____ 6 _____

                        PAGE _____ 87 _____

*6*

[stamp cut off]

**MIGUEL ANGEL ZAMORA VALENCIA, NOTARY NUMBER SEVENTY-EIGHT OF THE FEDERAL DISTRICT, CERTIFY:** That this photocopy on one page, written only on the front which I initial and stamp, is a true copy of its original from which it was made, which I saw and with which I compared it, and that it is an airplane ticket from the "Aeromexico" airline, from Mexico City to Los Angeles for December fifth, this year, issued to mister CARLOS GUSTAVO MACHADO. – This comparison is issued on the grounds and for the exclusive purposes of article one hundred sixty of the Notary Law for the Federal District. – For the record, I made today Registration Number ONE THOUSAND FIVE HUNDRED SEVENTY-FIVE in the registration book number three of comparisons of the protocol of this Notary office. – Mexico, Federal District, December fourth of two thousand seven. – I CERTIFY. - - - - - -

[signature]

[illegible stamp]                                           [illegible stamp]

EXHIBIT ____6____

PAGE ____88____

[redacted]
FORM B-2

7

[stamp cut off]    On **December five, two thousand seven, Maria de Lourdes Campos Campos,** clerk of the Tenth District Court of Federal Criminal Matters, **certifies:** that after seeing the control book of signatures of defendants freed on parole, volume X, page 195, it is found that defendant **CARLOS GUSTAVO MACHADO GÓMEZ,** did not comply with his obligation to come to sign the respective book, which we certify for the applicable legal purposes. **I CERTIFY.**

[illegible stamp]

[signature]
**CLERK**

On the same date, the clerk reports to the judge the brief signed by defendant **CARLOS GUSTAVO MACHADO GÓMEZ** and exhibits received at the correspondence office of this court at eleven fifty A.M. yesterday, recorded in the respective book folio **12524,** as well as the prior certification. *FOR THE RECORD.*

[illegible stamp]

[signature]
**CLERK**

**MEXICO, FEDERAL DISTRICT, DECEMBER FIVE, TWO THOUSAND SEVEN.**
Add to the file the brief by which defendant **CARLOS GUSTAVO MACHADO GÓMEZ** repeats his request to be absent from Mexico from December fifth to December thirteenth of this year for work reasons; furthermore, he exhibits the documentation proving such circumstance and certified copy of ticket 5192123600 3, issued by Aeromexico; in light of the request, taking into consideration the certification which shows that to date said defendant has constantly complied with his obligations towards this court, when he obtained at his release on parole, and he only requests permission to be absent from the country for nine days, namely from the fifth to the thirteenth of this month and year, pursuant to article 411 of the Federal Code of Criminal Procedure, we grant the request of the defendant, so that he must appear to sign the respective book by the seventeenth of this month; the corresponding notes will be made in the book of signatures of defendants freed on parole.
**TO BE PERSONALLY SERVED ON CARLOS GUSTAVO MACHADO GÓMEZ.**
So ordered and signed by **VERÓNICA JUDITH SÁNCHEZ VALLE,** District Judge number Ten of Federal Criminal Matters in the Federal District assisted by **Maria de Lourdes Campos Campos,** clerk, who authorizes. **I CERTIFY.**

**JUDGE**
[signature]

**SECRETARY**
[signature] Atty. LRC/airm

EXHIBIT _____ 6 _____

PAGE _____ 89 _____

*8*
[stamp cut]

[illegible]

## CERTIFICATION

[illegible stamp]

THE CLERK OF THE TENTH DISTRICT COURT OF FEDERAL CRIMINAL MATTERS IN THE FEDERAL DISTRICT CERTIFIES THAT THIS PHOTOCOPY (THESE PHOTOCOPIES) CONSISTING OF *8* FULL PAGES ARE A TRUE AND EXACT COPY OF THEIR ORIGINALS FOUND IN THE DOCUMENTS OF FILE NUMBER *130/2007 / V, Volume XI*, FILED AGAINST *Mariana Trueba Almada, et al.,* FOR COMMITTING THE OFFENSE OF *As described in article 223 section V of the Intellectual Property Law*, ON THE DOCKET OF THIS COURT, ISSUED AT THE REQUEST OF *the Assistant Prosecutor* MEXICO, F.D. *December 20, 2007.*

illegible stamp

COURT CLERK

[signature]

[stamp:]
JUDICIAL BRANCH OF THE FEDERATION
UNITED MEXICAN STATES

[illegible]

EXHIBIT ____ 6 ____

PAGE ____ 90 ____



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Marina Yoffe, hereby certify that the attached translation of "DOC150108" is to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Marina Yoffe

Sworn to before me this

16th day of January, 2008

Signature, Notary Public

PAUL D. RALSTON
Notary Public, State of New York
No. 01RA6023867
Qualified in Queens County
Commission Expires May 3, 20⌐⌐

Stamp, Notary Public

EXHIBIT _____ 6

PAGE _____ 91

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016    T 212.689.5555    F 212.689.1059    WWW.TRANSPERFECT.COM