QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>      vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR DISCLOSURE OF MGA 2009 PRODUCT LINE INFORMATION IN ADVANCE OF MAY 18, 2009 HEARING ON MGA'S *EX PARTE* APPLICATION FOR STAY**<br><br>**Phase 2:**<br>Disc. Cut-off:      December 11, 2009<br>Pre-trial Conf.:    March 1, 2010<br>Trial Date:          March 23, 2010 |

07975/2929320.1

**Preliminary Statement**

MGA states in its opposition that it will turn over some of the information requested by Mattel if the Court believes it is appropriate and that it does not object to the deposition of Toys 'R Us. MGA's offer confirms that the information is properly sought here and should be compelled. However, MGA's efforts to limit the already focused requests for information or to hinder Mattel's ability to review the information should be rejected. Mattel's counsel must be permitted to photocopy materials and photograph the items so that they can properly analyze them and convey accurate information to the Court. Moreover, MGA has only offered to provide samples from among the Spring 2009 and Fall 2009 Bratz dolls and the 2009 "Moxiez" dolls, instead of samples of each doll. MGA should not be permitted to cherry-pick the dolls it produces, especially since it would defeat the purpose of Mattel's request here to obtain information about the full range of these dolls. MGA should be ordered to make samples of each doll available for inspection so Mattel has a full understanding of the products directly at issue.

MGA's remaining arguments are without merit. Mattel has been diligent in seeking the requested discovery. MGA's Friday filing of an *Ex Parte* Application and Motion for a Stay triggered Mattel's urgent need for the discovery sought in this *ex parte* application. Mattel filed its *ex parte* application on Monday, the next business day after MGA moved for a stay.

MGA elsewhere asserts that the requested information regarding the Bratz and "Moxiez" dolls is irrelevant and that Mattel already has enough information about MGA's supposed support for Bratz. Not so. The requested information is appropriate so Mattel can fully respond to MGA's claim that a stay is needed to preserve the Bratz brand. If MGA is not selling or promoting 2009 line Bratz dolls in any material way or is focused on "Moxiez" instead or perhaps even cannibalizing Bratz to foster "Moxiez," a principal justification for its stay request would evaporate. Moreover, MGA's concerns about the purported confidentiality of

1  the "Moxiez" are unfounded.  Indeed, it is little different from MGA's unsupported,
2  stereotyped arguments that it routinely uses in this case to justify its flat refusals to
3  produce any discovery unless compelled by Court Order (and often only after being
4  repeatedly compelled).  As this Court, the current Discovery Master, and the prior
5  Discovery Master all have repeatedly ruled in rejecting this MGA argument,
6  however, the existing protective order in this case obviates any such confidentiality
7  or trade secret concerns.
8         Mattel respectfully requests that its application be granted.

### Argument

10  **I.  MATTEL MOVED DILIGENTLY**

11  MGA argues that Mattel's *ex parte* is deficient because it should have sought
12  the requested discovery sooner.  It also accuses Mattel of seeking discovery for the
13  purpose of delaying the hearing on its stay motion.  The assertions are unfounded.
14  Mattel has made no request to continue the hearing on the stay motion.  The
15  chronology of events also confirms that Mattel moved expeditiously to seek the
16  requested discovery.  Mattel's immediate need to obtain the requested information
17  was precipitated by MGA's filing late on Friday, May 8, 2009, of its *Ex Parte*
18  Application and Motion for Stay Pending Appeal ("Motion for Stay").  The Motion
19  for Stay is predicated in large part on MGA's claim that a stay is needed to preserve
20  the value of the Bratz line, including into Spring 2010.  As a consequence, MGA's
21  application put the question of MGA's plans and intentions directly at issue.  The
22  very next business day after MGA's Motion for Stay was filed, Mattel moved to
23  obtained the requested information.  Mattel has been more than diligent here.

24  **II.  THE REQUESTED INFORMATION REGARDING BRATZ DOLLS IS
25  DIRECTLY RELEVANT TO MGA'S PENDING STAY MOTION**

26  MGA also contends that Mattel does not need the requested discovery
27  regarding the Bratz dolls because it already has information regarding whether
28  MGA supports the Bratz dolls and what factors have caused sales to decline.  In

particular, MGA points to the expert report of Paul Meyer filed in support of MGA's Motion for Stay and interviews with MGA's Isaac Larian, John Woolard and Steve Schultz. Mattel of course is not required to take the word of MGA's executives or its expert regarding why the sales of Bratz dolls are declining, especially given the serious credibility problems that each of them has and MGA's and Larian's long track record of false and misleading statements in this litigation in particular. Both Mattel and the Court are entitled to learn whether the assertions of MGA's executives and experts are consistent with the actual facts and evidence.

