QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL'S SUBMISSION IN SUPPORT OF AN INJUNCTION REQUIRING MGA TO OBTAIN COURT APPROVAL BEFORE FILING FOR BANKRUPTCY** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date:      May 18, 2009<br>Time:                   1:30 P.M.<br>Place:                  Courtroom 1 |

**Preliminary Statement**

Mattel respectfully submits the following in connection with the MGA Parties' challenge to the propriety of this Court's limitations on a bankruptcy filing.

The Order appointing a Temporary Receiver required the MGA Parties (and "their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them") to secure the "prior permission of this Court" before filing for bankruptcy. The Order properly recognized the very substantial possibility that, left unrestrained, Isaac Larian or one of his related entities would use a bankruptcy filing to disrupt the work of the receiver and undercut his efforts to maximize value.  The most recently produced documents, revealing the extraordinary lengths to which Mr. Larian has been willing to go in his effort to subvert the jury's verdicts and the Orders of this Court, only strengthen the rationale for this injunction, and support making it permanent.

**Argument**

**I.   THE DISTRICT COURT HAS THE POWER TO PROTECT PROPERTY IN RECEIVERSHIP FROM ABUSIVE BANKRUPTCY FILINGS**

"Once assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets. The receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets.  To this extent, the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of court is first obtained."  Liberte Capital Group, LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006) (citing SEC v. Universal Fin., 760 F.2d 1034, 1038 (9th Cir. 1985) and Barton v. Barbour, 104 U.S. 126, 128, 26 L. Ed. 672 (1881)).

MGA argues that however broad the Court's powers over assets in receivership, they do not extend to requiring a party to get permission before filing for bankruptcy.  While bankruptcy is not a "constitutional right,"[1] Congress clearly intended to vest exclusive jurisdiction over bankruptcy in the federal courts and provided for broad access to all interested parties.  It is for this reason that MGA can so effortlessly reel off cases that seem to say that injunctions against bankruptcy filings are absolutely barred; indeed, when the injunctions are issued by *state courts*, they are barred on Supremacy Clause grounds, to protect the exclusive jurisdiction vested in the federal courts.[2]  "[T]he exclusivity of an administrative receiver's title to all assets under state law is irrelevant to the determination whether a particular entity may file for bankruptcy relief…. [A] corporation may not be precluded by state law from availing itself of federal bankruptcy law."  In re Cash Currency

---

[1]  United States v. Kras, 409 U.S. 434, 446 (1973); In re Gossett, 369 B.R. 361, 370 (Bkrtcy. N.D. Ill. 2007) ("Bankruptcy relief is a privilege, not a constitutional right.").

[2]  In a lengthy footnote, MGA attempts to create the impression that no federal court may "lay asunder" the "unencumbered right" to file a voluntary petition.  See Opp. to OSC at 19, n.9.  However, each of the cases MGA cites involved state court actions, and most do not even involve injunctions.  In re Mt. Forest Fur Farms of Am., 103 F.2d 69, 71 (6th Cir. 1939), held that a state court may not deny "access to the federal courts," including bankruptcy courts.  Struthers Furnace Co. v. Grant, 30 F.2d 576, 577 (6th Cir. 1929), does not involve an injunction against a bankruptcy filing – the court held, unsurprisingly, that appointment of a receiver and an injunction against "interference" with the receiver does not, in and of itself, operate to prevent an involuntary bankruptcy filing.  In re Corporate and Leisure Event Productions, Inc., 351 B.R. 724, 726, 728 (Bkrtcy. D. Ariz. 2006), holds that "federal bankruptcy law preempts state law" as well as "state law remedies that might interfere" with federal bankruptcy laws.  In re Kreisers, Inc., 112 B.R. 996, 998 (Bkrtcy. D.S.D. 1990), likewise did not involve an injunction against bankruptcy filing, holding that state court appointment of receiver could not preclude a bankruptcy filing, because "the supremacy clause or simply supremacy, requires a state action be declared unenforceable where valid federal legislation preempts state authority."  MGA misleadingly cites In re Medifacts Int'l, Inc., 2007 WL 521917 (Bkrtcy. D. Del., Feb. 7, 2007), a pre-hearing letter from the court to counsel, raising several issues and requesting that "counsel look into these matters and possibly we could have an abbreviated hearing tomorrow" to resolve them.  In re Automotive Professionals, Inc., 370 B.R. 161, 179 (Bkrtcy. N.D. Ill. 2007), again involves no injunction at all.  The court held that a service contracting company was eligible for bankruptcy protection, noting that "[s]tates cannot undermine Congressional intent by broadly classifying entities that are not insurance companies as insurance companies."  Finally, In re S & S Liquor Mart, Inc., 52 B.R. 226, 227 (Bkrtcy. R.I. 1985) ,does not involve any injunction, but merely holds that "a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy (footnote continued)

1    Exch., 762 F.2d 542, 552 (7th Cir. 1985).

2         The federal courts have generally enforced a similar rule with respect to

3    federal injunctions, reflecting not the commands of the Supremacy Clause, but the

4    general statutory preference for bankruptcy court supervision of liquidation.  See,

5    e.g., Los Angeles Trust Deed Mortgage Exch. v. SEC, 285 F.2d, 162, 182 (9th Cir.

