1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:   213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                          Consolidated with
14          v.                            Case No. CV 04-09059
                                          Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                          **PHASE 2 DISCOVERY MATTER**
16
                Defendant.                **ORDER NO. 34, REGARDING:**
17
                                              **MOTION TO COMPEL
18                                            PRODUCTION OF HARD DRIVES
                                              FROM COMPUTERS USED BY
19                                            ISAAC LARIAN AFTER
                                              FEBRUARY 27, 2008**
20

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
23

24

25

26

27

28

1    This Order sets forth the Discovery Master's ruling on the Motion to Compel

2  Production of Hard Drives from Computers used by Isaac Larian after February 27,

3  2008, for Supplemental Inspection filed by Mattel, Inc. ("Mattel") (the "Motion")

4  [Docket No. 5267].

5    The Discovery Master, having considered the papers filed in support of and

6  in opposition to the Motion, and having determined that oral argument is not

7  necessary, rules as set forth below.

8  I.     **FACTUAL BACKGROUND**

9    The present Motion addresses whether Isaac Larian ("Larian") is required to

10  produce for inspection certain hard drives he has used since February 27, 2008.

11    A.     **Document Request No. 222**

12    On or about June 13, 2007, Mattel served its First Set of Requests for

13  Documents and Things on Larian, which included Request No. 222 (the

14  "Request").  (Declaration of Marshall M. Searcy III in Support of the Motion

15  ("Searcy Decl."), Ex. 1 at p. 54).  The Request asks Larian to produce for

16  inspection "Each STORAGE DEVICE that YOU have used to create, prepare,

17  generate, transmit, receive, delete or modify any DIGITAL INFORMATION

18  RELATING TO BRATZ, ANGEL or BRYANT."[1]  (*Id.*)

19    B.     **The Prior Discovery Master's December 31, 2007 Order**

20    Claiming that the Request was overbroad, unduly burdensome, duplicative

21  and violated his privilege and privacy rights, Larian refused to produce any Hard

22  Drives[2] to Mattel.  (*Id.*, Ex. 17 at p. 16).   Mattel then moved to compel a response

23

24  [1] Mattel also references Request No. 225 in its Motion, (Motion, p. 1 and fn. 2), which asks Larian to produce for inspection "[e]ach STORAGE DEVICE that BRYANT has used to create, prepare, generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or MGA." (Search Decl., Ex. 1

25  at p. 55).  However, Request No. 225 is not at issue, since Mattel only seeks to compel additional inspection of *Larian's* hard drives in the present Motion.  (Notice of Motion, p. 1 [Mattel "move[s] for an order compelling Isaac

26  Larian ('Larian') to produce for inspection any hard drives and other storage devices . . . within his possession, custody or control that were connected to any computer used by Isaac Larian since February 27, 2008 . . ."]).

27

28  [2] As used herein, "Hard Drives" refers to all "STORAGE DEVICES" as that term is defined in connection with the Request.

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

to the Request on October 11, 2007.  (Searcy Decl., Ex. 2).  The prior discovery master denied the motion on December 31, 2007, reasoning as follows:

> With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices.  Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence . . . However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure. [Citation].  Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.  Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.  Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply with the requests, Larian

1    was required to search for documents in both hard-copy

2    and electronic form.  Under the circumstances, it is

3    unnecessary for Larian to also produce the requested

4    storage devices.

5  (*Id*., Ex. 17 at p. 17).

6        **C.    The Court's February 27, 2008 Order**

7        Thereafter, Mattel filed a Motion Objecting to Portions of the Discovery

8  Master's December 31, 2007 Order, including challenging the ruling regarding the

9  Request.  (*Id*., Ex. 18).  On February 27, 2008, the Court overruled the prior

10 discovery master's ruling ("February 27, 2008 Order").  (*Id*., Ex. 19 at p. 2).

11 Specifically, the Court found that the decision was "clearly erroneous and contrary

12 to law" because "[d]estruction of evidence on hard drives is relevant to Mattel's

13 claims, including specific predicate acts alleged in Mattel's RICO counterclaims."

14 (*Id*.).  Consequently, the Court ordered Larian to produce the following:

15           All hard drives from, or that were at any time connected

16           to, any computer used by . . . Isaac Larian . . . at any time

17           from 1999 to the present and that contain or previously

18           contained any digital information referring or relating to

19           Bratz, Angel . . . or Bryant (as those terms are defined in

20           Mattel's Request[]).

21 (*Id*.).

