1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11 | CARTER BRYANT, an individual,

12 | Plaintiff,

13 | vs.

14 | MATTEL, INC., a Delaware corporation,

15 | Defendant.

16 | AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

Hon. Stephen G. Larson

**[PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27 REGARDING MOTION OF MATTEL, INC. TO COMPEL DOCUMENTS FROM BINGHAM MCCUTCHEN**

**MEMORANDUM OF POINTS AND AUTHORITIES**

[Notice of Lodging and Declaration of B. Dylan Proctor filed concurrently]

Hearing Date: July 6, 2009
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 2**

Discovery Cutoff: Dec. 11, 2009
Pre-trial Conference: March 1, 2010
Trial: March 23, 2010

07209/2941652.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 6, 2009, or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule the portion of the Discovery Master's Order No. 27 Regarding Motion of Mattel, Inc. to Compel Documents From Bingham McCutchen.[1] This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 72(a) on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of B. Dylan Proctor, the concurrently filed Notice of Lodging, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

### Statement of Rule 7-3 Compliance

Mattel complied with <u>Local Rule</u> 7-3 by letter dated May 14, 2009,[2] and the relevant parties met and conferred on the underlying motion before the Discovery Master on February 25, 2009.

DATED:  May 21, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: /s/ _Michael T. Zeller_ /CEB/

Michael T. Zeller
Attorneys for Mattel, Inc.

---

[1]  Declaration of B. Dylan Proctor, filed concurrently ("Proctor Decl."), Exh. 1.
[2]  Proctor Decl., Exh. 2 (letter from John S. Purcell to Todd Gordinier and Joel Klevens, dated May 14, 2009).

00505.07975/2939984.2

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND....................................................................................1

ARGUMENT ...........................................................................................................5

I. THE DISCOVERY MASTER IMPROPERY ALLOCATED THE BURDEN OF PROOF..............................................................................6

II. THE DISCOVERY MASTER'S ORDER IMPOPERLY UPHELD A BLANKET PRIVILEGE OBJECTION. ...........................................................7

III. THE DISCOVERY MASTER'S ORDER WRONGLY ENGRAFTS A NEW AND UNPRECEDENTED JURISDICTIONAL LIMIT ON DISCOVERY ...........................................................................................11

    A. Jurisdiction Over Lexington is Irrelevant to Bingham's Discovery Obligations......................................................................11

    B. There is Nothing Unfair About Allowing Discovery Relating to Lexington. ..............................................................................13

IV. THERE IS NO "OTHER PARTIES" EXCEPTION TO RULE 45. ..............14

V. THE DISCOVERY MASTER ERRED BY NOT EVEN REQUIRING BINGHAM TO ESTABLISH UNDUE BURDEN. .........................................17

    A. Bingham Failed to Offer Any Specific Proof of Burden ......................17

    B. The Discovery Master Erred By Not Considering the Actual Evidence Relating to Burden. ...............................................................18

VI. THE DISCOVERY MASTER'S ORDER CLEARLY ERRED IN FINDING  THAT THE REQUESTS DID NOT RELATE TO PHASE 2 ISSUES.......................................................................................................20

CONCLUSION.......................................................................................................25

07209/2941652.1

# TABLE OF AUTHORITIES

**Page**

## Cases

Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 464 (D. Mass. 1993)..................................................................................................................13

Berger v. Seyfarth Shaw, LLP,
2008 WL 4570687 (N.D. Cal. 2008) ...................................................................10

In re Bunyan,
354 F.3d 1149 (9th Cir. 2004) ............................................................................11

Clarke v. Am. Commerce Nat'l Bank,
974 F.2d 127 (9th Cir. 1992) ...........................................................................8, 9

Cohen v. City of New York,
255 F.R.D. 110 (S.D.N.Y. 2008)........................................................................14

Conopco, Inc. v. Wein,
2007 WL 2119507 (S.D.N.Y. July 23, 2007).....................................................22

Corvello [Gail] v. New England Gas Co., Inc.,
243 F.R.D. 28 (D. R.I. 2007)................................................................................9

Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.,
216 F.R.D. 533 (M.D. Fla. 2003) ...................................................................6, 17

Deitchman v. E.R. Squibb & Sons, Inc.,
740 F.2d 556 (7th Cir. 1984) ..............................................................................19

Diamond State Ins. Co. v. Rebel Oil Co., Inc.,
157 F.R.D. 691 (D. Nev. 1994) ..........................................................................15

Eastman Kodak Co. v. Camarata,
238 F.R.D. 372 (W.D.N.Y. 2006) .......................................................................21

Eureka Financial Corp. v. Hartford Accident and Indemnity Co.,
136 F.R.D. 179 (E.D. Cal. 1991)...........................................................................8

Exxon Shipping Co. v. U.S. Dept. of Interior,
34 F.3d 774 (9th Cir. 1994).................................................................................15

Flanagan v. Wyndham Int'l. Inc.,
231 F.R.D. 98 (D. D.C. 2005) ..............................................................................6

Goodman v. U.S.,
369 F.2d 166 (9th Cir. 1966) ..............................................................................16

In re Grand Jury Subpoenas,
803 F.2d 493 (9th Cir. 1986) .........................................................................8, 10

07209/2941652.1

-ii-

H.J. Inc. v. Northwestern Bell Tel. Co.,
   492 U.S. 229 (1989)..................................................................21

Halperin v. Berlandi,
   114 F.R.D. 8 (D. Mass. 1986) ..................................................22

Heat and Control, Inc. v. Hester Indus., Inc.,
   785 F.2d 1017 (Fed. Cir. 1986) .........................6, 14, 16, 19

International Shoe Co. v. Washington,
   326 U.S. 310 (1945)..................................................................13

JZ Buckingham Investments, LLC v. United States,
   78 Fed. Cl. 15 (Fed. Cl. 2007)..........................................16, 18

Katz v. Batavia Marine and Sporting Supplies, Inc.,
   984 F.2d 422 (Fed. Cir. 1993) .................................................15

McCoy v. Southwest Airlines Co.,
   211 F.R.D. 381 (C.D. Cal. 2002)............................................14

Moon v. SCP Pool Corp.,
   232 F.R.D. 633 (C.D. Cal. 2005).......................................14, 17

