1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
|---|---|---|
| 12 | Plaintiff, | |
| 13 | vs. | Hon. Stephen G. Larson |
| 14 | MATTEL, INC., a Delaware corporation, | **DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27 REGARDING MOTION OF MATTEL, INC. TO COMPEL DOCUMENTS FROM BINGHAM MCCUTCHEN** |
| 15 | | |
| 16 | Defendant. | |
| 17 | AND CONSOLIDATED ACTIONS | |

18

19        Hearing Date:   July 6, 2009
          Time:           10:00 a.m.
20        Place:          Courtroom One

21

22              **[PUBLIC REDACTED VERSION]**

23

24

25

26

27

28

1              I, B. Dylan Proctor , declare as follows:

2         1.     I am a member of the bar of the State of California and a partner of Quinn

3    Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make

4    this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I

5    could and would testify competently thereto.

6         2.     Attached as Exhibit 1 is a true and correct copy of the Discovery Master's

7    Order No. 27 Regarding Motion of Mattel, Inc. to Compel Documents From Bingham

8    McCutchen, dated May 6, 2009.

9         3.     Attached as Exhibit 2 is a true and correct copy of a letter from my partner,

10   John S. Purcell to Todd Gordinier and Joel Klevens, dated May 14, 2009.

11        4.     Attached as Exhibit 3 is a true and correct copy of Mattel's Subpoena to

12   Bingham McCutchen LLP, dated February 12, 2009, with proof of service.

13        5.     Attached as Exhibit 4 is a true and correct copy of Omni 808 Investors,

14   LLC's Registration Information as accessed on March 1, 2009, available at

15   <http://kepler.sos.ca.gov/corpdata/ShowLpllcAllList?QueryLpllcNumber=20082261002

16   6&printer=yes>.

17        6.     Attached as Exhibit 5 is a true and correct copy of the Court's Order

18   Granting Mattel's Motion to Compel Documents, dated January 25, 2007.

19        7.     Attached as Exhibit 6 is a true and correct copy of the Court's Order

20   Granting Mattel's Motion to Compel Production of Documents and Interrogatory

21   Responses by MGA, dated May 15, 2007.

22        8.     Attached as Exhibit 7 is a true and correct copy of Order Granting in Part

23   and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to

24   Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19,

25   2007.

26        9.     Attached as Exhibit 8 is a true and correct copy of Order Re Motions Heard

27   on June 11, 2007, dated June 27, 2007.

28        10.     Attached as Exhibit 9 is a true and correct copy of the Court's Order

DECLARATION OF B. DYLAN PROCTOR

1    Appointing Temporary Receiver, dated April 27, 2009.

2    11.    Attached as Exhibit 10 is a true and correct copy of a letter from Peter Villar

3    to my partner, Jon Corey, dated February 20, 2009.

4    12.    Attached as Exhibit 11 is a true and correct copy of a letter from Jon Corey

5    to Peter Villar, dated February 23, 2009.

6    13.    Attached as Exhibit 12 is a true and correct copy of a letter from my partner,

7    James J. Webster to Peter Villar, dated February 26, 2009.

8    14.    Attached  as Exhibit 13  is a true and correct copy of Mattel's Second

9    Amended Answer in Case No. 5-2727 and Counter-Claims, dated July 12, 2007.

10    15.    Attached as Exhibit 14 is a true and correct copy of Mattel's Motion For

11    Leave to File Third Amended Answer and Counterclaims, dated April 8, 2009.

12    16.    Attached as Exhibit 15 is a true and correct copy of relevant excerpts from

13    the court reporter's official transcript of the trial in this matter, dated July 1, 2008.

14    17.    Attached as Exhibit 16 is a true and correct copy of Trial Exhibit 13380.

15    18.    Mattel's review of productions in this case to date show that, despite Mattel's

16    requests, no party or non-party has produced fee agreements relating to the representation

17    of Omni 808 Investors LLC, Vision Capital LLC, or Lexington Financial Ltd (Request No.

18    1) or corporate governance or other corporate records concerning Vision Capital or

19    Lexington (Request Nos. 3 and 4).  Nor has any party or non-party produced documents

20    sought by Request Nos. 2, 5, 6 or 7 relating to Vision Capital or Lexington.  While some

21    documents about such topics relating to Omni 808 have been produced, no party or non-

22    party has represented that the productions are complete or include all relevant (or even thus

23    far ordered) documents on those subjects.

24    I declare under penalty of perjury under the laws of the United States of

25    America that the foregoing is true and correct.

26    Executed on May 21, 2009, at Los Angeles, California.

27

28                                                  B. Dylan Proctor

# EXHIBIT 1

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

May 14, 2009

<u>**VIA FACSIMILE AND E-MAIL**</u>

Todd E. Gordinier, Esq.
Bingham McCutchen LLP
600 Anton Blvd., 18th Floor
Costa Mesa, CA 92626

Joel Klevens, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

Re:    <u>Mattel, Inc. v. MGA Entertainment, Inc. et al.</u>

Dear Counsel:

I am writing to request a conference of counsel regarding Mattel's anticipated motion under <u>Rule</u> 72(a) objecting to the portion of Discovery Master's Order No. 27 regarding its Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to a Subpoena ("the Order"). Mattel believes the Order is clearly erroneous and contrary to law.

The Discovery Master refused to enforce the subpoena in its entirety rather than to modify it based in part on his finding that the subpoena sought privileged information. This was no reason to prevent Mattel from obtaining the non-privileged documents responsive to the subpoena. It would have been a fairly simple matter to allow Mattel to obtain the documents it needed while also preserving the attorney client privilege between Bingham and its clients. The Discovery Master should have entered an order accomplishing both these goals, rather than refusing to enforce the subpoena.

The Order was found to be partially duplicative of subpoenas propounded on other parties. Again, this was no reason to refuse to enforce it. Parties routinely propound similar discovery upon different entities that might have relevant documents. This increases the odds that a party will obtain the full scope of responsive documents and provides a powerful means of deterring gamesmanship or outright dishonesty.

**EXHIBIT** _____ 2

**PAGE** _____ 45

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

07209/2931877.1

The Order was also based in part on the status of Lexington as an overseas party who was outside of the Discovery Master's jurisdiction. However, as there is no question that the Discovery Master <u>does</u> have jurisdiction over Bingham, jurisdiction over Lexington is irrelevant. It makes no sense to allow parties who are subject to the jurisdiction of a court to ignore discovery requests relating to people or entities that might be beyond the court's jurisdiction.

At several points, the Discovery Master states that some documents in Bingham's possession are relevant, but need not be produced by Bingham because Omni 808 has been ordered to produce them. This reasoning is flawed for the reasons mentioned above—a party has a much better chance of obtaining the documents it needs if it can rely on more than once source, and no rule properly prevents discovery in this circumstance.

The Discovery Master also found several categories of documents to be overbroad, but this does not justify the ruling refusing to enforce the subpoena in its entirety. Moreover, the requests clearly were not overbroad in the context of this litigation, and even if they were an order compelling a narrowed request would have been appropriate. Allowing Bingham to ignore the requests for documents altogether was clearly erroneous.

I would like to speak with you about these issues so we can discuss them further. Please feel free to call me on my cell phone at 310 614 7395. I look forward to hearing from you.

Best regards,

John S. Purcell
07209/2931877.1

2

EXHIBIT _____2_____

PAGE_____46_____

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**CHICAGO**
250 South Wacker Drive, Suite 230
Chicago, IL 60606
(312) 463-2961
Facsimile: (312) 463-2962

**LONDON**
16 Old Bailey
London EC4M 7EG United Kingdom
+44(0) 20 7653 2000
Facsimile: +44(0) 20 7653 2100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052 Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**   May 14, 2009

**NUMBER OF PAGES, INCLUDING COVER:** 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Todd E. Gordinier, Esq. Bingham McCutchen LLP | 714-830-0622 | 714.830.0717 |
| Joel Klevens, Esq. Glaser, Weil, Fink, Jacobs & Shapiro, LLP | (310) 556-7832 | (310) 556-2920 |

**FROM:**   Amy Kuzio

**RE:**   Mattel, Inc. v. MGA Entertainment, Inc. et al.

*FAXED*
MAY 1 4 2009

**MESSAGE:**

Please find enclosed, a letter from John Purcell regarding the above styled matter.

EXHIBIT _____ 2

PAGE _____ 47

| CLIENT # | 7975 | ROUTE/ RETURN TO: | *Lorita Soto* | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | *unknown* | CONFIRMED? ☐ NO ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Job number    : 157          *** SEND SUCCESSFUL ***

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | SAN FRANCISCO |
| --- | --- | --- |
| 61 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100 | 865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100 | 50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700 |
| SILICON VALLEY | CHICAGO | LONDON | TOKYO |
| 555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100 | 280 South Wacker Drive, Suite 250<br>Chicago, IL 60606<br>(312) 463-2961<br>Facsimile: (312) 463-2962 | 16 Old Bailey<br>London EC4M 7EG United Kingdom<br>+44(0) 20 7653 2000<br>Facsimile: +44(0) 20 7653 2100 | Akasaka Twin Tower Main Building, 6th Floor<br>17-22 Akasaka 2-Chome<br>Minato-ku, Tokyo 107-0052 Japan<br>+81 3 5561-1711<br>Facsimile: +81 3 5561-1712 |

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     May 14, 2009                    NUMBER OF PAGES, INCLUDING COVER: 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
| --- | --- | --- |
| Todd E. Gordinier, Esq.<br>Bingham McCutchen LLP | 714-830-0622 | 714.830.0717 |
| Joel Klevens, Esq.<br>Glaser, Weil, Fink, Jacobs & Shapiro, LLP | (310) 556-7832 | (310) 556-2920 |

FROM:    Amy Kuzio

RE:       Mattel, Inc. v. MGA Entertainment, Inc. et al.

MESSAGE:

Please find enclosed, a letter from John Purcell regarding the above styled matter.

| CLIENT # | 7975 | ROUTE/<br>RETURN TO: | *Loretta Soto* | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
| --- | --- | --- | --- | --- |
| OPERATER: | | *astra* | CONFIRMED?   ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 2_____

