# EXHIBIT 14

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 15

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CERTIFIED COPY

| | | |
|---|---|---|
| MATTEL, INC., PLAINTIFF, | ) | |
| VS. | ) | NO. CV 04-09049 |
| MGA ENTERTAINMENT, INC., ET. AL., DEFENDANTS. | ) | TRIAL DAY 18 MORNING SESSION PAGES 3690-3821 |
| AND CONSOLIDATED ACTIONS, | ) | |

REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, JULY 1ST, 2008

8:44 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA 92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT 4
PAGE 271

APPEARANCES:

ON BEHALF OF MATTEL, INC.:

QUINN EMANUEL
BY: JOHN QUINN
JON COREY
MICHAEL T. ZELLER
HARRY OLIVAR
TIMOTHY ALGER
865 S. FIGUEROA STREET,
10TH FLOOR
LOS ANGELES, CALIFORNIA 90017

ON BEHALF OF MGA ENTERTAINMENT:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BY: THOMAS J. NOLAN
JASON RUSSELL
RAOUL SLOAN
LAUREN AGUIAR
CARL ROTH
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144
213-687-5000

EXHIBIT 15
PAGE 272

I N D E X

| | PAGE |
|---|---|
| DEFENSE CASE (CONTINUED) | 3705 |
| PLAINTIFF CASE (INTERRUPTED) | 3770 |

| DEFENSE WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| **JANET LENORE BRYANT (VIA VIDEO DEPOSITION)** | | | | |
| BY MR. ZELLER | 3705 | | | |

| PLAINTIFF WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| **FARHAD LARIAN** | | | | |
| BY MR. QUINN | 3770 | | 3798, 3816 | |
| BY MR. NOLAN | | 3790 | | 3809 |

| EXHIBITS | RECEIVED |
|---|---|
| 734 | 3768 |
| 736 | 3768 |
| 744 | 3768 |
| 754 | 3768 |
| 767 | 3768 |
| 774 | 3768 |
| 778 | 3768 |
| 779 | 3768 |
| 781 | 3768 |
| 783 | 3768 |
| 795 | 3768 |
| 18569 | 3811 |

EXHIBIT 15
PAGE 272

THAT ON 403 GROUNDS.

MR. QUINN: UNDERSTOOD, YOUR HONOR.

MAY WE PUBLISH THAT?

THE COURT: JUST THE BOTTOM ONE.

MR. NOLAN: CAN I BE HEARD AT SIDE-BAR? 11:39

THE COURT: YES, YOU MAY.

(WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT SIDE-BAR:)

THE COURT: I SHOULD CHANGE THAT RESPONSE: 'UNLESS YOU WANT TO DO IT THAT WAY," COUNSEL. PERHAPS YOU MIGHT WANT TO DO THAT. 11:39

MR. NOLAN: "YOUR APPLICATION PROVES FALSE."

THE COURT: CORRECT.

MR. QUINN: WELL, THEN WE SHOULD HAVE THIS LINE HERE.

THE COURT: LET'S INCLUDE THE RESPONSE. 11:40

MR. QUINN: RIGHT.

THE COURT: OUT OF COMPLETENESS, I'LL PERMIT THAT.

MR. QUINN: RIGHT. THEN WOULDN'T THE TOP LINE IN RESPONSE TO THE RESPONSE --

THE COURT: NO. GET THAT OUT. THAT'S THE PART -- 11:40

MR. NOLAN: JUST THAT --

THE COURT: UNLESS THERE'S NO OBJECTION.

MR. NOLAN: NO. LET'S DO IT THIS WAY. I THINK THIS IS THE WAY.

THE COURT: I AGREE. 11:40

EXHIBIT 15
PAGE 274

**THE COURT:** SO I'LL INCLUDE IN THE RECORD THE ORIGINAL MESSAGE, DATED MAY 24 AT 6:32 P.M., THE RESPONSE, MAY 24, 2000 -- THE COURT IS EXCLUDING ON 403 GROUNDS THE NEXT DAY'S RESPONSE ON MAY 25, 12:49.

