```
 1            UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION

 4                     - - -

 5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                     - - -

 7   MATTEL, INC.,                )
                                  )
 8                   Plaintiff,   )
                                  )
 9           vs.                  )   No. ED CV 04-09049
                                  )   (LEAD LOW NUMBER)
10   MGA ENTERTAINMENT, INC., ET. AL.,  )
                                  )
11                   Defendants.  )   MOTION HEARING
     _____)   RE:  CARTER BRYANT
12   AND CONSOLIDATED ACTIONS,    )   FOR REBUTTAL TESTIMONY
     _____)

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                Riverside, California

17                Monday, July 7, 2008

18                   11:13 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           Federal Official Court Reporter
24            3470 12th Street, Rm. 134
           Riverside, California  92501
25                951-274-0844
             WWW.THERESALANZA.COM
```

```
 1   APPEARANCES:

 2

 3
     on behalf of MATTEL:
 4
                         QUINN EMANUEL
 5                       By:  MIKE ZELLER
                         BY:  TAMARA JIH
 6                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 7                       LOS ANGELES, CALIFORNIA  90017
                         213-624-7707
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  LAUREN AGUIAR
12                       BY:  MATTHEW SLOAN
                         300 SOUTH GRAND AVENUE
13                       LOS ANGELES, CALIFORNIA  90071-3144
                         213-687-5000

14
     ON BEHALF OF THIRD-PARTY CARTER BRYANT,
15   (TELEPHONICALLY):

16                       KEKER & VAN NEST
                         BY:  CHRISTA M. ANDERSON
17                       710 SANSOME STREET
                         SAN FRANCISCO, California  94111-1704
18                       415-391-5400

19

20

21

22

23

24

25
```

1                          I N D E X

2                                                   Page

3    MOTION ........................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, JULY 7, 2008; 11:13 A.M.

 2                              -oOo-

 3        THE CLERK:  CALLING ITEM 15, IN THE MATTER OF MATTEL

 4    VERSUS MGA, ed cv 04-9049-sgl.

 5        MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE          -03:-

 6    YOUR APPEARANCES FOR THE RECORD.  THERE ARE COUNSEL APPEARING

 7    BOTH IN PERSON AND BY TELEPHONE.

 8        MS. ANDERSON, ARE YOU STILL ON THE LINE?

 9        MS. ANDERSON:  I AM.

10        CHRISTA ANDERSON FOR CARTER BRYANT.                        -03:-

11        THE COURT:  GOOD MORNING, Ms. Anderson.

12        CAN YOU HEAR THE COURT?

13        MS. ANDERSON:  YES, I CAN.  AND THANK YOU VERY MUCH

14    FOR lettING ME APPEAR TELEPHONICALLY.

15        THE COURT:  VERY WELL.                                     -03:-

16        MR. ZELLER:  MIKE ZELLER, TAMARA JIH, APPEARING FOR

17    MATTEL.

18        MR. SLOAN:  MATTHEW SLOAN, LAUREN AGUIAR, FOR ISAAC

19    LARIAN AND MGA.

20        THE COURT:  Good morning.                                  -03:-

21        WE'RE ON CALENDAR THIS MORNING FOR MATTEL'S MOTION TO

22    COMPEL CARTER BRYANT TO TRAVEL FROM MISSOURI TO THIS COURT TO

23    TESTIFY AS A REBUTTAL WITNESS TOMORROW MORNING, OR TOMORROW

24    SOME TIME.

25        THE COURT HAS RECEIVED AND REVIEWED THE MOTION, WHICH      -03:-
```

1  INCLUDES NOT ONLY the MOTION ITSELF, which is FILED ON THE

2  RECORD, BUT I'VE ALSO RECEIVED the DECLARATION OF JOHN QUINN

3  REGARDING MATTEL'S REBUTTAL CASE, FILED UNDER SEAL and

4  IN-CAMERA.  I'VE RECEIVED the OPPOSITION, BOTH FROM MGA AS WELL

5  AS FROM COUNSEL FOR CARTER BRYANT, ALONG WITH THE DECLARATION          -03:-

6  OF MS. AGUIAR IN SUPPORT OF MGA'S OPPOSITION AND MS. ANDERSON'S

7  DECLARATION in SUPPORT OF CARTER BRYANT'S OPPOSITION.

8          THAT'S WHERE WE ARE AT THIS POINT.

9          SINCE I DID NOT AFFORD MATTEL AN OPPORTUNITY TO FILE

10  A REPLY, I'M GOING TO GIVE THEM AN OPPORTUNITY TO MAKE AN ORAL        -03:-

11  REPLY IN COURT AT THIS TIME; SO MR. ZELLER?

12          **MR. ZELLER:**  THANK YOU, YOUR HONOR.

13          JUST ONE MATTER AS A HOUSEKEEPING MATTER.

14          THE COURT WILL RECALL, TO ADD FURTHER TO THE

15  DISCUSSION WE HAD ON FRIDAY, MATTEL DID SERVE BOTH MGA'S            -03:-

16  COUNSEL AND CARTER BRYANT'S COUNSEL WITH A QUINN DECLARATION

17  THAT WAS INITIALLY IN-CAMERA.

18          **THE COURT:**   THANK YOU FOR THAT; THAT HELPS.

19          I DO REMEMBER THAT NOW.

20          SO BOTH MGA AND CARTER BRYANT HAVE THE QUINN               -03:-

21  DECLARATION; IS THAT CORRECT?

22          **MR. SLOAN:**  YES, YOUR HONOR.

23          **THE COURT:**  MS. ANDERSON, DO YOU?

24          **MS. ANDERSON:**  YES, YOUR HONOR, WE DO.

25          **THE COURT:**  VERY WELL.                                  -03:-

1          COUNSEL, YOUR REPLY?

2          **MR. ZELLER:**  YES, YOUR HONOR.  AND CERTAINLY, IF

3     THERE ARE PARTICULAR ISSUES THE COURT IS INTERESTED IN

4     ADDRESSING, I'M HAPPY TO DO THAT.

5          INSOFAR AS THE JURISDICTIONAL ISSUE GOES, I WOULD SAY          -03:-

6     THE FOLLOWING IN REPLY, JUST VERY BRIEFLY; AND I'M HAPPY TO

7     ELABORATE ON ANY OF THIS.  CONTRARY TO MR. BRYANT'S ARGUMENTS,

8     THE RULE NOWHERE STATES THAT A SUBPOENA IS AUTOMATICALLY

9     INVALID IF IT REQUIRES A WITNESS TO TRAVEL MORE THAN 100 MILES.

10    IN FACT, RULE 45(C)3(A) SPECIFICALLY SAYS THAT ON TIMELY          -03:-

11    MOTION, IT MAY BE QUASHED.  AND EVEN NOW, MORE THAN THREE

12    MONTHS AFTER THIS SUBPOENA WAS ISSUED, CARTER BRYANT HAS NEVER

13    BROUGHT SUCH A MOTION.

14         **THE COURT:**  MS. ANDERSON ALSO MAKES REFERENCE TO

15    ANOTHER PROVISION TALKING ABOUT ENFORCEMENT.  LET ME FIND IT.          -03:-

16         **MR. ZELLER:**  THAT'S 45(E).

17         **THE COURT:**  YES.

18         WOULD YOU ADDRESS THAT?

19         **MR. ZELLER:**  YES, YOUR HONOR.

20         I DON'T THINK THAT RULE 45(E) REALLY SUBTRACTS FROM          -03:-

21    45(C)3(A).  IT IS TALKING ABOUT WHAT KIND OF ENFORCEMENT MAY BE

22    DONE; IT DOES NOT SAY THAT THE SUBPOENA IS INVALID.

23         WE'RE NOT IN ENFORCEMENT AT THIS MOMENT.

24         **THE COURT:**  WITHOUT ENFORCEMENT, THOUGH, HOW CAN THE

25    COURT ISSUE A SUBPOENA?  WHAT IS THE COURT DOING, THEN?          -03:-

1          **MR. ZELLER:**  I THINK WE'RE IN KIND OF A REALM OF

2    HYPOTHETICALS.

3          ASSUMING, FOR EXAMPLE, THAT CARTER BRYANT WERE

4    ORDERED TO APPEAR PURSUANT TO THE SUBPOENA, WHICH IS I THINK

5    WHAT 45(C)3(A) GOVERNS, AND THEN YOU WERE TO DEFY IT; THEN I          -03:-

6    THINK WE'RE INTO A DIFFERENT SITUATION AS TO WHAT THE REMEDIES

7    MAY BE.  MAYBE THE REMEDY IN THAT CIRCUMSTANCE WOULD BE A VERY

8    SIMPLE ONE; SOMETHING SHORT OF CONTEMPT, OR WHATEVER OTHER

9    AUTHORITY IS ADDRESSED BY 45(E).

10         IT COULD BE, FOR EXAMPLE -- AND AGAIN, WE'RE JUST          -03:-

11    TALKING IN A VACUUM HYPOTHETICALLY AT THIS POINT -- IT COULD BE

12    AN INSTRUCTION TO THE JURY.  IT COULD BE THAT THE EVIDENCE WE

13    ARE SEEKING TO HAVE ADMITTED, WHICH IS FAIRLY NARROW AT THIS

14    POINT, IS DEEMED ADMITTED AND INTRODUCED INTO EVIDENCE.

15         **THE COURT:**  VERY WELL.          -03:-

16         **MR. ZELLER:**  SO I THINK 45(E) IS ADDRESSING A

17    PARTICULAR KIND OF ENFORCEMENT ISSUE THAT WE HAVE JUST NOT

18    CROSSED THE THRESHOLD FOR.  THAT'S WHY I DON'T THINK IT'S

19    PERTINENT TO THE ANALYSIS THAT THE COURT IS BASING TODAY; I

20    THINK THAT IS GOVERNED BY 45(C)3(A), WHICH MAKES VERY CLEAR          -03:-

21    THERE MUST BE A TIMELY MOTION.

22         HERE, YOUR HONOR, WE HAVE, NUMBER ONE, MGA'S COUNSEL

23    CONSENTED TO THE SERVICE OF THIS SUBPOENA IN CALIFORNIA.

24         **THE COURT:**  LET ME STOP YOU THERE.

25         I'VE TRIED TO GO THROUGH THIS MYSELF THIS WEEKEND IN          -03:-

```
 1  LIGHT OF MS. ANDERSON'S RESPONSE.
 2          YOU'RE RIGHT.  THEY DID NOT OBJECT OR FILE A MOTION
 3  TO QUASH THE SUBPOENA -- 'THEY' BEING COUNSEL FOR CARTER
 4  BRYANT -- WHEN IT WAS SERVED.  BUT WHEN IT WAS SERVED, TO MY
 5  UNDERSTANDING, HE WAS STILL A PARTY TO THIS CASE.
 6          MR. ZELLER:  ABSOLUTELY.
 7          THE COURT:  ALL RIGHT.
 8          IT WAS LATER THAT HE DROPPED OUT FROM BEING A PARTY.
 9  AND IN THE SETTLEMENT AGREEMENT ITSELF, OR AT LEAST THAT
10  PORTION WHICH IS PUBLIC, IT IS NOW UNDERSTOOD THAT SPECIFIC
11  PROVISIONS WERE MADE FOR HIS APPEARANCE IN THE TRIAL.  AND FOR
12  REASONS THAT ARE NOT PARTICULARLY CLEAR, BUT THE LANGUAGE IS
13  QUITE CLEAR IN THE SETTLEMENT AGREEMENT, AS I UNDERSTOOD IT,
14  THAT THE REQUIREMENT WAS FOR HIM TO APPEAR FOR THE CASE IN
15  CHIEF.
16          I KNOW THERE'S NOTHING IN THE SETTLEMENT AGREEMENT
17  WHICH SUGGESTS THAT SOMEHOW SUPERSEDES THE TRIAL SUBPOENA.  BUT
18  GIVEN HOW THIS PLAYS OUT CHRONOLOGICALLY, IT SEEMS, REASONABLY,
19  THAT THE SUBPOENA WAS ISSUED AT A TIME WHEN HE WAS A PARTY TO
20  THE CASE AND UNDER DIFFERENT CIRCUMSTANCES HE DROPS OUT OF
21  BEING A PARTY; PROVISIONS WERE MADE FOR HIS TESTIMONY; PURSUANT
22  TO THOSE PROVISIONS, HE DOES, IN FACT, TESTIFY, NOT JUST FOR A
23  DAY BUT FOR SEVERAL DAYS.  HE IS THEN EXCUSED FROM TESTIMONY.
24  AND I'M MINDFUL, ALTHOUGH I NEVER GOT TO THE POINT OF RULING ON
25  THIS LAST WEEK ON THE CASSIDY PARK ISSUE, IT CERTAINLY WAS
```

