1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                          EASTERN DIVISION

4                              - - -

5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                              - - -

7    MATTEL, INC.,                      )
                                        )
8                      Plaintiff,       )
                                        )
9              vs.                      )  No. ED CV 04-09049
                                        )  (LEAD LOW NUMBER)
10   MGA ENTERTAINMENT, INC., ET. AL.,  )
                                        )
11                     Defendants.      )  Jury Instruction
     _____)  Conference
12   AND CONSOLIDATED ACTIONS,          )
     _____)

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                     Riverside, California

17                   Wednesday, July 9, 2008

18                         1:39 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24              3470 12th Street, Rm. 134
                Riverside, California  92501
25                     951-274-0844
                   WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2


 3
     on behalf of MATTEL:
 4
                         QUINN EMANUEL
 5                       BY:  Mike Zeller
                         BY:  Dylan Proctor
 6                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 7                       LOS ANGELES, California  90017
                         213-624-7707
 8


 9
     ON BEHALF OF MGA ENTERTAINMENT:
10
                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
11                       BY:  THOMAS J. NOLAN
                         BY:  Lauren Aguiar
12                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
13                       213-687-5000

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                           I N D E X

 2                                                        Page

 3    Proceedings ...................................    4

 4

 5

 6

 7           EXHIBITS              RECEIVED

 8            740                     74
             746                     74
 9            748                     74
             750                     74
10            769                     74                        05:18
             772                     74
11            773                     74
            1171                     74
12           1172                     74
            1173                     74
13           1174                     74
            1179                     74
14           1152(REMAINING PAGES)   74

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        RIVERSIDE, CALIFORNIA; WEDNESDAY, JULY 9, 2008; 1:39 P.M.

 2                              -oOo-

 3            THE CLERK:  CALLING CASE NUMBER CV04-09049-SGL,

 4    MATTEL, INC., V. MGA, INC., ET AL.

 5            MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR

 6    THE RECORD.

 7            MR. ZELLER:  MIKE ZELLER AND DYLAN PROCTOR FOR

 8    MATTEL.

 9            MR. NOLAN:  TOM NOLAN, LAUREN AGUIAR -- AND SO I CAN

10    GET SOME NEW PEOPLE ON THE RECORD TODAY IN THIS CASE; THEY'VE     01:39

11    WORKED SO HARD:  MS. JENNIFER DEL CASTILLO AND JONATHAN

12    USLANER.

13            THE COURT:  GOOD AFTERNOON, COUNSEL.

14            I'VE GOT A COUPLE OF THINGS.  THE COURT JUST RECEIVED

15    THE CORRECTED AMENDED SUPPLEMENTAL JOINT EXHIBIT STIPULATION      01:39

16    REGARDING ORIGINAL CARTER BRYANT'S DRAWINGS.

17            I HAVE NO WAY OF CONFIRMING THIS, BUT I TRUST YOU'VE

18    CAREFULLY REVIEWED THIS AND THIS IS ALL ACCURATE.

19            MR. PROCTOR:  WE BELIEVE SO.  YOU'LL RECALL WE WENT

20    THROUGH THIS ONCE OR TWICE BEFORE.  WE CAUGHT A COUPLE MORE      01:39

21    TYPOS.  THIS IS THE LATEST, GREATEST VERSION.

22            THE COURT:  MR. NOLAN, I TRUST YOU FULLY ACQUIESCE IN

23    THIS.

24            MR. NOLAN:  YES, YOUR HONOR.  WE HAVE BEEN WORKING

25    BACK AND FORTH.  I THINK THERE HAVE BEEN CHANGES.  TO OUR BEST   01:40
```

1    KNOWLEDGE, THIS IS ACCURATE.

2         **THE COURT:**  OKAY.

3         I'VE SIGNED IT AND I'LL HAVE MR. HOLMES FILE THAT.

4         WE HAVE THE JURY INSTRUCTIONS AND THE VERDICT FORM.

5    I E-MAILED, BEFORE LUNCH, BOTH TO YOU.  AND NOTWITHSTANDING          01:40

6    PREVIOUS OBJECTIONS WHICH HAVE ALL BEEN MADE AND PRESERVED FOR

7    THE RECORD, ARE THERE ANY FINAL OBJECTIONS, ANY nits, ANY

8    CONCERNS, ANYTHING INCONSISTENT WITH YOUR UNDERSTANDING OF THE

9    COURT'S RULINGS?

10        **MR. NOLAN:**  IF I MIGHT, YOUR HONOR.          01:40

11        MANY OF THESE ARE JUST LITTLE NITS -- AND I CAN

12   ASSURE YOU THAT I'VE READ THE TRANSCRIPT, I'M NOT GOING TO

13   REPEAT ALL OF THE ARGUMENTS.

14        IF YOU TURN TO INSTRUCTION NUMBER 2 --

15        **THE COURT:**  YES.          01:41

16        **MR. NOLAN:**  -- ON LINE 3, THERE'S A REFERENCE to 'OR

17   AFFIRMATIVE DEFENSE.'  I DON'T BELIEVE ANY AFFIRMATIVE DEFENSES

18   ARE IN THIS CASE, AND MY CONCERN -- AND THAT'S THE ONE I'M MOST

19   PROUD OF, I HAVE TO SAY PERSONALLY, BECAUSE IT'S THE ONE I

20   CAUGHT.          01:41

21        **THE COURT:**  THAT'S A GOOD CATCH.

22        **MR. NOLAN:**  OKAY.

23        AND THEN IF YOU'LL TURN TO JURY INSTRUCTION

24   NUMBER 28, PAGE 31.

25        **THE COURT:**  I'M THERE.          01:41

1            **MR. NOLAN:**  AT LINE 11, IT SAYS "SECTION 1-A OF THE

2    INVENTIONS AGREEMENT PROVIDES."  AND THEN THE INSTRUCTION

3    QUOTES FAITHFULLY FROM SECTION 1-A.  BUT WITHIN THERE, IT SAYS

4    "AND ACQUIRE VALUABLE PROPRIETARY INFORMATION, AS DEFINED

5    BELOW."  BUT AT THE END, ON LINE 21, WE DO NOT PICK UP THE                01:42

6    DEFINITION OF "PROPRIETARY INFORMATION" IN PARAGRAPH 1-B.

7            AND I JUST THINK THAT IT'S CONFUSING TO THE JURY,

8    BECAUSE WHAT'S QUOTED --

9            **THE COURT:**  I AGREE.

10           WHICH WOULD YOU SUGGEST?  DO I ELIMINATE "AS DEFINED          01:42

11    BELOW," OR DO I INCLUDE AN ELLIPSES THERE OR INCLUDE THE

12    DEFINITION?

13           **MR. NOLAN:**  INCLUDE THE DEFINITION OF PROPRIETARY

14    INFORMATION THAT'S SET FORTH IN PARAGRAPH 1-B.  I DON'T THINK

15    IT'S LENGTHY; AND WE HAVE A COPY OF THAT.                              01:42

16           **THE COURT:**  HOW DID WE DO IT IN THE INTERIM?

17           TO MAKE IT CONSISTENT WITH JURY INSTRUCTION

18    NUMBER 21, WHERE I GIVE "SECTION 2-A OF THE INVENTIONS

19    AGREEMENT PROVIDES," AND THEN IN THE NEXT PARAGRAPH, I PUT "THE

20    INVENTIONS AGREEMENT DEFINES THE TERM INVENTIONS AS FOLLOWS."     01:43

21           HERE, I WOULD GIVE "SECTION 1-A OF THE INVENTIONS

22    AGREEMENT PROVIDES" AND THEN PUT, IN THE NEXT PARAGRAPH, "THE

23    INVENTIONS AGREEMENT DEFINES THE TERM 'PROPRIETARY INFORMATION'

24    AS FOLLOWS," AND THEN INCLUDE THAT.

25           THAT'S WHAT YOU'RE SEEKING?

1        **MR. NOLAN:**  RIGHT.

2        **THE COURT:**  I'LL HEAR FROM MATTEL SHORTLY ON THAT.

3        VERY WELL.

4        **MR. NOLAN:**  THE LAST COMMENT THAT I HAVE IS WITH

5    RESPECT TO JURY INSTRUCTION NUMBER 29.                    01:44

6        **THE COURT:**  YES.

7        **MR. NOLAN:**  THIS IS ON THE CONVERSION CLAIM.

8        I CONFESS THAT I ACTUALLY WOKE UP THIS MORNING

9    STARTLED BY A REALIZATION THAT WHEN TALKING ABOUT CONVERSION IN

10   THE CONVERSION CLAIM, WHAT WE'RE INSTRUCTING THE JURY IS -- IT   01:44

11   SAYS "IN ITS FINAL CLAIM, MATTEL CONTENDS THAT MGA AND

12   ISAAC LARIAN WRONGFULLY EXERCISED CONTROL OVER MATTEL'S

13   PROPERTY, INCLUDING TANGIBLE BRATZ WORKS, SUCH AS MR. BRYANT'S

14   DRAWINGS."

15       AND IT GOES ON, "TO ESTABLISH THIS CLAIM, MATTEL MUST   01:44

16   PROVE THE FOLLOWING BY A PREPONDERANCE OF THE EVIDENCE."  AND

17   THE FIRST ONE IS, "THAT MATTEL WAS THE RIGHTFUL OWNER OF THE

18   PROPERTY AT ISSUE."

19       I'VE READ AT LENGTH THE COURT'S DISCUSSIONS WITH

20   COUNSEL, GOING BACK OVER THIS OWNERSHIP ISSUE.            01:45

21       **THE COURT:**  I SEE YOUR ARGUMENT.

22       **MR. NOLAN:**  I DON'T EVEN KNOW IF IT'S AN ARGUMENT.

23   I'M CONFESSING TO YOU THAT I WOKE UP THIS MORNING REALIZING

24   THAT THROUGH THE BACK DOOR, NOT INTENTIONALLY -- OR WHO

25   KNOWS --                                                 01:45

1    **THE COURT:**  NO.  THERE'S AN ARGUMENT THAT THIS

2  CONVERSION CLAIM SHOULD BE 1-B, BECAUSE WE'RE NOT REALLY GOING

3  TO KNOW WHAT MATTEL ACTUALLY OWNS UNTIL WE GET TO THE COPYRIGHT

4  ISSUE.

5    **MR. NOLAN:**  THAT MAY BE THE CASE.  BECAUSE THE OTHER        01:45

6  THING, YOUR HONOR, IS THAT THERE ARE OTHER REFERENCES IN THE

7  JURY INSTRUCTIONS TO THE CONCEPT OF OWNERSHIP.

8    **THE COURT:**  IDENTIFY THOSE FOR ME, COUNSEL.

9    **MR. NOLAN:**  SURE.

10    **THE COURT:**  I CHANGED THE VERDICT FORM SPECIFICALLY      01:46

11  TO ELIMINATE THE NOTION OF OWNERSHIP.

12    **MR. NOLAN:**  RIGHT.  I REALIZE THAT.  THAT'S WHY, WHEN

13  LOOKING AT THIS -- YOUR HONOR, JURY INSTRUCTION NUMBER 21

14  STARTS OFF, "IN ITS FIRST CLAIM, MATTEL CONTENDS THAT IT OWNS

15  THE RIGHTS TO ALL OF BRATZ."                                   01:46

16    **THE COURT:**  OKAY.

17    **MR. NOLAN:**  THEN ON PAGE 23, THERE'S ALSO REFERENCE

18  TO OWNERSHIP.

19    MY ONLY POINT IS --

20    **THE COURT:**  I WANT YOU TO IDENTIFY THESE, COUNSEL.       01:46

21    **MR. NOLAN:**  I'M SORRY.

22    PAGE 23, LINE 16; IT SAYS "TO PREVAIL ON ITS CLAIM

23  FOR OWNERSHIP..."

24    **THE COURT:**  RIGHT.

25    IS THERE ANY OTHER PLACE?                                    01:46

1          **MR. NOLAN:**  I BELIEVE THOSE ARE THE TWO THAT I SAW,

2    YOUR HONOR.

3          **THE COURT:**  OKAY.  VERY GOOD.  THAT'S A VERY GOOD

4    CATCH.

5          **MR. NOLAN:**  BEFORE I SIT DOWN, I JUST WANT TO AT          01:47

6    LEAST RAISE -- I NEED THE COURT'S GUIDANCE WITH RESPECT TO THE

7    ARGUMENT.  I READ THE TRANSCRIPT WHERE I THINK MR. PROCTOR

8    SUGGESTED THAT I WOULD MAKE AN ARGUMENT WITH RESPECT TO THE

9    DRAWINGS GOING TO THE 3-D DOLLS.  AND IN A MILLION YEARS, I

10   WOULD NOT DO THAT.  I KNOW THAT THAT'S THE 1-B ISSUE.          01:47

11         **THE COURT:**  IF YOU'RE GOING TO DO THAT, I WANT TO

12   KNOW, BECAUSE I'VE DECLINED TO GIVE THE INSTRUCTION, OR THAT

13   PORTION OF THE INSTRUCTION, THE PARAGRAPH THAT MATTEL HAS ASKED

14   FOR ON THAT, BECAUSE I DON'T THINK IT'S NECESSARY, BECAUSE I

15   THINK, BASED ON HOW THIS HAS PLAYED OUT IN THE TRIAL, EVEN          01:47

16   THOUGH IT WAS A BIT OF AN ISSUE AT THE BEGINNING OF THE TRIAL,

17   IT STOPPED BEING AN ISSUE, AND I THINK IT WOULD BE MORE

18   CONFUSING AND MORE PREJUDICIAL TO BRING THAT UP AT THIS POINT;

19   BUT AS LONG AS THERE'S NO ARGUMENT ON THAT.

20         THAT WOULD CERTAINLY BE AN OBJECTION THAT I WOULD          01:47

21   SUSTAIN AND INSTRUCT ON IN THE COURSE OF CLOSING ARGUMENT,

22   WHICH I WOULD NOT WANT TO HAVE TO GET TO.

23         **MR. NOLAN:**  RIGHT.

24         YOUR HONOR, WITH RESPECT TO THE VERDICT FORM, AT THE

25   TOP --          01:48

1        **THE COURT:**  IS THERE ANYTHING ELSE ON THE JURY

2   INSTRUCTION FORM?

3        **MR. NOLAN:**  NO, YOUR HONOR.  BUT LET ME JUST FINISH

4   IT UP WITH THIS ONE COMMENT.

5        **THE COURT:**  SURE.

6        **MR. NOLAN:**  I DO BELIEVE THAT THERE'S MAYBE A

7   POTENTIAL FOR CONFUSION TO THE JURY ON THE ISSUE OF THE

8   OWNERSHIP QUESTION, AND THE SCOPE OF THE ARGUMENT, NOT APPLYING

9   TO THE DOLLS, BUT APPLYING TO THE DRAWINGS.

10       I WENT BACK LAST EVENING -- AND BOTH MR. QUINN AND I        01:48

11  EXTENSIVELY ARGUED TO THE JURY IN OUR OPENING STATEMENTs

12  FRAMING THE ISSUE, BOTH IN THE MINI-OPENING STATEMENTS AND IN

13  THE OPENING STATEMENTS, THAT THIS IS A CASE -- AND I THINK

14  MR. QUINN, BECAUSE HE'S USUALLY MORE ELOQUENT THAN I AM,

15  CAPTURED IT BEST FOR THE JURY BY SAYING IN HIS OPENING        01:48

16  STATEMENT:  "THIS IS A DISPUTE BETWEEN TWO TOY COMPANIES

17  CONCERNING WHO OWNS THE RIGHTS TO SOME DRAWINGS, SOME SCULPTS,

18  AND SIMILAR MATERIALS RELATING TO A DOLL CALLED "BRATZ" THAT

19  SOME OF YOU MAY HAVE HEARD OF."

20       THE ISSUE OF AND THE DISCUSSION OF THE OWNERSHIP HAS        01:49

21  BEEN SQUARELY PUT BEFORE THE JURY.

22       **THE COURT:**  IT HAS, COUNSEL.  BUT IT'S SOMETHING I'M

23  GOING TO DECIDE BASED ON WHAT WE'RE ASKING THE JURY.  I THINK

24  IT'S A FAIR WAY OF DESCRIBING THE OVERALL ISSUE IN THIS CASE.

25  IT'S NOT WHAT THE JURY IS BEING ASKED TO DECIDE.        01:49

```
 1        YOU'RE CERTAINLY NOT SUGGESTING THAT'S WHAT THE JURY

 2   IS BEING ASKED TO DECIDE, OR COULD POSSIBLY DECIDE AT THIS

 3   POINT, IS IT?

 4        MR. NOLAN:  I'M NOT GOING BACK AND REHASHING ALL OF

 5   THE HARD WORK THAT EVERYBODY DID HERE YESTERDAY AND THE DAY      01:49

 6   BEFORE.  THAT'S NOT MY INTENT.  IN FACT, I SAW THE COMMENT THAT

 7   YOU REFERENCED, THE SUPERMAN DECISION THAT YOU HAD RENDERED

 8   BEFORE.  AND I GUESS WHAT I'M TRYING TO DO IS SQUARE IN MY

 9   MIND, AS I DO THE CLOSING ARGUMENT, THE UNDERSTANDING THAT

10   THERE IS A POTENTIAL WAY -- I'VE USED IT LOOSELY BY COMMITMENTS   01:49

11   THAT I'VE MADE OUTSIDE OF THE COURTROOM, THAT IF WE WERE TO

12   PREVAIL ON PHASE 1-A, WE COULD GO HOME AND THE JURY COULD GO

13   HOME AND THERE WOULD BE NO NEED FOR PHASE B.  THAT SEEMS TO BE

14   THE CONSTRUCT THAT I HAD UNDERSTOOD, YOUR HONOR, THROUGHOUT THE

15   CASE.                                                            01:50

16        AND THEN I SAW THE REFERENCE TO THE POSSIBILITY THAT

17   THIS IS A LEGAL ISSUE AND IT WOULD LEAD TO -- AND I'M JUST

18   PROPOSING THIS; I'M NOT SUGGESTING THAT WE'RE GOING TO WIN OR

19   ANYTHING ELSE LIKE THAT; I'M JUST SUGGESTING TO THE COURT SO I

20   CAN BETTER UNDERSTAND THIS -- WHAT WOULD PREVENT THE NEED FOR    01:50

21   AN ADDITIONAL THREE WEEKS IN TRIAL.

22        WOULD IT MAKE SENSE, FOR INSTANCE, ON THE POSSIBILITY

23   THAT THE JURY MAY CONCLUDE THAT THE TESTIMONY OF CARTER BRYANT

24   AND JANET BRYANT AND GALVANO AND OTHERS PLACED SQUARELY THE

25   CONCEPT, THE IDEA, FOR THE BRATZ CHARACTERS, AND A VOLUME OF     01:51
```

1   DRAWINGS IN 1998, THAT WERE CREATED IN 1998 -- WOULD WE THEN GO

2   TO A QUICK ARGUMENT PHASE IN FRONT OF YOU BEFORE WE WOULD THEN

3   HAVE TO LAUNCH --

4        **THE COURT:**  EXACTLY.

5        HOW YOU ACHIEVE THAT, COUNSEL, IS, IF THE JURY COMES        01:51

6   BACK TO QUESTION NUMBER 1, "HAS MATTEL PROVEN BY A

7   PREPONDERANCE OF THE EVIDENCE THAT CARTER BRYANT CONCEIVED THE

8   BRATZ CHARACTERS WHILE EMPLOYED BY MATTEL..." -- IF THE ANSWER

9   TO THAT IS, NO, THAT THEY BELIEVE THAT IT WAS DONE IN 1998, AND

10  THEY FURTHER BELIEVE THAT, I SUPPOSE, NUMBER 6, THE NAME BRATZ   01:51

11  WAS NOT CONCEIVED WHILE HE WAS AT MATTEL, AND THEN DEPENDING ON

12  THESE DRAWINGS -- ALL OF THE MASTER DRAWINGS WERE DONE IN

13  1998 --

14       I'M NOT GOING TO RULE ON THIS NOW AND I'M NOT GOING

15  TO OFFER AN ADVISORY NOW.  BUT YOU WOULD BE IN A POSITION AT     01:52

16  THAT POINT TO SAY, 'YOUR HONOR, THE ONLY DRAWINGS THAT WERE

17  FOUND TO HAVE BEEN DONE IN 1999 WERE LIGHT BOX SKETCHES OF

18  MASTERS THAT WERE DONE IN 1998, AS THE JURY HAS FOUND.  YOU CAN

19  DECIDE THIS AS A MATTER OF LAW.'

20       WHAT I WOULD PROBABLY DO AT THAT POINT IS NOT DECIDE        01:52

21  THE ISSUE BUT DECIDE THAT I CAN DECIDE THE ISSUE AND RESPOND

22  APPROPRIATELY.

23       **MR. NOLAN:**  I UNDERSTAND.  THAT CLARITY, YOUR HONOR,

24  HELPS ME OUT.  IT REALLY DOES.  AND I CERTAINLY WAS NOT ASKING

25  FOR AN ADVISORY OPINION.                                        01:52

1          **THE COURT:**  I UNDERSTAND THAT.

2          **MR. NOLAN:**  IT GUIDES ME IN TERMS OF WHAT I CAN

3     ARGUE.  THANK YOU.

4          **THE COURT:**  VERY WELL.

5          MR. ZELLER, I WANT TO HEAR ANY NITS THAT YOU HAVE,          01:52

6     AND THEN I WANT TO HEAR YOUR RESPONSES TO THE CONCERNS RAISED

7     BY MR. NOLAN.

8          I TEND TO AGREE, THE JURY INSTRUCTION NUMBER 2 OR

9     AFFIRMATIVE DEFENSE LANGUAGE SHOULD FALL OUT ON LINE 3.

10         **MR. ZELLER:**  THAT'S AGREEABLE TO US.          01:53

11         **THE COURT:**  AS FAR AS THE OBJECTION TO

12    INSTRUCTION 21, "MATTEL CONTENDS THAT IT OWNS THE RIGHTS TO ALL

13    BRATZ RELATED IDEAS..." I DON'T FIND THAT FIRST LINE HARMFUL,

14    BECAUSE THAT'S ESSENTIALLY WHAT YOU ARE CLAIMING, IS THAT YOU

15    OWN IT.          01:53

16         IT IS MORE CONFUSING ON PAGE 23, LINE 16, "TO PREVAIL

17    ON A CLAIM FOR OWNERSHIP."  IT'S NOT SO MUCH MISLEADING TO THE

18    JURY AS IT'S PROBABLY MISLEADING TO EVERYBODY ELSE OUT THERE.

19    I THINK THAT CAN BE SHORTENED TO "TO PREVAIL ON ITS CLAIM,

20    MATTEL MUST SHOW THAT CERTAIN THINGS WERE REDUCED."          01:53

21         THERE'S GOING TO BE SOME OTHER THINGS THAT YOU MAY

22    HAVE TO SHOW AT THE END OF THE DAY TO THE COURT, BUT AT A

23    MINIMUM, THIS IS PART OF WHAT YOU'RE GOING TO HAVE TO SHOW; SO

24    I'M MORE INCLINED TO JUST CROSS OUT THE "FOR OWNERSHIP" ON

25    LINE 23.  BUT I'LL HEAR FROM YOU ON THAT.          01:54

