```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                          EASTERN DIVISION

 4                               - - -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                               - - -

 7  MATTEL, INC.,                    )
                                     )
 8                   Plaintiff,      )
                                     )
 9            vs.                    )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, inc., et. Al.,)  Trial Day 24
                                     )  Morning Session
11                   Defendants.     )  Pages 5027-5043
    _____)
12  AND CONSOLIDATED ACTIONS,        )
                                     )
13  _____)

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                      Riverside, California

17                     Tuesday, July 15, 2008

18                           10:09 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24              3470 12th Street, Rm. 134
                Riverside, California  92501
25                   951-274-0844
                 WWW.THERESALANZA.COM
```

```
 1   APPEARANCES:

 2

     On behalf of MATTEL, INC.:
 3
                         QUINN EMANUEL
 4                       By:  JOHN QUINN
                              JON COREY
 5                            MICHAEL T. ZELLER
                              HARRY OLIVAR
 6                            TIMOTHY ALGER
                              William price
 7                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 8                       LOS ANGELES, California   90017
                         213-624-7707
 9

10
     ON BEHALF OF MGA ENTERTAINMENT:
11
                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                       BY:   THOMAS J. NOLAN
                               JASON RUSSELL
13                             RAOUL KENNEDY
                               Lauren aguiar
14                             Carl roth
                         300 SOUTH GRAND AVENUE
15                       LOS ANGELES, CALIFORNIA   90071-3144
                         213-687-5000
16

17

18

19

20

21

22

23

24

25
```

TUESDAY, JULY 15, 2008                           TRIAL DAY 24, MORNING SESSION

```
 1                          I N D E X

 2                                                     Page

 3    JURY DELIBERATIONS ...........................   5030
```

TUESDAY, JULY 15, 2008                TRIAL DAY 24, MORNING SESSION

| | |
|---|---|
| 1 | RIVERSIDE, CALIFORNIA; TUESDAY, JULY 15, 2008; 10:09 A.M. |
| 2 | -oOo- |
| 3 | **THE CLERK:** CALLING THIS MATTER OUTSIDE OF THE |
| 4 | PRESENCE OF THE JURY, CASE NUMBER CV04-09049-SGL, MATTEL, INC., |
| 5 | V. MGA, INC., ET AL. |
| 6 | MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE |
| 7 | YOUR APPEARANCES FOR THE RECORD. |
| 8 | **MR. QUINN:** JOHN QUINN, MIKE ZELLER, FOR MATTEL. |
| 9 | **MR. NOLAN:** TOM NOLAN, LAUREN AGUIAR, FOR MGA. |
| 10 | **THE COURT:** GOOD MORNING, COUNSEL.                          10:09 |
| 11 | THE COURT HAS RECEIVED THE FOLLOWING NOTE; THE NOTE |
| 12 | ACTUALLY APPEARS IN THE HANDWRITING OF TWO DIFFERENT |
| 13 | INDIVIDUALS. THE FIRST PART APPEARS TO THE COURT AS SIMPLY |
| 14 | NOTES ON THE TIMING OF THE JURY. IT SAYS: "TUESDAY THROUGH |
| 15 | FRIDAY, 9:15 A.M. TO 5:00 P.M., AND LUNCH AT 12:30."           10:09 |
| 16 | I'M DISREGARDING THAT FOR A MOMENT; WE'VE ALREADY |
| 17 | RECEIVED THAT INFORMATION. |
| 18 | THEN THERE'S A DATE: "JULY 15, 2008. I NEED TO KNOW |
| 19 | IF WE ARE ALSO TRYING TO DETERMINE IF THESE DRAWINGS ARE |
| 20 | LILY'S. I THOUGHT WE WERE LOOKING TO SEE IF CARTER DREW THEM   10:09 |
| 21 | IN 1998 AND WHO OWNS THEM. SIGNED, NIVEA McEACHERN." |
| 22 | SHE'S JUROR NUMBER TEN. |
| 23 | IT SAYS IT'S DATED THIS 10TH DAY OF JULY, 2008, BUT |
| 24 | OBVIOUSLY IT'S TODAY, WE JUST RECEIVED IT TODAY. |
| 25 | AGAIN: "I NEED TO DETERMINE IF WE ARE ALSO TRYING TO           10:10 |

1    DETERMINE IF THESE DRAWINGS ARE LILY'S?  I THOUGHT WE WERE

2    LOOKING TO SEE IF CARTER DREW THEM IN 1998 AND WHO OWNS THEM."

3               MY PROPOSAL TO COUNSEL IS TO SEND BACK A RESPONSE

4    FROM THE COURT STATING "YOU ARE TO ANSWER THE QUESTIONS AND

5    ONLY THE QUESTIONS SET FORTH ON THE VERDICT FORM."  PERIOD.                10:10

6          **MR. QUINN:**  I THINK THAT MAKES SENSE, YOUR HONOR.

