1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                          EASTERN DIVISION

4                              - - -

5           HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                              - - -

7    MATTEL, INC.,                    )
                                      )
8                      Plaintiff,     )
                                      )
9              vs.                    )  No. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, inc., et. Al.,  )
                                      )
11                     Defendants.    )  Defendant's
     _____)  Motion For Mistrial
12   AND CONSOLIDATED ACTIONS,        )  Pages 5676-5721
     _____)

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                      Riverside, California

17                    Monday, August 4, 2008

18                          1:06 P.M.

19

20

21

22

23                   THERESA A. LANZA, RPR, CSR
                    Federal Official Court Reporter
24                   3470 12th Street, Rm. 134
                    Riverside, California  92501
25                        951-274-0844
                     WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2
     On behalf of MATTEL, INC.:
 3
                           QUINN EMANUEL
 4                         By:  JOHN QUINN
                                JON COREY
 5                               MICHAEL T. ZELLER
                                 Bill price
 6                               Dylan proctor
                           865 S. FIGUEROA STREET,
 7                         10TH FLOOR
                           LOS ANGELES, California  90017
 8                         213-624-7707

 9

10

11   ON BEHALF OF MGA ENTERTAINMENT:

12                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                           BY:   THOMAS J. NOLAN
13                               JASON RUSSELL
                                 LAUREN AGUIAR
14                               CARL ROTH
                           300 SOUTH GRAND AVENUE
15                         LOS ANGELES, CALIFORNIA  90071-3144
                           213-687-5000
16

17   Also present:        JEROME FALK

18

19

20

21

22

23

24

25
```

monday, august 4, 2008                          motion for mistrial

1                          I N D E X

2                                                    PAGE

3   Motion for mistrial...........................   5679

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, AUGUST 4, 2008; 1:06 P.M.

 2                              -oOo-

 3        THE CLERK:  CALLING CALENDAR ITEM 10, CASE NUMBER

 4   CV04-09049-SGL, MATTEL, INC., V. MGA, INC., ET AL.

 5        MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE

 6   YOUR APPEARANCES FOR THE RECORD.

 7        MR. QUINN:  GOOD AFTERNOON.  JOHN QUINN, BILL PRICE,

 8   DYLAN PROCTOR AND MIKE ZELLER, APPEARING FOR MATTEL.

 9        MR. NOLAN:  GOOD AFTERNOON, YOUR HONOR.  TOM NOLAN,

10   JASON RUSSELL, LAUREN AGUIAR, RAOUL KENNEDY FROM SKADDEN ARPS

11   ON BEHALF OF MGA, AND ALSO INTRODUCING JEROME FALK FROM

12   HOWARD RICE.

13        THE COURT:  COUNSEL, GOOD AFTERNOON.

14        WE'RE ON CALENDAR THIS AFTERNOON FOR DEFENDANT'S

15   MOTION FOR MISTRIAL.  THERE IS ONE DEVELOPMENT I WANT TO BRING

16   TO COUNSEL'S ATTENTION.  THE COURT RECEIVED A LETTER FROM JUROR

17   NUMBER EIGHT WHICH THE COURT IS NOT GOING TO DISCLOSE TO THE

18   PARTIES.  I'M GOING TO SUMMARIZE THE CONTENT.

19        THE LETTER IS DIRECTED PERSONALLY TO THE COURT.  SHE

20   EXPRESSES HER SHOCK AND SENSE OF PERSONAL HUMILIATION OVER THE

21   ENTIRE INCIDENT, INDICATING THAT SHE VEHEMENTLY OBJECTS TO THE

22   STATEMENTS THAT HAVE BEEN ATTRIBUTED TO HER.  SHE INDICATES

23   THAT HER REFERENCE TO MR. LARIAN'S ETHNICITY WAS IN THE CONTEXT

24   OF A POSSIBLE LANGUAGE BARRIER.  SHE INDICATES SHE HAS NOT

25   DISCUSSED THIS CASE WITH ANYBODY ELSE.  SHE INDICATES THAT SHE
```

