# EXHIBIT A

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 2 of 93   Page ID
#:180918
Case 2:04-cv-09049-SGL-RNB   Document 4443   Filed 12/03/2008   Page 1 of 11

O

1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        CENTRAL DISTRICT OF CALIFORNIA
10        EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| Plaintiff, | |
| vs. | ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

Case 2:04-cv-09049-DOC-RNB Document 5587-2 Filed 05/26/09 Page 3 of 93 Page ID
#:180920
Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 2 of 11

1

ORDER

2        Having considered Mattel, Inc.'s Motion for Permanent Injunction (the

3 "Motion"), the opposition thereto, and all other papers, evidence and arguments

4 submitted in connection therewith, as well as the evidence admitted at trial and the

5 jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion

6 against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA

7 Hong Kong"), and Isaac Larian ("Larian") (MGA, MGA Hong Kong, and Larian

8 are, collectively, "Defendants"), and hereby ORDERS as follows:

9        1.    MGA, MGA Hong Kong, and Larian, along with their respective

10 officers, directors, principals, agents, representatives, servants, employees, affiliates,

11 successors or assigns, and any person or entity acting on their behalf or in concert or

12 participation with them, are hereby PERMANENTLY ENJOINED from

13 manufacturing, procuring the manufacture of, making, producing, reproducing,

14 copying, distributing, transferring, displaying, marketing, advertising, shipping,

15 importing, exporting, licensing, offering to license, selling or offering to sell:

16        (a)    Any doll, product or other item that embodies or depicts in whole

17             or in part, or incorporates or uses in any manner, the head and/or

18             body sculpt shown in Exhibit 1 (sometimes known as the "core

19             Bratz fashion doll production sculpt"), which is incorporated

20             herein by this reference.

21        (b)    Any doll, product or other item that embodies or depicts in whole

22             or in part, or incorporates or uses in any manner, the head and/or

23             body sculpt shown in Exhibit 2 (sometimes known as the "Bratz

24             Movie sculpt"), which is incorporated herein by this reference.

25        (c)    Any doll shown in Exhibits 3 to 4, inclusive, which are

26             incorporated herein by this reference, except Cloe's younger

27             sister depicted at Exhibit 3, page 277; the younger version of

28             Yasmin depicted at Exhibit 3, page 278; and the younger Alicia

07209/2650992.1

**Exhibit A, p. 5**

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 4 of 93   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4443   Filed 12/03/2008   Page 3 of 11
#:180923

1      depicted at Exhibit 4, page 379, if those dolls are packaged

2      separately from a doll that includes a doll incorporating the core

3      Bratz fashion doll production sculpt or Bratz Movie sculpt

4      (Exhibits 1 and 2).

5   (d) Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive,

6      which are incorporated herein by this reference, except the dolls

7      depicted at Exhibit 5, pages 551 through 555, inclusive, and the

8      dolls depicted at Exhibit 6, pages 556, 557, 558, and 565.

9   (e) Any product, packaging or other item that embodies or depicts in

10      whole or in part, or incorporates or uses in any manner, the

11      artwork shown on the packaging set forth in Exhibit 7, which is

12      incorporated herein by this reference.

13   (f) Any doll, product, packaging or other item that embodies or

14      depicts in whole or in part, or incorporates or uses in any

15      manner, any of the Jade, Cloe, Yasmin and Sasha Bratz

16      characters, including without limitation the items shown in

17      Exhibits 3 and 5, which are incorporated herein by this reference.

18   (g) Any marketing or advertising materials that embody or depict in

19      whole or in part, or incorporate or use in any manner, any of the

20      dolls, products, items or other matter described in paragraphs (a)

21      through (f) above, including without limitation the marketing or

22      advertising materials shown in Exhibits 8 (screen captures from

23      television commercials) to 9 (print advertisements depicting any

24      dolls incorporating the core Bratz fashion doll production sculpt

25      or Bratz Movie sculpt (Exhibits 1 and 2), inclusive, which are

26      incorporated herein by this reference.

27   (h) Any doll, product, packaging, advertising or other item or

28      materials that counterfeits, copies or is substantially similar to

1                Mattel's copyright protected head and/or body sculpt shown in

2                Exhibit 10, which is incorporated herein by this reference,

3                including without limitation the Bratz fashion dolls known as

4                Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna,

5                Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee,

6                Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora,

7                Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya,

8                Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and

9                all other dolls employing a sculpt which is substantially similar

10              to Exhibit 10.

11       (i)    Any doll, product, packaging, advertising or other item or

12              materials that embodies or depicts in whole or in part, or

13              incorporates or uses in any manner, any of the Jade, Cloe,

14              Yasmin and Sasha Bratz characters depicted or described in

15              Exhibit 11, which is incorporated herein by this reference; and

16       (j)    Any doll, product, packaging, advertising or other item or

17              materials that counterfeit, copy or are substantially similar to

18              Mattel's Bratz-related copyrighted works, including without

19              limitation such works in Exhibits 11 and 12, inclusive, which are

20              incorporated herein by this reference.

21       2.    MGA, MGA Hong Kong, and Larian, along with their respective

22 officers, directors, principals, agents, representatives, servants, employees, affiliates,

23 successors or assigns, and any person or entity acting on their behalf or in concert or

24 participation with them, are further hereby PERMANENTLY ENJOINED from

25 engaging in any of the following acts:

26       (a)    Copying, imitating, selling, offering to sell, marketing,

27              distributing, importing, displaying or making any use of the

28

1          copyrighted works shown in Exhibits 10 to 12, inclusive, which

2          works are owned by Mattel.

3      (b)   Engaging in any and all further acts of infringement of the

4          copyrighted works shown in Exhibits 10 to 12, inclusive, which

5          works are owned by Mattel.

6      (c)   Asserting any ownership of rights or any right, title or interest in

7          the copyrighted works shown in Exhibits 10 to 12, inclusive,

8          which works are owned by Mattel.

9      (d)   Transferring, disposing of, destroying, spoliating or secreting any

10         documents, records, recordings or materials, whether in

11         electronic or non-electronic form, that evidence, relate to or

12         pertain to any aspect of the dolls, products, packaging, items or

13         other materials referred to in paragraphs 1(a) through 1(k) above,

14         inclusive, including without limitation any and all agreements,

15         contracts, correspondence, communications, invoices, purchase

16         orders, sales orders, manufacturing records, import or export

17         records, sales records, ledgers, inventory records and shipping

18         records relating thereto.

19      (e)   Transferring, disposing of, destroying, spoliating or secreting any

20         documents, records, recordings or material, whether in electronic

21         or non-electronic form, that in any manner evidence, relate to or

22         pertain to any products, services or activities using or displaying

23         any simulation, counterfeit, reproduction or copy of, or are

24         derived from, Mattel's copyrighted works shown in Exhibits 10

25         to 12, inclusive, which are incorporated herein by this reference.

26      (f)   Transferring, disposing of, destroying, spoliating, secreting or

27         exporting any products, product packaging, labels, signs, prints,

28         dies, wrappers, receptacles, advertisements or any other tangible

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 7 of 93   Page ID
#:180243
Case 2:04-cv-09049-SGL-RNB   Document 4243   Filed 12/03/2008   Page 6 of 11

1          items (including without limitation computer files) that in any

2          manner utilize, contain, evidence, reproduce, display, or relate to

3          any simulation, counterfeit, reproduction or copy of, or are

4          derived from, (i) the dolls, products, packaging, items or other

5          materials referred to in paragraphs 1(a) through 1(k) above,

6          inclusive, or (ii) Mattel's copyrighted works shown in Exhibits

7          10 to 12, inclusive, which are incorporated herein by this

8          reference.

9      (g)  Transferring, disposing of, destroying, spoliating, secreting or

10          exporting any plates, molds, matrices, and other means of

11          making or manufacturing (i) the dolls, products, packaging,

12          items or other materials referred to in paragraphs 1(a) through

13          1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy,

14          substantially similar likeness, or derivative of Mattel's

15          copyrighted works shown in Exhibits 10 to 12, inclusive.

