# EXHIBIT G

P.Send



ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

FILED

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

    Plaintiff,

v.

MATTEL, INC.,

    Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

    This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

    Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

1 resources in creating and/or developing the BRATZ dolls or whether he continued

2 to develop his BRATZ design while still working in Mattel's employ. In either event,

3 the rights to the BRATZ dolls could become the property of Mattel, either through

4 infringement or through operation of the agreements noted above. The case was

5 later removed to this Court and was assigned the case number CV-04-9059. MGA

6 Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to

7 protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.

8 Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a

9 significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual

10 property, i.e., the Bratz creations, were decided in the absence of MGA").

11      In the interim, Bryant filed a declaratory judgment action in this Court,

12 seeking for the Court to declare that his BRATZ doll creations did not infringe

13 Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at

14 3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel

15 products,' . . . the substance of his allegations all address the product 'Toon

16 Teens'"). The declaratory judgment action was assigned the case number CV-04-

17 9049.

18      MGA then filed an action against Mattel in this Court broadening the scope

19 of the controversy beyond that concerned with the ownership rights to the BRATZ

20 doll line. MGA's complaint asserted various Lanham Act claims and their California

21 state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of

22 competition-by-intimidation and serial copycatting of MGA's products." (Compl.

23 ¶ 7). In essence, although the prior actions were concerned with ownership in the

24 rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there

25 had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.

26 MGA's complaint did make mention of other products that were affected by Mattel's

27 alleged predatory business practices, but by far the largest portion of its complaint

28 concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

1 line of BRATZ dolls.[1]

2 By Order dated June 19, 2006, the Court consolidated all three cases "for all
3 purposes" as they "involve[d] a number of common issues of law and fact." As the
4 Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5 question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6 at the heart of or, at the very least, affects many of the other claims set forth in
7 each of the three respective cases. For instance, even though the allegations in
8 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9 dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10 many of those allegations. It is hard to imagine how it is unlawful for a company to
11 thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12 owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13 complaint would become moot. That said, such consolidation did not do away with
14 the distinctions that do exist between the three cases. As the Court highlighted in
15 its consolidation order, when either party files a pleading in the case, "the first
16 paragraph of [that] document . . . shall inform the Court to which case(s) the
17 document relates."

18 On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19 04-9049, finding there existed no reasonable apprehension of an imminent
20 copyright infringement claim being filed against him by Mattel based on Mattel's
21 Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22 Court's Order was predicated entirely upon counsel for Mattel's representation
23 during oral argument that it "will not maintain that Bratz infringes the copyright in
24 Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25 judgment action, made clear that any future "claim by Mattel of copyright

26

27     [1] That the marketing of the BRATZ dolls lies at the heart of the issues
between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28     discussion of those allegations in its August 26, 2005, Order, Granting in Part and
Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

1 infringement based on the Toon Teens product is barred by counsel's

2 representation." July 18, 2006, Order at 4.

3      Presently before the Court is Mattel's request for leave to file an amended

4 complaint in the 04-9059 action. The complaint broadens considerably the nature

5 of the action from its genesis in state court. Whereas before the complaint simply

6 sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7 employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8 claim to the BRATZ doll line), the amended complaint adds five more defendants

9 and nine new legal claims, alleging a wide range of commercial disputes between

10 the rival doll makers that spans three countries. For instance, the amended

11 complaint now contains RICO claims, a misappropriation of trade secrets claim,

12 and various aiding and abetting claims all stemming from allegations that MGA

13 cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14 named as defendants in the amended complaint) or designers (namely, Bryant),

15 and then enticed or encouraged those same individuals to steal various trade and

16 proprietary secrets (be it sales plans, sales projections, customer profiles, or

17 intellectual property) from Mattel and hand them over to MGA before going to work

18 at MGA.

19      Moreover, the amended complaint expands upon the existing breaches of

20 contract and fiduciary duty claims in the original complaint by expanding the

21 universe of former employees (namely, the cherry-picked executives) to whom

22 those claims now apply.

23      Finally, Mattel now makes plain what was always lurking in its original

24 complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25 MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26 Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27 issue in Bryant's declaratory relief action: "The Amended Complaint does not

28 include a claim for infringement of copyrights in Toon Teens, but rather

4

Exhibit G, p. 78

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.    ANALYSIS

5       Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

12

13           In the absence of any apparent or declared
            reason—such as undue delay, bad faith or dilatory
14           motive on the part of the movant, repeated failure to
            cure deficiencies by amendments previously allowed,
            undue prejudice to the opposing party by virtue of
15           allowance of the amendment, futility of amendment,
            etc.—the leave sought should, as the rules require, be
16           'freely given.' Of course, the grant or denial of an
            opportunity to amend is within the discretion of the
17           District Court, but outright refusal to grant the leave
            without any justifying reason appearing for the denial is
18           not an exercise of discretion; it is merely abuse of that
            discretion and inconsistent with the spirit of the Federal
19           Rules.

20  371 U.S. 178, 182 (1962).

21       MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2  computer system used by doll designers at Mattel and its e-mail system. None of

3  these arguments are persuasive.

4        1.    Awareness of Factual Predicate for Copyright and Intentional

5             Interference Claims

6       MGA argues that Mattel has long known about the factual predicate for its

7  recently added copyright claim, observing that, "[o]ver four years ago, in August

8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel." (MGA Opp. at 11-12).

16       At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

Exhibit G, p. 80

1  even though the requested leave to amend was tendered <u>before</u> the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25        Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2  long stay and the parties' prior jurisdictional disputes" have left the case still in its

3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded. Rule 11 specifically allows parties to

5  aver factual allegations that "are likely to have evidentiary support after a

6  reasonable opportunity for further investigation or discovery" so long as the party

7  makes clear in its pleading that its factual contentions on those points are with the

8  caveat that they are based on a good faith belief that further discovery would

9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10  11 did not stand in the way of Mattel averring the factual contentions it now claims it

11  "merely suspected" as being the case based on the limited information before it.

12  Mattel could have gone ahead and made such suspected factual allegations so

13  long as it caveated those claims with the declaration that it reasonably believed that

14  those allegations would be borne out by further discovery. Perhaps the time by

15  which Mattel could have reasonably believed such allegations would be borne out

16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17  that such materialization took three or four years to occur.

18        The second reason would have some merit to it but for the fact that the

19  information that alerted (or should have alerted) Mattel to the existence of its now

20  asserted copyright and intentional interference claims was brought to Mattel's

21  attention well before the case was stayed on May 20, 2005. The stay, therefore,

22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23  stay does not explain why Mattel waited nearly six months after the stay was lifted

24  on May 16, 2006, to present those claims now.

25        All of that being said, the one thing that gives the Court pause in denying

26  leave based on the tardiness in Mattel's presentation is the lack of any evidence

27  that MGA or Bryant have been prejudiced by the delay.  Delay unconnected to

28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

Exhibit G, p. 82

1  management of the case, does not suffice to deny granting leave to amend.  The

2  Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3  in an amendment to a complaint, there is no serious prejudice to defendant in

4  allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5  Indeed, the denial of leave was proper in the Dialysist case not simply because of

6  the length of the delay, but because the delay itself was "detrimental" in that it

7  would entail the opposing party to have "unfairly" incurred "potentially high,

8  additional litigation costs" that could have been avoided if the moving party had

9  made clear its intentions earlier.  465 F.3d at 953.

10      Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16  along")(emphasis added)).  The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.  In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions.  MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and

9

1    loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2    is diminished by the fact that (no doubt owing to the sophistication of all counsel

3    involved) discovery on these very issues have been proceeding apace by both

4    sides long before Mattel filed its proposed amendments. This is simply not a case

5    where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6    allowing the proposed amendments; much of those costs have already been borne

7    by the parties for some time.

