# EXHIBIT A

1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

O

| | |
|---|---|
| 11   CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12         Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| 13     vs. | ORDER GRANTING MATTEL, INC.'S |
| 14   MATTEL, INC., a Delaware | MOTION FOR PERMANENT<br>INJUNCTION |
|     corporation, | |
| 15         Defendant. | |
| 16 | |
| 17   AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

07209/2650992.1

EXHIBIT _A_

## ORDER

1

2          Having considered Mattel, Inc.'s Motion for Permanent Injunction (the

3  "Motion"), the opposition thereto, and all other papers, evidence and arguments

4  submitted in connection therewith, as well as the evidence admitted at trial and the

5  jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion

6  against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA

7  Hong Kong"), and Isaac Larian ("Larian") (MGA, MGA Hong Kong, and Larian

8  are, collectively, "Defendants"), and hereby ORDERS as follows:

9          1.      MGA, MGA Hong Kong, and Larian, along with their respective

10  officers, directors, principals, agents, representatives, servants, employees, affiliates,

11  successors or assigns, and any person or entity acting on their behalf or in concert or

12  participation with them, are hereby PERMANENTLY ENJOINED from

13  manufacturing, procuring the manufacture of, making, producing, reproducing,

14  copying, distributing, transferring, displaying, marketing, advertising, shipping,

15  importing, exporting, licensing, offering to license, selling or offering to sell:

16          (a)     Any doll, product or other item that embodies or depicts in whole

17                  or in part, or incorporates or uses in any manner, the head and/or

18                  body sculpt shown in Exhibit 1 (sometimes known as the "core

19                  Bratz fashion doll production sculpt"), which is incorporated

20                  herein by this reference.

21          (b)     Any doll, product or other item that embodies or depicts in whole

22                  or in part, or incorporates or uses in any manner, the head and/or

23                  body sculpt shown in Exhibit 2 (sometimes known as the "Bratz

24                  Movie sculpt"), which is incorporated herein by this reference.

25          (c)     Any doll shown in Exhibits 3 to 4, inclusive, which are

26                  incorporated herein by this reference, except Cloe's younger

27                  sister depicted at Exhibit 3, page 277; the younger version of

28                  Yasmin depicted at Exhibit 3, page 278; and the younger Alicia

EXHIBIT ___A___

PAGE ___5___

-2-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

depicted at Exhibit 4, page 379, if those dolls are packaged separately from a doll that includes a doll incorporating the core Bratz fashion doll production sculpt or Bratz Movie sculpt (Exhibits 1 and 2).

(d)    Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive, which are incorporated herein by this reference, except the dolls depicted at Exhibit 5, pages 551 through 555, inclusive, and the dolls depicted at Exhibit 6, pages 556, 557, 558, and 565.

(e)    Any product, packaging or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the artwork shown on the packaging set forth in Exhibit 7, which is incorporated herein by this reference.

(f)    Any doll, product, packaging or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and Sasha Bratz characters, including without limitation the items shown in Exhibits 3 and 5, which are incorporated herein by this reference.

(g)    Any marketing or advertising materials that embody or depict in whole or in part, or incorporate or use in any manner, any of the dolls, products, items or other matter described in paragraphs (a) through (f) above, including without limitation the marketing or advertising materials shown in Exhibits 8 (screen captures from television commercials) to 9 (print advertisements depicting any dolls incorporating the core Bratz fashion doll production sculpt or Bratz Movie sculpt (Exhibits 1 and 2), inclusive, which are incorporated herein by this reference.

(h)    Any doll, product, packaging, advertising or other item or materials that counterfeits, copies or is substantially similar to

EXHIBIT ___A___

PAGE ___6___

-3-

07209/2650992.1

1            Mattel's copyright protected head and/or body sculpt shown in

2            Exhibit 10, which is incorporated herein by this reference,

3            including without limitation the Bratz fashion dolls known as

4            Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna,

5            Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee,

6            Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora,

7            Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya,

8            Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and

9            all other dolls employing a sculpt which is substantially similar

10           to Exhibit 10.

11      (i)     Any doll, product, packaging, advertising or other item or

12            materials that embodies or depicts in whole or in part, or

13            incorporates or uses in any manner, any of the Jade, Cloe,

14            Yasmin and Sasha Bratz characters depicted or described in

15            Exhibit 11, which is incorporated herein by this reference; and

16      (j)     Any doll, product, packaging, advertising or other item or

17            materials that counterfeit, copy or are substantially similar to

18            Mattel's Bratz-related copyrighted works, including without

19            limitation such works in Exhibits 11 and 12, inclusive, which are

20            incorporated herein by this reference.

