# EXHIBIT F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                         Date: April 27, 2009
Title:       MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Cindy Sasse                              None Present
          Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

None Present                             None Present

PROCEEDINGS:    ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
                MATTER OF LAW (DOCKET #4498)

                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
                #4496)

                ORDER AMENDING IN PART ORDER RE FINDING OF
                LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
                (DOCKET #4441);

                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                MOTION FOR REMITTITUR (DOCKET #4495, #4523)

                ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

                ORDER FOR ACCOUNTING OF PROFITS OF
                BRATZ PRODUCTS

                ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                    Initials of Deputy Clerk ___cls_____
CIVIL -- GEN                        1

EXHIBIT _____F_____

PAGE ____50____

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11, 2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF PERMANENT RECEIVER**

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on [an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel acknowledges that the judgment it seeks would alter neither the jury's damages award nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an alternative basis for the relief it has already been awarded. Without ruling on the merits of the argument, the Court declines to adopt this alternative basis because it is not necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict, found that the Bratz dolls infringed Mattel's copyrights, but the scope of that infringement was not explicitly found by the jury. Even if the Court were to grant the relief sought by Mattel, the amount the jury awarded for copyright infringement, $10 million, would be unchanged. Moreover, the Court, sitting in equity, made an express factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore **DENIED.**

Initials of Deputy Clerk __cls_____

EXHIBIT __F__
PAGE __51__

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt.  This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate.  Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate.  This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows:  MGA Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

Initials of Deputy Clerk __cls_____

EXHIBIT   F

PAGE   52

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty. Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages. The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue. As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims. Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits. The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3] This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is **DENIED**.

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk __cls_____

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz." To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4] The Court finds wavier.

In any event, the argument fails on its merits. The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement. California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls. Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument. The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

EXHIBIT ___F___

PAGE ___54___

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

EXHIBIT ___F___

PAGE ___55___

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur. Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . . But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

EXHIBIT __F_____

PAGE __56_____

1366 (9th Cir. 1986) (internal citations omitted).[5] Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to the jury's findings. If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative. This is not a completely unappealing argument. For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian. Totaled, this award is $90 million. Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times. Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation. The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount. The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard. Paul v. Asbury Automotive Group, LLC  2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

EXHIBIT   E

PAGE   57

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court *must* leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury *meant* by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7]  Therefore, a combination of the Court's June 2, 2008,

---

[7]  Conversely, the jury answered the same question regarding MGAE affirmatively.

EXHIBIT  *F*

PAGE  58

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572).  The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to *all* tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

MINUTES FORM 90
CIVIL -- GEN                                              10                    Initials of Deputy Clerk __cls_____

EXHIBIT ___F_____

PAGE ____59_____

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of
the case and discussing the discovery rule standard before concluding the rule does not
apply in that instance, rather than noting a wholesale rejection of the application of the
discovery rule to tortious interference claims, these courts have implicitly held that the
discovery rule may, in certain undefined instances, permit otherwise time-barred claims
to proceed.[8]

    The Court has previously discussed at length why the discovery rule delayed the
accrual of Mattel's claims in this case. That rationale applies with equal force to the
intentional interference with contractual relations claim, which was timely asserted
against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any
fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of
timeliness of the tortious interference claim.

    Finally, the MGA parties correctly contend that the damages awarded for
conversion, totaling $31,500, should be remitted because the Court's declaratory
judgment orders the MGA parties to return the drawings. The Court **GRANTS** the
motion on this issue. However, the drawings shall remain in the Court's custody
pending completion of Phase 2, pending appeal, and/or pending further order of this
Court.

## IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

    Subject to the modification set forth in the Court's January 7, 2009, Order (docket
#4657) (relating to distributors and retailers), the Court **VACATES** the stay on
enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for
Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the
Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket
#4439) at 16 (which was imposed pending resolution of the three post-trial motions
upon which the Court today rules); however, the Court leaves undisturbed the more
limited stay set forth in the Court's January 7, 2009, Order, which relates to the
purchase of Bratz products by retailers and distributors up to and including December
31, 2009. This limited stay is supplemented as set forth below.

---

    [8] Had those courts not wished to make this implication, they could have, but did not, set forth a
qualification that the court was assuming without deciding that the discovery rule could be applied to a
tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We
assume for purposes of this discussion that the delayed discovery rule applies to unfair competition
claims. We note that this point is currently not settled under California law . . . and we do not address it.")
(citations omitted).

