1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | **MATTEL, INC.'S MEMORANDUM REGARDING ESCROW OF BRATZ PROFITS** |
| AND CONSOLIDATED ACTIONS | [Declarations of Scott B. Kidman and Michael J. Wagner filed concurrently] |
| **[PUBLIC REDACTED]** | Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 1 |

# **TABLE OF CONTENTS**

<b><u>Page</u></b>

PRELIMINARY STATEMENT ................................................................................. 1

I.     MGA HAS BEEN WILLFULLY INFRINGING SINCE THE VERDICTS .......................................................................................................... 1

     A.     MGA Has Continued Its Infringements Since The Verdicts ................. 1

     B.     MGA's Post-Verdict Infringements Have Been Willful ........................ 2

II.     MGA HAS NO RIGHT TO RETAIN THE PROFITS FROM ITS POST-VERDICT INFRINGEMENT ................................................................. 4

     A.     Mattel Is Entitled To Disgorgement of MGA's Profits .......................... 4

     B.     A Stay Is Not A License To Infringe ....................................................... 5

III.     MGA SHOULD BE REQUIRED TO ESCROW ALL AMOUNTS NECESSARY TO FULLY COMPENSATE MATTEL FOR MGA'S POST-VERDICT, WILLFUL INFRINGEMENT ............................................. 6

CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

### Cases

Applied Med. Resources Corp. v. U.S. Surgical Corp.,
353 F. Supp. 2d 1075 (C.D. Cal. 2004) ..................................................................2

Bott v. Four Star Corp.,
807 F.2d 1567 (Fed. Cir. 1986) ......................................................................2, 6

Carl Falkenstein, Inc. v. Lustrelon, Inc.,
1989 WL 69692 (E.D. Pa. June 19, 1989) ........................................................9

Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.,
1987 WL 46520 (C.D. Cal. Aug. 10, 1987) ......................................................9

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
772 F.2d 505 (9th Cir. 1985) ..................................................................7, 8, 9

Gaste v. Kaiserman,
863 F.2d 1061 (2d Cir. 1988) ............................................................................9

In re Hayes Microcomputer Prods., Inc. Patent Litig.,
766 F. Supp. 818 (N.D. Cal. 1991) ....................................................................6

Hynix Semiconductor Inc. v. Rambus Inc.,
2009 WL 440473 (N.D. Cal. Feb. 23, 2009) ......................................................3

JBJ Fabrics, Inc. v. Mark Indus., Inc.,
1987 WL 47381 (C.D. Cal. Nov, 5, 1987) ........................................................9

J.P. Larson, Jr. Co. v. William Wrigley Jr., Co.,
277 U.S. 97 (1928) ..............................................................................................8

Jarvis v. A & M Records,
827 F. Supp. 282 (D.N.J. 1993) ........................................................................9

Joyal Products, Inc. v. Johnson Elec. North America, Inc.,
2009 WL 512156 (D.N.J. Feb. 27, 2009) ..........................................................3

Kamar Int'l, Inc. v. Berrie & Co., Inc.,
752 F.2d 1326 (9th Cir. 1984) ......................................................................7, 9

Liu v. Price Waterhouse LLP,
2000 WL 1644585 (N.D. Ill. Oct. 30, 2000) ....................................................8

Mikohn Gaming v. Acres Gaming, Inc.,
2001 WL 34778689 (D. Nev. Aug. 21, 2001) ....................................................5

National Football League v. PrimeTime 24 Joint Venture,
131 F. Supp. 2d 458 (S.D.N.Y. 2001) ........................................................2, 3, 6

National Instruments Corp. v. The Mathworks, Inc.,
2003 WL 24049230 (E.D. Tex. Jun. 23, 2003) ................................................5

Northern Music Corp. v. King Record Distr. Co.,
   105 F. Supp. 393 (S.D.N.Y. 1952) ........................................................... 4

Peterson v. Highland Music,
   1997 U.S. Dist. LEXIS 23181 (C.D. Cal. Apr. 9, 1997) ........................... 4

Saxon v. Blann,
   968 F.2d 676 (8th Cir. 1992) .................................................................... 8

