EXHIBIT 1

 **REUTERS**

Print | Close this window

# MGA unwilling to share Bratz revenue with Mattel

Thu Sep 11, 2008 7 37pm EDT

By Gina Keating

LOS ANGELES (Reuters) - MGA Entertainment Inc will not share future revenue from its Bratz doll franchise with Mattel Inc (MAT.N: Quote, Profile, Research, Stock Buzz) to settle a copyright infringement lawsuit, MGA Chief Executive Isaac Larian told Reuters on Thursday.

"It's not true. I never said that," Larian said of a Wall Street Journal story, which cited him as saying that MGA would be willing to share future revenues from its Bratz doll franchise to end the federal court litigation.

"What I said was, that it is in the interest of MGA employees and I believe it is in the interest of Mattel shareholders and Mattel employees for the two companies to come to a settlement and move on," Larian said.

Wall Street Journal spokesman Robert Christie said on Thursday the newspaper stands behind its story.

Larian met this week with a mediator for a court-ordered settlement conference, but he said a royalty payment on future Bratz revenue was not on the table.

"We are never going to give the Bratz brand to Mattel or anybody else," Larian said. "A royalty for what? These are really speculations that are not realistic."

U.S. District Judge Stephen Larson ordered MGA and Mattel into mediation to work out the amount of damages MGA would pay Mattel for infringing on the original Bratz drawings and models that Mattel won in the court fight, as well as which company will control the franchise going forward.

A federal jury in Riverside, California awarded Mattel all but four drawings and models upon which the Bratz franchise was based, finding that former Barbie designer Carter Bryant had made them while under contract to Mattel and illegally sold them to MGA.

The jury also awarded Mattel up to $100 million in damages and lost profits during the two-phase summer trial, but the verdict did not conclude which company had the right to make the urban chic competitor to Barbie.

Mattel had argued that MGA owed it all revenues from Bratz — about $2 billion — plus punitive damages. MGA had contended that if the jury found that the dolls infringed at all on the drawings, damages should be limited to the first generation of dolls because later generations were substantially redesigned.

The jury appeared to side with MGA by awarding only $10 million on Mattel's copyright infringement claim and by asking the judge during deliberations if it could award damages based only on profits from the first generation of dolls.

Larian, who intends to appeal the final damages award, described his position going into the mediation as: "I want to come to a global settlement that each one of us goes our own way and competes where it really matters: in the marketplace."

**EXHIBIT __1__**
**PAGE __3__**

MGA unwilling to share Bratz revenue with Mattel | Reuters.com
Case 2:04-cv-09049-DOC-RNB   Document 5625-3   Filed 05/27/09   Page 3 of 44   Page ID
#:181327
Page 2 of 2

A Mattel spokesperson said the company was continuing to take part in the process.

"I don't want to spend another summer in Riverside (California). It took a toll on my family," Larian said. "My willingness for a settlement doesn't come from my weakness, it comes from my strength."

Mattel's shares closed up 8 cents at $19.40 on the New York Stock Exchange.

(Additional reporting by Aarthi Sivaraman in New York)

© Thomson Reuters 2008. All rights reserved. Users may download and print extracts of content from this website for their own personal and non-commercial use only. Republication or redistribution of Thomson Reuters content, including by framing or similar means, is expressly prohibited without the prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and disclosure of relevant interests.

EXHIBIT __I__
PAGE __Y__

EXHIBIT 2

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: December 3, 2008
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          James Holmes                        None Present
          Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE
DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200
INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS
AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER
DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                     1

EXHIBIT  2
PAGE  5

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90
CIVIL -- GEN                                    2                         Initials of Deputy Clerk: jh

EXHIBIT __2__
PAGE __6__

dolls while working as an employee of Mattel and while bound by the terms of an Inventions
Agreement, which provided that all rights to such property, and the property itself, belong to Mattel.
Moreover, the Court further finds, as did the jury, that the preponderance of the evidence
establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations
with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted
Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel.
Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the
MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion
dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA
parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel,
and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as
to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1)
lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v.
Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither
element.

