EXHIBIT 10

O

1
2
3
4
5
6
7
8      UNITED STATES DISTRICT COURT
9      CENTRAL DISTRICT OF CALIFORNIA
10     EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12 | Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 13 | vs. | |
| 14 | MATTEL, INC., a Delaware corporation, | ORDER GRANTING DECLARATORY JUDGMENT |
| 15 | | |
| 16 | Defendant. | |
| 17 | AND CONSOLIDATED ACTIONS | |

18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] ORDER

EXHIBIT __10__
PAGE __153__

1

## ORDER

2

3      1.      The Court hereby DECLARES that Mattel owns all right, title and

4  interest, including any and all copyright rights, in and to the Bratz-related works,

5  ideas, and concepts that Carter Bryant conceived or created while employed by

6  Mattel, as found by the jury in this case, including the idea for the name "Bratz" and

7  the idea for the "Bratz" characters, which are protectible property interests as a

8  matter of California state law, and the following works (identified by Trial Exhibit

9  (TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2641997.3

-2-

[PROPOSED] ORDER

EXHIBIT __10__
PAGE __154__

| |
|---|
| TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| TX 5-63, 758, 759, 760 |
| TX 5-64, 62-6, 795, 1152-14, 1750 |
| TX 5-65, 1152-7, 1152-8, 11789 |
| TX 5-66, 794, 1152-13 |
| TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| TX 5-73, 741, 742 |
| TX 5-76, 706 |
| TX 5-77, 707 |
| TX 5-78, 10539, 18501 |
| TX 5-136, 711 |
| TX 10579, 18281 |
| TX 15172 |
| TX 3-1, 779, 780, 1-1, 2-1, 778 |
| TX 3-2, 726, 727, 728, 1-4, 2-5 |
| TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| TX 3-5, 791, 1-8, 2-2 |
| TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| TX 3-10, 735, 736 |
| TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| TX 3-13, 793, 1-5, 2-3, 10-3 |
| TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| TX 1-2 |
| TX 3-11, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT __10__
PAGE ___155___

| |
|---|
| TX 5-26, 712 |
| TX 5-27, 713 |
| TX 5-81, 720 |
| TX 5-82, 715 |
| TX 5-83, 723 |
| TX 3-4, 5-84, 716, 717 |
| TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| TX 5-80, 721, 722, 5-86 |
| TX 5-87, 5-108, 724, 725 |
| TX 5-34 |
| TX 5-89, 35-2, 323-32, 323-33 |
| TX 1107, 10638 |
| TX 1108, 10639 |
| TX 1109, 771 |
| TX 1110, 773 |
| TX 5-14, 10515 |
| TX 5-18, 10518 |
| TX 5-19, 10519 |
| TX 5-28, 10526 |
| TX 5-30 |
| TX 5-95 |
| TX 5-96 |
| TX 5-99 |
| TX 323-18 |
| TX 323-19 |
| TX 323-26 |
| TX 1136 |
| The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-4-

[PROPOSED] ORDER

EXHIBIT 10
PAGE 156

1      2.      The Court further hereby DECLARES that MGA Entertainment Inc.
2  ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do
3  not have any right, title or interest in or to the works, ideas and/or concepts listed
4  above. Any purported assignment from Carter Bryant to MGA of the rights to the
5  works, ideas or concepts listed above, including any purported assignment of such
6  rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,
7  2000, was invalid, ineffectual and void ab initio.

8      3.      In addition, the Court hereby ORDERS that all copyright registrations
9  MGA has obtained in and for the Bratz works listed above, including Registration
10  Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-
11  218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491
12  (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have
13  been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such
14  registrations.

15      4.      The Court further hereby ORDERS that all Bratz-related works listed
16  in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that
17  Defendants shall deliver the originals of such works to Mattel forthwith.

