1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4                      - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7   MATTEL, INC.,                    )
                                     )
8                   Plaintiff,       )
                                     )
9            vs.                     )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,  )
                                     )
11                  Defendants.      )
    _____)  HEARING
12

13

14

                REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                     Riverside, California
16
                  Tuesday, December 30, 2008
17
                       10:04 A.M.
18

19

20

21

22
                  THERESA A. LANZA, RPR, CSR
23              Federal Official Court Reporter
                  3470 12th Street, Rm. 134
24              Riverside, California  92501
                       951-274-0844
25                  WWW.THERESALANZA.COM

```
1   APPEARANCES:

2
    On behalf of Mattel, Inc.:
3
                            QUINN EMANUEL
4                           By:  JOHN QUINN
                                 MICHAEL T. ZELLER
5                                DYLAN PROCTOR
                            865 S. FIGUEROA STREET,
6                           10TH FLOOR
                            LOS ANGELES, California  90017
7                           213-624-7707

8

9
    ON BEHALF OF MGA ENTERTAINMENT:
10
                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
11                          BY:  THOMAS J. NOLAN
                                 JASON RUSSELL
12                          300 SOUTH GRAND AVENUE
                            LOS ANGELES, CALIFORNIA  90071-3144
13                          213-687-5000

14

15

16

17

18

19

20

21

22

23

24

25
```

Tuesday, December 30, 2008                                    Mattel vs. MGA

1                          i N D E X

2                                                        Page

3     HEARING.......................................      4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    RIVERSIDE, CALIFORNIA; TUESDAY, DECEMBER 30, 2008; 10:04 A.M.

2                              -oOo-

3         **THE CLERK:**  Calling calendar item one, Mattel versus

4    MGA Entertainment, Inc., CV 04-09049-SGL.

5         May we have counsel please come forward and state          00:14

6    your appearances for the record.

7         **MR. QUINN:**  John Quinn, Mike Zeller,

8    Dylan Proctor for Mattel.

9         **MR. NOLAN:**  Tom Nolan, Jason Russell,

10   Jennifer del Castillo on behalf of Isaac Larian.          00:17

11        **THE COURT:**  We're on calendar this morning for MGA's

12   motion for this Court to issue a stay pending appeal.

13        The Court has received the filings in this matter and

14   has reviewed them.  There are a few matters, and I'll rule on

15   them just preliminary; I think I've basically ruled on them;          00:18

16   some are moot.

17        There is before the Court Mattel's ex-parte

18   application to redesignate MGA's compendium of third-party

19   declarations.  I'm going to deny that as moot pursuant to the

20   stipulation that was reached out and communicated to the Court.          00:18

21        There is Mattel's ex-parte application regarding a

22   briefing schedule regarding the declaration.  That is also

23   denied as moot.  The Court has received and reviewed the papers

24   that were submitted, both in support of and in opposition to

25   the particular declarations, and the Court will rule on the          00:19

1    substance of those.   There's no need to set forth a briefing

2    schedule.

3           The third ex-parte was Mattel's ex-parte to strike

4    the declarations of Mr. Wing, Mr. Kennedy, and the third-party

5    declarations.   I'll address that in the context of discussing          00:19

6    the actual motion itself.

7           At the end of the day, with respect to most of those

8    objections -- although I'll hear further from the parties -- my

9    sense is that most of them go to the weight of the evidence as

10   opposed to the legal objections themselves, particularly the          00:19

11   hearsay objections and the foundational objections, the

12   arguments, and the speculation.   But I'll take that up.   I'd

13   like to hear further argument on what weight the Court should

14   give to those in light of the objections that are stated.

15          I also have before me -- there was also the ex-parte          00:19

16   application for an amendment of the briefing schedule itself

17   regarding the MGA parties' ex-parte application and motion to

18   stay pending appeal.   I directed my courtroom deputy to enter a

19   denial of that.   That was the ex-parte that was brought at the

20   end of last week to modify the reply in opposition schedule.          00:20

21   And the Court did review that and consider that.

22          And, finally, I received Mattel's ex-parte

23   application for appointment of a receiver for MGA for

24   alternative relief.   The Court is going to schedule this -- I

25   did receive the opposition this morning from Mr. Russell.          00:20

```
 1    However, I'm going to schedule this for a hearing on Monday,
 2    January 5th, at 10:00 a.m.  I'm not going to hear this today;
 3    so that will be heard on Monday, January 5th, at 10:00 a.m.
 4          I think those are the outstanding ex-parte
 5    applications.  I know there are other objections to various      00:21
 6    declarations that have been submitted on both sides; but,
 7    again, I'm going to hold off and I will consider all of those
 8    evidentiary objections in ruling on the underlying substantive
 9    motion itself.  Let me hear on the underlying motion at this
10    point.  MGA is the moving party, so, Mr. Nolan or Mr. Russell,  00:21
11    you may proceed first.
12              MR. NOLAN:  Thank you, your Honor.
13          I think in keeping with the Court's prior rulings,
14    Mr. Russell and I had decided to share certain of the arguments
15    in view of the fact that the motion with respect to the         00:21
16    receivership has been pushed off until --
17              THE COURT:  That's fine.
18              MR. NOLAN:  I'll address the pending motion before
19    the Court.
20          Your Honor, like most matters that have come before       00:21
21    you, I think the briefing in the case has been extensive, and I
22    think that everybody on both sides, depending on whose side
23    you're on, would also say that their briefs were excellent and
24    thorough and reviewed all of the applicable case law.
25          As I was reviewing the briefs, it seems to me that        00:22
```

1    the issues can be placed in a construct for the Court which is

2    rather straightforward and simple to articulate, possibly more

3    complicated to apply under the circumstances.  But I think the

4    fundamental issue here is that this is not a redo of the

5    argument that we made with respect to the motion for permanent          00:22

6    injunction, although some of the arguments sound as though they

7    are similar.

8              We respectfully submit that the standard for setting

9    an appeal, a stay pending the appeal, takes into consideration

10   frankly more factors than may have been available at the time         00:22

11   of the permanent injunction.

12             I start with the premise that in any case, the

13   Supreme Court has recognized that there are four factors to be

14   considered in weighing whether or not a stay pending appeal is

15   warranted.  And we can get into a discussion as to what weight        00:23

16   should be applied to each of those standards.  I think the

17   cases are clear.  We believe, and the cases that we've cited,

18   is that the analysis is really, on a continuum, irreparable

19   harm and likelihood of success.

20             I want to turn to the likelihood of success factor         00:23

21   first, because in many ways, it is the most awkward issue to

22   address to a court, which we have the greatest respect for and

23   know full well that the Court and its staff has devoted a

24   tremendous amount of time to all of the issues that have been

25   presented in this case, from day one.                                00:24

```
 1          We weren't here day one; we got in here about day
 2   sixteen; but it certainly has been extensive since we've been
 3   here.  There have been numerous issues that have been presented
 4   to the Court; many of them are novel; almost all of them are
 5   serious and complicated.  Many of them are of first impression        00:24
 6   that have enormous interest in the field of copyright law.
 7   This is a case that no one can doubt is being watched very
 8   carefully, not only by practitioners, but by the media,
 9   cartoonists, mothers, and even children.
10          We respectfully disagree, as you know -- and I made a          00:24
11   New Year's resolution that I was never going to argue the
12   statute of limitations again in front of you, having gone to
13   the mat five times.
14          THE COURT:  So you only have two more days.
15          MR. NOLAN:  So I was so thankful that you set the              00:25
16   schedule for today.
17          But in all seriousness, your Honor, it's hard to come
18   before a court that you respect and say, You got it wrong and
19   by making a ruling, giving us a stay, you're somehow sending a
20   message that you think you got it wrong.                             00:25
21          But fortunately, the law doesn't require us to meet
22   that standard.
23          I think based on the irreparable harm that we
24   demonstrate in our papers --
25          THE COURT:  Let me ask you something, Mr. Nolan,              00:25
```

Tuesday, December 30, 2008                          Mattel vs. MGA

```
 1   because you make these points -- these points are well made in

 2   your papers, and I appreciate your approach here.  One of the

 3   things that's puzzling to me is the procedural posture of this

 4   motion vis-à-vis what's going on in the Ninth Circuit.

 5           The Court made decisions in terms of the structure of      00:26

 6   how the trial was going to play out.  We tried certain things

 7   in what we've called Phase 1-A.  We tried certain things in

 8   Phase 1-B.  And then because we had left over the equitable

 9   issues, the equitable defenses, the equitable claims, we

10   structured a third phase, Phase 1-C.  And after each of those     00:26

11   phases, decisions were made; in the first two, by the jury; in

12   the third, by the Court.  The decisions by the Court, both in

13   terms of the equitable defenses, to include statute of

14   limitations, as well as the equitable claims, most notably

15   unfair competition, were predicated in large measure based upon   00:26

16   findings that were made in Phases 1-A and 1-B by the jury, as

17   well as by rulings that the Court made before the trial and

18   during the trial.

19           All of that is subject to challenge not before the

20   Ninth Circuit, but before this Court in the post-trial motions,   00:27

21   which not only have been scheduled for February 11th, which the

22   Court has already received -- you've made motions.  You, MGA,

23   have made motions.  Mattel has made motions.  They've submitted

24   a written JMOL.  And as you point out -- and Mattel points this

25   out as well, that you pointed out -- the basis for the Court's    00:27
```

1   rulings, particularly following 1-C, which resulted in the

2   orders that all have been stayed pending February 11th, could

3   very well be eviscerated -- I think is the word that you used

4   -- depending on how the Court rules, having now the benefit of

5   hindsight.  The Court makes decisions in the course of a trial,          00:27

6   as every court does; and that's the whole reason or rationale

7   for having post-trial motions, is now that everything is in,

8   now that all is done, we look back and we determine was error

9   made or was error not made.  And then and only then, in a

10  normal case, do we have an appeal to the Ninth Circuit if you          00:28

11  believe that the Court still has it wrong.

