THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
and MGA ENTERTAINMENT (HK) LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　Defendant.<br><br>AND CONSOLIDATED CASES. | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S MEMORANDUM REGARDING ESCROW OF BRATZ PROFITS |

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .......................................................................................................... 1

    I.    MGA IS NOT WILLFULLY INFRINGING .............................................. 1

    II.   REDACTED ................................................................................................ 7

CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE:**

Aero Products International, Inc. v. Intex Recreation Corp.,
   No. 02 C 2590,
   2005 WL 1498667 (N.D. Ill. June 9, 2005) .................................................. 5, 7

Applied Medical Resources Corp. v. U.S. Surgical Corp.,
   353 F. Supp. 2d 1075 (C.D. Cal. 2004) ........................................................ 2

Bott v. Four Star Corp.,
   807 F.2d 1567 (Fed. Cir. 1986) ................................................................ 2, 4

In re Hayes Microcomputer Products Inc., Patent Litigation,
   766 F. Supp. 818 (N.D. Cal. 1991),
   aff'd 982 F.2d 1527 (Fed. Cir. 1992) ....................................................... 2, 4

Houseman v. U.S. Aviation Underwriters,
   171 F.3d 1117 (7th Cir. 1999) ...................................................................... 2

Hynix Semiconductor, Inc v. Rambus, Inc.
   No. C-00-20905 RMW,
   --- F. Supp. 2d ---, 2009 WL 440473 (N.D. Cal. Feb. 23, 2009) .......... 3, 4, 7

Joyal Products, Inc., v Johnson Electric North America, Inc.,
   No. Civ. A 04-5172 JAP,
   2009 WL 512156 (D.N.J. Feb. 27, 2009) .................................................... 3

Mikohn Gaming v. Acres Gaming, Inc.,
   No. CV-S-97-1383-EJW,
   2001 WL 34778689 (D. Nev. Aug. 21, 2001) ............................................. 5

National Football League v. PrimeTime 24 Joint Venture,
   131 F. Supp. 2d 458 (S.D.N.Y. 2001) ...................................................... 3, 4

National Instruments Corp. v. Mathworks, Inc.,
   No. Civ. A 2:01-CV-11-TJW,
   2003 WL 24049230 (E.D. Tex. June 23, 2003),
   aff'd, 113 Fed Appx. 895 (Fed. Cir. Sept. 3, 2004) ..................................... 5

Oscar Mayer Foods Corp. v. Conagra, Inc.,
   869 F. Supp. 656 (W.D. Wis. 1994) ......................................................... 5, 7

Peterson v. Highland Music,
   Nos. CV 93-4672 WDIC, CV-96-2242 WDK,
   1997 U.S. Dist. LEXIS 23181 (C.D. Cal. Apr. 9, 1997),
   aff'd, 140 F.3d 1313 (9th Cir. 1998) ............................................................ 5

Stryker Corp. v. Davol, Inc.,
   75 F. Supp. 2d 746 (W.D. Mich. 1999) ....................................................... 2

Technology for Energy Corp. v. Computational System, Inc.,
    No. Civ. 3-89-475,
    1992 WL 535791 (E.D. Tenn. July 29, 1992),
    aff'd, 6 F.3d 788 (Fed. Cir. 1993)..................................................................5

Whelan Associates Inc. v. Jaslow Dental Laboratory, Inc.,
    609 F. Supp. 1325 (E.D. Pa. 1985).................................................................5

