1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13 | Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 14 | vs. | Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16 | Defendant. | **MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING ESCROW OF BRATZ PROFITS** |
| 17 | AND CONSOLIDATED ACTIONS | |
| 18 | | [Declaration of B. Dylan Proctor filed concurrently] |
| 19 | | |
| 20 | **[PUBLIC REDACTED]** | Hearing Date: TBD |
| 21 | | Time: TBD Place: Courtroom 1 |

22

23

24

25

26

27

28

07209/2949723.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.   MATTEL IS ENTITLED TO AN ESCROW ACCOUNT
     SUFFICIENT TO COVER ITS ULTIMATE CLAIMS ................................... 1

     A.   MGA Ignores the Rules Governing Disgorgement ................................ 1

     B.   MGA's Effort to Define Profit According to Mattel's Ownership
          is Wrong as a Matter of Law ................................................................. 3

     C.   MGA Has Failed to Meet Its Burden ..................................................... 5

II.  THERE SHOULD BE NO APPORTIONMENT OF THE PROFITS
     PUT INTO ESCROW ...................................................................................... 7

     A.   The Jury's Alleged Apportionment Findings Do Not Apply To
          Infringements Not Before The Jury ...................................................... 7

     B.   There Should Be No Apportionment Of The Profits To Be
          Escrowed .............................................................................................. 10

III. MATTEL'S ENTITLEMENT TO AN ACCOUNTING OF PROFITS
     DOES NOT TURN ON THE EXISTENCE OF A FINAL
     INJUNCTION ORDER ................................................................................... 12

1

# TABLE OF AUTHORITIES

2

## Cases

**Page**

3

4

ABKCO Music, Inc. v. Harrisongs Music, Ltd.,
  508 F. Supp. 798 (D.C. N.Y. 1981)..................................................12

5

6

Anderson v. Stallone,
  1989 WL 206431 (C.D. Cal. Apr. 25, 1989).......................................4

7

8

Bigelow v. RKO Radio Pictures, Inc.,
  327 U.S. 251 (1946).......................................................................6

9

Chesa Intern., Ltd. v. Fashion Associates, Inc.,
  425 F. Supp. 234 (S.D.N.Y. 1977) ...................................................5

10

11

Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg.,
  367 F.2d 308 (2d Cir. 1966) ...........................................................5

12

13

Dam Thing from Den. v. Russ Berrie & Co.,
  290 F.3d 548 (3d Cir. 2002) .......................................................3, 4

14

Deering, Milliken & Co. v. Gilbert,
  269 F.2d 191 (2d Cir. 1959) ...........................................................6

15

16

Eden Toys, Inc. v. Florelee Undergarment Co.,
  697 F.2d 27 (2d Cir. 1982) .............................................................4

17

18

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
  772 F.2d 505 (9th Cir. 1985) ..............................................1, 2, 5, 6

19

Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,
  240 U.S. 251 (1916).......................................................................6

20

21

Itron, Inc. v. Benghiat,
  2003 WL 22037710 (D. Minn. Aug. 29, 2003).............................13, 14

22

23

Joy Mfg. Co. v. CGM Valve & Gauge Co.,
  730 F. Supp. 1387 (S.D. Tex. 1989)................................................12

24

Joyal Products, Inc. v. Johnson Elec. North America, Inc.,
  2009 WL 512156 (D.N.J. Feb. 27, 2009)..........................................10

25

26

Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.,
  752 F.2d 1326 (9th Cir. 1984) .........................................................5

27

Knitwaves, Inc. v. Lollytogs Ltd.,
  71 F.3d 996 (2d Cir. 1995) ............................................................12

28

MATTEL'S RESPONSE TO MGA'S STATEMENT RE ESCROW OF BRATZ PROFITS

Maltina Corp. v. Cawy Bottling Co.,
   613 F.2d 582 (5th Cir. 1980) ................................................................. 12

Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.,
   349 F.2d 389 (2d Cir. 1965) .................................................................. 12

Paice LLC v. Toyota Motor Corp.,
   504 F.3d 1293 (Fed. Cir. 2007) ............................................................... 9

Pickett v. Prince,
   207 F.3d 402 (7th Cir. 2000) ................................................................... 4

