1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4                        - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                        - - -

7   CARTER BRYANT, ET. AL.,          )
                                     )
8                    Plaintiffs,  )
                                     )
9            vs.                     )   No. ED CV 04-09049
                                     )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,           )
                                     )
11                   Defendants.  )   MOTION; OSC HEARING
    _____)
12  AND CONSOLIDATED ACTIONS,        )
    _____)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Riverside, California

17                Monday, February 25, 2008

18                     11:24 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              Federal Official Court Reporter
24              3470 12th Street, Rm. 134
              Riverside, California  92501
25                    951-274-0844
                  WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2

 3
     on behalf of MATTEL:
 4
                         QUINN EMANUEL
 5                       By:  JOHN QUINN
                         BY:  JON COREY
 6                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 7                       LOS ANGELES, California  90017
                         213-624-7707
 8

 9
     ON BEHALF OF MGA ENTERTAINMENT:
10
                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
11                       BY:  THOMAS J. NOLAN
                         BY:  CARL ALAN ROTH
12                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
13                       213-687-5000

14

15   On behalf of McFARLAND, CLOONAN, MARLOW & LEAHY:

16                       Keats Mcfarland & Wilson llp
                         By:  Larry W. Mcfarland
17                       9720 Wilshire Boulevard
                         Beverly hills, ca  90212
18                       310-777-3750

19

20

21

22

23

24

25
```

1                          I N D E X

2                                                        Page

3    MOTION ........................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        FEBRUARY 25, 2008                    BRYANT V. MATTEL

1      RIVERSIDE, CALIFORNIA; MONDAY, FEBRUARY 25, 2008; 11:24 A.M.

2                              -oOo-

3          **THE CLERK:**  CALLING CASE NUMBER ED CV 04-9059, ITEM

4    NUMBER 11, CARTER BRYANT VERSUS MATTEL, AND THE RELATED

5    CONSOLIDATED CASES AND CASE NUMBERS.                          11:24

6          MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE

7    YOUR APPEARANCES FOR THE RECORD.

8          **MR. QUINN:**  JOHN QUINN AND JON COREY APPEARING FOR

9    MATTEL.

10         **MR. NOLAN:**  TOM NOLAN AND CARL ROTH ON BEHALF OF THE    11:24

11   MGA PARTIES, INCLUDING ISAAC LARIAN.

12         **THE COURT:**  GOOD MORNING TO YOU ALL.

13         WE'VE GOT A COUPLE OF MATTERS TODAY.  WE'VE GOT THE

14   MOTION REGARDING HARD DRIVES; WE'VE GOT THE MOTION TO REVIEW

15   THE DISCOVERY MASTER'S DECISION CONCERNING THE PRODUCTION OF    11:24

16   THE HARD DRIVES AS SET FORTH IN THE DECEMBER 31ST, 2007 ORDER;

17   IT'S MATTEL'S MOTION.  THERE'S THE OSC REGARDING THE SERVICE OF

18   THE DEPOSITION FOR MR. MCFARLAND, WHO'S PRESENT, AND ARANT,

19   HALPERN AND MARLOW.

20         THEN I ALSO HAVE JUST RECEIVED THIS EX-PARTE              11:25

21   APPLICATION MADE BY MGA CONCERNING A VARIETY OF MATTERS WHICH

22   CAME IN OVER THE WEEKEND.  THIS IS TO COMPEL THE DEPOSITIONS OF

23   MR. BOUSQUETTE AND TINA PATEL.

24         **MR. NOLAN:**  BOUSQUETTE AND TINA PATEL, YOUR HONOR.

25         **THE COURT:**  LET ME BEGIN WITH THAT, BECAUSE I THINK    11:25

1   THAT MIGHT BE THE MOST STRAIGHTFORWARD.

2          TO A CERTAIN EXTENT, MGA'S PROOF OF SERVICE KIND OF

3   ANSWERS THE QUESTION.  IT LISTS IT AS A DISCOVERY MATTER.  AND

4   I TEND TO AGREE.

5          WHY ISN'T THIS BEFORE THE DISCOVERY MASTER?          11:25

6          **MR. NOLAN:**  IT'S QUITE EASY, YOUR HONOR.

7          FIRST OF ALL, THE DEPOSITIONS OF BOUSQUETTE AND PATEL

8   GO TO THE QUESTION OF THE COURT'S ORDER AS TO THE DIFFERENCE

9   BETWEEN PHASE ONE AND PHASE TWO.  THAT IS NOT AN ISSUE THAT HAS

10  EVER BEEN BEFORE JUDGE INFANTE.                              11:26

11         WHEN WE WERE HERE IN FEBRUARY LAST, THE COURT

12  INDICATED THAT YOU WOULD EXPECT US TO WORK OUT WHETHER OR NOT A

13  WITNESS HAD ISSUES RELATING TO PHASE ONE OR IF IT WAS SOLELY

14  PHASE TWO.

15         YOUR HONOR, MR. BOUSQUETTE AND MS. PATEL HAVE BEEN     11:26

16  IDENTIFIED BY US AS PHASE ONE FROM THE VERY BEGINNING OF THE

17  CASE.  IN FACT, YOUR HONOR, THE REASON WHY WE FILED THIS MOTION

18  AS AN EX-PARTE -- AND I KNOW LISTENING ALREADY TO WHAT YOU HAD

19  THIS MORNING, HOW OVERBURDENED YOU ALREADY ARE -- BUT THE

20  CANCELLATION OF THESE TWO DEPOSITIONS, YOUR HONOR, WAS DONE ON  11:26

21  THE DAY THE EXPERT REPORTS WERE DUE.  THE NOTICE CAME TO US AT

22  4:18 IN THE AFTERNOON THAT THEY WERE UNILATERALLY BEING

23  CANCELLED FOR FEBRUARY 15TH AND, I BELIEVE, FEBRUARY 18TH.

24         THESE DEPOSITIONS HAD BEEN PREVIOUSLY REPRESENTED

25  THAT WE WOULD BE ABLE TO TAKE THEM IN NOVEMBER; THEN WE WERE    11:27

1  GIVEN A DATE IN FEBRUARY WHEN THE COURT ISSUED THE ORDER SAYING

2  YOU HAD TO CONCLUDE DEPOSITION TESTIMONY BEFORE JANUARY 28TH

3  FOR PHASE ONE.

4          WE WROTE A LETTER AND SAID WE WILL TAKE THEIR

5  DEPOSITIONS IN CHICAGO, LOS ANGELES, OR ANYWHERE IN THE WORLD        11:27

6  FOR MR. BOUSQUETTE; MS. PATEL IS GENERALLY AVAILABLE HERE

7  LOCALLY.  THEY WROTE BACK AND SAID NO, FEBRUARY 15TH.

8          THE REASON WHY THIS IS KEY AND WHY IT IS NOT BEFORE

9  JUDGE INFANTE -- AND BY THE WAY, JUDGE INFANTE, JUST A

10 FOOTNOTE, JUDGE INFANTE HAS UNDER SUBMISSION 31 MOTIONS.  THIS       11:27

11 CAN'T BE HEARD.

12          THESE DEPOSITIONS WERE CANCELLED ON THE SAME DAY THE

13 EXPERT REPORTS WERE FILED.  THEY DEAL WITH ISSUES AND HAVE

14 EVIDENCE RELATED TO MATTERS THAT ARE RAISED IN THE EXPERT

15 REPORTS.  MATT BOUSQUETTE WAS THE PRESIDENT OF MATTEL BRANDS.        11:28

16 MATT BOUSQUETTE IS SITTING IN AND TAKES THE LEAD IN AN

17 IMPORTANT MEETING IN 2004 WITH RESPECT TO CHANGES AND THE

18 CONFIDENTIALITY AGREEMENT.  BUT MOST IMPORTANTLY,

19 MATT BOUSQUETTE -- WHO, BY THE WAY, WAS FIRED BY MR. ECKERT,

20 AND THAT'S BEEN CONFIRMED IN MR. ECKERT'S DEPOSITION, AND PAID       11:28

21 $750,000 BY MATTEL TO COOPERATE IN THIS LITIGATION FOR THEM --

22 SITS AT A TIME WHEN MATTEL'S MARKETING DEPARTMENT IS REPORTING

23 TO THE BOARD OF DIRECTORS, AS WELL AS KEY MANAGERS, INCLUDING

24 MATT BOUSQUETTE, THAT 'THE HOUSE IS ON FIRE' -- MATTEL -- THE

25 BARBIE BRAND WAS IN CRISES; IT WAS A GENOCIDE AGAINST BARBIE;        11:28

