1                  UNITED STATES DISTRICT COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3                        EASTERN DIVISION

4                            - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                            - - -

7   carter bryant, et. Al.,          )
                                      )
8                     Plaintiffs,  )
                                      )
9             vs.                     )   No. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10  mattel, inc., et. Al.,            )
                                      )
11                    Defendants.  )
    _____)
12  AND CONSOLIDATED ACTIONS,         )
    _____)
13

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    Riverside, California

17                   Monday, March 31, 2008

18                        10:09 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24               3470 12th Street, Rm. 134
                Riverside, California  92501
25                    951-274-0844
                   WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2   On behalf of CARTER BRYANT:

 3                        KEKER & VAN NEST
                          BY:  MATTHEW M. WERDEGAR
 4                        710 SANSOME STREET
                          SAN FRANCISCO, California  94111-1704
 5                        415-391-5400

 6
     on behalf of MATTEL:
 7
                          QUINN EMANUEL
 8                        BY:  JON COREY
                          865 S. FIGUEROA STREET,
 9                        10TH FLOOR
                          LOS ANGELES, California  90017
10                        213-624-7707

11
     ON BEHALF OF MGA ENTERTAINMENT:
12
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
13                        BY:  THOMAS J. NOLAN
                          BY:  CARL ALAN ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

MARCH 31, 2008                    ED CV 04-09049-SGL

1                          I N D E X

2                                                    Page

3     MOTION........................................    4

MOTION........................................    4

1      RIVERSIDE, CALIFORNIA; MONDAY, MARCH 31, 2008; 10:09 A.M.

2                              -oOo-

3          **THE CLERK:**  CALLING CALENDAR ITEM FIVE, CARTER BRYANT

4    VERSUS MATTEL, INC., CASE NUMBER CV 04-09049, ET AL.

5          MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE           10:01

6    YOUR APPEARANCES FOR THE RECORD.

7          **MR. COREY:**  JON COREY ON BEHALF OF MATTEL.

8          GOOD MORNING, YOUR HONOR.

9          **MR. NOLAN:**  GOOD MORNING, YOUR HONOR.

10         TOM NOLAN ON BEHALF OF MGA AND ISAAC LARIAN.                10:09

11         **MR. WERDEGAR:**  GOOD MORNING, YOUR HONOR.

12         MATT WERDEGAR ON BEHALF OF CARTER BRYANT.

13         **THE COURT:**  GOOD MORNING TO YOU ALL.

14         WE'RE ON CALENDAR THIS MORNING FOR A NUMBER OF

15   MOTIONS BROUGHT BY MATTEL REGARDING PORTIONS OF THE DISCOVERY     10:09

16   MASTER'S ORDERS ISSUED ON FEBRUARY 15TH AND 20TH OF THIS YEAR.

17         I ALSO WANT TO DISCUSS THE PROTOCOL FOR AEO DOCUMENTS

18   IN THE SETTLEMENT CONFERENCE THAT I KNOW IS GOING TO BE COMING

19   UP IN A MONTH OR SO.  THEN THERE'S ALSO A MATTER THAT THE COURT

20   WANTS TO TAKE UP CONCERNING THIS MOTION TO DISQUALIFY THAT'S      10:09

21   BEEN FILED BY MATTEL, BUT WE CAN ADDRESS THAT LATER.

22         LET'S BEGIN WITH THE MOTIONS CONCERNING THE DISCOVERY

23   MASTER'S ORDERS OF FEBRUARY 15TH AND FEBRUARY 20TH.

24         I'LL INDICATE AT THE OUTSET OF EACH MOTION -- AND

25   LET'S JUST GO THROUGH THEM IN ORDER -- MY TENTATIVE THOUGHTS      10:10

1   AFTER REVIEWING THE PAPERS, AND THEN I'LL HEAR FURTHER ARGUMENT

2   TO THE EXTENT NECESSARY FROM EITHER PARTIES.

3           THE FIRST ONE IS ACTUALLY THE ONE THAT I HAVE THE

4   GREATEST DIFFICULTY WITH; AND THAT RELATES TO THIS WHOLE WORD

5   OF "INVENTION" IN THE AGREEMENT AND WHAT IT MEANS.                    10:10

6           MY CONCERN IS THAT -- THE DISCOVERY MASTER FOUND THAT

7   INTERROGATORIES 27 THROUGH 29 WERE BOTH OVERBROAD AND UNDULY

8   BURDENSOME.  I GUESS MY SENSE AFTER READING THE PAPERS IS,

9   THERE'S NO QUESTION THAT IT'S BURDENSOME, BUT I THINK THE

10  OVERBREADTH FINDING MAY HAVE BEEN MISTAKEN.  I ALMOST HAVE A         10:10

11  SENSE THAT THE DISCOVERY MASTER MAY HAVE SUBSTITUTED A STANDARD

12  OF ADMISSIBILITY FOR A STANDARD OF DISCOVERY WITH RESPECT TO

13  THESE DOCUMENTS.  I THINK WE MAY BE PUTTING THE CART BEFORE THE

14  HORSE TO SO LIMIT THE PHRASE "INVENTION," AS THE DEFENSE CALLS

15  UPON THE COURT TO DO SO.                                             10:11

16          I'M NOT SAYING THAT I MAY ULTIMATELY NOT DECIDE THAT

17  WAY AT THE SUMMARY JUDGMENT STAGE, BUT AT THE DISCOVERY STAGE,

18  IT'S NOT CLEAR TO ME THAT IT'S PROPER TO SO LIMIT WHAT

19  CONSTITUTES AN INVENTION BY MR. CARTER BRYANT.  I THINK WE MAY

20  BE GETTING AHEAD OF OURSELVES.  I THINK THAT, PERHAPS, MATTEL        10:11

21  IS ENTITLED, OR AT LEAST IT IS RELEVANT, TO GET THE FULL SCOPE

22  OF RESPONSIVE ANSWER TO THE QUESTION OF WHAT EXACTLY HE DID,

23  WHAT EXACTLY CARTER BRYANT DID, THAT MIGHT BE CONSIDERED AN

24  INVENTION, OR SOMETHING ALONG THE LINES OF AN INVENTION, AS

25  MATTEL DEFINES IT.                                                   10:12

```
 1            AT THE SAME TIME, I AM LEFT WITH THIS CONCERN THAT

 2    WHAT IS BEING ASKED IS QUITE BURDENSOME, AS THE DISCOVERY

 3    MASTER FOUND; THAT'S WHY I SAY THIS IS THE ONE OF THE SEVEN

 4    MOTIONS THAT I'M STRUGGLING WITH THE MOST.  SO I WOULD

 5    APPRECIATE FURTHER ARGUMENT, IN LIGHT OF THE COURT'S THOUGHTS,   10:12

 6    FROM BOTH SIDES ON THIS.

 7            MR. COREY, SINCE THIS IS YOUR MOTION, I WILL PERMIT

 8    YOU TO PROCEED FIRST.

 9            DO YOU UNDERSTAND WHAT I'M ASKING?  DO YOU UNDERSTAND

10    WHAT I'M TRYING TO ARTICULATE HERE?                             10:12

11            PERHAPS I'M NOT DOING IT AS ARTFULLY AS I SHOULD.

12            MR. COREY:  I BELIEVE THAT I UNDERSTAND EXACTLY WHAT

13    THE COURT IS ARTICULATING, AND I'M THINKING ALONG THE SAME

14    LINES.  IT SEEMED TO ME THAT THE DISCOVERY MASTER KIND OF

15    JUMPED AHEAD OF WHERE HE SHOULD BE.                             10:12

16            I MEAN, IT'S ABSOLUTELY CLEAR THAT THE DEFENDANTS

17    HAVE A DEFENSE BASED ON A CERTAIN INTERPRETATION OF THE

18    CONTRACT, AND THAT PARTICULAR WORD IN THE CONTRACT.  BUT THAT'S

19    NOT A VALID OBJECTION TO A DISCOVERY REQUEST.  IT SEEMS TO ME

20    THAT OBJECTION, BASED ON THEIR INTERPRETATION OF THE CONTRACT,  10:13

21    IS SOMETHING THAT THE DISCOVERY MASTER FOUND PALATABLE AND

22    RULED THAT WAY.  BUT I DON'T THINK THAT'S APPROPRIATE,

23    PARTICULARLY IN LIGHT OF THE FACT THAT I THINK EVERYONE KNOWS

24    WHAT WE'RE TALKING ABOUT.

25            WHAT MATTEL WOULD LIKE IS AN ARTICULATION FROM THE      10:13
```

1  DEFENDANTS, BOTH CARTER BRYANT AND MGA, AS TO THE TIMING OF THE

2  CREATION OF ALL OF THE THINGS THAT CARTER BRYANT CREATED AND

3  SOME OF THE THINGS THAT MGA CREATED AFTER THEY WERE INVOLVED IN

4  THE PROCESS.

5       **THE COURT:**  WHETHER WE CALL THAT AN INVENTION OR          10:13

6  WHETHER WE JUST CALL THAT STUFF, WHATEVER IT IS, THAT'S WHAT

7  YOU'RE TRYING TO DISCOVER?

8       **MR. COREY:**  EXACTLY.  WHATEVER THE PHRASEOLOGY IS,

9  THERE'S A POSITION THERE THAT I UNDERSTAND THE DEFENDANTS HAVE.

10  MATTEL SHOULD BE ENTITLED TO KNOW THAT BEFORE WE TAKE THIS TO    10:13

11  TRIAL.  AND WHAT WE TRIED TO DO IS PARSE THE INTERROGATORIES

12  UP, TO DIVIDE THEM VERY DISCREETLY BY DATES, TO MAKE IT EASIER

13  TO RESPOND.

14       **THE COURT:**  FAIR ENOUGH.

15       WHAT ABOUT THE BURDENSOME CONCERN?  BECAUSE I DO TEND        10:13

16  TO THINK THAT PERHAPS THE DISCOVERY MASTER HAD A POINT.

17       **MR. COREY:**  WE CAN DEAL WITH THAT.  MATTEL IS WILLING

18  TO DO WHAT IT NEEDS TO DO TO GET RESPONSES TO THESE QUESTIONS.

19       I UNDERSTAND ONE OF THE BASIS FOR THE BURDEN

20  OBJECTIONS WAS THAT CARTER BRYANT WOULD HAVE TO DOCUMENT EVERY   10:14

21  IDEA OR THOUGHT THAT HE HAD.  I MEAN, THAT'S NOT WHAT MATTEL IS

22  LOOKING FOR.

23       I THINK WE'RE LOOKING FOR THE DATE OF CREATION OF

24  DRAWINGS, SKETCHES, THINGS OF THAT NATURE; SCULPTS, MOLDS.

25  THAT'S WHAT WE'RE LOOKING FOR.                                  10:14

1          **THE COURT:**  THIS IS PRECISELY THE PROBLEM, THOUGH.  I

2    MEAN, AS WORDED, THE INTERROGATORY IS OVERBURDENSOME OR UNDULY

3    BURDENSOME.

4          WHAT I DON'T HAVE BEFORE ME, AND WHAT I WOULD NOT BE

5    PREPARED TO RULE ON, IS SOMETHING IN THE ABSTRACT.  I DON'T          10:14

6    WANT TO JUST SEND FORTH, 'OKAY, FINE; GO WORK SOMETHING OUT.'

7    IF YOU COULD HAVE WORKED SOMETHING OUT, I TRUST YOU WOULDN'T BE

8    HERE RIGHT NOW.

9          SO HOW WOULD YOU WORD IT AT THIS POINT TO AVOID THE

10   BURDENSOME CONCERN?                                                  10:14

11         **MR. COREY:**  AND I WASN'T SUGGESTING THAT WE WOULD

12   LEAVE AND WORK IT OUT LATER.  I WAS SUGGESTING THAT I THINK,

13   HERE IN THIS FORUM, WE CAN NARROW THAT TO SOMETHING THAT, I

14   THINK, WOULD NOT BE BURDENSOME.  I THINK THAT WOULD BE THE

15   IDENTIFICATION OF THE DATE OF CREATION; WHO CREATED THE             10:15

16   DRAWINGS -- DRAWINGS, MEANING SKETCHES -- PAINTINGS,

17   COLORING INS, PRIOR PREEXISTING SKETCHES, THINGS LIKE THAT; ANY

18   TANGIBLE EMBODIMENTS OF THE DOLL, MOLDS, SCULPTS, THINGS LIKE

19   THAT; AND TO THE EXTENT THAT THERE WERE ANY MOLDS ASSOCIATED

20   WITH THE DOLLS CREATED PRIOR TO JUNE -- I BELIEVE IT'S JUNE         10:15

21   2001, WHEN THOSE WERE CREATED AND BY WHOM.

22         **THE COURT:**  VERY GOOD.

23         MR. NOLAN?

24         **MR. NOLAN:**  THANK YOU, YOUR HONOR.

