UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                             Date: June 18, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===============================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                                        None Present
      Courtroom Deputy                                   Court Reporter

ATTORNEYS PRESENT FOR                        ATTORNEYS PRESENT FOR
PLAINTIFFS:                                  DEFENDANTS:

None Present                                 None Present

**PROCEEDINGS:**   **ORDER AFTER JUNE 15, 2009, HEARING ON ACCOUNTING ISSUES**

      The parties have briefed the issue regarding the proper scope of accounting and escrow of profits relating to Bratz products, and the Court heard argument on June 15, 2009.  In fashioning the equitable relief of an accounting, and the resulting escrow, the Court is guided by the proper measure of damages available to an infringement plaintiff.[1]  It is the intent of the Court, by the issuance of this Order, to provide guidance to the parties, the Monitor, and their accountants to arrive at an appropriate accounting.

      The following events are relevant to the Court's analysis:

06/30/08    Date of last evidence regarding profits of Bratz presented to jury.

07/17/08    Date of Phase 1A jury verdict which, along with the Court's summary

---

[1] At issue here, as discussed more fully below, are both copyright and trademark infringement.  As the Court and the parties are aware, Mattel asserted no trademark infringement claim in this action for reasons understood by the Court and by parties (which the Court does not belabor here).  However, damages as measured by profits related to trademark are relevant to the present discussion because of the Court's imposition of a constructive trust, on December 3, 2008, over the "Bratz" and "Jade" marks.

|            |                                                                                                                                                                                                                                                       |
|------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | judgment orders, established (1) that Carter Bryant created (alone or jointly with others) the Bratz sculpt which has been designated as TX 1136A; and (2) that Mattel owned the name "Bratz."                                                        |
| 08/26/08   | Date of Phase 1B jury verdict which, in addition to awarding $10 million in copyright damages, also found no willful copyright infringement.                                                                                                           |
| 12/03/08   | Date of issuance of permanent injunction, which expressly found hundreds of Bratz core female fashion dolls infringed Mattel's copyrights.[2]  Date of imposition of constructive trust.  All orders were stayed pending the Court's consideration of the post-trial motions. |
| 12/11/08   | MGA sought a stay pending appeal of the Court's December 3, 2008, Orders.                                                                                                                                                                              |
| 12/30/08   | Court denied MGA's ex parte application to stay pending appeal, but allowed further briefing on a limited stay to address retailer concerns.                                                                                                          |
| 01/07/09   | After briefing and hearing, Court modified the stay in light of retailer concerns:  "Specifically, retailers and distributors will be permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009.  In the event the Court awards control over the rights to the Bratz products referenced in the Court's December 3, 2008, Order, and the January 7, 2009 Stipulation and Order (regarding the Spring and Fall 2009 lines) to a Court-appointed receiver or to Mattel, Inc., that award will be subject to a requirement that retailers and distributors be permitted to purchase the Spring and Fall 2009 lines up to an including December 31, 2009."  This stay was later modified to be in effect until January 21, 2010. |
| 04/29/09   | Court decided the post-trial motions.  Court lifted the stay imposed in the                                                                                                                                                                            |

---

[2] In doing so, the Court examined the dolls depicted in photographs and lodged with the Court and found them to be "substantially similar to Mattel's registered copyrighted drawings." The Court described its analysis:

> Especially important to the Court's conclusion is the consistency of the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls).

Court's 12/03/08 Omnibus Order.

December 3, 2008, Order, but preserved the limited stay set forth in the January 7, 2009, Order.

These events must be considered in connection with the relevant legal standards.

As measured by an infringement defendant's profits, damages for copyright infringement and trademark infringement are subject to the same shifting burden-of-proof scheme.  A plaintiff has the burden with respect to defendant's sales, but a defendant bears the burden of proving deductions from sales to arrive at profits.  17 U.S.C. § 504(b) (copyright); 15 U.S.C. § 1117(a) (trademark).   Doubts regarding calculation of costs or profits are resolved in the plaintiff's favor; a failure by the defendant to meet its burden of proof can result in an award of gross revenue.  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 514 (9th Cir. 1985) (citations omitted).

In both copyright and trademark cases, adjustments may be made to gross revenue based on apportionment, i.e., a reduction for amounts of "an infringer's profits [that] are attributable to factors in addition to use of plaintiff's work."  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 518 (9th Cir. 1985) (internal citation omitted) (copyright); accord Nintendo of America, Inc. v. Dragon Pacific Intern., 40 F.3d 1007, 1012 (9th Cir. 1994) (copyright and trademark).

