1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13             Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| 14       vs. | **DISCOVERY MATTER** |
| 15  MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert O'Brien]** |
| 16             Defendant. | [PUBLIC REDACTED] DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES (PHASE 2) TO ISAAC LARIAN |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | |
| 19 | |
| 20 | |
| 21 | Date: [TBD]<br>Time: [TBD]<br>Place: [TBD] |
| 22 | |
| 23 | Discovery December 11: 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |
| 24 | |

25

26

27

28

00505.07975/2979028.1

DECLARATION OF MICHAEL T. ZELLER

## DECLARATION OF MICHAEL T. ZELLER

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. Attached hereto as Exhibit 1 is a true and correct copy of Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated March 4, 2009.

3. Attached hereto as Exhibit 2 is a true and correct copy of Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), dated April 3, 2009.

4. Attached hereto as Exhibit 3 is a true and correct copy of a letter my partner, Jon Corey, sent to Amman Khan and Jean Pierre Nogues, dated April 15, 2009.

5. Attached hereto as Exhibit 4 is a true and correct copy of a letter my associate, Tamar Buchakjian, sent to Richard Sheldon and Daniel Hayes, dated April 29, 2009.

6. Attached hereto as Exhibit 5 is a true and correct copy of a letter Mr. Hayes sent to Ms. Buchakjian, dated April 22, 2009.

7. Attached hereto as Exhibit 6 is a true and correct copy of a letter Mr. Hayes sent to Ms. Buchakjian, dated April 23, 2009.

8. Attached hereto as Exhibit 7 is a true and correct copy of a Mr. Hayes sent to Ms. Buchakjian, dated May 1, 2009.

9. Attached hereto as Exhibit 8 is a true and correct copy of relevant excerpts of Mattel, Inc.'s Third Amended Answer and Counterclaims, dated May 22, 2009.

10. Attached hereto as Exhibit 9 is a true and correct copy of the Discovery Master's Phase II Order No. 3, dated March 10, 2009.

11. Attached hereto as Exhibit 10 is a true and correct copy of the Discovery Master's Phase II Amended Order No. 11, dated March 31, 2009.

-1-

1       12.   Attached hereto as Exhibit 11 is a true and correct copy of the MGA

2  Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third Amended

3  Answer and Counterclaims, dated April 27, 2009.

4       13.   Attached hereto as Exhibit 12 is a true and correct copy of relevant

5  excerpts of the deposition of Isaac Larian, dated March 26, 2008.

6       14.   Attached hereto as Exhibit 13 is a true and correct copy of the

7  Discovery Master's Phase II Order No. 6, dated March 13, 2009.

8       15.   Attached hereto as Exhibit 14 is a true and correct copy of the former

9  Discovery Master's Order, dated May 15, 2007.

10       16.   Attached hereto as Exhibit 15 is a true and correct copy of Judge

11  Larson's Order, dated July 2, 2007.

12       17.   Attached hereto as Exhibit 16 is a true and correct copy of the Discovery

13  Master's Phase II Order No. 17, dated April 14, 2009.

14       18.   Attached hereto as Exhibit 17 is a true and correct copy of the former

15  Discovery Master's Order, dated September 5, 2007.

16       19.   Attached hereto as Exhibit 18 is a true and correct copy of the former

17  Discovery Master's Order, dated September 25, 2007.

18       20.   Attached hereto as Exhibit 19 is a true and correct copy of the former

19  Discovery Master's Order, dated December 31, 2007.

21       Executed on June 19, 2009, at Los Angeles, California.

23                    /s/ Michael T. Zeller

                          Michael T. Zeller

DECLARATION OF MICHAEL T. ZELLER

# Exhibit 1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
    (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>MATTEL, INC.'S FIRST SET OF INTERROGATORIES (PHASE 2) |

PROPOUNDING PARTY:      Mattel, Inc.

RESPONDING PARTIES:     Isaac Larian

SET NO.:      ONE (Phase 2)

**EXHIBIT** 1

**PAGE** 3

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2  ("Mattel") hereby requests that Isaac Larian individually answer the following

3  Interrogatory separately and fully, in writing and under oath, within 30 days after

4  service hereof.   Larian shall be obligated to supplement his responses to the

5  Interrogatories at such times and to the extent required by the <u>Federal Rules of Civil</u>

6  <u>Procedure</u>.

7

8                          **<u>Definitions</u>**

9    1.    "LARIAN" means Isaac Larian and Angela Larian.

10    2.    "LARIAN TRUST" means the Isaac and Angela Larian Trust, Isaac

11  Larian Grantor Annuity Trust, Angela Larian Grantor Annuity Trust, Larian Family

12  Trust and any other trust of which Isaac Larian is a trustee or of which any member of

13  Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or

14  former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors,

15  consultants or any other PERSON acting on its behalf, subject to its authority and

16  control.

17    3.    "IDENTIFY" or "IDENTITY" means to state, fully and separately

18  as to each ENTITY, such ENTITY's full name; taxpayer identification number or other

19  governmental identifying number of the ENTITY is not registered in the United States;

20  state or country of creation, incorporation or organization or registration; the date of

21  incorporation, organization, creation and/or registration; the type of ownership interest

22  that YOU hold or did hold; the percentage of YOUR ownership in each ENTITY; the

23  date(s) on which YOU held such ownership interest; each title or position that YOU

24  have had with each such ENTITY, if any, and the date(s) on which YOU held such title

25  or position; the current address of each entity; the present or last known telephone

26  number of each entity; and the name and current address of each such ENTITY's

27  agent(s) for service of process or, if no such agent has been designated, then the name,

28

**EXHIBIT 1**

**PAGE 4**

00811.GL578/2814351.1

MATTEL'S FIRST SET OF INTERROGATORIES (PHASE 2)

1 current address and current telephone number of each officer, director, managing agent
2 and general agent of such ENTITY.

3        4.        "ENTITY" means any and all business enterprises of any kind,
4 including without limitation any and all partnerships, corporations, companies and joint
5 ventures, trusts, associations, limited liability companies or sole proprietorships.

6        5.        "OWNERSHIP INTEREST" means any right, title or interest of any
7 kind, whether legal, beneficial, past, present, future, contingent, inchoate, potential or
8 otherwise, and includes without limitation any right, title, interest or power that a
9 PERSON possesses or may possess, directly or indirectly, from any contract,
10 arrangement, understanding, relationship or otherwise, to direct, control, dictate or vote
11 on the actions or potential or proposed actions of an ENTITY, and includes without
12 limitation securities, stock, shares, warrants, options, membership interests, partnership
13 interests, voting interests, equity interests, simple ownership, debt or other non-security
14 obligations that may be convertible to equity or other interests and any right, interest; or
15 any right, title, interest, power, title, agreement or understanding to receive, directly or
16 indirectly, distributions of value from an ENTITY.

17        6.        "PERSON" or "PERSONS" means all natural persons, partnerships,
18 corporations, joint ventures and any kind of business, legal or public entity or
19 organization, as well as its, his or her agents, representatives, employees, officers and
20 directors and any one else acting on its, his or her behalf, pursuant to its, his or her
21 authority or subject to its, his or her control.

22        7.        "Any" as used in these interrogatories includes the word "all," and
23 the word "all" as used in these interrogatories includes the word "any."

24        8.        The singular form of a noun or pronoun includes within its meaning
25 the plural form of the noun or pronoun so used, and vice versa; the use of the masculine
26 form of a pronoun also includes within its meaning the feminine form of the pronoun so
27 used, and vice versa; the use of any tense of any verb includes also within its meaning
28 all other tenses of the verb so used, whenever such construction results in a broader

00811.GL578/2814351.1

**EXHIBIT** __

PAGE __5__

-3-
MATTEL'S FIRST SET OF INTERROGATORIES (PHASE 2)

1 | request for information; and "and" includes "or" and vice versa, whenever such
2 | construction results in a broader disclosure of documents or information.

3

4 | ### Instructions

· 5 |     A.    When    an    interrogatory    requests    disclosure    of    a
6 | COMMUNICATION or other information as to which YOU claim any privilege or
7 | protection as a ground for nondisclosure, identify each PERSON who participated in or
8 | had knowledge of the COMMUNICATION or other information and provide the
9 | following:

10 |     (i)    the privilege or protection that YOU claim precludes disclosure;
11 |     (ii)    the subject matter of the COMMUNICATION or information
12 |     (without revealing the content as to which the privilege is claimed);
13 |     and
14 |     (iii)    any additional facts or grounds on which YOU base YOUR
15 |     claim of privilege or protection.
16 |     B.    When an interrogatory requests that YOU provide information,
17 | YOU are required to supply all information known by or available to YOU or YOUR
18 | employees, officers, directors, agents, representatives, attorneys and experts. If YOU
19 | cannot completely answer the interrogatory after making diligent efforts to do so,
20 | please so state. Then describe in detail all efforts made to answer the interrogatory;
21 | identify every PERSON involved in such efforts; and state the additional information
22 | YOU need, if any, to respond completely to the interrogatory.

23

24

25

26

27

28

**EXHIBIT** 1

PAGE 6

-4-
MATTEL'S FIRST SET OF INTERROGATORIES (PHASE 2)

## Interrogatories

INTERROGATORY NO. 1:

IDENTIFY each and every ENTITY in which LARIAN has held, directly or indirectly, any OWNERSHIP INTEREST at any time since January 1, 2005. For purpose of this Interrogatory, transactions involving the purchase or acquisition of publicly traded stock in an amount of $1,000 or less may be excluded.

INTERROGATORY NO. 2:

IDENTIFY each and every ENTITY in which any LARIAN TRUST has held, directly or indirectly, any OWNERSHIP INTEREST at any time since January 1, 2005. For purpose of this Interrogatory, transactions involving the purchase or acquisition of publicly traded stock in an amount of $1,000 or less may be excluded.

