# Exhibit 10

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,     Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                       Consolidated with
14         v.                          Case No. CV 04-09059
                                       Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                       **PHASE 2 DISCOVERY MATTER**
16
                Defendant.             **AMENDED[1] ORDER NO. 11,**
17                                     **REGARDING:**

18                                         **(1) MOTION OF MATTEL, INC.
                                           TO COMPEL RESPONSES TO**
19                                         **INTERROGATORIES AND
                                           PRODUCTION OF DOCUMENTS**
20                                         **BY MGA ENTERTAINMENT, INC.
                                           AND ISAAC LARIAN; and**
21
22  CONSOLIDATED WITH                      **(2) MOTION OF MATTEL, INC.
    MATTEL, INC. v. BRYANT and             TO COMPEL THE DEPOSITIONS**
23  MGA ENTERTAINMENT, INC. v.             **OF PABLO VARGAS AND
    MATTEL, INC.                           MARIANA TRUEBA**
24
25
26
27  _____
    [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28  requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
    days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                      AMENDED ORDER NO. 11
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 98

1    This Order sets forth the Discovery Master's ruling on two motions filed by

2    Mattel, Inc. ("Mattel"): (1) a motion to compel responses to interrogatories and

3    production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4    ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5    to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6    (the "Deposition Motion") (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8    March 19, 2009. All interested parties were represented by counsel and afforded

9    the opportunity to present oral argument on the Motions. The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument, rules as set forth below.

12   **I.    MATTEL'S WRITTEN DISCOVERY MOTION**

13       In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14   documents responsive to 40 separate document requests[2] and provide answers to 12

15   different interrogatories. (Separate Statement in Support of the Written Discovery

16   Motion, pp. 1 – 41 and 45 – 102). Mattel further seeks to compel Larian to produce

17   documents responsive to 3 separate document requests and provide answers to 11

18   different interrogatories.[3]  (*Id.*, pp. 41 – 43 and 49 – 102).

19       **A.    Document Requests**

20            **1.    Document Requests Propounded On MGA**

21       Document Request Nos. 4 through 37 seek financial information from MGA

22

---

23   [2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its
     Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels
24   Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document
     Request No. 46 (incorrectly numbered as request 45). (*Compare* Separate Statement in Support of the Written
25   Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion
     ("Watson Decl."), Ex. 1 at pp. 13 and 14). Because Mattel has in reality moved to compel responses to Document
26   Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not
     Document Request No. 42. Moreover, any reference to a document request relating to MGA in this Order shall refer
27   to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of
     Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

28   [3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

EXHIBIT 10

PAGE 99

1    related to sales, revenues, costs, profits, customer returns, customer rebates and

2    customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3    sufficient to identify customers who purchased any Bratz Product from MGA or its

4    licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5        Document Request Nos. 43, 44 and 46 similarly seek financial information

6    from MGA related to the Bratz product line:

7        • Document Request No. 43 (erroneously numbered in Mattel's Separate

8          Statement as request number 42): "All sales, profit and cash flow

9          projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10          BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (*Id.*, p. 13).

11        • Document Request No. 44 (erroneously numbered in Mattel's Separate

12          Statement as request number 43): "All DOCUMENTS that REFER

13          OR RELATE TO the value of the Bratz brand." (*Id.*).

14        • Document Request No. 46 (erroneously numbered in Mattel's Separate

15          Statement as request number 45): "All DOCUMENTS that evidence,

16          reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17          fashion doll market, including, without limitation, the extent to which

18          Bratz has been or is gaining or losing market share in the fashion doll

19          market." (*Id.*, p. 14).

20        Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21    information from MGA as a whole, not just financial data limited to the Bratz Dolls

22    or Bratz Product:

23        • Document Request No. 40: "All DOCUMENTS that describe YOUR

24 ───────────────────────────────
[4] Mattel defines the term "Bratz Product" as follows:

25        'Bratz Product' means any product whether two-dimensional or three-dimensional,
          and whether in tangible, digital or electronic or other form: (i) that is or has ever
26        been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
          line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES
27        TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
          packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists
          of or REFERS OR RELATES TO BRATZ.
28    (Watson Decl., Ex. 1 at p. 3; *see also id.*, Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    - 2 -        AMENDED ORDER NO. 11
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _100_

cost allocation procedures." (*Id.*, p. 13).

- Document Request No. 41: "YOUR general ledgers from January 1, 1995 through the present." (*Id.*).

- Document Request No. 45 (erroneously numbered in Mattel's Separate Statement as request number 44): "DOCUMENTS sufficient to calculate YOUR net worth on a yearly basis for each year from 1999 to the present." (*Id.*).

    2.  **Document Requests Propounded On Larian**

The three document requests propounded on Larian (i.e., Documents Request Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and bank accounts:

- Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

- Document Request No. 208: "Documents sufficient to establish YOUR gross income, and the sources of that gross income, for the years 1999 through the present, inclusive." (*Id.*, p. 52).

- Document Request No. 269: "DOCUMENTS sufficient to calculate YOUR net worth on a yearly basis for each year from 1999 to the present." (*Id.*, p. 63).

    3.  **Phase 1 Rulings**

This is not the first time that Mattel has moved to compel responses to the document requests at issue. Mattel previously filed two motions to compel that asked the former discovery master to compel MGA and Larian (collectively, the "MGA Parties") to, among other things, respond to the same 43 document requests in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 101

1    the present dispute).  (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2       Because the prior discovery master compelled MGA to produce information

3    responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4    Larian to produce information responsive to Document Request Nos. 207, 208 and

5    269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6    Civil Procedure 26 to supplement their prior productions, and (2) that the

7    information the MGA Parties "are withholding is relevant to the damages Mattel

8    seeks," (Written Discovery Motion, pp. 8 – 9).

9              **4.    Objections Of MGA**

10      In their Opposition, the MGA Parties rely on two grounds for refusing to

11   supplement their prior document productions regarding Document Request Nos. 4 –

12   37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13   failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14   Parties argue that the requested information is not relevant to the claims and

15   defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16              **a.    Purported Failure To Meet And Confer**

17      Because it could dispose of the outstanding discovery issues related to the

18   document requests that are the subject of the present dispute, the Discovery Master

19   first addresses the MGA Parties' argument that Mattel failed to meet and confer

20   properly prior to filing its Written Discovery Motion.

21      The MGA Parties argue that Mattel's motion to compel should be denied

22   because Mattel failed to comply with the meet and confer requirements of Local

23   Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24   however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25   discovery disputes in this case.  The applicable meet and confer procedures are set

26   forth in the Court's order appointing a discovery master dated December 6, 2006

27   ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28   Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -                          AMENDED ORDER NO. 11
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _102_

1   requires that, before filing a motion to compel, the moving party must meet and

2   confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3        Because Rule 37 and the Discovery Master Order govern the meet and confer

4   process in this case, the Discovery Master construes the MGA Parties' meet and

5   confer argument in light of the good faith requirement embedded in Rule 37. The

6   MGA Parties claim that Mattel did not meet and confer in good faith because its

7   counsel sent them "a meet and confer letter inviting [them] to further meet and

8   confer on February 11, 2009" and then filed a motion to compel one "day before

9   the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13   However, the record available to the Discovery Master demonstrates that Mattel

14   made several prior attempts to meet and confer with the MGA Parties, including

15   engaging in the following:

16      • On January 6, 2009, Mattel's counsel sent a letter demanding that the

17        MGA Parties supplement their production concerning the document

18        requests by February 1, 2009, (Watson Decl., Ex. 17);

19      • Counsel for the MGA Parties never responded to Mattel's January 6,

20        2009 letter, (Written Discovery Motion, p. 6);

21      • Counsel for Mattel sent counsel for the MGA Parties a second copy of

22        the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23      • Counsel for Mattel and counsel for the MGA Parties then spoke on

24        February 6, 2009, and were supposed to discuss, among other things,

25        the document requests at issue, but counsel for the MGA Parties was

26        not prepared to discuss the requests at the appointed time, (Watson

27        Decl., ¶ 22); and

28      • Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _103_

1    9, 2009 to discuss the document requests but counsel for the MGA

2    Parties was still not prepared to discuss the issues, (*Id*.).

3    In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement. The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8    37(a) [emphasis added]). Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12                **b.     Relevance Of The Document Requests To Phase 2**

13   The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17                **(1)     Document Request Nos. 207, 208 And 269**

18   With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims. (Opposition, p. 6).

21   Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true. For example, Document Request

24

25   [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the
requested information following the filing of the Written Discovery Motion. It is, therefore, unclear what could have
26   been accomplished by an additional meet and confer on these issues. Moreover, Mattel's counsel stated at oral
argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they
27   still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.
68:7-9). Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on
February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery
28   procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                        - 6 -                    AMENDED ORDER NO. 11
                                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *10*

PAGE *104*

1    Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2    No. 269) and gross income (Request No. 208). Such information relates to Phase 2

3    damages issues, including, among other things, damages sought against Larian in

4    connection with Mattel's unfair competition cause of action as well as the

5    calculation of Larian's net worth for purposes of litigating the propriety of any

6    "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166). It is

7    therefore discoverable.

