# Exhibit 15

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                                Date:  July 2, 2007

Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                              Theresa Lanza
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER            ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                           John B. Quinn
                                        Brett Dylan Proctor
                                        Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:    MINUTE ORDER



ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

        As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                         Initials of Deputy Clerk _Jh_
CIVIL -- GEN                          1                 Time: 01/15

EXHIBIT 15

PAGE 2/2

(608)

07/c2/c7

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _15_
PAGE _2/3_

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

EXHIBIT 15

PAGE 2/4

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4) MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

Initials of Deputy Clerk __jh_____
Time: 01/15
EXHIBIT _15_

PAGE _2/5_

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _15_

PAGE _2/6_

# Exhibit 16

1 Robert C. O'Brien (SBN 154372)
  ARENT FOX LLP
2 555 West Fifth Street, 48th Floor
  Los Angeles, CA 90013-1065
3 Telephone: 213.629.7400
  Facsimile: 213.629.7401
4 obrien.robert@arentfox.com

5 Discovery Master

6

7

8     UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA

10       EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 12    Plaintiff, | |
| 13    v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 14 MATTEL, INC., a Delaware<br>  corporation, | **PHASE 2 DISCOVERY MATTER** |
| 15    Defendant. | **ORDER NO. 17, REGARDING:** |
| 16 | |
| 17 |  **(1) THE MGA PARTIES' MOTION**<br> **FOR A PROTECTIVE ORDER**<br> **STAYING DISCOVERY ON**<br> **TRADE DRESS CLAIMS;** |
| 18 | |
| 19 | |
| 20 |  **(2) MOTION OF MATTEL, INC. TO**<br> **ENFORCE PRIOR COURT ORDER**<br> **AND TO COMPEL RESPONSES TO**<br> **INTERROGATORIES; and** |
| 21 | |
| 22 | |
| 23 | |
| 24 CONSOLIDATED WITH<br>  MATTEL, INC. v. BRYANT and |  **(3)** *EX PARTE* **APPLICATION**<br> **FILED BY MATTEL, INC. FOR AN**<br> **ORDER TO SHOW CAUSE RE:** |
| 25 MGA ENTERTAINMENT, INC. v.<br>  MATTEL, INC. |  **MGA ENTERTAINMENT, INC.'S** |
| 26 |  **FAILURE TO COMPLY WITH**<br> **COURT ORDER** |
| 27 | |
| 28 | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

            ORDER NO. 17
        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _217_

1      This Order sets forth the Discovery Master's ruling on the following

2  discovery matters: (1) the motion for a protective order staying discovery on trade

3  dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,

4  MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")

5  ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.

6  ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")

7  to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental

8  Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and

9  (3) the *ex parte* application filed by Mattel for an order to show cause regarding

10  MGA's failure to comply with a prior court order ("Application") [Docket No.

11  4997] (collectively, the "Motions").

12      The Motions came on regularly for hearing before the Discovery Master on

13  April 14, 2009. All interested parties were represented by counsel and afforded the

14  opportunity to present oral argument on the Motions. The Discovery Master,

15  having considered the papers filed in support of and in opposition to the Motions,

16  and having heard oral argument, rules as set forth below.

17  **I.    THE TRADE DRESS DISCOVERY AT ISSUE**

18      All of the Motions concern discovery related to MGA's trade dress claims.

19      **A.    Interrogatory Nos. 43 And 44**

20      On October 23, 2007, Mattel served its Amended Fourth Set of

21  Interrogatories on MGA, including Interrogatory Nos. 43 and 44. (Declaration of

22  Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at

23  pp. 7 – 8). These interrogatories ask MGA to identify, for each design, product

24  and packaging that MGA contends Mattel copied, the date of conception and the

25  date it was first fixed in a tangible medium:

26      • Interrogatory No. 43: "For each concept, design, product, product

27          packaging or other matter that YOU contend MATTEL copied or

28          infringed, including but not limited to those identified in MGA's

EXHIBIT _6_

PAGE _218_

1     Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2     Unfair Competition, Response To Interrogatory No. 2 (and any

3     Supplemental Responses to such Interrogatory), state the date that each

4     such concept, design, product, product packaging or other matter was

5     conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6     DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,

7     Ex. 1 at p. 7).

8     • Interrogatory No. 44: "For each concept, design, product, product

9     packaging or other matter that YOU contend MATTEL copied or

10     infringed, including but not limited to those identified in MGA's

11     Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12     Unfair Competition, Response To Interrogatory No. 2 (and any

13     Supplemental Responses to such Interrogatory), state the date that each

14     such concept, design, product, product packaging or other matter was

15     first fixed in any tangible medium of expression (if ever), and

16     IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17     that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and

18     8).

19     MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20    November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21    supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On

22    December 20, 2007, Mattel moved to compel further responses to the

23    interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's

24    motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,

25    MGA served its second and third set of supplemental responses to Interrogatory

26    Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27     On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28    February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 219

1  Mattel's motion to compel, finding that the "requested information is relevant to

2  Mattel's defense against the MGA [P]arties' claims that their products have been

3  copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –

4  12). The prior discovery master further ruled that the supplement responses

5  provided by MGA were deficient, reasoning as follows:

6          Although the MGA [P]arties served supplemental

7          responses after filing their opposition brief, the

8          supplemental responses do not include the requested

9          information. The MGA [P]arties have [also] failed to

10         establish that the interrogatories are unduly burdensome.

11  (*Id.*, Ex. 8 at p. 12). The prior discovery master then ordered MGA to

12  supplement its responses "no later than February 26, 2008." (*Id.*, Ex. 8

13  at p. 22).

14         On March 3, 2008, seven days after the deadline specified in the prior

15  discovery master's order, MGA supplemented its responses to Interrogatory Nos.

16  43 and 44 for a fourth time, objecting that the discovery in question related to

17  Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on

18  Phase 2 discovery on February 4, 2008. (*Id.*, Ex. 9 at pp. 7 – 16). On April 22,

19  2008, the prior discovery master granted the MGA Parties' motion for clarification

20  concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation

21  to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby

22  stayed until further order of the district court lifting the stay on Phase 2 discovery."

23  (*Id.*, Ex 10 at p. 3).

24         **B.     Supplemental Interrogatory Nos. 51 – 55 And 64**

25         On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55

26  and 64 on MGA. (*Id.*, Ex 11 at p. 12 – 14 and 16). These interrogatories seek

27  information regarding MGA's allegations that Mattel copied, infringed or diluted

28  MGA's products:

EXHIBIT 16

PAGE 220

1   • Supplemental Interrogatory No. 51: "For each concept, design,
2      product, product packaging or other matter that YOU contend
3      MATTEL has copied, infringed, or diluted, including but not limited to
4      those identified in MGA's Responses to Mattel, Inc.'s First Set of
5      Interrogatories Re Claims of Unfair Competition, Response To
6      Interrogatory No. 2 (and any Supplemental Responses to such
7      Interrogatory), describe, fully and separately, each and every concept,
8      design, product, product packaging or other matter of or by MATTEL
9      that YOU contend is a copy of, infringes or dilutes YOUR alleged
10     concept(s), design(s), product(s), product packaging or other matter.
11     Your answer should describe the Mattel concept, design, product,
12     product packaging or other matter with specificity and in detail
13     (including without limitation by product name, product number, SKU,
14     or bar code number), and specify those elements or attributes of
15     YOUR claimed concept, design, product, product packaging or other
16     matter that YOU contend were copied, infringed or diluted by
17     MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).

18   • Supplemental Interrogatory No. 52: "For each trade dress that YOU
19     contend MATTEL copied, infringed, or diluted, separately IDENTIFY
20     each product sold by YOU or YOUR licensees that incorporates such
21     trade dress and, for each such product, separately state (a) the number
22     of units, by year, of each such product sold by YOU or YOUR
23     licensees; (b) revenue received by YOU from such SALES of each
24     such product; (c) all costs YOU have incurred in connection with each
25     product; including but not limited to YOUR cost of good sold, and (D)
26     YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p.
27     13).

28

ARENT FOX-LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

EXHIBIT _16_

PAGE _221_

1    • Supplemental Interrogatory No. 53: "For each MATTEL concept,

2       design, product, product packaging or other matter that YOU contend

3       is likely to cause confusion, to cause mistake, or to deceive as to

4       affiliation, connection, or association, or as to origin, sponsorship, or

5       approval, separately state all facts that support YOUR contention of

6       such, including but not limited to all facts that support YOUR

7       contention, if YOU so contend, that any of the SLEEKCRAFT

8       FACTORS weighs against MATTEL, and IDENTIFY all PERSONS

9       with knowledge of such facts, and all DOCUMENTS that REFER OR

10      RELATE TO such facts." (*Id.*).

11   • Supplemental Interrogatory No. 54: "For each concept, design,

12      product, product packaging or other matter that YOU contend

13      MATTEL copied, infringed or diluted, state all facts that support

14      YOUR contention, if YOU so contend, that such copying or

15      infringement was intentional or willful, and IDENTIFY all PERSONS

16      with knowledge of such facts, and all DOCUMENTS that REFER OR

17      RELATE TO such facts." (*Id.*).

18   • Supplemental Interrogatory No. 55: "State all facts which support the

19      allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL

20      has "caused and continues to cause blurring and dilution of the

21      distinctive look of MGA's products and trade dress," and IDENTIFY

22      all PERSONS with knowledge of such facts, and all DOCUMENTS

23      that REFER OR RELATE TO such facts." (*Id.*, Ex. 11 at p. 14).

24   • Supplemental Interrogatory No. 64: "To the extent YOU have not

25      previously disclosed such information in a prior interrogatory response

26      YOU provided to Mattel, state all facts which support YOUR claims

27      against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

28      knowledge of such facts, and all DOCUMENTS that REFER OR

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

EXHIBIT *16*

PAGE *222*

1    RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2    MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3    February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4    therefore stayed. (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5    **C. The Court Lifts The Stay On Phase 2 Discovery**

6    On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7    (Watson Decl., Ex. 13 at p. 2). Mattel's counsel subsequently wrote to counsel for

8    MGA on January 20, 2009 to ask when MGA planned to serve the required

9    responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10   previously ordered answered. (*Id.*, Ex. 14).

11   Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12   parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64. (*Id.*,

13   Ex. 15 at pp. 2 – 3). Counsel for the parties then spoke on February 6, 2009

14   regarding Mattel's eight trade dress interrogatories. (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15   During the conference, MGA stated, that it would provide responses to

16   Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17   "not later than 30 days after the Court decides the trade dress summary judgment

18   motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19   On February 18, 2009, the parties met and conferred regarding Mattel's

20   contemplated summary judgment motion concerning MGA's trade dress claims and

21   again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22   Ex. 23 at p. 1). The next day, MGA informed Mattel that it would not agree to

23   provide further responses to the interrogatories. (*Id.*). Rather, MGA said that it

24   planned to request a protective order to stay its obligation to respond and that it

25   would only provide responses: (1) if their planned protective order was denied; or

26   (2) if the protective order is granted, 21 days after the Court decides Mattel's

27   summary judgment motion, to the extent any trade dress claims remain after that

28   decision. (*Id.*).

