# THIS PAGE

# INTENTIONALLY

# LEFT BLANK

# THIS PAGE

# INTENTIONALLY

# LEFT BLANK

# THIS PAGE

# INTENTIONALLY

# LEFT BLANK

# EXHIBIT 1

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 2

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 3

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 4

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 5

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 6

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 7

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 8

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 9

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant, | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>NOTICE OF SUBPOENA ISSUED TO BINGHAM MCCUTCHEN LLP |
| AND CONSOLIDATED CASES | |

EXHIBIT _____9_____

PAGE _____62_____

つ-1つ.

07975/2794934 1

NOTICE OF SUBPOENA

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, pursuant to Rule 45 of the <u>Federal Rules of</u>

3    <u>Civil Procedure</u>, Mattel, Inc., has issued a subpoena attached as Exhibit 1 requesting

4    the production of specified documents to the following witness:

5        Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los

6    Angeles, CA 90071-3106.

7

8    DATED: February 12, 2009        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
9

10                                   By /s/ Michael T. Zeller
11                                      Michael T. Zeller
                                        Attorneys for Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                          EXHIBIT _____9_____

28                          PAGE _____63_____

07975/2794934.1

-2-

NOTICE OF SUBPOENA

# EXHIBIT 1

EXHIBIT _____ 9

PAGE _____ 64

AO88 (Rev. 12/07) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL        CALIFORNIA

CARTER BRYANT, an individual,

                V.

MATTEL, INC., a Delaware corporation,

**SUBPOENA IN A CIVIL CASE**

Case Number: CV 04-9049 SGL (RNBx)
Consolidated with cases 04-9059
and 05-2727

TO: Bingham McCutchen, LLP
     355 South Grand Avenue, Suite 4400
     Los Angeles, CA 90071-3106

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | February 26, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael T. Zeller /s/* Attorney for Plaintiff, Mattel, Inc. | February 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael T. Zeller, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT _____ 9 _____

PAGE _____ 65 _____

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |
| | |

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT _____9_____

PAGE _____66_____

## ATTACHMENT A

 1. All documents referring or relating to any fee agreement or fee arrangement referring or relating to Bingham McCutchen LLP's ("Bingham") representation of Vision Capital, LLC ("Vision Capital") and/or Omni 808 Investors, LLC ("Omni 808"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements or arrangements.

 2. Documents sufficient to identify each and every person or entity billed for, liable to pay, responsible for payment of, or who has paid or promised to pay, whether directly or indirectly, Bingham's fees in connection with Bingham's representation of Omni 808 or Vision Capital.

 3. All documents referring or relating to the formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington Financial Limited ("Lexington"), including the source(s) and terms of such capitalization, funding and/or credit.

 4. All documents identifying any member, managing member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or Lexington.

 5. All contracts and agreements, and proposed or offered contracts or agreements, referring or relating to Omni 808, Vision Capital and/or Lexington, including without limitation all drafts thereof disclosed to, shared with, exchanged with or received from Wachovia, MGA Entertainment, Inc., Fred Mashian, Leon Neman, Isaac Larian and/or any other person or entity other than Omni 808.

 6. All communications referring or relating to Omni 808, Vision Capital and/or Lexington. For purposes of this Request, Bingham may exclude (a) privileged communications with its client Omni 808 after its attorney-client relationship arose; (b) privileged communications with its client Vision Capital after its attorney-client relationship arose; and (c) communications with Mattel's counsel or the Court in the matter of Carter Bryant v. Mattel, No. CV 04-9059, and consolidated cases.

 7. Documents sufficient to identify any instances in which Bingham has represented MGA Entertainment, Inc., any affiliate of MGA Entertainment, Inc., Fred Mashian, Leon Neman, any entity associated with Leon Neman, Yoel Neman, Monia Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian and/or any entity associated with Isaac Larian at any time since June 1, 2001.

07975/2794780.1

EXHIBIT _____ 9

PAGE _____ 67

# EXHIBIT 10

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

**EXHIBIT 11**

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 12

1  Bingham McCutchen LLP
   TODD E. GORDINIER (SBN 82200)
2  todd.gordinier@bingham.com
   PETER N. VILLAR (SBN 204038)
3  peter.villar@bingham.com
   JENNIFER A. LOPEZ (SBN 232320)
4  jennifer.lopez@bingham.com
   600 Anton Boulevard
5  18th Floor
   Costa Mesa, CA  92626-1924
6  Telephone:  714.830.0600
   Facsimile:  714.830.0700
7
8  Attorneys for Non-party
   OMNI 808 INVESTORS, LLC
9
10              UNITED STATES DISTRICT COURT
11            CENTRAL DISTRICT OF CALIFORNIA
12                    EASTERN DIVISION
13

| | |
|---|---|
| Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | **OMNI 808 INVESTORS, LLC'S *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSE AS A MATTER OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION** |
| v. | |
| Mattel, Inc., a Delaware Corporation, | |
| Defendant. | |
| | Judge:  Hon. Stephen G. Larson |
| AND CONSOLIDATED ACTIONS | |

22
23
24
25
26
27
28

*2-3-09*

1        Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule

2    24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and

3    Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of

4    responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a

5    Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to

6    Omni's status as a secured creditor of MGA.

7        Omni makes this application on the grounds that Mattel's request for the

8    appointment of a receiver at MGA may have an immediate and irreparable adverse

9    impact on Omni, MGA's largest secured creditor.  Omni satisfies all of the

10    requirements to intervene as a matter of right:  the application is timely; Omni has

11    a significantly protectable interest relating to the property or transaction involved

12    in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's

13    interest unless intervention is allowed; and the existing parties do not adequately

14    represent Omni's interest.  In the alternative, the Court should exercise its

15    discretion to grant permissive intervention because Omni has a claim that shares a

16    common question of law or fact with the main action.

17        Good cause exists to seek this relief on an *ex parte* basis because Mattel has

18    made its request for the appointment of a receiver on an *ex parte* basis.  If the

19    Court appoints a receiver, Omni may suffer irreparable harm.

20        Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave

21    notice of this *ex parte* application and the relief being sought to counsel for MGA,

22    Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-

23    687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California

24    90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &

25    Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th

26    Floor, Los Angeles, California 90017-2543).  Counsel for MGA stated that MGA

27    will not oppose this application.  Counsel for Mattel stated that Mattel will oppose

28

A/72829697.5/3009108-0000335082

EXHIBIT 12

PAGE 141

1   this application because it is Mattel's view that MGA as debtor can adequately

2   protest the interests of its largest secured creditor.  Omni disagrees.

3       This application is based on this Notice of *Ex Parte* Application, the

4   accompanying Memorandum of Points and Authorities, the records and files of this

5   Court, including without limitation the Phase 1 trial record, and all other matters of

6   which the Court may take judicial notice.

7

8   DATED:  February 3, 2009        Bingham McCutchen LLP

9

10                          By: _____

11                              Todd E. Gordinier
                               Attorneys for Non-party
12                              Omni 808 Investors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

EXHIBIT _____ 12

PAGE _____ 142

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 3

III.  LEGAL ARGUMENT .............................................................................. 6

    A.    Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor ........................................................................................... 6

        1.    Omni's Application Is Timely. ........................................ 7

        2.    Omni Has a Significantly Protectable Interest in the Receivership Issues Involved in the Pending Litigation. .......... 7

        3.    The Appointment of a Receiver May Impair or Impede Omni's Ability to Protect Its Interests. ................................ 8

        4.    The Existing Parties May Not Adequately Represent Omni's Interest. ......................................................... 9

    B.    In the Alternative, This Court Should Grant Omni Permissive Intervention ........................................................................ 10

IV.   CONCLUSION ...................................................................................... 11

A/72829697.5/3009108-0000335082

EXHIBIT ___12___

PAGE ___143___

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) .................................................................. 6, 9

*Beckman Indus. Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ....................................................................... 6

*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
    792 F. Supp. 870 (S.D.N.Y. 1991) .............................................................. 8

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
    187 F. Supp. 910 (S.D. Ohio 2001) ............................................................ 9

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ....................................................................... 6

*Engra, Inc. v. Gabel,*
    958 F.2d 643 (5th Cir. 1992) ....................................................................... 7

*Forest Conservation Council v. United States Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995) ....................................................................... 7

*Kootenai Tribe v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) ................................................................... 10

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) ..................................................................... 6

*Lockyer v. U.S.,*
    450 F.3d 436 (9th Cir. 2006) ....................................................................... 6

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
    906 F. Supp. 428 (E.D. Mich. 1995) ........................................................... 9

*Mountain Top Condominium v. Dave Stabbert Master Builder,*
    72 F.3d 361 (3rd Cir. 1995) ......................................................................... 8

*NL Indus. v. Secretary of Interior,*
    777 F.2d 433 (9th Cir. 1985) ....................................................................... 8

-ii-

A/72829697.5/3009108-0000335082

EXHIBIT _____ 12

PAGE _____ 144

*Reich v. ABC/York-Estes Corp.,*
    64 F.3d 316 (7th Cir. 1995)............................................................................3

*Rumbaugh v. Beck,*
    491 F. Supp. 511 (E.D. Pa. 1980)................................................................9

*Saluck v. Rosner,*
    1999 WL 46620 (E.D. Pa. Jan. 6, 1999)......................................................9

*San Juan County v. U.S.,*
    503 F.3d 1163 (10th Cir. 2007)....................................................................7

*SEC v. Flight Transp. Corp.,*
    699 F.2d 943 (8th Cir. 1983)........................................................................8

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993)......................................................................8

*Southwest Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001)....................................................................3, 7

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987) .....................................................................................6

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) .....................................................................................9

*U.S. v. South Florida Water Dist.,*
    922 F.2d 704 (11th Cir. 1991)......................................................................7

*United States v. State of Washington,*
    86 F.3d 1499 (9th Cir. 1996)........................................................................7

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989)......................................................................11

*Yniguez v. Arizona,*
    939 F.2d 727 (9th Cir. 1991)........................................................................8

RULES

Fed. R. Civ. P. 24(a) ..........................................................................................6

Federal Rule of Civil Procedure 24(b)(2)..........................................................10

-iii-

EXHIBIT ____12____

PAGE ____145____

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor of MGA Entertainment, Inc. ("MGA").  Omni recently was served with a sweeping subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting the production of documents relating to Omni's formation, governance, finances, business relationships and transactions.  Mattel's papers in support of its request to have the Court appoint a receiver to "oversee and control all business and financial aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel purports to describe to this Court.  Because the appointment of a receiver could significantly and irreparably harm Omni's interests as a senior secured creditor of MGA, Omni hereby seeks leave of Court to intervene in this action for this limited purpose.

