# EXHIBIT 16

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)

13          Plaintiff,                  **Consolidated with**
                                        **Case No. CV 04-09059**
14          v.                          **Case No. CV 05-2727**

15  MATTEL, INC., a Delaware           **PHASE II DISCOVERY MATTER**
    corporation,
16                                      **ORDER NO. 3, REGARDING:**
            Defendant.
17                                          **(1) MOTION OF MGA
                                            ENTERNTAINMENT, INC.,**
18                                          **ISAAC LARIAN AND MGA
                                            ENTERTAINMENT (HK)**
19                                          **LIMITED TO QUASH
                                            NON-PARTY SUBPOENAS; and**
20
                                            **(2) MOTION OF MATTEL, INC.
21                                          TO COMPEL PRODUCTION OF
                                            DOCUMENTS RESPONSIVE TO**
22                                          **THE SAME NON-PARTY
                                            SUBPOENAS**
23

24

25  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
26  MGZ ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16

PAGE _____ 216

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2  MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3  (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4  and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5  documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6  4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8  March 4, 2009. All interested parties were represented by counsel and afforded the

9  opportunity to present oral argument on the Motions. The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument thereon, rules as set forth below.

12  **I.    INTRODUCTION**

13

14  **A.    The Court's February 11, 2009 Ruling**

15    On February 11, 2009, the Court heard oral argument on various motions

16  filed by the parties. During the proceedings, counsel took the opportunity to orally

17  request clarification by the Court regarding whether the parties' respective motions

18  relating to the subpoenas served by Mattel on various entities allegedly related to

19  MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20  prior orders.

21    In response, the Court stated: "I will instruct the Discovery Master this

22  afternoon, in no uncertain terms, that there is no stay on any discovery related to

23  this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24  99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25  previously declined to allow Mattel to serve certain discovery accompanying

26  Mattel's motion for a receiver and characterized the third-party subpoenas as an

27  attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28  stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16 _____        - 2 -        ORDER NO. 3
                                          [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 217 _____

1

2    Then the question becomes – and this is a question for the
     Discovery Master, not for this Court – whether or not the
3    discovery is related to Phase 2. If it is, it is. I'm not going to
     pass any judgment whatsoever. I'm going to leave that
4    completely up to the Discovery Master. ... The question for the
     [D]iscovery [M]aster will be whether or not the disputed
5    discovery request is related or relevant to the trial that has now
     been scheduled for March [2010] or not.
6

7    (Tr., 101:18 – 22; 103:1 – 3).

8        The Discovery Master understands the Court's ruling as indicating that, in

9    deciding the motions relating to the Subpoenas, the Discovery Master should

10   consider whether there is a nexus between the information sought by the

11   Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

12   in March 2010, on the other hand. If the information sought by the Subpoenas is, to

13   use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

14   trial," then that information could potentially be the subject of appropriate

15   discovery requests by Mattel.[1]

16   **B.    Information Sought By The Subpoenas**

17       The information sought by Mattel's Subpoenas falls into two broad

18   categories. First, Mattel seeks documents from third parties Omni 808 Investors,

19   LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

20   Entities") involving, among other things, their internal ownership and operations

21   and their role in providing financing to MGA during the summer of 2008 (the

22

23   [1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
     nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
24   inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
     8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
25   claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate
     regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
26   in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant
     to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
27   Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
     below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
28   Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
     the Phase 2 trial.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

EXHIBIT ____16____

PAGE ____218____

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1    "Financing Discovery"). Based on the information presented at the February 11,

2    2009 hearing and in connection with the pending motions, it does not appear that

3    either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4    an ownership interest in the Financing Entities.[2]  (See Tr., 70:22 – 72:5; 78:9 -25).

5         Second, Mattel seeks documents from third parties IGWT Group, LLC and

6    IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7    MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8    "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9    owned and/or controlled by Larian. (See, e.g., MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13   **II.    MGA's Motion To Quash**

14        Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17        **A.    Legal Standard**

18        As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); see also Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24   [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The
25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
     does not address -- and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a
26   legitimate Phase 2 issue, seek to obtain this information from MGA.

     [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including
27   that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
     that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address
28   of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                           - 4 -                    ORDER NO. 3
                                                              [Case No. CV 04-09049 SGL (RNBx)]

16

PAGE         219

1    with the subpoena would be unreasonable and oppressive" (internal quotations

2    omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3    burden of proving that a subpoena is oppressive is on the party moving to quash];

4    *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5    burden is on the movant to establish that a subpoena duces tecum should be

6    quashed]).  "The burden is particularly heavy to support a 'motion to quash as

7    contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8    of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9    supported by two affidavits]).

10        **B.    Arguments Made By MGA In Support Of Its Motion To Quash**

11        The sole argument set forth in MGA's Motion to Quash is that the Court's

12    January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13    information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14    But that argument fails for the reasons set forth above.  The Court made it clear at

15    the hearing on February 11, 2009 that:

16            There is no stay on discovery. Period. . . . . [The forensic auditor
17            appointed by the Court] is acting at the Court's discretion to
             inform the Court of information. . . . That's an entirely separate
18            matter.  And I have not stayed any discovery and there should be
19            no reliance on that.  If that was misunderstood, it's clarified now.

20    (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21        Recognizing that its only argument has been rejected by the Court, MGA

22    argues for the first time in its Reply that its Motion to Quash should be granted

23    because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24    MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25    However, MGA did not make this argument in its opening brief.  It instead declared

26    in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27    is beside the point." (*Id.*, p. 5).  Because MGA did not address the relevance of the

28    subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16

PAGE _____ 220

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1   consider the argument in connection with the Motion to Quash.

2       The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers.  A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7   Circuit. (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13       Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17   below).

18       Accordingly, MGA's Motion to Quash is **DENIED**.

19   //
20   //
21   //
22   //

---

[4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

[5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 16   - 6 -
PAGE 221

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

III.   **Mattel's Motions To Compel**

    A.   **The Purported Procedural Defects Barring Mattel's Motions To Compel**

MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

        1.   **The Court's January 7, 2009 Order**

As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

        2.   **Local Rule 37**

The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case. Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6] Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16

PAGE _____ 222

- 7 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1     "all third parties subject to discovery requests . . . in this litigation shall be bound

2     by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3     order applies to the Financing Entities as well as the Transferee Entities, and its

4     procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

5             **3.**     **Local Rule 11-6 And Paragraph 4(b) Of The Court's**

6                 **Standing Order**

7         The Financing Entities and MGA further argue that Mattel's Motion to

8     Compel should be denied because it exceeds the page limitations set forth in Local

9     Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10     Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11     Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12     The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13     governs discovery disputes in this case, and it does not impose any page limit on

14     such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15     requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16     even permits the parties to agree to alternative procedures, including, presumably,

17     filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18     4). Thus, while the Discovery Master encourages the parties to be as efficient as

19     possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20     directly permitted under the Discovery Master Order (since no page limitation was

21     imposed by the Court) or implicitly allowed (since the parties may agree to

22     alternate procedures). He further recognizes that the complex nature of this case

23     may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

24

25     [7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to
compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30

26     pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the
Transferee Entities and the Financing Entities.

27     [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25
pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA

28     Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16

PAGE _____ 223

- 8 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1    these reasons, filings in excess of 25 pages are permitted.[9]

2           **4.    Local Rule 6-1**

3         The Financing Entities argue in passing that Mattel's motion to compel

4    should be denied because it violates Local Rule 6-1. (Financing Entities'

5    Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6    Order adopts a completely different set of deadlines than the Local Rules for the

7    filing of motions, oppositions and replies, and a different schedule for noticing

8    hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9    applicability here.

10          **5.    Failure To Name MGA In The Motion To Compel**

11        MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21          **6.    Mattel's Separate Statement**

22        MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   ───────────────

28   [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific
     page limitation.

EXHIBIT _____ 16 _____    - 9 -    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 224 _____

1   sets forth the various contentions of the parties, even if the information regarding

2   the various requests happens to be repetitive.  Regardless, MGA has not cited any

3   legal authority in support of its position and the Discovery Master finds no reason

4   to dispose of Mattel's Motion to Compel merely because it filed a separate

5   statement that contains duplicative arguments.[10]

6            **7.     Meeting And Conferring**

7            As their final procedural argument in opposition to the Motion to Compel,

8   the Transferee Entities and the Financing Entities assert that the motion should be

9   denied because Mattel failed to adequately meet and confer prior to filing the

10  motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12           **a.     Applicable Procedure**

13           Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

19           moving party shall first identify each dispute, state the relief
20           sought, and identify the authority supporting the requested relief
             in a meet and confer letter that shall be served on all parties by
21           facsimile or electronic mail.  The parties shall have five court
             days from the date of service of that letter to conduct an in-person
22           conference to attempt to resolve the dispute.  If the dispute has
             not been resolved within five court days after such service, the
23           moving party may seek relief from the Discovery Master by
             formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27  ───────────────────
[10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28  separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16 _____        - 10 -        ORDER NO. 3
PAGE _____ 225 _____                 [Case No. CV 04-09049 SGL (RNBx)]

### b.   Mattel's Meet And Confer Regarding The Financing Entities

In challenging Mattel's meet and confer effort, the Financing Entities first claim that Mattel violated the Discovery Master Order because no "in-person meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel, p. 8). But that argument is without merit, since Mattel and the Financing Entities agreed to an alternative procedure that disposed of the in-person meet and confer requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the Transferee Entities and counsel for the *Financing Entities* a letter on January 23, 2009 memorializing the parties' agreement and establishing a schedule whereby the parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10; Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing Entities' counsel received this letter and acted in accordance with its terms is evidenced by, among other things, the fact that they served objections to the Subpoenas on January 28, 2009 (which was the deadline specified in the January 23 letter) and started meeting and conferring with Mattel's counsel telephonically on January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing Entities in person since the parties had agreed to waive that obligation.

