No. 198 that are limited to the time frame 1999 to 2005.

Personal Financial Data: Request Nos. 207-209 and 269

In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks or financial institutions and other banking relationships since January 1, 1999. In Request No. 208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such income for each year from 1999 to the present. In Request No. 209, Mattel seeks Larian's federal and state tax returns for each year from 1999 to the present. In Request No. 269, Mattel seeks documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from 1999 to the present.

Mattel contends that Request No. 207 seeks information reasonably calculated to lead to information showing the timing of payments to Bryant and others, which in turn is relevant to the timing of the development of Bratz and issues of credibility. Mattel contends that Request Nos. 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial condition, which in turn is relevant to damages. Further, Mattel contends that it is entitled to information regarding the sources of Larian's income to determine whether they are attributable to the alleged misconduct and thus subject to disgorgement.

Larian contends that the requested personal financial information is not relevant to the claims or defenses at issue. More specifically, Larian contends that neither the names of his banks nor his gross income have any bearing upon either compensatory or punitive damages or Mattel's claim for disgorgement of profits. Larian further contends that there is no support for Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

Larian also contends that all three of the requests overlap substantially with requests Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or burden posed by these requests to him. Further, Larian contends that the court has previously found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered no reason why the same result should not apply here.

Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted. The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT 5
PAGE 122

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case. For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz. The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages. Further, Larian has failed to establish that the requests are

6   unduly burdensome. Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8   Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269. In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  Storage Devices: Request Nos. 222 and 224

13  In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant. Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form. Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19  Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests. Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system." See

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes. Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27  Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

16


EXHIBIT 5
PAGE 123

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

authorize the routine production of a party's electronic devices.  Mattel attempts to justify

Request No. 222 by pointing to various instances of alleged destruction of evidence.  See Mattel's

Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

laptops; "wiping" information from the hard drives of Larian's computer laptops every six

months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

destructive testing of Bryant's original Bratz drawings).  However, Mattel fails to explain how

these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

has a right to inspect Larian's storage devices to ensure that relevant information has not been

deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is

launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.  Furthermore, Mattel's stated

purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

Among other things, Request No. 222 encompasses every storage device that Larian has used to

copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing

copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in

numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of

requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply

with the requests, Larian was required to search for documents in both hard-copy and electronic

form.  Under the circumstances, it is unnecessary for Larian to also produce the requested storage

devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices:  Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 5
PAGE 124

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2          Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7          Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

    MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273
10
           In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA
11
    Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA
12
    Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to
13
    produce documents sufficient to show the ownership of these entities.
14
           Mattel contends that the requests seek information relevant to refute MGA Mexico's
15
    personal jurisdiction defense, and which bear on whether the acts of Larian and others are
16
    attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in
17
    these companies is relevant to net worth. Mattel contends that Larian's supplemental response is
18
    inadequate because it would allow Larian to withhold contradictory information and conceal the
19
    true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know
20
    the ownership of these entities at times when different allegedly wrongful acts took place and to
21
    determine if the ownership structure changed as a means of concealing assets or concealing the
22
    payments of commercial bribes.

23         Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                18



Mattel contends that Larian cannot avoid his duty to respond to these requests simply by saying that the information is obtainable from another source. Further, Mattel contends that Larian has failed to establish that the requests are unduly burdensome.

Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable from another source that is more convenient, less burdensome, or less expensive, namely MGA Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

## IV. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.    At meet and confer sessions held after the filing of this motion, Larian agreed to produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged documents that are responsive to these Requests.

2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

    A.    produce, without limitation, all non-privileged documents that are responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and 269; and

    B.    produce, in accordance with his supplemental responses, non-privileged documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and 209.

    C.    Larian may produce documents responsive to Request Nos. 179, 180 and 181 in redacted form as provided herein.

    D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199, 209, 222, 224, 225, 227, 228, 272 and 273.

3.    Larian shall produce all non-privileged documents that are required by this Order that are in his possession, custody or control and that have not already been produced no later than January 11, 2008.

4.    Larian shall produce a privilege log no later than January 15, 2008.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19


EXHIBIT 5
PAGE 126

1    5.    Mattel's request for sanctions is denied.

2    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

                                        HON. EDWARD A. INFANTE (Ret.)
6                                              Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,                                                    20
     CV-04-09049 SGL (RNBx)

EXHIBIT 5
PAGE 127

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT 5
PAGE 128

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 1/3/2008 at 10:45 AM PST and filed on
1/3/2008
**Case Name:** Carter Bryant v. Mattel Inc
**Case Number:** 2:04-cv-9049
**Filer:** Mattel Inc
**Document Number:** 1439

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by
Isaac Larian; Denying Request for Sanctions filed by Defendant Mattel Inc re: MOTION to Compel
[1092] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Emil W Herich    eherich@kmwlaw.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

EXHIBIT __5__
PAGE __129__

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmv@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Larian Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/3/2008] [FileNumber=5143390-0]
[5a2187944fc1d22750aedb257eb3d8e53a9b8728f71d46135a28cce1a78d4d01e2732
ddc016f334ddcc72b8e691e63a2605761dac19ba72309568688b0698f2c]]



EXHIBIT **5**
PAGE **130**

# Exhibit 6

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
   |                                     | Consolidated with
12 |              Plaintiff,             | Case Nos. CV 04-09059 & CV 05-2727
   |                                     |
13 |        vs.                          |
   |                                     | [PROPOSED] ORDER GRANTING
14 | MATTEL, INC., a Delaware            | MATTEL, INC.'S MOTION OBJECTING
   | corporation,                        | TO PORTIONS OF DISCOVERY
15 |                                     | MASTER'S DECEMBER 31, 2007 ORDER
   |              Defendant.             | REGARDING HARD DRIVES
16 |                                     |
17 | AND CONSOLIDATED ACTIONS            | **Phase 1**
   |                                     | Discovery Cut-Off:   January 28, 2008
18 |                                     | Pre-Trial Conference: May 5, 2008
   |                                     | Trial Date:          May 27, 2008
19

20

21

22

23

24

25

26                                    EXHIBIT ___6___
27                                    PAGE ___131___
28

072109/2414052.3

Case 2:04-cv-09049-DOC-RNB  Document 5760-4  Filed 06/24/09  Page 12 of 96  Page ID
#:185531
Case 2:04-cv-09049-S⌐ ⌐-RNB    Document 2362    Filed ⌐ ⌐'27/2008    Page 2 of 3

1
2

[PROPOSED] ORDER

3        Having considered Mattel, Inc.'s Motion Objecting To Portions Of
4    Discovery Master's December 31, 2007 Order Regarding Hard Drives and all
5    supporting papers, all papers submitted in opposition to the Motion, and having
6    considered the arguments of counsel, the Court finds good cause to grant the Motion
7    and to overrule in part the Discovery Master's Order Granting in Part and Denying
8    in Part Mattel's Motion to Compel Production of Documents by Isaac Larian;
9    Denying Request for Sanctions, dated December 31, 2007, as to Request Nos. 222
10   and 225:

11       IT IS HEREBY ORDERED THAT the Discovery Master's Order is
12   overruled as to Request Nos. 222 and 225. Destruction of electronic evidence on
13   hard drives is relevant to Mattel's claims, including specific predicate acts alleged in
14   Mattel's RICO counterclaims. The Discovery Master's Order denying such evidence
15   to Mattel was clearly erroneous and contrary to law.

16       IT IS FURTHER ORDERED THAT Isaac Larian shall make available
17   within ten (10) calendar days the following hard drives that are in his possession,
18   custody, or control for inspection and copying:

19       1.    All hard drives from, or that were at any time connected to, any
20             computer used by either Isaac Larian or Carter Bryant at any time from
21             1999 to the present and that contain or previously contained any digital
22             information referring or relating to Bratz, Angel, MGA or Bryant (as
23             those terms are defined in Mattel's Requests).
24   A consultant of Mattel's choosing, who Mattel will identify before the inspection,
25   shall be allowed to inspect each of the hard drives produced. Mattel's consultant
26   shall be allowed to make a forensically sound image of each hard drive produced.
27   The inspection may take place at a location of Larian's choosing in this District, so
28   long as the location has the minimum requirements necessary to inspect and create a

07209/2414052.3

-2-

[PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE
HARD DRIVES

EXHIBIT   6
PAGE   132

1 forensically sound image of the produced hard drives. A consultant of Larian's

2 choosing, who Larian will identify before the inspection, shall be allowed to observe

3 the inspection and imaging of the hard drives.

4          IT IS FURTHER ORDERED THAT Mattel's consultant shall have the

5 right to inspect any and all information on said hard drives to determine:

6          (a)     whether, when and by whom any information was deleted,

7 destroyed, written over, lost, exported, moved, spoliated or otherwise rendered

8 inaccessible or unreadable;

9          (b)     whether, when and by whom any attempts were made to delete,

10 destroy, write over, export, move, spoliate or otherwise render inaccessible or

11 unreadable any information on those hard drives;

12          (c)     the current or past presence or use of any hardware or software

13 tool to accomplish any of the actions identified above;

14          (d)     whether any information deleted, destroyed, written over, lost,

15 exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be

16 recovered; and

17          (e)     to recover any such information, in whole or in part.

18

19 DATED:      2 / 27      , 2008     _____
                                     Hon. Stephen G. Larson
20                                   United States District Judge

21

22

23

24

25

26

27

28

07209/2414052.3

-3-

EXHIBIT __6__

PAGE ___133___

# Exhibit 7
# Filed Under Seal Pursuant to Protective Order

# Exhibit 8

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     April 22, 2008                    NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry | 213.687.5432 | 213.621.5432 |
| Skadden, Arps, Slate, Meagher & Flom LLP | | |
| 300 South Grand Avenue | | |
| Los Angeles, California 90071-3144 | | |

FROM:     Jon D. Corey

RE:       Mattel, Inc.

MESSAGE:

FAXED
APR 2 2 2008

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Johanna Lopez (1 extra copy) | ☐ CONFIRM FAX |
|---|---|---|---|---|
| | | | | ☐ INCLUDE CONF. REPORT |
| OPERATOR: | PRISCILLA | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.



EXHIBIT 8
PAGE 155

04/22 2008 14:21 FAX 12134433100          QECON-LA0-2                                    ☒001

```
*******************
***   TX REPORT   ***
*******************
```

TRANSMISSION OK

| TX/RX NO | 0891 |
| RECIPIENT ADDRESS | 76706#7209#12136215432 |
| DESTINATION ID | |
| ST. TIME | 04/22 14:19 |
| TIME USE | 01'29 |
| PAGES SENT | 5 |
| RESULT | OK |

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

DATE:     April 22, 2008                    NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

FROM:     Jon D. Corey

RE:     Mattel, Inc.

MESSAGE:

EXHIBIT 8
PAGE 156

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-1100

April 22, 2008

<u>VIA FASCIMILE AND U.S. MAIL</u>

Lance A. Etcheverry
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, California 90071-3144

Re:     <u>Bryant vs. Mattel, Inc.</u>

Dear Lance:

I write regarding Mr. Isaac Larian's hard drives and Mr. Farhad Larian's USB drive. I have set forth below what I believe to be the agreement that we reached.

1.      On a mutually agreeable date no later than April 25, 2008, Skadden Arps Slate Meagher & Flom, LLP ("Skadden") will make available at its facilities those hard drives responsive to the Court's Order compelling production of Isaac Larian's hard drives and Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen") will make available the USB device ("Device") about which Mr. Farhad Larian testified during his February 4, 2008 deposition.

2.      The hard drives and the USB device will be made available at the location of _____, which is a consultant identified by Skadden.

3.      Skadden's consultant shall make EnCase images of the hard drives and the USB device in the presences of Mattel's consultant, 42 Consulting, LLC. The EnCase images shall remain in the possession of Skadden's consultant. Skadden's consultant, however, shall make those hard drives and USB devices available for inspection at a time convenient to 42 Consulting, LLC so that it may perform the analysis necessary. Skadden's consultant shall also provide essentials for the analysis to occur, such as electrical power, lighting, reasonable work space, internet access, etc.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2463006.1

EXHIBIT __8__
PAGE __157__

C

4.    Skadden's consultant shall be allowed to observe the inspection of the hard drives and the USB device. At no time shall Skadden's consultant interfere with or otherwise hinder the inspection and, if at any time, 42 Consulting, LLC representatives are not present and a search or inspection is being run (such as overnight), then Skadden's consultant shall not take any steps to interfere with, affect, inspect, access or use the hardware or software running any search.

5.    With respect to the USB Device, 42 Consulting, LLC may inspect the image of the Device for any and all agreed-upon information (the "Information").

