1  Patricia L. Glaser, State Bar No. 055668
      pglaser@glaserweil.com
2  Joel N. Klevens, State Bar No. 045446
      jklevens@glaserweil.com
3  GLASER, WEIL, FINK, JACOBS,
      HOWARD & SHAPIRO, LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  310-553-3000
6  Facsimile:   310-556-2920

7  Attorneys for the MGA Parties for Phase 2

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual<br><br>12            Plaintiff,<br><br>13  v.<br><br>14  MATTEL, INC., a Delaware Corporation<br><br>16            Defendant.<br><br>17  ─────────────────────<br><br>18  AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**Hon. Stephen J. Larson**<br><br>**[PUBLIC REDACTED] DECLARATION OF JOHN WOOLARD IN OPPOSITION TO EX PARTE MOTION OF TEMPORARY RECEIVER FOR ORDER (1) APPROVING FINAL ACCOUNT AND REPORT; (2) APPROVING FINAL COMPENSATION TO TEMPORARY RECEIVER AND PROFESSIONALS; (3) DISCHARGING RECEIVER**<br><br>**Phase 2**<br>Discovery Cut-off: December 11, 2009<br>Pre-Trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

680633

## DECLARATION OF JOHN WOOLARD

I, John Woolard, declare as follows:

1. I am currently a senior level consultant at DLC, Inc. ("DLC"). DLC is a national consulting firm that provides senior level financial consultants to fill interim financial roles and perform financial projects for its clients. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ I have personal, firsthand knowledge of the facts stated in this declaration and, if called and sworn as a witness, I could and would competently testify to the facts stated herein.

2. By way of my background, I have been a Certified Public Accountant since May 14, 1994. Prior to joining DLC in 2003, I worked with a number of companies in a variety of roles, including Senior Auditor at Arthur Anderson & Co., Senior Financial Analyst at The Walt Disney Studio, Manager - Joint Venture Finance at Warner Bros., Corporate Controller for New Regency Productions, and CFO of Post Logic Studios. Since joining DLC, I have consulted with a number of large and well-known corporations, acting as an interim senior financial officer and consultant, including: Virgin Entertainment Group (Interim North American

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  Controller of Virgin Megastore chain); DreamWorks SKG (Interim VP - Finance for
2  Home Entertainment Division); and Occidental Petroleum (led financial operations in
3  the Los Angeles office).

4      3.    During the temporary receivership, the Temporary Receiver and his
5  professionals worked on-site at MGA for approximately two weeks between May 5
6  and May 18, 2009. Members of the receivership team who were present at MGA
7  included: (1) the Temporary Receiver; (2) the Temporary Receiver's law partner,
8  Byron Moldo; (3) Tony Shokrai of Interco Management Corp.; (4) Dr. Lynne W.
9  Phillips of Reinventures; (5) Martin Krueger of Kibel Green Inc.; and (6) Bruce Cox
10 Conklin of Kibel Green Inc.

11     4.    Based on my involvement and observations throughout the period of the
12 temporary receivership, at least 90 percent of the time spent by the receivership team
13 was devoted to educating themselves about the operations of MGA. Based on their
14 statements to me, they were most concerned with gathering the information and data
15 for purposes of the Temporary Receiver's report.

16     5.    MGA staff, myself included, complied with their requests and tried to be
17 as helpful as possible given that we understood a permanent receivership could follow
18 and we could be dealing with them for the foreseeable future.

19     6.    Of the receivership team, Mr. Kruger of Kibel Green Inc. spent the most
20 time at MGA. He was on-site almost every day. I personally spent a lot of time
21 educating him about MGA's operations. The other members of the receivership team
22 were in and out on a part-time basis. Dr. Phillips and Mr. Shokrai also spent
23 substantial amounts of time on-site at MGA. Mr. Shokrai's time was primarily
24 devoted to approving and monitoring cash payments, and Dr. Phillips' time was
25 primarily devoted to gathering the marketing and branding information needed for the
26 Temporary Receiver's report.

27     7.    In addition to my time with Mr. Krueger, MGA's interim controller,
28 Steve Schultz (also with DLC) and some of the accounting staff also devoted time to

680633

2

1 educating him about MGA's operations. The areas that required the most
2 explanation, and thus time, were: ███████████████████████████
3 ███████████████████████████████████████████████████████████████
4 █████████████████████████

   8. Since most, if not all, of the time spent by the Temporary Receiver and his professionals was attributable to their gaining familiarity with the business operations, I can discern no value that they bestowed upon MGA and no benefit to MGA as a result of the receivership.

   9. It is also true that the receivership disrupted MGA's business operations. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This was not a positive change from a business perspective, and it required additional work and steps that took away time from other essential tasks.

   10. I further note that much of the receivership team's educational time was duplicative of Mr. Durkin's time. In retrospect, the time that I and others at MGA spent working with the receivership team was of no value to MGA.

   11. MGA paid a total of $1,050,000 ███████████ to the Temporary Receiver. The payment was made in three tranches as follows: (1) $250,000 on May 6; (2) $600,000 on May 12; and (3) $200,000 on May 18. ███
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

   12. ████████████████████████████████████████████████



680633

3

[PUBLIC REDACTED] WOOLARD DECL. IN OPP'N TO
EX PARTE MOT. OF TEMP. REC'R FOR ORDER

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A true and correct copy of my e-mail correspondence with the Temporary Receiver and his law partner on this subject is attached hereto as Exhibit A.

13. I have since been provided with the materials that are publicly available on the Pacer database that pertain to the activities of the Temporary Receiver and his professionals. Those materials are consistent with my personal observation that nearly all of the time of the Temporary Receiver and his professionals was spent gaining familiarity with the business operations of MGA.

14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on this 25 day of June 2009, in Los Angeles, California.

/s/ John Woolard
John Woolard

# EXHIBIT A

**EXHIBIT "A" SUBMITTED UNDER SEAL FOR *IN CAMERA* REVIEW ONLY**