1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California  90067
    Telephone:  (310) 553-3000
4   Facsimile:  (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for The MGA Parties

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

                       EASTERN DIVISION
14

| | |
|---|---|
| 15  CARTER BRYANT, an individual, | CASE NO.  CV 04-9049 SGL (RNBx) |
| 16          Plaintiff, | Consolidated with |
| 17          v. | Case No.  CV 04-09059<br>Case No.  CV 05-02727 |
| 18  MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master**<br>**Robert O'Brien Pursuant To Order Of**<br>**January 6, 2009]** |
| 19          Defendant. | |
| 20  AND CONSOLIDATED CASES | **ISAAC LARIAN'S OPPOSITION TO**<br>**MATTEL, INC.'S MOTION TO**<br>**COMPEL RESPONSES TO FIRST**<br>**SET OF INTERROGATORIES**<br>**(PHASE 2)** |
| 21 | |
| 22 | [DECLARATION OF DANIEL M.<br>HAYES FILED CONCURRENTLY] |
| 23 | |
| 24 | Date:    TBD<br>Time:    TBD<br>Place:    TBD |
| 25 | Phase 2<br>Discovery Cutoff:    December 11, 2009 |
| 26 | Pretrial Conference:  March 1, 2010<br>Trial Date:    March 23, 2010 |

27

Mitchell       28
Silberberg &
Knupp LLP

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     THE INTERROGATORIES AND DEFINITIONS ..................................... 5

III.    MATTEL'S MOTION TO COMPEL SHOULD BE DENIED ................. 10

    A.   Standards For A Motion To Compel Discovery .............................. 10

    B.   Counsel For Mattel Failed To Meet And Confer In Good Faith ........................................................................................... 11

    C.   The Interrogatories Are Vague, Ambiguous, And Unintelligible ................................................................................ 15

    D.   The Interrogatories Are Overbroad And Seek Information That Is Not Relevant To Any Party's Claims Or Defenses .................................................................................. 16

        1.   The Interrogatories Seek Information That Is Not Relevant To Establishing Larian's Net Worth, And To The Extent That They Arguably Do, They Are Cumulative And Improper ...................................... 16

        2.   The Interrogatories Seek Information That Is Not Relevant To Mattel's New Fraudulent Transfer And Money Laundering Claims .............................. 18

        3.   The Interrogatories Seek Information That Is Not Relevant To Mattel's Unfair Competition Claim ............ 20

    E.   The Interrogatories Are Unduly Burdensome, Oppressive, And Harassing ................................................................................ 21

    F.   The Interrogatories Are Compound ............................................... 22

IV.    CONCLUSION .................................................................................. 24

Mitchell Silberberg & Knupp LLP

2281006.4

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Collaboration Properties, Inc. v. Polycom, Inc.*,
224 F.R.D. 473 (N.D. Cal. 2004) ................................................................ 23

*Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*,
216 F.R.D. 533 (M.D. Fla. 2003) ............................................................... 11

*Denny v. Barber*,
73 F.R.D. 6 (S.D.N.Y 1977) ...................................................................... 20

*Finkelstein v. Guardian Life Insurance Co.*,
2008 WL 2095786 (N.D. Cal. 2008) .......................................................... 15

*In re Sharp International Corp.*,
403 F. 3d 43 (2d Cir. 2005) ....................................................................... 19

*Industrial Electric Engineering and Testing Company v. Dynalectric Company*,
1990 WL 80411 (D. Kan. 1990) ................................................................ 17

*McFarland v. Memorex Corp.*,
493 F. Supp. 631 (N.D. Cal. 1980) ....................................................... 19, 20

*Mid-America Facilities, Inc. v. Argonaut Ins. Co.*,
78 F.R.D. 497 (E.D. Wisc. 1978) .............................................................. 17

*Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburg*,
2005 WL 318811 (N.D. Cal. January 5, 2005) ............................................ 24

*Robin Singh Educational Services, Inc. v. Excel Test Prep*,
2004 WL 2554454 (N.D. Cal. 2004) .......................................................... 15

*Safeco of America v. Rawsrton*,
181 F.R.D. 441 (C.D. Cal. 1998) ............................................................... 22

*Swackhammer v. Sprint Corp. PCS*,
225 F.R.D. 658 (D. Kan. 2004) ............................................................. 23, 24

*Webster Motor Car Company v. Packard Motor Car Company*,
16 F.R.D. 350 (D.D.C. 1954) .................................................................... 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Wing v. Challenge Machinery Company,*
    23 F.R.D. 669 (S.D. Ill. 1959) ............................................................. 21, 22


# OTHER AUTHORITIES

7 *Moore's Federal Practice*, § 33.30[2] (Matthew Bender 3d ed.) ...................... 22

Fed. R. Civ. Proc.
    9(b) ...................................................................................................... 19

Fed. R. Civ. Proc. 26(b)(2)(C)(i) ...................................................... 17

Fed. R. Civ. Proc. 26(b)(2)(C)(iii) ............................................... 17, 22

Fed. R. Civ. Proc. 33(a)(1) ......................................................... 22, 24

Fed. R. Civ. Proc. 37(a) ................................................................ 10

Fed. R. Civ. Proc. 37(a) .................................................................. 3

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

## I.     INTRODUCTION

Mattel egregiously mischaracterizes Interrogatory Nos. 1 and 2 of its First Set of Phase 2 Interrogatories to Isaac Larian (the "Interrogatories").  It does so by divorcing the Interrogatories from the lengthy, convoluted, and in many respects unintelligible definitions that accompany them.  Using this sleight of hand, Mattel claims that the Interrogatories seek only "information relating to Larian's and ***his*** trusts' ownership interests in business entities since 2005," Motion at 1:4-6 (emphasis added) and the identity of "the entities in which Larian and ***his*** trusts have held ***significant*** ownership interests since 2005."  Motion at 3:18-19 (emphasis added).  Not so.

