1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3            EASTERN DIVISION

4              - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6              - - -

7  MATTEL, INC.,                    )
                                    )
8                    Plaintiff,     )
                                    )
9           vs.                     )  No. CV 04-09049
                                    )
10  MGA ENTERTAINMENT, inc., et. Al.,  )
                                    )
11                   Defendants.    )  Trial Day 28,
    _____)  Morning Session
12  AND CONSOLIDATED ACTIONS,        )  Pages 5643-5675
    _____)

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            **REDACTED**

17          Riverside, California

18         Friday, July 25, 2008

19             10:53 A.M.

20

21

22

23       THERESA A. LANZA, RPR, CSR
         Federal Official Court Reporter
24        3470 12th Street, Rm. 134
         Riverside, California  92501
25            951-274-0844
          WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2

     On behalf of MATTEL, INC.:
 3
                        QUINN EMANUEL
 4                      By:  JOHN QUINN
                             JON COREY
 5                           MICHAEL T. ZELLER
                        865 S. FIGUEROA STREET,
 6                      10TH FLOOR
                        LOS ANGELES, California  90017
 7                      213-624-7707

 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                        BY:  THOMAS J. NOLAN
12                           LAUREN AGUIAR
                             Raoul kennedy
13                           David hansen
                        300 SOUTH GRAND AVENUE
14                      LOS ANGELES, CALIFORNIA  90071-3144
                        213-687-5000
15

16

17

18

19

20

21

22

23

24

25
```

JULY 25, 2008              **REDACTED TRANSCRIPT**              Morning Session

1                              i N D E X

2                                                      Page

3    Proceedings...................................    5646

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        RIVERSIDE, CALIFORNIA; FRIDAY, JULY 25, 2008; 10:53 A.M.

 2                              -oOo-

 3        THE CLERK:  CALLING CASE NUMBER CV04-09049-SGL,

 4   MATTEL, INC., V. MGA, INC., ET AL.

 5        MR. QUINN:  JOHN QUINN, BILL PRICE, MIKE ZELLER FOR      10:53

 6   MATTEL.

 7        MR. NOLAN:  TOM NOLAN, LAUREN AGUIAR, RAOUL KENNEDY,

 8   AND DAVID HANSEN FOR MGA.

 9        THE COURT:  GOOD MORNING, COUNSEL.

10        THE COURT WANTS TO BEGIN BY PLACING ON THE RECORD        10:54

11   WHAT HAS BEEN GOING ON THIS MORNING, AND THEN I WILL PRESENT

12   THE COURT'S TENTATIVE FACTUAL FINDINGS.  I'LL BE INVITING

13   COUNSEL THE OPPORTUNITY TO MAKE ANY ARGUMENT OR REQUEST THE

14   COURT TO MAKE ANY FURTHER FACTUAL INQUIRIES.  THEN I'LL MAKE A

15   FINAL DECISION ON THIS.                                       10:54

16        THIS BEGAN THIS MORNING WHEN THE COURT RECEIVED THE

17   FOLLOWING NOTE FROM A JUROR, JUROR NUMBER 6:

18        "HEY, JUDGE LARSON, THERE IS AN ISSUE THAT CONCERNS

19   ME THAT I'D LIKE TO TALK TO YOU ABOUT.  THE THING IS, I DON'T

20   FEEL COMFORTABLE TALKING ABOUT IT IN FULL COURT.  COULD I SPEAK  10:55

21   WITH YOU AT SIDE-BAR WITH THE LAWYERS AND COURT REPORTER

22   PRESENT?  OTHERWISE, I'LL KEEP THIS TO MYSELF.  THANKS, PAUL,

23   NUMBER 6."

24        THE COURT INVITED COUNSEL TO CHAMBERS TO REVIEW THE

25   NOTE.  WE THEN BROUGHT THE JUROR IN AND DISCUSSED THE NOTE WITH  10:55
```

5647

1  THE JUROR, WITHOUT GETTING INTO THE DETAILS OR THE SUBSTANCE OF

2  THE CONCERN.

3          COUNSEL FOR ALL PARTIES STIPULATED THAT THE COURT

4  SHOULD INTERVIEW JUROR NUMBER 6 BY ITSELF AND THEN GO FROM

5  THERE.  THE COURT DID FULLY INTERVIEW JUROR NUMBER 6 CONCERNING      10:56

6  THIS MATTER.  BASED ON THE STATEMENTS THAT JUROR NUMBER 6 MADE,

7  THE COURT ULTIMATELY FOUND THAT IT WAS NECESSARY TO INTERVIEW

8  EACH AND EVERY ONE OF THE JURORS SEPARATELY, AND THAT'S WHAT

9  THE COURT HAS BEEN DOING OVER THE LAST COUPLE OF HOURS, IS

10 INTERVIEWING EACH OF THE JURORS SEPARATELY IN CHAMBERS ON THE       10:56

11 RECORD BUT UNDER SEAL.

12         ALL OF THOSE PROCEEDINGS, BEGINNING FROM THE TIME

13 THAT COUNSEL CAME INTO CHAMBERS UNTIL NOW, ARE ORDERED UNDER

14 SEAL PENDING FURTHER ORDER OF THIS COURT.

15         BASED ON THE COURT'S INTERVIEW OF EACH OF THE JURORS,       10:56

16 BOTH IN THEIR TESTIMONY, THEIR DEMEANOR, AND THEIR MANNER IN

17 ADDRESSING THE COURT, THE COURT MAKES THE FOLLOWING TENTATIVE

18 FACTUAL FINDINGS:

19         JUROR NUMBER 8, MS. ██████████████, MADE AN

20 INAPPROPRIATE STATEMENT CONCERNING MR. LARIAN BASED ON HIS          10:57

21 ETHNICITY.  THE STATEMENT WAS HEARD BY MOST BUT NOT ALL OF THE

22 JURORS.  THE FOREPERSON AND SEVERAL OF THE OTHER JURORS

23 IMMEDIATELY ADMONISHED MS. ████████ FOR MAKING THIS

24 STATEMENT, INDICATING THAT IT WAS INAPPROPRIATE AND IT HAD NO

25 PLACE IN THE JURY DELIBERATION PROCESS.                             10:57

1        THE STATEMENT WAS MADE TOWARDS THE VERY END OF

2   DELIBERATIONS, AFTER VERDICTS HAD BEEN REACHED ON ALL BUT THE

3   FOUR QUESTIONS UPON WHICH THE JURY NEVER ULTIMATELY DID REACH A

4   VERDICT.  EACH JUROR INDICATED, AND THE COURT FINDS, THAT THE

5   STATEMENT DID NOT AFFECT OR IN ANY WAY INFLUENCE THEIR          10:58

6   DECISION.

7        THE JURORS APPEARED TO THE COURT MOST SINCERE AND

8   MOVED BY THIS.  THIS WAS CERTAINLY AN EMOTIONAL THING.  THERE

9   WAS A REAL SENSE FROM A GOOD NUMBER OF THE JURORS THAT THIS WAS

10  AN OUTRAGEOUS STATEMENT, TO THE POINT THAT SEVERAL OF THE       10:58

11  JURORS REACTED QUITE EMOTIONALLY.  AND, IN FACT, THIS EXPLAINS

12  JUROR NUMBER 10'S NOTE.  SHE EXPRESSLY INDICATED THAT HER NOTE

13  TO THE COURT, INDICATING THE PAIN AND WHAT SHE WAS GOING

14  THROUGH, IS CONNECTED TO THIS STATEMENT.

15       A NUMBER OF THE JURORS REQUESTED REMOVAL OF             10:58

16  MS. ███████, OR ENCOURAGED THE COURT TO DO SO, AND ALL OF

17  THE JURORS INDICATED THAT HER REMOVAL, THIS INCIDENT, THIS

18  STATEMENT, WILL HAVE NO AFFECT OR INFLUENCE ON THEIR DECISION

19  GOING FORWARD.  IN FACT, ONE OF THE JURORS EXPRESSED A CONCERN

20  THAT AS LONG AS MS. ██████ STAYED ON THE JURY, SHE THOUGHT    10:59

21  THAT SHE WOULD BE PERHAPS BENDING IN FAVOR OF MGA AND

22  MR. LARIAN TO TRY TO COMPENSATE FOR HER CONCERNS ABOUT HOW

23  MS. ██████ MIGHT BE VIEWING MGA AND MR. LARIAN; BUT WITH

24  HER REMOVAL, SHE BELIEVES THAT WOULD NOT BE AN ISSUE AND THAT

25  SHE COULD BE A FAIR JUROR.                                    10:59

1          THIS IS AN EXTRAORDINARILY UNFORTUNATE DEVELOPMENT,

2     BUT THOSE ARE MY FINDINGS BASED ON MY INTERVIEWS WITH EACH OF

3     THESE JURORS.

4          AT PRESENT, NINE OF THE JURORS ARE IN THE JURY

5     DELIBERATION ROOM ON THIS FLOOR.  MS. ██████████ IS IN A          11:00

6     SEPARATE ROOM.  SHE HAS BEEN SEPARATED FROM THE REST OF THE

7     JURY.  ALL OF THE JURORS HAVE BEEN INSTRUCTED NOT TO DISCUSS

8     THIS AMONGST THEMSELVES PRESENTLY OR AT ANY TIME, AND I'LL

9     CERTAINLY REEMPHASIZE, ANY TIME GOING FORWARD.

10          THAT'S WHERE WE ARE AS OF RIGHT NOW.          11:00

11          SO I AM OPEN TO ARGUMENT.  I AM OPEN TO A REQUEST FOR

12     FURTHER INQUIRY.  I AM OPEN TO ANY MOTION.  I AM OPEN TO ANY

13     SUGGESTION AS TO HOW WE PROCEED FROM THIS POINT.

14          **MR. NOLAN:**  YOUR HONOR, MAY I PROCEED FIRST?

