**EXHIBIT 1**

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13             Plaintiff,

14        v.                                Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16             Defendant.                   **ORDER RE MATTEL'S MOTIONS TO
                                            COMPEL FARHAD LARIAN, KAYE
17                                          SCHOLER AND STERN &
                                            GOLDBERG TO PRODUCE
18                                          DOCUMENTS**

19
     CONSOLIDATED WITH
20   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v. MATTEL,
21   INC.

22

23

24                       I. INTRODUCTION

25        The following motions are pending for decision, each of which seeks discovery from non-

26   parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27   Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28

1-25

EXHIBIT ___1___
PAGE ___3___

1    Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1] In addition,

2    MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3    Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions. Mattel

4    submitted a consolidated reply on January 3, 2008. The motions were heard on January 16, 2008,

5    at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6    Produce Documents. This Order, therefore, addresses only Mattel's motions to compel Farhad

7    Larian and Kaye Scholer to produce documents.

8         On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9    facilitate production of documents responsive to the subpoenas at issue.

10                      II. BACKGROUND

11        Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12    herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13    management of MGA. A dispute developed between the two brothers and in March of 2000,

14    Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15        On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16    arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17    his ownership interest to the other. The brothers' agreement to arbitrate was entered into ten days

18    after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19    MGA. Isaac Larian did not tell his brother about the contract with Bryant.

20        Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21    ending December 31, 1999." By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22    should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23    Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26

27    [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be considered. Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the interest of resolving these disputes on the merits.

28

EXHIBIT 1
PAGE 4

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2    allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3    MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4    in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5    December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6    upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7    Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8    compared to the prior four years.

9    Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10   alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11   aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12   Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13   plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14   artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15   meet until September 2000.

16   Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early

17   February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18   arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19   conspired with Isaac Larian to conceal facts.

20   The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into

21   the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his

22   attorneys' fees and won an award in excess of $1 million against his brother.

23   Mattel Subpoenas Farhad Larian to Produce Documents

24   On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25   produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26   Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27   documents relating to Farhad Larian's relationship to MGA, including his position there,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                           3

EXHIBIT ___1___
PAGE ___5___

1  ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2  Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3  his communications with Mattel; and (5) information about the location of responsive documents.

4  The majority of Mattel's requests seek documents in the first category described above.

5          On September 21, 2007, Farhad Larian served responses and objections in which he

6  agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7  After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8  on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9  documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11          The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response.  The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18  filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22          On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT  1

PAGE  6

1    Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2    other things, correspondence files, pleading files, discovery files, witness preparation files,

3    research files, exhibits, attorney work files, and billing files.

4           On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5    other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6    The parties met and conferred on October 11 and 29, 2007.  Kaye Scholer agreed to review the

7    following files for responsive documents:  (1) pleading files; (2) discovery files; and (3)

8    arbitration exhibits.  Kaye Scholer's rationale for limiting its search for responsive documents to

9    these three files was to avoid undue burden because most of the documents in other files would be

10   protected by the work product doctrine and/or the attorney-client privilege.  Kaye Scholer also

11   agreed to produce documents responsive to the majority of Mattel's requests.  However, Kaye

12   Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13   privilege log because it would be unduly burdensome, expensive and inconvenient.

14          In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15   documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16   including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17   document privilege log.

18   Mattel's Other Discovery Efforts

19          Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from

20   MGA and Isaac Larian.  As far as Mattel can ascertain, however, MGA has produced only four

21   documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22          Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil

23   lawsuits.  Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24   however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied.  Mattel

25   also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with

26   limited success.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                            5

EXHIBIT 1
PAGE 7

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

A. Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production. First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility. In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 1
PAGE 8

1  relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2  action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3  Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4  Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5  documents to determine whether Farhad Larian destroyed documents or for another reason no

6  longer has them.

7       Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8  that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9  contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13       Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

EXHIBIT   1
PAGE ___ 9

1  requests as well, but that Mattel refused.

2  Farhad Larian contends that in light of his supplemental production, he is now in full

3  compliance with Mattel's subpoena, except for three requests.  He represents that he has produced

4  over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

5  that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6  and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7  covered by a protective order.  He also contends that the privilege log he has produced to Mattel,

8  which describes the withheld documents by category instead of document-by-document, is

9  sufficient to substantiate his claims of privilege and work product protection.  As for the three

10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11  and cumulative and invade his and his family's privacy.

