# Exhibit 22

# MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS🅺K**

Jean Pierre Nogues
A Professional Corporation
(310) 312-3152 Phone
(310) 231-8352 Fax
jpn@msk.com

May 21, 2009

Marshall M. Searcy III, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

Re:   **Bryant v. Mattel; Mattel's Responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production**

Dear Mr. Searcy:

We have received and reviewed Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production. I write to meet and confer in advance of a motion to compel and request for sanctions regarding the foregoing responses.

## A. Mattel's Responses to the Requests for Admission ("RFAs")

1. **Mattel's general objections are baseless and must be withdrawn.** Mattel's general objections to the RFAs are baseless and made in bad faith. For example, Mattel objects that each of the requests for admission asks for information that is not relevant or reasonably calculated to lead to admissible evidence. That assertion is unsupportable. Each of the RFAs goes directly to specific claims that Mattel makes in this case. Mattel is asked to admit, among other things, that no MATTEL DOCUMENT constitutes or contains a TRADE SECRET (1), that neither MGA nor Larian ever MISAPPROPRIATED ANY MATTEL DOCUMENT (2 and 5), and that Mattel suffered no damages from any alleged MISAPPROPRIATION (3). The other requests are of the same tenor and are equally relevant.

Mattel's other general objections are similarly baseless. Mattel has been asserting its trade secret claims for at least three years; thus, the suggestion that these RFAs are premature is ludicrous. The assertion that MGA has "refused to disclose information to Mattel" is baseless: MGA has produced millions of pages of documents, has responded to over 70 interrogatories, over 4500 requests for admission and over 2800 document requests, has made 30(b)(6) witnesses available on nearly 300 separate topics, and has produced dozens of witnesses for deposition. Further, even if MGA had refused to disclose information to Mattel (which is clearly not the case), that would not excuse Mattel from complying with its discovery obligations. The RFAs in no way ask Mattel to do something beyond the requirements of the Federal Rules relating to discovery requests. The RFAs do not seek privileged information; in any event, Mattel has failed to

**Exhibit 21 Page 256**

# MITCHELL SILBERBERG & KNUPP LLP

provide a privilege log, nor has it indicated it intends to do so. The definitions used are clear and unambiguous; indeed, the definition of MATTEL DOCUMENTS is taken directly from Mattel's own discovery requests to MGA, which requests MGA was ordered to answer despite objections to Mattel's definitions, among other things. Mattel provides no facts or evidence supporting its baseless assertions that the RFAs are burdensome and oppressive and, as Mattel has so often argued, that failure is fatal to those objections. The RFAs cannot possibly be construed as requiring disclosure of confidential, proprietary or trade secret information. In short, every single objection is meritless, unsupportable and asserted in violation of Rules 11 and 26(g) and in bad faith. Unless Mattel agrees to withdraw each of these objections, MGA will file a motion and will seek sanctions.

**2. Mattel's repetition of many of the same objections in response to each and every RFA is equally improper.** Mattel repeats many of the same objections in its responses to each of the individual RFAs. They are just as improper in the context of specific RFAs as they are in the General Objections, and are similarly made in bad faith in each such instance. Please confirm Mattel will withdraw these objections.

**3. Mattel's objections to "never" and "ever" are also baseless.** Mattel objects to the term "never" used in RFAs 4 and 5 and "ever" used in RFA 6 as vague, ambiguous, overly broad and unduly burdensome. Those objections are nonsense. Those terms are clear and unambiguous. Please confirm Mattel will withdraw these objections.

**4. Mattel's "response" to RFA No. 4 is non-responsive.** RFA No. 4 asks that Mattel admit that it never intended to sell the Bratz line of dolls and products. Mattel attempts to dodge responding to this simple request by talking about undefined intellectual property to be used in undefined products it allegedly intends to sell. MGA is entitled to a clear admission or a denial.

**5. MGA is entitled to full, complete and unqualified answers to each of the RFAs, without any reservation or limitation based on Mattel's meritless objections.** MGA demands that such answers be provided forthwith.

## B. Mattel's Responses to Interrogatories

**1. Mattel asserts many of the same improper general objections to the interrogatories as it did to the RFAs.** In particular, general objections 2 through 5, 7, 8 and 12 are improper for all of the reasons that their counterparts were improper as to the RFAs.

**2. Mattel's other general objections are invalid.** MGA has not exceeded any applicable discovery limitation in propounding the Interrogatories. Objection 6 is baseless—Mattel must provide all information in its possession, custody or control responsive to the Interrogatories. Mattel's expert disclosure objection (9) is without basis; MGA is entitled to a full and complete response based on the information Mattel presently has. Objection 10 is meritless—Mattel is obligated to provide all responsive information. While the definition of MATTEL PRODUCTS in the Interrogatories does inadvertently omit the year, Mattel was well aware that the year is 1996, as set forth in the identical definition in MGA's concurrently propounded Requests for Production; moreover, the definition is perfectly comprehensible even without a year being inserted.

MITCHELL SILBERBERG & KNUPP LLP

Marshall M. Searcy III, Esq.
May 21, 2009
Page 3

**3. Mattel's repetition of the general objections and various objections to RFAs in response to each Interrogatory is improper for all the reasons set forth above.** I do not intend to repeat here everything said above about each repetition of objections discussed above. Our point is clear.

**4. None of Mattel's other objections has merit.** "OPERATIVE COUNTERCLAIM" is in no way vague. It means the counterclaim that is Mattel's operative pleading. If the Court grants Mattel's motion for leave to amend and the interrogatory responses require changes as a result thereof, Mattel will have an obligation to supplement its responses, but that is an issue for another day. The fact that expert testimony may ultimately bear on some of the subjects of the Interrogatories does not excuse Mattel from providing full and complete responses based on the information available to it today. As noted above, Mattel's assertions about a lack of discovery are belied by the record in this case, and would not be a valid objection in any event. There is no basis for Mattel's privilege claims, and, in any event, no privilege log has been provided.

**5. MGA is entitled to full, complete and unqualified answers to each of the Interrogatories, without any reservation or limitation based on Mattel's meritless objections.** MGA demands that such answers be provided forthwith.

## C. Mattel's Responses to Requests for Production ("RFPs")

**1. Mattel asserts many of the same improper general objections to the interrogatories as it did to the RFAs and Interrogatories.** In particular, general objections 1, 3, 49, and 12 through 14 are improper for all of the reasons that their counterparts were improper as to the RFAs and Interrogatories.

