QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><hr>CONSOLIDATED ACTIONS<br><br>**[PUBLIC REDACTED]** | CASE NO. CV 04-9049 SGL (RNBx)<br><br>**NOTICE OF MOTION AND MOTION OF MATTEL INC. FOR LIMITED RECONSIDERATION OF PHASE 2 DISCOVERY MATTER ORDER NO. 33; AND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: TBD<br>Time: TBD<br>Place: Arent Fox, LLP<br>555 W. Fifth Street,<br>48th Floor<br>Los Angeles, CA 90013<br><br>**Phase 2:**<br>Discovery: Cut-Off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

07975/2990783.2

Case No. CV 04-9049 SGL (RNBx)
NOTICE OF MOTION AND MOTION BY MATTEL INC. FOR LIMITED RECONSIDERATION OF PHASE 2 ORDER NO. 33

TO ALL PARTIES, NON-PARTY FRED MASHIAN, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Mattel, Inc. will, and hereby does, move pursuant to Local Rule 7-18 for reconsideration of Phase 2 Discovery Matter Order No. 33 to the extent it denies Mattel the immediate right to depose third-party witness, Fred Mashian. The motion will be heard before the Discovery Master, Robert C. O'Brien, at a date and time to be determined by the Discovery Master.

This motion is made on the grounds that since the time that the Discovery Master issued Order No. 33 on May 18, 2009, Mattel was granted leave by the Court to file its Third Amended Answer and Counterclaims ("TAAC"). The TAAC expressly alleges, *inter alia*, a RICO conspiracy involving Mr. Mashian, by name. As Judge Larson's May 21, 2009 Order granting leave explained, the TAAC "dramatically expand[ed] the scope of the present litigation." That new development warrants reconsideration and has made obtaining Mr. Mashian's immediate testimony critically important.

As set forth in the attached Quinto Declaration, Mattel's motion is timely. On May 22, 2009, Mattel requested to meet and confer with counsel for the MGA defendants and with counsel for Mr. Mashian. They responded by asserting that Judge Larson's May 21, 2009 Order not only imposed a temporary freeze on discovery but also imposed a stay on discovery-related motions. In light of that stay, Mattel's motion is timely.

Mattel bases this motion on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently filed Declarations of David W. Quinto and Michael T. Zeller and the exhibits thereto; the record on file in this action; such matters of which the Court may properly take judicial notice; and such additional evidence and argument as Mattel may present at or before the hearing on the Motion.

**Conference of Counsel**

Mattel participated in a pre-filing conference of counsel on June 22, 2009, with Amman Khan, one of Defendants' attorneys of record, and on June 19, 2009, with Peter Villar, one of Mr. Mashian's attorneys of record.

DATED: June 29, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By <u>Michael T. Zeller</u>
   Michael T. Zeller
   Attorneys for Mattel, Inc.

07975/2990783.2

-3-   Case No. CV 04-9049 SGL (RNBx)
NOTICE OF MOTION AND MOTION BY MATTEL INC. FOR LIMITED RECONSIDERATION OF PHASE 2 ORDER NO. 33

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The Court has granted Mattel leave to file its Third Amended Answer and Counterclaims ("TAAC"). In light of that new operative pleading, Mattel seeks reconsideration of Phase 2 Discovery Matter Order No. 33 ("Order No. 33") to the limited extent it quashes the deposition subpoena served on third-party Fred Mashian, the attorney who has percipient knowledge of business transactions for Lexington Financial Limited ("Lexington") and Vision Capital, LLC ("Vision Capital") alleged in the TAAC. Order No. 33 reflected the Discovery Master's understanding at the time that Mashian's deposition would likely be of ▮▮▮ to Mattel. Since then, however, the TAAC has expanded the scope of Phase 2 by explicitly placing the financial transactions involving Lexington Financial, Vision Capital and Omni 808 in issue. Mashian plainly has critical, non-privileged information pertinent to those transactions. Indeed, he currently appears to have unique knowledge that Mattel cannot obtain from other sources, and he is a named member of the RICO enterprise alleged in this action. Mattel should be permitted to go forward with his deposition immediately.

