# EXHIBIT A

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
FRED MASHIAN
3102747501

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 830
LOS ANGELES, CA 90069
USA

DOCUMENT NUMBER: 10230630002
FILING NUMBER: 08-7120410109
FILING DATE: 08/29/2008 14:33
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR A FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1525 SOUTH BROADWAY | LOS ANGELES | | CA | 90015 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION DE | 1g. ORGANIZATIONAL ID#, if any 4589295 | ☐NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | ☐NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 33-35 DAWS LANE | LONDON | | | NW7 4SD | UK |

4. This FINANCING STATEMENT covers the following collateral:
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200813610026.

5. ALT DESIGNATION: ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)
[ADDITIONAL FEE]   [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

EXHIBIT _____ A

PAGE _____ 1

# EXHIBIT B

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT C

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT D

AO88 (Rev. 12/07) Subpoena in a Civil C...

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL      CALIFORNIA

CARTER BRYANT, an individual,

              **V.**

MATTEL, INC., a Delaware corporation,

### SUBPOENA IN A CIVIL CASE

Case Number: ¹ CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: Lexington Financial, LLC, Attn:  Fred Mashian
    9255 Sunset Boulevard Suite 630
    Los Angeles, CA 90069

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

X   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | February 6, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Jon Corey /SH  Attorney for Plaintiff, Mattel, Inc. | January 23, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

EXHIBIT     D

AO-88

PAGE     102

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

## Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



EXHIBIT _____ D

PAGE _____ 103

## ATTACHMENT A

1.    All documents referring or relating to agreements, contracts or transactions between Lexington Financial, LLC, or any subsidiary or affiliate of Lexington Financial, LLC (hereinafter, collectively, "Lexington Financial"), and MGA Entertainment, Inc., or any subsidiary or affiliate of MGA Entertainment, Inc. (hereinafter, collectively, "MGA"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

2.    All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, True Vision Capital Management, LLC, or any subsidiary or affiliate of Vision Capital, LLC and/or True Vision Capital Management, LLC (hereinafter, collectively, "Vision Capital"), and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

3.    All documents referring or relating to agreements, contracts or transactions between Omni 808 Investors, LLC, or any subsidiary or affiliate of Omni 808 Investors, LLC (hereinafter, collectively, "Omni 808"), and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

4.    All documents containing financial information, including but not limited to historical and prospective financial performance, provided by MGA Entertainment, Inc. to Lexington Financial since January 1, 2007.

5.    Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Lexington Financial and (b) the dates of such person's affiliation with Lexington Financial.

6.    All documents referring or relating to the formation and governance of Lexington Financial, including documents identifying (a) each person involved in retaining, hiring or engaging or who otherwise communicated with Trust Services (Nevis) Limited, (b) each person involved in procuring, retaining, hiring or engaging or who otherwise communicated with the office that Lexington purportedly set up at 33-35 Daws Lane in London and (c) any bank accounts, credit cards or other financial instruments used in connection with the activities set forth in (a) and/or (b).

7.    All documents detailing or setting forth the relationship between Lexington Financial and OmniNet Capital, LLC, Omni 808, Vision Capital and/or MGA, if any.

8.    All documents detailing or setting forth the relationship between Lexington Financial and Isaac Larian or his family members, if any. As used in these Requests, "family members" of Isaac Larian include without limitation Farhad Larian, Angela Larian (formerly

07209/2771172.1

EXHIBIT _____ D

PAGE _____ 104

Neman), Morad Zarabi, any other member of the Larian, Neman or Zarabi families or any entities or businesses that any of the foregoing own, have an interest in or control.

9.      All documents referring or relating to the source of funding or credit for Vision Capital, Omni 808 and/or MGA.

10.      All documents detailing or setting forth the relationship between, on the one hand, Vision Capital or Omni 808, on the one hand, and Isaac Larian or his family members, on the other hand.

11.      All documents referring or relating to all contributions, loans and any sources of funding for Lexington Financial during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

12.      All documents showing detail of loan facilities with an indication of creditor and relevant terms referring or relating to MGA Entertainment, Inc., OmniNet Capital, LLC, Omni 808 Investors, Vision Capital, Lexington Financial, Isaac Larian or his family members.

13.      All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Lexington Financial to Isaac Larian, his family members, or any other related party, including MGA Entertainment, Inc.

14.      Any and all records that substantiate transfers of assets by Lexington Financial to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

15.      All documents referring or relating to any contract, transaction or relationship between, on the one hand, Omni 808 Investors, OmniNet Capital, LLC, Vision Capital and/or Lexington Financial, and, on the other hand, Isaac Larian or his family members.

16.      All communications referring or relating to Lexington Financial, Omni 808 Investors, Vision Capital, Mattel, MGA, Isaac Larian and/or Bratz.

17.      All documents referring or relating to the U.C.C. financing statement attached as Exhibit 1 and/or the security interest allegedly reflected therein.

18.      Documents sufficient to show each and every entity or business in which Lexington Financial has an interest or role or over which Lexington Financial has control and in which Isaac Larian, or his family members, have any interest or role or over which Isaac Larian, or his family members, have control.

19.      All documents referring or relating to any transfer, payment, credit, loan or indebtedness to, from or by Isaac Larian, his family members, or any entity or business owned

07209/2771172.1

2

EXHIBIT _____ D

PAGE _____ 105

or controlled by Isaac Larian or his family members and that also involves Lexington Financial, or any entity or business that Lexington Financial owns or controls.

       20.    To the extent not produced in response to any other Request, documents sufficient to show the nature, extent and timing of Lexington Financial's relationship to or with Isaac Larian, his family members, or any entity or business owned or controlled by Isaac Larian or his family members.

07209/2771172.1

3

EXHIBIT _____ D

PAGE _____ 106

# EXHIBIT 1

EXHIBIT _____ D _____

PAGE _____ 107 _____

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
FRED MASHIAN
3102747601

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 630
LOS ANGELES, CA 90069
USA

DOCUMENT NUMBER: 18230930002
FILING NUMBER: 06-7170410109
FILING DATE: 08/29/2006 14:33
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1525 SOUTH BROADWAY | LOS ANGELES | CA | 90015 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | LLC | DE | 4589295 □NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | □NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 33-35 DAWS LANE | LONDON | | NW7 4SD | UK/UK |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200812610026.

**5. ALT DESIGNATION:** [ ] LESSEE/LESSOR [ ] CONSIGNEE/CONSIGNOR [ ] BAILEE/BAILOR [ ] SELLER/BUYER [ ] AG. LIEN [ ] NON-UCC FILING

[ ] **6. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable]

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]   [optional] [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

EXHIBIT _____ D _____

PAGE _____ 108 _____

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-
Defendant Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | PROOF OF SERVICE |
| MATTEL, INC., a Delaware corporation, | Date:   TBA |
| Defendant. | Time:   TBA |
| | Place:  TBA |
| AND CONSOLIDATED ACTIONS | |

EXHIBIT _____D_____

PAGE _____109_____

07209/2736943.1

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa St., 10th Floor, Los Angeles, CA 90017.

On January 23, 2009, I served true copies of the following documents described as:

Notice of Subpoena Issued to Lexington Financial, LLC

Notice of Subpoena Issued to Fred Mashian

Notice of Subpoena Issued to Neil Kadisha, on the parties in this action as follows:

Thomas J. Nolan, Esq.
Jason Russell, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071
*Attorneys for the MGA Parties*

Patricia L. Glaser, Esq.
Glaser Weil Fink Jacobs & Shapiro LLP
10250 Constellation Blvd., 19th floor
Los Angeles, CA 90067
*Attorneys for the MGA Parties*

Russell J. Frackman, Esq.
Mitchell Silberberg & Knupp LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064
*Attorneys for the MGA Parties*

[√] **[PERSONAL]** by personally delivering the documents listed below to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 23, 2009, at Los Angeles, California.

David Quintana

EXHIBIT _____ D

PAGE _____ 110

PROOF OF SERVICE

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On January 23, 2009, I served true copies of the following document(s) described as:

**Notice of Subpoena Issued to Lexington Financial, LLC**

**Notice of Subpoena Issued to Fred Mashian**

**Notice of Subpoena Issued to Neil Kadisha**, on interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**[ X ]  BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

**[ ]  BY FACSIMILE:** On January 23, 2009, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (213) 443-3100. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2009, at Los Angeles, California.

_____
Lupe Espinoza

EXHIBIT _____ D _____

PAGE _____ 111 _____

07209/2736943.1

-2-

1

2                                          **SERVICE LIST**

3

4   Mark E. Overland, Esq.
    Alexander H. Cote, Esq.

5   Overland Borenstein Scheper & Kim LLP
    601 W. 5th St., 12th Floor

6   Los Angeles, CA 90017

7   *Attorneys for Carlos Gustavo Machado Gomez*

8   Peter Bonis, Esq.

9   Peter H. Bonis Law Offices
    1990 N. California Blvd., 8th Floor

10  Walnut Creek, CA 94596

11  *Attorney for Carter Bryant*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26              EXHIBIT _____ D _____

27              PAGE _____ 112 _____

28

# EXHIBIT E

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL        CALIFORNIA

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number: [1]  CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: Lexington Financial, LLC, Attn:  Fred Mashian
    9255 Sunset Boulevard Suite 630
    Los Angeles, CA 90069

[ ] YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

[ ] YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[X] YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | February 16, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

[ ] YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Jon Corey /SH | January 30, 2009 |
| Attorney for Plaintiff, Mattel, Inc. | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT _____ E

PAGE _____ 113

AO-88

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
   (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
   (2) Command to Produce Materials or Permit Inspection.
      (A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
      (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
         (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
         (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
   (3) Quashing or Modifying a Subpoena.
      (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
         (i) fails to allow a reasonable time to comply;
         (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
         (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
         (iv) subjects a person to undue burden.
      (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
         (i) disclosing a trade secret or other confidential research, development, or commercial information;
         (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
         (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
      (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

         (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
         (ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
   (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
      (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
      (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
      (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
      (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) Claiming Privilege or Protection.
      (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
         (i) expressly make the claim; and
         (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
      (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
   The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT _____ E

PAGE _____ 114

<u>ATTACHMENT A</u>

1.    All documents referring or relating to agreements, contracts or transactions between Lexington Financial, LLC, or any subsidiary or affiliate of Lexington Financial, LLC (hereinafter, collectively, "Lexington Financial"), and MGA Entertainment, Inc., or any subsidiary or affiliate of MGA Entertainment, Inc. (hereinafter, collectively, "MGA"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

2.    All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, True Vision Capital Management, LLC, or any subsidiary or affiliate of Vision Capital, LLC and/or True Vision Capital Management, LLC (hereinafter, collectively, "Vision Capital"), and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

3.    All documents referring or relating to agreements, contracts or transactions between Omni 808 Investors, LLC, or any subsidiary or affiliate of Omni 808 Investors, LLC (hereinafter, collectively, "Omni 808"), and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

4.    All documents containing financial information, including but not limited to historical and prospective financial performance, provided by MGA Entertainment, Inc. to Lexington Financial since January 1, 2007.

5.    Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Lexington Financial and (b) the dates of such person's affiliation with Lexington Financial.

6.    All documents referring or relating to the formation and governance of Lexington Financial, including documents identifying (a) each person involved in retaining, hiring or engaging or who otherwise communicated with Trust Services (Nevis) Limited, (b) each person involved in procuring, retaining, hiring or engaging or who otherwise communicated with the office that Lexington purportedly set up at 33-35 Daws Lane in London and (c) any bank accounts, credit cards or other financial instruments used in connection with the activities set forth in (a) and/or (b).

7.    All documents detailing or setting forth the relationship between Lexington Financial and OmniNet Capital, LLC, Omni 808, Vision Capital and/or MGA, if any.

8.    All documents detailing or setting forth the relationship between Lexington Financial and Isaac Larian or his family members, if any. As used in these Requests, "family members" of Isaac Larian include without limitation Farhad Larian, Angela Larian (formerly

07209/2771172.1

1



EXHIBIT ____ 𝒌____

PAGE ____ 115____

Neman), Morad Zarabi, any other member of the Larian, Neman or Zarabi families or any entities or businesses that any of the foregoing own, have an interest in or control.

9.      All documents referring or relating to the source of funding or credit for Vision Capital, Omni 808 and/or MGA.

10.     All documents detailing or setting forth the relationship between, on the one hand, Vision Capital or Omni 808, on the one hand, and Isaac Larian or his family members, on the other hand.

11.     All documents referring or relating to all contributions, loans and any sources of funding for Lexington Financial during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

12.     All documents showing detail of loan facilities with an indication of creditor and relevant terms referring or relating to MGA Entertainment, Inc., OmniNet Capital, LLC, Omni 808 Investors, Vision Capital, Lexington Financial, Isaac Larian or his family members.

13.     All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Lexington Financial to Isaac Larian, his family members, or any other related party, including MGA Entertainment, Inc.

14.     Any and all records that substantiate transfers of assets by Lexington Financial to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

15.     All documents referring or relating to any contract, transaction or relationship between, on the one hand, Omni 808 Investors, OmniNet Capital, LLC, Vision Capital and/or Lexington Financial, and, on the other hand, Isaac Larian or his family members.

16.     All communications referring or relating to Lexington Financial, Omni 808 Investors, Vision Capital, Mattel, MGA, Isaac Larian and/or Bratz.

17.     All documents referring or relating to the U.C.C. financing statement attached as Exhibit 1 and/or the security interest allegedly reflected therein.

18.     Documents sufficient to show each and every entity or business in which Lexington Financial has an interest or role or over which Lexington Financial has control and in which Isaac Larian, or his family members, have any interest or role or over which Isaac Larian, or his family members, have control.

19.     All documents referring or relating to any transfer, payment, credit, loan or indebtedness to, from or by Isaac Larian, his family members, or any entity or business owned

07209/2771172.1

2



EXHIBIT _____ $\mathcal{E}$

PAGE _____ 116

or controlled by Isaac Larian or his family members and that also involves Lexington Financial, or any entity or business that Lexington Financial owns or controls.

        20.    To the extent not produced in response to any other Request, documents sufficient to show the nature, extent and timing of Lexington Financial's relationship to or with Isaac Larian, his family members, or any entity or business owned or controlled by Isaac Larian or his family members.

EXHIBIT      6

PAGE      117

# EXHIBIT 1

EXHIBIT _____ℰ_____

PAGE _____118_____

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
FRED MASHIAN
3102747001

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 630
LOS ANGELES, CA 90069
USA

DOCUMENT NUMBER: 18230630002
FILING NUMBER: 08-7170410100
FILING DATE: 09/28/2006 14:03
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1515 SOUTH BROADWAY | LOS ANGELES | | CA | 90015 | USA |
| 1d. REF INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | |
| | | LLC | DE | 4589295 | ☐NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. REF INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | |
| | | | | | ☐NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 33-35 DAWS LANE | LONDON | | | NW7 4SD | UK |

4. This FINANCING STATEMENT covers the following collateral:
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200812610016.

| 5. ALT DESIGNATION: ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING | |
|---|---|
| 6. ☑ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

EXHIBIT ___E___

PAGE ___119___

**Exhibit 2**

EXHIBIT    E

PAGE    120

AO88  (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL _____    CALIFORNIA _____

CARTER BRYANT, an individual,

### SUBPOENA IN A CIVIL CASE

V.

MATTEL, INC., a Delaware corporation,

Case Number: [1]   CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: Lexington Financial, LLC, Attn:  Fred Mashian
2776 Casiano Drive
Los Angeles, CA 90077

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
| --- | --- |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | February 16, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Jon Corey /s/ <br> Attorney for Plaintiff, Mattel, Inc. | January 30, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] I f action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT _____ 6

PAGE _____ 121

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page—)

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

           DATE                           SIGNATURE OF SERVER

                                             ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party, or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



EXHIBIT _____ E

PAGE _____ 122

## ATTACHMENT A

1.      All documents referring or relating to agreements, contracts or transactions between Lexington Financial, LLC, or any subsidiary or affiliate of Lexington Financial, LLC (hereinafter, collectively, "Lexington Financial"), and MGA Entertainment, Inc., or any subsidiary or affiliate of MGA Entertainment, Inc. (hereinafter, collectively, "MGA"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

2.      All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, True Vision Capital Management, LLC, or any subsidiary or affiliate of Vision Capital, LLC and/or True Vision Capital Management, LLC (hereinafter, collectively, "Vision Capital"), and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

3.      All documents referring or relating to agreements, contracts or transactions between Omni 808 Investors, LLC, or any subsidiary or affiliate of Omni 808 Investors, LLC (hereinafter, collectively, "Omni 808"), and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

4.      All documents containing financial information, including but not limited to historical and prospective financial performance, provided by MGA Entertainment, Inc. to Lexington Financial since January 1, 2007.

5.      Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Lexington Financial and (b) the dates of such person's affiliation with Lexington Financial.

6.      All documents referring or relating to the formation and governance of Lexington Financial, including documents identifying (a) each person involved in retaining, hiring or engaging or who otherwise communicated with Trust Services (Nevis) Limited, (b) each person involved in procuring, retaining, hiring or engaging or who otherwise communicated with the office that Lexington purportedly set up at 33-35 Daws Lane in London and (c) any bank accounts, credit cards or other financial instruments used in connection with the activities set forth in (a) and/or (b).

7.      All documents detailing or setting forth the relationship between Lexington Financial and OmniNet Capital, LLC, Omni 808, Vision Capital and/or MGA, if any.

8.      All documents detailing or setting forth the relationship between Lexington Financial and Isaac Larian or his family members, if any. As used in these Requests, "family members" of Isaac Larian include without limitation Farhad Larian, Angela Larian (formerly

07209/2771172.1

1

EXHIBIT _____ E

PAGE _____ 123

Neman), Morad Zarabi, any other member of the Larian, Neman or Zarabi families or any entities or businesses that any of the foregoing own, have an interest in or control.

9.      All documents referring or relating to the source of funding or credit for Vision Capital, Omni 808 and/or MGA.

10.     All documents detailing or setting forth the relationship between, on the one hand, Vision Capital or Omni 808, on the one hand, and Isaac Larian or his family members, on the other hand.

11.     All documents referring or relating to all contributions, loans and any sources of funding for Lexington Financial during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

12.     All documents showing detail of loan facilities with an indication of creditor and relevant terms referring or relating to MGA Entertainment, Inc., OmniNet Capital, LLC, Omni 808 Investors, Vision Capital, Lexington Financial, Isaac Larian or his family members.

13.     All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Lexington Financial to Isaac Larian, his family members, or any other related party, including MGA Entertainment, Inc.

14.     Any and all records that substantiate transfers of assets by Lexington Financial to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

15.     All documents referring or relating to any contract, transaction or relationship between, on the one hand, Omni 808 Investors, OmniNet Capital, LLC, Vision Capital and/or Lexington Financial, and, on the other hand, Isaac Larian or his family members.

16.     All communications referring or relating to Lexington Financial, Omni 808 Investors, Vision Capital, Mattel, MGA, Isaac Larian and/or Bratz.

17.     All documents referring or relating to the U.C.C. financing statement attached as Exhibit 1 and/or the security interest allegedly reflected therein.

18.     Documents sufficient to show each and every entity or business in which Lexington Financial has an interest or role or over which Lexington Financial has control and in which Isaac Larian, or his family members, have any interest or role or over which Isaac Larian, or his family members, have control.

19.     All documents referring or relating to any transfer, payment, credit, loan or indebtedness to, from or by Isaac Larian, his family members, or any entity or business owned

07209/2771172.1

2



EXHIBIT ___   ℮

PAGE ___ 124

or controlled by Isaac Larian or his family members and that also involves Lexington Financial, or any entity or business that Lexington Financial owns or controls.

        20.    To the extent not produced in response to any other Request, documents sufficient to show the nature, extent and timing of Lexington Financial's relationship to or with Isaac Larian, his family members, or any entity or business owned or controlled by Isaac Larian or his family members.

EXHIBIT _____ E

PAGE _____ 125

# EXHIBIT 1

EXHIBIT _____ E_____

PAGE _____ 126_____

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
FRED MASHIAN
3102747501

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 630
LOS ANGELES, CA 90009
USA

DOCUMENT NUMBER: 18230830002
FILING NUMBER: 08-7120410109
FILING DATE: 09/29/2008 14:33
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1525 SOUTH BROADWAY | LOS ANGELES | CA | 90015 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | LLC | DB | 4588295  ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 33-35 DAWS LANE | LONDON | | NW7 4SD | KBR |

4. This FINANCING STATEMENT covers the following collateral:
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200811610026.

| 5. ALT DESIGNATION: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING | |
|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

EXHIBIT _____ E

PAGE _____ 127

# EXHIBIT F



1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

13             Plaintiff,
                                          Consolidated with
14             v.                         Case No. CV 04-09059
                                          Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                          **PHASE 2 DISCOVERY MATTER**
16
               Defendant.                 **ORDER NO. 8, REGARDING:**
17
                                          ***EX PARTE* APPLICATION OF
18                                        MATTEL, INC. FOR AN ORDER
                                          DEEMING LEXINGTON
19                                        FINANCIAL, LLC SERVED OR,
                                          IN THE ALTERNATIVE, TO:
20                                        (1) COMPEL AN AUTHORIZED
                                          REPRESENTATIVE OF
21                                        LEXINGTON FINANCIAL, LLC
                                          TO APPEAR TO ACCEPT
22                                        SERVICE OF THE SUBPOENA;
                                          OR (2) ISSUE AN ORDER
23  CONSOLIDATED WITH                     AUTHORIZING LEXINGTON
    MATTEL, INC. v. BRYANT and            FINANCIAL, LLC TO BE
24  MGA ENTERTAINMENT, INC. v.            SERVED THROUGH THE
    MATTEL, INC.                          SECRETARY OF STATE
25

26

27

28
                                                        ORDER NO. 8
ARENT FOX LLP                            [Case No. CV 04-09049 SGL (RNBx)]
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ F _____

PAGE _____ 128 _____

1    This Order sets forth the Discovery Master's ruling on the *ex parte*

2    application of Mattel, Inc. ("Mattel") filed on or about March 3, 2009 (the

3    "Application") [Docket Number 4945].

4    The Discovery Master determines that it is not necessary to conduct a hearing

5    prior to issuing his ruling, and notes that the interested parties have provided

6    voluminous written submissions, including an Opposition brief and a Reply brief,

7    together with declarations attaching various items of documentary evidence.

8    Having considered all of the submitted papers, the Discovery Master rules as

9    follows.

10   **I.     RELIEF SOUGHT BY MATTEL**

11   In the Application, Mattel seeks an order deeming Lexington Financial, LLC

12   to have been validly served with a subpoena on the grounds that Mattel "personally

13   served a copy of the subpoena on [its] agent," (Application, p. 8), and "transmitted

14   a copy of the subpoena to Lexington, at Lexington's counsel's request," (*Id.*, p. 9).

15   In the event such service is deemed insufficient for any reason, Mattel

16   alternatively seeks an order (1) compelling "Lexington to produce an authorized

17   representative to appear on a date certain at the Federal Courthouse in Los Angeles

18   . . . to accept service of the subpoena on Lexington's behalf," (*Id.*, p. 11), or

19   (2) allowing Mattel to serve "Lexington via the California Secretary of State," (*Id.*,

20   p. 12).

21   Finally, Mattel argues in footnote 48 of the Application (and again in its

22   Reply) that if all of the foregoing requests are denied, then the Discovery Master

23   should order "Lexington to disclose a valid e-mail address for service purposes"

24   and permit service via email under Federal Rule of Civil Procedure 4(f)(3). (*Id.*,

25   p. 12; Reply, pp. 12 – 14).

26   **II.    OPPOSITION OF LEXINGTON FINANCIAL LIMITED**

27   In its Opposition, Lexington Financial Limited ("Lexington Limited") asserts

28   that the Application should be denied on various grounds. First, Lexington Limited

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____ F __ - 1 -

PAGE ____ 129

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

1   argues that Mattel "failed to provide the requisite notice [of the Application] under

2   Local Rules 7-19 and 7-19.1 and [the Court's] Standing Order." (Opposition, p.

3   10). Second, Lexington Limited argues that there is no "good cause" justifying a

4   departure from the regular noticed motion procedures. (*Id.*, pp. 6 – 9). Third,

5   Lexington Limited argues that the subpoena served by Mattel is invalid because it

6   is directed to "Lexington Financial, LLC" as opposed to Lexington Financial

7   Limited. (*Id.*, p. 12). Fourth, Lexington Limited argues that Mattel has not effected

8   service of the subpoena because the individual whom it claims to have personally

9   served (i.e., Fred Mashian) is not an authorized agent for service of process, and

10  Mattel's email transmission of the subpoena to Lexington Limited's counsel (i.e.,

11  Bingham McCutchen LLP) does not constitute proper service. (*Id.*, pp. 13 – 16).

12  Fifth, Lexington Limited argues that the alternative relief requested in the

13  Application should be denied because the Discovery Master does not have authority

14  to (1) compel an overseas entity to appear and accept service in California or

15  (2) permit Mattel to serve Lexington Limited via the California Secretary of State.

16  (*Id.*, pp. 16-19). Finally, Lexington Limited argues that Mattel's request that the

17  Discovery Master authorize service of the subpoena via e-mail is inconsistent with

18  the Federal Rules of Civil Procedure and conflicts with "the applicable international

19  laws and treaties." (*Id.*, p. 19 n. 3).

20  **III.   DISCUSSION**

21          **A.     Mattel's Compliance With The Applicable Procedures**

22          Because Lexington Limited's procedural arguments could dispose of all

23  outstanding issues, the Discovery Master addresses those arguments first.

24                  **1.     Local Rule 7-19 And The Court's Standing Order**

25          Lexington Limited argues that Mattel failed to comply with Local Rule 7-19

26  and the Court's Standing Order by, among other things, failing to advise Lexington

27  Limited of the date, time and substance of the Application. (Opposition, pp. 9 –

28  10). However, Local Rule 7-19 and the Court's Standing Order do not apply to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ F _____

PAGE _____ 130 _____

1   discovery disputes in this case. As the Discovery Master has previously ruled, the

2   applicable procedure is the one adopted by the Court in its order appointing a

3   discovery master dated December 6, 2006 ("Discovery Master Order").[1] Because

4   the Discovery Master Order provides, in relevant part, that a party[2] may seek

5   immediate "resolution of a dispute upon shortened time upon a showing of good

6   cause why a party would be prejudiced absent prompt resolution," (Discovery

7   Master Order, pp. 4 – 5), its procedures replace those set forth for *ex parte*

8   applications in Local Rule 7-19 and the Court's Standing Order.[3]  (*Id.*, p. 4).

9          2.     **The Discovery Master Order's Good Cause Requirement**

10         Under the Discovery Master Order, Mattel had an affirmative obligation to

11   demonstrate that "good cause" exists for hearing the pending matter "on shortened

12   time" and that it will "be prejudiced absent prompt resolution" of the issue. (*Id.*,

13   pp. 4 – 5). No such showing has been made here.

14         In the introductory section of its Application preceding the Memorandum of

15   Points and Authorities, Mattel states in a single paragraph that "good cause exists to

16   seek . . . relief on an ex parte basis" for three reasons. (Application, p. 1 of the

17   notice section). First, Mattel argues that emergency relief is necessary in light of

18   the "Phase 2 discovery [schedule] and trial [date] set by" the Court. (*Id.*). Second,

19   Mattel argues that exigent circumstances exist because it "has pending motions

20   seeking the appointment of a receiver." (*Id.*). Finally, Mattel claims that good

21   cause exists to seek the requested relief because "MGA will likely seek another

22   stay" of this case. (*Id.*).

23   [1] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a

24   discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

25   [2] Because the Discovery Master Order provides that "[a]ll third parties subject to discovery requests . . . in this

26   litigation shall be bound by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that order applies to Lexington Financial Limited. (*Id.*, p. 4).

27   [3] The Discovery Master reaches this conclusion even though Mattel also apparently believed that Local Rule 7-19

28   applies to discovery disputes to be heard by the Discovery Master. (Application, p. 1of the notice section [stating that Mattel "respectfully applies *ex parte*, pursuant to Local Rule 7-19, for an order . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

EXHIBIT _____ F

PAGE _____ 131

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

1    That is the full extent of Mattel's attempt to satisfy its burden to establish

2    good cause. The Memorandum of Points and Authorities contains no argument,

3    authority, or citation to evidence supporting these three grounds.

4    With respect to the first ground, Mattel does not adequately demonstrate why

5    a discovery cut-off date that looms 8 months away or a trial date that is more than

6    12 months in the future gives rise to an emergency requiring immediate resolution.

7    Mattel merely argues in its Reply that if it "is forced to go through the Hague

8    Convention to serve Lexington, that process could take months or longer." (Reply,

9    p. 8). But the eight months between now and the discovery cut-off should provide

10   Mattel ample time to properly serve Lexington Limited in compliance with any

11   applicable international law. Accordingly, there is no immediate concern — at

12   least at this stage of the litigation — that Lexington Limited may "run out" the

13   discovery clock. (*Cf. Mission Power Engineering Co. v. Continental Cas. Co.*, 883

14   F. Supp. 488, 492 (C.D. Cal. 1995).

15   Further, Mattel does not demonstrate any exigency that makes it imperative

16   for Mattel to obtain the information sought in the subpoena on an expedited basis.

17   For instance, Mattel does not explain how the information sought bears on its

18   pending motion for the appointment of a receiver, or the possibility that MGA may

19   seek a stay at some unknown point in the future.

20   In its Reply, Mattel argues for the first time that "ex parte relief is necessary

21   to prevent the destruction of documents." (*Id.*, p. 6 – 7). However, Mattel submits

22   no evidence warranting such an assertion. That *MGA-affiliated entities* may have

23   previously destroyed evidence in this case is an insufficient basis to conclude at this

24   point and on this record that *Lexington Limited* has engaged or may engage in

25   wrongdoing that necessitates emergency action now. Central District of California

26   courts have held the reasons for filing an *ex parte* application "must be supported

27   by . . . affidavits or declarations whose contents would be admissible if the

28   deponents, affiants, or declarants were testifying in court." (*Mission Power*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ F

PAGE _____ 132

1   *Engineering Co.*, 883 F. Supp. at 492).

2        The Discovery Master, like the Court,[4] is not disposed to grant relief based

3   on new arguments raised for the first time at the reply stage, particularly when those

4   arguments could have been raised in the moving papers.  Accordingly, Mattel's

5   "destruction of evidence" argument is also barred procedurally.[5]  (*See, e.g., United

6   States v. Boyce*, 148 F.Supp.2d 1069, 1085 (S.D.Cal.2001); *Leick v. Hartford Life

7   and Acc. Ins. Co.*, 2007 WL 1847635 at *1, n. 1 (E.D.Cal. 2007); *Stewart v.

8   Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal. Sept. 28, 2004); *Hamilton v.

9   Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see also United States v. Cox*, 7

10  F.3d 1458, 1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3

11  (9th Cir.2000)).[6]

12        **B.   Defects On The Face Of The Subpoena**

13       Mattel's Application must be denied on the additional ground that the

14  subpoena Mattel seeks to enforce was not directed to the correct entity:  Lexington

15  Financial Limited.  Rather, the subpoena is addressed to *Lexington Financial, LLC.*

16  According to Lexington Limited, there is no entity by that name.  (Opposition, p.

17  12).

18       The UCC Financing Statement Mattel cites throughout its brief (and which it

19

20  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would

21  not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

22  [5] The Discovery Master acknowledges that Mattel raised its destruction of evidence argument when the good cause

23  issue was briefly discussed at the hearing before him on March 4, 2009. However, that argument still came after Mattel filed its Ex Parte Application.

24  [6] Although the Discovery Master could deny the Application on the ground that no good cause exists, this ruling also

25  addresses the merits of the application, for three reasons. First, the distinction between a regular noticed motion and an *ex parte* application is diminished in this case, because the Discovery Master Order only gives a party opposing a regular noticed motion five court days to respond, (Discovery Master Order, p. 4), and Lexington Limited was

26  afforded four court days to file its Opposition to the Application, (Reply, p. 9). Thus, as a practical matter, Lexington Limited had only one less day to respond to the Application than it would have had in the event the motion been

27  brought on a noticed basis. Second, denying the Application on procedural grounds would likely result in another application seeking the same relief, requiring the parties to re-state their positions in a new round of briefing on what

28  is essentially the same subject matter. Third, addressing the merits of the Application does not alter the outcome of the ruling.

EXHIBIT ___F___

PAGE ___133___

1   apparently used to locate Fred Mashian) states that the organization's name is

2   "Lexington Financial Limited, a Nevis company." (Declaration of Jon Corey,

3   Ex. 1). On that basis, Mattel knew or should have known the correct entity at the

4   time Mattel filled out the subpoena.

5       This defect is sufficient grounds for denying the Application. (See Fed. R.

6   Civ. P. 45(a)(1)(A)(iii) ["Every subpoena must . . . (iii) command each person to

7   whom it is directed . . ."]).

8       **C.**   **Defects In The Service Of The Subpoena**

9           **1.**   **Mattel's Attempted Service Of The Subpoena On Fred**

10             **Mashian.**

11      In its Application, Mattel argues that it properly served Lexington Limited's

12  agent, Fred Mashian. (Application, pp. 8 – 9). But delivering a copy of the

13  subpoena to Mr. Mashian could not effect service on Lexington Limited unless he

14  were "an officer, managing or general agent, or any other agent authorized by

15  appointment or by law to receive service of process . . ." Fed. R. Civ. P. 4(h).

16      Here, Mattel concedes that it "does not know Mr. Mashian's specific position

17  at Lexington." (Application, p. 8). Mr. Mashian has submitted a declaration in

18  which he testifies as follows:

19        • "I am not, and never have been, an officer, director, partner, member

20          employee or agent of LEXINGTON FINANCIAL LIMITED,"

21          (Declaration of Fred Mashian, ¶ 3);

22        • "I am not, and never have been, the agent for service of process for

23          LEXINGTON FINANCIAL LIMITED," (Id.); and

24        • I was not authorized to accept service of the Subpoena on behalf of

25          LEXINGTON FINANCIAL LIMITED, nor have I ever been

26          authorized to accept service of a subpoena on behalf of LEXINGTON

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ F_____

PAGE _____ 134_____

1    FINANCIAL LIMITED,"[7] (Id.)

2        In light of the foregoing testimony, which Mattel does not at this time

3    dispute, there is no showing that Mr. Mashian was (or is) an agent of Lexington

4    Limited authorized to accept service on its behalf.[8]

5        **2.    Mattel's Purported Service Of The Subpoena On Bingham**

6            **McCutchen LLP.**

7        Mattel also argues that it effectuated service by electronically transmitting a

8    copy of the subpoena to Lexington Limited's counsel in this matter, Bingham

9    McCutchen LLP. (Application, pp. 9 – 10). Specifically, Mattel claims that, on or

10   about February 12, 2009, Peter "Villar noted his understanding that Mattel had

11   'served Mr. Mashian and Lexington Financial with subpoenas.'" However,

12   Mr. Villar "indicated that the copies which his clients had forwarded to him were

13   missing the attachments and therefore requested that Mattel's counsel send him

14   additional copies of the subpoenas." (Id., p. 7 [emphasis omitted]). Because

15   Mr. Villar requested and received copies of the subpoenas (Id.), Mattel argues that

16   his conduct should be construed as an admission that his client, Lexington Limited,

17   had been properly served.

18       There are two problems with this argument. First, contrary to Mattel's

19   assertions, Mr. Villar did not specifically admit in his February 12, 2009 e-mail that

20   service had been effectuated on Lexington Limited. Rather, in that e-mail, he stated

21   that he "*believe[d]* [Mattel's counsel] served Lexington Financial with subpoenas."

22   (Declaration of Jon Corey in Support of Ex Parte Application, Ex. 11 [emphasis

23   added]). Mr. Villar's February 12, 2009 e-mail to Mattel's counsel further clarified

24   that he was not conceding service had been accomplished on Lexington Limited

25

26   [7] Mr. Mashian further declared that he has "no knowledge of . . . Lexington Financial, LLC" and has "never been authorized to accept service [on behalf of] . . . any such entity." (Id., ¶ 4).

27   [8] Mattel filed evidentiary objections to two statements included in the Declaration of Fred Mashian. (See Objections to Declaration of Fred Mashian, p. 2). Because the disputed statements alone are unnecessary to the Discovery
28   Master's analysis, it is unnecessary to rule on the objections.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

- 7 -

EXHIBIT _____ F _____

PAGE _____ 135 _____

1   since he requested, as the part of the final sentence of his e-mail, all "documents

2   you [i.e., Mattel's counsel] believe were served on Mr. Mashian and Lexington

3   Financial . . ." (*Id.*). Thus, Mr. Villar's request could reasonably be construed to

4   be seeking all of the relevant information from Mattel so that he could assess

5   whether service had in fact taken place. Mr. Villar subsequently advised Mattel's

6   counsel, on or about February 23, 2009, that the service of the subpoena on

7   Mr. Mashian was invalid to effectuate service on Lexington Limited. (*Id.*, Ex. 13

8   ["We understand that you also attempted to serve Mr. Mashian with a subpoena to

9   Lexington Financial, LLC. Mr. Mashian advised us that he is not the agent for

10   service of process for any such entity."]).

11        Based on the current record, it further appears that neither Bingham

12   McCutchen LLP nor Mr. Villar, in his individual capacity, is Lexington Limited's

13   authorized agent for service of process. Nor were they ever authorized to accept

14   service of the subpoena. (Declaration of Peter Villar, ¶ 6). Because these facts are

15   undisputed, sending the subpoena to Lexington Limited's attorneys could not, by

16   itself, effect service. (See, e.g., *Roofers Local 149 Sec. Benefit Trust Fund v.*

17   *Milbrand Roofing Group, Inc.*, 2007 WL 2421479, *1 ["Regarding the Rule 45

18   subpoena on [a] non-party . . . it was not properly served by mailing of the

19   subpoena to the person believed to be her attorney."]).

20        D.   **Alternative Relief Sought By Mattel**

21             **1.   Order Compelling Lexington Limited To Accept Service.**

22        Mattel argues that, in the event the Discovery Master finds that the subpoena

23   was not properly served on Lexington Limited, he should order an authorized

24   representative of Lexington Limited to appear in a Los Angeles courthouse at a

25   specified time and accept service. (Application, p. 11).

26        Mattel cites no authority supporting the proposition that a discovery master

27   can issue orders requiring foreign non-parties to appear in the United States and

28   accept service of process. Nor does Mattel establish that, under the facts and

- 8 -                    ORDER NO. 8
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ ꜰ_____

PAGE _____ 136_____

1    circumstances here, the requested relief complies with Constitutional due process

2    protections afforded to foreign entities and individuals.  Accordingly, the request is

3    denied.

    **2.    Service of Lexington Limited Via The California Secretary Of State.**

6    Mattel next requests an order permitting it to serve Lexington Limited via the

7    California Secretary of State.  (*Id.*, p. 12).  In support of that request, Mattel cites

8    various sections of the California Corporations Code which apply to foreign

9    corporations which transact intrastate business in California.  However, Mattel fails

10   to show that Lexington Limited engages in such business activity.[9]

11   The only evidence in the record that Lexington Limited is transacting

12   intrastate business in California is a one-page UCC Financing Statement and the

13   Declaration of Fred Mashian.  (Reply, pp. 11 – 12; Declaration of Fred Mashian,

14   ¶ 6).  Relying on this evidence, Mattel claims that Lexington Limited:

> has (1) agreed to do business with and extended a loan to Vision
> Capital, LLC—a company purporting to have a Los Angeles
> business address and is tied to Larian family members here in
> California; (2) took collateral in the assets of Vision Capital (a
> [Delaware] company with an ostensible California address) that
> [h]as ownership in another California company, Omni 808; (3)
> filed a UCC financing statement in California, purporting to
> perfect its secured interest in Omni 808 and thereby availing itself
> of the protections of the California Commercial Code; (4) had the
> loan documents drafted and prepared in California; and (5) hired
> California attorneys [i.e., Fred Mashian] [f]rom 'time to time' to
> conduct business beyond merely resisting jurisdiction in this case.

(Reply, p. 11 [footnotes and citations omitted]).

As the quoted passage demonstrates, all of the purported evidence cited by

Mattel relates to a single business transaction (i.e., a loan from Lexington Limited

to Vision Capital, LLC).  A single transaction, standing alone, is insufficient as a

---

[9] Mattel notes that Lexington Limited is not registered to transact business in California.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    **F**

PAGE    **137**

1   matter of law to establish that Lexington Limited transacts intrastate business in

2   California. Rather, as both Mattel and Lexington Limited acknowledge in their

3   respective papers, a company only transacts intrastate business if it enters into

4   "repeated and successive transactions" in this state. (Opposition, p. 18; Reply, pp.

5   11 – 12). Indeed, the parties cite the same case for this proposition (i.e., *LeVecke v.*

6   *Griesedieck Western Brewery Co.*, 233 F.2d 772 (9th Cir. 1956)), which holds that:

> 7   Sporadic and transient sales promotional activities of a corporate
> 8   officer such as occurred here do not constitute the conducting of
>     intrastate business. . . . [T]he solicitation of orders can only be
> 9   sufficient to meet the requirements of 'doing business' where
> 10  there is a continuing and substantial course of business.

11  (*Id.*, at 776).

12       Because Mattel has not demonstrated that Lexington Limited has entered into

13  "repeated and successive transactions" of business in California,[10] California

14  Corporations Code § 2100 does not apply. Consequently, the Discovery Master

15  declines to order service upon Lexington Limited by effecting service upon the

16  California Secretary of State.

17       **3.    Service Of Lexington Limited Via E-mail.**

18       Mattel contends that Lexington Limited should be ordered to provide an e-

19  mail address for the purpose of allowing Mattel to serve Lexington Limited with

20  the subpoena electronically. (Application, p. 12; Reply, pp. 12 – 14). Mattel

21  supports this argument by citing Federal Rule of Civil Procedure 4(f)(3) and

22  asserting that it permits service of a subpoena in a foreign country "by other means

23  not prohibited by international agreement, as the court orders." (Application, p. 12,

24  n. 48; Reply, p. 12).

25       On its face, however, Rule 4(f)(3) requires that Mattel demonstrate that the

26  "other means" of service is "not prohibited by international agreement." Fed. R.

27

28  ────────────────
    [10] Lexington Limited denies that it regularly transacts business in California. (Opposition, p. 18).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                                    - 10 -        ORDER NO. 8
                                                                  [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ F
PAGE _____ 138

1   Civ. P. 4(f)(3). This Mattel has not done. In fact, Mattel's Reply suggests that

2   Mattel could have an obligation "to go through the Hague Convention." (Reply,

3   p. 8). Accordingly, this case is unlike the case Mattel relies upon (i.e., *Rio*

4   *Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir.2002),

5   and is instead analogous to the situation present in *Agha v. Jacobs*, 2008 WL

6   2051061, *1-*2 (N.D.Cal. May 13, 2008) (holding that "Agha has failed to meet his

7   burden of showing that the 'other means' of service he proposes to utilize are

8   permissible under an applicable 'international agreement'-- the Hague

9   Convention.").

10       Because Mattel does not demonstrate that service by e-mail is not prohibited

11   by international law in this instance, Mattel's request to pursue service by e-mail

12   under Rule 4(f)(3) is denied.

13   **IV.**   **DISPOSITION**

14       For all of the foregoing reasons, Mattel's *Ex Parte* Application is **DENIED.**

15

16

Dated: March 16, 2009

17

18

19                   By:      /s/ Robert C. O'Brien

20                         ROBERT C. O'BRIEN

21                         Discovery Master

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

EXHIBIT ___F___

PAGE ___139___

ORDER NO. 8
[Case No. CV 04-09049 SGL (RNBx)]

# EXHIBIT G

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:  213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,
                                       Consolidated with
14        v.                           Case No. CV 04-09059
                                       Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                       **PHASE 2 DISCOVERY MATTER**
16
              Defendant.               **ORDER NO. 14, REGARDING:**
17
                                       *EX PARTE* **APPLICATION OF**
18                                     **MATTEL, INC. FOR AN ORDER**
                                       **FOR PRESERVATION OF**
19                                     **DOCUMENTS**

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                         ORDER NO. 14
                                       [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ G _____

PAGE _____ 140 _____

1        This Order sets forth the Discovery Master's ruling on the *ex parte*

2    application of Mattel, Inc. ("Mattel") filed on or about April 3, 2009 (the

3    "Application") [Docket Number 5133].

4        The Discovery Master determines that it is not necessary to conduct a hearing

5    prior to issuing his ruling, and notes that the interested parties have provided

6    various written submissions, including the Application and related papers, multiple

7    letters and e-mails. Having considered all of the submitted papers, the Discovery

8    Master rules as follows.

9    **I.   RELIEF SOUGHT BY MATTEL**

10       In the Application, Mattel seeks an order requiring that Lexington Financial

11   Limited ("Lexington") "preserve documents sought by Mattel's subpoenas until

12   further order of the Court." (Application, p. 2). While it has not issued or effected

13   service of any subpoena on Lexington,[1] Mattel argues that a preservation order is

14   necessary and that the Discovery Master is authorized to issue such a ruling.

15   Specifically, Mattel contends that (1) there is a "genuine threat that documents will

16   be destroyed or lost" by Lexington, (*id.*, p. 7), (2) the destruction of any documents

17   would cause Mattel irreparable harm, (*id.*, p. 10), (3) Lexington is "capable of

18   maintaining its own financial and corporate records," (*id.*, p. 11), and (4) the

19   Discovery Master may issue an order requiring the preservation of documents

20   because the Court has personal jurisdiction over Lexington, (*id.*, pp 11 – 19).

21   **II.   LEXINGTON'S RESPONSE**

22       In its written communications requesting that the Discovery Master

23   summarily deny the Application or alternatively that it be given until April 15, 2009

24   to file a written opposition, Lexington asserts that the Application "fails at every

25   level, procedurally and substantively . . ." (April 3, 2009 letter from Todd

26

27   [1] *See* Application, p. 1 of the notice section [stating that to date Lexington "has evaded service of Mattel's subpoena"]; *see also* Application, p. 1 [noting that Lexington has not "accept[ed] service of Mattel's subpoena"] and

28   p. 11 [stating that "Mattel's ultimate ability to obtain . . . documents [from Lexington] will depend upon proper service of a subpoena"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ G

PAGE _____ 141

1   Gordinier to Robert C. O'Brien, p. 1). Initially, Lexington argues that Mattel fails

2   to "satisfy the requirements for *ex parte* relief." (*Id.*, p. 2; *see also* April 6, 2009

3   letter from Peter Villar to Robert C. O'Brien, p. 1 and 2). Lexington next argues

4   that Mattel "is not subject to the jurisdiction of this Court." (April 3, 2009 letter

5   from Todd Gordinier to Robert C. O'Brien, p. 1). Finally, Lexington argues that

6   "unless and until [Mattel] issues and serves a subpoena pursuant to the governing

7   United States and international laws and treaties, this Court has no . . . authority to

8   compel Lexington to do anything." (*Id.*, p. 2).

9   **III.   FAILURE TO SATISFY THE DISCOVERY MASTER ORDER'S**

10  **GOOD CAUSE REQUIREMENT**

11       Under the procedures set forth in the Court's order appointing a discovery

12  master dated December 6, 2006 ("Discovery Master Order"), Mattel must

13  demonstrate that "good cause" exists for hearing the Application "on shortened

14  time" and that it will "be prejudiced absent prompt resolution" of the issue.

15  (Discovery Master Order, pp. 4 – 5). This standard is not satisfied here.

16       In the introductory section of its Application preceding the Memorandum of

17  Points and Authorities, Mattel states that "good cause exists to seek . . . relief on an

18  ex parte basis because, absent, a preservation order, relevant evidence could be

19  spoliated before a regularly noticed motion could be heard." (Application, p. 2 of

20  the notice section [underline omitted]). That is the extent of Mattel's attempt to

21  satisfy its burden to demonstrate good cause. The Memorandum of Points and

22  Authorities does not discuss what specific evidence is in danger of being destroyed

23  or how that evidence is relevant to any subpoena that has been served on Lexington.

24  Indeed, the sole basis for the Application appears to be that unspecified classes of

25  documents might potentially be destroyed because Lexington will not voluntarily

26  agree to be bound by the Discovery Master's Order No. 10.

27       However, the fact that a non-party who has not yet been served with a

28  subpoena will not agree to be bound by an order involving other entities (who have

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -                    ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ G _____

PAGE _____ 142

1   been served with subpoenas) is insufficient to establish that there is a "genuine

2   threat" of documents being destroyed, especially when such a promise could be

3   construed as an admission that Lexington possesses documents that relate to this

4   case (which Lexington may dispute).  Nor is it possible to ascertain what

5   documents allegedly in danger of being destroyed are relevant to this case in the

6   absence of a subpoena having been served on Lexington and the scope of the

7   document requests set forth.

8          For all of these reasons, Mattel has not demonstrated — at least on the record

9   presented to the Discovery Master — that *ex parte* relief is warranted   (*Cf. Mission*

10  *Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal.

11  1995)).

12  **IV.   MATTEL HAS NOT DEMONSTRATED THAT THE COURT HAS**

13  **PERSONAL JURISDICTION OVER LEXINGTON**

14         **A.    Specific Jurisdiction Arising Out Of Lexington's Forum-Related**

15                **Contacts**

16         In its Application, Mattel argues that the Court has specific jurisdiction over

17  Lexington "because:  (1) Lexington both purposefully availed itself of the privilege

18  of conducting activities in the forum and, purposefully directed its activities at the

19  forum state, either of which is sufficient; (2) the discovery at issue relates to

20  Lexington's forum-related activities; and (3) the exercise of jurisdiction is not

21  unreasonable." (Application, p. 13).  As support for this position, Mattel cites

22  several cases, including *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th

23  Cir. 1998) ("*Panavision*").  In that case, the Ninth Circuit ruled that the "purposeful

24  availment" prong of the test for determining specific jurisdiction can be met by

25  demonstrating that the non-resident defendant has "aimed" its conduct so as to

26  create an injury in the forum.  (See, also, *Bancroft & Masters, Inc. v. Augusta Nat'l,*

27  *Inc.*, 223 F. 3d 1082, 1087 (9th Cir. 2000), which describes this concept in terms of

28  "express aiming" of conduct "targeted" to a plaintiff residing in the forum).

EXHIBIT _____ G_

PAGE _____ 143

1      A review of *Panavision* and the other cases cited by Mattel discloses that this

2  "express aiming" test applies where a court is asked to exercise jurisdiction over a

3  non-resident *defendant sued in tort or contract*. These cases do not address the

4  situation presented here, where a court is asked to exercise jurisdiction over a non-

5  resident *non-party* who is not alleged to have committed any wrong or breach and

6  from whom a party merely seeks to obtain (as-yet unserved) discovery.

7  Nevertheless, Mattel argues that the Discovery Master should rely on the express

8  aiming test applied in the aforementioned cases as a basis for (1) finding that

9  Lexington directed its activities at California, (2) exercising specific jurisdiction

10  over Lexington, and (3) issuing an order restraining Lexington from destroying

11  evidence.

12      Such a result is not warranted. In all of the cases relied upon by Mattel, the

13  party over whom jurisdiction was sought was alleged to have engaged in actionable

14  conduct which caused the plaintiff to suffer damage in the forum. (See, e.g.,

15  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.); *Calder v. Jones*,

16  465 U.S. 783, 789 (1984)). As a result, the courts in those cases were called upon

17  to determine whether jurisdiction existed for the purpose of requiring a *defendant to*

18  *appear and defend its conduct* in the forum. The analysis turned on whether there

19  was a sufficient link between the defendant's bad act, on the one hand, and the

20  injury suffered in the forum state, on the other hand, such that it would be fair to

21  require the defendant to appear and litigate in the forum. (*Id.*)

22      Here, Lexington is not a defendant, is not alleged to have committed any tort

23  or breached any contractual obligation, and is not being called upon to appear and

24  defend any claim in this forum. Without such facts, the analysis undertaken in the

25  cases cited by Mattel cannot be performed, and there is neither a basis nor a reason

26  for exercising jurisdiction over Lexington. The concept of specific jurisdiction

27  presupposes that the tribunal asserting jurisdiction does so for the purpose of

28  adjudicating some actionable conduct and rendering some cognizable relief or

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6 _____

PAGE _____ 144 _____

1   remedy for an injury, or enforcing some process of the court (such as a validly

2   issued subpoena). In the absence of such allegations, Mattel's argument that MGA,

3   Larian and others "targeted Mattel specifically in order to, among other things,

4   conceal assets from Mattel and the Court," (Application, p. 15), is unavailing. Even

5   assuming that these allegations are true and assuming that "concealing assets" is a

6   cognizable tort, the fact remains that Mattel is not asking the Court to exercise

7   jurisdiction over Lexington in order to adjudicate any claims Mattel has asserted

8   against Lexington for such conduct. In short, the body of law cited by Mattel

9   relating to jurisdiction over non-resident defendants is inapposite to situations

10  where jurisdiction is sought over a non-party overseas entity for the purpose of

11  preserving evidence that may be the subject of future discovery.[2]

12      **B.    Lexington's Purported Consent To Jurisdiction**

13      In its Application, Mattel also argues that Lexington has waived any

14  challenge to the Court's exercise of personal jurisdiction by appearing before the

15  Court and by "threaten[ing]" judicial action against Mattel. (Application, p. 18). In

16  support of this assertion, Mattel states that counsel for Lexington (Messrs.

17  Gordinier and Villar) appeared at the March 4, 2009 hearing before the Discovery

18  Master and promised, on Lexington's behalf, that Lexington would not destroy

19  evidence.

20      As the record reflects, the hearing conducted on March 4, 2009 involved

21  subpoenas issued to non-parties Omni 808 Investors, LLC, OmniNet Capital, LLC

22  and Vision Capital, LLC. Messrs. Gordinier and Villar's appearance at that hearing

23  was expressly entered on behalf of those non-parties – not Lexington (Transcript, p.

24  4:3-8; 5:18-6:8). Accordingly, counsel's appearance cannot be deemed a general

25  appearance on behalf of Lexington.

26

27  ───────────────
    [2] This conclusion also disposes of Mattel's contention that the other two prongs of the "purposeful availment"
    requirement have been met, since the entire requirement only applies where a court seeks to exercise jurisdiction over

28  a non-resident defendant alleged to have committed a tort or breached an obligation causing injury in the forum.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -                    ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 145

1    With respect to Mattel's contention that Lexington's counsel made a promise

2    to preserve documents on behalf of Lexington at the March 4, 2009 hearing, the

3    following colloquy occurred between Mr. Gordinier and the Discovery Master

4    regarding Mattel's then-pending application to deem Lexington served with a

5    subpoena (the "Subpoena Application"). Because Lexington had requested an

6    extension of time to oppose the Subpoena Application, Mattel was concerned that

7    documents would be destroyed during any resulting delay that might ensue before

8    the Discovery Master could rule on the Subpoena Application:

9         MR. ZELLER:  There's a preservation issue that I'm

10        concerned about . . . [M]y point is that we have a situation

11        where Lexington, which we have suspicion about, for

12        obvious reasons, considers itself under no obligation of

13        the subpoena.  If they're willing to say that obviously they

14        understand that Lexington is under an obligation to

15        preserve documents *during this time period*, then Monday

16        is fine by me. *But I don't want an argument that*

17        *somehow between the time that this got teed up and*

18        *Monday something's happened that somehow their legal*

19        *obligations are different from how we view them.*

20        MR. O'BRIEN:  Is that a representation you –

21        MR. GORDINIER:  Exhibit A.  Let me just tell you this,

22        *nothing is going to be destroyed between now and*

23        *Monday close of business.*  I'm not going to concede

24        anything else with respect to what he said.

25        MR. O'BRIEN:  I'm not asking – I don't want to get into

26        the issue of whether the subpoena was proper or not.

27        He's raised an issue about document preservation that he

28        believes your putative client – do you represent

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ G _____

PAGE _____ 146

1       Lexington?

2       MR. GORDINIER:  It's a more complicated issue than

3       that.  We will address it on the papers on Monday but –

4       MR. O'BRIEN:  I will take your representation today that

5       Lexington or affiliated entities are not going to destroy

6       any documents that would have been subject to *the*

7       *subpoena* that may or may not have been served *so that*

8       *we can deal with that issue*, but there will be no document

9       destruction of any nature, and I'm going to ask you to

10      convey that to the Lexington people and let them know

11      that you've made that representation on their behalf.

12      MR. GORDINIER:  Will do.

13   (Transcript, p. 96:19 – 98:5, emphasis added).

14        As the foregoing exchange reflects, Mr. Gordinier's representation involved

15   Lexington's preservation of documents pending the Discovery Master's ruling on

16   Mattel's Subpoena Application.  The Discovery Master denied that application

17   pursuant to Order No. 8 issued on March 16, 2009.  In its Application, Mattel

18   nonetheless seeks to convert Mr. Gordinier's representation into:  (1) an ongoing,

19   obligation by Lexington to Mattel; and (2) consent to jurisdiction by the Court, at

20   least to the extent of enforcing Lexington's promise to preserve documents.

21        The record does not support such a characterization of the above-quoted

22   colloquy.  Both counsel for Mattel (Mr. Zeller) and counsel for Lexington (Mr.

23   Gordinier) indicated that Mattel's concern involved the preservation of documents

24   for the limited period until the Discovery Master could rule on the Subpoena

25   Application.  Indeed, the Discovery Master himself indicated that the issue before

26   him was the possible destruction of "documents that would have been subject to the

27   subpoena . . . so that we can deal with that issue," i.e., until the Discovery Master

28   could rule on the Subpoena Application.  (*Id.*, p. 97:25 – 98:1).  Nothing in the

EXHIBIT ___G___

PAGE ___147___

1   record indicates that Mr. Gordinier intended to or did undertake any other

2   obligation; on the contrary, he expressly stated, "I'm not going to concede anything

3   else with respect to what [Mr. Zeller] said." (*Id.*, p. 97:12 – 13).

4        Accordingly, the Discovery Master declines to find, based on the record

5   before him, that Lexington undertook any ongoing obligation to preserve

6   documents after the adjudication of the Subpoena Application or that Lexington

7   submitted to the jurisdiction of the Court for purposes of allowing the Court to

8   enforce such an obligation.[3]

9        With respect to Mattel's argument that Lexington has "appeared" in this

10  litigation, the Discovery Master understands Mattel to be referencing Lexington's

11  opposition to the Subpoena Application.[4]  However, a party which successfully

12  opposes enforcement of a subpoena by establishing (as Lexington did here) that the

13  subpoena was never properly served on it does not make a general appearance

14  waiving its objections to the court's exercise of jurisdiction. (*See Estate of Yaron*

15  *Ungar v. Palestinian Authority*, 400 F.Supp.2d 541, 551-52 (S.D.N.Y.2005)).

16       Lastly, Mattel contends that Lexington submitted to the Court's jurisdiction

17  by threatening to seek sanctions against Mattel, citing a March 30, 2009 letter from

18  Mr. Gordinier to Mr. Zeller.  Setting aside for the moment the question of whether

19  threatening to seek sanctions from a court is equivalent to making a general

20  appearance and submitting to the court's jurisdiction, the alleged threat is contained

21  in the second and third paragraphs of the above-referenced letter in response to

22

23  [3] In footnote 49 of its Application, Mattel cited the following passage of the March 4, 2009 transcript as support for
    its claim that Lexington consented to jurisdiction:

24              MR. GORDINIER:  What documents do we have that show that either Mr.
                Larian or MGA paid money into this to purchase this debt?  I can tell you there

25              are none.  This is a ready, fire, aim situation.  The allegations that were made and
                were made publicly are unconscionable and can't be undone.

26  (Transcript, p. 51:3 – 8, cited in footnote 49 of the Application).  This passage does not contain any mention of
    Lexington or any promise purportedly made on Lexington's behalf.

27  [4] While Mattel also references Mr. Gordinier's statements and appearance before the Court on February 11, 2009 at
    various points in its Application, the transcript reflects that Mr. Gordinier appeared on behalf of Omni 808 Investors,

28  LLC at that hearing, not on behalf of Lexington.  (Transcript of February 11, 2009 hearing, p. 3 and p. 5, ln. 19).

                                                    - 8 -      ORDER NO. 14
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ G _____

PAGE _____ 148 _____

1    Mattel's statement that it might file another *ex parte* application if Lexington and

2    another entity, Neman Bros. & Associates ("Neman"), do not agree to preserve

3    documents. In the subject paragraphs, Mr. Gordinier, who apparently represents

4    both entities, addresses the contemplated *ex parte* application *against Neman* and

5    states that, if Mattel files such an application, "[w]e fully intend to seek sanctions if

6    you move for the requested relief." Given the context of that statement, Mr.

7    Gordinier appears to be speaking on behalf of his client Neman. Moreover, even if

8    Lexington had made such a threat, Mattel does not cite, and the Discovery Master is

9    not aware of, any authority supporting the proposition that such a statement,

10    unaccompanied by the filing of a pleading with the Court, constitutes a general

11    appearance.[5]

12   **V.   MATTEL'S APPLICATION ALSO FAILS BECAUSE IT HAS NOT**

13        **SERVED ANY SUBPOENA ON LEXINGTON**

14    Even assuming personal jurisdiction existed over Lexington (which is not the

15    case based on the record presented to the Discovery Master), Mattel has not cited

16    any legal authority supporting the proposition that a court has the power to issue an

17    order compelling a non-party to preserve documents covered by a subpoena that has

18    not been served. While it may later be shown that the Court has personal

19    jurisdiction over Lexington, it does not follow that the Discovery Master is

20    authorized to order a non-party, who has not been properly brought into the case via

21    the service of a subpoena under the Federal Rules of Civil Procedure, to take any

22    affirmative steps. If the rule were otherwise, each time Mattel (or any other party in

23    this case) considered serving a subpoena, it could request an *ex parte* order

24    compelling that non-party to preserve documents prior to the subpoena being issued

25    or served. At a minimum, a party seeking an order that concerns a non-party must

26

27    [5] Mattel's request for permission to conduct jurisdictional discovery related to Lexington is denied by the Discovery

28    Master at this stage because, as discussed below in Section V, Mattel has not yet served Lexington with any subpoena.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     G

PAGE     149

1    first sufficiently connect that non-party to the pending litigation through the service

2    of a valid subpoena or other authorized method (e.g., amending its complaint).

3       Put another way, the existence of jurisdiction in the abstract does not

4    empower a tribunal to issue orders over any party unless and until the subject entity

5    or individual has been properly associated with the case in accordance with

6    established principles of due process. Because Lexington is a non-party that has

7    admittedly not been served with a subpoena by Mattel, it has not been sufficiently

8    linked to this litigation, and the Discovery Master is not empowered to order it to

9    indefinitely preserve unspecified classes of documents because it may eventually be

10    served with a subpoena.

11    **VI.**    **DISPOSITION**

12       For all of the foregoing reasons, the Application is **DENIED.**

13

14    Dated: April 9, 2009

15

16

17                    By:   /s/ Robert C. O'Brien

18                          ROBERT C. O'BRIEN

19                          Discovery Master

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    9

PAGE    150

# EXHIBIT H

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

March 11, 2009

**VIA FEDERAL EXPRESS**

Peter N. Villar, Esq.
Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA 92626-1924

Re:   Bryant v. Mattel, Inc. and Consolidated Actions,
       Case No. CV04-09049

Dear Mr. Villar:

We are in receipt of Mr. Mashian's declaration and your declaration professing no knowledge of an entity called "Lexington Financial, LLC" and asserting that the proper entity name is "Lexington Financial Limited, A Nevis Company" ("Lexington Financial Limited").

Although it is obvious that you and your clients have been well aware of what entity was being referenced, and out of an abundance of caution to obviate the dubious, at best technical contention you and your clients raised for the first time many weeks after the subpoenas were served, we are enclosing corrected, updated requests for the subpoenas to your clients that address this contention, but whose contents are otherwise identical.

As for Lexington Financial, LLC, we will serve the corrected subpoena on Mr. Mashian. Please let us know by the close of business tomorrow, if you would prefer to accept service on his behalf.

Best regards,

*Jon D. Corey*

Jon D. Corey
quinn emanuel urquhart oliver & hedges, llp

Encl.

EXHIBIT ___H___

PAGE ___151___

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

# EXHIBIT I

# BINGHAM

Peter N. Villar
Direct Phone:  714.830.0640
Direct Fax:    714.830.0719
peter.villar@bingham.com

**VIA EMAIL**

March 16, 2009

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

Re:  **Bryant v. Mattel**

Dear Mr. Corey:

We are in receipt of your letter dated March 11, 2009, enclosing "corrected subpoenas" to Omni 808 Investors, LLC, Omninet Capital, LLC, Vision Capital, LLC, Bingham McCutchen LLP, Neman Brothers & Associates, Inc., Neil Kadisha, Fred Mashian, and Leon Neman.  It appears that you have attempted to correct the erroneous references to "Lexington Financial, LLC," which we understand to be an acknowledgement that Lexington Financial, LLC does not exist and that your subpoena to Lexington Financial, LLC is deficient.

As you know, the Discovery Master already has ruled, pursuant to the Phase II Discovery Master Order No. 3 issued March 10, 2009, that your subpoenas to Omni 808, Omninet Capital and Vision Capital are improper (except for the narrow categories of documents set forth in the Order regarding the Omni 808 subpoena).  Further, we already have filed a motion to quash the subpoena to Bingham, and already have filed objections to the subpoenas issued to Neman Brothers & Associates, and Messrs. Kadisha, Mashian and Neman.  In light of the Discovery Master's March 10 Order, all of these subpoenas should be quashed as well.

Your attempt to modify subpoenas that we already have responded to, and that the Court already has invalidated in some instances, is procedurally improper.  Consequently, these "corrected subpoenas" have no legal significance and we certainly do not agree that they have been properly issued or served.  We do not intend to provide any further response to these invalid corrected subpoenas except to raise these issues with the Court to the extent you ever try to rely upon these subpoenas in the future.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/72870752.1

EXHIBIT ____I____

PAGE _____152_____

Jon Corey
March 16, 2009
Page 2

In addition, we are perplexed by your assertion that you intend to serve Mr. Mashian with a corrected subpoena to Lexington Financial Limited (and by your request that we accept service of a subpoena to Lexington Financial Limited) in light of our repeated statements to you that we are not authorized to accept service of a subpoena on behalf of Lexington Financial Limited and in light of the Discovery Master's March 10 Order finding that the requested documents are irrelevant and not discoverable. Please be advised that if you attempt to serve a subpoena on Lexington Financial Limited requesting documents that already have been deemed by the Court to be not discoverable, we will seek sanctions against your firm and your client.

Sincerely yours,

Peter N. Villar

cc:     Jason Russell, Esq.
        Patricia L. Glaser, Esq.
        Joel Klevens, Esq.
        Amman Khan, Esq.
        Jeffrey B. Valle, Esq.
        Thomas Nolan, Esq.
        Russell J. Frackman, Esq.
        Todd E. Gordinier, Esq.

EXHIBIT _____I_____

PAGE _____153_____

# EXHIBIT J

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
)
    PLAINTIFF,   )
)  CASE NO.
  V.      )  CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE  )  CONSOLIDATED WITH
CORPORATION,    )  CASE NO. 04-9059
)
    DEFENDANTS. )  CASE NO. 05-2727
————————————————)
)
AND CONSOLIDATED ACTION (S). )
————————————————)

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)**

## DEPOSITION OF DAVID ROSENBAUM

## JANUARY 25, 2008



**REPORTED BY:**
APRIL CRUZ CACULITAN
CSR NO. 12437
JOB NO. 08AE094-RP

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT    J

PAGE    154

# EXHIBIT K

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
　　　　　　　　　　　　　　　 )
　　　　　PLAINTIFF, )
　　　　　　　　　　　　　　　 )　　CASE NO.
　　　V. )　　CV 04-9040 SGL (RNBX)
　　　　　　　　　　　　　　　 )
MATTEL, INC., A DELAWARE )　　CONSOLIDATED WITH
CORPORATION, )　　CASE NO. 04-9059
　　　　　　　　　　　　　　　 )
　　　　　DEFENDANTS. )　　CASE NO.　05-2727
　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　 )
AND CONSOLIDATED ACTION (S). )
　　　　　　　　　　　　　　 )

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)**

# DEPOSITION OF ANNE WANG

# JANUARY 28, 2008



REPORTED BY:
APRIL CRUZ CACULITAN
CSR NO.　12437
JOB NO. 08AE104-AC

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT ＿＿＿ ﾄ

PAGE ＿＿＿ 155

# EXHIBIT L

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

        Plaintiff,

                    CASE NO.

        vs.           CV 04-9040 SGL(RNBx)
                    Consolidated with
                    Case No. CV 04-09059
                    Case No. CV 05-02727

MATTEL, INC., a Delaware corporation,

        Defendant.

_____

AND CONSOLIDATED ACTIONS.
_____

**CERTIFIED COPY**


DEPOSITION OF PATRICIA GLASER

Los Angeles, California

Thursday, May 15, 2008

Volume 1


Reported by:
DAVID OCANAS
CSR No. 12567

Job No. 88458


EXHIBIT _____ L
PAGE _____ 156

# EXHIBIT M

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)               CASE NO.
V. )               CV 04-9049 SGL
)               (RNBX)
MATTEL, INC., A DELAWARE )               [CONSOLIDATED WITH
CORPORATION, )               NO. 04-9059 AND CASE NO. 05-2727]
)
DEFENDANTS. )
_____)
)
AND CONSOLIDATED ACTION (S). )
_____)

# DEPOSITION OF LUCY ARANT

# MAY 15, 2008



COURT REPORTERS

**REPORTED BY:**
BETH FELIX
CSR NO. 12766
JOB NO. 08AE383-BF

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _____ M
PAGE _____ 157

# EXHIBIT N

6363

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4     **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                    ---

6   MATTEL, INC.,              :   PAGES 6363 - 6493
                               :
7          PLAINTIFF,          :
                               :
8      VS.                     :   NO. ED CV04-09049-SGL
                               :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,   :   CV04-9059 & CV05-2727]
    ET AL.,                    :
10                             :
          DEFENDANTS.          :
11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             THURSDAY, AUGUST 7, 2008

18              JURY TRIAL - DAY 31

19               AFTERNOON SESSION

20

21

22                        MARK SCHWEITZER, CSR, RPR, CRR
                          OFFICIAL COURT REPORTER
23                        UNITED STATES DISTRICT COURT
                          181-H ROYBAL FEDERAL BUILDING
24                        255 EAST TEMPLE STREET
                          LOS ANGELES, CALIFORNIA 90012
25                        (213) 663-3494

CERTIFIED COPY

6459

```
 1   want to buy this business.
 2             Have you ever heard of that happening?
 3   A.    Never.
 4   Q.    You are aware, I think you've already indicated, that
 5   MGA has retained somebody like you to give valuation
 6   opinions.
 7   A.    Mr. Meyer has similar credentials to me.
 8   Q.    Is he a broker?
 9   A.    He is not.
10   Q.    Did he go out -- you've read his report, and you know he
11   has some opinions, too, on valuation.
12   A.    He does.
13   Q.    All right.  And did you see any indication in that
14   report to support his reasons?  He went out in the
15   marketplace to try to see if there were buyers or offered
16   Mr. Larian's stock to anybody?
17   A.    He didn't do that, and I wouldn't expect that he would.
18             MR. QUINN:   Thank you.
19             THE COURT:   Anything further?
20             MR. KENNEDY:   Nothing further, your Honor.
21             THE COURT:   You are excused for the time being.
22   You may be recalled.
23             THE WITNESS:   Thank you, your Honor.
24             THE COURT:   Mr. Quinn, the plaintiff's next
25   witness.
```

EXHIBIT _____ **N** _____

PAGE _____ **159** _____

6460

1          MR. QUINN:  Your Honor, the next witness -- we

2    don't have the video to play yet.  It will be Michael Moore.

3          THE COURT:  Very well.

4          THE CLERK:  Please stand next to the court reporter

5    and raise your right hand.

6          **MICHAEL CHRISTOPHER MOORE, SWORN.**

7          THE CLERK:  Please take the stand.

8          Please state your full name for the record, and

9    spell your last name.

10         THE WITNESS:  Michael Christopher Moore, M-O-O-R-E.

11         THE COURT:  Counsel, you may proceed.

12         MR. ZELLER:  Thank you, your Honor.

13                    **DIRECT EXAMINATION**

14   BY MR. ZELLER:

15   **Q.**   Good afternoon, Mr. Moore.  You are currently employed

16   by Mattel's law department as an attorney?

17   **A.**   Yes, I am.

18   **Q.**   And how long have you been with Mattel's law department?

19   **A.**   Since December of 2000.

20   **Q.**   And what's your current title there?

21   **A.**   My current title is expert counsel.

22   **Q.**   And do you work in a particular area of law, a legal

23   practice?

24   **A.**   My practice focuses on trademarks and copyrights.

25   **Q.**   And what is it that your duties were principally when

EXHIBIT _____ **N** _____

PAGE _____ **160**

6461

1   you first arrived there at Mattel back in December of 2000?

2   **A.**   My duties were principally to prosecute trademark

3   registrations, essentially register trademarks that Mattel

4   wanted to use in connection with its products.

5   **Q.**   And then at some point in around 2002 or so, did you

6   start having some kind of responsibility for litigation, the

7   lawsuits that Mattel was involved in?

8   **A.**   Yes, I did.

9   **Q.**   Now, prior to joining Mattel, did you have any legal

10   experience?

11   **A.**   Well, for two and a half years before I joined Mattel, I

12   was an attorney at the United States Patent and Trademark

13   Office in Washington, D.C.

14   **Q.**   And generally speaking, what did you do there?

15   **A.**   There I worked at the Trademark Office, and I reviewed

16   trademark applications which were filed at the office for

17   registration.

18   **Q.**   If you could, please, take a look at -- I believe it's

19   the smaller binder that you should have up there.  There's an

20   Exhibit 13109.  This is in evidence.  If we could please have

21   it published.

22   **A.**   Okay.

23   **Q.**   Do you have that exhibit, Mr. Moore?

24   **A.**   I do.

25   **Q.**   And for the record, this is a document I think we're all

EXHIBIT    **N**

PAGE    161

6493

1          MR. NOLAN:   Thank you, your Honor.   See you in the

2   morning.

3

4              (Proceedings concluded at 5:15 P.M.)

5

6

7

8

9              C E R T I F I C A T E

10

11

12          I hereby certify that pursuant to Title 28,

13   Section 753 United States Code, the foregoing is a true and

14   correct transcript of the stenographically reported

15   proceedings in the above matter.

16          Certified on August 7, 2008.

17

18

19          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
20          License No. 10514

21

22

23

24

25

EXHIBIT _____

PAGE_____ 162

# EXHIBIT O

1391

1   UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA

3   EASTERN DIVISION

4   - - -

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6   - - -

7   MATTEL, INC.,                     )

8                    PLAINTIFF,       )

9        VS.                          )   NO. CV 04-09049

10  MGA ENTERTAINMENT, INC., ET. AL., )

11                   DEFENDANTS.      )   TRIAL DAY 8,
                                          MORNING SESSION
12  AND CONSOLIDATED ACTIONS,         )   PAGES 1391-1514
                                      )
13

14

15   REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16   RIVERSIDE, CALIFORNIA

17   THURSDAY, JUNE 5, 2008

18   8:39 A.M.

19

20

21

22

23   THERESA A. LANZA, RPR, CSR
     FEDERAL OFFICIAL COURT REPORTER
24   3470 12TH STREET, RM. 134
     RIVERSIDE, CALIFORNIA  92501
25   951-274-0844
     WWW.THERESALANZA.COM

**CERTIFIED COPY**

EXHIBIT ___O___

PAGE ___163___

1417

1    I APPRECIATE THAT, MR. ZELLER, AND I, TOO, HOPE THAT

2    I'M NOT GOING TO HAVE TO RESOLVE THIS ISSUE ON REPRESENTATION.

3    I JUST THINK IT'S IMPORTANT TO GIVE LITTLER MENDELSON AN

4    OPPORTUNITY TO RESPOND TO THIS, GIVEN THAT WE'RE ASKING -- IT'S

5    A RATHER EXTRAORDINARY MEASURE TO HAVE ANY LAW FIRM TESTIFY IN          09:09

6    THIS CAPACITY ABOUT INFORMATION THAT WAS GOING BACK AND FORTH

7    BETWEEN A CLIENT.  I WOULD WANT TO EXTEND THAT TO ANY LAW FIRM

8    APPEARING BEFORE THIS COURT.

9            MR. ZELLER:  AND WE HAVE NO QUARREL WITH THAT.

10           THE COURT:  VERY WELL.                                          09:09

11    IF THERE'S NOTHING ELSE THAT WE HAVE TO ADDRESS RIGHT

12    NOW, I'D RATHER GET THE JURY IN HERE.  LET'S GET A WITNESS

13    GOING, AND WE CAN TAKE UP MATTERS DURING LUNCH TODAY AND DURING

14    BREAKS.

15           BRING THE JURY IN, MR. HOLMES.                                  09:09

16           MR. QUINN:  WE HAVE THE TIME ALLOCATIONS FOR THE

17    WITNESS WHO APPEARED BY VIDEO YESTERDAY, O'NEAL.

18           THE COURT:  I CREDITED ALL OF THE TIME TO MATTEL, SO

19    HOW MUCH SHOULD I SUBTRACT FOR --

20           MR. QUINN:  WELL, MGA HAD 28 SECONDS.                           09:10

21           (LAUGHTER.)

22           THE COURT:  IT'S ON YOUR TIME, COUNSEL.  MY CLOCK

23    JUST DOES MINUTES, IT DOESN'T DO SECONDS; NO SECOND HAND.

24           IF MR. NOLAN CAN KEEP EVERY CROSS-EXAMINATION UNDER A

25    MINUTE, HE'S NOT GOING TO LOSE A SINGLE...  EXHIBIT ____ D              09:10

PAGE ____ 164

THURSDAY, JUNE 5, 2008                    TRIAL DAY 8, MORNING SESSION

1418

1       MR. QUINN:  I ASSUME THAT GOES BOTH WAYS.

2       MR. NOLAN:  NOW YOU TELL ME.

3       THE COURT:  THE SUBMISSION THAT YOU GAVE ME THIS

4   MORNING, COUNSEL, I TRUST WE CAN TAKE UP LATER IN THE DAY

5   TODAY?                                                      09:1C

6       MR. NOLAN:  YES, WE WILL, YOUR HONOR.  I ONLY DID IT

7   BECAUSE I NEED TO ASK YOUR PERMISSION TO FOLLOW UP AND FILE

8   SOMETHING.

9       THE COURT:  LETS HOLD OFF.  WE'LL TAKE THAT UP LATER.

10      AND THEN DURING THE BREAK, WE'RE GOING TO TAKE UP THE    09:1C

11  IN-CHAMBERS MATTER WITH MS. ANDERSON.

12      (WHEREUPON, JURORS ENTER COURTROOM.)

13      THE COURT:  COUNSEL, YOUR NEXT WITNESS.

14      MR. ZELLER:  WE WOULD CALL LUCY ARANT.

15      THE CLERK:  DO YOU SOLEMNLY STATE THAT THE TESTIMONY

16  YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL

17  BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO

18  HELP YOU GOD?

19      THE WITNESS:  I DO.

20      THE CLERK:  PLEASE STATE YOUR FULL NAME AND SPELL

21  YOUR LAST NAME FOR THE RECORD.

22      THE WITNESS:  LUCY ARANT, A-R-A-N-T.

23              DIRECT EXAMINATION        EXHIBIT ____ O

24  BY MR. ZELLER:
                                          PAGE ____ 165
25  Q    YOU AND I HAVE NOT MET.  MY NAME IS MIKE ZELLER.  I'M A   09:1:

THURSDAY, JUNE 5, 2008          TRIAL DAY 8, MORNING SESSION

1419

1    LAWYER FOR MATTEL.

2           YOU ARE A LAWYER WHO HAS REPRESENTED MGA IN THE PAST;

3    IS THAT CORRECT?

4    A    TRUE.

5    Q    AND YOU'RE HERE TO TESTIFY TODAY BECAUSE MATTEL SENT YOU A          09:13

6    SUBPOENA?

7    A    YES.

8    Q    AND YOU STARTED PRACTICING LAW BACK IN 1980?

9    A    YES.

10   Q    AND YOUR AREA OF LEGAL PRACTICE IS TRADEMARK LAW; IS THAT          09:13

11   CORRECT?

12   A    YES.

13   Q    YOU'VE BEEN A TRADEMARK LAWYER FOR ABOUT 25 YEARS OR SO

14   NOW?

15   A    YES.                                                               09:14

16   Q    IF YOU COULD GIVE US YOUR EDUCATIONAL BACKGROUND.

17   A    I HAVE A BA IN SPANISH; I HAVE AN MA IN COMPARATIVE

18   LITERATURE; AND I HAVE A JD IN LAW.

19   Q    AND WHAT YEAR DID YOU GET YOUR LAW DEGREE?

20   A    1980.                                                              09:14

21   Q    AND THAT'S WHEN YOU BEGAN PRACTICING LAW?

22   A    YES.

23   Q    IF YOU COULD TELL US BRIEFLY YOUR EMPLOYMENT HISTORY AS A

24   TRADEMARK LAWYER.

25   A    I BEGAN AT THE UNITED STATES PATENT AND TRADEMARK OFFICE          09:14

EXHIBIT ___ O

1420

1  IN WASHINGTON, D.C., AS A TRADEMARK EXAMINING ATTORNEY.  I THEN

2  WORKED AT STEVEN BERRY IN SEATTLE, WASHINGTON.  I THEN WORKED

3  AT KNOBBE, MARTENS, OLSEN & BEAR IN NEWPORT BEACH, CALIFORNIA.

4  I THEN WORKED AT BODY GLOVE, AMERICAN MARKETING WORKS.  I THEN

5  WORKED AT RUSS, AUGUST, KABAT & KENT.  AND I'M PRESENTLY AT

6  MITCHELL, SILBERBERG & KNUPP.

7  Q    DURING THIS TIME PERIOD, THESE VARIOUS POSITIONS, YOU

8  PRACTICED TRADEMARK LAW?

9  A    YES.

10  Q    IF YOU COULD PLEASE TELL US A LITTLE BIT ABOUT WHAT YOU

11  DID WHEN YOU WERE AN EXAMINING ATTORNEY THERE AT THE U.S.

12  TRADEMARK OFFICE.

13  A    I LOOKED OVER PEOPLE'S APPLICATIONS FOR TRADEMARKS AND

14  DECIDED IF THEY MET THE STATUTORY CRITERIA TO RECEIVE A

15  TRADEMARK.

16  Q    SO YOU'VE BEEN WORKING ON OR PREPARING TRADEMARK

17  APPLICATIONS FOR OVER 25 YEARS NOW?

18  A    YES.

19  Q    AND IF YOU COULD TELL US A LITTLE BIT ABOUT WHAT A

20  TRADEMARK APPLICATION IS.

21  A    A TRADEMARK CAN BE A WORD OR A DESIGN OR A COMBINATION OF

22  BOTH, AND A PERSON USES IT AS A SOURCE INDICATOR.  THAT'S THE

23  PURPOSE OF A TRADEMARK.

24  Q    AND IN SOME CIRCUMSTANCES, PEOPLE FILE APPLICATIONS WITH

25  THE FEDERAL GOVERNMENT, THE TRADEMARK OFFICE, IN ORDER TO GET

09:14

09:15

09:15

09:15

09:15

09:15

EXHIBIT _____ O

1514

1    MR. ZELLER:  LEADING; ARGUMENTATIVE; LACKS

2    FOUNDATION.

3    THE COURT:  SUSTAINED ON FOUNDATION, COUNSEL.

4    BY MR. NOLAN:

5    Q    AS YOU SIT HERE, DO YOU HAVE ANY PERSONAL KNOWLEDGE AS TO      12:08

6    WHEN THE BRATZ DOLLS WERE FIRST INTRODUCED INTO COMMERCE?

7    A    NO.

8    MR. NOLAN:  NOTHING FURTHER.  THANK YOU.

9    MR. ZELLER:  NOTHING, YOUR HONOR.  THANK YOU.

10   THE COURT:  YOU'RE EXCUSED, MA'AM.      12:08

11   WE'RE GOING TO TAKE OUR LUNCH BREAK AT THIS TIME.

12   I'M GOING TO EXCUSE THE JURY.  I'LL SEE THE JURY BACK

13   HERE AT 1:30.

14   (CONCLUSION OF MORNING SESSION.)

15

16

17

18                   CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
23

24   _____        6-5-08
     THERESA A. LANZA, CSR, RPR                 DATE
25   FEDERAL OFFICIAL COURT REPORTER

                                        EXHIBIT _____ 0

                                        PAGE  168

THURSDAY, JUNE 5, 2008              TRIAL DAY 8, MORNING SESSION

# EXHIBIT P

4022

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                              ---

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              ---

6    MATTEL, INC.,                 :   PAGES 4022- 4201
                                   :
7              PLAINTIFF,          :
                                   :
8        VS.                       :   NO. ED CV04-09049-SGL
                                   :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,      :   CV04-9059 & CV05-2727]
     ET AL.,                       :
10                                 :
               DEFENDANTS.         :
11   _____:

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                   RIVERSIDE, CALIFORNIA

17                WEDNESDAY, JULY 2, 2008

18                 JURY TRIAL - DAY 19

19                  AFTERNOON SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23                          UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24                          255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

**CERTIFIED COPY**

EXHIBIT _____ P

PAGE _____ 169

4102

1          MR. ZELLER:  That were not produced in discovery in

2  the case.

3          THE COURT:  And I've overruled the objections.

4          MR. ZELLER:  And these were identified previously

5  as trial exhibits.  What we were trying to do as a courtesy

6  that's being turned against us, I think under those

7  circumstances is particularly unfair, but those documents

8  that are part of this binder have been trial exhibits for

9  some period of time.  They were produced in discovery and

10  were MGA documents.

11          THE COURT:  It's her turn.

12          MR. QUINN:  I was just trying to be helpful.  I

13  thought I could say something.  Every once in a while --

14          MS. AGUIAR:  If I want to say something helpful,

15  why don't you go ahead.

16          MR. QUINN:  I'm confident there will be no

17  surprises, this will be really short, and you'll see this was

18  a waste of trees to put this binder together.  And if it's

19  not, I'll buy you dinner.

20          MS. AGUIAR:  I'm not trying to misrepresent

21  anything.  So that's why I brought the e-mail chain.  I just

22  try to prepare the witnesses so that when they get up, that

23  they will be able to testify.  The reason I asked for these

24  is that this witness would be able to testify and not say

25  well, I'm --

EXHIBIT ___P___

PAGE ___170___

4103

```
 1              THE COURT:  Why don't we trust Mr. Quinn's
 2    representation.  I do see your list here.  I also understand
 3    that -- I mean, I have overruled a number of objections to
 4    apparently exhibits that have come up at the last minute.
 5              MS. AGUIAR:  Absolutely, and I'm not complaining
 6    that these exhibits have not been produced.  I'm just saying
 7    we're trying to prepare witnesses for, you know --
 8              THE COURT:  I appreciate that.  And if this becomes
 9    an issue during -- I'll accept Mr. Quinn's representation.
10    If this becomes an issue, we'll revisit this.
11              (CONCLUSION OF SIDEBAR CONFERENCE.)
12              THE COURT:  I see we have six exhibits in the
13    binder.  Is that correct?
14              MR. QUINN:  I don't have the same binder.
15              THE COURT:  Very well.  Let's proceed.
16                        DIRECT EXAMINATION
17    BY MR. QUINN:
18    Q.    Good afternoon, Mr. Kamarck.
19    A.    Good afternoon.
20    Q.    My name is John Quinn.  I represent Mattel.  We just had
21    a lady on the stand, Daphne Gronich, who was a general
22    counsel at one point of MGA, and you were a general counsel
23    of MGA at one point, as I understand it; is that correct?
24    A.    That's correct.
25    Q.    And Ms. Gronich was after you, or you were before her?
```

EXHIBIT ___ P

PAGE ___ 171

4104

1    A.    Yeah, I mean there was an overlap, but yes.

2    Q.    Okay.  And when you were general counsel, you were the

3    top legal officer in house at MGA?

4    A.    When I was general counsel, I was top legal officer.

5    Q.    And you were in charge, when you were general counsel,

6    of MGA's legal affairs?

7    A.    When I was general counsel.

8    Q.    And one of the kinds of legal affairs that MGA had was

9    various kinds of litigation relating to intellectual

10   property, knockoffs, piracy, things like that?

11   A.    Correct.

12   Q.    Including litigation over in Hong Kong?

13   A.    Correct.

14   Q.    That you had some oversight responsibility for?

15   A.    Um, when I was general counsel.

16         MR. QUINN:  At this point, your Honor, I would like

17   to read from a Request for Admission.  It's a Request for

18   Admission 79.  And it's been marked as Exhibit 10277.  And

19   the particular request for admission No. 79 appears on

20   10277-101.

21         THE WITNESS:  May I look at it, or do you want me

22   to wait?

23         MR. QUINN:  Of course.

24         THE COURT:  Any objection?

25         MS. AGUIAR:  No objection, your Honor.

EXHIBIT ____P____

PAGE ____172____

4201

1

2

3

4

5

6                    **C E R T I F I C A T E**

7

8

9           I hereby certify that pursuant to Title 28,

10   Section 753 United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings in the above matter.

13           Certified on July 2, 2008.

14

15

16           **MARK SCHWEITZER, CSR, RPR, CRR**
             Official Court Reporter
17           License No. 10514

18

19

20

21

22

23

24

25

EXHIBIT ____P____

PAGE ____173____

# EXHIBIT Q

4022

1           UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4    **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                    ---

6   MATTEL, INC.,                :   PAGES 4022- 4201
                                 :
7           PLAINTIFF,           :
                                 :
8       VS.                      :   NO. ED CV04-09049-SGL
                                 :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,     :   CV04-9059 & CV05-2727]
    ET AL.,                      :
10                               :
            DEFENDANTS.          :
11   _____:

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            WEDNESDAY, JULY 2, 2008

18              JURY TRIAL - DAY 19

19              AFTERNOON SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23                          UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24                          255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

CERTIFIED
COPY

EXHIBIT _____ 6

PAGE _____ 174

4078

1          THE COURT:  And there was no objection; correct?

2          MR. NOLAN:  No objection.

3          THE COURT:  Very well.  It was received.

4          Nothing further, Mr. Nolan?

5          MR. NOLAN:  Nothing further.

6          THE COURT:  Mr. Eckert, you are excused.  And now

7    you may sit in the court.

8          THE WITNESS: I'll look forward to it, but I don't

9    have to sit here?

10          THE COURT:  No.  That seat is going to be occupied.

11          Mr. Nolan, your next witness.

12          MS. AGUIAR:  We're flip-flopping again.  We're back

13   into Mattel's case because there were witnesses that weren't

14   available last week.  So we've agreed to let them take them

15   out of order.  So another one of the witnesses they would

16   like to call is Daphne Gronich.

17          THE COURT:  Very well.  Thank you, Counsel.

18          Mr. Quinn, if you'd call your witness for the

19   record.

20          MR. QUINN:  Yes.  Mattel calls Daphne Gronich.  And

21   if I may approach the witness stand to put some documents up

22   here, your Honor.

23          THE COURT:  Very well.

24          THE CLERK:  Please raise your right hand.

25                    **DAPHNE GRONICH, SWORN.**

EXHIBIT _____ **Q**

PAGE _____ **175**

4079

1          THE CLERK:  Thank you.  Please be seated.  Please

2    state your full name for the record and spell the last name.

3          THE WITNESS:  Daphne Gronich, G-R-O-N-I-C-H.

4          THE CLERK:  Thank you.

5                    **DIRECT EXAMINATION**

6    BY MR. QUINN:

7    **Q.**   Good afternoon, Ms. Gronich.  My name is John Quinn.  I

8    represent Mattel.  Did I say your name right, "Gronich"?

9    **A.**   No, it's "Gronich."

10   **Q.**   Thank you.  You were previously employed by MGA?

11   **A.**   Yes, I was.

12   **Q.**   Was your position general counsel, as I understand it?

13   **A.**   That is correct.

14   **Q.**   That means you were the top lawyer in house at MGA?

15   **A.**   That is correct.

16   **Q.**   And during what period of time were you the general

17   counsel of MGA?

18   **A.**   From December of 2003 through November of 2007.

19   **Q.**   So that would be roughly three years, four years

20   approximately?

21   **A.**   Yes.

22   **Q.**   Okay.  There's a couple -- this is going to be real

23   quick.  There's just a couple of documents that we've put in

24   front of you there.  And I'll first ask you to take a look at

25   the document that's marked Exhibit 1932.

EXHIBIT ____ 8

PAGE ____ 176

4080

1        Do you see that?

2   A.   Yes.

3   Q.   In the lower right-hand corner.

4        And do you recognize this -- you see the Bates

5   number there at the bottom.  It says MGA, and then there's a

6   number?

7   A.   Yes.

8   Q.   All right.  And you recognize this as a document that

9   was prepared at MGA and produced by MGA during this case.

10  A.   It appears to have been produced by MGA.  And I don't

11  know that I recognize this specific document, but I have seen

12  it.

13  Q.   You know that that is something that was created at MGA?

14  A.   I believe that it was, yes.

15          MR. QUINN:  Your Honor, we offer Exhibit 1932.

16          THE COURT:  Any objection?

17          MR. ROTH:  No objection.

18          THE COURT:  It's admitted.

19          **(Exhibit 1932 received.)**

20          MR. QUINN:  Permission to publish.

21          THE COURT:  You may.

22  Q.   BY MR. QUINN:  If we do look at the first page of 1932.

23  This is actually a multi-page document with several columns

24  on it; correct?

25  A.   Not all the columns appear on the same pages, but yes,

4201

1

2

3

4

5

6                          **C E R T I F I C A T E**

7

8

9          I hereby certify that pursuant to Title 28,

10   Section 753 United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings in the above matter.

13          Certified on July 2, 2008.

14

15

16   **MARK SCHWEITZER, CSR, RPR, CRR**
     Official Court Reporter
17   License No. 10514

18

19

20

21

22

23

24

25

EXHIBIT _____ Q

PAGE _____ 178

# EXHIBIT R

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:    (415) 774-2611
Facsimile:    (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN GLASER FINK JACOBS WEIL & SHAPIRO LLP** |

## I. INTRODUCTION

On February 29, 2008, Mattel, Inc. ("Mattel") submitted a Motion to Compel Deposition and Production of Documents of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro ("Christensen Glaser"). Specifically, Mattel seeks an order compelling Christensen Glaser to appear for

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT ___B___

PAGE ___179___

1  deposition on Topic Nos. 1-3, 5, and 7-13 and to produce documents responsive to Request for

2  Production Nos. 1-6, 8, and 10-22 pursuant to a subpoena served January 18, 2008. On March 21,

3  2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

4  Mexico S.R.L. de C.V. (collectively "MGA") and Christensen Glaser submitted separate

5  oppositions. On March 28, 2008, the parties submitted a joint report in which they advised the

6  court that despite further meet and confer efforts, the parties were unable to resolve or narrow the

7  instant motion. On March 31, 2008, Mattel submitted a reply. Pursuant to Paragraph 5 of the

8  Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it

9  appropriate to take the motion under submission for decision without oral argument.

10                                    II. BACKGROUND

11        Christensen Glaser has served as legal counsel to MGA and Isaac Larian in connection

12  with this action and a variety of other matters since 1999. Gizer Decl.¶2. Christensen Glaser was

13  trial counsel of record for MGA and Isaac Larian in this very action from the filing of the case in

14  April 2004 until October 2007. Id. Although Christensen Glaser is no longer trial counsel of

15  record, the firm continues to provide legal advice to MGA and Isaac Larian in connection with

16  this action and still represents them in other matters. Id. Christensen Glaser also represents

17  Farhad Larian in connection with this action. Christensen Glaser Opposition at p. 1.

18        On January 7, 2008, the district court granted Mattel leave to take Christensen Glaser's

19  deposition, along with approximately forty-five other individuals and entities. The district court

20  held that Mattel had "shown good cause to grant additional discovery given the complexity of the

21  case, the number of parties, recent developments related to the substitution of counsel, the

22  concerns regarding retention and spoliation of evidence, and the delay in receiving discovery

23  caused by numerous discovery disputes and a Court imposed stay requested by MGA upon

24  substitution of counsel." Albán Decl., Ex. 12.

25        Mattel served a subpoena on Christensen Glaser on January 18, 2008. The subpoena

26  contains twenty-two document requests and seeks, *inter alia*, information related to the Carter

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                        2

EXHIBIT ___R___

PAGE ___180___

1  Bryant-MGA Agreement, the origination of Bratz, MGA's document preservation efforts, fee and

2  indemnity agreements entered into by MGA, and the documents that Farhad Larian's former

3  counsel showed to Mattel.  The subpoena contains fourteen deposition topics on the same subject

4  matters as the document requests.  On January 28, 2008, Christensen Glaser served objections to

5  Mattel's subpoena.

6          On January 28, 2008, Mattel filed an *ex parte* application with the district court requesting

7  leave to take third party depositions, including Christensen Glaser's deposition, after the discovery

8  cut-off.  During the hearing conducted on February 4, 2008, Christensen Glaser requested that the

9  Court clarify that the January 7, 2008 Order granted Mattel leave to depose Christensen Glaser on

10  only one issue.  The district court responded as follows:

11          That is not the case, and the request is DENIED.  Mattel has been granted relief
          from the numerical limitations that previously restricted its ability to depose those
12          individuals and entities addressed by the Court's January 7, 2008, Order,
          including its ability to depose Christensen, Glaser.  Unless otherwise restricted by
13          the Discovery Master upon proper presentation of the issue to him, Mattel may
          depose Christensen, Glaser on any relevant, non-privileged matter.

14

15  March Decl., Ex. A.

16          Mattel contends that the deposition topics and document requests in the subpoena are all

17  relevant to central issues in the case.  Mattel's motion, however, focuses on three general issues,

18  without reference to specific topics or document requests.  First, Victoria O'Connor testified that

19  Isaac Larian ("Larian") instructed her to redact a Mattel facsimile identifier on the Bratz

20  agreement between MGA and Bryant (the "Agreement") and to send the Agreement to Patricia

21  Glaser of Christensen Glaser.  Ms. O'Connor testified that she followed Larian's instructions and

22  sent the Agreement.  Larian denies ever giving that instruction to Ms. O'Connor.  Mattel seeks

23  documents and deposition testimony to explore Christensen Glaser's receipt of that Agreement,

24  which Mattel contends is relevant to show spoliation of evidence.

25          Second, Mattel seeks information about Farhad Larian, whom Christensen Glaser

26  represents in this action.  According to Mattel, Farhad Larian admitted in late November 2005,

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    3

EXHIBIT _____ ħ_____

PAGE _____ 181_____

1   while he was on MGA's payroll as a consultant and while Christensen Glaser represented MGA,

2   he destroyed evidence directly relevant to this action with the express intent of keeping such

3   evidence from Mattel.

4         Further, Mattel emphasizes that Christensen Glaser threatened to disqualify Mattel's

5   counsel based on counsel's purportedly improper and unethical contact with Farhad Larian and his

6   counsel in connection with Mattel's review of documents in Farhad Larian's possession in the fall

7   of 2005.  Farhad Larian destroyed most of the documents Mattel reviewed.  Mattel contends that

8   information in Christensen Glaser's possession is relevant to Bratz, Farhad Larian's alleged

9   spoliation of evidence, and Mattel's defense to Christensen Glaser's disqualification threat.

10         Third, Mattel seeks information from Christensen Glaser about payments from MGA to

11   Bryant and other witnesses in this action.  Mattel contends that evidence of payments is relevant

12   to bias and credibility of the witnesses.

13         Christensen Glaser contends that Mattel's subpoena does not satisfy the elements set forth

14   in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), which limits the depositions

15   of opposing counsel.  Rather, Christensen Glaser contends that all of the documents and

16   information requested by the subpoena are either privileged or available from another source, and

17   are not crucial to Mattel's preparation of its case.

18         MGA also opposes Mattel's motion, contending that the subpoena is overly broad, invades

19   privileged matters, unnecessarily disrupts the adversarial process, and unreasonably burdens and

20   harasses MGA and its counsel.  Moreover, MGA contends that Mattel fails to make the required

21   showing that there is no other means by which Mattel can obtain the information it seeks, or that

22   the information it seeks is crucial (or even necessary) to its case, as required under Shelton, supra.

23   MGA also contends that the information sought is duplicative and cumulative in view of prior

24   discovery Mattel has already sought and received in this case.

25   //

26   //

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                                     4

EXHIBIT _____ h

PAGE _____ 182

### III. STANDARDS

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).  All discovery, however, is subject to the limitations imposed by Rule 26(b)(2)(C), Fed.R.Civ.P., which provides that the court must limit the frequency or extent of discovery otherwise allowed by the Federal Rules of Civil Procedure or by local rule if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Fed.R.Civ.P. 30(a) provides that depositions may be taken of "any person."  There is no express prohibition against deposing opposing counsel.  See Shelton, 805 F.2d at 1327.  Courts, however, have cautioned that depositions of opposing counsel should be allowed only in limited circumstances.  In Shelton, the Eighth Circuit Court of Appeals explained the judicial attitude toward such depositions as follows:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition.  But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, see e.g., Fireman's Fund Ins. Co. v. Superior Court, 72 Cal.App.3d 786, 140 Cal. Rptr. 677 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

Shelton, 805 F.2d at 1327.[1]

---

[1]  In its reply, Mattel contends that Shelton is not the law of this circuit, and asserts that this court should instead follow the Second Circuit's reasoning in In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003). In Friedman, the court held that the following factors should be considered when deciding whether the deposition of a lawyer should take place:

(continued...)

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___R___

PAGE ___183___

# IV. DISCUSSION

## A. Information re Carter Bryant's Agreement with MGA

The information Mattel seeks regarding the Agreement between MGA and Bryant is relevant, and indeed crucial, to the claims and defenses in the case. The Agreement is at the heart of this case and is the very document by which Bryant purportedly assigned Bratz to MGA. The date and circumstances under which the Agreement was transmitted to Christensen Glaser are relevant because they might disclose whether or not (a) Bryant and MGA finalized the Agreement while Bryant still worked for Mattel and (b) MGA believed in good faith that Bryant had the rights to Bratz – an affirmative defense MGA has raised.

Further, the information Mattel seeks is relevant and crucial to Mattel's counterclaims, which include a RICO claim that is predicated, in part, upon an allegation that defendants altered Bryant's Agreement to conceal evidence that Bryant faxed the Agreement from the Barbie Collectibles department of Mattel, using a fax machine owned by Mattel and while Bryant was employed by Mattel. The information Mattel seeks is also relevant and crucial to Mattel's spoliation claim against MGA.[2]

---

(...continued)
the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.... Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

*Friedman*, 350 F.3d at 72; *see also* *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007) (finding Second Circuit's reasoning in *Friedman* to be more persuasive than *Shelton*).

The Ninth Circuit has not adopted *Shelton*, *supra*. However, *Shelton* is generally regarded as the leading case on deposing opposing counsel. In any event, Rule 26(b)(2)(C), Fed.R.Civ.P., ultimately dictates the appropriate limits of discovery.

[2] Arguably, Ms. O'Connor redacted the Agreement at a time when MGA was not under any duty to preserve evidence. Whether Mattel will ultimately prevail on its spoliation claim, however, is not the test for determining whether information is discoverable under Rule 26, Fed.R.Civ.P.

EXHIBIT _____ Ŗ
PAGE _____ 184

1    Ms. O'Connor and Larian testified that Christensen Glaser received a version of the

2    Agreement.  Only Christensen Glaser can verify the condition of the Agreement Ms. O'Connor

3    faxed to its office.  Furthermore, MGA has failed to establish that the Agreement Ms. O'Connor

4    faxed to Christensen Glaser is privileged.  There is no evidence that the Agreement itself – as

5    compared to any communication that might have accompanied the Agreement – is privileged.

6    MGA next contends that "merely disclosing the timing and other circumstances

7    surrounding MGA's transmittal of that contract to Christensen Glaser would divulge details about

8    a request by MGA for legal advice from its counsel, and would likely reveal legal strategies

9    surrounding one or more legal matters."  MGA's Opposition at p.13.  Mattel, however, represents

10   that it is not seeking privileged information from Christensen Glaser, but rather non-privileged

11   information regarding the date, time and manner of the Agreement's transmission, as well as the

12   form in which the Agreement was transmitted.  In view of Mattel's representation regarding the

13   limited nature of its inquiry, MGA's concerns regarding potential privileged information are

14   unfounded, and in any event, premature until Mattel poses a specific question to Christensen

15   Glaser that calls for the disclosure of privileged information.  If and when that occurs, MGA's

16   claims of privilege can be addressed on a question-by-question basis.

17   Therefore, Mattel's motion is granted to the extent Mattel seeks production of the

18   Agreement Ms. O'Connor faxed to Christensen Glaser.  Mattel's motion is also granted to the

19   extent Mattel seeks testimony regarding the date, time and manner of the Agreement's

20   transmission and the condition of the Agreement when it arrived at Christensen Glaser's office.

21   The information Mattel seeks is relevant and crucial to both Phase 1 and Phase 2 issues, and

22   accordingly Christensen Glaser's deposition should proceed without delay.

23   To the extent Mattel's subpoena seeks documents and testimony beyond the Agreement

24   itself and the date, time and manner of the Agreement's transmission and the condition of the

25   Agreement when it arrived at Christensen Glaser's office, Mattel's subpoena exceeds the bounds

26   of relevant discovery under Rule 26(b)(1), Fed.R.Civ.P., and intrudes, without justification, upon

27

28

EXHIBIT _____ _R_

PAGE _____ 185

1  MGA's attorney-client relationship and privileged communications with Christensen Glaser,

2  taking into consideration all of the factors in Rule 26(b)(2)(C), Fed.R.Civ.P.  Mattel has had

3  ample opportunity to take discovery regarding Bryant's Agreement with MGA from multiple

4  sources.  Other than the limited discovery of Christensen Glaser permitted by this Order, Mattel

5  has not shown that Christensen Glaser possesses non-privileged information beyond that which it

6  has already sought and obtained.  The requested discovery is also cumulative and unduly

7  burdensome.

8  B. Information re Farhad Larian's Alleged Spoliation and Mattel's Threatened Disqualification

9          The information Mattel seeks regarding Farhad Larian's alleged destruction of evidence is

10  relevant and crucial to Mattel's allegations of spoliation.  Farhad Larian has testified that he

11  destroyed documents and information related to Bratz with the express intent of keeping them

12  from Mattel.  The documents Farhad Larian destroyed included:  (1) MGA Bratz-related emails

13  from the 2000 and 2001 time period; (2) financial forecasts and shipping spreadsheets that

14  included Bratz; (3) signed and draft declarations of persons knowledgeable about Bratz during the

15  2000 time period; and (4) information from the Larian v. Larian matter.

16          Christensen Glaser was MGA's counsel and was involved in MGA's evidence preservation

17  efforts.  Further, Christensen Glaser has represented Farhad Larian with respect to the instant

18  lawsuit.  Given Christensen Glaser's involvement with MGA's evidence preservation efforts and

19  Christensen Glaser's representation of Farhad Larian, it is reasonable to infer that Christensen

20  Glaser possesses information potentially relevant to Mattel's allegations regarding spoliation of

21  evidence.[3]

22          Furthermore, the information Mattel is seeking about the documents Farhad Larian has

23  admitted he destroyed and regarding the factual bases for MGA's threatened disqualification of

24  Mattel's counsel appear to be uniquely within Christensen Glaser's possession.  Mattel has a list of

25  _____

26      [3] In its opposition papers, Christensen Glaser neither admits nor denies involvement with or knowledge of
    MGA's efforts, if any, to preserve potential evidence in Farhad Larian's possession.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                                    8

EXHIBIT _____ B

PAGE _____ 186

1   the documents it inspected at the offices of Farhad Larian's attorneys in November 2005, but not

2   the documents themselves.  Farhad Larian no longer has the documents, and MGA has not

3   produced copies of those documents to date.

4          MGA and Christensen Glaser have asserted valid concerns regarding the potential

5   intrusion upon privileged information and work product.  These concerns do not automatically

6   insulate Christensen Glaser from Mattel's subpoena, particularly because of the gravity of the

7   spoliation allegations and the lack of alternative sources for the documents Farhad Larian has

8   admitted he destroyed.  Further, the privilege issues cannot be addressed in a vacuum but must

9   await the outcome of Christensen Glaser's document production and deposition.

10         However, to the extent Mattel's subpoena seeks documents and testimony beyond

11  document preservation efforts relating to Farhad Larian and Mattel's threatened disqualification,

12  the subpoena exceeds the bounds of relevant discovery under Rule 26(b)(1), Fed.R.Civ.P., and

13  intrudes, without justification, upon MGA's attorney-client relationship with Christensen Glaser

14  and privileged communications, taking into consideration all of the factors in Rule 26(b)(2)(C),

15  Fed.R.Civ.P.

16  C. Payments to Witnesses

17         Lastly, Mattel seeks information regarding payments made to witnesses to this lawsuit.

18  The information sought is clearly relevant to credibility and bias, but not crucial to Mattel's

19  preparation of its case.  Furthermore, Mattel has had ample opportunity to pursue such discovery,

20  and indeed has obtained such discovery from many other sources.  The requested information is

21  also duplicative and cumulative of other discovery Mattel has sought and received, and unduly

22  burdensome, taking into consideration all of the factors set forth in Rule 26(b)(2)(C)(iii),

23  Fed.R.Civ.P.

24                          V. CONCLUSION

25         For the reasons set forth above, Mattel's motion to compel the deposition of Christensen

26  Glaser and for documents is granted in part and denied in part as follows:

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT _____ B

PAGE _____ 187

1.    No later than May 15, 2008, Christensen Glaser shall produce all non-privileged documents that are responsive to the following requests: Nos. 1 (limited to the Agreement that Ms. O'Connor testified she sent to Christensen Glaser), 17, 21(limited to documents sought by or the subject of Request Nos. 1(as limited above) and 17) and 22 (limited to documents sought by or the subject of Request No. 17).  Documents withheld on the basis of privilege must be identified on a privilege log, which shall be produced to Mattel no later than May 15, 2008.

2.    Christensen Glaser shall appear for deposition and testify regarding Topic Nos. 8 and 13. Topic No. 13 is limited to the Agreement Ms. O'Connor testified she sent to Christensen Glaser, the date, time and manner of the Agreement's transmission, and the condition of the Agreement when it arrived at Christensen Glaser's office.  The deposition shall proceed at a place and time mutually convenient to all parties and witness(es), and shall be completed no later than May 20, 2008.

3.    All claims of privilege are preserved.  Nothing in this Order is intended to authorize or preclude any party from asserting claims of privilege with respect to specific documents and/or deposition questions, if appropriate.

4.    Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., Mattel's motion is denied with respect to all topics and document requests set forth in the subpoena that are not specifically identified in paragraphs 1 and 2 above.

5.    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 1, 2008

_____/S/_____

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT _____ R

PAGE _____ 188

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 1, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PARTMATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN GLASER FINK JACOBS WEIL & SHAPIRO LLP in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Patricia L. Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgenthaler@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 1, 2008, at San Francisco, California.

_____
Anthony Sales

EXHIBIT ___R___

PAGE ___189___

# EXHIBIT S

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER