QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**MATTEL'S *EX PARTE* APPLICATION FOR AN ORDER THAT MATTEL NEED NOT RESPOND TO MGA'S IMPROPER REQUEST TO SHIFT THE COSTS OF THE TEMPORARY RECEIVER**<br><br>[Declaration of Scott L. Watson and Proposed Order filed concurrently]<br><br>Hearing Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 1<br><br>Discovery Cut-off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Pursuant to Local Rule 7-19, Mattel, Inc. ("Mattel") respectfully submits this *Ex Parte* Application for an order relieving Mattel of the burden of responding to the MGA Parties' June 26, 2009 Opposition to the Temporary Receiver's *Ex Parte* Motion on the merits or, in the alternative, for the establishment of an orderly briefing schedule on these matters.

Mattel makes this Application on the grounds that the Court previously ruled that MGA would initially bear the costs of the Temporary Receiver, reserving determinations regarding cost-shifting issues for a later date. MGA's purported Opposition ignores the Court's timing instructions and the well-settled Rules requiring that its request be made by noticed motion. As the Court has instructed, any final determinations on cost-shifting are "premature" and therefore Mattel should be relieved of responding at this time to the cost-shifting arguments improperly advanced in MGA's purported Opposition. In the alternative, should the Court determine that this issue is ripe for decision now, Mattel requests that the Court establish an orderly briefing schedule so the parties may present their positions on all of the Court's appointments in the manner contemplated by the Federal Rules and so that Mattel can bring its own motions for fee-shifting against the MGA parties. Moreover, Mattel requests that the purportedly privileged communication MGA submitted for *in camera* consideration either be ordered produced or else not considered by the Court.

Pursuant to Local Rule 7-19, on July 1, 2009, Mattel gave notice of this *Ex Parte* Application to counsel for the MGA parties, Joel Klevens, Glaser, Weil, Fink, Jacobs & Shapiro, LLP, 10250 Constellation Blvd., 19th Floor, Los Angeles, CA 90067 (Tel.: 310-556-7832), Russell J. Frackman, Mitchell Silberberg & Knupp, LLP, 11377 W. Olympic Blvd., Los Angeles, CA 90064 (Tel.: 310-312-3119), and Jason Russell, Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071 (Tel.: 213-687-5000). The MGA parties have informed Mattel

1 that they intend to oppose this *Ex Parte* Application.  <u>See</u> Declaration of Scott L.
2 Watson ("Watson Decl.") ¶ 2.
3       This Application is based on this Notice of Application and the
4 accompanying Memorandum of Points and Authorities, the concurrently filed
5 Declaration of Scott L. Watson, the pleadings and other papers on file in this action,
6 and all other matters of which the Court may take judicial notice.

8 DATED: July 1, 2009       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

      By <u>/s/ Michael T. Zeller</u>
        Michael T. Zeller
        Attorneys for Mattel, Inc.

**Preliminary Statement**

MGA's opposition to the Temporary Receiver's *ex parte* application improperly asks the Court to shift over $1 million in costs to Mattel. Barely a month ago, this Court ruled that MGA should bear these costs, and that any claim that they should be shifted to Mattel would be addressed at a later date in the litigation "after the dust settles." MGA's lead trial counsel expressly acknowledged that MGA would bear the receiver's costs subject to a further order "down the line." Now—*in an opposition brief to an ex parte not even made by Mattel and without any noticed motion or discussion with counsel*—MGA effectively seeks reconsideration of that ruling. Nothing material has changed since the Court's directive on May 18, 2009. The dust has certainly not settled. The Court should reject MGA's efforts to raise this issue now, and especially in its procedurally improper fashion.

On the other hand, if the Court is inclined to consider cost-shifting requests now, Mattel respectfully submits that an orderly briefing schedule be set for <u>all</u> parties to bring such motions. Mattel has been bearing the costs of the Forensic Auditor and the Monitor. Fairness and logic dictate that the Court should consider whether those costs should be paid by the MGA parties if MGA's cost-shifting motion is to be considered at this juncture. Indeed, considering all such motions together is the only way a complete record could be presented to permit the Court to consider all of the equities involved.

**Background**

During the hearing on May 18, this Court ruled that MGA should, in the first instance, bear the costs relating to the Temporary Receiver,[1] as Mattel has borne

---

[1] See May 18, 2009 Hearing Transcript ("May 18 Hearing Tr.") at 56:2-3, Watson Decl., Ex. 2 ("With respect to the temporary receiver and Mr. Fraioli, I impose those costs on MGA.").

the costs of the Forensic Auditor,[2] with any issues as to cost-shifting or reallocation deferred until, among other things, the relationship between MGA and Omni 808 is clarified.[3] The Court stated:

> I want all the parties to know that when the dust finally settles in this case, and when we have a clear sense of whether or not Mr. Gordinier or Mr. Zeller is right on Omni 808, whoever is right on all of this, the Court will be affording leave to all of the parties to file motions related to potential cost shifting for any of the costs that were incurred as a result of the court appointments, when we can kind of sit back in hindsight and assess the equities of who paid what and when.[4]

The Court's ruling recognized that a final determination on cost-allocation now would be "premature" given that the Court had before it only the "statements" and "representations," but "[did] not know" whether, for example, MGA's or Omni 808's conduct was improper or not.[5] Indeed, when MGA's counsel suggested that costs should be "re-allocated sooner than later,"[6] the Court noted that such a determination was impossible without the "benefit of reflecting on what actually has happened, what actually has played out."[7] At the conclusion of the hearing, MGA's lead counsel

---

[2] See January 7, 2009 Order Appointing Forensic Auditor at 2 ("January 7 Order"), Watson Decl., Ex. 3 ("The expense of the forensic auditor shall be borne, in the first instance, by Mattel.").

[3] See Hearing Tr. at 55:19-56:1 (discussing forensic auditor and stating "the Court has attempted, through making its various court appointments, whether it has been a settlement officer or a discovery master, to split the costs as appropriate"); see also January 7 Order at 2 ("After the Court considers the Auditor's report(s), the Court will consider whether the auditor expenses should be shared with, or shifted completely to, defendants, based on the equities.").

[4] May 18 Hearing Tr. at 56:4-12.

[5] May 18 Hearing Tr. at 80:18-22; see also May 18 Hearing Tr. at 56:16-19 ("But at the end of the day, the Court will certainly afford leave to revisit those decisions and ensure that equity governs an appropriate allocation of those resources").

[6] May 18 Hearing Tr. at 80:6.

[7] May 18 Hearing Tr. at 80:16-17.

acknowledged that MGA would bear the costs of the Temporary Receiver,[8] and the Court reiterated that "at the end of the day, everyone will have the opportunity to revisit the issue of cost sharing."[9]

## Argument

### I. MGA'S PREMATURE REQUEST FOR COST-SHIFTING IS IMPROPER

In the guise of opposing the Temporary Receiver's application, MGA instead seeks to shift the costs to Mattel. This is entirely improper.

First, MGA ignores the Court's clear instructions at the May 18 hearing that a determination on cost-shifting can only be made once "the dust finally settles," when the Court will be in a position to "assess the equities" based on "what actually has happened" rather than allegations.[10] MGA urges that the issue of cost-allocation turns on equitable considerations regarding the necessity, purpose, and benefit of the Temporary Receiver,[11] but ignores the fact that these questions cannot be conclusively answered until, for example, the relationship between Omni 808 and MGA and other factual issues have been fully determined.[12] This relationship is not only the subject of ongoing discovery but goes to the heart of the claims raised in Mattel's TAAC, to be

---

[8] See May 18 Hearing Tr. at 124:7-8 (Ms. Glaser: "Your Honor, one last thing. I understand that we're bearing the costs of Mr. Fraiolo [sic] now until there is a later order down the line.").

[9] May 18 Hearing Tr. at 125:10-12.

[10] May 18 Hearing Tr. at 56:5, 56:12, 80:16-17.

[11] See MGA's Opp. at 8-11 (discussing applicable legal standard). After MGA informed Mattel that it would oppose this application, Mattel requested that MGA agree that Mattel's obligation to substantively respond to the arguments regarding cost-shifting in MGA's Opposition should be delayed until after the Court considers this application. MGA did not respond before this application was filed. See Watson Decl. ¶ 2.

[12] See May 18 Hearing Tr. at 56:4-12 (noting that allocation of costs could only be determined "when we have a clear sense of whether or not Mr. Gordinier or Mr. Zeller is right on Omni 808").

decided by the jury. It would plainly be premature even to try to finally and fully answer these questions now.[13]

The Court's directive contemplates addressing cost-shifting down the road not only because the underlying equities as to the Temporary Receiver are not yet ripe for assessment, but also to allow all the costs incurred as a result of the Court appointments to be considered together, "when we can kind of sit back in hindsight and assess the equities of who paid what and when."[14] While MGA deems it "significant[]" that the Court ordered Mattel to bear the costs of the Monitor,[15] that determination, like the Court's ruling on the costs of the receivership, is also subject to reallocation.[16] That the Court does not have all the facts before it as to the costs of the forensic audit, receivership and monitorship (which has only just begun) only underscores the prematurity of MGA's efforts to reallocate the Temporary Receiver costs.

Moreover, even if these matters were currently ripe for determination, MGA ignores the well-settled procedures for requesting relief. The Federal Rules,[17] the Central District's Local Rules,[18] and this Court's Standing Order[19] all instruct litigants that the proper procedure for requesting a Court order (except in circumstances necessitating *ex parte* relief not presented here) is a regularly noticed motion. MGA's

---

[13] Indeed, MGA and the Omni parties continue with their discovery stonewalling and they have yet to even provide completed information on these matters.
[14] May 18 Hearing Tr. at 56:11-12.
[15] See MGA Opp. at 6.
[16] See May 18 Hearing Tr. at 56:2-12.
[17] See Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").
[18] See L.R. 6-1 ("Unless otherwise provided by rule or order of the Court . . . every motion shall be presented by written notice of motion."); L.R. 7-3 ("counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution").
[19] See Standing Order in Case No. CV 04-9049 SGL (RNBx), dated April 14, 2006, Watson Decl., Ex. 4, at 3 (instructing parties that all motions must comply with the local rules, including L.R. 6-1, 7-2 and 7.3).

motion—styled as an "Opposition"[20]—seeks an order from the Court undoing a prior ruling (and shifting costs) without following any of these applicable procedures, let alone serving a properly noticed motion for reconsideration.  Mattel should be relieved from the burden of substantively responding to this premature, improper motion.  See, e.g., Veliz v. Cintas Corp., 2009 WL 1766691, at *15 (N.D. Cal. June 22, 2009) (declining to consider party's request because "[s]uch a request should have been presented by way of a noticed motion, not as an argument in an opposition brief").

Alternatively, as the Court has recognized, it can fully and fairly consider the equities of cost-shifting only by hearing together all of the motions relating to costs for the Court's appointments.  Mattel has been bearing the cost of both the Forensic Auditor and the Monitor.  Those costs have exceeded the costs that MGA asks be shifted to Mattel, and Mattel expects to seek both awards of costs and attorney's fees against the MGA Parties.[21]  Accordingly, if the Court is inclined to consider MGA's request with respect to the Temporary Receiver despite the Court's prior instructions and despite MGA's violation of the Rules requiring a properly noticed motion, Mattel respectfully submits that an orderly briefing schedule should be set for all parties to bring such cost-shifting motions so they can be considered and decided together.  Not only is that the only way for the Court to have a complete record before it of all the equities involved, but it would be inefficient and unfair to consider only MGA's request at this time while requiring Mattel alone to wait to seek cost-shifting.

---

[20]  Whatever name a movant puts on a pleading, "nomenclature is not controlling . . . . A court must construe whether a motion, however styled, is appropriate for the relief requested." Bordallo v. Reyes, 763 F.2d 1098, 1101-02 (9th Cir. 1985).  Here, MGA's "opposition" *declines* to present any substantive argument as regarding the Temporary Receiver's application (the only appropriate subject for such an opposition) and instead improperly spends the remainder of the "brief address[ing] who should pay the costs of the temporary receiver in the first instance."  (MGA Opp. at 1.)

[21]  The total costs of the forensic audit paid by Mattel to date exceed the Temporary Receiver costs that MGA seeks to shift.  See Watson Decl. ¶ 5.

## II. MGA'S ARGUMENT IMPROPERLY RELIES ON AN ALLEGEDLY PRIVILEGED COMMUNICATION SUBMITTED *IN CAMERA*

MGA's Opposition is also improper because it seeks to use privileged documents as a sword, while invoking the privilege to deny Mattel the right to challenge MGA's arguments based on them. To support its argument that the receivership costs should be borne by Mattel, MGA asks the Court to take into account correspondence between its counsel and the Temporary Receiver submitted to the Court *in camera*, which MGA claims is evidence that actions of the Temporary Receiver were solely for Mattel's benefit rather than MGA's.[22] But MGA cannot rely on purportedly privileged communications to support its argument, while at the same time invoking the privilege to deny Mattel access to such communications.

It is "axiomatic that a party cannot use the attorney-client privilege as a sword and a shield." ICU Medical, Inc. v. Alaris Medical Systems, Inc., 2007 WL 6137003, at *12 (C.D. Cal. Apr. 16, 2007). Where a party affirmatively seeks to offer purportedly privileged communications as evidentiary support, it should not be permitted to shield those documents from review by opposing counsel on grounds of privilege. See id. at *13 (holding that party's *in camera* submission of privileged communications in declarations to oppose a motion resulted in waiver). The parties have, on occasion, submitted documents to the court *in camera* to substantiate claims of privilege; here, by contrast, MGA's submission of documents *in camera* has nothing to do with whether the communication is privileged, but rather is done to affirmatively support its argument that Mattel should bear the costs of the receivership. See S.E.C. v. Lavin, 111 F.3d 921, 933-34 (party's disclosure of privileged material to court did not result in waiver only because the party "**did not seek to shield the conversations from disclosure while at the same time relying on the conversations to address a**

---

[22] See MGA's Opp. at 12; Declaration of John Woolard in Support of MGA's Opp. at ¶ 12; Application to Submit Exhibit A to the 6/26/09 Declaration of John Woolard Under Seal for *In Camera* Review Only at 1.

1 **substantive issue in the [case] and thereby gain a litigation advantage**" but rather
2 "sought only to establish the [existence of the] privilege") (emphasis added).  The Court
3 should order MGA to produce the communications at issue, or it should disregard them.

### Conclusion

For the foregoing reasons, Mattel respectfully submits that it should be relieved of the burden of substantively responding to MGA's improper "opposition." In the alternative, the Court should establish an orderly briefing schedule to decide all of the cost-shifting issues presented by the Court's appointments; in that connection, MGA should be ordered to produce any purportedly privileged communications or other information which it wishes the Court to consider in making these decisions.

DATED:  July 1, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc.