EXHIBIT 1

## Zachary Krug

**From:** Scott Watson
**Sent:** Wednesday, July 01, 2009 1:28 PM
**To:** MGA / Bryant Team
**Subject:** FW: Mattel v. MGA

---

**From:** Joel Klevens [mailto:jklevens@glaserweil.com]
**Sent:** Wednesday, July 01, 2009 12:38 PM
**To:** Scott Watson; 'JRussell@skadden.com'; Caroline Mankey; 'Frackman, Russell'; 'Benson, Patricia'
**Cc:** Michael T Zeller; Dylan Proctor
**Subject:** RE: Mattel v. MGA

Yes. MGA does not believe that Mattel's proposed ex parte has merit.

Joel N. Klevens
Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
T: (310) 553-3000
F: (310) 556-2920
E-mail: jklevens@glaserweil.com

This message and any attached documents may contain information from the law firm of Glaser, Weil, Fink,
Jacobs, Howard & Shapiro, LLP that is confidential and/or privileged. If you are not the intended recipient, you
may not read, copy, distribute or use this information. If you have received this transmission in error, please notify
the sender immediately by reply e-mail and then delete this message.

---

**From:** Scott Watson [mailto:scottwatson@quinnemanuel.com]
**Sent:** Wednesday, July 01, 2009 11:42 AM
**To:** 'JRussell@skadden.com'; Joel Klevens; Caroline Mankey; 'Frackman, Russell'; 'Benson, Patricia'
**Cc:** Michael T Zeller; Dylan Proctor; Scott Watson
**Subject:** Mattel v. MGA

Counsel:

Pursuant to Local Rule 7-19, Mattel will be filing an ex parte application this afternoon asking the Court to relieve
Mattel of any obligation to respond to the MGA parties' argument that the costs of the temproary receiver should
be shifted to Mattel, which the MGA parties made in Opposition to the Temporary Receiver's Ex Parte.  Mattel's
application will be based on the fact that the Court clearly stated at the May 18 hearing that the issue of cost-
shifting was premature and, in any event, an opposition to an ex parte is an improper vehicle to seek such relief.
Please let me know whether the MGA parties intend to oppose Mattel's ex parte.

**Scott Watson**
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3203 Direct

EXHIBIT ___1___
PAGE ___2___

7/1/2009

Page 2 of 2

213.443.3000 Main Office Number
213.443.3100 FAX
scottwatson@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT ___1___
PAGE ___3___

7/1/2009

EXHIBIT 2

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                     EASTERN DIVISION

 4                        -  -  -

 5         HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                        -  -  -

 7   MATTEL, INC.,                 )
                                   )
 8                    Plaintiff,   )
                                   )
 9           vs.                   )   No. CV 04-09049
                                   )
10   MGA ENTERTAINMENT, INC., ET. Al.,  )
                                   )
11                    Defendants.  )   MOTIONS
                                   )
12   AND CONSOLIDATED ACTIONS,     )
     _____)

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 RIVERSIDE, CALIFORNIA

17                MONDAY, MAY 18, 2009

18                    1:52 P.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
              Federal Official Court Reporter
24            3470 12th Street, Rm. 134
              Riverside, California  92501
25            951-274-0844
              www.theresalanza.com
```

EXHIBIT ___2___

PAGE ___4___

```
 1   APPEARANCES:

 2
     On behalf of Mattel, Inc.:
 3
                         QUINN EMANUEL
 4                       By:  JOHN QUINN
                              MICHAEL T. ZELLER
 5                            DYLAN PROCTOR
                              SCOTT B. KIDMAN
 6                       865 S. FIGUEROA STREET,
                         10th Floor
 7                       Los Angeles, California  90017
                         213-624-7707
 8
                         KLEE, TUCHIN, BOGDANOFF & STERN LLP
 9                       BY:  DAVID M. STERN
                         1999 Avenue of the Stars
10                       Thirty-Ninth Floor
                         Los Angeles, CA  90067
11                       310-407-4025

12

13   On Behalf of MGA Entertainment/Isaac Larian:

14                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  THOMAS J. NOLAN
15                            JASON RUSSELL
                              CARL ROTH
16                       300 South Grand Avenue
                         Los Angeles, California  90071-3144
17                       213-687-5000

18                       GLASER, WEIL, FINK, JACOBS
                          HOWARD & SHAPIRO, LLP
19                       BY:  PATRICIA GLASER
                         BY:  JOEL N. KLEVENS
20                       10250 Constellation Blvd.
                         Los Angeles, CA  90067
21                       310-553-3000

22                       MITCHELL SILBERBERG & KNUPP LLP
                         BY:  RUSSELL J. FRACKMAN
23                       11377 West Olympic Blvd.
                         Los Angeles, CA  90064-1683
24                       310-312-2000

25   /  /  /
     /  /  /
```

EXHIBIT __2__

PAGE __5__

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

```
 1   APPEARANCES (cont'd):

 2

     On Behalf of MGA Entertainment/Isaac Larian:
 3
                             PACHULSKI STANG ZIEHL & JONES
 4                           BY:  JAMES I. STANG
                             BY:  RICHARD PACHULSKI
 5                           10100 Santa Monica Blvd.,
                             11th Floor
 6                           Los Angeles, CA  90067-4100
                             310-277-6910
 7

 8   On Behalf of Isaac Larian:

 9                           JEFFER MANGELS BUTLER & MARMARO LLP
                             BY:  JOSEPH A. EISENBERG
10                           1900 Avenue of the Stars
                             7th Floor
11                           Los Angeles, CA  90067-4308
                             310-203-8080
12

13   On Behalf of Defendants Omni 808:

14                           BINGHAM McCUTCHEN LLP
                             BY:  TODD E. GORDINIER
15                           BY:  PETER N. VILLAR
                             600 Anton Boulevard,
16                           18th Floor
                             Costa Mesa, CA  92626-1924
17                           714-830-0622

18
     On Behalf of Crum & Forster:
19
                             MUSICK, PEELER & GARRETT LLP
20                           BY:  JENNIFER M. KOKES
                             One Wilshire Boulevard
21                           Los Angeles, CA  90017
                             213-629-7618
22

23   ALSO PRESENT:           Patrick A. Fraioli, Jr.,
                             Ambassador Pierre Prosper
24                           Robert O'Bryan
                             Michael J. Bidart
25
```

EXHIBIT __2__
PAGE __6__

```
1                           I N D E X

2                                                      PAGE

3   MOTIONS...................................          5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT __2__
PAGE __7__

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

```
 1            Riverside, California; Monday, May 18, 2009; 1:52 P.M.

 2                             -oOo-

 3            THE CLERK:  Calling calendar item number 18,

 4     Case Number CV 04-09049-SGL, Mattel, Inc., v. MGA

 5     Entertainment, Inc., et al.                                01:52

 6            Counsel, please state your appearances for the

 7     record.

 8            MR. QUINN:  John Quinn, Mike Zeller, Dylan Proctor

 9     for Mattel.

10            MS. GLASER:  Patricia Glaser for MGA.              01:52

11            MR. KLEVENS:  Joel Klevens for MGA.

12            MR. FRACKMAN:  Russell Frackman for MGA and

13     Mr. Larian.

14            MR. EISENBERG:  Joseph Eisenberg appearing on behalf

15     of Mr. Larian.                                            01:52

16            MR. NOLAN:  Tom Nolan on behalf of MGA and

17     Isaac Larian.

18            MR. STANG:  James Stang and Richard Pachulski

19     appearing for MGA.

20            MR. GORDINIER:  Todd Gordinier appearing for        01:53

21     Omni 8 Oasis, with my partner Peter Villar.

22            THE COURT:  Good afternoon to you all.

23            We have several matters on calendar this afternoon

24     that the Court wants to get through.

25            The first matter that I'd like to take up is Mattel's  01:53
```

Monday, May 18, 2009          EXHIBIT _____          Mattel vs. MGA, et. Al.
                              PAGE ____8____

```
 1    point, is that if there should be a bankruptcy, just for the
 2    sake of judicial economy, I'm going to require that bankruptcy
 3    take place in the Central District of California.  The last
 4    thing I want to have is have multiple districts involved in
 5    litigating these various matters.  That was implemented to          03:03
 6    preserve a status quo for a very limited period of time.
 7              MR. GORDINIER:  I understand, Your Honor.
 8              We're talking about a lot of different issues, and I
 9    just didn't want it to be lost in the shuffle here.  And God
10    willing, we'll be back here on other issues before and apart       03:03
11    from any bankruptcy filing.
12              THE COURT:  Thank you, Counsel.
13              MR. GORDINIER:  Thank you.
14              THE COURT:  Well, I certainly want to hear from
15    Mattel on all of this.  I'm sure you have a few things to say      03:04
16    about all of this, Mr. Zeller.  I can tell you're ready to
17    talk.  But let me just say a few more things in terms of the
18    Court's tentative thoughts, so that when you do respond -- and
19    I'll certainly give MGA the same chance to respond -- that you
20    have all of this in mind.                                          03:04
21              In addition to the monitor, and in addition to the
22    important issue raised by Mr. Gordinier with respect to the
23    Omni 808 issue, there appears, from the Court's reading of all
24    of the papers in this, to be another white elephant in the
25    room.  And that is Moxie, and the new lines of dolls that          03:04
```

1    Mr. Larian is considering bringing on line, or is in the

2    process of bringing on line.  I'm not sure exactly where that

3    is.

4          I get the impression, or the distinct impression,

5    from Mattel's perspective, that they have a view that these new    03:04

6    lines, which all I have seen was the one black-and-white

7    photograph or copy that was submitted in the papers -- and,

8    like, Omni 808, I'm certainly not expressing any view on this

9    at this point -- I gather, though, that Mattel takes the

10   position that these may or may not be infringing their          03:0

11   copyright, not just in terms of a potential copyright, but in

12   terms of the Court's actual December 3, 2008 order.

13         I describe that as kind of the white elephant in the

14   room, because I certainly can see that as a potential roadblock

15   to any resolution of this matter.  I can see that just as this    03:0

16   big issue looming out there that needs to be addressed at some

17   point in time.  I'd like to see that issue addressed sooner as

18   opposed to later, and that would be all part of this.

19         And the last thing -- and this is going to pick up on

20   something Mr. Gordinier pointed out -- he characterized the      03:0

21   appointment of the forensic auditor as a waste of money.  And I

22   understand from his perspective why he says that.  From other

23   perspectives, that might not be the case.  But in any event,

24   the Court has attempted, through making its various court

25   appointments, whether it has been a settlement officer or a      03:0

EXHIBIT ___2___

PAGE ___10___

Mattel vs. MGA, et. Al.

1    discovery master, to split the costs as appropriate.

2           With respect to the temporary receiver and

3    Mr. Fraioli, I impose those costs on MGA.  As far as the

4    monitor, I will probably impose those costs on Mattel.  I want

5    all of the parties to know that when the dust finally settles          03:06

6    in this case, and we have a clear sense of whether or not

7    Mr. Gordinier or Mr. Zeller is right on Omni 808, whoever is

8    right on all of this, the Court will be affording leave to all

9    of the parties to file motions related to potential cost

10   shifting, for any of the costs that were incurred as a result        03:06

11   of court appointments, when we can kind of sit back in

12   hindsight and assess the equities of who paid what and when.

13          And I mention that now -- obviously, for

14   court-appointed officials, whether it be a temporary receiver

15   or a discovery master, they need to have the certainty, of          03:07

16   course, of where to submit their bills.  But at the end of the

17   day, the Court will certainly afford leave to revisit those

18   decisions and ensure that equity governs an appropriate

19   allocation of those resources.

20          All right.  Those are my thoughts on this general          03:07

21   issue of receivership.  I've heard from Omni 808.  I'd like to

22   hear from Mattel and MGA.

23          So whoever would like to go first.  I think my

24   tentative is probably someplace in the middle between both of

25   you, so I don't think it necessarily favors one side.  So           03:07

Monday, May 18, 2009    EXHIBIT ____2____    Mattel vs. MGA, et. Al.
                        PAGE ____11____

```
 1    whoever wishes to speak first.

 2             Why don't we take a 10-minute break for the court

 3    reporter.

 4             (Brief recess taken.)

 5             THE COURT:  We're back on the record.            03:19

 6             Counsel?

 7             MR. ZELLER:  Thank you, Your Honor.

 8             I guess I see three general issues as to where we are

 9    at the moment.  There at least appears to be general agreement,

10    and I think the evidence supports this amply, that MGA simply   03:22

11    cannot be left to its own devices with respect to Bratz going

12    forward.  This is Mattel's property.  Contrary to what

13    Mr. Gordinier is suggesting, there is, in fact, evidence that

14    Isaac Larian made efforts to incumber the Bratz property after

15    it was determined to be Mattel's.  That is in writing.  That is  03:23

16    in writing with Isaac Larian, in an e-mail, saying in September

17    of 2008.

18             Now, it's certainly gratifying to hear OMNI 808

19    concede that there in fact, is no security interests over Bratz

20    that they have, or, frankly, that anyone could have at this      03:23

21    juncture.  But to suggest that somehow it's no harm, no foul

22    because it wasn't an accomplished, I think misses the mark.  It

23    is documented there was this effort to thwart the Court's

24    rulings, the jury's verdict, and Mattel's rights; and I don't

25    think there can be any reasonable dispute about that, and I      03:23
```

EXHIBIT   2
PAGE   12

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

1      **THE COURT:**  What is MGA's position as to what this

2    Court should do at this point, at this juncture, regarding

3    Moxie?

4          You understand the issue that it's creating for

5    Mattel.                                                          03:55

6          Is there somebody else who will be arguing that?

7      **MR. STANG:**  I'm going to get hooked here in a minute.

8      **THE COURT:**  Very well.

9          Hold on, Mr. Nolan, and let counsel here get through

10   his thoughts, and then we'll take that up.                      03:55

11     **MR. STANG:**  Well, Your Honor, from an operating

12   perspective, the Court shouldn't do anything about Moxie.

13   Isaac Larian should be the one running the company.

14         From the issue of whether it's substantially similar

15   or not, I think I'm about to get hooked, because I'm aware of   03:55

16   its existence; I have read Mattel's papers regarding it.  The

17   company is very concerned that the monitor be really restricted

18   to what was awarded to Mattel in December and not have rights

19   beyond that.

20         I want to make one other comment, and then I'll let      03:56

21   counsel come up.

22         You talked about the allocation of costs and that

23   that should get resolved at some point as to who bears the

24   costs of the receiver beyond what you've already ordered;

25   whether there would be a reallocation of those costs.          03:56

EXHIBIT ___2___
PAGE ___13___

1      The receiver process has probably cost in excess of

2  six to $700,000 to date, based on what amounts have been paid

3  over to a receivership and an administration account.

4      I'm not asking you to rule on anything today, but it

5  may be that we would ask that from the receivership cost

6  perspective, that that be re-allocated sooner than later.

7      It seems like just driving down here, I think there

8  were motions being filed by Blackberry -- my Blackberry nearly

9  died of exhaustion.  It's something like I've rarely seen in my

10  28 years of practice.  So I know we can file whatever we want

11  to file.  That is something of a discreet matter and defined

12  now in terms of its costs -- it may be something we will bring

13  to you on the basis earlier at the end of this litigation.

14      **THE COURT:**  The concern I would have of doing that

15  earlier as opposed to later is that, to me, doing it later, the

16  Court will have the benefit of reflecting on what actually has

17  happened, what actually has played out.  I've received a lot of

18  representations; I've received a lot of statements as to what

19  things are, what things aren't.  But I don't know at this

20  point.  And I would think that would be a better decision.

21      At the same time, I'm not setting a time for that at

22  this point.  I'm just suggesting that, too, might be premature.

23      **MR. STANG:**  Then I'm going to surrender the

24  microphone and let counsel talk about the Moxie issue.

25      **THE COURT:**  Very well.

03:56
03:56
03:57
03:57
03:57

EXHIBIT   2
PAGE   14

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

1          Mr. Nolan?

2          **MR. NOLAN:**  Good afternoon.

3          Part of this will also deal, in responding to certain

4    assertions that Mr. Zeller made, we think without any support,

5    that may touch upon the stay request that's filed.                    03:58

6          **THE COURT:**  That's the last issue I was going to take

7    up.

8          **MR. NOLAN:**  So if the Court wants, I think I can

9    compartmentalize Moxie and deal with it right now.

10         **THE COURT:**  Why don't you deal with Moxie now, and     03:58

11   let me get into the stay issue.  Again, you can hear my

12   thoughts on that, which might make moot, or not, some of that.

13         **MR. NOLAN:**  Okay.

14         Your Honor, I came in here today and I was reminded

15   of the Verizon commercial, where you turn around and you have a     03:58

16   whole group of people supporting you.  Let me make it really

17   clear on the record.  MGA does not want to file bankruptcy.

18   Isaac Larian does not want to file bankruptcy.  Isaac Larian

19   intends to compete against Mattel, day in and day out, for the

20   conceivable future, whether or not it is with Bratz after the      03:59

21   dust settles, as the Court described it earlier, or in a

22   completely different fashion line that does not compete with

23   Bratz and does not infringe upon any copyrights owned by

24   Mattel.

25         I was particularly struck that Mr. Zeller made a            03:59

EXHIBIT    2
PAGE    15

Monday, May 18, 2009                          Mattel vs. MGA, et. Al.

```
 1    the intention of this Court for him to continue in that role.

 2            I think that's all I need to address specifically

 3    right now.  The rest will be set forth in the order that I

 4    issue as soon as I can.

 5            MR. NOLAN:  May I just have one minute?              05:02

 6            THE COURT:  Just one minute, Counsel.

 7            MR. NOLAN:  I understand.

 8            I made a citation to the briefs that I would just ask

 9    the Court to take another look at.  And that is the declaration

10    of Timothy Kilpin, Paragraph 5, where Mr. Kilpin is clearly     05:03

11    saying that Mattel would be prepared to make a special

12    road show of presentations to retailers to highlight the spring

13    2010 Bratz line, if the brand has not already been irrevocably

14    damaged.

15            THE COURT:  You made that reference before.  I do      05:03

16    recall reading that.

17            MR. NOLAN:  But, Your Honor, in the opposition that

18    Mr. Zeller filed and submitted to the Court, he says that the

19    Bratz brand is worth hundreds of millions of dollars.  If

20    Mr. Kilpin makes an unfettered decision that the brand has been  05:03

21    irrevocably harmed and they don't have to produce a spring 2010

22    line, and we happen to win, we get back a box, I guess, and the

23    brand has been destroyed -- and I would ask the Court to look

24    at the Standard Havens case and the Isley v. Craft case, which

25    deal specifically with that type of issue -- the economic harm   05:04
```

EXHIBIT __2__

Monday, May 18, 2009    PAGE __16__    Mattel vs. MGA, et. Al.

```
 1    that would be foisted on all of us, if we were to prevail on
 2    the appeal and Bratz has been killed --
 3         THE COURT:  I understand that MGA does not trust
 4    Mattel with the Bratz line, and I understand that Mattel does
 5    not trust MGA with the Bratz line.  That's well understood by     05:04
 6    the Court.
 7         MS. GLASER:  Your Honor, one last thing.
 8         I understand that we're bearing the costs of
 9    Mr. Fraioli now until there's a later order down the line.
10         THE COURT:  I will address that in the order              05:04
11    tomorrow.
12         MS. GLASER:  In any event, could there be -- you
13    addressing in the order the amount of money -- and I say this
14    respectfully -- that is taken out of MGA without court approval
15    in advance?  There have been -- and, again --                  05:04
16         THE COURT:  I'm not following right now.
17         MS. GLASER:  Mr. Fraioli -- there has been
18    $1.3 million in three weeks out of MGA.  And they may have a
19    great explanation, maybe not; but we would like there to be
20    something in your order monitoring how much money can be taken  05:05
21    out of MGA unless there's a court order.
22         THE COURT:  What the Court has done is instructed --
23    and the practice of Mr. Fraioli has been to submit his very
24    detailed itemization of all bills to the Court prior to taking
25    any money out.                                                  05:05
```

EXHIBIT ___2___
PAGE ___17___

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

1    **MS. GLASER:**  And we haven't had the benefit of that.

2    I think if we're paying -- at least temporarily, we at least

3    ought to see --

4         **THE COURT:**  Part of what will occur at this point is

5    a complete accounting of all money spent during the 20-day          05:05

6    temporary receivership.  You will be receiving that shortly

7    from Mr. Fraioli, which will account for all of the money

8    spent.  And on a going-forward basis, the Court will specify

9    how future payments are to be made.

10        And as I indicated before, at the end of the day,              05:05

11   everyone will have the opportunity to revisit the issue of cost

12   sharing.

13        **MS. GLASER:**  Thank you very much.

14        **THE COURT:**  Is there anything further?

15        **MR. QUINN:**  No, Your Honor.                                05:06

16        **THE COURT:**  Have a good evening.

17        (Court is adjourned.)

18                          CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the Judicial Conference of
     the United States.
23

24   _____          _May 29, 2009_
     THERESA A. LANZA, CSR, RPR                      Date
25   Federal Official Court Reporter

Monday, May 18, 2009     EXHIBIT ___2___    Mattel vs. MGA, et. Al.
                         PAGE ___18___

EXHIBIT 3

Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 21 of 41   Page ID
#:190219
Case 2:04-cv-09049-SGL-RNB      Document 4657      Filed 01/07/2009      Page 1 of 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date: January 7, 2009

Title:       MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

     Jim Holmes                                        None Present
     Courtroom Deputy                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                        None Present

PROCEEDINGS:    **ORDER MODIFYING STAY OF PERMANENT INJUNCTION**

**ORDER APPOINTING FORENSIC AUDITOR**

     After an initial hearing on December 30, 2008, and a sealed hearing on January 5, 2009, and after consideration of the parties' papers relating to the MGA parties' motion for stay pending appeal (which specific relief the Court denied for the reasons stated on the record), and after consideration of the parties' papers relating to Mattel's ex parte application to appoint a receiver, the Court issues the following Order modifying the stay set forth in the Court's December 3, 2008, Order, and appointing a forensic auditor.

**MODIFYING STAY OF PERMANENT INJUNCTION**

     Notwithstanding any previous Order of the Court, the December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4439), shall remain **STAYED**, ineffective and non-final, until further order of the Court.  Specifically, retailers and distributors will be permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009.

     In the event that the Court awards control over the rights to the Bratz products referenced in the Court's December 3, 2008, Order and the January 7, 2009 Stipulation and Order (regarding

MINUTES FORM 90                                              Initials of Deputy Clerk __jh_____
CIVIL -- GEN                             1

EXHIBIT __3__
PAGE __19__

Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 22 of 41   Page ID
#:190220
Case 2:04-cv-09049-SGL-RNB   Document 4657   Filed 01/0//2009   Page 2 of 10

the Spring and Fall 2009 lines) to a Court-appointed receiver or to Mattel, Inc., that award will be
subject to a requirement that retailers and distributors be permitted to purchase the Spring and
Fall 2009 lines up to and including December 31, 2009.

## APPOINTMENT OF FORENSIC AUDITOR

As discussed on the record, the Court **HOLDS IN ABEYANCE** Mattel's ex parte application
for appointment of a receiver pending a forensic audit of MGA Entertainment, Inc., Isaac Larian,
and MGA Entertainment Hong Kong.

For good cause shown, the Court hereby **APPOINTS** Ronald L. Durkin to serve as the
Court's forensic auditor (hereinafter referred to as "the Auditor"). Mr. Durkin's qualifications appear
in an attachment to this Order. The Court has provided the Auditor with the parties' attorneys'
contact information. The Auditor shall direct his initial communications to counsel.

Defendants MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment Hong Kong,
shall provide the Auditor with access to any and all MGA records, regardless of the medium or
media of the maintenance of those records, **including but not limited to the
"Document/Information Request List" attached to this Order,** that the Auditor deems
necessary to enable him to provide the Court with a report, in camera, regarding MGA's finances
sufficient to enable the Court to determine whether or not appointment of a receiver is warranted.
The audit shall extend to any and all related entities as the Auditor deems necessary. Defendants
shall also make available for interview individuals identified to them by the Auditor. Defendants
shall make its computer systems, physical premises, and offices, available to the Auditor upon his
reasonable request during normal business hours. Defendants shall permit the Auditor's
reasonable use of its office machines, such as copiers and fax machines, as may be necessary to
complete the audit.

The Auditor shall have the authority to seek the services of fellow professionals (as well as
para-professionals and support staff) necessary to accomplish the Court-appointed audit. The
provisions of this Order extend to the Auditor's delegatees as he so directs. The Auditor and his
delegatees shall be compensated at their reasonable customary hourly rates.

The expense of the forensic audit shall be borne, in the first instance, by Mattel. After the
Court considers the Auditor's report[s], the Court will consider whether the audit expenses should
be shared with, or shifted completely to, defendants, based on the equities. The Auditor and his
team shall submit periodic billing statements to Mattel to an address specified by Mattel's counsel.

All parties (and individuals and entities under their control) shall cooperate with the Auditor
so that he may report to the Court in an expeditious manner.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____

EXHIBIT ___3___
PAGE ___20___

Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 23 of 41   Page ID
#:190221
Case 2:04-cv-09049-SGL-RNB      Document 4657      Filed 01/07/2009      Page 3 of 10

**FORENSIC AUDITOR**
**DOCUMENT/INFORMATION REQUEST LIST**
**January 7, 2009**

1.      Audited financial statements for the last three years.  If audited financial statements are not available, then the most current draft of financial statements for the last three years.

2.      Quarterly financial statements for the last three years.

3.      Detailed electronic monthly general ledgers and trial balances for the last three years. If electronic files are not available, then please produce in hard copies.

4.      Detailed electronic revenue or sales subsidiary ledgers for the last three years.  If electronic files are not available, then please produce the request in hard copies.

5.      Detailed electronic receipts or cash subsidiary ledgers for the last three years.  If electronic files are not available, then please produce in hard copies.

6.      Detailed electronic accounts payables and disbursements subsidiary ledgers for the last three years.  Details should include, but should not be limited to, vendor/payee ID, vendor/payee name, check/payment number, payment date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), payment amount, currency indicator (if other than US dollars), foreign exchange rate (if other than US dollars), invoice number, invoice date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), invoice amount, comment or description, and any other information contained in the file.  If electronic files are not available, then please produce in hard copies.

7.      Detailed electronic vendor master files of all active and inactive vendors for the last three years.  Details should include, but should not be limited to, vendor ID, vendor name, status (active/inactive), vendor address (including City, State, Zip, Country), date created, created by user ID.  If electronic files are not available, then please produce in hard copies.

8.      Detailed electronic payroll files for the last three years.  Details should include, but not be limited to, employee ID, employee name, payment date, payment number, deductions (e.g. tax, contributions, etc.), gross payment amount, net payment amount, and any other information contained in the file.  If electronic files are not available, then please produce in hard copies.

9.      Any and all records that substantiate transfers of assets to other entities, individuals, and/or parties, within the US and outside of the US.

10.    Copies of all bank statements, canceled checks, wire instructions, and all other information and notices sent with bank statements for the last three years.

MINUTES FORM 90                                     Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          3

EXHIBIT ___3___
PAGE ___21___

11.   Federal and state tax returns for the last three years.

12.   A summary of all contributions, loans and any sources of funding during the last twelve months. Copies of agreements and/or contracts supporting these transactions.

13.   A summary of all related party transactions detailing any compensation, loans, advances, payments, fees or any other form of consideration paid to Isaac Larian, family members, or affiliates, or any other related party.

14.   Detail of all loan facilities with an indication of creditor and relevant terms.

15.   Copies of any notices from federal or state tax authorities regarding audits or audit adjustments during the last 3 years.

16.   All detailed corporate credit card statements for the last three years. If electronic files are not available, then please produce in hard copies.

17.   Information and documents regarding expense reimbursement of owners, officers, employees, family members, or affiliates.

18.   Detailed human resources files (electronic) of all employee information (for all current and terminated employees to date) including but not limited to employee name, employee number, address, phone number, start date, termination date, status, position, social security number, and any other information contained in the files. If electronic files are not available, then please produce in hard copies.

19.   Electronic files of all emails including attachments to the emails from the network server and from backup tapes (please identify dates of backup tapes in order for selection of time period).

20.   Forensic images of personal computer hard drives and PDAs of selected individuals.

4

Initials of Deputy Clerk __jh_____

EXHIBIT ___3___
PAGE ___22___





Ronald L. Durkin
CPA/CFF, CFE, CIRA

### Senior Managing Director

619 481 5201

rdurkin@durkinforensic.com

701 B Street Suite 1310
San Diego, CA 92101

Ronald L. Durkin is a CPA with over 30 years combined experience in public accounting and as a Special Agent with the FBI. He has testified in accounting, financial, and bankruptcy matters in U.S. District Court, U.S. Bankruptcy Court, U.S. Tax Court and in various State courts. During his tenure with the FBI, Ron was responsible for investigations involving white collar crime, political and public corruption, money laundering, organized crime, labor racketeering, racketeer-influenced and corrupt organization statute (RICO) violations, and narcotics matters. Since leaving the FBI, he has assisted clients in matters involving fraud prevention, detection, and internal investigations. He has worked on cases involving Foreign Corrupt Practices Act, employee embezzlement, management fraud, financial statement fraud, conflict-of-interest, check kiting, bankruptcy fraud, money laundering, and Ponzi schemes.

In 2008 Ron retired from KPMG. While at KPMG, Ron was the National Partner in Charge of the Fraud and Misconduct Investigations practice and served as the Western Region's forensic practice leader as well as the office coordinating partner for the Los Angeles office's forensic practice.



EXHIBIT   3
PAGE    23

Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 26 of 41   Page ID
#:190224
Case 2:04-cv-09049-SGL-RNB        Document 4657        Filed 01/u7/2009        Page 6 of 10



## Service Lines

Fraud & Misconduct Investigations
Fraud Risk Management
Forensic in the Audit/Shadow Procedures

## Education and Certifications

Bachelor of Science, Accounting,
California State University, Sacramento

Masters of Business Administration
(Emphasis in Accounting), California
State University, Sacramento

Certified Public Accountant,
licensed in California, Arizona,
Nevada, and Washington

Certified in Financial Forensics

Certified Fraud Examiner

Certified Insolvency and
Restructuring Advisor

He is a frequent speaker at the FBI Academy and at the AIC-PA National Fraud Conference, California and other State CPA Societies, and he has made presentations to the IRS Criminal Investigative Division and the U.S. Postal Inspectors CPA seminars. He is a member of the AICPA National Accreditation Commission and a former member of the Business Valuation and Forensic Litigation Services Executive Committee. He is the former chair of the AICPA Anti-Fraud Programs and Controls Task Force and past chair of the AICPA Litigation and Dispute Resolution Services Subcommittee. Ron is also the Chair of the California Society of CPA's Litigation Services Steering Committee and the past Chair of the California Society of CPAs Fraud Section.

Ron was a 2003 AICPA Volunteer of the Year. Ron was also honored with the Distinguished Achievement Award by the AICPA in 2006 for his long time commitment to the AICPA. In 2007, Ron was awarded the first-ever FLS Lifetime Achievement Award by the AICPA.

EXHIBIT    3
PAGE      24



Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 27 of 41   Page ID
#:190225
Case 2:04-cv-09049-SGL-RNB      Document 4657      Filed 01/0//2009      Page 7 of 10



## Professional Associations

American Institute of Certified Public
Accountants (Immediate Past Chair of
Litigation & Dispute Resolution Services
Subcommittee) – member since 1995

California Society of Certified Public
Accountants (member of Steering Com-
mittee for statewide Litigation Services
Sections and Chair of Fraud Section)

Association of Certified Fraud Examiners
(Member of Faculty since 1995)

Association of Insolvency and
Restructuring Advisors

Society of Former Special Agents
of the FBI

Institute of Internal Auditors

## Investigative and Integrity Advisory Experience

On an International level, he has worked on a number of mat-
ters involving alleged Foreign Corrupt Practices Act (FCPA)
violations. Working on behalf of U.S. based companies, Ron in-
vestigated allegations that members of management of foreign
subsidiaries were involved in either bribing foreign officials, di-
verting corporate opportunities and funds, or conspiring with
others to defraud U.S. based victims.

Conducted an investigation of certain allegations of political
and public corruption surrounding an international sporting
event that was to be held in the US. The allegations involved
FCPA, bribery, and public corruption.

Conducted an investigation of an alleged kickback scheme on the
part of a purchasing manager of a global technology company.

Conducted an internal investigation with a multi-national corpo-
ration regarding corruption involving a former manager in the
accounts receivable department. The case was referred to the
United States Attorney's Office and the FBI for prosecution.

EXHIBIT ___3___
PAGE ___25___



Conducted an internal investigation, on behalf of a publicly traded company, regarding alleged diversion of funds with the accounts payable department. The case was referred to the United States Attorney's Office and the FBI for prosecution.

Investigated allegations of fraud in the real estate industry, including new construction projects, as well as management and operation of office buildings, apartment buildings and shopping centers.

Investigated allegations of corruption by certain members of a County Board of Supervisors who were indicted by a Federal Grand Jury.

Served as an undercover agent in a case involving 35 State Court judges who were indicted and convicted of public corruption.

Conducted a number of investigations of cases involving Pyramid and Ponzi schemes. He also has testified in U.S. District Court, State Court, and Bankruptcy Court in several of these cases.

During career with the FBI and as a bankruptcy trustee, investigated allegations of fraud, corruption and organized crime within the solid waste industry.

EXHIBIT __3__

PAGE __26__

Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 29 of 41   Page ID
#:190227
Case 2:04-cv-09049-SGL-RNB      Document 4657      Filed 01/07/2009      Page 9 of 10



As the Chapter 11 Trustee of two failed insurance agencies,
he conducted investigations into allegations of fraud and mis-
management on the part of senior management.

As a Chapter 7 Trustee, Chapter 11 Trustee, and Examiner in
bankruptcy matters, has conducted hundreds of investigations
where allegations of fraud have been alleged.

Served as a "keeper" for the Department of Corporations,
investigated a State securities fraud matter.

Served as trustee of the parent of one of the largest financial
institutions in California where securities fraud and other ac-
tions were alleged against senior management.

EXHIBIT __3__
PAGE __27__

Case 2:04-cv-09049-DOC-RNB   Document 5865-3   Filed 07/01/09   Page 30 of 41   Page ID
#:190228
Case 2:04-cv-09049-SGL-RNB     Document 4657     Filed 01/0r,2009     Page 10 of 10



## Publications

One of the principal authors of the AICPA Practice Aid 07-1 – "Forensic Accounting – Fraud Investigations" (2007)

Chair of the AICPA Forensic Procedures Task Force responsible for the writing of the "Forensic Procedures and Specialists: Useful Tools and Techniques" – AICPA Special Report, 2006

Chair of the AICPA Antifraud Programs and Controls Task Force responsible for the writing of "Management Override of Internal Controls: The Achilles' Heel of Fraud Prevention" – AICPA Practice Aid, 2005

Principal author – AICPA Technical Consulting Practice Aid 97-1 "Fraud Investigations in Litigation and Dispute Resolution Services"

Co-author – California Society of CPA "The Witness Chair" – SAS 99 – Is It Enough To Help Close the Expectation Chasm? (2003)

Author – "A Systematic Approach to Fraud Investigation" – The CPA Expert, Spring 2000 (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Co-author – "Defining the Practice of Forensic Accounting" The CPA Expert, 1999 Special Issue (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Contributing and Reviewing author to Guide to Fraud Investigations published by Practitioners Publishing Company

Contributing author to Handbook of Litigation Services for John Wiley and Sons. The chapter written by Mr. Durkin is entitled "Criminal Cases and the Investigative Accountant."

Book review of Investigating White Collar Crime: Embezzlement and Financial Fraud for "CPA Management Consultant".

EXHIBIT ____3____
PAGE ____28____

EXHIBIT 4



FILED

**SEND**

2006 APR 14  AM 11: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF COURT
RIVERSIDE

BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT,                    )     Case No. CV 04-09049 SGL(RNBx)
                                  )
                Plaintiff,        )     STANDING ORDER
                                  )
        v.                        )
                                  )
MATTEL, INC.,                     )
                                  )
                Defendant.        )
_____  )

**READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE
AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

This action has been assigned to the calendar of Judge Stephen G. Larson.
Both the Court and the attorneys bear responsibility for the progress of litigation in
the Federal Courts.  To secure the just, speedy, and inexpensive determination of
every action, Fed. R. Civ. P. 1, all counsel of record are ordered to familiarize
themselves with the Federal Rules of Civil Procedure and the Local Rules of the
Central District of California.

IT IS HEREBY ORDERED:

**1.      Service of the Complaint:**  The Plaintiff shall promptly serve the
Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant
to Local Rule 5-3.1.

EXHIBIT ____4____
PAGE ____29____

DOCKETED ON CM

APR 14 2006

**2.    Presence of Lead Counsel:**  Lead trial counsel shall attend all proceedings before this Court, including all status and settlement conferences. Failure of lead trial counsel to appear for those proceedings without express leave of court is a basis for sanctions.

**3.    Discovery:**  All discovery matters have been referred to a United States Magistrate Judge (see initial designation following the case number) to hear all discovery disputes.  The words "DISCOVERY MATTER" shall appear in the caption of all documents relating to discovery to insure proper routing.  Counsel are directed to contact the Magistrate Judge Courtroom Deputy Clerk for the assigned Magistrate Judge to schedule matters for hearing.

The decision of the Magistrate Judge shall be final, subject to modification by the District Court only where it has been shown that the Magistrate Judge's order is clearly erroneous or contrary to law.

Any party may file and serve a motion for review and reconsideration before this Court.  The party seeking review must do so within ten (10) days of service upon the party of a written ruling or within ten (10) days of an oral ruling that the Magistrate Judge states will not be followed by a written ruling.  The motion must specify which portions of the text are clearly erroneous or contrary to law and the claim must be supported by points and authorities.  A copy of the moving papers and responses shall be delivered to the Magistrate Judge's clerk for review upon the filing of the required documents.

Unless there is a likelihood that upon motion by a party the court would order that any or all discovery is premature, it is advisable for counsel to begin to conduct discovery actively before the Scheduling Conference.  At the very least, the parties shall comply fully with the letter and spirit of Fed. R. Civ. P. 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery, because

EXHIBIT ___4___
PAGE ___80___                2

1    the Court will impose tight deadlines to complete discovery at the Scheduling

2    Conference.

3            If expert witnesses are to be called at trial, the parties shall designate experts to

4    be called at trial and provide reports required by Fed. R. Civ. P. 26(a)(2)(B) not later

5    than eight (8) weeks prior to the discovery cutoff date.  Rebuttal expert witnesses

6    shall be designated and reports provided as required by Fed. R. Civ. P. 26(a)(2)(B)

7    not later than five (5) weeks prior to the discovery cutoff date.  Failure to timely

8    comply with this deadline may result in the expert being excluded at trial as a

9    witness.

10           **4.    <u>Motions</u>:**

11                   **(a)    <u>Time for Filing and Hearing Motions</u>:** Motions shall be filed in

12   accordance with Local Rules 6-1 and 7-2, etc.[1]  This Court hears motions on

13   Mondays, commencing at 10:00 a.m.  No supplemental brief shall be filed without

14   prior leave of Court.  Conformed courtesy copies of opposition and reply papers shall

15   be delivered to the courtesy box on the wall outside the entrance to Courtroom No.

16   One, located on the Second Floor of the U.S. Courthouse, 3470 Twelfth Street,

17   Riverside, California, **by 4:00 p.m. on the date due.**  Many motions to dismiss or to

18   strike could be avoided if the parties confer in good faith (as they are required to do

19   under L.R. 7-3), especially for perceived defects in a complaint, answer, or

20   counterclaim which could be corrected by amendment.  <u>See</u> <u>Chang v. Chen</u>, 80 F.3d

21   1293, 1296 (9th Cir. 1996) (where a motion to dismiss is granted, a district court

22   should provide leave to amend unless it is clear that the complaint could not be saved

23   by *any* amendment).  Moreover, a party has the right to amend its complaint "once as

24

25          [1]    Among other things, Local Rule 7-3 requires counsel to engage in a pre-filing
26   conference "to discuss thoroughly . . . the substance of the contemplated motion and any
     potential resolution."  Counsel should discuss the issues sufficiently so that if a motion is
27   still necessary, the briefing may be directed to those substantive issues requiring resolution
     by the Court.  Counsel should resolve minor procedural or other nonsubstantive matters
28   during the conference.

EXHIBIT _____4_____

PAGE _____31_____    3

Received:   4/14/06   3:55PM;       RightFAX -> JetFax M920;   Page 5

RightFAX              4/1  2006 3:55    PAGE 005/011    Fax Server

1  a matter of course at any time before a responsive pleading is served." Fed. R. Civ.

2  15(a).  A 12(b)(6) motion is not a responsive pleading for purposes of Rule 15(a) a

3  therefore plaintiff might have a right to amend.  See Nolen v. Fitzharris, 450 F.2d

4  958, 958-59 (9th Cir. 1971); St. Michael's Convalescent Hospital v. California, 64:

5  F.2d 1369, 1374 (9th Cir. 1981).  Even where a party has amended its Complaint

6  once, or where a responsive pleading  has been served, the Federal Rules provide th

7  leave to amend should be "freely given when justice so requires." Fed.R.Civ.P.

8  15(a).  The Ninth Circuit requires that this policy favoring amendment be applied

9  with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 10

10 1079 (9th Cir. 1990).  These principles require that counsel for the plaintiff should

11 carefully evaluate the defendant's contentions as to the deficiencies in the complair

12 and, in many instances, the moving party should agree to any amendment that woul

13 cure a curable defect.

14        In the unlikely event that motions under Fed. R. Civ. P. 12 challenging

15 pleadings are filed after the Rule 16 Scheduling Conference, the moving party shall

16 attach a copy of the challenged pleading to the Memorandum of Points and

17 Authorities in support of the motion.

18        The foregoing provisions apply as well to motions to dismiss a counterclaim,

19 answer, or  affirmative defense that a plaintiff might file.

20        **(b)    Length and Format of Motion Papers:  Memoranda of Poin**

21 **and Authorities in support of or in opposition to motions shall not exceed 25**

22 **pages.  Replies shall not exceed 12 pages.**  Only in rare instances and for good cat

23 shown will the Court grant an application to extend these page limitations.

24        Typeface shall comply with Local Rule 11-3.1.1. If Times Roman font is us

25 the size must be no less than 14; if Courier is used, the size must be no less than 12

26 Footnotes shall be in typeface no less than one size smaller than text size

27

28

EXHIBIT ___4___
PAGE ___32___

1 | and shall be used sparingly.

2 |        Filings that do not conform to the Local Rules and this Order will not be

3 | considered.

4 |             **(c)    Citations to Case Law:**  Citations to case law **must** identify not

5 | only the case being cited, but the specific page being referenced.  Certain kinds of

6 | authority are considered more useful - or authoritative - than others.  If more than one

7 | authority is cited in support of a proposition, these supporting authorities are to be

8 | listed such that the more authoritative ones appear first.

9 |             **(d)    Citations to Statutory Sources:**  Counsel are reminded that the

10 | basic purpose of a legal citation is to allow the reader to locate a cited source

11 | accurately and efficiently.  Accordingly, statutory references should identify, with

12 | specificity, which sections and subsections are being referenced (e.g., Jurisdiction

13 | over this cause of action may appropriately be found in 47 U.S.C. § 33, which grants

14 | the district courts jurisdiction over all offenses of the Submarine Cable Act, whether

15 | the infraction occurred within the territorial waters of the United States or on board a

16 | vessel of the United States outside said waters).  Statutory references which do not

17 | indicate specifically which section and subsection are being referred to (e.g.,

18 | Plaintiffs allege conduct in violation of the Federal Electronic Communication

19 | Privacy Act, 18 U.S.C. § 2511, et seq.) are to be **avoided**.  Citations to treatises,

20 | manuals, and other materials should similarly include the volume and the section

21 | being referenced.

22 |             **(e)    Citations to Other Sources:**  Parties offering evidence in support

23 | of, or in opposition to, a motion (notably a Rule 56 motion) must cite to specific page

24 | and line numbers in depositions and paragraph numbers in affidavits.  Furthermore,

25 | such evidence must be authenticated properly.  The Court directs the parties to

26 | become familiar with Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir.

27 | 2002).

28 |

5

EXHIBIT __7__
PAGE __33__

Received:    4/14/06   3:56PM;                          →RightFAX -> JetFax M920;   Page 7
RightFAX              4/1   2006 3:55    PAGE 007/011    Fax Server

(f)    **Courtesy Copies:**  Counsel shall deliver a conformed courtesy copy of all opposition and reply papers in motion matters to the courtesy box on the wall outside the entrance to Courtroom No. One, located on the Second Floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside, California, **by 4:00 p.m. on the date due.**

(g)    **Limits on Motions**

(1) **Motions for Summary Judgement or Partial Summary Judgement:**  No party may file more than one motion pursuant to Fed. R. Civ. P. 56 regardless of whether such motion is denominated as a motion for summary judgment or summary adjudication.

(2) **Motions in Limine:**  No party may file more than five motions in limine.

5.    **Proposed Orders:**  Each party filing or opposing a motion or seeking the determination of any matter shall serve and lodge a Proposed Order setting forth the relief or action sought and a brief statement of the rationale for the decision with appropriate citations.  If the Proposed Order exceeds two pages, the proposing party shall also submit the document on a 3½-inch diskette compatible with WordPerfect 7.0 or higher.

6.    **Ex Parte Applications:**  Counsel are reminded that ex parte applications are solely for extraordinary relief.  See Mission Power Engineering Co. v. Continental Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995).  Applications which fail to conform with Local Rules 7-19 and 7-19.1, **including a statement of opposing counsel's position,** will not be considered.  Any opposition must be filed not later than 24 hours after service.  If counsel do not intend to oppose the ex parte application, counsel must inform the court clerk by telephone.  The Court considers ex parte applications on the papers and usually does not set these matters for hearing.

EXHIBIT  4
PAGE  34

1   Counsel shall deliver a conformed courtesy copy of moving, opposition, or notice of
2   non-opposition papers to the courtesy box outside the entrance to Courtroom No. 1,
3   located on the Second floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside,
4   California. The courtroom deputy clerk will notify counsel of the Court's ruling or
5   hearing date and time, if the Court determines a hearing is necessary.

6       **7.     Applications or Stipulations to Extend the Time to File any**
7   **Required Document or to Continue any Pretrial or Trial Date:** No stipulations
8   extending scheduling requirements or modifying applicable rules are effective until
9   and unless the Court approves them. Both applications and stipulations must be file
10  in advance of the date due and set forth:

11          (a)     the existing due date or hearing date as well as the discovery
12  cutoff date, the last date for hearing motions, the pre-trial conference date and the
13  trial date;

14          (b)     specific, concrete reasons supporting good cause for granting the
15  extension; and

16          (c)     whether there have been prior requests for extensions, and
17  whether these were granted or denied by the Court.

18      **8.     TROs and Injunctions:** Parties seeking emergency or provisional reli
19  shall comply with Fed. R. Civ. P. 65 and Local Rule 65. The Court will not rule on
20  any application for such relief for at least 24 hours after the party subject to the
21  requested order has been served; such party may file opposing or responding papers
22  in the interim. [2]  The parties shall lodge a courtesy copy, conformed to reflect that it
23  has been filed, of all papers relating to TROs and injunctions. The courtesy copy
24  shall be placed in the courtesy box outside the entrance to Courtroom No. One,

25

26  _____
27      [2]    Local Rule 7-19.2 - Waiver of Notice. If the Judge to whom the application is
    made finds that the interest of justice requires that the ex parte application be heard withou
    notice (which in the instance of a TRO means that the requisite showing under Fed.R.Civ.F
28  65(b) has been made) the judge may waive the notice requirement of L.R. 7-19.1.

EXHIBIT ___1___
PAGE    35

Received:   4/14/06   3:57PM;                            RightFAX -> JetFax MF?0;   Page 9
RightFAX                    4/1₁/2006 3:55   PAGE 009/011   ?ax Server

1   located on the Second floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside,

2   California. All such papers shall be filed "loose" - - i.e., not inside envelopes.

3       **9.**   **Cases Removed From State Court:** All documents filed in state court,

4   including documents appended to the complaint, answers, and motions, must be

5   refiled in this Court as a supplement to the Notice of Removal, if not already

6   included. See 28 U.S.C. § 1447(a)(b). If the defendant has not yet responded, the

7   answer or responsive pleading filed in this Court must comply with the Federal Rules

8   of Civil Procedure and the Local Rules of the Central District. If a motion was

9   pending in state court before the case was removed, it must be re-noticed in

10   accordance with Local Rule 6-1.

11       **10.**   **ERISA Cases:** Absent an agreed upon statement of facts, the court will

12   not hear motions for summary judgment, but will hear motions to determine the

13   standard of review and the scope of the administrative record. See Kearney v.

14   Standard Insurance Co., 175 F.3d 1084 (9th Cir. 1999). There will be a court trial

15   (usually confined to oral argument) on the administrative record.

16       **11.**   **Status of Fictitiously Named Defendants:** This Court intends to

17   adhere to the following procedures where a matter is removed to this Court on

18   diversity grounds with fictitiously named defendants referred to in the complaint.

19   (See 28 U.S.C. §§ 1441(a) and 1447.)

20       (a)    Plaintiff is normally expected to ascertain the identity of and serve

21   any fictitiously named defendants within 120 days of the removal of the action to this

22   Court.

23       (b)    If plaintiff believes (by reason of the necessity for discovery or

24   otherwise) that fictitiously named defendants cannot be fully identified within the

25   120-day period, an ex parte application requesting permission to extend that period to

26   effectuate service may be filed with this Court. Such application shall state the

27   reasons therefor, and may be granted upon a showing of good cause. The ex parte

28

EXHIBIT ___4___
PAGE ___3ᴸ___

1  application shall be served upon all appearing parties, and shall state that appearing

2  parties may comment within seven (7) days of the filing of the ex parte application.

3                (c)    If plaintiff desires to substitute a named defendant for one of the

4  fictitiously named parties, plaintiff first shall seek to obtain consent from counsel for

5  the previously-identified defendants (and counsel for the fictitiously named party, if

6  that party has separate counsel).   If consent is withheld or denied, plaintiff may apply

7  ex parte requesting such amendment, with notice to all appearing parties.  Each party

8  shall have seven calendar days to respond.  The ex parte application and any response

9  should comment not only on the substitution of the named party for a fictitiously

10 named defendant, but on the question of whether the matter should thereafter be

11 remanded to the Superior Court if diversity of citizenship is destroyed by the addition

12 of the new substituted party.  See 28 U.S.C. § 1447(c)(d).

13     **12.**   **Communications with Chambers:**  Counsel shall not attempt to contact

14 the Court or its chambers staff by telephone or by any other ex parte means, although

15 counsel may contact the courtroom deputy, at (951) 328-4464, with appropriate

16 inquiries.  To facilitate communication with the courtroom deputy, counsel should list

17 their facsimile transmission numbers along with their telephone numbers on all

18 papers.

19     **13.**   **Notice of this Order:**  Counsel for plaintiff shall immediately serve this

20 Order on all parties, including any new parties to the action.  If this case came to the

21 Court by noticed removal, defendant shall serve this Order on all other parties.

22

23

24

25

26

27

28

EXHIBIT ___4___
PAGE ___37___

**14.    Internet Site:**  Counsel are encouraged to review the Central District's

Website for additional information.[3]  The address is "http://www.cacd.uscourts.gov."

IT IS SO ORDERED.

Dated: April 14, 2006

_S.G. Larson_

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

---

[3] Copies of the Local Rules are available on our website at
"http: //www.cacd.uscourts.gov" or they may be purchased from one of the following:

Los Angeles Daily Journal
915 East 1st Street
Los Angeles, California  90012

West Publishing Company
610 Opperman Drive
Post Office Box 64526
St. Paul, Minnesota  55164-0526

Metropolitan News
210 South Spring Street
Los Angeles, California  90012

EXHIBIT 4
PAGE 38