QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>             Plaintiff,<br><br>      vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES (PHASE 2) TO ISAAC LARIAN<br><br>Date:  TBD<br>Time:  TBD<br>Place:  TBD<br><br>Discovery cut-off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 3

I. MATTEL'S TWO INTERROGATORIES ARE DIRECTLY RELEVANT TO ITS PHASE 2 CLAIMS AND ARE NOT OVERBROAD ............................................................................................. 3

    A. Larian Concedes That The Interrogatories Are Relevant To Mattel's RICO Claims .................................................................... 3

    B. The Interrogatories Are Also Relevant to Mattel's Other Claims .......... 5

    C. The Interrogatories Are Not Overbroad ................................................ 7

II. THE INTERROGATORIES ARE NOT VAGUE, AMBIGUOUS, OR UNDULY BURDENSOME ..................................................................... 10

    A. Interrogatory No. 1 Is Perfectly Understandable. ................................ 11

    B. Interrogatory No. 2 Is Not Vague and Ambiguous .............................. 11

    C. The Interrogatories Are Not Unduly Burdensome ............................... 13

III. THE INTERROGATORIES ARE NOT COMPOUND ................................. 13

IV. MATTEL MET AND CONFERRED IN GOOD FAITH CONCERNING THE INTERROGATORIES ................................................ 15

CONCLUSION ....................................................................................................... 15

Case 2:04-cv-09049-DOC-RNB   Document 5866   Filed 07/01/09   Page 3 of 19   Page ID
 #:190244

# TABLE OF AUTHORITIES

**Page**

## Cases

Allwaste, Inc. v. Hecht,
 65 F.3d 1523 (9th Cir. 1995) ........................................................................ 8

Branco v. Life Care Centers of America, Inc.,
 2006 WL 4484727 (W.D. Wash. May 6, 2006) ...................................... 10

Del Campo v. Am. Corrective Counseling Servs., Inc., Slip op.,
 2008 WL 4858502 (N.D. Cal. Nov. 10, 2008) .................................... 4, 10

Deutsch v. Flannery,
 823 F.2d 1361 (9th Cir. 1987) ..................................................................... 6

Floyd-Mayers v. American Cab Co.,
 1990 WL 116855 (D.D.C. July 30, 1990) ................................................. 8

Halperin v. Berlandi,
 114 F.R.D. 8 (D. Mass. 1986) ..................................................................... 8

Jackson v. Montgomery Ward & Co., Inc.,
 173 F.R.D. 524 (D. Nev. 1997) ................................................................. 13

Mead Corp. v. Riverwood Natural Res. Corp.,
 145 F.R.D. 512 (D. Minn. 1992) ............................................................. 12

Monaghan v. SZS 33 Assocs., L.P.,
 1992 WL 135821 (S.D.N.Y. June 1, 1992) ............................................. 12

Oakes v. Halvorsen Marine Ltd.,
 179 F.R.D. 281 (C.D. Cal. 1998) ............................................................... 8

Pulsecard, Inc. v. Discover Card Servs., Inc.,
 168 F.R.D. 295 (D. Kan. 1996) ......................................................... 11, 12

Ramirez v. Nicholson,
 2007 WL 2990283 (S.D. Cal. 2007) ......................................................... 3

Southern Cal. Housing Rights Center v. Krug,
 2006 WL 4122148 (C.D. Cal. Sept. 5, 2006) ........................................... 7

United States v. Estacio,
 64 F.3d 477 (9th Cir. 1995)(i) .................................................................... 4

United States v. Richard,
 234 F.3d 763 (1st Cir. 2000) ...................................................................... 4

00505.07975/2992111.2                                 -ii-                    Case No. CV 04-9049 SGL (RNBx)
REPLY ISO MATTEL INC.'S MOTION TO COMPEL INTERROGATORY RESPONSES

Warfield v. AdVnt Biotechnologies, LLC, Slip Op.,
   2008 WL 4163248 (D. Ariz. Sept. 5, 2008) .......................................................... 9

Zatkin v. Primuth,
   551 F. Supp. 39 (S.D. Cal. 1982) ........................................................................ 6

### Statutes

18 U.S.C. § 152(7) ................................................................................................... 4

18 U.S.C. § 1956(a) ................................................................................................. 4

18 U.S.C. § 1957(a) ................................................................................................. 4

Cal. Bus. & Prof. Code § 17200 .............................................................................. 7

Cal. Civil Code § 3439 ............................................................................................ 5

Fed. R. Civ. P. 26 ..................................................................................................... 5

Fed. R. Civ. P. 26(b)(1) ..................................................................................... 3, 10

Fed. R. Civ. P. 33(a) .............................................................................................. 13

Fed. R. Civ. P. 33(b)(1) ............................................................................. 10, 11, 12

Fed. R. Civ. P. 37(a)(1) .......................................................................................... 15

**Preliminary Statement**

The financial transactions in which Larian and his alter egos have engaged are unquestionably directly at issue in Phase 2. The two interrogatories at issue in this motion are designed to elicit crucial information about those transactions -- much of the responsive investment information would constitute not just evidence but, in and of themselves, acts of liability. Although Larian does not dispute that Mattel is entitled to information concerning transactions he has carried out or that others have carried out on his behalf or at his direction, nor that the two interrogatories at issue will elicit such information, he has refused to provide any responsive information at all. That refusal is unjustifiable.

Larian argues that his obstructionism should be condoned because the interrogatories hypothetically might require disclosure of a small subset of inadmissible information (along with, of course, much relevant information). Discovery is not nearly so limited -- interrogatories are not overbroad merely because not every bit of responsive information would be admissible at trial. The allegations in Mattel's Third Amended Answer and Counterclaims ("TAAC") directly place at issue the financial dealings of Larian, his family members and the trusts and other entities they control, many of whom are specifically named in the TAAC as members of an ongoing RICO enterprise. Larian does not even argue, let alone show, that the information sought by the interrogatories is irrelevant to Mattel's RICO allegations. Although he half-heartedly asserts that the interrogatories are not relevant to Mattel's fraudulent transfer and unfair competition claims, Larian's real complaint seems to be that it is unfair for Mattel's TAAC to place Larian's wide-ranging unlawful financial schemes directly at issue.[1] This discovery motion is not the place for that argument which was, in any event,

---

[1] See, e.g., Opp. at 20. (arguing that "Mattel's objective in filing its TAC seems to have been to manufacture a basis for its harassing discovery").

rejected when Judge Larson granted Mattel leave to file the Third Amended Answer and Counterclaims ("TAAC").

Larian's financial dealings being plainly relevant, the Opposition strains to create supposed "vagueness," going so far as to argue that Mattel's "use of the word 'it'" is "grammatically and logically unintelligible."[2] Firstly, Larian is obligated to respond to the extent he understands the requests -- and considering that some trusts are identified <u>by name</u> in the definition Larian quibbles with, most of the definition is not even arguably unclear to a reasonable person. Larian nevertheless has failed to provide any information even to that extent. Moreover, some degree of ambiguity -- even if there were any -- is scarcely fatal to discovery requests. If a party can apply common sense and understand what is being requested, the party is obligated to respond. Courts have long held that semantic skirmishes such as Larian's are improper. Mattel's interrogatories are easily understood; "vagueness" does not justify Larian's blanket stonewalling.

Lastly, rehashing defendants' now stereotyped justification for refusing any discovery, Larian offers a five-page missive on Mattel's purported failure to meet and confer in good faith prior to filing its motion. But Mattel's decision not to narrow proper interrogatories does not constitute a failure to meet and confer. To the contrary, Larian admits that the parties exchanged *six* letters and held two lengthy telephone calls with multiple attorneys attempting to resolve the matter. It is Larian's repeated refusal to provide *any* response whatsoever that precipitated Mattel's motion and prevented any narrowing of the issues now before the Discovery Master.

---

[2] Opp. at 6:22-23.

# Argument

## I. MATTEL'S TWO INTERROGATORIES ARE DIRECTLY RELEVANT TO ITS PHASE 2 CLAIMS AND ARE NOT OVERBROAD

"The Federal Rules allow for broad discovery in civil actions. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Ramirez v. Nicholson, 2007 WL 2990283, at *2 (S.D. Cal. 2007) (quoting Fed. R. Civ. P. 26(b)(1)).

### A. Larian Concedes That The Interrogatories Are Relevant To Mattel's RICO Claims

Larian's 24-page opposition does not dispute that Mattel's interrogatories are directly relevant to its RICO claims. The interrogatories seek information concerning transactions carried out by Larian, his family members and trust entities that are specifically alleged to be Larian alter egos,[3] virtually all of whom are specifically named as RICO enterprise members in Mattel's Third Amended Answer and Counterclaims ("TAAC").[4] Mattel's RICO claims allege a pattern of financial fraud involving these individuals and trusts, including allegations that they have transferred the ill-gotten funds they have obtained by virtue of their unlawful conduct against Mattel, siphoned assets out of MGA, laundered their profits, attempted to conceal their assets and attempted to obscure that wrongful conduct.[5]

Information concerning financial transactions in which these individuals and trusts have engaged is plainly relevant to these allegations. In fact, this discovery is crucial -- more than just evidence, the transactions Mattel seeks to

---

[3] TAAC. at 32-33, ¶¶ 17, 19, Zeller Decl., Exh. 8.
[4] Id., at 71-73, ¶¶ 136, 138, Zeller Decl., Exh. 8.
[5] Id., at 60-68, ¶¶ 105-126, at 70-80, ¶¶ 133-145, at 95-96, ¶¶ 217-222, Zeller Decl., Exh. 8.

1  discover are themselves predicate acts giving rise to liability.  See, e.g., 18 U.S.C. §
2  1956(a) (liability for money laundering, including conducting financial transactions
3  involving proceeds of unlawful activity); 18 U.S.C. § 1957(a) (liability for engaging
4  in monetary transactions with property derived from unlawful conduct); see also
5  United States v. Richard, 234 F.3d 763, 767 (1st Cir. 2000) (A violation of section
6  1957(a) is proven when defendant "(1) knowingly engaged or attempted to engage
7  in a monetary transaction (2) in criminally derived property (3) of a value greater
8  than $10,000, and (4) derived from specified unlawful activity"); United States v.
9  Estacio, 64 F.3d 477, 480 (9th Cir. 1995) (Money laundering under 1956(a)(1)(A)(i)
10 is proven where "the defendant (1) was involved in an actual or attempted financial
11 transaction, (2) which the defendant then knew involved the proceeds of unlawful
12 activity, (3) with the intent to promote specified unlawful activity").[6]  The discovery
13 now at issue calls for the disclosure of acts of liability which more than meets the
14 standards for relevance under the Federal Rules.

15          Moreover, discovery into Larian's and his alter egos' financial
16 transactions is very likely to provide admissible evidence on the RICO claims even
17 where the transactions do not themselves constitute criminal acts.  For example,
18 Mattel has alleged predicate acts of asset concealment, which includes unlawful
19 transfers of assets in contemplation of bankruptcy.  See 18 U.S.C. § 152(7).[7]  Mattel
20 is clearly entitled to take discovery into Larian's and his alter egos' investments, and
21 the timing thereof, to develop a link in the chain showing that assets siphoned from
22 MGA were then transferred to other entities (including Omni 808) in contemplation
23 of bankruptcy.  See Del Campo v. Am. Corrective Counseling Servs., Inc., Slip op.,
24 2008 WL 4858502, at *3-4 (N.D. Cal. Nov. 10, 2008) (granting party's motion to
25 compel on the grounds that under the broad scope of discovery, evidence of

---

[6] See TAAC, at 70-80, ¶¶ 133-145 (pleading such predicate acts), Zeller Decl., Exh. 8.
[7] TAAC at 78-79 ¶ 141(h), Zeller Decl., Exh. 8.

siphoning corporate assets, misuse of assets of individual by corporation, and commingling of funds was reasonably calculated to lead to the discovery of admissible evidence regarding a determination of defendant corporation's alter ego status).

Larian does not dispute that the interrogatories are relevant to Mattel's RICO claims. The Discovery Master should overrule his relevance objections.

### B. The Interrogatories Are Also Relevant to Mattel's Other Claims

The interrogatories are also relevant to numerous other Phase 2 claims and issues. Larian complains, as to Mattel's fraudulent transfer claims, that Mattel has not sufficiently explained "***how*** the information requested by the Interrogatories will enable" Mattel to prove these claims. Opp. at 18:22-24 (emphasis in original). Mattel need only show that the interrogatories are "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26, and they plainly are. Mattel's claims target the unlawful transfers of assets out of MGA to IGWT, Larian and others, including his alter ego trusts. Cal. Civil Code § 3439 *et seq*.[8] The investments made by Larian and his alter egos, and the timing and amounts thereof, are plainly material to these claims -- only through discovery of such investments can Mattel trace the funds that Larian siphoned from MGA. Indeed, these investments themselves may be subject to unwinding under the fraudulent transfer claim. Cal. Civil Code § 3439.07. Larian erroneously states that the interrogatories are not relevant to the fraudulent transfer claims because they seek information from "a host of persons and entities ***other than*** Larian." Opp. at 19:1 (emphasis in original). But of course, Mattel's TAAC is not limited to Larian; Larian has used his trusts and other alter egos to conduct the unlawful conduct at issue in Phase 2.[9] Those are the persons and entities about which information is sought.

---

[8] See, e.g., TAAC, at 32-33, ¶¶ 17-19, Zeller Decl., Exh. 8.
[9] Id.

Citing no authority, Larian suggests that the <u>pleading</u> requirements of <u>Rule</u> 9(b) somehow restrict the fraudulent transfer discovery to which Mattel is entitled. Given that Judge Larson has approved Mattel's TAAC, and the MGA Parties have filed an answer, the argument is meritless. It is also legally incorrect. By its terms, <u>Rule</u> 9(b) applies to allegations of fraud or mistake in pleadings, not to the scope of discovery. Where, as here, fraud evidence lies in the hands of defendants, discovery is essential to discover the full extent of the fraud; discovery is not limited to matters strictly alleged in the pleadings. <u>See, e.g.</u>, <u>Deutsch v. Flannery</u>, 823 F.2d 1361, 1366 (9th Cir. 1987) ("<u>Rule</u> 9(b) does not ... require plaintiffs in a securities fraud case to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of the defendants") (internal quotations omitted); <u>Zatkin v. Primuth</u>, 551 F. Supp. 39, 42 (S.D. Cal. 1982) (stating that <u>Rule</u> 9(b) does not apply "where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing"). In any case, <u>Rule</u> 9(b)'s particularity requirements do not apply to Mattel's other claims arising out of these illegal transactions, including its RICO claims, so Larian's contention cannot preclude discovery for this independent reason.

The interrogatories are also relevant to other issues. Larian hardly disputes the relevance of his and his alter egos' unlawful investments to Mattel's unfair competition claims either. Larian argues that the Discovery Master previously erred in granting discovery concerning Larian's ownership and control of the IGWT entities based on the Court's December 3, 2008, Constructive Trust

Order, Opp. at 20-21, but that is both wrong[10] and immaterial -- Mattel is entitled to target, and take discovery into, Larian's "unlawful" conduct in any event. Cal. Bus. & Prof. Code § 17200. Larian also concedes that it is at least "partially true" that the interrogatories seek relevant information because Larian's ownership interests are part of his net worth. Opp. at 16:13-16. Indeed, courts routinely compel multiple years' worth of financial data to establish net worth. See Southern Cal. Housing Rights Center v. Krug, 2006 WL 4122148 (C.D. Cal. Sept. 5, 2006) (ordering production of financial documents – including all properties owned in whole or part, profit and loss statements, financial statements and balance sheets – related to defendants' net worth and current assets going back three years).

Larian and his alter egos' financial transactions are central to Phase 2. Dozens of Mattel's allegations and several of its claims are focused on them. The two interrogatories now at issue are directly designed to uncover these transactions, revealing not only evidence but acts of liability. They are highly relevant.

### C. The Interrogatories Are Not Overbroad

Larian's overbreadth objections ignore the nature of the unlawful conduct Mattel has alleged. Mattel alleges not only unlawful financial transactions, but also their concealment.[11] Where defendants have engaged in conduct that obscures their financial condition -- as Mattel has alleged and as the Court has

---

[10] Larian argues that "the Court's Constructive Trust Order did ***not*** impose a constructive trust over the proceeds of the sale of Bratz products," Opp. at 21, but the Court has expressly stated otherwise. See Order After June 15, 2009 Hearing on Accounting Issues ("[T]he scope of the products whose profits are subject to accounting and escrow . . . in light of the Court's Constructive Trust Order, [] includes any and all products that bear the 'Bratz' and 'Jade' trademarks"). Declaration of Young Ra Lee in Support of Mattel, Inc's Reply ("Lee Decl.") filed concurrently, Exh. 1.

[11] See, e.g., TAAC, at 65-66, ¶¶ 119-120, at 68, ¶ 126, Zeller Decl., Exh. 8.

expressly found as to defendants here[12] -- courts allow broad financial inquiries so that accurate information may be obtained. Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 286 (C.D. Cal. 1998) ("The discovery of financial information relevant to a punitive damages claim is permissible under the Federal Rules of Civil Procedure, whether or not such evidence would be admissible at trial"); Floyd-Mayers v. American Cab Co., 1990 WL 116855 (D.D.C. July 30, 1990) (granting motion to compel broad discovery into defendant's finances where defendant's conduct had placed accuracy of information in doubt).  Moreover, as noted in Mattel's Motion (and as Larian does not dispute), the definition of "LARIAN TRUST" is consistent with the breadth of requests the Discovery Master has already compelled.  See Order No. 3, Regarding Motion of Mattel, Inc. to Compel Production of Documents Responsive to the Same Non-Party Subpoenas, dated March 10, 2009, at 29-30 (compelling production of documents relating to any ownership interest by Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them in IGWT Group or IGWT 826 and the dates of such person's affiliation).

Given the nature of the allegations at issue in Phase 2, Larian's overbreadth objections clearly fail.  Thus, it is no answer to point out, as Larian does, that the interrogatories seek information going back to 2005.  Mattel's RICO claims require proof of a pattern of unlawful activity.  See, e.g., Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995) (noting that a valid RICO claim may be proved by establishing prior "long-term criminal conduct"); Halperin v. Berlandi, 114 F.R.D. 8 (D. Mass. 1986) (compelling eight years of prior tax returns because

---

[12] See Court's Omnibus Order, dated April 27, 2009, at 16 (stating that "[g]ood cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights"),  Lee Decl., Exh. 2.

plaintiff's RICO "pattern is best proven by linking as many acts together over as long a period of time as possible"). Far from being overbroad, discovery into financial transactions from a few years ago is proper and necessary.

Larian also argues that Interrogatory No. 1 is overbroad because, hypothetically, it would require him to describe a 2005 transaction in which he purchased and then later sold $2,000 in publicly traded stock. Opp. at 16:21-22. But the interrogatory is already substantially limited to avoid overbreadth. It requests only information from January 1, 2005 to the present and only transactions in excess of $1000. In any event, if Larian acquired $2000 worth of stock in 2005 with profits earned from selling Bratz, and then sold that stock a few weeks later at a 500% profit, that transaction would indeed be directly relevant here, including as a predicate act of money laundering.

Nor is it any answer to assert that the interrogatories are not limited to investments derived from MGA assets, as Larian protests. Opp. at 18-19. Mattel's claims are not so limited -- Mattel's RICO and other claims are alleged against Larian individually, and he is liable for his and his alter egos' unlawful transactions regardless of the source of funding.[13] Thus, even transactions not derived from MGA property -- assuming any such responsive transactions exist -- can constitute not only evidence but acts of liability. Mattel need not phrase its discovery such that Larian's provision of responsive information would be an actual admission of liability -- e.g., an admission that Larian's alter egos' investments were, in fact, made with assets siphoned from MGA; indeed, Larian would complain mightily if the requests had been so defined. Since the information sought here is also relevant to

---

[13] See, e.g., TAAC, at 31-33, ¶¶ 15-20, 60-68, ¶¶ 105-126, Zeller Decl., Exh. 8. Warfield v. AdVnt Biotechnologies, LLC, Slip Op., 2008 WL 4163248 at *3 (D. Ariz. Sept. 5, 2008) ("[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf").

Larian's net worth, Mattel is entitled to information about the transactions regardless of the monies' sources. Discovery is not overbroad merely because some responsive information may not be actionable, as Larian's objection assumes.[14]

## II. THE INTERROGATORIES ARE NOT VAGUE, AMBIGUOUS, OR UNDULY BURDENSOME

Larian concedes the interrogatories themselves are "simple," but argues that the definitions of various terms are too difficult to understand. But Larian is required to respond to the extent possible, even if portions of the interrogatories are purportedly vague or otherwise objectionable. Fed. R. Civ. Proc. 33(b)(1) (a party "shall answer to the extent the interrogatory is not objectionable"). Larian has refused to provide *any* response. For this reason alone, an order compelling responses should issue.

Moreover, Larian's claims of "ambiguities" in the definitions used by Mattel are meritless. In fact, counsel for Larian has propounded interrogatories on Mattel using *identical* definitions to the ones now claimed to be unintelligible. See, e.g., MGA Entertainment, Inc.'s First Set of Phase 2 Interrogatories to Mattel, Inc. (defining PERSON as "all natural persons, partnerships, corporations, joint venture and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control").[15] Similarly, Larian claims Mattel's definition of "IDENTIFY" is confusing, yet it does not approach the length and complexity of the seven-part

---

[14] "In the context of discovery, relevance has a very broad meaning." Del Campo, 2008 WL 4858502, at *4. "Relevance" under Rule 26(b)(1) is defined more broadly than relevance for evidentiary purposes, and discoverable information need not be admissible at trial. Branco v. Life Care Centers of America, Inc. 2006 WL 4484727, at *2 (W.D. Wash. May 6, 2006).

[15] Lee Decl., Exh. 3.

definition for "IDENTIFY" used by Larian's counsel in MGA's First Set of Phase 2 Interrogatories to Mattel, Inc. Id.  Far from justifying his stonewalling, Larian's weak objections to Mattel's definitions illuminate his gamesmanship, and the need for an order compelling compliance.

### A. Interrogatory No. 1 Is Perfectly Understandable.

Larian's only apparent complaint concerning Interrogatory No. 1 is its use of the defined term "OWNERSHIP INTEREST."  Specifically, Larian claims that he cannot understand the meaning of the phrase "may possess." Opp. at 8:22-26.  This frivolous argument should be rejected.  See Pulsecard, Inc. v. Discover Card Servs., Inc., 168 F.R.D. 295, 310 (D. Kan. 1996) (overruling vague and ambiguous objections because "[r]espondents should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories.=").

### B. Interrogatory No. 2 Is Not Vague and Ambiguous

Larian again does not argue that the interrogatory itself is vague or ambiguous, but rather complains that the definition of "LARIAN TRUST" is not sufficiently clear.  "LARIAN TRUST" is defined by the interrogatory as including "the Isaac and Angela Larian Trust, Isaac Larian Grantor Annuity Trust, Angela Larian Grantor Annuity Trust, Larian Family Trust and any other trust of which Isaac Larian is a trustee or of which any member of Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf, subject to its authority and control."[16]  The meaning of "LARIAN TRUST" is readily ascertainable.  At the outset, there can be no argument that the first part of the definition is fully understood by Larian.  After all,

---

[16]  Mattel's First Set of Interrogatories (Phase 2), at 2, Zeller Decl., Exh. 1.

the definition begins by specifically <u>naming</u> certain known trusts. Yet, Larian refuses to answer the interrogatories even as to those. Further, as counsel for Larian postulates, the final clause, "the current or former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf, subject to its authority and control," is intended to capture individuals or entities "acting on [the trusts'] behalf, [or] subject to [the trusts'] authority and control."[17]  Thus, the clause simply makes clear that the interrogatory seeks information concerning not only the named and described trusts, but also all individuals or entities who act (or have acted) on behalf of those trusts.

Regardless, even if there were some ambiguity, Larian is obligated to use common sense and respond to the degree possible. <u>Fed. R. Civ. Proc.</u> 33(b)(1) (a party "shall answer to the extent the interrogatory is not objectionable"); <u>Pulsecard</u>, 168 F.R.D. at 310 (overruling vague and ambiguous objections because "[r]espondents should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories"). Indeed, courts repeatedly have held that such semantic quibbling as Larian's here is not a valid basis for refusing discovery. Courts look "askance at total resistance to discovery predicated upon semantic games." <u>Mead Corp. v. Riverwood Natural Res. Corp.</u>, 145 F.R.D. 512, 516 (D. Minn. 1992) ("Granted that the Interrogatories, read literally, seek disclosure [of nonexistent information], and are to that extent, ineptly phrased; but the Interrogatories should be reasonably interpreted in light of both letter and spirit of the discovery rules"); <u>Monaghan v. SZS 33 Assocs., L.P.</u>, 1992 WL 135821, at *4 (S.D.N.Y. June 1, 1992) ("[Defendant] contends that these documents were not within the scope of the original document demand. Such semantic niceties have no place in federal discovery matters. The documents were arguably within the scope of the request and definitely relevant to the subject matter

---

[17] Opp. at 7:8-10.

involved"). Larian's feigned confusion over part of a definition -- especially one that tracks definitions used by both sides in prior discovery requests -- is no reason to stonewall.

### C. The Interrogatories Are Not Unduly Burdensome

Larian's burden objections are premised solely on the interrogatories' alleged ambiguity and lack of relevance. Opp. at 21:24-25; 22:10-13. For the reasons discussed, those objections fail. In any event, Larian has not produced sufficient evidence to sustain a burden objection. See Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence").[18] There is undoubtedly good reason why Larian has not even tried to meet this burden: he cannot. A person of Larian's means surely has accountants and other professionals who maintain records and statements memorializing the very transactions that Mattel seeks information about.

## III. THE INTERROGATORIES ARE NOT COMPOUND

Pursuant to Fed. R. Civ. P. 33(a), "discrete subparts" of an interrogatory are to be counted as separate interrogatories for purposes of the limits on the number of interrogatories a party may serve. The Discovery Master has repeatedly ruled that interrogatories with subparts are not compound where "the questions in each interrogatory refer to one common theme."[19] Larian's arguments ignore that rule.

Larian argues that through its definitions of IDENTIFY and LARIAN TRUST, Mattel has sought responses to "innumerable discrete questions" about

---

[18] See also Amended Discovery Master Order No. 11, at 16-18 (overruling MGA and Larian's burden objections because the discovery sought was critical to Phase 2 issues, especially in light of "the vast scope of this litigation."). Zeller Decl., Exh. 10.
[19] Amended Discovery Master Order No. 11, at 21. Zeller Decl., Exh. 10.

"numerous, discrete, and unrelated persons and entities."[20] Interrogatory No. 1 seeks the identity of entities owned by Larian since January 1, 2005 and information about those entities. Interrogatory No. 2 seeks the identity of entities owned by the Larian Trusts since January 1, 2005 and information about those entities. Larian suggests that because Mattel seeks different types of information about these entities (name, taxpayer identification number, place of incorporation, ownership interests in, e.g.), the interrogatories contain discrete questions. But the interrogatories clearly address a single, common theme -- what Larian (or his trusts) own or have owned since 2005. The interrogatories simply make clear the level of detail of the information sought.

Indeed, the Discovery Master has rejected comparable "compound" objections previously. For example, the prior Discovery Master outright rejected the argument that interrogatories seeking different types of information referring to one common theme are compound. In that Order, the prior Discovery Master concluded that interrogatories "with subparts seeking facts supporting a contention, the identity of persons with knowledge, and documents are not counted separately for the purposes of applying the . . . interrogatory limit."[21] And the current Discovery Master's Order No. 11, filed March 30, 2009, states explicitly that the fact that "interrogatories ask MGA to identify witnesses, facts and documents . . . does not render the interrogatories compound because the questions in each interrogatory refer to one common theme and count as a single interrogatory."[22]

---

[20] Opp. at 22-24.
[21] See September 5, 2007 Discovery Master Order, at 5-7, Zeller Decl, Exh. 17.
[22] Amended Discovery Master Order No. 11 at 21, Zeller Decl., Exh 10.

## IV. MATTEL MET AND CONFERRED IN GOOD FAITH CONCERNING THE INTERROGATORIES

Larian devotes five pages of his opposition to attacking Mattel's alleged failure to properly meet and confer. Counsel for Mattel and Larian exchanged six letters and two phone calls, far more than a "perfunctory" effort.[23] The purpose of the meet and confer process is to attempt to obtain the discovery sought before resorting to motion practice. Fed. R. Civ. P. 37(a)(1). Mattel genuinely tried to persuade Larian to provide answers -- or even partial answers -- and failed. It was entitled to then ask the Court to intervene, as it now has. The Discovery Master should reach the merits and compel responses.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master: (1) compel Larian to provide full and complete answers to Mattel, Inc.'s First Set of Interrogatories (Phase 2), and (2) to overrule all of Larian's objections to the Interrogatories.

DATED: July 1, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc.

---

[23] A detailed discussion of the meet and confer process is contained in ¶¶ 5-10 of the Lee Decl.