1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13        Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 14     vs. | Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware<br>corporation, | Hon. Stephen G. Larson |
| 16 | DECLARATION OF JON COREY IN<br>SUPPORT OF MATTEL, INC.'S |
| 17        Defendant. | OPPOSITION TO MGA<br>ENTERTAINMENT INC.'S MOTION |
| 18  AND CONSOLIDATED ACTIONS | TO DE-DESIGNATE DOCUMENTS<br>PRODUCED BY MATTEL, INC. AS |
| 19 | "ATTORNEYS' EYES ONLY" IN<br>RESPONSE TO DOCUMENT |
| 20 | REQUEST NOS. 526 AND 528 AND<br>REQUEST FOR SANCTIONS |
| 21 | |
| 22 | Hearing Date:     TBD<br>Time:              TBD |
| 23 | Place:             TBD |
| 24 | Phase 2:<br>Disc. Cut-off:     December 11, 2009 |
| 25 | Pre-trial Conf.:   March 1, 2010<br>Trial Date:        March 23, 2010 |
| 26 | |
| 27 | |
| 28 | |

00505.07975/2993203.2

1  <u>DECLARATION OF JON COREY</u>

2  I, Jon Corey, declare as follows:

3  1.  I am a member of the bar of the State of California and the

4  District of Columbia and a partner at Quinn Emanuel Urquhart Oliver & Hedges,

5  counsel for Mattel, Inc. in this action.  I make this declaration of personal, firsthand

6  knowledge and, if called and sworn as a witness, I could and would testify

7  competently thereto.

8  2.  Attached as Exhibit 1 is a true and correct copy of an April 22,

9  2009 letter I received from Daniel M. Hayes.

10  3.  Attached as Exhibit 2 is a true and correct copy of an April 23,

11  2009 letter from my partner, Diane C. Hutnyan to Daniel M. Hayes.

12  4.  Attached as Exhibit 3 is a true and correct copy of an April 23,

13  2009 letter from Daniel M. Hayes to Diane C. Hutnyan.

14  5.  Attached as Exhibit 4 is a true and correct copy of an April 27,

15  2009 letter from Diane C. Hutnyan to Daniel M. Hayes.

16  6.  Attached as Exhibit 5 is a true and correct copy of an April 27,

17  2009 letter from Daniel M. Hayes to Diane C. Hutnyan.

18  7.  In the April 29, 2009 meet and confer, that Ms. Hutnyan and I

19  participated in, we discussed just the Mexican court files produced on Discs One

20  and Two – which relate to the investigation and prosecution of Machado, Trueba

21  and Vargas for their acts of trade secret theft.  These are the documents identified in

22  counsel for MGA's letters of April 22 and April 23, 2009.  We did not discuss the

23  production on Disc Three, M0923655-M0926800, which are the documents

24  mentioned in MGA's letter of April 27, 2009 letter, other than to say that any

25  meeting of counsel was premature because MGA had not provided a any basis of its

26  position as to why these documents are over-designated.  Counsel for MGA merely

27  demanded re-designation by Mattel.

28

8.    In the April 29, 2009 meet and confer, MGA's position was that the entire body of materials identified in the April 22 and April 23, 2009 letters was improperly designated as "Confidential – Attorneys' Eyes Only," and that they should not be designated as either "Confidential-Attorneys Eyes Only" or "Confidential" under the operative protective order.

9.    In the meet and confer counsel for Mattel advised that all of the documents from the Mexican court file are highly confidential and need to be protected from disclosure because Mexican court records are not public records, as they are in the United States, and access to those records is limited by Mexican law. Counsel for MGA apparently had assumed, without verifying, that Mexico criminal court records are public.  I advised counsel for MGA to confirm with MGA's Mexican counsel the treatment of Mexico criminal court records.  To resolve the matter, we suggested that the parties stipulate to allow the "Confidential - Attorneys' Eyes Only" designation to be used for documents, like the Mexican court files, that have legal restrictions on their disclosure.  We advised counsel for MGA that if they were unable to stipulate to allowing Mexican judicial files to be designated "Confidential - Attorneys' Eyes Only," then Mattel would seek a modification of the Protective Order to accomplish this.

10.    In the meeting of counsel, counsel for MGA offered only a specific time the following day as the sole opportunity for a meet and confer on the production on Disc Three.  Neither I nor my colleague Ms. Hutnyan were available at that time, and counsel for MGA did not offer any alternative time.  No meeting of counsel on Disc Three ever took place.

11.    Attached as Exhibit 6 is a true and correct copy of the Stipulation for Appointment of a Discovery Master, dated December 6, 2005.

12.    Attached as Exhibit 7 is a true and correct copy of Discovery Master Order No. 3, dated March 10, 2009.

Declaration of Jon D Corey

1    13.    Attached as Exhibit 8 is a true and correct copy of the Discovery

2    Master's Order Modifying Protective Order, dated May 15, 2007.

3    14.    Attached as Exhibit 9 is a true and correct copy of the Stipulated

4    Protective Order, dated January 4, 2005.

5    15.    Attached as Exhibit 10 is a true and correct copy of the MGA

6    Parties' Fifth Set of Requests for Production of Documents and Things, dated

7    August 3, 2007.

8    16.    Our records reflect that we received copies of Volumes 9 and 10

9    of the Record of the Criminal Trial 130/2007 on November 12, 2007.

10    17.    On September 7, 2007, MGA produced from its own files may of

11    the documents that Mattel alleges were misappropriated by Machado, Trueba, and

12    Vargas, including but not limited to 0104856-0104973, 0105094-0105104,

13    0105105-0105139, 0105833-0105835, 0105836-0105864, 0105873-0105926,

14    0105947-0105951, 0105955-0105972, 0105973-0105975, 0105976-0105977,

15    0105978-0106094, 0106065-0110278, 0110279-0110294, 0110298-0110299,

16    0110300-0110306, 0110307-0110313, 0110346-0110400, 0110407-0110432,

17    0110524-0110572, 0110573-0110573, 0110593-0110593, 0110607-0110678,

18    0110680-0110688, 0110691-0110699, 0110704-0110704.  MGA designated these

19    documents as "Attorneys' Eyes Only."

20    18.    Mattel produced the first 8 volumes of the Record of the

21    Criminal Trial 130/2007 on July 20, 2007 with the designation "Attorneys' Eyes

22    Only."

23    19.    Mattel produced the files misappropriated by Castilla as

24    M0075253-M0076431 on  February 23, 2007, with the designation "Attorneys' Eyes

25    Only."

26    I declare under penalty of perjury under the laws of the United States of

27    America that the foregoing is true and correct.

28    Executed on July 1, 2009, at Los Angeles, California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Jon Corey

Jon Corey

-4-

Declaration of Jon D Corey

# EXHIBIT 1



# MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 22, 2009

VIA E-MAIL AND U.S. MAIL

Jon D. Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   **Bryant v. Mattel, Inc. – Bates Nos. M0920565 through M0922993**

Dear Mr. Corey,

We have reviewed the documents produced by Mattel, Inc. as Bates Nos. M0920565 through M0922993, which appear to consist entirely of records from judicial proceedings in Mexico, including pleadings submitted by counsel for Messrs. Vargas, Machado, and Ms. Trueba. All of the documents have been designated "Attorneys' Eyes Only."

Under the terms of the protective order, "[t]he designation of information as 'CONFIDENTIAL – ATTORNEYS' EYES ONLY' shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure." Given that there is no basis for designating these *court records* as "Attorneys' Eyes Only," the designation appears to have been made in bad faith.

Please either inform us in writing that the "Attorneys' Eyes Only" designation is withdrawn as to these documents, or meet and confer with us regarding the designation no later than April 29, 2009. In the event you neither withdraw designation or meet and confer before April 29, we will file a motion to have the designation removed and seek sanctions.



11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

## MITCHELL SILBERBERG & KNUPP LLP

Jon D. Corey
April 22, 2009
Page 2

We are continuing to review the recent production and will notify you if there are any other improper designations.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb

EXHIBIT ___1___
PAGE ___6___

# EXHIBIT 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 23, 2009

VIA FACSIMILE AND E-MAIL

Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683

Re:     Mattel v. MGA Entertainment, Inc., et al.

Dear Daniel:

Thank you for your April 21, 2009 letter to Jon Corey regarding the designation of documents
Mattel produced as M0920565 through M0922993 as "Attorneys' Eyes Only."

I am available to meet and confer with you about this on Monday, April 27 to see if a resolution
to this issue can be reached.  Would 4:00 p.m. work for you?

Sincerely,

*[signature]*

Diane C. Hutnyan

cc:  Jason Russell, Esq.
     Amman Khan, Esq.

EXHIBIT ___2___
PAGE ___7___

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**CHICAGO**
250 South Wacker Drive, Suite 230
Chicago, IL 60606
(312) 463-2961
Facsimile: (312) 463-2962

**LONDON**
16 Old Bailey
London EC4M 7EG United Kingdom
+44(0) 20 7653 2000
Facsimile: +44(0) 20 7653 2100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052 Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**    April 23, 2009                    **NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Daniel M. Hayes, Esq.<br>Mitchell, Silberberg & Knupp LLP | 310.312.2000 | 310.312.3100 |
| cc   Jason Russell, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |
| cc   Amman Khan, Esq.<br>Glaser, Weil, Fink, Jacobs & Shapiro LLP | 310.553.3000 | 310.556.2920 |

**FROM:**    Diane C. Hutnyan

**RE:**    Cater Bryant v. Mattel



**MESSAGE:**

PLEASE SEE ATTACHED CORRESPONDENCE.

07975/2809376.1

| CLIENT # | 07975 | ROUTE/<br>RETURN TO: | Tiffany Garcia - 3 | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | Jorge Vega | | CONFIRMED? | ☐ NO   ☐ YES: _____ |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT __2__

PAGE __8__

# EXHIBIT 3



**MITCHELL SILBERBERG & KNUPP LLP**

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 23, 2009

**VIA E-MAIL AND U.S. MAIL**

Diane C. Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

**Re:   Bryant v. Mattel, Inc.**

Dear Ms. Hutnyan,

We have continued our review of the documents recently produced by Mattel, Inc., and have now reviewed the documents produced as Bates Nos. M 0922994 through M 0923654. As with Bates Nos. M 0920565 through M 0922993, these document appear to consist of more court records from judicial proceedings in Mexico, and they all have been designated "Attorney's Eyes Only." As already stated in my letter yesterday to your colleague, Jon Corey, there is no basis for this indiscriminate designation, and it appears to have been made in bad faith. In this set, you even marked emails to and from MGA Entertainment, Inc. employees "Attorneys' Eyes Only," documents which by no stretch of the imagination warrant attorney's eyes only protection.

I received your letter indicating your availability on Monday, April 27 at 4:00 p.m. to meet and confer regarding Mattel's improper designation of Bates Nos. M 0920565 through M 0922993 as "Attorneys' Eyes Only." I am available at that time. It would be efficient if we could also discuss Bates Nos. M 0922994 through M 0923654 as well. Please confirm you will be prepared to do so on Monday.

I hope we can resolve these issues without motion practice, but, as I stated in my letter yesterday to Mr. Corey, if you do not withdraw the designation, we will file a motion to have it removed and seek sanctions.

EXHIBIT __3__
PAGE __9__

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: WWW.MSK.COM

MITCHELL SILBERBERG & KNUPP LLP

At the risk of being repetitive, I renew my invitation to you to simply withdraw the improper designation now, given its obvious impropriety.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb

EXHIBIT 3
PAGE 10

# EXHIBIT 4

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 27, 2009

<u>VIA FACSIMILE AND E-MAIL</u>

Daniel M. Hayes, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683

Re:   <u>Mattel v. MGA Entertainment, Inc., et al.</u>

Dear Mr. Hayes:

I am in receipt of your April 23 letter raising an issue as to Mattel's designation of Bates-
numbered documents M0922994 through M0923654.  We agree that it makes sense to discuss
this issue, and the issue raised in your April 22 letter as to Bates-numbered documents
M0920565 through M0922993, at the same time. However, we need some more time to prepare
for a meaningful meet-and-confer discussion on all the documents and suggest delaying that
discussion by a couple of days to allow us to do that.  Are you available on Wednesday
afternoon, April 29, for such a call?  That is, as you acknowledged in your letters, within the time
period accorded us for meeting and conferring as to all the issues you raised.  Please let me know
at your earliest convenience.

Sincerely,

Diane C. Hutnyan

cc:  Amman Khan, Esq.

EXHIBIT __4__
PAGE __11__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

# EXHIBIT 5

APR 2 9 2009

# MITCHELL SILBERBERG & KNUPP LLP

A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

## MS&K

Daniel M. Hayes
Attorney-at-Law
(310) 312-3216 Phone
(310) 231-8436 Fax
dmh@msk.com

April 27, 2009

**VIA E-MAIL AND U.S. MAIL**

Diane C. Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

**Re:    Bryant v. Mattel, Inc.**

Dear Ms. Hutnyan,

I received your letter today requesting that we continue our meet and confer conversation until
Wednesday afternoon, April 29. We will do so only if you are prepared to tell us exactly what
documents you feel warrant "Attorney's Eyes Only" designation, if any, and why. We have
continued our review of the documents that Mattel, Inc. recently produced, and do not believe
any of the documents labeled Bates Nos. M 0920565 through M 00926800 warrant "Attorney's
Eyes Only" designation.

I am available at 4:00 p.m. on April 29, please confirm that works for you and that you will be
prepared to identify those specific documents you believe warrant "Attorney's Eyes Only"
designation.

Regards,

Daniel M. Hayes
MITCHELL SILBERBERG & KNUPP LLP

DMH/mb
cc:    Amman Khan (via email only)

EXHIBIT ___5___
PAGE ___12___

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

# EXHIBIT 6

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemnauel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8   [Additional counsel listed on following page]

9

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,        )   Case No. CV 04-09049 SGL (RNBx)
                                         )
13              Plaintiff,               )   Consolidated with
                                         )   Case No. CV 04-09059
14        v.                             )   Case No. CV 05-02727
                                         )
15  MATTEL, INC., a Delaware             )   STIPULATION FOR APPOINTMENT
    corporation,                         )   OF A DISCOVERY MASTER; AND
16                                       )
                Defendant.               )   [PROPOSED] ORDER
17                                       )
                                         )   Discovery Cutoff Date:  Not Set
18  ──────────────────────────────       )   Trial Date:  Not Set

19

20

21

22

23

24

25

26

27

28

EXHIBIT __6__
PAGE __13__

1   LITTLER MENDELSON
        Robert F. Millman (Bar No. 062152)
2       Douglas A. Wickham (Bar No. 127268)
        Keith A. Jacoby (Bar No. 150233)
3   2049 Century Park East, 5th Floor
    Los Angeles, California 90067-3107
4   Telephone:  (310) 553-0308
    Facsimile:  (310) 553-5583
5
    Attorneys for Carter Bryant
6
    O'MELVENY & MYERS LLP
7       Diana M. Torres (Bar No. 162284)
    400 S. Hope Street
8   Los Angeles, California 90017
    Telephone:  (213) 430-6000
9   Facsimile:  (213) 430-6407

10  O'MELVENY & MYERS LLP
        Dale Cendali
11  Times Square Tower
    7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
        Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
    Los Angeles, CA 90067
15  Telephone:  (310) 553-3000
    Facsimile:  (310) 556-2920
16
    Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __6__
PAGE ___14___          - 2 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1    WHEREAS, the parties are in agreement that a discovery master should be
2  appointed in this matter to resolve any discovery disputes and to minimize the
3  burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5  (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7  trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8  Inc., by and through their respective counsel of record, hereby stipulate and agree as
9  follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-
11  effective discovery and to minimize the burden of discovery disputes upon the
12  Court.  Any and all discovery motions and other discovery disputes in the above
13  captioned action shall be decided by a master ("Discovery Master") pursuant to
14  Federal Rule of Civil Procedure 53.  Any motions currently pending before
15  Magistrate Judge Block shall be transferred to the Discovery Master.  The moving
16  party shall provide to the Discovery Master all papers associated with each pending
17  motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His
19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20  94111.

21    3.    Judge Infante shall serve as the Discovery Master until all issues herein
22  have been finally disposed of or determined, or until he shall withdraw in
23  accordance with applicable law.  If at any time he becomes unable to serve as the
24  Discovery Master, the parties shall confer to present an alternative agreed-upon
25  designee to the Court.  In the event that the parties cannot agree to an alternate
26  designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and
28  place for all hearings determined by the Discovery Master to be necessary; to


EXHIBIT __6__
PAGE __15__

-3-

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1 | preside over hearings (whether telephonic or in-person); to take evidence in
2 | connection with discovery disputes; to issue orders resolving discovery motions
3 | submitted to the Discovery Master; to conduct telephonic conferences to resolve
4 | discovery disputes arising during depositions; to issue orders awarding non-
5 | contempt sanctions, including, without limitation, the award of attorney's fees, as
6 | provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7 | recommendations, as appropriate.

8 |      5.    All discovery disputes shall be resolved by motion (except those arising
9 | during a deposition which the Discovery Master determines can be resolved by
10 | telephonic conference during the deposition). The moving party shall first identify
11 | each dispute, state the relief sought, and identify the authority supporting the
12 | requested relief in a meet and confer letter that shall be served on all parties by
13 | facsimile or electronic mail. The parties shall have five court days from the date of
14 | service of that letter to conduct an in-person conference to attempt to resolve the
15 | dispute. If the dispute has not been resolved within five court days after such
16 | service, the moving party may seek relief from the Discovery Master by formal
17 | motion or letter brief, at the moving party's option. The opposing party shall have
18 | five court days from the date of service of the motion or letter brief to submit a
19 | formal opposition or response. Any reply brief or letter brief shall be served within
20 | three court days from the date of service of a formal opposition or response. The
21 | hearing on the motion shall take place within five court days of the service of any
22 | reply brief or letter unless (a) the parties agree to another hearing date or agree that
23 | no hearing is necessary; (b) the Discovery Master determines that no hearing is
24 | necessary; or (c) the Discovery Master is not available, in which case the hearing
25 | shall take place on the Discovery Master's first available date. The foregoing shall
26 | not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27 | seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28 | dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT __12__
PAGE __16__

-4-

1  prejudiced absent prompt resolution.  Service of any document by fax or electronic

2  mail prior to 6:00 p.m. shall constitute service on that day.

3       6.     The Discovery Master's orders resolving discovery disputes, reports, or

4  recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a

5  Magistrate Judge of the United States District Court.  The Discovery Master shall

6  file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve

7  the parties within five court days of his/her decision on a matter.

8       7.     A court reporter shall transcribe any hearing or other proceeding before

9  the Discovery Master.

10       8.     The cost of any proceeding before the Discovery Master, including the

11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or

12  other proceedings before the Discovery Master, and the fees of any other person

13  necessary to the efficient administration of the proceeding before the Discovery

14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,

15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,

16  the Discovery Master Orders otherwise.  By agreeing to share costs among the

17  parties, no party waives its right to seek recovery or reimbursement for such costs

18  from any other party.

19       9.     The Discovery Master shall be compensated according to his regular

20  hourly rate of $750.

21       10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery

22  Master shall proceed with all reasonable diligence.

23       11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to

24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not

25  aware that he has a relationship to the parties, to counsel, to the action, or to the

26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and

27  based thereon the parties expressly waive any ground for disqualification disclosed

28  therein of Hon. Edward A. Infante to serve as master in these proceedings.



EXHIBIT ___6___
PAGE ___17___

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1    12.    The Discovery Master shall not have ex parte communications with the

2 Court, a party or counsel.

3    13.    The Discovery Master shall preserve and maintain all documents and

4 materials submitted by the parties as well as all orders, reports, and

5 recommendations issued by the Discovery Master. These documents, materials,

6 orders, reports and recommendations shall be the record of the Discovery Master's

7 activities, and shall be maintained in chronological order until the Discovery Master

8 is informed by the parties that all issues herein have been finally disposed of and

9 determined.

10    14.    The Discovery Master is hereby authorized to receive and consider

11 information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-

12 ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective

13 Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

14    15.    All third parties subject to discovery requests or deposition in this

15 litigation shall be bound by the terms of this Stipulation and Order.

16

17 Dated: November 22, 2006          O'MELVENY & MYERS LLP

18

19                                  By: _____

20                                      Diana Torres
                                        Attorneys for MGA Entertainment, Inc.

21

22 Dated: November 29, 2006          LITTLER MENDELSON

23

24                                  By: _____

25                                      Douglas A. Wickham
                                        Attorneys for Carter Bryant

26

27

28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 6 -

EXHIBIT 2
PAGE 18

1    Dated: ~~November~~ December 4, , 2006      QUINN EMANUEL URQUHART
                                          OLIVER & HEDGES, LLP

2

3                                        By: _____

4                                          Jon D. Corey
                                         Attorneys for Mattel, Inc.

5

6                                     **ORDER**

7        The foregoing Stipulation for Appointment of a Discovery Master is SO

8 ORDERED.

9

10 Dated: _____

11                                 Hon. Stephen G. Larson
                                United States District Court Judge

12

13

14                         **CONSENT OF DISCOVERY MASTER**

15        If appointed by the Court, I, the undersigned, consent to serve as Discovery

16 Master in the above referenced proceeding consistent with this Order.

17

18 Dated: 12-5-06                  _____
                                   Hon. Edward A. Infante (Ret.)

19

20

21

22

23

24

25

26

27

28

EXHIBIT 6
PAGE 19

                           -7-

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

| | |
|---|---|
| **Keith A. Jacoby, Esq.** | **Diana M. Torres, Esq.** |
| **Douglas Wickham, Esq.** | **O'Melveney & Meyers** |
| **Littler Mendelson** | 400 S. Hope Street |
| **A Professional Corporation** | Los Angeles, CA 90071 |
| 2049 Century Park East, 5th Floor | Phone: 213-430-6000 |
| Los Angeles, California 90067-3107 | **Fax: 213-430-6407** |
| Phone: 310-553-0308 | |
| **Fax: 310-553-5583** | |

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[X]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

Signature

EXHIBIT 6
PAGE 20

# EXHIBIT 7

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11

12  CARTER BRYANT, an individual,    Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                     **Consolidated with**
14          v.                       **Case No. CV 04-09059**
                                     **Case No. CV 05-2727**
15  MATTEL, INC., a Delaware
    corporation,                     **PHASE II DISCOVERY MATTER**
16
                Defendant.           **ORDER NO. 3, REGARDING:**
17
                                     **(1) MOTION OF MGA**
18                                   **ENTERTAINMENT, INC.,**
                                     **ISAAC LARIAN AND MGA**
19                                   **ENTERTAINMENT (HK)**
                                     **LIMITED TO QUASH**
20                                   **NON-PARTY SUBPOENAS; and**

21                                   **(2) MOTION OF MATTEL, INC.**
                                     **TO COMPEL PRODUCTION OF**
22                                   **DOCUMENTS RESPONSIVE TO**
                                     **THE SAME NON-PARTY**
23                                   **SUBPOENAS**

24
25  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
26  MGZ ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  7
PAGE  27

1        This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009.  All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions.  The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.    INTRODUCTION**

13

14       **A.    The Court's February 11, 2009 Ruling**

15       On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties.  During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21       In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all."  (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10).  Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling.  (Tr., 101:12 – 17).  In response, the Court

28   stated:



EXHIBIT 7
PAGE 22

Then the question becomes – and this is a question for the
Discovery Master, not for this Court – whether or not the
discovery is related to Phase 2. If it is, it is. I'm not going to
pass any judgment whatsoever. I'm going to leave that
completely up to the Discovery Master. ... The question for the
[D]iscovery [M]aster will be whether or not the disputed
discovery request is related or relevant to the trial that has now
been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in
deciding the motions relating to the Subpoenas, the Discovery Master should
consider whether there is a nexus between the information sought by the
Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial
in March 2010, on the other hand. If the information sought by the Subpoenas is, to
use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]
trial," then that information could potentially be the subject of appropriate
discovery requests by Mattel.[1]

**B.     Information Sought By The Subpoenas**

The information sought by Mattel's Subpoenas falls into two broad
categories. First, Mattel seeks documents from third parties Omni 808 Investors,
LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing
Entities") involving, among other things, their internal ownership and operations
and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
claims, (*Id.*, pp. 18 - 24 and 24 - 25). However, Mattel also argued that the information sought might be appropriate
regardless of any nexus to Phase 2. (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant
to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
the Phase 2 trial.

EXHIBIT ____7____
PAGE ____23____

1    "Financing Discovery"). Based on the information presented at the February 11,

2    2009 hearing and in connection with the pending motions, it does not appear that

3    either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4    an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5         Second, Mattel seeks documents from third parties IGWT Group, LLC and

6    IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7    MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8    "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9    owned and/or controlled by Larian. (*See, e.g.*, MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13   **II.    MGA's Motion To Quash**

14        Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17        **A.    Legal Standard**

18        As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24   ───────────────
     [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
     does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26   legitimate Phase 2 issue, seek to obtain this information from MGA.

     [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including
27   that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
     that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28   of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                               - 4 -                    ORDER NO. 3
                                                           [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___24___

1   with the subpoena would be unreasonable and oppressive" (internal quotations

2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3   burden of proving that a subpoena is oppressive is on the party moving to quash];

4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5   burden is on the movant to establish that a subpoena duces tecum should be

6   quashed]). "The burden is particularly heavy to support a 'motion to quash as

7   contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8   of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9   supported by two affidavits]).

10   **B.    Arguments Made By MGA In Support Of Its Motion To Quash**

11   The sole argument set forth in MGA's Motion to Quash is that the Court's

12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13   information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14   But that argument fails for the reasons set forth above. The Court made it clear at

15   the hearing on February 11, 2009 that:

16   > There is no stay on discovery. Period. . . . . [The forensic auditor
17   > appointed by the Court] is acting at the Court's discretion to
18   > inform the Court of information. . . . That's an entirely separate
     > matter. And I have not stayed any discovery and there should be
19   > no reliance on that. If that was misunderstood, it's clarified now.

20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21   Recognizing that its only argument has been rejected by the Court, MGA

22   argues for the first time in its Reply that its Motion to Quash should be granted

23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25   However, MGA did not make this argument in its opening brief. It instead declared

26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27   is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28   subject discovery until the filing of its Reply, the Discovery Master declines to

EXHIBIT    7
PAGE    25

1   consider the argument in connection with the Motion to Quash.

2       The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers. A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond. This rule is routinely adhered to by courts in the Ninth

7   Circuit. (*See, e.g., United States v. Boyce,* 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.,* 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox,* 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13       Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17   below).

18       Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.,* 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

25

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

27

28

EXHIBIT __7__
PAGE __26__

## III.   Mattel's Motions To Compel

### A.   The Purported Procedural Defects Barring Mattel's Motions To Compel

MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

#### 1.   The Court's January 7, 2009 Order

As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

#### 2.   Local Rule 37

The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case. Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6] Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

EXHIBIT ___7___
PAGE ___27___

1    "all third parties subject to discovery requests . . . in this litigation shall be bound
2    by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that
3    order applies to the Financing Entities as well as the Transferee Entities, and its
4    procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

5              **3.    Local Rule 11-6 And Paragraph 4(b) Of The Court's**
6                       **Standing Order**

7         The Financing Entities and MGA further argue that Mattel's Motion to
8    Compel should be denied because it exceeds the page limitations set forth in Local
9    Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing
10   Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to
11   Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.
12   The Discovery Master Order (not the Local Rules or the Court's Standing Order)
13   governs discovery disputes in this case, and it does not impose any page limit on
14   such motions.[7] In fact, the Discovery Master Order dispenses with the formatting
15   requirements of the Local Rules in certain ways, such as allowing letter briefs, and
16   even permits the parties to agree to alternative procedures, including, presumably,
17   filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.
18   4). Thus, while the Discovery Master encourages the parties to be as efficient as
19   possible in their briefing, he recognizes that briefs in excess of 25 pages are either
20   directly permitted under the Discovery Master Order (since no page limitation was
21   imposed by the Court) or implicitly allowed (since the parties may agree to
22   alternate procedures). He further recognizes that the complex nature of this case
23   may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

24
25   [7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to
     compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30
26   pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the
     Transferee Entities and the Financing Entities.

27   [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25
     pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA
28   Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              - 8 -                    ORDER NO. 3
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  7
PAGE   28

1   these reasons, filings in excess of 25 pages are permitted.[9]

2   **4.   Local Rule 6-1**

3   The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4).   Therefore, Local Rule 6-1 has no

9   applicability here.

10   **5.   Failure To Name MGA In The Motion To Compel**

11   MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18).   But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena.   In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21   **6.   Mattel's Separate Statement**

22   MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19).   Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   ───────────────

28   [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT   7

PAGE   29

1  sets forth the various contentions of the parties, even if the information regarding

2  the various requests happens to be repetitive.  Regardless, MGA has not cited any

3  legal authority in support of its position and the Discovery Master finds no reason

4  to dispose of Mattel's Motion to Compel merely because it filed a separate

5  statement that contains duplicative arguments.[10]

### 7.    Meeting And Conferring

7      As their final procedural argument in opposition to the Motion to Compel,

8  the Transferee Entities and the Financing Entities assert that the motion should be

9  denied because Mattel failed to adequately meet and confer prior to filing the

10  motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

### a.    Applicable Procedure

13      Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

> moving party shall first identify each dispute, state the relief
> sought, and identify the authority supporting the requested relief
> in a meet and confer letter that shall be served on all parties by
> facsimile or electronic mail.  The parties shall have five court
> days from the date of service of that letter to conduct an in-person
> conference to attempt to resolve the dispute.  If the dispute has
> not been resolved within five court days after such service, the
> moving party may seek relief from the Discovery Master by
> formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27  ─────────────────

[10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28  separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____7____
PAGE ____30____

**b.    Mattel's Meet And Confer Regarding The Financing Entities**

In challenging Mattel's meet and confer effort, the Financing Entities first claim that Mattel violated the Discovery Master Order because no "in-person meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel, p. 8). But that argument is without merit, since Mattel and the Financing Entities agreed to an alternative procedure that disposed of the in-person meet and confer requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the Transferee Entities and counsel for the *Financing Entities* a letter on January 23, 2009 memorializing the parties' agreement and establishing a schedule whereby the parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10; Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing Entities' counsel received this letter and acted in accordance with its terms is evidenced by, among other things, the fact that they served objections to the Subpoenas on January 28, 2009 (which was the deadline specified in the January 23 letter) and started meeting and conferring with Mattel's counsel telephonically on January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing Entities in person since the parties had agreed to waive that obligation.

Nevertheless, Mattel still had an obligation to meet and confer with the Financing Entities in good faith. Good faith cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 7
PAGE 31

1  Proc. 37(a)(1)).

2      Because the evidence and declarations submitted by Mattel and the Financing

3  Entities are in conflict regarding what transpired during their respective meet and

4  confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5  Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6  February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7  doubt and concludes that it adequately met and conferred with respect to Omni 808

8  Investors, LLC and Vision Capital, LLC.

9      By contrast, Mattel arguably did not even begin the meet and confer process

10  with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11  for the Financing Entities informed Mattel that they did not receive that Subpoena

12  until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13  date.  (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5).  No

14  "good faith" meeting could therefore have taken place.

15      Although the meet and confer with respect to OmniNet Capital, LLC was

16  inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17  Motion to Compel in all respects, including concerning the Subpoena served on

18  OmniNet Capital, LLC.  The Discovery Master does so for purposes of efficiency

19  (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20  LLC are essentially identical to those that must be addressed in connection with the

21  subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22  because addressing the merits of the motion does not alter the outcome.[12]

23          **c.      Mattel's Efforts To Meet And Confer Regarding The**

24                   **Transferee Entities**

25      Like the Financing Entities, the Transferee Entities contend that Mattel's

26  motion to compel should be denied because it did not meet and confer in good faith.

27

28  ---
[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a
good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                    ORDER NO. 3
                              - 12 -           [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___32___

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process. (*Id.*). In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8       **B.**     **Legal Standard Governing Enforcement Of The Subpoenas**

9       Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . .. The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18       The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden. Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

EXHIBIT 7
PAGE 33

1    Moreover, the Federal Rules distinguish between discovery from non-parties
2  to a lawsuit (governed under Rule 45) and discovery from parties (governed
3  generally by Rule 26), based in part on the recognition that the former is inherently
4  more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*
5  *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is
6  significant when determining whether compliance with a discovery demand would
7  constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984
8  F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party
9  is one factor that the Court may weigh in determining whether the discovery
10  requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45
11  have interpreted these rules to afford non-parties special heightened protection
12  against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*
13  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).
14    Accordingly, requests for documents that pertain to a party and that can be
15  more easily and inexpensively obtained from that party also impose an undue
16  burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).
17  Further, if the documents sought are neither relevant nor calculated to lead to the
18  discovery of admissible evidence, "then any burden whatsoever imposed upon the
19  non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*
20  *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).
21    Each of the moving parties bears the burden of establishing the basis for the
22  relief it seeks. As the party moving to compel compliance with the Subpoenas,
23  Mattel bears the burden of "establishing that the information sought is relevant and
24  necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*
25  *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).
26    Finally, in deciding whether to enforce a subpoena, the Discovery Master
27  must balance "the relevance of the discovery sought, the requesting party's need,
28  and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __7__
PAGE __34__

1  *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2  *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3      **C.**    **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4      As its first ground for moving to compel production of the documents sought

5  by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6  making it necessary and appropriate for Mattel "to obtain an accurate understanding

7  of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8  Mattel, MGA's supposed misrepresentations have placed its financial condition at

9  issue, and have opened the door to discovery of any information bearing on MGA's

10  finances.  (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone.*"] (emphasis added)).

12      However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19      Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected. Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23      Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties*. Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____7____
PAGE ___3 5___

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

5    **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6    **Phase 2**

7    **1.    Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10    **a.    Mattel's RICO Counterclaim**

11    Mattel first asserts in its Motion to Compel that the discovery it seeks is

12    relevant to its RICO counterclaim because "Mattel alleges that the counter-

13    defendants have operated a widespread criminal enterprise that has engaged in

14    numerous acts of mail and wire fraud and other predicate acts in violation of the

15    RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16    non-operating entities" is "a continuation of that pattern of racketeering activity."

17    (Motion, p. 18).

18

---

19    [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
20    them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8).  However, a decision on that application has
been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
21    Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
parties.

22    [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
23    (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is
24    based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*
Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
25    Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As
for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
26    appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to
when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines
27    to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to
strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
28    unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___36___

1       But Mattel's allegations in support of its RICO counterclaim turn on

2   misappropriation of trade secrets and confidential information, and make no

3   mention of improper transfers of funds or any other predicate act similar to MGA's

4   purported business transactions with any of the Financing Entities.[15]  Accordingly,

5   these financial transactions are not a "continuation" of the "pattern" of conduct

6   Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7   *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8   RICO claimant must show "[a]n interrelationship between acts, suggesting the

9   existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17       At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

---

[15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises because they are "designed to and did unlawfully acquire the confidential business information and property of Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-defendants "schemed to defraud Mattel and steal its property and trade secret information"].

EXHIBIT ___7___
PAGE ___3 7___

1    transactions Mattel seeks to investigate here.[16]

2         Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10        In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16             **b.    Mattel's Disgorgement Remedy**

17        Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   _____

     [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
23   (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
     among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
24   Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
     engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
25   this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
     various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
26   depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
     nature, source and location – that is, by transferring funds between defendants and between various accounts
27   maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
     appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
28   not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
     with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 18 -              ORDER NO. 3
                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___39___

> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of the Financing Entities is alleged to have "received money that properly belonged to Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of MGA. Therefore, Mattel has not demonstrated how any of the categories of documents sought from the Financing Entities would aid it in ascertaining the amount defendants must disgorge.

### c.    Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they "seek documents relevant to MGA's financial condition" and other "factors relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22). Depending on the particular scope of the document request, such discovery from Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages).[17] As the Court noted in its February 11, 2009 ruling:

> I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    7
PAGE    39

1    financial condition of the company as it relates to damages in the
     Phase 2 and also issues that the receiver is looking at.  And
2    without making a ruling on any of this, I would not suggest for a
     moment that these are mutually exclusive categories.
3
     (Tr., 101:3 - 8)
4
5        Mattel argues that the necessary connection between the Financing

6    Discovery and Phase 2 damages exists because the Financing Entities have acquired

7    a security interest in MGA's assets, which, in turn, affects MGA's financial

8    condition.  Specifically, Mattel argues that Omni 808 Investors, LLC is:

9         directly involved in providing funding to MGA in exchange for a
          security interest.  Such funding, and security interests, are in and
10        of themselves directly relevant to the financial condition of the
          MGA Parties, including the amount of the security interests, the
11        terms and conditions of the funding, and the rate of funding. . . .

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   _____
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase I trial.  (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86).  The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

     [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP                                                          ORDER NO. 3
ATTORNEYS AT LAW                          - 20 -              [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT    7
PAGE    90

1    would require the Financing Entities to produce virtually every document in their

2    possession regarding their formation, operations, and history of transactions.

3    Among other things, the Subpoenas to the Financing Entities seek:

4         •    All records that "substantiate transfers of assets" by the Financing

5              Entities "to other entities, individuals, and/or parties, within the U.S.

6              and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7              of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8              Motion To Compel Production of Documents Responsive to Third-

9              Party Subpoenas, Attachment A, ¶ 16);

10        •    All documents "detailing or setting forth the relationship" between

11             each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12        •    All documents referring or relating to the "all contributions, loans and

13             any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14        •    All documents referring or relating to the "source of funding" of other

15             non-parties (*Id.* at ¶ 16);

16        •    All documents showing detail of "all loan facilities" referring or

17             relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18        •    All documents referring or relating to "transactions involving any

19             compensation, loans, advances, payments, fees or any other form of

20             consideration" paid to other non-parties (*Id.* at ¶ 15);

21        •    All "communications" referring or relating to the Financing Entities

22             and other non-parties (*Id.* at ¶ 17).

23        Accordingly, the Discovery Master concludes that most of the categories of

24   documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25   the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26   Section IV below (entitled "Disposition").

27   //

28

EXHIBIT 7
PAGE 91

d.     **Credibility Of MGA Witnesses**

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses.  To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20]  Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*)  But that is the full extent of Mattel's argument.  Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.,* 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance,* 164 F.R.D. 493, 495 (C.D. Cal. 1995)).  If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."])  But Mattel has not taken any steps to connect its discovery to such evidence.  As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence.  Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

EXHIBIT 7
PAGE 42

1   linking those categories of documents to prior or anticipated testimony of MGA's

2   witnesses. Simply stating that credibility evidence is discoverable does nothing

3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4   here is reasonably calculated to lead to the discovery of such evidence.

### e.     MGA's Unclean Hands

6          Mattel next argues in its Motion to Compel that MGA has asserted an

7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9   sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.) But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16         Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     7
PAGE     43

1    1996)).

2        Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA).  Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11               **f.     Mattel's Unfair Competition Counterclaim**

12        As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone

17   Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all.  Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

EXHIBIT ___7___
PAGE ___44___

1           **g.**    **Summary Of The Discovery Master's Findings With**

2                   **Respect To The Subpoenas Directed To The Financing**

3                   **Entities**

4       For the foregoing reasons, the Discovery Master finds that, based on the

5   record before him, Mattel has failed to sufficiently articulate the necessary

6   connection between most of the Financing Discovery and any Phase 2 issue.

7   Moreover, while there is a connection between the Financing Discovery and some

8   of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9   Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10   Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11   discovery is permissible in light of the case law interpreting Rules 26 and 45.

12       Accordingly, Mattel's motion to compel the Financing Entities to comply

13   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14           **2.**    **Subpoenas To The Transferee Entities**

15       In their briefs regarding the enforceability of the Subpoenas, Mattel and

16   MGA do not, as a general rule, make a distinction between the Financing Entities

17   and the Transferee Entities, but rather direct the same arguments to both groups

18   collectively. However, there are important distinctions between the two groups,

19   including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20   with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21   sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22   pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23   documents relevant to Phase 2 issues which presumably cannot be obtained from

24   MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25   parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas

26   directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27   parties' above-referenced arguments differs, as follows.

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___45___

### a.   Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.   Relevance To Phase 2 Issues

#### 1.   Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately



EXHIBIT __7__
PAGE __9 b__

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.    Mattel's Unfair Competition Counterclaim**

7        Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10  Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11  practice within the meaning of the Unfair Competition Law and the scope of

12  Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13  imposes a constructive trust on the proceeds of MGA's sale of the subject

14  inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15  Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16  Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17  such conduct would constitute an unlawful attempt to circumvent the Court's order

18  and arguably render the transaction between MGA and the Transferee Entities an

19  anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20  manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21  could violate the Unfair Competition Law.

22       Moreover, although Mattel asserted its counterclaim for violation of the

23  Unfair Competition Law prior to the alleged misconduct (and long before the

24  Transferee Entities came into existence), Mattel phrased its allegations broadly

25

---

26  [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the
27  Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
28  spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   7
PAGE   97

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples.  (Counterclaims, p. 74, ¶ 165).

8       Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11   will seek (and the Court permit) amendment of the counterclaim to expressly

12   reference such alleged misconduct.  Nevertheless, in light of the fact that the

13   discovery need only appear reasonably calculated to lead to the discovery of

14   admissible evidence, the Discovery Master finds that certain aspects of the

15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16           **c.    Summary Of The Discovery Master's Findings With**

17                   **Respect To The Subpoenas Directed To The**

18                   **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently

20   articulated a connection between some of the Transferee Discovery and its Phase 2

21   claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.   Disposition**

24       1.    The Motion to Quash filed by MGA is **DENIED**.

25       2.    Mattel's Motion to Compel the Financing Entities to produce

26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27   Capital, LLC and Vision Capital, LLC.

28       3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

EXHIBIT    7
PAGE    78

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and
2   **DENIED** in part, as follows:

3          a.      Requests 1 through 3, 13, 15, and 17:  The Motion is granted
4   with respect to documents relating to (1) the existence of any debt owed by MGA
5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased
6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,
7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied
8   regarding any other documents sought by these requests.

9          b.      Requests 4 through 12, 14 and 18:  The Motion is denied.

10     4.      Mattel's Motion to Compel the Transferee Entities to produce
11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to
12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13     5.      Mattel's Motion to Compel the Transferee Entities to produce
14  documents responsive to the Subpoenas is **GRANTED,** as follows:

15                          **Subpoena To IGWT Group LLC**

16         a.      Request 1:  The Motion is granted with respect to documents
17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,
18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,
19  or their spouses, or any entity or person affiliated with them.

20         b.      Request 2:  The Motion is granted

21         c.      Request 3:  The Motion is granted with respect to documents
22  relating to any ownership interest by Larian, his spouse, his children, his siblings,
23  or their spouses, or any entity or person affiliated with them.

24         d.      Request 4:  The Motion is granted with respect to documents
25  relating to any sources of funding by Larian, his spouse, his children, his siblings,
26  or their spouses, or any entity or person affiliated with them.

27         e.      Request 5:  The Motion is granted with respect to documents
28  relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___99___

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3          f.     Request 7: The Motion is granted.

4             **Subpoena To IGWT 826 Investments LLC**

5          a.     Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9          b.     Request 2: The Motion is granted

10          c.     Request 3: The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13          d.     Request 4: The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16          e.     Request 5: The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20          f.     Request 7: The Motion is granted.

21      5.     All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24      6.     Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

            - 30 -           ORDER NO. 3
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___50___

1  Dated: March 10, 2009

2

3

4                              By:        /s/ Robert C. O'Brien

5                                        ROBERT C. O'BRIEN
                                         Discovery Master

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 7
PAGE 50

# EXHIBIT 8

CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7                   UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                        EASTERN DIVISION

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
12           Plaintiff,

13       v.                              Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15           Defendant.                  **ORDER MODIFYING PROTECTIVE
                                         ORDER**
16

17  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20                       I. INTRODUCTION

21       Presently pending for decision is MGA Entertainment, Inc.'s ("MGA") and Carter

22  Bryant's ("Bryant") "Motion for Clarification Of The Discovery Master's January 25, 2007 Order

23  Or For Protective Order Pursuant to Rule 26(c)."  At issue is whether the January 25, 2007 Order

24

25

26

27

28
    Bryant v. Mattel, Inc.,                                                1
    CV-04-09049 SGL (RNBx)

EXHIBIT __8__
PAGE __52__

1   ("Order") requires Bryant to produce drawings and designs in his possession that he created in

2   2006 or later[1] for products currently under development and not yet released to the public.

3   MGA and Bryant filed their motion on February 23, 2007; Mattel submitted an opposition brief

4   on March 2, 2007; and MGA and Bryant submitted a reply brief on March 7, 2007. The matter

5   was heard via telephonic conference on March 19, 2007, and taken under submission pending the

6   parties' submission of a stipulated protective order, which was received on April 23, 2007.

7       Having considered the motion papers and comments of counsel at the hearing, and for the

8   reasons set forth below, the motion for clarification of the Order is denied. There is good cause,

9   however, to modify the current protective order to further limit the disclosure of drawings and

10  designs for MGA products currently under development and not yet released to the public.

11                              II. BACKGROUND

12      The Order that is the subject of this motion granted Mattel's motion to compel Bryant to

13  produce documents responsive to numerous document requests relating to the development of

14  Bratz and other projects that Bryant worked on for MGA. In ruling on Mattel's motion, the

15  Discovery Master rejected Bryant's relevancy and overbreadth objections to producing

16  documents relating to work that Bryant performed for MGA after the release of the First

17  Generation Bratz dolls on June 30, 2001.

18      Neither party specifically addressed whether Mattel was entitled to drawings and designs

19  for MGA products on which Bryant worked and that are currently under development and not yet

20  released to the public. Mattel has taken the position that the Order requires production of such

21  documents.

22      During the meet and confer process, MGA and Bryant requested that Mattel "agree to a

23  limitation on the disclosure of product drawings and designs for products in development until

24  after that product has been made available for public sale." Torres Decl., Ex. A. Mattel rejected

25

26      [1]  MGA and Bryant's Reply Brief at 4:28-5:28, n. 4.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                     2

EXHIBIT __8__
PAGE __53__

1   the proposal, asserting that the proposal "would allow Bryant and/or MGA to unilaterally deem

2   something to be 'in development' and thus not produce it, including for designs Bryant previously

3   created and to which Mattel may have rights." Torres Decl., Ex. A. The parties had further

4   discussions regarding the disclosure of drawings and designs for products in development but

5   were unable to reach an agreement.

6        MGA and Bryant now request "a clarification that the Order does not require the

7   production of drawings or designs for products that have not yet been released." MGA and

8   Bryant's Motion at 2:13-15. In the alternative, MGA and Bryant move for a protective order

9   pursuant to Rule 26(c), Fed.R.Civ.P., providing that drawings or designs for products that have

10  not yet been released (1) need not be produced, or (2) shall be produced only after the products

11  have been released to the public, or (3) shall be produced under other very restrictive conditions

12  to protect their confidentiality. MGA and Bryant contend that "[e]ven if some of the 'Bratz'

13  drawings that Bryant created for MGA after June 30, 2001, may be relevant to claims at issue in

14  this action, drawings for unreleased products are not." MGA and Bryant's Motion at 4:28-5:2.

15  Further, they contend that such drawings are highly valuable trade secret documents whose

16  disclosure could severely jeopardize MGA's business.

17       Mattel opposes the motion on numerous grounds. First, it contends that the motion for

18  clarification is, in effect, an improper motion for reconsideration that does not satisfy the

19  standards for reconsideration, and is another attempt to withhold highly probative evidence that

20  bears directly on Mattel's claims and defenses. Mattel contends that the Order clearly requires

21  Bryant to produce his drawings, and that MGA and Bryant are now precluded from withholding

22  documents relating to unreleased products because they failed to raise the issue earlier. Second,

23  Mattel asserts that drawings and designs for unreleased products are relevant to its claims for

24  breach of contract, breach of fiduciary duty, breach of the duty of loyalty, copyright infringement,

25  and misappropriation of trade secrets. Third, Mattel contends that the protective order currently

26  in place, which addresses trade secret information in particular, is adequate to protect MGA and

27

28

EXHIBIT __8__
PAGE __54__

1  Bryant's interests. Fourth, Mattel contends that the additional protections MGA and Bryant seek

2  under Rule 26(c), Fed.R.Civ.P., would hamstring its ability to investigate and prosecute its claims

3  and defend against MGA's claims.

4                                     III. DISCUSSION

5  A. The Order Requires Production of Drawings and Designs for Products Not Yet Released

6         The Order clearly requires Bryant to produce all documents in his possession, custody or

7  control relating to Bratz and other products that Bryant has worked on with or for MGA. Among

8  other things, the Order requires Bryant to produce documents responsive to Mattel's Request Nos.

9  12, 19, 40, 41, and 54. Request No. 12 seeks production of all documents that refer or relate to

10  work or services that Bryant performed for or on behalf of MGA after October 20, 2000. See

11  Zeller Decl., Ex. 4. Request No. 19 seeks production of all documents that refer or relate to

12  designs that Bryant created, authored, produced, conceived of or reduced to practice after October

13  20, 2000 as purported "works-made-for-hire," whether in whole or in part for or on behalf of

14  MGA. Id. Request No. 40 seeks production of documents that refer or relate to Bryant's

15  participation in the conception, creation, design, development, sculpting, tooling, production or

16  manufacture of Bratz. Id. Request No. 41 seeks production of all documents that refer or relate

17  to designs for Bratz. Id. Request No. 54 seeks production of all prototypes, models, samples and

18  tangible items that refer or relate to Bratz. Id. Each of these requests covers drawings and

19  designs for Bratz products, regardless of when the drawings and designs were created or whether

20  the products to which they relate have been released.

21         Nowhere does the Order exempt, or even arguably exempt, from production responsive

22  documents relating to products that have not been released. To the contrary, the Order rejects

23  Bryant's objections based upon relevancy and overbreadth. In particular, the Order rejects

24  Bryant's "First Generation Bratz" limitation, which sought to limit discovery to only those

25  documents relating to the first dolls sold to the public in the summer of 2001. Thus, under the

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                        4



EXHIBIT __8__

PAGE __55__

1   Order, Bryant is required to produce drawings and designs in his possession for products currently
2   under development and not yet released to the public.

3        Because the terms of the Order are clear, MGA's and Bryant's request for clarification of
4   the Order is denied.

5   B. There is Good Cause to Modify the Protective Order as to Drawings and Designs for Products
6   Not Yet Released

7        In the event that designs and drawings for unreleased products under development are
8   found relevant and within the scope of the Order, MGA and Bryant move in the alternative for a
9   protective order pursuant to Rule 26(c), Fed.R.Civ.P., that would provide additional protections
10  not available under the protective order currently in place.  More specifically, MGA and Bryant
11  seek either (1) an order that the designs and drawings for MGA's unreleased products not be
12  revealed at all; (2) an order delaying production of designs and drawings for MGA's unreleased
13  products until the products are released; (3) an order requiring the designs and drawings to be
14  placed in an escrow for an expert to review and prohibiting the expert from removing or copying
15  the documents; or (4) an order providing that the drawings and designs for unreleased products be
16  produced for inspection by only an independent expert at the offices of MGA's counsel, with no
17  copying, photographing or sketching permitted.  Because there is already a protective order in
18  place, MGA and Bryant's motion is construed as one for modification of the existing protective
19  order.[2]

20                          1. Rule 26 Standards

21        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
22  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

---

24        [2] Mattel's contention that the present motion is an improper motion for reconsideration is without merit. To
25  the extent MGA and Bryant seek protection under Rule 26(c), Fed.R.Civ.P., their motion raises issues that were not
    within the scope of Mattel's motion to compel production of documents from Bryant. Furthermore, paragraph 19 of
26  the protective order currently in place provides that a party may, at any time, apply to the Court for a modification of
    its terms.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                              5

EXHIBIT **8**
PAGE ___**56**___

1  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

2  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

3  Even when discovery is permissible under Rule 26(b)(1), however, discovery may be limited

4  pursuant to Rule 26(c), Fed.R.Civ.P., which provides for the issuance of a protective order upon

5  motion by a party that has conferred in good faith in an effort to resolve the dispute without court

6  action, and for good cause shown. Rule 26(c) provides for "any order which justice requires to

7  protect a party or person from annoyance, embarrassment, oppression or undue burden or

8  expense," including, among other things, "(1) that the disclosure or discovery not be had; (2) that

9  the discovery may be had only on specified terms and conditions, including a designation of the

10  time or place . . . (5) that the discovery be conducted with no one present except persons

11  designated by the court" and "(7) that a trade secret or other confidential research, development,

12  or commercial information not be revealed or revealed only in a designated way." In general, in

13  determining whether a protective order should issue for trade secrets, the Ninth Circuit requires

14  that a court balance the risk to the disclosing party of inadvertent disclosure of trade secrets to

15  competitors against the risk to the moving party that protection of the trade secret would impair

16  the prosecution of its claims. Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th

17  Cir. 1992) (upholding protective order granting access to source code and other trade secret

18  materials to only an independent consultant).

19  <center>2. The Documents At Issue Are Relevant</center>

20      In support of its motion for a protective order, MGA and Bryant contend that drawings

21  and designs for products not yet released to the public are not relevant to any of Mattel's claims.

22  As an initial matter, MGA and Bryant contend that Mattel cannot possibly have suffered a

23  cognizable injury relating to MGA's products that have not yet been released, and that Mattel has

24  never taken the position that such products are relevant. MGA and Bryant next contend that the

25  drawings and designs for unreleased products are not relevant to Mattel's counterclaim for

26  copyright infringement because that claim is premised on an allegation that Bryant created the

27

28

EXHIBIT __8__

PAGE ___57___

1   original Bratz drawings while still employed at Mattel. MGA and Bryant similarly contend that

2   drawings and designs for products not yet released to the public are not relevant to Mattel's

3   original claim that Bryant breached his confidentiality obligations while still employed by Mattel.

4   Because Mattel's claims are based upon events occurring while Bryant was still employed by

5   Mattel, MGA and Bryant believe that drawings and designs for products currently under

6   development -- over six years after the termination of Bryant's employment at Mattel -- have no

7   relevance. MGA and Bryant further contend that the drawings and designs for products currently

8   under development are not relevant to Mattel's counterclaim for trade secret misappropriation.

9   MGA and Bryant reason that the trade secret claim is based on the alleged theft of business

10   information, not drawings and designs for products.

11       Consistent with the analysis previously set forth in the Order, the Discovery Master finds

12   that drawings and designs for unreleased products are relevant to Mattel's claims against Bryant.

13   Mattel claims that it owns works created by Bryant during his Mattel employment, regardless of

14   whether the works resulted in a Bratz doll released at a particular time. Further, Mattel's

15   complaint alleges that Bryant breached his confidentiality obligations while employed by Mattel.

16   As Mattel points out, Bryant has a continuing obligation not to use Mattel's confidential and

17   proprietary information.

18       Drawings and designs for unreleased products are also relevant to Mattel's copyright

19   infringement claim. It is true, as MGA and Bryant point out, that Mattel claims it owns

20   copyrights in Bratz works created by Bryant while still employed by Mattel. Mattel, however,

21   also asserts that Bryant has infringed Mattel's alleged copyrights in Bratz works through his

22   ongoing conduct of reproducing and creating derivative works.

23       Drawings and designs for unreleased products are also relevant to Mattel's counterclaim

24   for trade secret misappropriation. Among other things, Mattel alleges that MGA stole its future

25   line lists that detail the Barbie products that Mattel anticipated producing in 2004. Drawings of

26   unreleased MGA products that resemble unreleased products on Mattel's line lists may support

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                          7

EXHIBIT **8**

PAGE **58**

1    Mattel's allegation of trade secret misappropriation, even if the line list might potentially be

2    outdated. Further, proof of trade secret theft is also relevant to Mattel's defense against MGA's

3    unfair competition claims.[3]

4                    3. The Drawings and Designs Are Entitled to Heightened Protection

5            MGA and Bryant contend that drawings and designs for unreleased products fall squarely

6    within the category of trade secret information and should not be revealed at all, or in the

7    alternative, should not be revealed prior to release of the products. They contend that there is

8    good cause for heightened protection for drawings and designs for unreleased products because

9    any relevance of such drawings and designs is marginal at best, and the potential damage to MGA

10   of any disclosure is substantial. According to MGA and Bryant, there are thirteen lawyers at

11   Mattel's retained law firm who have recently been named in or on briefs submitted by Mattel. In

12   addition, MGA and Bryant estimate that there are numerous other staff members and outside

13   vendors – such as copy services, couriers, court reporters, experts and their respective staffs—

14   who also handle documents in this case on a regular basis. MGA and Bryant contend that the

15   current protective order allows disclosure to each of these groups of people, even for documents

16   restricted as "Confidential – Attorneys' Eyes Only." Moreover, MGA and Bryant contend that

17   Mattel has a practice of summarizing or paraphrasing contents of confidential documents or

18   testimony in briefs and other papers filed with the Court. MGA and Bryant suspect that Mattel

19   may follow this practice with respect to drawings and designs of unreleased products, and thereby

20   release MGA's trade secret information to the public.

21           Mattel opposes any modification of the existing protective order, asserting that the parties

22   contemplated exchanging trade secret information, including "non-public information relating to

23

24           [3]  MGA and Bryant's contention that discovery of drawings and designs for unreleased products is barred
     unless and until Mattel complies with California Code of Civil Procedure section 2019.210 is without merit.
25   Drawings and designs for unreleased products are relevant to claims other than the trade secret misappropriation
     claim, such as Mattel's claim for copyright infringement. Furthermore, the case relied upon by MGA and Bryant,
26   Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826 (2nd Dist. 2005), is distinguishable from
     the present case in that not all of Mattel's claims are "factually dependent" on the trade secret claim.
27

28   Bryant v. Mattel, Inc.,                                                                                    8
     CV-04-09049 SGL (RNBx)



EXHIBIT   8

PAGE   59

1   product development and design,"[4] and agreed to certain safeguards for trade secret information.

2   Mattel contends that there is little to no risk of unwarranted disclosure of MGA's trade secrets

3   because Mattel's in-house counsel and employees are not permitted to inspect or know the

4   contents of documents designated as "Confidential--Attorneys' Eyes Only." Mattel also denies

5   disclosing MGA's confidential information in briefs filed with the court.

6       Mattel's argument that MGA is limited to the terms of the current protective order is

7   without merit. The current protective order was negotiated by the parties at the inception of the

8   case, well before all of the claims and defenses were established. At that time, the parties did not

9   fully understand or foresee what documents and trade secrets would be relevant and discoverable

10  under Rule 26, Fed.R.Civ.P. Moreover, paragraph 19 of the protective order provides that a party

11  may, at any time, apply to the court for a modification of its terms.

12      On balance, there is good cause for heightened protection for drawings and designs for

13  unreleased products. MGA and Mattel are direct competitors. MGA has submitted the

14  declaration of Paula Garcia to support its claim of trade secrets. Ms. Garcia is the Vice President

15  of Product Design and Development and is responsible for the design and development of Bratz

16  products. She states that "[w]ithout question, a toy manufacturer's unreleased toy concepts . . .

17  are among its most highly valuable trade secrets." Garcia Decl. at ¶4. She states that "[a]lthough

18  such drawings and designs are valuable even after the product's public release, their value is

19  enormous prior to their public release because it is the new ideas and designs that are most likely

20  to generate new sales." Id. She further states that MGA protects its product designs and drawings

21  by using confidentiality agreements, computer passwords, and security guards. She also states

22  that vendors, manufacturers, suppliers and other third parties who may see a product design late in

23  the development process are required to sign strict confidentiality agreements. Ms. Garcia states

24  that "MGA's drawings for some of its yet-unreleased 'Bratz' products are even more closely

25

26      [4] Protective Order at 2-3.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9


EXHIBIT ___
PAGE ___ 66

1   protected." Id. at ¶6. More specifically, she declares that when MGA begins to develop a new

2   Bratz line, only a very limited number of people know about it. Further, Ms. Garcia asserts, "[i]n

3   fact, with respect to some 'Bratz' products, Carter Bryant and I are the only people who know

4   what the concept is and who see the early product drawings. Even after I approve and we have

5   finalized the concept, only a small number of people on the 'Bratz' development team have

6   exposure to the drawings." Id. Thus, drawings and designs for MGA products not yet released to

7   the public are unquestionably valuable trade secret information.

8           Although the protective order currently in place provides for two tiers of protection, MGA

9   points out that even under the higher "Confidential – Attorneys' Eyes Only" tier, MGA's

10  drawings and designs for unreleased products could be disclosed to at least thirteen of Mattel's

11  lawyers, as well as staff members, and also outside vendors such as copy services, court reporters,

12  experts and their staff. Given the number of people involved in the case, MGA is justifiably

13  concerned about the possibility of inadvertent disclosures of trade secrets that could lead to

14  substantial economic injury.

15          In comparison to the potential risk of harm to MGA, Mattel's need for drawings and

16  designs for unreleased products is relatively small. Mattel's claims and defenses are centered

17  upon Bryant's conduct during his employment at Mattel, which ended in October of 2000, and

18  events leading up to the release of the First Generation of Bratz dolls in the summer of 2001.

19  Although the lawsuit is much broader than the First Generation of Bratz dolls, events occurring

20  after the summer of 2001 become less relevant as more time passes. Approximately six years

21  have passed since the launch of the First Generation Bratz dolls. Furthermore, for purposes of

22  determining damages, drawings and designs for released products are far more relevant than

23  drawings and designs for yet unreleased products. Indeed, as MGA and Bryant point out, it is

24  unlikely that Mattel could have suffered any cognizable injury from MGA products that have not

25  yet been released.

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

10



EXHIBIT    8
PAGE    6 )

1    In summary, the potential for inadvertent disclosure under the terms of the existing
2    protective order outweighs Mattel's need for drawings and designs for unreleased products.
3    Accordingly, MGA and Bryant are entitled to additional protective measures to prevent
4    inadvertent disclosure of drawings and designs for unreleased products.

5                    4. Delaying Production of Drawings and Designs Until

6              Products Are Released Would Impair Mattel's Ability To Prosecute Its Claims

7    MGA and Bryant seek a protective order delaying production of drawings and designs for
8    products under development until the products are actually released. MGA and Bryant anticipate
9    releasing products in the fall of 2007 and the spring of 2008. MGA and Bryant's Reply at 4:26-
10   28. MGA and Bryant contend that production of drawings and designs for products under
11   development prior to their release date would impose an unwarranted burden for two reasons.
12   First, MGA and Bryant assert that Mattel's requests are broad. Second, they contend that
13   requiring production of drawings and designs would be disruptive to the product development
14   process. They explain that the creative process is fluid, constant, and extremely rapid. They
15   explain that for some Bratz products, Bryant may create and develop scores of drawings that are
16   modified and improved throughout the development cycle. Further, MGA often goes back to, or
17   builds on, prior drawings. MGA and Bryant contend that "to be forced to turn over these
18   drawings throughout the development process before the product line is finalized, particularly as
19   MGA is operating under such short development cycles, would not only substantially compromise
20   the strict confidentiality measures that MGA has in place but would be extremely disruptive to its
21   ability to do business and therefore significantly impact its ability to compete." MGA and
22   Bryant's Motion at 11:16-22.

23   MGA and Bryant's proposal to delay production until products are released is unworkable.
24   Although MGA anticipates releasing products in the fall of 2007 and the spring of 2008, there is
25   no guarantee that MGA will meet those release dates. If there are delays in the release dates,
26   Mattel might not have sufficient time to review the drawings and designs and conduct follow up
27
28


EXHIBIT   8
PAGE      62

1 | discovery under the current schedule.  Trial on Mattel's original claims is scheduled for February

2 | of 2008, and trial on MGA's claims and Mattel's counterclaims is scheduled for July of 2008.

3 | In light of the trial schedule, any delay beyond June 29, 2007 would unduly prejudice Mattel's

4 | ability to prepare for trial.

5 | ### 5. Additional Procedures

6 | At the hearing, the parties represented that they would submit a stipulation and proposed

7 | order with additional terms governing the production of drawings and designs for MGA's

8 | products that are under development.  On April 23, 2007, the parties submitted a stipulation and

9 | proposed order.  The parties stipulated to define "Subject Documents" as "documents (defined to

10 | include both tangible items and electronic data) created after January 1, 2006 that pertain to

11 | products which are currently unreleased and scheduled for public release in 2007 or 2008 and

12 | that constitute highly sensitive trade secrets of the producing Party." Stipulation and Proposed

13 | Order at ¶1.  The main terms of the stipulation are as follows:

14 | 1. That "Subject Documents" may be withheld from production to the other parties until

15 | June 29, 2007.  Id. at ¶2.

16 | 2. That "Subject Documents" may be designated as "Highly Confidential – Restricted

17 | Attorneys' Eyes Only," and that documents so designated "shall not be disclosed in any way to,

18 | nor their contents summarized or discussed in substance with, any person other than:  (i) up to

19 | three attorneys at the receiving Party's outside law firm; (ii) such independent, outside expert(s)

20 | for the receiving Party who outside counsel deems necessary to show such documents for

21 | purposes of providing expert opinion or expert testimony; (iii) one assistant or paralegal for each

22 | Party . . . (iv) the Court, including the Discovery Master and other personnel identified in

23 | paragraphs 6(g) and 7 of the Protective Order; (v) the authors, senders, addressees and

24 | designated copy recipients of any document designated 'Highly Confidential – Restricted

25 | Attorneys' Eyes Only'; and (vi) such other persons as may be consented to in writing or on the

26 |

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT **8**

PAGE **63**

1  record by the Party designating such documents 'Highly Confidential – Restricted Attorneys'
2  Eyes Only.'" Id. at ¶3(b).

3      3. That "[d]ocuments designated as 'Highly Confidential – Restricted Attorneys' Eyes
4  Only' shall not be copied except to create one archival file copy, one working copy for the
5  designated attorneys and/or any designated expert, or for use as exhibits at deposition or trial or
6  in filings with the Court, including the Discovery Master." Id. at ¶3(d).

7      4. That "[e]ach receiving Party's original copy set and all copies of Subject Documents,
8  including any copies for use as exhibits or in motion practice, shall be maintained in a secure,
9  locked file at all times when not physically being used by the receiving party's counsel or
10 expert." Id. at ¶3(e); and

11     5. That the producing Party "shall re-designate or de-designate Subject Documents
12 relating to a product within fourteen (14) days of the following events, whichever occurs earlier:
13 (a) the production is first shipped, or (b) the product is first disclosed to a third party without an
14 express confidentiality agreement." Id. at ¶4

15     Good cause appearing, the stipulation is hereby approved and shall be entered as a
16 separate order of the court.

17 <center>V. CONCLUSION</center>

18     For the reasons set forth above, MGA and Bryant's motion for clarification of the Order is
19 denied. MGA and Bryant's alternative motion for a protective order pursuant to Rule 26(c),
20 Fed.R.Civ.P., is granted. The parties shall abide by the terms of the stipulation and order to
21 modify the protective order.

22     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
23 Master, MGA shall file this Order with the Clerk of Court forthwith.
24 Dated: May 15, 2007

                                  HON. EDWARD A. INFANTE (Ret.)
25                                     Discovery Master

26

27

28

<center>EXHIBIT 8
PAGE 64</center>

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER MODIFYING PROTECTIVE ORDER in the within

action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California

Anthony Sales

EXHIBIT 8
PAGE 65

# EXHIBIT 9

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, | CASE NO. CV 04-9059 NM (RNBx) |
| Plaintiff, | STIPULATED PROTECTIVE ORDER; AND |
| v. | [PROPOSED] ORDER |
| CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | [Discovery Matter] |
| Defendants. | |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| Counter-Claimant, | |
| v. | |
| MATTEL, INC., a Delaware Corporation, | |
| Counter-Defendant. | |

FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

EXHIBIT 9
PAGE 66

07272/625581.2

PROTECTIVE ORDER

GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)    Personnel files and other private or confidential employment, contractor or vendor information;

EXHIBIT __9__

PAGE __6 7__          -2-

07272/625581.2

PROTECTIVE ORDER

1          (2)    The specific terms of agreements with, and information received

2    from, third parties that a Party is required to disclose only under conditions of

3    confidentiality;

4          (3)    Personal or private financial information, and confidential

5    financial data that is not known generally to the trade or to competitors, including

6    financial data relating to specific sales, cost and profit information for specific

7    products and product lines; and

8          (4)    Business plans and product information that are not known

9    generally to the trade or to competitors, including non-public information relating to

10   product development and design.

11

12         WHEREFORE, believing that good cause exists, the Parties HEREBY

13   STIPULATE that, subject to the Court's approval, the following procedures shall be

14   followed in this Action to facilitate the orderly and efficient discovery of relevant

15   information while minimizing the potential for unauthorized disclosure or use of

16   confidential or proprietary information:

17

18                    <u>SCOPE OF THIS ORDER</u>

19

20       1.    This Protective Order shall apply to trade secret, confidential and

21   proprietary information, documents and things that are produced or disclosed in any

22   form during the course of the Action by any Party or any nonparty:

23         (a)    through discovery;

24         (b)    in any pleading, document or other writing; or

25         (c)    in testimony given at a deposition.

26   (The foregoing information, documents and things shall be referred to hereinafter

27   collectively as "Litigation Materials.")

28       EXHIBIT **9**

           PAGE _6 8_    -3-

PROTECTIVE ORDER

CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2. Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below. The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature. The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure. Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

MANNER OF DESIGNATION OF MATERIALS

3. A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a) Documents or Things. "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

1    obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --

2    ATTORNEYS' EYES ONLY" on the particular document or thing.

3         (b)   Interrogatory Answers and Responses to Requests for

4    Admissions. In answering any interrogatory or request for admission, or any

5    part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or

6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the

7    legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

8    ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

9    EYES ONLY" answers shall be made on separate pages from any other

10   answers or portions thereof that are not designated as "CONFIDENTIAL" or

11   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12        (c)   Deposition Testimony. Any Party or nonparty giving

13   deposition testimony in this Action may obtain "CONFIDENTIAL" or

14   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by

15   designating, during the course of that testimony, for which "CONFIDENTIAL"

16   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,

17   the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL

18   -- ATTORNEYS' EYES ONLY,"  or alternatively by designating the entire

19   testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

20   EYES ONLY," subject to a good faith obligation to identify any non-

21   confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"

22   portions in the event that the entire testimony is designated "CONFIDENTIAL

23   -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after

24   receipt of the transcript of the testimony.  The reporter shall separately

25   transcribe and bind the testimony so designated as "CONFIDENTIAL" and

26   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face

27   of the separate bound transcript containing such testimony with the term

28   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

EXHIBIT  9  -5-

PAGE  70

PROTECTIVE ORDER

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given. Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

07272/625581.2


EXHIBIT 9
PAGE 71

PROTECTIVE ORDER

1    accordance with the terms of this Protective Order. In addition, the provisions

2    of Paragraph 3(e) for later designating transcripts or exhibits shall apply after

3    the expiration of the fourteen (14) calendar day period described in this

4    Paragraph 3(c).

5           (d)    Typing or stamping the legend "CONFIDENTIAL" or

6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a

7    collection of Litigation Materials which are bound together shall have the

8    effect of designating such collection in its entirety as "CONFIDENTIAL" or

9    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks,

10   tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling,

11   stamping or marking the outside of such disk, tape, CD-ROM, DVD or other

12   medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL

13   -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire

14   contents of such disk, tape, CD-ROM, DVD or other medium or device, and

15   all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL --

16   ATTORNEYS' EYES ONLY," as the case may be.

17          (e)    Except as otherwise provided in Paragraph 3(c) of this

18   Protective Order, the receiving Party shall not reveal any information produced

19   for a period of seven (7) calendar days following receipt. Failure to designate

20   a document, thing or other information as CONFIDENTIAL" or

21   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this

22   Protective Order shall not preclude any Party or nonparty desiring to so

23   designate the document, thing or information from so designating thereafter;

24   provided that the Party or nonparty proceeds promptly after discovery of any

25   omission of marking, in good faith marks the document, thing or other

26   information and requests, in writing, that each receiving Party so mark and

27   treat the document, thing or other information in accordance with this

28   Protective Order. Thereafter, the document, thing or other information shall

EXHIBIT ___9___

PAGE ___72___

-7-

PROTECTIVE ORDER

1  be fully subject to this Protective Order.  No Party shall incur liability for any
2  disclosures made prior to notice of such designation, except to the extent that
3  any such disclosures occurred prior to the seven (7) day period described above
4  or prior to such other time periods as are provided by this Protective Order,
5  including without limitation such time periods as are provided in Paragraph
6  3(c) above.

7
8  RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS
9
10      4.    Any Litigation Materials produced or disclosed in this Action,
11  whether  or  not  designated  "CONFIDENTIAL"  or  "CONFIDENTIAL  --
12  ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such
13  information for purposes of litigation and not for any other purpose, including
14  without limitation for any business or trade purpose.  As used herein, the term
15  "litigation" shall mean preparation for, participation in and prosecution and defense
16  of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in
17  connection with any mediation or other alternative dispute resolution procedure that
18  this or any other court may order or that the Parties may agree to.
19      5.    Subject to Paragraph 7 herein, and unless as otherwise ordered by
20  the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be
21  disclosed to any person other than:
22          (a)    the attorneys for the Parties and their partners, shareholders,
23      associates, document clerks and paralegals who are necessary to assist such
24      attorneys;
25          (b)    secretaries, stenographers and other office or clerical
26      personnel employed by said attorneys and who are necessary to assist such
27      attorneys;
28

EXHIBIT __9__

PROTECTIVE ORDER

(c)   a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)   the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)   such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)   outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)   professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)   independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)   non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

EXHIBIT **9**
PAGE **7 Y**

PROTECTIVE ORDER

6.     Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)     such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

EXHIBIT **9**

PAGE **7 5**

PROTECTIVE ORDER

1          (g)    professional court reporters engaged to transcribe

2    deposition testimony, professional videographers engaged to videotape

3    deposition testimony and translators.

4          7.    None of the following is bound by or obligated under this Order

5    in any respect and specifically are not bound or obligated to treat information

6    designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7    ONLY" in any particular manner: The Court hearing this Action (including the Court

8    having jurisdiction of any appeal), Court personnel, court reporters working for the

9    Court, translators working for the Court, or any jury impaneled in this Action.

10          8.    Other than those identified in Paragraph 7 above, each person to

11    whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12    ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13    Protective Order and agree to be bound by it before disclosure to such persons of any

14    such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15    not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --

16    ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17    certified that they have read this Protective Order and have manifested their assent

18    to be bound thereby by signing a copy of the Assurance of Compliance attached

19    hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20    it shall not be necessary for that person to sign a separate Assurance of Compliance

21    each time that person is subsequently given access to confidential material. Any

22    person who signed an Assurance of Compliance in connection with the Stipulation

23    for Protection of Confidential Information and Protective Order filed September 16,

24    2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County

25    Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26    shall, by virtue of his or her prior signature, be deemed to have signed the attached

27    Assurance of Compliance.

28

EXHIBIT __9__
PAGE __71__

-11-

9. The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10. If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11. Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12. The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.



EXHIBIT **9**

PAGE ~~77~~

07272/625581.2

-12-

PROTECTIVE ORDER

1    13.    If a Party or nonparty through inadvertence produces or provides

2    discovery that it, he or she believes is subject to a claim of attorney-client privilege

3    or work product immunity, the producing Party or nonparty may give written notice

4    to the receiving Party that the document is subject to a claim of attorney-client

5    privilege or work product immunity and request that the document be returned to the

6    producing Party or nonparty.   The receiving Party shall promptly return to the

7    producing Party or nonparty the inadvertedly disclosed document and all copies of

8    such document.  Return of the document by the receiving Party shall not constitute

9    an admission or concession, or permit any inference, that the returned document is,

10   in fact, properly subject to a claim of attorney-client privilege or work product

11   immunity, nor shall it foreclose any Party from moving the Court for an Order that

12   such document has been improperly designated or should be producible for reasons

13   other than a waiver caused by the inadvertent production.

14    14.    Nothing contained in this Protective Order shall affect the right

15   of any Party or nonparty to make any objection, claim any privilege, or otherwise

16   contest any request for production of documents, interrogatory, request for admission,

17   or question at a deposition or to seek further relief or protective orders from the Court

18   in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>.

19   Nothing in this Protective Order shall constitute an admission or waiver of any claim

20   or defense by any Party.

21

22    <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

23

24    15.    Except when the filing under seal is otherwise authorized by

25   statute or federal rule, the Parties shall seek the Court's prior approval for the filing

26   under seal of pleadings and other documents containing properly designated

27   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

28   information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

07272/625581.2

EXHIBIT __9__

PAGE __78__

-13-

PROTECTIVE ORDER

1  Rule may be amended from time to time.  Prior to the time that a Party receiving the

2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3  information from any other Party files with the Court an application and the other

4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5  time, to seal the producing Party's confidential information, the receiving Party shall

6  consult with the producing Party's attorney to determine whether the producing Party

7  will re-designate the previously designated confidential information so as to avoid the

8  need for the request to file such information under the seal.  Upon the default of a

9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11  Party may subsequently seek the approval of the Court to file that document under

12  seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13  may be amended from time to time.

14

15                    THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16

17            16.    If any Party or nonparty receives a subpoena or document request

18  from a third party which purports to require the production of materials in that Party's

19  possession which have previously been designated as "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21  the Party or nonparty receiving such subpoena or document request (a) shall object

22  and refuse to produce documents absent a Court Order or the consent of the Party or

23  nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24  -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25  designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26  ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27  and (c) shall not oppose any effort by the Party or nonparty which designated the

28  material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

EXHIBIT  9

07272/625581.2

PAGE  79

-14-

PROTECTIVE ORDER

1   ONLY" to quash the subpoena or obtain a protective order limiting discovery of such
2   material.

3

### DISCOVERY FROM NONPARTIES

5

6          17.    Discovery of nonparties may involve receipt of information,
7   documents, things or testimony which include or contain "CONFIDENTIAL" or
8   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information. A
9   nonparty producing such material in this case may designate as "CONFIDENTIAL"
10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it
11  produces in the same manner provided for in this Protective Order with respect to
12  material furnished by or on behalf of the Parties. Any Party may also designate as
13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"
15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating
16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing
17  nonparty has also so designated.  In addition, a nonparty may also designate as
18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
19  materials or information produced by a Party that constitute "CONFIDENTIAL" or
20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such
21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the
22  producing Party has also so designated.  In either such an event, the designation
23  providing for the greater level of protection for the material information shall control,
24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated
25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a
26  nonparty or Party shall be governed by the terms of this Protective Order.

27

28  EXHIBIT **9**
    PAGE **8 6**

07272/625581.2                                           -15-

PROTECTIVE ORDER

1

2

3

<div align="center">

## CONCLUSION OF LITIGATION

</div>

18.    Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession.  In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties.  Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order.  This Protective Order shall continue to be binding after the conclusion of this Action.

<div align="center">

## AMENDMENT OF THIS AGREEMENT

</div>

19.    The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court.  In addition, a Party may at any time apply to the Court for modification of this

EXHIBIT  **9**
PAGE  **81**

-16-

PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the
2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December 22, 2004          QUINN EMANUEL URQUHART
7                                    OLIVER & HEDGES, LLP

8                                    By _Jon Corey_____
9                                       Jon Corey
10                                      Attorneys for Plaintiff
                                        Mattel, Inc.
11

12 DATED: December __, 2004          LITTLER MENDELSON

13                                   By_____
14                                      Douglas A. Wickham
                                        Attorneys for Defendant
15                                      Carter Bryant

16 DATED: December __, 2004          O'MELVENY & MEYERS, LLP

17

18                                   By_____
                                        Diana M. Torres
19                                      Attorneys for Intervenor-Defendant
                                        MGA Entertainment, Inc.

20

21

22 **IT IS SO ORDERED.**

23 DATED: __1/4/05__                 ROBERT N. BLOCK
24                                   THE HONORABLE ROBERT N. BLOCK
                                     United States Magistrate Judge
25

26

27 EXHIBIT **9**
28 PAGE **82**

PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4      **IT IS SO STIPULATED.**

5

6  DATED: December ___, 2004    QUINN EMANUEL URQUHART

7      OLIVER & HEDGES, LLP

8

9      By _____

10         Jon Corey
           Attorneys for Plaintiff
           Mattel, Inc.

11 DATED: December 21, 2004    LITTLER MENDELSON

12

13     By _____

14         Douglas A. Wickham
           Attorneys for Defendant

15         Carter Bryant

16 DATED: December ___, 2004    O'MELVENY & MEYERS, LLP

17

18     By _____
           Diana M. Torres

19         Attorneys for Intervenor-Defendant
           MGA Entertainment, Inc.

20

21     **IT IS SO ORDERED.**

22

23 DATED: _____

24     THE HONORABLE ROBERT N. BLOCK

25     United States Magistrate Judge

26

27     EXHIBIT __9__

28     PAGE __83__

PROTECTIVE ORDER

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4      **IT IS SO STIPULATED.**

5

6   DATED: December ___, 2004        QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
7

8
                                     By
9                                       Jon Corey
                                        Attorneys for Plaintiff
10                                      Mattel, Inc.

11  DATED: December ___, 2004        LITTLER MENDELSON

12

13                                   By
                                        Douglas A. Wickham
14                                      Attorneys for Defendant
                                        Carter Bryant
15

16  DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17
                                     By
18                                      Diana M. Torres
                                        Attorneys for Interventor-Defendant
19                                      MGA Entertainment, Inc.

20

21

22      **IT IS SO ORDERED.**

23  DATED: _____

24                                   THE HONORABLE ROBERT N. BLOCK
                                     United States Magistrate Judge
25

26

27                 EXHIBIT 9

28                 PAGE 84

07272/625581.2                          -17-

                                              PROTECTIVE ORDER

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

EXHIBIT 9
PAGE 8 5

07272/625581.2

PROTECTIVE ORDER

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA**          )
**COUNTY OF LOS ANGELES**     )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name

Signature

EXHIBIT 9
PAGE 86

1  **Robert F. Millman, Esq.**
   **Douglas A. Wickham, Esq.**
2  **Keith A. Jacoby, Esq.**
   **Littler Mendelson**
3  **A Professional Corporation**
   2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
4  Phone: 310-553-0308
   **Fax: 310-553-5583**
5

6  **Diana M. Torres, Esq.**
   **O'Melveney & Meyers**
7  400 S. Hope Street
   Los Angeles, CA 90071
8  Phone: 213-430-6000
   **Fax: 213-430-6407**
9

10 **Daniel J. Warren, Esq.**
   **Sutherland, Asbill & Brennan**
11 999 Peachtree Street NE
   Atlanta, GA  30309-3996
12 Phone: 404-853-8698
   **Fax: 404-853-8806**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __9__
PAGE __87__

-2-

# EXHIBIT 10

RECEIVED

AUG 0 3 2007

CALENDARED

1   DIANA M. TORRES (S.B. #162284)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, California 90071-2899
    Telephone: (213) 430-6000
4   Facsimile: (213) 430-6407
    Email: dtorres@omm.com
5
    DALE M. CENDALI (admitted pro hac vice)
6   MICHAEL KEATS (admitted pro hac vice)
    JOHANNA SCHMITT (admitted pro hac vice)
7   O'MELVENY & MYERS LLP
    Times Square Tower
8   7 Times Square
    New York, New York 10036
9   Telephone: (212) 326-2000
    Facsimile: (212) 326-2061
10  Email: dcendali@omm.com

11  PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
12  JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
13  Los Angeles, CA  90067
    Telephone:  (310) 553-3000
14  Facsimile:   (310) 556-2920
    Email: pglaser@chrisglase.com
15
    Attorneys for Plaintiff
16  MGA Entertainment, Inc.

17

18              **UNITED STATES DISTRICT COURT**

19              **CENTRAL DISTRICT OF CALIFORNIA**

20                    **EASTERN DIVISION**

| | |
|---|---|
| 21  CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) (Consolidated with CV 04-9059 and |
| 22                    Plaintiff, | CV 05-2727) |
| 23            v. | **MGA'S FIFTH SET OF REQUESTS FOR THE** |
| 24  MATTEL, INC., a Delaware Corporation, | **PRODUCTION OF** |
| 25                    Defendant | **DOCUMENTS AND THINGS IN CASE NO. 05-2727** |
| 26  CONSOLIDATED WITH | |
| 27  MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. | |
| 28  MATTEL, INC. | |

EXHIBIT **10**

PAGE **89**

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

1  PROPOUNDING PARTY:      MGA ENTERTAINMENT, INC.

2  RESPONDING PARTY:       MATTEL, INC.

3  SET NO.                 FIVE

4  NOS.                    470 - 531

5

6          **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

7

8          Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA

9  Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel")

10 produce all DOCUMENTS and tangible things described, in accordance with the

11 Definitions and Instructions set forth below, at 9:00 a.m. on September 4, 2007, at

12 the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles,

13 California  90071.

                          **DEFINITIONS**
14

15         As used in these Requests:

16         1.    "ACTION" shall mean this action now consolidated under Case No.

17 04-9049 before the Hon. Stephen Larson and formerly Mattel v. Bryant, Inc., first

18 filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA

19 Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and

20 defenses therein.

21         2.    "ACCELERACERS" means and refers to each image, character,

22 logo, doll, toy, accessory, product, packaging or other thing or matter that is or has

23 ever been manufactured, marketed or sold by MATTEL, or others under license by

24 MATTEL, as part of a line of goods or merchandise commonly known as, or sold

25 and marketed under the name, "AcceleRacerS."

26

27

28

                              - 1 -

EXHIBIT **10**
PAGE **89**

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

1       3.     "ADVERTISEMENT" means a commercial message or

2  advertisement in any medium, including without limitation, television, radio,

3  movies, magazines, newspapers, the Internet, signage, and billboards.

4       4.     "ASAHI" means Asahi Kasei Life & Living Corporation and any of

5  its past or present officers, directors, agents, employees, representatives,

6  consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

7  interest, entities and persons acting in joint venture or partnership relationships

8  with Asahi Kasei Life & Living Corporation and any others acting on Asahi Kasei

9  Life & Living Corporation's behalf, pursuant to its authority or subject to its

10  control.

11      5.     "BRATZ" means and refers to each image, character, logo, doll,

12  plush toy, styling head, toy, accessory, product, packaging, theme, or other thing

13  or matter that is or has ever been manufactured, marketed or sold by MGA, or

14  others under license, as part of a line of goods or merchandise commonly known

15  as, or sold and marketed under the "Bratz" trademark or trade dress, including, but

16  not limited to, fashion dolls, styling heads, and plush toys.

17      6.     "BRYANT" means Carter Bryant, any of his current or former

18  agents, representatives, attorneys, employees, partners, joint venturers, and any

19  other person acting on his behalf, pursuant to his authority or subject to his

20  control.

21      7.     "CONTESTED MGA PRODUCTS" means "Bratz" female fashion

22  dolls and their packaging, products in the "Bratz Wintertime Wonderland" theme,

23  products in the "Bratz Formal Funk" theme, products in the "Bratz Sun Kissed

24  Summer" theme, products in the "Bratz Forever Diamondz" theme, "Bratz Petz"

25  plush toys (including "Bratz Dogz") and their packaging, "Bratz Funky Fashion

26  Makeover" heads, "Bratz Formal Funk Super Stylin' Runway Disco" playset and

27  packaging, "4-Ever Best Friends" dolls and packaging, "Mommy's Little" doll

28  line, and "Alien Racers" toy racing vehicles, as identified in Response to

- 2 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT __10__
PAGE __90__

1 Interrogatory No. 2 of MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s
2 First Set of Interrogatories Re Claims of Unfair Competition.

3    8.    "COMMUNICATION[S]" means any transmission of information
4 from one person or entity to another, including, without limitation, by personal
5 meeting, conversation, letter, telephone, facsimile or electronic mail. Each request
6 that encompasses information relating in any way to communications to, from or
7 within a business or corporate entity is hereby designated to mean, and should be
8 construed to include, all communications by and between representatives,
9 employees, agents or servants of the business or corporate entity.

10    9.    "COUNTERCLAIM[S]" means the Second Amended Answer and
11 Counterclaims filed by Mattel on July 12, 2007.

12    10.    "DIVA STARZ" means and refers to each image, character, logo,
13 doll, toy, accessory, product, packaging or any other thing that is or has ever been
14 manufactured, marketed or sold by MATTEL, or others under license by
15 MATTEL, as part of a line of goods or merchandise commonly known as, or sold
16 and marketed under the name "Diva Starz."

17    11.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of
18 Civil Procedure 34, and shall be construed in the broadest sense to mean any and
19 all writings, tangible things and property, of any kind, that are now or that have
20 been in YOUR actual or constructive possession, custody or control, including, but
21 not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,
22 punched, copied, recorded, transcribed, graphic or photographic matter of any kind
23 or nature, in, through, or from which information may be embodied, translated,
24 conveyed or stored, whether an original, a draft or copy, however produced or
25 reproduced, whether sent or received or neither, including, but not limited to,
26 notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals,
27 reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets,
28 work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost

- 3 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS



EXHIBIT **10**
PAGE **97**

1     sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase

2     orders, telephone records, telegrams, telexes, literature, invoices, contracts,

3     purchase orders, estimates, recordings, transcriptions of recordings, records,

4     books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs,

5     video, audio and digital recordings, television commercials, story boards, website

6     or other spot advertisements, movies, movie trailers, prototypes, products, diaries,

7     calendars, charts, drawings, sketches, messages, photographs and data contained in

8     or accessible through any electronic data processing system, including, but not

9     limited to, computer databases, data sheets, data processing cards, computer files

10     and tapes, computer disks, CD-ROMs, computer metadata, microfilm, microfiche,

11     electronic mail, website and web pages and transcriptions thereof and all other

12     memorializations of any conversations, meetings and conference, by telephone or

13     otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

14     where such copy is not an identical duplicate of the original, whether because of

15     deletions, underlinings, showing of blind copies, initialing, signatures, receipt

16     stamps, comments, notations, differences in stationery or any other difference or

17     modification of any kind.

18         12.    "EARLY LIGHT" means the toy manufacturer Early Light Industrial

19     Company Limited and any of its past or present officers, directors, agents,

20     employees, representatives, consultants, attorneys, parents, subsidiaries, divisions,

21     affiliates, predecessors-in-interest, entities and persons acting in joint venture or

22     partnership relationships with Early Light Industrial Company Limited and any

23     others acting on Early Light Industrial Company Limited's behalf, pursuant to its

24     authority or subject to its control.

25         13.    "FILO" means L.A.M.P. S.p.A., and any of its past or present

26     officers, directors, agents, employees, representatives, consultants, attorneys,

27     parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and

28     persons acting in joint venture or partnership relationships with L.A.M.P. S.p.A.

-4-



EXHIBIT 10
PAGE 92

1    and any others acting on L.A.M.P. S.p.A.'s behalf, pursuant to its authority or

2    subject to its control.

3        14.   "FISHER-PRICE" means Fisher-Price, Inc. and any of its past or

4    present officers, directors, agents, employees, representatives, consultants,

5    attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest,

6    entities and persons acting in joint venture or partnership relationships with Fisher-

7    Price, Inc. and any others acting on Fisher-Price, Inc.'s behalf, pursuant to Fisher-

8    Price, Inc.'s authority or subject to Fisher-Price, Inc.'s control.

9        15.   "JETTA" means the toy manufacturer Jetta Company Limited, and

10   any of its past or present officers, directors, agents, employees, representatives,

11   consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

12   interest, entities and persons acting in joint venture or partnership relationships

13   with Jetta Company Limited and any others acting on Jetta Company Limited's

14   behalf, pursuant to its authority or subject to its control.

15       16.   "KANEKA" means plastics manufacturer Kaneka Corporation, and

16   any of its past or present officers, directors, agents, employees, representatives,

17   consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

18   interest, entities and persons acting in joint venture or partnership relationships

19   with Kaneka Corporation and any others acting on Kaneka Corporation's behalf,

20   pursuant to its authority or subject to its control.

21       17.   "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

22       18.   "MATTEL," "YOU," or "YOUR" means defendant MATTEL, Inc.

23   and any of its past or present officers, directors, agents, employees,

24   representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

25   predecessors-in-interest, entities and persons acting in joint venture or partnership

26   relationships with YOU and any others acting on YOUR behalf, pursuant to

27   YOUR authority or subject to YOUR control.

28

- 5 -

EXHIBIT **10**

PAGE **93**

1      19.   "MGA" means MGA Entertainment, Inc. and any of its past or

2  present officers, directors, agents, employees, representatives, consultants,

3  attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest,

4  entities and persons acting in joint venture or partnership relationships with MGA

5  and any others acting on MGA's behalf, pursuant to its authority or subject to its

6  control.

7      20.   "MY SCENE" means and refers to each image, character, logo, doll,

8  toy, styling head, plush toy, play set, accessory, product, packaging or any other

9  thing that is or has ever been manufactured, marketed or sold by YOU, or others

10  under licensed by YOU, as part of a line of goods or merchandise commonly

11  known as, or sold and marketed under the name "MY SCENE."

12      21.   "PERSON[S]" means any or all entities, including but not limited to,

13  any or all individuals, single proprietorships, associations, companies, firms,

14  partnerships, joint ventures, corporations, employees or former employees, or any

15  other business, governmental, or labor entity, and any divisions, departments, or

16  other units thereof.

17      22.   "POLLY POCKET COLOR SURPRISE POLLY" means and refers to

18  each image, character, logo, doll, styling head, toy, accessory, product, packaging

19  or any other thing that is or has ever been manufactured, marketed or sold by

20  MATTEL, or others under license by MATTEL, as part of a line of goods or

21  merchandise commonly known as, or sold and marketed under the name "Polly

22  Pocket Color Surprise Polly."

23      23.   "REFERRING OR RELATING TO" should be construed in the

24  broadest possible sense to mean concerning, consisting of, referring to, relating to,

25  describing, discussing, constituting, evidencing, containing, reflecting,

26  mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or

27  factual connection with the matter discussed.

28

- 6 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT __10__
PAGE __94__

24.     "SIMBA TOYS" means Simba Toys GmbH and Company KG, Simba Toys (France), Simba Toys (Hong Kong) Ltd. and/or any of their parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with Simba Toys GmbH and Company KG, Simba Toys (France) and/or Simba Toys (Hong Kong) Ltd.

25.     "SIMBA LITIGATION" means any litigation between SIMBA TOYS and MATTEL, including, but not limited to, (1) the litigation in Germany resulting in a decision by the Bundesgerichtshof (BGH) on or about October 28, 2004; (2) litigation in France resulting in a decision by the Commercial Court of Paris on or about June 28, 2002; and (3) litigation in the United Kingdom before the High Court of Justice, Chancery Division, Patents Court under docket or reference number HC 03 CO 2684 in 2003.

26.     "UNIVERSAL" means Universal Commerce Corporation Limited and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with Universal Commerce Corporation Limited and any others acting on Universal Commerce Corporation Limited's behalf, pursuant to its authority or subject to its control.

27.     "ZEUS SERVER" means the "Zeus server" as defined in the deposition of MATTEL's 30(b)(6) witness, Julia Marine.

28.     The singular form includes the plural, and vice versa.

29.     The terms "any" and "all" are interchangeable.

30.     The terms "and" and "or" shall be construed disjunctively and conjunctively, and each shall include the other whenever such dual construction will serve to bring within the scope of any Request, DOCUMENTS that would otherwise not be within its scope.

- 7 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS



EXHIBIT _10_
PAGE _95_

**INSTRUCTIONS**

1.      YOU are instructed to produce all non-privileged DOCUMENTS in YOUR possession, custody or control.  A document is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another person or entity who has physical possession of the DOCUMENT.

2.      If any DOCUMENT or category of DOCUMENTS is not produced in full, please state with particularity the reason or reasons it is not being produced in full.

3.      Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized, separated, or identified.

4.      Each DOCUMENT maintained or stored electronically in native, electronic format is to be produced with all relevant metadata intact and in an appropriate and useable electronic manner.

5.      These Requests impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 470:**

All DOCUMENTS REFERRING OR RELATING TO any claims and/or litigation that MATTEL or FISHER-PRICE has brought or considered bringing against any PERSON regarding infringement of MY SCENE, DIVA STARZ, or any other intellectual property including, but not limited to, cease and desist letters.

**REQUEST NO. 471:**

All DOCUMENTS REFERRING OR RELATING TO any claims, threat of

- 8 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT __10__
PAGE __96__

1   litigation and/or litigation that any PERSON has asserted against MATTEL

2   regarding infringement by MY SCENE or DIVA STARZ, including, but not

3   limited to, cease and desist letters.

4   **REQUEST NO. 472:**

5       All DOCUMENTS REFERRING OR RELATING TO any SIMBA

6   LITIGATION, including, but not limited to, all pleadings, declarations, affidavits,

7   briefs, deposition transcripts, orders or other documents, and any English

8   translations thereof, submitted to the court by MATTEL or SIMBA TOYS in

9   support of its claims and defenses or any rulings or decisions issued by the court.

10  **REQUEST NO. 473:**

11      All DOCUMENTS REFERRING OR RELATING TO the creation and

12  development of the "We Believe in Girls" website, found at

13  www.webelieveingirls.com, that also mention BRATZ and/or MGA.

14  **REQUEST NO. 474:**

15      All DOCUMENTS REFERRING OR RELATING TO the mention of

16  BRATZ and/or MGA on the "We Believe in Girls" website, including, but not

17  limited to, any community bulletin boards.

18  **REQUEST NO. 475:**

19      Copies of all photographs taken by MATTEL (including, but not limited to,

20  MATTEL's counsel) during the course of its inspection of any DOCUMENT or

21  item made available to it by MGA or Bryant, including, but not limited to,

22  products, packaging, samples, sculptures, sketches, or drawings.

23  **REQUEST NO. 476:**

24      All DOCUMENTS RELATING TO YOUR efforts, or knowledge of any

25  efforts by any PERSONS, worldwide to monitor, "spy on" or gain knowledge of

26  MGA's trade secrets, non-public information, non-public activities, unreleased

27  products, and product development, including, but not limited to:

28

-9-

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT **10**
PAGE **97**

1      a.      DOCUMENTS REFERRING OR RELATING TO YOUR

2   COMMUNICATIONS or contacts with MGA's current or former employees or

3   contractors about MGA or its business, including, but not limited to, any tape

4   recordings of such COMMUNICATIONS;

5      b.      DOCUMENTS REFERRING OR RELATING TO YOUR use or

6   attempts to use confidential informants, spies, or moles within MGA, including, but

7   not limited to, any tape recordings  of MGA employees or contractors;

8      c.      DOCUMENTS REFERRING OR RELATING TO YOUR  knowledge

9   of any MGA product before its release to the public or of any other non-public

10  information about MGA, its business or its products;

11     d.      DOCUMENTS REFERRING OR RELATING TO YOUR access, or

12  attempts to gain access, to MGA showrooms,  Plan-o-Grams, merchandising

13  displays, Toy Fair displays on false pretenses (including, but not limited to, by

14  using fake business cards);

15     f.      DOCUMENTS REFERRING OR RELATING TO YOUR access to

16  MGA's products or showroom at any Toy Fair (including Hong Kong Toy Fair,

17  New York Toy Fair, Dallas Toy Fair, or Nuremberg Toy Fair);

18     h.      YOUR access to MGA's confidential product and pricing information

19  through "competitive management agreements" or "category management

20  agreements" with retailers; and

21     i.      YOUR access to MGA's confidential product and pricing information

22  from non-public sources and/or through non-public means.

23  **REQUEST NO. 477:**

24       All COMMUNICATIONS between YOU and any recruiting agency or

25  service including, but not limited to, Gregory Michaels & Associates, that REFER

26  OR RELATE TO recruiting or contacting any MGA employee to work for YOU.

27  **REQUEST NO. 478:**

28       All DOCUMENTS REFERRING OR RELATING to any use or

- 10 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _10_
PAGE _98_

1  contemplated use by YOU of any recruiting agency or service including, but not
2  limited to Gregory Michaels & Associates to contact or recruit any MGA employee
3  to work for YOU.

4  **REQUEST NO. 479:**

5  DOCUMENTS sufficient to show weekly and monthly point of sale data for
6  MY SCENE fashion dolls.

7  **REQUEST NO. 480:**

8  All DOCUMENTS REFERRING OR RELATING TO YOUR receipt,
9  reproduction, copying, storage, transmission, transfer, retention, destruction,
10  deletion, or use of any DOCUMENT identifying MGA products in the course of
11  any planning, design, development or revision of any YOUR products.

12  **REQUEST NO. 481:**

13  All DOCUMENTS, including, but not limited to, any compilation of
14  information, that were prepared, made, created, generated, assembled or compiled
15  by or for MGA or any MGA subsidiary, including MGAE de Mexico, S.R.L. de
16  C.V.

17  **REQUEST NO. 482:**

18  All DOCUMENTS, including, but not limited to, any compilation of
19  information, that were prepared, made, created, generated, assembled or compiled
20  by or for MGA or any MGA subsidiary, and that YOU received from any third
21  party, including Rachel Harris or Fred Larian.

22  **REQUEST NO. 483:**

23  All investigative files REFERRING OR RELATING to BRYANT, MGA or
24  any of its employees, including but not limited to file numbers 02-299, 02-1680,
25  and 03-034.

26  **REQUEST NO. 484:**

27  DOCUMENTS sufficient to show the directory structure of the ZEUS
28  SERVER as it relates to MATTEL's girls toys division.

- 11 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT **10**
PAGE **99**

1  **REQUEST NO. 485:**

2      All DOCUMENTS, since January 1, 1999, REFERRING OR RELATING

3  TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention,

4  destruction, deletion or use of any DOCUMENTS, including but not limited to any

5  compilation of information, that were prepared, made, created, generated,

6  assembled or compiled by or for MGA or any MGA subsidiary, including MGAE

7  de Mexico, S.R.L. de C.V. in Mexico City.

8  **REQUEST NO. 486:**

9      All DOCUMENTS REFERRING OR RELATING TO YOUR or YOUR

10  attorney's or agent's knowledge of or participation in the investigation or search of

11  MGAE de Mexico, S.R.L. de C.V. in Mexico City.

12  **REQUEST NO. 487:**

13      All DOCUMENTS REFERRING OR RELATING TO whether any of the

14  items seized by Mexican authorities from MGAE de Mexico, S.R.L. de C.V. in

15  Mexico City were prepared, made, created, generated, assembled or compiled by or

16  for MGA or any MGA subsidiary.

17  **REQUEST NO. 488:**

18      All DOCUMENTS REFERRING OR RELATING TO YOUR knowledge

19  that any of the items seized by Mexican authorities from MGAE de Mexico, S.R.L.

20  de C.V. in Mexico City were prepared, made, created, generated, assembled or

21  compiled by or for MGA or any MGA subsidiary.

22  **REQUEST NO. 489:**

23      All DOCUMENTS REFERRING OR RELATING TO YOUR or YOUR

24  attorney's or agent's knowledge of or participation in the seizure of Brisbois'

25  thumb drive by Canadian law enforcement.

26  **REQUEST NO. 490:**

27      All DOCUMENTS REFERRING OR RELATING TO whether any of the

28  items seized by Canadian authorities from Brisbois' thumb drive were prepared,

- 12 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT **10**
PAGE **100**

1  made, created, generated, assembled or compiled by or for MGA or any MGA

2  subsidiary.

3  **REQUEST NO. 491:**

4      All DOCUMENTS REFERRING OR RELATING TO YOUR knowledge

5  that any of the items seized by Canadian authorities from Brisbois' thumb drive

6  were prepared, made, created, generated, assembled or compiled by or for MGA or

7  any MGA subsidiary.

8  **REQUEST NO. 492:**

9      All DOCUMENTS that REFER OR RELATE TO the retention, destruction,

10  transfer, or use of any information or DOCUMENTS known to or possessed by any

11  current or former MGA employee, freelancer or contractor, including but not

12  limited to Tina Patel, Christopher Hardouin, Margo Eldridge, Charlotte Broussard,

13  and Andrew Gallerani.

14  **REQUEST NO. 493:**

15      All COMMUNICATIONS between YOU and any PERSON REFERRING

16  OR RELATING TO the retention, destruction, transfer, or use of any information

17  or DOCUMENTS known to or possessed by any current or former MGA employee,

18  freelancer or contractor, including but not limited to Tina Patel, Christopher

19  Hardouin, Margo Eldridge, Charlotte Broussard, and Andrew Gallerani.

20  **REQUEST NO. 494:**

21      All COMMUNICATIONS between YOU and Tina Patel prior to her date of

22  hire by MATTEL.

23  **REQUEST NO. 495:**

24      All DOCUMENTS REFERRING OR RELATING TO

25  COMMUNICATIONS between YOU and Tina Patel prior to her date of hire by

26  MATTEL, including but not limited to all calendar entries, phone logs, phone

27  records and notes reflecting such COMMUNICATIONS.

28  **REQUEST NO. 496:**

- 13 -


EXHIBIT **10**
PAGE ___**102**___

1     All DOCUMENTS, including but not limited to all COMMUNICATIONS

2    with any PERSON, REFERRING OR RELATING TO Tina Patel prior to her date

3    of hire by MATTEL.

4    **REQUEST NO. 497:**

5     All DOCUMENTS, including but not limited to all COMMUNICATIONS

6    with any PERSON, REFERRING OR RELATING TO Tina Patel's resignation

7    from MGA.

8    **REQUEST NO. 498:**

9     All DOCUMENTS, including but not limited to all COMMUNICATIONS

10   with any PERSON, REFERRING OR RELATING TO compensation, money or

11   any other item of value paid to Tina Patel, whether directly or indirectly, by YOU.

12   **REQUEST NO. 499:**

13    All DOCUMENTS received by YOU, directly or indirectly, from Tina Patel

14   REFERRING OR RELATING TO any MGA product or plan.

15   **REQUEST NO. 500:**

16    All DOCUMENTS, including but not limited to all COMMUNICATIONS

17   with any PERSON, REFERRING OR RELATING TO YOUR receipt,

18   reproduction, copying, storage, transmission, transfer, retention, destruction,

19   deletion or use of any DOCUMENTS, data and/or information, including but not

20   limited to any compilation of information, that was prepared, made, created,

21   generated, assembled or compiled by or for MGA and that YOU received, directly

22   or indirectly, from Tina Patel.

23   **REQUEST NO. 501:**

24    A copy of each personnel file maintained or created by YOU REFERRING

25   OR RELATING TO Tina Patel.

26   **REQUEST NO. 502:**

27    All DOCUMENTS, including but not limited to all COMMUNICATIONS,

28   prepared, created, sent or transmitted, whether in whole or in part, by Tina Patel

- 14 -

EXHIBIT **10**
PAGE **102**

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

1    REFERRING OR RELATING TO any of the CONTESTED MGA PRODUCTS.

2    **REQUEST NO. 503:**

3    All COMMUNICATIONS between YOU and Christopher Hardouin prior to

4    his date of hire by MATTEL.

5    **REQUEST NO. 504:**

6    All DOCUMENTS REFERRING OR RELATING TO

7    COMMUNICATIONS between YOU and Christopher Hardouin prior to his date of

8    hire by MATTEL, including but not limited to all calendar entries, phone logs,

9    phone records and notes reflecting such COMMUNICATIONS.

10   **REQUEST NO. 505:**

11   All DOCUMENTS, including but not limited to all COMMUNICATIONS

12   with any PERSON, REFERRING OR RELATING TO Christopher Hardouin prior

13   to his date of hire by MATTEL.

14   **REQUEST NO. 506:**

15   All DOCUMENTS, including but not limited to all COMMUNICATIONS

16   with any PERSON, REFERRING OR RELATING TO Christopher Hardouin's

17   resignation from MGA.

18   **REQUEST NO. 507:**

19   All DOCUMENTS, including but not limited to all COMMUNICATIONS

20   with any PERSON, REFERRING OR RELATING TO compensation, money or

21   any other item of value paid to Christopher Hardouin, whether directly or

22   indirectly, by YOU.

23   **REQUEST NO. 508:**

24   All DOCUMENTS received by YOU, directly or indirectly, from

25   Christopher Hardouin REFERRING OR RELATING TO any MGA product or

26   plan.

27   **REQUEST NO. 509:**

28   All DOCUMENTS, including but not limited to all COMMUNICATIONS

- 15 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT **10**

PAGE **103**

1  with any PERSON, REFERRING OR RELATING TO YOUR receipt,

2  reproduction, copying, storage, transmission, transfer, retention, destruction,

3  deletion or use of any DOCUMENTS, data and/or information, including but not

4  limited to any compilation of information, that was prepared, made, created,

5  generated, assembled or compiled by or for MGA and that YOU received, directly

6  or indirectly, from Christopher Hardouin.

7  **REQUEST NO. 510:**

8      A copy of each personnel file maintained or created by YOU REFERRING

9  OR RELATING TO Christopher Hardouin.

10  **REQUEST NO. 511:**

11      All DOCUMENTS, including but not limited to all COMMUNICATIONS,

12  prepared, created, sent or transmitted, whether in whole or in part, by Christopher

13  Hardouin REFERRING OR RELATING TO any of the CONTESTED MGA

14  PRODUCTS.

15  **REQUEST NO. 512:**

16      All DOCUMENTS REFERRING OR RELATING TO the creation, origins

17  or sources of inspiration of "POLLY POCKET COLOR SURPRISE POLLY"

18  including, without limitation, the creation, origins or sources of inspiration of the

19  pose of "POLLY POCKET COLOR SURPRISE POLLY."

20  **REQUEST NO. 513:**

21      All DOCUMENTS REFERRING OR RELATING TO any similarity or

22  dissimilarity between "POLLY POCKET COLOR SURPRISE POLLY" and any

23  MGA product (whether released or unreleased) known to YOU, including but not

24  limited to any similarity or dissimilarity between the pose of "POLLY POCKET

25  COLOR SURPRISE POLLY" and the pose of any MGA product known to YOU.

26  **REQUEST NO. 514:**

27      All DOCUMENTS REFERRING OR RELATING TO whether the

28  appearance or pose of "POLLY POCKET COLOR SURPRISE POLLY" copies,

- 16 -

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT __10__
PAGE __104__

1  replicates, or in any way imitates the appearance or pose of any MGA product

2  (whether released or unreleased) known to YOU.

3  **REQUEST NO. 515:**

4      DOCUMENTS, including but not limited to organizational charts, sufficient

5  to identify (by name and job function) all current and former MATTEL personnel

6  and/or freelancers comprising the primary team that worked on the creation, design

7  and development of "POLLY POCKET COLOR SURPRISE POLLY."

8  **REQUEST NO. 516:**

9      All DOCUMENTS REFERRING OR RELATING TO YOUR efforts to

10 institute a litigation hold in response to the litigation originally captioned *Mattel,*

11 *Inc. v. Bryant.*, Case No.  CV 04-9059 SGL (RNBx).

12 **REQUEST NO. 517:**

13     All DOCUMENTS REFERRING OR RELATING TO YOUR efforts to

14 institute a litigation hold in response to the litigation originally captioned *MGA*

15 *Entertainment, Inc. v. Mattel, Inc.*, Case No.  CV 05-02727 SGL (RNBx).

16 **REQUEST NO. 518:**

17     All DOCUMENTS REFERRING OR RELATING TO YOUR efforts to

18 institute a litigation hold in response to the litigation originally captioned *Bryant v.*

19 *Mattel, Inc.*, Case No.  CV 04-9049 SGL (RNBx).

20 **REQUEST NO. 519:**

21     All COMMUNICATIONS between YOU and the toy manufacturer JETTA

22 REFERRING OR RELATING to MGA, BRATZ or LARIAN.

23 **REQUEST NO. 520:**

24     All COMMUNICATIONS between YOU and EARLY LIGHT, including

25 but not limited to Francis Choi, Wilson Ng, and Carmen Choi, REFERRING OR

26 RELATING to MGA, BRATZ or LARIAN.

27 **REQUEST NO. 521:**

28     All COMMUNICATIONS between YOU and ASAHI REFERRING OR

MGA'S FIFTH SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT **10**
PAGE **105**

1 | RELATING to MGA, BRATZ or LARIAN.

2 | **REQUEST NO. 522:**

3 | All COMMUNICATIONS between YOU and UNIVERSAL REFERRING

4 | OR RELATING to MGA, BRATZ or LARIAN.

5 | **REQUEST NO. 523:**

6 | All COMMUNICATIONS between YOU and KANEKA REFERRING OR

7 | RELATING to MGA, BRATZ or LARIAN.

8 | **REQUEST NO. 524:**

9 | All COMMUNICATIONS between YOU and FILO REFERRING OR

10 | RELATING to MGA, BRATZ or LARIAN.

11 | **REQUEST NO. 525:**

12 | Copies of all producers' affidavits for any ADVERTISEMENT for MY

13 | SCENE or ACCELERACERS.

14 | **REQUEST NO. 526:**

15 | All DOCUMENTS that constitute COMMUNICATIONS between YOU

16 | (including YOUR agents and attorneys) and law enforcement authorities in Mexico,

17 | Canada or the United States, including but not limited to the United States

18 | Attorney's Office, the Department of Justice and any national, regional, state or

19 | local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS

20 | or any other alleged taking of confidential MATTEL information by MGA or

21 | persons currently or formerly employed by MGA.

22 | **REQUEST NO. 527:**

23 | All DOCUMENTS REFERRING OR RELATING TO Board of Directors

24 | meetings in which MGA, BRATZ, LARIAN, Mel Woods, Ron Brawer, Janine

25 | Brisbois, Carlos Custavo Machado Gomez, Mariana Trueba Almada, or Pablo

26 | Vargas San Jose were discussed, including, but not limited to, meeting minutes,

27 | notes and memoranda.

28 | **REQUEST NO. 528:**

- 18 -

EXHIBIT __10__
PAGE __106__

1    All DOCUMENTS that YOU (including YOUR agents and attorneys)

2    provided to law enforcement authorities in Mexico, Canada or the United States,

3    including but not limited to the United States Attorney's Office, the Department of

4    Justice and any national, regional, state or local authorities, concerning any of the

5    allegations in YOUR COUNTERCLAIMS or any other alleged taking of

6    confidential MATTEL information by MGA or persons currently or formerly

7    employed by MGA.

8    **REQUEST NO. 529:**

9    All DOCUMENTS that support the information and belief alleged in

10   paragraphs 42, 43, 47, 49, 51, 52, 68, 74 and 77 of YOUR COUNTERCLAIMS.

11   **REQUEST NO. 530:**

12   All DOCUMENTS, including but not limited to agreements, draft

13   agreements and correspondence, REFERRING OR RELATING TO the payment or

14   offer of payment of attorneys fees by MATTEL to any PERSON in connection this

15   ACTION.

16   **REQUEST NO. 531:**

17   DOCUMENTS sufficient to show YOUR fee arrangement with YOUR

18   counsel Quinn Emanuel Urquhart Oliver & Hedges LLP for services in connection

19   with this ACTION, including, but not limited to, a copy of the fee agreement or

20   retainer agreement between YOU and Quinn Emanuel Urquhart Oliver & Hedges

21   LLP.

22

23   Dated: August 3, 2007                    O'MELVENY & MYERS LLP

24

25                                            _Melanie Bradley_

26                                            Melanie Bradley
                                              Attorneys for MGA Entertainment, Inc.
27

28   1704218

EXHIBIT **10**
PAGE **107**

- 19 -

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4          I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 400 South Hope Street, Los Angeles, California 90071-2899.

5

6          On August 3, 2007, I caused to be personally served the following documents:

7     **1.  MGA'S FIFTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS IN CASE NO. 05-2727.**

8

9

10   upon counsel named below by placing a true and correct copy thereof in an envelope addressed as follows:

11                     John Quinn, Esq.
12                   Michael T. Zeller, Esq.
                     QUINN EMANUEL URQUHART
13                     OLIVER & HEDGES, LLP
14                  865 Figueroa Street, 10th Floor
                   Los Angeles, California  90017
15

16   ☒   (By Personal Service) I prepared such envelope to be delivered by hand to the addressee(s) by Nationwide Legal, Inc. Attorney Services, whose address is 316
17       W. 2nd Street, Suite 705, Los Angeles, California  90012.

18

19   ☐   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20   ☒   (Federal) I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

21

22          Executed on August 3, 2007, at Los Angeles, California.

23

24                                   Mary C. Layman

25

26

27

28
LA2:830924.1

EXHIBIT __10__
PAGE ___104__

## PROOF OF PERSONAL SERVICE

I am a citizen of the United States and employed in the County of Los Angeles, State of California, by Nationwide Legal, Inc., whose address is 316 W. 2nd Street, Suite 705, Los Angeles, CA 90012.  I am over the age of eighteen years and not a party to the within action.  On May 8, 2007, I personally served the following:

**1. MGA'S FIFTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS IN CASE NO. 05-2727.**

by delivering a copy thereof to the office of the following, and either handing the copy to or leaving it with the _____ of the office thereof:

### Service List

**Michael T. Zeller, Esq.**
**QUINN EMANUEL URQUHART**
**OLIVER & HEDGES, LLP**
**865 Figueroa Street, 10th Floor**
**Los Angeles, California  90017**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on May 8, 2006, at Los Angeles, California.

SIGNATURE: _____

PRINTED NAME: _____

EXHIBIT __10__
PAGE __109__

LA2:830925.1