Patricia L. Glaser, State Bar No. 055668
  pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
  jklevens@glaserweil.com
GLASER, WEIL, FINK, JACOBS,
  HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: 310-553-3000
Facsimile: 310-556-2920

Attorneys for the MGA Parties for Phase 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**Hon. Stephen J. Larson**<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S *EX PARTE* APPLICATION FOR AN ORDER THAT MATTEL NEED NOT RESPOND TO MGA PARTIES' OPPOSITION TO TEMPORARY RECEIVER'S MOTION FOR APPROVAL OF HIS FINAL ACCOUNT**<br><br>**Phase 2**<br>Discovery Cut-off: December 11, 2009<br>Pre-Trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

681158

## I. Introduction

Mattel contends that it "should be relieved of the burden of substantively responding" to the argument set forth in the MGA Parties' recently-filed opposition to the Temporary Receiver's motion for approval of his final account, report and compensation upon the termination of the temporary receivership. Mattel would have the Court ignore the fatal procedural defects of its *ex parte* motion, bypass regular motion procedures and relegate other litigants to a secondary priority in order to give Mattel an advisory opinion that it "need not respond" to the substance of an argument on the ground that said argument is procedurally defective. The *ex parte* motion's insistence that the Court demand strict procedural compliance is entirely self-defeating, because it is the *ex parte* motion itself that is procedurally defective. Under the principles set forth in *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), the motion should be summarily denied for its failure to even attempt to establish that bypassing regular motion procedures is necessary to avoid irreparable prejudice to Mattel's cause. The only "prejudice" that Mattel seeks to avoid is having to address the merits of a genuine issue.

Moreover, Mattel's contention that the MGA Parties' argument--that, pursuant to Ninth Circuit precedent, Mattel should bear the costs of the temporary receivership in the first instance--is "improper" is premised on false or misleading characterizations of the argument and the Court's statements on the record.

## II. Argument

### A. Applicable Legal Standard for *Ex Parte* Motions

The Court's Standing Order, which is attached to counsel's declaration in support of Mattel's *ex parte* motion, selects only seven cases for citation. One of those case citations follows the Court's admonishment in paragraph 6 that "[c]ounsel are reminded that ex parte applications are solely for extraordinary relief." *Id*. (citing *Mission*, 883 F. Supp. 488.

In *Mission*, the plaintiff filed an *ex parte* application for an order shortening

681158

**1**

**MGA PARTIES' OPP'N TO MATTEL'S *EX PARTE* APPLICATION**
**Case No. CV 04-9049 SGL (RNBx)**

1  time to hear the plaintiff's motion to compel the return of privileged documents that
2  the plaintiff had inadvertently produced in response to a request for production.
3  *Mission*, 883 F. Supp. at 489.  In response, the defendant filed its own *ex parte*
4  application - for an order striking the plaintiff's *ex parte* application.  Magistrate
5  Judge Burns was so displeased by the "abusive use of ex parte motions" of "epidemic
6  proportions in the Central District," he authored an opinion, not only for the benefit of
7  the parties before him, but all lawyers who practice in this District.  *Id.* at 489-490.
8  True to purpose, the opinion reads much like a practice guide.  It begins by explaining
9  the nature of an *ex parte* motion.  *Id*. at 490.  Next, it outlines the problems created by
10 *ex parte* motions.  *Id*. at 491.  Last, it explains what a proper *ex parte* motion consists
11 of.  *Id*. at 492.

12     Magistrate Judge Burns explained how judges give priority to *ex parte* motions.
13 They "drop[] everything except other urgent matters to study the papers" based on the
14 assumption of a critical exigency and "that all will be lost unless immediate action is
15 taken."  *Id*. at 491-492.  Because judges stop processing other motions relegating
16 other litigants to a secondary priority, the opinion cautions:  "Lawyers must
17 understand that filing an ex parte motion, whether of the pure or hybrid type, is the
18 forensic equivalent of standing in a crowded theater and shouting, 'Fire!'  There had
19 better be a fire."  *Id*. at 492.

20     Magistrate Judge Burns further explained that a proper *ex parte* motion always
21 consists of two physically separate and distinct parts: the first part addresses why "the
22 moving party should be allowed to go to the head of the line in front of all other
23 litigants and receive special treatment;" and the second part "consists of papers
24 identical to those that would be filed to initiate a regular noticed motion (except that
25 they are denominated as a 'proposed' motion and they show no hearing date)."  *Id.* at
26 492.  In order to justify *ex parte* relief, the first part must be supported by admissible
27 evidence "show[ing] that the moving party's cause will be <u>irreparably prejudiced</u> if
28 the underlying motion [*viz.*, the second part] is heard according to regular noticed

681158

**2**

motion procedures." *Id.* at 492 (emphasis added).

### B. Mattel's *Ex Parte* Motion Should be Summarily Denied for its Failure to Identify any Justification for *Ex Parte* Relief

Mattel's *ex parte* motion is clear about the ultimate relief it seeks. Namely, Mattel seeks an advisory opinion from this Court that it "need not respond" to the substantive merits of a certain argument of the MGA Parties, which Mattel contends the MGA Parties raised in a "procedurally improper fashion." (Proposed Order 2 ¶ 1; Mot. 1.) However, Mattel's *ex parte* motion makes no attempt whatsoever to even state as a conclusion, let alone demonstrate by admissible evidence, that Mattel will be "irreparably prejudiced" if it were to seek the requested relief according to regular noticed motion procedures. *Mission*, 883 F. Supp. at 492. Consequently, Mattel's *ex parte* motion violates the principal tenet of the *Mission* opinion (and paragraph 6 of the Court's Standing Order) and should be summarily denied for that reason alone.[1] Mattel's *ex parte* motion thus collapses before it ever leaves the starting gate.

### C. Mattel's *Ex Parte* Motion is Premised on False Assumptions

Mattel argues that "the Court has instructed . . . any <u>final</u> determinations on cost-shifting are 'premature' and therefore Mattel should be relieved of responding at this time to the cost-shifting arguments" advanced by the MGA Parties in their opposition to the Temporary Receiver's motion for approval of his final account, report and compensation. (Notice 2 (emphasis added).) However, in their opposition

---

[1] The MGA's Parties' attempt to resolve the issues raised by Mattel without unnecessary and unjustifiable *ex parte* motion practice is memorialized in the email attached as Exhibit A to the declaration of Caroline H. Mankey. This email, contrary to the assertion in paragraph 2 of the declaration of Scott L. Watson, was received by Mr. Watson 20 minutes <u>before</u> Mattel filed its *ex parte* motion. Mr. Watson's reply to the MGA Parties' proposal undermines the sincerity of the alternative relief of a briefing schedule requested in Mattel's *ex parte* motion. Mr. Watson's reply asserts that "A proposal that the parties set a briefing schedule on these issues does nothing to cure the fact that MGA's cost-shifting request is both premature and directly contrary to the Court's unambiguous direction."

681158

to the Temporary Receiver's motion, the MGA Parties do not seek a "final" determination on cost shifting. Rather, the MGA Parties' "brief addresses who should pay the costs of the temporary receivership in the first instance" based on highly analogous precedent. (Opp'n 1 (emphasis added).) The brief demonstrates that applicable Ninth Circuit case law directs the Court to allocate to Mattel the total expenses of the temporary receivership (which was procured by Mattel for its exclusive benefit and terminated by the Court as inequitable), until it is established that the MGA Entities somehow benefited from the receivership. (Opp'n 2 & generally.)

Further, Mattel's quotes of the Court's statements on the record during the May 18 hearing are incomplete and misleading. The Court did not issue an unequivocal "directive" that the present cost reallocation requested by the MGA Parties is premature until much later or final adjudication of the Phase 2 claims. (Mot. 4.) Rather, the Court explained: "I'm not setting a time for [cost reallocation] at this point. I'm just suggesting that [soon] might be premature." (5/18/09 Rep.'s Tr. 80:21-22 (emphasis added).) At the time of these tentative thoughts, the Court did not have the benefit of any briefing by the parties regarding the applicable case law. *See United States v. Guess*, 2005 U.S. Dist. LEXIS 14237, generally, 96 A.F.T.R.2d (RIA) 5193 (S.D. Cal. 2005); *Commodity Future Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 306 (9th Cir. 1996).

In order to avoid responding to the merits of the MGA Parties' cost argument, Mattel claims the argument is procedurally defective because it was raised in opposition to the Temporary Receiver's motion for approval of his final account, report and compensation. In fact, that is precisely how the parties raised the issue in *Guess*. Indeed, the *Guess* opinion is entitled "Order re Application of Temporary Receiver for Approval of Fees and Expenses." *Id.*, 2005 U.S. Dist. LEXIS 14237, at *3. The cost issue raised by the MGA Parties' is clearly ripe, and even if it were not, that would not justify the *ex parte* relief sought by Mattel here.

**D.  The MGA Parties Would Not Oppose an AEO Review by Mattel's Counsel of Exhibit A to the Woolard Declaration on the Condition that Said Review Does not Waive any Applicable Privilege to Other Communications between the MGA Parties and the Temporary Receiver and/or his Counsel**

Mattel's *ex parte* motion also seeks an order from the Court requiring the MGA Parties to produce the communications attached as Exhibit A to the declaration of John Woolard or, alternatively, disregarding those communications.  (Mot. 6-7.)  Again, Mattel has made no attempt to demonstrate any crisis that necessitates the bypassing of regular noticed motion procedures to obtain this relief.  Nonetheless, provided that any applicable privilege to any other communications between the MGA Parties and the Temporary Receiver and/or his counsel remains unaffected, the MGA Parties would not oppose an attorney eyes only review by Mattel's counsel of the subject Exhibit.  The MGA Parties would agree to such review by Mattel's counsel so long as Mattel is precluded from later taking the position that the MGA Parties have waived any privilege by agreeing to the review.  The MGA Parties would have agreed to such a compromise by stipulation, if asked, without the abusive use of an *ex parte* motion.

### III.  Conclusion

For the above reasons, especially the principles set forth in *Mission*, the MGA Parties respectfully submit that the Court should deny Mattel's *ex parte* motion to "be relieved of the burden of substantively responding" to the MGA Parties' opposition to the Temporary Receiver's motion for approval of his final account.

Dated:  July 2, 2009
        Patricia L. Glaser
        Joel N. Klevens
        GLASER, WEIL, FINK, JACOBS
         HOWARD & SHAPIRO, LLP

        By:  ___/S/ — Joel N. Klevens___
          Attorneys for the MGA Parties
          for Phase 2

681158