# EXHIBIT 6

EXHIBIT FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER

# EXHIBIT 7

**FILED**

UNITED STATES COURT OF APPEALS

JUN 29 2009

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | No. 09-55673 |
|     Defendant-counter-claimant - Appellee | D.C. No. 2:04-cv-09049-SGL |
| v. | Central District of California, |
| MGA ENTERTAINMENT, INC.; et al., | Los Angeles |
|     Counter-defendants - Appellants, | |
| CARTER BRYANT, an individual, | |
|     Plaintiff-counter-defendant, | |
| CARLOS GUSTAVO MACHADO GOMEZ, an individual; et al., | |
|     Counter-defendants, | |
| ANNE WANG, | |
|     Third-party-defendant, | |
| OMNI 808 INVESTORS LLC, | |
|     Movant. | |

KW/MOATT

EXHIBIT ___7___

PAGE ___104___

| | |
|---|---|
| CARTER BRYANT, an individual, | No. 09-55812 |
| Plaintiff-counter-defendant - Appellee and | D.C. No. 2:04-cv-09049-SGL Central District of California, Los Angeles |
| MGA ENTERTAINMENT, INC.; et al., | |
| Counter-defendants - Appellees v. | ORDER |
| MATTEL, INC., a Delaware corporation, | |
| Defendant-counter-claimant - Appellant, | |
| CARLOS GUSTAVO MACHADO GOMEZ, an individual; et al., | |
| Counter-defendants. | |

Before: KOZINSKI, Chief Judge, PAEZ and TALLMAN, Circuit Judges.

The motion to seal documents is granted.

The motion for partial release of *in camera* juror interview transcripts is denied without prejudice to renewal following presentation to the district court and the district court's issuance of an order granting or denying the motion. *See* Fed. R. App. P. 8(a).

The court has also received an informal request from Thomson Reuters to unseal the same documents. That request is also denied without prejudice to

EXHIBIT ___7___
PAGE ___105___

renewal following presentation to the district court and the district court's issuance of an order granting or denying the request.  *See* Fed. R. App. P. 8(a).

    The briefing schedule established previously shall remain in effect.

09-55673

EXHIBIT ___7___
PAGE ___106___

# EXHIBIT 8

`FILED`

**SEND**

2006 APR 14  AM 11: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, | ) | Case No. CV 04-09049 SGL(RNBx) |
| Plaintiff, | ) | STANDING ORDER |
| v. | ) | |
| MATTEL, INC., | ) | |
| Defendant. | ) | |

**READ THIS ORDER CAREFULLY.  IT CONTROLS THE CASE
AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

This action has been assigned to the calendar of Judge Stephen G. Larson.
Both the Court and the attorneys bear responsibility for the progress of litigation in
the Federal Courts.  To secure the just, speedy, and inexpensive determination of
every action, Fed. R. Civ. P. 1, all counsel of record are ordered to familiarize
themselves with the Federal Rules of Civil Procedure and the Local Rules of the
Central District of California.

IT IS HEREBY ORDERED:

1.    **Service of the Complaint:**  The Plaintiff shall promptly serve the
Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant
to Local Rule 5-3.1.

EXHIBIT ___8___
PAGE ___107___

4-14

DOCKETED ON CM

APR 1 4 2006

(33)

**2.** **Presence of Lead Counsel:** Lead trial counsel shall attend all proceedings before this Court, including all status and settlement conferences. Failure of lead trial counsel to appear for those proceedings without express leave of court is a basis for sanctions.

**3.** **Discovery:** All discovery matters have been referred to a United States Magistrate Judge (see initial designation following the case number) to hear all discovery disputes. The words "DISCOVERY MATTER" shall appear in the caption of all documents relating to discovery to insure proper routing. Counsel are directed to contact the Magistrate Judge Courtroom Deputy Clerk for the assigned Magistrate Judge to schedule matters for hearing.

The decision of the Magistrate Judge shall be final, subject to modification by the District Court only where it has been shown that the Magistrate Judge's order is clearly erroneous or contrary to law.

Any party may file and serve a motion for review and reconsideration before this Court. The party seeking review must do so within ten (10) days of service upon the party of a written ruling or within ten (10) days of an oral ruling that the Magistrate Judge states will not be followed by a written ruling. The motion must specify which portions of the text are clearly erroneous or contrary to law and the claim must be supported by points and authorities. A copy of the moving papers and responses shall be delivered to the Magistrate Judge's clerk for review upon the filing of the required documents.

Unless there is a likelihood that upon motion by a party the court would order that any or all discovery is premature, it is advisable for counsel to begin to conduct discovery actively before the Scheduling Conference. At the very least, the parties shall comply fully with the letter and spirit of Fed. R. Civ. P. 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery, because

2

EXHIBIT ___8___
PAGE ___108___

1  the Court will impose tight deadlines to complete discovery at the Scheduling

2  Conference.

3       If expert witnesses are to be called at trial, the parties shall designate experts to

4  be called at trial and provide reports required by Fed. R. Civ. P. 26(a)(2)(B) not later

5  than eight (8) weeks prior to the discovery cutoff date. Rebuttal expert witnesses

6  shall be designated and reports provided as required by Fed. R. Civ. P. 26(a)(2)(B)

7  not later than five (5) weeks prior to the discovery cutoff date. Failure to timely

8  comply with this deadline may result in the expert being excluded at trial as a

9  witness.

10      **4.**    <u>**Motions:**</u>

11      **(a)**    <u>**Time for Filing and Hearing Motions:**</u> Motions shall be filed in

12  accordance with Local Rules 6-1 and 7-2, etc.[1] This Court hears motions on

13  Mondays, commencing at 10:00 a.m. No supplemental brief shall be filed without

14  prior leave of Court. Conformed courtesy copies of opposition and reply papers shall

15  be delivered to the courtesy box on the wall outside the entrance to Courtroom No.

16  One, located on the Second Floor of the U.S. Courthouse, 3470 Twelfth Street,

17  Riverside, California, **by 4:00 p.m. on the date due.** Many motions to dismiss or to

18  strike could be avoided if the parties confer in good faith (as they are required to do

19  under L.R. 7-3), especially for perceived defects in a complaint, answer, or

20  counterclaim which could be corrected by amendment. See <u>Chang v. Chen</u>, 80 F.3d

21  1293, 1296 (9th Cir. 1996) (where a motion to dismiss is granted, a district court

22  should provide leave to amend unless it is clear that the complaint could not be saved

23  by *any* amendment). Moreover, a party has the right to amend its complaint "once as

24

25      [1]    Among other things, Local Rule 7-3 requires counsel to engage in a pre-filing

26  conference "to discuss thoroughly . . . the substance of the contemplated motion and any
potential resolution." Counsel should discuss the issues sufficiently so that if a motion is

27  still necessary, the briefing may be directed to those substantive issues requiring resolution
by the Court. Counsel should resolve minor procedural or other nonsubstantive matters

28  during the conference.

EXHIBIT   8

PAGE   109

Received:   4/14/06   3:55PM;                RightFAX -> JetFax M920;  Page 5
RightFAX                    4/1  2006  3:55    PAGE 005/011   Fax Server

1  a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P.

2  15(a).  A 12(b)(6) motion is not a responsive pleading for purposes of Rule 15(a) and

3  therefore plaintiff might have a right to amend.  See Nolen v. Fitzharris, 450 F.2d

4  958, 958-59 (9th Cir. 1971); St. Michael's Convalescent Hospital v. California, 643

5  F.2d 1369, 1374 (9th Cir. 1981).  Even where a party has amended its Complaint

6  once, or where a responsive pleading  has been served, the Federal Rules provide that

7  leave to amend should be "freely given when justice so requires."  Fed.R.Civ.P.

8  15(a).  The Ninth Circuit requires that this policy favoring amendment be applied

9  with "extreme liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074,

10  1079 (9th Cir. 1990).  These principles require that counsel for the plaintiff should

11  carefully evaluate the defendant's contentions as to the deficiencies in the complaint

12  and, in many instances, the moving party should agree to any amendment that would

13  cure a curable defect.

14      In the unlikely event that motions under Fed. R. Civ. P. 12 challenging

15  pleadings are filed after the Rule 16 Scheduling Conference, the moving party shall

16  attach a copy of the challenged pleading to the Memorandum of Points and

17  Authorities in support of the motion.

18      The foregoing provisions apply as well to motions to dismiss a counterclaim,

19  answer, or  affirmative defense that a plaintiff might file.

20          **(b)    Length and Format of Motion Papers:  Memoranda of Points**

21  **and Authorities in support of or in opposition to motions shall not exceed 25**

22  **pages.  Replies shall not exceed 12 pages.**  Only in rare instances and for good cau

23  shown will the Court grant an application to extend these page limitations.

24      Typeface shall comply with Local Rule 11-3.1.1. If Times Roman font is use

25  the size must be no less than 14; if Courier is used, the size must be no less than 12.

26  Footnotes shall be in typeface no less than one size smaller than text size

27

28

EXHIBIT   8
PAGE    110

Received:  4/14/06  3:55PM;              RightFAX -> JetFax M920;  Page 6
RightFAX        4/1  2006 3:55  PAGE 006/011  Fax Server

1   and shall be used sparingly.

2        Filings that do not conform to the Local Rules and this Order will not be

3   considered.

4        **(c)**  **Citations to Case Law:** Citations to case law **must** identify not

5   only the case being cited, but the specific page being referenced. Certain kinds of

6   authority are considered more useful - or authoritative - than others. If more than one

7   authority is cited in support of a proposition, these supporting authorities are to be

8   listed such that the more authoritative ones appear first.

9        **(d)**  **Citations to Statutory Sources:** Counsel are reminded that the

10  basic purpose of a legal citation is to allow the reader to locate a cited source

11  accurately and efficiently. Accordingly, statutory references should identify, with

12  specificity, which sections and subsections are being referenced (e.g., Jurisdiction

13  over this cause of action may appropriately be found in 47 U.S.C. § 33, which grants

14  the district courts jurisdiction over all offenses of the Submarine Cable Act, whether

15  the infraction occurred within the territorial waters of the United States or on board a

16  vessel of the United States outside said waters). Statutory references which do not

17  indicate specifically which section and subsection are being referred to (e.g.,

18  Plaintiffs allege conduct in violation of the Federal Electronic Communication

19  Privacy Act, 18 U.S.C. § 2511, et seq.) are to be **avoided.** Citations to treatises,

20  manuals, and other materials should similarly include the volume and the section

21  being referenced.

22       **(e)**  **Citations to Other Sources:** Parties offering evidence in support

23  of, or in opposition to, a motion (notably a Rule 56 motion) must cite to specific page

24  and line numbers in depositions and paragraph numbers in affidavits. Furthermore,

25  such evidence must be authenticated properly. The Court directs the parties to

26  become familiar with Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir.

27  2002).

28

EXHIBIT ___8___

PAGE ___111___

1       (f)    **Courtesy Copies:** Counsel shall deliver a conformed courtesy

2  copy of all opposition and reply papers in motion matters to the courtesy box on the

3  wall outside the entrance to Courtroom No. One, located on the Second Floor of the

4  U.S. Courthouse, 3470 Twelfth Street, Riverside, California, **by 4:00 p.m. on the**

5  **date due.**

6       (g)    **Limits on Motions**

7           **(1) Motions for Summary Judgement or Partial Summary**

8  **Judgement:** No party may file more than one motion pursuant to

9  Fed. R. Civ. P. 56 regardless of whether such motion is denominated as a motion for

10  summary judgment or summary adjudication.

11           **(2) Motions in Limine:** No party may file more than five

12  motions in limine.

13    **5.**    **Proposed Orders:** Each party filing or opposing a motion or seeking

14  the determination of any matter shall serve and lodge a Proposed Order setting forth

15  the relief or action sought and a brief statement of the rationale for the decision with

16  appropriate citations. If the Proposed Order exceeds two pages, the proposing party

17  shall also submit the document on a 3½-inch diskette compatible with WordPerfect

18  7.0 or higher.

19    **6.**    **Ex Parte Applications:** Counsel are reminded that ex parte applications

20  are solely for extraordinary relief. See Mission Power Engineering Co. v. Continental

21  Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995). Applications which fail to conform

22  with Local Rules 7-19 and 7-19.1, **including a statement of opposing counsel's**

23  **position,** will not be considered. Any opposition must be filed not later than 24 hours

24  after service. If counsel do not intend to oppose the ex parte application, counsel

25  must inform the court clerk by telephone. The Court considers ex parte applications

26  on the papers and usually does not set these matters for hearing.

27

28

6

EXHIBIT   8

PAGE   113

Received:    4/14/06  3:56PM;                    RightFAX -> JetFax M920;    Page 8
RightFAX              4/1   2006 3:55    PAGE 008/011   ?ax Server

1   Counsel shall deliver a conformed courtesy copy of moving, opposition, or notice of

2   non-opposition papers to the courtesy box outside the entrance to Courtroom No. 1,

3   located on the Second floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside,

4   California. The courtroom deputy clerk will notify counsel of the Court's ruling or a

5   hearing date and time, if the Court determines a hearing is necessary.

6         **7.**     **Applications or Stipulations to Extend the Time to File any**

7   **Required Document or to Continue any Pretrial or Trial Date:** No stipulations

8   extending scheduling requirements or modifying applicable rules are effective until

9   and unless the Court approves them. Both applications and stipulations must be filed

10   in advance of the date due and set forth:

11         (a)     the existing due date or hearing date as well as the discovery

12   cutoff date, the last date for hearing motions, the pre-trial conference date and the

13   trial date;

14         (b)     specific, concrete reasons supporting good cause for granting the

15   extension; and

16         (c)     whether there have been prior requests for extensions, and

17   whether these were granted or denied by the Court.

18         **8.**     **TROs and Injunctions:** Parties seeking emergency or provisional relief

19   shall comply with Fed. R. Civ. P. 65 and Local Rule 65. The Court will not rule on

20   any application for such relief for at least 24 hours after the party subject to the

21   requested order has been served; such party may file opposing or responding papers

22   in the interim. [2] The parties shall lodge a courtesy copy, conformed to reflect that it

23   has been filed, of all papers relating to TROs and injunctions. The courtesy copy

24   shall be placed in the courtesy box outside the entrance to Courtroom No. One,

25

26

27       [2]     Local Rule 7-19.2 - Waiver of Notice. If the Judge to whom the application is
made finds that the interest of justice requires that the ex parte application be heard without

28   notice (which in the instance of a TRO means that the requisite showing under Fed.R.Civ.P
65(b) has been made) the judge may waive the notice requirement of L.R. 7-19.1.

EXHIBIT _____ 8

PAGE _____ 113

1   located on the Second floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside,

2   California. All such papers shall be filed "loose" - - i.e., not inside envelopes.

3       **9.**   **Cases Removed From State Court:** All documents filed in state court,

4   including documents appended to the complaint, answers, and motions, must be

5   refiled in this Court as a supplement to the Notice of Removal, if not already

6   included. See 28 U.S.C. § 1447(a)(b). If the defendant has not yet responded, the

7   answer or responsive pleading filed in this Court must comply with the Federal Rules

8   of Civil Procedure and the Local Rules of the Central District. If a motion was

9   pending in state court before the case was removed, it must be re-noticed in

10   accordance with Local Rule 6-1.

11      **10.**   **ERISA Cases:** Absent an agreed upon statement of facts, the court will

12   not hear motions for summary judgment, but will hear motions to determine the

13   standard of review and the scope of the administrative record. See Kearney v.

14   Standard Insurance Co., 175 F.3d 1084 (9th Cir. 1999). There will be a court trial

15   (usually confined to oral argument) on the administrative record.

16      **11.**   **Status of Fictitiously Named Defendants:** This Court intends to

17   adhere to the following procedures where a matter is removed to this Court on

18   diversity grounds with fictitiously named defendants referred to in the complaint.

19   (See 28 U.S.C. §§ 1441(a) and 1447.)

20       (a)   Plaintiff is normally expected to ascertain the identity of and serve

21   any fictitiously named defendants within 120 days of the removal of the action to this

22   Court.

23       (b)   If plaintiff believes (by reason of the necessity for discovery or

24   otherwise) that fictitiously named defendants cannot be fully identified within the

25   120-day period, an ex parte application requesting permission to extend that period to

26   effectuate service may be filed with this Court. Such application shall state the

27   reasons therefor, and may be granted upon a showing of good cause. The ex parte

28

8

EXHIBIT ___8___
PAGE ____114

Received:   4/14/06  3:57PM;               RightFAX -> JetFax M-?0;   Page 10
RightFAX               4/1../2006 3:55    PAGE 010/011   Fax Server

1   application shall be served upon all appearing parties, and shall state that appearing

2   parties may comment within seven (7) days of the filing of the ex parte application.

3            (c)   If plaintiff desires to substitute a named defendant for one of the

4   fictitiously named parties, plaintiff first shall seek to obtain consent from counsel for

5   the previously-identified defendants (and counsel for the fictitiously named party, if

6   that party has separate counsel).   If consent is withheld or denied, plaintiff may apply

7   ex parte requesting such amendment, with notice to all appearing parties. Each party

8   shall have seven calendar days to respond. The ex parte application and any response

9   should comment not only on the substitution of the named party for a fictitiously

10   named defendant, but on the question of whether the matter should thereafter be

11   remanded to the Superior Court if diversity of citizenship is destroyed by the addition

12   of the new substituted party. See 28 U.S.C. § 1447(c)(d).

13       **12.    Communications with Chambers:** Counsel shall not attempt to contact

14   the Court or its chambers staff by telephone or by any other ex parte means, although

15   counsel may contact the courtroom deputy, at (951) 328-4464, with appropriate

16   inquiries.  To facilitate communication with the courtroom deputy, counsel should list

17   their facsimile transmission numbers along with their telephone numbers on all

18   papers.

19       **13.    Notice of this Order:** Counsel for plaintiff shall immediately serve this

20   Order on all parties, including any new parties to the action.  If this case came to the

21   Court by noticed removal, defendant shall serve this Order on all other parties.

22

23

24

25

26

27

28

                                                9

EXHIBIT __8__

PAGE __115__

Received: 4/14/06 3:58PM;    RightFAX -> JetFax M920; Page 11
'RightFAX          4/1   2006 3:55   PAGE 011/011   ʳax Server

1    **14.    Internet Site:** Counsel are encouraged to review the Central District's

2    Website for additional information.[3] The address is "http://www.cacd.uscourts.gov."

3

4         IT IS SO ORDERED.

5    Dated: April 14, 2006

6

7                                    _S. G. Larson_

8                              STEPHEN G. LARSON
                              UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20    _____

21         [3] Copies of the Local Rules are available on our website at
      "http://www.cacd.uscourts.gov" or they may be purchased from one of the following:
22
          Los Angeles Daily Journal
23        915 East 1st Street
          Los Angeles, California 90012
24
          West Publishing Company
25        610 Opperman Drive
          Post Office Box 64526
26        St. Paul, Minnesota 55164-0526

27        Metropolitan News
          210 South Spring Street
28        Los Angeles, California 90012

                              10

EXHIBIT ___8___
PAGE ___116___

Received:   4/14/06   4:03PM;   Robert W. Little Ins -> JetFax M920;   Page 1

Brett Durfee  (OmniRush)                    To: David Azar                    4/14/2006 03:58:26PM page 1 of

# Fax Memo

### RE: David Azar

**From**: Brett Durfee

Robert W. Little
Insurance
11654 W. Pico
Los Angeles, CA  90064
tel. (310) 478-2001
fax (310) 477-4707

4/14/06

Page 1 of 2

David, attached is the pre-authorized signature form.  Please sign and return this with a $204.88 check--payable to State Farm--to get the Lexus application started.

Have a great weekend!

EXHIBIT ___8___
PAGE ___117___



## REQUEST FOR PRE-AUTHORIZED PAYMENT PLAN

I hereby authorize State Farm Mutual Automobile Insurance Company, its affiliates and subsidiaries, to deduct insurance payments **or loan repayments** from my account at the financial institution named below:

Financial Institution  ✔ _____

Select one:

☑ Checking Account - Please submit a voided or photocopied check with authorization.
☐ Savings Account - Please submit a voided or photocopied deposit slip with authorization.
☐ Credit Union Share Draft Account - Please submit a voided or photocopied check with authorization.

**If the voided check or deposit slip does not include a transit or account number, please obtain this information from your financial institution and submit with authorization.**

This authority is to remain in effect until State Farm has received written notification from me of its termination in such time and in such manner as to afford State Farm and the Depository institution a reasonable opportunity to act on the request.

State Farm has the right to discontinue the Pre-Authorized Payment Plan if any two or more deductions are not honored. State Farm will notify me in advance whenever the deduction amount or the day changes.

**If any deduction is not honored by my Financial Institution, the policies or loans will be considered not paid. State Farm will ask me to pay the dishonored amount. After timely payment is received by State Farm, deductions will resume.**

**I understand and agree State Farm has no obligation to and will not apply any loan repayment amount toward any premium which is unpaid.**

**State Farm may revise the terms of this agreement at any time upon written notification.**

---

This request is for the following premium payment plan (select one):

☑ **STATE FARM PAYMENT PLAN**
☐ **LIFE INSURANCE**
☐ **LIFE ASSURANCE**

SFPP Account Number or Life Policy Number(s):          Life Monthly Premium (U.L. & IRA Contracts)

• _____          _____

_____          _____

_____          _____

---

If this request is for Monthly Life Loan Repayment ($15.00 minimum), indicate the policy number and monthly repayment amount below:

Policy Number(s):          Monthly Loan Repayment Amount:

_____          _____

_____          _____

_____          _____

---

FIRST WITHDRAWAL DATE:  Month __May__  Day __21__
(Deduction Day 1st through 28th)

__David Azar__
Print Name of PAYOR

✔ _____
SIGNATURE OF PAYOR (As it appears on check.)

| Agent's Code Stamp |
| --- |
| Little Ins. Agcy Inc. 75-1585 |
| F774 |

DATE
EXHIBIT __8__
PAGE __118__

130-5173 8  Rev. 10-2000  Printed in U.S.A.          REGIONAL OFFICE COPY

# EXHIBIT 9

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  |   John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com
  |   Michael T. Zeller (Bar No. 196417)
3 |   michaelzeller@quinnemanuel.com
  |   Jon D. Corey (Bar No. 185066)
4 |   joncorey@quinnemanuel.com
  | 865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
6 | Facsimile:  (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |

9 |                    UNITED STATES DISTRICT COURT

10 |                  CENTRAL DISTRICT OF CALIFORNIA

11 |                         EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | **MATTEL, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR MISTRIAL** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | Date:       August 4, 2008 |
| | Time:       1:00 pm. |
| AND CONSOLIDATED ACTIONS | **Phase 1** |
| | Pre-Trial Conference: May 19, 2008 |
| | Trial Date:  May 27, 2008 |

EXHIBIT ___9___

PAGE ___119___

07209/2589005.4

18

Case No. CV 04-9049 SGL (RNBx)
OPPOSITION TO MGA'S MOTION FOR A MISTRIAL

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 22 of 58   Page ID
#:190559
Case 2:04-cv-09049-SGL-RNB   Document 4175   Filed 07/02/2009   Page 2 of 32

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.  THE PHASE 1(A) VERDICT HAS NOT BEEN COMPROMISED ............. 2

    A.  A Mistrial Should not be Declared Based on Actual or Implied
        Bias ........................................................................................................ 2

        1.  Statements During Deliberation Cannot Be Considered
            For Purposes Of Assessing Bias .................................................. 2

            (a)  Juror Testimony About the Deliberative Process is
                Inadmissible ....................................................................... 2

            (b)  Extrinsic Information Is Not At Issue ................................ 7

        2.  Even If Juror Statements Were Admissible, MGA Has Not
            Shown Actual or Implied Bias ..................................................... 9

    B.  A Mistrial Should Not Be Declared Based on Voir Dire ..................... 13

    C.  A Finding of Bias Would Require an Evidentiary Hearing ................. 16

    D.  Because The Remarks Did Not Influence The Verdict, The Phase
        1(a) Verdict Must Stand ...................................................................... 18

II.  EVEN IF BIAS HAD AFFECTED THE VERDICT,
    REDELIBERATION WOULD BE THE PROPER REMEDY ...................... 20

    A.  The Remaining Jurors Were Not Tainted by the Remarks ................... 20

    B.  At Most MGA Would Be Entitled To Redeliberation, Not
        Mistrial ............................................................................................... 21

III. GRANTING A NEW TRIAL NOW WOULD DEPRIVE MATTEL
    OF FUNDAMENTAL APPEAL RIGHTS ................................................... 23

EXHIBIT _____ 9

PAGE _____ 180

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | **Page(s)** |
| 3 | **Cases** |

| | |
|---|---|
| 4 | <u>Bacon v. Lee,</u> 225 F.3d 470 (4th Cir. 2000) .................................................................. 4 |
| 5 | |
| 6 | <u>Brown v. United States,</u> 411 U.S. 223 (1973) ...................................................................... 8 |
| 7 | <u>Canady v. Runnels,</u> 2006 WL 2331008 (C.D. Cal. 2006) .......................................... 6 |
| 8 | |
| 9 | <u>Caterpillar, Inc. v. Sturman Indus., Inc.,</u> 387 F.3d 1358 (Fed. Cir. 2004) ............................................. 19 |
| 10 | <u>Cherensky v. George Washington--East Motor Lodge,</u> 317 F. Supp. 1401 (E.D. Pa. 1970) ....................................... 4 |
| 11 | |
| 12 | <u>Dyer v. Calderon,</u> 151 F.3d 970 (9th Cir. 1998) ....................................... 14, 16, 18, 23 |
| 13 | <u>Coughlin v. Tailhook Ass'n,</u> 112 F.3d 1052 (9th Cir. 1997) ............................................ 16 |
| 14 | |
| 15 | <u>Duk v. MGM Grand Hotel, Inc.,</u> 320 F.3d 1052 (9th Cir. 2003) ............................................ 22 |
| 16 | <u>Estrada v. Scribner,</u> 512 F.3d 1227 (9th Cir. 2008) ...................................... 5, 7, 18 |
| 17 | |
| 18 | <u>Evans v. United States,</u> 504 U.S. 255 (1992) .................................................................... 15 |
| 19 | <u>Fields v. Brown,</u> 431 F.3d 1186 (9th Cir. 2005) ............................................ 18 |
| 20 | |
| 21 | <u>Fields v. Brown,</u> 503 F.3d 755 (9th Cir. 2007) .......................................... 2, 10 |
| 22 | <u>Fields v. Woodford,</u> 309 F.3d 1095 (9th Cir. 2002) ............................................ 18 |
| 23 | |
| 24 | <u>Green v. White,</u> 232 F.3d 671 (9th Cir. 2000) .............................................. 18 |
| 25 | <u>Hard v. Burlington N. R. Co.,</u> 870 F.2d 1454 (9th Cir. 1989) ............................... 4, 8, 13, 14, 15, 17, 19 |
| 26 | |
| 27 | <u>Irvin v. Dowd,</u> 366 U.S. 717 (1961) ................................................................ 9, 10 |
| 28 | |

| | |
|---|---|
| *Jiminez v. Heyliger,* | |
| 792 F. Supp. 910 (D.P.R. 1992) | 19 |
| *Jorgensen v. York Ice Mach. Corp.,* | |
| 160 F.2d 432 (2d Cir. 1947) | 9 |
| *Kansas v. Marsh,* | |
| 548 U.S. 163 (2006) | 11, 12 |
| *Marcavage v. Bd. of Trustees of Temple Univ.,* | |
| 400 F. Supp. 2d 801 (E.D. Pa. 2005) | 4 |
| *Martinez v. Food City, Inc.,* | |
| 658 F.2d 369 (5th Cir. 1981) | 4 |
| *Mason v. Mitchell,* | |
| 320 F.3d 604 (6th Cir. 2003) | 3 |
| *Mateyko v. Felix,* | |
| 924 F.2d 824 (9th Cir. 1990) | 22 |
| *Mattice v. Maryland Cas. Co.,* | |
| 5 F.2d 233 (W.D. Wash. 1925) | 24 |
| *McDonough Power Equipment, Inc. v. Greenwood,* | |
| 464 U.S. 548 (1984) | 2, 8, 9, 13 |
| *Murphy v. Florida,* | |
| 421 U.S. 794 (1975) | 11 |
| *Murray v. Laborers Union Local No. 324,* | |
| 55 F.3d 1445 (9th Cir. 1995) | 23 |
| *Patton v. Yount,* | |
| 467 U.S. 1025 (1984) | 13 |
| *Poynter v. Ratcliff,* | |
| 874 F.2d 219 (4th Cir. 1989) | 9 |
| *Rinker v. County of Napa,* | |
| 724 F.2d 1352 (9th Cir. 1983) | 19 |
| *Rushen v. Spain,* | |
| 464 U.S. 114 (1983) | 6 |
| *Sanders v. Lamarque,* | |
| 357 F.3d 943 (9th Cir. 2004) | 9, 15 |
| *Sassounian v. Roe,* | |
| 230 F.3d 1097 (9th Cir. 2000) | 18 |
| *Sea Hawk Seafoods v. Alyeska Pipeline Serv. Co.,* | |
| 206 F.3d 900 (9th Cir. 2000) | 19 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2589005.4

Case No. CV 04-9049 SGL (RNBx)

21   OPPOSITION TO MGA'S MOTION FOR A MISTRIAL

EXHIBIT ___

PAGE _____

1   Shillcutt v. Gagnon,
        602 F. Supp. 1280 (E.D. Wis. 1985) ................................................... 5
2
3   Shillcutt v. Gagnon,
        827 F.2d 1155 (7th Cir. 1987) ................................................... 4, 5

4   Smith v. Phillips,
        455 U.S. 209 (1982) .................................................... 9, 16, 17
5
6   Smith v. Pitman Mfg. Co.,
        952 F.2d 1400, 1992 WL 8182 (9th Cir. 1992) ............................... 19

7   Spaziano v. Florida,
        468 U.S. 447 (1984) ................................................................. 19
8
9   Summers v. United States,
        11 F.2d 583 (4th Cir. 1926) ................................................... 22

10  Sussman v. Unum Provident Corp.,
        2001 WL 1352789 (C.D. Cal. 2001) ............................... 17, 18
11
12  Tanner v. United States,
        483 U.S. 107 (1987) ..................................... 2, 3, 5, 6, 17

13  Tavares v. Holbrook,
        779 F.2d 1 (1st Cir. 1985) ............................................... 12
14
15  Tracey v. Palmateer,
        341 F.3d 1037 (9th Cir. 2003) .................................... 17

16  United States v. Aguon,
        851 F.2d 1158 (9th Cir. 1988) ............................... 15
17
18  United States v. Angel,
        355 F.3d 462 (6th Cir. 2004) .................................... 9

19  United States v. Angulo,
        4 F.3d 843 (9th Cir. 1993) ................................... 16
20
21  United States v. Bussell,
        414 F.3d 1048 (9th Cir. 2005) ............................... 17

22  United States v. Davis,
        960 F.2d 820 (9th Cir. 1992) ..................................... 6
23
24  United States v. Duzac,
        622 F.2d 911 (5th Cir. 1980) ........................................ 4

25  United States v. Foghorn,
        2006 WL 4017477 (D.N.M. 2006) ............................ 4, 12
26
27  United States v. Gonzalez,
        214 F.3d 1109 (9th Cir. 2000) .............................. 11, 18

28

1   United States v. Hanley,
2     190 F.3d 1017 (9th Cir. 1999) ................................................................ 9

    United States v. Heller,
3     785 F.2d 1524 (11th Cir. 1986) ..........................................................5, 13

4   United States v. Hendrix,
5     549 F.2d 1225 (9th Cir. 1977) ................................................................ 9

    United States v. Henley,
6     238 F.3d 1111 (9th Cir. 2001) ............................................................5, 13

7   United States v. Hyatt,
8     2007 WL 1454280 (E.D. Cal. 2007) ...................................................... 10

    United States v. Ladd,
9     885 F.2d 954 (1st Cir. 1989) ................................................................. 22

10  United States v. Martinez-Martinez,
11    369 F.3d 1076 (9th Cir. 2004) .............................................................. 18

    United States v. McClinton,
12    135 F.3d 1178 (7th Cir. 1998) .........................................................12, 21

13  United States v. McFarland,
14    34 F.3d 1508 (9th Cir. 1994) ................................................................ 23

    United States v. Roach,
15    164 F.3d 403 (8th Cir. 1998) .................................................................. 4

16  United States v. Sarkisian,
17    197 F.3d 966 (9th Cir. 1999) ............................................................20, 21

    United States v. Shapiro,
18    669 F.2d 593 (9th Cir. 1982) ................................................................ 18

19  United States v. Smith,
20    424 F.3d 992 (9th Cir. 2005) ................................................................ 17

    United States v. Wood,
21    299 U.S. 123 (1936) ............................................................................ 10

22  In re Victory Const. Co., Inc.,
23    9 B.R. 570 (Bankr. C.D. Cal. 1981) ...................................................... 24

    Wadley Southern Ry. Co. v. State of Georgia,
24    235 U.S. 651 (1915) ............................................................................ 24

25  Wainwright v. Witt,
26    469 U.S. 412 (1985) .............................................................................. 2

    Williams v. Price,
27    343 F.3d 223 (3d Cir. 2003) ................................................................ 3, 6

28

23
EXHIBIT

PAGE 124

In re Winship,
  397 U.S. 358 (1970) ............................................................................................ 19

### **Statutes**

Federal Rules of Civil Procedure

  Rule 47 ................................................................................................... 10, 22

  Rule 47(c) .............................................................................................. 10, 23

  Rule 48 ......................................................................................................... 20

Federal Rules of Criminal Procedure

  Rule 24(c) .................................................................................................... 23

Federal Rules of Evidence

  Rule 606 ........................................................... 4, 5, 6, 8, 12, 17, 20

  Rule 606(b) ............................................................................................... 2, 3

### **Other Authorities**

3 Weinberg, Weinberg on Evidence, § 606.04[5][a] ....................................... 5

07209/2589005.4

Case No. CV 04-9049 SGL (RNBx)
OPPOSITION TO MGA'S MOTION FOR A MISTRIAL

24

EXHIBIT 9

PAGE 125

Case 2:04-cv-09049-DOC-RNB  Document 5876-2  Filed 07/02/09  Page 28 of 58  Page ID
#:190565
Case 2:04-cv-09049-SGL-RNB4/2008ument 4175 of 10iled 02/3E/2098696age 8 of 32

### Introduction

It is beyond legitimate dispute that nine fair, honest, impartial jurors returned a unanimous verdict against defendants. After those nine jurors reached their verdict but before it was returned, a tenth juror made an inappropriate ethnic remark that was condemned by the other jurors. The Court found the remark had no effect on the jury's verdict. And yet, because it was made, MGA insists that the verdict, reached after hearing two months of evidence, must be summarily tossed. Neither the law nor the facts require such a result. Like the Court and the other jurors, Mattel condemns the remark that was made. But it does not justify a mistrial.

MGA does not even claim that Juror No. 8's remark actually influenced or tainted the verdict. Instead, it claims the remark reveals the juror had preconceived notions, and "must have" been biased all along. But as the Supreme Court has repeatedly explained, having preconceived notions--even abhorrent ones--is very different from being "biased" in the legal sense relevant here. Such bias requires proof that a juror did not set aside any such notions and reach her decision on the basis of the evidence presented. While the law grants wide berth to counsel to use voir dire to ferret out jurors whose experiences or preconceptions may raise questions about impartiality, once a jury has been impaneled both the procedural rules for uncovering bias and the substantive standards governing its assessment change dramatically. The deliberative process is strictly protected. The burden of proving actual or implied bias is substantial. Proof of preconceptions does not suffice.

Defendants have not cited to a single civil case where a court granted a mistrial based on a single inappropriate comment which did not affect the verdict, as here. Mistrials are to be avoided, not invited. The Court should not break new ground in granting one here.

25
EXHIBIT
PAGE          126

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 29 of 58   Page ID
#:190566
Case 2:04-cv-09049-SGL-RNB4/2009umFage136 of 1Filed 02/03/2009869Page 9 of 32

1    <u>Argument</u>

2    I.    <u>THE PHASE 1(A) VERDICT HAS NOT BEEN COMPROMISED</u>

3          The Ninth Circuit recognizes three types of juror bias: (1) "so-called

4    <u>McDonough</u>-style bias, which turns on the truthfulness of a juror's responses on

5    voir dire;" (2) "actual bias, which stems from a pre-set disposition not to decide an

6    issue impartially;" and (3) "implied (or presumptive) bias, which may exist in

7    exceptional circumstances where, for example, a prospective juror has a relationship

8    to the crime itself or to someone involved in a trial, or has repeatedly lied about a

9    material fact to get on the jury." <u>Fields v. Brown</u>, 503 F.3d 755, 766 (9th Cir.

10   2007). MGA cannot meet its burden to show any of them under the legal standards.

11   <u>See</u> <u>Wainwright v. Witt</u>, 469 U.S. 412, 423 (1985) (moving party bears burden of

12   establishing bias).

13         MGA's primary argument is that Juror No. 8 must be considered biased

14   because of her statements and those of other jurors about their reactions to her

15   remarks.   These statements, however, are not admissible to prove Juror No. 8's

16   mental state or thought processes for purposes of impeaching the verdict. Moreover,

17   even if they could be considered, they are insufficient to establish "bias," much less

18   to support a decision voiding the jury's verdict.

19         A.    <u>A Mistrial Should not be Declared Based on Actual or Implied Bias</u>

20               1.    <u>Statements During Deliberation Cannot Be Considered For</u>

21                     <u>Purposes Of Assessing Bias</u>

22                     (a)    <u>Juror Testimony About the Deliberative Process is</u>

23                            <u>Inadmissible</u>

24         <u>Federal Rule of Evidence</u> 606(b) embodies the "near-universal and firmly

25   established common-law rule" that "flatly prohibit[s]" the admission of juror

26   testimony to impeach a verdict except where an "extraneous influence," like the

27   influence of the media or a newspaper article, affected the verdict. <u>Tanner v. United</u>

28   <u>States</u>, 483 U.S. 107, 117 (1987). The <u>Rule</u> expressly prohibits juror testimony

1   regarding *"any matter or statement occurring during the course of the jury's*
2   *deliberations* or to the effect of anything upon that or any other juror's mind or
3   emotions as influencing the juror to assent to or dissent from the verdict or
4   indictment or concerning the juror's mental processes in connection therewith."
5   Fed. R. Evid. 606(b) (emphasis added).   In fact, MGA acknowledges that "the
6   contents of the deliberations and any evidence concerning the deliberative process
7   *are inadmissible* as a matter of law."  Motion at 8:26-27 (emphasis added).  Yet the
8   only evidence before the Court is juror testimony regarding remarks made during
9   deliberations.  Such evidence may not be considered for what it purportedly shows
10  about the juror's mental processes.

11          The rule against allowing juror testimony for the purposes of impeaching a
12  verdict is long standing.  In Tanner, the Supreme Court applied it to refuse to vacate
13  a verdict despite juror testimony that jurors drank large amounts of alcohol during
14  deliberations, slept during trial, and bought and sold drugs to each other during
15  deliberations.    The Court explained, "[t]here is little doubt that postverdict
16  investigation into juror misconduct would in some instances lead to the invalidation
17  of verdicts reached after irresponsible or improper juror behavior.  It is not at all
18  clear, however, that the jury system could survive such efforts to perfect it."  Id. at
19  120; see also id. at 125 ("the legislative history demonstrates with uncommon clarity
20  that Congress specifically understood, considered, and rejected a version of Rule
21  606(b) that would have allowed jurors to testify on juror conduct during
22  deliberations").

23          This rule has, with near uniformity, been applied to *preclude* consideration of
24  statements by jurors which allegedly evince their biases – even in capital cases,
25  much less in civil suits.  See, e.g., Williams v. Price, 343 F.3d 223, 233 (3d Cir.
26  2003) (excluding testimony showing racial bias during deliberations, such as that
27  juror was called a "nigger lover" by another juror); Mason v. Mitchell, 320 F.3d
28  604, 636 (6th Cir. 2003) (upholding death sentence because juror testimony that

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 31 of 58   Page ID
#:190568
Case 2:04-cv-09049-SGL-RNB24/2009umengage172 of Filed 07/31/2008 69Page791 1 of 32

1   jurors made racial slurs, presumed the defendant's guilt and slept during trial

2   "involve[d] internal influences, and testimony on those subjects should have been

3   barred by the evidentiary rule prohibiting juror impeachment of a jury"); <u>Bacon v.</u>

4   <u>Lee</u>, 225 F.3d 470, 485 (4th Cir. 2000) (declining in capital case to consider juror's

5   evidence of racial slurs and jokes during deliberations); <u>United States v. Roach</u>, 164

6   F.3d 403, 413 (8th Cir. 1998) (holding inadmissible juror's affidavit of racial slurs

7   and intimidation during deliberations); <u>Shillcutt v. Gagnon</u>, 827 F.2d 1155, 1159

8   (7th Cir. 1987) (affirming denial of habeas relief because <u>Rule</u> 606 barred evidence

9   of a juror stating during deliberations, ""Let's be logical. [The defendant is] black

10   and he sees a seventeen year old white girl--I know the type."); <u>Martinez v. Food</u>

11   <u>City, Inc.</u>, 658 F.2d 369, 372-73 (5th Cir. 1981) (<u>Rule</u> 606(b) barred juror testimony

12   that another juror stated during deliberations that appellant "should be taught a

13   lesson" for hiring Mexican nationals holding green cards); <u>United States v. Duzac</u>,

14   622 F.2d 911, 913 (5th Cir. 1980) (evidence of "personal prejudices" is inadmissible

15   because prejudice cannot be defined as external influence); <u>United States v.</u>

16   <u>Foghorn</u>, 2006 WL 4017477, at *8, 30 (D.N.M. 2006) (evidence that a juror said

17   "those poor Indians and their alcohol" during deliberations held not admissible to

18   show bias); <u>Marcavage v. Bd. of Trustees of Temple Univ.</u>, 400 F. Supp. 2d 801,

19   806 (E.D. Pa. 2005) ("Rule 606(b) generally precludes testimony concerning the

20   effect of a juror's racial or other bias on deliberations. Such biases should be

21   uncovered when the jury is being selected."); <u>Cherensky v. George Washington--</u>

22   <u>East Motor Lodge</u>, 317 F.Supp. 1401, 1403-04 (E.D. Pa. 1970) (juror incompetent

23   to testify that verdict was motivated by anti-Semitic prejudice); <u>see also</u> <u>Hard v.</u>

24   <u>Burlington N. R. Co.</u>, 870 F.2d 1454, 1461 (9th Cir. 1989) ("Rule 606(b) bars not

25   just juror testimony but evidence of any sort as to a statement by a juror concerning

26   jury deliberations, so long as a juror would be barred from making the same

27   statement in the form of testimony in court.").

28

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 32 of 58   Page ID
 #:190569
Case 2:04-cv-09049-SGL-RNB   Document 173   Filed 07/21/2008   Page 12 of 32

1    Though this rule of evidentiary exclusion may appear harsh, it is consistently

2 applied because "[i]mpeachment of jury verdicts on the ground that a juror has

3 expressed racial or other bias would defeat the important interests of free and open

4 jury deliberations and the finality of judgments." Shillcutt v. Gagnon, 602 F.Supp.

5 1280, 1282 (E.D. Wis. 1985); see also 3 Weinberg, Weinberg on Evidence, §

6 606.04[5][a] ("Generally, it seems better to draw the line in favor of juror privacy,

7 in the heat of juror debate all kinds of statements may be made that have little effect

8 on outcome, though taken out of context they seem damning."). The Rules bar

9 consideration of any juror testimony for purposes of assessing bias.[1]

10    In urging an exception to Rule 606(b) for juror expressions of bias, MGA

11 relies on United States v. Henley, 238 F.3d 1111, 1121 (9th Cir. 2001), where the

12 Court suggested juror testimony about racial prejudice may be permitted to protect a

13 criminal defendant's Sixth Amendment right to a fair trial.   Henley, however,

14 involved improper statements *before* the jury commenced deliberations, and the

15 suggestion was dicta.  In a more recent opinion, Estrada v. Scribner, 512 F.3d 1227,

16 1237 (9th Cir. 2008), the Ninth Circuit clarified that, after Henley, it remains an open

17 question in this Circuit whether evidence of bias "disclosed *during deliberations* is

18 admissible despite the prohibition of subjective evidence by Fed.R.Evid. 606(b)."

19 512 F.3d at 1241 n.14 (emphasis added).

20    While Estrada states this precise question remains open, Ninth Circuit law is

21 clear, like that of the Supreme Court (see Tanner), that juror statements of their own

22 biases given *outside* of deliberations are not admissible.  See Estrada, 512 F.3d at

23 1237 (evidence of "the subjective 'mental processes'" of the jurors held

24 inadmissible); id. at 1237-38 (holding inadmissible juror's declaration as to his

25 mental process that he agreed to convict because he believed a mistrial would

26

27    [1]   United States v. Heller, 785 F.2d 1524 (11th Cir. 1986), on which MGA relies, did

28 not address the Rule 606 admissibility issue at all.

-5-

29

EXHIBIT ____

PAGE 130

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 33 of 58   Page ID
#:190570
Case 2:04-cv-09049-SGL-RNB   Document 1734   of   Filed 07/01/2008   Page 13 of 32

1   adversely affect the juror's "probation status" and lead to personal repercussions for
2   juror); <u>United States v. Davis</u>, 960 F.2d 820, 828 (9th Cir. 1992) (refusing to
3   consider juror's post-trial statement that "[f]rom the first day I knew [the defendant]
4   was guilty" under <u>Rule</u> 606). In light of these authorities and <u>Rule</u> 606's bar against
5   admitting "any matter or statement occurring during the course of the jury's
6   deliberations," there is simply no cause to admit a juror's statement of her purported
7   bias made *during* deliberations.

8        In fact, this Court has so held. In <u>Canady v. Runnels</u>, 2006 WL 2331008, at
9   *13 (C.D. Cal. 2006), the Court was confronted with allegations from one juror that
10  his colleagues had been influenced by their views about race in judging the
11  defendants. A court questionnaire sent post-verdict asked, "What did you dislike
12  about your service in this case?" One juror's answer--"Just the attitudes of others in
13  aspects of the way they judged the defendants. (race, etc.)"--suggested that bias may
14  have influenced the jury. <u>Id</u>. The Court refused even to order a hearing to assess
15  the defendants' claim of bias because testimony would have been inadmissible.

16       MGA argues that Juror No. 8's statement establishes she could not have been
17  objective in evaluating the evidence and quotes the comments of Juror No. 6 as to
18  his doubts about Juror No. 8's objectivity. That is precisely the sort of juror
19  testimony as to mental processes to which Rule 606(b) applies.

20       Jury verdicts should certainly not be based on racial prejudice. But the
21  Supreme Court has recognized that impeachment of verdicts by breaching the
22  privacy of jury deliberations is a greater evil, and that "several aspects of the trial
23  process," including the role of a proper voir dire, ameliorate any harsh results from
24  the required broad application of <u>Rule</u> 606. <u>Tanner</u>, 483 U.S. at 127. As the Ninth
25  Circuit has likewise explained, "[t]he prime safeguard [against juror bias] is voir
26  dire. . . . The whole point of the voir dire process is to elicit information from the
27  venire that may shed light on bias, prejudice, interest in the outcome, competence,
28  and the like so that counsel and the parties may exercise their judgment about whom

Case 2:04-cv-09049-DOC-RNB    Document 5876-2    Filed 07/02/09    Page 34 of 58    Page ID
#:190571
Case 2:04-cv-09049-SGL-RNB    Document 175    Filed 07/21/2008    Page 14 of 32

1    to seat and whom to challenge." <u>Fields</u>, 503 F.3d at 772 (refusing to grant relief

2    where defendant's counsel did not explore purportedly disqualifying information

3    disclosed in voir dire).[2]

4                    **(b)    Extrinsic Information Is Not At Issue**

5            Rule 606(b) does recognize an exception when "extraneous prejudicial

6    information" or "extrinsic evidence"--evidence not admitted in court--is brought

7    before the jury.  Testimony about such information, even juror testimony, may be

8    admissible because a juror who communicates extrinsic facts "in effect becomes an

9    unsworn witness, not subject to confrontation or cross examination," which can

10   cause prejudice. <u>Estrada</u>, 512 F.3d at 1238. But MGA does not show that Juror No.

11   8's *presentation of any purported extrinsic evidence* to the jury (her husband's

12   statements about his clients) *prejudiced the jury's verdict*.  Instead, MGA argues

13   that the statement she made *evidences her bias*, which is a very different issue.

14   Even if Juror No. 8's statement could be assessed as potentially impermissible

15   extrinsic evidence considered by the jury (which MGA does not urge), it does not

16   follow that it may also be considered to assess Juror No. 8's mental processes.

17           <u>Estrada</u> itself makes clear that allegations of prejudicial extrinsic evidence

18   presented to the jury are very different from allegations of juror bias.  MGA points

19   out that in criminal cases, actual bias is not subject to a harmless error analysis.  But

20   where a juror commits misconduct in presenting extrinsic evidence, the "misconduct

21

22       [2]    MGA cites to a footnote in <u>Rushen v. Spain</u>, 464 U.S. 114, 121 n.5 (1983), to
     suggest that evidence of racial bias is admissible under <u>Rule</u> 606(b).  This is incorrect.
23   First, the statement on which MGA relies--that a juror "may testify concerning any mental
     bias in matters unrelated to the specific issues that the juror was called upon to decide"--is
24   dictum.  <u>See</u> <u>Williams v. Price</u>, 343 F.3d 223, 237-38 (3d Cir. 2003) (discussing <u>Rushen's</u>
     "dictum").  Nor can it properly be read as a broad exemption of evidence of racial bias
25   from Rule 606(b)'s reach, as <u>Rushen</u> did not even involve a claim of racial bias, but rather
     a juror whose childhood friend had been murdered by an informant in the case.  <u>See</u>
26   <u>Rushen</u>, 464 U.S. at 115-16; <u>Williams</u>, 343 F.3d at 238 (articulating more limited
     interpretation of passage from <u>Rushen</u>).  In any event, the cited language does not appear
27   to have survived the Supreme Court's subsequent decision in <u>Tanner</u>, 483 U.S. at 121-22,
     which held evidence of juror alcohol and drug use--a mental state which unquestionably is
28           (footnote continued)

EXHIBIT _____

PAGE _____ 132

1   *is* subject to 'harmless error' analysis," even in criminal cases.   512 F.3d at 1238

2   (italics added).  It is precisely for this reason that MGA does *not* argue the statement

3   itself requires a mistrial -- the factors clearly are not satisfied.  "We look to the

4   following factors to determine whether a defendant has suffered prejudice from

5   juror misconduct: (1) whether the material was actually received, and if so, how; (2)

6   the length of time it was available to the jury; (3) the extent to which the juror

7   discussed and considered it; (4) whether the material was introduced before a verdict

8   was reached, and if so at what point in the deliberations; and (5) any other matters

9   which may bear on the issue of the reasonable possibility of whether the extrinsic

10  material affected the verdict."  Id.

11       MGA does not argue that the extrinsic evidence itself (the husband's

12  experience) affected the verdict.  Nor could it in light of the Court's findings as to

13  the timing of the statement.  There is no claim that the verdict (which had already

14  been reached) was the product of the jury's consideration of Juror No. 8's husband's

15  experience with Iranian clients.  Rather, the thrust of MGA's motion is that Juror

16  No. 8's statement proves she is biased; that a person who could say such things

17  could not be impartial in her judgments.  It is not the jury's reliance on her

18  husband's experience with Iranian clients but her internal mental processes that are

19  at issue.  The difference goes to the core of the deliberative process protected by

20  Rule 606.  The statement is not admissible to show bias.[3]

21

22

23

24

25  "unrelated to the specific issues that the juror was called upon to decide"--inadmissible under Rule 606(b).

26  [3] In all events, if the Court were inclined to recognize an exception to Rule 606(b) to allow testimony as to what Juror No. 8 said during deliberations for purposes of impeaching the verdict, it cannot, as MGA would have it, allow the testimony as to her

27  statement without also allowing testimony from her and the other jurors as to its lack of impact.  MGA cannot have it both ways.  If the statement is to be considered, so must the

28  testimony that her comments had no impact on the verdict.

07209/2589005.4

-8-

Case No. CV 04-9049 SGL (RNBx)
OPPOSITION TO MGA'S MOTION FOR A MISTRIAL

### 2.   Even If Juror Statements Were Admissible, MGA Has Not Shown Actual or Implied Bias

A mistrial cannot be ordered even if the jurors' statements were admissible to show Juror No. 8's mental state.   There is a difference between having preconceptions--even highly inappropriate ones--and being biased under the law. As the Ninth Circuit has explained, "[t]he type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, *and bias* that every juror carries into the jury room." Hard, 870 F.2d at 1461 (emphasis added).   A litigant "is entitled to a fair trial but not a perfect one, for there are no perfect trials."   McDonough, 464 U.S. at 553 (quotations omitted); see also Brown v. United States, 411 U.S. 223, 231-32 (1973) (same).   As Judge Learned Hand stated, "it would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court.   It is doubtful whether more than one in a hundred verdicts would stand such a test".   Jorgensen v. York Ice Mach. Corp., 160 F.2d 432, 435 (2d Cir. 1947); see McDonough, 464 U.S. at 553 ("Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials.   It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load.").

A fair trial requires that jurors be "impartial" in considering the evidence.   A juror is impartial if she can disregard her preconceptions "and render a verdict based on the evidence presented in court."   Irvin v. Dowd, 366 U.S. 717, 723 (1961); see also United States v. Angel, 355 F.3d 462, 470 (6th Cir. 2004) (same); Poynter v. Ratcliff, 874 F.2d 219, 221 (4th Cir. 1989) (same).   The law does not assume that all jurors have no biases.   Rather, "[t]he proper inquiry is whether juror bias rises to the level of a constitutional deprivation."   United States v. Hanley, 190 F.3d 1017, 1031

1  (9th Cir. 1999); see United States v. Hendrix, 549 F.2d 1225, 1230 (9th Cir. 1977)

2  ("we are not convinced that Hendrix was denied his right to a trial by an impartial

3  jury. Any juror misconduct or bias did not prejudice Hendrix to the extent that he

4  did not receive a fair trial.").

5      First, there is no basis for a finding of implied bias under Ninth Circuit law.

6  "Implied bias will be found only in 'exceptional' or 'extraordinary' cases." Sanders,

7  357 F.3d at 949 (citing Smith v. Phillips, 455 U.S. 209, 222 (1982) (J. O'Connor

8  concurring)). In Smith, Justice O'Connor identified the "extreme examples" that

9  might justify a finding of implied bias: "a revelation that the juror is an actual

10  employee of the prosecuting agency, that the juror is a close relative of one of the

11  participants in the trial or the criminal transaction, or that the juror was a witness or

12  somehow involved in the criminal transaction." Smith, 455 U.S. at 222. Following

13  Justice O'Connor's examples, courts have recognized implied bias only where a

14  juror has an intimate relationship to the issues being decided or to someone involved

15  in the trial. See, e.g., Fields, 503 F.3d at 766 (citing "a relationship to the crime

16  itself or to someone involved in a trial" or "repeated[] lie[s] about a material fact to

17  get on the jury" as exceptional circumstances supporting a finding of implied bias).

18  Here, Juror No. 8's remarks do not demonstrate the sort of intimate relationship to

19  the issues or individuals in the trial necessary to support a finding of implied bias.

20      MGA also cannot show "actual bias" under Ninth Circuit law.[4]  Unlike

21  implied bias, which is "a bias attributable in law to the prospective juror regardless

22  of actual partiality," United States v. Wood, 299 U.S. 123, 134 (1936), "actual bias"

23

---

24  [4]  MGA may claim that Mattel acknowledged Juror No. 8's bias in the legal sense in agreeing she should be removed from the jury. Not so. Mattel agreed that Juror No. 8

25  should be excused because her statements "offended and upset several of the jurors" and, if anything, her continued service threatened to cause unfairness to Mattel. It was entirely

26  appropriate to excuse Juror No. 8, but that does not require a mistrial. See, e.g., Fed. R. Civ. P. 47(c) ("During trial or deliberation, the court may excuse a juror for good cause.");

27  Fed. R. Civ. P. 47, Ad. Comm. Note ("[T]he court may in appropriate circumstances excuse a juror during the jury deliberations without causing a mistrial. Sickness, family

28      (footnote continued)

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 38 of 58   Page ID
#:190575
Case 2:04-cv-09049-SGL-RNB24/2D09umenagel73 of Filed 07/18/2008 69 Page 18 of 32

1   is "bias in fact." Fields, 503 F.3d at 767. "Actual bias is typically found when a
2   prospective juror states that he can not be impartial, or expresses a view adverse to
3   one party's position and responds equivocally as to whether he could be fair and
4   impartial despite that view." Id.

5       A juror is presumed to be impartial. Irvin, 366 U.S. at 723 (1961); see United
6   States v. Hyatt, 2007 WL 1454280, at *2 (E.D. Cal. 2007) ("In evaluating a claim of
7   juror misconduct [or bias], [the court] begin[s] with the presumption that the juror is
8   impartial [and followed the instructions given by the court].") (citation omitted).
9   The "mere existence" of preconceived notions--even notions regarding guilt or
10  innocence--does not rebut the presumption of a juror's impartiality. Irvin, 366 U.S.
11  at 723. "It is sufficient if the juror can lay aside his impression or opinion and
12  render a verdict based on the evidence presented in court." Id. The Supreme Court
13  has *repeatedly* emphasized this key distinction between having preconceptions and
14  being biased: "To hold that the mere existence of any preconceived notion as to the
15  guilt or innocence of an accused, without more, is sufficient to rebut the
16  presumption of a prospective juror's impartiality would be to establish an
17  impossible standard. It is sufficient if the juror can lay aside his impression or
18  opinion and render a verdict based on the evidence presented in court." Murphy v.
19  Florida, 421 U.S. 794, 800 (1975) (citation omitted).

20      Moreover, while not necessarily conclusive, "[i]n determining whether a
21  district court has abused its discretion in refusing to remove a juror for actual bias
22  [the Ninth Circuit] accords significant weight to a juror's definitive statement that he
23  can serve impartially," such as the statement made by Juror No. 8 here. United
24  States v. Gonzalez, 214 F.3d 1109, 1112 n.3 (9th Cir. 2000). MGA's claims that
25  Juror No. 8's statement that she could serve impartially "should be disregarded" or

26

27  emergency or *juror misconduct that might occasion a mistrial* are examples of
28  appropriate grounds for excusing a juror.") (emphasis added).

35    EXHIBIT _____
PAGE   136

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 39 of 58   Page ID
#:190576
Case 2:04-cv-09049-SGL-RNB24/2009 umBage175 of Filed 07/01/2008 6956acge919 of 32

1   are "irrelevant" are incorrect; it is entitled to "significant weight" under the law.  Id.

2   Further, the Court instructed the jury to consider only the evidence and to disregard

3   any preconceptions they might have.[5]  The jurors are presumed to have done so.

4   See, e.g., Kansas v. Marsh, 548 U.S. 163, 179 (2006).

5          There is no evidence that any preconceived notions Juror No. 8 had affected

6   her verdict in this case.  To the contrary, Juror No. 8, in the Court's questioning,

7   sought to minimize the import of her remarks,[6] and the remaining jurors rejected

8   them.[7]  This is consistent with the timing of the remark itself.  It was only "after the

9   jury had reached agreement on the Verdict Form questions that were ultimately

10  returned unanimously" that Juror No. 8 remarked that her husband had a past

11  experience that was consistent with her assessment of the evidence.[8]  The evidence

12  does not rebut the presumption that Juror No. 8 followed the Court's instructions to

13  disregard any preconceptions and consider only the evidence when deliberating.

14         Even in criminal trials, courts have held that a juror's grossly inappropriate

15  ethnic or racial slurs do not necessarily warrant a finding of actual bias.  For

16  example, in United States v. McClinton, 135 F.3d 1178, 1184 (7th Cir. 1998), two

17  jurors noticed that a woman sat with one African-American defendant one day, and

18  with the other African-American defendant on another.  One juror said the

19  defendants passed her around "like the coke," and another responded, "like a

20  commodity."  One said, "They do that, you know.  That's what they do."  The

21  district court interviewed both jurors and excused one, but *refused* to excuse the

22  other, concluding he could "put aside his feelings and deliberate fairly and

23

24   [5]   May 27, 2008 Trial Transcript at 54:3-8, attached as Exhibit 2 to the concurrently
         filed declaration of B. Dylan Proctor ("Proctor Dec.") ("You must follow the law as I give
25       it to you whether you agree with it or not, and you must not be influenced by any personal
         likes or dislikes, opinions, prejudices, or sympathy that means that you must decide the
26       case solely on the evidence before you.  You will recall that you took an oath to do so
         when we assemble last week."); July 10, 2008 Trial Transcript at 4796:17-24 (same),
27       Proctor Dec., Exh. 3.
         [6]   See Order Regarding Juror No. 8 [Docket No. 4155], Finding of Fact No. 1.
28       [7]   Id., Finding of Fact No. 3.

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 40 of 58   Page ID
#:190577
Case 2:04-cv-09049-SGL-RNB   Document 178   Filed 07/31/2008   Page 20 of 32

1  impartially in this case".  The Seventh Circuit affirmed: "if we accepted the
2  defense's argument, then we would be saying that this Court does not believe that
3  jurors can set aside a statement they have heard or an impression they have.  We
4  believe this notion underestimates a vast number of potential jurors."  Id. at 1188.
5  See also Tavares v. Holbrook, 779 F.2d 1, 1-2 (1st Cir. 1985) (now Justice Breyer
6  holding that jurors who had referred to an African-American defense witness by
7  stereotypical name could still be fair and impartial); United States v. Foghorn, 2006
8  WL 4017477, at *8, 30 (D.N.M. 2006) (evidence that a juror said "those poor
9  Indians and their alcohol" during deliberations did not show bias).[9]

10  Mattel does not in any way condone the comments made by Juror No. 8.  But
11  they are insufficient under the law to rebut the essential presumption that, whatever
12  individual comments may be made in the jury room, jurors will follow the Court's
13  instructions and reach their judgments based on the evidence presented.[10]

14  **B.   A Mistrial Should Not Be Declared Based on Voir Dire**

15  MGA also argues that it is entitled to a mistrial because Juror No. 8 allegedly
16  failed to disclose her bias during voir dire.  MGA's argument is wrong on the facts
17  and contrary to Ninth Circuit law.

18  The Supreme Court and Ninth Circuit have long held that pre-trial voir dire is
19  the time for ferreting out potential biases.  McDonough Power Equipment, Inc. v.
20  Greenwood, 464 U.S. 548, 554 (1984); Hard v. Burlington N. R. Co., 870 F.2d

---

[8]  Id., Finding of Fact No. 4.
[9]  In both McClinton and Tavares, unlike here, the jurors made their offensive remarks
*before* jury deliberations commenced.  And Foghorn actually held that Rule 606 precluded
the evidence, but ruled it insufficient to even require a hearing in the alternative.
[10]  Defendants cite United States v. Henley, 238 F.3d 1111 (9th Cir. 2001), as an
example of a case where a single use of a racial slur was enough to establish bias.  But
Henley never made that finding.  Rather, the Court found, in assessing voir dire honesty
issues, that "it is necessary to determine precisely what [the juror] did or did not say before
evaluating the truthfulness of his voir dire responses."  Id. at 1121.  Defendants also rely
on United States v. Heller, 785 F.2d 1524 (11th Cir. 1986).  But that case involved far more
than the isolated comment at issue here--there were numerous anti-Semitic jokes and
comments made by multiple jurors throughout trial and deliberations, greeted by "gales of
laughter."  Id. at 1525-1526.

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 41 of 58   Page ID
#:190578
Case 2:04-cv-09049-SGL-RNB   Document 4724/2008 Page 172 of Filed 07/01/2008 69 Page 21 of 32

1454, 1461 (9th Cir. 1989) ("Voir dire questioning is the proper method of uncovering prejudicial character traits of potential jurors."). "Voir dire has long been recognized as an effective method of rooting out [ ] bias, especially when conducted in a careful and thoroughgoing manner." <u>Patton v. Yount</u>, 467 U.S. 1025, 1038 n.13 (1984) (citation omitted). The emphasis on voir dire as the appropriate time and place for addressing possible bias respects the resources of the Court, the parties, and the jurors.

To establish bias based on alleged dishonesty at voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." <u>McDonough</u>, 464 U.S. at 556. MGA points to no evidence that Juror No. 8 failed to honestly answer any questions on voir dire. The evidence shows the contrary.

MGA had every opportunity to specifically question prospective jurors during voir dire about their preconceptions and potential biases based on ethnicity. It chose not to do so. Instead, counsel chose to use voir dire to "educate" the jury as to defense themes, rather than ask factual questions designed to actually ferret out potential ethnic biases or preconceptions or other relevant information.[11] MGA did not ask a single question directly of Juror No. 8. It did not ask Juror No. 8 (or the panel as a whole) whether they or family members had ever done business with Middle Easterners or Persians, or had any negative experiences with anyone of that

---

[11] For example, MGA's counsel asked prospective jurors: (1) "How many, and please raise your hand, believe that it is ethical for a company to claim that an employee, by signing an inventions agreement, signs away rights that he had even before he went to work at the company?"; (2) "Do you think it's okay that even though Barbie is an icon and has been around forever, that sometimes competition is good for the marketplace and the consumer?"; (3) "Do you think, then, that just because Barbie has been around for 40 years that it would be ethical for her to stomp out any competition even if it doesn't even look like it?"; and (4) "How many, though, would agree that large powerful corporations are in a far more superior position than an individual employee is with respect to enforcing the terms of employment agreements?" May 20, 2008 Trial Transcript at 303:6-9, 306:19-22, 308:16-19, 310:20-23, Proctor Dec., Exh. 1.

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 42 of 58   Page ID
 #:190579
Case 2:04-cv-09049-SGL-RNB   Document 4793   Filed 07/21/2008   Page 22 of 32

1   ethnicity, or held preconceptions about them.[12]   MGA cannot now claim, after a

2   verdict has been reached, that it should be set aside for alleged bias when MGA

3   failed to utilize the procedures established to uncover such bias. See Hard, 870 F.2d

4   at 1460 (denying new trial; if plaintiff's counsel wanted to know about juror's

5   previous dealings with defendant, "he should have asked" during voir dire). It is not

6   as though Juror No. 8 "lied" by claiming that she had no opinions or negative

7   experiences with Iranians when in fact she did; she was simply never asked.

8   Compare Dyer v. Calderon, 151 F.3d 970, 981-83 (9th Cir. 1998) (juror lied during

9   voir dire in capital case by stating that neither she nor any member of her family had

10   been victim of a crime when in fact her brother had been murdered, she herself had

11   been repeatedly victimized, and her estranged husband had been arrested for rape).

12        MGA attempts to excuse its failure to make inquiries by asserting it was the

13   jurors' duty to volunteer their preconceptions in response to questions as general as,

14   "Is there any reason that you cannot be a fair and impartial juror in this case?"[13]

15   This argument is contrary to Ninth Circuit law. In United States v. Aguon, 851 F.2d

16   1158, 1170 (9th Cir. 1988), overruled on other grounds, Evans v. United States, 504

17   U.S. 255 (1992), the defendant claimed a juror who was under investigation for a

18   similar offense failed to volunteer that information during voir dire in response to

19   questions about the jurors' ability to be impartial. The Ninth Circuit, en banc, held

20   there could be no finding of voir dire dishonesty bias because the juror was not

21   asked a specific question about whether he was under investigation, specifically

22   rejecting the argument MGA makes now -- that a juror has a duty to volunteer any

23   purported or potential biases in response to general inquiries regarding her ability to

24

25   _____

26   [12]   The closest it came was counsel's question to the entire panel whether "the mere
     fact that [an individual is] not born in the United States should disqualify him from ever
27   pursuing [the American dream]." May 20, 2008 Trial Transcript at 318:25-319:4, Proctor
     Dec., Exh. 1.  MGA does not contend, and there is no evidence, that Juror No. 8 believes
28   immigrants cannot pursue the American dream.
     [13]   MGA's Motion at 6 (citing a voir dire question posed by the Court).

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 43 of 58   Page ID
#:190580
Case 2:04-cv-09049-SGL-RNB   Document 174   Filed 07/31/2008   Page 23 of 32

1   be impartial. Id. at 1170; see also Hard, 870 F.2d at 1459-60 (discussing Aguon);

2   Sanders v. Lamarque, 357 F.3d 943, 949 (9th Cir. 2004) (juror not dishonest in voir

3   dire where she did not disclose that she had lived in the area and her sons had a

4   background with gangs because "[a]ll of the questions posed by the trial court

5   relating to familiarity with the neighborhood were couched in the present tense" and

6   "the questions relating to gangs . . . expressly asked about discrete and particular

7   contacts with gangs and [were] not open-ended queries into all possible contacts

8   with gangs or gang members.").

9          Further, MGA has not shown that Juror No. 8 was lying when she told the

10  Court she could and would be fair and impartial in evaluating the evidence, without

11  regard to her personal experiences or preconceptions. MGA's suggestion otherwise

12  is circular. According to MGA, (1) Juror No. 8 "must have harbored bias"[14] because

13  she later made an inappropriate comment in the jury room; (2) she was dishonest on

14  voir dire because she failed to disclose that bias when asked generally if she could

15  be fair; and (3) her dishonesty on voir dire proves she is biased. But, as discussed,

16  the evidence does not show she had "actual bias" within the meaning of the law.[15]

17          **C.   A Finding of Bias Would Require an Evidentiary Hearing**

18          Under no circumstances would it be appropriate for the Court to grant a

19  mistrial at this point based on juror bias. Under the law, although the Court has

20  discretion to *deny* a request for an evidentiary hearing, an evidentiary hearing is

21  required to test allegations of bias before a finding of bias can be made.

22

23

---

24  [14]  Motion at 2.
    [15]  Moreover, a lie, were there one, does not automatically require a mistrial. Even in
    the criminal context, only where a juror *deliberately* lies during voir dire, and only where

25  that lie clearly bespeaks a lack of impartiality, will the court conclude there is
    impermissible bias. See Dyer, 151 F.3d at 973 (citing McDonough) ("The Supreme Court

26  has held that an honest yet mistaken answer to a voir dire question rarely amounts to a
    [Sixth Amendment] violation; even an intentionally dishonest answer is not fatal, so long

27  as the falsehood does not bespeak a lack of impartiality."); Coughlin v. Tailhook Ass'n,
    112 F.3d 1052, 1059-62 (9th Cir. 1997) (affirming denial of new trial even though juror

28  *did* lie on voir dire). MGA has not shown actual partiality, even were there a lie.

1       The Supreme Court "has long held that the remedy for allegations of juror

2  partiality is a hearing in which the defendant has the opportunity to prove actual

3  bias." <u>Smith</u>, 455 U.S. at 215-216; <u>United States v. Angulo</u>, 4 F.3d 843, 847 (9th

4  Cir. 1993) ("the Supreme Court has stressed that the remedy for allegations of jury

5  bias is a ***hearing***, in which the trial court determines the circumstances of what

6  transpired, the impact on the jurors, and whether or not it was prejudicial.")

7  (emphasis in original).

8       MGA's motion highlights the reason an evidentiary hearing is necessary

9  before a finding of actual bias can be made. Because there is much the parties do

10  not know about Juror No. 8's remarks and what they may or may not demonstrate,

11  MGA resorts to speculation on the matter. For example, MGA speculates her

12  statements were based on conversations with her husband that took place

13  "***presumably*** long before the verdict in Phase 1(a)"[16] and her purported bias "***very***

14  ***likely*** tainted her interpretation of" the evidence.[17] A mistrial may not be based on

15  speculation. That is why "the remedy for allegations of juror partiality is a hearing".

16  <u>Smith</u>, 455 U.S. at 215-216. Yet MGA did not seek any such hearing when Juror

17  No. 8's statements came to light,[18] and does not seek one now. Its motion fails.[19]

18

19

20

---

21   [16]  MGA's Motion at 14 (emphasis added).
    [17]  MGA's Motion at 19 (emphasis added). MGA also speculates that she must have

22  "violated the Court's instruction not to discuss the case." MGA's Motion at 14.
    [18]  July 25, 2008 Trial Transcript at 20:14-21:4, Proctor Dec., Exh. 4.

23   [19]  Mattel is not suggesting that a hearing is required here. <u>See Tracey v. Palmateer</u>,
341 F.3d 1037, 1044 (9th Cir. 2003) (an evidentiary hearing is *not* required "any time

24  evidence of juror bias comes to light"); <u>United States v. Smith</u>, 424 F.3d 992, 1012-1013
(9th Cir. 2005) (affirming denial of request for evidentiary hearing where the hearing

25  would have delved into matters excluded by <u>Rule</u> 606(b)); <u>United States v. Bussell</u>, 414
F.3d 1048, 1054-55 (9th Cir. 2005) (juror declaration regarding another juror's speculation

26  that codefendant had pled guilty was inadmissible under <u>Rule</u> 606(b) and, therefore, no
evidentiary hearing or new trial was warranted). Given the strictures of <u>Rule</u> 606(b), any

27  hearing would have to be circumscribed in the inquiries to be made. <u>See Tanner</u>, 483 U.S.
at 120 (discussing <u>Smith</u>). But in the absence of a hearing, the argument that Juror No. 8

28  was not impartial within the meaning of the law is speculative. The appropriate course is
to deny the motion outright.

### D. Because The Remarks Did Not Influence The Verdict, The Phase 1(a) Verdict Must Stand

"Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different." Hard, 870 F.2d at 1461; see also Sussman v. Unum Provident Corp., 2001 WL 1352789, at *2 (C.D. Cal. 2001). Here, there can be no doubt that Juror No. 8's remarks had no bearing on the verdict.

Granting MGA's request for a mistrial in these circumstances would make this the first civil case in the country in which a jury verdict has been set aside for juror bias based on what is at most harmless error. Every case which MGA relies on to avoid inquiry into prejudice is a criminal case; in every one of them, the courts invoked the *Sixth* Amendment to support the holding (or dictum). See, e.g., Estrada, 512 F.3d at 1239 (because "[t]he Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors," "[t]he bias . . . of even a single juror would violate [Defendant's] right to a fair trial."); Gonzalez, 214 F.3d at 1111 (bias of a single juror violates the "Sixth Amendment guarantee [to] criminal defendants").[20] In the civil context, there is no authority for finding juror bias to be a structural defect requiring a mistrial notwithstanding its failure to affect the verdict. There is no such rule.

The jury deliberated for four days before reaching a verdict, demonstrating that they thoughtfully and conscientiously considered the evidence presented at trial. See Sussman, 2001 WL 1352789 at *2 (finding that three-day jury deliberation indicated "jury thoughtfully considered the issues presented and did so without [extraneous influences] improperly bearing on their decision"). The Court found the

---

[20]   See also Fields v. Brown, 431 F.3d 1186, 1192 (9th Cir. 2005); United States v. Martinez-Martinez, 369 F.3d 1076, 1081 (9th Cir. 2004) (same); Fields v. Woodford, 309 F.3d 1095, 1103 (9th Cir. 2002) (same); Green v. White, 232 F.3d 671, 676 (9th Cir. 2000) (same); Dyer, 151 F.3d at 973 (same); United States v. Shapiro, 669 F.2d 593, 602-03 (9th Cir. 1982) (same); Sassounian v. Roe, 230 F.3d 1097, 1110 (9th Cir. 2000) (same).

Case 2:04-cv-09049-DOC-RNB  Document 5876-2  Filed 07/02/09  Page 46 of 58  Page ID
#:190583
Case 2:04-cv-09049-SGL-RNB  Document 1747  Filed 07/31/2008  Page 26 of 32

1 │ juror's "remarks were made toward the end of the deliberation and after the jury

2 │ reached agreement on the Jury Verdict Form questions that were ultimately returned

3 │ unanimously."[21]   And the Court's findings were unequivocal that Juror No. 8's

4 │ remarks did not impact the verdict:

5 │ > Although the remarks offended and upset several of the jurors, the
  │ > remarks did not, in any way, effect or influence the decision made by
6 │ > the jury.  All of the jurors clearly indicated, by both their verbal and
  │ > non-verbal response to the Court's questioning, that the remarks had no
7 │ > impact on their decision in Phase 1(a).[22]

8 │        The Ninth Circuit has made clear that "the constitutional guarantees for

9 │ criminal defendants do not apply in civil cases.  The burden of proof established in

10 │ Hard applies."  Smith v. Pitman Mfg. Co., 952 F.2d 1400, 1992 WL 8182, at *1 (9th

11 │ Cir. 1992).   "Because a deprivation of liberty is qualitatively different from a

12 │ deprivation of property, heightened procedural safeguards [in criminal cases] are a

13 │ hallmark of Anglo-American criminal jurisprudence."   Spaziano v. Florida, 468

14 │ U.S. 447, 468 (1984).   "[D]ue process, as an expression of fundamental procedural

15 │ fairness, requires a more stringent standard for criminal trials than for ordinary civil

16 │ litigation."  In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring).   In

17 │ civil cases, prejudice must be shown.  MGA has not shown that the jury verdict was

18 │ affected by the inappropriate comment.  That alone should dispose of this motion.[23]

19 │

20 │   [21]  See Order Regarding Juror No. 8 [Docket No. 4155], Finding of Fact No. 4.
21 │   [22]  Id., Finding of Fact No. 5.
   │   [23]  In a footnote, MGA cites three civil cases that it claims show that "the standards
22 │ governing the Sixth and Seventh Amendment rights to a fair and impartial jury are the
   │ same." MGA's Motion at 12 n.4.  However, those cases merely stand for the proposition
23 │ that the same standard is used *when assessing the impact of an extraneous influence on the
   │ jury*. Sea Hawk Seafoods v. Alyeska Pipeline Serv. Co., 206 F.3d 900, 906 (9th Cir. 2000)
24 │ (holding standards same in civil and criminal cases in determining whether extraneous
   │ influence affected verdict); Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir. 1983)
25 │ (same).  As discussed, that is not at issue here, and in any case MGA cannot meet the
   │ standard.  Caterpillar, Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1371 n.2 (Fed. Cir.
26 │ 2004), also cited by MGA, held only that in determining what types of "extraordinary
   │ circumstances" warrant a finding of implied bias, the reasoning of Sixth Amendment cases
27 │ is "germane" to civil cases.   The one civil case cited by MGA in which a new trial was
   │ granted, Jiminez v. Heyliger, 792 F. Supp. 910, 918 (D.P.R. 1992), like Alyeska, involved
28 │ ex parte communications with jurors, not bias, and in any case itself held that jury
   │ misconduct in the civil context does not give rise to a "per se" new trial rule.

EXHIBIT
43

PAGE ___144___

## II. EVEN IF BIAS HAD AFFECTED THE VERDICT, REDELIBERATION WOULD BE THE PROPER REMEDY

Even assuming an evidentiary hearing were to establish that Juror No. 8 was "biased" under legal standards and that this bias affected deliberations adversely against MGA, these problems can be cured by instructing the jury—now sitting without Juror No. 8—to redeliberate on Phase 1(a). Likewise, there is no reason why the jury cannot fully consider the evidence in Phase 1(b) and issue a verdict. As the Court has found, the remaining jurors were and are completely impartial in their decision-making. There is no reason why they may not reconsider the evidence and come to a new verdict.[24]

### A. The Remaining Jurors Were Not Tainted by the Remarks

The remaining jurors are unbiased and impartial. The Court found that Juror No. 8's remark had no impact on the other jurors' impartiality in Phase 1(a), and that it would have no impact in Phase 1(b).[25] If anything, one of the jurors said she might be biased against Mattel, not MGA.[26] Yet for MGA to succeed in rejecting this jury, it must show not only that Juror No. 8 was biased, but that the rest of the jury cannot consider the evidence impartially. It cannot do so.

MGA suggests that the Court "may not inquire into whether [Juror No. 8's alleged] bias actually affected (or would affect) deliberations" because it would "risk improperly encroaching on territory forbidden by Fed. R. Evid. 606."[27] This, however, is irrelevant to the question of juror impartiality *going forward*, before deliberations or redeliberations begin. Inquiries into whether jurors, prospectively, can be impartial are of course proper. That is voir dire, and by its very terms Rule 606 is limited to "inquir[ies] into the validity of a verdict or indictment." Assuming

---

[24]  The Federal Rules permit a jury of as few as six jurors, and the current jury has nine members. See Fed. R. Civ. P. 48.
[25]  See Order Regarding Juror No. 8 [Docket No. 4155], Findings of Fact Nos. 5, 7.
[26]  Id., Finding of Fact No. 6.
[27]  Motion at 17-18.

Case 2:04-cv-09049-DOC-RNB  Document 5876-2  Filed 07/02/09  Page 48 of 58  Page ID
#:190585
Case 2:04-cv-09049-SGL-RNB  Document 4179  Filed 07/31/2008  Page 28 of 32

1   the existing verdict were impeachable, the Court has already found that the
2   remaining jurors are impartial, such that they may appropriately deliberate in Phase
3   1(b), and redeliberate on Phase 1(a), without Juror No. 8.

4        The Ninth and other Circuits have confirmed that a juror may be removed for
5   cause, with others left to continue. <u>United States v. Sarkisian</u>, 197 F.3d 966, 980
6   (9th Cir. 1999), is instructive. In that case, an alternate juror made racist statements
7   regarding gypsies, an ethnic group to which he believed defendants belonged. The
8   court conducted an interview of the remaining jurors, stated that it was "110 percent
9   satisfied that we have an unbiased, unprejudiced jury," and denied a mistrial motion.
10  <u>Id.</u> at 982. The Ninth Circuit affirmed: "This court has held that when a wise and
11  experienced judge, who presided at the trial and observed the jury, comes to such a
12  conclusion, it is not for us to upset it. The trial judge was in a better position than
13  we are to determine whether what happened was prejudicial." <u>Id.</u> Similarly, in
14  <u>McClinton</u>, the defendant tried to argue that an entirely new jury was necessary after
15  two jurors made remarks critical of the defendants and their race. 135 F.3d at 1184.
16  The district court interviewed each of the jurors, excused one and not the other, and
17  refused to impanel a new jury. The Seventh Circuit affirmed.

> If we accepted the defense's argument [that an entirely new jury was
> necessary], then we would be saying that this Court does not believe
> that jurors can set aside a statement they have heard or an impression
> they have. We believe this notion underestimates a vast number of
> potential jurors . . . . No court of appeals has established a per se rule
> that district courts must declare a mistrial in this situation, and we
> refuse to do so today.

22  <u>Id.</u> at 1188. Just as in <u>Sarkisian</u> and <u>McClinton</u>, this Court appropriately conducted
23  an investigation and found that simply hearing an inappropriate remark by one juror
24  did not taint the entire jury. Ninth Circuit law respects this finding.

25  **B.    At Most MGA Would Be Entitled To Redeliberation, Not Mistrial**

26       Since the jury that remains is a proper jury, this Court, if it has any doubt as to
27  the verdict already reached, may set aside that verdict and have the jury redeliberate
28  on the evidence in the absence of Juror No. 8. Mattel believes any such procedure is

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 49 of 58   Page ID
#:190586
Case 2:04-cv-09049-SGL-RNB   Document 4424   Filed 07/21/2008   Page 29 of 32

1   unnecessary (and objects to it), but it is the most relief MGA could plausibly be

2   entitled to and is far preferable to the enormous waste of resources that retrying this

3   entire case before an entirely new jury would entail.   Other courts have used

4   redeliberation in exactly this way, to eliminate any possible harm to a defendant.

5        Thus, in United States v. Ladd, 885 F.2d 954 (1st Cir. 1989), the judge failed

6   to give an instruction requested by the defendant but, after the jury reached a verdict

7   of guilty, changed his mind.   He refused to accept the guilty verdict, gave the

8   instruction and resubmitted the case to the jury.   The appellate court affirmed:

9   "While we do not suggest that the court's belt-and-suspenders approach was

10   necessary, it certainly served to obviate any doubt."   Id. at 960-961.   Similarly, in

11   Summers v. United States, 11 F.2d 583 (4th Cir. 1926), the judge inadvertently

12   instructed the jury out of the presence of the defendant.   The judge set aside the

13   verdict, reinstructed the jury in the defendant's presence and sent them back to

14   deliberate again. This too was affirmed. Id. at 585-587. Just as there, any claimed

15   harm to MGA can be repaired by reinstructing the jury and resubmitting the case.

16        In other circumstances as well, the law favors redeliberation over granting a

17   new trial because fairness and efficiency are best served by resubmitting the matter

18   to the same jury.   See, e.g., Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1058

19   (9th Cir. 2003) ("[W]hen the jury is still available, resubmitting an inconsistent

20   verdict best comports with the fair and efficient administration of justice.");

21   Mateyko v. Felix, 924 F.2d 824, 827 (9th Cir. 1990) ("Permitting the trial court in

22   its discretion to resubmit inconsistent answers for clarification promotes both

23   fairness and efficiency.").   The same rationale applies here.   Each side has presented

24   its evidence to the jury over the course of months, and an unquestionably unbiased

25   jury that has heard that evidence is available.   Any purported infirmity in the verdict

26   should, at most, be addressed by resubmitting the case to this jury.

27        That the jurors have already commenced deliberations is no reason to prevent

28   further deliberation.   In fact, the Federal Rules specifically call for the excusal of a

46   EXHIBIT ___

147

PAGE

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 50 of 58   Page ID
#:190587
Case 2:04-cv-09049-SGL-RNB24/2D0umenagel 73 of Filed 07/31/2008 69Page930 of 32

1   juror during deliberations as a means to *avoid* a mistrial. See Fed. R. Civ. P. 47 Ad.

2   Comm. note ("[T]he court may in appropriate circumstances excuse a juror during

3   the jury deliberations without causing a mistrial. Sickness, family emergency or

4   *juror misconduct that might occasion a mistrial are examples of appropriate*

5   *grounds for excusing a juror.*") (emphasis added); see also Murray v. Laborers

6   Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir. 1995) ("District court judges

7   must have ample discretion to control their dockets. The removal of Juror Giancoli

8   for good cause early in the day in order to allow the rest of the jury to continue

9   deliberating was entirely proper."). The fact that a tainted juror has engaged in

10  deliberations -- at most what has happened here -- does not require a mistrial; the

11  preferred route is merely to excuse that juror. The jury may redeliberate now that

12  Juror No. 8 has been excused.[28] For these same reasons, the jury is also fully

13  capable of issuing a verdict in Phase 1(b), and should be permitted to do so.

14  **III.   GRANTING A NEW TRIAL NOW WOULD DEPRIVE MATTEL OF**

15  **FUNDAMENTAL APPEAL RIGHTS**

16      In all events, there is one thing the Court clearly should not do--grant MGA's

17  motion now, before the 1(b) verdict is in. Taking Phase 1 to completion would

18  create a complete record and preserve MGA's rights, including its right to appeal. A

19  decision to grant the motion now and terminate trial, however, could not be undone

20

21      [28]   Dyer v. Calderon, 151 F.3d 970 (9th Cir. 1998), includes dicta stating that
22  redeliberation may not have been an available remedy in that case. See id. at 979 n.10.
    This dictum merely recited the procedural rules for criminal cases as they existed at the
23  time, which do not pertain here. In 1998, the Federal Rules of Criminal Procedure
    prohibited replacement of jurors with alternates once deliberation had begun, absent
24  waiver by the defense. See United States v. McFarland, 34 F.3d 1508, 1511 (9th Cir.
    1994) ("Once the jury begins deliberations, it is error in the Ninth Circuit to substitute an
25  alternate for a regular member who has to be discharged, unless there has been an express
    waiver of Rule [of Criminal Procedure] 24(c) by the defendant."). Compare this with the
26  *civil* rule, and the current version of the criminal rule, modified in 1999. Fed. R. Civ. P.
    47(c) ("During trial *or deliberation*, the court may excuse a juror for good cause.")
27  (emphasis added); Fed. R. Crim. Proc. 24(c) ("If an alternate replaces a juror after
    deliberations have begun, the court must instruct the jury to begin its deliberations anew.").
28  The rules, including the new rules post-*Dyer*, embrace redeliberation as a means to *avoid* a
    mistrial.

Case 2:04-cv-09049-DOC-RNB   Document 5876-2   Filed 07/02/09   Page 51 of 58   Page ID
#:190588
Case 2:04-cv-09049-SGL-RNB   Document 4272   Filed 07/01/2008   Page 31 of 32

1    and would risk unfairly denying Mattel any practical right to appeal.  Indeed, MGA

2    has made claims which, if accepted, would require the entire case to be retried *even*

3    *if* it were decided on appeal that a mistrial should not have been granted.

4           The stakes are high for both Mattel and MGA.  For Mattel's part, counsel has

5    not found a single instance, nor has MGA cited any, where a court granted a mistrial

6    in a civil case on the basis of a single remark made by a juror about a party's race or

7    ethnicity, as is the case here.  It is thus important that the parties' rights to appeal be

8    preserved, and not rendered illusory.  "[T]he right to a judicial review must be

9    substantial, adequate, and safely available," not "merely nominal and illusory."

10   Wadley Southern Ry. Co. v. State of Georgia, 235 U.S. 651, 661 (1915); see also In

11   re Victory Const. Co., Inc., 9 B.R. 570, 572 (Bankr. C.D. Cal. 1981) ("The right to

12   an effective appeal is as significant and vital to a litigant as the right to a fair and

13   impartial trial in the first instance.").

14          Obtaining a complete verdict on both parts of Phase 1 is essential to

15   protecting Mattel's rights on appeal.  If a mistrial were granted now, without

16   completing Phase 1(b) and reaching a verdict as to damages, the jury would

17   presumably be discharged, and could not practically be reconvened.  See, e.g.,

18   Mattice v. Maryland Cas. Co., 5 F.2d 233, 234 (W.D. Wash. 1925) ("[T]he jury

19   could not be legally reconvened after being discharged from the case.").  Yet, MGA

20   also has claimed that a *single* jury must hear *both* parts of Phase 1 as a matter of

21   constitutional law.  In connection with the motions on trial phasing, it argued:

22          ***The Seventh Amendment precludes*** separating Mattel's claims for
             damages and liability into two separate trials because its damages
23          claims arise from the same underlying operative facts as Mattel's
             claims for breach of contract, breach of fiduciary duty, breach of duty
24          of loyalty, and conversion, as well as the counterclaims discussed
             herein.  Courts have consistently held that where the determination of
25          liability and damages involves a significant overlap of facts, the
             Seventh Amendment demands that the same jury determine both

26

27

28

1    questions.[29]

2    While Mattel disagrees with this argument, the Court ordered that both damages and

3    liability would be tried before a single jury without resolving the issue.

4         In light of the possibility that a court could ultimately rule that the same jury

5    *must* decide both liability and damages in this case, the Court should allow the trial

6    to proceed to a final Phase 1(b) verdict.  Should it not do so, Mattel could be

7    deprived of meaningful appellate review.  Even if Mattel were successful on appeal

8    in arguing that a mistrial should not have been granted, the Phase 1(a) verdict would

9    still be in jeopardy, and arguably could not be reinstated, since the same jury would

10   no longer be available to determine damages.  Conversely, if the trial is completed,

11   and even if this Court later decides a mistrial is necessary, a later appellate decision

12   in Mattel's favor would require simply reinstating the verdict.

13        The parties have spent many millions of dollars and several months

14   presenting their cases.  The Court and the jury have spent months hearing the

15   evidence.  The parties have a limited amount of time left to present the balance of

16   their cases.  Completing Phase 1(b) comports with both fairness and efficiency.  The

17   Court should not grant any mistrial now, since stopping trial just as it is nearing

18   completion risks the possibility that all this effort will be undone to no purpose, and

19   would deny Mattel the full right to appeal any decision granting a mistrial.

20

21   DATED:  July 31, 2008            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
22

23
                                     By /s/ John B. Quinn
24                                      John B. Quinn
                                        Attorneys for Mattel, Inc.
25

26

27   ---

28   [29]   MGA's Supplemental Brief Regarding Claims to be Tried in Phase One Trial, filed
     June 20, 2007 (emphasis added), Proctor Dec., Exh. 5.

07209/2589005.4

# EXHIBIT 10

EXHIBIT FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER

# EXHIBIT 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-09049 SGL(RNBx)                              Date: September 2, 2008

Title:     MATTEL, INC. -v- MGA, INC.
              AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes                              None Present
              Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:    ORDER SETTING VARIOUS BRIEFING SCHEDULES

        The Court, having considered the positions of counsel at the hearing herein, as well as the
parties' proposed scheduling positions, hereby sets the following scheduling order for further
proceedings in this matter:

1.      The case is STAYED from the date of this order through September 19, 2008, except for
        efforts aimed in good faith at a complete and global settlement.  Principal corporate officers
        for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make
        themselves available, at a mutually agreeable time, to meet with counsel and Ambassador
        Prosper to discuss a global resolution of this matter.

2.      On September 29, 2008, the parties may file opening briefs and submissions regarding
        remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for
        injunctive relief, constructive trust, and/or other remedial measures.  Response briefs and
        submissions are due October 13, 2008.  Reply briefs and submissions are due October 20,
        2008.  A hearing not to exceed four hours will be conducted before this Court on **Monday,
        November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90                                        Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

EXHIBIT ___11___
PAGE ___168___

3.   Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its issuance of any injunction(s), constructive trust(s), and/or other remedial measures. Response briefs are due 14 days following the opening briefs, and reply briefs are due 7 days following the response briefs. A hearing will be set by the Court after receiving the response briefs. Depending on the outcome of the hearing, the Court may address or defer addressing the following additional issues: (1) Whether or not to issue a judgment or await completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will provide three proposed discovery masters in advance of the hearing to which counsel for the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.   All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3, except as follows: For good cause shown, the Court ORDERS the deposition of **Carlos Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30 days of September 19, 2008. Any disputes concerning the taking of these depositions shall be presented to this District Judge in the manner prescribed in Local Rule 37.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                          2                    Initials of Deputy Clerk __jh_____

EXHIBIT ___11___
PAGE ___169___

# NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)     **Case Title**   Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**   MINUTES OF SEPTEMBER 2, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ADD NEW NOTICE PARTY (if sending by fax, mailing address must also be provided) |
|---|---|

Name:  Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail:  Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| JUDGE / MAGISTRATE JUDGE (list below): |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT    11
PAGE      170