1 MELINDA HAAG (State Bar No. 132612)
  mhaag@orrick.com
2 ANNETTE L. HURST (State Bar No. 148738)
  ahurst@orrick.com
3 WARRINGTON S. PARKER III (State Bar No. 148003)
  wparker@orrick.com
4 ORRICK, HERRINGTON & SUTCLIFFE LLP
  The Orrick Building
5 405 Howard Street
  San Francisco, CA 94105
6 Telephone: +1-415-773-5700
  Facsimile: +1-415-773-5759
7
8 WILLIAM A. MOLINSKI (State Bar No. 145186)
  wmolinski@orrick.com
9 ORRICK, HERRINGTON & SUTCLIFFE LLP
  777 South Figueroa Street, Suite 3200
9 Los Angeles, CA 90017
10 Telephone: +1-213-629-2020
   Facsimile: +1-213-612-2499
11
12 Attorneys for MGA ENTERTAINMENT, INC., MGA
   ENTERTAINMENT HK, LTD.,
13 MGAE de MEXICO, S.R.L. de C.V., and ISAAC
   LARIAN
14

15                  UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17                         EASTERN DIVISION

18 CARTER BRYANT, an individual,          CASE NO.  CV 04-9049 SGL (RNBx)

19                 Plaintiff,             Consolidated with
                                          Case No.  CV 04-09059
20         v.                             Case No.  CV 05-02727

21 MATTEL, INC., A Delaware               **DISCOVERY MATTER**
   corporation,                           **[To Be Heard By Discovery Master**
22                                        **Robert O'Brien Pursuant To Order Of**
                                          **January 6, 2009]**
23                 Defendant.
                                          **MGA ENTERTAINMENT, INC.'s**
24                                        **OPPOSITION TO MATTEL, INC.'S**
                                          **MOTION FOR PROTECTIVE**
25                                        **ORDER REGARDING MGA'S**
                                          **FIRST SET OF PHASE 2**
26                                        **INTERROGATORIES**
27
28

| | |
|---|---|
| AND CONSOLIDATED CASES, | [Declarations of Jean P. Nogues, Robert J. Herrington, and Caroline H. Mankey Filed Concurrently]<br><br>Date:   TBD<br>Time:   TBD<br>Place:   TBD<br><br>[Honorable Stephen G. Larson]<br>**Phase 2**<br>Discovery Cutoff:   Dec. 11, 2009<br>Pretrial Conf.:   March 1, 2010<br>Trial Date:   March 23, 2010 |

## I.   INTRODUCTION

Mattel's Third Amended Answer and Counterclaims ("TAAC") contains allegations of multiple misappropriations of trade secrets in three countries, three separate purported racketeering enterprises under the RICO statute with multiple different types of alleged predicate acts, hundreds of pages of exhibits, and is pled against three separate MGA entities and Isaac Larian, as well as other counterclaim-defendants.  In order to join issue and get the scope and character of this case pinned down as quickly as possible, MGA did not even bother to quarrel with many of the substantive defects of the TAAC, instead moving directly ahead with an answer to the counterclaims and proceeding in discovery. Despite the enormous complexity and massive resources being devoted by Mattel to this continuing effort to kill Bratz (and MGA in the process), Mattel now tries restrict without any showing of cause whatever the number of interrogatories to which MGAE, MGA HK, MGA de Mexico, and Mr. Larian are statutorily entitled, and deprive these parties of the basic information they need to litigate this incredibly complex case.

Mattel has got to be kidding.

Mattel's Motion should be denied for at least the following reasons.

First, Mattel failed to meet and confer regarding this motion.  Indeed, in the course of two telephonic conferences and the exchange of at least four letters

regarding this discovery, not once did Mattel's counsel ever even mention its intent to file the Motion.  This is yet another example of Mattel's scorched-earth litigation tactics, which flout the Federal Rules of Civil Procedure and the Local Rules. Mattel should not be allowed to continue these abusive practices, and for this ground alone, the Motion should be denied in its entirety.

Second, Mattel's Motion must be denied because Judge Larson stated unequivocally in the February 11, 2009 hearing that discovery for Phase 2 was starting over with a "clean slate" and subject only to the limits embodied in the Federal Rules.  Thus, MGAE is entitled to serve 25 interrogatories during Phase 2, unlimited in any way by any responses Mattel has given or supplementary responses Mattel plans to provide in response to discovery served during Phase 1. As are MGA HK, MGA de Mexico and Mr. Larian.  After all, Rule 33 provides that each "party" may serve 25 interrogatories.

Accordingly, Mattel's Motion should be denied and Mattel should be ordered to serve full and complete answers, without objection, to each of MGA's First Set of Phase 2 Interrogatories (the "Interrogatories") and the corresponding Requests for Production that are at issue in the Motion (the "Requests at Issue").

## II.   MATTEL FAILED TO MEET AND CONFER REGARDING THE MOTION, AND IT SHOULD BE DENIED ON THAT GROUND.

Mattel asks the Discovery Master to grant a Motion about which it ***never met and conferred*** with MGA.  On this ground alone, the Motion should be denied in its entirety.

Fed. R. Civ. Proc. 37(a) requires a party to "meet and confer in good faith" before filing a discovery motion.  Fed. R. Civ. Proc. 26(c)(1) likewise requires "good faith" meet and confer efforts before a party may file a Motion for Protective Order.  The Stipulation for Appointment of a Discovery Master, signed by Judge Larson at the outset of this case, illuminates this requirement in plain and unambiguous terms:

> The moving party shall first identify each dispute, **state the relief sought**, and **identify the authority supporting the requested relief** in a meet and confer letter….

Stipulation for Appointment of a Discovery Master, dated Dec. 6, 2006 ("Discovery Master Order"), at ¶ 5, 4:10-13, Declaration of Jean P. Nogues ("Nogues Decl."), Ex. 1.

Mattel failed to adhere to these requirements.  Not once did Mattel's counsel ever mention that it intended or even contemplated filing the Motion.  Nogues Decl., ¶¶ 2-4.  Instead, it filed this discovery motion without complying with the Discovery Master Order's edict to "state the relief sought" and "identify the authority supporting the requested relief," in a meet and confer letter or at any time during the meet and confer process.  MGA never had the slightest notice that this Motion would be filed.  Id.

The meet and confer requirement is not some meaningless edict to which counsel need only give a perfunctory nod.  It is intended to encourage the parties to have productive interchanges in the hope they can resolve their disputes without the necessity of court intervention.  Thus, unless a moving party demonstrates it made a good faith attempt to resolve an issue before asking the court for assistance, a motion should be denied.  See, e.g., Robinson v. Potter, 453 F.3d 990, 995 (8th Cir. 2006) (affirming denial of motion to compel where moving party failed to show parties met and conferred in good faith); Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 186-87 (3d Cir. 2003) (district court properly denied motion to compel where movant's counsel "failed to make a good faith effort to resolve discovery disputes prior to invoking court intervention.").  Here, Mattel did not meet and confer at all on the Motion, let alone do so in good faith.  Nogues Decl., ¶¶ 2-4.

While the parties did meet and confer about the propriety of Mattel's objections to the Interrogatories and Requests and MGA's expected Motion to Compel, id., that does not give Mattel *carte blanche* to run to the Discovery Master

with *other* Motions it has failed even to mention to MGA.  This type of sandbagging is exactly what the Federal Rules and the Discovery Master Order are designed to avoid.   Accordingly, Mattel's Motion must be denied.

### III.    EACH MGA ENTITY, AS WELL AS MR. LARIAN, HAS THE RIGHT TO SERVE—AND MATTEL IS OBLIGATED TO ANSWER— TWENTY-FIVE INTERROGATORIES DURING PHASE II.

Rule 33 says each party gets twenty-five interrogatories.  Judge Larson said the parties are *starting over* in Phase 2 under the Rules, without limitation or qualification.  Mattel's Motion is therefore substantively meritless.

On January 6, 2009, the Court vacated its previous stay on Phase 2 discovery.  Order Appointing Discovery Master, dated Jan. 6, 2009, at 2, Nogues Decl., Ex. 2.  In a hearing on February 11, 2009, Judge Larson discussed in detail his thoughts on Phase 2 discovery and what effects discovery prior to the Phase 1 trial had on the limits in Phase 2.  In this hearing, he made it absolutely clear that *all* previous discovery and all previous rulings on discovery were moot, and that *new* limits on discovery applied to all discovery served during Phase 2 (i.e., after the stay was lifted).  While there was an earlier imposed limit on interrogatories of "50 for each side for both cases,"[1] the Court made clear that no longer applies.

The Court began by noting that "[t]he last issue I want to take up is the scheduling of Phase 2 at this time."  Transcript of February 11, 2009 Hearing, at 90:12-13, Nogues Decl., Ex. 7.  Then, after a discussion clarifying that no discovery has been stayed, MGA's counsel addressed the Court:

> **Mr. Frackman**:  We would request from the Court that there be a reasonable limit placed on Phase 2 depositions. I don't know whether that comes to Your Honor or

[1] Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories; Denying Mattel's Motion to Compel Interrogatory Responses, dated Sept. 5, 2007 ("Order, dated Sept. 5, 2007"), at 2:14-16 (citing February 27, 2007 Minute Order; Transcript of Feb. 12, 2009 Scheduling Conference), Nogues Decl., Ex. 8.

1    whether that goes to the discover[y] referee.

2    **The Court**:  In the first instance, that would go to the discovery referee.  ***The limits that were placed were***
3    ***limits that were placed on the earlier discovery phase***.

4    To be clear again, ***I have placed no limits, no***
***restrictions,*** other than what is set forth in the rules of
5    civil procedure and in local rule 37 ***on discovery <u>from this</u>***
6    <u>***point***</u> until March 23rd [2010, the Phase 2 trial date].

7    …

8    **Mr. Frackman**:  I think we're prepared to follow the federal rules, Your Honor.  Thank you.

9    …

10    **Mr. Zeller** [Mattel's counsel]:  … Just so it's clear, because as I understood it, there, of course, are the limits
11    under the Federal Rules of ten depositions.  We, of course, have – and I thought that the parties –
12
13    **The Court**:  You did more than ten depositions.

13    **Mr. Zeller**:  Correct. And I think both sides have.
14
14    **The Court**:  Yes.
15
16    **Mr. Zeller**:  Or then there were limits the Court did put on the case, as we understood it; I want to say the number
17    was 24, but I could be off slightly, that the Court did modify the limits already.

18    **The Court**:  I allowed for additional depositions.  But
19    ***those were all in the context of the first phase***.  We now have new counsel coming in….

20    …

21    **The Court**:  ***Whatever limits I imposed***, if I did not use
22    the precise language that I should have, ***let me make it***
***clear now: That was applied to the [first] discovery***
***phase.  That's now water under the bridge.  It is over.***
23
24    <u>***We are starting with a clean slate***</u>, a new discovery master, new counsel for MGA, and we are going to build
25    this up and we'll go from here.  If there's a discovery dispute, please take it to the Discovery Master.

26    <u>Id.</u> at 102:4-104:8 (emphasis added).

27          The Court's language applies to all forms of discovery available under

28    the Rules – it "made it clear" that it "placed no limits, no restrictions, other than

1   what is set forth in the rules of civil procedure and in local rule 37 on discovery

2   from this point until" the Phase 2 trial.  Id.  Under the Federal Rules, "a party may

3   serve on any other party no more than 25 written interrogatories…."  Fed. R. Civ.

4   P. 33(a)(1).  Thus, according to Judge Larson's Order, "from this point" i.e. starting

5   on February 11, 2009,[2] MGA had the right to "serve on any other party no more

6   than 25 written interrogatories."[3]

7   **A.**      **The 75-Interrogatory Limit Mattel Proposes is a Figment of**

8              **Mattel's Imagination and Lacks Any Support in the Record.**

9            Undoubtedly recognizing that its objections fail under the limit of 25

10  Phase 2 interrogatories, Mattel invents an aggregate 75 interrogatory limit never

11  contemplated by either Judge Larson or the Parties.

12           Mattel's core (indeed, its only) argument in the Motion is that the

13  Interrogatories are "excessive and improper." It bases this argument on the idea that

14  the Court "allowed additional discovery for Phase 2 of this litigation," such that

15  "Defendants now were allowed an additional 25 interrogatories, for a total of 75."

16  Motion, at 1:4; 4:1-7.

17           As is clear from Judge Larson's actual words above, this effort to

18  rewrite history is inaccurate.  Indeed, the Discovery Master will search in vain to

19  find anywhere in the February 11, 2009 hearing transcript or elsewhere that a "total

20  of 75" has ever been discussed or even contemplated, by Judge Larson or between

21

22  [2] In fact, though he said "from this point," Judge Larson may have meant from the
time the Phase 2 discovery stay was lifted on January 6, 2009.  However, the

23  difference is immaterial in this instance because MGA served no interrogatories
between January 6, 2009 and February 11, 2009.

24  [3] Mattel snidely refers to MGA's "so-called 'Phase 2' discovery" and to MGA's
"'First' Set of Phase 2 Interrogatories."  Motion, at 5:4-5; 1:10-11.  Perhaps the

25  Mattel attorney who signed the Motion is unaware that his colleague, Mr. Zeller,
just a few months ago, served "***Mattel, Inc.'s First Set of Interrogatories (Phase 2)***

26  to Isaac Larian." (emphasis added).  See Nogues Decl., Ex. 4.  More likely, Mattel's
counsel was well aware of this fact but chose to continue Mattel's pattern of baldly

27  ignoring arguments it has made in the past in favor of what is expedient in the
present.  In any event, Mattel's own discovery served on MGA clearly

28  acknowledges that discovery served in Phase 2 is, in fact, distinct from, and
governed by different rules than, discovery served in Phase 1.

the Parties.  Instead, Judge Larson unequivocally stated that the Federal Rules' discovery limits would apply *separately* to discovery served in Phase 2.  Any counting of interrogatories served in Phase 1 was "water under the bridge.  It is over."  Indeed, as of February 11, 2009, the Parties were "starting with a clean slate."  This language is entirely inconsistent with Mattel's unsupported assertion that an aggregate limit of 75 interrogatories has somehow been imposed.

Moreover, the complexity and size of this case entirely warrant at least the minimum number of interrogatories to which each party is entitled under the Federal Rules, and likely many more.  Judge Larson made clear even during Phase 1 that he would not be parsimonious in granting extra interrogatories were they necessary for a fair preparation of the case.  There is clearly no reason to stint on the basics now.

Mattel's basic problem seems to be that it named multiple defendants on countless serious claims and now it regrets that it is required to afford them due process to defend those claims.  Merely to state the animating principle behind Mattel's action in bringing this Motion is to refute it.

**B.    The Number of Interrogatories Answered in Phase 1 is Irrelevant.**

Having invented an aggregate limit of 75 interrogatories (in contravention of Judge Larson's Order), Mattel then spends the bulk of its Motion arguing that, counting supposed subparts, Mattel answered more than 75 interrogatories during Phase 1.

While this is not true (as discussed below), it is also irrelevant.  To the extent that Mattel voluntarily answered more than the 50 interrogatories allowed during Phase 1, it waived any argument that MGA was not entitled to such responses *at the time Mattel answered*.  Mattel cannot now argue that those responses were improper at the time it provided them (or agreed to provide them) and, therefore, that they count against MGA's allotted 25 Phase 2 interrogatories.  Parties are not allowed to cross their fingers behind their backs when providing

discovery responses, only to pop up later and say, "Ah ha, we didn't really mean it. Those count against you now!"  If Mattel did not think it was required to answer those interrogatories during Phase 1, it should have refused to do so and either moved for a protective order or resisted a motion to compel.  That it did neither constitutes a waiver of any argument that those responses somehow now count against the interrogatories allowed in Phase 2.

Indeed, Judge Larson specifically held that the Parties could agree to answer more than the 50 interrogatories he allowed during Phase 1.  See Order, dated Sept. 5, 2007, Nogues Decl., Ex. 12 (quoting Tr. of February 12, 2007 Scheduling Conference, at 24:5-11 ("Let's try to work within the confines of the 50 interrogatories, and if you need more, again, the court is going to be forthcoming, if there's a need for it.  And it's the type of order that ***if you can stipulate amongst yourselves, you're not going to need an order from the court***.") (emphasis added)).  If Mattel answered more than 50 interrogatories propounded during Phase 1, it did so of its own volition, and cannot now use those responses to limit MGA's right to obtain Phase 2 discovery.  Again, Judge Larson was clear that Phase 2 starts with a "clean slate."

**C.**   **Mattel's Supplemental Responses to Phase 1 Interrogatories Do Not Count Against the 25 Phase 2 Interrogatories to Which MGA is Entitled.**

Mattel's assertion that supplemental responses it has agreed to provide to interrogatories served more than 18 months ago somehow impact MGA's right to serve 25 new interrogatories in Phase 2 is meritless and duplicitous.

**1.**   **Mattel Never Conditioned Its Supplemental Responses to MGA's Second Set of Interrogatories, Served in December 2007, on Those Supplemental Responses Counting Against MGA's Right to Serve 25 Interrogatories in Phase 2.**

Having invented its own aggregate limit of 75 interrogatories (in

1    contravention of Judge Larson's Order), and having sandbagged MGA by arguing

2    that Mattel's voluntary responses during Phase 1 now limit MGA's rights in Phase

3    2, Mattel then distorts the record in an attempt to give the impression that it agreed

4    to provide supplemental responses to old interrogatories only "because the Court

5    gave each side additional interrogatories." Motion, at 4:17-5:1. There is no

6    evidence anywhere to support this assertion.

7          MGA served its Second Set of Interrogatories to Mattel, Inc. on

8    December 4, 2007.[4] Mattel provided responses on January 3, 2008 and, after

9    meeting and conferring, provided supplemental responses on March 5, 2008.[5]

10   MGA never agreed with Mattel's objection that any of its interrogatories were

11   compound or that MGA had served more than 50 interrogatories. Herrington Decl.,

12   ¶ 5. Rather, MGA agreed that it would not then move to compel further responses

13   if, as it did on March 5, 2008, Mattel supplemented its responses to seven of the

14   interrogatories in MGA's Second Set of [Phase One] Interrogatories that were most

15   crucial to MGA's claims and defenses in Phase 1. Id. At no time did MGA ever

16   agree that these were the only interrogatories as to which it was entitled to

17   responses, nor did the Parties have any agreement regarding counting subsequent

18   supplemental responses to these interrogatories against MGA's right to serve

19   interrogatories in Phase 2 of this action. Id., ¶¶ 5-6. MGA simply made the tactical

20   decision not to instigate motion practice at that time, in the face of an imminent

21   trial, and left the other interrogatories for another time. Id., ¶ 5.

22         Thus, on March 25, 2009, after the discovery stay was lifted, MGA's

23   counsel sent a letter to Mattel's counsel inquiring as to some of the interrogatories

24   to which Mattel had previously either refused to substantively respond or provided

25   an inadequate response. The letter was clear that MGA was not seeking new

26   ────────────────
     [4] See Nogues Decl., Ex. 6, 1:22-23.
     [5] Declaration of Robert J. Herrington ("Herrington Decl."), ¶ 3; Declaration of
27   Marshall M. Searcy III, filed concurrently with Mattel's Motion ("Searcy Decl."),
     Ex. 13; Declaration of Bridget A. Hauler, filed concurrently with Mattel's Motion
28   ("Hauler Decl."), Ex. 2.

1   discovery or serving new Phase 2 interrogatories, but was inquiring as to whether
2   "Mattel is willing to **supplement** its responses to any of these discovery
3   requests…." 3/25/09 Letter from C. Mankey to J. Corey and M. Zeller, Declaration
4   of Caroline H. Mankey ("Mankey Decl."), Ex. 1 (emphasis added). A series of
5   telephone conferences and letters ensued meeting and conferring about these old
6   document requests and interrogatories. This included telephone conferences on
7   March 31, April 13, and April 16, 2009, and letters between counsel on April 14,
8   16, 17, 20, and 27, 2009. See Mankey Decl. ¶¶ 3-8, Exs. 2-6.

9            In the course of all of these communications, **not once did Mattel ever**
10  **argue or even mention that supplemental responses were appropriate only**
11  **because of Judge Larson's February 11, 2009 Order.** See id., ¶ 9, Exs. 2-6.
12  Mattel never mentioned its compound objections or its objection that MGA was
13  over the limit; it never even mentioned the idea that its responses would count
14  toward the Phase 2 limit. See id., ¶¶ 9-10, Exs. 2-6. MGA likewise never
15  mentioned – nor did it contemplate – such an idea. Id. Quite simply, Mattel's
16  assertion that it agreed to supplement its responses "because the Court gave each
17  side additional interrogatories," Motion, at 4:17-5:1, is a fabrication. This topic
18  was never once discussed. Id.

19           MGA also made a motion to compel further responses to some of
20  those interrogatories.[6] Tellingly, **Mattel's Opposition to MGA's motion to compel**
21  **never mentioned the argument that these interrogatories counted against MGA's**
22  **right to 25 Phase 2 interrogatories**.[7] Indeed, in that Opposition, Mattel specifically
23  addressed its compound objections, yet **never** mentioned or even hinted that it
24  believed that MGA had served more than its allotted number of interrogatories, and
25  certainly said nothing to indicate that its agreement to provide supplemental

---

26  [6] See Nogues Decl., Ex. 6. Although Mattel agreed to supplement certain of the
27  interrogatories at issue, all issues were not resolved, so MGA did file a Motion to Compel (Nogues Decl., Ex. __), which is currently pending before the Discovery Master.
28  [7] See Nogues Decl., Ex. 7.

responses in any way was contingent upon those responses counting against MGA's right to serve 25 new Phase 2 interrogatories.[8]

For a party fond of arguing waiver at every available opportunity, there is no doubt that the shoe is now on the other foot.

Mattel raised this unsupportable argument for the first time in its May 18, 2009 responses to these Interrogatories, more than a month after agreeing to supplement its responses to these December 2007 interrogatories, and well after filing its opposition to MGA's motion to compel further responses, in which Mattel failed to raise this argument. Such delay leads to the inevitable conclusion that Mattel has either just invented this argument or has attempted to sandbag MGA by never mentioning it previously. In either event, by failing to timely raise this argument in its meet and confer with MGA's counsel, Mattel has waived and/or is estopped from asserting this argument. Eureka Financial Corp. v. Hartford Acc. and Indem. Co., 136 F.R.D. 179, 185 (E.D. Cal. 1991) (objections not properly raised during meet and confer were waived); Carmichael Lodge No. 2103, Benevolent and Protective Order of Elks of the United States of America, 2009 WL 1118896, at *5 (E.D. Cal. Apr. 23, 2009) ("any privilege which actually exists with respect to the above interrogatories has been waived in that no proper assertion has been made even after meet and confers").

## IV.    MGA HAS NOT SERVED MORE THAN 75 TOTAL INTERROGATORIES IN BOTH PHASES.

While the argument above is entirely dispositive of Mattel's Motion, MGA will address Mattel's counting of MGA's interrogatories merely out of an abundance of caution and to demonstrate that, even if Mattel's unsupported theory that some never-stated "75 total interrogatory" limit is applied, MGA is still within that limit.

---

[8] See id. at 13:6-17.

A.     **Interrogatories Directed At a "Common Theme" Are Not**
**Compound and Count as Just One Interrogatory.**

Mattel is simply wrong that MGA's interrogatories served during Phase 1 are compound.[9]  The interrogatories that Mattel claims are compound all comply with the rule, affirmed by the Discovery Master, that interrogatories aimed at one common theme are ***not*** compound and count as only one interrogatory.  See Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question."); see also Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, 2005 WL 318811, at *7 (N.D. Cal. Jan. 5, 2005) (interrogatory that asked the "same question regarding a common group of people" not compound) (citing 8A Wright et al., Fed. Prac. & Proc.: Civ. 2d § 2168.1, at 261).

Based on this same reasoning, both the current Discovery Master and the former Discovery Master have repeatedly rejected the Parties' objections on this ground as meritless.  See Order No. 11, dated March 30, 2009, at 21, Nogues Decl., Ex. 9 ("The fact that the interrogatories ask MGA to identify witnesses, facts and documents related to the MATTEL DOCUMENTS does not render the interrogatories compound because the questions in each interrogatory refer to one common theme"); Order No. 17, dated April 14, 2009, at 21-22, Nogues Decl., Ex. 13 (overruling compound objection; ***The questions in each interrogatory refer to one common theme and a common group, and count as a single interrogatory***") (emphasis added); Order, dated September 5, 2007, at 5-7, Nogues Decl., Ex. 8 (interrogatories with "subparts seeking facts supporting a contention, the identity of

---

[9] Note that, contrary to Mattel's unsupported assertion in its Motion, at 9 n.30, MGA in no way contests the applicability of Fed. R. Civ. P. 33(a) to its interrogatories, nor does it disagree with the prior Discovery Master's finding that certain Mattel interrogatories were compound.  See Order, dated Sept. 5, 2007, Nogues Decl., Ex. 8.  MGA simply disagrees with Mattel's claims regarding ***MGA's*** interrogatories, and submits that ***MGA's*** interrogatories are not compound.

persons with knowledge, and documents are not counted separately for the purposes of applying the … interrogatory limit.").  The Discovery Master should do so again here and overrule Mattel's baseless objections.[10]

The Advisory Committee Notes for the 1993 Amendments to Fed. R. Civ. P. 33 illuminate the type of interrogatories that count as multiple interrogatories:

> Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about ***discrete separate subjects***.  However, a question asking about communications of a particular type should be treated as a single interrogatory… (emphasis added).

As a leading treatise has explained, "it would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question…."  8A Wright et al., Fed. Practice & Proc. § 2168.1, at 261 (2d ed. 1994) (cited by Order, dated Sept. 5,

---

[10] Mattel has made, and won, this exact argument, in the past.  See Mattel, Inc.'s Notice of Motion and Motion to Enforce Order Compelling MGA to Provide Discovery, to Compel Responses to Contention Interrogatories by MGA and for Sanctions, at 18, Nogues Decl., Ex. 10 ("MGA objects that Interrogatory Nos. 51 and 52 are compound.  However, each of these interrogatories refers to only one common theme and thus, counts only as one interrogatory.").  The Discovery Master adopted this argument in its Order granting Mattel's Motion.  See Order No. 17, dated Apr. 14, 2009, at 21-22, Nogues Decl. Ex. 13.  For further discussion of this subject, see Part IV.B, infra.
To allow Mattel to now argue otherwise, after receiving the benefit of the prior ruling it demanded, would be inequitable and inconsistent with the principles of judicial estoppel.  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The doctrine is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"  Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).  Judicial estoppel can apply to inconsistent positions of law or fact.  Helfand v. Gerson, 105 F.3d 530, 534-36 (9th Cir. 1997) ("The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal.").  Judicial estoppel can also apply within the continuing progress of a single action.  See Pegram v. Herdrich, 530 U.S. 211, 228 n.8 (2000) ("Judicial estoppel generally ***prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase***.") (emphasis added).

2007, Nogues Decl., Ex. 8).  "[T]he weight of authority interpreting Rule 33(a) requires examining *whether the subparts are 'logically or factually subsumed within and necessarily related to the primary question*.'"  <u>Chapman v. Cal. Dept. of Ed.</u>, 2002 WL 32854376, at * 1 (N.D. Cal. Feb. 6, 2002) (emphasis added) (quoting <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998)).

Thus, it is only "[w]hen a subpart introduces *a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it*, [that] the subpart must be considered a separate interrogatory no matter how it is designated."  7 <u>Moore's Federal Practice</u>, § 33.30[2] (Matthew Bender 3d ed.).

## B.   The Interrogatories Cited in Mattel's Motion Are Not Compound.

Here, the Phase One interrogatories Mattel points to simply aren't compound under the authorities cited above.[11]

- **Bryant Interrogatory No. 6**: "State all facts supporting YOUR claim that YOU have been damaged by any act or omission of Bryant."[12]

This interrogatory is quite simple – it asks Mattel to explain how it has been damaged.  It does not ask Mattel "to provide all facts … for each of its 10 discrete claims against Bryant."  Motion, at 9:10-12.  In fact, it is not linked to Mattel's specific causes of action at all.  Rather, it asks about *one* discrete subject – Mattel's damages.  If Mattel wants to bring claims that allege that it has been damaged by MGA, it must be prepared to answer one straightforward interrogatory asking it to detail those alleged damages.  There is nothing compound about this interrogatory.

---

[11] As the party moving for a protective order, it is Mattel that bears the burden of proving its allegations.  <u>See Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir. 2003); <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975).

[12] Defendants' First Set of Interrogatories at Interrogatory No. 6, Searcy Decl., Ex. 3.

- **MGA Interrogatory No. 1**: "State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU have suffered harm as a result of any act or omission of MGA."[13]

Again, this interrogatory is directed at one topic and one topic alone – harm.  It asks Mattel to detail the harm it alleges it has suffered as a result of any act or omission of MGA.  It does not separately ask for information about each of Mattel's myriad underlying claims; rather, it asks about a single topic – Mattel's alleged harm.  This is not compound.[14]

- **MGA Interrogatory No. 3**: "State, with particularity, the nature, amount, cause and calculation of every item of YOUR alleged damages, including, without limitation, general, actual and statutory damages, restitution, disgorgement of unlawful profits, lost profits, lost payments, lost revenues, lost monies, lost royalties or license fees, reputational harm, lost relationships, lost business opportunities, interest, attorneys' fees, costs, expenses, and any other form of injury or damage or quantifiable remedy that YOU seek to recover in this lawsuit."[15]

This interrogatory merely expands on Bryant Interrogatory No. 6, asking for more particularized detail concerning Mattel's claim that it has been damaged by MGA.  The fact that this interrogatory lists a number of different examples of the types of damages MGA believed that Mattel was claiming does not make this interrogatory compound.  This is similar in concept to an interrogatory served by Mattel that the Discovery Master specifically found was *not* compound.

---

[13] MGA's First Set of Interrogatories at Interrogatory No. 1, Searcy Decl., Ex. 5.
[14] That Mattel has chosen to burden MGA with a one hundred page-plus response to this interrogatory is immaterial.  Motion, at 10:20-11:2.  Whether or not Mattel chose to include extraneous facts in its response does not change the fact that this interrogatory was aimed at one discrete topic – Mattel's harm.
[15] MGA's First Set of Interrogatories, at Interrogatory No. 3, Searcy Dec., Ex. 5.

Mattel's Supplementary Interrogatory No. 51 to MGA states:

> For each concept, design, product, product packaging or other matter that YOU contend MATTEL has copied, infringed, or diluted, including but not limited to those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, Response to Interrogatory No. 2…, describe, fully and separately, each and every concept, design, product, product packaging or other matter of or by MATTEL that YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s), product(s), product packaging or other matter."[16]

In objecting to this interrogatory (and several others like it), MGA noted that Mattel's use of the verbs "copied, infringed, or diluted" covered at least two distinct MGA causes of action and several Mattel products, including various lines of dolls, accessories, and the packaging for those products.[17]

In response, Mattel specifically argued that those interrogatories, which are strikingly similar to the Interrogatories at issue here, were not compound, arguing that Interrogatories 51, 52, and 53 inquire into the factual basis for MGA's claims that Mattel infringed MGA's intellectual property.  These interrogatories each seek information on a common theme and about a common group."[18] Specifically, Mattel claimed that "Interrogatory No. 51 asks details about one common group: MGA products, concepts, and designs that MGA contends Mattel infringed," and argued that this was one interrogatory.[19]  The Discovery Master agreed with Mattel, holding that, despite the fact that it referred to more than one of

---

[16] See Order No. 17, dated Apr. 14, 2009, at 4:1-17, Nogues Decl., Ex. 13.

[17] See MGA's Opposition to Mattel's Motion to Enforce and Compel Re Trade Dress Interrogatories, at 22:14-18, Nogues Decl., Ex. 11 ("Interrogatory 51 deals with ten very different tangible and intangible things… and at least two very different legal concepts (copying/infringement and dilution).").

[18] Mattel's Reply in Support of Mattel, Inc.'s Motion to Enforce Order Compelling MGA to Provide Discovery, to Compel Responses to Contention Interrogatories by MGA and for Sanctions, Nogues Decl., Ex. 12, at 11:24-12:1; see also id. at 12 n.26 ("[S]imply requiring that MGA provide specificity in its description of the alleged infringement (by identifying the allegedly infringed elements, and by specifically identifying the allegedly infringing Mattel products) does not make the interrogatory compound.").

[19] Mattel, Inc.'s Notice of Motion and Motion to Enforce Order Compelling MGA to Provide Discovery, to Compel Responses to Contention Interrogatories by MGA and for Sanctions, Nogues Decl., Ex. 10, at 18:19-22.

MGA's causes of action ("copied, infringed, or diluted"), Interrogatory No. 51 and two other similar interrogatories "each [] refer to one common theme and a common group, and count as a single interrogatory."[20]

MGA Interrogatory No. 3 is no different, and the Discovery Master should do no differently here.  The fact that this interrogatory gives an exemplary list of the types of damages claims Mattel asserts does not change the fact that, like Mattel's Supplemental Interrogatory No. 51, this interrogatory is addressed at "one common theme" – Mattel's damages.  Everything else in the interrogatory is merely explanatory, and is "'logically or factually subsumed within and necessarily related to the primary question.'"  <u>Chapman</u>, 2002 WL 32854376, at * 1 (quoting <u>Safeco</u>, 181 F.R.D. at 445).  This interrogatory counts as one interrogatory.

- **MGA Interrogatory No. 4**: "State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU are entitled to exemplary damages, attorneys' fees and costs."[21]

This is no different than the previous interrogatories.  Again, the common theme here is quite plain – this interrogatory is asking for all facts and documents related to a portion of Mattel's damages claim.  <u>See</u> Order dated September 5, 2007, Nogues Decl., Ex. 8, at 7:2-3 (interrogatories were not compound because "the subparts are related and directed to the underlying details of a specifically identified contention (or contentions)").  That this interrogatory asks Mattel to "[s]tate all facts" and to "IDENTIFY all DOCUMENTS" does not make it compound.  <u>See id.</u> at 7:7-9 ("[S]ubparts seeking facts supporting a contention, the identity of persons with knowledge, and documents are not counted separately for purposes of applying the 50 interrogatory limit.").

---

[20] Order No. 17, dated Apr. 14, 2009, Nogues Decl., Ex. 13, at 21:26-22:1.
[21] MGA's First Set of Interrogatories, at Interrogatory No. 4, Searcy Dec., Ex. 5..

- **MGA Interrogatory No. 18**: "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA violate or infringe any of MATTEL's intellectual property and/or proprietary rights."[22]

Mattel argues that an interrogatory that references the "fashions and/or accessories" related to a line of dolls is, therefore, compound.  This interrogatory is the epitome of an interrogatory addressed at a "common theme."  The fact that they are "discrete factual items,"[23] as Mattel states, even if true, is entirely immaterial – Mattel cites no authority that "discrete factual items" must be counted as separate interrogatories.  Order No. 17, granting Mattel's motion to compel further responses to its trade dress interrogatories to MGA, is instructive.  There, the Discovery Master rejected MGA's argument that certain interrogatories were compound, and ordered MGA to answer the interrogatories.[24]  These interrogatories referred to "each concept, design, product, product packaging or other matter that YOU contend MATTEL has copied, infringed, or diluted,"[25] "each trade dress that YOU contend MATTEL copied, infringed, or diluted,"[26] and "each MATTEL concept, design, product, product packaging or other matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as to affiliation, connection, or association, or as to origin, sponsorship, or approval…."[27]  Further, these interrogatories required MGA to "describe, fully and separately, each and every concept, design, product packaging or other matter of or by MATTEL that YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s),

---

[22] MGA's Second Set of Interrogatories, at Interrogatory No. 18, Searcy Dec., Ex. 6.
[23] Motion, at 12:16.
[24] See Order No. 17, dated Apr. 14, 2009, at 21:26-22:1, Nogues Decl., Ex. 13.
[25] Id. at 4:1-17 (No. 51).
[26] Id. at 4:18-27 (No. 52).
[27] Id. at 5:1-10 (No. 53).

product(s), product packaging or other matter," (all within one interrogatory),[28] to "separately IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade dress" and to identify the sales, costs, *and* profits for each (all within one interrogatory),[29] and to "separately state all facts that support YOUR contention" that "any of the SLEEKCRAFT FACTORS weighs against MATTEL" regarding "each MATTEL concept, design, product, product packaging or other matter" (again, all within one interrogatory).[30]  According to the Discovery Master, ***none*** of these interrogatories was compound.[31]  If these interrogatories are not compound, then an interrogatory merely referring to doll "fashions and/or accessories" certainly is not.

- **MGA Interrogatory No. 28**: "Describe in detail the complete factual basis for YOUR COUNTERCLAIMS including, without limitation all facts, DOCUMENTS, and witnesses that REFER OR RELATE TO YOUR COUNTERCLAIMS."[32]

First, Mattel has waived the argument that this interrogatory is, in actuality, 14 interrogatories.  In its Response to Interrogatory No. 28, Mattel simply repeated the same set of boiler-plate objections that it included in all of its responses to MGA's Second Set of Interrogatories.  Mattel stated that it "specifically objects to this Interrogatory on the grounds that Defendants' Second Set of Interrogatories purports to require Mattel to answer interrogatories that are in excess of the number of interrogatories allowed defendants…."[33]  This objection, repeated verbatim in all of Mattel's responses to MGA's Second Set of

---

[28] Id. at 4:1-17 (No. 51).
[29] Id. at 4:18-27 (No. 52).
[30] Id. at 5:1-10 (No. 53).
[31] See Order No. 17, dated Apr. 14, 2009, at 21:26-22:1, Nogues Decl., Ex. 13 ("The questions in each interrogatory refer to one common theme and a common group, and count as a single interrogatory.").
[32] MGA's Second Set of Interrogatories, at Interrogatory No. 28, Searcy Dec., Ex. 6.
[33] Mattel, Inc.'s Objections and Responses to MGA Entertainment, Inc.'s Second Set of Interrogatories, at 20:15-19 (Response to Interratory No. 28), Searcy Decl., Ex. 13, page 217.

1   Interrogatories, hardly put MGA on notice that Mattel would claim that this single

2   interrogatory should count as *14* interrogatories, more than half the total number of

3   interrogatories allowed by the Federal Rules.  The fact that Mattel's 16-line litany

4   of objections also included the word "compound" does not help matters – again,

5   this boilerplate objection, repeated in response to each interrogatory in that set,

6   could not have put MGA on notice that MGA would seek the draconian measure of

7   precluding MGA from serving a single Phase 2 interrogatory.  Indeed, this

8   Response failed to apprise MGA in any way that Mattel would argue that this single

9   interrogatory should be counted as *14* interrogatories.  The first time Mattel ever

10  made that argument was in this Motion, more than 18 months after Mattel served its

11  Response to this interrogatory.  As such, Mattel has waived this argument and this

12  interrogatory counts as one interrogatory.

13          Second, as argued by Mattel and as found by the Discovery Master in

14  a strikingly similar motion, this kind of interrogatory is not compound merely

15  because it encompasses multiple causes of action.  As discussed above regarding

16  MGA Interrogatory No. 3, MGA raised nearly the identical argument to that which

17  Mattel raises here, but Mattel moved to compel responses and won.

18          There, Mattel moved to compel responses to two interrogatories that

19  each encompassed every "concept, design, product packaging or other matter" or

20  trade dress that MGA contended Mattel "has *copied, infringed, or diluted*…."[34]

21  These interrogatories each implicated three different causes of action (copyright

22  infringement, unfair competition, and dilution) and MGA argued as much.[35]  Mattel

23  resisted this argument, contending instead that the interrogatories "each seek

24  information on a common theme and about a common group"[36] and that "simply

---

[34] See Order No. 17, dated Apr. 14, 2009, Nogues Decl., Ex. 13, at 4:1-27 (Supplemental Interrogatory Nos. 51 and 52).

[35] See MGA's Opposition to Mattel's Motion to Enforce and Compel Re Trade Dress Interrogatories, at 22:14-18, Nogues Decl., Ex. 11 ("Interrogatory 51 deals with ten very different tangible and intangible things… and at least two very different legal concepts (copying/infringement and dilution).").

[36] Mattel's Reply in Support of Mattel, Inc.'s Motion to Enforce Order Compelling

1   requiring that MGA provide specificity in its description of the alleged

2   infringement (by identifying the allegedly infringed elements, and by specifically

3   identifying the allegedly infringing Mattel products) does not make the

4   interrogatory compound."[37]

5          The Discovery Master agreed with Mattel, holding that, despite the

6   fact that they referred to more than one of MGA's causes of action ("copied,

7   infringed, or diluted"), the interrogatories "each [] refer to one common theme and

8   a common group, and count as a single interrogatory."[38]  If those interrogatories

9   were not compound, despite the fact that they each referred to multiple MGA

10  causes of action, then MGA Interrogatory No. 28 is not compound merely because

11  it "requires that Mattel provide specificity in its description of the alleged

12  infringement" by referencing multiple causes of action (in this case, Mattel's

13  overlapping and interlaced counterclaims).  This interrogatory does not require that

14  Mattel provide separate answers for multiple counterclaims.  It does not require that

15  Mattel address the elements of any of those counterclaims.  Rather, this

16  interrogatory is directed at one common theme – the one unifying set of *facts*

17  underlying Mattel's counterclaims.  MGA is entitled to a simple, unitary recitation

18  of these facts in response to this straightforward interrogatory.

19          In any event, while this interrogatory is not compound, whether it is

20  compound or not is immaterial.  As discussed *infra*, Part III.C, even *if* this

21  interrogatory were counted as fourteen, as Mattel contends (it should not), Mattel

22  has still answered only 50 interrogatories to date.

23      •   **MGA Interrogatory No. 29**: "Describe in detail any estimate or

24          calculation of damage, loss, injury, or unjust enrichment, by reason of

25          any act or omission alleged in YOUR COUNTERCLAIMS, that YOU

26  _____

27  MGA to Provide Discovery, to Compel Responses to Contention Interrogatories by
    MGA and for Sanctions, Nogues Decl., Ex. 12, at 11:24-12:1.
    [37] Id. at 12 n.26.

28  [38] Order No. 17, dated Apr. 14, 2009, Nogues Decl., Ex.13, at 21:26-22:1.

1       have made or that has been made on YOUR behalf or at YOUR

2       request, including all facts, DOCUMENTS or witnesses RELATING

3       TO each estimate or calculation."[39]

4           This interrogatory, like Bryant Interrogatory No. 6 and MGA

5   Interrogatory Nos. 3 and 4, is addressed at one common theme – Mattel's alleged

6   harm.  It simply asks Mattel to explain its alleged damages.  It does not ask Mattel

7   "to address 14 distinct legal theories…."  Motion, at 13:5-7.  Rather, it asks about

8   *one* discrete subject – Mattel's damages, regardless of how many legal theories

9   Mattel may have for claiming them.  If Mattel wants to bring its counterclaims that

10  allege that it has been damaged by MGA, it must be prepared to answer one

11  straightforward interrogatory asking it to detail those alleged damages.  There is

12  nothing compound about this interrogatory.  See Order dated September 5, 2007,

13  Nogues Decl., Ex. 8, at 7:2-3 (interrogatories were not compound because "the

14  subparts are related and directed to the underlying details of a specifically identified

15  contention (or contentions)").  Again, the Discovery Master's Order No. 17 is

16  instructive.  See *supra*, discussion regarding Interrogatory No. 18.  If the three

17  sprawling and wide-ranging trade dress interrogatories there, addressed as they

18  were to, among other things, three separate causes of action and "each concept,

19  design, product, product packaging or other matter that YOU contend MATTEL

20  has copied, infringed, or diluted,"[40] "each trade dress that YOU contend MATTEL

21  copied, infringed, or diluted,"[41] and "each MATTEL concept, design, product,

22  product packaging or other matter that YOU contend is likely to cause confusion, to

23  cause mistake, or to deceive as to affiliation, connection, or association, or as to

24  origin, sponsorship, or approval"[42] were not compound, then surely this is not.

25  Like the others, this interrogatory counts as one interrogatory.

26  ---
    [39] MGA's Second Set of Interrogatories, at Interrogatory No. 29, Searcy Dec., Ex.
    6.
27  [40] Order No. 17, dated Apr. 14, 2009, at 4:1-17 (No. 51), Nogues Decl., Ex. 13.
    [41] Id. at 4:18-27 (No. 52).
28  [42] Id. at 5:1-10 (No. 53).

C.   **MGA Has Not Exceeded the Purported "75 Interrogatory Limit" That Mattel Has Invented.**

According to Mattel's own admission, to date it "has provided substantive answers to 32 numbered interrogatories…." Motion, at 13:18-20. As detailed above, none of those interrogatories are compound. Therefore, Mattel has to date answered only 32 interrogatories. "In addition, Mattel has agreed to provide substantive answers to an additional five numbered interrogatories served prior to the Phase 1 trial…." Motion, at 13:20-14:2. Because, as shown above, none of these are compound either, Mattel will have answered only 37 interrogatories once it serves these supplemental responses.[43]

Furthermore, one of the interrogatories for which Mattel has promised to provide a supplemental responses is MGA Interrogatory No. 28. Even *if* MGA Interrogatory No. 28 counts as 14 interrogatories (and it should not), that would mean that Mattel has agreed to provide 18 additional substantive responses. Thus, including these promised responses, Mattel would have only answered *50* interrogatories – the exact number that it MGA was entitled to serve in Phase 1! Therefore, even if the imaginary "75 interrogatory limit" that Mattel has invented were real, MGA is nowhere near that number (even if MGA Interrogatory No. 28 were 14 interrogatories). In fact, even in this imaginary world, MGA is right where it is in reality – entitled to serve 25 interrogatories in Phase 2.

In short, Mattel's Motion is not only factually inaccurate and legally incorrect, but is also much ado about nothing. Even using Mattel's tortured logic, Mattel is obligated to respond to all of the Interrogatories.

---

[43] As explained *supra*, Part III, this illustrates why Mattel's invented 75 interrogatory limit makes no sense. Under that approach, if MGA Interrogatory No. 28 is only *one* interrogatory, then Mattel has, by its own admission, only answered 37 interrogatories (including the five for which it has promised supplementary responses). Accordingly, under Mattel's theory, MGA would be entitled to serve *38* interrogatories in Phase II.

## V.   MATTEL HAS FAILED TO SHOW ANY UNDUE BURDEN FROM ANSWERING THE INTERROGATORIES AND REQUESTS AT ISSUE.

The Motion also claims that "Mattel will be unduly burdened if it is required to answer the Interrogatories and Requests in question."  Motion, at 15:3-5.  Mattel makes no showing of undue burden, and none could be made given the scope of the pleadings in the two actions remaining to be tried in Phase 2.

The information MGA seeks is highly relevant.  Any ostensible burden associated with providing it – and none has been proven here since Mattel has not even attempted to explain what such burden would be – is minimal compared to the value this information will have to MGA in developing its claims and defenses.  See 8A Wright et al., Fed. Practice & Proc.: Civ. § 2174, at 278 (to determine if an interrogatory poses an "undue burden," courts have adopted a "proportionality approach that balances the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory"); see also King v. Georgia Power Co., 50 F.R.D. 134, 135 (N.D. Ga. 1970) (overruling objection that interrogatory was burdensome and oppressive, even though preparation of answer would be time-consuming and costly, because information was crucial to the issues of the suit and in exclusive custody of defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951) (overruling "overly burdensome" objection because value of information to plaintiff clearly outweighed any annoyance or expense involved in disclosure by defendant); Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 491 (W.D. N.C. 1998) ("Requiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute an undue burden….  Imposing such a burden is particularly proper where, as here, the information sought is crucial to the ultimate determination of a crucial issue….").

1    Under the Federal Rules of Civil Procedure, "the grounds for objecting

2 to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4).

3 Generic objections that fail to explain the basis for an objection with specificity are

4 routinely rejected in the Central District.  The courts have specifically held that

5 "general or boilerplate objections such as 'overly burdensome and harassing' are

6 improper – especially when a party fails to submit any evidentiary declarations

7 supporting such objections." A. Farber and Partners, Inc. v. Garber, 234 F.R.D.

8 186, 188 (C.D. Cal. 2006).  Stated another way, "boilerplate, generalized objections

9 are inadequate and tantamount to not making any objection at all." Walker v.

10 Lakewood Condominium Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999).

11 This constitutes a waiver of all such objections.

12    Mattel has not even attempted to demonstrate or "state with

13 specificity" *why* responding to the Interrogatories and Requests at issue presents

14 any burden, let alone an undue one in light of the relevance of the questions.  On

15 this ground alone, this objection should be rejected.  See Jackson v. Montgomery

16 Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev. 1997) ("The party claiming that

17 a discovery request is unduly burdensome must allege specific facts which indicate

18 the nature and extent of the burden, usually by affidavit or other reliable evidence.")

19 (cited in Order No. 11, at 19, Nogues Decl., Ex. 9; Order No. 17, at 23, Nogues

20 Decl., Ex. 13); Nagele v. Electronic Data Systems Corp, 193 F.R.D. 94, 109

21 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party

22 failed to particularize its basis for the objection).  Indeed, the Discovery Master has

23 already overruled objections of this type where the party "has not provided any

24 evidence in connection with its Motion To Compel to support its claim of burden."

25 Order No. 17, at 23, Nogues Decl., Ex. 13; see also Order Granting Mattel's Motion

26 to Compel Production of Documents and Interrogatory Responses by MGA, dated

27 May 15, 2007, at 14, Nogues Decl., Ex. 14.[44]

28 ─────────────────────
[44] Mattel has made, and prevailed on, this exact argument.  See Mattel, Inc.'s

1    The Discovery Master has already ruled that a party cannot complain

2  that interrogatories are unduly burdensome when the request "merely seeks

3  information regarding the extent of" a party's claims.  Order No. 17, dated April 14,

4  2009, at 23 ("If MGA contends Mattel infringed numerous products, Mattel has the

5  right to discover the scope of the alleged claims.  Accordingly, the objections are

6  overruled."); id., at 13-14 ("[A] party is always burdened with costs when it

7  voluntarily chooses to pursue a claim…. If the MGA Parties wish to avoid these

8  costs in connection with MGA's trade dress claims, MGA can always dismiss them.

9  Because any hardship that MGA might face is one of its own making, any burden

10 imposed on it in having to respond to the discovery is justified."); see also

11 O'Connor v. Boeing North American, Inc., 185 F.R.D. 272, 280-81 (C.D. Cal.

12 1999) (interrogatory asking responding party to describe each injury "which you

13 contend was caused by defendant's conduct" was proper).  Indeed, courts have

14 expressly ruled that under Rule 33, "there is no … automatic rule that an

15 interrogatory must be disallowed merely because it calls for an opinion or

16 contentions."  Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc., 175

17 F.R.D. 646, 650 (C.D. Cal. 1997) (citing Wright et al., Fed. Practice & Proc.: Civ. §

18 2167, at 247 (2d ed. 1994)).  Because such interrogatories seek information related

19 to the responding party's own factual and legal contentions, "the burden [is] on the

20 Notice of Motion and Motion to Enforce Order Compelling MGA to Provide
   Discovery, to Compel Responses to Contention Interrogatories by MGA and for
21 Sanctions, at 14, Nogues Decl., Ex. 10 ("MGA has offered no evidence that
   responding to interrogatories with these defined terms would be unduly
22 burdensome, and the definitions are vague.  MGA's boilerplate objections to
   Mattel's defined terms should be overruled for this reason."); id., at 20 ("MGA
23 provided no explanation as to why Interrogatory No. 51 is unduly burdensome.
   This objection should be overruled for this reason alone."); Reply in Support of
24 Matttel, Inc.'s Motion to Enforce Order Compelling MGA to Provide Discovery, to
   Compel Responses to Contention Interrogatories by MGA and for Sanctions, at
25 13:11-12, Nogues Decl., Ex. 12 ("MGA does not dispute that it has failed to
   provide any proof to support its burden assertions.  The Court should therefore
26 overrule each of MGA's unsubstantiated burden objections.").  The Discovery
   Master agreed with Mattel.  See Order No. 17, dated Apr. 4, 2009, at 23:5-6,
27 Nogues Decl., Ex. 13 ("MGA has not provided any evidence in connection with its
   Motion To Compel to support its claim of burden…. Accordingly, the objections
28 are overruled.").

1   party opposing discovery rather than … the proponent of the contention

2   interrogatories to justify their propoundment." Id. at 652.  This policy is

3   "consistent with Rule 11 of the [FRCP, which requires that] plaintiffs must have

4   some factual basis for the allegations in their complaint…." Id.; see also Am. Oil

5   Co. v. Penn. Petro. Co., 23 F.R.D. 680, 683 (D. R.I. 1959) ("Since the information

6   sought here will undoubtedly be assembled by the defendant prior to trial in the

7   preparation of its defenses, it cannot be said that these interrogatories are

8   objectionable as being burdensome.").

9          Mattel's burden objections are unfounded and should be rejected.

10  **VI.   BECAUSE MATTEL'S ARGUMENTS REGARDING THE**

11  **INTERROGATORIES ARE INVALID, MATTEL MUST ANSWER**

12  **THE CORRESPONDING REQUESTS FOR PRODUCTION**

13         Mattel has refused to respond to the Requests at Issue on the sole

14  ground that they are "inextricably intertwined" with the Interrogatories.  Motion, at

15  15:10-16.  Because, for all the reasons discussed above, the Interrogatories are

16  proper, Mattel must also respond to the Requests at Issue and provide all non-

17  privileged documents responsive thereto.

18         While Mattel has raised other boilerplate objections in its Responses to

19  the Requests for Production at issue, Mattel has waived these objections by failing

20  to rely on those objections either in the meet and confer between counsel or in its

21  Motion for Protective Order.  See Eureka Financial Corp. v. Hartford Acc. and

22  Indem. Co., 136 F.R.D. 179, 185 (E.D. Cal. 1991) (objections not properly raised

23  during meet and confer were waived); Carmichael Lodge No. 2103, Benevolent and

24  Protective Order of Elks of the United States of America, 2009 WL 1118896, at *5

25  (E.D. Cal. Apr. 23, 2009) (accord).

26  **VII.  MATTEL SHOULD BE SANCTIONED FOR FILING THIS MOTION**

27         Mattel has wasted the Court's and MGA's resources by filing this

28  Motion in direct contravention of the good faith meet and confer requirements of

1    both the Federal Rules, the Central District's Local Rules, and the Discovery

2    Master Order in this case.  By awarding sanctions, the Discovery Master will send a

3    clear and direct message to Mattel that such behavior will not be tolerated in Phase

4    2 of these consolidated cases/

5              The bad faith nature of the manner in which Mattel went about filing

6    this Motion is equaled only by the bad faith arguments contained therein.  Mattel

7    has invented an aggregate 75-interrogatory limit that defies the plain language of

8    Judge Larson's decision regarding Phase 2 discovery.  Mattel then makes entirely

9    unsupportable arguments purporting to hold Phase 1 discovery against MGA's right

10   to serve Phase 2 discovery, including by purposely misleading the Court and the

11   Discovery Master as to the reason why Mattel has agreed to supplement its

12   responses to interrogatories served in Phase 1.  Finally, and most brazenly of all,

13   Mattel then attempts to argue that certain of MGA's prior interrogatories are

14   compound, ignoring arguments that Mattel itself has made and won in prior

15   motions concerning strikingly similar interrogatories.

16             These tactics were all plainly designed to delay providing MGA with

17   vital information concerning Mattel's Phase 2 claims.  Such delaying tactics should

18   be sanctioned.  See Fed. R. Civ. P. 11(b)-(c) (Rule 11 sanctions may be imposed

19   when a pleading is filed for the improper purpose of causing "unnecessary delay");

20   Green v. Baca, 225 F.R.D. 612, 614-15 (C.D. Cal. 2005) (unreasonable delay in

21   providing discovery responses warranted sanctions in the form of attorneys' fees

22   expended in bringing motion to compel).

23             Enough is enough.  Mattel should be sanctioned for its unconscionable

24   behavior, and should be ordered to pay the costs associated with MGA's

25   preparation of this Opposition, in the amount not less than $4000.  Nogues Decl

26   ¶19.

27

28

1   **VIII.  CONCLUSION**

2              For all of the foregoing reasons, MGA respectfully requests that the

3   Discovery Master deny Mattel's Motion in its entirety and award sanctions in favor

4   of the MGA Parties and against Mattel for this baseless and unnecessary motion in

5   the amount not less than $4000 as requested herein.

6

7   Dated:     July 7, 2009                    Orrick, Herrington & Sutcliffe LLP

8

9                                              */s/ Annette L. Hurst*

10                                         ANNETTE L. HURST
                                           Attorneys for The MGA Parties
11                                            for Phase Two

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28