# EXHIBIT 7

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT 7

# TO DECLARATION OF

# JEAN PIERRE NOGUES

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11 | CARTER BRYANT, an individual,       | CASE NO. CV 04-9049 SGL (RNBx)
   |                                      | Consolidated with
12 |              Plaintiff,             | Case Nos. CV 04-9059 & CV 05-2727
   |                                      |
13 |        vs.                          | **DISCOVERY MATTER**
   |                                      |
14 | MATTEL, INC., a Delaware            | **[To Be Heard By Discovery Master
   | corporation,                        | Robert C. O'Brien Pursuant To Order
15 |                                      | Of January 6, 2009]**
   |              Defendant.             |
16 |                                      | MATTEL, INC.'S OPPOSITION TO
   |                                      | MGA ENTERTAINMENT INC.'S
17 |                                      | MOTION TO COMPEL PRODUCTION
   | AND CONSOLIDATED ACTIONS            | OF DOCUMENTS AND THINGS FROM
18 |                                      | MGA'S SECOND AND FIFTH SETS OF
   |                                      | REQUESTS FOR PRODUCTION AND
19 |                                      | RESPONSES TO MGA'S SECOND SET
   |                                      | OF INTERROGATORIES TO MATTEL,
20 |                                      | INC.

21                                        [DECLARATION OF DIANE C.
                                          HUTNYAN SUBMITTED
22                                        CONCURRENTLY]

23                                        Hearing Date:    TBD
                                          Time:            TBD
24                                        Place:           TBD

25                                        Phase 2:
                                          Disc. Cut-off:   December 11, 2009
26                                        Pre-trial Conf.: March 1, 2010
                                          Trial Date:      March 23, 2010

27

28

07975/2908843.1

EXHIBIT 7  PAGE 48

# TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 7 |
| I. MGA'S PRECIPITOUS FILING SHOULD BE SUMMARILY REJECTED | 7 |
| A. As It Now Concedes, Most Issues Raised By MGA Have Already Been Resolved | 7 |
| B. MGA's Requested Relief as to Its Interrogatories Is Inconsistent With Its Own Positions | 10 |
| C. It Would Be Improper To Overrule Mattel's Objections | 12 |
| II. AS TO THE REQUESTS IN DISPUTE, MGA'S MOTION SHOULD BE DENIED ON THE MERITS | 14 |
| 1. Requests for Production No. 148, 162, 486, and 489 | 14 |
| 2. Request for Production No. 178 | 16 |
| 3. Request for Production No. 154 | 17 |
| CONCLUSION | 20 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

### Cases

Assam v. Assam-Metzler,
  2002 WL. 31236300 (N.D.Ill. Oct. 1, 2002) .................................9

Global Polymer Industries, Inc. v. C & A Plus, Inc.,
  2006 WL. 1344088 (D.S.D. May 15, 2006) ...............................9

Hua v. Boeing Corp.,
  2009 WL. 279018 (W.D.Wash. Feb. 5, 2009) ........................10

New Hampshire v. Maine,
  532 U.S. 742 (2001) ...............................................13

Regan-Touhy v. Walgreen Co.,
  526 F.3d 641 (10th Cir. 2008) ...................................18

Rissetto v. Plumbers and Steamfitters Local 343,
  94 F.3d 597 (9th Cir. 1996) ....................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-ii-

Case No. CV 04-09049
MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
(2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7  PAGE 50

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA's motion is premature and unnecessary. The requirement that parties meet and confer before filing discovery motions is not make-work -- the goal, where it can be achieved, is to resolve contemplated motions *before* they are brought, so the expense of motion practice and the burden it imposes on the Discovery Master and the Court is limited to genuine disputes. MGA's filing is designed to frustrate this process; granting it will reward those efforts.

After waiting months following the lifting of the stay on Phase 2 discovery (contradicting any current claims of urgency), MGA sent Mattel a six-page letter seeking to meet and confer about, by MGA's numbering, twenty-one requests for production and six interrogatories. The requests and interrogatories purport to seek, among other things, a "detailed" and "complete" description of the factual basis of each and every counterclaim Mattel has alleged, including the identification of "all" pertinent documents and witnesses, a "detailed" description of the "complete factual basis" for numerous Mattel contentions, again including the identification of "all" pertinent documents and witnesses, "detailed" estimates of all forms of damages incurred by Mattel, including "all" relevant facts, documents and witnesses, and vast quantities of documents responsive to over a dozen requests for production. The burden of compliance with such requests is clearly substantial. MGA specifically requested that Mattel supplement its responses and provide this information by May 14, 2009 -- more than two weeks from today.

Mattel met and conferred with MGA on these issues repeatedly. Of the twenty-one requests for production MGA initially put at issue, Mattel agreed in writing, to provide all documents responsive to eleven of them. Mattel also agreed, in writing, to provide all documents responsive to a narrowed version of eight additional requests, and addressed the remaining two requests such that MGA did not move on them. Mattel also agreed to supplement its responses to every single interrogatory MGA put

1  at issue. And Mattel agreed to make every effort to complete its production by the date

2  MGA demanded. MGA now suggests that Mattel's positions were unclear in certain

3  respects, but at no point did MGA request clarification or did Mattel refuse to provide

4  it.

5          In fact, MGA did not even respond to Mattel's last letter on the subject.

6  Instead, it filed this motion out of the blue, weeks before the agreed date for

7  supplementation. MGA cannot demand compliance, obtain agreements to comply and

8  then, before the deadline even approaches, short-circuit the entire process through a

9  premature motion to compel.

10        MGA apparently recognized this two days ago. Two days ago, a week

11  *after* it filed its motion, on the day Mattel's opposition was originally due, MGA finally

12  responded to Mattel's last letter on the subject -- sent *before* MGA filed its motion --

13  that if the parties can reach agreement as to six requests for production where there may

14  be ongoing disputes, "*MGA will withdraw its pending motion to compel*," reserving its

15  right to move to compel *after* Mattel voluntarily supplements its responses as agreed.[1]

16  This motion to compel, as MGA now concedes, never should have been brought.

17  MGA's gamesmanship has caused hours upon hours of needless work and delay --

18  hours that could have been spent working on the supplemental responses MGA has

19  demanded.

20        As to the few requests where there is a genuine dispute on the merits,

21  MGA's motion should be denied. MGA's Requests for Production Nos. 148, 162, 486,

22  and 489 seek documents relating to Mattel's and its counsel's knowledge of seizures by

23  Mexican and Canadian law enforcement authorities of Mattel trade secrets in MGA's

24  possession. But such knowledge is not discoverable: this is not percipient witness

25  information. MGA unreasonably refused to restrict the requests to percipient

26

27    [1] See April 27, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 2,

28  Hutnyan Dec., Exh. 6.

1  knowledge, rendering them overbroad and improper.  Similarly, in response to MGA's

2  Request No. 154, Mattel offered documents about a trade secret up to the point of its

3  alleged theft.  MGA rejected this proposal (while conceding that the request, as drafted,

4  is improper),  but offers no reason or authority as to why it is entitled to the balance of

5  an overbroad request.  And with respect to Request No. 178, after MGA objected to the

6  scope of Mattel's proposed production, Mattel agreed to broaden the scope in the way

7  MGA wanted.  Instead of indicating to Mattel what, if anything, was unsatisfactory,

8  MGA responded by filing this motion.

9  <div align="center">**Statement of Facts**</div>

10  On March 25, 2009, MGA wrote Mattel a six-page meet-and-confer letter

11  identifying twenty-one requests for production and six interrogatories, the responses to

12  which MGA asked Mattel to supplement.[2]  Mattel promptly met and conferred as

13  requested on March 31, and the dispute as to six of the Requests was resolved quickly.

14  As to four of them, MGA had overlooked that Mattel had already agreed to produce

15  responsive, non-privileged documents.[3]  As to two more, Mattel pointed out that it had

16  already provided the requested information in its Initial Disclosures and in earlier

17  document productions and interrogatory responses.[4]  This left fifteen requests for

18  production and the six named interrogatories at issue.

19  The parties continued to meet and confer on April 13 and April 16, with

20  confirming letters on April 14, April 16, April 17, and April 20.[5]  Through this process,

21  Mattel and MGA resolved most of the discovery issues by April 16.  Mattel informed

22  ---

[2]  See March 25, 2009 letter from Caroline H. Mankey to Jon D. Corey, Hutnyan
23  Dec., Exh. 4.

24  [3]  See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 2,
Hutnyan Dec., Exh. 1.

25  [4]  Id.

26  [5]  See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan,
Hutnyan Dec., Exh. 5; April 16, 2009 letter from Diane C. Hutnyan to Caroline H.
27  (footnote continued)

28

1   MGA by letter that day that it would supplement all six named interrogatories at issue.[6]

2   Mattel also agreed to supplement its responses to numerous requests for production

3   (Nos. 146, 148, 153, 160, 162, 174-178 in the Second Set, and Nos. 468, 488, 489, 491

4   in the Fifth Set), which it did the next day.[7]   In its written supplemental responses,

5   Mattel responded that it would produce documents responsive to fourteen of the fifteen

6   remaining requests.   As to six of these fourteen, Mattel agreed to produce all

7   responsive, non-privileged documents with no limitations as to the scope of the

8   request.[8]   For three others -- Nos. 153, 176, and 177 -- Mattel agreed to produce all

9   non-privileged documents responsive to slightly narrowed versions of the Requests.[9]

10  MGA has raised no issue with respect to those limitations.   Nor did MGA object to or

11  challenge Mattel's agreement to supplement its interrogatory responses in any way.

12  Thus, by April 17, three days before this motion was filed, the dispute as to all but six

13  requests for production had been amicably resolved.   By letter that day, MGA expressly

14

15

16  Mankey, at 2, Hutnyan Dec., Exh. 1; April 20, 2009 letter from Diane C. Hutnyan to

17  Caroline H. Mankey, at 1, Hutnyan Dec., Exh. 3.

18  [6]   See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3, Hutnyan Dec., Exh. 1.

19  [7]   Id.; see Mattel's Second Supplemental Objections and Responses to MGA

20  Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 146, 148, 153, 160, 162, 174-178), dated April 17, 2009, Hutnyan Dec., Exh. 8;

21  Mattel's Supplemental Responses to MGA's Fifth Set of Requests for Production (Nos. 468, 488, 489, 491), dated April 17, 2009, Hutnyan Dec., Exh. 9.

22  [8]   Those are, specifically, Nos. 146, 160, 174, 175, 488, and 491. See Mattel's

23  Second Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second

24  Set of Requests for Production of Documents and Things (Nos. 146, 148, 153, 160, 162, 174-178), dated April 17, 2009, Hutnyan Dec., Exh. 8; Mattel's Supplemental

25  Responses to MGA's Fifth Set of Requests for Production (Nos. 468, 488, 489, 491), dated April 17, 2009, Hutnyan Dec., Exh. 9.

26  [9]   See Mattel's Second Supplemental Objections and Responses to MGA

27  Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 146, 148, 153, 160, 162, 175-178), dated April 17, 2009, Hutnyan Dec., Exh. 8.

28

07975/2908843.1                                    -4-                      Case No. CV 04-09049
                                    MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                                    (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7  PAGE 54

1   "acknowledge[d] the steps that Mattel has taken in agreeing to provide further written

2   responses and documents responsive to MGA's discovery requests."[10]

3   Mattel also agreed to produce non-privileged documents responsive to a

4   specifically identified, narrowed request as to five of the six remaining requests for

5   production.[11]  MGA had requested that Mattel supplement its discovery by May 14;[12]

6   Mattel committed to endeavor to do so in that time frame.[13]  Only as to Request No.

7   154, which is defective on its face, did Mattel not commit to produce responsive

8   documents.  Even as to that request, Mattel continued to work with MGA to try to

9   narrow it appropriately and come to an agreement.[14]

10   MGA requested some clarifications from Mattel by letter dated April 17,

11   2009.[15]  In a letter emailed and faxed to MGA's counsel at approximately 12:15 and

12   12:30 p.m. on April 20,[16] Mattel provided those clarifications, advising, *inter alia*, that

13   where Mattel agreed to produce responsive documents in a stated category, it was

14   agreeing to produce all of the responsive documents in the category.[17]  Mattel also

15   offered to produce documents responsive to a narrowed version of Request No. 154 --

16   the only request for which Mattel had not already provided such a commitment -- and

17   explained why the narrowed scope of Request Nos. 148, 154, 162, 178, 486, and 489

18   ───────────────────

19   [10]   See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 1, Hutnyan Dec., Exh. 2.

20   [11]   Id.

[12]   See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 1,

21   Hutnyan Dec., Exh. 5.

22   [13]   See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3, Hutnyan Dec., Exh. 1.

23   [14]   Id. at 2-3; See April 17, 2009 letter from Caroline H. Mankey to Diane C.

24   Hutnyan, at 2, Hutnyan Dec., Exh. 2.

25   [15]   See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, Hutnyan Dec., Exh. 2.

26   [16]   See April 20, 2009 email from Diane C. Hutnyan to Caroline H. Mankey,

27   Hutnyan Dec., Exh. 11; April 20, 2009 fax confirmation, Hutnyan Dec., Exh. 12.

28

-5-

EXHIBIT 7  PAGE 55

1   that Mattel proposed was proper.[18]   As of April 20, the dispute as to all of the

2   interrogatories and all but six requests had thus been resolved, and the parties appeared

3   well on their way towards resolving the remaining six requests.

4         Nevertheless, instead of responding to Mattel's letter to resolve the few

5   remaining disputes, MGA filed its motion to compel five hours after receiving Mattel's

6   clarifications.[19]   MGA purports to move on every interrogatory in its initial request

7   and on eleven or more of its requests for production (MGA's notice of motion lists

8   eleven requests, but its motion discusses a total of 16).[20]   MGA even moves on a

9   request as to which Mattel long ago agreed, in writing,  to produce responsive, non-

10  privileged documents.[21]

11        A week later, on April 27, on the day Mattel's Opposition was originally

12  due, MGA finally responded to Mattel's April 20 letter.[22]   MGA concedes in the letter

13  that "It appears that only a few issues remain in dispute."[23]   Effectively conceding that

14  the motion it filed was both unduly broad and premature, MGA offered to withdraw its

15  motion entirely if those few issues (regarding the six requests for production) were

16  resolved.[24]   But it has refused to consider reasonable modifications to the scope of

17

18  [17]   See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1,
    Hutnyan Dec., Exh. 3.
19  [18]   Id. at 1-2.
20  [19]   Hutnyan Dec., ¶¶ 12, 13, and 14. See also April 20, 2009 email, Hutnyan Dec.,
    Exh. 13; April 20, 2009 email, Hutnyan Dec., Exh. 11; April 20, 2009 fax confirmation,
21  Hutnyan Dec., Exh. 12.
    [20]   Compare Notice of Motion at 1:5-7 with Motion at 4:4-11.  The Motion
22  discusses Requests Nos. 146, 148, 160, and 162 (Second Set), and Request No. 491
23  (Fifth Set), none of which is listed in the Notice of Motion.
    [21]   See Mattel, Inc.'s Supplemental Objections and Responses to MGA
24  Entertainment Inc.'s Second Set of Requests for Production of Documents and Things
    In Case No. 05-2727, dated June 22, 2007, at 43, Hutnyan Dec., Exh. 7 (No. 158).
25  [22]   See April 27, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan,
26  Hutnyan Dec., Exh. 6.
    [23]   Id. at 1.
27  [24]   Id. at 2.
28

EXHIBIT 7  PAGE 56

1   those six requests.[25]   Nevertheless, to clarify Mattel's position and ensure that MGA

2   receives all documents to which it is even arguably entitled, Mattel has served today

3   supplemental responses reflecting the documents responsive to five of those six

4   requests.[26]

5                          **Argument**

6   I.   **MGA'S PRECIPITOUS FILING SHOULD BE SUMMARILY REJECTED**

7         A.   **As It Now Concedes, Most Issues Raised By MGA Have Already Been**

8              **Resolved**

9              As MGA conceded in its letter of two days ago, "It appears that only a few

10  issues remain in dispute."[27] MGA then identified a handful of issues -- the definition of

11  "Mattel," and six specific Requests for Production -- that it believes are still in dispute

12  following Mattel's April 20 letter. MGA also wrote: "In the event that we can reach

13  agreement on these remaining issues, MGA will withdraw its pending motion to

14  compel."[28] Yet MGA chose to burden Mattel and the Discovery Master with a motion

15  addressing far more than those few disputed requests, even though the dispute as to the

16  balance of the issues in this motion was resolved well before the motion was filed.

17  Indeed, MGA did not even acknowledge Mattel's April 20 letter in its motion, nor did it

18  recognize that Mattel's letter of April 17 itself resolved most of the issues in MGA's

19  motion.   MGA's conduct has forced Mattel to spend the last week briefing resolved

20  issues.  It is unjustifiable.

21

22  [25]  Id. at 1-2.

23  [26]  See Mattel's Third Supplemental Objections and Responses to MGA

24  Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things
     (Nos. 148, 162, and 178) In Case No. 05-2727, dated April 28, 2009, Hutnyan Dec.,

25  Exh. 21; Mattel's Second Supplemental Responses to MGA's Fifth Set of Requests for
     Production (Nos. 486 and 489), dated April 28, 2009, Hutnyan Dec., Exh. 22.

26  [27]  See April 20, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 1,

27  Hutnyan Dec., Exh. 3.
     [28]  Id., at 2.

28

0797S/2908843.1                                    -7-                        Case No. CV 04-09049
                                    MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                                    (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7  PAGE 57

1    MGA even had the audacity to assert in its motion that Mattel did not

2  respond to important issues that were in fact addressed in the April 20 letter.  For

3  example, MGA acknowledges in its motion that Mattel agreed to produce documents

4  responsive to sixteen of the Requests -- requests it still chose to move on -- but alleges

5  that Mattel "did not expressly state that it would produce *all* such responsive documents

6  or whether it intends to withhold any documents on the basis of any privilege or

7  objection (including the definition of Mattel)." (Motion at 4:4-9).  In fact, Mattel made

8  that very representation in the April 20 letter that MGA chose to ignore.[29]  MGA also

9  asserts, with respect to Interrogatory No. 29, that "Mattel initially refused to provide a

10  responsive answer to this request because it claimed that it has not yet completed its

11  calculation of damages and because it seeks information that is the subject of expert

12  analysis and fact discovery from MGA that has not yet been conducted." (Motion at

13  10:23-26).  However, MGA does not mention what happened next:  Mattel agreed to

14  supplement its Response to Interrogatory No. 29, as it agreed to supplement every other

15  named interrogatory at issue, days before MGA's motion was filed.[30]

16    Mattel specifically confirmed to MGA that it intended to produce all

17  responsive documents by May 14, 2009, the date MGA had proposed, days before

18  MGA filed its motion.[31]  Mattel will still attempt to meet this commitment, although

19  this unnecessary motion practice has obviously caused delay.  But in any case, there is,

20  at present, no discovery dispute with respect to virtually all of the items MGA has

21

22  [29]  See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1,
Hutnyan Dec., Exh. 3.

23  [30]  See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3,
Hutnyan Dec., Exh. 1.  It is true that Mattel has not yet completed its calculations of

24  damages; it would be impossible to do that at this point since MGA and related third

25  parties have been obstructive in providing information about their financial

26  transactions.  The response will necessarily be incomplete at this point, but it will be
supplemented.

27  [31]  See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3,
Hutnyan Dec., Exh. 1.

28

1  moved on, and there is no basis to grant a motion to compel discovery where there is
2  no actual dispute. See Global Polymer Industries, Inc. v. C & A Plus, Inc., 2006 WL
3  1344088, *2 (D.S.D. May 15, 2006) (denying motion to compel as to Interrogatories
4  and Requests for Production that were "not in dispute"); Assam v. Assam-Metzler,
5  2002 WL 31236300 (N.D.Ill. Oct. 1, 2002) (denying motion to compel where "[t]he
6  discovery dispute is not a dispute but, apparently, a miscommunication."). MGA
7  should not be rewarded for its misconduct by granting, as it improperly demands, an
8  order compelling production of all documents and interrogatory responses "within 24
9  hours."

10        In fact, MGA should be sanctioned for its misconduct. Mattel met and
11  conferred in good faith with MGA to provide it with the discovery it was entitled to
12  receive. As MGA now admits, the parties had resolved the majority of the requests for
13  production and all of the interrogatories well before MGA filed its motion. MGA then
14  brought its overbroad motion anyway, only agreeing to withdraw it (if Mattel would
15  capitulate as to improper requests) after Mattel had incurred the substantial costs of
16  preparing its opposition as to the already-resolved issues. The Discovery Master has
17  "admonished" the parties "to abide by the provisions of the Discovery Master Order
18  requiring a good faith attempt to meet and confer regarding discovery disputes prior to
19  the filing of any discovery motion."[32] Such good faith "cannot be shown merely
20  through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a
21  genuine attempt to resolve the discovery dispute through non-judicial means."[33] "The
22  meet and confer requirements . . . are intended to ensure that parties have an
23  inexpensive and expeditious opportunity to resolve discovery disputes *and that only
24  genuine disagreements are brought before the Court.*" Hua v. Boeing Corp., 2009
25  WL 279018, *1 (W.D.Wash. Feb. 5, 2009) (emphasis added).

26  _____
27  [32]  See Discovery Master Order No. 3, dated March 10, 2009, at n. 12, Hutnyan
    Dec., Exh. 20.
28

07975/2908843.1

1    MGA has willfully violated these requirements. Blessing its tactics will
2  render the meet-and-confer process utterly pointless: there is no reason to spend time
3  discussing the issues, much less voluntarily agreeing to provide discovery, if a motion
4  to compel is going to follow in any case before the agreed due date. MGA should be
5  ordered to reimburse at least a portion of the costs incurred by Mattel in opposing this
6  motion, in the amount of $3,500, to deter such conduct in the future and to encourage
7  good faith resolution of discovery disputes without costly intervention by the Discovery
8  Master.[34]

9    **B.    MGA's Requested Relief as to Its Interrogatories Is Inconsistent With**
10        **Its Own Positions**

11    Although Mattel has agreed to provide supplemental responses to the
12  interrogatories at issue in this motion, the flagrant inconsistencies in MGA's positions
13  must be addressed. MGA seeks to uneven the playing field by compelling exhaustive
14  responses to interrogatories that are far beyond what MGA has argued is appropriate in
15  this litigation. Indeed, MGA has vehemently resisted attempts by Mattel to seek
16  comparable discovery, and it has prevailed in those attempts.

17    MGA seeks to compel contention interrogatories asking for "all facts"
18  (e.g., Nos. 28 and 29) and "the complete factual basis" (e.g., Nos. 22, 23, and 28)
19  behind Mattel's contentions and Counterclaims. Yet MGA itself has argued that such
20  contention interrogatories are "inherently improper," attacking "Mattel's attempt to
21  compel MGA to provide a narrative account of every stitch of evidence supporting its
22  defense of this action would render Mattel's contention interrogatories unduly
23  burdensome and 'inherently improper.'"[35] Instead, MGA has urged that a party satisfies

24

25  _____
     [33]  Id. at 11.
26   [34]  See Hutnyan Dec., ¶ 24.
27   [35]  See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
     Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40,
28   (footnote continued)

07975/2908843.1                                                    -10-                        Case No. CV 04-09049
                           MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                           (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

                                                                        EXHIBIT 7  PAGE 60

1  its discovery obligations by setting forth "sufficient facts, identified persons with

2  knowledge, and identified documents to support [its] contentions."[36] Likewise, when

3  Mattel moved to compel MGA to respond to interrogatories about MGA's trade dress

4  contentions with complete answers, pointing to its own 133-page response to MGA's

5  massive Interrogatory No. 1, MGA claimed it had satisfied its discovery obligations by

6  providing Mattel with the "principal facts supporting its contentions."[37]

7         The Discovery Master shed light on this issue just yesterday, in his

8  Discovery Matter Order No. 22. In that Order, the Discovery Master found that MGA

9  complied with Rule 33 by "appris[ing] Mattel of the principal and material facts

10  supporting MGA's trade dress claim."[38]  The Discovery Master explained that

11  "[n]othing more is required of the MGA Parties. There is always a greater degree of

12  specificity that could be provided by an interrogatory response. If Mattel wishes to

13  obtain the details behind each and every fact specified in the response to Interrogatory

14  No. 50, Mattel may depose MGA's person most knowledgeable regarding these issues

15  under Federal Rule of Civil Procedure 30(b)(6)."[39]

16         Mattel has agreed to provide supplemental responses to the MGA

17  interrogatories at issue in this motion. Mattel fully intends to provide a reasonable

18  supplementation that includes a fair recitation of responsive information of which it is

19  aware at the time of supplementation. Once MGA receives those responses, if it feels

20

21  41, 42, 43, 44, 46, 47, 48, 49 and 50) by the MGA Parties, dated December 31, 2007, at 3, Hutnyan Dec., Exh. 17.

22  [36]  See Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA

23  Parties, dated February 15, 2008, at 17-18, Hutnyan Dec., Exh. 18.

24  [37]  See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40,

25  41, 42, 43, 44, 46, 47, 48, 49 and 50) by the MGA Parties, dated December 31, 2007, at

26  30, Hutnyan Dec., Exh. 17.
    [38]  Discovery Matter Order No. 22, dated April 28, 2009, at 53, Hutnyan Dec., Exh.

27  15.

28

07975/2908843.1
                                    -11-                    Case No. CV 04-09049
                    MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                       (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7  PAGE 61

1  they are inadequate Mattel will gladly meet and confer to address any such concerns.

2  But MGA's demand that all of Mattel's objections be overruled *ex ante* -- and its

3  demand that Mattel be held to a higher standard than MGA -- is improper.  Mattel has

4  never argued that every fact that could conceivably be responsive must be recited,

5  chapter and verse, in an interrogatory response.   Yet the blanket order that MGA

6  demands could be misconstrued to require just that.  If MGA seeks further information

7  after Mattel provides the supplemental responses to which it has agreed, the parties (or

8  the Discovery Master) can work out an approach that takes account of previous rulings

9  in this case about how such interrogatories should be answered, and that provides for an

10  even playing field.

11     **C.     It Would Be Improper To Overrule Mattel's Objections**

12          As discussed, MGA seeks a blanket order overruling all of Mattel's

13  objections, despite Mattel's voluntary agreement to provide discovery.  Such an order

14  would be improper.

15          As to the interrogatories, to the extent MGA actually seeks to require

16  Mattel to recite the details of virtually every fact in this case in an interrogatory

17  response, as it appears to demand, Mattel's undue burden objection is well taken.

18  Mattel will supplement in good faith, but should not be held to a higher standard than

19  MGA itself.

20          Also, Mattel's objection that it reserves the right to supplement its

21  responses in the future, including based on expert discovery, is valid and does not

22  render the responses inadequate, as the Discovery Master has ruled.[40]  Mattel does not

23  intend to withhold presently-known information based on this objection, but it is

24  entitled under the Rules to supplement its responses as appropriate.

25

26  [39]  Id.

27  [40]  See Discovery Master Order No. 22, dated April 28, 2009, at 47, Hutnyan Dec.,
    Exh. 15.

28

07975/2908843.1                                      -12-                         Case No. CV 04-09049
                                            MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                                                (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

                                                                         EXHIBIT 7   PAGE 62

1    MGA apparently seeks to overrule even Mattel's privilege objections (Mtn.
2  at 14:1-3), yet that would obviously be improper.  MGA conceded as much during the
3  meet and confer.[41]  Mattel has agreed to produce specified responsive, non-privileged
4  documents, and to respond to the interrogatories without waiving any applicable
5  privilege.  MGA offers no basis to "overrule" such legitimate objections.

6    MGA also seeks to overrule Mattel's "compound" objection to the
7  interrogatories.  (Motion at 13:22.)  This too should be denied.  Mattel is willing to
8  answer the interrogatories now at issue as discussed, but they are in fact compound --
9  many of them count as far more than one interrogatory under the Rules.  As the prior
10  Discovery Master has held, interrogatories that address several discrete issues, such as
11  discrete legal contentions or factual allegations, consist of discrete subparts, each of
12  which counts as a discrete interrogatory.[42]  MGA sought and obtained this legal ruling
13  to avoid Mattel discovery; it is now estopped from arguing otherwise.[43]  In any event,
14  it would be improper and premature to address this Mattel objection (and Mattel's other
15  objections) now in light of Mattel's agreement to respond to the interrogatories -- again,
16  there is no current dispute that calls for a ruling.  Mattel has agreed to supplement by an
17  agreed date.  MGA's motion seeking to compel those very responses is unripe.

18

19

20    [41]  See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan,
21  Hutnyan Dec., Exh. 5.
22    [42]  See Order Granting Joint Motion for Protective Order Regarding Mattel's
   Interrogatories: Denying Mattel's Motion to Compel Interrogatory Responses, dated
23  September 5, 2007, at 8; Hutnyan Dec., Exh. 16.
24    [43]  The doctrine of judicial estoppel precludes a party from obtaining a ruling from
   the court and then attempting to gain advantage by taking a contrary position in the
25  litigation.  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  The doctrine protects
   the integrity of the judicial process by "prohibiting parties from deliberately changing
26  positions according to the exigencies of the moment."  Id.; see also Rissetto v. Plumbers
27  and Steamfitters Local 343, 94 F.3d 597, 603 (9th Cir. 1996) (judicial estoppel "enables
   a court to protect itself from manipulation.").

28

07975/2908843.1                                                   -13-                     Case No. CV 04-09049
                                    MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                                         (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7  PAGE 63

**II.    AS TO THE REQUESTS IN DISPUTE, MGA'S MOTION SHOULD BE DENIED ON THE MERITS**

Mattel has met and conferred extensively with MGA to resolve the six remaining requests for production, and offered productions in response to narrowed requests. Neither in those meet and confer discussions nor in its motion has MGA justified the broader discovery it seeks or explained to Mattel why the production it has offered is inadequate. The motion to compel additional production in response to these Requests should be denied.

**1.    Requests for Production No. 148, 162, 486, and 489**

These requests all relate to the seizures of Mattel trade secrets in MGA's possession in Mexico and Canada. They provide:

Request for Production No. 148: All DOCUMENTS REFERRING OR RELATING TO MATTEL's involvement in the seizure of materials at the facilities of MGAE de Mexico, S.R.L, de C.V. in Mexico City by Mexican authorities.

Request for Production No. 162: All DOCUMENTS REFERRING OR RELATING TO MATTEL's involvement in the seizure by Canadian law enforcement authorities of a thumb drive from BRISBOIS referenced in paragraph 75 of YOUR COUNTERCLAIMS.

Request for Production No. 486: All DOCUMENTS REFERRING OR RELATING TO YOUR or YOUR attorney's or agent's knowledge of or participation in the investigation or search of MGAE de Mexico, S.R.L. de C.V, in Mexico City.

Request for Production No. 489: All DOCUMENTS REFERRING OR RELATED TO YOUR or YOUR attorney's or agent's knowledge of or participation in the seizure of Brisbois' thumb drive by Canadian law enforcement.

07975/2908843.1

EXHIBIT 7  PAGE 64

1    Aspects of these requests are unobjectionable -- in fact, most responsive
2    documents have already been produced, as Mattel has consistently advised MGA.[44]
3    Mattel has served supplemental responses reciting exactly what it has agreed to, and
4    will, produce, including:

5    Request for Production No. 148:  responsive, non-privileged documents
6    that refer or relate to Mattel's involvement, if any, in the seizure of materials at the
7    facilities of MGAE de Mexico, S.R.L. de C.V. in Mexico City by Mexican
8    authorities.[45]

9    Request for Production No. 162:  responsive, non-privileged documents
10    referring or relating to Mattel's involvement, if any, in the seizure by Canadian law
11    enforcement authorities of a thumb drive from BRISBOIS.[46]

12    Request for Production No. 486:  responsive, non-privileged documents
13    referring or relating to Mattel's participation, if any, in the search of MGAE de Mexico,
14    S.R.L. de C.V. in Mexico City, as well as Mattel's communications with Mexican law
15    enforcement personnel.[47]

16    Request for Production No. 489:  responsive, non-privileged documents
17    referring or reflecting Mattel's participation, if any, in the seizure of Brisbois' thumb
18    drive by Canadian law enforcement, as well as regarding Mattel's communications with
19    Canadian law enforcement personnel.[48]

20
21    [44]  See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1,
22    Hutnyan Dec., Exh. 1; April 20, 2009 letter from Diane C. Hutnyan to Caroline H.
     Mankey, at 1, Hutnyan Dec., Exh. 3.
23    [45]  See Mattel's Third Supplemental Objections and Responses to MGA
     Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things
24    (Nos. 148, 162, and 178) In Case No. 05-2727, dated April 28, 2009, at 4-5, Hutnyan
     Dec., Exh. 21.
25    [46]  Id. at 5-6.
26    [47]  See Mattel's Second Supplemental Responses to MGA's Fifth Set of Requests for
27    Production (Nos. 486 and 489), dated April 28, 2009, at 5, Hutnyan Dec., Exh. 22.
28    [48]  Id. at 6.

07975/2908843.1

-15-                         Case No. CV 04-09049
MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
(2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 65

1    Thus, Mattel has agreed to provide nearly all of what MGA seeks.

2   However, two categories of documents sought by these requests should be denied.

3    First, the requests are defective and overbroad in asking for items relating

4   to Mattel's agents and attorneys' "knowledge" without any reasonable temporal

5   limitation. Obviously, many Mattel agents and attorneys, including outside counsel,

6   *now* know many facts about the seizure of the thumb drive and the search of MGA

7   Mexico. But this non-percipient, post-event knowledge is irrelevant, and searching for

8   it would require a burdensome review of countless files, potentially including those of

9   various outside Mattel counsel. MGA cannot justify its demand that Mattel's lawyers

10   search for documents relating to their non-percipient knowledge, virtually all of which

11   will be privileged or protected work product anyway. These request for documents

12   reflecting Mattel's and its agents' and attorneys' "knowledge" should be rejected.

13    Second, as to Request No. 486, the demand that Mattel produce all

14   documents relating to its and its counsel's knowledge of or participation in the

15   "investigation" of MGA Mexico is vague and overbroad. Mattel does not even know

16   what "investigation" MGA is referring to, let alone know how it might identify

17   responsive documents or why they might be relevant. Mattel has already produced,

18   pursuant to the Discovery Master's Order, over 3000 pages of documents consisting of,

19   among other things, communications with law enforcement.[49]   MGA has never

20   explained the relevance of the unidentified additional "investigation" documents it now

21   seeks. Mattel's supplemental responses provide MGA with all the documents to which

22   it is entitled. Nothing further should be compelled.

23    **2.    Request for Production No. 178**

24    Here, MGA selectively quotes Mattel's correspondence in order to

25   manufacture a non-existent dispute.   MGA's Request No. 178 seeks "All

26   DOCUMENTS REFERRING OR RELATING TO any investigation, surveillance,

27

28   ――――――――――
    [49]   See Hutnyan Dec., ¶25.

-16-                          Case No. CV 04-09049
MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
(2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 66

1  inspection, inquiry, survey or analysis into the activities, including but not limited to

2  electronic and computer related activities, alleged in YOUR COUNTERCLAIMS."[50]

3  MGA claims that the Discovery Master must intervene because Mattel has only agreed

4  to produce non-privileged, responsive documents relating to the discovery of MGA's

5  thefts of trade secret and other confidential Mattel information . . . ." (Motion at 6:4-10,

6  citing Mankey Decl. ¶ 10, Exh. H). MGA's sole complaint is that the language does not

7  encompass everything "alleged in Mattel's counterclaims." (Motion at 6:14-15). But

8  MGA's quote is incomplete and does not reflect Mattel's complete agreement. The text

9  of Mattel's April 20, 2009 letter -- omitted by MGA from the quote in favor of an

10  ellipsis -- shows that Mattel agreed to *exactly* what MGA seeks: Mattel agreed to

11  produce "all responsive, non-privileged documents relating to the discovery of MGA's

12  thefts of trade secrets and other Mattel confidential information, **as well as other**

13  **wrongful conduct alleged in Mattel's Counterclaims.**"[51] There is no dispute here.

14  And to avoid any possible ambiguity, Mattel has amended its responses to confirm that

15  it will produce "responsive, non-privileged documents relating to the discovery of

16  MGA's thefts of trade secret and other confidential Mattel information, as well as other

17  wrongful conduct alleged in Mattel's Counterclaims."[52] There is nothing to compel.

18  MGA's motion as to Request No. 178 should be denied.

19       **3.**    **Request for Production No. 154**

20       Request No. 154 seeks "All DOCUMENTS REFERRING OR

21  RELATING TO PERSONS who had access to the 2004 Sales Plan referred to in

22

23  [50]  See MGA's Second Set of Requests for the Production of Documents and Things in Case No. 05-2727, dated March 27, 2007, Hutnyan Dec., Exh. 14.

24  [51]  See April 20, 2009 letter from Diane C. Hutnyan to Carol H. Mankey, at 2 (emphasis added), Hutnyan Dec., Exh. 3.

25  [52]  See Mattel's Third Supplemental Objections and Responses to MGA

26  Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things

27  (Nos. 148, 162, and 178) In Case No. 05-2727, dated April 28, 2009, at 7, Hutnyan Dec., Exh. 21.

28

EXHIBIT 7  PAGE 67

1    paragraph 62 of YOUR COUNTERCLAIMS."   Mattel sought repeatedly to reach

2    agreement with MGA as to a revised version of this overbroad request, but MGA

3    refused.   MGA now agrees that the Request, as phrased, is overly broad.[53]   Having

4    rejected Mattel's offers, MGA must live with its flawed phrasing, and its motion should

5    be denied.  Regan-Touhy v. Walgreen Co., 526 F.3d 641, 650 n.6 (10th Cir. 2008)

6    (affirming denial of motion to compel as overbroad because "it is the parties' obligation

7    to frame their own discovery requests and to seek to narrow any disputes with opposing

8    counsel; the district court is obliged only to rule on the requests for enforcement or

9    protection eventually presented to it, not to do the parties' work for them by editing

10   discovery requests until they comply with the Federal Rules of Civil Procedure.").   Its

11   request is plainly improper on its face.

12        First, in demanding that Mattel produce all documents "REFERRING OR

13   RELATING TO PERSONS who had access to the 2004 Sales Plan," MGA's request

14   would sweep in an unknown and countless quantity of irrelevant documents.   The

15   request requires Mattel to produce every document, from any time, that relates to each

16   and every person who had access to the sales plan.   That is a preposterous requirement,

17   potentially requiring production of tens of thousands of irrelevant documents relating to

18   individuals who are not even involved in this case.   The request is unjustified.

19        Second, "access" is ambiguous and undefined.   For example, it could

20   reflect people who accessed the plan or people who were given access but did not in

21   fact access it.   During the meet and confer process, MGA clarified that "access" means

22   persons to whom Mattel gave the ability or permission to access the 2004 Sales Plan.[54]

23

---

24   [53]   Motion at 5:20-23.

25   [54]   MGA also agreed to narrow the request to encompass only documents sufficient
     to identify persons who had access to Mattel's 2004 Sales Plan.  See April 14, 2009
26   letter from Caroline H. Mankey to Diane C. Hutnyan, at 2, Hutnyan Dec., Exh. 5.  But
     again, having refused a reasonable compromise, MGA should be required to defend the
27   request on which it has moved to compel.

28

07975/2908843.1                                                    -18-                           Case No. CV 04-09049
                                    MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS.
                                    (2ND (5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7  PAGE 68

1    Mattel agreed to that definition.[55]   But since MGA refused to accept Mattel's

2    agreement, the request as drafted controls, and it contains vague, undefined terms that

3    render it improper.

4         Finally, the request is not limited by time, which renders it improper.

5    During the meet and confer, Mattel proposed narrowing the time period of "access" to

6    the 2004 Sales Plan to the date of the theft, April 19, 2004, or before.  MGA has never

7    shown how post-theft access could be relevant.[56]  Nor can it.  How Mattel treated the

8    2004 Sales Plan after it was already aware of its theft and disclosure to a primary

9    competitor is not relevant to any of MGA's defenses or claims.  Compelling such a

10    response could require the disclosure of thousands of documents about in-house and

11    outside counsel, paralegals, law clerks, word processors, consultants and others – a

12    whole body of materials that MGA itself agreed during the meet and confer process

13    should have been excluded from its Request.[57]  MGA's motion as to Request No. 154

14    should be denied.

15

16

17

18

19

20

21

22

---

[55]   See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 2, Hutnyan Dec., Exh. 3.

[56]   See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 2, Hutnyan Dec., Exh. 3. MGA's Motion is similarly lacking in authority for this point. See Motion at 6:1-6.

[57]   See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 2, Hutnyan Dec., Exh. 2. Before bringing its Motion, MGA had admitted that the Request was overbroad. Id.

EXHIBIT 7 PAGE 69

### Conclusion

For all the foregoing reasons, Mattel respectfully requests that the Discovery Master deny MGA's motion to compel.

DATED:  April 29, 2009

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Diane C. Hutnyan
   Diane C. Hutnyan
   Attorneys for Mattel, Inc.

# EXHIBIT 8

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT 8

# TO DECLARATION OF

# JEAN PIERRE NOGUES

1 | Hon. Edward A. Infante (Ret.)
2 | JAMS
Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:   (415) 774-2611
4 | Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,            CASE NO. C 04-09049 SGL (RNBx)
                                             JAMS Reference No. 1100049530
12 |           Plaintiff,

13 |      v.                                 Consolidated with
                                             Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corpotation,   Case No. CV 05-2727

15 |           Defendant.                    **ORDER GRANTING JOINT MOTION
                                             FOR PROTECTIVE ORDER
16 |                                         REGARDING MATTEL'S
                                             INTERROGATORIES; DENYING
17 |                                         MATTEL'S MOTION TO COMPEL
                                             INTERROGATORY RESPONSES**

18 | CONSOLIDATED WITH
19 | MATTEL, INC. v. BRYANT and
20 | MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
21

22

23 |                        I. INTRODUCTION

24 |    Presently pending are two separate motions pertaining to Mattel's Third Set of

25 | Interrogatories:  (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26 | Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28 |
1

EXHIBIT 8  PAGE 71

1  Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2  Third Set of Interrogatories.[2]  Having considered the motion papers and the comments of counsel

3  at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4  interrogatory responses is denied.  MGA's request for sanctions in connection with Mattel's

5  motion to compel interrogatory responses is also denied.[3]

6  <center>II. BACKGROUND</center>

7  In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8  Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9  In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10  Bryant four questions and MGA seven questions.  Of these, three interrogatories to Bryant were

11  identical to three interrogatories to MGA.  In December of 2006, Mattel served MGA with its

12  First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13  interrogatories.

14  During a scheduling conference held on February 12, 2007, the district court imposed a

15  limit on interrogatories of "50 for each side for both cases." February 27, 2007 Minute Order,

16  Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7.  When MGA asked

17  whether all Defendants would count as one "side" under the court's order, the court confirmed

18  that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19  parties." Tr. of scheduling conference, Proctor Dec., Ex. 7.  After MGA clarified that there were

20  actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

---

23  [1] Defendants submitted their joint motion on July 10, 2007.  Mattel submitted its opposition on July 17,
24  2007.  Defendants submitted their reply brief on July 20, 2007.

25  [2] Mattel submitted its motion to compel on July 18, 2007.  Defendants submitted an opposition on August
1, 2007.  Mattel submitted its reply brief on August 6, 2007.

26  [3] The Discovery Master determined that a hearing was not necessary.

27

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                         2

EXHIBIT 8 PAGE 72

1 | interrogatories on Mattel in addition to MGA's interrogatories. Bryant stated that he probably
2 | would not. The court responded as follows:

> 3 | Let's try to work within the confines of the 50 interrogatories, and if you
> need more, again, the court is going to be forthcoming, if there's a need for it.
> 4 | And it's the type of order that if you can stipulate amongst yourselves, you're not
> going to need an order from the court.
> 5 |
>
> 6 | But if you're not agreeing amongst yourselves, then you're going to have
> to come back to the court before you bust those limits. Unlike every other order
> 7 | the court issues, where once the court issues an order and you need an order from
> the court to alter that, this is one that I will give you authority amongst yourselves
> 8 | to stipulate to a greater number. But [let's] be reasonable. I can't imagine you
> can't work this out. I just don't want to have open-ended numbers of
> 9 | interrogatories and experts.

10 | Id. at 24:5-18. The court also directed the parties to return to court if they were unable to reach
11 | an agreement. Id. at 24:23.

12 |     On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" –
13 | MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant
14 | – asking each of these four defendants the same nineteen questions. On July 9, 2007, MGA,
15 | MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of
16 | Interrogatories and no responses. The parties met and conferred on July 10, 2007. Defendants
17 | refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty
18 | interrogatory limit and that the interrogatories were otherwise objectionable on several grounds.
19 | Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories
20 | that are compound and by serving interrogatories on multiple responding parties on the "same
21 | side." By Defendants' calculations, when each discrete subpart of each of Mattel's
22 | interrogatories served on each of the responding parties are counted separately, Mattel has
23 | served, at a minimum, 227 separate interrogatories. In contrast, Mattel contended that its
24 | interrogatories are not compound, and that each identical interrogatory it serves should be
25 | counted as one, regardless of how many parties it serves on the "other side." By Mattel's
26 | calculations, it has propounded a total of forty-three non-identical interrogatories. The parties
27 |
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 8 - PAGE 73

1   also discussed potentially stipulating to a greater number of interrogatories but apparently did not

2   reach an agreement.

3      Defendants move for a protective order preventing Mattel from serving additional

4   interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify

5   which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed

6   by the district court. Mattel opposes the motion, contending that it has not exceeded the 50

7   interrogatory limit set by the district court. In a separate motion, Mattel moves to compel

8   Defendants to provide responses to its Third Set of Interrogatories.

9                                III. STANDARDS

10      Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice

11   requires to protect a party or person from annoyance, embarrassment, oppression, or undue

12   burden or expense," including "that the disclosure or discovery not be had."

13                                IV. DISCUSSION

14      Defendants' motion for a protective order raises essentially three issues:  (1) whether an

15   identical interrogatory served on several Defendants should be counted as only one interrogatory

16   or counted separately for each Defendant served with the identical interrogatory; (2) whether an

17   interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of

18   such facts," and "identify all documents" should be counted as a single interrogatory or three

19   separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal

20   theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21   A. The Fifty "Per Side" Limit

22      The district court limited interrogatories to fifty "per side." Although the district court's

23   order does not speak directly to this issue, the most reasonable approach is to count one identical

24   interrogatory served on all six of the Defendants as one interrogatory. Under this approach,

25   Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants

26   collectively may serve a total of 50 non-identical interrogatories on Mattel.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                              4

EXHIBIT 8  PAGE 74

1          Defendants' alternative approach is not realistic because it would leave Mattel with far

2    fewer interrogatories than the 50 permitted by the district court.  Indeed, Defendants' approach

3    would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4    Rule 33(a), Fed.R.Civ.P.  Under Defendants' approach, Mattel would be limited to approximately

5    eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6    interrogatories on Mattel.  Such an imbalance would be fundamentally unfair.

7          Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8    served on all six of the Defendants is counted as one interrogatory.

9    <u>B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with</u>

10    <u>knowledge; and (3) identify all documents</u>

11          Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12    counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13    interrogatories a party may serve upon any other party.  Although Rule 33(a) does not define the

14    term "discrete subparts," The Advisory Committee addresses this issue and provides the

15    following guidance as to when subparts should and should not count as separate interrogatories:

16          Each party is allowed to serve 25 interrogatories upon any other party, but must

17    secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of

18    joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type

19    should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such

20    communication.

21    Advisory Committee Notes for the 1993 Amendments to Rule 33.  A leading treatise has

22    explained that "it would appear that an interrogatory containing subparts directed at eliciting

23    details concerning the common theme should be considered a single question, although the

24    breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller &

25    Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2168.1, at 261 (2d ed. 1994). "Although

26    there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28    Bryant v. Mattel, Inc.,<br>    CV-04-09049 SGL (RNBx)                    5

EXHIBIT 8 PAGE 75

1  weight of authority interpreting <u>Rule 33(a)</u> requires examining whether the subparts are

2  'logically or factually subsumed within and necessarily related to the primary question.'"

3  <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4  <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting <u>Ginn v. Gemini</u>

5  <u>Inc.</u>, 137 F.R.D. 320, 322 (D. Nev. 1991).

6       Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7  whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8  (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9  documents referring or relating to such facts. On the one hand, for example, in <u>United States ex</u>

10  <u>rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.</u>, 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11  the court explained that an "interrogatory may properly seek identification of documents and facts

12  supporting a contention, but it may not do so in a single interrogatory." <u>See also</u> <u>Nobles v. Jacobs</u>

13  <u>IMC</u>, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14  responding party to state all facts regarding a particular issue and to identify all persons having

15  knowledge of such information is two separate interrogatories); <u>Chapman v. California Dept. of</u>

16  <u>Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17  disclosure of facts (including the identity of persons with knowledge) and documents as two

18  separate interrogatories); <u>Kendall v. GES Exposition Services, Inc.</u>, 174 F.R.D. 684, 685-86 (D.

19  Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20  treated as two subparts). On the other hand, for example, in <u>Krawczyc v. City of Dallas</u>, 2004

21  WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22  facts supporting a contention and to identify persons with knowledge of those facts counts as one

23  interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24  "factually subsumed within and necessarily related to the primary question."

25       In the instant case, most of Mattel's interrogatories follow the same format, asking the

26  responding party to state all facts supporting a contention or contentions, to identity persons with

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 8   PAGE 76

1    knowledge, and to identify all documents that refer or relate to such acts.  Notwithstanding

2    caselaw to the contrary, these subparts are not discrete.  Rather, the subparts are related and

3    directed to the underlying details of a specifically identified contention (or contentions) in a

4    manner similar to the example given in the Advisory Committee Notes: "a question asking about

5    communications of a particular type should be treated as a single interrogatory even though it

6    requests that the time, place, persons present, and contents be stated separately for each such

7    communication." Therefore, subparts seeking facts supporting a contention, the identity of

8    persons with knowledge, and documents are not counted separately for purposes of applying the

9    50 interrogatory limit.

10    C. Interrogatories Addressing Several Discrete Issues

11          Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12    compound because they address discrete issues.  For example, Mattel has propounded the

13    following interrogatory:

14          State all facts that support YOUR contention, if YOU so contend, that one
       or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole

15       or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
       IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS

16       that REFER OR RELATE TO such facts.[4]

17    This interrogatory is directed to four separate and discrete defense theories:  unclean hands,

18    estoppel, waiver and consent.  Therefore, the interrogatory is compound and each of the four

19    discrete subparts should be counted as a separate interrogatory.  See Safeco of America, 181

20    F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21    interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22    be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23    2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25

26      _____

27      [4]  Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

28      Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                      7

EXHIBIT 8  PAGE 77

1  about all elements of a given claim was compound and explaining that each element of a claim is

2  discrete and constitutes a separate interrogatory).

3      Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4  factual matters:

> 5      State all facts that support YOUR contention, if YOU so contend, that
> 6  YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
>    any other agreement or contract between MATTEL and BRYANT, or aid or abet
>    any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
> 7  when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
>    rights to BRATZ or when BRATZ performed work or services with or for MGA
> 8  while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
>    knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
> 9  such facts.[5]

10  This interrogatory includes three different legal contentions: (1) intentional interference with the

11  Inventions Agreement; (2) intentional interference with any other agreement or contract between

12  Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13  owed by Bryant to Mattel.[6]  In addition, this interrogatory asks the responding party to apply two

14  different sets of factual allegations to the three different legal contentions.  Therefore, the

15  interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16      The following additional interrogatories contain similar types of discrete and separate

17  subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18  subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19  discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20  discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21  into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24  _____

    [5] Id. (No. 21).

25

26  [6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
    of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
    presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

27

28

EXHIBIT 8   PAGE 78

1   propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2   order.

### V. CONCLUSION

4       For the reasons set forth above, Defendants' motion for a protective order is granted, and

5   Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6   serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7   imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8   compel interrogatory responses is denied.

9       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, MGA shall file this Order with the Clerk of Court forthwith.

13  Dated: September 5, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT 8  PAGE 79

<u>PROOF OF SERVICE BY E-MAIL</u>

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 8  PAGE 80