# EXHIBIT 13

# TO DECLARATION OF

# JEAN PIERRE NOGUES

# EXHIBIT 13

# TO DECLARATION OF

# JEAN PIERRE NOGUES

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:  213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

12                Plaintiff,           Consolidated with
                                       Case No. CV 04-09059
13          v.                         Case No. CV 05-2727

14  MATTEL, INC., a Delaware           **PHASE 2 DISCOVERY MATTER**
    corporation,
15                                     **ORDER NO. 17, REGARDING:**
                  Defendant.
16
                                         **(1)  THE MGA PARTIES' MOTION**
17                                       **FOR A PROTECTIVE ORDER**
                                         **STAYING DISCOVERY ON**
18                                       **TRADE DRESS CLAIMS;**
19
                                         **(2)  MOTION OF MATTEL, INC. TO**
20                                       **ENFORCE PRIOR COURT ORDER**
                                         **AND TO COMPEL RESPONSES TO**
21                                       **INTERROGATORIES; and**
22
23
                                         **(3)  *EX PARTE* APPLICATION**
24  CONSOLIDATED WITH                   **FILED BY MATTEL, INC. FOR AN**
    MATTEL, INC. v. BRYANT and          **ORDER TO SHOW CAUSE RE:**
25  MGA ENTERTAINMENT, INC. v.          **MGA ENTERTAINMENT, INC.'S**
    MATTEL, INC.                        **FAILURE TO COMPLY WITH**
26                                       **COURT ORDER**
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                     ORDER NO. 17
                                       [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 203

1    This Order sets forth the Discovery Master's ruling on the following
2    discovery matters:  (1) the motion for a protective order staying discovery on trade
3    dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
4    MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")
5    ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.
6    ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")
7    to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental
8    Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and
9    (3) the *ex parte* application filed by Mattel for an order to show cause regarding
10   MGA's failure to comply with a prior court order ("Application") [Docket No.
11   4997] (collectively, the "Motions").
12       The Motions came on regularly for hearing before the Discovery Master on
13   April 14, 2009.  All interested parties were represented by counsel and afforded the
14   opportunity to present oral argument on the Motions.  The Discovery Master,
15   having considered the papers filed in support of and in opposition to the Motions,
16   and having heard oral argument, rules as set forth below.

17   **I.    THE TRADE DRESS DISCOVERY AT ISSUE**
18       All of the Motions concern discovery related to MGA's trade dress claims.
19       **A.    Interrogatory Nos. 43 And 44**
20       On October 23, 2007, Mattel served its Amended Fourth Set of
21   Interrogatories on MGA, including Interrogatory Nos. 43 and 44. (Declaration of
22   Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at
23   pp. 7 – 8).  These interrogatories ask MGA to identify, for each design, product
24   and packaging that MGA contends Mattel copied, the date of conception and the
25   date it was first fixed in a tangible medium:
26       • Interrogatory No. 43: "For each concept, design, product, product
27         packaging or other matter that YOU contend MATTEL copied or
28         infringed, including but not limited to those identified in MGA's

EXHIBIT 13 PAGE 204

1    Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2    Unfair Competition, Response To Interrogatory No. 2 (and any

3    Supplemental Responses to such Interrogatory), state the date that each

4    such concept, design, product, product packaging or other matter was

5    conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6    DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,

7    Ex. 1 at p. 7).

8  - Interrogatory No. 44: "For each concept, design, product, product

9    packaging or other matter that YOU contend MATTEL copied or

10   infringed, including but not limited to those identified in MGA's

11   Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12   Unfair Competition, Response To Interrogatory No. 2 (and any

13   Supplemental Responses to such Interrogatory), state the date that each

14   such concept, design, product, product packaging or other matter was

15   first fixed in any tangible medium of expression (if ever), and

16   IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17   that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and

18   8).

19       MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20   November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21   supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On

22   December 20, 2007, Mattel moved to compel further responses to the

23   interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's

24   motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,

25   MGA served its second and third set of supplemental responses to Interrogatory

26   Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27       On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28   February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 205

1  Mattel's motion to compel, finding that the "requested information is relevant to

2  Mattel's defense against the MGA [P]arties' claims that their products have been

3  copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –

4  12). The prior discovery master further ruled that the supplement responses

5  provided by MGA were deficient, reasoning as follows:

6        Although the MGA [P]arties served supplemental

7        responses after filing their opposition brief, the

8        supplemental responses do not include the requested

9        information. The MGA [P]arties have [also] failed to

10       establish that the interrogatories are unduly burdensome.

11 (*Id.*, Ex. 8 at p. 12). The prior discovery master then ordered MGA to

12 supplement its responses "no later than February 26, 2008." (*Id.*, Ex. 8

13 at p. 22).

14     On March 3, 2008, seven days after the deadline specified in the prior

15 discovery master's order, MGA supplemented its responses to Interrogatory Nos.

16 43 and 44 for a fourth time, objecting that the discovery in question related to

17 Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on

18 Phase 2 discovery on February 4, 2008. (*Id.*, Ex. 9 at pp. 7 – 16). On April 22,

19 2008, the prior discovery master granted the MGA Parties' motion for clarification

20 concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation

21 to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby

22 stayed until further order of the district court lifting the stay on Phase 2 discovery."

23 (*Id.*, Ex 10 at p. 3).

24    **B.**    **Supplemental Interrogatory Nos. 51 – 55 And 64**

25     On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55

26 and 64 on MGA. (*Id.*, Ex 11 at p. 12 – 14 and 16). These interrogatories seek

27 information regarding MGA's allegations that Mattel copied, infringed or diluted

28 MGA's products:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-3-

EXHIBIT 13 PAGE 206

1       •  Supplemental Interrogatory No. 51: "For each concept, design,

2            product, product packaging or other matter that YOU contend

3            MATTEL has copied, infringed, or diluted, including but not limited to

4            those identified in MGA's Responses to Mattel, Inc.'s First Set of

5            Interrogatories Re Claims of Unfair Competition, Response To

6            Interrogatory No. 2 (and any Supplemental Responses to such

7            Interrogatory), describe, fully and separately, each and every concept,

8            design, product, product packaging or other matter of or by MATTEL

9            that YOU contend is a copy of, infringes or dilutes YOUR alleged

10           concept(s), design(s), product(s), product packaging or other matter.

11           Your answer should describe the Mattel concept, design, product,

12           product packaging or other matter with specificity and in detail

13           (including without limitation by product name, product number, SKU,

14           or bar code number), and specify those elements or attributes of

15           YOUR claimed concept, design, product, product packaging or other

16           matter that YOU contend were copied, infringed or diluted by

17           MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).

18       •  Supplemental Interrogatory No. 52: "For each trade dress that YOU

19           contend MATTEL copied, infringed, or diluted, separately IDENTIFY

20           each product sold by YOU or YOUR licensees that incorporates such

21           trade dress and, for each such product, separately state (a) the number

22           of units, by year, of each such product sold by YOU or YOUR

23           licensees; (b) revenue received by YOU from such SALES of each

24           such product; (c) all costs YOU have incurred in connection with each

25           product; including but not limited to YOUR cost of good sold, and (D)

26           YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p.

27           13).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 207

- Supplemental Interrogatory No. 53: "For each MATTEL concept, design, product, product packaging or other matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as to affiliation, connection, or association, or as to origin, sponsorship, or approval, separately state all facts that support YOUR contention of such, including but not limited to all facts that support YOUR contention, if YOU so contend, that any of the SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS with knowledge of such facts, and all DOCUMENTS that REFER OR RELATE TO such facts." (Id.).

- Supplemental Interrogatory No. 54: "For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied, infringed or diluted, state all facts that support YOUR contention, if YOU so contend, that such copying or infringement was intentional or willful, and IDENTIFY all PERSONS with knowledge of such facts, and all DOCUMENTS that REFER OR RELATE TO such facts." (Id.).

- Supplemental Interrogatory No. 55: "State all facts which support the allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress," and IDENTIFY all PERSONS with knowledge of such facts, and all DOCUMENTS that REFER OR RELATE TO such facts." (Id., Ex. 11 at p. 14).

- Supplemental Interrogatory No. 64: "To the extent YOU have not previously disclosed such information in a prior interrogatory response YOU provided to Mattel, state all facts which support YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with knowledge of such facts, and all DOCUMENTS that REFER OR

EXHIBIT 13 PAGE 208

1    RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2    MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3    February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4    therefore stayed.  (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5    **C.     The Court Lifts The Stay On Phase 2 Discovery**

6    On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7    (Watson Decl., Ex. 13 at p. 2).  Mattel's counsel subsequently wrote to counsel for

8    MGA on January 20, 2009 to ask when MGA planned to serve the required

9    responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10   previously ordered answered. (*Id.*, Ex. 14).

11   Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12   parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64. (*Id.*,

13   Ex. 15 at pp. 2 – 3).  Counsel for the parties then spoke on February 6, 2009

14   regarding Mattel's eight trade dress interrogatories. (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15   During the conference, MGA stated, that it would provide responses to

16   Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17   "not later than 30 days after the Court decides the trade dress summary judgment

18   motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19   On February 18, 2009, the parties met and conferred regarding Mattel's

20   contemplated summary judgment motion concerning MGA's trade dress claims and

21   again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22   Ex. 23 at p. 1).  The next day, MGA informed Mattel that it would not agree to

23   provide further responses to the interrogatories. (*Id.*).  Rather, MGA said that it

24   planned to request a protective order to stay its obligation to respond and that it

25   would only provide responses: (1) if their planned protective order was denied; or

26   (2) if the protective order is granted, 21 days after the Court decides Mattel's

27   summary judgment motion, to the extent any trade dress claims remain after that

28   decision. (*Id.*).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 209

1    On February 26, 2009, the MGA Parties filed the Protective Order Motion.

2    Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application

3    on March 10, 2009.

4    **II.    THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER**

5    The Discovery Master first addresses the MGA Parties' Protective Order

6    Motion.

7    **A.    The Relief Sought By The MGA Parties**

8    The MGA Parties "seek a stay to defer responding to eight specific

9    interrogatories relating to MGA's trade dress claims until 21 days after the Court

10   rules on Mattel's [contemplated] summary judgment motion." (Motion for a

11   Protective Order, p. 5).  "The MGA Parties also seek a stay of all discovery relating

12   to MGA's trade dress claims for the same period." (*Id.*).

13   **B.    Mattel's Opposition**

14   Mattel opposes the Protective Order Motion on five grounds.  First, Mattel

15   argues that the motion is inconsistent with the Court's January 6, 2009 order lifting

16   the stay on Phase 2 discovery. (Opposition, pp. 12 – 13).  Second, Mattel argues

17   that any request to stay discovery is not properly directed to the Discovery Master.

18   (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is

19   commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13

20   – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the

21   trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –

22   15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is

23   no corresponding undue burden placed on the MGA Parties. (*Id.*, pp. 16 – 20).

24   **C.    Legal Standard**

25   In general, parties may obtain discovery regarding any matter, not privileged,

26   that is relevant to the claim or defense of any party. (Fed. Rule Civ. P. 26(b)(1)).

27   The motion brought by the MGA Parties to stay discovery is made pursuant to

28   Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
- 7 -
ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 210

1    Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2    protect a party or person from annoyance, embarrassment, oppression, or undue

3    burden or expense."  (Fed. Rule Civ. P. 26(c)).

4         A district court is afforded considerable discretion in deciding whether to

5    issue a protective order that stays discovery.  (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6    130 (10th Cir. 1990).  While it is within a district court's discretion to stay

7    discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8    F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9    *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10   June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11   discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12   296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13   discovery even though dispositive motions are pending."]).

14        The underlying principle in determining whether to grant or deny a stay is

15   that "[t]he right to proceed in court should not be denied except under the most

16   extreme circumstances."  (*Commodity Futures Trading Com'n v. Chilcott Portfolio*

17   *Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).  In other words, stays of

18   the normal proceedings of a court should be the exception rather than the rule.

19        Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20   may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21   689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22   result of the ruling thereon; where the facts sought through uncompleted discovery

23   would not affect the resolution of the motion, or where discovery on all issues of

24   the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25   298).

26        In deciding whether to stay discovery pending the resolution of a dispositive

27   motion, federal courts in California conduct the following inquiry: (1) Is the

28   pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 211

1   the issue at which discovery is directed," and, if so (2) can the pending dispositive

2   motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*

3   *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)). If the court

4   answers both questions in the affirmative, it may then analyze other factors,

5   including the likelihood that the dispositive motion will be granted, (*id.*), and/or

6   "(1) plaintiff's interests in proceeding expeditiously with the civil action and the

7   potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the

8   convenience to the court; (4) the interests of persons not parties to the civil

9   litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,

10   2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11      **D.   Analysis**

12          The MGA Parties' primary argument in favor of the requested stay is that, in

13   the event Mattel's contemplated motion for summary judgment is granted, "the

14   Trade Dress Interrogatories may prove unnecessary or may be substantially

15   narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).

16   The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when

17   a dispositive motion, such as a summary judgment motion, 'would obviate the need

18   for discovery.'" (*Id.*, p. 11 (citation omitted)).

19          The Discovery Master finds this rationale unpersuasive for the following

20   reasons.

21      **1.   The Discovery Master Does Not Have the Power To Issue
              The Requested Stay**

23          First, the Discovery Master does not have authority to render a ruling that

24   could directly override the Court's scheduling order and delay the Phase 2 trial.

25   While the Discovery Master has been appointed to resolve "any and all . . .

26   discovery disputes in this case,"[1] and may issue orders that indirectly impact the

---

[1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master Order) and the Order appointing the current Discovery Master dated January 6, 2009.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 212

1    scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2    is nothing in the order appointing the Discovery Master that authorizes him to

3    override the scheduling order directly.[3]  Indeed, the power to control scheduling in

4    this matter is vested with the Court, as evidenced by the scheduling order issued by

5    it on February, 11, 2009.[4]  (Order dated February 11, 2009, p. 2).  Because the

6    Court, not the Discovery Master, established the applicable discovery cut-off and

7    trial dates for Phase 2, (*id.*), the Discovery Master cannot issue a stay that overrides

8    that order.

9        **2.**    **The Court Previously Indicated That the Parties Should**

10            **Proceed With Phase 2 Discovery.**

11        Second, the Court advised the Discovery Master on February 11, 2009 that

12    "[t]here is no stay on discovery.  Period."  (Reporter's Transcript of Proceedings,

13    February 11, 2009, p. 97:15).  It further instructed the Discovery Master "in no

14    uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15    (*id.*, p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16    precluding *any* discovery that is properly sought for the trial that is scheduled," (*id.*,

17    p. 101:22:24 [emphasis added]).  While these statements admittedly arose in the

18    context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19    nevertheless believes that they are instructive of the Court's view that any request

20

---

21    [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's

22    ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure.")

23

24    [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is clear, because the requested stay is of an indefinite duration.  Although the MGA Parties request a

25    stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion, (Protective Order Motion, p. 5), no such motion is pending before the Court.  Nor is there a

26    hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be able to issue a ruling disposing of it.

27

28    [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the current Discovery Master.

ARENT FOX LLP
ATTORNEYS AT LAW
· LOS ANGELES

- 10 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 213

1    to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2    extraordinary circumstances not present here.

3          **3.      There Is No Dispositive Motion Pending**

4          Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5    because no dispositive motion is pending before the Court. The MGA Parties

6    concede in their moving papers and again in their Reply that Mattel has merely

7    represented that it will file a summary judgment motion at some point in the future.

8    (Protective Order Motion, p. 4; Reply, p. 4). In the absence of a *pending*

9    dispositive motion, there is no basis for granting the requested stay.[5]

10         **4.      Mattel's Contemplated Summary Judgment Motion Will**

11               **Not Dispose Of MGA's Trade Dress Claims**

12         Even assuming a dispositive motion had been filed with the Court, the MGA

13

14   ―――――――――――――――――

[5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case, the party seeking the discovery stay was the party who had brought the pending dispositive motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to dismiss for lack of personal jurisdiction, sought protective order denying all discovery or, alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for summary judgment, properly sought and obtained a protective order staying discovery propounded on it by plaintiffs.]); *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on discovery upheld in favor of party who raised immunity issue via a summary judgment motion]; *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary judgment motion, which the MGA Parties believe should be denied, is resolved.

     Further, the five cases cited by the MGA Parties all involved situations where a dispositive motion had already been filed with the Court. (*Id.*)

     Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage. Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*, 506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at 282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for several years.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 214

1    Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2    of the entire case, or at least dispositive on the issue at which discovery is directed."

3    (*Qwest Communications Corp.*, 2007 WL 2288299, *2).  Mattel's contemplated

4    summary judgment motion will not dispose of MGA's trade dress claims because it

5    is undisputed that MGA's trade dress claims "concern products and other matters

6    that will not be the subject of Mattel's contemplated motion." (Opposition, p. 15;

7    *see also* Reply p. 11 n.6).

8          The MGA Parties nevertheless argue in their Reply that "it would make far

9    more sense for MGA to compile responsive information once the summary

10   judgment motion is decided and the full scope of the trade dress claims is settled."

11   (Reply, p. 11 n. 6).  Phrased differently, the MGA Parties argue not that the

12   summary judgment motion may moot all of the requested discovery, but only that,

13   if granted, it would narrow the scope of the trade dress discovery.  Because

14   discovery will inevitably be required on certain portions of MGA's trade dress

15   claims, this is not a situation where the contemplated motion is potentially

16   dispositive of the issue at which the discovery is directed.  Accordingly, the stay

17   requested by the MGA Parties can be denied for that reason alone.

18         **5.      Other Factors Also Weigh Against Issuing The Requested**

19                 **Stay**

20         Finally, many, if not all, of the other factors a court may consider in deciding

21   whether a stay is appropriate pending the resolution of a dispositive motion weigh

22   in favor of denying the requested stay.

23         **a.      The Merits Of The Dispositive Motion**

24         As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25   of the additional factors a court may consider is whether the merits of the pending

26   dispositive motion make it likely that the motion will be granted.  Although the

27   Discovery Master cannot perform such an analysis here (because no dispositive

28   motion is pending), I note that the MGA Parties stated in their moving papers that

Arent Fox LLP
Attorneys At Law
Los Angeles

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 215

1   Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2   (Protective Order Motion, p. 13).  In light of this statement, the MGA Parties are

3   precluded from arguing that it is likely Mattel's motion will be granted in order to

4   justify their request for a stay.  Accordingly, the Discover Master finds that – based

5   on the record presented – this factor weighs against issuing the requested stay.[6]

### b.   Prejudice To Mattel

7        Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8   delaying the ultimate resolution of the matter and increasing litigation costs.  As

9   explained above, the stay requested by the MGA Parties is of an indefinite duration

10  and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11  after the stay is lifted.  Moreover, Mattel could be forced to depose the same

12  witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13  trade dress claims and later with respect to those trade dress issues that remain

14  following the disposition of Mattel's contemplated summary judgment motion).

15  For these reasons, this factor weighs against staying the trade dress discovery.

### c.   The MGA Parties Have Not Demonstrated They Will Suffer Any Undue Burden

18       While the MGA Parties claim that it will "be extremely difficult, time-

19  consuming and costly" to respond to the eight trade dress interrogatories at issue,

20  (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21  have to be taken regardless of the outcome of Mattel's anticipated summary

22  judgment motion.  Further, while it is possible that Mattel's contemplated summary

23  judgment motion, if granted, could simplify the issues for trial and reduce the costs

24  imposed on the MGA Parties, it is also possible that the resolution of the motion

25  will not have any bearing on the scope of the discovery needed in this case.

26  Regardless, a party is always burdened with costs when it voluntarily chooses to

---

[6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated summary judgment motion.

EXHIBIT 13 PAGE 216

1    pursue a claim, whether the case ultimately is dismissed, summary judgment is

2    granted, the case is settled, or a trial occurs.  If the MGA Parties wish to avoid these

3    costs in connection with MGA's trade dress claims, MGA can always dismiss them.

4    Because any hardship that MGA might face is one of its own making, any burden

5    imposed on it in having to respond to the discovery is justified.  Accordingly, this

6    factor weighs against issuing the requested stay.

         **d.**    **The Interests Of The Judiciary And The General**

7

8                 **Public**

9    The Court, using funds supplied by the general public, has already expended

10   a great deal of effort and resources in this matter, including conducting a lengthy

11   trial in Phase 1.  The Court further issued a scheduling order that established a

12   specific trial date and discovery cut-off for Phase 2.  Consequently, the general

13   interests of controlling the court's docket and the fair and speedy administration of

14   justice weigh heavily in favor of denying the requested stay.

15   **E.**    **Summary Of Ruling Regarding The Protective Order Motion**

16   For all of the foregoing reasons, the MGA Parties have failed to meet their

17   burden of demonstrating that good cause exists for issuance of a protective order

18   staying their obligation to respond to the subject discovery.

19   **III.**   **MATTEL'S MOTION TO COMPEL**

20   Having denied the Protective Order Motion, the Discovery Master now turns

21   to Mattel's Motion To Compel.

22   **A.**    **Interrogatory Nos. 43 and 44**

23       **1.**    **Orders Issued By The Prior Discovery Master**

24   As explained in Section I.A., above, this is not the first time that Mattel has

25   moved to compel responses to Interrogatory Nos. 43 and 44.  The prior discovery

26   master ordered MGA to supplement its responses to these interrogatories as part of

27   his February 15, 2008 order ("February 15, 2008 Order").  (Watson Decl., Ex. 8 at

28   pp. 11 – 12).  Seven days after the deadline specified in the February 15, 2008

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 217

1  Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2  served objections stating that the discovery in question related to Phase 2 and had

3  been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4  7 – 16).  After having been advised of the stay imposed by the Court on

5  February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6  on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7  obligation to supplement their responses . . . [was] stayed until further order of the

8  district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

     **2.**     **The Relief Sought By Mattel**

10       Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11  44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12  requests that the Discovery Master enforce the February 15, 2008 Order and require

13  MGA to supplement its responses.  (Motion To Compel, pp. 9 – 10).

14       **3.**     **MGA's Opposition**

15       In its Opposition, MGA relies on two grounds for refusing to provide

16  responses to Interrogatory Nos. 43 and 44.  First, MGA argues that it is not in

17  violation of the prior discovery master's February 15, 2008 Order because that

18  order was subsequently stayed by the April 22, 2008 Order, which "did not include

19  any specific date, or time period, after the Phase 2 stay was lifted within which

20  MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21  9 and 11).  Second, MGA argues that it has not refused to answer Interrogatory

22  Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23  either provide further responses following the denial of that motion or, in the event

24  the motion is granted, after the Court decides Mattel's contemplated summary

25  judgment motion. (*Id.*, pp. 11 – 12).

26       The Discovery Master does not find either of these arguments persuasive.

27       **a.**     **The April 22, 2008 Order**

28       While MGA is correct that the prior discovery master temporarily stayed the

EXHIBIT 13 PAGE 218

1    enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2    argument that it does not have any obligation to supplement the responses to

3    Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4    time within which MGA had to provide responses is not supported by the record.

5         As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6    supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7    February 15, 2008 Order returned.  Indeed, the plain language of the prior

8    discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9    supplement their responses . . . are hereby stayed **until further order of the**

10   **district court lifting the stay on Phase 2 discovery**." (Watson Decl., Ex. 10 at p.

11   3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12   January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13   of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14        Further, MGA had, at most, eleven days following the lifting of the stay on

15   Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16   (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17   15, 2008 Order required MGA to provide its supplemental responses within eleven

18   days of the order (i.e., on February 26, 2008).  (*Id.*, Ex. 8 at p. 22).  Giving MGA

19   the benefit of the doubt and assuming that all eleven of those days remained at the

20   time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21   provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22   plus 2 additional days because January 17, 2009 falls on a Saturday).   Because

23   more than three months have passed without a response, MGA has not complied

24   with the terms of the prior discovery master's February 15, 2008 Order.

                  b.      **MGA's Offer To Produce The Supplemental**

                          **Responses Following The Disposition Of The**

                          **Protective Order Motion**

28        The contention that MGA somehow remedied its failure to supplement its

1    responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2    following the ruling on the Protective Order Motion is likewise unavailing. (*Id.*,

3    pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found

4    none, supporting the proposition that a party may refuse to respond to an

5    interrogatory after it has been ordered to do so by subsequently filing a motion for a

6    protective order. Nor would such a rule be logical, as it would permit the party

7    ordered to respond to thereby nullify the effect of the court order. Regardless, the

8    Discovery Master denied the Protective Order Motion and finds that it cannot be

9    used as a basis for failing to comply with the February 15, 2008 Order.

10             **4.     Conclusion**

11           For all of the foregoing reasons, MGA must promptly provide full and

12    complete responses to Interrogatory Nos. 43 and 44.

13       **B.     Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**

14             **And 44**

15           In its Motion To Compel, Mattel also requests that the Discovery Master

16    sanction MGA in the amount of $4,515 for failing to comply with the prior

17    discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In

18    response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19    "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20    only when, and MGA had already brought the 'when' question to the Discovery

21    Master one week before Mattel filed the instant motion to compel" as part of its

22    Protective Order Motion. (Opposition, p. 13). However, the fact that one party has

23    moved for a protective order does not prevent the party opposing that motion from

24    subsequently filing a motion to enforce a prior court order, particularly where the

25    latter motion requests that the Discovery Master compel MGA to provide responses

26    to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27    while the motion for a protective order indicates that MGA will respond to the

28    interrogatories, at the earliest, "within 21 days after" the denial of the Protective

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 220

1  Order Motion, (Protective Order Motion, p. 10).

2         MGA next argues that sanctions should be denied because its Protective

3  Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4  "it would be a perversion of every conceivable notion of economy and efficiency,

5  not to mention fairness . . . if a motion to compel could be used to sanction a party

6  for exercising its legal right to seek a protective order." (Id., p. 14). But these

7  arguments are not persuasive for the same reasons discussed in Section II and

8  Section III.A.3.b., above, namely that the Protective Order Motion is not

9  meritorious and MGA has not cited any legal authority supporting the proposition

10 that a party may refuse to respond to an interrogatory after it has been ordered to do

11 so by subsequently filing a motion for a protective order.

12         Finally, MGA argues that it "has not appealed, challenged or otherwise

13 refused to obey" the prior discovery master's order, (id.), but merely requested that

14 the "Discovery Master temporarily defer the time to respond . . . based upon the

15 new, intervening circumstances that arose between the issuance of that order and

16 the lifting of the discovery stay," (id., p. 15). However, this is just another way of

17 saying that MGA refused to supplement its responses as required by the prior

18 discovery master due to its mistaken belief that the Protective Order Motion

19 obviated the need to comply with the February 15, 2008 Order. Because that

20 argument has already been rejected, MGA has failed to show that it had substantial

21 justification for opposing the enforcement of the February 15, 2008 Order.

22 Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23         C.    Supplemental Interrogatory Nos. 51 – 55 And 64

24               1.    The Relief Sought By Mattel

25         Mattel next requests that the Discovery Master overrule MGA's objections

26 and compel it to provide full and complete responses to Supplemental Interrogatory

27 ────────────────────────
[7] Having determined that MGA lacked substantial justification for failing to comply with the

28 February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 221

1    Nos. 51 – 55 and 64.  (Motion To Compel, pp. 12 – 21).

2        **2.    MGA's Opposition**

3        In its Opposition, MGA initially argues that Mattel failed to meet and confer

4    in good faith.  (Opposition, pp. 16 – 18).  It further argues that even if Mattel did

5    meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6    they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7    other interrogatories, (4) improperly seek expert witness information, privileged

8    information, and information better known to Mattel, and/or (5) impose an undue

9    burden) are meritorious and should be sustained.  (*Id.*, pp. 18 – 26).

10        **a.    Purported Failure To Meet And Confer**

11        Because it could dispose of the outstanding discovery issues related to

12    Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13    addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14    to filing its motion.

15        MGA argues that Mattel did not meet and confer in good faith because its

16    "meet and confer letter concerning these interrogatories is utterly devoid of any

17    reference whatsoever to the putative impropriety of the objections it now challenges

18    . . ." (Opposition, p. 17).  However, MGA admits that the parties did meet and

19    confer about certain issues regarding these interrogatories.  (*Id.*, p. 18 ["While the

20    parties did meet and confer about the timing of MGA's response to Interrogatory

21    Nos. 51 – 55 and 64 . . ." (emphasis omitted)]).  The record further reflects Mattel

22    sent a meet and confer letter and had multiple phone calls with MGA's counsel

23    about these specific interrogatories.  (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24    In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25    "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

27    ---

[8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson

28    Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and ambiguous, do not constitute hearsay, and are not argumentative.

- 19 -

EXHIBIT 13 PAGE 222

1    Interrogatories] based on . . . any other objections . . .” (Watson Decl., Ex. 15).

2    Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3    37's "good faith" meet and confer requirement.

4                      **b.    Definitional Objections**

5         MGA's first substantive argument in opposition to Supplemental

6    Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7    ambiguous because of the manner in which the term "SALES" is defined.

8    (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9    – 55 are ambiguous because of the definition used for the term "MATTEL." (*Id.*,

10   pp. 19 – 20). However, MGA has not cited any legal authority in support of its

11   position.

12        Moreover, MGA did not set forth the grounds for its objections "with

13   specificity," at the time it objected to the interrogatories, as required by Federal

14   Rule of Civil Procedure 33(b)(4). To the contrary, it merely "incorporate[d]

15   General Objection Nos. 14 – 15 (regarding Definitions), including without

16   limitation its objection to the definition of the term 'MATTEL" for Supplemental

17   Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18   "SALES" with respect to Supplemental Interrogatory No. 52 (*id.*, pp. 5 – 6). This

19   incorporation by reference of a list of general objections is insufficient to preserve

20   an objection. (*Convertino v. U.S. Dept. of Justice*, 565 F.Supp.2d 10, 12 – 13

21   (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC*, 2008 WL 2714422, *2 (E.D.Va.

22   July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, *5

23   - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24        Regardless, the Discovery Master is not persuaded that MGA is unable to

25   understand the terms MATTEL and SALES. Accordingly, the definitional

26   objections are overruled. MGA must answer the interrogatories.[9]

27   _____

28   [9] The prior discovery master repeatedly required MGA to respond to discovery that used these
     definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 223

### c.   Expert Witness Objection

With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts that it "has simply interposed an objection that preserves [its] right to rely on expert testimony." (Opposition, p. 21). Since that is the full extent of MGA's expert witness objection, the Discovery Master agrees that the objection, as limited by MGA, is valid. What MGA cannot do is assert that this objection permits it to withhold information that is now available to it. Accordingly, the objection is sustained to the extent that MGA's interrogatory response merely includes a reservation of rights to supplement the response during expert discovery.

### d.   Objection That The Information Is Better Known By Mattel

Regarding Supplemental Interrogatory No. 51, MGA asserts that the request for it to identify Mattel products by stock keeping number or bar code number is objectionable because that information is better known to Mattel. (*Id.*, p. 21). However, MGA cannot withhold information on the ground that Mattel knows which people have knowledge of Mattel's purported copying of MGA's intellectual property. Mattel is entitled to discover the information MGA possesses and the factual bases of its trade dress claims.

As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks it to identify all persons with knowledge of certain facts even though it does not know everyone who may possess such information, (*id.*, pp. 21 – 22), it is incumbent upon MGA to provide the information that is within its custody, possession or control. In fact, MGA concedes that it will provide "whatever information it has." (*Id.*, p. 22).

### e.   Compound Objection

MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are impermissibly compound. (Opposition, pp. 22 – 23). This contention is unavailing. The questions in each interrogatory refer to one common theme and a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 224

1    common group, and count as a single interrogatory.  (*See Swackhammer v. Sprint*

2    *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing

3    subparts directed at eliciting details concerning a 'common theme' should generally

4    be considered a single question"]).  ·Accordingly, the objection is overruled.

5                        **f.     Duplicative Objection**

6            MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are

7    duplicative of other interrogatories Mattel propounded previously.  (Opposition, pp.

8    23 – 24).  But MGA has failed to demonstrate that this is the case.  As an initial

9    matter, MGA does not explain why Supplemental Interrogatory No. 51 is

10   duplicative of other interrogatories.  Rather, it simply states that Mattel "does not

11   take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel

12   addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel,·p.

13   19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory

14   No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts

15   regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel

16   products it contends copied, infringed, or diluted MGA's products by SKU number,

17   as requested by Interrogatory 51."]).  Because it has not analyzed Interrogatory No.

18   51, MGA's objection to that interrogatory is overruled.

19           MGA's claim that Supplemental Interrogatory No. 52 is duplicative of

20   Interrogatory No. 45 is also unpersuasive.  Supplemental Interrogatory No. 52 seeks

21   MGA profit, costs and revenue associated with each trade dress MGA contends

22   Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas

23   Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and

24   to identify the profits, costs and revenue associated with each such product.

25   The questions are therefore not the same.[10]  Accordingly, the objections are

26

27   [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be
     able to respond to the latest interrogatories by cutting and pasting its responses to the prior
     interrogatories.  However, as discussed below, MGA alleges that responding to Supplemental

28   Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are
     not identical in scope.  (Opposition, p. 25)

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 22 -                        ORDER NO. 17
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 225

1    overruled.

2              **g.      Undue Burden Objection**

3         MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4    unduly burdensome.

5              However, MGA has not provided any evidence in connection with its Motion

6    To Compel to support its claim of burden.  (*See Jackson,* 173 F.R.D. at 528-9 ["The

7    party claiming that a discovery request is unduly burdensome must allege specific

8    facts which indicate the nature and extent of the burden, usually by affidavit or

9    other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10   are unduly burdensome when Mattel merely seeks information regarding the extent

11   of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12   products, Mattel has the right to discover the scope of the alleged claims.

13   Accordingly, the objections are overruled.

14             **h.      Privilege Objection**

15        Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16   that it asserted a privilege objection merely to "preserve [its] ability to protect,

17   privileged documents and information . . . . [and to make] clear that it was not

18   waiving the attorney-client privilege . . .." (Opposition, p. 25).   Since that is the

19   full extent of MGA's privilege objection, the Discovery Master agrees that

20   objection as so limited is valid.  Accordingly, the objection is sustained on that

21   limited ground.

22             **3.      Conclusion**

23        For all of the foregoing reasons, MGA must promptly provide full and

24   complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25   limited above.

26        **D.      Summary Of Ruling Regarding The Motion To Compel**

27        Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 226

1  request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2  granted.

3  **IV.   MATTEL'S *EX PARTE* APPLICATION**

4  　　　Several days after Mattel filed its Motion to Compel on March 6, 2009,

5  Mattel filed its Application for issuance of an order to show cause regarding

6  contempt.  The Application addresses Interrogatory Nos. 43 and 44 (the

7  "Interrogatories") and is based on the same facts summarized above with respect to

8  the Motion to Compel and Protective Order Motion.  However, unlike the Motion

9  to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10  Master is not authorized to issue contempt sanctions.  By order dated March 12,

11  2009, the Court referred the Application to the Discovery Master, who was

12  instructed to review it in the first instance and recommend a disposition to the

13  Court.  (Order dated March 12, 2009, p. 1).

14  　　**A.   Basis For The Application**

15  　　　　**1.   Circumstances Warranting *Ex Parte* Relief.**

16  　　　In the introductory section of its Application preceding the Memorandum of

17  Points and Authorities, Mattel sets forth the following grounds for *ex parte* relief:

18  　　　　[F]or two months, MGA failed and refused to produce Phase 2

19  　　　　discovery, including such discovery that was previously ordered.

20  　　　　MGA also has a history of flouting Court Orders, but remains

21  　　　　undeterred by prior warnings and prior awards of sanctions.

22  　　　　Absent prompt intervention by this Court, MGA will continue to

23  　　　　block even ordered Phase 2 discovery.  Furthermore, MGA's

24  　　　　conduct is a direct challenge to the authority of the court and the

25  　　　　Discovery Master, and additional delay would inappropriately

26  　　　　reward MGA for its refusals to comply with the [prior discovery

27  　　　　master's February 15, 2008] Order.

28  (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 227

1          In its Reply, Mattel offers the following as a further justification for bringing

2   the matter on an *ex parte* basis:

3                MGA has repeatedly employed the procedural tactic of refusing

4                to comply with discovery requests and forcing Mattel to return to

5                court for multiple successive orders and sanctions compelling

6                discovery.  In so doing, MGA effectively halts the discovery

7                process and deprives Mattel of crucial information to which it is

8                entitled. ... Requiring Mattel to repeat the process of filing a

9                regularly noticed motion would unduly reward MGA for its

10               refusal to comply with the [February 15, 2008] Order and

11               enhance MGA's ability to perpetually deprive Mattel of crucial

12               time in which to conduct discovery.

13  (Reply, pp. 3-4).

14          **2.     Circumstances Warranting Issuance Of An Order To Show**

15                **Cause**

16          In its Application, Mattel argues that, although MGA has improperly refused

17  to respond to all of the discovery referenced in the Motion to Compel (including the

18  Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to

19  the Interrogatories, because MGA had already been ordered to provide responses to

20  those Interrogatories pursuant to the prior discovery master's February 15, 2008

21  Order.  Mattel therefore argues that MGA's failure to provide responses to the

22  Interrogatories should be singled out for special treatment as contempt of the Court.

23          **3.     Relief Sought**

24          MGA seeks issuance of an order to show cause that MGA is in contempt, a

25  finding of contempt, and the following monetary relief:

26          •    An award of coercive sanctions against MGA in the amount of $5,000

27               for each day that MGA fails to produce full and complete responses to

28               Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 228

1    event that MGA does not comply within five days of the Court's

2    Order, the amount of coercive sanctions should be increased to

3    $10,000 per day (with all such per diem fine amounts being paid to the

4    Court); and

5    • An award of monetary sanctions against MGA in the amount of

6    $7,000, which represents a portion of the costs incurred by Mattel in

7    bringing the Application.

8    (Application, pp. i - ii).

9    **B.    Discussion**

10   **1.    *Ex Parte* Relief Is Not Justified**

11   As MGA notes, the Court's standing order indicates that *ex parte*

12   applications are "solely for extraordinary relief." This directive was underscored

13   by the Court's Discovery Master Order, which requires that a party applying for *ex*

14   *parte* relief must show that "good cause" exists for hearing any dispute "on

15   shortened time" and that it will "be prejudiced absent prompt resolution" of the

16   issue. (Discovery Master Order, pp. 4 – 5).

17   This standard is not satisfied here. Mattel does not adequately demonstrate

18   that it will be prejudiced if the underlying motion is heard according to regularly

19   noticed motion procedures. The discovery cut-off is still eight months in the future

20   (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21   argues that it would be unfair to require Mattel to seek relief by means of a

22   regularly noticed motion, given the relevant history:

23   Mattel *already* followed this course of action and already

24   obtained an Order that MGA produce amended interrogatory

25   responses. MGA refuses to obey that [February 15, 2008] Order.

26   Requiring Mattel to repeat the process of filing a regularly

27   noticed motion would unduly reward MGA for its refusal to

28   comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 229

1                ability to perpetually deprive Mattel of crucial time in which to

2                conduct discovery.

3   (Reply, p. 4, emphasis in original).

4        Mattel's frustration is understandable; Mattel has already been through this

5   process twice (counting the pending motion to compel) with respect to the identical

6   interrogatories which are the subject of the Application.  However, Mattel's

7   assertion that it should be allowed to dispense with a noticed motion ignores one

8   important point: the Application seeks relief which both parties acknowledge is

9   entirely different in character than an award of ordinary monetary sanctions for

10  discovery abuses.  Unlike its motions to compel, the Application seeks a finding

11  that MGA has deliberately disobeyed a Court order and should be punished by an

12  award of coercive sanctions until it complies with the order.  This is the first time

13  Mattel has sought such relief, and MGA has never previously been provided the

14  opportunity to oppose the requested relief in connection with a regularly noticed

15  motion.  Thus, while Mattel's above quoted argument might have some application

16  if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not

17  justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.

18        Moreover, the chronology of events tends to negate the assertion that Mattel

19  is suffering immediate and irreparable prejudice from the delay occasioned by

20  MGA's failure to respond to the Interrogatories.  MGA has refused to respond to

21  the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,

22  2009.  Nevertheless Mattel did not file its Application until two months later, after

23  MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel

24  MGA to respond to the outstanding trade dress discovery, including providing

25  responses to the Interrogatories.  The timing of these events undermines Mattel's

26  argument that expedited relief is necessary.

27        In the absence of some exigency, the Discovery Master believes that the

28  severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 230

1  the time and opportunity to present their arguments in the context of a regularly

2  noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3  *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4  regularly noticed motion and because the Discovery Master is not inclined to

5  recommend that the Court grant the relief Mattel seeks at this time, I address the

6  substantive issues raised by the Application below.

### 2.      MGA's Alleged Disobedience Of The Prior Order

#### a.      Legal Standard

9  As the Ninth Circuit has observed:

> Courts are invested with inherent powers that are 'governed not
> by rule or statute but by the control necessarily vested in courts to
> manage their own affairs so as to achieve the orderly and
> expeditious disposition of cases.'

14  (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15  F.2d 363, 368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16  with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17  *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18  Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19  discovery order as contempt.

20      The Ninth Circuit has further observed that "courts have strictly adhered to

21  the principle that the power to punish for contempt is limited to '(t)he least possible

22  power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23  Cir. 1980) (citations omitted)).

24      Mattel acknowledges that it must meet an exacting standard in order to

25  prevail on its Application.  Specifically, the party seeking imposition of civil

26  contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27  contemnors violated a *specific and definite* order of the court." (*United States v.*

28  *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 231

1   *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)). Further, any doubts

2   as to whether the requirements for civil contempt have been met in a particular case

3   must be resolved in favor of the party accused of civil contempt. (*In re Chief*

4   *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5        In accordance with this standard, contempt sanctions will not be imposed

6   unless the language of the order allegedly violated is clear and unambiguous.

7   (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8   1982) (affirming district court's denial of applications to hold defendants in

9   contempt for violating terms of consent judgment where, among other things,

10  certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11  *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12  and for sanctions where the discovery at issue was open to interpretation: "Any

13  ambiguities or uncertainties in the court order must be read in a light favorable to

14  the person charged with contempt. ... Contempt power should not be used where

15  there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16  power of the court to punish for contempt should be used with caution and

17  deliberation.")).

18               **b.**   **Application To The Facts**

19        Mattel argues that MGA violated the February 15, 2008 Order, and that it

20  continued to do so for two months before the prior discovery master stayed MGA's

21  obligation to respond to the Interrogatories on April 22, 2008. (Application, p. 13).

22  That assertion is not accurate. In granting MGA's motion for clarification of the

23  February 15, 2008 Order, the prior discovery master in essence retroactively found

24  that MGA should not have been ordered to immediately provide supplemental

25  responses because the Interrogatories involved Phase 2 issues and were therefore

26  subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27  the February 15, 2008 Order.

28        When the stay was lifted, on January 6, 2009, the Court did not set a new

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 232

1   deadline for MGA to provide supplemental responses in compliance with the

2   February 15, 2008 Order, nor did Mattel request that either the Court or the current

3   Discovery Master do so.  However, one month after the stay was lifted, Mattel did

4   meet and confer with MGA in an attempt to obtain responses.  At that time, MGA

5   took the position that it would provide responses to the Interrogatories "not later

6   than 30 days after the Court decides the trade dress summary judgment motion

7   which Mattel has indicated it will be bringing." (Ex. 16 to Watson Decl. in support

8   of Application).  Three weeks later, MGA filed the Protective Order Motion

9   seeking a stay of its obligation to respond to the Interrogatories.

10          As set forth above, the Discovery Master finds that, in pursuing this course of

11  conduct instead of responding to the Interrogatories and other discovery that is the

12  subject of Mattel's Motion to Compel, MGA acted without substantial justification

13  and therefore grants Mattel's Motion To Compel and also awards sanctions against

14  MGA.  The question raised by the Application is whether MGA should *also* be

15  ordered to appear and show cause why it should not be held in contempt and subject

16  to further sanctions for failing to comply with the February 15, 2008 Order.

17          Since Mattel, as the moving party, has the burden of demonstrating by clear

18  and convincing evidence that MGA has committed civil contempt and should be

19  punished, Mattel must, in the first instance, identify the existence of a "specific and

20  definite" provision of the February 15, 2008 Order which MGA has violated.

21  (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22          The Discovery Master's [February 15, 2008] Order directed

23          MGA to provide full, complete and updated responses to

24          Interrogatories Nos. 43 and 44 within eleven days.  MGA did not

25          comply with that Order and refused to do so for two months

26          before the Discovery Master stayed MGA's obligation to respond

27          while the Court's Phase 2 stay was in place.

28  (Application, p. 13).  However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 233

1   responses specified in the February 15, 2008 Order cannot reasonably be viewed to

2   be a violation of that order during the period of February 15, 2008 to April 22, 2008

3   because the prior discovery master himself retracted the portion of his ruling

4   requiring MGA to comply in response to MGA's motion for clarification. In other

5   words, the prior discovery master found, in effect, that MGA had *properly* withheld

6   supplemental responses on the ground that the subject Interrogatories sought Phase

7   2 discovery, which had been stayed by the Court nearly two weeks *before* the prior

8   discovery master issued the February 15, 2008 Order. Given the prior discovery

9   master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can

10  hardly be deemed to have been in violation of the February 15, 2008 Order while

11  the Court's stay of Phase 2 discovery was in place. A party who believes a ruling is

12  in error has the right to seek clarification or reconsideration, and doing so is not

13  equivalent to willfully disobeying the court.

14         Mattel also argues that MGA "resumed" its violation of the February 15,

15  2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on

16  January 6, 2009. While the Discovery Master does not agree that any violation

17  resumed on January 6, 2009, as set forth above, I do agree that MGA should have

18  promptly complied with the February 15, 2008 Order once the stay was lifted by

19  serving supplemental responses within 11 days of the lifting of the stay. *Lucero v.*

20  *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all

21  objections to interrogatories served before a stay was issued by failing to respond

22  within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240

23  (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be

24  complied with promptly.'").

25         However, today's ruling that MGA should have promptly provided responses

26  to the Interrogatories upon the stay being lifted by the Court is not equivalent to a

27  finding that MGA deliberately violated a "specific and definite" provision in the

28  February 15, 2008 Order. That order arguably does not contemplate the situation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 234

1  which ensued after the order was issued, namely, the prior discovery master's

2  decision to suspend MGA's obligation to respond to the Interrogatories without

3  setting a new deadline to run from the lifting of the stay.

4       While it is reasonable to conclude, as the Discovery Master has done, that the

5  same 11-day deadline imposed by the February 15, 2008 Order would apply once

6  the stay was lifted, an inference, however reasonable, is not the same thing as an

7  express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8  (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9  proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10  within list of activities expressly forbidden by earlier protective order]; *Independent*

11  *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12  defendant's supposed "understanding," based on oral comments by the Court that

13  he was being ordered to request that search engines discontinue using infringing

14  phrase, was not the same as express provision of injunction and could not serve as

15  basis for civil contempt]).  Further, as noted above, any doubts regarding

16  disobedience of a court order are to be resolved in favor of the party charged with

17  contempt.  Accordingly, the Discovery Master declines, under the applicable case

18  law and on the record presented, to find that MGA deliberately disobeyed the

19  Court, thereby meriting sanctions for civil contempt.  The Discovery Master also

20  declines to recommend that the Court issue the requested order to show cause.

21       However, as set forth in the Disposition section below, the Discovery

22  Master's ruling today *does* contain an express deadline by which MGA must

23  respond fully and without objection to the Interrogatories (as well as the other

24  discovery that is the subject of Mattel's Motion to Compel).  If MGA fails to

25  comply with the express, definite deadline imposed by this Order, the Discovery

26  Master reserves the right to recommend that the Court impose appropriate sanctions

27  from the date of MGA's non-compliance should Mattel renew its request for an

28  order to show cause regarding contempt by filing a noticed motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 235

## V.   **DISPOSITION**

A.   MGA's Protective Order Motion is **DENIED.**

B.   Mattel's Motion To Compel is **GRANTED**, except as limited above. MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.  MGA's responses to Supplemental Interrogatories Nos. 51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

C.   Mattel's request for sanctions against MGA in connection with its Motion To Compel is **GRANTED.**  MGA shall pay $4515 to Mattel within ten (10) days of this Order.

D.   MGA's request for sanctions in connection with Mattel's Motion To Compel is **DENIED**.

E.   Mattel's Application for issuance of an order to show cause regarding contempt is **DENIED,** without prejudice to any noticed motion for an order to show cause regarding contempt that Mattel may deem appropriate in the event that MGA fails to comply with any provision of the present Order.

Dated: April 14, 2009

By:  /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

EXHIBIT 13 PAGE 236

# EXHIBIT 14
# TO DECLARATION OF
# JEAN PIERRE NOGUES

# EXHIBIT 14
# TO DECLARATION OF
# JEAN PIERRE NOGUES



1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                            EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12            Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                    ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
16                                         OF DOCUMENTS AND
                                           INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                      MGA
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20                           I. INTRODUCTION

21        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25  submission pending the parties' submission of a proposed protective order, which was received

26

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              1

EXHIBIT 14 PAGE 237

1   on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3   ## II.  BACKGROUND

4   A.  Requests for Documents

5   In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12  In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14  In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18  Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 14 PAGE 238

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5   Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place.  In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26        [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
    to compel Bryant to produce documents.

27

28  Bryant v. Mattel, Inc.,                                                                                    3
    CV-04-09049 SGL (RNBx)

EXHIBIT 14 PAGE 239

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 14 PAGE 240

1    to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2    49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3    Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4    have been released on the market.  In addition, MGA represents that it has agreed to produce

5    documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6    specifically, MGA represents that it agreed to review and produce documents provided to it by

7    Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8    Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9    Therefore, MGA views the motion as unnecessary.

10        MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21        Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                           5

EXHIBIT 14 PAGE 241

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3         Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14  was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18        Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  ───────────────────

26      [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              6

EXHIBIT 14 PAGE 242

1   Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2 files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3 MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4 in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5 MGA objects to producing documents relating to any testing performed to determine the date that

6 Bratz documents were created.  MGA contends that such discovery is premature and should not

7 proceed until experts are designated.

8   B. <u>Interrogatories</u>

9   On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10 however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11 On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13 Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14 because they lack substantive information and consist almost entirely of objections.  MGA

15 responds that the motion is moot because it is prepared to provide supplemental responses to its

16 interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17 motion to compel responses to interrogatories.

18        <u>III. DISCUSSION</u>

19   A. <u>Rule 26 of the Federal Rules of Civil Procedure</u>

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22 party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23 discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

24 Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 14 PAGE 243

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.  Document Requests

7          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8             34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                 Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)
          8

EXHIBIT 14 PAGE 244

1 | to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2 | has been approved and entered as an order of the court.  MGA is ordered to produce design

3 | documents for unreleased products that are responsive to Mattel's document requests in

4 | accordance with the terms of the stipulation and order.

5 | Documents from MGA Hong Kong

6 |     Documents relating to activities or conduct in foreign countries are relevant and

7 | discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8 | Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9 | provides reciprocal discovery from its subsidiaries.

10 |     Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11 | the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12 | documents from MGA Hong Kong.

13 |     Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14 | 64, 69, 96, 97, 98, 99, 100.

15 |     2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16 |        61, 63, 66, 67, 70, 88, 90, 91

17 |     Mattel contends that MGA is improperly limiting its document production to the "first

18 | generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19 | generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20 | documents for yet unreleased products.

21 |     As stated previously, design documents for yet unreleased products are relevant and

22 | discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23 | all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24 | 59, 61, 63, 66, 67, 70, 88, 90, and 91.

25 |     //

26 |     //

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 14 PAGE 245

3. MGA's Payments to Bryant (Nos. 43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant.

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41.

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 14 PAGE 246

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25          [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                                11

EXHIBIT 14 PAGE 247

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement. In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11    objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13    for confidential, proprietary or commercially sensitive information, or seeks information

14    protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15    it fails to provide the description of each person's role and the start and end dates of each person's

16    involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19    embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22    December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23    substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant

25    to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26    compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                          12

EXHIBIT 14 PAGE 248

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No. 8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28
    Bryant v. Mattel, Inc.,                                                            13
    CV-04-09049 SGL (RNBx)

EXHIBIT 14 PAGE 249

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3  boiler-plate objections.

4       Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7  IV. CONCLUSION

8       For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May 15, 2007

22                       HON. EDWARD A. INFANTE (Ret.)

23                       Discovery Master

24

25

26

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                    14

EXHIBIT 14 PAGE 250

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendall@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 14 PAGE 251