# VII. MGA STEALS MATTEL TRADE SECRETS IN CANADA

88.   In an effort to increase its market share and sales in Canada and elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales, projects, advertising and strategy, not only for Canada, but the United States and the rest of the world.

89.   Janine Brisbois was a Director of Sales for the Girls Division in Canada. Mattel hired her as a National Account Manager in August 1999. When she was hired as a Mattel employee, Brisbois agreed that she would preserve and would not disclose Mattel's proprietary or confidential information. For example, Brisbois agreed:

> You must keep Mattel's Proprietary Information confidential, and you may only use or disclose such information as necessary to perform your job responsibilities in accordance with Mattel policies. Your obligation to keep Mattel's Proprietary Information confidential will continue even after any termination of your employment with your employer.
>
> . . .
>
> Mattel takes steps to maintain the secrecy and confidential nature of Mattel's Proprietary Information and, if a competitor discovered Mattel's Proprietary Information, it could significantly damage Mattel and your Employer.

90.   While with Mattel, Brisbois had responsibility for Mattel's account with TRU and later had responsibility for Mattel's Wal-Mart account. In her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to Mattel confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns and product profitability.

91.   On September 26, 2005, Brisbois resigned from Mattel to take a position as Vice President of Sales at MGA. Mattel is informed and believes that

1  in that position Brisbois has responsibility for MGA's accounts with both TRU and

2  Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she

3  was "taking anything."  Brisbois responded, "No."  Both during and after her exit

4  interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's

5  confidential and proprietary information.

6        92.   Mattel is informed and believes that Brisbois spoke with Isaac

7  Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he

8  called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day

9  that she spoke with Mr. Larian and four days before she resigned, Brisbois copied

10  approximately 45 Mattel documents on to a USB or "thumb" drive with the volume

11  label "BACKPACK."  On information and belief, Brisbois removed the thumb

12  drive from Mattel Canada's office by concealing it in her backpack or gym bag the

13  last time that she left that office.  These documents contained Mattel trade secret

14  and proprietary information, and included:

15      • a document containing the price, cost, sales plan and quantity of every
16        Mattel product ordered by every Mattel customer in 2005 and 2006;

17      • the BARBIE television advertising strategy and information concerning
18        sales increases generated by television advertisements;

19      • competitive analysis of Mattel vis-à-vis its competitors in Canada;

20      • an analysis of Mattel's girls business sales beginning in 2003 and
21        forecasts through 2006;

22      • profit and loss reviews for Mattel's products being sold in Wal-Mart,
23        including margins and profit in not only Canada, but in the United
24        States and Mexico; and

25      • a document containing the product launch dates and related advertising
26        for all Mattel new products between Fall 2005 and Spring 2006.

27        93.   After Mattel discovered that Brisbois had copied these sensitive

28  documents to a thumb drive, Mattel notified Canadian law enforcement authorities.

05505.07209/2875224.1

EXHIBIT 7
PAGE 198

-55-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1    Canadian law enforcement authorities recovered from Brisbois a thumb drive with

2    the volume label "BACKPACK" containing the documents that Brisbois had

3    copied from Mattel's computer system.  Mattel later learned that while she was

4    working as a Vice President of Sales at MGA, Brisbois accessed and modified

5    documents on that thumb drive.

6         94.    After joining MGA, Brisbois repeatedly traveled to MGA's

7    offices in Van Nuys, California and met with Larian and Brawer.  In February,

8    2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City

9    offices and that at least three MGA employees were under criminal investigation,

10   MGA nonetheless issued a press release trumpeting its 2005 performance, with

11   Larian himself concluding, "Our international teams in Mexico and Canada have

12   done a fantastic job."

13   **VIII. AT MGA'S DIRECTION, MATTEL EMPLOYEES IN ADDITION TO**

14   **BRYANT SECRETLY WORK ON BRATZ FOR YEARS**

15        95.    MGA also knowingly bribed and secretly used Mattel employees

16   in addition to Bryant to work on MGA products such as Bratz while they were

17   Mattel employees and, furthermore, fraudulently concealed such activity.  On

18   December 28, 2007, MGA vendor and agent Veronica Marlow revealed at her

19   deposition that, beginning in 2000 and continuing over a time period spanning at

20   least five years, at least three Mattel employees in addition to Bryant worked on

21   Bratz while employed by Mattel:  Ana Isabel Cabrera, Beatriz Morales and Maria

22   Elena Salazar.  Like Bryant, these Mattel employees all signed agreements

23   assigning Mattel all rights to intellectual property they created while employed by

24   Mattel.  Each of the three Mattel employees worked for MGA through Marlow, to

25   whom MGA and Bryant have paid millions of dollars since 2000.

26        96.    Following Marlow's December 2007 deposition, Ms. Cabrera

27   and Ms. Morales, who were still Mattel employees, admitted to being paid for and

28   working on Bratz while Mattel employees and to knowing that such conduct was

0505.07209/2875224.1

EXHIBIT __7__

PAGE __199__

-56-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   wrong. Both specifically acknowledged that they continued to work on Bratz even

2   after Mattel had made them aware of this litigation involving Bryant's secret, illegal

3   work with MGA and had reiterated the need to protect Mattel's intellectual

4   property. Both admitted that they tried to conceal their work for MGA.

5       97.   MGA and Larian knew that their bribery and use of Mattel

6   employees was wrongful and took steps to conceal that misconduct. Among other

7   things: (a) MGA and Larian, by and through their agents Peter Marlow and

8   Veronica Marlow, used devices such as paying the Mattel employees in cash and

9   using false names and false social security numbers in tax and other business

10  records; (b) MGA and Larian continued their acts of bribery and other misconduct

11  after this litigation was filed; (c) MGA and Larian failed to disclose their payments

12  to these Mattel employees despite Court Orders compelling them to disclose any

13  such instances; and (d) MGA and Larian hired Maria Elena Salazar after she left

14  Mattel, even though she specifically touted in her employment application to MGA

15  that she worked on the "first patterns for [the] Bratz doll and release;" and (e) in an

16  email from Peter Marlow to Larian and Paula Garcia of MGA dated June 20, 2005,

17  Marlow informed MGA that the pattern and sample makers "have secure day jobs

18  with an outlook of many more years of stability," they "moonlight" to work on

19  Bratz and "[t]hey have more than 100 years total of doll-making experience

20  between them."

## IX. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS FOR THE BENEFIT OF MGA

24      98.   In the past few years, MGA has hired directly over 100 Mattel

25  employees, ranging from Senior Vice-President level to lower level employees. On

26  information and belief, many of these employees were specifically targeted and

27  recruited by MGA, including by Larian and Brawer, based on the Mattel

28  confidential and proprietary information they could access. Many of these

EXHIBIT 7
PAGE 200

05.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   employees had access to proprietary and confidential Mattel information. Mattel

2   believes that some of those former Mattel employees may be observing their

3   obligations not to misappropriate, disclose or use Mattel's confidential and

4   proprietary information. Mattel is informed and believes, however, that certain

5   additional employees accessed, copied and took from Mattel confidential and

6   proprietary information, including Mattel's strategic plans; business operations,

7   methods and systems; marketing and advertising strategies and plans; future

8   product lines; product profit margins; and customer requirements. The

9   misappropriated confidential and proprietary information included information that

10  these Mattel employees were not authorized to access. On information and belief,

11  the misappropriated confidential and proprietary information taken from Mattel is

12  being disclosed to and used by MGA for the benefit of MGA and to the detriment

13  of Mattel.

14  **X.    LARIAN MAKES MISREPRESENTATIONS TO RETAILERS ABOUT**

15  **MATTEL'S PRODUCTS**

16          99.    Counter-defendants have engaged in other illegal practices in

17  their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

18  mail messages to a "Bratz News" distribution list that Larian created or that was

19  created for him. Mattel is informed and believes that the recipients of e-mail

20  messages sent to the "Bratz News" distribution list include members of the media

21  as well as representatives of many of Mattel's most significant customers.

22          100. On May 12, 2006, Larian sent an e-mail message to the "Bratz

23  News" distribution list that included a reference to Mattel's updated MY SCENE

24  MY BLING BLING product with real gems. Mattel had not publicly announced

25  this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel

26  had guarded the identification of this particular product.

27          101. Shortly thereafter, Larian engaged in a campaign of calling

28  Mattel's most significant customers, including but not limited to Target and TRU,

05.07209/2875224.1

EXHIBIT 7

PAGE 201

-58-

1    regarding the MY SCENE MY BLING BLING product with real gems. In an

2    effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

3    BLING product with real gems, Larian knowingly made false factual statements

4    about that product to each retailer. As of the writing of this Third Amended

5    Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

6    that each was the only retailer to purchase the product and that Mattel would not be

7    supporting the product with television advertising. At the time that Larian made

8    these statements, he knew them to be false. As a result of Larian's

9    misrepresentations, at least one retailer cancelled its order for 75,000 units of the

10   MY SCENE MY BLING BLING product with real gems. Only after Mattel

11   learned of Larian's misrepresentations and was able to correct them was Mattel able

12   to assure the retailer that Larian's representations were false and to persuade the

13   retailer to reinstate the order.

14        102. Such conduct is not an isolated incident. MGA and Larian, in an

15   effort to gain an unfair competitive advantage, repeatedly issued false and

16   misleading press releases and spread false rumors in the marketplace. In these

17   press releases and in their other statements made in marketplace, MGA and Larian

18   have deliberately misrepresented Bratz's sales, Bratz's market share, Bratz's

19   position vis-à-vis Mattel's BARBIE products, sales of Mattel's BARBIE products

20   and the market share of Mattel's BARBIE products.

21   **XI.  LARIAN AND MGA DESTROY DOCUMENTS, ENGAGE IN**

22        **PERJURY, CONSPIRACY TO COMMIT PERJURY AND**

23        **OBSTRUCTION OF JUSTICE**

24        103. On information and belief, Larian and MGA have themselves,

25   and through their agents and co-conspirators, destroyed, altered, fabricated and

26   back-dated documents and engaged in other acts of spoliation to conceal the

27   existence, nature and breadth of their wrongful conduct. For example, and without

28   limitation, Farhad Larian, a former MGA executive and director and Isaac Larian's

EXHIBIT 7

PAGE 202

-59-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1    brother, deliberately destroyed several boxes of documents relevant to Mattel's

2    claims against Bryant and MGA to keep them from Mattel.  Farhad Larian did so

3    while still on MGA's payroll.

4          104. On information and belief, Larian and MGA have also conspired

5    to commit perjury and engaged in acts of perjury and other acts of obstruction in

6    connection with MGA's theft of Mattel's property and Mattel's claims relating

7    thereto.  These actions include, among others, MGA's submission of false

8    information in sworn applications to the U.S. Copyright Office; Larian's repeated

9    sworn testimony during Phase 1 that Bryant told him, and that Larian believed, that

10   Bryant had not created Bratz while employed by Mattel; MGA's and Larian's

11   submission of false statements regarding MGA's ability to receive outside funding

12   in court pleadings and false statements regarding its financial condition in this

13   action.

14   **XII. MGA AND LARIAN LAUNDER MONEY, ENGAGE IN**

15   **FRAUDULENT TRANSFERS AND ATTEMPT TO OBTAIN SHAM**

16   **PRIORITY OVER MATTEL'S CLAIMS**

17         105. MGA and Larian, on information and belief, have engaged in

18   and continue to engage in a complex scheme to transfer, launder or otherwise hide

19   the ill-gotten funds they have obtained by virtue of their unlawful conduct and have

20   gone to extensive lengths to cover up and obscure such activities.  On information

21   and belief, this scheme was orchestrated and/or commenced no later than 2007, but

22   accelerated during the pendency of trial, especially after the Jury's Phase 1A

23   verdict in Mattel's favor.  This scheme continues to and beyond this day and

24   threatens to continue into the future.

25         106. On information and belief, in concert with various co-

26   conspirators and shell companies controlled by them, acting on their behalf or in

27   which they have an interest, MGA and Larian have transferred or transported, or

28   caused to be transferred or transported, funds obtained through their unlawful

EXHIBIT   7      -60-

PAGE _____ 203              THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  conduct in interstate commerce, including without limitation out of the United

2  States.  At least some of these funds, on information and belief, were later returned

3  to the United States through shell entities that attempt to disguise not only the true

4  owners of the companies, but the origin and source of the funds as well.

5      107.  These entities have, on information and belief, funded further

6  wrongdoing by MGA and Larian, including the purported purchase, at a substantial

7  discount, of notes held by MGA's then-largest creditor, Wachovia, and other

8  members of a bank syndicate.  By this scheme, Larian and his co-conspirators

9  sought to disguise their identities and to obtain purported priority as an alleged

10  secure creditor (rather than as a shareholder) over Mattel's claims against MGA

11  and MGA's assets, including without limitation Bratz assets.  On information and

12  belief, MGA and Larian conducted and participated in this scheme with the purpose

13  of concealing and manipulating their assets and liabilities and the appearance of

14  their financial condition in anticipation of their liability to Mattel, and for the

15  purpose of minimizing any exposure due to that liability.  The scheme has directly

16  assisted MGA and Larian in committing the other wrongs against Mattel identified

17  herein.

18      **A.    Larian and MGA Create Various Shell and Off-Shore Entities**

19      108.  On information and belief, Larian and MGA, and those acting in

20  concert with them, have created, affiliated with, employed or purchased one or

21  more shell entities to either transfer or assist in the transfer of proceeds generated

22  by their unlawful conduct and the criminal enterprises.  These include, but are not

23  limited to, the following entities and transactions:

24      • Lexington Financial Limited ("Lexington"), a company purportedly

25        based in the Caribbean island nation of Nevis that is notorious for its

26        secrecy laws.  Lexington, whose purported London business address

27        listed in filings with the State of California is nothing more than a

28        virtual office provided by a London company for a few dollars a month,

EXHIBIT    7
PAGE    704
THIRD AMENDED ANSWER AND COUNTERCLAIMS

appears to be a non-operating shell corporation. Lexington was registered on March 3, 2006 by persons who, on information and belief, were acting on behalf of or in concert with Larian, and Larian and his co-conspirators used and continue to use Lexington to conceal, receive, hold and transfer funds generated by the wrongful conduct alleged herein.

- Vision Capital, LLC, a Delaware limited liability company ("Vision Capital"), which, on information and belief, was created by persons at the direction or on behalf of Larian on August 19, 2008, just after the Phase 1A verdict in Mattel's favor. On information and belief, Larian and his co-conspirators used and continue to use Vision Capital to conceal, receive, hold and transfer funds generated by their wrongful conduct alleged herein.

- Omni 808 Investors, LLC, a California limited liability corporation ("Omni 808"), which, on information and belief, was created at the direction or on behalf of Larian on August 12, 2008, just after the Phase 1A verdict in Mattel's favor. On information and belief, Larian and his co-conspirators used and continue to use Omni 808 to conceal, receive, hold and transfer funds generated by their wrongful conduct alleged herein. In 2006, Neil Kadisha, the alleged CEO of Omni 808 and a Larian co-conspirator, was found by a court after trial to be "no more than a common thief" and was held liable for stealing millions of dollars as part of a decade-long pattern of fraudulent conduct that included perjury, subornation of perjury, fabrication of financial records, sham transactions, preparation of back-dated documents, fraudulent accountings, acts of looting, embezzlement and other misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal self-dealing.

EXHIBIT __7__
PAGE __205__

THIRD AMENDED ANSWER AND COUNTERCLAIMS

109.  Lexington claims a purported security interest in the assets of Vision Capital.  Vision Capital claims a purported security interest in the assets of Omni 808.

110.  MGA and Larian, and their co-conspirators, have, on information and belief, used these entities to transfer their ill-gotten funds from the United States and/or to move laundered funds back into the United States, including without limitation in an attempt to obtain purported priority as an alleged secured creditor over Mattel's claims and to deprive Mattel of assets to which it has a legitimate claim.

111.  On information and belief, Lexington, Vision Capital and Omni 808 are alter-egos of each other, the companies being mere shells created and operated pursuant to a fraudulent scheme as alleged herein, and with their financial affairs being significantly intermingled and interconnected.

112.  On information and belief, Larian, either alone or with other co-conspirators, formed or caused to be formed the alter-ego entity IGWT Group on June 26, 2008—during the Phase 1 trial—and registered its place of business as Larian's home address.  On information and belief, Larian, either alone or with other co-conspirators, also formed or caused to be formed an affiliate alter-ego entity called IGWT 826 Investments on August 27, 2008—the day after the Phase 1 trial ended.  IGWT 826 Investments is registered at the home address of Shirin Makabi and Jahangir Eli Makabi.  Shirin Makabi is Isaac Larian's sister, Jahangir Eli Makabi is Isaac Larian's brother-in-law, and both are shareholders or beneficial shareholders of MGA through various trusts.

**B.  The Purported Acquisition of the Wachovia Debt**

113.  After the Phase 1A verdict, MGA and Larian represented on multiple occasions to both this Court and the Ninth Circuit that MGA was in dire financial straits and might file imminently for bankruptcy.  MGA and Larian represented to the Court that MGA had not obtained and could not obtain funding

05.07209/2875224.1

EXHIBIT ___7___
PAGE ____?0u___

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   (a representation that MGA later was forced to retract as false).  At the same time

2   MGA's largest lender, Wachovia, accelerated over $313 million dollars worth of

3   debt that MGA owed it and triggered the lock-box provision of its loan agreements

4   with MGA, which required the transfer to Wachovia of all, or substantially all, of

5   the revenue that MGA received.

6       114.  On information and belief, Larian and MGA, and their co-

7   conspirators, in order to maintain control over MGA's revenue and to frustrate the

8   jury's verdicts in Mattel's favor, determined to purchase the Wachovia note

9   through various entities affiliated with Larian or with MGA.  On information and

10  belief, Larian intended to use Lexington, Vision Capital, Omni 808, the IGWT

11  entities and other vehicles currently unknown to Mattel (because of the efforts by

12  MGA, Larian, Omni 808 and their co-conspirators to conceal them) to distance

13  himself from the transaction and thereby conceal the true source of the funds used

14  to purportedly purchase the Wachovia note and to conceal that Larian in fact

15  participated in or controlled the acquisition of the debt, directly or indirectly.  On

16  information and belief, at Larian's urging and acting in concert with Larian, Omni

17  808 purportedly acquired the bulk of that debt at a massive discount.

18      115.  Omni 808 has represented to the Court that its claimed

19  acquisition of the Wachovia note was an arms-length business deal.  Omni 808 has

20  also represented to the Court that the funds used for the purported acquisition did

21  not originate from MGA or Larian.  Wachovia and others, however, recently

22  produced documents that undermine these claims and representations.  For

23  example, a July 29, 2008 offer letter to Wachovia states that Larian would have a

24  non-voting limited interest in the loan acquisition.  As another example, a Senior

25  Promissory Note between MGA and Wachovia, dated September 3, 2008,

26  specifically identifies Omni 808 as an affiliate of MGA.

27      116.  Moreover, Vision Capital, which claims it holds a purported

28  security interest in Omni 808, is also affiliated with MGA.  Vision Capital has

1  listed its address as 1525 South Broadway, Los Angeles, California. Mattel has not

2  been able to identify an active business named Vision Capital located there. Mattel

3  did identify this as the location of Neman Brothers & Associates, a business owned

4  by Leon Neman, Larian's brother-in-law who has served as an MGA director.

5  After Mattel uncovered these facts, Mr. Neman claimed to be an alleged principal

6  of Vision Capital.

7        117. On information and belief, the funds Omni 808 used to

8  purportedly purchase the Wachovia note were, in whole or in part, generated by

9  Larian's and MGA's wrongful conduct directed towards Mattel. On information

10  and belief, Larian has used, at least in part, IGWT Group, IGWT 826 Investments,

11  Lexington, Vision Capital and other shell and alter-ego companies as conduits to

12  transfer funds to Omni 808 and others and to conceal the source of such funds.

13        118. MGA and Larian have now also admitted that Omni 808

14  provided additional funds to MGA beyond the Wachovia debt purchase, though

15  MGA first denied that was the case. MGA and Omni 808 entered into a Secured

16  Delayed Draw Demand Note on October 16, 2008. Pursuant to the terms of that

17  Note, Omni 808 would make available up to $40 million of additional purported

18  credit to MGA. Pursuant to a written request submitted by MGA on October 17,

19  2008, Omni 808 loaned MGA an additional $6 million under that Note. On

20  information and belief, those funds also were, in whole or in part, generated by

21  Larian's and MGA's wrongful conduct towards Mattel and transferred through

22  Larian-controlled conduits to conceal the true source of the funds. In fact, the

23  Secured Delayed Draw Demand Note between MGA and Omni 808 states that

24  Omni 808's funding came, at least in part, from IGWT 826 Investments.

25        119. On information and belief, Omni 808's claimed acquisition of

26  the Wachovia note was not an "arms-length" transaction by an independent

27  investor or investors. Instead it was, on information and belief, an insider

28  transaction facilitated by Larian and MGA through the use of nominally

EXHIBIT   7

PAGE   208

05.07209/2875224.1

-65-

1  independent but affiliated entities, for wrongful purposes that include without

2  limitation maintaining substantial control over MGA's revenues in the near term,

3  continuing with their wrongful activities despite the jury's verdict against them and

4  establishing purported priority as a secured creditor over Mattel's claims in any

5  eventual bankruptcy.  On information and belief, Larian participated and was

6  involved in the purported acquisition of MGA's debt, though the claimed

7  acquisition was structured to conceal it from Mattel.

8         120.  While the precise mechanisms by which Larian transferred funds

9  and manipulated MGA's and Larian's finances through these conduits is not yet

10  known to Mattel because such information is in the exclusive possession and

11  control of MGA, Larian and their co-conspirators, and they have refused to disclose

12  or misrepresented even basic information such as the alleged owners of the entities,

13  on information and belief Larian and his affiliates have created shell entities for the

14  purpose of obscuring and concealing the true ownership of assets held and origin of

15  funds transferred, while Larian and his family members and affiliates further have

16  made massive distributions and other payments totaling hundreds of millions of

17  dollars from MGA to themselves and engaged in a series of related-party

18  transactions as part of a scheme to convert at least tens of millions of dollars in

19  MGA equity into debt.

20         121.  For example, according to an MGA Lender Update dated

21  November 1, 2007, in approximately August 2007, MGA made purported loans in

22  the amount of 2.5 million euros for investments in another toy company, called

23  Zapf, purportedly on behalf of Larian and his family.  Another 12 million euros

24  were due in November 2007, for which MGA was liable if Larian did not

25  contribute.  As shown in a Master Assignment and Exchange Agreement between

26  Omni 808, MGA, and MGA de Mexico and Wachovia and dated September 3,

27  2008, soon after the Phase 1A verdict and during the Phase 1B trial Larian and his

28  family members (including, without limitation, Jahangir Eli Makabi and Shirin

1  Larian Makabi as Co-Trustees of the Makabi Living Trust, Isaac Larian and Angela

2  Larian as Trustees of the Larian Living Trust, the Angela Larian Qualified Annuity

3  Trust, the Isaac E. Larian Qualified Annuity Trust, the Jahangir Eli Makabi

4  Qualified Annuity Trust, Jahangir Eli Makabi, and the Shirin Larian Makabi

5  Qualified Annuity Trust) executed a series of twenty-two separate transactions (on

6  August 4, 5, 8, 19, 25, 2008) which purported to transfer as loans by shareholders

7  over $13.3 million from U.S. based trust accounts to MGA Entertainment (HK)

8  Limited.  Another series of twenty-two transfers (also on August 4, 5, 8, 19, 25,

9  2008) show that Larian and these same family members, MGA shareholders, have

10  also purported to loan nearly $6 million in funds to MGA.

11      **C.**    **Larian Loots MGA's Assets by Selling MGA Inventory to Himself**

12            **at Fire Sale Prices**

13          122.  On information and belief, Larian and MGA have transferred and

14  are continuing to transfer assets from MGA by coordinating the sale of significant

15  MGA inventory, at substantial discounts, to companies affiliated with Larian.

16  These transactions have had the effect of denuding MGA of its most valuable

17  inventory, sold to Larian's own companies for pennies on the dollar, while

18  permitting Larian to substantially benefit by reselling MGA's inventory, and while

19  further infringing Mattel's intellectual property.

20          123.  On information and belief, Larian, through the Larian-controlled

21  IGWT entities, is purchasing Bratz products that infringe Mattel's rights and other

22  MGA products for steep discounts and reselling, distributing and offering for sale

23  such products.  MGA has admitted that it sold tens of millions of dollars in Bratz

24  inventory to IGWT entities at a "substantial discount."  Documents show that the

25  discount on this self-dealing transaction was in fact massive.

26          124.  In May of 2008, when MGA was undergoing cash-flow

27  problems for reasons that included Larian's on-going de facto liquidation of MGA

28  assets, Larian arranged to have MGA purportedly sell vast amounts of MGA

EXHIBIT 7

PAGE 210

-67-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   inventory, including infringing Bratz products, to himself through the IGWT

2   Group. As shown by an Inventory Purchase Agreement between MGA and IGWT

3   Group, dated July 7, 2008, MGA purportedly agreed to sell hundreds of thousands

4   of inventory items to Larian's IGWT Group. This agreement was signed by Larian

5   on behalf of both MGA and IGWT Group. Through this transaction, MGA sold

6   inventory with a retail value of more than $65 million for just $5.3 million.

7          125.  MGA and Larian have claimed that the arrangement was to

8   MGA's benefit because the deal involved obsolete and overstock inventory.

9   However, as the Bill of Sale accompanying the agreement (which shows the SKUs

10   of the products IGWT Group purchased) shows, inventory MGA sold to IGWT

11   Group included current inventory, including current Bratz products.

12          126. The full extent of this and other transactions by which Larian has

13   arranged the substantially discounted sale of MGA assets to IGWT Group or other

14   Larian-controlled entities or affiliates is not yet known to Mattel because such

15   information is in the exclusive possession and control of MGA, Larian, the IGWT

16   entities and their co-conspirators, and they have refused to disclose information to

17   Mattel. On information and belief, by arranging this type of transaction with

18   IGWT Group and other similar insider transactions yet unknown to Mattel, Larian

19   has siphoned significant MGA assets for his own personal benefit. On information

20   and belief, the purported transaction with IGWT Group is only the most recent in a

21   series of insider arrangement facilitated by Larian, which, by May 16, 2008, led

22   Wachovia to conclude that Larian had engaged in a de-facto liquidation of MGA's

23   assets over the course of 2008 and other times.

24

25

26

27

28

EXHIBIT 7
PAGE 311

THIRD AMENDED ANSWER AND COUNTERCLAIMS

## CLAIMS FOR RELIEF

### First Counterclaim

## Copyright Infringement

## (Against MGA, MGA Entertainment (HK) Limited,
## Larian, Bryant and Does 4 through 10)

127. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 126, above, as though fully set forth at length.

128. Mattel is the owner of copyrights in works that are fixed in tangible media of expression and that are the subject of valid, and subsisting, copyright registrations owned by Mattel. These include, without limitation, the works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273. These also include, without limitation, the works that are the subject of Registrations VAu 960-439, VAu 964-304, VAu 964-306, VAu 964-308, VAu 964-309, VAu 964-310, VAu 964-311, VAu 964-315, VAu 964-318, VAu 964-319, VAu 964-320 and VAu 964-321.

129. Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization. Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

130. Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants. Counter-defendants, moreover, have deliberately

1  failed to exercise their right and ability to supervise the infringing activities of

2  others within their control to refrain from infringing Mattel's copyrighted works

3  and have failed to do so in order to deliberately further their significant financial

4  interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-

5  defendants have engaged in direct, contributory and vicarious infringement of

6  Mattel's copyrighted works.

7        131.  By virtue of Counter-defendants' infringing acts, Mattel is

8  entitled to recover Mattel's actual damages plus Counter-defendants' profits,

9  Mattel's costs of suit and attorneys' fees, and all other relief permitted under the

10  Copyright Act.

11       132.  Counter-defendants' actions described above have caused and

12  will continue to cause irreparable damage to Mattel, for which Mattel has no

13  remedy at law.  Unless Counter-defendants are restrained by this Court from

14  continuing their infringement of Mattel's copyrights, these injuries will continue to

15  occur in the future.  Mattel is accordingly entitled to injunctive relief restraining

16  Counter-defendants from further infringement.

17  <div align="center">**Second Counterclaim**</div>

18  <div align="center">**Violation of the Racketeer Influenced and Corrupt Organizations Act**</div>

19  <div align="center">**18 U.S.C. §§ 1962(c) and 1964(c)**</div>

20  <div align="center">**(Against All Counter-defendants)**</div>

21       133.  Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 132, above, as though fully set forth at length.

23       134.  Beginning at various times from approximately 1999 through the

24  filing of this Third Amended Answer and Counterclaims, in the Central District of

25  California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

26  Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and

27  Brawer, Trueba, Vargas, Castilla and Brisbois were employed by and associated-in-

28  fact with an enterprise engaging in, and the activities of which affect, interstate and

EXHIBIT __7__

PAGE __213__

-70-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal

2  Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK)

3  Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and

4  Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the

5  Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).

6       135.  In addition, beginning at various times from approximately 1999

7  through the filing of this Third Amended Answer and Counterclaims, in the Central

8  District of California and elsewhere, Counter-defendants MGA, MGA

9  Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-

10  defendants, were employed by and associated-in-fact with a second enterprise

11  engaging in, and the activities of which affect, interstate and foreign commerce (the

12  "Bratz Criminal Enterprise").

13       136.  Further, beginning at least as early 2007, and through the filing

14  of this Third Amended Answer and Counterclaims, in the Central District of

15  California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

16  Limited and Larian, as well as IGWT Group, IGWT 826 Investments, Lexington,

17  Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli

18  Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The

19  Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E.

20  Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust,

21  The Shirin Larian Makabi Qualified Annuity Trust and certain of the Doe Counter-

22  defendants, and others acting in concert with or on behalf of the foregoing, were

23  employed by and associated-in-fact with another enterprise engaging in, and the

24  activities of which affect, interstate and foreign commerce (the "IGWT Criminal

25  Enterprise").

26       137.  MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

27  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

28  Brisbois, Castilla and the Other Former Employees, and each of them, for the

1   purpose of executing and attempting to execute the scheme to improperly defraud
2   Mattel and steal its trade secret or otherwise confidential and proprietary
3   information and infringe Mattel's rights and conceal such misconduct, by means of
4   tortious, fraudulent and criminal conduct, did and do unlawfully, willfully and
5   knowingly conduct and participate, directly and indirectly, in the conduct of the
6   MGA Criminal Enterprise's affairs and, in the case of MGA, MGA Entertainment
7   (HK) Limited, Larian, Bryant, and certain of the Doe Counter-defendants, the Bratz
8   Criminal Enterprise's affairs, through a pattern of racketeering activity. Their
9   actions include multiple, related acts in violation of: 18 U.S.C. § 1341 (mail fraud),
10  18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1503 (influencing or injuring officer or
11  juror generally), 18 U.S.C. § 1512 (tampering with a witness victim, or informant),
12  18 U.S.C. § 1952 (interstate and foreign travel to aid racketeering), and 18 U.S.C. §
13  2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).
14          138.  In addition, MGA, MGA Entertainment (HK) Limited, Larian,
15  IGWT Group, IGWT 826 Investments, Lexington, Omni 808, Vision Capital, Leon
16  Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian Makabi,
17  Angela Larian, The Makabi Living Trust, The Larian Living Trust, The Angela
18  Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The
19  Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified
20  Annuity Trust and Does 4 through 10, and each of them, for the purpose of
21  executing and attempting to execute the scheme to infringe Mattel's rights and
22  transfer, transport or launder the ill-gotten gains from their infringements and the
23  MGA and Bratz Criminal Enterprises' thefts and infringements, and secret MGA
24  assets and purportedly obtain priority over Mattel, by means of tortious, fraudulent,
25  and criminal conduct, did and do unlawfully, willfully, and knowingly conduct and
26  participate, directly and indirectly, in the conduct of the IGWT Criminal
27  Enterprise's affairs through a pattern of racketeering activity. Their actions include
28  multiple, related acts in violation of: 18 U.S.C. § 1341 (mail fraud), 18 U.S.C.

EXHIBIT __7__

PAGE __715__

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  § 1343 (wire fraud), 18 U.S.C. § 1952 (interstate and foreign travel to aid

2  racketeering), 18 U.S.C. § 152(7) (concealment of assets), 18 U.S.C. § 1956

3  (money laundering) and 18 U.S.C. § 1957 (use of unlawful funds) and 18 U.S.C. §

4  2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).

5          139. MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

6  Larian, Bryant, Machado, Does 4 through 10, and the other members of the MGA

7  Criminal Enterprise, Bratz Criminal Enterprise and IGWT Criminal Enterprise, and

8  each of them, shared the common purpose of enabling MGA to defraud Mattel and

9  infringe its rights, and obtain confidential, proprietary and otherwise valuable

10  Mattel property through improper means, and conceal and transfer, transport or

11  launder the ill-gotten gains from such misconduct, and secret MGA assets and

12  purportedly obtain priority over Mattel, in order to assist MGA in illegally

13  competing with Mattel domestically and throughout the world.

14          140. The MGA Criminal Enterprise, Bratz Criminal Enterprise and

15  IGWT Criminal Enterprise as described herein are and have been at all relevant

16  times continuing enterprises. The conduct of each enterprise continues through the

17  date of this Third Amended Answer and Counterclaims and is ongoing, including

18  by virtue of MGA's continuing use and infringement of Mattel's information,

19  property and rights, and its use of ill-gotten gains from such thefts, all to the

20  detriment of Mattel. Said enterprises furthermore threaten to continue such

21  conduct into the future, to the detriment of Mattel.

22          141. The pattern of racketeering activity, as defined by 18 U.S.C.

23  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

24  of continuing criminal activity. This activity consists of multiple acts of

25  racketeering by each member of the MGA Criminal Enterprise, Bratz Criminal

26  Enterprise and IGWT Criminal Enterprise, is interrelated, not isolated and is

27  perpetrated for the same or similar purposes by the same persons. This activity

28  extends over a substantial period of time, up to and beyond the date of this Third

EXHIBIT __7__

PAGE ___7U___

-73-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   Amended Answer and Counterclaims.  These activities occurred after the effective
2   date of 18 U.S.C. §§ 1961 *et seq.*, and the last such act occurred within 10 years
3   after the commission of a prior act of racketeering activity.  These racketeering
4   activities included repeated acts of:

(a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment
(HK) Limited, MGA de Mexico, Larian, Bryant, Machado, and
Does 4 through 10, as well as some or all other members of the
MGA and IGWT Criminal Enterprises, aided and abetted by each
other, having devised a scheme or artifice to defraud Mattel of its
confidential trade secret information and property by conversion,
false representations, concealment and breaches of fiduciary duty,
and transfer, transport or launder the ill-gotten gains from such
thefts, and secret MGA assets and purportedly obtain priority
over Mattel, did for the purpose of furthering and executing such
a scheme or artifice to defraud, deposited or caused to be
deposited matters or things to be sent or delivered by the Postal
Service, or any private or commercial interstate carrier, or took or
received matters or things therefrom, or knowingly caused
matters or things to be delivered by mail or such carrier according
to the direction thereon, or at the place at which it is directed to
be delivered by the person to whom it is addressed, in violation of
18 U.S.C. § 1341 and 18 U.S.C. § 2, as alleged with greater
particularity in the foregoing paragraphs and as evidenced by,
among other acts of mail fraud, the true and correct copies of
communications and other evidence included in Exhibit C, D and
E;

(b)   Wire Fraud: C ounter-defendants MGA, MGA Entertainment
(HK) Limited, MGA de Mexico, Larian, Bryant, Machado, and

1    Does 4 through 10, as well some or all other members of the

2    MGA and IGWT Criminal Enterprises, aided and abetted by each

3    other, having devised a scheme or artifice to defraud Mattel of its

4    confidential and trade secret information and property by

5    conversion, false representations, concealment and breaches of

6    fiduciary duty, and transfer, transport or launder the ill-gotten

7    gains from such thefts, and secret MGA assets and purportedly

8    obtain priority over Mattel, did for the purpose of furthering and

9    executing such a scheme or artifice to defraud, transmit and cause

10   to be transmitted by means of wire communications in interstate

11   or foreign commerce, writing, signs, signals, pictures or sound, in

12   violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with

13   greater particularity in the foregoing paragraphs and as evidenced

14   by, among other acts of wire fraud, the true and correct copies of

15   communications and other evidence included in Exhibit C, D and

16   E;

17   (c)   Tampering With a Witness, Victim or Informant:  Counter-

18        defendants MGA, MGA Entertainment (HK) Limited, MGA de

19        Mexico, Larian, Bryant, Machado and Does 4 through 10, aided

20        and abetted by each other and some or all of the remaining

21        members of the MGA Criminal Enterprise, did corruptly alter,

22        destroy, mutilate, or conceal more than one record, document, or

23        other object, or attempted to do so, with the intent to impair the

24        object's integrity or availability for use in an official proceeding,

25        including this action, including without limitation by:

26             i.      altering Bryant's contract with MGA relating to

27        Bratz to conceal evidence that Bryant faxed the contract from the

28        BARBIE COLLECTIBLES department of Mattel, using a fax

1    machine owned by Mattel and while Bryant was employed by

2    Mattel;

3        ii.    altering numerous original Bratz drawings created

4    by Bryant by adding false and misleading date notations of

5    "8/1998" and "© 8/1998" to the drawings even though the

6    drawings were not created in August 1998; and

7        iii.    destroying electronic and other evidence, including

8    by destroying evidence previously contained on Carter Bryant's

9    and Isaac Larian's computer hard drives, and destroying or

10   causing to be destroyed evidence in possession of Farhad Larian;

11       iv.    altering tax records and other business documents,

12   including by use of false names and false social security numbers,

13   to conceal the bribery of Mattel employees;

14       Such actions are in violation of 18 U.S.C. § 1512 and 18

15   U.S.C. § 2, as alleged with greater particularity in the foregoing

16   paragraphs;

17   (d)  Influencing or Injuring Officer or Juror Generally:  Counter-

18   defendants MGA, MGA Entertainment (HK) Limited, MGA de

19   Mexico, Larian, Bryant, Machado and Does 4 through 10, as well

20   as some or all of the remaining members of the MGA Criminal

21   Enterprise, aided and abetted by each other, did seek to corruptly

22   impede, obstruct or influence the due administration of justice,

23   including without limitation by:

24       i.    Larian's and MGA's submission of false

25   information in sworn applications to the U.S. Copyright Office

26   and the U.S. Patent Office;

27

28

EXHIBIT 7
PAGE 79

-76-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

ii.     Larian repeatedly giving false testimony during the Phase 1 trial that Bryant told him (and that Larian believed) that Bryant had not created Bratz while employed by Mattel;

iii.     Larian's and MGA's submission of false statements regarding MGA's ability to receive outside funding and numerous false statements regarding its financial condition in this action;

Such actions are in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)     <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, as well as some or all of the remaining members of the MGA Criminal Enterprise and IGWT Criminal Enterprise, aided and abetted by each other, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, *i.e.* bribery, in violation of the laws of the State of California, *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing and following paragraphs; money laundering in violation of 18 U.S.C. § 1956(a), as alleged with greater particularity in the foregoing and following paragraphs; and engaging in monetary transactions involving property derived from unlawful activities in violation of 18

EXHIBIT 7
PAGE 770

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1    U.S.C. § 1957(a), as alleged with greater particularity in the
2    foregoing and following paragraphs;
3       (f)  <u>Money Laundering</u>:  Counter-defendants MGA, MGA
4    Entertainment (HK) Limited and Larian and Does 4 through 10,
5    as well as some or all of the remaining members of the MGA and
6    IGWT Criminal Enterprises, aided and abetted by each other,
7    willfully engaged in financial transactions which were intended to
8    conceal or disguise the nature, the location, the source, the
9    ownership, or the control of the ill-gotten proceeds of their
10    criminal activities or were intended to further promote the
11    carrying on of their criminal activities, all in violation of 18
12    U.S.C. § 1956(a), as alleged with greater particularity in the
13    foregoing paragraphs;
14       (g)  <u>Engaging in Monetary Transactions in Property Derived from</u>
15    <u>Unlawful Activity</u>:  Counter-defendants MGA, MGA
16    Entertainment (HK) Limited, Larian, and Does 4 through 10, as
17    well as some or all of the remaining members of the MGA and
18    IGWT Criminal Enterprises, aided and abetted by each other,
19    willfully engaged in monetary transactions in criminally derived
20    property of a value greater than $10,000 derived from their
21    unlawful criminal activities, all in violation of 18 U.S.C. §
22    1957(a), as alleged with greater particularity in the foregoing
23    paragraphs;
24       (h)  <u>Concealment of Assets</u>:  Counter-defendants MGA, MGA
25    Entertainment (HK) Limited, Larian, and Does 4 through 10, as
26    well as some or all of the remaining members of the MGA and
27    IGWT Criminal Enterprises, aided and abetted by each other,
28    willfully sought to transfer or conceal property, and/or concealed,

EXHIBIT 7
PAGE 271

-78-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

destroyed, mutilated, falsified or made false entries in recorded information relating to such property, in contemplation of a bankruptcy proceeding, all in violation of 18 U.S.C. § 152(7) & (8), as alleged with greater particularity in the foregoing paragraphs;

(i)   <u>Criminal Copyright Infringement</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, as well as some or all other members of the MGA and IGWT Criminal Enterprises, aided and abetted by each other, willfully infringed and continue to willfully infringe Mattel's copyrights, including without limitation with respect to documents containing Mattel trade secret and confidential information and Bratz works created by Bryant and others while Mattel employees, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

142.   The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

143.   MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf. MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

144.   Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

EXHIBIT 7
PAGE 222

i05.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

145.  As a result of the violations of 18 U.S.C. § 1962(c), by MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois, Castilla and the Other Former Employees, and IGWT Group, IGWT 826 Investments, Lexington, Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian Makabi, The Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust and The Shirin Larian Makabi Qualified Annuity Trust, Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

### Third Counterclaim

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

146.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 145, above, as though fully set forth at length.

147.  Beginning at various times from approximately 1999 through the filing of this Third Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, Castilla and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

EXHIBIT __7__

PAGE ___223___

05.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

148.  These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

149.  Beginning at least as early as 2007 through the filing of this Third Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, and Does 4 through 10, and IGWT Group, IGWT 826 Investments, Lexington, Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Angela Larian, Jahangir Eli Makabi, Shirin Larian Makabi, The Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust and The Shirin Larian Makabi Qualified Annuity Trust, willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

150.  These conspirators were employed by and associated-in-fact with the IGWT Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, MGA, MGA Entertainment (HK) Limited, Larian, and IGWT Group, IGWT 826 Investments, Lexington, Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The Larian Living

EXHIBIT  7
PAGE  224

Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified Annuity Trust and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the IGWT Criminal Enterprise's affairs through a pattern of racketeering activity.

151. The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), includes acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2; conspiracy to commit perjury and acts of influencing or injuring officer or juror generally in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; acts of unlawful concealment of assets in violation of 18 U.S.C. § 152(7) & (8); acts of money laundering in violation of 18 U.S.C. § 1956; acts of engaging in monetary transactions in property derived from unlawful activities in violation of 18 U.S.C. § 1957; and acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A).

152. Counter-defendants and the other members of the MGA Criminal Enterprise schemed to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information and infringe Mattel's rights and conceal such misconduct, as more fully set forth in the foregoing paragraphs. Further, counter-defendants and the other members of the IGWT Criminal Enterprise schemed to infringe Mattel's rights and transfer, transport or launder the ill-gotten gains from their infringements and the MGA and Bratz Criminal Enterprises' thefts and infringements, and secret MGA assets and purportedly obtain priority over Mattel, as more fully set forth in the foregoing paragraphs.

1    153.  In furtherance of this unlawful conspiracy, and to effect its

2  objectives, Counter-defendants and various co-conspirators committed numerous

3  overt acts, including but not limited to those set forth in the foregoing paragraphs.

4    154.  Mattel has been injured in its business or property as a direct and

5  proximate result of the Counter-defendants' and the other enterprise members'

6  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

7  constituting the pattern of racketeering activity.

8    155.  As a result of the conspiracies between and among all Counter-

9  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

10  suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

11  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

12  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

13  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

14    **Fourth Counterclaim**

15    **Misappropriation of Trade Secrets**

16    *(Cal. Civ. Code § 3426 et seq.)*

17    **(Against Counter-defendants MGA, MGA de Mexico,**

18    **Larian, Machado and Does 4 through 10)**

19    156.  Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 155, above, as though fully set forth at length.

21    157.  As used herein, "Trade Secret Material" shall mean the

22  documents, materials and information stolen by Machado, Trueba, Vargas,

23  Brisbois, Castilla, the Other Former Employees, and other persons acting for, on

24  behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-

25  defendants, the Trade Secret Materials gave Mattel a significant competitive

26  advantage over its existing and would-be competitors, including MGA.  This

27  advantage, as to MGA, has now been compromised as a result of Counter-

28  defendants' unlawful activities.

EXHIBIT  7
PAGE  226

THIRD AMENDED ANSWER AND COUNTERCLAIMS

158. Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

159. Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

160. Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

161. Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and without compensation, permission, or licenses for the benefit of themselves and others.

162. Counter-defendants' conduct was, is, and remains willful and wanton, and was taken with blatant disregard for Mattel's valid and enforceable rights.

163. Counter-defendants' wrongful conduct has caused and, unless enjoined by this Court, will continue in the future to cause irreparable injury to Mattel. Mattel has no adequate remedy at law for such wrongs and injuries. Mattel

505.07209/2875224.1

EXHIBIT ___7___

PAGE ___787___

-84-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   is therefore entitled to a permanent injunction restraining and enjoining Counter-

2   defendants, and each of them, as well as their agents, servants, and employees, and

3   all persons acting thereunder, in concert with, or on their behalf, from further using

4   in any manner Mattel's trade secrets.

5         164. In addition, as a proximate result of Counter-defendants'

6   misconduct, Mattel has suffered actual damages, and Counter-defendants have been

7   unjustly enriched.

8         165. The aforementioned acts of the Counter-defendants were willful

9   and malicious, including in that Counter-defendants misappropriated Mattel's trade

10   secrets with the deliberate intent to injure Mattel's business and improve their own.

11   Mattel is therefore entitled to enhanced damages. Mattel is also entitled to

12   reasonable attorney's fees.

### Fifth Counterclaim

### Breach of Contract

### (Against Bryant)

16         166. Mattel repeats and realleges each and every allegation set forth in

17   paragraphs 1 through 165, above, as though fully set forth at length.

18         167. Pursuant to his Employment Agreement, Bryant agreed that he

19   would not, without Mattel's express written consent, engage in any employment or

20   business other than for Mattel or assist in any manner any business competitive

21   with the business or future business plans of Mattel during his employment with

22   Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to

23   Mattel all right, title and interest in "inventions," including without limitation

24   "designs" and other works that he conceived, created or reduced to practice during

25   his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,

26   Bryant certified that, other than as disclosed, he had not worked for any competitor

27   of Mattel and had not engaged in any business venture or transaction involving a

28   Mattel competitor that could be construed as a conflict of interest. Bryant further

1   promised that he would notify his supervisor immediately of any change in his
2   situation that would cause him to change any of the foregoing certifications or
3   representations.

4        168.  The Employment Agreement and the Conflict Questionnaire are
5   valid, enforceable contracts, and Mattel has performed each and every term and
6   condition of the Employment Agreement and Conflict Questionnaire required to be
7   performed by Mattel.

8        169.  Bryant materially breached the foregoing contracts with Mattel,
9   in that, among other things, he secretly aided, assisted and worked for a Mattel
10  competitor during his employment with Mattel without the express written consent
11  of Mattel.

12       170.  As a consequence of Bryant's breach, Mattel has suffered and
13  will, in the future, continue to suffer damages in an amount to be proven at trial.
14  Such damages include, without limitation, the amounts paid by the competitor to
15  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during
16  his Mattel employment; the amount that Mattel paid Bryant during the time he
17  wrongfully worked with MGA; the value of information and intellectual property
18  owned by Mattel which Bryant provided to MGA; the value of the benefits that
19  MGA obtained from Bryant during the time he was employed by Mattel; and the
20  value of the benefits that MGA obtained from Bryant as a result of the work he
21  performed for or with MGA during his Mattel employment.

22       171.  Bryant's conduct has caused, and unless enjoined will continue to
23  cause, irreparable injury to Mattel that cannot be adequately compensated by
24  money damages and for which Mattel has no adequate remedy at law.  Bryant
25  specifically acknowledged in his Employment Agreement that his breach of the
26  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be
27  entitled to injunctive relief to enforce this Agreement, in addition to damages and
28  other available remedies."  Accordingly, Mattel is entitled to orders mandating

EXHIBIT ___7___
PAGE ___221___

-86-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1 Bryant's specific performance of his contracts with Mattel and restraining Bryant
2 from further breach.

### Sixth Counterclaim

### Intentional Interference with Contract

### (Against MGA, Larian and Does 4 through 10)

6   172. Mattel repeats and realleges each and every allegation set forth in
7 paragraphs 1 through 171, above, as though fully set forth at length.

8   173. Valid agreements existed between Mattel and the Mattel
9 employees who MGA induced to steal or was complicit in stealing Mattel trade
10 secrets and other proprietary and confidential information and who MGA bribed or
11 induced to work for or assist MGA while Mattel employees (collectively, the
12 "Mattel Employees"), including without limitation Bryant, Brawer, Machado,
13 Trueba, Vargas, Brisbois, Castilla, Cabrera, Morales, Salazar, and the Other Former
14 Employees.

15   174. At all times herein mentioned, MGA, Larian and Does 4 through
16 10 knew that the Mattel Employees had a duty under their agreements not to work
17 for or assist any competitor of Mattel, such as MGA.  In addition, at all times
18 mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had
19 assigned to Mattel, and was obligated to disclose to Mattel all inventions, including
20 designs and other works, created, conceived or reduced to practice during their
21 employment with Mattel.

22   175. Despite such knowledge, Counter-defendants MGA, Larian and
23 Does 4 through 10 intentionally and without justification solicited, induced and
24 encouraged the Mattel Employees to breach their contracts with Mattel.

25   176. As a direct and proximate result of Counter-defendants' efforts
26 and inducements, the Mattel Employees did breach their contracts with Mattel.

27

28

EXHIBIT __7__
PAGE ___270___

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   177. As a result of said breaches, Mattel has suffered damages and

2   will imminently suffer further damages, including the loss of its competitive

3   position and lost profits, in an amount to be proven at trial.

4   178. Counter-defendants performed the aforementioned conduct with

5   malice, fraud and oppression, and in conscious disregard of Mattel's rights.

6   Accordingly, Mattel is entitled to recover exemplary damages from Counter-

7   defendants in an amount to be determined at trial.

8                              **Seventh Counterclaim**

9                              **Breach of Fiduciary Duty**

10                            **(Against Bryant and Machado)**

11  179. Mattel repeats and realleges each and every allegation set forth in

12  paragraphs 1 through 178, above, as though fully set forth at length.

13  180. Bryant and Machado held positions of trust and confidence with

14  Mattel. In their positions, Bryant and Machado had access to and were entrusted

15  with Mattel's proprietary and confidential information, supervised the work of

16  others, exercised discretion and worked independently in many of their job

17  assignments and duties. In their positions, Bryant and Machado also represented

18  Mattel in its dealings with third parties and, in actions in the course and scope of

19  their employment with Mattel, were agents of Mattel. They confirmed their

20  relationship of trust with Mattel in respective employee agreements. Bryant and

21  Machado thus owed Mattel a fiduciary duty that included, but was not limited to,

22  an obligation not to take any action that would be contrary to Mattel's best interests

23  or that would deprive Mattel of any opportunities, profit or advantage which Bryant

24  or Machado might bring to Mattel.

25  181. Bryant breached his fiduciary duty to Mattel in that, while

26  employed by Mattel, he secretly aided and assisted a competitor of Mattel,

27  including without limitation by entering into an agreement with a Mattel

28  competitor. As alleged above, Bryant also breached the aforementioned duty by

1    using Mattel property and resources for the benefit of, and to aid and assist, himself

2    personally and MGA.

3           182.   Machado breached his fiduciary duty to Mattel, in that while

4    employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

5    among other things, misappropriating Mattel trade secret and proprietary

6    information and providing said information to officers of MGA.  Machado also

7    breached the aforementioned duty by using Mattel property and resources for the

8    benefit of, and to aid and assist, himself personally and MGA.

9           183.   As a direct and proximate result of Counter-defendants' wrongful

10   conduct, Mattel has incurred damages in an amount to be determined at trial.

11          184.   Counter-defendants acted with malice, fraud and oppression, and

12   in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an

13   award of exemplary damages against Counter-defendants in an amount to be

14   determined at trial.

15          185.   Furthermore, Counter-defendants' conduct has caused, and unless

16   enjoined will continue to cause, irreparable injury to Mattel that cannot be

17   adequately compensated by money damages and for which Mattel has no adequate

18   remedy at law.  Accordingly, Mattel is entitled to an order restraining further

19   breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

20   from continuing to benefit from such breach.

21   <div align="center">**Eighth Counterclaim**</div>

22   <div align="center">**Aiding and Abetting Breach of Fiduciary Duty**</div>

23   <div align="center">**(Against MGA, Larian and Does 4 through 10)**</div>

24          186.   Mattel repeats and realleges each and every allegation set forth in

25   paragraphs 1 through 185, above, as though fully set forth at length.

26          187.   At all times herein mentioned, MGA, Larian and Does 4 through

27   10 knew that Bryant held a position of trust and confidence at Mattel.  At all times

28   herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a

EXHIBIT ___7___

PAGE ___232___

-89-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  fiduciary duty to Mattel not to take any action that would be contrary to Mattel's

2  best interests, including but not limited to secretly developing and designing Bratz

3  while employed by Mattel and by secretly assisting Larian and MGA .

4  　　　　188.  At all times herein mentioned, MGA, Larian and Does 4 through

5  10 knew that the Mattel Employees (excluding Bryant) held positions of trust and

6  confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4

7  through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary

8  duty to Mattel not to take any action that would be contrary to Mattel's best

9  interests, including but not limited to taking confidential trade secret information

10  from Mattel's premises and providing that information to a competitor.

11  　　　　189.  Despite such knowledge, Counter-defendants MGA, Larian and

12  Does 4 through 10 intentionally and without justification solicited, encouraged,

13  aided and abetted and gave substantial assistance to the Mattel Employees to breach

14  their fiduciary duties to Mattel, knowing that their conduct would constitute

15  breaches of their fiduciary duties to Mattel.

16  　　　　190.  As a direct and proximate result of Counter-defendants' efforts,

17  the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has

18  incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to

19  recover compensatory damages in an amount to be determined at trial.

20  　　　　191.  In taking the aforesaid actions, MGA, Larian and Does 4 through

21  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

22  rights.  Accordingly, Mattel is entitled to recover exemplary damages from

23  Counter-defendants in an amount to be determined at trial.

24  　　　　　　　　　　**Ninth Counterclaim**

25  　　　　　　　　　**Breach of Duty of Loyalty**

26  　　　　　　　　**(Against Bryant and Machado)**

27  　　　　192.  Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 191, above, as though fully set forth at length.

EXHIBIT ___7___

PAGE ___233___

05.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

193. As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel. Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

194. Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor. As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

195. As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

196. Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

197. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

198. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

EXHIBIT 7
PAGE 734

THIRD AMENDED ANSWER AND COUNTERCLAIMS
05.07209/2875224.1

### Tenth Counterclaim

### Aiding and Abetting Breach of Duty of Loyalty

### (Against MGA, Larian and Does 4 through 10)

199. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 198, above, as though fully set forth at length.

200. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel. MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors during the course of his employment with Mattel.

201. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel Employees (excluding Bryant) not to compete with Mattel or assist a competitor of Mattel during their Mattel employment.

202. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their duties of loyalty to Mattel, knowing that their conduct would constitute breaches of their duties of loyalty to Mattel.

203. As a further consequence of Counter-defendants' efforts, Mattel has suffered injury and is entitled to compensatory damages in an amount to be proven at trial.

EXHIBIT 7
PAGE 235

1    204.  In taking the aforesaid actions, MGA, Larian and Does 4 through

2    10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

3    rights.  Accordingly, Mattel is entitled to recover exemplary damages from

4    Counter-defendants in an amount to be determined at trial.

5                              **Eleventh Counterclaim**

6                                    **Conversion**

7                        **(Against All Counter-defendants)**

8    205.  Mattel repeats and realleges each and every allegation set forth in

9    paragraphs 1 through 204, above, as though fully set forth at length.

10    206.  Counter-defendants wrongfully converted Mattel property and

11    resources by appropriating and using them for their own benefit and gain and for

12    the benefit and gain of others, without the permission of Mattel.

13    207.  Mattel was entitled to, among other things, the exclusive right

14    and enjoyment in property and tangible materials owned by Mattel, including

15    without limitation such proper and materials that were created by Bryant while he

16    was a Mattel product designer.  Such property was taken by Bryant from Mattel to

17    further his own interests and, in at least some instances, provided by Bryant to

18    Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

19    208.  In addition, Counter-defendants wrongfully converted Mattel's

20    property by removing the Trade Secret Materials in electronic and paper form from

21    Mattel's offices.  Counter-defendants did so without Mattel's permission and

22    continue to possess them.

23    209.  As a direct and proximate result of Counter-defendants' wrongful

24    conversion of Mattel property, including those relating to Bratz and Mattel's Trade

25    Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to

26    recover compensatory damages in an amount to be determined at trial.

27    210.   As a result of Counter-defendants' acts of conversion, Mattel is

28    entitled to damages in an amount sufficient to indemnify Mattel for the loss

1   suffered, which is not measured by the value of the property misappropriated, but

2   includes the lost profits that Mattel suffered as a result of the conversion or,

3   alternatively, the profits generated by the Counter-defendants that would not have

4   been generated but for the conversion.  Only such a measure of damages would

5   fully and fairly compensate Mattel for the injury it suffered due to Counter-

6   defendants' acts of conversion.

7          211.  Counter-defendants performed the aforementioned conduct with

8   malice, fraud and oppression, and in conscious disregard of Mattel's rights.

9   Accordingly, Mattel is entitled to recover exemplary damages from Counter-

10   defendants in an amount to be determined at trial.

11          212.  Furthermore, Counter-defendants' conduct has caused, and unless

12   enjoined will continue to cause, irreparable injury to Mattel that cannot be

13   adequately compensated by money damages and for which Mattel has no adequate

14   remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-

15   defendants from further conversion of Mattel property and resources and/or

16   restraining Counter-defendants from continuing to benefit from such conversion.

17                         **Twelfth Counterclaim**

18                         **Unfair Competition**

19          **(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

20                    **(Against All Counter-defendants)**

21          213.  Mattel repeats and realleges each and every allegation set forth in

22   paragraphs 1 through 212, above, as though fully set forth at length.

23          214.  Section 17200 of the California Business and Professions Code

24   prohibits unfair competition, including "any unlawful, unfair or fraudulent business

25   act or practice . . . ."

26          215.  By engaging in the foregoing conduct, Counter-defendants have,

27   individually and in combination, engaged in unlawful, unfair and/or fraudulent acts

28   of unfair competition in violation of both the common law of the state of California

1   and *Cal. Bus. & Prof. Code* § 17200 *et seq*.  Such conduct included, without

2   limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code*

3   § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).

4   Such conduct also included, without limitation, MGA's and Larian's disparagement

5   of Mattel's products and misrepresentations as alleged above.

6          216.  As a result of the aforementioned conduct, Mattel has suffered

7   damages and will imminently suffer further damages, including but not limited to

8   lost profits in an amount to be proven at trial.  No adequate remedy at law exists for

9   the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel

10  is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.

11  Mattel is also entitled to recover compensatory and exemplary damages pursuant to

12  the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

### Thirteenth Counterclaim

**Avoidance of Intentional and Constructive Fraudulent Transfers Under**

**Uniform Fraudulent Transfer Act**

**(Common Law and *Cal. Civil Code* §§ 3439 *et seq*.)**

**(Against MGA and Larian)**

18         217.  Mattel repeats and realleges each and every allegation set forth in

19  paragraphs 1 through 216, above, as though fully set forth at length.

20         218.  Mattel is a creditor of MGA and Larian, and his alter-egos,

21  because Mattel has substantial claims against MGA and Larian, including but not

22  limited to claims that have already resulted in a jury verdict in this action in

23  Mattel's favor.  *Cal. Civil Code* § 3439.01(b), (c).

24         219.  After Mattel's claims had been asserted and continuing until the

25  Phase 1A verdict and dates thereafter, MGA and Larian engaged in fraudulent

26  transfers, *Cal. Civ. Code* § 3439.01(i), 3439.04, 3439.05, including, without

27  limitation, by transferring tens of millions of dollars of Bratz inventory from MGA

28  to the Larian-controlled IGWT Group.  These transfers were at massive discounts,

1 and on information and belief MGA did not receive reasonably equivalent value for

2 the Bratz inventory that it transferred.

3      220. On information and belief, and based on the foregoing, these

4 fraudulent transfers were made with actual intent to hinder, delay, and/or defraud

5 MGA's and Larian's creditor, Mattel.

6      221. MGA has represented that it was on the verge of filing

7 bankruptcy. If true, on information and belief at the time of the transfers MGA was

8 unable to pay its debts as they became due and was engaged in a transaction, or was

9 about to engage in a business, for which its remaining assets were unreasonably

10 small, and MGA was insolvent. On information and belief, MGA intended to

11 incur, or believed or reasonably should have believed it would incur, debts beyond

12 its ability to pay as they became due.

13      222. By virtue of the foregoing, MGA's and Larian's fraudulent

14 transfers, including without limitation the transfers of Bratz inventory to the IGWT

15 Group, should be avoided, the transferred assets and their proceeds, including

16 without limitation the Bratz inventory and/or and the proceeds of the sales of any

17 Bratz inventory by IGWT Group, should be restored to MGA and attached, and

18 injunctions should issue against any further fraudulent transfers and against any

19 disposition of the transferred assets and/or their proceeds, pursuant to *Cal. Civil*

20 *Code* § 3439.07.

### Fourteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

24      223. Mattel repeats and realleges each and every allegation set forth in

25 paragraphs 1 through 222, above, as though fully set forth at length.

26      224. As shown in the foregoing paragraphs above, an actual

27 controversy exists between Mattel and Counter-defendants regarding Counter-

28 defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

225. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

226. Mattel seeks a declaration of the Court that any and all agreements between Bryant and/or any other individuals then-employed by Mattel, on the one hand, and MGA, on the other hand, in which Bryant or any of them purport to assign to MGA any right, title or interests in any work or properties that they conceived, created or reduced to practice while Mattel employees, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant and/or any other such individuals had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1. For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs, works or properties conceived, made, created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2. For a declaration that any agreement between Bryant and/or by any others then-employed by Mattel, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant or such others then-employed by Mattel purported to assign any right, title or interests in any work or properties that they

EXHIBIT 7

PAGE 240

-97-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1 | conceived, made, created or reduced to practice while employed by Mattel,

2 | including but not limited to the Bratz designs, is void and of no effect;

3 |           3.     For an Order enjoining and restraining Counter-defendants, their

4 | agents, servants and employees, and all persons in active concert or participation

5 | with them, from further wrongful conduct, including without limitation from

6 | imitating, copying, distributing, importing, displaying, preparing derivatives from

7 | and otherwise infringing Mattel's copyright-protected works;

8 |           4.     For an Order, pursuant to 17 U.S.C. § 503(a) and other

9 | applicable law, impounding all of Counter-defendants' products and materials that

10 | infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

11 | by which copies of the works embodied in Mattel's copyrights may be reproduced

12 | or otherwise infringed;

13 |          5.     For an Order mandating that Counter-defendants return to Mattel

14 | all tangible items, documents, designs, diagrams, sketches or any other

15 | memorialization of inventions conceived, created, made or reduced to practice

16 | during Bryant's employment with Mattel as well as all Mattel property converted

17 | by Counter-defendants;

18 |          6.     For an Order mandating specific performance by Bryant to

19 | comply with and satisfy Bryant's contractual obligations to Mattel;

20 |          7.     That Mattel be awarded, and Counter-defendants be ordered to

21 | disgorge, all payments, revenues, profits, monies and royalties and any other

22 | benefits derived or obtained as a result of the conduct alleged herein, including

23 | without limitation of all revenues and profits attributable to Counter-defendants'

24 | infringement of Mattel's copyrights under 17 U.S.C. § 504;

25 |          8.     For an accounting of all profits, monies and/or royalties from the

26 | exercise of ownership, use, distribution, sales and licensing of Bratz;

27 |          9.     For the imposition of a constructive trust over Bratz, including

28 | without limitation all rights and benefits relating thereto and registrations and

EXHIBIT   7
PAGE ____ 241

-98-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1   applications for registrations relating thereto made or filed by Counter-defendants

2   and third parties, and all profits, monies, royalties and any other benefits derived or

3   obtained from Counter-defendant's exercise of ownership, use, sale, distribution

4   and licensing of Bratz;

5          10.   That Mattel recover its actual damages and lost profits;

6          11.   That Counter-defendants be ordered to pay exemplary damages

7   in a sum sufficient to punish and to make an example of them, and deter them and

8   others from similar wrongdoing;

9          12.   That Counter-defendants be ordered to pay treble its general and

10  special damages, plus interest, costs and attorney's fees incurred by reason of

11  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

12         13.   That Counter-defendants be ordered to pay double damages due

13  to their willful and malicious misappropriation of Mattel's trade secrets with

14  deliberate intent to injure Mattel's business and improve its own;

15         14.   That Counter-defendants pay to Mattel the full cost of this action

16  and Mattel's attorneys' and investigators' fees;

17         15.   For an Order that Larian is liable for all wrongs of his agents,

18  alter-egos or others committed on his behalf;

19         16.   That Counter-defendants' fraudulent transfers, including their

20  transfers of Bratz inventory, be avoided and set aside; the transferred assets and

21  their proceeds be restored to MGA and attached and/or subjected to a constructive

22  trust for Mattel's benefit; and Counter-defendants be enjoined against any further

23  fraudulent transfers and any disposition of the transferred assets and/or their

24  proceeds; and

25  //

26  //

27  //

28  //

EXHIBIT 7
PAGE 242

1505.07209/2875224.1

-99-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1           17.   That Mattel have such other and further relief as the Court may

2 deem just and proper.

3

4 DATED:  May 22, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                        By /s/ John B. Quinn

7                          John B. Quinn
                         Attorneys for Defendant and Counter-
8                          claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __7__

PAGE __243__

505.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1

## DEMAND FOR JURY TRIAL

2

3        Mattel, Inc. respectfully requests a jury trial on all issues triable

4   thereby.

5

6   DATED:  May 22, 2009              QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
7

8                                     By /s/ John B. Quinn
9                                        John B. Quinn
                                         Attorneys for Defendant and Counter-
10                                       claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    EXHIBIT __7__
28                                    PAGE _244_

**EXHIBIT A**

EXHIBIT 7
PAGE 245

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: [i] I will maintain the confidentiality of the Company's trade secrets; [ii] I will use those trade secrets for the exclusive benefit of the Company; [iii] inventions that I create will be owned by the Company; [iv] my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and [v] when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either [1] relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or [2] result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____     MATTEL, INC.   By _____ Signature

Employee Name (print) CARTER H. BRYANT         Name of Witness (print) TERESA NEWCOMB

Date 01/04/99

EXHIBIT 7
PAGE 246

EXHIBIT A PAGE 102

M 0001622