QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | [To Be Heard By Discovery Master Robert O'Brien Pursuant to Order of January 6, 2009] |
| AND CONSOLIDATED ACTIONS | REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR LIMITED RECONSIDERATION OF PHASE 2 DISCOVERY MATTER ORDER NO. 33 |
| | [Declaration Of B. Dylan Proctor Filed Concurrently Herewith] |
| | Date: TBD<br>Time: TBD<br>Place: Arent Fox LLP |
| | **Phase 2:**<br>Discovery Cut-off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

**[PUBLIC REDACTED]**

07975/3008475.1

## Preliminary Statement

Reconsideration of portions of Order No. 33 is proper and should be granted for the same reasons Judge Larson recently ordered reconsideration of portions of Order No. 27. Mattel's Third Amended Answer and Counterclaims ("TAAC"), filed on May 22, 2009, "dramatically altered" the analysis of discovery issues, requiring discovery issues related to the Omni 808 transactions to be "re-balanc[ed] in light of the recently filed TAAC."[1] Judge Larson's decision concerning Order No. 27's restrictions on discovery as to Lexington Financial reflected the central role that entity plays (and related entities play) in Mattel's TAAC. Mr. Mashian is one of the few sources of information known to Mattel as to both Lexington and Vision Capital. He is one of the only individuals likely able to identify their principals, explain what their relationship was and is to MGA and Larian, and the like. He is also likely *the only* person who can fully explain his own role in the transactions, which is directly at issue (Mashian being named as part of the RICO conspiracy at least 6 times in the TAAC).

Mr. Mashian does not deny that he has such information highly relevant to the allegations of the TAAC. Instead, Mr. Mashian argues that Rule 7-18 bars consideration of this argument because Mattel chose to raise it by seeking reconsideration, urging there is nothing "new" about the allegations in Mattel's TAAC. That misses the point. The TAAC is indisputably the new fact that justifies reconsideration. Judge Larson's ruling requiring reconsideration of Order No. 27 further highlights the obvious flaws in Mr. Mashian's argument since it makes clear that the TAAC is a new fact that justifies reexamination. Mr. Mashian also suggests the Discovery Master's prior ruling rested solely on privilege grounds, and therefore the allegations of the TAAC are irrelevant. But the Discovery Master's ruling was

---

[1] July 9, 2009 Order at 5, attached to the concurrently filed Declaration of B. Dylan Proctor ("Proctor Decl.") as Exhibit A.

based on a balancing of the relevance of the information to Mattel's case as against burden on Mr. Mashian. Prior to the TAAC, the Discovery Master concluded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] With the TAAC, he has become an important witness and alleged participant in key aspects of the RICO enterprise alleged in the TAAC. He should be made available for deposition.

## Argument

### I. MATTEL PROPERLY SEEKS RECONSIDERATION BASED ON THE ALLEGATIONS OF THE TAAC

Mr. Mashian does not dispute or even address the detailed new factual allegations in the TAAC, as set forth in Mattel's Motion. See Motion at 4-5. As the Court observed in granting Mattel leave to file the TAAC, "the Wachovia/Omni 808 financial transactions" -- in which Mr. Mashian is alleged to be implicated -- "are alleged as *new predicate acts* in an ongoing RICO conspiracy."[3] The Court further noted that Mattel has supported its new allegations with "an unprecedented amount of evidence."[4] Mr. Mashian does not dispute his central role in transactions that are now at the heart of Mattel's Counterclaims, nor does he deny that he himself is alleged to be a central player in a RICO scheme at issue in Phase 2. Instead, Mr. Mashian claims that reconsideration is improper because "the allegations in the TAAC are not based on new facts."[5] Whether or not Mattel's allegations are "based on new facts" is irrelevant here -- *the filing of the TAAC* is the new fact that warrants reconsideration. And the purportedly "old" facts were not allegations in a complaint before, which was both MGA's and the Omni parties' repeated refrain to the Discovery Master previously as to why Mattel should not get discovery into the

---

[2] See Order No. 33 at 38, Proctor Decl., Ex. J.
[3] May 21 Order at 6, n.4 (emphasis added).
[4] Id. at 6.
[5] See Opp. at 1:16-17; 5:25-26; 6:27.

Wachovia loan acquisition and other financial transactions. Moreover, Mr. Mashian's contention is factually wrong. Mr. Mashian and his colleagues have been fighting the discovery that would establish the new facts Mattel has alleged at every turn; Mr. Mashian's counsel went so far as to mislead the Court[6] and the Discovery Master[7] by denying that Larian financed any of the acquisition and wrongly attack the character of the Auditor[8] in an apparent effort to obscure the relationship between the Omni entities and Larian. These may not be "new facts" to Mr. Mashian and his counsel, but they certainly qualify as "new facts" to Mattel and the Court.

Contrary to Mr. Mashian's argument that Mattel's motion is "procedurally defective" (Opp. at 3), the Court recently adopted precisely the reconsideration approach Mattel has taken here. In its July 9, 2009 Order ordering reconsideration of portions of Discovery Master Order No. 27,[9] the Court specifically noted that reconsideration was in the interest of "judicial economy."[10] In ordering reconsideration, the Court held that "the filing of the TAAC dramatically altered the calculus" for discovery disputes[11] and that the TAAC "significantly heighten[ed] the relevance of the issue of how the MGA parties and the parties represented by Bingham [which includes Mr. Mashian, Lexington, and Omni] may be related."[12] Mr. Mashian's bald statement that "there are no new facts" flies in the face of both the TAAC and the Court's July 9, 2009 Order.

---

[6] February 11, 2009 Hearing at 71:16 to 72:5, Proctor Decl., Ex. B.
[7] March 4, 2009 Hearing at 51:3-8, Proctor Decl., Ex. C.
[8] July 9, 2009 Order at 5-14, Proctor Decl., Ex. A.
[9] See July 9, 2009 Order at 3-5, Proctor Decl., Ex. A.
[10] Id. at 5.
[11] Id.
[12] Id.

## II. MATTEL'S NEW ALLEGATIONS IN THE TAAC PLACE MR. MASHIAN'S KNOWLEDGE DIRECTLY AT ISSUE

Mr. Mashian argues that Mattel's Motion does nothing to alter the Discovery Master's basis for quashing the subpoena because the Discovery Master based his decision on the attorney-client privilege, not relevance. Yet Mr. Mashian acknowledges that the Discovery Master ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[13] The new claims and allegations in the TAAC dramatically alter that balance.

The Omni parties, and the individuals involved with them, are central figures in the TAAC. The TAAC identifies Mr. Mashian *by name* no fewer than 6 times[14] and identifies Lexington by name no fewer than 11 times.[15] Mr. Mashian is named in the TAAC as a RICO participant.[16] Mattel still does not even have evidence of who Lexington Financial's principals are because of the Omni parties' and MGA's stonewalling; Mr. Mashian can provide that and other information given his responsibility for filing UCC statements in California on behalf of Lexington.[17] He can also of course provide relevant information about his own role in the RICO enterprise and its conduct. None of this is disputed in the opposition. Nor has Mr. Mashian submitted any evidence of burden, as required. July 9, 2009 Order at 4 ("[A]lthough Mattel bears an initial burden of establishing relevancy, the party resisting discovery thereafter has the burden of establishing that discovery should be

---

[13] Opp. at 9:2-5, citing Order No. 33 at 37 (emphasis added).
[14] TAAC, ¶¶ 19, 136, 138, 145, 149, 150.
[15] TAAC, ¶¶ 18, 108, 109, 111, 114, 117, 136, 138, 145, 149, 150.
[16] TAAC, ¶¶ 136, 150.
[17] See Declaration of Michael T. Zeller filed in support of Mattel's Motion of Mattel Inc. for Limited Reconsideration of Phase 2 Discovery Matter Order No. 33 ("Zeller Decl."), ¶ 2, and Exhibit A thereto.

denied" (citing authorities)); see also Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) ("the party who moves to quash a subpoena has the 'burden of persuasion' under Rule 45(c)(3)"); Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 534-6 (M.D. Fla. 2003).

In his Rule 26 analysis, balancing relevance and undue burden, the Discovery Master reasoned that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████[18] Clearly, the information sought by Mattel is no longer ████████████ Mr. Mashian is a named participant in a RICO scheme alleged in the TAAC and may well be the only person who has knowledge and information regarding Lexington.

Mattel does not seek privileged communications from Mr. Mashian based on the current (inchoate) record at this time. What it does seek here, and has a right to, is non-privileged information regarding transactions between Lexington, Vision Capital, Omni and MGA. The fact that Mr. Mashian is an attorney does not make him immune from such discovery. "The purpose of the [attorney-client] privilege is to protect and foster the client's freedom of expression. It is not to permit an attorney to conduct his client's business affairs in secret." Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977), citing 8 Wigmore Evidence, § 2317 (McNaughten rev. 1961). An attorney cannot hide behind the attorney-client privilege in order to "create a cloak of secrecy around all the incidents" of a transaction. Fischel, 557 F.2d at 212. Thus, transactional counsel commonly are required to produce non-privileged documents and provide testimony where, as here, the transaction is at issue in litigation. Martin v. Neil, 2009 WL 1161009, at *1-2 (E.D.N.Y. April 28, 2009) (overruling privilege objections, and compelling

---

[18] See Order No. 33 at 36-37, Proctor Decl. Ex. J.

production from non-party attorney of "the non-privileged portion of his files associated with his representation of the sellers in the transactions at issue" and ordering privilege log for any documents withheld).[19] Likewise, transactional counsel commonly are required to sit for deposition to provide non-privileged facts in their possession. U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co., 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000) (compelling depositions of "transactional lawyers who represented their clients with respect to the legal issues which arose prior to the commencement of these actions" because "taking the depositions of these attorneys will not be disruptive of the litigation, or raise significant privilege issues"); Chase Manhattan Bank, N.A. v. T & N PLC, 156 F.R.D. 82, 84 (S.D.N.Y. 1994) (authorizing deposition of corporate counsel, rather than trial counsel, who may have exercised business as well as legal authority); Johnston Development Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 356 (D. N.J. 1990) (less potential harm to adversary process where corporate counsel, as opposed to trial counsel, is deposed).

Mattel is entitled to question Mr. Mashian about the non-privileged information he possesses, just as the Court and Discovery Master previously ruled that Mattel was entitled to question the attorneys who MGA chose to use for its business and business-related affairs.[20] Mr. Mashian is a transactional attorney who

---

[19] Such productions previously occurred in Phase 1 of this litigation. for example, Christensen Glaser Fink Jacobs Weil & Shapiro LLP produced documents on May 14, 2008; David Rosenbaum produced 6202 pages of documents in December 2007, January 2008, and June 2008; Anne Wang produced documents in December 2007, February 2007, and June 2008.

[20] In Phase 1, MGA called Mattel in-house counsel to testify, and Mattel deposed no fewer than 7 other attorneys in this litigation, pursuant to Court Orders. Mattel deposed Patricia Glaser on May 15, 2008, Lucy Arant on May 15, 2008, Daphne Gronich on May 2, 2008, Mitchell Kamarck on January 28, 2008, Samir Khare on September 20, 2007, January 23, 2008, January 25, 2008, and May 14, (footnote continued)

conducted or was involved in events material to Mattel's Phase 2 claims. He was directly involved in the structuring and negotiation of transactions that are expressly at issue in this litigation, and he is therefore a percipient witness (and an alleged co-conspirator) regarding those transactions. Mr. Mashian cannot be permitted to hide non-privileged information regarding transactions between MGA and Lexington behind a purported attorney-client "cloak of secrecy." To the extent Mashian believes any of Mattel's questions at deposition call for the disclosure of privileged communications, he may invoke the privilege -- but he is not immune from deposition by virtue of being a lawyer. Hunt Intern. Resources Corp. v. Binstein, 98 F.R.D. 689, 690 (D.C.Ill. 1983) ("[C]ompletely preventing the taking of a deposition [of an attorney] would tend to limit or fix the scope of the examination before it began and would usurp the court's role in deciding whether certain questions seek privileged information. The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary.").[21] Consistent with this very rule, the Court here has rejected blanket assertions of privilege as a basis for refusing discovery.[22]

---

2008, David Rosenbaum on January 25, 2008, and Anne Wang on January 28, 2008. Each of these depositions was specifically approved and/or compelled by the Court. The Court ordered the deposition of Patricia Glaser per its Order Granting in Part and Denying in Part Mattel's Motion to Compel Deposition and Production of Documents of Christensen Glaser Fink Jacobs Weil & Shapiro LLP, dated May 1, 2008 (Proctor Decl., Ex. D); the Court ordered the deposition of Lucy Arant per its Order Discharging Order to Show Cause on Conditions, dated February 25, 2008 (Proctor Decl., Ex. E), and per its Order Regarding Defendants' Motion to Quash Deposition Subpoenas, dated March 11, 2008 (Proctor Decl., Ex. F); and the Court ordered the deposition of Daphne Gronich per its Order Regarding Defendants' Motion to Quash Deposition Subpoenas, dated March 11, 2008 (Proctor Decl., Ex. F).

[21] See also Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("[B]lanket assertions of the privilege are 'extremely disfavored.' The privilege must ordinarily be raised as to each record sought to allow the court to rule (footnote continued)

07975/3008475.1

-7-
MATTEL'S REPLY ISO MOTION FOR LIMITED RECONSIDERATION OF ORDER NO. 33

The Discovery Master postulated in his Order that Mattel might be able to secure some information in Mr. Mashian's possession from Mr. Kadisha or Mr. Nemen, a point Mashian now latches onto.[23] But Mr. Mashian has submitted no evidence to sustain his burden of showing that each know the same details or retained the same documents, which alone defeats any basis for precluding his deposition on this ground.[24] Multiple requests also are often necessary to secure even a single copy of a document, and questions of multiple witnesses are necessary to secure a full story. In re PE Corp. Securities Litigation, 221 F.R.D. 20, 28 (D. Conn. 2003) ("While serving non-parties with identical document requests may result in duplication, such action would ensure discovery of all facts necessary to unearth the truth.").[25] Indeed, despite prior Orders of the Discovery Master

---

with specificity."); W.E. Green v. Baca, 219 F.R.D. 485, 491 (C.D. Cal. 2003) ("A party may not make a blanket assertion of privilege in response to a discovery request") (collecting numerous cases); Eureka Financial Corp. v. Hartford Accident and Indemnity Co., 136 F.R.D. 179, 182 (E.D. Cal. 1991) ("Whether a responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the resulting 'blanket objection' is decidedly improper").

[22] For example, in its January 25, 2008 Order (Proctor Decl., Ex. G), the Court held: "Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide sufficient information to enable the party seeking discovery to assess the claims of privilege and work product protection. The 'universally accepted' means of claiming that requested documents are privileged is by producing a document-by-document privilege log. Corvello [Gail] v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D.R.I. 2007)."

[23] Order No. 33 at 38 (Proctor Decl., Ex. J); Opp. at 6:16-26; 9:13-21.

[24] July 9, 2009 Order at 4 (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (reversing issuance of protective order based on failure of party resisting discovery to meet its burden by assertion that deposition would merely yield cumulative evidence)), Proctor Decl., Ex. A.

[25] These concerns are particularly compelling here. The entities at issue were created for the purpose of concealing the details and source of funds involved in the Wachovia debt acquisition. Mattel has yet even to learn the identities of
(footnote continued)

compelling them,[26] neither Neman or his alleged entity, Vision Capital, nor Kadisha or any of his alleged entities has produced a single loan or financial document between Lexington, on the one hand, and Vision Capital or Omni 808, on the other hand.[27] Moreover, those witnesses certainly will not be able to explain Mashian's role -- itself a relevant issue -- to the same extent that Mashian himself can. With only months remaining for discovery, and with Mr. Mashian now alleged in the TAAC to be a key participant in the transactions at issue, Mattel submits the possibility that some of the information he possesses might also be known by others is simply not a reason to deny essential discovery.

## III. MATTEL'S MOTION IS TIMELY

Although it is irrelevant to this motion, Mr. Mashian repeatedly argues that the deadline for Mattel to submit an *objection* to Discovery Master Order No. 33 was June 26, 2009. Opp. at 4, n.2. Mattel did not file an objection; it filed a motion for reconsideration, which as discussed above, is the proper approach given the new allegations of the TAAC. A motion for reconsideration to the Discovery Master is of course not subject to the deadline for filing objections to Discovery Master Orders with the District Court (which is governed by Federal Rule of Civil

---

Lexington's principals because of the uniform stonewalling by MGA, Larian, Omni 808, Vision Capital, and others combined with Lexington's use of a Caribbean secrecy haven to conceal those identities. Moreover, prior experience in this very case establishes that multiple requests, and especially requests to law firms, may be the only means of uncovering relevant information. In Phase 1, Mattel propounded numerous requests to determine what documents Farhad Larian had destroyed; it was only, finally, the attorneys who had retained a copy of a highly relevant email exchange between Farhad Larian and Isaac Larian discussing Isaac's instruction to hide original documents in litigation. See Trial Tr. at 3802:16 to 3803:12; 3816:13 to 3818:3, Proctor Decl., Ex. H; Trial Ex. 13380, Proctor Decl., Ex. I.

[26] See Phase 2 Discovery Master Order No. 27, dated May 6, 2009 at 39-40 (Zeller Decl., Ex. S); Order No. 33, dated May 18, 2009, at 59-60, Proctor Decl., Ex. J.

[27] Proctor Decl., ¶ 2.

1 Procedure 72(a)), but is governed instead by the standards for reconsideration set
2 forth in L.R. 7-18.
3         In any event, even if it mattered (and it does not), the objection deadline
4 had not passed. The deadline for objection to Order No. 33 was June 29, 2009, the
5 day Mattel e-filed and served this Motion for Limited Reconsideration.
6 Specifically, Discovery Master Order No. 33 was served May 18, 2009. Per Judge
7 Larson's May 21, 2009 Order imposing a stay from May 18 to June 12, all deadlines
8 were to be calculated by adding 26 calendar days onto the previous deadline.[28] The
9 time for objecting to Order No. 33 was previously June 2, 2009 – ten court days
10 after May 18, 2009. Adding 26 calendar days results in a deadline of June 28, 2009,
11 a Sunday. Pursuant to Federal Rule of Civil Procedure 6(a)(3), the deadline was
12 therefore extended to Monday, June 29, 2009. Mattel both e-filed the public version
13 of its Motion and email served the confidential version on June 29, 2009, in
14 accordance with the Discovery Master stipulation. Thus, although the deadline for
15 an objection to Order No. 33 is irrelevant here, Mattel's Motion for Limited
16 Reconsideration was nonetheless filed within the deadline for an objection as well.

## Conclusion

        For the foregoing reasons, Mattel, Inc. respectfully requests that the Discovery Master grant its motion in its entirety.

DATED: July 13, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor
   B. Dylan Proctor
   Attorneys for Mattel, Inc.

---

[28] See Omnibus Order, dated May 21, 2009 at 14, Proctor Decl. Ex. K.