# EXHIBIT 14

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5

6  Discovery Master

7

8                 UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
14        v.                               Case No. CV 05-2727

15  MATTEL, INC., a Delaware              **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                         **ORDER NO. 6, REGARDING:**
              Defendant.
17                                             **(1)  MOTION OF MATTEL, INC.
                                               TO COMPEL PRODUCTION OF
18                                             DOCUMENTS RESPONSIVE
                                               TO ITS FIRST AND THIRD
19                                             SETS OF REQUESTS FOR
                                               PRODUCTION; and**
20
                                               **(2)  MOTION OF MGA TO
21                                             COMPEL PRODUCTION OF
                                               DOCUMENTS RESPONSIVE TO
22                                             THE DOCUMENT REQUEST
                                               NOS. 526 AND 528**
23

24  ┌─────────────────────────────┐
    │ CONSOLIDATED WITH
25  │ MATTEL, INC. v. BRYANT and
    │ MGA ENTERTAINMENT, INC. v.
26  │ MATTEL, INC.
    └─────────────────────────────┘
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                           ORDER NO. 6
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __14__
PAGE __1142__

## I.  **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.  **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.  **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664."  (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel."  (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __14__
PAGE __1143__

### B.     Phase 1 Ruling

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88. Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7). The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7 - 8).

### C.     Objections of MGA Entertainment

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents. First, MGA Entertainment argues that Mattel failed to meet and confer. Second, MGA Entertainment argues that the requests are overbroad. Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

#### 1.     Purported Failure To Meet And Confer

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer. (MGA Opposition, pp. 9 - 10). However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].) MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV-04-09049-SGL (RNBx)]

EXHIBIT ___14___
PAGE ___1144___

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (Id., 7–9.) It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion.  Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14              **2.     Overbreadth Objection**

15       MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17  Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (Id.,14.)  Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery. (Id.; see also Order

24  Apr.14, 2008, pp. 7 - 8).  But MGA Entertainment's argument fails to recognize

25  //

26

27  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
    since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),
28  and do nothing to alter the fact that Mattel met and conferred on these issues previously.

EXHIBIT __14__
PAGE __1145__

1    the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2        The touchstone for determining whether a particular discovery request is

3    reasonably calculated to lead to the discovery of admissible evidence in this case is

4    whether the request bears some relation to the issues to be tried in Phase 2.

5    Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6    Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7    not linked to a single discrete product or even multiple products. Instead, the issues

8    to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9    Entertainment stole "a vast array of trade secrets and other confidential information

10    that comprise Mattel's intellectual infrastructure," including, among other things,

11    stealing "Mattel's proprietary business methods, practices and information."

12    (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20). Mattel alleges in

13    its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14      •   "engaged in a pattern of stealing and using [Mattel's] property and trade
15         secrets," (*Id.*,   ¶ 1);

16      •   "repeated—and even expanded—its pattern of theft [regarding the Bratz
17         dolls] on numerous occasions," including by hiring away three key Mattel
18         employees in Mexico who "stole virtually every category of Mattel's
19         sensitive and trade secret business plans and information for the Mexican
20         market as well as a significant quantity of sensitive and trade secrete
21         information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22      •   "stole Mattel trade secrets regarding Mattel's customers, sales, projects,
23         advertising and strategy, not only for Canada, but the United States and the
24         rest of the world," (*Id.*, ¶ 70);

25    //

26

27

28

---

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it would "produce all requested personnel files in their entirety (except for any medical or health related documents) if Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

EXHIBIT 14
PAGE 1146

1  • "took from Mattel documents containing proprietary advertising, project,
2      sales, customer and strategy information for not only Canada, but for the
3      United States," (*Id.*, ¶ 4);

4  • "engaged in an ongoing, widespread pattern of . . . inducing Mattel
5      employees to steal Mattel's confidential information or other property and
6      take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7  • stole "Mattel's plans, strategy and business information for the Mexican
8      market and materials related to Mattel's worldwide business strategies," (*Id.*,
9      ¶ 37);

10 • "enticed [Mattel's employees] to steal Mattel's most sensitive business
11     planning materials, and then hired them to assist in establishing and running
12     MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13 • "directed [certain Mattel employees'] to steal virtually all Mattel confidential
14     and proprietary information that they could access and bring it with them to
15     MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor
16     would need to enter the Mexican market, and to unlawfully compete with
17     Mattel in Mexico, in the United States and elsewhere," such as "global
18     internal future line lists that detailed anticipated future products; production
19     and shipping costs for Mattel products, daily sales data for Mattel products;
20     customer data; sales estimates and projections; marketing projections;
21     documents analyzing changes in sales performance from 2003 to 2004;
22     budgets for advertising and promotional expenses; strategic research
23     reflecting consumer responses to products in development; media plans;
24     consumer comments regarding existing Mattel products customer discounts
25     and terms of sale; customer inventory level data; assessments of promotional
26     campaign success; market size historical data and projections; marketing
27     plans and strategies, merchandising plans; retail pricing and marketing
28     strategies; and other similar materials," (*Id.*, ¶ 48);

EXHIBIT __14__
PAGE __1147__

1    • "targeted certain Mattel employees who have broad access to Mattel
2       proprietary information in an effort to induce and encourage them to join
3       MGA [Entertainment] and to steal or otherwise wrongfully misappropriate
4       Mattel confidential information and trade secrets," including by "promising
5       these employees salaries 25 percent or more higher than they earn at Mattel
6       and stating to them that they should not be concerned by legal action taken
7       by Mattel to protect its trade secrets and its rights because such claims are
8       hard to prove and easy to defeat," (*Id.*, ¶ 69); and
9    • "hired directly from Mattel's United States operations at least 25 employees,
10      from Senior Vice-President level to lower level employees," and that some of
11      these individuals misappropriated "Mattel confidential and proprietary
12      information, including Mattel's strategic plans; business operations; methods
13      and systems; marketing and advertising strategies and plans; future product
14      lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).
15      In light of the foregoing allegations, the documents requested by Mattel fall
16 within the purview of permissible discovery allowed by Federal Rule of Civil
17 Procedure 26.  Rule 26 permits the discovery of information that is "relevant to the
18 claim or defense of any party." Fed.R.Civ.P. 26(b)(1).  Accordingly, Mattel's
19 request for "all personnel and vendor files" of individuals who either (1) work at
20 MGA Entertainment and previously used to work for Mattel or (2) who are vendors
21 of MGA Entertainment and used to work with or had contact with Mattel appears to
22 be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23        **3.**    **Privacy Rights Objection**

24      MGA Entertainment's final argument is that the records sought by Mattel
25 (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot
26 be produced under *California law* unless the individuals affected are given advance
27 notice of the requests and afforded an opportunity to object to the production.
28 (MGA's Opposition, pp. 10 – 14).  Specifically, MGA Entertainment argues that


EXHIBIT   **14**
PAGE   **1148**

1    the California Constitution and California Code of Civil Procedure § 1985.3

2    together constitute a fundamental public policy in California that do not allow

3    MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4    of these contentions is unavailing.

5        As an initial matter, a protective order has been entered in this case. (Mattel

6    Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7    Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8    where such an order has been (or will be) entered, state-based privacy laws do not

9    bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19   *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22   *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25        Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26   ---

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.
Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __14__
PAGE __1149__

1   held that "personnel files are discoverable in federal question cases . . . despite

2   claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3   1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4   Cir. 1975)), and this includes any claim of privilege resulting from California Code

5   of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6   Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7   Procedure § 1985.3 do not apply in federal question cases because "federal law

8   applies in terms of substantive, privilege and discovery law."]).   Accordingly, the

9   privacy concerns raised by MGA Entertainment have no applicability here.

10      Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master finds that the requested documents

12  should exclude "health care specific information," because Mattel's counsel

13  conceded that Mattel is not seeking such information in its discussions with counsel

14  for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15  Mattel restated this position at the hearing.

16      The Discovery Master further orders MGA Entertainment to redact any

17  social security numbers, tax identification numbers, dates of birth, indication of

18  sexual orientation, bank account numbers, and checking account numbers that may

19  be included within the requested documents prior to production, as Mattel has not

20  made a showing at this time that such discrete personal information is reasonably

21  calculated to lead to the discovery of admissible evidence.

22  **D.    Conclusion**

23      The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25  [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26  and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question
    grounds, (Mattel Reply, p. 5).

27  [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
28  Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the
    privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

EXHIBIT __14__
PAGE __1150__

1    2 claims, and are not protected from disclosure on the grounds of third-party

2    privacy rights or any other ground cited by MGA Entertainment.

3    **III.   MATTEL'S REQUEST FOR SANCTIONS**

4         In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5    fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6    *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7    however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8    stage that could have been raised in the moving papers.[7] This rule is routinely

9    adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10   F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.*,

11   2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski*,

12   2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms*, 2007

13   WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox*, 7 F.3d 1458,

14   1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th

15   Cir.2000).

16        Accordingly, the Discovery Master therefore declines to award sanctions

17   against MGA Entertainment.

18   **IV.   MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19   **REQUEST NOS. 526 AND 528**

20        In its motion, MGA seeks an order compelling Mattel to produce documents

21   responsive to two document requests (the "Requests") included in MGA's Fifth Set

22   of Requests for Production of Documents and Things dated August 3, 2007.

23   //

24

25   [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27   [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-                    ORDER NO. 6
                      [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT   14
PAGE   1151

## A.   **The Discovery Sought**

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

## B.   **Mattel's Objections**

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

EXHIBIT  14
PAGE  1152

1   privileged.

2       **1.     Overbreadth Objection**

3       Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10  alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11  that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12  (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13  regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14  75).

15      Mattel has also acknowledged that at least some of the documents responsive

16  to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17  in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18  *and some of those materials reflected communications between Mattel and law*

19  *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20  Decl."], ¶ 16 (emphasis added).)

21      Given Mattel's allegations regarding the theft of its trade secrets, its

22  communications with law enforcement officials, and the overlap between the civil

23  and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24  threshold matter, MGA has made a prima facie case that the Requests seeking the

25  documents Mattel provided to law enforcement officials, as well as Mattel's

26  communications with those officials, are reasonably calculated to lead to the

27  discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28      Although the Requests on their face relate to Phase 2 issues, Mattel

EXHIBIT ___14___
PAGE ___1153___

1  nonetheless argues in its Opposition that Request No. 526 is overbroad because

2  Mattel's civil claims are wholly separate and independent from any criminal relief

3  it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4  MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5      In so arguing, Mattel misses the point. The issue is not whether Mattel's

6  communications with law enforcement officials constitute the basis of Mattel's

7  claims. Rather, the issue is whether those communications are reasonably

8  calculated to lead to the discovery of admissible evidence regarding what Mattel

9  itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10  secret misappropriation. Mattel does not dispute that its subsequent

11  communications with law enforcement involve the same conduct that is the basis of

12  the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13  concurrently seeking relief through the criminal justice system and this civil action

14  based on the same documents allegedly stolen by MGA and confirmed that fact

15  during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16  judicial file in the criminal proceedings in Mexico" are among the "documents

17  *relating to Mattel's Counterclaims*."] [emphasis added].)

18      Mattel's communications with law enforcement may, among other things,

19  disclose what Mattel told the investigating authorities about what information was

20  taken, the people who have knowledge of the thefts, and any supposed criminal

21  intent on the part of MGA or the former Mattel employees who supposedly took the

22  information. Given this admitted overlap in subject matter, the communications

23  between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re

24  Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25  plaintiff permitted discovery of materials provided to law enforcement authorities

26  concerning the same underlying facts]).

27      With respect to Request No. 528 (seeking documents Mattel provided to law

28  enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __14__
PAGE __1154__

1    thousands of documents that pertain to the underlying facts of Mattel's

2    counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3    does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4    and different." (*Id.*). According to Mattel, the "different" information sought by

5    Request No. 528 is information that would enable "MGA's executives to defend

6    against actual or potential criminal charges . . ." (*Id.*). However, since those

7    possible criminal charges are based on the same conduct as Mattel's civil claims, it

8    would be inappropriate to bar MGA from obtaining that information for use in this

9    lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14        Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26              **2.      Work Product Objection**

27        Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those



EXHIBIT __14__
PAGE __1155__

1  agencies, would violate the attorney work-product doctrine by revealing counsel's
2  strategy and mental processes. (Mattel Opposition, p. 6).

3      To qualify for work-product protection under Federal Rule Civil Procedure
4  26, documents must meet two requirements: (1) they must be "prepared in
5  anticipation of litigation or for trial," and (2) they must be prepared "by or for
6  another party or by or for that other party's representative." *In re Cal. Pub. Utils.*
7  *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the
8  doctrine is applicable to a particular document, "the court must consider the
9  *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a
10  party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,
11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree
12  that the purpose of the work product doctrine is "to establish a zone of privacy for
13  *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,
14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15      Here, Mattel does not demonstrate any connection between its
16  communications with law enforcement officials, on the one hand, and its litigation
17  strategy in the present civil case, on the other hand. Rather, it appears that Mattel's
18  primary purpose in communicating with, and disclosing the disputed documents to,
19  various law enforcement officials was to instigate criminal prosecutions by
20  prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent
21  the selection of particular documents by Mattel's counsel reveals counsel's
22  impressions and mental processes, the window into counsel's thinking relates to
23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.
24  There is no showing that counsel's thinking regarding how best to achieve *that*
25  purpose would also reveal counsel's strategies and impressions in any matter
26  related to the current civil litigation. In short, Mattel has made an insufficient
27  showing that the communications and documents at issue constitute work product
28  in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

EXHIBIT  **14**
PAGE  **1156**

1       Further, even if the work-product doctrine somehow applied to Mattel's

2   communications with law enforcement agencies, Mattel waived it, in at least two

3   ways.  First, Mattel admits that it has already produced some of those

4   communications to MGA.  (See Alger Decl., ¶ 16.)

5       Second, to the extent Mattel's communications with law enforcement

6   officials disclose its conclusions and theories to law enforcement officials, such a

7   disclosure also constitutes a waiver.  Mattel admits that the work-product doctrine

8   is waived when material is "voluntarily disclosed such that it may become readily

9   accessible to an adversary."  (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)).  In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of …trial preparation.'  Thus, disclosure in such a situation

14  results in a waiver of the work product protection."  *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002).  Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary."  *Id.*

21      Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based.  Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved."  (Mattel Opposition, p. 5).  Mattel knew


EXHIBIT  _14_
PAGE  _1157_

1  when it provided the documents to law enforcement agencies that such production

2  "substantially increased the opportunities for potential adversaries to obtain the

3  information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4  reasonable expectation this material would remain protected.

5                    **3.     Privilege Objections**

6        Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7  47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8  relief from Mattel based on the latter's communications with law enforcement

9  authorities. Consequently (Mattel reasons), those communications "are not

10  properly discoverable" in this action. (Mattel Opposition, p. 8).

11        That argument is based on a premise for which there is no support in the

12  record, namely that MGA seeks the subject documents in order to assert a claim

13  against Mattel arising from Mattel's allegedly privileged communications.

14  Proceeding from this unsupported assumption, Mattel then argues that such a non-

15  existent claim would be barred.

16        However, that speculative foray is entirely non-responsive to the MGA

17  Motion. The MGA Motion asserts that the documents should be produced not

18  because MGA intends to sue Mattel for communicating with law enforcement

19  authorities, but rather because Mattel itself injected the issue of the criminal

20  proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21  communicated with criminal authorities in various countries regarding the conduct

22  of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23  offers for seeking the subject documents.

24        Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25  position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26  the cases cited by Mattel demonstrate on their face that the subject privileges are

27  restricted to situations not present here. Those cases stand for the proposition that

28  parties who communicate with law enforcement officials may be immune from

EXHIBIT __14__
PAGE __1158__

1   *liability* under California tort law and federal anti-trust law, respectively – not that

2   such parties are immune from *discovery* in civil suits.

3                        a.        **The Litigation Privilege**

4          The California Supreme Court described the scope of the litigation privilege

5   in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6   According to Mattel, *Hagberg* stands for the proposition that a communication to

7   law enforcement officials about suspected criminal activity "enjoys an unqualified

8   privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9   addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative. *Id.*

16         The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

27                        b.        **The *Noerr-Pennington* Doctrine**

28         "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-



EXHIBIT ___14___
PAGE ___1159___

1    competitive conduct undertaken to influence or petition government bodies, or to

2    utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3    *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]).  In *Forro*, the plaintiff

4    brought suit against IBM for assisting a police search of his business premises.

5    Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6    antitrust claim could not be based on IBM's solicitation of aid from the police

7    department that resulted in the police investigation and search of his premises, or on

8    IBM's assistance in these activities.  (*Id.* at 1053 ["IBM's actions in assisting the

9    police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10   added]) .  In short, the "privilege" at issue in *Forro* dealt with freedom from

11   antitrust liability, not freedom from discovery.[8]

**c.     Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising

14   out of Mattel's communication with law enforcement officials.  If and when MGA

15   attempts to do so, it may well be appropriate for Mattel to assert the privileges

16   discussed above in an attempt to defeat any such claims on the merits.  In the

17   meantime, MGA is simply defending Mattel's civil claims in the present action, and

18   no privilege cited by counsel prevents MGA from conducting discovery regarding

19   the basis for those claims.

**C.     Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23   2 claims, and are not protected from disclosure under any of the privileges or

24   doctrines cited by Mattel.

25   //

26

27   [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity.  However, in that case (which arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those

28   communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

EXHIBIT __14__
PAGE ___1160___

## V.  **DISPOSITION**

1.     The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.     Mattel's request for sanctions is **DENIED**.

3.     The MGA Motion is **GRANTED**.

4.     All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.     All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.     The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.     All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:        March 13, 2009

By:        /s/ Robert C. O'Brien
           ROBERT C. O'BRIEN
           Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __14__
PAGE __1161__

# EXHIBIT 15

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  CARTER BRYANT, an individual,     Case No.  CV 04-09049 SGL (RNBx)

12              Plaintiff,

13        v.                          Consolidated with
                                      Case No. CV 04-09059
14  MATTEL, INC., a Delaware          Case No. CV 05-2727
    corporation,
15                                    **PHASE 2 DISCOVERY MATTER**

16              Defendant.            **ORDER NO. 17, REGARDING:**

17                                      **(1)  THE MGA PARTIES' MOTION
                                        FOR A PROTECTIVE ORDER
18                                      STAYING DISCOVERY ON
                                        TRADE DRESS CLAIMS;**
19
                                        **(2)  MOTION OF MATTEL, INC. TO
20                                      ENFORCE PRIOR COURT ORDER
                                        AND TO COMPEL RESPONSES TO
21                                      INTERROGATORIES; and**
22
23
    ─────────────────────────          **(3)  *EX PARTE* APPLICATION
24  CONSOLIDATED WITH                   FILED BY MATTEL, INC. FOR AN
    MATTEL, INC. v. BRYANT and          ORDER TO SHOW CAUSE RE:
25  MGA ENTERTAINMENT, INC. v.          MGA ENTERTAINMENT, INC.'S
    MATTEL, INC.                        FAILURE TO COMPLY WITH
26                                      COURT ORDER**
27
28
ARENT FOX LLP                                              ORDER NO. 17
ATTORNEYS AT LAW                            [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT __15__
PAGE __1162__

1    This Order sets forth the Discovery Master's ruling on the following

2    discovery matters:  (1) the motion for a protective order staying discovery on trade

3    dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,

4    MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")

5    ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.

6    ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")

7    to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental

8    Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and

9    (3) the *ex parte* application filed by Mattel for an order to show cause regarding

10   MGA's failure to comply with a prior court order ("Application") [Docket No.

11   4997] (collectively, the "Motions").

12       The Motions came on regularly for hearing before the Discovery Master on

13   April 14, 2009.  All interested parties were represented by counsel and afforded the

14   opportunity to present oral argument on the Motions.  The Discovery Master,

15   having considered the papers filed in support of and in opposition to the Motions,

16   and having heard oral argument, rules as set forth below.

17   **I.    THE TRADE DRESS DISCOVERY AT ISSUE**

18       All of the Motions concern discovery related to MGA's trade dress claims.

19       **A.    Interrogatory Nos. 43 And 44**

20       On October 23, 2007, Mattel served its Amended Fourth Set of

21   Interrogatories on MGA, including Interrogatory Nos. 43 and 44.  (Declaration of

22   Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at

23   pp. 7 – 8).  These interrogatories ask MGA to identify, for each design, product

24   and packaging that MGA contends Mattel copied, the date of conception and the

25   date it was first fixed in a tangible medium:

26       • Interrogatory No. 43: "For each concept, design, product, product

27         packaging or other matter that YOU contend MATTEL copied or

28         infringed, including but not limited to those identified in MGA's

EXHIBIT __15__
PAGE __1163__

1  Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of
2  Unfair Competition, Response To Interrogatory No. 2 (and any
3  Supplemental Responses to such Interrogatory), state the date that each
4  such concept, design, product, product packaging or other matter was
5  conceived, and IDENTIFY, all PERSONS with knowledge of, and all
6  DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,
7  Ex. 1 at p. 7).

8  • Interrogatory No. 44: "For each concept, design, product, product
9  packaging or other matter that YOU contend MATTEL copied or
10  infringed, including but not limited to those identified in MGA's
11  Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of
12  Unfair Competition, Response To Interrogatory No. 2 (and any
13  Supplemental Responses to such Interrogatory), state the date that each
14  such concept, design, product, product packaging or other matter was
15  first fixed in any tangible medium of expression (if ever), and
16  IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS
17  that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and
18  8).

19  MGA responded to Interrogatory Nos. 43 and 44 with only objections on
20  November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA
21  supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On
22  December 20, 2007, Mattel moved to compel further responses to the
23  interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's
24  motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,
25  MGA served its second and third set of supplemental responses to Interrogatory
26  Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27  On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated
28  February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

EXHIBIT __15__
PAGE __1164__

1   Mattel's motion to compel, finding that the "requested information is relevant to

2   Mattel's defense against the MGA [P]arties' claims that their products have been

3   copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –

4   12). The prior discovery master further ruled that the supplement responses

5   provided by MGA were deficient, reasoning as follows:

6           Although the MGA [P]arties served supplemental

7           responses after filing their opposition brief, the

8           supplemental responses do not include the requested

9           information. The MGA [P]arties have [also] failed to

10          establish that the interrogatories are unduly burdensome.

11  (*Id*., Ex. 8 at p. 12). The prior discovery master then ordered MGA to

12  supplement its responses "no later than February 26, 2008." (*Id*., Ex. 8

13  at p. 22).

14          On March 3, 2008, seven days after the deadline specified in the prior

15  discovery master's order, MGA supplemented its responses to Interrogatory Nos.

16  43 and 44 for a fourth time, objecting that the discovery in question related to

17  Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on

18  Phase 2 discovery on February 4, 2008. (*Id*., Ex. 9 at pp. 7 – 16). On April 22,

19  2008, the prior discovery master granted the MGA Parties' motion for clarification

20  concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation

21  to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby

22  stayed until further order of the district court lifting the stay on Phase 2 discovery."

23  (*Id*., Ex 10 at p. 3).

24          **B.      Supplemental Interrogatory Nos. 51 – 55 And 64**

25          On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55

26  and 64 on MGA. (*Id*., Ex 11 at p. 12 – 14 and 16). These interrogatories seek

27  information regarding MGA's allegations that Mattel copied, infringed or diluted

28  MGA's products:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

- Supplemental Interrogatory No. 51: "For each concept, design, product, product packaging or other matter that YOU contend MATTEL has copied, infringed, or diluted, including but not limited to those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), describe, fully and separately, each and every concept, design, product, product packaging or other matter of or by MATTEL that YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s), product(s), product packaging or other matter. Your answer should describe the Mattel concept, design, product, product packaging or other matter with specificity and in detail (including without limitation by product name, product number, SKU, or bar code number), and specify those elements or attributes of YOUR claimed concept, design, product, product packaging or other matter that YOU contend were copied, infringed or diluted by MATTEL." (Id., Ex. 11 at pp. 12 – 13).

- Supplemental Interrogatory No. 52: "For each trade dress that YOU contend MATTEL copied, infringed, or diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade dress and, for each such product, separately state (a) the number of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue received by YOU from such SALES of each such product; (c) all costs YOU have incurred in connection with each product; including but not limited to YOUR cost of good sold, and (D) YOUR gross and net worth from each such product." (Id., Ex. 11 at p. 13).


EXHIBIT _15_
PAGE _166_


1      • Supplemental Interrogatory No. 53: "For each MATTEL concept,
2        design, product, product packaging or other matter that YOU contend
3        is likely to cause confusion, to cause mistake, or to deceive as to
4        affiliation, connection, or association, or as to origin, sponsorship, or
5        approval, separately state all facts that support YOUR contention of
6        such, including but not limited to all facts that support YOUR
7        contention, if YOU so contend, that any of the SLEEKCRAFT
8        FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
9        with knowledge of such facts, and all DOCUMENTS that REFER OR
10       RELATE TO such facts." (Id.).

11     • Supplemental Interrogatory No. 54: "For each concept, design,
12       product, product packaging or other matter that YOU contend
13       MATTEL copied, infringed or diluted, state all facts that support
14       YOUR contention, if YOU so contend, that such copying or
15       infringement was intentional or willful, and IDENTIFY all PERSONS
16       with knowledge of such facts, and all DOCUMENTS that REFER OR
17       RELATE TO such facts." (Id.).

18     • Supplemental Interrogatory No. 55: "State all facts which support the
19       allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL
20       has "caused and continues to cause blurring and dilution of the
21       distinctive look of MGA's products and trade dress," and IDENTIFY
22       all PERSONS with knowledge of such facts, and all DOCUMENTS
23       that REFER OR RELATE TO such facts." (Id., Ex. 11 at p. 14).

24     • Supplemental Interrogatory No. 64: "To the extent YOU have not
25       previously disclosed such information in a prior interrogatory response
26       YOU provided to Mattel, state all facts which support YOUR claims
27       against Mattel in THIS ACTION, and IDENTIFY all PERSONS with
28       knowledge of such facts, and all DOCUMENTS that REFER OR

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 14
PAGE 167

1   RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2   MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3   February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4   therefore stayed.  (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5   **C.      The Court Lifts The Stay On Phase 2 Discovery**

6   On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7   (Watson Decl., Ex. 13 at p. 2).  Mattel's counsel subsequently wrote to counsel for

8   MGA on January 20, 2009 to ask when MGA planned to serve the required

9   responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10   previously ordered answered. (*Id.*, Ex. 14).

11   Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12   parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64.  (*Id.*,

13   Ex. 15 at pp. 2 – 3).  Counsel for the parties then spoke on February 6, 2009

14   regarding Mattel's eight trade dress interrogatories. (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15   During the conference, MGA stated, that it would provide responses to

16   Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17   "not later than 30 days after the Court decides the trade dress summary judgment

18   motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19   On February 18, 2009, the parties met and conferred regarding Mattel's

20   contemplated summary judgment motion concerning MGA's trade dress claims and

21   again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22   Ex. 23 at p. 1).  The next day, MGA informed Mattel that it would not agree to

23   provide further responses to the interrogatories. (*Id.*).  Rather, MGA said that it

24   planned to request a protective order to stay its obligation to respond and that it

25   would only provide responses:  (1) if their planned protective order was denied; or

26   (2) if the protective order is granted, 21 days after the Court decides Mattel's

27   summary judgment motion, to the extent any trade dress claims remain after that

28   decision. (*Id.*).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT __14__
PAGE __1168__

1    On February 26, 2009, the MGA Parties filed the Protective Order Motion.

2    Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application

3    on March 10, 2009.

### II.    THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER

5    The Discovery Master first addresses the MGA Parties' Protective Order

6    Motion.

#### A.    The Relief Sought By The MGA Parties

8    The MGA Parties "seek a stay to defer responding to eight specific

9    interrogatories relating to MGA's trade dress claims until 21 days after the Court

10    rules on Mattel's [contemplated] summary judgment motion." (Motion for a

11    Protective Order, p. 5). "The MGA Parties also seek a stay of all discovery relating

12    to MGA's trade dress claims for the same period." (*Id.*).

#### B.    Mattel's Opposition

14    Mattel opposes the Protective Order Motion on five grounds.  First, Mattel

15    argues that the motion is inconsistent with the Court's January 6, 2009 order lifting

16    the stay on Phase 2 discovery.  (Opposition, pp. 12 – 13).  Second, Mattel argues

17    that any request to stay discovery is not properly directed to the Discovery Master.

18    (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is

19    commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13

20    – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the

21    trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –

22    15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is

23    no corresponding undue burden placed on the MGA Parties.  (*Id.*, pp. 16 – 20).

#### C.    Legal Standard

25    In general, parties may obtain discovery regarding any matter, not privileged,

26    that is relevant to the claim or defense of any party.  (Fed. Rule Civ. P. 26(b)(1)).

27    The motion brought by the MGA Parties to stay discovery is made pursuant to

28    Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.



EXHIBIT 15
PAGE 1169

1   Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2   protect a party or person from annoyance, embarrassment, oppression, or undue

3   burden or expense." (Fed. Rule Civ. P. 26(c)).

4        A district court is afforded considerable discretion in deciding whether to

5   issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6   130 (10th Cir. 1990). While it is within a district court's discretion to stay

7   discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8   F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9   *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10  June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11  discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12  296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13  discovery even though dispositive motions are pending."]).

14       The underlying principle in determining whether to grant or deny a stay is

15  that "[t]he right to proceed in court should not be denied except under the most

16  extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio

17  Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of

18  the normal proceedings of a court should be the exception rather than the rule.

19       Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20  may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21  689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22  result of the ruling thereon; where the facts sought through uncompleted discovery

23  would not affect the resolution of the motion, or where discovery on all issues of

24  the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25  298).

26       In deciding whether to stay discovery pending the resolution of a dispositive

27  motion, federal courts in California conduct the following inquiry: (1) Is the

28  pending motion "potentially dispositive of the entire case, or at least dispositive on

EXHIBIT  *15*
PAGE  *1170*

1    the issue at which discovery is directed," and, if so (2) can the pending dispositive
2    motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*
3    *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)). If the court
4    answers both questions in the affirmative, it may then analyze other factors,
5    including the likelihood that the dispositive motion will be granted, (*id.*), and/or
6    "(1) plaintiff's interests in proceeding expeditiously with the civil action and the
7    potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the
8    convenience to the court; (4) the interests of persons not parties to the civil
9    litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,
10   2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11       **D.    Analysis**

12       The MGA Parties' primary argument in favor of the requested stay is that, in
13   the event Mattel's contemplated motion for summary judgment is granted, "the
14   Trade Dress Interrogatories may prove unnecessary or may be substantially
15   narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).
16   The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when
17   a dispositive motion, such as a summary judgment motion, 'would obviate the need
18   for discovery.'" (*Id.*, p. 11 (citation omitted)).

19       The Discovery Master finds this rationale unpersuasive for the following
20   reasons.

21       **1.    The Discovery Master Does Not Have the Power To Issue**
22             **The Requested Stay**

23       First, the Discovery Master does not have authority to render a ruling that
24   could directly override the Court's scheduling order and delay the Phase 2 trial.
25   While the Discovery Master has been appointed to resolve "any and all . . .
26   discovery disputes in this case,"[1] and may issue orders that indirectly impact the

27   _____
28   [1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master
     Order) and the Order appointing the current Discovery Master dated January 6, 2009.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-                              ORDER NO. 17
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  15
PAGE  171

1   scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2   is nothing in the order appointing the Discovery Master that authorizes him to

3   override the scheduling order directly.[3] Indeed, the power to control scheduling in

4   this matter is vested with the Court, as evidenced by the scheduling order issued by

5   it on February, 11, 2009.[4] (Order dated February 11, 2009, p. 2). Because the

6   Court, not the Discovery Master, established the applicable discovery cut-off and

7   trial dates for Phase 2, (id.), the Discovery Master cannot issue a stay that overrides

8   that order.

9               2.      **The Court Previously Indicated That the Parties Should**

10                      **Proceed With Phase 2 Discovery.**

11          Second, the Court advised the Discovery Master on February 11, 2009 that

12   "[t]here is no stay on discovery. Period." (Reporter's Transcript of Proceedings,

13   February 11, 2009, p. 97:15). It further instructed the Discovery Master "in no

14   uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15   (id., p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16   precluding *any* discovery that is properly sought for the trial that is scheduled," (id.,

17   p. 101:22:24 [emphasis added]). While these statements admittedly arose in the

18   context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19   nevertheless believes that they are instructive of the Court's view that any request

20

---

21   [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's

22   ruling might impact upon the Court's scheduling order does not relieve the parties of following
     this procedure.")

23   [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is

24   clear, because the requested stay is of an indefinite duration. Although the MGA Parties request a
     stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,

25   (Protective Order Motion, p. 5), no such motion is pending before the Court. Nor is there a

26   hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be
     able to issue a ruling disposing of it.

27   [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the

28   current Discovery Master.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___15___
PAGE ___1172___

1   to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2   extraordinary circumstances not present here.

3                    **3.      There Is No Dispositive Motion Pending**

4          Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5   because no dispositive motion is pending before the Court. The MGA Parties

6   concede in their moving papers and again in their Reply that Mattel has merely

7   represented that it will file a summary judgment motion at some point in the future.

8   (Protective Order Motion, p. 4; Reply, p. 4). In the absence of a *pending*

9   dispositive motion, there is no basis for granting the requested stay.[5]

10                  **4.      Mattel's Contemplated Summary Judgment Motion Will**

11                          **Not Dispose Of MGA's Trade Dress Claims**

12         Even assuming a dispositive motion had been filed with the Court, the MGA

13

14   [5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case,
15   the party seeking the discovery stay was the party who had brought the pending dispositive
     motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant
16   who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some
     documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St.*
17   *Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to
     dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,
18   alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern.*
     *AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for
19   summary judgment, properly sought and obtained a protective order staying discovery
     propounded on it by plaintiffs.]); *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on
20   discovery upheld in favor of party who raised immunity issue via a summary judgment motion];
     *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant
21   who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the
     MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend
22   to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the
     MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary
23   judgment motion, which the MGA Parties believe should be denied, is resolved.
24         Further, the five cases cited by the MGA Parties all involved situations where a dispositive
     motion had already been filed with the Court. (*Id.*)
25         Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage.
     Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*,
26   506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at
27   282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for
     several years.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   15
PAGE   1173

1  Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2  of the entire case, or at least dispositive on the issue at which discovery is directed."

3  (*Qwest Communications Corp.*, 2007 WL 2288299, *2).  Mattel's contemplated

4  summary judgment motion will not dispose of MGA's trade dress claims because it

5  is undisputed that MGA's trade dress claims "concern products and other matters

6  that will not be the subject of Mattel's contemplated motion."  (Opposition, p. 15;

7  *see also* Reply p. 11 n.6).

8      The MGA Parties nevertheless argue in their Reply that "it would make far

9  more sense for MGA to compile responsive information once the summary

10  judgment motion is decided and the full scope of the trade dress claims is settled."

11  (Reply, p. 11 n. 6).  Phrased differently, the MGA Parties argue not that the

12  summary judgment motion may moot all of the requested discovery, but only that,

13  if granted, it would narrow the scope of the trade dress discovery.  Because

14  discovery will inevitably be required on certain portions of MGA's trade dress

15  claims, this is not a situation where the contemplated motion is potentially

16  dispositive of the issue at which the discovery is directed.  Accordingly, the stay

17  requested by the MGA Parties can be denied for that reason alone.

18      **5.     Other Factors Also Weigh Against Issuing The Requested**

19          **Stay**

20      Finally, many, if not all, of the other factors a court may consider in deciding

21  whether a stay is appropriate pending the resolution of a dispositive motion weigh

22  in favor of denying the requested stay.

23          **a.     The Merits Of The Dispositive Motion**

24      As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25  of the additional factors a court may consider is whether the merits of the pending

26  dispositive motion make it likely that the motion will be granted.  Although the

27  Discovery Master cannot perform such an analysis here (because no dispositive

28  motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__
PAGE __1174__

1   Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2   (Protective Order Motion, p. 13). In light of this statement, the MGA Parties are

3   precluded from arguing that it is likely Mattel's motion will be granted in order to

4   justify their request for a stay. Accordingly, the Discover Master finds that – based

5   on the record presented – this factor weighs against issuing the requested stay.[6]

6                        **b.      Prejudice To Mattel**

7         Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8   delaying the ultimate resolution of the matter and increasing litigation costs. As

9   explained above, the stay requested by the MGA Parties is of an indefinite duration

10  and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11  after the stay is lifted. Moreover, Mattel could be forced to depose the same

12  witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13  trade dress claims and later with respect to those trade dress issues that remain

14  following the disposition of Mattel's contemplated summary judgment motion).

15  For these reasons, this factor weighs against staying the trade dress discovery.

16                   **c.      The MGA Parties Have Not Demonstrated They Will**

17                              **Suffer Any Undue Burden**

18        While the MGA Parties claim that it will "be extremely difficult, time-

19  consuming and costly" to respond to the eight trade dress interrogatories at issue,

20  (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21  have to be taken regardless of the outcome of Mattel's anticipated summary

22  judgment motion. Further, while it is possible that Mattel's contemplated summary

23  judgment motion, if granted, could simplify the issues for trial and reduce the costs

24  imposed on the MGA Parties, it is also possible that the resolution of the motion

25  will not have any bearing on the scope of the discovery needed in this case.

26  Regardless, a party is always burdened with costs when it voluntarily chooses to

27  _____

28  [6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated summary judgment motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___15___

PAGE ___1175___

Case 2:04-cv-09049-DOC-RNB  Document 5971-18  Filed 07/15/09  Page 37 of 56  Page ID
#:194509

1    pursue a claim, whether the case ultimately is dismissed, summary judgment is
2    granted, the case is settled, or a trial occurs.  If the MGA Parties wish to avoid these
3    costs in connection with MGA's trade dress claims, MGA can always dismiss them.
4    Because any hardship that MGA might face is one of its own making, any burden
5    imposed on it in having to respond to the discovery is justified.  Accordingly, this
6    factor weighs against issuing the requested stay.

              **d.      The Interests Of The Judiciary And The General**
7
8                        **Public**

9          The Court, using funds supplied by the general public, has already expended
10   a great deal of effort and resources in this matter, including conducting a lengthy
11   trial in Phase 1.  The Court further issued a scheduling order that established a
12   specific trial date and discovery cut-off for Phase 2.  Consequently, the general
13   interests of controlling the court's docket and the fair and speedy administration of
14   justice weigh heavily in favor of denying the requested stay.

15       **E.     Summary Of Ruling Regarding The Protective Order Motion**

16         For all of the foregoing reasons, the MGA Parties have failed to meet their
17   burden of demonstrating that good cause exists for issuance of a protective order
18   staying their obligation to respond to the subject discovery.

19   **III.   MATTEL'S MOTION TO COMPEL**

20         Having denied the Protective Order Motion, the Discovery Master now turns
21   to Mattel's Motion To Compel.

22       **A.     Interrogatory Nos. 43 and 44**

23             **1.      Orders Issued By The Prior Discovery Master**

24         As explained in Section I.A., above, this is not the first time that Mattel has
25   moved to compel responses to Interrogatory Nos. 43 and 44.  The prior discovery
26   master ordered MGA to supplement its responses to these interrogatories as part of
27   his February 15, 2008 order ("February 15, 2008 Order").  (Watson Decl., Ex. 8 at
28   pp. 11 – 12).  Seven days after the deadline specified in the February 15, 2008


EXHIBIT ___15___
PAGE ___1176___

1    Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2    served objections stating that the discovery in question related to Phase 2 and had

3    been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4    7 – 16). After having been advised of the stay imposed by the Court on

5    February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6    on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7    obligation to supplement their responses . . . [was] stayed until further order of the

8    district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

9              **2.    The Relief Sought By Mattel**

10             Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11   44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12   requests that the Discovery Master enforce the February 15, 2008 Order and require

13   MGA to supplement its responses. (Motion To Compel, pp. 9 – 10).

14             **3.    MGA's Opposition**

15             In its Opposition, MGA relies on two grounds for refusing to provide

16   responses to Interrogatory Nos. 43 and 44. First, MGA argues that it is not in

17   violation of the prior discovery master's February 15, 2008 Order because that

18   order was subsequently stayed by the April 22, 2008 Order, which "did not include

19   any specific date, or time period, after the Phase 2 stay was lifted within which

20   MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21   9 and 11). Second, MGA argues that it has not refused to answer Interrogatory

22   Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23   either provide further responses following the denial of that motion or, in the event

24   the motion is granted, after the Court decides Mattel's contemplated summary

25   judgment motion. (*Id.*, pp. 11 – 12).

26             The Discovery Master does not find either of these arguments persuasive.

27             **a.    The April 22, 2008 Order**

28             While MGA is correct that the prior discovery master temporarily stayed the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _15_
PAGE _1177_

1    enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2    argument that it does not have any obligation to supplement the responses to

3    Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4    time within which MGA had to provide responses is not supported by the record.

5         As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6    supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7    February 15, 2008 Order returned.  Indeed, the plain language of the prior

8    discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9    supplement their responses . . . are hereby stayed **until further order of the**

10   **district court lifting the stay on Phase 2 discovery.**" (Watson Decl., Ex. 10 at p.

11   3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12   January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13   of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14        Further, MGA had, at most, eleven days following the lifting of the stay on

15   Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16   (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17   15, 2008 Order required MGA to provide its supplemental responses within eleven

18   days of the order (i.e., on February 26, 2008). (*Id.*, Ex. 8 at p. 22).  Giving MGA

19   the benefit of the doubt and assuming that all eleven of those days remained at the

20   time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21   provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22   plus 2 additional days because January 17, 2009 falls on a Saturday).  Because

23   more than three months have passed without a response, MGA has not complied

24   with the terms of the prior discovery master's February 15, 2008 Order.

25              **b.    MGA's Offer To Produce The Supplemental**

26                    **Responses Following The Disposition Of The**

27                    **Protective Order Motion**

28        The contention that MGA somehow remedied its failure to supplement its

EXHIBIT __15__
PAGE __1178__

1  responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2  following the ruling on the Protective Order Motion is likewise unavailing. (*Id.*,

3  pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found

4  none, supporting the proposition that a party may refuse to respond to an

5  interrogatory after it has been ordered to do so by subsequently filing a motion for a

6  protective order. Nor would such a rule be logical, as it would permit the party

7  ordered to respond to thereby nullify the effect of the court order. Regardless, the

8  Discovery Master denied the Protective Order Motion and finds that it cannot be

9  used as a basis for failing to comply with the February 15, 2008 Order.

10        **4.       Conclusion**

11        For all of the foregoing reasons, MGA must promptly provide full and

12  complete responses to Interrogatory Nos. 43 and 44.

13     **B.       Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**

14             **And 44**

15        In its Motion To Compel, Mattel also requests that the Discovery Master

16  sanction MGA in the amount of $4,515 for failing to comply with the prior

17  discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In

18  response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19  "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20  only when, and MGA had already brought the 'when' question to the Discovery

21  Master one week before Mattel filed the instant motion to compel" as part of its

22  Protective Order Motion. (Opposition, p. 13). However, the fact that one party has

23  moved for a protective order does not prevent the party opposing that motion from

24  subsequently filing a motion to enforce a prior court order, particularly where the

25  latter motion requests that the Discovery Master compel MGA to provide responses

26  to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27  while the motion for a protective order indicates that MGA will respond to the

28  interrogatories, at the earliest, "within 21 days after" the denial of the Protective

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _15_

PAGE _1179_

1    Order Motion, (Protective Order Motion, p. 10).

2        MGA next argues that sanctions should be denied because its Protective

3    Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4    "it would be a perversion of every conceivable notion of economy and efficiency,

5    not to mention fairness . . . if a motion to compel could be used to sanction a party

6    for exercising its legal right to seek a protective order." (*Id.*, p. 14). But these

7    arguments are not persuasive for the same reasons discussed in Section II and

8    Section III.A.3.b., above, namely that the Protective Order Motion is not

9    meritorious and MGA has not cited any legal authority supporting the proposition

10   that a party may refuse to respond to an interrogatory after it has been ordered to do

11   so by subsequently filing a motion for a protective order.

12       Finally, MGA argues that it "has not appealed, challenged or otherwise

13   refused to obey" the prior discovery master's order, (*id.*), but merely requested that

14   the "Discovery Master temporarily defer the time to respond . . . based upon the

15   new, intervening circumstances that arose between the issuance of that order and

16   the lifting of the discovery stay," (*id.*, p. 15). However, this is just another way of

17   saying that MGA refused to supplement its responses as required by the prior

18   discovery master due to its mistaken belief that the Protective Order Motion

19   obviated the need to comply with the February 15, 2008 Order. Because that

20   argument has already been rejected, MGA has failed to show that it had substantial

21   justification for opposing the enforcement of the February 15, 2008 Order.

22   Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23       **C.    Supplemental Interrogatory Nos. 51 – 55 And 64**

24           **1.    The Relief Sought By Mattel**

25       Mattel next requests that the Discovery Master overrule MGA's objections

26   and compel it to provide full and complete responses to Supplemental Interrogatory

27   ─────────────────────
     [7] Having determined that MGA lacked substantial justification for failing to comply with the
28   February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

EXHIBIT  15
PAGE  1180

1   Nos. 51 – 55 and 64. (Motion To Compel, pp. 12 – 21).

2         **2.**    **MGA's Opposition**

3        In its Opposition, MGA initially argues that Mattel failed to meet and confer

4   in good faith. (Opposition, pp. 16 – 18). It further argues that even if Mattel did

5   meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6   they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7   other interrogatories, (4) improperly seek expert witness information, privileged

8   information, and information better known to Mattel, and/or (5) impose an undue

9   burden) are meritorious and should be sustained. (*Id.*, pp. 18 – 26).

10          **a.**    **Purported Failure To Meet And Confer**

11       Because it could dispose of the outstanding discovery issues related to

12  Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13  addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14  to filing its motion.

15       MGA argues that Mattel did not meet and confer in good faith because its

16  "meet and confer letter concerning these interrogatories is utterly devoid of any

17  reference whatsoever to the putative impropriety of the objections it now challenges

18  . . ." (Opposition, p. 17). However, MGA admits that the parties did meet and

19  confer about certain issues regarding these interrogatories. (*Id.*, p. 18 ["While the

20  parties did meet and confer about the timing of MGA's response to Interrogatory

21  Nos. 51 – 55 and 64 . . ." (emphasis omitted)]). The record further reflects Mattel

22  sent a meet and confer letter and had multiple phone calls with MGA's counsel

23  about these specific interrogatories. (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24  In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25  "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26  _____

27  [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson
    Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and
28  ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

1    Interrogatories] based on . . . any other objections . . ." (Watson Decl., Ex. 15).

2    Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3    37's "good faith" meet and confer requirement.

4              **b.**   **Definitional Objections**

5         MGA's first substantive argument in opposition to Supplemental

6    Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7    ambiguous because of the manner in which the term "SALES" is defined.

8    (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9    – 55 are ambiguous because of the definition used for the term "MATTEL." (*Id.*,

10    pp. 19 – 20). However, MGA has not cited any legal authority in support of its

11    position.

12         Moreover, MGA did not set forth the grounds for its objections "with

13    specificity," at the time it objected to the interrogatories, as required by Federal

14    Rule of Civil Procedure 33(b)(4). To the contrary, it merely "incorporate[d]

15    General Objection Nos. 14 – 15 (regarding Definitions), including without

16    limitation its objection to the definition of the term 'MATTEL" for Supplemental

17    Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18    "SALES" with respect to Supplemental Interrogatory No. 52 (*id.*, pp. 5 – 6). This

19    incorporation by reference of a list of general objections is insufficient to preserve

20    an objection. (*Convertino v. U.S. Dept. of Justice*, 565 F.Supp.2d 10, 12 – 13

21    (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC*, 2008 WL 2714422, *2 (E.D.Va.

22    July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, *5

23    - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24         Regardless, the Discovery Master is not persuaded that MGA is unable to

25    understand the terms MATTEL and SALES. Accordingly, the definitional

26    objections are overruled. MGA must answer the interrogatories.[9]

27

28

---

[9] The prior discovery master repeatedly required MGA to respond to discovery that used these definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__
PAGE __1182__

1                   **c.**    **Expert Witness Objection**

2         With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts

3  that it "has simply interposed an objection that preserves [its] right to rely on expert

4  testimony." (Opposition, p. 21). Since that is the full extent of MGA's expert

5  witness objection, the Discovery Master agrees that the objection, as limited by

6  MGA, is valid. What MGA cannot do is assert that this objection permits it to

7  withhold information that is now available to it. Accordingly, the objection is

8  sustained to the extent that MGA's interrogatory response merely includes a

9  reservation of rights to supplement the response during expert discovery.

10                   **d.**    **Objection That The Information Is Better Known By**

11                            **Mattel**

12         Regarding Supplemental Interrogatory No. 51, MGA asserts that the request

13  for it to identify Mattel products by stock keeping number or bar code number is

14  objectionable because that information is better known to Mattel. (*Id.*, p. 21).

15  However, MGA cannot withhold information on the ground that Mattel knows

16  which people have knowledge of Mattel's purported copying of MGA's intellectual

17  property. Mattel is entitled to discover the information MGA possesses and the

18  factual bases of its trade dress claims.

19         As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks

20  it to identify all persons with knowledge of certain facts even though it does not

21  know everyone who may possess such information, (*id.*, pp. 21 – 22), it is

22  incumbent upon MGA to provide the information that is within its custody,

23  possession or control. In fact, MGA concedes that it will provide "whatever

24  information it has." (*Id.*, p. 22).

25                   **e.**    **Compound Objection**

26         MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are

27  impermissibly compound. (Opposition, pp. 22 – 23). This contention is

28  unavailing. The questions in each interrogatory refer to one common theme and a

EXHIBIT __15__
PAGE __1183__

1    common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*

2    *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing

3    subparts directed at eliciting details concerning a 'common theme' should generally

4    be considered a single question"]). Accordingly, the objection is overruled.

###              f.    Duplicative Objection

6        MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are

7    duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.

8    23 – 24). But MGA has failed to demonstrate that this is the case. As an initial

9    matter, MGA does not explain why Supplemental Interrogatory No. 51 is

10    duplicative of other interrogatories. Rather, it simply states that Mattel "does not

11    take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel

12    addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.

13    19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory

14    No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts

15    regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel

16    products it contends copied, infringed, or diluted MGA's products by SKU number,

17    as requested by Interrogatory 51."]). Because it has not analyzed Interrogatory No.

18    51, MGA's objection to that interrogatory is overruled.

19        MGA's claim that Supplemental Interrogatory No. 52 is duplicative of

20    Interrogatory No. 45 is also unpersuasive. Supplemental Interrogatory No. 52 seeks

21    MGA profit, costs and revenue associated with each trade dress MGA contends

22    Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas

23    Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and

24    to identify the profits, costs and revenue associated with each such product.

25    The questions are therefore not the same.[10] Accordingly, the objections are

26    _____

27    [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be
able to respond to the latest interrogatories by cutting and pasting its responses to the prior
interrogatories. However, as discussed below, MGA alleges that responding to Supplemental

28    Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are
not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   _15_
PAGE   _1184_

1   overruled.

2                       **g.      Undue Burden Objection**

3          MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4   unduly burdensome.

5          However, MGA has not provided any evidence in connection with its Motion

6   To Compel to support its claim of burden. (*See Jackson,* 173 F.R.D. at 528-9 ["The

7   party claiming that a discovery request is unduly burdensome must allege specific

8   facts which indicate the nature and extent of the burden, usually by affidavit or

9   other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10  are unduly burdensome when Mattel merely seeks information regarding the extent

11  of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12  products, Mattel has the right to discover the scope of the alleged claims.

13  Accordingly, the objections are overruled.

14                      **h.      Privilege Objection**

15         Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16  that it asserted a privilege objection merely to "preserve [its] ability to protect,

17  privileged documents and information . . . . [and to make] clear that it was not

18  waiving the attorney-client privilege . . . ." (Opposition, p. 25).   Since that is the

19  full extent of MGA's privilege objection, the Discovery Master agrees that

20  objection as so limited is valid.  Accordingly, the objection is sustained on that

21  limited ground.

22                      **3.      Conclusion**

23         For all of the foregoing reasons, MGA must promptly provide full and

24  complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25  limited above.

26  **D.      Summary Of Ruling Regarding The Motion To Compel**

27         Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

Arent Fox LLP
Attorneys at Law
Los Angeles

                                    - 23 -              ORDER NO. 17
                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    15
PAGE    1185

1  request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2  granted.

3  **IV.    MATTEL'S _EX PARTE_ APPLICATION**

4          Several days after Mattel filed its Motion to Compel on March 6, 2009,

5  Mattel filed its Application for issuance of an order to show cause regarding

6  contempt.  The Application addresses Interrogatory Nos. 43 and 44 (the

7  "Interrogatories") and is based on the same facts summarized above with respect to

8  the Motion to Compel and Protective Order Motion.  However, unlike the Motion

9  to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10  Master is not authorized to issue contempt sanctions.  By order dated March 12,

11  2009, the Court referred the Application to the Discovery Master, who was

12  instructed to review it in the first instance and recommend a disposition to the

13  Court.  (Order dated March 12, 2009, p. 1).

14          **A.    Basis For The Application**

15                  **1.    Circumstances Warranting _Ex Parte_ Relief.**

16          In the introductory section of its Application preceding the Memorandum of

17  Points and Authorities, Mattel sets forth the following grounds for _ex parte_ relief:

18                  [F]or two months, MGA failed and refused to produce Phase 2

19                  discovery, including such discovery that was previously ordered.

20                  MGA also has a history of flouting Court Orders, but remains

21                  undeterred by prior warnings and prior awards of sanctions.

22                  Absent prompt intervention by this Court, MGA will continue to

23                  block even ordered Phase 2 discovery.  Furthermore, MGA's

24                  conduct is a direct challenge to the authority of the court and the

25                  Discovery Master, and additional delay would inappropriately

26                  reward MGA for its refusals to comply with the [prior discovery

27                  master's February 15, 2008] Order.

28  (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __15__
PAGE __1186__

1    In its Reply, Mattel offers the following as a further justification for bringing

2  the matter on an *ex parte* basis:

3           MGA has repeatedly employed the procedural tactic of refusing

4           to comply with discovery requests and forcing Mattel to return to

5           court for multiple successive orders and sanctions compelling

6           discovery.  In so doing, MGA effectively halts the discovery

7           process and deprives Mattel of crucial information to which it is

8           entitled. ... Requiring Mattel to repeat the process of filing a

9           regularly noticed motion would unduly reward MGA for its

10          refusal to comply with the [February 15, 2008] Order and

11          enhance MGA's ability to perpetually deprive Mattel of crucial

12          time in which to conduct discovery.

13  (Reply, pp. 3-4).

14           **2.    Circumstances Warranting Issuance Of An Order To Show**

15                   **Cause**

16    In its Application, Mattel argues that, although MGA has improperly refused

17  to respond to all of the discovery referenced in the Motion to Compel (including the

18  Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to

19  the Interrogatories, because MGA had already been ordered to provide responses to

20  those Interrogatories pursuant to the prior discovery master's February 15, 2008

21  Order.  Mattel therefore argues that MGA's failure to provide responses to the

22  Interrogatories should be singled out for special treatment as contempt of the Court.

23           **3.    Relief Sought**

24    MGA seeks issuance of an order to show cause that MGA is in contempt, a

25  finding of contempt, and the following monetary relief:

26      •    An award of coercive sanctions against MGA in the amount of $5,000

27           for each day that MGA fails to produce full and complete responses to

28           Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__

PAGE __1187__

1    event that MGA does not comply within five days of the Court's

2    Order, the amount of coercive sanctions should be increased to

3    $10,000 per day (with all such per diem fine amounts being paid to the

4    Court); and

5    • An award of monetary sanctions against MGA in the amount of

6    $7,000, which represents a portion of the costs incurred by Mattel in

7    bringing the Application.

8    (Application, pp. i - ii).

9    **B.    Discussion**

10    **1.    *Ex Parte* Relief Is Not Justified**

11    As MGA notes, the Court's standing order indicates that *ex parte*

12    applications are "solely for extraordinary relief." This directive was underscored

13    by the Court's Discovery Master Order, which requires that a party applying for *ex*

14    *parte* relief must show that "good cause" exists for hearing any dispute "on

15    shortened time" and that it will "be prejudiced absent prompt resolution" of the

16    issue. (Discovery Master Order, pp. 4 – 5).

17    This standard is not satisfied here. Mattel does not adequately demonstrate

18    that it will be prejudiced if the underlying motion is heard according to regularly

19    noticed motion procedures. The discovery cut-off is still eight months in the future

20    (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21    argues that it would be unfair to require Mattel to seek relief by means of a

22    regularly noticed motion, given the relevant history:

23    Mattel *already* followed this course of action and already

24    obtained an Order that MGA produce amended interrogatory

25    responses. MGA refuses to obey that [February 15, 2008] Order.

26    Requiring Mattel to repeat the process of filing a regularly

27    noticed motion would unduly reward MGA for its refusal to

28    comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -    ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__
PAGE __1188__

1   ability to perpetually deprive Mattel of crucial time in which to

2   conduct discovery.

3 (Reply, p. 4, emphasis in original).

4   Mattel's frustration is understandable; Mattel has already been through this

5 process twice (counting the pending motion to compel) with respect to the identical

6 interrogatories which are the subject of the Application. However, Mattel's

7 assertion that it should be allowed to dispense with a noticed motion ignores one

8 important point: the Application seeks relief which both parties acknowledge is

9 entirely different in character than an award of ordinary monetary sanctions for

10 discovery abuses. Unlike its motions to compel, the Application seeks a finding

11 that MGA has deliberately disobeyed a Court order and should be punished by an

12 award of coercive sanctions until it complies with the order. This is the first time

13 Mattel has sought such relief, and MGA has never previously been provided the

14 opportunity to oppose the requested relief in connection with a regularly noticed

15 motion. Thus, while Mattel's above quoted argument might have some application

16 if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not

17 justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.

18   Moreover, the chronology of events tends to negate the assertion that Mattel

19 is suffering immediate and irreparable prejudice from the delay occasioned by

20 MGA's failure to respond to the Interrogatories. MGA has refused to respond to

21 the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,

22 2009. Nevertheless Mattel did not file its Application until two months later, after

23 MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel

24 MGA to respond to the outstanding trade dress discovery, including providing

25 responses to the Interrogatories. The timing of these events undermines Mattel's

26 argument that expedited relief is necessary.

27   In the absence of some exigency, the Discovery Master believes that the

28 severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__
PAGE __1189__

1    the time and opportunity to present their arguments in the context of a regularly

2    noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3    *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4    regularly noticed motion and because the Discovery Master is not inclined to

5    recommend that the Court grant the relief Mattel seeks at this time, I address the

6    substantive issues raised by the Application below.

7              **2.      MGA's Alleged Disobedience Of The Prior Order**

8                        **a.      Legal Standard**

9         As the Ninth Circuit has observed:

10              Courts are invested with inherent powers that are 'governed not

11              by rule or statute but by the control necessarily vested in courts to

12              manage their own affairs so as to achieve the orderly and

13              expeditious disposition of cases.'

14   (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15   F.2d 363,368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16   with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17   *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18   Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19   discovery order as contempt.

20        The Ninth Circuit has further observed that "courts have strictly adhered to

21   the principle that the power to punish for contempt is limited to '(t)he least possible

22   power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23   Cir. 1980) (citations omitted)).

24        Mattel acknowledges that it must meet an exacting standard in order to

25   prevail on its Application.  Specifically, the party seeking imposition of civil

26   contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27   contemnors violated a *specific and definite* order of the court." (*United States v.*

28   *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

EXHIBIT ___15___
PAGE ___1190___

1    *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)).  Further, any doubts

2    as to whether the requirements for civil contempt have been met in a particular case

3    must be resolved in favor of the party accused of civil contempt.  (*In re Chief*

4    *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5        In accordance with this standard, contempt sanctions will not be imposed

6    unless the language of the order allegedly violated is clear and unambiguous.

7    (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8    1982) (affirming district court's denial of applications to hold defendants in

9    contempt for violating terms of consent judgment where, among other things,

10   certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11   *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12   and for sanctions where the discovery at issue was open to interpretation: "Any

13   ambiguities or uncertainties in the court order must be read in a light favorable to

14   the person charged with contempt. ... Contempt power should not be used where

15   there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16   power of the court to punish for contempt should be used with caution and

17   deliberation.")).

18        **b.    Application To The Facts**

19        Mattel argues that MGA violated the February 15, 2008 Order, and that it

20   continued to do so for two months before the prior discovery master stayed MGA's

21   obligation to respond to the Interrogatories on April 22, 2008.  (Application, p. 13).

22   That assertion is not accurate.  In granting MGA's motion for clarification of the

23   February 15, 2008 Order, the prior discovery master in essence retroactively found

24   that MGA should not have been ordered to immediately provide supplemental

25   responses because the Interrogatories involved Phase 2 issues and were therefore

26   subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27   the February 15, 2008 Order.

28        When the stay was lifted, on January 6, 2009, the Court did not set a new

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__
PAGE __1191__

1   deadline for MGA to provide supplemental responses in compliance with the

2   February 15, 2008 Order, nor did Mattel request that either the Court or the current

3   Discovery Master do so.  However, one month after the stay was lifted, Mattel did

4   meet and confer with MGA in an attempt to obtain responses.  At that time, MGA

5   took the position that it would provide responses to the Interrogatories "not later

6   than 30 days after the Court decides the trade dress summary judgment motion

7   which Mattel has indicated it will bringing."  (Ex. 16 to Watson Decl. in support

8   of Application).  Three weeks later, MGA filed the Protective Order Motion

9   seeking a stay of its obligation to respond to the Interrogatories.

10      As set forth above, the Discovery Master finds that, in pursuing this course of

11  conduct instead of responding to the Interrogatories and other discovery that is the

12  subject of Mattel's Motion to Compel, MGA acted without substantial justification

13  and therefore grants Mattel's Motion To Compel and also awards sanctions against

14  MGA.  The question raised by the Application is whether MGA should *also* be

15  ordered to appear and show cause why it should not be held in contempt and subject

16  to further sanctions for failing to comply with the February 15, 2008 Order.

17      Since Mattel, as the moving party, has the burden of demonstrating by clear

18  and convincing evidence that MGA has committed civil contempt and should be

19  punished, Mattel must, in the first instance, identify the existence of a "specific and

20  definite" provision of the February 15, 2008 Order which MGA has violated.

21  (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22          The Discovery Master's [February 15, 2008] Order directed

23          MGA to provide full, complete and updated responses to

24          Interrogatories Nos. 43 and 44 within eleven days.  MGA did not

25          comply with that Order and refused to do so for two months

26          before the Discovery Master stayed MGA's obligation to respond

27          while the Court's Phase 2 stay was in place.

28  (Application, p. 13).  However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -                                    ORDER NO. 17
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___15___

PAGE ___1192___

1   responses specified in the February 15, 2008 Order cannot reasonably be viewed to
2   be a violation of that order during the period of February 15, 2008 to April 22, 2008
3   because the prior discovery master himself retracted the portion of his ruling
4   requiring MGA to comply in response to MGA's motion for clarification.  In other
5   words, the prior discovery master found, in effect, that MGA had *properly* withheld
6   supplemental responses on the ground that the subject Interrogatories sought Phase
7   2 discovery, which had been stayed by the Court nearly two weeks *before* the prior
8   discovery master issued the February 15, 2008 Order.  Given the prior discovery
9   master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can
10  hardly be deemed to have been in violation of the February 15, 2008 Order while
11  the Court's stay of Phase 2 discovery was in place.  A party who believes a ruling is
12  in error has the right to seek clarification or reconsideration, and doing so is not
13  equivalent to willfully disobeying the court.

14      Mattel also argues that MGA "resumed" its violation of the February 15,
15  2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on
16  January 6, 2009.  While the Discovery Master does not agree that any violation
17  resumed on January 6, 2009, as set forth above, I do agree that MGA should have
18  promptly complied with the February 15, 2008 Order once the stay was lifted by
19  serving supplemental responses within 11 days of the lifting of the stay.  *Lucero v.*
20  *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all
21  objections to interrogatories served before a stay was issued by failing to respond
22  within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240
23  (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be
24  complied with promptly.'").

25      However, today's ruling that MGA should have promptly provided responses
26  to the Interrogatories upon the stay being lifted by the Court is not equivalent to a
27  finding that MGA deliberately violated a "specific and definite" provision in the
28  February 15, 2008 Order.  That order arguably does not contemplate the situation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __15__
PAGE __1193__

1   which ensued after the order was issued, namely, the prior discovery master's

2   decision to suspend MGA's obligation to respond to the Interrogatories without

3   setting a new deadline to run from the lifting of the stay.

4        While it is reasonable to conclude, as the Discovery Master has done, that the

5   same 11-day deadline imposed by the February 15, 2008 Order would apply once

6   the stay was lifted, an inference, however reasonable, is not the same thing as an

7   express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8   (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9   proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10  within list of activities expressly forbidden by earlier protective order]; *Independent*

11  *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12  defendant's supposed "understanding," based on oral comments by the Court that

13  he was being ordered to request that search engines discontinue using infringing

14  phrase, was not the same as express provision of injunction and could not serve as

15  basis for civil contempt]). Further, as noted above, any doubts regarding

16  disobedience of a court order are to be resolved in favor of the party charged with

17  contempt. Accordingly, the Discovery Master declines, under the applicable case

18  law and on the record presented, to find that MGA deliberately disobeyed the

19  Court, thereby meriting sanctions for civil contempt. The Discovery Master also

20  declines to recommend that the Court issue the requested order to show cause.

21       However, as set forth in the Disposition section below, the Discovery

22  Master's ruling today *does* contain an express deadline by which MGA must

23  respond fully and without objection to the Interrogatories (as well as the other

24  discovery that is the subject of Mattel's Motion to Compel). If MGA fails to

25  comply with the express, definite deadline imposed by this Order, the Discovery

26  Master reserves the right to recommend that the Court impose appropriate sanctions

27  from the date of MGA's non-compliance should Mattel renew its request for an

28  order to show cause regarding contempt by filing a noticed motion.



EXHIBIT _15_
PAGE _1194_

1    **V.    DISPOSITION**

2          A.      MGA's Protective Order Motion is **DENIED**.

3          B.      Mattel's Motion To Compel is **GRANTED**, except as limited above.

4    MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10)

5    days of this Order, subject to any applicable confidentiality designations available

6    under the Protective Order.  MGA's responses to Supplemental Interrogatories Nos.

7    51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any

8    applicable confidentiality designations available under the Protective Order.

9          C.      Mattel's request for sanctions against MGA in connection with its

10   Motion To Compel is **GRANTED**.  MGA shall pay $4515 to Mattel within ten (10)

11   days of this Order.

12         D.      MGA's request for sanctions in connection with Mattel's Motion To

13   Compel is **DENIED**.

14         E.      Mattel's Application for issuance of an order to show cause regarding

15   contempt is **DENIED,** without prejudice to any noticed motion for an order to show

16   cause regarding contempt that Mattel may deem appropriate in the event that MGA

17   fails to comply with any provision of the present Order.

18   Dated:  April 14, 2009

19

20                                         By:    /s/ Robert C. O'Brien

21                                                ROBERT C. O'BRIEN
                                                 Discovery Master
22

23

24

25

26

27

28

EXHIBIT _15_
PAGE ___1195_