# EXHIBIT 17

FILED

1　DALE M. CENDALI
　　*(of counsel, not admitted in California)*
2　DIANA M. TORRES (S.B. #162284)
　　PAULA E. AMBROSINI (S.B. #193126)
3　O'MELVENY & MYERS LLP
　　400 South Hope Street
4　Los Angeles, CA 90071-2899
　　Telephone: (213) 430-6000
5　Facsimile: (213) 430-6407
　　email: dtorres@omm.com
6
　　PATRICIA GLASER (S.B. # 55668)
7　CHRISTENSEN, MILLER, FINK,
　　JACOBS, GLASER, WEIL &
8　SHAPIRO LLP
　　10250 Constellation Boulevard, 19th Floor
9　Los Angeles, CA 90067
　　Telephone: (310) 553-3000
10　Facsimile: (310) 556-2920
11　Attorneys for Plaintiff
　　MGA Entertainment, Inc.
12
13
14　　　　**UNITED STATES DISTRICT COURT**
15　　　**CENTRAL DISTRICT OF CALIFORNIA**

CBM(RZx)

CV 05 - 02727

16　MGA ENTERTAINMENT, INC.,　　Case No.

17　　　　　　　Plaintiff,　　**COMPLAINT FOR FALSE**
　　　　　　　　　　　　　　**DESIGNATION OF ORIGIN,**
18　　　　v.　　　　　　　　**AFFILIATION, ASSOCIATION OR**
　　　　　　　　　　　　　　**SPONSORSHIP (15 U.S.C. § 1125**
19　MATTEL, INC., a Delaware　　**(a)); UNFAIR COMPETITION (15**
　　Corporation, and DOES 1-10,　**U.S.C. § 1125 (a), Cal. Bus. & Prof.**
20　　　　　　　　　　　　　　**Code § 17200 *et seq.* and California**
　　　　　　　　Defendants.　　**Common Law); DILUTION (15**
21　　　　　　　　　　　　　　**U.S.C. § 1125 (c), Cal. Bus. & Prof**
　　　　　　　　　　　　　　**Code § 14330 and California Common**
22　　　　　　　　　　　　　　**Law); AND UNJUST ENRICHMENT**
23　　　　　　　　　　　　　　**DEMAND FOR JURY TRIAL**
24
25
26
27
28

EXHIBIT 17
PAGE 1300

1             Plaintiff MGA Entertainment, Inc. for its complaint against

2 Defendants Mattel, Inc. and DOES 1-10 alleges and avers as follows:

3

4                               **PARTIES**

5        1.      Plaintiff MGA Entertainment, Inc. ("MGA") is a California

6 corporation organized and existing under the laws of the State of California, with a

7 principal place of business in Van Nuys, California.

8        2.      MGA is informed and believes, and based thereon alleges, that

9 Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with a principal place

10 of business in El Segundo, California.

11        3.      MGA is ignorant of the true names and capacities of the defendants

12 sued herein under the fictitious names DOES 1 through 10 inclusive. MGA will

13 seek leave of court to amend this complaint to allege such names and capacities

14 when they are ascertained. MGA is informed and believes, and based thereon

15 alleges, that each of the fictitiously named DOE defendants is responsible in some

16 manner for the wrongful conduct alleged herein. MGA further alleges that each

17 defendant acted in concert with, as agent or representative for, or at the request or

18 on behalf of another or Mattel. Each charging allegation contained herein is,

19 therefore, also hereby alleged against each fictitiously named DOE defendant.

20

21                    **JURISDICTION AND VENUE**

22        4.      Through this action MGA asserts claims against Mattel arising under

23 the Lanham Act, 15 U.S.C. Sections 1125 (a) and (c), California Business and

24 Professions Code Sections 17200 *et seq.*, California Business and Professions Code

25 Section 14330 and California common law. This Court has original subject matter

26 jurisdiction over MGA's federal claims pursuant to 15 U.S.C. Sections 1116 and

27 1121, 28 U.S.C. Section 1338(a), and 28 U.S.C. Section 1331, and supplemental

28

1

EXHIBIT _17_
PAGE _1361_

1 │ subject matter jurisdiction over MGA's state law claims pursuant to 28 U.S.C.

2 │ Section 1367(a).

3 │      5.    This Court has specific personal jurisdiction over Mattel, as it has

4 │ purposefully committed, within the State of California, the acts from which these

5 │ claims arise and/or has committed tortious acts outside California, knowing and

6 │ intending that such acts would cause injury to MGA within the state. The Court

7 │ also has general personal jurisdiction over Mattel, as it conducts continuous,

8 │ systematic and routine business within the State of California and the County of

9 │ Los Angeles.

10 │      6.    Venue is proper in the United States District Court for the Central

11 │ District of California pursuant to 28 U.S.C. Sections 1391(b) and 1391(c).

12 │

13 │ **FACTUAL BACKGROUND**

14 │      7.    MGA seeks by this action to halt Mattel's habitual and unfair tactics of

15 │ competition-by-intimidation and serial copycatting of MGA's products, which

16 │ Mattel has used in an unbridled effort to cause confusion in the market place and

17 │ eliminate MGA as a competitor in the toy and fashion doll market long dominated

18 │ and controlled by Mattel.

19 │      8.    MGA is a privately-held company in the San Fernando Valley that

20 │ began in 1979 as a small consumer electronics business. In 1987, the company

21 │ made its first foray into the toy business when it secured rights to market handheld

22 │ LCD games featuring licensed Nintendo® characters. Building on that small

23 │ success, the company began marketing products for popular licensed properties

24 │ such as the "Power Rangers"® and "Hello Kitty"®. This little-known but

25 │ successful company, however, was propelled into the limelight after its daring

26 │ release in June 2001 of an innovative line of fashion dolls called "BRATZ".

27 │ "BRATZ" are multi-ethnic fashion dolls that sport a fresh new urban and

28 │ contemporary look and fashion. At the time of the release of "BRATZ", "Barbie"

2

EXHIBIT _17_
PAGE _1302_

1   sales were in a slump, Mattel was in turmoil, and the market was ripe for something

2   new, exciting and inventive. "BRATZ" fit the bill. It is the first fashion doll that

3   has been able to seriously challenge "Barbie" for market share, and begin to loosen

4   Mattel's 50-year iron-fisted grip on the fashion doll market.

5          9.      Mattel has not taken kindly to the challenge. Either unable or

6   unwilling to compete against "BRATZ" fairly, and on a level-playing field, Mattel

7   has, instead, taken a more expeditious approach, resorting to unfair and anti-

8   competitive business practices. Wielding its substantial clout and influence in the

9   toy industry, Mattel has tried to muscle MGA out of business. MGA is informed

10   and believes that Mattel has intimidated, coerced and threatened retailers, licensees,

11   suppliers and others in the industry – both in the U.S. and internationally – in order

12   to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA

13   from obtaining licensees, contracts and supplies for its products. Mattel has also

14   serially imitated and copy-catted the look of MGA products, trade dress,

15   trademarks, themes, ideas, advertising and packaging, including for the "BRATZ"

16   line of dolls. MGA brings this action to stop Mattel's tortious, unfair and anti-

17   competitive conduct and to recover the extensive damage that Mattel's illicit

18   behavior has caused, and continues to cause, MGA. Mattel's own website states:

19   "As the global leader in the toy industry, we believe that how we achieve success is

20   just as important as the success itself." It also proclaims that "unwavering integrity

21   defines our corporate culture on every level, guiding how we work and how we do

22   business." Mattel's own corporate governance standards require it to "play by the

23   rules," complete fairly and be a good corporate citizen. Mattel's actions, however,

24   speak louder than its words.

25

26

27

28

3

EXHIBIT __17__
PAGE __1303__

## Mattel History and Performance

10.    Mattel is the world's largest toy company, but it owes its immense success chiefly to a single product: "Barbie." Since her debut in 1959, "Barbie" has been the fuel for Mattel's growth and success, turning Mattel into an international powerhouse. By the late 1990's, Mattel's annual sales of the doll approached or topped $1.8 billion and Mattel stock reached a record high of approximately $45.00 a share. At that time, the average American girl had eight "Barbie" dolls, and "Barbie" was the world's best-selling toy.

11.    Mattel's reliance on a single, 40-year old product for as much as 50% of its business turned out to be a risky business model, however. Resting on its laurels, Mattel failed to react to the shifting tastes of consumers, changing dynamics in the industry, and an increasing focus on technologically advanced and interactive toys. "Barbie's" record sales fell into a tailspin. According to one report, Adrienne Fontanella, Mattel's "Barbie" brand president, would later be quoted as saying that, "The world changed very quickly, and we missed a beat. . . Barbie wasn't talking to girls. She just wasn't hitting it."

12.    Sales began to plunge in 1997, and Mattel began posting a series of net income losses. In the first quarter of 1998, sales of the "Barbie" brand dropped 17%. This steep slide was followed by another in the second quarter, when sales fell again, down by 15%. By the end of 1998, Mattel reported an overall 14% decline in "Barbie" sales for the year and analysts were using words such as "devastating" and "a catastrophe" to describe Mattel's earnings. The company's stock fell as much as 27% in a single day. "Barbie" was having a crisis.

13.    Jill Barad, who had taken over as Mattel's chairman and chief executive in January 1997, at the height of Mattel's success, had to do something fast. Instead of focusing on and investing in new product development, however, which would obviously take time, Mattel embarked on a series of acquisitions that were seemingly aimed at quickly diversifying the company's product line and

4

EXHIBIT _17_

PAGE _1304_

reducing its reliance on "Barbie" and on traditional retailers, such as Toys-R-Us and Wal-Mart. Mattel spent a reported $881 million in March 1997 to purchase Tyco Toys and acquire the "Matchbox" toy car brand. Just more than a year later, it spent $700 million for the Pleasant Co., a mail-order doll company and maker of the "American Girl" doll collection. And in December 1998, Mattel announced plans to fork out a monumental $3.5 billion to buy the Learning Company, followed quickly by Mattel's purchase, in March 1999, of a software company, Purple Moon.

14.     Despite these acquisitions, the company continued to struggle. The retail environment and buying patterns had unquestionably changed, but Mattel had not kept up. Despite Mattel's feverish acquisitions, Mattel's mainstay and primary profit-generator was still "Barbie." But "Barbie" had grown stale, and sales languished. Posting additional losses in the first quarter of 1999, Mattel announced that it would lay off 3,000 employees – 10% of its work force.

15.     Mattel's stock plummeted again in late 1999, dropping 30% on Mattel's announcement that it would fall as much as 55% short of analysts' earning estimates for the third quarter. Mattel blamed its troubles primarily on its expensive, $3.5 billion acquisition of the Learning Company, which had turned out to be a disaster fraught with licensing and distribution problems, bad debt, high product returns and high advertising costs.

16.     By early 2000, Mattel's stock had crashed to as low as $8 per share, and some analysts considered Mattel vulnerable to a takeover. Investors clamored for Ms. Barad's resignation, and got their wish.

17.     Jill Barad resigned from Mattel in February 2000.

18.     For three months, the company was without a permanent chief executive until Robert Eckert took the helm in May 2000. Mr. Eckert had spent 23 years at Kraft Foods, a subsidiary of Altria Group, Inc., and was widely credited



EXHIBIT _17_
PAGE _1305_

1  with reviving its ailing cheese business.  Investors looked for him to do the same

2  for Mattel.

3       19.    Upon his arrival at Mattel, Mr. Eckert's promise, according to *Wall*

4  *Street Journal* reports, was to deliver a "leaner and meaner" Mattel.

5       20.    The "leaner" Mattel came quickly.  Mr. Eckert laid off hundreds,

6  closed factories in the United States, shipped production to Mexico, and sold off the

7  Learning Company at a fraction of what Mattel had paid for it.  It helped Mattel's

8  bottom-line, but did nothing to spur sales growth.  Even under Mr. Eckert's "leaner

9  meaner" leadership, domestic "Barbie" sales remained in a slump into 2001.  In an

10  industry that had become increasingly driven by consumer whims and fads, and the

11  hot, must-have toys of the moment, Mattel remained disinterested in devoting its

12  resources to searching for or developing a new blockbuster toy.  Mr. Eckert's

13  business plan was not to diversify, but to build upon and expand sales of its existing

14  brands.  Mattel was, after all, still generating billions in revenue despite the decline

15  of "Barbie."  And so, Mattel remained committed to its age-worn icon and its two

16  other core brands, Fisher-Price and Hot Wheels, with each of the three accounting

17  for approximately a third of the company's sales.

18       21.    Then came the competition – MGA's "BRATZ".

19

20  **"BRATZ" Dolls Revolutionize The Fashion Doll Market**

21       22.    "BRATZ" challenged "Barbie's" half-century domination of the

22  fashion-doll market like nothing ever before had been able to do.

23       23.    MGA unveiled a preliminary sample of the "BRATZ" doll at the Hong

24  Kong Toy Fair in January 2001, while continuing to finalize the product throughout

25  that spring.  Finished products were first shipped in May 2001.  MGA introduced

26  the line to consumers in June 2001.

27

28



EXHIBIT _17_
PAGE _1306_

24.   Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

### MGA's "BRATZ"



 

 

25.   At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

7

EXHIBIT _17_
PAGE _1307_

26.   Indeed, the classic "Barbie" look was nowhere to be seen in these dolls; they would never be confused with "Barbie".

**MGA's "BRATZ"**                          **Mattel's "Barbie"**

   

27.   Featuring and embodying the slogan "The Girls With a Passion for Fashion!", "BRATZ" dolls revitalized, transformed and expanded the fashion doll market, in particular proving popular among "tween" age girls – those between childhood and adolescence – who had been all but abandoned as a market by Mattel.

28.   The "BRATZ" line – with its unique and distinctive look – is well recognized and has been critically acclaimed and praised by consumers, retailers and toy industry analysts alike. In 2001, the "BRATZ" line won the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award. In 2002, the "BRATZ" line again won the TIA People's Choice Toy of the Year Award and the Family Fun Toy of the Year Award. LIMA, the licensing industry's official arm, awarded MGA's "BRATZ" the best character license of the year as well as the overall best licensed property of the year for 2003. MGA's "BRATZ" also earned the coveted TIA "Property of the Year" and "Girl Toy of the Year" for 2003, as well as the Family Fun Toy of the Year Award. MSNBC named "BRATZ" the "Hottest Toy of the Year," and both MGA and "BRATZ" received several other accolades in

8

EXHIBIT __17__
PAGE __1308__

1   2004, including the Suppliers Performance Award by Retail Category (the
2   "SPARC" award) in the Girls' Toys category sponsored by DSN Retailing
3   Today/Apparel Merchandising.

4        29.    Although but a tiny fraction of Mattel's size, with "BRATZ", MGA
5   was able to chip away at Mattel's stranglehold on the fashion doll market, gaining
6   shelf space and market share as "Barbie" sales remained flat or, at times, declined.

7        30.    The competition that MGA (once a licensee of Mattel!) and "BRATZ"
8   posed to Mattel was unexpected and unwelcomed by Mattel.  Where "Barbie" had
9   once enjoyed a 90% share of the fashion doll market in 1997, that share had already
10  slipped to 85% or less by the time of the release of "BRATZ".  With the company
11  still struggling under Mr. Eckert to overcome prior years of declining sales and
12  mounting debt, "Barbie," Mattel -- and Mr. Eckert -- simply could not afford the
13  untimely competition.  Mr. Eckert's "leaner" Mattel was not enough to battle more
14  potential erosion in "Barbie's" market share.  Mattel had to combat "BRATZ" and
15  MGA, and in the process revealed Mr. Eckert's "meaner" Mattel.

16

17  **Mattel's Response to "BRATZ" and Efforts to Thwart MGA's Competition**

18       31.    Mattel was not poised to nimbly respond to "BRATZ" with a new,
19  creative product of its own -- indeed, it had been antithetical to Mattel's corporate
20  culture and mentality for Mattel to even conceive that a product might vie for shelf
21  space with "Barbie", let alone be available for sale to consumers mere months after
22  first being shown to retailers.  Mattel had to take a more expeditious route.

23       32.    Instead of fairly competing, Mattel waged war against MGA using a
24  wide-array of tortious, unfair and anti-competitive practices including systematic,
25  serial copycatting and intellectual property infringement, aided by intimidation,
26  threats and other acts of unfair competition and anti-competitive conduct, all with
27  one goal in mind -- to banish MGA from the market -- or minimize its ability to
28  capture any meaningful share before it could do any real harm to Mattel.

9

EXHIBIT _17_
PAGE _1309_

**Mattel's serial copycatting and intellectual property infringement**

33.     Mattel's serial copycatting of MGA's product lines began with the "BRATZ" dolls themselves, but quickly extended to MGA's packaging, themes, accessories, advertising and even other product lines.

34.     The first four "BRATZ" dolls that MGA launched in 2001, named Jade, Yasmin, Cloe and Sasha, met their wannabe "BRATZ PACK" members in October 2002 with Mattel's launch of three "My Scene" dolls named Madison, Chelsea and "Barbie." This was no ordinary "Barbie", however. Indeed, not even close. Mattel designed its "My Scene" dolls to evoke the unique and distinctive look of the "BRATZ" -- also with disproportionately oversized heads, artfully made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-sized feet.

**Mattel's Traditional "Barbie"**        **Mattel's "My Scene" Doll**

circa 2002          circa 2004

    



EXHIBIT _17_
PAGE _1310_

35.     These confusingly similar "BRATZ" imitators may have been originally intended to buy Mattel time while it worked to release another product the following summer, called "Flavas".  MGA's founder, Isaac Larian, was quoted by the media as having predicted that the move would backfire on Mattel, and it did.  Released in July 2003, Mattel's "Flavas" dolls took the urban, "hip-hop" look too far, and were widely viewed as portraying a trampy, "bad-girl" image.  The dolls were not well-received, and rumor has it that Mattel had to sell them at below cost prices to get rid of inventory.  Most apparently wound up in discount bins, and Mattel has seemingly abandoned the line.

36.     Realizing that "My Scene" was its best bet for riding MGA's successful coattails and capitalizing on the unique and inherently distinctive look that MGA had developed in its "BRATZ" dolls – and MGA's substantial goodwill -- Mattel has systematically proceeded to modify the "My Scene" dolls since their original release, particularly their eyes, to increase their similarity to "BRATZ" more and more over time.

37.     Indeed, when Mattel found out that its initial line of "My Scene" dolls had trouble competing with "BRATZ", they simply *became* "BRATZ", in every version, whether blonde, brunette or African American.  A few pictures here are worth a thousand words.

**BLONDE**

| Mattel's<br>Traditional "Barbie" | Mattel's<br>Original "My Scene" | Mattel's<br>Recent "My Scene" |
|---|---|---|
|  |  |  |

11

EXHIBIT _17_
PAGE _1311_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Mattel's Traditional "Barbie" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
| --- | --- | --- |
|  |  |  |

## BRUNETTE

| Mattel's Traditional "Theresa" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
| --- | --- | --- |
|  |  |  |
|  |  |  |

12

EXHIBIT __17__
PAGE __1312__

## AFRICAN AMERICAN

| Mattel's Traditional "Barbie" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
|---|---|---|

 

    

38.   The original "My Scene" eye, as shown here, for example, has recently turned into a virtual carbon-copy of the "BRATZ" eye.

### Original Mattel "My Scene" Eye

13

EXHIBIT 17
PAGE 1313

39.     The "My Scene" eye pictured above, for instance, has lashes that radiate almost straight out, circumferentially, from the eyelids and, although the eye is more almond shaped than a "Barbie" eye, the eye is not so sleepy and heavy lidded as a "BRATZ" eye and is only lightly shadowed.  The new "My Scene" eye, in contrast, is dramatically more similar to a "BRATZ" eye, as shown below in a side-by-side comparison.  The doe-eyed innocent look of the "My Scene" eye shown above is gone; replaced with a sultrier look, characteristic of "BRATZ."  The new "My Scene" eye, as shown below, boasts lashes that sweep out and away from the outer corner of the eye, just like the "BRATZ" eye.  The new "My Scene" eye is also more heavy lidded and thickly lined, and the make-up is more markedly pronounced and dramatic.

**MGA's "BRATZ" Eye**                     **New Mattel "My Scene" Eye**

    

40.     Indeed, the progression of the "My Scene" eye, as it has departed from "Barbie" and edged closer and closer to "BRATZ", is readily apparent from virtually every angle, as shown here:

14

EXHIBIT **17**
PAGE **1314**

## BLONDE

| **Mattel's<br>Traditional "Barbie"** | **Mattel's<br>Original "My Scene"** | **Mattel's<br>Recent "My Scene"** |

 

 

## BRUNETTE

| **Mattel's<br>Traditional "Theresa"** | **Mattel's<br>Original "My Scene"** | **Mattel's<br>Recent "My Scene"** |

  

15

EXHIBIT _17_
PAGE _1315_

| | | |
|---|---|---|
| **Mattel's<br>Traditional "Theresa"** | **Mattel's<br>Original "My Scene"** | **Mattel's<br>Recent "My Scene"** |
|  |  |  |

## AFRICAN AMERICAN

| | | |
|---|---|---|
| **Mattel's<br>Traditional "Barbie"** | **Mattel's<br>Original "My Scene"** | **Mattel's<br>Recent "My Scene"** |
|  |  |  |
|  |  |  |

16

EXHIBIT _17_
PAGE _1316_

41.     Mattel has not stopped at the eyes, however.  Mattel has also incrementally but steadily modified its "My Scene" packaging, and the manner in which the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and total image of MGA's "BRATZ".

42.     To illustrate, Mattel's "My Scene" dolls were initially marketed like this:

### Mattel's Early "My Scene" Packaging

 

43.     Little by little, however, the packaging has changed, creeping ever closer and closer to the open and transparent style of the "BRATZ" packaging. First, the panels seen running down each side of the front of the "My Scene" box shown above, framing the doll and giving the packaging a closed-in look, were changed as shown here:

### Intermediate Mattel "My Scene" Packaging



17

EXHIBIT _17_
PAGE _1317_

44.     Mattel replaced this intermediate packaging style with another that looked even more similar to the "BRATZ" packaging, as shown here in a side-by-side comparison:

**MGA's "BRATZ"**
**"Wintertime Wonderland" Packaging**



**Mattel's "My Scene"**
**"Chillin' Out" Packaging**



45.     Then later, Mattel changed its packaging and product display yet again to look even more closely and confusingly similar to MGA's packaging and "*tout ensemble,*" as shown here

**MGA's "BRATZ"**
**"SPORTZ" Packaging**



**Mattel's Recent "My Scene"**
**"MIAMI GETAWAY" Packaging**



18

EXHIBIT 17
PAGE 1318

46.     In this incarnation, Mattel notably abandoned the signature figure-eight style design that had appeared on its prior "My Scene" packaging, making this recent version clearer and more transparent on the front and sides than ever before, and much more like "BRATZ", accordingly.  Mattel also discarded its traditional, rectangular shaped box and, like "BRATZ", adopted an unusual, non-rectangular shaped box.  Mattel even adopted the "flying banner" ribbon-style slogan running across the middle of the box, similar to that used on the "BRATZ" packaging.

47.     As if these pointed and deliberate efforts to confuse and mislead consumers were not enough, Mattel exacerbated the confusion, and furthered the impression that the "My Scene" line and the "BRATZ" line are related, by taking up MGA's practice of regularly releasing new dolls in connection with a theme – but not just *any* theme, often *MGA's theme.*

48.     For example, when MGA released its "Wintertime Wonderland" theme in Fall 2003, Mattel released its "Chillin Out!" theme.  Each doll in MGA's line came with winter-sports accessories, such as a snowboard or skis and ski boots.  Each doll in Mattel's line featured winter sports accessories, also including snowboards or ski and ski boots.  Even MGA's color schemes and some of the clothing styles seemed to have made their way into the Mattel products.

49.     When MGA released its "Formal Funk" theme, Mattel released its "Night on the Town" theme.  "BRATZ Formal Funk" was an elaborately themed line with its dolls in hip formalwear; so was Mattel's "Night on the Town."

50.     When MGA released its distinctive "Sun-Kissed Summer" theme, Mattel released its confusingly similar "Jammin' in Jamaica" theme.  Each line featured a bright blue-and-orange color scheme, beach accessories, such as surfboards, and beachwear clothing.  Mattel's "Jammin' in Jamaica" "Guava Gulch Tiki Lounge" playset also contained elements remarkably similar to MGA's "Sun-Kissed Summer" playset.

19

EXHIBIT __17__
PAGE __1319__

51.     Mattel also began running television commercials for its "My Scene" dolls bearing a remarkable similarity to "BRATZ" commercials, combining live action with animated sequences set to similar sounding pop music and lyrics.

52.     Mattel even stooped so low as to mimic "BRATZ" accessories and related products in order to further create consumer confusion in the marketplace.

53.     For instance, when MGA came up with its distinctive "BRATZ" "Runway Disco", Mattel came out with a "My Scene" Sound Lounge with packaging that imitated MGA's trapezoidal box.

54.     Mattel's conduct cannot be explained by sheer coincidence, nor is it merely fair competition. It is a calculated and intentional effort unquestionably designed to trade off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products. Out of the seemingly endless possibilities that Mattel could have chosen for a new line of dolls, packaging, themes, color schemes, commercials, accessories and playsets, Mattel deliberately chose *not* to come out with something unique, new or different and has, instead, focused its efforts and resources on flooding the market with something so close to "BRATZ" that the public will, can, and does, simply mistake it for "BRATZ".

55.     As yet another example of this, when MGA came out with a "BRATZ" "Funky Fashion Makeover Head," Mattel came out with a confusingly similar – indeed, practically identical – "My Scene" styling head.

20

EXHIBIT _17_
PAGE _1320_

| MGA's "BRATZ" "Funky Fashion Makeover Head" | Mattel's "My Scene" "Stylin' Head" |
|---|---|

   

   

56.    Indeed, Mattel's "My Scene" styling head is so close to the "BRATZ" styling head that even the press have mistakenly pictured and identified it as MGA's "BRATZ".  The picture of Mattel's "My Scene" styling head shown below, for instance, appeared in the press with a caption indicating that the child was trying out different hairstyles "on a *Bratz* hair and makeup doll head."

Hairstyle practice



21

EXHIBIT 17
PAGE 1321

57.   Creating further confusion, Mattel's television commercial for its "My Scene" styling head was like watching a re-run of MGA's commercial for its "Funky Fashion Makeover Head".

58.   At one point in time, Mattel also used a portion of the "BRATZ" dolls' now-famous trademarked tag line "The Girls With a Passion for Fashion" on Mattel's' website for its "Diva Starz" dolls, asking its website users: "Do you have a passion for fashion?"

59.   Mattel has even recently come out with a confusingly similar line of "My Scene" plush pets, which adopt the distinctive look of MGA's "BRATZ" line. The "My Scene" pets feature large, humanlike eyes and wear clothing making them remarkably and confusingly similar to "BRATZ" products, including "BRATZ PETZ", as seen in this example where the pets each wear a jacket, a cap and carry a purse:

**MGA's "BRATZ Dogz"**          **Mattel's "My Scene" dog**

          

60.   And here too, Mattel chose to package its pets the same way that MGA packaged its "BRATZ PETZ", sitting in an open box, with no top and with partial side panels that slope from a narrow front panel to a higher back panel.

61.   Indeed, the similarity of the "My Scene" pets to "BRATZ PETZ" has confused even sophisticated retailers who have mistakenly merchandised "My Scene" dogs in the middle of the "BRATZ" section of a retail display, next to and as if they were part of MGA's "BRATZ Petz" line.  It comes as no surprise that

22

EXHIBIT _17_
PAGE _1322_

1    customers too have been confused.

2        62.    Indeed, Mattel's television commercials and "My Scene" products
3    have become so confusingly similar to MGA's that even advertising executives
4    have expressed concern. One went so far as to say that although imitation is the
5    best form of flattery, what the individual had seen at Mattel's showroom, and how
6    its "My Scene" dolls now look so confusingly similar to "BRATZ", was
7    "shocking." This person further opined that it was clear that Mattel is intending to
8    confuse customers and capture "BRATZ" market share, and even asked MGA if it
9    was considering legal action.

10       63.    The press also has taken notice of Mattel's attempts to confuse
11   consumers. On or about February 18, 2005, a visitor to MGA's showroom from a
12   prominent news publication stated, "Oh my, I just came from Mattel's showroom
13   and their new 'My Scene' packaging is just like 'BRATZ' minus the handle."
14   Another member of the press visiting MGA's showroom offered the unsolicited
15   comment, "have you seen the new 'My Scene' dolls eyes are exactly like
16   'BRATZ'?" Yet another opined that Mattel's "My Scene" line was exactly like
17   "BRATZ", indeed, so much so that the reporter confusingly thought that Mattel had
18   bought "BRATZ", and still another has commented on Mattel's imitation of MGA.
19   On or about February 16, 2005, during an interview of a Mattel representative on
20   local network news in New York, "My Scene Barbie" was displayed by a Mattel
21   representative. During conversation about the dolls, the interviewer exclaimed that
22   they looked like "BRATZ". The Mattel representative just laughed – but this is no
23   laughing matter. This colloquy was available for replay and viewing, and was even
24   transcribed, on the internet.

25       64.    Customers too have been similarly confused. Some actually contacted
26   MGA seeking to purchase "My Scene" dolls.

27       65.    Mattel's conduct is planned, deliberate and intentional. Mattel has
28   systematically, copied, imitated and liberally borrowed many of the distinctive,

23

EXHIBIT __17__
PAGE __1323__

essential elements that identify and make "BRATZ" dolls "BRATZ" dolls, diluting the brand, creating customer confusion, and unfairly stifling competition.

66.   Ironically, Mattel sued one of its other competitors in Europe for doing much the same thing: "systematically copying and borrowing elements" from "My Scene", on grounds that "this conduct constitutes unfair competition and passing off." Indeed it does.

67.   What is more, Mattel's conduct has reached beyond "BRATZ" and "BRATZ"-related products to include other new MGA toy lines.

68.   For example, MGA's "4-Ever Best Friends" line was the obvious, and well-recognized model for Mattel's "Wee 3 Friends" line. Mattel even adopted changes to the color scheme of its similarly-shaped packaging to create confusion with MGA's distinctive packaging.

**MGA's "4-Ever Best Friends"**          **Mattel's "Wee 3 Friends"**

 

 

24

EXHIBIT 17
PAGE 1324

69.   In the second half of 2002, MGA's "Mommy's Little Patient," originally designed as the first in a series of "Mommy's Little . . ." dolls, was followed by Mattel's "Little Mommy" doll.

<table>
<tr><td align="center"><strong>MGA's<br>"Mommy's Little Patient"</strong></td><td align="center"><strong>Mattel's<br>"Little Mommy Potty Training Baby Doll"</strong></td></tr>
</table>




70.   Sparing nothing, Mattel has also extended its monkey-see monkey-do behavior into its boys' line.  When MGA came out with its "Alien Racers" line of toy racing vehicles, for instance, Mattel rushed to revamp and rename one of its "Hot Wheels" lines.  Although well-known and clearly branded for decades as "Hot Wheels", Mattel's answer to MGA's "Alien Racers" was to re-brand and market its Hot Wheels Highway 35 line under an "AcceleRacerS" logo.  MGA's line consists of "extreme" radio controlled racing vehicles marketed in connection with a strong, almost battle-like, science fiction theme.  MGA's logo accentuates the "A", "R", and "S" in compressed block lettering.  Mattel's line also consists of extreme racing vehicles marketed in connection with a strong, almost battle-like, theme.  Mattel's logo too accentuates the "A", "R", and "S" in compressed block lettering.

25



EXHIBIT *17*
PAGE *1325*

71.     Here, too, Mattel's mimicry has spilled over into Mattel's advertising and thematic presentation and marketing of this toy line. In particular, Mattel has adopted MGA's "other-worldly" theme in its commercials. For instance, in Mattel's commercials, the product, whose logo appears as "AcceleRacerS", now compete against alien-like Cyborgs engaged in a "race to save the world," mimicking MGA's alien theme and commercials in which MGA's "Alien Racers" are engaged in a "race to save the universe."

72.     None of this is coincidence. Mattel has deliberately adopted a pattern and practice of coming out with variations of MGA's products to create confusion in the marketplace, interfere with MGA's business and divert profits away from MGA. Mattel says, on its website, that it is in the business of creating "[t]he world's premier toy brands [of] today and tomorrow." It seemingly does so, however, by borrowing liberally from its competitors, even when it refreshes its own existing brands and products.

73.     MGA has suffered extensive injury from Mattel's conduct. Mattel's habitual, serial simulation of MGA's products, product lines and trade dress has allowed Mattel to take a free ride on the extensive amount of time, expense and creative development MGA expends on developing new products, product packaging and presentation, giving Mattel an unfair advantage, and making it virtually impossible for MGA to compete with Mattel on a level playing field.

**Mattel's additional unfair, manipulative, anti-competitive conduct**

74.     This already substantial injury has been exacerbated by the strong-arm tactics, and other illegitimate, unfair and anti-competitive means that Mattel has used to manipulate the market and ensure that its control and domination of the industry can continue unabated.

26

EXHIBIT _17_
PAGE _1326_

75.    For example, wielding the litigation privilege as a potential shield for intimidating conduct, Mattel has sent threatening letters to several of its former employees who now work for MGA warning them not to disclose *even publicly available information* about Mattel, including the names and positions of Mattel employees.  Mattel even went so far as to sue one of its former senior executives, after he had the temerity to resign and join MGA in October 2004.  Not only was Mattel's lawsuit dismissed for failure to state a viable claim, but Mattel thereafter seemingly could not muster up a shred of evidence sufficient to support an amended complaint.  As a result, Mattel's case against its former executive was dismissed with prejudice.

76.    Mattel has also warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products, or risk retribution.  The threats are not idle.  In May 2004, Mattel terminated one of its licensees, apparently in retribution for licensing "BRATZ".  While some companies have been courageous enough to take the risk, others have not, and MGA has lost valuable licensing opportunities as a result.

77.    Mattel has used similar intimidation to pressure distributors and retailers, particularly in foreign countries, not to distribute "BRATZ", to reduce shelf and display space for "BRATZ" and to place "BRATZ" in unfavorable locations at retail outlets.

78.    When MGA faced a shortage of doll hair in October 2002, MGA is informed and believes that the reason for that shortage was that Mattel had locked MGA out by buying up the supply from the two main hair supply companies.

79.    Mattel has also manipulated the retail market.  For instance, Mattel merchandisers have been caught tampering with MGA's retail displays, replacing favorably located MGA merchandise with Mattel merchandise instead.  MGA is also informed and believes that Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing

27

EXHIBIT _17_
PAGE _1327_

and falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to make such line less attractive to buyers and thereby attempt to increase sales of the competitive Mattel product and improve its own sales, at MGA's expense.

80.    Even supposedly unbiased and impartial industry organizations have fallen prey to Mattel's abusive wield of power, to MGA's detriment.

81.    NPD Funworld ("NPD"), for one, is the leading supplier of sales statistics in the toy industry.  Accurate NPD statistics are essential for efficient product-line management.  Without these statistics, it is difficult, if not impossible, for toy companies to assess and measure the relative success of their products in key categories.  It is, however, a subscription service, and NPD restricts the manner in which its subscribers may use the data it provides.

82.    Mattel has regularly ignored the restrictions – using NPD data about Mattel's comparative standing relative to other companies in press releases and in communications with retailers and financial investors who are not NPD subscribers.

83.    Mattel generates substantially more annual subscription revenue for NPD than does MGA, and carries more clout.

84.    After MGA had subscribed to the service for more than 12 years, NPD terminated MGA's subscription in 2003 theoretically on the grounds that MGA misused NPD data in a press release.

85.    MGA is informed and believes that the termination was the result of pressure from Mattel, notwithstanding Mattel's own frequent violations of NPD's restrictions.

86.    In addition to this, the market share numbers that NPD generates are heavily dependent on the category in which NPD places a particular product.  MGA is informed and believes that Mattel also pressured NPD into changing certain product classifications for its "BRATZ" products in order to manipulate the data

EXHIBIT _17_
PAGE _1328_

1    and preserve Mattel's market share rankings in the critical fashion doll category —

2    and thereby lower MGA's.

3        87.    The Children's Advertising Review Unit ("CARU") is another

4    organization that, upon information and belief, appears to have been subject to

5    improper influence by Mattel.  CARU is the toy industry's supposedly independent

6    self-regulatory body in charge of maintaining standards in advertising.  CARU's

7    approval is considered critical within the toy industry to avoiding regulatory action

8    by the Federal Trade Commission.

9        88.    CARU is heavily subsidized by Mattel.

10       89.    Upon information and belief, Mattel has used its influence as a major

11   contributor to CARU's budget to induce CARU to place onerous restrictions on

12   MGA advertisements, and require MGA to amend aspects of commercials that have

13   gone unchallenged in other parties' commercials.

14       90.    As a result of CARU's restrictions, MGA has been forced to incur

15   unnecessary costs for reshooting and producing or re-editing its commercials.

16       91.    On several occasions, CARU has also either strongly suggested, if not

17   also required, that MGA respond to inquiries about its website policies and make

18   substantial changes to the "BRATZ" website notably and significantly in excess of

19   restrictions imposed on Mattel and others.

20       92.    Even TIA, the toy industry's trade association, is apparently not

21   untainted by Mattel's influence and power.  Each year, TIA presents the Toy-of-

22   the-Year Awards, the most prestigious of which had been the award for Toy of the

23   Year.  Winning the Toy of the Year Award is a significant achievement that not

24   only very likely increases the sales of the winning toy, but also denotes the winning

25   company as a leader in toy innovation and generates substantial goodwill with

26   retailers, distributors, licensees, and customers.

27       93.    For the years 2000 (the first year of the award), 2001 and 2002, the

28   Toy of the Year award was chosen by consumer vote.  The awards ceremony was

EXHIBIT 17
PAGE 1329

1    then held the following year, at a dinner in New York. (For example, the awards

2    dinner for the year 2000 award was held in February 2001). Leap Frog won the

3    2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002

4    People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award,

5    however, the rules suddenly changed. Now, the award is selected by members of

6    the industry.

7        94.    Upon information and belief, this change was orchestrated by a Fisher

8    Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of

9    TIA.

10        95.    Perhaps not surprisingly given this change in the winner selection

11    procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year

12    2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal

13    Funk Super Stylin' Runway Disco."

14        96.    TIA has refused to provide MGA with the vote count procedure and

15    totals for this award, despite repeated requests.

16        97.    MGA is also informed and believes that Mattel was instrumental in

17    attempting to keep MGA from participating as a sponsor in this year's "Kids'

18    Choice Awards."

19        98.    Mattel has clearly engaged in tortious, illegal and unethical behavior in

20    its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently

21    Mattel's current *modus operandi* when it comes to "competing" in the industry.

22    The once immensely successful "LeapFrog" interactive learning product, for

23    example, has apparently been one of Mattel's other recent victims.

24        99.    Mattel may not shield its illegal, unfair and unethical business practices

25    from the public eye. It is time for the truth to be told, and the world to know of

26    Mattel's unfair, unethical and illegal business practices and unfair competition.

27    "Barbie" does not "play nice" with others (particularly her competitors), and needs

28    to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

EXHIBIT __17__

PAGE __1330__

1   allowed to continue to be the playground bully and trample on the rights of others,

2   including MGA.

3       100.  As a result of Mattel's manipulative, illegal, unfair, unethical and anti-

4   competitive conduct, MGA has suffered and, unless abated, will continue to suffer

5   lost sales, lost licensing fees, lost contracts, lost relationships, lost business

6   opportunities and other damages and harm for which there is no adequate remedy at

7   law.  Its ability to enter new markets and product lines has been hampered and

8   delayed.  Its production costs have increased, its reputation and relationships with

9   important players in the industry have been negatively impacted, the value of its

10  business has been diminished, and its ability to attract, hire and retain employees

11  has been affected.

12

13                **FIRST CLAIM FOR RELIEF**

14  **(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**

15      101.  MGA repeats and realleges the allegations contained in paragraphs 1

16  through 100 of this Complaint and incorporates them by reference as though fully

17  and completely set forth herein.

18      102.  MGA's "BRATZ" line has a unique and distinctive style and

19  distinctive characteristics, such as the disproportionately large head, large dramatic

20  eyes with a distinctive presentation (including the eye shape, make-up and lashes),

21  pouty, plump lips with a distinctive presentation (including the lip shape and make-

22  up), small, thin bodies, oversized feet, and up-to-date fashions.  MGA's "BRATZ"

23  line is known for and recognized by the total image that is presented by its product

24  and the style and arrangement of the packaging and display.  This "*tout ensemble*"

25  is representatively described and depicted herein.  The characteristics of MGA's

26  "BRATZ" line, alone or in combination, have come to identify the "BRATZ" line

27  and its source, MGA, and thus serve as protectable trade dress.  MGA's trade dress

28  in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it

EXHIBIT __17__

PAGE __1331__

1   is not essential to the purpose, quality or source identifying attributes of the

2   aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has

3   acquired distinction within the meaning of the Lanham Act.

4       103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also

5   has its own unique and distinctive characteristics, such as the humanlike eye and

6   unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ"

7   line has become known for and recognized by the total image that is presented by

8   the product and the style and arrangement of its packaging. This *"tout ensemble"* is

9   representatively described and depicted herein. The characteristics of MGA's

10  "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ

11  PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's

12  trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if

13  any utility exists, it is not essential to the purpose, quality or source identifying

14  attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is

15  inherently distinctive or has acquired distinction within the meaning of the Lanham

16  Act.

17      104. Mattel's production, sale and marketing of "My Scene" dolls,

18  including styling heads and doll heads, and "My Scene" pets that are confusingly

19  similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's

20  permission or consent, constitutes designation and use of a term, symbol, device or

21  combination thereof that is false or misleading within the meaning of 15 U.S.C.

22  Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as

23  to the affiliation, connection, or association, or as to the origin, sponsorship, or

24  approval of Mattel's goods or commercial activities, within the meaning of 15

25  U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

26      105. Mattel's conduct has been intentional and willful, and is calculated

27  specifically to trade off the goodwill that MGA has developed in its successful

28  "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

32

EXHIBIT __17__

PAGE __1332__

features of MGA's "BRATZ" line in connection with goods sold and distributed in interstate commerce, Mattel has infringed and is likely to continue to infringe on MGA's substantial rights in and to the "BRATZ" line trade dress.  In so doing, Mattel has falsely represented and designated to the public generally and consumers of fashion doll products specifically the source and origin of Mattel's "My Scene" fashion doll products in violation of 15 U.S.C. § 1125(a).

106.  MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

107.  For each act of infringement, MGA is entitled to recover its actual damages as well as Mattel's profits from such infringement.

108.  Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's illegal actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade dress.

## SECOND CLAIM FOR RELIEF

**(Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law)**

109.  MGA repeats and realleges the allegations contained in paragraphs 1 through 108 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

110.  Mattel has deliberately and, indeed, repeatedly adopted, imitated and mimicked the make-up, appearance, features, trade dress, and image of MGA's products, packaging and advertising, including its repackaging and refreshing of older Mattel toys.  Mattel's actions were and are done with the intent to deceive consumers, cause confusion and mistake, and interfere with the ability of consumers to identify the source of goods by appearance and packaging.  By this

33

EXHIBIT _17_
PAGE _1333_

1    conduct, Mattel pirates and exploits, by subliminal or conscious association with

2    MGA, the goodwill and reputation of MGA and derives benefit therefrom.

3        111.  Mattel has particularly and deliberately poached upon the commercial

4    magnetism of MGA's "BRATZ" and the success of "BRATZ". Mattel's conduct

5    has been intentional and willful, and is calculated specifically to trade off the

6    goodwill that MGA has developed in its successful "BRATZ" line.

7        112.  By its acts, including its intentional imitation of the distinctive features

8    of MGA's "BRATZ" dolls, which has progressively become closer and closer, as

9    well as its imitation of "BRATZ" themes, packaging and the overall look, feel and

10   total image of the "BRATZ" line, imitation of other MGA products, packaging and

11   advertising, and other conduct alleged herein, Mattel has engaged in unfair

12   competition under both federal and California state law.

13       113.  Mattel has also willfully and maliciously used its power, influence and

14   intimidation to threaten certain retailers, suppliers, licensees, distributors and

15   manufacturers so as to limit, if not prevent, MGA from doing business with these

16   retailers, suppliers, licensees, distributors and manufacturers, using its power and

17   influence to intimidate and manipulate industry bodies. Mattel has further used its

18   power and influence to attempt to, if not actually, intimidate and threaten MGA's

19   current and potential employees so as to cause MGA competitive injury.

20       114.  Alone, in combination, or in totality, Mattel's actions discussed and

21   alleged herein constitute unfair competition and unfair business practices within the

22   meaning of federal law, California statutory law and/or California common law.

23       115.  As a result of its conduct, Mattel has derived substantial monetary and

24   non-monetary benefit and business advantage. Mattel has also wrongfully diverted

25   profits away from MGA and to Mattel and, on information and belief, deprived

26   MGA of the patronage of a large number of actual and potential customers.

27       116.  MGA has been damaged by, and Mattel has profited from, Mattel's

28   wrongful conduct in an amount to be proven at trial.

EXHIBIT _17_
PAGE _1334_

117.   Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from engaging in acts of unfair competition and unfair business practices.

118.   MGA is further entitled to relief whereby Mattel is ordered to pay restitution for damages resulting from Mattel's unfair competition and unfair business practices.

## THIRD CLAIM FOR RELIEF

### (Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330 and California Common Law)

119.   MGA repeats and realleges the allegations contained in paragraphs 1 through 118 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

120.   The look and trade dress of the MGA products referenced herein are distinctive and famous, and have been since before Mattel launched its similar versions.  By its aforesaid acts, Mattel caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress, which previously served as a unique source identifier for MGA, within the meaning of the Lanham Act, California Business and Professions Code § 14330 and/or California common law.

121.   Mattel's conduct has been intentional and willful, calculated specifically to trade on MGA's goodwill and reputation and to cause dilution of MGA's famous marks, particularly those connected with MGA's famous and successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky Fashion Makeover Head" and "BRATZ PETZ" line.

122.   MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

35

EXHIBIT __17__
PAGE __1335__

123.   Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing dilution.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

124.   MGA repeats and realleges the allegations contained in paragraphs 1 through 123 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

'125.   As a result of the conduct alleged herein, Mattel has been unjustly enriched to MGA's detriment.  MGA seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, MGA prays for relief, as follows:

1.   That Mattel, its agents, servants and employees and all persons acting in concert be restrained preliminarily and permanently from directly or indirectly:

    a.   using confusingly similar trade dress;

    b.   improperly influencing, or attempting to improperly influence, standard-setting and industry organizations;

    c.   engaging in unfair competition and unfair business practices; and

    d.   diluting MGA's trade dress;

2.   For general and actual damages, according to proof at trial but believed to reach or exceed tens of millions of dollars;

3.   For the disgorgement of all profits derived by Mattel for its acts of:

    a.   false designation of origin or affiliation;

EXHIBIT __17__
PAGE __1336__

1           b.     unfair competition and unfair business practices; and

2           c.     dilution;

3      4.     For costs of suit and reasonable attorneys' fees;

4      5.     For punitive and/or exemplary damages as a result of Mattel's willful

5 and malicious conduct to the extent allowable by law; and

6      6.     For such other and further relief as the Court deems just and proper.

7

8 Dated:      April 13, 2005           PATRICIA GLASER

9                                        CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO LLP

10

11                                    DALE M. CENDALI DIANA M. TORRES

12                                    PAULA E. AMBROSINI O'MELVENY & MYERS LLP

13

14

15                                  By:

16                                    Diana M. Torres Attorneys for Plaintiff MGA ENTERTAINMENT, INC.

17

18

19

20

21

22

23

24

25

26

27

28

37

EXHIBIT 17
PAGE 1337

# **DEMAND FOR JURY TRIAL**

MGA hereby demands a jury trial on all triable issues.

Dated:      April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

38

EXHIBIT _17_
PAGE _1338_

# EXHIBIT 18

1   Patricia L. Glaser, State Bar No. 055668
    Pglaser@glaserweil.com
2   Joel N. Klevens, State Bar No. 045446
    Jklevens@glaserweil.com
3   GLASER, WEIL, FINK, JACOBS,
     HOWARD & SHAPIRO, LLP
4   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
5   Telephone:   310-553-3000
    Facsimile:   310-556-2920
6
7   Russell J. Frackman, State Bar No. 049087
    rjf@msk.com
8   MITCHELL, SILBERBERG & KNUPP, LLP
    11377 West Olympic Boulevard
9   Los Angeles, California 90064
    Telephone:   310-312-2000
10  Facsimile:   310-312-3100

11  Attorneys for the MGA Parties for Phase 2

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

14

15  CARTER BRYANT, an individual        ) Case No. CV 04-9049 SGL (RNBx)
                                        )
16              Plaintiff,              ) Consolidated with: Case No. CV 04-
                                        ) 9059 and Case No. CV 05-2727
17  v.                                  )
                                        ) **Hon. Stephen J. Larson**
18  MATTEL, INC., a Delaware            )
    Corporation                         ) **MGA PARTIES' ANSWER AND**
19                                      ) **AFFIRMATIVE DEFENSES TO**
                Defendant.              ) **MATTEL, INC.'S THIRD**
20                                      ) **AMENDED ANSWER AND**
                                        ) **COUNTERCLAIMS**
21  _____   )
                                        ) **Phase 2**
22  AND CONSOLIDATED ACTIONS           ) Discovery Cut-off: December 11, 2009
                                        ) Pre-Trial Conference: March 1, 2010
23                                      ) Trial Date: March 23, 2010
                                        )
24  _____

25

26                          EXHIBIT  _18_
27                          PAGE  _1339_
28
680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

1   Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA Entertainment
2   (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Isaac Larian (collectively, the
3   "MGA Parties") hereby answer the Third Amended Counterclaim of Mattel, Inc.
4   ("Mattel") as follows:
5   As a preliminary matter, Mattel's use of headings throughout its counterclaims
6   is improper, and therefore no response to Mattel's headings is required.  If any
7   response is required, the MGA Parties deny all allegations contained in Mattel's
8   headings.

## RESPONSES

10   1.   The MGA Parties deny the allegations set forth in paragraph 1.
11   2.   The MGA Parties deny the allegations set forth in paragraph 2.
12   3.   The MGA Parties admit that the jury in the Phase 1 trial reached a
13   verdict on July 17, 2008.  The contents of that verdict speak for themselves.  The
14   MGA Parties deny the remaining allegations set forth in paragraph 3.
15   4.   The MGA Parties admit that MGA decided to expand into Mexico
16   in or about 2004, and deny the remaining allegations set forth in paragraph 4.
17   5.   The MGA Parties deny the allegations set forth in paragraph 5.
18   6.   The MGA Parties deny the allegations set forth in paragraph 6.
19   7.   The MGA Parties deny the allegations set forth in paragraph 7.
20   8.   The MGA Parties admit that the Court has federal question
21   jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§ 101
22   and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the
23   Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.
24   9.   The MGA Parties admit that venue is proper in this District for
25   Mattel's claims based on conduct alleged to have occurred within this District and
26   deny that venue is proper in this District for acts alleged to have occurred in Mexico,
27   Canada, Hong Kong, or other places outside of this District.
28   10.   The MGA Parties admit the allegations set forth in paragraph 10.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

1

EXHIBIT _18_
PAGE _1340_

1    11.    The MGA Parties admit the allegations set forth in the first and

2  second sentences of paragraph 11 and deny the remaining allegations set forth in

3  paragraph 11.

4    12.    The MGA Parties admit that Carter Bryant ("Bryant") was

5  formerly employed by Mattel.  The MGA Parties further admit that Bryant later

6  worked for MGA after leaving Mattel.  The MGA Parties deny the remaining

7  allegations set forth in paragraph 12.

8    13.    The MGA Parties admit the allegations set forth in the first

9  sentence of paragraph 13 and deny the remaining allegations set forth in paragraph

10  13.

11    14.    The MGA Parties admit the allegations set forth in paragraph 14.

12    15.    The MGA Parties admit the allegations set forth in the first

13  sentence of paragraph 15.  The MGA Parties deny the remaining allegations set forth

14  in paragraph 15.

15    16.    The MGA Parties deny the allegations set forth in paragraph 16.

16    17.    The MGA Parties deny the allegations set forth in paragraph 17.

17    18.    The MGA Parties deny the allegations set forth in paragraph 18.

18    19.    The MGA Parties deny the allegations set forth in paragraph 19.

19    20.    The MGA Parties deny the allegations set forth in paragraph 20.

20    21.    The MGA Parties admit that Carlos Gustavo Machado Gomez

21  ("Machado") resided in this District at the time he was named and served as a

22  Counter-defendant in the Second Amended Answer and Counterclaims.  The MGA

23  Parties deny the remaining allegations in paragraph 21.

24    22.    Paragraph 22 is a statement of Mattel's legal position, to which no

25  response is necessary.  To the extent that a response is required, the MGA Parties

26  deny the allegations set forth in paragraph 22.

27    23.    The MGA Parties admit the allegations set forth in the first

28  sentence of paragraph 23.  The MGA Parties are without sufficient knowledge to

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

2

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT  18
PAGE  134

1 admit or deny the remaining allegations set forth in paragraph 23, and on that basis,

2 deny the remaining allegations set forth in paragraph 23.

3       24.    The MGA Parties are without sufficient knowledge to admit or

4 deny the allegations set forth in paragraph 24, and on that basis, deny the allegations

5 set forth in paragraph 24.

6       25.    The MGA Parties are without sufficient knowledge to admit or

7 deny the allegations set forth in paragraph 25, and on that basis, deny the allegations

8 set forth in paragraph 25.

9       26.    The MGA Parties admit that MGA is a toy manufacturer, that

10 MGA began as a consumer electronics business and expanded into the toy business

11 with licenses to sell handheld electronic games, and later expanded its business by

12 launching the Bratz fashion doll line, and deny the remaining allegations set forth in

13 paragraph 26.

14       27.    The MGA Parties deny the allegations set forth in paragraph 27.

15       28.    The MGA Parties admit that Carter Bryant is a former employee

16 of Mattel, and state they are without sufficient knowledge to admit or deny the

17 remaining allegations set forth in paragraph 28, and on that basis, deny the remaining

18 allegations set forth in paragraph 28.

19       29.    The MGA Parties are without sufficient knowledge to admit or

20 deny the allegations set forth in paragraph 29, and on that basis, deny the allegations

21 set forth in paragraph 29.

22       30.    The MGA Parties are without sufficient knowledge to admit or

23 deny the allegations set forth in paragraph 30, and on that basis, deny the allegations

24 set forth in paragraph 30.

25       31.    The MGA Parties are without sufficient knowledge to admit or

26 deny the allegations set forth in paragraph 31, and on that basis, deny the allegations

27 set forth in paragraph 31.

28

680227

EXHIBIT __18__

PAGE __1342__

3

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

32.    The MGA Parties are without sufficient knowledge to admit or
deny the allegations set forth in paragraph 32, and on that basis, deny the allegations
set forth in paragraph 32.

33.    The MGA Parties deny the allegations set forth in paragraph 33.

34.    The MGA Parties deny the allegations set forth in paragraph 34.

35.    The MGA Parties deny the allegations set forth in paragraph 35.

36.    The MGA Parties deny the allegations set forth in paragraph 36.

37.    The MGA Parties admit that after MGA made the decision to
proceed with the manufacture of the Bratz dolls, MGA employees communicated
with employees of MGA Entertainment (HK) Limited on subjects including the
manufacturing of Bratz, and deny the remaining allegations set forth in the first
sentence of paragraph 37.  The MGA Parties admit the second sentence of paragraph
37.

38.    The MGA Parties admit that preliminary samples of the four
original Bratz dolls were shown at the Hong Kong Toy Fair in January 2001, and
deny the remaining allegations set forth in paragraph 38.

39.    The MGA Parties admit that MGA and its subsidiaries have
distributed and sold Bratz and Bratz-related products in many countries throughout
the world, that MGA and its subsidiaries have licensed Bratz to third parties, that
MGA has derived substantial revenues from its sales and licenses of Bratz in excess
of $500 million, that MGA and its subsidiaries continue to market, sell and license
Bratz to the extent permitted by the Court's orders, and deny the remaining allegations
set forth in paragraph 39.

40.    The MGA Parties deny the allegations set forth in paragraph 40.

41.    The MGA Parties deny the allegations set forth in paragraph 41.

42.    The MGA Parties deny the allegations set forth in paragraph 42.

EXHIBIT  _18_
PAGE  _1343_

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

4

43.     The MGA Parties admit that Bryant had an agreement with MGA, state that the terms of the agreement speak for themselves, and deny the remaining allegations set forth in paragraph 43.

44.     The MGA Parties admit that in or about early 2004, MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to conduct business in Mexico, admit that MGAE de Mexico hired three former employees of Mattel's Mexican subsidiary, and deny the remaining allegations set forth in paragraph 44.

45.     The MGA Parties admit that Carlos Gustavo Machado Gomez was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that Machado had access to some nonpublic business information of Mattel Mexico, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 45, and on that basis, deny the remaining allegations set forth in paragraph 45.

46.     The MGA Parties admit that Mariana Trueba Almada was a Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had access to some nonpublic business information of Mattel Mexico, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 46, and on that basis, deny the remaining allegations set forth in paragraph 46.

47.     The MGA Parties admit that Pablo Vargas San Jose was a Trade Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel Mexico from March 2001 until April 19, 2004, admit that Vargas had access to some nonpublic business information of Mattel Mexico, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 47, and on that basis, deny the remaining allegations set forth in paragraph 47.

48.     The MGA Parties admit that in or about early 2004, Machado, Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba

680227

5

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _18_
PAGE _134_

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not

2  identify their new employer to Mattel Mexico, admit that Machado, Trueba and

3  Vargas were offered and accepted employment with MGAE de Mexico, and deny the

4  remaining allegations set forth in paragraph 48.

5          49.    The MGA Parties admit that MGA personnel communicated by

6  telephone with Machado and Vargas prior to their Mattel resignations, admit that

7  MGA personnel, including Larian, communicated by e-mail with Machado and

8  Vargas concerning terms of potential employment with MGA through an America

9  Online e-mail account with the address <plot04@aol.com>, and deny the remaining

10  allegations set forth in paragraph 49.

11          50.    The MGA Parties admit that in or about March 2004, Machado,

12  Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April 2004,

13  admit that in or about March 2004, Machado, Trueba, and Vargas discussed with

14  MGA personnel, including Larian, employment at MGAE de Mexico, state that the e-

15  mails speak for themselves, and deny the remaining allegations set forth in paragraph

16  50.

17          51.    The MGA Parties are without sufficient knowledge to admit or

18  deny the allegations set forth in paragraph 51, and on that basis, deny the allegations

19  set forth in paragraph 51.

20          52.    The MGA Parties are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 52, and on that basis, deny the allegations

22  set forth in paragraph 52.

23          53.    The MGA Parties are without sufficient knowledge to admit or

24  deny the allegations set forth in paragraph 53, and on that basis, deny the allegations

25  set forth in paragraph 53.

26          54.    The MGA Parties are without sufficient knowledge to admit or

27  deny the allegations set forth in the third sentence of paragraph 54, and on that basis,

28  deny these allegations, and deny the remaining allegations set forth in paragraph 54.

680227                                           6

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 18
PAGE 1345

55. The MGA Parties deny the allegations set forth in paragraph 55.

56. The MGA Parties deny the allegations set forth in paragraph 56.

57. The MGA Parties are without sufficient knowledge to admit or deny the allegation that MGA publicized a claim that, in 2005, it had increased its Mexican market share by 90% over the prior year, and on that basis, deny this allegation, and deny the remaining allegations set forth in paragraph 57.

58. The MGA Parties deny the allegations set forth in paragraph 58.

59. The MGA Parties deny the allegations set forth in paragraph 59.

60. The MGA Parties admit that on October 27, 2005, at Mattel's behest, Mexican authorities searched MGAE de Mexico and seized certain documents, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 60, and on that basis, deny the remaining allegations set forth in paragraph 60.

61. To the extent that paragraph 61 purports to characterize Machado's deposition, the MGA Parties state that Machado's deposition transcript speaks for itself. The MGA Parties admit that Machado was transferred from MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado has resided in the County of Los Angeles, and deny the remaining allegations set forth in paragraph 61.

62. The MGA Parties admit the allegations set forth in the first sentence of paragraph 62. The MGA Parties admit that Tyco Toys hired Brawer on April 22, 1996, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in the second sentence of paragraph 62, and on that basis, deny the remaining allegations set forth in the second sentence of paragraph 62. The MGA Parties admit that on April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the remaining allegations in the fourth sentence of paragraph 62 are a statement of Mattel's legal position, to

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

7

EXHIBIT _18_
PAGE ___

1   which no response is necessary.  To the extent a response is required, the MGA

2   Parties deny the remaining allegations set forth in paragraph 62.

3          63.    The MGA Parties are without sufficient knowledge to admit or

4   deny the allegations set forth in paragraph 63, and on that basis, deny the allegations

5   set forth in paragraph 63.  The last sentence of paragraph 63 is a statement of Mattel's

6   legal position, to which no response is necessary.  To the extent a response is

7   required, the MGA Parties deny the remaining allegations set forth in last sentence of

8   paragraph 63.

9          64.    The MGA Parties admit that by 2003, Brawer had advanced

10  within Mattel to a Senior Vice President position over customer marketing, and state

11  that the remaining allegations in the first sentence of paragraph 64 are a statement of

12  Mattel's legal position, to which no response is necessary.  To the extent a response is

13  required, the MGA Parties deny the remaining allegations set forth in the first

14  sentence of paragraph 64.  The MGA Parties admit that in his executive position,

15  Brawer was provided access to certain nonpublic Mattel information, and deny the

16  remaining allegations set forth in the second sentence of Paragraph 64.

17         65.    The MGA Parties admit the allegations set forth in the first

18  sentence of paragraph 65.  The MGA Parties deny the allegations set forth in the

19  second sentence of paragraph 65.  The MGA Parties are without sufficient knowledge

20  to admit or deny the remaining allegations set forth in paragraph 65, and on that basis,

21  deny the remaining allegations set forth in paragraph 65.

22         66.    The MGA Parties are without sufficient knowledge to admit or

23  deny the allegations set forth in paragraph 66, and on that basis, deny the allegations

24  set forth in paragraph 66.

25         67.    The MGA Parties admit that in April 2004, Mattel made Brawer a

26  Senior Vice President/General Manager, and state that they are without sufficient

27  knowledge to admit or deny the remaining allegations set forth in paragraph 67, and

28  on that basis, deny the allegations set forth in paragraph 67.

680227                                             8

EXHIBIT _18_
PAGE _1347_

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

68.   The MGA Parties admit that in May 2004, Brawer began performing General Manager duties, working with one of Mattel's major retail customer accounts, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 68, and on that basis, deny the allegations set forth in paragraph 68.

69.   The MGA Parties admit the allegations set forth in the first sentence of paragraph 69.  The MGA Parties admit that as Brawer left, he carried a large cardboard box, and deny the remaining allegations set forth in the second sentence of paragraph 69.  The MGA Parties state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 69, and on that basis, deny the remaining allegations set forth in paragraph 69.

70.   The MGA Parties admit the allegations set forth in paragraph 70.

71.   The MGA Parties admit that on September 20, 2004, Mattel hand-delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 71.

72.   The MGA Parties admit that at his exit interview on September 29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer stated that he had not signed the Code of Conduct, and deny the remaining allegations set forth in paragraph 72.

73.   The MGA Parties admit that on October 1, 2004, Brawer's last day of employment with Mattel, Mattel delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 73.

74.   The MGA Parties admit that Brawer became MGA's Executive Vice President of Sales and Marketing, admit that Brawer was responsible for sales worldwide, admit that Brawer had and continues to have responsibility for MGA's

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _18_
PAGE _____

1  accounts with some of the same retailers that Brawer worked with while at Mattel,

2  and deny the remaining allegations set forth in paragraph 74.

3      75.    The MGA Parties admit that Brawer stated during his exit

4  interview that he had returned all confidential proprietary information to Mattel, state

5  that he did not provide copies of information from his personal contacts file, and deny

6  the remaining allegations set forth in paragraph 75.

7      76.    The MGA Parties admit that since leaving Mattel, Brawer has had

8  contacts with certain Mattel employees, both by telephone and electronic mail, and

9  deny the remaining allegations set forth in paragraph 76.

10      77.    The MGA Parties admit that MGA Entertainment, Inc., hired

11  Jorge Castilla ("Castilla") on or around March 13, 2006 and admit that Castilla was

12  previously employed by Mattel.  The MGA Parties deny that MGA "recruited"

13  Castilla.  The MGA Parties are without sufficient knowledge to admit or deny the

14  remaining allegations set forth in paragraph 77, and on that basis, deny the remaining

15  allegations set forth in paragraph 77.

16      78.    The MGA Parties admit that Castilla was previously employed by

17  Mattel.  The MGA Parties are without sufficient knowledge to admit or deny the

18  remaining allegations set forth in paragraph 78, and on that basis, deny the remaining

19  allegations set forth in paragraph 78.

20      79.    The MGA Parties admit that Castilla was previously employed by

21  Mattel.  The MGA Parties are without sufficient knowledge to admit or deny the

22  remaining allegations set forth in paragraph 79, and on that basis, deny the remaining

23  allegations set forth in paragraph 79.

24      80.    The MGA Parties are without sufficient knowledge to admit or

25  deny the allegations set forth in paragraph 80, and on that basis, deny the allegations

26  set forth in paragraph 80.

27  ///

28  ///

EXHIBIT  _18_

PAGE  _1349_

680227

10

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1     81.   The MGA Parties are without sufficient knowledge to admit or
2 deny the allegations set forth in paragraph 81, and on that basis, deny the allegations
3 set forth in paragraph 81.

4     82.   The MGA Parties are without sufficient knowledge to admit or
5 deny the allegations set forth in paragraph 82, and on that basis, deny the allegations
6 set forth in paragraph 82.

7     83.   The MGA Parties are without sufficient knowledge to admit or
8 deny the allegations set forth in paragraph 83, and on that basis, deny the allegations
9 set forth in paragraph 83.

10     84.   The MGA Parties are without sufficient knowledge to admit or
11 deny the allegations set forth in paragraph 84, and on that basis, deny the allegations
12 set forth in paragraph 84.

13     85.   The MGA Parties are without sufficient knowledge to admit or
14 deny the allegations set forth in paragraph 85, and on that basis, deny the allegations
15 set forth in paragraph 85.

16     86.   To the extent that paragraph 86 purports to characterize Castilla's
17 deposition, the MGA Parties state that Castilla's deposition transcript speaks for
18 itself. The MGA Parties admit that Castilla, before he was employed by MGA,
19 turned over to FBI agents a storage media from his personal digital device. The MGA
20 Parties deny the remaining allegations set forth in paragraph 86.

21     87.   The MGA Parties deny the allegations set forth in paragraph 87.
22     88.   The MGA Parties deny the allegations set forth in paragraph 88.
23     89.   The MGA Parties are without sufficient knowledge to admit or
24 deny the allegations set forth in paragraph 89, and on that basis, deny the allegations
25 set forth in paragraph 89.

26     90.   The MGA Parties are without sufficient knowledge to admit or
27 deny the allegations set forth in paragraph 90, and on that basis, deny the allegations
28 set forth in paragraph 90.

680227

EXHIBIT 18
PAGE 1350

1    91.   The MGA Parties admit that on September 26, 2005, Janine

2  Brisbois ("Brisbois") resigned from Mattel Canada, state that she took a position as

3  Vice President of National Accounts at MGAE Canada, and deny the remaining

4  allegations set forth in the first sentence of paragraph 91. The MGA Parties are

5  without sufficient knowledge to admit or deny the remaining allegations set forth in

6  paragraph 91, and on that basis, deny the remaining allegations set forth in paragraph

7  91.

8    92.   The MGA Parties admit that Brisbois spoke with Larian by

9  telephone on or about the evening of September 22, 2005, deny that Brisbois copied

10  approximately 45 Mattel documents onto a USB or thumb drive on that same date,

11  deny that Brisbois concealed the thumb drive the last time she left Mattel Canada's

12  office, and state that they are without sufficient knowledge to admit or deny the

13  remaining allegations set forth in paragraph 92, and on that basis, deny the remaining

14  allegations set forth in paragraph 92.

15    93.   The MGA Parties deny the allegations set forth in paragraph 93.

16    94.   The MGA Parties admit that Brisbois traveled several times to

17  MGA's offices in Van Nuys, California, and met with Larian and Brawer, that MGA

18  issued a press release, state that the press release speaks for itself, and deny the

19  remaining allegations set forth in paragraph 94.

20    95.   The MGA Parties state that Veronica Marlow's deposition

21  transcript speaks for itself. The MGA Parties deny the allegations set forth in

22  paragraph 95.

23    96.   The MGA Parties are without sufficient knowledge to admit or

24  deny the allegations set forth in paragraph 96, and on that basis, deny the allegations

25  set forth in paragraph 96.

26    97.   To the extent that paragraph 97 purports to characterize or quote

27  e-mails, the MGA Parties state that those e-mails speak for themselves. The MGA

28

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 18
PAGE 1367

1   Parties admit that they hired Maria Elena Salazar.  The MGA Parties deny the
2   remaining allegations set forth in paragraph 97.

3           98.   The MGA Parties deny the allegations set forth in paragraph 98.

4           99.   The MGA Parties deny the allegations set forth in the first
5   sentence of paragraph 99.  The MGA Parties admit that Larian has sent e-mail
6   messages to a "Bratz News" distribution list, admit that the recipients of e-mail
7   messages sent to the "Bratz News" distribution list includes members of the media as
8   well as representatives of customers of both MGA and Mattel, and deny the
9   remaining allegations set forth in paragraph 99.

10         100.   The MGA Parties admit that on May 12, 2006, Larian sent an e-
11   mail message to the "Bratz News" distribution list that included a reference to the
12   new My Scene product with real gems, and state that they are without sufficient
13   knowledge to admit or deny the remaining allegations set forth in paragraph 100, and
14   on that basis, deny the remaining allegations set forth in paragraph 100.

15         101.   The MGA Parties admit that Larian told one retailer that such
16   retailer was the only retailer with plans to purchase MY SCENE BLING BLING with
17   real gems, at a time when Larian had a good faith belief that such retailer was the only
18   retailer with plans to purchase MY SCENE BLING BLING with real gems, and deny
19   the remaining allegations set forth in paragraph 101.

20         102.   The MGA Parties deny the allegations set forth in paragraph 102.

21         103.   The MGA Parties deny the allegations set forth in paragraph 103.

22         104.   The MGA Parties admit that Larian offered sworn testimony
23   during Phase 1 that Bryant told him, and that Larian believed, that Bryant had not
24   created Bratz while employed by Mattel.  The MGA Parties deny the remaining
25   allegations set forth in paragraph 104.

26         105.   The MGA Parties deny the allegations set forth in paragraph 105.

27         106.   The MGA Parties deny the allegations set forth in paragraph 106.

28         107.   The MGA Parties deny the allegations set forth in paragraph 107.

680227

13

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 18
PAGE 1352

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

108.   The MGA Parties deny the allegations set forth in paragraph 108.

109.   The MGA Parties are without sufficient knowledge to admit or
deny the allegations set forth in paragraph 109, and on that basis, deny the allegations
set forth in paragraph 109.

110.   The MGA Parties deny the allegations set forth in paragraph 110.

111.   The MGA Parties deny the allegations set forth in paragraph 111.

112.   The MGA Parties admit that Shirin Makabi is Isaac Larian's sister
and that Jahangir Eli Makabi is Isaac Larian's brother-in-law, and that both are
shareholders of MGA.  The MGA Parties deny the remaining allegations set forth in
paragraph 112.

113.   The MGA Parties admit that on or around July 21, 2008,
Wachovia accelerated the maturity of MGA's outstanding debt obligations,
amounting to $313 million, owed to Wachovia, and deny the remaining allegations set
forth in paragraph 113.

114.   The MGA Parties deny the allegations set forth in paragraph 114.

115.   The MGA Parties admit that Omni 808 has represented to the
Court that its acquisition of the Wachovia note was an arms-length transaction and
that the funds used for the acquisition did not originate from the MGA Parties, and
deny the remaining allegations set forth in paragraph 115.  To the extent that
paragraph 115 purports to characterize certain documents, the MGA Parties state that
those documents speak for themselves.

116.   The MGA Parties admit that Leon Neman is Larian's brother-in-
law.  The MGA Parties deny that Vision Capital is affiliated with MGA.  The MGA
Parties are without sufficient knowledge to admit or deny the remaining allegations
set forth in paragraph 116, and on that basis, deny the remaining allegations set forth
in paragraph 116.

117.   The MGA Parties deny the allegations set forth in paragraph 117.

EXHIBIT 18
PAGE 1383

1    118.   To the extent that paragraph 118 purports to characterize or quote
2  documents, the MGA Parties state that those documents speak for themselves.  The
3  MGA Parties deny the allegations set forth in paragraph 118.

4    119.   The MGA Parties deny the allegations set forth in paragraph 119.

5    120.   The MGA Parties deny the allegations set forth in paragraph 120.

6    121.   To the extent that paragraph 121 purports to characterize certain
7  documents, the MGA Parties state that those documents speak for themselves.  The
8  MGA Parties admit that MGA shareholders have loaned the amounts alleged in
9  paragraph 121 to MGA.  Except as otherwise admitted, the MGA Parties deny the
10  remaining allegations set forth in paragraph 121.

11    122.   The MGA Parties deny the allegations set forth in paragraph 122.

12    123.   The MGA Parties deny the allegations set forth in paragraph 123.

13    124.   To the extent that paragraph 124 purports to characterize or quote
14  documents, the MGA Parties state that those documents speak for themselves.  The
15  MGA Parties deny the allegations set forth in paragraph 124.

16    125.   To the extent that paragraph 125 purports to characterize or quote
17  documents, the MGA Parties state that those documents speak for themselves.  The
18  MGA Parties deny the allegations set forth in paragraph 125.

19    126.   The MGA Parties deny the allegations set forth in paragraph 126.

20    127.   The MGA Parties repeat their responses contained in paragraphs 1
21  through 126 of this Answer and incorporate them by reference as though fully and
22  completely set forth herein.

23    128.   The MGA Parties deny the allegations set forth in paragraph 128.

24    129.   The MGA Parties deny the allegations set forth in paragraph 129.

25    130.   The MGA Parties deny the allegations set forth in paragraph 130.

26    131.   The MGA Parties deny the allegations set forth in paragraph 131.

27    132.   The MGA Parties deny the allegations set forth in paragraph 132.

28

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 18

PAGE 1354

1    133.    The MGA Parties repeat their responses contained in paragraphs 1

2    through 132 of this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4    134.    The MGA Parties deny the allegations set forth in paragraph 134.

5    135.    The MGA Parties deny the allegations set forth in paragraph 135.

6    136.    The MGA Parties deny the allegations set forth in paragraph 136.

7    137.    The MGA Parties deny the allegations set forth in paragraph 137.

8    138.    The MGA Parties deny the allegations set forth in paragraph 138.

9    139.    The MGA Parties deny the allegations set forth in paragraph 139.

10   140.    The MGA Parties deny the allegations set forth in paragraph 140.

11   141.    The MGA Parties deny the allegations set forth in paragraph 141.

12   142.    The MGA Parties deny the allegations set forth in paragraph 142.

13   143.    The MGA Parties deny the allegations set forth in paragraph 143.

14   144.    The MGA Parties deny the allegations set forth in paragraph 144.

15   145.    The MGA Parties deny the allegations set forth in paragraph 145.

16   146.    The MGA Parties repeat their responses contained in paragraphs 1

17   through 145 of this Answer and incorporate them by reference as though fully and

18   completely set forth herein.

19   147.    The MGA Parties deny the allegations set forth in paragraph 147.

20   148.    The MGA Parties deny the allegations set forth in paragraph 148.

21   149.    The MGA Parties deny the allegations set forth in paragraph 149.

22   150.    The MGA Parties deny the allegations set forth in paragraph 150.

23   151.    The MGA Parties deny the allegations set forth in paragraph 151.

24   152.    The MGA Parties deny the allegations set forth in paragraph 152.

25   153.    The MGA Parties deny the allegations set forth in paragraph 153.

26   154.    The MGA Parties deny the allegations set forth in paragraph 154.

27   155.    The MGA Parties deny the allegations set forth in paragraph 155.

28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT   18
PAGE   1355

1    156.   The MGA Parties repeat their responses contained in paragraphs 1
2  through 155 of this Answer and incorporate them by reference as though fully and
3  completely set forth herein.

4    157.   The MGA Parties deny the allegations set forth in paragraph 157.

5    158.   The MGA Parties deny the allegations set forth in paragraph 158.

6    159.   The MGA Parties deny the allegations set forth in paragraph 159.

7    160.   The MGA Parties deny the allegations set forth in paragraph 160.

8    161.   The MGA Parties deny the allegations set forth in paragraph 161.

9    162.   The MGA Parties deny the allegations set forth in paragraph 162.

10    163.   The MGA Parties deny the allegations set forth in paragraph 163.

11    164.   The MGA Parties deny the allegations set forth in paragraph 164.

12    165.   The MGA Parties deny the allegations set forth in paragraph 165.

13    166.   The MGA Parties repeat their responses contained in paragraphs 1
14  through 165 of this Answer and incorporate them by reference as though fully and
15  completely set forth herein.

16    167.   The MGA Parties deny the allegations set forth in paragraph 167.

17    168.   The MGA Parties deny the allegations set forth in paragraph 168.

18    169.   The MGA Parties deny the allegations set forth in paragraph 169.

19    170.   The MGA Parties deny the allegations set forth in paragraph 170.

20    171.   The MGA Parties deny the allegations set forth in paragraph 171.

21    172.   The MGA Parties repeat their responses contained in paragraphs 1
22  through 171 of this Answer and incorporate them by reference as though fully and
23  completely set forth herein.

24    173.   The MGA Parties deny the allegations set forth in paragraph 173.

25    174.   The MGA Parties deny the allegations set forth in paragraph 174.

26    175.   The MGA Parties deny the allegations set forth in paragraph 175.

27    176.   The MGA Parties deny the allegations set forth in paragraph 176.

28    177.   The MGA Parties deny the allegations set forth in paragraph 177.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

17

EXHIBIT   18
PAGE   1356

1    178.  The MGA Parties deny the allegations set forth in paragraph 178.

2    179.  The MGA Parties repeat their responses contained in paragraphs 1

3  through 178 of this Answer and incorporate them by reference as though fully and

4  completely set forth herein.

5    180.  The MGA Parties deny the allegations set forth in paragraph 180.

6    181.  The MGA Parties deny the allegations set forth in paragraph 181.

7    182.  The MGA Parties deny the allegations set forth in paragraph 182.

8    183.  The MGA Parties deny the allegations set forth in paragraph 183.

9    184.  The MGA Parties deny the allegations set forth in paragraph 184.

10    185.  The MGA Parties deny the allegations set forth in paragraph 185.

11    186.  The MGA Parties repeat their responses contained in paragraphs 1

12  through 185 of this Answer and incorporate them by reference as though fully and

13  completely set forth herein.

14    187.  The MGA Parties deny the allegations set forth in paragraph 187.

15    188.  The MGA Parties deny the allegations set forth in paragraph 188.

16    189.  The MGA Parties deny the allegations set forth in paragraph 189.

17    190.  The MGA Parties deny the allegations set forth in paragraph 190.

18    191.  The MGA Parties deny the allegations set forth in paragraph 191.

19    192.  The MGA Parties repeat their responses contained in paragraphs 1

20  through 191 of this Answer and incorporate them by reference as though fully and

21  completely set forth herein.

22    193.  The MGA Parties deny the allegations set forth in paragraph 193.

23    194.  The MGA Parties deny the allegations set forth in paragraph 194.

24    195.  The MGA Parties deny the allegations set forth in paragraph 195.

25    196.  The MGA Parties deny the allegations set forth in paragraph 196.

26    197.  The MGA Parties deny the allegations set forth in paragraph 197.

27    198.  The MGA Parties deny the allegations set forth in paragraph 198.

28

680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 18
PAGE 1357

1    199.   The MGA Parties repeat their responses contained in paragraphs 1

2  through 198 of this Answer and incorporate them by reference as though fully and

3  completely set forth herein.

4    200.   The MGA Parties deny the allegations set forth in paragraph 200.

5    201.   The MGA Parties deny the allegations set forth in paragraph 201.

6    202.   The MGA Parties deny the allegations set forth in paragraph 202.

7    203.   The MGA Parties deny the allegations set forth in paragraph 203.

8    204.   The MGA Parties deny the allegations set forth in paragraph 204.

9    205.   The MGA Parties repeat their responses contained in paragraphs 1

10 through 204 of this Answer and incorporate them by reference as though fully and

11 completely set forth herein.

12    206.   The MGA Parties deny the allegations set forth in paragraph 206.

13    207.   The MGA Parties deny the allegations set forth in paragraph 207.

14    208.   The MGA Parties deny the allegations set forth in paragraph 208.

15    209.   The MGA Parties deny the allegations set forth in paragraph 209.

16    210.   The MGA Parties deny the allegations set forth in paragraph 210.

17    211.   The MGA Parties deny the allegations set forth in paragraph 211.

18    212.   The MGA Parties deny the allegations set forth in paragraph 212.

19    213.   The MGA Parties repeat their responses contained in paragraphs 1

20 through 212 of this Answer and incorporate them by reference as though fully and

21 completely set forth herein.

22    214.   Paragraph 214 is a statement of Mattel's legal position, to which

23 no response is necessary.  In the event a response is necessary, the MGA Parties deny

24 the allegations set forth in paragraph 214.

25    215.   The MGA Parties deny the allegations set forth in paragraph 215.

26    216.   The MGA Parties deny the allegations set forth in paragraph 216.

27 ///

28 ///

680227

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 18
PAGE 1358

19

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

217.   The MGA Parties repeat their responses contained in paragraphs 1 through 216 of this Answer and incorporate them by reference as though fully and completely set forth herein.

218.   The MGA Parties deny the allegations set forth in paragraph 218.

219.   The MGA Parties deny the allegations set forth in paragraph 219.

220.   The MGA Parties deny the allegations set forth in paragraph 220.

221.   The MGA Parties deny the allegations set forth in paragraph 221.

222.   The MGA Parties deny the allegations set forth in paragraph 222.

223.   The MGA Parties repeat their responses contained in paragraphs 1 through 222 of this Answer and incorporate them by reference as though fully and completely set forth herein.

224.   The MGA Parties deny the allegations set forth in paragraph 224.

225.   Paragraph 225 is a statement of Mattel's legal position, to which no response is necessary.  To the extent that a response is required, the MGA Parties deny the allegations set forth in paragraph 225.

226.   Paragraph 226 is a statement of Mattel's legal position, to which no response is necessary.  To the extent that a response is required, the MGA Parties deny the allegations set forth in paragraph 226.

## AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of the MGA Parties or any Counter-Defendant, and without admitting that Mattel suffered any loss, damage, or injury, the MGA Parties allege the following affirmative defenses to the Counterclaims.  By designating the following as affirmative defenses, the MGA Parties do not in any way waive or limit any defenses which are or may be raised by their denials, allegations, and averments set forth herein.  The MGA Parties also do not, by alleging any affirmative defense, admit that Mattel does not have the burden of proof for any or all facts underlying any of those defenses.  These defenses are pled in the alternative, and are raised to preserve the rights of the MGA Parties to assert

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

20

EXHIBIT  18
PAGE 1359

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   such defenses, and are raised without prejudice to their ability to raise other and

2   further defenses.

3   ### FIRST AFFIRMATIVE DEFENSE

4   #### (Failure to State a Claim)

5   Mattel's counterclaims fail to state a claim against the MGA Parties upon

6   which relief can be granted.

7   ### SECOND AFFIRMATIVE DEFENSE

8   #### (Unclean Hands)

9   Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands

10   and wrongful acts. This affirmative defense is based, in part, on Mattel's efforts to

11   undermine MGA's business and to "kill" Bratz at any cost which include, but are not

12   limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's

13   products, packaging, themes, and advertising (including for Mattel products My

14   Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy, to

15   name a few), and engage in other acts of unfair competition against MGA as alleged

16   in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or

17   press about MGA, MGA products, Carter Bryant, Isaac Larian, or MGA employees;

18   Mattel's efforts to fund or commission market research or studies that portray Bratz

19   or MGA products negatively; Mattel's misuse of statistics published by NPD

20   Funworld and efforts to pressure NPD Funworld into terminating MGA's subscription

21   to its publications; Mattel's efforts to induce the Children's Advertising Review Unit

22   ("CARU") to place onerous restrictions on MGA advertisements; Mattel's efforts to

23   interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's

24   efforts to include negative references to MGA or Bratz on Mattel's "We Believe in

25   Girls" website; Mattel's efforts or intent to interfere with business dealings or

26   contractual relations between MGA and Smoby Group; Mattel's influencing

27   Nickelodeon to reject MGA advertisements or to limit time slots for advertisements;

28   assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on," or

680227

21

EXHIBIT 18
PAGE 1360

1   gaining knowledge of MGA's trade secrets, non-public information, non-public

2   activities, unreleased products, and product development; gaining access, or attempts

3   to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, or Toy

4   Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales

5   information through Mattel-employed category managers at retailers; Mattel's

6   inducing non-party customers to breach confidentiality agreements with MGA and

7   divulge non-public information about MGA's unreleased products; Mattel's covertly

8   investigating MGA, its officers and employees, and their family members; Mattel's

9   contacting persons under false pretense in order to interrogate them about Bratz and

10   this litigation; Mattel's coercing its employees to accept restrictive covenants (right

11   before a massive layoff) and non-compete clauses and other efforts to prevent

12   prospective MGA employees from accepting offers of employment; Mattel's admitted

13   use of this litigation as a "business strategy" or weapon to drain MGA resources from

14   competing in the marketplace; Mattel's threatening and attempting to intimidate

15   employees into going to work for MGA; Mattel's hiring of a former MGA employee,

16   Tina Patel (MGA's brand manager for Bratz), and attempting to gain confidential

17   information about MGA from this former employee; Mattel's delay in suing Carter

18   Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel

19   case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

20   public and retailers; and Mattel's taking all measures to conceal its bad acts, including

21   the willful non-retention and destruction of documents.  Additionally, Mattel believed

22   from the time that Carter Bryant left Mattel's employ that he was going to perform

23   work for a Mattel competitor.  Mattel began investigating Bryant and MGA, including

24   Bryant's role in the creation and development of Bratz, at least as early as March

25   2002.  Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to

26   spend years developing its business and allowing MGA to invest tens of millions of

27   dollars developing the Bratz products and building the Bratz brand.  These averments

28

680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT *18*
PAGE *1364*

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  are made on information and belief except where the MGA Parties have knowledge
2  thereof.

### THIRD AFFIRMATIVE DEFENSE
#### (Laches)

5      Mattel's counterclaims are barred by the equitable doctrine of laches because,
6  among other things, Mattel believed from the time that Carter Bryant left Mattel's
7  employ that he was going to perform work for a Mattel competitor.  Mattel began
8  investigating Bryant and MGA, including Bryant's role in the creation and
9  development of Bratz, at least as early as March 2002 and thereafter continued its
10 investigation into Bryant's role in the creation and development of Bratz, as well as
11 his work with MGA, in August 2002 after Mattel's CEO, Robert Eckert, received an
12 "anonymous letter" that claimed that Bryant stole the idea for Bratz from Mattel and
13 sold it to MGA.  Nonetheless, Mattel waited years to bring suit, all the while allowing
14 MGA to spend years developing its business and allowing MGA to invest tens of
15 millions of dollars developing the Bratz products and building the Bratz brand.

### FOURTH AFFIRMATIVE DEFENSE
#### (Statute of Limitations)

18     Mattel's counterclaims are barred by the applicable statutes of limitations,
19 including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code
20 of Civil Procedure §§ 337, 339, 343 and 338(c).

### FIFTH AFFIRMATIVE DEFENSE
#### (*Bona Fide* Purchaser for Value)

23     Mattel cannot maintain its counterclaims against the MGA Parties because
24 MGA paid valuable consideration for Bryant's assignment of his rights in the original
25 Bratz drawings to MGA, and Isaac Larian acted with a good faith belief that Bryant
26 owned the rights to his original Bratz drawings and that his assignment of such rights
27 to MGA was valid and permissible.

EXHIBIT 18
PAGE 1362

28
680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

680227

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

## SIXTH AFFIRMATIVE DEFENSE

### (17 U.S.C. § 205(d))

Mattel cannot maintain its counterclaims against the MGA Parties because, among other things, Isaac Larian acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA was valid and permissible.

## SEVENTH AFFIRMATIVE DEFENSE

### (Information Readily Ascertainable)

The MGA Parties cannot be liable, either on their own account or by association with other defendants, for misappropriation of information that was readily ascertainable by proper means at the time of the alleged acquisition or use. Such information includes, but is not limited to, the identity of suppliers, manufacturers, distributors and retailers, contact information for the same, and sales, marketing and media data.

## EIGHTH AFFIRMATIVE DEFENSE

### (Acts or Omissions of Others)

Mattel's damages, if any, were not caused by the MGA Parties and are not attributable to any acts or omissions of the MGA Parties.

## NINTH AFFIRMATIVE DEFENSE

### (Estoppel)

Mattel's counterclaims are barred in whole or in part by the equitable doctrine of estoppel because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

24

EXHIBIT 18

PAGE 1363

## TENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

Mattel's counterclaims are barred in whole or in part by acquiescence because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand. Additionally, Mattel tolerated and condoned conduct by other employees similar to the alleged conduct by Bryant and others on which Mattel bases its claims.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

The MGA Parties deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

The MGA Parties deny that Mattel suffered any damages, but even if it did, any recovery by Mattel is barred or must be reduced as a result of Mattel's comparative fault.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Good Faith Improver/Set off)

The MGA Parties deny that Mattel suffered any damages, but even if it did, the MGA Parties are good faith improvers and/or are entitled to a set-off or credit for their improvements to any idea or property conveyed to Mattel pursuant to constructive trust as well as any judgment, settlement, profits or other proceeds paid

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIMS

680227

EXHIBIT *18*
PAGE *1364*

1  or owed to Mattel by the MGA Parties or any other person in connection with the

2  allegations set forth in Mattel's counterclaims.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Bar On Damages and Relief)

5      The MGA Parties deny that Mattel suffered any damages, but even if it did,

6  Mattel is barred from recovering damages and further relief to the extent it has

7  already obtained an award of damages and relief in connection with the allegations set

8  forth in Mattel's counterclaims.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

11      Mattel is barred from recovering statutory damages and/or attorneys' fees

12  because it failed to register the copyrights that are purportedly at issue within the time

13  required by 17 U.S.C. § 412.  Mattel is also barred from recovering attorneys' fees

14  under Cal. Civil Code § 3426 because the MGA Parties did not engage in any willful

15  or malicious misappropriation of trade secrets.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

18      Mattel's counterclaims are barred in whole or in part by waiver because, among

19  other things, Mattel believed from the time that Carter Bryant left Mattel's employ

20  that he was going to perform work for a Mattel competitor.  Mattel began

21  investigating Bryant and MGA, including Bryant's role in the creation and

22  development of Bratz, at least as early as March 2002.  Nonetheless, Mattel waited

23  years to bring suit, all the while allowing MGA to spend years developing its business

24  and allowing MGA to invest tens of millions of dollars developing the Bratz products

25  and building the Bratz brand.

26  ///

27  ///

28  ///

EXHIBIT  18
PAGE  1365

680227

26

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (*De Minimus* Use)

The MGA Parties deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an aspect of a Mattel copyrighted work, such use would be *de minimus* and non-infringing.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Joint Authorship)

The MGA Parties deny that Mattel owns any copyright interest in the alleged works, but even if it did, any liability would be eliminated or greatly diminished by the doctrine of joint authorship.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Competition Privilege/Justification)

Mattel's counterclaims are barred in whole or in part on the grounds that the acts of the MGA Parties were lawful competition or justified.  MGA was privileged to respond to the acts of long-time fashion doll toy monopolist Mattel in Mattel's efforts to destroy its business and to "kill" Bratz, which included, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Carter Bryant, Isaac Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's misuse of statistics published by NPD Funworld and

EXHIBIT 18
PAGE 1366

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   efforts to pressure NPD Funworld into terminating MGA's subscription to its
2   publications; Mattel's efforts to induce the Children's Advertising Review Unit
3   ("CARU") to place onerous restrictions on MGA advertisements; Mattel's efforts to
4   interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's
5   efforts to include negative references to MGA or Bratz on Mattel's "We Believe in
6   Girls" website; Mattel's efforts or intent to interfere with business dealings or
7   contractual relations between MGA and Smoby Group; Mattel's influencing
8   Nickelodeon to reject MGA advertisements or to limit time slots for advertisements;
9   assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on," or
10  gaining knowledge of MGA's trade secrets, non-public information, non-public
11  activities, unreleased products, and product development; gaining access, or attempts
12  to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, or Toy
13  Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales
14  information through Mattel-employed category managers at retailers; Mattel's
15  inducing non-party customers to breach confidentiality agreements with MGA and
16  divulge non-public information about MGA's unreleased products; Mattel's covertly
17  investigating MGA, its officers and employees, and their family members; Mattel's
18  contacting persons under false pretense in order to interrogate them about Bratz and
19  this litigation; Mattel's coercing its employees to accept restrictive covenants (right
20  before a massive layoff) and non-compete clauses and other efforts to prevent
21  prospective MGA employees from accepting offers of employment; Mattel's admitted
22  use of this litigation as a "business strategy" or weapon to drain MGA resources from
23  competing in the marketplace; Mattel's threatening and attempting to intimidate
24  employees into going to work for MGA; Mattel's hiring of a former MGA employee,
25  Tina Patel (MGA's brand manager for Bratz), and attempting to gain confidential
26  information about MGA from this former employee; Mattel's delay in suing Carter
27  Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel
28  case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

680227

28

EXHIBIT *18*
PAGE *1367*

1   public and retailers; and Mattel's taking all measures to conceal its bad acts, including

2   the willful non-retention and destruction of documents.  Additionally, Mattel believed

3   from the time that Bryant left Mattel's employ that he was going to perform work for

4   a Mattel competitor.  Mattel began investigating Bryant and MGA, including Bryant's

5   role in the creation and development of Bratz, at least as early as March 2002.

6   Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend

7   years developing its business and allowing MGA to invest tens of millions of dollars

8   developing the Bratz products and building the Bratz brand.  Particularly in light of

9   the foregoing allegations (which are made upon information and belief except to those

10  matters within the personal knowledge of the MGA Parties), Mattel's effort to

11  preclude effective competition by MGA violates established California law and public

12  policy.  Mattel is attempting to preclude MGA from engaging in free and fair

13  competition, which is privileged conduct and immune from tort liability.  California

14  law has long recognized that a competitor may solicit and hire the employees of the

15  competition and may solicit business from its competitors through lawful means.

16  Mattel nonetheless, afraid of such fair competition, particularly from a more nimble,

17  innovative and successful competitor like MGA seeks to prevent MGA from doing

18  what the law otherwise allows—and indeed, encourages.  Mattel's claims are

19  inconsistent with its own conduct in the marketplace and the competitive privilege

20  held by the MGA Parties; accordingly, the MGA Parties cannot be held liable for this

21  conduct.

22                      **TWENTY-FIRST AFFIRMATIVE DEFENSE**

23                            (Employee Right Of Mobility)

24          In violation of California law and public policy, as reflected, e.g., in California

25  Business & Professions Code section 16600, Mattel is seeking, through its claims and

26  its interpretations of employee contracts to restrain employee mobility.  Under

27  California law, employees' interest in their own mobility and betterment are of

28  paramount importance and an employer's agreements restricting that mobility are

680227                                          29

EXHIBIT  *18*
PAGE  *1368*

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  deemed void.  Here, Mattel seeks to prevent its employees from seeking better and

2  more productive employment with a more innovative and dynamic competitor and to

3  use lawsuits, such as this one, and onerous, one-sided employment agreements, to

4  instill fear in its employees and to discourage lawful mobility.  Mattel's claims

5  conflict with California's long-respected public policy of employee mobility and the

6  right to engage in a competitive business, and MGA's conduct in furtherance of that

7  public policy cannot result in liability.

8  ### TWENTY-SECOND AFFIRMATIVE DEFENSE

9  ### (Mattel's Bad Faith Claim Of Misappropriation)

10  Mattel's claims of misappropriation of trade secrets are objectively spurious

11  and have been brought and maintained in bad faith.  Mattel's motivation in bringing

12  suit is not to protect any legally cognizable trade secrets but to thwart and discourage

13  lawful competition by MGA.  Facing declining sales and the loss of employees to a

14  more innovative and successful competitor, Mattel has orchestrated its trade secrets

15  claims to slow competitive pressures on it, discourage employee departures, and

16  preclude MGA from fairly competing with Mattel.  Under section 3426.4 of the

17  California Uniform Trade Secrets Act ("CUTSA"), Mattel's claims should be found

18  to have been made in bad faith and the MGA Parties should be awarded their

19  reasonable attorney's fees and costs.

20  ### TWENTY-THIRD AFFIRMATIVE DEFENSE

21  ### (Good Faith)

22  Mattel's counterclaims are barred in whole or in part because the MGA Parties

23  acted in good faith.

24  ### TWENTY-FOURTH AFFIRMATIVE DEFENSE

25  ### (Lack of Authority)

26  Mattel's counterclaims are barred in whole or in part on the grounds that to the

27  extent any person committed an unlawful or tortious act, the person lacked authority

28  to commit such act on behalf of the MGA Parties.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

30

EXHIBIT _18_

PAGE _1369_

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

Mattel's counterclaims are barred in whole or in part by its lack of standing.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Joinder in Defenses of Co-Defendants)

The MGA Parties hereby adopt and incorporate by reference any and all other affirmative defenses that have been or will be asserted by any other defendant (including Bryant) in this litigation to the extent that defendants may share in such affirmative defenses.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Preemption by California Uniform Trade Secrets Act)

Mattel's state law counterclaims are preempted by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*, because they are based on the same nucleus of facts as Mattel's Fourth Counterclaim for Misappropriation of Trade Secrets under the CUTSA.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Preemption by Copyright Act)

Some or all of Mattel's claims are preempted by the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (*Res Judicata* and Collateral Estoppel (Fed. R. Civ. Proc. 8(c)(1)))

Mattel's Phase 2 counterclaims are barred in whole or in part by the doctrines of *res judicata* and collateral estoppel as a result of the Phase 1 proceedings.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Law of the Case, Direct Estoppel and Reexamination Clause)

To the extent the jury and/or this Court has decided certain issues during and following the Phase 1 trial, Mattel's counterclaims are barred in whole or in part by

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

680227

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT *18*

PAGE *1370*

1  the "law of the case" doctrine, by direct estoppel and by the Seventh Amendment

2  Reexamination Clause.

3  ### THIRTY-FIRST AFFIRMATIVE DEFENSE

4  ### (No Injury Sustained by Alleged Creditor)

5  As to Mattel's claims for fraudulent conveyance, none of the alleged

6  transactions caused any injury to Mattel, who is in no worse a position as a purported

7  creditor of the MGA Parties.

8  ### THIRTY-SECOND AFFIRMATIVE DEFENSE

9  ### (Lack of Jurisdiction)

10  Mattel's claims, including without limitation its claims based upon

11  alleged extra-territorial acts, are barred in whole or in part by lack of subject matter

12  jurisdiction.

13  ### THIRTY-THIRD AFFIRMATIVE DEFENSE

14  ### (Illegal Conduct/Fraud)

15  Mattel's claims are barred in whole or in part by Mattel's own illegal conduct

16  and/or fraud.  The MGA Parties allege, upon information and belief, that: (1) Mattel

17  has attempted to influence government officials in Mexico, through illegal means, to

18  prosecute three former Mattel employees; (2) Mattel has attempted to suborn perjury

19  by offering settlement terms to the three former Mattel employees that were premised

20  upon them offering false testimony against MGA and/or Isaac Larian; (3) Mattel

21  falsely imprisoned seamstresses and intimidated and harassed them into making

22  statements; and (4) Mattel and/or its counsel has altered evidence that would reveal

23  when Mattel first learned of the facts putting it on notice regarding its copyrights,

24  thereby triggering the statute of limitations.

25  ### THIRTY-FOURTH AFFIRMATIVE DEFENSE

26  ### (Spoliation of Evidence)

27  Mattel's claims are barred in whole or in part by Mattel's spoliation of

28  evidence.  Mattel has continuously failed to stop its automatic destruction of relevant

680227

32

EXHIBIT  18

PAGE  1371

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  documents, preserve relevant documents, institute a proper litigation hold, and search

2  for and produce relevant electronic evidence.

3  ## THIRTY-FIFTH AFFIRMATIVE DEFENSE

4  ### (Undiscovered Defenses)

5  The MGA Parties have insufficient knowledge or information upon which to

6  form a belief as to whether additional defenses are available.  The MGA Parties

7  reserve the right to assert any further or additional defenses upon receiving more

8  complete information regarding the matters alleged in the Counterclaims, through

9  discovery or otherwise.

10  WHEREFORE, the MGA Parties pray for relief as follows:

11  a.    that Mattel, Inc.'s Counterclaims be dismissed with prejudice;

12  b.    that judgment be entered in favor of the MGA Parties and against

13  counterclaimant Mattel, Inc. and that Mattel, Inc. take nothing by way of its Third

14  Amended Counterclaim;

15  c.    that the MGA Parties recover their costs and attorneys' fees; and

16  d.    that the Court award such other and further relief as is just and proper.

17

18  Dated:  June 29, 2009                     Patricia L. Glaser
                                              Joel N. Klevens
19                                            GLASER, WEIL, FINK, JACOBS
20                                               HOWARD & SHAPIRO, LLP

21                                            Russell J. Frackman
22                                            MITCHELL, SILBERBERG & KNUPP, LLP

23
                                              By:
24                                               Joel N. Klevens
25                                               Attorneys for the MGA Parties
                                                 for Phase 2
26
                                              EXHIBIT _18_
27
                                              PAGE __1372__
28

680227

33

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD
AMENDED ANSWER AND COUNTERCLAIMS

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000