Moreover, MGA argues that its intentions regarding the Bratz line have no bearing on its Motion for Stay, but only relate to whether a permanent receiver should be appointed.[1] That argument is mistaken. MGA never disputes that a primary justification for its Motion for Stay is that there will be harm to the Bratz line if a stay is not granted into Spring 2010. This premise falls apart if MGA plans, even now, not to proceed with a meaningful 2009 Bratz line or if MGA intends to promote another doll in lieu of Bratz.[2] Indeed, if MGA is already tanking the Bratz brand or damaging it in favor of Moxiez, such facts would refute MGA's claims in its Motion for Stay that it will suffer irreparable harm absent a stay and that only MGA can preserve the brand during an appeal. The requested discovery regarding the Bratz dolls pertains directly to MGA's Motion for Stay.

---

[1] MGA Parties' Opposition to Mattel's *Ex Parte* Application for Disclosure of MGA 2009 Product Line Information in Advance of May 18, 2009 Hearing on MGA's *Ex Parte* Application for Stay ("MGA Parties' Opposition"), at 4.

[2] Fresenius Med. Care Hold., Inc. v. Baxter Int'l, Inc., 2008 WL 928496, at *4 (N.D. Cal. Apr. 4, 2008) (rejecting hardship arguments where defendant had claimed it could produce non-infringing products in lieu of infringing ones). See also Telequip Corp. v. The Change Exchange, 2006 WL 2385425 at *4-5 (N.D.N.Y. Aug. 15, 2006) (citing Honeywell Int'l Inc. v Universal Avionics Sys. Corp., 397 F.Supp.2d 537, 546 (D. Del. 2005); Boehinger Ingelheim Vetmedica v. Schering-Plough, 106 F.Supp.2d 696, 703 (D.N.J. 2000).

## III. DISCOVERY REGARDING THE "MOXIEZ" DOLLS IS WARRANTED EVEN IF PURPORTED TRADE SECRETS ARE IMPLICATED

Even though MGA offers to make samples of the "Moxiez" dolls available to Mattel for inspection, MGA devotes two pages of its opposition to arguing that they are trade secrets and not discoverable. MGA's position lack of merit.

MGA argues that the "Moxiez" are trade secrets and are therefore subject to a special standard for discovery. As an initial matter, MGA has not submitted a declaration or other evidence to demonstrate that the "Moxiez" are confidential or qualify for trade secret protection. If MGA's representations to the Court in December about the timeline for the Fall 2009 selling season were accurate, then the dolls for that season have been shown to retailers and others already.[3] But even assuming *arguendo* that they are trade secrets, Mattel has demonstrated that the information it is seeking about the "Moxiez" is highly relevant and necessary to the pending motion. MGA concedes in its Opposition that the "Moxiez" are a line of dolls under development at the same time that sales of Bratz dolls are waning.[4] As Mattel's *Ex Parte* Application and the supporting Zeller Declaration explain, discovery regarding these dolls is needed to determine whether MGA intends to replace or is already replacing Bratz with another product, whether MGA intends to vigorously sell and promote the Bratz dolls and whether MGA intends to repackage any of its Bratz dolls as "Moxiez." While MGA would apparently require Mattel to conclusively prove each of these assertions just to obtain discovery about them, it cites no authority requiring such a showing or any reasoned analysis for such a Catch-22 requirement. In any event, Mattel has submitted evidence to support an inference that MGA is not selling a meaningful 2009 Bratz line and may be

---

[3] MGA's *Ex Parte* Application for Stay, dated December 9, 2008, at 5-6.
[4] MGA Parties' Opposition, at 3, 6

damaging it in favor of Moxiez. Mattel is entitled to evidence from MGA on these issues to ascertain the truth.

MGA also professes concern about disclosing information about "Moxiez" to a competitor.[5] MGA has used this argument, time and time again, to justify its wholesale discovery stonewalling in this case. It also has been rejected, time and time again, by this Court, the current Discovery Master and the prior Discovery Master.[6] As each have ruled, the protective order in place in this action contains mechanisms to ensure that MGA's information is properly protected.[7]

---

[5] MGA Parties' Opposition, at 6-7.

[6] E.g., Discovery Master Order Dated May 15, 2007, at 11, n.4; District Court Order Dated July 2, 2007, at 3 (finding that the existence of the protective order justified compelling production of even "sensitive documents" to MGA's "fierce competitor"). See also e.g., Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a protective order "can strike the appropriate balance between the need for the information and the privacy concerns" of the party opposing production's employees); Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 658 (C.D. Cal. 2005) (compelling production of student records because of slight redactions and "a protective order to minimize any invasion of the students' privacy rights"); In re Heritage Bond Litigation, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("P]laintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order").

[7] The existence of a protective order also dramatically distinguishes this case from, for example, Hartley Pen Co. v. U.S. Dist. Court, 287 F.2d 324, 330, 331 (9th Cir. 1961). In Hartley, the court expected that the trade secrets being sought in discovery would be disclosed to the world if they were ordered produced. Id. at 330-331.

## IV. THE SCOPE OF THE RELIEF REQUESTED IS REASONABLE, AND MGA'S PROPOSED LIMITATIONS SHOULD BE REJECTED

MGA offers to make certain of the requested documents available for inspection if the Court believes it is appropriate, but advocates imposing improper restrictions on the scope of what it will provide. MGA's efforts to impede Mattel's -- and the Court's -- ability to obtain the facts should be rejected.

MGA takes the extravagant position that Mattel's counsel should not be permitted to photocopy the materials or photograph the items they inspect.[8] Mattel's counsel is requesting these materials so they can analyze them and accurately discuss them with the Court. It would be of minimal value, and potentially undermine their probative value, if counsel were allowed only to inspect the documents without obtaining copies, especially given that detailed SKU analysis may be required to ascertain whether what MGA claims is new 2009 Bratz product is in fact new product or simply inventory from prior years that remains on shelves. Nor is there any basis for burdening or hindering Mattel's outside counsel in this manner. The Court should permit Mattel's counsel to photocopy documents and photograph the items they inspect. Of course, the protective order will apply to these materials and ensure that they are kept confidential if so designated.

MGA also seeks to impose unreasonable limits on the dolls it is willing to make available for inspection. Mattel's *ex parte* application requested the production of samples of each of the Spring 2009 and Fall 2009 Bratz dolls and samples of each of the "Moxiez" dolls for launch in 2009. MGA has only offered to produce samples of these dolls, instead of "samples of each" of these dolls.[9] MGA apparently wants to be able to make its own unilateral decision about which dolls will be made available for inspection. Allowing MGA to simply select a few,

---

[8] MGA Parties' Opposition, at 7-8.
[9] MGA Parties' Opposition, at 7.

cherry-picked samples to make available for inspection would defeat the purpose of Mattel's request--which is to obtain a full understanding of the universe of 2009 line Bratz and "Moxiez" dolls that MGA is selling and producing.[10]  As a result, this proposed limitation should be rejected.

MGA offers to provide line lists sufficient to show the 2009 Bratz and "Moxiez" doll lines by SKU, so those documents should be compelled.  It claims, however, that it cannot satisfy Mattel's request for planograms for retailers carrying Spring 2009 Bratz dolls, Fall 2009 Bratz dolls and 2009 "Moxiez" dolls because it claims not to have access to these planograms.[11]  Prior testimony that MGA works with retailers on planograms suggests that this claim is dubious at best,[12] and it would certainly speak volumes about the extent of disarray (or lack of evidence preservation) at MGA if it does not have such documents critical to its on-going and future business operations.  In any event, the Court should compel MGA to avoid any issue and ensure that MGA is obligated to produce any of these planograms that it may have.

Mattel's motion also sought retailer order product "set up" forms showing orders of Spring 2009 Bratz dolls, Fall 2009 Bratz dolls and 2009 "Moxie" dolls, by dollars and by number of units per SKU.  MGA has only offered to produce these forms from the top 4 retailers.  For purposes of this motion and in the interest of obtaining a quick resolution, Mattel will accept this limitation.  Mattel does not

---

[10]  Given MGA's contention that the Spring 2009 line is available on retailers' shelves (MGA Parties' Opposition at 3, n1.), it should be a simple matter for MGA to gather an example of each dolls for inspection.

[11]  MGA Parties' Opposition, at 8, n. 5.

[12]  E.g., Declaration of Larry Falcon ISO of MGA's Motion to Stay, dated __, 2008 and previously filed with the Court, at ¶ 12 (discussing how planograms and shelf space planning starts with "the very first presentation" of a product to a retailer and MGA's involvement in the process with retailers).

1  object if the language of its Proposed Order in paragraph 1(b) and 1(e) is modified
2  to insert the words "for each of the four major toy retailers" at the end.
3      Finally, MGA states in its Opposition that it does not oppose Mattel's request
4  to proceed with a narrow deposition on written questions of Toys 'R Us provided
5  MGA has the opportunity to object to Mattel's questions in advance, MGA can
6  submit its own questions, to which Mattel may object, and the hearing on the motion
7  to stay will not be deferred in the event Toys 'R Us is unable or unwilling to
8  comply.[13]  To ensure that this discovery can commence immediately, Mattel is also
9  willing to agree to these terms, provided that MGA is not the source of any delay.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its *ex parte* application.

DATED:  May 13, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[13]  MGA Parties' Opposition, at 8.