6    1960) ("The trial court has found insolvency in the bankruptcy sense, but there is no

7    apparent reason here why the violation of the Securities Act and the Securities

8    Exchange Act should lead to a different type of final liquidation than that which is

9    had for the normal corporate bankrupt.  In true bankruptcy, procedures are better

10   geared for creditors and depositors to give them a day in court and protect their

11   rights"); In re Yaryan Naval Stores Co., 214 F. 563, 564-65 (6th Cir. 1914)

12   (construing federal court order appointing receiver and enjoining "any action, suits,

13   or proceedings affecting any property in which [debtor] is interested without the

14   order and permission of this court" as "contain[ing] nothing which indicates an

15   intention to prohibit a due application being made to the appropriate bankruptcy

16   court").[3]

17        But where there is an "apparent reason" -- a compelling  reason to believe that

18   bankruptcy filings may be made as part of a fraudulent effort to disrupt and derail

19   the receiver -- federal courts have granted injunctions far broader than that issued

20   here.  Bankruptcy is not an inviolable right.  For example, contrary to the sweeping

21   language of In re Yaryan, 214 F. 563 6th Cir. 1914), and Jordan v. Indep. Energy

22   Corp., 446 F. Supp. 516, 529 (D.C. Tex. 1978), quoted by MGA, courts routinely

23   uphold injunctions against bankruptcy filings by vexatious litigants.  See, e.g., Baum

_____

24   courts."  Here, of course, there is no Supremacy Clause bar to this Court's issuance of an
     injunction.

25   [3]   Moreover, the Bankruptcy Code contemplates that a petition may be filed after a
     receiver is appointed, specifically providing that upon commencement of a bankruptcy,

26   a "custodian" must turn over assets to the trustee or debtor in possession and file an
     accounting.  11 U.S.C. § 543(b).  Upon notice of the bankruptcy filing, the receiver's

27   ability to act (other than to promptly turnover the res) is limited to that "necessary to

28   (footnote continued)

v. Blue Moon Ventures, LLC, 513 F.3d 181, 192 (5th Cir. 2008) ("We uphold those provisions of the pre-filing injunction that prevent Douglas Baum from filing claims in federal bankruptcy courts, federal district courts, and federal agencies in the state of Texas without the express written permission of Judge Hughes.").  Moreover, Jordan itself recognized that "where a receiver had been appointed because of a fraud or mismanagement of directors of the receivership corporation, the federal court could refuse to allow the filing of the bankruptcy petition."  446 F. Supp. at 526. (citing Zeitinger v. Hargadine-McKittrick Dry Goods Co., 244 F. 719 (8th Cir. 1917)).

## II. WHERE A DISTRICT COURT FINDS COMPELLING CIRCUMSTANCES, INJUNCTIONS AGAINST ANY BANKRUPTCY FILING WILL BE UPHELD

### A. MGA Wrongly Seeks To Limit Such Authority to Advanced Stages of Liquidation

In SEC v. Lincoln Thrift Ass'n, 577 F.2d 600, 609 (9th Cir. 1978), the Ninth Circuit upheld a district court decision to conduct a liquidation of the debtor via a federal equity receivership.  The liquidation was at an advanced point; the Ninth Circuit also recognized the importance of the district court's "intimate knowledge of the factual data relevant to liquidation" and "the receiver's expertise."  Finally, and perhaps most significantly, the Ninth Circuit deferred to the district judge: "this Court should not place itself in the position of second guessing a district court judge who had an opportunity to acquire substantial knowledge of the facts and to evaluate the various legal positions after hearing their merits put forth by the various parties, particularly when there appears to be no clear abuse of discretion."  Id.  A district court's decision -- here not to bar bankruptcy and supervise liquidation, but merely to prevent fraud and abuse by requiring Court permission -- is clearly entitled to

preserve ... property."  11 U.S.C. § 543(a).

1    deference.[4]

2         MGA seeks to dismiss <u>Lincoln Thrift</u> as a case in which the liquidation was
3    already so far along that bankruptcy made no sense, but that was only one of the
4    factors considered by the court.  More importantly, the procedure spelled out by the
5    Court to be used in future cases specifically negates any limitation to later stage
6    liquidations by *requiring* the District Judge to make the decision as to whether an
7    injunction is warranted as early as possible.  "If the issue arises in future cases, the
8    district court should, *at an early stage in the liquidation*, set forth in express terms
9    the justification for retaining its equity jurisdiction, indicating why the exercise of
10   its jurisdiction is preferable to a liquidation in bankruptcy court."  <u>Id.</u> at 609
11   (emphasis added).  MGA misreads <u>Lincoln Thrift</u> in its effort to cabin it.  Its
12   misreading is also flatly at odds with the Ninth Circuit's approach in <u>SEC v.
13   Wencke</u>, 622 F.2d 1363, 1373-74 (9th Cir. 1980), where it concluded that it is
14   precisely at the early stage of his work that the receiver needs to be protected from
15   other proceedings: "Where the motion for relief from the stay [of any litigation or
16   claim against the receiver] is made soon after the receiver has assumed control over
17   the estate, the receiver's need to organize and understand the entities under his
18   control may weigh more heavily than the merits of the party's claim."[5]  <u>See also
19   SEC v. Byers</u>, 592 F. Supp. 2d 532, 537 (S.D.N.Y. 2008) (same).

---

[4]   Such permission should be required whether this Court chooses to place all of MGA in receivership or only the Bratz assets.  In either event, the Receiver's efforts to manage some or all of this struggling company can only be impeded if he is forced by MGA, Larian or their allies, as he would be in either circumstance, to devote his time, energy and resources to protecting his stake in the bankruptcy proceedings.

[5]   The only Ninth Circuit case on which MGA relies, <u>Los Angeles Trust Deed & Mortg. Exchange v. SEC</u>, 285 F.2d 162, 182 (9th Cir. 1960), does not involve an injunction against bankruptcy.  In fact, the court held that the receiver appointed by the district court should continue to manage the insolvent company as a going concern rather than liquidate it, and that "the district court should not release appellants from the receivership" until the matter was resolved.  <u>Id.</u> at 182.  To the extent it is relevant at all, this case suggests that a receiver's court-ordered control of an insolvent corporation may not be interfered with until the purpose of the receivership is completed.  And despite exhaustive research, neither side has found even a single case in which a District Court (footnote continued)

**B.**   **The District Court May Properly Order That Only the Receiver Can File For Bankruptcy**

In <u>Commodity Futures Trading Comm. v. FITC, Inc.</u>, 52 B.R. 935 (N.D. Cal. 1985), the district court, in response to allegations of a complex fraudulent scheme, appointed a receiver, granted the receiver exclusive authority to take immediate custody, control and possession of all of FITC's books and records, and prohibited FITC from directly or indirectly withdrawing, or otherwise transferring its assets. <u>Id.</u> at 936.  The receivership order did not, at least as reported, contain an express prohibition against FITC filing bankruptcy.  Some two weeks after Judge Lynch appointed the receiver, the president of FITC initiated chapter 11 bankruptcy proceedings for FITC in Nevada.  The district court condemned the filing as a "direct contempt:"

> Once a court appoints a receiver, the management loses the power to run the corporation's affairs.  The receiver obtains all the corporation's power and assets.  <u>First Savings & Loan Assoc. v. First Fed'l. Savings & Loan</u>, 531 F.Supp. 251, 255 (D.Hawaii 1981); <u>SEC v. Spence & Green</u>, 612 F.2d 896, 903 (5th Cir.), cert. denied, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1980).  Thus it was the receiver, and *only* the receiver, who this Court empowered with the authority to place FITC in bankruptcy. <u>See</u> <u>Spence</u>, 612 F.2d at 903.

<u>FITC</u>, 52 B.R. at 937 (emphasis in original).

Thus, the court concluded, "[i]t is apparent to this Court that FITC filed the bankruptcy petition in bad faith and with the intention of interfering with the receiver's marshaling of the corporation's records and assets."  <u>Id.</u>  The Court further held, "[w]hile not common, this Court may preclude petitions in bankruptcy where there are *compelling circumstances*." <u>Id.</u> (citing <u>Lincoln Thrift</u> and <u>United</u>

---

injunction based on findings, that limited access to bankruptcy court, has been reversed on (footnote continued)

1   States v. Royal Business Funds Corp., 724 F.2d 12 (2d Cir. 1983) (emphasis

2   added).[6]   The district court ordered FITC's president to withdraw the FITC

3   bankruptcy petition or face contempt charges. Id. at 938.

4        Compelling circumstances were present as well in SEC v. Byers, 592 F. Supp.

5   2d 532, 534-35 (S.D.N.Y. 2008), where the SEC charged five "Wextrust entities"

6   and others for their role in a Ponzi scheme.  The district court appointed a receiver

7   and, so as to protect the property and assets subject to the receivership, enjoined all

8   persons other than the receiver from filing for bankruptcy.  An ad hoc creditors

9   committee unsuccessfully challenged the injunction.  The district court concluded

10  that it had authority to enjoin Wextrust and its creditors from filing bankruptcy

11  petitions against the Wextrust entities. Id. at 536.

12       Notably, in each of these cases, the courts' principal concern appeared to be

13  the possibility of fraud or a bad faith bankruptcy filing.  See Wencke, 622 F.2d at

14  1370; Byers, 592 F. Supp. 2d at 537; FITC, 52 B.R. at 937-38; In re Donaldson

15  Ford, Inc., 19 B.R. 425, 431-32 (Bankr. N.D. Ohio 1982) ("[C]ertain limitations on

16  the power of a corporation to avail itself of relief in Bankruptcy ha[ve] been

17  recognized.  In particular, although a voluntary petitioner may be solvent or

18  insolvent, and his motive is generally immaterial, a petition may not be filed for

19  purposes of perpetrating a fraud.").[7]   See also Zeitinger v. Hargadine-McKittrick

20  _____

21  [6]   In Royal Business Funds, the Second Circuit affirmed an order staying the

22  bankruptcy of Royal Business Funds based on a consensual receivership that also did not
    expressly enjoin the debtor from filing a bankruptcy petition, but was later interpreted to

23  do so.  The Court emphasized that it did not "intend to disturb the general rules" but then
    listed the circumstances which convinced it to do so here, including that "[t]he bankruptcy

24  petition, which was filed by the debtor rather than by third party creditors, will, so far as
    we can tell on this record, disrupt the receiver's attempts to improve the company's

25  fortunes." 724 F.2d at 16.

26  [7]   Most entities, to be sure, get to file bankruptcy first and then have their good
    faith weighed afterwards.  Where, however, a party in receivership has consistently

27  demonstrated it is a bad actor, the usual presumption in favor of the good faith of a filing
    is simply inapplicable.  In addition to being consistent with receivership law generally, the
    restriction is also analogous to vexatious litigant statutes which are ubiquitous in state and

28  federal law, and completely lawful.  Wolfe v. George, 486 F.3d 1120, 1124-25 (9th Cir.
    (footnote continued)

1   <u>Dry Goods Co.</u>, 244 F. 719 (8th Cir. 1917) (holding that where a receiver had been
2   appointed because of a fraud or mismanagement of directors of the receivership
3   corporation, the district court could refuse to allow the filing of the bankruptcy
4   petition); <u>In re Beaver Cotton Mills</u>, 275 F. 498 (N.D. Ga. 1921); <u>In re Denton &</u>
5   <u>Haskins Music Pub. Co.</u>, 10 F. Supp. 802 (S.D.N.Y. 1935).

6       **C.**    **<u>Compelling Circumstances are Present Here</u>**

7          MGA's record of fraud and bad faith are detailed in other recent filings.  It is
8   difficult to imagine a case where greater cause would exist to protect the receiver
9   from parties who have earned the suspicion they now generate.  Moreover, this
10  Court has not, as did many of the courts in the cases cited (and upheld), absolutely
11  prohibited a bankruptcy filing or ordered that liquidation will proceed supervised by
12  the district judge.  All that the injunction at issue here does is require the party seek
13  the permission of the Court before filing for bankruptcy.  No one is in a better
14  position to judge whether such a filing would be in furtherance of fraud than this
15  Court.  No bankruptcy judge could hope (or fear) to amass the knowledge this Court
16  has of the parties and their conduct after supervising this litigation for years,
17  including a three-month trial.  Nor would there be any basis for allowing MGA,
18  Larian or their affiliates to relitigate issues already considered by this Court.

19

20                **<u>Conclusion</u>**

21        In order to protect the property subject to receivership and to protect the
22  receiver's ability to fulfill his mandate free from the distractions of a bad faith
23  bankruptcy, this Court should make permanent its temporary order enjoining MGA

24

25  2007) (upholding California statute that conditioned right to file *pro se* suit on showing
26  that "litigation has merit and has not been filed for the purposes of harassment or delay");
    <u>De Long v. Hennessey</u>, 912 F.2d 1144, 1147 (9th Cir. 1990) ("We recognize that there is
27  strong precedent establishing the inherent power of federal courts to regulate the activities
    of abusive litigants by imposing carefully tailored restrictions under the appropriate
28  circumstances.").

1  and related entities, during the pendency of the receivership, from filing a
2  bankruptcy petition without prior approval from the Court.

3

4  DATED:  May 18, 2009                QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
5

6

7                                       By /s/ Michael T. Zeller
                                            Michael T. Zeller
8                                           Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S MEMORANDUM REGARDING BANKRUPTCY INJUNCTION