22       **D.    Larian's Compliance With The Court's February 27, 2008 Order**

23       On or about April 22, 2008, Larian and Mattel entered into a written

24 agreement setting forth a protocol for Mattel's consultant to inspect Larian's Hard

25 Drives ("Letter Agreement").  (*Id*., Ex. 25).  Among other things, the Letter

26 Agreement stated that Mattel's consultant would "not access the user generated

27 content of any active file that exists on the hard drive."[3]  (*Id*., Ex. 25 at p. 3 of the

28

---

[3] An active file is one that is currently available for use on a hard drive or other storage device.

1  letter).

2        Approximately two months after the parties entered into the Letter

3  Agreement, Larian produced all pre-February 28, 2008 Hard Drives responsive to

4  the Request and permitted them to be inspected and forensically imaged.  (Motion,

5  p. 3).

6        **E.    Larian Refuses To Supplement His Prior Production**

7        On or about March 18, 2009, Mattel requested that Larian supplement his

8  production of Hard Drives and permit the supplemental inspection of all Hard

9  Drives he has used since February 27, 2008.  (Searcy Decl., Ex. 20 at p. 1).  Larian,

10  acting through his counsel, responded that he had "fully complied" with the Court's

11  February 27, 2008 Order and that "there is no nexus between the information

12  currently on [his] hard drives and the Phase 2 claims . . ."  (*Id*.).

13  **II.    RELIEF SOUGHT BY MATTEL**

14        In its Motion, Mattel requests that "Larian be compelled to produce all

15  unproduced hard drives within his possession, custody or control for supplemental

16  inspection by Mattel's consultant."  (Motion, p. 17).  Mattel further seeks an order

17  permitting the "inspection of all relevant, non-privileged documents and

18  information, including 'active' user generated files and documents and information

19  recovered by [its] experts."  (*Id*.).

20  **III.   LARIAN'S OPPOSITION**

21        Larian opposes Mattel's Motion on five grounds.  First, Larian argues that

22  the Motion seeks information that is not relevant to any Phase 2 issue because there

23  is no allegation in Mattel's Second Amended Answer and Counterclaims ("SAAC")

24  regarding ongoing destruction of evidence.  (Opposition, pp. 3 and 12 – 13).

25  Second, Larian argues that Mattel should not be permitted to engage in a fishing

26  expedition to uncover evidence of alleged financial fraud, since the Request does

27  not seek such information and the SAAC contains no allegations of such

28  wrongdoing.  (*Id*., p. 15).  Third, Larian argues that he has no duty to supplement

his response because he "fully complied with the Court's February 27, 2008 Order . . ." (*Id.*, pp. 3; *see also id.* at pp. 11 – 12).  Fourth, Larian argues that "Mattel improperly asks the Discovery Master to expand the scope of [the Court's] prior Order to allow Mattel unrestricted access to the content of information on [his] hard drives, including access to 'active files' on the hard drives, which have no relevance to any purported allegations of evidence destruction." (*Id.*, p. 4 [emphasis omitted]; *see also id.* at pp. 13 – 16).  Finally, Larian argues that he "should not be subjected to the burden and wholesale invasion of his privilege and privacy rights that would result from producing his personal computer hard drives, particularly when the same information may be obtained through a simple document request."[4]  (*Id.*, p. 4; *see also id.* at p. 14).

Larian also seeks an award of sanctions against Mattel's counsel "for improperly asking the Discovery Master to revisit and expand the scope of [the Court's] prior Order with respect to Request No. 222 . . ." (*Id.*, pp. 16 – 17).

## IV.   ANALYSIS

The present Motion raises two basic questions:  (1) does Larian have a duty to supplement his previous production concerning the Request, and (2), in the event a supplemental production is required, may active files be accessed by Mattel's consultant during his or her inspection?  Each of these questions is addressed below.

//

//

//

---

[4] Larian also argues that Mattel has misrepresented the facts regarding whether any spoliation of evidence has occurred in the past and that Mattel's failure to call the consultant who conducted the inspection of Larian's Hard Drives in Phase 1 to testify at trial demonstrates that no spoliation took place.  (Opposition, pp. 8 – 11).  The question before the Discovery Master, however, is whether the Request relates to a Phase 2 claim or defense, not whether Larian has (or has not) engaged in spoliation of evidence as a matter of fact.  Therefore, the Discovery Master does not accept or reject Mattel's allegations of spoliation.  Nor do I accept or reject Larian's disputation of those allegations.

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

A.   **Federal Rule Of Civil Procedure 26 Requires Larian To Supplement His Prior Production**

1.   **Hard Drives That Larian Has Used Since February 27, 2008 Relate To Phase 2 Issues**

With respect to the first question, the Court's February 27, 2008 Order found that "[d]estruction of electronic evidence on hard drives is relevant to Mattel's claims, including specific predicate acts alleged in Mattel's RICO counterclaims." (February 27, 2008 Order at p. 2).   Based on that finding, the Court ordered Larian to produce all Hard Drives used by him "from 1999 to the present." (*Id.*).  Larian construes this holding by the Court to mean that information currently contained on Hard Drives used by him after February 27, 2008 is not relevant to Mattel's Phase 2 claims since, according to him, there are no allegations that the actions alleged in Mattel's RICO claims are continuing and his only obligation with respect to the Request was to produce Hard Drives from 1999 to February 27, 2008 (i.e., the date the February 27, 2008 Order was issued by the Court).  (Opposition, p. 12).  This argument is unpersuasive for two reasons.

First, the plain language of the SAAC alleges that the conduct of each criminal RICO enterprise alleged therein is continuing.  Specifically, Paragraph 92 of the SAAC alleges that "[t]he conduct of each enterprise continues through the date of this [SAAC] and is *ongoing . . .*"  (SAAC, ¶ 92 [emphasis added]).  Similarly, Paragraph 93 of the SAAC alleges that the pattern of racketeering activity "extends, up to and *beyond* the date of this" SAAC and includes "repeated acts of . . . destroying electronic and other evidence, including by destroying evidence previously contained on . . . Isaac Larian's computer hard drives."  (*Id.*, ¶ 93 [emphasis added]).

Second, Larian's argument that the SAAC does not allege ongoing destruction of evidence has already been implicitly, if not expressly, rejected by the Court.  If Larian were correct that the SAAC "only alleges prior acts of purported

1    evidence destruction," (Opposition, p. 12), the Court would have limited any

2    production of Hard Drives to the date the SAAC was filed (i.e., July 12, 2007).

3    However, the Court held that Larian had to produce all Hard Drives he used "from

4    1999 to the present [i.e., up through and including February 27, 2008]."  (February

5    27, 2008 Order at p. 2).  Because the February 27, 2008 Order already required

6    Larian to produce Hard Drives that he used months after the SAAC was filed,

7    Larian's argument that the SAAC does not allege continuing destruction of

8    evidence is inconsistent with the Court's previous ruling and must be rejected.[5]

9                    **2.      The Starting Point For Determining Whether Any**

10                            **Supplementation Is Required Is The Request, Not The**

11                            **Court's February 27, 2008 Order**

12        Larian next argues that he has no duty to supplement his prior production

13   because it was not incomplete or incorrect in any respect.  (Opposition, p. 12).

14   Specifically, Larian contends that he fully complied with the Court's

15   February 27, 2008 Order by producing all Hard Drives that he used between 1999

16   and the date the order was issued (i.e., February 27, 2008).  (*Id.*, pp. 3 and 11 – 12).

17   The problem with this argument, however, is that it ignores the starting point for

18   determining whether any supplemental production is required.

19        The issue is not whether Larian has fully complied with the *February 27,*

20   *2008 Order* but rather whether Larian is required to supplement the *discovery*

21   *response* in question (i.e., the Request).  If Larian has used Hard Drives since

22   February 27, 2008 (and he does not dispute that he has done so), then there is

23   evidence in existence that renders his response to the Request incomplete.

24   Therefore, in the absence of some other valid objection, Larian must supplement his

25   production regarding the Request under Federal Rule of Civil Procedure 26.  (Fed.

26

27   ────────────────
     [5] Larian also argues that the Request is not relevant to any allegation of ongoing financial fraud.  (Opposition, p. 15).

28   The Discovery Master need not address this argument because the Request has been determined to be relevant to Mattel's RICO claims.

R. Civ. P. 26(e)(1)(A) [stating that the duty to supplement or correct a response arises "if the party learns that in some material respect the . . . response is incomplete or incorrect"]).

**3.    The Court's February 27, 2008 Order Does Not Exempt Larian From Having To Comply With Federal Rule Of Civil Procedure 26**

Larian's final argument against supplementation is that the Court's February 27, 2008 Order somehow displaced the obligations he had to supplement incomplete discovery responses under Rule 26.  (Opposition, p. 11).  Yet there is no indication anywhere in the February 27, 2008 Order that the Court intended to make Larian exempt from the requirements imposed by Rule 26.  In fact, the February 27, 2008 Order never mentions Rule 26 at all, let alone indicates that Larian need not comply with his duty to supplement going forward.  Nor is there any reason to read such a limitation into the February 27, 2008 Order, since Larian has not cited any legal authority, and the Discovery Master is aware of none, supporting the proposition that a party need not supplement its discovery responses based upon an order that simply requires the production of data for inspection without referencing Rule 26.   Therefore, contrary to Larian's assertion, the February 27, 2008 Order did not remove his duty to supplement his response to the Request and he must fulfill that obligation now.

**B.    Mattel's Consultant May Not Access Active Files**

Having concluded that Larian must supplement his prior production of Hard Drives and permit them to be inspected pursuant to Rule 26, the Discovery Master now turns to the permissible scope of Mattel's inspection.

As explained above, Mattel argues that it "should be allowed to inspect all relevant, non-privileged documents and information, including 'active user' generated files . . . recovered by [its] experts."  (Motion, pp. 4 fn. 10 and 17; Reply, pp. 9 – 11).  Mattel asserts that it is entitled to such information because the

1   February 27, 2008 Order "specifically stated that Mattel's expert 'shall have the

2   right to inspect any and all information on said hard drive to determine' whether

3   there was evidence of spoliation or attempted spoliation." (Reply, p. 10).  This

4   argument is unpersuasive for four reasons, each of which is sufficient by itself to

5   justify denying Mattel's request.

6          First, contrary to Mattel's assertion, the Court did not give Mattel

7   unrestricted access to the content of Larian's Hard Drives in its February 27, 2008

8   Order.  On the contrary, the Court expressly limited the scope of the inspection to

9   determining whether any electronic evidence had been destroyed.  Indeed, after it

10  stated that a consultant of Mattel's choosing would be allowed to make forensically

11  sound images of each Hard Drive used by Larian and would be permitted "the right

12  to inspect any and all information on said hard drive," the Court immediately

13  qualified its statement.  (Searcy Decl., Ex. 19 at pp. 2 – 3).  Specifically, the

14  February 27, 2008 Order declared that Mattel's forensic expert will have:

15                 the right to inspect any and all information on said hard

16                 drive to determine:  (a) whether, when, and by whom any

17                 information was deleted, destroyed, written over, lost,

18                 exported, moved, spoliated or otherwise rendered

19                 inaccessible or unreadable; (b) whether, when and by

20                 whom any attempts were made to delete, destroy, write

21                 over, export, move, spoliate or otherwise render

22                 inaccessible or unreadable any information on those hard

23                 drives; (c) the current or past presence or use of any

24                 hardware or software tool to accomplish any of the

25                 actions identified above; (d) whether any information

26                 deleted, destroyed, written over, lost, exported, moved,

27                 spoliated or otherwise rendered inaccessible or unreadable

28                 may be recovered; and (e) to recover any such

1    information, in whole or in part.

2    (*Id.*).  Because the Court expressly limited the inspection to determining whether

3    anyone had "deleted, destroyed, written over, lost, exported, moved, spoliated or

4    otherwise rendered inaccessible or unreadable" any information on the Hard Drives

5    and whether any such information was recoverable, there is no connection between

6    Mattel's claim that it is entitled to view *active files* and the inspection permitted by

7    the Court relating to *deleted files*.  By definition, an active file is one that is still in

8    existence.  Conversely, a file that has been destroyed is not accessible unless it can

9    somehow be recovered.  Therefore, the plain language of the February 27, 2008

10   Order precludes Mattel from accessing active files on the Hard Drives, because they

11   are not within the scope of the inspection authorized by the Court.[6]

12       Second, there has been no showing by Mattel that all of the active files that it

13   seeks to access are relevant to Phase 2 issues.  What Mattel is essentially requesting

14   is that it should be allowed to access any content on the Hard Drives whether or not

15   those active files have any relevance to a claim or defense in this case.  In the

16   absence of a showing that all active files on the Hard Drives are reasonably

17   calculated to lead to the discovery of admissible evidence regarding a Phase 2 issue,

18   the Discovery Master concludes that Mattel's request is overbroad and improperly

19   seeks to discover irrelevant information.

20       Third, the Discovery Master finds that Mattel does not have the right to rifle

21   through Larian's electronic files looking for unspecified information.  As Larian

22   persuasively argues, "Mattel has the right to ask [Larian] to produce specific [non-

23   privileged, relevant] documents; it does not have the right to go into [his] electronic

24   'drawers' to see what is there."  (Opposition, p. 2).  Because that is precisely the

25
26   [6] Mattel's request to inspect the active files on Larian's Hard Drives is also inconsistent with the Letter Agreement entered into by the parties on April 22, 2008.  In relevant part, the Letter Agreement states that Mattel's consultant "shall not access user generated content of any active file that exists on the hard drives."  (Searcy Decl., Ex 25 at p. 3
27   of the letter).  The fact that Mattel's counsel agreed to this protocol following the issuance of the Court's February 27, 2008 Order suggests that even Mattel realizes the February 27, 2008 Order was not designed to allow it access to
28   active files on the Hard Drives.

relief Mattel seeks, its request must be denied.

Finally, allowing Mattel unrestricted access to active files on the Hard Drives would improperly permit it to discover attorney-client privileged information that Larian alleges exists on those storage devices.  Indeed, if Mattel is given access to all active files on the Hard Drives, the Discovery Master cannot see how Larian can protect his privileged information.  This is true despite Mattel's statement that it should only be "allowed to inspect all relevant, non-privileged documents and information," because there is not a mechanism in place that would protect Larian's privileged files from disclosure.  Even assuming it is technologically possible to encrypt all active files that contain privileged information so that they may not be accessed by Mattel's consultant, Larian should not be burdened with undertaking such a task because there are less intrusive means by which Mattel could obtain non-privileged, relevant documents, namely through document requests.

### C.    Summary Of Ruling Regarding The Motion

The Discovery Master finds that Larian must supplement his prior production of Hard Drives pursuant to Federal Rule of Civil Procedure 26.  However, in conducting the inspection of any additional Hard Drives produced by Larian, Mattel's consultant may not access any active files.

### D.    Larian's Request For Sanctions

Having determined that Mattel advanced some meritorious arguments and prevailed with respect to certain aspects of its Motion, the Discovery Master denies Larian's request for sanctions.

## V.    DISPOSITION

A.    The Motion is **GRANTED in part** and **DENIED in part**, as follows:

1.    Larian shall make available within forty-five (45) days of this Order the following hard drives that are in his possession, custody or control:  All Hard Drives from, or that were at any time connected to, any computer used by him at any time from February 28, 2008 to the present and that contain or previously

contained any digital information referring or relating to Bratz, Angel, or Bryant (as those terms are defined in the Request).

2.     A consultant of Mattel's choosing, whom Mattel will identify before the inspection, shall be allowed to inspect each of the Hard Drives produced in connection with the preceding Paragraph.  Mattel's consultant shall be allowed to make a forensically sound image of each hard drive produced.  The inspection may take place at a location of Larian's choosing in this District, so long as the minimum requirements necessary to inspect and create a forensically sound image of the produced hard drives.  A consultant of Larian's choosing, whom Larian will identify before the inspection, shall be allowed to observe the inspection and imaging of the hard drives.

3.     Mattel's consultant shall have the right to inspect any and all information on the produced Hard Drives to determine:  (a) whether, when, and by whom any information was deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable; (b) whether, when and by whom any attempts were made to delete, destroy, write over, export, move, spoliate or otherwise render inaccessible or unreadable any information on those hard drives; (c) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above; (d) whether any information deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be recovered; and (e) to recover any such information, in whole or in part.

4.     In conducting the above inspection regarding deleted files, Mattel's consultant shall not access the user generated content of any active file that

//

//

//

//

1    exists on the Hard Drives.

2         B.    Larian's request for sanctions is **DENIED**.

3    Dated:     May 18, 2009

4

5                                      By:        /s/ Robert C. O'Brien

6                                            ROBERT C. O'BRIEN
                                             Discovery Master
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28