New England Data Servs., Inc. v. Becher,
   829 F.2d 286 (1st Cir. 1987)....................................................22

Northrop Corp. v. McDonnell Douglas Corp.,
   751 F.2d 395 (D.C. Cir. 1984)..................................................16

Oppenheimer Fund, Inc. v. Sanders,
   437 U.S. 340 (1978)..................................................................21

In re PE Corp. Securities Litigation,
   221 F.R.D. 20 (D.Conn. 2003) .................................................15

Ratliff v. Davis Polk & Wardwell,
   354 F.3d 165 (2d Cir. 2003) .....................................................12

SEC v. First Jersey Securities, Inc.,
   1990 WL 209246 ......................................................................10

In re Search Warrant Executed at Law Offices of Stephen Garea,
   173 F.3d 429, 1999 WL 137499 (6th Cir. 1999).........................6

Sebago, Inc. v. Beazer East, Inc.,
   18 F. Supp. 2d 70 (D. Mass. 1998)..........................................23

Sedima, S.P.R.L. v. Imrex Co., Inc.,
   473 U.S. 479 (1985)..................................................................21

Solarex Corp. v. Arco Solar, Inc.,
   121 F.R.D. 163 (E.D.N.Y. 1988)..............................................15

07209/2941652.1

-iii-

Southwest Hide Co. v. Goldston,
   127 F.R.D. 481 (N.D. Tex. 1989)..................................................................22

Stahl v. Bucks County Bank and Trust Co.,
   1993 WL 305944 (E.D. Pa. August 6, 1993) ..............................................23

U.S. v. American Optical Co.,
   39 F.R.D. 580 (N.D. Cal. 1966) .............................................................6, 14

United States v. Blackman,
   72 F.3d 1418 (9th Cir. 1995) ...............................................................9, 10

United States v. Ruiz,
   536 U.S. 622 (2002)......................................................................................11

Viacom Intern. Inc. v. YouTube, Inc.,
   2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ...........................................15

Vons Co. v. Seabest Foods, Inc.,
   14 Cal. 4th 434 (1996) .................................................................................13

W.E. Green v. Baca,
   219 F.R.D. 485 (C.D. Cal. 2003)..........................................................8, 17, 19

Wallace v. Abramson,
   1988 WL 63065 (D.D.C. June 7, 1988).......................................................23

Wells Fargo & Co. v. Wells Fargo Exp. Co.,
   556 F.2d 406 (9th Cir. 1977) .......................................................................12

Wertheim Schroder & Co. v. Avon Products, Inc.,
   1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) ...............................................14, 19

World-Wide Volkswagen Corp. v. Woodson,
   444 U.S. 286 (1980)......................................................................................13

**Statutes**

18 U.S.C. § 1962(c) ............................................................................................21

Fed. R. Civ. P. 34(c) ..........................................................................................14

Fed. R. Civ. P. 45 .........................................................................................passim

Fed. R. Civ. P. 45, Advisory Committee Notes................................................14

Fed. R. Civ. P. 45(b) ...........................................................................................6

Fed. R. Civ. P. 72(a) ...................................................................................5, 6, 7

07209/2941652.1

-iv-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Discovery Master's Order that the Bingham law firm is under no obligation to produce relevant, non-privileged documents about key financial transactions is clearly erroneous and contrary to law.   The Order allocates the burden of proof in direct contravention to undisputed authority.  It is contrary to overwhelming authority, including in this case, rejecting blanket privilege objections and requiring that privilege determinations be made on a case-by-case base.  It misapplies, and ignores, the law governing objections based on burden, engrafting an "other parties" exception to <u>Rule</u> 45 that would prohibit otherwise relevant and legitimate discovery requests because other parties had been asked for the same or similar documents.  Finally, the Discovery Master's Order invents a new rule, not even proposed by Bingham and unsupported by authority, that a request to a third (or presumably, any) party subject to the Court's jurisdiction for relevant and non-privileged information located in offices within the Court's jurisdiction need not be produced if it concerns a foreign company that has yet to be served.  That, too, is contrary to law.

### Factual Background

**Mattel Subpoenas Relevant Documents From Bingham.**  The Court lifted the Phase 2 discovery stay on January 6, 2009.  Mattel issued subpoenas in January 2009 to various third-party entities—including Omni 808, Vision Capital and Lexington, among others—seeking the production of documents relevant to Phase 2 claims and defenses as well as to MGA's representations in its stay petitions.  While the Discovery Master ultimately overruled his initial decisions that these entities were neither required to preserve nor to produce documents, he has continued to impose undue limitations on Mattel's discovery, and has ruled that until Lexington is served, it is not even required to preserve relevant documents.

07209/2941652.1

-1-
MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1    On February 12, 2009, Mattel served a subpoena on Bingham McCutchen

2   LLP ("Bingham"), which represents Omni 808, Vision Capital and Lexington and

3   served as corporate counsel in structuring the Omni Transaction.[3]   Indeed, Omni 808

4   lists Bingham's Los Angeles office, 355 South Grand Avenue, Suite 4400, Los Angeles,

5   CA 90071, as its registered address with the California Secretary of State.[4]

6    Mattel's subpoena to Bingham requested the production of fee agreements

7   and related documents—information which the Court and the former Discovery Master

8   have repeatedly held to be relevant to bias and credibility, and non-privileged[5]—as well

9   as non-privileged documents related to the formation and governance of the third-party

10  entities.  Mattel's Request Nos. 1, 2 and 7 were reasonably calculated to lead to the

11  discovery of admissible evidence as to who is paying Bingham's fees for its

12  representation of Omni 808 and Vision and Lexington.  If, as Mattel has reason to

13  believe, Isaac Larian and MGA are paying those bills for Omni 808, Vision and

14  Lexington, that is extremely relevant not only to bias in favor of MGA, but to issues of

15  relatedness among these entities and the legitimacy of their transactions that figure in

16  virtually every issue still pending in Phase 1, and a host of those that will be tried in

17  Phase 2, particularly if Mattel is granted leave to amend:

18

19  ———————————————

20    [3]  See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, with

21  proof of service, Proctor Decl., Exh. 3.
     [4]  See Omni 808 Investors, LLC's Registration Information (available at

22  <http://kepler.sos.ca.gov/corpdata/ShowLpllcAllList?QueryLpllcNumber=200822610026&

23  printer=yes>) as accessed on March 1, 2009, Proctor Decl., Exh. 4.
     [5]  See, e.g., Order Granting Mattel's Motion to Compel Documents, dated January 25,

24  2007, at 11-12, Proctor Decl., Exh. 5; Order Granting Mattel's Motion to Compel Production

25  of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Proctor
     Decl., Exh. 6; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the

26  Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and
     for Sanctions, dated June 19, 2007, at 2-4, Proctor Decl., Exh. 7; Order Re Motions Heard on

27  June 11, 2007, dated June 27, 2007, at 33-34, Proctor Decl., Exh. 8.

28

07209/2941652.1

- Request No. 1 of the subpoena seeks "documents referring or relating to any fee agreement or fee arrangement referring or relating to Bingham McCutchen LLP's ("Bingham") representation of Vision Capital, LLC ("Vision Capital") and/or Omni 808 Investors, LLC ("Omni 808"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements or arrangements."

- Request No. 2 requests documents "sufficient to identify each and every person or entity billed for, liable to pay, responsible for payment of, or who has paid or promised to pay, whether directly or indirectly, Bingham's fees in connection with Bingham's representation of Omni 808 or Vision Capital."

- Request No. 7 seeks documents "sufficient to identify any instances in which Bingham has represented MGA Entertainment, Inc., any affiliate of MGA Entertainment, Inc., Fred Mashian, Leon Neman, any entity associated with Leon Neman, Yoel Neman, Monia Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian and/or any entity associated with Isaac Larian at any time since June 1, 2001."

Likewise, Request Nos. 3 through 6 of the subpoena are reasonably calculated to obtain information regarding the real parties behind the Entities—information that is obviously relevant in light of this Court's findings that Larian and MGA appeared to be using these very entities to "engage in transactions . . . that constitute fraudulent transfers of assets" and to "frustrate the Court's Orders."[6] Request No. 6 also specifically excludes any privileged attorney-client communications:

---

[6]  Court's Order Appointing Temporary Receiver dated April 27, 2009, at 16-17, Proctor Decl., Exh. 9.

07209/2941652.1

-3-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

- Request No. 3 seeks "documents referring or relating to the formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington Financial Limited, A Nevis Company ("Lexington Financial Limited"), including the source(s) and terms of such capitalization, funding and/or credit."

- Request No. 4 asks for "documents identifying any member, managing member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or Lexington Financial Limited."

- Request No. 5 seeks "contracts and agreements, and proposed or offered contracts or agreements, referring or relating to Omni 808, Vision Capital and/or Lexington Financial Limited, including without limitation all drafts thereof disclosed to, shared with, exchanged with or received from Wachovia, MGA Entertainment, Inc., Fred Mashian, Leon Neman, Isaac Larian and/or any other person or entity other than Omni 808."

- Request No. 6 requests "communications referring or relating to Omni 808, Vision Capital and/or Lexington Financial Limited.  For purposes of this Request, Bingham may exclude (a) privileged communications with its client Omni 808 after its attorney-client relationship arose; (b) privileged communications with its client Vision Capital after its attorney-client relationship arose; and (c) communications with Mattel's counsel or the Court in the matter of <u>Carter Bryant v. Mattel</u>, No. CV 04-9059, and consolidated cases."

**Bingham Refuses to Produce Anything At All.**  In a letter dated February 20, 2009, Bingham demanded that Mattel withdraw the subpoena, and

07209/2941652.1

-4-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27 REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

requested a meet and confer to discuss an anticipated motion to quash.[7]  In a letter of February 23, 2009, Mattel requested a meet and confer in advance of Mattel's contemplated motion to compel.[8]  Mattel informed Bingham that the Court and Discovery Master have repeatedly held documents and information relating to payment of legal fees to be relevant to bias and credibility and thus discoverable, and provided Bingham with copies of those Orders.[9]

Counsel for Mattel and Bingham met and conferred in-person on February 25, 2009.[10]  Bingham also refused to stipulate that, in the event its motion to quash was denied by the Discovery Master, it would produce the requested non-privileged documents accompanied by a privilege log.[11]  Subsequently, Mattel moved to compel, and Bingham moved to quash.  On May 6, 2009, the Discovery Master denied Mattel's motion in its entirety, based on purported findings that: (i) the subpoena sought privileged information; (ii) the subpoena violated a prior ruling concerning jurisdiction over Lexington; (iii) the subpoena was duplicative of subpoenas propounded to other parties; (iv) the subpoena was overbroad because it sought documents not related to Phase 2 Issues.[12]  As explained below, it was clear error and contrary to law for the Discovery Master to allow Bingham to evade discovery based on these findings.

## **Argument**

The Discovery Master's rulings should be overruled if they are "clearly erroneous or []contrary to law." Fed. R. Civ. Proc. 72(a).  The Order here is based on material legal errors.

---

[7] Letter from Peter Villar to Jon Corey, dated February 20, 2009, Proctor Decl., Exh. 10.
[8] Letter from Jon Corey to Peter Villar, dated February 23, 2009, Proctor Decl., Exh. 11.
[9] Id.
[10] Letter from James J. Webster to Peter Villar, dated February 26, 2009, Proctor Decl., Exh. 12.
[11] Id.
[12] Order at 38.

07209/2941652.1

I.    **THE   DISCOVERY   MASTER   IMPROPERY** ████████
████████

Federal Rule of Civil Procedure 45 obligates third parties to produce documents responsive to a subpoena.  Fed. R. Civ. P. 45(b), (d).  If the documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing.  U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966).  It is undisputed that the party opposing discovery bears the burden of showing that the documents are privileged or that the subpoena is unduly burdensome.[13]

████████████████████████

████████████████████████

████████████████████████

████████████████  (citing Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 534-6 (M.D. Fla. 2003)).  But the case cited holds just the opposite: Cytodyne in fact required that the party *resisting the subpoena* and *resisting the motion to compel* initially establish that the requested discovery fell under one of the exceptions available under Rule 45.  Cytodyne, 216 F.R.D. at 536.  The Cytodyne court explained, "This Court finds that... Tree of Life [the party opposing the subpoena and the motion to compel] has made the required showing that the discovery requested in [the] Subpoena ... are confidential and that their disclosure is potentially harmful. . . . The burden then shifts to the Defendant [the party requesting discovery] to show that this information is relevant and necessary in proving its counter-claim against the Plaintiff."  Id.  See also Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1025 (Fed. Cir. 1986) ("The burden of proving that a subpoena is oppressive is on the party moving to quash and is a heavy one."); Flanagan v. Wyndham Int'l. Inc., 231

---

[13]    See also infra Section V.

07209/2941652.1

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1    F.R.D. 98, 102 (D.D.C. 2005) ("As the party seeking to quash a subpoena, S.G. bears

2    the burden of showing that it subjects her to undue burden.") (citing cases); In re Search

3    Warrant Executed at Law Offices of Stephen Garea, 173 F.3d 429, 1999 WL 137499, at

4    *1 (6th Cir. 1999) ("It is, of course, well established that attorney-client

5    communications related to areas other than legal counseling, such as business advice,

6    are not privileged. Furthermore, the person asserting the privilege bears the initial

7    burden of showing that the communication involved legal matters.") (internal citation

8    omitted).

9              Here, MGA should have been required to establish initially that Mattel's

10   requests sought privileged information and/or were unduly burdensome.    It was

11   required to do neither; it did not even try; it could not have succeeded. Thus, the

12   Discovery Master placed an improper burden on Mattel ████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████

15   **II.    THE DISCOVERY MASTER'S ORDER IMPOPERLY** ████████

16   ████████████████████████

17         The Discovery Master ruled that ████████████████████████

18   ████████████████████████████████████████████████

19              ████████████████████████████████

20              ████████████████████████████████

21              ████████████████████████████████

22              ████████████████████████████████

23              ████████████████████████████████

24              ████

25

26   _____

27   [14] Order at 23.

28

-7-
MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

07209/2941652.1

1    The Discovery Master's order was unsupported by any legal authority.  No
2    authority was cited, nor has Mattel been able to find any cases where a party was
3    excused from producing relevant and  non- privileged documents based merely on a
4    supposition that the requests were "likely" to also encompass some privileged material
5    as well.  Rule 45 does not allow a party to withhold documents simply because a
6    request covers both privileged and non-privileged documents.

7    "The attorney-client privilege protects confidential disclosures made by a
8    client to an attorney in order to obtain legal advice."  In re Grand Jury Subpoenas, 803
9    F.2d at 496.   As the party asserting the attorney-client privilege, Bingham bears the
10   burden of establishing that the privilege applies.  See Clarke v. Am. Commerce Nat'l
11   Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("The burden of establishing that the attorney-
12   client privilege applies to the documents in question rests with the party asserting the
13   privilege.") (citing Tornay v. United States, 840 F.2d 1424, 1426 (1988)).  If Bingham
14   possesses documents which it believes are both responsive and protected by the
15   attorney-client privilege, it should have withheld those documents and produced those
16   that were not.  And having failed to do so, it should have been ordered to so respond by
17   the Discovery Master.

18   Instead, Bingham offered the blanket assertion "that Mattel's subpoena
19   broadly seeks privileged information,"[15] and the Discovery Master erred by finding it
20   sufficient.  "A party may not make a blanket assertion of privilege in response to a
21   discovery request."  W.E. Green, 219 F.R.D. at 491 (collecting numerous cases).  See
22   also Eureka Financial Corp. v. Hartford Accident and Indemnity Co., 136 F.R.D. 179,
23   182 (E.D.Cal. 1991) ("Whether a responding party states a general objection to an

24
---
25   [15]   Non-Party Bingham McCutchen LLP's Memorandum of Points and Authorities in
26   Opposition to Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce
     Documents Responsive to Subpoena, dated March 12, 2009, at 10, lodged concurrently
27   herewith.

28

1  entire discovery document on the basis of privilege, or generally asserts a privilege

2  objection within an individual discovery response, the resulting 'blanket objection' is

3  decidedly improper"); Clarke, 974 F.2d at 129 ("[B]lanket assertions of the privilege

4  are 'extremely disfavored.' The privilege must ordinarily be raised as to each record

5  sought to allow the court to rule with specificity.").

6        This Court has itself previously ruled in this case that such blanket

7  privilege objections are impermissible. In its January 25, 2008 Order, the Court stated:

8        "Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a

9        subpoena to provide sufficient information to enable the party

10       seeking discovery to assess the claims of privilege and work

11       product protection. The 'universally accepted' means of claiming

12       that requested documents are privileged is by producing a

13       document-by-document privilege log. Corvello [Gail] v. New

14       England Gas Co., Inc., 243 F.R.D. 28, 33 (D.R.I. 2007).

15  Order at 13.[16]

16        The same rule should have applied here. It cannot even be argued that *all*

17  of the information Mattel seeks is privileged. Requests 1 and 2 sought information

18  about fee agreements and arrangements among the various parties which the Ninth

19  Circuit has explicitly held are not privileged. See United States v. Blackman, 72 F.3d

20  1418, 1424 (9th Cir. 1995) ("client identity and the nature of the fee arrangement

21  between attorney and client are not protected from disclosure by the attorney-client

22  privilege"); Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 130 (9th Cir.

23

24

25  [16]  The Court went on to state that even if there were a voluminous number of documents (which no one has showed here), such that a document-by-document log would be unduly

26  burdensome, the disclosures must nonetheless provide sufficient information "to enable Mattel to assess the claims of privilege and work product protection as required by Rule 45,

27  Fed.R.Civ.P." Id. at 14.

28

07209/2941652.1

-9-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney–client privilege."); In re Grand Jury Subpoenas, 803 F.2d 493, 499 (9th Cir. 1986) (reversing order quashing a subpoena and requiring attorneys to identify third parties paying their fees).[17] Such documents are not privileged regardless of whether the client in question is a party to the lawsuit. See, e.g., Blackman, 72 F.3d at 1426 (holding that fee arrangements of non-party clients were not protected by the attorney-client privilege); Berger v. Seyfarth Shaw, LLP, 2008 WL 4570687, at *1 (N.D. Cal. 2008) (reversing and remanding Magistrate Judge's order denying discovery of non-party's fee arrangement, because " consistent with federal privilege law, fee-payment arrangements are relevant to credibility and bias, and discoverable"); SEC v. First Jersey Securities, Inc., 1990 WL 209246, at *2 (holding that non-party's argument that his fee agreements with non-party lawyer are subject to the attorney-client privilege "is flatly contradicted by the established Ninth Circuit rule")."[18]

Requests 3 through 7 sought non-privileged documents relevant to Phase 2 of this matter as well.    These documents would allow Mattel to show that the MGA entities have been manipulating and concealing their sources of funding as part of a campaign to frustrate this Court's prior orders and rulings.  The manner in which the

---

[17] Indeed, this case is replete with rulings from the Court and the prior Discovery Master that fee and indemnity agreements are not privileged and are relevant to bias and credibility. See supra note 5 (Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34).

[18] Order at 20.

07209/2941652.1

-10-
MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1    Financing Entities interact will be a vital part of Mattel's case in Phase 2, and the

2    documents Mattel has requested from Bingham are crucial to these issues.

3            Mattel does not want, and did not request, privileged material.  To the

4    extent these requests also covered some privileged documents, Bingham should have

5    been ordered to produce the non-privileged documents. The Discovery Master's failure

6    to do so was clear error and should be overturned.

7    **III.    THE DISCOVERY MASTER'S ORDER WRONGLY ENGRAFTS A NEW**

8    **AND UNPRECEDENTED JURISDICTIONAL LIMIT ON DISCOVERY**

9            Citing no authority, the Discovery Master ruled ████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████[19]  Referencing his prior

12   orders ████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████[20]  This is clearly wrong.

16   **A.    Jurisdiction Over Lexington is Irrelevant to Bingham's Discovery**

17   **Obligations**

18           The Court has jurisdiction over Bingham.  The documents Mattel seeks

19   from Bingham  also are at Bingham's office, within the jurisdiction.  The fact that

20   Lexington has yet to be served under the terms of the Hague Convention is simply

21   irrelevant to Mattel's entitlement to discovery from Bingham (or anyone else within the

22   Court's jurisdiction).  Indeed, such discovery is the very way, in the federal system, for

23   Mattel to secure the information that might persuade the Discovery Master of his

24   jurisdiction over Lexington.  "A federal court always has jurisdiction to determine its

---

[19] Order at 26.
[20] Order at 26.

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

28

own jurisdiction." In re Bunyan, 354 F.3d 1149, 1152 (9th Cir. 2004) (citing United States v. Ruiz, 536 U.S. 622, 628 (2002)). Discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) (citations and quotations omitted). "And discovery has been allowed, for example, where there was a question as to whether jurisdiction could be established over an alien corporation through the employment of another as agent." Id. (citing Davis v. Asano Bussan Co., 212 F.2d 558, 564-65 (5th Cir. 1954).

Bingham itself did not even propose the rule imposed by the Discovery Master's order.   Mattel has been unable to find any decision adopting such a rule. Indeed, the only case Mattel has found even to consider such a proposal rejected it outright.   In Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 170-71 (2d Cir. 2003), a law firm was subpoenaed for records relating to a Dutch client.  The law firm argued that because it was a law firm, and because the records pertained to an international client purportedly outside the court's jurisdiction,  no production should be required. The Second Circuit disagreed: "documents held by an attorney in the United States on behalf of a foreign client, absent privilege, are as susceptible to subpoena as those stored in a warehouse within the district court's jurisdiction.  Documents obtain no special protection because they are housed in a law firm[.]"   Id.   As the court recognized, "[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney[,]" id. at 171 (citing Colton v. United States, 306 F.2d 633, 639 (2d Cir. 1962), at least if he himself is outside the jurisdiction. ████████████████████████

07209/2941652.1

1    The Discovery Master's Order is contrary not only to law but also to logic.
2  Personal jurisdiction law considers whether it is fair to hale Party A into a foreign
3  court.   Under the Due Process Clause of the Fourteenth Amendment, a court cannot
4  assert jurisdiction over a defendant unless the defendant has "certain minimum contacts
5  with [the forum] such that the maintenance of the suit does not offend traditional
6  notions of fair play and substantial justice." International Shoe Co. v. Washington,
7  326 U.S. 310, 316 (1945); see also World-Wide Volkswagen Corp. v. Woodson,
8  444 U.S. 286, 291 (1980); Vons Co. v. Seabest Foods, Inc., 14 Cal. 4th 434, 445
9  (1996).   Here, by contrast, Lexington is not being haled into court.   It is not being told
10 that it must provide Bingham with responsive documents.   Lexington isn't being told
11 to do anything at all.   The Court unquestionably has jurisdiction over Bingham, and
12 Rule 45 requires that Bingham produce the responsive non-privileged documents it
13 already has in its possession.   For this same reason, the Discovery Master's Order is
14 contrary to law in a further respect:   it contradicts the unquestionable law that parties
15 and non-parties must produce non-privileged document within their possession, custody
16 and control.[21]

17     **B.     There is Nothing Unfair About Allowing Discovery Relating to**
18           **Lexington.**

19     While the Discovery Master stated that ██████████████████████
20 ██████████████████████[22] that issue merits discussion in light of its influence
21 on the Discovery Master's ultimate Order.   To meet the standard for personal
22 jurisdiction under California law, a plaintiff must show:

23

24  [21]  Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 464 (D. Mass.
25  1993) ("Rule 45(a)(1)(C), F.R.Civ.P., provides that a subpoena issued thereunder shall
    'command each person to whom it is directed to attend and give testimony or to produce and
26  permit inspection and copying of designated books, documents or tangible things in the
    possession, custody or control of that person ...'").
27  [22] Order at 26.

07209/2941652.1

-13-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

28

(1)    the defendant has purposefully availed itself of forum benefits;

(2)    the controversy arises out of the defendant's contacts with the forum; and

(3)    the assertion of jurisdiction would comport with fair play and substantial justice.

<u>Vons</u>, 14 Cal. 4th at 446-447.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ Mattel believes that these facts are indeed sufficient to support personal jurisdiction -- or at least to allow discovery into jurisdiction as discussed above -- and may justify adding Lexington as a party to this action, and must decide whether to do so. This decision will be better informed, and better made, if the Court allows the discovery of relevant information about Lexington from Bingham.

## IV.    THERE IS NO "OTHER PARTIES" EXCEPTION TO RULE 45.

"The factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." <u>Heat and Control, Inc. v. Hester Indus., Inc.</u>, 785 F.2d 1017, 1024 (Fed. Cir. 1986); <u>see also United States v. Am. Optical Co.</u>, 39 F.R.D. 580, 583 (N.D. Cal. 1966). The factors to be considered are the same whether discovery is being sought from a party or a non-party. <u>See</u> <u>McCoy v. Southwest Airlines Co.</u>, 211 F.R.D. 381, 384 (C.D. Cal. 2002); <u>Fed. R. Civ. P.</u> 45, Advisory Committee Notes to 1991 Amendment; <u>Fed. R. Civ. P.</u> 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents

-14-

1  and tangible things or to permit inspection).  "Discovery should not simply be denied
2  on the ground that the person or entity from whom it is sought is not a party to the
3  action."  Cohen v. City of New York, 255 F.R.D. 110, 117 (S.D.N.Y. 2008), citing
4  Wertheim Schroder & Co. v. Avon Products, Inc., 1995 WL 6259 at *6 (S.D.N.Y. Jan.
5  9, 1995).

6  Neither Bingham nor the Discovery Master has cited authority that
7  recognizes an unwritten exception to Rule 45 where others have received similar
8  discovery requests.  The Discovery Master cites Moon v. SCP Pool Corp., 232 F.R.D.
9  633, 637 (C.D. Cal. 2005), for the proposition that requests for documents that can be
10  more easily and inexpensively obtained from a party may be found to impose an undue
11  burden.  However, Moon says nothing about prioritizing one non-party over another
12  non-party for that reason alone.   In Moon, the party seeking discovery served a
13  subpoena on a third party before it even requested documents from the defendants, the
14  temporal and geographical scope of the third-party subpoena far exceeded the relevant
15  scope of the claims, and the subpoena requested information regarding other unrelated
16  third parties.[23]

17  In fact, multiple requests are essential to developing a full record.
18  Different entities have different policies about document retention.  See, e.g., Diamond
19  State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev. 1994) (recognizing

20

21  [23]  The Discovery Master also relied on Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163,
22  179 (E.D.N.Y. 1988), Katz v. Batavia Marine and Sporting Supplies, Inc., 984 F.2d 422, 424
   (Fed. Cir. 1993), and Exxon Shipping Co. v. U.S. Dept. of Interior, 34 F.3d 774, 779 (9th Cir.
23  1994), to establish the importance of non-party status when determining whether compliance
24  with discovery demand would impose an undue burden.  Yet none of these cases actually
   turned on third-party status.  In Solarex, the decision turned on the burden on the third party,
25  with little benefit to the party seeking discovery.  In Katz, the court did not explicitly use non-
26  party status as a factor in determining the discretionary actions of the lower court.  In Exxon,
   the court never applied special protection to any third party nor did it call on non-party status
27  to tip the balance in favor of quashing a subpoena.

28

07209/2941652.1

-15-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1  that although the requests were "duplicative in part," they were "directed toward two

2  separate business entities, and the documents "actually maintained in the files of each

3  entity may not be identical"). Some parties are more forthcoming, or more honest, than

4  others. See, e.g., Viacom Intern. Inc. v. YouTube, Inc., 2008 WL 3876142 at *3 (N.D.

5  Cal. Aug. 18, 2008) (requiring third party to produce documents "likely to be in the

6  possession of defendants" because defendants' "poor initial record keeping raise[d]

7  questions about the completeness of its files"). There is no general rule that a party

8  cannot seek non-party discovery of documents likely to be in defendants' possession.

9  Id.  "While serving non-parties with identical document requests may result in

10  duplication, such action would ensure discovery of all facts necessary to unearth the

11  truth." In re PE Corp. Securities Litigation, 221 F.R.D. 20, 28 (D.Conn. 2003).

12          These concerns are particularly compelling here. The entitities at issue

13  were created for the express purpose of concealing the details ███████████████

14  ████████████████████████████████ Lexington has thus far successfully

15  fought service and refused even to agree to preserve documents, leaving it ostensibly

16  free, pending service, to destroy relevant documents in its possession. Mattel has yet

17  even to learn the identities of Lexington's principals because of the uniform

18  stonewalling by MGA, Larian, Omni 808, Vision Capital, and others combined with

19  Lexington's use of a Caribbean secrecy haven to conceal those identities.  Bingham

20  may well be the only source of relevant documents relating to Lexington, at least in the

21  near term.  Nor, in fact, has there been a production of such materials by anyone.[24]

22  Moreover, prior experience in this very case establishes that multiple requests, and

23  especially requests to law firms, may be the only means of uncovering relevant

24  information.   As the Court will recall, Mattel propounded numerous requests to

25  determine ████████████████████████████████████████████

26  ──────────

27  [24]  Proctor Decl., ¶ 18.

28

1　████████████████████████████████████████

2　████████████████████████████████████████

3　**V.　THE DISCOVERY MASTER ERRED** ██████████████

4　████████████████████████████████

5　**A.　Bingham Failed to Offer Any Specific Proof of Burden**

6　　　　A party seeking relief under Rule 45 from unduly burdensome document

7　requests "must provide specific and compelling proof that the burden is undue." JZ

8　Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. 2007).

9　Specific proof is required; conclusory assertions are insufficient. See Northrop Corp.

10　v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district

11　court's decision quashing subpoena); Goodman v. U.S., 369 F.2d 166, 169 (9th Cir.

12　1966) (reversing district court's quashing of subpoena).  "The burden of proving that a

13　subpoena is oppressive is on the party moving to quash and is a heavy one." Heat and

14　Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1025 (Fed. Cir. 1986) (cited by

15　Discovery Master).

16　　　　Bingham presented no such proof to the Discovery Master.  Its opposition

17　to Mattel's Motion to Compel objected to the subpoena on grounds of privilege and

18　duplication, but offered no evidence (such as the Discovery Master has required in

19　other instances) documenting how long it would take Bingham to comply or how much

20　it might cost.  Courts have repeatedly held that separating privileged from non-

21　privileged documents is *not* unduly burdensome. e.g., W.E. Green v. Baca, 219 F.R.D.

22　485, 491-92 (C.D. Cal. 2003) ("[D]efendant argues that he does not assert a blanket

23　objection; rather, he contends, he maintains only that segregating privileged from

24　unprivileged documents will be too burdensome.  This, however, effectively *is* a

---

[25]　See Trial Tr. at 3802:16 to 3803:12; 3816:13 to 3818:3, Proctor Decl., Exh. 16; Trial
Exh. 13380, Proctor Decl., Exh. 17.

07209/2941652.1



1   ███████████████████████████████████████████

2   ██████████████████████████████████

3        But rather than applying these authorities or focusing on Bingham's failure

4   of proof, the Discovery Master ████████████████████████████

5   ███████████████████████████████████████████

6   ███████████████████████████████████████████

7   ███████████████████████████████████████████

8   ████████████████████████████████████████[26]

9   Thus, the Discovery Master found that ██████████████████

10  █████████████████████████████████ This was legal error.

11  The cases upon which the Discovery Master relied stand for the very rule ████████

12  ███████████████████████████████████████████

13  ███████████████ Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005);

14  Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 534-6

15  (M.D. Fla. 2003).

16     **B.**    **The Discovery Master Erred By** ████████████████

17  ████████████████

18       The Discovery Master also erred by ████████████████

19  ███████████████████████████ "In determining whether a

20  subpoena causes undue burden, courts generally balance the following factors:  (1)

21  relevance of the information requested; (2) the need of the party for the documents; (3)

22  the breadth of the document request; (4) the time period covered by the request; (5) the

23  particularity with which the party describes the requested documents; and (6) the

24

25  ────────────────────

26  [26] Order at 28.  Plainly, the Discovery Master's order that ████████████████

27  ████████████ would make it impossible for Mattel to secure the relevant documents
    from Lexington at this time in any event.

28

07209/2941652.1

1  burden imposed." <u>JZ Buckingham Investments, LLC v. United States</u>, 78 Fed. Cl. 15,
2  25 (Fed. Cl. 2007).

3        Here, despite not having the burden to do so, Mattel's motion established
4  that its requests:

- sought non-privileged fee agreement information which the Court  has
  repeatedly held relevant to bias and credibility;
- sought other information directly relevant to numerous aspects of Phase 2,
  including MGA's and Larian's financial condition and net worth;
- were narrowly tailored to obtain information regarding the Entities' fee
  arrangements and to determine who is actually behind the Entities;
- covered a limited time period, as Bingham's clients, Omni 808 and Vision
  Capital, are single-purpose entities formed during the damages phase of
  the trial; and
- sought documents that are unlikely to be voluminous, given the fact that
  the Entities did not exist until months ago, and given their avowedly
  single-purpose nature -- with that single purpose being to serve as funding
  conduits for MGA.[27]

18        Accordingly, there was no basis for the Discovery Master ███████████
19  ████████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████████████
21  ████████████████████████████, even in the absence of proof, the proper
22  response would have been to tailor the requests so they were less burdensome. "When
23  a court is confronted with a motion to quash, its duty is not to deny discovery
24  altogether, but to reduce the demand to a reasonable level, considering the parties'

---

[27]   <u>See</u> Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents
Responsive to Subpoena, dated March 5, 2009 at 7-13; Mattel's Opposition to Motion to
Quash Subpoena by Mattel, Inc. to Bingham McCutchen LLP, dated March 5, 2009 at 11-18.

07209/2941652.1

-19-
MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1   concerns.  Rule 26(c) gives the court the responsibility and power to fashion an order
2   balancing the parties' interests."  Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d
3   1017, 1025 (Fed. Cir. 1986) (citation omitted).  See also Deitchman v. E.R. Squibb &
4   Sons, Inc., 740 F.2d 556, 560 (7th Cir. 1984) (explaining that "[w]hen a court is
5   confronted with a motion to quash such a subpoena, *its duty is not to deny any*
6   *discovery, but to reduce the demand to what is reasonable*, considering the discoverer's
7   needs and the discoveree's problems" and vacating order which granted in large part
8   motion to quash ) (emphasis added); W.E. Green v. Baca, 219 F.R.D. 485, 490-
9   92 (C.D. Cal. 2003) (explaining that appropriate course of action is for a court to
10   narrow requests rather than sustain a party's objections in toto and collecting a large
11   number of supporting citations).   "[D]iscovery should not simply be denied on the
12   ground that the person or entity from whom it is sought is not a party to the action.... A
13   better approach is for the court to take steps to relieve a nonparty of the burden of
14   compliance even when such accommodations might not be provided to a party."
15   Wertheim Schroder, 1995 WL 6259 at *6.  Instead, Bingham was allowed to flout its
16   discovery obligations entirely.  This was clear error and should be overturned by the
17   Court.

18   **VI.    THE DISCOVERY MASTER'S ORDER CLEARLY ERRED IN FINDING**
19       **THAT THE REQUESTS DID NOT RELATE TO PHASE 2 ISSUES.**
20       While the Discovery Master's Order includes a section titled ███
21   ████████████████████████████████████████
22   █████████  it belies his actual ruling.  Indeed, the Order acknowledges that ██
23   ████████████████████████████████████████
24   ████████████████████████████████████████
25

---

26   [28] Order at  27.
27   [29] Order at 32.
28

07209/2941652.1

1 ██████████████████████[30]   Despite the undisputed relevance of these topics, the

2 Discovery Master ████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████[31] As discussed above, (i) Mattel had no legal obligation to do so (but

5 nevertheless as a factual matter has attempted to do so); and (ii) Bingham has made no

6 showing of any burden whatsoever.

7      The Discovery Master's remaining rulings that █████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████[32] are

12 clearly erroneous in their own right.   In fact, Mattel's SAAC goes far beyond trade

13 secret theft as the basis for Mattel's RICO claim, alleging that the counter-defendants

14 have operated a widespread criminal enterprise that has engaged in numerous acts not

15 only of trade secret theft, but mail fraud, wire fraud, witness tampering, spoliation,

16 perjury, bribery, and criminal copyright infringement, among other predicate acts in

17 violation of the RICO statute.[33] Mattel's RICO pleading specifically contemplated the

18 existence of an ongoing, open-ended conspiracy, with continuing wrongful acts  with

19 the common purpose of defrauding and illegally competing with Mattel, the victim.

20 "The conduct of each enterprise continues through the date of this Second Amended

21 Answer and Counterclaims and is ongoing by virtue of MGA's continuing use of

22 Mattel's information and property, all to the detriment of Mattel."[34] The SAAC clearly

---

[30] Order at 34.
[31] Order at 27-28.
[32] Order at 30.
[33]   Mattel's Second Amended Answer in Case No. 05-2727 and Counter-Claims, dated July 12, 2007 ("SAAC"), at ¶¶ 88-105, Proctor Decl., Exh. 14.
[34]   SAAC, ¶ 92 (emphasis added).

07209/2941652.1

28

alleges that Mattel's stolen property was worked into MGA's business and exploited to further the ultimate goals of defrauding and illegally competing with Mattel.  Mattel further alleged that it "has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity."[35]

"RICO is to be read broadly." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985). "[C]onduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989).  RICO discovery must therefore be  broad as well.  Relevance must be interpreted to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 374 (W.D.N.Y. 2006), quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). See also Southwest Hide Co. v. Goldston, 127 F.R.D. 481, 487 (N.D. Tex. 1989) ("The Defendants' argument attempts to define relevance in terms of a prima facie case, which is not supportable.").

Discovery in RICO cases is not limited to the isolated instances of racketeering activity that were alleged with particularity but encompasses all matters related to the alleged pattern of criminal activity, including pattern evidence as well as unpled predicate acts and the identities and connections among the participants in the enterprise.  See Halperin v. Berlandi, 114 F.R.D. 8, 13 (D. Mass. 1986) (plaintiffs bringing RICO claim emanated from alleged kick-back conspiracies carried out in

---

[35] SAAC, ¶ 96.

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27 REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

07209/2941652.1

1  connection with one property sought  discovery into other separate projects; court
2  granted motion to compel because "it is unambiguously clear that a pattern is best
3  proven by linking as many acts together over as long a period of time as
4  possible....there is no requirement that the pattern of racketeering activity be
5  established by acts proximately related to the harm suffered by plaintiffs, the
6  information sought is clearly relevant.").[36] <u>See also</u> <u>New England Data Servs., Inc. v.</u>
7  <u>Becher</u>, 829 F.2d 286, 291-92 (1st Cir. 1987) (holding that district court abused its
8  discretion in denying request for further discovery as to specific predicate acts when
9  plaintiff had "provided an outline of the general scheme to defraud and established an
10 inference that the mail or wires was used to transact this scheme" -- thus relevant to
11 establishing predicate acts, relatedness and continuity of pattern, association with and
12 control of enterprise); <u>Conopco, Inc. v. Wein</u>, 2007 WL 2119507 at *2-3 (S.D.N.Y.
13 July 23, 2007) (defendant moved to quash subpoena into her financial affairs by
14 arguing that the discovery "would have no relevance to the claims in this action because
15 there is no reference or allegation in the First Amended Complaint to the financial
16 affairs of Wein and her companies, and the fraud alleged is unrelated to Wein's
17 financial affairs;" court denied the motion because "the money Wein either invests in or
18 receives from the alleged RICO conspiracy may be evidence of how the enterprise
19 operates, and of the role Wein plays in the enterprise. The subpoena is therefore
20 'reasonably calculated to lead to the discovery of admissible evidence.'") (citing <u>Fed. R.</u>
21 <u>Civ. P.</u> 26(b)(1)); <u>Sebago, Inc. v. Beazer East, Inc.</u>, 18 F.Supp.2d 70, 80 (D. Mass.

---

23 [36] In that same case, the plaintiffs sought tax returns from an entity alleged to have been
24 created by some of the defendants "for the purpose of serving as a conduit for the alleged
   illegal payments connected with the Milk Street project *as well as 'suspicious' payments from*
25 *Glinsky to Berlandi in other contexts.* " <u>Id.</u>, at 15-16 (emphasis added). The Court found this
   evidence relevant to the effort to establish a pattern of racketeering and granted the motion to
26 compel. <u>Id.</u>, at 16.

07209/2941652.1

-23-

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1998) (acknowledging that further discovery "may provide additional instances" of
alleged RICO violations -- thus relevant to establishing predicate acts, relatedness and
continuity); Stahl v. Bucks County Bank and Trust Co., 1993 WL 305944, *3 (E.D. Pa.
August 6, 1993) (though plaintiffs ultimately did not establish the pattern, district court
had allowed plaintiffs the opportunity "to discover and elicit evidence of a 'pattern of
racketeering activity' beyond the facts alleged in the complaint"); Wallace v.
Abramson, 1988 WL 63065, at *2, 4 (D.D.C. June 7, 1988) (where alleged RICO
purpose was to assist in the "criminal infiltration and misuse of CHC," the defendant's
loan with a third-party lender, even though it caused "no injury to plaintiff," would be
relevant to the continuing pattern, and was thus discoverable).   In this case, discovery
properly includes information relevant to all related acts designed for the ultimate
purposes of defrauding and illegally competing with Mattel through the improper theft,
misappropriation, infringement and other use of Mattel's property, as well as Mattel's
injury and damages.  It also included evidence relevant to showing pattern and intent --
and regardless of when they occurred, MGA's and Larian's financial manipulations are
amply relevant to those issues.

The discovery Mattel seeks will become even more relevant if Mattel is
granted leave to file a Third Amended Answer and Counterclaims.[37] Mattel's amended
Counterclaims allege ███████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████[38]

---

[37]  Mattel's Motion For Leave to File Third Amended Answer and Counterclaims, dated
April 8, 2009, Proctor Decl., Exh. 15, currently pending before the Court.
[38]  The Discovery Master also ruled that ████████████████████████████
████████████████████████████████████████████████████████████ The
conclusory rulings on these issues appear to be based on factual determinations that were
beyond the scope of these discovery rulings.

07209/2941652.1

MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27
REGARDING MOTION OF MATTEL, INC. TO COMPEL BINGHAM

1

## **Conclusion**

2            For the foregoing reasons, Mattel respectfully requests that the Court

3    overrule the portion of Discovery Master Order No. 27 regarding Mattel, Inc.'s Motion

4    To Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena

5    and compel Bingham to produce.

6

7    DATED:  May 21, 2009              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
8

9                                       By
10                                         Michael T. Zeller
                                           Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28