PAGE _____ 48 _____

Group Send Report

```
Page        : 001
Date & Time: 05-14-2009    17:24
Line 1      : 2134433100
Line 2      :
Machine ID  : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 157 |
| Date | : | 05-14  17:22 |
| Number of pages | : | 003 |
| Start time | : | 05-14  17:22 |
| End time | : | 05-14  17:24 |

Successful nbrs.

  Fax numbers

☎1+17148300717
☎1+13105562920

Unsuccessful nbrs.                                                                Pages sent

EXHIBIT _____2_____

PAGE _____49_____

# EXHIBIT 3

AO88 (Rev. 12/07) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL        CALIFORNIA

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number: [1] CV 04-9049 SGL (RNBx)
Consolidated with cases 04-9059
and 05-2727

TO: Bingham McCutchen, LLP
    355 South Grand Avenue, Suite 4400
    Los Angeles, CA 90071-3106

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | February 26, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael T. Zeller* /SH | |
| Attorney for Plaintiff, Mattel, Inc. | February 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael T. Zeller, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT ___3___

PAGE ___50___

AO88  (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|

**SERVED**

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT _____ 3

PAGE _____ 5 /

# ATTACHMENT A

1.    All documents referring or relating to any fee agreement or fee arrangement referring or relating to Bingham McCutchen LLP's ("Bingham") representation of Vision Capital, LLC ("Vision Capital") and/or Omni 808 Investors, LLC ("Omni 808"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements or arrangements.

2.    Documents sufficient to identify each and every person or entity billed for, liable to pay, responsible for payment of, or who has paid or promised to pay, whether directly or indirectly, Bingham's fees in connection with Bingham's representation of Omni 808 or Vision Capital.

3.    All documents referring or relating to the formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington Financial Limited ("Lexington"), including the source(s) and terms of such capitalization, funding and/or credit.

4.    All documents identifying any member, managing member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or Lexington.

5.    All contracts and agreements, and proposed or offered contracts or agreements, referring or relating to Omni 808, Vision Capital and/or Lexington, including without limitation all drafts thereof disclosed to, shared with, exchanged with or received from Wachovia, MGA Entertainment, Inc., Fred Mashian, Leon Neman, Isaac Larian and/or any other person or entity other than Omni 808.

6.    All communications referring or relating to Omni 808, Vision Capital and/or Lexington. For purposes of this Request, Bingham may exclude (a) privileged communications with its client Omni 808 after its attorney-client relationship arose; (b) privileged communications with its client Vision Capital after its attorney-client relationship arose; and (c) communications with Mattel's counsel or the Court in the matter of Carter Bryant v. Mattel, No. CV 04-9059, and consolidated cases.

7.    Documents sufficient to identify any instances in which Bingham has represented MGA Entertainment, Inc., any affiliate of MGA Entertainment, Inc., Fred Mashian, Leon Neman, any entity associated with Leon Neman, Yoel Neman, Monia Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian and/or any entity associated with Isaac Larian at any time since June 1, 2001.

EXHIBIT ___3___

PAGE ___52___

# EXHIBIT 4

# California Business Portal

**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of May 15, 2009 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| OMNI 808 INVESTORS LLC | | |
| **Number:** 200822610026 | **Date Filed:** 8/12/2008 | **Status:** active |
| **Jurisdiction:** CALIFORNIA | | |
| Address | | |
| 355 SO GRAND AVE STE 4400 | | |
| LOS ANGELES, CA 90071 | | |
| Agent for Service of Process | | |
| CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA | | |
| AS CSC - LAWYERS INCORPORATING SERVICE 9 | | |
| C1592199) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT  4
PAGE  53

# EXHIBIT 5

CONFORMED COPY

FILED

2007 JAN 26  PM 12: 25

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

10
11
12
13
14
15
16
17

CARTER BRYANT, an individual,

            Plaintiff,

      v.

MATTEL, INC., a Delaware corporation,

            Defendant.

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING MATTEL'S
MOTION TO COMPEL PRODUCTION
OF DOCUMENTS**

18
19
20
21

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

22
23

I.  INTRODUCTION

24
25
26
27
28

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of

Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter

Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a

reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

29

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in
accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT ___5___

PAGE ___54___

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 5
PAGE _____ 55

2

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B.  Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____5_____

PAGE _____56_____

C. <u>Bryant's Second Notice of Removal (CV 04-9059)</u>

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. <u>Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)</u>

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. <u>MGA's Complaint Against Mattel (CV 05-2727)</u>

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. <u>Mattel's Second Motion to Remand its Complaint against Bryant</u>

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT _____ 5

PAGE _____ 57

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT _____5_____

PAGE _____58_____

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT _____5_____

PAGE _____59_____

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate

and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to

compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.   Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce

the following categories of requested documents:  (a) documents relating to Bratz designs created

by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for

Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-

related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA

that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was

exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of

documents are relevant to establish Bryant's liability and would reveal works rightfully owned by

Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel

contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not

produce any responsive documents that were created after the suit was filed; Bryant will not

produce any communications with MGA "created" after the end of his Mattel employment;

Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view,

"resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known

contracts between him and MGA and refuses to produce non-privileged communications relating

to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.
Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a
court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 5

PAGE _____ 60

7

his earnings from his work for MGA.  Mattel's Motion at 7.  Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. <u>Bryant's Opposition to Mattel's Motion to Compel</u>

Bryant opposes Mattel's motion to compel.  He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004.  Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims.  Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter.  <u>See</u> Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies.").  Accordingly, in the summer and fall of 2004, he produced the following categories of documents:  documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]   There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT _____5_____

PAGE _____6 /_____

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT _____5_____

PAGE _____6 2_____

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

## III. DISCUSSION

### A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT _____ 5

PAGE _____ 63

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT _____ 5 _____

PAGE _____ 64 _____

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT _____ 5

PAGE _____ 65

1    employment, regardless of whether they resulted in a Bratz doll released in June of 2001.  Mattel

2    also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's

3    confidential and proprietary information, not just information relating to the Bratz dolls released

4    in June of 2001.  Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz

5    works – works that are allegedly owned by Mattel because they were created while Bryant was

6
7    employed by Mattel – through his ongoing conduct of reproducing and creating derivative works.

8    Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request

9    Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

10

11          Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's

12          Payments from MGA

13          Mattel seeks documents relating to Bryant's payments from MGA.  Bryant acknowledges

14   that Mattel is entitled to know how much money Bryant has earned from MGA, and represents

15
16   that he has produced, in redacted form, all royalty statements he has received related to the First

17   Generation Bratz dolls and his 2000 contract with MGA.  Bryant asserts that his redactions are

18   justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product,

19   which information Bryant believes constitutes MGA's trade secret information.  Bryant also

20
21   objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the

22   returns.  Bryant's Opposition at 29:21-27.

23          The Discovery Master finds that documents relating to MGA's payments to Bryant,

24   including royalty statements and other payment information, are relevant to several Mattel claims.

25   First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach

26
27   of duty of loyalty, unjust enrichment, and conversion.  Mattel seeks to recover all benefits Bryant

28   received as a result of his alleged violations of duties to Mattel.  Payments to Bryant from MGA

29   and others might be traceable to work Bryant performed while employed by Mattel, regardless of

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 5 _____

PAGE _____ 66 _____

13

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 5

PAGE _____ 67

14

1    however, is not required to produce tax returns, provided that he otherwise fully complies with

2    these requests as ordered.

3         <u>Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA</u>

4         Mattel seeks production of Bratz-related communications and communications with

5    MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

6    refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

7    

8    relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9    and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10   to Bryant's Mattel employment or work Bryant performed for Mattel, except those

11   

12   communications "created" prior to the close of Bryant's Mattel employment; and (4)

13   communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant

14   contends that the discovery requests for communications between Bryant and MGA are

15   

16   overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

17   have privacy rights that would be impinged upon if he were to disclose his communications.

18   Bryant also asserts that he has his own confidentiality interest regarding any information that he

19   shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

20   

21   would require him to reveal the identity of current Mattel employees seeking employment with

22   MGA or Bryant.

23        The Discovery Master finds that Mattel's requests for all communications between Bryant

24   and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what

25   Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26   

27   to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential"

28   private information about current or former employees, contractors or vendors (including

29   employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51:  Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

### IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

EXHIBIT _____ 5
PAGE _____ 69

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant

need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30,

31, 32, 33, 34, 35, 36, 45, and 46.

    2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions

that are justified by the attorney-client privilege or work product doctrine or his telephone records

pursuant to the terms of this Order.

    3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5),

Fed.R.Civ.P.

    4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

computers for forensic imaging.

    5.  Bryant shall complete his production by producing missing attachments, fax cover

pages and all other missing responsive documents.

    6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

    7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

Mattel shall file this Order with the Clerk of Court forthwith..

IT IS SO ORDERED.

Dated: January 25, 2007

                              HON. EDWARD A. INFANTE (Ret.)
                                 Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT _____ 5

PAGE _____ 71

# EXHIBIT 6

CONFORMED COPY
LODGED                        FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.     CENTRAL DIST. OF CALIF.
RIVERSIDE                   RIVERSIDE

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7                       UNITED STATES DISTRICT COURT

8                       CENTRAL DISTRICT OF CALIFORNIA

9                              EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12           Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15           Defendant.                     **ORDER GRANTING MATTEL'S**
                                           **MOTION TO COMPEL PRODUCTION**
16                                         **OF DOCUMENTS AND**
                                           **INTERROGATORY RESPONSES BY**
17  CONSOLIDATED WITH                      **MGA**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                           I.  INTRODUCTION

22        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26  submission pending the parties' submission of a proposed protective order, which was received

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                    1

                        EXHIBIT _____ 6 _____
                        PAGE _____ 72 _____

1    on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2    Mattel's motion to compel is granted.

3                     II. BACKGROUND

4        A. Requests for Documents

5        In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6    became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7    categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8    court granted because of the short amount of time provided for compliance with the subpoena.

9    The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10    some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11    generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12        In 2005, the parties stipulated to supplementing their document productions on May 16,

13    2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14        In September of 2006, MGA made a supplemental production of documents. On February

15    5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16    with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17    documents to replace earlier produced documents with legibility problems.

18        Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19    preliminary matter, Mattel contends that MGA's production is deficient because it contains

20    redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21    respect to essentially five categories of documents. First, Mattel contends that MGA is

22    withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23    believes that MGA's production is incomplete based upon its review of documents that have been

24    produced by third party Steven Linker. According to Mattel, Linker's documents from October

25    of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26    previously represented. Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT _____ 6

PAGE _____ 73

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5    Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place.  In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26       [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    3

EXHIBIT _____6_____

PAGE _____74_____

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2 services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3 Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4 Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5 Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7 payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8 because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9 (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10 damages; and (3) payments may show when and what trade secret information Bryant and other

11 defendants allegedly misappropriated from Mattel.

12    Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13 contends that all agreements between Bryant and MGA are relevant, not just the original

14 September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15 documents relating to MGA and Bryant's alleged joint defense agreement because such

16 information would be relevant to demonstrate bias and lack of credibility.

17    Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18 statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19 information may reveal relevant information about the date of creation of Bryant's Bratz

20 drawings.

21    In response, MGA denies withholding responsive documents and asserts that it has

22 produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23 that it has produced all responsive and relevant documents that it was able to locate in response to

24 request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25 before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26 motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____ 6 _____

PAGE _____ 75 _____

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10          MGA next contends that Mattel's motion should be denied for the following additional

11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12  unreleased products.  MGA asserts that its product design documents for its unreleased toy

13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14  designs and drawings for products currently under development, over six years after Bryant first

15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16  documents relating to unreleased products are ordered produced, MGA requests a protective order

17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18  than the current protective order provides.  In the alternative, MGA requests that any order

19  compelling production of documents relating to unreleased products should essentially be stayed

20  until after MGA's products are publicly released.

21          Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _____ 6
PAGE _____ 76

1 | in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's
2 | Opposition at 24:9-12.[2]

3       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements
4 | and litigation documents concerning Bratz for a variety of reasons, including because Mattel has
5 | refused to produce similar types of documents. More significantly, MGA contends that Mattel's
6 | requests for non-public witness statements are "a blatant attempt to avoid the discovery
7 | limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations
8 | imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.
9 | MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,
10 | Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an
11 | attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel
12 | abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took
13 | the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA
14 | was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting
15 | foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created
16 | a situation in which MGA has been forced to give testimony and provide evidence related to
17 | issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family
19 | dispute between MGA's chief executive officer and his brother because such documents are in no
20 | way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration
21 | proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,
22 | MGA contends that the brothers were bound by a protective order prohibiting the use of any
23 | documents or testimony for any purpose other than the arbitration.

---

26    [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 6

PAGE 77

6

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created. MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections. MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                                    III. DISCUSSION

19   A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT _____ 6
PAGE _____ 78

1    opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2    expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3    the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4    the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5    26(b)(2).

6        B.  Document Requests

7           1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9        The requests above seek discoverable information regarding the origins of Bratz and

10    Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11    response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12    "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13    and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14    14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15    products and documents from MGA Hong Kong.

16        As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17    its production to "relevant and responsive non-objectionable documents" or documents

18    "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19    might be excluding documents that are responsive to the request based upon its unilateral

20    determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21    document requests ordered herein without these restrictions.

Design Documents for Unreleased Products

23        MGA's design documents for unreleased products are relevant to Mattel's claims and

24    defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25    parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26    design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

EXHIBIT    6

PAGE      79

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2   has been approved and entered as an order of the court.  MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                              Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15         2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16             61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    9

                          EXHIBIT _____ 6 _____

                          PAGE _____ 80 _____

### 3. MGA's Payments to Bryant (Nos. 43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant.

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41.

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____6____

PAGE ____81____

10

1    that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2    documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3    protective order that prohibits the use of any documents or testimony for any purpose other than

4    the arbitration.  MGA, however, has not provided any evidence of the protective order.

5    Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6         6. Documents Regarding Date-Testing (Request No. 92)

7        Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8    from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9    testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10    and including without limitation all results and reports relating thereto."  MGA contends that the

11    request is premature, and should proceed in the course of expert discovery.

12        The request calls for relevant discovery and there is no basis for delaying production of

13    responsive documents, other than expert reports.  The timing of expert reports is governed by

14    Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15        C. Interrogatories

16        Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17    MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18    responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19    interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20    court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21    served.  The district court lifted the stay on May 17, 2006.

22

23

24

25       [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26    personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28    Bryant v. Mattel, Inc.,
       CV-04-09049 SGL (RNBx)

11

EXHIBIT _____ 6

PAGE _____ 82

1       Neither party has cited to any caselaw governing the calculation of the 30-day period

2   when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3   will be treated as timely in order to preserve any valid objections MGA may have asserted.

4       Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5   conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6   tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7   before December 31, 2001, including a description of each person's role and the start and end

8   dates of each person's involvement. In response, MGA asserted numerous objections, but did

9   provide the names of five individuals.

10      The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11  objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18      Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21      Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24      MGA's objections are without merit. The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26  compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                    12

EXHIBIT _____ 6
PAGE _____ 8 3

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4        Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7        Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

    EXHIBIT _____6_____

    PAGE _____84_____

                                                                                    13

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4         Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                         IV. CONCLUSION

8         For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12   motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15   sanctions is denied.

16         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

21   Dated: May /5, 2007

                             HON. EDWARD A. INFANTE (Ret.)
                             Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 6 _____

PAGE _____ 85 _____

14

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

_Anthony Sales_

EXHIBIT _____ 6

PAGE _____ 86

# EXHIBIT 7

CONFORMED COPY

2007 JUN 20 PM 1:12
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY ____

FILED

1  Hon. Edward A. Infante (Ret.)
2  JAMS
   Two Embarcadero Center
3  Suite 1500
   San Francisco, California  94111
4  Telephone:   (415) 774-2611
   Facsimile:   (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

          Plaintiff,

     v.

MATTEL, INC., a Delaware corporation,

          Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No.1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS**

I. INTRODUCTION

On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___7___
PAGE ___87___          C6|19|c7

1

1    Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on

2    May 23, 2007, Mattel submitted a reply brief. Mattel essentially seeks an order compelling

3    Bryant to produce copies of a document identified on Bryant's privilege log that has been

4    withheld on the basis of the attorney-client privilege.[1] Having considered all the papers submitted

5    by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege

6    is granted and the request for sanctions is denied.

                                    II. BACKGROUND

7

8            In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other

9    things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48. Bryant argued

10   that such agreements are irrelevant and privileged. The Discovery Master held that the

11   documents relating to fee or indemnity agreements between MGA and Bryant are relevant to

12   demonstrate bias and lack of credibility. Accordingly, the Discovery Master ordered Bryant to

13   produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and

14   48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P. See Discovery

15   Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25,

16   2007 (the "January 25, 2007 Order").

17           On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies

18   of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler"). Littler

19   is counsel of record for Bryant in this action. Notably, however, the privilege log indicates that

20   the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson,

21   P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA

22   Entertainment, Inc.)." Proctor Decl., Ex. 5. The recipient is identified as "Daphne Gronich, Esq.

23

24        [1] The parties were able to resolve a portion of the motion during the briefing process. In addition to the fee
     agreements, Mattel originally sought production of a communication between MGA's patent counsel to Mr. Bryant
25   regarding a patent for interchangeable doll footgear and feet. A day before the opposition brief was due, Bryant
     offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to
26   any other document or testimony. Mattel accepted Bryant's offer. See Bryant's Opposition at 1 and Mattel's Reply
     at 1. Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have
     offered to produce the communication during the meet and confer process.

27

28
     Bryant v. Mattel, Inc.,                EXHIBIT ___7___              2
     CV-04-09049 SGL (RNBx)
                                            PAGE ____88____

1  (general counsel for MGA Entertainment, Inc.)." Id. Privilege Log Entry Nos. 9 and 10 are both

2  described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3  Entertainment, Inc." Id. The only difference in the description is that Privilege Log Entry No. 9

4  is "executed," whereas No. 10 is a "draft." Id. In his opposition brief, Bryant represents that

5  items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6  other only one." Id. Bryant is not a party to the fee agreement. MGA, however, has apparently

7  asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8  document pursuant to their joint defense agreement. Bryant's Opposition at 3.

9          Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10  produced pursuant to the January 25, 2007 Order. Mattel contends that although Bryant was not a

11  party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12  MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13  Mattel further contends that the agreement between MGA and Littler is not privileged under

14  Ninth Circuit law. See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15  general rule, client identity and the nature of the fee arrangement between attorney and client are

16  not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17  Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18  the client, the amount of the fee, the identification of payment by case file name, and the general

19  purpose of the work performed are usually not protected from disclosure by the attorney-client

20  privilege.").

21          Bryant contends that the documents at issue are in his possession solely because they were

22  provided to his counsel under a joint defense agreement. He contends that this joint defense

23  agreement prevents him from waiving the attorney-client privilege asserted by MGA. He further

24  asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

25  directly from MGA.

26                                    III. DISCUSSION

27          For reasons already set forth in the January 25, 2007 Order, the documents at issue are

28  relevant to the claims and defenses in the case. Pursuant to the terms of the January 25, 2007

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          3

EXHIBIT _____ 7

PAGE _____ 89

1  Order, Bryant was required to either produce the documents or identify them on a privilege log.
2  As the party withholding the documents, Bryant was required to substantiate the claim of
3  privilege under Federal Rule of Civil Procedure 26(b)(5). He has failed to do so. Bryant has not
4  made any attempt to submit affidavits or other admissible evidence to establish that, for instance,
5  the withheld documents contain confidential attorney-client communications made for the
6  purpose of giving legal advice. Nor has he made any challenge to the caselaw cited by Mattel
7  holding that, in general, fee agreements are not privileged under Ninth Circuit law. That Bryant
8  and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the
9  underlying claim of attorney-client privilege. See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.
10 Cal. 1995).

11       Moreover, MGA, which participated in the meet and confer on this motion and was served
12 with the motion[2], has not made any attempt to substantiate its claim of the attorney-client
13 privilege other than the unsupported assertions in Bryant's privilege log. Therefore, the claim of
14 privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered
15 produced.

                              IV. CONCLUSION

16       For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9
17 and 10 forthwith. Mattel's motion for sanctions is denied.

18       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
19 Master, Bryant shall file this Order with the Clerk of Court forthwith.

20

21 Dated:  June 19, 2007

22                              /s/Edward A. Infante
                               _____
23                             HON. EDWARD A. INFANTE (Ret.)
                               Discovery Master
24

25

26 _____
   [2] See Mattel's Reply at 1.
27

28
Bryant v. Mattel, Inc.,                                              4
CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____
PAGE _____90_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 7

PAGE 91

# EXHIBIT 8

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority _____  Send _____
Entered _____  Closed _____
JS-5/JS-6 _____  JS-2/JS-3 _____
Scan Only _____  Docketed on CM _____
_____ THIS CONSTITUTES NOTICE OF
      ENTRY AS REQUIRED BY FRCP 77(d)

         JUN 2 7 2007

EASTERN DIVISION
BY _____ DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 2 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY    JIM HOLMES        DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | CASE NO. CV 04-09049 SGL |
| Plaintiff, | CONSOLIDATED WITH<br>CV 04-09059 SGL<br>CV 05-02727 SGL |
| v. | |
| MATTEL, INC., | ORDER RE MOTIONS HEARD ON<br>JUNE 11, 2007 |
| Defendant, | |
| AND CONSOLIDATED ACTIONS | |

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

EXHIBIT _____ 8

PAGE _____ 92        06|27|07

Docket No. 577

1   §§ 1961-1968 ("RICO").  Another motion challenges the Court's exercise of

2   personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V.

3   ("MGA Mexico").  Two additional motions seek review of a ruling, issued by a court-

4   appointed discovery master, overruling objections made during a party's deposition

5   that were based on the attorney-client and joint-defense privileges.  A final motion

6   heard on June 11, 2007, addresses the Court's scheduling order that divided the

7   issues to be tried in these consolidated cases into two phases.  This last motion will

8   be addressed in a separate order.

9          The Court has reviewed the parties' filings regarding these motions and held

10  a hearing on June 11, 2007.  For the reasons and in the manner set forth more fully

11  herein, the Court makes the following rulings regarding these motions:

12         1.      Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

13  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1]

14  **GRANTED IN PART AND DENIED IN PART.**

15         2.      Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

16  XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

17         3.      Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

18  Counterclaims (docket # 266):  **DENIED.**

19         4.      Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

20  (docket # 308):  **GRANTED IN PART AND DENIED IN PART.**

21         5.      Motion of Carter Bryant Objecting to Discovery Master's March 7,

22  2007, Order (docket # 306):  **GRANTED IN PART AND DENIED IN PART.**

23

24

25

26

27

28

---

[1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Carter Bryant ("Bryant"), and MGA Mexico.

2

EXHIBIT ____ 8

PAGE ____ 93

## I. Factual Allegations

1
2       The following allegations appear in the Amended Answer and Counterclaims
3   ("AAC"):

4   A.      **Bryant's Employment by Mattel**

5       Carter Bryant was hired by Mattel as a Barbie product designer in January
6   1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential
7   Information and Inventions Agreement," wherein he agreed not to assist or work for
8   a Mattel competitor while employed by Mattel and that the designs and inventions
9   he created while employed by Mattel were Mattel property. (AAC ¶¶ 22-23.) Bryant
10  also executed a "Conflict of Interest Questionnaire" wherein he certified that, other
11  than as disclosed, he had not worked for a Mattel competitor in the past year, had
12  not engaged in a business transaction with a Mattel competitor that could create a
13  conflict of interest, and that he would inform Mattel immediately if such an event
14  occurred. (AAC ¶¶ 24-25.) While still employed by Mattel, Bryant used Mattel
15  property and resources to develop and design the Bratz concept. (AAC ¶ 26.)
16  Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz
17  line, in some cases, falsely informing those employees that they were working on a
18  Mattel project. (AAC ¶ 27.)

19  B.      **MGA's Involvement in Bryant's Conduct**

20      MGA knew of and encouraged Bryant's misappropriation of Mattel property
21  and resources. (AAC ¶ 33). Bryant made affirmative misrepresentations to Mattel,
22  including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.)
23  Bryant and MGA concealed from Mattel that Bryant developed Bratz while
24  employed by Mattel, that Bryant worked with MGA during the time he was
25  employed by Mattel, and that Larian and others, not Bryant, were the creators of
26  Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract
27  with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.)
28      Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

3

EXHIBIT _____ 8
PAGE _____ 94

1    showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon

2    thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in

3    January, 2001, and then began manufacturing and selling the dolls to retailers for

4    an annual revenue in the excess of $500 million. (AAC ¶¶ 31-32.)

5    **C.    Proprietary Information**

6        **1.    Mexico**

7        Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty

8    Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose

9    ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38-40.) In the

10   three months before all three simultaneously resigned from Mattel Mexico on April

11   19, 2004, they were in contact with MGA via an email account with the address

12   "plot04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this

13   account to supply MGA with confidential and proprietary Mattel information. (AAC

14   ¶ 42.) The three also copied various proprietary Mattel documents onto USB flash

15   drives prior to resigning. (AAC ¶ 44-46.) Shortly before her departure, Trueba

16   increased her access to Mattel's confidential information and attended a meeting at

17   which Mattel personnel analyzed Barbie programs for the United States, Canada,

18   and South America. (AAC ¶ 47.)

19       Among them, Machado, Trueba, and Vargas stole documents containing

20   information regarding Mattel's future products, production and shipping costs, sales

21   information, customer information, marketing information, and strategic research

22   information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not

23   limited to the Mexican market; rather, the information stolen had the potential, and

24   in fact did, give MGA an unfair competitive advantage in the United States and

25   around the world. (AAC ¶ 49.)

26       In an attempt to conceal his actions, Machado ran a software program on his

27   Mattel computer in order to erase information pertaining to his contact with MGA.

28   (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized

4

EXHIBIT _____ 8

PAGE _____ 95

1    from MGA's Mexico City offices, pursuant to a search warrant, a large number of

2    documents containing Mattel trade secrets and confidential information. (AAC

3    ¶ 53.)

4         Shortly after the theft, Machado, Trueba, and Vargas traveled to Los

5    Angeles to meet face-to-face with MGA personnel. (AAC ¶ 52.)

6         2.    **Canada**

7         Jane Brisbois was the Director of Sales for the Girls Division in Canada.

8    (AAC ¶ 71.)  When she was hired in 1999, she agreed to preserve and not disclose

9    Mattel's proprietary information. (AAC ¶ 71.)   While still employed by Mattel,

10   Brisbois spoke with Larian on September 22, 2005. (AAC ¶ 74.)  That same day,

11   Brisbois copied approximately 45 Mattel documents containing Mattel trade secret

12   information into a USB flash drive that she took from the Mattel Canada office.

13   (AAC ¶ 74.)  The files taken by Brisbois included documents regarding Mattel sales,

14   advertising strategies, market analyses, product launch dates, and profit margins in

15   Canada, Mexico, and the United States. (AAC ¶ 74.)  Four days later, she resigned

16   from Mattel. (AAC ¶ 74.)

17        When Mattel learned of Brisbois' misappropriation of Mattel documents, it

18   notified Canadian law enforcement officials, who were able to recover the flash

19   drive and the documents from Brisbois. (AAC ¶ 75.)

20        3.    **United States**

21        Ron Brawer was Mattel's Senior Vice President and General Manager.

22   (AAC ¶ 55.)  On September 17, 2004, Brawer informed Mattel that he was leaving

23   Mattel to work for MGA. (AAC ¶ 63.)  During Brawer's exit interview, he falsely

24   represented that he had returned all proprietary information to Mattel; specifically,

25   Brawer took the information in his contacts file which included contact information

26   for Mattel customers and Mattel employees. (AAC ¶ 68.)  Brawer has since used

27   the contact information to induce certain Mattel employees to join MGA and

28   misappropriate Mattel trade secrets. (AAC ¶ 69.)

5

EXHIBIT _____ 8

PAGE _____ 96

1    MGA has also allegedly hired at least 25 other Mattel employees, some of

2  whom have provided MGA with Mattel's confidential information. (AAC ¶ 77.)

3  **D.    Larian's Communications Regarding Mattel's New Product Line**

4        On May 12, 2006, Larian sent an email message to an email distribution list

5  that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING

6  BLING") which Mattel had not yet made public. (AAC ¶ 79.) The distribution of the

7  email included members of the media and many of Mattel's most significant

8  customers. (AAC ¶ 78.) Soon after sending the email, Larian began calling these

9  significant customers and making false representations about the product;

10 specifically, Larian told each that it was the only retailer to purchase the product

11 and that Mattel would not be supporting the product with television advertising.

12 (AAC ¶ 80.)

13 **E.    Exhibit C**

14       In Exhibit C to the AAC, Mattel references a number of communications,

15 numbering well over one hundred, that it contends constitutes predicate acts of mail

16 fraud or wire fraud. Exhibit C does not describe the contents of those

17 communications.

18                    **II. Counterclaims Asserted**

19       Based on these allegations, Mattel asserts the following counterclaims:

20 (1) Copyright Infringement, including willful, vicarious, and contributory

21 infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant;

22 (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as

23 authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate

24 acts of, *inter alia*, mail fraud, wire fraud, and criminal copyright infringement; (3) a

25 violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted

26 against all defendants; (4) state-law misappropriation of trade secrets against MGA,

27 MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant

28 only and based on certain employment agreements between Bryant and Mattel;

6

EXHIBIT _____ 8

PAGE _____ 97

1   (6) intentional interference with contract, asserted against MGA and Larian and

2   based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3   against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4   asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5   against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6   asserted against MGA and Larian; (11) conversion, asserted against all counter-

7   defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8   Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9   declaratory relief.

10          **III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim**

11          The parties have moved to dismiss a number of Mattel's counterclaims on

12   various grounds.  The Court addresses each claim in turn, considering at all times

13   the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14   A.     **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

15          In lieu of an answer, a party may, as the counter-defendants have here, file a

16   motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17   motion may be made where the pleader has "fail[ed] to state a claim upon which

18   relief can be granted." Id. In deciding a Rule 12(b)(6) motion, the Court must also

19   consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20   plain statement of the claim showing that the pleader is entitled to relief" or, when

21   the claim at issue avers fraud or mistake, the motion must be considered in

22   conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23   with particularity. See 5A Charles A. Wright & Arthur Miller, Federal Practice and

24   Procedure, §1356 (1990); James Wm. Moore, Moore's Federal Practice, Vol. 2

25   § 12.34[1][c].

26          In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27   burden of persuading the Court that the complaint has failed to state a claim upon

28   which relief can be granted. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

EXHIBIT _____ 8

PAGE _____ 98

1  1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991). In considering the motion,
2  "courts must consider the complaint in its entirety," and read it in the light most
3  favorable to the plaintiff, accepting as true all factual allegations in the complaint, as
4  well as reasonable inferences to be drawn therefrom. Tellabs, Inc. v. Makor Issues
5  & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007);
6  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not
7  accept any unwarranted deductions of fact, or conclusory legal statements cast in
8  the form of factual allegations. See Western Mining Council v. Watt, 643 F.2d 618,
9  624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).
10       Generally, a court cannot consider evidence in deciding a Rule 12(b)(6)
11  motion; however, a court may consider exhibits attached to the complaint as well as
12  documents that are not physically attached to the complaint but "whose contents
13  are alleged in [the] complaint and whose authenticity no party questions." Branch v.
14  Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).
15  Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are
16  also properly considered. Mir v. Little Company of Mary Hospital, 844 F.2d 646,
17  649 (9th Cir. 1988).
18  **B.    RICO Claims**
19       The counter-defendants devote most of their motions to the sufficiency of the
20  allegations regarding Mattel's RICO claims. The Court's analysis begins, as it must
21  when considering a federal statute, with the language of that statute. The
22  substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):
23           It shall be unlawful for any person employed by or associated
24       with any enterprise engaged in, or the activities of which affect,
25       interstate or foreign commerce, to conduct or participate, directly or
26       indirectly, in the conduct of such enterprise's affairs through a pattern
27       of racketeering activity or collection of unlawful debt.
28  Id. Conspiracies to violate this substantive prohibition are themselves prohibited by

8

EXHIBIT _____ 8

PAGE _____ 99

1   § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to

2   violate any of the provisions of subsection (a), (b), or (c) of this section." Id. Many

3   of these terms are defined by the statutory language, including "racketeering

4   activity," "enterprise," and "pattern of racketeering activity":

5          (1) "racketeering activity" means . . . (B) any act which is

6          indictable under any of the following provisions of title 18, United

7          States Code: . . . section 1341 (relating to mail fraud), section 1343

8          (relating to wire fraud), . . . section 1512 (relating to tampering with a

9          witness, victim, or an informant), . . . section 1952 (relating to

10         [interstate and foreign travel or transportation in aid of racketeering

11         enterprises]), [and] section 2319 (relating to criminal infringement of a

12         copyright)[.]

13                        . . . .

14         (4) "enterprise" includes any individual, partnership,

15         corporation, association, or other legal entity, and any union or group

16         of individuals associated in fact although not a legal entity;

17         (5) "pattern of racketeering activity" requires at least two acts of

18         racketeering activity, one of which occurred after the effective date of

19         this chapter and the last of which occurred within ten years (excluding

20         any period of imprisonment) after the commission of a prior act of

21         racketeering activity[.]

22   18 U.S.C. § 1961.

23         In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the

24   Court measures the sufficiency of alleged predicate acts of wire fraud and mail

25   fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court

26   measures the sufficiency of all other predicate acts by the more lenient standard set

27   forth in Rule 8(a). Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or

28   mistake, the circumstances constituting fraud or mistake shall be stated with

9

EXHIBIT _____ 8

PAGE _____ 100

1  particularity. Malice, intent, knowledge, and other condition of mind of a person

2  may be averred generally.") with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

3  claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

4  showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

5  v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

6  9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

7  repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

8  predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

9         In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

10  (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

11  injury to [its] business or property." Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir.

12  2001) (internal quotation marks and citation omitted). Here, counter-defendants'

13  motions challenge the first, second, fourth, and fifth elements.

14         1.    **"Conduct or Participate"**

15         Bryant contends that his role in any alleged scheme or enterprise is too

16  tenuous to constitute the "conduct" necessary to impose RICO liability. In order to

17  have RICO liability imposed upon him, a defendant must "conduct or participate,

18  directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

19  racketeering activity . . . ." 18 U.S.C. § 1962(c). The United States Supreme Court

20  has elaborated on this statutory language in Reves v. Ernst & Young, 507 U.S. 170,

21  179 (1993), wherein it noted:

22         [T]he word "participate" makes clear that RICO liability is not limited to

23         those with primary responsibility for the enterprise's affairs, just as the

24         phrase "directly or indirectly" makes clear that RICO liability is not

25         limited to those with a formal position in the enterprise, but some part

26         in directing the enterprise's affairs is required.

27  Id. Here, Mattel has alleged that Bryant secretly developed Bratz while employed

28  by Mattel and using Mattel's resources and employees, that he concealed that fact

EXHIBIT            8

PAGE            101

1    when he had a duty to disclose it, and that he did these things in order to facilitate

2    the development of the Bratz concept by Mattel's direct competitor, in violation of,

3    *inter alia*, criminal copyright law.  These allegations, if proven to be true, are

4    sufficient to impose RICO liability on Bryant.

5          2.    **Enterprise**

6          Bryant's motion challenges the sufficiency of the allegations regarding a

7    RICO enterprise.  That enterprise is alleged to be an "association-in-fact" enterprise

8    comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and

9    others.  (AAC ¶ 89.)  Mattel alleges that counter-defendants participated in or

10   conducted the affairs of the association-in-fact enterprise through a pattern of

11   racketeering activities, including, as detailed in the AAC, predicate acts of mail

12   fraud, wire fraud, evidence tampering, interstate and foreign travel to aid

13   racketeering activities, and criminal copyright infringement.  (AAC ¶ 90.)  The

14   counter-defendants' goal is alleged to have been to "execut[e] or attempt to

15   execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or

16   otherwise confidential and proprietary information . . . ."  (AAC ¶ 90.)

17         A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive

18   analysis of the sufficiency of allegations regarding a RICO enterprise necessary to

19   state a claim.  See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th

20   Cir. 2007) (designated for publication).  That decision provides the blueprint for the

21   Court's present analysis.

22         Odom involved an alleged scheme involving consumers who purchased

23   computers from Best Buy retail stores.  Id. at 543.  The computers would include a

24   Microsoft compact disc that the cashier would scan; the consumer's credit card was

25   also scanned for purchase.  Id.  The credit card information was transmitted to

26   Microsoft, and Microsoft would, at some point, begin making unauthorized charges

27   to the credit card used to purchase the computer, ostensibly for Microsoft's

28   provision of internet services.  Id.  Odom brought substantive RICO and RICO

11          EXHIBIT _____ 8

            PAGE _____ 102

1   conspiracy claims based on these allegations.  Id. at 544.

2       The Ninth Circuit first noted the evidenced judicial resistance to RICO in the

3   lower courts, contrasted with the Supreme Court's four reversals of such narrow

4   readings of RICO.  Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576

5   (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate

6   businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481

7   (1985) (rejecting notion that RICO could be used to impose civil liability only where

8   the defendant had been criminally convicted and that such liability was limited to a

9   narrow measure of damages); National Organization for Women v. Scheidler, 510

10  U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when

11  the acts of a RICO enterprise had an economic motive); and Cedric Kushner

12  Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no

13  RICO claim was stated where president and sole shareholder of a corporation was

14  alleged to have associated with his wholly owned corporation as a RICO

15  "enterprise," and relying on fact that person and corporation were separate legal

16  entities).  In Odom, the Ninth Circuit understandably viewed these four holdings as

17  a "general instruction that we should not read the statutory terms of RICO

18  narrowly."  Odom, 486 F.3d at 547 (internal citation omitted).

19      In Odom, the Ninth Circuit clarified -- and relaxed -- the standard for pleading

20  and proving an "associated-in-fact" enterprise such as the one alleged here:

21          The definition of "enterprise" in the text of RICO is fairly

22      straightforward.  In its entirety, the definition is as follows: "'enterprise'

23      includes any individual, partnership, corporation, association, or other

24      legal entity, and any union or group of individuals associated in fact

25      although not a legal entity." 18 U.S.C. § 1961(4).  As is evident from

26      the text, this definition is not very demanding.  A single "individual" is

27      an enterprise under RICO.  Similarly, a single "partnership," a single

28      "corporation," a single "association," and a single "other legal entity"

EXHIBIT        8

PAGE        103

1    are all enterprises. At issue in this case is the last kind of enterprise
2    listed in the definition -- a "group of individuals associated in fact." It is
3    undisputed that a corporation can be an "individual" for purposes of
4    an associated-in-fact enterprise.
5    Id. at 548.
6        The Ninth Circuit acknowledged that "enterprise" must be something greater
7    than merely a pattern of racketeering activity; however, the court rejected the notion
8    that an enterprise must have a particular ascertainable organizational structure. Id.
9    at 551 ("We take this opportunity to join the circuits that hold that an
10   associated-in-fact enterprise under RICO does not require any particular
11   organizational structure, separate or otherwise.") (citations omitted). A party need
12   only set forth factual allegations of "a group of persons associated together for a
13   common purpose of engaging in a course of conduct," "evidence of an ongoing
14   organization, formal or informal," and "evidence that the various associates function
15   as a continuing unit." Id. at 552 (internal citations and quotation marks omitted).
16       As for the common purpose, it was met in Odom, where the plaintiff had
17   alleged the following:
18           [D]efendants had the common purpose of increasing the
19       number of people using Microsoft's Internet Service, and doing so by
20       fraudulent means. Best Buy furthered this common purpose by
21       distributing Microsoft Internet Trial CD's and conveying its customers'
22       debit and credit card information to Microsoft. Microsoft then used the
23       information to activate customer accounts.
24   Id. Here, Mattel has alleged the common purpose of attempting to defraud Mattel
25   and steal its trade secrets. Mattel's many factual allegations, detailed herein,
26   support this alleged common purpose.
27       As for the "ongoing organization" requirement, the Ninth Circuit in Odom
28   noted that the plaintiffs had met that element, which was met where the

13

EXHIBIT _____ 8

PAGE _____ 104

1   organization was alleged to be "a vehicle for the commission of two or more

2   predicate crimes." Id. (internal quotation marks and citation omitted).  The Ninth

3   Circuit noted the following factual allegations:

4        Microsoft and Best Buy established mechanisms for

5        transferring plaintiffs' personal and financial information from Best Buy

6        to Microsoft. That information then allowed Microsoft to activate

7        plaintiffs' Internet accounts without their knowledge or permission.

8        These mechanisms enabled Microsoft to bill plaintiffs improperly for

9        MSN services in 2001, 2002 and 2003.

10  Id.  Here, plaintiffs have alleged that the counter-defendants coordinated their many

11  efforts at depriving Mattel of its proprietary information and its intellectual property.

12  The allegations regarding common use of the "plot04@aol.com" email address to

13  transfer confidential Mattel information to MGA support the finding of an "ongoing

14  organization."  So, too, do the allegations regarding the repeated communications

15  between Bryant and MGA.

16       The "continuing unit" requirement does not appear to the Court to mandate

17  that the organization continues to this day;[2] rather, the requirement is related to the

18  notion that RICO was not meant to address discrete instances of fraud or criminal

19  conduct.  "[T]he continuity requirement focuses on whether the associates'

20  behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation

21  marks and citation omitted).  Related to that concern, it is also clear to the Court

22  that this requirement is related to the duration of the racketeering activities. See id.

23  ("An almost two-year time span is far more than adequate to establish that Best

24  Buy and Microsoft functioned as a continuing unit.").  Here, the allegations do not

25  reveal that the conduct complained of was mere isolated activity; rather, Mattel sets

26  forth allegations of racketeering activity that spanned a period of three years. The

27

28       [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
of its continued use of Mattel's information and property.

EXHIBIT _____ 8

PAGE _____ 105

1   allegations describe a scheme consisting of corporate warfare between competitors

2   that has been waged over a long period of time and waged on a number of fronts,

3   both foreign and domestic. The "continuing unit" requirement is therefore satisfied.

4            Accordingly, the Court finds that Mattel has sufficiently pleaded the existence

5   of a RICO enterprise.

6            3.       **Predicate Acts of Racketeering Activity**

7                     a.       **Mail Fraud and Wire Fraud**

8            The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9                     Whoever, having devised or intending to devise any scheme or

10           artifice to defraud, . . . for the purpose of executing such scheme or

11           artifice or attempting so to do, places in any post office or authorized

12           depository for mail matter, any matter or thing whatever to be sent or

13           delivered by the Postal Service, or deposits or causes to be deposited

14           any matter or thing whatever to be sent or delivered by any private or

15           commercial interstate carrier, or takes or receives therefrom, any such

16           matter or thing, . . . shall be fined under this title or imprisoned not

17           more than 20 years, or both.

18  Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a

19  scheme to defraud; (2) using or causing the use of the mails to further the

20  fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321

21  F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22           The criminal prohibition against wire fraud is similar:

23                    Whoever, having devised or intending to devise any scheme or

24           artifice to defraud, . . . transmits or causes to be transmitted by means

25           of wire, radio, or television communication in interstate or foreign

26           commerce, any writings, signs, signals, pictures, or sounds for the

27           purpose of executing such scheme or artifice, shall be fined under this

28           title or imprisoned not more than 20 years, or both.

15

EXHIBIT _____ 8

PAGE _____ 106

1  18 U.S.C. § 1343.  The Ninth Circuit has described the elements of wire fraud as

2  "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and

3  (3) a specific intent to deceive or defraud." United States v. Shipsey, 363 F.3d 962,

4  971 (9th Cir. 2004) (citations omitted).

5         As all parties acknowledge, the predicate acts of mail fraud and wire fraud

6  must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b).  Specifically,

7  Mattel must detail "the time, place, and manner of each act of fraud, [and it must

8  set forth] the role of each defendant in each scheme." Lancaster Community

9  Hosp., 940 F.2d at 405.  This standard applies in RICO actions alleging predicate

10  acts of mail fraud. Id.

11        Here, Mattel sets forth allegations of predicate acts of mail fraud and wire

12  fraud referenced in Exhibit C to the AAC.  However, these alleged predicate acts

13  are insufficiently pleaded because they fail to adequately describe the contents of

14  the communications; specifically, they fail to detail time, place and manner of "each

15  act of fraud."  The substantive RICO claim is therefore dismissed to the extent it is

16  premised on those communications.  Mattel is **GRANTED** leave to amend the RICO

17  claim based on this insufficiency; Mattel must attach to the Second Amended

18  Answer and Counterclaims ("SAAC") copies of the referenced communications.

19  The contents of packages referenced in Exhibit C must be described in order to

20  meet the Rule 9(b) requirements.

21        At oral argument, counsel for MGA argued that the substance of many, if not

22  all of the communications, cannot be read to further a scheme to defraud.  That

23  argument will be considered another day, after Mattel files the SAAC.  However, the

24  Court takes the opportunity today to note that, given the broad scope of the alleged

25  scheme to defraud, including the criminal copyright infringement allegations,

26  otherwise innocuous and routine communications regarding day-to-day operations

27  and product development may be found to be in furtherance of that scheme. See

28  Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL

16

EXHIBIT _____ 8

PAGE _____ /07

1  1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion,

2  "courts must consider the complaint in its entirety").

3      Counter-defendants also argue that Mattel failed to plead each defendant's

4  role in furtherance of the scheme to defraud. As interpreted by the Ninth Circuit,

5  the Rule 9(b) standard clearly requires that a plaintiff so plead. Lancaster

6  Community Hosp., 940 F.2d at 405. However, the Court will view the

7  communications alleged to constitute mail and wire fraud in conjunction with all the

8  allegations set forth regarding the alleged scheme in the counterclaims. See Flood

9  v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24,

10  2004) (applying the principle that reasonable inferences in favor of a plaintiff must

11  be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough

12  Plaintiffs' Complaint does not expressly identify how each particular mail or wire

13  communication furthered the scheme, the Complaint clearly alleges facts which

14  create an unquestionable inference that the alleged communications furthered the

15  scheme.").

16      Counter-defendants also argue that, because the emails alleged to

17  constitute wire fraud were sent among individuals physically located in the same

18  state, Mattel will not be able to establish the interstate nature of the

19  communications. See 18 U.S.C. § 1343 (setting forth the requirement that

20  communications be transmitted "in interstate or foreign commerce"). Mattel has

21  alleged that the communications were transmitted in interstate or foreign

22  commerce. (AAC ¶ 93(b).) This suffices at the pleadings stage; however,

23  eventually Mattel will be called upon to support these allegations with evidence.

24  See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly

25  holding that wire fraud must be supported, at the summary judgment stage, by

26  evidence of interstate wire fraud).

27      The Court dismisses the RICO claim to the extent it is based on the alleged

28  predicate acts of mail fraud and wire fraud because those acts are not pleaded with

17

EXHIBIT          8
PAGE          108

1    particularity as required by Rule 9(b).  Mattel is **GRANTED** ten days' leave to file a

2    SAAC that incorporates and attaches and/or describes the communications and the

3    contents of packages referenced in Exhibit C.

4              b.    **Evidence Tampering**

5              Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6    remaining predicate acts are governed by the more lenient pleading standards of

7    Rule 8(a).  See Slade v. Gates, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8    Cal., Oct. 11, 2002).  The Court considers the sufficiency of those remaining

9    allegations pursuant to this Rule.

10             The criminal prohibition against tampering with evidence is found at 18

11   U.S.C. § 1512:

12             Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13             record, document, or other object, or attempts to do so, with the intent

14             to impair the object's integrity or availability for use in an official

15             proceeding . . . shall be fined under this title or imprisoned not more

16             than 20 years, or both.

17   Id.  Mattel's opposition makes clear that its evidence tampering allegations are

18   based upon two categories of documents:  The first category of documents,

19   perhaps composed of only one multi-page document, involves the alleged alteration

20   of Bryant's contract with MGA to remove a fax header showing that the date of its

21   execution, which predated the effective date of Bryant's resignation from Mattel.[3]

22   The second category of documents are those filed with the United States Copyright

23   Office, which are alleged to omit the disclosure that certain Bratz drawings were

24   "works for hire," and which are alleged to have had alterations made to certain

25

26        [3]  The AAC merely alleges that counter-defendants Bryant and MGA

27   "tamper[ed] with and defac[ed] documents which showed that . . . Bryant was a
     Mattel employee while he was working for and with MGA . . . ."  (AAC ¶ 35.)

28   However, it is clear from other filings by the parties that, at a minimum, this
     allegation refers to MGA's contract with Bryant.

                              18        EXHIBIT ____ 8

                                        PAGE ____ 109

1   relevant dates.  (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2       As to the first category, a predicate act is sufficiently alleged.  Mattel has

3   alleged that a document was altered in a manner designed to conceal critical

4   evidence, highly relevant to the present official proceeding, regarding the timing of

5   the execution of the document.

6       Conversely, it is unclear whether Mattel has alleged a predicate act with

7   respect to the second category of documents.  The issue of whether submitting

8   fraudulent registrations and "altering relevant dates" on documents submitted to the

9   United States Copyright Office has not been fully briefed by the parties; the issue

10  was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11  reserves this issue for a later date, and anticipates that it will be addressed by the

12  parties in a motion to dismiss the SAAC.

13          c.      **Travel Act Violation**

14      Federal criminal law prohibits interstate or foreign travel to aid in

15  racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16  violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17  prohibition states:

18          Whoever travels in interstate or foreign commerce or uses the

19          mail or any facility in interstate or foreign commerce, with intent to . . .

20          promote, manage, establish, carry on, or facilitate the promotion,

21          management, establishment, or carrying on, of any unlawful activity,

22          and thereafter performs or attempts to perform . . . [such an act,] shall

23          be fined under this title, imprisoned not more than 5 years, or

24          both . . . .

25                              . . . .

26          As used in this section . . . "unlawful activity" means . . .

27  _____

28      [4] The Court does not view this failure as the fault of any party.

19

EXHIBIT _____ 8

PAGE _____ 110

1  extortion, bribery, or arson in violation of the laws of the State in which
2  committed or of the United States . . . .
3  Id. Mattel alleges that Bryant and others traveled in interstate commerce to commit
4  commercial bribery in violation of California's prohibition against commercial
5  bribery, which in relevant part provides:
6         (a) Any employee who solicits, accepts, or agrees to accept
7  money or any thing of value from a person other than his or her
8  employer, other than in trust for the employer, corruptly and without
9  the knowledge or consent of the employer, in return for using or
10  agreeing to use his or her position for the benefit of that other person,
11  and any person who offers or gives an employee money or any thing
12  of value under those circumstances, is guilty of commercial bribery.
13  Cal. Penal Code § 641.3.  Several allegations support a violation of § 641.3(a),
14  which in turn supports a violation of 18 U.S.C. § 1952.  Mattel has alleged that
15  Bryant, while still employed by Mattel, entered into a contract with MGA to provide
16  design services to MGA on a "top priority" basis, and used Mattel property,
17  employees, and resources to develop and design the Bratz concept.
18         Counter-defendants argue that the requirement under California's
19  commercial bribery statute that a violator act "corruptly" is not met because Bryant
20  did not intend to injure Mattel.  Such an intent is not required; rather it is sufficient
21  that Bryant is alleged to have intended to defraud Mattel.  See Cal. Penal Code
22  § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure or defraud")
23  (emphasis added).
24         d.    **Criminal Copyright Violations**
25         The parties dispute the relevant pleading standard that governs the
26  allegations which underlie the criminal copyright violation claim.  Counter-
27  defendants would have the Court apply the more exacting Rule 9(b) standards
28  because, in their assessment, the claim "sounds in fraud."  Mattel, however,

20        EXHIBIT       8
          PAGE        111

1    contends that there is no reason to depart from the more lenient Rule 8(a) standard

2    generally applied to copyright claims because, in its assessment, the claims "sound

3    in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

4         The recent Ninth Circuit case on this issue, cited by both parties, stands for

5    the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud

6    must be pleaded with particularity, regardless of whether fraud is an essential

7    element of the claim to which the averment relates. See Vess v. Ciba-Geigy Corp.

8    USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all *averments*

9    of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

10   with particularity.") (emphasis added).

11        Considering Rules 8(a), 9(b), and the teachings of Vess, a spectrum

12   emerges. At the left end of this spectrum are claims that do not involve any

13   allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain

14   statement" standard. At the opposite end of the spectrum are claims based solely

15   on fraud, and the facts underlying such a claim must be alleged with particularity

16   pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a

17   category of claims discussed in Vess:

18        In cases where fraud is not a necessary element of a claim, a

19        plaintiff may choose nonetheless to allege in the complaint that the

20        defendant has engaged in *fraudulent conduct. In some cases, the*

21        *plaintiff may allege a unified course of fraudulent conduct and rely*

22        *entirely on that course of conduct as the basis of a claim.* In that

23        event, the claim is said to be "grounded in fraud" or to "sound in

24        fraud," and the pleading of that claim as a whole must satisfy the

25        particularity requirement of Rule 9(b).

26   Vess, 317 F.3d at 1103-04 (internal citations omitted). It is into this category MGA

27   contends that the allegations of criminal copyright claims fit, and MGA therefore

28   contends that all allegations regarding the criminal copyright claims must be

21

EXHIBIT _____ 8

PAGE _____ 112

1   pleaded with particularity.

2        However, Vess sets up another category, lying closer to the Rule 8(a) part of

3   the spectrum (but nevertheless requiring pleading with some particularity):

4            In other cases, however, a plaintiff may choose not to allege a

5        unified course of fraudulent conduct in support of a claim, but rather

6        to allege some fraudulent and some non-fraudulent conduct.  In such

7        cases, only the allegations of fraud are subject to Rule 9(b)'s

8        heightened pleading requirements. . . . The rule does not require that

9        allegations supporting a claim be stated with particularity when those

10       allegations describe non-fraudulent conduct.

11           [In other words,] in a case where fraud is not an essential

12       element of a claim, only allegations ("averments") of fraudulent

13       conduct must satisfy the heightened pleading requirements of Rule

14       9(b).  Allegations of non-fraudulent conduct need satisfy only the

15       ordinary notice pleading standards of Rule 8(a).

16  Id. at 1104-05.

17       Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides: "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law."  18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ."  17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language:  "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

22

EXHIBIT        8

PAGE        113

1  (2) done wilfully (3) for purposes of commercial advantage or private financial gain."

2  United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

3         Clearly, fraud is not an essential element of a criminal copyright claim, taking

4  it out of the category at the far end of the spectrum described above, and

5  necessitating an inquiry into whether Mattel has chosen to incorporate a fraud

6  element into its criminal copyright claim. The AAC at ¶ 93(e) reveals that the

7  criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's

8  copyrights, including with respect to documents containing Mattel trade secret and

9  confidential information . . . ." The Opposition fills in more details regarding this

10  claim, noting that the criminal copyright claim is premised upon the Bratz-related

11  works, Bratz-derivative works, and works contained within Mattel's allegedly

12  purloined trade secrets and confidential information. (Mattel Opposition to MGA's

13  Motion at 5).

14         These allegations do not "allege a unified course of fraudulent conduct and

15  rely entirely on that course of conduct as the basis of a claim" such that the claim

16  could be said to "sound in fraud" and therefore require pleading with particularity as

17  to the entire claim. The allegations establish that much of the conduct complained

18  of consists of simple copying of the Bratz-related works or the creation of Bratz-

19  derivative works. Such allegations are unrelated to allegations of fraud. Therefore,

20  if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it

21  falls in the category described by Vess as those claims in which a claimant chooses

22  to "allege some fraudulent and some non-fraudulent conduct." Id. at 1104.

23         When one considers that the alleged predicate acts of criminal copyright

24  infringement are but a small part of a larger, and singular, claim brought pursuant to

25  RICO, it is evident that the RICO claim falls neatly into the category of claims that

26  are based partly on fraudulent and partly on non-fraudulent conduct. The Court

27  has already found that certain fraudulent conduct -- that supporting the alleged

28  predicate acts of mail fraud and wire fraud -- is insufficiently pleaded. The current

23          EXHIBIT _____ 8

PAGE _____ 114

1   focus, however, is whether the allegations supporting the predicate acts of criminal

2   copyright infringement involve fraudulent conduct.

3       Here, there are two types of works allegedly infringed.  The first type is the

4   Bratz-related and Bratz-derivative works.  The second type is Mattel's other trade

5   secrets and confidential information.  Both types are alleged -- with particularity -- to

6   have been procured by MGA through fraudulent conduct, but the criminal copyright

7   infringement predicate acts do not implicate that fraudulent conduct.  Rather, they

8   implicate only questions of whether counter-defendants wilfully infringed Mattel's

9   works for commercial advantage or private financial gain.  Here, Mattel has

10  sufficiently alleged predicate acts of criminal copyright infringement by alleging that

11  MGA and other counter-defendants willfully infringed its copyrights for purposes of

12  gaining commercial advantage and private financial gain.  As Mattel correctly

13  contends, state of mind, in this instance willfulness, may be pleaded generally.  <u>See</u>

14  <u>Ferguson Beauregard/Logic Controls v. Mega systems, LLC</u>, 350 F.3d 1327, 1343

15  (Fed. Cir. 2003).

16      **4.     Injury to Business or Property**

17      "Recovery under RICO is limited to those injuries flowing from predicate

18  acts . . . ."  <u>Resolution Trust Corp. v. Keating</u>, 186 F.3d 1110, 1117 (9th Cir. 1999)

19  (citing <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 497 (1985)).  Here, Mattel

20  has alleged damages flowing from the alleged acts of racketeering activity.  (AAC

21  ¶ 96).  Damages easily flow from theft of trade secrets and confidential information

22  committed by a direct competitor and from infringement of copyrights that are

23  alleged to have been used to make millions -- if not billions -- of dollars.

24      Counter-defendants argue that Mattel lacks standing to sue on behalf of its

25  subsidiaries.  This issue arises because many of the allegations of the thefts of

26  trade secrets involve actions taken in Mexico or Canada by employees of Mattel's

27  foreign subsidiaries.  Mattel argues that it is not attempting to sue for damages

28  incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

24

EXHIBIT _____ 8

PAGE _____ 115

1  information stolen by the employees of Mattel's subsidiaries belonged not to

2  Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3  sue for damages it sustained.  Mattel may not sue for damages incurred by its

4  foreign subsidiaries.

5              5.    **Ruling on Motions to Dismiss**

6          The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7  herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8  alleged, and Mattel is **GRANTED** leave to amend the AAC.

9  **C.    Trade Secrets**

10         MGA contends that Mattel has failed to plead its trade secrets with sufficient

11 particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12 provides:

13             In any action alleging the misappropriation of a trade secret

14             under the Uniform Trade Secrets Act . . . , before commencing

15             discovery relating to the trade secret, the party alleging the

16             misappropriation shall identify the trade secret with reasonable

17             particularity subject to any orders that may be appropriate under

18             Section 3426.5 of the Civil Code [involving in camera reviews and

19             sealing of court documents].

20 Id.  Based on the unambiguous language of the statute, the Court agrees with

21 Mattel's characterization of this requirement as one related to discovery rather than

22 related to pleading.

23         The Court also agrees that, by identifying documents in discovery by Bates-

24 stamp number, Mattel has complied with the dictates of § 2019.210.  See

25 Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26 (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27 means that the plaintiff must make some showing that is reasonable, i.e., fair,

28 proper, just and rational[,] . . . under all of the circumstances to identify its alleged

EXHIBIT          8

PAGE          116

1  trade secret in a manner that will allow the trial court to control the scope of

2  subsequent discovery, protect all parties' proprietary information, and allow them a

3  fair opportunity to prepare and present their best case or defense at a trial on the

4  merits."). MGA's complaints regarding the volume of documents so identified, and

5  their skepticism of Mattel appropriately attaching such an identification to many of

6  those identified documents, are not properly addressed at this stage of the

7  proceedings.

8       The motion to dismiss the trade secrets claim on this basis is therefore

9  **DENIED**.

10  **D.    Duplicative State-Law Claims**

11       Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED**.

12  The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13  with the claims asserted against him in the 04-9059 case, however, the factual

14  allegations underlying the claims asserted in the AAC are broader in scope than

15  those underlying the claims asserted in the 04-9059 case.

16          **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17       MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18  As set forth below, the Court concludes that it may, consistent with California law

19  and the federal Due Process Clause, exercise specific personal jurisdiction over

20  this admittedly foreign corporation.

21  **A.    The Constitutional Exercise of Personal Jurisdiction**

22       Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23  party asserting the claim bears the burden of demonstrating that jurisdiction is

24  appropriate. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

25  2004). However, in opposing a motion to dismiss for lack of personal jurisdiction,

26  the party asserting the claim need only make a *prima facie* showing of jurisdictional

27  facts. Id. Disputed facts are to be resolved in favor of the exercise of personal

28  jurisdiction. Id.

26

EXHIBIT _____ 8

PAGE _____ 117

1   Because there is no applicable federal statute governing personal

2   jurisdiction, the Court applies the law of the state in which the district court sits. Id.

3   (citations omitted). "Because California's long-arm jurisdictional statute is

4   coextensive with federal due process requirements, the jurisdictional analyses

5   under state law and federal due process are the same." Id. at 800-01 (citations

6   omitted). In order for a court's exercise of personal jurisdiction over a nonresident

7   defendant to be constitutionally permissible, the defendant must have "minimum

8   contacts" with the forum state "such that the exercise of jurisdiction does not offend

9   traditional notions of fair play and substantial justice." Id. at 801 (internal quotation

10  marks and citation omitted).

11         Personal jurisdiction may be either general or specific.  For general personal

12  jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in

13  continuous and systematic general business contacts . . . that approximate a

14  physical presence in the forum state." Id. (internal quotation marks and citations

15  omitted).

16         To determine whether it has specific personal jurisdiction over a nonresident

17  defendant, the Court employs a three-part test:

18         (1) The non-resident defendant must purposefully direct his

19         activities or consummate some transaction with the forum or resident

20         thereof; or perform some act by which he purposefully avails himself

21         of the privilege of conducting activities in the forum, thereby invoking

22         the benefits and protections of its laws; (2) the claim must be one

23         which arises out of or relates to the defendant's forum-related

24         activities; and (3) the exercise of jurisdiction must comport with fair

25         play and substantial justice, i.e. it must be reasonable.

26  Id. at 802.

27         The party asserting the claim bears the burden of establishing the first two

28  parts of the test.  Id.  If that party establishes the first two parts, then the burden

27

EXHIBIT _____ 8

PAGE _____ 118

1  shifts to the party resisting the Court's exercise of personal jurisdiction "to present a
2  **compelling case** that the exercise of jurisdiction would not be reasonable." Id.
3  (emphasis added).
4          The first part of the test is satisfied by either "purposeful availment" or
5  "purposeful direction." Id. Purposeful availment is shown when a defendant avails
6  itself of the privilege of doing business in a forum state, usually met when the
7  defendant took some action in the forum, such as executing or performing a
8  contract there. Id. By virtue of such actions, a defendant "purposefully avails itself
9  of the privilege of conducting activities within the forum State, thus invoking the
10  benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).
11  When taking advantage of these "benefits and protections," a defendant must also
12  "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz,
13  471 U.S. 462, 476 (1985).
14          By contrast, purposeful direction, involves actions by the defendant outside
15  of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at
16  803. The purposeful direction analysis is derived from a three-part "effects test"
17  that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783
18  (1984). Pursuant to this analysis, the defendant must "have (1) committed an
19  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the
20  defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger,
21  374 F.3d at 803. All three parts of the test must be satisfied. The second part of
22  the effects test is described by the Ninth Circuit as the "express aiming"
23  requirement, and requires that the counter-defendants "expressly aimed" its
24  intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically,
25  "express aiming" is found where the defendant is alleged to have engaged in
26  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident
27  of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,
28

28

EXHIBIT ___ 8
PAGE ___ 119

1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

EXHIBIT _____ 8

PAGE _____ 120

Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation omitted). No factor is dispositive and the Court must balance all seven. Id. (internal citation omitted).

**B.    MGA Mexico's Contacts with the Forum State**

The AAC alleges that Issac Larian and other MGA officers, while in California, executed a plot to target three high-level employees of Mattel Mexico, and entice them to steal Mattel's trade secrets. In written offers of employment to these three individuals, Issac Larian held himself out to be the CEO of MGA Mexico. This plot was facilitated by a number of cross-border communications among the participants as well as travel to the United States by the targeted employees.

**C.    The Court May Exercise Personal Jurisdiction over MGA Mexico**

The AAC repeatedly alleges that Larian, who held himself out to be MGA Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican registration document actively sought to induce others to access and steal Mattel's trade secrets while located in the California. See Velázquez Decl. Exs. A-C; Salem Decl. Ex. B. This constitutes purposeful availment.

To the extent that any of the actions taken in Mexico by the three Mexican employees may be imputed to Mattel Mexico, there is also purposeful direction. The alleged actions taken on behalf of MGA Mexico were specifically engineered to result in the alleged illegal acquisition of trade secrets belonging to Mattel, a California resident.[6]

The relatedness requirement is also clearly met. The contacts with California involve actions allegedly taken in order to further the illegal acquisition of Mattel's trade secrets, leading to the present claims against MGA Mexico for misappropriation of trade secrets and the related RICO claims.

---

[6] The AAC alleges the theft of trade secrets belonging not only to Mattel's Mexican subsidiary, but also to Mattel itself, which is a California corporation.

30       EXHIBIT        8

PAGE        121

1    The burden, therefore, is on MGA Mexico to show that the exercise of

2    jurisdiction is unreasonable.[7] As noted previously, the Court considers seven

3    factors. The first factor the Court considers is the defendant's purposeful

4    interjection. For the reasons the Court has found purposeful availment and

5    purposeful direction, this factor favors the exercise of personal jurisdiction.

6        MGA Mexico argues, without elaboration, that the burden of defending itself

7    in California is "significant." However, the assumption underlying this argument is

8    that the present action is more properly litigated by MGA's and Mattel's Mexican

9    subsidiaries. This assumption misses the point of Mattel's claim against MGA

10   Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged

11   misappropriation of its own trade secrets because the alleged misappropriation was

12   not limited to trade secrets belonging to its Mexican subsidiary. The argument

13   based on this faulty assumption is therefore unconvincing. In order to show

14   unreasonableness, the burden on the defendant must be great. See Panavision,

15   141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the

16   assessment of reasonableness, but unless the inconvenience is so great as to

17   constitute a deprivation of due process, it will not overcome clear justifications for

18   the exercise of jurisdiction.") (internal quotation marks and citation omitted).

19       As to the third and seventh factors, regarding conflicts of law and the

20
21           [7] In its reply, MGA Mexico declares that it "made a 'compelling case' in
     support of its motion to dismiss that it would be unreasonable to force it to litigate
22   in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers
     fail to acknowledge that they bear the burden on this issue. See MGA Mexico's
23   Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy
     the third element required for specific jurisdiction -- that the exercise of jurisdiction
24   over the defendant would be reasonable."). As Mattel accurately predicted in its
     opposition papers, MGA Mexico implicitly acknowledged its burden in the reply,
25   and used the occasion to improperly present additional arguments for the first
     time. Although the Court ordinarily would not consider such arguments, it does so
26   here because it does not change the Court's ultimate conclusion. See In re Intuit
     Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court
27   does not consider arguments raised anew for the first time in a reply brief as to do
     so would unfairly deny the non-moving party an opportunity to respond.").
28

EXHIBIT            8

PAGE        122

1   existence of an alternative forum, MGA Mexico makes veiled references to the

2   criminal action in Mexico as constituting a choice of forum made by Mattel,

3   apparently implying that Mattel, having chosen to pursue criminal charges in

4   Mexico, should be precluded from invoking the power of this Court. It appears to

5   the Court that MGA Mexico has failed to fully and clearly articulate this argument

6   because it is untenable. Whether Mexican authorities pursue criminal charges

7   based on the same conduct underlying the claims in this action is irrelevant to

8   whether this Court may constitutionally exercise personal jurisdiction over MGA

9   Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

10          The fourth factor, the interest in adjudicating the dispute, weighs in favor of

11   the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in

12   convenient and effective relief.

13          MGA Mexico argues that the fifth factor weighs in its favor when the Court

14   considers that the site of injury, which it does not believe is California, is the most

15   efficient forum. However, this argument is premised on the rejected assumption

16   that the present action is more properly litigated between MGA's and Mattel's

17   Mexican subsidiaries.

18          On balance, a consideration of the reasonableness factors reveals that MGA

19   Mexico has fallen far short of establishing the "compelling case" necessary to

20   render the Court's exercise of personal jurisdiction unreasonable.

21          The Court concludes that Mattel has established the first two parts of the

22   specific personal jurisdiction test, and that MGA Mexico has failed to establish that

23   the Court's exercise of personal jurisdiction over it is otherwise unreasonable.

24   Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

### V. MGA's and Bryant's Motions Regarding
### the Discovery Master's March 7, 2007, Order

26          MGA and Bryant seek review of a decision that resolved discovery disputes

27   that arose during Bryant's deposition, and that was rendered by the Court-

28

1    appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.

2    The Court's order appointing Judge Infante provides that his orders resolving

3    discovery disputes shall be reviewed in the same manner as those made by a

4    magistrate judge of this Court.

5        Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a

6    magistrate judge on a non-dispositive manner, such as a discovery dispute, the

7    district judge may modify or set aside only those portions of the magistrate judge's

8    order that are "clearly erroneous or contrary to law." Id.

9        The "clearly erroneous" language refers to factual findings. See e.g.,

10   Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension

11   Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here,

12   there were no explicit factual findings or legal conclusions made by Judge Infante

13   regarding the relevant rulings; therefore, the Court reviews the record presented to

14   Judge Infante to determine whether his rulings are contrary to law.  See March 7,

15   2007, Order.

16       Questions that do not seek the substance of attorney-client communications

17   generally do not implicate the attorney-client privilege. United States v. Carrillo,16

18   F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege

19   where prosecutor, who asked whether a criminal defendant had consulted with his

20   attorney during a recess in order to raise an inference of attorney coaching of

21   testimony during the trial, stopped short of asking defendant the substance of

22   defendant's communications with his attorney). Therefore, questions such as the

23   one addressed by objection No. 38, asking whether Bryant talked to counsel for

24   MGA during a break from his deposition, are not subject to objection based on the

25   attorney-client privilege.  This conclusion is consistent with Judge Infante's Order.

26       Mattel's question regarding who is paying Bryant's legal fees, addressed by

27   objection No. 42, is likewise not objectionable.  MGA and Bryant argue that state

28   law applies; however, because the present consolidated actions involve both

33

EXHIBIT _____ 8

PAGE _____ 124

1   federal and state-law claims, the federal law of privilege applies. Agster v.

2   Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3   question claims and pendent state law claims present, the federal law of privilege

4   applies."). To that end, consistent with federal privilege law, fee-payment

5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6   must disclose who is paying his legal fees. See United States v. Blackman, 72 F.3d

7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8   fee arrangement between attorney and client are not protected from disclosure by

9   the attorney-client privilege."). This conclusion is also consistent with Judge

10  Infante's Order.

11          However, in this case, the joint-defense privilege protects from disclosure the

12  substance of certain statements made by Bryant and his attorneys in the presence

13  of attorneys representing MGA. "The joint defense privilege protects

14  communications between an individual and an attorney for another when the

15  communications are 'part of an on-going and joint effort to set up a common

16  defense strategy.'" United States v. Bay State Ambulance and Hosp. Rental

17  Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18  omitted). Generally, to rely on the joint-defense privilege, a party must establish

19  three elements: "(1) [T]he communications were made in the course of a joint

20  defense effort, (2) the statements were designed to further the effort, and (3) the

21  privilege has not been waived." Id.

22          The Court finds the first element was met. The Court, based on its review of

23  the record pending before Judge Infante, is satisfied that the parties had in place at

24  the time of Bryant's deposition, and have in place today, a valid joint-defense

25  agreement. The Court also finds that the second element was met. Mattel cannot

26  seriously contend that MGA's interests are not aligned with Bryant's in this action,

27  or that counsels' thorough preparation of Bryant for his deposition was not designed

28  to further the joint defense effort. Finally, as for the third element, there is no

EXHIBIT ........ 8

PAGE ........ 125

1  suggestion in the record that any party has waived the attorney-client privilege.

2  Accordingly, the Court holds that Judge Infante's rulings on Objection Nos.

3  39 and 50 are contrary to law to the extent those rulings require Bryant to divulge

4  the substance of his communications with counsel for MGA.

### VII. Conclusion

5  In the manner set forth more fully herein, the Court makes the following

6  rulings:

7     1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

8  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):

9  **GRANTED IN PART AND DENIED IN PART.**

10    2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

11 XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

12    3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

13 Counterclaims (docket # 266):  **DENIED.**

14    4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

15 (docket # 308):  **GRANTED IN PART AND DENIED IN PART.**

16    5.    Motion of Carter Bryant Objecting to Discovery Master's March 7,

17 2007, Order (docket # 306):  **GRANTED IN PART AND DENIED IN PART.**

18    Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with

19 this Order.  The Counter-defendants shall answer or otherwise respond to the

20 SAAC no later than thirty days after the filing of the SAAC.

21
22
23
24
25
26
27
28

EXHIBIT  8
PAGE  176

The Motion Re Trial Structure (docket #462) has been the subject of further briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling on that matter is **DEFERRED** pending oral argument.

DATE:  June 27, 2007

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

EXHIBIT _____ 8

PAGE _____ 127

36

# EXHIBIT 9

Case 2:04-cv-09049-SGL-RNB     Document 5273     Filed 04/27/2009     Page 1 of 25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                        Date: April 27, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==============================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

    Cindy Sasse                                    None Present
    Courtroom Deputy                               Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

None Present                             None Present

PROCEEDINGS:   **ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
               MATTER OF LAW (DOCKET #4498)**

               **ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
               #4496)**

               **ORDER AMENDING IN PART ORDER RE FINDING OF
               LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
               (DOCKET #4441);**

               **ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR REMITTITUR (DOCKET #4495, #4523)**

               **ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)**

               **ORDER FOR ACCOUNTING OF PROFITS OF
               BRATZ PRODUCTS**

               **ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED**

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                     1

EXHIBIT __9__
PAGE __128__

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER**

### I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
### (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion."  Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls.  Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights."  Motion at 4.  Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded.  Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel.  The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury.  Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged.  Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights.  This portion of Mattel's motion is therefore
**DENIED.**

EXHIBIT ___9___
PAGE ___109___

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that
sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of
independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the
trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is,
created -- by Carter Bryant, alone or jointly with others," during his employment with
Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the
Court's summary judgment order, was sufficient to place the sculpt within the
assignment clause of the Inventions Agreement which, in turn, conferred the rights to
the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought
merely as an alternative basis for the relief Mattel has been awarded, which the Court,
without deciding the merits, declines to adopt.  This portion of Mattel's motion is
therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and
MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there
was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and
later, as to *when* Bratz was created), he testified at trial that he did nothing to keep
Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the
contrary, the jury could have believed him; thus, judgment as a matter of law on this
point is not appropriate.  Credibility determinations are for the jury, and the jury could
have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba
America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for
MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found
to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as
a matter of law is not appropriate.  This portion of Mattel's motion is therefore also
**DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law
is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1] For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's
claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that
Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2] The Court herein refers to all three MGA parties collectively and individually as follows:  MGA
Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the
record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian,
MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish
them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the
MGA entities."

Initials of Deputy Clerk ___cls_____

EXHIBIT ___9___
PAGE ___130___

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty. Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages. The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue. As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims. Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits. The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3] This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is **DENIED**.

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          4

EXHIBIT __9__
PAGE __131__

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz."  To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits.  The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement.  California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls.  Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument.  The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

EXHIBIT ___9___
PAGE ___132___

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED.**

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

Initials of Deputy Clerk ___cls_____

EXHIBIT ___9___
PAGE ___1.33___

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur. Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . . But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

MINUTES FORM 90
CIVIL -- GEN                                    7

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___134___

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471
F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before
the Court was "the rare case in which it is sufficiently certain that the jury award was not
based on proper consideration of the evidence" but was instead "based on improperly
considered evidence, directly traceable to an error that was cured too little, too late").
Generally, courts are cautioned to "undertake only limited review of jury damages
awards, in order to avoid encroaching upon the jury's proper function under the
Constitution."  Memorial Coliseum at 1365.  The standard is exceptionally deferential to
the jury's findings.  If the damages award is supported by the evidence, it must be
upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the
present motion.

The MGA parties argue that Mattel had a singular theory of recovery --
disgorgement of profits -- and the amounts set forth by the jury as to each of the three
state-law claims are duplicative.  This is not a completely unappealing argument.  For
each of three state law claims -- intentional interference with contractual relations, aiding
and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty -- the
jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as
to Isaac Larian.  Totaled, this award is $90 million.  Viewed pursuant to the MGA
parties' theory, it would be the same $30 million awarded three times.  Relatedly, the
MGA parties contend that the copyright damages of $10 million (allocated among three
defendants) are also duplicative of this $30 million, even though the number is not
exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative.
The remittitur standard is exceptionally deferential to the jury's verdict, and the Court
cannot disturb it based on speculation.  The fact is the evidence not only supported a
verdict of $100 million, this Court could have, under the remittitur standard, easily
sustained a verdict many times this amount.  The jury may have meant to award only a
total of $30 million, or they may have simply decided they could all agree on a round
figure of $100 million and then set about allocating that $100 million among multiple
claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v.
Asbury Automotive Group, LLC  2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus.
Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck
and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc.,
2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not
exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony
of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for
approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90
CIVIL -- GEN                                    8                 Initials of Deputy Clerk ___cls_____

EXHIBIT ___9___
PAGE ___/35___

In any event, the Court must return to the standard by which its conclusion is
governed. Here, a district court **must** leave undisturbed jury's verdict that is
"reasonable in light of the totality of the evidence," where the verdict does not "exceed[]
the maximum amount sustainable by the probative evidence," and where the verdict
"lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is
well within the range of possible awards based on the evidence of record, and therefore
the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in
essence really seek, is an inquiry into what the jury **meant** by its verdict. As the Court
and the parties to this case are aware, this inquiry is squarely within that which is
prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a
> juror may not testify as to any matter or statement occurring
> during the course of the jury's deliberations or to the effect of
> anything upon that or any other juror's mind or emotions as
> influencing the juror to assent to or dissent from the verdict
> or indictment or concerning the juror's mental processes in
> connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear.
Counsel for the MGA parties has not thus far denied that at least one juror, possibly
more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1
million awarded as defendant MGA HK's liability for copyright infringement is duplicative
because of certain consolidated financial reporting that occurs between MGAE and
MGA HK. This evidence was not before the jury; the jury made its award based on the
evidence before it. In any event, because the evidence presented supports the $1
million award made against MGA HK, under the Memorial Coliseum standard, it must
be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for
intentional interference with contractual relations is barred by the statute of limitations.
The Court previously held that the intentional interference with contractual relations
claim was not subject to the discovery rule, so unless Mattel was able to establish a
sufficient period of fraudulent concealment, the interference claim would be time barred.
June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a
specific interrogatory regarding whether a requisite period of fraudulent concealment
could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___136___

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to **all** tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

EXHIBIT ___9___
PAGE ___137___

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of
the case and discussing the discovery rule standard before concluding the rule does not
apply in that instance, rather than noting a wholesale rejection of the application of the
discovery rule to tortious interference claims, these courts have implicitly held that the
discovery rule may, in certain undefined instances, permit otherwise time-barred claims
to proceed.[8]

      The Court has previously discussed at length why the discovery rule delayed the
accrual of Mattel's claims in this case. That rationale applies with equal force to the
intentional interference with contractual relations claim, which was timely asserted
against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any
fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of
timeliness of the tortious interference claim.

      Finally, the MGA parties correctly contend that the damages awarded for
conversion, totaling $31,500, should be remitted because the Court's declaratory
judgment orders the MGA parties to return the drawings. The Court **GRANTS** the
motion on this issue. However, the drawings shall remain in the Court's custody
pending completion of Phase 2, pending appeal, and/or pending further order of this
Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

      Subject to the modification set forth in the Court's January 7, 2009, Order (docket
#4657) (relating to distributors and retailers), the Court **VACATES** the stay on
enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for
Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the
Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket
#4439) at 16 (which was imposed pending resolution of the three post-trial motions
upon which the Court today rules); however, the Court leaves undisturbed the more
limited stay set forth in the Court's January 7, 2009, Order, which relates to the
purchase of Bratz products by retailers and distributors up to and including December
31, 2009. This limited stay is supplemented as set forth below.

---

      [8] Had those courts not wished to make this implication, they could have, but did not, set forth a
qualification that the court was assuming without deciding that the discovery rule could be applied to a
tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We
assume for purposes of this discussion that the delayed discovery rule applies to unfair competition
claims. We note that this point is currently not settled under California law . . . and we do not address it.")
(citations omitted).

EXHIBIT ___9___
PAGE ___138___

The Permanent Injunction Order contemplates the Court's appointment of a
Special Master to resolve issues and disputes relating to the enforcement of the
Permanent Injunction Order. At this point, in the absence of any such disputes, the
Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation
as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment
Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on
August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties'
equitable claims and equitable relief (especially the Court's Omnibus Order defining the
parameters of the scope of copyright infringement, the Court's Order Granting Mattel's
Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for
Constructive Trust), and in light of this Order rejecting in all material respects the MGA
parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's
legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court,
and serve on all parties, no later than thirty days from the entry of this Order, a full
accounting of all profits that have resulted from all sales, occurring after August 26,
2008, of all products that fall within any of the Court's December 3, 2008, Orders
referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a
joint status report setting forth the position of all interested parties on how they wish to
proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order,
Mattel and the MGA parties jointly lodged a laptop computer from which the Court could
easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the
courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously
sealed record in these consolidated cases. That Order related only to documents filed
on or before May 27, 2008. Certain specific documents, identified by the parties by
docket number and found by the Court to have good cause to remain sealed, were not
unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and
confer process to significantly narrow, if not eliminate the under seal nature of the filings

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___139___

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

### VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

### IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90
CIVIL -- GEN                                    13

Initials of Deputy Clerk __cls_____ .

EXHIBIT ___9___
PAGE ___140___

status as a secured creditor of MGA." <u>See</u> Ex Parte Application to Intervene (docket #4761) at 1. This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene. The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.·

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

<u>Id.</u> The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

<u>United States Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. <u>Id.</u> Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). <u>See id.</u> (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation."). However, this particular request for intervention is not one that falls into this general category. Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN                                    14

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___/4/___

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90
CIVIL -- GEN                                    15                 Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___142___

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds as follows:

1.    The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.    As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.    Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.    Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___143___

and related entities (as defined below) are engaged in a course of conduct
with related parties designed to frustrate the Court's Orders, Findings and
Injunction herein;

5.    Good cause exists to believe that the MGA parties, agents, and related
      entities (as defined below) will continue to engage in such transactions,
      acts, practices, and courses of conduct and business to the immediate
      and irreparable loss and damage to Mattel, and contrary to the interests of
      justice, unless restrained and enjoined.

6.    It is appropriate and in the interests of justice that, pursuant to L.R. 66,
      that a Temporary Receiver be appointed and that an Order to Show
      Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.    Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to
      L.R. 66 for the MGA entities to manage, supervise and oversee the assets
      of the MGA entities and the Bratz Brand and all Bratz Assets as these
      terms are defined herein (the "Temporary Receiver").

2.    The Temporary Receiver is appointed and is hereby directed and ordered
      to take full and exclusive control over, and to manage, preserve, and
      maximize the profits of, the MGA entities and the Bratz Brand and Bratz
      Assets as of the date hereof, including, without limitation, by locating,
      taking possession and ownership of, preserving, protecting, managing,
      supervising and overseeing the Bratz Assets.

3.    The Temporary Receiver is further directed to investigate the financial
      affairs of the MGA entities, and specifically investigate transfers and
      transactions made by the MGA entities from and after July 17, 2008.

4.    The Temporary Receiver shall have the power to take any and all action
      which may be necessary, appropriate or advisable to effectuate the
      purposes of the Temporary Receivership, including, but not limited to, the
      power to:

      a.    take custody, control and possession of the assets of the MGA
            entities and Bratz Assets in the possession, custody or control of
            the MGA entities, and/or any person or entity acting at their behest
            or direction or pursuant to their control, including, but not limited to,
            Isaac Larian and any successor-in-interest, subsidiary, corporate
            affiliate, agent, servant, attorney, accountant, officer, director,
            employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          17

EXHIBIT ___9___
PAGE ___144___

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.    open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN

18

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___145___

out the Temporary Receiver's mandate under this Order;

l.   protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.   retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.   retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.   record this Order in any jurisdiction;

p.   the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.   take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.   institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

EXHIBIT 9
PAGE 146

except insofar as the Court orders or invites the Temporary
Receiver to do so; and,

s.     perform such further and additional acts as the Temporary Receiver
       deems necessary or advisable to preserve the Bratz Assets,
       maximizing the profits derived therefrom, ensure the successful
       manufacture, delivery and marketing of Bratz-branded dolls and
       products for the spring and fall 2009 seasons and otherwise carry
       out the Temporary Receiver's mandate under this Order, including,
       without limitation, any acts which could be lawfully carried out by a
       corporation in the state of California.

5.     The Temporary Receiver, the Temporary Receiver's employees
       and agents as well as any and all of the professionals employed by
       the Temporary Receiver, are entitled to compensation for services
       rendered at their normal hourly rates and reimbursement for all
       expenses incurred by them on behalf of the receivership estate.
       The Temporary Receiver shall serve written notice upon counsel of
       record for the parties of the amount to be paid to each payee, with
       an itemization of the services rendered or expenses incurred.
       Upon service of said notice, the itemized fees and expenses may
       be paid by the Temporary Receiver on an interim basis. In the
       event that extraordinary services are performed by the Temporary
       Receiver, he shall be entitled to extraordinary compensation
       according to proof and approval of this Court. All interim fees paid
       shall be subject to final review and approval by this Court. This
       Court retains jurisdiction to award a greater or lesser amount as the
       full, fair and final value of such services. In the event there are
       insufficient funds in the receivership estate to fully compensate the
       Temporary Receiver and his professionals, the Court retains
       jurisdiction to allocate the costs and expenses of this receivership
       against Mattel, as the party who sought the appointment of the
       Temporary Receiver, and/or Isaac Larian, as the principal owner
       and beneficiary of the MGA entities.

6.     Upon service of a copy of this Order, all banks, broker-dealers,
       savings and loans, escrow agents, title companies, commodity
       trading companies, or other financial institutions shall cooperate
       with all reasonable requests of the Temporary Receiver regarding
       implementation of this Order, including transferring funds at his
       direction and producing records related to the assets of the MGA
       entities.

7.     The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          20

EXHIBIT ___9___
PAGE ___147___

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities. The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN

21

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___148___

brand.

g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8. The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9. As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order. Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers. The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443). The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___149___

authorized agents working for and under the auspices of the Temporary
Receiver pursuant to the terms of this Order.

10.    Additional Provisions.

a.    In the event that any person or entity or fails to refuses to deliver or
transfer any of the assets of the MGA entities or Bratz Assets or
otherwise fails to comply with any provision of this Order, the
Temporary Receiver is instructed to file ex parte an affidavit setting
forth the failures.  Upon the filing of such affidavit, the Court may
authorize repossession or sequestration or other equitable relief as
requested by Temporary Receiver.

b.    The Temporary Receiver shall maintain and shall not disburse,
distribute or pay anyone any receivership funds or proceeds earned
from exploitation of Bratz-branded dolls and products except as
needed to satisfy the reasonable and ordinary cost and expenses
incurred by the receivership.

c.    The Temporary Receiver shall have the status of officers and
agents of this Court, and as such shall be vested with the same
immunities as vested with this Court.  Neither the Temporary
Receiver nor any person or entity acting at the direction of the
Court or pursuant to agreements with the Temporary Receiver
(whether employees, vendors, contractors or otherwise) may be
held liable to the MGA parties whether for claims of alleged
copyright infringement, trademark infringement, or other alleged
causes of action for any acts taken in good faith in compliance with
this Order.

d.    During the course of the receivership, and pending further order of
the Court, the MGA parties shall not have any right, title, or interest
and/or power as to the Bratz Assets or Bratz brand.  All ownership
of all Bratz Assets, Bratz Brands and Bratz-related copyrights and
other intellectual property are hereby vested in the Temporary
Receiver and the MGA parties are divested of all such ownership.
Nothing herein shall alter or affect the right of Mattel to take any
and all actions relating to the Bratz Assets or the Bratz brand which
it otherwise lawfully could take, including, without limitation, the
institution, maintenance and prosecution of legal proceedings
anywhere in the world or other proceedings before any
governmental or tribunal or arbitration panel.

e.    Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90                                        Initials of Deputy Clerk __cls_____
CIVIL -- GEN                           23

EXHIBIT ___9___
PAGE ___150___

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.  To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.  The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.  No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.  It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.  In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90
CIVIL -- GEN

24

Initials of Deputy Clerk __cls_____

EXHIBIT ___9___
PAGE ___151___

et seq. for the MGA entities without prior permission of this Court.

k.    The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all   financial and other documentation requested by the Temporary Receiver.

l.    The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.    The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.    Order to Show Cause.  All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver.  Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.    Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.    The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009.  This report shall be filed with the Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT ___9___
PAGE ___152___

# EXHIBIT 10

# BINGHAM

Peter N. Villar
Direct Phone:  714.830.0640
Direct Fax:     714.830.0719
peter.villar@bingham.com
Our File No.:  0000337036

February 20, 2009

**Via Email**

Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Re:  Carter Bryant v. Mattel, Inc., Case No. CV 04-9049 SGL

Dear Mr. Corey:

We are in receipt of the Subpoena issued by Mattel, Inc. to our firm, Bingham McCutchen LLP, in the above-referenced matter.  The Subpoena is objectionable on many grounds including, *inter alia*, that: it seeks information protected by the attorney-client privilege and attorney work product doctrine; it seeks private, confidential and proprietary information of our firm and our clients; it invades our firm's and our clients' rights of privacy; it is overly broad, unduly burdensome, oppressive and harassing; it seeks information that is irrelevant to Phase 2 of the proceedings; and the burden, expense and intrusiveness of the discovery outweighs any purported relevance of the information.

We hereby demand that Mattel immediately withdraw the Subpoena.  If Mattel refuses to withdraw the Subpoena, we will file a motion to quash the Subpoena, and each document request therein, pursuant to Federal Rules of Civil Procedure 45(c)(3).  Before doing so, however, we would like an opportunity to discuss and try to resolve these issues with you in person at our office.  We are available any time on Tuesday, February 24 or Wednesday, February 25.  If you are willing to meet with us, please let us know which date and time works for you.

Sincerely,

Peter N. Villar

cc:     Thomas J. Nolan, Esq.
        Patricia L. Glaser, Esq.
        Russell J. Frackman, Esq.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/72852289.1

EXHIBIT _____ 10

PAGE _____ 153

# EXHIBIT 11

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 23, 2009

<u>VIA FACSIMILE AND U.S. MAIL</u>

Peter N. Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard 18th Floor
Costa Mesa, California 92626-1924

Re:    <u>Mattel, Inc. v. MGA Entertainment, Inc. et al.</u>

Dear Peter:

I write in response to your February 20, 2009 letter regarding Mattel's subpoena to Bingham McCutchen, LLP and, pursuant to paragraph 5 of the Discovery Master Order, to request a meet and confer in advance of a contemplated motion to compel and for sanctions.

Bingham's objection that Mattel's subpoena seeks information protected by the attorney-client privilege and work product doctrine is without basis. To the extent the subpoena asks Bingham to produce communications, it expressly excludes "(a) privileged communications with its client Omni 808 after its attorney-client relationship arose; [and] (b) privileged communications with its client Vision Capital after its attorney-client relationship arose." <u>See</u> Exhibit A to Subpoena Issued to Bingham McCutchen, LLP, at ¶ 6. In addition, as explained further below, the Court previously rejected defendants' assertions in this case that fee information is privileged.

Bingham incorrectly contends that Mattel's subpoena is not relevant to Phase 2. Mattel's requests are narrowly tailored to discover who is paying Omni 808's and Vision's Capital's legal fees, as well as to discover who was involved in the formation and operation of these entities. Among other things, this information is directly relevant to MGA's, Larian's and the third parties' credibility. Judge Larson and the previous Discovery Master have repeatedly held that documents and information relating to payment of legal fees are relevant to bias and credibility and are discoverable. <u>See, e.g.</u>, Discovery Master's Order Granting Mattel's Motion to Compel

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street. 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07975/2805475.1

EXHIBIT _____ 11

PAGE _____ 152

Production of Documents, dated January 25, 2007, at 12 (holding that documents relating to fee or indemnity agreements between MGA and Bryant are relevant to show "lack of credibility"); Court's Order re Motions Heard on June 11, 2007, dated June 27, 2007, at 34 (holding that fee payment arrangements are relevant to credibility and must be disclosed). Copies of these Orders are attached for your reference.

Bingham's remaining objections are likewise without merit. Contrary to your assertion, Mattel's requests are neither overbroad nor unduly burdensome. Any burden involved in responding to the requests is also plainly outweighed by the relevance of the requested information. Finally, as Mattel has previously informed you, the previous Discovery Master and Judge Larson have held that the protective order in this case is sufficient to alleviate any purported privacy concerns.

Mattel's requests are proper. Mattel therefore will not withdraw its subpoena to Bingham McCutchen, LLP. Further, if Bingham refuses to produce documents responsive to the subpoena, Mattel intends to file a motion to compel and potentially to seek sanctions if Bingham persists in its frivolous objections. Mattel hereby requests a meet and confer regarding its anticipated motion within the next five days pursuant to paragraph 5 of the Order for the Appointment of a Discovery Master.

We are available tomorrow afternoon to meet and confer in person at your Los Angeles office, which was a date you suggested in your letter. Please let us know what time.

I look forward to hearing from you.

Best regards,

Jon Corey /SH

Jon Corey

2

EXHIBIT _____ 11 _____

PAGE _____ 155 _____

```
                    ********************
                ***   TX REPORT   ***
                    ********************

    TRANSMISSION OK

    TX/RX NO            4196
    RECIPIENT ADDRESS   1*17148300719
    DESTINATION ID
    ST. TIME            02/23 22:08
    TIME USE            12'40
    PAGES SENT          57
    RESULT              OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**CHICAGO**
250 South Wacker Drive, Suite 230
Chicago, IL 60606
Facsimile:

**LONDON**
16 Old Bailey
London EC4M 7EG United Kingdom
+44(0) 20 7653 2000
Facsimile: +44(0) 20 7653 2100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052 Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**  February 23, 2009

**NUMBER OF PAGES, INCLUDING COVER:** 57

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Peter N. Villar, Esq.<br>Bingham McCutchen LLP | (714) 830-0640 | (714) 830-0719 |

**FROM:**  Jon D. Corey, Esq.

**RE:**  *Mattel, Inc. v. MGA Entertainment, Inc.*

**MESSAGE:**

Please see attached correspondence dated February 23, 2009.

EXHIBIT ___11___

PAGE ___154___

# EXHIBIT 12

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 26, 2009

Peter Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, California  92626

**Carter Bryant vs. Mattel, Inc.**

Dear Peter:

We refer to the subpoena issued to Bingham McCutchen LLP ("Bingham") and our meet and confer at your offices yesterday, February 25, 2009.  We also refer to the Motion to Quash your firm served on February 25, 2009.

As we understand Bingham's position, it will not produce documents even in the event that its motion to quash is denied without further motion practice by Mattel.  Bingham's insistence that it can drag out discovery disputes by attempting to force serial motion practice is inappropriate and improperly burdens the resources of the Court and Mattel.

We therefore reiterate our request that Bingham stipulate that, in the event the motion to quash the subpoena is denied, Bingham will promptly produce the requested non-privileged documents, accompanied by a privilege log.  Please let us know by noon tomorrow if you will enter into such a stipulation.

I look forward to your response.

Very truly yours,

*James J. Webster /sn*

James J. Webster

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3356

2809758.1

EXHIBIT _____ 12 _____

PAGE _____ 157 _____