AND JUST SO YOU KNOW, IT'S BASICALLY BECAUSE OF THE ANSWERS, THE MUDDLED ANSWERS WE'RE GETTING. 11:40

**MR. NOLAN:** I UNDERSTAND THAT.

**THE COURT:**. VERY GOOD.

(WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)

**THE COURT:** COUNSEL, AS I INDICATED, I'M ADMITTING THE BOTTOM TWO MESSAGES. 11:41

**MR. QUINN:** UNDERSTOOD, YOUR HONOR.

**THE COURT:** YOU MAY PROCEED.

**MR. QUINN:** IF WE MAY PUBLISH THAT, YOUR HONOR.

BY MR. QUINN: 11:41

Q THIS E-MAIL AT THE BOTTOM IS THE E-MAIL WE'VE BEEN DISCUSSING.

DO YOU RECALL WHAT THIS FIREMAN'S FUND LAWSUIT WAS ABOUT?

A YES, I DO. 11:41

Q WHAT DID IT CONCERN, JUST IN GENERAL TERMS?

A BAD FAITH CLAIM AGAINST INSURANCE COMPANY.

Q MGA WAS BRINGING A CLAIM AGAINST ITS INSURANCE COMPANY; IS THAT CORRECT?

A YES. 11:41

EXHIBIT 15
PAGE 275

Q THERE WAS A QUESTION ABOUT -- WHO WAS MARTY KATZ?
A MGA'S ATTORNEY.
Q MGA'S ATTORNEY?
A AND MY ATTORNEY, YES.
Q THERE WAS AN ISSUE ABOUT WHETHER LEGIBLE COPIES EXISTED OF CERTAIN DOCUMENTS. 11:42
DO YOU RECALL THAT?
A YES, I DO.
Q WHAT YOU WROTE TO YOUR BROTHER IS THAT "YOU INSTRUCTED ME TO NOT PROVIDE THOSE TO MARTY AND TO TELL HIM WE COULD NOT FIND THE ORIGINALS"; CORRECT? 11:42
A THAT'S WHAT I WROTE THERE.
Q BUT, IN FACT, WHAT YOU WROTE WAS, YOU FOUND THE ORIGINAL; YOU HAD THE ORIGINALS; CORRECT?
A THAT'S WHAT IT SAYS, YES. 11:42
Q SO YOUR BROTHER HAD INSTRUCTED YOU -- WHAT YOU WROTE WAS, YOUR BROTHER HAD INSTRUCTED YOU TO LIE TO THE ATTORNEY AND SAY THAT THEY COULDN'T BE FOUND; CORRECT?
A AS I SAID, THAT PART, I HAD ADDED MYSELF AS PART OF MY TIT-FOR-TAT GAME WITH ISAAC. 11:42
Q ARE YOU SAYING THAT YOU MADE THIS UP?
A YES.
Q WHAT YOU'RE TELLING US IS THAT YOU LIED IN THIS E-MAIL; CORRECT?
A I LIED IN THAT E-MAIL AS FAR AS HIM TELLING ME NOT TO GIVE 11:4:

EXHIBIT 15
PAGE 276

THE ORIGINALS TO MARTY KATZ.

Q YOU INDICATED THAT ANY OF THE DOCUMENTS YOU HAD THAT YOU HAD COLLECTED IN CONNECTION WITH YOUR CASE CONCERNING BRATZ -- IN RESPONSE TO MR. NOLAN'S QUESTION, YOU SAID THAT MGA WOULD HAVE COPIES OF ALL OF THOSE; CORRECT? 11:43

A EXCEPT FOR DECLARATIONS AND THINGS THAT I GATHERED PERSONALLY; AND THOSE DID NOT BELONG TO MGA OR TO MATTEL.

Q THAT'S WHAT I WAS GOING TO ASK YOU ABOUT.

THOSE DECLARATIONS, THOSE THINGS THAT YOU HAD PERSONALLY COLLECTED, MGA WOULDN'T NECESSARILY HAVE; CORRECT? 11:43

A THAT'S CORRECT.

Q THOSE ARE GONE FOREVER.

A UNLESS YOU GUYS GOT THEM FROM SOME PEOPLE. AND I BELIEVE YOU DID.

Q WE GOT ALL OF THE DECLARATIONS THAT YOU HAD DRAFTED; IS THAT YOUR UNDERSTANDING? 11:43

A MY UNDERSTANDING IS, YOU GOT AT LEAST A FEW OF THEM.

Q WE GOT ALL OF THE INFORMATION THAT YOU DESTROYED BEFORE YOU DESTROYED IT.

A AS I SAID, I HAVE NO OBLIGATION TO KEEP ANYTHING, SO I DON'T KNOW WHAT YOU'RE TRYING TO INSINUATE HERE. 11:44

MAYBE YOUR HONOR CAN TELL ME IF I HAD ANY OBLIGATION TO KEEP ANY OF THESE DOCUMENTS.

Q AND THE REASON YOU DISMISSED YOUR CASE -- DO YOU RECALL YOU FILED AN OPPOSITION TO YOUR BROTHER'S -- WHEN YOUR BROTHER 11:44

EXHIBIT 15
PAGE 277

SUBJECT TO CROSS-EXAMINATION CONCERNING A STATEMENT AND THE STATEMENT IS INCONSISTENT WITH THE DECLARANT'S TESTIMONY WAS GIVEN UNDER OATH SUBJECT TO PENALTY OF PERJURY IN A TRIAL OR CONSISTENT WITH THE DECLARANT'S TESTIMONY AND IS OFFERED TO REBUT EXPRESS OR IMPLIED CHARGES AGAINST FABRICATION." 12:0(

I THINK THAT'S WHAT WE HAVE HERE; SO I THINK EVEN THOUGH IT WAS NOT MADE UNDER OATH, I THINK THAT IT CAN BE OFFERED NOW.

NOW WE'RE OPENING A DOOR HERE, THOUGH, COUNSEL.

**MR. NOLAN:** I KNOW. I GOT WHAT I NEEDED. 12:0(

**THE COURT:** BECAUSE IF THE TRANSCRIPT COMES IN, IT ALL COMES IN. AND THEN MR. QUINN STANDS UP --

**MR. NOLAN:** I REALIZE THAT. I CAN TAKE YOUR COURSE.

**THE COURT:** VERY WELL.

(WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.) 12:0(

**MR. NOLAN:** YOUR HONOR, I BELIEVE I ASKED A QUESTION, AND THERE WAS AN OBJECTION. I WAS ASKING HIM -- LET ME REDO IT.

**THE COURT:** REPHRASE YOUR QUESTION.

BY **MR. NOLAN:**

Q MR. LARIAN, ALL OF THIS STUFF, THESE QUESTIONS, THEY DON'T GO TO THE QUESTION OF WHEN CARTER BRYANT DID THE BRATZ CONCEPT, DO THEY?

**MR. QUINN:** YOUR HONOR, THIS IS CLOSING ARGUMENT.

**THE COURT:** LET'S MAKE A QUESTION, COUNSEL. ASK A 12:0(

QUESTION, NOT A STATEMENT.

BY MR. NOLAN:

Q DID ANY OF THE QUESTIONS THAT MR. QUINN ASKED YOU GO TO WHEN CARTER BRYANT CAME UP WITH THE CONCEPT FOR BRATZ?

MR. QUINN: SAME OBJECTION. 12:01

THE COURT: IT'S RELEVANCE.

SUSTAINED.

MR. NOLAN: NOTHING FURTHER.

THE COURT: MR. QUINN, WE'RE AT THE NOON HOUR HERE.

MAKE IT QUICK. 12:01

REDIRECT EXAMINATION

BY MR. QUINN:

Q YOU TOLD US YOU DESTROYED SOME E-MAILS FROM THE TIME PERIOD BACK IN 2000 RELATING TO BRATZ; CORRECT?

A I DISCARDED DOCUMENTS THAT I NO LONGER NEEDED. 12:01

Q AND THOSE MIGHT HAVE HAD SOMETHING TO DO WITH THE ORIGIN OF BRATZ; CORRECT?

A AND MGA HAS THE ORIGINAL OF ALL OF THOSE E-MAILS.

Q WELL, I KNOW YOU SAID THAT, BUT THIS FIREMAN'S FUND EXHIBIT, FOR EXAMPLE, THAT'S EXHIBIT 13380, THAT'S ONE OF THE DOCUMENTS THAT YOU DESTROYED; CORRECT? YOU DIDN'T PRODUCE THIS DOCUMENT IN RESPONSE TO A SUBPOENA? 12:0

MR. NOLAN: OBJECTION. MISCHARACTERIZES HIS TESTIMONY.

THE COURT: SUSTAINED AS PHRASED. 12:0

BY MR. QUINN:

Q ISN'T IT TRUE THAT THIS IS ONE OF THE DOCUMENTS THAT YOU DESTROYED?

A YOU'RE PROVING MY POINT THAT MGA HAD THE DOCUMENT, AND OBVIOUSLY, THEY GAVE IT TO YOU. 12:02

Q WHAT MAKES YOU THINK THAT MGA PRODUCED THIS DOCUMENT, THAT WE GOT IT FROM MGA?

A BECAUSE I KNOW I DIDN'T.

Q BUT DO YOU SEE DOWN THERE "CG"?

A YES, I DO. 12:02

Q DO YOU KNOW WHETHER A SUBPOENA WAS SERVED ON THE CHRISTENSEN GLASER FIRM AND WHETHER THEY PRODUCED THIS DOCUMENT?

A SAME THING. SOMEBODY PRODUCED IT.

Q RIGHT. 12:02

YOU DON'T KNOW THAT MGA PRODUCED IT, ONE WAY OR THE OTHER; CORRECT?

A CG IS ALSO MGA'S ATTORNEY, OR WAS MGA'S ATTORNEY SO...

Q THERE'S NO MGA -- ON THAT COPY THAT YOU'RE LOOKING AT, THERE'S NO MGA PRODUCTION STAMP, IS THERE? 12:03

A THE ATTORNEY IS THE SAME AS -- THE ATTORNEY IS ACTING FOR THE COMPANY.

Q I UNDERSTAND WHAT YOU'RE SAYING.

A I DON'T SEE A BATES STAMP.

Q AND YOUR ATTORNEY HERE IS FROM THE CHRISTIANSEN FIRM. 12:03

A YES.

Q AND SHE'S BEING PAID BY MGA.

A YES.

**MR. QUINN:** AND, YOUR HONOR, NOW, I THINK, BECAUSE OF THE QUESTION MR. NOLAN ASKED ABOUT -- I THINK THE FIRST PART NOW COMES IN. 12:03

**THE COURT:** I AGREE.

**MR. QUINN:** SO IF WE COULD PUT THE WHOLE EXHIBIT UP.

**THE COURT:** NOT JUST THE QUESTION THAT WAS ASKED, BUT THE ANSWER THAT WAS GIVEN. 12:03

**MR. QUINN:** RIGHT.

**BY MR. QUINN:**

Q MR. NOLAN ASKED YOU -- HE SAID THAT MR. QUINN DIDN'T ASK YOU ABOUT YOUR BROTHER'S RESPONSE TO THIS E-MAIL WHERE YOU SAY HE HAD INSTRUCTED YOU TO WITHHOLD DOCUMENTS. 12:03

YOU RESPONDED TO THAT, DIDN'T YOU, SIR?

A YES.

Q AND WHAT YOU RESPONDED WAS, "YOUR DENIAL DOES NOT MAKE MY ALLEGATION ANY LESS TRUE, AND TIME WILL PROVE WHAT THE REAL TRUTH IS. WHEN THE TIME COMES, WE'LL GO THROUGH BOTH OF OUR TESTIMONIES AND PROVE WHO LIED ABOUT WHAT." 12:04

CORRECT? THAT'S WHAT YOU WROTE AT THE TIME?

A YES.

Q BUT YOU'RE TELLING US THAT DOWN HERE IN THE ORIGINAL E-MAIL, YOU WEREN'T TELLING THE TRUTH. 12:04

A I ALREADY SAID THAT.

Q IS THAT SOMETHING THAT YOU MAKE A PRACTICE OF; THAT YOU LIE IN ORDER TO MAKE A POINT?

A AS I SAID, WE WERE PLAYING TIT-FOR-TAT; WE HAD SIBLING RIVALRIES; AND I PUT SOMETHING OUT THERE AND I DENIED IT. 12:04

Q AND YOU'RE NOW TELLING US IT WASN'T TRUE.

A YES.

Q THEN THIS EXHIBIT THAT CAME IN, EXHIBIT 18569, WHERE YOU'RE BEING TOLD THAT YOU SHOULD RETURN ALL DOCUMENTS OF MGA IN YOUR POSSESSION -- IT'S DATED DECEMBER 30, 2005. 12:04

DO YOU HAVE THAT THERE, SIR?

A I DO.

Q BY THEN, THE ARBITRATION WAS OVER, RIGHT, HAD BEEN OVER FOR SOME TIME?

A CORRECT. 12:05

Q AND THE DOCUMENTS THAT YOU DESTROYED, YOU SAID YOU DESTROYED JUST DAYS AFTER YOU DISMISSED THE ARBITRATION; CORRECT?

A CORRECT.

Q SO THOSE DOCUMENTS WERE ALL GONE BY THE TIME THEY WROTE YOU AND TOLD YOU TO RETURN EVERYTHING; CORRECT? 12:05

A THEY HAD WRITTEN ME A LETTER PRIOR TO THIS ASKING FOR THE DOCUMENTS AS WELL.

Q BUT LONG BEFORE THIS DOCUMENT DATED DECEMBER 31, 2005, YOU HAD DESTROYED THOSE DOCUMENTS BECAUSE YOU DESTROYED THEM WITHIN 12:0.


DAYS AFTER YOU DISMISSED YOUR CASE; CORRECT?

A I DISCARDED SOME OF THE DOCUMENTS AFTER I DISMISSED MY CASE, AND THEN WHEN I GOT THE LETTER FROM YOUR FIRM, I KEPT THE REST OF THE DOCUMENTS. AND PRIOR TO THIS LETTER, MGA HAD WRITTEN ME ANOTHER LETTER, I BELIEVE IN SEPTEMBER OR AUGUST OF 2005, ASKING ME TO RETURN DOCUMENTS. 12:05

**THE COURT:** THANK YOU, MR. QUINN.

**MR. QUINN:** THANK YOU.

**THE COURT:** ANYTHING FURTHER, MR. NOLAN?

**MR. NOLAN:** NO, YOUR HONOR. 12:06

**THE COURT:** VERY WELL.

MR. LARIAN, YOU'RE EXCUSED. I THANK YOU AND YOUR COUNSEL FOR ACCOMMODATING THE COURT THIS MORNING.

LET'S TAKE OUR LUNCH BREAK. I'LL SEE THE JURY AT 1:45. 12:06

(WHEREUPON, JURORS DEPART COURTROOM.)

**THE COURT:** ARE THERE ANY MATTERS WE NEED TO TAKE UP AT THIS MOMENT, BECAUSE THE COURT HAS TWO OTHER MATTERS UNRELATED TO THIS THAT I NEED TO CALL.

IF NOT, I'LL SEE YOU AT 1:45. 12:07

ANYTHING FROM MATTEL?

**MR. QUINN:** NOTHING URGENT.

WOULD WE HAVE SOME TIME BEFORE WE GO BACK INTO SESSION?

**THE COURT:** LET'S MEET AT 1:30. THE JURY IS NOT 12:07

COMING BACK UNTIL 1:45.

ANYTHING FROM MGA?

**MR. NOLAN:** NO. WE'RE FINE.

(MORNING SESSION CONCLUDED.)

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

Theresa A. Lanza 7-2-08

THERESA A. LANZA, RPR, CSR
OFFICIAL COURT REPORTER

DATE

# EXHIBIT 16

ATTORNEYS' EYES ONLY

**Isaac Larian (President / CEO)**

**From:** Fred Larian
**Sent:** Thursday, May 25, 2000 12:49 PM
**To:** Isaac Larian
**Subject:** RE: Information requested by Marty Katz regarding Fireman's Fund

Your denial does not make my allegation any less true and time will prove what the real truth is. I doubt you will swear on any of your children's lives that my allegations are not true (then again, I have been surprised before).

When the time comes, we will go through both of our testimonies and prove who lied about what.

-----Original Message-----
**From:** Isaac Larian
**Sent:** Wednesday, May 24, 2000 7:15 PM
**To:** Fred Larian
**Subject:** RE: Information requested by Marty Katz regarding Fireman's Fund.

Your allegation stated below is false, and self serving , as usual.

The records we have ( including your testimony in the Fireman insurance case) speak for themselves.

-----Original Message-----
**From:** Fred Larian
**Sent:** Wednesday, May 24, 2000 6:32 PM
**To:** Isaac Larian
**Subject:** Information requested by Marty Katz regarding Fireman's Fund

You have accused me of falsifying documents. You are the one who is trying to falsify things. For example, during the week of April 24, I informed you that in response to a fax from Risa of Marty Katz's office, the originals of the health insurance termination forms on Leon Michanie (copies of which had been previously provided to Fireman's Fund) were located and that legible copies were made. You instructed me to not provide those to Marty and to tell him we could not find the originals. On April 30, 2000, at my preparation meeting with Marty, I ignored your instructions and gave the copies to Marty.

CG 0009

EXHIBIT 16
PAGE 254

EX 13380-0001