```
 1   WHERE I WAS GOING.  AND I GATHER MGA FIGURED OUT WHERE I WAS
 2   GOING ONCE I GOT THE LANGUAGE CONFIRMED THAT, IN FACT, THE
 3   COURT HAD TURNED TO THE WITNESS, AFTER TURNING TO COUNSEL, "IS
 4   THERE ANYTHING FURTHER?"  "THERE'S NOTHING FURTHER."  "YOU'RE
 5   EXCUSED."  AND THAT ENDS IT.                                     -03:-
 6          I KNOW YOU HAVE ARGUMENTS WITH RESPECT TO THAT, AND
 7   I'LL HEAR FROM YOU ON THAT IN A SECOND IN TERMS OF WHETHER OR
 8   NOT THERE WAS NEW INFORMATION CREATED THAT COULD NOT HAVE BEEN
 9   ANTICIPATED, BECAUSE I HAVE SOME CONCERNS ABOUT THAT.  BUT
10   DEALING FIRST WITH THIS JURISDICTIONAL ISSUE OF ENFORCING THE   -03:-
11   SUBPOENA, I DO THINK THE CHRONOLOGY OF EVENTS HERE CERTAINLY
12   SUGGESTS THAT SUBPOENA IS NO LONGER OR WAS NO LONGER IN PLAY
13   AFTER THE DISMISSAL, OR AT LEAST THAT'S AN ARGUMENT I'D LIKE
14   YOU TO RESPOND TO.
15          MR. ZELLER:  YES, YOUR HONOR.                            -03:-
16          THERE'S NO DOUBT THAT ALL THOSE POINTS THAT YOU
17   MENTIONED ARE COMPLICATING FEATURES HERE.  THIS IS OBVIOUSLY
18   WHY IT'S NOT JUST AN EASY, SIMPLE DECISION IN MANY RESPECTS.
19          THE COURT:  RIGHT.
20          MR. ZELLER:  BUT, FROM OUR PERSPECTIVE, AND TO           -03:-
21   PERHAPS OVERSIMPLIFY IT, WE STARTED WITH A SUBPOENA THAT WAS
22   ACCEPTED FOR SERVICE BY HIS COUNSEL IN CALIFORNIA.  HE WAS A
23   PARTY AT THE TIME -- AND I'LL GET TO THE FACT THAT THERE IS
24   CONTINUING JURISDICTION OVER EVEN PARTIES AFTER THEY ARE
25   DISMISSED, AND THERE IS NINTH CIRCUIT AUTHORITY ON THAT         -03:-
```

1    PROPOSITION, AND I WILL GET TO THAT.  BUT THE SECOND POINT IS

2    THAT HE WAS A PARTY AT THE TIME.

3           THEN, AS THE COURT IS POINTING OUT, PERHAPS WHILE ONE

4    WOULD NOT HAVE EXPECTED HIM TO RUN IN AND MOVE TO QUASH THE

5    SUBPOENA OR FILE OBJECTIONS AT THAT TIME, AS OF THE TIME OF THE        -03:-

6    SETTLEMENT, WHEN HE WAS NO LONGER A PARTY, IF HE HAD THOSE

7    OBJECTIONS, HE COULD HAVE BROUGHT THEM THEN AND HE COULD HAVE

8    BROUGHT THEM ANY TIME SINCE THEN.

9           **THE COURT:**  AND IF THE SETTLEMENT AGREEMENT HAD NOT

10   ADDRESSED THE ISSUE OF HIS TESTIMONY, I WOULD COMPLETELY AGREE        -03:-

11   WITH YOU.  IF IT LEFT OPEN OR IF THERE WAS A REFERENCE TO THE

12   SUBPOENA, OR EVEN IF THERE WASN'T A REFERENCE TO THE SUBPOENA,

13   BUT THE SETTLEMENT AGREEMENT SPECIFICALLY ADDRESSED THE ISSUE

14   OF HIS TESTIMONY AND SPELLED OUT THE PARAMETERS OF HIS

15   AGREEMENT.                                                            -03:-

16           **MR. ZELLER:**  WELL, THAT'S WHERE I DON'T AGREE,

17   YOUR HONOR.  I DON'T THINK IT'S SPELLING OUT THE PARAMETERS.

18           THE REASON BEHIND IT, FRANKLY, YOUR HONOR, IS THAT IT

19   WAS TO MAKE IT CLEAR HE NEEDED TO SHOW UP IN OUR CASE.  IT

20   WASN'T NECESSARILY, AND THERE'S NO LANGUAGE IN THERE SAYING,          -03:-

21   "THAT'S ALL YOU EVER HAVE TO DO."

22           THE REASON WHY WE WERE AT THAT TIME WERE FOCUSED ON

23   MAKING SURE THERE WASN'T SOME ARGUMENT HE DIDN'T HAVE TO SHOW

24   UP DURING THAT PORTION OF OUR CASE.  OBVIOUSLY, WITH REBUTTAL,

25   BY DEFINITION, IT'S UNANTICIPATED.                                    -03:-

1      DO I WISH THAT WE PUT IN "AND REBUTTAL, IF REQUESTED

2  BY MATTEL"?  YES, OF COURSE, BECAUSE WE WOULDN'T BE STANDING

3  HERE TODAY ON AT LEAST THAT ISSUE.

4      **THE COURT:**  RIGHT.

5      **MR. ZELLER:**  BUT I THINK, YOUR HONOR, IT WAS NOT          -03:-

6  INTENDED TO BE EXCLUSIONARY, AND I DON'T THINK NECESSARILY

7  THERE IS A DISPUTE OVER THAT AT THIS POINT.  CERTAINLY, THE WAY

8  BRYANT'S COUNSEL HAS TREATED THIS IS THAT THEY ARE TRYING TO

9  BASICALLY SAY, YOU KNOW, OF COURSE MATTEL AGREES WITH US.  BUT

10  REGARDLESS OF WHO'S AGREEING WITH WHOM, I THINK AT THE END OF     -03:-

11  THE DAY, BOTH PARTIES, BOTH MATTEL AND CARTER BRYANT, ARE IN

12  AGREEMENT THAT THE LANGUAGE OF THE SETTLEMENT AGREEMENT IS JUST

13  NOT DISPOSITIVE HERE.  AT LEAST IN TERMS OF THAT PORTION OF IT

14  WHERE IT SAYS "CASE IN CHIEF."

15      AND I DO THINK IT IS A FAIR POINT THAT THERE ISN'T          -03:-

16  ANYTHING THAT SAYS "AND HE HAS NO OTHER OBLIGATIONS."  BUT I DO

17  THINK THAT IN TERMS OF -- THERE'S TWO THINGS GOING ON HERE WITH

18  RESPECT TO THIS JURISDICTIONAL ISSUE.  ONE IS THE 100-MILE

19  RULE, WHICH, FOR VARIOUS REASONS, WE DON'T THINK IT APPLIES.

20  AND, IN FACT, EVEN IF IT DOES, BY THE WAY, IT ISN'T LIMITED TO    -03:-

21  RESIDENCE.  IT ALSO APPLIES TO INSTANCES WHERE SOMEONE

22  REGULARLY TRANSACTS BUSINESS IN PERSON.

23      I MEAN, MGA -- AND THEY CAN TELL US IF MY CALCULATION

24  IS WRONG -- BUT UNDER MAP QUEST, MGA'S HEADQUARTERS ARE 67

25  MILES FROM THE COURTHOUSE; THERE'S NO QUESTION THAT MR. BRYANT    -03:-

 1   REGULARLY TRANSACTS BUSINESS THERE WITH MGA AND HAS DONE SO IN

 2   CALIFORNIA; SO I THINK THAT THE RESIDENCE ISSUE SOMEWHAT

 3   OVERSIMPLIFIES IT; THERE ARE CLEARLY OTHER PRONGS UNDER RULE 45

 4   WHERE I DON'T THINK THAT THE 100-MILE RULE APPLIES.

 5        BUT TO CUT TO THE CHASE IN TERMS OF JURISDICTION, THE        -03:-

 6   FACT IS THAT CARTER BRYANT HAS CONSENTED TO THIS COURT'S

 7   JURISDICTION TIME AND TIME AGAIN.  HE DID IT WITH THE SERVICE

 8   OF THE SUBPOENA; HE DID IT WHEN HE CONSENTED TO THE STIPULATION

 9   OF DISMISSAL THAT WAS ENTERED IN THIS COURT, AND IT CLEARLY

10   CONTEMPLATES ONGOING OBLIGATIONS UNDER IT.  EVEN INDEPENDENT OF    -03:-

11   ENFORCEMENT OF THE SETTLEMENT, IT SAYS "HE WILL BE BOUND BY

12   INJUNCTIVE ORDERS ENTERED IN THE FUTURE BY THE COURT."  HE IS

13   BOUND BY PAST ORDERS; SO THERE'S NO QUESTION THAT THERE IS

14   CLEARLY A CONTEMPLATED PREDICATE OF PERSONAL JURISDICTION

15   THERE.                                                            -03:-

16        BUT ALSO, ULTIMATELY, YOUR HONOR, HE CONSENTED TO

17   JURISDICTION WHEN, NOT ONLY DID HE NOT OBJECT TO JURISDICTION

18   WHEN MATTEL SUED HIM IN CALIFORNIA, BUT HE HIMSELF BROUGHT

19   RELATED CLAIMS.  HE BROUGHT HIS OWN COMPLAINT; HE BROUGHT

20   COUNTERCLAIMS.  AND THE NINTH CIRCUIT HAS RULED THAT             -03:-

21   JURISDICTION CONTINUES TO THIS DAY OVER SOMEONE WHO'S EVEN NO

22   LONGER A PARTY AS TO MATTERS THAT RELATE TO THOSE SUITS, AND

23   THERE'S AT LEAST TWO CASES THAT ADDRESS THIS.  NUMBER ONE IS

24   MATTEL VERSUS GREINER AND HAUSSER, WHICH IS FOUND AT 354 F 3D

25   857, AND THAT'S A 2003 DECISION; BASICALLY THE DISCUSSION        -03:-

```
 1    STARTS AT PAGE 863.  AND THEN THERE'S ANOTHER DECISION CALLED
 2    THRELKELV, WHICH IS A 1974 DECISION BY THE NINTH CIRCUIT; IT
 3    CAN BE FOUND AT 496 F 2D 1101, AND IN A PARTICULAR, PAGE 1104;
 4    SO I THINK THERE'S MULTIPLE BASES ON WHICH MR. BRYANT IS SO
 5    SUBJECT TO THIS COURT'S AUTHORITY.                                -03:-
 6            THE COURT:  I'M GOING TO TAKE A LOOK AT THOSE CASES.
 7            LET'S MOVE ON TO THE MERITS OF BRINGING HIM BACK,
 8    PARTICULARLY IN LIGHT OF THE COURT HAVING EXCUSED HIM AFTER AN
 9    EXHAUSTIVE EXAMINATION IN THIS CASE.
10            MR. ZELLER:  YES, YOUR HONOR.                             -03:-
11            I THINK THAT TO KIND OF SIMPLIFY OR CUT THROUGH SOME
12    OF THE OTHER ISSUES, I'LL JUST BE FOCUSING ON THE RAINY DAY
13    RASCALS STUFF.
14            THE COURT:  AND TOWARDS THAT END, MR. QUINN'S
15    DECLARATION, HE TALKS ABOUT THE JEWEL BARBIE PICTURES WHICH THE  -03:-
16    COURT EXCLUDED LAST WEEK.
17            MR. ZELLER:  IT DID CERTAINLY TALK ABOUT THAT IN
18    PART, YOUR HONOR.  AND FOR THAT WE APOLOGIZE, BECAUSE I DON'T
19    KNOW IF IT WAS THAT IT HAPPENED THAT SAME DAY WHEN WE WERE
20    TRYING TO EDIT THE DECLARATION AND GET IT TO THE COURT.  BUT IN  -03:-
21    ANY EVENT, THE BASIS UPON THAT PHOTOGRAPH WITH THE 1998 DATE
22    THAT THE COURT HAS EXCLUDED, CERTAINLY WE'RE NOT RELYING ON
23    THAT, AND I THINK MGA IS AWARE OF THAT AT THIS JUNCTURE AS
24    WELL.
25            THE COURT:  LET'S FOCUS ON THE RAINY DAY RASCALS.        -03:-
```

1          I'LL FRONT MY CONCERN ON THIS.  AFTER READING ALL OF

2     THE PAPERS, THIS ISSUE DID COME OUT IN THE COURSE OF

3     CARTER BRYANT'S TESTIMONY.  IT WAS CLEAR TO THE COURT WHERE

4     BOTH -- AT LEAST I THOUGHT WHERE BOTH OF YOU WERE GOING ON

5     RAINY DAY RASCALS WAS TRYING TO TIME THIS THING VIS-À-VIS THIS      -03:-

6     NOTEBOOK; SO IT REALLY DIDN'T SURPRISE ME HOW THINGS PLAYED

7     OUT.  AND IF IT DIDN'T SURPRISE ME, I ASSUME IT DIDN'T SURPRISE

8     YOU ALL WHO KNOW THE CASE BETTER THAN I DO.

9          **MR. ZELLER:**  MAYBE IT'S AN INSTANCE IN WHICH WE

10    WEREN'T AS ASTUTE AS WE SHOULD HAVE BEEN.                          -03:-

11         **THE COURT:**  I DOUBT THAT, COUNSEL.

12         **MR. ZELLER:**  BUT I WILL SAY THIS:  IT IS A MATTER OF

13    HINDSIGHT, YOUR HONOR.  HINDSIGHT IS 20/20, AND I THINK THAT'S

14    LARGELY WHAT WE'RE DEALING WITH HERE.

15         THE COURT'S COMMENTS ABSOLUTELY WERE THERE, AND THEY        -03:-

16    ARE QUOTED BY MGA.

17         THE PROBLEM, HOWEVER, WITH RELIANCE ON THOSE COMMENTS

18    IS, THAT WAS AFTER CARTER BRYANT HAD ALREADY LEFT THE STAND;

19    THAT WAS IN THIS CONTEXT OF TALKING ABOUT MR. CUNNINGHAM; THAT

20    WAS ON THE 20TH; SO...                                            -03:-

21         **THE COURT:**  WE DISCUSSED RAINY DAY RASCALS WHILE

22    CARTER BRYANT WAS -- MR. PRICE ASKED HIM SPECIFIC QUESTIONS

23    ABOUT THE TIMING OF RAINY DAY RASCALS.

24         **MR. ZELLER:**  HE DID; AND LET ME BREAK IT UP.

25         **THE COURT:**  THE RELEVANCY OF THOSE QUESTIONS GO TO        -03:-

1    THIS VERY ISSUE.

2        **MR. ZELLER:**  THIS IS A MATTER OF, IF YOU LOOK AT ANY

3    PARTICULAR PIECE OF INFORMATION, YOU CAN FIND IT SOMEWHERE IN

4    THE TRIAL RECORD, THESE THINGS AREN'T JUXTAPOSED AND THEY ARE

5    NOT PUT TOGETHER UNTIL THE CUNNINGHAM CROSS-EXAMINATION.  SO        -03:-

6    WHAT WE'RE REALLY TALKING ABOUT IS THREE PIECES OF INFORMATION

7    FOR MGA'S ARGUMENTS TO BE CLEAR TO US IN TERMS OF ITS RELEVANCE

8    TO THIS CASE.

9        NUMBER ONE:  THAT HE DID THESE GREETING CARDS CALLED

10   RAINY DAY RASCALS.  AND BY THE WAY, YOUR HONOR, THERE'S NOTHING    -03:-

11   IN DISCOVERY IN TERMS OF INTERROGATORY RESPONSES OR IN

12   DEPOSITION THAT --

13       **THE COURT:**  THAT'S BOTH WAYS, THOUGH.

14       **MR. ZELLER:**  IT DOES.  BUT ALSO, I MEAN, AT THE BARE

15   MINIMUM, IT CUTS, I THINK, IN FAVOR OF US ON REBUTTAL, BECAUSE     -03:-

16   THE FACT IS THAT WHILE MGA HAS SAID IN ITS PAPERS THAT MATTEL

17   NEW FOR YEARS AND POINTS TO THINGS LIKE THE LYTER REPORT OR THE

18   KULLMAN REPORT.  THE FACT IS, JUDGE NONE OF THOSE THINGS SAY

19   THAT.  THEY DO NOT USE THE WORDS "RAINY DAY RASCALS."  THESE

20   THINGS ARE VERY VAGUE.                                             -03:-

21       BUT FUNDAMENTALLY, NUMBER TWO, WE ALSO HAD TO KNOW

22   THAT THEY WERE DONE IN 1998.  THAT INFORMATION WAS NOT KNOWN TO

23   US PREVIOUSLY UNTIL CARTER BRYANT TESTIFIED.

24       **THE COURT:**  RIGHT.  WELL, IT CAME OUT DURING HIS

25   TESTIMONY.                                                         -03:-

1    **MR. ZELLER:**  RIGHT.  BUT NUMBER THREE -- THIS IS THE

2    THIRD PIECE OF INFORMATION WE HAD TO KNOW BEFORE ITS RELEVANCE

3    BECAME CLEAR TO US -- IS THAT THOSE DRAWINGS WERE AMONG THE

4    IMPRESSIONS THAT WERE IN THE BLACK NOTEBOOK.

5    **THE COURT:**  MR. CUNNINGHAM TESTIFIED HE SAW THOSE          -03:-

6    WHEN HE WAS GOING THROUGH THE FIRST TIME.  YOUR EXPERT WAS WELL

7    AWARE OF THOSE LONG BEFORE THE TRIAL.

8    **MR. ZELLER:**  RIGHT.  BUT WHAT YOU'RE TALKING ABOUT

9    IS, AGAIN, KNOWING SPECIFIC PIECES OF INFORMATION RATHER THAN

10   COMBINING THEM.  THAT'S WHAT I'M SAYING.  WE DID NOT HAVE          -03:-

11   REASON TO KNOW -- FIRST OF ALL, THE FIRST TWO PIECES OF

12   INFORMATION ARE SPRUNG ON US DURING CARTER BRYANT'S EXAMINATION

13   BY MGA, BY THE WAY.  THIS ISN'T DURING OUR EXAMINATION; THIS IS

14   DURING MGA'S WHERE THEY ARE ASKING QUESTIONS THAT ARE OUTSIDE

15   OF THE SCOPE OF THE DIRECT, CONSISTENT, OF COURSE, WITH THE          -03:-

16   COURT'S PROCEDURE ON THAT.

17   **THE COURT:**  THAT'S RIGHT.

18   LET'S SKIP A STEP HERE AND GO TO WHAT IS IT ACTUALLY

19   THAT YOU WANT.  BECAUSE THE LAST CONSIDERATION THAT THE COURT

20   HAS IS THE SEPARATE ISSUE OF WHETHER OR NOT -- SHORT OF CALLING          -03:-

21   CARTER BRYANT HIMSELF -- IS THERE SUFFICIENT EVIDENCE -- LET ME

22   JUST SKIP TO THE CHASE:

23   10624-OO1, THE RAINY DAY RASCALS, APRIL 4, 1999,

24   APPARENTLY SIGNED BY CARTER BRYANT, PRODUCED BY CARTER BRYANT

25   IN DISCOVERY, IS THERE ANY AUTHENTICITY DISPUTE ON THIS          -03:-

1  EXHIBIT?

2         MR. ZELLER:  AS I UNDERSTAND IT, YOUR HONOR, IN TERMS

3  OF THE FORMAL WRITTEN OBJECTIONS, AUTHENTICITY IS DISPUTED BY

4  MGA.  TO CUT TO THE CHASE, THE ONE THING WE REALLY WANT FROM

5  MR. BRYANT -- AND THIS WOULD BE IN LIEU OF, FRANKLY, ANYTHING     -03:-

6  ELSE OR ANY OF THE JEWEL ISSUES OR ANYTHING ELSE -- IS THAT IF

7  THAT DOCUMENT CAME INTO EVIDENCE, WE WOULD NOT NEED MR. BRYANT

8  IN REBUTTAL.

9         THE COURT:  THAT'S WHERE I'M GOING.  I'D LIKE TO HEAR

10 -- WE CAN SHORT CIRCUIT THIS WHOLE THING -- THE STANDARD I USED   -03:-

11 ON THE JEWEL DRAWING WAS THAT IF AUTHENTICITY IS NOT STIPULATED

12 TO, THEN WE NEED A WITNESS.

13        NOW LET ME HEAR FROM THE DEFENSE.  I'M GOING TO

14 INTERRUPT MR. ZELLER JUST FOR THAT ONE POINT.

15        MR. SLOAN:  WE DON'T THINK IT'S APPROPRIATE.            -03:-

16        THEY HAD SPECIFICALLY IDENTIFIED THIS AS AN EXHIBIT

17 THAT THEY WERE GOING TO USE.  THEY IDENTIFIED IT.  IT WAS

18 DESIGNATED AS AN EXHIBIT THAT THEY WERE GOING TO USE WITH

19 CARTER BRYANT'S DIRECT EXAMINATION.

20        WE THINK IT'S TOTALLY INAPPROPRIATE FOR THEM NOW TO     -03:-

21 USE THE REBUTTAL AS A ROUSE TO GET IN EVIDENCE WHICH THEY COULD

22 HAVE AND WERE ON NOTICE THAT THEY APPARENTLY WANTED TO GET IN

23 IN HIS DIRECT EXAMINATION.  WITHOUT A SPONSORING WITNESS, WE

24 DON'T THINK THIS SHOULD COME IN AND WE DON'T THINK THEY HAVE

25 SATISFIED THE GROUNDS FOR BRINGING MR. BRYANT BACK AS A        -03:-

```
 1   REBUTTAL WITNESS.

 2         I THINK WE'VE SET THAT FORTH CLEARLY IN OUR PAPERS.

 3         THE COURT:  LET ME ASK YOU THE SAME QUESTIONS I ASKED

 4   MR. QUINN OR MR. PRICE EARLIER ON THE JEWEL DRAWING.

 5         WHAT IS THE BASIS FOR DISPUTING THE AUTHENTICITY OF     -03:-

 6   THIS DOCUMENT?

 7         MAYBE IT WAS YOU, MR. ZELLER.  I KNOW I PRESSED

 8   SOMEBODY LAST WEEK ON THIS, AND SO I'M GOING TO ASK YOU THE

 9   SAME QUESTION.

10         MR. ZELLER:  I REMEMBER IT WELL.                       -03:-

11         THE COURT:  IT WAS MR. ZELLER; SO LET ME ASK YOU THE

12   SAME THING, MR. SLOAN:  WHAT IS THE BASIS FOR DISPUTING THE

13   AUTHENTICITY OF THIS DOCUMENT?

14         MR. SLOAN:  I'D HAVE TO THINK ABOUT THAT.

15         I'M SAYING I DON'T THINK THAT'S REALLY THE RELEVANT    -03:-

16   ISSUE.

17         THE COURT:  I UNDERSTAND.  BUT THE COURT DOES.  SO

18   I'M ASKING YOU A QUESTION.  IF YOU CAN ANSWER IT, ANSWER.  IF

19   YOU CAN'T, TELL ME YOU CAN'T ANSWER.

20         MR. SLOAN:  ONE SECOND, YOUR HONOR.                    -03:-

21         (BRIEF PAUSE. )

22         MR. SLOAN:  YOUR HONOR, IT'S UNCLEAR TO ME WHAT

23   POSITION WE WOULD TAKE ON AUTHENTICITY.  I THINK OUR ISSUE

24   REALLY IS A QUESTION OF -- IT'S INAPPROPRIATE TO BRING THIS IN.

25         THEY ARE GOING TO TRY TO CONFLATE THIS AND SAY IT'S    -03:-
```

1    THE SAME DRAWING, THE SAME SERIES OF DRAWINGS.

2           I THINK THE TESTIMONY -- ALTHOUGH I'M NOT SURE

3    BECAUSE WE HAVEN'T SPECIFICALLY ASKED MR. BRYANT ABOUT IT --

4    WOULD BE THAT HE MAY BE ABLE TO IDENTIFY THIS.  BUT I THINK

5    IT'S A DIFFERENT SERIES OF DRAWINGS.                          -03:-

6           THE FACT OF THE MATTER IS --

7           **THE COURT:**  WHAT'S YOUR BASIS FOR SAYING THAT,

8    COUNSEL?

9           **MR. SLOAN:**  WHAT'S MY BASIS FOR SAYING WHAT?

10          **THE COURT:**  YOU JUST TOLD THE COURT THAT IT'S A     -03:-

11   DIFFERENT SERIES OF DRAWINGS.  I'M ASKING YOU WHAT IS YOUR

12   BASIS FOR SAYING THAT?

13          **MR. SLOAN:**  IT'S PARTIALLY BASED ON THE FACT THAT IF

14   YOU JUST LOOK AT THEM, THEY ARE DIFFERENT.

15          MY UNDERSTANDING IS THAT --                            -03:-

16          **THE COURT:**  HOW IS THIS DIFFERENT FROM THE DRAWINGS?

17          **MR. SLOAN:**  THOSE ARE LINE SKETCHES, VERY EARLY

18   DRAWINGS.  THIS IS A DIFFERENT DRAWING.

19          THE FIGURE HAS SOME SIMILARITY; IT'S A CHILD OR SOME

20   SORT OF A PERSON IN A RAIN HAT.  BUT THE ONES THAT ARE AT ISSUE  -03:-

21   THAT WERE IN THE NOTEBOOK WERE VERY EARLY SKETCHES, VERY ROUGH

22   SKETCHES.  THIS IS A FINISHED GREETING CARD.

23          **THE COURT:**  THAT'S WHY I DON'T THINK THIS EVIDENCE IS

24   ALL THAT CONVINCING AT THE END OF THE DAY.  THAT'S JUST MY OWN

25   SUBJECTIVE ASSESSMENT.                                        -03:-

1      **MR. SLOAN:**  I WOULD AGREE WITH YOU.  BUT THE

2   IMPORTANT POINT THAT WE'RE MAKING HERE IS THAT THEY HAD A FULL

3   AND FAIR OPPORTUNITY.  THEY WERE CLEARLY ON NOTICE.

4          **THE COURT:**  COUNSEL, YOU'VE MADE THAT POINT.

5      I REALLY DID READ YOUR PAPERS.  I REALLY DO                    -03:-

6   UNDERSTAND YOUR POINT.  I'M ASKING YOU A QUESTION.  EITHER

7   ANSWER IT OR SAY YOU CAN'T ANSWER IT AND SIT DOWN.  THEN I'M

8   GOING TO GO BACK TO MR. ZELLER AND THEN I WILL ASK YOU TO COME

9   UP.

10         **MR. SLOAN:**  YOUR HONOR, IT'S A DOCUMENT THAT WAS --    -03:-

11  IT'S PRODUCED BY MR. BRYANT, BUT IT'S A DIFFERENT SCENE.  AND

12  AT THIS POINT I CAN'T SPEAK TO ITS AUTHENTICITY; I CAN ONLY

13  MAKE THE POINTS I'VE ALREADY MADE.

14         **THE COURT:**  VERY GOOD.

15     MR. ZELLER, YOU MAY CONTINUE.                                 -03:-

16         **MR. ZELLER:**  AND THAT WOULD BE THE REASON WHY WE

17  WOULD WANT MR. BRYANT BACK.

18         **THE COURT:**  BEYOND THIS EXHIBIT, WHAT ELSE DO YOU

19  ANTICIPATE?  BECAUSE WHAT I DON'T THINK IS FAIR GAME AT THIS

20  POINT -- I'LL JUST COME OUT WITH THE CONCERN THAT I HAVE ABOUT  -03:-

21  THIS -- IS THAT YOU'RE CALLING HIM TO END BY IMPEACHING

22  MR. BRYANT.  AND IF YOU'RE SIMPLY CALLING HIM TO IMPEACH HIM ON

23  SOMETHING, AS OPPOSED TO ACTUALLY OFFER SUBSTANTIVE EVIDENCE,

24  SUCH AS THIS DRAWING, WHICH I DO THINK IS PRETTY WEAK ON THE

25  POINT THAT YOU'RE SUGGESTING, BECAUSE ALL IT IS IS THERE WAS    -03:-

1    SOMETHING IN 1999; THERE MAY HAVE BEEN ANOTHER RAINY DAY

2    RASCALS IN 2000, 2002, I DON'T THINK THAT REALLY ESTABLISHES

3    THAT THERE WEREN'T PRELIMINARY SKETCHES BEING MADE IN 1998, ONE

4    WAY OR THE OTHER; SO I DON'T KNOW HOW IMPORTANT THIS PARTICULAR

5    PIECE OF EVIDENCE IS TO THAT ARGUMENT.

6           IT HAS SOME RELEVANCE.  IT CLEARLY APPEARS TO BE A

7    RAINY DAY RASCALS' DRAWING.  I THINK THAT ANYONE OBJECTIVELY

8    ASSESSING THIS WOULD COME TO THAT CONCLUSION, OR AT LEAST IT'S

9    A REASONABLE INFERENCE THAT THE JURY COULD REACH.  THE FACT

10   IT'S A DIFFERENT SCENE DOESN'T SUGGEST TO ME THAT THAT'S A

11   LEGITIMATE BASIS NOT TO DISPUTE THE AUTHENTICITY OF IT.

12          BUT AGAIN, IF THIS IS ALL WE'RE BRINGING

13   CARTER BRYANT OUT TO TESTIFY ON, THERE IS SO MUCH ELSE, AS YOU

14   DESCRIBED, COMPLICATING FACTORS WHICH I CAN'T SEE THAT AS

15   JUSTIFying.

16          WHAT ELSE WOULD CARTER BRYANT SUBSTANTIVELY

17   CONTRIBUTE TO THE TIMing OF THE PARTICULAR DRAWING that was

18   REVEALED in HIS NOTEBOOK AND TYING THAT TO 1998?

19          **MR. ZELLER:**  WELL, I THINK IT IS THIS, YOUR HONOR.

20   IT REALLY IS THIS EXHIBIT THAT WE'RE DISCUSSING, IS THE EXTENT

21   OF WHAT WE WOULD BE ASKING MR. BRYANT.  IN PARTICULAR, GETTING

22   IT INTRODUCED.  THERE IS, AT THE MOMENT, A DISPUTE ABOUT

23   AUTHENTICITY.  I DON'T KNOW WHAT THE BASIS OF THAT IS, BUT

24   THERE IS AN OBJECTION.

25          MR. BRYANT, AS FAR AS WE CAN ASCERTAIN, IS THE ONLY

1    PERSON ON EARTH WHO CAN REALLY IDENTIFY THIS.

2         **THE COURT:**  WAS THIS EVER SHOWN TO MR. BRYANT DURING

3    THE DEPOSITION?

4         **MR. ZELLER:**  IT WAS NOT, YOUR HONOR; IT WAS NOT.

5         HE HAS MANY HUNDREDS AND HUNDREDS OF DRAWINGS THAT              -03:-

6    HAVE BEEN PRODUCED IN THIS CASE; SO IT'S NOT AS THOUGH THIS

7    THING HAD A BIG RED FLAG ON IT AND WAS DELIVERED TO US.

8         **THE COURT:**  I UNDERSTAND.

9         **MR. ZELLER:**  BUT THAT REALLY IS, FROM OUR

10   PERSPECTIVE -- AND I DON'T DISAGREE WITH THE COURT THAT           -03:-

11   OBVIOUSLY IT IS A BASIS FOR ARGUMENT.  I WOULD ASSESS THE

12   STRENGTH A LITTLE BIT DIFFERENTLY CONCERNING THAT IT'S THE ONE

13   DRAWING THAT'S A RAINY DAY RASCALS ONE THAT HAS A DATE ON IT.

14   THERE ARE NO OTHERS THAT WE HAVE EVER FOUND; THIS IS IT.

15        I THINK IT IS PROBATIVE CERTAINLY OF THIS TIMING             -03:-

16   ISSUE.

17        AND I THINK THE COURT WILL RECALL, TOO, IN TERMS OF,

18   YOU KNOW, THIS POINT AGAIN THAT WHILE THERE MAY HAVE BEEN BITS

19   AND PIECES, THAT PEOPLE COULD HAVE, I GUESS, TRIED TO PUT

20   TOGETHER AND UNDERSTOOD -- NUMBER ONE, THIS IS AGAINST THE        -03:-

21   BACKGROUND THAT WE HAD CONTENTION INTERROGATORIES IN THIS CASE

22   WHERE WE ASKED THEM TO IDENTIFY THE FACTS -- THIS IS BOTH TRUE

23   OF MR. BRYANT AND MGA -- OF THE FACTS THEY WERE RELYING ON TO

24   PROVE INVENTION IN 1998.  NOT A SINGLE MENTION IS MADE OF RAINY

25   DAY RASCALS.                                                      -03:-

```
 1          THE COURT:  THAT'S NOT ALL THAT SURPRISING, GIVEN THE

 2    WAY THIS CAME OUT.  AND THIS CAME OUT THROUGH YOUR EXPERT WHO

 3    IDENTIFIED AND WHO SAW THIS.  IT WAS ONLY AFTER EXPERT ANALYSIS

 4    OF THE NOTEBOOK REVEALED THESE INDENTED LINES THAT KIND OF THE

 5    RELEVANCE OF THIS ALL CAME TOGETHER.  THAT'S YOUR ARGUMENT.  SO    -03:-

 6    I WOULD HARDLY FAULT MGA FOR NOT DISCLOSING THIS IN A

 7    CONTENTIONS INTERROGATORY.

 8          MR. ZELLER:  I'M NOT NECESSARILY TRYING TO FAULT

 9    THEM.  WHAT I'M TRYING TO SAY IS THAT IN TERMS OF 'WHAT DID WE

10    KNOW' AND 'WHEN SHOULD WE HAVE KNOWN IT.'                         -03:-

11          THE FACT IS THERE'S NO BACKGROUND, THERE'S NO BASIS,

12    FOR US TO KNOW THAT IMPRESSIONS ABOUT A PARTICULAR GREETING

13    CARD DURING THE COURSE OF TRIAL ARE ABOUT RAINY DAY RASCALS.

14    THOSE WORDS ARE NOT UTTERED BY MR. BRYANT, THEY ARE NOT IN THE

15    INTERROGATORY RESPONSES, UNTIL WE GET TO TRIAL.                   -03:-

16          NOW, ONE THING THAT THEY WERE -- THE QUESTIONS WE

17    ASKED ABOUT RAINY DAY RASCALS, BY THE WAY, THAT WAS ON THAT

18    DAY; THAT WAS ON JUNE 20TH, THE SAME DAY THAT MR. BRYANT

19    TESTIFIED TO.  AND IT'S QUITE CLEAR.  IN FACT, MR. SLOAN WAS,

20    AS THE COURT WILL RECALL, STOOD UP, WITH QUITE DRAMATIC EFFECT,   -03:-

21    TO SORT OF PUT ALL THIS TOGETHER.

22          I'M QUOTING FROM THE TRIAL TRANSCRIPT, AND THIS IS

23    DURING CUNNINGHAM'S EXAMINATION; 3396, LINE 21 THROUGH 24.

24          "AND, SIR, WERE YOU AWARE THAT MR. BRYANT TESTIFIED

25    EARLIER THIS WEEK, IN FACT, JUST THIS MORNING, THAT THIS IMAGE    -03:-
```

1   HERE, EXHIBIT 15393, WAS IN FACT A GREETING CARD THAT HE

2   CREATED IN 1998?"

3            SO, I MEAN, THE PLACE WHERE THIS IS ALL SORT OF

4   BROUGHT TOGETHER AND THE RELEVANCE OF IT IS MADE CLEAR TO US,

5   IS DURING THE COURSE OF MR. CUNNINGHAM'S EXAMINATION.  AND THE          -03:-

6   COURT, OF COURSE, WILL RECALL THAT MR. CUNNINGHAM WAS AFTER

7   MR. BRYANT LEFT THE STAND.

8            THERE WERE MANY THINGS THAT, OBVIOUSLY FROM OUR

9   PERSPECTIVE, MGA HAS RAISED DURING THE COURSE OF THIS CASE,

10  THAT WE DON'T THINK IS RELEVANT AND WE HAVEN'T RESPONDED TO          -03:-

11  POINT BY POINT.  BUT THE POINT BECAME CLEAR THAT THIS WAS

12  SOMETHING THEY WERE HEAVILY RELYING UPON, REALLY, BY THE TIME

13  YOU GET TO MR. CUNNINGHAM; SO I DON'T THINK THAT

14  MGA'S APPROACH, WHICH IS, YOU COULD PIECE TOGETHER ANY PIECE OF

15  INFORMATION OR PIECES OF INFORMATION FROM DISPARATE SOURCES,          -03:-

16  AND YOU COULD HAVE FIGURED OUT; ITS RELEVANCE MEANS YOU SHOULD

17  BE PRECLUDED FROM REBUTTAL.  THAT'S A VERY HIGH STANDARD.

18          **THE COURT:**  BUT MR. PRICE WAS ACTUALLY QUESTIONING

19  MR. BRYANT ABOUT THE TIMING OF RAINY DAY RASCALS.  IF THAT WAS

20  RELEVANT FOR ANYTHING, IT WOULD HAVE BEEN RELEVANT FOR THIS          -03:-

21  TIMING ISSUE.

22          **MR. ZELLER:**  AND THAT'S FAIR ENOUGH, YOUR HONOR.

23          BUT WHAT MR. BRYANT DID NOT DO WAS PUT IT IN THE

24  NOTEBOOK.  THAT'S WHAT I'M SAYING.

25          YOU HAVE TO KNOW THE -- WE HAD TO KNOW THE --          -03:-

1          **THE COURT:**  WHAT DID YOU THINK IT WAS COMING OUT FOR?

2          **MR. ZELLER:**  THERE ARE MANY THINGS THAT THEY SAY THAT

3   ARE NOT, FROM OUR PERSPECTIVE, NOT RELEVANT THAT HAVE BEEN

4   MINED BY MGA DURING THE COURSE OF THIS THAT WE HAVE NOT

5   RESPONDED TO.  WE DIDN'T THINK IT WAS RELEVANT TO ANYTHING,

6   FRANKLY.  I MEAN, THIS CASE IS ABOUT THE CREATION OF BRATZ

7   DOLLS.

8          BUT THERE ARE LOTS OF THINGS THEY BROUGHT OUT WHERE

9   THE RELEVANCE OF IT, TO US, IS NOT -- WE DON'T THINK IT'S

10  RELEVANT AT ALL.

11         BUT FUNDAMENTALLY, YOUR HONOR, I THINK IF THE COURT

12  LOOKS AT THE TIMING OF HOW THIS HAPPENED, TOO.  I MEAN,

13  MR. PRICE IS ASKING THOSE QUESTIONS ON THE 20TH.  HE'S NOW

14  ASKING QUESTIONS ON WHAT IS ESSENTIALLY, YOU KNOW, RE OR

15  RECROSS --

16         **THE COURT:**  I THINK I UNDERSTAND YOUR ARGUMENT.

17         THE EASIEST THING TO DO HERE IS FOR THE PARTIES TO

18  STIPULATE TO THIS ONE EXHIBIT, WHICH LIKE I SAY, IS NOT ALL

19  THAT POWERFUL TO BEGIN WITH, BUT CERTAINLY, IS THE ONLY BASIS

20  THAT I CAN SEE OF BRINGING MR. BRYANT OUT.

21         LET ME HEAR FROM MS. ANDERSON; YOU'VE BEEN VERY

22  POLITELY QUIET; AND THEN I'LL GIVE MGA AN OPPORTUNITY.

23         **MR. SLOAN:**  I WAS GOING TO ADDRESS THOSE PARTICULAR

24  POINTS, YOUR HONOR.

25         **THE COURT:**  SURE.

1          MR. SLOAN:  I THINK, YOUR HONOR, THERE'S SOME AMOUNT

2     OF -- I DON'T KNOW WHETHER IT'S DISINGENUOUS OR JUST INCREDIBLE

3     OVERSIGHT, BUT --

4          THE COURT:  LET'S CONSIDER IT AN INCREDIBLE

5     OVERSIGHT.                                                          -03:-

6          MR. SLOAN:  LET'S DO THAT.

7          THE COURT:  I'D RATHER NOT USE DISINGENUOUS HERE,

8     SINCE WE DON'T --

9          MR. SLOAN:  I SHOULDN'T HAVE SAID THAT.

10          MATTEL'S SINGLE MOST IMPORTANT FACT FOR ESTABLISHING     -03:-

11     THAT THOSE DRAWINGS WERE DONE IN 1998 HAS BEEN, FROM THE

12     GET-GO -- AND THIS IS MENTIONED IN THE WALL STREET JOURNAL

13     ARTICLE, WHICH THEY SPOKE TO THE WALL STREET JOURNAL ARTICLE

14     REPORTER ABOUT BEFORE THIS TRIAL; IT WAS MENTIONED VERY

15     SIGNIFICANTLY IN MR. QUINN'S OPENING STATEMENT -- IS THAT THEY  -03:-

16     FOUND THE IMPRESSION OF THOSE TWO EARLY BRATZ SKETCHES,

17     EXHIBITS 542 AND 5-39, ON PAGES 61 AND 63 OF THE NOTEBOOK.

18          MR. CUNNINGHAM, WHO EXAMINED THOSE VERY PAGES WITH

19     HIS INDENTATION MATERIALIZER, IN SEPTEMBER, SAID HE FOUND THE

20     VERY SAME THINGS, AND HE SAID THAT HE TOLD MATTEL ABOUT THAT.   -03:-

21          NOW, THAT ALONE SHOULD HAVE PUT THEM ON NOTICE.  IF

22     THEY ARE GOING TO GO TO THE BANK ON THE ISSUE THAT THE MOST

23     IMPORTANT SALIENT FACT PUT THOSE DRAWINGS IN THE NOTEBOOK,

24     WHICH THEY CLAIM IS FROM 1999 WHICH WE DISPUTE -- THE WAY THEY

25     PUT IT IN THE NOTEBOOK IS FROM THE IMPRESSIONS ON THOSE PAGES   -03:-

1    -- IT WAS CLEARLY INCUMBENT UPON THEM TO CHECK AND SEE WHAT THE

2    SOURCE OF THOSE DRAWINGS WERE.

3              AND BY THE WAY, MR. BRYANT WAS DEPOSED FOR TWO DAYS

4    IN LATE JANUARY, 2008, APPROXIMATELY THREE MONTHS AFTER

5    MR. CUNNINGHAM MADE THOSE FINDINGS AND APPARENTLY TOLD MATTEL'S

6    ATTORNEYS THAT.

7              FURTHERMORE, YOUR HONOR, ON MARCH 17, 2008, WE

8    SUBMITTED TWO, NOT ONE BUT TWO, EXPERT REPORTS FROM DR. LYTER

9    AND FROM ANOTHER EXPERT WHO'S NAME IS ROBERT KULLMAN; BOTH OF

10   THOSE EXPERTS FOUND THE VERY SAME -- THEY DIDN'T NECESSARILY

11   AGREE WITH THE FACT THAT THERE WERE IMPRESSIONS OF THE BRATZ

12   FIGURES FOUND IN THOSE PAGES, BUT BOTH OF THEM FOUND, ON THOSE

13   PAGES OR VERY NEARBY PAGES, IMPRESSIONS OF THE TWO RAINY DAY

14   RASCALS CARDS; SO THEY WERE CLEARLY ON NOTICE THAT THIS WAS

15   SIGNIFICANT.  IF THEY WERE GOING TO GO TO THE JURY AND SAY THE

16   SINGLE MOST SALIENT FACT IS THE FACT THAT THOSE IMPRESSIONS

17   WERE IN THAT NOTEBOOK, FOR THEM TO COME UP NOW AND SAY, 'WELL,

18   WE DIDN'T BOTH, THOUGH, TO LOOK AT WHAT THOSE OTHER CARDS WERE

19   THAT MGA'S EXPERTS AND OUR OWN EXPERT FOUND IMPRESSED ON THE

20   SAME DOCUMENT.'

21             THAT JUST DEFIES BELIEF.

22             THE OTHER THING, YOUR HONOR, AS YOU'VE POINTED OUT, I

23   MEAN, CLEARLY, MR. PRICE HAD A FULL AND FAIR OPPORTUNITY TO

24   EXAMINE MR. BRYANT ABOUT THIS.  I KNOW THAT MR. ZELLER IS

25   SAYING, 'WELL, HE CAME UP THAT VERY MORNING; HE ONLY HAD A

1   COUPLE OF MINUTES.'

2          THE REALITY IS THAT MR. BRYANT, IF MY MEMORY IS

3   CORRECT, FIRST TESTIFIED ABOUT THE RAINY DAY RASCALS AND SAID

4   THEY WERE DONE IN 1998.  BY THE WAY, HE SAID, YOU REMEMBER, HE

5   HELD UP THE NOTEBOOK PAPER AND HE TALKED ABOUT THE PERFORATION,          -03:-

6   AND HE SAID THESE WERE FROM A NOTEBOOK.  HE DIDN'T SAY

7   POSITIVELY THAT HE KNEW THEY WERE FROM THAT NOTEBOOK, BUT THE

8   IMPLICATION WAS CLEAR.  APPARENTLY YOUR HONOR UNDERSTOOD IT AS

9   WELL.  THAT WAS ON THE 17TH, YOUR HONOR, WHICH I BELIEVE WAS

10  THE TUESDAY.  REMEMBER, WE HAD TESTIMONY ON TUESDAY AND          -03:-

11  WEDNESDAY, AND THEN WE HAD A BREAK ON THURSDAY.

12          **THE COURT:**  THE COURT EVEN MENTIONED AT SIDE-BAR, I

13  THINK SOMEONE POINTS THIS OUT IN THE OPPOSITION, THAT THE COURT

14  INDICATED THAT THERE HAD BEEN TESTIMONY ABOUT THE RAINY DAY

15  RASCALS WERE FROM 1998.          -03:-

16          **MR. SLOAN:**  RIGHT.  AND MR. PRICE THEN, ON THE

17  MORNING OF JUNE 20TH, SAID -- THIS IS PAGE 3279 OF THE

18  TRANSCRIPT THE MORNING OF JUNE 20:

19          QUESTION:  "THERE WAS SOME TESTIMONY ABOUT THESE

20  RAINY DAY RASCALS GREETING CARDS.  DO YOU RECALL THAT?          -03:-

21          ANSWER:  YES.

22          QUESTION:  ARE YOU AWARE OF ANY EVIDENCE THAT THOSE

23  WERE DONE IN 1998, OTHER THAN YOUR TESTIMONY?

24          ANSWER:  I THINK I HAVE SOME FINISHED DRAWINGS OF THE

25  RAINY DAY RASCALS THAT ARE DATED IN 1998.          -03:-

```
 1              QUESTION:  ARE THEY EXHIBITS HERE, DO YOU KNOW?

 2              ANSWER:  I DON'T KNOW."

 3         MR. SLOAN:  CLEARLY, YOUR HONOR, IF THERE WAS A PLACE

 4    TO ASK ABOUT EXHIBIT 10624, THAT WAS THE TIME TO ASK.  THEY

 5    WERE ON NOTICE.  THEY HAD IT ON THEIR EXHIBIT LIST.  THEY HAD

 6    IT ON THEIR EXHIBIT LIST AS A DESIGNATION FOR MR. BRYANT.  THEY

 7    HAD THREE FULL DAYS FROM WHEN MR. BRYANT FIRST TESTIFIED ABOUT

 8    THIS AND CLEARLY PUT IT IN THE NOTEBOOK.  THEY HAD OVER THREE

 9    MONTHS SINCE MGA SUBMITTED ITS REPORTS FROM ITS TWO EXPERTS

10    SAYING THAT THEY FOUND THOSE DRAWINGS THERE.  AND THEIR OWN

11    EXPERT HAD FOUND THE SAME THING SIX MONTHS BEFORE.

12              SO IF THE PURPOSE OF REBUTTAL IS TO REBUT

13    SOMETHING -- I MEAN, MY UNDERSTANDING IS THAT THE PURPOSE IS TO

14    REBUT SOMETHING THAT COMES IN THE DEFENDANT'S CASE IN CHIEF.

15    THIS IS CLEARLY SOMETHING THAT CAME OUT AND CAME OUT PROPERLY,

16    IN THE PROPER COURSE OF CROSS-EXAMINATION OF MR. BRYANT IN THE

17    PLAINTIFF'S CASE IN CHIEF.

18              THE COURT:  THOSE LINES ARE NOT SO CLEARLY DRAWN IN A

19    TRIAL LIKE THIS WHERE THE COURT HAS, FOR PURPOSES OF JUDICIAL

20    EFFICIENCY, COMBINED THE TWO.  I COULD HAVE, IF I WANTED TO,

21    SAID, MATTEL CALLS CARTER BRYANT AND THEN HE GOES BACK TO

22    MISSOURI, AND THEN ANYTHING BEYOND THE SCOPE OF THAT DIRECT

23    EXAMINATION, THEN MGA WOULD HAVE TO CALL CARTER BRYANT BACK A

24    SECOND TIME.  I DIDN'T THINK THAT WAS THE RIGHT WAY TO DO IT.

25         MR. SLOAN:  I UNDERSTAND.  BUT, YOUR HONOR, FIRST OF
```

1    ALL, IT CLEARLY CAME OUT.  THEY HAD PLENTY OF TIME TO RESPOND

2    TO IT.

3            THE COURT:  THAT'S YOUR BETTER ARGUMENT.  I WAS JUST

4    RESPONDING TO YOU.

5            MR. SLOAN:  THE OTHER ARGUMENT IS -- WHICH I DON'T      -03:-

6    AGREE WITH MATTEL ON -- THIS WAS CLEARLY WITHIN THE PROPER

7    SCOPE OF CROSS-EXAMINATION.  EVEN IF YOUR HONOR TOOK A ROLE

8    THAT IF YOU'RE GOING TO GO INTO A TOTALLY NEW TOPIC, YOU'RE

9    GOING TO HAVE TO CALL THE WITNESS IN YOUR OWN CASE.

10           I WOULD SUBMIT THAT BOTH THE CROSS-EXAMINATION OF       -03:-

11   MR. BRYANT AND OF MR. CUNNINGHAM, IT WAS WELL WITHIN THE SCOPE

12   OF PROPER IMPEACHMENT OF THOSE WITNESSES.

13           THE COURT:  THANK YOU, COUNSEL.

14           MS. ANDERSON?

15           MS. ANDERSON:  YES.  THANK YOU, YOUR HONOR.             -03:-

16           I DON'T WANT TO REPEAT ANYTHING OF THE ARGUMENTS THAT

17   HAVE BEEN MADE ON THE SUBJECT OF WHETHER IT'S PROPER REBUTTAL,

18   ESPECIALLY BECAUSE WE WERE NOT THERE.  WE WOULDN'T BE THE

19   APPROPRIATE ONES TO MAKE THAT ARGUMENT.

20           BUT I WOULD LIKE TO JUST BRIEFLY STATE A POINT ON       -03:-

21   BEHALF OF MR. BRYANT WHO WE'RE SPECIALLY APPEARING FOR TODAY,

22   IF THAT'S OKAY.

23           THE COURT:  RIGHT.  AND IT WOULD BE PARTICULARLY

24   HELPFUL IF YOU WOULD ADDRESS THE JURISDICTIONAL ISSUES THAT

25   WERE RAISED AND RESPONDED TO BY MR. ZELLER.                    -03:-

```
 1          MS. ANDERSON:  YES.  I'LL LIMIT MYSELF TO THAT.

 2          I THINK IT'S IMPORTANT, IN EVALUATING THE QUESTION OF

 3   WHETHER MR. BRYANT SHOULD BE BROUGHT BACK TO TESTIFY IN

 4   REBUTTAL, IS NOT TO CONFLATE ISSUES OF SOME OF THE CASES THAT

 5   MR. ZELLER CITED AND ARGUMENTS THAT HE MADE, I BELIEVE, WERE      -03:-

 6   MORE DIRECTED TOWARDS THE QUESTION OF JURISDICTION IN TERMS OF

 7   WHETHER A PERSON COULD BE SUED IN A PARTICULAR STATE.

 8          WHAT WE ARE HERE TODAY ON IS WHETHER THERE'S A BASIS

 9   TO BRING A PERSON, WHO'S NOT A PARTY TO THIS CASE, WHO IS A

10   THIRD PARTY, WHETHER THEY CAN BE BROUGHT TO TESTIFY HALFWAY       -03:-

11   ACROSS THE COUNTRY IN THE REBUTTAL CASE.  THERE'S TWO POSSIBLE

12   WAYS IN THIS CASE WHERE IT COULD HAPPEN, AND NEITHER OF THEM

13   ARE SUPPORTED BY THE LAW.

14          WE HAVE THE SETTLEMENT.  AND I THINK THAT MATTEL DOES

15   NOT CONTEST THAT MR. BRYANT, HAVING BEEN HERE FOR ALMOST TWO      -03:-

16   WEEKS IN RIVERSIDE, TESTIFIED, SATISFIED HIS OBLIGATION TO

17   APPEAR AND TESTIFY IN MATTEL'S CASE IN CHIEF, WHICH I THINK HE

18   FULLY COMPLIED WITH.

19          THE ONLY REMAINING QUESTION RAISED BY MATTEL'S MOTION

20   IS WHETHER OR NOT THERE IS A VALID TRIAL SUBPOENA OUTSTANDING     -03:-

21   TO MR. BRYANT THAT HE MUST COMPLY WITH AND IF HE HAS NOT

22   ALREADY SATISFIED.  WE BELIEVE WE'VE SET FORTH VERY CLEAR

23   AUTHORITY ON THIS QUESTION.

24          TRIAL SUBPOENAS LIKE THIS ARE NOT ENFORCEABLE AGAINST

25   THE PARTY WHO'S SO FAR AWAY OUT OF STATE -- A NONPARTY WHO IS     -03:-
```

1   SO FAR AWAY OUT OF STATE.

2          **THE COURT:**  WHAT YOU ADDRESSED, JUST TO FOCUS ON THE

3   ISSUE, WAS THE RESIDENCY ISSUE.

4          **MS. ANDERSON:**  YES.

5          **THE COURT:**  WHAT YOU DIDN'T ADDRESS IN YOUR PAPERS          -03:-

6   WAS THE TRANSACTION BUSINESS.

7          **MS. ANDERSON:**  YES.  ACTUALLY, IT HAS TO BE -- TO

8   SATISFY THAT PARTICULAR PRONG OF THAT DECISION, IT HAS TO BE

9   REGULARLY AND IN-PERSON CONDUCTING BUSINESS WITHIN THE

10  PARTICULAR RADIUS.  AND THE ONLY EVIDENCE THAT EXISTS ON THIS        -03:-

11  SUBJECT -- AND THERE'S AMPLE EVIDENCE ON THIS BECAUSE TESTIMONY

12  WAS TAKEN IN DEPOSITION AND PROBABLY AT THE TRIAL ITSELF --

13  MR. BRYANT CONDUCTS HIS BUSINESS FROM MISSOURI, OUT OF HIS

14  HOME; HE HAS A HOME OFFICE THERE.  HE REGULARLY DOES HIS

15  DRAWINGS AND SCANS THEM IN AND SENDS THEM OFF TO MGA'S OFFICES;     -03:-

16  SO THERE'S NO EVIDENCE AT ALL THAT HE REGULARLY PARTICIPATES IN

17  BUSINESS ACTIVITIES IN PERSON WITHIN THE STATE OF CALIFORNIA.

18         **THE COURT:**  THE IN-PERSON REQUIREMENT ATTACHES TO THE

19  REGULARLY TRANSACTION BUSINESS.  THE EMPLOYEE IS A SEPARATE

20  PART AND DOES NOT HAVE THAT IN-PERSON REQUIREMENT.                  -03:-

21         AS I UNDERSTAND IT, THE EVIDENCE HAS INDICATED THAT

22  THERE IS SOME EMPLOYMENT RELATIONSHIP BETWEEN MGA AND CARTER

23  BRYANT.  OR AM I MISTAKEN ON THAT?

24         **MS. ANDERSON:**  RESPECTFULLY, YOUR HONOR, I BELIEVE

25  THE EVIDENCE IS CLEAR THAT HE HAS NEVER BEEN AN EMPLOYEE OF        -03:-

1    MGA.  IN FACT, IT WAS A VERY IMPORTANT ISSUE FOR MR. BRYANT

2    THAT HE BE AN INDEPENDENT CONTRACTOR.  HE HAS HIS OWN BUSINESS.

3    HE IS NOT, AND TO MY KNOWLEDGE, NEVER HAS BEEN AN EMPLOYEE OF

4    MGA.

5            **THE COURT:**  YOU'RE USING THE PHRASE 'EMPLOYEE.'  ONE          -03:-

6    CAN BE EMPLOYED AS AN INDEPENDENT CONTRACTOR; CORRECT?

7            **MS. ANDERSON:**  WELL, I BELIEVE -- MY UNDERSTANDING

8    WITHIN THIS ANALYSIS, IS THAT THIS WOULD NOT COVER A PERSON

9    LIKE MR. BRYANT WHO'S NOT AN EMPLOYEE; AND I MEAN THAT IN THE

10   LEGAL SENSE, EMPLOYEE, AS OPPOSED TO SOMEONE RUNNING THEIR OWN        -03:-

11   BUSINESS.

12           **THE COURT:**  IS THERE ANY AUTHORITY ON THAT POINT?

13           **MS. ANDERSON:**  YOUR HONOR, I DON'T HAVE ANY RIGHT IN

14   FRONT OF ME RIGHT NOW, BUT I CAN PROVIDE IT, IF THAT WOULD BE

15   HELPFUL TO THE COURT.                                                  -03:-

16           **THE COURT:**  I'LL TAKE A LOOK MYSELF.

17           **MS. ANDERSON:**  ONE SLIGHT COMPLICATION HERE,

18   YOUR HONOR, AND I DON'T KNOW THE BACKGROUND SINCE WE'RE NOT

19   THERE PERSONALLY, BUT WHEN WE HAD RECEIVED AN E-MAIL FROM

20   MATTEL'S COUNSEL LATE IN THE EVENING ON JUNE 30TH INDICATING          -03:-

21   THEIR DESIRE THAT MR. BRYANT RETURN IN REBUTTAL, WE HAD SENT AN

22   E-MAIL THE VERY NEXT DAY SAYING IT WAS OUR UNDERSTANDING HE HAD

23   SATISFIED HIS OBLIGATION UNDER THE SETTLEMENT.

24           **THE COURT:**  I SAW THAT; RIGHT; YOU ATTACHED IT TO

25   YOUR DECLARATION.                                                      -03:-

```
 1          MS. ANDERSON:  WE NEVER DID GET ANY AUTHORITY IN

 2   RESPONSE UNTIL WE GOT THE MOTION THAT THIS PARTICULAR ISSUE HAD

 3   NEVER BEEN RAISED BY MATTEL.

 4          THE COURT:  VERY GOOD.

 5          MS. ANDERSON:  SO IN TERMS OF THE ENFORCEABILITY,        -03:-

 6   IT'S OUR UNDERSTANDING IT'S NOT AN ENFORCEABLE SUBPOENA.

 7          WERE THERE EVER AN ENFORCEABLE SUBPOENA, IT'S OUR

 8   VIEW THAT HE HAS SATISFIED HIS OBLIGATION UNDER IT, HAD HE BEEN

 9   DISMISSED FROM THE STAND.  IT SOUNDS, FROM THE ARGUMENT OF

10   COUNSEL, THAT ANY ISSUE UPON WHICH MATTEL SEEKS TO HAVE FOUND    -03:-

11   THAT IS SOMETHING THAT IS FAIRLY RAISED AND WOULDN'T BE PROPER

12   FOR HIS REBUTTAL.

13          I DON'T KNOW IF THIS MATTERS TO YOUR HONOR, BUT UNDER

14   THE STATUTE, MOTIONS TO SQUASH SUBPOENA OUTSIDE THE PROPER

15   SCOPE HERE MUST BE GRANTED PURSUANT TO THE STATUTE BECAUSE THEY  -03:-

16   ARE ULTIMATELY UNENFORCEABLE, REGARDLESS UNDER THE 45(E)

17   PROVISION, AND WE WOULD MAKE AN ORAL MOTION TO QUASH IF

18   YOUR HONOR FEELS THAT'S THE APPROPRIATE PROCEDURE.  BUT IT

19   APPEARS TO US IT WAS NOT NECESSARY, GIVEN THE STATUTE.

20          THE COURT:  AGAIN, I DON'T GIVE LEGAL ADVICE.  I JUST     -03:-

21   MAKE DECISIONS.

22          MS. ANDERSON:  WE'RE JUST PRESERVING IT FOR THE

23   RECORD.

24          THE COURT:  EITHER THE MOTION IS BEFORE ME OR IT IS

25   NOT BEFORE ME.  IT'S NOT KIND OF BEFORE ME OR HELD IN RESERVE.   -03:-
```

```
 1              DO YOU UNDERSTAND, COUNSEL?

 2         MS. ANDERSON:  OKAY.  THEN WE'RE MAKING ALTERNATIVELY

 3    MAKING AN ORAL MOTION TO QUASH, YOUR HONOR.

 4         THE COURT:  VERY WELL.

 5         MR. ZELLER, ANYTHING FURTHER FROM MATTEL?          -03:-

 6         MR. ZELLER:  I'M STARTING TO RETHINK THE POINT ABOUT

 7    THE CONTENTION INTERROGATORIES AS IF MGA'S POSITION REALLY IS

 8    THAT THIS WAS, QUOTE, "THE MOST IMPORTANT FACT," END QUOTE, IN

 9    THE CASE, THEN IT BECOMES A LITTLE BIT HARD TO UNDERSTAND WHY

10    IT WASN'T IN THE CONTENTION INTERROGATORIES.          -03:-

11         THE COURT:  I THINK MR. SLOAN MAY HAVE OVERSTATED.

12    THE MOST IMPORTANT FACT IN THE CASE IS THE TIMING ISSUE; THAT'S

13    THE MOST IMPORTANT FACT.  IT'S MATTEL'S POSITION THAT THIS

14    NOTEBOOK IS IMPORTANT TO THAT TIMING ISSUE.  SO I DON'T THINK

15    IT'S REALLY MGA'S POINT.  MGA CERTAINLY RECOGNIZES THE TIMING   -03:0

16    IS IMPORTANT.

17         MR. ZELLER:  BUT THE PARTICULAR ISSUE HERE THAT WE'RE

18    FACING ISN'T 'WAS THE NOTEBOOK IMPORTANT?' 'WAS THE TIMING

19    IMPORTANT?'  BUT RATHER, THIS ISSUE ABOUT THE PARTICULARS OF

20    RAINY DAY RASCALS, 1998, AND BEING IN THAT NOTEBOOK ALTOGETHER.   -03:0

21    AND AS MR. SLOAN ACKNOWLEDGED, WHEN CARTER BRYANT TESTIFIED, HE

22    DIDN'T SAY IT WAS THE BLACK NOTEBOOK; HE JUST WAS TALKING ABOUT

23    A PERFORATION IN A NOTEBOOK.

24         THE COURT:  THAT'S AN ARGUMENT THAT YOU'RE GOING TO

25    BE ABLE TO MAKE.                                        -03:0
```

1    **MR. ZELLER:**  IT ALSO SEEMS TO ME THAT -- I MEAN, THE

2    COURT WILL RECALL THAT WHEN CARTER BRYANT WAS TESTIFYING, IT

3    DIDN'T APPEAR THAT THEY WERE MAKING SO MUCH AN ISSUE ABOUT

4    RAINY DAY RASCALS AS THE TIMING, PER SE.  HE KEPT ON TALKING

5    ABOUT, "AND YOU TORE THOSE OUT OF YOUR NOTEBOOK."  LIKE IT WAS     -02:-

6    SOMEHOW TO SHOW THAT IMMATERIAL THINGS WERE BEING TAKEN OUT OF

7    THAT NOTEBOOK, TOO.  IN OTHER WORDS, IT WAS JUST A PRACTICE HE

8    HAD, REGARDLESS OF WHETHER IT WAS BRATZ OR WHETHER IT WAS

9    SOMETHING ELSE.

10    **THE COURT:**  THAT'S NOT HOW IT CAME ACROSS TO THE              -02:-

11    COURT.  THE ONLY RELEVANCE FOR THAT IS THE TIMING.  WE'RE ALL

12    TRYING TO -- WHETHER IT WAS LITTLE BANK STATEMENTS OR CHECKS OR

13    WHATEVER, THE BIG DISPUTE IS WHEN THIS NOTEBOOK WAS CREATED.

14    **MR. ZELLER:**  HE STILL DOESN'T SAY THE BLACK NOTEBOOK.

15    HE JUST DOESN'T TIE IT THERE.                                    -02:-

16    **THE COURT:**  FAIR ENOUGH, COUNSEL.

17    **MR. ZELLER:**  THAT'S WHAT I'M TRYING TO RAISE.

18    ONE BRIEF POINT, TOO, IN TERMS OF, YOU KNOW, I GUESS

19    THE VARIOUS ATTEMPTS TO FAULT US ABOUT SOME OF THIS.  THERE WAS

20    A TIME LIMIT ON CARTER BRYANT'S DEPOSITION.  WE WERE GIVEN -- I  -02:-

21    CAN'T RECALL THE NUMBER OF HOURS, BUT IT WAS ALSO TO COVER THE

22    ENTIRE UNFAIR COMPETITION CASE; SO IT'S NOT LIKE WE WERE GIVEN

23    OCEANS OF TIME WHERE WE COULD GO THROUGH PAGE BY PAGE AND ASK

24    HIM ABOUT EACH OF HIS GREETING CARD DRAWINGS; SO I THINK THAT'S

25    SOMETHING.                                                       -02:-

1     **THE COURT:**  BUT THE POINT WELL MADE BY MR. SLOAN IS

2  THAT, AT LEAST BASED ON THE TESTIMONY FROM MR. CUNNINGHAM AT

3  TRIAL, HE WAS ALERTED TO THIS, OR HE ALERTED TO THIS WELL

4  BEFOREHAND.  THIS WOULD HAVE BEEN A BASIS FOR PERHAPS REOPENING

5  THE DEPOSITION -- I DON'T EVEN WANT TO SAY THAT.          -02:-

6     CERTAINLY, THE IDEA THAT YOU HAD NO IDEA OF THE

7  RELEVANCE OF TINY RASCALS TO THE TIMING ISSUE, I THINK IS JUST

8  UNDERCUT BY MR. PRICE'S STATEMENT AT SIDE-BAR, BY THE COURT'S

9  OBSERVATION AT SIDE-BAR, AND BY THE TESTIMONY THAT CAME OUT.

10  THAT'S THE STRUGGLE I'M HAVING IN TERMS OF YOU NOW SAYING,      -02:-

11  GOSH, IT WASN'T UNTIL WE GOT TO MR. CUNNINGHAM THAT WE FIGURED

12  THIS OUT.

13     **MR. ZELLER:**  BUT AGAIN, IT'S ALL THREE OF THOSE

14  POINTS TOGETHER.  CLEARLY CARTER BRYANT TESTIFIED, RAINY DAY

15  RASCALS, 1998.  THERE'S NO DISPUTE THAT WAS THE FIRST TIME HE      -02:-

16  MENTIONED IT.  IT WASN'T IN DISCOVERY; SO IT'S DURING THE

17  COURSE OF THIS TRIAL.

18     **THE COURT:**  BUT IT'S MORE THAN THAT.  IT WAS RAINY

19  DAY RASCALS IN '98, AND, I DID THOSE DRAWINGS IN THE NOTEBOOK.

20     I UNDERSTAND HE DIDN'T SAY THE BLACK NOTEBOOK, BUT      -02:-

21  WE -- WE HAD TWO NOTEBOOKS IN PLAY AT THAT TIME.

22     **MR. ZELLER:**  PRECISELY.  THEY KEPT ON EMPHASIZING THE

23  PERFORATIONS.  THE OTHER NOTEBOOK IS THE ONE WITH THE

24  PERFORATIONS.  AND AGAIN, YOUR HONOR, AND I'M NOT SUGGESTING

25  THAT AS WE ALL SIT HERE NOW OR STAND HERE NOW, WE CAN'T SAY IN      -02:-

1   HINDSIGHT, 20/20, NO QUESTION WE COULD HAVE KNOWN.  I'M NOT

2   MAKING THAT ARGUMENT.  BUT IT'S ALL THREE OF THOSE THINGS

3   TOGETHER AT THE TIME.

4           AND MY OTHER POINT, WHICH I DON'T THINK IS DISPUTED,

5   IS THAT MR. PRICE WAS -- HIS QUESTIONS WERE ON THE 20TH.  THEY   -02:-

6   WERE NOT ON THE 17TH.  AND CARTER BRYANT IS AT THAT POINT STILL

7   TESTIFYING.  HE IS TESTIFYING, CLEARLY, TO SOMETHING WE DIDN'T

8   ELICIT.  WE DIDN'T ASK HIM ABOUT ALL THAT OTHER GREETING CARD

9   STUFF.  WE'RE FOCUSED ON THE DRAWINGS AND THE DOLLS.

10          AND ALSO, WHEN MR. SLOAN POINTS TO THE LYTER AND   -02:-

11  KULLMAN REPORTS -- I ASKED THE COURT TO LOOK AT THEM, THERE'S

12  NO MENTION OF RAINY DAY RASCALS; THAT IS NOT MENTIONED IN

13  THERE.  THERE'S NO MENTION OF 1998 OR THE TIMING.  IT JUST

14  SAYS -- IT'S A LONG LIST OF THINGS, BUT IT JUST SAYS THERE ARE

15  IMPRESSION OF GREETING CARDS, AND THINGS LIKE THAT.  THERE'S NO   -02:-

16  SPECIFIC TIES TO THESE THINGS TOGETHER WHERE THEY ARE GOING TO

17  COME IN AND SAY 'THIS NOTEBOOK HERE' -- THAT'S WHAT I DEFY MGA

18  TO SHOW.

19          WHERE WAS IT WHERE SOMEBODY SAYS 'THIS BLACK NOTEBOOK

20  HERE, THE BLACK NOTEBOOK, HAS IMPRESSIONS IN IT THAT ARE RAINY   -02:-

21  DAY RASCALS FROM 1998?'

22          THAT IS WHAT WE'RE RELYING ON.

23          **THE COURT:**  AND YOU'RE PERHAPS CORRECT THAT YOU'RE

24  NOT GOING TO FIND THAT.

25          COUNSEL, ANYTHING FURTHER?   -02:-

```
 1         MR. ZELLER:  JUST THAT I WOULD EMPHASIZE THAT THIS IS
 2   A MATTER OF THE DISCRETION OF THE COURT.  THIS IS REALLY THE
 3   COURT'S CALL IN TERMS OF -- THERE'S NO PARTICULAR LEGAL
 4   STANDARD, I THINK, THAT THE NINTH CIRCUIT HAS ARTICULATED.
 5   IT'S REALLY A MATTER OF FAIRNESS.                              -02:-
 6         THEY RAISED THIS ISSUE.  WE WANT TO GET THIS DOCUMENT
 7   IN.  AND IN TERMS OF THE BURDEN TO MR. BRYANT, PRESUMABLY
 8   SOMETHING COULD BE WORKED OUT.  OBVIOUSLY, IF IT'S STIPULATED
 9   TO, THAT'S ONE THING.  BUT I KNOW WE TALKED IN CONNECTION WITH
10   MR. BLACK ABOUT POTENTIALLY DOING IT BY VIDEO.  THOSE ARE      -02:-
11   THINGS WE WOULD CERTAINLY BE WILLING TO EXPLORE.  BECAUSE IT IS
12   NOT OUR INTENTION, AS THE COURT WAS CONCERNED ABOUT, JUST TO
13   PUT MR. BRYANT UP THERE TO IMPEACH AND ATTACK HIM SOME MORE.
14   WE JUST WANT TO GET THIS DOCUMENT IN.
15         THE COURT:  IT'S A QUESTION OF THIS -- I APPRECIATE      -02:-
16   THAT IT'S COME DOWN TO THAT.  THAT'S WHY I TRIED TO CUT TO THE
17   CHASE WITH THIS DOCUMENT EARLIER.
18         JUST WITH RESPECT TO THAT DOCUMENT -- BECAUSE I THINK
19   I'M NOT GOING TO CALL CARTER BRYANT OUT HERE; HE'S NOT GOING TO
20   FLY OUT HERE; HE'S NOT GOING TO.  HE'S GOT HIS DAD'S SURGERY ON -02:-
21   THURSDAY, THE FOURTH OF JULY.  I'M NOT GOING TO BRING HIM OUT
22   HERE.  NOT NECESSARILY EVEN -- THERE'S A SERIOUS LEGAL QUESTION
23   ABOUT THE PROPRIETY OF DOING SO, AS MS. ANDERSON POINTS OUT.
24   ALTHOUGH, I THINK AT THE END OF THE DAY, THAT MAY NOT BE QUITE
25   AS CUT AND DRY AS SHE'S SUGGESTING.                            -02:-
```

1      BUT BE THAT AS IT MAY, I'M NOT GOING TO BRING HIM OUT

2   HERE.  IT'S ALL JUST ONE DOCUMENT.  AND THE ONLY EXPLANATION AS

3   TO WHY IT'S NOT AUTHENTIC AT THIS POINT IS THAT IT'S A

4   DIFFERENT SCENE THAN THE SCENE THAT WAS IN THE NOTEBOOK, UNLIKE

5   THE JEWEL DOCUMENT, WHERE THERE'S ACTUALLY A FACTUAL BASIS TO   -02:-

6   SUGGEST THAT THE DATE IS A MISTAKE.  I'M NOT HEARING THAT

7   THERE'S ANY FACTUAL BASIS OR EVIDENCE THAT WOULD SUGGEST THAT

8   THIS DATE, APRIL 4, 1999, IS A MISTAKE OR THAT THIS IS NOT

9   CARTER BRYANT'S SIGNATURE OR THAT THIS IS NOT HIS DRAWING.  I

10  GUESS THAT'S WHERE I'M STRUGGLING.   -02:-

11      THE EASIEST WAY OF RESOLVING THIS AND NOT HAVING

12  CARTER BRYANT INVOLVED IN THIS AT ALL IS A STIPULATION.  A

13  SECOND, I SUPPOSE EASIER WAY -- I'LL JUST LAY THIS OUT -- IT

14  WOULD BE SIMPLY HAVING A 5-MINUTE VIDEO HOOKUP WITH MR. BRYANT

15  IN WHICH THIS IS PLACED IN FRONT OF HIM AND HE CAN EITHER   -02:-

16  AUTHENTICATE IT OR NOT AUTHENTICATE IT, AND BE DONE WITH IT.

17      I CAN'T REALLY THINK OF ANY OTHER WAY OF DOING IT.

18  BOTH SEEM TO BE RELATIVELY QUICK AND PAINLESS WAYS OF GETTING

19  THIS THING DONE.

20      **MS. AGUIAR:**  YOUR HONOR, I'LL ADDRESS YOUR QUESTION   -02:-

21  ABOUT THE STIPULATION.

22      I UNDERSTAND YOUR HONOR TO BE SAYING THAT BASED ON

23  VARIOUS LEGAL GROUNDS THAT HAVE BEEN SET FORTH, YOU DON'T

24  BELIEVE IT'S APPROPRIATE TO BRING MR. BRYANT OUT.

25      **THE COURT:**  MORE THE EQUITABLE GROUNDS THAN THE LEGAL   -02:-

1    GROUNDS.  I'M NOT SO SURE IF THE COURT REALLY IS WITHOUT

2    JURISDICTION TO BRING MR. BRYANT OUT.  BUT I DO AGREE WITH YOUR

3    ARGUMENTS AND MS. ANDERSON'S ARGUMENTS, THAT GIVEN HOW MUCH

4    TIME HE HAS ALREADY TESTIFIED; THE EXTENSIVE NATURE OF THAT

5    TESTIMONY; THAT HE'S BACK IN MISSOURI; THAT HIS DAD IS                -02:-

6    SUFFERING AFTER SURGERY; I'M REALLY DISINCLINED TO ORDER HIM TO

7    APPEAR.

8         **MS. AGUIAR:**  I APPRECIATE THAT, YOUR HONOR.

9         I WAS JUST TRYING TO SEPARATE THE TWO ISSUES, IF WE

10   COULD, JUST FOR A MOMENT.  IN OTHER WORDS, THAT THERE ARE A         -02:-

11   NUMBER OF ISSUES THAT HAVE BEEN LAID OUT BY BOTH MR. BRYANT'S

12   COUNSEL AND BY MGA AS TO WHY HE SHOULD NOT COME OUT.  THEN

13   WE'RE LEFT SEPARATELY WITH THE ISSUE, ASSUMING HE DOES NOT COME

14   OUT, THAT WE HAVE THIS DOCUMENT THAT MATTEL WANTS TO GET IN.

15        THE FIRST POINT WITH RESPECT TO THAT IS, PERHAPS,          -02:-

16   THAT THESE HAVE SIMPLY NOT BEEN THE RULES OF THE ROAD, AS

17   YOU'VE REFERRED TO THEM IN THIS TRIAL; THAT IF THE PARTIES --

18   AND I THINK YOUR HONOR HAS SAID, IN WORDS OR SUBSTANCE -- THAT

19   A DOCUMENT WILL COME IN BY STIP, BUT ONLY IF THE PARTIES BOTH

20   AGREE IT CAN COME IN.                                          -02:-

21        **THE COURT:**  RIGHT.  SO THAT IS THE RULE OF THE ROAD

22   HERE.  I'M APPLYING IT HERE IT AS WELL.

23        **MS. AGUIAR:**  I JUST DO WANT TO POINT THAT OUT,

24   BECAUSE I DO THINK -- AND THE SECOND POINT I WOULD MAKE ABOUT

25   THIS DRAWING -- AND I DIDN'T WANT TO GIVE THE IMPRESSION AND I    -02:-

```
 1   DON'T THINK MR. SLOAN WANTED TO GIVE THE IMPRESSION OF THE FACT

 2   THAT THIS IS A DIFFERENT SCENE GOES TO AUTHENTICITY.  THAT'S

 3   CERTAINLY NOT WHAT WE WERE SAYING.

 4          THE COURT:  THAT'S WHAT YOU SAID, AND I WROTE IT

 5   DOWN.                                                          -02:-

 6          MS. AGUIAR:  I THINK HE WAS TRYING TO ADDRESS -- YOU

 7   HAD ASKED A COUPLE OF QUESTIONS ABOUT THE DOCUMENT, AND I THINK

 8   HE WAS TRYING TO ADDRESS YOUR POINT ABOUT --

 9          THE COURT:  FINE.  GIVE ME WHAT DOES GO TO

10   AUTHENTICITY?                                                  -02:-

11          MS. AGUIAR:  WHAT I WANT TO SAY IS THAT WITH REGARD

12   TO THE DATE, FOR EXAMPLE, AND THIS CAME UP WITH THE JEWEL

13   DRAWING, AND YOU SAID, WELL, YOU KNOW, MR. ZELLER STOOD UP HERE

14   AND I SUPPOSE MADE SOME SORT OF PROFFER TO YOU; BASED ON WHAT,

15   I'M NOT SURE; BUT HE SAID, WELL, YOUR HONOR, IT'S CLEARLY A     -02:-

16   MISTAKE.

17          I DON'T REALLY UNDERSTAND HOW IT'S CLEARLY A MISTAKE.

18          THE COURT:  BELIEVE ME, I HAVE THOUGHT A LOT ABOUT

19   THIS ISSUE, BECAUSE IT IS KIND OF INTERESTING TO COME DOWN TO

20   THESE TWO DIFFERENT DRAWINGS.  THE DIFFERENCE IS THERE IS NO    -02:-

21   WITNESS WHO HAS BEEN IDENTIFIED BY EITHER PARTY WHO CAN SPEAK

22   TO THE ISSUE OF THE DATE ON THE JEWEL DRAWING, WHERE THERE IS A

23   WITNESS WHO HAS BEEN IDENTIFIED BY BOTH PARTIES THAT CAN SPEAK

24   TO THE ISSUE OF THE DATE ON THIS.

25          IF I HAD ANY SENSE -- AND I WOULD STILL GIVE YOU        -02:-
```

1   LEAVE TO BRING THIS TO THE COURT'S ATTENTION -- IF YOU HAVE ANY

2   CLUE, IF YOU HAVE ANY REASON TO BELIEVE THAT SOMEBODY AT MATTEL

3   -- I THINK I SAID THIS THE OTHER DAY -- IF THE THOUSANDS OF

4   EMPLOYEES HAS ANY IDEA WHO PUT THAT DATE ON THERE, I'LL GIVE

5   YOU LEAVE TO BRING THAT PERSON IN.                                     -02:-

6        **MS. AGUIAR:**  AND WHAT WE DID -- BECAUSE, OBVIOUSLY,

7   WE'RE NOT INSIDE MATTEL, AND WE DON'T KNOW -- WE USED THE ONLY

8   MECHANISM THAT WAS AVAILABLE TO US THAT WE BELIEVED COULD GET

9   THAT IN; WE CALLED A CUSTODIAN OF RECORD.

10       **THE COURT:**  AND THAT PERSON HAD NO IDEA; SO I'M          -02:-

11  ACCEPTING NOT ON MR. ZELLER'S PROFFER, BUT ON THE EVIDENCE THAT

12  IS BEFORE ME.  ALL THIS COURT CAN EVER DO IS RULE ON THE

13  EVIDENCE THAT IS BEFORE IT.  AND BASED ON THE EVIDENCE BEFORE

14  IT, THERE IS NOBODY, INCLUDING THE PERSON MOST KNOWLEDGEABLE --

15  AND I HAVE NO REASON TO BELIEVE THAT THE PERSON MOST             -02:-

16  KNOWLEDGEABLE IS LYING OR SUPPRESSING EVIDENCE -- IF THERE'S

17  EVIDENCE OF THAT, BRING THAT TO THE COURT'S ATTENTION.

18       BUT IN THE ABSENCE OF ANY EVIDENCE THAT THERE'S

19  ANYBODY ON THE FACE OF THIS EARTH THAT KNOWS ANYTHING ABOUT

20  THAT DOCUMENT -- I'M NOT GOING TO -- I CAN'T FORCE ITS           -02:-

21  SUBMISSION.

22       THIS, THERE DOESN'T SEEM TO BE ANY DISPUTE BY EITHER

23  PARTY, THAT THIS IS CARTER BRYANT'S SIGNATURE.  UNLESS YOU'RE

24  TELLING ME IT'S NOT.  THAT'S WHAT I WAS ASKING YOU.

25       IS THERE AN AUTHENTICITY ISSUE HERE?                        -02:-

```
 1        MS. AGUIAR:  I'M NOT SUGGESTING THIS IS NOT A DRAWING

 2   DONE BY MR. BRYANT; I'M NOT SUGGESTING THAT'S NOT HIS

 3   SIGNATURE.  BUT JUST CLOSING UP THE POINT ABOUT THE JEWEL

 4   DRAWING -- I'LL LOOK BACK AT THE TRANSCRIPT, BUT I'M PRETTY

 5   SURE AFTER THE EXCHANGE WITH MR. ZELLER THAT YOUR HONOR SAID    -02:-

 6   SOMETHING TO THE EFFECT OF, 'WELL, THE PRESUMPTION IS THEN THAT

 7   THIS IS A MISTAKE.'

 8        AND I THINK THAT MR. ZELLER CANNOT BRING ANYONE IN

 9   HERE TO SAY IT'S A MISTAKE.  HE'S JUST SAYING THEY HAVEN'T, AT

10   THIS MOMENT, EVEN THOUGH THEY HAVE PRODUCED THE DOCUMENT FROM    -02:-

11   THEIR FILES -- AND WHEN ATTORNEYS DO DOCUMENT PRODUCTIONS,

12   YOUR HONOR, IN BIG, COMPLEX CIVIL LITIGATION, THEY USUALLY SAY

13   'THIS BATES RANGE THROUGH THIS BATES RANGE CAME FROM SO AND

14   SO'S FILES.  BECAUSE WHEN YOU GO TO COLLECT DOCUMENTS FROM

15   PEOPLE, THAT'S WHAT YOU DO; YOU MAKE RECORDS.                   -02:-

16        AND THEY ARE SAYING THAT THEY NOW CAN'T PLACE IT.

17        I'M SURE MGA CANNOT PLACE EVERY SINGLE DOCUMENT FROM

18   ITS FILES AND TELL YOU WHERE IT CAME FROM.  BUT MR. ZELLER JUST

19   SAID 'WE DON'T KNOW WHERE THIS CAME FROM.'  HE DIDN'T SAY 'WE

20   KNOW THAT THIS IS NOT CORRECT.'  HE WAS JUST SAYING 'I CAN'T    -02:-

21   GIVE YOU A PERSON WHO CAN TELL YOU WHERE IT CAME FROM.'

22        THE COURT:  NO.  HE DID MORE THAN THAT FOR THE COURT

23   TO HAVE REACHED THE CONCLUSION, NOT A MISTAKE, THAT HE DID

24   PROFFER.  AND AGAIN, IF THERE'S ANY EVIDENCE OUT THERE, I WILL

25   GIVE YOU LEAVE TODAY OR TOMORROW TO INTRODUCE IT, THAT THAT     -02:-
```

1    DRAWING WAS IN FACT DONE IN 1998.

2            **MS. AGUIAR:**  I APPRECIATE THAT, YOUR HONOR.  AND AS I

3    SAID, BECAUSE THIS IS NOT OUR COMPANY AND IT'S NOT OUR

4    DOCUMENTS, I DON'T BELIEVE I'LL BE ABLE TO DO THAT FOR YOU.

5            **THE COURT:**  YOU'RE NOT DOING ANYTHING FOR ME,                -02:-

6    COUNSEL.  IT'S FOR YOUR OWN CLIENTS AND YOUR OWN CASE; THIS IS

7    NOT PERSONAL.

8            I UNDERSTAND YOU'RE TRYING TO PLACE ON THE RECORD

9    THAT SOMEHOW THIS COURT IS DOING SOMETHING FOR MATTEL THAT IT'S

10   NOT DOING FOR MGA.  I SEE THEM DIFFERENTLY, COUNSEL.  I SEE THE    -02:-

11   DIFFERENCE BETWEEN 10624, WHICH IS AN UNDISPUTED DRAWING BY

12   CARTER BRYANT SIGNED AND DATED BY HIM, AND ANOTHER DOCUMENT,

13   WHICH WE HAVE NO CLUE WHO DID IT AND IT IS DISPUTED.

14           **MS. AGUIAR:**  I UNDERSTAND.

15           **THE COURT:**  IF YOU DON'T SEE THAT DIFFERENCE, IF YOU    -02:-

16   THINK THE COURT IS NOT PLAYING BY THE RULES, OR HOWEVER YOU

17   PHRASED IT EARLIER, I CAN'T HELP YOU.

18           **MS. AGUIAR:**  I HAVE NOT SUGGESTED THAT.

19           I'VE SAID THAT THE RULES OF THE ROAD HAVE BEEN THAT

20   YOU NEED A SPONSORING WITNESS.  WHEN I TALKED ABOUT RULES -- I   -02:-

21   JUST WANT TO BE VERY CLEAR.  I HAVE NOT IMPLICITLY OR

22   EXPLICITLY SUGGESTED THAT WE'RE BEING TREATED DIFFERENTLY.

23           WHEN I MADE THE REFERENCE TO THE RULES OF THE ROAD,

24   IT WAS SOLELY ON THE ISSUE OF THE PARTIES' NEED TO AGREE.

25           **THE COURT:**  FAIR ENOUGH.                                -02:-

1      **MS. AGUIAR:**  SO I REALLY WANT TO BE CLEAR ON THAT.

2  I'M NOT WILLY NILLY THROWING THINGS AROUND HERE.

3          IF THIS DOCUMENT WERE TO COME IN WITHOUT ANY

4  TESTIMONY --

5      **THE COURT:**  IT'S NOT GOING TO COME IN WITHOUT          -02:-

6  TESTIMONY.  IT'S GOING TO COME IN ONE OF TWO WAYS:  IT'S GOING

7  TO COME IN WITH A STIPULATION OR WITH A WITNESS.  I HAVE SAID

8  THAT ONE HUNDRED TIMES IN THIS TRIAL.

9      **MS. AGUIAR:**  BUT THE FORMER, YOU SAID IT WILL COME IN

10  THROUGH STIPULATION, THAT WOULD MEAN IT WOULD COME IN WITHOUT          -02:-

11  TESTIMONY ON THIS DOCUMENT, IS WHAT I MEANT.

12          IN OTHER WORDS, IF THE DOCUMENT IS JUST IN AND

13  THERE'S NO EXPLANATION, 'WELL, WAS THIS APRIL 4, 1999 DATE THE

14  DATE HE DREW IT, OR WAS IT THE DAY HE SENT IT OFF TO SOMEONE?'

15          I DON'T KNOW.          -02:-

16      **THE COURT:**  OKAY.  NOW, FOR THE FIRST TIME IN THIS

17  HEARING THAT STARTED ABOUT AN HOUR AGO, I'VE RECEIVED AN

18  ARTICULATED REASON AS TO WHY THIS IS NOT A

19  FOUNDATIONAL/AUTHENTICITY OBJECTION TO THIS DOCUMENT.

20          YOU'VE FINALLY STATED ONE.          -02:-

21      **MS. AGUIAR:**  I WISH I HAD DONE IT AWHILE AGO, BUT

22  BETTER LATE THAN NEVER.

23      **THE COURT:**  THAT IS A LEGITIMATE BASIS.

24          I'M NOT GOING TO MAKE THESE ARGUMENTS FOR YOU, BUT IF

25  THERE'S NOT A COPYRIGHT NEXT TO THE APRIL 4, 1999, YOU DON'T          -02:-

1    KNOW WHAT THE APRIL 4, 1999 DATE STANDS FOR; THAT IS A

2    LEGITIMATE BASIS TO SAY THERE'S A PROBLEM WITH THIS DOCUMENT.

3            **MS. AGUIAR:**  IT WAS ON MY LIST AND I'M SORRY IT WAS

4    FURTHER TOWARD THE BOTTOM THAN IT SHOULD HAVE BEEN.

5            THANK YOU, YOUR HONOR.                                    -02:-

6        **MR. SLOAN:**  I TAKE RESPONSIBILITY FOR MISSING THAT,

7    YOUR HONOR.

8            **THE COURT:**  MR. ZELLER?

9        **MR. ZELLER:**  I THINK THAT THE PROBLEM IS SOLVED BY

10   TODAY HAVING A FIVE-MINUTE DEPOSITION OF MR. BRYANT BY VIDEO,   -02:-

11   IN MISSOURI; WE PUT THIS DOCUMENT IN FRONT OF HIM.  THE ISSUE

12   THAT'S BEEN RAISED AS TO WHAT DOES THE DATE MEAN, IT CAN BE

13   ASKED.  THEY CAN ROLE THAT INTO ANY ARGUMENTS THAT THEY WANT TO

14   MAKE.

15           BUT I THINK FUNDAMENTALLY, IT IS A MATTER OF 'WHAT IS   -02:-

16   THE MEANING OF THIS DOCUMENT, NECESSARILY, AS OPPOSED TO WAS

17   THIS JUST NOT AUTHENTIC.'

18           I THINK THE EASIEST WAY OF DOING THIS IS A VERY SHORT

19   VIDEOTAPED DEPOSITION.  I MEAN, IT WOULD LITERALLY BE FIVE

20   MINUTES.  WE COULD HAVE IT HERE PRESUMABLY TOMORROW, PLAY IT   -02:-

21   FOR THE JURY, AND BE DONE WITH IT.

22           IN SOME RESPECTS, YOUR HONOR, I WOULD SAY THIS, TOO,

23   IS THAT IF THIS ARGUMENT WERE REALLY SO WEEK, I WOULD THINK

24   THAT MGA WOULD JUST SIMPLY SAY, 'SURE, THIS THING COULD COME

25   IN; WE'LL ARGUE IT IN CLOSING.'                                -02:-

1    THIS OBVIOUSLY DOES SEEM TO HAVE MORE SIGNIFICANCE.

2    CERTAINLY, WE THINK IT DOES.  AND TO BE ABLE TO HAVE THIS

3    INFORMATION IN FRONT OF THE JURY; THE ONE DATED DRAWING.  THE

4    ONE DATED DRAWING FROM THESE RAINY DAY RASCALS CARDS OR

5    DRAWINGS IS FROM 1999.                                       -02:-

6        **THE COURT:**  MR. SLOAN, LET ME HEAR FROM YOU, BECAUSE

7    WE'RE IN A MUCH DIFFERENT PLACE NOW THAN WE WERE AN HOUR AGO

8    WHEN MATTEL WAS ACTUALLY SEEKING THE MOTION TO COMPEL CARTER

9    BRYANT AS A REBUTTAL WITNESS.  NOW WE'RE TALKING ABOUT DOING A

10   FIVE-MINUTE DEPOSITION ON A SINGULAR DOCUMENT.               -02:-

11       **MR. SLOAN:**  THE ISSUE HERE IS WHAT MR. ZELLER SAID

12   PROBABLY 30 MINUTES AGO OR AN HOUR AGO, WHICH IS ONE OF

13   FAIRNESS.  THE ISSUE OF FAIRNESS IS WHAT IS THE PURPOSE OF

14   CALLING OR REBUTTAL WITNESS?  WHAT IS THE PURPOSE OF A REBUTTAL

15   CASE?  AND THE CASE LAW MAKES IT VERY CLEAR THAT THE PURPOSE IS -02:-

16   WHEN SOMETHING COMES UP IN THE DEFENDANT'S CASE IN CHIEF, THAT

17   THE PLAINTIFFS COULDN'T POSSIBLY HAVE ANTICIPATED COMING UP.

18       THE FACT IS HERE THAT THE ISSUE OF THE RAINY DAY

19   RASCALS CLEARLY CAME UP FOUR SQUARE ON ALL FOURS IN

20   CARTER BRYANT'S TESTIMONY IN THE PLAINTIFF'S CASE IN CHIEF.    -02:-

21   THEY WERE ON FULL NOTICE OF THE ISSUE.  THEY HAD BEEN ON NOTICE

22   FOR MONTHS.  THEY PUT THIS EXHIBIT ON THEIR EXHIBIT LIST.  THEY

23   PUT IT ON THE DESIGNATION LIST FOR MR. BRYANT.

24       THE PURPOSE OF REBUTTAL IS NOT TO GIVE THE PLAINTIFFS

25   AN OPPORTUNITY TO REDO AN EXAMINATION OF A WITNESS WHEN THEY    -02:-

1    LOOK BACK A COUPLE OF DAYS LATER AND REALIZE, 'YOU KNOW WHAT,

2    WE REALLY SHOULD HAVE ASKED HIM A QUESTION ABOUT THAT DOCUMENT

3    THAT WE HAD ON OUR EXHIBIT LIST AND WE HAD DESIGNATED.  WHY

4    DIDN'T WE DO?  THAT WE REALLY SHOULD HAVE DONE THAT.'

5           THAT'S NOT WHAT REBUTTAL TESTIMONY IS FOR.  IT'S NOT    -02:-

6    WHAT A REBUTTAL CASE IS FOR.

7           AND IF YOU OPEN THE DOOR THERE, THERE MAY BE OTHER

8    REASONS THAT -- I MEAN, WE HAVE NOT LOOKED AT IT.  BUT

9    YOUR HONOR, I THINK THAT'S WHERE, IN TERMS OF FAIRNESS AND

10   PLAYING BY THE RULES OF THE ROAD.  HERE THEY WANT FULL NOTICE.  -02:-

11   THEY HAD THE OPPORTUNITY.  THEY HAD IT ON THEIR WITNESS LIST.

12   THIS ISN'T THE PURPOSE OF A REBUTTAL CASE.  IT WOULD BE UNFAIR.

13   EVEN THOUGH YOU COULD MAYBE DO IT WITH A VIDEO DEPOSITION, IT

14   WOULD BE UNFAIR TO US.  THEY HAD THE OPPORTUNITY.

15          FOR WHATEVER REASON, MAYBE THEY MADE A TACTICAL         -02:-

16   DECISION NOT TO ASK HIM.  MORE LIKELY, THEY FORGOT OR THEY

17   WEREN'T PROPERLY PREPARED.  THE COURT SHOULDN'T GIVE THEM THE

18   OPPORTUNITY TO REDO THAT NOW, YOUR HONOR.  IT WOULD BE UNFAIR

19   TO MGA.

20          **THE COURT:**  VERY WELL.                             -02:-

21          THERE WERE A FEW CASES IN THERE, AND AS I INDICATED

22   BOTH TO MS. ANDERSON AND TO MR. ZELLER, THAT I WOULD TAKE A

23   LOOK AT.  I'LL DO THAT.  WHAT I'D LIKE TO DO IS -- LET'S

24   RECONVENE AT -- WE HAVE THE 3:00 JURY INSTRUCTIONS.  LETS

25   RECONVENE AT 1:30, JUST BECAUSE THIS ISSUE HAS TO BE RESOLVED   -02:-

```
 1   SOONER AS OPPOSED TO LATER; AND THEN AT 3:00 WE'LL HAVE THE
 2   CHARGING INSTRUCTIONS.  THE COURT HAS A CRIMINAL CALENDAR
 3   IN-BETWEEN THOSE TWO, SO WE'RE IN RECESS UNTIL 1:30.
 4            (WHEREUPON A BRIEF RECESS WAS HELD.)
 5        THE CLERK:  RECALLING THE MATTER OF CASE NUMBER            -01:-
 6   CV04-09049-SGL, MATTEL, INC., V. MGA, INC., ET AL.
 7            MAY WE HAVE COUNSEL PLEASE COME FORWARD AND RESTATE
 8   YOUR APPEARANCES FOR THE RECORD.
 9        MS. ANDERSON:  CHRISTA ANDERSON FOR CARTER BRYANT, ON
10   THE PHONE.                                                     -01:-
11          MR. ZELLER:  MIKE ZELLER AND TAMMY JIH FOR MATTEL.
12          MR. SLOAN:  MATTHEW SLOAN AND LAUREN AGUIAR FOR MGA.
13          THE COURT:  THIS IS A VERY CLOSE CALL.  AT THE END OF
14   THE DAY, I'M GOING TO DENY THE MOTION TO COMPEL CARTER BRYANT'S
15   FURTHER TESTIMONY IN THIS CASE.  IT'S NOT BECAUSE THE COURT    -01:-
16   BELIEVES IT'S WITHOUT JURISDICTION TO COMPEL HIM.  I THINK
17   MR. ZELLER IS CORRECT ON THE LEGAL POINTS.  I BELIEVE THAT IT
18   REALLY COMES DOWN TO THIS DISCRETIONARY ISSUE OF FAIRNESS AND
19   THE TYPE OF FAIRNESS THE COURT NEEDS TO IMPLORE HERE.
20            THE COURT IS MINDFUL THAT I HAVE TWO EXTRAORDINARILY  -01:-
21   TALENTED SETS OF ATTORNIES IN THIS CASE.  IF THIS WERE A
22   CRIMINAL CASE, A PRO SE CASE, SOMETHING WHERE THE BALANCE MIGHT
23   NOT BE WHAT IT IS, THE COURT MIGHT TAKE A DIFFERENT APPROACH.
24   BUT IN A CIVIL CASE OF THIS NATURE, WITH THIS COUNSEL, I THINK
25   IT'S IMPORTANT THAT THE COURT, AS BEST AS IT CAN, WHEN         -01:-
```

```
 1   COMPARING APPLES AND APPLES AND ORANGES AND ORANGES, TRIES TO

 2   ENFORCE THE RULES AND THE GUIDELINES IT SET OUT.  AND I THINK A

 3   FAIR READING OF THE RECORD IS THAT THE ISSUE OF THE TIMING OF

 4   TINY RASCALS -- RAINY DAY RASCALS GREETING CARDS IN THE CONTEXT

 5   OF THE FOLDER OF THE NOTEBOOK IS SUCH THAT IT WAS OUT AND IN          -01:-

 6   THE OPEN DURING THE TESTIMONY OF CARTER BRYANT; THAT MR. PRICE

 7   HAD AT HIS DISPOSAL THE EXHIBIT THAT HE NOW WISHES TO INTRODUCE

 8   IN REBUTTAL, AND THERE WAS NO REASON WHY, AND EVERY REASON WHY

 9   IT SHOULD HAVE, COULD HAVE, BEEN INTRODUCED AT THAT TIME.  AND

10   THE COURT DID NOT PLACE A TIME LIMIT ON CARTER BRYANT'S              -01:-

11   TESTIMONY, AS I HAVE NOT DONE ON ANY WITNESSES IN THIS CASE,

12   AND I HAVE NOT PLACED ANY LIMITS ON THE ROUNDS OF DIRECT OR

13   CROSS OR REDIRECT OR ON RECROSS; THAT HAS GONE ON AD INFINITUM

14   WITH SEVERAL OF THE WITNESSES, AT THE END OF WHICH, I HAVE

15   ALWAYS ASKED THE QUESTION 'IS THERE ANYTHING FURTHER FROM           -01:-

16   EITHER SIDE?'  AND UPON RECEIVING A NEGATIVE RESPONSE, I

17   EXCUSED THE WITNESS.  AND I THINK JUST IN A RULE'S APPLYING

18   FAIRNESS SENSE, THE COURT FINDS IN MGA'S FAVOR ON THIS ISSUE.

19        THERE'S ANOTHER SENSE OF FAIRNESS, WHICH I SUSPECT

20   MR. ZELLER WAS APPEALING TO, AND IF THIS WAS A DIFFERENT CASE       -01:-

21   WITH DIFFERENT COUNSEL, PERHAPS THAT MIGHT BE MORE PERSUASIVE

22   TO THE COURT.  THAT'S ALL I WILL SAY ON THAT.

23        ALL I'M RULING ON IS THIS MOTION THAT'S BEFORE ME.

24   I'M NOT RULING ON THE EVIDENCE ITSELF.  WE'RE STILL IN THE

25   MIDDLE OF THE DEFENSE CASE.  I'M NOT RULING ON WHETHER OR NOT       -01:-
```

1   PLAINTIFF CAN HAVE A REBUTTAL, OR ANYTHING ALONG THESE LINES.

2   I'M SIMPLY RULING ON THE MOTION BEFORE ME RIGHT NOW, AND THAT

3   IS TO RECALL CARTER BRYANT AS A WITNESS.  AND I'M DENYING THAT

4   MOTION.

5           ARE THERE ANY QUESTIONS FROM COUNSEL CONCERNING THE   -01:-

6   COURT'S RULING?

7           I'LL BEGIN WITH MS. ANDERSON; YOU'RE ON THE PHONE.

8           **MS. ANDERSON:**  NO QUESTIONS, YOUR HONOR.

9           **THE COURT:**  VERY WELL.

10          COUNSEL?                                              -01:-

11          **MR. ZELLER:**  NO, YOUR HONOR.

12          **THE COURT:**  VERY WELL.

13          **MS. AGUIAR:**  NOTHING, YOUR HONOR.  THANK YOU.

14          **THE COURT:**  VERY WELL.

15          I'LL SEE ALL OF YOU BACK HERE AT 3:00, OR AT THE      -01:-

16  CONCLUSION OF THE COURT'S CRIMINAL CALENDAR, WHICHEVER HAPPENS

17  FIRST.  IT'S NOT A PARTICULARLY HEAVY DAY ON CALENDAR; SO WE

18  SHOULD BE READY TO GO ON THAT.

19          **MS. AGUIAR:**  YOUR HONOR, DO YOU MIND IF I ASK WHETHER

20  YOU HAD THOUGHT ABOUT WHETHER YOU WOULD HEAR ARGUMENTS ON THE   -01:-

21  JMOL'S FIRST OR WHETHER YOU WOULD GO TO THE JURY INSTRUCTIONS

22  FIRST?

23          **THE COURT:**  I'LL GO TO THE JURY INSTRUCTIONS FIRST.

24  LET'S GET THROUGH AS MUCH OF THAT AS WE CAN, BECAUSE I'M GOING

25  TO BE CALLING UPON COUNSEL TO ASSIST THE COURT IN PREPARING A   -01:-

```
 1   FINAL VERSION OF THE INSTRUCTIONS; AND WHOEVER IS GOING TO BE
 2   TASKED WITH THAT, I WANT THEM TO HAVE A CHANCE TO WORK ON THAT
 3   AS QUICKLY AS POSSIBLE.
 4          MS. AGUIAR:  ONE THING I DID WANT TO MENTION, IN CASE
 5   IT WOULD BE HELPFUL FOR EITHER THE COURT OR YOUR CLERK.  ON THE
 6   DISK WE PROVIDED THIS MORNING, IN ADDITION TO OUR INSTRUCTIONS
 7   AND OUR VERDICT FORM, WE TOOK MATTEL'S INSTRUCTIONS AND OUR
 8   INSTRUCTIONS ON EACH ISSUE, AND WE ACTUALLY PUT THEM TOGETHER
 9   IN THE SAME DOCUMENT.
10          THE COURT:  OUTSTANDING.
11          MS. AGUIAR:  WE THOUGHT THAT MIGHT BE HELPFUL TO YOU.
12          THE COURT:  YES; THAT MIGHT SHORT CIRCUIT A LOT OF
13   THIS.
14          I'LL SEE YOU AT 3:00.
15          AS SOON AS THE CRIMINAL CALENDAR IS READY, THE COURT
16   IS READY TO TAKE THAT UP.
17          MR. ZELLER:  WE WOULD LIKE PERMISSION OR LEAVE TO
18   FILE A MOTION PERTAINING TO THE CLOSING; IN PARTICULAR, THE USE
19   OF VIDEO DURING THE CLOSING.
20          THE COURT:  WHAT'S THE ISSUE THERE?
21          MR. ZELLER:  WE'RE CONCERNED THAT MGA IS GOING TO
22   PLAY THE VIDEO DEPOSITIONS DURING THE COURSE OF CLOSING, AND WE
23   THINK -- AND THERE'S AUTHORITY FOR THIS PROPOSITION AS WELL --
24   THAT DOING THAT UNDULY EMPHASIZES THE VIDEOTAPED DEPOSITION
25   THAT'S INTRODUCED OVER THE LIVE TESTIMONY THAT OBVIOUSLY CAN'T
```

1   BE INTRODUCED THROUGH A VIDEOTAPE; SO IT CREATES THIS SORT OF

2   UNEVEN PLAYING FIELD.  AND THERE IS SOME AUTHORITY FOR THIS.

3   WE WOULD LIKE TO FILE A VERY BRIEF MOTION.

4           **THE COURT:**  VERY BRIEF MOTION ON THAT.

5           I'M NOT FAMILIAR WITH THE AUTHORITY YOU'RE REFERRING        -01:0

6   TO.  I'D HAVE TO LOOK AT THAT.

7           **MR. ZELLER:**  I KNOW IT'S LESS THAN FIVE; IT MAY BE

8   EVEN LESS THAN THAT.

9           **THE COURT:**  VERY BRIEF.

10          MS. AGUIAR?                                                  -01:0

11          **MS. AGUIAR:**  I'D LIKE TO TALK WITH MR. NOLAN, BECAUSE

12  HE AND I HAVE BEEN GOING OVER THE CLOSING DURING THE LAST TWO

13  DAYS.  IT'S POSSIBLE THAT WE MAY NOT PLAN TO DO THAT, SO...

14          **THE COURT:**  BY ALL MEANS.

15          **MS. AGUIAR:**  SAVE A COUPLE OF TREES; AND WE WILL LET     -01:0

16  THEM KNOW.

17          **THE COURT:**  TALK ABOUT SAVING TREES, I'M A BIG FAN OF

18  THE LORD OF THE RINGS TRILOGY; THERE'S THIS ONE IMAGE WHERE THE

19  TREES LITERALLY UPROOT AND ATTACK.  AND I'M WAITING FOR THEM TO

20  DESCENT UPON THIS COURTHOUSE FOR THE AMOUNT OF PAPER THAT WE'VE    -01:0

21  GONE THROUGH IN THIS CASE.

22          (PROCEEDINGS ADJOURNED.)

23

24  /  /  /

25  /  /  /

1

2                                    CERTIFICATE

3

4    I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
5    the stenographically recorded proceedings held in the
     above-entitled matter and that the transcript page format is in
6    conformance with the regulations of the judicial conference of
     the united states.

7

8    _____              _____
9    THERESA A. LANZA, RPR, CSR                              Date
     Official COURT Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MONDAY, JULY 7, 2008                                    CV 04-09049-SGL