```
1          THEN, THE OTHER THING THAT IS ON INSTRUCTION 28 IS

2    ADDING THE TERM "PROPRIETARY INFORMATION."  AND THEN, FINALLY,

3    ELEMENT ONE ON INSTRUCTION 29.  THAT'S AN INTERESTING POINT

4    RAISED BY MR. NOLAN.  AND THEN, OF COURSE, WHATEVER ELSE YOU

5    WANT TO ADDRESS.                                              01:54

6          MR. ZELLER:  I THINK THE ISSUE OF OWNERSHIP HAS TO BE

7    DEALT WITH A LITTLE BIT DIFFERENTLY DEPENDING ON THE CLAIM THAT

8    WE'RE TALKING ABOUT.

9          I AGREE, CERTAINLY, IF THERE IS SOME BETTER WAY OF

10   USING "MATTEL CLAIMS THAT IT OWNS" -- IF SOME SYNONYM WOULD    01:54

11   COME UP, WE WOULD PROBABLY BE AMENABLE TO THAT.  BUT I AGREE

12   WITH THE COURT, I'M NOT SURE THAT CREATES THAT MUCH OF AN

13   ISSUE.

14         I THINK IN TERMS OF REVISING, THEN, THE LANGUAGE ON

15   23, "TO PREVAIL ON ITS CLAIM," I THINK IT MAY HAVE TO SAY      01:54

16   SOMETHING LIKE "TO PREVAIL ON ITS FIRST CLAIM," IF ONLY BECAUSE

17   THE JURY WON'T GET CONFUSED AS TO WHAT CLAIM WE HAVE TO PROVE

18   THIS FOR, AS OPPOSED TO ALL OF THE OTHERS.

19         THE COURT:  RIGHT.

20         MR. QUINN:  AND THEN I THINK THE ISSUE OF OWNERSHIP      01:55

21   IN THE CONTEXT OF CONVERSION -- I THINK THAT'S A LITTLE BIT

22   DIFFERENT, BECAUSE OWNERSHIP IN THIS CONTEXT OF THE CONVERSION

23   CLAIM IS REALLY, REGARDLESS OF THE SCOPE OF ITS PROTECTABILITY,

24   IF IT'S SOMETHING THAT WAS PHYSICALLY CREATED DURING THE TERM

25   OF HIS MATTEL EMPLOYMENT -- WHETHER OR NOT THERE'S ANY RIGHTS   01:55
```

1    ASSOCIATED WITH IT FROM A COPYRIGHT PERSPECTIVE --

2            **THE COURT:**  IT'S A DIFFERENT TYPE OF OWNERSHIP.

3        **MR. ZELLER:**  YES.  EXACTLY.

4        I'M LESS TROUBLED BY -- IN FACT, I THINK IT NEEDS TO

5    BE THERE.  I THINK THIS STILL RENDERS IT A 1-A CLAIM, BECAUSE    01:55

6    THERE MAY BE, AS WE TALKED ABOUT BEFORE, ARTISTIC VALUE JUST IN

7    THE WORK OR of THE PEN TO PAPER.

8            **THE COURT:**  WHEN MR. NOLAN WAS GOING OVER

9    INSTRUCTION 29, LINE 5, "INCLUDING TANGIBLE BRATZ WORKS," I DO

10   THINK, TO MAKE THIS CONSISTENT WITH HOW WE'VE REFERRED TO THIS    01:56

11   IN OTHER INSTRUCTIONS AND IN THE VERDICT FORM IS, WE SHOULD SAY

12   "BRATZ RELATED WORKS," JUST TO AVOID THIS WHOLE ISSUE OF 'WAS

13   IT A FINAL FORM OF BRATZ OR NOT?'  I THINK IT'S PRETTY

14   UNDERSTOOD THAT IT'S BRATZ RELATED.  EVERYONE HAS REFERRED TO

15   THINGS AS BRATZ RELATED AS EARLY AS THE DRAWINGS THAT    01:56

16   CARTER BRYANT CONTENDS TO HAVE DONE IN 1998.  MS. GALVANO, HIS

17   MOTHER, ALL OF THE WITNESSES HAVE REFERRED to THESE AS BRATZ

18   DRAWINGS, OR BRATZ RELATEd DRAWINGS.

19           THE OWNERSHIP -- I UNDERSTAND YOUR ARGUMENT THAT IT'S

20   A DIFFERENT TYPE OF OWNERSHIP; IT'S NOT A COPYRIGHT OWNERSHIP.    01:56

21           **MR. ZELLER:**  RIGHT.  IT'S JUST PHYSICAL PROPERTY

22   ITSELF, PEN TO PAPER.

23           **THE COURT:**  IS THERE ANY DIRECTION WE CAN GIVE TO THE

24   JURY ON OWNERSHIP THAT MIGHT MAKE THAT MORE CLEAR?

25           YOU'RE CLAIMING THE OWNERSHIP BY VIRTUE OF THE    01:57

1    INVENTIONS AGREEMENT; CORRECT?

2            **MR. ZELLER:**  THAT'S RIGHT.

3            **THE COURT:**  WHAT ITEMS ARE YOU GOING TO BE ARGUING,

4    COUNSEL, THAT THE EVIDENCE SUPPORTS OWNERSHIP ON?

5            **MR. ZELLER:**  I THINK THE SHORT ANSWER IS, EVERYTHING        01:57

6    THAT'S COVERED BY THE VERDICT FORM.

7            THESE WERE ALL, FROM OUR PERSPECTIVE -- AND WE INTEND

8    TO ARGUE THAT THEY WERE CREATED DURING THE TERM OF HIS

9    EMPLOYMENT, '99 AND 2000.

10           ONE THING THAT, PERHAPS, WE COULD DO, INSTEAD OF         01:57

11   SAYING "THE RIGHTFUL OWNER," MAYBE WE CAN CHANGE THAT FIRST

12   ELEMENT TO SIMPLY SAY THAT THE WORKS WERE CREATED BY

13   CARTER BRYANT WHILE HE WAS EMPLOYED BY MATTEL.  WE COULD MAKE

14   THAT --

15           **THE COURT:**  SAY THAT AGAIN.                            01:58

16           **MR. ZELLER:**  SURE.

17           THAT THE WORKS, OR ITEMS, PROPERTY, HOWEVER WE'RE

18   GOING TO DEFINE IT, WERE CREATED BY CARTER BRYANT, ALONE OR

19   JOINTLY WITH OTHERS, WHILE HE WAS EMPLOYED BY MATTEL.

20           **THE COURT:**  ONE OF THE THINGS MR. RUSSELL WAS VERY     01:58

21   CONCERNED ABOUT YESTERDAY WAS MAKING SURE THAT WE SPECIFY THAT

22   THIS IS TANGIBLE PROPERTY.

23           **MR. NOLAN:**  YES, YOUR HONOR.

24           **MR. ZELLER:**  WE COULD SAY THAT THE TANGIBLE ITEMS...

25           **THE COURT:**  RIGHT.                                     01:58

1           **MR. NOLAN:**  NOT TO INTERRUPT MR. ZELLER, BUT IF I

2    COULD JUST --

3           **THE COURT:**  I'M GOING TO GIVE YOU A CHANCE TO

4    RESPOND, MR. NOLAN.

5           THAT TANGIBLE PROPERTY WAS CONCEIVED OR REDUCED TO     01:59

6    PRACTICE, THAT IS, CREATED, BY CARTER BRYANT, ALONE OR JOINTLY

7    WITH OTHERS, DURING THE PERIOD IN WHICH HE WAS EMPLOYED BY

8    MATTEL."  ESSENTIALLY, USE THE LANGUAGE OF THE VERDICT FORM AND

9    THE EARLIER INSTRUCTIONS.  BECAUSE THAT IS THE PROPERTY AT

10   ISSUE THAT YOU ARE CLAIMING WAS OWNED PURSUANT TO THE          01:59

11   INVENTIONS AGREEMENT.  AND INSTEAD OF GETTING INTO ISSUES OF

12   OWNERSHIP, WHICH WHAT I'M TRYING TO AVOID THERE IS GETTING INTO

13   ISSUES OF COPYRIGHT IN 1-A, BUT OWNERSHIP -- BUT FOR

14   COPYRIGHT -- AND, OF COURSE, ANY -- I'M THINKING OUT LOUD

15   HERE -- ANY DECISION THAT THE JURY MAKES WITH 1-A COULD VERY    02:00

16   WELL BE SET ASIDE BY THE COURT IN 1-B IF THE AFFIRMATIVE

17   DEFENSES, THE COURT FINDS, BASED ON ITS ASSESSMENT OF THE

18   EVIDENCE -- AND THEN, OF COURSE, I'M ALSO GOING TO HAVE

19   ADVISORY QUESTIONS ASKED TO THE JURY ON THIS -- THE AFFIRMATIVE

20   DEFENSES COULD, OF COURSE, SET THAT ASIDE, AS WELL AS THE       02:00

21   FINDINGS ON COPYRIGHT TO VITIATE ANY COPYRIGHT OWNERSHIP OF

22   THAT.  BUT THAT STILL REMAINS -- THERE'S A PROPERTY ISSUE;

23   THERE'S A DIVERSE ISSUE.

24           VERY WELL.

25           I'LL HEAR MR. NOLAN'S RESPONSE TO THIS.                02:00

1          AND THEN THE REST WILL REMAIN THE SAME.

2          WAIT A SECOND.

3          MR. ZELLER HAS NOT RESPONDED TO ONE LAST THING, AND

4    THAT WAS THE REQUEST FOR AN INSERTION OF THE DEFINITION OF

5    "PROPRIETARY INFORMATION" IN INSTRUCTION NUMBER 28 ON PAGE 31.          02:01

6          **MR. ZELLER:**  IT'S OUR CONTRACT.  IT DOESN'T BOTHER US

7    IF THE COURT READS IT.

8          **THE COURT:**  VERY WELL.

9          **MR. ZELLER:**  I DO HAVE SOME OTHER NITS; I KNOW THOSE

10   WERE THE TWO MAIN ISSUES, THOUGH.          02:01

11         **THE COURT:**  LET'S DO THOSE NOW AS WELL.

12         **MR. ZELLER:**  INSTRUCTION NUMBER 1, PAGE 1, LINE 10,

13   "I HAVE AN OPINION REGARDING THE EVIDENCE OF WHAT..."  -- I

14   ASSUME THAT'S SUPPOSED TO BE "OR," "...EVIDENCE OR WHAT YOUR

15   VERDICT SHOULD BE..."          02:01

16         **THE COURT:**  YES.  THANK YOU.  GOOD CATCH.

17         I DID THESE THIS MORNING.  I HAD MY LAW CLERK REVIEW

18   THEM.  I KNOW YOU'VE ALL REVIEWED THEM.  IT'S AMAZING.  I'VE

19   NEVER HAD A TRIAL WHERE -- I KNOW THERE'S GOING TO BE ANOTHER

20   NIT THAT WE'RE ALL GOING TO MISS WHEN WE GO THROUGH THIS.          02:01

21         **MR. ZELLER:**  THERE ARE A COUPLE OF OTHERS.

22         **MR. NOLAN:**  DID YOU EVER TRY A CASE IN FRONT OF

23   JUDGE BYRNE?

24         **THE COURT:**  I DID.  ONE OF MY FIRST TRIALS WAS BEFORE

25   HIM.  I LEARNED MORE ABOUT BEING A TRIAL ATTORNEY FROM          02:02

1    JUDGE BYRNE THAN PROBABLY ANY OTHER JUDGE IN THIS COURT.

2         **MR. NOLAN:**  I HAVE SO MANY MEMORIES OF BEING CALLED

3    TO THE SIDE-BAR ON NITS THAT WERE NOT PICKED OUT OF THE JURY

4    INSTRUCTIONS.

5         **THE COURT:**  JUDGE BYRNE TAUGHT ME A LOT.  I THINK          02:02

6    VERY HIGHLY OF HIM.  ONE OF MY PRIZED POSSESSIONS IN

7    CHAMBERS -- THAT GAVEL THAT'S SITTING ON MY CONFERENCE TABLE,

8    WHICH I KNOW YOU'VE ALL SEEN, IF YOU LOOK AT IT CLOSELY, IT WAS

9    THE GAVEL THAT HE WAS GIVEN TO MARK HIS PRESIDENCY OF THE

10   FRIENDLY SONS OF ST. PATRICK, WHICH IS AN ORGANIZATION THAT     02:02

11   GETS TOGETHER ONCE A YEAR ON ST. PATRICK'S DAY; HE WAS THE

12   PRESIDENT BACK IN 1973, '74, AND HE GAVE IT TO ME SHORTLY

13   BEFORE HE PASSED AWAY.  I THINK THE WORLD OF JUDGE BYRNE.

14        ANYWAY...

15        **MR. ZELLER:**  THEN I HAVE SOME MORE THAT WILL MAKE        02:03

16   JUDGE BYRNE PROUD.

17        ON JURY INSTRUCTION NUMBER 2, AS WE MENTIONED, WE'RE

18   FINE TAKING OUT "AFFIRMATIVE DEFENSE."

19        WITH RESPECT TO, THEN, I THINK LINE 12, BECAUSE

20   "PREPONDERANCE OF THE EVIDENCE" IS GOING TO BE THERE IN THE     02:03

21   VERDICT FORM -- AND I RECOGNIZE IT'S ALLUDED TO OR MENTIONED IN

22   THE FIRST PARAGRAPH, BUT I THINK THE LAST LINE, WHERE IT SAYS

23   "BUT IN CIVIL TRIALS SUCH AS THIS ONE, THE PARTY WHO IS

24   REQUIRED TO PROVE SOMETHING..." -- I THINK THERE MAYBE WE

25   INSERT "BY A PREPONDERANCE OF THE EVIDENCE NEED PROVE ONLY THAT  02:03

1    IT IS MORE LIKELY..." IF ONLY BECAUSE THEY ARE GOING TO HAVE

2    THAT LANGUAGE IN FRONT OF THEM ON THE VERDICT FORM, AND THIS

3    WILL ELIMINATE ANY CONFUSION, I THINK.

4         **THE COURT:**  OKAY.

5         **MR. ZELLER:**  WE TALKED ABOUT JURY INSTRUCTION                    02:03

6    NUMBER 21 WITH RESPECT TO THE OWNERSHIP LANGUAGE.

7         WHAT I HAVE NEXT IS JURY INSTRUCTION NUMBER 23.

8         I WOULD SAY WITH RESPECT TO LINE 17 --

9         **THE COURT:**  GOING BACK TO THAT 21, "OWNS THE RIGHTS

10   TO ALL BRATZ RELATED" -- AND THIS IS THE DISTINCTION BETWEEN 21   02:04

11   AND CONVERSION.  HERE, YOU'RE TALKING ABOUT OWNERSHIP OF

12   RIGHTS, PARTICULARLY COPYRIGHTS, WHEREAS IN CONVERSION, YOU'RE

13   TALKING ABOUT THE OWNERSHIP OF PROPERTY, THE PHYSICAL TANGIBLE

14   PROPERTY ITSELF.

15        PERHAPS WE CAN PHRASE THIS "IN ITS FIRST CLAIM,             02:04

16   MATTEL CONTENDS..." -- JUST BECAUSE THIS IS GOING TO BE THE

17   SAME JURY THAT'S GOING TO BE EVALUATING THIS DOWN THE ROAD, AND

18   I DON'T WANT THEM TO THINK THAT THEY'VE ALREADY DECIDED RIGHTS

19   ISSUES IN THIS FIRST PHASE -- "IN ITS FIRST CLAIM, MATTEL

20   CONTENDS THAT IT HAS CERTAIN RIGHTS TO ALL BRATZ RELATED IDEAS,  02:04

21   CONCEPTS, AND DRAWINGS."  AND THAT WAY WE SIDESTEP THE

22   OWNERSHIP ISSUE AT THIS TIME AND SAY THAT YOU HAVE CERTAIN

23   RIGHTS, WITHOUT GETTING INTO THE DETAILS OF WHAT THOSE RIGHTS

24   ARE.  ALL THE JURY IS GOING TO BE DOING IS IDENTIFYING A TIMING

25   ISSUE.  BUT YET, IT GIVES THEM A FLAVOR FOR WHAT THIS IS ABOUT.  02:05

1              I'LL HEAR FROM MR. NOLAN ABOUT THAT.

2              DO YOU HAVE ANY CONCERNS IF I CHANGE "THAT IT OWNS

3      THE RIGHTS" TO "IT HAS CERTAIN RIGHTS"?

4              **MR. ZELLER:**  NO, I DON'T, YOUR HONOR.

5              I DO WONDER TO WHAT EXTENT -- ALTHOUGH I THINK MAYBE          02:05

6      IT'S JUST PICKED UP IN THE FOLLOWING PARAGRAPH, "MATTEL'S CLAIM

7      IS BASED ON A CONTRACT," SO IT MAKES IT CLEAR WHAT THAT'S BASED

8      ON; SO I THINK THAT WORKS.

9              **THE COURT:**  ALL RIGHT.

10             IS THAT IT?                                                   02:05

11             **MR. ZELLER:**  I HAD SOME MORE.

12             **THE COURT:**  WE'RE GOING TO GET THROUGH ALL OF YOURS,

13     AND THEN MR. NOLAN's.

14             **MR. ZELLER:**  INSTRUCTION NUMBER 23, PAGE 26.

15             I THINK IT OUGHT TO BE "MERE OFFERING OF EMPLOYMENT."        02:06

16             INSTRUCTION NUMBER 26, PAGE 29, "ELEMENT NUMBER TWO,

17     THAT MR. BRYANT BREACHED HIS FIDUCIARY DUTY TO MATTEL WHILE

18     EMPLOYED AT MATTEL."  I THINK THAT LANGUAGE MAY BE FAIRER WHEN

19     WE'RE TALKING ABOUT THE DUTY OF LOYALTY.  I DON'T THINK IT

20     APPLIES TO FIDUCIARY DUTY, IN LARGE PART BECAUSE, OF COURSE,        02:06

21     THE COURT HAS ALREADY PREDICATED THE KNOWN FIDUCIARY DUTY, OR

22     AT LEAST ONE THAT'S ALREADY BEEN DECIDED AS A MATTER OF LAW,

23     BASED UPON THE PROPRIETARY INFORMATION.  THAT IS A CONTINUING

24     OBLIGATION.  SO I THINK THAT IT WOULD JUST BE THAT MR. BRYANT

25     BREACHED HIS FIDUCIARY DUTY TO MATTEL.                             02:06

| | |
|---|---|
| 1 | **THE COURT:**  I KNOW YOU HAD A MUCH MORE SPECIFIC WORD. |
| 2 | I WAS PERSUADED BY MR. RUSSELL YESTERDAY THAT, GIVEN |
| 3 | THE DEFINITION THAT WE HAVE OF FIDUCIARY DUTY DOWN BELOW, THAT |
| 4 | A MORE GENERAL STATEMENT OF BREACH OF FIDUCIARY DUTY IS |
| 5 | APPROPRIATE.  I DID MODEL IT AFTER THE DUTY OF LOYALTY, WHICH |
| 6 | CERTAINLY ENDS, AS MR. RUSSELL ARGUED, WHEN YOU LEAVE MATTEL. |
| 7 | BUT I UNDERSTAND YOUR ARGUMENT, THAT THE FIDUCIARY DUTY EXTENDS |
| 8 | BEYOND THAT. |
| 9 | BUT I'LL HEAR FROM MR. NOLAN ON THAT. |
| 10 | **MR. ZELLER:**  JUST FOR CLARITY'S SAKE, YOUR HONOR, |
| 11 | WHAT I THINK MR. RUSSELL WAS SAYING IS THAT HE BELIEVED THE |
| 12 | HARM NEEDED TO ACTUALLY ACCRUE TO MATTEL PRIOR TO THE END OF |
| 13 | THE EMPLOYMENT; SO I THINK THAT WAS THE MORE PARTICULAR |
| 14 | ARGUMENT.  BUT I THINK THIS GETS US, REGARDLESS, INTO A |
| 15 | DIFFERENT REALM WHEN YOU TALK ABOUT FIDUCIARY DUTY. |
| 16 | **THE COURT:**  I UNDERSTAND YOUR ARGUMENT. |
| 17 | **MR. ZELLER:**  I'M STILL NOT DONE.  BUT IF YOU WANT |
| 18 | MR. NOLAN TO RESPOND... |
| 19 | **THE COURT:**  NO.  HE'LL RESPOND TO ALL OF THIS AFTER |
| 20 | YOU. |
| 21 | **MR. ZELLER:**  ALSO ON THE SAME INSTRUCTION, THIS IS |
| 22 | LINE 26, IT SHOULD BE "AND TO TAKE NO ACTION." |
| 23 | **THE COURT:**  YES.  THANK YOU. |
| 24 | **MR. ZELLER:**  PAGE 32, PART OF INSTRUCTION NUMBER 28, |
| 25 | THE VERY END.  IT SHOULD BE "A BREACH OF DUTY OF LOYALTY" -- |

02:07
02:07
02:07
02:07
02:08

1       **THE COURT:**  YES.

2       **MR. ZELLER:**  -- RATHER THAN "TO LOYALTY."

3       INSTRUCTION NUMBER 29, ELEMENT FOUR, PAGE 33, "THAT

4    MATTEL WAS HARMED" -- I THINK WE OUGHT TO PICK UP ON THAT

5    SIMILAR LANGUAGE ELSEWHERE IN SOME WAY.                         02:08

6       **THE COURT:**  I DIDN'T PUT IT THERE.  I'M TRYING TO

7    BALANCE BETWEEN -- I'M NOT GIVING THE INSTRUCTION "AS A MATTER

8    OF LAW," WHICH I DO UNDERSTAND THAT YOU BELIEVE YOU'RE ENTITLED

9    TO, SINCE THE COURT HAS FOUND ALREADY ON HARM.

10      I'M TRYING TO ADDRESS THE PRACTICAL CONCERN THAT YOU      02:08

11   RAISED YESTERDAY BY GIVING YOU THAT LANGUAGE.

12      MY UNDERSTANDING IS, THAT'S NOT AN ISSUE, THOUGH, IN

13   THE CONVERSION CLAIM, AND THE COURT NEVER REACHED A FINDING OF

14   HARM ON THE CONVERSION CLAIM, AND THAT ONE IS WIDE OPEN.  I

15   DIDN'T THINK IT WAS NECESSARY THERE.                           02:08

16      AM I MISSING SOMETHING?

17      **MR. ZELLER:**  NO.  I THINK THAT HELPS ME UNDERSTAND

18   WHY THERE WAS DIFFERENT LANGUAGE IN THOSE.

19      **THE COURT:**  IT WAS INTENTIONAL.

20      **MR. ZELLER:**  PART OF IT WAS JUST IN THE EVENT THAT IF   02:09

21   SOMEONE IN THE JURY WAS SCRUTINIZING THE LANGUAGE THAT THEY

22   WOULD SEE THERE WAS A DIFFERENT AND PERHAPS READ MORE INTO IT.

23      **THE COURT:**  AGAIN, THE ELEMENT OF HARM, ASSUMING THAT

24   THEY FIND THAT PROPERTY WAS TAKEN, SEEMS PRETTY SELF-EVIDENT TO

25   THE COURT, GIVEN THE NATURE OF THE PROPERTY.  BUT IF IT TRULY   02:09

 1    WAS DE MINIMIS, THEN YOU WOULD WANT THE JURY TO FIND ON THAT

 2    ELEMENT; SO I THINK IT'S APPROPRIATE AS IT IS.

 3           ANYTHING ELSE?

 4        **MR. ZELLER:**  NO.  I THINK THAT COVERS IT WITH RESPECT

 5    TO THE JURY INSTRUCTIONS.  I KNOW WE HAVE A COUPLE OF COMMENTS          02:09

 6    ON THE VERDICT FORM.

 7        **THE COURT:**  WE'LL GO TO THAT.  LET'S GET THROUGH THE

 8    JURY INSTRUCTIONS FIRST.

 9           MR. NOLAN, YOU MAY TAKE IT FROM THE TOP, OR IN

10    WHATEVER ORDER YOU WANT TO.                                           02:09

11        **MR. NOLAN:**  LET'S GO BACK TO THE BEGINNING, JURY

12    INSTRUCTION NUMBER 2, WHERE YOU MADE THE CHANGE; THIS IS AT

13    PAGE 2 OF INSTRUCTION NUMBER 2, LINE 12.

14        **THE COURT:**  YES.

15        **MR. NOLAN:**  I WOULD ASK THE COURT THAT -- I THINK THE          02:10

16    BETTER WAY TO STATE THIS NOW WOULD BE "BUT IN CIVIL TRIALS SUCH

17    AS THIS ONE, THE PARTY WHO IS REQUIRED TO PROVE SOMETHING BY

18    PREPONDERANCE OF THE EVIDENCE NEEDS TO PROVE THAT IT IS MORE

19    LIKELY TO BE TRUE THAN NOT TRUE."

20        **THE COURT:**  YOU WANT TO TAKE OUT THE WORD "ONLY"?             02:10

21        **MR. NOLAN:**  RIGHT.  I THINK IT'S ARGUMENTATIVE.  I

22    THINK IT DIMINISHES FROM THE STANDARD OF PREPONDERANCE OF THE

23    EVIDENCE, AND IT'S ALMOST A COMMENT THAT IT IS NOT VERY MUCH.

24        **THE COURT:**  THE NINTH CIRCUIT JURY INSTRUCTION

25    COMMITTEE THAT PUT THIS TOGETHER REASONED THAT THE WORD "ONLY"        02:10

```
1   IS THERE TO BALANCE THE IMPACT OF THE PRECEDING LINE -- AND I

2   CAN SAY THAT AUTHORITATIVELY -- THE WORD "ONLY" WAS

3   SPECIFICALLY CHOSEN TO BALANCE THE PRO DEFENSE ASPECT OF HAVING

4   A LINE PRECEDING IT IN THERE.

5           MR. NOLAN:  YOUR HONOR, I HATE TO TAKE ON THE PANEL,      02:11

6   ESPECIALLY WITH A DISTINGUISHED MEMBER.

7           THE COURT:  I'M A MEMBER AND I TREAD WITH

8   TREPIDATION.

9           MR. NOLAN:  I ACCEPT THAT, YOUR HONOR.

10          I DO THINK, THOUGH, THAT THE CONTRAST BY THE            02:11

11  INCLUSION OF THE WORD "REQUIRED TO PROVE SOMETHING BY A

12  PREPONDERANCE OF THE EVIDENCE," THEN YOU MOVE ON, "NEEDS TO BE

13  PROVED THAT IT IS MORE LIKELY TO BE TRUE" -- THAT THE "ONLY"

14  BECOMES ALMOST A COMMENTARY ON PREPONDERANCE OF THE EVIDENCE,

15  WHICH WAS NOT THERE BEFORE MR. ZELLER PUT THAT IN.  THAT'S MY   02:11

16  ONLY POINT.

17          AND I DON'T THINK IT DETRACTS ANYTHING.  I THINK IT

18  STILL STAYS THE SAME; THAT THEY HAVE TO PROVE IT'S MORE LIKELY

19  TO BE TRUE THAN NOT.  THAT'S THE REAL STANDARD.

20          THE COURT:  I UNDERSTAND YOUR ARGUMENT.                 02:11

21          I'LL TAKE A LOOK AT IT.

22          MR. NOLAN:  THANK YOU.

23          YOUR HONOR, WITH RESPECT TO THE ISSUE OF JURY

24  INSTRUCTION NUMBER 21 AND THE PROPOSAL THAT SAYS "MATTEL

25  CONTENDS THAT IT HAS CERTAIN RIGHTS..." I THINK THAT GIVEN THE  02:12
```

1    PREVIOUS OBJECTIONS TO THIS WHOLE LINE WHICH ARE PRESERVED -- I

2    THINK THAT IS THE MORE APPROPRIATE WAY TO HANDLE IT, IN LIGHT

3    OF THE COURT'S DIRECTIONS TO US.  I THINK THAT WORKS.

4            **THE COURT:**  VERY WELL.

5            **MR. NOLAN:**  SAME WAY WITH THE CHANGE ON PAGE 23, "TO          02:12

6    PREVAIL ON ITS CLAIM FOR OWNERSHIP," AGAIN PRESERVING ALL OF

7    THE OBJECTIONS THAT WE'VE PREVIOUSLY MADE.

8            I DO WANT TO SAY THAT WITH RESPECT TO THE JURY

9    INSTRUCTION WITH RESPECT TO BREACH OF FIDUCIARY DUTY, WE

10   CERTAINLY --                                                            02:12

11           **THE COURT:**  WHERE ARE WE AT?

12           **MR. NOLAN:**  26.  THIS IS THE ONE MR. RUSSELL WAS

13   MAKING YESTERDAY.

14           WE DO BELIEVE, YOUR HONOR, THAT OTHER THAN THE

15   CORRECTION THAT'S NOTED ON LINE 26 -- BUT THE REST OF IT,              02:13

16   "WHILE EMPLOYED AT MATTEL," IT IS A CRITICAL FACTOR; WE STAND

17   ON ALL OF THE ARGUMENTS THAT WE PREVIOUSLY MADE.

18           **THE COURT:**  AS MR. ZELLER NOTED, IT WAS A DIFFERENT

19   ARGUMENT YESTERDAY.  THAT WAS DEALING WITH THE HARM.  THAT'S

20   ONE THING.                                                             02:13

21           IS IT NOT THE CASE THAT YOU CAN BREACH YOUR FIDUCIARY

22   DUTY -- IF YOU HAVE A FIDUCIARY DUTY WITH SOMEONE AND THAT

23   FIDUCIARY DUTY PARTICULARLY ARISES IN THE CONTEXT OF KEEPING

24   CONFIDENTIAL INFORMATION, THAT THAT FIDUCIARY DUTY CONTINUES ON

25   PAST THE RELATIONSHIP OR THE EMPLOYMENT?                              02:13

```
 1          THINK ONLY, FOR A MOMENT, OF YOUR OWN DUTY TO YOUR

 2    CLIENTS TO KEEP CONFIDENTIAL THEIR COMMUNICATIONS.  THAT'S A

 3    FIDUCIARY DUTY.  YOU CERTAINLY CAN'T ARGUE THAT YOU WOULD NOT

 4    BE IN BREACH OF THAT FIDUCIARY DUTY SIMPLY BECAUSE YOU NO

 5    LONGER HAVE THE ATTORNEY-CLIENT RELATIONSHIP.                   02:13

 6          MR. NOLAN:  NO, YOUR HONOR.  BUT I THINK THE

 7    CONFUSION THAT ARISES IS THAT -- AS I READ IT, THERE'S NO

 8    LIMITATION AS TO WHAT THE FIDUCIARY DUTY IS.

 9          FOR INSTANCE, I HAVE A FIDUCIARY DUTY NOT TO DISCLOSE

10    CONFIDENTIAL MATERIAL.  I, HOWEVER, HAVE NO FIDUCIARY DUTY,    02:14

11    ASSUMING I CAN GET OVER CONFLICTS, TO TAKE ON LITIGATION AND

12    TAKE ADVERSE POSITIONS.  THAT ONLY HAS A CERTAIN LIMITATION ON

13    MY RESPONSIBILITIES.  AND I THINK HERE, UNLESS WE DEFINE IT

14    THAT WAY, THERE IS NO EVIDENCE IN THIS CASE THAT COULD BE FOUND

15    CONFUSING TO THE JURY ABOUT CARTER BRYANT DISCLOSING           02:14

16    CONFIDENTIAL INFORMATION AFTER HE LEFT MATTEL.

17          THE WHOLE ISSUE IN THIS CASE IS THAT HE DID SOMETHING

18    BEFORE HE LEFT MATTEL.  AND I THINK THAT'S WHY LIMITING IT THIS

19    WAY WOULD BE APPROPRIATE IN LIGHT OF THIS.  THAT'S WHY I THINK

20    IT HAS MEANING, IT HAS SUBSTANCE, IT'S THE CORRECT PROPOSITION. 02:15

21    AND MORE IMPORTANTLY, MR. ZELLER'S CONCERN IS NOT RAISED OR

22    FRAMED IN THE EVIDENCE THAT'S BEEN TRIED IN THIS CASE.

23          THE COURT:  I'LL CERTAINLY GO BACK TO MR. ZELLER ON

24    THAT VERY POINT.

25          "DID CARTER BRYANT DO ANYTHING, BASED ON THE EVIDENCE    02:15
```

```
 1   IN THIS TRIAL, TO BREACH HIS FIDUCIARY DUTY AFTER HE LEFT

 2   MATTEL ON OCTOBER 19, 2000?"

 3            WE'LL COME BACK TO THAT.

 4            MR. NOLAN:  THANK YOU.

 5            AND, YOUR HONOR, THE LAST POINT I WANT TO MAKE, THE          02:15

 6   LAST COMMENT I HAVE, IS TO FOCUS ON JURY INSTRUCTION NUMBER 29.

 7            RESPECTFULLY, I THINK THAT OFTENTIMES FIRST INSTINCTS

 8   ARE THE RIGHT ONES.  I HAVE FOUND THAT OFTEN, IN TERMS OF

 9   REACTING TO SITUATIONS.

10            YOUR FIRST INSTINCT WAS TO SAY, YOU KNOW, THIS             02:15

11   CONVERSION CLAIM REALLY SHOULDN'T BE PART OF 1-A BECAUSE OF THE

12   OWNERSHIP COMPONENT WHICH IS A CRITICAL ELEMENT OF THE

13   CONVERSION CLAIM.

14            OUR CONCERN, YOUR HONOR, IS, NOW, HAVING TAKEN OUT

15   THE OWNERSHIP ISSUE FOR THE JURY -- IN FACT, THE VERDICT FORM,      02:16

16   WHEN WE GET TO THE VERDICT FORM, HAS, ON THE FRONT PAGE, TIMING

17   ISSUES.

18            THE COURT:  I TOOK OUT "OWNERSHIP."  RIGHT.

19            RESPOND TO MR. ZELLER'S ARGUMENT, THOUGH.  HE'S

20   SAYING THIS IS A DIFFERENT TYPE OF OWNERSHIP.  THE OWNERSHIP        02:16

21   THERE I WANT TO AVOID, WHICH I'VE TRIED TO AVOID THROUGHOUT

22   THIS ENTIRE TRIAL, IS ON OWNERSHIP BASED ON OWNING THE

23   COPYRIGHTS.

24            MR. NOLAN:  CORRECT.

25            THE COURT:  THAT'S WHAT I'VE SAID IS A 1-B ISSUE.          02:16
```

1           SO AT FIRST BLUSH, WHAT WENT OFF IN MY MIND IS,

2    APPARENTLY, THE SAME THING WHEN YOU WOKE UP THIS MORNING, IS

3    THAT, ARE WE NOT TALKING ABOUT COPYRIGHT OWNERSHIP?

4           MR. ZELLER SUGGESTED THE OWNERSHIP HERE IN THE

5    CONTEXT OF A CONVERSION CLAIM IS A MUCH SIMPLER UNDERSTANDING          02:16

6    OF OWNERSHIP.  IT'S SIMPLY PREDICATED ON THE LANGUAGE OF THE

7    CONTRACT WHICH SAYS THAT MATTEL BASICALLY OWNS -- IT'S UNDER

8    THE OWNERSHIP OF INVENTIONS LANGUAGE -- IT SAYS THAT THEY OWNED

9    SOMETHING THAT WAS CREATED WHILE HE WORKED THERE, IF THE JURY

10   FINDS THAT HE CREATED SOMETHING.                                       02:17

11          FOR PURPOSES OF THIS TORT, OR FINDING THIS TORT --

12   AND, OF COURSE, ALL OF THIS IS SUBJECT TO YOUR AFFIRMATIVE

13   DEFENSES THAT HAVE BEEN REVERSED FOR 1-B -- THAT'S THE TYPE OF

14   OWNERSHIP WE'RE TALKING ABOUT.

15          **MR. NOLAN:**  RIGHT.  SO LET ME ADDRESS THAT.                 02:17

16          I DON'T THINK THEY CAN HAVE IT BOTH WAYS.

17          IT'S INTERESTING THAT ON THE TORT CLAIM, THEY REVERT

18   BACK TO -- AND OBVIOUSLY, THEY MUST, BECAUSE IT DEFINES THEIR

19   RIGHTS -- PARAGRAPH 2-A OF THE INVENTIONS AGREEMENT, WHICH

20   DEFINES INVENTIONS.  AND THEY SAY, THEREFORE, FROM THAT RIGHT          02:17

21   OR THAT OBLIGATION, THEY HAVE A RIGHT ON A TORT CLAIM TO COME

22   IN AND TAKE THE TANGIBLE REPRESENTATION OF THAT PROPERTY.

23          **THE COURT:**  I THINK THEY WOULD JUST AS SOON ALSO HAVE

24   THAT ON COPYRIGHT CLAIMS.  THEY WOULD MUCH RATHER NOT GO

25   THROUGH THE WHOLE -- THEY WOULD BE WILLING TO STIPULATE RIGHT          02:18

```
 1    NOW, I'M SURE, THAT THAT DECIDES EVERYTHING.

 2            MR. NOLAN:  THAT'S MY POINT, YOUR HONOR, THAT --

 3          THE COURT:  THEY DON'T HAVE MUCH TIME LEFT.

 4          MR. NOLAN:  MY POINT IS, YOUR HONOR, THAT I THINK

 5    THIS IS PRESENTING A LOT OF CONFUSION; IT HAS A LIKELIHOOD OF     02:18

 6    CREATING CONFUSION WITH THE JURY.

 7            MY BELIEF IS THAT THIS IS A VERY BRIGHT JURY AND A

 8    VERY ATTENTIVE ONE.

 9          THE COURT:  YES, THEY ARE.

10          MR. NOLAN:  AND WHAT THEY ARE GOING TO DO IS, THEY     02:18

11    ARE GOING TO TAKE A LOOK AT THE CONTRACT AND LOOK AT WHAT THE

12    CONVERSION IS AND THE DEFINITION OF THE PROPERTY.  AND I DIDN'T

13    TAKE IT DOWN IN SHORTHAND, AND I APOLOGIZE -- IF IT WAS TO BE

14    "BRATZ RELATED WORKS, SUCH AS MR. BRYANT'S DRAWINGS..."  I ALSO

15    THOUGHT THIS CONVERSION CLAIM WAS GOING TO BE RELATED TO THE     02:18

16    PROTOTYPE, LET'S SAY.  BECAUSE I CAN UNDERSTAND THAT; THAT'S

17    TANGIBLE PROPERTY OF MATTEL.  BUT ANYTHING ELSE -- IF YOU'RE

18    TALKING ABOUT OWNERSHIP THAT COMES CLOSE TO TANGIBLE RELATED

19    BRATZ PROPERTY, WHICH TRIGGERS ANY INTEREST IN THOSE SKETCHES,

20    DRAWINGS, ITEMS, HOWEVER YOU WANT TO DESCRIBE THEM, I THINK     02:19

21    YOU'RE NECESSARILY INVOKING COPYRIGHT NOTIONS WITHIN THE

22    CONVERSION CLAIM.

23            THE COURT:  I THINK THAT GETS SORTED OUT ON DAMAGES,

24    BECAUSE THEY ARE GOING TO BE LIMITED ON CONVERSION TO

25    CONVERSION TYPE DAMAGES, THE VALUE OF THE PROPERTY IN QUESTION.     02:19
```

```
 1   THEY ARE NOT GOING TO GET THE COPYRIGHT DAMAGES UNLESS THEY CAN
 2   ESTABLISH THE COPYRIGHTABILITY -- THEIR OWNERSHIP OF THE
 3   COPYRIGHT INTEREST IN THOSE DRAWINGS.  THAT'S WHERE THE VALUE
 4   OF THIS CASE IS.  IT'S NOT CLEAR AT THE END OF THE DAY WHAT
 5   THEY GET OUT OF THIS CONVERSION CLAIM.  AND I THINK WE'VE HAD      02:19
 6   THAT DISCUSSION BEFORE.
 7           MR. NOLAN:  WE HAVE, AND I THINK I'VE PREVIOUSLY
 8   LOOSELY SAID THAT WITH RESPECT TO, FOR INSTANCE, THE EVENING
 9   WEAR OR THE COLOR.
10           THE COURT:  BUT AT THE END OF THE DAY, ALL THAT           02:20
11   ISAAC LARIAN HAS TO PAY, OR MGA HAS TO PAY, IS THE VALUE OF THE
12   DOLL AND THE PAPER AND STUFF THAT WAS STOLEN.  THERE'S NO
13   COPYRIGHT.
14           MR. NOLAN:  I'VE OFFERED TO PAY FOR THE COST OF
15   FRAMING.                                                         02:20
16           THE COURT:  I SUSPECT YOU HAVE, COUNSEL.
17           MR. NOLAN:  WITHOUT BEING CUTE --
18           THE COURT:  I DON'T MEAN TO MINIMIZE IT EITHER, BUT
19   IT DOES PUT IN PERSPECTIVE WHAT THIS CLAIM IS AND IS NOT.
20           MR. NOLAN:  IF THAT'S THE CLAIM, THEN -- AND IF WE'RE    02:20
21   ONLY TALKING ABOUT, LET'S SAY, THE EVENING WEAR, OR THE COLOR
22   ENHANCEMENTS, THEN I CAN UNDERSTAND THAT.
23           THE CONFUSION, I BELIEVE, COMES IN WHEN THE
24   CONVERSION CLAIM STATES SUCH WORKS AS, SUCH THINGS AS
25   MR. BRYANT'S DRAWINGS.  IT SWEEPS IN ALL OF THE DRAWINGS.        02:20
```

1   AND I BELIEVE THAT IT DOES CREATE THE POTENTIAL FOR CONFLICT,

2   AND WHAT MIGHT COME UP HERE IS THAT THEY ARE GOING TO ARGUE

3   THAT THERE MAY BE AN INCONSISTENT VERDICT.  AND THE

4   INCONSISTENCY IN THE VERDICT ARISES OUT OF --

5        **THE COURT:**  THIS, I THINK, SHOWS THE WISDOM OF            02:21

6   PUTTING ALL OF THAT IN QUESTIONS ONE AND TWO AT THE BEGINNING.

7   THEY WILL HAVE ALREADY FOUND WHAT WAS AND WAS NOT DONE BY

8   CARTER BRYANT DURING HIS EMPLOYMENT AT MATTEL.

9        AN INCONSISTENCY WOULD ARISE IF THERE WAS NOTHING

10  DONE BY CARTER BRYANT IN 1999 AT MATTEL AND THEY CAME BACK AND   02:21

11  FOUND MGA LIABLE OR ISAAC LARIAN -- IT WOULD REALLY BE WEIRD IF

12  THEY CAME BACK WITH MGA HONG KONG LIABLE FOR ANYTHING ON A

13  CONVERSION CLAIM; THAT WOULD BE INCONSISTENT.  BUT AS LONG AS

14  THEY FIND SOMETHING WAS DONE IN 1999 AND THEY FIND THE

15  CONVERSION, THAT'S GOING TO BE CONSISTENT; THAT'S GOING TO BE    02:21

16  QUITE CLEAR WHAT IT IS THAT THEY ARE FINDING.

17       **MR. NOLAN:**  IF I'M ALLOWED TO ARGUE, THEN, SO THAT I

18  UNDERSTAND IT -- NOW I UNDERSTAND IT, BUT CAN I ASK THE COURT'S

19  INDULGENCE AND JUST GIVE ME THE EDIT THAT YOU WERE GOING TO

20  MAKE TO THIS IN RESPONSE TO MR. ZELLER.                          02:22

21       **THE COURT:**  I'M THINKING OF TAKING AWAY THE LINE THAT

22  MATTEL WAS THE RIGHTFUL OWNER OF THE PROPERTY AT ISSUE, BECAUSE

23  I DO AGREE THAT IN THE CONTEXT OF THIS CASE THAT EITHER NEEDS

24  TO BE FURTHER DEFINED OR -- IT'S JUST INADEQUATE.

25       WHAT I'M THINKING OF PUTTING IN IS THAT "THAT               02:22

```
 1    TANGIBLE PROPERTY" -- I KNOW HE'S NOT HERE TODAY, BUT
 2    MR. RUSSELL'S ADDING THE WORD TANGIBLE IS A NOD TO HIM -- "THAT
 3    TANGIBLE PROPERTY WAS CONCEIVED OR REDUCED TO PRACTICE, THAT
 4    IS, CREATED, BY CARTER BRYANT, ALONE OR JOINTLY WITH OTHERS,
 5    DURING THE TIME OF HIS EMPLOYMENT AT MATTEL."                      02:22
 6              I WILL COPY THE LANGUAGE THAT IS SET FORTH AND
 7    REPEATED THROUGHOUT QUESTIONS ONE AND TWO OF THE VERDICT FORM.
 8    WE'RE TALKING ABOUT THE TANGIBLE PROPERTY HERE.  THAT'S JUST
 9    THE FIRST ELEMENT.  AND THEN IF THE DEFENDANTS TOOK POSSESSION
10    OF IT FOR A SIGNIFICANT PERIOD OF TIME, THAT MATTEL DID NOT       02:23
11    CONSENT -- OF COURSE, YOU CAN USE THE CIRCUMSTANTIAL OR DIRECT
12    EVIDENCE ON CONSENT -- MATTEL WAS HARMED AND IT WAS A
13    SUBSTANTIAL FACTOR IN CAUSING HARM -- YOU'VE GOT CONVERSION,
14    FOR WHAT IT'S WORTH.
15              MR. NOLAN:  RIGHT.                                      02:23
16              THE COURT:  I'M GOING TO THINK ABOUT THIS SOME MORE.
17              AND THE OTHER CHANGE IS FROM "TANGIBLE BRATZ WORKS"
18    TO "BRATZ RELATED WORKS," BECAUSE I DON'T WANT THERE TO BE THIS
19    CONFUSION THAT WE'RE SOMEHOW TALKING ABOUT THE FINAL PRODUCT
20    BRATZ.                                                           02:23
21              MR. NOLAN:  YOUR HONOR, AS LONG AS I CAN CONTINUE TO
22    ARGUE THAT THESE CONCEPTS BY MR. BRYANT WERE CREATED IN 1998
23    AND NOT IN 1999, WITHOUT RESORTING TO THE 3-D DOLLS -- I'VE
24    ALREADY TOLD YOU I'M NOT DOING THAT -- THEN I UNDERSTAND.
25              BUT I DO THINK THAT WITH RESPECT TO THIS CLAIM, I      02:24
```

1  NEED TO BE ABLE TO ARGUE THAT THE CONCEPT, THE IDEA FOR BRATZ,

2  AND ITS REDUCTION TO PRACTICE OCCURRED IN 1998, NOT 1999.

3       **THE COURT:**  YOU CAN MAKE THAT ARGUMENT ON ALL OF THE

4  CLAIMS.  IT DOESN'T GO TO THE ISSUE OF CONVERSION SO MUCH,

5  BECAUSE CONVERSION JUST FOCUSES ON WHO OWNS THE ACTUAL TANGIBLE     02:24

6  PROPERTY CREATED IN 1999.

7       TO THE EXTENT HE DID CREATE -- YOU'RE GOING TO BE --

8  I CAME CLOSE ON SUMMARY JUDGMENT ON THE CONVERSION CLAIM,

9  BECAUSE I DON'T THINK -- I COULDN'T DECIDE IT BECAUSE THERE WAS

10 A DISPUTE ON THE TIMING OF SOME OF THESE DRAWINGS.  BUT ONCE WE     02:24

11 GET THE ISSUE ON TIMING, WE'RE GOING TO KNOW A LOT MORE ABOUT

12 CONVERSION, PROBABLY, THAN WE ARE ABOUT COPYRIGHT.

13      **MR. NOLAN:**  I ACCEPT THE COURT'S COMMENTS.

14      I GUESS THE CONFUSION THAT STILL ARISES IS THAT --

15 THE COURT'S RESERVATION ABOUT -- THERE WAS A LOT OF TESTIMONY       02:25

16 ABOUT WHETHER OR NOT THE 1999 PROCESS, THE DRAWINGS, WHATEVER

17 LED TO THE ESTABLISHMENT OF WHAT MIGHT BE DESCRIBED AS THE 1999

18 DRAWINGS --

19      **THE COURT:**  YOU MEAN THE 1998 DRAWING LED TO THE

20 ESTABLISH -- WE DID GO ROUND AND ROUND ON THIS YESTERDAY,          02:25

21 COUNSEL.

22      **MR. NOLAN:**  I WANT TO MAKE CERTAIN THAT WITH RESPECT

23 TO THAT -- I JUST WANT TO MAKE CERTAIN THAT I UNDERSTAND THAT

24 THE ARGUMENT I'M STILL ALLOWED TO MAKE IS OBVIOUSLY THAT BRATZ

25 WAS DEVELOPED IN 1998.                                             02:25

1          **THE COURT:**  THAT'S THE LEAD-OFF QUESTION, 'WHEN DID

2    BRYANT CONCEIVE THE BRATZ CHARACTERS?'

3          YOU CAN ARGUE THAT FOR TWO AND A HALF HOURS.

4          **MR. NOLAN:**  I APOLOGIZE.  AND I APPRECIATE THE

5    PATIENCE.                                                    02:26

6          **THE COURT:**  THAT'S OBVIOUSLY A CRITICAL ARGUMENT AND

7    A CRITICAL POINT AND A CRITICAL QUESTION FOR PURPOSES OF

8    COPYRIGHT.  THAT'S GOING TO BE A CRITICAL QUESTION FOR THE JURY

9    TO ANSWER.  I'M ANXIOUS TO HEAR HOW THE JURY IS GOING TO DECIDE

10   THAT.  THAT IS WHAT HAS BEEN, I THINK, VERY WELL ARGUED IN THIS  02:26

11   CASE, DEVELOPED IN THIS CASE EVIDENTIARY.

12         I THINK BOTH SIDES HAVE DONE AN OUTSTANDING JOB FOR

13   YOUR CLIENTS IN BRINGING OUT ALL OF THE EVIDENCE THAT IS

14   POSSIBLY RELEVANT TO THE JURY'S CONSIDERATION OF THAT CRITICAL

15   QUESTION:  'WHEN DID CARTER BRYANT CONCEIVE THESE BRATZ         02:26

16   CHARACTERS?'  THAT IS AN ESSENTIAL ISSUE, THE CENTRAL ISSUE,

17   WHETHER IT WAS IN 1998 BACK IN MISSOURI OR IN 1999 AT MATTEL.

18         AND I'M PLEASED THAT WE'RE AT THAT POINT AND THAT THE

19   TRIAL HAS LED TO THAT BEING THE FIRST QUESTION, BECAUSE THAT IS

20   THE CENTER OF THE DISPUTE, AS I SEE IT, IN THIS PHASE, AT THIS  02:27

21   JUNCTURE.  FROM THAT, IDENTIFYING PARTICULAR DRAWINGS ONE WAY

22   OR THE OTHER, THE SIGNIFICANCE OF THAT WON'T COME INTO PLAY

23   UNTIL AND UNLESS WE SEE HOW THE JURY DECIDES ON THOSE DRAWINGS

24   AND MAY VERY WELL NECESSITATE FURTHER EVIDENCE IN 1-B.

25         AND THEN THE STATE TORT CLAIMS BEING WHAT THEY ARE --     02:27

```
 1   I MEAN, THEY'RE KIND OF SEPARATE ISSUES APART FROM THIS.  THIS

 2   LAST ONE, CONVERSION, IS RELATED IN THE SENSE THAT IT TURNS --

 3   THE MATTEL CLAIM FOR OWNERSHIP TURNS ON WHEN THESE THINGS WERE

 4   DONE.  BUT YOU'RE CERTAINLY ABLE TO ARGUE ABOUT THIS

 5   CONCEPTION.                                                        02:27

 6        IT'S NOT CLEAR THAT THE CONCEPTION ARGUMENT -- IF

 7   WHAT YOU'RE ASKING IS WHETHER THIS CONCEPTION ARGUMENT IN 1998

 8   SOMEHOW DEFEATS THE CONVERSION CLAIM, MY SENSE IS THAT IT DOES

 9   NOT BY ITSELF.

10        MR. NOLAN:  RIGHT.  THAT GETS TO MY (UNINTELLIGIBLE)          02:28

11   BLACK FRAMING KIND OF TERMINOLOGY.

12        I DO WANT TO GO BACK TO ONE THING AND JUST PUT A

13   FINER POINT ON SOMETHING SO THAT EVERYBODY UNDERSTANDS HOW FAR

14   THIS GOES.

15        WITH RESPECT TO THE 1999 COMPONENT OF THE DRAWING,           02:28

16   LET'S SAY, A PIECE OF PAPER THAT HAS AN OBJECT ON IT, WHAT I

17   BELIEVE, BASED ON THE GUIDANCE PROVIDED BY THE COURT -- IT'S

18   NOT MY INTENT TO ARGUE THE OWNERSHIP ISSUE OF ANY OF THOSE,

19   OBVIOUSLY.  BUT IT DOES SEEM TO ME THAT IT'S CRITICAL -- TO

20   AVOID CONFUSION WITH THE JURY IN ARGUING THAT THE CONCEPT WAS     02:28

21   CREATED AND IT WAS MANIFEST IN 1998, ACCORDING TO US, IN

22   KIMBERLING CITY -- THAT I BE ALLOWED TO EMPHASIZE THAT POINT BY

23   DEMONSTRATING THAT THE 1998 DRAWINGS -- THAT WE BELIEVE THE

24   EVIDENCE SAYS WAS PUT IN 1998, WAS USED BY CARTER BRYANT WITH

25   RESPECT TO 1999, WITHOUT ANY CHANGE IN THE CONCEPT, WITHOUT       02:29
```

1   GOING INTO THE OWNERSHIP.  BECAUSE I THINK IT'S THAT

2   DISTINCTION --

3            **THE COURT:**  I UNDERSTAND YOUR ARGUMENT.

4            **MR. NOLAN:**  I JUST WANT TO BE ABLE TO MAKE THAT

5   ARGUMENT.  AND I UNDERSTAND FROM EVERYTHING THAT I'VE READ THAT          02:29

6   THAT'S THE ARGUMENT THAT I CAN MAKE, AND THAT'S WHAT I INTEND

7   TO BE MAKING THAT ARGUMENT ON, YOUR HONOR, BECAUSE I THINK THAT

8   GOES WITHOUT GOING TO THE OWNERSHIP.

9            **THE COURT:**  VERY WELL.

10           **MR. NOLAN:**  THANK YOU VERY MUCH.                            02:29

11           **THE COURT:**  MR. ZELLER, IF I COULD FIRST HEAR FROM

12  YOU ON THIS POINT, ON INSTRUCTION NUMBER 26.  YOU WANT ME TO

13  LEAVE OPEN THE OPPORTUNITY FOR MATTEL TO ARGUE THAT THERE WAS A

14  BREACH OF THE FIDUCIARY DUTY AFTER HE WAS EMPLOYED AT MATTEL.

15           IS THERE ANY EVIDENCE TO THAT EFFECT?                          02:30

16           **MR. ZELLER:**  I THINK THAT THERE IS, AND I THINK THAT

17  I CAN GIVE AN EXAMPLE.  BUT IT OCCURS TO ME FIRST.  I'M SURE,

18  GIVEN MORE TIME, I CAN COME UP WITH SOME ADDITIONAL ONES.

19           WHAT I WOULD SAY ARE THE FINAL FASHION DRAWINGS, THE

20  WRITTEN CORRESPONDENCE, MAKES IT PRETTY CLEAR THEY WERE BEING           02:30

21  WORKED ON AT A TIME WHEN CARTER BRYANT WAS EMPLOYED BY MATTEL;

22  THESE ARE E-MAILS IN THE MID TO OCTOBER 20TH TIME PERIOD.

23           AND THEN THE JURY COULD REASONABLY INFER, AND MAYBE

24  MGA IS GOING TO ARGUE, THAT BRYANT DIDN'T ACTUALLY DISCLOSE

25  THOSE TO THEM UNTIL AFTER HE LEFT.  BECAUSE IT DOES TALK --             02:30

```
 1    IT'S RIGHT ON THAT WHOLE CUSP KIND OF PERIOD.  MAYBE THE JURY

 2    WILL CONCLUDE THAT HE DID BOTH, THAT HE MADE THE DRAWINGS AND

 3    DELIVERED THEM TO MGA PRIOR TO THE TIME THAT HE LEFT.  BUT THIS

 4    IS A PERFECT EXAMPLE OF WHY THIS PROVISION, "WHILE EMPLOYED AT

 5    MATTEL," SHOULDN'T BE IN THERE.  IT DOESN'T MATTER IF HE          02:31

 6    DELIVERED THEM TO THEM ON THE 19TH VERSUS THE 21ST VERSUS THE

 7    25TH, IF THOSE ARE DRAWINGS THAT THE JURY CONCLUDES THAT HE

 8    CREATED WHILE HE WAS A MATTEL EMPLOYEE.

 9         THE COURT:  I'LL TAKE A FURTHER LOOK AT THAT.

10         ANYTHING MORE ON THIS CONVERSION CLAIM?                       02:31

11       MR. ZELLER:  NO, YOUR HONOR.

12         OTHER THAN, I THINK, THE ISSUE THAT MR. NOLAN WAS

13    RAISING ABOUT -- THERE'S THIS CONVERGENCE BETWEEN SOME ISSUE ON

14    COPYRIGHT VERSUS CONVERSION.  I DON'T SEE IT.  I THINK THE

15    COURT'S SUMMARY JUDGMENT ORDER MAKES IT CLEAR WHAT'S LEFT IN       02:32

16    TERMS OF THE CONVERSION CLAIM, AND IT'S THE TANGIBLE PHYSICAL

17    THING THAT'S AT ISSUE.  AND I DON'T THINK THAT THE NUANCES AND

18    THE ISSUES CONCERNING SCOPE OF COPYRIGHT PROTECTABILITY, OR

19    PROTECTABILITY FOR THAT MATTER AT ALL -- IT WOULDN'T HAVE

20    MATTERED IF IT WAS A STICK FIGURE.  IF HE DID IT WHILE AT          02:32

21    MATTEL, WE OWN THE PHYSICAL TANGIBLE THINGS.

22         THE COURT:  AND THE DAMAGES FROM THAT IS A SEPARATE

23    ISSUE FOR 1-B.

24         MR. ZELLER:  EXACTLY.

25         I WOKE UP THIS MORNING IN A STARTLED MANNER.  THERE'S         02:32
```

1    ONE STANDARD INSTRUCTION THAT I THINK, AFTER READING THESE

2    THROUGH, WE OUGHT TO ADD, AND THIS IS THE NINTH CIRCUIT CIVIL

3    JURY INSTRUCTION 4.2.  IT'S THE ONE THAT SAYS "UNDER THE LAW, A

4    CORPORATION IS CONSIDERED TO BE A PERSON.  IT CAN ONLY ACT

5    THROUGH ITS EMPLOYEES, AGENTS, DIRECTORS, OR OFFICERS.                  02:33

6    THEREFORE, A CORPORATION IS RESPONSIBLE FOR THE ACTS OF ITS

7    EMPLOYEES, AGENTS, DIRECTORS, AND OFFICERS PERFORMED WITHIN THE

8    SCOPE OF AUTHORITY."

9            IT'S STANDARD LANGUAGE.  OBVIOUSLY, WE HAVE CORPORATE

10   DEFENDANTS AND INDIVIDUAL DEFENDANTS IN THIS CASE.  I THINK          02:33

11   THAT MAY BE AN APPROPRIATE INSTRUCTION FOR THE JURY TO HAVE SO

12   THAT THEY HAVE THAT DIRECTION FROM THE COURT.

13           **THE COURT:**  4.2, "UNDER THE LAW, A CORPORATION IS

14   CONSIDERED TO BE A PERSON.  IT CAN ONLY ACT THROUGH ITS

15   EMPLOYEES, AGENTS, DIRECTORS, OR OFFICERS.  THEREFORE, A              02:33

16   CORPORATION IS RESPONSIBLE FOR THE ACTS OF ITS EMPLOYEES,

17   AGENTS, DIRECTORS, AND OFFICERS PERFORMED WITHIN THE SCOPE OF

18   AUTHORITY."

19           **MR. ZELLER:**  WE'RE NOT ASKING FOR ANY MODIFICATION.

20   IT WOULD JUST BE THE STRAIGHT MODEL INSTRUCTION.                      02:34

21           **THE COURT:**  ANYTHING ELSE?

22           **MR. ZELLER:**  I THINK THAT COVERS IT, YOUR HONOR.

23           **THE COURT:**  LET ME HEAR FROM MR. NOLAN ON 4.2.

24           AND IF YOU WANT SOME TIME -- I KNOW THIS IS KIND OF A

25   NEW ISSUE.                                                           02:34

1      **MR. NOLAN:**  FOR THE FIRST TIME IN THIS CASE, I'M

2   HAPPY TO -- NOT HAPPY, BUT, YOU KNOW -- EVEN THOUGH IT'S LATE

3   AND IT'S A LATE SUBMISSION, I THINK 4.2 IS THE STANDARD

4   INSTRUCTION.  THEY HAVEN'T MODIFIED IT.  IF IT ALLOWS

5   MR. ZELLER TO SLEEP A LITTLE BIT LONGER, I'M PLEASED TO DO        02:34

6   THAT.  I THINK IT'S A CORRECT STATEMENT.

7           **THE COURT:**  IT IS.

8           **MR. NOLAN:**  I DON'T THINK IT'S NECESSARY, BUT

9   NEVERTHELESS, I THINK WE'VE SPENT SO MUCH TIME, I'M NOT GOING

10  TO MAKE A WEIGHTLESS ARGUMENT.                                    02:35

11          **THE COURT:**  IF THE PARTIES DON'T OBJECT -- I DID THE

12  NUMBERING BY HAND, NOT AUTOMATICALLY -- CAN I JUST ADD THIS AS

13  A SECOND PARAGRAPH TO THE 4.1 INSTRUCTION, SO WE DON'T HAVE TO

14  HAVE A SEPARATE NUMBERED INSTRUCTION.  I WOULD HAVE TO GO BACK

15  AND DELETE, AND I'LL MESS SOMETHING UP.  I'LL JUST STICK IT IN    02:35

16  THERE.  WE'LL TALK ABOUT CONSIDERING CORPORATIONS LIKE

17  EVERYBODY ELSE.  IT WILL JUST BE THE CORPORATION INSTRUCTION.

18          THAT'S THE JURY INSTRUCTIONS.

19          I WILL TAKE CARE OF THIS, AND I'LL DO THE SAME

20  THING -- I'LL E-MAIL THE FINAL FINAL FINAL VERSION TO EVERYONE    02:35

21  THIS AFTERNOON WHEN I'M DONE.  AND THAT WILL BE WHAT I'LL BE

22  READING IN THE MORNING.

23          VERDICT FORM.

24          MS. AGUIAR?

25          **MS. AGUIAR:**  RELATED TO THE VERDICT FORM, I WAS       02:35

```
 1   LOOKING AT THE CONVERSION QUESTIONS ON THE VERDICT FORM, WHICH

 2   ARE QUESTIONS 13, 14, AND 15.  SO IF YOU DON'T MIND STARTING

 3   FROM THE BACK, BECAUSE IT WAS ON MY MIND AND IT RELATES TO

 4   CONVERSION.

 5        IT LISTS IT FOR ALL THREE PARTIES, AND THEN JURY              02:36

 6   INSTRUCTION NUMBER 29 ACTUALLY ONLY SAYS THAT MATTEL CONTENDS

 7   THAT MGA AND ISAAC LARIAN ARE LIABLE FOR CONVERSION.

 8        WE CAN TAKE MGA HONG KONG OFF THE VERDICT FORM OR --

 9        THE COURT:  IT SHOULD BE CONSISTENT.

10        MS. AGUIAR:  -- OR WE CAN ADD IT IN THE JURY                  02:36

11   INSTRUCTIONS.

12        THE COURT:  IF I'M GOING TO INCLUDE HONG KONG, I'M

13   GOING TO SPELL IT OUT; IT WILL NOT BE JUST "HK."  I WILL SPELL

14   OUT "MGA ENTERTAINMENT HONG KONG LIMITED."  BUT I WILL WANT TO

15   HEAR FROM MATTEL IF THEY REALLY THINK THIS IS NECESSARY.          02:37

16        LET'S GO THROUGH ALL OF YOURS, AND THEN I'LL COME

17   BACK.

18        MS. AGUIAR:  ON CONVERSION, SINCE I WAS THE ONE WHO

19   PRESENTED THE ARGUMENTS ON MGA'S BEHALF OVER THE LAST FEW DAYS

20   WITH YOUR HONOR, AND I WAS HERE YESTERDAY WHEN I WAS SOMEWHAT      02:37

21   SURPRISED WHEN YOU SAID AT TWO DIFFERENT POINTS IN THE

22   TRANSCRIPT, WHICH I LOOKED AT AGAIN THIS MORNING -- YOU SAY

23   IT'S ALMOST A MISNOMER TO CALL THIS OWNERSHIP.  I AGREE WITH

24   YOU ON THAT POINT, BECAUSE WE'RE NOT DECIDING OWNERSHIP IN THIS

25   PHASE.  AND WHEN YOU WERE SAYING THAT, I WAS TRYING TO MAKE THE    02:37
```

1    DISTINCTION TO YOU THAT THERE'S A DIFFERENCE BETWEEN JUST

2    STRAIGHT-UP OWNERSHIP AND ASKING THE JURY TO DECIDE THE

3    RELATIONSHIP BETWEEN THE DRAWINGS AND COPYRIGHT QUESTIONS.

4         **THE COURT:**  YOU WERE AHEAD OF ME.

5         **MS. AGUIAR:**  AND YOU SAID OWNERSHIP IS NOT ON THE          02:38

6    TABLE HERE, ONLY TIMING.  AND YOU SAID THAT TO ME OVER AND

7    OVER.

8         **THE COURT:**  WHEN I WAS SAYING OWNERSHIP, I WAS ONLY

9    THINKING OF IT -- AS I WAS WHEN I STARTED OFF DOWN THIS ROAD,

10   MR. NOLAN, A FEW MINUTES AGO -- OF COPYRIGHT, OWNERSHIP OF THE    02:38

11   COPYRIGHT.

12        **MS. AGUIAR:**  SO THEN WE ARE TALKING ABOUT, IN SOME

13   SENSE, THEN --

14        **THE COURT:**  ONLY IN THE CONVERSION CLAIM.  THE

15   PHYSICAL OWNERSHIP OF THE PIECES OF PAPER, THE DRAWINGS, OR       02:38

16   WHATEVER WAS DONE.

17        **MS. AGUIAR:**  I WAS TRYING TO MAKE THAT DISTINCTION.

18        **THE COURT:**  IT WASN'T CLEAR TO ME YESTERDAY.  YOU'VE

19   ALL MADE IT CLEAR TO ME NOW.  WHEN I WAS TALKING OWNERSHIP,

20   THIS IS NOT ABOUT OWNERSHIP, BECAUSE WHERE I THOUGHT YOU WERE     02:38

21   GOING WITH THAT YESTERDAY, MS. AGUIAR, ON THE LIGHT BOXES AND

22   ALL OF THAT -- THAT WAS CLEARLY A COPYRIGHT OWNERSHIP OR THE

23   OWNERSHIP OF THE RIGHTS AT INTEREST.

24        WAS I MISTAKEN?  OR WERE YOU JUST TALKING ABOUT

25   CONVERSION OWNERSHIP YESTERDAY?                                   02:39

1      **MS. AGUIAR:**  I WASN'T TALKING ABOUT COPYRIGHT.  I

2  KNOW COPYRIGHT IS IN 1-B.

3      **THE COURT:**  THEN YOU'RE GOING TO HAVE TO EXPLAIN TO

4  ME WHAT YOU MEANT YESTERDAY ABOUT HOW THE LIGHT BOXES WOULD

5  FACTOR IN TO THE PROPERTY CONVERSION.                        02:39

6      **MS. AGUIAR:**  I THINK WE'RE CLEAR NOW.  I JUST WANTED

7  TO --

8      **THE COURT:**  BUT YESTERDAY YOU WERE TALKING ABOUT

9  COPYRIGHT OWNERSHIP.  AND THAT'S WHY I RULED AS I DID.  IF I

10  WAS MISTAKEN, THEN I WANT TO GO BACK TO THAT.  WHEN YOU'RE    02:39

11  TALKING ABOUT THE LIGHT BOX ARGUMENT, YOU'RE SAYING THAT IF THE

12  JURY FINDS THAT THE MASTER DRAWING WAS DONE IN 1998 AND ALL

13  THAT CARTER BRYANT DID IN 1999 WAS PUT IT ON A LIGHT BOX AND

14  COPY IT, THEN THERE'S NO OWNERSHIP THERE.

15      THAT OWNERSHIP IS COPYRIGHT OWNERSHIP, AND THAT'S        02:39

16  WHAT I SAID WAS NOT IN PLAY; AND I SAID IT TWICE IN THE RECORD,

17  AS YOU SAID.

18      YOU AND I WERE BOTH TALKING ABOUT COPYRIGHT OWNERSHIP

19  YESTERDAY.  NOT ABOUT THE OWNERSHIP OF THE PIECE OF PAPER AND

20  WHAT WAS DRAWN ON IT WHILE HE WAS WORKING AT MATTEL.  THAT'S   02:39

21  ALL THE OWNERSHIP CONVERSION CLAIM GOES TO.

22      **MS. AGUIAR:**  CORRECT.

23      **THE COURT:**  OKAY.

24      **MS. AGUIAR:**  SO MR. PROCTOR SENT TO US, A FEW MINUTES

25  BEFORE WE CAME OVER HERE TODAY, SOME CHANGES TO THE LIST.  WE  02:40

```
 1   TRIED TO SCURRY AROUND AND LOOK AT THEM BEFORE WE CAME OVER.
 2   I'M PRETTY SURE THAT WE'RE FINE WITH WHAT HE ADDED, BUT I HAD
 3   VERY LITTLE TIME TO DO THAT.
 4           I BELIEVE YOU HAVE THE ONE FROM 9:30 THIS MORNING.  I
 5   TRUST, WHEN HE GETS UP HERE, HE'S GOING TO TELL YOU THAT HE
 6   WILL PROVIDE YOU WITH A NEW LIST.
 7           THE COURT:  WHAT I WILL DO ON THE LIST -- BECAUSE
 8   THESE ARE JUST EXHIBIT NUMBERS TO THE COURT, AND MUCH LIKE THE
 9   OTHER EXHIBIT ORDER, I'M NOT IN A POSITION RIGHT NOW TO SIT
10   DOWN AND GO THROUGH THEM ALL -- LET'S GO THROUGH ANY
11   SUBSTANTIVE CHANGES OTHER THAN THE LIST.  I WILL E-MAIL THIS TO
12   YOU THIS AFTERNOON.  AND I'M GOING TO LEAVE IT UP TO YOU,
13   COUNSEL, TO COME IN TOMORROW MORNING AND HAND ME A PIECE OF
14   PAPER WHICH SAYS "THIS IS THE VERDICT FORM AND THIS HAS THE
15   RIGHT EXHIBITS ON IT, WE'VE BOTH STIPULATED TO IT"; AND I'M
16   GOING TO GO WITH THAT.
17           MS. AGUIAR:  GREAT.
18           SO MY ONLY OTHER THING I HAVE ON THE VERDICT FORM IS
19   ON QUESTION NUMBER 5, ON PAGE 6, AND THAT IS REGARDING OUR
20   DISCUSSION YESTERDAY ABOUT THE PHOTOGRAPH.
21           THE COURT:  YES.
22           MS. AGUIAR:  WE HAD A DISCUSSION THIS MORNING.  I
23   SAID THAT WE WOULD STIPULATE THAT THE ITEM THAT IS DEPICTED IN
24   1105-2 AND 1136 ARE COPIES OF THE SAME ITEM.  AND I WILL STATE
25   THAT ON THE RECORD NOW THAT WE'RE STIPULATING TO THAT AND WE
```

02:40
02:40
02:40
02:41
02:41

 1   CAN TAKE THAT ITEM OFF.

 2           AND THAT'S ALL I HAD ON THE LIST.

 3           **THE COURT:**  EXCELLENT.  SO THE ONLY TWO PHYSICAL

 4   ITEMS, THEN, ARE GOING TO BE THIS THREE-DIMENSIONAL ITEM

 5   PRESENTED AT THE PITCH MEETING AND THE TRIAL EXHIBIT 1136.          02:41

 6   EXCELLENT.

 7           **MR. PROCTOR:**  THE ISSUE WHICH THE PARTIES FLAGGED FOR

 8   YOUR HONOR, THE PLACEMENT OF THE FIRST QUESTION IS A SERIOUS

 9   ISSUE TO MATTEL, AND I FEAR THAT OUR PROPOSED FORM INVITED

10   THIS.                                                              02:42

11           THE TIMING OF INVENTION SECTION, THE TIMING OF THE

12   CREATION OF THESE DRAWINGS, IS A COPYRIGHT ISSUE, AND THE

13   PLACEMENT OF THE QUESTIONS RIGHT NOW, THE --

14           **THE COURT:**  IT'S AN ISSUE THAT WILL BE RELEVANT TO

15   COPYRIGHT DETERMINATION.  LET'S PHRASE IT THAT WAY.               02:42

16           **MR. PROCTOR:**  FAIR ENOUGH.

17           I ACTUALLY JOTTED DOWN THE COURT'S OWN WORDS FROM A

18   MINUTE AGO, TALKING ABOUT THE VERDICT FORM AND HOW YOU'RE HAPPY

19   WITH THE WAY IT'S SHAPING UP BECAUSE IT HAS THE LEAD-OFF

20   QUESTION FOR PURPOSES OF COPYRIGHT.                               02:42

21           AND THE PROBLEM IS, PLACING QUESTION 1 BEFORE THE

22   QUESTIONS ABOUT THE DRAWINGS IS HIGHLY MISLEADING, AND I

23   FEAR --

24           **THE COURT:**  IN WHAT WAY?

25           **MR. PROCTOR:**  THERE IS A SERIOUS RISK OF MISLEADING    02:43

1    THE JURY THROUGH THAT PLACEMENT, BECAUSE WE'RE TALKING ABOUT

2    APPLES AND ORANGES.

3              IN THE "TIMING OF INVENTIONS" SECTION, THERE ARE TWO

4    ISSUES GOING ON.  ONE IS THE PREDICATE FOR THE LATER COPYRIGHT

5    CLAIM, THE TIMING OF THE CREATION OF THE DRAWINGS AND THE                    02:43

6    SCULPTS, THE TIMING OF THE CREATION OF THE COPYRIGHTABLE WORKS.

7              THE SECOND THING GOING ON IN THIS "TIMING OF

8    INVENTIONS" SECTION -- AND IN RETROSPECT, PERHAPS, IT SHOULD

9    HAVE EVEN BEEN BROKEN OUT SEPARATELY -- IS IDEAS.  AND THESE

10   IDEAS --                                                                     02:43

11           **THE COURT:**  DON'T IDEAS PRECEDE, IN CHRONOLOGY, THE

12   ACTUAL DRAWINGS THEMSELVES?

13           **MR. PROCTOR:**  POTENTIALLY TRUE.

14           **THE COURT:**  POTENTIALLY TRUE?

15           **MR. PROCTOR:**  OKAY.  THAT IS TRUE.                               02:43

16           **THE COURT:**  IN FACT, WE HEARD EVIDENCE OF THAT.

17           **MR. PROCTOR:**  SURE.  I THINK THERE'S NO DISPUTE IDEAS

18   HAVE TO COME BEFORE THE MANIFESTATION OF THE IDEAS.

19           **THE COURT:**  THAT'S THE APPEAL TO THE COURT.

20           **MR. PROCTOR:**  SURE.                                              02:43

21             THE PROBLEM WITH THAT IS THAT THROUGH THE PLACEMENT

22   OF THIS QUESTION, QUESTION NUMBER 1, SHOULD THE JURY

23   CONCLUDE -- THE FIRST QUESTION ASKS, WHEN DID MR. BRYANT

24   CONCEIVE THE IDEA?  WHEN DID HE, IN THE SHOWER, AT HOME

25   SLEEPING, WHATEVER IT IS, COME UP WITH THIS IDEA?                            02:44

1        AND PROVING WHEN SOMEONE CAME UP WITH AN IDEA IS

2    CHALLENGING.

3        **THE COURT:**  IT IS.

4        **MR. PROCTOR:**  BECAUSE YOU'RE TALKING ABOUT WHAT'S IN

5    SOMEBODY ELSE'S HEAD.  AND I CAN PICTURE IN DELIBERATIONS THE          02:44

6    JURY THINKING, 'WELL, HOW DO WE KNOW WHAT'S IN HIS HEAD?  HE

7    SAID HE DID IT IN 1998.  HAS MATTEL REALLY PROVEN HE DIDN'T

8    COME UP WITH THE IDEA IN 1998?'

9        BUT THERE'S A WHOLE DIFFERENT SET OF QUESTIONS THAT

10   GOES TO DRAWINGS.  DRAWINGS ARE PHYSICAL.  DRAWINGS LEAVE             02:44

11   INDENTATIONS IN NOTEBOOKS.  DRAWINGS ARE SCIENTIFICALLY

12   TESTABLE IN SOME CIRCUMSTANCES.

13       **THE COURT:**  COUNSEL, MATTEL HAS BEEN THE ONE THAT HAS

14   PUSHED, OVER OBJECTIONS FROM MGA, TO HAVE THE NOTION OF IDEAS

15   INCLUDED IN THE PRETRIAL CONFERENCE ORDER.  IF IT WAS UP TO          02:44

16   MGA, WE WOULD NEVER HAVE THE CONCEPT OF CONCEPTION OF IDEAS IN

17   THIS CASE.  WE'D JUST HAVE THE DRAWINGS.

18       **MR. PROCTOR:**  OF COURSE.  AND I'M NOT SUGGESTING IT

19   SHOULDN'T BE IN THE CASE.  BUT IDEAS ARE IN THE CASE FOR A

20   DIFFERENT PURPOSE.  IDEAS ARE IN THE CASE BECAUSE WE OWN IDEAS       02:45

21   UNDER THE CONTRACT.  AND THAT CREATES STATE LAW RIGHTS.  WE

22   HAVE STATE LAW CAUSES OF ACTION WITH STATE LAW RIGHTS TO IDEAS.

23       **THE COURT:**  CORRECT.

24       **MR. PROCTOR:**  AND THE OWNERSHIP OF THOSE IDEAS AND

25   THE TIMING OF THE CONCEPTION OF THOSE IDEAS IS RELEVANT TO OUR       02:45

1    STATE LAW CLAIMS.

2         **THE COURT:**  AND I AGREE WITH THAT, AND THAT'S WHY I

3    INCLUDED IT IN THE PRETRIAL CONFERENCE ORDER.

4         **MR. PROCTOR:**  CORRECT.

5         BUT THE APPLES AND ORANGES PROBLEM THAT I'M TRYING TO    02:45

6    ARTICULATE IS, QUESTION 1 IS TALKING ABOUT AN IDEA, WHICH IS A

7    PREDICATE OF A STATE LAW RIGHT; AND QUESTIONS 2, 3, AND 4 ARE

8    TALKING ABOUT THE TIMING OF CREATION OF DRAWINGS, WHICH ARE

9    PREDICATES OF COPYRIGHTS.  I DON'T WANT THE JURY TO BE CONFUSED

10   BY THINKING THAT ALL IT HAS DO IS SAY, POTENTIALLY,    02:45

11   THEORETICALLY SPEAKING, 'NO, MATTEL DIDN'T PROVE MR. BRYANT

12   FIRST THOUGHT UP THIS IDEA IN 1999,' AND THEN IT DOESN'T HAVE

13   TO DEAL WITH ALL OF THE DRAWINGS AFTERWARDS, OR LEAVE THE

14   MISIMPRESSION THAT IT'S THE SAME ISSUE; THAT WHEN HE THOUGHT UP

15   THE IDEA AND WHEN HE CREATED THE DRAWINGS IS THE SAME ISSUE.    02:46

16        **THE COURT:**  WHY WOULD THEY THINK THAT?  I'M GOING TO

17   TELL THEM.  I'M GOING TO GO THROUGH THIS FORM WITH THEM:

18        'LADIES AND GENTLEMEN, YOU HAVE TO ANSWER NUMBER 1.

19   IT CALLS FOR YOU TO DO THIS.  THEN YOU HAVE TO ANSWER NUMBER 2,

20   THEN NUMBER 3.'  IT'S NOT LIKE ONE OF THESE SITUATIONS, YOU    02:46

21   KNOW, 'IF YOU ANSWER YES HERE, SKIP DOWN,' OR 'YOU'RE NOT

22   REQUIRED' -- I MEAN, THEY ARE REQUIRED TO ANSWER ALL OF THESE

23   QUESTIONS.

24        **MR. PROCTOR:**  YOU'RE CORRECT.  THERE'S NO DIRECTIVE

25   SAYING THAT 'IF YOU SAY NO, YOU CAN SKIP QUESTIONS' --    02:46

1      **THE COURT:**  YOU'RE CONCERNED THERE IS SOME KIND OF

2   IMPLICIT ASSUMPTION THAT A JURY MAY MAKE BASED ON THE ORDER OF

3   THESE QUESTIONS?

4      **MR. PROCTOR:**  EXACTLY.  BECAUSE QUESTION 1 IS AN

5   APPLES AND ORANGES ISSUE.  QUESTION 1 IS TALKING ABOUT A STATE            02:46

6   LAW RIGHT AND STATE LAW PROPERTY RIGHTS AND OWNERSHIP OF STATE

7   LAW RIGHTS, AS IS THE CURRENT QUESTION 6 ABOUT THE IDEA FOR THE

8   NAME BRATZ; AND QUESTIONS 2, 3, 4, AND 5 ARE TALKING ABOUT THE

9   FACTUAL PREDICATES FOR THE COPYRIGHT CLAIM.

10      SO WHAT I WOULD SUBMIT, WHAT WE PROPOSE, IS TO HAVE            02:47

11   THE IDEA QUESTIONS AFTER THE DRAWINGS QUESTIONS.

12      **THE COURT:**  YOUR STRONGER ARGUMENT FOR PUTTING THE

13   TWO IDEA QUESTIONS TOGETHER MAKES SENSE TO ME.

14      **MR. PROCTOR:**  CORRECT.  AND PERHAPS WHAT WE COULD DO

15   POSSIBLY IS -- AND I DON'T KNOW WHAT HEADING YOU WOULD PUT IT            02:47

16   UNDER, BUT YOU COULD POTENTIALLY PUT THE TWO IDEAS QUESTIONS

17   UNDER THEIR OWN HEADING.

18      **THE COURT:**  I JUST THOUGHT OF THAT AS WELL.

19      **MR. PROCTOR:**  JUST NOODLE WITH THE HEADINGS, TIMING

20   OF THE INVENTIONS MODIFIED SOMEWAY, TIMING OF TANGIBLE            02:47

21   INVENTIONS VERSUS TIMING OF CONCEPTION OF IDEAS, AND HAVE THE

22   TWO QUESTIONS ABOUT IDEAS UNDER A HEADING THAT SAYS TIMING OF

23   CONCEPTION OF IDEAS, AND THE FOUR QUESTIONS ABOUT DRAWINGS AND

24   SCULPTS UNDER TIMING OF -- YOU CAN CHOOSE THE WORD -- TIMING OF

25   CREATION OF DRAWINGS AND SCULPTS, OR SOMETHING TO THAT EFFECT.            02:47

```
 1              THE COURT:  VERY GOOD.

 2          ANYTHING ELSE, MR. PROCTOR?

 3              MR. PROCTOR:  YES.

 4          THERE IS THE ISSUE OF THE MINUTIA OF THE LIST, WHICH

 5   I'M HOPEFUL WE'LL BE ABLE TO WORK OUT.                          02:48

 6              THE COURT:  WHAT'S YOUR THOUGHT ON HONG KONG?

 7              MR. PROCTOR:  THAT'S ANOTHER ISSUE.

 8          THERE'S TWO ISSUES, I GUESS.  ONE IS THE NAME HONG

 9   KONG, AND TWO IS, SHOULD WE HAVE THE QUESTION AT ALL?  WE

10   COVERED SHOULD WE HAVE THE QUESTION AT ALL YESTERDAY.  IT'S IN  02:48

11   THE FINAL PRETRIAL CONFERENCE ORDER.  IT'S PLEADED.  MGA HASN'T

12   MOVED AGAINST IT.

13              THE COURT:  FAIR ENOUGH.

14              MR. PROCTOR:  AND IN TERMS OF THE NAME --

15              THE COURT:  I GUESS I KEEP HOPING YOU'RE GOING TO SAY 02:48

16   FORGET ABOUT IT.

17              MR. PROCTOR:  IN TERMS OF THE NAME "HK" -- AND I CAN

18   BE CORRECTED IF I'M WRONG -- IT IS THE PROPER NAME FOR THE

19   COMPANY; SO I DON'T THINK IT SHOULD BE SPELLED OUT, BECAUSE

20   THAT WOULD BE A MISNOMER, ACTUALLY.                            02:48

21              THE COURT:  ANYTHING ELSE?

22              MR. PROCTOR:  YES.

23          JUST FOR THE RECORD OR FOR CLARIFICATION, IN CURRENT

24   QUESTION 5, DELETING THE SECOND ENTRY, TALKING ABOUT THE

25   PHOTOGRAPH, WE DO HAVE A STIPULATION OR A STIPULATION IN        02:49
```

1  PRINCIPLE, I THINK, THAT IT IS THE SAME, AND AS LONG AS THAT

2  CAN BE READ TO THE JURY, WE'RE FINE HAVING IT DELETED.  OUR

3  PREFERENCE WOULD BE TO INCLUDE 1105-2, WHICH IS THE SECOND

4  ENTRY ON THE SAME LINE AFTERWARDS, NEXT TO 1136, WHICH THE

5  COURT KNOWS IS WHAT WE'VE DONE AS TO THE DRAWINGS WHEN THERE        02:49

6  ARE DUPLICATES.  MGA HAS OBJECTED TO THAT.

7           I DON'T HAVE A PROBLEM NOT LISTING IT ON THE FORM, AS

8  LONG AS THE JURY IS TOLD THAT THESE TWO ARE THE SAME THING AND

9  THERE'S A STIPULATION TO THAT EFFECT.  BECAUSE ONE OF THEM IS

10  DATEABLE; ONE OF THEM HAS AN E-MAIL ATTACHED.                      02:49

11          **THE COURT:**  AND IT'S IN EVIDENCE; RIGHT?

12          **MR. PROCTOR:**  YES.

13          **THE COURT:**  VERY GOOD.

14          IS THAT IT NOW?

15          **MR. PROCTOR:**  YES.                                      02:49

16          **THE COURT:**  I'LL HEAR FROM MGA ON THESE VARIOUS

17  THINGS.

18          **MR. NOLAN:**  YOUR HONOR, WITH RESPECT TO THE FIRST

19  QUESTION ABOUT REASSIGNING OR REALIGNING THE NUMBERS, I THINK

20  IT CAN BE HANDLED BY TAKING QUESTION NUMBER 6 AND PUTTING IT UP    02:50

21  TO NUMBER 2.

22          **THE COURT:**  IT DOES MAKE SENSE TO HAVE THOSE TWO

23  QUESTIONS TOGETHER AND THE DATE SEPARATE.

24          WHAT ABOUT THE LABELS?  I CHANGED ONE LABEL ON MY

25  OWN.  I'M ALMOST NOW TEMPTED TO TAKE OUT THE LABELS ALTOGETHER.    02:50

1       **MR. NOLAN:**  THAT'S MY PROPOSAL.  I DON'T LIKE LABELS

2   ON VERDICT FORMS.  YOU KNOW, THEY READ THEM AND THEN TRY TO

3   FIGURE OUT WHAT THESE LABELS MEAN.  I DON'T THINK IT NEEDS TO

4   HAVE LABELS.  I DON'T THINK IT ADDS ANYTHING TO THEIR

5   DELIBERATION.  I WOULD JUST MOVE 6 UP TO 2 AND HAVE IT FLOW THE          02:50

6   ENTIRE WAY AFTER THAT.

7       **THE COURT:**  IT'S INTERESTING.  THE WAY THIS IS SET

8   UP, WE HAVE THESE SIX QUESTIONS THAT ARE BASICALLY FACTUAL

9   FINDINGS THAT THE JURY IS MAKING; INTERROGATORIES; IT'S THE

10  SPECIAL VERDICT PART OF THE VERDICT FORM; AND THEN WE HAVE A          02:50

11  GENERAL VERDICT, ASKING THEM TO MAKE LIABILITY FINDINGS.

12      I AM GOING TO MAKE IT CLEAR, WHEN I GO OVER THE

13  VERDICT FORM WITH THEM -- BECAUSE I DO WANT THEM TO UNDERSTAND;

14  I DON'T WANT THERE TO BE ANY MISUNDERSTANDING -- IS THAT THEY

15  HAVE TO ANSWER EACH OF THE SIX FACTUAL INTERROGATORIES THAT ARE       02:51

16  BEING PLACED BEFORE THEM, TO JUST ANSWER THEM.

17      **MR. NOLAN:**  ACTUALLY, YOUR HONOR, I THINK THAT'S

18  PRETTY CLEAR FROM THE FORM.  THERE'S NO DETOUR OUT OF IT, LIKE

19  WE'VE SEEN ON SO MANY OTHER VERDICTS.

20      **THE COURT:**  WHAT ABOUT THIS STIPULATION?  ARE YOU       02:51

21  WILLING TO DO THE STIPULATION TOMORROW, ON 1105-2?

22      **MS. AGUIAR:**  I THINK IT'S SOMEWHAT CONFUSING,

23  YOUR HONOR, BECAUSE THE PHOTOGRAPH IS A PHOTOGRAPH; IT'S NOT A

24  TANGIBLE ITEM.  I SAID WE WOULD BE WILLING TO STIPULATE AMONG

25  COUNSEL THAT IT'S THE SAME, BUT IF YOU'RE READING IT TO THE          02:51

1  JURY, I THINK IT HEIGHTENS THE IMPORTANCE OF THIS.

2      THE COURT:  I'M NOT GOING TO READ IT.  I DON'T READ

3  ANY STIPULATIONS.  THIS WOULD BE SOMETHING THAT WOULD HAVE TO

4  COME IN BETWEEN COUNSEL.

5      MS. AGUIAR:  I THOUGHT HE SAID READ TO THE JURY BY          02:52

6  YOU.

7      THE COURT:  NO.  IF THIS IS A STIPULATION BETWEEN THE

8  PARTIES THAT THE PHOTOGRAPH DEPICTED IN 1105-2 IS A PICTURE OF

9  A TRIAL EXHIBIT 1136 --

10      MS. AGUIAR:  I'M HAPPY FOR EITHER MR. NOLAN OR ME TO        02:52

11  SAY TOMORROW TO THE JURY THAT WE HAVE STIPULATED WITH COUNSEL

12  TO THAT EFFECT.

13      THE COURT:  I'LL TAKE THAT OUT, THEN.

14      MR. NOLAN:  THAT'S JUST KIND OF WRAPPING UP OTHER

15  THINGS.                                                        02:52

16      THE COURT:  WE HAVE A NUMBER OF STIPULATIONS TO READ.

17      MR. NOLAN:  MY LAST POINT IS -- AND IT'S NEITHER FISH

18  NOR FOWL; IT'S NOT PART OF THE JURY INSTRUCTIONS -- I DO ASK

19  THE COURT TO READ, AGAIN, THE PRELIMINARY INSTRUCTION THAT THE

20  COURT GAVE AT THE START OF THE TRIAL WITH RESPECT TO           02:52

21  CARTER BRYANT AND THE SETTLEMENT WITH MATTEL.  AND THE REASON

22  WHY I SAY THAT -- AND I ASKED THE COURT -- I RAISED WITH THE

23  COURT THE POSSIBILITY DURING THE COURSE OF THE TRIAL TO GIVE

24  THAT INSTRUCTION.  I THINK, IN PARTICULAR, EITHER PUT IT AS AN

25  ACTUAL INSTRUCTION TO THE JURY OR JUST BEFORE YOU INSTRUCT     02:53

| | |
|---|---|
| 1 | THEM.  BECAUSE THE WEIGHT OF THIS -- I MEAN, CARTER BRYANT'S |
| 2 | NAME IS MENTIONED SO MANY TIMES IN THE INSTRUCTIONS THAT I JUST |
| 3 | WANT TO MAKE IT ABSOLUTELY CLEAR THAT OUR LIABILITY IS NOT |
| 4 | DERIVATIVE OF CARTER BRYANT; IN OTHER WORDS, THEY'RE NOT REALLY |
| 5 | JUDGING CARTER BRYANT IN THIS CASE.  AND I'D ASK THE COURT TO | 02:53 |
| 6 | CONSIDER AGAIN ADVISING THE JURY ON THAT SETTLEMENT POINT. |
| 7 | IT'S BEEN SEVEN WEEKS, MAYBE A LITTLE BIT LONGER. |
| 8 | **THE COURT:**  IT HAS BEEN SEVEN WEEKS. |
| 9 | AND YES, I AM COUNTING. |
| 10 | **MR. NOLAN:**  THEY STILL HAVE 48 HOURS. | 02:53 |
| 11 | **THE COURT:**  I THINK WE'RE DOWN TO THAT LAST POINT, |
| 12 | MR. ZELLER. |
| 13 | **MR. ZELLER:**  THAT, IN ADDITION, IS ONE I WOULD LIKE |
| 14 | TO RAISE, WHICH SORT OF GOES TO THE LIST, JUST SO WE CAN HAVE |
| 15 | SOME THINGS CLARIFIED. | 02:54 |
| 16 | **THE COURT:**  OKAY. |
| 17 | **MR. ZELLER:**  I DON'T THINK IT'S AN ENORMOUS ISSUE AS |
| 18 | TO WHETHER OR NOT THAT INSTRUCTION IS READ AGAIN.  FRANKLY, |
| 19 | MR. NOLAN HAS HIS CLOSING.  IT'S AN INSTRUCTION THE COURT HAS |
| 20 | ALREADY GIVEN.  HE CAN TALK ABOUT IT. | 02:54 |
| 21 | I DON'T KNOW THAT IT REQUIRES THE COURT TO BE PLACING |
| 22 | EMPHASIS ON IT.  WE'VE TALKED ABOUT OTHER INSTRUCTIONS THAT THE |
| 23 | COURT HAS GIVEN DURING THE COURSE OF THE TRIAL, AND I THINK AS |
| 24 | A GENERAL RULE, THE COURT HAS BEEN DISINCLINED TO REPEAT THEM. |
| 25 | **THE COURT:**  I HAVE.  THERE'S SOME THAT I AM | 02:54 |

1  REPEATING, THOUGH.  I'M GOING TO REPEAT THE ONE ON WITNESS

2  CREDIBILITY AND SOME GENERAL INSTRUCTIONS THAT I AM REPEATING,

3  EVIDENCE, CIRCUMSTANTIAL EVIDENCE, DIRECT EVIDENCE.  WHAT I'LL

4  DO IS CONSIDER WHETHER OR NOT THIS FALLS MORE IN THE LINE OF

5  THOSE KIND OF GENERAL INSTRUCTIONS THAT I THINK BEAR REPEATING          02:54

6  OR WHETHER IT'S MORE OF A SPECIFIC INSTRUCTION THAT -- AS YOU

7  POINT OUT, BOTH SIDES ARE FREE TO USE THE INSTRUCTIONS.  AND

8  THAT'S WHY I GIVE THE INSTRUCTIONS BEFOREHAND.  YOU'RE FREE TO

9  USE THESE IN WHATEVER WAY YOU WANT, ON THE SCREEN, WITH THE

10  JURY.  EACH JUROR WILL HAVE A COPY OF THESE INSTRUCTIONS.  I          02:55

11  WOULD ENCOURAGE YOU TO USE THE INSTRUCTIONS IN THE VERDICT FORM

12  IN YOUR CLOSING ARGUMENT.  I VIEW THAT AS ONE OF THE PRIMARY

13  PURPOSES OF CLOSING ARGUMENT, TO HELP THE JURY UNDERSTAND WHAT

14  IT IS THAT THEIR TASK IS.

15       **MR. ZELLER:**  THAT'S OUR INTENTION.          02:55

16       **THE COURT:**  OKAY.

17       **MR. ZELLER:**  NOW, THE LAST ISSUE, WHICH FALLS

18  SOMEWHERE BETWEEN MATTERING FOR PURPOSES OF THE VERDICT FORM

19  AND AN ADMINISTRATIVE MATTER IS -- I THINK THERE'S A NUMBER OF

20  EXHIBITS THAT WERE SHOWN DURING THE GALVANO DESIGNATIONS, THE          02:55

21  VIDEOTAPED DEPOSITION, WHICH WERE PUBLISHED TO THE JURY.  I

22  DON'T BELIEVE THERE WAS ANY OBJECTION MADE TO THOSE EXHIBITS IN

23  THE DESIGNATIONS THAT THE COURT HAD THAT HAVE NOT YET BEEN

24  MOVED INTO EVIDENCE.

25       IN GENERAL, I THINK THAT THE LIST THAT'S BEING          02:55

```
 1   PROVIDED TO THE JURY -- SO THAT EVERYONE CAN RECONCILE THEIR
 2   NOTES AND THERE WON'T BE CONFUSION, WE HAVE BASICALLY PARALLEL
 3   SITES FOR, YOU KNOW, WHERE YOU HAVE DUPLICATIVE EXHIBITS.  FOR
 4   A VARIETY OF REASONS, THERE ARE SOME OF THOSE EXHIBITS THAT
 5   WERE SHOWN TO MS. GALVANO AND AGAIN PUBLISHED TO THE JURY, UN    02:56
 6   OBJECTED TO, THAT HAVE DIFFERENT EXHIBIT NUMBERS.  SO WHAT I'D
 7   LIKE TO DO IS MOVE THOSE INTO EVIDENCE NOW, AND THEN WE CAN USE
 8   THAT TO HELP RECONCILE THE LIST AND THERE WON'T BE ANY ARGUMENT
 9   ABOUT WHAT IS AND IS NOT IN EVIDENCE.
10       THE COURT:  THESE ARE STRICTLY DUPLICATES?                   02:56
11       MR. ZELLER:  NO, NOT STRICTLY.
12       FOR EXAMPLE, THERE IS HER CALENDAR, 1999 CALENDAR,
13   WHICH I UNDERSTAND IS EXHIBIT 1179.  THAT WAS NOT MOVED.  I
14   THINK THAT THE ONLY EXHIBIT THAT MR. NOLAN MOVED INTO
15   EVIDENCE --                                                     02:56
16       THE COURT:  MY RULE ON THE VIDEOTAPED DEPOSITIONS
17   THAT I ANNOUNCED AT THE BEGINNING IS, IF YOU'RE SHOWING IT, I
18   ASSUME THAT YOU HAVE ALREADY STIPULATED TO ITS ADMISSION; IT'S
19   COMING IN.  SO IF IT WAS UP THERE ON THE SCREEN AND WE CAN
20   REPLAY WHAT WAS UP ON THE SCREEN, THAT IS ESSENTIALLY A         02:57
21   STIPULATED ADMISSION OF THAT DOCUMENT, PARTICULARLY --
22       I ASSUME THAT IF THERE WAS AN OBJECTION TO ANYTHING
23   THAT WAS GOING TO GO ON THE SCREEN, I WOULD HAVE HEARD IT.  IF
24   THERE WAS NOT AN OBJECTION, IT IS WAIVED AND IT'S IN EVIDENCE;
25   SO I WILL LEAVE FOR YOU TECH PEOPLE TO WORK OUT WHAT WAS OR WAS  02:57
```

1    NOT SHOWN.

2         THE LAST TRIAL I HAD I GRANTED A MISTRIAL BECAUSE

3    EVIDENCE WAS SHOWN TO A JURY BEFORE IT WAS ADMITTED.  AND I

4    KNOW THAT WAS NOT DONE IN THIS CASE.

5         **MR. NOLAN:**  YOUR HONOR, THIS PIECE OF EVIDENCE WAS          02:57

6    NOT PUBLISHED DURING THE EXAMINATION.  AND MY UNDERSTANDING IS

7    THAT IT WAS NOT PUBLISHED AND THAT IN THE COURSE OF THE

8    DESIGNATIONS, THE COURT SUSTAINED OBJECTIONS TO CERTAIN

9    QUESTIONS THAT WE HAD DESIGNATED WITH RESPECT --

10        **THE COURT:**  THAT'S WHY I SAY IT'S ALL PART OF THE          02:57

11   RECORD AT THIS POINT AND YOU CAN FIGURE THAT OUT.

12        **MR. ZELLER:**  RIGHT.  JUST SO IT'S CLEAR, I'M NOT

13   TRYING TO QUARREL WITH ANYTHING THAT ANYONE IS SAYING.  THE

14   ONLY ISSUE I'M RAISING IS, SO I'M ON THE SAME PAGE, IS THAT --

15        **THE COURT:**  IF IT WAS SHOWN AND THERE'S NOT AN            02:58

16   OBJECTION THAT WAS SUSTAINED TO IT, IT'S GOING IN TO THE JURY.

17        **MR. ZELLER:**  THE COURT DOES NOT NEED A FORMAL MOTION

18   FROM US TO SAY THAT 'THESE SHOULD BE IN EVIDENCE'?

19        **THE COURT:**  NO, I DO NOT.

20        I WANT TO CLEARLY DESIGNATE IT SO THAT THE COURTROOM          02:58

21   DEPUTY HAS A CLEAR RECORD OF WHAT IS IN EVIDENCE.  IF THERE'S A

22   DISPUTE HERE, I WANT TO TAKE THAT UP THIS AFTERNOON, BEFORE

23   TOMORROW MORNING.  I TRUST THERE'S NOT GOING TO BE A DISPUTE

24   HERE.  WE KNOW IT WAS SHOWN.  THAT WAS A RECORDED VIDEOTAPED

25   DEPOSITION.  WE CAN PLAY IT AGAIN AND GO THROUGH IT AND WRITE     02:58

1    DOWN WHAT WAS SHOWN, AND THAT'S WHAT'S IN EVIDENCE.

2         **MS. AGUIAR:**  YOUR HONOR, IT'S IMPORTANT FOR THE COURT

3    TO KNOW WHICH EXHIBITS MR. ZELLER IS TALKING ABOUT.  WE DON'T

4    KNOW WHICH ONES HE'S REFERRING TO BY NUMBER.

5         **THE COURT:**  LET'S GET TOGETHER AND SEE IF WE CAN'T          02:58

6    WORK THIS OUT.  I'VE STATED THE RULE.  WHAT I WANT IS,

7    HOPEFULLY BY THE END OF THE DAY -- LET'S GET THIS RESOLVED.  I

8    DON'T WANT TO HAVE AN ISSUE LIKE THIS TO DEAL WITH TOMORROW

9    MORNING, BECAUSE I DON'T WANT TO GO THROUGH THE GALVANO

10   TESTIMONY AGAIN TO CORROBORATE WHETHER OR NOT SOMETHING WAS IN     02:59

11   THAT OR NOT.

12        IT IS WHAT IT IS.

13        THAT'S THE BEAUTIFUL THING ABOUT HAVING A RECORDED

14   TESTIMONY.  IF IT WAS SHOWN, IF IT WAS UP THERE, IF IT WAS PART

15   OF HER TESTIMONY, AND IT WAS NOT OBJECTED TO AND THE OBJECTION    02:59

16   WASN'T SUSTAINED, IT'S IN EVIDENCE.  AND MR. HOLMES NEEDS THAT

17   LIST BY THE CLOSE OF BUSINESS TODAY.

18        **MR. ZELLER:**  YES.

19        AND I HAVE ALL OF THE NUMBERS.

20        **THE COURT:**  IF THERE IS A DISPUTE, COME BACK HERE AT       02:59

21   5:00 AND WE'LL WORK IT OUT TONIGHT BEFORE I GO HOME.

22        **MR. PROCTOR:**  IF I MAY, YOUR HONOR, ON THE VERDICT

23   FORM AGAIN, TWO ISSUES THAT MR. NOLAN RAISED IN HIS RESPONSE.

24        IF WE'RE GOING TO GROUP TOGETHER DRAWINGS AND THE

25   QUESTIONS ABOUT TIMING OF DRAWINGS FOR COPYRIGHT PURPOSES, AND    02:59

```
1    SEPARATELY, THE TWO QUESTIONS ABOUT THE TIMING OF IDEAS, WHICH
2    IS PERTINENT TO STATE LAW CLAIMS, I WOULD RESPECTFULLY SUGGEST
3    THAT THE QUESTIONS ABOUT DRAWINGS -- THE COURT'S STATEMENT
4    EARLIER WAS THAT YOU WERE PLEASED THAT THE FIRST QUESTION OUT
5    OF THE BOX ON THE VERDICT FORM IS THE PREDICATE FOR THE          03:00
6    COPYRIGHT CLAIM.  AND I THINK THAT'S HOW IT SHOULD BE.
7         THAT'S THE DRAWINGS QUESTIONS, NOT THE IDEAS
8    QUESTIONS.  THERE'S AN EXPRESSION THE COURT USED LONG AGO --
9         THE COURT:  I GUESS THE POINT THAT I WAS TRYING TO
10   MAKE THERE, COUNSEL -- I'M GLAD THAT WE'RE AT A POINT, WHETHER   03:00
11   IT'S THE FIRST QUESTION OUT OF THE BOX OR AMONGST THE PRIMARY
12   QUESTIONS, I'M JUST GLAD THAT WE'RE THERE.  WE'RE AT A POINT
13   WHERE WE CAN NOW MAKE THAT DECISION.  THAT WAS THE FACTUAL
14   ISSUE THAT STOPPED THE COURT FROM PROCEEDING ANY FURTHER ON A
15   NUMBER OF FRONTS IN THE MOTIONS FOR SUMMARY JUDGMENT.  THAT WAS  03:00
16   THE FACTUAL ISSUE THAT KEPT COMING UP.  AND I'M GLAD THAT WE
17   CAN NOW RESOLVE THAT QUESTION.
18        I AGREE WITH YOUR POINT THAT THE TWO QUESTIONS SHOULD
19   BE TOGETHER.  I UNDERSTAND THAT YOU WANT THEM AT THE BOTTOM.
20   FRANKLY, YOU FRAMED THIS WITH YOUR INITIAL PROPOSED VERDICT     03:01
21   FORM.
22        MR. PROCTOR:  ALTHOUGH WE DID HAVE THE DRAWINGS FIRST
23   IN THE VERDICT FORM.
24        THE COURT:  IN ANY EVENT, I GUESS I'M JUST NOT
25   PERSUADED THAT IT'S THAT BIG A DEAL.  I UNDERSTAND THAT THERE'S  03:01
```

```
 1   A TACTICAL ADVANTAGE FOR YOU TO HAVING THEM DONE THAT WAY.  I'M

 2   NOT SEEING A PRINCIPLED REASON TO MOVE THEM.  WE'VE GOT A SET

 3   OF FACTUAL INTERROGATORY QUESTIONS.  WE'VE GOT A SERIES OF

 4   GENERAL VERDICT QUESTIONS.  THE JURY IS GOING TO BE INSTRUCTED

 5   TO ANSWER ALL OF THEM.                                            03:01

 6           MR. PROCTOR:  IF I MAY, RESPECTFULLY, I DON'T KNOW

 7   THAT IT'S -- THIS CASE, AT ITS CORE -- I MEAN, THE MOST

 8   SIGNIFICANT CLAIM IN THE CASE -- THERE ARE A BUNCH OF CASES,

 9   AND IT'S TOUGH TO WEIGH THEM DIFFERENTLY, BUT I THINK EVERYONE

10   IN THIS ROOM KNOWS THAT AT SOME LEVEL, THE MOST SIGNIFICANT      03:01

11   CLAIM IN THE CASE IS THE COPYRIGHT CLAIM.

12           AND THE COURT HAS TALKED ABOUT -- I REMEMBER AN ORDER

13   SAYING YOU DIDN'T WANT THE TAIL TO WAG THE DOG.  AND DOING IT

14   IN THE ORDER THAT THE COURT HAS IN MIND RIGHT NOW,

15   RESPECTFULLY, I WOULD SUBMIT IS THAT.  THE FACTUAL QUESTIONS,    03:02

16   THE FACTUAL INTERROGATORIES, THAT THE JURY IS TO DECIDE -- THE

17   FIRST QUESTIONS COMING OUT OF THE BOX THAT THEY SHOULD LOOK AT

18   ARE, WHEN WERE THESE DRAWINGS CREATED.  NOT WHEN DID MR. BRYANT

19   CONCEIVE THE IDEA FOR THE NAME BRATZ.  THAT SHOULD COME AFTER,

20   RESPECTFULLY.                                                    03:02

21           THE SECOND POINT IS, I DO THINK -- YOU KNOW, FOR THE

22   STATE LAW CAUSES OF ACTION, WE DO HAVE HEADINGS.  FOR EXAMPLE,

23   IT SAYS "INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS."

24           THE COURT:  WHAT HEADINGS WOULD YOU PROPOSE FOR THOSE

25   TWO QUESTIONS?                                                   03:02
```

1        **MR. PROCTOR:**  I THINK IT CAN BE VERY SIMPLE.  I THINK

2   IT CAN BE TIMING OF TANGIBLE INVENTIONS AND TIMING OF IDEAS,

3   TWO HEADINGS.  I WOULD OBVIOUSLY PROPOSE TIMING OF TANGIBLE

4   INVENTIONS COMES BEFORE TIMING OF IDEAS.

5        **THE COURT:**  BECAUSE OF IMPORTANCE, NOT BECAUSE OF          03:03

6   CHRONOLOGY.

7        **MR. PROCTOR:**  CORRECT.  THE FACTUAL PREDICATE FOR

8   COPYRIGHT CLAIM IS WHAT THE JURY SHOULD BE LOOKING AT FIRST.

9         WHAT THE COURT HAS NOW IS TIMING OF INVENTIONS.  I

10  WOULD JUST ADD THE WORD "TANGIBLE," OR "TIMING OF TANGIBLE      03:03

11  ITEMS."  THAT'S PROBABLY BEST.  AND THEN TIMING OF IDEAS.

12       **THE COURT:**  SO I HAVE CHRONOLOGY FAVORING THE WAY

13  THAT IT'S LAID OUT RIGHT NOW.  AND FROM MATTEL'S PERSPECTIVE,

14  IMPORTANCE FAVORS REVERSING THE ORDER.

15        IS THAT CORRECT?                                          03:03

16       **MR. PROCTOR:**  YES, YOUR HONOR.

17        AND I WOULD SUBMIT THERE'S A RISK, I PERCEIVE AT

18  LEAST, OF POTENTIALLY THE JURY BEING CONFUSED IN SOME SENSE --

19  I'M NOT SAYING THE VERDICT FORM SAYS THIS -- BUT CONFUSED IN

20  SOME SENSE THAT IF THEY FIND THE IDEA WAS DONE IN '98, THAT     03:04

21  ANSWERS ABOUT ALL OF THE DRAWINGS AND ALL OF THE INVENTIONS.

22       **THE COURT:**  I DON'T SEE THAT.  I'M SURE I'M GOING TO

23  HEAR FROM MGA THAT THEIR CONCERN IS THAT IF THEY GO THROUGH

24  THIS LONG LIST OF --

25        I UNDERSTAND YOUR ARGUMENT, COUNSEL.                     03:04

1          **MR. NOLAN:**  VERY BRIEFLY.

2          BOTH SIDES CAN TALK ABOUT TACTICAL ISSUES.  THAT'S A

3    DRAW, AS FAR AS I CAN SEE.

4          HERE'S, I THINK, THE POINT, AND THAT IS THAT IF THESE

5    IDEAS ARE NOT THE FIRST TWO QUESTIONS, WHAT THEN THIS JURY DOES          03:04

6    AFTER YOU GET THROUGH QUESTIONS NUMBER 1 AND 2, AS WE'VE

7    PROPOSED IT, THEY HAVE TO GO DEEP AND THEY HAVE TO WEED THROUGH

8    A LOT OF PICTURES, A LOT OF DRAWINGS.

9          **THE COURT:**  ARE YOU SUGGESTING THAT THEY DON'T HAVE

10   TO DO THAT IF THEY ANSWER THE QUESTIONS IN A CERTAIN WAY?          03:05

11          THAT KIND OF FEEDS INTO MR. PROCTOR'S --

12          **MR. NOLAN:**  ABSOLUTELY NOT.  I'M JUST SAYING, IN

13   TERMS OF THE NATURAL CHRONOLOGY OF THE PROCESS OF ADDRESSING

14   THE ISSUE, NOT THE IMPORTANCE -- BECAUSE THEY'RE NOT GOING TO

15   UNDERSTAND THE IMPORTANCE OF IT.  THAT'S FOR YOU.  I'M JUST          03:05

16   SAYING THE CHRONOLOGY HERE MAKES MORE SENSE.  YOU COME UP WITH

17   THE IDEA --

18          **THE COURT:**  THAT WAS MY POINT.

19          WHAT YOU WENT TO HERE IS MR. PROCTOR'S POINT.  THAT'S

20   PRECISELY WHAT HE JUST HAS SPENT TIME AND AGAIN TRYING TO          03:05

21   CONVINCE THE COURT, IS THAT THE JURY IS GOING TO ANSWER THESE

22   FIRST TWO QUESTIONS AND THINK, 'OUR WORK IS DONE HERE.'

23          **MR. NOLAN:**  NO.  TO THE CONTRARY, YOUR HONOR.

24          IF YOU STATE IN A CHRONOLOGICAL ORDER, LOGICALLY THAT

25   MAKES SENSE FOR THE JURY APPROACHING THE ANSWER.  IF AT THE          03:05

1    END, THEY'RE AT THE END, I THINK IT DENIGRATES THE VALUE OF

2    THOSE QUESTIONS IN THE FIRST INSTANCE.

3           SO I THINK THE BETTER COURSE IS TO CHRONOLOGY, THE

4    WAY -- YOU KNOW, BEFORE A DRAWING, THE IDEA COMES UP.  THAT'S

5    HOW THEY'RE GOING TO APPROACH THE ANALYSIS OF THE EVIDENCE.  I      03:06

6    THINK THAT'S THE STRUCTURE, YOUR HONOR, AND I THINK THAT WAS

7    THE BEAUTY OF HAVING THAT FIRST QUESTION, AS THE COURT SAID

8    THIS MORNING -- FINALLY, WE HAVE THAT ISSUE SQUARELY IN FRONT

9    OF A JURY.  THAT'S THE ONE THEY'RE GOING TO FOCUS ON.

10           **MR. PROCTOR:**  THE COURT OBVIOUSLY CAUGHT ON TO IT.      03:06

11           YOU'LL RECALL MGA'S FIRST QUESTION ON ITS VERDICT

12    FORM, WHICH THE COURT REJECTED; THAT QUESTION WAS "HAS MATTEL

13    PROVEN THAT CARTER BRYANT CONCEIVED THE IDEA AND CREATED THE

14    INITIAL MASTER DRAWINGS WHEN HE WAS AT MATTEL AND NOT IN

15    1998..." OR SOMETHING TO THAT EFFECT.                             03:06

16           MGA WANTS THE LEAD-OFF QUESTION COMING OUT OF THE BOX

17    TO BE A QUESTION WHERE IF THE JURY SAYS NO, THEY ARE GOING

18    TO -- I'M NOT SAYING THEY CAN IGNORE THE REST OF THE DRAWINGS,

19    BUT SAY 'WE'VE DONE OUR WORK HERE AND THE REST OF IT JUST

20    FOLLOWS FROM IT.'  AND IT DOESN'T.  THE IDEA QUESTION DOESN'T.    03:07

21           AND THE MOST IMPORTANT QUESTION, POTENTIALLY -- I

22    MEAN, AGAIN, ALL OF THEM ARE IMPORTANT, BUT IN OUR HEART OF

23    HEARTS, THE FACTUAL PREDICATE FOR THE COPYRIGHT CLAIM, THEY ARE

24    WHAT THE JURY SHOULD BE LOOKING AT WHEN IT FIRST COMES OUT OF

25    THE BOX.  WE'LL DEAL WITH THE IDEAS LATER, SO THERE ISN'T THIS    03:07

1    RISK OF MISLEADING AND SO THAT THE JURY DOESN'T SPIN THROUGH

2    THE DRAWINGS IN SOME SENSE.

3            **THE COURT:**  COUNSEL?

4            **MR. NOLAN:**  YOUR HONOR, MATTEL IS MAKING PURELY A

5    TACTICAL ARGUMENT WITH RESPECT TO THE ORDERING OF THE QUESTION      03:08

6    AND SUGGESTING THAT THE JURY WILL NOT FOLLOW THROUGH ON ITS

7    CHARGE OF RESPONSIBILITY, WHICH I DON'T THINK IS THE PROPER

8    PREMISE.

9            I THINK THE BETTER WAY TO LOOK AT IS THE ORDER IN

10   WHICH CHRONOLOGY OF THE THINKING PROCESS OF THE DEVELOPMENT OF      03:08

11   THE DOLLS AND WHEN THE CONCEPT WAS FIRST CREATED BY

12   CARTER BRYANT IS THE LOGICAL FIRST QUESTION TO HAVE THE JURY

13   START THINKING ABOUT, BECAUSE THAT'S THE QUESTION THAT THEY ARE

14   GOING TO GO TO IN THE FIRST INSTANCE.  WITHOUT REGARD TO

15   WHETHER OR NOT IT'S COPYRIGHT, STATE LAW, CONTRACTS -- IT FLOWS      03:08

16   MORE NATURALLY.

17           **THE COURT:**  I THINK I UNDERSTAND YOUR RESPECTIVE

18   ARGUMENTS.

19           **MR. NOLAN:**  YOUR HONOR, THE LAST POINT I'LL MAKE IS,

20   FRANKLY, BY PUTTING THIS AT THE END, I THINK IT DENIGRATES THAT      03:08

21   ISSUE, BECAUSE YOU'RE OBVIOUSLY TAKING IT OUT OF THE

22   CHRONOLOGICAL THOUGHT PROCESS OF AN INDIVIDUAL.  THAT'S THE

23   RISK THAT I WOULD SEE.

24           **THE COURT:**  I'M TRYING TO PUT ASIDE THE ISSUE OF

25   CHRONOLOGY AND PUTTING ASIDE THE ISSUE OF IMPORTANCE AND FOCUS      03:09

1   ON REASONING.

2           WOULD NOT AN ANSWER TO THE QUESTION OF WHEN THE

3   DRAWING WERE DONE HELP ONE DECIDE THE CONCEPTION OF THE

4   DRAWINGS?

5           I SUPPOSE YOU COULD ALSO SAY THE CONCEPTION OF THE     03:10

6   DRAWINGS WOULD HELP -- THAT'S INTERESTING.

7           WHAT BENEFITS MORE?  TO ANSWER THE QUESTION OF WHEN

8   THE DRAWINGS WERE CONCEIVED AND KNOW WHEN THE DRAWINGS WERE

9   DONE, OR WHEN THE DRAWINGS WERE DONE IF YOU KNOW WHEN THEY WERE

10  CONCEIVED?                                                    03:10

11          I CAN IMAGINE YOUR RESPECTIVE POSITIONS ON THOSE TWO.

12  THEY ARE LARGELY RHETORICAL FOR THE PARTIES.  I WILL THINK

13  ABOUT THIS AND I WILL TRY TO MAKE A RIGHT DECISION.

14          AND I'M SURE ONE SIDE WILL THINK I HAVE FAILED AND TO

15  THE OTHER SIDE, I WILL APPEAR GENIUS.                         03:11

16          ANYTHING ELSE?

17          **MR. NOLAN:**  WILL WE GET THIS TOMORROW MORNING?

18          **THE COURT:**  NO.  I WILL E-MAIL THIS TO YOU TODAY,

19  BEFORE I GO HOME TODAY.

20          I WANT TO SEE YOU BACK HERE AT 5:00 IF YOU'RE NOT      03:11

21  ABLE TO WORK OUT THIS EXHIBIT ISSUE.  AND THEN WHAT I WILL

22  EXPECT FROM YOU TOMORROW MORNING AT 8:30 IS A CLEAN COPY OF THE

23  VERDICT FORM -- YOU DON'T NEED TO GIVE ME THE JURY INSTRUCTION

24  FORM; I'LL PRINT THAT OUT MYSELF -- BUT A VERDICT FORM THAT HAS

25  THE CORRECT EXHIBITS.                                         03:11

1          **MR. NOLAN:**  RIGHT.

2          AND JUST FOR THE RULES OF ENGAGEMENT, FOR EVERY VIDEO

3    DEPOSITION THAT HAS BEEN PLAYED, IS AT THAT TIME, THAT'S WHEN

4    WE DEALT WITH WHETHER OR NOT THE DOCUMENT WAS GOING TO BE

5    ADMITTED OR NOT.  I JUST WANTED TO MAKE CERTAIN WE'RE NOT         03:11

6    CHANGING THE RULES THAT HAVE BEEN IN PLACE.

7          **THE COURT:**  NO.  A PRIMARY RULE, THOUGH -- AND I HAVE

8    INSISTED UPON THIS -- I UNDERSTAND THE PRACTICE HAS BEEN TO

9    ADMIT IT.  I HAVE ASSUMED, EVERY TIME AT THE END OF THOSE VIDEO

10   DEPOSITIONS, THAT YOU'VE STOOD BEFORE ME AND YOU HAVE            03:12

11   INTRODUCED EVERY EXHIBIT SHOWN TO THE JURY.  BUT I HAVE AN IRON

12   CLAD RULE IN THIS COURTROOM THAT NO SIDE SHOWS AN EXHIBIT TO

13   THE JURY -- AND I'VE STOPPED COUNSEL IN MID SENTENCE FROM DOING

14   THIS -- THAT HAS NOT BEEN INTRODUCED.

15         **MR. NOLAN:**  CORRECT.                                   03:12

16         **THE COURT:**  SO IF SOMEBODY HAS SHOWN SOMETHING TO THE

17   JURY THAT THEY DID NOT MOVE TO INTRODUCE, I WANT TO KNOW ABOUT

18   THAT; THAT IS A CLEAR VIOLATION OF THIS COURT'S RULES.

19         DON'T TELL ME THAT YOU SHOWED SOMETHING TO THE JURY

20   THAT YOU DID NOT MOVE TO INTRODUCE AT THE END OF THE VIDEO       03:12

21   DEPOSITION.

22         **MR. NOLAN:**  MY UNDERSTANDING IS THAT THE EXHIBIT

23   MR. ZELLER IS TALKING ABOUT WAS NOT PUBLISHED TO THE JURY.

24         **THE COURT:**  I DON'T KNOW.  I DON'T EVEN KNOW WHAT

25   EXHIBIT NUMBER THIS IS.  THE RECORD IS THE RECORD.              03:12

1        THIS IS NOT SOMETHING WHICH IS WAIVED IF IT IS NOT

2   BROUGHT UP.  IT'S INCUMBENT UPON THE PARTY, THIS IS INCUMBENT

3   ON BOTH OF YOU THROUGHOUT THIS, THAT IF YOU SHOWED A VIDEOTAPED

4   DEPOSITION THAT YOU MOVED INTO EVIDENCE AND THAT YOU HAD A

5   PRIOR STIPULATION TO MOVE INTO EVIDENCE, EVERY EXHIBIT THAT WAS          03:12

6   SHOWN.  AND THAT WILL BE WORKED OUT.

7        LETS HAVE THAT WORKED OUT BY 5:00.  I DON'T WANT TO

8   BE TALKING ABOUT THIS TOMORROW MORNING EITHER.  MAYBE IT'S BEST

9   YOU JUST COME BACK HERE AT 5:00 AND JUST CHECK IN WITH THE

10  COURT AND MAKE SURE THAT THE EXHIBITS, THE DEPOSITION                    03:13

11  TRANSCRIPTS AND THE EXHIBITS FOR THE VERDICT FORM ARE RESOLVED.

12        ANYTHING FURTHER FROM MATTEL?

13        **MR. ZELLER:**  NO, YOUR HONOR.

14        **THE COURT:**  MR. NOLAN?

15        **MR. NOLAN:**  ONE LAST POINT ON THE VERDICT FORM.             03:13

16        HERE'S THE IMPORTANT THING.  THE WAY THIS ISSUE, THE

17  WAY THE CASE WAS TRIED, FIRST IDEA COMES INSPIRATION, WHAT IS

18  THE INSPIRATION FOR THE IDEA.  KICKAPOO, THAT'S HOW THE WHOLE

19  CASE IS FRAMED.

20        **THE COURT:**  I UNDERSTAND.                                   03:13

21        **MR. NOLAN:**  THANK YOU.

22        **THE COURT:**  I'LL GIVE THOUGHT TO THIS.

23        OKAY.  I'LL GO BACK TO WORK.  YOU GO BACK TO WORK.

24  I'LL SEE YOU AT 5:00.

25        **THE CLERK:**  COURT STANDS IN RECESS.                        03:13

```
 1              (WHEREUPON A RECESS WAS HELD.)

 2         THE CLERK:  RECALLING THE MATTER OF CASE NUMBER

 3    CV04-09049-SGL, MATTEL, INC., V. MGA, INC., ET AL.

 4         MR. ZELLER:  MIKE ZELLER, DYLAN PROCTOR, FOR MATTEL.

 5         MS. AGUIAR:  LAUREN AGUIAR FOR MGA.                  05:07

 6         THE COURT:  I JUST WANTED TO CIRCLE BACK.

 7         ARE WE IN AGREEMENT ON THE EXHIBITS?

 8         MS. AGUIAR:  I BELIEVE WE ARE.

 9         I HAVE ONE EXHIBIT THAT WAS SHOWN TO MR. ECKERT AND

10    THERE WAS TESTIMONY REGARDING IT AND AN OBJECTION TO IT WAS  05:07

11    OVERRULED.  I'D JUST LIKE TO OFFICIALLY MOVE IT IN; ITS

12    EXHIBIT 18560, AND THERE IS AN "A" VERSION, YOUR HONOR, THAT IS

13    A REDACTED VERSION.

14         THE COURT:  WHICH ONE DO YOU WANT TO HAVE IN?

15         MS. AGUIAR:  IT'S AN ARTICLE -- THE SHORT ANSWER IS  05:07

16    I'D PREFER TO HAVE THE UNREDACTED VERSION, BECAUSE IT'S AN

17    ARTICLE FROM WORK FORCE MANAGEMENT; SO I WOULD MOVE IN 18560,

18    THE UNREDACTED VERSION.  AND IT WAS DISCUSSED AT THE TRANSCRIPT

19    AT PAGE 3849.

20         MR. ZELLER:  I HAVE NOT BEEN INVOLVED IN THOSE       05:08

21    DISCUSSIONS.  MAYBE MGA HAS BEEN COMMUNICATING WITH SOMEBODY

22    ELSE ABOUT THAT EXHIBIT.  THIS IS THE FIRST TIME I'M HEARING

23    ABOUT IT.  THE EXHIBITS THAT I WAS INVOLVED IN ARE THE ONES

24    THAT WERE FROM THE GALVANO DEPOSITION.

25         MAYBE IF THERE IS SOMEBODY WHO'S ALREADY LOOKED AT    05:08
```

```
 1   THIS ISSUE -- BUT, I MEAN, AS I STAND HERE NOW, YOUR HONOR, I

 2   CAN'T AGREE TO THIS BECAUSE I DON'T KNOW WHAT IT IS.

 3          THE COURT:  I DO RECALL THE SERIES OF ARTICLES THAT

 4   WERE PUT IN FRONT OF MR. ECKERT.

 5          THE ONLY HESITATION I HAVE ON THE UNREDACTED VERSION      05:08

 6   IS THAT OUR PRACTICE HAS BEEN, ON BOTH SIDES, TO ONLY ADMIT

 7   THOSE PORTIONS THAT HAVE BEEN TESTIFIED TO.  WE'VE DONE THAT

 8   WITH BOOKS; WITH THE WALL STREET JOURNAL ARTICLE; WE'VE DONE

 9   THAT WITH ANY DIFFERENT NUMBER OF ARTICLES.

10          IF THE RECORD SAYS IT'S BEEN ADMITTED --                 05:09

11          MS. AGUIAR:  I DIDN'T MEAN IT HAD BEEN ADMITTED, YOUR

12   HONOR.  I'M MOVING IT BECAUSE IT HAD BEEN SHOWN TO HIM AND

13   THERE WAS TESTIMONY ABOUT; SO I JUST WANTED TO BRING IT TO YOUR

14   ATTENTION THAT WE WANTED TO OFFICIALLY MOVE IT INTO EVIDENCE.

15          THE COURT:  OKAY.                                        05:09

16          MS. AGUIAR:  I BELIEVE THAT AT ONE POINT -- I'D HAVE

17   TO CHECK THE TRANSCRIPT -- WE CAN MOVE IN THE REDACTED VERSION.

18   WE PREFER THE UNREDACTED.

19          THE COURT:  LET'S LOOK AT IT, MR. ZELLER, AND SEE IF

20   THERE'S ANYTHING --                                             05:09

21          MS. AGUIAR:  MY UNDERSTANDING IS WE'VE RESOLVED

22   ISSUES REGARDING EXHIBITS MATTEL WOULD LIKE TO MOVE IN FROM THE

23   GALVANO DEPOSITION.

24          MR. ZELLER:  I HAVE NOT REVIEWED THE WHOLE THING, BUT

25   I CAN SEE THERE ARE ISSUES, EVEN WITH THIS VERSION OF IT, WHERE  05:09
```

1   IT TALKS ABOUT HOW IT'S QUOTING, FOR EXAMPLE, ALAN KAYE, WHO

2   NEVER TESTIFIED IN THIS CASE; TALKING ABOUT "THE CULTURE CAN BE

3   CONTENTIOUS AND AGGRESSIVE AT TIMES."  IT HAS THESE STATEMENTS.

4           **THE COURT:**  DO YOU HAVE A COPY OF THE TRANSCRIPT?

5           DO YOU HAVE THE PAGE BEFORE THIS?                          05:10

6           **MS. AGUIAR:**  CAN I INDULGE YOUR HONOR TO TELL ME THE

7   DATE?

8           **THE COURT:**  IT'S JULY 1ST, 2008, PAGE 3849.

9           IT LOOKS LIKE WE'RE ALREADY IN THE DISCUSSION OVER

10  THE EXHIBIT WHEN WE GET TO THIS POINT.                           05:10

11          (BRIEF PAUSE. )

12          **THE COURT:**  IT LOOKS LIKE THIS WAS BEING USED TO

13  REFRESH RECOLLECTION.  GOING BACK TO PAGE 3848, THERE'S A LONG

14  DISCUSSION ABOUT WHETHER THIS IS IMPEACHMENT OR NOT.  AND

15  ULTIMATELY I SIDED WITH MGA AND FOUND THIS WAS PROPER GROUNDS    05:13

16  FOR IMPEACHMENT, GETTING INTO HIS ASSESSMENT.

17          "MR. ECKERT, DO YOU RECALL BEING INTERVIEWED AND

18  MAKING COMMENTS ON A STORY CALLED 'SHAKING UP THE TOY SHOP'?"

19          ANSWER:  "NO.  I DON'T REMEMBER THAT SPECIFIC TITLE

20  AND THE ARTICLE."                                                05:13

21          QUESTION:  "COULD YOU LOOK AT EXHIBIT 18560; THAT'S

22  IN YOUR WHITE NOTEBOOK."

23          THERE'S AN OBJECTION TO HIM LOOKING AT IT.  THERE'S A

24  DISCUSSION ABOUT -- I ULTIMATELY OVERRULED ALL OF THE

25  OBJECTIONS AND I PERMIT MR. NOLAN TO EXAMINE ON IT.             05:13

```
 1              THEN IT GETS BACK TO THE QUESTION:

 2              QUESTION:  "DO YOU RECALL BEING INTERVIEWED?"

 3              ANSWER:  "I DON'T REMEMBER BEING INTERVIEWED."

 4              THERE'S A REFERENCE TO A SERIES OF QUESTIONS THAT

 5     MR. ECKERT ANSWERS.                                            05:14

 6              I DON'T SEE WHERE THIS WAS EVER REALLY PRESENTED TO

 7     THE JURY OR WHERE ANY FOUNDATION FOR THIS WAS LAID IN THE

 8     TRANSCRIPT, AT LEAST THAT I HAVE BEFORE ME, COUNSEL.

 9              MS. AGUIAR:  I HAD GIVEN YOU MY COPY.  I THOUGHT THAT

10     HE DID SAY THAT HE RECALLED -- EITHER THAT HE RECALLED THE     05:14

11     PUBLICATION OR THAT HE WAS IN SOME WAY INVOLVED IN AN ARTICLE

12     IN THAT PUBLICATION AND THAT THERE IS TESTIMONY ON IT.

13              THE COURT:  SHOW ME WHERE THAT IS.

14              AND, I'M SORRY, I DREW SOME LINES; IT'S HABIT.  JUST

15     IGNORE MY LINES.                                               05:14

16              WHAT ARE YOU REFERRING TO?

17              MS. AGUIAR:  "DO YOU RECALL BEING INTERVIEWED, IN OR

18     AROUND JUNE, 2006, FOR AN ARTICLE IN WORK FORCE MANAGEMENT?"

19              HE SAID HE DIDN'T REMEMBER THE SPECIFIC TIME, BUT HE

20     DID RECALL BEING INTERVIEWED BY THEM.  AND HE SAID DID YOU HAVE 05:15

21     THIS CONCLUSION?  AND HE AGREED THAT THAT IS A CONCLUSION THAT

22     HE HAD.

23              THE COURT:  SO THAT'S WHAT I'M GETTING AT.

24              IT CAME IN.

25              MS. AGUIAR:  RIGHT.  SO I THINK THAT IT WAS JUST AN    05:15
```

```
 1   ISSUE OF MR. NOLAN NOT MOVING IN THE REDACTED VERSION OF THE

 2   DOCUMENT.

 3          THE COURT:  MY READING OF THAT IS THAT SHOWING HIM

 4   THE BOOK OR THE ARTICLE WAS TO REFRESH HIS RECOLLECTION.

 5   BECAUSE HE INITIALLY HE SAID HE DID NOT REMEMBER, AND THEN HE     05:15

 6   DOES.  THEN IT'S A MATTER OF THE DATE, AND THEN YOU SHOW HIM

 7   THE ARTICLE AND HE REMEMBERS THE DATE AND HE FULLY TESTIFIES TO

 8   ITS CONTENTS.

 9          SO THE ARTICLE ITSELF WOULD BE CUMULATIVE AT THIS

10   POINT.                                                           05:15

11          MS. AGUIAR:  WE'LL WITHDRAW IT THEN.

12          THE COURT:  ANY OTHER EXHIBITS?

13          MATTEL?

14          MR. ZELLER:  IF I MAY, I'LL JUST READ THE EXHIBITS

15   THAT I UNDERSTAND WERE THE SUBJECT OF THE DESIGNATIONS FOR       05:16

16   MS. GALVANO THAT WILL NOW BE CONSIDERED IN EVIDENCE.

17          THE COURT:  OKAY.

18          MR. ZELLER:  THERE ARE A NUMBER OF THEM, BUT THEY ARE

19   EXHIBITS 740, 746, 748, 750, 769, 772, 773, 1171, 1172, 1173,

20   1174, 1179, AND THEN THE REMAIN PAGES OF EXHIBIT 1152.           05:16

21          THE COURT:  NOW, IS IT YOUR REPRESENTATION TO THE

22   COURT THAT ALL OF THESE EXHIBITS WERE SHOWN TO MS. GALVANO AND

23   PUBLISHED TO THE JURY DURING THE DEPOSITION TRANSCRIPT OR

24   VIDEOTAPED DEPOSITION?

25          MR. ZELLER:  ALL OF THE EXHIBITS -- ACTUALLY, MANY OF     05:16
```

1  THEM WERE PUBLISHED TO THE JURY.  AT LEAST TWO OF THEM THAT I

2  KNOW OF, ALTHOUGH WE CAN GO INTO THE ISSUES CONCERNING IT, BUT

3  TWO THAT I KNOW OF WERE NOT APPARENTLY PUBLISHED TO THE JURY.

4  THAT'S I KNOW OF EXHIBIT 1179 AND THEN THE REMAINING PAGES OF

5  1152.                                                          05:17

6          **THE COURT:**  WERE NOT PUBLISHED TO THE JURY.

7          **MR. ZELLER:**  AS I UNDERSTAND IT.

8          NOW, I KNOW THAT WITH RESPECT TO ALL OF THE DRAWINGS,

9  THE PARTIES HAD AN AGREEMENT THAT THE DRAWINGS WERE ALL GOING

10  TO BE PUBLISHED.  I DON'T WANT TO GET INTO THE ISSUES ON THAT.  05:17

11  BUT IF I UNDERSTAND WHERE WE ARE CURRENTLY, BECAUSE I PRESENTED

12  THIS LIST TO MGA'S COUNSEL AND I UNDERSTAND THERE'S AN

13  AGREEMENT THAT THESE ALL COME IN, JUST TO BE VERY PRECISE.

14          BUT I BELIEVE MOST OF THESE ARE DRAWINGS OR OTHER

15  VISUAL MATERIALS THAT WERE PUBLISHED TO THE JURY.  MANY OF THEM  05:17

16  ARE JUST SIMPLY DUPLICATE EXHIBIT NUMBERS OF WHAT'S ALREADY

17  INTO EVIDENCE.  BUT SO THERE'S NO CONFUSION ON THE JURY'S PART

18  AS TO WHAT MS. GALVANO WAS TESTIFYING ABOUT, THAT'S WHY WE

19  WOULD LIKE THEM IN.

20          **THE COURT:**  IS THERE A STIPULATION TO THAT EFFECT,  05:18

21  MS. AGUIAR?

22          **MS. AGUIAR:**  YES.  WE THINK SOME WERE NOT PUBLISHED

23  AND WE DECIDED WE WOULD WAIVE ANY OBJECTION TO THEM COMING IN,

24  STOP FIGHTING FOR THE SAKE OF FIGHTING, AND JUST LET THEM IN.

25          **THE COURT:**  VERY WELL, THEN.                      05:18

1          IN THAT CASE, PURSUANT TO STIPULATION, 740, 746, 748,

2     750, 769, 772, 773, 1171, 1172, 1173, 1174, 1179, AND THE

3     REMAINING PAGES OF 1152 ARE ADMITTED.

4          I APPRECIATE THE STIPULATION ON THAT, MS. AGUIAR.

5          I DO THINK, AT THE END OF THE DAY, THAT I'M NOT SURE          05:18

6     THAT ANY PARTICULAR EXHIBIT HERE IS GOING TO MAKE MUCH OF A

7     MOMENT.  I JUST WANT TO HAVE IT CLEARLY UNDERSTOOD, BEFORE WE

8     START TOMORROW MORNING, WHAT'S IN AND WHAT'S NOT.

9          ANYTHING ELSE?

10         **MR. PROCTOR:**  YES, JUDGE.          05:19

11         RELATING TO THE SCULPTS, THE SECOND ENTRY WHICH IS

12    BEING REMOVED FROM THE VERDICT FORM --

13         **THE COURT:**  IT HAS BEEN REMOVED.

14         **MR. PROCTOR:**  CORRECT.

15         WE HAD A WRITTEN STIPULATION WE PREPARED, AND MGA IS          05:19

16    NOT WILLING TO SIGN THAT STIPULATION; SO I JUST WANT TO GET

17    SOME CLARITY AS TO EXACTLY THE LANGUAGE THAT'S GOING TO BE READ

18    TO THE JURY BY MGA.

19         **THE COURT:**  THIS IS THAT THE PHOTOGRAPH IN 1502,

20    PAGE 2, IS A PHOTOGRAPH OF EXHIBIT WHATEVER IT IS.          05:19

21         **MR. PROCTOR:**  CORRECT.

22         I'M SIMPLY TRYING TO GET IT MUTUALLY CLEAR AS TO WHAT

23    THE LANGUAGE IS GOING TO BE.  WHAT'S IN THE STIPULATION -- I

24    DON'T KNOW IF MGA HAS AN OBJECTION TO THE LANGUAGE OR NOT, BUT

25    WHAT I'D PROPOSE IS, QUOTE, "TRIAL EXHIBIT 1136 AND THE          05:19

1    TANGIBLE ITEM PICTURED IN TRIAL EXHIBIT 1105-2 ARE BOTH COPIES

2    OF THE SAME BRATZ SCULPT," CLOSE QUOTE.

3          **THE COURT:**  I CAN SEE THE PROBLEM THEY ARE GOING TO

4    HAVE WITH THAT, COUNSEL.

5          THE POINT IS THAT IT'S A PICTURE OF -- ONE IS A                05:20

6    PICTURE OF THE SCULPT.  THE OTHER IS NOT A SCULPT, IT'S A

7    PICTURE OF A SCULPT.

8          AM I MISSING SOMETHING?

9          **MR. PROCTOR:**  I BELIEVE THEY ARE BOTH -- I BELIEVE

10   THE OTHER ONE IS ACTUALLY AN IMAGE OF THE SCULPT AS WELL.          05:20

11         **THE COURT:**  I THOUGHT THE ONE THING WAS THE ACTUAL

12   SCULPTURE THAT I'VE SEEN TEETERING ON THE WITNESS LEDGE HERE.

13         IS THAT NOT CORRECT?

14         **MS. AGUIAR:**  THAT'S RIGHT.

15         **MR. PROCTOR:**  I MAY BE UNDER A MISAPPREHENSION, AND I     05:20

16   APOLOGIZE.

17         I THINK YOU'RE CORRECT.  ONE IS A PHOTOGRAPH OF THE

18   OTHER ONE.

19         **THE COURT:**  ONE IS THE ACTUAL SCULPT.  THEY SHOULDN'T

20   BOTH BE REFERRED TO AS A SCULPT.  ONE IS A SCULPT.  AND AS I       05:20

21   UNDERSTAND IT, MGA'S AGREEING TO SAY THAT THE SECOND PAGE OF

22   EXHIBIT --

23         **MR. PROCTOR:**  1105-2.

24         **THE COURT:**  **--** IS A PHOTOGRAPH OR PICTURE OF EXHIBIT

25   --

1          MR. PROCTOR:  OF EXHIBIT 1136.

2          **THE COURT:**  IS THAT CORRECT?

3          **MS. AGUIAR:**  TO BE HONEST, I THOUGHT WE HAD RESOLVED

4   THIS WHEN WE WERE HERE BEFORE.

5          IT WAS VERY CLEAR ON THE RECORD.  HE SAID THIS IS

6   WHAT WILL BE SAID TO THE JURY TOMORROW, AND THAT'S WHAT I

7   AGREED TO.

8          **THE COURT:**  VERY GOOD.  THAT'S WHAT WILL BE SAID TO

9   THE JURY TOMORROW.

10         ANYTHING ELSE FROM MATTEL?

11         **MR. ZELLER:**  NO, YOUR HONOR.

12         **THE COURT:**  MGA?

13         **MS. AGUIAR:**  NO.

14         **THE COURT:**  AS FAR AS THE VERDICT FORM, I GATHER

15  THERE IS AGREEMENT ON WHAT EXHIBITS ARE TO BE INCLUDED IN THE

16  VERDICT FORM AS OF THIS POINT?

17         IS THAT CORRECT, FROM MATTEL'S PERSPECTIVE?

18         **MR. PROCTOR:**  I BELIEVE SO.

19         MATTEL, THIS AFTERNOON, SENT MGA SOME ADDITIONAL

20  EXHIBITS AND WHERE WE THINK THEY SHOULD GO ON THE VERDICT FORM,

21  AND I'VE BEEN INFORMED BY MGA THAT THEY AGREE.

22         **MS. AGUIAR:**  THIS MORNING OR THIS AFTERNOON?

23         **MR. PROCTOR:**  MAYBE IT WAS THIS MORNING.

24         **MS. AGUIAR:**  IF IT WAS THIS MORNING, THEN WE'RE IN

25  AGREEMENT.  IF THERE'S ANOTHER ONE THAT I DIDN'T SEE THAT'S

1   THIS AFTERNOON -- I'M FEELING COOPERATIVE TODAY, BUT NOT THAT

2   COOPERATIVE.

3          THE COURT:  VERY GOOD.  SO WE'RE ALL IN AGREEMENT,

4   THEN, AND THE COURT WILL RECEIVE AT 8:30 TOMORROW MORNING THE

5   FINAL VERDICT FORM WITH THE CORRECT EXHIBITS IN IT.  AND        05:22

6   HOPEFULLY, IF NOTHING ELSE, WE'LL HAVE DEFENDANT WILL WRAP UP

7   THEIR CASE, THERE WILL BE A BRIEF REBUTTAL CASE, THEN WE'LL

8   FIND OUT IF THERE'S ANY SURREBUTTAL; I TRUST THAT'S BEEN WORKED

9   OUT IF THERE IS OR THERE IS NOT, AND WE'LL BE DONE.

10         MR. QUINN:  AS I UNDERSTAND IT, THERE'S NO              05:22

11  ANTICIPATED SURREBUTTAL CASE.

12         THE COURT:  I THINK I GAVE YOU UNTIL 7:00 TONIGHT.

13         WHAT'S MGA'S THOUGHT ON A SURREBUTTAL AT THIS POINT?

14         MS. AGUIAR:  I THINK MR. NOLAN MADE A REPRESENTATION

15  ON THE RECORD THE OTHER DAY THAT WE WERE NOT GOING TO HAVE A    05:22

16  SURREBUTTAL CASE.

17         THE COURT:  VERY GOOD.

18         MR. PROCTOR:  DOES THE COURT WANT THEA VERDICT FORM

19  ON A DISK?

20         THE COURT:  NO; JUST GIVE ME THE PHYSICAL VERDICT        05:23

21  FORM.

22         ALL RIGHT.  I'LL SEE YOU TOMORROW MORNING AT 8:30.

23         (MORNING SESSION CONCLUDED. )

24

25  / / /

1                                    CERTIFICATE

2

3       I hereby certify that pursuant to section 753, title 28, united
        states code, the foregoing is a true and correct transcript of
4       the stenographically recorded proceedings held in the
        above-entitled matter and that the transcript page format is in
5       conformance with the regulations of the judicial conference of
        the united states.

6

7       _____            _____

8       THERESA A. LANZA, RPR, CSR                              Date
        Official COURT Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25