7          **MR. NOLAN:**  YOUR HONOR, I THINK IT'S SATISFACTORY.

8               I JUST WANTED TO PROVOKE A LITTLE BIT OF DISCUSSION,

9    SO WE'RE ALL KIND OF ON THE SAME PAGE IN THIS.

10         **THE COURT:**  SURE.

11         **MR. NOLAN:**  I THINK THERE'S NO DOUBT THAT THEY ARE

12   NOT BEING ASKED TO DETERMINE WHETHER OR NOT LILY MARTINEZ DREW

13   THESE DRAWINGS; SO I WONDER WHETHER OR NOT A MORE DIRECT ANSWER

14   WOULD BE "NO, THE QUESTION IS NOT WHETHER OR NOT LILY MARTINEZ

15   DREW THE DRAWINGS.  PLEASE ANSWER ONLY THE QUESTIONS."                      10:11

16              THAT MIGHT PROVIDE A LITTLE MORE GUIDANCE.

17         **THE COURT:**  IT WOULD, AND I'LL CONSIDER THAT.

18              I WANT TO HEAR FROM MATTEL AS WELL.

19              THIS IS MY THINKING, FOR WHAT IT'S WORTH.  I DON'T

20   WANT THIS JURY TO GET INTO THE HABIT OF ASKING THE COURT TO                 10:11

21   ANSWER QUESTIONS LIKE THIS.  I WANT THEM TO GET IN THE HABIT OF

22   USING THE JURY INSTRUCTIONS AND THE VERDICT FORM TO FIGURE IT

23   OUT ON THEIR OWN.  BY TELLING THEM TO REFER BACK TO THE VERDICT

24   FORM, I'M BASICALLY TELLING THEM, I WOULD HOPE, ASSUMING

25   RATIONALITY, THAT THE ANSWER IS NO.  BECAUSE THE QUESTIONS ON               10:11

```
 1  THE VERDICT FORM SIMPLY ASK "WHEN DID CARTER BRYANT -- DID HE
 2  MAKE THESE DRAWINGS OR ITEMS DURING HIS EMPLOYMENT WITH
 3  MATTEL?"
 4           I DON'T WANT TO, SAY, 'CONDITION THE JURY,' BUT I
 5  WANT TO GET THEM TO USE THE VERDICT FORM AND THE JURY                    10:12
 6  INSTRUCTIONS TO ANSWER THEIR OWN QUESTIONS, AS OPPOSED TO
 7  GIVING READY-MADE ANSWERS.
 8           I AGREE WITH YOU, MR. NOLAN, THAT THE EASIER THING TO
 9  DO WOULD BE TO SAY 'NO' IN RESPONSE TO THE QUESTION, BUT I'M
10  AFRAID THAT MIGHT -- IT APPEARS THIS JUROR IS WRITING FOR                10:12
11  SOMEBODY ELSE; SHE SEEMS TO GET IT, BUT APPARENTLY THERE'S
12  ANOTHER JUROR WHO DOESN'T.
13           **MR. NOLAN:**  THAT'S THE POINT.  I WAS THINKING THE
14  SAME THING.
15           **THE COURT:**  RIGHT.                                          10:12
16           **MR. NOLAN:**  NOT THAT I WANT TO START OFF THE WEEK
17  TRYING GET ON YOUR GOOD SIDE, BUT LET ME JUST SAY THIS -- I
18  MIGHT AS WELL TRY -- WHEN I HEARD YOUR SUGGESTED RESPONSE, MY
19  FIRST REACTION WAS, 'THAT'S REALLY A SMART ANSWER, BECAUSE IT
20  WILL KEEP THEM FROM SENDING BACK OTHER NOTES.'  SO I CERTAINLY           10:12
21  UNDERSTAND THE COURT'S POINT.
22           I WOULD JUST ASK -- AND MAYBE MATTEL CAN WEIGH IN ON
23  THIS -- THERE SEEMS TO BE A LITTLE CONFUSION AS TO THE
24  DIRECTION AND THE USE OF THE TOON TEENS, WHICH IS NOT
25  SURPRISING IN MY MIND BECAUSE OF THE WAY THE CASE WAS TRIED.             10:13
```

```
 1    IT DOES SEEM AS THOUGH THERE'S SOME EFFORTS IN THERE TO TRY TO
 2    MAKE A COMPARISON BETWEEN TOON TEENS AND CARTER'S DRAWINGS AS
 3    OPPOSED TO '98.  BUT I'VE MADE MY POINTS, AND CERTAINLY IF THE
 4    COURT WANTS TO LEAVE THE NOTE THE WAY IT IS, WE HAVE NO
 5    OBJECTION TO IT.                                                    10:13
 6              THE COURT:  VERY WELL.
 7              MR. QUINN?
 8              MR. QUINN:  YOUR HONOR, MY CONCERN ABOUT GOING BEYOND
 9    WHAT THE COURT PROPOSED IS -- THERE IS A LINE OF THINKING THAT
10    ONE MIGHT TAKE HERE ON THE EVIDENCE PRESENTED THAT MR. BRYANT'S     10:13
11    DRAWINGS WERE INSPIRED BY TOON TEENS AND, IN SOME SENSE,
12    REPRESENT LILY'S CREATIONS OR LILY'S DRAWINGS.
13              I DON'T KNOW WHAT THE THINKING IS.
14              BUT I'M AFRAID IF WE GIVE THE INSTRUCTION THAT
15    MR. NOLAN PROPOSES, THAT THAT WILL FORECLOSE THAT LINE OF           10:13
16    THOUGHT, WHICH IS A PERFECTLY LEGITIMATE LINE OF THOUGHT, AS TO
17    WHETHER, IN SOME SENSE, THESE WERE INSPIRED BY LILY'S WORK.
18              THE COURT:  THERE ARE TWO DIFFERENT CONCEPTS.  ONE IS
19    WHETHER THEY WERE INSPIRED AND THE OTHER IS WHETHER THEY
20    ACTUALLY HAVE SOME OWNERSHIP.  THAT'S THE MOST DISTURBING PART      10:14
21    OF THE NOTE, TO THE COURT, IS THAT LAST PHRASE, THOSE LAST FOUR
22    WORDS, "AND WHO OWNS THEM," BECAUSE THAT'S WHAT WE'VE BEEN
23    TRYING TO AVOID.  THAT'S NOT THE ISSUE IN THIS PHASE OF THE
24    TRIAL; THAT WOULD BE THE NEXT PHASE.
25              MR. QUINN:  THAT'S EXACTLY IT, YOUR HONOR, AND THAT'S     10:14
```

1  WHY I DON'T THINK WE SHOULD DEPART FROM JUST REFERRING THEM TO
2  THE VERDICT FORM.
3         **THE COURT:**  VERY WELL.  I'M CONVINCED, THEN, THAT I'M
4  GOING TO WRITE AS FOLLOWS:  "YOU ARE TO ANSWER THE QUESTIONS
5  AND ONLY THE QUESTIONS SET FORTH ON THE VERDICT FORM."     10:14
6         **MS. AGUIAR:**  CAN I JUST ASK YOU TO READ THE BEGINNING
7  PART OF THE QUESTION AGAIN?
8         **THE COURT:**  YES.
9         "I NEED TO KNOW IF WE ARE ALSO TRYING TO DETERMINE IF
10 THESE DRAWINGS ARE LILY'S?  I THOUGHT WE WERE LOOKING TO SEE IF  10:15
11 CARTER DREW THEM IN 1998 AND WHO OWNS THEM."
12        AND THE ANSWER IS, OF COURSE, "NO, YOU'RE NOT TO BE
13 DOING THAT."  AND THAT'S WHY I THINK WITHOUT GIVING THAT
14 ANSWER, HAVING THEM REREAD THE QUESTIONS WHICH ALL SAY WHETHER
15 OR NOT CARTER DREW THEM AT A PARTICULAR TIME, WILL HOPEFULLY   10:15
16 GET THEM BACK ON TRACK.
17        **MS. AGUIAR:**  RIGHT.
18        IT SEEMS TO ME, THOUGH -- AND I ALSO DON'T WANT THE
19 PARTIES TO BE MAKING THIS JURY FRUSTRATED EITHER -- THEY ARE
20 ASKING A DIRECT QUESTION.  THEY ARE ASKING WHETHER THEY ARE   10:15
21 SUPPOSED TO BE DETERMINING WHETHER THE DRAWINGS ARE LILY'S.
22 THEY ARE NOT ASKING ABOUT INSPIRATION; THEY ARE NOT ASKING
23 ABOUT POSES.
24        THIS JURY IS INTELLIGENT ENOUGH TO UNDERSTAND THE
25 ARGUMENTS, I THINK, THAT WERE BEING MADE.  THEY ARE SAYING "ARE   10:16

1  WE SUPPOSED TO DETERMINE THAT THEY ARE HERS?"
2          I UNDERSTAND THE POINTS THAT HAVE BEEN MADE BY YOU,
3  YOUR HONOR, AND BY MR. QUINN.  BUT AT SOME LEVEL, I JUST FEEL
4  LIKE IF THEY ASK US A SPECIFIC QUESTION AND WE DELIBERATELY TRY
5  TO AVOID ANSWERING THAT QUESTION -- AND I DON'T FRANKLY SEE                10:16
6  ANYTHING WRONG WITH A COMBINATION OF WHAT YOU JUST SAID, BUT
7  ALSO STARTING IT BY SAYING "YOU ARE NOT BEING ASKED TO
8  DETERMINE WHETHER THE DRAWINGS ARE LILY'S."  BECAUSE I DON'T
9  THINK MR. QUINN COULD DISPUTE THAT IS NOT WHAT THEY ARE BEING
10 ASKED TO DO.  THEY ARE NOT BEING ASKED TO DETERMINE WHETHER THE             10:16
11 DRAWINGS ARE LILY'S.
12         AND WHILE I UNDERSTAND YOUR CONCERN ABOUT GETTING
13 THEM INTO A PATTERN OF ASKING QUESTIONS, THEY ARE ASKING A
14 QUESTION AND THEY ARE TRYING TO GET AT THE RIGHT ANSWERS.
15         **THE COURT:**  RIGHT.                                               10:17
16         THAT'S A GOOD POINT AS WELL.
17         **MS. AGUIAR:**  WE COULD COMBINE IT AND ALSO HAVE YOUR
18 PART OF THE ANSWER IN THERE.
19         **THE COURT:**  THE HEART OF THE QUESTION IS "WHAT ARE WE
20 TRYING TO DETERMINE?"  THAT'S WHY I THINK BY REFERRING THEM TO               10:17
21 THE QUESTIONS IN THE VERDICT FORM, IT DOES ANSWER THE QUESTION;
22 I KNOW PERHAPS NOT AS SUCCINCTLY.
23         I THINK I AM GOING TO GO WITH WHAT I'VE WRITTEN HERE:
24 "YOU ARE TO ANSWER THE QUESTIONS AND ONLY THE QUESTIONS SET
25 FORTH ON THE VERDICT FORM."                                                  10:17

TUESDAY, JULY 15, 2008                              TRIAL DAY 24, MORNING SESSION

|   |   |   |
|---|---|---|
| 1 | I THINK THAT'S CLEAR. |   |
| 2 | AND THIS JUROR, LIKE I SAY, SEEMS TO UNDERSTAND THAT. |   |
| 3 | IT SOUNDS LIKE ONE OF THESE NOTES THAT IS BEING SENT OUT IS |   |
| 4 | BECAUSE SHE'S HAVING A DISPUTE WITH ANOTHER JUROR.  I DON'T |   |
| 5 | KNOW.  IT'S ALL SPECULATION, I SUPPOSE. | 10:17 |
| 6 | WE DID HAVE ANSWERED FOR US THE MYSTERY OF THE |   |
| 7 | MISNUMBERED OR THE ERATIC-NUMBERED JURY NOTES.  THE NOTE |   |
| 8 | INITIALLY CAME IN WITHOUT A SIGNATURE BY A JUROR, SO I SENT IT |   |
| 9 | BACK TO THE BAILIFF, SAYING "HAVE THE JUROR SIGN THE NOTE." |   |
| 10 | SHE SIGNED IT, BUT SHE INDICATED TO THE BAILIFF THAT | 10:18 |
| 11 | SHE THOUGHT HER NUMBER WAS AT THE TOP; SO APPARENTLY WHAT |   |
| 12 | HAPPENED IS THE NOTES WERE PASSED OUT AND DIFFERENT PEOPLE HAVE |   |
| 13 | WRITTEN ON THEM AND THEY JUST ASSUMED THAT THE NUMBER IS THE |   |
| 14 | NUMBER. |   |
| 15 | HOPEFULLY THAT INSTILLS SOME CONFIDENCE THAT WE DON'T | 10:18 |
| 16 | HAVE A JURY THAT IS -- |   |
| 17 | **MR. NOLAN:**  WE THOUGHT THE SAME THING, EXCEPT THAT |   |
| 18 | WHEN WE GOT NOTE NUMBER 15... |   |
| 19 | **THE COURT:**  I KNOW. |   |
| 20 | **MR. NOLAN:**  ...WE WERE WORRIED AS TO WHERE THEY CAME | 10:18 |
| 21 | UP WITH FIVE FRIENDS. |   |
| 22 | **THE COURT:**  LET'S HOPE THAT'S NOT THE CASE. |   |
| 23 | VERY GOOD.  I WILL MAKE A COPY OF THIS AND GIVE THIS |   |
| 24 | TO YOU AND JUST ASK YOU TO STAND BY FOR THE NEXT ACT. |   |
| 25 | **MR. NOLAN:**  CAN I TAKE ONE MORE MINUTE ON A TOTALLY | 10:18 |

TUESDAY, JULY 15, 2008                                          TRIAL DAY 24, MORNING SESSION

```
 1  DIFFERENT SUBJECT?
 2          THE COURT:  YES.
 3          MR. NOLAN:  I THOUGHT IT MIGHT BE THE APPROPRIATE
 4  TIME TO TALK ABOUT SCHEDULING FOR A MOMENT.
 5          THE COURT:  SURE.                                         10:19
 6          MR. NOLAN:  IN PARTICULAR, THE COURT'S INCLINATIONS
 7  WITH RESPECT TO THE NINTH CIRCUIT CONFERENCE, AND THINGS OF
 8  THAT NATURE.
 9          JUST FOR PLANNING PURPOSES, AND I THINK IT'S GOOD
10  BECAUSE IT'S EARLY ON, NOBODY IS PREDICTING HOW IT'S GOING TO    10:19
11  COME OUT, BUT THERE IS, MAYBE, LIFE AT THE END OF THIS, EITHER
12  A PERSONAL LIFE OR 1-B, HOWEVER YOU DEFINE LIFE.
13          MAYBE IF I COULD JUST ASK THE COURT FOR ITS SCHEDULE?
14          THE COURT:  OKAY.
15          I'VE ACTUALLY DONE SOME WORK ON THIS MYSELF.              10:19
16          THE JURY IS DELIBERATING TUESDAY THROUGH FRIDAY, AND
17  OF COURSE I DON'T KNOW HOW LONG THEY ARE GOING TO DELIBERATE.
18  IF THEY DELIBERATE ALL OF THIS WEEK, THE COURT WILL CERTAINLY
19  BE HERE.
20          IF THEY CONTINUE TO DELIBERATE INTO NEXT WEEK, WHAT       10:19
21  THE COURT PLANS ON DOING, AND I HAVE MADE ARRANGEMENTS TO DO,
22  IS RETURN FROM THE COURT'S PLANNED VACATION AND BE HERE TUESDAY
23  THROUGH FRIDAY.  I'M JUST GOING TO DRIVE UP WITH THE FAMILY,
24  LEAVE THEM, FLY BACK DOWN ON MONDAY NIGHT, AND BE HERE TUESDAY
25  THROUGH FRIDAY FOR THE DELIBERATIONS.                            10:20
```

| | | |
|---|---|---|
| 1 | I WILL DO THE SAME THING, I'LL CANCEL MY ATTENDANCE | |
| 2 | AT THE NINTH CIRCUIT CONFERENCE, IF THEY ARE IN DELIBERATIONS | |
| 3 | INTO THE NEXT WEEK.  I DON'T KNOW WHAT ELSE TO DO ABOUT THAT. | |
| 4 | SO I WILL ALLOW THE JURY TO DELIBERATE AS LONG AS | |
| 5 | THEY ARE GOING TO DELIBERATE, BECAUSE I DO NOT WANT TO | 10:20 |
| 6 | INTERRUPT THAT.  I WOULD RATHER INTERRUPT MY OWN PLANS THAN | |
| 7 | INTERRUPT THE JURY'S DELIBERATIONS. | |
| 8 | ONCE WE HAVE A VERDICT, HOWEVER, ASSUMING THAT IT | |
| 9 | DOES NOT IMPOSE TOO GREAT A BURDEN ON THE JURY, WHENEVER IT IS, | |
| 10 | MY INCLINATION WOULD BE TO GIVE A HIATUS BETWEEN THE FIRST | 10:20 |
| 11 | PHASE, GIVE EVERYBODY A BREAK UNTIL AUGUST 4TH, THAT FIRST WEEK | |
| 12 | IN AUGUST.  THEN WE CAN RESUME WITH THE SECOND PHASE AT THAT | |
| 13 | TIME. | |
| 14 | FRANKLY, I THINK IT DOES GOOD FOR THE JURY.  THEY | |
| 15 | HAVE BEEN ON THIS SINCE MAY 20TH, SINCE THEY WERE SELECTED.  I | 10:20 |
| 16 | THINK THEY WILL BE IN NEED OF A BREAK.  LORD KNOWS ALL OF US | |
| 17 | WILL BE IN NEED OF A BREAK.  AND I THINK ALSO AT THAT TIME, I | |
| 18 | MEAN, THERE ARE MANY DIFFERENT PERMUTATIONS THAT THE JURY | |
| 19 | VERDICT CAN COME IN.  I MAY DIRECT COUNSEL TO SPEND ONE DAY OR | |
| 20 | SO MEETING WITH AMBASSADOR PROSPER JUST TO SEE IF THERE MIGHT | 10:21 |
| 21 | BE SOME DISCUSSION OF RESOLUTION.  DEPENDING HOW THE VERDICT | |
| 22 | COMES BACK, I COULD THINK OF DIFFERENT PERMUTATIONS, | |
| 23 | PARTICULARLY IN HOW THE JURY VIEWS THE STATE TORT CLAIMS.  THEY | |
| 24 | MIGHT SEND A VERY CLEAR MESSAGE, ONE WAY OR THE OTHER, BY HOW | |
| 25 | THEY VIEW THOSE; SO I THINK THERE MAY BE SOME VALUE IN A DAY OR | 10:21 |

```
 1  TWO OF JUST TAKING A TIME OUT AND ASSESSING THE CASE BEFORE WE
 2  GO INTO THE NEXT PHASE.
 3          BASED ON THE HOURS THAT ARE LEFT, AND THEN ASSUMING
 4  TIME FOR OPENING AND CLOSING STATEMENTS AND ARGUMENT, I'M
 5  VIEWING THIS NEXT PHASE AS A 2-WEEK TRIAL.  ADDING UP ALL OF       10:21
 6  THE HOURS, THERE'S ABOUT SIX OR SEVEN DAYS OF TESTIMONY, AND
 7  THEN ADD IN ANOTHER DAY OR TWO OF OPENING STATEMENTS AND
 8  CLOSING ARGUMENTS; THAT WOULD BE THE WEEK OF AUGUST 4TH AND
 9  AUGUST 11TH.
10          I HAVE THAT MARINE TRIAL THAT'S SCHEDULED TO START ON      10:22
11  AUGUST 19TH, AND I REALLY NEED TO START THAT THEN.  BUT, OF
12  COURSE, I CAN HAVE THIS JURY DELIBERATING WHILE THAT TRIAL IS
13  GOING ON; SO I THINK THERE'S A WINDOW THERE TO TRY A PHASE 1-B
14  WITHOUT ANY INTERRUPTION IN ANYTHING.
15          THOSE ARE MY THOUGHTS RIGHT NOW.  BUT IF COUNSEL HAS        10:22
16  ANY OBJECTIONS TO ANY OF THAT, OR IF THEY HAVE ANY OTHER
17  THOUGHTS, I'D BE PLEASED TO HEAR IT.
18          IF THE JURY DELIBERATES PAST AUGUST 1ST, THEN I'M ALL
19  MESSED UP; SO WE'LL HAVE TO REGROUP AT THAT TIME.
20      MR. NOLAN:  THAT'S HELPFUL, YOUR HONOR.                        10:22
21      THE OTHER THING IS THAT LAST FRIDAY, I MENTIONED THE
22  POSSIBILITY THAT -- THERE'S A LOT OF PERMUTATIONS OF HOW THIS
23  VERDICT COULD COME OUT, AND I THINK IT'S INCUMBENT ON THE
24  PARTIES TO BE IN A POSITION TO REACT QUICKLY TO WHATEVER THE
25  PERMUTATIONS ARE.                                                  10:23
```

TUESDAY, JULY 15, 2008                    TRIAL DAY 24, MORNING SESSION

```
 1           WE'RE LIMITED IN A SENSE THAT WE KIND OF KNOW THAT IT
 2   COULD COME OUT ONE WAY WHERE THERE'S NO ADDITIONAL NEED FOR
 3   BRIEFING, OR IT COULD COME OUT WHERE THERE IS A NEED FOR
 4   BRIEFING ON THE IMPACT OF GOING FORWARD ON 1-B. I THINK WHAT WE
 5   WOULD LIKE TO DO IS BE IN A POSITION TO MOVE THIS PROCESS ALONG      10:23
 6   TO BE FILING BRIEFS RATHER QUICKLY AFTER THE VERDICT CAME IN;
 7   SO I THINK IF THE COURT WOULD DIRECT BOTH SIDES TO START
 8   THINKING ABOUT THAT.  NOT THAT WE'RE DOING BUSY WORK, BUT JUST
 9   THINKING ABOUT THE VARIOUS PERMUTATIONS HERE.  IT MAY AID WHAT
10   COULD COME INTO A CRUNCH SITUATION.                                   10:23
11          THE COURT:  MY ASSUMPTION IS THAT YOU ALL ARE
12   THINKING ABOUT DIFFERENT PERMUTATIONS AND PROBABLY HAVEN'T
13   THOUGHT ABOUT TOO MUCH ELSE.  BUT THE POINT IS WELL TAKEN,
14   MR. NOLAN.
15           I WOULD HOPE THAT WOULD GO ALMOST WITHOUT SAYING THAT        10:23
16   THE PARTIES WOULD BE IN A POSITION TO REACT QUICKLY TO WHATEVER
17   VERDICT THE JURY RENDERS AND UNDERSTAND THAT WE WILL NOT HAVE A
18   LOT OF TIME.  EVEN IF WE TAKE A FULL 2-WEEK HIATUS, THAT'S
19   STILL NOT A LOT OF TIME FOR US TO REACT TO THE VERDICT IN
20   EARNEST, CONSIDER THE VALUE OF PROCEEDING WITH 1-B, AND THEN          10:24
21   PREPARE FOR 1-B AND BE READY TO GO.
22           BUT I TAKE IT, MR. NOLAN, YOU HAVE NO OBJECTION TO
23   THE COURT'S PROPOSAL IN TERMS OF --
24          MR. NOLAN:  NO.  ABSOLUTELY NOT, YOUR HONOR.
25           I JUST WANTED THE GUIDANCE SO WE COULD, FOR                   10:24
```

```
 1  SCHEDULING PURPOSES, KNOW.
 2          THE COURT:  THAT GIVES YOU A PRETTY DEFINITE SENSE
 3  FOR SCHEDULING WITNESSES THAT THE TRIAL WOULD RESUME THAT FIRST
 4  WEEK OF AUGUST.
 5          MR. NOLAN:  CORRECT.                                        10:24
 6          THE COURT:  AND IF THERE'S GOING TO BE A 1-B, WHICH
 7  AT THIS POINT YOU NEED TO PLAN THAT THERE WILL BE A 1-B.
 8          MR. NOLAN:  RIGHT.
 9          AND WE WERE THINKING, AND MAYBE THIS IS JUST TOO
10  AGGRESSIVE, IF THERE IS A NEED FOR A BRIEF TO BE FILED AFTER       10:24
11  THE RETURN OF THE VERDICT, THAT BOTH SIDES BE PREPARED TO
12  SUBMIT A BRIEF WITHIN 24 HOURS OF RENDERING A VERDICT, BECAUSE
13  THAT'S SOMETHING WE COULD BE WORKING ON, AND THEN JUST BUILD IT
14  IN MODULES.
15          BUT I THINK THAT ASKING BOTH SIDES, THAT MIGHT BE THE      10:25
16  MOST EFFICIENT WAY TO WORK ON THIS AND JUST SAY THAT THE COURT
17  WOULD EXPECT SIMULTANEOUS BRIEFS TO BE SUBMITTED WITHIN
18  24 HOURS OF THE VERDICT ON THE IMPACT GOING FORWARD.
19          THE COURT:  I'LL HEAR FROM MATTEL, THEIR THOUGHTS.
20          MR. QUINN:  WE DON'T HAVE ANY PROBLEM WITH THAT, YOUR      10:25
21  HONOR.  I ASSUME WHAT MR. NOLAN HAS IN MIND IS BOTH SIDES
22  SUBMITTING THEIR VIEWS OF WHAT A PHASE 1-B WOULD LOOK LIKE IN
23  LIGHT OF THE VERDICT THAT'S BEEN RETURNED; AND THAT PROBABLY
24  MAKES SOME SENSE.
25          THE COURT:  RIGHT; JUST FOR GUIDANCE.                      10:25
```

TUESDAY, JULY 15, 2008                    TRIAL DAY 24, MORNING SESSION

|  |  |  |
|---|---|---|
| 1 | **MR. NOLAN:** OR, JUST TO TWEAK THE WORDS A LITTLE BIT, | |
| 2 | WHAT IT WOULD LOOK LIKE OR WHETHER OR NOT IT EVEN GOES FORWARD. | |
| 3 | **MR. QUINN:** OF COURSE. | |
| 4 | YOUR HONOR, IF THE JURY WERE TO COME BACK THIS WEEK, | |
| 5 | SAY THEY CAME BACK TODAY, THIS AFTERNOON, WOULD WE STILL BE | 10:25 |
| 6 | WAITING UNTIL AUGUST 4TH? | |
| 7 | **THE COURT:** THAT'S A GOOD QUESTION. THAT'S THE ONE | |
| 8 | THING THAT I AM -- WHAT I WOULD PROBABLY DO IN THAT CASE, IF | |
| 9 | THEY CAME BACK THIS AFTERNOON, I'D WANT TO HAVE A FRANK TALK | |
| 10 | WITH THEM AND SEE IF THEY WOULD NEED SOME TIME. | 10:26 |
| 11 | WHAT ARE YOUR THOUGHTS? | |
| 12 | **MR. QUINN:** TWO WEEKS SOUNDED NICE, YOUR HONOR. | |
| 13 | **THE COURT:** YOUR OBLIGATION IS TO YOUR CLIENT. | |
| 14 | **MR. QUINN:** YES. WE'VE BEEN OPERATING UNDER THE | |
| 15 | ASSUMPTION -- WE DIDN'T KNOW WHAT YOUR VIEWS WERE -- YOU HAD | 10:26 |
| 16 | SAID AT ONE POINT THAT THERE MIGHT BE ONE DAY BETWEEN A | |
| 17 | VERDICT, AND WE'VE SORT OF BEEN OPERATING UNDER THE ASSUMPTION | |
| 18 | THAT WE NEED TO BE READY TO GO. | |
| 19 | **THE COURT:** RIGHT. | |
| 20 | **MR. QUINN:** I THINK WE COULD DO THAT. | 10:26 |
| 21 | I GUESS I WOULD LIKE TO TALK TO MY CLIENT ABOUT THAT, | |
| 22 | YOUR HONOR. | |
| 23 | **THE COURT:** WHY DON'T YOU DO THAT. AND AT OUR NEXT | |
| 24 | GET TOGETHER HERE -- | |
| 25 | **MR. QUINN:** I HAVE A SENSE THERE MAY BE ONE. | 10:26 |

TUESDAY, JULY 15, 2008                          TRIAL DAY 24, MORNING SESSION

1   **THE COURT:** I'M GETTING THAT IMPRESSION AS WELL, OUR
2   BEST EFFORTS TO THE CONTRARY NOTWITHSTANDING.
3       TALK TO YOUR CLIENTS.
4       YOU'VE BOTH GOT TO REPRESENT YOUR CLIENTS' INTERESTS
5   AND WHATEVER YOU THINK IS BEST FOR YOUR CLIENTS.  JUST LET THE      10:27
6   COURT KNOW.
7       **MR. QUINN:** THANK YOU, YOUR HONOR.
8       **THE COURT:** VERY WELL.
9       MR. HOLMES, MAKE A COPY OF THAT.
10      **THE CLERK:** COURT IS IN RECESS.                               10:27
11      (WHEREUPON A BRIEF RECESS WAS HELD.)
12      (CONCLUSION OF MORNING SESSION.)

15                          CERTIFICATE

17  I hereby certify that pursuant to section 753, title 28, united
    states code, the foregoing is a true and correct transcript of
18  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
19  conformance with the regulations of the judicial conference of
    the united states.

21  _____        _____
    THERESA A. LANZA, CSR, RPR                    Date
22  FEDERAL Official COURT Reporter