01:07
01:07
01:08
01:08

1   TOOK HER RESPONSIBILITIES SERIOUSLY AND CONSIDERED THE EVIDENCE

2   AND THE INSTRUCTIONS.

3          SHE THEN DERIDES OTHER MEMBERS OF THE JURY AND

4   INDICATES THAT SHE RESENTS THE INSINUATION APPEARING IN THE

5   VARIOUS NEWS ARTICLES THAT HAVE BEEN PUBLISHED CONCERNING THIS       01:08

6   MATTER.

7          THE LETTER IS REPLETE WITH INFORMATION THAT IS

8   CLEARLY BARRED ON 606 GROUNDS, SO THE COURT IS NOT GOING TO

9   RELEASE IT ON THAT BASIS.  BUT I DID WANT TO BRING ITS

10  EXISTENCE TO THE ATTENTION OF COUNSEL.  THE COURT WILL SIMPLY        01:09

11  KEEP IT SEALED ENTIRELY.

12         I'VE ALSO RECEIVED, AND I THANK YOU FOR, YOUR MOTION;

13  I RECEIVED IT ON TUESDAY; THE OPPOSITION I RECEIVED ON

14  THURSDAY, AND THEN THE REPLY ON FRIDAY.  ALL THREE BRIEFS ARE

15  OUTSTANDING, VERY WELL WRITTEN.  THE COURT HAS HAD THE              01:09

16  OPPORTUNITY TO REVIEW THE CASES CITED BY BOTH PARTIES AND TO

17  CAREFULLY CONSIDER THE ARGUMENTS MADE.

18         WHAT I'D LIKE TO DO IS OFFER BOTH PARTIES AN

19  OPPORTUNITY TO ADDRESS THE COURT, KEEPING IN MIND THAT THE

20  COURT HAS FULLY READ ALL OF YOUR PAPERS NUMEROUS TIMES.  BUT I      01:09

21  STILL THINK THAT YOU SHOULD HAVE AN OPPORTUNITY TO ADDRESS THE

22  COURT.

23         THE COURT HAD PREVIOUSLY RECEIVED IN CAMERA A

24  STATEMENT FROM MR. LARIAN, WHICH I GREATLY APPRECIATED, MADE IN

25  THE PRESENCE OF BOTH COUNSEL.  THAT STATEMENT WILL REMAIN           01:10

1   SEALED.  HOWEVER, THE COURT IS VERY MINDFUL OF THE STATEMENT

2   AND I APPRECIATE THE SENTIMENTS ATTACHED.

3         I AM GOING TO LIMIT BOTH SIDES TO TEN MINUTES OF

4   FURTHER ARGUMENT AT THIS TIME.  THE COURT MAY THEN EXPLORE

5   ITEMS WITH YOU, BUT I WANT TO START OFF BY GIVING EACH SIDE TEN   01:10

6   MINUTES TO ADDRESS THE COURT CONCERNING THIS MOTION, AND THEN

7   WE'LL GO FROM THERE.

8         MGA IS THE MOVING PARTY, MR. LARIAN, SO I'LL INVITE

9   THEM TO PROCEED FIRST.

10        **MR. NOLAN:**  THANK YOU VERY MUCH, YOUR HONOR.   01:10

11        MINDFUL THAT THE COURT TOOK THE TIME OVER THE PAST

12  WEEK TO REVIEW THE PLEADINGS IN THIS CASE, I'LL TRY NOT TO BE

13  REPETITIVE, BUT IT'S HARD TO MAKE AN ARGUMENT LIKE THIS WITHOUT

14  STARTING AT THE FIRST STEP OF THE ANALYSIS.

15        I WAS STRUCK TODAY WHEN I WALKED INTO THE COURTHOUSE,   01:11

16  A COURTHOUSE THAT I HAVE WALKED THROUGH FOR ALMOST NINE WEEKS.

17  IN THE LOBBY OUTSIDE, THERE IS ETCHED IN STONE THE PHRASE

18  "EQUAL JUSTICE UNDER THE LAW."  TODAY, ALTHOUGH I MAKE THIS

19  ARGUMENT ON BEHALF OF ISAAC LARIAN AND MGA, IN MANY WAYS I FEEL

20  AS THOUGH THIS IS ONE OF THOSE RARE OPPORTUNITIES IN ONE'S   01:11

21  CAREER WHERE THE FUNDAMENTAL PURPOSE WHICH BRINGS ALL OF US TO

22  COURTROOMS AROUND THE UNITED STATES IS FOCUSED ON A QUESTION OF

23  FUNDAMENTAL FAIRNESS; NOT FOUND IN THE RESOURCES OF ONE PARTY,

24  NOT ROOTED IN THE WISDOM OF STATUTORY LANGUAGE OF COPYRIGHT ACT

25  PROTECTION, BUT ONE THAT GOES FUNDAMENTALLY TO THE FAIRNESS OF   01:12

1   OUR SYSTEM.

2          THE CORNERSTONE OF THE AMERICAN SYSTEM OF JUSTICE IS

3   THAT ANY PARTY, REGARDLESS OF RACE, ETHNICITY, NATIONAL ORIGIN,

4   WALK THROUGH THESE DOORS WITH ONE SIMPLE GUARANTEE, AND THAT IS

5   THAT IF THEY ARE FACING A TRIAL, THEY HAVE A CONSTITUTIONAL                01:12

6   RIGHT TO A UNANIMOUS VERDICT OF FAIR AND IMPARTIAL JURORS.

7          DESPITE THE LETTER THAT YOU REFERENCED AT THE START

8   OF TODAY'S HEARING, THE COURT'S FINDINGS MAKE IT CLEAR.  JUROR

9   NUMBER EIGHT -- AFTER YOU INTERVIEWED NINE OF THE JURORS, YOU

10  MADE A FINDING THAT SHE MADE GROSSLY INAPPROPRIATE REMARKS              01:13

11  REGARDING ISAAC LARIAN.  NOT BASED ON THE WEIGHT OF THE

12  EVIDENCE, NOT BASED ON THE QUALITY OF THE ARGUMENTS, BUT RATHER

13  BASED ON A PRECONCEIVED IDEA, BIAS, THAT IRANIANS ARE STUBBORN,

14  RUDE, STINGY, ARE THIEVES AND HAVE STOLEN OTHER PERSON'S IDEAS.

15  STATEMENTS THAT ARE REPUGNANT EVEN TO MENTION AND REPEAT.  YET         01:14

16  THE NOTION THAT A JUROR WOULD UTTER THESE STATEMENTS IN THE

17  DELIBERATION ROOM CANNOT BE IGNORED, AND, I RESPECTFULLY

18  SUBMIT, UNDER NO CIRCUMSTANCE CAN BE VIEWED AS HAVING SAT

19  THROUGH THIS TRIAL AS A FAIR AND IMPARTIAL JUROR, A RIGHT THAT

20  WE WERE REQUIRED TO HAVE.                                             01:14

21          MATTEL TAKES THE POSITION THAT YOU SHOULD ACTUALLY

22  APPLY A RULE OF EVIDENCE, 606(B), TO IGNORE WHAT WE NOW KNOW TO

23  BE THE FACTS; THAT IS, THAT THE STATEMENT WAS MADE.

24          THIS IS NOT LIKE IN THE HENLEY CASE, WHERE THE COURT,

25  IN DICTUM, ALBEIT BUT VERY WELL REASONED DICTUM, REMANDED THE         01:15

1   MATTER BACK TO JUDGE TAYLOR BECAUSE JUDGE TAYLOR HAD NOT DONE

2   WHAT THIS COURT DID IN THE FIRST INSTANCE.  UPON RECEIPT OF THE

3   NOTE FROM JUROR NUMBER SIX, YOU ACTED SWIFTLY, DECISIVELY; YOU

4   EXERCISED YOUR POWERS AND AUTHORITY TO GET TO THE BOTTOM OF

5   WHAT THE ISSUE WAS THAT WAS EXPRESSED IN JUROR NUMBER SIX,          01:15

6   WITHOUT ANY INTENT AND WITHOUT ANY DESIGN TO PROBE THE

7   DELIBERATIVE PROCESS WHICH, OF COURSE, 606(B) MIGHT PROHIBIT.

8           WHAT MATTEL, THOUGH, IS NOW POSING FOR YOUR HONOR IS

9   HAVING DONE WHAT WE AGREED WAS THE RIGHT THING FOR YOU TO DO --

10  MR. QUINN SUGGESTED IT; I AGREED WITH IT -- TO INTERVIEW THE       01:16

11  JURORS TO CONFIRM OR DETERMINE WHAT WAS SAID -- NOW THAT YOU

12  HAVE FOUND IT, NOW THAT WE ALL KNOW ABOUT IT, THEY PROPOSE THAT

13  WE IGNORE IT; THAT WE ONLY LOOK AT IT PROSPECTIVELY.

14          THE COURT, IN DESCRIBING JUROR NUMBER EIGHT, USED

15  SUCH TERMS AS "A CANCER IN THIS JURY;" THAT EVERY JUROR HAD        01:16

16  AGREED THAT IT WOULD BE WRONG FOR THIS CASE TO PROCEED WITH

17  JUROR NUMBER EIGHT AS A JUROR.  AND YOU CAME OUT AND YOU MADE

18  THAT STATEMENT AND BOTH SIDES AGREED THAT PROSPECTIVELY JUROR

19  NUMBER EIGHT SHOULD NOT SIT.

20          BUT THAT ONLY DEALT WITH ONE OF THE ISSUES, AND THAT        01:17

21  IS THE PROSPECTIVE NATURE OF HER SERVICE.  IT IGNORED WHAT I

22  SUBMIT, YOUR HONOR, IS WHAT EVERY COURT THAT HAS EVER DEALT

23  WITH THIS ISSUE, THAT HAS EVER RECOGNIZED THIS ISSUE, FACED

24  WITH RACIAL COMMENTS, RACIAL BIAS EXPRESSED BY A JUROR, THERE

25  HAS BEEN NO COURT THAT HAS IGNORED IT.                             01:17

5684

1          AND I RESPECTFULLY SUBMIT, YOUR HONOR, THAT THE

2   REASON FOR THAT IS THAT NO RULE OF EVIDENCE OF 606(B), NO

3   INTERVIEW OF A JUROR WHERE THEY DENY OR TRY TO MINIMIZE THE

4   EFFECT OF THEIR COMMENTS CAN JUSTIFY ALLOWING IN THIS CIRCUIT

5   ONE PARTIAL JUROR SITTING THROUGH THE PROCESS.  ONE BIASED          01:18

6   JUROR IS ALL THAT IS NECESSARY TO TAINT A VERDICT.

7          A JURY IS VIEWED AS ACTING AS A UNIT.  THERE IS NO

8   ISSUE IN THIS CASE THAT AS A UNIT, THAT UNIT RETURNED A VERDICT

9   WHICH WE RESPECTFULLY SUBMIT, YOUR HONOR, IS TAINTED.  AND YOU

10  DON'T HAVE TO GO TO THE DELIBERATIVE PROCESS; YOU MERELY HAVE       01:18

11  TO GO TO THE FACT THAT JUROR NUMBER EIGHT HAD THE BELIEF, AND

12  EXPRESSED IT, THAT IRANIANS ARE THIEVES AND THEY STEAL OTHER

13  PEOPLE'S IDEAS.

14         YOU KNOW, IN HENLEY WHERE THEY SAY IT'S DICTUM AND IN

15  ESTRADA THEY SAY IT'S STILL AN OPEN ISSUE IN THE NINTH CIRCUIT.     01:19

16  IF YOU LOOK AT THE COMMENTS COMPLAINED OF IN HENLEY, THERE, AS

17  INCREDIBLE AS IT IS THAT IN A CASE LIKE THIS, IN TODAY'S WORLD,

18  SOMEBODY WOULD MAKE A STATEMENT SUCH AS JUROR NUMBER EIGHT DID

19  IN THIS CASE.  IN HENLEY THEY USED THE "N" WORD.  THE NINTH

20  CIRCUIT AGAIN NOTED 'HOW CAN IT BE IN OUR SYSTEM, IN TODAY'S        01:19

21  WORLD, THAT SOMEBODY COULD MAKE THAT COMMENT?'

22         BUT, YOU KNOW, THE COMMENT THAT WAS MADE IN HENLEY

23  WAS A GENERAL COMMENT.  IN THIS CASE, JUROR NUMBER EIGHT, NOT

24  ONLY IN EXPRESSING AN OBVIOUS BIAS APPLIED THAT BIAS TO THE

25  FACTUAL SITUATION PRESENTED IN THIS CASE A LA THE ALLEGATION        01:20

1    THAT MGA AND MR. LARIAN STOLE AN IDEA FROM MGA.  SHE NOT ONLY

2    EXPRESSED IT WITH PARTICULARITY TOWARDS THE FACTS OF THIS CASE,

3    BUT SHE ALSO DID SO IN TRYING TO CONVINCE OTHER JURORS IN THE

4    VOTING PROCESS.

5         YOUR HONOR, I WANT TO END -- AND I HOPE I HAVE ONE          01:20

6    MORE MINUTE LEFT -- BECAUSE I THINK THAT WHAT IS ALSO ON

7    EVERYBODY'S MIND IS, 'MY GOSH, LOOK AT THE RESOURCES THAT HAVE

8    BEEN DEVOTED, NOT ONLY BY THIS COURT, BY THE STAFF, BY THE

9    LAWYERS, THE EXPENSE; IT'S BEEN ENORMOUS -- BUT I THOUGHT THAT

10   IN HELLER, UNITED STATES VERSUS HELLER, THE ELEVENTH CIRCUIT     01:20

11   DECISION, I THOUGHT THEY PUT IT PROBABLY THE MOST APTLY, AND I

12   WOULD JUST ASK THAT I COULD READ IT.  THIS IS READING FROM

13   PAGE 5 OF THE OPINION:

14        "THE BIGOTRY DISPLAYED IN THIS CASE IS REMINISCENT OF

15   ANOTHER LESS CIVILIZED ERA WHEN ANTI SEMATIC AND RACIST         01:21

16   SENTIMENTS WERE UNFORTUNATELY CONSIDERED ACCEPTABLE, EVEN IN

17   POLITE SOCIETY.  WE CONCLUDE THAT WE MUST ACT IN THE ONLY WAY

18   OPEN TO US TO ENSURE THAT PREJUDICE PLAYS NO ROLE IN THE

19   FUNCTIONING OF OUR JUDICIAL SYSTEM.  ALTHOUGH WE ARE AWARE THAT

20   THE TRIAL IN THIS CASE LASTED 12 WEEKS, AND THE TRIAL WILL      01:21

21   ENTAIL CONSIDERABLE TIME AND EXPENSE, THIS FACTOR CANNOT EVEN

22   BE WEIGHED IN THE BALANCE WHEN THE RIGHT OF AN INDIVIDUAL TO A

23   FAIR TRIAL HAS BEEN SO SEVERELY COMPROMISED."

24        YOUR HONOR, WE RESPECTFULLY SUBMIT THAT THE COURT

25   CONDUCTED THE RIGHT INVESTIGATION, ASCERTAINED THAT JUROR       01:21

1    NUMBER EIGHT WAS, IN FACT, BIASED.  AS A RESULT OF THAT,

2    UNFORTUNATELY MGA AND ISAAC LARIAN DID NOT HAVE THE GUARANTEED

3    UNANIMOUS VERDICT OF TEN FAIR AND IMPARTIAL JURORS.  NINE

4    SIMPLY WAS NOT ENOUGH.

5         THANK YOU.                                            01:22

6         **THE COURT:**  THANK YOU, COUNSEL.

7         MR. QUINN?

8         **MR. QUINN:**  GOOD AFTERNOON, YOUR HONOR.

9         ON A GENERAL LEVEL, IT'S IMPOSSIBLE TO DISAGREE WITH

10   THE GENERAL PRINCIPALS THAT MR. NOLAN ENUNCIATED AND WITH WHICH   01:22

11   HE BEGAN HIS REMARKS TO THE COURT.  BUT THERE'S SOMETHING ELSE

12   THAT IS AT ISSUE HERE THAT'S OF EQUAL IMPORTANCE, AND THAT IS

13   THAT THIS IS A COURT OF LAW AND THERE ARE LAWS AND RULES THAT

14   HAVE CONDUCTED THIS TRIAL.  THERE HAVE BEEN EVIDENTIARY RULINGS

15   THAT THE COURT IS WELL AWARE THAT HAVE BEEN SIGNIFICANT;          01:22

16   EVIDENCE HAS NOT COME IN.  THE COURT HAS MADE ITS JUDGMENTS.

17        AND THERE ARE EVIDENTIARY RULINGS THAT APPLY TO THIS

18   SITUATION HERE.

19        RULE 606(B) ABSOLUTELY EXCLUDES THE COURT'S

20   CONSIDERATION OF THE JUROR'S COMMENT FOR THE PURPOSE OF          01:23

21   IMPEACHING THE JURY VERDICT.  WE NEVER AGREED THAT WAS

22   ADMISSIBLE FOR THE PURPOSE OF IMPEACHING THE VERDICT.  LET ME

23   JUST BE CLEAR ABOUT THAT.  IN AGREEING TO THE PROCESS THAT THE

24   COURT WOULD RESPOND TO JUROR NUMBER SIX'S CONCERNS BY FOLLOWING

25   UP, WE NEVER AGREED TO THAT THAT IT WOULD BE ADMISSIBLE FOR      01:23

1    PURPOSES OF IMPEACHING THE VERDICT.

2         IT'S A VERY POWERFUL AND STRONG RULE WHICH HAS BEEN

3    CONSISTENTLY APPLIED.  I'D REFER THE COURT TO THE U.S. SUPREME

4    COURT CASE, THE TANNER CASE, AN OPINION BY JUSTICE O'CONNOR.

5    I'M SURE THE COURT IS FAMILIAR WITH IT NOW.  THE FACTS IN THAT          01:23

6    CASE WERE VERY EXTREME.  THEY HAD SEVEN JURORS WHO WERE GETTING

7    DRUNK; THEY WERE DEALING DRUGS; THEY WERE ENGAGED IN ALL KINDS

8    OF IMPROPER CONDUCT.  AND THE UNITED STATES SUPREME COURT RULED

9    "WE'RE SIMPLY" -- "UNDER RULE 606(B), WE CANNOT LOOK INTO

10   THAT."

11        IN MAKING THAT RULING, THE SUPREME COURT REVIEWED THE

12   LEGISLATIVE HISTORY OF RULE 606(B) IN SOME DETAIL.  AND AS THE

13   COURT WILL SEE FROM THAT OPINION, THERE HAD BEEN PENDING -- AT

14   THE TIME 606(B) WAS ADOPTED, THERE HAD BEEN PENDING IN THE

15   CONGRESS A VERSION OF A BILL, A NEW RULE OF EVIDENCE, THAT            01:24

16   WOULD HAVE OPENED THAT DOOR A LITTLE BIT AND PERMITTED

17   ADMISSIBILITY OR INQUIRY INTO STATEMENTS MADE IN THE COURSE OF

18   DELIBERATIONS.

19        AS A RESULT OF THAT, SENATOR McCLELLAN OF ARKANSAS

20   WROTE A LETTER, WHICH IS CITED IN THE TANNER OPINION, AND THE        01:24

21   UNITED STATES DEPARTMENT OF JUSTICE WROTE A LETTER AND SAID

22   'WAIT A SECOND, THIS WOULD BE BREAKING ENTIRELY NEW GROUND.  IF

23   WE'RE GOING TO OPEN THE DOOR INTO INQUIRY INTO WHAT GOES ON IN

24   THE JURY ROOM AND STATEMENTS MADE, THEN IT'S GOING TO BE

25   POSSIBLE TO ATTACK THOSE STATEMENTS ON THE BASIS OF BIAS.  AND       01:25

1    THAT'S GOING DOWN A ROAD THAT WE CANNOT AFFORD TO DO.  IT'S

2    NEVER BEEN DONE BEFORE.'

3           CONGRESS DID A U-TURN ON THAT PARTICULAR ISSUE AND

4    THE RULE THAT WAS ADOPTED HAS GOT VERY NARROW EXCEPTIONS FOR

5    THE CIRCUMSTANCES UNDER WHICH STATEMENTS MADE BY JURORS IN THE      01:25

6    COURSE OF DELIBERATIONS ARE ADMISSIBLE IN SITUATIONS LIKE THIS.

7           NONE OF THOSE APPLY HERE.

8           ONE IS WHETHER IT'S EVIDENCE OF EXTRANEOUS MATTER

9    THAT'S BEEN BROUGHT INTO THE JURY ROOM.

10          MGA DOES NOT EVEN CONTEND THAT APPLIES HERE.                 01:25

11          WHAT MGA IS URGING HERE, YOUR HONOR, IS SOMETHING

12   THAT NO COURT, NO COURT THAT WE'VE BEEN ABLE TO FIND -- AND MGA

13   HAS NOT CITED A COURT IN THE UNITED STATES THAT HAS EVER DONE

14   IT BEFORE -- IN A SITUATION WHERE THERE'S NO CLAIM OF

15   EXTRANEOUS MATTER COMING IN.  THEY DIDN'T MAKE THAT CLAIM IN       01:26

16   THE BRIEFS.  IF THEY WANT TO, THAT'S SOMETHING WE CAN ADDRESS.

17          THERE IS AN EXCEPTION ALSO FOR UNTRUTHS IN VOIR DIRE,

18   AND THAT'S SOMETHING I'LL ADDRESS, YOUR HONOR.

19          **THE COURT:**  COUNSEL, YOU DID ADDRESS EXTRANEOUS

20   MATERIAL IN YOUR BRIEFS.                                           01:26

21          **MR. QUINN:**  WE DID.  MGA DID NOT URGE THAT THIS

22   SHOULD BE CONSIDERED UNDER THAT RULE, AS I RECALL, YOUR HONOR.

23          THERE IS NO CASE THAT WE'VE BEEN ABLE TO FIND, NO

24   CASE CITED TO THE COURT BY MGA, EITHER CRIMINAL OR CIVIL, WHERE

25   IT'S NOT A CLAIM OF EXTRANEOUS MATTER OR A CLAIM OF UNTRUTHS IN    01:26

1    VOIR DIRE, WHERE A COURT HAS GRANTED A NEW TRIAL BASED ON

2    COMMENTS MADE IN JURY DELIBERATIONS.  SIMPLY NO CASE.  THIS

3    COURT WOULD BE THE FIRST COURT TO DO THAT; SO IT'S OUR VIEW AND

4    OUR UNDERSTANDING OF THE WAY 606(B) OPERATES, YOUR HONOR, THAT

5    IS THE END OF THE INQUIRY RIGHT THERE.                           01:27

6         THERE ARE SOME PRETTY EXTREME CASES, SOME VERY STRONG

7    LANGUAGE IN SOME OF THE CASES WHERE THE COURTS HAVE SAID THE

8    CONSTITUTIONAL REQUIREMENT OF A FAIR TRIAL DOES NOT REQUIRE

9    THAT WE LOOK INTO THAT.  THERE IS NO CASE THAT SUPPORTS

10   ADMITTING THIS EVIDENCE IN THIS CIRCUMSTANCE.                    01:27

11        BUT EVEN IF THE COURT WERE TO CONSIDER IT, YOUR

12   HONOR, THERE STILL WOULD HAVE TO BE A SHOWING OF BIAS IN THE

13   LEGAL SENSE.

14        NOW, WE DON'T MAINTAIN FOR A MINUTE THAT PREJUDICE,

15   BIAS, SHOULD BE THE BASIS FOR DECISIONS.  OBVIOUSLY, IT SHOULD   01:27

16   NOT.  BUT THE REALITY IS THAT EVERY JUROR AND POTENTIAL JUROR

17   THAT COMES INTO THIS COURTROOM AND EVERY OTHER COURTROOM IN THE

18   COUNTRY COMES IN WITH PRECONCEPTIONS.

19        IF THE RULE WAS WE CAN'T HAVE ANY JURORS THAT HAVE

20   PREJUDICES, AS JUDGE FRIENDLY SAID, NOT ONE JURY OUT OF ONE      01:27

21   HUNDRED WOULD PASS THAT TEST.

22        WHAT WE ASK OF JURORS IS THAT THEY SET ASIDE THEIR

23   PRECONCEPTIONS IN MAKING THEIR DECISION-MAKING IN THE CASE.

24   THAT'S WHAT IS EXPECTED.  NOT THAT THEY NOT HAVE

25   PRECONCEPTIONS, BUT THAT THEY SET THEM ASIDE.                    01:28

1        WE DON'T KNOW AT THIS POINT WHETHER OR NOT JUROR

2   NUMBER EIGHT WAS ABLE TO SET THOSE ASIDE OR NOT.  WE DON'T KNOW

3   WHETHER IN THE LEGAL SENSE, THE RELEVANT LEGAL SENSE, SHE WAS

4   BIASED IN A LEGAL SENSE.

5        ALL WE KNOW IS THIS STATEMENT WAS MADE.  THE ONLY            01:28

6   EVIDENCE BEFORE THE COURT IS THE OTHER JURORS REJECTED IT AND

7   THE OTHER JURORS REBUKED HER FOR MAKING THE COMMENT.  BUT WE

8   DON'T KNOW WHAT WENT INTO HER DECISION MAKING.

9        IF WE GOT TO THE POINT OF CONSIDERING THIS ISSUE OF

10  ACTUAL BIAS, THEY WOULD HAVE TO ACTUALLY COME FORWARD AND PROVE   01:28

11  -- THERE WOULD HAVE TO BE EVIDENCE THAT, IN FACT, SHE HAD NOT

12  BEEN ABLE TO SET THAT ASIDE.

13       THE COURTS THAT HAVE CONSIDERED THIS HAVE ACTUALLY

14  CONDUCTED HEARINGS FOR THE PURPOSE OF DETERMINING WHAT THE

15  DECISION-MAKING PROCESS WAS AND WHETHER THEY WERE ABLE TO SET     01:29

16  THAT ASIDE.

17       IF I COULD GO BACK FOR A MINUTE TO DISCUSS THE 606

18  ISSUE, YOUR HONOR.

19       HENLEY, EVERYONE AGREES THAT WAS DICTA.  THE NINTH

20  CIRCUIT HAS NOT DECIDED THAT ISSUE.  IN HENLEY IT WAS NOT A       01:29

21  COMMENT THAT WAS MADE IN THE DELIBERATION ROOM; IT WAS A

22  COMMENT THAT WAS MADE IN A CARPOOL ON THE WAY TO COURT.

23       IN THE ESTRADA CASE, THE NINTH CIRCUIT MADE CLEAR

24  THAT ISSUE IS STILL OPEN AND HAS NOT BEEN DECIDED IN THE NINTH

25  CIRCUIT.  IT WAS A CRIMINAL CASE.  AND I SUBMIT THAT             01:29

1    JUDGE RINEHART'S OPINION IS CONTRARY TO THE VERY BROAD

2    CONSTRUCTION GIVEN TO 606 BY THE SUPREME COURT IN THE TANNER

3    CASE.

4            MGA CLAIMS THAT DOUBTS AGAINST BIAS IN THE LEGAL

5    SENSE MUST BE RESOLVED AGAINST THE JURY.  I SUBMIT THAT'S          01:30

6    CONTRARY TO THE GONZALES CASE WHERE THE NINTH CIRCUIT SAID THAT

7    CONSIDERABLE WEIGHT SHOULD BE GIVEN TO A JUROR'S STATEMENT THAT

8    THE JUROR BELIEVES THAT THEY CAN SERVE IMPARTIALLY.

9            MGA ALSO IGNORES SUPREME COURT PRECEDENT IN THE

10   IRVINE AND MURPHY CASE THAT JURORS ARE PRESUMED TO BE             01:30

11   IMPARTIAL; SO WE GET THAT IN THE VOIR DIRE ISSUE.

12           VOIR DIRE IS IMPORTANT HERE, BECAUSE THE SYSTEM

13   RELIES ON THE VOIR DIRE PROCESS TO FERRET OUT PRECONCEPTIONS,

14   CONFRONT JURORS WITH THEIR PRECONCEPTIONS, AND ASK THEM

15   WHETHER, IN FACT, THEY CAN SET THEM ASIDE AS WE EXPECT THEM TO    01:30

16   DO.

17           IN THIS CASE, JUROR NUMBER EIGHT SIMPLY WASN'T ASKED

18   THE QUESTIONS THAT WOULD HAVE REVEALED A PRECONCEPTION OR A

19   BIAS.  THE CLOSEST THAT COUNSEL CAME -- AND TRIAL LAWYERS MAKE

20   JUDGMENTS.  WE DIDN'T HAVE A LOT OF TIME TO CONDUCT VOIR DIRE.    01:31

21   TRIAL LAWYERS MAKE JUDGMENTS -- NO QUESTION SPECIFICALLY WAS

22   ASKED TO JUROR NUMBER EIGHT.  THE CLOSEST THAT COUNSEL CAME WAS

23   A GENERAL STATEMENT THAT "MY CLIENT IS FROM THE MIDDLE EAST.

24   IS THERE ANYONE HERE WHO DOESN'T BELIEVE THAT IMMIGRANTS SHOULD

25   BE ENTITLED TO PURSUE THE AMERICAN DREAM?"                        01:31

1          THAT'S AS CLOSE AS IT GOT.

2          IN OTHER WORDS, THE TOOL THAT'S AVAILABLE HERE TO

3    FERRET OUT BIAS OR PREJUDICE SIMPLY WASN'T UTILIZED.

4          IT'S NOT ENOUGH TO EXPECT, AND THE LAW IS CLEAR THAT

5    WE DON'T EXPECT JURORS TO VOLUNTEER PREJUDICE OR BIAS; THAT'S          01:31

6    THE UNITED STATES VS. AGUON CASE, AND THE HARD CASE WHERE THE

7    JUROR HAD FORMERLY BEEN EMPLOYED BY A PREDECESSOR RAILROAD THAT

8    WAS A PARTY TO THE CASE, AND THE CLAIM WAS MADE, 'WELL, YOU

9    SHOULD HAVE VOLUNTEERED THE FACT' -- 'THE JUROR SHOULD HAVE

10   VOLUNTEERED THE FACT THAT THEY HAD BEEN EMPLOYED BY A          01:32

11   PREDECESSOR ENTITY.'  AND THE COURT SAID 'NO, WE DON'T EXPECT

12   THAT OF JURORS.  YOU HAVE TO ASK DIRECTLY.  IF YOU WANTED TO

13   KNOW THAT, COUNSEL SHOULD HAVE ASKED THAT.'

14         THE LOPEZ VERSUS ARAMARK CASE, IT WAS A SEXUAL ABUSE

15   CASE, AND THE JUROR WAS ASKED QUESTIONS ABOUT SEXUAL HARASSMENT          01:32

16   BUT NOT SEXUAL ABUSE AND DENIED THAT THEY HAD ANY EXPERIENCE

17   WITH SEXUAL ABUSE, ALTHOUGH APPARENTLY THE ISSUE IN THE CASE

18   WAS SEXUAL HARASSMENT.  IN OTHER WORDS, THE QUESTION ASKED OF

19   THE JUROR WASN'T SQUARELY ON POINT.  AND THE NINTH CIRCUIT SAID

20   YOU'VE GOT TO ASK; DELVE INTO THE SPECIFIC CONDUCT AT ISSUE.          01:32

21   THAT'S SIMPLY NOT CLOSE ENOUGH.

22         BUT, YOUR HONOR, THE COURT DID INTERVIEW THE JURORS

23   HERE, AND WHAT HAPPENED IS, AND WE KNOW AND THE COURT KNOWS,

24   THAT NINE FAIR AND IMPARTIAL JURORS RULED AGAINST MGA AND

25   MR. LARIAN AND THEIR VERDICT WAS NOT INFLUENCED BY JUROR NUMBER          01:33

1    EIGHT.  THE COURT KNOWS THAT.  YET MGA SAYS THAT JUROR NUMBER

2    EIGHT'S COMMENTS REQUIRE THIS COURT TO THROW OUT THIS VERDICT

3    EVEN THOUGH THOSE OTHER JURORS EXPRESSED DISMAY AT THE COMMENT.

4         I SUBMIT, YOUR HONOR, THAT THE LAW DOES NOT REQUIRE

5    SUCH AN ABSURD RESULT.                                    01:33

6         **THE COURT:**  THANK YOU, COUNSEL.

7         LET ME BEGIN WITH THE 606 ANALYSIS.

8         MATTEL IS CORRECT THAT 606 DOES PRECLUDE CERTAIN

9    INQUIRIES.  HOWEVER, MY SENSE, HAVING INTERVIEWED THE JURORS,

10   IS THAT THIS FALLS SQUARELY WITHIN THE EXCEPTION TO 606(B).  01:34

11        I KNOW BOTH COUNSEL -- AND I RECOGNIZE THIS AT THE

12   OUTSET -- ARE AT SOMEWHAT OF A DISADVANTAGE.  I HAVE NOT

13   RELEASED THE TRANSCRIPTS OF THOSE IN-CAMERA JUROR INTERVIEWS.

14   YOU STIPULATED FOR THE COURT TO DO IT.  I THINK COUNSEL FOR MGA

15   HAD ASKED ME TO RELEASE THEM.  BUT I'M HOLDING OFF PRECISELY    01:34

16   BECAUSE OF THE 606 ISSUE, BECAUSE THERE ARE QUESTIONS AND

17   DISCUSSIONS WITH A JUROR THAT DO TOUCH UPON THEIR

18   DELIBERATIONS, WHICH I DO NOT BELIEVE, LEGALLY OR ETHICALLY,

19   CAN OR SHOULD BE DISCLOSED.

20        BUT IT PUTS THE COURT IN THE AWKWARD POSITION OF          01:34

21   BEING THE SOLE POSSESSOR OF THE INFORMATION.  AND I'M RELATING

22   MY FINDINGS, AND THE RECORD IS THERE, OF COURSE, FOR THE

23   APPELLATE COURTS TO REVIEW NO MATTER WHAT THE OUTCOME OF THIS

24   IS; SO I FEEL VERY CONVINCED ON THOSE FINDINGS.  I HAVE READ

25   AND REREAD THOSE TRANSCRIPTS.                               01:34

 1          BUT I THINK IT'S IMPORTANT THAT EVERYONE UNDERSTAND

 2   WHAT IT IS THE COURT FOUND AND WHAT IT IS THAT THE COURT DID

 3   NOT FIND.

 4          FIRST OF ALL, WITH RESPECT TO THE STATEMENT, THERE'S

 5   NO QUESTION THAT THERE WAS A GROSSLY INAPPROPRIATE STATEMENT      01:35

 6   MADE.  ALL OF THE JURORS WHO HEARD SUCH A STATEMENT, WHICH IS

 7   EIGHT OF THE NINE, PUTTING ASIDE OF COURSE JUROR NUMBER EIGHT

 8   FOR A MOMENT, CHARACTERIZED OR AGREED THAT THE STATEMENT WAS

 9   GROSSLY INAPPROPRIATE.  THERE WAS ONE JUROR WHO DID NOT HEAR

10   THE STATEMENT; A COUPLE OF THE OTHER JURORS INDICATED THEY        01:35

11   THOUGHT PERHAPS A JUROR MAY HAVE BEEN AWAY; SO IT WAS VERY

12   CONSISTENT.  I HAVE NO CONCERN OVER THAT ONE JUROR WHO DID NOT

13   HEAR THE STATEMENT.  THAT DOESN'T ADD TO THIS MIX ONE WAY OR

14   THE OTHER.  BUT A GOOD EIGHT OF THEM ALL HEARD THE STATEMENT

15   AND THEY VIEWED IT AS INAPPROPRIATE.                             01:35

16          SOMETHING WHICH MAY BE A COMMENTARY ON EYEWITNESS

17   TESTIMONY, ALL EIGHT HAD A SLIGHTLY DIFFERENT VERSION OF WHAT

18   WAS SAID.  AND WHEN I SET FORTH MY FINDING INDICATING THE

19   VARIOUS STATEMENTS, THAT WAS AN AMALGAM OF ALL OF THE DIFFERENT

20   STATEMENTS.  NO ONE JUROR INDICATED THAT ALL THOSE THINGS WERE   01:36

21   SAID; SO I DON'T WANT IT TO BE VIEWED OR PORTRAYED ON THE

22   RECORD THAT SOMEHOW ALL OF THOSE THINGS WERE NECESSARILY SAID.

23   IT WAS AN AMALGAM OF THE DIFFERENT COMMENTS THAT THE JURORS

24   HEARD.

25          OF SIGNIFICANCE TO 606(B) IS THE FACT THAT OF THE         01:36

1    EIGHT JURORS THAT HEARD THE COMMENT, SIX OF THOSE JURORS PLACED

2    IT IN THE CONTEXT NOT AS A STATEMENT BY THE JUROR HERSELF BUT

3    SOMETHING THAT HAD BEEN RELAYED TO HER BY HER LAWYER HUSBAND;

4    AN EXPERIENCE, INFORMATION, HOWEVER YOU WANT TO CHARACTERIZE

5    IT, EXTRINSIC EVIDENCE; SOMETHING WHICH WAS COMING FROM OUTSIDE     01:36

6    OF THE JURY PROCESS INTO THE JURY ROOM.

7          THE TWO JURORS THAT DIDN'T MENTION OR MAKE REFERENCE

8    TO THE HUSBAND DIDN'T EXCLUDE IT.  BUT BASED ON MY INTERVIEW OF

9    ALL OF THE EIGHT JURORS WHO DID HEAR IT, IT'S QUITE CLEAR TO

10   THE COURT, BASED ON THE EVIDENCE BEFORE IT, THAT IT WAS           01:37

11   EXTRANEOUS INFORMATION BEING BROUGHT INTO THE JURY ROOM.

12         AS A RESULT, ESTRADA APPLIES.

13         THERE ARE FACTORS SET FORTH IN ESTRADA WHICH MUST BE

14   EVALUATED TO DETERMINE THE PREJUDICIAL EFFECT OF THE STATEMENT.

15   SPECIFICALLY, WHETHER THE MATERIAL WAS ACTUALLY RECEIVED.  AND    01:37

16   IT WAS.  THE INFORMATION DID ENTER INTO THE JURY ROOM.

17         THE LENGTH OF TIME IT WAS AVAILABLE TO THE JURY.

18         BY ALL ACCOUNTS, IT WAS ENTERED INTO THE JURY ON THE

19   LAST DAY, AFTER THE JURY HAD REACHED ITS DECISION ON THE

20   VERDICT, PRIOR TO ITS DEADLOCK ON THE FOUR QUESTIONS.  THIS IS    01:37

21   CONFIRMED ON SEVERAL COUNTS.

22         IT TURNS OUT THE NOTE FROM JUROR NUMBER TEN, IN WHICH

23   SHE WAS COMPLAINING ABOUT NOT BEING ABLE TO CONTINUE TO

24   DELIBERATE AND WANTING TO BE RELIEVED, WAS DIRECTLY LINKED TO

25   THIS STATEMENT; IT WAS THIS STATEMENT WHICH PUT HER IN THE        01:38

```
 1   DISCOMFORT.  AND JUROR NUMBER SIX WHO REPORTED THE STATEMENT,

 2   AS WELL AS SEVERAL OF THE OTHER JURORS, PLACE IT AT THAT TIME.

 3          THE THIRD FACTOR IS THE EXTENT TO WHICH THE JURY

 4   DISCUSSED AND CONSIDERED IT.

 5          ALL JURORS WHO HEARD IT REPORT THAT THEY REBUKED OR      01:38

 6   HEARD SOMEBODY, NAMELY THE FOREPERSON, REBUKING THE STATEMENT.

 7          I THOUGHT A LOT THIS LAST WEEK ABOUT A STATEMENT

 8   MR. NOLAN MADE ABOUT 12 ANGRY MEN, THE TRIAL THAT WE'RE ALL

 9   FAMILIAR WITH, THE HENRY FONDA MOVIE.  THE STORY THERE, OF

10   COURSE, IS YOU HAVE ELEVEN BIASED JURORS, ELEVEN JURORS WHO BUY  01:39

11   INTO PREJUDICE AND BIGOTRY, AND ONE BRAVE PERSON WHO STANDS UP.

12          WHAT WE HAD IN THIS JURY WAS JUST THE OPPOSITE.  WE

13   HAD SOMEONE WHO RELAYED BIASED INFORMATION, A PRECONCEIVED

14   NOTION -- AND I'M NOT USING BIAS NECESSARILY IN THE LEGAL TERM

15   HERE, BUT AS A STATEMENT THAT IS GROSSLY INAPPROPRIATE -- AND    01:39

16   WE HAD AN ENTIRE JURY REBUKE, BEGINNING WITH THE FOREPERSON.

17   SEVERAL OF THE OTHER JURORS INTERVIEWED SAID THAT THE

18   FOREPERSON IMMEDIATELY SAID STOP, STOP, STOP.  SEVERAL OTHER

19   JURORS JOINED IN IN REBUKING THE JUROR FOR SAYING IT.

20          IT IS CLEAR, NOT BASED ON ANY SELF-SERVING QUESTION      01:40

21   -- DID IT AFFECT DELIBERATION?  OR ARE YOU BIASED?  I AGREE

22   WITH MGA ENTIRELY ON THAT; THOSE TYPES OF QUESTIONS, EVEN

23   THOUGH I DID ASK THEM OF SEVERAL OF THE JURORS, YOU'RE RIGHT,

24   THEY ARE OF NO MOMENT.  OF COURSE SOMEONE IS NOT GOING TO SAY

25   THEY ARE RACIST.  OF COURSE THEY ARE NOT GOING TO SAY THEY ARE   01:40
```

1    BIASED, UNLESS THEY REALLY ARE PROUD OF SUCH BIGOTRY OR RACISM.

2         BUT ACTIONS SPEAK FAR LOUDER THAN WORDS, AND THE

3    ACTION AND THE CONDUCT OF THE JURY IN REBUKING THE JUROR SPOKE

4    QUITE LOUDLY IN THIS CASE.

5         THE FOURTH FACTOR:  WHETHER THE MATERIAL WAS                    01:40

6    INTRODUCED BEFORE A VERDICT WAS REACHED; AND IF SO, AT WHAT

7    POINT IN THE DELIBERATIONS?

8         AS THE COURT HAS ALREADY FOUND IN THIS MATTER, BASED

9    AGAIN ON THE INTERVIEWS OF ALL OF THE JURORS, THIS WAS A

10   STATEMENT THAT CAME IN AND WAS REBUKED LITERALLY AFTER THE        01:40

11   VERDICT HAD LARGELY BEEN REACHED.  IT HAD NOT BEEN SIGNED, BUT

12   ALL THAT REMAINED WERE THE FOUR QUESTIONS THAT THE JURY NEVER

13   ANSWERED.

14        THE FIFTH FACTOR:  ANY OTHER MATTERS WHICH BEAR ON

15   THE ISSUE OF THE REASONABLE POSSIBILITY OF WHETHER THE           01:41

16   EXTRINSIC MATERIAL AFFECTED THE VERDICT.

17        I HAVE SPOKEN TO A LOT OF JURORS IN MY TIME, BOTH AS

18   A PROSECUTOR AND AS A JUDGE.  I AM FIRMLY CONVINCED THAT ABSENT

19   JUROR NUMBER EIGHT, WE HAVE AN ENTIRELY DEDICATED, COMMITTED

20   AND UNAFFECTED JURY.                                             01:41

21        BUT WHAT TO DO WITH JUROR NUMBER EIGHT?

22        THE COURT PREVIOUSLY DESCRIBED THAT AS A CANCER, AND

23   THE COURT, TREATING IT AS A CANCER, REMOVED IT FROM THE JURY.

24        THE QUESTION IS WHAT MORE NEEDS TO BE DONE?

25        QUITE FRANKLY, REMOVING A JUROR IS A PRETTY DRAMATIC        01:42

1  STEP.  I SUPPOSE THE COURT COULD HAVE INSTRUCTED.  BUT I THINK

2  THAT ON THE RECORD HERE AND PURSUANT TO THE STIPULATION OF

3  COUNSEL FROM BOTH SIDES, I THINK THE REMOVAL OF THE JUROR WAS

4  APPROPRIATE.

5       THE QUESTION THAT REMAINS IS WHETHER OR NOT THE BIAS,  01:42

6  IN THE COLLOQUIAL SENSE AND NOT NECESSARILY IN THE LEGAL SENSE,

7  OF ONE JUROR IN A CIVIL CASE RENDERS THE VERDICT SUSPECT SUCH

8  THAT A MISTRIAL MUST BE DECLARED.

9       THERE IS NO CASE THAT HOLDS SUCH.  NOT IN A CIVIL

10  SENSE.  01:42

11       AT STAKE HERE IS PROPERTY, A LOT OF PROPERTY.

12       AT 2:00 I WILL BE TAKING UP CRIMINAL MATTERS WHERE

13  PEOPLES' LIFE AND LIBERTY ARE AT STAKE.  THAT'S NOT WHAT'S AT

14  STAKE HERE.  THERE IS A DIFFERENCE.

15       NOW, THERE ARE CASES THAT HAVE BEEN CITED BY BOTH  01:43

16  SIDES CONCERNING WHETHER OR NOT THE SEVENTH AND THE SIXTH

17  AMENDMENT OVERLAP AND TO WHAT EXTENT THEY OVERLAP, AND I'VE

18  LOOKED CAREFULLY AT ALL OF THOSE CASES.  AND CERTAINLY THE

19  STANDARD FOR MEASURING THE IMPACT OF AN EXTRANEOUS INFLUENCE ON

20  A JUROR, AS THE COURT JUST WENT THROUGH, OVERLAPS; THAT'S THE  01:43

21  SEA HAWK SEAFOODS CASE, THE RINKER CASE, THE JIMENEZ CASE.

22       BUT IN TERMS OF THIS NOTION THAT THE COURT IS

23  REQUIRED TO STRIKE THIS JURY PANEL AND START OVER AT THIS

24  BECAUSE OF THE MISCONDUCT OF ONE JUROR, THIS WOULD BE THE FIRST

25  CASE.  01:43

```
 1            AND MGA IS ABSOLUTELY CORRECT, WE CANNOT TOLERATE

 2   BIGOTRY OR RACISM, ETHNICISM, WHATEVER IT IS.  BUT THE JURY IN

 3   THIS CASE, THE JURORS IN THIS CASE, THAT STOOD UP AND REBUKED

 4   THIS JUROR DID THE RIGHT THING.  AND I AM CONVINCED THAT THE

 5   VERDICT THAT WAS REACHED WAS THE VERDICT THAT REFLECTED THE        01:44

 6   VIEWS OF THOSE JURORS.

 7            THERE'S AN ISSUE WITH RESPECT TO VOIR DIRE.

 8            IT'S CLEAR THAT JUROR NUMBER EIGHT DOES NOT BELIEVE

 9   SHE IS BIASED, THAT SHE IS PREJUDICED OR HAS ANY

10   PRECONCEPTIONS.  THIS IS NOT A CASE WHERE SOMEONE HAS A PRIOR      01:44

11   CONVICTION OR A PRIOR INVESTIGATION AND DIDN'T DISCLOSE IT WHEN

12   ASKED ABOUT IT.  FOR THE VERY SAME REASON, THESE QUESTIONS OF

13   RACISM AND BEING RACIST DON'T HOLD A LOT OF WATER, SO, TOO,

14   THIS COULD BE A VERY DIFFICULT THING TO FERRET OUT DURING VOIR

15   DIRE.                                                             01:45

16            THERE IS CERTAINLY NO INDICATION THERE WAS ANY

17   PARTICULAR QUESTION THAT WAS ASKED OF THE JUROR, OR EVEN IN THE

18   GENERAL QUESTIONING, FOR WHICH THIS JUROR LIED ABOUT.

19            THERE IS SIMPLY NOTHING THERE.

20            BUT THOSE ARE MY TENTATIVE THOUGHTS, HAVING GONE          01:45

21   THROUGH THE PAPERS, AND I WILL INVITE COUNSEL ON BOTH SIDES FOR

22   A PERIOD OF FIVE MINUTES EACH TO RESPOND TO MY TENTATIVE

23   THOUGHTS BEFORE I MAKE A FINAL DECISION.

24            MR. NOLAN:  YOUR HONOR, I WANT TO GO BACK TO THE

25   QUESTION OF WHETHER OR NOT THERE REALLY IS A DISTINCTION          01:46
```

1   BETWEEN A CIVIL CASE AND A CRIMINAL CASE IN TERMS OF PROPERTY.

2   I KNOW YOU HAVE A CRIMINAL CALENDAR.

3           I THINK THE CASE LAW THAT WE HAVE CITED IS THE BETTER

4   REASONED VIEW, THAT DESPITE THE AMOUNT AT STAKE, THE SEVENTH

5   AMENDMENT STILL GUARANTEES TO MR. LARIAN A UNANIMOUS VERDICT OF      01:46

6   INDIVIDUAL JURORS.

7           **THE COURT:**  LET ME STOP YOU THERE, COUNSEL.

8           THERE'S NOTHING IN THE SEVENTH AMENDMENT WHICH TALKS

9   ABOUT A UNANIMOUS VERDICT; THAT COMES FROM STATUTES AND

10  REGULATIONS.  LET'S NOT TALK ABOUT A UNANIMOUS VERDICT BEING A      01:46

11  CONSTITUTIONAL RIGHT.  YOU'VE MENTIONED THAT A COUPLE OF TIMES

12  NOW, AND THAT'S NOT THE CASE.

13          YOU HAVE A RIGHT TO A JURY TRIAL UNDER THE SEVENTH

14  AMENDMENT.

15          **MR. NOLAN:**  RIGHT, YOUR HONOR.  AND UNDER RULE 48, WE     01:47

16  HAVE A RIGHT THAT FOR WHATEVER THE NUMBER MIGHT BE, SIX BEING

17  THE MINIMUM, IN THIS CASE IT TURNED OUT TO BE TEN, BUT WHEN

18  THOSE JURORS WENT IN AND REACHED A VERDICT AS A UNIT, THEY WERE

19  REQUIRED TO -- AND DUE PROCESS REQUIRES THIS, HONOR -- THAT

20  THEY BE IMPARTIAL.                                                  01:47

21          **THE COURT:**  IS THERE A SINGLE CASE WHICH STANDS FOR

22  THAT PROPOSITION?  BECAUSE IT WAS NOT CITED IN THE BRIEFS, IF

23  YOU HAVE ONE.

24          ONE CIVIL CASE THAT STANDS FOR THAT PROPOSITION.

25          IF YOU HAVE MORE THAN SIX JURORS, AND YOU HAVE TEN IN       01:47

monday, august 4, 2008                          motion for mistrial

```
 1   THIS CASE, THAT YOU HAVE A STATUTORY OR A CONSTITUTIONAL RIGHT

 2   TO HAVING ALL TEN OF THOSE DECIDE UNANIMOUSLY.

 3            MR. NOLAN:  ONE OF THE CASES THAT COMES TO MIND IS

 4   THE CATERPILLAR CASE WHICH I'LL ADDRESS IN A FOOTNOTE.

 5            JUST ONE MOMENT.                                          01:47

 6         THE COURT:  ALL RULE 48 SAYS IS THAT "A JURY MUST

 7   INITIALLY HAVE AT LEAST SIX AND NO MORE THAN 12 MEMBERS, AND

 8   EACH JUROR MUST PARTICIPATE IN THE VERDICT UNLESS EXCUSED.

 9   UNLESS THE PARTIES STIPULATE OTHERWISE, THE VERDICT MUST BE

10   UNANIMOUS AND IS TO BE RETURNED BY A JURY OF AT LEAST SIX        01:48

11   MEMBERS."

12            MR. NOLAN:  YOUR HONOR, WE WOULD CITE TO PARKER

13   VERSUS GLADEN, 385 U.S. 363, WHERE THE COURT HELD THAT

14   PETITIONER WAS ENTITLED TO BE TRIED BY 12, NOT NINE OR EVEN

15   TEN, IMPARTIAL AND UNPREJUDICED JURORS.                         01:48

16         THE COURT:  WAS THAT A CIVIL OR A CRIMINAL CASE,

17   COUNSEL?

18            MR. NOLAN:  YOU ASKED FOR A CIVIL CASE.

19         THE COURT:  I DID.

20            MR. NOLAN:  I APOLOGIZE FOR THAT.                       01:48

21         THE COURT:  I DON'T THINK YOU'LL FIND ONE, COUNSEL.

22            MR. NOLAN:  YOUR HONOR, THE CASES WE CITED, INCLUDING

23   THE CATERPILLAR DECISION, WHICH TALKS ABOUT THE APPLICATION OF

24   THE FIFTH AMENDMENT DUE PROCESS RIGHTS TO THE SEVENTH AMENDMENT

25   APPLICABLE IN CIVIL CASES AND THAT THE DISTINCTION BETWEEN       01:49
```

1    CIVIL AND CRIMINAL, WHERE YOU SEE IT IN CASES CITED BY MATTEL,

2    MORE GO TO THE STRUCTURE OF WHAT WEIGHT WILL BE GIVEN TO, LET'S

3    SAY, STANDARDS OF RULES OF EVIDENCE.  BUT THERE IS NO CASE,

4    YOUR HONOR, THAT WE HAVE FOUND WHICH SAYS THAT IN A CIVIL CASE,

5    BECAUSE PROPERTY IS AT STAKE, YOU CAN HAVE LESS THAN A                    01:49

6    UNANIMOUS VERDICT RETURNED UNLESS SO STIPULATED BY COUNSEL.

7         **THE COURT:**  THAT'S NOT EVEN CLOSE TO THE ISSUE WE

8    HAVE HERE.

9         **MR. NOLAN:**  THAT'S NOT CLOSE TO THE ISSUE AT ALL,

10   YOUR HONOR.                                                              01:49

11        BUT THIS IS THE CASE, MUCH LIKE IN THE HENLEY CASE,

12   WHERE THEY SAID THIS IS AN OPEN ISSUE.  YOUR HONOR, THE ISSUE

13   OF RACISM SHOULD NEVER BE ALLOWED TO COME INTO A JURY

14   DELIBERATION.

15        MY ONLY COMMENT WITH RESPECT TO THE FACT THAT THE             01:50

16   ANALYSIS IS THAT THIS WAS AN EXTRINSIC COMMENT MADE AS THOUGH

17   SHE'S REPORTING IT FROM HER HUSBAND.

18        **THE COURT:**  RIGHT.

19        THE SENSE THAT I GOT -- AND THE MOSAIC BECOMES CLEAR

20   WHEN YOU LISTEN TO EIGHT OR NINE PEOPLE TELL ESSENTIALLY THE       01:50

21   SAME STORY WITH THE VARIATIONS THAT YOU WOULD COME TO EXPECT

22   WHEN EIGHT OR NINE DIFFERENT PEOPLE TELL THE STORY -- THE STORY

23   IS ESSENTIALLY THAT "MY HUSBAND IS A LAWYER; HE HAS CLIENTS WHO

24   ARE IRANIAN, OR THEY ARE OF" -- IT WAS NOT CLEAR WHETHER IT WAS

25   THE CLIENTS OR OPPOSING PARTY -- "AND THAT BASED ON HIS            01:50

1    EXPERIENCES AS RELATED ME, THESE ARE CHARACTERISTICS THAT I'VE

2    COME TO KNOW."

3              IT WAS INFORMATION BEING BROUGHT IN FROM SOMEBODY

4    ELSE.  IT WAS ATTRIBUTED TO SOMEBODY ELSE.  BECAUSE OTHERWISE

5    MATTEL IS RIGHT, IT'S 606 AND IT DOES NOT COME IN AT ALL.          01:51

6              BUT I REALLY DO THINK THIS WAS EXTRANEOUS IN THE

7    SENSE THAT THIS WAS COMING FROM AN OUTSIDE SOURCE AND IT SHOULD

8    NOT HAVE BEEN THERE.  NO QUESTION.

9              AND I CERTAINLY DON'T BACK AWAY FOR A MOMENT FROM MY

10   CHARACTERIZATION OF THIS BEING GROSSLY INAPPROPRIATE, AND I        01:51

11   THINK THE DECISION TO REMOVE THE JUROR IS WELL FOUNDED.

12             **MR. NOLAN:**  BUT, YOUR HONOR, JUST IN RECOUNTING THAT,

13   WHEN THE COURT SAID THAT THESE WERE CHARACTERISTICS THAT SHE

14   HERSELF HAD PROCESSED AS A RESULT OF WHAT SHE MAY HAVE HEARD

15   FROM HER HUSBAND, THE FIRST STEP IN THE ANALYSIS OF WHETHER OR     01:51

16   NOT IT WAS EXTRANEOUS, I THINK YOU HAVE TO TAKE IT TO THE NEXT

17   STEP HERE.  AND THIS IS NOT LIKE A COMMENT MADE IN A CARPOOL,

18   IN HENLEY, WHERE SOMEONE USES THE "N" WORD.  THIS IS A

19   SITUATION WHERE -- LET'S ASSUME THAT IT'S THE HUSBAND WHO

20   ORIGINATES THIS TOTALLY INAPPROPRIATE THOUGHT AND COMMUNICATES     01:51

21   IT TO HIS WIFE.  JUROR NUMBER EIGHT SEES FIT IN A DELIBERATION

22   INVOLVING AN IRANIAN CITIZEN WHO'S ALLEGED TO HAVE STOLEN

23   PROPERTY AND FEELS COMFORTABLE ENOUGH EXPRESSING THAT TO THE

24   REST OF THE JURY PANEL.

25             **THE COURT:**  THAT WAS WRONG, NO QUESTION ABOUT IT.    01:52

1    **MR. NOLAN:**  BUT YOUR HONOR, THE FACT THAT CAN BE

2  VIEWED AS EXTRANEOUS -- I HAVE NOT SEEN IN ANY OF THE FINDINGS

3  OR IN ANY OF THE RECOUNTINGS BY THE COURT WHERE YOU SAY THAT

4  SHE REJECTED THOSE COMMENTS.

5       **THE COURT:**  COUNSEL, IN MOST CASES, IN ALL CASES OF          01:52

6  EXTRANEOUS INFORMATION, THE PERSON RELATING THE EXTRANEOUS

7  INFORMATION NORMALLY BELIEVED THE INFORMATION BEING RELATED.

8  SOMEONE WHO LOOKS UP A WORD IN THE DICTIONARY OR CONSULTS THE

9  INTERNET AND BRINGS THAT INTO THE JURY, THEY NORMALLY BELIEVE,

10  I WOULD ASSUME, THAT THE DICTIONARY DEFINITION IS CORRECT OR      01:52

11  THE INTERNET EXPLANATION IS CORRECT, OR WHATEVER IS CORRECT.

12       THAT'S NOT THE STANDARD AT ALL.

13       **MR. NOLAN:**  BUT, YOUR HONOR, HAVING SAID THAT, SO SHE

14  BELIEVES IT SUFFICIENTLY TO MAKE THE EXPRESSION TO THE OTHER

15  JURORS IN AN EFFORT TO TRY TO CONVINCE THEM ON A PARTICULAR       01:53

16  POINT --

17       **THE COURT:**  I DON'T KNOW WHAT SHE WAS TRYING TO DO OR

18  NOT.  THAT'S WHERE WE CROSS OVER INTO THE DELIBERATIONS.

19       **MR. NOLAN:**  WELL, YOUR HONOR, I RESPECTFULLY SUBMIT

20  THAT --                                                          01:53

21       **THE COURT:**  AND THE JURORS KNEW IT HAD NO PLACE.

22  THAT, TO ME, IS WHAT IS DISPOSITIVE.

23       IF WE WERE MAKING AN ARGUMENT NOW OVER WHETHER OR NOT

24  I SHOULD OR SHOULD NOT EXCUSE JUROR EIGHT, YOUR POINT WOULD BE

25  WELL TAKEN.  BUT WE'RE TALKING ABOUT THE REST OF THE JURY AND     01:53

1    THE VERDICT ITSELF.  AND THE ESTRADA CASE MAKES QUITE CLEAR THE

2    FACTORS THAT THE COURT IS TO CONSIDER IN THAT CONTEXT.  AND I

3    THINK ALL OF THE FACTORS WEIGH HEAVILY IN FAVOR OF KEEPING THIS

4    JURY.

5             **MR. NOLAN:**  CORRECT, YOUR HONOR.  I UNDERSTAND THE    01:53

6    ANALYSIS UNDER ESTRADA.  BUT WHERE I THINK THE ANALYSIS, WITH

7    ALL DUE RESPECT, GOES WRONG IS THAT AFTER YOU DO THE ANALYSIS

8    AND YOU DETERMINE THAT JUROR NUMBER EIGHT MADE THOSE

9    STATEMENTS, THAT THEY WERE EXTRANEOUS, AND THAT SHE BELIEVED

10   THEM -- WITHOUT GOING INTO 606(B), AND NOT DETERMINING WHAT      01:54

11   IMPACT IT HAD -- AND FRANKLY, YOUR HONOR, I DO BELIEVE AND

12   RESPECTFULLY SUBMIT THIS, THAT YOU ARE GOING INTO A 606(B)

13   ANALYSIS TO MORE OR LESS CONFIRM THAT DURING THE DELIBERATIONS

14   ALL EIGHT OF THE JURORS REBUKED OR SOME OF THEM REBUKED HER.

15            **THE COURT:**  WELL, I'M PERMITTED TO DO SO UNDER 606(B)  01:54

16   BECAUSE THIS EXTRANEOUS EVIDENCE IS AN EXCEPTION TO 606(B);

17   THAT'S WHY I'M PERMITTED TO GO INTO IT.

18            **MR. NOLAN:**  BUT ONCE YOU GO DOWN THAT ROAD AND YOU

19   MAKE A DECISION, THEN YOU MAKE A DECISION THAT SHE SHOULD NOT

20   SIT AS A JUROR IN THIS CASE.  AND I GO BACK TO MY ARGUMENT THAT   01:54

21   I MADE BEFORE, YOUR HONOR, THAT THAT IS BASED ON A FINDING THAT

22   SHE HARBORED RACIST AND BIASED VIEWS.

23            **THE COURT:**  I DON'T WANT TO MINIMIZE MY FINDING,

24   COUNSEL, BECAUSE I REAFFIRMED SHE MADE A GROSSLY INAPPROPRIATE

25   STATEMENT.  LET'S NOT READ INTO THE COURT'S FINDING ANYTHING      01:55

```
 1   MORE THAN I FOUND.

 2           I GAVE HER ACTUALLY RATHER SHORT SHRIFT BACK IN

 3   CHAMBERS WHEN I INTERVIEWED HER.

 4           MR. NOLAN:  I SUSPECT YOU DID.

 5           THE COURT:  SHE STARTED MINIMIZING, AND I REALLY HAD     01:55

 6   NO INTEREST IN HEARING HER MINIMIZATION; THAT WAS OF NO MOMENT,

 7   BECAUSE I HAD HEARD FROM ALL OF THE OTHER NINE JURORS, AND IT

 8   WAS CLEAR TO ME WHAT HAD BEEN SAID.  AND TO PASS JUDGMENT ON

 9   ANOTHER PERSON THAT THEY ARE A RACIST OR A BIGOT OR ANYTHING

10   LIKE THAT, THAT WAS NOT PART OF THE COURT'S FINDINGS.           01:55

11           MR. NOLAN:  WELL, YOUR HONOR, LET ME JUST GO TO THE

12   NOTE THAT WAS RECEIVED FROM JUROR NUMBER SIX THAT INITIATED

13   THIS PROCESS AND THE NOTE WHICH THEN LED TO A DISCUSSION.

14           JUROR NUMBER SIX --

15           THE COURT:  HE CAME TO THE CONCLUSION THAT HE DID NOT    01:56

16   BELIEVE THAT SHE COULD BE OBJECTIVE.

17           MR. NOLAN:  "I'LL JUST SAY IT STRAIGHT OUT:  I DON'T

18   THINK SHE'S OBJECTIVE OR TRYING TO BE."

19           THE INTERESTING COMMENT WITH THAT, AND THEN I'LL

20   FINISH ALSO BY TYING IT UP TO JUROR NUMBER TEN --              01:56

21           THE COURT:  THAT NOTE PROBABLY SHOULD NOT EVEN BE

22   PUBLIC AT THIS POINT, BECAUSE THAT GOES DIRECTLY TO

23   DELIBERATIONS AND THAT GOES TO THE HEART OF A 606(B) CONCERN;

24   THAT IS WHAT PROMPTED US TO GET IN AND FIND OUT ABOUT THIS

25   EXTRANEOUS STATEMENT.                                          01:56
```

```
 1              MR. NOLAN:  YOUR HONOR, THE ONLY POINT I WOULD MAKE

 2   WITH RESPECT TO JUROR NUMBER TEN'S NOTE ON THE DAY THE VERDICT

 3   WAS RETURNED -- THAT SHE WAS HAVING DIFFICULTY SITTING THERE

 4   BECAUSE SHE WAS UNDER A LOT OF STRESS, AND SHE INDICATED SHE

 5   WAS NOT SLEEPING AT NIGHT -- COUPLED WITH JUROR NUMBER SIX'S     01:56

 6   COMMENT OR OBSERVATION WITH RESPECT TO WHAT HE PERCEIVED TO BE

 7   A BIAS AND THAT SHE WAS NOT TRYING TO -- MY POINT WITH RESPECT

 8   TO THE TIMING OF ALL OF THIS IS THAT IT APPEARS AS THOUGH ONE

 9   OF THE CONSIDERATIONS OR THE ANALYSIS UNDER ESTRADA WAS THAT

10   THIS OCCURRED RATHER LATE IN THE PROCEEDINGS.                    01:57

11              IF, IN FACT, IT'S CONNECTED TO JUROR NUMBER TEN --

12              THE COURT:  IT ALL FITS TOGETHER, BECAUSE JUROR

13   NUMBER TEN'S NOTE CAME ON THE LAST DAY OF DELIBERATIONS, AND

14   JUROR NUMBER SIX'S NOTE CAME THE VERY NEXT DAY OF THE JURY

15   CONVENING.                                                       01:57

16              MR. NOLAN:  CORRECT.  BUT JUROR NUMBER TEN'S NOTE

17   SAID THAT SHE HAD NOT BEEN SLEEPING.

18              THE COURT:  I UNDERSTAND THAT.  I ALSO QUESTIONED HER

19   ABOUT THAT NOTE.  THE COURT IS VERY SATISFIED THAT WHAT

20   OCCASIONED HER NOTE WAS THE STATEMENT THAT WAS MADE.  AND JUROR  01:57

21   NUMBER TEN, I SHOULD ADD, IS SOMEBODY WHO WAS PARTICULARLY

22   CONVINCING TO THE COURT BASED ON HER OWN EXPERIENCES DEALING

23   WITH THE PARTICULAR ISSUES THAT YOU RAISED ON BEHALF OF

24   MR. LARIAN.  SHE WAS SOMEONE WHO REACTED IN A DECIDEDLY STRONG

25   WAY.                                                             01:58
```

1    **MR. NOLAN:**  THE LAST POINT THAT I'LL TRY TO MAKE,

2   YOUR HONOR, THAT CAUSES CONCERN IS THAT YOU SAY THAT JUROR

3   NUMBER SIX CAME FORWARD THE VERY NEXT DAY.

4        **THE COURT:**  I DIDN'T SAY THE VERY NEXT DAY; THE VERY

5   NEXT DAY THE JURY WAS CONVENED.                        01:58

6        **MR. NOLAN:**  RIGHT.

7        THIS IS THE POINT I WAS GOING TO MAKE.  WHEN THAT

8   COMMENT WAS MADE -- AND I ACCEPT THAT OTHER JURORS REBUKED THAT

9   COMMENT, AS THEY SHOULD HAVE, APPROPRIATELY.  BUT THE FACT THAT

10  NO OTHER JUROR EXCEPT FOR JUROR NUMBER SIX CAME FORWARD NEARLY  01:58

11  A WEEK AFTER THE DELIBERATIONS AND THAT WHEN THE COURT WAS

12  RECITING ITS PRELIMINARY FINDINGS AND INDICATING THAT IT WAS AN

13  EMOTIONAL DISPLAY BY THE OTHER JURORS AND TWO OF THEM WERE

14  CRYING WHEN THEY WERE RECOUNTING THIS, AND THAT I BELIEVE ONE

15  OF THE JURORS INDICATED -- BECAUSE THIS WAS SAID BY THE BENCH   01:59

16  -- THAT THERE MAY, IN FACT, BE AN INCLINATION TO SWING A

17  CERTAIN WAY IF JUROR NUMBER EIGHT WAS STILL IN THE CASE.

18       **THE COURT:**  RIGHT.  THERE WAS ONE THAT INDICATED THAT

19  SHE MIGHT BE TEMPTED TO SWAY IN FAVOR OF MGA TO OVERCOMPENSATE

20  FOR THIS JUROR'S PRESENCE AND THAT SHE WAS BASICALLY ASKING THE  01:59

21  COURT TO PLEASE REMOVE JUROR NUMBER EIGHT.

22       **MR. NOLAN:**  I GUESS WHAT I WANT TO SAY IS THAT I

23  RESPECT THE REMAINING JURORS.  I DO SUBMIT THAT HAVING WAITED A

24  WEEK TO COME FORWARD AND REPORT THIS ISSUE, AND ONLY ONE OF

25  THEM DID FIRST, AS OPPOSED TO THE FOREMAN, WHEN IT WAS        01:59

1    IMMEDIATELY SAID DURING THE PROCESS, THAT THEY CAME -- NOBODY

2    CAME AT THAT TIME.  THERE WAS A NOTE ABOUT 'IS IT A MISTRIAL?'

3         NO ISSUE ABOUT ANY EXTRANEOUS INFORMATION BEING

4    BROUGHT INTO THE DELIBERATION ROOM AT THAT POINT IN TIME.  A

5    FULL WEEK GOES BY.                                         02:00

6         AND RESPECTFULLY, YOUR HONOR, IT'S NOT THE NEXT DAY

7    THAT WE'RE IN SESSION.  WE ACTUALLY SIT THROUGH AN OPENING

8    STATEMENT AND A WITNESS TAKES THE STAND, AND IT'S THE SECOND

9    DAY WHEN WE COME BACK THAT JUROR NUMBER SIX COMES FORWARD AND

10   SAYS WORDS TO THE EFFECT, "I HAVE THIS BURDEN, I'VE BEEN     02:00

11   CARRYING THIS BURDEN AROUND, AND I HAVE TO UNLOAD IT."

12        SO I THINK, YOUR HONOR, WITH RESPECT TO THE ANALYSIS

13   UNDER ESTRADA, I UNDERSTAND THE STRUCTURE IN WHICH YOU ARE

14   APPLYING THE ESTRADA INSTRUCTION, I RESPECTFULLY SUBMIT,

15   THOUGH, AT THE END OF THIS ANALYSIS, THERE IS THE           02:00

16   UNCONTROVERTED FACT THAT A JUROR MADE AN INAPPROPRIATE COMMENT.

17        **THE COURT:**  I STAND CORRECTED.  YOU ARE CORRECT.  IT

18   WAS THE SECOND DAY AFTER THEY CAME BACK; IT WAS THAT FOLLOWING

19   MORNING.

20        THIS IS SOMETHING WHICH A NUMBER OF THE JURORS          02:01

21   RAISED, ABOUT WHETHER OR NOT THEY SHOULD HAVE COME FORWARD AT

22   THE TIME.  THE FOREPERSON ESSENTIALLY TOOK THE LEAD AND THE

23   RESPONSIBILITY FOR NOT DOING SO.  HE SAID THAT HE WAS

24   CONCERNED, BASED ON THE COURT'S INSTRUCTION ABOUT NOT

25   DISCLOSING TO THE COURT THEIR THOUGHT PROCESSES, GIVEN THE    02:01

1    INSTRUCTION THAT I GIVE THEM.  HE THOUGHT, IN HIS WORDS,

2    SOMETHING TO THE EFFECT THAT "I HAD TAKEN CARE OF THE

3    SITUATION."  SEVERAL OF THE OTHER JURORS INDICATED LIKEWISE.

4         JUROR NUMBER TEN -- AND I KNOW WE ALL KIND OF MADE

5    FUN OF THIS, BECAUSE WE DIDN'T UNDERSTAND HOW WE JUST HAD          02:01

6    INSTRUCTED HER NOT TO LET US KNOW WHAT WAS GOING ON, AND THEN

7    SHE CAME BACK AND INDICATED THAT SHE WAS HOLDING OUT ADVERSE TO

8    MATTEL, OR THAT THERE WAS A QUESTION THAT WAS ADVERSE TO

9    MATTEL, WHETHER THEY HAD PROVEN CERTAIN THINGS BY A

10   PREPONDERANCE OF THE EVIDENCE.  SHE ACTUALLY THOUGHT THAT BY      02:01

11   DOING THAT, SHE WAS AVOIDING DISCLOSING THIS OTHER ISSUE.  THIS

12   WAS THE BURNING ISSUE ON HER MIND, AND SHE DIDN'T THINK IT

13   WOULD HAVE BEEN APPROPRIATE TO REVEAL THAT.

14        MIND YOU, THIS IS THE SAME PERSON WHO, PROBABLY MORE

15   THAN ANYBODY IN THIS COURTROOM, SECOND ONLY TO MR. LARIAN, FELT  02:01

16   MORE STRONGLY ABOUT WHAT WAS SAID THERE BASED ON HER PERSONAL

17   BACKGROUND.

18        AND THEN, OF COURSE, JUROR NUMBER SIX ESSENTIALLY

19   RECOUNTED THE SAME THING TO ME.

20        MR. NOLAN, ALL OF THESE ISSUES THAT YOU ARE RAISING          02:02

21   NOW AND THAT YOU ARE RAISING HAVE BASICALLY OCCUPIED MY

22   THOUGHTS AROUND THE CLOCK SINCE WE ADJOURNED A WEEK AGO FRIDAY,

23   AND MY EXPLANATION FOR HAVING KIND OF A READY RESPONSE TO THESE

24   POSITIONS IS ONLY A REFLECTION OF THE FACT THAT I HAVE THOUGHT

25   ABOUT THESE AROUND AND AROUND AND AROUND; SO I DON'T WANT YOU     02:02

 1    TO THINK I'M GIVING THEM SHORT SHRIFT --

 2            **MR. NOLAN:**  WE WOULD NEVER SUGGEST THAT, YOUR HONOR.

 3            **THE COURT:**  -- BECAUSE IT'S QUITE THE CONTRARY.  IT'S

 4    SOMETHING WHICH I HAVE REVIEWED OVER AND OVER AND OVER AGAIN.

 5    I REALLY BELIEVE THAT RACISM AND ETHNICISM, AND ANY OF THE          02:02

 6    OTHER -ISMS, HAVE NO PLACE IN THIS COUNTRY.  BUT WE CANNOT

 7    ALLOW OUR COMMITMENT TO ERADICATING RACISM OR BIGOTRY TO

 8    PARALYZE US.

 9            AND WE HAVE A JURY HERE WHO I AM CONVINCED IS NOT

10    ONLY COMPETENT IN THE SENSE THAT THEY HAVE PAID TREMENDOUS          02:03

11    ATTENTION IN THIS TRIAL.  THEY DIDN'T EVEN FLINCH WHEN WE

12    ANNOUNCED -- WHICH WAS A SURPRISE TO THEM -- ABOUT PHASE TWO;

13    THEY REALLY THOUGHT THEY WERE DONE.  THAT CAME ACROSS LOUD AND

14    CLEAR IN MY INTERVIEWS AS WELL.  THEY THOUGHT THIS WAS ALL OVER

15    WHEN THEY RETURNED THAT VERDICT.  BUT THEY DID NOT FLINCH IN        02:03

16    THEIR DUTY.  WHEN SOMETHING INAPPROPRIATE CAME UP, THEY

17    IMMEDIATELY SHUT IT DOWN.

18            IF ONLY EVERY JUROR IN THIS COUNTRY WOULD REACT TO

19    RACISM OR BIGOTRY THE WAY THIS JURY REACTED TO THIS STATEMENT

20    THAT WAS INTRODUCED INTO THE JURY DELIBERATION ROOM, WE WOULD      02:03

21    HAVE A MUCH BETTER JURY SYSTEM.

22            **MR. NOLAN:**  YOUR HONOR, I ACCEPT THAT.

23            IF I COULD JUST IMPROVE UPON THAT ONE MOMENT SO THAT

24    WE WOULD AVOID THIS ISSUE AND WHY I IMPLORE THE COURT TO

25    RECONSIDER ON THIS BASIS, IS THAT I COMMEND THE JUROR FOR          02:04

1    REBUKING JUROR NUMBER EIGHT.  BUT WHAT I CANNOT COMMEND IS THEM

2    NOT REPORTING THAT TO THE COURT.  BECAUSE HAD THEY REPORTED IT

3    TO THE COURT AT THAT TIME, WE WOULD NOT HAVE THIS ISSUE AND WE

4    WOULD NOT HAVE THIS DOUBT.  BECAUSE THE COURT WOULD HAVE

5    IMMEDIATELY EXCUSED JUROR NUMBER EIGHT AND ORDERED THE JURY TO     02:04

6    GO BACK AND RE DELIBERATE TO START OVER AGAIN.

7         **THE COURT:**  AND MR. NOLAN, THE COURT IS WILLING TO DO

8    SO AT THIS POINT.  I WILL GIVE MGA LEAVE TO SEEK A RE

9    DELIBERATION.  I WILL INSTRUCT THE JURY THAT THEY ARE TO

10   COMPLETELY DISREGARD ANYTHING THEY HEARD IN THE OPENING           02:04

11   STATEMENTS FOR PHASE 1-B.  AND I WILL ORDER THAT JURY, WHICH I

12   HAVE COMPLETE CONFIDENCE IN, TO FULLY RE DELIBERATE, IF THAT IS

13   WHAT MGA WANTS.

14        I TOOK IT FROM YOUR REPLY THAT YOU WERE REBUKING THAT

15   SUGGESTION BY PLAINTIFF.  BUT IF THAT IS SOMETHING THAT YOU       02:05

16   WANT, I WOULD DO IT IN A HEARTBEAT.

17        **MR. NOLAN:**  IN LIGHT OF THIS, YOUR HONOR, I'LL HAVE

18   TO CONSIDER THIS WITH MY CLIENT.

19        BUT THE LAST POINT I WANT TO MAKE ON THE ANALYSIS ON

20   ESTRADA.  YOU MADE REFERENCE TO THE VOIR DIRE AND I WANT TO GO    02:05

21   BACK TO THIS VERY QUICKLY, BECAUSE IT IS INCOMPREHENSIBLE TO ME

22   THAT IN THE MANNER IN WHICH THE VOIR DIRE WAS CONDUCTED, WHICH

23   FIRST WAS PRECEDED BY MINI OPENING STATEMENTS, WHERE MY

24   REFERENCE AFTER BOTH MINI OPENING STATEMENTS TALKED ABOUT

25   MR. LARIAN'S TRAVELS TO THE UNITED STATES TO BECOME A CITIZEN,    02:05

1  BECOME A SUCCESSFUL BUSINESSMAN; THAT WAS WHAT I ATTRIBUTED TO

2  THE AMERICAN DREAM.

3        **THE COURT:**  I UNDERSTAND THAT.  AND THERE WERE EVEN

4  MORE -- I DON'T THINK MR. QUINN NECESSARILY DID JUSTICE --

5  THERE'S OTHER QUESTIONS AS WELL WHERE WE, PARTICULARLY THE    02:06

6  COURT, OVER AND OVER AND OVER AGAIN, ASKED THIS JURY "IS THERE

7  ANYTHING THAT WOULD SUGGEST THAT YOU WOULD NOT BE FAIR TO BOTH

8  PARTIES?"  TIME AND TIME AGAIN, I ASKED THEM IF ANYTHING COMES

9  UP.

10        BUT I'M CONVINCED THIS JUROR, JUROR NUMBER EIGHT DOES   02:06

11  NOT BELIEVE THAT HER -- THROUGH WHATEVER PRECONCEPTIONS SHE

12  DOES AND DOES NOT HAVE, WOULD HAVE AFFECTED HER JURY.  IT'S

13  RECONFIRMED IN THIS LETTER ONCE AGAIN THAT SHE JUST SENT TO THE

14  COURT.  SHE BELIEVES SHE DECIDED THIS CASE STRICTLY ON THE

15  EVIDENCE; THAT THIS COMMENTARY HAD ABSOLUTELY NOTHING TO DO    02:06

16  WITH ANY BIAS OR UNFAIRNESS TO ONE SIDE OR THE OTHER.

17        **MR. NOLAN:**  RESPECTFULLY, YOUR HONOR, I DON'T BELIEVE

18  THAT'S THE TEST.  I THINK THE TEST UNDER ESTRADA AND OTHER

19  CASES WOULD BE THAT I WAS ENTITLED TO KNOW -- WHEN WE ASKED --

20  AND YOU ASKED MORE TIMES THAN MOST JUDGES HAVE DONE IN THIS    02:07

21  SYSTEM -- ABOUT "ARE THERE ANY PREJUDICES?  ARE THERE ANY

22  BIASES?"

23        **THE COURT:** -- THAT WOULD AFFECT YOUR ABILITY -- WE

24  ALL HAVE BIASES.  MR. NOLAN, YOU HAVE BIASES.  YOU'VE MADE

25  REFERENCE TO BEING IRISH CATHOLIC.  WE ALL HAVE OUR NOTIONS AND   02:07

1    STEREOTYPES; THAT'S PART OF BEING A HUMAN BEING.

2         BUT THE QUESTION THAT WE ASK OUR JURORS, THAT WE ASK

3    OURSELVES, WE ASK THE COURT, WHEN I PUT ON A BLACK ROBE, IS TO

4    TAKE ANY PRECONCEPTIONS THAT WE MIGHT HAVE, ANY VIEWS THAT WE

5    MIGHT HAVE, ANY BELIEFS THAT WE MIGHT HAVE, AND SET THEM ASIDE          02:07

6    AND DECIDE, IN THE CASE OF THE JURY, THE TRIAL BASED ON THE

7    EVIDENCE, AND IN THE CASE OF THE JUDGE, RULE ON THE LAW.

8    WHETHER WE'RE SYMPATHETIC OR NOT SYMPATHETIC.  WE CAN'T STOP

9    BEING HUMAN AND WE CAN'T ASK THE JURY TO STOP BEING HUMAN.

10        WHAT WE ASK THEM IS "CAN YOU BE FAIR?"                              02:07

11        AND TO HER THINKING, I AM CONVINCED THAT SHE THOUGHT

12    SHE COULD BE FAIR.  AND THERE'S NO LIE THAT SHE MADE.  SHE

13    DIDN'T SAY YES OR NO TO A QUESTION THAT WE CAN DEMONSTRATE WAS

14    KNOWINGLY FALSE.

15        **MR. NOLAN:**  YOUR HONOR, AFTER THE MINI OPENING                  02:08

16    STATEMENT AND AFTER QUESTIONS WERE BEING ASKED, MR. QUINN

17    SPECIFICALLY PUT TO HER A QUESTION BASED ON HER HUSBAND'S

18    EXPERIENCE AS A LAWYER.  MR. QUINN ASKED HER WHAT KIND OF LAW

19    DOES HE PRACTICE?  I THINK SHE ANSWERED COMMERCIAL.  THEN

20    MR. QUINN SAID "ANYTHING ABOUT THAT THAT WOULD MAKE YOU NOT            02:08

21    CAPABLE OF BEING FAIR AND IMPARTIAL?"

22        SHE ANSWERS NO.

23        THERE'S NO BASIS FOR ANY FOLLOWUP ON THAT.

24        HOWEVER, YOUR HONOR, IT SEEMS TO ME THAT THE STANDARD

25    THAT MAY BE VIEWED GOING FORWARD IS THAT A JUROR WHO KNOWS --          02:08

1    AND I'LL JUST MAKE IT VERY FACT SPECIFIC IN THIS CASE, BUT IT

2    COULD APPLY TO ANY RACIAL ETHNICITY AND ANY FACT PATTERN -- NO

3    CONFUSION, MINI OPENING STATEMENTS MAKE IT ABSOLUTELY CLEAR

4    THAT MR. LARIAN IS AN IRANIAN WHO'S ALLEGED TO HAVE STOLEN

5    IDEAS FROM MATTEL.                                                02:09

6          A WOMAN IS SITTING ON THE JURY KNOWING THAT SHE HAS A

7    PRECONCEPTION OF IRANIANS, BASED ON WHATEVER INFORMATION,

8    WHATEVER SOURCE IT IS, EITHER EYEWITNESS OR A DERIVATIVE OF HER

9    HUSBAND -- AND SHE'S SITTING THERE AND SHE SAYS, "YOU KNOW,

10   THAT SOUNDS FAMILIAR.  I'VE HEARD THIS.  IRANIANS ARE THIEVES   02:09

11   AND THEY STEAL IDEAS.  BUT WHEN MR. NOLAN ASKS ME WOULD I FEEL

12   COMFORTABLE HAVING A JUROR OF MY MINDSET SITTING AS TRIER OF

13   FACT ON MR. LARIAN, I CAN ANSWER NO."

14         I THINK UNDER THE CIRCUMSTANCES IN THE RULES OF

15   ENGAGEMENT, THAT QUESTION SHOULD HAVE PROMPTED HER A SIDE-BAR   02:10

16   AND SAID, "LISTEN, MY HUSBAND IS A LAWYER AND HE REPRESENTS

17   IRANIAN CLIENTS, AND THIS COMMENT HAS BEEN MADE, AND I JUST

18   WANT YOU TO KNOW THAT."

19         YOU SEE, WHEN I GO BACK NOW AND I LOOK AT WHAT WE'VE

20   CONFIRMED THROUGH THESE INTERVIEWS WHAT SHE SAID -- AND WE      02:10

21   ASSUME, YOUR HONOR, THAT SHE JUST DIDN'T COME TO THIS THOUGHT

22   DURING THE COURSE OF THE TRIAL.  SHE HAD IT THROUGH

23   DELIBERATIONS.

24         **THE COURT:**  I DON'T KNOW WHEN THIS INFORMATION WAS

25   BROUGHT TO HER ATTENTION, COUNSEL.                             02:10

1          **MR. NOLAN:**  I CAN'T FATHOM THAT SHE BECAME OF THIS

2    MINDSET DURING THE COURSE OF THIS TRIAL.

3          **THE COURT:**  I DON'T KNOW.

4          **MR. NOLAN:**  BUT, YOUR HONOR, IT JUST SEEMS TO ME THAT

5    INFORMATION SHOULD HAVE BEEN PROVIDED.  IT WASN'T UNREASONABLE.        02:10

6    THIS ISN'T LIKE SOME OF THE CASES WE'VE READ WHERE A QUESTION

7    WAS A LITTLE BIT OBTUSE AND IT WASN'T REALLY CLEAR UNTIL THE

8    EVIDENCE CAME OUT.  THIS WAS CLEAR THAT MR. LARIAN, OF IRANIAN

9    HERITAGE AND ORIGIN, WAS ACCUSED OF STEALING IDEAS.  AND SHE

10   HAS THIS VIEW THAT SHE EXPRESSES IN THE DELIBERATION ROOM.           02:11

11   YOUR HONOR, I THINK IT'S FAIR TO ASSUME THAT SHE DID NOT JUST

12   COME TO THAT DURING THE DELIBERATIONS.  AND WE WERE ENTITLED TO

13   KNOW THAT DURING DELIBERATIONS.

14         BECAUSE HAD SHE SAID IT -- LOOK WHAT HAPPENED WHEN

15   SHE SAID IT.  WE DETERMINED SHE COULDN'T SIT AS A JUROR IN THIS      02:11

16   CASE.

17         YOUR HONOR, I'D SUBMIT ON THAT.  IF THE COURT HOLDS

18   TO ITS RULINGS, I WOULD LIKE TO ASK MR. FALK TO MAYBE ADDRESS

19   THE COURT WITH RESPECT TO ALLOWING THIS MATTER TO BE CERTIFIED

20   TO TAKE TO THE NINTH CIRCUIT.                                        02:11

21         **THE COURT:**  VERY WELL.

22         **MR. NOLAN:**  THE BASIS FOR THAT, YOUR HONOR, IS THIS,

23   AND WE PUT THIS IN THE PAPERS.  WE ARE WELL DOWN THE ROAD IN

24   THIS TRIAL.  HOWEVER, MATTEL MADE A POINT IN ITS PAPERS ABOUT

25   IT WOULD LOSE ITS RIGHT TO APPEAL IF THEY WEREN'T ALLOWED TO         02:12

```
 1   FINISH THIS TRIAL.

 2           THE CONSEQUENCES THAT ARE FACING MR. LARIAN AND MGA

 3   IN THIS CASE ARE SUBSTANTIAL.  THEY ARE DIRE.

 4           THE COURT:  JUST FOR THE RECORD, THAT WAS THE LEAST

 5   PERSUASIVE OF MATTEL'S ARGUMENTS, FROM THE COURT'S PERSPECTIVE.   02:12

 6           MR. NOLAN:  BUT THAT'S THE ARGUMENT THAT WE THEN DID

 7   THE REVERSE ON, AND WE SAID ACTUALLY THE BURDEN IS ON US HERE.

 8           WE MAY NEVER GET A CHANCE, YOUR HONOR, TO HAVE THIS

 9   MATTER REVIEWED BY THE NINTH CIRCUIT.  IT'S JUST THE FACTS;

10   PRIVATE COMPANY; MATTEL HAS SO MANY RESOURCES; THE REALITIES OF   02:12

11   THE MARKETPLACE.

12           THE COURT:  LET ME HEAR THAT WHEN WE GET TO IT.

13           IS THERE ANYTHING FURTHER FROM MATTEL?

14           MR. QUINN:  NO, YOUR HONOR.  WE'RE PREPARED TO

15   SUBMIT.                                                          02:13

16           THE COURT:  THE MOTION FOR MISTRIAL IS DENIED.

17           I'LL AFFORD LEAVE TO HEAR FROM COUNSEL REGARDING

18   CERTIFICATION.

19           MR. FALK:  THANK YOU, YOUR HONOR.

20           I'VE LISTENED TO THE RULING AND I THINK I UNDERSTAND      02:13

21   IT AND IT POSES CERTAIN ISSUES.

22           IF I MAY INQUIRE, DOES THE COURT INTEND THE ORAL

23   STATEMENT TO BE THE RULING?  OR DID YOU PLAN ON --

24           THE COURT:  NO.  NOT AT ALL.  I'M GOING TO ISSUE A

25   VERY DETAILED WRITTEN OPINION WHICH WILL SET FORTH FURTHER        02:13
```

```
 1   FINDINGS, FURTHER ANALYSIS.  I WANTED TO GIVE THE PARTIES

 2   ENOUGH OF A SENSE, AND, QUITE FRANKLY, THE PUBLIC ENOUGH OF THE

 3   SENSE AS TO THE COURT'S THINKING AND WHERE I'M GOING.  BUT THIS

 4   IS AN IMPORTANT ENOUGH MATTER THAT I WILL CERTAINLY ISSUE

 5   DETAILED WRITTEN FINDINGS.                                        02:13

 6        MR. FALK:  I APPRECIATE THAT, YOUR HONOR.  I THINK IT

 7   WILL BE HELPFUL TO ALL OF US.

 8        DO YOU KNOW SORT OF APPROXIMATELY WHEN THAT --

 9        THE COURT:  AS SOON AS I CAN, COUNSEL.

10        MR. FALK:  I UNDERSTAND.                                     02:14

11        IT AFFECTS OUR TIMETABLE.  OBVIOUSLY, WE CAN'T SEEK

12   REVIEW UNTIL THE COURT HAS MADE ITS RULING.

13        THE COURT:  I UNDERSTAND THAT.

14        MR. FALK:  WE NEED A TRANSCRIPT AND WE NEED YOUR

15   ORDER.                                                            02:14

16        I CAN ASSURE YOU THAT ONCE WE HAVE THOSE THINGS, WE

17   WOULD MOVE VERY, VERY PROMPTLY TO FILE WHATEVER WE'RE GOING TO

18   FILE IN THE NINTH CIRCUIT.

19        YOUR HONOR, I DON'T THINK I NEED TO USE A LOT OF

20   RHETORIC TO SAY THAT WE THINK VERY IMPORTANT ISSUES ARE RAISED   02:14

21   HERE, AND THE FACT THAT YOUR HONOR DESCRIBED YOUR OWN

22   STRUGGLES, THAT IT OBVIOUSLY HAS CONSUMED --

23        THE COURT:  IT IS A VERY IMPORTANT ISSUE.

24        MR. FALK:  AND THERE ARE ACTUALLY A NUMBER OF ISSUES.

25   I TAKE IT -- AND I'LL OBVIOUSLY AWAIT YOUR ORDER -- THAT 606     02:14
```

1   ENDED UP NOT BEING DISPOSITIVE; THAT IS, YOU'VE CONSIDERED THE

2   EVIDENCE THAT YOU HAVE TAKEN IN CHAMBERS OF WHAT THE JURORS

3   SAID, AND THAT'S BEEN CONSIDERED BY YOU AS PART OF THE RULING

4   AND NOT EXCLUDED UNDER RULE 606; SO THAT SHORTENS THE LIST OF

5   ISSUES THAT WE WOULD WANT TO RAISE WITH THE NINTH CIRCUIT.   02:15

6        BUT I THINK YOUR RULING -- AND I COULD BE MORE

7   PRECISE ABOUT THIS WHEN WE HAVE THE ORDER -- BUT I THINK FROM

8   YOUR STATEMENT, I CAN IDENTIFY SEVERAL ISSUES OF CONSIDERABLE

9   IMPORTANCE WHICH ARE IN NEED OF SOME CLARIFICATION BY THE

10   APPELLATE COURTS AND WHICH ARE DISPOSITIVE OF THE FATE OF THIS   02:15

11   VERDICT.

12        ONE OF THEM IS WHERE YOU HAVE TEN JURORS WHO

13   DELIBERATE AND AGREE ON A VERDICT, DOES THE PRESENCE OF A

14   BIASED JUROR REQUIRE A RETRIAL OR MAY THE VOTE OF THE BIASED

15   JUROR BE EXCISED AND THE VERDICT OF THE TEN JURORS BE DEEMED TO   02:15

16   BE A VERDICT OF NINE WHERE THE COURT IS SATISFIED THAT THE

17   OTHER NINE WERE IMPARTIAL AND NOT PREJUDICED?

18       **THE COURT:**  COUNSEL, ARE YOU MOVING FOR CERTIFICATION

19   AT THIS POINT?

20       **MR. FALK:**  YES.  AND I'M TRYING TO IDENTIFY FOR YOU   02:16

21   AT LEAST THE PRINCIPAL ISSUES.  THERE MAY BE OTHERS.  BUT I

22   THINK YOU'RE ENTITLED TO KNOW WHAT ISSUES WE THINK MEET THE

23   1292(B) STANDARDS.

24        A SECOND ISSUE THAT COMES OUT OF YOUR ORAL RULING IS

25   WHETHER --   02:16

1          **MR. QUINN:**  YOUR HONOR, IF I MAY.

2          WOULD THIS BE DONE MORE APPROPRIATELY IN THE CONTEXT

3    OF AN APPLICATION FOR CERTIFICATION, SOMETHING THAT WE CAN THEN

4    RESPOND TO, RATHER THAN DOING IT OFF THE CUFF HERE?

5          **THE COURT:**  ALSO, I THINK YOU MAY BENEFIT FROM THE          02:16

6    COURT'S FINDINGS AND RULING BEFORE YOU MAKE YOUR MOTION.

7          **MR. FALK:**  I'D BE HAPPY TO PROCEED IN THAT WAY.  THE

8    ONLY CONCERN I HAVE IS THE TIME SENSITIVITY.

9          I WAS ALSO GOING TO REQUEST THAT YOUR HONOR STAY THE

10   TRIAL UNTIL WE HAVE HAD AN OPPORTUNITY --                            02:16

11         **THE COURT:**  THAT REQUEST WILL BE DENIED.  WE'RE

12   RESUMING WITH THE TRIAL AT 8:00 TOMORROW MORNING.

13         **MR. FALK:**  SO MY REQUEST FOR A STAY IS DENIED?

14         **THE COURT:**  YES.

15         **MR. FALK:**  I MAY NEED, THEN, TO --                         02:17

16         **THE COURT:**  WE HAVE TWO VERY SHORT WEEKS BEFORE THIS

17   COURT MUST BEGIN A CRIMINAL TRIAL.  WE WILL COMPLETE THIS TRIAL

18   BEFORE THOSE TWO WEEKS ARE UP.

19         THE COURT IS NOT GOING TO EXPECT COUNSEL -- THERE ARE

20   SEVERAL OTHER MOTIONS, EX-PARTE APPLICATIONS PENDING BEFORE         02:17

21   THIS COURT, RULINGS THE COURT NEEDS TO MAKE; I PLAN TO MAKE

22   THOSE AT 8:00 TOMORROW MORNING.  WE'LL RESUME WITH THE TRIAL AT

23   9:00 AFTER A BRIEF EXPLANATION TO THE JURY.

24         **MR. FALK:**  YOUR HONOR, IN THAT CASE, IT SEEMS TO ME

25   THAT I SHOULD PRESENT MY MOTION FOR CERTIFICATION TODAY,           02:17

monday, august 4, 2008                    motion for mistrial

1    BECAUSE THE TRAIN IS LEAVING TOMORROW.  IF THE NINTH CIRCUIT

2    BELIEVES THAT SHOULD NOT OCCUR, THE ONLY WAY WE CAN EFFECTIVELY

3    PROCEED IS TO PRESENT OUR PAPERS.

4            **THE COURT:**  I THINK COUNSEL'S POINT IS WELL TAKEN.

5    YOU SHOULD FILE AN APPLICATION FOR CERTIFICATION OF                    02:18

6    APPEALABILITY.  I WILL INVITE MATTEL TO FILE OPPOSITION AND THE

7    COURT WILL PROMPTLY ISSUE A RULING.

8            **MR. FALK:**  OKAY.  FAIR ENOUGH.

9            **THE COURT:**  THANK YOU, COUNSEL.

10           **MR. FALK:**  THANK YOU VERY MUCH, YOUR HONOR.               02:18

11           **THE COURT:**  VERY WELL.

12           COURT IS IN RECESS.

13           (PROCEEDINGS CONCLUDED.)

14

15

16

17                            CERTIFICATE

18

19   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
20   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript FALK format is in
21   conformance with the regulations of the judicial conference of
     the united states.

22

23   _____        _____

     THERESA A. LANZA, CSR, RPR                      Date
24   FEDERAL Official COURT Reporter

25