16     (h)  Assisting, aiding or abetting any other entity or person in

17          engaging in or performing any of the activities referred to in

18          paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a)

19          through 2(h), inclusive.

20     3.   At Defendants' expense, Defendants shall deliver to Mattel's

21  counsel for impoundment, at such location in the Central District of California as

22  Mattel's counsel may direct, all dolls, products, product packaging, labels, signs,

23  prints, dies, wrappers, receptacles and advertisements, in the direct or indirect

24  possession, custody or control of Defendants, their officers, directors, principals,

25  agents, servants, employees, successors or assigns, or any person or entity acting on

26  their behalf or in concert or participation with them, that are referred to in

27  paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h),

28

1   inclusive, together with all plates, molds, matrices and other means of making the

2   same. Mattel's counsel is hereby appointed substitute custodian for all such items.

3         4.     Defendants are hereby ORDERED to procure the return, and to

4   withdraw and recall, from any and all channels of trade and distribution, including

5   without limitation from retail shelves and from on-line retailers, all of the dolls and

6   doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in

7   paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such

8   dolls and doll products, Defendants shall refund all monies paid by each entity or

9   person in connection with such dolls and doll products and shall reimburse each

10   such entity or person for all associated shipping charges.

11         5.     Defendants shall hand serve upon Mattel's counsel a declaration,

12   made under oath, that sets forth fully and completely the following information: (a)

13   the identity of each and every doll, product, package or other item manufactured,

14   marketed, displayed, distributed, imported, exported, sold or offered for sale by or

15   for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or

16   in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package

17   or other item, the number of units manufactured, marketed, displayed, distributed,

18   shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for

19   each unit of each such doll, product, package or other item, the purchaser, transferee

20   or recipient of each such unit(s), the quantities acquired by such purchaser,

21   transferee or recipient and complete contact information (including limitation the

22   address, telephone number, fax number and email address where known) for each

23   such purchaser, transferee or recipient; (d) for each unit of such doll, product,

24   package or other item, the current or last known location of each such unit,

25   including without limitation the location of all such dolls, products, package or other

26   items in Defendant's inventory; and (v) for each person or entity to whom or which

27   Defendants have promoted, advertised, marketed or offered to sell any doll, product,

28   package or other item that is the subject of this Order, the identity of, and complete

1 contact information for (including limitation the address, telephone number, fax
2 number and email address where known), each such person or entity.

3    6.    At Defendants' expense, Defendants shall make written contact
4 (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler,
5 importer, exporter, customer, licensee or any other person and entity to or through
6 whom Defendants have shipped, transferred, imported, exported or sold any doll,
7 product or other item that is the subject of this Order; and (ii) each retailer,
8 distributor, wholesaler, licensee, potential licensee, customer, potential customer or
9 any other person and entity who Defendants have contacted (whether by mail,
10 electronic mail, orally or otherwise) within the past ninety (90) days in marketing,
11 promoting or advertising any doll, product or other item that is the subject of this
12 Order, and shall provide each such person and entity with a copy of this Order and
13 with a verbatim copy of the following notice, in legible and conspicuous print, in its
14 entirety (hereinafter, the "Notice"):

15                    NOTICE PUBLISHED PURSUANT TO

16           ORDER OF THE UNITED STATES DISTRICT COURT

17          YOU ARE HEREBY ADVISED as follows:

18          Recently you may have bought, seen, or been contacted regarding, the
19          sale of Bratz dolls or other Bratz products.

20          Pursuant to the rulings of the United States District Court, Mattel is the
21          owner of Bratz-related copyrights that are infringed by Bratz dolls,
22          products and packaging manufactured by or for MGA.

23          The Court has ordered MGA to immediately cease any further
24          manufacture, sale, promotion, shipment or distribution of Bratz dolls,
            products and packaging.
25
26          In addition, the Court has ordered that Bratz dolls must be returned
            immediately to the following address: MGA Entertainment, Inc., Attn:
27          Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA
28          91406.

07209/2650992.1

-8-

**Exhibit A, p. 11**

1
2          MGA will refund to you all monies paid by you for these dolls and
           reimburse you for all associated shipping charges.
3
4          7.     At Defendants' expense, Defendants shall post in legible and
5   conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6,
6   above, upon the home page of MGA's web site at www.mgae.com beginning within
7   twenty-four hours of receipt of notice of this Order and continuing for a period of no
8   less than one hundred and twenty (120) days.

9          8.     Defendants, and any person or entity acting on their behalf or in
10  concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2
11  of this Order immediately, shall fully comply with Paragraph 6 of this Order within
12  two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5
13  of this Order within seven (7) calendar days of the date of this Order and shall fully
14  comply with Paragraphs 3 and 4 of this Order within thirty (30) days of this Order.
15  In the event that any additional doll, product or item that is the subject of this Order
16  subsequently is delivered to or comes within the direct or indirect possession,
17  custody or control of Defendants, Defendants shall deliver such additional doll,
18  product or item to Mattel's counsel within two (2) calendar days in accordance with
19  the terms of Paragraph 3, above.

20         9.     Within forty (40) calendar days of the date of this Order,
21  Defendants shall file with the Court, and personally serve on counsel for Mattel, a
22  report in writing under oath setting forth the actions taken to comply with the terms
23  herein pursuant to 15 U.S.C. § 1116(a). Such Report shall have appended to it
24  complete, true and accurate copies of each communication ordered to be sent
25  pursuant to Paragraph 6 of this Order.

26         10.    Pursuant to Federal Rule of Civil Procedure 53, the Court hereby
27  appoints a special master to supervise implementation of the requirements of this
28  Order (the "Special Master").

-9-
ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

**Exhibit A, p. 12**

Case 2:04-cv-09049-DOC-RNB Document 5587-2 Filed 05/26/09 Page 11 of 93 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 10 of 11
#:180028

1        11.    Any and all disputes arising out of this Order and/or motions or

2    applications seeking to enforce the terms of this Order shall be presented to the

3    Special Master for resolution in the first instance, once the Special Master is

4    appointed. The Special Master shall have the authority to set the time, place and

5    manner of hearings and other proceedings he or she will conduct; to preside over

6    hearings, whether telephonic or in person; to take evidence in connection with

7    disputes before the Special Master; to make inspections in connection with the

8    requirements of this Order, including inspections of Defendants' facilities and

9    warehouses; to issue orders resolving motions, applications and matters arising out

10   of this Order and/or seeking to enforce the terms of this Order; to issue orders

11   awarding non-contempt sanctions, including, without limitation, the award of

12   attorney's fees; and to issue reports and recommendations on matters for which the

13   Special Master lacks jurisdiction to issue an order, including, without limitation,

14   reports and recommendations regarding contempt sanctions. In addition to any

15   other filing procedures the Special Master may permit, the Special Master shall

16   permit the filing of *ex parte* applications to enforce the terms of this Order, which

17   must be heard and adjudicated within ten (10) calendar days of filing. A party may

18   bring an *ex parte* application for relief pursuant to this provision only upon

19   certifying, as an officer of the Court, that such expedited adjudication is required

20   and could not be avoided in due course. The parties shall file with this Court,

21   contemporaneously, the original of all submissions made to the Special Master such

22   that the Court's Docket shall be complete and include all pertinent submissions.

23   Third parties shall be bound by the Special Master's orders to the same extent as

24   Orders of this Court.

25       12.    The Special Master's orders, reports and recommendations shall

26   be treated as rulings made by a Magistrate Judge of this Court and may be reviewed

27   in the same manner and pursuant to the same procedures as this Court reviews such

28   orders, reports and recommendations of a Magistrate Judge. A court reporter shall

Exhibit A, p. 13

1 | transcribe all hearings and proceedings held before the Special Master. The Special

2 | Master's fees, and other costs incurred in connection with proceedings before the

3 | Special Master, including the fees of court reporters, shall be paid one-half by

4 | Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the

5 | Federal Rules of Civil Procedure, the Special Master orders otherwise. The Special

6 | Master shall not have *ex parte* communications with a party or counsel.

7 |       13.    The Special Master shall be authorized to receive information

8 | designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES

9 | ONLY" pursuant to the protective order dated January 4, 2005.

10 |       14.    This Court shall have jurisdiction to interpret and enforce the

11 | terms of this Permanent Injunction and to determine any issues which may arise

12 | concerning this Permanent Injunction.

13 |       **IT IS SO ORDERED**.

14 | DATED: December 03, 2008

         Hon. Stephen G. Larson
         United States District Judge

07209/2650992.1

-11-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

**Exhibit A, p. 14**

# EXHIBIT B

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           Consolidated with
12              Plaintiff,                  Case Nos. CV 04-09059 & CV 05-2727

13       vs.
                                           ORDER GRANTING DECLARATORY
14  MATTEL, INC., a Delaware               JUDGMENT
    corporation,
15
                Defendant.
16  _____

17  AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

O

[PROPOSED] ORDER

Exhibit B, p. 15

Case 2:04-cv-09049-DOC-RNB Document 5587-2 Filed 05/26/09 Page 15 of 93 Page ID
#:180202
Case 2:04-cv-09049-SGL-RNB Document 4742 Filed 12/03/2008 Page 2 of 5

1                                    ORDER

2

3       1.      The Court hereby DECLARES that Mattel owns all right, title and

4  interest, including any and all copyright rights, in and to the Bratz-related works,

5  ideas, and concepts that Carter Bryant conceived or created while employed by

6  Mattel, as found by the jury in this case, including the idea for the name "Bratz" and

7  the idea for the "Bratz" characters, which are protectible property interests as a

8  matter of California state law, and the following works (identified by Trial Exhibit

9  (TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 16 of 93  Page ID
#:190232
Case 2:04-cv-09049-SGL-RNB    Document 4442    Filed 12/03/2008    Page 3 of 5

| | |
|---|---|
| 1 | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| 2 | TX 5-63, 758, 759, 760 |
| 3 | TX 5-64, 62-6, 795, 1152-14, 1750 |
| 4 | TX 5-65, 1152-7, 1152-8, 11789 |
| 5 | TX 5-66, 794, 1152-13 |
| 6 | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| 7 | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| 8 | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| 9 | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| 10 | TX 5-73, 741, 742 |
| 11 | TX 5-76, 706 |
| 12 | TX 5-77, 707 |
| 13 | TX 5-78, 10539, 18501 |
| 14 | TX 5-136, 711 |
| 15 | TX 10579, 18281 |
| 16 | TX 15172 |
| 17 | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| 18 | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| 19 | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| 20 | TX 3-5, 791, 1-8, 2-2 |
| 21 | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| 22 | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| 23 | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| 24 | TX 3-10, 735, 736 |
| 25 | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| 26 | TX 3-13, 793, 1-5, 2-3, 10-3 |
| 27 | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| 28 | TX 1-2 |
| | TX 3-11, |

[PROPOSED] ORDER

Exhibit B, p. 17

| |
|---|
| TX 5-26, 712 |
| TX 5-27, 713 |
| TX 5-81, 720 |
| TX 5-82, 715 |
| TX 5-83, 723 |
| TX 3-4, 5-84, 716, 717 |
| TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| TX 5-80, 721, 722, 5-86 |
| TX 5-87, 5-108, 724, 725 |
| TX 5-34 |
| TX 5-89, 35-2, 323-32, 323-33 |
| TX 1107, 10638 |
| TX 1108, 10639 |
| TX 1109, 771 |
| TX 1110, 773 |
| TX 5-14, 10515 |
| TX 5-18, 10518 |
| TX 5-19, 10519 |
| TX 5-28, 10526 |
| TX 5-30 |
| TX 5-95 |
| TX 5-96 |
| TX 5-99 |
| TX 323-18 |
| TX 323-19 |
| TX 323-26 |
| TX 1136 |
| The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

07209/2641997.3

-4-

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 18 of 93  Page ID
#:180085
Case 2:04-cv-09049-SGL-RNB  Document 4442  Filed 12/03/2008  Page 5 of 5

1    2.    The Court further hereby DECLARES that MGA Entertainment Inc.

2 ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do

3 not have any right, title or interest in or to the works, ideas and/or concepts listed

4 above. Any purported assignment from Carter Bryant to MGA of the rights to the

5 works, ideas or concepts listed above, including any purported assignment of such

6 rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,

7 2000, was invalid, ineffectual and void ab initio.

8    3.    In addition, the Court hereby ORDERS that all copyright registrations

9 MGA has obtained in and for the Bratz works listed above, including Registration

10 Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-

11 218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491

12 (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have

13 been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such

14 registrations.

15    4.    The Court further hereby ORDERS that all Bratz-related works listed

16 in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that

17 Defendants shall deliver the originals of such works to Mattel forthwith.

18          IT IS SO ORDERED.

19

20

21 DATED:  December 3, 2008

22                        Hon. Stephen G. Larson
                           United States District Judge

23

24

25

26

27

28

# EXHIBIT C

O

1

2

3

4

5

6

7

8       UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA

10      EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) Consolidated with |
| 12         Plaintiff, | Case Nos. CV 04-09059 & CV 05-2727 |
| 13     vs. | |
| 14  MATTEL, INC., a Delaware corporation, | **ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF CODE § 17200** |
| 15 | |
| 16         Defendant. | |
| 17  AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

**Exhibit C, p. 20**

1

## ORDER

2          Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive
3    Trust and for a Finding of Liability and Injunctive Relief Pursuant to <u>California
4    Business & Professional Code</u> § 17200, and all other papers and arguments
5    submitted in connection therewith, as well as the evidence admitted at trial and the
6    jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against
7    MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong
8    Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

9          1.    A constructive trust in favor of Mattel on all rights to trademarks,
10   service marks and domain names held by MGA or Larian, or any person or entity
11   acting on their behalf or for their benefit, anywhere in the world that include the
12   terms "Bratz" or "Jade," including all such trademark registrations and trademark
13   applications (including, without limitation, United States Trademark Registrations
14   identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465,
15   3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614,
16   2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942,
17   2789216 and 2836780 and United States Trademark Applications identified by
18   Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100,
19   78490324, 77443372 and 77575881), and the good will inhering therein, as well as
20   all such domain name registrations, is HEREBY ORDERED and all rights therein
21   are ORDERED transferred to Mattel.

22         2.    MGA and Larian are HEREBY ORDERED to (a) identify all
23   trademark registrations and applications held by them, or any person or entity acting
24   on their behalf or for their benefit, anywhere in the world that include the terms
25   "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in
26   which they, or any person or entity acting on their behalf or for their benefit, claim
27   to own trademark rights, whether or not such marks are subject to existing
28   trademark registrations or pending trademark applications, (c) identify all domain

07209/2649025.3

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 22 of 93   Page ID
#:190291
Case 2:04-cv-09049-SGL-RNB   Document 4441   Filed 12/03/2008   Page 3 of 3

1   names and domain name registrations held by them, or any person or entity acting
2   on their behalf or for their benefit, anywhere in the world that include the terms
3   "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4   transfer and/or assignment of such marks and domain names and associated
5   applications and registrations to Mattel. MGA shall fully comply with (a), (b) and
6   (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7         3.    The Court HEREBY FINDS that the MGA Defendants violated
8   California Business and Professions Code § 17200 and are liable to Mattel on its
9   twelfth claim for relief for unfair competition.

10         4.    The MGA Defendants, along with their respective officers,
11   directors, principals, agents, representatives, servants, employees, affiliates,
12   successors or assigns, and any person or entity acting on their behalf or in concert or
13   participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14   using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15   trademark, domain name or otherwise, in connection with the manufacture,
16   promotion, advertising, distribution, offering for sale or sale of any goods or
17   services anywhere in the world and (b) taking any action to preclude Mattel from
18   using the terms "Bratz" or "Jade" in any such manner, including without limitation
19   as a mark in connection with goods and services.

20         **IT IS SO ORDERED.**
21
22   DATED:  December 3, 2008
23                              Hon. Stephen G. Larson
                                United States District Judge
24
25
26
27
28

# EXHIBIT D

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 24 of 93   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 1 of 17
#:180043

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        James Holmes                              None Present
        Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                        1

Exhibit D, p. 23

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL – GEN                          2

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 26 of 93   Page ID
#:180043
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver.  As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004).  The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable.  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties.  The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004.  MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties.").  Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

MINUTES FORM 90                                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                               3

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 27 of 93   Page ID
#:180044
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 4 of 17

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

Exhibit D, p. 26

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]   The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

Exhibit D, p. 27

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.   Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90                                                     Initials of Deputy Clerk: jh
CIVIL -- GEN                                    6

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.  § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

Initials of Deputy Clerk: jh

Exhibit D, p. 29

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV. Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                          8

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN                                        9                          Initials of Deputy Clerk: jh

Exhibit D, p. 31

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money.  You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products.  And the jury has put that cap for
> us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences – both of which would lead the Court to the same conclusion – were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

Exhibit D, p. 32

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN
Initials of Deputy Clerk: jh

that hundreds of the MGA parties' products – including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

Exhibit D, p. 34

> plaintiff meets the burden of proving irreparable harm by making this
> two-part showing. And finally, the two-part test does not represent a
> rule [prohibited by eBay] that an injunction automatically follows a
> determination that a copyright has been infringed. . . . In exercising
> their equitable discretion, courts would still have the freedom to deny
> injunctive relief when the public interest or the balance of hardships
> weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright.*" 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.   Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.   Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

MINUTES FORM 90                                                       Initials of Deputy Clerk: jh
CIVIL -- GEN                              13

Exhibit D, p. 35

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern. However, there is also a strong public
interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law. Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement. The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them. Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little. In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]    No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

Exhibit D, p. 36

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

Exhibit D, p. 37

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

### IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk: jh

# EXHIBIT E

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: January 7, 2009

Title:   MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=================================================================================
PRESENT: HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Jim Holmes                          None Present
          Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:   **ORDER MODIFYING STAY OF PERMANENT INJUNCTION**

**ORDER APPOINTING FORENSIC AUDITOR**

After an initial hearing on December 30, 2008, and a sealed hearing on January 5, 2009,
and after consideration of the parties' papers relating to the MGA parties' motion for stay pending
appeal (which specific relief the Court denied for the reasons stated on the record), and after
consideration of the parties' papers relating to Mattel's ex parte application to appoint a receiver,
the Court issues the following Order modifying the stay set forth in the Court's December 3, 2008,
Order, and appointing a forensic auditor.

**MODIFYING STAY OF PERMANENT INJUNCTION**

Notwithstanding any previous Order of the Court, the December 3, 2008, Order Granting
Mattel, Inc.'s Motion for Permanent Injunction (docket #4439), shall remain **STAYED**, ineffective
and non-final, until further order of the Court. Specifically, retailers and distributors will be
permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from
MGA and MGA licensees, up to and including December 31, 2009.

In the event that the Court awards control over the rights to the Bratz products referenced in
the Court's December 3, 2008, Order and the January 7, 2009 Stipulation and Order (regarding

MINUTES FORM 90                                    Initials of Deputy Clerk __jh_____
CIVIL -- GEN                              1

the Spring and Fall 2009 lines) to a Court-appointed receiver or to Mattel, Inc., that award will be subject to a requirement that retailers and distributors be permitted to purchase the Spring and Fall 2009 lines up to and including December 31, 2009.

## APPOINTMENT OF FORENSIC AUDITOR

As discussed on the record, the Court **HOLDS IN ABEYANCE** Mattel's ex parte application for appointment of a receiver pending a forensic audit of MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment Hong Kong.

For good cause shown, the Court hereby **APPOINTS** Ronald L. Durkin to serve as the Court's forensic auditor (hereinafter referred to as "the Auditor"). Mr. Durkin's qualifications appear in an attachment to this Order. The Court has provided the Auditor with the parties' attorneys' contact information. The Auditor shall direct his initial communications to counsel.

Defendants MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment Hong Kong, shall provide the Auditor with access to any and all MGA records, regardless of the medium or media of the maintenance of those records, **including but not limited to the "Document/Information Request List" attached to this Order,** that the Auditor deems necessary to enable him to provide the Court with a report, in camera, regarding MGA's finances sufficient to enable the Court to determine whether or not appointment of a receiver is warranted. The audit shall extend to any and all related entities as the Auditor deems necessary. Defendants shall also make available for interview individuals identified to them by the Auditor. Defendants shall make its computer systems, physical premises, and offices, available to the Auditor upon his reasonable request during normal business hours. Defendants shall permit the Auditor's reasonable use of its office machines, such as copiers and fax machines, as may be necessary to complete the audit.

The Auditor shall have the authority to seek the services of fellow professionals (as well as para-professionals and support staff) necessary to accomplish the Court-appointed audit. The provisions of this Order extend to the Auditor's delegatees as he so directs. The Auditor and his delegatees shall be compensated at their reasonable customary hourly rates.

The expense of the forensic audit shall be borne, in the first instance, by Mattel. After the Court considers the Auditor's report[s], the Court will consider whether the audit expenses should be shared with, or shifted completely to, defendants, based on the equities. The Auditor and his team shall submit periodic billing statements to Mattel to an address specified by Mattel's counsel.

All parties (and individuals and entities under their control) shall cooperate with the Auditor so that he may report to the Court in an expeditious manner.

### IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____

**FORENSIC AUDITOR**
**DOCUMENT/INFORMATION REQUEST LIST**
**January 7, 2009**

1.    Audited financial statements for the last three years.  If audited financial statements are not available, then the most current draft of financial statements for the last three years.

2.    Quarterly financial statements for the last three years.

3.    Detailed electronic monthly general ledgers and trial balances for the last three years. If electronic files are not available, then please produce in hard copies.

4.    Detailed electronic revenue or sales subsidiary ledgers for the last three years.  If electronic files are not available, then please produce the request in hard copies.

5.    Detailed electronic receipts or cash subsidiary ledgers for the last three years.  If electronic files are not available, then please produce in hard copies.

6.    Detailed electronic accounts payables and disbursements subsidiary ledgers for the last three years.  Details should include, but should not be limited to, vendor/payee ID, vendor/payee name, check/payment number, payment date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), payment amount, currency indicator (if other than US dollars), foreign exchange rate (if other than US dollars), invoice number, invoice date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), invoice amount, comment or description, and any other information contained in the file. If electronic files are not available, then please produce in hard copies.

7.    Detailed electronic vendor master files of all active and inactive vendors for the last three years.  Details should include, but should not be limited to, vendor ID, vendor name, status (active/inactive), vendor address (including City, State, Zip, Country), date created, created by user ID.  If electronic files are not available, then please produce in hard copies.

8.    Detailed electronic payroll files for the last three years.  Details should include, but not be limited to, employee ID, employee name, payment date, payment number, deductions (e.g. tax, contributions, etc.), gross payment amount, net payment amount, and any other information contained in the file. If electronic files are not available, then please produce in hard copies.

9.    Any and all records that substantiate transfers of assets to other entities, individuals, and/or parties, within the US and outside of the US.

10.    Copies of all bank statements, canceled checks, wire instructions, and all other information and notices sent with bank statements for the last three years.

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____

11. Federal and state tax returns for the last three years.

12. A summary of all contributions, loans and any sources of funding during the last twelve months. Copies of agreements and/or contracts supporting these transactions.

13. A summary of all related party transactions detailing any compensation, loans, advances, payments, fees or any other form of consideration paid to Isaac Larian, family members, or affiliates, or any other related party.

14. Detail of all loan facilities with an indication of creditor and relevant terms.

15. Copies of any notices from federal or state tax authorities regarding audits or audit adjustments during the last 3 years.

16. All detailed corporate credit card statements for the last three years. If electronic files are not available, then please produce in hard copies.

17. Information and documents regarding expense reimbursement of owners, officers, employees, family members, or affiliates.

18. Detailed human resources files (electronic) of all employee information (for all current and terminated employees to date) including but not limited to employee name, employee number, address, phone number, start date, termination date, status, position, social security number, and any other information contained in the files. If electronic files are not available, then please produce in hard copies.

19. Electronic files of all emails including attachments to the emails from the network server and from backup tapes (please identify dates of backup tapes in order for selection of time period).

20. Forensic images of personal computer hard drives and PDAs of selected individuals.

Exhibit E, p. 43





**Ronald L. Durkin**
CPA/CFF, CFE, CIRA

### Senior Managing Director

619 481 5201

rdurkin@durkinforensic.com

701 B Street Suite 1310
San Diego, CA 92101

Ronald L. Durkin is a CPA with over 30 years combined experience in public accounting and as a Special Agent with the FBI. He has testified in accounting, financial, and bankruptcy matters in U.S. District Court, U.S. Bankruptcy Court, U.S. Tax Court and in various State courts. During his tenure with the FBI, Ron was responsible for investigations involving white collar crime, political and public corruption, money laundering, organized crime, labor racketeering, racketeer-influenced and corrupt organization statute (RICO) violations, and narcotics matters. Since leaving the FBI, he has assisted clients in matters involving fraud prevention, detection, and internal investigations. He has worked on cases involving Foreign Corrupt Practices Act, employee embezzlement, management fraud, financial statement fraud, conflict-of-interest, check kiting, bankruptcy fraud, money laundering, and Ponzi schemes.

In 2008 Ron retired from KPMG. While at KPMG, Ron was the National Partner in Charge of the Fraud and Misconduct Investigations practice and served as the Western Region's forensic practice leader as well as the office coordinating partner for the Los Angeles office's forensic practice.



## Service Lines

Fraud & Misconduct Investigations
Fraud Risk Management
Forensic in the Audit/Shadow Procedures

## Education and Certifications

Bachelor of Science, Accounting,
California State University, Sacramento

Masters of Business Administration
(Emphasis in Accounting), California
State University, Sacramento

Certified Public Accountant,
licensed in California, Arizona,
Nevada, and Washington

Certified in Financial Forensics

Certified Fraud Examiner

Certified Insolvency and
Restructuring Advisor

He is a frequent speaker at the FBI Academy and at the AICPA National Fraud Conference, California and other State CPA Societies, and he has made presentations to the IRS Criminal Investigative Division and the U.S. Postal Inspectors CPA seminars. He is a member of the AICPA National Accreditation Commission and a former member of the Business Valuation and Forensic Litigation Services Executive Committee. He is the former chair of the AICPA Anti-Fraud Programs and Controls Task Force and past chair of the AICPA Litigation and Dispute Resolution Services Subcommittee. Ron is also the Chair of the California Society of CPA's Litigation Services Steering Committee and the past Chair of the California Society of CPAs Fraud Section.

Ron was a 2003 AICPA Volunteer of the Year. Ron was also honored with the Distinguished Achievement Award by the AICPA in 2006 for his long time commitment to the AICPA. In 2007, Ron was awarded the first-ever FLS Lifetime Achievement Award by the AICPA.

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 48 of 93   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4657   Filed 01/07/2009   Page 7 of 10
#:180065



## Professional Associations

American Institute of Certified Public
Accountants (Immediate Past Chair of
Litigation & Dispute Resolution Services
Subcommittee) – member since 1995

California Society of Certified Public
Accountants (member of Steering Com-
mittee for statewide Litigation Services
Sections and Chair of Fraud Section)

Association of Certified Fraud Examiners
(Member of Faculty since 1995)

Association of Insolvency and
Restructuring Advisors

Society of Former Special Agents
of the FBI

Institute of Internal Auditors

## Investigative and
## Integrity Advisory Experience

On an International level, he has worked on a number of mat-
ters involving alleged Foreign Corrupt Practices Act (FCPA)
violations. Working on behalf of U.S. based companies, Ron in-
vestigated allegations that members of management of foreign
subsidiaries were involved in either bribing foreign officials, di-
verting corporate opportunities and funds, or conspiring with
others to defraud U.S. based victims.

Conducted an investigation of certain allegations of political
and public corruption surrounding an international sporting
event that was to be held in the US. The allegations involved
FCPA, bribery, and public corruption.

Conducted an investigation of an alleged kickback scheme on the
part of a purchasing manager of a global technology company.

Conducted an internal investigation with a multi-national corpo-
ration regarding corruption involving a former manager in the
accounts receivable department. The case was referred to the
United States Attorney's Office and the FBI for prosecution.



Conducted an internal investigation, on behalf of a publicly traded company, regarding alleged diversion of funds with the accounts payable department. The case was referred to the United States Attorney's Office and the FBI for prosecution.

Investigated allegations of fraud in the real estate industry, including new construction projects, as well as management and operation of office buildings, apartment buildings and shopping centers.

Investigated allegations of corruption by certain members of a County Board of Supervisors who were indicted by a Federal Grand Jury.

Served as an undercover agent in a case involving 35 State Court judges who were indicted and convicted of public corruption.

Conducted a number of investigations of cases involving Pyramid and Ponzi schemes. He also has testified in U.S. District Court, State Court, and Bankruptcy Court in several of these cases.

During career with the FBI and as a bankruptcy trustee, investigated allegations of fraud, corruption and organized crime within the solid waste industry.

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 50 of 93   Page ID
#:180057
Case 2:04-cv-09049-SGL-RNB   Document 4657   Filed 01/07/2009   Page 9 of 10



As the Chapter 11 Trustee of two failed insurance agencies, he conducted investigations into allegations of fraud and mis-management on the part of senior management.

As a Chapter 7 Trustee, Chapter 11 Trustee, and Examiner in bankruptcy matters, has conducted hundreds of investigations where allegations of fraud have been alleged.

Served as a "keeper" for the Department of Corporations, investigated a State securities fraud matter.

Served as trustee of the parent of one of the largest financial institutions in California where securities fraud and other ac-tions were alleged against senior management.



## Publications

One of the principal authors of the AICPA Practice Aid 07-1 – "Forensic Accounting – Fraud Investigations" (2007)

Chair of the AICPA Forensic Procedures Task Force responsible for the writing of the "Forensic Procedures and Specialists: Useful Tools and Techniques" – AICPA Special Report, 2006

Chair of the AICPA Antifraud Programs and Controls Task Force responsible for the writing of "Management Override of Internal Controls: The Achilles' Heel of Fraud Prevention" – AICPA Practice Aid, 2005

Principal author – AICPA Technical Consulting Practice Aid 97-1 "Fraud Investigations in Litigation and Dispute Resolution Services"

Co-author – California Society of CPA "The Witness Chair" – SAS 99 – Is It Enough To Help Close the Expectation Chasm? (2003)

Author – "A Systematic Approach to Fraud Investigation" – The CPA Expert, Spring 2000 (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Co-author – "Defining the Practice of Forensic Accounting" The CPA Expert, 1999 Special Issue (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Contributing and Reviewing author to Guide to Fraud Investigations published by Practitioners Publishing Company

Contributing author to Handbook of Litigation Services for John Wiley and Sons. The chapter written by Mr. Durkin is entitled "Criminal Cases and the Investigative Accountant."

Book review of Investigating White Collar Crime: Embezzlement and Financial Fraud for "CPA Management Consultant".

# EXHIBIT F

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 53 of 93  Page ID
#:190670
Case 2:04-cv-09049-SGL-RNB  Document 5273  Filed 04/27/2009  Page 1 of 25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                      None Present
        Courtroom Deputy                 Court Reporter

ATTORNEYS PRESENT FOR               ATTORNEYS PRESENT FOR
PLAINTIFFS:                         DEFENDANTS:

None Present                        None Present

**PROCEEDINGS:   ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
                 MATTER OF LAW (DOCKET #4498)**

                 **ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                 MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
                 #4496)**

                 **ORDER AMENDING IN PART ORDER RE FINDING OF
                 LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
                 (DOCKET #4441);**

                 **ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                 MOTION FOR REMITTITUR (DOCKET #4495, #4523)**

                 **ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)**

                 **ORDER FOR ACCOUNTING OF PROFITS OF
                 BRATZ PRODUCTS**

                 **ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED**

MINUTES FORM 90                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                 1

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER**

### I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
(DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded. Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury. Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged. Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore
**DENIED**.

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __cls_____

Exhibit F, p. 51

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 55 of 93   Page ID
#:180872
Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 3 of 25

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel. Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt. This portion of Mattel's motion is therefore similarly **DENIED**.

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment. As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden. Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate. Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian. Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001). As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate. This portion of Mattel's motion is therefore also **DENIED**.

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows:  MGA Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

**Exhibit F, p. 52**

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of
loyalty. Relatedly, they also seek judgment as a matter of law that the damages
awarded as to the state-law claims are precluded as preempted because they represent
damages awarded under the theory of disgorgement, which was also awarded as part
of copyright damages. The Court has previously rejected the argument that copyright
law preempts the two aiding and abetting claims, and the Court leaves undisturbed its
previous holding on this issue. As for the related argument regarding damages, to
accept the MGA parties' argument, the Court would have to reject the current, firmly
established standard for determining if a state-law claim is preempted in favor of a new
standard that would find preemption any time the relief sought by the state-law claim is
also redressable by a copyright claim. This Court must follow the enunciated standard
for copyright law preemption, and it therefore rejects the MGA parties' argument
regarding this issue. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding
and abetting breach of fiduciary duty and the duty of loyalty is preempted by the
California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial
conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415
F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its
damages as to each of its state-law claims. Mattel proceeded on a theory of recovery
that sought disgorgement of the MGA parties' profits rather than another measure of
damages; there was ample evidence presented by both sides regarding the MGA
parties' profits. The Court has previously rejected, and does not now revisit, the MGA
parties' contention that the proper measure of damages for aiding and abetting Carter
Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by
Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim,
as set forth infra, the Court has remitted the monetary damages awarded by the jury in
favor of the equitable relief awarded by the Court in the form of return of the original
drawings.[3] This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that
the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach
thereof. Admittedly, there is an absence of direct evidence, such as an admission by
Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's
fiduciary duty or breach thereof. But the indirect evidence relevant to this issue
admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had
an understanding that Carter Bryant had such an obligation as well as the parameters of
such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90                                      Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          4

**Exhibit F, p. 53**

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6: Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7: Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz." To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits. The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement. California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls. Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument. The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

Initials of Deputy Clerk __cls_____

Exhibit F, p. 54

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until **_after_** the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED.**

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

Initials of Deputy Clerk __cls_____

Exhibit F, p. 55

Case 2:04-cv-09049-DOC-RNB Document 5587-2 Filed 05/26/09 Page 59 of 93 Page ID
#:180876
Case 2:04-cv-09049-SGL-RNB Document 5273 Filed 04/27/2009 Page 7 of 25

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard."  D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).  One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur. Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . . But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 60 of 93  Page ID
#:180077
Case 2:04-cv-09049-SGL-RNB    Document 5273    Filed 04/27/2009    Page 8 of 25

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471
F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before
the Court was "the rare case in which it is sufficiently certain that the jury award was not
based on proper consideration of the evidence" but was instead "based on improperly
considered evidence, directly traceable to an error that was cured too little, too late").
Generally, courts are cautioned to "undertake only limited review of jury damages
awards, in order to avoid encroaching upon the jury's proper function under the
Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to
the jury's findings. If the damages award is supported by the evidence, it must be
upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the
present motion.

The MGA parties argue that Mattel had a singular theory of recovery –
disgorgement of profits – and the amounts set forth by the jury as to each of the three
state-law claims are duplicative. This is not a completely unappealing argument. For
each of three state law claims – intentional interference with contractual relations, aiding
and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the
jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as
to Isaac Larian. Totaled, this award is $90 million. Viewed pursuant to the MGA
parties' theory, it would be the same $30 million awarded three times. Relatedly, the
MGA parties contend that the copyright damages of $10 million (allocated among three
defendants) are also duplicative of this $30 million, even though the number is not
exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative.
The remittitur standard is exceptionally deferential to the jury's verdict, and the Court
cannot disturb it based on speculation. The fact is the evidence not only supported a
verdict of $100 million, this Court could have, under the remittitur standard, easily
sustained a verdict many times this amount. The jury may have meant to award only a
total of $30 million, or they may have simply decided they could all agree on a round
figure of $100 million and then set about allocating that $100 million among multiple
claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard. Paul v.
Asbury Automotive Group, LLC 2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus.
Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck
and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc.,
2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not
exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony
of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for
approximately 50% to 70% of Bratz-related profits.

Initials of Deputy Clerk __cls_____

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 61 of 93   Page ID
#:180078
Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 9 of 25

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **must** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **meant** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

MINUTES FORM 90
CIVIL -- GEN                               9                    Initials of Deputy Clerk __cls_____

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to **all** tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk __cls_____

Exhibit F, p. 59

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of
the case and discussing the discovery rule standard before concluding the rule does not
apply in that instance, rather than noting a wholesale rejection of the application of the
discovery rule to tortious interference claims, these courts have implicitly held that the
discovery rule may, in certain undefined instances, permit otherwise time-barred claims
to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the
accrual of Mattel's claims in this case. That rationale applies with equal force to the
intentional interference with contractual relations claim, which was timely asserted
against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any
fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of
timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for
conversion, totaling $31,500, should be remitted because the Court's declaratory
judgment orders the MGA parties to return the drawings. The Court **GRANTS** the
motion on this issue. However, the drawings shall remain in the Court's custody
pending completion of Phase 2, pending appeal, and/or pending further order of this
Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket
#4657) (relating to distributors and retailers), the Court **VACATES** the stay on
enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for
Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the
Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket
#4439) at 16 (which was imposed pending resolution of the three post-trial motions
upon which the Court today rules); however, the Court leaves undisturbed the more
limited stay set forth in the Court's January 7, 2009, Order, which relates to the
purchase of Bratz products by retailers and distributors up to and including December
31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a
qualification that the court was assuming without deciding that the discovery rule could be applied to a
tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We
assume for purposes of this discussion that the delayed discovery rule applies to unfair competition
claims. We note that this point is currently not settled under California law . . . and we do not address it.")
(citations omitted).

Initials of Deputy Clerk __cls_____

Exhibit F, p. 60

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 64 of 93   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 12 of 25
#:180983

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

Exhibit F, p. 61

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

Exhibit F, p. 62

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 66 of 93  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 5273  Filed 04/27/2009  Page 14 of 25
#:180083

status as a secured creditor of MGA."  See Ex Parte Application to Intervene (docket
#4761) at 1.  This motion was heard on February 11, 2009, at which time the Court
expressly held the motion in abeyance, along with the Mattel's ex parte application for
appointment of a receiver (docket #4540), which is addressed in the following section,
to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN
PART** the motion to intervene.  The motion is granted to the extent it seeks intervention
to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to
the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2)
provides as follows:

> (a) Intervention of Right. On timely motion, the court
> must permit anyone to intervene who: . . . (2) claims an
> interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the
> action may as a practical matter impair or impede the
> movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Id.  The Ninth Circuit has identified four separate elements that must be met in order to
qualify for intervention under this rule; specifically, a would-be intervenor must show the
following:

> (1) [I]t has a significant protectable interest relating to the
> property or transaction that is the subject of the action;
> (2) the disposition of the action may, as a practical matter,
> impair or impede the applicant's ability to protect its interest;
> (3) the application is timely; and (4) the existing parties may
> not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements.  Where a party has a non-
speculative economic interest that is both concrete and related to the underlying subject
matter of the action, this element is met. Id.  Mattel has correctly argued that, generally,
the issues regarding the collectability of a party's debt does not confer an interest on the
part of the creditor to justify intervention pursuant to Rule 24(a)(2).  See id. (denying
intervention where the interest of the would-be intervenor was "several degrees
removed from the overriding public health and environmental policies that are the
backbone of this litigation.").  However, this particular request for intervention is not one
that falls into this general category.  Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

Exhibit F, p. 64

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a
straightforward, arms-length business deal between non-parties to this action," or
whether, as counsel for Mattel contends, the purchase was by entities formed for "the
improper purpose of attempting to leapfrog over Mattel's claims and shield their assets
from creditors and other rights-holders such as Mattel." Counsel for all parties,
including the intervenors, are afforded leave to file a final position on this issue no later
than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative
relief. The Court has considered all papers submitted in support of the application and
all opposition and reply papers thereto, the arguments of counsel at the hearing on the
application, and the entire record in this action, and finds that just cause exists for the
appointment of a Temporary Receiver purusant to L.R. 66.[9]  Specifically, the Court finds
as follows:

1.  The MGA entities, MGAE and MGA HK, are domiciled in California, have
    their principal place of business in the Central District of California, and
    have the majority of their assets located within the Central District of
    California;

2.  As the Court has previously found, the Bratz Assets (as defined below and
    in that order) are and have been the property of Mattel and not any of the
    MGA parties;

3.  Good cause exists to believe that the MGA parties, defined as MGAE,
    MGA HK, and Isaac Larian, and each of them, have engaged in, are
    engaging in, or are about to engage in transactions, acts, practices and
    courses of business that constitute fraudulent transfers of assets and
    violations of Mattel's ownership and other rights in and to the Bratz Brand
    and Bratz Assets, as defined below;

4.  Mattel has demonstrated the possibility of dissipation of assets and, from
    the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated
in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made
herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic
Auditor's report, in making these findings because the parties have not yet had an opportunity to object or
otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections
or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver
after the OSC hearing scheduled for May 18, 2009.

Initials of Deputy Clerk __cls_____

Exhibit F, p. 65

and related entities (as defined below) are engaged in a course of conduct
with related parties designed to frustrate the Court's Orders, Findings and
Injunction herein;

5.    Good cause exists to believe that the MGA parties, agents, and related
      entities (as defined below) will continue to engage in such transactions,
      acts, practices, and courses of conduct and business to the immediate
      and irreparable loss and damage to Mattel, and contrary to the interests of
      justice, unless restrained and enjoined.

6.    It is appropriate and in the interests of justice that, pursuant to L.R. 66,
      that a Temporary Receiver be appointed and that an Order to Show
      Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.    Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to
      L.R. 66 for the MGA entities to manage, supervise and oversee the assets
      of the MGA entities and the Bratz Brand and all Bratz Assets as these
      terms are defined herein (the "Temporary Receiver").

2.    The Temporary Receiver is appointed and is hereby directed and ordered
      to take full and exclusive control over, and to manage, preserve, and
      maximize the profits of, the MGA entities and the Bratz Brand and Bratz
      Assets as of the date hereof, including, without limitation, by locating,
      taking possession and ownership of, preserving, protecting, managing,
      supervising and overseeing the Bratz Assets.

3.    The Temporary Receiver is further directed to investigate the financial
      affairs of the MGA entities, and specifically investigate transfers and
      transactions made by the MGA entities from and after July 17, 2008.

4.    The Temporary Receiver shall have the power to take any and all action
      which may be necessary, appropriate or advisable to effectuate the
      purposes of the Temporary Receivership, including, but not limited to, the
      power to:

      a.    take custody, control and possession of the assets of the MGA
            entities and Bratz Assets in the possession, custody or control of
            the MGA entities, and/or any person or entity acting at their behest
            or direction or pursuant to their control, including, but not limited to,
            Isaac Larian and any successor-in-interest, subsidiary, corporate
            affiliate, agent, servant, attorney, accountant, officer, director,
            employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90                                           Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          17

Exhibit F, p. 66

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.  preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.  exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.  market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.  hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.  disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.  open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.  collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.  sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.  enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.  prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN

18

Initials of Deputy Clerk __cls_____

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

Exhibit F, p. 68

except insofar as the Court orders or invites the Temporary
Receiver to do so; and,

s.    perform such further and additional acts as the Temporary Receiver
deems necessary or advisable to preserve the Bratz Assets,
maximizing the profits derived therefrom, ensure the successful
manufacture, delivery and marketing of Bratz-branded dolls and
products for the spring and fall 2009 seasons and otherwise carry
out the Temporary Receiver's mandate under this Order, including,
without limitation, any acts which could be lawfully carried out by a
corporation in the state of California.

5.    The Temporary Receiver, the Temporary Receiver's employees
and agents as well as any and all of the professionals employed by
the Temporary Receiver, are entitled to compensation for services
rendered at their normal hourly rates and reimbursement for all
expenses incurred by them on behalf of the receivership estate.
The Temporary Receiver shall serve written notice upon counsel of
record for the parties of the amount to be paid to each payee, with
an itemization of the services rendered or expenses incurred.
Upon service of said notice, the itemized fees and expenses may
be paid by the Temporary Receiver on an interim basis. In the
event that extraordinary services are performed by the Temporary
Receiver, he shall be entitled to extraordinary compensation
according to proof and approval of this Court. All interim fees paid
shall be subject to final review and approval by this Court. This
Court retains jurisdiction to award a greater or lesser amount as the
full, fair and final value of such services. In the event there are
insufficient funds in the receivership estate to fully compensate the
Temporary Receiver and his professionals, the Court retains
jurisdiction to allocate the costs and expenses of this receivership
against Mattel, as the party who sought the appointment of the
Temporary Receiver, and/or Isaac Larian, as the principal owner
and beneficiary of the MGA entities.

6.    Upon service of a copy of this Order, all banks, broker-dealers,
savings and loans, escrow agents, title companies, commodity
trading companies, or other financial institutions shall cooperate
with all reasonable requests of the Temporary Receiver regarding
implementation of this Order, including transferring funds at his
direction and producing records related to the assets of the MGA
entities.

7.    The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90                       Initials of Deputy Clerk __cls_____
CIVIL -- GEN                      20

**Exhibit F, p. 69**

Case 2:04-cv-09049-DOC-RNB   Document 5587-2   Filed 05/26/09   Page 73 of 93   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 5293   Filed 04/27/2009   Page 21 of 25
#:190093

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities. The Bratz Assets include, without limitation:

a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN

21

Initials of Deputy Clerk __cls_____

brand.

g.     All Bratz-related items referenced at Paragraph 3 and Paragraph 8
       (at lines 15-19) of the Court's Order granting Mattel's Motion for
       Permanent Injunction (docket #4443).

8.     The Temporary Receiver shall hereby be vested with, and is authorized,
       directed and empowered to exercise, all of the rights, powers or
       authorizations of the MGA entities, their officers, directors, general
       partners or persons who exercise similar powers and perform similar
       duties, including without limitation the sole authority and power to file or
       cause to be filed any suit or action in any court or arbitration tribunal other
       than this court, and filing, or causing to be filed, a petition for relief under
       the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA
       entities, their officers, agents, employees, representatives, directors,
       successors-in-interest, attorneys in fact and all persons acting in concert
       or participating with them are hereby divested of, restrained, enjoined, and
       barred from exercising, any of the rights, powers or authorities vested
       herein in the Temporary Receiver, including but not limited to filing, or
       causing to be filed, any suit or action in any court or arbitration tribunal
       other than this court, and/or filing, or causing to be filed, a petition for relief
       under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the
       MGA entities, except as otherwise specified herein or by further order of
       this Court.

9.     As set forth above, the Court leaves undisturbed the stay set forth in the
       Court's January 7, 2009, Order. Moreover, the stay is hereby
       supplemented (a) to enable the Temporary Receiver to take the actions
       specified herein, and (b) to permit retailers who receive Bratz products
       pursuant to the authority of the Temporary Receiver, and who pay the
       Temporary Receiver monies due and owing for such Bratz products, to not
       remove such products from the shelves until January 10, 2010, at which
       time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's
       December 3, 2008, Order granting Mattel's Motion for Permanent
       Injunction (docket #4443) shall become effective as to such retailers. The
       supplemental stay provisions shall not eliminate, alter or amend the
       obligations of any retailer, distributor, seller or other person or entity,
       including, without limitation, the MGA parties, who do not meet the
       foregoing requirements, to earlier recall or earlier obtain the recall of Bratz
       products as required by the mandatory provisions of Paragraphs 4, 6 and
       7 the Court's Order granting Mattel's Motion for Permanent Injunction
       (docket #4443). The supplemental stay provisions shall not apply to
       permit, enable or authorize enjoined conduct by any enjoined party,
       except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                           22

Exhibit F, p. 71

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 75 of 93  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 5293  Filed 04/27/2009  Page 23 of 25
#:180093

authorized agents working for and under the auspices of the Temporary
Receiver pursuant to the terms of this Order.

10.     Additional Provisions.

a.      In the event that any person or entity or fails to refuses to deliver or
transfer any of the assets of the MGA entities or Bratz Assets or
otherwise fails to comply with any provision of this Order, the
Temporary Receiver is instructed to file ex parte an affidavit setting
forth the failures.  Upon the filing of such affidavit, the Court may
authorize repossession or sequestration or other equitable relief as
requested by Temporary Receiver.

b.      The Temporary Receiver shall maintain and shall not disburse,
distribute or pay anyone any receivership funds or proceeds earned
from exploitation of Bratz-branded dolls and products except as
needed to satisfy the reasonable and ordinary cost and expenses
incurred by the receivership.

c.      The Temporary Receiver shall have the status of officers and
agents of this Court, and as such shall be vested with the same
immunities as vested with this Court.  Neither the Temporary
Receiver nor any person or entity acting at the direction of the
Court or pursuant to agreements with the Temporary Receiver
(whether employees, vendors, contractors or otherwise) may be
held liable to the MGA parties whether for claims of alleged
copyright infringement, trademark infringement, or other alleged
causes of action for any acts taken in good faith in compliance with
this Order.

d.      During the course of the receivership, and pending further order of
the Court, the MGA parties shall not have any right, title, or interest
and/or power as to the Bratz Assets or Bratz brand.  All ownership
of all Bratz Assets, Bratz Brands and Bratz-related copyrights and
other intellectual property are hereby vested in the Temporary
Receiver and the MGA parties are divested of all such ownership.
Nothing herein shall alter or affect the right of Mattel to take any
and all actions relating to the Bratz Assets or the Bratz brand which
it otherwise lawfully could take, including, without limitation, the
institution, maintenance and prosecution of legal proceedings
anywhere in the world or other proceedings before any
governmental or tribunal or arbitration panel.

e.      Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90                                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          23

Exhibit F, p. 72

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.   To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.   The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.   No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.   It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.   In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

et seq. for the MGA entities without prior permission of this Court.

k.    The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all   financial and other documentation requested by the Temporary Receiver.

l.    The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.    The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.    Order to Show Cause. All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver. Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.    Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.    The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009. This report shall be filed with the Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STÉPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**

MINUTES FORM 90
CIVIL -- GEN

25

Initials of Deputy Clerk __cls_____

Exhibit F, p. 74

# EXHIBIT F-1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: May 21, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                        None Present
      Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:   **ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
NO. 11 (DOCKET #5185)**

**ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
ANSWER AND COUNTERCLAIMS (DOCKET #5143)**

**ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
APPEAL (DOCKET #5396)**

**ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
PRODUCT LINE INFORMATION (DOCKET #5425)**

**ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
APPOINTING MGA MONITOR**

**ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
REQUIRING MANDATORY SETTLEMENT CONFERENCE**

These matters were heard on May 18, 2009.

MINUTES FORM 90                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1            Time: 03/02

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit F-1, p. 74b

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit rather than their general powers and that, in any event, the relevant time period to measure managing agent status is not at the time of deposition but is rather at the time of the events giving rise to the lawsuit. Although these arguments find some support, the Discovery Master's conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law. The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor, which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities regarding matters involved in the litigation. The cases cited by Mattel support its timing argument; however, cases cited by the MGA parties establish that other cases favor a contrary position. Neither side's authority is controlling, and the Court therefore concludes the position adopted by the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor reported, could provide substitute testimony to them is clear error. Mattel's ultimate point is that no one can testify more accurately and more on point than can the two witnesses regarding their alleged trade secret theft. Again, this is not an invalid point. Indeed, it is possible that if such theft occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the MGA parties and instead acted on their own accord (the MGA parties alternatively contend). The fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony regarding any theft would not be on behalf of MGA at all. Who can or cannot testify about these events that may or may not have occurred on behalf of any MGA party -- let alone who can testify best -- is far from clear. This area of inquiry is fraught with uncertainty. The Discovery Master's conclusion one way or another on this issue, therefore, cannot be said to be clear error. See Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that MGA Mexico's interests and the witnesses' interests are at odds. The witnesses are currently employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they have separately retained counsel to represent their interests. Additionally, the MGA parties have maintained that if any trade secret theft occurred, it occurred without their knowledge or consent. These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90                                 Initials of Deputy Clerk __cls_____
CIVIL -- GEN                         3          Time: 03/02

Exhibit F-1, p. 74c

Case 2:04-cv-09049-DOC-RNB  Document 5587-2  Filed 05/26/09  Page 82 of 93  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 5585  Filed 05/21/2009  Page 4 of 15
#:180885

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of
additional allegations. First, Mattel asserts an additional claim pursuant to California's version of
the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel
avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008
financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni
808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel
seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding
evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of
documents relating to the development of Bratz and Farhad's deletion of emails from a USB
device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1
testimony; and (5) allegations setting forth additional predicate acts of racketeering activities,
including money laundering, concealing assets, engaging in monetary transactions involving
property derived from unlawful activity, commercial bribery, destruction of evidence, and
obstruction of justice.

        The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal
standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of
the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to
set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The
Court now sets that deadline for three months prior to the discovery cutoff date of December 11,
2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for
amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling
Order, which is set forth in Rule 15(a).

        Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so
requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be
granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad
faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v.
Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

        Allegations relating to events occurring after the filing of the Second Amended Answer and
Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments
are governed by the Rule 15(d) standard. Rule 15(d) provides:

        On motion and reasonable notice, the court may, on just terms, permit a party
        to serve a supplemental pleading setting out any transaction, occurrence, or event
        that happened after the date of the pleading to be supplemented. The court may
        permit supplementation even though the original pleading is defective in stating a
        claim or defense. The court may order that the opposing party plead to the
        supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading
is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should
not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

Exhibit F-1, p. 74d

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

> [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

Exhibit F-1, p. 74e

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

Exhibit F-1, p. 74f

## III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18. For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5] Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**: The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010. The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**: The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'" In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court. The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

Exhibit F-1, p. 74g

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

## IV. EX PARTE APPLICATION RE DISCLOSURE OF 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason. Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver. In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents: (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808. In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

### A.   Expiration of Temporary Receivership

**IT IS ORDERED THAT:**

1.   The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.   The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.   The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.   The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

Exhibit F-1, p. 74h

costs, on or before May 28, 2009;

5.   The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.   Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

## B.   Appointment of MGA Monitor

1.   For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

   a.   The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90
CIVIL -- GEN                          9

Initials of Deputy Clerk __cls_____
Time: 03/02

**Exhibit F-1, p. 74i**

b.     The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.     The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.     The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h. "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

**Exhibit F-1, p. 74j**

e.  At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.  The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.  The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.  The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I.  The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.  The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing. The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8]  The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit F-1, p. 74k

Case 2:04-cv-09049-DOC-RNB Document 5587-2 Filed 05/26/09 Page 90 of 93 Page ID
Case 2:04-cv-09049-SGL-RNB Document 5565 Filed 05/21/2009 Page 12 of 15
#:180565

k.    The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order. The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties. Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.    The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.    The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor. The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment. Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.    The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court. Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.    Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.    The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.    No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

Exhibit F-1, p. 741

2.   Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.   MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season. MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.   No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.   For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.   Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.   All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI. IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009. The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        13                       Time: 03/02

**Exhibit F-1, p. 74m**

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90                                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                                      14                     Time: 03/02

Exhibit F-1, p. 74n

Case 2:04-cv-09049-DOC-RNB Document 5587-2 Filed 05/26/09 Page 93 of 93 Page ID
Case 2:04-cv-09049-SGL-RNB Document 5365 Filed 05/21/2009 Page 15 of 15
#:180560

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90

CIVIL -- GEN                                     15                    Initials of Deputy Clerk __cls_____

                                                                       Time: 03/02

Exhibit F-1, p. 74o