8      2.    Spoilation of Evidence

9      MGA next argues that Mattel's delay in bringing the amended complaint has

10    caused it prejudice as, in the interim, critical pieces of evidence have been or are

11    suspected of having become lost. For instance, MGA asserts that Mattel's Rule

12    30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13    "although Mattel identified and segregated its most relevant backup tapes available

14    for Zeus, Mattel allowed its tape backup system to expire the database for those

15    backup tapes, thereby eliminating all information about what was actually stored on

16    those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer

17    system is critical because of Mattel's assertion that part of its copyright claim rests

18    on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).

19    As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20    center personnel are stored on Zeus. Thus, the electronic documents stored on

21    Zeus – which should include the metadata showing who created, edited and

22    accessed Mattel's concept drawings and designs – during the time Bryant worked

23    in the design center at Mattel is vitally important to defending against Mattel's

24    claims." (MGA Opp. at 14). MGA's argument is neither an accurate

25    characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26    claim.

27      Ms. Marine did not testify that the information on the backup tapes (some

28    fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

Exhibit G, p. 84

1   that could restore the information still found on those tapes:

2       Q.  So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?

3

            . . . .

4       A.  You need the hardware so if we don't have the hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've got to buy it and – well, first you have to find a place to put it with adequate power which we don't have in the design center. You need to have a tape library. You need to have the tape drives that carried those tapes. You need a server that has the capability to – that's big enough to handle all of the hardware. You need the software – the license for the backup software[, Net Backup]. You need the disk space to restore it to and then you have to start reading in all those tapes.

12       Q.  You said that you don't have that in the design center. Do you have that hardware anywhere else in the company?

14       A.  DLT? No, no.

15       Q.  At what point did you get rid of the hardware?

16       A.  Once the last backups — DLT backups expired so it would have been a couple years ago probably.

18 (Decl. Diana Torres, Ex. K at 118-119).

19     The above testimony clearly denotes the difficulty in restoring what was on

20 Mattel's Zeus computer system during the relevant time frame, but it certainly does

21 not demonstrate that the information on those backup tapes has been "eliminated"

22 or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23 (not to mention to later search and sort through it); but to argue, as MGA does, that

24 the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25 plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26 information on the Zeus backup tapes has been present for some time (maybe

27 since 2004 or perhaps even earlier). This is important because it undermines

28 MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

Exhibit G, p. 85

1    it to suffer prejudice it otherwise would not have faced if the amendments were
2    brought sooner. Such prejudice has been present for years, and Mattel's failure to
3    bring its amended complaint sooner would not have changed this situation.

4          Similarly, MGA's point that access to what was on the Zeus computer
5    system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6    hack the system to steal other designers work is diminshed to some extent by the
7    fact that Bryant himself testified that he did not use the Zeus computer system and
8    was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9    ability to point to information on the Zeus system backup tapes to prove that Bryant
10    did not access other designers drawings or to prove the date those drawings were
11    created by those other designers would be useful evidence to negate Mattel's
12    factual claims. Nonetheless, such evidence still would not discount other avenues
13    outside of the Zeus computer system by which Mattel could seek to prove that
14    Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15    saw drawings of the same posted on other designers' cubicles.

16          MGA next surmises that Mattel's e-mail records have disappeared, not
17    because it has any proof on that point, but simply because Mattel has postponed
18    the deposition of the individual most knowledgeable of Mattel's e-mail records until
19    after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20    Speculation of spoilation does not suffice. That MGA's argumentation on this point
21    is nothing more than speculation is best exhibited by the evidence it has proffered
22    in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23    available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24    out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25    deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26    inbox would be automatically deleted if they had remained there for more than a
27    certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28    acknowledgment that Mattel has an "automatic email deletion system" that has

Exhibit G, p. 86

1  compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2  Noticeably absent from MGA's argument is any evidence that the e-mails so

3  deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4  whether such information remains or is otherwise archived on some backup file on

5  Mattel's computer system.  Absent concrete proof that spoilation has occurred,

6  nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7  amend.

8      3.   Statute of Limitations

9      MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations.  This argument

11  was pressed emphatically at oral argument.  With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)).  MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel.  Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21     The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action."  By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

13

Exhibit G, p. 87

1  applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations

2  [contained in the original complaint] underlie the copyright infringement and

3  intentional interference contract claims Mattel now seeks to allege against MGA,

4  Mr. Larian and Bryant")).

5       MGA's statute of limitations argument with respect to the intentional

6  interference claims fares no better. According to MGA, the applicable statute of

7  limitations is two years for an intentional interference with contract claim and Mattel

8  was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9  concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10 to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11 prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18

12 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) . Such a time line

13 would, according to MGA, mean that the applicable limitations period expired on

14 Mattel's interference with Bryant's contract claim on November 24, 2005, well

15 before Mattel sought leave to file its amended complaint. (Id). The problem again

16 with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17 interference claim would relate back to when it filed its original complaint in April,

18

19

20      [2] The same would appear to be true — that the amendments would be timely

21 — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

22

23      [3] With respect to Mattel's interference with contract claim as to one of its former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim

24 on September 17, 2004, when Brawer informed Mattel that he leaving to go to work for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from

25 that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26 (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them.

27 MGA's contention that Mattel must have known of those misdeeds in mid-September

28 is nothing more than speculation. Futility cannot be founded on what might or might not be the case; either a claim is futile to bring or it is not.

14

Exhibit G, p. 88

1  2004, well before the limitations period expired.[4]

2      Accordingly, MGA's futility argument is not well-founded.

3      4.      Prior Disavowals of Asserting a Copyright Claim

4      Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5  this case as to whether or not it is asserting a copyright infringement claim against

6  it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7  bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8  been subjected to Mattel's overly vague statements on this point, but in the end

9  nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25      [4] Again the relations-back principle would also seem to render its claim timely
26  if it were filed as an amended answer (the original having been filed in May, 2005) in
    the 05-2727 case.

27      [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
    Mattel knew of their identity when it filed the original complaint. The argument is

15

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13    5.    Judicial Economy Considerations

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21

22  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
23  ignorant of the basis for liability at the time the complaint was filed. See Miller v.
Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention
24  but at oral argument disputed that Mattel did not know the basis for liability against
itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25  the original complaint and those now proffered against the two in the amended
complaint. Specifically, MGA notes that the original complaint spoke of Bryant
26  working for one of Mattel's competitors and of that employee's theft of Mattel's
intellectual property before leaving to work for that competitior. At most, all this
27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
Larian encouraged Bryant's alleged unlawful behavior recited in the original
28  complaint.

16

1   what Mattel has always claimed was a straightforward employment action against

2   an individual defendant into a global commercial dispute against Mattel's primary

3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4   BRATZ.[6]  (Bryant Opp. at 2).  Mattel argues that "the law does not deny leave to

5   amend because claims are 'tangential'" and then reiterates its point that some

6   showing of prejudice, namely, seeking leave after expiration of discovery, is

7   necessary.  (Reply to Bryant Opp. at 3).  That is not entirely correct.

8          As noted previously, the Ninth Circuit recently upheld a denial for leave to

9   amend because the amendment would have "drastically changed" the litigation,

10  even though the leave request was tendered before the time, as set forth in a Rule

11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12  before the discovery cut-off.  See AmerisourceBergen Corp. v. Dialysist West, Inc.,

13  465 F.3d 946, 953 (9th Cir. 2006).  In justifying its reasoning the Ninth Circuit cited

14  approvingly to the following statement from a well-respected treatise: "If an

15  amendment substantially changes the theory on which the case has been

16  proceeding and is proposed late enough so that the opponent would be required to

17  engage in significant new preparation, the court may deem it prejudical." Id. at 953

18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)).  Thus, Dialysist

20  recognized that the introduction of "different legal theories" and/or proof of

21  materially different facts well into the litigation can itself be a basis for finding

22  prejudice regardless of whether the period for discovery has expired (or is even

23  close to expiring) or the parties have already filed summary judgment motions. Id.

24  at 953-54.

25          Although the parties can safely be said to be at this point well into the

26

27          [6] Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him. Such
     considerations are best left to be resolved on a properly filed motion to dismiss.

17

1  litigation in this consolidated action (as evidenced by the protracted discovery
2  disputes contained in the docket sheet that the parties have had before the
3  magistrate judge and now the special master, and the litigation of motions to
4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5  has made painfully clear in its papers, no scheduling order has been entered in this
6  case.[7]  This takes away somewhat from the prejudice Dialysist found to exist when
7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8  litigation process.  Id. at 953.  Simply put, without a schedule for the filing of pre-trial
9  motions and other matters (e.g., discovery cutoff), the parties have been given free
10 reign in how to conduct the litigation in this case.

11      That the delay in bringing the proposed amendments and the relative length
12 of time into the litigation when those amendments were brought may not neatly fold
13 into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14 The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a
15 rather narrow and straightforward question — Did anything from Bryant's
16 employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17 the BRATZ doll line?  The proposed amendments would radically alter the litigation
18 in that case to include far ranging disputes involving multiple parties and concerning
19 events not connected with the BRATZ ownership issue.  That the original action
20 was a relatively simple and straight-forward matter raises another point beyond the
21 change in the action's litigation posture — whether entangling the rival doll makers'
22 other commercial disputes into this particular case would serve to muddy the waters
23 and make the matter that much more difficult to manage from the Court's
24 perspective.

25

26      [7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced
   by the fact that the parties only just recently exchanged in initial disclosures is
27 misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
   2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
28 were completed long ago as evidenced by the fact that discovery disputes appeared
   in that case as far back as January, 2005.

18

1    As has long been recognized, equally important in determining whether to

2    grant such leave is what impact such amendments would have on the court's ability

3    to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4    § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5    economy and its ability to manage the case. . . . The court should also temper the

6    policy favoring freely granting leave to amend with consideration of the ability of the

7    district court to manage the case adequately if amendment is allowed"). As Judge

8    Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9    the court should consider judicial economy and whether the amendments would

10   lead to expeditious disposition of the merits of the litigation. Finally, the court

11   should consider whether the amendment adds substance to the original allegations,

12   and whether it is germane to the original case of action." Chitimacha Tribe of

13   Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14   Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15   1987)("General considerations of judicial economy also justify allowing the

16   amendments. The violations included in the proposed amendment relate to the

17   same subject matter as the original complaint. Allowing the amendment will further

18   the federal policy of 'wrapping in one bundle all matters concerning the same

19   subject matter.'").

20   Mattel's amendments do not add substance to the claims contained in its

21   original complaint. Rather, they would expand the universe of claims and

22   defendants stretching well-beyond the questions raised in the original complaint

23   over whether Bryant's conduct while in the employ of Mattel subjected his later

24   attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25   Agreement or otherwise rendered his creation subject to an infringement action.

26   Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27   the narrowness of the allegations contained in its original complaint. In fact, the

28   precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

3
4          [M]any of the matters raised by Mattel's proposed
    Amended Complaint are and will remain at issue
    because of MGA's Complaint, whether or not leave to
5   amend is granted. MGA's claims allege that a broad
    array of purported Mattel conduct across the globe,
6   starting at least as early as 1999, has violated the
    Lanham Act and unfair competition law. This includes
7   Mattel's alleged infringement of Bratz and other MGA
    products. As a result, issues in the proposed Amended
8   Complaint are already part and parcel of Mattel's
    defenses to MGA's unfair competition claims, including
9   because they show that MGA and Bryant, and not
    Mattel, are ones who stole the products and other
10  properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them. If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19       Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated. The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments. Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

20

**Exhibit G, p. 94**

1  drawings to technically complex discovery of what is on each other's computers).

2      Indeed the separateness of the two matters is reflected in how the cases are
3  currently structured, namely, the narrowness of the issue involved in 04-9059 and
4  the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court
5  believes a two-track scheduling order wherein the 04-9059 matter's discovery cut
6  off and trial date are set well-ahead of those in 05-2727 makes the most sense. As
7  noted earlier, many of the legal claims being pressed in 05-2727 will be affected by
8  the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to
9  the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's
10 "development programs" or by way of the Inventions Agreement because he
11 continued to work on his designs while at Mattel), then large portions of MGA's
12 Lanham Act infringement claims may become moot. By the same token, if Mattel
13 does not own rights to BRATZ, then some of the defenses and counterclaims set
14 forth as independent claims in the present amended complaint may become moot,
15 including Mattel's copyright infringement claim as well as portions of its remaining
16 RICO, misappropriation, and aiding and abetting claims. If, however, the Court
17 were to allow the amended complaint to be filed in the 04-9059 action, such case
18 management would be difficult, if not impossible as many of the issues being
19 litigated in the 05-2727 case would have been poured into the 04-9059 case by the
20 amendment. Due to this substantial overlap in claims and facts, a two-track
21 scheduling order utilizing the case number distinctions would be impossible to craft.
22 When pressed by the Court at oral argument as to which of its proposed claims it
23 believed would not undermine the BRATZ ownership posture of the 04-9059 case,
24 Mattel cited to its copyright and RICO claims. However, upon further questioning
25 by the Court, counsel for Mattel acknowledged that much of those claims were, like
26 the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27     In light of the burden allowing Mattel's amendment to proceed would have on
28 this Court's ability to efficiently manage these consolidated matters denial of

21

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. See

2  Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action. None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13  Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16  Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant"). In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25  IT IS SO ORDERED.

26  DATE:  /- //- 0 7

27

28  STEPHEN G. LARSON
   UNITED STATES DISTRICT JUDGE

22

Exhibit G, p. 96

# EXHIBIT H

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date:  April 25, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                  PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                  (IN CHAMBERS)**

        This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

Exhibit H, p. 97

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that
this Order necessarily relies on evidence subject to any party's objections, the objections are
implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional
interference with contractual relations, conversion, and unfair competition, arguing that these
claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the
subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general
scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th
Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted
qualitatively different from those protected under the Copyright Act, the state law claim is not
preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir.
2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim
addresses generally an issue within the subject matter of copyright – the underlying wrong upon
which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual
relations is neither categorically preempted or categorically saved from preemption; rather, the
Court must engage in a determination of whether the substance of the tort claim differs
qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a
intentional interference claim was not preempted because it was based not on copyrights but on a
contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir.
2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different
from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged
interference with any copyrights that Mattel may have under the Inventions Agreement, it is
preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to
the extent that the claim is based on MGA's acts that may be found to have aided and abetted the
breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is
qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent
that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of
fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues:
Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

MINUTES FORM 90
CIVIL -- GEN                                  Page 2

Initials of Deputy Clerk: jh

**Exhibit H, p. 98**

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

Exhibit H, p. 100

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

Initials of Deputy Clerk: jh

**Exhibit H, p. 101**

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted). The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has raised a triable issue of fact as to the second. The fourth element may be resolved after the

Initials of Deputy Clerk: jh

Exhibit H, p. 102

## NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)    Case Title  Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

✓  **ADD NEW NOTICE PARTY**
(If sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor):  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk jh

Exhibit H, p. 103

# NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*:  Two Embarcadero Center, Suite 1500, San Francisco,  CA  94111

*E-mail:

*Fax No.:

\* For CIVIL cases only

***JUDGE / MAGISTRATE JUDGE (list below):***

**Initials of Deputy Clerk** jh

**Exhibit H, p. 104**

# EXHIBIT I

Case 2:04-cv-09049-DOC-RNB  Document 5587-3  Filed 05/26/09  Page 34 of 96  Page ID
#:180348
Case 2:04-cv-09049-SGL-RNB  Document 3758  Filed 05/21/2008  Page 1 of 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  May 21, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                         Theresa Lanza
            Courtroom Deputy Clerk             Mark Schweitzer
                                               Court Reporters

ATTORNEYS PRESENT FOR CARTER BRYANT:     ATTORNEYS PRESENT FOR MATTEL:

Christa M. Anderson                      John B. Quinn
Matthew M. Werdegar                      Michael T. Zeller
                                         Jon D. Corey

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

Thomas J. Nolan
Jason D. Russell

**PROCEEDINGS:**    **ORDER RE MOTION FOR RECONSIDERATION**

                    **ORDER RE THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
                    JUDGMENT**

MINUTES FORM 90                                          Initials of Deputy Clerk:  jh
CIVIL -- GEN                          Page 1            Time:  2/52

Exhibit I, p. 105

Case 2:04-cv-09049-DOC-RNB Document 5587-3 Filed 05/26/09 Page 35 of 96 Page ID
#:180345
Case 2:04-cv-09049-SGL-RNB Document 3758 Filed 05/21/2008 Page 2 of 10

This matter is before the Court on the parties' motions for partial summary judgment and
Carter Bryant's and MGA's motion for reconsideration.[1] The motions were heard on April 22,
2008, and again on May 19, 2008. On April 25, 2008, the Court issued an order granting in part,
denying in part, and deferring in part the motions for partial summary judgment.

The Court now issues the following further rulings regarding the motions for partial
summary judgment and the motion for reconsideration.

## MOTION FOR RECONSIDERATION

The motion for reconsideration is based on the new California Supreme Court case of City
of Hope Nat'l Medical Center v. Genentech, Inc., 43 Cal. 4th 375 (2008). After fulling considering
City of Hope, however, the Court finds that the case has little applicability to the present case and
does not compel a conclusion regarding the existence of a fiduciary duty contrary to that reached
by the Court.

City of Hope addresses whether a fiduciary duty can arise (or fail to arise) by operation of
law due to the existence of confidential contractual relationship. At issue in this case is whether
the parties' agreement itself created a fiduciary duty. Under California, these two situations that
may give rise to a fiduciary duty -- operation of law or agreement -- are distinct, and California
courts have long distinguished between the two. Despite this clear distinction, Carter Bryant's
partial summary judgment papers conflated these principles, as does the motion for
reconsideration.

Related to these distinct legal concepts, there is a crucial factual difference between the
present case and City of Hope. The contract at issue in City of Hope did not contain any language
that even arguably gave rise to a fiduciary duty. In contrast, the contract at issue here, for the
reasons set forth in the Court's April 25, 2008, Order, sets forth language that does give rise to
such a duty.

MGA contends that this Court committed reversible error by holding that the language set
forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty. City of Hope, MGA contends,
held that "the entrusting of secret or confidential information to another 'does not compel the
imposition of fiduciary duties by operation of law.'" Motion at 6 (quoting City of Hope). As alluded
to above, this argument, as well as the other two raised by MGA in the motion, overlooks both the
differing contractual language in City of Hope and the present case, as well as the related legal
distinction regarding the creation of fiduciary relationships. Factually, the Inventions Agreement

---

[1] At the hearing, upon representation of settlement between Mattel and Carter Bryant, and pursuant
to the stipulation between Mattel and Carter Bryant, the motion is moot as to Carter Bryant. However, the
Court considers the motion because MGA has joined in the motion on the issue of fiduciary duty. As set
forth on the record, because the claims against Carter Bryant have been dismissed, the Court treats MGA
as the moving party.

**Exhibit I, p. 106**

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 36 of 96   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3768   Filed 05/21/2008   Page 3 of 10
#:180346

did more than merely entrust Bryant with confidential information; rather, as noted in the Court's first summary judgment Order, the Inventions Agreement explicitly conferred upon Bryant, and Bryant explicitly agreed to accept, a "position of trust" vis-à-vis that confidential information.  No such explicit undertaking is found in the agreement at issue in City of Hope, the relevant portions of which are set forth in the California Supreme Court opinion.

        On that note, the portion of City of Hope upon which MGA relies to support its argument addresses when a fiduciary relationship arises by operation of law.  This argument is merely a continuation of Bryant's conflation, first appearing in Bryant's moving and opposition summary judgment papers, of fiduciary relationships that are created by contract and those that arise as a matter of law.  The Court's summary judgment holding clearly rests on the former; the arguments raised on reconsideration are premised on the latter.  Compare City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002) (cited by the Court and noting that a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .") with City of Hope, 43 Cal.4th 375, ___, 75 Cal. Rptr.3d 333, 347 (relied on by Bryant for the proposition that the entrusting of confidential information "does not compel the imposition of fiduciary duties by *operation of law*") (emphasis added).

        Although the majority of the motion for reconsideration is unmeritorious, it raises important issues, which the Court must address, regarding the scope of the fiduciary duty created, as well as the breach thereof.

        Although the parties argued at length as to whether the Inventions Agreement gave rise to a fiduciary duty, they did not focus on the scope of the fiduciary duty that was created.  As noted in the Court's April 25, 2008, Order, the Court held Bryant had undertaken such a duty:

                Bryant . . . owed a fiduciary duty to Mattel by virtue of the
                language set forth in ¶ 1(a) of the Inventions Agreement.  Id. ("The
                value of the Proprietary Information depends on it remaining
                confidential.  The Company depends on me to maintain that
                confidentiality, and I accept that position of trust.").

April 25, 2008, Order at 5.

        The Court also concluded that Bryant had breached that duty:

                [T]he undisputed facts establish that Bryant breached his fiduciary duty
                to communicate his inventions to Mattel when, rather than doing so, he
                secretly entered into a contract with Mattel's competitor, while still
                employed by Mattel, to produce a line of fashion dolls to be marketed in
                direct competition with Mattel's products.

Exhibit I, p. 107

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 37 of 96   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3758   Filed 05/21/2008   Page 4 of 10
#:180373

Id. at 6.

Upon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion -- as a matter of law -- regarding whether the fiduciary duty extends beyond Mattel's confidential information.

The language creating the fiduciary relationship appears in the section of the Inventions Agreement related to "Trade Secrets" and "Proprietary Information," and is preceded by language (in the same sentence) that Mattel depends upon employees to "maintain that confidentiality." Just above the signature line of the Inventions Agreement, reference is made again to "IMPORTANT OBLIGATIONS OF TRUST," but that language is clearly meant not to create new obligations, but rather to alert the employee that those obligations are created elsewhere within the agreement.

The question of whether an agreement creates a fiduciary duty is generally a question of fact, although a Court may resolve the question as a matter of law where the relevant facts are uncontroverted. See City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1051 (N.D. Cal. 2002); GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 417 (2000). Here, although the Court concludes as a matter of law that the Inventions Agreement imposed a fiduciary duty as to Mattel's confidential information, it cannot reach a similar conclusion regarding any broader duty based on the undisputed facts.

Accordingly, the Court **VACATES** the above-quoted language from its April 25 Order finding that Bryant breached his fiduciary duty and leaves the determination of whether Bryant's fiduciary duty beyond Mattel's confidential information as an issue for trial.[2]

One more point raised in the motion for reconsideration is worthy of note. Although Carter Bryant has been dismissed from the case, he raised at least one issue in his motion, in which MGA has not joined, that should not pass without comment by this Court.[3] Clearly, and perhaps understandably, counsel for Carter Bryant were disappointed by the Court's rulings as set forth in the first summary judgment order.[4]

---

[2] The Court also notes that its previous holding necessarily rested on a finding that the materials provided to MGA were indisputably Mattel's property. As set forth in section I, relating to the summary judgment breach of contract issue, that conclusion cannot be drawn as a matter of law on the undisputed facts, and thus summary judgment may not appropriately be granted.

[3] Upon the Court's expression of concern regarding this issue at the hearing on this matter, counsel for MGA explicitly disavowed any joinder in this part of Bryant's motion.

[4] The Court addresses this part of the Order to counsel because counsel are officers of the Court and authors of the comment at issue. The Court also references "counsel" in the plural rather than the singular because all counsel -- author, editor, and signatory -- who were involved in this comment bear responsibility therefor.

Exhibit I, p. 108

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 38 of 96   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3788   Filed 05/21/2008   Page 5 of 10
#:190378

However, in addressing what they saw as the deficiencies in the Court's Order, counsel painted with far too broad a brush. Rather than focus the Court's attention on a discrete issue -- or even a number of discrete issues -- counsel resorted to broad language incorporating every argument raised in their summary judgment papers and, without articulated foundation, impugns the integrity of this Court's deliberative process. Nowhere is this more clear than in footnote 7 of the motion for reconsideration; accordingly, the Court's discussion focuses on that portion of the motion, which reads as follows:[5]

> In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant's and MGA's favor. On this issue, and many others, the Court has failed to do so, instead accept Mattel's views of disputed facts and ignoring material factual disputes. Indeed, the Court declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's. Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

Motion at 11 n.7.

With this footnote, counsel first takes issue with the Court's application of the summary judgment standard, of which counsel and the Court are well aware. This standard requires the Court to view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of the doubt of both any disputes of fact and all reasonable inferences to be drawn from the evidence. Nevertheless, the Court's focus is on *material* facts, and the determination of what constitutes a material fact is shaped by legal rulings made by the Court. Some facts that seem material to the parties under their legal theories become immaterial in light of the Court's rulings that reject those theories.

In footnote 7, counsel misrepresents the Court's treatment of the evidence offered in support of and in opposition to the three motions for partial summary judgment. Bryant states that the Court "apparently summarily sustain[ed] all Mattel's objections [and] den[ied] all Bryant's [evidentiary objections]." Id. However, the Court merely noted that, where a ruling necessarily relied upon evidence to which parties had made objections, the objections thereto were implicitly overruled:

---

[5] Footnote 7, however, is not the only offending portion of the motion for reconsideration. See e.g., Motion at 2 n.1 (referring to "the Order's other errors, including misapplication of the summary judgment standard," stating that those errors "will also require correction," but noting that the motion "does not discuss those flaws in detail"); motion at 9 n.5 (incorporating unspecified portions of his summary judgment briefing).

Initials of Deputy Clerk: jh
Time: 2/52

Exhibit I, p. 109

The parties have made hundreds of objections to evidence offered in support of and in opposition to the motions for partial summary judgment. Although counsel for Bryant requested explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objection, the objections are implicitly overruled.

April 25, 2008, Order at 1-2. This is a vastly different statement than that made by counsel. Counsel's characterization of the Court's ruling implies that the Court, without inquiry into the merits of Bryant's objections, arbitrarily denied them all. The Court's Order merely recognizes that, by operation of law, to the extent a court relies upon objected-to evidence, and where, as where, the evidence must be admissible to be relied upon for such ruling, any objections raised thereto are implicitly overruled.

In addition to mounting an overly broad -- and baseless -- attack on the integrity of the Court's deliberative process on a grand scale, counsel fail to support the more narrow point they appear to be making in footnote 7. Footnote 7 is appended to text that takes issue with the Court's conclusion that Bryant did nothing more than merely "prepare to compete" with his employer and, thus, in Bryant's view, did not breach his duty of loyalty or fiduciary duty. See Motion at 10.

Although the footnote does not alert the Court to any particular material facts -- disputed or undisputed -- which counsel contend were overlooked by the Court, the text to which the footnote is appended provides valuable clues on this issue. From this text, the Court's attention is directed to Bryant's Opposition at 23-24. The Court notes that the pages of that document refer to no factual contentions; rather, those pages are devoted to legal arguments and conclusions. However, reading further in the opposition, at page 29, the Court finally encounters a citation to the facts upon which counsel rely. They reference "SGI 151" and SGI "154-156".

Although obvious to counsel who practice in this district, and certainly to counsel of record here, to guide the uninitiated, the Court notes that in a summary judgment opposition filed in this Court, "SGI" clearly refers to the "Statement of Genuine Issues" filed by a party opposing a summary judgment motion. See Local Rule 56-2. Referring to that document, found at docket # 2778, one finds that material facts are numbered sequentially, and that "SGI 151" refers to the fact numbered "151." The subsequently cited facts, "154-156," not surprisingly, are found on the page that follows.

Having thus traversed this far to ascertain the material facts upon which counsel relies for its sweeping criticism of the Court's deliberative process, the Court notes those facts below.

Bryant signed the MGA contract on October 4, 2008, and gave notice of his resignation to Mattel the same day. SGI 151. Before Bryant left Mattel, he told various Mattel employees, including managerial employees, that he was going to start his own business as a freelance designer, working on his own doll line as an independent contractor. SGI 154. Mattel's exit interview form for Bryant reflects that during his exit interview, he told Mattel's HR representative,

Initials of Deputy Clerk: jh
Time: 2/52

Exhibit I, p. 110

Sandy Yonemoto, that he was leaving for a new job as a "business owner" in "illustration/product design" because an "[o]pportunity arose -- had to take it." SGI 155. Bryant did not tell anyone at Mattel that he was leaving Mattel to work with a non-competitor, nor did Mattel inquire. SGI 156.

In accordance with the summary judgment standard, the Court viewed these facts in the light most favorable to Bryant. However, on the "preparations to compete" point, these facts are not material. They relate to the circumstances of his departure; essentially, Bryant's point is that he did not lie to Mattel when he left. Although this may well be true, the circumstances surrounding the announcement of his resignation and the last days of his employment with Mattel tell only part of the story.

Even assuming Bryant gave notice of his resignation to Mattel the same day he signed his contract, it is uncontroverted that he continued working for Mattel after that date; so Bryant's fact, which tends to imply that he made a clean break with Mattel the moment he established a contractual relationship with MGA, becomes immaterial when viewed in connection with the uncontroverted fact that he continued working for Mattel after he signed his MGA contract, as the latter fact neutralizes the implication presented by the former fact when it stood alone. Additionally, notwithstanding the fact that Bryant gave notice of his resignation the same day he signed his contract, the substance of his contract remains the same, including Bryant's agreement to begin working for MGA on a "top priority" basis, as does the undisputed fact that he entered into a contract with Mattel's competitor to produce a competing product while he was still employed by Mattel.

Moreover, the fact that he gave Mattel various descriptions of what he intended to do professionally *in the future*, any one of which might imply that he was leaving to pursue independent interests that would compete with or had a tendency to compete with Mattel, similarly does not detract from his past and/or then-present actions, or the fact that he was already under contract to compete with Mattel.

Thus, counsel's criticism of the Court's deliberative process is both overly broad and unfounded. Perhaps footnote 7 should come as no surprise to the Court. The parties in this action are engaged in what they themselves have described as high-stakes "corporate warfare." However, whatever the rules of engagement may be for such warfare, those rules are decidedly **not** representative of the standard of conduct which the parties -- and their counsel -- should look to for guidance as to how they should conduct themselves in or before this Court.

Counsel for Carter Bryant, and indeed, all counsel in this case and who practice before this Court, are strongly urged to concisely and precisely articulate their requests for relief in a manner that refrains from the unintentional impugning of the integrity of the Court's deliberative process. Counsel for all parties are reminded that this Court has extended to all counsel and all parties a similar professional courtesy.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion for

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                Page 7                  Time:  2/52

Exhibit I, p. 111

reconsideration. The Court **VACATES** that portion of its April 25, 2008, order that found, as a matter of law, that Bryant breached his fiduciary duty.

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

## I. BREACH OF CONTRACT

Mattel seeks summary judgment on its breach of contract claim. Resolution of the breach of contract issue is largely an issue of timing.

There are undisputed facts regarding the timing of the creation of three categories of materials, but there are factors regarding each of these three categories that preclude a grant of summary judgment at this time.

Specifically, it is uncontroverted that four drawings (each with a color and a black-and-white version) of dolls in evening wear, were created by Bryant during the period of his employment with Mattel. However, the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings.

It is also undisputed that, during the period of his employment, Bryant created a dummy doll, anticipating it would used in his pitch of Bratz to MGA. However, this dummy is apparently no longer in existence, and therefore the scope of any rights owned by Mattel cannot be ascertained from the undisputed facts.

Finally, it is undisputed that a drawing by Bryant, from which the sculpt of the Bratz doll was made, was created during the period of Bryant's employment with Mattel. However, the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt, nor is it clear what, if any, legal conclusions the Court could draw from a clear record on this issue.

Additionally, the larger timing issue regarding the remaining Bratz drawings, as admitted by the parties, involve triable issues of fact.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment as to its claim for breach of contract.

## II. COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

Initials of Deputy Clerk: jh
Time: 2/52

**Exhibit I, p. 112**

Here, Mattel asks the Court to undertake the fact-specific determination involved in the third element, aided in large part by expert testimony, when the first element is clearly in dispute. Although often summary adjudication of one element of a claim is appropriate, such is not the case here. In order to undertake the substantial similarity analysis, the Court must compare a copyrighted work with an allegedly infringing work. The Court may not perform a meaningful substantial similarity analysis without the copyrighted work that is the foundation of that analysis.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment on this issue.

## III. AIDING AND ABETTING

MGA and Larian are accused of aiding and abetting Bryant's breach of the duty of loyalty and breach of fiduciary duty.

For reasons ably set forth by counsel for MGA at the hearing, the Court finds that there are triable issues of fact as to the issue of aiding and abetting any breaches of the duty of loyalty and fiduciary duty by Carter Bryant and therefore **DENIES** Mattel's motion for summary judgment on this issue.

## IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations. The Court previously denied MGA's motion, noting however, that the first, third, and fifth elements were met, and that Mattel has raised a triable issue of fact as to the second element.[6]

However, upon reflection, and in light of the Court's ruling regarding the aiding and abetting claims, the Court now concludes that, although Mattel has raised a triable issue of fact regarding the third element, the Court may not at this point conclude that the undisputed facts establish the third element. The Court leaves undisturbed its ruling that Mattel has raised a triable issue of fact as to the second element.

As set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element.

Despite these minor changes in the Court's previous ruling, the disposition of this portion of

---

[6] The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

Initials of Deputy Clerk: jh
Time:  2/52

**Exhibit I, p. 113**

MGA's motion remains unchanged: MGA's motion is **DENIED** to the extent it seeks summary judgment on Mattel's claim for intentional interference with contractual relations.

## V. UNFAIR COMPETITION

As noted by counsel for MGA at the May 19, 2008, hearing, the Court's first summary judgment left unaddressed Mattel's statutory unfair competition claim to the extent that is based on fraudulent conduct. Mattel did not contend in opposition to MGA's motion for partial summary judgment that this claim was based on any fraudulent conduct.

In its first summary judgment order, the Court eliminated two bases for Mattel's statutory unfair competition. See April 25, 2008, Order (referring to the unfair competition claim to the extent it is based on copyright infringement and to the extent it is based on unfair conduct). The Court now holds that this third basis can also be eliminated at this time.

## VI. STATUTE OF LIMITATIONS

At the second hearing on the motions for partial summary judgment, for the first time, counsel for MGA referenced evidence in support of its statute of limitations argument, attached to a declaration that had not been served on opposing counsel and that had been filed earlier the same afternoon. Counsel thereafter made legal arguments regarding the conclusions to be drawn from this evidence.

Mattel had little opportunity to respond to MGA's arguments, as it was not entirely clear at the hearing to what evidence MGA referred in making its arguments. Accordingly, the Court has afforded Mattel the opportunity to respond to this argument and therefore **DEFERS** ruling on the statute of limitations issue until the Court has had the opportunity to review Mattel's response.

**IT IS SO ORDERED.**

Initials of Deputy Clerk: jh
Time: 2/52

**Exhibit I, p. 114**

# EXHIBIT J

Case 2:04-cv-09049-DOC-RNB Document 5587-3 Filed 05/26/09 Page 45 of 96 Page ID
#:180155
Case 2:04-cv-09049-SGL-RNB Document 3826 Filed 05/27/2008 Page 1 of 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: May 27, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Gina Guzman
              Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations. Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim. Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

────────────────────

        [1] Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

Exhibit J, p. 115

Case 2:04-cv-09049-DOC-RNB  Document 5587-3  Filed 05/26/09  Page 46 of 96  Page ID
#:180156
Case 2:04-cv-09049-SGL-RNB     Document 3826     Filed 05/27/2008     Page 2 of 9

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard
> of a project similar to the Bratz at Mattel. He says he chose Mr.
> Bryant's idea for Bryant over several others after holding a sort of
> fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

Page 2

Exhibit J, p. 116

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does *not* deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003.**") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

Exhibit J, p. 117

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

Page 4

Exhibit J, p. 118

Case 2:04-cv-09049-DOC-RNB  Document 5587-3  Filed 05/26/09  Page 49 of 96  Page ID
#:180159
Case 2:04-cv-09049-SGL-RNB    Document 3826    Filed 05/27/2008    Page 5 of 9

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an
> incentive to sue, she must decide whether to file suit or sit on her
> rights. So long as a suspicion exists, it is clear that the plaintiff must go
> find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: gg
Time: 0/00

Exhibit J, p. 119

Case 2:04-cv-09049-DOC-RNB Document 5587-3 Filed 05/26/09 Page 50 of 96 Page ID
#:180160
Case 2:04-cv-09049-SGL-RNB Document 3826 Filed 05/27/2008 Page 6 of 9

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

Exhibit J, p. 120

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 51 of 96   Page ID
#:180161
Case 2:04-cv-09049-SGL-RNB      Document 3826      Filed 05/27/2008    Page 7 of 9

> More broadly stated, if a plaintiff's reasonable and diligent investigation
> discloses only one kind of wrongdoing when the injury was actually
> caused by tortious conduct of a wholly different sort, the discovery rule
> postpones accrual of the statute of limitations on the newly discovered
> claim.

Id. at 813. In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal
sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this
context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

     Here, on one hand, we have a breach of contract claim or copyright infringement claim
based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva
Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel
admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit.
On the other hand, we have the claims asserted here, for breach of contract and copyright
infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to
Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant
created these works during the period of his employment with Mattel.  Applied to the present case,
in the Court's view, the question the Court must ask is whether the first type of claim is based on
qualitatively different type of "wrongdoing" – as that term might be understood by lay persons –
than that which gives rise to the present claims.

     Thus framed, the Court considers the two claims:  Although they are similar in that they
both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they
are qualitatively different, however, in that the former situation involves the alleged taking of rights
known to Mattel while the latter involves the alleged concealment of certain creations that belong
to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel.  This
fundamental difference leads the Court to the conclusion that the latter claims, those asserted
here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon
Teens and/or Diva Starz.

     The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel
asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel
had knowledge of any one of the three generic elements of wrongdoing, causation, or damages,
coupled with suspicion of the remaining generic elements.  This determination cannot be made on
the undisputed record before the Court.

     Rather, MGA has raised triable issues of fact precluding summary judgment on the statute
of limitations issue.  Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the
discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time
would not have revealed a factual basis for that particular cause of action).

Initials of Deputy Clerk: gg
Time: 0/00

Exhibit J, p. 121

Case 2:04-cv-09049-DOC-RNB Document 5587-3 Filed 05/26/09 Page 52 of 96 Page ID
#:180162
Case 2:04-cv-09049-SGL-RNB    Document 3826    Filed 05/27/2008    Page 8 of 9

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening defendants." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]    The analysis is slightly different for the conversion claim. See infra at 9-10.

Initials of Deputy Clerk: gg
Time: 0/00

Exhibit J, p. 122

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 53 of 96   Page ID
#:180163
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 9 of 9

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL – GEN

Page 9

Initials of Deputy Clerk: gg
Time:  0/00

# EXHIBIT K

Case 2:04-cv-09049-DOC-RNB Document 5587-3 Filed 05/26/09 Page 55 of 96 Page ID
#:180165
Case 2:04-cv-09049-SGL-RNB Document 3902 Filed 06/02/2008 Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date:  June 2, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
==============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes
        Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:    ATTORNEYS PRESENT FOR MATTEL:

None Present                        None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
(IN CHAMBERS)**

    In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of Mattel's claims ("SOL Order"). At that time, the Court invited further, limited briefing from the parties regarding "what further conclusions regarding the timeliness of each claim should be drawn" in light of the Court's rulings. The parties filed further briefing in conformity with the Court's Order, which the Court has reviewed.

    As a result of the briefing, the Court discusses the following issues: (1) Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                              Initials of Deputy Clerk: jh
CIVIL -- GEN                   1

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]    This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk: jh

**Exhibit K, p. 125**

Case 2:04-cv-09049-DOC-RNB Document 5587-3 Filed 05/26/09 Page 57 of 96 Page ID
#:180167
Case 2:04-cv-09049-SGL-RNB Document 3902 Filed 06/02/2008 Page 3 of 4

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk: jh

Exhibit K, p. 126

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 58 of 96   Page ID
                                    #:180168
          Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 4 of 4

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks
important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish
copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid
copyright, (2) the defendant's access to the original, and (3) substantial similarity between the
copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture
Co., 345 F.3d 1140, 1144 (9th Cir. 2003). Here, although the date Mattel received details
regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive
copies of the Bratz drawings prior to November 23, 2003. Without the drawings, Mattel could not
assess the substantial similarity factor to determine whether it could assert a claim that the Bratz
dolls infringed Mattel's rights to them. Accordingly, on the undisputed record, the Court concludes
that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely
in its own right, and the Court need not resolve MGA's two arguments regarding relation back and
the rolling statute of limitations.[2]

IT IS SO ORDERED.

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard
> discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004)
> ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three
> years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of
> knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same
> conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does
> regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                    Initials of Deputy Clerk:  jh
CIVIL -- GEN                                    4

Exhibit K, p. 127

# EXHIBIT L

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

MATTEL, INC.,

            Plaintiff,

    vs.

MGA ENTERTAINMENT, INC.,

            Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. Stephen G. Larson

**FINAL JURY INSTRUCTIONS AS GIVEN**

# JURY INSTRUCTION NO. 1

Members of the Jury:  Now that you have heard all of the evidence and will soon hear the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Exhibit L, p. 129

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 62 of 96   Page ID
#:190413
Case 2:04-cv-09049-SGL-RNB   Document 4175   Filed 07/10/2008   Page 3 of 37

1

2

## JURY INSTRUCTION NO. 2

3

4       When a party has the burden of proof on any claim by a preponderance of

5   the evidence, it means you must be persuaded by the evidence that the claim is

6   more probably true than not true.

7

8       You should base your decision on all of the evidence, regardless of which

9   party presented it.

10

11       In criminal trials, the prosecution must prove that the defendant is guilty

12   beyond a reasonable doubt.  But in civil trials, such as this one, the party who is

13   required to prove something by a preponderance of the evidence need prove only

14   that it is more likely to be true than not true.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2          ## JURY INSTRUCTION NO. 3

3

4          The law defines cause in its own particular way.  A cause of injury, damage,

5    loss or harm is something that is a substantial factor in bringing about an injury,

6    damage, loss or harm.

7

8          A "substantial factor" is something which is more than a slight, trivial,

9    negligible, or theoretical factor in producing a particular result.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 131

**JURY INSTRUCTION NO. 4**

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

-4-

## JURY INSTRUCTION NO. 5

The evidence you are to consider in deciding what the facts are consists of:

(1) The sworn testimony of any witness;

(2) The exhibits which are received into evidence; and

(3) Any facts to which the lawyers have agreed.

-5-

## JURY INSTRUCTION NO. 6

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you.

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

-6-

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 67 of 96   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4715   Filed 07/10/2008   Page 8 of 37
#:180177

1

2

## **JURY INSTRUCTION NO. 7**

3

4        Some evidence may be admitted for a limited purpose only.

5

6        When I instruct you that an item of evidence has been admitted for a limited

7    purpose, you must consider it only for that limited purpose and for no other.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-

Exhibit L, p. 135

1
2
## JURY INSTRUCTION NO. 8
3

4       Evidence may be direct or circumstantial.  Direct evidence is direct proof of
5 a fact, such as testimony by a witness about what that witness personally saw or
6 heard or did.  Circumstantial evidence is proof of one or more facts from which
7 you could find another fact.  You should consider both kinds of evidence.  The law
8 makes no distinction between the weight to be given to either direct or
9 circumstantial evidence.  It is for you to decide how much weight to give to any
10 evidence.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 136

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 69 of 96   Page ID
#:180476
Case 2:04-cv-09049-SGL-RNB   Document 4175   Filed 07/10/2008   Page 10 of 37

1

2
## JURY INSTRUCTION NO. 9

3

4       If weaker and less satisfactory evidence is offered by a party, when it was

5  within that party's ability to produce stronger and more satisfactory evidence, the

6  evidence offered should be viewed with distrust.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 137

1
2
3

## JURY INSTRUCTION NO. 10

4       In deciding the facts in this case, you may have to decide which testimony to
5  believe and which testimony not to believe.  You may believe everything a witness
6  says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the
7  number of witnesses who testify about it.
8
9       In considering the testimony of any witness, you may take into account:
10
11       (1)    the opportunity and ability of the witness to see or hear or know
12  the things testified to;
13
14       (2)    the witness's memory;
15
16       (3)    the witness's manner while testifying;
17
18       (4)    the witness's interest in the outcome of the case and any bias or
19  prejudice;
20
21       (5)    whether other evidence contradicted the witness's testimony;
22
23       (6)    the reasonableness of the witness's testimony in light of all the
24  evidence; and
25
26       (7)    any other factors that bear on believability.
27
28

-10-     Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

**Exhibit L, p. 138**

1    The weight of the evidence as to a fact does not necessarily depend on the
2    number of witnesses who testify about it.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-11-                Case No. Case No. CV 04-9049 SGL (RNBx)

1

## JURY INSTRUCTION NO. 11

2

3

4      From time to time during the trial, it became necessary for me to talk with

5 the attorneys out of the hearing of the jury, either by having a conference at the

6 bench when the jury was present in the courtroom, or by calling a recess.  Please

7 understand that while you were waiting, we were working.  The purpose of these

8 conferences is not to keep relevant information from you, but to decide how certain

9 evidence is to be treated under the rules of evidence and to avoid confusion and

10 error.

11

12      Of course, we have done what we could to keep the number and length of

13 these conferences to a minimum.  I did not always grant an attorney's request for a

14 conference.  Do not consider my granting or denying a request for a conference as

15 any indication of my opinion of the case or of what your verdict should be.

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit L, p. 140

# JURY INSTRUCTION NO. 12

The parties have agreed to certain facts to be placed in evidence. You should therefore treat these facts as having been proved.

# JURY INSTRUCTION NO. 13

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 75 of 96   Page ID
#:180185
Case 2:04-cv-09049-SGL-RNB      Document 4855    Filed 07/10/2008    Page 16 of 37

1
2

## JURY INSTRUCTION NO. 14

3        The evidence that a witness has lied under oath on a prior occasion or given

4   inconsistent testimony under oath may be considered, along with all other

5   evidence, in deciding whether or not to believe the witness and how much weight

6   to give to the testimony of the witness and for no other purpose.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## JURY INSTRUCTION NO. 15

2

3

4      Evidence has been presented to you in the form of answers of one of the

5   parties to written interrogatories submitted by the other side.  These answers have

6   been given in writing and under oath, before the actual trial, in response to

7   questions that were submitted in writing under established court procedures.  You

8   should consider the answers, insofar as possible, in the same way as if they were

9   made from the witness stand by the party that responded to the written

10  interrogatories.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JURY INSTRUCTION NO. 16

Evidence has been presented to you in the form of admissions of one of the parties to written requests submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures.  The matters admitted are deemed conclusively established as to the party that made the admission.

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 78 of 96   Page ID
#:180188
Case 2:04-cv-09049-SGL-RNB   Document 4185   Filed 07/10/2008   Page 19 of 37

1
2

## JURY INSTRUCTION NO. 17

3       Some witnesses, because of education or experience, are permitted to state
4  opinions and the reasons for those opinions.
5
6       Opinion testimony should be judged just like any other testimony.  You may
7  accept it or reject it, and give it as much weight as you think it deserves,
8  considering the witness's education and experience, the reasons given for the
9  opinion, and all the other evidence in the case.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## JURY INSTRUCTION NO. 18

3

4          Certain charts and summaries not received in evidence have been shown to

5    you in order to help explain the contents of books, records, documents, or other

6    evidence in the case.  They are not themselves evidence or proof of any facts.  If

7    they do not correctly reflect the facts or figures shown by the evidence in the case,

8    you should disregard these charts and summaries and determine the facts from the

9    underlying evidence.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 147

1

## **JURY INSTRUCTION NO. 19**

2

3

4     Certain charts and summaries have been received into evidence to illustrate

5  information brought out in the trial.  Charts and summaries are only as good as the

6  underlying evidence that supports them.  You should, therefore, give them only

7  such weight as you think the underlying evidence deserves.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY INSTRUCTION NO. 20

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 149

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 82 of 96   Page ID
#:180192
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 23 of 37

## JURY INSTRUCTION NO. 21

In its first claim, Mattel contends that it has certain rights to all Bratz-related ideas, concepts, drawings, designs, and other works "conceived or reduced to practice," that is, created, by Carter Bryant, alone or jointly with others, while he was employed by Mattel, including Bratz drawings and the idea for the name "Bratz."

MGA and Isaac Larian deny Mattel's contention.

Mattel's claim is based on a contract between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement." As a matter of law, the Inventions Agreement is a valid and enforceable agreement.

Section 2(a) of the Inventions Agreement provides:

"I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly [with] others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title

-22-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

1    and interest in such inventions, and all my right, title and interest in any patents,

2    copyrights, patent applications or copyright applications based thereon. I will

3    assist the Company and/or its nominees (without charge but at no expense to me)

4    at any time in every proper way to obtain for its and/or their own benefit, patents,

5    

6    and copyrights for all such inventions anywhere in the world and to enforce its

7    and/or their rights in legal proceedings."

8    

9    

10    The Inventions Agreement defines the term "inventions" as follows:

11    

12    "[T]he term 'inventions' includes, but is not limited to, all discoveries,

13    improvements, processes, developments, designs, know-how, data computer programs

14    and formulae, whether patentable or unpatentable."

15    

16    To prevail on its first claim, Mattel must show, by the preponderance of the

17    evidence, that any particular Bratz-related idea, concept, drawing, design or work was

18    "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly

19    with others, while employed by Mattel.

20    

21    It is for you to decide what, if any, Bratz-related works were created by Mr.

22    Bryant, alone or jointly with others, while he was employed by Mattel.

23    

24    

25    

26    

27    

28

1

## JURY INSTRUCTION NO. 22

2

3      In its second claim, Mattel contends that that MGA and Isaac Larian

4  intentionally interfered with the Inventions Agreement between Mattel and Carter

5  Bryant.  To establish this claim, Mattel must prove the following by a

6  preponderance of the evidence:

7

8

9

10      1.      That there was a contract or contracts between Mattel and Carter

11  Bryant;

12

13

14      2.      That MGA and/or Mr. Larian knew of the contract;

15

16

17      3.      That MGA and/or Mr. Larian intended to disrupt the performance of

18  this contract;

19

20

21      4.      That the conduct of MGA and/or Mr. Larian prevented performance

22  or made performance more difficult;

23

24

25      5.      That Mattel was harmed in some way; and

26

27

28

Case 2:04-cv-09049-DOC-RNB   Document 5587-3   Filed 05/26/09   Page 85 of 96   Page ID
#:180195
Case 2:04-cv-09049-SGL-RNB    Document 4175    Filed 07/10/2008    Page 26 of 37

6.      That the conduct of MGA and/or Mr. Larian was a substantial factor

in causing Mattel's harm.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 153

1

## <u>JURY INSTRUCTION NO. 23</u>

3

4

As a matter of law, there was a valid contract between Mattel and Mr.

Bryant, namely the Inventions Agreement.

As a matter of law, Mr. Bryant directly competed with Mattel by entering

into a contract with MGA, Mattel's competitor, to produce a competing product

while he was still employed by Mattel. Whether the remaining requirements of

Mattel's claim for intentional interference with contractual relations have been

satisfied or not is for you to decide.

It is also a matter of law that MGA and/or Isaac Larian's mere offering of

employment to Carter Bryant would not be sufficient, by itself, to establish an

intentional interference with the contract between Mattel and Mr. Bryant.

## JURY INSTRUCTION NO. 24

In deciding whether MGA or Isaac Larian acted intentionally, you may consider whether they knew that a disruption in the performance of a contract or contracts was substantially certain to result from their conduct.

-27-

Exhibit L, p. 155

# JURY INSTRUCTION NO. 25

In its third and fourth claims, Mattel contends that MGA and Isaac Larian aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and (2) his duty of loyalty to Mattel. To establish that MGA and/or Mr. Larian are liable for aiding and abetting breaches of fiduciary duty or breach of the duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

1.    Mr. Bryant's conduct constituted a breach of such duty or duties;

2.    MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.    MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

# JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.    That Mr. Bryant owed a fiduciary duty to Mattel;

2.    That Mr. Bryant breached his fiduciary duty to Mattel;

3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

4.    That Mattel was harmed in some way; and

5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

## JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.    That Mr. Bryant was Mattel's employee;

2.    That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

4.    That Mattel was harmed in some way; and

5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 158

## JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 159

1    "'Proprietary Information' means any information (including formula,

2  pattern, compilation, device, method, technique or process) that derives

3

4  independent economic value, actual or potential, from not being generally known

5  to the public or to other persons who can obtain economic value from its disclosure

6  or use, and includes information on the Company, its customers, suppliers, joint

7

8  ventures, licensors, licensees, distributors, and other persons and entities with

9  whom the Company does business."

10

11

12    As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

13  he entered into a contract with MGA, Mattel's competitor, while still employed by

14  Mattel, to produce a line of fashion dolls to be marketed in direct competition with

15

16  Mattel's products.

17

18    At the same time, merely seeking employment from a competitor, and a

19

20  failure to notify an employer of a decision to seek new employment until a

21  decision is final, does not constitute a breach of duty of loyalty.

22

23

24

25

26

27

28

# JURY INSTRUCTION NO. 29

In its final claim, Mattel contends that MGA, MGA Entertainment (HK) Limited, and Isaac Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Mr. Bryant's drawings. To establish this claim for conversion, Mattel must prove the following by a preponderance of the evidence:

1.    That tangible property was "conceived or reduced to practice" --- that is, created --- by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000);

2.    That any of the defendants intentionally took possession of such property for a significant period of time;

3.    That Mattel did not consent;

4.    That Mattel was harmed; and

5.    That any one of the defendant's conduct was a substantial factor in causing Mattel's harm..

Exhibit L, p. 161

1

2

3

4

## JURY INSTRUCTION NO. 30

5

6     When you begin your deliberations, you should elect one member of the jury

7  as your presiding juror.  That person will preside over the deliberations and speak

8  for you here in court.

9

10    You will then discuss the case with your fellow jurors to reach agreement if

11  you can do so.  Your verdict must be unanimous.

12

13    Each of you must decide the case for yourself, but you should do so only

14  after you have considered all of the evidence, discussed it fully with the other

15  jurors, and listened to the views of your fellow jurors.

16

17    Do not hesitate to change your opinion if the discussion persuades you that

18  you should.  Do not come to a decision simply because other jurors think it is right.

19

20    It is important that you attempt to reach a unanimous verdict but, of course,

21  only if each of you can do so after having made your own conscientious decision.

22  Do not change an honest belief about the weight and effect of the evidence simply

23  to reach a verdict.

24

25

26

27

28

Exhibit L, p. 162

## JURY INSTRUCTION NO. 31

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit L, p. 163

1

2                    ## JURY INSTRUCTION NO. 32

3

4          A verdict form has been prepared for you.  After you have reached

5   unanimous agreement on a verdict, your presiding juror will fill in the form that

6   has been given to you, sign and date it, and advise the court that you are ready to

7   return to the courtroom.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit L, p. 164**