21      2.     MGA, MGA Hong Kong, and Larian, along with their respective

22 officers, directors, principals, agents, representatives, servants, employees, affiliates,

23 successors or assigns, and any person or entity acting on their behalf or in concert or

24 participation with them, are further hereby PERMANENTLY ENJOINED from

25 engaging in any of the following acts:

26      (a)     Copying, imitating, selling, offering to sell, marketing,

27            distributing, importing, displaying or making any use of the

28

EXHIBIT __A__

PAGE __7__

-4-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

1    copyrighted works shown in Exhibits 10 to 12, inclusive, which
2    works are owned by Mattel.

3    (b)    Engaging in any and all further acts of infringement of the
4    copyrighted works shown in Exhibits 10 to 12, inclusive, which
5    works are owned by Mattel.

6    (c)    Asserting any ownership of rights or any right, title or interest in
7    the copyrighted works shown in Exhibits 10 to 12, inclusive,
8    which works are owned by Mattel.

9    (d)    Transferring, disposing of, destroying, spoliating or secreting any
10    documents, records, recordings or materials, whether in
11    electronic or non-electronic form, that evidence, relate to or
12    pertain to any aspect of the dolls, products, packaging, items or
13    other materials referred to in paragraphs 1(a) through 1(k) above,
14    inclusive, including without limitation any and all agreements,
15    contracts, correspondence, communications, invoices, purchase
16    orders, sales orders, manufacturing records, import or export
17    records, sales records, ledgers, inventory records and shipping
18    records relating thereto.

19    (e)    Transferring, disposing of, destroying, spoliating or secreting any
20    documents, records, recordings or material, whether in electronic
21    or non-electronic form, that in any manner evidence, relate to or
22    pertain to any products, services or activities using or displaying
23    any simulation, counterfeit, reproduction or copy of, or are
24    derived from, Mattel's copyrighted works shown in Exhibits 10
25    to 12, inclusive, which are incorporated herein by this reference.

26    (f)    Transferring, disposing of, destroying, spoliating, secreting or
27    exporting any products, product packaging, labels, signs, prints,
28    dies, wrappers, receptacles, advertisements or any other tangible

07209/2650992.1

EXHIBIT ___A___

PAGE ___8___

-5-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

1            items (including without limitation computer files) that in any

2            manner utilize, contain, evidence, reproduce, display, or relate to

3            any simulation, counterfeit, reproduction or copy of, or are

4            derived from, (i) the dolls, products, packaging, items or other

5            materials referred to in paragraphs 1(a) through 1(k) above,

6            inclusive, or (ii) Mattel's copyrighted works shown in Exhibits

7            10 to 12, inclusive, which are incorporated herein by this

8            reference.

9     (g)    Transferring, disposing of, destroying, spoliating, secreting or

10           exporting any plates, molds, matrices, and other means of

11           making or manufacturing (i) the dolls, products, packaging,

12           items or other materials referred to in paragraphs 1(a) through

13           1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy,

14           substantially similar likeness, or derivative of Mattel's

15           copyrighted works shown in Exhibits 10 to 12, inclusive.

16     (h)    Assisting, aiding or abetting any other entity or person in

17           engaging in or performing any of the activities referred to in

18           paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a)

19           through 2(h), inclusive.

20     3.    At Defendants' expense, Defendants shall deliver to Mattel's

21 counsel for impoundment, at such location in the Central District of California as

22 Mattel's counsel may direct, all dolls, products, product packaging, labels, signs,

23 prints, dies, wrappers, receptacles and advertisements, in the direct or indirect

24 possession, custody or control of Defendants, their officers, directors, principals,

25 agents, servants, employees, successors or assigns, or any person or entity acting on

26 their behalf or in concert or participation with them, that are referred to in

27 paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h),

28

EXHIBIT ___A___

PAGE ___9___

-6-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

1   inclusive, together with all plates, molds, matrices and other means of making the

2   same. Mattel's counsel is hereby appointed substitute custodian for all such items.

3       4.   Defendants are hereby ORDERED to procure the return, and to

4   withdraw and recall, from any and all channels of trade and distribution, including

5   without limitation from retail shelves and from on-line retailers, all of the dolls and

6   doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in

7   paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such

8   dolls and doll products, Defendants shall refund all monies paid by each entity or

9   person in connection with such dolls and doll products and shall reimburse each

10   such entity or person for all associated shipping charges.

11       5.   Defendants shall hand serve upon Mattel's counsel a declaration,

12   made under oath, that sets forth fully and completely the following information:  (a)

13   the identity of each and every doll, product, package or other item manufactured,

14   marketed, displayed, distributed, imported, exported, sold or offered for sale by or

15   for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or

16   in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package

17   or other item, the number of units manufactured, marketed, displayed, distributed,

18   shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for

19   each unit of each such doll, product, package or other item, the purchaser, transferee

20   or recipient of each such unit(s), the quantities acquired by such purchaser,

21   transferee or recipient and complete contact information (including limitation the

22   address, telephone number, fax number and email address where known) for each

23   such purchaser, transferee or recipient; (d) for each unit of such doll, product,

24   package or other item, the current or last known location of each such unit,

25   including without limitation the location of all such dolls, products, package or other

26   items in Defendant's inventory; and (v) for each person or entity to whom or which

27   Defendants have promoted, advertised, marketed or offered to sell any doll, product,

28   package or other item that is the subject of this Order, the identity of, and complete

1  contact information for (including limitation the address, telephone number, fax

2  number and email address where known), each such person or entity.

3        6.    At Defendants' expense, Defendants shall make written contact

4  (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler,

5  importer, exporter, customer, licensee or any other person and entity to or through

6  whom Defendants have shipped, transferred, imported, exported or sold any doll,

7  product or other item that is the subject of this Order; and (ii) each retailer,

8  distributor, wholesaler, licensee, potential licensee, customer, potential customer or

9  any other person and entity who Defendants have contacted (whether by mail,

10  electronic mail, orally or otherwise) within the past ninety (90) days in marketing,

11  promoting or advertising any doll, product or other item that is the subject of this

12  Order, and shall provide each such person and entity with a copy of this Order and

13  with a verbatim copy of the following notice, in legible and conspicuous print, in its

14  entirety (hereinafter, the "Notice"):

15  NOTICE PUBLISHED PURSUANT TO

16  ORDER OF THE UNITED STATES DISTRICT COURT

17      YOU ARE HEREBY ADVISED as follows:

18
19      Recently you may have bought, seen, or been contacted regarding, the sale of Bratz dolls or other Bratz products.

20
21      Pursuant to the rulings of the United States District Court, Mattel is the owner of Bratz-related copyrights that are infringed by Bratz dolls,
22  products and packaging manufactured by or for MGA.

23      The Court has ordered MGA to immediately cease any further
24  manufacture, sale, promotion, shipment or distribution of Bratz dolls, products and packaging.

25
26      In addition, the Court has ordered that Bratz dolls must be returned immediately to the following address:  MGA Entertainment, Inc., Attn:
27  Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA
28  91406.

EXHIBIT _____A_____

PAGE _____11_____

-8-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

MGA will refund to you all monies paid by you for these dolls and reimburse you for all associated shipping charges.

7.     At Defendants' expense, Defendants shall post in legible and conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6, above, upon the home page of MGA's web site at www.mgae.com beginning within twenty-four hours of receipt of notice of this Order and continuing for a period of no less than one hundred and twenty (120) days.

8.     Defendants, and any person or entity acting on their behalf or in concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2 of this Order immediately, shall fully comply with Paragraph 6 of this Order within two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5 of this Order within seven (7) calendar days of the date of this Order and shall fully comply with Paragraphs 3 and 4 of this Order within thirty (30) days of this Order. In the event that any additional doll, product or item that is the subject of this Order subsequently is delivered to or comes within the direct or indirect possession, custody or control of Defendants, Defendants shall deliver such additional doll, product or item to Mattel's counsel within two (2) calendar days in accordance with the terms of Paragraph 3, above.

9.     Within forty (40) calendar days of the date of this Order, Defendants shall file with the Court, and personally serve on counsel for Mattel, a report in writing under oath setting forth the actions taken to comply with the terms herein pursuant to 15 U.S.C. § 1116(a).  Such Report shall have appended to it complete, true and accurate copies of each communication ordered to be sent pursuant to Paragraph 6 of this Order.

10.     Pursuant to Federal Rule of Civil Procedure 53, the Court hereby appoints a special master to supervise implementation of the requirements of this Order (the "Special Master").

1          11.   Any and all disputes arising out of this Order and/or motions or
2    applications seeking to enforce the terms of this Order shall be presented to the
3    Special Master for resolution in the first instance, once the Special Master is
4    appointed.  The Special Master shall have the authority to set the time, place and
5    manner of hearings and other proceedings he or she will conduct; to preside over
6    hearings, whether telephonic or in person; to take evidence in connection with
7    disputes before the Special Master; to make inspections in connection with the
8    requirements of this Order, including inspections of Defendants' facilities and
9    warehouses; to issue orders resolving motions, applications and matters arising out
10   of this Order and/or seeking to enforce the terms of this Order; to issue orders
11   awarding non-contempt sanctions, including, without limitation, the award of
12   attorney's fees; and to issue reports and recommendations on matters for which the
13   Special Master lacks jurisdiction to issue an order, including, without limitation,
14   reports and recommendations regarding contempt sanctions.  In addition to any
15   other filing procedures the Special Master may permit, the Special Master shall
16   permit the filing of *ex parte* applications to enforce the terms of this Order, which
17   must be heard and adjudicated within ten (10) calendar days of filing.  A party may
18   bring an *ex parte* application for relief pursuant to this provision only upon
19   certifying, as an officer of the Court, that such expedited adjudication is required
20   and could not be avoided in due course.  The parties shall file with this Court,
21   contemporaneously, the original of all submissions made to the Special Master such
22   that the Court's Docket shall be complete and include all pertinent submissions.
23   Third parties shall be bound by the Special Master's orders to the same extent as
24   Orders of this Court.
25         12.   The Special Master's orders, reports and recommendations shall
26   be treated as rulings made by a Magistrate Judge of this Court and may be reviewed
27   in the same manner and pursuant to the same procedures as this Court reviews such
28   orders, reports and recommendations of a Magistrate Judge.  A court reporter shall

1  transcribe all hearings and proceedings held before the Special Master.  The Special

2  Master's fees, and other costs incurred in connection with proceedings before the

3  Special Master, including the fees of court reporters, shall be paid one-half by

4  Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the

5  Federal Rules of Civil Procedure, the Special Master orders otherwise.  The Special

6  Master shall not have *ex parte* communications with a party or counsel.

7        13.    The Special Master shall be authorized to receive information

8  designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES

9  ONLY" pursuant to the protective order dated January 4, 2005.

10       14.    This Court shall have jurisdiction to interpret and enforce the

11  terms of this Permanent Injunction and to determine any issues which may arise

12  concerning this Permanent Injunction.

13            **IT IS SO ORDERED**.

14  DATED:  December 03, 2008

                                    Hon. Stephen G. Larson
15                                  United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _A_

PAGE _14_

-11-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

07209/2650992.1

# EXHIBIT B

O

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) Consolidated with |
| 12              Plaintiff, | Case Nos. CV 04-09059 & CV 05-2727 |
| 13        vs. | |
| 14  MATTEL, INC., a Delaware corporation, | ORDER GRANTING DECLARATORY JUDGMENT |
| 15 | |
| 16              Defendant. | |
| 17  AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT  B

PAGE  15

## ORDER

1.    The Court hereby DECLARES that Mattel owns all right, title and interest, including any and all copyright rights, in and to the Bratz-related works, ideas, and concepts that Carter Bryant conceived or created while employed by Mattel, as found by the jury in this case, including the idea for the name "Bratz" and the idea for the "Bratz" characters, which are protectible property interests as a matter of California state law, and the following works (identified by Trial Exhibit (TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

-2-

[PROPOSED] ORDER

EXHIBIT _B_

PAGE _16_

| |
|---|
| TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| TX 5-63, 758, 759, 760 |
| TX 5-64, 62-6, 795, 1152-14, 1750 |
| TX 5-65, 1152-7, 1152-8, 11789 |
| TX 5-66, 794, 1152-13 |
| TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| TX 5-73, 741, 742 |
| TX 5-76, 706 |
| TX 5-77, 707 |
| TX 5-78, 10539, 18501 |
| TX 5-136, 711 |
| TX 10579, 18281 |
| TX 15172 |
| TX 3-1, 779, 780, 1-1, 2-1, 778 |
| TX 3-2, 726, 727, 728, 1-4, 2-5 |
| TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| TX 3-5, 791, 1-8, 2-2 |
| TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| TX 3-10, 735, 736 |
| TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| TX 3-13, 793, 1-5, 2-3, 10-3 |
| TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| TX 1-2 |
| TX 3-11, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-

[PROPOSED] ORDER

EXHIBIT _____ B

PAGE _____ 17

| |
|---|
| TX 5-26, 712 |
| TX 5-27, 713 |
| TX 5-81, 720 |
| TX 5-82, 715 |
| TX 5-83, 723 |
| TX 3-4, 5-84, 716, 717 |
| TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| TX 5-80, 721, 722, 5-86 |
| TX 5-87, 5-108, 724, 725 |
| TX 5-34 |
| TX 5-89, 35-2, 323-32, 323-33 |
| TX 1107, 10638 |
| TX 1108, 10639 |
| TX 1109, 771 |
| TX 1110, 773 |
| TX 5-14, 10515 |
| TX 5-18, 10518 |
| TX 5-19, 10519 |
| TX 5-28, 10526 |
| TX 5-30 |
| TX 5-95 |
| TX 5-96 |
| TX 5-99 |
| TX 323-18 |
| TX 323-19 |
| TX 323-26 |
| TX 1136 |
| The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

[PROPOSED] ORDER

07209/2641997.3

EXHIBIT B

PAGE 18

1      2.      The Court further hereby DECLARES that MGA Entertainment Inc.

2 ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do

3 not have any right, title or interest in or to the works, ideas and/or concepts listed

4 above. Any purported assignment from Carter Bryant to MGA of the rights to the

5 works, ideas or concepts listed above, including any purported assignment of such

6 rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,

7 2000, was invalid, ineffectual and void ab initio.

8      3.      In addition, the Court hereby ORDERS that all copyright registrations

9 MGA has obtained in and for the Bratz works listed above, including Registration

10 Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-

11 218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491

12 (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have

13 been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such

14 registrations.

15      4.      The Court further hereby ORDERS that all Bratz-related works listed

16 in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that

17 Defendants shall deliver the originals of such works to Mattel forthwith.

18            IT IS SO ORDERED.

19

20

21 DATED: December 3, 2008

22                           Hon. Stephen G. Larson

                           United States District Judge

23

24

25

26

27

28

[PROPOSED] ORDER

EXHIBIT _B_

PAGE _19_

# EXHIBIT C

O

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  | CARTER BRYANT, an individual,  | CASE NO. CV 04-09049 SGL (RNBx)
                                        Consolidated with
12  |          Plaintiff,            | Case Nos. CV 04-09059 & CV 05-2727

13  |       vs.

14  | MATTEL, INC., a Delaware       | **ORDER GRANTING MATTEL'S
      corporation,                     MOTION FOR CONSTRUCTIVE
15                                      TRUST AND FOR FINDING
                                        LIABILITY AND INJUNCTIVE
16  |          Defendant.              RELIEF PURSUANT TO CAL. BUS. &
                                        PROF CODE § 17200**

17  | AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

07209/2649025.3

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

EXHIBIT ___C___

PAGE ___20___

## ORDER

1          Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive Trust and for a Finding of Liability and Injunctive Relief Pursuant to California Business & Professional Code § 17200, and all other papers and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

          1.    A constructive trust in favor of Mattel on all rights to trademarks, service marks and domain names held by MGA or Larian, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," including all such trademark registrations and trademark applications (including, without limitation, United States Trademark Registrations identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465, 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614, 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942, 2789216 and 2836780 and United States Trademark Applications identified by Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100, 78490324, 77443372 and 77575881), and the good will inhering therein, as well as all such domain name registrations, is HEREBY ORDERED and all rights therein are ORDERED transferred to Mattel.

          2.    MGA and Larian are HEREBY ORDERED to (a) identify all trademark registrations and applications held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in which they, or any person or entity acting on their behalf or for their benefit, claim to own trademark rights, whether or not such marks are subject to existing trademark registrations or pending trademark applications, (c) identify all domain

EXHIBIT   C

PAGE   21

1  names and domain name registrations held by them, or any person or entity acting

2  on their behalf or for their benefit, anywhere in the world that include the terms

3  "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the

4  transfer and/or assignment of such marks and domain names and associated

5  applications and registrations to Mattel.  MGA shall fully comply with (a), (b) and

6  (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7           3.      The Court HEREBY FINDS that the MGA Defendants violated

8  California Business and Professions Code § 17200 and are liable to Mattel on its

9  twelfth claim for relief for unfair competition.

10          4.      The MGA Defendants, along with their respective officers,

11  directors, principals, agents, representatives, servants, employees, affiliates,

12  successors or assigns, and any person or entity acting on their behalf or in concert or

13  participation with them, are HEREBY PERMANENTLY ENJOINED from (a)

14  using the terms "Bratz" or "Jade," either alone or in combination and whether as a

15  trademark, domain name or otherwise, in connection with the manufacture,

16  promotion, advertising, distribution, offering for sale or sale of any goods or

17  services anywhere in the world and (b) taking any action to preclude Mattel from

18  using the terms "Bratz" or "Jade" in any such manner, including without limitation

19  as a mark in connection with goods and services.

20          **IT IS SO ORDERED.**

21

22  DATED:  December 3, 2008

23                                                    Hon. Stephen G. Larson
                                                        United States District Judge

24

25

26

27

28

07209/2649025.3

-3-

EXHIBIT ___C___

PAGE ___22___

# EXHIBIT D

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                     Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            James Holmes                          None Present
            Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                      1

EXHIBIT ___D___
PAGE ___23___

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are:  (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above.  In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

EXHIBIT    D

PAGE    24

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

### I.   The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver.  As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.      Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant."  Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004).  The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable.  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties.  The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004.  MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties.").  Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

EXHIBIT   D
PAGE      25

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                    4

EXHIBIT ___D___

PAGE ___26___

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II.  Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2]  Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

EXHIBIT   D

PAGE   27

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL – GEN                                    6

EXHIBIT  D

PAGE  28

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

**B.      § 17200 Violation**

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

7                    Initials of Deputy Clerk: jh

EXHIBIT ___*D*___

PAGE ___*29*___

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion).  The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding.  <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act.  The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV.  Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN

8

Initials of Deputy Clerk: jh

EXHIBIT __D__
PAGE __30__

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

9

Initials of Deputy Clerk: jh

EXHIBIT __D__

PAGE __31__

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5] Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101. Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money. You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products. And the jury has put that cap for us.

Id. Although colorful, counsel's metaphor is not helpful. Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it. But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well. See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

EXHIBIT   D

PAGE   32

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk: jh

EXHIBIT __D__

PAGE __33__

Case 2:04-cv-09049-DOC-RNB   Document 5624-2   Filed 05/27/09   Page 35 of 51   Page ID
#:181224
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 12 of 17

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT ___D___

PAGE ___34___

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

### 2.       Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.       Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities favor Mattel.

### 4.   Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern.  However, there is also a strong public interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law.  Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement.  The injunction issued by the Court does no more than that.

### C.   Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.   Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little.  In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.   Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]   No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                             14

EXHIBIT _D_

PAGE _36_

### 3.     Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.     Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT _D_

PAGE _38_

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

### XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases
1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop
computer until after its ruling on the motions referred to in section IX, above, and the parties are
directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-
filing of excerpts of transcripts cited in their anticipated motions.

### XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges
given the limited resources of the Court.  The permanent injunction, for reasons explained by
Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the
Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs
Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent
injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk: jh

EXHIBIT ___D___
PAGE ___39___

# EXHIBIT E

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                           Date: January 7, 2009

Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

         Jim Holmes                          None Present
         Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                         None Present

PROCEEDINGS:   **ORDER MODIFYING STAY OF PERMANENT INJUNCTION**

               **ORDER APPOINTING FORENSIC AUDITOR**

        After an initial hearing on December 30, 2008, and a sealed hearing on January 5, 2009, and after consideration of the parties' papers relating to the MGA parties' motion for stay pending appeal (which specific relief the Court denied for the reasons stated on the record), and after consideration of the parties' papers relating to Mattel's ex parte application to appoint a receiver, the Court issues the following Order modifying the stay set forth in the Court's December 3, 2008, Order, and appointing a forensic auditor.

               **MODIFYING STAY OF PERMANENT INJUNCTION**

        Notwithstanding any previous Order of the Court, the December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4439), shall remain **STAYED**, ineffective and non-final, until further order of the Court. Specifically, retailers and distributors will be permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009.

        In the event that the Court awards control over the rights to the Bratz products referenced in the Court's December 3, 2008, Order and the January 7, 2009 Stipulation and Order (regarding

MINUTES FORM 90                                Initials of Deputy Clerk __jh_____
CIVIL -- GEN                      1

EXHIBIT __E_____

PAGE ___4()_____

i

the Spring and Fall 2009 lines) to a Court-appointed receiver or to Mattel, Inc., that award will be subject to a requirement that retailers and distributors be permitted to purchase the Spring and Fall 2009 lines up to and including December 31, 2009.

## APPOINTMENT OF FORENSIC AUDITOR

As discussed on the record, the Court **HOLDS IN ABEYANCE** Mattel's ex parte application for appointment of a receiver pending a forensic audit of MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment Hong Kong.

For good cause shown, the Court hereby **APPOINTS** Ronald L. Durkin to serve as the Court's forensic auditor (hereinafter referred to as "the Auditor"). Mr. Durkin's qualifications appear in an attachment to this Order. The Court has provided the Auditor with the parties' attorneys' contact information. The Auditor shall direct his initial communications to counsel.

Defendants MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment Hong Kong, shall provide the Auditor with access to any and all MGA records, regardless of the medium or media of the maintenance of those records, **including but not limited to the "Document/Information Request List" attached to this Order,** that the Auditor deems necessary to enable him to provide the Court with a report, in camera, regarding MGA's finances sufficient to enable the Court to determine whether or not appointment of a receiver is warranted. The audit shall extend to any and all related entities as the Auditor deems necessary. Defendants shall also make available for interview individuals identified to them by the Auditor. Defendants shall make its computer systems, physical premises, and offices, available to the Auditor upon his reasonable request during normal business hours. Defendants shall permit the Auditor's reasonable use of its office machines, such as copiers and fax machines, as may be necessary to complete the audit.

The Auditor shall have the authority to seek the services of fellow professionals (as well as para-professionals and support staff) necessary to accomplish the Court-appointed audit. The provisions of this Order extend to the Auditor's delegatees as he so directs. The Auditor and his delegatees shall be compensated at their reasonable customary hourly rates.

The expense of the forensic audit shall be borne, in the first instance, by Mattel. After the Court considers the Auditor's report[s], the Court will consider whether the audit expenses should be shared with, or shifted completely to, defendants, based on the equities. The Auditor and his team shall submit periodic billing statements to Mattel at an address specified by Mattel's counsel.

All parties (and individuals and entities under their control) shall cooperate with the Auditor so that he may report to the Court in an expeditious manner.

**IT IS SO ORDERED.**

EXHIBIT _E_____

PAGE _41_____

**FORENSIC AUDITOR
DOCUMENT/INFORMATION REQUEST LIST
January 7, 2009**

1.　　Audited financial statements for the last three years.  If audited financial statements are not available, then the most current draft of financial statements for the last three years.

2.　　Quarterly financial statements for the last three years.

3.　　Detailed electronic monthly general ledgers and trial balances for the last three years. If electronic files are not available, then please produce in hard copies.

4.　　Detailed electronic revenue or sales subsidiary ledgers for the last three years.  If electronic files are not available, then please produce the request in hard copies.

5.　　Detailed electronic receipts or cash subsidiary ledgers for the last three years.  If electronic files are not available, then please produce in hard copies.

6.　　Detailed electronic accounts payables and disbursements subsidiary ledgers for the last three years.  Details should include, but should not be limited to, vendor/payee ID, vendor/payee name, check/payment number, payment date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), payment amount, currency indicator (if other than US dollars), foreign exchange rate (if other than US dollars), invoice number, invoice date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), invoice amount, comment or description, and any other information contained in the file.  If electronic files are not available, then please produce in hard copies.

7.　　Detailed electronic vendor master files of all active and inactive vendors for the last three years. Details should include, but should not be limited to, vendor ID, vendor name, status (active/inactive), vendor address (including City, State, Zip, Country), date created, created by user ID. If electronic files are not available, then please produce in hard copies.

8.　　Detailed electronic payroll files for the last three years.  Details should include, but not be limited to, employee ID, employee name, payment date, payment number, deductions (e.g. tax, contributions, etc.), gross payment amount, net payment amount, and any other information contained in the file. If electronic files are not available, then please produce in hard copies.

9.　　Any and all records that substantiate transfers of assets to other entities, individuals, and/or parties, within the US and outside of the US.

10.　　Copies of all bank statements, canceled checks, wire instructions, and all other information and notices sent with bank statements for the last three years.

MINUTES FORM 90
CIVIL -- GEN　　　　　　　　　3　　　　　　　Initials of Deputy Clerk __jh_____

EXHIBIT __E____
PAGE __42____

11.    Federal and state tax returns for the last three years.

12.    A summary of all contributions, loans and any sources of funding during the last twelve months. Copies of agreements and/or contracts supporting these transactions.

13.    A summary of all related party transactions detailing any compensation, loans, advances, payments, fees or any other form of consideration paid to Isaac Larian, family members, or affiliates, or any other related party.

14.    Detail of all loan facilities with an indication of creditor and relevant terms.

15.    Copies of any notices from federal or state tax authorities regarding audits or audit adjustments during the last 3 years.

16.    All detailed corporate credit card statements for the last three years.  If electronic files are not available, then please produce in hard copies.

17.    Information and documents regarding expense reimbursement of owners, officers, employees, family members, or affiliates.

18.    Detailed human resources files (electronic) of all employee information (for all current and terminated employees to date) including but not limited to employee name, employee number, address, phone number, start date, termination date, status, position, social security number, and any other information contained in the files.  If electronic files are not available, then please produce in hard copies.

19.    Electronic files of all emails including attachments to the emails from the network server and from backup tapes (please identify dates of backup tapes in order for selection of time period).

20.    Forensic images of personal computer hard drives and PDAs of selected individuals.

MINUTES FORM 90
CIVIL -- GEN                                    4                    Initials of Deputy Clerk __jh_____

EXHIBIT ___E_____
PAGE ___43_____





Ronald L. Durkin
CPA/CFF, CFE, CIRA

**Senior Managing Director**

619 481 5201

rdurkin@durkinforensic.com

701 B Street Suite 1310
San Diego, CA 92101

Ronald L. Durkin is a CPA with over 30 years combined experience in public accounting and as a Special Agent with the FBI. He has testified in accounting, financial, and bankruptcy matters in U.S. District Court, U.S. Bankruptcy Court, U.S. Tax Court and in various State courts. During his tenure with the FBI, Ron was responsible for investigations involving white collar crime, political and public corruption, money laundering, organized crime, labor racketeering, racketeer-influenced and corrupt organization statute (RICO) violations, and narcotics matters. Since leaving the FBI, he has assisted clients in matters involving fraud prevention, detection, and internal investigations. He has worked on cases involving Foreign Corrupt Practices Act, employee embezzlement, management fraud, financial statement fraud, conflict-of-interest, check kiting, bankruptcy fraud, money laundering, and Ponzi schemes.

In 2008 Ron retired from KPMG. While at KPMG, Ron was the National Partner in Charge of the Fraud and Misconduct Investigations practice and served as the Western Region's forensic practice leader as well as the office coordinating partner for the Los Angeles office's forensic practice.

EXHIBIT ___E___

PAGE ___44___



## Service Lines

Fraud & Misconduct Investigations
Fraud Risk Management
Forensic in the Audit/Shadow Procedures

## Education and Certifications

Bachelor of Science, Accounting,
California State University, Sacramento

Masters of Business Administration
(Emphasis in Accounting), California
State University, Sacramento

Certified Public Accountant,
licensed in California, Arizona,
Nevada, and Washington

Certified in Financial Forensics

Certified Fraud Examiner

Certified Insolvency and
Restructuring Advisor

He is a frequent speaker at the FBI Academy and at the AICPA National Fraud Conference, California and other State CPA Societies, and he has made presentations to the IRS Criminal Investigative Division and the U.S. Postal Inspectors CPA seminars. He is a member of the AICPA National Accreditation Commission and a former member of the Business Valuation and Forensic Litigation Services Executive Committee. He is the former chair of the AICPA Anti-Fraud Programs and Controls Task Force and past chair of the AICPA Litigation and Dispute Resolution Services Subcommittee. Ron is also the Chair of the California Society of CPA's Litigation Services Steering Committee and the past Chair of the California Society of CPAs Fraud Section.

Ron was a 2003 AICPA Volunteer of the Year. Ron was also honored with the Distinguished Achievement Award by the AICPA in 2006 for his long time commitment to the AICPA. In 2007, Ron was awarded the first-ever FLS Lifetime Achievement Award by the AICPA.

EXHIBIT _E_

PAGE _45_



## Professional Associations

American Institute of Certified Public Accountants (Immediate Past Chair of Litigation & Dispute Resolution Services Subcommittee) – member since 1995

California Society of Certified Public Accountants (member of Steering Committee for statewide Litigation Services Sections and Chair of Fraud Section)

Association of Certified Fraud Examiners (Member of Faculty since 1995)

Association of Insolvency and Restructuring Advisors

Society of Former Special Agents of the FBI

Institute of Internal Auditors

## Investigative and Integrity Advisory Experience

On an International level, he has worked on a number of matters involving alleged Foreign Corrupt Practices Act (FCPA) violations. Working on behalf of U.S. based companies, Ron investigated allegations that members of management of foreign subsidiaries were involved in either bribing foreign officials, diverting corporate opportunities and funds, or conspiring with others to defraud U.S. based victims.

Conducted an investigation of certain allegations of political and public corruption surrounding an International sporting event that was to be held in the US. The allegations involved FCPA, bribery, and public corruption.

Conducted an investigation of an alleged kickback scheme on the part of a purchasing manager of a global technology company.

Conducted an internal investigation with a multi-national corporation regarding corruption involving a former manager in the accounts receivable department. The case was referred to the United States Attorney's Office and the FBI for prosecution.

EXHIBIT _____E_____

PAGE _____46_____



Conducted an internal investigation, on behalf of a publicly traded company, regarding alleged diversion of funds with the accounts payable department. The case was referred to the United States Attorney's Office and the FBI for prosecution.

Investigated allegations of fraud in the real estate industry, including new construction projects, as well as management and operation of office buildings, apartment buildings and shopping centers.

Investigated allegations of corruption by certain members of a County Board of Supervisors who were indicted by a Federal Grand Jury.

Served as an undercover agent in a case involving 35 State Court judges who were indicted and convicted of public corruption.

Conducted a number of investigations of cases involving Pyramid and Ponzi schemes. He also has testified in U.S. District Court, State Court, and Bankruptcy Court in several of these cases.

During career with the FBI and as a bankruptcy trustee, investigated allegations of fraud, corruption and organized crime within the solid waste industry.

EXHIBIT __E__

PAGE ___47___



As the Chapter 11 Trustee of two failed insurance agencies, he conducted investigations into allegations of fraud and mis-management on the part of senior management.

As a Chapter 7 Trustee, Chapter 11 Trustee, and Examiner in bankruptcy matters, has conducted hundreds of investigations where allegations of fraud have been alleged.

Served as a "keeper" for the Department of Corporations, investigated a State securities fraud matter.

Served as trustee of the parent of one of the largest financial institutions in California where securities fraud and other ac-tions were alleged against senior management.

EXHIBIT _____E_____

PAGE _____48_____



## Publications

One of the principal authors of the AICPA Practice Aid 07-1 – "Forensic Accounting – Fraud Investigations" (2007)

Chair of the AICPA Forensic Procedures Task Force responsible for the writing of the "Forensic Procedures and Specialists: Useful Tools and Techniques" – AICPA Special Report, 2006

Chair of the AICPA Antifraud Programs and Controls Task Force responsible for the writing of "Management Override of Internal Controls: The Achilles' Heel of Fraud Prevention" – AICPA Practice Aid, 2005

Principal author – AICPA Technical Consulting Practice Aid 97-1 "Fraud Investigations in Litigation and Dispute Resolution Services"

Co-author - California Society of CPA "The Witness Chair" – SAS 99 – Is It Enough To Help Close the Expectation Chasm? (2003)

Author – "A Systematic Approach to Fraud Investigation" The CPA Expert, Spring 2000 (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Co-author – "Defining the Practice of Forensic Accounting" The CPA Expert, 1999 Special Issue (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Contributing and Reviewing author to Guide to Fraud Investigations published by Practitioners Publishing Company

Contributing author to Handbook of Litigation Services for John Wiley and Sons. The chapter written by Mr. Durkin is entitled "Criminal Cases and the Investigative Accountant."

Book review of Investigating White Collar Crime: Embezzlement and Financial Fraud for "CPA Management Consultant".

EXHIBIT   E
PAGE   49

i