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          11

EXHIBIT ___F___

PAGE ___60___

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

EXHIBIT ___F___

PAGE ___61___

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

### VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

### IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90
CIVIL -- GEN                                    13                    Initials of Deputy Clerk __cis_____ .

EXHIBIT ___F___

PAGE ___62___

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket #4761) at 1. This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene. The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id. The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id. Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation."). However, this particular request for intervention is not one that falls into this general category. Rather, it is an intervention for a very limited

EXHIBIT ___F___

PAGE ___63___

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing in this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

EXHIBIT __F__
PAGE __64__

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9]  Specifically, the Court finds as follows:

1.  The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.  As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.  Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.  Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

Initials of Deputy Clerk __cls_____

EXHIBIT ___F___

PAGE ___65___

and related entities (as defined below) are engaged in a course of conduct
with related parties designed to frustrate the Court's Orders, Findings and
Injunction herein;

5.     Good cause exists to believe that the MGA parties, agents, and related
entities (as defined below) will continue to engage in such transactions,
acts, practices, and courses of conduct and business to the immediate
and irreparable loss and damage to Mattel, and contrary to the interests of
justice, unless restrained and enjoined.

6.     It is appropriate and in the interests of justice that, pursuant to L.R. 66,
that a Temporary Receiver be appointed and that an Order to Show
Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.     Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to
L.R. 66 for the MGA entities to manage, supervise and oversee the assets
of the MGA entities and the Bratz Brand and all Bratz Assets as these
terms are defined herein (the "Temporary Receiver").

2.     The Temporary Receiver is appointed and is hereby directed and ordered
to take full and exclusive control over, and to manage, preserve, and
maximize the profits of, the MGA entities and the Bratz Brand and Bratz
Assets as of the date hereof, including, without limitation, by locating,
taking possession and ownership of, preserving, protecting, managing,
supervising and overseeing the Bratz Assets.

3.     The Temporary Receiver is further directed to investigate the financial
affairs of the MGA entities, and specifically investigate transfers and
transactions made by the MGA entities from and after July 17, 2008.

4.     The Temporary Receiver shall have the power to take any and all action
which may be necessary, appropriate or advisable to effectuate the
purposes of the Temporary Receivership, including, but not limited to, the
power to:

     a.     take custody, control and possession of the assets of the MGA
entities and Bratz Assets in the possession, custody or control of
the MGA entities, and/or any person or entity acting at their behest
or direction or pursuant to their control, including, but not limited to,
Isaac Larian and any successor-in-interest, subsidiary, corporate
affiliate, agent, servant, attorney, accountant, officer, director,
employee or other confederate (collectively, "the MGA parties,

EXHIBIT ___F_____
PAGE ____66_____

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.   preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.   exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.   market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.   hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.   disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.   open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.   collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.   sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.   enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.   prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

EXHIBIT ____F_____
PAGE _____67_____

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk ___cls_____

EXHIBIT ___*F*___

PAGE ___68___

except insofar as the Court orders or invites the Temporary Receiver to do so; and,

s.    perform such further and additional acts as the Temporary Receiver deems necessary or advisable to preserve the Bratz Assets, maximizing the profits derived therefrom, ensure the successful manufacture, delivery and marketing of Bratz-branded dolls and products for the spring and fall 2009 seasons and otherwise carry out the Temporary Receiver's mandate under this Order, including, without limitation, any acts which could be lawfully carried out by a corporation in the state of California.

5.    The Temporary Receiver, the Temporary Receiver's employees and agents as well as any and all of the professionals employed by the Temporary Receiver, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them on behalf of the receivership estate. The Temporary Receiver shall serve written notice upon counsel of record for the parties of the amount to be paid to each payee, with an itemization of the services rendered or expenses incurred. Upon service of said notice, the itemized fees and expenses may be paid by the Temporary Receiver on an interim basis.  In the event that extraordinary services are performed by the Temporary Receiver, he shall be entitled to extraordinary compensation according to proof and approval of this Court.  All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services.  In the event there are insufficient funds in the receivership estate to fully compensate the Temporary Receiver and his professionals, the Court retains jurisdiction to allocate the costs and expenses of this receivership against Mattel, as the party who sought the appointment of the Temporary Receiver, and/or Isaac Larian, as the principal owner and beneficiary of the MGA entities.

6.    Upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver regarding implementation of this Order, including transferring funds at his direction and producing records related to the assets of the MGA entities.

7.    The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90
CIVIL -- GEN                          20                    Initials of Deputy Clerk __cls_____

EXHIBIT ____F____

PAGE ____69____

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __cls_____

EXHIBIT ___F_____

PAGE _____70_____

brand.

    g.    All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.    The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.    As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order.  Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers.  The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).  The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90
CIVIL -- GEN

22

Initials of Deputy Clerk __cls_____

EXHIBIT ___F___

PAGE ___71___

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10.   Additional Provisions.

a.   In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures. Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

b.   The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

c.   The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court. Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

d.   During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand. All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

e.   Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90
CIVIL -- GEN                                    23                    Initials of Deputy Clerk __cls_____

EXHIBIT ___F___
PAGE ___72___

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.   To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.   The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.   No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.   It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.   In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

EXHIBIT ___F_____

PAGE _____73_____

et seq. for the MGA entities without prior permission of this Court.

k.   The MGA entities are ordered to cooperate fully with the Temporary
     Receiver, including without limitation providing all   financial and
     other documentation requested by the Temporary Receiver.

l.   The Temporary Receiver is authorized to contact the
     Court-appointed Forensic Auditor, Ronald Durkin, and may utilize
     the findings and conclusions reached by Mr. Durkin as the
     Temporary Receiver deems appropriate.

m.   The Temporary Receiver is hereby ordered and directed to prepare
     and provide to this court a report setting forth preliminary
     conclusions, findings and recommendations in accordance with the
     schedule set forth below.

11.  Order to Show Cause.  All interested parties, and any interested creditor,
     shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to
     show cause, if there be any, why a permanent receiver should not be
     appointed in the same scope and manner as the Court's appointment of
     the Temporary Receiver. Any declarations, affidavits, points and
     authorities or other submissions in support of, or in opposition to, the
     appointment of a Permanent Receiver shall be filed with the Court and
     served on all parties no later than May 14, 2009.

12.  Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be
     served on all known creditors of the MGA entities within three days of the
     date of this Order.

13.  The Temporary Receiver shall file a report and recommendation
     concerning all actions taken as well as recommendations for further action
     no later than Monday, May 11, 2009. This report shall be filed with the
     Court and served on all parties.

IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009

_[signature]_

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**

Initials of Deputy Clerk __cls_____

EXHIBIT ___F_____
PAGE _____74_____

# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date: May 21, 2009
Title:         MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                              None Present
        Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:    ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
                NO. 11 (DOCKET #5185)

                ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
                ANSWER AND COUNTERCLAIMS (DOCKET #5143)

                ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
                APPEAL (DOCKET #5396)

                ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
                PRODUCT LINE INFORMATION (DOCKET #5425)

                ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
                APPOINTING MGA MONITOR

                ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
                REQUIRING MANDATORY SETTLEMENT CONFERENCE

        These matters were heard on May 18, 2009.

MINUTES FORM 90                                      Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        1               <u>Time: 03/02</u>

EXHIBIT __6__

PAGE __75__

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT 6
PAGE 76

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit rather than their general powers and that, in any event, the relevant time period to measure managing agent status is not at the time of deposition but is rather at the time of the events giving rise to the lawsuit.  Although these arguments find some support, the Discovery Master's conclusion regarding this first <u>Sugarhill</u> factor (and its <u>Libbey Glass</u> analog) is not contrary to law. The first <u>Sugarhill</u> factor is clearly concerned with an employee's general power; the fourth factor, which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities regarding matters involved in the litigation.  The cases cited by Mattel support its timing argument; however, cases cited by the MGA parties establish that other cases favor a contrary position. Neither side's authority is controlling, and the Court therefore concludes the position adopted by the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor reported, could provide substitute testimony to them is clear error.  Mattel's ultimate point is that no one can testify more accurately and more on point than can the two witnesses regarding their alleged trade secret theft.  Again, this is not an invalid point.  Indeed, it is possible that if such theft occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the MGA parties and instead acted on their own accord (the MGA parties alternatively contend).   The fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony regarding any theft would not be on behalf of MGA at all.  Who can or cannot testify about these events that may or may not have occurred on behalf of any MGA party -- let alone who can testify best -- is far from clear.  This area of inquiry is fraught with uncertainty.  The Discovery Master's conclusion one way or another on this issue, therefore, cannot be said to be clear error.  <u>See</u> <u>Wolpin v. Philip Morris Inc.</u>, 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that MGA Mexico's interests and the witnesses' interests are at odds.  The witnesses are currently employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they have separately retained counsel to represent their interests.  Additionally, the MGA parties have maintained that if any trade secret theft occurred, it occurred without their knowledge or consent. These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

EXHIBIT ____6____

PAGE ____77____

Counterclaims ("TAAC").  In substance, the TAAC adds one additional claim and a number of additional allegations.  First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq.  Second, Mattel avers facts that fall into the following broad categories:  (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

       The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion.  Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute.  The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009.  Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

       Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires."  Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962).  However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

       Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard.  Rule 15(d) provides:

             On motion and reasonable notice, the court may, on just terms, permit a party
       to serve a supplemental pleading setting out any transaction, occurrence, or event
       that happened after the date of the pleading to be supplemented. The court may
       permit supplementation even though the original pleading is defective in stating a
       claim or defense. The court may order that the opposing party plead to the
       supplemental pleading within a specified time.

Id.  This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored.  Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997).  It should not, however, be used to introduce a separate, distinct, and new cause of action.  Id.  The goal of

MINUTES FORM 90
CIVIL -- GEN                                    4                    Initials of Deputy Clerk __cls_____
                                                                    Time: 03/02

EXHIBIT ___6_____

PAGE _____78_____

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

> [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT ____6_____

PAGE _____79_____

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

## III.  EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18.  For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT ___6___

PAGE ___81___

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

## IV.  EX PARTE APPLICATION RE DISCLOSURE OF 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason.  Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver.  In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents:  (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808.  In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

### A.    Expiration of Temporary Receivership

**IT IS ORDERED THAT:**

1.    The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.    The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.    The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.    The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

MINUTES FORM 90
CIVIL -- GEN                              8                    Initials of Deputy Clerk __cls_____
                                                              Time: 03/02

EXHIBIT _____G_____

PAGE _____82_____

costs, on or before May 28, 2009;

5.    The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.    Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

## B.    Appointment of MGA Monitor

1.    For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

    a.    The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging.  Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information.  The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

    Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants.  The Bratz Assets include, without limitation:

    a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

EXHIBIT ___6_____

PAGE ____83____

b.      The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.      The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.      The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

  b.  All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

  c.  All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

  d.  All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

  e.  All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

  f.  All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

  g.  All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

  h.  "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

  [7]  Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

EXHIBIT ___6___

____84____

e.   At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.   The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.   The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.   The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I.   The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.   The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations.  Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8] The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT ___6_____
PAGE ___85_____

k.   The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order.  The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties.  Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.   The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.   The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor.  The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment.  Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.   The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court.  Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.   Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.   The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.   No bond shall be required in connection with the appointment of the Monitor.  Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

MINUTES FORM 90
CIVIL -- GEN

12

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT ___6_____
PAGE ___86_____

2.     Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.     MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.     No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.     For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.     Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.     All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

### VI.  IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009.  The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          13                 Time: 03/02

EXHIBIT ____6____

PAGE ____87____

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts.  Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration.  The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV.  Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009.  Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed.  For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included.  Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days.  If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party.  Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts.  If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90
CIVIL -- GEN                                    14

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____6_____

PAGE _____88_____

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90
CIVIL -- GEN                          15                   Initials of Deputy Clerk __cls_____
                                                            Time: 03/02

EXHIBIT ____6____
PAGE ____89____

# EXHIBIT H

7652



1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                        - - -

4    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                        - - -

6    MATTEL, INC.,              :   PAGES 7652 - 7873
                                :
7          PLAINTIFF,           :
                                :
8       VS.                     :   NO. ED CV04-09049-SGL
                                :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,   :   CV04-9059 & CV05-2727]
     ET AL.,                    :
10                              :
          DEFENDANTS.           :
11   _____

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17           FRIDAY, AUGUST 15, 2008

18              JURY TRIAL - DAY 36

19              AFTERNOON SESSION

20

21

22                      MARK SCHWEITZER, CSR, RPR, CRR
                        OFFICIAL COURT REPORTER
23                      UNITED STATES DISTRICT COURT
                        181-H ROYBAL FEDERAL BUILDING
24                      255 EAST TEMPLE STREET
                        LOS ANGELES, CALIFORNIA 90012
25                      (213) 663-3494

CERTIFIED COPY

EXHIBIT ___H___

PAGE ___90___

7653

**Appearances of Counsel:**

On Behalf of Mattel:

    Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
    By John B. Quinn, Esq.
       B. Dylan Proctor, Esq.
       Michael T. Zeller, Esq.
       Harry Olivar, Esq.
       John Corey, Esq.
       Diane Hutnyan, Esq.
       William Price, Esq.
    855 South Figueroa Street
    10th Floor
    Los Angeles, CA 90017
    (213) 624-7707


On Behalf of MGA Entertainment:

    Skadden, Arps, Slate, Meagher & Flom LLP
    By Thomas J. Nolan, Esq.
       Carl Alan Roth, Esq.
       Jason Russell, Esq.
       Lauren Aguiar, Esq.
       David Hansen, Esq.
       Matthew Sloan, Esq.
       Robert Herrington, Esq.
       Raoul D. Kennedy, Esq.
    300 South Grand Avenue
    Los Angeles, CA 90071-3144
    (213) 687-5000

EXHIBIT _H_

PAGE _91_

7654

1                          I N D E X

2

3    **ISAAC LARIAN, PREVIOUSLY SWORN**......................... 7676

4    RECROSS-EXAMINATION (CONTINUED) BY MR. PRICE:.......... 7676
     FURTHER REDIRECT EXAMINATION BY MR. NOLAN:............ 7678
5    FURTHER RECROSS-EXAMINATION BY MR. PRICE: ............ 7680
     FURTHER REDIRECT EXAMINATION BY MR. NOLAN:............ 7682
6    FURTHER RECROSS-EXAMINATION BY MR. PRICE: ............ 7682

7    **PAUL KEVIN MEYER, SWORN**.............................. 7683

8    DIRECT EXAMINATION BY MR. KENNEDY: ................... 7683
     VOIR DIRE EXAMINATION BY MR. PRICE: .................. 7751
9    DIRECT EXAMINATION (RESUMED)BY MR. KENNEDY:........... 7757
     CROSS-EXAMINATION BY MR. PRICE:....................... 7761
10   REDIRECT EXAMINATION BY MR. KENNEDY:.................. 7783
     RECROSS-EXAMINATION BY MR. PRICE: .................... 7785

11

12   VIDEOTAPED DEPOSITION EXCERPTS OF LILY MARTINEZ........ 7787

13   VIDEOTAPED DEPOSITION EXCERPTS OF KEVIN FARR........... 7789

14   **MICHAEL JOSEPH WAGNER, SWORN**........................ 7807

15   DIRECT EXAMINATION BY MR. QUINN: ..................... 7808
     VOIR DIRE EXAMINATION BY MR. KENNEDY:................. 7815
16   DIRECT EXAMINATION (RESUMED) BY MR. QUINN:  .......... 7818
     CROSS-EXAMINATION BY MR. KENNEDY:..................... 7836
17   REDIRECT EXAMINATION BY MR. QUINN: ................... 7844
     RECROSS-EXAMINATION BY MR. KENNEDY: .................. 7845

18

19   **PAUL KEVIN MEYER, PREVIOUSLY SWORN**................... 7847

20   DIRECT EXAMINATION BY MR. KENNEDY:.................... 7847
     CROSS-EXAMINATION BY MR. PRICE:....................... 7848

21

22

23

24

25

EXHIBIT  H
PAGE  92

7655

**E X H I B I T S**

1

2

3   (Exhibit 13861, Page 11, received.)..................... 7781

4   (Exhibits 2502-A, 2504-A, 2514-A, and
    2517-A received.).................................... 7803

5

6   (Exhibits 18923, 1, 2, 4, 6, 7, 9, 10,
    11, 12, 13, 15, 16, 17, 18, 21, 24, 25,

7   26, and 32 received.).............................. 7807

8   (Exhibit 13991 received.).......................... 7818

9   (Exhibit 14626 received.).......................... 7833

10  (Exhibit 14663 received.).......................... 7834

11  (Exhibit 14664 received.).......................... 7835

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT _____*H*_____

PAGE _____*93*_____

7656

1       <u>Riverside, California; Friday, August 15, 2008</u>

2                          12:34 P.M.

3       (HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)

4              THE COURT:  Okay.  There's a few issues the Court

5       wanted to take up from this morning that we never got around

6       to, but before I did that, I want to rule on --

7              Mr. Price, Mr. Zeller?  Mr. Price, is Mattel ready

8       to proceed?

9              MR. PRICE:  Yes, your Honor.

10             THE COURT:  Very well.  Let me first resolve the

11      issue that we discussed in chambers under seal.  The Court

12      has explored in length the competing issues and concerns that

13      it has with respect to the -- on the one hand, the testimony

14      of Mr. Larian that we heard concerning what he, his attorneys

15      at the time discussed and about the Carter Bryant's design

16      and development of the works in question, as well as the

17      e-mails that have been submitted to the Court in camera under

18      seal involving attorney-client work product.

19             It's a close case, but the Court believes that the

20      attorney-client privilege needs to be protected.  So the

21      Court is going to reseal those e-mails.  The Court is not

22      going to permit them to be introduced to the jury.

23      Furthermore, the Court itself will strike them from its

24      consideration of the evidence, both during the trial and, of

25      course, in any third phase where the Court must consider the

EXHIBIT _____H_____

PAGE _____94_____

7657

1    equitable defenses.  So they are not at issue.

2              However, some address or redress of the testimony

3    has to be made.  The Court is going to strike, pursuant to

4    Mr. Nolan's suggestion, Ms. Aguiar's suggestion.  The Court

5    is going to strike the testimony of Mr. Larian concerning his

6    conversations with his attorneys and instruct the jury that

7    they are not to consider that evidence for any purpose at

8    this point.  And leave it at that.  I think that strikes the

9    balance.

10             Given the whole host of issues that the Court needs

11   to weigh here, I think that strikes the balance.  And the

12   e-mails are resealed, and as indicated, they will be of no

13   moment to the jury.  They are no longer of any issue to the

14   Court.  And they will be disregarded.

15             Any questions concerning the Court's ruling,

16   Mr. Price?

17             MR. PRICE:  No questions, your Honor.  I'm

18   wondering whether, when the Court instructs the jury to

19   disregard Mr. Larian's testimony concerning any

20   communications he may have had with counsel, whether the

21   Court can say any testimony given in this phase or in the

22   prior phase.

23             THE COURT:  They are not to consider any evidence

24   of any of Mr. Larian's testimony regarding his communications

25   with counsel.  As I indicated in chambers, I probably should



EXHIBIT _H_

PAGE _95_

1  have kept all of that out to begin with, and this is the best

2  that I can do.  I mean, I have two ways to go.  I either let

3  it all come in, or I keep it out.  I think given where we are

4  right now, to leave it part in, part out is not appropriate.

5          MR. PRICE:  I just think unless you specifically

6  tell them any testimony, whether given in the first phase or

7  this phase.  Because going forward, they can consider

8  obviously anything that happened in the prior --

9          THE COURT:  Obviously, the prejudicial impact to

10  Mattel on the earlier testimony is diminished.  The testimony

11  won't be heard in closing regarding the communication between

12  the attorneys.  And that was at this point frankly, months

13  ago.

14          So I'm less concerned about that earlier testimony

15  than the testimony now.  But the way I intend to do the

16  instruction is simply I am striking the testimony by

17  Mr. Larian concerning his communications with counsel.  You

18  are to disregard it.  I'm sure the jury will be focused on

19  the testimony today.  That certainly applies to any testimony

20  concerning communication with counsel.  I'm not going to

21  bring up the previous testimony because I think that quite

22  frankly just highlights evidence that we are actually asking

23  the jury to disregard.

24          MR. NOLAN:  Your Honor, just would the Court

25  consider saying, you know, the testimony is stricken.  You

EXHIBIT ___H___

PAGE ___96___

7873

7        C E R T I F I C A T E

10            I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14            Certified on August 15, 2008.


                        _____
17          MARK SCHWEITZER, CSR, RPR, CRR
                Official Court Reporter
18              License No. 10514


EXHIBIT __H__

PAGE __97__

# EXHIBIT I

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: June 20, 2008

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
=================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          None Present
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None present                           None present

PROCEEDINGS:   (IN CHAMBERS) ORDER RE MOTION TO COMPEL PRODUCTION OF
               COMMUNICATIONS MADE IN FURTHERANCE OF CRIMES AND FRAUDS

       On June 20, 2008, the Court ordered MGA to submit documents, detailed on the record, for
in camera inspection. MGA did so, and the Court conducted its in camera review. Based on its
review of the clawed-back document, as well as the document submitted for in camera review, the
preponderance of the evidence does not support a finding that the sought legal advice in order to
further a crime or fraud. Accordingly, the Court does not order the production of the privileged
documents identified on the record.

       Nevertheless, the Court's review revealed that an email from Carter Bryant to Isaac Larian
was withheld from production as privileged. As acknowledged by counsel for MGA, this document,
identified as privilege log number 0548, is not privileged and is to be produced to Mattel forthwith.

       IT IS SO ORDERED.

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN

                               1

                    EXHIBIT ___I___
                    PAGE ___98___

# EXHIBIT J

4022

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                      - - -

4     **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                      - - -

6  MATTEL, INC.,                :   PAGES 4022- 4201
                                :
7          PLAINTIFF,           :
                                :
8     VS.                       :   NO. ED CV04-09049-SGL
                                :   [CONSOLIDATED WITH
9  MGA ENTERTAINMENT, INC.,     :   CV04-9059 & CV05-2727]
   ET AL.,                      :
10                              :
          DEFENDANTS.           :
11

12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17              WEDNESDAY, JULY 2, 2008

18               JURY TRIAL - DAY 19

19                AFTERNOON SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23  **CERTIFIED**             UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24  **COPY**                  255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

4023

**Appearances of Counsel:**

1
2
3   On Behalf of Mattel:
4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
         By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
            William Price, Esq.
8        855 South Figueroa Street
         10th Floor
9        Los Angeles, CA 90017
         (213) 624-7707
10
11
12   On Behalf of MGA Entertainment:
13        Skadden, Arps, Slate, Meagher & Flom LLP
          By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17        300 South Grand Avenue
          Los Angeles, CA 90071-3144
18        (213) 687-5000
19
20
21
22
23
24
25

**EXHIBIT** _J_ **PAGE** _100_

4024

1                           I N D E X

2

3   ROBERT TONNER, SWORN................................. 4027

4   EXAMINATION BY MS. AGUIAR:........................... 4027

5   EXAMINATION BY MR. COREY:............................ 4036

6   FURTHER EXAMINATION BY MS. AGUIAR:................... 4047

7   FURTHER EXAMINATION BY MR. COREY:.................... 4059

8   ROBERT A. ECKERT, PREVIOUSLY SWORN................... 4070

9   DIRECT EXAMINATION (CONTINUED) BY MR. NOLAN:  ........ 4070

10  CROSS-EXAMINATION BY MR. QUINN: ..................... 4071

11  REDIRECT EXAMINATION BY MR. NOLAN: .................. 4075

12  RECROSS-EXAMINATION BY MR. QUINN: .................. 4077

13  DAPHNE GRONICH, SWORN............................... 4079

14  DIRECT EXAMINATION BY MR. QUINN: .................... 4079

15  CROSS-EXAMINATION BY MR. ROTH:...................... 4092

16  REDIRECT EXAMINATION BY MR. QUINN: ................. 4096

17  MITCHELL KAMARCK, SWORN............................. 4099

18  DIRECT EXAMINATION BY MR. QUINN:  ................... 4103

19  MARGARET ANN LEAHY, SWORN........................... 4113

20  DIRECT EXAMINATION BY MR. NOLAN: .................... 4114

21

22

23

24

25

EXHIBIT  J  PAGE 101

4025

1            **E X H I B I T S**

2

3    (Exhibit 13614 received.)............................. 4074

4    (Exhibit 1932 received.)............................. 4080

5    (Exhibit 5561 received.)............................. 4086

6    (Exhibit 10234-39 through -53 received.).............. 4106

7    (Exhibit 1137-14 received.)......................... 4142

8    (Exhibit 1137-15 received.)......................... 4149

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          Riverside, California; Wednesday, July 2, 2008

2                       12:40 P.M.

3      (HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)

4           THE COURT:  Very well.  Counsel?

5           MS. AGUIAR:  Your Honor, if it would make sense,

6      shall we start by having Mr. Tonner -- would you like him to

7      take the stand, and then we'll walk him through some of the

8      areas of his anticipated testimony?

9           THE COURT:  That sounds good.  Thank you.

10          MR. COREY:  Ms. Aguiar has said that she was going

11     to have the witness testify about the 2-D to 3-D conversion

12     from the drawings to the dolls.  And I reminded the Court

13     that that was an issue that would remain pending, and then I

14     went back and looked at the hearing transcript dealing with

15     that particular motion, and there was an agreement among

16     parties that that issue would be reserved for 1-B, something

17     that the court recognized.  And that was something that the

18     Court recognized.  I can read that if the Court would like.

19          THE COURT:  Ms. Aguiar?

20          MS. AGUIAR:  Sure.  I actually think, and I

21     appreciate why Mr. Corey is trying to pitch this as a 2-D to

22     3-D issue.  I think that the way the testimony has come out

23     in the trial, and I think that Mattel's verdict form, the

24     witnesses who have testified and the evidence that has come

25     in concerning sculpting and the sculpts, I don't think that

EXHIBIT __J__ PAGE _103_

4065

1   them in '99, then it's relevant to have an expert testify on

2   that, and it's relevant if the jury is going to be asked

3   about that, which they are.  It's in the verdict forms.

4           If there's no implication, and they find that the

5   drawings are essentially the same drawings, except that they

6   are colored in, then that doesn't translate to ownership.

7           THE COURT:  Right.

8           MS. AGUIAR:  Okay.  And then with regard to

9   sculpting, I think yes, it's true that this witness doesn't

10  know what happened between certain dates, but again, getting

11  back to the verdict form, just because we're almost getting

12  to that point and the parties have been amending it to

13  reflect how this case has been tried, they are asking this

14  jury whether Mr. Bryant created or directed someone else to

15  create these 3-D things.

16          So if the jury is going to have to decide, well,

17  was it him that did it or was it the sculptor, I think it's

18  pertinent to have a sculpting expert talk about the fact that

19  it's critical for the process, and what Mr. Bryant provided

20  could have resulted in 16 different sculpts, but it resulted

21  in this one because of the sculptor, not because of

22  Mr. Bryant.  What Mr. Corey read from a hearing that happened

23  before we had our first day of trial, as your Honor observed

24  earlier today, things change.

25          THE COURT:  Things change.  And no one should

**EXHIBIT _J_ PAGE _104_**

4066

1    presume that any particular question is going to be asked of

2    the jury.  The Court will make that determination.

3                THE COURT:  Of course.  I just mean that both

4    sides --

5                THE COURT:  I just don't want Mattel to think they

6    have already figured out the verdict form.

7                MS. AGUIAR:  Thank you, your Honor.

8                THE COURT:  All right.  If there's nothing further,

9    the Court is prepared to rule on this motion and the motion

10   for waiver.

11               Okay.  Let me begin with the earlier motion that we

12   discussed, the motion regarding waiver.  The Court is going

13   to deny that motion.  I do believe that there was a waiver of

14   the privilege; however, I do not believe the scope extends as

15   far as Mattel is seeking.  However, having said that, if MGA

16   goes any further down this road at all, the Court will

17   revisit this ruling.

18               Regarding the motion to preclude the expert

19   witness, Mr. Robert Tonner, the Court grants that motion.

20   Putting aside the issue of the relevance of any of this, the

21   Court has a much more fundamental problem, after considering

22   the testimony of Mr. Robert Tonner.  And I will only --

23   certainly not to embarrass anybody, but I simply don't find

24   Mr. Tonner credible.  I find his testimony lacking in

25   credibility.  And I find it to be tailored testimony and not

EXHIBIT __J__ PAGE __105__

1    suitable for an expert witness.  And exercising its Daubert

2    required function, the Court precludes the testimony of

3    Mr. Tonner.

4             If parties would seek a further elaboration of the

5    Court's reasoning on this, the Court is happy to provide it.

6    I'm always reluctant to do so when one requires the Court to

7    comment on the character and credibility of the witness.

8    Based on the Court's assessments of the testimony that was

9    given here in response not only to counsel's questions but

10   the Court's questions, I simply don't find this witness to be

11   credible as an expert or in any other way.

12            So motion in limine to exclude Mr. Tonner's

13   testimony is granted.

14            MS. AGUIAR:  Just one clarification, your Honor.  I

15   don't know that it will become an issue, but Mattel has an

16   expert who essentially is very much along the same lines as

17   Mr. Tonner in terms of his -- I don't want to say they have

18   the same background, but they have similar comparisons that

19   they are drawing, very similar graphics, and the bar graphics

20   were drawn from their expert.  We tried to make the points we

21   were -- we think needed to be made.

22            So I don't think this is what you are saying, but

23   if we could have some guidance on whether this area of

24   testimony -- you seem to be saying apart from commenting on

25   Mr. Tonner himself, that this area of testimony is just

4201

6                    C E R T I F I C A T E

9            I hereby certify that pursuant to Title 28,

10   Section 753 United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings in the above matter.

13            Certified on July 2, 2008.


                    _____
                    MARK SCHWEITZER, CSR, RPR, CRR
                    Official Court Reporter
                    License No. 10514


EXHIBIT __J__ PAGE 107