Schnadig Corp. v. Gaines Manufacturing Co., Inc.,
   620 F.2d 1166 (6th Cir. 1980) .................................................................. 9

Sheldon v. Metro-Goldwyn Pictures Corp.,
   106 F.2d 45 (2d Cir. 1939) ....................................................................... 8

Stryker Corp. v. Davol, Inc.,
   75 F. Supp. 2d 746 (W.D. Mich. 1999) .................................................... 3

Tech. for Energy Corp. v. Computational Sys., Inc.,
   1992 WL 535791 (E.D. Tenn. July 29, 1992) ........................................... 5

Three Boys Music Corp. v. Bolton,
   212 F.3d 477 (9th Cir. 2000) ................................................................. 8, 9

Whelan Associates, Inc. v. Jaslow Dental Lab., Inc.,
   609 F. Supp. 1325 (D. Pa. 1985) .............................................................. 4

## Statutes

17 U.S.C.
   § 504 ........................................................................................................ 11
   § 504(b) ..................................................................................................... 4

## Miscellaneous

H.R. Rep. No. 94-1476 at 161 (1976) ............................................................ 4

07975/2945779.4

MATTEL'S MEMORANDUM RE ESCROW OF BRATZ PROFITS

**Preliminary Statement**

In its recent May 21 Order, the Court asked the parties to address what portion of MGA's Bratz revenues should be escrowed.  Mattel submits the escrow should include a sum sufficient to ensure that funds will be available to satisfy Mattel's claims once those claims are ultimately calculated, whether that calculation is made now or after the Phase 2 trial.  Because MGA's ongoing infringement has been and is willful, that means that all gross revenues from Bratz sales should be escrowed, subject only to a deduction for cost of goods sold and other direct sales and manufacturing costs.  █████████████████████████████████

██████████████████████████████████████████

████████████  The only hope for the recovery of the true profits of MGA's continued infringement is to escrow those profits now.

**I.     MGA HAS BEEN WILLFULLY INFRINGING SINCE THE VERDICTS**

**A.     MGA Has Continued Its Infringements Since The Verdicts**

During trial, Isaac Larian declared that MGA would continue to produce and sell Bratz products no matter what the jury's verdict.  Many months after trial, Larian continued to declare that "[w]e are never going to give the Bratz brand to Mattel or anyone else."[1]  As the Court recognized in connection with Mattel's motion for an injunction, "defendants remain steadfast in their intention to continue to produce their infringing products."[2]

True to its word, MGA has indeed continued its infringements post-verdict, continues to do so to the present day and promises to do so into the future.  Undeterred by the jury's findings that Mattel owns Bratz, the jury's findings of infringement and the Court's Orders detailing the scope of MGA's infringement, MGA

---

[1]   Reuters, MGA Unwilling to Share Bratz Revenue With Mattel (Sept. 11, 2008), attached as Exhibit 1 to the concurrently filed Declaration of Scott B. Kidman ("Kidman Decl.").

[2]   Minute Order re Post-Trial Motions and Permanent Injunction, dated December 3, 2008 ("Dec. 3 Order") at 13, Kidman Decl., Ex. 2.

1   has continued to produce and sell infringing Bratz products.[3]   In fact, MGA expressly

2   stipulated that its entire 2009 Bratz line is covered by the Court's injunction against

3   MGA's production of infringing Bratz products.[4]   MGA also continues to sell, and

4   profit from selling, pre-2009 infringing Bratz products.[5]

5   **B.    MGA's Post-Verdict Infringements Have Been Willful**

6   These are not just infringements of Mattel's rights—they are willful

7   infringements.  The jury's verdicts and the Court's rulings provided MGA with ample

8   notice, if more notice were required, that its ongoing infringements would be (and have

9   been) willful.  Once a product is determined to be infringing, a defendant's continued

10   production or sale of it is deemed willful.  See, e.g., Bott v. Four Star Corp., 807 F.2d

11   1567, 1573-74 (Fed. Cir. 1986) (infringing sales made after the trial court's decision on

12   liability were willful), overruled on unrelated grounds, A.C. Aukerman Co. v. R.L.

13   Chaides Const. Co., 960 F.2d 1020, 1039 (Fed. Cir. 1992); Applied Med. Resources

14   Corp. v. U.S. Surgical Corp., 353 F. Supp. 2d 1075, 1079 n.2 (C.D. Cal. 2004)

15   (defendant's sales of infringing products after court's ruling of infringement constituted

16   "acts of willful infringement in and of themselves"); National Football League v.

17   PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 479 (S.D.N.Y. 2001) (after

18   summary judgment of infringement, "[defendant] was obliged to adjust its business

19   conduct accordingly . . . or pay the price," and decision to continue to broadcast

20   infringing telecasts before final injunction had been issued "clearly demonstrated"

21

22   [3]   See Final Verdict Form as Given (Phase 1a), dated July 17, 2008, Kidman

23   Decl., Ex. 3; Final Verdict Form as Given (Phase 1b), dated August 26, 2008, Kidman Decl., Ex. 4; Dec. 3 Order at 9-11.

24   [4]   See Stipulation Regarding 2009 Bratz Products, dated January 7, 2009, at ¶ 1, Kidman Decl., Ex. 5.

25   [5]   See In Camera Summary Report of Forensic Auditor Ronald L. Durkin

26   ("Durkin Report") at 10-11, Kidman Decl., Ex. 6 (discussing MGA's sale of

27   inventory to Larian-controlled IGWT Group); Preliminary Report of the Temporary Receiver ("Receiver's Report") at 9-11, Kidman Decl., Ex. 7; May 21, 2009 Minute

28   Order ("May 21 Order"), at 7, Kidman Decl., Ex. 8.

1 willfulness of infringement); <u>Stryker Corp. v. Davol, Inc.</u>, 75 F. Supp. 2d 746, 748

2 (W.D. Mich. 1999) (party's decision to continue selling product "[s]ubsequent to the

3 jury's verdict [on infringement] . . . can only be characterized as stubborn, intractable,

4 contumacious and, yes, willful"). This is true regardless of whether post-trial motions

5 remain to be decided or the infringing party believes it will prevail on appeal.  <u>See</u>

6 <u>PrimeTime</u>, 131 F. Supp. 2d at 480 (possibility of continued litigation or appeal did not

7 permit party to disregard finding of infringement); <u>Stryker Corp.</u>, 75 F. Supp. 2d at 748

8 (rejecting the "hypothetical possibility" that post-trial motions would reverse jury's

9 verdict on infringement).[6]

10      Moreover, here the proof of willfulness is not limited to the defendants'

11 clear knowledge, based on the verdicts and rulings, that their actions are infringing.

12 Larian's and MGA's conduct in the days leading up to and following the jury verdict,

13 including the formation of IGWT 826 (the sham entity apparently named for the date of

14 the damages award) and the structuring of the Omni transactions to evade the Court's

15 rulings provide further evidence of willfulness.

16      As discussed below, the determination of willfulness is directly related to

17 the measure of profits to be disgorged.  Mattel is prepared to prove for purposes of

18 profits accounting MGA's willfulness either before the Court sitting in equity now or

19 during the trial of Phase 2, where Mattel's RICO claims and the criminal copyright

20 infringement predicate acts Mattel has alleged may require examination of MGA's

21 post-verdict intent.  But, whether the Court chooses to resolve this issue now or defer

22 ruling until the Phase 2 trial, at a minimum the Court should ensure that sufficient Bratz

23      [6]   Indeed, post-verdict infringement is deemed willful even when pre-verdict

24 infringement was not.  <u>See, e.g.</u>, <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 2009

25 WL 440473 at *6 (N.D. Cal. Feb. 23, 2009) (<i>increasing</i> damages for patent infringement for the period between jury verdict of infringement and the institution

26 of the injunction on the basis of willfulness); <u>Joyal Products, Inc. v. Johnson Elec.</u>

27 <u>North America, Inc.</u>, 2009 WL 512156, at *13 (D.N.J. Feb. 27, 2009) ("Case law is clear that the calculus for determining a post judgment royalty is not the same as

28 that for determining a reasonable royalty based upon pre-judgment infringement.").

1  profits are escrowed now to compensate Mattel later should MGA's ongoing
2  infringements be determined to be willful.

3  **II.    MGA HAS NO RIGHT TO RETAIN THE PROFITS FROM ITS POST-**
4  **VERDICT INFRINGEMENT**

5  Mattel, not MGA, is entitled to the profits from MGA's ongoing
6  infringements and violations of Mattel's rights.  In fact, MGA conceded as much in
7  opposing Mattel's motion for a permanent injunction, arguing that Mattel would not
8  face irreparable harm if MGA continued to sell infringing products post-verdict (as it
9  has) because MGA supposedly would be able to compensate Mattel for such
10  "damages."[7]

11  **A.    Mattel Is Entitled To Disgorgement of MGA's Profits**

12  The Copyright Act entitles a copyright owner "to recover the actual
13  damages suffered by him or her as a result of the infringement, and any profits of the
14  infringer that are attributable to the infringement and are not taken into account in
15  computing the actual damages." 17 U.S.C. § 504(b).  The purpose of allowing a profits
16  recovery is to "prevent the infringer from unfairly benefitting from a wrongful act."
17  H.R. Rep. No. 94-1476 at 161 (1976).  Whether now (as an equitable accounting) or as
18  part of the jury's award of damages in Phase 2, Mattel is entitled to recover any profits
19  attributable to MGA's ongoing infringements of Mattel's rights. See, e.g., Peterson v.
20  Highland Music, 1997 U.S. Dist. LEXIS 23181, at *10 (C.D. Cal. Apr. 9, 1997)
21  (defendant-infringers ordered to provide "an accounting of all post-Judgment licensing
22  revenues received by them in connection" with their wrongful copyright infringement
23  and to "place those proceeds in their counsel's client trust account"); Whelan
24  Associates, Inc. v. Jaslow Dental Lab., Inc., 609 F. Supp. 1325, 1327 (D. Pa. 1985)
25  (copyright plaintiff entitled to a "further accounting for the [infringing] licenses sold
26  after the last day of the trial"); Northern Music Corp. v. King Record Distr. Co., 105 F.

---

27  [7]  See MGA's Opposition to Mattel's Motion for Permanent Injunction, dated
28  Oct. 13, 2008, at 13, Kidman Decl., Ex. 9.

1  Supp. 393, 401 (S.D.N.Y. 1952) (plaintiff "is entitled to an accounting of all the gains,

2  profits, emoluments and advantages derived, or which may be derived, from the

3  infringement of plaintiff's copyright by the defendants").[8]  Similarly, Mattel's state law

4  claims support not only disgorgement of profits earned prior to the verdict, but an

5  equitable accounting of profits earned afterwards.[9]

6  ### B.   A Stay Is Not A License To Infringe

7  Counsel for MGA has urged that "post verdict sales, after December 3,

8  2008, could not have been willful, because Your Honor stayed the injunction and

9  allowed MGA to sell."[10]  To the contrary, the Court's partial stay is entirely irrelevant

10  to Mattel's right to monetary relief or the willfulness of MGA's infringement.  A stay

---

11  [8]  See also Nat'l Instruments Corp. v. The Mathworks, Inc., 2003 WL 24049230,

12  at *8 n.4 (E.D. Tex. Jun. 23, 2003) ("A failure to award such damages would grant
   an infringer a windfall by enabling it to infringe without compensating a patentee

13  for the period of time between the jury's verdict and the judgment."); Mikohn

14  Gaming v. Acres Gaming, Inc., 2001 WL 34778689, at *18 (D. Nev. Aug. 21, 2001)
   (plaintiff in patent case "is entitled to an accounting from defendants . . . for an

15  award of defendants' profits from sales of infringing products from March 31, 1987

16  to the date of injunction . . .") (quotation omitted); Tech. for Energy Corp. v.
   Computational Sys., Inc., 1992 WL 535791, at *36 (E.D. Tenn. July 29, 1992)

17  ("The jury's verdict included damages through November 30, 1991.  The judgment

18  . . . will be amended to direct an accounting for infringement damages . . . for the
   period December 1, 1991, through the date of entry of an injunction prohibiting

19  further infringement of the patent.").

20  [9]  An accounting for profits is an equitable remedy, imposed when property that
   belongs to the plaintiff generates profits while in the defendant's possession.  The

21  purpose of the remedy is "to disgorge gains received from improper use of the

22  plaintiff's property or entitlement."  1 DOBBS, LAW OF REMEDIES § 4.3(5) (2d ed. 1993)
   at 610.  This Court has already ruled that MGA holds Bratz intellectual property in

23  constructive trust in favor of Mattel.  See Dec. 3 Order re Declaratory Relief at ¶ 1, 3,

24  Kidman Decl., Ex. 10 (holding that Mattel owns "all right, title and interest" in the
   Bratz-related works and that Mattel is the "beneficial owner" of MGA's Bratz

25  registrations); Dec. 3 Order re Constructive Trust at ¶1, Kidman Decl., Ex. 11 (finding

26  a constructive trust in favor of Mattel over the Bratz and Jade marks).  MGA cannot be
   entitled to keep post-verdict profits arising from its unlawful exploitation of assets it

27  holds in constructive trust on behalf of Mattel.

28  [10]  See May 18, 2009 Hearing Tr. at 29:1-3, Kidman Decl., Ex. 12.

1 of an injunction, like a refusal to issue an injunction, is not a license to infringe with

2 impunity; it is a refusal to use the Court's contempt powers to bring infringements to an

3 end. As the Federal Circuit has held, faced with a similar argument, "there was no

4 reasonable basis for [defendant] to assume that the stay of the injunction constituted a

5 judicial license to [defendant] to continue and to increase greatly its infringing

6 activities." Bott, 807 F.2d at 1573 (holding that defendant's post-verdict sales of

7 infringing products during pendency of stay of injunction constituted willful

8 infringement). While a party might "take some comfort from the stay," the choice to

9 continue infringing during the pendency of stay is a "decision to take the risk," and

10 remains unlawful. PrimeTime, 131 F. Supp. 2d at 480-81 (defendant's broadcast of

11 copyrighted material during pendency of stay constituted infringement); see also In re

12 Hayes Microcomputer Prods., Inc. Patent Litig., 766 F.Supp. 818, 823 (N.D. Cal. 1991)

13 (simultaneously staying injunction pending appeal *and* imposing additional sanctions

14 for willful infringement).

15 **III.   MGA SHOULD BE REQUIRED TO ESCROW ALL AMOUNTS**

16 **NECESSARY TO FULLY COMPENSATE MATTEL FOR MGA'S**

17 **POST-VERDICT, WILLFUL INFRINGEMENT**

18 Mattel does not expect a turnover of Bratz profits now, but it does expect

19 to obtain them in the future once additional fact-finding is completed. The Bratz profits

20 to be deposited into escrow must be sufficient to ensure that Mattel will be fully

21 compensated for MGA's post-verdict, willful infringements. Any Bratz proceeds not

22 placed in escrow now will in all likelihood be gone forever, unavailable to satisfy a

23 monetary award down the line, leaving Mattel without an adequate remedy.

24 ███████████████████████████████

25 ███████████████████████████████

26

27 [11]   See Mattel's Brief in Support of the Appointment of a Permanent Receiver, dated May 14, 2009, at 1-5; Mattel's Opposition to MGA Parties' *Ex Parte*

28 Application for Stay Pending Appeal, dated May 13, 2009, at 5-14.

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ███████████████████████████████████████████

4 ███████████████████████████████████████████

5 ███████████████████████████████████████████

6 ████████████████████████████████ The prospect that Mattel

7 will recover from MGA, post-judgment, the $100 million it is already owed *and* an

8 additional sum for post-verdict infringement is slim.

9      To avoid that inequity, the Court should order an escrow that includes all

10 profits which could be owed to Mattel once all disputed issues are resolved.  MGA

11 bears the burden, under the Copyright Act, of proving its deductible expenses incurred

12 to produce its revenues from infringement.  See Frank Music Corp. v. Metro-Goldwyn-

13 Mayer, Inc., 772 F.2d 505, 516 (9th Cir. 1985); Kamar Int'l, Inc. v. Berrie & Co., Inc.,

14 752 F.2d 1326, 1332 (9th Cir. 1984).  Further, because MGA is a willful infringer (at a

15 minimum the Phase 2 jury could so find), MGA's deductible expenses are limited as

16

17

18

19   12 ████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24   13 Durkin Report at 19; see also Wagner Stay Decl. ¶ 7.

25   14 ████████████████████████████████████████

26 ████████████████████████████████████████████

27   15 ████████████████████████████████████████████

28 ████████████████████████████████████████████



-7-

MATTEL'S MEMORANDUM RE ESCROW OF BRATZ PROFITS

discussed below.  MGA should be required to escrow all Bratz revenues, save the cost of goods sold and other direct costs it can prove it incurred to yield those revenues.[16]

MGA should not, on the other hand, be permitted to deduct amounts for overhead, operating expenses or taxes.[17]  If MGA's post-verdict infringement is found to be willful, such amounts are not properly deducted to arrive at net profits.  Indeed, the Court previously ruled that "[a] defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when copyright infringement is willful."[18]  See also J.P. Larson, Jr. Co. v. William Wrigley Jr., Co., 277 U.S. 97, 100 (1928) (infringers who engage in "conscious and deliberate wrongdoing" may not deduct taxes paid by the defendant); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 487 (9th Cir. 2000) (stating that "willful infringers could not deduct income taxes"); Frank Music Corp., 772 F.2d at 515 (portion of overhead properly deducted to arrive at profits where infringement was not willful); Saxon v. Blann, 968 F.2d 676, 681 (8th Cir. 1992) ("Overhead may not be deducted from gross revenues to arrive at profits when an infringement was deliberate or willful") (citing Frank Music, 772 F.2d at 515).[19]



[18]   Court's Phase B Jury Instructions, Instruction No. 43, Kidman Decl., Ex. 14.
[19]   See also Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); Liu v. Price Waterhouse
(footnote continued)

1    Even where infringement is not found to be willful—a finding that cannot

2 properly be made against Mattel in any event—deductions for overhead are limited to

3 amounts that MGA can show directly contributed to the sale of the infringing goods.

4 See Frank Music, 772 F.2d at 516 (defendant bears burden of showing that overhead

5 contributed to the production of the infringing work); Kamar, 752 F.2d at 1332

6 (requiring that the infringer "demonstrate that [the overhead] was of actual assistance in

7 the production, distribution or sale of the infringing product").[20]   And "general

8 overhead," such as "management, rent, telephones, designers, and the like are not to be

9 deducted, since they are . . . there whether the particular item is sold or not." JBJ

10 Fabrics, Inc. v. Mark Indus., Inc., 1987 WL 47381, at *6  (C.D. Cal. Nov. 5, 1987).

11 Even without willfulness, "[o]nly if a particular overhead item can be specifically

12 related to the goods in question can it be deducted." Id.   "Any doubt as to the

13 computation of costs or profits is to be resolved in favor of the plaintiff." Frank Music,

14 772 F.2d at 514; see also Three Boys Music, 212 F.3d at 487 (under § 504(b), "a court

15 should err on the side of guaranteeing the plaintiff a full recovery") (quoting Gaste v.

16 Kaiserman, 863 F.2d 1061, 1070 (2d Cir. 1988)).[21]

17

18 _____

19 LLP, 2000 WL 1644585, at *6 (N.D. Ill. Oct. 30, 2000) (approving jury instruction
barring deduction of overhead if the jury were to find willful infringement); Jarvis v.

20 A & M Records, 827 F. Supp. 282, 294 (D.N.J. 1993) ("if defendant's conduct is
willful, overhead may not be deducted").

21 [20]   See also Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc., 1987 WL 46520, at

22 *6 (C.D. Cal. Aug. 10, 1987) (a defendant "must show that the categories of
overhead actually contributed to the sales of the infringing work"); Carl Falkenstein,

23 Inc. v. Lustrelon, Inc., 1989 WL 69692, at *12 (E.D. Pa. June 19, 1989) (defendant

24 "cannot satisfy its burden of showing actual costs to be deducted from gross receipts
merely by introducing a financial statement showing broad categories of costs

25 incurred throughout its business," instead it "must demonstrate that each item of

26 costs that it seeks to deduct from gross receipts is attributable to the infringing goods
in question") (citing Kamar, 752 F.2d at 1332-33).

27 [21]   Taxes also should not be deducted to arrive at profits even where

28 infringement is not willful.  See Wagner Decl. ¶ 12; see also Schnadig Corp. v.
     (footnote continued)

1    MGA has a history of questionable accounting practices designed to
2  overstate Bratz costs and understate Bratz profits.   At the Phase 1B trial, Mattel
3  presented expert testimony that MGA had understated Bratz profits by approximately
4  $184 million dollars by, among other things, improperly burdening Bratz with overhead
5  and operating expenses that properly should have been allocated to other product
6  lines.[22] ███████████████████████████████████████████████████████
7  █████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████

9    Nor are MGA's suspect accounting and questionable practices limited to
10 the cost side of the profit equation.   ██████████████████████████████████
11 ██████████████████████████████████████████████████  █████████
12 █████████████████████████████████████████████████████████████████
13 █████████████████████████████████████████████████████████████████
14 █████████████████████████████████████████████████████████████████
15 █████████████████████████████████████████████████████████████████
16 █████████████████████████████████████████████████████████████████
17 ████████████████████████████████████

18    At a minimum, even apart from the issue of willful infringement, there are
19 likely to be significant disputes regarding revenues and properly deductible costs that

20  _____

21 Gaines Mfg. Co., Inc., 620 F.2d 1166, 1169-70 (6th Cir. 1980) ("When an infringer
22 is required to pay damages to a design patentee, the amount so paid is deductible
   from his income tax . . . If the award is based on the infringer's after-tax profits, this
23 deduction will allow the infringer to reap a net gain from his infringing activity.").
24 [22]  See Trial Tr. at 7808:8-7809:10, 7810:20-7812:2 (Michael J. Wagner),
   Kidman Decl., Ex. 15; see also Wagner Decl. ¶¶ 5-10.
25 [23]  See Wagner Decl. ¶¶ 14-17.
26 [24]  Durkin Report at 24-30.
   [25]  See Wagner Decl. ¶ 6.
27 [26]  See Durkin Report at 10-11.
28 [27]  Durkin Report at 19.

1   will have to be resolved at the appropriate time in finally determining the profits from
2   post-verdict infringement by MGA that should be turned over to Mattel.  It also may
3   eventually become clear that Mattel's actual damages from MGA's ongoing
4   infringements—which Mattel is certainly entitled to recover, <u>see</u> 17 U.S.C. § 504—
5   exceed MGA's profits from Bratz.  To ensure Mattel a full recovery or something that
6   will at least approximate such a recovery, MGA should be required to escrow all
7   revenues from Bratz after June 30, 2008 (whether made by MGA or IGWT or other
8   Larian-controlled entities),[28] minus the cost of goods sold and other direct sales and
9   manufacturing costs.[29]

10

11                              <u>**Conclusion**</u>

12            For the foregoing reasons, Mattel respectfully requests that MGA be
13   required to escrow all revenues it has obtained or will obtain from Bratz since July 1,
14   2008, minus the cost of goods sold and such other direct sales and manufacturing costs
15   as MGA can prove were reasonably and necessarily incurred to produce such Bratz
16   revenues.

17

18   DATED:  May 27, 2009            QUINN EMANUEL URQUHART OLIVER &
19                                   HEDGES, LLP

20
                                    By /s/ Michael T. Zeller
21                                      Michael T. Zeller
                                        Attorneys for Mattel, Inc.
22

23

24

25   _____
        [28]   The damages evidence presented in the Phase 1 trial did not go beyond June
26   30, 2008.  <u>See</u> Wagner Decl. ¶ 5.  Thus, the jury's damages awards did not consider
        infringements and violations occurring after that date.
27      [29]   <u>See</u> <u>supra</u> n.16 and Wagner Decl. ¶ 13 for the categories of direct sales and
28   manufacturing costs.