Because the Court has already found that all the claims asserted against the MGA parties
were filed within the applicable limitations periods, the Court starts with the presumption that
laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.
2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has
already found, based on the undisputed evidence, that Mattel had no reason to know of its claims
against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA
and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE
intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004.
See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a
significantly protectable interest relating to the subject matter of the action, . . . and that MGA's
interest is not adequately represented by the existing parties."). Thereafter, the parties briefed
Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a
stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]   By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase
1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses
that they have not already expressly waived.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                      3

EXHIBIT  2
PAGE  1

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.     Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

Initials of Deputy Clerk: jh

EXHIBIT  2
PAGE     6

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.     Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

Initials of Deputy Clerk: jh

EXHIBIT   2
PAGE      9

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL – GEN                                         6                       Initials of Deputy Clerk: jh

EXHIBIT  2
PAGE  10

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B. § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4] Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

Initials of Deputy Clerk: jh

EXHIBIT 2
PAGE 11

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV.  Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                     8

EXHIBIT __2__
PAGE ___12___

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

EXHIBIT __2__
PAGE __13__

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5] Counsel likened the jury's
damage award to a rug that, no matter which way one moved it, simply would not cover the floor.
See Nov. 10, 2008, Tr. at 100-101. Counsel explained that the jury's findings led to one conclusion
or the other and, regardless of which conclusion was chosen, the jury's finding did not support an
injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money. You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products. And the jury has put that cap for
> us.

Id. Although colorful, counsel's metaphor is not helpful. Assuming that the Court would be bound
by a jury's factual finding in a case where only two possible inferences -- both of which would lead
the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an
expert report, the Court will infer the factual findings that necessarily flow from it. But where, as
here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the
Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary
injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in
Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and
6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15,
2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the
sculpts depicted in Exs. 1 and 2. In doing so, the Court has first examined the specific expressive
elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is
rejected for that reason as well. See Opp. at 21 ("Here, the circumstances clearly show that the
only reasonable conclusion to draw is that the jury's infringement finding was limited to a small
universe of products, specifically the first generation Bratz dolls as clothed and packaged.")
(emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to
explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total
copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10
million total) rather than simply the $4 million] argued by MGA as profits for the first generation
may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million
revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings
can be inferred from the jury's copyright infringement award and why the Court is obligated to
make its own factual findings.

MINUTES FORM 90                                                Initials of Deputy Clerk: jh
CIVIL -- GEN                              10

EXHIBIT ___7___
PAGE ___14___

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                                        11

EXHIBIT   2
PAGE   15

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[i]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

Initials of Deputy Clerk: jh

EXHIBIT 2
PAGE 16

> plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT  2
PAGE  17

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern.  However, there is also a strong public
interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law.  Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement.  The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little.  In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]  No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90
CIVIL -- GEN                                14                       Initials of Deputy Clerk: jh


EXHIBIT __2__
PAGE ___1ɓ___

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT __2__
PAGE __19__

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT __2__
PAGE __20__

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

EXHIBIT __2__
PAGE __21__

EXHIBIT 3

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10                         EASTERN DIVISION
11

| | |
|---|---|
| 12  MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13             Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14 | |
| 15        vs. | Hon. Stephen G. Larson |
| 16  MGA ENTERTAINMENT, | |
| 17             Defendant. | **FINAL VERDICT FORM AS GIVEN** |
| 18  AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27
28

7-17

EXHIBIT __3__
PAGE __22__

# VERDICT FORM

We answer the questions submitted to us as follows:

## Timing of Tangible Items

1.   For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|----|----|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

07209/2554627.7
Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT 3
PAGE 23

| Yes | No | |
|-----|-----|-----|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

EXHIBIT 3
PAGE 24

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746,  5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT  3
PAGE   25

3.   For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|-----|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

07209/2554627.7

EXHIBIT 3
PAGE 26

1    4.    For each of the items listed below, has Mattel proven by a

2  preponderance of the evidence that the item was "conceived or reduced to practice"

3  — that is, created — by Carter Bryant, alone or jointly with others, during the

4  period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

6                    **Trial Exhibit No.**                    YES      NO

7    The Three Dimensional Item Presented at Pitch          X      _____

8                    Meeting

9

10                    Trial Exhibit 1136                    X      _____

11

12                    **Timing of Ideas**

13

14    5.    Has Mattel proven by a preponderance of the evidence that Carter

15  Bryant conceived the "Bratz" characters while employed by Mattel?

16    Yes    X

17    No    _____

18

19

20    6.    Has Mattel proven by a preponderance of the evidence that Carter

21  Bryant conceived the name "Bratz" while employed by Mattel?

22                    Yes    X

23                    No    _____

24

25

26

27

28

EXHIBIT  3
PAGE  27

1   **Intentional Interference with Contractual Relations**

2   7.   Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3   interference with contractual relations?

4   Yes   X

5   No   ____

6

7   8.   Is Isaac Larian liable to Mattel for intentional interference with

8   contractual relations?

9   Yes   X

10   No   ____

11

12   **Aiding and Abetting Breach of Fiduciary Duty**

13   9.   Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14   duty?

15   Yes   X

16   No   ____

17

18   10.   Is Isaac Larian liable to Mattel for aiding and abetting breach of

19   fiduciary duty?

20   Yes   X

21   No   ____

22

23   **Aiding and Abetting Breach of the Duty of Loyalty**

24   11.   Is MGA liable to Mattel for aiding and abetting breach of the duty of

25   loyalty?

26   Yes   X

27   No   ____

28

EXHIBIT   3
PAGE   28

1      12.   Is Isaac Larian liable to Mattel for aiding and abetting breach of the

2   duty of loyalty?

3              Yes   _X_

4              No   ____

5

6                              **Conversion**

7      13.   Is MGA liable to Mattel for conversion?

8              Yes   _X_

9              No   ____

10

11     14.   Is Isaac Larian liable to Mattel for conversion?

12             Yes   _X_

13             No   ____

14

15     15.   Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16             Yes   _X_

17             No   ____

18

19

20         Once this verdict form is completed, the foreperson of the jury should sign

21   and date on the lines below.

22   DATED: _July  17_____, 2008

23

24

25                                       _____
                                              Presiding Juror
26

27

28

-7-                              Case No. CV 04-9049 SGL (RNBx)
                                 FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT __3__
PAGE __29__

EXHIBIT 4



1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

| 12 | MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx) |
| 15 | MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16 | Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17 | AND CONSOLIDATED ACTIONS | |
| 18 | | |

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/2609
584.2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 4
PAGE 30

1          **VERDICT FORM - PHASE B**

2          We answer the questions submitted to us as follows:

3

4                **I.  Damages for Phase A Claims**

5                (Answer all four questions in this section.)

6

7          **Intentional Interference With Contractual Relations**

8       1.      In Phase A of this trial, you found that MGA Entertainment, Inc.

9    ("MGA") and Isaac Larian are liable to Mattel for intentional interference with

10   contractual relations.  What amount of damages, if any, should be awarded to

11   Mattel?

12              As to MGA:        $     20  MILLION

13              As to Mr. Larian:  $     10   MILLION

14

15         **Aiding and Abetting Breach of Fiduciary Duty**

16      2.      In Phase A of this trial, you found that MGA and Isaac Larian are liable

17   to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What

18   amount of damages, if any, should be awarded to Mattel?

19              As to MGA:        $   20 MILLION

20              As to Mr. Larian:  $    10  MILLION

21

22         **Aiding and Abetting Breach of the Duty of Loyalty**

23      3.      In Phase A of this trial, you found that MGA and Isaac Larian are liable

24   to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What

25   amount of damages, if any, should be awarded to Mattel?

26              As to MGA:        $   20  MILLION

27              As to Mr. Larian:  $    10   MILLION

28

07209/2609529.2608584                                    -2-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___4___
PAGE ___31___

1

**Conversion**

2      4.     In Phase A of this trial, you found that MGA, Isaac Larian and MGA

3 Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4 conversion. What amount of damages, if any, should be awarded to Mattel?

5           As to MGA:         $    _31,500 PLUS 7% INTEREST_

6           As to Mr. Larian:     $    _0_    _CALCULATED FROM_

7           As to MGA Hong Kong: $    _0_     _THE DATE MATTEL'S_

8                                           _PROPERTY WAS_

9                                           _CONVERTED._

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

EXHIBIT   4

PAGE   32

Case 2:04-cv-09049-SGL-RNB    Document 4279    Filed 08/26/2008    Page 4 of 9

## II.  Copyright Infringement

1

2    5.    Has Mattel proven by a preponderance of the evidence that MGA is

3   liable to Mattel for copyright infringement?

4            Yes        _X_

5            No        ____

6    If your answer is "yes," then answer Question 6.

7    If your answer is "no," then answer Question 7.

8

9    6.    Was MGA's copyright infringement willful?

10            Yes        ____

11            No    _X_

12    Answer Question 7.

13

14    7.    Has Mattel proven by a preponderance of the evidence that Isaac Larian

15   is liable to Mattel for copyright infringement?

16            Yes    _X_

17            No        ____

18    If your answer is "yes," then answer Question 8.

19    If your answer is "no," then answer Question 9.

20

21    8.    Was Mr. Larian's copyright infringement willful?

22            Yes        ____

23            No    _X_

24    Answer Question 9.

25

26    9.    Has Mattel proven by a preponderance of the evidence that MGA Hong

27   Kong is liable to Mattel for copyright infringement?

28            Yes    _X_

-4-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT __4__
PAGE __33__

1        No  ____

2    If your answer is "yes," then answer Question 10.

3    If your answer is "no," then answer Question 11.

4

5    10.    Was MGA Hong Kong's copyright infringement willful?

6        Yes  ____

7        No   X

8    Answer Question 11.

9

10   11.    What amount of damages, if any, should be awarded to Mattel for the

11   defendants' copyright infringement?

12   (a)    Copyright Infringement by MGA

13        $   6 Million

14   (b)    Copyright Infringement by Isaac Larian

15        Distributions Mr. Larian received from MGA attributable to Bratz-

16        related works:

17        $   3 Million

18        Value of Mr. Larian's ownership percentage of MGA attributable to

19        Bratz-related works:

20        $   0

21   (c)    Copyright Infringement by MGA Hong Kong:

22        $   1 Million

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT  4
PAGE  34

## III. Punitive Damages

1

2      12.    Has Mattel proven by clear and convincing evidence that MGA acted

3   with malice, oppression, or fraud?

4              Yes _____

5              No    X

6      If your answer is "yes," then answer Question 13.

7      If your answer is "no," then answer Question 14.

8

9      13.    What amount of punitive damages, if any, should be awarded against

10  MGA?

11              $ _____ ∅ _____

12      Answer Question 14.

13

14      14.    Has Mattel proven by clear and convincing evidence that Isaac Larian

15  acted with malice, oppression, or fraud?

16              Yes _____

17              No    X

18      If your answer is "yes," then answer Question 15.

19      If your answer is "no," then answer Question 16.

20

21      15.    What amount of punitive damages, if any, should be awarded against

22  Mr. Larian?

23              $ _____ ∅ _____

24      Answer Question 16.

25

26      16.    Has Mattel proven by clear and convincing evidence that MGA Hong

27  Kong acted with malice, oppression, or fraud?

28              Yes _____

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 4
PAGE 35

1    No X

2  If your answer is "yes," then answer Question 17.

3  If your answer is "no," then answer Question 18.

4

5   17. What amount of punitive damages, if any, should be awarded against

6 MGA Hong Kong?

7    $ ⌀

8  Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT  4

PAGE  34

Case 2:04-cv-09049-SGL-RNB   Document 4279   Filed 06/26/2008   Page 8 of 9

1

### IV.  Fraudulent Concealment

2
(Answer all five questions in this section.)

3

4      18.    Has Mattel proven by a preponderance of the evidence that MGA

5   fraudulently concealed the bases for Mattel's claim of intentional interference with

6   contract against it until at least April 27, 2002?

7            Yes   ✗

8            No    ____

9

10     19.    Has Mattel proven by a preponderance of the evidence that Isaac Larian

11   fraudulently concealed the bases for Mattel's claim of intentional interference with

12   contract against him until at least April 27, 2002?

13           Yes   ____

14           No    ✗

15

16     20.    Has Mattel proven by a preponderance of the evidence that MGA

17   fraudulently concealed the bases for Mattel's claim of conversion against it until at

18   least April 27, 2001?

19           Yes   ✗

20           No    ____

21

22     21.    Has Mattel proven by a preponderance of the evidence that Mr. Larian

23   fraudulently concealed the bases for Mattel's claim of conversion against him until

24   at least April 27, 2001?

25           Yes   ____

26           No    ✗

27

28

07209/2609529.2608584

-8-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT   4
PAGE   37

1      22.   Has Mattel proven by a preponderance of the evidence that MGA Hong

2 Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3 until at least April 27, 2001?

4           Yes   ____

5           No    X

6

7      Once this verdict form is completed, the foreperson of the jury should sign

8 and date on the lines below.

9

10 DATED: *August 26, 2008*        /s/

11                      Jury Foreperson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

EXHIBIT  48

PAGE   36

EXHIBIT 5

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  RAOUL D. KENNEDY (Bar No. 40892)
   (rkennedy@skadden.com)
3  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
5  300 South Grand Avenue, Suite 3400
   Los Angeles, CA  90071-3144
6  Tel.: (213) 687-5000
7  Fax: (213) 687-5600
   Attorneys for The MGA Parties
8
9  JOHN B. QUINN (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
10 MICHAEL T. ZELLER (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
11 JON D. COREY (Bar No. 185066)
   (joncorey@quinnemanuel.com)
12 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
13 865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
14 Telephone:  (213) 443-3000
   Facsimile:   (213) 443-3100
15 Attorneys for Mattel, Inc.

16             UNITED STATED DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18                    EASTERN DIVISION

19 CARTER BRYANT, an individual,        ) CASE NO. CV 04-9049 SGL (RNBx)
                                        )
20                 Plaintiff,           ) Consolidated with Case No. 04-9059
                                        ) and Case No. 05-2727
21           v.                         )
                                        ) Honorable Stephen G. Larson
22 MATTEL, INC., a Delaware             )
   corporation,                         ) STIPULATION REGARDING 2009
23                                      ) BRATZ PRODUCTS
                   Defendant.           )
24                                      )
   ─────────────────────────────        )
25 AND CONSOLIDATED ACTIONS.           )
                                        )
26 ─────────────────────────────        )

27                                      EXHIBIT  5

28                                      PAGE ___39___

Case 2:04-cv-09049-DOC-RNB   Document 5625-3   Filed 05/27/09   Page 43 of 44   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4655   Filed 01/07/2009   Page 2 of 3
#:181367

1        **STIPULATION**

2               WHEREAS, on December 3, 2008, this Court issued an Order Finding

3    in Favor of Mattel as to MGA's Affirmative Defenses, Granting Mattel's Motion for

4    Declaratory Judgment, Granting Mattel's Motion for Constructive Trust and

5    Injunctive Relief, and Granting Mattel's Motion for Permanent Injunction (Dkt

6    4439); an Order Granting Mattel, Inc.'s Motion for Permanent Injunction (Dkt

7    4443); an Order Granting Mattel, Inc.'s Motion for Declaratory Judgment (Dkt

8    4442); and an Order Granting Mattel, Inc.'s Motion for Constructive Trust and For

9    Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200

10   (Dkt 4441);

11              WHEREAS, at the January 5, 2009 hearing, in connection with the

12   Court's consideration of a potential modification of the current stay as to the

13   December 3, 2008 Orders in order to preserve the status quo pending the resolution

14   of post-trial motions, which are currently scheduled for hearing on February 11,

15   2009, the Court requested a stipulation regarding which 2009 Bratz products will be

16   enjoined by and subject to the Court's December 3, 2008 Orders, should they

17   become effective; and

18              WHEREAS, MGA has not provided or shown its Spring or Fall 2009

19   Bratz dolls or products to Mattel's counsel and therefore Mattel is relying entirely on

20   MGA's representations as to the stipulation herein;

21              NOW, THEREFORE, the MGA Parties and (based on MGA's

22   representations) Mattel stipulate that:

23       1.     All products under the current MGA 2009 Bratz line fall within the

24   scope and terms of the Court's four orders issued on December 3, 2008;

25       2.     Without limiting the generality of the foregoing, all 2009 female core

26   Bratz fashion dolls (which MGA represents are scheduled for release in both Spring

27   and Fall 2009) fall within the scope and terms of the December 3, 2008 Order

28

1

EXHIBIT __5__
PAGE __40__

Granting Mattel's Motion for Permanent Injunction and, should that Order become effective, will be barred from manufacture, distribution, marketing and sale by that Order and will be fully subject to that Order, including as to the Order's recall provisions; and

      3.     MGA is hereinafter estopped from denying in any future proceeding that its 2009 female core Bratz fashion dolls (which MGA represents are scheduled for release in both Spring and Fall 2009) fall within the scope and terms of the December 3, 2008 Order Granting Mattel's Motion for Permanent Injunction and, should that Order become effective, will be barred from manufacture, distribution, marketing and sale by that Order and will be fully subject to that Order, including as to the Order's recall provisions. Nothing in this stipulation estops MGA from asserting any claimed rights to the alleged trademarks in the names Yasmin, Sasha and Cloe, and nothing in this stipulation prevents Mattel from disputing or challenging on any basis or ground or for any reason any such claimed rights or that any trademark or other valid rights inhere in or have been acquired in such names or from taking any other position with respect to such names or any other matter.

      IT IS SO STIPULATED.

DATED: January 7, 2009    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

           By: _____ /s/ Thomas J. Nolan _____
                        Thomas J. Nolan
                     Attorneys for the MGA Parties

DATED: January 7, 2009    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

           By: _____ /s/ authorized for signature _____
                        B. Dylan Proctor
                     Attorneys for Mattel, Inc.

EXHIBIT 5
PAGE 41