18               IT IS SO ORDERED.
19
20
21  DATED:  December 3, 2008
                              Hon. Stephen G. Larson
22                              United States District Judge
23
24
25
26
27
28

07209/2641997.3                                    -5-

                                                              [PROPOSED] ORDER

EXHIBIT 10
PAGE 157

# EXHIBIT 11

O

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                           EASTERN DIVISION

| | |
|---|---|
| 11   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) Consolidated with |
| 12   Plaintiff, | Case Nos. CV 04-09059 & CV 05-2727 |
| 13   vs. | |
| 14   MATTEL, INC., a Delaware corporation, | **ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING** |
| 15 | **LIABILITY AND INJUNCTIVE** |
| 16   Defendant. | **RELIEF PURSUANT TO CAL. BUS. & PROF CODE § 17200** |
| 17   AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

07209/2649025.3

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

EXHIBIT __11__

PAGE __156__

1

## ORDER

2        Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive
3 Trust and for a Finding of Liability and Injunctive Relief Pursuant to California
4 Business & Professional Code § 17200, and all other papers and arguments
5 submitted in connection therewith, as well as the evidence admitted at trial and the
6 jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against
7 MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong
8 Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

9        1.     A constructive trust in favor of Mattel on all rights to trademarks,
10 service marks and domain names held by MGA or Larian, or any person or entity
11 acting on their behalf or for their benefit, anywhere in the world that include the
12 terms "Bratz" or "Jade," including all such trademark registrations and trademark
13 applications (including, without limitation, United States Trademark Registrations
14 identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465,
15 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614,
16 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942,
17 2789216 and 2836780 and United States Trademark Applications identified by
18 Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100,
19 78490324, 77443372 and 77575881), and the good will inhering therein, as well as
20 all such domain name registrations, is HEREBY ORDERED and all rights therein
21 are ORDERED transferred to Mattel.

22        2.     MGA and Larian are HEREBY ORDERED to (a) identify all
23 trademark registrations and applications held by them, or any person or entity acting
24 on their behalf or for their benefit, anywhere in the world that include the terms
25 "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in
26 which they, or any person or entity acting on their behalf or for their benefit, claim
27 to own trademark rights, whether or not such marks are subject to existing
28 trademark registrations or pending trademark applications, (c) identify all domain

EXHIBIT    11
PAGE    159

1   names and domain name registrations held by them, or any person or entity acting
2   on their behalf or for their benefit, anywhere in the world that include the terms
3   "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4   transfer and/or assignment of such marks and domain names and associated
5   applications and registrations to Mattel. MGA shall fully comply with (a), (b) and
6   (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7          3.     The Court HEREBY FINDS that the MGA Defendants violated
8   California Business and Professions Code § 17200 and are liable to Mattel on its
9   twelfth claim for relief for unfair competition.

10         4.     The MGA Defendants, along with their respective officers,
11  directors, principals, agents, representatives, servants, employees, affiliates,
12  successors or assigns, and any person or entity acting on their behalf or in concert or
13  participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14  using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15  trademark, domain name or otherwise, in connection with the manufacture,
16  promotion, advertising, distribution, offering for sale or sale of any goods or
17  services anywhere in the world and (b) taking any action to preclude Mattel from
18  using the terms "Bratz" or "Jade" in any such manner, including without limitation
19  as a mark in connection with goods and services.

20         **IT IS SO ORDERED.**

21

22  DATED:  December 3, 2008

                                    Hon. Stephen G. Larson
23                                  United States District Judge

24

25

26

27

28

07209/2649025.3

-3-

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION



EXHIBIT 11
PAGE 160

EXHIBIT 12

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7   MATTEL, INC.,                    )
                                     )
8                    Plaintiff,      )
                                     )
9          vs.                       )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. Al.,)
                                     )
11                   Defendants.     )  MOTIONS
    _____    )
12  AND CONSOLIDATED ACTIONS,        )
    _____    )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17            MONDAY, MAY 18, 2009

18                1:52 P.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
             Federal Official Court Reporter
24            3470 12th Street, Rm. 134
             Riverside, California  92501
25               951-274-0844
             www.theresalanza.com

EXHIBIT 12
PAGE 141

```
 1   APPEARANCES:

 2
     On behalf of Mattel, Inc.:
 3
                         QUINN EMANUEL
 4                       By:   JOHN QUINN
                               MICHAEL T. ZELLER
 5                       DYLAN PROCTOR
                         SCOTT B. KIDMAN
 6                       865 S. FIGUEROA STREET,
                         10th Floor
 7                       Los Angeles, California  90017
                         213-624-7707
 8
                         KLEE, TUCHIN, BOGDANOFF & STERN LLP
 9                       BY:   DAVID M. STERN
                         1999 Avenue of the Stars
10                       Thirty-Ninth Floor
                         Los Angeles, CA  90067
11                       310-407-4025

12
13   On Behalf of MGA Entertainment/Isaac Larian:

14                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
15                             JASON RUSSELL
                               CARL ROTH
16                       300 South Grand Avenue
                         Los Angeles, California  90071-3144
17                       213-687-5000

18                       GLASER, WEIL, FINK, JACOBS
                         HOWARD & SHAPIRO, LLP
19                       BY:  PATRICIA GLASER
                         BY:  JOEL N. KLEVENS
20                       10250 Constellation Blvd.
                         Los Angeles, CA  90067
21                       310-553-3000

22                       MITCHELL SILBERBERG & KNUPP LLP
                         BY:   RUSSELL J. FRACKMAN
23                       11377 West Olympic Blvd.
                         Los Angeles, CA  90064-1683
24                       310-312-2000

25   /  /  /
     /  /  /
```

EXHIBIT 12
PAGE 162

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

```
 1   APPEARANCES (cont'd):

 2
     On Behalf of MGA Entertainment/Isaac Larian:
 3
                         PACHULSKI STANG ZIEHL & JONES
 4                       BY:   JAMES I. STANG
                         BY:   RICHARD PACHULSKI
 5                       10100 Santa Monica Blvd.,
                         11th Floor
 6                       Los Angeles, CA  90067-4100
                         310-277-6910
 7

 8   On Behalf of Isaac Larian:

 9                       JEFFER MANGELS BUTLER & MARMARO LLP
                         BY:   JOSEPH A. EISENBERG
10                       1900 Avenue of the Stars
                         7th Floor
11                       Los Angeles, CA  90067-4308
                         310-203-8080
12

13   On Behalf of Defendants Omni 808:

14                       BINGHAM McCUTCHEN LLP
                         BY:   TODD E. GORDINIER
15                       BY:   PETER N. VILLAR
                         600 Anton Boulevard,
16                       18th Floor
                         Costa Mesa, CA  92626-1924
17                       714-830-0622

18
     On Behalf of Crum & Forster:
19
                         MUSICK, PEELER & GARRETT LLP
20                       BY:   JENNIFER M. KOKES
                         One Wilshire Boulevard
21                       Los Angeles, CA  90017
                         213-629-7618
22

23   ALSO PRESENT:       Patrick A. Fraioli, Jr.,
                         Ambassador Pierre Prosper
24                       Robert O'Bryan
                         Michael J. Bidart
25
```

EXHIBIT 12
PAGE 163

1                               I N D E X

2                                                      PAGE

3    MOTIONS....................................          5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT _12_

PAGE _164_

Monday, May 18, 2009                  Mattel vs. MGA, et. Al.

```
 1          Riverside, California; Monday, May 18, 2009; 1:52 P.M.
 2                              -oOo-
 3          THE CLERK:  Calling calendar item number 18,
 4    Case Number CV 04-09049-SGL, Mattel, Inc., v. MGA
 5    Entertainment, Inc., et al.                              01:52
 6          Counsel, please state your appearances for the
 7    record.
 8          MR. QUINN:  John Quinn, Mike Zeller, Dylan Proctor
 9    for Mattel.
10          MS. GLASER:  Patricia Glaser for MGA.             01:52
11          MR. KLEVENS:  Joel Klevens for MGA.
12          MR. FRACKMAN:  Russell Frackman for MGA and
13    Mr. Larian.
14          MR. EISENBERG:  Joseph Eisenberg appearing on behalf
15    of Mr. Larian.                                          01:52
16          MR. NOLAN:  Tom Nolan on behalf of MGA and
17    Isaac Larian.
18          MR. STANG:  James Stang and Richard Pachulski
19    appearing for MGA.
20          MR. GORDINIER:  Todd Gordinier appearing for      01:53
21    Omni 8 Oasis, with my partner Peter Villar.
22          THE COURT:  Good afternoon to you all.
23          We have several matters on calendar this afternoon
24    that the Court wants to get through.
25          The first matter that I'd like to take up is Mattel's 01:53
```

EXHIBIT  12
PAGE  106

```
 1   amended answer?

 2           MS. GLASER:  Absolutely.  This is highly prejudicial

 3   material, intended to be inflammatory.

 4           And again, MGA enters no evidence to the contrary --

 5   and there has to be something, Your Honor -- no evidence to the     02:24

 6   contrary that MGA had any role in this whatsoever.

 7           Then let's get to -- if you look at -- there's 103

 8   pages of the proposed third amended answer and counterclaim.

 9   And they want to add some copyright infringement claims.

10   But -- and there's a big but -- the copyright infringement          02:24

11   claims were part of Phase 1, part of Phase 1.  And if

12   Your Honor -- we actually pointed out in our opposition, there

13   was no effort to even justify this in their moving papers.

14   They put something in -- and the reply papers -- something that

15   we, obviously, haven't even had a chance to respond to in           02:25

16   writing.

17           THE COURT:  Do so now, if you would.

18           It strikes the Court as kind of a catchall.  I'm not

19   really clear on what the claim involves as contradistinct from

20   what was litigated in Phase 1.                                      02:25

21           MS. GLASER:  That's two of us.  And I'm not being

22   flippant.

23           The Phase 1 jury found infringement was not willful

24   also.  And willfulness is a requirement of criminal copyright.

25   That's what they're trying to allege here, criminal copyright.      02:25
```

Monday, May 18, 2009

Mattel vs MGA, et. Al.
EXHIBIT  12
PAGE  166

29

| | |
|---|---|
| 1 | The post verdict sales, after December 3, 2008, could |
| 2 | not have been willful, because Your Honor stayed the injunction |
| 3 | and allowed MGA to sell.  We don't think there is a factual |
| 4 | basis, a legal basis, or a timeliness basis for these claims in |
| 5 | this part of the lawsuit. |
| 6 | Your Honor, I'll be glad to answer any other |
| 7 | questions you may have, but I think, in whole, it should be |
| 8 | denied, for the reasons articulated; but certainly, in large |
| 9 | part, this should be denied.  And I urge Your Honor to wait to |
| 10 | rule on the whole new RICO enterprise until you've heard from |
| 11 | the Omni party in connection with that. |
| 12 | **THE COURT:**  Thank you, Counsel. |
| 13 | **MS. GLASER:**  Thank you. |
| 14 | **MR. PROCTOR:**  I thought I'd start off with the |
| 15 | financial transactions.  And the starting point of this |
| 16 | analysis is, we clearly can and are entitled to bring these |
| 17 | claims somewhere.  MGA has not identified any basis to immunize |
| 18 | itself from these claims. |
| 19 | There's no allegation as to the financial |
| 20 | transactions.  There's no allegation of delay.  There is no |
| 21 | challenge to the pleading of the RICO claim at all, whether the |
| 22 | new enterprise or the predicate acts that have been alleged, |
| 23 | the laundering, the other predicate acts that have been |
| 24 | alleged.  The only merits challenge at all, to the extent the |
| 25 | merits challenge is even appropriate now, is a standing |

02:25

02:26

02:26

02:26

02:27

Monday, May 18, 2009

Mattel vs. MGA, et. Al.

EXHIBIT 12
PAGE 147

1    challenge.  And that one -- I'm happy to elaborate if the Court

2    would like, but I think it's clearly wrong.

3         So the question is -- and I think this is where the

4    Court was starting -- the question is, where should this be

5    brought?                                                          02:27

6         We can bring the claims.  Rule 15(d) is designed

7    precisely to enable the Court to bring claims such as this into

8    a case that's ongoing already.  These are transactions which,

9    contrary to counsel's suggestions, have been alleged, and are,

10   in fact, intimately connected with the matters already before    02:27

11   the Court.  They are expressly alleged to be attempts to flout

12   the Court's rulings.  They are a part of an ongoing RICO

13   conspiracy, which is not distinct and separate, but unified.

14        In that circumstance, it would make no sense, I would

15   submit, to force Mattel to bring these claims in some separate    02:28

16   action, where they clearly are already at issue in this case;

17   and there's a pending RICO claim in this case that is yet to go

18   to trial.  And I'd refer the Court to the Keith case, the

19   Griffin case, the Raduga case.  Courts permit supplemental

20   pleadings in situations such as this, and particularly where      02:28

21   there's an allegation that it is an effort to flout a prior

22   court ruling, even post judgment.  That's the Supreme Court in

23   Griffin.

24        THE COURT:  We'll take up, Counsel, a few of the

25   particulars in a moment, but let's return to the standard         02:28

EXHIBIT 12
PAGE 168

1          **MS. GLASER:**  And we haven't had the benefit of that.

2     I think if we're paying -- at least temporarily, we at least

3     ought to see --

4          **THE COURT:**  Part of what will occur at this point is

5     a complete accounting of all money spent during the 20-day                    05:05

6     temporary receivership.  You will be receiving that shortly

7     from Mr. Fraioli, which will account for all of the money

8     spent.  And on a going-forward basis, the Court will specify

9     how future payments are to be made.

10          And as I indicated before, at the end of the day,                        05:05

11     everyone will have the opportunity to revisit the issue of cost

12     sharing.

13          **MS. GLASER:**  Thank you very much.

14          **THE COURT:**  Is there anything further?

15          **MR. QUINN:**  No, Your Honor.                                           05:06

16          **THE COURT:**  Have a good evening.

17          (Court is adjourned.)

18                         CERTIFICATE

19

20     I hereby certify that pursuant to section 753, title 28, United
       States Code, the foregoing is a true and correct transcript of
21     the stenographically recorded proceedings held in the above-
       entitled matter and that the transcript page format is in
22     conformance with the regulations of the Judicial Conference of
       the United States.

23

24     _____          _____
                                                    Date
25     THERESA A. LANZA, CSR, RPR
       Federal Official Court Reporter

EXHIBIT __12__

PAGE __169__

EXHIBIT 13

# THIS EXHIBIT IS FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

EXHIBIT 14

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10              EASTERN DIVISION

11   MATTEL, INC.,                        | CASE NO. CV 04-9049 SGL (RNBx)
12              Plaintiff,
13                                        Consolidated with
14        vs.                             CASE NO. CV 04-9059 SGL (RNBx)
15                                        CASE NO. CV 05-2727 SGL (RNBx)
16   MGA ENTERTAINMENT, INC., et al.,     Hon. Stephen G. Larson
17
18   Defendants.
19                                        **COURT'S PHASE B JURY
     AND CONSOLIDATED ACTIONS             INSTRUCTIONS AS GIVEN**
20
21
22
23
24
25
26
27
28

EXHIBIT  14
PAGE  176

**JURY INSTRUCTION NO. 43**

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights. An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.     The defendants engaged in acts that infringed the copyright; and

2.     The defendants knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when the copyright infringement is willful.

48

EXHIBIT  14
PAGE  122

EXHIBIT 15

7652

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                      - - -

4      **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                      - - -

6   MATTEL, INC.,              :  PAGES 7652 - 7873
                               :
7          PLAINTIFF,          :
                               :
8      VS.                     :  NO. ED CV04-09049-SGL
                               :  [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,   :  CV04-9059 & CV05-2727]
    ET AL.,                    :
10                             :
          DEFENDANTS.          :
11  _____

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            FRIDAY, AUGUST 15, 2008

18             JURY TRIAL - DAY 36

19              AFTERNOON SESSION

20

21

22                      MARK SCHWEITZER, CSR, RPR, CRR
                        OFFICIAL COURT REPORTER
23                      UNITED STATES DISTRICT COURT
                        181-H ROYBAL FEDERAL BUILDING
24                      255 EAST TEMPLE STREET
                        LOS ANGELES, CALIFORNIA 90012
25                      (213) 663-3494

CERTIFIED COPY



EXHIBIT 15
PAGE 178

```
 1   Trial Exhibits 18923, 1, 2, 4, 6, 7, 9, 10, 11, 12, 13, 15,

 2   16, 17, 18, 21, 24, 25, 26, and 28, and 32.

 3             THE COURT:  Any objection?

 4             MR. NOLAN:  Strike 28.

 5             THE COURT:  Very well.  Any objection?

 6             MR. PRICE:  Your Honor, no objection subject to

 7   eliminating some of the titles.

 8             THE COURT:  Very well.

 9             (Exhibits 18923, 1, 2, 4, 6, 7, 9, 10,

10                11, 12, 13, 15, 16, 17, 18, 21, 24, 25,

11                26, and 32 received.)

12             MR. NOLAN:  And subject to the offer that we made

13   with respect to these other exhibits that I referenced at

14   sidebar, your Honor, MGA rests.

15             THE COURT:  Very well.  Thank you, Counsel.  I

16   understand there's a brief rebuttal case.

17             MR. QUINN:  Yes, your Honor.  Mattel calls Mike

18   Wagner.

19             THE COURT:  Very well.

20             THE CLERK:  Please raise your right hand.

21                  MICHAEL JOSEPH WAGNER, SWORN.

22             THE CLERK:  Please take the stand.  Please state

23   your full name for the record, and spell your last name.

24             THE WITNESS:  Michael Joseph Wagner, W-A-G-N-E-R.

25   ///
```



EXHIBIT __15__

PAGE __175__

7808

1      **DIRECT EXAMINATION**

2    BY MR. QUINN:

3    Q.   Welcome back, Mr. Wagner.  Couldn't stay away?

4    A.   I could stay away, but you asked me to come back.

5    Q.   You have been here and heard the testimony of MGA's

6    damages expert, Mr. Meyer?

7    A.   I've been here during his entire examination.

8    Q.   And I take it there are some points on which you and

9    Mr. Meyer have some areas of disagreement.

10   A.   There are.

11   Q.   Let's talk about the first one.  The question of these

12   operating expenses, and if we could put up on the screen

13   Meyer slide 2.  And there was testimony about this difference

14   between the operating expense numbers here, the 600 million

15   and the 800 million.  Could you please remind us what it is

16   we're talking about here?

17   A.   We're talking about sales, general and administrative.

18   It's the expenses that the company incurs besides the actual

19   products cost to make the Bratz products.

20   Q.   Would they -- which of these, perhaps as overhead, is

21   that a similar type of term to cover this?

22   A.   That's an ambiguous term because there's overhead and

23   cost of goods sold as well.  But a lot of people call it

24   overhead.

25   Q.   And what is the effort that you and Mr. Meyer were going

EXHIBIT __15__
PAGE __180__

1  to here?  What was it you were trying to do with these
2  operating expense numbers?
3  **A.**  Well, the goal was to figure out how these costs
4  increase with an increase in Bratz sales.  We're trying to
5  get the cause and effect relationship between an increase in
6  Bratz sales and an increase in these types of expenses.
7  **Q.**  All right.  So these general administrative expenses,
8  and you're trying to figure out how much of them are fairly
9  allocated to, say, Bratz products?
10  **A.**  That's fair.
11  **Q.**  All right.  Now, if there's an issue -- in your
12  understanding, if there's a finding of willful infringement,
13  is there any deduction that is made from revenues at all on
14  this issue?
15          MR. KENNEDY:  Legal conclusion, your Honor.
16          THE COURT:  Lay a foundation.
17  **Q.**  BY MR. QUINN:  Do you know whether or not there's a
18  deduction for these general administrative expenses if
19  there's a finding of willful infringement?
20          MR. KENNEDY:  Still a legal conclusion.
21          THE COURT:  Actually, it's a yes or no question.
22          THE WITNESS:  I do.
23  **Q.**  BY MR. QUINN:  How is it that you know what you know?
24  **A.**  I'VE been calculating damages for 31 years.  I've done
25  many copyright cases.



EXHIBIT 15
PAGE 181

```
 1   Q.   Based on that knowledge and experience, if there's a
 2   finding of willful infringement, is there any deduction for
 3   these operating expenses at all?
 4            MR. KENNEDY:  Legal conclusion.
 5            THE COURT:  Counsel, there's a stipulated
 6   instruction on this point, I believe.  Sidebar.
 7            (SIDEBAR CONFERENCE HELD.)
 8            THE COURT:  Willful infringement taxes come off.
 9   That's an instruction the jury is going to hear.
10            MR. KENNEDY:  That's for your Honor.  This is
11   pre-instructing the jury.
12            MR. ROTH:  He's just reading the cases.  That's
13   just the witness providing instruction.
14            THE COURT:  Fair enough.  Let's move on.
15            (CONCLUSION OF SIDEBAR CONFERENCE.)
16            THE COURT:  The Court will instruct on the
17   deduction.  Let's move on, Counsel.
18            MR. QUINN:  Thank you, your Honor.
19            Let's put that slide back up, Ken.
20   Q.   Could you describe for the jury what the nature of your
21   disagreement with Mr. Meyer is concerning the calculation of
22   these operating expenses?
23   A.   Well, quantitatively, it's rounded to $200 million, and
24   I just think that there was far more costs being incurred in
25   the other unsuccessful product lines than Mr. Meyer does.
```



EXHIBIT 15
PAGE 152

1   Q.   And can you explain what you mean by that?

2   A.   Yes, the -- you have this very successful product.  And

3   you are also trying to sell other products.  And I showed you

4   a chart that had at least the top 10 products.  They have

5   about 50 brands that they sell.  You're generating this cash

6   in this one product line, and you're going to try to use that

7   money, invest in your company, and try to develop other

8   successful brands.

9        So you're spending money in the sales and general

10  administrative expense and those other areas probably far

11  beyond the sales you receive in these other products lines.

12  Q.   If we could take a look at Exhibit 13957.  This is the

13  chart you were referring to?

14  A.   It is.

15  Q.   And could you explain -- just pick an example here.

16  Explain with reference to one of these products what you mean

17  about how a product may be less profitable but still have a

18  substantial burden of general and administrative expenses.

19  A.   Well, I don't think the jury could read it, but the

20  product -- it's the second to the right from the Bratz, which

21  is the 80 percent bar, is Forever Best Friends.  Example,

22  that is a brand that MGA was trying to sell.  And if they

23  spent a lot of money trying to generate interest in that

24  product but it didn't sell well, based on Mr. Meyer's

25  approach, you're not going to allocate costs to that.  In

EXHIBIT 15
PAGE 183

1   fact, you'll actually allocate 80 percent of those costs to

2   Bratz because it has 80 percent of the sales.

3   Q.   So did he allocate costs, then, more in terms of where

4   the profits were?

5   A.   Yes, it's called an ability to bear methodology.  And

6   what it means is it's a fair way to allocate costs, but it's

7   not cause and effect.  You just have the most successful

8   products carrying most of the costs and the less successful

9   products carrying less of the costs.

10  Q.   And when you say it's a fair way to allocate costs, in

11  terms of figuring out the profitability of Bratz, is it a

12  fair way to allocate costs to determine the profitability of

13  Bratz?

14  A.   Not for a damage calculation.  It should be cause and

15  effect.

16  Q.   All right.  And how is -- what was your method for

17  allocating these general and administrative expenses in

18  contrast to Mr. Meyer?

19  A.   Well, I used, as I explained in my direct examination, a

20  statistical analysis, a regression analysis, which is

21  scientific, which proves the cause and effect relationship.

22  Q.   And how does it do that?  How does it prove it?

23  A.   It proves it because it tells you what the relation is,

24  and it also gives you these metrics, as Mr. Meyer explained,

25  a t-stat and an R squared that tells you whether you have a



EXHIBIT  15
PAGE  184

7813

```
 1   valid relationship or not.  It's not based on judgment.  It's
 2   based on science.
 3   Q.   Now, have you been provided with some information that
 4   Mr. Larian gave the jury earlier today in terms of how MGA
 5   has allocated its efforts since 2001?
 6   A.   Yes.
 7   Q.   And based on Mr. Larian's testimony, have you done some
 8   calculations concerning how these general and administrative
 9   costs should be allocated?
10   A.   Yes.  I have used the percentages that Mr. Larian
11   testified this morning as to where the effort was placed in
12   MGA between Bratz and non-Bratz products by year during the
13   entire damage period and applied those to these operating
14   expenses to see what the result would be.
15   Q.   And why was Mr. Larian's testimony about where MGA
16   placed its efforts, why was that significant to you in terms
17   of deciding how to allocate general and administrative
18   expenses?
19   A.   Because that is some evidence of cause and effect.  If
20   they are spending 55 percent of their effort on non-Bratz
21   products in a year, you would expects 55 percent of their
22   costs to be in that area.
23   Q.   Do you have before you a copy of Exhibit 13991?
24   A.   I do.
25   Q.   And can you identify for us what that is?
```



EXHIBIT 15
PAGE 155