12          In a certain sense, you're suggesting -- you're

13  projecting that somehow the Court not only has gotten it wrong

14  and you respectfully disagree with what I have decided, but you

15  respectfully disagree with what I have yet to decide on          00:28

16  February 11th, and have gone to the Ninth Circuit now, in fact,

17  even before this Court had this hearing to rule on your

18  ex-parte application.

19          It's a very bizarre situation, because then, perhaps,

20  we might have the Ninth Circuit passing judgment, as it must,          00:28

21  in terms of likelihood of success, on issues that this Court

22  hasn't even ruled on.  It really has created -- and I'm not

23  suggesting that this was by design, but it certainly has

24  created a potential procedural mess.

25          Now, I can't speak for the Ninth Circuit, and they          00:29

 1   will do what they're going to do.  From my perspective, though,

 2   all of that is tremendously premature.

 3          There is this issue that I want to have addressed

 4   today in terms of the irreparable harm, the irreparable injury,

 5   whether or not the stay that the Court has already issued is or      00:29

 6   is not sufficient to address whatever irreparable harm may or

 7   may not exist.

 8          Do you understand the Court's -- I want to give you

 9   my perspective on where I'm coming from and why I think to a

10   large extent a stay, if at all, may be justified on some of the     00:29

11   equitable grounds that you have set forth.  But to be talking

12   about an appeal at this point strikes this Court, anyway -- and

13   again, I'm speaking for myself and not the Ninth Circuit -- as

14   unripe and premature.

15          Moreover, having reviewed all of the evidence -- and         00:30

16   I may be touching on Mr. Russell's area now; I don't know if

17   that's his area to get into, on the irreparable harm

18   evidence -- but depending on how the objections play out, my

19   tentative -- and I certainly want to hear from Mattel on

20   this -- is that it is clear that there is an argument, anyway,       00:30

21   that there's a concern that if there's not certainty, at least

22   for '09, that sales are going to be damaged, such that it could

23   have an irreparable harm on MGA.

24          There's nothing to suggest that goes beyond '09.  All

25   of the evidence focuses on '09; so there's nothing to sustain       00:30

```
 1   evidentiary, from my perspective, a stay pending appeal, which
 2   may take years before the Ninth Circuit, given the enormous
 3   size of this record.
 4          And again, that's for the Ninth Circuit to decide,
 5   and maybe they can get it done in six months.  I'm not          00:31
 6   suggesting that they can't.  But based on the Court's
 7   experience, that might be a very lengthy stay.
 8          So not only is that premature, I really, based on
 9   what you have submitted so far, don't see any basis for that.
10   At most, we have an issue that arguably is not addressed by the  00:31
11   stay that I've placed in effect here, which may need to be
12   addressed by a longer stay.
13          There's the issue that Mattel raises about, if we're
14   going to go down that road, the need for a receiver, which I'll
15   hear that on Monday.  But this is basically where I am at this   00:31
16   point.
17          MR. NOLAN:  I understand, your Honor.
18          As many issues in this case, procedurally
19   substantive, this case seems to push the boundaries on so many
20   issues.  First of all, I appreciate the Court's recognition     00:31
21   that it was not mischievous on our part in terms of setting up
22   the procedural posture that we found ourselves in after the
23   injunction was issued.  Given the breadth of the injunction,
24   candidly, when we received the December 3rd order, it knocked
25   us on our heels; and, more importantly, knocked the supply      00:32
```

1   chain upon which we rely in terms of decisions that are being

2   made with respect to purchases.

3          When we were here arguing the injunction, the Court

4   made the point, I think under the analysis of public interest,

5   that the Court would stay until February in order to allow the          00:32

6   retailers during this difficult economic time to at least enjoy

7   the benefit of the retail sales for the Christmas season.

8          **THE COURT:**  That addressed the '08 season.  What

9   you've raised, essentially, is that --

10          **MR. NOLAN:**  The '09.                                         00:32

11          **THE COURT:**  -- the '09 season is at stake.

12          In reading all of your declarations, and assuming I

13   accept all of it, that's the most that the evidence supports.

14          **MR. NOLAN:**  You're right, your Honor.  The evidence

15   supports --                                                            00:33

16          **THE COURT:**  -- not stay pending appeal.

17          **MR. NOLAN:**  Let me at least try to get to that final

18   point, your Honor, on the '09 issue.

19          What we came to learn after the injunction was

20   entered was that, in fact, important purchasing decisions for          00:33

21   the '09 season, both the spring and the fall lines, were being

22   decided in December and early January.

23          Now I know that Mattel has submitted a declaration

24   saying that that's nonsense and that we can wait until March

25   and magically people can move shelves; but the weight of the          00:33

1  evidence and our interpretation of the submission is that

2  clearly -- and it makes sense -- decisions are being made.  The

3  Hong Kong toy fair starts in January.  In fact, it starts next

4  Monday; important meetings, products are being shown; decisions

5  are being made for the spring season; retailers are committing          00:34

6  space for that period of time.

7          What the retailers were saying to us, given the

8  import of the injunction and the terms of the injunction, and

9  the recall in particular -- which we believe may be the largest

10  toy recall ever ordered by a court -- is that retailers were          00:34

11  hesitant, are hesitant, and have cancelled orders in certain

12  respects; in other respects, they said, We will give you the

13  benefit of at least going to the court in an effort to

14  determine whether or not there can be some clarity as to what

15  happens after February.  And if the stay were extended beyond          00:34

16  February, then purchasing decisions could be made, the sales

17  could go forward, et cetera, et cetera, which we've allowed in

18  our papers.

19          We have indicated, and we've described the injunction

20  in its present setting, whether or not it terminates in          00:35

21  February or whatever, the injunction is, in essence, a death

22  warrant for the Bratz brand.  There is no showing that Mattel

23  has any desire or any interest in pursuing the Bratz brand.

24          **THE COURT:**  Well, you raise a critical point.  It's a

25  death nail provided if, and only if, Mattel does not decide to          00:35

1   pursue it.  And one of the questions that I have for Mattel --

2   and I don't know if they're prepared to answer that today, but

3   at some point, Mattel is going to have to make a decision, and

4   I think the time for making that decision is probably sooner as

5   opposed to later.  Because whether I accept Mattel's                    00:35

6   declarations or your declarations, I think it's well understood

7   in the industry that a decision on this needs to be made

8   relatively soon.  And I've done everything I can short of

9   standing on my head to try to get the parties to work this out.

10  But barring that, and barring some agreement, I understand what    00:36

11  you're saying.

12          MR. NOLAN:  And so given that information, which was

13  a new reaction by retailers and licensees, we then needed to

14  make the decision as to how we bring this information and get

15  the relief that we need, to see whether or not we can get          00:36

16  clarity.

17          The permanent injunction was entered.  It was Phase 3

18  of the trial.  The permanent injunction is appealable in order

19  to effectuate the rights of MGA, which all of us have talked

20  about and made the analogy of a death warrant in this case, and    00:36

21  it certainly is, depending on what Mattel wants to do.  But

22  it's certainly a death warrant for Mr. Larian's interest in the

23  Bratz brand.

24          We were very much like in a situation where you're

25  trying to protect the property rights and the profound interest    00:37

```
 1    of either 750 employees that are related only to the Bratz or

 2    the --

 3           THE COURT:   That's the part I don't get.   I

 4    understand that the -- the injunction is certainly appealable,

 5    and you have a right to appeal the injunction, although I          00:37

 6    specifically stayed the injunction until February 11th because,

 7    depending on what happens on February 11th, the injunction may

 8    or may not have its current form.   And I certainly understand

 9    and appreciate you bringing to this Court's attention the

10    necessity, from your perspective, of modifying the stay.          00:37

11           But the whole running up to the Ninth Circuit on the

12    stay at the same time is where you really throw me.

13           MR. NOLAN:   Okay.

14           THE COURT:   Just in case I don't get it?

15           MR. NOLAN:   You get it.   Let me just try to explain       00:38

16    where we were at.

17           Let's go back in history a little bit.

18           We get the injunction December 3rd.   I believe that's

19    a Thursday.   That Monday, the next Monday, after we process and

20    get information and the press is all over it -- it's on CNN;       00:38

21    it's on the Today Show -- retailers are contacting us and

22    telling us what their reaction is:   Hey, congratulations on the

23    stay until February; it doesn't help us; you've got a lot of

24    costs here, and you've got your spring line coming out.

25           That Monday we advise Mattel that we are going to go        00:38
```

1  into court here and ask for a stay beyond the time period

2  specified in the injunction.

3          We file our papers; we have a meet and confer; we

4  enter into a stipulation with respect to the briefing.  The

5  papers are clear, in one instance, for sure, uncontroverted,          00:39

6  that our position is that we needed a ruling by December 31st.

7  No issue there.  You could take an argument as to whether or

8  not we were entitled to it, whether or not we had made a proper

9  showing; but certainly, the position was that based on our

10 showing from retailers, we needed to have a ruling by                 00:39

11 December 31st.

12         With papers in hand, with our moving papers in hand,

13 including the retailer submissions under seal, Mattel enters

14 into a stipulation on briefing which would have allowed us to

15 tee this issue up before the Court and frankly avoid, which was       00:39

16 our intent -- and I'm not trying to get any points for doing

17 this -- of getting this resolved and brought to the Court's

18 attention prior to the holiday season.  That's what we were

19 trying to do, which would still give us an opportunity to have

20 the hearing before your Honor.  And then depending on the            00:40

21 outcome of that, we could then still get to the Ninth Circuit

22 if we had to.

23         Mattel files its objections on Thursday, the day the

24 opposition is due, in the morning, with respect to designations

25 and whether or not it was proper, without a phone call to us,        00:40

```
 1   without trying to clear it, and without asking for any relief
 2   in the briefing schedule.  And the Court, I think not truly
 3   appreciating the situation and the sensitivity of the timing,
 4   vacated a few hours before the opposition was due -- I think by
 5   our calendar, it was about four hours before their opposition     00:40
 6   was scheduled to be filed -- vacated it and said that a new
 7   briefing schedule would be arrived at between us after you made
 8   a ruling with respect to the designations, indicating that the
 9   Court would be dark this particular week, the week of the
10   Christmas holiday.                                                 00:41
11          We then filed a protective motion in the Ninth
12   Circuit seeking a stay.  On Saturday, when we got the Court's
13   e-mail with respect to allowing for the briefing to occur and
14   setting forth the current schedule, we, meaning Mr. Falk, who
15   is present here, notified the Ninth Circuit of the Court's        00:41
16   briefing schedule; and so the Ninth Circuit was fully aware of
17   it.
18          We were faced on that Thursday afternoon, Thursday
19   evening, with the possibility of time running out on the clock
20   without having the opportunity to go and get a ruling.  And       00:41
21   that's the reason why we filed in the Ninth Circuit.  We have
22   the appellate right to do so.  I mean, it's a notice of appeal
23   that we filed.  And we indicated to the Ninth Circuit -- and
24   the Ninth Circuit has ordered a briefing schedule, and they are
25   well aware of the hearing that we're having today.  This was      00:42
```

```
 1   not in any way to try to prematurely get an issue before the
 2   Ninth Circuit.  It was solely and squarely designed to try to
 3   get an answer, to get clarity, to avoid a massive layoff of
 4   people in early January.
 5            And I don't want to overstate that point.  I think      00:42
 6   Mr. Kennedy, at the injunction hearing, put it rather
 7   eloquently at the end when he said, I'm standing here not
 8   representing MGA and Isaac Larian, but I'm representing
 9   800 people.  I'm here again this morning telling you that every
10   decision that we made was in an effort to try to avoid having a  00:42
11   decision made by retailers and licensees that would have a
12   profound impact not only on the parties to this litigation, but
13   on employees, their families, licensees, and retailers.  That's
14   why we did it.  That's the procedural history.
15            Mattel has moved in the Ninth Circuit on the            00:43
16   jurisdictional issue.  The Ninth Circuit also asked for
17   accelerated briefing on that point.  That jurisdictional issue
18   is before the Ninth Circuit.  Presumably, they will make a
19   decision in that regard.  But, certainly, Rule 62-C allows
20   us -- in fact, mandates us -- to come to you and ask for the     00:43
21   stay.
22            So that's my way of saying, in case I didn't get it,
23   trying to explain to you the thought processes that we went
24   through.  It was never, never designed to cause what turned out
25   to be a horrific briefing schedule which dropped an enormous     00:43
```

```
 1   amount of paper on this Court and its staff.  We are kind of

 2   used to it, and we set it in motion; but that's the reasons why

 3   we did it, your Honor.  It was heartfelt.

 4        I go back to -- we view it as a death warrant on the

 5   Bratz brand.  And I noticed -- and I'm sure the Court has        00:44

 6   noticed it -- this is outside of the record, but the San Diego

 7   Tribune, without any marketing efforts by anybody, ran a

 8   cartoon on the editorial page regarding Bratz and Mattel on

 9   Christmas.

10        THE COURT:  I missed that.                                  00:44

11        MR. NOLAN:  It had a little girl sitting on the knee

12   of Santa Claus with a note, and it said, Can't Barbie and Bratz

13   get along, or something like that.

14        And we can address that other point that you made,

15   because we take serious issue -- and we dropped a footnote in    00:44

16   our papers with respect to the Court's finding with respect to

17   the hostility between the parties.  And I'm happy, in chambers

18   with Mr. Quinn, to bring some additional information to your

19   attention.

20        But to go back to the fundamental issue that we have        00:45

21   here, your Honor, is --

22        THE COURT:  Just before I forget, because you both

23   addressed that in footnotes; so did Mr. Zeller, or Mr. Quinn,

24   in his brief.  While I have certainly encouraged settlement

25   efforts between the parties, let's both be mindful of the        00:45
```

1    importance of confidentiality to those discussions.  And if

2    there is ever a need to discuss that, let's do that entirely

3    off the record.  Let's not mingle that.

4              **MR. NOLAN:**  I'm aware of that sensitivity.  It was

5    certainly brought to my attention.  And what I've said in the          00:45

6    past -- and I repeat it again -- is that despite the rhetoric,

7    both in the briefs and orally through this trial, and despite

8    the perception of some people of hostility, Mr. Quinn and I

9    have maintained what I'm proud to say is a good working

10   relationship.                                                          00:46

11             **THE COURT:**  I have no doubt about that.

12             **MR. NOLAN:**  My comments in the footnote related to

13   conversations that Mr. Quinn made to me as opposed to anybody

14   else.

15             **THE COURT:**  Very well.                                   00:46

16             I want to give Mattel an opportunity to address this,

17   but let's return to the point that the Court made.  And that

18   is, in terms of reading your evidence most favorably, I

19   understand two things, basically.  There's an urgency on the

20   part of the retailers to have some kind of reassurance, at             00:46

21   least for the '09 buying season, relatively soon.  You made

22   reference to December 31st, but it's clear that there's already

23   been a movement on one retailer to January 2nd.  I do

24   understand the urgency is relatively soon.  Whether there's any

25   magical drop-dead date, that does not seem to be supported by          00:46

```
 1   the evidence.  But I get, from reading what you've submitted,

 2   that there is a need to have some degree of certitude, again

 3   reading the evidence most favorably to MGA at this point.  I

 4   have not heard from Mattel that there's a need to act with some

 5   degree of certainty soon.  And the second point is, if that's          00:47

 6   not done, at least for '09, that will have the effect that you

 7   have.

 8            Beyond that, I'm not seeing anything further, unless

 9   I'm missing something.

10            MR. NOLAN:  And I want to address that, if I can;            00:47

11   because I certainly didn't want to suggest that I agreed that

12   the presentation was only limited to 2009.

13            What we have done --

14            THE COURT:  If that's not the case, point to me what

15   evidence you have of going beyond that.                               00:47

16            MR. NOLAN:  The evidence that we have going beyond

17   that, your Honor, is that in the absence of certainty with

18   respect to whether or not Mattel is ultimately going to

19   prevail --

20            THE COURT:  That, nobody can give you.                       00:48

21            MR. NOLAN:  Well, the Ninth Circuit can.

22            THE COURT:  I'm sorry?

23            MR. NOLAN:  The Ninth Circuit could, when it rules on

24   the appeal.

25            THE COURT:  The Ninth Circuit doesn't have the final         00:48
```

```
 1   word.

 2           MR. NOLAN:   No.  But we have a right to go to appeal.

 3   And what we're saying here -- and I think that the --

 4           THE COURT:   My point is, you're not going to know how

 5   the Ninth Circuit is going to ultimately decide these cases.  I      00:48

 6   mean, Jason Russell will be arguing the jellyfish well into

 7   2010 and 2011, I suspect.  We're not going to have that

 8   certainty.

 9           The question is, in terms of the buying cycles, the

10   evidence that you've submitted supports, again in your favor,        00:48

11   that for the '09 cycle to go forward, without interruption,

12   without having the deleterious effects of an interruption, we

13   need to have a stay for '09.  I don't see any other evidence

14   going beyond that at this point.

15           I mean, 2010 is a different year, and depending on           00:49

16   the posture of this case at that point in time -- there's just

17   so many variables and so many possible permutations that I

18   don't think anyone could project with any degree of certainty,

19   even the Ninth Circuit themselves, where this case is going to

20   be at at that point in time.  So I'm just trying to cabin what       00:49

21   the evidence shows, assuming that I accept it.

22           MR. NOLAN:   Let me try to break it down this way with

23   respect to 2009:  The evidence is directed towards the spring

24   cycle.

25           THE COURT:   And the fall cycle.                             00:49
```

1        **MR. NOLAN:**  And the fall cycle.  There's no doubt,

2   your Honor, with respect to that.

3        What we would submit is that the declaration of

4   Larry Falcon that we've submitted in our reply brief, given his

5   vast experience, not only at MGA, but more importantly, at most      00:49

6   of the major licensees and toy companies, Hasbro, Vandyke -- he

7   sets forth what the normal cycle is and normal purchases, the

8   process that it goes through.

9        If, in 2010 -- let's just make an assumption for just

10  a moment.  Let's say that there was a finding that the showing      00:50

11  for 2009 was adequate -- I'm just saying work with me here.

12        **THE COURT:**  I will.

13        **MR. NOLAN:**  The same issue applies in 2010 with

14  respect to retailers saying, All right, it used to be that this

15  injunction was going to take effect in February; you got that      00:50

16  extended to the end of the year; we're not going to make any

17  purchase decisions in the year 2010 because of the uncertainty.

18        **THE COURT:**  Right.  But you've presented no evidence

19  whatsoever as to when the 2010 purchasing decisions are going

20  to be made.  You've presented no evidence that anything that      00:50

21  happens now -- that's what I'm saying.

22        What's before the Court right now is evidence related

23  to the 2009 cycle; correct?

24        **MR. NOLAN:**  Mr. Russell pointed out to me that the

25  Wal-Mart declarations that have been submitted talk about the      00:51

1  historical nature of these decisions and that that's, in

2  effect, how they purchase and how they make their decisions;

3  and those decisions will be made in 2009, as they will be in

4  2010 or 2011.

5           I do admit, your Honor, that they do not specifically          00:51

6  identify the year 2010.

7           **THE COURT:**  You're referring to the Gary Severson

8  declaration?

9           **MR. NOLAN:**  As one, your Honor.

10          **THE COURT:**  He concludes by saying, "Indeed, unless          00:51

11  we learn soon" -- he doesn't say December 31st, just soon --

12  "that the orders are stayed to the conclusion of MGA's appeal,

13  Wal-Mart may" -- not will, but may -- "have to cancel all fall

14  '09 Bratz line orders."

15          That's what the Wal-Mart declaration says.                       00:51

16          **MR. NOLAN:**  Right.  But, your Honor, the other

17  declarations that were submitted in support of the moving

18  papers, from Toys"R"Us and some of the other retailers, do

19  indicate that the same decision process is going to be

20  followed.                                                                00:52

21          **THE COURT:**  Actually, the Wal-Mart and the Zellers

22  are identical language, coincidentally or not.  They say,

23  "Indeed, unless we learn soon" -- again, not December 31st, but

24  just soon -- "that the orders are stayed until the conclusion

25  of MGA's appeal, Wal-Mart Canada Corporation will have to        00:52

```
 1    cancel all fall '09 line orders."  Zellers has the exact same
 2    language:  "Indeed, unless we learn soon that the orders are
 3    stayed until the conclusion of MGA's appeal, Zellers will not
 4    make any fall '09 Bratz line orders."
 5         They all are pretty much -- the weight of the          00:52
 6    evidence seems to be triggered towards that fall '09 line.
 7         MR. NOLAN:  Your Honor, since Mr. Russell was going
 8    to deal with the objections and the weight arguments with
 9    respect to the declarations, let me ask him to address
10    specifically this, and then I'll come back and make one last  00:53
11    point that I wanted to make.
12         MR. RUSSELL:  And I apologize for interrupting
13    Mr. Nolan; it's just that I was the one who was more familiar.
14         I think your Honor is correct, you read the literal
15    language for most of these declarations.  They are obviously  00:53
16    focused on 2009, and our intent was to try to resolve any
17    appeal as expeditiously as possible.  But I don't think you can
18    read these declarations out of their context.  They all say to
19    every single retailer, purchasing decisions are always
20    concluded.  That's what the Severson declaration you just read 00:53
21    is making clear.
22         This is a historical pattern.  They complete their
23    purchasing decisions in January.  That historically has been
24    true, and that's true now.  Obviously we can't all forecast for
25    sure when every company will do something two years hence, but 00:53
```

1  there's every reason to believe, and I believe it's the fair

2  inference, particularly if the evidence is drawn in our favor,

3  that that would be true in 2010.

4          **THE COURT:**  I understand if we get to 2000 -- I

5  understand that this is a yearly thing.  But what I'm saying is          00:54

6  that a decision now not to stay pending appeal for, say, 2010

7  or 2011 is not by itself going to necessarily result in the

8  cancelling of the 2010 or 2011 lines, because they are not even

9  going to get to them, for the very reasons that you just

10 stated, until the end of 2009.          00:54

11         Correct?

12         **MR. RUSSELL:**  Yes.  Absolutely, your Honor.  But

13 there's a related point, and I think this is also made clear

14 both from the retailers and from Mr. Falk and Mr. Wing, and

15 that is, if one is to assume, as I think we have to on this          00:54

16 undisputed record, that if your Honor's orders go into

17 immediate effect, and since your Honor has no evidence from

18 Mattel -- and, I submit, could not supplement to say that they

19 will, in fact, exploit Bratz; they had that opportunity; they

20 have foregone it.  So your Honor, the evidence is, if your          00:54

21 orders go into effect, Bratz is off the market for 2009.

22 That's a certainty based on the record before you.

23         **THE COURT:**  But if, for example, we have a hearing on

24 February 11th and the Court makes a ruling that alters its

25 injunction in some way, then it would have been for naught to          00:55

1  have done anything affecting 2010; correct?

2          **MR. RUSSELL:**  I don't know that we can say that, your

3  Honor, because if your Honor were to enter judgment as a matter

4  of law in our favor on these issues, that doesn't change the

5  fact that there's a need for certainty now pending appeal.  And          00:55

6  the reason --

7          **THE COURT:**  No.  Now, pending the ordering of the

8  2009 Bratz line.

9          **MR. RUSSELL:**  Okay.

10         **THE COURT:**  I know you want me to conclude that there          00:55

11 is a factual basis to support a stay pending appeal.  I just

12 don't see it.

13         **MR. RUSSELL:**  The reason I would say -- I understand

14 what you're saying.  You're saying if I do it for this one

15 season.  But we still need certainty absent a stay, pending          00:55

16 appeal.  That's what people are saying.  They need to know this

17 is going to go to the circuit; this is actually going to be

18 revisited.

19         **THE COURT:**  I know they use language about they need

20 that stay pending appeal.  And I suspect that whoever helped          00:56

21 them draft the declaration included that language.  But the

22 point of what they are saying is they need to know right now so

23 that they are not going to commit to putting aside shelf space

24 over at Wal-Mart or Sears if they are going to have the line

25 pulled come February.  That's how I'm reading this --          00:56

```
 1        MR. RUSSELL:  There's no question that the direct
 2   import is as you say, your Honor.  The key issue for MGA's
 3   survival right this second is that it be allowed to sell its
 4   products to its main retailers.  We are going to and have
 5   appealed -- and again, we're not here to discuss the propriety,     00:56
 6   but it will be appealed, we believe, so long as MGA is allowed
 7   to survive.
 8        If your Honor's decision were 'I will stay this order
 9   for the entirety of the 2009 season, all of the way, and I
10   assure retailers that I will not order the recall at any point     00:56
11   all of the way up through December 31st, 2009,' that might,
12   might, moot this issue.
13        Right now we have an appeal and we're seeking a stay
14   pending appeal to avoid this harm.  And the harm is we must be
15   allowed to sell our product.                                       00:57
16        THE COURT:  Very well.
17        Let me hear from Mattel.  I've given the floor to MGA
18   for the entire time so far.
19        MR. QUINN:  Good morning, your Honor.
20        THE COURT:  Good morning, Mr. Quinn.                          00:57
21        MR. QUINN:  Your Honor, I think it's worth taking a
22   moment to step back and reflect on what brought us all here
23   together between Christmas and New Years.
24        It's great to see old friends.  But what brought us
25   here was an ex-parte application which said that if a stay is      00:57
```

1    not ordered pending an appeal by midnight tomorrow, the

2    consequences, not just for the Bratz line but for MGA, would be

3    catastrophic.  We heard words like 'death sentence' -- this

4    morning I went through the papers -- 'catastrophe'; 'survival

5    in jeopardy'; MGA faces extinction'.                                00:58

6            Your Honor, I think we have to say on this record, on

7    that application, the verdict has got to be not proven.

8            **THE COURT:**  Let me stop you there, Mr. Quinn, because

9    I do agree that there may have been some overstatement in some

10   of the language that was used.  But there does seem to be         00:58

11   evidence that suggests that -- and again, I do think the

12   December 31st deadline was perhaps a bit artificial, as

13   demonstrated by one of the most recent declarations that I've

14   seen, that there was a renegotiation to January 2nd.  But there

15   does seem to be a sense from the evidence that some time soon,    00:58

16   to use the word that is used in most of the declarations that I

17   have read, the fall 2009, certainly the spring 2009 and most

18   likely the fall 2009 orders, decisions, are going to be made,

19   and at least some of these major retailers, Sears, Wal-Mart,

20   Zellers -- which I gather is no connection to Mr. Zeller --       00:59

21   have provided evidence that they will not -- without some

22   degree of certainty, that they are not going to be pulled from

23   the shelves, make that kind of commitment.

24           Given the clear importance of the Bratz line to MGA's

25   financial health, it's not a big leap to see that this would     00:59

```
 1    have significant economic impact on the viability of MGA.

 2             That's my reading of the evidence.

 3             MR. QUINN:   And I think that's a fair reading, your

 4    Honor.  I agree with the Court's summary.

 5             THE COURT:   And my stay until February 11th was           00:59

 6    certainly in part, as I stated on the record, to get us through

 7    the Christmas season so as not to adversely affect the 2008

 8    season; and yes, I am mindful that Mattel pressed me to rule on

 9    the equitable defenses and claims earlier so as not to run into

10    this problem; and you were right, but I needed the time to make    01:00

11    the decision.  Be that as it may, the timing is what the timing

12    is.

13             But it was also mindful of the fact that I was making

14    my decisions, as I've indicated to Mr. Nolan, based on jurors'

15    findings, on the Court's earlier rulings, all of which are         01:00

16    subject to the post-trial litigation, and I thought it was

17    prudent, because we can't unring the bell, to wait until

18    February 11th to allow those orders to take effect; so it was

19    an expressed, deliberate effort by the Court to avoid appeal of

20    those issues; not to make them final; not to enter final           01:00

21    judgment until the Court had the benefit of addressing all of

22    the issues with the benefit of hindsight that you have in a

23    post-trial motion hearing.

24             So I'm in agreement with you about the prematurity of

25    a stay pending appeal.  I'm also in agreement with you that        01:01
```

 1   even reading the evidence most favorable to MGA, it doesn't

 2   justify at this point a stay pending appeal.  But I am

 3   concerned about this buying period.  I don't know from

 4   Mattel -- and I really would love to get an answer today; I

 5   can't force an answer to this -- I'd love to know what Mattel        01:01

 6   is doing with Bratz, what they intend to do with Bratz, because

 7   it doesn't make any economic sense for anybody to kill a

 8   profitable brand if there is an intention to proceed with it.

 9   So that's one factor.

10           I have concerns that now that you filed this ex-parte        01:01

11   application concerning the receiver about the financial

12   allegations that you have made regarding financial

13   improprieties, we need to have a hearing on that and get to the

14   bottom of that whole thing.  I very briefly reviewed the

15   opposition that Mr. Russell submitted to the Court which           01:02

16   strenuously objects and opposes those allegations, but we

17   obviously need to find out what's going on on that front.

18           I was hoping to be in a position to nominate or name

19   a special master to oversee this injunction and a discovery

20   master so I could lift the stay on discovery, but the parties      01:02

21   frustrated that effort by stipulating to January 21st as the

22   date for objections, which I have advanced to January 5th.  But

23   that needs to be resolved.  So my question is what to do with

24   the stay as it exists right now.

25           I do understand that you have objections to their          01:02

1   evidence, but I'm really not getting a whole lot from Mattel

2   saying that -- except for one declaration -- that this is not

3   accurate.  I have to credit -- if someone from Sears is telling

4   me that we're just not going to do this; someone from the

5   industry saying, Oh, that's not true, really doesn't hold all      01:03

6   that much weight.

7           I've got to credit the Sears and the Wal-Mart and the

8   Zellers.  I understand they are similar declarations and all

9   that, but still, that's the evidence before the Court and I

10  have little reason not to accept that.  So I guess I'm thinking    01:03

11  out loud right here.  I want to structure something.

12          But going back to that first question, that would go

13  a long way towards helping the Court if it had an understanding

14  of what it is that Mattel wants to do.

15          **MR. QUINN:**  Well, your Honor, it is not Mattel's       01:03

16  intention to let the Bratz brand die.  And beyond that, I'm

17  going to have to confer with my client.

18          I've heard what the Court said.  Even if the Court

19  disregards all our objections, I think it's fair to summarize

20  the evidence that's been submitted as saying these retailers      01:03

21  would very much like to know soon.  They are making decisions.

22  The Hong Kong toy fair is next Monday apparently; that's where

23  you show products.  They want to make decisions, like all

24  businessmen.  I assume they would like to know.  It would be

25  more convenient to them to know sooner rather than later.         01:04

1          But the case that's been put before you that the fall

2    2009 line won't go forward or will be cancelled or will be lost

3    if this Court doesn't rule right away, that, your Honor, I

4    submit, has not been proven.

5          We challenged them, and the best evidence of this,                    01:04

6    your Honor, I think, is in the supplemental compendium of

7    declarations that came in with the reply.  This was after we

8    had filed our opposition.  This is after we had nitpicked their

9    declarations and said they are highly hedged; they don't

10   identify any orders; they say 'soon'.  They say what they say.            01:04

11         And what did they submit in reply after that?

12         Two more declarations from Wal-Mart, Big Wal-Mart,

13   presumably, Wal-Mart in Canada.  The first declaration is from

14   Mr. Cameron.  Having been challenged, they say now, "Due to our

15   need for merchandise planning certainty and concern about                  01:05

16   supplier financial risk, Wal-Mart Canada will avoid ordering

17   substantial quantities of any products if there's a significant

18   likelihood that those products will have to be removed from the

19   shelves in 2009."

20         Your Honor, they are just saying they are going to                   01:05

21   avoid it.  They don't say they won't do it.  Now the gauntlet

22   was thrown down when they went to that declarant and asked him

23   to sign a statement.  And he apparently couldn't say that.

24   Because I think we know why, among other reasons, he said

25   "Wal-Mart Canada will not add additional products on a large              01:05

```
 1   scale."

 2            And we have a similar statement from Mr. Falk,

 3   another reply declaration, who says "Retailers are concerned

 4   that there will be no alternatives to Bratz."

 5            What I think this is telling us -- and a fair                    01:06

 6   reading, read it both ways, I think, in fairness -- what they

 7   are saying here is 'We'd like to know.'

 8            But basically we can't make big changes in short

 9   order.  We don't know of any alternatives out there that we're

10   going to be able to do easily.  There's a huge transaction cost   01:06

11   to the retailer community to decide tomorrow, next week, two

12   weeks from now, that we're not going to do Bratz.  They have

13   not identified anything.  They would like to know sooner.

14            THE COURT:  Mr. Quinn, I don't think we're all that

15   far apart in terms of what you're saying and what I'm saying.     01:06

16            I agree that the December 31st deadline is

17   artificial.  I agree that there is no need for a stay pending

18   appeal.  But crediting the declarations that you just read,

19   crediting what you just said, there is a recognition that there

20   needs to be some certainty soon.                                  01:07

21            MR. QUINN:  Your Honor, there's a recognition, a

22   statement that they would like to have it.  There is no

23   statement in here where people are saying 'We will not order

24   the March' -- and they are very careful not to say that --

25   'Unless we know right away, we will not order the 2009...'        01:07
```

1          Look at the other reply declaration from Mr. Cameron,

2    your Honor.

3          **THE COURT:**  Actually, what the Sears declaration from

4    Mr. Elliott says is that unless they learn soon that the orders

5    are stayed, until the conclusion of MGA's appeal...' that          01:07

6    latter part, I suspect that sounds like a lawyer's writing, not

7    Mr. Elliott's writing.  Be that as it may, 'Sears holdings will

8    cancel all fall 2009 Bratz line of orders.'

9          So I do have evidence indicating -- and there's other

10   declarations to similar effect.                                     01:08

11         **MR. QUINN:**  Well, your Honor, if you read them

12   carefully, there are no orders identified -- which is an

13   interesting thing given the prominence of the significance of

14   orders in this briefing -- there is no order identified, other

15   than an $840,000 order which Toys"R"Us says 'We'll give you         01:08

16   until January 2nd.'

17         Your Honor, it would have been easy if there were

18   orders, if there were Sears orders that were material.  And I

19   would think they would want to show you that such orders exist.

20   But they have not been able to do that.  I acknowledged the         01:08

21   language in that declaration, your Honor, but the fact of the

22   matter is there are no orders identified.

23         And elsewhere, if you look at the Falcon declaration,

24   he accepts Mr. Weinstein's chronology that what really happens

25   is the decisions are made and then the orders come and are          01:09

1    accepted in March and April.  Falcon's approach to that is to

2    sort of trivialize the orders and say that's kind of an

3    afterthought.  But I think on this record that's really what

4    the evidence is; that people go to the Hong Kong toy fair next

5    week, they do the other things they need to do to go about          01:09

6    their decision-making process, and it's logical, and at the end

7    of all that, they place their orders.  And the only evidence

8    that the Court has before it on that is that the orders are

9    placed in March and April.  We're talking about fall of 2009.

10           The other declaration I wanted to call to your            01:09

11   attention is the declaration of Mr. Cameron from Wal-Mart,

12   Canada.  He says that 'Wal-Mart Canada will avoid ordering

13   substantial quantities of any product if there's a significant

14   likelihood that those products will have to be removed from the

15   shelves.'  He does not say they won't order them.  They would    01:10

16   rather not live with the uncertainty.  And you can understand

17   that.  He says 'we don't replace large volumes of products,

18   additional products, on a large scale.  We're reluctant to do

19   that.  It's a hassle.'

20           But the burden here is theirs, your Honor.  They have     01:10

21   to prove to you that something was going to happen before

22   February 11th.  And that gets us to the rightness issue, your

23   Honor.

24           Both sides, of course, have made JMOL applications.

25   Their characterization of their motion is that it potentially     01:10

1    could eviscerate the basis for the injunctions.  I'm absolutely

2    certain that counsel for MGA made those motions in good faith;

3    that they did not regard it as an empty exercise; and that they

4    believe in them.  I'm certain that they believe, for example,

5    that they can persuade your Honor that as a matter of law, only    01:11

6    the first generation Bratz dolls infringed.

7          Now, if they are right about that, that's going to

8    completely change the injunction, completely change it.  They

9    have challenged the constructive trusts and the name Bratz,

10   that Mattel would have the right to use the name Bratz, as a    01:11

11   matter of law.  If they are right about that -- they say they

12   are -- then that's going to completely change the injunction.

13         To decide this issue, your Honor, about whether to

14   give a stay, it's impossible to do it.  We agree with the

15   statement of the standard that Mr. Nolan sets.  It's impossible    01:11

16   to do it without assessing the likelihood of success on the

17   merits.

18         **THE COURT:**  And I'm with you.  You cannot assess the

19   likelihood of success because we don't even know at this point

20   what is going to be appealed.    01:11

21         **MR. QUINN:**  Exactly, your Honor.  And we also don't

22   know, for the same reasons, what the irreparable harm would be

23   from not having the stay.

24         There's a gap.

25         **THE COURT:**  That's where I -- and for those reasons,    01:12

1  that's why I think it is, in my opinion, nonsense to even

2  discuss a stay pending appeal since we can't make that

3  calculus.

4           **MR. QUINN:**  All right.

5           **THE COURT:**  Going back to your first statement,                01:12

6  though, that it is not Mattel's intention to see the Bratz

7  brand die.  Given what appears to the Court anyway as

8  legitimate concerns, I understand that the evidence is -- there

9  are some words there that suggest some room for

10  maneuverability, but given the evidence that clearly indicates   01:12

11  from the retailers that there are serious concerns about the

12  decisions that will be made affecting the 2009 line which could

13  have a profound impact on the Bratz brand, why does it not make

14  sense at least to preserve the status quo?  And we can discuss

15  on Monday whether or not part of preserving the status quo      01:13

16  involves appointing a receiver to make sure that the status quo

17  is being preserved.  That's an issue that I'm reserving for

18  Monday's discussion for this year, for this buying season.

19           **MR. QUINN:**  Your Honor, I think the --

20           **THE COURT:**  Put aside the motion for a stay.  Now   01:13

21  let's consider this a modification of the Court's previous

22  order staying this until February 11th just to preserve the

23  2009 buying season.  Why doesn't that make sense, if what you

24  tell me is that it is Mattel's intention not to allow the Bratz

25  brand to die?                                                    01:13

1          **MR. QUINN:**  Your Honor, because I submit the evidence

2     is that it hasn't even been proven that it will die.  There are

3     atmospherics; there are carefully hedged declarations; there is

4     concern expressed that 'we would like to know'.  But your

5     Honor, this is extraordinary relief.  This is their                           01:14

6     application.  They went to extraordinary lengths to get, I

7     don't know how many declarations, a dozen, and then

8     supplemental declarations.

9          Your Honor, isn't it significant that they are unable

10    to come up with any evidence that, indeed, these orders will          01:14

11    not be placed.  People would like to know sooner, but where's

12    the evidence that, indeed, it won't happen?

13         You have Wal-Mart wringing their hands saying 'We'd

14    really like to avoid it.  We'd rather not do it.  We don't want

15    to do it.  It's a hassle.'  Certainty is better in the business      01:14

16    world.  But what it comes down to, your Honor, is even if we're

17    now talking about just this next fall's line, what they are

18    asking you to do is eliminate the uncertainty for the business

19    world by giving an advisory opinion.

20         In some jurisdictions, in some states of the union,             01:15

21    courts give advisory opinions.  The United States District

22    Courts don't give advisory opinions.

23         **THE COURT:**  That is a very big concern of this Court,

24    because the last thing I want to do is give an advisory

25    opinion.  But what we're talking about here is not so much an        01:15

1    advisory opinion, but an effort on the part of the Court to

2    preserve the status quo pending my decisions on February 11th.

3    And essentially what MGA is arguing is that for me to preserve

4    the status quo pending my decision on February 11th, it was too

5    simplistic for the Court simply to stay it to February 11th;                01:15

6    what I really needed to do is stay it for the buying season

7    2009.  And that's what it's coming down to.

8            I agree with you that for me, and respectfully for

9    the Ninth Circuit at this point, to issue a stay pending appeal

10   would be, in my opinion, an improper advisory opinion.                      01:15

11   However, what I intend to do is preserve the status quo pending

12   February 11th.  And what MGA has succeeded in doing is raising

13   a real concern.  And, mind you, you've raised the issue

14   yourself in the form of this ex-parte that you just filed about

15   the finances.                                                               01:16

16           MR. QUINN:  That's a different issue, I think.

17           THE COURT:  It is a different issue, but it's related

18   in the sense that -- a touchstone for this Court will be

19   preserving the status quo pending the final resolution of this

20   case before this Court.  And that does not happen, final                   01:16

21   judgment does not get entered, until after I've decided the

22   motions on February 11th.

23           MR. QUINN:  And I understand what the Court is

24   saying, and I guess I would just come back to what I've already

25   said.  I think we have to take the evidence that has been                   01:16

| | |
|---|---|
| 1 | submitted to us and take it and see what it says.  And there is |
| 2 | nobody there who says it's impossible for us to place orders in |
| 3 | March and April.  We'd like to know soon.  There is no evidence |
| 4 | that there are any orders out there now.  I submit a fair |
| 5 | reading of the declarations is that, in fact, that's not how |
| 6 | this proceeds. |
| 7 | Decisions are going to be made, but they have not |
| 8 | made the case that this Court should take the extraordinary |
| 9 | step of preserving this now or taking action now before the |
| 10 | Court has heard the JMOL motions. |
| 11 | THE COURT:  Let me stop you there. |
| 12 | You do agree, Mr. Quinn, that the Court should |
| 13 | preserve the status quo pending February 11th; correct? |
| 14 | MR. QUINN:  We believe that the order that the Court |
| 15 | entered was appropriate. |
| 16 | THE COURT:  Okay.  Because you agree that we should |
| 17 | preserve the status quo pending February 11th. |
| 18 | MR. QUINN:  Yes. |
| 19 | THE COURT:  Very good. |
| 20 | MR. QUINN:  But what we're saying is that the case |
| 21 | has not been made that this Court needs to enter a new and |
| 22 | different injunction. |
| 23 | THE COURT:  I understand that. |
| 24 | MR. QUINN:  Your Honor, if I may? |
| 25 | THE COURT:  Please do. |

01:17
01:17
01:17
01:17
01:18

```
 1          MR. QUINN:  If I may, your Honor, turn the podium

 2   over to Mr. Zeller.

 3          THE COURT:  You may.

 4          MR. ZELLER:  Thank you, your Honor.

 5          One point, I guess what I want to do, because I think      01:18

 6   certainly there is large agreement as to where we are, and

 7   certainly with respect to what Mr. Quinn has been saying.

 8          First and foremost, I think it's important to put on

 9   the record that the Court has jurisdiction to decide the stay

10   motion; that's regardless of anything else that's going on in   01:18

11   the Ninth Circuit.  And I can certainly provide the Court with

12   the appropriate citations for that.

13          Number two, there is no appeal pending, which we've

14   said is a predicate for an appeal, for a stay pending appeal.

15   And certainly on the record I think the Court is saying that in  01:19

16   any event, they have certainly not made the case even reading

17   the evidence most favorably to MGA.

18          But it certainly is also a predicate that there be a

19   judgment, namely a final order, before they can appeal it.

20   That's really a determination of the Court's intent as to       01:19

21   whether or not that order of December 3rd was final.  We have

22   certainly -- our take on it is that it is not.  I think the

23   Court is confirming that it is not by saying that it's all

24   subject to the JMOLS that are being heard.

25          Perhaps I'm oversimplifying, but the way I hear it,      01:19
```

```
 1    the way that certainly MGA is portraying this, is that people
 2    need to know soon; the retailers want to know soon; they want
 3    certainty sooner rather than later.  It would seem that the
 4    issue is how quickly are the JMOLs resolved, which everyone
 5    agrees is essential for a final determination of the          01:19
 6    injunction.
 7              And I don't know, of course, what people's schedules
 8    are, but it seems like this relief that they are asking for in
 9    terms of the stay for all of 2009 is overkill, even reading
10    everything that they say about --                             01:20
11         THE COURT:  They are not asking for that.  That's
12    what I'm suggesting is that all of the evidence supports is
13    potentially a stay for 2009, for the buying season, and the
14    selling season, I suppose, for '09.
15         MR. ZELLER:  Right.                                      01:20
16         THE COURT:  I suppose it would be the buying and
17    selling season, because obviously they are not going to buy if
18    they cannot sell; so we'd have to preserve the selling, which
19    presumably would go through this time next year.
20              If you're getting to advancing the February 11th    01:20
21    date, I'm sorry, the Court is not prepared do that.  And I know
22    it was probably you that raised this issue earlier about the
23    need to move this forward.  I'm trying to move this case as
24    quickly as I can, but I can only move it as quickly as I can.
25         MR. ZELLER:  I understand, your Honor.  I was not        01:21
```

```
 1   necessarily making an offer in some respects.  I'm pointing out
 2   that that's not even what they have asked for.  I think that
 3   frankly, that should have been the relief.
 4          The only uncertainty that they really are pointing to
 5   is that everyone wants to know sooner rather than later what     01:21
 6   the Court is really ultimately going to do.  We certainly think
 7   that's an advisory opinion --
 8          THE COURT:  Let me disagree with you and hear your
 9   response, Mr. Zeller, because I don't think that's what they
10   are saying.  They are not saying that they need to hear what     01:21
11   the Court is ultimately going to do, because that would be an
12   advisory opinion.
13          What they need to hear -- all the buyers are
14   concerned about is this next year; they just want to hear that
15   whatever I do, however I decide, however the Ninth Circuit       01:21
16   decides, that their products are not going to get ripped from
17   the shelves some time in 2009; that's my reading of those
18   declarations.  They don't need to know how I'm going to decide
19   this case legally, whether these dolls are owned by Mattel or
20   MGA or constructive trusts, or any of that nonsense, from their  01:21
21   perspective, which is very important to us.  I think from their
22   perspective they just want to have this very successful line of
23   dolls on their shelves.  Whether it's stamped with MGA, whether
24   it's stamped with Mattel, there's certainly no evidence before
25   the Court that any of that really matters.                       01:22
```

```
 1        So I don't think it calls for an advisory opinion as

 2   much as it calls for the Court to ensure that these orders can

 3   go forward in this next month or so.

 4        MR. ZELLER:  I do think it actually asks for the

 5   Court to prejudge what it is going do.  I mean, the ultimate      01:22

 6   point is that if MGA's argument is credited that the JMOLs they

 7   think that they are going to prevail on would eviscerate the

 8   injunction, that's going to happen by we'll call it March,

 9   before ultimately there are actual orders that are placed.  So

10   what we're really talking about is this claim about uncertainty   01:22

11   for a three-month period at most.  And then to extrapolate it

12   into, well, that means that everyone should be given certainty

13   for the rest of the year -- well, I do think that is an

14   advisory opinion.

15        THE COURT:  Let me go back to a couple of points,           01:23

16   then.

17        I don't want anyone in this courtroom to think that

18   anything that the Court does with respect to the stay should

19   reflect in any way on how the Court is going to rule on

20   February 11th.  I have no idea, no idea, how I'm going to rule    01:23

21   on February 11th, which is part of the reason why I think the

22   appeal is premature.

23        In any event, this should not signal one or the

24   other.  What I'm talking about now is simply preserving the

25   status quo.                                                       01:23
```

1          But second of all, if this really is about -- again,

2    it's the portions -- and I'm thinking out loud now -- it's the

3    portions of the order that would have the affect on the

4    retailers; namely, the removal from the shelves that the

5    retailers are concerned about.  Issues like ownership,                    01:24

6    constructive trusts, et cetera, as far as I know and as far as

7    the evidence is before me, would have no affect on the

8    retailers; so there may very well be -- let's say

9    hypothetically I were to rule in Mattel's favor on

10   February 11th, there may be portions of the ruling that could            01:24

11   take affect immediately and what I would be staying now or

12   staying for the year is the removal of the dolls.

13          Again, I'm thinking somewhat out loud.  I need to

14   think this through.  But the point I'm trying to make and to

15   get you to respond to, Mr. Zeller, is that the imposition on             01:24

16   Mattel of getting the stay for 2009 is not perhaps as great as

17   you're making it out to be if, in fact, your desire is not to

18   kill the Bratz line.

19          **MR. ZELLER:**  I hear what the Court is saying.  But

20   we're not at this point talking about the imposition on Mattel.          01:25

21   It has more to do with the fact that they are ultimately asking

22   the Court to prejudge the issue.

23          **THE COURT:**  I agree that this is part of the Court's

24   equitable consideration.  There is not much of an imposition on

25   Mattel.  That was the point that Mr. Russell made a few moments          01:25

```
 1   ago.
 2            MR. ZELLER:  If the Court would like me to address
 3   the harm to Mattel, I can certainly do that.
 4            THE COURT:  It's in your papers.  You have it in your
 5   papers.  I'm cognizant of your position on the harm to Mattel,    01:25
 6   I think.
 7            MR. ZELLER:  If I may just, perhaps, put this
 8   slightly differently, your Honor, because I think the Court is
 9   absolutely correct in identifying the point that if some
10   showing could be made, that perhaps modification of particular    01:25
11   provisions of the injunction would be appropriate.  That is
12   certainly something that is in play, which is one of the
13   reasons why we don't think any of this is the subject of a
14   proper appeal, why there's no final order, why all these things
15   are still here in the district court for the district court to    01:26
16   decide.
17            But the fact is that there is no evidence that that
18   modification, if it occurs by some other motion, by
19   February 11th, whenever it is, that the Court should be
20   prejudging that right now.  That's not the relief that MGA has    01:26
21   asked for.  There's no evidence whatsoever that that is going
22   to resolve this concern that retailers say that they have.
23            THE COURT:  I'm not going there either.  I'm not
24   suggesting that I'm going to modify any of the orders that I've
25   issued right now based on anything that MGA has submitted to      01:26
```

```
 1    this point.  I may be modifying it based on my rulings on the
 2    JMOL and motions on February 11th, but there's nothing that's
 3    been submitted so far that would have an impact on the
 4    underlying preliminary injunction.  All this would have an
 5    impact on is preserving the status quo between now and          01:26
 6    February 11th.  I want to be able to be sitting here on
 7    February 11th knowing that, essentially, we're in the same
 8    condition in terms of the product line, in terms of the
 9    company, in terms of the workers, in terms of all of the things
10    that they discussed, as we are right now.  That's really my     01:27
11    focus, and I think that's the only proper focus at this point.
12          MR. ZELLER:  And for all of those various reasons, I
13    don't think there is necessarily disagreement on that
14    particular issue, other than the fact that the only relief that
15    MGA is asking for is something that doesn't accomplish what the 01:27
16    Court is looking to accomplish, and, moreover, what MGA claims
17    that it needs.  I mean, there's just simply no evidence that
18    doing anything at this point is going to eliminate that
19    uncertainly.  And it's just inherent in the litigation process.
20    I mean, that's where we are ultimately.                         01:27
21          THE COURT:  You're right.  And I know that there is
22    uncertainty inherent in the litigation process.  And there's
23    been uncertainty inherent, from MGA's perspective, ever since
24    that jury came back and said that Carter Bryant did these
25    drawings and came up with this idea and came up with this name  01:28
```

1    while he was employed at Mattel.  That's when the uncertainty,

2    in large measure, began.  I suppose it began when you filed

3    your lawsuit.

4          I mean, there's always degrees of uncertainty, and we

5    can't eliminate that.  And it's not the job of the Court to          01:28

6    eliminate that.  But when there is a particularized threat, as

7    I think has been identified by MGA, perhaps the Court should

8    consider addressing that.  And that's where I'm at right now.

9          **MR. QUINN:**  And to be clear about this, there's no

10   disagreement by Mattel and by us that we're looking to preserve       01:28

11   the status quo.  But the fundamental problem is that there is

12   no relief that MGA has asked for, or even identified, that

13   would provide that.  And we don't think that there is evidence

14   that retailers are not going to order --

15         **THE COURT:**  You say that, but I do have declarations         01:28

16   before me from retailers saying that -- the clear gist of it --

17   I mean, it's unfortunate that they appear not to be using their

18   own words.  The gist of it, though, seems to be clearly that

19   they need to know that they're going to have these products for

20   '09 or they're not going to order them.                             01:29

21         And not only do they say that, there's an element --

22   I mean, the Court has become more familiar with the whole doll

23   industry and branding and purchases and sales than I probably

24   was a year ago at this time.  It makes sense.  There's an

25   element of -- it resonates that these decisions -- and we heard       01:29

```
 1   testimony in the trial about the role that these toy fairs play

 2   and how the orders go out and when the new lines are unveiled;

 3   so the Court does have that evidence and background in mind as

 4   well.

 5            MR. ZELLER:  But one thing of interest is that that's      01:30

 6   all that these declarations can say.  They do not say, Judge,

 7   if you do not stay, any possible effect on us, the retailers,

 8   for all of 2009 -- so that when you decide on February 11th,

 9   these JMOLs, we're not going to order.  That is just not before

10   the Court.  It's not what MGA has asked for.  It's not what the  01:30

11   retailers said.  That's fundamentally the problem here, is that

12   MGA -- ultimately, what they're really looking for is

13   certainty.  But the vehicle that they are trying to achieve

14   this through is not going to provide that certainty.  We're on

15   a path -- this was with MGA's consent, with its input -- that   01:30

16   has the JMOLs being heard February 11th.  And that is the

17   course that we are on.  And this is why I refer to it as being

18   part of the litigation process.  And there's just no one who

19   tells the Court, I have X amount of orders worth Y amount of

20   dollars that I am going to cancel come January 31st if the      01:31

21   Court doesn't rule on these JMOLs --

22            THE COURT:  Eight hundred thousand from Toys"R"Us.

23            MR. ZELLER:  Double hearsay.  And they don't put in

24   the declaration, Toys"R"Us itself.  Mr. Wing says he heard from

25   somebody else within MGA that someone from TRU said that.       01:31
```

1          The truth of that -- I understand that perhaps the

2     Court may want to, in this context, consider it; but the

3     fact -- in terms of admissibility, I don't think it's

4     admissible at all.  But even if it just goes to weight -- I

5     mean, something like that, I think, should be afforded very,        01:31

6     very little weight.  No TRU declaration.  No identification of

7     who these people are, either within MGA or at TRU.  And,

8     certainly, there surely must have been someone within MGA who

9     actually had that conversation rather than Mr. Wing declaring

10    to it.                                                             01:32

11         I mean, part of our point on all of this has been

12    that we're mindful that certain readings can be given to the

13    evidence, and we're not necessarily disputing that, but the

14    point is, they should have put in the actual evidence and the

15    actual facts.  It's what they don't say, particularly in this     01:32

16    context, that has significance.  No one says, I'm a retailer;

17    I'm going to cancel X amount of orders by Y date if I don't

18    have this kind of certainty by a particular date.

19         **THE COURT:**  Very well.  Thank you, Mr. Zeller.

20         Mr. Nolan, I'm going to give you a few minutes.              01:32

21         **MR. NOLAN:**  I appreciate the offer; but, frankly, I

22    think the Court has gone over this.

23         We respectfully submit that what Mattel is doing is

24    ignoring the language in the declaration submitted from Sears

25    and from the other retailers.  I'm looking at Mr. Fisher from     01:32

Target, where in Paragraph 4, he says, "Target began purchasing

for purchases of Bratz and other toy products for the fall 2009

season on or about October 2008 and expects to have its fall

2009 assortment and purchasing plan largely completed in

January of 2009."  Not March; not, We're going to wait on it.           01:33

They have to make decisions.

     I'll land on one last point.  Mr. Quinn pointed out

to you that there is -- and he admits that there's a toy fair

in Hong Kong starting on Monday.  And that's where, to use his

language -- I didn't quote it exactly -- that's where you show     01:33

your wares.

     So let me just ask hypothetically what we're supposed

to do over there if you accept Mattel's position and say, Wait;

just wait until after the JMOLs.  Isaac Larian and salesmen

from MGA should go over to Hong Kong and say, You know what, I     01:33

know you've read about the injunction, and I know it has a

profound impact and impound requirements, and you don't know

whether or not we're going to be able to market Bratz; but

trust me; we've got really super arguments on this

February 11th JMOL.                                               01:34

     It's not logical.  In order to preserve the

status quo, to get to the February 11th date, your Honor, I

respectfully submit that your instincts in terms of looking at

the record that has been supplied -- although I can

respectfully disagree with respect to whether or not it goes     01:34

1   beyond 2009, for purposes of modifying the order, yes, it was

2   couched in terms of extraordinarily relief.  It was, however,

3   presented to this Court as a lifeline.

4          Allow us to exist, purchasing and selling in 2009.

5   Give us clarity.  Let us come in here on February 11th and          01:34

6   argue with as much vigor as we can that some of the rulings

7   were wrong and should be corrected and we'll have a profound

8   impact going forward, in our favor.  We have that right.  All

9   we ask, your Honor, all we ask for, is to have these employees

10  who stand behind Bratz wake up January 2nd of 2009 with a job.    01:35

11          **MR. QUINN:**  Your Honor, may I briefly.

12          **THE COURT:**  Very briefly.

13          **MR. QUINN:**  The case for irreparable harm here simply

14  has not been made.  Notwithstanding the statements about death

15  nail and death warrant, we know that this is a company that       01:35

16  produces financial statements every month.  They have auditors,

17  Ernst & Young.  The last balance sheet they provided to us is

18  two years old now, December of 2006.  Mr. Wing has those

19  financial statements.  He has them to hand.  So even if we

20  credit the idea that there will be an impact on orders, even if   01:35

21  we accept that and read the evidence broadly, as they invite

22  you to, they have not made a case that their survival is at

23  stake here.  They argued -- you'll recall, your Honor, with

24  respect to the bond, they argued that only a $3 million bond

25  was appropriate, because their Bratz profits in the first six     01:36

| | |
|---|---|
| 1 | months of last year were only $2.8 million.  This is a company |
| 2 | that appellate counsel here represented to the Ninth Circuit |
| 3 | was worth hundreds of millions of dollars in a filing just last |
| 4 | week. |
| 5 | **THE COURT:**  I know. |
| 6 | **MR. QUINN:**  That's the whole other side of this |
| 7 | equation that we haven't spoken about in this hearing.  They |
| 8 | have not made the case that they can't survive even if orders |
| 9 | are impacted.  And I submit, the fair reading of the evidence |
| 10 | is, yes, the process might be telescoped; it might be |
| 11 | accelerated; it will be outside the norm; but the purchasing |
| 12 | folks and the people who place orders can do what they need to |
| 13 | do right after this Court issues its order on February 11th. |
| 14 | You don't even get over that first hurdle.  But if you get over |
| 15 | that hurdle, we don't have a case made here that their survival |
| 16 | is at stake. |
| 17 | Thank you, your Honor. |
| 18 | **MR. RUSSELL:**  Your Honor, please, one minute. |
| 19 | **THE COURT:**  One minute, Mr. Russell.  You can always |
| 20 | have one minute. |
| 21 | **MR. RUSSELL:**  Thank you, your Honor. |
| 22 | It's hard to take that argument seriously in light of |
| 23 | what Mr. Quinn himself told the jury.  They told the jury that |
| 24 | 80 percent of the profits of MGA came from Bratz and that |
| 25 | without Bratz, there was no other profitable lines for MGA from |

01:36
01:36
01:37
01:37
01:37

1    2001 through 2007.

2             He points to $3 million of profits.  It's true, but

3    profit is different than revenues.  And the reason profits

4    suffered, respectfully, is because of extraordinary costs like

5    this case.  What we're talking about here, and the evidence is          01:37

6    uncontroverted, MGA's primary, or in Mr. Quinn's showing, only

7    profitable line, if this Court's orders are not stayed, will be

8    enjoined.  MGA's revenue from its only, according to Mr. Quinn,

9    profitable line will not be received by the company.  Mr. Wing

10   says it's at least 44 percent of the revenues.  MGA will lose          01:38

11   $150 million in sunk costs.  There is no question that this

12   will cause grave, potentially catastrophic, harm; and they

13   haven't even tried to rebut that.

14            Now, I understand he wants to get to the receiver

15   argument, which we were forced to respond to in 12 hours.  And         01:38

16   we can do that on Monday.  But for purposes of today, there is

17   absolutely no showing, none whatsoever, from Mattel that this

18   will not kill MGA.  It will kill MGA.  That is the record

19   before trial.  That is the record before you.

20            **THE COURT:**  Very well.                                     01:38

21            I think both prudence and equity require the Court to

22   modify its previous order, extending the stay to February 11th.

23            Having said that, I find simply no grounds to grant

24   the motion as phrased, a motion for stay pending appeal, for

25   the reasons that I stated earlier.  There is simply no way of          01:39

1   measuring the likelihood of success of an appeal of a decision

2   that has yet to be made.  And, likewise, the Court does have

3   serious questions about the irreparable harm.

4            In suggesting that I need to modify my previous stay,

5   I am not making a finding of irreparable harm.  And it's not on          01:39

6   that basis.  Rather, it is on the basis that I believe there is

7   a serious concern that the Court has that the status quo would

8   not be preserved on February 11th if the Court did not take

9   appropriate steps to modify its previously-entered stay.

10           So it is my intention to do so.                                  01:39

11           I happen to believe that this is inextricably

12   intertwined, however, with issues raised by Mattel in terms of

13   the finances of MGA, which at this point, quite frankly, are a

14   mystery to the Court.  And that mystery was compounded in part

15   by what I read on appeal, what I've heard from counsel, what           01:40

16   I've seen in other papers.  I just don't know what exactly is

17   going on with all of that, and I want to explore that at

18   Monday's hearing on that motion.

19           What I intend to do, following Monday's hearing, is

20   issue a written order which will set forth how '09 will                01:40

21   proceed, pending, of course, any decisions that the Court makes

22   on February 11th.  Because if the Court were to rule in MGA's

23   favor on February 11th, that would, if not eviscerate,

24   certainly unravel those decisions made after Phase 1-C. But I

25   do accept the evidence that a degree of certainty needs to be          01:40

1   maintained in order to preserve the status quo; and the Court

2   will be issuing an order to that effect following the hearing

3   on Monday.

4          That is the most that I can give at this point.  I

5   trust that there is probably a lot of work for MGA to do with          01:41

6   its suppliers and buyers to make sure that we can go forward.

7   The Court would certainly provide leave to both parties to

8   submit language that the Court might wish to consider to

9   address the concern, and only the concern, that the Court has

10  identified, how to preserve the 2009 buying season, purchasing          01:41

11  and buying season, for Bratz.

12         I think that is all the evidence supports.  I think

13  that's all the relief that is warranted at this stage, at this

14  posture of the litigation, and much remains to be seen in terms

15  of how things fold out on February 11th.  The more immediate          01:41

16  concern of the Court, though, is preserving the status quo; and

17  we'll take that up and the financial questions that the Court

18  has on Monday.

19         Are there any questions concerning where the Court is

20  at at this point?          01:42

21         Mr. Nolan?

22         **MR. NOLAN:**  No, your Honor.  Thank you.

23         **THE COURT:**  Mr. Quinn?

24         **MR. QUINN:**  No, your Honor.

25         **THE COURT:**  Very well.          01:42

1          Good day.  And Happy New Year.

2

3

4                            CERTIFICATE

5

6    I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
7    the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
8    conformance with the regulations of the Judicial Conference of
     the United States.

9

10   _____          _____
     THERESA A. LANZA, CSR, RPR                        Date
11   Federal Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Tuesday, December 30, 2008                        Mattel vs. MGA