**PRELIMINARY STATEMENT**

Mattel premises its statement of position on something that it knows is false, namely its spurious allegation that the MGA Parties' "ongoing infringement has been and is willful." (Mattel, Inc.'s Memorandum Regarding Escrow of Bratz Profits ("Mem.") at 1.) This is demonstrably not true; it cannot be disputed that the jury found that the MGA Parties' infringement was not willful, and none of the cases Mattel cites nor any of Mattel's baseless arguments can change that indisputable fact. The MGA Parties' infringement always was and remains non-willful (and, based on the damages verdict, *de minimis*). As a result, Mattel's arguments regarding the proper calculations of profits and the amounts to escrow in the context of willful infringement are completely misplaced and, more importantly, irrelevant. The proper calculations are the same now as they were at trial, where both MGA and Mattel presented their evidence and made their arguments. There is thus no reason to depart from conclusions the jury reached at trial. Plainly, what the jury decided (as reflected in the jury's verdict) and not what the jury rejected (i.e., willful infringement) provides the appropriate baseline for determining what percentage of MGA's profits should be escrowed, and as the MGA Parties established in their Statement of Position Regarding Appropriate Escrow of Bratz Profits, this amount is 1.3% of profits. Mattel offers no principled basis for any other amount, which ends the analysis.

REDACTED

**ARGUMENT**

**I.   MGA IS NOT WILLFULLY INFRINGING**

Mattel's repeated insistence that the MGA Parties' post-verdict infringement is

1

willful does not make it so. The jury found that the MGA Parties' infringement was **not** willful. (See Phase B Verdict Form as Given (Dkt 4279), Nos. 6, 8, 10.) None of Mattel's cases suggest that the jury verdict on this issue is open to reconsideration now.[1] See Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed. Cir. 1986) ("Contrary to appellant's contention, a finding of willful infringement is a finding of fact, not a conclusion of law."). Unsurprisingly, in nearly every one of Mattel's many cases purportedly holding that post-verdict conduct was necessarily willful, the jury had already found that the defendant engaged in pre-verdict willful infringement. See Bott, 807 F.2d at 1572-73 (willful infringement was found at trial and the Court warned defendant that continued infringement during the stay would also be deemed willful; defendant clearly increased its infringing activities during stay pending appeal, rather than maintaining the status quo, thus defendant's actions were continued to be willful); Applied Med. Res. Corp. v. U.S. Surgical Corp., 353 F. Supp. 2d 1075, 1076-77 (C.D. Cal. 2004) (this was second lawsuit involving same parties and same patent, jury found first version of product willfully infringing, first verdict was upheld on appeal, defendant began selling second version of product immediately after injunction from first litigation became effective, plaintiff again sued and jury again concluded that infringement was willful); Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999) ("The jury determined that defendant Davol, Inc., had willfully infringed all four of the patent claims asserted by plaintiff Stryker Corporation."); see also In re Hayes Microcomputer Prods. Inc., 766 F. Supp. 818, 822-23 (N.D. Cal. 1991) ("In the instant case, as noted above, the jury found that the patent in question was valid and that each defendant had willfully infringed it;" nonetheless setting

---

[1] Moreover, Mattel is not entitled to retry the issue of willfulness in Phase 2. See Houseman v. U.S. Aviation Underwriters, 171 F.3d 1117, 1126 (7th Cir. 1999) (In a bifurcated proceeding, "the district court 'must not divide issues between separate trials in such a way that the same issue is reexamined by different juries.' While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome." (citations omitted)). And even if it were, it could not assume victory and seek damages for willful infringement now.

1  escrowed royalty at 1.75% of net sales during stay pending appeal).[2]

2  Indeed, the two cases cited by Mattel for the proposition that "post-verdict infringement is deemed willful even when pre-verdict infringement was not" say nothing of the sort. (Mem. at 3 n.6.) Joyal Prods., Inc. v. Johnson Elec. North Am., Inc. is clearly inapposite because "Johnson <u>admitted</u> to willful infringement." 2009 WL 512156, at *14 (D.N.J. Feb. 27, 2009) (emphasis added). Hynix Semiconductor Inc. v. Rambus Inc. is even more problematic for Mattel. Mattel claims that Hynix supports its argument because the court "*increase[ed]* damages for patent infringement for the period between the jury verdict for infringement and the institution of the injunction on the basis of willfulness." (Mem. at 3 n.6 (citing 2009 WL 440473, at *6 (N.D. Cal. Feb. 23, 2009) (emphasis in original).) In fact, at the page cited by Mattel, the court is not even discussing the merits of the case before it but rather is reviewing <u>other</u> case law. However, a few pages further along, the court does reach the merits, and finds that:

> <u>The absence of any meaningful distinction between pre-verdict and post-verdict infringement justifies the case law's approach of applying the same royalty rate to both.</u> ... [Although there is some support for increasing the royalty rate after a final judgment is entered,] [n]onetheless, the court does not believe such an increase is wise here <u>given the issues that remained to be tried and the pendency of post-trial motions</u>. While the jury verdict brought increased certainty to the parties' relationship, it was much less than that conferred by a judgment.

---

[2] The lone exception is National Football League v. PrimeTime 24 Joint Venture, but in that case, the defendant's only defense was reasonable reliance on advice of counsel and that reliance became unreasonable after the court's adverse rulings. 131 F. Supp. 2d 458, 479 (S.D.N.Y. 2001). Having no other defense, the defendant's conduct became willful. Id. ("PrimeTime knew (or should have known) that with its legal theory demolished, the undisputed facts would entitle the NFL to summary judgment.") The issue of liability was thus resolved on summary judgment and never proceeded to trial; the judge decided damages in a bench trial after PrimeTime appealed the injunctive relief awarded and lost. Id. at 461-63. **Even there, and contrary to Mattel's assertions (Mem. at 6), the court did <u>not</u> conclude that infringement during a stay pending appeal was willful.** Id. at 481 ("Because the NFL seeks damages for these infringements within the § 504(c)(1) range, <u>the Court need not decide if PrimeTime's conduct in this period was willful</u>." (emphasis added)).

1     Accordingly, the court orders that <u>the same royalty rates</u> set in the remittitur order – 1% for SDRAM and 4.25% for DDR SDRAMs – shall apply to the supplemental damages award.

2009 WL 440473, at *9 (emphasis added). In addition, and devastating to Mattel's arguments here, the court held that Rambus could not prove willfulness post-trial as it had failed to do so during trial. <u>Id.</u> at *2 (finding that Rambus "cannot prove" willfulness in support of its motion for attorneys' fees because "[d]espite Rambus's contention in its brief that Hynix 'knowingly and willfully infringed Rambus's patents' and that Hynix lacked a good faith belief in its non-infringement, Rambus did not attempt to prove willfulness because it dropped the issue to avoid the possibility that the court would bifurcate the patent trial").[3]

    As in <u>Hynix</u>, there is no distinction between the MGA Parties' pre-verdict and post-verdict conduct – neither constitute willful infringement. Thus, as in <u>Hynix</u>, and as the MGA Parties argue in their Statement of Position, the jury's verdict constitutes the

---

[3]     Moreover, as noted above, none of Mattel's cases support its argument that infringement during a stay is willful if the pre-verdict infringement was not. (<u>See</u> Mem. at 6 (citing <u>Bott</u>, 807 F.2d at 1573 (pre-verdict willful infringement), <u>PrimeTime</u>, 131 F. Supp. 2d at 480-81 "Because the NFL seeks damages for these infringements within the § 504(c)(1) range, the Court need not decide if PrimeTime's conduct in this period was willfull."), and <u>In re Hayes Microcomputer</u>, 766 F. Supp. at 823 (pre-verdict willful infringement, and still only escrowing royalty of 1.75%).)

    Indeed, that simply could not be true here, because Mattel was awarded a constructive trust over the trademark "Bratz," and **Mattel has taken the position that, in order to preserve the value of that trademark, the MGA Parties are <u>compelled</u> to maintain the Bratz brand to the best of their abilities** – as Mattel has been quick to point in out in its briefs seeking a receiver as well as [               ]. (See Mattel's Ex Parte App. & Mot. for Rec'r (Dkt 4540) at 14-15; [               ]) Thus,

Redacted

---

appropriate baseline for assessing Mattel's post-verdict damages. See also Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 2005 WL 1498667, at *2 (N.D. Ill. June 9, 2005) ("It is proper to use the royalty rate determined by the jury to assess damages for the sales at issue in this motion. Plaintiffs contend that when a jury renders a general verdict, it is appropriate to extrapolate a royalty rate from the general verdict. Here, the jury awarded Plaintiffs a $2,950,000.00 general verdict on $21,817,103.00 in sales. Dividing $2,950,000.00 by $21,817,103.00 results in 13.5 percent ratio of royalty for the use of the product to total sales. Accordingly, Plaintiffs are awarded a reasonable royalty for the sales of all products bearing the prohibited product numbers at the rate of 13.5 percent. Based on all the relevant evidence, the totality of the circumstances, and considering all possible alternative sanctions, the Court finds that a 13.5 percent royalty is reasonable amount based on the reasonable probable harm to Plaintiffs."); Oscar Mayer Foods Corp. v. Conagra, Inc., 869 F. Supp. 656, 668 (W.D. Wis. 1994) ("The parties are in agreement that plaintiff is entitled to certain additional damages as a result of subsequent sales of defendants' products. The parties differ as to the appropriate method of calculating such damages and the appropriate date from which to begin the calculation. The Court concludes that such damages shall be awarded on the basis of product sales which occurred after the entry of judgment at the rate of 4.558 percent of post-judgment sales revenue based upon extrapolation from the jury's verdict.").[4]

---

[4] Notably, Mattel's cases discussing post-verdict accounting generally arise in the context of post-trial or post-judgment motions for supplemental damages, Whelan Assocs. Inc. v. Jaslow Dental Lab., Inc., 609 F. Supp. 1325, 1327 (E.D. Pa. 1985), Nat'l Instruments Corp. v. Mathworks, Inc., 2003 WL 24049230, at *4 (E.D. Tex. June 23, 2003), Mikohn Gaming v. Acres Gaming, Inc., 2001 WL 344778689, at *1 (D. Nev. Aug. 21, 2001), Tech. for Energy Corp. v. Computational Sys., Inc., 1992 WL 535791, at *3 (E.D. Tenn. July 29, 1992), or contempt proceedings, Peterson v. Highland Music, 1997 U.S. Dist. LEXIS 23181, at *8 (C.D. Cal. Apr. 9, 1997). That is not the case here, as Mattel has made no motion for damages. Thus, the MGA Parties have presumed that the escrow of damages contemplated here arises out of the injunction orders issued on December 3, 2008, which did not become effective until April 27, 2009. In the absence of an appropriate motion from Mattel, there is no basis for awarding Mattel damages dating back to the verdict. Moreover, as the MGA Parties noted in their Statement of Position, Mattel specifically requested an escrow of profits in support of the stay currently in place (12/23/08 Opp'n to Ex Parte Appl. &
*(cont'd)*

Because the MGA Parties' infringement is not willful, Mattel's arguments about the various standards to be applied in calculating damages for willful infringement are irrelevant to the calculation here. Rather, the appropriate standards are those already applied by the jury. At trial, as here, Mattel sought disgorgement of all profits as the damages for its claims. (Tr. 7480:15-17 ("[A]s is clearly the case, we're seeking disgorgement of benefits for the copyright claim as well as the tort claims"); 7477:2-3 (same); 7768:5-19 (same).) The jury was properly instructed that it could award only award those profits that actually resulted from infringement. (See Phase B Jury Inst. As Given (Dkt 4267) at Inst. 42 ("You may make an award of defendants' profits only if you find the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue. ... In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.").) The jury was also instructed on the methods for deducting expenses and calculating profits depending on whether they found the infringement to be willful or not. (See id. ("The defendants' profit is determined by deducting expenses from the defendant's gross revenue. ... Expenses are all operating costs and production costs incurred in producing the defendants' gross revenue."), Inst. 43 ("A defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when the copyright infringement is willful.").)[5] Thus, the analysis that needs to be undertaken already has been – and the jury, having determined that the infringement was not willful – awarded Mattel $10 million of the $777.9 million that Mattel sought for copyright infringement. (See Phase B Verdict Form As Given at Nos. 6, 8, 10, 11; Tr. 6286:15-6287:21 (Wagner testimony regarding profits).) Mattel does not and cannot offer any reason to abandon the jury's analysis in calculating Mattel's post-verdict damages as well. Nor could it in light of the fact that

---

Motion for Stay (Dkt 4552) at 22-23), but the Court did not make its January 7, 2009 Order contingent upon any escrow or accounting. (1/7/09 Order at 1-2.) This fact further militates against any escrow of profits earned before April 27, 2009.

[5] Mattel itself proposed these instructions. (See Mattel's 3d Am. Proposed Jury Inst. for Phase B (Dkt 4163) at 151, 161.)

1 | courts routinely accept the mathematical extraction from the jury's verdict that the MGA
2 | Parties offer here.  See, e.g., Aero Prods., 2005 WL 1498667, at *2; Oscar Mayer Foods
3 | Corp., 869 F. Supp. at 668; see also Hynix, 2009 WL 440473, at *9.

4 | **II.** REDACTED

5 |

6 |
7 | REDACTED
8 |
9 |
10 |

11 | Even if Mattel's accusations were based in fact – and they are not –  they are <u>irrelevant</u> to
12 | the Court's analysis of an appropriate escrow here.

13 |
14 | REDACTED
15–28 |

---

7

MGA Parties' Opposition to Mattel's Memorandum Regarding Escrow Of Bratz Profits
Case No. CV 04-9049 SGL (RNBx)

REDACTED

8

MGA Parties' Opposition to Mattel's Memorandum Regarding Escrow Of Bratz Profits
Case No. CV 04-9049 SGL (RNBx)

| |
|---|
| REDACTED |

As Mr. Meyer explained at trial, Mr. Wagner's regression analysis was calculated by comparing monthly costs to monthly sales, which wholly disregarded the seasonal nature of the toy industry. (Tr. 7705:25-7707:2, accord Tr. 7825:23-7826:1 (Wagner describing his monthly approach).) Mr. Meyer, on the other hand, performed his analysis using annual figures, because "it's important to look at the costs, I believe, that are incurred all year and match them up with your sales all year. So, for example, selling and marketing early in the year, product development early in the year for MGA benefits the holiday season. So by grouping the 12 months together, sales and costs, you get a much better relationship." (Tr. 7706:14-20; see also May 14, 2009 Decl. of Carl Alan Roth (Dkt 5482) Ex. D ▢▢▢.) Furthermore, because, in the toy industry, costs such as product development and sales and marketing contribute to sales growth in future periods, not just the month the costs are incurred, Mr. Wagner's approach, ▢

| |
|---|
| REDACTED |

| |
|---|
| REDACTED |

given that he and Mr. Meyer **agreed** that the total Bratz-generated revenue was $3.1 billion at trial. (Tr. 6381:14-21, 6382:12-24 (Wagner testimony regarding $3.1 billion in revenue, citing TX 13931), 7691:9-17 ("Q. And is it correct -- to try to move this along, you and Mr. Wagner are basically in agreement concerning the total revenues that were generated by Bratz products? A. Yes, sir. Q. You take all of the revenues from all of the stuff on the floor here and all of the products upstairs in the other courtroom, and you both agree the total revenues rounded are about 3.1 billion? A. That's correct.").)

|     |
| --- |
| REDACTED |

In short, Mattel's assertions of understatement of profits and revenues are based not in fact but on the flawed analysis (and speculation derived from that flawed analysis) of its own expert, and are thus without merit. More importantly, Mattel again ignores that even if its flawed hypothesis regarding MGA's "historical" accounting practices were true, the Court's appointment of Patrick Fraioli as monitor charged with "the power and authority to monitor the financial affairs and operations" of MGA (5/21/09 Minute Order (Dkt 5565) at 10) means that MGA's past accounting practices are <u>irrelevant</u> to the escrow of revenues going forward, and Mattel's accusations to the contrary should be summarily disregarded.

|     |
| --- |
| REDACTED |

REDACTED

## CONCLUSION

As described above, the MGA Parties respectfully submit that this Court should reject Mattel's request for the escrow of all gross revenues from Bratz sales.

DATED: May 29, 2009   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for the MGA Parties

11