Roberts v. Coll. of the Desert,
   870 F.2d 1411 (9th Cir. 1988) ................................................................. 8

Snider v. Consol. Coal Co.,
   973 F.2d 555 (7th Cir. 1992) ................................................................... 8

Three Boys Music Corp. v. Bolton,
   212 F.3d 477 (9th Cir. 2000) ................................................................... 6

W. E. Bassett Co. v. Revlon, Inc.,
   435 F.2d 656 (2d Cir. 1970) .................................................................. 12

Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.,
   225 U.S. 604 (1912) ................................................................................ 5

## Statutes

17 U.S.C. § 504(b) ................................................................................. 1, 5, 6

## Miscellaneous

6 Patry on Copyright § 22:101 ................................................................. 8

MATTEL'S RESPONSE TO MGA'S STATEMENT RE ESCROW OF BRATZ PROFITS

1 | **Preliminary Statement**

2 |       The Court asked the parties to brief how to define the Bratz profits that

3 | should be held in escrow.  MGA, in its memorandum, does not even acknowledge the

4 | issue the briefs are supposed to address, let alone carry the burden of proof that the law

5 | imposes on MGA with respect to profits accounting and claimed deductions.  Instead,

6 | MGA attempts to reargue prior Court rulings and interjects a series of contentions that

7 | are both irrelevant and wrong.  The Court has already recognized, correctly, that

8 | MGA's post-verdict profits should be escrowed.  ███████████████████

9 | ██████████████████████████████ and seeking to evade the Court's

10 | orders through fraudulent transactions, it is imperative that the escrow include a sum

11 | sufficient to cover Mattel's claims lest Mattel be left with no remedy at all.

12 | **I.**    **MATTEL IS ENTITLED TO AN ESCROW ACCOUNT SUFFICIENT**

13 |     **TO COVER ITS ULTIMATE CLAIMS**

14 |       The Court has rightly determined that an accounting and escrow of Bratz

15 | profits is necessary to ensure that Mattel receives monetary compensation for MGA's

16 | ongoing infringement.  The *only* issue to be addressed here is how to account properly

17 | for those profits.  MGA ignores that question, as well as its burden of proof, variously

18 | claiming that it has no data about how much profit it has made and has had no time to

19 | have an expert review the data it doesn't have.

20 |     **A.**    **MGA Ignores the Rules Governing Disgorgement**

21 |       MGA ignores entirely the well-established multi-step process by which an

22 | infringer's profits must be determined for disgorgement and the plain language of the

23 | Copyright Act which requires a defendant "prove his or her deductible expenses and the

24 | elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. §

25 | 504(b); see Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir.

26 | 1985).  First, an infringer's revenues are determined.  The next step requires that the

27 | infringer establish whatever expenses may be offset.  See Frank Music Corp., 772 F.2d

28 | at 514 (after revenues are determined the burden is on "defendant to prove the elements

-1-
MATTEL'S RESPONSE TO MGA'S STATEMENT RE ESCROW OF BRATZ PROFITS

1   of costs to be deducted from sales in arriving at profit").[1]  Then, to the extent that the

2   infringer claims that some portion of those profits are attributable to non-infringing

3   aspects a product, the infringer bears the further burden of proving apportionment. See

4   id. at 518 ("The burden of proving apportionment (*i.e.*, the contribution to profits of

5   elements other than the infringed property) is the defendant's.").

6           MGA does not even attempt to carry its burden here.  Contradicting its

7   earlier claims that it can properly steward the Bratz brand, it now represents that it does

8   not even know whether there "have been *any* profits earned on Bratz products since the

9   jury's verdict in August 2008[.]" (MGA Mem. at 2 n.2.) (emphasis in original).  MGA

10  baldly claims that there are a "plethora of Bratz products" for which "Mattel has no

11  rights to the profits," but offers no evidence that any such products even exist, let alone

12  how they figure into its current profits (if at all).  ███████████████████

13  ████████████████████████████████████████████████████

14  ██████████████████████[2]

15          Mattel is not seeking, at this point, to have all Bratz monies that are

16  escrowed turned over to Mattel.  The issue now is only what should be held in escrow

17  pending further determinations by the Court or the Phase 2 jury as to MGA's

18  willfulness and profits.  Because MGA cannot show that any products currently being

19  sold are not infringing, and because MGA has made no effort to establish what

20  expenses can properly be deducted, and because the question of MGA's willfulness

21  remains to be determined, MGA should be required to escrow all revenues from Bratz

22  products sold after June 30, 2008, minus the cost of goods sold and other direct sales

23  and manufacturing costs that MGA can specifically establish to the Monitor.[3]

---

24
25  [1]  Mattel's Memorandum Regarding the Escrow of Bratz Profits, date May 27, 2009 ("Mattel's Mem."), sets forth the categories of expenses that should and should
26  not be properly deducted. See Mattel's Mem. at 8-10.

27  [2]  See ████████████████████████████████████████████

28  [3]  See Mattel's Mem. at 8-10 regarding the appropriate deduction of costs.

**B.**   **MGA's Effort to Define Profit According to Mattel's Ownership is Wrong as a Matter of Law**

MGA uses what is supposed to be a brief defining Bratz profits to argue instead that Mattel, when it makes products pursuant to Mattel's own rights in Bratz as found by the jury and the Court, is supposedly prohibited from using "those original protectible elements" which MGA added to Bryant's design. (MGA Mem. at 4.) This argument is irrelevant to what profits MGA should be required to escrow. It is also legally wrong.

First, what Mattel does or does not own and what Mattel can or cannot make is wholly irrelevant to what portion of MGA's profits arising from its continued, willful infringement should be escrowed. The issue is MGA's past and ongoing sales, not Mattel's future sales. What expenses MGA is allowed to deduct turns on its willfulness, not the originality of its designs. The only issue as to which MGA's contributions are even relevant is apportionment, if it is allowed, and apportionment percentages hardly give MGA derivative rights.

Second, MGA is mistaken in suggesting that it has some protectable interest in features of a doll design it stole. MGA has no such rights; even the few authorities it cites fatally contradict its position. For example, <u>Dam Thing from Den. v. Russ Berrie & Co.</u>, 290 F.3d 548 (3d Cir. 2002), by no means supports MGA's argument. At issue in <u>Dam Things</u> was a unique provision of the Copyright Act relating to restored copyrights of foreign authors that provides a "special dispensation" for works that would otherwise be considered infringing. <u>Dam Things</u>, 290 F.3d at 563. Contrary to MGA's assertions now, the court expressly recognized that an infringer ***cannot*** claim to have, through independent ingenuity, created a protectable work where it is founded in the first instance (as MGA's Bratz was) on infringement:

> An author's right to protection of the derivative work only extends to the elements that he has added to the work; he cannot receive protection for the underlying work. ***Furthermore, if the underlying work is itself protected by copyright, then he will receive no protection at all; on the***

-3-

*contrary, he is a copyright infringer, because in order to create his work he has copied the underlying work.*

Dam Things, 290 F.3d at 563 (emphasis added). The Seventh Circuit reached the same conclusion in Pickett v. Prince, 207 F.3d 402 (7th Cir. 2000), where an infringer argued that because of his addition of "original elements," he had a protectable interest, and sued on that basis. Id. at 406. The Court held that because the infringer "had no right" to infringe the underlying work, he could not claim any protectable interest, regardless of originality. Id.; see also Anderson v. Stallone, 1989 WL 206431, at *9 (C.D. Cal. Apr. 25, 1989) ("Nor can he provide a single case that stands for the extraordinary proposition he proposes here, namely, allowing a plaintiff to sue the party whose work he has infringed upon for infringement of his infringing derivative work."). Simply put, MGA cannot claim to have a protectable interest that was in the first instance based, as here, on infringement of Mattel's intellectual property.[4]

Rehashing arguments it made previously, MGA also asserts that "[b]ecause Mattel did not pursue any damages for trademark infringement" and "did not even seek its injunction pursuant to trademark law," Mattel is entitled to "no additional profits beyond those attributable to its copyrights." (MGA Mem. at 11). MGA misses the point. An infringement action under trademark law is not and was not Mattel's *exclusive* remedy. Mattel appropriately sought a constructive trust. The Court found, with good reason, that MGA held those marks in "constructive trust in favor of

---

[4]    Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27, 34 (2d Cir. 1982), on which MGA relies, has been soundly rejected by numerous courts. See, e.g., Pickett, 207 F.3d at 406 (noting the "dictum in [Eden Toys] that a stranger can make a derivative work without the permission of the owner of the copyright of the original work if the original work does not "pervade" the derivative work" and concluding that "[t]he suggestion, if taken seriously (which it has not been), would inject enormous uncertainty into the law of copyright and undermine the exclusive right that section 106(2) gives the owner of the copyright on the original work.").

1  Mattel."[5]   MGA's argument, which in unsupported by any authority, is wholly
2  irrelevant to the equitable remedy to which Mattel is now entitled.  See Columbia
3  Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg., 367 F.2d 308,
4  312 (2d Cir. 1966) (affirming trial court's imposition of constructive trust over
5  trademark and award of damages for use during pendency of action).

6  **C.   MGA Has Failed to Meet Its Burden**

7          Under copyright law, MGA, as the adjudged infringer, bears the burden of
8  proving its deductible expenses and any apportionment.  See 17 U.S.C. § 504(b); Frank
9  Music Corp., 772 F.2d at 516; Kamar Int'l, Inc. v. Russ Berrie & Co., Inc., 752 F.2d
10 1326, 1332 (9th Cir. 1984).  In its opposition, MGA does not even attempt to meet this
11 burden.

12         While it ultimately concedes that some escrow is appropriate,[6] MGA
13 makes no attempt show that any of its ***post-verdict*** sales are not infringing and admits
14 that it simply does not know "the proper allocation of expenses and profits" for any
15 sales of Bratz products since August of 2008.[7]  MGA has thus failed to meet its burden,
16 and any doubts on this score must be resolved against MGA as the wrongdoer.
17 "[W]hen a party frustrates proof of damages, either by withholding facts or through
18 inaccurate record-keeping, any doubts about the actual assessment of damages will be
19 resolved against that party, and the fact-finder may calculate damages at the highest
20 reasonably ascertainable value." Chesa Intern., Ltd. v. Fashion Associates, Inc., 425 F.
21 Supp. 234, 238 (S.D.N.Y. 1977) (citing Westinghouse Elec. & Mfg. Co. v. Wagner
22 Elec. & Mfg. Co., 225 U.S. 604 (1912); Deering, Milliken & Co. v. Gilbert, 269 F.2d

23

24 [5]  Dec. 3 Order re Constructive Trust at ¶ 1. And when MGA made similar
25 arguments previously, the Court made this same point: "[The Court]: Not seeking a
   trademark is not the same as not seeking a constructive trust over the name or the
26 benefits derived from the name." Nov. 10, 2008 Hearing Tr. at 7:12-14.
27 [6]  MGA Mem. at 8 ("Mattel is only entitled to escrow of a small portion of
   MGA's Bratz profits").
28 [7]  MGA Mem. at 2 n.2.

1   191 (2d Cir. 1959)); see also Three Boys Music Corp. v. Bolton, 212 F.3d 477, 487 (9th
2   Cir. 2000) (under § 504(b), "a court should err on the side of guaranteeing the plaintiff
3   a full recovery") (quotation omitted); Frank Music, 772 F.2d at 514 ("Any doubt as to
4   the computation of costs or profits is to be resolved in favor of the plaintiff").  As a
5   result, as between escrowing too much and too little, the uncertainty must weigh against
6   MGA.  Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 261-62 (1916)
7   (holding, in trademark infringement case, it as an "established principle [] of equity"
8   that a defendant may not defeat full recovery by "confusing his own gains with those
9   which belong to plaintiff, or because of the inherent impossibility of making an
10  approximate apportionment").

11          MGA also has repeatedly demonstrated that it cannot be trusted to
12  accurately self-report financial information. ██████████████████████████
13  █████████████████████████████████████████████████████████████████████
14  ████████[8]   As the Court has observed, MGA and Larian have been actively
15  engaged in financial transactions designed to frustrate Mattel's rights and this Court's
16  orders.[9]  MGA—█████████████████████████████████████████████████
17  ████████████[10]—should not be permitted to retain its Bratz profits, whatever they
18  are, for the purpose of funding additional willful infringement and corporate looting.
19  Nor should Mattel "bear the risk" that when a final accounting is made, MGA's
20  "profits" from its ongoing infringement will be gone.  Bigelow v. RKO Radio Pictures,
21  Inc., 327 U.S. 251, 265-66 (1946) (the "ancient" and "most elementary conceptions of
22  justice and public policy require that the wrongdoer shall bear the risk of the
23  uncertainty which his own wrong has created").

24
25
26
27
28

---

[8]   See Mattel's Mem. at 9-11.
[9]   April 27, 2009 Order at 16-17.
[10]  See Durkin Report at 15-24.

1  **II.   THERE SHOULD BE NO APPORTIONMENT OF THE PROFITS**

2       **PUT INTO ESCROW**

3       MGA offers a range of possible apportionment percentages which

4  purportedly set forth the "maximum" percentage of its profits (whatever they are, and

5  however they are defined) which can be escrowed.  MGA does not explain, however,

6  how the jury's damages awards based on *different* infringements could somehow

7  control the apportionment percentage to be applied now.  Nor does it establish that

8  there should be any apportionment of the profits to be escrowed at all, let alone on the

9  current record.  There should not be.

10      **A.   The Jury's Alleged Apportionment Findings Do Not Apply To**

11           **Infringements Not Before The Jury**

12      Attempting to rehash its prior arguments about the jury verdict, MGA

13  devotes most of its brief to various, far from consistent interpretations of the jury's

14  verdicts it claims are possible, concluding that between 1 and 24 percent of its profits

15  should be escrowed.  MGA all but concedes, however, that the jury's prior damages

16  verdicts cannot possibly apply now to an accounting of profits from infringements that

17  had not even occurred when the jury reached its verdicts.  Rather than dispute this fact,

18  MGA merely argues about its consequences:  "If Mattel proposes or the Court finds

19  that the jury's determination of historical damages is irrelevant to Mattel's damages

20  going forward under the December 3 orders, the MGA Parties respectfully submit that

21  an evidentiary hearing is required so that both Mattel and the MGA Parties can make

22  the appropriate showings." (MGA Mem. at 3 n.3.)  MGA thus never defends its

23  assumption that the jury found some hypothetical apportionment as to some MGA

24  infringements which apply now to other MGA infringements that were never before the

25  jury.  That baseless assumption, as MGA recognizes by its inability to defend it, is

26  unsupportable. See, e.g., Snider v. Consol. Coal Co., 973 F.2d 555, 559 (7th Cir. 1992)

27

28

-7-

1   (court not bound by jury finding where all relevant evidence was not introduced before
2   jury).[11]

3          Nor has MGA shown that the jury actually determined an appropriate
4   apportionment percentage to apply now, even if MGA's recent infringements had been
5   before the jury (which they were not). Instead, as it has before, MGA offers "various
6   guesses" as to the meaning of the jury's verdicts (Dec. 3, 2008 Minute Order at 10); as
7   it has before, the Court should reject those guesses. A court is only bound as to
8   findings "necessarily and *actually* decided by the jury." Roberts v. Coll. of the Desert,
9   870 F.2d 1411, 1418 (9th Cir. 1988) (italics in original) (internal citations omitted).[12]
10  The jury was not asked to make specific findings regarding apportionment here. Just as
11  "it is not possible to know" what factual findings the jury actually made about the scope
12  of infringement (as MGA acknowledged[13]), it is equally impossible to know what
13  factual findings the jury made about apportionment. There are numerous possible
14  explanations for the jury's verdicts, as Mattel has shown before.[14] MGA's speculations
15  do not control.

16

17

---

18  [11]  The jury could not possibly have determined *future* profits when sitting last
19  summer since future damages were not available to Mattel. See 6 Patry on
20  Copyright § 22:101 ("Future damages are not awardable"); id. § 22:116 (same,
    regarding "future[] profits").
21  [12]  See generally Mattel's Reply in Support of Motion for Permanent Injunction,
    dated Oct. 22, 2008 ("Mattel's Injunction Rep."), at 1-2.
22  [13]  See MGA's Emergency Motion for Stay Pending Appeal, at 30.
23  [14]  See Mattel's Injunction Rep. at 4. For example, the jury could have based its
    award on MGA's assertion that it was in dire financial straits as a result of the Phase
24  1(a) verdict. See, e.g., Trial Tr. at 6392:9-6393:7; 6395:1-6396:24; 6398:16-
25  6399:16; 7760:1-17. Or it may have taken into account the evidence introduced by
    MGA of the likelihood of injunctive relief and the impact such relief would have on
26  MGA's ability to satisfy a damages award. See, e.g., Trial Tr. at 6385:17-6386:14.
27  The jury may also have been influenced by Larian's perjurious testimony that
    Bryant told him, and that Larian believed, that Bryant had not created Bratz while
28  employed by Mattel.

1    There is nothing technical or semantic about the differences between pre-
2  and post-verdict infringement.  The prior apportionment analyses of the parties and the
3  evidence before the jury focused on a broad universe of products, most of which are no
4  longer at issue.[15]  The differences are material.  For example, MGA trumpets Mr.
5  Meyer's trial testimony that 59.6% of MGA's $3.1 billion in pre-trial Bratz revenues
6  were "derived from Bratz products other than the core fashion dolls (such as play sets,
7  clothing, and electronics, as well as other product lines such as the Bratz Boyz and the
8  Bratz Kidz)."[16] ████████████████████████████████████
9  ██████████████████████████[17]  MGA proclaims that its
10 "independent contributions" to non-doll products "cannot be ignored or taken away,"
11 but it has not shown that such contributions are even at issue with the products MGA is
12 making now.  Meyer testified at trial about apportionment factors like "accessories" and
13 "themes" that MGA fails to show apply to its post-verdict sales.[18]  What the jury found
14 before, when a different slate of products was before it, has neither a legal nor a logical
15 bearing on what apportionment—if any—should be made as to post-verdict sales.  See,
16 e.g., Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1317 (Fed. Cir. 2007)
17 (previously cited by MGA) ("[P]re-suit and post-judgment acts of infringement are
18 distinct, and may warrant different royalty rates given the change in the parties' legal
19 relationship and other factors."); Joyal Products, Inc. v. Johnson Elec. North America,
20 Inc., 2009 WL 512156, at *13 (D.N.J. Feb. 27, 2009) ("Case law is clear that the
21 calculus for determining a post judgment royalty is not the same as that for determining
22 a reasonable royalty based upon pre-judgment infringement.").
23
24  [15]  Because MGA has continued to sell older products, some products before the
25  jury may now be at issue again, but it is impossible to even begin to guess what the jury's apportionments findings were on a product by product basis.
26  [16]  MGA Mem. at 6.
27  [17]  See ██████████████████
28  [18]  See Expert Report of Paul K. Meyer, dated February 11, 2008 ("Meyer Report"), at 15, Proctor Decl., Ex. 2; Trial Tr. at 7748:17-7753:25, 7765:1-7783:20.

**B.** **There Should Be No Apportionment Of The Profits To Be Escrowed**

Whether or not MGA will eventually be able to prove, as is its burden, that some of its profits from post-verdict sales were derived from non-infringing factors, there should be no apportionment of the profits that MGA should be required to escrow. As discussed above and in prior briefing, the escrow should include funds sufficient to compensate Mattel once a final amount owed by MGA is determined. It is very likely, and certainly possible, that the final amount owed by MGA will not reflect any deductions for apportionment. Hence no such deductions should be made now.

███████████████████████████████████████ MGA suggests it has made "non-trivial contributions" to the core dolls which justify apportionment (MGA Mem. at 5), but the Leahy and Garcia testimony it cites certainly need not be accepted.[19] Nor is the argument even relevant to infringement or apportionment. As the Court has found before, "[i]f the copyrighted portions are so intermingled with the rest of the copyrighted work that they cannot well be distinguished from it, the entire profits realized by the defendant are to be given to the plaintiff," and "the benefit of the doubt should be given to Mattel and not defendants."[20] It is undisputed here—and MGA conceded at trial[21]—that no apportionment of the production Bratz sculpt is or could be warranted for this reason. Moreover, no apportionment is required or even permitted as

[19] Again rehashing prior, rejected arguments that have little or no relevance here, MGA selectively relies on a few snippets of Leahy's and Garcia's self-serving testimony about the supposedly minor differences between Mattel's Bratz works and the final Bratz doll sculpt. They are hardly enough to dispute Bryant's testimony that the final Bratz sculpt was created based on his drawings (Trial Tr. at 6665:8-6666:10), Leahy's admissions that Bryant gave her his drawings so she could do the sculpt (Trial Tr. at 4311:15-4312:15; 6839:18-22), or Garcia's testimony that she "asked [Leahy] to create a sculpt to match what she understood to be the drawings in Carter's portfolio." (Trial Tr. at 644:25-645:6).
[20] See Phase B Jury Instructions As Given, No. 42.
[21] See Trial Tr. at 7461:7-1763:20.

1  to Mattel's state law claims for profits disgorgement.[22]  When the facts are eventually
2  found, the fact that there should be no apportionment as to post-verdict sales is likely to
3  be found.

4          This is all the more true given Mattel's now-recognized rights in the Bratz
5  mark.  MGA suggests that the Phase 1 jury's profits award might have accounted for
6  Mattel's rights to the Bratz "name" and pieces together a handful of references to the
7  "name" from the months of trial, but MGA hardly can show that the jury actually
8  awarded profits based on MGA's wrongful use of the Bratz mark.  In fact, MGA
9  expressly argued the jury should not do so during the damages phase.[23]  Adding the
10 Bratz mark to the equation changes the landscape.  In fact, the value of the "name" and
11 its contribution to revenues was originally one of the apportionment "theories"
12 proffered by MGA's experts.[24]

13         Finally, as Mattel has shown MGA's post-verdict infringements have been
14 willful.[25]   MGA will not be entitled to any apportionment whatsoever for this
15

16 [22]  See Phase B Jury Instructions As Given, No. 39.
17 [23]  For example, in MGA's Phase 1B opening statements, its counsel stated:
    MR. NOLAN: *Today Bratz is a trademark, a name, a claim that is not*
18  *involved in this case.  Bratz, as you heard in Phase 1-A, was purchased by*
    *Mr. Larian, and we own the trademark.*  This case is also --
19  MR. PRICE: Objection. That misstates the prior evidence in the case.
20  Inappropriate legal argument.
    THE COURT: Sustained. This is not about trademark. Let's move on,
21  Counsel.
22  MR. NOLAN: That was the point. Thank you.
    (Trial Tr. 5502:12-22 (emphasis added).
23 [24]  See Meyer Report at 38.  MGA's own expert, Dr. Erich Joachimsthaler,
24  concluded in Phase 1 that the Bratz brand name contributes greatly to Bratz
    revenues. ████████████████████████████
25  ████████████████████████████████████████
26  ████████████████████████████████████
27           See Expert Report of Dr. Erich Joachimsthaler, dated February 11,
    2008, at 6, Proctor Decl., Ex. 3.
28 [25]  See Mattel's Mem. at 2-4.

-11-

1  independent reason as well.  See, e.g., Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996,

2  1010 (2d Cir. 1995) (rejecting defendant-infringer's challenge to trial court's decision

3  not to apportion profits from infringement because, in part, the district court found "that

4  [defendant's] infringement was willful").[26]

5       In sum, there is ample reason to think that, when a final apportionment

6  determination is made, no apportionment will be found.  To ensure that there is

7  sufficient money to cover the amounts Mattel will ultimately be due under the

8  accounting, the escrow should include all profits, unapportioned.

9  **III.  MATTEL'S ENTITLEMENT TO AN ACCOUNTING OF PROFITS**

10      **DOES NOT TURN ON THE EXISTENCE OF A FINAL INJUNCTION**

11      **ORDER**

12      MGA urges—without authority—that because the injunction Orders did

13  not become final until April 27, 2009, "the MGA Parties should . . . not be required to

14  account for or hold in escrow any profits" earned from post-verdict infringing sales

15  prior to that date.  (MGA Mem. at 8.)  That unsupported argument makes no sense.

16  Mattel's entitlement to an accounting and escrow of post-verdict profits is based on

17  _____

18  [26]  See also ABKCO Music, Inc. v. Harrisongs Music, Ltd., 508 F. Supp. 798, 802 n.10 (D.C. N.Y. 1981) ("Had I earlier found that Harrison deliberately

19  plagiarized the music, I would award the entire earnings of 'My Sweet Lord.'"). This is also the rule in the trademark context. See, e.g., W. E. Bassett Co. v.

20  Revlon, Inc., 435 F.2d 656, 664 (2d Cir. 1970) (a full accounting for all profits "is essential to deter companies from willfully infringing a competitor's mark, and the

21  only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose all its profits from its use of

22  the infringing mark."); Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.,

23  349 F.2d 389, 396 (2d Cir. 1965) (full accounting of all profits should be awarded

24  for willful trademark infringement); Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 586-87 (5th Cir. 1980) ("The district court properly ordered Cawy to account

25  for its entire gross profit from the sale of 'Cristal'."); Joy Mfg. Co. v. CGM Valve & Gauge Co., 730 F. Supp. 1387, 1395 (S.D. Tex. 1989) ("Because CGM's actions

26

27  were willful, the plaintiff is entitled to recover all of CGM's profits from any infringing sales, regardless of whether the use of the plaintiff's mark was a causal

28  factor in the sale").

-12-

MATTEL'S RESPONSE TO MGA'S STATEMENT RE ESCROW OF BRATZ PROFITS

1  MGA's ongoing infringement and equitable considerations, not the existence of an
2  appealable injunction.

3        MGA makes no attempt to articulate why a final injunction order would be
4  necessary to trigger the right to an accounting and escrow of profits from post-verdict
5  infringing sales.  Instead, MGA merely notes the Court did not expressly "condition" its
6  Orders on an accounting or escrow of profits and then MGA "presumes" that the Court
7  did not intend to impose such relief until the injunction Order became "final" on April
8  27, 2009.  (MGA Mem. at 1-2.)  MGA's facile conclusion ignores that it has been
9  infringing not just since April 27 but before, rendering it subject to profits
10  disgorgement not just since April 27 but before.[27]  MGA's conclusion also ignores that
11  the Court *expressly* stated its intention that the accounting and escrow of profits cover
12  the period beginning with "the return of the jury verdict in this case."[28]  And it ignores
13  that the Court did not order the accounting and escrow in connection with the April 27,
14  2009 Order making the injunction Order final, but rather did so in connection with the
15  order appointing a Monitor to "monitor, supervise and oversee the exploitation of the
16  Bratz Assets."[29]  The Court acted well within its equitable powers in doing so.

17        Furthermore, as set forth in Mattel's Memorandum, the appropriate date on
18  which the accounting should commence is July 1, 2008.  Though the damages verdict
19  was issued in August, MGA provided updated financials only through June 30, 2008,

---

[27]  *See, e.g.,* Itron, Inc. v. Benghiat, 2003 WL 22037710, at *15-16 (D. Minn. Aug. 29, 2003) (noting that courts "routinely grant motions for further accounting where the jury did not consider certain periods of infringing activity" and order accounting for period of infringement for which "there was no specific data about the sales" presented to jury) (internal quotation omitted).
[28]  *See* May 21 Minute Order at 13.
[29]  Id.

MATTEL'S RESPONSE TO MGA'S STATEMENT RE ESCROW OF BRATZ PROFITS

1  and only its profits through that date were before the jury.[30]  All profits it obtained after

2  that date should be escrowed.[31]

3

4  DATED:  May 29, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                                By /s/ Michael T. Zeller

7                                   Michael T. Zeller
                                   Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

[30]  See Mattel's Mem. at 11 n.28; see also Itron, 2003 WL 22037710 at *15-16
(ordering accounting where jury was not presented with evidence regarding a certain
period of infringement).
[31]  Because MGA and Larian have used IGWT, Larian's alter ego, to funnel profits
from Bratz sales out of MGA, IGWT should also be held to account for its post-verdict
profits from Bratz sales, which should also be escrowed.