```
 1   IT WAS GOING TO BE AN ALL-OUT WAR, AND ALL ATTRIBUTING IT TO

 2   THE SUCCESS OF BRATZ.

 3          THE COURT:  I NEVER THOUGHT I'D HEAR THE WORD

 4   'GENOCIDE' AND 'BARBIE' IN THE SAME SENTENCE.  BUT YOU HAVE

 5   SUCCEEDED IN DOING THAT.                                        11:29

 6          MR. NOLAN:  ACTUALLY THOSE AREN'T MY WORDS; THOSE

 7   WERE THE WORDS WITHIN THE DEPARTMENT AT MATTEL.

 8          NOW, MATTEL IS PROJECTING, OBVIOUSLY, A DIFFERENT

 9   FRONT IN THIS LAWSUIT, AND UNDER THE EXPERT BRANDING REPORTS

10   THAT WERE SUBMITTED BY BOTH SIDES, BOUSQUETTE, AS WELL AS OUR   11:29

11   EXPERT REPORTS, IT ALL GOES TO A PROPORTIONALITY OF WHAT WILL

12   BE THE COPYRIGHT DAMAGES, IF ANY, THAT IS ALIGNED TO MATTEL.

13          THE COURT:  PUTTING ASIDE THE SUBSTANCE OF THE

14   TESTIMONY FOR A MOMENT, WHAT I INDICATED TO YOU, CERTAINLY, WAS

15   THAT DURING THIS MONTH OF FEBRUARY, WHICH WE ARE ABOUT TO RUN   11:29

16   OUT, THAT THE FOCUS SHOULD BE ON PHASE ONE AND THAT I TRUSTED

17   THAT COUNSEL WOULD BE ABLE TO WORK THAT OUT AMONGST THEMSELVES,

18   AND THAT IF THERE WAS STILL SOME OVERLAP WITH PHASE ONE AND

19   PHASE TWO, THAT COULD GO FORWARD AS WELL, BUT LET'S TRY TO GET

20   PHASE ONE DEPOSITIONS.                                         11:30

21          LET ME ASK MR. QUINN.

22          IF MR. NOLAN IS SAYING THIS IS A PHASE ONE WITNESS

23   FOR HIM, WHY WAS THE DEPOSITION CANCELLED?

24          MR. QUINN:  YOUR HONOR, MR. COREY IS PREPARED TO

25   ADDRESS THAT, IF THAT'S ALL RIGHT.                             11:30
```

```
1              THE COURT:  THAT'S FINE.

2              MR. COREY:  IT WAS CANCELLED FOR THE REASON THAT IT'S

3    A PHASE TWO DEPOSITION.

4              THE COURT:  THAT'S NOT YOUR CALL TO MAKE.  THAT'S

5    MR. NOLAN'S CALL TO MAKE.  I'M NOT GOING TO HAVE MR. NOLAN       11:30

6    DECIDING YOUR WITNESS LIST OR WITNESS ORDER, AND I'M NOT GOING

7    TO HAVE YOU DECIDING HIS.

8              HOW COULD YOU KNOW WHAT HE'S GOING TO BE DOING IN

9    PHASE ONE?

10             MR. COREY:  IF I MAY, BECAUSE HE'S TOLD ME WHAT HE'S    11:30

11   GOING TO DO -- LET ME TAKE A STEP BACK.

12             BECAUSE I KNOW FROM HIS INITIAL DISCLOSURES EXACTLY

13   WHAT HE IDENTIFIED WITH RESPECT TO MR. BOUSQUETTE.

14             IF I MAY READ, YOUR HONOR.

15             "MGA BELIEVES MR. BOUSQUETTE IS A FORMER PRESIDENT OF   11:30

16   MATTEL BRANDS.  MR. BOUSQUETTE MAY POSSESS KNOWLEDGE OF

17   MATTEL'S SERIAL COPYING OF MGA'S DISTINCTIVE TRADE DRESS,

18   TRADEMARKS, PRODUCT PACKAGING, THEMES, IDEAS AND ADVERTISING.

19   MATTEL'S DELUSION OF MGA'S FAMOUS MARKS; MATTEL'S INTERFERENCE

20   WITH MGA'S ADVERTISING EFFORTS; MATTEL'S THREATS AND            11:31

21   INTIMIDATION OF RETAILERS, SUPPLIERS, LICENSEES, DISTRIBUTORS,

22   MANUFACTURERS AND FORMER EMPLOYEES AND FREELANCERS; MATTEL'S

23   IMPROPER INFLUENCE OF STANDARD SETTING AND INDUSTRY

24   ORGANIZATIONS; MATTEL'S MANIPULATION OF MGA'S RETAIL DISPLAYS

25   AND OTHER ASPECTS OF MATTEL'S UNCLEAN HANDS."                    11:31
```

1      **THE COURT:**  I THINK I CAN SEE HOW A GOOD NUMBER OF

2   THOSE ISSUES GO TO PHASE TWO.  BUT I CAN ALSO SEE HOW SOME OF

3   THOSE MIGHT BE RELATED TO PHASE ONE.

4      WHAT I'VE TRY TO AVOID IN THIS WHOLE PROCESS IS

5   PRECISELY THIS, AND THAT'S WHY I TRIED TO CAREFULLY WORD THE        11:31

6   ORDERS CONCERNING PHASE ONE, PHASE TWO, BIFURCATION, NOT TO

7   APPLY TO DISCOVERY.  BECAUSE I DON'T WANT TO BE IN A POSITION

8   UP HERE HAVING HEARINGS OVER WHAT'S A PHASE ONE WITNESS AND

9   WHAT'S A PHASE TWO WITNESS, AND WASTING A TREMENDOUS AMOUNT OF

10  TIME AND RESOURCES, NOT ONLY THE COURT'S, BUT THE PARTIES,         11:31

11  HAVING THIS KIND OF DISPUTE.  I REALLY WANT TO DEFER THIS

12  ISSUE, AND I'VE TRIED TO DEFER THIS ISSUE, TO THE PARTIES TO

13  EITHER WORK OUT, OR, IF YOU CAN'T WORK IT OUT, JUST TAKE THE

14  DEPOSITION AND WE'LL MOVE FORWARD.

15     **MR. COREY:**  I THINK IF YOU CAN'T WORK IT OUT, THEN         11:32

16  IT'S PHASE TWO, IT'S STAYED, AND THEN NO DEPOSITION IS TAKEN.

17  AND IF THERE'S AN ISSUE, THEN IT SHOULD GO TO THE DISCOVERY

18  MASTER, AS WAS PROPERLY POINTED OUT.

19     BUT WHAT CAN HAPPEN -- AND THIS IS WHAT'S BEEN

20  HAPPENING, AND THIS HAS BEEN MATTEL'S CONCERN FROM DAY ONE --      11:32

21  IS FROM THE TIME THAT NEW COUNSEL HAS ENTERED THE CASE, THEY

22  HAVE ASKED FOR A STAY OF PHASE TWO DISCOVERY.  THEY FINALLY

23  HAVE IT, AND NOW THE ISSUES THAT THEY SEEK TO DEPOSE

24  MR. BOUSQUETTE ABOUT ARE ISSUES THAT, UP UNTIL NOW, LITERALLY

25  UP UNTIL THE DAY OF THE EXPERT REPORTS, WERE PHASE TWO ISSUES.     11:32

```
 1   AND NOW THEY ARE SAYING "WE THEY WANT TO DEPOSE MR. BOUSQUETTE

 2   AND MS. PATEL ABOUT WHAT MATTEL DID YEARS AFTER CARTER BRYANT

 3   LEFT, YEARS AFTER BRATZ WAS CREATED."

 4        I'VE LISTENED VERY CAREFULLY, AND I DIDN'T HEAR A

 5   REFERENCE TO CARTER BRYANT OR A REFERENCE TO THE CREATION OF     11:32

 6   BRATZ, WHICH THIS COURT HAS DECIDED ARE WHAT'S GOING TO BE

 7   DECIDED IN PHASE ONE.  SO FOR THEM TO COME BACK -- IT'S VERY

 8   LATE IN THE DAY -- AND SAY, 'WE WANT TO TAKE DISCOVERY, WE WANT

 9   TO ASK PEOPLE ABOUT WHAT MATTEL'S COMPETITIVE RESPONSE TO BRATZ

10   WAS.'                                                           11:33

11        THAT'S THE WHOLE REASON WE AGREED, ESSENTIALLY, TO

12   BIFURCATE PHASE ONE AND PHASE TWO.  BECAUSE WHATEVER MATTEL'S

13   RESPONSE MAY BE, IT DOESN'T MATTER UNTIL THERE'S A

14   DETERMINATION OF THE OWNERSHIP.

15        THE COURT:  MR. NOLAN, WOULD YOU CARE TO RESPOND?          11:33

16        MR. NOLAN:  YES.

17        I WANT TO RESPOND, FIRST OF ALL, THAT THE -- AND I'M

18   REALLY SURPRISED THAT THIS WAS DONE -- THE STATEMENT THAT

19   MR. COREY JUST READ TO YOU AND SAID THAT WAS FROM OUR INITIAL

20   DISCLOSURES, IN THEIR BRIEF AT PAGE 10, IT'S FOOTNOTE 33, IT    11:33

21   SAYS THAT WAS FILED DECEMBER 21ST OF 2007.

22        IN FACT, YOUR HONOR, IF YOU LOOK AT THEIR SUBMISSION,

23   IT'S EXHIBIT 12 -- IT'S HARD TO FIND BECAUSE THEY DON'T NUMBER

24   THE PAGES -- BUT IT IS, IN FACT, FILED SEPTEMBER 21ST, 2007.

25        NOW, WHAT HAS HAPPENED SINCE SEPTEMBER OF 2007?            11:34
```

FEBRUARY 25, 2008                    BRYANT V. MATTEL

1          MATTEL HAS PRODUCED NEARLY 900,000 -- AND I MAY BE

2    WRONG, BUT IT'S CERTAINLY WITHIN THAT NEIGHBORHOOD OF

3    DOCUMENTS -- ONCE WE HAD THE PRODUCTION AND WE SAW THE

4    RELEVANCE OF MR. BOUSQUETTE -- THAT DISCLOSURE, BY THE WAY, WAS

5    DONE BY O'MELVENY & MEYERS -- BUT IMMEDIATELY WE STARTED                11:34

6    NOTICING AND ASKING FOR DATES OF MR. BOUSQUETTE AND MS. PATEL.

7    IN FACT, EVERY TIME WE WERE HERE IN THOSE CONTENTIOUS HEARINGS

8    ON JANUARY 7TH AND FEBRUARY 4TH, BOUSQUETTE AND PATEL HAD

9    ALREADY BEEN TAKEN CARE OF; THEY HAD AGREED THEY WERE GOING TO

10   PRODUCE THESE.                                                         11:34

11          THESE ISSUES OF THE PROPORTIONALITY WITH RESPECT TO

12   DAMAGES HAVE NOTHING TO DO WITH UNFAIR BUSINESS PRACTICES.  IT

13   HAS EVERYTHING TO DO WITH THE WAY THEY FRAMED THE ISSUE BY

14   SUBMITTING THEIR BRANDING EXPERT FROM CAROL SCOTT AND OUR

15   EXPERT ON BRANDING, AND THAT IS, IF THERE ARE COPYRIGHT                11:35

16   DAMAGES -- AND THIS IS WELL SUPPORTED IN THE LAW, YOUR HONOR --

17   THOSE DAMAGES HAVE TO BE PROPORTIONED OUT TO WHAT WAS THE

18   PROTECTABLE COPYRIGHT PROPERTY.

19          WHAT MATTEL IS TRYING TO DO HERE -- AND THIS IS THE

20   FIRST TIME, YOUR HONOR, I'VE AUTHORIZED SEEKING SANCTIONS IN           11:35

21   THIS CASE -- IT IS A GAME THAT'S BEING PLAYED; THEY WANT TO DO

22   IT OVER.  THEY WANT A DO-OVER.  THEY WANT TO COME BACK HERE AND

23   UNLEASH PHASE TWO AGAIN.

24          I RESPECTFULLY SUBMIT, AND I THINK THIS HAS BEEN

25   BORNE OUT, THAT PART OF THIS STRATEGY HERE IS JUST TO BOMBARD          11:35

1   EVERYBODY WITH DISCOVERY.  RATHER THAN FOCUS ON THE ISSUES THAT

2   ARE GOING TO BE TRIED, THEY WANT TO KEEP REOPENING PHASE TWO;

3   THAT'S WHAT THIS IS ALL ABOUT.

4          WE NOTICED IT.  IT WAS COMMITTED.  WE DESCRIBED IT AS

5   A PHASE ONE.  AND THEY CAN'T UNILATERALLY DECIDE, YOUR HONOR          11:36

6   THAT, IT'S NOT PHASE ONE.

7          **THE COURT:**  I'M NOT FOLLOWING THAT.

8          HOW IS THAT AN EFFORT BY MATTEL TO -- ACTUALLY, THEY

9   ARE TRYING TO KEEP OUT PHASE TWO --

10         **MR. NOLAN:**  NO, YOUR HONOR.  IN THEIR PAPERS, WHAT         11:36

11  THEY SAY IS, IF YOU ALLOW BOUSQUETTE'S DEPOSITION TO GO

12  FORWARD, LET'S OPEN UP THE WHOLE THING.  THAT'S WHAT THEY ARE

13  DOING, YOUR HONOR, UNDER A GUISE OF SAYING A PROPORTIONALITY

14  UNDER THE COPYRIGHT DAMAGE ISSUE, WE'RE GOING TO BRING IN ALL

15  OF THIS OTHER STUFF.

16         THAT'S PHASE TWO.  IF THEY HAVE A DAMAGE CLAIM, IF

17  THEY CAN PROVE IT, THAT'S THE PHASE TWO TRIAL.

18         BUT THEY CAN'T UNLATERALLY DECIDE.

19         YOUR HONOR, ONE LAST POINT ON THIS.

20         WHEN THEY WROTE THE LETTER TO US, WE WERE SHOCKED            11:36

21  BECAUSE WE HAD BEEN WAITING FOR BOUSQUETTE'S DEPOSITION.  THEY

22  SAID 'WRITE US A LETTER, WE'LL HAVE A MEET AND CONFER.'

23         WE WROTE A LENGTHY LETTER MAKING ALL OF THESE

24  EXPLANATIONS.  NO RESPONSE, YOUR HONOR.  THEY JUST DISAGREED.

25  THEY WON'T MEET AND CONFER.  AND THAT'S WHY I RESPECTFULLY ASK       11:36

```
 1   NOT ONLY DO WE GET THE DATES, BUT THAT THOSE DATES BE ORDERED

 2   TO BE TAKEN IN SUCH TIME SO WE CAN HAVE HIM AVAILABLE FOR OUR

 3   REPLY EXPERTS.

 4           THAT'S WHAT THIS IS ALL ABOUT YOUR HONOR,

 5   RESPECTFULLY.                                                    11:37

 6           THE COURT:  WHEN, AGAIN, IS THE REPLY FOR EXPERTS

 7   NEEDED?

 8           MR. NOLAN:  MARCH 17.

 9           THE COURT:  COUNSEL, LET'S NOW TAKE UP THE MOTION

10   REGARDING THE HARD DRIVES.                                       11:37

11           MR. NOLAN:  YES, YOUR HONOR; THAT'S THE APPEAL FROM

12   MATTEL.

13           THE COURT:  YES.

14           MR. NOLAN:  I THINK, AGAIN, THE STANDARDS THAT ARE

15   APPLIED IN TERMS OF THE REVIEW BY THE DISCOVERY MASTER APPLY     11:37

16   HERE.

17           THE COURT:  THEY DO, CERTAINLY.

18           I HAVE A CONCERN, THOUGH, THAT THE DISCOVER MASTER

19   MAY HAVE NOT BEEN LOOKING AT THIS -- THE WAY THAT IT'S ARGUED

20   IS THAT THE HARD DRIVES ARE RELEVANT NOT SO MUCH TO GET THE      11:37

21   DOCUMENTS THEMSELVES THAT ALLEGEDLY HAVE BEEN DELETED, BUT TO

22   PROVE UP THE DELETION, WHICH IS A PREDICATE ACT OF THE RICO;

23   NAMELY, THAT DOCUMENTS WERE DELETED.

24           I'M CERTAINLY NOT SAYING THAT ANY OF THIS IS TRUE.

25           MR. NOLAN:  OF COURSE.  I UNDERSTAND THAT.               11:38
```

1        **THE COURT:**  RIGHT.  BUT THAT THE HARD DRIVES ARE

2   ACTUALLY RELEVANT TO PROVE UP THAT ELEMENT.

3        NOW, ADMITTEDLY, THIS IS A PHASE TWO ISSUE.  BUT THAT

4   BY ITSELF IS NOT A REASON NOT TO HAVE THIS ISSUE ADDRESSED NOW.

5   THE DISCOVERY MASTER HAS RULED ON IT.  I'M CONCERNED THE                    11:38

6   DISCOVERY MASTER MAY NOT HAVE FULLY APPRECIATED THE RELEVANCY

7   OR THE POTENTIAL RELEVANCY OF THE HARD DRIVES THEMSELVES TO

8   PROVE UP THE ALLEGATION THAT DOCUMENTS WERE DELETED IN ADVANCE

9   OF AN OFFICIAL PROCEEDING, SUCH AS A TRIAL, AND THAT THE HARD

10  DRIVES THEMSELVES NEED TO BE INSPECTED BY THE PLAINTIFFS FOR                11:38

11  THAT PURPOSE.

12        **MR. NOLAN:**  YOUR HONOR, I BELIEVE, ALTHOUGH I CAN'T

13  GET IN THE MIND OF JUDGE INFANTE, THAT THERE'S ONE THING THAT

14  CAN BE SAID ABOUT JUDGE INFANTE, AND THAT IS THAT HE LOOKS AT

15  EVERYTHING.  AND ONE THING THAT HE HAD IN FRONT OF HIM WAS                  11:38

16  THERE WERE OTHER HARD DRIVE DISKS THAT HE ORDERED TO BE

17  PRODUCED.  BECAUSE HE FOUND, FOR INSTANCE, IN THE CONTEXT OF

18  CARTER BRYANT, THAT THERE HAD BEEN A SUFFICIENT SHOWING TO

19  PROVE THAT THERE MAY BE A BASIS TO GO AND ASK FOR THE HARD

20  DRIVES, IN ITSELF; OVERRULE PRIVACY OBJECTIONS AND EVERYTHING              11:39

21  ELSE, AND JUST GO FOR IT.

22        THE OTHER HARD DRIVES THAT ARE IN ISSUE IN THIS

23  APPEAL, HE APPLIED THE SAME STANDARD; HE LOOKED AT IT AND FOUND

24  THAT THE SHOWING WAS INSUFFICIENT.  YOU CANNOT JUST MERELY

25  SPECULATE.  THERE HAS TO BE A GOOD FAITH SHOWING.                          11:39

```
 1          MATTEL DID NOT MEET THAT SHOWING IN FRONT OF
 2   JUDGE INFANTE, WHO WAS LOOKING AT IT IN THE CONTEXT OF 'I'VE
 3   GOT THIS ISSUE WITH OTHER PEOPLE.  I KEEP GOING BACK TO
 4   CARTER BRYANT.  I DO NOT SEE THE SAME SHOWING THAT WOULD ALLOW
 5   ME TO OVERRULE THE BASIC RULE OF PRIVACY AND ALL OF THE OTHER     11:39
 6   PROTECTIONS THAT ARE AFFORDED THERE.
 7          YOUR HONOR, I RESPECTFULLY SUBMIT THAT THIS IS JUST
 8   SIMPLY WHAT THE COURTS REFUSE TO ALLOW, AND THAT IS IN THE
 9   ABSENCE, THE ABSENCE, OF SPECIFIC ALLEGATIONS FOR A GOOD FAITH
10   PROOF OF PRODUCING THE HARD DRIVE DISKS IN FULL, YOU'VE GOT TO    11:40
11   HAVE A SHOWING THAT SOMETHING WAS DONE.
12          THERE'S NO EVIDENCE WITH RESPECT TO THESE WITNESSES
13   AND THESE HARD DRIVE DISKS, YOUR HONOR, THAT THERE WAS ANY
14   ALLEGATION WITH RESPECT TO DELETION OF FILES.  THERE WAS AN
15   ISSUE WITH CARTER BRYANT BECAUSE OF THE USE OF THE SOFTWARE       11:40
16   PROGRAM UNFORTUNATELY MARKETED AS 'EVIDENCE ELIMINATOR.'
17          THERE'S NO EVIDENCE OR NO SHOWING THAT WAS EVER USED
18   ON ANY OF THESE OTHER HARD DRIVES.
19          THE COURT:  WHO HAS THESE HARD DRIVES?  BECAUSE I
20   KNOW THE MOTION IS DIRECTED TOWARDS MGA LARIAN, BUT THESE ARE     11:40
21   CARTER BRYANT'S HARD DRIVES; CORRECT?
22          MR. NOLAN:  I BELIEVE THAT'S THE CASE, YOUR HONOR.
23   BUT, I'M SORRY, I DON'T KNOW THAT ANSWER.  I CAN GO BACK AND
24   JUST LOOK AT IT REAL QUICK AND ADVISE YOU IN A FEW MINUTES.
25          THE COURT:  YOU MAY.                                      11:40
```

```
 1              MR. NOLAN:  THANK YOU.

 2              THE COURT:  COUNSEL?

 3              MR. QUINN:  YOUR HONOR, WOULD YOU LIKE US TO ADDRESS

 4   THE HARD DRIVE ISSUE?

 5              THE COURT:  PLEASE.                                    11:40

 6              MR. QUINN:  THE COURT HAS IDENTIFIED THE ISSUE OF THE

 7   PREDICATE ACT SPECIFICALLY REFERS TO THE DELETION OF

 8   INFORMATION FROM MR. LARIAN'S HARD DRIVES.  NOT JUST

 9   MR. BRYANT'S, BUT MR. LARIAN'S HARD DRIVES.

10              WHAT IS THE EVIDENCE THAT WE HAVE?                    11:41

11              WE HAVE THE TESTIMONY OF THEIR 30(B)(6) WITNESS THAT

12   THOSE HAVE BEEN WIPED, I BELIEVE THE TESTIMONY IS, EVERY SINGLE

13   YEAR SINCE THIS LAWSUIT STARTED, YOUR HONOR.

14              THIS IS A SERIOUS ISSUE.

15              WE DO HAVE EVIDENCE OF ELIMINATION OF DATA AND IT'S   11:41

16   NOT JUST A PHASE TWO ISSUE.

17              THE COURT:  THAT'S NOT MY ISSUE, WHETHER IT'S PHASE

18   ONE OR PHASE TWO.

19              RESPOND TO MR. NOLAN'S POSITION THAT THIS IS

20   SOMETHING THAT WAS FULLY CONSIDERED.  BECAUSE IT WAS UNCLEAR TO  11:41

21   THE COURT -- AT LEAST IN MY INITIAL READ OF THIS, AND I WILL

22   CERTAINLY TAKE ANOTHER LOOK AT IT BEFORE I MAKE A FINAL

23   DECISION -- THAT PERHAPS JUDGE INFANTE, WHO THE COURT HAS A

24   TREMENDOUS AMOUNT OF CONFIDENCE IN, PERHAPS WAS NOT FULLY

25   APPRECIATING THE NATURE OF YOUR ARGUMENT.                       11:41
```

1          COUNSEL SAYS HE CERTAINLY WAS AND THAT THERE ARE

2     OTHER INSTANCES WHERE HE HAS ORDERED THESE TYPES OF HARD DRIVES

3     TO BE TURNED OVER, PRECISELY TO ADDRESS THIS PARTICULAR ISSUE;

4     NAMELY, THE RICO --

5          **MR. QUINN:**  YOUR HONOR, WHAT I WOULD CITE TO IS       11:42

6     INDICATION THAT JUDGE INFANTE IN THIS CASE -- WHO OTHERWISE, WE

7     BELIEVE HAS DONE AN EXCELLENT JOB -- MISSED THE BOAT ON THIS.

8     HIS LANGUAGE IN THE OPINION ITSELF THAT HE WROTE, WHERE HE SAYS

9     THAT MATTEL SEEKS THIS TO ENSURE THAT RELEVANT INFORMATION HAS

10    NOT BEEN DELETED OR PERMANENTLY DESTROYED, AND HE SAYS 'YOU'RE   11:42

11    GOING ON A FISHING EXPEDITION.'

12         WE DID MAKE THE ARGUMENT, YOUR HONOR.  I'M NOT SAYING

13    WE DIDN'T MAKE THE ARGUMENT AND POINT HIM TO THE LANGUAGE OF

14    OUR RICO CLAIM.  WE DID MAKE THE ARGUMENT.  BUT HE DID NOT

15    SOMEHOW APPRECIATE THAT OR COME TO GRIPS WITH THE FACT THAT WE   11:42

16    ARE SEEKING THIS EVIDENCE TO PROVE THE PREDICATE ACT OF

17    DELETION OF INFORMATION FROM THE HARD DRIVES.

18         **THE COURT:**  AS OPPOSED TO THE ACTUAL DOCUMENTS ON THE

19    HARD DRIVES THEMSELVES.

20         **MR. QUINN:**  YES.  EXACTLY.                            11:43

21         WE'D RELY ON HOW JUDGE INFANTE ARTICULATED HIS

22    OPINION WHICH INDICATES ON THE FACE OF IT, THIS IS AN ERROR.

23    AND WE'VE GOTTEN SOME EVIDENCE JUST IN A MEET AND CONFER LAST

24    WEEK, YOUR HONOR, THAT, FOR EXAMPLE, MR. LARIAN'S CALENDARS

25    FROM 1999 AND 2000, SOMEHOW HIS OUTLOOK CALENDARS IN ELECTRONIC  11:43

1   FORM ARE MISSING.  THEY DON'T HAVE THEM.  THEY HAVE TOLD US UP

2   TO THIS POINT, I BELIEVE, THAT THEY HAD PRESERVED EVERYTHING.

3   WE LEARNED LAST WEEK IN A MEET AND CONFER THAT THOSE OUTLOOK

4   CALENDARS IN ELECTRONIC FORM ARE MISSING.  THEY HAVE THEM, AND

5   THEY HAVE PRODUCED THEM IN ELECTRONIC FORM, FOR NUMEROUS OTHER       11:43

6   MGA WITNESSES; SO THERE MUST BE SOME EXPLANATION THAT IS

7   SPECIFIC TO MR. LARIAN, BECAUSE THOSE OUTLOOK CALENDARS -- THEY

8   TAKE UP SO LITTLE SPACE -- THEY ARE OTHERWISE MAINTAINED IN

9   PERPETUITY.

10          **THE COURT:**  WHAT EXACTLY ARE YOU LOOKING FOR IN TERMS      11:43

11  OF THE PRODUCTION OF THE HARD DRIVES?  ARE THESE FORENSIC

12  IMAGES?  WHAT EXACTLY ARE YOU LOOKING FOR?

13          **MR. QUINN:**  EXACTLY, YOUR HONOR, THAT THERE WAS

14  EVIDENCE -- WHERE YOU WOULD GO TO LOOK, FOR EXAMPLE, JUST FOR

15  EXAMPLE, MR. LARIAN'S CALENDAR IN 1999, THAT MIGHT HAVE SHOWN       11:44

16  WHEN HE HAD MEETINGS WITH MR. BRYANT AND OTHERS, THAT IT'S

17  GONE, AND IT WAS DELETED AS OF WHEN...

18          THAT CAN BE DETERMINED.

19          **THE COURT:**  I UNDERSTAND THAT CAN BE DETERMINED.  BUT

20  WHAT DO YOU NEED TO MAKE THAT DETERMINATION?  YOU SAY YOU WANT      11:44

21  THE HARD DRIVES.  DO YOU WANT THE MIRROR IMAGES OF THE HARD

22  DRIVES?  WHAT EXACTLY ARE YOU LOOKING FOR?

23          **MR. QUINN:**  I WOULD HAVE TO GET ADVICE FROM THE

24  TECHNICAL PEOPLE, BUT I BELIEVE MIRROR IMAGES OF THE HARD

25  DRIVES.                                                            11:44

1    **MR. COREY:**  WE WANT TO MAKE FORENSIC IMAGES OF THE

2  HARD DRIVES, YOUR HONOR.

3         **THE COURT:**  MR. NOLAN?

4         **MR. NOLAN:**  YOUR HONOR, THE KEY PHRASE THAT MR. QUINN

5  READ WAS JUDGE INFANTE'S REFERENCE TO A FISHING EXPEDITION.          11:44

6         THERE HAVE BEEN A LOT OF ORDERS THAT HAVE BEEN ISSUED

7  BY JUDGE INFANTE.  AND, GOD BLESS HIM, WE TALK ABOUT THE FACT

8  THAT WE DON'T THINK HE'S EVER SEEN A DISCOVERY MOTION THAT HE

9  DOESN'T LIKE.  AND I SAY THAT WITH ALL DUE RESPECT, BUT HE'S

10 BEEN VERY LIBERAL WITH WHAT'S BEEN ALLOWED IN THIS CASE.  IT'S      11:45

11 REMARKABLE, THE BREADTH OF DISCOVERY THAT HAS BEEN ALLOWED IN

12 THIS CASE.

13         ON THIS ONE, THE ONLY FACTUAL RECORD THAT WAS

14 PRESENTED BY MATTEL IS THE SIMPLE FACT, AND NOT UNREMARKABLE,

15 THAT MR. LARIAN, AT THE END OF THE YEAR WHEN A NEW COMPUTER        11:45

16 WOULD BE COMING IN, WOULD GIVE BACK HIS COMPUTER TO THE I.T.

17 DEPARTMENT.  IT WOULD BE WIPED AND THEN RECIRCULATED TO OTHER

18 EMPLOYEES, I GUESS, WHO WERE NOT ENTITLED TO THE FASTEST AND

19 THE BEST.  OR, IN INSTANCES WHERE -- AND IT'S HAPPENED IN OUR

20 FIRM -- AND THAT IS THAT ONE IS DAMAGED OR YOU SPILL SOMETHING     11:45

21 ON A COMPUTER AND YOU GET IT BACK OR YOU GET A REPLACEMENT.

22 WHEN IT GOES TO THE I.T. DEPARTMENT IN ORDER TO BE ASSIGNED

23 OUT, THEY WILL CLEAN IT.

24         THERE IS NO SHOWING WHATSOEVER, NOT ONE IOTA, THAT

25 THAT WIPING WAS DONE INTENTIONAL.  THAT WAS THE REPRESENTATION.    11:46

1   THAT'S THE FULL RECORD THAT IS BEFORE JUDGE INFANTE.  AND IT IS

2   THE FACTUAL BASIS UPON WHICH HE MAKES HIS FINDING THAT WHAT

3   MATTEL NOW WANTS IS A FISHING EXPEDITION, YOUR HONOR.

4         FOR INSTANCE, I'M A LITTLE BIT -- I THINK IT'S

5   CURIOUS THAT WHEN WE, OF COURSE, WANT CARTER BRYANT'S                    11:46

6   INFORMATION, PHONE RECORDS FROM MATTEL, INTERESTINGLY, THEY

7   WERE MISSING FOR THE MONTH OF OCTOBER OF 2000.

8         YOU MIGHT RECALL FROM AN EARLIER --

9         **THE COURT:**  I DO RECALL.

10        **MR. NOLAN:**  YOU KNOW, STUFF HAPPENS.  STUFF HAPPENS.          11:46

11  IF WE CAN'T FIND THE OUTLOOK, WE'LL PRODUCE IT IN HARD COPY, IF

12  WE HAVE IT.  BUT, YOUR HONOR, NOT A WHOLESALE PRODUCTION OF

13  DISKS THAT SIMPLY WERE RECYCLED.  AND IF THAT'S THE SHOWING

14  THAT'S ALLOWED NOW IN FEDERAL COURT, I JUST SUGGEST THERE'S A

15  LOT OF ROOM FOR MISCHIEF.                                               11:47

16        I WOULD ASK YOU TO RESPECT THE PRIVACY RIGHTS; I

17  WOULD ASK YOU TO HOLD THE STANDARD THAT JUDGE INFANTE ASKED

18  THEM TO DO; AND I WOULD ASK YOU TO LOOK SERIOUSLY AT HIS

19  DESCRIPTION THAT THIS IS A FISHING EXPEDITION.

20        **THE COURT:**  AND I WILL DO THAT.                               11:47

21        WHAT I AM GOING TO DIRECT MATTEL TO DO -- AND THIS IS

22  NOT ANY INDICATION AS TO HOW THE COURT IS GOING TO RULE -- BUT

23  I WANT A PROPOSED ORDER SUBMITTED THAT WOULD JUST CAPTURE THE

24  LANGUAGE SO I HAVE A BETTER SENSE OF EXACTLY WHAT IT IS THAT

25  YOU ARE SEEKING.  I DON'T HAVE THAT FROM YOUR PAPERS THAT HAVE         11:47

```
 1   BEEN SUBMITTED.  IT'S NOT AN INDICATION THAT I'M GOING TO

 2   NECESSARILY ISSUE THAT ORDER.  BUT I WANT TO BE ABLE TO HAVE A

 3   BETTER SENSE OF EXACTLY WHAT IT IS; THAT IF I DO DECIDE IN THAT

 4   DIRECTION, WHAT I'D BE CALLED UPON TO ORDER TO BE PRODUCED.  I

 5   WILL TAKE A CAREFUL SECOND LOOK AT JUDGE INFANTE'S ORDER --        11:47

 6            MR. NOLAN:  I APPRECIATE THAT.

 7            THE COURT:  -- AND APPLY THE SAME STANDARD THAT I

 8   HAVE APPLIED THROUGHOUT THIS TO MY VIEW OF HIS DECISIONS.

 9            MR. NOLAN:  IN SPECIFIC RESPONSE TO YOUR QUESTION, I

10   DO NOT BELIEVE THAT MGA IS IN POSSESSION OF CARTER BRYANT'S       11:48

11   HARD DRIVE DISKS.  I THINK THAT CARTER BRYANT HAS ALL OF THOSE;

12   THOSE WERE MADE AVAILABLE.

13            THE COURT:  YOU WOULD HAVE MR. LARIAN'S, THOUGH.

14            MR. NOLAN:  WE HAVE MR. LARIAN'S STUFF, WHAT'S

15   AVAILABLE, YOUR HONOR, WE DO.                                     11:48

16            THE COURT:  WHAT'S AVAILABLE?

17            MR. NOLAN:  I MEAN, I HAVE NOT PHYSICALLY LOOKED AT

18   IT.  WE HAVEN'T THROWN ANYTHING AWAY.

19            THE COURT:  ALL RIGHT.

20            MR. NOLAN:  IT'S THERE.                                  11:48

21            THE COURT:  THANK YOU, COUNSEL.

22            MR. QUINN:  YOUR HONOR, WE WILL SUBMIT THAT ORDER, OF

23   COURSE.  BUT WE GET INTO THIS ISSUE OF WHAT PREVIOUS COUNSEL

24   SAID, AGAIN.

25            THE COURT MAY RECALL THAT PATTY GLASER, WHEN SHE WAS     11:48
```

```
1    HERE ARGUING AND REPRESENTING MGA, SAID AND REPRESENTED TO THE

2    COURT THAT MGA IS PRESERVING EVERYTHING; THAT WAS THE

3    REPRESENTATION THAT WAS MADE.

4         THEN WE LEARNED FROM THE 30(B)(6) WITNESS THAT,

5    INDEED, EVEN WHILE THIS CASE IS PENDING, MR. LARIAN'S COMPUTER    11:48

6    IS COMPLETELY WIPED EVERY YEAR.

7         WELL, I SUBMIT THAT IN VIEW OF THAT, THAT'S

8    CONSISTENT WITH THE ALLEGATIONS IN THE COMPLAINT.

9         THE COURT:  THANK YOU, COUNSEL.

10        THE LAST ISSUE IS THE OSC.  AND MR. MCFARLAND, I    11:49

11   THINK I MAY HAVE CUT YOU OFF BEFORE YOUR APPEARANCE, BUT WHY

12   DON'T YOU MAKE YOUR APPEARANCE AND LET ME TAKE THAT UP.

13        THE COURT:  MR. COREY?

14        MR. COREY:  COULD I ASK FOR ONE MINUTE?  PERHAPS WE

15   CAN DO THAT AFTER?    11:49

16        THE COURT:  YOU MAY DO SO.

17        MR. McFARLAND:  GOOD MORNING.  LARRY McFARLAND ON

18   BEHALF OF MYSELF, MS. ARANT, MR. MARLOW AND MS. HALPERN.

19        THE COURT:  I DID RECEIVE YOUR SURREPLY ON FRIDAY,

20   WHICH I WAS ABLE TO TAKE HOME OVER THE WEEKEND; SO I DID HAVE A    11:49

21   CHANCE TO REVIEW IT.

22        WHAT I WANT TO SEPARATE OUT AT THIS POINT, COUNSEL,

23   ARE OBJECTIONS TO THE SUBPOENA ITSELF, OR THE SUBPOENAS, EITHER

24   ON YOUR OWN BEHALF OR ANY OF THE WITNESSES THAT YOU'RE

25   REPRESENTING.  YOU RAISE A NUMBER OF GROUNDS AS TO WHY THE    11:49
```

1  SUBPOENAS ARE IMPROPER; WHY THE SUBPOENAS SHOULD BE QUASHED;

2  WHY YOU SHOULD NOT HAVE TO SIT FOR YOUR DEPOSITION OR ANY OF

3  THE OTHER DEPOSITIONS.

4         THOSE MATTERS ARE PROPERLY PRESENTED TO THE DISCOVERY

5  MASTER.  WE'VE GET TO GET PAST THIS ISSUE OF SERVICE.  WHAT I        11:50

6  REALLY DON'T WANT TO HAVE TO DO TODAY IS MAKE A FINDING AS TO

7  WHETHER AN OFFICER OF THE COURT HAS BEEN EVADING SERVICE.  I

8  DON'T THINK ANYBODY DOES.

9         WHAT I'D RATHER DO IS CUT TO THE CHASE; HAVE YOU

10  ACCEPT SERVICE OF YOUR NOTICE; HAVE YOU ACCEPT SERVICE OF YOUR       11:50

11  CLIENT'S NOTICE; AND THEN YOU CAN PROCEED TO MAKE WHATEVER

12  ARGUMENTS THAT YOU WANT TO MAKE WITH RESPECT TO WHETHER OR NOT

13  ANY OF YOU SHOULD ACTUALLY HAVE TO SIT FOR YOUR DEPOSITION, AND

14  YOU CAN MAKE YOUR MOTIONS TO QUASH.

15         BUT YOU CAN'T HAVE IT BOTH WAYS.  YOU CAN'T BE               11:50

16  SAYING, WELL, I HAVEN'T BEEN SERVED DESPITE...

17         THIS IS THE WORST KEPT SECRET IN THIS CASE RIGHT NOW

18  THAT EFFORTS ARE BEING MADE TO TRY TO SERVE.  BUT AT THE SAME

19  TIME, I WANT TO MAKE ALL OF THESE ARGUMENTS AS TO WHY THE

20  SUBPOENA SHOULD BE QUASHED.                                        11:50

21         WE HAVE TO GET PAST THIS SERVICE ISSUE.

22         **MR. McFARLAND:**  SO YOUR HONOR IS CLEAR, THEN, THE

23  ORDER THAT YOU ISSUED WOULD NOT PRECLUDE US FROM CHALLENGING

24  ANY OF THE SUBPOENAS SAYING THAT THERE'S NO GOOD CAUSE.

25         **THE COURT:**  NO.  I'M TRYING TO GET PAST THIS SERVICE    11:51

```
1   ISSUE, COUNSEL.  I WANT TO GET PAST THE ISSUE OF WHETHER OR NOT
2   YOU'VE RECEIVED YOUR NOTICE.  AND IF I HAVE TO DO IT RIGHT NOW,
3   I SUSPECT THAT MATTEL IS IN A POSITION TO PROVIDE YOU WITH
4   SERVICE RIGHT NOW IN THIS COURTROOM, IF THERE'S ANY QUESTION
5   ABOUT THAT.  BUT I DON'T WANT TO GET INTO WHETHER IT WAS THIS          11:51
6   STREET OR THAT STREET; WHETHER YOU DIDN'T HEAR THE DOORBELL OR
7   WHETHER THE GATE WAS CLOSED OR IT WASN'T CLOSED.
8            I'LL GO DOWN THAT ROAD IF YOU WANT TO, BUT I DON'T
9   REALLY THINK WE SHOULD GO DOWN THAT ROAD.
10           MR. McFARLAND:  COULD I CONFER FOR ONE MOMENT?               11:51
11           THE COURT:  WHY DON'T YOU DO THAT.
12           (BRIEF PAUSE.)
13           MR. McFARLAND:  YOUR HONOR, THAT'S FINE.
14           THE COURT:  VERY WELL, THEN.
15           THERE'S NO NEED TO ORDER.  I'M SIMPLY GOING TO DIRECT       11:51
16  THAT YOU WILL RECEIVE SERVICE ON YOUR OWN BEHALF AND YOUR THREE
17  CLIENTS.  AND THEN YOU ARE ORDERED LEAVE TO BRING WHATEVER
18  MOTIONS YOU BELIEVE ARE APPROPRIATE TO QUASH THOSE SUBPOENAS.
19  BUT THEY ARE GOING TO BE DEEMED SERVED AS OF TODAY.
20           MR. McFARLAND:  THANK YOU.                                  11:52
21           THE COURT:  VERY WELL.  THAT TAKES CARE OF THAT
22  ISSUE, AND THE OSC IS THEREFORE DEEMED SATISFIED.
23           I WILL TAKE THESE OTHER TWO MATTERS UNDER SUBMISSION,
24  BUT I'LL HEAR ANYTHING ELSE THAT YOU WISH TO BRING UP AT THIS
25  POINT.  I HAVE THE EX-PARTE APPLICATION AND THE MOTION TO            11:52
```

1  REVIEW THE DISCOVERY MASTER'S ORDER.

2         **MR. NOLAN:**  YOUR HONOR, ONE QUICK POINT.

3         IT'S NOT BEEN BRIEFED AND IT'S NOT BEFORE YOU, BUT I

4  DON'T THINK IT NEEDS TO --

5         WE, ON OUR COMPUTERS, GET NOTICES OF ALL OF THE                    11:52

6  ORDERS THAT THE COURT ISSUES.  AND YOU CAN IMAGINE IN THIS

7  CASE, EVERY TIME AN ORDER IS ISSUED, YOUR HEART STOPS A LITTLE

8  BIT.

9         **THE COURT:**  I'M CERTAINLY NOT TRYING TO CAUSE ANYBODY

10  HEART ATTACKS.                                                          11:52

11        **MR. NOLAN:**  AND WE'RE NOT WORRIED.  WE LIKE OUR

12  POSITION IN THIS CASE VERY WELL.  BUT THEN WHAT HAPPENS IS

13  THERE'S A HUGE LET-DOWN WHEN WE SEE THAT IT'S ONLY AN ORDER OF

14  SEALING SOMETHING OR AGREEING TO SEAL.  WE ARE OVER BURDENING

15  THIS COURT, ITS STAFF, YOUR FINE CLERK.                                 11:52

16        IT HAS TO DO WITH THIS CRAZY AEO PROTECTIVE

17  DESIGNATION WHICH IS REQUIRING EVERYTHING TO BE FILED.

18        **THE COURT:**  LET ME STOP YOU THERE, COUNSEL, BECAUSE

19  THAT RAISES A VERY GOOD POINT ABOUT FILING THINGS UNDER SEAL.

20        THIS EX-PARTE APPLICATION THAT YOU JUST FILED, YOU                 11:53

21  FILED THE ENTIRE THING UNDER SEAL.

22        THAT'S NOT NECESSARY.

23        **MR. NOLAN:**  WELL, BUT HERE'S THE REASON.  AND MAYBE

24  WE BLEW IT.  BECAUSE THERE WERE EXHIBITS THAT WERE ATTACHED --

25  THESE MARKETING REPORTS FROM 2004 THAT ARE SO OUTDATED, THAT           11:53

```
 1   ARE SO OUTDATED, AND THAT HAVE THE DESCRIPTION OF 'MATTEL'S
 2   HOUSE IS ON FIRE, THE BRAND IS IN CRISES.  THE CHILLING RATE OF
 3   THE MARKET DROP; BRATZ IS OUTTHINKING US AND THEY HAVE OUT
 4   EXECUTED US.'  ALL OF THAT FROM 2004 IS STILL BEING PROTECTED
 5   UNDER THIS DESIGNATION; IT IS SO CUMBERSOME IN EVERY FILING        11:53
 6   THAT WE HAVE TO MAKE THAT EITHER WE HAVE TO DISAGGREGATE THE
 7   FILING AND SAY, 'ALL RIGHT, THIS PART CAN BE FILED IN THE
 8   PUBLIC DOMAIN AND THIS HAS TO BE FILED UNDER SEAL.'
 9        THE COURT:  THAT'S PRECISELY WHAT MATTEL HAS BEEN
10   DOING, AND I EXPECT MGA TO DO THE SAME THING.  AS I'VE            11:54
11   INDICATED PREVIOUSLY IN THIS, THE DAY OF RECKONING IS COMING ON
12   ALL OF THIS UNDER-SEAL FILING, THAT, IN THE INTEREST OF THE
13   FIRST AMENDMENT, WE ARE GOING TO OPEN THIS WIDE OPEN EXCEPT FOR
14   THOSE PARTICULAR DOCUMENTS THAT THERE IS A CLEAR, GOOD CAUSE TO
15   CONTINUE TO KEEP THEM UNDER SEAL.                                 11:54
16        I'M NOT GOING TO BE LEFT WITH THIS CASE AT THE END OF
17   THE DAY AND START GETTING MOTIONS FROM THE PRESS ASKING FOR
18   ACCESS TO ALL OF THIS AND NOT HAVE A GOOD EXPLANATION AS TO
19   WHY MOUNTAINS OF DOCUMENTS ARE UNDER SEAL.
20        MR. NOLAN:  WE'RE ON THE SAME PAGE.                         11:54
21        ALL I'M ASKING IS, HOW DO I GET THE DAY TO COME?
22   BECAUSE IT'S SILLY.  WE ARE NOW THREE MONTHS AWAY OR FOUR
23   MONTHS AWAY FROM TRIAL, AND I REMEMBER READING YOUR TRANSCRIPT
24   WHEN YOU APPROVED THE PROTECTIVE ORDER.  YOU WERE RAISING THESE
25   CONCERNS THAT I'M ACTUALLY AGREEING WITH NOW.  I ACTUALLY THINK   11:55
```

1  THE BRIEF MAY HAVE BEEN FILED BECAUSE THERE WERE SPECIFIC

2  REFERENCES IN THE PLEADINGS ITSELF TO OTHERWISE AEO; AND WE

3  WERE EITHER LAZY OR WE WERE OVERLY PROTECTIVE, IN WHICH CASE I

4  APOLOGIZE.  BUT THE BIGGEST POINT, YOUR HONOR, IS PLEASE GIVE

5  ME SOME GUIDANCE AS TO HOW -- IF YOU WANT US TO MEET AND          11:55

6  CONFER.  BUT I THINK THE DAY HAS COME WHERE WE CAN RELEASE FROM

7  THE AEO THESE MARKETING REPORTS THAT ARE IN 2004 THAT ARE SO

8  OUTDATED THEY HAVE NO BEARING IN THIS CASE AT ALL.

9         BUT IF THERE'S PRICE SENSITIVE STUFF CURRENTLY THAT

10  IS COMPETITIVE, THEN WE SHOULD BE ABLE TO IDENTIFY THAT WITH     11:55

11  MATTEL.

12         THE COURT:  I WOULD ENCOURAGE YOU AND THE

13  REPRESENTATIVES OF THE OTHER PARTIES, EVERYONE WHO'S BEEN

14  ENGAGED IN THIS PROCESS OF DESIGNATING CONFIDENTIAL

15  INFORMATION, YOU CERTAINLY NEED TO MEET AND CONFER, AND I WILL   11:55

16  BE OPEN TO ANY NUMBER OF SUGGESTIONS IN TERMS OF HOW TO GO

17  ABOUT DOING IT.

18         I SUSPECT AS YOU START MOVING FROM DISCOVERY, WHICH

19  IS OR SHOULD BE JUST ABOUT OVER, TO PREPARING FOR THE MOTIONS

20  IN MARCH AND APRIL, THAT THIS WOULD BE A VERY PROFICIENT TIME    11:56

21  TO DO THAT.

22         MR. NOLAN:  THAT'S THE REASON WHY I RAISED IT.

23         THE COURT:  BECAUSE WHEN GET TO THOSE MOTION PHASES,

24  THE COURT IS GOING TO LOOK ASKEW AT ANYTHING THAT NEEDS TO BE

25  UNDER SEAL AT THAT POINT.                                        11:56

1          **MR. NOLAN:**  WE'RE TWO WEEKS AWAY FROM FILING OUR

2    MOTIONS FOR SUMMARY JUDGMENT.  I KNOW WE'RE WORKING ON THEM,

3    BOTH SIDES ARE, AND I WOULD SAY 98 PERCENT OF THE EXHIBITS HAVE

4    BEEN MARKED 'AEO' AND HAVE TO BE HANDLED THIS WAY.

5          SO WE'LL TAKE THIS DIRECTIVE.  WE'LL MEET WITH MATTEL          11:56

6    AND TRY TO WORK OUT SOME ACCOMMODATIONS.

7          **THE COURT:**  I WOULD LIKE TO THINK THAT THE NEXT TIME

8    WE'RE ALL GOING TO MEET IS AT THE DISPOSITIVE MOTION HEARING

9    DATE, BUT I SUSPECT THAT'S NOT GOING TO BE THE CASE; SO I

10   SUSPECT WE'LL HAVE ANOTHER OPPORTUNITY TO ADDRESS THIS ISSUE.          11:56

11   I'LL TRUST THAT BETWEEN NOW AND THEN YOU'LL MEET AND CONFER

12   WITH ALL COUNSEL CONCERNED AND START THINKING OF A WAY TO

13   ADDRESS THIS, SHORT OF A WHOLESALE UNSEALING OF THE RECORD,

14   WHICH, QUITE FRANKLY, IF YOU'RE NOT ABLE TO COME UP WITH SOME

15   CLEARLY DEFINABLE PARAMETERS, THAT IS NOT OUT OF THE QUESTION;          11:57

16   SO LET'S START WORKING ON THAT.

17         **MR. NOLAN:**  WE WILL, YOUR HONOR.  IT WOULDN'T BE THE

18   FIRST TIME THAT WE CAN'T AGREE, BUT LET'S BE OPTIMISTIC THAT WE

19   WON'T SEE YOU UNTIL THE MOTIONS FOR SUMMARY JUDGEMENT.

20         AND NONE OF US TAKE THAT PERSONAL, YOUR HONOR.  WE          11:57

21   ENJOY BEING HERE.

22         **THE COURT:**  THE COURT ENJOYS HAVING YOU HERE, MOST OF

23   THE TIME.

24         MR. COREY, ANYTHING FURTHER?

25         **MR. COREY:**  YES, IF I MAY.          11:57

```
 1          ACTUALLY, WHAT I CAN TELL THE COURT, WE ACTUALLY HAVE

 2   THE SAME ISSUE WITH RESPECT TO THINGS BEING DESIGNATED UNDER

 3   THE PROTECTIVE ORDER.  WE DID INITIATE A MEET AND CONFER

 4   PROCESS A NUMBER OF MONTHS AGO WITH RESPECT TO THE THINGS THAT

 5   ARE BEING DESIGNATED FROM THE YEAR 2000 WITH RESPECT TO THE        11:57

 6   CREATION OF BRATZ; SO WE'LL HAVE A CONVERSATION WITH MR. NOLAN

 7   ON THAT.  I THINK HE MAY BE LOOKING AT THINGS WITH FRESH EYES

 8   NOW.

 9          WITH RESPECT TO MR. BOUSQUETTE, I WANT TO MAKE THIS

10   VERY PRECISE THAT WHAT'S BEING ASSERTED IN THE EXPERT REPORTS      11:58

11   IS THAT MATTEL'S DAMAGES SHOULD BE REDUCED BECAUSE OF SOME

12   BRILLIANT THINGS THAT MGA HAS DONE.

13          MATTEL'S PHASE TWO CLAIMS ARE THAT THOSE BRILLIANT

14   THINGS WERE STOLEN FROM MATTEL.  AND SO BY STAYING PHASE TWO

15   DISCOVERY, WHICH WE HAVE NOT COMPLETED AND WHICH COUNSEL FOR       11:58

16   MGA AGREES WE HAVE NOT COMPLETED, MATTEL IS BEING DEPRIVED OF

17   THE OPPORTUNITY TO PRESENT ITS REBUTTAL OR ITS DEFENSE,

18   WHATEVER YOU WANT TO CALL IT, TO THAT THEORY OR THAT CLAIM.

19          THE COURT:  SO MR. NOLAN IS CORRECT; YOU DO WANT TO

20   OPEN UP PHASE TWO DISCOVERY RIGHT NOW.                            11:58

21          MR COREY:  I THINK THE COURT NEEDS TO MAKE A CHOICE.

22   WHAT I DON'T WANT IS MATTEL TO BE PREJUDICED BY THEM ALLOWING

23   TO GO FORWARD WITH THEIR THEORIES THAT THEY ARE GOING TO RELY

24   ON TO REDUCE MATTEL'S CLAIMED DAMAGES WITHOUT MATTEL BEING

25   GIVEN AN OPPORTUNITY TO RESPOND TO THOSE.                         11:58
```

1          FRANKLY, MATTEL DOESN'T CARE WHAT THE CHOICE IS.  IF

2     PHASE TWO IS GOING TO BE STAYED, THEN IT NEEDS TO BE STAYED.

3     BUT IF THESE THEORIES ARE GOING TO BE FLOATED IN PHASE ONE.

4     THEN PHASE TWO DISCOVERY SHOULD NOT BE STAYED; IT SHOULD BE

5     ALLOWED TO PROCEED.  AND THEN IF THE STAY ON PHASE TWO IS          11:59

6     LIFTED, THEN THERE'S NOT AN ISSUE WITH RESPECT TO --

7          **THE COURT:**  MR. COREY, IF I LIFT THE STAY ON PHASE

8     TWO DISCOVERY, I CAN'T IMAGINE WHAT THAT WOULD DO.  I MEAN,

9     POOR JUDGE INFANTE.  I JUST COULDN'T DO THAT TO HIM.  I JUST

10    COULDN'T.  THAT WOULD DERAIL THIS LITIGATION.                      11:59

11         BASED ON HOW -- AND I'M NOT POINTING ANY FINGERS

12    HERE, THIS IS JUST ACROSS THE BOARD -- HOW DISCOVERY HAS BEEN

13    CONDUCTED, THE MILLIONS OF DOCUMENTS; THE, I DON'T KNOW, UNTOLD

14    NUMBER OF DEPOSITIONS AND THE INTERROGATORIES AND RFA'S; TO

15    LIFT STAY TWO DISCOVERY DURING THIS CRITICAL PERIOD AS WE'RE       11:59

16    TRYING TO DO THE MOTIONS, THE PRETRIAL ORDERS, AND GET READY

17    FOR THE FIRST TRIAL IN MAY, WHICH IS GOING FORWARD IN MAY, TO

18    START IN ON FULL SCALE PHASE TWO DISCOVERY, THAT'S

19    UNFATHOMABLE.

20         **MR. COREY:**  THAT'S NOT WHAT I THINK THE COURT SHOULD      12:00

21    DO.

22         **THE COURT:**  SO WE'RE ALL IN AGREEMENT ON THAT.

23         **MR. COREY:**  I THINK THE COURT SHOULD LIMIT THE ISSUES

24    TO PHASE ONE AS THE COURT HAS ARTICULATED THEM; THE CREATION OF

25    BRATZ AND CARTER BRYANT'S EMPLOYMENT WITH MATTEL.  THAT'S          12:00

1  FAIRLY CONSTRAINED AND THAT'S NOT GOING TO BURDEN ANYBODY TO

2  GET THAT DONE.

3          THERE ARE A NUMBER OF ISSUES THAT GET TEED UP

4  DEPENDING ON THE OUTCOME OF WHAT DECISION THE JURY MAKES WITH

5  RESPECT TO THOSE ISSUES.  THERE'S NO NEED TO GET INTO THEM NOW.  12:00

6          I DO NEED TO ADD TWO QUICK THINGS WITH RESPECT TO

7  MR. BOUSQUETTE.

8          MATTEL DOES NOT CONTROL HIM; HE HAS SEPARATE COUNSEL;

9  IT'S CHRIS CALDWELL.  HE WOULD BE HERE TODAY EXCEPT HE'S IN

10  TRIAL.  AND NO SUBPOENA HAS BEEN SERVED ON MR. BOUSQUETTE.  HE  12:00

11  HAD AGREED TO APPEAR VOLUNTARILY ON FEBRUARY 15TH IN CHICAGO

12  BEFORE THE COURT HAD ISSUED --

13          **THE COURT:**  WHO CANCELLED HIS DEPOSITION, THEN?

14          **MR. COREY:**  WE IDENTIFIED HIM AS BEING PHASE TWO

15  DISCOVERY.                                                    12:01

16          **THE COURT:**  SO YOU DID.

17          **MR. COREY:**  I WROTE A LETTER SAYING HE'S PHASE TWO

18  DISCOVERY.

19          **THE COURT:**  YOU'RE NOT HIS LAWYER.

20          WHAT WERE YOU DOING WRITING A LETTER SAYING HE'S NOT  12:01

21  GOING TO SHOW UP FOR HIS DEPOSITION?

22          **MR. COREY:**  HE HASN'T BEEN SUBPOENAED.

23          WHAT THE LETTER SAID WAS HE'S PHASE TWO; MS. PATEL IS

24  PHASE TWO; AND ANOTHER DESIGNEE ARE PHASE TWO.

25          **THE COURT:**  I UNDERSTAND THE WHOLE ARGUMENT.      12:01

1      I'M SAYING, IF YOU'RE TELLING ME NOW THAT YOU DON'T

2  CONTROL HIM, THAT HE'S GOT HIS OWN SEPARATE COUNSEL, THEN WHY

3  WOULD YOU BE THE ONE CANCELLING HIS DEPOSITION AND NOT HIS

4  LAWYER?

5      **MR. COREY:**  I IDENTIFIED HIM AS BEING PHASE TWO                12:01

6  DISCOVERY WITH TWO OTHER WITNESSES.  IF YOU WANT TO CALL THAT

7  CANCELLING HIS DEPOSITION, YOU CAN CALL THAT CANCELLING HIS

8  DEPOSITION.

9      **THE COURT:**  WHY DIDN'T HE SHOW UP FOR HIS DEPOSITION?

10     **MR. COREY:**  BECAUSE HE'S PHASE TWO.  HIS COUNSEL WAS          12:01

11  PROVIDED WITH A COPY --

12     **THE COURT:**  BUT HE PROBABLY DOESN'T KNOW THAT HE'S

13  PHASE TWO, DOES HE?

14     **MR. COREY:**  I GUARANTEE HIS COUNSEL KNOWS.

15     I HAVE NOT SPOKEN TO MR. BOUSQUETTE.  I SPOKE WITH            12:01

16  HIS COUNSEL.

17     **THE COURT:**  SO YOU TOLD HIS COUNSEL THAT IT'S PHASE

18  TWO AND THAT HE SHOULD CANCEL THE DEPOSITION.

19     **MR. COREY:**  I GAVE HIS COUNSEL A COPY OF THE ORDER IN

20  THE INITIAL DISCLOSURES.                                          12:02

21     **THE COURT:**  AND YOU TOLD HIM THAT YOU WERE GOING TO

22  CANCEL THE DEPOSITION.

23     **MR. COREY:**  I TOLD HIM THAT HE WAS A PHASE TWO

24  DEPONENT.

25     **THE COURT:**  AND... THAT'S IT?                             12:02

1      **MR. COREY:**  I TOLD HIM, YEAH, I TOLD HIM HE DIDN'T

2   HAVE TO APPEAR BECAUSE HE WAS PHASE TWO AND THE COURT HAD

3   STAYED IT.

4          **THE COURT:**  LET'S BE CAREFUL ON THIS, COUNSEL.

5          **MR. COREY:**  THE LAST POINT IS THAT I BELIEVE                    12:02

6   MR. NOLAN REFERRED TO AN AGREEMENT THAT MR. BOUSQUETTE HAS WITH

7   MATTEL THAT'S ATTACHED AS AN EXHIBIT TO MR. HERRINGTON'S

8   SUPPLEMENTAL DECLARATION.

9          THAT AGREEMENT HAS EXPIRED.

10         THANK YOU, YOUR HONOR.                                              12:02

11         **THE COURT:**  ALL RIGHT.  I'LL BE ISSUING AN ORDER.

12  THIS IS ONE OF THOSE ORDERS THAT YOU'LL BE LOOKING FOR THAT

13  WILL ACTUALLY BE OF SUBSTANCE AND NOT JUST A SEALING, COUNSEL.

14         YOU'RE GOING TO TURN IN A PROPOSED ORDER?

15         **MR. QUINN:**  YES, YOUR HONOR.                                    12:02

16         **THE COURT:**  ANYTHING FURTHER?

17         **MR. COREY:**  NO, YOUR HONOR.

18                         CERTIFICATE

19

20  I hereby certify that pursuant to section 753, title 28, United
    States code, the foregoing is a true and correct transcript of
21  the stenographically recorded proceedings held in the
    above-entitled matter and that the transcript page format is in
22  conformance with the regulations of the judicial conference of
    the United States.

23

24  _____          _____

25  THERESA A. LANZA, RPR, CSR                      Date
    FEDERAL Official COURT Reporter