25         YOUR HONOR, WHEN I HEARD THE ISSUE FRAMED, WITH ALL           10:15

```
 1   DUE RESPECT, I THOUGHT IT WAS LIMITED TO THIS QUESTION OF,

 2   'WHAT'S AN INVENTION?'

 3            I WENT BACK REAL QUICKLY TO LOOK, AND, OF COURSE,

 4   THAT'S NOT THE REAL ISSUE HERE, YOUR HONOR.  IT IS OVERBROAD

 5   THE WAY THEY DEFINE 'INVENTIONS.'                              10:16

 6            BUT FOR ANYBODY AT THIS STAGE TO APPEAR BEFORE YOU

 7   AND SAY THAT THE ISSUE HAS NOT BEEN FRAMED FOR PURPOSES OF

 8   DISCOVERY AND GOING TO TRIAL ON THIS ISSUE OF INVENTION REALLY

 9   DEFIES CREDULITY, TO BE HONEST WITH YOU, YOUR HONOR.

10            WE HAVE 28 EXPERTS WHO HAVE ALREADY FILED REPORTS,    10:16

11   REBUTTAL REPORTS.  THERE HAVE BEEN 121 DEPOSITIONS,

12   123 INTERROGATORIES, 6,961 ADMISSIONS, AND FIVE MILLION PAGES

13   OF DOCUMENTS.  AND THIS INTERROGATORY WAS NOT STIFFED BY US.

14   IN OTHER WORDS, WE DIDN'T JUST OBJECT TO IT; WE ANSWERED IT.

15   WE GAVE THEM THE UNDERSTANDING THAT WE HAD WITH RESPECT TO,    10:17

16   'ALL RIGHT, WE CONTEND THAT THE DRAWING WAS DONE ON THIS DATE.'

17   CARTER BRYANT HAS BEEN DEPOSED NINE DAYS ON THIS PARTICULAR

18   ISSUE.  ISAAC LARIAN LAST WEEK WAS DEPOSED ON SIMILAR ISSUES.

19            WHAT JUDGE INFANTE DID IN BALANCING THE BURDENSOME

20   TEST, YOUR HONOR, IS TO SAY, 'ALL RIGHT, LISTEN; YOU'RE GOING  10:17

21   INTO RULE 16 DISCOVERY.'  WE'RE EXCHANGING EXHIBITS TOMORROW.

22   WE'RE EXCHANGING DESIGNATIONS FROM DEPOSITIONS TOMORROW.  WE'RE

23   FILING OUR REPLY TO THE SUMMARY JUDGMENT BRIEFS, WHICH GO TO

24   THIS VERY ISSUE.  THEY MOVED ON SUMMARY JUDGMENT ON THIS

25   PARTICULAR POINT.                                             10:17
```

1          **THE COURT:**  I'M AWARE OF THAT.

2          **MR. NOLAN:**  THERE'S BEEN VOLUMINOUS EFFORT WITH

3    RESPECT TO THIS.  YOUR HONOR, RESPECTFULLY, TO NOW COME BACK

4    AND ON THE BURDENSOME POINT SAY, 'NO, I THINK YOU HAVE TO NOW

5    GO BACK AND DO WHAT JUDGE INFANTE HESITATED DOING AFTER READING          10:18

6    NEARLY' -- HE HAD 100 PAGES OF BRIEFING; THERE WERE 2,200

7    SUPPORTING EXHIBITS IN FRONT OF HIM FOR THIS MOTION AND 1,100

8    PAGES OF INTERROGATORY RESPONSES; AND HE CONCLUDED THAT WHAT WE

9    GAVE THEM WAS ADEQUATE.  THEY KNEW SUFFICIENTLY WHAT WE WERE

10   CONTENDING IN THIS CASE.  AND THAT, OF COURSE, IS WHAT THE          10:18

11   INTERROGATORY RESPONSE REQUIRES US.

12          HE THEN ANALYZED IT:  'OKAY, IN THE CONTEXT OF THIS

13   LITIGATION, THE BREADTH OF WHAT HAS ALREADY BEEN DONE MEASURED

14   AGAINST THE EFFORT THAT HAS BEEN DONE IN THIS REGARD, THERE'S

15   NO CONFUSION HERE.'          10:18

16          **THE COURT:**  WELL, WE'RE USING THESE PHRASES

17   "BREADTH" -- I ASSUME WE'RE USING THEM THE SAME WAY.  I

18   UNDERSTAND THE CONCERN, AND I UNDERSTAND JUDGE INFANTE'S

19   CONCERN ABOUT THE BURDENSOME ELEMENT, SO I'M SEPARATING THAT

20   OUT FOR A SECOND.  BUT WHEN I TALK ABOUT OVERBREADTH, I'M          10:19

21   SPEAKING TO THE OVERBREADTH OF THE REQUEST OF THE INTERROGATORY

22   ITSELF.  AND THAT IS WHERE I'M HAVING TROUBLE WITH JUDGE

23   INFANTE'S RULING, IN TERMS OF WHETHER THE REQUEST ITSELF IS

24   OVERBROAD, BASED ON THE REASONING THAT HE SUPPLIED IN HIS

25   DECISION.          10:19

1          CONFINING THE WORD "INVENTION" TO A PATENTABLE

2    INVENTION; CONFINING THE WORD "INVENTION" AS IT'S DONE OR AS

3    IT'S LIMITED IN THE -- AND URGED BY THE DEFENSE VERSUS THE

4    DEFINITION BY THE PLAINTIFFS, I'M NOT SO SURE THAT THE

5    PLAINTIFFS' DEFINITION OF AN INVENTION IS OVERBROAD.          10:19

6          THE BURDENSOME ISSUE IS A SEPARATE ISSUE.  I DON'T

7    WANT TO MIX THOSE ISSUES.

8          **MR. NOLAN:**  AND I WENT TO WHAT I THOUGHT WAS GOING TO

9    BE THE STRONGER ARGUMENT.

10          **THE COURT:**  IT IS THE STRONGER ARGUMENT FROM YOUR      10:19

11    PERSPECTIVE.

12          **MR. NOLAN:**  AT LEAST I CALLED MYSELF OUT ON THAT ONE.

13          **THE COURT:**  FAIR ENOUGH.

14          **MR. NOLAN:**  LET ME GO BACK TO THE BREADTH ARGUMENT

15    NOW.          10:20

16          BUT, YOUR HONOR, EVEN ON THE OVERBREADTH ASPECT OF

17    THE DEFINITIONAL TERM, THEY DEFINE "INVENTION" IN A WAY THAT

18    INVOLVES THREE DIFFERENT POINTS:  PATENT LAW, COPYRIGHT LAW,

19    AND THE INVENTIONS AGREEMENT AT ISSUE IN THIS CASE.

20          THERE IS NO DOUBT THAT IN A JURY'S MIND, THE IDEA OF      10:20

21    WHAT AN INVENTION IS IS GOING TO BE AN IMPORTANT ISSUE.  BUT,

22    YOUR HONOR, THE DEFINITION THAT MATTEL USES IN THIS CASE IS NOT

23    THE DEFINITION THAT THEY USE IN THE INVENTION AND

24    CONFIDENTIALITY AGREEMENT SIGNED ON JANUARY 4, 1999 BY

25    CARTER BRYANT.  IT IS FAR MORE EXPANSIVE.  THESE TERMS ARE NOT      10:20

```
 1   INCLUDED.

 2              THEY DO USE THE TERM "INVENTION," OBVIOUSLY, IN THE

 3   INVENTION AGREEMENT.  AND THEN THEY HAVE A DEFINING PARAGRAPH

 4   THAT --

 5              THE COURT:  I HAVE THAT BEFORE ME.  RIGHT.          10:20

 6              MR. NOLAN:  AND IT GOES BEYOND THAT.

 7              WHAT WE DID, YOUR HONOR, WAS WE ANSWERED THAT

 8   QUESTION.  WE ANSWERED AND GAVE THEM SUFFICIENT INFORMATION,

 9   AT LEAST ACCORDING TO JUDGE INFANTE THAT WE MET OUR BURDEN

10   HERE.                                                         10:21

11              BUT IT'S NOT JUST THE TERM "INVENTION."  THE

12   INTERROGATORY GOES ON AND SAYS, 'GIVE US AND IDENTIFY ALL

13   PERSONS AND ALL DOCUMENTS THAT REFER TO OR RELATE TO SUCH

14   FACTS.'

15              THAT'S BROAD IN AND OF ITSELF, YOUR HONOR, WHEN YOU 10:21

16   THEN APPLY IT TO ALL OF THE DEFINITIONAL TERMS AS SET FORTH IN

17   THE INTERROGATORY.

18              I WOULD SUBMIT, YOUR HONOR, THAT ON REVIEW, I THINK

19   THE FEDERAL RULES AND YOUR DISCOVERY STANDING ORDER IN THIS

20   CASE DOES NOT ALLOW THEM TO REDO THE INTERROGATORY.  THEY      10:21

21   ALWAYS HAD THE OPPORTUNITY TO RELOAD, JUDGE.  THEY HAD THE

22   OPPORTUNITY TO MEET JUDGE INFANTE'S CONCERN.  BUT RATHER THAN

23   DOING THAT, THEY COME UP HERE.  NOW MR. COREY SAYS, 'OH, YOU

24   KNOW WHAT; I'VE GOT A GREAT IDEA.  YOU KNOW WHAT; YOU'RE RIGHT,

25   LET'S NARROW IT.'                                             10:22
```

1          WELL, GUESS WHAT?  IN DECEMBER, IN THE MEET AND

2    CONFERS, THAT WAS THE TIME TO START TO NARROW.  THAT'S WHAT

3    THIS PROCESS IS ALL ABOUT.  YOU DON'T GET TO THE END OF THE

4    PROCESS AND TAKE AN APPEAL AND STAND IN FRONT OF A DISTRICT

5    COURT JUDGE AND FINALLY ADMIT, 'YOU KNOW WHAT, JUDGE; THAT'S          10:22

6    ALL WE REALLY WANT.'

7          WHY DIDN'T THEY TELL ME THAT IN DECEMBER?  I WOULDN'T

8    HAVE SPENT THOUSANDS OF DOLLARS TRYING TO RESPOND TO THIS.  WE

9    WOULDN'T HAVE ANSWERED THE INTERROGATORY.  WE WOULDN'T HAVE HAD

10   TO GO TO JUDGE INFANTE.  AND I SUSPECT JUDGE INFANTE WOULD BE          10:22

11   INTERESTED TO KNOW THAT MATTEL WAS NOW WILLING, MAYBE, TO

12   NARROW THIS ISSUE.

13         IT'S SIMPLY NOT FAIR, YOUR HONOR.

14         AND THEN WHEN YOU WEIGH THE BALANCING OF THE BURDENS,

15   I THINK THEN THE ISSUE BECOMES CRYSTAL CLEAR AS TO WHAT'S GOING          10:22

16   ON.

17         WE ARE GETTING READY FOR A TRIAL.  THE BURDEN, YOUR

18   HONOR, NOW, FOR US, TO TAKE PEOPLE AWAY FROM PREPARING THE

19   EXHIBIT LIST; WRITING THE OPPOSITION TO THE MOTION TO

20   DISQUALIFY; WRITING THE REPLY BRIEF TO THE SUMMARY JUDGMENT;          10:23

21   DESIGNATING THE DEPOSITIONS; OUT OF 181 DEPOSITIONS, TO GO BACK

22   AND ANSWER AN INTERROGATORY THAT, FRANKLY, YOUR HONOR, FRANKLY,

23   IT'S JUST BUSY WORK ON THEIR PART.

24         THEY KNOW EXACTLY WHAT INVENTION IT IS.  THEY KNEW IT

25   EXACTLY ENOUGH TO BRING A SUMMARY JUDGMENT MOTION ON THE POINT.          10:23

```
 1   THEY DIDN'T ATTACH A 56(F) AFFIDAVIT IN SUPPORT OF THEIR

 2   SUMMARY JUDGMENT PAPERS, THAT I RECALL, SAYING THEY NEEDED MORE

 3   INFORMATION OR, 'GEE, WE'RE CONFUSED AS TO WHAT MGA IS

 4   CONTENDING TO BE THE DEFINITION OF WHAT AN INVENTION IS.'

 5            I'M GOING TO END ON THIS POINT; AND I MEAN IT                10:23

 6   SINCERELY, YOUR HONOR:  YOU CANNOT ALLOW -- YOU SHOULD NOT

 7   ALLOW A REDO AT THIS POINT.  THAT'S BEEN THE TROUBLE WITH THIS

 8   LITIGATION.  THESE MEET AND CONFERS SHOULD HAVE BEEN CONDUCTED

 9   IN GOOD FAITH.  THEY WEREN'T.

10            THE COURT:  THANK YOU, COUNSEL.                             10:23

11            MR. COREY, DID YOU WANT TO RESPOND AT ALL?

12            MR. COREY:  YES, PLEASE.

13            THE COURT:  ALL RIGHT.  YOU MAY.

14            MR. COREY:  THERE WAS A 56(F) DECLARATION THAT WAS

15   FILED.  LET'S JUST START THERE.                                     10:24

16            THE COURT:  I KNOW THERE WAS.

17            MR. COREY:  LET'S BE VERY CLEAR AS TO WHY WE'RE HERE.

18            MATTEL IS HERE BECAUSE WE THINK THAT JUDGE INFANTE

19   ERRED WHEN HE MADE THIS DECISION.  THIS IS THE FORUM TO RESOLVE

20   THAT ISSUE.  AND WHEN I WAS LISTENING TO MR. NOLAN, HE SAID        10:24

21   THAT THEY HAD RESPONDED TO THE INTERROGATORY AND HE HAD

22   IDENTIFIED FOR MATTEL WHEN THESE THINGS WERE CREATED.

23            LET ME JUST READ THE LAST SUPPLEMENTAL RESPONSE THAT

24   I GOT, TWO EXCERPTS FROM IT.  THIS IS THE PROCTOR DECLARATION,

25   EXHIBIT A, PAGE 214.  BECAUSE I LOOKED AT THE RESPONSES TO FIND    10:24
```

1    OUT WHAT DATES WERE SET FORTH IN THERE, AND THIS IS WHAT I

2    FOUND; THIS IS THE BEST THAT I FOUND.

3            "CARTER BRYANT'S AUGUST AND SEPTEMBER 1998 DRAWINGS

4    THAT HE CALLED BRATZ, INCLUDING BUT NOT LIMITED TO THOSE

5    DRAWINGS IDENTIFIED BY CARTER BRYANT IN EXHIBIT 5 OF HIS          10:25

6    DEPOSITION AS BEING SKETCHED IN AUGUST OF 1998."

7            THAT'S ABOUT TEN DRAWINGS OF THE -- HOW MANY WE'RE

8    TALKING ABOUT; 100, 150 DRAWINGS.

9            THEN ON LINES 11 THROUGH 13, "ALL OF CARTER BRYANT'S

10   SKETCHES AND/OR MODIFICATIONS OF SKETCHES RELATING TO THE BRATZ   10:25

11   CONCEPT WHICH WERE MADE BY HIM AFTER JANUARY 4, 1999, AND PRIOR

12   TO OCTOBER 21, 2000."

13           I DON'T KNOW WHAT THOSE ARE.

14           I MEAN, I UNDERSTAND THAT THERE'S A CATEGORY OF

15   SAYING HE DID SOME OF THESE THINGS THEN.  HERE, AT THIS POINT     10:25

16   IN THIS LITIGATION, I DON'T KNOW WHAT THOSE ARE, BASED ON THESE

17   INTERROGATORY RESPONSES.

18           I CAN GUESS.  I HAVE A COUPLE OF EXCERPTS OF

19   DEPOSITION TESTIMONY THAT ALLOW ME TO IDENTIFY A COUPLE MORE,

20   BUT I DON'T HAVE THAT.  AND BEFORE WE START DOWN THIS ROAD,       10:25

21   MATTEL IS ENTITLED TO KNOW WHAT DEFENDANTS' POSITION IS WITH

22   RESPECT TO THE DATES OF THE CREATION OF SOME OF THESE

23   DOCUMENTS.

24           MR. NOLAN TALKED ABOUT A DO-OVER.  IT DOESN'T WORK

25   THAT WAY.  WHAT HE'S SUGGESTING IS THAT WE SHOULD HAVE COME       10:26

1    BACK TO THIS COURT, SOUGHT LEAVE TO FILE AN ADDITIONAL

2    INTERROGATORY --

3            **THE COURT:**  WELL, HE'S SUGGESTING MORE THAN THAT.

4    HE'S SUGGESTING THAT AT THE MEET AND CONFER PROCESS, YOU COULD

5    HAVE CERTAINLY SUGGESTED, IN ADVANCE OF FILING THIS MOTION,          10:26

6    THAT YOU WERE WILLING TO LIMIT THE SCOPE.

7            **MR. COREY:**  I DON'T THINK WE WERE.  AND WE'RE NOT

8    NOW.

9            WHAT I'D SUGGESTED TO THE COURT IS, IF WE'RE TO THAT

10   POINT -- THE INFORMATION THAT I ARTICULATED FOR YOU IS THE          10:26

11   INFORMATION THAT WE SOUGHT IN THE INTERROGATORY.  IT WAS AN

12   EFFORT TO GET AROUND THE SEMANTIC ISSUE.

13           **THE COURT:**  WELL, NOT AS WORDED.  WHAT YOU'RE

14   SUGGESTING NOW IS SOMETHING WHICH IS MORE LIMITED IN SCOPE.

15   YOU'RE ADDRESSING THE COURT'S BURDENSOME CONCERNS BY LIMITING        10:26

16   THE SCOPE OF THE INTERROGATORY.

17           **MR. COREY:**  I WOULDN'T SAY IT'S LIMITING.  I WOULD

18   SAY IT'S REWRITING, TO TAKE THE INVENTIONS ISSUE OUT OF PLAY.

19   I MEAN, I DON'T CARE WHAT THE TERMINOLOGY IS.  THAT'S THE

20   INFORMATION THAT THE INTERROGATORY SOUGHT, WHAT I ARTICULATED        10:27

21   FOR YOU.  AND IF WHAT WE NEED TO DO TO RESOLVE MR. NOLAN'S

22   CONCERN IS TO NOT USE THE WORD "INVENTION," I THINK WE'VE DONE

23   THAT.

24           **THE COURT:**  OKAY.  VERY GOOD.

25           COUNSEL FOR CARTER BRYANT?                                   10:27

```
 1          MR. WERDEGAR:  FIRST OF ALL, I WOULD JUST LIKE TO SAY
 2   I JOIN MR. NOLAN'S COMMENTS ABOUT THE INTERROGATORY.  I JUST
 3   WANT TO RESPOND TO MR. COREY AND ADDRESS A FEW ADDITIONAL
 4   ISSUES.
 5          WITH RESPECT TO THE BREADTH OF THE TERM "INVENTION,"   10:27
 6   YOUR HONOR, FIRST OF ALL, I THINK IT'S WORTH REMEMBERING, THESE
 7   ARE CONTENTION INTERROGATORIES, AND MATTEL WAS ASKING US WHAT
 8   OUR CONTENTIONS WERE WITH REGARD TO WHAT MR. BRYANT MAY HAVE
 9   INVENTED AT DIFFERENT PERIODS OF TIME.  AND WE SET FORTH WHAT
10   OUR CONTENTIONS WERE VERY CLEARLY.  SO IT'S NOT TRUE THAT THESE  10:27
11   INTERROGATORIES WERE JUST ABOUT FINDING OUT WHEN MR. BRYANT
12   MADE A CERTAIN DRAWING OR A CERTAIN SKETCH.
13          IN THE MEET AND CONFER IN DECEMBER, WE EXPRESSLY
14   ASKED, 'IS THERE ANY WAY YOU CAN LIMIT THIS?  IS THERE ANY WAY
15   YOU CAN KIND OF CUT DOWN ON' --                                10:28
16          THE COURT:  AND YOU GO FURTHER THAN THAT.  IN YOUR
17   PAPERS, IF I RECALL CORRECTLY, YOU INDICATE THAT YOU OFFER TO
18   PROVIDE EVERY DRAWING AND EVERY SKETCH THAT MR. BRYANT ACTUALLY
19   MADE AT VARIOUS TIME PERIODS SPECIFIED BY THE PLAINTIFF.
20          MR. WERDEGAR:  WE DID.  WE OFFERED TO IDENTIFY THEM     10:28
21   CHRONOLOGICALLY.  THAT OFFER WAS EXPRESSLY REJECTED.
22          AND I GUESS TO JUMP AHEAD TO THAT ISSUE, YOUR HONOR,
23   IT'S ALSO NOT TRUE THAT THEY DON'T KNOW.  AND THIS IS
24   PARTICULARLY IN THE CONTEXT OF MR. BRYANT.  HE'S BEEN DEPOSED
25   OVER FIVE DAYS.  AND NOT SURPRISINGLY, A GREAT MAJORITY OF THAT  10:28
```

1   DEPOSITION FOCUSED ON THIS VERY ISSUE.  HE'S GIVEN EXHAUSTIVE

2   TESTIMONY.  AND IN OUR RESPONSES, WE LIST, BY PAGE AND LINE,

3   THE TESTIMONY THAT RELATES TO THE ISSUES THEY'RE ASKING ABOUT.

4   I DON'T THINK THERE'S ANY POINT IN US HAVING TO GO BACK AND

5   BASICALLY SET FORTH IN WRITING EVERYTHING THAT MR. BRYANT HAS          10:28

6   ALREADY TESTIFIED TO UNDER OATH.

7          THERE'S ALSO BEEN, AS MR. NOLAN POINTED OUT,

8   THOUSANDS OF RFA'S PROPOUNDED BY MATTEL IN THIS CASE, A GREAT

9   NUMBER OF WHICH, HUNDREDS OF WHICH, RELATE TO, YOU KNOW,

10  'DO YOU CONTEND THAT A PARTICULAR DRAWING WAS CREATED AT A           10:29

11  PARTICULAR TIME'; YOU KNOW, 'ADMIT THAT A CERTAIN DRAWING WAS

12  DONE AT THIS TIME VERSUS THAT TIME?'

13         CARTER BRYANT HAS ANSWERED ALL OF THOSE RFA'S.  SO

14  WE'VE PROVIDED A TREMENDOUS AMOUNT OF INFORMATION ON THE TOPICS

15  THAT MR. COREY IS SAYING THIS INTERROGATORY IS REALLY ABOUT.         10:29

16  BUT IN MEET AND CONFER, THAT WAS NOT WHAT THEY WERE TELLING US.

17  THEY WERE TELLING US THAT THEY WEREN'T GOING TO LIMIT IT IN ANY

18  WAY; THEY REALLY DID WANT EVERY PASSING THOUGHT, EVERY PASSING

19  COMMENT.  AND NOW, FACED WITH A RULING BY THE DISCOVERY MASTER

20  AND FACED WITH THE CONCERNS YOU'VE ALREADY EXPRESSED, NOW AND        10:29

21  ONLY NOW ARE THEY WILLING TO MEET AND CONFER LEGITIMATELY ABOUT

22  NARROWING THIS.

23         SO THERE'S THE CONCERN ABOUT THE BREADTH OF THE TERM

24  "INVENTION" IN THE CONTEXT OF A CONTENTION INTERROGATORY.

25  THERE'S ALSO, AS MR. NOLAN MENTIONED, AN ADDITIONAL OVERBREADTH      10:29

1    CONCERN WITH RESPECT TO ASKING FOR ALL FACTS THAT REFER OR

2    RELATE, MOST BROADLY DEFINED REFER OR RELATE, TO EACH OF THOSE

3    SAID INVENTIONS.  THERE'S LOTS OF CASE LAW THAT MGA CITE IN ITS

4    BRIEF, AND WE CITED BELOW, INCLUDING CASE LAW FROM THIS

5    DISTRICT, HOLDING THAT ASKING FOR ALL FACTS ABOUT VERY BROAD          10:30

6    TOPICS LIKE THAT IS INHERENTLY OVERBROAD AND UNDULY BURDENSOME.

7            I WOULD SUBMIT, YOUR HONOR, EVEN IF YOU DON'T

8    NECESSARILY AGREE WITH THOSE CASES, THE DISCOVERY MASTER CAN'T

9    HAVE ERRED AS A MATTER OF LAW SINCE THERE IS THIS BODY OF CASE

10   LAW OUT THERE RELATED TO THAT.                                        10:30

11           **THE COURT:**  THANK YOU.

12           **MR. WERDEGAR:**  AND THEN JUST ONE LAST POINT,

13   YOUR HONOR.

14           WE CERTAINLY MADE THESE OBJECTIONS, AND THE COMMENTS

15   SO FAR HAVE FOCUSED ON THE OBJECTIONS TO THE INTERROGATORIES.         10:30

16   BUT I JUST WANT TO REMIND THE COURT THAT WE ALSO PROVIDED A

17   VERY DETAILED SUBSTANTIVE RESPONSE.  AND WE AGAIN IDENTIFIED,

18   BY PAGE AND LINE NUMBER, ALL OF THE TESTIMONY OVER MANY HOURS

19   THAT MR. BRYANT PROVIDED, AS WELL AS IDENTIFYING, BY BATES

20   NUMBER, DRAWINGS THAT WERE DONE AT VARIOUS PERIODS OF TIME AND        10:30

21   EXPLAINING ADDITIONAL INFORMATION ABOUT WHEN THAT HAPPENED; SO

22   THERE IS A VERY DETAILED SUBSTANTIVE RESPONSE THAT

23   JUDGE INFANTE FOUND TO MEET CARTER BRYANT'S OBLIGATIONS UNDER

24   THE RULES.

25           **THE COURT:**  THANK YOU, COUNSEL.                           10:31

1          **MR. NOLAN:**  YOUR HONOR, IF I MAY JUST VERY BRIEFLY --

2          **THE COURT:**  VERY BRIEFLY.

3          **MR. NOLAN:**  FIRST OF ALL, I APOLOGIZE WITH RESPECT TO

4     THE 56(F) STATEMENT, BUT I DID NOT REALIZE -- AND I'LL HAVE TO

5     GO BACK AND LOOK AT IT; I DON'T HAVE THE PAPERS WITH ME -- I          10:31

6     DON'T THINK IT GOES TO THIS PARTICULAR ISSUE.  THAT WAS THE

7     POINT THAT I WAS MAKING.  I MAY BE WRONG ON THAT.  AND I JUST

8     WANTED TO TAKE THAT BACK.

9          **THE COURT:**  I'VE REVIEWED A LOT OF PAPER MYSELF,

10    COUNSEL, SO I WOULDN'T HOLD MYSELF TO ANY --          10:31

11          BUT I BELIEVE SO.  I BELIEVE IT WAS.

12          **MR. NOLAN:**  BUT, YOUR HONOR, I DO WANT TO POINT OUT,

13    THOUGH, VERY QUICKLY, IN LOOKING AT THE SUPPLEMENTAL RESPONSE,

14    MR. COREY, I THINK, WAS A LITTLE BIT CONSERVATIVE IN WHAT HE

15    READ FROM OUR RESPONSE.  WE WENT FURTHER THAN THAT.  WE          10:31

16    IDENTIFIED THE WITNESSES WHO WOULD HAVE KNOWLEDGE OF THIS

17    PARTICULAR POINT.  AND THEY ARE CONTENTION INTERROGATORIES.  WE

18    IDENTIFIED THOSE DRAWINGS THAT WE CONTEND ARE IN ISSUE HERE.

19          THERE IS NO DISPUTE.  I MEAN, THEY HAVE EXPERTS THAT

20    HAVE TAKEN ALL OF THE DRAWINGS.  I MEAN, THERE'S A WHOLE CSI          10:32

21    GROUP OF EXPERTS IN THIS CASE.  YOU HAVEN'T SEEN THEM YET,

22    YOUR HONOR.  I MEAN, IT'S CRAZY.  THERE'S INK EXPERTS; THERE'S

23    PAPER EXPERTS; THERE ARE EXPERTS WHO ARE GOING TO IDENTIFY

24    WHETHER OR NOT YOU CAN TRACE OVER AND WHETHER OR NOT THE PAPER

25    INDENTATIONS ARE THERE FROM EARLIER DRAWINGS AND DATING IT THAT          10:32

```
 1    WAY.

 2            NOBODY IS CONFUSED HERE.  THIS IS SIMPLY BUSY WORK.

 3            I'LL LEAVE IT AT THIS, YOUR HONOR:  THERE MAY BE A

 4    PHASE TWO CASE IN THIS CASE.  IF YOU RESET THE STANDARD FOR

 5    MEET AND CONFER, YOU ENCOURAGE THESE TYPE OF THINGS, THAT AT          10:32

 6    THE LAST MOMENT, IN A DESCRIPTION OF NOT REDOING BUT WE'RE

 7    REWRITING -- I LIKE THE TERM "REWRITING."  I WOULD HAVE LIKED

 8    TO HAVE KNOWN THAT THEY WERE WILLING TO REWRITE SOME OF THIS

 9    EARLY ON.  AND I REALLY ENCOURAGE THE COURT TO TAKE A HARD LOOK

10    AT THAT WHEN VIEWING THIS IN THE CONTEXT OF THE BURDEN.               10:33

11            THANK YOU VERY MUCH.

12            THE COURT:  THANK YOU, COUNSEL.

13            REGARDING THE SECOND AND THIRD MOTIONS, THE MOTIONS

14    REGARDING INTERROGATORY 39 RELATED TO THE FINANCIAL ACCOUNTS,

15    AND NUMBER THREE, INTERROGATORY 41, RELATED TO THE MATTEL            10:33

16    EMPLOYEES WHO WERE LATER HIRED BY MGA, THE COURT DOESN'T HAVE

17    ANY PARTICULAR QUESTIONS.  I'LL GIVE YOU AN OPPORTUNITY AT THE

18    END, IF THERE'S ANYTHING FURTHER YOU WANT TO ADD THAT'S NOT SET

19    FORTH IN YOUR PAPER.  WHAT I'D LIKE TO DO IS MOVE TO NUMBER

20    FOUR.  THAT'S INTERROGATORY 46.  AND THIS IS MGA'S DISPUTE WITH     10:33

21    ITS FORMER COUNSEL RELATED TO THIS ACTION.

22            THE ONE QUESTION I HAD -- AND PERHAPS THIS CAN COME

23    FROM ANYBODY -- WAS ANYTHING SUBMITTED IN-CAMERA TO

24    JUDGE INFANTE?  I GUESS I WANT TO KNOW WHAT EVIDENCE THERE IS

25    OR WAS THAT MAY HAVE BEEN CONSIDERED.                                10:34
```

```
 1          I'M HAVING TROUBLING COMING UP WITH WHAT WOULD BE

 2   ADMISSIBLE EVIDENCE OF THE SORT BEING SOUGHT BY MATTEL; AND WAS

 3   THAT EVER CONSIDERED OR HOW WAS THAT PRESENTED TO JUDGE

 4   INFANTE?  WHAT ARE WE REALLY TALKING ABOUT HERE?  THIS IS KIND

 5   OF A TOUGH AREA TO NAVIGATE THROUGH, GIVEN THE ATTORNEY-CLIENT   10:34

 6   PRIVILEGES INVOLVED HERE.

 7          MR. COREY:  IT IS A TOUGH AREA, YOUR HONOR.  AND MY

 8   RECOLLECTION IS THAT THERE WASN'T ANYTHING FROM MATTEL'S SIDE

 9   THAT WAS SUBMITTED IN-CAMERA TO JUDGE INFANTE.

10          THE COURT:  I WOULDN'T IMAGINE THAT THERE WOULD BE.     10:34

11   IT WOULD PROBABLY COME FROM MGA IF THERE WAS ANYTHING.

12          MR. COREY:  RIGHT.  AND I'M NOT AWARE OF RECEIVING

13   ANY NOTICE OF SOMETHING LIKE THAT.  BUT, AGAIN, THERE'S A LOT

14   OF PAPER THAT'S GONE BACK AND FORTH.

15          BUT IF I MAY, MAY I ARTICULATE MATTEL'S CONCERN VERY     10:34

16   QUICKLY?

17          THE COURT:  SURE.  AND IF YOU COULD ADDRESS, WHAT

18   EXACTLY WOULD YOU ANTICIPATE OBTAINING?

19          I GUESS I'M HAVING TROUBLE UNDERSTANDING WHAT WOULD

20   BE DISCOVERABLE AND WOULD LEAD ULTIMATELY TO ADMISSIBLE        10:34

21   EVIDENCE OF THIS NATURE.

22          MR. COREY:  LET ME START WITH THIS:  THERE ARE

23   REASONS WHY COUNSEL WITHDRAWS.  SOME OF THOSE REASONS WE'RE

24   VERY CLEAR ABOUT.  AND THEY'RE NOT PRIVILEGED.  IF THERE'S A

25   FEE DISPUTE, THAT'S NOT PRIVILEGED INFORMATION.               10:35
```

```
 1              THE REASON ARTICULATED FOR O'MELVENY & MYERS' AND
 2   CHRISTENSEN GLASER'S WITHDRAWAL WAS A DISPUTE OVER WHO WAS
 3   GOING TO BE LEAD TRIAL COUNSEL.
 4              AT THE HEARING IN OCTOBER --
 5         THE COURT:  HOW WOULD WE EVER HAVE THAT IN A TRIAL?    10:35
 6   WHY WOULD A JURY EVER HEAR ABOUT A DISPUTE OF THAT NATURE?
 7         MR. COREY:  THAT'S RIGHT.  THAT'S NOT ON THE TABLE.
 8              BUT WHAT WE HAD WAS, WE HAD COUNSEL FOR O'MELVENY &
 9   MYERS SAYING, 'THAT'S NOT THE REASON WE'RE WITHDRAWING.'
10              SO MATTEL IS SITTING THERE SAYING, 'WELL, I DON'T   10:35
11   KNOW WHY O'MELVENY IS WITHDRAWING.'
12         THE COURT:  IS IT CURIOSITY?
13         MR. COREY:  NO, IT'S NOT CURIOSITY.  AND I'LL PUT
14   SOME CONSTRAINTS ON IT, BECAUSE I UNDERSTAND THE COURT HAS SEEN
15   WHATEVER WAS SUBMITTED IN-CAMERA.                           10:35
16         THE COURT:  THIS DID COME UP, I REMEMBER, IN THE
17   RELIEF, AND THE COURT SPECIFICALLY SAID, 'I DON'T WANT TO KNOW
18   WHY.'  I MEAN, THAT REALLY IS BETWEEN A CLIENT AND THEIR
19   ATTORNEY.
20              I CAN'T SEE WHAT RELEVANCE THIS HAS.              10:36
21         MR. COREY:  LET ME BE VERY PRECISE.
22         THE COURT:  PLEASE.
23         MR. COREY:  IF THE REASON FOR THE WITHDRAWAL WAS
24   BECAUSE THE CLIENT HAD ASKED O'MELVENY TO DO SOMETHING
25   UNETHICAL TO PREJUDICE MATTEL, THAT IS RELEVANT.            10:36
```

```
 1          NOW, I DON'T KNOW HOW WE GET THERE, BUT THAT --

 2          THE COURT:  DO YOU HAVE ANY BASIS FOR SUGGESTING --

 3   IS THAT JUST IDLE SPECULATION?

 4          MR. COREY:  WELL, IT'S NOT IDLE SPECULATION, BUT IT

 5   IS SPECULATION IN THE SENSE THAT THE BASIS FOR THE WITHDRAWAL,   10:36

 6   AS ARTICULATED, WAS NOT A DISPUTE OVER WHO LEAD TRIAL COUNSEL

 7   WOULD BE, AND IT DOESN'T HAVE TO DO WITH FEES.  REALLY, IN MY

 8   MIND, THE ONLY THING LEFT IS, THERE MAY BE AN ETHICAL ISSUE

 9   THERE.  AND IF IT RELATES TO NONCOMPLIANCE WITH A COURT ORDER

10   IN THIS CASE OR IF IT RELATES TO SPOLIATION OF DOCUMENTS, THAT   10:36

11   IS RELEVANT AND IT'S NOT PRIVILEGED.

12          THE COURT:  I RELIEVE COUNSEL IN CRIMINAL CASES ALL

13   OF THE TIME.  NORMALLY, IT'S A PERSONALITY DISPUTE.

14          MR. COREY:  AND THAT MAY BE THE CASE.  AND I DON'T

15   THINK THAT'S PRIVILEGED.  BUT THERE NEEDS TO BE AN ARTICULATION   10:36

16   OF THAT.

17          THE COURT:  MR. NOLAN?

18          MR. NOLAN:  I THINK THAT THIS IS JUST SUCH AN EXAMPLE

19   OF -- WELL, I THINK IT'S IDLE SPECULATION.  MAYBE IT'S MORE

20   ACTIVE THAN THAT, BUT IT'S CLEARLY SPECULATION.                   10:37

21          AND I'LL REMIND THE COURT THAT BECAUSE OF THE

22   UNIQUENESS OF THE SITUATION, THE COURT ORDERED A TELEPHONIC

23   HEARING AT THE TIME.  IT'S A TRANSCRIPT THAT'S AVAILABLE.  IT'S

24   IN THE PUBLIC RECORD.  I MEAN, IT'S BEFORE YOUR HONOR,

25   YOUR HONOR.  AND WHAT HAPPENED IS, THE COURT HAD TWO REASONS      10:37
```

1    PROVIDED TO IT.  ON THE ONE HAND, O'MELVENY INDICATED THAT

2    THERE WERE CONTRACTUAL ISSUES IN TERMS OF THE PAYMENT OF LEGAL

3    FEES.  MR. CRAIG HOLDEN, WHO IS HERE TODAY IN COURT, ON BEHALF

4    OF MGA -- I HAD NOT BEEN ADMITTED YET INTO THE CASE, SO I SAT

5    IDLY BY FOR A WHILE AND THEN MADE A COMMENT THAT WE WOULD STEP          10:37

6    UP TO OUR OBLIGATIONS IF WE ENTERED THE CASE -- MR. HOLDEN SAID

7    THAT THERE HAD BEEN AN ISSUE WITH RESPECT TO WHO WOULD BE LEAD

8    COUNSEL, PATTY GLASER ON THE ONE HAND OR DAN PETROCELLI FROM

9    O'MELVENY.  THE CLIENT HAD MADE A CHOICE THAT WASN'T

10   ACCEPTABLE, AND BASED ON THAT, O'MELVENY FILED THE MOTION.              10:38

11          THAT'S IN THE PUBLIC RECORD.

12          THIS IDEA OF, 'GEE, THERE MUST HAVE BEEN SOME OTHER

13   REASON,' IS RANK SPECULATION.  IT'S A FISHING EXPEDITION.  AND

14   JUDGE INFANTE RECOGNIZED THAT RULING.  IN THE ABSENCE OF A

15   SHOWING ON THEIR PART, YOUR HONOR, THAT THERE IS ANY BASIS OF           10:38

16   SPECULATION, WHICH THERE IS NOT -- AND THE REASON WHY THERE IS

17   NOT, YOUR HONOR -- IF THERE WAS SUCH A CONCERN BY O'MELVENY,

18   ARGUABLY, O'MELVENY HAS OBLIGATIONS TO REPORT SUCH CONDUCT.

19   THERE HASN'T BEEN ANY SUGGESTION.  THERE'S NO BASIS FOR THAT.

20          THIS IS JUST ANOTHER EXAMPLE WHERE THEY'RE TRYING TO            10:38

21   GET INTO INFORMATION THAT THEY'RE NOT ENTITLED TO, ON THIS ONE,

22   ON THE STANDARD, OF CLEARLY ERRONEOUS CONTRARY TO LAW, BASED ON

23   WHAT WAS AVAILABLE IN FRONT OF JUDGE INFANTE AND BASED ON THEIR

24   ADMISSION THAT IT'S SPECULATION, THERE'S NO FURTHER INQUIRY BY

25   THIS COURT, I THINK, THAT SHOULD BE ALLOWED IN THIS REGARD.             10:39

```
 1   IT'S NOT RELEVANT.  THE JURY WILL NEVER HEAR IT.

 2          MORE IMPORTANTLY, YOUR HONOR, WE'RE GOING TO SPEND AN

 3   UNNECESSARY AMOUNT OF TIME -- BUT YOU SEE, RESPECTFULLY, THAT'S

 4   ALL THIS IS ALWAYS ABOUT, IS WE'LL HAVE TO HAVE MOTIONS IN

 5   FRONT OF THE DISCOVERY MASTER.  THERE ARE 31 MATTERS THAT ARE    10:39

 6   STILL PENDING IN FRONT OF JUDGE INFANTE.  31 MATTERS.  WE'RE

 7   NOW GOING TO HAVE TO HAVE A PROCESS OF, IF THIS WAS TO BE

 8   ORDERED, WHAT'S PRIVILEGED, WHAT'S NOT, AND THEN WE'RE GOING TO

 9   HAVE A DISPUTE ABOUT THAT.

10          BUT THAT'S WHAT MATTEL WANTS, IS A DISPUTE AT THIS         10:39

11   POINT.  I URGE THE COURT TO APPLY THE REGULAR STANDARD THAT

12   APPLIES IN THIS REGARD.  JUDGE INFANTE GAVE THEM A SHOT.  THEY

13   DIDN'T HAVE IT.  THEY CAME HERE.  THEY'RE ADMITTING IT'S

14   SPECULATION.  THE RECORD IS ALREADY CLEAR AT THE TIME THAT YOU

15   ALLOWED COUNSEL TO SUBSTITUTE OUT AND YOU ALLOWED SKADDEN TO     10:40

16   COME IN.  END OF DISCUSSION.

17          THE COURT:  THE ONLY ISSUE PENDING BEFORE THE COURT

18   IN WHICH AN ALLEGATION OF IMPROPRIETY HAS BEEN MADE, OF COURSE,

19   IS THE PENDING MOTION TO WHICH YOU MADE REFERENCE TO EARLIER;

20   THERE'S GOING TO BE AN OPPOSITION TO THE MOTION TO DISQUALIFY    10:40

21   COUNSEL.

22          I TRUST, IF THERE WAS ANYTHING INVOLVING PRIOR

23   COUNSEL ON THAT MOTION, THAT THAT WILL COME FORWARD IN THE

24   COURSE OF THE LITIGATION OF THE MOTION.

25          MR. NOLAN:  YES.  BUT LET ME NOT LEAVE ANYONE IN          10:40
```

```
 1   SUSPENSE.  THE OPPOSITION WILL BE FILED TODAY.  IT WILL BE VERY

 2   STRONG.  OUR FEELINGS ON THAT MOTION ARE VERY, VERY STRONG,

 3   YOUR HONOR.

 4           THE COURT:  I WOULD ANTICIPATE THEY ARE.

 5           AND PLEASE, BY MY RAISING THE QUESTION --                    10:40

 6           MR. NOLAN:  AND I'M NOT GOING TO PRE-ARGUE.

 7           BUT I WILL ASSURE YOU, YOUR HONOR, IF THERE WAS ANY

 8   WRONGDOING, I WOULDN'T BE HERE; SKADDEN ARPS WOULDN'T HAVE BEEN

 9   HERE.  IF THAT WAS AN ISSUE FOR O'MELVENY, WE WOULDN'T BE HERE,

10   YOUR HONOR; WE WOULDN'T BE HERE AT ALL.  YOU HAVE MY WORD ON       10:41

11   THAT.  AND YOU'LL SEE IT IN THE PAPERS AND WITH THE

12   DECLARATIONS.

13           THE COURT:  FAIR ENOUGH.  THANK YOU, COUNSEL.

14           INTERROGATORIES 48 AND 50, THIS IS INFORMATION MATTEL

15   IS SEEKING WITH RESPECT TO THE TRADE DRESS CLAIMS.  THAT'S        10:41

16   CLEARLY A PHASE TWO ITEM.  I TRUST THERE'S NO REASON WHY THAT

17   NEEDS TO BE RESOLVED AT THIS TIME.

18           IS THAT CORRECT, MR. COREY?

19           MR. COREY:  THAT'S RIGHT.  JUDGE INFANTE RULED; THE

20   CLOCK WAS RUNNING.  WE FELT WE COULDN'T LEAVE THAT IDLE.  BUT    10:41

21   AS LONG AS THE COURT MAKES CLEAR THAT THAT'S AN ISSUE THAT IS

22   RESERVED FOR PHASE TWO, THAT'S FINE.

23           THE COURT:  THE COURT WILL DENY THAT, THEN, WITHOUT

24   PREJUDICE TO IT BEING RE RAISED IN PHASE TWO.

25           MR. COREY:  THANK YOU, YOUR HONOR.                        10:41
```

1           THE COURT:   INTERROGATORY 47, THIS IS ALL THE SOURCES

2   FROM WHICH MR. BRYANT COLLECTED DOCUMENTS.

3           LET ME HEAR FROM COUNSEL ON THAT.

4           I HAD ASKED FOR AN AFFIDAVIT TO BE SUBMITTED BY

5   EVERYONE, BASICALLY SETTING FORTH THIS INFORMATION.  I TRUST         10:41

6   THAT MR. BRYANT HAS DONE THAT.

7           MR. WERDEGAR:  WE HAVE DONE THAT, YOUR HONOR, AND

8   IT'S ATTACHED AS AN EXHIBIT TO THE DECLARATION OF

9   REBECCA PANIQUE IN SUPPORT OF OUR OPPOSITION.

10          IN THE SUBSTANTIVE RESPONSE THAT WE GAVE TO THIS            10:42

11  INTERROGATORY, WITH WHICH JUDGE INFANTE EXPRESSLY FOUND TO BE

12  SATISFACTORY AND CONSISTENT WITH MR. BRYANT'S OBLIGATION, WE

13  PROVIDE DETAILED INFORMATION AND WE ALSO REFERENCE AND

14  INCORPORATE THAT SWORN DECLARATION FROM CARTER BRYANT.

15          THE COURT:   AND I HAVE SEEN THAT AND I HAVE REVIEWED       10:42

16  -- IT'S EXHIBIT 7.  BUT THERE WERE A LOT OF OBJECTIONS MADE,

17  AND THE CONCERN IS THAT THERE'S ALMOST TOO MUCH WIGGLE ROOM

18  HERE IN LIGHT OF -- WHY ISN'T THIS A CANDID RECOGNITION THAT

19  THESE ARE THE SOURCES THAT WERE SEARCHED, AND THAT THEY WERE

20  SEARCHED ENTIRELY?                                                 10:42

21          IT JUST SEEMS THAT THERE'S A LOT OF HEDGING GOING ON.

22          MR. WERDEGAR:  WELL, YOUR HONOR, I GUESS I'M NOT

23  AWARE OF -- I'D HAVE TO GO LOOK AND REMIND MYSELF OF THE

24  OBJECTIONS THAT WERE INTERPOSED, BUT THE --

25          THE COURT:  THERE WERE A LOT OF THEM.                      10:43

1          **MR. WERDEGAR:**  I'LL REPRESENT TO THE COURT,

2    YOUR HONOR, THAT THE PLACES THAT MR. BRYANT, IN HIS

3    DECLARATION, AND THAT WE, IN THE INTERROGATORY RESPONSE, SAY

4    WERE SEARCHED WERE ALL SEARCHED; THEY WERE THOROUGHLY SEARCHED.

5    AND DOCUMENTS THAT WERE RESPONSIVE TO REQUESTS FOR PRODUCTION,          10:43

6    AS WORKED OUT IN MEET AND CONFER OR IN MOTION PRACTICE, HAVE

7    ALL BEEN PRODUCED.  THERE'S NOTHING -- WE'VE TURNED -- HE'S HAD

8    LAWYERS COME TO HIS HOUSE AND EXHAUSTIVELY SEARCH HIS PAPER

9    RECORDS, HIS COMPUTERS, HIS CLOSETS, HIS DESK DRAWERS, FIVE

10   TIMES IN THE COURSE OF THIS LITIGATION.  THERE WERE SEVERAL          10:43

11   ROUNDS INITIALLY; A ROUND WHEN PHASE TWO BECAME AN ISSUE AND

12   ADDITIONAL PRODUCTS BECAME AN ISSUE; AND AGAIN AT THE BEGINNING

13   OF JANUARY, JUST TO MAKE SURE WE HADN'T MISSED ANYTHING.  WE

14   HAD AN ASSOCIATE BACK THERE FOR SEVERAL DAYS AGAIN, UPSTAIRS,

15   DOWNSTAIRS, EVERYWHERE.  AND WE PRODUCED ADDITIONAL MATERIALS          10:43

16   AT THAT TIME AS WELL.  SO WE'VE SEARCHED EVERYWHERE.  WE'VE

17   PRODUCED EVERYTHING THAT'S RESPONSIVE, AS I SAID, SUBJECT TO

18   MEET AND CONFER AND MOTION PRACTICE.

19          SO WE'RE NOT HIDING THE BALL, AND THE OBJECTIONS

20   AREN'T MEANT TO -- IF THEY RAISE THAT IMPRESSION, I'D LIKE TO          10:44

21   DISPEL IT, BECAUSE IT'S JUST SIMPLY NOT TRUE.

22          **THE COURT:**  ALL RIGHT.

23          THE LAST ISSUE I'D LIKE COUNSEL FROM BOTH SIDES TO

24   ADDRESS IS THIS BATES NUMBER ISSUE THAT'S RAISED IN THE FINAL

25   MOTION.          10:44

```
 1          AS I UNDERSTAND IT, EVERYTHING HAS BEEN

 2   BATES-NUMBERED.  IT WAS JUST, IN RESPONDING, MGA DID NOT

 3   NECESSARILY REFERENCE THE BATES NUMBER, OR NUMBERS, IN

 4   RESPONDING TO THE INTERROGATORIES.

 5          I UNDERSTAND THE BURDENSOME ELEMENT, PARTICULARLY AT    10:44

 6   THIS POINT.  I GUESS THE CONCERN I HAVE IS GETTING INTO THE

 7   TRIAL IN THIS CASE AND THERE ARISING A DISPUTE AS TO WHETHER OR

 8   NOT A PARTICULAR DOCUMENT WAS REFERENCED IN RESPONSE TO A

 9   CONTENTIOUS INTERROGATORY OR NOT AND THERE BEING THIS DISPUTE

10   THAT WE'RE NOT IN A POSITION TO RESOLVE BECAUSE WE DON'T HAVE    10:44

11   THE BATES-NUMBERED CROSS REFERENCE TO THE INTERROGATORY

12   RESPONSES.

13          HOW, MR. NOLAN, DO YOU PROPOSE DEALING WITH THAT

14   CONCERN?

15          MR. NOLAN:  YOUR HONOR, ONE OF THE ISSUES IN THIS    10:45

16   CASE HAS BEEN THE CONTINUING PRODUCTION.  THE PARTIES ARE

17   STILL, IN GOOD FAITH, STILL MAKING PRODUCTIONS.

18          THE COURT:  DO YOU HAVE A GOOD HANDLE ON WHAT HAS

19   BEEN PRODUCED IN RESPONSE TO WHAT -- YOU SET FORTH EARLIER THIS

20   MORNING ALL OF THE DIFFERENT INTERROGATORIES, ALL OF THE    10:45

21   DIFFERENT RFA'S.

22          MR. NOLAN:  RIGHT.

23          THE COURT:  I DON'T WANT TO GET INTO TRIAL AND THEN

24   HAVE TO HAVE MINI TRIALS OVER WHETHER SOMETHING WAS PRODUCED OR

25   NOT PRODUCED.    10:45
```

```
 1            MR. NOLAN:  WELL, YOUR HONOR, THE ISSUE IS GOING TO

 2   COME UP TOMORROW.  RESPECTFULLY, I DON'T THINK THIS IS GOING TO

 3   BE AN ISSUE AT ALL.  THIS IS, FRANKLY, MORE BUSY WORK ON THEIR

 4   PART.

 5            WE'RE EXCHANGING EXHIBIT LISTS TOMORROW.  THE EXHIBIT    10:45

 6   LISTS WILL HAVE THE IDENTIFICATION ON THERE AS TO WHAT THE

 7   BATES NUMBERS ARE.  IF THEY CONTEND THAT IT WAS NOT PRODUCED, I

 8   MEAN, BOTH SIDES COULD GO BACK TO -- I GUESS WE COULD BOTH GO

 9   BACK AND DETERMINE WHETHER OR NOT THE DOCUMENT HAD A BATES

10   NUMBER.                                                          10:46

11            THE COURT:  IT'S MORE THAN WHETHER IT'S BEEN

12   PRODUCED, BUT WHETHER IT'S BEEN PRODUCED IN RESPONSE TO A

13   PARTICULAR CONTENTIONS INTERROGATORY, FOR EXAMPLE.

14            MR. NOLAN:  WELL, YOUR HONOR, IN THAT REGARD,

15   JUDGE INFANTE, I BELIEVE, SAID THAT AT THIS STAGE, THAT WOULD    10:46

16   BE OVERLY BURDENSOME TO DO.

17            THE COURT:  HE DID.  AND I UNDERSTAND THAT.  BUT THE

18   QUESTION IS -- AT THE STAGE THAT HE'S IN, IT'S DISCOVERY.  THE

19   STAGE I'M CONCERNED ABOUT IS TRIAL.

20            MR. NOLAN:  I RESPECTFULLY SUBMIT, YOUR HONOR, IF       10:46

21   THAT'S THE ISSUE, THEN WE DEAL WITH IT IF, IN FACT, IT OCCURS.

22   TO OTHERWISE GO BACK NOW -- THERE ARE CONTENTION

23   INTERROGATORIES.  I MEAN, THE INTERROGATORIES IN THIS CASE ARE

24   SUBSTANTIAL.  I COULDN'T PUT ENOUGH LAWYERS TO GO BACK AND TRY

25   TO TIE EVERYTHING BACK TO A PARTICULAR RESPONSE.  NOR COULD      10:46
```

```
 1   MATTEL.

 2            WHEN MATTEL MAKES A PRODUCTION, YOUR HONOR, THERE'S

 3   NO REFERENCE TO WHAT THE PRODUCTION WAS IN REGARDS TO.  THAT'S

 4   NOT HOW THIS CASE WAS EVER HANDLED.  SO I WOULD RESPECTFULLY

 5   SUBMIT, YOUR HONOR, YOU CAN'T PUT THE TOOTHPASTE BACK IN THE      10:47

 6   TUBE.  LET'S DEAL WITH THE ISSUE IF IT COMES UP.

 7            FRANKLY, I DON'T BELIEVE IT'S GOING TO COME UP.

 8        THE COURT:  ALL RIGHT.

 9        MR. NOLAN:  I DON'T BELIEVE IT'S GOING TO COME UP.

10   WE'RE GOING TO HAVE EXTENSIVE EXHIBIT LISTS, PROBABLY MORE        10:47

11   EXHIBITS THAN ANYBODY IMAGINED IN THIS CASE.  THEY'RE GOING TO

12   BE IDENTIFIED.  WE'RE EXCHANGING TOMORROW.  THERE'S GOING TO BE

13   A MEET AND CONFER.

14        THE COURT:  YOU WON'T MIND IF I REMIND YOU OF THESE

15   STATEMENTS IN A COUPLE OF MONTHS?                                10:47

16        MR. NOLAN:  PLEASE DO.

17        THE COURT:  OKAY.  ALL RIGHT.

18        MR. NOLAN:  AND I'LL PROBABLY -- EVEN THOUGH

19   MR. COREY HAS NOT MADE THE SAME REPRESENTATION, I PROBABLY WILL

20   HOLD THEM TO IT; BUT, OF COURSE, THEY HAVEN'T PRODUCED ALL OF     10:47

21   THEIR E-MAILS AND STUFF LIKE THAT.  THERE ARE STILL MOTIONS

22   PENDING IN FRONT OF JUDGE INFANTE.  IF THE ISSUE COMES UP,

23   REMIND ME OF MY POINT.

24        THE COURT:  ALL RIGHT.

25            MR. COREY?                                              10:47
```

1           **MR. COREY:**  LET ME MAKE THIS VERY PRECISE.

2           MATTEL IS NOT ASKING -- LET ME START A DIFFERENT

3    PLACE.

4           THIS ISSUE IS GOING TO COME UP, AND IT'S GOING TO

5    COME UP IN THE CONTEXT OF THE SUMMARY JUDGMENT MOTIONS, BECAUSE          10:48

6    THERE ARE THINGS THAT MGA IS RELYING ON, DOCUMENTS THAT MGA IS

7    RELYING ON AND TESTIMONY THAT MGA IS RELYING ON, TO DEFEAT OUR

8    SUMMARY JUDGMENT MOTION, THAT ARE NOT IDENTIFIED IN CONTENTION

9    INTERROGATORIES.  AND THAT'S ALL WE'RE TALKING ABOUT HERE, IS

10   IF THERE'S A CONTENTION INTERROGATORY.  IF YOU THINK DOCUMENTS          10:48

11   SUPPORT YOUR POSITION, THEY NEED TO BE IDENTIFIED WITH ENOUGH

12   SPECIFICITY THAT THE OTHER SIDE KNOWS EXACTLY WHAT YOU'RE

13   TALKING ABOUT.

14           **THE COURT:**  WHY DON'T WE TAKE IT UP AT THAT POINT,

15   THEN?                                                                   10:48

16           **MR. COREY:**  AT WHAT POINT?

17           **THE COURT:**  AT THE POINT OF THE MOTION FOR SUMMARY

18   JUDGMENT.

19           **MR. COREY:**  WELL, IT IS GOING TO COME UP IN THAT

20   CONTEXT.  BUT WE HAVE, I DON'T KNOW, 12, 15 CONTENTION                  10:48

21   INTERROGATORIES THAT SHOULD HAVE PROPER RESPONSES BEFORE WE GO

22   TO TRIAL.  BECAUSE OTHERWISE, IF THOSE AREN'T DEALT WITH -- AND

23   HERE WE'RE TALKING ABOUT SOME, WHAT, A HANDFUL, SEVEN OR EIGHT

24   OF THEM -- IF THOSE AREN'T DEALT WITH BEFORE TRIAL, THEN THE

25   COURT IS GOING TO HAVE MINI TRIALS ON WHAT WAS PRODUCED AND             10:48

1   WHAT WAS AVAILABLE AT THE TIME AND WHAT SHOULD HAVE BEEN

2   INCLUDED AND WHAT SHOULDN'T HAVE BEEN INCLUDED.

3            MATTEL HAS DONE THAT IN ITS RESPONSES TO CONTENTION

4   INTERROGATORIES.  IS IT A LOT OF WORK?  YEAH, IT IS.  MATTEL

5   HAS DONE THAT WORK.  THEY SHOULDN'T BE ALLOWED TO ESSENTIALLY     10:49

6   BE IN A POSITION WHERE THEY CAN SANDBAG US BY SAYING, 'OH, NO,

7   YOU SHOULD HAVE INTERPRETED THAT VERY BROAD PHRASE TO MEAN ALL

8   OF THESE DOCUMENTS WHEN WE GET TO TRIAL.'

9            **MR. NOLAN:**  MY LAST POINT ON THIS.

10           YOUR HONOR, MATTEL HAS PRODUCED IN THIS CASE X NUMBER    10:49

11   OF DOCUMENTS.  I BELIEVE SOMEWHERE BETWEEN 70 AND 80 PERCENT OF

12   THE PRODUCTION OCCURRED IN JANUARY, TWO WEEKS BEFORE OR THREE

13   WEEKS BEFORE THE DISCOVERY CUTOFF.  WHICH, I RESPECTFULLY

14   BELIEVE, WAS ALWAYS THEIR INTENT.

15           TO THEN NOW GO BACK AND PROCESS ALL OF THOSE            10:49

16   DOCUMENTS, AND NOT ONLY PROCESS THEM FOR PURPOSES OF GETTING

17   READY FOR TRIAL, BUT THEN TO GO BACK AND DEAL WITH CONTENTION

18   INTERROGATORIES THAT HAVE BEEN SERVED AND SIT THERE AND

19   BASICALLY SAY -- AND THIS IS WHAT YOU WOULD BASICALLY SAY --

20   'WOW, THIS IS A COOL DOCUMENT.  I LIKE THIS ONE.  WE'RE GOING   10:50

21   TO USE THIS ONE; IT FURTHER SUPPORTS OUR POSITION.'

22           OH, WAIT A MINUTE.  NOW I'VE GOT TO GO BACK.  I'VE

23   GOT TO HAVE A TEAM OF LAWYERS GO BACK AND CHECK EVERY RESPONSE

24   WE EVER MADE TO A CONTENTION INTERROGATORY AND PUT THIS ONE UP

25   AGAINST THAT INTERROGATORY, THIS ONE AGAINST THIS               10:50

1   INTERROGATORY.  YOUR HONOR, THAT'S HOW THEY CHOSE TO PRODUCE

2   THE DOCUMENTS.  WE'VE RESPONDED.

3           I DON'T THINK THE ISSUE IS GOING TO COME UP.  IF IT

4   COMES UP IN THE CONTEXT OF THE SUMMARY JUDGEMENT -- I'LL GIVE

5   YOU AN EXAMPLE, YOUR HONOR:  THEY PRODUCED DOCUMENTS AFTER OUR          10:50

6   SUMMARY JUDGMENT MOTION WAS FILED, WHICH WE USED IN THE

7   OPPOSITION.  CANDIDLY, I DIDN'T THINK ABOUT GOING BACK AND

8   PUTTING IT IN RESPONSE TO A SUPPLEMENTAL CONTENTION

9   INTERROGATORY.  BUT THAT'S WHAT'S HAPPENED IN THIS CASE IN THE

10  PRODUCTION.  AND MATTEL DID IT INTENTIONALLY.  OR AT LEAST THEY         10:50

11  DID IT KNOWINGLY.

12          **THE COURT:**  WELL, LET'S NOT --

13          **MR. NOLAN:**  NO.  WHAT I MEANT BY THAT, YOUR HONOR --

14  NO, NO, NO; I'M SORRY -- SOMETIMES YOU CAN DO THINGS

15  INTENTIONALLY, AND THEY'RE INNOCENT.                                   10:50

16          YOUR HONOR, WHAT I'M SAYING IS THAT FOR WHATEVER

17  REASON, FROM THE PRODUCTION POINT OF VIEW, IT TOOK MATTEL

18  AWHILE TO PRODUCE A LOT OF DOCUMENTS, NOTWITHSTANDING THAT THEY

19  HAD BEEN IN THE CASE A LONG TIME.  THEY WAITED UNTIL JANUARY.

20  WE DID NOT GO BACK AND AMEND THE CONTENTION INTERROGATORIES ON          10:51

21  BATES NUMBERS.

22          BUT, YOUR HONOR, THEY KNOW WHERE THESE DOCUMENTS CAME

23  FROM, AND THEY'VE BEEN PRODUCED.

24          **THE COURT:**  THANK YOU, COUNSEL.

25          **MR. WERDEGAR:**  YOUR HONOR, IF I COULD MAKE A BRIEF          10:51

```
 1    ADDITIONAL POINT IN RESPONSE TO MR. COREY'S COMMENTS.
 2            THE COURT:  YES.
 3            MR. WERDEGAR:  I THINK IT'S ALSO IMPORTANT,
 4    YOUR HONOR, TO REMEMBER HOW MATTEL CHOSE TO WORD THE
 5    INTERROGATORY THAT WE'RE NOW DISCUSSING INTERROGATORIES.  THEY    10:51
 6    DIDN'T ASK FOR THE DOCUMENTS, THE SUPPORT YOU TEND TO RELY UPON
 7    IN TRIAL OR THE DOCUMENTS THAT SUPPORT THIS PARTICULAR
 8    POSITION.  THAT'S NOT THE WORDING THEY USED.  AND IF IT WERE,
 9    WE'RE EXCHANGING EXHIBIT LISTS TOMORROW, AND THEY'LL BE GETTING
10    EXACTLY WHICH DOCUMENTS WE INTEND TO USE AT TRIAL.
11            THEY ASKED FOR ALL DOCUMENTS THAT REFER OR RELATE, AS
12    BROADLY DEFINED AS YOU CAN MAKE THAT TERM, TO A CONTENTION
13    INTERROGATORY THAT IN AND OF ITSELF IS VERY BROAD.
14            THE COURT:  ON BEHALF OF CARTER BRYANT, YOU DID
15    ACTUALLY MAKE REFERENCE TO THE BATES NUMBERS.                     10:52
16            MR. WERDEGAR:  WE REFERENCED A NUMBER OF BATES
17    NUMBERS, AND WE ALSO IDENTIFIED SOME ADDITIONAL DOCUMENTS BY
18    CATEGORY.  BUT IN A CASE WITH FIVE MILLION DOCUMENTS PRODUCED,
19    TO HAVE TO GO BACK AND TRY AND FIGURE OUT WHETHER A GIVEN
20    DOCUMENT REFERS OR RELATES IN SOME WAY, SHAPE, OR FORM TO A       10:52
21    CONTENTION IS, AS JUDGE INFANTE FOUND, INHERENTLY OVER
22    BURDENSOME.
23            NOW, THOSE EXHIBIT LISTS ARE A DIFFERENT STORY, AND
24    THOSE ARE BEING EXCHANGED TOMORROW, YOUR HONOR.
25            THE COURT:  ALL RIGHT.                                    10:52
```

 1          I THINK I HAVE ENOUGH INFORMATION TO DECIDE.

 2          MR. COREY, VERY BRIEFLY.  WE'VE GOT TO MOVE ON.

 3          **MR. COREY:**  30 SECONDS, YOUR HONOR.

 4          I'M NOT SURE WHAT DOCUMENTS MR. NOLAN IS REFERRING

 5  TO.  THE DOCUMENTS THAT WERE PRODUCED LATER IN THE GAME ARE          10:52

 6  PHASE TWO DOCUMENTS.  THAT'S A NON ISSUE.  THE DOCUMENTS

 7  RELATED TO PHASE ONE THAT MATTEL WOULD HAVE IS A VERY LIMITED

 8  GROUP OF DOCUMENTS; AND THOSE WERE PRODUCED.

 9          **THE COURT:**  ALL RIGHT.

10          I SPOKE WITH AMBASSADOR PIERRE PROSPER THIS WEEKEND          10:53

11  ABOUT THE SETTLEMENT CONFERENCE, BECAUSE I RECEIVED THE

12  POSITIONS AND I WANTED TO MAKE SURE THAT I HAD AN UNDERSTANDING

13  OF WHAT HE WANTED IN TERMS OF PREPARING FOR THE SETTLEMENT

14  CONFERENCE.

15          AS HE VERY UNDERSTANDABLY EXPLAINED TO THE COURT, HE          10:53

16  WANTS TO MAKE SURE THAT, FIRST OF ALL, THE PEOPLE ARE PRESENT

17  OR ARE MADE AVAILABLE WHO CAN MAKE DECISIONS; SPECIFICALLY, NOT

18  ONLY LEAD COUNSEL, BUT GENERAL COUNSEL FOR THE RESPECTIVE

19  COMPANIES, AND, AS NECESSARY, THE CHIEF EXECUTIVE OFFICER OF

20  THE RESPECTIVE COMPANIES.          10:53

21          WHAT I TOLD AMBASSADOR PROSPER IS SIMPLY TO WORK IT

22  OUT WITH COUNSEL.  HE INDICATED TO ME THAT HE WAS MEETING WITH

23  MR. QUINN TODAY OR TOMORROW.  HE'S ALREADY MET WITH MR. NOLAN.

24  I BELIEVE HE'S ALREADY MET WITH MR. KEKER.  AND I TOLD HIM,

25  SIMPLY, I TRUST THAT EVERYONE WILL BE VERY COOPERATIVE WITH THE          10:54

```
 1   AMBASSADOR, AND THAT IF HE NEEDS TO SEEK ANY SUPPORT FROM THE
 2   COURT, THAT HE WOULD HAVE IT.  I INDICATED THAT I WOULD
 3   COMMUNICATE THAT TO THE PARTIES TODAY.
 4            THERE'S ALSO THIS ISSUE OF THE AEO DOCUMENTS TO BE
 5   USED.                                                            10:54
 6            I UNDERSTAND, FROM READING WHAT YOU'VE SUBMITTED,
 7   THAT THERE ARE CERTAIN CATEGORICAL AREAS THAT, I THINK BOTH
 8   PARTIES WILL RECOGNIZE, NEED TO BE OFF LIMITS.  AND CERTAINLY,
 9   FUTURE PRODUCTS, FUTURE ANTICIPATED PRODUCTION LINES OR PRODUCT
10   LINES -- AND I'LL INCLUDE THAT IN THE COURT'S ORDER TODAY --    10:54
11   THAT, OF COURSE, STAYS OFF; PROJECTED FINANCIAL EARNINGS AND
12   THINGS OF THAT NATURE, ANYTHING THAT'S KIND OF PRESENT, LOOKING
13   FORWARD.
14            BUT ANY PAST DOCUMENTS THAT HAVE BEEN PRODUCED AND
15   ARE IN DISCOVERY AND ARE PART OF THIS CASE, I BELIEVE THAT IN   10:54
16   AMBASSADOR PROSPER'S DISCRETION, HE NEEDS TO BE ABLE TO USE
17   THOSE DOCUMENTS IN THE COURSE OF THE SETTLEMENT CONFERENCE.
18            NOW, I AGREE THAT THE GENERAL COUNSEL OR THE CEO IS
19   NOT GOING TO WALK OFF WITH THESE DOCUMENTS; THAT THESE ARE ONLY
20   GOING TO BE USED IN THE SETTLEMENT CONFERENCE.  AND CERTAINLY,  10:55
21   THE CEO OR THE GENERAL COUNSEL, OR WHOEVER ELSE PARTICIPATES,
22   IS GOING TO HAVE TO UNDERSTAND THAT THIS IS A CONFIDENTIAL
23   SETTLEMENT CONFERENCE AND THAT THEY WILL BE BOUND WITHIN THOSE
24   CONFINES.  BUT THOSE ARE THE GENERAL PARAMETERS THAT I'M
25   THINKING OF SETTING FORTH IN AN ORDER THAT WE SEND OUT TODAY,   10:55
```

```
 1   TO GOVERN THIS.  I JUST WANT TO MAKE SURE THAT EVERYBODY CAN

 2   LIVE WITH THOSE PARAMETERS, OR IF THERE'S ANYTHING IN

 3   PARTICULAR THAT YOU FEEL STRONGLY ABOUT THAT I'M MISSING.

 4         MR. NOLAN:  YOUR HONOR, WE APPRECIATE THIS ISSUE

 5   COMING UP.  WE HAVE COOPERATED WITH AMBASSADOR PROSPER.  I'VE      10:55

 6   MET WITH HIM ON SEVERAL OCCASIONS.  HE HAS MET WITH MR. LARIAN.

 7   IN FACT, HE MET WITH HIM ALONE FOR 45 MINUTES, ONLY BECAUSE OF

 8   THE TRAFFIC JAM; BUT WE DIDN'T HAVE ANY ISSUE WITH THAT.  AND

 9   WE WANT TO SEE IF THIS PROCESS CAN WORK, AND WE'VE BEEN

10   COOPERATING AS MUCH AS POSSIBLE.                                  10:55

11         WHAT I HAD MENTIONED TO AMBASSADOR PROSPER, AND I

12   JUST MENTIONED TO THIS COURT, IS TWO THINGS:  ONE IS, I DON'T

13   WANT THE BURDEN TO HAVE TO BE ON THE AMBASSADOR TO SORT THROUGH

14   WHAT IS AEO, WHAT'S CONFIDENTIAL, WHAT WE SHOULDN'T BE SHOWING

15   TO THE OTHER SIDE, EXCEPT FOR SOME VERY NARROW, DISCREET          10:56

16   CATEGORIES, WHICH I THINK YOU'VE ALREADY ARTICULATED; FOR

17   INSTANCE, MR. LARIAN'S CHILDREN'S TRUST ACCOUNTS AND THINGS

18   LIKE THAT.  AND WE ARTICULATED THAT IN OUR POSITION PAPER.

19         BUT WHEN I READ MATTEL'S POSITION PAPER -- AND

20   SETTING ASIDE FOR A MOMENT THEIR CONTINUOUS OPPORTUNITY TO SAY,   10:56

21   'GEE, THEY'VE ALLEGED THAT THERE'S TRADE SECRET INFORMATION

22   HERE, AND WE'RE GOING TO WALK AWAY.'  IT REMINDED ME OF THAT

23   MOVIE -- I DON'T KNOW IF YOU REMEMBER IT, YOUR HONOR -- "AND

24   JUSTICE FOR ALL," WHERE PACINO WAS ONE OF THE LAWYERS AND THE

25   BOOKIE WAS ON TRIAL AND HE WENT UP TO THE CLERK'S DESK AND HE     10:56
```

```
 1    STARTED EATING ALL OF THE EVIDENCE.  THAT'S HOW THEY'RE TRYING
 2    TO PROJECT THIS CASE.  YOUR HONOR, I'VE NEVER SEEN A SITUATION
 3    WHERE THERE HAS BEEN SO MUCH HYPE ABOUT AN ISSUE.
 4            I'M PREPARED TO SHOW YOU -- I'VE GOT MR. SHORR HERE,
 5    WHO WILL BE DOING OUR TRIAL.  I'VE GOT A SCREEN HERE.  I COULD    10:57
 6    SHOW YOU DOCUMENTS THAT MATTEL HAS MARKED AS AEO WHICH ARE
 7    LAUGHABLE IN TERMS OF, ARE THEY REALLY PROTECTABLE?  AND THIS
 8    IS WHAT THE ISSUE IS THAT I'M CONCERNED THE AMBASSADOR IS GOING
 9    TO GET BOGGED DOWN WITH.
10            FOR EXAMPLE, YOUR HONOR, LAST WEEK OR TEN DAYS AGO,       10:57
11    WE HAD PRODUCED TO US -- AND IT WAS MARKED "AEO" -- A VIDEOTAPE
12    THAT MATTEL TOOK OF OUR BOOTH AT THE TOKYO TOY FAIR IN MARCH OF
13    2001.  IT'S OF OUR BOOTH.  IT'S OF OUR PRODUCT.  AND THIS IS
14    THE TYPE OF THING, YOUR HONOR, THAT -- I RARELY HAD THE
15    OPPORTUNITY TO ADDRESS THIS ISSUE ON THE MERITS WITH YOU, AND    10:58
16    WHEN I SAW THE PROTECTIVE ORDER, I JUST WANTED TO RAISE THIS:
17    WE'RE ABOUT SIX WEEKS AWAY FROM TRIAL, SEVEN WEEKS AWAY FROM
18    TRIAL; AND I SAY THIS RESPECTFULLY TO MATTEL:  UNLESS THEY'RE
19    GOING TO SUGGEST IN A MOTION *IN LIMINE* THAT WE TRY THIS CASE IN
20    AN UNDISCLOSED BUNKER SOMEWHERE --                               10:58
21            **THE COURT:**  OH, NO.  I'VE ALREADY PUT THE PARTIES ON
22    NOTICE THAT IN ADVANCE OF TRIAL -- IN FACT, PROBABLY AROUND THE
23    TIME OF THE SUMMARY JUDGMENT MOTION, WE'RE GOING TO HAVE A
24    RECLASSIFICATION OF A LARGE NUMBER OF DOCUMENTS, AND THERE'S
25    GOING TO BE A PRESUMPTION THAT DOCUMENTS ARE GOING TO BE PART    10:58
```

```
 1   OF THE PUBLIC RECORD, ANYTHING THAT'S USED AT TRIAL.  THIS IS

 2   GOING TO BE A PUBLIC TRIAL.

 3           MR. NOLAN:  GOOD.

 4           THE COURT:  AND I FEEL VERY STRONGLY, ON FIRST

 5   AMENDMENT GROUNDS, THIS HAS TO BE AS OPEN AS POSSIBLE.  I'VE          10:58

 6   BEEN VERY LAX OR LENIENT, I SUPPOSE, WHEN IT COMES TO AFFORDING

 7   PARTIES DISCRETION TO MAKE DOCUMENTS CONFIDENTIAL DURING THE

 8   DISCOVERY PROCESS.  BUT WHEN WE MOVE TO THE TRIAL PROCESS AND

 9   WE'RE DEALING WITH ADMISSIBLE EVIDENCE, OR POTENTIALLY

10   ADMISSIBLE EVIDENCE, AS OPPOSED TO DISCOVERY EVIDENCE, THEN THE      10:58

11   PRESUMPTION, THE VERY STRONG PRESUMPTION, IS THAT THIS IS AN

12   OPEN DOCUMENT.

13           WHAT I'M SUGGESTING -- AND I TRUST YOU HAVE NO

14   OBJECTION TO IT -- IS SAVE FOR THOSE CATEGORICAL RESTRICTIONS,

15   UNRELEASED PRODUCTS, FUTURE THEMES, PRODUCT LINE LISTS AND          10:59

16   SCHEDULES FOR A PERIOD AFTER JANUARY 1, 2008, MARKETING AND

17   ADVERTISING PLANS AFTER JANUARY 1, 2008, THOSE CATEGORIES THAT

18   ARE SET FORTH IN MATTEL'S PAPER, AS WELL AS THE CATEGORIES THAT

19   ARE SET FORTH IN YOURS, BUT FOR THOSE CATEGORIES, THAT IT'S

20   GOING TO BE THE DISCRETION OF THE AMBASSADOR TO USE, WITHIN THE     10:59

21   CONFINES OF A CONFIDENTIAL SETTLEMENT CONFERENCE, DOCUMENTS

22   THAT HE BELIEVES, IN HIS DISCRETION, ARE NEEDED TO ADVISE AND

23   FURTHER THE EFFORTS OF MEDIATION.

24           I TRUST YOU HAVE NO OBJECTION THAT.

25           MR. NOLAN:  ABSOLUTELY NOT, YOUR HONOR.                     10:59
```

```
 1          IN THREE WEEKS, WE'RE GOING TO BE BEFORE YOU ARGUING

 2   THE MOTION FOR SUMMARY JUDGMENT.  SOMETIME IN THE NEXT THREE

 3   WEEKS, WE'VE GOT TO WORK OUT, I ASSUME, WHAT YOU'VE BEEN ASKING

 4   US TO DO.  MY ONLY CONCERN, YOUR HONOR, WAS THAT I THOUGHT NOW

 5   WAS THE TIME -- YOU KNOW, IF WE'RE GOING TO HAVE THIS SESSION       11:00

 6   WITH AMBASSADOR PROSPER, WE MIGHT AS WELL DEAL WITH IT IN THAT

 7   CONTEXT.

 8          WHAT I WOULD RATHER SAY, YOUR HONOR, IN YOUR ORDER,

 9   IS, BUT FOR THOSE CATEGORIES, THE PARTIES SHOULD MEET AND

10   CONFER AND RELEASE THOSE DOCUMENTS FROM AEO PROTECTION.            11:00

11   BECAUSE WHAT IS ACTUALLY GOING ON HERE, YOUR HONOR, I

12   BELIEVE -- WHICH WILL BE SOLVED ONCE WE GET TO THIS OPEN AIR

13   VIEW OF THIS EVIDENCE -- IS THAT I BELIEVE THE PROTECTIVE ORDER

14   HAS BEEN MISUSED IN THIS CASE TO KEEP UNDER WRAPS A SITUATION

15   WITH RESPECT TO MATTEL AND ITS CONDITION, FINANCIAL CONDITION,     11:00

16   THAT WAS NOT KNOWN TO ITS ANALYST AND WAS -- I THINK THE

17   EVIDENCE -- THEY'VE GOT A LOT OF SECURITIES FRAUD MATTERS GOING

18   ON REGARDING REPRESENTATIONS THAT WERE MADE TO THEIR SECURITY

19   ANALYST.

20          THE COURT:  WELL, LET ME STOP YOU THERE, BECAUSE YOU        11:00

21   MADE CERTAIN -- YOU'RE UPSET WITH CERTAIN ALLEGATIONS THAT

22   THEY'RE MAKING ABOUT TRADE SECRETS.  LET'S TEMPER THE

23   ALLEGATIONS AT THIS POINT.

24          MR. NOLAN:  BUT, YOUR HONOR, THEY DON'T HAVE TO

25   TEMPER THEIR ALLEGATIONS.                                         11:01
```

1          **THE COURT:**  I'M ASKING YOU --

2          **MR. NOLAN:**  SEE, THEY CAN DO IT AT ANYTIME, AND THEY

3     FILE IT WITH --

4          THEY CAN MAKE THESE SERIOUS ALLEGATIONS IN THE PUBLIC

5     RECORD, AND SOME OF THEM GET REPRODUCED IN NEWSPAPER ARTICLES,        11:01

6     YOUR HONOR; SO IT'S EASY FOR THEM TO DO IT IN PAPER.  BUT IN

7     THE COURTROOM, YOUR HONOR, WHEN WE ARE ADDRESSING IT, I THINK

8     IT'S ONLY FAIR THAT I CAN AT LEAST ALERT THE COURT'S ATTENTION

9     TO THE POTENTIAL FOR ABUSE.  AND THAT'S WHY I BELIEVE EVERY

10    AUTHORITY THAT'S EVER LOOKED AT THIS HAS SAID, 'BEWARE OF THE        11:01

11    PROTECTIVE ORDER PROCESS, BECAUSE IT CAN BE USED AS AN ABUSE.'

12    AND WE BELIEVE IT HAS BEEN USED AS AN ABUSE.

13         **THE COURT:**  I'M NOT SUGGESTING THAT IT HAS OR HAS NOT

14    BEEN USED AS AN ABUSE, BUT COME THE MOTION FOR SUMMARY

15    JUDGMENT, IN THREE WEEKS AS YOU INDICATE, IT'S GOING TO COME TO      11:01

16    AN END.

17         **MR. NOLAN:**  GREAT.  SO THAT I UNDERSTAND, YOUR HONOR,

18    WHEN WE MAKE THE ARGUMENT ON THE MOTION FOR SUMMARY JUDGMENT,

19    WE WILL BE ABLE TO, IN AN OPEN COURTROOM, BE ABLE TO REFER TO

20    THE EVIDENCE THAT'S BEEN PRODUCED IN THIS CASE WHICH SUPPORTS       11:02

21    OUR CONTENTION THAT SUMMARY JUDGMENT SHOULD BE GRANTED ON

22    BEHALF OF MGA.

23         **THE COURT:**  ABSOLUTELY, SUBJECT TO ANY GOOD CAUSE

24    SHOWING BY EITHER SIDE THAT A PARTICULAR DOCUMENT OR A

25    PARTICULAR PIECE OF EVIDENCE NEEDS TO BE MAINTAINED IN-CAMERA       11:02

```
 1   OR UNDER SEAL.  BUT THE PRESUMPTION IS GOING TO BE THAT ALL
 2   DOCUMENTS BEING USED IN SUMMARY JUDGMENT, LIKE THE PRESUMPTION
 3   THAT ALL DOCUMENTS USED AT THE PUBLIC TRIAL, WILL BE OPEN,
 4   SUBJECT TO A PARTICULARIZED SHOWING OF GOOD CAUSE THAT A
 5   PARTICULAR DOCUMENT NEEDS TO BE MAINTAINED UNDER SEAL.          11:02
 6         MR. NOLAN:  FOR THE REASONS IN TERMS OF FUTURE
 7   PRODUCTS AND THINGS LIKE THAT.
 8         THE COURT:  WHATEVER IT MIGHT BE.  I'M NOT GOING TO
 9   SPECULATE OR GIVE AN ADVISORY OPINION AT THIS POINT AS TO WHAT
10   CONSTITUTES GOOD CAUSE.  I'LL CONSIDER THAT ON A CASE-BY-CASE   11:02
11   BASIS.  BUT THE PRESUMPTION IS GOING TO BE -- ALL THE AEO THAT
12   YOU'VE BEEN DESIGNATED, THAT WAS PURSUANT TO A DISCOVERY-PHASE
13   PROTECTIVE ORDER.  THAT DOES NOT APPLY TO THE MOTION FOR
14   SUMMARY JUDGMENT.  THAT'S NOT GOING TO APPLY.  IT'S GOING TO BE
15   LIFTED FOR THE MOTION FOR SUMMARY JUDGMENT; IT'S GOING TO BE    11:03
16   LIFTED FOR THE TRIAL, SUBJECT TO ANY FURTHER ORDER OF THIS
17   COURT THAT A PARTICULAR DOCUMENT NEEDS TO BE UNDER SEAL.
18         AND I'VE ENCOURAGED YOU, AND I STARTED MAKING THIS
19   ENCOURAGEMENT BACK IN OCTOBER, I BELIEVE, TO BE THINKING ABOUT
20   THIS PROCESS AND MAKING SURE THAT YOU'RE GOING TO BE PREPARED   11:03
21   COME SUMMARY JUDGMENT, COME TRIAL, TO DEAL WITH THIS.
22         I TRUST YOU FOLLOWED THE COURT'S ADVICE ON THAT.
23         MR. NOLAN:  YOUR HONOR, WE HAVE.  AND I'M GOING TO
24   STAY ON THIS POINT FOR ONE MORE MINUTE.
25         I WANT TO MAKE CERTAIN THAT MATTEL ALSO HEARS THIS,       11:03
```

```
1   BECAUSE IN MEET AND CONFERS, WHEN WE'RE TALKING ABOUT WHETHER

2   OR NOT 2003 DOCUMENTS OR 2004 DOCUMENTS, DEALING WITH LINES

3   THAT HAVE BEEN SOLD AND ARE PROBABLY NOW BEING SOLD AS RELICS

4   ON EBAY, THERE ARE CLAIMS OF PROPRIETARY KNOWLEDGE WITH RESPECT

5   TO THAT.  WHEN THESE MARKETING PLANS -- AND WHAT WAS GOING ON      11:04

6   BETWEEN THE PARTIES IS OF NO RELEVANCE TO THE 2008 PRODUCTION

7   LINE.  THAT'S THE ENCOURAGEMENT THAT WE NEED, YOUR HONOR, TO

8   MOVE THIS ALONG.  OTHERWISE, I FEAR, I FEAR, THAT WE'RE GOING

9   TO HAVE A HEARING -- AND THIS IS ONE I MAY REMIND YOU OF, YOUR

10  HONOR --                                                          11:04

11          THE COURT:  FAIR ENOUGH.

12          MR. NOLAN:  -- THE END OF MAY, WHEN WE'RE TRYING TO

13  GET READY FOR TRIAL, THAT WE'RE GOING TO HAVE A MOTION WITH

14  RESPECT TO A LOT OF AEO STUFF THAT IS JUST SIMPLY NOT REALLY

15  PROTECTABLE --                                                    11:04

16          THE COURT:  UNDERSTAND WHAT I'M SAYING.  IT'S NOT

17  GOING TO BE AEO AT THAT POINT, UNLESS IT'S BEEN REDESIGNATED AS

18  SUCH BY AN ORDER OF THIS COURT.

19          MR. NOLAN:  YOUR HONOR, THE COURT MAY HAVE THOUGHT

20  ABOUT THIS:  MAYBE THERE SHOULD BE -- FOR EVERY DOCUMENT THAT'S   11:04

21  LISTED AS AEO THAT YOU OVERRULE, MAYBE IT SHOULD BE, LIKE, A $2

22  FINE OR SOMETHING.

23          THE COURT:  I UNDERSTAND.  I'M NOT GOING TO OVERRULE

24  ANYTHING, BECAUSE I'M NOT GOING TO LEAVE IT TO THE PARTIES'

25  DISCRETION TO DESIGNATE IT AS AEO FOR PURPOSES -- YOU'RE GOING    11:04
```

```
 1   TO HAVE TO COME TO ME AND SEEK A COURT ORDER DESIGNATING

 2   SOMETHING AS AEO.  IT'S GOING TO REVERSE THE PROCESS.

 3          MR. NOLAN:  EXCELLENT.  THANK YOU.

 4          THE COURT:  MR. COREY?

 5          MR. COREY:  LET ME JUST MAKE VERY CLEAR THAT MATTEL      11:05

 6   UNDERSTANDS THE FIRST AMENDMENT, AND WE'VE ALWAYS BEEN

 7   OPERATING UNDER THE ASSUMPTION THAT WHEN TRIAL COMES, IT'S

 8   GOING TO BE A PUBLIC TRIAL, UNLESS MATTEL CAN MAKE AN

 9   EVIDENTIARY SHOWING THAT SOMETHING SHOULD NOT BE PART OF THE

10   PUBLIC RECORD.                                                 11:05

11          THE COURT:  VERY GOOD.

12          MR. COREY:  BUT I JUST WANT TO MAKE SURE THAT I

13   UNDERSTAND WHAT THE COURT IS DOING TODAY.

14          THE COURT:  RIGHT NOW, WE'RE JUST FOCUSING ON THE

15   SETTLEMENT.                                                    11:05

16          MR. COREY:  OKAY.  SO TO THE EXTENT THAT THE PARTIES

17   SUBMIT THINGS OR HAVE SUBMITTED THINGS TO AMBASSADOR PROSPER,

18   HE WILL HAVE THE ABILITY TO SHOW SOME OF THOSE

19   ATTORNEYS'-EYES-ONLY THINGS TO PRINCIPALS FOR THE OTHER SIDE

20   DURING THE COURSE OF THE SETTLEMENT CONFERENCE OR MEDIATION, OR  11:05

21   WHATEVER WE CALL IT.

22          THE COURT:  AND WHEN WE TALK ABOUT PRINCIPALS, WE'RE

23   TALKING ABOUT THE CEO AND GENERAL COUNSEL.

24          MR. COREY:  AND THE MATERIALS WILL NOT BE LEFT WITH

25   THEM.  AND THEN WE'LL MOVE FORWARD TO THE SUMMARY JUDGMENT      11:05
```

MARCH 31, 2008              ED CV 04-09049-SGL

1    MOTION.

2              THE COURT:  THAT'S CORRECT.

3         MR. COREY:  OKAY.  THANK YOU, YOUR HONOR.

4              THE COURT:  ALL RIGHT.  I'LL MAKE THAT CLEAR IN THE

5    ORDER.                                                        11:06

6         THE LAST THING -- AND I DON'T KNOW IF WE'RE PREPARED

7    TO DO THIS TODAY -- I UNDERSTAND FROM MR. NOLAN THAT THE

8    OPPOSITION TO THE MOTION TO DISQUALIFY IS GOING TO BE COMING IN

9    TODAY.

10        IN REVIEWING THE MOTION ITSELF, WHAT IS                  11:06

11   UNDERSTANDABLY MISSING, AND PERHAPS NONEXISTENT, I SUPPOSE, IS

12   ANY EVIDENCE OF WHAT ATTORNEY WORK PRODUCT WAS DISCLOSED TO THE

13   EXPERT IN QUESTION.

14        WHAT CONCEIVABLY COULD THIS EXPERT HAVE DISCLOSED TO

15   SKADDEN ARPS, TO AN ATTORNEY FROM SKADDEN ARPS, OR ANYBODY      11:06

16   ELSE, FOR THAT MATTER?  THAT'S NOT CLEAR TO ME IN REVIEWING THE

17   MOTION OR THE SUPPORTING PAPERS.  THAT WOULD BE SOMETHING, OF

18   COURSE, THAT WOULD HAVE TO, BY DEFINITION, BE SUBMITTED

19   IN-CAMERA AND NOT PART OF THE PAPERS; SO I UNDERSTAND IT NOT

20   BEING PART OF THE PAPERS.                                     11:07

21        BUT FOR THE COURT TO CONSIDER THIS MOTION, I'M GOING

22   TO HAVE TO GET A SENSE OF WHAT THAT IS, JUST IN TERMS OF -- I

23   KNOW WE HAVE A HEARING ON THIS SCHEDULED IN A FEW WEEKS, BUT I

24   WANTED TO RAISE THAT AT THIS POINT TO GET A SENSE, BECAUSE I

25   DON'T KNOW WHAT THAT INFORMATION IS.                          11:07

1          **MR. COREY:**  I APPRECIATE THE COURT RAISING THAT.

2    THAT WAS A CONCERN IN DRAFTING THE MOTION FOR DISQUALIFICATION.

3          WE DID NOT WANT TO PUT THAT KIND OF INFORMATION IN A

4    FORM WHERE IT WOULD BE PART OF THE PUBLIC RECORD.

5          **THE COURT:**  I UNDERSTAND.

6          **MR. COREY:**  THAT WOULD BE AN ARGUMENT THAT THAT'S A

7    WAIVER; SO NO HARM, NO FOUL.

8          WE HAVE THAT DECLARATION.  WE'RE MORE THAN WILLING TO

9    SUBMIT IT IN-CAMERA, AND WE'LL DO THAT TODAY.

10         **THE COURT:**  MR. NOLAN?                              11:07

11         **MR. NOLAN:**  YOUR HONOR, VERY BRIEFLY, ON THAT POINT,

12   WHEN THE MOTION -- BY THE LOCAL RULES, THE PROCESS INCLUDES A

13   MEET AND CONFER NOTICE, AND WE RECEIVED THE MEET AND CONFER

14   NOTICE ON THIS PARTICULAR POINT.  WE MET WITH MATTEL'S LAWYERS

15   AND WE ASKED THEM TO PLEASE TELL US, BECAUSE WE NEEDED TO KNOW   11:08

16   IF THAT WAS THE CASE.  THEY WOULD NOT PROVIDE IT, FOR WHATEVER

17   REASON, AT THAT POINT IN TIME.  I'M HAPPY TO HEAR THAT MAYBE

18   THEY'LL NOW TRY TO DO THAT IN-CAMERA.  BUT WE ARE FILING THE

19   OPPOSITION TODAY.

20         BECAUSE IN THE ABSENCE OF THAT, YOUR HONOR, IN THE       11:08

21   BOLD ALLEGATION, WHAT WE DID, JUST OUT OF PRECAUTION, I

22   INSTRUCTED THE TEAM TO PULL BACK THE INFORMATION; TO SEAL THE

23   DEPOSITION TRANSCRIPT; TO TAKE THE EXPERT REPORT AND REDACT IT

24   FROM OUR SYSTEM, BECAUSE I NEVER WANTED TO BE IN A POSITION OF

25   HAVING TO FACE YOU AND SAY, 'I WAS TOLD THAT THERE WAS         11:08

1    PRIVILEGED INFORMATION.'  BUT I WILL TELL YOU -- YOU'LL SEE IT

2    IN THE REPLY TODAY -- WE HAVE NOT A CLUE.  THE DEPOSITION IS

3    QUITE CLEAR, FROM MS. TOMIYAMA, THAT SHE COULD NOT RECALL

4    HAVING SUCH CONVERSATIONS OR ANY DISCUSSIONS.  IT'S A LITTLE

5    BIT HARD TO IMAGINE HOW WE COULD FIND OUT ANYTHING THAT WAS          11:09

6    CONFIDENTIAL OR WORK PRODUCT EXCEPT FOR A PARTICULAR EXHIBIT,

7    WHICH SHE HERSELF DID.  WE ADDRESS ALL OF THAT.

8              BUT, YOUR HONOR --

9         **THE COURT:**  THE ATTORNEY WHO DID THE DEPOSITION, THAT

10   WAS FROM YOUR NEW YORK OFFICE?                                      11:09

11        **MR. NOLAN:**  YES.  KEN BLEVIN, YOUR HONOR.

12        **THE COURT:**  I DON'T WANT TO GET INTO -- I JUST

13   BROUGHT THIS UP MORE AS A -- THAT PORTION OF THE MOTION THAT

14   WAS LACKING, AND THE EX-PARTE IN-CAMERA PROCEEDING TODAY -- IF

15   WE CAN SUBMIT THE DECLARATION IN-CAMERA, THAT WOULD JUST            11:09

16   COMPLETE THE MOTION.  AND THEN I'LL CERTAINLY ENTERTAIN --

17   OBVIOUSLY, WE'RE NOT GOING TO THE OTHER SIDE.  THAT WOULD

18   DEFEAT THE WHOLE PURPOSE, I SUPPOSE, OF WORK PRODUCT.

19        **MR. NOLAN:**  RIGHT.  WE'RE HAVING A HEARING NEXT

20   MONDAY, YOUR HONOR, ON APRIL 7TH.                                   11:09

21             THAT JUST REMINDED ME OF ONE MORE THING, YOUR HONOR.

22   WE'RE FILING THE REPLY TODAY.  WE'RE ALSO FILING PRO HOC VICE

23   APPLICATIONS FOR A COUPLE OF MY PARTNERS OUT OF WASHINGTON,

24   D.C.

25             THE OTHER PRECAUTION THAT I TOOK WAS THAT I ASKED A       11:10

MARCH 31, 2008          ED CV 04-09049-SGL

```
 1   GROUP THAT WAS NOT INVOLVED IN THE TRIAL PREPARATIONS OR WHO

 2   HAD BEEN INVOLVED IN DEALING WITH MS. TOMIYAMA TO ACTUALLY

 3   PREPARE AND WRITE THE BRIEF.

 4          THE COURT:  SO THIS IS COMING FROM THE SKADDEN ARPS'

 5   WASHINGTON, D.C. OFFICE.                                      11:10

 6          MR. NOLAN:  RIGHT, YOUR HONOR.

 7          BUT ONE OF THE MOST IMPORTANT DECISIONS IS WHO WILL

 8   ARGUE THE MOTION.  I DID NOT HAVE ANY SUBSTANTIAL CONTACT,

 9   OTHER THAN A CASUAL HELLO, WITH MS. TOMIYAMA.  MY INTENT IS TO

10   STAND BEFORE YOU AND ARGUE THAT MOTION.                       11:10

11          THE COURT:  VERY WELL.

12          MR. NOLAN:  THANK YOU.

13          THE COURT:  I'LL SEE YOU NEXT MONDAY.

14          MR. COREY:  THANK YOU, YOUR HONOR.

15          THE COURT:  WE'RE GOING TO TAKE A VERY SHORT BREAK      11:10

16   FOR THE COURT REPORTER, AND WE'LL RESUME WITH THE REST OF THE

17   CALENDAR.

18                          CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the judicial conference of
     the united states.

23

24   _____          _____
     THERESA A. LANZA, CSR, RPR                  Date
25   FEDERAL Official COURT Reporter
```