In addition to apportionment, and subject to proof, direct costs, including, most significantly, cost of goods sold, are generally deducted from gross revenues to arrive at profits, even where the infringement is willful.[3]  Beyond direct costs, however, case law severely limits the deductions that may be made to gross revenue in cases of willful infringement.  Most significantly, where infringement is willful, a proportional share of overhead (including salaries) is not deductible, and taxes are not deductible.[4]  See Kamar International, Inc. v. Russ Berrie & Co., 752 F.2d 1326, 1331 (9th Cir.1984) (overhead not deductible in case of willful copyright infringement); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 487 (9th Cir. 2000) (taxes not deductible in case of willful copyright infringement but are deductible in cases of non-willful infringement); Wolfe v. National Lead Co., 272 F.2d 867 (9th Cir.1959) (salaries not deductible in case of willful

---

[3] Mattel has identified other items which it concedes are "arguably" direct costs, including production costs, royalty expense, advertisement production and media expenses, mold depreciation expense, other sales and marketing expense, and product development expense.  Mattel's Memo. re Escrow of Bratz Profits at 8 n.16.

[4] Mattel contends a number of items found on the MGA parties' financial statements fall into this category, including travel and entertainment expenses, salaries and related expenses, professional fees, premises-related expenses, equipment-related expenses, supplies, postage delivery expenses, and other expenses and distribution expenses.  Id.

trademark infringement), overruled on other grounds by Maier Brewing Co. v. Fleischmann Distilling Corp., 359 F.2d 156 (9th Cir.1966) (en banc); L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 277 U.S. 97, 99 (1928) (taxes not deductible in case of willful trademark infringement).

In applying these principles, the Court is guided by the purpose of the provisions authorizing awards of defendants' profits to copyright and trademark infringement plaintiffs, which is to remove any economic incentive of infringement and to avoid an infringing defendant's unjust enrichment. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 718 (9th Cir. 2004) ("[T]he purpose of § 504(b) is to compensate fully a copyright owner for the misappropriated value of its property and to avoid unjust enrichment by defendants, who would otherwise benefit from this component of profit through their unlawful use of another's work.") (internal quotation marks and citation omitted); Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir.1986) ("Section 1117(a)'s primary purpose is to 'take all the economic incentive out of trademark infringement.'") (internal quotation marks and citation omitted).

The Court must also consider what it means to willfully infringe another's copyright or trademark. "[T]he term 'willful' refers to conduct that occurs with knowledge that the defendant's conduct constitutes copyright infringement." Danjaq LLC v. Sony Corp., 263 F.3d 942, 957 (9th Cir. 2001). By the same token, "[w]illful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993) (citations omitted).

Against this background, and in accordance with the legal standards articulated herein, the Court considers whether production of the core female fashion dolls constituted willful copyright infringement, and does so with reference to specific time periods. Profits based on trademark infringement, also discussed below, are relevant because of the constructive trust imposed by the Court over the marks "Bratz" and "Jade."

### Prior to 07/01/08

For all periods of time prior to July 1, 2008, the jury's verdict, which found no willful copyright infringement controls. No accounting is necessary for this period of time, as it is included in the amount awarded by the jury.

### 07/01/08 - 12/02/08

Because there was no trademark claim asserted by Mattel, and because this period of time occurred before imposition of the constructive trust over the trademark, the accounting for this period shall include only profits associated with the core Bratz

female fashion dolls, or profits related to other products that may infringe Mattel's copyright, and not any other Bratz product that may be subject only to the constructive trust.[5] In the event that a dispute should arise over whether profits associated with any particular core Bratz female fashion doll should be included in the accounting, the parties, the Monitor, and their accountants shall in good faith consult the Court's July 24, 2008, Order at 2-3; December 3, 2008, Omnibus Order at 10-11; December 3, 2008, Permanent Injunction (including the exhibits attached thereto). In any event, the accounting shall include any doll that is the embodiment of the sculpts referenced in the Permanent Injunction Order at Exhs. 1 and 2. See December 3, 2008, Permanent Injunction at 2, ¶ 1(a)-(b) (enjoining production and sale of any doll utilizing the "core Bratz doll production sculpt" (aka TX 1136A) and the "Bratz movie sculpt").

      The MGA parties have contended that the jury's finding of non-willful copyright infringement carries into this period and beyond. The Court disagrees. After the jury's Phase 1A verdict, the issue of the timing of the Bryant drawings was resolved in favor of Mattel, as was the issue of the ownership of the Bratz sculpt designated TX 1136A. This adjudication changed the landscape dramatically and, absent a successful appeal, the MGA parties are not free to continue to dispute the validity of Mattel's copyright in the Bryant drawings (which it registered well in advance of the Phase 1A trial).[6]

      Nonetheless, and although it is a very close call, the Court finds no willful copyright infringement during this time period. The Court is cognizant of the well-articulated arguments advanced by counsel for the MGA parties regarding the limiting scope of the jury's verdict, likened to a small rug too inadequate to cover a large floor, no matter how it was moved about. Although the Court ultimately rejected this argument, the Court nevertheless concludes that the MGA parties could have, in good faith, relied on their position regarding the jury's verdict, and could have reasonably believed that the Court's ultimate finding regarding the scope of infringement would have been more limited.[7]

      Accordingly, although the MGA parties must account for the profits resulting from all core Bratz female fashion dolls that use the "core Bratz doll production sculpt" and the "Bratz movie sculpt," from the time period July 1, 2008, through December 2, 2008, the MGA parties may deduct, subject to proof, both direct and indirect costs, as well as the taxes, associated with the production of these dolls.

---

[5] See, for example, the Court's discussion regarding the "hero shot," infra.

[6] Shortly after the Phase 1A verdict, on July 25, 2008, Mattel also registered its copyright interest in the Bratz sculpt designated TX 1136A. Hutnyan Decl. (filed 09/29/08) Ex. 122.

[7] Significantly, the Court's finding on this point is limited to the equitable issue of the scope of an appropriate accounting, and should not be construed to any circumstances beyond the scope of an appropriate accounting.

**12/03/08 - 01/21/2010**

Immediately upon issuing its series of Orders on December 3, 2008, the Court stayed them pending its consideration of the parties' post-trial motions. That stay was eventually modified, as set forth above, to provide certain economic stability to retailers that sell MGAE's products. The language of the stay specifically "permitted" retailers and distributors to purchase "Bratz and Bratz-related products" through the 2009 retail season. A necessary corollary to the granting of that permission "to purchase" products is the granting of permission to the MGA parties "to sell" them. Admittedly, it was never the intention of the Court to grant a "license to infringe" such that the profits associated with Bratz products continue to enure to the benefit of the MGA parties. Nevertheless, the Court finds that reliance on the Court's imposition of the stay is sufficient to negate an inference of willfulness for the duration of the stay.

Profits for the period of December 3, 2008, through January 21, 2010, therefore, must be accounted for and escrowed; however, the MGA parties may deduct, subject to proof, both direct and indirect costs, as well as the taxes, associated with the production of these products.

Implicit in this discussion, by reference to "Bratz-related products," is a recognition that December 3, 2008, marks the date for which the scope of the products whose profits are subject to accounting and escrow dramatically expands. Before this date, it was limited essentially to the core Bratz female fashion dolls; after this date, in light of the Court's Constructive Trust Order, it includes any and all products that bear the "Bratz" or "Jade" trademarks.

The Court recognizes that certain disputes regarding the accounting may remain unresolved even after the issuance of this Order. For instance, it is unknown to the Court the extent to which the so-called "hero shot," the original version of which was registered by Mattel, appears on products other than the core Bratz female fashion dolls. The Court has not had the occasion to consider, and thus the parties have not presented and the Court has not definitively decided, the issue of whether any such depiction constitutes copyright infringement, and whether and/or to what extent apportionment based on that depiction alone is appropriate. The Court also recognizes that disputes may occur regarding whether and/or to what extent apportionment is appropriate, and whether and/or the MGA parties have meet their burden of proof regarding deductions of direct and indirect costs.

In light of these anticipated disputes, and in light of the burden already placed on the judicial resources of this Court, it is the intent of this Court to assign to the Monitor the responsibility to investigate disputes that arise regarding the accounting and escrow and to file with the Court, under seal but served on all the parties and Court-appointed

Officers, a Report and Recommendation regarding the resolution of such disputes, if, and only if, the Monitor is unsuccessful in informally resolving such disputes.

**IT IS SO ORDERED.**

cc:   Ronald Durkin
      Patrick Fraoli
      Robert O'Brien
      Pierre Prosper