DATED:  March 4, 2009

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

By_____

Jon Corey
Attorneys for Mattel, Inc.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On March 4, 2009, I served true copies of the following documents described as:

**MATTEL, INC'S FIRST SET OF INTERROGATORIES (PHASE 2)**

on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>Jason Russell, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>tnolan@skadden.com<br>jrussell@skadden.com | **Attorneys for *the MGA Parties***<br><br>Telephone: 213.687.5000<br>Facsimile: 213.687.5600 |
| Glaser, Weil, Fink, Jacobs, & Shapiro, LLP<br>Patricia L. Glaser, Esq.<br>Amman A. Khan, Esq.<br>Caroline Mankey<br>10250 Constellation Blvd 19th Floor<br>Los Angeles, CA 90067<br>pglaser@glaserweil.com | **Attorneys for *the MGA Parties***<br><br>Telephone: 310.553.3000<br>Facsimile: 310.556.2920 |
| Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq.<br>Alexander H. Cote, Esq.<br>601 W. 5th Street, 12th Floor<br>Los Angeles, CA 90017<br>moverland@obsklaw.com<br>acote@obsklaw.com | **Attorneys for Carlos Gustavo Machado Gomez**<br><br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 |
| | |

07975/2804047.2

-1-

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

**EXHIBIT** 1

**PAGE** 8

1

2   [√]   **[PERSONAL]** by personally delivering the document listed above to the

3   person(s) at the address(es) set forth above.

4        I declare that I am employed in the office of a member of the bar of this

5   court at whose direction the service was made.

6

7        Executed on March 4, 2009, at Los Angeles, California.

8

9

10   Dave Quintana

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT** 1

PAGE 9

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

# Exhibit 2

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California 90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for Defendants
    MGA Entertainment, Inc., MGA Entertainment
11  HK, Ltd., and Isaac Larian

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                   EASTERN DIVISION

16  | CARTER BRYANT, an individual, | CASE NO.  CV 04-9049 SGL (RNBx) |
    |---|---|
17  | Plaintiff, | Consolidated with |
18  | v. | Case No.  CV 04-09059 Case No.  CV 05-02727 |
19  | MATTEL, INC., a Delaware corporation, | ISAAC LARIAN'S RESPONSE TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES (PHASE TWO) |
20  | Defendant. | |
21  |  | |
22  | AND CONSOLIDATED CASES | |

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP
155640.3

28

4|3

EXHIBIT 2
PAGE 10

1  PROPOUNDING PARTY:      MATTEL, INC.

2  RESPONDING PARTY:       ISAAC LARIAN

3  SET NO.:                ONE (Phase Two)

4      Pursuant to Federal Rule of Civil Procedure 33, Isaac Larian ("Larian")

5  hereby responds to Mattel, Inc.'s ("Mattel") First Set of Interrogatories (Phase

6  Two) (the "Interrogatories") as follows:

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

8      1.    These responses are made solely for the purposes of this action. Each

9  response is subject to and without waiver of all objections as to competence,

10 relevance, materiality, propriety, privilege, and admissibility, as well as to any and

11 all other objections on any grounds that would permit or require the exclusion of

12 any statement contained herein or any portion thereof if any of said Interrogatories

13 were asked of, or any statements contained herein were made by, a witness present

14 and testifying in court, all of which objections and grounds are hereby expressly

15 reserved and may be interposed at the time of any deposition or at or before any

16 hearing or trial in this matter, or any other matter.

17     2.    No incidental or implied admissions are intended by the responses

18 herein. The fact that Larian responds or objects to any Interrogatory or part thereof

19 is not intended and shall not be construed as an admission that Larian accepts or

20 admits the existence of any facts set forth in or assumed by such Interrogatory, or

21 that such response or objection constitutes admissible evidence. The fact that

22 Larian responds to all, or part, of any Interrogatory is not intended and shall not be

23 construed as a waiver by Larian of all, or any part, of any objection to any

24 Interrogatory made herein.

25     3.    Larian objects generally to the Interrogatories to the extent that they

26 seek to impose burdens or obligations beyond or inconsistent with those required

27 by the Federal Rules of Civil Procedure. In responding to these Interrogatories,

28 Larian has not and will not comply with any instructions or definitions that seek to

2

**EXHIBIT** 2

**PAGE** 11

1   impose requirements in addition to those imposed by the Federal Rules of Civil

2   Procedure and any applicable local rule.

3       4.    Larian objects to each Interrogatory to the extent it seeks information

4   that is not relevant to any party's claim or defense or the subject matter of the

5   instant suit, nor reasonably calculated to lead to the discovery of admissible

6   evidence.  As the Court has made clear, financial discovery must be related to

7   Phase Two claims.  See March 10, 2009 Order No. 3.

8       5.    Larian objects to each Interrogatory to the extent it seeks information

9   (such as the state of incorporation and agent for service of process of publicly

10   traded companies) that is equally available to Mattel.

11       6.    Larian objects to each Interrogatory to the extent it calls for

12   information not available to him and not within his knowledge.

13       7.    Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Larian

14   objects to providing responses to Interrogatories that can be derived from

15   documents that have or will be produced (when requested in compliance with Rule

16   26) and where the burden to derive such information is substantially the same for

17   Mattel as for Larian.

18       8.    Larian objects to the definitions and instructions to the extent such

19   definitions and instructions purport to enlarge, expand, or alter in any way the plain

20   meaning and scope of any specific term or specific Interrogatories on the ground

21   that such enlargement, expansion, or alteration renders such term or Interrogatory

22   vague, ambiguous, unintelligible, overly broad, unduly burdensome, or uncertain.

23       9.    In addition to the general objections and limitations set forth above,

24   each of which is hereby incorporated into each individual response below, Larian

25   specifically objects to the following defined terms in these Interrogatories:

26       a.    "LARIAN" is vague, ambiguous, unintelligible, overly broad,

27   unduly burdensome, oppressive, and harassing given the inclusion of Angela

28   Larian, who is not a party to this or any related action.  Without limitation, each

Mitchell
Silberberg &
Knupp LLP

2155640.3

3

EXHIBIT 2

PAGE 12

1   Interrogatory that utilizes this defined term violates Angela Larian's right to

2   privacy under the constitutional, statutory, and/or decisional law of California, the

3   United States, and/or any other applicable jurisdiction, and seeks information that

4   is not relevant to any party's claim or defense, or to the subject matter involved in

5   this action, and is not reasonably calculated to lead to the discovery of admissible

6   evidence.

7          b.   "LARIAN TRUST" is vague, ambiguous, unintelligible, overly

8   broad, unduly burdensome, oppressive, harassing, and uncertain. Without

9   limitation, each Interrogatory that utilizes this defined term far exceeds the bounds

10  of permissible discovery, in that it violates the privacy rights under the

11  constitutional, statutory, and/or decisional law of California, the United States,

12  and/or any other applicable jurisdiction, of Larian, Angela Larian, seemingly

13  limitless "blood or marriage" relatives of Larian, trust beneficiaries, and other third

14  parties having nothing to do with this or any related action. It is also hopelessly

15  confusing. For instance, the definition purports to include any person subject to

16  the "control" of any trust of which one of Larian's relatives by marriage was a

17  "vendor." Each Interrogatory that utilizes this defined term also seeks information

18  that is not relevant to any party's claim or defense, or to the subject matter

19  involved in this action, and is not reasonably calculated to lead to the discovery of

20  admissible evidence.

21         c.   "IDENTIFY" (or "IDENTITY" [sic]) is vague, ambiguous,

22  unintelligible, overly broad, unduly burdensome, oppressive, and uncertain. Each

23  Interrogatory that uses this defined term also may contribute to a future violation of

24  the limitation on the number of interrogatories that may be propounded under Rule

25  33 of the Federal Rules of Civil Procedure, because the definition creates

26  numerous subparts seeking discrete information. For instance, the term is

27  compound and uncertain because it is used in connection with the subsequently

28  defined term "ENTITY," but "the type of ownership interest," "percentage

EXHIBIT 2

PAGE 13

1  ownership interest," and "title or position that YOU have had with each such

2  ENTITY" are not typically associated with the plain meaning of the verb

3  "identify," and as such seek discrete information which should have been sought in

4  separate interrogatories.

5      d.    "YOU" and "YOUR" are capitalized but not defined.

6      e.    "OWNERSHIP INTEREST" as vague, ambiguous,

7  unintelligible, overly broad, unduly burdensome, oppressive, and uncertain.

8  Without limitation, the defined terms purportedly cover an interest or power that a

9  person "may possess," "directly or *indirectly*," "from any contract, arrangement,

10  understanding, relationship, *or otherwise*." As phrased, the scope of this purported

11  definition is as limitless as it is amorphous.

12      10.    In addition to the general objections and limitations set forth above,

13  each of which is hereby incorporated into each response below, Larian objects to

14  the use of the terms "any," "all," "and," and "or" as defined in these

15  Interrogatories, since the purported definitions of those terms contradict their plain

16  meaning, rendering the Interrogatories in which they are utilized vague and

17  ambiguous.

18      11.    Larian hereby incorporates his objections set forth above into each of

19  the following responses.

20            **RESPONSE TO INTERROGATORIES**

21  **INTERROGATORY NO. 1**

22      IDENTIFY each and every ENTITY in which LARIAN has held, directly or

23  indirectly, any OWNERSHIP INTEREST at any time since January 1, 2005. For

24  purpose of this Interrogatory, transactions involving the purchase or acquisition of

25  publicly traded stock in an amount of $1,000 or less may be excluded.

26  **RESPONSE TO INTERROGATORY NO. 1**

27      In addition to the general objections and limitations set forth above, each of

28  which is hereby incorporated in this response, Larian objects to this Interrogatory

Mitchell
Silberberg &
Knupp LLP

2155640.3

EXHIBIT 2

PAGE 14

1    on the following grounds:  (1) it seeks information that is not relevant to any

2    party's claim or defense, or to the subject matter involved in this action, and it is

3    not reasonably calculated to lead to the discovery of admissible evidence; (2) it

4    seeks private, confidential, proprietary, or otherwise sensitive information,

5    protected by the constitutional, statutory, or decisional law of California, the

6    United States, and/or any other applicable jurisdiction regarding Larian; (3) it

7    seeks private, confidential, proprietary, or otherwise sensitive information,

8    protected by the constitutional, statutory, or decisional law of California, the

9    United States, and/or any other applicable jurisdiction, regarding third parties to

10   whom no notice has been given, including, but not limited to, Angela Larian, who

11   is not a party to this or any related action; (4) it is vague, ambiguous, and

12   unintelligible because , among other reasons, it uses the defined terms, including,

13   but not limited to, "IDENTIFY," which (i) incorporates the subsequently defined

14   term "ENTITY," and "the type of ownership interest," "percentage ownership

15   interest," and "title or position that YOU have had with each such ENTITY" are

16   not typically associated with the plain meaning of the verb "identify," and (ii)

17   incorporates the term YOU, which is capitalized but undefined, and the plain

18   meaning of which is irreconcilable with the definition of LARIAN, so that it is

19   impossible to ascertain what information is being requested; (5) it is overly broad;

20   (6) it is unduly burdensome, oppressive, and harassing in that, among other things,

21   it purports to require Larian to search for and provide such utterly irrelevant

22   information as every stock market transaction over $1,000 in which he purchased

23   stock in any publicly traded company; and (7) it is impermissibly compound

24   because, among other reasons, the definition of "IDENTIFY" creates numerous

25   subparts seeking discrete information.

26   **INTERROGATORY NO. 2**

27       IDENTIFY each and every ENTITY in which any LARIAN TRUST has

28   held, directly or indirectly, any OWNERSHIP INTEREST at any time since

Mitchell
Silberberg &
Knupp LLP

2155640.3

6

EXHIBIT 2

PAGE 15

1   January 1, 2005. For purpose of this Interrogatory, transactions involving the

2   purchase or acquisition of publicly traded stock in an amount of $1,000 or less may

3   be excluded.

4   **RESPONSE TO INTERROGATORY NO. 2**

5        In addition to the general objections and limitations set forth above, each of

6   which is hereby incorporated in this response, Larian objects to this Interrogatory

7   on the following grounds: (1) it seeks information that is not relevant to any

8   party's claim or defense, or to the subject matter involved in this action, and it is

9   not reasonably calculated to lead to the discovery of admissible evidence; (2) it

10  seeks private, confidential, proprietary, or otherwise sensitive information,

11  protected by the constitutional, statutory, or decisional law of California, the

12  United States, and/or any other applicable jurisdiction regarding Larian; (3) it

13  seeks private, confidential, proprietary, or otherwise sensitive information,

14  protected by the constitutional, statutory, or decisional law of California, the

15  United States, and/or any other applicable jurisdiction, regarding third parties to

16  whom no notice has been given, including, but not limited to, seemingly limitless

17  "blood or marriage" relatives of Larian, trust beneficiaries, and other third parties

18  having nothing to do with this or any related action; (4) it is vague, ambiguous, and

19  unintelligible because of, among other reasons, it uses the defined terms, including,

20  but not limited to, "IDENTIFY," which (i) incorporates the subsequently defined

21  term "ENTITY," and "the type of ownership interest," "percentage ownership

22  interest," and "title or position that YOU have had with each such ENTITY" are

23  not typically associated with the plain meaning of the verb "identify," (ii)

24  incorporates the term YOU, which is capitalized but undefined, and the plain

25  meaning of which is irreconcilable with the definition of LARIAN TRUST, so that

26  it is impossible to ascertain what information is being requested; (5) it is overly

27  broad; (6) it is unduly burdensome, oppressive, and harassing in that, among other

28  things, it purports to require Larian to produce such utterly irrelevant information

Mitchell
Silberberg &
Knupp LLP

2155640.3

7

1  as every stock market transaction over $1,000 for any person under the "control"

2  of any trust of which any blood or marriage relative of Larian is a "vendor;" and

3  (7) it is impermissibly compound because, among other reasons, the definition of

4  "IDENTIFY" creates numerous subparts seeking discrete information.

5  DATED: April 3, 2009                    MITCHELL SILBERBERG & KNUPP LLP

6

7

8  By: _____
        Daniel M. Hayes (SBN 240250)
9        Attorneys for Defendants
         MGA Entertainment, Inc., MGA
10       Entertainment HK, Ltd., and Isaac Larian

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

:155640.3

8

EXHIBIT 2

PAGE 17

1

### PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

     I am employed in the county of Los Angeles, State of California. I am over the age of 18
and not a party to the within action. My business address is Mitchell Silberberg & Knupp LLP,

4

11377 West Olympic Boulevard, Los Angeles, California 90064-1683, and my business email
address is @msk.com.

5

     On April 3, 2009, I served a copy of the foregoing document(s) described as ISAAC

6

LARIAN'S RESPONSE TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES
(PHASE TWO) on the interested parties in this action at their last known address as set forth

7

below by taking the action described below:

8

### SEE ATTACHED SERVICE LIST

9

10

☒ BY MAIL: I placed the above-mentioned document(s) in sealed envelope(s) addressed as set
forth above, and deposited each envelope in the mail at Los Angeles, California. Each
envelope was mailed with postage thereon fully prepaid.

11

12

☐ BY OVERNIGHT MAIL: I placed the above-mentioned document(s) in sealed envelope(s)
designated by the carrier, with delivery fees provided for, and addressed as set forth above, and

13

deposited the above-described document(s) with FedEx in the ordinary course of business, by
depositing the document(s) in a facility regularly maintained by the carrier or delivering the

14

document(s) to an authorized driver for the carrier.

15

☐ BY ELECTRONIC MAIL: I served the above-mentioned document electronically at __:__
__.m. on the parties listed at the email addresses above and, to the best of my knowledge, the

16

transmission was complete and without error in that I did not receive an electronic notification
to the contrary.

17

     I declare under penalty of perjury under the laws of the United States that the above is true

18

and correct.

19

     Executed on April 3, 2009, at Los Angeles, California.

20

21

                         Monica Bowdre

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

184487.1

EXHIBIT 2

PAGE 18

1

## SERVICE LIST

2

3

John Quinn, Esq.
(johnquinn@quinnemanuel.com)
Jon D. Corey, Esq.
(joncorey@quinnemanuel.com)
Michael T. Zeller, Esq.
(michaeltzeller@quinnemanuel.com)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Patricia L. Glaser, Esq.
(Pglaser@glaserweil.com)
Joel N. Klevens, Esq.
(Jklevens@glaserweil.com)
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

4

5

6

7

8

Thomas J. Nolan, Esq.
(tnolan@skadden.com)
Raoul D. Kennedy, Esq.
(rkennedy@skadden.com)
Jason D. Russell, Esq.
(Jason.russell@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144

Mark E. Overland, Esq.
Overland Borenstein Scheper & Kim LLP
One Bunker Hill
601 W. 5th Street, 12th Floor
Los Angeles, CA 90071

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP
:184487.1

EXHIBIT 2

PAGE 19

# Exhibit 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

April 15, 2009

**VIA FACSIMILE AND U.S. MAIL**

Amman A. Khan, Esq.                          Jean Pierre Nogues, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP    Mitchell Silberberg & Knupp LLP
10250 Constellation Boulevard, 19th Floor    11377 West Olympic Blvd.
Los Angeles, CA 90067                        Los Angeles, CA 90064

Re:  Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

I write pursuant to Paragraph 5 of the Discovery Master Stipulation to request a meet and confer regarding Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated April 3, 2009 ("Larian's Responses").

Larian's Responses provide only objections and no substantive responses to either interrogatory in Mattel's First Set of Phase 2 Interrogatories.  As discussed below, Larian's objections are without merit and do not justify his wholesale refusal to substantively answer these interrogatories.

**(1) Relevance.**  Larian's objection that these interrogatories seek irrelevant information is mistaken and contradicts the finding of the Discovery Master.  Interrogatory Nos. 1 and 2 ask Larian to identify each entity in which "Larian" or the "Larian Trust" has held any ownership interest since January 1, 2005.  These interrogatories thus seek information relevant to Larian's net worth, financial condition, and ability to pay, which the Discovery Master has held are relevant to the punitive damages that will be tried as part of Phase 2 of this case.  See Order No. 11, dated March 30, 2009, at 7 (Larian's net worth "relates to Phase 2 damages issues, including,

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 250, Chicago, Illinois 60606-4301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653 2000 FAX +44 (0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

EXHIBIT $\underline{3}$

PAGE $\underline{20}$

among other things, damages sought against Larian in connection with Mattel's unfair
competition cause of action as well as the calculation of Larian's net worth for purposes of
litigating the propriety of any 'exemplary damages under Cal. Civ. Code § 3294.'"). They also
seek relevant information because they will disclose Larian financial interests that are subject to
Mattel's constructive trust remedies. See id. at 9.

Furthermore, the information sought by these interrogatories is directly relevant to claims and
defenses in this case. See Order No. 3, Regarding Motion of Mattel, Inc. to Compel Production
of Documents Responsive to the Same Non-Party Subpoenas, dated March 10, 2009 at 29-30
(compelling IGWT Group LLC and IGWT 826 Investments LLC to produce documents relating
to any ownership interest by Larian, his spouse, his children, his siblings, or their spouses, or any
entity or person affiliated with them in IGWT Group or IGWT 826 and the dates of such person's
affiliation). In particular, in Order No. 3, the Discovery Master found that Larian's ownership of
entities that have transferred money from MGA is relevant to Phase 2 because it relates "to
'fraudulent,' 'unlawful,' or 'unfair' business practice within the meaning of the Unfair Competition
Law and the scope of Mattel's Counterclaims." Order No. 3 at 26-27. Mattel also recently
discovered that Larian has been transferring assets from MGA by using single-purpose
companies, such as IGWT, to purchase Bratz products from MGA for pennies on the dollar and
resell them. These actions are material to MGA's and Larian's financial condition, constitute
copyright infringement for which Mattel is entitled to discovery of revenue and other financial
information and represent anti-competitive conduct actionable under Mattel's unfair competition
claim. These interrogatories are properly tailored to discovery to ascertain Larian's interests in
IGWT and whether Larian has created additional companies such as IGWT to transfer assets
from MGA or mask his related party transactions with MGA. These interrogatories plainly seek
relevant information which Mattel is entitled to discover.

**(2) Privacy/Confidentiality.** Larian objects that these interrogatories seek private, confidential,
proprietary or otherwise sensitive information regarding Larian and third-party relatives and trust
beneficiaries of Larian. At the outset, consistent with settled law, the Discovery Master has ruled
that there is no purported right of "privacy" in this federal action. See Order No. 6, dated March
13, 2009, at 8.

The Protective Order in this action additionally alleviates any plausible concerns Larian or third-
parties may have regarding confidentiality.[1] Indeed, the former Discovery Master repeatedly so

---

[1]  See, e.g., Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007)
(finding that a protective order "can strike the appropriate balance between the need for the
information and the privacy concerns" of the party opposing production's employees); Keith H.
v. Long Beach Unified School District, 228 F.R.D. 652, 658 (C.D. Cal. 2005) (compelling
production of student records because of slight redactions and "a protective order to minimize
any invasion of the students' privacy rights"); In re Heritage Bond Litigation, 2004 WL 1970058
at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have in their bank records
and related financial statements are adequately protected by the protective order, and are not
(footnote continued)

EXHIBIT 3

PAGE 21

ruled. See Order dated May 15, 2007, at 11, n. 4. Although MGA objected to that ruling, the District Court approved the Discovery Master's order, finding that the entry of a protective order justified compelling production of even "sensitive documents" to MGA's "fierce competitor." See Order dated July 2, 2007, at 3. The current Discovery Master likewise has ruled that privacy and confidentiality objections are adequately addressed by the Protective Order. See Order No. 6, dated March 13, 2009, at 7-8. Larian's objections on these grounds cannot justify his withholding of relevant information.

**(3) Vague and Ambiguous**. These interrogatories are not vague and ambiguous, nor is it "impossible to ascertain what information is being requested" by these interrogatories. See Larian's Responses at 6-7. Larian has not explained why the term "IDENTIFY" is vague or ambiguous simply because it incorporates the term "ENTITY," "type of ownership interest," "percentage ownership interest," and title or position that YOU have had with each such ENTITY." These interrogatories ask Larian, in plain and unmistakable terms, to list each entity in which he or the Larian Trust has held an ownership interest, and for each entity to provide the nature or type of ownership interest, percentage ownership interest, and title or position that Larian or the Larian Trust had with each such entity, among other things. Nothing about these interrogatories is vague or ambiguous.

**(4) Overly Broad**. Larian provides no explanation, let alone with the required particularity, as to why these interrogatories are overly broad. This boilerplate objection is therefore improper. Order No. 17, dated April 14, 2009, at 20 (overruling objections not stated with specificity); see also Fed. R. Civ. P. 33(b)(4) (grounds for objecting to an interrogatory must be stated "with specificity"); Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize basis for objection). Nor, in any event, does the objection have merit. As explained above, the scope of the interrogatories is tied to key financial information in this case that Mattel is entitled to discover.

**(5) Unduly Burdensome**. Larian objects that the interrogatories are unduly burdensome because they "purport to require Larian to search for and provide such utterly irrelevant information as every stock market transaction over $1,000 in which he purchased stock in any publicly traded company." See Larian's Responses at 6-7. The ownership interests held by Larian or the Larian Trust are highly relevant to Larian's net worth and to other discoverable matters as discussed above. Any ostensible burden associated with providing such information is minimal compared to the value this information will be to Mattel in ascertaining Larian's net worth and Larian's questionable financial activities. Moreover, Larian has not demonstrated why responding to these interrogatories would present any burden. See Jackson v. Montgomery

---

sufficient to prevent production in this matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("[P]laintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order").

3

EXHIBIT 3

PAGE 22

Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery
request is unduly burdensome must allege specific facts which indicate the nature and extent of
the burden, usually by affidavit or other reliable evidence.") (cited in Order No. 11 at 19). It is,
in fact, implausible that someone of Larian's resources and professed business acumen does not,
himself or through professionals such as his accountants, maintain precise records reflecting his
ownership interests, which either can be used to answer the interrogatories or, in Larian so
choses, be produced and identified pursuant to Rule 33(d). Larian's burden objections are
unfounded.

(6) Compound. Larian's objection that these interrogatories are impermissibly compound
because the definition of IDENTIFY allegedly creates numerous subparts is without merit. Each
of these interrogatories refers to only one common theme -- the entities which Larian or the
Larian Trust have held ownership interest in, and thus, counts only as one interrogatory. See
Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D. Kan. 2004) ("[A]n interrogatory
containing subparts directed at eliciting details concerning a 'common theme' should generally be
considered a single question."); Pacific Lumber Co. v. National Union Fire Ins. Co. of
Pittsburgh, 2005 WL 318811, at * 7 (N.D. Cal. January 5, 2005) (interrogatory that asked the
"same question regarding a common group of people" was not compound) (citing Wright &
Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261). Indeed, based on this same reasoning,
both the current Discovery Master and the former Discovery Master have rejected MGA's and
Larian's objections on this ground as meritless. See Prior Discovery Master Order, dated
September 15, 2007, at 5-7; Order No. 11, dated March 30, 2009, at 21; No. 17, dated April 14,
2009, at 21-22.

Please let me know if and when Larian will withdraw each of these objections and provide full
complete responses to these interrogatories. If Larian does not intend to provide responses or if
he intends to limit his responses based on these or any of his general objections, please let me
know when you are available to meet and confer regarding these interrogatories within the
required time. If we cannot resolve the matter during meet and confer, Mattel intends to move to
compel.

I look forward to hearing from you.

Best regards,

Jon Corey
07975/2884540.2

4

EXHIBIT 3
PAGE 23

# Exhibit 4

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 29, 2009

**VIA FACSIMILE AND U.S. MAIL**

Richard Sheldon
Daniel M. Hayes
Mitchell Silberberg & Knupp, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683

Re:     Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

I write regarding our telephonic meet and confer conferences on April 21 and 23, 2009 regarding Isaac Larian's objections and refusal to provide any substantive response to either interrogatory in Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated April 3, 2009.

**Mattel's Interrogatories Seek Relevant Information.** As I explained during the meet and confers, Mattel's interrogatories seek relevant information consistent with the Discovery Master's recent orders. See, e.g., Order No. 11, dated March 30, 2009, at 7, 9; and Order No. 3 at 26-27, 29-30. Specifically, the interrogatories seek information relevant to Larian's net worth, financial condition and ability to pay.

Although you did not dispute that the interrogatories seek relevant information, you inquired why the information sought was relevant to net worth. As I stated during the meet and confer (directly quoting the Discovery Master's Order), this information is relevant to net worth because, it "relates to Phase 2 damages issues, including among other things, damages sought against Larian in connection with Mattel's unfair competition cause of action as well as the calculation of Larian's net worth for purposes of litigating the proprietary of any 'exemplary damages under Cal. Civ. Code § 3294.'" Order No. 11, dated March 30, 2009, at 7. In addition,

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT _4_

PAGE _24_

as I explained, the interrogatories seek information which is directly relevant to other claims and
defenses in this case, including without limitation, Mattel's constructive trust remedies and
copyright infringement claims. You did not dispute this.

You have claimed, however, that the interrogatories seek information which is "duplicative" and
which "Mattel had directly requested . . . in previous discovery." Mattel's interrogatories are not
duplicative. You do not identify anything indicating that Mattel previously sought this
information or that it was ever produced. If such information was ever produced before, please
identify it.

**The Scope of Mattel's Interrogatories**. During our meet and confer, you claimed to need
clarification of the scope of the interrogatories. Pursuant to your request, I went over the
information sought. Specifically, as the interrogatories make clear, the interrogatories call for
the following information as to each Entity (as defined in the interrogatories): (1) the Entity's full
name; (2) the Entity's taxpayer identification number or if the Entity is not registered in the
United States, other governmental identifying number of the Entity; (3) the Entity's date of
incorporation, organization, creation and/or registration; (4) the type of ownership interest that
Larian or the Larian Trust (as defined) holds or did hold; (5) the percentage of Larian or the
Larian Trust's ownership in each Entity; (6) the date(s) on which Larian or the Larian Trust held
such ownership interest; (7) each title or position Larian or the Larian Trust have had with each
such Entity, and the date(s) on which Larian or the Larian Trust held such title or position; (8)
the current address for each Entity; (9) the present or last known telephone number of each
Entity; and (10) the name and current address of each such Entity's agent(s) for service of
process or, if no such agent has been designated, then the name, current address and current
telephone number of each officer, director, managing agent and general agent of such Entity.
There is nothing ambiguous or unclear about the nature of the information sought, and the
information is necessary and appropriate to identify the relevant entities -- including for purposes
of locating additional witnesses and others with relevant information -- and Larian's stake in each
entity. As I also explained, my discussion was only meant to address your requests and did not
in any way limit the plain definitions provided in the interrogatories. Contrary to your
representations in your April 22 and 23, 2009 letters, you acknowledged that you understood
what the interrogatories called for. Nevertheless, you refuse to produce any of this information.

**The Definition Of "Larian Trust" Is Not Unintelligible**. You claimed that the definition of
"LARIAN TRUST" provided in the interrogatories was unintelligible and repeatedly requested
that I explain to you what information was sought in "plain English." Although I clarified this
definition for you numerous times (and in "plain English"), you professed not to understand what
the definition meant. This was so even after I explained that the information sought was
consistent with the scope of information which the Discovery Master has compelled regarding
the IGWT subpoenas. The Discovery Master ordered that this type of information is relevant
and therefore should be produced. See Order No. 3 at 29-30 Re Requests 3-5 ("The motion is
granted with respect to documents relating to any sources of funding by Larian, his spouse, his
children, his siblings, or their spouses, *or any entity or person affiliated with them*.") (emphasis
added). ·

2

EXHIBIT $\frac{4}{}$

PAGE $\alpha\mathcal{S}$

**Information Regarding "Single-Purpose Companies" Is In Larian's Possession, Not
Mattel's.** You requested that I identify the "single-purpose companies" other than IGWT
referenced in Jon Corey's April 15, 2009 letter. Not only is this issue irrelevant to the
interrogatories (which are plain on their face as to what information is being sought), but Mattel
naturally does not have complete information regarding this topic because to date Larian has
refused to disclose it. That said, as you are undoubtedly aware, the single-purpose Larian entities
that Mattel is aware of include IGWT, although the true scope of this information is in your
possession and is part of what these interrogatories seek to obtain.

**Larian's Suggested Limitations Are Improper.** Your insistence that the interrogatories be
limited by (1) narrowing the definition of "Larian Trust," (2) limiting the temporal scope of the
interrogatories to a "date certain," and (3) raising the "more than $1000" threshold, is not
appropriate and would prevent Mattel from obtaining relevant information. First, as explained
above, "Larian Trust" as currently defined is consistent with information the Discovery Master
has compelled as relevant. Second, the interrogatories are already limited in time. Engrafting
an additional limitation on the interrogatories to transactions as of "a date certain" proposed by
MGA would exclude earlier transactions and earlier ownership interests that are relevant to
MGA's net worth. Finally, the $1000 threshold is also necessary to capture relevant information
about net worth. For example, Larian has admitted that he owns shares of Zapf (which is a
publicly traded company) through his trusts. Larian Depo. (Vol. 2) at 506:16-22. If Larian or
any Larian Trust obtained shares of Zapf through increments of $1000 dollar shares, then Mattel
is entitled to know about that. Similarly, if Larian or any Larian Trust owns $1000 dollars of
every publicly traded stock, then that is also relevant information about net worth, which Mattel
is entitled to know about.

Notably, when I inquired what "date certain" you were proposing, you did not provide any such
counter-proposal, nor did you provide an alternative threshold amount for each stock transaction.
In fact, when I inquired what, if any, information Larian was willing to provide, you indicated
that Larian is not willing to withdraw any of its objections or to provide any substantive
responses to Mattel's interrogatories. Thus, despite your assertions otherwise, it is MGA that has
not met and conferred in good faith.

Since Larian does not intend to provide responses as you indicated during our meet and confers,
Mattel has no alternative but to move to compel.

Best regards,

Tamar Buchakjian

3

EXHIBIT __4__
PAGE __26__

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**CHICAGO**
250 South Wacker Drive, Suite 230
Chicago, IL 60606
(312) 463-2961
Facsimile: (312) 463-2962

**LONDON**
16 Old Bailey
London EC4M 7EG United Kingdom
+44(0) 20 7653 2000
Facsimile: +44(0) 20 7653 2100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052 Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**   April 29, 2009          **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Richard Sheldon<br>Mitchell Silberberg & Krupp, LLP | 310-312-2000 | 310-312-3100 |

**FROM:**   Tamar Buchakjian
(213) 443-3639
tamarbuchakjian@quinnemanuel.com

**RE:**   Mattel, Inc. v. MGA Entertainment, Inc., et al.

**MESSAGE:**


FAXED
APR 2 9 2009

| CLIENT # | 07975 | ROUTE/<br>RETURN TO: | Tiffany G.<br>~Shanda Conners~ | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | PRISCILLA | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**   **EXHIBIT 4**

**PAGE 27**

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

TX/RX NO                2540
RECIPIENT ADDRESS       76706#7975#13103123100
DESTINATION ID
ST. TIME                04/29 13:55
TIME USE                01'32
PAGES SENT              4
RESULT                  OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**CHICAGO**
250 South Wacker Drive, Suite 230
Chicago, IL 60606
(312) 463-2961
Facsimile: (312) 463-2962

**LONDON**
16 Old Bailey
London EC4M 7EG United Kingdom
+44(0) 20 7653 2000
Facsimile: +44(0) 20 7653 2100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052 Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

DATE:   April 29, 2009                    NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Richard Sheldon Mitchell Silberberg & Krupp, LLP | 310-312-2000 | 310-312-3100 |

FROM:   Tamar Buchakjian
        (213) 443-3639
        tamarbuchakjian@quinnemanuel.com

RE:     Mattel, Inc. v. MGA Entertainment, Inc., et al.

MESSAGE:

EXHIBIT 4
PAGE 28

# Exhibit 5

CALENDARED O IVE

APR 2 3 2009

# MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS☒K**

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 22, 2009

**VIA E-MAIL AND U.S. MAIL**

Tamar Buchakjian
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

Re:     **Bryant v. Mattel, Inc. (Phase 2) - First Set of Interrogatories to Isaac Larian**

Dear Ms. Buchakjian,

I write to confirm our telephone conversation yesterday afternoon regarding Mattel, Inc.'s first set of interrogatories to Isaac Larian. I asked that you state in clear terms what specific information Mattel was seeking in Interrogatory No. 1 and No. 2. I noted that the letter from your colleague, Jon Corey, stated that the interrogatories ask Mr. Larian "in plain and unmistakable terms, to list each entity in which he or the Larian Trust has held an ownership interest, and for each entity to provide the nature or type of ownership interest, percentage ownership interest, and title or position that Larian or the Larian Trust had with each such entity, *among other things*." I noted that, while the list provided by Mr. Corey in his letter was clearer in terms of what Mattel was seeking, the "among other things" seemed to preserve the other amorphous categories of information in the interrogatories, and the definitions therein, which we objected to as vague, ambiguous, and unintelligible. When I asked you for a statement in clear, plain terms of what was requested in each interrogatory, so that we could at least agree on what information Mattel was seeking, you simply repeated the vague definitions verbatim. When I asked you to clarify Mattel's extremely confusing definition of "Larian Trust," you stated that you couldn't clarify it beyond what was in the definition.

I also asked you to explain why you thought the extremely broad scope of information sought in Interrogatory Nos. 1 and 2 was relevant to any issue in Phase 2 of this case. You replied that the interrogatories sought information relevant to determining Mr. Larian's net worth. I stated that I believed Mattel had already directly requested that information in previous discovery. I also posed a hypothetical to try and clarify whether the scope of the interrogatories is as broad as it appears. I asked whether you thought that a 2005 transaction in which Mr. Larian bought $2000 worth of publicly traded stock and sold it a week later needed to be identified in response to Interrogatory No. 1. You said yes. As I stated on our call, even if we were to assume that Mattel is entitled to take duplicative discovery regarding Mr. Larian's net worth (which it is not, because given the information being requested it is unduly burdensome) such a transaction is

**EXHIBIT** 5

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

**PAGE** 29

## MITCHELL SILBERBERG & KNUPP LLP

Tamar Buchakjian
April 22, 2009
Page 2

clearly not probative of Mr. Larian's net worth. It appears the only purpose for the vast overbreadth of the interrogatories, which you confirmed yesterday in our call, is harassment.

We ended the call by each agreeing to consider certain limitations to the interrogatories to make them more palatable, with the express understanding that neither of our clients had considered the proposed limitations, or authorized us to make any commitments to limit the scope or substantively respond. Specifically, we agreed to consider limiting the definition of "Larian Trust," the temporal scope of both interrogatories, and raising the "more than $1000" threshold in each interrogatory.

We agreed to speak further on Thursday, April 24. In an effort to facilitate that further meet and confer conference, I renew my request for a clear statement of (1) exactly what information the interrogatories seek, without an "among other things" qualification; and (2) a plain English definition of "Larian Trust." If you could provide these in writing before our call, I think it will at least move the ball forward in that we will each understand at least what information is at issue.

Also, I never received any response to my request that you identify the "single-purpose companies" that Mr. Corey referred to in his April 15 letter. Please provide that information before tomorrow's call if you continue to assert alleged asset-transfers as a basis for Mattel's interrogatories.

Please provide me with the aforementioned information as soon as possible.

I look forward to speaking with you tomorrow.

If you feel this letter does not accurately reflect our conversation, please let me know.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb
cc:     Richard Sheldon

**EXHIBIT** 5

**PAGE** 30

# Exhibit 6

# MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS&K**

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

APR 2 7 2009

April 23, 2009

**VIA E-MAIL AND U.S. MAIL**

Tamar Buchakjian
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

**Re:** **Bryant v. Mattel, Inc. (Phase 2) - First Set of Interrogatories to Isaac Larian**

Dear Ms. Buchakjian,

I write to confirm our telephone conversation this afternoon regarding Mattel, Inc.'s first set of interrogatories to Isaac Larian. As you know, this was our second call.

I asked you whether you had received my letter confirming our call on April 21. You said that you had. I asked whether you would provide the information requested in my letter, specifically, (1) a clear, plain English statement of what information is covered by the interrogatories and an intelligible definition of "Larian Trust," and (2) the identity of the so-called "single purpose companies" referenced by Jon Corey in his April 15, 2009 letter. You stated that you could not identify any "single purpose companies" other than IGWT. You did not agree to provide us with a clear statement of what information the interrogatories sought and an intelligible definition of "Larian Trust." You only stated that you would respond to my April 22 letter. You did not provide any clarification of either interrogatory beyond simply reading the text of the interrogatories as they are written.

As I stated over and over again in our call, the definition of "Larian Trust" is unintelligible to us. In an effort to try to demonstrate to you how confusing the definition is, I asked you to explain who would be a person subject to the control of any trust of which one of Mr. Larian's relatives by blood or marriage was a "vendor." You could not and did not give me an answer.

You stated that your client is not willing to narrow the scope of the interrogatories.

As I tried to explain on our call, you have not satisfied your burden to meet and confer in good faith. Richard Sheldon and I have repeatedly attempted to engage you in discussions as to how we can reasonably narrow these grossly overbroad interrogatories, but you have refused to narrow them in any way, shape or form. You have even refused to clarify them.

**EXHIBIT** 6

**PAGE** 31

# MITCHELL SILBERBERG & KNUPP LLP

Tamar Buchakjian
April 23, 2009
Page 2

I once again renew my invitation to you to (1) clarify the interrogatories as I requested in my April 22 letter to you, and (2) engage in meaningful, good faith efforts to narrow your client's interrogatories.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb
cc:     Richard Sheldon

EXHIBIT 6

PAGE 32

# Exhibit 7

## MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS&K**

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

May 1, 2009

VIA E-MAIL AND U.S. MAIL

Tamar Buchakjian
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

### Re:    Bryant v. Mattel, Inc. (Phase 2) - First Set of Interrogatories to Isaac Larian

Dear Ms. Buchakjian,

I write to correct misstatements and address a few points in your April 29, 2009 letter to Richard
Sheldon regarding our telephonic meet and confer conversations on April 21 and 23.

First, we dispute your contention that the interrogatories seek relevant information, and did not
take a contrary position on either call. *You* stated that Mr. Larian's net worth was relevant. We
explained that even if that were the case (which it is not) the interrogatories are not limited to
information that is probative of Mr. Larian's net worth. As you may recall, I asked you whether
you thought that a 2005 transaction in which Mr. Larian bought $2000 worth of publicly traded
stock and sold it a week later needed be identified. You said yes. I asked you to explain how a
transaction like that was probative of Mr. Larian's net worth. We never received a coherent
response, beyond "it is." You also state that we "do not dispute" that the interrogatories seek
information that is "directly relevant to other claims and defenses in this case, including without
limitation, Mattel's constructive trust remedies and copyright infringement claims." This is
false. We certainly *do* dispute that the interrogatories seek information that is relevant to those
claims.

Second, we did not acknowledge that we understand what the interrogatories call for. I have
asked you multiple times now, in writing and on our calls, for an understandable definition of
"Larian Trust." You have not provided one. Moreover, while you have focused on the defined
term "IDENTIFY," you have not addressed our objections on vagueness grounds to the defined
term "OWNERSHIP INTEREST," which, by its terms, includes, "without limitation any right,
title, interest or power that a PERSON possesses *or may possess, directly or indirectly*, from any
contract, arrangement, understanding, relationship, *or otherwise*..."

Third, you never clarified the definition of "Larian Trust," other than to read it verbatim, and
even then you avoided the extremely confusing last half. By any standard, "Larian Trust" is

**EXHIBIT** 7

**PAGE** 33

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

MITCHELL SILBERBERG & KNUPP LLP

Tamar Buchakjian
May 1, 2009
Page 2

unintelligible as defined. We have suggested ways you might limit the definition. You have
refused.

Fourth, with respect to the other "single-purpose entities" that Jon Corey referenced in his April
15 letter, Mr. Corey used that reference in an attempt to justify the interrogatories. As I have
stated, if Mattel is aware of other "single-purpose entities," we should discuss them. If Mattel is
not aware of other "single-purpose entities," Mr. Corey's implication that it was appears to have
been a device to broaden the scope of the interrogatories.

Fifth, the limitations we suggested are not unreasonable, and you still have not explained how a
$2000 2005 transaction, which you insist is covered by the interrogatories, sheds any light at all
on Mr. Larian's net worth today.

Finally, we did not refuse to withdraw any objections, as you claim. In fact, we are willing to
withdraw the privacy objection, provided that Mattel and you agree to treat any information
provided as designated by Mr. Larian pursuant to the protective order in place in this case.

If you intend to continue to insist that Mr. Larian is required to provide all of the information
covered by the interrogatories in their current form, we will not reach any agreement. We are,
however, willing to respond substantively to interrogatories that are appropriately limited in
terms of scope and subject matter. If you are prepared to seriously discuss limiting the
interrogatories, please let us know.

Re

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb
cc:    Richard Sheldon

EXHIBIT 7
PAGE 34

# Exhibit 8

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

**Exhibit 9**

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:  213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  CARTER BRYANT, an individual,       Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,
                                         **Consolidated with**
14       v.                              **Case No. CV 04-09059**
                                         **Case No. CV 05-2727**
15  MATTEL, INC., a Delaware
    corporation,                         **PHASE II DISCOVERY MATTER**
16
            Defendant.                   **ORDER NO. 3, REGARDING:**
17
                                         **(1)  MOTION OF MGA**
18                                       **ENTERTAINMENT, INC.,**
                                         **ISAAC LARIAN AND MGA**
19                                       **ENTERTAINMENT (HK)**
                                         **LIMITED TO QUASH**
20                                       **NON-PARTY SUBPOENAS; and**

21                                       **(2)  MOTION OF MATTEL, INC.**
                                         **TO COMPEL PRODUCTION OF**
22                                       **DOCUMENTS RESPONSIVE TO**
                                         **THE SAME NON-PARTY**
23                                       **SUBPOENAS**

24
    CONSOLIDATED WITH
25  MATTEL, INC. v. BRYANT and
    MGZ ENTERTAINMENT, INC. v.
26  MATTEL, INC.

27

28
                                                              ORDER NO. 3
ARENT FOX LLP              1              [Case No. CV 04-09049 SGL (RNBx)]
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 9

PAGE 67

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009. All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions. The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.    INTRODUCTION**

13

14   **A.    The Court's February 11, 2009 Ruling**

15   On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties. During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21   In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28   stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _1_

PAGE _68_

1

2       Then the question becomes – and this is a question for the
Discovery Master, not for this Court – whether or not the

3       discovery is related to Phase 2. If it is, it is. I'm not going to

4       pass any judgment whatsoever. I'm going to leave that
completely up to the Discovery Master. ... The question for the

5       [D]iscovery [M]aster will be whether or not the disputed

6       discovery request is related or relevant to the trial that has now
been scheduled for March [2010] or not.

7
(Tr., 101:18 – 22; 103:1 – 3).

8
      The Discovery Master understands the Court's ruling as indicating that, in

9
deciding the motions relating to the Subpoenas, the Discovery Master should

10
consider whether there is a nexus between the information sought by the

11
Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

12
in March 2010, on the other hand. If the information sought by the Subpoenas is, to

13
use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

14
trial," then that information could potentially be the subject of appropriate

15
discovery requests by Mattel.[1]

16
    **B.**   **Information Sought By The Subpoenas**

17
      The information sought by Mattel's Subpoenas falls into two broad

18
categories. First, Mattel seeks documents from third parties Omni 808 Investors,

19
LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

20
Entities") involving, among other things, their internal ownership and operations

21
and their role in providing financing to MGA during the summer of 2008 (the

22

23 [1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's

24 inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2

25 claims, (*Id.*, pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2. (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances

26 in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery

27 Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,

28 Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 69

1   "Financing Discovery"). Based on the information presented at the February 11,

2   2009 hearing and in connection with the pending motions, it does not appear that

3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4   an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5       Second, Mattel seeks documents from third parties IGWT Group, LLC and

6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8   "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9   owned and/or controlled by Larian. (*See, e.g.,* MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13   **II.   MGA's Motion To Quash**

14       Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17       **A.   Legal Standard**

18       As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23

---

24   [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26   legitimate Phase 2 issue, seek to obtain this information from MGA.

    [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including

27   that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28   of his sister.

EXHIBIT 9

PAGE 70

1  with the subpoena would be unreasonable and oppressive" (internal quotations

2  omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3  burden of proving that a subpoena is oppressive is on the party moving to quash];

4  *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5  burden is on the movant to establish that a subpoena duces tecum should be

6  quashed]). "The burden is particularly heavy to support a 'motion to quash as

7  contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8  of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9  supported by two affidavits]).

10    **B.    Arguments Made By MGA In Support Of Its Motion To Quash**

11    The sole argument set forth in MGA's Motion to Quash is that the Court's

12  January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13  information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14  But that argument fails for the reasons set forth above. The Court made it clear at

15  the hearing on February 11, 2009 that:

16       There is no stay on discovery. Period. . . . . [The forensic auditor
17       appointed by the Court] is acting at the Court's discretion to
         inform the Court of information. . . . That's an entirely separate
18       matter. And I have not stayed any discovery and there should be
19       no reliance on that. If that was misunderstood, it's clarified now.

20  (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21    Recognizing that its only argument has been rejected by the Court, MGA

22  argues for the first time in its Reply that its Motion to Quash should be granted

23  because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24  MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25  However, MGA did not make this argument in its opening brief. It instead declared

26  in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27  is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28  subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9
PAGE 71

1    consider the argument in connection with the Motion to Quash.

2    The Discovery Master, like the Court,[4] disfavors the insertion of new

3    arguments at the reply stage that could have been raised in the moving papers. A

4    party filing a motion is required to raise all of its arguments in its opening brief to

5    prevent "sandbagging" of the non-moving party and to provide opposing counsel

6    the chance to respond. This rule is routinely adhered to by courts in the Ninth

7    Circuit. (*See, e.g., United States v. Boyce,* 148 F.Supp .2d 1069, 1085

8    (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.,* 2007 WL 1847635 at *1,

9    n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox,* 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13   Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17   below).

18   Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.,* 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
     not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
25   change [its] ultimate conclusion."

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is
     conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to
27   Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA
     Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas
28   . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to
     Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -                    ORDER NO. 3
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 72

1    **III.    Mattel's Motions To Compel**

2          **A.    The Purported Procedural Defects Barring Mattel's Motions To**

3                **Compel**

4          MGA, the Financing Entities, and the Transferee Entities all argue that that

5    Mattel's Motion to Compel should be denied on several different procedural

6    grounds.

7                **1.    The Court's January 7, 2009 Order**

8          As an initial matter, the Transferee Entities and the Financing Entities repeat

9    the argument made by MGA in its Motion to Quash that the Court's January 7,

10   2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11   sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to

12   Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13   pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's

14   Motion to Quash and is rejected for the reasons discussed in Section II above.

15               **2.    Local Rule 37**

16         The Financing Entities and the Transferee Entities also argue that Mattel's

17   Motion to Compel should be denied because Mattel failed to comply with Local

18   Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19   stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20   and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21   [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished

22   from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23   discovery disputes in this case. Rather, the applicable procedure is the one adopted

24   by the Court in its order appointing a discovery master dated December 6, 2006

25   ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

26

27   _____

     [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a

28   discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery
     Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                                    ORDER NO. 3
                                              - 7 -        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 73

1  "all third parties subject to discovery requests . . . in this litigation shall be bound

2  by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3  order applies to the Financing Entities as well as the Transferee Entities, and its

4  procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

### 3.     Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7  The Financing Entities and MGA further argue that Mattel's Motion to

8  Compel should be denied because it exceeds the page limitations set forth in Local

9  Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11  Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13  governs discovery disputes in this case, and it does not impose any page limit on

14  such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16  even permits the parties to agree to alternative procedures, including, presumably,

17  filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18  4). Thus, while the Discovery Master encourages the parties to be as efficient as

19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20  directly permitted under the Discovery Master Order (since no page limitation was

21  imposed by the Court) or implicitly allowed (since the parties may agree to

22  alternate procedures). He further recognizes that the complex nature of this case

23  may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 74

1   these reasons, filings in excess of 25 pages are permitted.[9]

2         **4.    Local Rule 6-1**

3         The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4).  Therefore, Local Rule 6-1 has no

9   applicability here.

10         **5.    Failure To Name MGA In The Motion To Compel**

11         MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.  (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21         **6.    Mattel's Separate Statement**

22         MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   ────────────────────────────

[9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific
28   page limitation.

EXHIBIT __9__

PAGE __75__

1  sets forth the various contentions of the parties, even if the information regarding

2  the various requests happens to be repetitive. Regardless, MGA has not cited any

3  legal authority in support of its position and the Discovery Master finds no reason

4  to dispose of Mattel's Motion to Compel merely because it filed a separate

5  statement that contains duplicative arguments.[10]

6              **7.     Meeting And Conferring**

7        As their final procedural argument in opposition to the Motion to Compel,

8  the Transferee Entities and the Financing Entities assert that the motion should be

9  denied because Mattel failed to adequately meet and confer prior to filing the

10  motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12              **a.     Applicable Procedure**

13        Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order. Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

19        moving party shall first identify each dispute, state the relief
20  sought, and identify the authority supporting the requested relief
   in a meet and confer letter that shall be served on all parties by
21  facsimile or electronic mail. The parties shall have five court
   days from the date of service of that letter to conduct an in-person
22  conference to attempt to resolve the dispute. If the dispute has
   not been resolved within five court days after such service, the
23  moving party may seek relief from the Discovery Master by
   formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27  ────────────────────────────────
   [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28  separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -                    ORDER NO. 3
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___9___

PAGE ___76___

              **b.**     **Mattel's Meet And Confer Regarding The Financing**
                             **Entities**

In challenging Mattel's meet and confer effort, the Financing Entities first claim that Mattel violated the Discovery Master Order because no "in-person meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel, p. 8). But that argument is without merit, since Mattel and the Financing Entities agreed to an alternative procedure that disposed of the in-person meet and confer requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the Transferee Entities and counsel for the *Financing Entities* a letter on January 23, 2009 memorializing the parties' agreement and establishing a schedule whereby the parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10; Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing Entities' counsel received this letter and acted in accordance with its terms is evidenced by, among other things, the fact that they served objections to the Subpoenas on January 28, 2009 (which was the deadline specified in the January 23 letter) and started meeting and conferring with Mattel's counsel telephonically on January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing Entities in person since the parties had agreed to waive that obligation.

Nevertheless, Mattel still had an obligation to meet and confer with the Financing Entities in good faith. Good faith cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

EXHIBIT _9_

PAGE _77_

1   Proc. 37(a)(1)).

2        Because the evidence and declarations submitted by Mattel and the Financing

3   Entities are in conflict regarding what transpired during their respective meet and

4   confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7   doubt and concludes that it adequately met and conferred with respect to Omni 808

8   Investors, LLC and Vision Capital, LLC.

9        By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14   "good faith" meeting could therefore have taken place.

15        Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23                    c.      **Mattel's Efforts To Meet And Confer Regarding The**

24                            **Transferee Entities**

25        Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   ────────────────────────
     [12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a
     good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                              - 12 -                    ORDER NO. 3
                                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _78_

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences.  (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process.  (*Id.*). In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8        **B.      Legal Standard Governing Enforcement Of The Subpoenas**

9        Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . .. The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18        The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden. Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   9
PAGE   79

1    Moreover, the Federal Rules distinguish between discovery from non-parties

2  to a lawsuit (governed under Rule 45) and discovery from parties (governed

3  generally by Rule 26), based in part on the recognition that the former is inherently

4  more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5  *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6  significant when determining whether compliance with a discovery demand would

7  constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8  F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9  is one factor that the Court may weigh in determining whether the discovery

10  requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11  have interpreted these rules to afford non-parties special heightened protection

12  against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14    Accordingly, requests for documents that pertain to a party and that can be

15  more easily and inexpensively obtained from that party also impose an undue

16  burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17  Further, if the documents sought are neither relevant nor calculated to lead to the

18  discovery of admissible evidence, "then any burden whatsoever imposed upon the

19  non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20  *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21    Each of the moving parties bears the burden of establishing the basis for the

22  relief it seeks. As the party moving to compel compliance with the Subpoenas,

23  Mattel bears the burden of "establishing that the information sought is relevant and

24  necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25  *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26    Finally, in deciding whether to enforce a subpoena, the Discovery Master

27  must balance "the relevance of the discovery sought, the requesting party's need,

28  and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 80

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3       **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4       As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10  finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone*."] (emphasis added)).

12      However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2. As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19      Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected. Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23      Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties*. Mattel does not cite any statements or conduct by the

28  //

EXHIBIT _9_

PAGE _81_

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

5        **D.**    **Mattel's Contention That The Subject Discovery Is Relevant To**

6            **Phase 2**

7            **1.**    **Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10           **a.**    **Mattel's RICO Counterclaim**

11   Mattel first asserts in its Motion to Compel that the discovery it seeks is

12   relevant to its RICO counterclaim because "Mattel alleges that the counter-

13   defendants have operated a widespread criminal enterprise that has engaged in

14   numerous acts of mail and wire fraud and other predicate acts in violation of the

15   RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16   non-operating entities" is "a continuation of that pattern of racketeering activity."

17   (Motion, p. 18).

18

---

19   [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20   Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has
21   been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
parties.

22   [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23   Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
(2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
24   Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is
based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*
25   Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As
26   for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to
27   when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines
to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to
28   strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -
    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 82

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]  Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17   At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
     improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
     enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
     because they are "designed to and did unlawfully acquire the confidential business information and property of
27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
     business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
     Mattel of its confidential trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
     defendants "schemed to defraud Mattel and steal its property and trade secret information"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  9

PAGE  83

1    transactions Mattel seeks to investigate here.[16]

2        Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10       In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16                      **b.    Mattel's Disgorgement Remedy**

17       Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   ───────────────

[16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
23   (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
     among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
24   Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
     engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
25   this motion, money laundering."  (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
     various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
26   depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
     nature, source and location – that is, by transferring funds between defendants and between various accounts
27   maintained by those defendants."  (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
     appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
28   not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
     with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                                              ORDER NO. 3
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  9
PAGE  84

1
2
3
4
5
6

> For purposes of establishing disgorgement, Mattel must take into
> account money transferred from MGA and Isaac Larian,
> regardless of the manner in which it was transferred. Mattel is
> entitled to discovery that shows all assets siphoned from MGA or
> Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
> prove the amount the defendants must disgorge. Money that
> properly belonged to Mattel was transferred from MGA or Isaac
> Larian to an entity controlled by them.

7   (Motion, pp. 20:1 – 4, 21:12 – 14).

8         While the foregoing statements may be true as a general proposition, none of

9   the Financing Entities is alleged to have "received money that properly belonged to

10  Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of

11  MGA. Therefore, Mattel has not demonstrated how any of the categories of

12  documents sought from the Financing Entities would aid it in ascertaining the

13  amount defendants must disgorge.

14                          c.       **Phase 2 Damages**

15        Mattel's third argument in favor of enforcement of the Subpoenas is that they

16  "seek documents relevant to MGA's financial condition" and other "factors

17  relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).

18  Depending on the particular scope of the document request, such discovery from

19  Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because

20  any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from

21  the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to

22  MGA's net worth (and hence punitive damages).[17] As the Court noted in its

23  February 11, 2009 ruling:

24        I can see tremendous overlap between, for example, discovery on

25  _____

26  [17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC
    because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9
27  and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus
    presumably not the actual debt purchaser/lender. Rather, the company holding the security interest is Omni 808
28  [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because
    it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show
    that the information sought from those entities has any bearing on MGA's financial condition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9
PAGE 85

1    financial condition of the company as it relates to damages in the
     Phase 2 and also issues that the receiver is looking at. And
2    without making a ruling on any of this, I would not suggest for a
     moment that these are mutually exclusive categories.

3    (Tr., 101:3 - 8)

4        Mattel argues that the necessary connection between the Financing

5    Discovery and Phase 2 damages exists because the Financing Entities have acquired

6    a security interest in MGA's assets, which, in turn, affects MGA's financial

7    condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

8        directly involved in providing funding to MGA in exchange for a
9        security interest. Such funding, and security interests, are in and
         of themselves directly relevant to the financial condition of the
10       MGA Parties, including the amount of the security interests, the
         terms and conditions of the funding, and the rate of funding. . . .
11

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   _____
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase 1 trial. (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

ARENT FOX LLP    [19] Nor did Mattel move to compel MGA to produce this information in the first instance.
ATTORNEYS AT LAW
LOS ANGELES
                                                  - 20 -                    ORDER NO. 3
                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9

PAGE 86

1    would require the Financing Entities to produce virtually every document in their

2    possession regarding their formation, operations, and history of transactions.

3    Among other things, the Subpoenas to the Financing Entities seek:

4       •    All records that "substantiate transfers of assets" by the Financing

5            Entities "to other entities, individuals, and/or parties, within the U.S.

6            and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7            of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8            Motion To Compel Production of Documents Responsive to Third-

9            Party Subpoenas, Attachment A, ¶ 16);

10      •    All documents "detailing or setting forth the relationship" between

11           each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12      •    All documents referring or relating to the "all contributions, loans and

13           any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14      •    All documents referring or relating to the "source of funding" of other

15           non-parties (*Id.* at ¶ 16);

16      •    All documents showing detail of "all loan facilities" referring or

17           relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18      •    All documents referring or relating to "transactions involving any

19           compensation, loans, advances, payments, fees or any other form of

20           consideration" paid to other non-parties (*Id.* at ¶ 15);

21      •    All "communications" referring or relating to the Financing Entities

22           and other non-parties (*Id.* at ¶ 17).

23       Accordingly, the Discovery Master concludes that most of the categories of

24    documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25    the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26    Section IV below (entitled "Disposition").

27    //

28

EXHIBIT 9

PAGE 87

### d.     Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -                     ORDER NO. 3
                     [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _88_

1    linking those categories of documents to prior or anticipated testimony of MGA's

2    witnesses. Simply stating that credibility evidence is discoverable does nothing

3    toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4    here is reasonably calculated to lead to the discovery of such evidence.

5                              e.    **MGA's Unclean Hands**

6            Mattel next argues in its Motion to Compel that MGA has asserted an

7    unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8    Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9    sham and fraudulent financial transactions such as concealing profits" to preclude

10   MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11   24.) But this argument does not apply to the Financing Entities because, as

12   discussed above, Mattel does not claim that the Financing Entities have "received

13   money that properly belonged to Mattel" or otherwise used those entities to conceal

14   profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15   MGA.

16           Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17   may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18   asserting an equitable defense, however, must itself have 'clean hands.'"]).

19   Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20   has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21   unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22   *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23   [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24   transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25   *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26   allow discovery based on an unclean hands defense where the "allegations of

27   misconduct do not relate to the transactions... forming the basis for the

28   []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -
                                              ORDER NO. 3
                                       [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _89_

1   1996)).

2         Here, Mattel does not link any of the categories of documents referenced in

3   the Subpoenas (which involve the creation and operation of the Financing Entities

4   beginning with their formation in the summer of 2008) to any of the conduct at

5   issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6   Mexico in 2004 and other conduct unrelated to the relationship between the

7   Financing Entities and MGA).  Accordingly, the Financing Discovery is not

8   reasonably calculated to lead to the discovery of admissible evidence regarding

9   MGA's alleged unclean hands in connection with the matters to be adjudicated in

10  Phase 2.

11                f.      **Mattel's Unfair Competition Counterclaim**

12        As Mattel acknowledges, California's Unfair Competition Law, Business &

13  Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14  "'anti–competitive business practices as well as injuries to consumers, and has as a

15  major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16  25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone

17  Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18  demonstrate that the documents sought from the Financing Entities involve "anti-

19  competitive business practices," "injuries to consumers," or anything affecting

20  consumers or the public at all.  Instead, Mattel simply asserts, without any

21  supporting analysis, that MGA has violated the Unfair Competition Law by

22  "manipulating the sources of [its own] funding" (presumably the Financing

23  Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24  unfair or fraudulent" marketing or sale of anything and therefore does not fall

25  within the ambit of the Unfair Competition Law.

26  //

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -                                    ORDER NO. 3
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __9__

PAGE __90__

1
2
3

       g.    **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

4     For the foregoing reasons, the Discovery Master finds that, based on the

5 record before him, Mattel has failed to sufficiently articulate the necessary

6 connection between most of the Financing Discovery and any Phase 2 issue.

7 Moreover, while there is a connection between the Financing Discovery and some

8 of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9 Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10 Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11 discovery is permissible in light of the case law interpreting Rules 26 and 45.

12     Accordingly, Mattel's motion to compel the Financing Entities to comply

13 with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14         **2.**    **Subpoenas To The Transferee Entities**

15     In their briefs regarding the enforceability of the Subpoenas, Mattel and

16 MGA do not, as a general rule, make a distinction between the Financing Entities

17 and the Transferee Entities, but rather direct the same arguments to both groups

18 collectively. However, there are important distinctions between the two groups,

19 including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20 with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21 sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22 pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23 documents relevant to Phase 2 issues which presumably cannot be obtained from

24 MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25 parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas

26 directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27 parties' above-referenced arguments differs, as follows.

28 //

EXHIBIT 9

PAGE 91

1              a.      **Non-Party Considerations**

2          To begin with, the distinction between a party and non-party here is less

3    compelling given the MGA parties' apparent admission that the Transferee Entities

4    are single purpose entities created and controlled by Larian (who is, of course,

5    himself a party) to dispose of inventory that is the subject of this litigation. Further,

6    the MGA parties presumably do not have custody of the sales contracts whereby

7    IGWT Group LLC sold Bratz products to third parties. The Discovery Master also

8    notes that counsel for the Transferee Entities has submitted a declaration stating

9    that there are "hundreds of sales contracts at issue, and as such, thousands of

10   documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated

11   February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant

12   documents from any other source weighs heavily in favor of enforcing the

13   Subpoena to IGWT Group LLC.

14              b.      **Relevance To Phase 2 Issues**

15                   1.      **Phase 2 Damages**

16         As mentioned above, Mattel argues that the Subpoenas "seek documents

17   relevant to MGA and Larian's financial condition, net worth, and ability to pay" on

18   the ground that such information is relevant to Mattel's Phase 2 damages claims,

19   including Mattel's claim for punitive damages.

20   For the reasons previously discussed, the Discovery Master finds that, with respect

21   to the Financing Entities, the discovery requests were, for the most part overbroad,

22   and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's

23   analysis is necessarily different with respect to entities which were created and

24   apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and

25   which are admittedly selling inventory which generate revenues in which Mattel

26   has an interest. Specifically, Mattel contends that Larian has caused MGA to sell

27   the inventory at a deep (80%) discount to the Transferee Entities. This practice, if

28   true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                            - 26 -                ORDER NO. 3
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _92_

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.    Mattel's Unfair Competition Counterclaim**

7          Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22         Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

---

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the
27   Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
28   spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering
     the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -                    ORDER NO. 3
                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _93_

1   enough to potentially encompass subsequent acts of unfair competition which
2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's
3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does
4   not purport to rest on a list of enumerated, factually detailed and carefully defined
5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts
6   of unfair competition" which include, "without limitation" certain illustrative
7   examples. (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will
9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic
10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel
11  will seek (and the Court permit) amendment of the counterclaim to expressly
12  reference such alleged misconduct.  Nevertheless, in light of the fact that the
13  discovery need only appear reasonably calculated to lead to the discovery of
14  admissible evidence, the Discovery Master finds that certain aspects of the
15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

                    c.    **Summary Of The Discovery Master's Findings With**
16
                          **Respect To The Subpoenas Directed To The**
17
                          **Transferee Entities**
18

19       As set forth above, the Discovery Master finds that Mattel has sufficiently
20  articulated a connection between some of the Transferee Discovery and its Phase 2
21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply
22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  **IV.   Disposition**

24       1.    The Motion to Quash filed by MGA is **DENIED.**

25       2.    Mattel's Motion to Compel the Financing Entities to produce
26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet
27  Capital, LLC and Vision Capital, LLC.

28       3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 28 -          ORDER NO. 3
                                                  [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _94_

1    documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2    **DENIED** in part, as follows:

3            a.      Requests 1 through 3, 13, 15, and 17: The Motion is granted

4    with respect to documents relating to (1) the existence of any debt owed by MGA

5    Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6    from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7    LLC and the MGA parties regarding any such indebtedness. The motion is denied

8    regarding any other documents sought by these requests.

9            b.      Requests 4 through 12, 14 and 18: The Motion is denied.

10        4.      Mattel's Motion to Compel the Transferee Entities to produce

11    documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12    IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13        5.      Mattel's Motion to Compel the Transferee Entities to produce

14    documents responsive to the Subpoenas is **GRANTED**, as follows:

15                        **Subpoena To IGWT Group LLC**

16            a.      Request 1: The Motion is granted with respect to documents

17    relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18    including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19    or their spouses, or any entity or person affiliated with them.

20            b.      Request 2: The Motion is granted

21            c.      Request 3: The Motion is granted with respect to documents

22    relating to any ownership interest by Larian, his spouse, his children, his siblings,

23    or their spouses, or any entity or person affiliated with them.

24            d.      Request 4: The Motion is granted with respect to documents

25    relating to any sources of funding by Larian, his spouse, his children, his siblings,

26    or their spouses, or any entity or person affiliated with them.

27            e.      Request 5: The Motion is granted with respect to documents

28    relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -                        ORDER NO. 3
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  9

PAGE  95

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3          f.    Request 7: The Motion is granted.

4              **Subpoena To IGWT 826 Investments LLC**

5          a.    Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9          b.    Request 2: The Motion is granted

10          c.    Request 3: The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13          d.    Request 4: The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16          e.    Request 5: The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20          f.    Request 7: The Motion is granted.

21      5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24      6.    Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _9_

PAGE _96_

1   Dated:  March 10, 2009

2

3

4                                          By:        /s/ Robert C. O'Brien
                                                       ROBERT C. O'BRIEN
5                                                      Discovery Master

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 31 -        ORDER NO. 3
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  9

PAGE  97