8        In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9    Mattel's employees for the express purpose of misappropriating Mattel's

10   confidential and proprietary information, and that the MGA Parties promised such

11   individuals increased salaries at MGA. (*See, e.g.,*  SAAC, ¶¶ 69 and 77). Mattel's

12   request for documents sufficient to identify Larian's bank accounts (i.e., Request

13   No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14   evidence regarding the source of any payments that may have been made by Larian

15   to former Mattel employees.[7]

16                    (2)    **Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                                      **46**

18       Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19   37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20   financial information "related to Bratz dolls, which was a Phase 1 issue,"

21   (Opposition, p. 5). Specifically, the MGA parties argue that:

22            [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

24   ⁶ While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he
     concludes that Larian should not be required to provide updated information concerning his net worth and gross

25   income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase
     2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question

26   deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial
     information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by

27   the verdict rendered in Phase 1 or recent economic conditions.

     ⁷ Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to

28   produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                        - 7 -                    AMENDED ORDER NO. 11
                                                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _105_

1     related financial information in order to establish its Phase

2     2 damages ignores the jury's Phase 1 damages award . . . .

3     Mattel sought disgorgement of all Bratz profits during

4     Phase 1 and the jury made its award.  Mattel may not

5     relitigate this issue in Phase 2.

6 (*Id.*, p. 6).

7    However, Document Request Nos. 40, 41 and 45[8] make no mention of

8 financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9 (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10 (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11 through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12 net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13 Therefore, MGA's argument does not apply to these document requests.

14    Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15 Separate Statement as request number 44) are further reasonably calculated to lead

16 to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17 the touchstone for determining whether a particular discovery request is reasonably

18 calculated to lead to the discovery of admissible evidence in this case is whether the

19 request bears some relation to the issues to be tried in Phase 2.  That standard is met

20 here, since MGA's general ledgers, net worth, and cost allocation procedures all

21 bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22 damages.

23    As for the remainder of the document requests directed to MGA (i.e.,

24 Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

25 <sub>8</sub> Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26 <sub>9</sub> Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27 <sub>10</sub> Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28 <sub>11</sub> Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _106_

1   financial information related to the Bratz Dolls/Bratz Product. While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6          As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls. Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10         Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11  Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12  Separate Statement as request number 43), and 46 (erroneously numbered in

13  Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14  claims. The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15  action, misappropriation of trade secrets claim, and unfair competition cause of

16  action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17  fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18  proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19  163). The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20  has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21  act[s] or practice[s]" in violation of California Business and Professions Code

22  section 17200 et seq. (SAAC, ¶ 165). Therefore, in addition to the alleged

23  misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24  arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25         Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27  [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure. (See
    Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or
28  correct its disclosure or response . . . in a timely manner").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                                    - 9 -                    AMENDED ORDER NO. 11
                                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 107

1   Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2   of the purported racketeering activities was the "altering [of] numerous original

3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5   calculated to lead to the discovery of admissible evidence in Phase 2.

6   The Discovery Master cannot predict whether the Court will ultimately

7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9   presenting any evidence that it has been damaged by such misconduct at the Phase

10   2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11   Given that the discovery here need only appear reasonably calculated to lead to the

12   discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13   Master finds that the aforementioned document requests are sufficiently related to

14   Mattel's Phase 2 claims to be discoverable at this time.

15   **5.   Conclusion**

16   For all of the foregoing reasons, Mattel's motion to compel responses to

17   Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18   Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19   **B.   Interrogatories Propounded On MGA And Larian**

20   The second part of Mattel's Written Discovery Motion addresses various

21   interrogatories propounded on the MGA Parties.

22   **1.   Interrogatory No. 45 Propounded On MGA**

23   Interrogatory No. 45 asks MGA[13] to:

24   IDENTIFY each BRATZ PRODUCT that has been

25   SOLD by [MGA] or [its] licensees and, for each such

26

27   [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
28   INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 108

1            BRATZ PRODUCT, state . . . (a) the number of units of

2            each such BRATZ PRODUCT SOLD by [MGA] or [its]

3            licensees, (b) the gross and net revenue received by

4            [MGA] from such SALES of each such BRATZ

5            PRODUCT, (c) all costs [MGA] incurred in connection

6            with each such BRATZ PRODUCT, including but not

7            limited to [MGA's] costs of goods sold, and (d) [MGA's]

8            gross and net profits from each such BRATZ PRODUCT.

9    (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10   Written Discovery Motion, p. 9).

11             **a.     Phase 1 Rulings**

12        As with the document requests discussed above, Mattel concedes that "MGA

13   identified and produced documents responsive to [Interrogatory No. 45] in

14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15   Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16   supplement its response" without justification. (*Id.*)

17             **b.     Objections Of MGA**

18        In its Opposition, MGA argues that it does not have to provide the

19   information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20   like the document requests propounded on MGA, "Mattel's entitlement to gross and

21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23   (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24   identical to the documents sought by Document Request Nos. 21 (requesting

25   "DOCUMENTS sufficient to show the number of units of each BRATZ

26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**EXHIBIT** _10_

**PAGE** _109_

1    sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2    BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3    "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4    profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5    licensees"), discussed above. Accordingly, MGA's relevancy argument regarding

6    Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7    I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8    imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9    arguably relevant to Mattel's Phase 2 claims.[14]

10        MGA also argues that it should not be required to provide the information

11    requested by Interrogatory No. 45 because it "has already provided information that

12    is current through the second fiscal quarter of 2008" and it would be unduly

13    burdensome to gather the documents necessary to update that information.

14    (Opposition, pp. 7 – 8). MGA did not argue, however, in its Opposition that it

15    would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16    24 discussed above in Section I.A.4.b.2. Therefore, MGA can gather the

17    documents responsive to those requests and refer Mattel to those materials. (*See*

18    Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19    examining . . . a party's business records . . . the responding party may answer by

20    specifying the records that must be reviewed . . ."]).

21        The MGA Parties' argument that it is overly burdensome to require MGA to

22    spend 320 hours to inform Mattel of the most recent sales figures concerning the

23    Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

---

25    [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad

26    enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue

27    was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the

28    Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 110

1    information requested and the wide-ranging extent of the discovery to date. As

2    explained above, the information sought is relevant to the constructive trust

3    imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4    claims. Also, while 320 hours may be unduly burdensome in certain

5    circumstances, it is not unreasonable on its face here given that the MGA Parties

6    have already produced more than 4 million documents.[15] (*See Cappacchione v.*

7    *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8    ["Requiring a responding party to perform extensive research or to compile

9    substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13                           c.    **Conclusion**

14          For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17                 **2.    Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                         **Larian**

19          Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22          •    Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23               MGA has obtained, received, reviewed, copied, reproduced,

24               transmitted, requested, or used at any time since January 1, 1999, and

25               IDENTIFY all PERSONS with knowledge of such facts and all

26               DOCUMENTS that REFER OR RELATE TO such MATTEL

27   _____

28   [15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -                              AMENDED ORDER NO. 11
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __10__

PAGE __111__

1   DOCUMENTS." (Separate Statement in Support of Written

2   Discovery Motion, p. 49).

3   • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4   OR RELATE TO any MATTEL product or plan that any of the

5   FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6   to, shared with or used on behalf of MGA at any time since January 1,

7   1999, and IDENTIFY all PERSONS with knowledge of such facts."

8   (*Id.*, p. 52).

9   • Interrogatory No. 58: "State all facts which support YOUR

10   contention, if YOU so contend, that YOU and/or MGA did not obtain

11   any MATTEL DOCUMENTS through improper means, and

12   IDENTIFY all PERSONS with knowledge of such facts and all

13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14   54).

15   • Interrogatory No. 59: "State all facts which support YOUR

16   contention, if YOU so contend, that any information in the MATTEL

17   DOCUMENTS does not and/or did not derive independent economic

18   value from not being generally known to the public or other

19   PERSONS who can obtain economic value from its disclosure or use,

20   and IDENTIFY all PERSONS with knowledge of such facts and all

21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22   57).

23   • Interrogatory No. 60: "State all facts which support YOUR

24   contention, if YOU so contend, that any information in the MATTEL

25   DOCUMENTS was known to the public or to PERSONS who can

26   obtain economic value from its disclosure or use, and IDENTIFY all

27   PERSONS with knowledge of the foregoing and All DOCUMENTS

28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _112_

1      •   Interrogatory No. 61: "State all facts which support YOUR

2         contention, if YOU so contend, that YOU and/or MGA independently

3         developed, or did not otherwise use or disclose, any information in the

4         MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5         knowledge of such facts and all DOCUMENTS that REFER OR ·

6         RELATE TO such facts." (*Id.*, pp. 64 – 65).

7      •   Interrogatory No. 62: "State all facts which support YOUR contention

8         that YOUR use or disclosure of information in the MATTEL

9         DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10         IDENTIFY all PERSONS with knowledge of such facts and all

11         DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12         69).

13      •   Interrogatory No. 63: "State all facts which support YOUR

14         contention, if YOU so contend, that YOU and/or MGA had, has or

15         have any right to copy, possess, use or disclose any MATTEL

16         DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17         facts and all DOCUMENTS that REFER OR RELATE TO such

18         facts." (*Id.*, p. 73).

19            a.    **Objections Of MGA And Larian**

20      In their Opposition, the MGA Parties rely on four basic grounds for refusing

21 to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22 that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23 – 10). Second, the MGA Parties argue that the interrogatories presuppose facts

24 that are not true. (*Id.*, p. 8). Third, the MGA Parties argue that all 8 interrogatories

25 are impermissibly compound and exceed the number of allotted interrogatories.

26 (*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27 and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _113_

**(1)    Unduly Burdensome Objection**

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10). While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10). Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party. (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal importance. We're asking for . . . their core contentions related to the trade secret claims."]). As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20). Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

AMENDED ORDER NO. 11
[Case No.: CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 114

1      • stole "Mattel's plans, strategy and business information for the
2         Mexican market and materials related to Mattel's worldwide business
3         strategies," (*Id.*, ¶ 37);
4      • "directed [certain Mattel employees'] to steal virtually all Mattel
5         confidential and proprietary information that they could access and
6         bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every
7         type of document a competitor would need to enter the Mexican
8         market, and to unlawfully compete with Mattel in Mexico, in the
9         United States and elsewhere . . ." (*Id.*, ¶ 48);
10     • "targeted certain Mattel employees who have broad access to Mattel
11        proprietary information in an effort to induce and encourage them to
12        join MGA and to steal or otherwise wrongfully misappropriate Mattel
13        confidential information and trade secrets," including by "promising
14        these employees salaries 25 percent or more higher than they earn at
15        Mattel and stating to them that they should not be concerned by legal
16        action taken by Mattel to protect its trade secrets and its rights because
17        such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and
18     • "hired directly from Mattel's United States operations at least 25
19        employees, from Senior Vice-President level to lower level
20        employees," and that some of these individuals misappropriated
21        "Mattel confidential and proprietary information, including Mattel's
22        strategic plans; business operations; methods and systems; marketing
23        and advertising strategies and plans; future product lines; product
24        profit margins, and customer requirements." (*Id.*, ¶ 77).
25     Therefore, this is not a situation where Mattel has alleged that the MGA
26  Parties stole a handful of documents. The SAAC instead alleges that the MGA
27  Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing
28  "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

1   market, and to unlawfully compete with Mattel in Mexico, in the United States and

2   elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA

3   Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4   19), including all of the documents that have been identified as the MATTEL

5   DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6   regarding whether or not those documents constitute trade secrets, particularly

7   given that such information is exclusively within the control of the MGA Parties.

8   As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9   accusing MGA and the other defendants of stealing all of these documents . . . and

10  [the MGA Parties are] going to have to articulate what their contentions are with

11  respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*

12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13  Mattel is going to be proceeding to trial on."]).

14          Also, the MGA Parties' claim of undue burden does not take into account the

15  vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16  propounded 4,647 requests for admission, 2,889 requests for production, and 71

17  interrogatories in Phase 1]). The MGA Parties do not provide any supporting

18  declaration or specific evidence to support their assertion of burden beyond their

19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20  For example, the MGA Parties have not provided the Discovery Master with details

21  regarding: (1) a time estimate as to how long it would take to respond to the

22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23  extent to which any facts that must be set forth in answering the Interrogatories are

24  voluminous; or (4) an estimate of the number of documents and/or persons that may

25  have knowledge of such responsive facts. Therefore, the Discovery Master finds

26  that the MGA Parties have not met their burden of demonstrating that answering

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _116_

1    the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6            While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13   issue[17] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25           The Discovery Master finds that this limitation is appropriate because Mattel

26

---

27   [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue. (Opposition, pp. 9 – 10).

28   [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  10

PAGE  117

1   conceded in its Reply that it was not asking the MGA Parties "to provide

2   facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3   "specific contentions Defendants may make regarding the [allegedly] stolen

4   documents," (id., p. 17). Mattel's counsel reiterated this position again at oral

5   argument, wherein he declared that Mattel was not necessarily interested in "a

6   parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7   Parties'] trial positions are going to be, before the jury is seated," (id., p. 81:14-15).

8                        **(2)     Purported Presuppositions Regarding**

9                              **Interrogatory Nos. 56 and 58 – 63.**

10         The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11   objectionable because they require the MGA Parties to presuppose that they are "in

12   possession of documents stolen or taken from Mattel by former employees – a fact

13   that MGA denies." (Opposition, p. 8). The MGA Parties further assert that "each

14   of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15   Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16   assertions . . . which make the interrogatories unanswerable and incomprehensible."

17   (Id., p. 9). However, the MGA Parties cite no legal authority, and the Discovery

18   Master has found none, standing for the proposition that a party may refuse to

19   respond to an interrogatory merely because the interrogatory assumes a fact the

20   responding party disputes.

21                        **(3)     Compound And Excessive Objections**

22         The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23   impermissibly compound and exceed the allotted number of interrogatories.

24   (Opposition, pp. 10 and 11). Each of these contentions is unavailing.

25         As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26   ―――――――――――――――――――――――――――――――――――――――――――――――――
     [18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary

27   judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
     information. (See Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement

28   its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
     . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                                - 20 -          AMENDED ORDER NO. 11
                                                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __10__

PAGE __118__

1   and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2   the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3   Therefore, the MGA Parities waived any such objections to those interrogatories.

4   (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5   Cir. 1992) [stating that "failure to object to discovery requests within the time

6   period required constitutes a waiver of any objection."]).

7         As for the interrogatories where the objections were asserted, the MGA

8   Parties have not demonstrated that the interrogatories are compound or exceed the

9   allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10  and documents related to the MATTEL DOCUMENTS does not render the

11  interrogatories compound because the questions in each interrogatory refer to one

12  common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint*

13  *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14  subparts directed at eliciting details concerning a 'common theme' should generally

15  be considered a single question"]).  The prior discovery master applied this precise

16  rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17  supporting a contention, the identity of persons with knowledge, and documents are

18  not counted separately for the purposes of applying the . . . interrogatory limit."

19  (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                    **(4)     Establishing A Negative Proposition Objection**

21        As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22  Parties assert that three of the interrogatories improperly ask them to establish a

23  negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24  12).  The relevant question, however, is not whether an interrogatory may require a

25  party to prove a negative.  Rather, all of the cases cited by the parties concerning

26  this issue examine whether the interrogatory in question imposes an unreasonable

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

EXHIBIT _10_

PAGE _119_

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  burden on the responding party.[19]  For the reasons explained above, there has been

2  no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3  pp. 11 – 12).

### b.    Conclusion

5  For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6  are overruled and Mattel's motion to compel responses to the interrogatories is

7  granted, subject to the limitations discussed above.

### 3.    Interrogatory Nos. 67 – 69 Propounded On MGA And Larian

10  Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

14  • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15  payment of money or other item of value that YOU have made or

16  given, or any promise, agreement, proposal [o]r offer by YOU to pay

17  money or given any item of value, to or on behalf of any PERSON

18  identified in any of the parties' initial disclosures in this ACTION at

19  any time when such person was not an employee of MGA, including

20  without limitation with respect to legal fees incurred by or on behalf of

21  such PERSON." (Separate Statement in Support of Written Discovery

22  Motion, p. 88).

23  • Interrogatory No. 68: "To the extent not disclosed in prior

---

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -
448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both
address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases
cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding
that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]; *Tennison
v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all
facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,
2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _120_

1    Interrogatories, IDENTIFY fully and separately each and every

2    payment of money or other item of value that MGA has made, or any

3    promise, agreement, proposal or offer by MGA to pay money or given

4    any item of value, to or on behalf of any of the FORMER MATTEL

5    EMPLOYEES, including without limitation with respect to legal fees

6    incurred by or on behalf of any of the FORMER MATTEL

7    EMPLOYEES." (*Id.*, p. 91).

8    • Interrogatory No. 69: "To the extent not disclosed in prior

9    Interrogatories, IDENTIFY fully and separately each and every

10    payment of money or other item of value that YOU have made, or any

11    promise, agreement, proposal or offer by YOU to pay money or given

12    any item of value, since January 1, 1998 to or on behalf of any

13    PERSON who has been employed by MATTEL (excluding ordinary

14    salary and benefits paid to such PERSON while an MGA employee),

15    including without limitation with respect to legal fees incurred by or

16    on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17    p. 92).

18              a.      Objections Of MGA And Larian

19    In their Opposition, the MGA Parties rely on two basic grounds for refusing

20    to provide responses to these three interrogatories. First, the MGA Parties argue

21    that the interrogatories are impermissibly compound and exceed the number of

22    allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that

23    interrogatories are overly broad. (*Id.*, pp. 12 – 14).

24              (1)      Compound And Excessive Objections

25    Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26    that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27    allotted number of interrogatories. (Opposition, pp. 10 and 11). But those

28    arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 121

### (2)    Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[20] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 122

1   employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2   EMPLOYEES as including specific individuals as well as each such person's

3   "current or former employees, agents, representatives, attorneys, accountants,

4   vendors, consultants, independent contractors, predecessors-in-interest and

5   successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6   to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7   While they assert these definitional objections, counsel for the MGA Parties

8   nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9   Mattel employees, for other than their salary as MGA employees, I think that is a

10  fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11         Therefore, the Discovery Master orders the MGA Parties to identify fully and

12  separately each and every payment of money or other item of value that they have

13  made or offered to pay to or on behalf of any "former employee of Mattel" since

14  January 1, 1998 but limits the definition of former Mattel employees to "all

15  individuals that the MGA Parties are aware of that worked for Mattel and who

16  received any payment (excluding ordinary salary and benefits paid to such person

17  while an MGA employee) from the MGA Parties."[21]

18                     **b.     Conclusion**

19         For all of the foregoing reasons, Mattel's motion to compel is denied with

20  respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's

21  motion to compel responses to the interrogatories is granted, subject to the

22  limitations discussed above.

23         **C.     Summary Of Ruling Regarding The Written Discovery Motion**

24         Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25  **part.**

26  ─────────────────────

27  [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a
request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.

28  Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -                AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _123_

## II.    MATTEL'S DEPOSITION MOTION

### A.    Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1.    Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business.  Vargas currently serves as the Director of Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex.  She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

#### 2.    Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses.  On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

EXHIBIT 10
PAGE 124

1   the Witnesses (as well as others). Mattel's application was stayed with other Phase
2   2 discovery and then denied without prejudice on September 23, 2008. After the
3   Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the
4   depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.
5   Once again, the MGA Defendants objected on the ground that neither of the
6   Witnesses is an officer, director or managing agent of MGA Mex. After the parties
7   were unable to resolve their dispute, Mattel filed the Deposition Motion.

8       **B.    Discussion**

9       Mattel argues that (1) the Witnesses are directors and/or managing agents of
10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los
11   Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are
12   acting in bad faith and without justification to frustrate Mattel's legitimate
13   discovery rights. In response, the MGA Defendants argue that (1) the Witnesses
14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and
15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil
16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The
17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to
18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan
19   ("Khan") and then served a redacted version of the Deposition Motion on a
20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she
21   was out of town.[23] According to MGA Mex, Mattel only served a complete,
22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two
23   days before the deadline for the Opposition.

24       **1.    Legal Standard**

25       If a corporation is a party to an action, any other party may take the
26   deposition of that corporation by identifying a specific officer, director, or

27

28

[23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _125_

1   managing agent to be deposed and noticing that person's deposition under Rule

2   30(b)(1). Notice alone is enough to compel the managing agent to attend the

3   deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4   *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of

5   compelling a corporate officer's deposition, courts do not recognize a distinction

6   between an "apex" official or director and other high corporate officials. (*Resort*

7   *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8   Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9   ["There is slight warrant for the present distinction between officers and managing

10  agents on the one hand and directors on the other."]).

11         The case law provides somewhat ambiguous guidance with respect to the

12  burden of proof for demonstrating managing agent status. Generally, the burden is

13  on the discovering party to establish the status of the witness. (See *Sugarhill*

14  *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15  *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same

16  time, however (and as Mattel points out in its papers), courts resolve doubts in

17  favor of the examining party, at least during the discovery phase. (See *Sugarhill*,

18  105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19  (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of

20  providing enough evidence to show that it is at least a close question whether the

21  proposed deponent is a managing agent." (*United States of America v. Afram Lines*

22  *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23         The identification of a managing agent in any given case is fact-sensitive.

24  "[B]ecause of the vast variety of factual circumstances to which the concept must

25  be applied, the standard . . . remains a functional one to be determined largely on a

26  case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27  *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the

28  question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -                    AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _126_

1   pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2   C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3   citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)). Whether a

4   proposed deponent falls into a particular category of employee or agent is therefore

5   less relevant than the individual's specific functions and authority.

6        As both parties acknowledge, federal courts have formulated a set of factors

7   to assist in determining whether person is a party's "managing agent," and therefore

8   subject to deposition under Rule 30(b)(1):

9        1)   whether the individual is invested with general powers allowing him to

10            exercise judgment and discretion in corporate matters;

11       2)   whether the individual can be relied upon to give testimony, at his

12            employer's request, in response to the demands of the examining

13            party;

14       3)   whether any person or persons are employed by the corporate

15            employer in positions of higher authority than the individual

16            designated in the area regarding which the information is sought by the

17            examination;

18       4)   the general responsibilities of the individual "respecting the matters

19            involved in the litigation;" and

20       5)   whether the individual can be expected to identify with the interests of

21            the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23        According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)). Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-29-

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _127_

1   day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),
2   the Witnesses are managing agents of MGA Mex.

3       Mattel's emphasis on the employee's loyalty as the main test for determining
4   his or her status is unwarranted. Federal courts have effectively challenged the
5   notion that the employee's loyalty to the employer is entitled to special weight.
6   (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the
7   *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .
8   apparent fidelity to the principal's interests, because it would apply to many agents
9   and employees who do not function with the degree of authority over a company's
10  affairs connoted by the term 'managing' agent." (*Id.*, at 350). Moreover, the
11  *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a
12  rationale that no longer applies. Specifically, the court traced the rule to *Newark*
13  *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the
14  analytical underpinning of the "loyalty" factor.

15      In that case, the court was concerned with the evidentiary problem facing a
16  litigant seeking to obtain and use the testimony of an adversary corporation's most
17  senior employees. Under the then-existing rule, a litigant could not call such an
18  employee to testify at trial in his or her individual capacity without waiving the
19  right to impeach the witness. This presented a problem for the party seeking to
20  elicit the testimony, because, as the court reasoned, a corporation's ranking
21  employee having possession of pertinent information will always "give his
22  testimony in the light most favorable to the principal," but would, at the same time,
23  be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that
24  an adversary should be able to obtain such testimony from the employee in his or
25  her capacity as the representative of the corporation (who could, therefore, be
26  subject to impeachment).

27      However, as the court in *Libbey Glass* noted, the concerns expressed in
28  *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

EXHIBIT _10_

PAGE _128_

1    ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2    employee of an adversary corporation in his individual capacity and may

3    nonetheless still seek to impeach that testimony.  In other words, characterizing a

4    particular witness as a "managing agent" no longer provides any substantive

5    advantage to the deposing party, only procedural advantages (i.e., the ability to take

6    the deposition without a subpoena).

7         Having discarded the notion that the witness' loyalty to his employer is the

8    main factor to be considered in ascertaining his status as a managing agent, the

9    court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10   behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass*,

11   197 F.R.D. at 350).  The court reasoned:

12            For the purpose of determining whether an individual is a

13            'managing agent' within the meaning of the discovery rules, the

14            alter ego theory provides a useful analogy.  As in the arena of

15            corporate liability, the focus begins with the character of the

16            individual's control.  In addition, we can profitably examine both

17            the degree to which the interests of the individual and the

18            corporation converge, and how helpful the individual will be in

19            fact finding on the matter at issue, in comparison to others

20            associated with the corporation.  As in all matters appertaining to

21            discovery, it is the ends of justice that are to be served.

22   (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*,

23   802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24   analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25   practical and well-reasoned test for determining whether the Witnesses are

26   managing agents of MGA Mex, and applies that test below.

27

28   [24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 129

2.  **Analysis Of The Witnesses' Job Functions And Managerial Authority**

    a.  **The Nature Of The Witnesses' Activities On Behalf Of, And Control Over, MGA Mex.**

In accordance with the approach outlined in *Libbey Glass,* the Discovery Master begins his analysis by examining the Witnesses' activities on behalf of, and managerial control over the operations of, MGA Mex.

Mattel relies heavily on documentary evidence regarding the role of Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery Master finds that this evidence, which is limited to events that occurred five years ago, to be only minimally probative of the *current scope* of the Witnesses' activities and authority.[25]  The only evidence presented by the parties concerning the Witnesses' current role in the company is the testimony of Kuemmerle.  That testimony derives from three sources: (1) her declaration filed on February 27, 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

The relevant portion of Kuemmerle's first declaration is Paragraph 6, which states in its entirety:

> All of the day to day operations of MGA Mexico are managed
> locally in Mexico.  For example, MGA Mexico's Finance
> Director, Sales Director and Marketing Director are all based in
> Mexico and all of the marketing and finance functions are
> handled in Mexico.

(First Kuemmerle Decl., ¶ 6).

---

[25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now." (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *10*

PAGE *130*

1    There are two main excerpts from Kuemmerle's deposition transcript cited

2  by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3  pricing for the products sold by MGA Mex is set by means of a "combined team

4  effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5  p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26] Kuemmerle testifies that these

6  individuals (which apparently include the Witnesses) continue to set the pricing of

7  MGA Mex products in the same manner to this day. (Id.).

8    Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9  testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10  tight of a group, not enough employees, that we were all forced to multitask."

11  (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12    In her second declaration, Kuemmerle testifies regarding the chain of

13  command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14  her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15  (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16  functions performed by, or general authority exercised by, either of the Witnesses.

17  Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18  all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19  supervises anyone. (Id., ¶ 3).

20    In the absence of any evidence directly addressing the Witnesses' current

21  role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22  managing agents based on the Witnesses' job titles and past participation in the

23  "tight group" that made operational decisions for the fledgling company several

24  years ago. However, such an inference is not supported by the scant evidence

25  before the Discovery Master. For instance, the Discovery Master cannot attribute

26

---

27   [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel
is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and

28   Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9
to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -                 AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 10

PAGE 131

1    such status to Trueba, who supervises no employees, and whose scope of

2    responsibility is circumscribed to public relations.[27]

3          Likewise, although Mattel emphasizes that Vargas supervises approximately

4    8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5    p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6    necessary context by identifying the number of total MGA Mex employees. If, for

7    instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8    employees would tend to indicate he does not have such authority.[28]  Because the

9    necessary contextual information is not provided, the Discovery Master is unable to

10   assess the significance (if any) of the evidence that is provided regarding Vargas'

11   current role at MGA Mex.

12         In sum, the evidence currently before the Discovery Master is insufficient to

13   allow him to determine that the Witnesses' functions on behalf of, and control over,

14   MGA Mex is such that they can be deemed its "managing agents."

15                        b.      Other Factors

16         Since there is virtually no evidence addressing the critical factor governing

17   whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18   above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19   at best.  Even if all those factors were satisfied – which they are not – the record

20   would still be insufficient to enforce the deposition notices at issue here.  However,

21   in order to create a complete record and to address the arguments made by the

22   parties, the Discovery Master nonetheless briefly discusses those factors below.

23         As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing." (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion. Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -                    AMENDED ORDER NO. 11
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *10*

PAGE *132*

1    on the issue of whether an employee is a managing agent is whether he or she "is
2    invested with *general* powers allowing him to exercise judgment and discretion in
3    corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the
4    current scope of Trueba's authority appears to be the opposite of "general:" she is
5    responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15
6    attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat
7    broader than that of Trueba, appears to be confined primarily to sales. (Second
8    Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any
9    authority over such things as internal administrative functions, budgeting, contracts
10   with vendors, and various other aspects of running a business.

11       The second *Sugarhill* factor (whether the individual can be relied upon to
12   give testimony at the employer's request) is satisfied, since the Witnesses are
13   current employees of MGA Mex who will presumably cooperate in their
14   employer's defense of Mattel's counterclaims by providing testimony at a
15   deposition.

16       Turning to the third *Sugarhill* factor (whether there are other MGA Mex
17   employees in positions of higher authority than the Witnesses in the area regarding
18   which the information is sought), the Discovery Master finds that the undisputed
19   testimony of Kuemmerle demonstrates that there are such MGA Mex employees:
20   Kuemmerle supervises Vargas and (through Machado) Trueba. (Second
21   Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that
22   the Witnesses are "managing agents."

23       With respect to fourth factor (the general responsibilities of the Witnesses
24   respecting the matters involved in the litigation), Mattel's papers demonstrate that
25   the Witnesses do oversee aspects of MGA Mex which are directly addressed by
26   Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel
27   contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition
28   Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _133_

1  Witnesses to be managing agents.

2      The last factor is the "loyalty" inquiry discussed above, namely whether the

3  Witnesses can be expected to identify with the interests of MGA Mex. Because

4  they are being subjected to investigation in Mexico, have their own lawyers and the

5  MGA Defendants may take the position that if any Mattel documents were taken,

6  the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7  align with the MGA Defendants in this matter. It is unclear on this record whether

8  this factor weighs in favor of or against deeming the Witnesses to be managing

9  agents.

10       **C.**    **Summary Of The Discovery Master's Findings In Connection**

11            **With The Deposition Motion**

12      At this stage, Mattel has not met its initial burden to demonstrate that the

13  Witnesses are managing agents of MGA Mex. The presumption in favor of the

14  party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15  (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this

16  is not such a case.[29]

17      Nevertheless, it is clear to the Discovery Master that the Witnesses have

18  information relating to several Phase 2 issues and that Mattel is entitled to take their

19  depositions.[30] Accordingly, Mattel may promptly prepare letters rogatory and

20  submit them to the Discovery Master, who will see that the letters rogatory are

21  expeditiously issued by the Court.

22       **D.**    **Sanctions**

23          **1.**    **Mattel's Request For Sanctions**

24      Having found that the MGA Defendants have articulated a meritorious legal

---

25  [29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is
26  unnecessary for him to reach the question of where the depositions may be taken.

27  [30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the
United States and were being deposed in their individual capacities. However, since they are foreign nationals who
are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have
28  authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -
AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _134_

1  and factual basis for their objections to the subject deposition notices, the Discovery

2  Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3  was justified. Accordingly, Mattel's request for sanctions is **DENIED**.

**2.     The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6  conduct related to Mattel's service of the Deposition Motion. First, the MGA

7  Defendants contend that Mattel should have served the Deposition Motion on

8  Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9  counsel had been communicating regarding the subject depositions. The MGA

10 Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11 on Kahn's colleague, Glaser, while the latter was out of town. However, the MGA

12 Defendants do not explain why other attorneys in their office who were assigned to

13 the matter were not notified of the delivery of the Deposition Motion given Ms.

14 Glaser's absence. Further, Mattel has submitted the declaration of its counsel,

15 Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16 served the Deposition Motion on all three law firms representing the MGA

17 Defendants at the same time (February 6, 2009) that the motion was filed. (See

18 Suppl. Zeller Decl., Exh. E).

19       Second, the MGA Defendants argue that Mattel only served a redacted

20 version of the Deposition Motion on them at some later point, leaving them only

21 two days to draft and file opposing papers, and refused Kahn's request for a

22 reasonable extension of time. (Kahn Decl., ¶¶ 3 - 4). However, the Kahn Decl. is

23 vague regarding the date and manner in which Mattel is alleged to have belatedly

24 served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25 Master is unable to ascertain whether Kahn's belated receipt of the motion was

26 caused by some conduct of Mattel, or instead, caused by internal delays within

27 Glaser Weil in routing the papers to the appropriate attorney.

28       Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _135_

## III.    DISPOSITION

A.    Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part,** as follows:

1.    Document Request Nos. 207, 208 and 269 directed to Larian: The Motion is **GRANTED**. All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

2.    Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA: The Motion is **GRANTED**. All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

3.    Interrogatory No. 45 directed to MGA: The Motion is **GRANTED**. MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

4.    Interrogatory Nos. 56 – 63 directed to MGA and Larian:

a.    The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

b.    Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations: The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 38 -                                AMENDED ORDER NO. 11
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _136_

1    MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2    (ii) that the information in the MATTEL documents did not derive independent

3    economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4    DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5    Parties independently developed, or did not otherwise use or disclose, any

6    information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7    the MGA Parties have not benefited by their use of the information in the MATTEL

8    DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9    Parties had or have a right to copy, possess, use or disclose any MATTEL

10    DOCUMENT (Interrogatory No. 63).

11            c.     The MGA Parties responses to interrogatories numbered

12    56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13    applicable confidentiality designations available under the Protective Order.

14         5.     Interrogatory No. 67 directed to MGA and Larian: The Motion

15    is **DENIED**.

16         6.     Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17    Larian, the Motion is **GRANTED** subject to the following limitations: The MGA

18    Parties are ordered to identify fully and separately each and every payment of

19    money or other item of value that they have made or offered to pay to or on behalf

20    of any former employee of Mattel since January 1, 1998, with the definition of

21    former Mattel employees re-defined as "all individuals that the MGA Parties are

22    aware of that worked for Mattel and who received any payment (excluding ordinary

23    salary and benefits paid to such person while an MGA employee) from the MGA

24    Parties." The MGA Parties responses to these interrogatories shall be served within

25    30 days of the original Order No. 11, subject to any applicable confidentiality

26    designations available under the Protective Order.

27      **B.**     Mattel's Deposition Motion:

28         1.     Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 39 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _10_

PAGE _137_

1          2.    Mattel's request for sanctions is **DENIED**.

2          3.    The MGA Defendants' request for sanctions is **DENIED**.

3

4     Dated: March 31, 2009

5

6                                         By:      /s/ Robert C. O'Brien
                                                    ROBERT C. O'BRIEN
7                                                   Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *10*

PAGE *138*

# Exhibit 11

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE
# ORDER

# Exhibit 12

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 13

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5

6   Discovery Master

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

| 12 | CARTER BRYANT, an individual,, | Case No. CV 04-09049 SGL (RNBx) |
|----|----|----|
| 13 | Plaintiff, | Consolidated with |
| 14 | v. | Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15 | MATTEL, INC., a Delaware corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16 | Defendant. | **ORDER NO. 6, REGARDING:** |
| 17 | | **(1) MOTION OF MATTEL, INC. TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO ITS FIRST AND THIRD SETS OF REQUESTS FOR PRODUCTION; and** |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | **(2) MOTION OF MGA TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE DOCUMENT REQUEST NOS. 526 AND 528** |
| 22 | | |
| 23 | | |

24

25   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
26   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          ORDER NO. 6
                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 178

**I.    INTRODUCTION**

This Order sets forth the Discovery Master's ruling on: (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

**II.    THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests. (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel. (MGA Opposition, p. 6). Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88. (*Id.*, p. 7).

**A.    The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

EXHIBIT _13_

PAGE _179_

### B. Phase 1 Ruling

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88. Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7). The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7 - 8).

### C. Objections of MGA Entertainment

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents. First, MGA Entertainment argues that Mattel failed to meet and confer. Second, MGA Entertainment argues that the requests are overbroad. Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

#### 1. Purported Failure To Meet And Confer

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer. (MGA Opposition, pp. 9 - 10). However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].) MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *13*

PAGE *180*

1   divided into phases and where the order denying the motion expressly noted that
2   nothing in the ruling was intended to "preclude Mattel from seeking further
3   production of documents in response" to the requests as part of Phase 2 discovery.[1]
4   (Order Apr. 14, 2008, pp. 7 - 8).

5       Even assuming such a requirement did exist, Mattel in fact met and conferred
6   with MGA Entertainment for a second time following the filing of its current
7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,
8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating
9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what
10.   could have been accomplished by an additional meet and confer on these issues
11   prior to the filing of the motion. Regardless, Mattel met and conferred once before
12   filing its current motion to compel and that is all that is required by the Federal
13   Rules of Civil Procedure and the discovery procedures governing this case.

14           **2.   Overbreadth Objection**

15       MGA Entertainment's second argument in opposition to Mattel's Motion is
16   that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA
17   Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests
18   are improper because they are not tied "to any product(s) that Mattel alleged that
19   MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal
20   authority in support of this position, MGA Entertainment asserts that the current
21   Discovery Master should find that the requests are overbroad because the prior
22   discovery master merely compelled it to produce portions of personnel and vendor
23   files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order
24   Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize
25   //

26

27   [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
28   since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),
and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

    - 3 -       ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 181

1   the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2       The touchstone for determining whether a particular discovery request is

3   reasonably calculated to lead to the discovery of admissible evidence in this case is

4   whether the request bears some relation to the issues to be tried in Phase 2.

5   Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6   Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7   not linked to a single discrete product or even multiple products. Instead, the issues

8   to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9   Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20). Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14     • "engaged in a pattern of stealing and using [Mattel's] property and trade

15       secrets," (*Id.*,   ¶ 1);

16     • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17       dolls] on numerous occasions," including by hiring away three key Mattel

18       employees in Mexico who "stole virtually every category of Mattel's

19       sensitive and trade secret business plans and information for the Mexican

20       market as well as a significant quantity of sensitive and trade secrete

21       information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22     • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23       advertising and strategy, not only for Canada, but the United States and the

24       rest of the world," (*Id.*, ¶ 70);

25   //

26

27     [2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it
would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
28     Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-4-
             ORDER NO. 6
         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _13_

PAGE _182_

1  • "took from Mattel documents containing proprietary advertising, project,
2  sales, customer and strategy information for not only Canada, but for the
3  United States," (*Id.*, ¶ 4);

4  • "engaged in an ongoing, widespread pattern of . . . inducing Mattel
5  employees to steal Mattel's confidential information or other property and
6  take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7  • stole "Mattel's plans, strategy and business information for the Mexican
8  market and materials related to Mattel's worldwide business strategies," (*Id.*,
9  ¶ 37);

10  • "enticed [Mattel's employees] to steal Mattel's most sensitive business
11  planning materials, and then hired them to assist in establishing and running
12  MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13  • "directed [certain Mattel employees'] to steal virtually all Mattel confidential
14  and proprietary information that they could access and bring it with them to
15  MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor
16  would need to enter the Mexican market, and to unlawfully compete with
17  Mattel in Mexico, in the United States and elsewhere," such as "global
18  internal future line lists that detailed anticipated future products; production
19  and shipping costs for Mattel products, daily sales data for Mattel products;
20  customer data; sales estimates and projections; marketing projections;
21  documents analyzing changes in sales performance from 2003 to 2004;
22  budgets for advertising and promotional expenses; strategic research
23  reflecting consumer responses to products in development; media plans;
24  consumer comments regarding existing Mattel products customer discounts
25  and terms of sale; customer inventory level data; assessments of promotional
26  campaign success; market size historical data and projections; marketing
27  plans and strategies, merchandising plans; retail pricing and marketing
28  strategies; and other similar materials," (*Id.*, ¶ 48);

EXHIBIT *13*

PAGE *183*

1      • "targeted certain Mattel employees who have broad access to Mattel

2         proprietary information in an effort to induce and encourage them to join

3         MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4         Mattel confidential information and trade secrets," including by "promising

5         these employees salaries 25 percent or more higher than they earn at Mattel

6         and stating to them that they should not be concerned by legal action taken

7         by Mattel to protect its trade secrets and its rights because such claims are

8         hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9      • "hired directly from Mattel's United States operations at least 25 employees,

10        from Senior Vice-President level to lower level employees," and that some of

11        these individuals misappropriated "Mattel confidential and proprietary

12        information, including Mattel's strategic plans; business operations; methods

13        and systems; marketing and advertising strategies and plans; future product

14        lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15         In light of the foregoing allegations, the documents requested by Mattel fall

16   within the purview of permissible discovery allowed by Federal Rule of Civil

17   Procedure 26.  Rule 26 permits the discovery of information that is "relevant to the

18   claim or defense of any party." Fed.R.Civ.P. 26(b)(1).  Accordingly, Mattel's

19   request for "all personnel and vendor files" of individuals who either (1) work at

20   MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21   of MGA Entertainment and used to work with or had contact with Mattel appears to

22   be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23         **3.    Privacy Rights Objection**

24         MGA Entertainment's final argument is that the records sought by Mattel

25   (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26   be produced under *California law* unless the individuals affected are given advance

27   notice of the requests and afforded an opportunity to object to the production.

28   (MGA's Opposition, pp. 10 – 14).  Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-6-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 184

1  the California Constitution and California Code of Civil Procedure § 1985.3
2  together constitute a fundamental public policy in California that do not allow
3  MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each
4  of these contentions is unavailing.
5      As an initial matter, a protective order has been entered in this case. (Mattel
6  Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA
7  Entertainment, because courts within the Ninth Circuit have repeatedly held that,
8  where such an order has been (or will be) entered, state-based privacy laws do not
9  bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,
10  2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of
11  personnel files and stating "[a]ny other privacy concerns defendant may have
12  should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,
13  *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to
14  protect an employee's privacy interest in his personnel file is to obtain, either by
15  stipulation or motion, a properly crafted protective order under Rule 26(c)");
16  *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.
17  30, 2007) ("The court has already analyzed these non-party privacy rights, and the
18  protective order should serve to remedy any concern in this regard."); *Walton v. K-
19  Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the
20  employees' privacy interests, documents shall be produced pursuant to an
21  attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &
22  Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering
23  production of employee information, pursuant to a protective order, despite privacy
24  claims under California law).
25      Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13
PAGE 185

1  held that "personnel files are discoverable in federal question cases . . . despite

2  claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3  1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4  Cir. 1975)), and this includes any claim of privilege resulting from California Code

5  of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6  Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7  Procedure § 1985.3 do not apply in federal question cases because "federal law

8  applies in terms of substantive, privilege and discovery law."]). Accordingly, the

9  privacy concerns raised by MGA Entertainment have no applicability here.

10  Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master finds that the requested documents

12  should exclude "health care specific information," because Mattel's counsel

13  conceded that Mattel is not seeking such information in its discussions with counsel

14  for MGA Entertainment. (*See* Decl. of Amman Khan, Ex. G, 2). Counsel for

15  Mattel restated this position at the hearing.

16  The Discovery Master further orders MGA Entertainment to redact any

17  social security numbers, tax identification numbers, dates of birth, indication of

18  sexual orientation, bank account numbers, and checking account numbers that may

19  be included within the requested documents prior to production, as Mattel has not

20  made a showing at this time that such discrete personal information is reasonably

21  calculated to lead to the discovery of admissible evidence.

22  **D.  Conclusion**

23  The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25  [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)

26  and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

27  [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.

28  Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

EXHIBIT _13_

PAGE _186_

1  2 claims, and are not protected from disclosure on the grounds of third-party

2  privacy rights or any other ground cited by MGA Entertainment.

3  **III.  MATTEL'S REQUEST FOR SANCTIONS**

4      In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5  fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6  *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7  however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8  stage that could have been raised in the moving papers.[7] This rule is routinely

9  adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms*, 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox*, 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16      Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.  MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19      **REQUEST NOS. 526 AND 528**

20      In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

---

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 187

## A.    The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**: All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**: All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

## B.    Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

EXHIBIT 13

PAGE 188

1  privileged.

2                    **1.     Overbreadth Objection**

3         Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4  RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5  SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6  its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7  details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8  de Mexico and suggests that Mattel communicated with the authorities regarding

9  their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10  alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11  that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12  (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13  regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14  75).

15         Mattel has also acknowledged that at least some of the documents responsive

16  to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17  in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18  *and some of those materials reflected communications between Mattel and law*

19  *enforcement.*" (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20  Decl."], ¶ 16 (emphasis added).)

21         Given Mattel's allegations regarding the theft of its trade secrets, its

22  communications with law enforcement officials, and the overlap between the civil

23  and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24  threshold matter, MGA has made a prima facie case that the Requests seeking the

25  documents Mattel provided to law enforcement officials, as well as Mattel's

26  communications with those officials, are reasonably calculated to lead to the

27  discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28         Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    - 11 -                    ORDER NO. 6
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _13_

PAGE _189_

1    nonetheless argues in its Opposition that Request No. 526 is overbroad because

2    Mattel's civil claims are wholly separate and independent from any criminal relief

3    it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4    MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point. The issue is not whether Mattel's

6    communications with law enforcement officials constitute the basis of Mattel's

7    claims. Rather, the issue is whether those communications are reasonably

8    calculated to lead to the discovery of admissible evidence regarding what Mattel

9    itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10   secret misappropriation. Mattel does not dispute that its subsequent

11   communications with law enforcement involve the same conduct that is the basis of

12   the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13   concurrently seeking relief through the criminal justice system and this civil action

14   based on the same documents allegedly stolen by MGA and confirmed that fact

15   during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16   judicial file in the criminal proceedings in Mexico" are among the "documents

17   *relating to Mattel's Counterclaims.*"] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19   disclose what Mattel told the investigating authorities about what information was

20   taken, the people who have knowledge of the thefts, and any supposed criminal

21   intent on the part of MGA or the former Mattel employees who supposedly took the

22   information. Given this admitted overlap in subject matter, the communications

23   between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25   plaintiff permitted discovery of materials provided to law enforcement authorities

26   concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 18/90

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14        Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26        **2.      Work Product Objection**

27        Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those

EXHIBIT 13

PAGE 191

1    agencies, would violate the attorney work-product doctrine by revealing counsel's

2    strategy and mental processes. (Mattel Opposition, p. 6).

3        To qualify for work-product protection under Federal Rule Civil Procedure

4    26, documents must meet two requirements: (1) they must be "prepared in

5    anticipation of litigation or for trial," and (2) they must be prepared "by or for

6    another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7    *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the

8    doctrine is applicable to a particular document, "the court must consider the

9    *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10   party's efforts in *preparing for litigation*.'" *Johnson v. Finn*, 2007 WL 3232253,

11   *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree

12   that the purpose of the work product doctrine is "to establish a zone of privacy for

13   *strategic litigation planning*." (Opposition, p. 6 quoting *United States v. Adlman*,

14   68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15        Here, Mattel does not demonstrate any connection between its

16   communications with law enforcement officials, on the one hand, and its litigation

17   strategy in the present civil case, on the other hand. Rather, it appears that Mattel's

18   primary purpose in communicating with, and disclosing the disputed documents to,

19   various law enforcement officials was to instigate criminal prosecutions by

20   prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent

21   the selection of particular documents by Mattel's counsel reveals counsel's

22   impressions and mental processes, the window into counsel's thinking relates to

23   counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24   There is no showing that counsel's thinking regarding how best to achieve *that*

25   purpose would also reveal counsel's strategies and impressions in any matter

26   related to the current civil litigation. In short, Mattel has made an insufficient

27   showing that the communications and documents at issue constitute work product

28   in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

EXHIBIT _13_

PAGE _192_

1    Further, even if the work-product doctrine somehow applied to Mattel's

2    communications with law enforcement agencies, Mattel waived it, in at least two

3    ways. First, Mattel admits that it has already produced some of those

4    communications to MGA. (See Alger Decl., ¶ 16.)

5    Second, to the extent Mattel's communications with law enforcement

6    officials disclose its conclusions and theories to law enforcement officials, such a

7    disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8    is waived when material is "voluntarily disclosed such that it may become readily

9    accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10   *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11   the courts have specifically held that "disclosing information to governmental

12   authorities in the hope that they will attack an adversary . . . cannot be said to be

13   done 'in the pursuit of . . . trial preparation.' Thus, disclosure in such a situation

14   results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15   *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16   provides information to law enforcement agencies and "harbor[s] the hope, even if

17   un-communicated, that its disclosures would encourage the Government to

18   prosecute" a third party, this disclosure constitutes waiver because it "substantially

19   increase[s] the potential that the information gained during the investigation would

20   be disclosed to [the] adversary." *Id.*

21   Given that Mattel disclosed the documents to these entities with the intention

22   of triggering criminal prosecution of MGA and its representatives, the intended

23   effect of Mattel's disclosure is to make those documents available to MGA under

24   the applicable rules of criminal procedure, which would entitle MGA to the

25   documentary evidence on which any alleged criminal liability is based. Mattel

26   itself concedes this fact when it acknowledges that MGA can request disclosure of

27   the information provided to law enforcement officials "in accordance with the

28   applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _13_

PAGE _193_

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5              **3.    Privilege Objections**

6              Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11             That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16             However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24             Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 194

1   *liability* under California tort law and federal anti-trust law, respectively – not that

2   such parties are immune from *discovery* in civil suits.

3                              a.      **The Litigation Privilege**

4          The California Supreme Court described the scope of the litigation privilege

5   in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6   According to Mattel, *Hagberg* stands for the proposition that a communication to

7   law enforcement officials about suspected criminal activity "enjoys an unqualified

8   privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9   addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative.  *Id.*

16         The other California cases cited by Mattel are in accord.  See *Jacob B. v.

17  County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal. App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

27                              b.      **The *Noerr-Penington* Doctrine**

28         "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -
                                            ORDER NO. 6
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *13*

PAGE *195*

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

12                    **c.   Application To The Present Case**

13         Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials. If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits. In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

20         **C.   Conclusion**

21         The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26

27  ---
    [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of
    communications made to government agencies regarding suspected criminal activity. However, in that case (which
    arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those

28  communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

## V.  DISPOSITION

1.    The Mattel Motion is **GRANTED,** with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.    Mattel's request for sanctions is **DENIED.**

3.    The MGA Motion is **GRANTED**.

4.    All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.    All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.    The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.    All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:        March 13, 2009

By:_____ /s/ Robert C. O'Brien_____
                    ROBERT C. O'BRIEN
                    Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13

PAGE 197

**Exhibit 14**

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
RIVERSIDE                  RIVERSIDE
BY_____     BY_____

1  | Hon. Edward A. Infante (Ret.)
2  | JAMS
   | Two Embarcadero Center
3  | Suite 1500
   | San Francisco, California 94111
4  | Telephone:   (415) 774-2611
   | Facsimile:   (415) 982-5287
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS AND<br>INTERROGATORY RESPONSES BY<br>MGA** |

## I.  INTRODUCTION

On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

submission pending the parties' submission of a proposed protective order, which was received

EXHIBIT _14_

PAGE _198_

1  on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

3                              II. BACKGROUND

4      A. Requests for Documents

5      In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6  became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7  categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8  court granted because of the short amount of time provided for compliance with the subpoena.

9  The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12      In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14      In September of 2006, MGA made a supplemental production of documents. On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18      Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents. First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker. According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented. Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT _14_

PAGE _199_

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and
2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to
3   show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs
4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's
5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of
6   what is or is not being withheld. Mattel also contends that MGA's objections based upon its
7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the
8   protective order in place. In addition, Mattel contends that MGA's objection to producing
9   documents relating to activities or conduct in foreign countries is wholly improper because those
10  documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether
12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work
13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for
14  discovery purposes. Mattel contends that the works created by Bryant during his Mattel
15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in
16  a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs
18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may
19  be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to
20  explore whether such works and the profits from Bratz dolls other than the "first generation"
21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability
22  and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is
23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary
24  information as well as MGA's unfair competition claims.

25  _____

26       [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
    to compel Bryant to produce documents.
27

28  Bryant v. Mattel, Inc.,                                                                                3
    CV-04-09049 SGL (RNBx)


EXHIBIT _14_

PAGE _200_

1    Mattel also asserts that MGA is improperly withholding documents relating to products,
2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that
3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by
4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the
5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just
7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant
8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;
9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual
10   damages; and (3) payments may show when and what trade secret information Bryant and other
11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel
13   contends that all agreements between Bryant and MGA are relevant, not just the original
14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all
15   documents relating to MGA and Bryant's alleged joint defense agreement because such
16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written
18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such
19   information may reveal relevant information about the date of creation of Bryant's Bratz
20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has
22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents
23   that it has produced all responsive and relevant documents that it was able to locate in response to
24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even
25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this
26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

     4

EXHIBIT 14

PAGE 201

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,
2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed
3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that
4   have been released on the market. In addition, MGA represents that it has agreed to produce
5   documents relevant to Bratz or Prayer Angels that it received from Union Bank. More
6   specifically, MGA represents that it agreed to review and produce documents provided to it by
7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for
8   Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.
9   Therefore, MGA views the motion as unnecessary.

10      MGA next contends that Mattel's motion should be denied for the following additional
11   reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for
12   unreleased products. MGA asserts that its product design documents for its unreleased toy
13   concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that
14   designs and drawings for products currently under development, over six years after Bryant first
15   created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that
16   documents relating to unreleased products are ordered produced, MGA requests a protective order
17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically
18   than the current protective order provides. In the alternative, MGA requests that any order
19   compelling production of documents relating to unreleased products should essentially be stayed
20   until after MGA's products are publicly released.

21      Second, MGA contends that Mattel is not entitled to information concerning Bryant's
22   attorneys' fees because the information is privileged. Furthermore, MGA contends that the
23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24
25
26
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _14_

PAGE _201_

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14  was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25

---

26     [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the
request.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT _14_

PAGE _202_

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created. MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10  however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections. MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18                              III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    7



EXHIBIT _14_

PAGE _203_

1  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5  26(b)(2).

6      B.  Document Requests

7          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9      The requests above seek discoverable information regarding the origins of Bratz and

10 Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11 response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12 "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13 and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14 14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15 products and documents from MGA Hong Kong.

16     As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17 its production to "relevant and responsive non-objectionable documents" or documents

18 "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19 might be excluding documents that are responsive to the request based upon its unilateral

20 determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21 document requests ordered herein without these restrictions.

22                          Design Documents for Unreleased Products

23     MGA's design documents for unreleased products are relevant to Mattel's claims and

24 defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25 parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26 design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                        8

EXHIBIT 14

PAGE 204

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2   has been approved and entered as an order of the court.  MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                                   Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15                2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16                   61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28                                                                                    9
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 14

PAGE 205

1        ### 3. MGA's Payments to Bryant (Nos.43, 45)

2        MGA represents that it has already agreed to produce documents related to Bratz, without

3    limiting its production to "first generation" Bratz.  MGA's motion is at 13:7-14:3.  Nevertheless,

4    Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5    motion is granted with respect to request nos. 43 and 45.

6        ### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7        MGA represents that it has already agreed to produce non-privileged documents

8    responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9    relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10    indemnity agreements between MGA and Bryant.

11        Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12    Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13    responsive documents withheld on the basis of a privilege must be properly identified in a

14    privilege log.

15        ### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16        41,

17        In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18    and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19    anticipates that these documents could provide evidence relating to the conception date for Bratz.

20        Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21    date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22    alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23    arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24    Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25    _____

26        [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and
infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority

27    that prohibits Mattel's conduct.

28    Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _14_

PAGE _206_

1 | that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing

2 | documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3 | protective order that prohibits the use of any documents or testimony for any purpose other than

4 | the arbitration. MGA, however, has not provided any evidence of the protective order.

5 | Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6 |       6. Documents Regarding Date-Testing (Request No. 92)

7 |      Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8 | from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9 | testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10 | and including without limitation all results and reports relating thereto." MGA contends that the

11 | request is premature, and should proceed in the course of expert discovery.

12 |      The request calls for relevant discovery and there is no basis for delaying production of

13 | responsive documents, other than expert reports. The timing of expert reports is governed by

14 | Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

15 |      C. Interrogatories

16 |      Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17 | MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18 | responses to interrogatories are due thirty days after service. In this case, Mattel served its

19 | interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district

20 | court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21 | served. The district court lifted the stay on May 17, 2006.

22

23

24

25

26 | [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

**EXHIBIT 14**

**PAGE 267**

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses
3    will be treated as timely in order to preserve any valid objections MGA may have asserted.
4        Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7    before December 31, 2001, including a description of each person's role and the start and end
8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did
9    provide the names of five individuals.
10       The interrogatory clearly seeks information relevant to the claims at issue.  MGA's
11   objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.
12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13   for confidential, proprietary or commercially sensitive information, or seeks information
14   protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as
15   it fails to provide the description of each person's role and the start and end dates of each person's
16   involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.
18       Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19   embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for
20   the reasons previously discussed in connection with Interrogatory No. 5.
21       Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22   December 31, 2001.  In response, MGA asserted numerous objections and did not provide any
23   substantive information.
24       MGA's objections are without merit.  The interrogatory clearly seeks information relevant
25   to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,
26   compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is
27
28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                              12

EXHIBIT 14

PAGE 208

1    unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2    seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3    provide a complete response to Interrogatory No. 7.

4          Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5    ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6    discussed in connection with Interrogatory No. 7.

7          Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8    or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9    or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11         The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14         Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18   objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20         Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21   potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24         Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                     13

EXHIBIT 14
PAGE 209

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number. In response, MGA asserted numerous

3  boiler-plate objections.

4       Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7  IV. CONCLUSION

8       For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted. MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order. Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's

12  motion to compel interrogatory answers is also granted. MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May  5, 2007

22                                   HON. EDWARD A. INFANTE (Ret.)

23                                     Discovery Master

24

25

26

27

28

EXHIBIT 14

PAGE 210

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT _14_

PAGE _211_