EXHIBIT 16
PAGE 223

1   On February 26, 2009, the MGA Parties filed the Protective Order Motion.
2   Eight days later, Mattel filed its Motion To Compel. Mattel filed the Application
3   on March 10, 2009.

## II.   THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER

5   The Discovery Master first addresses the MGA Parties' Protective Order
6   Motion.

### A.   The Relief Sought By The MGA Parties

8   The MGA Parties "seek a stay to defer responding to eight specific
9   interrogatories relating to MGA's trade dress claims until 21 days after the Court
10  rules on Mattel's [contemplated] summary judgment motion." (Motion for a
11  Protective Order, p. 5). "The MGA Parties also seek a stay of all discovery relating
12  to MGA's trade dress claims for the same period." (*Id.*).

### B.   Mattel's Opposition

14  Mattel opposes the Protective Order Motion on five grounds. First, Mattel
15  argues that the motion is inconsistent with the Court's January 6, 2009 order lifting
16  the stay on Phase 2 discovery. (Opposition, pp. 12 – 13). Second, Mattel argues
17  that any request to stay discovery is not properly directed to the Discovery Master.
18  (*Id.*, p. 13). Third, Mattel argues that the request for a stay lacks merit, since "it is
19  commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13
20  – 14). Fourth, Mattel argues that the request for a stay is unworkable since the
21  trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –
22  15). Finally, Mattel argues that the stay would unduly prejudice it and that there is
23  no corresponding undue burden placed on the MGA Parties. (*Id.*, pp. 16 – 20).

### C.   Legal Standard

25  In general, parties may obtain discovery regarding any matter, not privileged,
26  that is relevant to the claim or defense of any party. (Fed. Rule Civ. P. 26(b)(1)).
27  The motion brought by the MGA Parties to stay discovery is made pursuant to
28  Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *16*

PAGE *224*

1  Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2  protect a party or person from annoyance, embarrassment, oppression, or undue

3  burden or expense." (Fed. Rule Civ. P. 26(c)).

4        A district court is afforded considerable discretion in deciding whether to

5  issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6  130 (10th Cir. 1990). While it is within a district court's discretion to stay

7  discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8  F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9  *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10  June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11  discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12  296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13  discovery even though dispositive motions are pending."]).

14        The underlying principle in determining whether to grant or deny a stay is

15  that "[t]he right to proceed in court should not be denied except under the most

16  extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio*

17  *Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of

18  the normal proceedings of a court should be the exception rather than the rule.

19        Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20  may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21  689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22  result of the ruling thereon; where the facts sought through uncompleted discovery

23  would not affect the resolution of the motion, or where discovery on all issues of

24  the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25  298).

26        In deciding whether to stay discovery pending the resolution of a dispositive

27  motion, federal courts in California conduct the following inquiry: (1) Is the

28  pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -                              ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 225

1   the issue at which discovery is directed," and, if so (2) can the pending dispositive

2   motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*

3   *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)). If the court

4   answers both questions in the affirmative, it may then analyze other factors,

5   including the likelihood that the dispositive motion will be granted, (*id.*), and/or

6   "(1) plaintiff's interests in proceeding expeditiously with the civil action and the

7   potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the

8   convenience to the court; (4) the interests of persons not parties to the civil

9   litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,

10   2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11           **D.     Analysis**

12           The MGA Parties' primary argument in favor of the requested stay is that, in

13   the event Mattel's contemplated motion for summary judgment is granted, "the

14   Trade Dress Interrogatories may prove unnecessary or may be substantially

15   narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).

16   The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when

17   a dispositive motion, such as a summary judgment motion, 'would obviate the need

18   for discovery.'" (*Id.*, p. 11 (citation omitted)).

19           The Discovery Master finds this rationale unpersuasive for the following

20   reasons.

21           **1.     The Discovery Master Does Not Have the Power To Issue**

22                   **The Requested Stay**

23           First, the Discovery Master does not have authority to render a ruling that

24   could directly override the Court's scheduling order and delay the Phase 2 trial.

25   While the Discovery Master has been appointed to resolve "any and all . . .

26   discovery disputes in this case,"[1] and may issue orders that indirectly impact the

---

[1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master Order) and the Order appointing the current Discovery Master dated January 6, 2009.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

1   scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2   is nothing in the order appointing the Discovery Master that authorizes him to

3   override the scheduling order directly.[3]   Indeed, the power to control scheduling in

4   this matter is vested with the Court, as evidenced by the scheduling order issued by

5   it on February, 11, 2009.[4]   (Order dated February 11, 2009, p. 2).  Because the

6   Court, not the Discovery Master, established the applicable discovery cut-off and

7   trial dates for Phase 2, (id.), the Discovery Master cannot issue a stay that overrides

8   that order.

9              **2.    The Court Previously Indicated That the Parties Should**

10                 **Proceed With Phase 2 Discovery.**

11         Second, the Court advised the Discovery Master on February 11, 2009 that

12   "[t]here is no stay on discovery.  Period." (Reporter's Transcript of Proceedings,

13   February 11, 2009, p. 97:15).  It further instructed the Discovery Master "in no

14   uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15   (id., p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16   precluding *any* discovery that is properly sought for the trial that is scheduled," (id.,

17   p. 101:22:24 [emphasis added]).  While these statements admittedly arose in the

18   context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19   nevertheless believes that they are instructive of the Court's view that any request

20

21   [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's
22   ruling might impact upon the Court's scheduling order does not relieve the parties of following
     this procedure.")

23   [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is
24   clear, because the requested stay is of an indefinite duration.  Although the MGA Parties request a
     stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,
25   (Protective Order Motion, p. 5), no such motion is pending before the Court.  Nor is there a
     hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be
26   able to issue a ruling disposing of it.

27   [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the
28   current Discovery Master.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                              - 10 -          ORDER NO. 17
                                                                 [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 227

1 │ to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2 │ extraordinary circumstances not present here.

3 │ **3.     There Is No Dispositive Motion Pending**

4 │ Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5 │ because no dispositive motion is pending before the Court. The MGA Parties

6 │ concede in their moving papers and again in their Reply that Mattel has merely

7 │ represented that it will file a summary judgment motion at some point in the future.

8 │ (Protective Order Motion, p. 4; Reply, p. 4). In the absence of a *pending*

9 │ dispositive motion, there is no basis for granting the requested stay.[5]

10 │ **4.     Mattel's Contemplated Summary Judgment Motion Will**

11 │ **Not Dispose Of MGA's Trade Dress Claims**

12 │ Even assuming a dispositive motion had been filed with the Court, the MGA

13 │

14 │ [5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case,
15 │ the party seeking the discovery stay was the party who had brought the pending dispositive
motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant
16 │ who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some
documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St.*
17 │ *Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to
dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,
18 │ alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern.*
19 │ *AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for
summary judgment, properly sought and obtained a protective order staying discovery
20 │ propounded on it by plaintiffs.]); *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on
discovery upheld in favor of party who raised immunity issue via a summary judgment motion];
21 │ *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant
who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the
22 │ MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend
23 │ to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the
MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary
24 │ judgment motion, which the MGA Parties believe should be denied, is resolved.
       Further, the five cases cited by the MGA Parties all involved situations where a dispositive
25 │ motion had already been filed with the Court. (*Id.*)
       Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage.
26 │ Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*,
27 │ 506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at
282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for
28 │ several years.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -                                           ORDER NO. 17
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _228_

1    Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2    of the entire case, or at least dispositive on the issue at which discovery is directed."

3    (*Qwest Communications Corp.*, 2007 WL 2288299, *2). Mattel's contemplated

4    summary judgment motion will not dispose of MGA's trade dress claims because it

5    is undisputed that MGA's trade dress claims "concern products and other matters

6    that will not be the subject of Mattel's contemplated motion." (Opposition, p. 15;

7    *see also* Reply p. 11 n.6).

8         The MGA Parties nevertheless argue in their Reply that "it would make far

9    more sense for MGA to compile responsive information once the summary

10   judgment motion is decided and the full scope of the trade dress claims is settled."

11   (Reply, p. 11 n. 6). Phrased differently, the MGA Parties argue not that the

12   summary judgment motion may moot all of the requested discovery, but only that,

13   if granted, it would narrow the scope of the trade dress discovery. Because

14   discovery will inevitably be required on certain portions of MGA's trade dress

15   claims, this is not a situation where the contemplated motion is potentially

16   dispositive of the issue at which the discovery is directed. Accordingly, the stay

17   requested by the MGA Parties can be denied for that reason alone.

18              **5.     Other Factors Also Weigh Against Issuing The Requested**

19                       **Stay**

20        Finally, many, if not all, of the other factors a court may consider in deciding

21   whether a stay is appropriate pending the resolution of a dispositive motion weigh

22   in favor of denying the requested stay.

23                  **a.     The Merits Of The Dispositive Motion**

24        As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25   of the additional factors a court may consider is whether the merits of the pending

26   dispositive motion make it likely that the motion will be granted. Although the

27   Discovery Master cannot perform such an analysis here (because no dispositive

28   motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _229_

1    Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2    (Protective Order Motion, p. 13). In light of this statement, the MGA Parties are

3    precluded from arguing that it is likely Mattel's motion will be granted in order to

4    justify their request for a stay. Accordingly, the Discover Master finds that – based

5    on the record presented – this factor weighs against issuing the requested stay.[6]

6                 **b.**     **Prejudice To Mattel**

7       Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8    delaying the ultimate resolution of the matter and increasing litigation costs. As

9    explained above, the stay requested by the MGA Parties is of an indefinite duration

10    and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11    after the stay is lifted. Moreover, Mattel could be forced to depose the same

12    witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13    trade dress claims and later with respect to those trade dress issues that remain

14    following the disposition of Mattel's contemplated summary judgment motion).

15    For these reasons, this factor weighs against staying the trade dress discovery.

16                 **c.**     **The MGA Parties Have Not Demonstrated They Will**

17                          **Suffer Any Undue Burden**

18       While the MGA Parties claim that it will "be extremely difficult, time-

19    consuming and costly" to respond to the eight trade dress interrogatories at issue,

20    (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21    have to be taken regardless of the outcome of Mattel's anticipated summary

22    judgment motion. Further, while it is possible that Mattel's contemplated summary

23    judgment motion, if granted, could simplify the issues for trial and reduce the costs

24    imposed on the MGA Parties, it is also possible that the resolution of the motion

25    will not have any bearing on the scope of the discovery needed in this case.

26    Regardless, a party is always burdened with costs when it voluntarily chooses to

27

28

---

[6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated
summary judgment motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                               - 13 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _230_

1   pursue a claim, whether the case ultimately is dismissed, summary judgment is
2   granted, the case is settled, or a trial occurs. If the MGA Parties wish to avoid these
3   costs in connection with MGA's trade dress claims, MGA can always dismiss them.
4   Because any hardship that MGA might face is one of its own making, any burden
5   imposed on it in having to respond to the discovery is justified. Accordingly, this
6   factor weighs against issuing the requested stay.

7               **d.   The Interests Of The Judiciary And The General**
8                         **Public**

9          The Court, using funds supplied by the general public, has already expended
10   a great deal of effort and resources in this matter, including conducting a lengthy
11   trial in Phase 1. The Court further issued a scheduling order that established a
12   specific trial date and discovery cut-off for Phase 2. Consequently, the general
13   interests of controlling the court's docket and the fair and speedy administration of
14   justice weigh heavily in favor of denying the requested stay.

15        **E.   Summary Of Ruling Regarding The Protective Order Motion**
16          For all of the foregoing reasons, the MGA Parties have failed to meet their
17   burden of demonstrating that good cause exists for issuance of a protective order
18   staying their obligation to respond to the subject discovery.

19   **III.   MATTEL'S MOTION TO COMPEL**
20          Having denied the Protective Order Motion, the Discovery Master now turns
21   to Mattel's Motion To Compel.

22        **A.   Interrogatory Nos. 43 and 44**
23               **1.   Orders Issued By The Prior Discovery Master**
24          As explained in Section I.A., above, this is not the first time that Mattel has
25   moved to compel responses to Interrogatory Nos. 43 and 44. The prior discovery
26   master ordered MGA to supplement its responses to these interrogatories as part of
27   his February 15, 2008 order ("February 15, 2008 Order"). (Watson Decl., Ex. 8 at
28   pp. 11 – 12). Seven days after the deadline specified in the February 15, 2008

EXHIBIT _16_

PAGE _231_

1    Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2    served objections stating that the discovery in question related to Phase 2 and had

3    been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4    7 – 16). After having been advised of the stay imposed by the Court on

5    February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6    on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7    obligation to supplement their responses . . . [was] stayed until further order of the

8    district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

9              **2.    The Relief Sought By Mattel**

10            Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11    44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12    requests that the Discovery Master enforce the February 15, 2008 Order and require

13    MGA to supplement its responses. (Motion To Compel, pp. 9 – 10).

14            **3.    MGA's Opposition**

15            In its Opposition, MGA relies on two grounds for refusing to provide

16    responses to Interrogatory Nos. 43 and 44. First, MGA argues that it is not in

17    violation of the prior discovery master's February 15, 2008 Order because that

18    order was subsequently stayed by the April 22, 2008 Order, which "did not include

19    any specific date, or time period, after the Phase 2 stay was lifted within which

20    MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21    9 and 11). Second, MGA argues that it has not refused to answer Interrogatory

22    Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23    either provide further responses following the denial of that motion or, in the event

24    the motion is granted, after the Court decides Mattel's contemplated summary

25    judgment motion. (*Id.*, pp. 11 – 12).

26            The Discovery Master does not find either of these arguments persuasive.

27              **a.    The April 22, 2008 Order**

28            While MGA is correct that the prior discovery master temporarily stayed the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -                                ORDER NO. 17
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT *16*

PAGE *232*

1  enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2  argument that it does not have any obligation to supplement the responses to

3  Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4  time within which MGA had to provide responses is not supported by the record.

5      As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6  supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7  February 15, 2008 Order returned. Indeed, the plain language of the prior

8  discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9  supplement their responses . . . are hereby stayed **until further order of the**

10 **district court lifting the stay on Phase 2 discovery.**" (Watson Decl., Ex. 10 at p.

11 3 (emphasis added)). Because the Court lifted the stay on Phase 2 discovery on

12 January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13 of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14     Further, MGA had, at most, eleven days following the lifting of the stay on

15 Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16 (Watson Decl., Ex. 8 at pp. 11 – 12 and 22). The prior discovery master's February

17 15, 2008 Order required MGA to provide its supplemental responses within eleven

18 days of the order (i.e., on February 26, 2008). (*Id.*, Ex. 8 at p. 22). Giving MGA

19 the benefit of the doubt and assuming that all eleven of those days remained at the

20 time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21 provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22 plus 2 additional days because January 17, 2009 falls on a Saturday). Because

23 more than three months have passed without a response, MGA has not complied

24 with the terms of the prior discovery master's February 15, 2008 Order.

25              b.    **MGA's Offer To Produce The Supplemental**

26                    **Responses Following The Disposition Of The**

27                    **Protective Order Motion**

28     The contention that MGA somehow remedied its failure to supplement its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -                                ORDER NO. 17
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 233

1   responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2   following the ruling on the Protective Order Motion is likewise unavailing. (*Id.*,

3   pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found

4   none, supporting the proposition that a party may refuse to respond to an

5   interrogatory after it has been ordered to do so by subsequently filing a motion for a

6   protective order. Nor would such a rule be logical, as it would permit the party

7   ordered to respond to thereby nullify the effect of the court order. Regardless, the

8   Discovery Master denied the Protective Order Motion and finds that it cannot be

9   used as a basis for failing to comply with the February 15, 2008 Order.

10          **4.    Conclusion**

11          For all of the foregoing reasons, MGA must promptly provide full and

12   complete responses to Interrogatory Nos. 43 and 44.

13      **B.    Mattel's Request For Sanctions Regarding Interrogatory Nos. 43
             And 44**

14

15          In its Motion To Compel, Mattel also requests that the Discovery Master

16   sanction MGA in the amount of $4,515 for failing to comply with the prior

17   discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In

18   response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19   "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20   only when, and MGA had already brought the 'when' question to the Discovery

21   Master one week before Mattel filed the instant motion to compel" as part of its

22   Protective Order Motion. (Opposition, p. 13). However, the fact that one party has

23   moved for a protective order does not prevent the party opposing that motion from

24   subsequently filing a motion to enforce a prior court order, particularly where the

25   latter motion requests that the Discovery Master compel MGA to provide responses

26   to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27   while the motion for a protective order indicates that MGA will respond to the

28   interrogatories, at the earliest, "within 21 days after" the denial of the Protective

EXHIBIT 16
PAGE 234

1   Order Motion, (Protective Order Motion, p. 10).

2       MGA next argues that sanctions should be denied because its Protective

3   Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4   "it would be a perversion of every conceivable notion of economy and efficiency,

5   not to mention fairness . . . if a motion to compel could be used to sanction a party

6   for exercising its legal right to seek a protective order." (Id., p. 14). But these

7   arguments are not persuasive for the same reasons discussed in Section II and

8   Section III.A.3.b., above, namely that the Protective Order Motion is not

9   meritorious and MGA has not cited any legal authority supporting the proposition

10  that a party may refuse to respond to an interrogatory after it has been ordered to do

11  so by subsequently filing a motion for a protective order.

12      Finally, MGA argues that it "has not appealed, challenged or otherwise

13  refused to obey" the prior discovery master's order, (id.), but merely requested that

14  the "Discovery Master temporarily defer the time to respond . . . based upon the

15  new, intervening circumstances that arose between the issuance of that order and

16  the lifting of the discovery stay," (id., p. 15). However, this is just another way of

17  saying that MGA refused to supplement its responses as required by the prior

18  discovery master due to its mistaken belief that the Protective Order Motion

19  obviated the need to comply with the February 15, 2008 Order. Because that

20  argument has already been rejected, MGA has failed to show that it had substantial

21  justification for opposing the enforcement of the February 15, 2008 Order.

22  Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23      C.   **Supplemental Interrogatory Nos. 51 – 55 And 64**

24          1.   **The Relief Sought By Mattel**

25      Mattel next requests that the Discovery Master overrule MGA's objections

26  and compel it to provide full and complete responses to Supplemental Interrogatory

27  _____

28  [7] Having determined that MGA lacked substantial justification for failing to comply with the
February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                      ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _235_

1  Nos. 51 – 55 and 64. (Motion To Compel, pp. 12 – 21).

2              **2.    MGA's Opposition**

3       In its Opposition, MGA initially argues that Mattel failed to meet and confer

4  in good faith. (Opposition, pp. 16 – 18). It further argues that even if Mattel did

5  meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6  they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7  other interrogatories, (4) improperly seek expert witness information, privileged

8  information, and information better known to Mattel, and/or (5) impose an undue

9  burden) are meritorious and should be sustained. (*Id.*, pp. 18 – 26).

10             **a.    Purported Failure To Meet And Confer**

11       Because it could dispose of the outstanding discovery issues related to

12  Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13  addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14  to filing its motion.

15       MGA argues that Mattel did not meet and confer in good faith because its

16  "meet and confer letter concerning these interrogatories is utterly devoid of any

17  reference whatsoever to the putative impropriety of the objections it now challenges

18  . . ." (Opposition, p. 17). However, MGA admits that the parties did meet and

19  confer about certain issues regarding these interrogatories. (*Id.*, p. 18 ["While the

20  parties did meet and confer about the timing of MGA's response to Interrogatory

21  Nos. 51 – 55 and 64 . . ." (emphasis omitted)]). The record further reflects Mattel

22  sent a meet and confer letter and had multiple phone calls with MGA's counsel

23  about these specific interrogatories. (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24  In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25  "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

---

27  [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson
    Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and
28  ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                          - 19 -                ORDER NO. 17
                                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 236

1   Interrogatories] based on . . . any other objections . . ." (Watson Decl., Ex. 15).

2   Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3   37's "good faith" meet and confer requirement.

### b.   Definitional Objections

5   MGA's first substantive argument in opposition to Supplemental

6   Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7   ambiguous because of the manner in which the term "SALES" is defined.

8   (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9   – 55 are ambiguous because of the definition used for the term "MATTEL." (Id.,

10   pp. 19 – 20). However, MGA has not cited any legal authority in support of its

11   position.

12   Moreover, MGA did not set forth the grounds for its objections "with

13   specificity," at the time it objected to the interrogatories, as required by Federal

14   Rule of Civil Procedure 33(b)(4). To the contrary, it merely "incorporate[d]

15   General Objection Nos. 14 – 15 (regarding Definitions), including without

16   limitation its objection to the definition of the term 'MATTEL' for Supplemental

17   Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18   "SALES" with respect to Supplemental Interrogatory No. 52 (id., pp. 5 – 6). This

19   incorporation by reference of a list of general objections is insufficient to preserve

20   an objection. (Convertino v. U.S. Dept. of Justice, 565 F.Supp.2d 10, 12 – 13

21   (D.D.C. 2008); ACMA USA, Inc. v. Surefil, LLC, 2008 WL 2714422, *2 (E.D.Va.

22   July 7, 2008); Grider v. Keystone Health Plan Central, Inc., 2007 WL 2874423, *5

23   - *6 (E.D.Pa. September 27, 2007); see also Fed. R. Civ. Proc. 33(b)(4)).

24   Regardless, the Discovery Master is not persuaded that MGA is unable to

25   understand the terms MATTEL and SALES. Accordingly, the definitional

26   objections are overruled. MGA must answer the interrogatories.[9]

27

28

[9] The prior discovery master repeatedly required MGA to respond to discovery that used these
definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 237

1

                 **c.**    **Expert Witness Objection**

2        With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts

3  that it "has simply interposed an objection that preserves [its] right to rely on expert

4  testimony." (Opposition, p. 21). Since that is the full extent of MGA's expert

5  witness objection, the Discovery Master agrees that the objection, as limited by

6  MGA, is valid. What MGA cannot do is assert that this objection permits it to

7  withhold information that is now available to it. Accordingly, the objection is

8  sustained to the extent that MGA's interrogatory response merely includes a

9  reservation of rights to supplement the response during expert discovery.

10                **d.**    **Objection That The Information Is Better Known By**

11                          **Mattel**

12        Regarding Supplemental Interrogatory No. 51, MGA asserts that the request

13  for it to identify Mattel products by stock keeping number or bar code number is

14  objectionable because that information is better known to Mattel. (*Id.*, p. 21).

15  However, MGA cannot withhold information on the ground that Mattel knows

16  which people have knowledge of Mattel's purported copying of MGA's intellectual

17  property. Mattel is entitled to discover the information MGA possesses and the

18  factual bases of its trade dress claims.

19        As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks

20  it to identify all persons with knowledge of certain facts even though it does not

21  know everyone who may possess such information, (*id.*, pp. 21 – 22), it is

22  incumbent upon MGA to provide the information that is within its custody,

23  possession or control. In fact, MGA concedes that it will provide "whatever

24  information it has." (*Id.*, p. 22).

25                **e.**    **Compound Objection**

26        MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are

27  impermissibly compound. (Opposition, pp. 22 – 23). This contention is

28  unavailing. The questions in each interrogatory refer to one common theme and a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _238_

1    common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*
2    *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing
3    subparts directed at eliciting details concerning a 'common theme' should generally
4    be considered a single question"]). Accordingly, the objection is overruled.

5                    **f.    Duplicative Objection**

6          MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are
7    duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.
8    23 – 24). But MGA has failed to demonstrate that this is the case. As an initial
9    matter, MGA does not explain why Supplemental Interrogatory No. 51 is
10   duplicative of other interrogatories. Rather, it simply states that Mattel "does not
11   take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel
12   addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.
13   19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory
14   No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts
15   regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel
16   products it contends copied, infringed, or diluted MGA's products by SKU number,
17   as requested by Interrogatory 51."]). Because it has not analyzed Interrogatory No.
18   51, MGA's objection to that interrogatory is overruled.

19         MGA's claim that Supplemental Interrogatory No. 52 is duplicative of
20   Interrogatory No. 45 is also unpersuasive. Supplemental Interrogatory No. 52 seeks
21   MGA profit, costs and revenue associated with each trade dress MGA contends
22   Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas
23   Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and
24   to identify the profits, costs and revenue associated with each such product.
25   The questions are therefore not the same.[10]  Accordingly, the objections are

26   ─────────────────────────────
     [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be
27   able to respond to the latest interrogatories by cutting and pasting its responses to the prior
     interrogatories. However, as discussed below, MGA alleges that responding to Supplemental
28   Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are
     not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   overruled.

2                    **g.    Undue Burden Objection**

3           MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4   unduly burdensome.

5           However, MGA has not provided any evidence in connection with its Motion

6   To Compel to support its claim of burden. (*See Jackson,* 173 F.R.D. at 528-9 ["The

7   party claiming that a discovery request is unduly burdensome must allege specific

8   facts which indicate the nature and extent of the burden, usually by affidavit or

9   other reliable evidence."]). Further, MGA cannot complain that the interrogatories

10  are unduly burdensome when Mattel merely seeks information regarding the extent

11  of MGA's trade dress claims. If MGA contends Mattel infringed numerous

12  products, Mattel has the right to discover the scope of the alleged claims.

13  Accordingly, the objections are overruled.

14                   **h.    Privilege Objection**

15          Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16  that it asserted a privilege objection merely to "preserve [its] ability to protect,

17  privileged documents and information . . . . [and to make] clear that it was not

18  waiving the attorney-client privilege . . . ." (Opposition, p. 25).  Since that is the

19  full extent of MGA's privilege objection, the Discovery Master agrees that

20  objection as so limited is valid. Accordingly, the objection is sustained on that

21  limited ground.

22                   **3.    Conclusion**

23          For all of the foregoing reasons, MGA must promptly provide full and

24  complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25  limited above.

26          **D.    Summary Of Ruling Regarding The Motion To Compel**

27          Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

EXHIBIT 16

PAGE 240

1   request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2   granted.

3   **IV.   MATTEL'S *EX PARTE* APPLICATION**

4        Several days after Mattel filed its Motion to Compel on March 6, 2009,

5   Mattel filed its Application for issuance of an order to show cause regarding

6   contempt. The Application addresses Interrogatory Nos. 43 and 44 (the

7   "Interrogatories") and is based on the same facts summarized above with respect to

8   the Motion to Compel and Protective Order Motion. However, unlike the Motion

9   to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10  Master is not authorized to issue contempt sanctions. By order dated March 12,

11  2009, the Court referred the Application to the Discovery Master, who was

12  instructed to review it in the first instance and recommend a disposition to the

13  Court. (Order dated March 12, 2009, p. 1).

14       **A.   Basis For The Application**

15            **1.   Circumstances Warranting *Ex Parte* Relief.**

16       In the introductory section of its Application preceding the Memorandum of

17  Points and Authorities, Mattel sets forth the following grounds for *ex parte* relief:

18            [F]or two months, MGA failed and refused to produce Phase 2

19            discovery, including such discovery that was previously ordered.

20            MGA also has a history of flouting Court Orders, but remains

21            undeterred by prior warnings and prior awards of sanctions.

22            Absent prompt intervention by this Court, MGA will continue to

23            block even ordered Phase 2 discovery. Furthermore, MGA's

24            conduct is a direct challenge to the authority of the court and the

25            Discovery Master, and additional delay would inappropriately

26            reward MGA for its refusals to comply with the [prior discovery

27            master's February 15, 2008] Order.

28  (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -       ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 241

1     In its Reply, Mattel offers the following as a further justification for bringing

2   the matter on an *ex parte* basis:

3          MGA has repeatedly employed the procedural tactic of refusing

4          to comply with discovery requests and forcing Mattel to return to

5          court for multiple successive orders and sanctions compelling

6          discovery.  In so doing, MGA effectively halts the discovery

7          process and deprives Mattel of crucial information to which it is

8          entitled. ... Requiring Mattel to repeat the process of filing a

9          regularly noticed motion would unduly reward MGA for its

10         refusal to comply with the [February 15, 2008] Order and

11         enhance MGA's ability to perpetually deprive Mattel of crucial

12         time in which to conduct discovery.

13   (Reply, pp. 3-4).

14          **2.     Circumstances Warranting Issuance Of An Order To Show**

15                   **Cause**

16     In its Application, Mattel argues that, although MGA has improperly refused

17   to respond to all of the discovery referenced in the Motion to Compel (including the

18   Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to

19   the Interrogatories, because MGA had already been ordered to provide responses to

20   those Interrogatories pursuant to the prior discovery master's February 15, 2008

21   Order.  Mattel therefore argues that MGA's failure to provide responses to the

22   Interrogatories should be singled out for special treatment as contempt of the Court.

23          **3.     Relief Sought**

24     MGA seeks issuance of an order to show cause that MGA is in contempt, a

25   finding of contempt, and the following monetary relief:

26          •   An award of coercive sanctions against MGA in the amount of $5,000

27              for each day that MGA fails to produce full and complete responses to

28              Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -                                      ORDER NO. 17
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _242_

1        event that MGA does not comply within five days of the Court's

2        Order, the amount of coercive sanctions should be increased to

3        $10,000 per day (with all such per diem fine amounts being paid to the

4        Court); and

5        • An award of monetary sanctions against MGA in the amount of

6        $7,000, which represents a portion of the costs incurred by Mattel in

7        bringing the Application.

8  (Application, pp. i - ii).

9     **B.**   **Discussion**

10       **1.**   ***Ex Parte* Relief Is Not Justified**

11     As MGA notes, the Court's standing order indicates that *ex parte*

12  applications are "solely for extraordinary relief." This directive was underscored

13  by the Court's Discovery Master Order, which requires that a party applying for *ex*

14  *parte* relief must show that "good cause" exists for hearing any dispute "on

15  shortened time" and that it will "be prejudiced absent prompt resolution" of the

16  issue. (Discovery Master Order, pp. 4 – 5).

17     This standard is not satisfied here. Mattel does not adequately demonstrate

18  that it will be prejudiced if the underlying motion is heard according to regularly

19  noticed motion procedures. The discovery cut-off is still eight months in the future

20  (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21  argues that it would be unfair to require Mattel to seek relief by means of a

22  regularly noticed motion, given the relevant history:

23        Mattel *already* followed this course of action and already

24        obtained an Order that MGA produce amended interrogatory

25        responses. MGA refuses to obey that [February 15, 2008] Order.

26        Requiring Mattel to repeat the process of filing a regularly

27        noticed motion would unduly reward MGA for its refusal to

28        comply with the [February 15, 2008] Order and enhance MGA's

EXHIBIT 16

PAGE 243

1          ability to perpetually deprive Mattel of crucial time in which to

2              conduct discovery.

3     (Reply, p. 4, emphasis in original).

4          Mattel's frustration is understandable; Mattel has already been through this

5     process twice (counting the pending motion to compel) with respect to the identical

6     interrogatories which are the subject of the Application.  However, Mattel's

7     assertion that it should be allowed to dispense with a noticed motion ignores one

8     important point: the Application seeks relief which both parties acknowledge is

9     entirely different in character than an award of ordinary monetary sanctions for

10    discovery abuses.  Unlike its motions to compel, the Application seeks a finding

11    that MGA has deliberately disobeyed a Court order and should be punished by an

12    award of coercive sanctions until it complies with the order.  This is the first time

13    Mattel has sought such relief, and MGA has never previously been provided the

14    opportunity to oppose the requested relief in connection with a regularly noticed

15    motion.  Thus, while Mattel's above quoted argument might have some application

16    if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not

17    justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.

18         Moreover, the chronology of events tends to negate the assertion that Mattel

19    is suffering immediate and irreparable prejudice from the delay occasioned by

20    MGA's failure to respond to the Interrogatories.  MGA has refused to respond to

21    the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,

22    2009.  Nevertheless Mattel did not file its Application until two months later, after

23    MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel

24    MGA to respond to the outstanding trade dress discovery, including providing

25    responses to the Interrogatories.  The timing of these events undermines Mattel's

26    argument that expedited relief is necessary.

27         In the absence of some exigency, the Discovery Master believes that the

28    severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -                                                    ORDER NO. 17
                                       [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _244_

1  the time and opportunity to present their arguments in the context of a regularly
2  noticed motion. Consequently Mattel was not justified in seeking relief on an *ex*
3  *parte* basis. Nevertheless, because Mattel could simply re-file the Application as a
4  regularly noticed motion and because the Discovery Master is not inclined to
5  recommend that the Court grant the relief Mattel seeks at this time, I address the
6  substantive issues raised by the Application below.

### 2. MGA's Alleged Disobedience Of The Prior Order

#### a. Legal Standard

9  As the Ninth Circuit has observed:

> Courts are invested with inherent powers that are 'governed not
> by rule or statute but by the control necessarily vested in courts to
> manage their own affairs so as to achieve the orderly and
> expeditious disposition of cases.'

14  (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982
15  F.2d 363,368 (9th Cir. 1992) (citations omitted)). When a party fails to comply
16  with a court order, that party commits civil contempt. (*General Signal Corp. v.*
17  *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)). Additionally, Federal Rule of
18  Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a
19  discovery order as contempt.

20  The Ninth Circuit has further observed that "courts have strictly adhered to
21  the principle that the power to punish for contempt is limited to '(t)he least possible
22  power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th
23  Cir. 1980) (citations omitted)).

24  Mattel acknowledges that it must meet an exacting standard in order to
25  prevail on its Application. Specifically, the party seeking imposition of civil
26  contempt sanctions must demonstrate "by *clear and convincing evidence* that the
27  contemnors violated a *specific and definite* order of the court." (*United States v.*
28  *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

EXHIBIT _16_

PAGE _245_

1   *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)). Further, any doubts

2   as to whether the requirements for civil contempt have been met in a particular case

3   must be resolved in favor of the party accused of civil contempt. (*In re Chief*

4   *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5       In accordance with this standard, contempt sanctions will not be imposed

6   unless the language of the order allegedly violated is clear and unambiguous.

7   (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8   1982) (affirming district court's denial of applications to hold defendants in

9   contempt for violating terms of consent judgment where, among other things,

10   certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11   *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12   and for sanctions where the discovery at issue was open to interpretation: "Any

13   ambiguities or uncertainties in the court order must be read in a light favorable to

14   the person charged with contempt. ... Contempt power should not be used where

15   there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16   power of the court to punish for contempt should be used with caution and

17   deliberation.")).

18               **b.   Application To The Facts**

19       Mattel argues that MGA violated the February 15, 2008 Order, and that it

20   continued to do so for two months before the prior discovery master stayed MGA's

21   obligation to respond to the Interrogatories on April 22, 2008. (Application, p. 13).

22   That assertion is not accurate. In granting MGA's motion for clarification of the

23   February 15, 2008 Order, the prior discovery master in essence retroactively found

24   that MGA should not have been ordered to immediately provide supplemental

25   responses because the Interrogatories involved Phase 2 issues and were therefore

26   subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27   the February 15, 2008 Order.

28       When the stay was lifted, on January 6, 2009, the Court did not set a new

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _246_

1  deadline for MGA to provide supplemental responses in compliance with the

2  February 15, 2008 Order, nor did Mattel request that either the Court or the current

3  Discovery Master do so. However, one month after the stay was lifted, Mattel did

4  meet and confer with MGA in an attempt to obtain responses. At that time, MGA

5  took the position that it would provide responses to the Interrogatories "not later

6  than 30 days after the Court decides the trade dress summary judgment motion

7  which Mattel has indicated it will be bringing." (Ex. 16 to Watson Decl. in support

8  of Application). Three weeks later, MGA filed the Protective Order Motion

9  seeking a stay of its obligation to respond to the Interrogatories.

10        As set forth above, the Discovery Master finds that, in pursuing this course of

11  conduct instead of responding to the Interrogatories and other discovery that is the

12  subject of Mattel's Motion to Compel, MGA acted without substantial justification

13  and therefore grants Mattel's Motion To Compel and also awards sanctions against

14  MGA. The question raised by the Application is whether MGA should *also* be

15  ordered to appear and show cause why it should not be held in contempt and subject

16  to further sanctions for failing to comply with the February 15, 2008 Order.

17        Since Mattel, as the moving party, has the burden of demonstrating by clear

18  and convincing evidence that MGA has committed civil contempt and should be

19  punished, Mattel must, in the first instance, identify the existence of a "specific and

20  definite" provision of the February 15, 2008 Order which MGA has violated.

21  (*Rose*, 437 F.Supp.2d at 1170). In an attempt to meet this burden Mattel argues:

22            The Discovery Master's [February 15, 2008] Order directed

23            MGA to provide full, complete and updated responses to

24            Interrogatories Nos. 43 and 44 within eleven days. MGA did not

25            comply with that Order and refused to do so for two months

26            before the Discovery Master stayed MGA's obligation to respond

27            while the Court's Phase 2 stay was in place.

28  (Application, p. 13). However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 247

1   responses specified in the February 15, 2008 Order cannot reasonably be viewed to

2   be a violation of that order during the period of February 15, 2008 to April 22, 2008

3   because the prior discovery master himself retracted the portion of his ruling

4   requiring MGA to comply in response to MGA's motion for clarification. In other

5   words, the prior discovery master found, in effect, that MGA had *properly* withheld

6   supplemental responses on the ground that the subject Interrogatories sought Phase

7   2 discovery, which had been stayed by the Court nearly two weeks *before* the prior

8   discovery master issued the February 15, 2008 Order. Given the prior discovery

9   master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can

10  hardly be deemed to have been in violation of the February 15, 2008 Order while

11  the Court's stay of Phase 2 discovery was in place. A party who believes a ruling is

12  in error has the right to seek clarification or reconsideration, and doing so is not

13  equivalent to willfully disobeying the court.

14      Mattel also argues that MGA "resumed" its violation of the February 15,

15  2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on

16  January 6, 2009. While the Discovery Master does not agree that any violation

17  resumed on January 6, 2009, as set forth above, I do agree that MGA should have

18  promptly complied with the February 15, 2008 Order once the stay was lifted by

19  serving supplemental responses within 11 days of the lifting of the stay. *Lucero v.*

20  *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all

21  objections to interrogatories served before a stay was issued by failing to respond

22  within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240

23  (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be

24  complied with promptly.'").

25      However, today's ruling that MGA should have promptly provided responses

26  to the Interrogatories upon the stay being lifted by the Court is not equivalent to a

27  finding that MGA deliberately violated a "specific and definite" provision in the

28  February 15, 2008 Order. That order arguably does not contemplate the situation

EXHIBIT 16

PAGE 248

1    which ensued after the order was issued, namely, the prior discovery master's

2    decision to suspend MGA's obligation to respond to the Interrogatories without

3    setting a new deadline to run from the lifting of the stay.

4         While it is reasonable to conclude, as the Discovery Master has done, that the

5    same 11-day deadline imposed by the February 15, 2008 Order would apply once

6    the stay was lifted, an inference, however reasonable, is not the same thing as an

7    express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8    (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9    proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10   within list of activities expressly forbidden by earlier protective order]; *Independent*

11   *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12   defendant's supposed "understanding," based on oral comments by the Court that

13   he was being ordered to request that search engines discontinue using infringing

14   phrase, was not the same as express provision of injunction and could not serve as

15   basis for civil contempt]). Further, as noted above, any doubts regarding

16   disobedience of a court order are to be resolved in favor of the party charged with

17   contempt. Accordingly, the Discovery Master declines, under the applicable case

18   law and on the record presented, to find that MGA deliberately disobeyed the

19   Court, thereby meriting sanctions for civil contempt. The Discovery Master also

20   declines to recommend that the Court issue the requested order to show cause.

21        However, as set forth in the Disposition section below, the Discovery

22   Master's ruling today *does* contain an express deadline by which MGA must

23   respond fully and without objection to the Interrogatories (as well as the other

24   discovery that is the subject of Mattel's Motion to Compel). If MGA fails to

25   comply with the express, definite deadline imposed by this Order, the Discovery

26   Master reserves the right to recommend that the Court impose appropriate sanctions

27   from the date of MGA's non-compliance should Mattel renew its request for an

28   order to show cause regarding contempt by filing a noticed motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16

PAGE 249

## V.   DISPOSITION

A.   MGA's Protective Order Motion is **DENIED**.

B.   Mattel's Motion To Compel is **GRANTED**, except as limited above. MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.  MGA's responses to Supplemental Interrogatories Nos. 51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

C.   Mattel's request for sanctions against MGA in connection with its Motion To Compel is **GRANTED**.  MGA shall pay $4515 to Mattel within ten (10) days of this Order.

D.   MGA's request for sanctions in connection with Mattel's Motion To Compel is **DENIED**.

E.   Mattel's Application for issuance of an order to show cause regarding contempt is **DENIED**, without prejudice to any noticed motion for an order to show cause regarding contempt that Mattel may deem appropriate in the event that MGA fails to comply with any provision of the present Order.

Dated: April 14, 2009

By:   /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _16_

PAGE _280_

# Exhibit 17

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                        UNITED STATES DISTRICT COURT

8                       CENTRAL DISTRICT OF CALIFORNIA

                              EASTERN DIVISION
9

10

11  CARTER BRYANT, an individual,           CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                  Consolidated with
                                            Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15          Defendant.                      ORDER GRANTING JOINT MOTION
                                            FOR PROTECTIVE ORDER
16                                          REGARDING MATTEL'S
                                            INTERROGATORIES; DENYING
17                                          MATTEL'S MOTION TO COMPEL
                                            INTERROGATORY RESPONSES
18

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                             I. INTRODUCTION

24      Presently pending are two separate motions pertaining to Mattel's Third Set of

25  Interrogatories: (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26  Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28
    Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

                            9-05-07

EXHIBIT 17
PAGE 251

1   Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2   Third Set of Interrogatories.[2] Having considered the motion papers and the comments of counsel

3   at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4   interrogatory responses is denied. MGA's request for sanctions in connection with Mattel's

5   motion to compel interrogatory responses is also denied.[3]

6                               II. BACKGROUND

7        In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8   Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9   In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10   Bryant four questions and MGA seven questions. Of these, three interrogatories to Bryant were

11   identical to three interrogatories to MGA. In December of 2006, Mattel served MGA with its

12   First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13   interrogatories.

14        During a scheduling conference held on February 12, 2007, the district court imposed a

15   limit on interrogatories of "50 for each side for both cases." February 27, 2007 Minute Order,

16   Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7. When MGA asked

17   whether all Defendants would count as one "side" under the court's order, the court confirmed

18   that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19   parties." Tr. of scheduling conference, Proctor Dec., Ex. 7. After MGA clarified that there were

20   actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23

24       [1] Defendants submitted their joint motion on July 10, 2007. Mattel submitted its opposition on July 17, 2007. Defendants submitted their reply brief on July 20, 2007.

25       [2] Mattel submitted its motion to compel on July 18, 2007. Defendants submitted an opposition on August 1, 2007. Mattel submitted its reply brief on August 6, 2007.

26

27       [3] The Discovery Master determined that a hearing was not necessary.

28   Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 17

PAGE 252

2

1    interrogatories on Mattel in addition to MGA's interrogatories. Bryant stated that he probably

2    would not. The court responded as follows:

3             Let's try to work within the confines of the 50 interrogatories, and if you
         need more, again, the court is going to be forthcoming, if there's a need for it.
4        And it's the type of order that if you can stipulate amongst yourselves, you're not
         going to need an order from the court.
5

6             But if you're not agreeing amongst yourselves, then you're going to have
         to come back to the court before you bust those limits. Unlike every other order
7        the court issues, where once the court issues an order and you need an order from
         the court to alter that, this is one that I will give you authority amongst yourselves
8        to stipulate to a greater number. But [let's] be reasonable. I can't imagine you
         can't work this out. I just don't want to have open-ended numbers of
9        interrogatories and experts.

10   Id. at 24:5-18. The court also directed the parties to return to court if they were unable to reach

11   an agreement. Id. at 24:23.

12        On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" –

13   MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant

14   – asking each of these four defendants the same nineteen questions. On July 9, 2007, MGA,

15   MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of

16   Interrogatories and no responses. The parties met and conferred on July 10, 2007. Defendants

17   refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty

18   interrogatory limit and that the interrogatories were otherwise objectionable on several grounds.

19   Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories

20   that are compound and by serving interrogatories on multiple responding parties on the "same

21   side." By Defendants' calculations, when each discrete subpart of each of Mattel's

22   interrogatories served on each of the responding parties are counted separately, Mattel has

23   served, at a minimum, 227 separate interrogatories. In contrast, Mattel contended that its

24   interrogatories are not compound, and that each identical interrogatory it serves should be

25   counted as one, regardless of how many parties it serves on the "other side." By Mattel's

26   calculations, it has propounded a total of forty-three non-identical interrogatories. The parties

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 17

PAGE 253

3

1    also discussed potentially stipulating to a greater number of interrogatories but apparently did not

2    reach an agreement.

3         Defendants move for a protective order preventing Mattel from serving additional

4    interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify

5    which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed

6    by the district court. Mattel opposes the motion, contending that it has not exceeded the 50

7    interrogatory limit set by the district court. In a separate motion, Mattel moves to compel

8    Defendants to provide responses to its Third Set of Interrogatories.

9                                    III. STANDARDS

10        Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice

11   requires to protect a party or person from annoyance, embarrassment, oppression, or undue

12   burden or expense," including "that the disclosure or discovery not be had."

13                                   IV. DISCUSSION

14        Defendants' motion for a protective order raises essentially three issues: (1) whether an

15   identical interrogatory served on several Defendants should be counted as only one interrogatory

16   or counted separately for each Defendant served with the identical interrogatory; (2) whether an

17   interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of

18   such facts," and "identify all documents" should be counted as a single interrogatory or three

19   separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal

20   theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21   A. The Fifty "Per Side" Limit

22        The district court limited interrogatories to fifty "per side." Although the district court's

23   order does not speak directly to this issue, the most reasonable approach is to count one identical

24   interrogatory served on all six of the Defendants as one interrogatory. Under this approach,

25   Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants

26   collectively may serve a total of 50 non-identical interrogatories on Mattel.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    4

EXHIBIT  17

PAGE  254

1    Defendants' alternative approach is not realistic because it would leave Mattel with far

2    fewer interrogatories than the 50 permitted by the district court. Indeed, Defendants' approach

3    would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4    Rule 33(a), Fed.R.Civ.P. Under Defendants' approach, Mattel would be limited to approximately

5    eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6    interrogatories on Mattel. Such an imbalance would be fundamentally unfair.

7    Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8    served on all six of the Defendants is counted as one interrogatory.

9    B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with

10   knowledge; and (3) identify all documents

11   Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12   counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13   interrogatories a party may serve upon any other party. Although Rule 33(a) does not define the

14   term "discrete subparts," The Advisory Committee addresses this issue and provides the

15   following guidance as to when subparts should and should not count as separate interrogatories:

16   > Each party is allowed to serve 25 interrogatories upon any other party, but must
    > secure leave of court (or stipulation from the opposing party) to serve a larger

17   > number. Parties cannot evade this presumptive limitation through the device of
    > joining as 'subparts' questions that seek information about discrete separate

18   > subjects. However, a question asking about communications of a particular type
    > should be treated as a single interrogatory even though it requests that the time,

19   > place, persons present, and contents be stated separately for each such
    > communication.

20

21   Advisory Committee Notes for the 1993 Amendments to Rule 33. A leading treatise has

22   explained that "it would appear that an interrogatory containing subparts directed at eliciting

23   details concerning the common theme should be considered a single question, although the

24   breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller &

25   Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994). "Although

26   there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _17_

PAGE _255_

1    weight of authority interpreting <u>Rule 33(a)</u> requires examining whether the subparts are

2    'logically or factually subsumed within and necessarily related to the primary question.'"

3    <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4    <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting <u>Ginn v. Gemini</u>

5    <u>Inc.</u>, 137 F.R.D. 320, 322 (D. Nev. 1991).

6       Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7    whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8    (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9    documents referring or relating to such facts. On the one hand, for example, in <u>United States ex</u>

10    <u>rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.</u>, 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11    the court explained that an "interrogatory may properly seek identification of documents and facts

12    supporting a contention, but it may not do so in a single interrogatory." <u>See also</u> <u>Nobles v. Jacobs</u>

13    <u>IMC</u>, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14    responding party to state all facts regarding a particular issue and to identify all persons having

15    knowledge of such information is two separate interrogatories); <u>Chapman v. California Dept. of</u>

16    <u>Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17    disclosure of facts (including the identity of persons with knowledge) and documents as two

18    separate interrogatories); <u>Kendall v. GES Exposition Services, Inc.</u>, 174 F.R.D. 684, 685-86 (D.

19    Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20    treated as two subparts). On the other hand, for example, in <u>Krawczyc v. City of Dallas</u>, 2004

21    WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22    facts supporting a contention and to identify persons with knowledge of those facts counts as one

23    interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24    "factually subsumed within and necessarily related to the primary question."

25       In the instant case, most of Mattel's interrogatories follow the same format, asking the

26    responding party to state all facts supporting a contention or contentions, to identity persons with

27

28

1   knowledge, and to identify all documents that refer or relate to such acts. Notwithstanding

2   caselaw to the contrary, these subparts are not discrete. Rather, the subparts are related and

3   directed to the underlying details of a specifically identified contention (or contentions) in a

4   manner similar to the example given in the Advisory Committee Notes: "a question asking about

5   communications of a particular type should be treated as a single interrogatory even though it

6   requests that the time, place, persons present, and contents be stated separately for each such

7   communication." Therefore, subparts seeking facts supporting a contention, the identity of

8   persons with knowledge, and documents are not counted separately for purposes of applying the

9   50 interrogatory limit.

10   C. Interrogatories Addressing Several Discrete Issues

11         Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12   compound because they address discrete issues. For example, Mattel has propounded the

13   following interrogatory:

14         State all facts that support YOUR contention, if YOU so contend, that one
           or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole

15         or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
           IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS

16         that REFER OR RELATE TO such facts.[4]

17   This interrogatory is directed to four separate and discrete defense theories: unclean hands,

18   estoppel, waiver and consent. Therefore, the interrogatory is compound and each of the four

19   discrete subparts should be counted as a separate interrogatory. See Safeco of America, 181

20   F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21   interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22   be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23   2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25

26      [4]   Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

27

28                                                                                     7

EXHIBIT 17
PAGE 257

1    about all elements of a given claim was compound and explaining that each element of a claim is

2    discrete and constitutes a separate interrogatory).

3         Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4    factual matters:

5              State all facts that support YOUR contention, if YOU so contend, that
               YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
6              any other agreement or contract between MATTEL and BRYANT, or aid or abet
               any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
7              when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
               rights to BRATZ or when BRATZ performed work or services with or for MGA
8              while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
               knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
9              such facts.[5]

10   This interrogatory includes three different legal contentions: (1) intentional interference with the

11   Inventions Agreement; (2) intentional interference with any other agreement or contract between

12   Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13   owed by Bryant to Mattel.[6]  In addition, this interrogatory asks the responding party to apply two

14   different sets of factual allegations to the three different legal contentions.  Therefore, the

15   interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16        The following additional interrogatories contain similar types of discrete and separate

17   subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18   subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19   discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20   discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21   into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24        [5]  Id. (No. 21).

25

26        [6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
     of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
27   presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

28
     Bryant v. Mattel, Inc.,                                                                                    8
     CV-04-09049 SGL (RNBx)

EXHIBIT 17
PAGE 258

1 | propounded its Third Set of Interrogatories. Therefore, Defendants are entitled to a protective
2 | order.

3 | ### V. CONCLUSION

4 |     For the reasons set forth above, Defendants' motion for a protective order is granted, and
5 | Mattel's motion to compel responses to the Third Set of Interrogatories is denied. Mattel may
6 | serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit
7 | imposed by the district court. MGA's request for sanctions in connection with Mattel's motion to
8 | compel interrogatory responses is denied.

9 |     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
10 | Master, MGA shall file this Order with the Clerk of Court forthwith.

11 |
12 |
13 | Dated: September 5, 2007
14 |                           HON. EDWARD A. INFANTE (Ret.)
15 |                               Discovery Master
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 17

PAGE 259

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 17
PAGE 260

# Exhibit 18

## CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                            EASTERN DIVISION

10

11  CARTER BRYANT, an individual,         CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12         Plaintiff,

13      v.                                Consolidated with
                                          Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15         Defendant.                     **ORDER GRANTING IN PART AND
                                          DENYING IN PART MATTEL'S**
16                                        **MOTION TO COMPEL MGA TO**
                                          **PRODUCE WITNESSES PURSUANT**
17                                        **TO THIRD NOTICE OF DEPOSITION**
                                          **UNDER RULE 30(b)(6); DENYING**
18                                        **REQUEST FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                            I. INTRODUCTION

24      On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25  Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26  Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27  to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
2007 SEP 26  PM 2: 28

FILED

EXHIBIT _18_

PAGE _261_

1    July 31, 2007, MGA submitted an opposition brief. On August 6, 2007, Mattel submitted a reply

2    brief. The matter was heard on September 24, 2007. Having considered the motion papers and

3    the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4    sanctions is denied.

5                                    II. BACKGROUND

6           Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7    which specified eight topics for deposition. Mattel served a Second Notice of Deposition of

8    MGA in February of 2007, which specified forty-six topics for deposition. On June 5, 2007,

9    Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10   the present motion to compel. The Third Notice specifies sixteen topics for deposition. On June

11   29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12   conferred. The parties were not able to resolve their disputes regarding four subject matters: hard

13   drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14   8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15   and Morad Zarabi (Topic 11-13). The topics at issue are set forth below.

16                              Hard Drives and Other Storage Devices

17          1.      The IDENTITY, current or last known location, and disposition of

18          each STORAGE DEVICE that each of the following PERSONS has used to

19          create, generate, prepare, draft, send and/or receive any DOCUMENT or

20          DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21          ANGEL at any time since January 1, 1999, including without limitation the date

22          of acquisition and the date of disposition of each STORAGE DEVICE: Isaac

23          Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24          Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25          Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26          O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27          Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                    2

EXHIBIT 18

PAGE 262

2. The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3. YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

### Prior Inconsistent Statements to the Press

6. YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7. YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters. Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8. YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

### "Test Projects" for MGA

9. The IDENTITY of each PERSON who YOU had perform, or who

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _18_

PAGE _263_

1    YOU requested, asked or solicited to perform, any "test project" in advance of or

2    in consideration of employment by YOU since January 1, 1995, including without

3    limitation the IDENTITY of each such PERSON who was a MATTEL employee

4    at the time.

5            Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6        11.    Payments of money or any other item of value that YOU have

7    made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8    Larian since January 1, 1999, including without limitation (a) the amounts of such

9    payment and the equivalent dollar value of each of item of value, (b) the dates of

10    such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11    IDENTITY of each bank or financial institution account to which such payment

12    was made and (e) the reasons for each such payment.

13        12.    Payments of money or any other item of value that YOU have

14    made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15    Larian since January 1, 1999, including without limitation (a) the amounts of each

16    such payment and the equivalent dollar value of each of item of value, (b) the

17    timing of each such payment, (c) the IDENTITY of each recipient of each such

18    payment, (d) the IDENTITY of each bank or financial institution account to

19    which such payment was made and (e) the reasons for each such payment.

20        13.    Payments of money or any other item of value that YOU have

21    made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22    Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23    such payment and the equivalent dollar value of each item of value, (b) the timing

24    of each such payment, (c) the IDENTITY of each recipient of each such payment,

25    (d) the IDENTITY of each bank or financial institution account to which such

26    payment was made and (e) the reasons for each such payment.

27    Zeller Decl., Ex. 23.

28

EXHIBIT _18_ ⁴

PAGE _264_

1      Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2  9 and 11-13, and overruling all of MGA's objections and limitations. Mattel contends that the

3  testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4  cumulative or duplicative of any other deposition testimony already given in the case.

5      MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6  of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7  MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8  examining MGA any further. MGA further contends that Mattel has not established the requisite

9  good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10  its objections to the Third Notice. Lastly, MGA contends that Mattel has had many opportunities

11  to obtain, and in many cases has already obtained, the information it now moves to compel.

12                        III. STANDARDS

13      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

16  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17      Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18  use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23  amount in controversy, the parties' resources, the importance of the issues at stake in the

24  litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25  26(b)(2)(C).

26      Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27  a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

EXHIBIT 18

PAGE 265

1    30(a)(2), Fed.R.Civ.P. In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2    court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3    Fed.R.Civ.P., if "the person to be examined already has been deposed in the case." Fed.R.Civ.P.

4    30(a)(2)(B).

5                                    IV. DISCUSSION

6            As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7    to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P. There is caselaw to support each

8    party's position. See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9    Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10   Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11   Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12   Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13   leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14   N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions). For

15   purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16   because the debate is purely academic and inconsequential. As Mattel has requested, Mattel's

17   motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18   additional topics. In evaluating the appropriateness of the topics, it is Mattel's burden to

19   demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20   Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21   Fed.R.Civ.P.

22                    Hard Drives and Other Storage Devices (Topics 1-3)

23           Topic 1 seeks information regarding the location and disposition of computer hard drives

24   or other storage devices used by specified MGA employees or contractors that contain or

25   contained documents related to the Bratz or Angel projects. Topic 2 seeks the identification and

26   last known location of any backup, copy or image of the hard drives or storage devices identified

27   in Topic 1. Topic 3 seeks information regarding MGA's search for and production of documents

28

EXHIBIT _18_

PAGE _266_

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2        MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means. Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8        Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things." A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel.  Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 18

PAGE 267

1    or failed to search for and produce responsive documents located on the hard drives of the other

2    individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3    about the locations and dispositions of hard drives used for 24 different individuals. The likely

4    benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5    burdensome and less expensive means of assessing whether MGA has complied with its

6    discovery obligations, including for example, document requests and interrogatories. Therefore,

7    Mattel's motion is denied as to Topics 1-3.

8                             Prior Inconsistent Statements to the Press (Topics 6-8)

9            Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10   regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11   calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12   information sought is obtainable through other more convenient, less burdensome and less

13   expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14   duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15   to a deposition on these Topics "to the extent that the statements referenced above were not made

16   by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17   designation." Zeller Decl., Ex. 24.

18           Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19   because each of the statements identified therein was made by MGA's Chief Executive Officer,

20   Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21   articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22   Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23   not be "sandbagged" at trial. Mattel's Reply at p.6.

24           MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25   Larian is the person who should be, and already has been, deposed about the statements identified

26   in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27   one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    8

EXHIBIT 18

PAGE 268

1   MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as
2   interrogatories or requests for admission, to obtain further information about the publications
3   identified in Topics 6-8.

4       Topics 6-8 seek information relevant to the central issue in the case: who conceived of
5   Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will
6   bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or
7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously
8   questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely
9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics
10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel
11  seeks. Mattel's motion is granted as to Topics 6-8.

12  <center>"Test Projects" for MGA (Topic 9)</center>

13      In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA
14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of
15  employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not
16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly
17  burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as
18  vague and ambiguous, particularly with respect to the term "test project." MGA also objected to
19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,
20  less burdensome and less expensive means. MGA also objected to Topic 9 as seeking
21  confidential, proprietary, and commercially sensitive information with no relevance to the
22  litigation.

23      When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind
24  of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project
25  as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of
26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's
27  working for MGA while employed by Mattel was no different than a supposedly standard

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 18

PAGE 269

1 | industry practice of having candidates for creative positions make artwork as part of the job
2 | interview." Mattel's Motion at p.22.

3 | MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in
4 | its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains
5 | objectionable as overbroad, reasoning that it would require MGA to provide information "with
6 | regard to how it proceeded with hiring virtually every single employee hired since 1995."
7 | MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require
8 | MGA to have a designee review and potentially memorize information about every single person
9 | who has applied for a job at MGA since 1995, particularly when Bryant only began working for
10 | MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)
11 | deposition to obtain the information called for in Topic 9.

12 | Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their
13 | claim that Bryant's work for MGA while employed by Mattel was no different than a standard
14 | industry practice of having candidates for creative positions make artwork as part of the job
15 | interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In
16 | particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin
17 | working at MGA until the year 2000. Topic 9 is also objectionable because the information
18 | sought is more appropriately obtained through a contention interrogatory, which would be
19 | significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's
20 | motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is
21 | granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998
22 | through 2004.

23 | Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)

24 | In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac
25 | Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to
26 | these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible
27 | evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT _18_

PAGE _270_

1    also objected to Topics 11-13 to the extent that the information sought is obtainable through

2    other, more convenient, less burdensome and less expensive means.  MGA also objected to

3    Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4    relevance to the litigation.

5         Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6    Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7    that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8    alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9    Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15        MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24        MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

11

EXHIBIT _18_

PAGE _271_

1  net worth, even if they represent one source of income. The burden of producing such information

2  does not outweigh its relevance, taking into consideration the circumstances of this case.

3  Furthermore, there is no stay on discovery pertaining to punitive damages. Accordingly, Mattel's

4  motion is granted as to Topics 11 and 12.

5      In contrast, MGA's payments to Morad Zarabi are irrelevant. His only connection to this

6  litigation appears to be with the arbitration proceedings. Any potential relevance of MGA's

7  payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8  affairs. Mattel's motion is denied as to Topic 13.

9  <div align="center">V. CONCLUSION</div>

10      For the reasons set forth above, it is hereby ordered as follows:

11     1.    Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12     2.    Mattel's motion to compel is denied as to Topics 1-3, 9 and 13. In lieu of taking a

13  deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14  regarding Topic 9 that is limited to the years 1998 through 2004.

15     3. Mattel's request for sanctions is denied.

16  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17  Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20  Dated: September _25_, 2007

21                                  HON. EDWARD A. INFANTE (Ret.)

22                                  Discovery Master

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT _18_

PAGE _273_

# Exhibit 19

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California 94111
  | Telephone:     (415) 774-2611
4 | Facsimile:     (415) 982-5287

5

6

7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10 EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| | JAMS Reference No. 1100049530 |
| Plaintiff, | |
| v. | Consolidated with |
| | Case No. CV 04-09059 |
| MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727 |
| Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS** |
| CONSOLIDATED WITH | |
| MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12-31

EXHIBIT _19_[1]

PAGE _274_

1  15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2  207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3  withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian

4  in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5  this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on

6  December 10, 2007. The matter was heard on December 14, 2007. Having considered the

7  motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8  part and denied in part, and the request for sanctions is denied.

### II. BACKGROUND

9

10  On June 13, 2007, Mattel propounded its First Set of Requests for Production of

11  Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007,

12  Larian filed his initial responses and objections. The parties met and conferred, and on September

13  25, 2007, Larian served supplemental responses and objections.

14  Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

15  276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide

16  further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his

17  responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

18  76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

19  have not previously been produced." MGA's Opposition at pp. 1-2.

20  The remaining 32 Requests at issue can be grouped into ten categories: (1) personal

21  financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

22  telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

23  research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

24  arbitration; and (10) MGA Hong Kong and MGA Mexico.

25  //

26  _____

27  [1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                     2

EXHIBIT 19

PAGE 275

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _19_

PAGE _276_

1 | he will do so. Second, Larian's agreement to produce responsive documents is apparently limited
2 | to documents from his so-called "personal files." See Opposition at 2:2-3.

3 |      Mattel's counsel "never agreed that Larian could limit his response to the above requests
4 | to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his
5 | response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman.
6 | Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,
7 | Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding
8 | parties' "possession, custody or control." The limitation is also unworkable because, as Mattel
9 | points out, it "would create a situation by which responsive and highly relevant documents might
10 | never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and
11 | Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.

12 | Market Research for Products Not at Issue:  Request Nos. 79-81

13 |      In Request No. 79, Mattel seeks all documents relating to any focus groups relating to
14 | Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In
15 | his supplemental response, Larian agrees to produce the following documents, subject to his
16 | general objections:

17 |      Larian will produce all documents within his possession, custody, or control that
18 |      relate to focus groups for "MGA contested products" and "Mattel contested
     products," as those terms are defined in Mattel's First Requests for Production
19 |      regarding Claims of Unfair Competition, if any, and that have not already been
     produced, that he discovers in the course of his reasonable search and diligent
20 |      inquiry, and to which no privilege or other protection applies, including without
21 |      limitation, the attorney-client privilege or attorney's work product doctrine.

22 | Mattel's Consolidated Separate Statement at pp. 20-21.

23 |      In Request No. 80, Mattel seeks all documents relating to any services or work performed
24 | by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all
25 | videotapes, summaries, notes and reports associated therewith.  In his supplemental response,
26 | Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to
27 | the request and to which no privilege or other protection applies.

28 | Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _19_

PAGE _277_

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his

2 supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3 Angel or Bryant that are responsive to the request and to which no privilege or other protection

4 applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6 information. More specifically, Mattel contends that Request No. 79 seeks documents that bear

7 directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8 and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that

9 MGA is guilty of copying Mattel's Barbie and My Scene products.

10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an

11 example, Larian points to Request No. 80, which requests all documents relating to any services

12 or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13 and defenses in the action or any of the products at issue. Larian similarly contends that Request

14 Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

     defense in this case.

15    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16 is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested

17 documents are relevant to several issues in the case, including the origin, conception and creation

18 of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's

19 supplemental response to Request No. 79 is unduly restrictive. Among other things, the

20 definitions of "contested MGA products" encompass only those products that provide a basis for

21 any claim by MGA against Mattel, and not claims by Mattel against MGA.

22    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23 80-81 is denied. These requests, as drafted, are clearly overbroad because they have no

24 reasonable limitations on subject matter or time. In particular, the requests are directed to L.A.

25 Focus and Alaska Momma without regard to whether the services or work the companies

26 provided has any relation to any product at issue.

27    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT _19_

PAGE _278_

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7       Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10   Focus used. It is, however, not apparent how deviations from standard procedures would impact

    credibility or bias.

11       As to Request No. 81, Mattel contends that the documents showing the relationship

12   between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

13   specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

14   or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

15   claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

16   and Bryant's stories about how and when they came to be introduced. Mattel also contends that

17   documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

18   the issues of bias and credibility. Mattel's supposition about the types of documents that might

19   exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

20   not limited by either subject matter or time.

21       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

22   accordance with his supplemental responses.

23

24   Bryant's Attorney and Niece: Request Nos. 113-115

25       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26   Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27   114, Mattel seeks all documents, including without limitation all communications, between

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                    6
EXHIBIT 19
PAGE 279

1  Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2  Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3  relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4  other protection applies. Thus, the only issue is whether Larian should be required to produce

5  responsive documents that do not relate to Bratz, Angel or Bryant.

6          Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7  and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8  disclose relevant information regarding Mattel's claims for breach of contract and inducing

9  breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

   burden of demonstrating that the requests are overly burdensome.

11          Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13  do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

14  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15  Bryant may be relevant to the issues of credibility and bias.

16          Mattel contends that Request No. 115 seeks documents that are relevant to determine

17  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18  that had been installed and run on the hard drive. Bryant claims to have given his computer to his

19  niece. Mattel also contends that the requested documents are relevant to the issues of credibility

20  and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21  inadequate, because evidence of any communication between Larian and his niece, regardless of

22  subject matter, is significant.

23          Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24  because they lack any subject matter or time constraints. Further, Larian contends that the

25  requests constitute an improper fishing expedition and necessarily sweep in documents that are

26  not relevant to any claim or defense.

27  //

28

7

EXHIBIT _19_

PAGE _280_

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2    requests are overbroad because they are not focused on relevant subject matter and are untethered

3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7    responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8    accordance with his supplemental responses.

9

     The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

10

11    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

12    suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

13    documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

14    Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

15    and/or audio recordings and sworn testimony given by any person in such suit or arbitration

16    proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

17    resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

18    Larian. In his supplemental responses, Larian agrees to produce all documents referring or

19    relating to Bratz that are responsive to the requests and to which no privilege or other protection

     applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between

21    Larian and his brother are relevant because they involve, among other matters, the conception and

22    creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23    the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24    that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25    to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26    Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27    the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

EXHIBIT 19

PAGE 281

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8        Larian contends the instant requests are overbroad and unduly burdensome. Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17       Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations. Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23       Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel. For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

EXHIBIT 19

PAGE 282

1    also within the scope of Larian's proposed limitation and would have to be produced. Documents

2    relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3    produced. Further, Larian's proposed limitation does not necessarily foreclose discovery

4    regarding the appraisal of MGA prepared by Mr. Dutcher. In particular, documents relating to

5    MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6    projections must be produced if such documents refer or relate to Bratz. Accordingly, Larian

7    shall produce documents responsive to Request Nos. 123-125 in accordance with his

8    supplemental responses.

9

10   Telephone Records: Request Nos. 178-181

11          In Request No. 178, Mattel seeks all documents relating to, including without limitation

12   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

     from January 1, 1998 through January 1, 2001. Larian objects to this request.

13          In Request No. 179, Mattel seeks all documents relating to, including without limitation

14   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15   from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel. In his supplemental

16   responses, Larian agrees to produce documents responsive to Request No. 179. In response to

17   this motion, however, Larian contends that he should be permitted to produce documents

18   responsive to Request No. 179 in redacted form as discussed more fully below.

19          In Request No. 180, Mattel seeks all documents relating to, including without limitation

20   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21   from April 1, 2004 through June 1, 2004. Larian objects to this request.

22          In Request No. 181, Mattel seeks all documents relating to, including without limitation

23   phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24   at any time. In his supplemental response, Larian agrees to produce all documents pertaining to

25   communications made prior to January 1, 2001 that are responsive to the request and to which no

26   privilege or other protection applies.

27   //

28                                                                                            10
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _19_

PAGE _283_

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's
2   communications with Bryant and other Mattel employees while such employees may still have
3   been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel
4   contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and
5   Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them
6   to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are
8   relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show
9   communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent
10   they show communications with current and former Mattel employees, including Machado,
11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements
12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to
13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested
14   records in redacted form, and further, that the protective order in place is sufficient to protect
     Larian's privacy concerns.

15    Larian contends that the requests regarding telephone records are overbroad, completely
16   unbounded as to subject matter, and necessarily sweep in private information that is completely
17   irrelevant to any of the claims or defenses in the case. Larian also points out that the court
18   previously considered similar requests served on Bryant and allowed production of redacted
19   copies of telephone records as long as Bryant provided a signed verification that none of his
20   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,
21   Bryant was permitted to produce redacted phone records as long as he provided a "signed
22   verification that none of the telephone records that were redacted relate or refer in any way to
23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."
24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production
25   of Documents by Bryant). Larian contends that he should be permitted to redact responsive
26   documents consistent with the court's prior order. During the meet and confer, Larian offered to
27   provide redacted records and a signed verification that none of the redacted information was

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT _19_

PAGE _284_

1  relevant to the case, but Mattel did not respond to the offer.

2  Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3  relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4  request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5  private information that is completely irrelevant to the case. Larian should not be subjected to

6  such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7  the request to the communications, claims, and defenses identified above.

8  In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9  for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns. More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16  or that are otherwise relevant to the case.

17  Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

19  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

21  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

22  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

179.

23  Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24  is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25  to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27  without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

EXHIBIT _19_

PAGE _285_

1    Request No. 181 consistent with his supplemental response, and may produce such documents in

2    redacted form as specified above with respect to Request No. 179.

3

4    Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5            In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6    and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7    Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8    to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9    Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10   regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11   products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12   Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13   also contain admissions regarding the origin and conception of Bratz and statements relevant to

     damages.

14           Larian contends that the requests are overbroad and unduly burdensome, particularly

15   because several of the requests seek publicly available information.  Further, Larian points out

16   that the court has already considered and rejected as overbroad a nearly identical request served

17   on MGA that called for all documents relating to any communications by MGA with any news

18   organization regarding the contested MGA products or the contested Mattel products.  Larian

19   contends that the same reasoning applies to the instant requests.

20           Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21   199 is denied.  Although several of the requests encompass potentially relevant documents, the

22   requests are overbroad and encompass documents that have little to no relevance to the claims and

23   defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24   sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25   Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26   or damages.

27   //

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

13

EXHIBIT 19
PAGE 286

1       Furthermore, many of these overbroad requests seek publicly available information that is

2 readily accessible to Mattel for which Larian should not be burdened. To the extent the requested

3 documents and information are not publicly available, such documents and information are

4 marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5 In either case, the burden and expense of searching for and producing responsive documents are

6 unjustified.

7

8 <u>Communications With Mattel Employees: Request No. 198</u>

9       In Request No. 198, Mattel seeks all communications between Larian and any individual

10 while the individual was employed by Mattel. Mattel contends that this request is directly

11 relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

    burden of production.

12       Larian contends that the request is overbroad and unduly burdensome because it is

13 unrestricted as to time and subject matter. Larian also points out that the court has previously

14 found a similar request overbroad. Larian further contends that employees in the toy industry are

15 likely to maintain contacts with other toy manufacturers, and that a large corporation such as

16 Mattel is likely to have a high number of employees communicating with MGA or its officers,

17 which makes the request more unduly burdensome and unreasonable than it appears on its face.

18       Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19 to the specific and numerous allegations in the case regarding alleged trade secret theft. Although

20 the request is not limited by subject matter, it is limited in other respects to seek relevant

21 documents without imposing an undue burden. The request is limited to communications

22 between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23 Mattel. The request is also limited to only those communications that took place while the

24 individuals were employed at Mattel.

25       Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26 allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in

27 1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT _19_

PAGE _287_

1   No. 198 that are limited to the time frame 1999 to 2005.

2

3   <u>Personal Financial Data: Request Nos. 207-209 and 269</u>

4        In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5   or financial institutions and other banking relationships since January 1, 1999. In Request No.

6   208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7   income for each year from 1999 to the present. In Request No. 209, Mattel seeks Larian's federal

8   and state tax returns for each year from 1999 to the present. In Request No. 269, Mattel seeks

9   documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10   1999 to the present.

11        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12   information showing the timing of payments to Bryant and others, which in turn is relevant to the

13   timing of the development of Bratz and issues of credibility. Mattel contends that Request Nos.

14   208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15   condition, which in turn is relevant to damages. Further, Mattel contends that it is entitled to

16   information regarding the sources of Larian's income to determine whether they are attributable

   to the alleged misconduct and thus subject to disgorgement.

17        Larian contends that the requested personal financial information is not relevant to the

18   claims or defenses at issue. More specifically, Larian contends that neither the names of his

19   banks nor his gross income have any bearing upon either compensatory or punitive damages or

20   Mattel's claim for disgorgement of profits. Larian further contends that there is no support for

21   Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

22        Larian also contends that all three of the requests overlap substantially with requests

23   Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

24   burden posed by these requests to him. Further, Larian contends that the court has previously

25   found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

26   no reason why the same result should not apply here.

27        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted. The

28

EXHIBIT _19_

PAGE _288_

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case. For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz. The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages. Further, Larian has failed to establish that the requests are

6   unduly burdensome. Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8      Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269. In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  Storage Devices: Request Nos. 222 and 224

13     In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant. Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form. Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19     Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests. Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system." See

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes. Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27     Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT *19*

PAGE *289*

1  With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2  authorize the routine production of a party's electronic devices. Mattel attempts to justify

3  Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4  Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5  laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6  months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7  destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8  these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9  has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

16  copies of Bratz-related video and audio content, but that is what the request seeks.

17      Request No. 222 is also duplicative because it requests information that is sought in

18  numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

19  requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

20  with the requests, Larian was required to search for documents in both hard-copy and electronic

21  form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22  devices.

23      Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24  and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices:  Request Nos. 225, 227 and 228

25      In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

26  relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 19

PAGE 290

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2       Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7       Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10   <u>MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273</u>

11       In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13   Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

    produce documents sufficient to show the ownership of these entities.

14       Mattel contends that the requests seek information relevant to refute MGA Mexico's

15   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16   attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17   these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18   inadequate because it would allow Larian to withhold contradictory information and conceal the

19   true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20   the ownership of these entities at times when different allegedly wrongful acts took place and to

21   determine if the ownership structure changed as a means of concealing assets or concealing the

22   payments of commercial bribes.

23       Larian contends that these requests should not be made to him, but to the entities

24   themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26   served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27   burdensome, and that at most, he should only have to produce a list of owners.

28

18

EXHIBIT _19_

PAGE _291_

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source. Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

                                    IV. CONCLUSION

8    For the reasons set forth above, it is hereby ordered as follows:

9    1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

10   produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11   146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged

12   documents that are responsive to these Requests.

13   2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14       A.    produce, without limitation, all non-privileged documents that are

15   responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and

16   269; and

17       B.    produce, in accordance with his supplemental responses, non-privileged

18   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19   209.

20       C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21   181 in redacted form as provided herein.

22       D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23   209, 222, 224, 225, 227, 228, 272 and 273.

24   3.    Larian shall produce all non-privileged documents that are required by this Order

25   that are in his possession, custody or control and that have not already been produced no later

26   than January 11, 2008.

27   4.    Larian shall produce a privilege log no later than January 15, 2008.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                    19

                                              EXHIBIT _19_

                                              PAGE _292_

5.      Mattel's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: December 31, 2007

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

EXHIBIT _19_

PAGE _293_