Mattel's *ex parte* application is replete with false and misleading representations and demonstrates Mattel's profound misunderstanding, *inter alia*, of Omni and the circumstances surrounding its recent purchase of MGA's debt from non-party Wachovia.  The actual background of this transaction is both straightforward and easily explained.  In October 2006, Wachovia Bank, National Association and a syndicate of other financial institutions (collectively, "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank Credit Facility").  In July 2008, Wachovia accelerated the maturity of the outstanding debt obligations owed to Wachovia by MGA (over $310 million), demanding full and immediate payment of the entire unpaid balance as it was entitled to do under the terms of its Senior Bank Credit Facility.

In response to Wachovia's accelerated loan payment demand, MGA began efforts to find someone who would purchase the Senior Bank Credit Facility from Wachovia.  Neil Kadisha, the Managing Partner of a diversified investment firm, Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

1    regarding a potential purchase of the Senior Bank Credit Facility. In September

2    2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for

3    this transaction) entered into an assignment and exchange agreement whereby

4    Omni acquired all right, title and interest in the Senior Bank Credit Facility

5    excluding approximately $21 million which was retained by Wachovia. Omni's

6    purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,

7    arms-length business deal between non-parties to this action.

8          In support of its argument for the appointment of a receiver, Mattel

9    insinuates, without any evidence, that there was something untoward about the

10   timing and circumstances of Omni's debt purchase transaction. Mattel falsely

11   represents to the Court that MGA received new "sudden funding" from an "off-

12   shore, non-operating" entity during the trial of this action. Even allowing for its

13   ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason

14   for such language. If by "funding" Mattel means the loan from Wachovia, that

15   funding was provided by Wachovia to MGA under the Senior Bank Credit Facility

16   beginning in 2006 -- *long before the trial and any judgment was entered against*

17   *MGA in this action in 2008*. If by "funding" Mattel means the Omni-Wachovia

18   transaction, the monies flowed *from Omni to Wachovia* as consideration for the

19   purchase of the debt owed by MGA. The timing of the Omni-Wachovia

20   transaction in September 2008 was driven by a host of factors, most proximately

21   by Wachovia's decision to accelerate the outstanding debt obligation under the

22   Senior Bank Credit Facility.

23         Moreover, the source was not an "off-shore, non-operating" entity, as Mattel

24   repeatedly suggests in its application. Wachovia (defined to include it and its

25   syndicate of bank and other institutional lenders), the original source of the

26   funding, are all substantial financial institutions; Omni, the assignee of the loan, is

27   a California limited liability company. Mattel's paranoiac rhetoric regarding this

28   transaction and the source of the funding is unfounded.

- 2 -

A/72829697.5/3009108-0000335082

EXHIBIT _____ 12

PAGE _____ 147

1    Under federal law, a non-party is entitled to intervene *as a matter of right*

2  when it claims an interest relating to the property or transaction that is the subject

3  of the action and is so situated that disposing of the action may as a practical

4  matter impair or impede its ability to protect its interest.  A non-party may also

5  intervene, in the discretion of the court, when it has a claim that shares with the

6  main action a common question of law or fact.

7    Here, Omni has a secured interest in MGA's assets, including, *inter alia,*

8  MGA's inventory and accounts receivable, that is far greater and superior to any

9  alleged interest of unsecured creditors like Mattel.  Mattel is asking this Court for

10  an extraordinary remedy, solely to suit its own litigation and competitive interests,

11  which if granted could well cripple MGA's operations and would certainly impair

12  the security interests of Omni and other creditors.  Indeed, the proffered basis for

13  Mattel's opposition to Omni's application for leave to intervene -- that a debtor can

14  adequately represent the interests of its largest secured creditor -- speaks volumes

15  about Mattel's approach not only to this issue but also to its actual motivations in

16  making its request for a receiver.

17    For these reasons, Omni respectfully requests that the Court grant it leave to

18  intervene in this action for the purposes of challenging the appointment of a

19  receiver and related issues that could adversely affect Omni's security interests.

20

21  **II.    STATEMENT OF FACTS[1]**

22    On or about October 27, 2006, MGA entered into a Credit Agreement with

23  Wachovia Bank, National Association and a syndicate of other banks and

24

25  [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory
26  allegations contained in the motion.  *Southwest Center for Biological Diversity v.
    Berg,* 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.,* 64 F.3d
27  316, 321 (7th Cir. 1995).

28

- 3 -

A/72829697.5/3009108-0000335082

EXHIBIT _____ 12

PAGE _____ 149

1   institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2   provided a senior revolving credit facility to MGA in an aggregate available

3   amount for borrowing up to $400 million, secured by a senior perfected security

4   interest in, *inter alia*, all of MGA's inventory and accounts receivable (the "Senior

5   Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6   Credit Facility to be in default and accelerated the maturity of the outstanding debt

7   obligations owed to Wachovia by MGA, demanding full and immediate payment

8   of the entire unpaid $313,496,700 balance of the loans.

9        In response to Wachovia's accelerated loan payment demand, MGA

10   approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11   currently the Managing Partner of a diversified investment firm, Omninet Capital,

12   LLC.[2] Mr. Kadisha and Omninet Capital, LLC have substantial experience

13   evaluating and investing in distressed debt and distressed companies. Mr. Kadisha

14   immediately commenced negotiations with Wachovia regarding a potential

15   purchase of the Senior Bank Credit Facility from Wachovia.

16        On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17   the Senior Bank Credit Facility, including the outstanding debt obligations from

18   Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19   amount of the debt obligations outstanding as of the acceleration date). After a

20   couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21   in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22   Credit Facility to Omni (the retained amount was then exchanged for unsecured

23   promissory notes issued by MGA to Wachovia). In order to fund the acquisition of

24

25   [2] Omni is loathe to address the gratuitous ad hominem attacks concerning Mr.
     Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which
26   are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by
     those matters Omni is prepared to do so. Suffice it to say for now that the civil
27   litigation matter referred to by Mattel has not yet been finally resolved.

28

-4-

EXHIBIT _____ 12

PAGE _____ 149

1   the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2   formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3   liability company ("Omni")[3]. The formation of a special purpose entity is very

4   common for these types of transactions and is neither suspicious nor improper.

5          On or about September 3, 2008, Omni and Wachovia entered into a written

6   Master Assignment and Exchange Agreement whereby Omni acquired all right,

7   title and interest in the debt obligations under the Senior Bank Credit Facility,

8   other than the $21,944,769 exchanged for the unsecured promissory notes issued

9   by MGA to Wachovia Bank, National Association and the other original lenders.

10  As a result of the agreement, Omni stepped into and presently stands, as successor-

11  in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12  has a senior perfected security interest in MGA's assets, including, *inter alia*,

13  MGA's inventory and accounts receivable. Omni's secured interest is superior to

14  that of any potential unsecured creditors, including Mattel.

15         Omni has a compelling interest in the financial health and stability of MGA

16  and its assets. If MGA fails, MGA's ability to repay the outstanding debt

17  obligation in excess of $300 million owed to Omni will certainly be imperiled.

18  The appointment of a receiver to "oversee and control all financial and business

19  aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20  operate independently and efficiently and would infringe upon, or potential

21  foreclose, the interests of Omni and other creditors.

22

23

24

25

26  [3] Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
    application, which further demonstrates Mattel's confusion regarding the entities
27  involved.

28

-5-

EXHIBIT ____12____

PAGE ____150____

## III.   LEGAL ARGUMENT

### A.   Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a).  Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also, Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006).  The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).  The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly*, 159 F.3d at 409. "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations.  We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors:  (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

- 6 -

EXHIBIT _____ 12

PAGE _____ 151

1   470, 473 (9th Cir. 1992).  "A nonparty may have a sufficient interest for some

2   issues in a case but not others, and the court may limit intervention accordingly."

3   *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4   *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5             1.   <u>Omni's Application Is Timely.</u>

6        Courts generally consider the following factors relevant to the issue of

7   timeliness: (1) the stage of the proceedings at the time the applicant seeks to

8   intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9   leave to intervene; and (3) any reason for and the length of delay in seeking

10  intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11  1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12       Here, Omni's application is timely.  On or about January 9, 2009, Mattel

13  served a subpoena on Omni requesting the production of documents relating to

14  Omni's formation, governance, finances, business relationships and transactions.

15  Omni also recently learned that Mattel filed an *ex parte* application for the

16  appointment of a receiver at MGA.  The Court has yet to decide the pending

17  request for the appointment of a receiver and Omni has acted without delay.

18            2.   <u>Omni Has a Significantly Protectable Interest in</u>

19                   <u>the Receivership Issues Involved in the Pending</u>
                     <u>Litigation.</u>

20       "[W]hether an applicant for intervention demonstrates sufficient interest in

21  an action is a practical, threshold inquiry.  No specific legal or equitable interest

22  need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23  810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24  Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25  F.3d 1489, 1493 (9th Cir. 1995).  "It is generally enough that the interest [asserted]

26  is protectable under some law, and that there is a relationship between the legally

27  protected interest and the claims at issue." *Southwest Center for Biological*

28  *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

-7-

EXHIBIT _____ 12

PAGE _____ 152

1   Cir. 1993)).  *See, e.g., NL Indus. v. Secretary of Interior*, 777 F.2d 433, 435 (9th

2   Cir. 1985) (corporate property owner that held unpatented mining claim on

3   particular property permitted to intervene in dispute over other mining claims on

4   that property).  An intervenor's interest must be "significantly protectable such that

5   it will be directly and immediately affected by the litigation." *Werbungs und*

6   *Commerz Union Austalt v. Collectors' Guild, Ltd.*, 792 F. Supp. 870, 874

7   (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8   had secured appeal bond and owned collateral securing letter of credit).

9        Here, Omni is the largest secured creditor of MGA, with a superior interest

10  in MGA's assets to any unsecured creditors including Mattel.  Omni's interest is

11  directly related to issues raised by Mattel in its *ex parte* application for the

12  appointment of a receiver.  Therefore, Mattel has a significantly protectable

13  interest relating to the property or transaction which is the subject of this action.

14         3.    The Appointment of a Receiver May Impair or
15               Impede Omni's Ability to Protect Its Interests.

16        In order to show that the disposition of the action may impair or impede the

17  ability to protect a non-party's interest, the non-party need only show a "practical"

18  impairment, "not whether the decision itself binds them." *Yniguez v. Arizona,* 939

19  F.2d 727, 735 (9th Cir. 1991).  Courts consistently allow creditors to intervene "of

20  right" where a receiver has been appointed and taken control of a debtor's assets.

21  The rationale is that the first creditor's action may effectively foreclose the

22  interests of other creditors. *See Sierra Club v. U.S.*, 995 F.2d 1478, 1486 (9th Cir.

23  1993); *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24  *Top Condominium v. Dave Stabbert Master Builder*, 72 F.3d 361, 366-367 (3rd

25  Cir. 1995).

26        Here, the appointment of a receiver to "oversee and control all financial and

27  business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28  impair Omni's ability to protect its senior perfected security interest in its

- 8 -

EXHIBIT ____12____

PAGE ____153____

1    collateral, which includes MGA's inventory and accounts receivable and

2    ultimately in MGA's ability to repay its outstanding secured debt obligation to

3    Omni of in excess of $300 million. The financial and business affairs of MGA are

4    best handled independently by businessmen who understand its products and its

5    industry.[4]

6                    4.    The Existing Parties May Not Adequately
7                          Represent Omni's Interest.

8              In order to demonstrate the inadequacy of the existing parties to protect its

9    interest, the applicant's burden is minimal and is satisfied so long as the applicant

10   shows that representation by existing parties *"may be"* inadequate. *Trbovich v.*

11   *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12   three factors in determining the adequacy of representation: "(1) whether the

13   interest of a present party is such that it will undoubtedly make all of a proposed

14   intervenor's arguments; (2) whether the present party is capable and willing to

15   make such arguments; and (3) whether a proposed intervenor would offer any

16   necessary elements to the proceeding that other parties would neglect." *Arakaki*,

17   324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18   778 (9th Cir.1986)). "The most important factor in determining the adequacy of

19   representation is how the applicant's interest compares with the interest of existing

20   parties." *Id.*

21

22   ---

[4] Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.,*
23   *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
     Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24   where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
     Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25   of a receivership would result in more harm than good in this case."); *Rumbaugh v.
     Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26   was presently operating in a successful manner, appointment of a receiver would
     "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner*,
27   1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
     of a solvent corporation is a drastic remedy.").

28

- 9 -

EXHIBIT _____ 12

PAGE _____ 154

1       Here, the interests of the present parties are not such that they will

2  undoubtedly make all of Omni's arguments in opposition to the appointment of a

3  receiver. Obviously Mattel's interests are directly at odds with Omni's interests.

4  Further, although MGA also opposes the appointment of a receiver, there is no

5  reason to believe that it can or will make all of Omni's arguments on its behalf.

6  Omni's primary interest is in MGA's ability to repay its secured debt obligation of

7  in excess $300 million owed to Omni. Moreover, Omni is in the best position to

8  describe the facts and circumstances surrounding its purchase of the Senior Bank

9  Credit Facility from Wachovia.

10       According to Mattel's counsel, it is Mattel's view that MGA as debtor can

11  adequately protect the interests of its largest secured creditor. Mattel's position is

12  nonsensical as the financial interests of a debtor and secured creditor are, on their

13  face, aligned differently. Therefore, the existing parties may not adequately

14  represent Omni's interest regarding the appointment of a receiver and other issues

15  relating to Omni's status as a secured creditor.

16  **B.    In the Alternative, This Court Should Grant Omni**
17         **Permissive Intervention**

18       Even if Omni were not entitled to intervene as a matter of right, the Court

19  should exercise its discretion and permit its intervention in this matter. Under

20  Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be

21  granted whenever the "applicant's claim . . . and the main action have a question of

22  law or fact in common," and when the intervention would not "unduly delay or

23  prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.

24  24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*

25  *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed

26  intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'

27  interest relating to the property or transaction which is the subject of the action.'"

28  *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

1   *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2   requirements.

3       Here, as explained above, there are common questions of law and fact

4   between Omni's claims and the issues raised in Mattel's application to appoint a

5   receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6   adjudication of the rights of the original parties.  Omni's participation will be

7   limited to challenging Mattel's request to appoint a receiver and protecting its

8   interests as a secured creditor.  The burden is on the parties to plead and prove any

9   alleged prejudice.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11   **IV.   CONCLUSION**

12       For the foregoing reasons, Omni respectfully requests the Court grant this

13   application and authorize it to intervene for the limited purpose of responding to

14   Mattel's request for the appointment of a receiver for MGA and all other issues

15   related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17   DATED:  February 3, 2009        Bingham McCutchen LLP

18

19

20                                         By: _____

                                         Todd E. Gordinier

21                                          Attorneys for Non-party

                                       Omni 808 Investors, LLC

22

23

24

25

26

27

28

A/72829697.5/3009108-0000335082

EXHIBIT _____ 12

PAGE _____ 156

# EXHIBIT 13

1  Bingham McCutchen LLP
   TODD E. GORDINIER (SBN 82200)
2  todd.gordinier@bingham.com
   PETER N. VILLAR (SBN 204038)
3  peter.villar@bingham.com
   JENNIFER A. LOPEZ (SBN 232320)
4  jennifer.lopez@bingham.com
   600 Anton Boulevard
5  18th Floor
   Costa Mesa, CA  92626-1924
6  Telephone:  714.830.0600
   Facsimile:  714.830.0700
7
8  Attorneys for Non-party
   OMNI 808 INVESTORS, LLC
9
                UNITED STATES DISTRICT COURT
10
               CENTRAL DISTRICT OF CALIFORNIA
11
                      EASTERN DIVISION
12

13

14  Carter Bryant, an individual,        Case No. CV 04-9049 SGL (RNBx)

15            Plaintiff,                  **OMNI 808 INVESTORS, LLC'S
                                          REPLY MEMORANDUM IN
16            v.                          SUPPORT OF *EX PARTE*
                                          APPLICATION FOR LEAVE TO
17  Mattel, Inc., a Delaware Corporation, INTERVENE FOR LIMITED
                                          PURPOSE AS A MATTER OF
18            Defendant.                  RIGHT OR, IN THE
                                          ALTERNATIVE, FOR PERMISSIVE
19                                        INTERVENTION**

20                                        Judge:  Hon. Stephen G. Larson

21

22  AND CONSOLIDATED ACTIONS.

23

24

25

26

27

28

A/72837928.2

EXHIBIT ___13___

PAGE ___157___

1

## TABLE OF CONTENTS

2                                                                                    Page

3   I.     INTRODUCTION .............................................................................. - 1 -

4   II.    OMNI IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT
           FOR THE LIMITED PURPOSE OF PROTECTING ITS STATUS
5          AS A SECURED CREDITOR.................................................................. - 4 -

6          A.    Omni Has Established a Significantly Protectable Interest in the
                 Receivership Issues Involved in the Pending Litigation.................. - 5 -

7          B.    Omni Has Established That The Appointment of a Receiver
                 May Impair or Impede Omni's Ability to Protect Its Interests ........ - 8 -

8          C.    Omni Has Established That The Existing Parties May Not
                 Adequately Represent Omni's Interests............................................ - 9 -
9
           D.    Omni's Application Is Timely............................................................ - 11 -

10  III.   THE COURT SHOULD GRANT OMNI PERMISSIVE
           INTERVENTION IN THE ALTERNATIVE.......................................... - 11 -
11
    IV.    CONCLUSION................................................................................... - 12 -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

EXHIBIT _____ 13

PAGE _____ 158

1

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alisal Water Corp. v. Silverwood Estates,*
   370 F.3d 915 (9th Cir. 2004) ....................................................................7, 8

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ...............................................................4, 5, 10

*Beckman Indus. Inc. v. International Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) ..........................................................................5

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
   187 F. Supp. 910 (S.D. Ohio 2001) ................................................................9

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) .......................................................................4, 5

*Engra, Inc. v. Gabel,*
   958 F.2d 643 (5th Cir. 1992) ........................................................................11

*Forest Conservation Council v. United States Forest Serv.,*
   66 F.3d 1489 (9th Cir. 1995) ..........................................................................5

*Kootenai Tribe v. Veneman,*
   313 F.3d 1094 (9th Cir. 2002) ......................................................................11

*League of United Latin American Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) ........................................................................5

*Lockyer v. U.S.,*
   450 F.3d 436 (9th Cir. 2006) ..........................................................................4

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
   906 F. Supp. 428 (E.D. Mich. 1995) ..............................................................9

*Rissetto v. Plumbers and Steamfitters Local 343,*
   94 F.3d 597 (9th Cir. 1996) ............................................................................6

*Rumbaugh v. Beck,*
   491 F. Supp. 511 (E.D. Pa. 1980) ..................................................................9

ii

EXHIBIT _____13_____

PAGE _____159_____

*Saluck v. Rosner,*
    1999 WL 46620 (E.D. Pa. Jan. 6, 1999)...................................................................9

*San Juan County v. U.S.,*
    503 F.3d 1163 (10th Cir. 2007) ...........................................................................5

*SEC v. Flight Transp. Corp.,*
    699 F.2d 943 (8th Cir. 1983) ........................................................................8, 10

*Southwest Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .........................................................................5, 7

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987)...............................................................................................5

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972)...............................................................................................9

*U.S. v. South Florida Water Dist.,*
    922 F.2d 704 (11th Cir. 1991) ............................................................................5

*United States v. State of Washington,*
    86 F.3d 1499 (9th Cir. 1996) .............................................................................11

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989) .............................................................................12

*Yniguez v. Arizona,*
    939 F.2d 727 (9th Cir. 1991) ..............................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a)...................................................................................................4

Fed. R. Civ. P. 24(b)(2)............................................................................................11

Federal Rule of Civil Procedure 24(b)(1) .............................................................11

Rule 11 .........................................................................................................................2

Rule 24 ....................................................................................................................2, 4

Rule 24(a)(2) ...............................................................................................................4

iii

EXHIBIT _____ 13

PAGE _____ 160

1    **I.    INTRODUCTION**

2           Mattel, Inc.'s opposition to Omni 808 Investors, LLC's *ex parte* application

3    to intervene for a limited purpose in this action reveals much more than Mattel's

4    profound misunderstanding regarding Omni, its principals, and its acquisition of

5    MGA's debt obligations from Wachovia.  Regrettably, Mattel's opposition

6    demonstrates its willingness to intentionally mislead the Court with false,

7    irrelevant and unsupported allegations, and personal attacks, in order to silence a

8    non-party with contrary viewpoints regarding, *inter alia*, Mattel's request for the

9    appointment of a receiver.

10          The first and most glaring problem with Mattel's opposition is its argument

11   that Omni has failed to establish a "bona fide interest" in MGA's assets.  This

12   argument is ironic, to be charitable, given that it is *Mattel* who first brought

13   Omni's secured interest in MGA's assets to the Court's attention.  Indeed, in

14   support of Mattel's *ex parte* application for the appointment of a receiver, Mattel

15   represented to this Court (supported by a sworn declaration of its counsel) that "*a*

16   *new creditor, Omni 808 International (sic), LLC ("Omni") has take (sic) an (sic)*

17   *security interest in all or substantially all of MGA's assets" and "is now*

18   *apparently one of MGA's largest creditors (and perhaps its largest)*."  (Mattel's

19   Ex Parte Application for Appointment of a Receiver, 5:7-8; 6:15-16.)

20          Mattel's attempt to simultaneously argue that Omni *has a security interest*

21   *in all or substantially all of MGA's assets* (to support its receiver application) and

22   that Omni *does not have a bona fide interest in MGA's assets* (to oppose Omni's

23   intervention application) is not only telling but entirely unavailing.  Indeed, Omni

24   set forth detailed facts in its *ex parte* application regarding its agreement with

25   Wachovia whereby Omni acquired all right, title and interest in the Senior Bank

26   Credit Facility and, as a result, has a senior perfected security interest in MGA's

27   assets, including MGA's inventory and accounts receivable.  These facts "must be

28

A/72837928 2

EXHIBIT _____13_____

PAGE _____161_____

1   accepted as true" for purposes of this application. Mattel has offered no evidence

2   purporting to contest any of these facts.

3          Faced with the fact that Omni is indeed the largest secured creditor of MGA,

4   a position superior to any claim that can be made by Mattel, Mattel argues that

5   Omni's position as a secured creditor does not justify intervention. In making this

6   argument, Mattel ignores the relevant legal factors cited by Omni and the

7   applicable authority on which they depend. Mattel instead relies upon inapplicable

8   cases wherein a potential creditor is seeking to intervene in a lawsuit *for all*

9   *purposes* claiming a general interest in a defendant's assets based on, *inter alia*, a

10   speculative recovery in an unrelated civil action.

11          Here, as detailed in its application, Omni is seeking to intervene for a *limited*

12   *purpose* in connection with Mattel's request for the appointment of a receiver so it

13   can protect its position as MGA's largest secured creditor. Mattel fails to cite a

14   single case where a court in this circuit, or any circuit, denied a creditor's

15   application to intervene for such a limited purpose. The Ninth Circuit construes

16   Rule 24 *liberally* in favor of intervention, and the cases Omni has cited in which

17   creditors have been permitted to intervene for such limited purposes control here.

18          Mattel also erroneously argues that Omni has not shown that the

19   appointment of a receiver may impair or impede its security interest because it

20   contends that it is unclear whether the Bratz product line is within the scope of the

21   collateral underlying Omni's Senior Bank Credit Facility. This argument barely

22   meets the strictures of Rule 11 since Mattel itself has represented to the Court, as is

23   the case, that Omni has a senior perfected interest in "*all or substantially all of*

24   *MGA's assets*." Moreover, there can be little question that the appointment of a

25   receiver has the potential to adversely affect all of MGA's products and business

26   operations and, consequently, to adversely affect Omni's security interests --

27   whatever Mattel thinks they are.

28

- 2 -

EXHIBIT _____ 13

PAGE _____ 162

1    Mattel also baselessly argues that MGA can adequately represent Omni's
2    interest in connection with the appointment of a receiver. This argument, as
3    previously explained, is nonsense. MGA's interests as a debtor are not aligned
4    with Omni's interests as a creditor. Omni's primary interest is in MGA's ability to
5    repay its secured debt obligation of more than $300 million owed to Omni. There
6    is no reason to believe that MGA can or will "undoubtedly make all" of Omni's
7    arguments on its behalf, and Omni is in the best (and only) position to describe the
8    facts and circumstances surrounding its purchase of the Senior Bank Credit Facility
9    from Wachovia.

10    Mattel also tries to mislead the Court regarding the timing of Omni's
11    application. Mattel argues that Omni's application is untimely because it obtained
12    its interest in MGA's assets "five months ago." However, as Mattel well knows,
13    Omni's interests in this regard only accrued when Mattel filed its *ex parte*
14    application for the appointment of a receiver. Since Omni promptly filed its
15    application upon its discovery of Mattel's filing, and since the receiver issue has
16    not yet been decided, the timeliness of Omni's application is a non-issue.

17    Because Mattel has no factual or legal grounds upon which to oppose
18    Omni's application, Mattel spends most of its brief speculating about the source of
19    the funds Omni allegedly used to purchase MGA's debt from Wachovia. Mattel
20    argues that Omni allegedly received funding from non-party Vision Capital, who
21    allegedly received its funding from non-party Lexington Financial, and fixates on
22    the allegation that Isaac Larian's brother-in-law has alleged ties to these alleged
23    non-party investors in Omni. None of Mattel's purported "conspiracy theories" are
24    relevant to the issues before the Court. As explained in the *ex parte* application,
25    ***Omni acquired Wachovia's existing rights, title and interest in an existing Senior***
26    ***Bank Credit Facility.*** The source of Omni's funding is no more relevant than the
27    source of Wachovia's funding. If one of Isaac Larian's relatives had a tie to an
28    investor in Wachovia, it wouldn't matter either -- and certainly wouldn't have

- 3 -

EXHIBIT _____13_____

PAGE _____143_____

1   negated Wachovia's right to intervene as a senior perfected secured creditor before

2   its deal with Omni.

3        Finally, Mattel regrettably, but not surprisingly, resorts to slinging mud at

4   Omni and its principal, Neil Kadisha, with irrelevant allegations, taken out of

5   context, from an unresolved civil suit.  This tactic is unfortunate and no more

6   relevant than recent public allegations surrounding Mattel's own illegal and

7   unethical business practices.

8        Because the appointment of a receiver could significantly and irreparably

9   harm Omni's interests as a senior secured creditor of MGA, Omni respectfully

10  requests that the Court grant it leave to intervene in this action for the purposes of

11  challenging the appointment of a receiver and related issues that could adversely

12  affect Omni's security interests.

13  **II.    OMNI IS ENTITLED TO INTERVENE AS A MATTER OF**

14  **RIGHT FOR THE LIMITED PURPOSE OF PROTECTING ITS**

15  **STATUS AS A SECURED CREDITOR**

16       Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P.

17  24(a).  Rule 24(a) provides that a court must permit a non-party to intervene who

18  "claims an interest relating to the property or transaction that is the subject of the

19  action and is so situated that disposing of the action may as a practical matter

20  impair or impede the movant's ability to protect its interest . . . ."  *See also,*

21  *Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006).  The Ninth Circuit construes

22  Rule 24 liberally in favor of applicants for intervention.  *Arakaki v. Cayetano*, 324

23  F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409

24  (9th Cir. 1998)).  The inquiry required under Rule 24(a)(2) is a flexible one, and a

25  practical analysis of the facts and circumstances of each case is appropriate.

26  *Donnelly*, 159 F.3d at 409.  "In determining whether intervention is appropriate,

27  we are guided primarily by practical and equitable considerations.  We generally

28  interpret the requirements broadly in favor of intervention."  *Id.*

- 4 -

EXHIBIT _____ 13

PAGE _____ 164

1   When a non-party claims an interest relating to the subject property or

2 transaction of the action, courts generally require four factors:  (1) a timely

3 application; (2) the applicant has a "significantly protectable" interest relating to

4 the property or transaction involved in the pending lawsuit; (3) the disposition of

5 the lawsuit may adversely affect applicant's interest unless intervention is allowed;

6 and (4) the existing parties may not adequately represent the would-be intervenor's

7 interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v.*

8 *Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

9   Additionally, a district court has the discretion to grant a non-party limited

10 intervention for certain issues or purposes. *See Stringfellow v. Concerned*

11 *Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d

12 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

13 470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

14 issues in a case but not others, and the court may limit intervention accordingly."

15 *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

16 *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

17   **A.**  **Omni Has Established a Significantly Protectable Interest**

18     **in the Receivership Issues Involved in the Pending**

19     **Litigation**

20   "[W]hether an applicant for intervention demonstrates sufficient interest in

21 an action is a practical, threshold inquiry.  No specific legal or equitable interest

22 need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23 810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24 Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25 F.3d 1489, 1493 (9th Cir. 1995). "It is generally enough that the interest [asserted]

26 is protectable under some law, and that there is a relationship between the legally

27 protected interest and the claims at issue." *Southwest Center for Biological*

28

- 5 -

EXHIBIT _____ 13

PAGE _____ 165

1   *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

2   Cir. 1993)).

3          In its opposition, Mattel erroneously argues that Omni "makes no showing

4   that it has any bona fide interest" in MGA's assets.  This argument is the opposite

5   of the position previously taken by Mattel in its *ex parte* application for the

6   appointment of a receiver where Mattel represented to this Court (supported by a

7   sworn declaration of its counsel) that *"a new creditor, Omni 808 International*

8   *(sic), LLC ("Omni") has take (sic) an (sic) security interest in all or substantially*

9   *all of MGA's assets" and "is now apparently one of MGA's largest creditors*

10   *(and perhaps its largest)*."  (Mattel's Ex Parte Application for Appointment of a

11   Receiver, 5:7-8; 6:15-16).

12          Mattel's attempt to simultaneously argue that Omni has a "security interest

13   in all or substantially all of MGA's assets" (for purposes of its receiver application)

14   and that Omni does not have a bona fide interest in MGA's assets (for purposes of

15   its opposition to Omni's intervention application) is specious and precluded by the

16   doctrine of judicial estoppel.[1]  Moreover, Mattel's new argument is unavailing as

17   Omni set forth detailed facts in its *ex parte* application regarding its assignment

18   and exchange agreement with Wachovia whereby Omni acquired all right, title and

19   interest in the Senior Bank Credit Facility and, as a result, has a senior perfected

20   security interest in MGA's assets, including MGA's inventory and accounts

21

22   [1]  "Judicial estoppel, sometimes also known as the doctrine of preclusion of

23   inconsistent positions, precludes a party from gaining an advantage by taking one
     position, and then seeking a second advantage by taking an incompatible position."

24   *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).
     "The policies underlying preclusion of inconsistent positions are general

25   considerations of the orderly administration of justice and regard for the dignity of
     judicial proceedings." *Id.* at 601. "Judicial estoppel is intended to protect against a

26   litigant playing fast and loose with the courts." *Id.* "Because it is intended to
     protect the dignity of the judicial process, it is an equitable doctrine invoked by a

27   court at its discretion." *Id.*

28

-6-

A/72837928 2

EXHIBIT _____ 13

PAGE _____ 166

1   receivable. These facts "must be accepted as true" for purposes of this application.

2   *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir.

3   2001). Mattel has offered no evidence purporting to contest any of these facts.[2]

4          Faced with the fact that Omni is the largest secured creditor of MGA, Mattel

5   argues that Omni's position as a secured creditor does not justify intervention. In

6   making this argument, Mattel ignores the relevant legal factors cited by Omni and

7   instead relies upon inapplicable cases wherein a *potential* creditor is seeking to

8   intervene in a lawsuit *for all purposes* (unrelated to the appointment of receiver)

9   *"merely claiming a general interest in [defendant's] assets based on a*

10   *speculative recovery in an unrelated civil action."* (*See* Mattel's Opposition,

11   10:9-10, citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir. 1989)). Here,

12   Omni is seeking to intervene *for the limited purpose* in connection with Mattel's

13   request for the appointment of a receiver and so it can protect its position as

14   MGA's largest secured creditor. Mattel fails to cite a single case where a court in

15   this circuit, or any circuit, denied a creditor's application to intervene for the

16   limited purpose of challenging the appointment of a receiver. Indeed, Mattel's

17   primary support for its opposition to Omni's application, *Alisal Water Corp. v.*

18   *Silverwood Estates*, 370 F.3d 915 (9th Cir. 2004), does not involve a creditor's

19   opposition to the appointment of the receiver. In *Alisal Water,* following entry of

20   summary judgment in favor of the United States against Alisal Water Corp. for

21   violating the Safe Drinking Water Act, and while considering the United States'

22   request for penalties against Alisal, the district court appointed a receiver to

23   manage Alisal's drinking water systems and oversee Alisal's possible sale. The

24   court affirmed the denial of a third party's motion to intervene on the grounds that

25

26   [2] Contrary to statements made in Mattel's opposition, Omni has offered to provide Mattel with documents reflecting Omni's agreement with Wachovia to acquire

27   MGA's debt obligations. Mattel has rejected these offers, and instead prematurely filed a motion to compel without meeting and conferring in good faith.

28

- 7 -

EXHIBIT ____13____

PAGE ____167____

1    seeking to protect a prior judgment was insufficient given the likelihood that such

2    intervention could delay longstanding litigation and encumber the U.S.'s efforts to

3    ensure safe drinking water for the public. The *Alisal* case, therefore, is inapposite.

4         Unlike Mattel, Omni has cited applicable authority in which creditors have

5    been permitted to intervene as a matter of right where a receiver has been

6    appointed and taken control of a debtor's assets. The rationale is that the first

7    creditor's action may effectively foreclose the interests of other creditors. *See SEC*

8    *v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983). In *SEC v. Flight*

9    *Transp. Corp.*, for example, the appellate court rejected all of the same arguments

10   made by Mattel in this case and reversed the district court's order denying

11   intervention. The Court reasoned that such arguments fail to recognize that

12   because the defendant's assets are in the hands of a receiver and may be affected

13   by an order of the district court (i.e., an order of disgorgement or constructive

14   trust), the non-party intervenor's interests "may be foreclosed" by the action of the

15   district court. Therefore, the non-party had a right to intervene as a matter of law.

16   *Id.* at 948.

17        Because Omni's interest is directly related to issues raised by Mattel in its *ex*

18   *parte* application for the appointment of a receiver, Mattel has a significantly

19   protectable interest relating to the property or transaction which is the subject of

20   this action.

21        **B.    Omni Has Established That The Appointment of a Receiver**

22              **May Impair or Impede Omni's Ability to Protect Its**

23              **Interests**

24        In order to show that the disposition of the action may impair or impede the

25   ability to protect a non-party's interest, the non-party need only show a "practical"

26   impairment, "not whether the decision itself binds them." *Yniguez v. Arizona*, 939

27   F.2d 727, 735 (9th Cir. 1991). In its opposition, Mattel erroneously argues that

28   Omni has not shown that the appointment of a receiver may impair or impede its

- 8 -

EXHIBIT _____13_____

PAGE _____168_____

1   security interest because it is unclear whether the Bratz product line is within the

2   scope of the collateral underlying Omni's Senior Bank Credit Facility. This

3   argument is, again, inconsistent with Mattel's prior representation to this Court that

4   Omni has a "security interest in all or substantially all of MGA's assets" and is

5   unavailing as Omni has a senior perfected interest in all of MGA's assets (superior

6   to any unsecured interests that Mattel may have by virtue of its judgment in this

7   action).

8        Moreover, this argument is a red herring because the appointment of a

9   receiver to "oversee and control all financial and business aspects" of MGA will

10  adversely affect all of MGA's products and business operations and, consequently,

11  will impair Omni's ability to protect its senior perfected security interest in its

12  collateral, which includes MGA's inventory and accounts receivable and

13  ultimately in MGA's ability to repay its outstanding secured debt obligation to

14  Omni of in excess of $300 million.[3]

15       **C.      Omni Has Established That The Existing Parties May Not**

16                 **Adequately Represent Omni's Interests**

17       The United States Supreme Court has held that in order to demonstrate the

18  inadequacy of the existing parties to protect its interest, the applicant's burden is

19  "*minimal*" and is satisfied so long as the applicant shows that representation by

20  existing parties "***may be***" inadequate. *Trbovich v. United Mine Workers*, 404 U.S.

21  

22  [3] As explained in Omni's *ex parte* application, courts are reluctant to appoint
    receivers to solvent corporations. *See, e.g., DeBoer Structures, Inc. v. Shaffer Tent*
23  *& Awning Co.*, 187 F. Supp. 910, 925 (S.D. Ohio 2001) (declining to appoint
    receiver despite other facts in favor of doing so where corporation was solvent and
24  productive); *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428, 434
    (E.D. Mich. 1995) ("The deleterious effects of a receivership would result in more
25  harm than good in this case."); *Rumbaugh v. Beck*, 491 F. Supp. 511, 521 (E.D. Pa.
    1980) (finding that because a corporation was presently operating in a successful
26  manner, appointment of a receiver would "be potentially more harmful than if one
    were not implanted"); *Saluck v. Rosner*, 1999 WL 46620, at *2 (E.D. Pa. Jan. 6,
27  1999) ("the appointment of a receivership of a solvent corporation is a drastic
    remedy.").

28  

-9-

EXHIBIT _____ 13

PAGE _____ 169

1   528, 538 n.10 (1972).  The Ninth Circuit considers three factors in determining the

2   adequacy of representation: "(1) whether the interest of a present party is such that

3   it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the

4   present party is capable and willing to make such arguments; and (3) whether a

5   proposed intervenor would offer any necessary elements to the proceeding that

6   other parties would neglect." *Arakaki,* 324 F.3d at 1086 (citing *California v.*

7   *Tahoe Reg'l Planning Agency,* 792 F.2d 775, 778 (9th Cir.1986)).

8          In its opposition, Mattel argues, without basis, that MGA may adequately

9   represent Omni's interests.  However, the legal issue is not whether MGA "may"

10  adequately represent Omni's interests; the issue is whether MGA "may not"

11  adequately represent Omni's interests.  Mattel does not, and cannot, contend that

12  MGA "undoubtedly" can or will "make all" of Omni's arguments in opposition to

13  Mattel's application for a receiver.

14         Further, Omni's and MGA's ultimate objectives are different.  Omni's

15  primary objective is in MGA's ability to repay its secured debt obligation of in

16  excess $300 million owed to Omni.  The financial interests of a debtor and secured

17  creditor are, on their face, aligned differently.  The fact that MGA may also oppose

18  the appointment of a receiver, on other or similar grounds, is irrelevant.  *SEC v.*

19  *Flight Transp. Corp.,* 699 F.2d at 947 (holding that "while [intervenor's] interests

20  may not be adverse to those of [a party] or the receiver, they are sufficiently

21  'disparate' to warrant intervention").  Moreover, there is no dispute that Omni is in

22  the best (and perhaps only) position to describe the facts and circumstances

23  surrounding its purchase of the Senior Bank Credit Facility from Wachovia.

24         Therefore, the existing parties may not adequately represent Omni's interest

25  regarding the appointment of a receiver and other issues relating to Omni's status

26  as a secured creditor.  Omni has more than satisfied its "minimal" burden.

27

28

- 10 -

A/72837928.2

EXHIBIT ____13____

PAGE ____170____

**D.    Omni's Application Is Timely**

Courts generally consider the following factors relevant to the issue of timeliness: (1) the stage of the proceedings at the time the applicant seeks to intervene; (2) the prejudice to the existing parties from applicant's delay in seeking leave to intervene; and (3) any reason for and the length of delay in seeking intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir. 1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

In its opposition, Mattel misleadingly argues that Omni's application is untimely because its interest in MGA's assets "was created over five months ago." However, contrary to Mattel's efforts to mislead the Court, Omni's interest in this litigation accrued when it became aware of Mattel's application to appoint a receiver at MGA. Omni acted without delay in filing is application after learning of Mattel's filing, and the Court has yet to decide the pending request for the appointment of a receiver. Therefore, Omni's application is timely, and Mattel will suffer no prejudice as a result.

**III.    THE COURT SHOULD GRANT OMNI PERMISSIVE INTERVENTION IN THE ALTERNATIVE**

Even if Omni were not entitled to intervene as a matter of right, the Court should exercise its discretion and permit its intervention in this matter. Under Federal Rule of Civil Procedure 24(b)(1), permissive intervention should be granted whenever the "applicant's claim . . . and the main action have a question of law or fact in common," and when the intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). The existence of a "common question" is liberally construed. *Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable' interest relating to the property or transaction which is the subject of the action.'" *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 11 -

EXHIBIT _____13_____

PAGE _____171_____

1  *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2  requirements.

3      In its opposition, Mattel erroneously argues that Omni has failed to identify

4  a common question of law or fact.  Not true.  As clearly demonstrated both in

5  Omni's application, and in Mattel's opposition, there are numerous common

6  questions of law and fact between Omni's claims as a secured creditor and the

7  issues raised in Mattel's application to appoint a receiver.  Moreover, Omni's

8  participation will not unduly delay or prejudice the adjudication of the rights of the

9  original parties.  Omni's participation will be limited to challenging Mattel's

10  request to appoint a receiver and protecting its interests as a secured creditor.

11      The burden is on the parties to plead and prove any alleged prejudice.

12  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).  Mattel has failed to prove

13  any such prejudice beyond its unsupported and conclusory allegations that Omni's

14  participation in the receiver issues will "create unnecessary issues, delay

15  proceedings, create confusion … and complicate matters."  Mattel simply wants to

16  prevent Omni from raising issues regarding the appointment of a receiver that are

17  contrary to Mattel's litigation and competitive interests in this litigation.  That is

18  not a basis upon which to deny intervention.

19  **IV.   CONCLUSION**

20      For the foregoing reasons, Omni respectfully requests the Court grant this

21  application and authorize it to intervene for the limited purpose of responding to

22  Mattel's request for the appointment of a receiver for MGA and all other issues

23  related to the proposed receiver or Omni's status as a secured creditor of MGA.

24  DATED: February 9, 2009      Bingham McCutchen LLP

25

26                      By: _____

                          Todd E. Gordinier

27                      Attorneys for Non-party

                    Omni 808 Investors, LLC

28

A/72837928 2

EXHIBIT _____ 13

PAGE _____ 172

# EXHIBIT 14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                              Date: May 21, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                              None Present
        Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:   ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
               NO. 11 (DOCKET #5185)

               ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
               ANSWER AND COUNTERCLAIMS (DOCKET #5143)

               ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
               APPEAL (DOCKET #5396)

               ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
               PRODUCT LINE INFORMATION (DOCKET #5425)

               ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
               APPOINTING MGA MONITOR

               ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
               REQUIRING MANDATORY SETTLEMENT CONFERENCE

     These matters were heard on May 18, 2009.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          1            Time: 03/02

EXHIBIT _____14_____

PAGE _____173_____

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1).  The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply.  Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied.  After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1]  Those factors are:

1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted).  The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor."  He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit.  See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)).  That test is set forth in Order No. 11 at 31, and is not repeated here.  It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation.  Libbey Glass, 197 F.R.D. at 350.  This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second.  Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law.  Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors.  The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor.  See Order No. 11 at 29-36.

MINUTES FORM 90
CIVIL -- GEN                                                   2

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____14_____

PAGE _____174_____

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit
rather than their general powers and that, in any event, the relevant time period to measure
managing agent status is not at the time of deposition but is rather at the time of the events giving
rise to the lawsuit. Although these arguments find some support, the Discovery Master's
conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law.
The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor,
which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities
regarding matters involved in the litigation. The cases cited by Mattel support its timing argument;
however, cases cited by the MGA parties establish that other cases favor a contrary position.
Neither side's authority is controlling, and the Court therefore concludes the position adopted by
the Discovery Master is not contrary to law.

        As to the third factor, Mattel argues that it was clear error for the Discovery Master to
conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor
reported, could provide substitute testimony to them is clear error. Mattel's ultimate point is that no
one can testify more accurately and more on point than can the two witnesses regarding their
alleged trade secret theft. Again, this is not an invalid point. Indeed, it is possible that if such theft
occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the
MGA parties and instead acted on their own accord (the MGA parties alternatively contend).    The
fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony
regarding any theft would not be on behalf of MGA at all. Who can or cannot testify about these
events that may or may not have occurred on behalf of any MGA party -- let alone who can testify
best -- is far from clear. This area of inquiry is fraught with uncertainty. The Discovery Master's
conclusion one way or another on this issue, therefore, cannot be said to be clear error. See
Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate
judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction
that a mistake has been committed.").

        As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that
MGA Mexico's interests and the witnesses' interests are at odds. The witnesses are currently
employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been
subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they
have separately retained counsel to represent their interests. Additionally, the MGA parties have
maintained that if any trade secret theft occurred, it occurred without their knowledge or consent.
These facts support the Discovery Master's finding.

        Weighing these factors, and taking into account the mixed burden of proof, as the Discovery
Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or
contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

        Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90
CIVIL -- GEN

                                              3

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____14_____

PAGE _____175_____

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

EXHIBIT _____ 14

PAGE _____ 176

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time.  Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC.  See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition.  Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances,* constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

> [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

---

EXHIBIT _____14_____

PAGE _____177_____

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the
nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC
when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the
jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved
in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO
predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed
amendments will dramatically expand the scope of the present litigation. Admittedly, the
allegations set forth in the SAAC are already varied enough in nature and broad enough in scope
to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless,
this is not atypical of a successfully pleaded RICO claim, which the Court has already found was
stated in the SAAC, and which has the tendency to draw together a multitude of seemingly
unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not
influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an
unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R.
Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support
for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence,
and that the MGA parties engaged in commercial bribery of certain Mattel employees is not
relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or
undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS**
Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket
#5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order,
provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public
redacted version of the TAAC, and (2) an original and a copy of the under seal version of the
TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court
has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to
introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions
are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a
separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure
that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for
a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant
to a Rule 56 motion for summary judgment.

MINUTES FORM 90                                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          6                 Time: 03/02

EXHIBIT _____ 14
PAGE _____ 178

### III.  EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18.  For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____14_____

PAGE _____179_____

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed
no later than Friday, May 29, 2009, at which time the Court will take the matter under submission
and issue an order as expeditiously as possible.

## IV.  EX PARTE APPLICATION RE DISCLOSURE OF
## 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex
parte application seeking production of the 2009 Bratz line and the new MGA products is moot,
and it is **DENIED** for that reason.  Nevertheless, because it is in the interest of all parties to
expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for
Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding
those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
## AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of
Permanent Receiver.  In response, the Temporary Receiver, the parties and the Court-appointed
Forensic Auditor have filed, and the Court has reviewed, the following documents:  (1) The Report
and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of
Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the
Appointment of a Permanent Receiver and in opposition thereto, including the Statement of
Position filed by Omni 808.  In consideration of these filings, and after hearing on these matters, as
detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms
the expiration of the temporary receivership, orders the filing of an accounting of the temporary
receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

**A.    Expiration of Temporary Receivership**

**IT IS ORDERED THAT:**

1.    The period of the Temporary Receivership imposed by this Court on April 27, 2009
      has expired;

2.    The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc.
      or MGA Hong Kong ("MGA");

3.    The Court reserves jurisdiction to appoint a Receiver in the future, as it deems
      appropriate;

4.    The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file
      with the Court a final report including a final accounting and application for fees and

MINUTES FORM 90
CIVIL -- GEN                                      8                    Initials of Deputy Clerk __cls_____
                                                                      Time: 03/02

EXHIBIT _____14_____

PAGE _____180_____

costs, on or before May 28, 2009;

5.   The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.   Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

**B.   Appointment of MGA Monitor**

1.   For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

   a.   The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6]  In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

   a.  All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

EXHIBIT _____ 14

PAGE _____ 181

    b.    The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

    c.    The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

    d.    The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

    b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

    c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

    d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

    e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

    f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

    g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

    h. "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

    [7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

MINUTES FORM 90                             Initials of Deputy Clerk __cls_____
CIVIL -- GEN                      10              Time: 03/02

EXHIBIT _____14_____

PAGE _____192_____

e.   At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.   The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.   The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.   The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

i.   The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.   The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8] The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL — GEN                                  11

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____14_____

PAGE _____183_____

k.  The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order.  The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties.  Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.  The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.  The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor.  The Monitor shall submit to the Court, in camera, monthly requests for approval of payment.  Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.  The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court.  Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.  Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.  The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.  No bond shall be required in connection with the appointment of the Monitor.  Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____14_____

PAGE _____184_____

2.   Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.   MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.   No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.   For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.   Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.   All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI.  IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009.  The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              13             Time: 03/02

EXHIBIT _____14_____

PAGE _____185_____

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _____14_____

PAGE _____186_____

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor
Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10]
The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure
by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys
(whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the
parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file,
under seal, specific and supported objections to the release of the Summary Report or the
Responsive Report. In the same time frame and manner, any party may object to the release of
specific identifying information contained in the exhibits of the report than have the tendency to
reveal personal identifying information such as social security numbers, tax identification numbers,
or bank account numbers. Within two days, any party may respond to these objections. No
hearing will be held unless the Court orders otherwise.

    **IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel
for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also
revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also
released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless
otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until
requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is
justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on
the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their
spouses.

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                         15                        Time: 03/02

EXHIBIT _____14_____

PAGE _____187_____

**EXHIBIT 15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: April 27, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

            Cindy Sasse                           None Present
            Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

None Present                             None Present

PROCEEDINGS:   ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
               MATTER OF LAW (DOCKET #4498)

               ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
               #4496)

               ORDER AMENDING IN PART ORDER RE FINDING OF
               LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
               (DOCKET #4441);

               ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR REMITTITUR (DOCKET #4495, #4523)

               ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

               ORDER FOR ACCOUNTING OF PROFITS OF
               BRATZ PRODUCTS

               ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          1

EXHIBIT _____15_____

PAGE _____188_____

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER**

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
(DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded. Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury. Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged. Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore
**DENIED**.

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __cls_____

EXHIBIT ____15____

PAGE ____189____

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that
sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of
independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the
trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is,
created -- by Carter Bryant, alone or jointly with others," during his employment with
Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the
Court's summary judgment order, was sufficient to place the sculpt within the
assignment clause of the Inventions Agreement which, in turn, conferred the rights to
the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought
merely as an alternative basis for the relief Mattel has been awarded, which the Court,
without deciding the merits, declines to adopt.  This portion of Mattel's motion is
therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and
MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there
was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and
later, as to *when* Bratz was created), he testified at trial that he did nothing to keep
Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the
contrary, the jury could have believed him; thus, judgment as a matter of law on this
point is not appropriate.  Credibility determinations are for the jury, and the jury could
have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba
America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for
MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found
to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as
a matter of law is not appropriate.  This portion of Mattel's motion is therefore also
**DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law
is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's
claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that
Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows:  MGA
Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the
record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian,
MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish
them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the
MGA entities."

Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____190_____

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty. Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages. The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue. As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims. Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits. The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3] This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is **DENIED**.

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90
CIVIL -- GEN
                                          4
                                                    Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____191_____

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz."  To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits.  The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement.  California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls.  Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument.  The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

EXHIBIT _____15_____

PAGE _____192_____

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine -- and thus its express factual finding does not address -- authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED.**

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

Initials of Deputy Clerk __cls_____

EXHIBIT _____ 15

PAGE _____ 193

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict
> was excessive, justifying a new trial or, in the alternative, a
> remittitur. Our review of this issue is limited to an
> examination of the plaintiff's injuries to determine whether
> the damage award is beyond the maximum possible award
> supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements
> of damages claims submitted to a jury will not undermine a
> resulting aggregated verdict which is nevertheless
> reasonable in light of the totality of the evidence. If we find
> that a jury's damages award exceeds the maximum amount
> sustainable by the probative evidence, we will not hesitate to
> order a remission of the excess by the plaintiff or, in the
> alternative, a new trial. . . . But where, as here, the jury's
> verdicts find substantial support in the record and lie within
> the range sustainable by the proof, we will not "play Monday
> morning quarterback" and supplant the jury's evaluation of
> the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                           7

EXHIBIT _____ 15 _____
PAGE _____ 194 _____

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471
F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before
the Court was "the rare case in which it is sufficiently certain that the jury award was not
based on proper consideration of the evidence" but was instead "based on improperly
considered evidence, directly traceable to an error that was cured too little, too late").
Generally, courts are cautioned to "undertake only limited review of jury damages
awards, in order to avoid encroaching upon the jury's proper function under the
Constitution."  Memorial Coliseum at 1365.  The standard is exceptionally deferential to
the jury's findings.  If the damages award is supported by the evidence, it must be
upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the
present motion.

The MGA parties argue that Mattel had a singular theory of recovery –
disgorgement of profits – and the amounts set forth by the jury as to each of the three
state-law claims are duplicative.  This is not a completely unappealing argument.  For
each of three state law claims – intentional interference with contractual relations, aiding
and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the
jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as
to Isaac Larian.  Totaled, this award is $90 million.  Viewed pursuant to the MGA
parties' theory, it would be the same $30 million awarded three times.  Relatedly, the
MGA parties contend that the copyright damages of $10 million (allocated among three
defendants) are also duplicative of this $30 million, even though the number is not
exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative.
The remittitur standard is exceptionally deferential to the jury's verdict, and the Court
cannot disturb it based on speculation.  The fact is the evidence not only supported a
verdict of $100 million, this Court could have, under the remittitur standard, easily
sustained a verdict many times this amount.  The jury may have meant to award only a
total of $30 million, or they may have simply decided they could all agree on a round
figure of $100 million and then set about allocating that $100 million among multiple
claims and defendants.

_____

[5] A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v.
Asbury Automotive Group, LLC  2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus.
Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck
and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc.,
2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not
exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony
of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for
approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90
CIVIL -- GEN                                    8                    Initials of Deputy Clerk __cls_____

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **_must_** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **_meant_** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

MINUTES FORM 90
CIVIL -- GEN                              9                 Initials of Deputy Clerk __cls_____

EXHIBIT _____ 15

PAGE _____ 196

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion is simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to *all* tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

MINUTES FORM 90
CIVIL -- GEN                                         10                    Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____197_____

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

## IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

EXHIBIT _____ 15

PAGE _____ 199

The Permanent Injunction Order contemplates the Court's appointment of a
Special Master to resolve issues and disputes relating to the enforcement of the
Permanent Injunction Order. At this point, in the absence of any such disputes, the
Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation
as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment
Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on
August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties'
equitable claims and equitable relief (especially the Court's Omnibus Order defining the
parameters of the scope of copyright infringement, the Court's Order Granting Mattel's
Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for
Constructive Trust), and in light of this Order rejecting in all material respects the MGA
parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's
legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court,
and serve on all parties, no later than thirty days from the entry of this Order, a full
accounting of all profits that have resulted from all sales, occurring after August 26,
2008, of all products that fall within any of the Court's December 3, 2008, Orders
referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a
joint status report setting forth the position of all interested parties on how they wish to
proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order,
Mattel and the MGA parties jointly lodged a laptop computer from which the Court could
easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the
courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously
sealed record in these consolidated cases. That Order related only to documents filed
on or before May 27, 2008. Certain specific documents, identified by the parties by
docket number and found by the Court to have good cause to remain sealed, were not
unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and
confer process to significantly narrow, if not eliminate the under seal nature of the filings

EXHIBIT _____15_____

PAGE _____199_____

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009.  The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal.  In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal.  For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

### VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report.  Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court.  The Court reserves at this time release of the supporting documentation that is attached to the report.  This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document.  It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order.  Failure to do may result in waiver of that privilege.  After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor.  For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

### IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

EXHIBIT _____15_____

PAGE _____200_____

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket #4761) at 1.  This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene.  The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id.  The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action;
> (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;
> (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements.  Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id.  Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation.").  However, this particular request for intervention is not one that falls into this general category.  Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN                                           14

Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____201_____

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90
CIVIL -- GEN                                        15                    Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____202_____

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a
straightforward, arms-length business deal between non-parties to this action," or
whether, as counsel for Mattel contends, the purchase was by entities formed for "the
improper purpose of attempting to leapfrog over Mattel's claims and shield their assets
from creditors and other rights-holders such as Mattel." Counsel for all parties,
including the intervenors, are afforded leave to file a final position on this issue no later
than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative
relief. The Court has considered all papers submitted in support of the application and
all opposition and reply papers thereto, the arguments of counsel at the hearing on the
application, and the entire record in this action, and finds that just cause exists for the
appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds
as follows:

1. The MGA entities, MGAE and MGA HK, are domiciled in California, have
their principal place of business in the Central District of California, and
have the majority of their assets located within the Central District of
California;

2. As the Court has previously found, the Bratz Assets (as defined below and
in that order) are and have been the property of Mattel and not any of the
MGA parties;

3. Good cause exists to believe that the MGA parties, defined as MGAE,
MGA HK, and Isaac Larian, and each of them, have engaged in, are
engaging in, or are about to engage in transactions, acts, practices and
courses of business that constitute fraudulent transfers of assets and
violations of Mattel's ownership and other rights in and to the Bratz Brand
and Bratz Assets, as defined below;

4. Mattel has demonstrated the possibility of dissipation of assets and, from
the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated
in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made
herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic
Auditor's report, in making these findings because the parties have not yet had an opportunity to object or
otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections
or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver
after the OSC hearing scheduled for May 18, 2009.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____203_____

and related entities (as defined below) are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunction herein;

5. Good cause exists to believe that the MGA parties, agents, and related entities (as defined below) will continue to engage in such transactions, acts, practices, and courses of conduct and business to the immediate and irreparable loss and damage to Mattel, and contrary to the interests of justice, unless restrained and enjoined.

6. It is appropriate and in the interests of justice that, pursuant to L.R. 66, that a Temporary Receiver be appointed and that an Order to Show Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1. Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to L.R. 66 for the MGA entities to manage, supervise and oversee the assets of the MGA entities and the Bratz Brand and all Bratz Assets as these terms are defined herein (the "Temporary Receiver").

2. The Temporary Receiver is appointed and is hereby directed and ordered to take full and exclusive control over, and to manage, preserve, and maximize the profits of, the MGA entities and the Bratz Brand and Bratz Assets as of the date hereof, including, without limitation, by locating, taking possession and ownership of, preserving, protecting, managing, supervising and overseeing the Bratz Assets.

3. The Temporary Receiver is further directed to investigate the financial affairs of the MGA entities, and specifically investigate transfers and transactions made by the MGA entities from and after July 17, 2008.

4. The Temporary Receiver shall have the power to take any and all action which may be necessary, appropriate or advisable to effectuate the purposes of the Temporary Receivership, including, but not limited to, the power to:

    a. take custody, control and possession of the assets of the MGA entities and Bratz Assets in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk __cls_____

EXHIBIT ____15____

PAGE _____204_____

agents, and related entities") whether or not claimed to be
encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the
Bratz Assets and perform all acts necessary or advisable to
preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities
and the Bratz Assets and products for profit, including, without
limitation, by selling Bratz-branded dolls and other goods through
appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities
and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable
to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and
ordinary expenses incurred by the receivership, provided, however,
that the Temporary Receiver shall maintain and shall not distribute,
disburse or pay to anyone any receivership funds except as needed
to satisfy the reasonable and ordinary expenses incurred by the
receivership;

g.    open bank accounts in the name of the Temporary Receiver and
transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to
collect and maintain, monies owed by virtue of the sale, licensing,
or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon
such terms and conditions as the Temporary Receiver deems
necessary or advisable to carry out the Temporary Receiver's
mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into
modifications to or amendments of such agreements and contracts,
as the Temporary Receiver deems necessary or advisable to carry
out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds,
assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN                                  18              Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____205_____

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____206_____

except insofar as the Court orders or invites the Temporary Receiver to do so; and,

s.      perform such further and additional acts as the Temporary Receiver deems necessary or advisable to preserve the Bratz Assets, maximizing the profits derived therefrom, ensure the successful manufacture, delivery and marketing of Bratz-branded dolls and products for the spring and fall 2009 seasons and otherwise carry out the Temporary Receiver's mandate under this Order, including, without limitation, any acts which could be lawfully carried out by a corporation in the state of California.

5.      The Temporary Receiver, the Temporary Receiver's employees and agents as well as any and all of the professionals employed by the Temporary Receiver, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them on behalf of the receivership estate. The Temporary Receiver shall serve written notice upon counsel of record for the parties of the amount to be paid to each payee, with an itemization of the services rendered or expenses incurred. Upon service of said notice, the itemized fees and expenses may be paid by the Temporary Receiver on an interim basis. In the event that extraordinary services are performed by the Temporary Receiver, he shall be entitled to extraordinary compensation according to proof and approval of this Court. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services. In the event there are insufficient funds in the receivership estate to fully compensate the Temporary Receiver and his professionals, the Court retains jurisdiction to allocate the costs and expenses of this receivership against Mattel, as the party who sought the appointment of the Temporary Receiver, and/or Isaac Larian, as the principal owner and beneficiary of the MGA entities.

6.      Upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver regarding implementation of this Order, including transferring funds at his direction and producing records related to the assets of the MGA entities.

7.      The Bratz Assets include all tangible or intangible assets, including,

EXHIBIT _____ 15 _____

PAGE _____ 207 _____

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

EXHIBIT _____15_____

PAGE _____208_____

brand.

g.    All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.    The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.    As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order.  Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers.  The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).  The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

Initials of Deputy Clerk __cls_____

EXHIBIT _____ 15 _____

PAGE _____ 209 _____

authorized agents working for and under the auspices of the Temporary
Receiver pursuant to the terms of this Order.

10.   Additional Provisions.

a.     In the event that any person or entity or fails to refuses to deliver or
transfer any of the assets of the MGA entities or Bratz Assets or
otherwise fails to comply with any provision of this Order, the
Temporary Receiver is instructed to file ex parte an affidavit setting
forth the failures.  Upon the filing of such affidavit, the Court may
authorize repossession or sequestration or other equitable relief as
requested by Temporary Receiver.

b.     The Temporary Receiver shall maintain and shall not disburse,
distribute or pay anyone any receivership funds or proceeds earned
from exploitation of Bratz-branded dolls and products except as
needed to satisfy the reasonable and ordinary cost and expenses
incurred by the receivership.

c.     The Temporary Receiver shall have the status of officers and
agents of this Court, and as such shall be vested with the same
immunities as vested with this Court.  Neither the Temporary
Receiver nor any person or entity acting at the direction of the
Court or pursuant to agreements with the Temporary Receiver
(whether employees, vendors, contractors or otherwise) may be
held liable to the MGA parties whether for claims of alleged
copyright infringement, trademark infringement, or other alleged
causes of action for any acts taken in good faith in compliance with
this Order.

d.     During the course of the receivership, and pending further order of
the Court, the MGA parties shall not have any right, title, or interest
and/or power as to the Bratz Assets or Bratz brand.  All ownership
of all Bratz Assets, Bratz Brands and Bratz-related copyrights and
other intellectual property are hereby vested in the Temporary
Receiver and the MGA parties are divested of all such ownership.
Nothing herein shall alter or affect the right of Mattel to take any
and all actions relating to the Bratz Assets or the Bratz brand which
it otherwise lawfully could take, including, without limitation, the
institution, maintenance and prosecution of legal proceedings
anywhere in the world or other proceedings before any
governmental or tribunal or arbitration panel.

e.     Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90                                           Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          23

EXHIBIT _____ 15
PAGE _____ 210

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.    To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.    The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.    No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.    It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.    In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90
CIVIL -- GEN

24

Initials of Deputy Clerk \_\_cls_____

EXHIBIT _____ 15

PAGE _____ 211

et seq. for the MGA entities without prior permission of this Court.

k.   The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all financial and other documentation requested by the Temporary Receiver.

l.   The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.   The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.   Order to Show Cause. All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver. Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.   Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.   The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009. This report shall be filed with the Court and served on all parties.

IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

MINUTES FORM 90
CIVIL -- GEN                            25                    Initials of Deputy Clerk __cls_____

EXHIBIT _____15_____

PAGE _____212_____

Tiffany Garcia

| | |
|---|---|
| From: | Cyrus Naim |
| Sent: | Monday, April 27, 2009 4:37 PM |
| To: | MGA / Bryant Team |
| Subject: | FW: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Order on Motion for Judgment as a Matter of Law |
| Attachments: | Final Order.pdf |

Final order on Phase 1 issues. We have a temporary receiver.

From: cacd_ecfmail@cacd.uscourts.gov [cacd_ecfmail@cacd.uscourts.gov]
Sent: Monday, April 27, 2009 4:12 PM
To: ecfnef@cacd.uscourts.gov
Subject: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Order on Motion for Judgment as a Matter of Law

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Notice of Electronic Filing

The following transaction was entered on 4/27/2009 at 4:12 PM PDT and filed on 4/27/2009
Case Name:     Carter Bryant v. Mattel Inc
Case Number:   2:04-cv-9049
Filer:
Document Number: 5273
Docket Text:
MINUTES (IN CHAMBERS): ORDER DENYING MATTELS MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498); ORDER GRANTING IN PART AND DENYING IN PART MGASMOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496); ORDER AMENDING IN PART ORDER RE FINDING OF LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200(DOCKET #4441); ORDER GRANTING IN PART AND DENYING IN PART MGAS MOTION FOR REMITTITUR (DOCKET #4495, #4523); ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443); ORDER FOR ACCOUNTING OF PROFITS OF BRATZ PRODUCTS ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED by Judge Stephen G. Larson: [4496][4498]4523]. Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant toL.R. 66 for the MGA entities to manage, supervise and oversee the assetsof the MGA entities and the Bratz Brand and all Bratz Assets as thesoterms are defined herein (the "Temporary Receiver"). All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Courts appointment of the Temporary Receiver. The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009. This report shall be filed with the Court and served on all parties. (am)

2:04-cv-9049 Notice has been electronically mailed to:

Joel N Klevens    jklevens@glaserweil.com

Patricia L Glaser    pglaser@glaserweil.com

John B Quinn    johnquinn@quinnemanuel.com

Russell J Frackman    rjf@msk.com,krs@msk.com,tbs@msk.com,mem@msk.com,phb@msk.com,jpn@msk.com

Jeffrey B Valle    jvalle@valleassociates.com

Jerome B Falk    jfalk@howardrice.com

Todd E Gordinier
todd.gordinier@bingham.com,julic.valenzuela@bingham.com,craig.taggart@bingham.com,michael.mortenson@bingham.com,lan.ly@bingham.com,karina.ward@bingham.c

Randa A F Osman    randaosman@quinnemanuel.com

Patricia H Benson    phb@msk.com,mxb@msk.com

David C Scheper    dscheper@obsklaw.com,feseroma@obsklaw.com,_sumry

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Robert C O'Brien    obrien.robert@arentfox.com

Raoul D Kennedy    rkennedy@skadden.com

Mark E Overland    moverland@obsklaw.com

Thomas J Nolan    tnolan@skadden.com,carl.roth@skadden.com,marcus.mumford@skadden.com

Emil W Herich    eherich@kmwlaw.com

Jason D Russell    jrussell@skadden.com,allison.velkes@skadden.com,_sumry

Jean P Nogues    jpn@msk.com

EXHIBIT _____15_____

PAGE _____213_____

4/27/2009

Sandra L Tholen    tholen@caldwell-leslie.com,mejia@caldwell-leslie.com,wilson@caldwell-leslie.com

Nicole S Pelletier    npelletier@glaserweil.com

Jon D Corey    joncorey@quinnemanuel.com

Caroline H Mankey    cmankey@glaserweil.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Linda M Burrow    burrow@caldwell-leslie.com,wilson@caldwell-leslie.com,popescu@caldwell-leslie.com_sumry

Amman A Khan    akhan@glaserweil.com

Peter N Villar    peter.villar@bingham.com,paul.mcconnell@bingham.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com,andreahoeven@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com,drogosa@skadden.com,sumclaug@skadden.com

Alexander H Cote    acote@obsklaw.com,feseroma@obsklaw.com

Marina Vladimir Bogorad    marina.bogorad@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com,westonreid@quinnemanuel.com

Sophia S Lau    slau@glaserweil.com

Stan Karas    stankaras@quinnemanuel.com,gayleduran@quinnemanuel.com,westonreid@quinnemanuel.com

Richard Giles Stoll    rstoll@glaserweil.com

Scott E Gizer    sgizer@glaserweil.com

David W Hansen    dhansen@skadden.com

Robyn Aronson    robynaronson@dwt.com,frankromero@dwt.com

Oleg Stolyar    alexstolyar@quinnemanuel.com,rlorch@bwgfirm.com

Jennifer A Lopez    jennifer.lopez@bingham.com

Christian C Dowell    cdowell@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Leah Chava Gershon    leah@sponuslaw.com

Adil M Khan    amkhan@glaserweil.com

Michael P Kelly    mikelly@skadden.com

David W Foster    david.foster@skadden.com

Sanford I Weisburst    sandyweisburst@quinnemanuel.com

Ilan Wisnia    iwisnia@valleassociates.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**
Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino CA 91316

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York NY 10019
US

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek CA 94596
US

4/27/2009

EXHIBIT _____ 15

PAGE _____ 214

EXHIBIT _____ 15

PAGE _____ 215