Nevertheless, Mattel still had an obligation to meet and confer with the Financing Entities in good faith. Good faith cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16 _____          - 11 -          ORDER NO. 3
                                                  [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 226 _____

1   Proc. 37(a)(1)).

2        Because the evidence and declarations submitted by Mattel and the Financing

3   Entities are in conflict regarding what transpired during their respective meet and

4   confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7   doubt and concludes that it adequately met and conferred with respect to Omni 808

8   Investors, LLC and Vision Capital, LLC.

9        By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14   "good faith" meeting could therefore have taken place.

15        Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23              c.    **Mattel's Efforts To Meet And Confer Regarding The**

24                    **Transferee Entities**

25        Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   ---

[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

- 12 -

EXHIBIT _____ 16

PAGE _____ 227

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process. (*Id.*). In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8       **B.    Legal Standard Governing Enforcement Of The Subpoenas**

9       Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10  actions of "any matter, not privileged, which is relevant to the subject matter

11  involved . . .. The information sought need not be admissible at the trial if the

12  information sought appears reasonably calculated to lead to the discovery of

13  admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14  discovery of all information reasonably calculated to lead to discovery

15  of admissible evidence; but the discoverable information need not be admissible at

16  the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17  250 (D.Kan.1993)).

18      The broad scope of discovery described in subsection (b)(1) is tempered by

19  provisions protecting the responding party from undue burden. Rule 26(b)(2)

20  provides that the frequency or extent of discovery otherwise allowed by the Rules

21  must be limited if the court determines that "(i) the discovery sought is

22  unreasonably cumulative or duplicative, or is obtainable from some other source

23  that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24  discovery has had ample opportunity by discovery in the action to obtain the

25  information sought; or (iii) the burden or expense of the proposed discovery

26  outweighs its likely benefit, taking into account the needs of the case, the amount in

27  controversy, the parties' resources, the importance of the issues at stake in the

28  litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16 _____      - 13 -                    ORDER NO. 3
                                              [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 228

1   Moreover, the Federal Rules distinguish between discovery from non-parties
2   to a lawsuit (governed under Rule 45) and discovery from parties (governed
3   generally by Rule 26), based in part on the recognition that the former is inherently
4   more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*
5   *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is
6   significant when determining whether compliance with a discovery demand would
7   constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984
8   F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party
9   is one factor that the Court may weigh in determining whether the discovery
10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45
11   have interpreted these rules to afford non-parties special heightened protection
12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*
13   *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).
14   Accordingly, requests for documents that pertain to a party and that can be
15   more easily and inexpensively obtained from that party also impose an undue
16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).
17   Further, if the documents sought are neither relevant nor calculated to lead to the
18   discovery of admissible evidence, "then any burden whatsoever imposed upon the
19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*
20   *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).
21   Each of the moving parties bears the burden of establishing the basis for the
22   relief it seeks. As the party moving to compel compliance with the Subpoenas,
23   Mattel bears the burden of "establishing that the information sought is relevant and
24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*
25   *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).
26   Finally, in deciding whether to enforce a subpoena, the Discovery Master
27   must balance "the relevance of the discovery sought, the requesting party's need,
28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___16___   - 14 -   ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]
PAGE ___229___

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3       **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4           As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10  finances.   (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone.*"] (emphasis added)).

12          However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2.   As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19          Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23          Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties*.  Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____    16

PAGE ____    230

1  Financing Entities putting their financial affairs at issue in this litigation.[13]

2  Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3  to the Financing Entities and construed as their consent to discovery of their

4  internal financial affairs.  Such an assumption is unwarranted.

5    **D.  Mattel's Contention That The Subject Discovery Is Relevant To**

6       **Phase 2**

7       **1.  Subpoenas To The Financing Entities**

8  Mattel next argues that the Subpoenas to the Financing Entities seek

9  information relevant to a variety of Phase 2 issues.[14]

10       **a.  Mattel's RICO Counterclaim**

11  Mattel first asserts in its Motion to Compel that the discovery it seeks is

12  relevant to its RICO counterclaim because "Mattel alleges that the counter-

13  defendants have operated a widespread criminal enterprise that has engaged in

14  numerous acts of mail and wire fraud and other predicate acts in violation of the

15  RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16  non-operating entities" is "a continuation of that pattern of racketeering activity."

17  (Motion, p. 18).

18

19  [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20  Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has
21  been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
parties.

22  [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23  Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
(2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
24  Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is
based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*
25  Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As
26  for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to
27  when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines
to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to
28  strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___16___
PAGE ___231___

1    But Mattel's allegations in support of its RICO counterclaim turn on

2  misappropriation of trade secrets and confidential information, and make no

3  mention of improper transfers of funds or any other predicate act similar to MGA's

4  purported business transactions with any of the Financing Entities.[15]  Accordingly,

5  these financial transactions are not a "continuation" of the "pattern" of conduct

6  Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7  *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8  RICO claimant must show "[a]n interrelationship between acts, suggesting the

9  existence of a pattern, [which] may be established...[by] proof of their temporal

10  proximity, or common goals, or similarity of methods, or repetitions' (citation

11  omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12  must be supported by a "pattern" of activity and "the mere fact that there are a

13  number of predicates is no guarantee that they fall into any arrangement or order.

14  A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15  requires the showing of a relationship between the predicates" (quotations and

16  internal citations omitted)]).

17    At this stage, Mattel has failed to demonstrate a relationship between the

18  predicate acts alleged by Mattel in its Counterclaims – which were bound together

19  by a purported scheme to misappropriate Mattel's trade secrets – and the

20  //

21  //

22  //

23  ---

[15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24  Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25  various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26  order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
because they are "designed to and did unlawfully acquire the confidential business information and property of
27  Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
"defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
28  Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
defendants "schemed to defraud Mattel and steal its property and trade secret information"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16

PAGE _____ 232

- 17 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1  transactions Mattel seeks to investigate here.[16]

2      Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3  in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4  Investors, LLC or Vision Capital, LLC came into existence – and therefore

5  apparently did not encompass the activities of those entities or the transactions

6  which are the subject of the Financing Discovery.  While that fact might be

7  overcome by a showing that the Financing Entities were created or used to further a

8  scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9  demonstrate that such is the case in its briefs and supporting evidence.

10      In sum, absent some argument or evidence demonstrating a nexus between

11  the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12  transactions and other matters which are the subject of the Financing Discovery, on

13  the other hand, there has been no showing by Mattel that the Subpoenas to the

14  Financing Entities are reasonably calculated to lead to the discovery of admissible

15  evidence regarding the RICO counterclaim.

16        **b.   Mattel's Disgorgement Remedy**

17      Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18  information relevant to its remedy of disgorgement, which is an available remedy

19  for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20  argues:

21

22  [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
(W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
23  among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
24  engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
25  various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
26  nature, source and location – that is, by transferring funds between defendants and between various accounts
maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
27  appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
28  with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16                – 18 –                ORDER NO. 3
PAGE _____ 233                                [Case No. CV 04-09049 SGL (RNBx)]

1
2
3
4
5
6

> For purposes of establishing disgorgement, Mattel must take into
> account money transferred from MGA and Isaac Larian,
> regardless of the manner in which it was transferred. Mattel is
> entitled to discovery that shows all assets siphoned from MGA or
> Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
> prove the amount the defendants must disgorge. Money that
> properly belonged to Mattel was transferred from MGA or Isaac
> Larian to an entity controlled by them.

7   (Motion, pp. 20:1 – 4, 21:12 – 14).

8       While the foregoing statements may be true as a general proposition, none of
9   the Financing Entities is alleged to have "received money that properly belonged to
10  Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of
11  MGA. Therefore, Mattel has not demonstrated how any of the categories of
12  documents sought from the Financing Entities would aid it in ascertaining the
13  amount defendants must disgorge.

14         c.    **Phase 2 Damages**

15      Mattel's third argument in favor of enforcement of the Subpoenas is that they
16  "seek documents relevant to MGA's financial condition" and other "factors
17  relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).
18  Depending on the particular scope of the document request, such discovery from
19  Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because
20  any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from
21  the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to
22  MGA's net worth (and hence punitive damages).[17] As the Court noted in its
23  February 11, 2009 ruling:

24      I can see tremendous overlap between, for example, discovery on

---

25  [17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC
26  because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9
     and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus
27  presumably not the actual debt purchaser/lender. Rather, the company holding the security interest is Omni 808
     [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because
28  it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show
     that the information sought from those entities has any bearing on MGA's financial condition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___16___    - 19 -    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]
PAGE ___234___

1    financial condition of the company as it relates to damages in the
     Phase 2 and also issues that the receiver is looking at.  And
2    without making a ruling on any of this, I would not suggest for a
     moment that these are mutually exclusive categories.
3
     (Tr., 101:3 - 8)
4
5        Mattel argues that the necessary connection between the Financing

6    Discovery and Phase 2 damages exists because the Financing Entities have acquired

7    a security interest in MGA's assets, which, in turn, affects MGA's financial

8    condition.  Specifically, Mattel argues that Omni 808 Investors, LLC is:

9        directly involved in providing funding to MGA in exchange for a
         security interest.  Such funding, and security interests, are in and
10       of themselves directly relevant to the financial condition of the
         MGA Parties, including the amount of the security interests, the
11       terms and conditions of the funding, and the rate of funding. . . .

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   _____
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase I trial. (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86).  The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

     [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP                                                                           ORDER NO. 3
ATTORNEYS AT LAW
LOS ANGELES                            - 20 -              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 16
PAGE _____ 235

1  would require the Financing Entities to produce virtually every document in their
2  possession regarding their formation, operations, and history of transactions.
3  Among other things, the Subpoenas to the Financing Entities seek:

4  •  All records that "substantiate transfers of assets" by the Financing
5     Entities "to other entities, individuals, and/or parties, within the U.S.
6     and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration
7     of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of
8     Motion To Compel Production of Documents Responsive to Third-
9     Party Subpoenas, Attachment A, ¶ 16);

10 •  All documents "detailing or setting forth the relationship" between
11    each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12 •  All documents referring or relating to the "all contributions, loans and
13    any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14 •  All documents referring or relating to the "source of funding" of other
15    non-parties (*Id.* at ¶ 16);

16 •  All documents showing detail of "all loan facilities" referring or
17    relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18 •  All documents referring or relating to "transactions involving any
19    compensation, loans, advances, payments, fees or any other form of
20    consideration" paid to other non-parties (*Id.* at ¶ 15);

21 •  All "communications" referring or relating to the Financing Entities
22    and other non-parties (*Id.* at ¶ 17).

23    Accordingly, the Discovery Master concludes that most of the categories of
24 documents in the Subpoenas are overbroad and not reasonably calculated to lead to
25 the discovery of admissible evidence with respect to Phase 2 issues, as detailed in
26 Section IV below (entitled "Disposition").
27 //
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 16
PAGE 236

1

### d.    Credibility Of MGA Witnesses

2      Mattel's fourth argument consists of a single, conclusory paragraph asserting
3    that it is entitled to its discovery in order to determine the credibility of MGA's
4    witnesses.  To support this argument, Mattel first states that information is
5    discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel,
6    p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D.
7    646, 650 (C.D. Cal. 1997)).[20]  Next, Mattel asserts that "MGA and Larian made
8    statements under oath about their financial condition as well as about the role of
9    Omni 808 and the other non-operating entities in providing MGA with additional
10   funding." (*Id.*)  But that is the full extent of Mattel's argument.  Mattel does not
11   attempt to show that the specific discovery that it has propounded is reasonably
12   calculated to lead to the discovery of the evidence that it contends would be
13   admissible.

14      Discoverable information generally includes evidence relevant to the
15   credibility of a party or a key witness.  (See *Paulsen v. Case Corp.*, 168 F.R.D. 285,
16   287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D.
17   601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D.
18   Cal. 1995)).  If Mattel's discovery were reasonably calculated to lead to the
19   discovery of such information, then it might be permissible.  (*Id.* ["Rule 26 is
20   liberally interpreted to permit wide ranging discovery of all information reasonably
21   calculated to lead to discovery of admissible evidence."])  But Mattel has not taken
22   any steps to connect its discovery to such evidence.  As discussed above, Mattel
23   bears the burden of demonstrating that its discovery is reasonably calculated to lead
24   to the discovery of admissible evidence.  Here, Mattel has only stated that
25   credibility evidence can be admissible and that credibility is at issue in this case –
26   without referring at all to specific categories of documents in the Subpoenas or

27

28   ――――――――――
[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -                ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____   16

PAGE _____   237

1   linking those categories of documents to prior or anticipated testimony of MGA's

2   witnesses.  Simply stating that credibility evidence is discoverable does nothing

3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4   here is reasonably calculated to lead to the discovery of such evidence.

                    e.    **MGA's Unclean Hands**

6          Mattel next argues in its Motion to Compel that MGA has asserted an

7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9   sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves."  (Motion, pp. 23 -

11  24.)  But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits.  To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16         Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless.  (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes.  But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'"  (*Jarrow Formulas, Inc.

22  v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)).  "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made."  (*Dollar Sys., Inc. v. Avcar

25  Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)).  Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint."  (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16          - 23 -

PAGE _____ 238

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1  1996)).

2       Here, Mattel does not link any of the categories of documents referenced in

3  the Subpoenas (which involve the creation and operation of the Financing Entities

4  beginning with their formation in the summer of 2008) to any of the conduct at

5  issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6  Mexico in 2004 and other conduct unrelated to the relationship between the

7  Financing Entities and MGA). Accordingly, the Financing Discovery is not

8  reasonably calculated to lead to the discovery of admissible evidence regarding

9  MGA's alleged unclean hands in connection with the matters to be adjudicated in

10  Phase 2.

11          f.      **Mattel's Unfair Competition Counterclaim**

12       As Mattel acknowledges, California's Unfair Competition Law, Business &

13  Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14  "'anti–competitive business practices as well as injuries to consumers, and has as a

15  major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16  25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17  *Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18  demonstrate that the documents sought from the Financing Entities involve "anti-

19  competitive business practices," "injuries to consumers," or anything affecting

20  consumers or the public at all.  Instead, Mattel simply asserts, without any

21  supporting analysis, that MGA has violated the Unfair Competition Law by

22  "manipulating the sources of [its own] funding" (presumably the Financing

23  Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24  unfair or fraudulent" marketing or sale of anything and therefore does not fall

25  within the ambit of the Unfair Competition Law.

26  //

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 16        - 24 -        ORDER NO. 3
                                   [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 239

        **g.**    **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

      **2.**    **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively. However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

EXHIBIT _____ 16

PAGE _____ 240

#### a.     Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

#### b.     Relevance To Phase 2 Issues

##### 1.     Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT _____ 16

PAGE _____ 241

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.      Mattel's Unfair Competition Counterclaim**

7           Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22          Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27   Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
     spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering

28   the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                            - 27 -                    ORDER NO. 3
                                                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT            16

PAGE              242

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples.  (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11   will seek (and the Court permit) amendment of the counterclaim to expressly

12   reference such alleged misconduct.  Nevertheless, in light of the fact that the

13   discovery need only appear reasonably calculated to lead to the discovery of

14   admissible evidence, the Discovery Master finds that certain aspects of the

15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16        c.      **Summary Of The Discovery Master's Findings With**

17                **Respect To The Subpoenas Directed To The**

18                **Transferee Entities**

19        As set forth above, the Discovery Master finds that Mattel has sufficiently

20   articulated a connection between some of the Transferee Discovery and its Phase 2

21   claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   IV.  **Disposition**

24        1.      The Motion to Quash filed by MGA is **DENIED**.

25        2.      Mattel's Motion to Compel the Financing Entities to produce

26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27   Capital, LLC and Vision Capital, LLC.

28        3.      Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____16____

PAGE ____243____

1  documents responsive to the Subpoena propounded on it is **GRANTED** in part and
2  **DENIED** in part, as follows:
3          a.      Requests 1 through 3, 13, 15, and 17:  The Motion is granted
4  with respect to documents relating to (1) the existence of any debt owed by MGA
5  Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased
6  from Wachovia Bank, and (2) any communications between Omni 808 Investors,
7  LLC and the MGA parties regarding any such indebtedness.  The motion is denied
8  regarding any other documents sought by these requests.
9          b.      Requests 4 through 12, 14 and 18:  The Motion is denied.
10      4.      Mattel's Motion to Compel the Transferee Entities to produce
11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to
12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.
13      5.      Mattel's Motion to Compel the Transferee Entities to produce
14  documents responsive to the Subpoenas is **GRANTED,** as follows:
15                      **Subpoena To IGWT Group LLC**
16          a.      Request 1:  The Motion is granted with respect to documents
17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,
18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,
19  or their spouses, or any entity or person affiliated with them.
20          b.      Request 2:  The Motion is granted
21          c.      Request 3:  The Motion is granted with respect to documents
22  relating to any ownership interest by Larian, his spouse, his children, his siblings,
23  or their spouses, or any entity or person affiliated with them.
24          d.      Request 4:  The Motion is granted with respect to documents
25  relating to any sources of funding by Larian, his spouse, his children, his siblings,
26  or their spouses, or any entity or person affiliated with them.
27          e.      Request 5:  The Motion is granted with respect to documents
28  relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____16____
PAGE ____244____

1  consideration paid by  IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3          f.      Request 7:  The Motion is granted.

4                  **Subpoena To IGWT 826 Investments LLC**

5          a.      Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9          b.      Request 2:  The Motion is granted

10         c.      Request 3:  The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13         d.      Request 4:  The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16         e.      Request 5:  The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by  IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20         f.      Request 7:  The Motion is granted.

21     5.      All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24     6.      Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 16

PAGE _____ 245

1    Dated:  March 10, 2009

2

3

4                                            By:        /s/ Robert C. O'Brien

5                                                        ROBERT C. O'BRIEN
                                                         Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 16 _____

PAGE _____ 246 _____

# EXHIBIT 17

Case 2:04-cv-09049-SGL-RNB     Document 5093     Filed 03/31/2009     Page 1 of 41

1
Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
2
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
3
Telephone:  213.629.7400
Facsimile:   213.629.7401
4
obrien.robert@arentfox.com

5
Discovery Master

6

7

8
UNITED STATES DISTRICT COURT

9
CENTRAL DISTRICT OF CALIFORNIA

10
EASTERN DIVISION

11

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) |
| 13  Plaintiff, | |
| 14  v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15  MATTEL, INC., a Delaware<br>corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16 | |
| 17  Defendant. | **AMENDED[1] ORDER NO. 11,<br>REGARDING:** |
| 18 | **(1)  MOTION OF MATTEL, INC.<br>TO COMPEL RESPONSES TO<br>INTERROGATORIES AND<br>PRODUCTION OF DOCUMENTS<br>BY MGA ENTERTAINMENT, INC.<br>AND ISAAC LARIAN; and** |
| 19 | |
| 20 | |
| 21 | |
| 22  CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | **(2)  MOTION OF MATTEL, INC.<br>TO COMPEL THE DEPOSITIONS<br>OF PABLO VARGAS AND<br>MARIANA TRUEBA** |
| 23 | |
| 24 | |

25

26

27
28

---

[1] The only difference between this Amended Order No. 11 and the original order is the language in Section III requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30 days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17
PAGE _____ 247

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    This Order sets forth the Discovery Master's ruling on two motions filed by

2    Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3    production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4    ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5    to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6    (the "Deposition Motion") (collectively, the "Motions").

7         The Motions came on regularly for hearing before the Discovery Master on

8    March 19, 2009.  All interested parties were represented by counsel and afforded

9    the opportunity to present oral argument on the Motions.  The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument, rules as set forth below.

12   **I.   <u>MATTEL'S WRITTEN DISCOVERY MOTION</u>**

13        In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14   documents responsive to 40 separate document requests[2] and provide answers to 12

15   different interrogatories.  (Separate Statement in Support of the Written Discovery

16   Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17   documents responsive to 3 separate document requests and provide answers to 11

18   different interrogatories.[3]   (*Id.*, pp. 41 – 43 and 49 – 102).

19        **A.   Document Requests**

20             **1.   Document Requests Propounded On MGA**

21        Document Request Nos. 4 through 37 seek financial information from MGA

22

23   [2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its

     Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels

24   Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document

     Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written

25   Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion

     ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document

26   Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not

     Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer

27   to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of

     Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit I).

28   [3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                       - 1 -                     AMENDED ORDER NO. 11
                                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    17

PAGE    248

1   related to sales, revenues, costs, profits, customer returns, customer rebates and

2   customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3   sufficient to identify customers who purchased any Bratz Product from MGA or its

4   licensees.  (Watson Decl., Ex. 1 at pp. 7 – 12).

5        Document Request Nos. 43, 44 and 46 similarly seek financial information

6   from MGA related to the Bratz product line:

7        • Document Request No. 43 (erroneously numbered in Mattel's Separate

8          Statement as request number 42): "All sales, profit and cash flow

9          projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10         BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (*Id.*, p. 13).

11       • Document Request No. 44 (erroneously numbered in Mattel's Separate

12         Statement as request number 43): "All DOCUMENTS that REFER

13         OR RELATE TO the value of the Bratz brand." (*Id.*).

14       • Document Request No. 46 (erroneously numbered in Mattel's Separate

15         Statement as request number 45): "All DOCUMENTS that evidence,

16         reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17         fashion doll market, including, without limitation, the extent to which

18         Bratz has been or is gaining or losing market share in the fashion doll

19         market." (*Id.*, p. 14).

20       Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23       • Document Request No. 40: "All DOCUMENTS that describe YOUR

24   _____

[4] Mattel defines the term "Bratz Product" as follows:

25          'Bratz Product' means any product whether two-dimensional or three-dimensional,
            and whether in tangible, digital or electronic or other form:  (i) that is or has ever
            been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
26          line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES
            TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
27          packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists
            of or REFERS OR RELATES TO BRATZ.
28   (Watson Decl., Ex. 1 at p. 3; *see also id.*, Ex. 4 at p. 7).

EXHIBIT _____ 17 _____

PAGE _____ 249 _____

1    cost allocation procedures." (*Id.*, p. 13).

2    • Document Request No. 41: "YOUR general ledgers from January 1,

3    1995 through the present." (*Id.*).

4    • Document Request No. 45 (erroneously numbered in Mattel's Separate

5    Statement as request number 44): "DOCUMENTS sufficient to

6    calculate YOUR net worth on a yearly basis for each year from 1999

7    to the present." (*Id.*).

8    **2.    Document Requests Propounded On Larian**

9    The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13   each account with any bank or financial institution that YOU have or

14   have had, or that YOU have or have had any legal or beneficial interest

15   in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish

17   YOUR gross income, and the sources of that gross income, for the

18   years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate

20   YOUR net worth on a yearly basis for each year from 1999 to the

21   present." (*Id.*, p. 63).

22   **3.    Phase 1 Rulings**

23   This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue. Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   the present dispute).  (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2        Because the prior discovery master compelled MGA to produce information

3   responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4   Larian to produce information responsive to Document Request Nos. 207, 208 and

5   269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6   Civil Procedure 26 to supplement their prior productions, and (2) that the

7   information the MGA Parties "are withholding is relevant to the damages Mattel

8   seeks," (Written Discovery Motion, pp. 8 – 9).

9        **4.    Objections Of MGA**

10        In their Opposition, the MGA Parties rely on two grounds for refusing to

11   supplement their prior document productions regarding Document Request Nos. 4 –

12   37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13   failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14   Parties argue that the requested information is not relevant to the claims and

15   defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16        **a.    Purported Failure To Meet And Confer**

17        Because it could dispose of the outstanding discovery issues related to the

18   document requests that are the subject of the present dispute, the Discovery Master

19   first addresses the MGA Parties' argument that Mattel failed to meet and confer

20   properly prior to filing its Written Discovery Motion.

21        The MGA Parties argue that Mattel's motion to compel should be denied

22   because Mattel failed to comply with the meet and confer requirements of Local

23   Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24   however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25   discovery disputes in this case.  The applicable meet and confer procedures are set

26   forth in the Court's order appointing a discovery master dated December 6, 2006

27   ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28   Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17 _____    - 4 -    AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 251 _____

1    requires that, before filing a motion to compel, the moving party must meet and

2    confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3              Because Rule 37 and the Discovery Master Order govern the meet and confer

4    process in this case, the Discovery Master construes the MGA Parties' meet and

5    confer argument in light of the good faith requirement embedded in Rule 37.  The

6    MGA Parties claim that Mattel did not meet and confer in good faith because its

7    counsel sent them "a meet and confer letter inviting [them] to further meet and

8    confer on February 11, 2009" and then filed a motion to compel one "day before

9    the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13   However, the record available to the Discovery Master demonstrates that Mattel

14   made several prior attempts to meet and confer with the MGA Parties, including

15   engaging in the following:

16              • On January 6, 2009, Mattel's counsel sent a letter demanding that the

17                  MGA Parties supplement their production concerning the document

18                  requests by February 1, 2009, (Watson Decl., Ex. 17);

19              • Counsel for the MGA Parties never responded to Mattel's January 6,

20                  2009 letter, (Written Discovery Motion, p. 6);

21              • Counsel for Mattel sent counsel for the MGA Parties a second copy of

22                  the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23              • Counsel for Mattel and counsel for the MGA Parties then spoke on

24                  February 6, 2009, and were supposed to discuss, among other things,

25                  the document requests at issue, but counsel for the MGA Parties was

26                  not prepared to discuss the requests at the appointed time, (Watson

27                  Decl., ¶ 22); and

28              • Counsel for Mattel and the MGA Parties then spoke *again* on February

1    9, 2009 to discuss the document requests but counsel for the MGA

2    Parties was still not prepared to discuss the issues, (*Id.*).

3        In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party."  (Fed. R. Civ. P.

8    37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied·its meet and confer obligations under Rule 37.[5]

12       **b.      Relevance Of The Document Requests To Phase 2**

13       The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17       **(1)      Document Request Nos. 207, 208 And 269**

18       With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims.  (Opposition, p. 6).

21       Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true.  For example, Document Request

24

---

25   [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the requested information following the filing of the Written Discovery Motion.  It is, therefore, unclear what could have

26   been accomplished by an additional meet and confer on these issues.  Moreover, Mattel's counsel stated at oral argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they

27   still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p. 68:7-9).  Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery

28   procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____17_____        - 6 -

PAGE _____253_____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2   No. 269) and gross income (Request No. 208).  Such information relates to Phase 2

3   damages issues, including, among other things, damages sought against Larian in

4   connection with Mattel's unfair competition cause of action as well as the

5   calculation of Larian's net worth for purposes of litigating the propriety of any

6   "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166).  It is

7   therefore discoverable.

8        In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9   Mattel's employees for the express purpose of misappropriating Mattel's

10   confidential and proprietary information, and that the MGA Parties promised such

11   individuals increased salaries at MGA.  (*See, e.g.,*  SAAC, ¶¶ 69 and 77).  Mattel's

12   request for documents sufficient to identify Larian's bank accounts (i.e., Request

13   No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14   evidence regarding the source of any payments that may have been made by Larian

15   to former Mattel employees.[7]

16                      **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                                            **46**

18        Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19   37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20   financial information "related to Bratz dolls, which was a Phase 1 issue,"

21   (Opposition, p. 5).  Specifically, the MGA parties argue that:

22                      [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

24   [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he
     concludes that Larian should not be required to provide updated information concerning his net worth and gross

25   income every few months.  Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase
     2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question

26   deponents about the figures provided, and give the data to its experts.  Further, acquiring updated financial
     information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by

27   the verdict rendered in Phase 1 or recent economic conditions.

     [7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to

28   produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    -7-                AMENDED ORDER NO. 11
                                                       [Case No. CV 04-09049 SGL (RNBx)]

1         related financial information in order to establish its Phase

2         2 damages ignores the jury's Phase 1 damages award . . . .

3         Mattel sought disgorgement of all Bratz profits during

4         Phase 1 and the jury made its award.  Mattel may not

5         relitigate this issue in Phase 2.

6    (*Id.*, p. 6).

7         However, Document Request Nos. 40, 41 and 45[8] make no mention of

8    financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9    (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10   (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11   through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12   net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13   Therefore, MGA's argument does not apply to these document requests.

14        Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15   Separate Statement as request number 44) are further reasonably calculated to lead

16   to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17   the touchstone for determining whether a particular discovery request is reasonably

18   calculated to lead to the discovery of admissible evidence in this case is whether the

19   request bears some relation to the issues to be tried in Phase 2.  That standard is met

20   here, since MGA's general ledgers, net worth, and cost allocation procedures all

21   bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22   damages.

23        As for the remainder of the document requests directed to MGA (i.e.,

24   Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

25   [8]  Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26   [9]  Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27   [10]  Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28   [11]  Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____17_____

PAGE _____255_____

1    financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2    Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3    Dolls as well as any damages that may be recoverable by Mattel relating to such

4    misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5    the information sought by Mattel is irrelevant.

6         As an initial matter, the Court's December 3, 2008 order imposes a

7    constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8    any such inventory is thus relevant to the Court's injunction and presumably must

9    be made available to Mattel on that basis alone.[12]

10        Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth."  (SAAC, ¶¶ 1, 88, 98, 106, and

19   163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25        Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   _____
     [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (*See*
28   Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or
     correct its disclosure or response . . . in a timely manner"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___17___     - 9 -

PAGE ___256___

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2  of the purported racketeering activities was the "altering [of] numerous original

3  Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4  sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5  calculated to lead to the discovery of admissible evidence in Phase 2.

6  The Discovery Master cannot predict whether the Court will ultimately

7  construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8  misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9  presenting any evidence that it has been damaged by such misconduct at the Phase

10  2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11  Given that the discovery here need only appear reasonably calculated to lead to the

12  discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13  Master finds that the aforementioned document requests are sufficiently related to

14  Mattel's Phase 2 claims to be discoverable at this time.

15  **5.    Conclusion**

16  For all of the foregoing reasons, Mattel's motion to compel responses to

17  Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18  Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19  **B.    Interrogatories Propounded On MGA And Larian**

20  The second part of Mattel's Written Discovery Motion addresses various

21  interrogatories propounded on the MGA Parties.

22  **1.    Interrogatory No. 45 Propounded On MGA**

23  Interrogatory No. 45 asks MGA[13] to:

24  IDENTIFY each BRATZ PRODUCT that has been

25  SOLD by [MGA] or [its] licensees and, for each such

26

27  [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
   Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO

28  INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

17

- 10 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 257

1            BRATZ PRODUCT, state . . . (a) the number of units of

2            each such BRATZ PRODUCT SOLD by [MGA] or [its]

3            licensees, (b) the gross and net revenue received by

4            [MGA] from such SALES of each such BRATZ

5            PRODUCT, (c) all costs [MGA] incurred in connection

6            with each such BRATZ PRODUCT, including but not

7            limited to [MGA's] costs of goods sold, and (d) [MGA's]

8            gross and net profits from each such BRATZ PRODUCT.

9    (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10   Written Discovery Motion, p. 9).

11           **a.**    **Phase 1 Rulings**

12       As with the document requests discussed above, Mattel concedes that "MGA

13   identified and produced documents responsive to [Interrogatory No. 45] in

14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15   Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16   supplement its response" without justification. (*Id.*)

17           **b.**    **Objections Of MGA**

18       In its Opposition, MGA argues that it does not have to provide the

19   information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20   like the document requests propounded on MGA, "Mattel's entitlement to gross and

21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23   (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24   identical to the documents sought by Document Request Nos. 21 (requesting

25   "DOCUMENTS sufficient to show the number of units of each BRATZ

26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2    BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3    "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4    profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5    licensees"), discussed above. Accordingly, MGA's relevancy argument regarding

6    Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7    I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8    imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9    arguably relevant to Mattel's Phase 2 claims.[14]

10    MGA also argues that it should not be required to provide the information

11    requested by Interrogatory No. 45 because it "has already provided information that

12    is current through the second fiscal quarter of 2008" and it would be unduly

13    burdensome to gather the documents necessary to update that information.

14    (Opposition, pp. 7 – 8). MGA did not argue, however, in its Opposition that it

15    would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16    24 discussed above in Section I.A.4.b.2. Therefore, MGA can gather the

17    documents responsive to those requests and refer Mattel to those materials. (*See*

18    Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19    examining . . . a party's business records . . . the responding party may answer by

20    specifying the records that must be reviewed . . ."]).

21    The MGA Parties' argument that it is overly burdensome to require MGA to

22    spend 320 hours to inform Mattel of the most recent sales figures concerning the

23    Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25    [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
       enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from
26    presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
       was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only
27    appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
       Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable
28    at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   information requested and the wide-ranging extent of the discovery to date.  As

2   explained above, the information sought is relevant to the constructive trust

3   imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4   claims.  Also, while 320 hours may be unduly burdensome in certain

5   circumstances, it is not unreasonable on its face here given that the MGA Parties

6   have already produced more than 4 million documents.[15]  (*See Cappacchione v.*

7   *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8   ["Requiring a responding party to perform extensive research or to compile

9   substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13           **c.**    **Conclusion**

14       For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17           **2.**    **Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                 **Larian**

19       Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22       •  Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23           MGA has obtained, received, reviewed, copied, reproduced,

24           transmitted, requested, or used at any time since January 1, 1999, and

25           IDENTIFY all PERSONS with knowledge of such facts and all

26           DOCUMENTS that REFER OR RELATE TO such MATTEL

27

28

---

[15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

EXHIBIT _____ 17

PAGE _____ 260

- 13 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    DOCUMENTS." (Separate Statement in Support of Written

2    Discovery Motion, p. 49).

3    • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4    OR RELATE TO any MATTEL product or plan that any of the

5    FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6    to, shared with or used on behalf of MGA at any time since January 1,

7    1999, and IDENTIFY all PERSONS with knowledge of such facts."

8    (*Id.*, p. 52).

9    • Interrogatory No. 58: "State all facts which support YOUR

10   contention, if YOU so contend, that YOU and/or MGA did not obtain

11   any MATTEL DOCUMENTS through improper means, and

12   IDENTIFY all PERSONS with knowledge of such facts and all

13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14   54).

15   • Interrogatory No. 59: "State all facts which support YOUR

16   contention, if YOU so contend, that any information in the MATTEL

17   DOCUMENTS does not and/or did not derive independent economic

18   value from not being generally known to the public or other

19   PERSONS who can obtain economic value from its disclosure or use,

20   and IDENTIFY all PERSONS with knowledge of such facts and all

21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22   57).

23   • Interrogatory No. 60: "State all facts which support YOUR

24   contention, if YOU so contend, that any information in the MATTEL

25   DOCUMENTS was known to the public or to PERSONS who can

26   obtain economic value from its disclosure or use, and IDENTIFY all

27   PERSONS with knowledge of the foregoing and All DOCUMENTS

28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17

PAGE _____ 261

- 14 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    • Interrogatory No. 61: "State all facts which support YOUR

2    contention, if YOU so contend, that YOU and/or MGA independently

3    developed, or did not otherwise use or disclose, any information in the

4    MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5    knowledge of such facts and all DOCUMENTS that REFER OR

6    RELATE TO such facts." (*Id.*, pp. 64 – 65).

7    • Interrogatory No. 62: "State all facts which support YOUR contention

8    that YOUR use or disclosure of information in the MATTEL

9    DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10   IDENTIFY all PERSONS with knowledge of such facts and all

11   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12   69).

13   • Interrogatory No. 63: "State all facts which support YOUR

14   contention, if YOU so contend, that YOU and/or MGA had, has or

15   have any right to copy, possess, use or disclose any MATTEL

16   DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17   facts and all DOCUMENTS that REFER OR RELATE TO such

18   facts." (*Id.*, p. 73).

19          a.    **Objections Of MGA And Larian**

20          In their Opposition, the MGA Parties rely on four basic grounds for refusing

21   to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22   that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23   – 10).   Second, the MGA Parties argue that the interrogatories presuppose facts

24   that are not true. (*Id.*, p. 8). Third, the MGA Parties argue that all 8 interrogatories

25   are impermissibly compound and exceed the number of allotted interrogatories.

26   (*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27   and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

17        - 15 -        AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE                    262

### (1)   Unduly Burdensome Objection

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10).  While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10).  Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party.  (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims.  (Tr., 37:9-12 ["We're not asking for something of marginal importance.  We're asking for . . . their core contentions related to the trade secret claims."]).  As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20).  Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

17

PAGE    263

1         • stole "Mattel's plans, strategy and business information for the

2            Mexican market and materials related to Mattel's worldwide business

3            strategies," (*Id.*, ¶ 37);

4         • "directed [certain Mattel employees'] to steal virtually all Mattel

5            confidential and proprietary information that they could access and

6            bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7            type of document a competitor would need to enter the Mexican

8            market, and to unlawfully compete with Mattel in Mexico, in the

9            United States and elsewhere . . ." (*Id.*, ¶ 48);

10       • "targeted certain Mattel employees who have broad access to Mattel

11           proprietary information in an effort to induce and encourage them to

12           join MGA and to steal or otherwise wrongfully misappropriate Mattel

13           confidential information and trade secrets," including by "promising

14           these employees salaries 25 percent or more higher than they earn at

15           Mattel and stating to them that they should not be concerned by legal

16           action taken by Mattel to protect its trade secrets and its rights because

17           such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18       • "hired directly from Mattel's United States operations at least 25

19           employees, from Senior Vice-President level to lower level

20           employees," and that some of these individuals misappropriated

21           "Mattel confidential and proprietary information, including Mattel's

22           strategic plans; business operations; methods and systems; marketing

23           and advertising strategies and plans; future product lines; product

24           profit margins, and customer requirements." (*Id.*, ¶ 77).

25     Therefore, this is not a situation where Mattel has alleged that the MGA

26 Parties stole a handful of documents. The SAAC instead alleges that the MGA

27 Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28 "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____17_____

PAGE _____264_____

- 17 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   market, and to unlawfully compete with Mattel in Mexico, in the United States and

2   elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA

3   Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4   19), including all of the documents that have been identified as the MATTEL

5   DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6   regarding whether or not those documents constitute trade secrets, particularly

7   given that such information is exclusively within the control of the MGA Parties.

8   As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9   accusing MGA and the other defendants of stealing all of these documents . . . and

10  [the MGA Parties are] going to have to articulate what their contentions are with

11  respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*

12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13  Mattel is going to be proceeding to trial on."]).

14        Also, the MGA Parties' claim of undue burden does not take into account the

15  vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16  propounded 4,647 requests for admission, 2,889 requests for production, and 71

17  interrogatories in Phase 1]). The MGA Parties do not provide any supporting

18  declaration or specific evidence to support their assertion of burden beyond their

19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20  For example, the MGA Parties have not provided the Discovery Master with details

21  regarding: (1) a time estimate as to how long it would take to respond to the

22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23  extent to which any facts that must be set forth in answering the Interrogatories are

24  voluminous; or (4) an estimate of the number of documents and/or persons that may

25  have knowledge of such responsive facts. Therefore, the Discovery Master finds

26  that the MGA Parties have not met their burden of demonstrating that answering

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17 _____

PAGE _____ 265 _____

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    the requested interrogatories is overly burdensome.[16] (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6        While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory. The Discovery Master, thus, limits six of the interrogatories at

13   issue[17] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25        The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue. (Opposition, pp. 9 – 10).

28   [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17

PAGE _____ 266

- 19 -

1   conceded in its Reply that it was not asking the MGA Parties "to provide

2   facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3   "specific contentions Defendants may make regarding the [allegedly] stolen

4   documents," (id., p. 17). Mattel's counsel reiterated this position again at oral

5   argument, wherein he declared that Mattel was not necessarily interested in "a

6   parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7   Parties'] trial positions are going to be, before the jury is seated," (id., p. 81:14-15).

8                   (2)     **Purported Presuppositions Regarding**

9                           **Interrogatory Nos. 56 and 58 – 63.**

10       The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11  objectionable because they require the MGA Parties to presuppose that they are "in

12  possession of documents stolen or taken from Mattel by former employees – a fact

13  that MGA denies." (Opposition, p. 8). The MGA Parties further assert that "each

14  of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15  Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16  assertions . . . which make the interrogatories unanswerable and incomprehensible."

17  (Id., p. 9). However, the MGA Parties cite no legal authority, and the Discovery

18  Master has found none, standing for the proposition that a party may refuse to

19  respond to an interrogatory merely because the interrogatory assumes a fact the

20  responding party disputes.

21                  (3)     **Compound And Excessive Objections**

22       The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23  impermissibly compound and exceed the allotted number of interrogatories.

24  (Opposition, pp. 10 and 11). Each of these contentions is unavailing.

25       As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26  _____

27  [18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
    judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
    information. (See Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
28  its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
    . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                               AMENDED ORDER NO. 11
                                    - 20 -                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 17

PAGE _____ 267

1    and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2    the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3    Therefore, the MGA Parities waived any such objections to those interrogatories.

4    (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5    Cir. 1992) [stating that "failure to object to discovery requests within the time

6    period required constitutes a waiver of any objection."]).

7        As for the interrogatories where the objections were asserted, the MGA

8    Parties have not demonstrated that the interrogatories are compound or exceed the

9    allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10    and documents related to the MATTEL DOCUMENTS does not render the

11    interrogatories compound because the questions in each interrogatory refer to one

12    common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint*

13    *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14    subparts directed at eliciting details concerning a 'common theme' should generally

15    be considered a single question"]).  The prior discovery master applied this precise

16    rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17    supporting a contention, the identity of persons with knowledge, and documents are

18    not counted separately for the purposes of applying the . . . interrogatory limit."

19    (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20              **(4)     Establishing A Negative Proposition Objection**

21        As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22    Parties assert that three of the interrogatories improperly ask them to establish a

23    negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24    12).  The relevant question, however, is not whether an interrogatory may require a

25    party to prove a negative.  Rather, all of the cases cited by the parties concerning

26    this issue examine whether the interrogatory in question imposes an unreasonable

27    //

28    //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17 _____      - 21 -      AMENDED ORDER NO. 11
PAGE _____ 268 _____                    [Case No. CV 04-09049 SGL (RNBx)]

1  burden on the responding party.[19]  For the reasons explained above, there has been

2  no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3  pp. 11 – 12).

### b.    Conclusion

5      For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6  are overruled and Mattel's motion to compel responses to the interrogatories is

7  granted, subject to the limitations discussed above.

### 3.    Interrogatory Nos. 67 – 69 Propounded On MGA And Larian

10     Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

14      • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15        payment of money or other item of value that YOU have made or

16        given, or any promise, agreement, proposal [o]r offer by YOU to pay

17        money or given any item of value, to or on behalf of any PERSON

18        identified in any of the parties' initial disclosures in this ACTION at

19        any time when such person was not an employee of MGA, including

20        without limitation with respect to legal fees incurred by or on behalf of

21        such PERSON." (Separate Statement in Support of Written Discovery

22        Motion, p. 88).

23      • Interrogatory No. 68: "To the extent not disclosed in prior

---

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 - 448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]; *Tennison v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*, 2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17

PAGE _____ 269

- 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1             Interrogatories, IDENTIFY fully and separately each and every

2             payment of money or other item of value that MGA has made, or any

3             promise, agreement, proposal or offer by MGA to pay money or given

4             any item of value, to or on behalf of any of the FORMER MATTEL

5             EMPLOYEES, including without limitation with respect to legal fees

6             incurred by or on behalf of any of the FORMER MATTEL

7             EMPLOYEES." (*Id.*, p. 91).

8        •   Interrogatory No. 69: "To the extent not disclosed in prior

9             Interrogatories, IDENTIFY fully and separately each and every

10            payment of money or other item of value that YOU have made, or any

11            promise, agreement, proposal or offer by YOU to pay money or given

12            any item of value, since January 1, 1998 to or on behalf of any

13            PERSON who has been employed by MATTEL (excluding ordinary

14            salary and benefits paid to such PERSON while an MGA employee),

15            including without limitation with respect to legal fees incurred by or

16            on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17            p. 92).

18           **a.**     **Objections Of MGA And Larian**

19        In their Opposition, the MGA Parties rely on two basic grounds for refusing

20 to provide responses to these three interrogatories. First, the MGA Parties argue

21 that the interrogatories are impermissibly compound and exceed the number of

22 allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that

23 interrogatories are overly broad. (*Id.*, pp. 12 – 14).

24           **(1)**     **Compound And Excessive Objections**

25        Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26 that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27 allotted number of interrogatories. (Opposition, pp. 10 and 11). But those

28 arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17 _____     - 23 -     AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 270 _____

### (2)     Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[20] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

17

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE     271

1    employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2    EMPLOYEES as including specific individuals as well as each such person's

3    "current or former employees, agents, representatives, attorneys, accountants,

4    vendors, consultants, independent contractors, predecessors-in-interest and

5    successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6    to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7    While they assert these definitional objections, counsel for the MGA Parties

8    nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9    Mattel employees, for other than their salary as MGA employees, I think that is a

10   fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11        Therefore, the Discovery Master orders the MGA Parties to identify fully and

12   separately each and every payment of money or other item of value that they have

13   made or offered to pay to or on behalf of any "former employee of Mattel" since

14   January 1, 1998 but limits the definition of former Mattel employees to "all

15   individuals that the MGA Parties are aware of that worked for Mattel and who

16   received any payment (excluding ordinary salary and benefits paid to such person

17   while an MGA employee) from the MGA Parties."[21]

18                    **b.     Conclusion**

19        For all of the foregoing reasons, Mattel's motion to compel is denied with

20   respect to Interrogatory No. 67.  Regarding Interrogatory Nos. 68 and 69, Mattel's

21   motion to compel responses to the interrogatories is granted, subject to the

22   limitations discussed above.

23        **C.     Summary Of Ruling Regarding The Written Discovery Motion**

24        Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25   **part**.

26   _____

27   [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
     Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a
28   request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.
     Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17            - 25 -        AMENDED ORDER NO. 11
                                           [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____ 272

## II.  MATTEL'S DEPOSITION MOTION

### A.  Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1.  Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business.  Vargas currently serves as the Director of Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex.  She does not manage or supervise any employees of MGA Mex.  Trueba reports directly to Machado, who is MGA Mex's Director of Marketing.  Machado, in turn, reports to Kuemmerle.

#### 2.  Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses.  On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

EXHIBIT _____ 17

PAGE _____ 273

1    the Witnesses (as well as others).  Mattel's application was stayed with other Phase

2    2 discovery and then denied without prejudice on September 23, 2008.  After the

3    Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4    depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5    Once again, the MGA Defendants objected on the ground that neither of the

6    Witnesses is an officer, director or managing agent of MGA Mex.  After the parties

7    were unable to resolve their dispute, Mattel filed the Deposition Motion.

8           **B.     Discussion**

9           Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles.  Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights.  In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico.  The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[23]  According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24          **1.     Legal Standard**

25          If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27

28   ---
     [23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including
     MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

17

PAGE                274

- 27 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  managing agent to be deposed and noticing that person's deposition under Rule

2  30(b)(1).  Notice alone is enough to compel the managing agent to attend the

3  deposition.  (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4  *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)).  For purposes of

5  compelling a corporate officer's deposition, courts do not recognize a distinction

6  between an "apex" official or director and other high corporate officials.  (*Resort*

7  *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8  Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9  ["There is slight warrant for the present distinction between officers and managing

10  agents on the one hand and directors on the other."]).

11       The case law provides somewhat ambiguous guidance with respect to the

12  burden of proof for demonstrating managing agent status.  Generally, the burden is

13  on the discovering party to establish the status of the witness.  (See *Sugarhill*

14  *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15  *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)).  At the same

16  time, however (and as Mattel points out in its papers), courts resolve doubts in

17  favor of the examining party, at least during the discovery phase.  (See *Sugarhill*,

18  105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19  (S.D.N.Y.1968)).  "Thus, it appears that the examining party has the burden of

20  providing enough evidence to show that it is at least a close question whether the

21  proposed deponent is a managing agent."  (*United States of America v. Afram Lines*

22  *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23       The identification of a managing agent in any given case is fact-sensitive.

24  "[B]ecause of the vast variety of factual circumstances to which the concept must

25  be applied, the standard . . . remains a functional one to be determined largely on a

26  case-by-case basis."  (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27  *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)).  "Thus, 'the

28  question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

17

275

1   pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2   C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3   citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)). Whether a

4   proposed deponent falls into a particular category of employee or agent is therefore

5   less relevant than the individual's specific functions and authority.

6          As both parties acknowledge, federal courts have formulated a set of factors

7   to assist in determining whether person is a party's "managing agent," and therefore

8   subject to deposition under Rule 30(b)(1):

9          1)    whether the individual is invested with general powers allowing him to

10                exercise judgment and discretion in corporate matters;

11         2)    whether the individual can be relied upon to give testimony, at his

12                employer's request, in response to the demands of the examining

13                party;

14         3)    whether any person or persons are employed by the corporate

15                employer in positions of higher authority than the individual

16                designated in the area regarding which the information is sought by the

17                examination;

18         4)    the general responsibilities of the individual "respecting the matters

19                involved in the litigation;" and

20         5)    whether the individual can be expected to identify with the interests of

21                the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23         According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)). Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17

PAGE _____ 276

- 29 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),

2    the Witnesses are managing agents of MGA Mex.

3          Mattel's emphasis on the employee's loyalty as the main test for determining

4    his or her status is unwarranted. Federal courts have effectively challenged the

5    notion that the employee's loyalty to the employer is entitled to special weight.

6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the

7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8    apparent fidelity to the principal's interests, because it would apply to many agents

9    and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent." (*Id.,* at 350). Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies. Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15         In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees. Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness. This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27         However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____ 17

PAGE ____ 277

- 30 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2   employee of an adversary corporation in his individual capacity and may

3   nonetheless still seek to impeach that testimony.  In other words, characterizing a

4   particular witness as a "managing agent" no longer provides any substantive

5   advantage to the deposing party, only procedural advantages (i.e., the ability to take

6   the deposition without a subpoena).

7        Having discarded the notion that the witness' loyalty to his employer is the

8   main factor to be considered in ascertaining his status as a managing agent, the

9   court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11  197 F.R.D. at 350).  The court reasoned:

12            For the purpose of determining whether an individual is a

13            'managing agent' within the meaning of the discovery rules, the

14            alter ego theory provides a useful analogy.  As in the arena of

15            corporate liability, the focus begins with the character of the

16            individual's control.  In addition, we can profitably examine both

17            the degree to which the interests of the individual and the

18            corporation converge, and how helpful the individual will be in

19            fact finding on the matter at issue, in comparison to others

20            associated with the corporation.  As in all matters appertaining to

21            discovery, it is the ends of justice that are to be served.

22  *(Id.,* quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*,

23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25  practical and well-reasoned test for determining whether the Witnesses are

26  managing agents of MGA Mex, and applies that test below.

27  _____

28  [24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___17___

PAGE ___278___

- 31 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

2.    **Analysis Of The Witnesses' Job Functions And Managerial Authority**

    a.    **The Nature Of The Witnesses' Activities On Behalf Of, And Control Over, MGA Mex.**

In accordance with the approach outlined in *Libbey Glass*, the Discovery Master begins his analysis by examining the Witnesses' activities on behalf of, and managerial control over the operations of, MGA Mex.

Mattel relies heavily on documentary evidence regarding the role of Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery Master finds that this evidence, which is limited to events that occurred five years ago, to be only minimally probative of the *current scope* of the Witnesses' activities and authority.[25] The only evidence presented by the parties concerning the Witnesses' current role in the company is the testimony of Kuemmerle. That testimony derives from three sources: (1) her declaration filed on February 27, 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

The relevant portion of Kuemmerle's first declaration is Paragraph 6, which states in its entirety:

> All of the day to day operations of MGA Mexico are managed locally in Mexico. For example, MGA Mexico's Finance Director, Sales Director and Marketing Director are all based in Mexico and all of the marketing and finance functions are handled in Mexico.

(First Kuemmerle Decl., ¶ 6).

---

[25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents? And the answer, of course, is now." (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT    17

PAGE    279

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1     There are two main excerpts from Kuemmerle's deposition transcript cited

2     by Mattel in support of its Deposition Motion.  In the first, Kuemmerle testifies that

3     pricing for the products sold by MGA Mex is set by means of a "combined team

4     effort" among a group that counsel refers to as "the four of you."  (Kuemmerle Tr.,

5     p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26]  Kuemmerle testifies that these

6     individuals (which apparently include the Witnesses) continue to set the pricing of

7     MGA Mex products in the same manner to this day.  (*Id.*).

8          Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9     testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10    tight of a group, not enough employees, that we were all forced to multitask."

11    (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12         In her second declaration, Kuemmerle testifies regarding the chain of

13    command at MGA Mex.  Specifically, she testifies that Vargas reports directly to

14    her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15    (Second Kuemmerle Decl., ¶¶ 3 – 4).  Kuemmerle is entirely silent regarding the

16    functions performed by, or general authority exercised by, either of the Witnesses.

17    Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18    all at MGA De Mexico."  (*Id.*, ¶ 4).  Kuemmerle does not state whether Vargas

19    supervises anyone.  (*Id.*, ¶ 3).

20         In the absence of any evidence directly addressing the Witnesses' current

21    role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22    managing agents based on the Witnesses' job titles and past participation in the

23    "tight group" that made operational decisions for the fledgling company several

24    years ago.  However, such an inference is not supported by the scant evidence

25    before the Discovery Master.  For instance, the Discovery Master cannot attribute

26    ────────────────

27    [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel
      is referring.  However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and

28    Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9
      to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 17

PAGE _____ 280

- 33 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   such status to Trueba, who supervises no employees, and whose scope of

2   responsibility is circumscribed to public relations.[27]

3        Likewise, although Mattel emphasizes that Vargas supervises approximately

4   8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5   p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6   necessary context by identifying the number of total MGA Mex employees. If, for

7   instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8   employees would tend to indicate he does not have such authority.[28]  Because the

9   necessary contextual information is not provided, the Discovery Master is unable to

10  assess the significance (if any) of the evidence that is provided regarding Vargas'

11  current role at MGA Mex.

12       In sum, the evidence currently before the Discovery Master is insufficient to

13  allow him to determine that the Witnesses' functions on behalf of, and control over,

14  MGA Mex is such that they can be deemed its "managing agents."

15            **b.    Other Factors**

16       Since there is virtually no evidence addressing the critical factor governing

17  whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18  above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19  at best.  Even if all those factors were satisfied – which they are not – the record

20  would still be insufficient to enforce the deposition notices at issue here.  However,

21  in order to create a complete record and to address the arguments made by the

22  parties, the Discovery Master nonetheless briefly discusses those factors below.

23       As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing."  (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion.  Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT   17

PAGE   281

- 34 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    on the issue of whether an employee is a managing agent is whether he or she "is

2    invested with *general* powers allowing him to exercise judgment and discretion in

3    corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4    current scope of Trueba's authority appears to be the opposite of "general:" she is

5    responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6    attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7    broader than that of Trueba, appears to be confined primarily to sales. (Second

8    Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9    authority over such things as internal administrative functions, budgeting, contracts

10   with vendors, and various other aspects of running a business.

11       The second *Sugarhill* factor (whether the individual can be relied upon to

12   give testimony at the employer's request) is satisfied, since the Witnesses are

13   current employees of MGA Mex who will presumably cooperate in their

14   employer's defense of Mattel's counterclaims by providing testimony at a

15   deposition.

16       Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17   employees in positions of higher authority than the Witnesses in the area regarding

18   which the information is sought), the Discovery Master finds that the undisputed

19   testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20   Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21   Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22   the Witnesses are "managing agents."

23       With respect to fourth factor (the general responsibilities of the Witnesses

24   respecting the matters involved in the litigation), Mattel's papers demonstrate that

25   the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26   Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27   contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28   Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

EXHIBIT        17
PAGE        282

1    Witnesses to be managing agents.

2         The last factor is the "loyalty" inquiry discussed above, namely whether the

3    Witnesses can be expected to identify with the interests of MGA Mex. Because

4    they are being subjected to investigation in Mexico, have their own lawyers and the

5    MGA Defendants may take the position that if any Mattel documents were taken,

6    the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7    align with the MGA Defendants in this matter. It is unclear on this record whether

8    this factor weighs in favor of or against deeming the Witnesses to be managing

9    agents.

10        **C.     Summary Of The Discovery Master's Findings In Connection**

11        **With The Deposition Motion**

12        At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex. The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this

16   is not such a case.[29]

17        Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30] Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22        **D.     Sanctions**

23        **1.     Mattel's Request For Sanctions**

24        Having found that the MGA Defendants have articulated a meritorious legal

25   _____

     [29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is

26   unnecessary for him to reach the question of where the depositions may be taken.

27   [30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the
     United States and were being deposed in their individual capacities. However, since they are foreign nationals who

28   are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have
     authority to compel the depositions under Rule 30(b)(1).

EXHIBIT _____17_____

PAGE _____283_____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  III.   **DISPOSITION**

2      A.      Mattel's Written Discovery Motion is **DENIED in part** and

3  **GRANTED in part**, as follows:

4      1.      Document Request Nos. 207, 208 and 269 directed to Larian:  The

5  Motion is **GRANTED**.  All non-privileged documents, responsive to these

6  document requests shall be produced by Larian within 30 days of the original Order

7  No. 11, subject to any applicable confidentiality designations available under the

8  Protective Order.

9          2.      Document Request Nos. 4 – 37, 40, 41, 43 (erroneously

10  numbered in Mattel's Separate Statement as request number 42), 44 (erroneously

11  numbered in Mattel's Separate Statement as request number 43), 45 (erroneously

12  numbered in Mattel's Separate Statement as request number 44), and 46

13  (erroneously numbered in Mattel's Separate Statement as request number 45)

14  directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents,

15  responsive to these document requests shall be produced by MGA within 30 days

16  of the original Order No. 11, subject to any applicable confidentiality designations

17  available under the Protective Order.

18          3.      Interrogatory No. 45 directed to MGA:  The Motion is

19  **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days

20  of the original Order No. 11, subject to any applicable confidentiality designations

21  available under the Protective Order.

22          4.      Interrogatory Nos. 56 – 63 directed to MGA and Larian:

23              a.      The Motion is **GRANTED** with respect to Interrogatory

24  Nos. 56 and 57.

25              b.      Regarding Interrogatory Nos. 58 – 63, the Motion is

26  **GRANTED** subject to the following limitations:  The Discovery Master orders the

27  MGA Parties to identify all facts, documents or witnesses that they currently intend

28  to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

EXHIBIT _____ 17

PAGE _____ 285

1   MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2   (ii) that the information in the MATTEL documents did not derive independent

3   economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4   DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5   Parties independently developed, or did not otherwise use or disclose, any

6   information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7   the MGA Parties have not benefited by their use of the information in the MATTEL

8   DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9   Parties had or have a right to copy, possess, use or disclose any MATTEL

10  DOCUMENT (Interrogatory No. 63).

11              c.      The MGA Parties responses to interrogatories numbered

12  56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13  applicable confidentiality designations available under the Protective Order.

14          5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

15  is **DENIED**.

16          6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17  Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18  Parties are ordered to identify fully and separately each and every payment of

19  money or other item of value that they have made or offered to pay to or on behalf

20  of any former employee of Mattel since January 1, 1998, with the definition of

21  former Mattel employees re-defined as "all individuals that the MGA Parties are

22  aware of that worked for Mattel and who received any payment (excluding ordinary

23  salary and benefits paid to such person while an MGA employee) from the MGA

24  Parties."  The MGA Parties responses to these interrogatories shall be served within

25  30 days of the original Order No. 11, subject to any applicable confidentiality

26  designations available under the Protective Order.

27      **B.**      Mattel's Deposition Motion:

28          1.      Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___17___

PAGE ___286___

1          2.      Mattel's request for sanctions is **DENIED**.

2          3.      The MGA Defendants' request for sanctions is **DENIED**.

3

4     Dated:  March 31, 2009

5

6                                              By:      /s/ Robert C. O'Brien

7                                                       ROBERT C. O'BRIEN
                                                        Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____17____

PAGE ____297____

- 40 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]