(a)    The "Information" shall mean:

(i)    information relating to the manufacture date and first use of the Device;

(ii)    documents or files, whether previously deleted or currently on the Device, that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant, including without limitation the documents that Farhad Larian testified he downloaded from MGA's computer system as part of his efforts to obtain evidence for the Larian v. Larian proceedings; and

(iii)    all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A)    whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)    whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C)    the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D)    whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)    to recover any such information, in whole or in part.

(b)    42 Consulting, LLC shall inspect the entire Image of the USB device for Information using search terms and parameters that Mattel will provide him or her.

(c)    42 Consulting, LLC shall then provide to Christensen print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)    42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

07209/2463006.1                                    2

EXHIBIT    8
PAGE    158

(e)     Within seven (7) days of the time that Mr. Larian receives print-outs of the
Information, 42 Consulting, LLC will provide Mattel with all such Information, including native
files, except for any such Information for which privilege is asserted. Mr. Larian will serve
Mattel and the 42 Consulting, LLC Expert a privilege log identifying the Information, if any, to
be withheld on privilege grounds within five (5) Court days of his receipt of the Information
from the 42 Consulting, LLC.

6.     With respect to the hard drives, 42 Consulting, LLC may inspect the images of the hard
drives in their entirety, including but not limited to link files, registry files, system volume
information, logs and log files, recycle bin info2 records, application files, file listing and
metadata for all files (allocated and unallocated), page/swap files, deleted/unallocated data, all
files and folders, file system, e-mail trash or deleted files, unallocated space (volume slack,
unused disk space, unallocated clusters), file slack, recycle bin/recycler. Notwithstanding the
foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that
exists on the hard drives. 42 Consulting, LLC shall not be deemed to have accessed user
generated content by loading any Outlook archive files or any other archive file that may contain
information relating to deleted items.

(a)     Information available for inspection shall also include:

(i)     information relating to the manufacture date and first use of each hard
drive:

(ii)     documents or files previously deleted, attempted to be deleted, or .
otherwise rendered inaccessible that refer or relate to Bratz, MGA, Isaac Larian, Angel or
Bryant; and

(iii)     all available metadata and file information about the documents described
in paragraph (ii), including without limitation:

(A)     whether, when and by whom any such information was deleted,
destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)     whether, when and by whom any attempts were made to delete,
destroy, write over, export, move or otherwise render inaccessible or unreadable any such
information on the Device;   ·

(C)     the current or past presence or use of any hardware or software tool
to accomplish any of the actions identified above;

(D)     whether any information deleted, destroyed, written over, lost,
exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)     to recover any such information, in whole or in part.

EXHIBIT __8__
PAGE __159__

(b)     42 Consulting, LLC shall inspect the unallocated space on any hard drive or any other location in which deleted files or documents may otherwise reside or where information related to such deleted files or documents may resided.

(c)     42 Consulting, LLC shall then provide to Skadden print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)     42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

(e)     Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

7.     If there is any issue or question regarding the authenticity, correctness, integrity or completeness of the Information, then nothing here shall preclude Mattel from seeking production and inspection of the original hard drives or USB device. Mattel also reserves the right to seek additional information of both the USB device and the hard drives.

8.     The Parties agree that the actions described herein shall not constitute a waiver of any claim of attorney-client privilege or work product privilege with respect to (a) the information on any hard drive, (b) the information on the USB device, or (c) the conduct, notes, searches, search terms, communications or any other act performed by any consultant or attorney in connection with these hard drives or USB devices.

Should you have any questions regarding the foregoing, please do not hesitate to call.

Sincerely,

Jon Corey

Jon Corey

EXHIBIT __8__
PAGE __160__

# Exhibit 9
# Filed Under Seal Pursuant to Protective Order

# Exhibit 10

.LAW OFFICES
## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067

⊞ MERITAS LAW FIRMS WORLDWIDE

### FAX TRANSMISSION

TELEPHONE NO.: (310) 553-3000
FACSIMILE NO.:  (310) 556-2920

FROM:   **Amman Khan**

DATE:   **March 25, 2009**

Number of Pages:
(including this page)

Client Reference No.:    03460-024

| TO: | FAX NO.: | CONFIRMATION NO: |
|---|---|---|
| Jon D. Corey, Esq. | 213-443-3100 | 213-443-3000 |

**Sender's Comments:**

Please see attached.

**If you have received this Transmission in error, please call: (310) 553-3000 and mail it to the above address. Thank you.**

NOTE: THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.  THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND, AS SUCH, IS PRIVILEGED AND CONFIDENTIAL.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE BY MAIL.  THANK YOU.

EXHIBIT ___10___
PAGE ___173___

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

March 25, 2009

<span style="font-variant: small-caps;">☰ MERITAS LAW FIRMS WORLDWIDE</span>

#### VIA E-MAIL AND FACSIMILE

Jon D. Corey, Esq.
Quinn, Emanuel, Urquhart,
 Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

   Re: *Bryant v. Mattel, Inc. and Consolidated Actions*
     U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Jon:

   This responds to your letter sent via facsimile on March 18, 2009 (but dated March 17, 2009), which seeks additional inspection of hard drives currently in Mr. Larian's control. Your request is improper, as a matter of law, for at least the following reasons:

   First, there is no nexus between the information currently on Mr. Larian's hard drives and the Phase 2 claims, which focus on purported misappropriation of trade secrets by former Mattel employees for the MGA Parties' benefit. (Mattel's Second Amended Answer & Counterclaims, ¶ 20 (summarizing claims), ¶¶ 37-77 (alleging misappropriation of trade secrets and confidential information by former Mattel employees who joined MGA), ¶¶ 78-81 (alleging misrepresentations by MGA to retailers about Mattel). Indeed, Mattel makes no attempt whatsoever to demonstrate how the discovery Mattel seeks is relevant to any of the Phase 2 issues.

   Second, the February 27, 2008 Court Order limited Mattel's inspection and copying of Mr. Larian's hard drives to any computer used by him from "1999 to the present." (February 27, 2008 Order, 2:21.) The MGA Parties have fully complied with that Order by making information contained on Mr. Larian's hard drives, up to and including February 27, 2008, available for inspection and copying. The duty to supplement arises only if a party learns that its original disclosure was incomplete or incorrect in some material respect. The MGA Parties' production of Mr. Larian's hard drives in June 2008 was neither incomplete nor incorrect in any respect, let alone in a material respect.

         Very truly yours,

         *Amman Khan /JK*

         Amman Khan
     of GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

AK:la

670719

EXHIBIT __10__
PAGE __174__

# Exhibit 11

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7885
EMAIL: AKHAN@GLASERWEIL.COM

March 31, 2009

ᵀᴵᵀ MERITAS LAW FIRMS WORLDWIDE

**VIA E-MAIL AND FACSIMILE**

Marshall M. Searcy, Esq.
Quinn, Emanuel, Urquhart,
    Oliver & Hedges, LLP
865 South Figueroa Street, 10ᵗʰ Floor
Los Angeles, CA 90017-2543

> Re:    *Bryant v. Mattel, Inc. and Consolidated Actions*
>        U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Marshall:

This responds to Mattel's recent demand that Isaac Larian produce his computer hard drives for a second time, this time for inspection and copying of post-June 2008 information. There is no legitimate basis for this demand.

In an effort to rationalize this gross and abusive intrusion into Mr. Larian's privacy and attorney/client communications, Mattel advances three equally untenable arguments.

First, Mattel incorrectly claims that under the Court's February 27, 2008 Order, Mr. Larian has an ongoing duty to produce his computer hard drives. The Court's February 27, 2008 Order expressly limited Mattel's inspection of Mr. Larian's hard drives to any computer used by him from "1999 to the present." Since the order was issued on February 27, 2008, that is the pertinent cut-off date. The Order was not meant to allow Mattel an ongoing right to inspect and copy Mr. Larian's hard drives. Otherwise the Order would have simply said so.

Second, Mattel makes the generalized claim that post-June 2008 information placed on Mr. Larian's hard drives is relevant to Mattel's misappropriation of trade secrets, copyright infringement and RICO claims. However, you were unable to point to any particular allegations in Mattel's Second Amended Answer and Counterclaims ("SAAC") to support this assertion. In fact, the assertion is unfounded. All of Mattel's allegations regarding misappropriation of trade secrets concern alleged misappropriation that occurred in 2005 or earlier. See for example SAAC, ¶ 20 (summarizing claims), ¶ 37-77 (alleging misappropriation of trade secrets and confidential information by former Mattel employees who joined MGA), ¶ 78-81 (alleging misrepresentations by MGA to retailers about Mattel). Thus Mattel has not demonstrated and

671543v2

EXHIBIT __11__
PAGE __175__

Marshall Searcy, Esq.
March 31, 2009
Page No. 2

cannot demonstrate that any information placed on Mr. Larian's hard drives since June 2008 has
any relevance to Mattel's Phase 2 claims.

Third, Mattel claims that FRCP 26(e) requires Mr. Larian to supplement the information
from his hard drives he produced in June 2008. But in order to invoke this duty, you must show
that the information previously produced was either incomplete or incorrect in any respect,
something you have failed to do. In fact, the prior production is complete because Mr. Larian
has produced all the information he is required to produce pursuant to the February 27, 2008
Order.

In conclusion, Mr. Larian has fully complied with the Court's Order to produce his
computer hard drives. There is simply no basis for requiring that he produce the hard drives
again.

Very truly yours,

Amman A, Khan
of GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

AAK/atj

EXHIBIT __11__
PAGE __176__

# Exhibit 12

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:   213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,
                                        Consolidated with
14            v.                        Case No. CV 04-09059
                                        Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                        **PHASE 2 DISCOVERY MATTER**
16
              Defendant.                **ORDER NO. 34, REGARDING:**
17
                                        **MOTION TO COMPEL**
18                                      **PRODUCTION OF HARD DRIVES**
                                        **FROM COMPUTERS USED BY**
19                                      **ISAAC LARIAN AFTER**
                                        **FEBRUARY 27, 2008**
20

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _12_
PAGE _177_

1    This Order sets forth the Discovery Master's ruling on the Motion to Compel

2  Production of Hard Drives from Computers used by Isaac Larian after February 27,

3  2008, for Supplemental Inspection filed by Mattel, Inc. ("Mattel") (the "Motion")

4  [Docket No. 5267].

5    The Discovery Master, having considered the papers filed in support of and

6  in opposition to the Motion, and having determined that oral argument is not

7  necessary, rules as set forth below.

8  **I.    FACTUAL BACKGROUND**

9    The present Motion addresses whether Isaac Larian ("Larian") is required to

10  produce for inspection certain hard drives he has used since February 27, 2008.

11    **A.    Document Request No. 222**

12    On or about June 13, 2007, Mattel served its First Set of Requests for

13  Documents and Things on Larian, which included Request No. 222 (the

14  "Request"). (Declaration of Marshall M. Searcy III in Support of the Motion

15  ("Searcy Decl."), Ex. 1 at p. 54). The Request asks Larian to produce for

16  inspection "Each STORAGE DEVICE that YOU have used to create, prepare,

17  generate, transmit, receive, delete or modify any DIGITAL INFORMATION

18  RELATING TO BRATZ, ANGEL or BRYANT."[1]  (*Id.*)

19    **B.    The Prior Discovery Master's December 31, 2007 Order**

20    Claiming that the Request was overbroad, unduly burdensome, duplicative

21  and violated his privilege and privacy rights, Larian refused to produce any Hard

22  Drives[2] to Mattel.  (*Id.*, Ex. 17 at p. 16).  Mattel then moved to compel a response

23
24
25
26
27

[1] Mattel also references Request No. 225 in its Motion, (Motion, p. 1 and fn. 2), which asks Larian to produce for inspection "[e]ach STORAGE DEVICE that BRYANT has used to create, prepare, generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or MGA." (Search Decl., Ex. 1 at p. 55). However, Request No. 225 is not at issue, since Mattel only seeks to compel additional inspection of *Larian's* hard drives in the present Motion. (Notice of Motion, p. 1 [Mattel "move[s] for an order compelling Isaac Larian ('Larian') to produce for inspection any hard drives and other storage devices . . . within his possession, custody or control that were connected to any computer used by Isaac Larian since February 27, 2008 . . ."]).

28

[2] As used herein, "Hard Drives" refers to all "STORAGE DEVICES" as that term is defined in connection with the Request.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

1    to the Request on October 11, 2007. (Searcy Decl., Ex. 2). The prior discovery

2    master denied the motion on December 31, 2007, reasoning as follows:

3                With respect to Request No. 222, Larian correctly notes

4                that Rule 34 was not intended to authorize the routine

5                production of a party's electronic devices. Mattel

6                attempts to justify Request No. 222 by pointing to various

7                instances of alleged destruction of evidence . . . However,

8                Mattel fails to explain how these alleged instances of

9                evidence destruction justify Request No. 222, other than

10               to assert that it has a right to inspect Larian's storage

11               devices to ensure that relevant information has not been

12               deleted or permanently destroyed. Mattel's stated

13               purpose suggests instead that Mattel is launching a fishing

14               expedition in pursuit of new claims, which is not

15               permitted by the Federal Rules of Civil Procedure.

16               [Citation]. Furthermore, Mattel's stated purpose for

17               inspecting Larian's storage devices does not justify the

18               breadth of Request No. 222. Among other things,

19               Request No. 222 encompasses every storage device that

20               Larian has used to copy digital information relating to

21               Bratz. Mattel does not need every CD and DVD

22               containing copies of Bratz-related video and audio

23               content, but that is what the request seeks. Request No.

24               222 is also duplicative because it requests information

25               that is sought in numerous other requests served on Larian

26               as well as MGA. Mattel has served hundreds of requests

27               for documents and communications relating to Bratz,

28               Angel, and Bryant. To comply with the requests, Larian

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-2-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 12
PAGE 179

1           was required to search for documents in both hard-copy

2           and electronic form.  Under the circumstances, it is

3           unnecessary for Larian to also produce the requested

4           storage devices.

5    (*Id.*, Ex. 17 at p. 17).

6        **C.**    **The Court's February 27, 2008 Order**

7        Thereafter, Mattel filed a Motion Objecting to Portions of the Discovery

8    Master's December 31, 2007 Order, including challenging the ruling regarding the

9    Request. (*Id.*, Ex. 18).  On February 27, 2008, the Court overruled the prior

10    discovery master's ruling ("February 27, 2008 Order").  (*Id.*, Ex. 19 at p. 2).

11    Specifically, the Court found that the decision was "clearly erroneous and contrary

12    to law" because "[d]estruction of evidence on hard drives is relevant to Mattel's

13    claims, including specific predicate acts alleged in Mattel's RICO counterclaims."

14    (*Id.*).  Consequently, the Court ordered Larian to produce the following:

15           All hard drives from, or that were at any time connected

16           to, any computer used by . . . Isaac Larian . . . at any time

17           from 1999 to the present and that contain or previously

18           contained any digital information referring or relating to

19           Bratz, Angel . . . or Bryant (as those terms are defined in

20           Mattel's Request[]).

21    (*Id.*).

22        **D.**    **Larian's Compliance With The Court's February 27, 2008 Order**

23        On or about April 22, 2008, Larian and Mattel entered into a written

24    agreement setting forth a protocol for Mattel's consultant to inspect Larian's Hard

25    Drives ("Letter Agreement").  (*Id.*, Ex. 25).  Among other things, the Letter

26    Agreement stated that Mattel's consultant would "not access the user generated

27    content of any active file that exists on the hard drive."[3]  (*Id.*, Ex. 25 at p. 3 of the

28

---

[3] An active file is one that is currently available for use on a hard drive or other storage device.

EXHIBIT _12_

PAGE _180_

1   letter).

2        Approximately two months after the parties entered into the Letter

3   Agreement, Larian produced all pre-February 28, 2008 Hard Drives responsive to

4   the Request and permitted them to be inspected and forensically imaged.  (Motion,

5   p. 3).

6        **E.    Larian Refuses To Supplement His Prior Production**

7        On or about March 18, 2009, Mattel requested that Larian supplement his

8   production of Hard Drives and permit the supplemental inspection of all Hard

9   Drives he has used since February 27, 2008.  (Searcy Decl., Ex. 20 at p. 1).  Larian,

10  acting through his counsel, responded that he had "fully complied" with the Court's

11  February 27, 2008 Order and that "there is no nexus between the information

12  currently on [his] hard drives and the Phase 2 claims . . ."  (*Id*.).

13  **II.    RELIEF SOUGHT BY MATTEL**

14       In its Motion, Mattel requests that "Larian be compelled to produce all

15  unproduced hard drives within his possession, custody or control for supplemental

16  inspection by Mattel's consultant."  (Motion, p. 17).  Mattel further seeks an order

17  permitting the "inspection of all relevant, non-privileged documents and

18  information, including 'active' user generated files and documents and information

19  recovered by [its] experts."  (*Id*.).

20  **III.    LARIAN'S OPPOSITION**

21       Larian opposes Mattel's Motion on five grounds.  First, Larian argues that

22  the Motion seeks information that is not relevant to any Phase 2 issue because there

23  is no allegation in Mattel's Second Amended Answer and Counterclaims ("SAAC")

24  regarding ongoing destruction of evidence.  (Opposition, pp. 3 and 12 – 13).

25  Second, Larian argues that Mattel should not be permitted to engage in a fishing

26  expedition to uncover evidence of alleged financial fraud, since the Request does

27  not seek such information and the SAAC contains no allegations of such

28  wrongdoing.  (*Id*., p. 15).  Third, Larian argues that he has no duty to supplement

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-4-                                                  ORDER NO. 34
                                        [Case No. CV 04-09049 SGL (RNBx)]
                                        EXHIBIT __12__
                                        PAGE ___181___

1    his response because he "fully complied with the Court's February 27, 2008

2    Order . . ." (*Id.*, pp. 3; *see also id.* at pp. 11 – 12). Fourth, Larian argues that

3    "Mattel improperly asks the Discovery Master to expand the scope of [the Court's]

4    prior Order to allow Mattel unrestricted access to the content of information on

5    [his] hard drives, including access to 'active files' on the hard drives, which have

6    no relevance to any purported allegations of evidence destruction." (*Id.*, p. 4

7    [emphasis omitted]; *see also id.* at pp. 13 – 16). Finally, Larian argues that he

8    "should not be subjected to the burden and wholesale invasion of his privilege and

9    privacy rights that would result from producing his personal computer hard drives,

10   particularly when the same information may be obtained through a simple

11   document request."[4] (*Id.*, p. 4; *see also id.* at p. 14).

12        Larian also seeks an award of sanctions against Mattel's counsel "for

13   improperly asking the Discovery Master to revisit and expand the scope of [the

14   Court's] prior Order with respect to Request No. 222 . . ." (*Id.*, pp. 16 – 17).

15   **IV.    ANALYSIS**

16        The present Motion raises two basic questions: (1) does Larian have a duty

17   to supplement his previous production concerning the Request, and (2), in the event

18   a supplemental production is required, may active files be accessed by Mattel's

19   consultant during his or her inspection? Each of these questions is addressed

20   below.

21   //

22   //

23   //

24

---

25   [4] Larian also argues that Mattel has misrepresented the facts regarding whether any spoliation of evidence has
     occurred in the past and that Mattel's failure to call the consultant who conducted the inspection of Larian's Hard
26   Drives in Phase 1 to testify at trial demonstrates that no spoliation took place. (Opposition, pp. 8 – 11). The question
     before the Discovery Master, however, is whether the Request relates to a Phase 2 claim or defense, not whether
27   Larian has (or has not) engaged in spoliation of evidence as a matter of fact. Therefore, the Discovery Master does
     not accept or reject Mattel's allegations of spoliation. Nor do I accept or reject Larian's disputation of those
28   allegations.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __12__
PAGE ___182___

**A.    Federal Rule Of Civil Procedure 26 Requires Larian To**
**Supplement His Prior Production**

    **1.    Hard Drives That Larian Has Used Since February 27, 2008**
**Relate To Phase 2 Issues**

With respect to the first question, the Court's February 27, 2008 Order found
that "[d]estruction of electronic evidence on hard drives is relevant to Mattel's
claims, including specific predicate acts alleged in Mattel's RICO counterclaims."
(February 27, 2008 Order at p. 2).  Based on that finding, the Court ordered Larian
to produce all Hard Drives used by him "from 1999 to the present."  (*Id*.).  Larian
construes this holding by the Court to mean that information currently contained on
Hard Drives used by him after February 27, 2008 is not relevant to Mattel's Phase 2
claims since, according to him, there are no allegations that the actions alleged in
Mattel's RICO claims are continuing and his only obligation with respect to the
Request was to produce Hard Drives from 1999 to February 27, 2008 (i.e., the date
the February 27, 2008 Order was issued by the Court). (Opposition, p. 12).  This
argument is unpersuasive for two reasons.

First, the plain language of the SAAC alleges that the conduct of each
criminal RICO enterprise alleged therein is continuing.  Specifically, Paragraph 92
of the SAAC alleges that "[t]he conduct of each enterprise continues through the
date of this [SAAC] and is *ongoing* . . ." (SAAC, ¶ 92 [emphasis added]).
Similarly, Paragraph 93 of the SAAC alleges that the pattern of racketeering
activity "extends, up to and *beyond* the date of this" SAAC and includes "repeated
acts of . . . destroying electronic and other evidence, including by destroying
evidence previously contained on . . . Isaac Larian's computer hard drives." (*Id*., ¶
93 [emphasis added]).

Second, Larian's argument that the SAAC does not allege ongoing
destruction of evidence has already been implicitly, if not expressly, rejected by the
Court.  If Larian were correct that the SAAC "only alleges prior acts of purported

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __12__

PAGE __183__

1   evidence destruction," (Opposition, p. 12), the Court would have limited any

2   production of Hard Drives to the date the SAAC was filed (i.e., July 12, 2007).

3   However, the Court held that Larian had to produce all Hard Drives he used "from

4   1999 to the present [i.e., up through and including February 27, 2008]." (February

5   27, 2008 Order at p. 2). Because the February 27, 2008 Order already required

6   Larian to produce Hard Drives that he used months after the SAAC was filed,

7   Larian's argument that the SAAC does not allege continuing destruction of

8   evidence is inconsistent with the Court's previous ruling and must be rejected.[5]

9            **2.**     **The Starting Point For Determining Whether Any**

10                 **Supplementation Is Required Is The Request, Not The**

11                 **Court's February 27, 2008 Order**

12        Larian next argues that he has no duty to supplement his prior production

13   because it was not incomplete or incorrect in any respect. (Opposition, p. 12).

14   Specifically, Larian contends that he fully complied with the Court's

15   February 27, 2008 Order by producing all Hard Drives that he used between 1999

16   and the date the order was issued (i.e., February 27, 2008). (*Id.*, pp. 3 and 11 – 12).

17   The problem with this argument, however, is that it ignores the starting point for

18   determining whether any supplemental production is required.

19        The issue is not whether Larian has fully complied with the *February 27,*

20   *2008 Order* but rather whether Larian is required to supplement the *discovery*

21   *response* in question (i.e., the Request). If Larian has used Hard Drives since

22   February 27, 2008 (and he does not dispute that he has done so), then there is

23   evidence in existence that renders his response to the Request incomplete.

24   Therefore, in the absence of some other valid objection, Larian must supplement his

25   production regarding the Request under Federal Rule of Civil Procedure 26. (Fed.

26

27   [5] Larian also argues that the Request is not relevant to any allegation of ongoing financial fraud. (Opposition, p. 15).
      The Discovery Master need not address this argument because the Request has been determined to be relevant to

28   Mattel's RICO claims.

1   R. Civ. P. 26(e)(1)(A) [stating that the duty to supplement or correct a response

2   arises "if the party learns that in some material respect the . . . response is

3   incomplete or incorrect"]).

        **3.**     **The Court's February 27, 2008 Order Does Not Exempt
Larian From Having To Comply With Federal Rule Of Civil
Procedure 26**

7        Larian's final argument against supplementation is that the Court's

8   February 27, 2008 Order somehow displaced the obligations he had to supplement

9   incomplete discovery responses under Rule 26. (Opposition, p. 11). Yet there is no

10  indication anywhere in the February 27, 2008 Order that the Court intended to

11  make Larian exempt from the requirements imposed by Rule 26. In fact, the

12  February 27, 2008 Order never mentions Rule 26 at all, let alone indicates that

13  Larian need not comply with his duty to supplement going forward. Nor is there

14  any reason to read such a limitation into the February 27, 2008 Order, since Larian

15  has not cited any legal authority, and the Discovery Master is aware of none,

16  supporting the proposition that a party need not supplement its discovery responses

17  based upon an order that simply requires the production of data for inspection

18  without referencing Rule 26. Therefore, contrary to Larian's assertion, the

19  February 27, 2008 Order did not remove his duty to supplement his response to the

20  Request and he must fulfill that obligation now.

21          **B.**     **Mattel's Consultant May Not Access Active Files**

22       Having concluded that Larian must supplement his prior production of Hard

23  Drives and permit them to be inspected pursuant to Rule 26, the Discovery Master

24  now turns to the permissible scope of Mattel's inspection.

25       As explained above, Mattel argues that it "should be allowed to inspect all

26  relevant, non-privileged documents and information, including 'active user'

27  generated files . . . recovered by [its] experts." (Motion, pp. 4 fn. 10 and 17; Reply,

28  pp. 9 – 11). Mattel asserts that it is entitled to such information because the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _12_

PAGE _185_

1   February 27, 2008 Order "specifically stated that Mattel's expert 'shall have the

2   right to inspect any and all information on said hard drive to determine' whether

3   there was evidence of spoliation or attempted spoliation." (Reply, p. 10). This

4   argument is unpersuasive for four reasons, each of which is sufficient by itself to

5   justify denying Mattel's request.

6        First, contrary to Mattel's assertion, the Court did not give Mattel

7   unrestricted access to the content of Larian's Hard Drives in its February 27, 2008

8   Order. On the contrary, the Court expressly limited the scope of the inspection to

9   determining whether any electronic evidence had been destroyed. Indeed, after it

10  stated that a consultant of Mattel's choosing would be allowed to make forensically

11  sound images of each Hard Drive used by Larian and would be permitted "the right

12  to inspect any and all information on said hard drive," the Court immediately

13  qualified its statement. (Searcy Decl., Ex. 19 at pp. 2 – 3). Specifically, the

14  February 27, 2008 Order declared that Mattel's forensic expert will have:

15             the right to inspect any and all information on said hard

16             drive to determine: (a) whether, when, and by whom any

17             information was deleted, destroyed, written over, lost,

18             exported, moved, spoliated or otherwise rendered

19             inaccessible or unreadable; (b) whether, when and by

20             whom any attempts were made to delete, destroy, write

21             over, export, move, spoliate or otherwise render

22             inaccessible or unreadable any information on those hard

23             drives; (c) the current or past presence or use of any

24             hardware or software tool to accomplish any of the

25             actions identified above; (d) whether any information

26             deleted, destroyed, written over, lost, exported, moved,

27             spoliated or otherwise rendered inaccessible or unreadable

28             may be recovered; and (e) to recover any such

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNB)]

EXHIBIT 12
PAGE 186

1        information, in whole or in part.

2   (*Id.*). Because the Court expressly limited the inspection to determining whether

3   anyone had "deleted, destroyed, written over, lost, exported, moved, spoliated or

4   otherwise rendered inaccessible or unreadable" any information on the Hard Drives

5   and whether any such information was recoverable, there is no connection between

6   Mattel's claim that it is entitled to view *active files* and the inspection permitted by

7   the Court relating to *deleted files*. By definition, an active file is one that is still in

8   existence. Conversely, a file that has been destroyed is not accessible unless it can

9   somehow be recovered. Therefore, the plain language of the February 27, 2008

10  Order precludes Mattel from accessing active files on the Hard Drives, because they

11  are not within the scope of the inspection authorized by the Court.[6]

12       Second, there has been no showing by Mattel that all of the active files that it

13  seeks to access are relevant to Phase 2 issues. What Mattel is essentially requesting

14  is that it should be allowed to access any content on the Hard Drives whether or not

15  those active files have any relevance to a claim or defense in this case. In the

16  absence of a showing that all active files on the Hard Drives are reasonably

17  calculated to lead to the discovery of admissible evidence regarding a Phase 2 issue,

18  the Discovery Master concludes that Mattel's request is overbroad and improperly

19  seeks to discover irrelevant information.

20       Third, the Discovery Master finds that Mattel does not have the right to rifle

21  through Larian's electronic files looking for unspecified information. As Larian

22  persuasively argues, "Mattel has the right to ask [Larian] to produce specific [non-

23  privileged, relevant] documents; it does not have the right to go into [his] electronic

24  'drawers' to see what is there." (Opposition, p. 2). Because that is precisely the

25

26  [6] Mattel's request to inspect the active files on Larian's Hard Drives is also inconsistent with the Letter Agreement
    entered into by the parties on April 22, 2008. In relevant part, the Letter Agreement states that Mattel's consultant

27  "shall not access user generated content of any active file that exists on the hard drives." (Searcy Decl., Ex 25 at p. 3
    of the letter). The fact that Mattel's counsel agreed to this protocol following the issuance of the Court's February

28  27, 2008 Order suggests that even Mattel realizes the February 27, 2008 Order was not designed to allow it access to
    active files on the Hard Drives.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -                                    ORDER NO. 34
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _12_
PAGE _187_

1    relief Mattel seeks, its request must be denied.

2       Finally, allowing Mattel unrestricted access to active files on the Hard Drives

3    would improperly permit it to discover attorney-client privileged information that

4    Larian alleges exists on those storage devices. Indeed, if Mattel is given access to

5    all active files on the Hard Drives, the Discovery Master cannot see how Larian can

6    protect his privileged information. This is true despite Mattel's statement that it

7    should only be "allowed to inspect all relevant, non-privileged documents and

8    information," because there is not a mechanism in place that would protect Larian's

9    privileged files from disclosure. Even assuming it is technologically possible to

10    encrypt all active files that contain privileged information so that they may not be

11    accessed by Mattel's consultant, Larian should not be burdened with undertaking

12    such a task because there are less intrusive means by which Mattel could obtain

13    non-privileged, relevant documents, namely through document requests.

14       **C.    Summary Of Ruling Regarding The Motion**

15       The Discovery Master finds that Larian must supplement his prior production

16    of Hard Drives pursuant to Federal Rule of Civil Procedure 26. However, in

17    conducting the inspection of any additional Hard Drives produced by Larian,

18    Mattel's consultant may not access any active files.

19       **D.    Larian's Request For Sanctions**

20       Having determined that Mattel advanced some meritorious arguments and

21    prevailed with respect to certain aspects of its Motion, the Discovery Master denies

22    Larian's request for sanctions.

23    **V.    DISPOSITION**

24       A.    The Motion is **GRANTED in part** and **DENIED in part**, as follows:

25       1.    Larian shall make available within forty-five (45) days of this

26    Order the following hard drives that are in his possession, custody or control: All

27    Hard Drives from, or that were at any time connected to, any computer used by him

28    at any time from February 28, 2008 to the present and that contain or previously

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **12**

PAGE **188**

1 contained any digital information referring or relating to Bratz, Angel, or Bryant (as

2 those terms are defined in the Request).

3   2. A consultant of Mattel's choosing, whom Mattel will identify

4 before the inspection, shall be allowed to inspect each of the Hard Drives produced

5 in connection with the preceding Paragraph. Mattel's consultant shall be allowed to

6 make a forensically sound image of each hard drive produced. The inspection may

7 take place at a location of Larian's choosing in this District, so long as the

8 minimum requirements necessary to inspect and create a forensically sound image

9 of the produced hard drives. A consultant of Larian's choosing, whom Larian will

10 identify before the inspection, shall be allowed to observe the inspection and

11 imaging of the hard drives.

12   3. Mattel's consultant shall have the right to inspect any and all

13 information on the produced Hard Drives to determine: (a) whether, when, and by

14 whom any information was deleted, destroyed, written over, lost, exported, moved,

15 spoliated or otherwise rendered inaccessible or unreadable; (b) whether, when and

16 by whom any attempts were made to delete, destroy, write over, export, move,

17 spoliate or otherwise render inaccessible or unreadable any information on those

18 hard drives; (c) the current or past presence or use of any hardware or software tool

19 to accomplish any of the actions identified above; (d) whether any information

20 deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise

21 rendered inaccessible or unreadable may be recovered; and (e) to recover any such

22 information, in whole or in part.

23   4. In conducting the above inspection regarding deleted files,

24 Mattel's consultant shall not access the user generated content of any active file that

25 //

26 //

27 //

28 //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __12__
PAGE __189__



1  exists on the Hard Drives.

2      B.    Larian's request for sanctions is **DENIED**.

3  Dated:      May 18, 2009

4

5                                      By:_____ /s/ Robert C. O'Brien
6                                              ROBERT C. O'BRIEN
                                               Discovery Master
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -                                    ORDER NO. 34
                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __12__
PAGE __190__

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, APPEAL, DISCOVERY, PROTORD, RELATED-G, STAYED

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by O'Brien, Robert on 5/18/2009 at 11:27 AM PDT and filed on 5/18/2009
**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**    2:04-cv-9049
**Filer:**                Robert C O'Brien
**Document Number:** 5510

**Docket Text:**
**PHASE 2 DISCOVERY MATTER - ORDER NO. 34 filed by Special Master Robert C O'Brien** *Regarding Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian after February 27, 2008* (O'Brien, Robert)

**2:04-cv-9049 Notice has been electronically mailed to:**

Adil M Khan    amkhan@glaserweil.com

Alexander H Cote    acote@obsklaw.com, feseroma@obsklaw.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Amman A Khan    akhan@glaserweil.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com, westonreid@quinnemanuel.com

Caroline H Mankey    cmankey@glaserweil.com

Christian C Dowell    cdowell@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

David M Stern    dstern@ktbslaw.com

David W Foster    david.foster@skadden.com

David W Hansen    dhansen@skadden.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

EXHIBIT __12__
PAGE __191__

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Emil W Herich    eherich@kmwlaw.com

Ilan Wisnia    iwisnia@valleassociates.com

James I Stang    jstang@pszjlaw.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

Jean P Nogues    jpn@msk.com

Jeffrey B Valle    jvalle@valleassociates.com

Jennifer A Lopez    jennifer.lopez@bingham.com

Jerome B Falk , Jr    jfalk@howardrice.com

Joel N Klevens    jklevens@glaserweil.com

John B Quinn    johnquinn@quinnemanuel.com

Jon D Corey    joncorey@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Kevin E Deenihan    kdeenihan@ktbslaw.com

Larry W McFarland    lmcfarland@kmwlaw.com

Leah Chava Gershon    leah@spertuslaw.com

Linda M Burrow    burrow@caldwell-leslie.com, popescu@caldwell-leslie.com, wilson@caldwell-leslie.com

Marina Vladimir Bogorad    marina.bogorad@skadden.com

Mark E Overland    moverland@obsklaw.com

Matthew C Bousquette    caldwell@caldwell-leslie.com

Matthew C Heyn    mheyn@ktbslaw.com

Michael P Kelly    mikelly@skadden.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Nicole S Pelletier    npelletier@glaserweil.com

Patricia H Benson    phb@msk.com, mxb@msk.com

Patricia L Glaser    pglaser@glaserweil.com

Patrick A Fraioli , Jr    pfraioli@ecjlaw.com

EXHIBIT *12*
PAGE *192*

Peter N Villar    peter.villar@bingham.com, paul.mcconnell@bingham.com

Randa A F Osman    randaosman@quinnemanuel.com

Richard Giles Stoll , III    rstoll@glaserweil.com

Richard M Pachulski    jstang@pszjlaw.com

Robert C O'Brien    obrien.robert@arentfox.com

Robyn Aronson    robynaronson@dwt.com, frankromero@dwt.com

Russell J Frackman    rjf@msk.com, jpn@msk.com, krs@msk.com, mem@msk.com, phb@msk.com, rbs@msk.com

Sandra L Tholen    tholen@caldwell-leslie.com, mejia@caldwell-leslie.com, wilson@caldwell-leslie.com

Sanford I Weisburst    sandyweisburst@quinnemanuel.com

Scott E Gizer    sgizer@glaserweil.com

Sophia S Lau    slau@glaserweil.com

Stan Karas    stankaras@quinnemanuel.com, gayleduran@quinnemanuel.com, westonreid@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Thomas P Lambert    tpl@msk.com, egd@msk.com

Todd E Gordinier    todd.gordinier@bingham.com, craig.taggart@bingham.com, julie.valenzuela@bingham.com,
karina.ward@bingham.com, lan.ly@bingham.com, michael.mortenson@bingham.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek, CA 94596

EXHIBIT __12__
PAGE __193__

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**H:\- OMELIA -\- Client Matters -\USDC - Central (RCO 031230)\Special Discovery Master (031230.00001)\Pleadings\Docs Prior to Filing\2009 0518 - Phase 2 Discovery Master Order No. 34.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=5/18/2009] [FileNumber=7792928-0]
[b6544be56deddbdb0e100fc9bb9c8c5a855f522936ec60f43b923bc325db785d4f82
66c82b51d7b8083b16a311e1e0632a1018f5a27185dca2e04611bdb09428]]

EXHIBIT __12__
PAGE __194__

# Exhibit 13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                              Date: May 21, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                        None Present
        Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:  ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
              NO. 11 (DOCKET #5185)

              ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
              ANSWER AND COUNTERCLAIMS (DOCKET #5143)

              ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
              APPEAL (DOCKET #5396)

              ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
              PRODUCT LINE INFORMATION (DOCKET #5425)

              ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
              APPOINTING MGA MONITOR

              ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
              REQUIRING MANDATORY SETTLEMENT CONFERENCE

     These matters were heard on May 18, 2009.

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        1          Time: 03/02

EXHIBIT __13__
PAGE __195__

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __13__
PAGE __196__

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit
rather than their general powers and that, in any event, the relevant time period to measure
managing agent status is not at the time of deposition but is rather at the time of the events giving
rise to the lawsuit. Although these arguments find some support, the Discovery Master's
conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law.
The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor,
which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities
regarding matters involved in the litigation.  The cases cited by Mattel support its timing argument;
however, cases cited by the MGA parties establish that other cases favor a contrary position.
Neither side's authority is controlling, and the Court therefore concludes the position adopted by
the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to
conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor
reported, could provide substitute testimony to them is clear error.  Mattel's ultimate point is that no
one can testify more accurately and more on point than can the two witnesses regarding their
alleged trade secret theft.  Again, this is not an invalid point.  Indeed, it is possible that if such theft
occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the
MGA parties and instead acted on their own accord (the MGA parties alternatively contend).    The
fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony
regarding any theft would not be on behalf of MGA at all.  Who can or cannot testify about these
events that may or may not have occurred on behalf of any MGA party -- let alone who can testify
best -- is far from clear.  This area of inquiry is fraught with uncertainty.  The Discovery Master's
conclusion one way or another on this issue, therefore, cannot be said to be clear error.  See
Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate
judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction
that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that
MGA Mexico's interests and the witnesses' interests are at odds.  The witnesses are currently
employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been
subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they
have separately retained counsel to represent their interests.  Additionally, the MGA parties have
maintained that if any trade secret theft occurred, it occurred without their knowledge or consent.
These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery
Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or
contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90
CIVIL -- GEN                                                 3

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __13__
PAGE __197__

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __13__
PAGE __198__

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances,* constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

> [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

EXHIBIT _13_
PAGE _199_

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT _13_
PAGE _200_

## III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir, 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18. For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**: The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**: The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

EXHIBIT __13__
PAGE __201__

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed
no later than Friday, May 29, 2009, at which time the Court will take the matter under submission
and issue an order as expeditiously as possible.

## IV. EX PARTE APPLICATION RE DISCLOSURE OF
## 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex
parte application seeking production of the 2009 Bratz line and the new MGA products is moot,
and it is DENIED for that reason. Nevertheless, because it is in the interest of all parties to
expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for
Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding
those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
## AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of
Permanent Receiver. In response, the Temporary Receiver, the parties and the Court-appointed
Forensic Auditor have filed, and the Court has reviewed, the following documents: (1) The Report
and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) The Responsive Report of
Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the
Appointment of a Permanent Receiver and in opposition thereto, including the Statement of
Position filed by Omni 808. In consideration of these filings, and after hearing on these matters, as
detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms
the expiration of the temporary receivership, orders the filing of an accounting of the temporary
receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

### A.    Expiration of Temporary Receivership

IT IS ORDERED THAT:

1.    The period of the Temporary Receivership imposed by this Court on April 27, 2009
      has expired;

2.    The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc.
      or MGA Hong Kong ("MGA");

3.    The Court reserves jurisdiction to appoint a Receiver in the future, as it deems
      appropriate;

4.    The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file
      with the Court a final report including a final accounting and application for fees and

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          8             Time: 03/02

EXHIBIT __13__
PAGE __202__

costs, on or before May 28, 2009;

5.  The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a
    creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce
    its rights as a creditor against MGA, such action shall be filed and heard in the
    Central District of California;

6.  Based on MGA's representations to the Court that, should MGA file for bankruptcy
    protection under Title 11 of the United States Code, it shall do so in the Central
    District of California, and having previously found in its April 27, 2009, Order
    appointing a Temporary Receiver that MGA is domiciled in California and have their
    principal place of business in the Central District of California and have the majority
    of their assets located within the Central District of California, the Court hereby lifts
    the Injunction against MGA filing bankruptcy without permission of the Court, but
    **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the
    Central District of California.

## B.    Appointment of MGA Monitor

1.  For good cause shown, pursuant to the alternative recommendation of the MGA
    parties, and in lieu of appointing a Permanent Receiver at this time, the Court
    appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all
    action that he deems necessary, appropriate, or advisable to effectuate the purposes
    of the Monitorship, including but not limited to the following:

    a.    The Monitor shall maintain monitoring, supervisory, and oversight
          responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and
because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that
must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the
products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting
forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so
defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of
Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken
out of its current context and may very well be further modified, for purposes of both turn-over and the constructive
trust, following resolution of the issue identified above.

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property
necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other
Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security
interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not
registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks;
trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            9                    Time: 03/02


EXHIBIT __13__
PAGE __203__

b.     The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.     The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.     The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.  All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.  All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.  All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.  All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.  All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g.  All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h.  "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7]  Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT  *13*
PAGE  *204*

e.    At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.    The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.    The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.    The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

i.    The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.    The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing. The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8]  The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT  _13_
PAGE  _265_

k.    The Monitor may retain and/or engage the services of advisors and/or
professionals, including, without limitation, accountants, attorneys, consultants
and experts to assist the Monitor in carrying out his duties and responsibilities
under this Order. The Monitor, without further order of this Court, is
authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of
Crowe Horwath LLP, to assist him in his duties. Nothing herein shall prevent
the Monitor from utilizing the same advisors and professionals as rendered
services to the Temporary Receiver before the appointment of the Monitor;

l.    The Monitor may hire and employ individuals and entities as necessary or
advisable to carry out the Monitor's duties under this Order;

m.    The Monitor, his employees and agents, as well as any and all of the
professionals employed by the Monitor, are entitled to compensation for
services rendered at their normal hourly rates and reimbursement for all
expenses incurred by them in providing services to the Monitor. The Monitor
shall submit to the Court, *in camera*, monthly requests for approval of
payment. Upon Court approval, the Monitor shall serve on the Parties, but not
file, Notice of Court Approval of Request for Payment of Interim Fees and
Costs of Monitorship, along with a summary statement of the fees and costs;

n.    The Monitor shall have the status of an officer and agent of this Court, and as
such shall be vested with the same immunities as enjoyed by this Court.
Neither the Monitor nor any person or entity acting at the direction of the Court
or pursuant to agreements with the Monitor (whether employees, vendors,
contractors or otherwise) may be held liable to any party for any acts taken in
good faith in compliance with this Order, including but not limited to claims of
alleged copyright infringement, trademark infringement, or other alleged
causes of action;

o.    Nothing herein shall alter or affect the right of Mattel to take any and all
actions relating to the Bratz Assets or the Bratz brand which it otherwise
lawfully could take, including, without limitation, the institution, maintenance
and prosecution of legal proceedings anywhere in the world or other
proceedings before any governmental or tribunal or arbitration panel;

p.    The Court shall retain jurisdiction over the Monitorship for the duration of its
existence.

q.    No bond shall be required in connection with the appointment of the Monitor.
Except for acts of gross negligence, the Monitor and his agents and
employees shall not be liable for loss or damage incurred by any party to this
action or their officers, agents, servants, employees, attorneys or others by
virtue of any act performed or omitted to be performed by the Monitor in
connection with the discharge of his duties and responsibilities.

EXHIBIT __*13*__
PAGE __*206*__

2. Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3. MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season. MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4. No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5. For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6. Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7. All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI. IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009. The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                                      13                Time: 03/02

EXHIBIT __13__
PAGE __207__

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __13__
PAGE __208__

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90
CIVIL -- GEN

15

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __13__
PAGE __209__

# Exhibit 14



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND<br><br>[PROPOSED] ORDER<br><br>Discovery Cutoff Date:  Not Set<br>Trial Date:  Not Set |

EXHIBIT __14__
PAGE __210__

1  LITTLER MENDELSON
   Robert F. Millman (Bar No. 062152)
2     Douglas A. Wickham (Bar No. 127268)
      Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
4  Telephone:  (310) 553-0308
   Facsimile:  (310) 553-5583
5
   Attorneys for Carter Bryant
6
   O'MELVENY & MYERS LLP
7     Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California 90017
   Telephone:  (213) 430-6000
9  Facsimile:  (213) 430-6407

10  O'MELVENY & MYERS LLP
       Dale Cendali
11  Times Square Tower
    7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
       Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
    Los Angeles, CA 90067
15  Telephone: (310) 553-3000
    Facsimile: (310) 556-2920
16
    Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27          EXHIBIT __14__

28          PAGE __211__

1    WHEREAS, the parties are in agreement that a discovery master should be
2  appointed in this matter to resolve any discovery disputes and to minimize the
3  burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5  (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7  trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8  Inc., by and through their respective counsel of record, hereby stipulate and agree as
9  follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-
11  effective discovery and to minimize the burden of discovery disputes upon the
12  Court. Any and all discovery motions and other discovery disputes in the above
13  captioned action shall be decided by a master ("Discovery Master") pursuant to
14  Federal Rule of Civil Procedure 53. Any motions currently pending before
15  Magistrate Judge Block shall be transferred to the Discovery Master. The moving
16  party shall provide to the Discovery Master all papers associated with each pending
17  motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.). His
19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20  94111.

21    3.    Judge Infante shall serve as the Discovery Master until all issues herein
22  have been finally disposed of or determined, or until he shall withdraw in
23  accordance with applicable law. If at any time he becomes unable to serve as the
24  Discovery Master, the parties shall confer to present an alternative agreed-upon
25  designee to the Court. In the event that the parties cannot agree to an alternate
26  designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and
28  place for all hearings determined by the Discovery Master to be necessary; to



EXHIBIT __14__
PAGE __212__

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1  preside over hearings (whether telephonic or in-person); to take evidence in
2  connection with discovery disputes; to issue orders resolving discovery motions
3  submitted to the Discovery Master; to conduct telephonic conferences to resolve
4  discovery disputes arising during depositions; to issue orders awarding non-
5  contempt sanctions, including, without limitation, the award of attorney's fees, as
6  provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7  recommendations, as appropriate.

8       5.     All discovery disputes shall be resolved by motion (except those arising
9  during a deposition which the Discovery Master determines can be resolved by
10 telephonic conference during the deposition).  The moving party shall first identify
11 each dispute, state the relief sought, and identify the authority supporting the
12 requested relief in a meet and confer letter that shall be served on all parties by
13 facsimile or electronic mail.  The parties shall have five court days from the date of
14 service of that letter to conduct an in-person conference to attempt to resolve the
15 dispute.  If the dispute has not been resolved within five court days after such
16 service, the moving party may seek relief from the Discovery Master by formal
17 motion or letter brief, at the moving party's option.  The opposing party shall have
18 five court days from the date of service of the motion or letter brief to submit a
19 formal opposition or response.  Any reply brief or letter brief shall be served within
20 three court days from the date of service of a formal opposition or response.  The
21 hearing on the motion shall take place within five court days of the service of any
22 reply brief or letter unless (a) the parties agree to another hearing date or agree that
23 no hearing is necessary; (b) the Discovery Master determines that no hearing is
24 necessary; or (c) the Discovery Master is not available, in which case the hearing
25 shall take place on the Discovery Master's first available date.  The foregoing shall
26 not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27 seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28 dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT __14__
PAGE __213__

- 4 -

1 prejudiced absent prompt resolution. Service of any document by fax or electronic
2 mail prior to 6:00 p.m. shall constitute service on that day.

3      6.      The Discovery Master's orders resolving discovery disputes, reports, or
4 recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5 Magistrate Judge of the United States District Court. The Discovery Master shall
6 file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7 the parties within five court days of his/her decision on a matter.

8      7.      A court reporter shall transcribe any hearing or other proceeding before
9 the Discovery Master.

10      8.      The cost of any proceeding before the Discovery Master, including the
11 fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12 other proceedings before the Discovery Master, and the fees of any other person
13 necessary to the efficient administration of the proceeding before the Discovery
14 Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15 Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16 the Discovery Master Orders otherwise. By agreeing to share costs among the
17 parties, no party waives its right to seek recovery or reimbursement for such costs
18 from any other party.

19      9.      The Discovery Master shall be compensated according to his regular
20 hourly rate of $750.

21      10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22 Master shall proceed with all reasonable diligence.

23      11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25 aware that he has a relationship to the parties, to counsel, to the action, or to the
26 Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27 based thereon the parties expressly waive any ground for disqualification disclosed
28 therein of Hon. Edward A. Infante to serve as master in these proceedings.



EXHIBIT __14__
PAGE __214__

- 5 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

12. The Discovery Master shall not have ex parte communications with ~~the~~
~~Court,~~ a party or counsel.

13. The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14. The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15. All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 22, 2006           O'MELVENY & MYERS LLP

                                   By: _____
                                       Diana Torres
                                       Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006           LITTLER MENDELSON

                                   By: _____
                                       Douglas A. Wickham
                                       Attorneys for Carter Bryant

- 6 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND (PROPOSED) ORDER

EXHIBIT __14__
PAGE __215__

1 | Dated: ~~November~~ December 4, , 2006      QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

2

3      By: _Jon D. Corey_

4      Jon D. Corey
Attorneys for Mattel, Inc.

5

6                 **ORDER**

7      The foregoing Stipulation for Appointment of a Discovery Master is SO

8 | ORDERED *as modified.*

9

10 | Dated: __12-6-06.__      _S. G. Larson_

11      Hon. Stephen G. Larson
United States District Court Judge

12

13         **CONSENT OF DISCOVERY MASTER**

14      If appointed by the Court, I, the undersigned, consent to serve as Discovery

15 | Master in the above referenced proceeding consistent with this Order.

16

17 | Dated: __12-5-06__      _Edward A. Infante_

18      Hon. Edward A. Infante (Ret.)

19

20

21

22

23

24

25

26

27

28

-7-

EXHIBIT __14__

PAGE __216__

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

1 | **STATE OF CALIFORNIA** )
   | **COUNTY OF LOS ANGELES** )
2

3   I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

4

5   On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

6

7 | **Keith A. Jacoby, Esq.**                    **Diana M. Torres, Esq.**
   | **Douglas Wickham, Esq.**                 **O'Melveney & Meyers**
   | **Littler Mendelson**                     400 S. Hope Street
8 | **A Professional Corporation**             Los Angeles, CA 90071
   | 2049 Century Park East, 5th Floor          Phone: 213-430-6000
9 | Los Angeles, California 90067-3107         **Fax: 213-430-6407**
   | Phone: 310-553-0308
10 | **Fax: 310-553-5583**

11

12 | [ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:
13

14 | **[X]   BY MAIL**

15 | [ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

16 | [ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal
17 | service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is
18 | presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19 | [ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
20 | set forth above on this date.

21 | [ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

22 | Executed on December 5, 2006, at Los Angeles, California.

23 | [ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24 | [X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

25

26 | __Cheri Hatch__
27 | Print Name                          Signature

28

EXHIBIT __14__
PAGE __217__

# Exhibit 15

FILED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 90378)
      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

2009 MAY 22  PM 4:44

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

7   Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

11           Plaintiff,                  Consolidated With Case No. 04-9059 and
                                         Case No. 05-2727
12       v.
                                         MATTEL, INC.'S THIRD AMENDED
13                                       ANSWER IN CASE NO. 05-2727 AND
                                         COUNTERCLAIMS FOR:
14  MATTEL, INC., a Delaware
    corporation,                         1.  COPYRIGHT INFRINGEMENT;
15                                       2.  VIOLATION OF THE
             Defendant.                      RACKETEER INFLUENCED AND
16                                           CORRUPT ORGANIZATIONS
                                             ACT;
17                                       3.  CONSPIRACY TO VIOLATE THE
                                             RACKETEER INFLUENCED AND
18                                           CORRUPT ORGANIZATIONS
                                             ACT;
19                                       4.  MISAPPROPRIATION OF TRADE
    AND CONSOLIDATED CASES                   SECRETS;
20                                       5.  BREACH OF CONTRACT;
                                         6.  INTENTIONAL INTERFERENCE
21                                           WITH CONTRACT;
                                         7.  BREACH OF FIDUCIARY DUTY;
22                                       8.  AIDING AND ABETTING
                                             BREACH OF FIDUCIARY DUTY;
23                                       9.  BREACH OF DUTY OF
                                             LOYALTY;
24

25                                       PUBLIC REDACTED

26

27                                       Volume I

28

                                         THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT  15
PAGE  218

1

         10. AIDING AND ABETTING
            BREACH OF DUTY OF

2
            LOYALTY;
         11. CONVERSION;

3
         12. UNFAIR COMPETITION;
         13. AVOIDANCE OF INTENTIONAL

4
            AND CONSTRUCTIVE
            FRAUDULENT TRANSFERS

5
            UNDER UNIFORM
            FRAUDULENT TRANSFER ACT;

6
            AND
         14. DECLARATORY RELIEF

7

8
        DEMAND FOR JURY TRIAL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __15__

PAGE __219__

00505.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1

## THIRD AMENDED ANSWER

2  Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA

3  Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

5  The Complaint in this case contravenes Rule 8(a) of the Federal Rules

6  of Civil Procedure in multiple respects. For example, in many places, the Complaint

7  improperly mixes factual averments with argumentative rhetoric. The Complaint

8  also includes a selective recitation of alleged historical facts and "rumor," much of

9  which is both irrelevant and inflammatory in tone and content. In addition, many of

10  the allegations of the Complaint are overly broad, vague or conclusory and include

11  terms which are undefined and which are susceptible to different meanings.

12  Accordingly, by way of a general response, all allegations are denied unless

13  specifically admitted, and any factual averment admitted is admitted only as to the

14  specific facts and not as to any conclusions, characterizations, implications or

15  speculations which are contained in the averment or in the Complaint as a whole.

16  These comments and objections are incorporated, to the extent appropriate, into

17  each numbered paragraph of this Third Amended Answer.

18  Mattel further submits that the use of the headings throughout the

19  Complaint is improper, and therefore no response to them is required. In the event

20  that a response is required, Mattel denies those allegations.

21  The Complaint also contains many purported photographs of various

22  items, and it uses one or more headings purporting to describe, either individually or

23  in groups, these various photographs. The images of these photographs contained in

24  the Complaint are all relatively small and some are of less than optimal quality,

25  making it difficult to evaluate the adequacy of the photographs or their fairness and

26  accuracy in depicting what they purport to represent. The Complaint also does not

27  describe the circumstances or time frame in which these photographs were taken,

28  and in many cases does not identify, or does not sufficiently or properly identify, the

-1-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 15
PAGE 220

1  item depicted in the photographs. All of these factors, as well as the use of these

2  photographs and headings out of context, or with an insufficient context, impair the

3  ability of Mattel to fully respond to these photographs and headings, or to any

4  purported allegations involving, or relying upon, the use of such photographs and

5  accompanying headings. By way of a general response, Mattel therefore does not

6  admit the authenticity of any photograph, or the accuracy or adequacy of any

7  heading, nor does it admit any allegation or inference that is based on, or purports to

8  be based on, any photograph or accompanying heading in the Complaint. Mattel

9  reserves the right to challenge the authenticity of any photograph and the accuracy

10  or adequacy of any heading (either as included in the Complaint or in the context of

11  additional material not included). Further, with reference to all photographs and

12  accompanying headings, or any averments based on the Complaint's use of such

13  photographs and headings, which might be offered into evidence, Mattel specifically

14  reserves its right to object to any use of such photographs, headings, and averments,

15  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

16       To the extent that Mattel has endeavored to answer any particular

17  allegation containing any such photographs and headings, any admission concerning

18  the item purported to be depicted in such photograph, or described in such headings,

19  shall not constitute an admission that the photograph is authentic, adequate, or

20  admissible, nor that any heading is accurate, adequate, or admissible. All such items

21  purportedly depicted in such photographs, and described in such headings, "speak

22  for themselves." Accordingly, to the extent that any such referenced materials are

23  deemed allegations against Mattel, they are denied.

24  Responses

25       1.    Answering paragraph 1 of the Complaint, Mattel admits that

26  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

27  corporation with a principal place of business in Van Nuys, California.

28

00505.07209/2875224.1

-2-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 15
PAGE 221

1        2.    Answering paragraph 2 of the Complaint, Mattel admits that

2  Mattel is a Delaware corporation with a principal place of business in El Segundo,

3  California.

4        3.    Answering paragraph 3 of the Complaint, Mattel denies that

5  there has been wrongful conduct on its part and states that it is without knowledge

6  or information sufficient to form a belief as to the truth or falsity of the remaining

7  allegations set forth therein and, on that basis, denies them.

8        4.    Answering paragraph 4 of the Complaint, Mattel admits that

9  plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10  (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11  and Professions Code § 14330 and California common law, denies that plaintiff is

12  entitled to any relief thereunder and denies the truth of the remaining allegations set

13  forth in paragraph 4.

14        5.    Answering paragraph 5 of the Complaint, Mattel admits that it is

15  subject to personal jurisdiction in this District and denies the truth of the remaining

16  allegations set forth in paragraph 5.

17        6.    Answering paragraph 6 of the Complaint, Mattel admits that

18  venue is proper in this District and denies the truth of the remaining allegations set

19  forth in paragraph 6.

20        7.    Answering paragraph 7 of the Complaint, Mattel admits that

21  MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22  set forth in paragraph 7.

23        8.    Answering paragraph 8 of the Complaint, Mattel states that it is

24  without knowledge or information sufficient to form a belief as to the truth or falsity

25  of the allegations regarding MGA's history set forth therein and, on that basis,

26  denies them, states that MGA has made conflicting representations, including in

27  sworn statements, that are at odds with the allegations of the Complaint and denies

28  the truth of the remaining allegations set forth in paragraph 8.

-3-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT /5

PAGE 222

1    9.    Answering paragraph 9 of the Complaint, Mattel admits that
2  MGA filed this action, states that Mattel's web site and corporate governance
3  policies speak for themselves and denies the truth of the remaining allegations set
4  forth in paragraph 9.

5    10.    Answering paragraph 10 of the Complaint, Mattel admits that it
6  is the world's most successful toy company, states that the first doll in its BARBIE
7  line was publicly introduced in 1959 and that BARBIE-branded dolls have been the
8  world's best-selling toys, states that Mattel's sales and stock price speak for
9  themselves, and denies the truth of the remaining allegations set forth in paragraph
10  10.

11    11.    Answering paragraph 11 of the Complaint, Mattel admits that
12  Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is
13  without knowledge or information sufficient to form a belief as to the truth or falsity
14  of the allegations regarding an alleged statement by Ms. Fontanella, and denies the
15  truth of the remaining allegations set forth in paragraph 11.

16    12.    Answering paragraph 12 of the Complaint, Mattel is without
17  knowledge or information sufficient to form a belief as to the truth or falsity of the
18  allegations regarding alleged statements by unidentified "analysts," states that
19  Mattel's sales and stock price speak for themselves, and denies the truth of the
20  remaining allegations set forth in paragraph 12.

21    13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill
22  Barad became President and Chief Executive Officer of Mattel in January 1997, that
23  Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired
24  Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,
25  that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned
26  by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company
27  at the time of that entity's acquisition, and denies the truth of the remaining
28  allegations set forth in paragraph 13.

-4-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_

PAGE _223_

1      14.    Answering paragraph 14 of the Complaint, Mattel states that its
2  public announcements speak for themselves, and denies the truth of the remaining
3  allegations set forth therein.

4      15.    Answering paragraph 15 of the Complaint, Mattel states that its
5  stock price and its public announcements speak for themselves, and denies the truth
6  of the remaining allegations set forth therein.

7      16.    Answering paragraph 16 of the Complaint, Mattel states that its
8  stock price speaks for itself, states that it is without knowledge or information
9  sufficient to form a belief as to the truth or falsity of the allegations regarding the
10 alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the
11 remaining allegations set forth therein.

12     17.    Answering paragraph 17 of the Complaint, Mattel admits that
13 Ms. Barad resigned in February 2000.

14     18.    Answering paragraph 18 of the Complaint, Mattel admits that
15 Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000
16 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is
17 without knowledge or information sufficient to form a belief as to the truth or falsity
18 of the allegations regarding the views of unnamed "[i]nvestors" and others, and
19 denies the truth of the remaining allegations set forth in paragraph 18.

20     19.    Answering paragraph 19 of the Complaint, Mattel admits that the
21 *Wall Street Journal* published an article on August 10, 2000, the content of which
22 speaks for itself, and denies the truth of the remaining allegations set forth therein.

23     20.    Answering paragraph 20 of the Complaint, Mattel admits that it
24 disposed of the Learning Company in October 2000, states that its sales and
25 revenues speak for themselves, states that the remainder of the allegations contained
26 therein are characterizations, not factual assertions, and therefore no response is
27 necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is
28 required, denies the truth of any remaining allegations set forth in paragraph 20.

1        21.    Answering paragraph 21 of the Complaint, Mattel admits that

2 products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

3 other product lines and states that the remainder of the allegation contained

4 therein—consisting of a sentence fragment—is unintelligible and on that basis

5 denies the truth of any such remaining allegation set forth therein.

6        22.    Answering paragraph 22 of the Complaint, Mattel admits that

7 products in plaintiff's "Bratz" line compete with Mattel products, states that the

8 remainder of the allegations contained therein are characterizations, not factual

9 assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)

10 and, to the extent any further response is required, denies the truth of any remaining

11 allegations set forth therein.

12        23.    Answering paragraph 23 of the Complaint, Mattel states that

13 MGA has made conflicting statements, including in sworn statements, that are

14 inconsistent with the allegations set forth in paragraph 23 of the Complaint and

15 states that it is therefore without knowledge or information sufficient to form a

16 belief as to the truth or falsity of the allegations set forth therein and, on that basis,

17 denies them.

18        24.    Answering paragraph 24 of the Complaint, Mattel states that the

19 "look" of the referenced dolls speak for themselves and denies the truth of the

20 remaining allegations set forth therein. By way of further answer, Mattel states that

21 the photographs and their accompanying caption on page 7 of the Complaint are

22 false and misleading to the extent they are intended to suggest that MGA has

23 produced or used a consistent packaging shape or look or that it has protectible

24 rights in the matters depicted in the photographs.

25        25.    Answering paragraph 25 of the Complaint, Mattel admits that

26 Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

27 appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were

28 intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

-6-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_

PAGE _225_

1    dolls "looked like no other" and denies the truth of the remaining allegations set
2    forth in paragraph 25.

3         26.    Answering paragraph 26 of the Complaint, Mattel states that the
4    use of the term "classic" is unintelligible, since Mattel has designed and sold
5    different dolls using different heads and with different fashions and themes over the
6    years, and denies the truth of any remaining allegations. By way of further answer,
7    Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the
8    Complaint is misleading in that it depicts one of the doll heads that have been used
9    as part of the BARBIE line for many years, and therefore ignores that Mattel has
10   long designed and sold an array of different BARBIE line dolls that use different
11   doll heads, including doll heads which depict different ethnicities, and that are
12   dressed in different clothing and fashion styles.

13        27.    Answering paragraph 27 of the Complaint, Mattel admits that
14   MGA has used the line "The Girls With a Passion for Fashion" in some contexts,
15   denies that MGA originated or otherwise has rights to that phrase, admits that one
16   audience for products in the "Bratz" line has been "tweens" and denies the truth of
17   the remaining allegations set forth in paragraph 27.

18        28.    Answering paragraph 28 of the Complaint, Mattel admits that
19   certain "Bratz" dolls have won certain awards, the terms of which speak for
20   themselves, states that it is without knowledge or information sufficient to form a
21   belief as to the truth or falsity of the allegations regarding the "awards" MGA claims
22   and, on that basis, denies them, denies that plaintiff has protectible rights and denies
23   the truth of any remaining allegations set forth in paragraph 28.

24        29.    Answering paragraph 29 of the Complaint, Mattel admits that
25   dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that  .
26   Mattel has or has ever had a "stranglehold" on any market, states that the market
27   allegations contained in paragraph 29 are vague and ambiguous, including without
28   limitation in that the allegations fail to specify what products among the parties'

00505.07209/2875224.1

-7-

EXHIBIT _13_

PAGE _226_

1 respective lines are being referred to and what time period is being referred to, and
2 denies the truth of any remaining allegations set forth in paragraph 29.

3        30.    Answering paragraph 30 of the Complaint, Mattel admits that
4 MGA has been a licensee of Mattel, states that the market allegations are vague and
5 ambiguous, including without limitation in that the allegations fail to specify what
6 products are being referred to and what time periods or points in time are being
7 referred to, and states that the remainder of the allegations contained therein are
8 characterizations, not factual assertions, and therefore no response is necessary
9 under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies
10 the truth of any remaining allegations set forth in paragraph 30.

11        31.    Answering paragraph 31 of the Complaint, Mattel states that the
12 allegations contained therein are characterizations, not factual assertions, and
13 therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any
14 further response is required, denies the truth of the allegations set forth in paragraph
15 31.

16        32.    Answering paragraph 32 of the Complaint, Mattel denies the
17 truth of the allegations set forth therein.

18        33.    Answering paragraph 33 of the Complaint, Mattel denies the
19 truth of the allegations set forth therein.

20        34.    Answering paragraph 34 of the Complaint, Mattel states that it
21 has released various MY SCENE dolls, including MY SCENE dolls named
22 "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY
23 SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE
24 dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff
25 has protectible rights, states that MGA has made conflicting representations that are
26 at odds with the allegations of the Complaint and that it is therefore without
27 knowledge or information sufficient to form a belief as to the truth or falsity of the
28 allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

00505.07209/2875224.1

-8-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_

PAGE _227_

1   denies them, and denies the truth of the remaining allegations set forth therein. By

2   way of further answer, Mattel states that the photographs and their accompanying

3   captions on page 10 of the Complaint are misleading and false to the extent they are

4   intended to suggest that a particular Mattel doll has been changed over time as

5   purportedly depicted. Among other things, Mattel has long designed and sold an

6   array of different BARBIE line dolls using different doll heads, and the photographs

7   encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8   used, and continues to be used, as part of the BARBIE line. In addition, the

9   photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10   character called BARBIE that continues to be sold and/or marketed with that head,

11   and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12   SCENE doll character separate and apart from the one depicted in the "circa 2002"

13   image (and is not a revised character as plaintiff apparently attempts to imply).

14       35.    Answering paragraph 35 of the Complaint, Mattel admits that

15   Mattel released a product line called FLAVAS, states that the appearance of the

16   FLAVAS dolls speaks for themselves, states that it is without knowledge or

17   information sufficient to form a belief as to the truth or falsity of the allegations

18   regarding the "rumor" relied upon by plaintiff and the undefined "media"

19   purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20   has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21   set forth in paragraph 35.

22       36.    Answering paragraph 36 of the Complaint, Mattel denies the

23   truth of the allegations set forth therein.

24       37.    Answering paragraph 37 of the Complaint, Mattel denies the

25   truth of the allegations set forth therein. By way of further answer, Mattel states that

26   the unnumbered photographs and their accompanying captions on pages 11 through

27   16 of the Complaint -- which apparently were included to purportedly support the

28   allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

-9-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_

PAGE _228_

1  specifically denies -- are false and misleading. Among other things, the heads
2  depicted are among an array of different doll heads that Mattel has used, and
3  continues to use, over the course of many years. Moreover, the images purport to
4  compare different Mattel doll lines to show alleged changes in appearance even
5  though, in fact, each of the heads are currently sold and/or marketed to the public.
6  The "Blonde" series of photographs encaptioned "original" and "recent" MY
7  SCENE is further and specifically misleading in that it purports to compare two
8  differently named and outfitted dolls in the MY SCENE doll line, both of which
9  continue to be sold and/or marketed.

10        38.    Answering paragraph 38 of the Complaint, Mattel states that the
11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,
12  denies that MGA was the originator of or the first to use the eye shape or makeup
13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has
14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations
15  contained in paragraph 38. By way of further answer, Mattel states that the
16  unnumbered photographs and accompanying caption on page 13 of the Complaint
17  are false and misleading. Among other things, the purported "Original Mattel 'My
18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the
19  course of many years, and Mattel continues to sell and/or market dolls using the eye
20  and makeup design depicted therein.

21        39.    Answering paragraph 39 of the Complaint, Mattel states that the
22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,
23  denies that MGA was the originator of or the first to use the eye shape or makeup
24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has
25  copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and
26  denies the truth of the remaining allegations contained in paragraph 39. By way of
27  further answer, Mattel states that the unnumbered photographs and accompanying
28  captions on page 14 of the Complaint are false and misleading. Among other things,

-10-

EXHIBIT _1S_

PAGE _229_

1 the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs
2 that Mattel has used over the course of many years, and Mattel continues to sell
3 and/or market dolls using the eye and makeup design depicted on page 14 of the
4 Complaint.

5          40.    Answering paragraph 40 of the Complaint, Mattel denies the
6 truth of the allegations therein. By way of further answer, Mattel states that the
7 unnumbered photographs and their accompanying captions on pages 15 to 16 are
8 false and misleading. Among other things, the heads depicted are among an array of
9 different doll heads that Mattel has used, and continues to use, over the course of
10 many years. Moreover, the photographs purport to compare different Mattel doll
11 lines to show alleged changes in appearance even though, in fact, each of the heads
12 are currently sold and/or marketed to the public. The "Blonde" series of
13 photographs encaptioned "original" and "recent" MY SCENE is further and
14 specifically misleading in that it purports to compare two differently named and
15 outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or
16 marketed.

17          41.    Answering paragraph 41 of the Complaint, Mattel denies the
18 truth of the allegations set forth therein.

19          42.    Answering paragraph 42 of the Complaint, Mattel admits that the
20 photographs purport to depict two packages that were, among others, part of the MY
21 SCENE line, state that the packages speak for themselves and denies the truth of any
22 remaining allegations set forth therein.

23          43.    Answering paragraph 43 of the Complaint, Mattel admits that the
24 photograph purports to depict one of the packages that were, among others, part of
25 the MY SCENE line, states that the parties' packages speak for themselves, states
26 that MGA has failed to establish that it originated, or has protectible rights in, an
27 "open and transparent style" for packaging and denies the truth of the remaining
28 allegations set forth therein.

EXHIBIT __/5__

PAGE __230__

1        44.    Answering paragraph 44 of the Complaint, Mattel admits that

2 one photograph purports to depict one of the packages that were, among others, part

3 of the MY SCENE line, admits that the other photograph purports to depict one of

4 the packages that were, among others, used as part of the Bratz line, states that the

5 parties' packages speak for themselves, denies that MGA originated, or has

6 protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7 Complaint and denies the truth of any remaining allegations set forth therein.

8        45.    Answering paragraph 45 of the Complaint, Mattel admits that

9 one photograph purports to depict one of the packages that were, among others, part

10 of the MY SCENE line, admits that the other photograph purports to depict one of

11 the packages that were, among others, used as part of the Bratz line, states that the

12 parties' packages speak for themselves, denies that MGA originated, or has

13 protectible rights in, the packaging depicted in the Complaint and denies the truth of

14 any remaining allegations set forth therein.

15        46.    Answering paragraph 46 of the Complaint, Mattel states that it

16 has utilized a wide variety of packaging styles and shapes over the years, states that

17 the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18 "non-rectangular shaped box" packaging or in the other elements MGA claims in

19 paragraph 46, and denies the truth of the remaining allegations set forth therein.

20        47.    Answering paragraph 47 of the Complaint, Mattel denies that

21 any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22 any theme and denies the truth of the remaining allegations set forth therein.

23        48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24 released a doll called "Chillin Out!", states that it has released such themed dolls

25 over the course of many years, admits MGA released a "Wintertime Wonderland"

26 themed doll, denies that MGA originated or has rights to such theme, states that the

27 relevant products speak for themselves and denies the truth of the remaining

28 allegations set forth therein.

1        49.   Answering paragraph 49 of the Complaint, Mattel admits that it
2   released a doll called "Night on the Town", states that it has released such themed
3   dolls over the course of many years, admits MGA released a "Formal Funk" themed
4   doll, denies that MGA originated or has rights to such theme, states that the relevant
5   products speak for themselves and denies the truth of the remaining allegations set
6   forth therein.

7        50.   Answering paragraph 50 of the Complaint, Mattel admits that it
8   released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki
9   Lounge", states that it has released such themed dolls and products over the course
10  of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and
11  playset, denies that MGA originated or has rights to such theme, states that the
12  relevant products speak for themselves and denies the truth of the remaining
13  allegations set forth therein.

14       51.   Answering paragraph 51 of the Complaint, Mattel admits that it
15  has aired television commercials for its MY SCENE line, states that such
16  commercials speak for themselves, denies the truth of the remaining allegations set
17  forth therein and specifically denies that MGA was the originator of or has rights to
18  commercials "combining live action with animated sequences" set to "pop music
19  and lyrics".

20       52.   Answering paragraph 52 of the Complaint, Mattel denies the
21  truth of the allegations set forth therein.

22       53.   Answering paragraph 53 of the Complaint, Mattel admits that it
23  released a MY SCENE "Sound Lounge", admits that MGA released a product called
24  "Runway Disco", states that the relevant products speak for themselves, denies that
25  it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and
26  denies the truth of the remaining allegations set forth therein.

27       54.   Answering paragraph 54 of the Complaint, Mattel denies the
28  truth of the allegations set forth therein.

-13-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_
PAGE _232_

1          55.    Answering paragraph 55 of the Complaint, Mattel admits that,

2  among the styling heads it has produced and sold over the course of many years, it

3  released a MY SCENE styling head, admits that MGA released a styling head called

4  "Funky Fashion Makeover Head", states that the relevant products speak for

5  themselves, denies that MGA has protectible rights and denies the truth of the

6  remaining allegations set forth in paragraph 55.

7          56.    Answering paragraph 56 of the Complaint, Mattel is without

8  knowledge or information sufficient to form a belief as to the truth or falsity of the

9  allegations set forth therein because plaintiff fails to identify the alleged instances of

10  confusion, including the source of the unidentified picture titled "Hairstyle practice",

11  and on that basis, denies them, and denies the truth of any remaining allegations set

12  forth in paragraph 56.

13          57.    Answering paragraph 57 of the Complaint, Mattel admits that it

14  has aired television commercials for its MY SCENE line, states that such

15  commercials speak for themselves and denies the truth of the remaining allegations

16  set forth therein.

17          58.    Answering paragraph 58 of the Complaint, Mattel admits that

18  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

19  denies that MGA originated that phrase or otherwise has rights to it, states that

20  Mattel's web site speaks for itself and denies the truth of the remaining allegations

21  set forth therein.

22          59.    Answering paragraph 59 of the Complaint, Mattel admits that,

23  among the plush products that it has produced and sold over the course of many

24  years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

25  themed product line, states that Mattel has for many years sold plush pets of the type

26  used with its MY SCENE dog, admits that MGA has released various Bratz pets,

27  states that MGA was not the originator of and has no rights to the features and other

28

-14-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_

PAGE _233_

1 | elements described therein, states that the relevant products speak for themselves
2 | and denies the truth of the remaining allegations set forth therein.

3 |      60.    Answering paragraph 60 of the Complaint, Mattel admits that,
4 | among the plush toys that it has released over the course of many years, its MY
5 | SCENE dog has been sold in packaging depicted (in part) on page 22 of the
6 | Complaint, states that Mattel has for many years sold plush pets and other plush
7 | products in packaging of the type used with its MY SCENE dog, admits that MGA
8 | has released a "Bratz" dog, states that MGA was not the originator of and has no
9 | rights to the packaging described therein, states that the relevant packages speak for
10 | themselves and denies the truth of the remaining allegations set forth therein.

11 |      61.    Answering paragraph 61 of the Complaint, Mattel denies that it
12 | has intended to cause any consumer confusion and states that it is without
13 | knowledge or information sufficient to form a belief as to the truth or falsity of the
14 | allegations set forth therein concerning unnamed retailers, customers and others
15 | because plaintiff fails to identify any source for the matters alleged and, on that
16 | basis, denies them and denies the truth of any remaining allegations set forth therein.

17 |      62.    Answering paragraph 62 of the Complaint, Mattel denies that it
18 | has intended to cause any confusion and states that it is without knowledge or
19 | information sufficient to form a belief as to the truth or falsity of the allegations set
20 | forth therein concerning alleged comments and conversations because plaintiff fails
21 | to identify any source for the alleged comments and conversations and, on that
22 | basis, denies them, and denies the truth of any remaining allegations set forth
23 | therein.

24 |      63.    Answering paragraph 63 of the Complaint, Mattel denies that it
25 | has intended to cause any confusion and states that it is without knowledge or
26 | information sufficient to form a belief as to the truth or falsity of the allegations set
27 | forth therein because plaintiff fails to identify any source for the alleged comments
28 |

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT ___15___

PAGE __234__

1 | and conversations and, on that basis, denies them, and denies the truth of any
2 | remaining allegations set forth therein.

3 |      64.   Answering paragraph 64 of the Complaint, Mattel denies that it
4 | has intended to cause any confusion and states that it is without knowledge or
5 | information sufficient to form a belief as to the truth or falsity of the allegations set
6 | forth therein because plaintiff fails to identify any source for the alleged comments
7 | and conversations and, on that basis, denies them, and denies the truth of any
8 | remaining allegations set forth therein.

9 |      65.   Answering paragraph 65 of the Complaint, Mattel denies the
10 | truth of the allegations set forth therein.

11 |      66.   Answering paragraph 66 of the Complaint, Mattel admits that it
12 | sued a competitor in the German courts for unfair competition for copying various
13 | Mattel BARBIE line products, states that such claims exclusively arose under and
14 | were the subject of German law, states that since that time the Federal Supreme
15 | Court has rejected the contention made by MGA in paragraph 66 that
16 | "systematically copying and borrowing elements" from competing dolls supports a
17 | claim for unfair competition, and denies the truth of the remaining allegations set
18 | forth therein.

19 |      67.   Answering paragraph 67 of the Complaint, Mattel denies the
20 | truth of the allegations set forth therein.

21 |      68.   Answering paragraph 68 of the Complaint, Mattel admits that it
22 | has released dolls called "Wee 3 Friends," admits that MGA has released dolls
23 | called "4-Ever Best Friends," states that the relevant products speak for themselves,
24 | denies that MGA's packaging is distinctive, denies that MGA has protectible rights
25 | thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26 |      69.   Answering paragraph 69 of the Complaint, Mattel admits that its
27 | Fisher Price division has released, among other dolls called "Little Mommy," the
28 | "Little Mommy Potty Training Baby Doll," admits that MGA has released a

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_

PAGE _235_

1 "Mommy's Little Patient" doll and denies the truth of the remaining allegations set
2 forth therein.

3        70.    Answering paragraph 70 of the Complaint, Mattel admits that it
4 has released die-cast cars and other products called "Acceleracers" as part of its
5 HOT WHEELS line, admits that MGA has released products called "AlienRacers,"
6 denies that MGA was the originator of or has rights to the elements and matters
7 described in paragraph 70, states that the relevant products speak for themselves and
8 denies the truth of the remaining allegations set forth therein.

9        71.    Answering paragraph 71 of the Complaint, Mattel admits that it
10 has aired commercials relating to "Acceleracers," states that such commercials
11 speak for themselves, denies the truth of the remaining allegations set forth therein
12 and specifically denies that MGA originated or has rights to the commercials and
13 other matters described therein.

14        72.    Answering paragraph 72 of the Complaint, Mattel states that its
15 web site speaks for itself, denies the truth of the remaining allegations contained in
16 paragraph 72 and specifically denies that Mattel intended to create confusion in the
17 marketplace.

18        73.    Answering paragraph 73 of the Complaint, Mattel denies the
19 truth of the allegations set forth therein.

20        74.    Answering paragraph 74 of the Complaint, Mattel denies the
21 truth of the allegations set forth therein.

22        75.    Answering paragraph 75 of the Complaint, Mattel admits that it
23 has reminded certain former employees who became employed by MGA by letter of
24 their contractual and fiduciary obligation to maintain the secrecy of all Mattel
25 confidential and proprietary business information, states that such letters were
26 prepared and sent to their recipients in good faith contemplation of litigation, admits
27 that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles
28 Superior Court, entitled <u>Mattel, Inc. v. Brawer</u>, Case No. BC323381, on October 21,

-17-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_
PAGE _236_

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not
2  respond to the allegations in paragraph 75 relating to that action, and denies the truth
3  of the remaining allegations set forth in paragraph 75.

4      76.     Answering paragraph 76 of the Complaint, Mattel states that
5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,
6  including such acts that are lawful in foreign nations, and denies the truth of
7  allegations set forth therein.

8      77.     Answering paragraph 77 of the Complaint, Mattel states that
9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,
10  including such acts that are lawful in foreign nations, and denies the truth of the
11  allegations set forth therein.

12      78.     Answering paragraph 78 of the Complaint, Mattel states that it is
13  without knowledge or information sufficient to form a belief as to the truth or falsity
14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that
15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16      79.     Answering paragraph 79 of the Complaint, Mattel states that
17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,
18  including such acts that are lawful in foreign nations, and denies the truth of
19  allegations set forth therein.

20      80.     Answering paragraph 80 of the Complaint, Mattel denies the
21  truth of the allegations set forth therein.

22      81.     Answering paragraph 81 of the Complaint, Mattel admits that
23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and
24  video games industries, admits that to Mattel's knowledge NPD restricts the use of
25  its subscriber information, states that MGA was sued by NPD and states that it is
26  without knowledge or information sufficient to form a belief as to the truth or falsity
27  of the allegations regarding the need of unspecified "toy companies" for NPD
28

EXHIBIT __15__
PAGE **237**

1 | statistics and, on that basis, denies them and denies the truth of any remaining

2 | allegations set forth therein.

3 |       82.   Answering paragraph 82 of the Complaint, Mattel denies the

4 | truth of the allegations set forth therein.

5 |       83.   Answering paragraph 83 of the Complaint, Mattel states that it is

6 | without knowledge or information sufficient to form a belief as to the truth or falsity

7 | of the allegations set forth therein because MGA fails to quantify its annual

8 | subscription fees and, on that basis, denies them.

9 |       84.   Answering paragraph 84 of the Complaint, Mattel states that it is

10 | without knowledge or information sufficient to form a belief as to the truth or falsity

11 | of the allegations set forth therein and, on that basis, denies them.

12 |       85.   Answering paragraph 85 of the Complaint, Mattel states that

13 | MGA was sued by NPD, states that it is without knowledge or information sufficient

14 | to form a belief as to such nature and grounds for such litigation (to which Mattel

15 | was not a party) and, on that basis, denies the allegations relating thereto, and denies

16 | the truth of the remaining allegations set forth therein.

17 |       86.   Answering paragraph 86 of the Complaint, Mattel denies the

18 | truth of the allegations set forth therein.

19 |       87.   Answering paragraph 87 of the Complaint, Mattel admits that the

20 | Children's Advertising Review Unit ("CARU") is the children's arm of the

21 | advertising industry's self-regulation program, states that compliance with CARU's

22 | Privacy Program can provide FTC-approved Safe Harbor under the Children's

23 | Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining

24 | allegations set forth therein.

25 |       88.   Answering paragraph 88 of the Complaint, Mattel admits that it

26 | is one of dozens of CARU Supporters and denies the truth of the remaining

27 | allegations set forth therein.

28 |

EXHIBIT _15_

PAGE _238_

1    89.    Answering paragraph 89 of the Complaint, Mattel denies the
2 truth of the allegations set forth therein.

3    90.    Answering paragraph 90 of the Complaint, Mattel states that it is
4 without knowledge or information sufficient to form a belief as to the truth or falsity
5 of the allegations as to the consequences to MGA of MGA's violations of CARU
6 standards and, on that basis, denies them.

7    91.    Answering paragraph 91 of the Complaint, Mattel states that it is
8 without knowledge or information sufficient to form a belief as to the truth or falsity
9 of the allegations as to the consequences to MGA of MGA's violations of CARU
10 standards and, on that basis, denies them.

11    92.    Answering paragraph 92 of the Complaint, Mattel admits that the
12 Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits
13 that at certain times TIA has given awards called the People's Choice Toy of The
14 Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA
15 and states that it is without knowledge or information sufficient to form a belief as
16 to the truth or falsity of the remaining allegations set forth therein and, on that basis,
17 denies them.

18    93.    Answering paragraph 93 of the Complaint, Mattel states that the
19 allegations set forth therein are vague and ambiguous, including in that they fail to
20 properly identify the years in which the referenced awards were given and/or the
21 particular product which won such awards, and accordingly lacks knowledge or
22 information sufficient to form a belief as to the truth or falsity of the allegations set
23 forth therein and, on that basis, denies them.

24    94.    Answering paragraph 94 of the Complaint, Mattel admits that
25 Neil Freidman was the chairman of TIA from approximately May 2002 to May
26 2004, states that Fischer Price is a division of Mattel and denies the truth of the
27 remaining allegations set forth therein.

28

-20-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__
PAGE __239__

1    95. Answering paragraph 95 of the Complaint, Mattel admits that
2 Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the
3 remaining allegations set forth therein.

4    96. Answering paragraph 96 of the Complaint, Mattel states that it is
5 without knowledge or information sufficient to form a belief as to the truth or falsity
6 of the allegations set forth therein and, on that basis, denies them.

7    97. Answering paragraph 97 of the Complaint, Mattel denies the
8 truth of the allegations set forth therein.

9    98. Answering paragraph 98 of the Complaint, Mattel denies the
10 truth of the allegations set forth therein.

11    99. Answering paragraph 99 of the Complaint, Mattel denies the
12 truth of the allegations set forth therein.

13    100. Answering paragraph 100 of the Complaint, Mattel denies the
14 truth of the allegations set forth therein.

15    101. Answering paragraph 101 of the Complaint, Mattel repeats its
16 responses contained in paragraphs 1 through 100 of this Third Amended Answer
17 and incorporates them by reference as though fully and completely set forth herein.

18    102. Answering paragraph 102 of the Complaint, Mattel denies the
19 truth of the allegations set forth therein and specifically denies that MGA's alleged
20 trade dress is distinctive.

21    103. Answering paragraph 103 of the Complaint, Mattel denies the
22 truth of the allegations set forth therein and specifically denies that MGA's alleged
23 trade dress is distinctive.

24    104. Answering paragraph 104 of the Complaint, Mattel denies the
25 truth of the allegations set forth therein.

26    105. Answering paragraph 105 of the Complaint, Mattel denies the
27 truth of the allegations set forth therein.

28

EXHIBIT _15_

PAGE _240_