In actuality, these sweeping, confusing, and downright harassing discovery requests are not limited to "significant ownership interests," nor are they limited to Mr. Larian and "his" trusts (whatever that means).  Instead, they demand information about ***every*** "ownership interest" held at any time since 2005, whether actual or "contingent, inchoate, potential or otherwise," in every conceivable form of business enterprise, including every purchase of a publicly traded stock in excess of $1,000, and regardless of whether or when that stock (or other "ownership interest") has since been sold.  Moreover, the Interrogatories seek such information not just for Isaac Larian and "his" trusts, but also for ***at least*** the following other persons and entities: (1) Mr. Larian's wife, (2) a trust established by Mr. Larian's wife; and (3) every trust of which ***any*** of Mr. Larian's relatives by blood or marriage is a beneficiary – no matter how distant the relative, and irrespective of whether that relative ever had any involvement with MGA or whether Mr. Larian ever had any interest in such trust.  But the Interrogatories do not stop there.  ***In addition*** to asking about actual, potential, contingent, inchoate and other "ownership interests" held by any of the foregoing persons and entities at any time during the past 4 1/2 years, the Interrogatories also demand the same

Mitchell Silberberg & Knupp LLP

2281006.4

1

1   information about "ownership interests" held *either* by (1) every beneficiary,

2   trustee, attorney, agent, representative, accountant, vendor, consultant, or

3   "PERSON"[1] "acting on behalf of" or "subject to the authority" of (a) four

4   specifically identified trusts, (b) any trust of which Mr. Larian is a trustee, and

5   (c) any trust of which any member of Mr. Larian's family by blood or marriage –

6   no matter how distant – is a beneficiary, *or* by (2) every trust of which any member

7   of Mr. Larian's family by blood or marriage – again, no matter how distant – ever

8   was, or now is, a trustee, beneficiary, attorney, agent, representative, accountant,

9   vendor, consultant, or PERSON acting on behalf or subject to such trust's authority

10  and control.  Since Mattel's counsel have flatly refused to clarify any of Mattel's

11  incomprehensible definitions, it is impossible for Larian to know which of the

12  aforementioned alternatives is the intended one.  In either event however, the

13  Interrogatories sweep far broader than the issues in this case even arguably

14  warrant, yet Mattel's counsel have adamantly refused to narrow the Interrogatories

15  in any way.

16         Mattel's Motion should be denied for at least the following reasons.

17         First, the Interrogatories are not properly tailored to seek relevant

18  information.  Mattel's relevance arguments are simply conclusory assertions that

19  do not withstand scrutiny.  Mattel contends that "Larian's ownership interests are

20  unquestionably a part of his net worth" (Motion at 5:2-3), but it fails to explain

21  how the "ownership interests" of a trust of which some distant cousin-by-marriage

22  is a beneficiary, or the "ownership interests" of a vendor to a trust of which

23

24

25

26

27

28

---

[1] "PERSON" is defined as "all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

Mr. Larian is a trustee, is in any way probative of Mr. Larian's net worth.[2] Seemingly recognizing that its net worth argument is reed-thin at best, Mattel claims – for the first time in the Motion – that the Interrogatories are relevant to its newly minted Fraudulent Transfer and money laundering allegations – allegations made in a pleading (the Third Amended Counterclaims ("TAC")) that was not even on file when Mattel propounded the Interrogatories or when Larian responded to them, and that Mattel never raised when it was going through its charade of meeting and conferring with Larian's counsel.  As with its net worth arguments, however, Mattel simply *says* that the Interrogatories are relevant to these claims, but does not explain why.  That is hardly surprising.  The Interrogatories do not ask about "ownership interests" acquired with MGA assets, which is the *sine qua non* of Mattel's money laundering theory.  The Interrogatories are not limited to "trusts" that used or received MGA assets, or even to "trusts" in which Larian himself has or had an interest.  Indeed, it strains creative lawyering past the breaking point for Mattel to contend that a purchase by Larian of $2,000 worth of publicly traded stock in 2005 – two years before Mattel had even sued him or MGA – is probative of a "complex scheme to transfer the ill-gotten funds … and … cover up and obscure such activities."  Motion at 3:8-10.

Mattel's Motion also should be denied because Mattel's counsel failed to meet and confer in good faith, in flagrant violation of Rule 37(a) of the Federal Rules of Civil Procedure and the Discovery Master Order in this case.  The Discovery Master thus far has refused to deny any of Mattel's torrent of discovery motions on this ground, thereby cementing Mattel's belief that it need only give a

---

[2] Apparently in the belief that its mere *ipse dixit* is an acceptable substitute for logic, Mattel makes the remarkable statement that "the $1,000 interest threshold [for publicly traded stock] is necessary to capture relevant information about net worth."  Motion at 7:3-4.  But Mattel does not, because it cannot, explain why a $2,000 purchase and sale of a publicly traded stock in 2005 sheds light on Mr. Larian's net worth 4 1/2 years later.

1   perfunctory nod to the meet and confer process.  Enough is enough.  If Mattel and

2   its counsel are allowed to continue to flout their obligation to meet and confer in

3   good faith, then the Discovery Master might as well eliminate the meet and confer

4   requirement altogether, as its only purpose is to add the additional attorneys fees

5   attendant to meaningless communications on top of the already enormous fees the

6   MGA Parties are forced to incur in opposing Mattel's motions and paying half of

7   the Discovery Master's fees in connection therewith.

8       Here, counsel for Larian attempted in good faith to obtain clarification about

9   what the Interrogatories were seeking, and to discuss reasonable limitations on the

10  Interrogatories.  Those efforts were completely rejected.  Mattel's counsel flatly

11  refused to clarify the Interrogatories, simply reading back *verbatim* the

12  incomprehensible definitions that Larian's counsel had said they did not

13  understand.  Mattel's counsel were equally adamant in refusing to narrow the

14  Interrogatories in any way whatsoever, even though they were unable to explain,

15  for example, how Larian's $2,000 purchase of a publicly traded stock in 2005, and

16  his sale of that stock one week later, was relevant to any issue in this case.  *See*

17  Declaration of Daniel M. Hayes ("Hayes Decl.") ¶ 9.  If the Discovery Master does

18  not deny Mattel's Motion outright for ignoring the good faith component of its

19  duty to meet and confer, then Mattel's Motion must stand or fall based on its

20  position that the Interrogatories, as drafted, are entirely proper.  It is not the role of

21  the Discovery Master, nor should it be, to rewrite the Interrogatories by parsing

22  through the definitions and teasing out some combination of information included

23  therein that might arguably be relevant to some issue in the case.

24      Finally, Mattel's request that Larian's objections be overruled is utterly

25  without merit, and should be denied.  As discussed in more detail below, Mattel's

26  confusing, overlapping and compound definitions render the Interrogatories

27  virtually incomprehensible, and thus the objection on the grounds of vagueness and

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

ambiguity is more than well-taken.  All of the other objections that Mattel challenges – that the Interrogatories are overbroad, unduly burdensome, and impermissibly compound – are equally valid and should be sustained.

## II.    THE INTERROGATORIES AND DEFINITIONS

On March 4, 2009, Mattel served its first set of interrogatories to Isaac Larian (Phase 2).  <u>INTERROGATORY NO. 1</u> reads as follows:

> IDENTIFY each and every ENTITY in which LARIAN[3]
> has held, directly or indirectly, any OWNERSHIP
> INTEREST at any time since January 1, 2005.  For
> purpose of this Interrogatory, transactions involving the
> purchase or acquisition of publicly traded stock in an
> amount of $1,000 or less may be excluded.

Hayes Decl. ¶ 3, Ex. 2.

<u>INTERROGATORY NO. 2</u> reads as follows:

> IDENTIFY each and every ENTITY in which any
> LARIAN TRUST has held, directly or indirectly, any
> OWNERSHIP INTEREST at any time since January 1,
> 2005.  For purpose of this Interrogatory, transactions
> involving the purchase or acquisition of publicly traded
> stock in an amount of $1,000 or less may be excluded.

*Id*.

Although these Interrogatories, read in a vacuum, appear simple, one must follow a trail of lengthy, complicated, overlapping, ambiguous, and in some respects unintelligible definitions in order to grasp what they actually request.

---

[3] "LARIAN" is defined to mean ***both*** Isaac Larian and his wife Angela Larian.  *See* Hayes Decl. ¶ 3, Ex. 2.  Angela Larian is not a party to this action.  Nowhere in its Motion does Mattel even try to explain why it should be permitted to gather information about Angela Larian's separate investments.

1  With one exception, Mattel's Memorandum of Points and Authorities conveniently

2  omits the Definitions, and the single Definition it does quote ("LARIAN TRUST")

3  is incomplete, because it fails to set forth the definition of another term

4  ("PERSON") that is included within the definition of "LARIAN TRUST."  *See*

5  Motion at 8-9.

6      The Interrogatories define "LARIAN TRUST" as follows:

7          "LARIAN TRUST" means the Isaac and Angela Larian

8          Trust, Isaac Larian Grantor Annuity Trust, Angela Larian

9          Grantor Annuity Trust, Larian Family Trust and any

10         other trust of which Isaac Larian is a trustee or of which

11         any member of Isaac Larian's family, whether by blood

12         or marriage, is a beneficiary, the current or former

13         trustees, beneficiaries, attorneys, agents, representatives,

14         accountants, vendors, consultants or any other PERSON

15         acting on its behalf, [sic] subject to its authority and

16         control.

17 Hayes Decl. ¶3, Ex. 2.  It is unclear from this definition whether the portion that

18 begins "the current or former trustees, beneficiaries…" and ends with

19 "consultants" is intended to modify "any member of Isaac Larian's family," or is

20 intended to modify the various trusts described.  It is also impossible to determine

21 what is meant by the phrase "or any other PERSON acting on its behalf, subject to

22 its authority and control," because the word "it" has no antecedent, and use of the

23 word "it" in the definition is grammatically and logically unintelligible.

24     Further, to interpret the meaning of "LARIAN TRUST," one also must look

25 to the definition of "PERSON," since "PERSON" is part of the definition of

26 "LARIAN TRUST."

27     The Interrogatories define "PERSON" as follows:

Mitchell Silberberg & Knupp LLP

28

2281006.4

6

1    "PERSON" or "PERSONS" means all natural persons,

2    partnerships, corporations, joint ventures and any kind of

3    business, legal or public entity or organization, as well as

4    its, his or her agents, representatives, employees, officers

5    and directors and any one else acting on its, his or her

6    behalf, pursuant to its, his or her authority or subject to

7    its, his or her control.

8    *Id*. Thus, for example, if the words "the current or former trustees, attorneys,

9    agents, representatives, accountants, vendors, consultants or any other PERSON

10   acting on its behalf," are intended to modify the various types of trusts described,

11   then the definition of "LARIAN TRUST" includes (among ***many*** others)

12   employees, attorneys, accountants, consultants and vendors of any trusts of which

13   any relative of Mr. Larian by blood or marriage is a beneficiary – no matter how

14   distant the relationship between Mr. Larian and the relative, and regardless of

15   whether such distant relative ever had any involvement with MGA or Bratz – ***as***

16   ***well as*** every agent, or person acting on behalf of the employees, attorneys,

17   accountants, consultants and vendors of the distant-relative-beneficiary's trust.

18   "LARIAN TRUST" also conceivably includes, for example, a paralegal working

19   on trust matters in the office of an attorney for a trust of which a distant relative by

20   marriage of Mr. Larian's is a beneficiary, because if the word "it" refers to such a

21   trust, the clause "PERSON acting on its behalf" would sweep such a paralegal

22   within the definition of "LARIAN TRUST."  Examples of such absurdities

23   abound, yet Mattel and its counsel refused to clarify the definition of "LARIAN

24   TRUST" or limit it in any way.

25        Assuming Larian can identify who or what falls within the definition of

26   "LARIAN TRUST," he is then required to "IDENTIFY" every "ENTITY" in

27   which each such "who or what" has an "OWNERSHIP INTEREST."  This, in turn,

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

7

requires reference to three additional definitions, one of which ("OWNERSHIP INTEREST") requires reference back to the defined terms "ENTITY" and "PERSON."

The Interrogatories define "OWNERSHIP INTEREST" as follows:

> "OWNERSHIP INTEREST" means any right, title or interest of any kind, whether legal, beneficial, past, present, future, contingent, inchoate, potential or otherwise, and includes without limitation any right, title, interest or power that a PERSON possesses or may possess, directly or indirectly, from any contract, arrangement, understanding, relationship or otherwise, to direct, control, dictate or vote on the actions or potential or proposed actions of an ENTITY, and includes without limitation securities, stock, shares, warrants, options, membership interests, partnership interests, voting interests, equity interests, simple ownership, debt or other non-security obligations that may be convertible to equity or other interests and any right, interest; [sic] or any right, title, interest, power, title, agreement or understanding to receive, directly or indirectly, distributions of value from an ENTITY.

*Id*. Among other problems with this convoluted and seemingly open-ended ("without limitation") definition is the language "may possess," which creates the unanswerable question of how one is to distinguish between a right, title, interest or power that a person "possesses," and a right, title, interest or power that a person "may" possess.

The Interrogatories define "ENTITY" as follows:

1             "ENTITY" means any and all business enterprises of any

2             kind, including without limitation any and all

3             partnerships, corporations, companies and joint ventures,

4             trusts, associations, limited liability companies or sole

5             proprietorships.

6  *Id.* Finally, the Interrogatories define "IDENTIFY" as follows:

7             "IDENTIFY" or "IDENTITY" [sic] means to state, fully

8             and separately as to each ENTITY, such ENTITY's full

9             name; taxpayer identification number or other

10            governmental identifying number of [sic] the ENTITY is

11            not registered in the United States; state or country of

12            creation, incorporation or organization or registration; the

13            date of incorporation, organization, creation and/or

14            registration; the type of ownership interest that YOU

15            hold or did hold; the percentage of YOUR ownership in

16            each ENTITY; the date(s) on which YOU held such

17            ownership interest; each title or position that YOU have

18            had with each such ENTITY, if any, and the date(s) on

19            which YOU held such title or position; the current

20            address of each entity; the present or last known

21            telephone number of each entity; and the name and

22            current address of each such ENTITY's agent(s) for

23            service of process or, if not such agent has been

24            designated, the then name, current address and current

25            telephone number of each officer, director, managing

26            agent and general agent of such ENTITY.

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

9

*Id.* Although the definition of "IDENTIFY" includes the capitalized term "YOUR," there is no definition of "YOUR." Necessarily, therefore, "YOUR" must be a reference to Mr. Larian himself, since the Interrogatories are directed to him. This leads to the following result, by way of example: If a distant relative by marriage of Mr. Larian's is a beneficiary of a trust in which Mr. Larian has and had no involvement whatsoever, and that trust purchased $10,000 of General Electric Stock in 2005, Mr. Larian must state whether he, individually, ***ever*** owned stock in General Electric, what percentage of that enormous public company his stockholdings represented, the name, address and telephone number of every General Electric officer and director, and the like. Obviously, such information is not even arguably relevant to any issue in this case, yet Mattel rejected Mr. Larian's request that it consider limiting the vast sweep of these Interrogatories or in some way clarifying them.

### III.   MATTEL'S MOTION TO COMPEL SHOULD BE DENIED

#### A.   <u>Standards For A Motion To Compel Discovery</u>

To prevail on its Motion to Compel, Mattel must satisfy both procedural and substantive burdens. It has satisfied neither.

First, a party filing a motion to compel discovery must "meet and confer" ***in good faith***. Fed. R. Civ. Proc. 37(a) (emphasis added). As discussed hereafter, Mattel not only failed to meet and confer in good faith, but it is now moving to compel based on arguments its counsel never raised with Mr. Larian's counsel as support for its position, and that are based on a pleading that was not even on file when Mattel propounded the Interrogatories – or when Mr. Larian served his responses. It thus appears that the TAC was filed to justify the discovery sought, not that the Interrogatories were propounded in aid of the TAC.

Second, as a substantive matter, Mattel, as the moving party, bears the burden of "establishing that the information sought is relevant and necessary to its

1   lawsuit." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D.

2   533, 534 (M.D. Fla. 2003); *see also* Ex. 9 to Zeller Decl.: Order No. 3 at 14:21-25

3   (*quoting Cytodyne Technologies, Inc.*).  Mattel's conclusory arguments about the

4   putative relevance of the Interrogatories are not sufficient to meet its burden.

5        **B.    Counsel For Mattel Failed To Meet And Confer In Good Faith**

6            Preliminarily, Mattel has failed to comply with the procedural prerequisite to

7   its Motion, i.e. a good faith attempt to resolve the matter informally.  Mattel's

8   Motion to Compel was a foregone conclusion.  Throughout its perfunctory meet

9   and confer communications, Mattel refused to limit or even explain either

10  Interrogatory.  Instead, as it has done in its Motion, Mattel simply pronounced, in

11  conclusory fashion, that the information sought by the Interrogatories is relevant,

12  and that the definitions are clear.  Hayes Decl. ¶¶ 9, 12.  The details of the parties'

13  communication are set forth in the accompanying declaration of Daniel M. Hayes.

14  Briefly:

15          On April 15, 2009, Jon Corey of Quinn Emanuel Urquhart Oliver & Hedges,

16  LLP ("Quinn Emanuel"), one of Mattel's lawyers, requested a meet and confer

17  conference concerning the objections to Mattel's Interrogatories that Larian had

18  timely served 12 days earlier.  Hayes Decl. ¶ 4, Ex. 3; ¶ 5, Ex. 4.

19          On April 17, 2009, Daniel M. Hayes of MSK, wrote to accept Mr. Corey's

20  invitation to meet and confer, noting that "[w]e are willing to provide information

21  consistent with the Discovery Master Orders, but the Interrogatories (to the extent

22  we understand them) are not confined to such matters."  Hayes Decl. ¶ 6, Ex. 5.

23  (Mattel carefully omits this letter from the exhibits in support of its Motion.)

24  Mr. Hayes also observed that Mr. Corey had claimed in his April 15 letter "that

25  Mattel 'recently discovered that Larian has been transferring assets from MGA by

26  using single-purpose companies' to purchase Bratz products," and he asked Mr.

27  Corey to "[p]lease identify these 'single-purpose companies' before our call next

Mitchell
Silberberg &
Knupp LLP

28

2281006.4

**11**

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

week, since we cannot have a meaningful discussion unless we know what companies you are referring to." *Id*.  Despite having claimed to have made this "recent discovery," neither Mr. Corey nor anyone else on behalf of Mattel ever responded to Mr. Hayes' inquiry, nor is there any mention of this putative discovery in Mattel's Motion.[4]

On April 21, 2009, Mr. Hayes and Richard Sheldon of MSK had a telephone conference with Tamar Buchakjian of Quinn Emanuel regarding the Interrogatories.  Hayes Decl. ¶ 7.  When Mr. Hayes asked Ms. Buchakjian to state in clear, plain terms what information Mattel was seeking in the Interrogatories, so that both parties could at least agree on that, her only response was to read back the definitions, *verbatim*.  *Id*.  When Mr. Hayes asked Ms. Buchakjian to clarify Mattel's definition of "LARIAN TRUST," Ms. Buchakjian replied that she could not clarify it beyond what was in the definition.  *Id*.  Parroting back language one has just been told is confusing, with no effort to further explain it, is not meeting and conferring at all, let alone in good faith.

When Mr. Hayes asked why the vast amount of information apparently sought by the Interrogatories was relevant, Ms. Buchakjian replied that the Interrogatories sought information relevant to determining Larian's net worth. Hayes Decl. ¶ 8.  Mr. Hayes then asked Ms. Buchakjian whether she thought that a

---

[4] Showing a remarkable talent for misstating the facts, Mattel asserts in a footnote that "[d]uring the meet and confer process, Larian demanded that *Mattel* identify the 'single purpose companies' other than IGWT that purchased Bratz from MGA at an extreme discount.  This, however, is precisely the type of information that Mattel seeks to obtain through the Interrogatories; only Larian, not Mattel can provide it."  Motion at 4, fn. 22.  What Mattel fails to disclose, however, is that it was *Mattel*, not Larian (emphasis in original), that claimed to have knowledge of some single purpose entities other than IGWT that supposedly were being used to transfer MGA assets.  Larian had (and has) no knowledge of any such conduct, and his counsel therefore asked Mr. Corey to explain what he was talking about.  The fact that Mattel's counsel never responded to that question strongly suggests that the assertion in Mr. Corey's April 15 letter was pure fabrication – just like the "information and belief" allegations of financial impropriety that Mattel alleges in its TAC.

2005 transaction in which Larian bought $2000 worth of publicly traded stock and sold it a week later needed to be identified in response to Interrogatory No. 1. Hayes Decl. ¶ 9.  Ms. Buchakjian said yes.  *Id*.  But despite Mr. Hayes' prodding, Ms. Buchakjian did not (presumably, because she could not) explain how such information would shed light on Mr. Larian's net worth at trial.  *Id*.

During the April 21 conversation, Mr. Sheldon and Mr. Hayes proposed that the parties consider limiting the definition of "LARIAN TRUST" and the temporal scope of both Interrogatories, and raising the "more than $1000" threshold in each Interrogatory.  Hayes Decl. ¶ 10.  The parties agreed to consult with their respective clients about such limitations and to speak further in another call.

That second call took place on April 23, 2009.  Mr. Hayes again asked Ms. Buchakjian whether she would provide a more intelligible definition of "LARIAN TRUST" and a plain English statement of what information was covered by the Interrogatories.  Hayes Decl. ¶ 12.  Ms. Buchakjian refused to do so.  *Id*.  In an effort to demonstrate how confusing the definition of "LARIAN TRUST" is, Mr. Hayes asked Ms. Buchakjian to explain who would be a person subject to the control of any trust of which one of Larian's relatives by blood or marriage was a "vendor."  Hayes Decl. ¶ 13.  Ms. Buchakjian could not provide an answer.  *Id*.  She also stated that her client was not willing to narrow the scope of the Interrogatories in any way.  Hayes Decl. ¶ 14.

On April 23, 2009, in a letter following the call, Mr. Hayes made his fourth request that Ms. Buchakjian "(1) clarify the interrogatories as I requested in my April 22 letter to you, and (2) engage in meaningful, good faith efforts to narrow your client's interrogatories."  Hayes Decl. ¶ 15, Ex. 7.  Ms. Buchakjian did not respond.

On April 29, 2009, Ms. Buchakjian wrote to Mr. Sheldon that "Mattel has no alternative but to move to compel."  Hayes Decl. ¶ 16, Ex. 8.  On May 1, 2009,

1   Mr. Hayes reiterated to Ms. Buchakjian that Mr. Larian was "willing to respond

2   substantively to interrogatories that are appropriately limited in terms of scope and

3   subject matter," and asked Ms. Buchakjian to let him know if she was prepared to

4   "discuss limiting the interrogatories." Hayes Decl. ¶ 17, Ex. 9. Mr. Hayes did not

5   receive a response to his May 1, 2009 letter. On Friday, June 19, 2009, Mattel

6   filed its Motion without any further meet and confer efforts. Hayes Decl. ¶ 18.

7        It is not meeting and conferring at all, let alone with the requisite good faith,

8   to flatly refuse to explain language an opposing counsel has said he does not

9   understand, to flatly refuse to place any limitations whatsoever on discovery

10  requests that are so sweeping as to encompass clearly irrelevant matter, or to file

11  motions to compel based on arguments never raised or discussed with opposing

12  counsel. Too many lawyers, from too many firms, have expressed under oath their

13  frustration at the perfunctory nature of Mattel's supposed "meeting and

14  conferring." Meeting and conferring in good faith means more than just having a

15  phone call and saying "no," unless there is some legitimate reason for that "no."

16  There is no legitimate reason here. At a minimum, Mattel could have, and should

17  have, made *some* attempt to clarify the definitions that govern the Interrogatories.

18  Likewise, Mattel could have, and should have, at least agreed to limit the

19  Interrogatories so as to exclude some of the more obviously irrelevant information

20  (*e.g.,* defining a "Larian Trust" as either a "lawyer or vendor," or as a trust to

21  which a distant relative by marriage is a lawyer or vendor, depending on how the

22  ambiguous language of "LARIAN TRUST" is interpreted. *See* discussion in

23  Section II, *supra*).

24       At some point, the Discovery Master must require Mattel to do more than

25  give lip service to its meet and confer obligation. The only way to do so is to deny

26  this Motion unless and until Mattel engages in a meaningful attempt to resolve this

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

1    discovery dispute through the meet and confer process.  Otherwise, there is no

2    reason to have a meet and confer requirement.

3        **C.    The Interrogatories Are Vague, Ambiguous, And Unintelligible**

4        Mattel refused to clarify what information it seeks in the Interrogatories,

5    instead simply parroting back the convoluted definitions, *verbatim*, without further

6    explanation.  Mattel does not do any better in the Motion.  For instance, Mattel

7    simply quotes the definition of "LARIAN TRUST," and then pronounces, "[t]here

8    is nothing vague and ambiguous about this definition[.]"  Motion to Compel at

9    8:17-9:5.  But saying this does not make it true.

10       Indeed, the proverbial proof is in the pudding.  Mattel's own counsel could

11   not explain what entities would be covered by "LARIAN TRUST."  Hayes Decl.

12   ¶ 13.  Nor could she explain what was meant by the language that defines

13   "OWNERSHIP INTEREST" as including "any right, title, interest or power that a

14   PERSON possesses *or may possess*, directly *or indirectly*, from any contract,

15   arrangement, understanding, relationship *or otherwise*."  Hayes Decl. ¶ 17, Ex. 9

16   (emphasis added).  Larian is not required to guess what the Interrogatories mean.

17   *See Webster Motor Car Company v. Packard Motor Car Company*, 16 F.R.D. 350,

18   351 (D.D.C. 1954) ("an interrogatory must be specific in order that it need not be

19   necessary for the party that is being examined to exercise discretion or judgment in

20   determining what is intended to be covered by the interrogatory").

21       It is not the Court's (or Discovery Master's) duty to rewrite interrogatories.

22   *See Finkelstein v. Guardian Life Insurance Co.*, 2008 WL 2095786, *2 (N.D. Cal.

23   2008) (court would "not rewrite plaintiff's overbroad discovery request," stating

24   that "Rule 26 does not require the Court to rewrite discovery requests for the

25   parties.") (*quoting Robin Singh Educational Services, Inc. v. Excel Test Prep*, 2004

26   WL 2554454, *1 (N.D. Cal. 2004).  Since Mattel's Interrogatories are ambiguous

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

15

1    at best, and since Mattel has refused to revise them in any way, Mattel's Motion

2    must be denied.

3    **D.**    **The Interrogatories Are Overbroad And Seek Information That**

4    **Is Not Relevant To Any Party's Claims Or Defenses**

5    Mattel contends that the Interrogatories are relevant to the newly alleged

6    Fraudulent Transfer and money laundering claims in its TAC, and to the issue of

7    Mr. Larian's net worth. But none of Mattel's conclusory arguments explains why

8    this is so. The absence of explanation is telling.

9    **1.**    **The Interrogatories Seek Information That Is Not Relevant**

10    **To Establishing Larian's Net Worth, And To The Extent**

11    **That They Arguably Do, They Are Cumulative And**

12    **Improper**

13    Mattel makes the bald pronouncement that "Larian's ownership interests are

14    unquestionably a part of his net worth." Motion at 5:2-3. While that statement

15    may be partially true, the Interrogatories are not limited to Larian's ownership

16    interests, let alone to interests that he currently holds.

17    Mattel fails to explain how it is probative of Mr. Larian's net worth to know,

18    for example, (1) the "ownership interests" of a trust of which a distant relative is a

19    beneficiary, but in which Mr. Larian has no interest whatsoever, (2) the "ownership

20    interests" of an attorney who works for, or a vendor who sells to, a trust in which

21    Mr. Larian does or does not have an interest, or (3) Mr. Larian's purchase of

22    $2,000 worth of publicly traded stock in 2005, which he sold one week later. But

23    this is precisely the type of information the Interrogatories demand. For Mattel to

24    argue that these interrogatories are "properly tailored to ascertain Larian's

25    interests" (Motion at 4:18) is ludicrous.

26    Further, even assuming "net worth" is a proper topic for discovery

27    propounded more than a year before the scheduled trial date, the Interrogatories are

Mitchell
Silberberg &
Knupp LLP

28

2281006.4

16

not limited to current "ownership interests."  Courts consistently refuse to order years worth of financial discovery, where the purpose of the discovery is to establish net worth.  *See, e.g., Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497, 498-99 (E.D. Wisc. 1978) (objection to requests for documents involving defendant's financial status for a seven-year period was sustained when plaintiff needed to know only defendant's current financial status for purposes of its punitive damages claim); *Industrial Electric Engineering and Testing Company v. Dynalectric Company*, 1990 WL 80411, *1 (D. Kan. 1990) (denying discovery request for several years of financial discovery, stating request is "excessively broad, and calls for much material that does not appear to the court to be relevant to the punitive damages sought to be recovered").  Answering Mattel's sweeping Interrogatories would impose the significant burden of searching for and identifying utterly irrelevant transactions that would not shed any light at all on Larian's net worth today.  The Motion must therefore be denied.  *See* Fed. R. Civ. Proc. 26(b)(2)(C)(iii).

Moreover, even assuming (without conceding) that some information relevant to Larian's current net worth is buried among the mountain of minutae sought by these Interrogatories, "the court must limit the frequency or extent of discovery otherwise allowed…if it determines that [] the discovery sought is unreasonably cumulative or duplicative[.]"  Fed. R. Civ. Proc. 26(b)(2)(C)(i).  In Order No. 11, the Discovery Master allowed discovery of documents sufficient to identify Larian's net worth, reasoning that such information relates to Phase 2 damages issues.[5]  However, the Discovery Master specifically stated that ***"Larian should not be required to provide updated information concerning his net worth and gross income every few months***."  Ex. 10 to Zeller Decl.: Amended Order

---

[5] Larian objected to such "net worth" discovery then, and maintains that all such discovery is inappropriate.  However, the Interrogatories go well beyond even what was permitted in Order No. 11.

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

No. 11 at n.6 (emphasis added).  Pursuant to Order No. 11, Larian was required to supplement his 2008 responses to discovery about his net worth, and to produce documents "sufficient to calculate [his] net worth," documents sufficient to identify every account at any bank or financial institution that he (broadly defined) had ever had, or in which he ever had an interest, and documents sufficient to establish his gross income and the sources of same.  *See* Ex. 10 to Zeller Decl.: Amended Order No. 11 at 3:7.  Less than three months after having obtained Order No. 11, the insatiable Mattel is back at the well.  Further discovery focused on Larian's net worth is cumulative of the discovery already allowed by Order No. 11, and contravenes the Discovery Master's admonition that Larian should not be forced to provide net worth discovery every few months.

### 2. The Interrogatories Seek Information That Is Not Relevant To Mattel's New Fraudulent Transfer And Money Laundering Claims

In conclusory terms (again), Mattel argues that the Interrogatories are relevant to its new fraudulent transfer and money laundering allegations (Motion at 3:17-4:4) because the Interrogatories supposedly seek "to determine to [sic] where MGA assets have been fraudulently transferred; to ascertain the financial transactions in which Larian has engaged with property derived from unlawful conduct; to assess how Larian has laundered and concealed his ill-gotten gains; and to enable Mattel to track the money Larian has siphoned from MGA."  Motion at 3:19-4:4.  But Mattel does not even attempt to explain ***how*** the information requested by the Interrogatories will enable such "determinations" and "assessments."  The Interrogatories do ***not*** tie the information requested to any use or receipt of MGA assets, nor are they limited to information about Mr. Larian or trusts he controls.  Instead, the Interrogatories demand the identification of every stock market transaction or other "ownership interest" in any public or private

1   entity since 2005 on the part of a host of persons and entities **other than** Larian,

2   regardless of whether those persons or entities had anything whatsoever to do with

3   MGA or any assets of MGA.  Likewise, the Interrogatories demand information

4   about Mr. Larian's "ownership interests" regardless of the source of funds used to

5   acquire those interests, and regardless of the time of acquisition.[6]  In short, these

6   Interrogatories are **not** designed to elicit information about "fraudulent transfers of

7   MGA assets" or about the use of proceeds from some unspecified "unlawful

8   conduct."[7]  They are designed to enable Mattel to aim its discovery artillery at any

9   person, firm or entity that may have had some tenuous connection to Isaac Larian.

10          In considering the propriety of these Interrogatories, it also is important to

11  remember that allegations of fraudulent transfer must be pleaded with specificity

12  under Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g., In re Sharp*

13  *International Corp.*, 403 F. 3d 43, 56 (2d Cir. 2005).  This specificity requirement

14  is "designed to discourage this 'sue first, ask questions later' philosophy."

15  *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980) (internal

16  citations and quotations omitted).  But "sue first ask questions later" is exactly

17  what Mattel is attempting to do here.  In its new fraudulent transfer claim, Mattel

18  has not specifically alleged any fraudulent transfer other than the alleged transfer

19  of Bratz inventory to the IGWT Group.  The Interrogatories have nothing to do

20  with the alleged transfer of Bratz inventory from MGA to the IGWT Group.

21

22

23  [6] As discussed above, the use of the term YOU in the definition of IDENTIFY,
    coupled with the definition of LARIAN TRUST, removes any time limit for
24  certain information required to be provided.

25  [7] It is simply preposterous for Mattel to contend that information about a $2,000
    stock market purchase by a vendor to a trust of which some distant relative of
26  Mr. Larian's is a beneficiary, and in which Mr. Larian has no involvement or
    interest, will shed light on Mr. Larian's financial transactions **at all**, let alone his
27  supposed transactions involving property "derived" from some unidentified
    "unlawful conduct."

Mitchell
Silberberg &
Knupp LLP
28

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

1    "Complaints should not be conceived merely as tokens, guaranteeing access

2    to a world of discovery."  *Denny v. Barber*, 73 F.R.D. 6, 10 (S.D.N.Y 1977).  *See*

3    *also McFarland*, 493 F. Supp. at 636-37 (in a case where allegations based on

4    "information and belief," noting that the "'detail following discovery' rationale has

5    been firmly rejected by the courts").  Indeed, Mattel's objective in filing its TAC

6    seems to have been to manufacture a basis for its harassing discovery.  In Order

7    No. 3, the Discovery Master denied Mattel's motion to compel certain financial

8    discovery because "Mattel's allegations in support of its RICO counterclaim turn

9    on misappropriation of trade secrets and confidential information, and make no

10   mention of improper transfers of funds or any other predicate act similar to MGA's

11   purported business transactions with any of the Financing Entities….Mattel has not

12   alleged any sort of financial scheme which would support inquiry into the MGA

13   Parties' financial transactions with third parties."   Ex. 9 to Zeller Decl.: Order No.

14   3 at 17:1-4; n.16.  Presumably in response to this defeat, Mattel simply included in

15   the TAC, on "information and belief," new allegations about improper transfers of

16   funds, that it now relies on those "information and belief" allegations as support

17   for its argument that it should have unfettered access to the sweeping discovery it

18   now seeks.

19          **3.      The Interrogatories Seek Information That Is Not Relevant**

20                 **To Mattel's Unfair Competition Claim**

21          Mattel contends that the Interrogatories are relevant to its unfair competition

22   claim, citing Discovery Master Order No. 3.  Motion at 4:7-19.  Order No. 3 does

23   not justify the blunderbuss discovery requests here at issue.

24          Preliminarily, in Order No. 3, the Discovery Master appears to have

25   misunderstood the timing of certain events and the content of the Court's

26   Constructive Trust Order.  The Discovery Master allowed certain discovery

27   pertaining to two specific entities ("IGWT") that had purchased Bratz inventory

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

20

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

from MGA, reasoning that the December 3, 2008 Constructive Trust Order "imposes a constructive trust on the proceeds of MGA's sale of the subject inventory [of Bratz products], and therefore MGA's sale of that inventory to Larian "would constitute an unlawful attempt to circumvent the Court's order and arguably render the transaction …an anti-competitive business practice…" *See* Ex. 9 to Zeller Decl.: Order No. 3 at 27:14-19.  There are at least two flaws in this analysis, of which Mattel is fully aware, but about which its Motion remains silent.  First, the sale of Bratz inventory to IGWT took place in July 2008, some 5 months **before** the Court issued its December 3, 2008 Constructive Trust Order.  Second, the Court's Constructive Trust Order did **not** impose a constructive trust over the proceeds of the sale of Bratz products; it imposed a constructive trust only over trade marks, service marks and domain names.  *See* Hayes Decl. ¶ 2, Ex. 1.

In any event, however, Order No. 3 authorized discovery only of the ownership interests, if any, held by a specific and limited group of people in two specific entities that had purchased Bratz inventory in supposed violation of a Court order.  The discovery compelled by Order No. 3 in no way is analogous to a demand for every "ownership interest" in any publicly or privately owned entity, held by any host of persons and entities, during a 4 1/2 year period, irrespective of whether the holder ever received or used MGA assets to acquire such an "ownership interest," and regardless of whether the holder of the interest had or has any relationship whatsoever with MGA or Bratz.

## E.    The Interrogatories Are Unduly Burdensome, Oppressive, And Harassing

Where, as here, interrogatories are so ambiguous that they become burdensome, an objection on that basis should be sustained.  *See Wing v. Challenge Machinery Company*, 23 F.R.D. 669, 673 (S.D. Ill. 1959) (sustaining objection where interrogatories "are of such broad nature, so ambiguous and so

1    wanting in specificity that the same are burdensome and oppressive"). The

2    Interrogatories here at issue fall squarely within that category. Hence, Larian's

3    objection is entirely proper.

4         Further, "the court must limit the frequency or extent of discovery otherwise

5    allowed by these rules or by local rule if it determines that [] the burden or expense

6    of the proposed discovery outweighs its likely benefit, considering the needs of the

7    case, the amount in controversy, the parties' resources, the importance of the issues

8    at stake in the action, and the importance of the discovery in resolving the issues."

9    Fed. R. Civ. Proc. 26(b)(2)(C)(iii). In this case, the burden clearly outweighs the

10   virtually nonexistent benefit to be gained by the Interrogatories. As discussed

11   above, the Interrogatories are grossly overbroad, and seek information that is not

12   relevant. The vague and incomprehensible nature of the Interrogatories only

13   increases the burden. *See Wing*, 23 F.R.D. at 673, *supra*. Mattel's Motion to

14   overrule Larian's objection should be denied for this additional reason.

15        **F.    The Interrogatories Are Compound**

16        A party may not serve more than 25 written interrogatories, "including all

17   discrete subparts." Fed. R. Civ. Proc. 33(a)(1). "When a subpart introduces a line

18   of inquiry that is separate and distinct from the inquiry made by the portion of the

19   interrogatory that precedes it, the subpart must be considered a separate

20   interrogatory no matter how it is designated." 7 *Moore's Federal Practice*,

21   § 33.30[2] (Matthew Bender 3d ed.). By seeking the separate stock exchange

22   purchases and other "ownership interests" of Larian, his wife, attorneys, vendors,

23   accountants, consultants, and an indeterminate number of other persons and trusts

24   that might fall within the convoluted definition for "LARIAN TRUST," Mattel has

25   crammed innumerable discrete questions into two interrogatories. *See Safeco of*

26   *America v. Rawsrton*, 181 F.R.D. 441, 446 (C.D. Cal. 1998) (denying motion to

27   compel in part and ruling that interrogatories that asked for the basis for a denial of

Mitchell
Silberberg &
Knupp LLP

28

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

1   each request for admission comprising a set of requests for admissions contained a

2   separate subpart for each request for admission); *Collaboration Properties, Inc. v.*

3   *Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) (denying motion to compel

4   and ruling that interrogatories asking for information about 26 different products

5   contained 26 different discrete subparts).  The compound nature of the

6   Interrogatories created by the definitions of LARIAN and LARIAN TRUST is

7   further exacerbated by the independently compound definition of "IDENTIFY,"

8   which requires numerous and discrete categories of information about **both** the

9   ENTITY in which an interest has been acquired (*e.g.* name, taxpayer information,

10  place and date of creation, address, telephone number, agent for service of process,

11  addresses and telephone numbers of every officer, director and managing agent)

12  **and** about the details of any interest Larian may ever have had in such entity (*e.g.*

13  type of ownership interest he did or does hold, dates on which he held such an

14  interest, any title or position he ever had, percentage of ownership interest).

15      The cases cited by Mattel do not support its position that the Interrogatories

16  are not compound.  In *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658 (D.

17  Kan. 2004), the Court considered an interrogatory which asked the responding

18  party to identify executives who had been disciplined but not terminated for certain

19  separately listed actions.  *Swackhammer*, 225 F.R.D. at 663.  After reciting the

20  standard that "an interrogatory containing subparts directed at eliciting details

21  concerning a 'common theme' should generally be considered a single question[,]"

22  but that "an interrogatory which contains subparts that inquire into discrete areas

23  should, in most cases, be counted as more than one interrogatory," the Court went

24  on to rule that the subparts in the interrogatory at issue **should be counted as**

25  **separate interrogatories**:  "Turning to the disputed Fourth Interrogatory No. 8, the

26  Court finds that it contains five subparts that are not related to a common theme,

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

1  and that it should therefore be counted as five separate interrogatories."

2  *Swackhammer*, 225 F.R.D. at 665.

3       In *Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburg*, 2005

4  WL 318811 (N.D. Cal. January 5, 2005), an unreported decision, the Court found a

5  compound objection was not well-taken where the interrogatory at issue asked "the

6  same question regarding a ***common group of people***."  *Pacific Lumber Co.*, 2005

7  WL 318811 at *7 (emphasis added).  The "common group of people" consisted of

8  plaintiffs in a lawsuit.  *Id*.  Distinct remote trusts and each of their respective

9  "current or former trustees, beneficiaries, attorneys, agents, representatives,

10  accountants, vendors, consultants or any other PERSON acting on its behalf,

11  subject to its authority and control," (including natural persons and other entities),

12  to the extent they can be ascertained at all, do not constitute a "common group of

13  people."

14       To allow Mattel to jam numerous, discrete, and unrelated persons and

15  entities into a single, sweeping definition and then call that definition a "common

16  theme," violates the letter and the spirit of Rule 33(a)(1).  Larian's objection to the

17  Interrogatories is proper, and Mattel's Motion to overrule it must be denied.

18  **IV.   CONCLUSION**

19       For all of the foregoing reasons, Larian respectfully requests that the

20  Discovery Master deny Mattel's Motion in its entirety.

21

22  DATED: June 26, 2009          RUSSELL J. FRACKMAN
                                  PATRICIA H. BENSON
23                                MITCHELL SILBERBERG & KNUPP LLP

24

25                                By: /s/ Patricia H. Benson

26                                    Patricia H. Benson
                                      Attorneys for The MGA Parties

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4