15          **THE COURT:**  YES.          11:00

16          **MR. NOLAN:**  YOUR HONOR, FIRST ON BEHALF OF MR. LARIAN

17     AND HIS FAMILY AND MGA, WE APPRECIATE THE TIME THAT THE COURT

18     TOOK IN INTERVIEWING THE VARIOUS JURORS REGARDING THIS VERY

19     SENSITIVE MATTER.

20          I THINK TODAY WE HAVE WITNESSED BOTH THE BEST AND THE          11:01

21     WORST ABOUT INDIVIDUAL BIASES.  I THINK THE COURAGE OF ONE OF

22     THE JURORS TO BRING THIS TO THE ATTENTION OF THE COURT IS A

23     TESTAMENT TO WHAT THE AMERICAN SYSTEM IS TRULY ABOUT AND THE

24     COMMITMENT TO JUSTICE.

25          WHAT I WOULD SUGGEST, YOUR HONOR, IS THAT WE WILL BE          11:01

5650

```
 1   MAKING A MOTION FOR A MISTRIAL.  I HAVE OBVIOUSLY ONLY HAD A
 2   MINUTE OR TWO TO PROCESS MY THOUGHTS.  THE BASIS FOR THAT IS
 3   THAT, OF COURSE, IN THE BEGINNING OF THIS CASE, DURING VOIR
 4   DIRE, I SPECIFICALLY ASKED THE PANEL, THE ENTIRE PANEL, WHETHER
 5   OR NOT THEY THOUGHT THEY COULD RENDER A FAIR AND IMPARTIAL          11:02
 6   VERDICT, NOTWITHSTANDING THE FACT THAT I REPRESENTED A
 7   GENTLEMAN WHO CAME TO THIS COUNTRY AS AN IMMIGRANT, BECAME A
 8   CITIZEN, HAD ALL OF HIS CHILDREN BORN IN THE UNITED STATES, AND
 9   BUILT A SUCCESSFUL COMPANY.
10          THE JURY AGREED, BY NOT DESCENDING TO THAT COMMENT,        11:02
11   THAT THEY COULD HONOR THEIR DUTY AND THEIR OATH.
12          WE ARE IN THE FEDERAL SYSTEM, AND EACH PARTY IN THE
13   FEDERAL SYSTEM IS ENTITLED TO A UNANIMOUS VERDICT, A UNANIMOUS
14   VERDICT FOUNDED ON THE PRINCIPLES OF WEIGHING THE EVIDENCE,
15   ASSESSING THE CREDIBILITY OF WITNESSES, SEPARATE AND APART FROM   11:03
16   BIAS.  A JURY INSTRUCTION IS ACTUALLY GIVEN TO THEM IN ADVANCE
17   OF THE DELIBERATIONS, ADVISING THEM THAT THERE SHOULD BE NO
18   BIAS THAT ENTERS INTO DELIBERATIONS.  IT IS CLEAR FROM THE
19   RECORD AND THE FINDINGS FROM THE COURT THAT ONE JUROR DID NOT
20   FOLLOW THE COURT'S RULING.                                        11:03
21          THE TIMING OF THE COMMENT THAT WAS MADE -- IN OTHER
22   WORDS, THE FACT THAT IT MAY NOT HAVE BEEN MADE UNTIL SUCH TIME
23   AS A VERDICT HAD BEEN REACHED ON ALL OF THE -- THAT IT HAD BEEN
24   MENTIONED ONLY AFTER VERDICTS HAD BEEN RENDERED ON ALL OF THE
25   ISSUES OTHER THAN FOUR DRAWINGS, I DON'T THINK IS OF ANY          11:04
```

1  MOMENT, BECAUSE IT WAS AN OPPORTUNITY FOR JUROR NUMBER 8 TO

2  APPARENTLY EXPRESS OPENLY A BIAS THAT SHE HAD.

3          THIS CASE HAS BEEN ONE THAT I THINK THIS COURT HAS

4  FOUGHT MIGHTILY TO KEEP FAIR.  I WAS STRUCK IN THE BEGINNING OF

5  THE CASE -- THE COURT MAY RECALL TWO INCIDENTS THAT OCCURRED IN          11:04

6  THE BEGINNING OF THE JURY PROCESS THAT I THINK INFLUENCES THIS

7  ISSUE.  ONE WAS THAT MR. LARIAN'S RABBI WAS PRESENT DURING THE

8  JURY VOIR DIRE, AND ONE OF THE PROSPECTIVE JURY MEMBERS WROTE A

9  NOTE TO THE COURT INDICATING THAT THEY THOUGHT IT WAS

10  INAPPROPRIATE FOR THE RABBI TO BE WEARING A RELIGIOUS YAMIKA ON          11:05

11  HIS HEAD.  THE RABBI LEFT AFTER THAT NOTE, IT WAS SO DISTURBING

12  TO MR. LARIAN AND TO THE RABBI.

13          IT WAS EQUALLY DISTURBING THAT THE OTHER JUROR MADE

14  THE COMMENT TO THE COURT -- AND I CAN SHOW YOU THE TRANSCRIPT

15  -- THAT 'I NOTICE THAT THAT IRREGULARITY HAS BEEN TAKEN CARE          11:05

16  OF,' AS THOUGH YOU YOURSELF HAD ORDERED THE RABBI TO TAKE OFF

17  HIS RELIGIOUS HAT, IN WHICH YOU HAD NOT.

18          NOT RELIGIOUS HAT, I'M SORRY, THE YAMIKA.

19          THERE HAS BEEN A TENSION IN THIS CASE.  IT HAS ALWAYS

20  BEEN A CONCERN OF OURS.  I RAISED THAT WITH THE COURT AT THAT          11:05

21  TIME, AND THE COURT, I THOUGHT, HANDLED THAT, AGAIN, EQUALLY

22  APPROPRIATE.  THERE WAS AN INCIDENT WHERE A PROSPECTIVE JUROR

23  LOOKED INTO AND PULLED OUT OF A BOX OUTSIDE A PLEADING THAT WAS

24  A COURTESY COPY FOR THE COURT, AND THE COURT EXCUSED THAT

25  JUROR, DID NOT CHARGE HIM WITH ANY WRONGDOING, JUST SAID THAT          11:06

JULY 25, 2008            **REDACTED TRANSCRIPT**            Morning Session

```
 1   THAT WAS INAPPROPRIATE AND THAT HE SHOULDN'T DO THAT, AND

 2   EXCUSED HIM.

 3            THIS COMING BACK NOW, YOUR HONOR, OUR MISTRIAL MOTION

 4   IS SIMPLY STATED AS FOLLOWS:

 5            EVERY CITIZEN, EVERY PERSON, THAT COMES THROUGH THESE   11:06

 6   DOORS IS ENTITLED TO A FAIR TRIAL, TO BE JUDGED ON THE MERITS,

 7   NOT BY ONE'S BIASES.  AND THE FACT THAT A JUROR MAKES A COMMENT

 8   IN A CASE OF THIS IMPORTANCE, ON SUCH A VERY SENSITIVE ISSUE,

 9   THAT IS NOT ONLY SENSITIVE TO THIS CASE, BUT GOES TO THE HEART

10   OF THE AMERICAN JUSTICE SYSTEM, LEADS ME TO CONCLUDE THAT WE     11:07

11   DID NOT HAVE A UNANIMOUS VERDICT OF A FAIR AND IMPARTIAL JURY.

12            AND IF I COULD, YOUR HONOR, YOU MIGHT SAY, OR SOMEONE

13   MIGHT SAY, OR THE WEIGHT OF THE EVIDENCE MIGHT BE, 'WELL, GEE,

14   NINE OTHER GOOD CITIZENS ARE WILLING TO SAY NOW THAT THAT

15   DIDN'T AFFECT THEM.'                                            11:07

16            BUT I REMIND THE COURT THAT THERE IS A VERY FAMOUS

17   MOVIE -- I GUESS IT WAS A PLAY FIRST -- WHERE HENRY FONDA

18   STARRED IN IT, 12 ANGRY MEN; AND THE JURY PROCESS THERE WAS

19   ALSO UNANIMOUS.  AND IT STARTED OFF WITH A LOT OF PEOPLE HAVING

20   VIEWS, AND ONE JUROR HAD THE STRENGTH OF CONVICTION, NOT        11:07

21   LABORED BY BIAS OR PREJUDICE OF RACE OR ETHNICITY OR RELIGIOUS

22   PERSUASION, AND THEY PERSUADED THE OTHER ELEVEN.  THAT'S THE

23   BENEFIT OF HAVING A UNANIMOUS VERDICT.  THAT'S THE BENEFIT OF

24   HAVING EACH JUROR GOING IN THERE WITH THE SHOT, THE ABILITY, TO

25   INFLUENCE OTHER JURORS TO SEE IT A DIFFERENT WAY.  AND WE DID   11:08
```

 1    NOT HAVE THAT ABILITY.  THERE WAS A JUROR WHO HAD A HIDDEN

 2    BIAS, WHO COULD HAVE EASILY DISCLOSED THAT.

 3           I'M STRUCK WITH A DIFFICULT DECISION, YOUR HONOR, AND

 4    THAT IS THAT I REPRESENT A MAN WHO'S VERY CLOSE TO HIS FAMILY,

 5    AND HE DRAWS A LOT OF SUPPORT FROM HIS FAMILY.  AND HIS FAMILY          11:08

 6    HAS BEEN HERE EVERY DAY.  IF THAT FAMILY WAS OF MY OWN

 7    HERITAGE, IRISH CATHOLIC, AND I HAD ALL MY COUSINS AND MY

 8    UNCLES HERE, THEY WOULD NOT STAND DOWN.

 9           I'VE EXPRESSED A CONCERN ABOUT HAVING MR. LARIAN'S

10    FAMILY SUPPORT HERE, THAT MAYBE THERE WAS A BIAS ON THE JURY.          11:09

11    BUT I DECIDED, AS A LAWYER WHO HAS COMMITTED HIS ENTIRE CAREER

12    TO TRYING CASES, THAT THE SYSTEM IS BETTER THAN THAT.  AND YET,

13    NOW, YOUR HONOR, I KNOW THAT THERE WAS A JUROR WHO WAS BIASED.

14           THE AMERICAN SYSTEM REQUIRES MORE.  AND I WOULD ASK

15    THAT AT A MINIMUM, WE NOT PRESENT ADDITIONAL EVIDENCE TODAY, IF        11:09

16    THE COURT FEELS IT IS UNABLE TO MAKE A DECISION.  I DON'T HAVE

17    A CASE -- I APOLOGIZE -- I DON'T HAVE A CASE IN MY BACK POCKET

18    ON THIS.  I'M ACTUALLY DELIVERING THIS ONE FROM MY HEART AND

19    BASED ON MY UNDERSTANDING OF THE CONSTITUTION OF A FAIR TRIAL.

20           I THINK WE SHOULD HEAR, OBVIOUSLY, ARGUMENT FROM               11:10

21    MATTEL.  BUT THIS IS A VERY SERIOUS, VERY SOBERING, IN MANY

22    WAYS A VERY SAD MOMENT, IN THE SYSTEM, BUT ALSO A GOOD MOMENT.

23           I ASK THE COURT FOR A MISTRIAL ON BEHALF OF MGA AND

24    MR. LARIAN.

25           **THE COURT:**  THANK YOU, COUNSEL.                            11:10

1          MR. QUINN?

2          **MR. QUINN:**  YOUR HONOR, IT IS A SAD MOMENT, AND

3    CLEARLY, THIS JUROR SHOULD BE EXCUSED, MATTEL AGREES WITH THAT.

4    BUT UNDER OUR UNDERSTANDING OF THE NINTH CIRCUIT LAW, YOUR

5    HONOR, THERE'S NO BASIS HERE FOR A MISTRIAL.                    11:11

6          THE COURT'S INQUIRY YIELDED ANSWERS FROM THE JURORS,

7    INDICATING THAT THE COMMENT MADE HAD NO AFFECT ON THE

8    DELIBERATIONS.  IF ANYTHING, IT SOUNDS LIKE THESE JURORS, THE

9    OTHER JURORS, RECOGNIZED THE UTTER INAPPROPRIATENESS OF THE

10   COMMENT THAT WAS MADE.  THE FOREPERSON POINTED THAT OUT.  THE   11:11

11   JUROR WHO HAD COME IN AND CALLED THIS TO THE COURT'S ATTENTION

12   IN THE FIRST PLACE REBUKED THE JUROR WHO HAD MADE THE COMMENT.

13   FAR FROM INDICATING THAT THIS SOMEHOW TAINTED THE

14   DELIBERATIONS -- WHICH I SUBMIT, UNDER THE LAW, NINTH CIRCUIT

15   LAW, THERE HAS TO BE A SHOWING THIS AFFECTED THE               11:11

16   DELIBERATIONS -- WE SIMPLY DON'T HAVE THAT HERE.

17         ON THE CONTRARY, THE STATEMENTS APPARENTLY INDICATE

18   THAT, IF ANYTHING, THIS PREJUDICED MATTEL, THAT CAUSED PEOPLE

19   TO THINK IN THEIR MINDS, 'WELL, MAYBE I NEED TO' -- RIGHT

20   THINKING PEOPLE, THINKING, 'SOMEHOW I NEED TO COUNTERBALANCE    11:12

21   THAT AND PERHAPS HEAR THINGS IN A WAY MORE FAVORABLY TO MGA AND

22   MR. LARIAN.'

23         THIS IS NOT A SITUATION WHERE WE'RE REQUIRED TO HAVE,

24   GOING FORWARD, A UNANIMOUS VERDICT OF TEN JURORS.  AS THE COURT

25   KNOWS, WE ONLY NEED SIX JURORS.  WE HAVE EXTRA JURORS.  SO I    11:12

1    DON'T THINK THERE'S ANY BASIS HERE FOR A MISTRIAL, YOUR HONOR.

2          **THE COURT:**  JUST TO BE CLEAR, THE COURT'S INDICATION

3    WAS NOT THAT THERE WAS NO AFFECT ON THE DELIBERATIONS.  MY

4    FINDING WAS THAT THERE WAS NO AFFECT ON THE VERDICT OR THE

5    DECISION OF THE JURORS.                                         11:12

6          IT CLEARLY HAD AN AFFECT ON THE DELIBERATIONS, AND TO

7    THE EXTENT THAT, AT LEAST WITH TWO OF THE JURORS -- WELL, A

8    NUMBER OF THEM REACTED VERY EMOTIONALLY TO THIS -- YOU KNOW,

9    THIS IS NOT GOING TO BE REFLECTED ON THE COLD TRANSCRIPT, IF

10   THE COURT UNSEALS IT, BUT TWO OF THE JURORS ACTUALLY BROKE DOWN  11:13

11   IN CHAMBERS BECAUSE THEY WERE SO OUTRAGED AT WHAT HAD BEEN

12   SAID, THAT THAT STATEMENT HAD BEEN MADE.

13         **MR. QUINN:**  NO AFFECT ON THE OUTCOME.  AND I GATHER,

14   FROM WHAT THE COURT HAS SAID, THAT THIS COMMENT WAS MADE AFTER

15   ALL OF THE VERDICTS HAD BEEN REACHED THAT THIS JURY COULD       11:13

16   REACH.

17         **THE COURT:**  BASED ON MY READING AND THE ANSWERS TO

18   ALL OF THE QUESTIONS, IT WAS CLEAR TO THE COURT -- AND THAT'S

19   WHY I MADE THE TENTATIVE FINDING THAT I DID -- THAT THE

20   STATEMENT WAS MADE TOWARDS THE END OF DELIBERATIONS, WHEN THEY   11:13

21   WERE DOWN TO THOSE LAST FOUR DRAWINGS OVER WHICH THEY

22   ULTIMATELY DEADLOCKED.

23         THE CONCERN THAT I HAVE WAS WELL ARTICULATED BY

24   MR. NOLAN.  IT'S THIS SENSE OF -- I REALLY CAN'T BELIEVE THAT

25   WE'RE HERE AT THIS POINT AND WE HAVE THIS ISSUE IN FRONT OF US,  11:14

1    THAT A JUROR, IN THIS DAY AND AGE, WOULD GO THROUGH THE VOIR

2    DIRE PROCESS THAT WE WENT THROUGH AND THEN HARBOR AND MAKE SUCH

3    A STATEMENT, HARBOR SUCH A FEELING AND THEN MAKE SUCH A

4    STATEMENT.

5            WHAT I THINK THE COURT NEEDS TO DO, THOUGH, IS GIVE        11:14

6    BOTH COUNSEL THE OPPORTUNITY TO EXAMINE THE LAW AND PRESENT TO

7    THE COURT HOW THE NINTH CIRCUIT DEALS WITH THIS.  THIS IS THE

8    FIRST TIME I'VE BEEN PRESENTED WITH THIS PARTICULAR TYPE OF

9    ISSUE, SO I NEED TO EDUCATE MYSELF AS A MATTER OF LAW, AND I

10   TRUST COUNSEL WILL ASSIST IN THAT PROCESS.                        11:15

11           SO I THINK I WILL ACCEPT MR. NOLAN'S INVITATION TO

12   NOT PROCEED WITH TESTIMONY TODAY, BUT TO BRIEF THIS ISSUE GOING

13   FORWARD AND MAKE A DECISION.  I JUST DON'T KNOW.

14           THE AMOUNT OF RESOURCES THAT HAVE BEEN DEVOTED BY

15   BOTH SIDES INTO THIS CASE, IT'S HUGE.  BUT AT THE SAME TIME, NO   11:15

16   AMOUNT OF RESOURCES CAN SUBSTITUTE FOR ENSURING THAT WE HAVE A

17   FAIR AND JUST TRIAL.  I'M EXTRAORDINARILY DISAPPOINTED.  BUT I

18   THINK THAT THE COURT NEEDS BRIEFING ON THIS ISSUE.

19           AS IT'S STRUCTURED RIGHT NOW, AS I INDICATED, I HAVE

20   NINE JURORS IN ONE ROOM; I HAVE THE ONE JUROR IN ANOTHER ROOM.   11:16

21   MY SENSE IS THAT EVERYBODY AGREES THAT, UNDER ANY SCENARIO --

22   WHETHER WE GO FORWARD WITH THE NINE JURORS THAT WE HAVE, OR

23   OBVIOUSLY, IF THERE'S A MISTRIAL -- THAT JUROR NUMBER 8,

24   MS. ██████, NEEDS TO BE EXCUSED.

25           **MR. QUINN:**  YES, YOUR HONOR.                          11:16

```
 1          MR. NOLAN:  YOUR HONOR, WE WOULD CERTAINLY AGREE TO

 2    THAT.  AND WITHOUT, OBVIOUSLY, IMPACTING ON THE MOTION, SHE

 3    SHOULD BE EXCUSED.

 4          AND BEFORE WE BREAK, THERE'S ONE OTHER ISSUE THAT I

 5    WANTED TO BRING TO THE COURT'S ATTENTION AT SIDE-BAR WITH        11:16

 6    MR. QUINN THAT JUST CAME TO MY ATTENTION AS WELL THAT I THOUGHT

 7    MIGHT ALSO BE INSTRUCTIVE TO THE COURT.

 8          THE COURT:  ALL RIGHT.  I'LL TAKE THAT UP AT

 9    SIDE-BAR.

10          MR. NOLAN:  IT'S A SLIGHTLY DIFFERENT ISSUE.            11:16

11          THE COURT:  BEFORE WE DO THAT, THE COURT WILL INTEND,

12    THEN, TO DISMISS MS. ███████████ WITH THE INSTRUCTION THAT

13    SHE'S NOT TO DISCUSS THIS MATTER, DISCUSS THIS CASE, UNTIL

14    ADVISED BY THE COURTROOM DEPUTY THAT THE CASE HAS BEEN

15    COMPLETED, HAS BEEN CONCLUDED.  AND I WILL ACTUALLY ISSUE A    11:17

16    WRITTEN ORDER TO THAT EFFECT; THAT SHE IS NOT TO DISCUSS THIS

17    CASE AT ALL WITH ANYBODY.

18          I THINK THAT'S APPROPRIATE IN THIS CASE.

19          COUNSEL, DO YOU AGREE?

20          MR. NOLAN:  YES, YOUR HONOR.                            11:17

21          MR. QUINN:  WE AGREE.

22          THE COURT:  ALL RIGHT.

23          SO THAT WILL TAKE CARE OF THAT.

24          WITH RESPECT TO THE OTHER JURORS, PENDING YOUR LEGAL

25    BRIEFS ON THE ISSUE OF MISTRIAL, I'LL GIVE LEAVE TO MGA TO FILE   11:17
```

1   A MOTION, A WRITTEN MOTION, FOR MISTRIAL.  OF COURSE, I'LL GIVE

2   MATTEL AN OPPORTUNITY TO OPPOSE IT.

3         IS THERE ANYTHING FURTHER THAT WE NEED TO DO WITH THE

4   JURY AT THIS TIME, OR SHOULD I SIMPLY SEND THEM HOME AND

5   INDICATE THAT THEY ARE TO RETURN ON AUGUST 5TH?                    11:18

6         **MR. NOLAN:**  I THINK THAT'S THE APPROPRIATE STEP TO

7   TAKE, YOUR HONOR.

8         **MR. QUINN:**  THE ONE PENDING MATTER, YOUR HONOR, WAS,

9   THERE IS AN ISSUE ABOUT INSTRUCTION CONCERNING COMMENTS MADE IN

10  THE OPENING.  AND GIVEN THAT WAS SO RECENT, WE DON'T WANT          11:18

11  JURORS THINKING ABOUT THAT OR THAT JUST RESONATING IN THEIR

12  MINDS.  THE COURT HAS INDICATED THAT IT'S PREPARED TO GIVE SOME

13  CORRECTIVE INSTRUCTION, AND THAT'S SOMETHING WE'D REQUEST THE

14  COURT DO BEFORE THE JURORS LEAVE.

15        **THE COURT:**  I'LL TAKE THAT UP, AND I'LL HEAR FROM         11:19

16  MGA, BUT I JUST WANT TO GET -- IS THERE ANYTHING ELSE TO DO

17  WITH THESE JURORS?

18        **MR. QUINN:**  NO, YOUR HONOR.

19        **MR. NOLAN:**  CAN I JUST HAVE ONE MINUTE TO CONFER WITH

20  MY CLIENT.                                                        11:19

21        BEFORE I DO THAT, COULD I JUST MAYBE BRING THIS OTHER

22  ISSUE TO THE COURT'S ATTENTION, SO THE COURT COULD BE AWARE OF

23  THAT?

24        **THE COURT:**  VERY WELL.  APPROACH SIDE-BAR, COUNSEL.

25        (WHEREUPON, THE FOLLOWING PROCEEDINGS                        11:19

```
 1              WERE HELD AT SIDE-BAR:)

 2         MR. NOLAN:  THE WITNESS ANNETTE PIMBLETON -- WHO WAS

 3    HERE LAST TIME WE WERE HERE, WEDNESDAY, SHE WAS ON THE STAND --

 4    REPORTED THIS TO ME -- THIS IS THE FIRST TIME I SAW HER

 5    TODAY -- REPORTED THIS TO ME WHILE YOU WERE IN CHAMBERS -- THAT     11:20

 6    WHEN SHE WAS LEAVING COURT ON WEDNESDAY, SHE WAS IN THE

 7    ELEVATOR AND THERE WAS A SECRETARY FROM OUR FIRM IN THERE WHO

 8    WAS ACCOMPANYING HER OUT.

 9              APPARENTLY, UNBEKNOWNST TO THEM WHEN THEY GOT IN THE

10    ELEVATOR, THERE WAS TWO JURORS, AND ONE OF OUR SECRETARIES WHO     11:20

11    IS NOT IN COURT ALL OF THE TIME JUST HAPPENED TO TALK

12    TO MS. PEMBLETON AND SAID 'WHERE DO YOU LIVE?'  AND

13    MS. PEMBLETON SAID SHE LIVES FAR AWAY AND SHE -- THEY WEREN'T

14    TALKING TO THE JURORS, JUST AMONG THEMSELVES -- AND

15    MS. PEMBLETON SAID SHE LIVES PRETTY FAR AWAY.  AND ONE OF THE     11:20

16    JURORS SAID 'THEY BROUGHT YOU ALL OF THE WAY OUT HERE FOR JUST

17    TWO MINUTES OF TESTIMONY.'

18              YOU WERE IN CHAMBERS DOING THIS INVESTIGATION WHEN I

19    WAS FIRST TOLD ABOUT THIS, SO THIS IS THE FIRST OPPORTUNITY

20    I'VE BEEN ABLE TO BRING IT TO YOUR ATTENTION.                     11:21

21              WE DO NOT KNOW FOR CERTAIN WHO THE JUROR IS BECAUSE

22    THEY ARE NOT THAT FAMILIAR WITH THE JURY.

23              MS. AGUIAR, DO YOU HAVE A BETTER SENSE --

24              THE TWO WERE DESCRIBED AS BLONDE AND WE THINK IT MAY

25    HAVE BEEN JUROR NUMBER --                                         11:21
```

```
 1          MS. AGUIAR:  I DON'T WANT TO SPECULATE.  ALL I KNOW
 2   IS MS. PEMBLETON BELIEVES THEY WERE OLDER RATHER THAN YOUNGER
 3   WOMEN, AND SHE THOUGHT THAT THEY BOTH WERE BLOND.  SHE JUST
 4   REPORTED THAT.  THAT WAS THE ONLY COMMENT THAT WAS MADE BY HER
 5   TO THE JURORS.  SO WE DID JUST WANT TO BRING IT TO YOUR           11:21
 6   ATTENTION THAT AT LEAST ONE OF THE JURORS -- AND WE DON'T
 7   REALLY KNOW WHO MADE THE COMMENT TO HER -- WERE COMMUNICATING
 8   WITH SOMEONE WHO HAD JUST BEEN ON THE STAND.
 9          THE COURT:  THIS UNDERSCORES THAT EVERYBODY ON BOTH
10   LEGAL TEAMS, FROM THE LEAD COUNSEL DOWN TO THE SECRETARY OR       11:22
11   ASSISTANT, YOU SHOULD KNOW WHO THE JURORS ARE AND YOU SHOULD
12   KNOW YOU DO NOT TALK IN FRONT OF THE JURORS.
13          MR. NOLAN:  RIGHT.
14          THE COURT:  THIS IS JUST ANOTHER EXCELLENT
15   ILLUSTRATION OF WHY YOU DON'T SAY ANYTHING.                       11:22
16          NOW, THAT WAS A WITNESS CALLED BY MR. QUINN, AND IT
17   WOULD PROBABLY BE MORE PREJUDICIAL TO MATTEL THAN TO MGA.
18          MR. NOLAN:  SURE.  I'M NOT ASKING FOR ANYTHING, YOUR
19   HONOR, OTHER THAN JUST --
20          THE COURT:  I KNOW.  YOU'RE DOING WHAT YOU SHOULD BE       11:22
21   DOING.
22          MR. NOLAN:  AND I TOLD OUR PEOPLE AGAIN -- BECAUSE OF
23   THE REPORTERS, NOT TALKING IN THE HALLWAYS, STUFF LIKE THAT.
24   IT WAS MORE LIKE THEY WERE ESCORTING HER OUT.  THIS WAS NOT IN
25   THE COURTROOM; SO IT WASN'T INSTANTANEOUS IN OUR REGULAR STAFF    11:22
```

1    MEMBERS.

2            ABOUT THE OTHER THING, YOUR HONOR, AS YOU CAN WELL

3    IMAGINE, MR. LARIAN IS VERY EMOTIONAL.

4            **THE COURT:**  I KNOW.  I'M SURE.

5            **MR. NOLAN:**  AND HE IS INSISTENT THAT HE WOULD LIKE TO       11:23

6    MAKE A STATEMENT, AND I WAS WONDERING WHETHER OR NOT --

7            **THE COURT:**  WHAT KIND OF STATEMENT?

8            **MR. NOLAN:**  I THINK HE JUST WANTS TO EXPRESS HIS

9    FEELINGS.  I WAS WONDERING WHETHER OR NOT -- I THINK IF I HAVE

10   A FEW MINUTES I MIGHT BE ABLE TO TALK HIM DOWN.  BUT I HAVE TO     11:23

11   TELL YOU --

12           **THE COURT:**  HE WANTS TO ADDRESS THE COURT?

13           **MR. NOLAN:**  YES.  HE MAY WANT TO IN OPEN COURT.

14           AS YOU MAY HAVE SUSPECTED -- AND I SAY THIS WITH ALL

15   RESPECT -- HE IS A VERY STRONG MINDED INDIVIDUAL, AND WHEN WE      11:23

16   SUSPECTED WHAT WAS HAPPENING -- AND THIS IS JUST PURE

17   SPECULATION, BUT -- I HAVE TO TELL YOU THAT HE BROKE DOWN IN

18   SUCH A WAY -- EVEN IF YOU HAD NOT EXCUSED JUROR NUMBER EIGHT, I

19   WOULD HAVE COME TO YOU AND SAID THAT MR. LARIAN CANNOT TESTIFY

20   TODAY, HE'S TOO EMOTIONAL.                                        11:24

21           **THE COURT:**  IT'S JUST TERRIBLE.  I CAN'T -- I

22   UNDERSTAND HOW HE MUST FEEL.  AT THE SAME TIME -- AND THIS IS

23   WHERE I HAVE TO WAIT TO SEE THE LAW -- I REALLY DID -- AND IT'S

24   PROBABLY NOT GOING TO COME ACROSS IN THE TRANSCRIPT VERY WELL,

25   BUT I'M CONVINCED THAT THESE JURORS WERE TRULY -- SEVERAL OF       11:24

```
 1    THE JURORS IN PARTICULAR THOUGHT THIS WAS ABHORRENT, AND I'M
 2    CONVINCED WE HAVE A JURY OF NINE PEOPLE WHO ARE REALLY --
 3    NEITHER ARE THEY GOING TO BE UNFAIR TO MGA AND MR. LARIAN OR TO
 4    MATTEL.  I TRIED TO EXPLORE THIS, BECAUSE I COULD SEE AN
 5    OVERCOMPENSATION.                                                11:24
 6            AT THE SAME TIME, THIS IS A CANCER --
 7            MR. NOLAN:  IT'S A TOUGH ISSUE, YOUR HONOR.
 8            THE RESEARCH WE DID DURING THE BREAK, YOUR HONOR --
 9            THE COURT:  I JUST NEED TO CONSIDER THE LEGAL
10    STANDARD, IN LIGHT OF THE FINDINGS.                              11:25
11            I'M GOING TO TYPE UP MY FINDINGS AND ISSUE THEM IN
12    THE FORM OF A MINUTE ORDER SO YOU HAVE THOSE FINDINGS BASED ON
13    YOUR -- YOU REQUESTED THE IN-CAMERA MEETING WITH THE JURORS --
14    I'M RELUCTANT TO GO DOWN THE ROAD OF OPENING UP FURTHER
15    QUESTIONING OF THE JURY ON THIS, UNLESS COUNSEL IS SEEKING       11:25
16    THAT.
17            MR. NOLAN:  WHAT I REALLY NEED TO DO IS REFLECT ON
18    THIS AND GET SOME OF OUR BEST MINDS UNDERSTANDING WHAT THE LAW
19    IS ON THIS STANDARD.
20            THE COURT:  MR. QUINN, ARE YOU REQUESTING ANYTHING       11:25
21    FURTHER?
22            MR. QUINN:  NO, WE'RE NOT.  JUST THAT QUESTION OF THE
23    CORRECTIVE INSTRUCTION FROM --
24            THE COURT:  IN TERMS OF THE JURY, YOU'RE NOT --
25            MR. QUINN:  NO.  WE'RE NOT REQUESTING ANYTHING           11:25
```

```
 1   FURTHER.

 2            THE COURT:  AND YOU'RE NOT SEEKING ANY QUESTIONS AT

 3   THIS TIME?

 4            MR. NOLAN:  NO.  NOT AT THIS TIME.

 5            THE COURT:  WHAT I'M GOING TO INCLUDE IN MY FINDING      11:26

 6   IS THE STATEMENT ITSELF.  I'VE HEARD THE STATEMENT.  THERE'S

 7   NINE VARIATIONS, BUT I HAVE THE ESSENCE OF IT AND WHAT IT IS IS

 8   THAT APPARENTLY SHE STATED THAT HER HUSBAND IS AN ATTORNEY, AND

 9   THAT HE HAS ANY NUMBER OF IRANIAN CLIENTS -- SHE SAID ONE, A

10   CLIENT, OR SOME SEVERAL CLIENTS -- AND ESSENTIALLY THAT THEY      11:26

11   ARE STUBBORN AND THAT THEY ARE THIEVES, BASICALLY.

12            MR. NOLAN:  YOUR HONOR, THAT'S WHAT I NEEDED TO -- I

13   WANT TO GO HOME.  IT'S ONE OF THOSE TROUBLING MOMENTS.

14            THE COURT:  I KNOW HOW TROUBLING THIS MUST BE TO

15   MATTEL.                                                          11:26

16            MR. QUINN:  WE DON'T KNOW HOW IT SHAKES OUT IN

17   PEOPLE'S MINDS.  IT RAISES A QUESTION.

18            MR. NOLAN:  I'M NOT GOING TO ARGUE THAT.  MY

19   MOTHER --

20            HERE'S MY PROBLEM, AND I NEED THE COURT'S GUIDANCE ON    11:27

21   THIS.

22            WOULD THE COURT ENTERTAIN HEARING FROM MR. LARIAN?

23            THE COURT:  IN CHAMBERS?

24            MR. NOLAN:  YES.

25            THE COURT:  YES, IN CHAMBERS.                           11:27
```

```
 1              I THINK THIS MAY BE JUST VENTING, COUNSEL.

 2         MR. QUINN:  UNDERSTOOD.  ALL RIGHT.

 3         MR. NOLAN:  I THINK HE JUST --

 4         THE COURT:  NEEDS TO HAVE --

 5         MR. NOLAN:  WHAT I SAID TO HIM IN THE ROOM, SO YOU       11:27

 6  KNOW, IS I SAID, YOU KNOW, I'M WHITE, I'M CAUCASIAN.  I CAN

 7  TELL YOU HOW ABHORRENT THIS IS, BUT I CAN'T FULLY APPRECIATE

 8  HOW YOU MUST FEEL.

 9         THE COURT:  HE WANTS TO EXPRESS IT HIMSELF.  I

10  APPRECIATE THAT.                                              11:27

11         MR. NOLAN:  IF YOU DON'T MIND, YOUR HONOR.

12         THE COURT:  AND IF MR. ECKERT WOULD LIKE THEN TO

13  ADDRESS THE COURT --

14         MR. QUINN:  I'LL OFFER HIM THE OPPORTUNITY.

15         MS. AGUIAR:  AND ANYONE FROM THE QUINN FIRM SHOULD      11:28

16  FEEL FREE TO BE THERE, OF COURSE.

17         THE COURT:  I WOULD INSIST UPON IT.

18         THIS OTHER ISSUE, THE INSTRUCTION ISSUE, I TRUST YOU

19  HAVE A PROPOSED INSTRUCTION?

20         MR. QUINN:  YES.                                        11:28

21         THE COURT:  DO YOU HAVE ONE?

22         MR. NOLAN:  YES, YOUR HONOR.  BUT WHAT I WOULD ASK IS

23  -- IT HAS NOTHING TO DO WITH -- BECAUSE I THINK THERE -- I

24  THINK TODAY WITH THE INQUIRIES AND ALL OF THIS, EVERYBODY IS

25  TOO RAW FROM THE FACT THAT A WEEK WENT BY BEFORE YOU GAVE A    11:28
```

```
 1   CORRECTIVE INSTRUCTION.  I WOULD SAY -- I WOULD REMIND THE
 2   COURT THERE WAS AN INSTRUCTION GIVEN DURING THE COURSE OF THE
 3   TRIAL WITH RESPECT TO MR. LARIAN'S TESTIMONY THAT TOOK NEARLY
 4   FIVE DAYS TO PUT TOGETHER, AND I WOULD JUST ASK THAT IN LIGHT
 5   OF WHAT'S HAPPENING TODAY, THAT THIS JURY NOT BE PROVIDED ANY      11:28
 6   INSTRUCTION.  WE CAN FULLY INSTRUCT THEM ON TUESDAY.  THAT
 7   ISSUE IS NOT GOING TO LOOM ON THEM.  I WOULD IMPLORE THE COURT
 8   NOT TO --
 9          THE COURT:  I'LL BE CONSIDERING THAT MOMENTARILY.
10          JUROR NUMBER EIGHT, I'M SURE SHE FEELS LIKE SHE'S IN        11:29
11   PRISON RIGHT NOW.  I'M GOING TO INSTRUCT HER TOO.  I THINK WE
12   NEED TO TALK TO HER MAYBE IN CHAMBERS AS WELL.  I'M GOING TO
13   BRING HER DOWN AND I'M GOING TO INSTRUCT HER IN FRONT OF
14   COUNSEL IN CHAMBERS.  AND THEN WE'LL BRING MR. LARIAN IN.  AND
15   THEN I'LL TAKE UP THIS ISSUE IN TERMS OF THE INSTRUCTION.          11:29
16          MS. AGUIAR:  ON A HOUSEKEEPING MATTER, YOU HAD ASKED
17   FOR REVISED JURY INSTRUCTIONS AND VERDICT FORM TODAY, AND IT
18   HAS FADED, AT THIS POINT, A LITTLE BIT.
19          I WANT TO GET YOU WHAT YOU NEED.  IS THERE ANY
20   MOVEMENT IN TERMS OF WHEN --                                       11:29
21          THE COURT:  FOR TODAY, YES.  BUT THEN THEY ARE GOING
22   TO HAVE TO BE SENT UP TO ME IN IDAHO, BECAUSE I HAVE PUT ASIDE
23   TIME TO WORK ON THIS UP THERE; SO WE'LL GIVE YOU DIRECTION
24   LATER.  SEND THEM UP TO SUN VALLEY.
25          (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)           11:30
```

1    **THE COURT:**  ACTUALLY, LET ME REVERSE THE ORDER THAT I

2    JUST INDICATED.  LET'S TAKE UP THE ISSUE OF THIS JURY

3    INSTRUCTION FIRST, WHETHER THE INSTRUCTION SHOULD BE GIVEN

4    TODAY OR WHETHER THE INSTRUCTION SHOULD BE GIVEN IF AND WHEN WE

5    RESUME.                                                          11:30

6        IF I CAN BEGIN BY GETTING A COPY OF EACH PARTIES'

7    PROPOSED INSTRUCTION.

8        (DOCUMENTS HANDED TO THE COURT.)

9    **THE COURT:**  VERY WELL.  I HAVE BOTH MGA'S PROPOSED

10   CURATIVE INSTRUCTION REGARDING CRIMINAL ACTIVITY, MGA'S         11:31

11   PROPOSED INSTRUCTION REGARDING AMOUNT IN CONTROVERSY, AND

12   MATTEL'S PROPOSED INSTRUCTION REGARDING AMOUNT IN CONTROVERSY.

13       PUTTING ASIDE THE MERITS, THE COURT BELIEVES THAT

14   BASED ON THIS, I CAN CERTAINLY COME UP WITH AN APPROPRIATE

15   INSTRUCTION FOR BOTH.  PUTTING ASIDE THAT ISSUE AND JUST THE    11:32

16   TIMING OF DELIVERY, WHETHER THE COURT SHOULD INSTRUCT TODAY OR

17   ON A WEEK FROM TUESDAY, I'LL HEAR BRIEF ARGUMENT.

18       **MR. ZELLER:**  AS MR. QUINN POINTS OUT, WE THINK THE

19   CURATIVE INSTRUCTION, AT LEAST WITH RESPECT TO THE OPENING

20   STATEMENT, SHOULD BE MADE TODAY.  AS THE COURT IS AWARE, THE    11:32

21   COURT IS GOING TO BE DARK FOR SEVERAL DAYS, SO THE JURY WON'T

22   BE IN COURT.  AND IT IS SOMETHING THAT WAS CERTAINLY A STRIKING

23   REMARK MADE DURING THE COURSE OF THE OPENING.  WE THINK IT

24   NEEDS TO BE CURED BEFORE THEY ARE OFF AND HAVE A CHANCE TO

25   RUMINATE ABOUT IT.  IT DOESN'T SEEM LIKE THERE'S ANY PARTICULAR  11:32

1    PREJUDICE TO DOING IT NOW.  QUITE THE OPPOSITE.  IT SEEMS LIKE

2    IT MAY PREJUDICE US IF IT'S NOT DONE NOW.

3           **THE COURT:**  MR. NOLAN?

4           **MR. NOLAN:**  YOUR HONOR, GIVEN THE EVENTS OF THIS

5    MORNING AND THE EMOTIONAL SESSION IT MUST HAVE BEEN FOR THE          11:33

6    JURY AND AS UNUSUAL AS IT MUST HAVE BEEN TO BE INQUIRED ABOUT

7    THEIR DELIBERATIONS AND ISSUES, OUR POINT IS THAT I DON'T

8    BELIEVE THAT THERE IS ANY PREJUDICE TO WAITING UNTIL NEXT

9    TUESDAY.  THEY HAVE BEEN INSTRUCTED ON NUMEROUS OCCASIONS THAT

10   COMMENTS AND ARGUMENTS OF COUNSEL ARE NOT EVIDENCE IN THIS          11:33

11   CASE.  BOTH SIDES GAVE TWO HOURS OF TESTIMONY.  I THINK TO GIVE

12   THE INSTRUCTION TODAY, IN SUCH A HIGHLY-CHARGED, EMOTIONAL

13   SETTING, WOULD HAVE MORE WEIGHT ATTACHED TO IT AND TAKEN OUT OF

14   THE NORMAL COURSE OF EVENTS, AND I WOULD ASK THE COURT TO

15   ADDRESS THIS ON TUESDAY, IF THE JURY RESUMES IN ITS                 11:33

16   DELIBERATIONS OR PRESENTATION OF EVIDENCE.

17           THERE HAVE BEEN INCIDENTS BEFORE WHERE THE COURT HAS

18   MADE CURATIVE INSTRUCTIONS AND HAVE WAITED SEVERAL DAYS TO DO

19   IT, INCLUDING THE REFERENCE TO THE FINDINGS OF THE SECOND

20   CIRCUIT VERSUS THE STATE COURT FINDING THAT CAME OUT DURING         11:34

21   MR. LARIAN'S TESTIMONY.  WE DIDN'T GO BACK AND ADDRESS THAT

22   RIGHT THEN.

23           SO THAT WOULD BE IT.  WE WOULD ASK, YOUR HONOR, THAT

24   IN ADDITION, WHENEVER THE INSTRUCTION IS GIVEN TO THE JURY --

25   WE'VE SUBMITTED ANOTHER INSTRUCTION THAT WE THINK WOULD BE          11:34

1    APPROPRIATE.  I RAISED THIS YESTERDAY, AND I THINK I'VE GIVEN

2    YOU THAT PROPOSED ONE.

3         **THE COURT:**  I JUST MADE REFERENCE TO THAT, MR. NOLAN.

4    THIS IS WITH RESPECT TO THE CRIMINAL ACTIVITY.

5         **MR. NOLAN:**  YES, YOUR HONOR.                          11:34

6         **THE COURT:**  VERY WELL.

7         **MR. NOLAN:**  THANK YOU.

8         **THE COURT:**  I THINK I AM GOING TO HOLD OFF, ACTUALLY

9    FOR TWO REASONS.  I THINK IT'S MORE EFFECTIVE TO GIVE CLOSER

10   TO -- IF AND WHEN WE RESUME WITH TESTIMONY CONCERNING THE      11:35

11   DAMAGES.  THIS WAS A VERY BRIEF STATEMENT THAT WAS MADE BY

12   MR. NOLAN, AND IF I THOUGHT THAT THERE WAS A CHANCE THAT THIS

13   IS REALLY THE PART OF THE OVER FOUR HOURS OF OPENING STATEMENT

14   THAT THE JURY WAS GOING TO BE FOCUSING ON OR DWELLING ON, I'D

15   BE MORE INCLINED TO GIVE THE INSTRUCTION TODAY.               11:35

16        MY SENSE IS THAT IT'S MORE LIKELY TO COME TO MIND

17   ONCE WE REFOCUS ON FINANCIAL DAMAGES WITH TESTIMONY IN THIS

18   TRIAL, AND THAT THAT WOULD BE THE MORE EFFECTIVE TIME TO GIVE

19   THE INSTRUCTION.  THAT'S JUST MY SENSE.

20        SECONDLY, FOR THE REASONS CITED BY MR. NOLAN, JUST IN    11:35

21   TERMS OF THE -- FRANKLY, THE EMOTIONAL IMPACT THIS MORNING ON

22   THE JURY, BECAUSE THERE CERTAINLY WAS.  AND I THINK TO BRING

23   THEM OUT SIMPLY FOR ONE INSTRUCTION AND THEN TO SEND THEM HOME,

24   IN LIGHT OF EVERYTHING, I THINK ALMOST OVEREMPHASIZES THE POINT

25   OF THESE INSTRUCTIONS.  I THINK IT'S BETTER DEALT WITH, BOTH OF  11:35

1   THESE ISSUES, ONCE WE GET -- IF WE GET UNDER WAY ON TUESDAY,

2   AUGUST 4TH.  SO I WILL TAKE THOSE UP AND I WILL HAVE

3   INSTRUCTIONS PREPARED, CONSIDERING, OF COURSE, THE PARTIES'

4   INPUT.

5            I ALSO AM GOING TO DEFER UNTIL TUESDAY THE COURT'S            11:36

6   RULINGS ON THE OBJECTIONS TO THE VIDEOTAPED DEPOSITIONS.

7            I DID INDICATE TO MS. AGUIAR THAT I WOULD GRANT HER

8   REQUEST TO PUT OFF THE DEADLINE FOR SUBMISSION OF THE JURY

9   INSTRUCTIONS FROM TODAY TO NEXT WEEK.  BUT I DO EXPECT THOSE

10  BINDERS DELIVERED TO THE COURT AT THE NINTH CIRCUIT JUDICIAL            11:36

11  CONFERENCE NO LATER THAN TUESDAY; THAT WOULD BE THE 29TH OF

12  JULY.  AND THE COURT, THROUGH ITS COURTROOM DEPUTY, WILL

13  PROVIDE AN ADDRESS FOR THE DELIVERY OF THOSE JURY INSTRUCTIONS.

14           I WILL ALSO WANT, ON THE 29TH, THE PARTIES' BRIEFS ON

15  THIS MOTION FOR MISTRIAL.  I WILL ISSUE A WRITTEN STATEMENT            11:36

16  TODAY OF THE COURT'S FINDINGS.

17           AND JUST FOR THE RECORD, COUNSEL AT SIDE-BAR

18  INDICATED THAT NO FURTHER FACTUAL INQUIRY IS BEING REQUESTED BY

19  EITHER SIDE AT THIS TIME OF THE JURY.  BUT THE COURT WILL ISSUE

20  ITS FINDINGS.  I'M GOING TO SPELL OUT IN A LITTLE BIT MORE            11:37

21  DETAIL THE GIST OF THE STATEMENT THAT WAS MADE.  OF COURSE,

22  THERE'S NO TRANSCRIPT FROM THAT STATEMENT, SO I'M BASING THIS

23  ON MY COLLECTIVE SENSE, HAVING INTERVIEWED ALL TEN OF THE

24  JURORS IN TERMS OF WHAT WAS SAID.  BUT IT'S A VERY CONSISTENT

25  DEPICTION OF THE STATEMENT.  IT WAS CLEAR BY THE END OF THE            11:37

```
 1    COURT'S QUESTIONING.

 2            AS FAR AS THE BRIEFS ON THE MOTION FOR MISTRIAL, HOW

 3    MUCH TIME DOES MGA NEED TO ADDRESS THIS ISSUE?

 4            AND PART OF MY REASONING FOR PUTTING THE JURY

 5    INSTRUCTIONS OFF FOR A FEW DAYS IS TO GIVE MGA THE OPPORTUNITY     11:38

 6    TO DEVOTE ENTIRELY TO THIS ISSUE AND TO GET THIS DONE AS

 7    QUICKLY AS POSSIBLE.  I DO THINK IT'S IMPORTANT THAT WE DECIDE

 8    THIS ISSUE SOON.

 9            MR. NOLAN:  YOUR HONOR, WE'VE STARTED THE PROCESS OF

10    HAVING SOME RESEARCH DONE.                                        11:38

11            COULD WE ASK UNTIL CLOSE OF BUSINESS ON TUESDAY TO

12    SUBMIT A BRIEF?

13            ONE OF THE THINGS IS -- WE'LL AWAIT THE COURT'S

14    FINDINGS AND RULINGS.  I PLEDGE THAT WE'RE GOING TO WORK ALL

15    WEEKEND ON THIS, BUT I THINK IF WE COULD DO IT BY CLOSE OF        11:38

16    TUESDAY, THAT WOULD BE HELPFUL.

17            THE COURT:  LET ME ASK MATTEL, CAN YOU GET AN

18    OPPOSITION, THEN, BY THE CLOSE OF BUSINESS ON WEDNESDAY?  I'D

19    LIKE TO HOLD A HEARING ON THURSDAY, BEFORE I DEPART FROM SUN

20    VALLEY.                                                           11:38

21            MR. QUINN:  I THINK WE'D LIKE MORE THAN ONE DAY TO

22    WORK ON THAT.

23            THE COURT:  THAT'S A FAIR ENOUGH REQUEST.

24            THEN WE SHOULD HOLD THIS HEARING ON MONDAY,

25    AUGUST 4TH.  WE DO HAVE AUGUST 4TH BEFORE THE -- THE ONLY         11:38
```

1   PROBLEM IN THAT IS THAT IF THE COURT DENIES THE MOTION FOR

2   MISTRIAL, WE ARE RESUMING FULL FORCE WITH TRIAL ON AUGUST 5TH,

3   AND NOW WE REALLY ARE UP AGAINST THAT AUGUST 19TH DATE.

4          WE WILL HAVE TO, VERY EFFICIENTLY AND EFFECTIVELY,

5   USE ALL DATES OF COURT PROCEEDINGS IF THIS COURT DENIES THE          11:39

6   MOTION FOR MISTRIAL; SO HAVE IT ALL TOGETHER AND READY TO GO.

7          **MR. NOLAN:**  WE WILL, YOUR HONOR.

8          ON BEHALF OF MGA, WE WILL COMMIT TO BEING PREPARED.

9          **THE COURT:**  SO I'M GOING TO HAVE MGA'S MOTION DUE BY

10  CLOSE OF BUSINESS JULY 29, 2008; OPPOSITION FROM MATTEL,          11:39

11  JULY 31, 2008; AND THEN A REPLY, IF ANY, AUGUST 1, 2008.

12         I WILL BE IN TRANSIT, BUT I'LL MAKE SURE YOU HAVE A

13  WAY TO GET IT TO THE COURT.  AND THEN WE'LL HAVE A HEARING ON

14  THE MOTION FOR MISTRIAL ON AUGUST 4, 2008, AT 1:00 P.M.

15         **MR. NOLAN:**  AND WE'LL AWAIT INSTRUCTIONS AS TO HOW TO          11:40

16  DELIVER ALL OF THAT.

17         **THE COURT:**  YES.  I'LL WORK THAT OUT AND GET BOTH

18  SIDES THE INSTRUCTIONS ON DELIVERY.

19         SO THAT IS JURY INSTRUCTIONS BY 5:00 ON JULY 29, 2008

20  FROM BOTH SIDES; ALSO BY 5:00 ON JULY 29, 2008, MGA'S MOTION          11:40

21  FOR MISTRIAL; JULY 31, 2008, MATTEL'S OPPOSITION TO THE MOTION

22  FOR MISTRIAL; AUGUST 1, 2008, OPTIONAL REPLY BY MGA TO THE

23  MOTION FOR MISTRIAL; AUGUST 4, 2008, AT 1:00, HEARING ON THE

24  MOTION FOR MISTRIAL; AND THEN IF WE CONTINUE WITH THE TRIAL, ON

25  AUGUST 5, 2008, WE'LL CONTINUE WITH TRIAL, AND THE COURT WILL          11:40

1    TAKE UP THE VIDEOTAPED DEPOSITION OBJECTIONS AND THE CURATIVE

2    INSTRUCTIONS AT THAT TIME.

3            IS THERE ANYTHING ELSE THAT SHOULD BE BEFORE THE

4    COURT?

5            I KNOW WE HAVE A MATTER IN CHAMBERS TO DO, AND I WANT    11:41

6    TO INSTRUCT THE JUROR THAT WE ARE DISMISSING AND THEN DISMISS

7    THE OTHER JURORS UNTIL AUGUST 5TH.

8            **MR. ZELLER:**  JUST A CLARIFICATION IN TERMS OF THE

9    BRIEFING ON THE MOTION FOR MISTRIAL.

10           ARE WE GOING TO USE THE NORMAL PAGE LIMITS FOR THE    11:41

11   LOCAL RULES?  OBVIOUSLY, DURING TRIAL, WE HAD ANOTHER PRACTICE.

12           **THE COURT:**  LET'S GO WITH THE LOCAL RULES.  I'M NOT

13   GOING TO IMPOSE ANY PARTICULAR LIMITATIONS ON THIS.  THIS IS

14   TOO IMPORTANT OF AN ISSUE.

15           **MR. ZELLER:**  THANK YOU.    11:41

16           **MR. PRICE:**  GOING BACK TO THE ISSUE OF THE CORRECTIVE

17   INSTRUCTIONS TO THE JURY.

18           WE HAD A LONG HEARING CONCERNING THE CORRECTIVE

19   INSTRUCTION REGARDING MR. NOLAN'S REMARK, AND I THINK YOU SAID

20   YOU WERE GOING TO GIVE US AN OPPORTUNITY TO ARGUE WHETHER    11:41

21   THERE'S ANY NECESSITY AT ALL FOR A CORRECTIVE INSTRUCTION.

22           **THE COURT:**  I'LL TAKE THAT UP -- THE SUBSTANTIVE

23   ARGUMENTS I'LL HEAR ON THAT TUESDAY MORNING.  I UNDERSTAND I

24   HAVE NOT HEARD ARGUMENT FROM EITHER SIDE, BUT WHAT I WANT TO

25   HAVE BEFORE YOU IS THE PROPOSED INSTRUCTIONS FIRST AND THEN    11:42

1    HEAR ARGUMENT.  I'M GOING TO TAKE THE PROPOSED ONES, DRAFT THE

2    COURT'S, PROVIDE THOSE TO YOU, AND THEN I'LL HEAR ARGUMENT ON

3    THE COURT'S, AS OPPOSED TO HEARING ARGUMENTS ON WHAT'S BEEN

4    PROPOSED BY EITHER SIDE.

5            **MS. AGUIAR:**  IN THE NATURE OF HOUSEKEEPING,        11:42

6    YOUR HONOR, YOU WERE NICE ENOUGH TO ARRANGE AN AREA FOR ALL OF

7    THE TANGIBLE PRODUCTS, AND THE JURY WAS GOING TO LOOK AT THEM.

8            **THE COURT:**  THAT WILL BE SECURED.  COURTROOM 4 IS NOT

9    IN USE NEXT WEEK, SO THEY WILL JUST STAY EXACTLY WHERE THEY

10   ARE.  LET'S LEAVE THEM THERE.  THAT COURTROOM 4 WILL BE LOCKED,   11:42

11   UNDER THIS COURT'S DIRECTION, UNTIL WE RESUME ON TUESDAY.

12           **MS. AGUIAR:**  I APPRECIATE THAT.  I JUST DIDN'T KNOW

13   IF THAT WAS, IN FACT, THE CASE.

14           **THE COURT:**  YES.

15           **MS. AGUIAR:**  I KNOW THAT YOUR HONOR HAS THIS ON YOUR   11:42

16   RADAR SCREEN, BUT THERE WERE SOME FINDINGS THAT YOU MADE DURING

17   THE TELEPHONIC HEARING ON MONDAY, AND I THINK YOU WERE GOING TO

18   ISSUE AN ORDER.

19           **THE COURT:**  I DID ISSUE THE ORDER YESTERDAY.

20           CORRECT?                                             11:43

21           I THOUGHT YOU HAD THAT LONG BEFORE THE HEARING

22   YESTERDAY.

23           **MS. AGUIAR:**  I DON'T THINK EITHER SIDE HAS RECEIVED

24   IT, YOUR HONOR, BUT WE'LL LOOK FOR THAT.

25           **THE COURT:**  WHAT I'M WAITING FOR IS THE PROPOSED     11:43

1    ORDER ON THE MOTION *IN LIMINE*.

2         **MS. AGUIAR:**  BOTH SIDES HAVE EXCHANGED COMMENTS, AND

3    WE WILL GET THAT TO YOU.

4         **THE COURT:**  I SENT THIS TO THE READY FOLDER FOR

5    DOCKETING YESTERDAY ABOUT THREE HOURS BEFORE THE HEARING, SO    11:43

6    WE'LL CHECK ON THAT RIGHT NOW.

7         **MS. AGUIAR:**  I APPRECIATE THAT.

8         JUST ANOTHER MINOR ISSUE THAT I WAS GOING TO RAISE

9    TODAY -- AND THIS WILL NOT BE AN ISSUE FOR TODAY, BUT IT IS

10   SOMETHING FOR WHEN OR IF WE RESUME ON TUESDAY -- REGARDING SOME  11:43

11   EVIDENCE THAT WAS RECENTLY PRODUCED BY MATTEL FOR ONE OF THEIR

12   EXPERTS WHO WAS GOING TO HAVE TESTIFIED TODAY.

13        I JUST WANTED TO MENTION THAT, THAT I DO WANT TO MAKE

14   AN ORAL MOTION TO PRECLUDE CERTAIN DOCUMENTS THAT WERE JUST

15   RECENTLY PRODUCED BY MR. KEISER, AND I WOULD ASK PERMISSION TO  11:44

16   RAISE THAT WHEN WE COME BACK ON TUESDAY.

17        **THE COURT:**  LET'S INCLUDE THAT AMONG THE THINGS FOR

18   TUESDAY MORNING.

19        WE'LL TAKE THIS UP IN CHAMBERS.

20        IS THERE ANYTHING ELSE?                                    11:44

21        **MR. NOLAN:**  NO, YOUR HONOR.

22        **THE COURT:**  VERY WELL.

23        WE'LL SET UP IN CHAMBERS.  IT WILL TAKE A FEW MOMENTS

24   FOR THE COURT REPORTER.

25        **MR. NOLAN:**  WE'LL DO THE JUROR FIRST?                  11:44

1          **THE COURT:**  YES.  THEN WE'LL TAKE UP THAT OTHER

2    MATTER.

3          **MR. NOLAN:**  THANK YOU.

4          **THE COURT:**  COURT IS IN RECESS.

5          (OPEN COURT PROCEEDINGS CONCLUDED.)

6

7

8                              CERTIFICATE

9

10   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
11   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
12   conformance with the regulations of the judicial conference of
     the united states.

13

14   _____        _____
     THERESA A. LANZA, CSR, RPR                            Date
15   Federal Official Court Reporter

16

17

18

19

20

21

22

23

24

25