12  <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13  Farhad Larian made a substantial supplemental production and provided a supplemental

14  written response on December 6, 2007.  Indeed, Mattel acknowledges that it received

15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16  pages of documents.  Nevertheless, Mattel contends in its reply brief that there are a few

17  deficiencies in Farhad Larian's production.  For example, Mattel contends that Farhad Larian has

18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19  appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian

20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19.  Mattel

23  also contends that Farhad Larian has improperly limited its production to only those documents

24  that directly reference Bratz and Carter Bryant.

25  At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26  including the documents identified in Mattel's reply brief, had been or would be produced after

27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28

EXHIBIT ___1___
PAGE ___10___

1    accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2    to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3    responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4    documents have been identified on a privilege log.

5         In light of the December 6, 2007 supplementation, and based upon the representations

6    made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7    obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8    any further production of documents.

9         <u>Farhad Larian's Objections to the Three Remaining Requests are Justified</u>

10        The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12        <u>Request No. 23</u>:  All DOCUMENTS RELATING TO any and all payments of
     money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13        MEMBERS and/or MGA have made, have offered or have proposed, promised or
     agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14        any time from January 1, 1999 through the present.

15        <u>Request No. 24</u>:  All DOCUMENTS RELATING TO any and all payments of
     money or transfers of anything of value that any PERSON has made, has offered
16        or has proposed, promised or agreed to make, to or for the benefit of YOU or
     YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17        BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
     present.

18
     <u>Request No. 41</u>:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19        through the present (a) each account with any bank or financial institution that
     YOU have or have had, or that YOU have or have had any legal beneficial
20        interest in; (b) each telephone subscription service account that YOU have or have
     had, or that YOU use or have used; and (c) each email account that YOU have or
21        have had, or that YOU use or have used.

22
     Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is
23
     questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA
24
     has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as
25
     a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.
26
          Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack
27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                      9

EXHIBIT ___1___
PAGE ___11___

1    his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2    receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3    subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4    probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5    contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6    to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8    several respects. First, he points out that the requests seek documents from 1999, which is five

9    years before this action was filed and six years before MGA was involved in this action. Farhad

10    Larian contends that payments made to him and his family before this action was filed and before

11    MGA was a party to the case have no relevance to his credibility as a witness in this case.

12    Second, Farhad Larian contends that the requests, as phrased, would include any card that

13    accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14    Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15    between family members, have nothing to do with bias and violate his and his family's privacy

16    rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17    him to disclose all documents reflecting payments he received as an employee of MGA and its

18    predecessor, a company he was employed by for decades.

19        Furthermore, Farhad Larian contends that he has already produced all non-privileged

20    documents which could potentially show bias, including the amount of money he was paid for his

21    shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22    agreement with MGA. He contends that requiring him to search for and produce additional

23    payment documents would only result in him producing cumulative information, which is not

24    only irrelevant but violates his and his family's right to privacy under the California Constitution.

25    Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26    deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27    three requests at issue.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

*EXHIBIT* __1__
*PAGE* __12__

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues. These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17       Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action. The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT ___1___
PAGE ___13___

1    The requests are also cumulative of discovery Farhad Larian has already provided.  In

2  particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3  he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4  and his fee agreement with MGA.  In light of this production , it is unreasonable to require Farhad

5  Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6  responsive to Request Nos. 23, 24 and 41.  Furthermore, there are other less intrusive and

7  burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias.  For

8  example, Mattel may question Farhad Larian about payments he received from his brother and

9  MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests.  Personal

11  financial information is afforded protection by the California Constitution that is also recognized

12  by federal courts.  Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13  652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14  should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15  of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16  been recognized by federal courts).  When a privacy right is asserted as an objection to discovery,

17  the court must balance the need for the information versus the privacy right asserted.  Soto, 162

18  F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20  sought by Mattel.  Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21  no relevance to Farhad Larian's credibility and bias as a witness in this case.  Furthermore,

22  Farhad Larian has already produced numerous documents showing payments he received from

23  both his brother and MGA.  There are also other less intrusive means for obtaining discovery

24  relating to Farhad Larian's credibility and bias.  Furthermore, the scope of these three requests

25  unduly intrude into Farhad Larian's private affairs.  The requests are so broad as to include gifts

26  exchanged between family members and Farhad Larian's paycheck stubs, and would require

27  Farhad Larian to disclose every account number he has at a bank or financial institution since

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT  1
PAGE  121

1   1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3                          Farhad Larian's Privilege Log is Inadequate

4          Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection. Farhad Larian's

8   Opposition at p.20, n. 9.

9          Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10  sufficient information to enable the party seeking discovery to assess the claims of privilege and

11  work product protection. The "universally accepted" means of claiming that requested documents

12  are privilege is by producing a document-by-document privilege log. Gail v. New England Gas

13  Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14  Rule 26(b), however, state that a description of documents by category is appropriate where it

15  would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16  the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17  be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18  documents are claimed to be privileged or protected, particularly if the items can be described by

19  categories."

20         Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21  to support his contention that as a non-party, it would be unduly burdensome to require a

22  document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23  distinguishable from the present case. In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24  the Commission sought production of all communications between defense counsel concerning

25  the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26  documents that are ordinarily protected from disclosure. Further, the defendant represented that

27  the requested documents were extremely voluminous and that a document-by-document privilege

28

EXHIBIT _____
PAGE _____

1   log would be a long and fairly expensive project to undertake.  In Fifty-Six Hope Road Music,

2   Ltd. v. Mayah Collections, Inc., 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6       In contrast to the volume of documents at issue in Thrasher and Fifty-Six Hope Road

7   Music, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  B. Documents Subpoenaed from Kaye Scholer

18      Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges.  Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT  1
PAGE  16

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the Larian v. Larian proceedings.  Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the Larian

8    v. Larian proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source.  See e.g. State

10   Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28

EXHIBIT  1
PAGE  17

1    documents. However, Kaye Scholer continues to object to producing a document-by-document

2    privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3    emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4    responsive documents are protected by multiple privileges, including but not limited to the

5    attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6    in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7    that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8    unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9    document-by-document privilege log does not result in a per-se waiver of any privilege.

10           MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11    Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12    all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13    completely duplicative of requests it has served on the parties in the case. In particular, MGA

14    contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15    Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16    Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17    First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18    under court order to comply with the requests, although Isaac Larian is only required to produce

19    documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20    contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21    served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22    obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23    third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24    from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25    other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26    then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27    contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16



1   burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2   MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3   substantially limited in scope.

4   <u>Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative</u>

5       Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6   documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7   served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8   phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9   relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10       <u>Request No. 1</u>:  All DOCUMENTS, including all COMMUNICATIONS,
     RELATING TO any and all arbitration proceedings between FARHAD LARIAN

11   and ISAAC LARIAN, including without limitation all video and/or sound
     recordings, transcripts, exhibits, memoranda, witness statements, declarations,

12   affidavits and sworn testimony given by any PERSON in connection with such
     arbitration proceedings.

13   
14       <u>Request No. 2</u>:  All DOCUMENTS including all COMMUNICATIONS,
     RELATING TO Los Angeles Superior Court Case No. BC301371 filed by

15   FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
     including any appeal thereof, and including without limitation all video and/or

16   sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
     statements, declarations, affidavits and sworn proceedings and/or any appeal

17   related to such lawsuit.

18       <u>Request No. 3</u>:  All DOCUMENTS RELATING TO Los Angeles Superior Court
     Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,

19   MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
     appeal of such lawsuit, including without limitation all video and/or sound

20   recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
     statements, declarations, affidavits and sworn testimony given by any PERSON in

21   connection with such suit and/or related proceedings and/or any appeal related to
     such lawsuit.

22   
23   Mattel has not limited the subject matter of these requests (and others) in any way to exclude

24   irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

25   language, encompassing documents that are only marginally related, if at all, to this case.  As

26   such, Mattel's requests are also unduly burdensome.

27       Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

28   

EXHIBIT
PAGE  19

1   parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7          In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10  denied.

11          <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12          As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13  to review the following files for documents responsive to every one of Mattel's requests except

14  Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15  Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18  other files, most of the documents in the three files it agreed to search are not likely to be covered

19  by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23  comply with Request Nos. 123-125.

24          Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26  except Nos. 1-3, 6 and 10.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT   1
PAGE   20

1        <u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

2        Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3   any privilege log.  The law is clear, however, that the failure to produce a document-by-document

4   privilege log does not result in a per-se waiver of any privilege.  See <u>Burlington Northern & Santa</u>

5   <u>Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005).  In this

6   case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7   log on the grounds that it would impose an undue burden.  Under these circumstances, a finding

8   of waiver is unjustified.

9        Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive.  Kaye Scholer has

10  acknowledged that most of the documents in the three files it has agreed to search are not likely to

11  be covered by the attorney-client privilege or work product doctrine.  Kaye Scholer Opposition at

12  pp. 5 and 9.  Indeed Kaye Scholer agreed to search these files precisely because they were not

13  likely to contain privileged documents.  Therefore, requiring Kaye Scholer to produce a

14  document-by-document privilege log for documents withheld from these three files should not

15  impose an undue burden.  Accordingly, Kaye Scholer is ordered to produce a document-by-

16  document privilege log for documents withheld from the three files it agreed to search.

17                          V. CONCLUSION

18       For the reasons set forth above, it is ordered as follows:

19       1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20  the requests, except Nos. 23, 24 and 41.  Request Nos. 23, 24 and 41 are overbroad, unduly

21  burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22  family.  Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23  the subpoena is denied.

24       2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25  than January 30, 2008.

26       3. Farhad Larian's request for sanctions against Mattel is denied.

27       4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

EXHIBIT ___1___
PAGE ___2___

1   Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2   subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3   pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4   requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5   no later than January 30, 2008.

6        5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7   documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8   January 30, 2008.

9        6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10  their copying costs.

11       7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12  Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13  p.m. on January 25, 2008.

14       8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15  Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17  Dated: January 25, 2008                    /s/Edward A. Infante

18                                      HON. EDWARD A. INFANTE (Ret.)
                                               Discovery Master

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                                Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                  **ORDER GRANTING MGA'S MOTION
                                            TO QUASH MATTEL'S SUBPOENA
17                                          TO BANK OF AMERICA**

18   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
19   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
20

21                        I. INTRODUCTION

22        On January 29, 2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK)

23   Limited, and MGAE de Mexico S.R.L. de C.V. (collectively "MGA") submitted a "Motion to

24   Quash Subpoena to Bank of America or, in the Alternative, For Protective Order." On February

25   7, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on February 15, 2008, MGA

26   submitted a reply. The parties were directed to meet and confer further regarding the motion,

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                            EXHIBIT 2
                                            PAGE 23

1   which has been completed. <u>See</u> Joint Report dated March 28, 2008. Pursuant to Paragraph 5 of

2   the Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it

3   appropriate to take the motion under submission for decision without oral argument.

4                                               II. BACKGROUND

5         On January 18, 2008, Mattel served a subpoena for documents on Bank of America. The

6   return date was January 28, 2008–the Phase I discovery cut-off. The subpoena contained four

7   requests:

8         (1) All DOCUMENTS REFERRING OR RELATING TO ISAAC LARIAN from

9         January 1, 1999 to the present, inclusive.

10        (2) All DOCUMENTS REFERRING OR RELATING TO any ACCOUNTS

11        maintained by YOU that are in the name of, for the benefit of or concern ISAAC

12        LARIAN, including but not limited to statements, monthly statements, annual

13        statements, daily transaction history reports, monthly transaction history reports,

14        deposit reports, deposit slips, canceled checks, signature cards, and

15        COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS,

16        created between January 1, 1999 and the present, inclusive.

17        (3) DOCUMENTS sufficient to show the account number of all ACCOUNTS

18        maintained by YOU in the name of, for the benefit of or concerning ISAAC

19        LARIAN between January 1, 1999 and the present, inclusive.

20        (4) All DOCUMENTS showing or relating to any ACCOUNTS held by ISAAC

21        LARIAN or any ACCOUNTS on which ISAAC LARIAN has signatory authority

22        at any other financial institution.

23   Miller Decl., Ex. 1. The subpoena defines "ISAAC LARIAN" to include Mr. Larian and "all of

24   his . . . relatives (whether by blood or by marriage)." <u>Id</u>.

25         On the evening of Thursday, January 24, 2008, Mattel served notice of the subpoena on

26   MGA. MGA served objections on Mattel and Bank of America on January 27, 2008. MGA also

27

28

EXHIBIT ___2___   2

PAGE _2 c/_

1   attempted to contact Bank of America, but was unable to speak with the Bank representative

2   responsible for handling the subpoena until the afternoon of January 28, 2008.

3       MGA contends that the subpoena to Bank of America should be quashed for two reasons.

4   First, MGA contends that the subpoena is overly broad and seeks documents that are irrelevant or

5   are unreasonably duplicative or cumulative of discovery already obtained by Mattel.  Second,

6   MGA contends that Mattel failed to give notice of the subpoena prior to its service, in violation of

7   Rule 45(b)(1), Fed.R.Civ.P.

8       Mattel contends that the documents it seeks are relevant to several issues including, *inter*

9   *alia*, Mattel's entitlement to the remedy of disgorgement, to assess Mr. Larian's net worth for

10   purposes of punitive damages, as well as to support Mattel's claims for commercial bribery and to

11   show bias.  Mattel also contends that it is entitled to the subpoenaed documents because of

12   legitimate concerns of spoliation and document tampering.  Mattel further contends that the

13   subpoenaed documents are not cumulative of other discovery because neither MGA nor Mr.

14   Larian has produced the financial records Mattel presently seeks from Bank of America.

15       Mattel also contends that MGA's burden and overbreadth objections are meritless because

16   Bank of America has not made any objections to the subpoena, and instead has represented that it

17   is prepared to produce responsive documents.  Lastly, Mattel contends that MGA's lack of notice

18   objection is disingenuous because MGA has repeatedly subpoenaed third parties without

19   providing notice, and that moreover, MGA has not been prejudiced.

20   III. STANDARDS

21       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

22   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

23   party." Fed.R.Civ.P. 26(b)(1).  The court shall, however, limit the frequency or extent of use of

24   the discovery methods if the court determines that (i) the discovery sought is unreasonably

25   cumulative or duplicative, or is obtainable from some other source that is more convenient, less

26   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

27

28

EXHIBIT __2__
PAGE __25__

1   discovery in the action to obtain the information sought; or (iii) the burden or expense of the

2   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

3   amount in controversy, the parties' resources, the importance of the issues at stake in the

4   litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

5   26(b)(2)(C).

6          Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas. "If the

7   subpoena commands the production of documents, electronically stored information, or tangible

8   things or the inspection of premises before trial, then before it is served, a notice must be served

9   on each party." Fed.R.Civ.P. 45(b)(1). A third party served with a subpoena for documents must

10  produce documents (and reasonably accessible electronically stored information) that are

11  responsive to the subpoena. Fed.R.Civ.P. 45 (b), (d). If the subpoenaed documents are relevant

12  and there is good cause for their production, the subpoena is enforced unless the documents are

13  privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. U.S. v.

14  American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966).

15         Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing

16  and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on

17  a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and

18  impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--

19  on a party or attorney who fails to comply." Id.

20         Rule 45 also provides that the issuing court must quash or modify a subpoena under

21  certain circumstances, including among others, when the subpoena requires the disclosure of

22  privileged or other protected matter or subjects a person to undue burden. Fed.R.Civ.P.

23  45(c)(3)(A)(iii) and (iv). A motion to quash a subpoena or for a protective order as to that

24  subpoena may be made by a party-opponent. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636

25  (C.D. Cal. 2005) (granting defendants' motion to quash subpoena).

26

27

28

EXHIBIT __2__
PAGE __26__

4

1     In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

2   Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

3   the information to the serving party,' . . . and in particular requires the court to consider: 'such

4   factors as relevance, the need of the party for the documents, the breadth of the document request,

5   the time period covered by it, the particularity with which the documents are described and the

6   burden imposed.'" Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

7   Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). Another important factor in evaluating burden is

8   whether the subpoenaing party "can more easily and inexpensively obtain the documents from

9   [another party], rather than from [the] nonparty." Moon, 232 F.R.D. at 638. See also Lectrolarm

10   Custom Sys. v. Pelco Sales, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (protective order granted where

11   plaintiff subpoenaed non-party for documents that plaintiff had sought from defendant because

12   the "burden and harassing nature of the requests clearly outweigh[ed] the minimal need for the

13   very limited amount of information that could be discovered under the subpoenas.").

14                                       IV. DISCUSSION

15     Although the Bank of America subpoena encompasses documents that are potentially

16   relevant to Mattel's claims and several issues in the case, the subpoena is nevertheless

17   unreasonable because it is overbroad. The requests are not limited by subject matter to Bratz,

18   MGA or any other relevant issue in the case. Rather, the subpoena calls for nine years' worth of

19   financial documents, including statements, monthly statements, annual statements, daily

20   transaction history reports, monthly transaction history reports, deposit reports, deposit slips,

21   canceled checks and signature cards. The production of documents responsive to such overly

22   broad requests would likely sweep in many sensitive and personal financial documents having

23   little to no relevance to the case.

24     Furthermore, the subpoena intrudes upon Mr. Larian's privacy rights as recognized under

25   the California Constitution. Mattel has not adequately demonstrated the relevance of all of the

26

27

28

EXHIBIT 2
PAGE 27

5

1   documents falling within the scope of its expansive subpoena to overcome the privacy protections

2   afforded to Mr. Larian's personal financial information.

3        The subpoena is also overbroad in seeking financial information regarding all of Mr.

4   Larian's relatives. Mattel has broadly defined "ISAAC LARIAN" to include Mr. Larian and "all

5   of his . . . relatives (whether by blood or marriage)." Miller Decl., Ex. 1. Thus, Mattel's subpoena

6   essentially requires production of every document from 1999 to the present that Bank of America

7   possesses relating to Mr. Larian, his wife, his children, and every other family member, in-law or

8   other relative.

9        Mattel's subpoena is also objectionable insofar as it seeks financial information that Mattel

10   has already sought and received in this case. MGA represents that Mr. Larian recently produced

11   nearly 50,000 pages of documents, which included, among other things, documents showing his

12   net worth; his gross income, wages, dividend income, interest income, and other income; his

13   banks and bank accounts; and various other financial documents. Miller Decl., ¶10[1]; see also

14   Park Decl. Mattel has also had an opportunity to depose Mr. Larian and MGA about relevant

15   financial information. In light of the financial information Mattel has already sought and obtained

16   throughout the course of this litigation, the subpoena to Bank of America is unjustified, taking

17   into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

18        In addition to the reasons discussed above, the subpoena is also objectionable because

19   Mattel failed to comply with Rule 45(b)(1), Fed.R.Civ.P. Mattel served the subpoena on Bank of

20   America on January 18, 2008, but failed to serve notice of the subpoena on MGA until Thursday,

21   January 24, 2008. Thus, Mattel clearly violated the notice requirement of Rule 45(b)(1),

22   Fed.R.Civ.P.

23        Mattel attempts to defend its subpoena by pointing out that MGA has repeatedly

24   subpoenaed parties without providing prior notice to Mattel. Even if that is true, it does not

25   _____

26      [1] Mattel's Evidentiary Objections to the Miller Declaration based upon lack of personal knowledge and hearsay are overruled.

27

28   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT 2
PAGE 28

6

1  excuse Mattel from complying with the notice requirement of Rule 45(b)(1).  Moreover, Mattel

2  has never sought redress for MGA's alleged violations of Rule 45(b)(1).  Mattel also contends that

3  the lack of prior notice did not prejudice MGA, as evidenced by MGA's ability to bring the instant

4  motion, and therefore there is no basis to quash the subpoena.  Contrary to Mattel's assertion,

5  however, the lack of notice obviously hindered MGA's ability to communicate with Bank of

6  America before the return date of the subpoena, and prevented any opportunity for the parties to

7  meet and confer in order to reach a resolution.

8  V. CONCLUSION

9      For the reasons set forth above, MGA's motion is granted.  Pursuant to Paragraph 6 of the

10  Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the

11  Clerk of Court forthwith.

12

13  Dated: May 6, 2008

                       /S/

14                      HON. EDWARD A. INFANTE (Ret.)
                            Discovery Master

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2
PAGE 29

7

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

     Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED COPY**

_____

AND CONSOLIDATED ACTIONS.

_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479

EXHIBIT 3
PAGE 30


877.955.3855
www.sarnoffcourtreporters.com
IRVINE ▪ LOS ANGELES ▪ SAN FRANCISCO ▪ LAS VEGAS ▪ SAN DIEGO

SARNOFF
Court Reporters and
Legal Technologies

**TRANSCRIPT OF PROCEEDINGS**                                    03/04/09

1                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
2                          EASTERN DIVISION

3

4       CARTER BRYANT, an individual,

5             vs.                          No. CV 04-9049 SGL (RNBx)
                                           Consolidated with
6       MATTEL, INC., a Delaware           Nos. CV 04-9405 and
        corporation,                       05-2727
7

8                   Defendants.

9

10

11       _____

12      AND CONSOLIDATED ACTIONS.

        _____
13

14

15

16             REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17      taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18      California, beginning at 10:08 a.m. and ending at

19      12:12 p.m. on Wednesday, March 4, 2009, before

20      CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25

                                                                    2

EXHIBIT 3

PAGE 31

```
 1    APPEARANCES:

 2

 3    Discovery Master:

 4         ROBERT C. O'BRIEN
           Attorney at Law
 5         555 West Fifth Street, Suite 4800
           Los Angeles, California  90013-1065
 6         (213) 629-7400

 7    For Defendant Mattel, Inc.:

 8         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  MICHAEL T. ZELLER
 9         BY:  JON COREY
           Attorneys at Law
10         865 South Figueroa Street, 10th Floor
           Los Angeles, California 90017
11         (213) 624-7707

12         MATTEL, INC.
           BY:  JILL E. THOMAS
13         Assistant General Counsel
           333 Continental Boulevard
14         El Segundo, California 90245-5012
           (310) 252-2000

15

16    For Defendants MGA and Isaac Larian:

17         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
           BY:  JASON D. RUSSELL
18         BY:  JENNIFER K. DEL CASTILLO
           Attorneys at Law
19         300 South Grand Avenue
           Los Angeles, California 90071
20         (213) 687-5000

21    For Defendant IGWT Group and IGWT 826 Investments:

22         VALLE & ASSOCIATES
           BY:  JEFFREY B. VALLE
23         BY:  ILAN WISNIA
           Attorneys at Law
24         11911 San Vicente Boulevard, Suite 324
           Los Angeles, California 90049
25         (310) 476-0300
```

EXHIBIT 3

PAGE 32

```
 1    APPEARANCES (Continued):

 2

 3    For 808 Investors, LLC, Vision Capital, LLC, and OmniNet
      Capital, LLC:
 4
            BINGHAM McCUTCHEN LLP
 5          BY:  TODD E. GORDINIER
            BY:   PETER VILLAR
 6          Attorneys at Law
            600 Anton Boulevard, 18th Floor
 7          Costa Mesa, California 92626-1924
            (714) 830-0622
 8
      Also Present:
 9
            STEPHEN HAUSS
10          CRAIG HOLDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

EXHIBIT 3
PAGE 33

1  abusive fishing expedition, which is what we've got going

2  on.

3           MR. O'BRIEN:  And I understand your position.

4  I'm not negotiating with you on MGA's behalf and I'm not

5  suggesting that you -- I'm just trying to get an idea of

6  where you think the law -- what the parameters of

7  discovery are with respect to your client.  So I'm not

8  telling you you should, on the record or otherwise, offer

9  to give them documents if you don't think they're due.

10  I'm not trying to push you into that position and hold

11  it -- the point of this isn't to meet and confer.  I'm

12  just trying to get an idea of where you see the contours

13  of the law with respect to your client as to what

14  discovery might or might not be proper.

15           And I understand your position that on this

16  record you don't think any of the current discovery is

17  proper, but --

18           MR. GORDINIER:  Right.  Assuming they can't get,

19  from MGA, the payments from MGA on the loan, I have no

20  problem with that.  I have no problem with the loan

21  documents.

22           Now, it's true MGA was not a party directly to

23  the transaction between Omni 808 and Wachovia.  They had

24  to sign some guarantees, I think, or some

25  indemnifications, I'm not sure exactly, I'm not a

EXHIBIT 3
PAGE 34

1  corporate guy.  But that deal was negotiated between

2  Omni 808 and Wachovia.  And so -- let's make sure that I'm

3  communicating with you, and that is on this record they're

4  not entitled to anything.  However, what I want more than

5  anything out of today is efficiency and economy and peace

6  and you guys in the front of this table go on and do your

7  thing leading to the trial between all the MGA entities

8  and the Mattel entities and leave me and my clients alone.

9  And if that will cut it off, I'd be happy to do that.

10  That's my position.  Do you see what I'm saying?

11          MR. O'BRIEN:  I do.  I understand.  Mr. Zeller

12  took the position that in the Ninth Circuit the law that

13  we're dealing with here, unlike New York, a party isn't

14  required to go to their adversary before going to a third

15  party to seek discovery.  Do you have a -- you seem to be

16  taking a different position --

17          MR. GORDINIER:  It's ironic --

18          MR. O'BRIEN:  -- as a practical matter.  Is there

19  a case cite or.

20          MR. GORDINIER:  Absolutely.  It's ironic that

21  Mr. Zeller would cite the Ninth Circuit.  Google

22  Mr. Zeller and Mattel and read the Ninth Circuit's opinion

23  on why a subpoena like this should be quashed, and why

24  sanctions against an attorney can be granted.  The case

25  name is Mattel versus Walking Mountain Productions.  So

56

EXHIBIT 3
PAGE 36

1   that's the case I'd cite to you.

2          MR. O'BRIEN:  All right.

3          MR. GORDINIER:  Here it is, it's 353 F 3rd 792.

4   If you want, I can hand it up to you.

5          MR. O'BRIEN:  I can take a look at it.  One --

6          MR. GORDINIER:  Most of it is not related.  Go to

7   the end where they're upholding -- Judge Lew found that

8   what Mr. Zeller was doing was improper, and sanctioned

9   him, and the Ninth Circuit affirmed it.  So if you want

10  the authority I'm relying on, that's it.

11         MR. O'BRIEN:  Okay.  I'll take it -- if that's

12  the authority you're relying on for that position, I'll

13  take it.

14         The one thing that I do want to caution here is

15  that we're not litigating that case.  I don't know what

16  the discovery issues were in that case.  We're going to be

17  together for a fair amount of time.  I know you may not --

18         MR. GORDINIER:  Hopefully not me.

19         MR. O'BRIEN:  I understand that.

20         MR. GORDINIER:  No offense, Mr. O'Brien.

21         MR. O'BRIEN:  None taken.  But I do -- I don't

22  want to have, unless it's directly relevant, and I'm

23  sure you weren't intending to do so, but I don't want any

24  sort of ad hominum attacks on counsel and question their

25  motives and that sort of thing.  My feeling here is that

57

EXHIBIT 3
PAGE 36

1  everybody comes to this table in good faith.  We've got

2  excellent lawyers here.  And so I just caution that.  I

3  don't think you were attacking Mr. Zeller personally.

4  I'll certainly take a look at the case.

5          The point that I was trying to get to is this

6  issue in the Ninth Circuit, do you have to go first, is it

7  a requirement that you go first to the party to obtain the

8  discovery, and then to the third party.  It may make

9  practical sense from a litigation standpoint, but is

10  that -- is it your position that that is not the law?

11          MR. GORDINIER:  No.  You, trial courts, you, as

12  Discovery Master, trial courts have discretion.  However,

13  it is a higher burden when you're going to a third party.

14  And if it's cumulative and duplicative of what can be and

15  should be and already has been sought from a party,

16  there's no reason to -- and the court should quash the

17  subpoena to the third party.  But I'm not telling you that

18  it's a requirement under the Ninth Circuit.  I'm not

19  telling you that.

20          MR. O'BRIEN:  Okay.

21          MR. GORDINIER:  I don't have anything else on the

22  substance, since you don't want to hear about the

23  procedure, other than to say the lack of procedure here so

24  colored the substance, we didn't have a chance to properly

25  present this to you.  And I was optimistic, as I am

58

EXHIBIT 3
PAGE 37

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11          Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [  ] was [  ] was not requested.

15          I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated: _____MAR 0 9 2009_____

22

23          _____Cheryl R. Kamalski_____

24          CHERYL R. KAMALSKI
              CSR No. 7113

25



EXHIBIT 3
PAGE 38