**2. Mattel's other general objections are also invalid.** Mattel asserts a boilerplate privilege objection without providing a privilege log; such an objection is invalid. (If Mattel is intending to claim a privilege with respect to any responsive document, MGA insists that Mattel provide a privilege log forthwith. Otherwise, we will file a motion to deem any and all privileges waived with respect to the documents requested). Mattel makes four objections (5 through 8) which are variations on the theme that Mattel does not have to produce documents not in its possession, custody or control; while it may be true that , the mere fact that someone else may have a document does not excuse production by Mattel if it has the document. Mattel's objection to requests requiring it to produce all documents fitting a particular description is an obvious smokescreen designed to withhold responsive documents from MGA. Mattel's effort to unilaterally control the date of production in general objection 14 is improper; the Federal Rules and the document request set the date for production, and Mattel's production is past due.

**3. Mattel's repetition of many of the foregoing objections in response to specific RFPs is equally invalid.** I do not intend to repeat here everything said above about each repetition of objections discussed above. Our point is clear.

2243800.2/39416-00002

Exhibit 22 Page 258

MITCHELL SILBERBERG & KNUPP LLP

#### 4. Specific RFPs:

**RFPs 69 through 72, 96, 98, 107, and 108.** These RFPs request the documents identified in Mattel's responses to certain of the Interrogatories, or used to prepare those responses. There is no legitimate basis for objection or withholding the documents.

**RFPs 73 through 76.** Each of these RFPs requests documents central to Mattel's Phase 2 claims, and is parallel to discovery requests which Mattel has propounded on MGA and which the Discovery Master has held to be proper. Mattel must produce all requested documents.

**RFPs 77, 78, 80 through 85 .** The documents relating to the 2007 Toy Recall are plainly relevant to Mattel's damages claims. MGA is entitled to show that decreases in Mattel's sales and profits that Mattel will claim as damage are attributable to consumer mistrust of Mattel products, not simply to competition from Bratz. Indeed, Mattel itself made a similar argument when it sought and obtained discovery from MGA about conditions at a Chinese factory. All the requested documents must be produced.

**RFP 79.** Documents about lobbying regarding proposed legislation re chemicals in Mattel products are relevant because they may contain admissions about and otherwise demonstrate the extent to which product recalls based on health and safety issues harm toy sales.

**RFPs 86, 87, 90 through 95.** These RFPs seek research and reports relating to sales or popularity of Barbie, Bratz and MATTEL HARMED PRODUCTS. The documents requested are plainly relevant to Mattel's damages claims, among other Phase 2 issues. No privilege log has been provided and thus there is no valid privilege claim or other valid objection to production. All such documents should be produced.

**RFPs 88 and 89.** Both of these requests seek documents relating to Mattel's spoliation allegations. None of the objections to said requests are valid. All such documents are relevant and should be produced.

**RFP 97.** All documents relating to Mattel plans to market, produce or sell Bratz products or products based on Bratz are plainly relevant to any number of issues in this case, including the value of the trade secrets claimed and the propriety of various forms of recovery sought by Mattel. There are no valid objections to this RFP and all responsive documents must be produced.

**RFP 99.** Mattel has made a number of accusations concerning information on Ms. Brisbois's thumb drive and supposed use of that information by MGA. MGA is entitled to all the documents requested in RFP 99 to prove that Mattel's allegations are false.

**RFPs 100 through 106.** These RFPs are exactly parallel to RFPs propounded by Mattel to MGA for personnel files of these same persons. The Court has previously ordered that MGA produce such files. For the same reasons as articulated by Mattel and adopted by the Court, Mattel must produce its personnel files for these same parties.

Exhibit 2 Page 259

MITCHELL SILBERBERG & KNUPP LLP

**RFP 109 through 110.** These requests for documents concerning Mattel's hardware backup system and e-mail preservation are obviously relevant or reasonably calculated to lead to the discovery of admissible evidence, particularly given Mattel's assertions concerning what it can and cannot produce. All responsive documents must be produced.

**5. MGA is entitled to production of all documents responsive to each of the RFPs, without any reservation or limitation based on Mattel's meritless objections.** MGA demands that Mattel withdraw its meritless objections and produce all responsive documents forthwith.

<u>Summary</u>

Mattel's objections are meritless, and MGA is entitled to full and complete responses and production with respect to every discovery request in these sets of discovery. MGA hereby demands that Mattel withdraw all of its objections and provide full and complete responses and production within 5 business days. Please advise whether Mattel will agree to provide such supplemental responses and produce all responsive documents. If we cannot resolve this matter during the meet and confer process, MGA will make a motion to compel. Moreover, given the completely inappropriate stonewalling by Mattel, MGA will seek sanctions.

Very truly yours,

Jean Pierre Nogues
of
MITCHELL SILBERBERG & KNUPP LLP

JPN/jpn
cc:   John B. Quinn, Esq.
      Jason Russell, Esq.
      Joel Klevens, Esq.
      Amman A. Khan, Esq.

Exhibit 22 Page 260

# Exhibit 23

MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**MS🅺K**

Jean Pierre Nogues
A Professional Corporation
(310) 312-3152 Phone
(310) 231-8352 Fax
jpn@msk.com

June 17, 2009

VIA E-MAIL AND U.S. MAIL

Marshall M. Searcy III, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street
Tenth Floor
Los Angeles, CA 90017-2543

Re:     **Bryant v. Mattel; Mattel's Responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production**

Dear Mr. Searcy:

I am writing to follow up on the meet and confer letter I sent you on May 21, 2009, as you have not responded to that letter.

I am at depositions out of town today and tomorrow. Please call me this Friday (June 19, 2009), so that we can discuss the matters set forth in my May 21 letter. As I said in that letter, Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production represent completely unacceptable stonewalling by Mattel. Unless we can resolve these issues on Friday, the MGA Parties will file a motion and request sanctions.

Very truly yours,

*[signature]*

Jean Pierre Nogues
of
MITCHELL SILBERBERG & KNUPP LLP

JPN/bag -- **DICTATED BUT NOT READ**
cc:     John B. Quinn, Esq.
        Jason Russell, Esq.
        Joel Klevens, Esq.
        Amman A. Khan, Esq.

**EXHIBIT 23 PAGE 261**

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

# Exhibit 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                        Date: May 21, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===============================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                                None Present
      Courtroom Deputy                           Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:    ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
                NO. 11 (DOCKET #5185)

                ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
                ANSWER AND COUNTERCLAIMS (DOCKET #5143)

                ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
                APPEAL (DOCKET #5396)

                ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
                PRODUCT LINE INFORMATION (DOCKET #5425)

                ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
                APPOINTING MGA MONITOR

                ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
                REQUIRING MANDATORY SETTLEMENT CONFERENCE

    These matters were heard on May 18, 2009.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        1              Time: 03/02

Exhibit 24 Page 262

### I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

Exhibit 24  Page 263

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit rather than their general powers and that, in any event, the relevant time period to measure managing agent status is not at the time of deposition but is rather at the time of the events giving rise to the lawsuit. Although these arguments find some support, the Discovery Master's conclusion regarding this first <u>Sugarhill</u> factor (and its <u>Libbey Glass</u> analog) is not contrary to law. The first <u>Sugarhill</u> factor is clearly concerned with an employee's general power; the fourth factor, which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities regarding matters involved in the litigation. The cases cited by Mattel support its timing argument; however, cases cited by the MGA parties establish that other cases favor a contrary position. Neither side's authority is controlling, and the Court therefore concludes the position adopted by the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor reported, could provide substitute testimony to them is clear error. Mattel's ultimate point is that no one can testify more accurately and more on point than can the two witnesses regarding their alleged trade secret theft. Again, this is not an invalid point. Indeed, it is possible that if such theft occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the MGA parties and instead acted on their own accord (the MGA parties alternatively contend). The fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony regarding any theft would not be on behalf of MGA at all. Who can or cannot testify about these events that may or may not have occurred on behalf of any MGA party -- let alone who can testify best -- is far from clear. This area of inquiry is fraught with uncertainty. The Discovery Master's conclusion one way or another on this issue, therefore, cannot be said to be clear error. <u>See Wolpin v. Philip Morris Inc.</u>, 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that MGA Mexico's interests and the witnesses' interests are at odds. The witnesses are currently employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they have separately retained counsel to represent their interests. Additionally, the MGA parties have maintained that if any trade secret theft occurred, it occurred without their knowledge or consent. These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or contrary to law, and the Court therefore DENIES Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __cls_____
<u>Time: 03/02</u>

Exhibit 24  Page 264

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir. 1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit 24  Page 265

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

   The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

   The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances,* constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

   [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

Exhibit 24  Page 266

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

MINUTES FORM 90
CIVIL -- GEN                                    6

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit 24  Page 267

### III.  EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18.  For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

MINUTES FORM 90
CIVIL -- GEN                              7

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit 24  Page 268

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

## IV. EX PARTE APPLICATION RE DISCLOSURE OF
## 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason. Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
## AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver. In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents: (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808. In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

### A.    Expiration of Temporary Receivership

IT IS ORDERED THAT:

1.    The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.    The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.    The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.    The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

Exhibit 24 Page 269

costs, on or before May 28, 2009;

5.  The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.  Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

**B.     Appointment of MGA Monitor**

1.  For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

   a.   The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, <u>see supra</u> section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging.  Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information.  <u>The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.</u>

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants.  The Bratz Assets include, without limitation:

a.  All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

Exhibit 24  Page 270

b.   The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.   The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.   The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g.   All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h.   "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

MINUTES FORM 90
CIVIL -- GEN                                                10                    Initials of Deputy Clerk __cls_____
                                                                                   Time: 03/02

Exhibit 24  Page 27/

e.   At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.   The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.   The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.   The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

i.   The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.   The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8]  The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit 24  Page 272

k.    The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order.  The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties.  Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.    The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.    The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor.  The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment.  Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.    The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court.  Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.    Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.    The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.    No bond shall be required in connection with the appointment of the Monitor.  Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

MINUTES FORM 90                                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        12                   Time: 03/02

Exhibit 24  Page 274

2.   Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.   MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.   No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.   For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.   Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.   All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI.  IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009. The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                         13                  Time: 03/02

Exhibit 24  Page 275

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII.  NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90
CIVIL -- GEN                                           14

Initials of Deputy Clerk __cls_____
Time: 03/02

Exhibit 24  Page **276**

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

IT IS SO ORDERED.

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            15               Time: 03/02

Exhibit 24 Page 277

# Exhibit 25

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3152

WRITER'S INTERNET ADDRESS
marshallsearcy@quinnemanuel.com

June 18, 2009

VIA ELECTRONIC MAIL

Jean Pierre Nogues
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064

Re:    Bryant v. Mattel, Inc.

Dear Mr. Nogues:

I write in response to your letters regarding Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production.

I am available to meet and confer telephonically with you at 2 p.m. this Friday, June 19, 2009. In anticipation of the discussion, we would like for MGA to be prepared to discuss why MGA believes it has not exceeded its allotted interrogatories in this case. MGA served 66 numbered interrogatories, many of which are compound and, thus, count as more than one interrogatory.

Further, with respect to the Requests for Production, please be prepared to explain why these requests are not duplicative of or subsumed within previously served requests for production. It seems that, to the extent the Requests are not duplicative, they target privileged material or seek documents not relevant to any claims in the case.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

07209/2977123.1

EXHIBIT 25 PAGE 278

I look forward to speaking to you.

Very truly yours,

Marshall M. Searcy III

MMS
07209/2977123.1

EXHIBIT 25 PAGE 279

# Exhibit 26

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017  TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3152**

WRITER'S INTERNET ADDRESS
**marshallsearcy@quinnemanuel.com**

June 22, 2009

**VIA ELECTRONIC MAIL**

Jean Pierre Nogues
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064

Re:    Bryant v. Mattel, Inc.

Dear Mr. Nogues:

I write concerning the parties' meet and confer on Friday, June 19, 2009 regarding Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production.

**Mattel's Responses to MGA's Phase 2 Requests for Admission**

During our conference, I explained that Mattel stands by its objections to MGA's Phase 2 Requests for Admission Nos. 1-3 and 5-7, but confirmed that its denial of each is not qualified based on those objections.  Mattel is willing to serve supplemental responses to clarify its denials to these RFAs.  With respect to RFA No. 4, you stated that MGA would not clarify the meaning of this RFA, that the time period for the RFA was intended to be unlimited and to even include the time that Mattel did not know about the existence of Bratz.

**Mattel's Responses to MGA's First Set of Phase 2 Interrogatories**

During our call, I also explained that MGA has exceeded its 75 total interrogatories in this case. Since the inception of this lawsuit, Mattel has answered 46 numbered interrogatories, many of which are compound; thus, the 46 numbered interrogatories add up to at least 82 interrogatories.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 West Madison Street, Suite 2450, Chicago, IL 60661 | TEL (312) 705-7400 FAX (312) 705-7401
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100

07975/2982153.1

EXHIBIT __26__ PAGE _270_

See, e.g., Interrogatory No. 6 of Bryant's First Set of Interrogatories, which is equal to at least 10 interrogatories; Interrogatory No. 1 to MGA's First Set of Interrogatories, which is equal to at least 15 interrogatories; Interrogatory No. 3 to MGA's First Set of Interrogatories, which is equal to at least 10 interrogatories. Including the interrogatories that Mattel has already agreed to supplement, Mattel will have answered 64 numbered interrogatories that, in actuality, total at least 100 interrogatories.

As I agreed to do on Friday, I have attached correspondence from January 2008 in which we explained that Defendants had already served in excess of the 50 interrogatory limit set previously by the Court. I have also attached our letter confirming the parties' agreement that MGA would identify seven interrogatories for Mattel to supplement. As noted in that letter, under the most conservative approach, Mattel had already answered "at least 43 interrogatories" by January 2008. To avoid motion practice, Mattel supplemented seven numbered additional interrogatories identified by MGA.

After Mr. Proctor sent this letter, at the February 11, 2009 hearing, the Court granted an additional 25 interrogatories to each side. Accordingly, based on this ruling, and despite Mattel's previous objection that defendants had exceeded the interrogatory limit, Mattel agreed to supplement its responses to MGA's Second Set of Interrogatories, namely Interrogatory Nos. 20, 21, 22, 23, 28 and 29. Mattel is in the process of supplementing its original responses to these six interrogatories. At least two of these interrogatories, Nos. 28 and 29, are compound, each in fact being 14 interrogatories because each asks about each of Mattel's 14 counterclaims; thus, these six numbered responses consist of at least 32 interrogatories. See Discovery Master's Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories; Denying Mattel's Motion to Compel Interrogatory Responses, dated September 5, 2007 at 7:10-9:2. Nonetheless, Mattel agreed to supplement its original response to No. 29 and its original objections to Nos. 20, 21, 22, 23 and 28. Thus, even if the Court created a so-called "blank slate" as MGA contends, the 14 new interrogatories in MGA's "Phase 2 First Set of Interrogatories" are all in excess of the 25 new interrogatories allowed by the Court. Thus, under any calculation, MGA has exceeded its interrogatory limit in this case.

EXHIBIT 26 PAGE 28

**Mattel's Responses to MGA's Second Set of Phase 2 Requests for Production**

I explained that many of the Requests for Production are duplicative of previously served RFPs. You confirmed that you would research how the parties had dealt in the past with RFPs seeking the same documents as previously served requests. You also clarified that with respect to the "MATTEL HARMED PRODUCTS", as defined by MGA, the type of information that MGA is seeking is simply sales figures and data, such as sales by units, sales by dollar, revenue, costs, and gross and net profits.

I look forward to speaking to you on Wednesday, June 24, 2009 at 2 p.m.

Very truly yours,

/s/ Marshall M. Searcy III


Marshall M. Searcy III

MMS
07975/2982153.1

EXHIBIT 26 PAGE 282

# Exhibit 27

## MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

# MS⬛K

Jean Pierre Nogues
A Professional Corporation
(310) 312-3152 Phone
(310) 231-8352 Fax
jpn@msk.com

June 24, 2009

VIA E-MAIL AND U.S. MAIL

Marshall M. Searcy III
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street
Tenth Floor
Los Angeles, CA 90017

Dear Mr. Searcy:

I write in response to your letter dated June 22, 2009 concerning Mattel's responses to MGA's First Set of Phase 2 Requests for Admission, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production.

**Mattel's Responses to MGA's First Set of Phase 2 Requests for Admission**

I am confused by your statements regarding Requests for Admission Nos. 1-3 and 5-7. You seem to be saying that Mattel "stands by" its objections, but will serve supplemental responses to "clarify" that its denials are not based on those objections. Mattel has repeatedly insisted that the MGA Parties must withdraw objections that Mattel deems improper even when the MGA Parties have agreed to answer or supplement discovery responses. Further, while we did discuss Mattel's simply affirming that its denials were substantive and not based on objections, your statement that Mattel will "stand by" those objections suggests otherwise. Moreover, after giving the matter some additional thought, it is obvious to me that if the denials are not qualified by the objections, there is no reason for those objections to be included. Finally, Mattel's refusal to answer follow up interrogatories asking for, among other things, facts supporting any Mattel denials of the requests for admission further compels our conclusion that we cannot accept Mattel's proposal. Under all these circumstances, unless Mattel agrees to serve supplemental responses in which it withdraws its improper objections, and serves full and complete responses to the follow up interrogatories, the MGA Parties will move to compel.

Mattel's position as to RFA No. 4 is simply stonewalling. During our telephone conversation, you and your colleague, Ms. Hauler, took the position that this RFA was "vague and ambiguous" because it was unlimited in time, and could include a time period before Mattel even knew about Bratz. Frankly, that position is unsupportable. "Never" means "not ever." If Mattel did not ever intend to sell Bratz, then it must admit the RFA. If Mattel did not know about Bratz, it obviously could not have intended to sell Bratz at that time, but how does that make it difficult to answer the RFA? If at some point after Mattel learned about Bratz, it formed an intent to sell Bratz, it

11377 West Olympic Boulevard, Los Angeles, California  90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

EXHIBIT _27_ PAGE _283_

## MITCHELL SILBERBERG & KNUPP LLP

Marshall M. Searcy III
Quinn Emanuel Urquhart Oliver & Hedges LLP
June 24, 2009
Page 2

can deny the RFA. Mattel can (and, indeed must), then explain the facts on which it bases its denial in answer to Interrogatory No. 4. What Mattel cannot do, however, is avoid providing a straightforward admission or denial of this RFA based on the untenable objection that the word "never" is "vague and ambiguous." Unless Mattel agrees to provides a supplemental response withdrawing the improper objections to RFA No. 4 (including all the other improper objections, such as the spurious objection that the RFA calls for information subject to the attorney client privilege or work product doctrine), the MGA Parties will move to compel.

### Mattel's Responses to MGA's First Set of Phase 2 Interrogatories

Mattel's position is confusing to the point of unintelligibility, and is untenable. Preliminarily, you state that "Mattel has answered 46 numbered interrogatories" that "add up to at least 82 interrogatories." But then, two sentences later, you state that, "[i]ncluding the interrogatories that Mattel has already agreed to supplement, Mattel will have answered 64 numbered interrogatories that, in actuality, total at least 100 interrogatories." However, you only mention that Mattel is in the process of supplementing responses to 6 additional interrogatories. How 46 plus 6 adds up to 64 remains a mystery.

More important, however, there is not now and never has been any agreement or understanding on the part of the MGA Parties that if Mattel supplemented interrogatories propounded during Phase I, those supplemental responses would count against the number of interrogatories allowed in Phase 2.

We have spoken to Rob Herrington, the Skadden lawyer involved in the negotiation with Dylan Proctor in January 2008 concerning the Second Set of Interrogatories. What is clear is that Mattel took the position at that time that the MGA Parties had propounded more than 50 interrogatories, and the MGA Parties disagreed. In order to avoid motion practice about their respective positions, both parties agreed that the MGA Parties would identify 7 interrogatories that the MGA Parties needed Mattel to answer for purposes of the Phase 1 trial, and that they would deal with their disputes about the other interrogatories later. Shortly thereafter, Judge Larson stayed Phase 2 discovery, so those disagreements were never discussed or resolved.

In April, Caroline Mankey had discussions with Diane Hutnyan about various discovery requests served during Phase 1 which the MGA Parties believed Mattel had an obligation to supplement. Among those discovery requests were Interrogatory Nos. 20-23 and 28-29. At no time during those negotiations did Ms. Hutnyan or anyone else from Quinn Emanuel ever take the position that the objections to those interrogatories had been proper because the MGA Parties had exceeded the number of interrogatories allowed during Phase 1, nor was there any discussion or agreement that if Mattel supplemented its responses to those interrogatories, they would count against the 25 that Judge Larson stated (on February 11, 2009) the parties would be allowed in Phase 2. The written record is crystal clear on this. Mattel cannot now sandbag the MGA Parties after the fact by taking the position that it secretly intended to condition its agreement to supplement on the never-discussed proposition that its answers to these interrogatories, which had been served during Phase 1, would count against the limit on interrogatories to be propounded in Phase 2.

EXHIBIT 2 7 PAGE 284

Marshall M. Searcy III
Quinn Emanuel Urquhart Oliver & Hedges LLP
June 24, 2009
Page 3

In short, Mattel's position is not supported by the record and is flatly inconsistent with the
positions it has previously taken before the Discovery Master in the Phase 2 proceedings. If
Mattel and its counsel persist in their refusal to answer the MGA Parties' Phase 2 Interrogatories
on this basis, the MGA Parties will file a motion to compel.

### Mattel's Responses to MGA's Second Set of Phase 2 Requests for Production

Your letter states that, during our phone call, you "explained that many of the Requests for
Production are duplicative of previously served RFPs." That is not true; you asserted that many
of the RFPs were duplicative, but did not provide a single example. Further, I did not then nor
do I now agree that that this assertion is true. What I did say in our telephone conference on
June 19, 2009 was that we would defer discussion of the alleged duplicative nature of these
Requests until the parties had each consulted with colleagues and/or co-counsel as to the parties'
past protocol for dealing with responsive documents that had been previously produced.
Strangely, your letter states that I said I would research this, notwithstanding your own
agreement to talk to your own colleagues about the matter. In any event, I have now confirmed
that there was no established past practice. However, since it does not make sense to repeatedly
produce the same documents, I propose that we agree on a going forward basis that documents
already produced by a party in response to one document request do not have to be produced
again by that party if they happen to be responsive to another document request. This proposed
agreement would not relieve any party of producing all non-identical copies of any responsive
documents, nor would it allow a party to avoid production because another party or third party
had produced a particular document. Moreover, if it is any party's position that all non-
privileged responsive documents have already been produced, that must be clearly stated in the
party's written response.

Your letter also states that I "clarified," with respect to "MATTEL HARMED PRODUCTS,"
that "the type of information that MGA is seeking is *simply* sales figures and data, such as sales
by units, sales by dollar, revenue, costs, and gross and net profits." (Emphasis added.) While
this appears to be a reasonably accurate representation of the *examples* I gave during our phone
call, the Requests for Production speak for themselves. My statements during our phone call
were not intended to limit the scope of the Requests, but merely to clarify the *types* of documents
sought with respect to the particular request under discussion. It bears noting that these Requests
in large part parallel Requests served by Mattel, in response to which MGA has produced
significant numbers of documents. MGA is entitled to *all* documents responsive to its Requests,
unlimited by any purported limitation in your June 22, 2008 letter.

2283401.2/39416-00002

EXHIBIT 27 PAGE 285

## MITCHELL SILBERBERG & KNUPP LLP

Marshall M. Searcy III
Quinn Emanuel Urquhart Oliver & Hedges LLP
June 24, 2009
Page 4

I look forward to speaking with you today at 2:00 p.m.

Very truly yours,

Jean Pierre Nogues
of
MITCHELL SILBERBERG & KNUPP LLP

JPN/acs

EXHIBIT _27_ PAGE _286_

# Exhibit 28

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3152**

WRITER'S INTERNET ADDRESS
**marshallsearcy@quinnemanuel.com**

June 26, 2009

<u>VIA ELECTRONIC MAIL</u>

Jean Pierre Nogues
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064

Re:     <u>Bryant v. Mattel, Inc.</u>

Dear Mr. Nogues:

I write concerning the parties' meet and confer on Wednesday, June 24, 2009 regarding Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production.

**Mattel's Responses to MGA's Phase 2 Requests for Admission**

During our conference, I agreed that Mattel would supplement our responses to MGA's Phase 2 Requests for Admission Nos. 1-7 by Thursday, July 6, 2009. With respect to RFA No. 4, I explained that this RFA is vague and ambiguous as presently written, but that we would supplement our response based on our understanding of the Interrogatory.

**Mattel's Responses to MGA's First Set of Phase 2 Interrogatories**

The parties were unable to reach agreement as to whether or not MGA has exceeded its allotted interrogatories in this case, and thus we did not get to the other objections interposed by Mattel. You stated your belief that Mattel's position is inconsistent with Mattel's previous positions on interrogatories. I asked you to identify the pleadings you believed are inconsistent. Though you could not identify them with specificity, we went back and reviewed the one pleading that you

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL: (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561 1711 FAX +81 3 5561 1712

07975/2988448.3

**EXHIBIT _28_ PAGE _287_**

mentioned, as well as the prior orders in the case, and do not believe there is any inconsistency. Because we cannot agree, it appears that we will need guidance from the Discovery Master on this threshold counting issue.

### Mattel's Responses to MGA's Second Set of Phase 2 Requests for Production

As I explained Wednesday, a large number of the Requests for Production in MGA's Second Set of Phase 2 Requests for Production are duplicative of previously served RFPs, including RFPs that were limited by the previous Discovery Master. You confirmed that you did not intend for Mattel to reproduce documents served previously. In light of this statement, Mattel will agree to supplement its responses by July 6 as follows:

### Requests To Which Mattel Will Supplement Its Responses:

The following RFPs seek documents previously produced in response to other RFPs, but Mattel will supplement its responses to these RFPs to clarify that it will produce additional responsive, non-privileged documents found after a reasonably diligent search, if any, on a rolling basis.

### REQUEST FOR PRODUCTION NO. 88:
All DOCUMENTS that REFER OR RELATE to ANY alleged destruction or spoliation of evidence by or on behalf of MGA, as alleged in YOUR OPERATIVE COUNTERCLAIMS in THIS ACTION.

### REQUEST FOR PRODUCTION NO. 89:
All DOCUMENTS that REFER OR RELATE to the DOCUMENTS to which Farhad Larian allegedly gave YOU access and which YOU allegedly viewed or inspected before Farhad Larian allegedly destroyed or spoiled the same, including but not limited to ANY lists of such DOCUMENTS to which YOU actually were given access and/or YOU actually viewed or inspected.

### REQUEST FOR PRODUCTION NO. 99:
ALL DOCUMENTS that constitute or REFER OR RELATE to any analysis of Janine Brisbois' "thumb" drive referred to in YOUR OPERATIVE COUNTERCLAIMS, including but not limited to any analysis by or on behalf of KPMG.

### REQUEST FOR PRODUCTION NO. 100:
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Carlos Gustavo Machado Gomez ("Machado"), including but not limited to ANY employment agreements between YOU and Machado, all confidentiality or non-disclosure agreements signed by Machado, and ANY other DOCUMENTS signed by Machado that concern the use, confidentiality, and disclosure of MATTEL'S TRADE SECRETS.

### REQUEST FOR PRODUCTION NO. 101:
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Mariana Trueba Almada ("Trueba"), including but not limited to ANY

EXHIBIT 28 PAGE 288

employment agreements between YOU and Trueba, ANY confidentiality or non-disclosure agreements signed by Trueba, and ANY other DOCUMENTS signed by Trueba that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 102:**

YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Pablo Vargas San Jose ("Vargas"), including but not limited to ANY employment agreements between YOU and Vargas, ANY confidentiality or non-disclosure agreements signed by Vargas, and ANY other DOCUMENTS signed by Vargas that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 103:**

YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Ron Brawer ("Brawer"), including but not limited to ANY employment agreements between YOU and Brawer, ANY confidentiality or non-disclosure agreements signed by Brawer, and ANY other DOCUMENTS signed by Brawer that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 104:**

YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Janine Brisbois ("Brisbois"), including but not limited to ANY employment agreements between YOU and Brisbois, ANY confidentiality or non-disclosure agreements signed by Brisbois, and ANY other DOCUMENTS signed by Brisbois that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 111:**

All DOCUMENTS that refer or relate to ANY contacts allegedly made by Ron Brawer after his resignation from MATTEL to past or present MATTEL employees, as alleged in paragraph 60 of YOUR OPERATIVE COUNTERCLAIMS.

**Requests Intertwined with Improper Interrogatories:**

Certain of the RFPs are inextricably intertwined with MGA's First Set of Phase 2 Interrogatories, in that the documents responsive to these RFPs depend upon Mattel's answers to those interrogatories. Because the interrogatories in question exceed MGA's allotted interrogatories, Mattel cannot produce documents in response to the RFPs unless or until the Discovery Master rules on the counting issue. The following RFPs fall into this category: RFP Nos. 69, 70, 71, 72, 73, 74, 75, 76, 80, 82, 84, 85, 90, 93, 98, 107 and 108.

EXHIBIT _28_ PAGE _289_

**Overbroad Requests To Which Mattel Will Not Supplement Its Responses:**

<u>Requests Seeking Documents Relating To Bratz</u>

RFP Nos. 72, 87, 92, 95 and 97 seek documents relating to the Bratz line of dolls and products. The documents responsive to RFP No. 72 depend upon Mattel's answer to RFA No. 4, the RFA which you refused to limit by timeframe or product line. To the extent this RFP seeks documents regarding any Mattel product developed from the intellectual property that the jury found Mattel owned in the Phase 1 trial, such documents appear to be irrelevant. RFP No. 72 is also dependent upon Mattel's answer to Interrogatory No. 4, one of the interrogatories that is beyond MGA's allotted number.

To the extent RFP Nos. 87, 92, 95 and 97 seek information regarding any Mattel product developed from the intellectual property that the jury found Mattel owned in the Phase 1 trial, the requests are overbroad and seek documents that again appear to be irrelevant. Thus, RFP Nos. 95 and 97 are wholly objectionable on this ground alone. RFP Nos. 87 and 92 seek documents that refer or relate to any market research generated from January 1, 2000 to the present relating to Bratz popularity (RFP No. 87) or the sale of the Bratz line of dolls and products (RFP No. 92). The previous discovery master found similarly overbroad requests that sought all documents referring or relating to Bratz to be overbroad in that they did not "have anything to do with the claims and defenses in this case." <u>See, e.g.</u>, Discovery Master's Order, dated May 22, 2007, at 17:14-16, 18:16-19, 21:1-7. In addition, RFP Nos. 87 and 92 are duplicative of previous requests, including MGA RFP Nos. 175, 555, 557, 567, 737 and 787.

<u>Requests Seeking Documents Relating To Barbie</u>

RFP Nos. 86, 91 and 94 seek broad categories of documents relating to "the Barbie line of dolls and products," an undefined term. RFP Nos. 86 and 91 seek market research generated from January 1, 2000 to the present regarding the sales or popularity of the Barbie line of dolls and products (RFP No. 86) or the sale of the Barbie line of dolls and products (RFP No. 91). These two requests seek documents responsive to previously served MGA requests, including RFP Nos. 149-164, 555, 567, 737 and 787. Like those previously served requests, RFP Nos. 86 and 91 are overbroad and seek documents that are irrelevant. RFP No. 94 seeks documents referring or relating to *future* sales of the Barbie line of dolls and products, which are also irrelevant. Notably, the Court previously rejected MGA arguments that such information is material.

<u>Requests Seeking Documents Relating To "The 2007 Toy Recall"</u>

RFP Nos. 77, 78, 80, 81, 82, 83 and 84 seek broad categories of documents relating to "the 2007 TOY RECALL." These broad categories are duplicative of MGA RFP Nos. 591-593. Like those previous requests, these requests seek documents that do not have anything to do with the claims and defenses in this case.

<u>Requests Seeking Documents Relating To Jon Corey's January 9 Letter</u>

RFP Nos. 109 and 110 seek documents relating to the hardware based backup system for Mattel's Exchange servers referenced in Jon Corey's letter of January 9, 2009. However, Mattel

EXHIBIT 28 PAGE 290

requested that MGA object to Mattel's change to this hardware based backup system by January 14, 2009. MGA failed to respond at all until February 10, 2009 -- more than a month after Mr. Corey's initial letter. Thus, MGA waived any objections to the hardware change and is not entitled to discovery regarding the hardware. In addition, these requests are overbroad, irrelevant and unduly burdensome.

Request Seeking Communications Relating to Lobbying

RFP No. 79 seeks "ALL non-privileged COMMUNICATIONS between MATTEL and ANY PERSON that REFER OR RELATE to ANY lobbying efforts by or on behalf of MATTEL concerning proposed legislation before the U.S. Congress to ban ANY chemicals or other substances found in MATTEL PRODUCTS." This request seeks documents that do not have anything to do with the claims and defenses in this case.

Requests Seeking Personnel Files of Employees and Contractors Moving To Mattel

RFP Nos. 105 and 106 seek Mattel personnel files for any past employees or contractors hired since January 1, 1998 who worked for MGA prior to working for Mattel (RFP No. 105) or who worked in designing, manufacturing, producing or selling dolls prior to working for Mattel (RFP No. 106). Both of these requests are overbroad and seek documents that do not have anything to do with the claims and defenses in this case.

Mattel anticipates serving supplemental responses to RFP Nos. 88, 89, 99, 100, 101, 102, 103, 104 and 111 on Thursday, July 6, 2009 and producing any additional responsive documents on a rolling basis after that date.

Very truly yours,


/s/ Marshall M. Searcy

Marshall M. Searcy III

MMS
07975/2988448.3

EXHIBIT __28__ PAGE _291_

# Exhibit 29

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12           Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15           Defendant.                    ORDER GRANTING JOINT MOTION
                                           FOR PROTECTIVE ORDER
16                                         REGARDING MATTEL'S
                                           INTERROGATORIES; DENYING
17                                         MATTEL'S MOTION TO COMPEL
                                           INTERROGATORY RESPONSES
18
    CONSOLIDATED WITH
19  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
20  INC.

21

22

23                      I. INTRODUCTION

24          Presently pending are two separate motions pertaining to Mattel's Third Set of

25  Interrogatories: (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26  Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28  Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

                        9-05-07

EXHIBIT 29 PAGE 292

1    Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2    Third Set of Interrogatories.[2]  Having considered the motion papers and the comments of counsel

3    at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4    interrogatory responses is denied.  MGA's request for sanctions in connection with Mattel's

5    motion to compel interrogatory responses is also denied.[3]

6                                    II. BACKGROUND

7            In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8    Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9    In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10   Bryant four questions and MGA seven questions.  Of these, three interrogatories to Bryant were

11   identical to three interrogatories to MGA.  In December of 2006, Mattel served MGA with its

12   First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13   interrogatories.

14           During a scheduling conference held on February 12, 2007, the district court imposed a

15   limit on interrogatories of "50 for each side for both cases."  February 27, 2007 Minute Order,

16   Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7.  When MGA asked

17   whether all Defendants would count as one "side" under the court's order, the court confirmed

18   that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19   parties."  Tr. of scheduling conference, Proctor Dec., Ex. 7.  After MGA clarified that there were

20   actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23   _____

24        [1]  Defendants submitted their joint motion on July 10, 2007.  Mattel submitted its opposition on July 17,
     2007.  Defendants submitted their reply brief on July 20, 2007.

25        [2]  Mattel submitted its motion to compel on July 18, 2007.  Defendants submitted an opposition on August
     1, 2007.  Mattel submitted its reply brief on August 6, 2007.

26
          [3]  The Discovery Master determined that a hearing was not necessary.
27

28   Bryant v. Mattel, Inc.,                                                                                2
     CV-04-09049 SGL (RNBx)

EXHIBIT 29 PAGE 293

1   interrogatories on Mattel in addition to MGA's interrogatories.  Bryant stated that he probably

2   would not.  The court responded as follows:

> Let's try to work within the confines of the 50 interrogatories, and if you
> need more, again, the court is going to be forthcoming, if there's a need for it.
> And it's the type of order that if you can stipulate amongst yourselves, you're not
> going to need an order from the court.
>
> But if you're not agreeing amongst yourselves, then you're going to have
> to come back to the court before you bust those limits.  Unlike every other order
> the court issues, where once the court issues an order and you need an order from
> the court to alter that, this is one that I will give you authority amongst yourselves
> to stipulate to a greater number.  But [let's] be reasonable.  I can't imagine you
> can't work this out.  I just don't want to have open-ended numbers of
> interrogatories and experts.

10   Id. at 24:5-18.  The court also directed the parties to return to court if they were unable to reach

11   an agreement.  Id. at 24:23.

12      On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" –

13   MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant

14   – asking each of these four defendants the same nineteen questions.  On July 9, 2007, MGA,

15   MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of

16   Interrogatories and no responses.  The parties met and conferred on July 10, 2007.  Defendants

17   refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty

18   interrogatory limit and that the interrogatories were otherwise objectionable on several grounds.

19   Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories

20   that are compound and by serving interrogatories on multiple responding parties on the "same

21   side."  By Defendants' calculations, when each discrete subpart of each of Mattel's

22   interrogatories served on each of the responding parties are counted separately, Mattel has

23   served, at a minimum, 227 separate interrogatories.  In contrast, Mattel contended that its

24   interrogatories are not compound, and that each identical interrogatory it serves should be

25   counted as one, regardless of how many parties it serves on the "other side."  By Mattel's

26   calculations, it has propounded a total of forty-three non-identical interrogatories.  The parties

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 29 PAGE 294

1    also discussed potentially stipulating to a greater number of interrogatories but apparently did not

2    reach an agreement.

3           Defendants move for a protective order preventing Mattel from serving additional

4    interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify

5    which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed

6    by the district court.  Mattel opposes the motion, contending that it has not exceeded the 50

7    interrogatory limit set by the district court.  In a separate motion, Mattel moves to compel

8    Defendants to provide responses to its Third Set of Interrogatories.

9                                    III. STANDARDS

10          Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice

11   requires to protect a party or person from annoyance, embarrassment, oppression, or undue

12   burden or expense," including "that the disclosure or discovery not be had."

13                                    IV. DISCUSSION

14          Defendants' motion for a protective order raises essentially three issues:  (1) whether an

15   identical interrogatory served on several Defendants should be counted as only one interrogatory

16   or counted separately for each Defendant served with the identical interrogatory; (2) whether an

17   interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of

18   such facts," and "identify all documents" should be counted as a single interrogatory or three

19   separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal

20   theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21   A. The Fifty "Per Side" Limit

22          The district court limited interrogatories to fifty "per side."  Although the district court's

23   order does not speak directly to this issue, the most reasonable approach is to count one identical

24   interrogatory served on all six of the Defendants as one interrogatory.  Under this approach,

25   Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants

26   collectively may serve a total of 50 non-identical interrogatories on Mattel.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 29 PAGE 295

1    Defendants' alternative approach is not realistic because it would leave Mattel with far

2    fewer interrogatories than the 50 permitted by the district court. Indeed, Defendants' approach

3    would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4    Rule 33(a), Fed.R.Civ.P. Under Defendants' approach, Mattel would be limited to approximately

5    eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6    interrogatories on Mattel. Such an imbalance would be fundamentally unfair.

7    Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8    served on all six of the Defendants is counted as one interrogatory.

9    B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with

10   knowledge; and (3) identify all documents

11   Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12   counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13   interrogatories a party may serve upon any other party. Although Rule 33(a) does not define the

14   term "discrete subparts," The Advisory Committee addresses this issue and provides the

15   following guidance as to when subparts should and should not count as separate interrogatories:

16   > Each party is allowed to serve 25 interrogatories upon any other party, but must
17   > secure leave of court (or stipulation from the opposing party) to serve a larger
     > number. Parties cannot evade this presumptive limitation through the device of
     > joining as 'subparts' questions that seek information about discrete separate
18   > subjects. However, a question asking about communications of a particular type
     > should be treated as a single interrogatory even though it requests that the time,
19   > place, persons present, and contents be stated separately for each such
     > communication.

20

21   Advisory Committee Notes for the 1993 Amendments to Rule 33. A leading treatise has

22   explained that "it would appear that an interrogatory containing subparts directed at eliciting

23   details concerning the common theme should be considered a single question, although the

24   breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller &

25   Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994). "Although

26   there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28

EXHIBIT 29 PAGE 296

1  weight of authority interpreting <u>Rule 33(a)</u> requires examining whether the subparts are

2  'logically or factually subsumed within and necessarily related to the primary question.'"

3  <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4  <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting <u>Ginn v. Gemini</u>

5  <u>Inc.</u>, 137 F.R.D. 320, 322 (D. Nev. 1991).

6        Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7  whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8  (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9  documents referring or relating to such facts.  On the one hand, for example, in <u>United States ex</u>

10  <u>rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.</u>, 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11  the court explained that an "interrogatory may properly seek identification of documents and facts

12  supporting a contention, but it may not do so in a single interrogatory."  <u>See also</u> <u>Nobles v. Jacobs</u>

13  <u>IMC</u>, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14  responding party to state all facts regarding a particular issue and to identify all persons having

15  knowledge of such information is two separate interrogatories); <u>Chapman v. California Dept. of</u>

16  <u>Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17  disclosure of facts (including the identity of persons with knowledge) and documents as two

18  separate interrogatories); <u>Kendall v. GES Exposition Services, Inc.</u>, 174 F.R.D. 684, 685-86 (D.

19  Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20  treated as two subparts).  On the other hand, for example, in <u>Krawczyc v. City of Dallas</u>, 2004

21  WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22  facts supporting a contention and to identify persons with knowledge of those facts counts as one

23  interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24  "factually subsumed within and necessarily related to the primary question."

25        In the instant case, most of Mattel's interrogatories follow the same format, asking the

26  responding party to state all facts supporting a contention or contentions, to identity persons with

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                    6

EXHIBIT _29_ PAGE _297_

1    knowledge, and to identify all documents that refer or relate to such acts. Notwithstanding

2    caselaw to the contrary, these subparts are not discrete. Rather, the subparts are related and

3    directed to the underlying details of a specifically identified contention (or contentions) in a

4    manner similar to the example given in the Advisory Committee Notes: "a question asking about

5    communications of a particular type should be treated as a single interrogatory even though it

6    requests that the time, place, persons present, and contents be stated separately for each such

7    communication." Therefore, subparts seeking facts supporting a contention, the identity of

8    persons with knowledge, and documents are not counted separately for purposes of applying the

9    50 interrogatory limit.

10    C. Interrogatories Addressing Several Discrete Issues

11          Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12    compound because they address discrete issues. For example, Mattel has propounded the

13    following interrogatory:

14          State all facts that support YOUR contention, if YOU so contend, that one
            or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole
15          or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
            IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
16          that REFER OR RELATE TO such facts.[4]

17    This interrogatory is directed to four separate and discrete defense theories: unclean hands,

18    estoppel, waiver and consent. Therefore, the interrogatory is compound and each of the four

19    discrete subparts should be counted as a separate interrogatory. See Safeco of America, 181

20    F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21    interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22    be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23    2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25
     _____

26          [4] Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

27

28    Bryant v. Mattel, Inc.,                                                            7
      CV-04-09049 SGL (RNBx)

EXHIBIT 29 PAGE 298

1    about all elements of a given claim was compound and explaining that each element of a claim is

2    discrete and constitutes a separate interrogatory).

3         Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4    factual matters:

5              State all facts that support YOUR contention, if YOU so contend, that
             YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
6              any other agreement or contract between MATTEL and BRYANT, or aid or abet
             any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
7              when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
             rights to BRATZ or when BRATZ performed work or services with or for MGA
8              while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
             knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
9              such facts.[5]

10   This interrogatory includes three different legal contentions: (1) intentional interference with the

11   Inventions Agreement; (2) intentional interference with any other agreement or contract between

12   Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13   owed by Bryant to Mattel.[6]  In addition, this interrogatory asks the responding party to apply two

14   different sets of factual allegations to the three different legal contentions.  Therefore, the

15   interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16        The following additional interrogatories contain similar types of discrete and separate

17   subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18   subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19   discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20   discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21   into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24        [5]  Id. (No. 21).

25
         [6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
26   of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
     presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.
27

28
     Bryant v. Mattel, Inc.,                                                                          8
     CV-04-09049 SGL (RNBx)

EXHIBIT _29_ PAGE _299_

1  propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2  order.

3                               V. CONCLUSION

4          For the reasons set forth above, Defendants' motion for a protective order is granted, and

5  Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6  serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7  imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8  compel interrogatory responses is denied.

9          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10 Master, MGA shall file this Order with the Clerk of Court forthwith.

11

12

13 Dated: September 5, 2007

14                               HON. EDWARD A. INFANTE (Ret.)
                                 Discovery Master
15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                    9

EXHIBIT 29 PAGE 300

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT _29_ PAGE _301_