As Mattel has expressly alleged in the TAAC, Lexington and Vision Capital have been participants in an unlawful scheme designed to injure Mattel. Shortly after the Phase 1 damages verdict, Lexington claimed a purported security interest in Vision Capital, which, in turn, allegedly provided funds and claimed a security interest in Omni 808. Omni 808 then used its funding to participate in unlawful transactions with MGA designed to thwart Court Orders and Mattel's rights. Lexington's role in these financial transactions is unquestionably at issue. To date, however, Mattel has been precluded from conducting *any* discovery of Lexington because Lexington is a foreign entity that has successfully evaded process and Mattel has been unable to identify any officers, directors or employees of Lexington. The *only* person Mattel now knows of who unquestionably has percipient

knowledge of Lexington (other than perhaps Bingham, Mattel's document subpoena to which was quashed) is Mashian. Mattel is entitled to depose him to discover such basic information as the identity of Lexington's principals and to take follow-up discovery based on that information. Because Mattel will need to conduct that follow-up discovery *after* the Mashian deposition and *before* the December 11, 2009 discovery cut-off, Mattel should be permitted to depose Mr. Mashian now. Moreover, Mattel is clearly entitled to depose Mashian to discover his own role in the RICO enterprise at issue, of which he is expressly alleged to be a part. The Mashian deposition should go forward promptly.

### Statement of Facts

On January 30, 2009, Mattel served its "[Corrected] Notice of Subpoena Issued to Fred Mashian."[1] On March 12, 2009, Mr. Mashian and two other third-party witnesses moved for a protective order and/or to quash deposition subpoenas issued by Mattel, including the subpoena directed to Mr. Mashian.[2]

Mr. Mashian's was responsible for filing UCC statements in California on behalf of Lexington.[3] Mattel has repeatedly sought discovery directly from Lexington; each time, even as to basic preservation obligations, Mattel's attempts have been rebuffed and its discovery quashed.[4] Indeed, to date Mattel has not been able to discover even who Lexington's principals are because the off-shore haven

---

[1] Declaration of Michael T. Zeller, dated June 29, 2009 ("Zeller Dec."), ¶ 10.
[2] Zeller Dec., ¶ 2.
[3] *Id.* and Exhibit A thereto.
[4] On January 23, 2009, and again on January 30, 2009, Mattel attempted to serve subpoenas on Lexington. It then sought an order deeming Lexington served. Lexington, through counsel, opposed Mattel's application. Pursuant to Order No. 8, the Discovery Master denied Mattel's application for an order deeming Lexington served or, in the alternative, ordering that Lexington could be served through the Secretary of State. Zeller Dec., ¶ 10 and Exhibit F thereto at 2-8. The Discovery Master also denied Mattel's request that Lexington be ordered to preserve relevant documents. *Id.* and Exhibit F thereto at 8-11.

where it is incorporated (Nevis) deliberately does not request or disclose such information.[5] Mattel therefore has no choice but to take discovery into Lexington's role in the Omni 808/MGA transactions through other means. And those means known to Mattel to date are very limited: Mr. Mashian is the only person (other than likely Bingham) who Mattel can prove, through documents, *must* have knowledge about Lexington, having filed UCC statements on its behalf. Mr. Mashian also acknowledged in a declaration previously that he has knowledge of the relevant transactions, having acted as transactional counsel for Lexington in the alleged loan to Vision Capital for the Wachovia debt acquisition.[6] Thus, Mashian is the only person known to Mattel who is likely to provide information concerning Lexington's ownership and ties to defendants.[7]

On May 18, 2009, the Discovery Master issued Order No. 33. That Order quashed the deposition subpoena directed to Mashian on two bases: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[9]

Subsequently, on May 21, 2009, the Court issued an Order (the "May 21 Order") that, among other things, granted Mattel leave to file the TAAC. As Judge Larson explained, the TAAC "dramatically expand[s] the scope of the present litigation":[10]

---

[5] Zeller Dec., ¶ 7.
[6] Declaration of Fred F. Mashian in Opposition to Mattel's Ex Parte Application, dated March 8, 2009, and previously filed with the Court, at ¶¶ 3, 6.
[7] Zeller Dec., ¶ 8.
[8] Id., ¶ 12. Order No. 33 correctly observed, however, that "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" Order No. 33 at 36-37.
[9] Id.
[10] May 21 Order at 6.

> First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 Transactions")
> . . . .

The TAAC identifies Lexington as a member of the "Omni Parties." Paragraph 108 of the TAAC identifies Lexington as one of the shell entities used by Larian and MGA to engage in criminal enterprises. As alleged in ¶ 109, Lexington claims a security interest in the assets of Vision Capital which, in turn, claims a security interest in the assets of Omni 808. Pursuant to ¶ 110, Mattel alleges that the claimed security interests were created "to obtain purported priority as an alleged secured creditor over Mattel's claims and to deprive Mattel of assets." Further, the TAAC alleges, in ¶ 114, that Larian intended to use Lexington "to distance himself from the transaction and thereby conceal the true source of the funds used to purportedly purchase the Wachovia note" on which his ostensible priority is based.

Vision Capital, a special-purpose entity (as is Omni 808) formed at approximately the same time as Omni 808, is alleged to have obtained the $10 million it "invested" in Omni 808 from Lexington.[12] Lexington's purported security interest in Vision Capital's ownership interest in Omni 808 arose on August 29, 2008--three days after the jury's Phase 1 damages verdict against MGA and Larian.[13] Moreover, the TAAC expressly alleges that Mr. Mashian, by name, has been employed by and associated with a RICO criminal enterprise at issue in this action.[14] These RICO violations include, among others, multiple acts of money

---

[11] *Id.* at 4.
[12] *Id.*, ¶¶ 108-110, 114-118.
[13] *Id.*, ¶ 117.
[14] TAAC, ¶¶ 136, 150.

laundering, engaging in monetary transactions in property derived from unlawful activity, and concealment of assets.[15]

The counterclaims alleged in the TAAC identify Mr. Mashian by name no fewer than 6 times.[16] The counterclaims identify Lexington by name no fewer than 11 times.[17]

Based on the recent "dramatic[] expan[sion]" of the litigation, which places Mashian and his knowledge of Lexington, Vision Capital and others involved in the financial transactions that he worked on indisputably at issue, Mattel now seeks reconsideration and modification of Order No. 33 to the extent it quashes Mattel's deposition subpoenas to Mr. Mashian and requests an Order compelling Mr. Mashian to sit for deposition.

### Argument

I. **THE DISCOVERY MASTER MAY PROPERLY REVISIT THE PRIOR RULING**

New facts classically justify reconsideration. See Local Rule 7-18. Moreover, a court always "retains plenary power to afford such relief as justice requires," Gagne v. Carl Bauer Schrauberfabrick, 595 F. Supp. 1081, 1083-84 (D. Me. 1984), and a court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." Lavespere v. Niagara Machinery & Toolworks, Inc., 910 F.2d 167, 185 (5th Cir. 1990) (rev'd on other grounds). Here, the filing of the TAAC, which alters the calculus of how significant Mashian's

---

[15] Id., ¶ 141.
[16] Id., ¶¶ 19, 136, 138, 145, 149, 150.
[17] Id., ¶¶ 18, 108, 109, 111, 114, 117, 136, 138, 145, 149, 150.

deposition is to the claims in this action, is a new fact that justifies reconsideration of that portion of Order No. 33 that denies Mattel the immediate right to examine Mr. Mashian.

## II. MATTEL'S THIRD AMENDED COMPLAINT RENDERS MR. MASHIAN'S TESTIMONY NECESSARY AND APPROPRIATE

Because the TAAC has been filed, it is now critically important that Mattel be permitted to obtain deposition testimony from Mr. Mashian promptly. The Discovery Master earlier quashed the deposition subpoena in its entirety based on two conclusions: that the deposition was of "minimal" value to Mattel and that Mashian would likely need to invoke the privilege in response to a number of questions. The first conclusion no longer can be maintained – far from of minimal value, Mashian's deposition is now critical, and it is equally critical that it go forward immediately. And the second is not a sufficient basis, even if true, to quash the subpoena in its entirety.

### A. Mattel Is Entitled to Depose Mashian Promptly

Mr. Mashian is a named participant in one of the RICO enterprises alleged in Phase 2. He is also the only individual Mattel knows of who must have certain relevant knowledge about Lexington and its role in the transactions at issue. In attempting to take discovery directly of Lexington, Mattel has been rebuffed. And now, as things stand, Mashian is protected from having to appear for deposition. The Order quashing Mashian's deposition should be reconsidered in light of the claims at issue in the TAAC, and Mattel should be permitted to take that deposition.

The Discovery Master suggested, in his Order, that Mattel might seek leave to depose Mashian in the future, if other attempts to seek relevant information were to

fail.[18] The current discovery cut-off date is December 11, 2009. Mattel's discovery requests are consistently met with objections, and Mattel is required to engage in motion practice to obtain every bit of discovery. As matters thus stand, Mattel will have to conduct discovery of third parties in the (dim) hope that they can and will identify owners or officers of Lexington and provide other key information that Mashian is know to likely possess. Mattel would then have to seek leave to depose Mashian after it fails in those quests, by which time Mattel will be denied the effective ability to take follow-up discovery. This is unworkable. Mattel does not have adequate time to (i) exhaust every other potential source of information concerning Lexington; (ii) meet and confer concerning leave to conduct Mr. Mashian's deposition; (iii) brief, argue, and obtain a ruling on such a motion; (iv) conduct the deposition; (v) serve subpoenas on any persons Mr. Mashian may identify as knowledgeable concerning Lexington and its activities, especially if they are outside the United States; and (vi) depose and serve written discovery on them, all before the discovery cut-off.

Moreover, Mattel has already exhausted other potential sources of key information. In addition to attempting to serve discovery requests on Lexington directly – attempts which, as discussed, failed[19] -- Mattel also sought to obtain discovery of Lexington through Mr. Mashian; those efforts were also rejected.[20] Because one of the arguments Lexington made in opposing Mattel's applications to deem it served and to order it to preserve evidence was that it was improperly named as "Lexington Financial, LLC" when, in fact, it claims its true name is "Lexington Financial Limited," Mattel then requested that Lexington's attorneys

---

[18] Order No. 33 at 38.
[19] Zeller Dec., ¶¶ 10-14.
[20] Order No. 33 at 25-46.

accept a subpoena naming "Lexington Financial Limited, A Nevis Company."[21] Lexington's counsel in this matter rebuffed that request, continuing Lexington's (to date successful) evasions of process.[22] Bingham, for its part, successfully refused to produce any documents about Lexington.[23] As matters now stand, Mattel's attempt to depose Mashian to obtain non-privileged information he possesses has been rebuffed. There is no requirement that Mattel exhaust still more avenues of discovery to try to obtain basic information it should have been provided long ago.

### B. That Mashian Is an Attorney Is No Bar to His Deposition

Mr. Mashian has not asserted that an attorney cannot be deposed. The law is that an attorney may be deposed -- particularly when, as here, the attorney is not trial counsel and does not represent any of the parties to the suit. Although the fact that Mr. Mashian is a lawyer maybe considered, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition or automatically require prior resort to alternative discovery devices." Younger v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007); see also Mustang Marketing, Inc. v. Chevron Products Co., 2006 WL 5105559, at *4 (C.D. Cal. Feb. 28, 2006) (permitting the plaintiff to call one of the defendants' in-house counsel to testify at trial concerning the negotiation and drafting an agreement issue).

The Discovery Master's ruling found it significant that Mashian would likely have to interpose numerous privilege objections at deposition. However, "[a] 'blanket' claim for confidentiality of all communications, however defined, is rarely acceptable to the courts." 3 J. McLaughlin, Weinstein's Federal Evidence, §

---

[21] March 11, 2009 letter from Jon D. Corey to Peter N. Villar, attached as Exhibit H to the Zeller Dec.
[22] March 16, 2009 letter from Peter N. Villar to Jon Corey, attached as Exhibit I to the Zeller Dec.
[23] See Phase 2 Discovery Matter Order No. 27, dated May 6, 2009 (quashing Mattel's subpoena to Bingham), Zeller Dec., Exh. S.

503.20[4][b] (2d ed. with Supp. 2009), <u>citing, inter alia, Clarke v. American Commerce National Bank</u>, 974 F.2d 127, 128-130 (9th Cir. 1999) (blanket claims of privilege are extremely disfavored). Courts routinely *permit* depositions of lawyers, particularly non-trial counsel, who can then make privilege assertions on a question-by-question basis. Indeed, that has been the law applied by the Court in this case,[24] and a number of lawyers have already been deposed in this case, including two transactional attorneys involved in the Bryant/MGA contract (David Rosenbaum and Anne Wang), Patricia Glaser, Lucy Arant and others.[25] A number of transactional attorneys and in-house counsel were called as witnesses by both sides at the Phase 1 trial.[26] In seeking to quash his subpoena Mr. Mashian did not even directly assert any privilege objection. Order No. 33 at 36:26-37:1. Simply put, the fact that Mashian is an attorney is not a sufficient basis to quash his deposition.[27]

---

[24] For example, the prior Discovery Master granted Mattel's motion to compel the deposition of Christensen Glaser, MGA's attorney, ruling that privilege objections could be made on a question by question basis. See Order Granting in Part and Denying in Part Mattel's Motion to Compel Deposition and Production of Documents of Christensen Glaser Fink Jacobs Weil & Shapiro, LLP, Zeller Dec., Exh. R.

[25] See Cover page of the Transcript of the Deposition of David Rosenbaum, dated Friday, January 25, 2008, Zeller Dec., Exh. J; Cover page of the Transcript of the Deposition of Anne Wang, dated January 28, 2008, Zeller Dec., Exh. K; Cover page of the Transcript of the Deposition of Patricia Glaser, dated May 15, 2008, Zeller Dec., Exh. L; Cover page of the Transcript of Lucy Arant, dated May 15, 2008, Zeller Dec., Exh. M.

[26] MGA called Mattel's in-house counsel, Michael Moore, to testify at the Phase 1 trial. See Trial Transcript at 6460:15-21, Zeller Dec., Exh. N; see also Trial Tr. at 1418:20-1219:4 (Lucy Arant testimony), Zeller Dec., Exh. O; Trial Tr. at 4103:18-24 (Mitchell Kamarck testimony), Zeller Dec., Exh. P; Trial Tr. at 4079:7-15 (Daphne Gronich testimony), Zeller Dec., Exh. Q.

[27] Of course, Mashian may be entitled to interpose privilege objections in response to particular questions; Mattel does not seek at this time to prevent any such invocations. But Mashian indisputably possesses non-privileged information
   (footnote continued)

## Conclusion

For the reasons set forth above, the Discovery Master should reconsider Order No. 33 to the extent it denies Mattel the immediate right to conduct Mr. Mashian's deposition and order, instead, that the deposition proceed.

DATED: June 29, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

Mattel is entitled to discover. Mashian's knowledge regarding the factual circumstances of business transactions in which he was involved, which knowledge is highly relevant (he is a named member of the RICO enterprise after all), is obviously not privileged. See Upjohn Co. v. U.S., 449 U.S. 383, 395 (1981) (the attorney client "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts").