# EXHIBIT 6

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3152**

WRITER'S INTERNET ADDRESS
**marshallsearcy@quinnemanuel.com**

June 18, 2009

**VIA FACSIMILE AND U.S. MAIL**

Amman A. Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, CA 90067

Re:     Mattel, Inc. v. MGA Entertainment et al.

Dear Counsel:

I write pursuant to paragraph 5 of the Discovery Master Stipulation to request a meet and confer regarding Mattel's anticipated motion to strike the objections MGAE de Mexico S.R.L. de C.V.'s ("MGA Mexico") objections to Mattel's First Set of Requests for Documents and Things (Phase 2) (the "Requests") and to compel responsive documents.

In its efforts to evade liability for the misconduct of Marianna Trueba and Pablo Vargas, MGA Mexico has expressly chosen to place at issue their duties, responsibilities and roles for MGA Mexico. Most of the Requests seek documents necessary and appropriate for the Phase 2 trial, including to rebut MGA Mexico's claims that Trueba and Vargas are supposedly low-level employees without meaningful responsibility. These same facts are also relevant to show that their acts are imputable to the named defendants and to show that they -- and MGA Mexico -- used Mattel trade secrets given their roles and positions.

MGA Mexico's responses to the Requests nevertheless refuse to produce any documents, based on the same boilerplate objections. Indeed, MGA Mexico's principal objection is frivolous. Each of the Responses claims that Mattel is not entitled to current information about Trueba and Vargas because Mattel's claims allegedly reach only to March 1, 2007. As you know, MGA

quinn emanuel urquhart oliver & hedges, llp
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

Exhibit 6
Page 295

Mexico has taken the precisely opposite position -- claiming that *only* their current role is relevant to their status as MGA Mexico agents. Should MGA Mexico refuse to withdraw this game-playing objection, Mattel will seek sanctions.

MGA Mexico's other objections are unavailing as well. For example, MGA Mexico objects that the information sought is confidential or private, but that is no basis for refusing to produce documents because there is a protective order in place, as Judge Larson, the current Discovery Master and the former Discovery Master have all repeatedly ruled. Likewise, as you should know, many of the General Objections are contrary to prior Court rulings and should be withdrawn. As another example, MGA Mexico claims that the Requests are supposedly duplicative, cumulative or compound. Compound is not a proper objection to document requests and, in any event, is inapposite to the Requests. Moreover, MGA Mexico has apparently not produced a single page of documents in this case, let alone more recent information about Trueba and Vargas. If MGA Mexico has in fact produced the documents sought by the Requests, then we invite you to identify during the meet and confer where they are in the production.

The Mattel Requests also seek information about MGA Mexico's communications with law enforcement. Given that MGA Mexico argued for and won on the discoverability of such information, MGA Mexico must now itself produce such documents without further obstruction. Similarly groundless are MGA Mexico's refusal to produce documents relating to the destruction of relevant documents or reflecting payments of money to Trueba and Vargas. Obviously, MGA Mexico's financial dealings with them are relevant to multiple issues in this case, including for example the extent and nature of their responsibilities within MGA Mexico, their alignment of interest with MGA Mexico, MGA Mexico's lack of disciplinary actions against them for their theft of Mattel trade secrets and its ratification of their conduct.

Please let me know when MGA Mexico's counsel is available to meet and confer regarding these issues within the time required. I look forward to hearing from you.

Best regards,

/s/ Marshall Searcy

Marshall M. Searcy III

07975/2938752.1

Exhibit 
Page 296

# EXHIBIT 7

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3152**

WRITER'S INTERNET ADDRESS
**marshallsearcy@quinnemanuel.com**

June 24, 2009

<u>VIA E-MAIL AND U.S. MAIL</u>

Amman A. Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, CA 90067

Re:   <u>Mattel, Inc. v. MGA Entertainment et al.</u>

Dear Counsel:

I write to follow-up on my letter to you dated June 18, 2009, regarding Mattel's anticipated motion to compel production of documents responsive to Mattel's First Set of Requests for Documents and Things (Phase 2) from MGAE de Mexico S.R.L. de C.V.'s ("MGA Mexico") .

I have not heard back from you regarding available dates for a meet and confer as required by the Order Appointing a Discovery Master.  Please let me know whether MGA Mexico's counsel will meet and confer regarding these issues.

Separately, and pursuant to the Discovery Master's Order, Mattel also intends to move for the issuance of a letter of request to Mexico seeking the depositions of Vargas and Trueba.  Given the overlap in issues, I expect that we should be able to discuss both motions at the same time. In any case, please let me know when counsel will be available to discuss this matter within the next five days, as required by the Discovery Master's order.

I look forward to hearing from you.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

Exhibit 7
Page 297

Best regards,

/s/ Marshall Searcy

Marshall M. Searcy III

07975/2984570.1

Exhibit **7**
Page 298

# EXHIBIT 8

LAW OFFICES

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

June 25, 2009

MERITAS LAW FIRMS WORLDWIDE

**VIA U.S. MAIL, E-MAIL & FAX**

Marshall M. Searcy III, Esq.
Quinn, Emanuel, Urquhart,
 Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

> Re:   *Bryant v. Mattel, Inc. and Consolidated Actions*
>        U.S.D.C. Eastern Division, Case No. CV04-09049 SGL (RNBx)

Dear Marshall:

This responds to your June 18, 2009, letter regarding MGAE de Mexico S.R. de C.V.'s ("MGA Mexico") objections to Mattel, Inc.'s ("Mattel") First Set of Requests for Documents and Things (Phase 2) (the "Requests"), which are proper for the reasons stated below.

First, MGA Mexico properly objected to a number of Requests on the ground that they are not relevant to any of the parties' claims or defenses in this litigation. *See* Fed. R. Civ. Proc. 26(b)(1). For instance, Request Nos. 1-21, 24-26, 29-32, 37, 39-50, 55, and 56 all purport to seek information to establish that Mariana Trueba and Pablo Vargas are managing agents of MGA Mexico. That information is only conceivably relevant to determine whether Ms. Trueba or Mr. Vargas may be compelled to attend depositions based on mere notice. *See* Fed. R. Civ. Proc. 30(b)(1). Both the Discovery Master and Judge Larson have put that inquiry to rest and have ruled that Mattel cannot depose these witnesses without first complying with the Hague Convention. (*See* Dkt. Nos. 5088, 5565.) Indeed, you admitted that you would pursue this route in your June 24, 2009, correspondence. Accordingly, these Requests seek information that is not relevant to the claims or defenses in this litigation, and MGA Mexico has properly objected on this basis.

Request Nos. 22, 23, 33-36, 57, 59, 61, 63, 65, 69, 77, and 78 are also objectionable because they bear no relevance to the parties' claims and defenses. With respect to MGA Mexico, Mattel's claims focus on the alleged theft of trade secrets from Mattel's Mexican subsidiary. However, these Requests bear no relation to that inquiry. By example only:

Exhibit 8
Page 299

Marshall M. Searcy III, Esq.
June 25, 2009
Page 2

- Request No. 36 seeks "All DOCUMENTS REFERRING OR RELATING TO any disbursements, expenditures, payouts, or other uses of YOUR funds in which VARGAS or TRUEBA had any input, participation or involvement, on or after March 1, 2007."

- Request No. 59 seeks "All DOCUMENTS REFERRING OR RELATING TO VARGAS' and TRUEBA'S duties, obligations or responsibilities to preserve YOUR trade secrets and confidential information, on or after March 1, 2007."

- Request No. 77 seeks "All DOCUMENTS REFERRING OR RELATING TO any rules, procedures, policies, protocol or practices requiring VARGAS or TRUEBA to act in YOUR interests or pursuant to YOUR request."

- Requests No. 78 seeks "All DOCUMENTS REFERRING OR RELATING TO any rules, procedures, policies, protocol or practices requiring YOUR employees, officers, consultants, independent contractors or vendors to act in YOUR interests or pursuant to YOUR request."

MGA Mexico's internal policies, if any, that require employees to act in the company's best interests bear no relation to the claims or defenses in this litigation. Likewise, MGA Mexico's trade secrets and confidential information are completely irrelevant to any claims or defenses asserted in this action. Thus, Mattel has failed to establish the required nexus between the information sought and those Phase 2 issues.

Moreover, Request Nos. 22, 23, 57, 65, 69, 77, and 78 are also objectionable because they are vastly overly broad. For instance:

- Request No. 22 seeks "All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS with any PERSON in the United States by VARGAS or TRUEBA regarding sales or licensing, or potential sales or licensing, on or after March 1, 2007."

- Request No. 23 seeks "All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS with any PERSON in Hong Kong by VARGAS or TRUEBA regarding sales or licensing, or potential sales or licensing, on or after March 1, 2007."

Exhibit 8
Page 300

Marshall M. Searcy III, Esq.
June 25, 2009
Page 3

- Request No. 57 seeks "All DOCUMENTS REFERRING OR RELATING TO any instance in which YOU disavowed or repudiated any actions by VARGAS or TRUEBA."

Among other defects, these Requests are overly broad with respect to subject matter and time, and were properly objected to by MGA Mexico. *See O'Brien v. Maui County*, 2002 U.S. App. LEXIS 10835, at *273 (9th Cir. May 6, 2002) (district court did not abuse discretion in denying motion to compel because document requests were "irrelevant, overbroad and unduly burdensome"); *Davis v. C/O Kissinger*, 2009 U.S. Dist. LEXIS 2828, at *10 (E.D. Cal. Jan. 8, 2009) (denying motion to compel because defendant properly objected to document requests as overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence).

Your letter does not sufficiently describe the relevance of the foregoing Requests. Therefore, unless you describe in detail how *each* of these Requests is relevant to the parties' claims or defenses in this action, MGA Mexico will stand by its objections.

Finally, subject to and without waiving any of its stated objections, to the extent any such documents exist, MGA Mexico will produce all relevant, non-privileged documents responsive to Request Nos. 27, 28, 38, 51-54, 58, 60, 62, 64, 66-68, 70-76, and 79-83.

I am available during the morning of Friday, June 26, 2009, if you wish to discuss these matters further.

Very truly yours,

Amman Khan (amk)

Amman A. Khan
of GLASER, WEIL, FINK, JACOBS,
HOWARD & SHAPIRO, LLP

cc:   Joel N. Klevens, Esq.
Jason Russell, Esq.
Patricia Benson, Esq.

680188

Exhibit 8
Page 301

# EXHIBIT 9

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5

6   Discovery Master

7

8                  UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,      Case No.  CV 04-09049 SGL (RNBx)

13                  Plaintiff,          Consolidated with
                                        Case No. CV 04-09059
14            v.                        Case No. CV 05-2727

15  MATTEL, INC., a Delaware            **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                      **ORDER NO. 6, REGARDING:**
                Defendant.
17                                          **(1)  MOTION OF MATTEL, INC.
                                            TO COMPEL PRODUCTION OF**
18                                          **DOCUMENTS RESPONSIVE**
                                            **TO ITS FIRST AND THIRD**
19                                          **SETS OF REQUESTS FOR**
                                            **PRODUCTION; and**
20
                                            **(2)  MOTION OF MGA TO**
21                                          **COMPEL PRODUCTION OF**
                                            **DOCUMENTS RESPONSIVE TO**
22                                          **THE DOCUMENT REQUEST**
                                            **NOS. 526 AND 528**
23

24  ┌─────────────────────────────┐
    │ CONSOLIDATED WITH
25  │ MATTEL, INC. v. BRYANT and
    │ MGA ENTERTAINMENT, INC. v.
26  │ MATTEL, INC.
    └─────────────────────────────┘
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                           ORDER NO. 6
                                        [Case No. CV 04-09049 SGL (RNBx)]

## I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

- 1 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

**B.    Phase 1 Ruling**

1
2          This is not the first time that Mattel has moved to compel responses to
3    Document Request Nos. 87 and 88.  Mattel previously moved to compel responses
4    to these requests as part of Phase 1, but its motion was denied because "Request
5    Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase
6    2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery
7    master's April 14, 2008 Order denying Mattel's original motion to compel further
8    held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is
9    intended to authorize or preclude Mattel from seeking further production of
10   documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7
11   - 8).

**C.    Objections of MGA Entertainment**

12
13         In its Opposition, MGA Entertainment relies on three basic grounds for
14   refusing to produce the requested documents.  First, MGA Entertainment argues
15   that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the
16   requests are overbroad.  Finally, MGA Entertainment argues that California's
17   privacy laws prevent it from producing the requested documents.

**1.    Purported Failure To Meet And Confer**

18
19         As indicated above, MGA Entertainment first asserts that Mattel's Motion to
20   Compel should be denied because Mattel failed to adequately meet and confer.
21   (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel
22   did meet and confer regarding the two requests at issue prior to filing its original
23   motion to compel in Phase 1.  (*Id.*, p. 2 ["The Renewed Motion is in fact based on
24   meet and confer discussions held over one year ago with MGA's prior lead
25   counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)
26   MGA further provides no legal authority, and the Discovery Master has found
27   none, supporting the proposition that a party must meet and confer again before
28   renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 9
Page 304

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion. Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14        **2.    Overbreadth Objection**

15        MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17  Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize

25  //

26

27  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
    since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),

28  and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 305

1    the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2           The touchstone for determining whether a particular discovery request is

3    reasonably calculated to lead to the discovery of admissible evidence in this case is

4    whether the request bears some relation to the issues to be tried in Phase 2.

5    Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6    Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7    not linked to a single discrete product or even multiple products.  Instead, the issues

8    to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9    Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14   •  "engaged in a pattern of stealing and using [Mattel's] property and trade

15      secrets," (Id.,     ¶ 1);

16   •  "repeated—and even expanded—its pattern of theft [regarding the Bratz

17      dolls] on numerous occasions," including by hiring away three key Mattel

18      employees in Mexico who "stole virtually every category of Mattel's

19      sensitive and trade secret business plans and information for the Mexican

20      market as well as a significant quantity of sensitive and trade secrete

21      information for Mattel's U.S. and worldwide businesses," (Id., ¶ 3);

22   •  "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23      advertising and strategy, not only for Canada, but the United States and the

24      rest of the world," (Id., ¶ 70);

25   //

26

27   ────────────────────────

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28   would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
     Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              - 4 -                    ORDER NO. 6
                                                          [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 9
Page 306

1      • "took from Mattel documents containing proprietary advertising, project,

2          sales, customer and strategy information for not only Canada, but for the

3          United States," (*Id.*, ¶ 4);

4      • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5          employees to steal Mattel's confidential information or other property and

6          take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7      • stole "Mattel's plans, strategy and business information for the Mexican

8          market and materials related to Mattel's worldwide business strategies," (*Id.*,

9          ¶ 37);

10     • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11         planning materials, and then hired them to assist in establishing and running

12         MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13     • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14         and proprietary information that they could access and bring it with them to

15         MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16         would need to enter the Mexican market, and to unlawfully compete with

17         Mattel in Mexico, in the United States and elsewhere," such as "global

18         internal future line lists that detailed anticipated future products; production

19         and shipping costs for Mattel products, daily sales data for Mattel products;

20         customer data; sales estimates and projections; marketing projections;

21         documents analyzing changes in sales performance from 2003 to 2004;

22         budgets for advertising and promotional expenses; strategic research

23         reflecting consumer responses to products in development; media plans;

24         consumer comments regarding existing Mattel products customer discounts

25         and terms of sale; customer inventory level data; assessments of promotional

26         campaign success; market size historical data and projections; marketing

27         plans and strategies, merchandising plans; retail pricing and marketing

28         strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Page 307

1    • "targeted certain Mattel employees who have broad access to Mattel
2       proprietary information in an effort to induce and encourage them to join
3       MGA [Entertainment] and to steal or otherwise wrongfully misappropriate
4       Mattel confidential information and trade secrets," including by "promising
5       these employees salaries 25 percent or more higher than they earn at Mattel
6       and stating to them that they should not be concerned by legal action taken
7       by Mattel to protect its trade secrets and its rights because such claims are
8       hard to prove and easy to defeat," (*Id.*, ¶ 69); and
9    • "hired directly from Mattel's United States operations at least 25 employees,
10      from Senior Vice-President level to lower level employees," and that some of
11      these individuals misappropriated "Mattel confidential and proprietary
12      information, including Mattel's strategic plans; business operations; methods
13      and systems; marketing and advertising strategies and plans; future product
14      lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).
15      In light of the foregoing allegations, the documents requested by Mattel fall
16   within the purview of permissible discovery allowed by Federal Rule of Civil
17   Procedure 26.  Rule 26 permits the discovery of information that is "relevant to the
18   claim or defense of any party."  Fed.R.Civ.P. 26(b)(1).  Accordingly, Mattel's
19   request for "all personnel and vendor files" of individuals who either (1) work at
20   MGA Entertainment and previously used to work for Mattel or (2) who are vendors
21   of MGA Entertainment and used to work with or had contact with Mattel appears to
22   be "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*
23      **3.    Privacy Rights Objection**
24      MGA Entertainment's final argument is that the records sought by Mattel
25   (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot
26   be produced under *California law* unless the individuals affected are given advance
27   notice of the requests and afforded an opportunity to object to the production.
28   (MGA's Opposition, pp. 10 – 14).  Specifically, MGA Entertainment argues that

Arent Fox LLP
Attorneys at Law
Los Angeles

- 6 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Page 308

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5      As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19   *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22   *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25      Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26

---

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential

27   information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be

28   useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 309

1   held that "personnel files are discoverable in federal question cases . . . despite

2   claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3   1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4   Cir. 1975)), and this includes any claim of privilege resulting from California Code

5   of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6   Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7   Procedure § 1985.3 do not apply in federal question cases because "federal law

8   applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9   privacy concerns raised by MGA Entertainment have no applicability here.

10          Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15   Mattel restated this position at the hearing.

16          The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22   **D.      Conclusion**

23          The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

25   [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26   and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question
     grounds, (Mattel Reply, p. 5).

27   [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
28   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the
     privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 310

1    2 claims, and are not protected from disclosure on the grounds of third-party

2    privacy rights or any other ground cited by MGA Entertainment.

3    **III.    MATTEL'S REQUEST FOR SANCTIONS**

4         In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5    fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6    *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7    however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8    stage that could have been raised in the moving papers.[7] This rule is routinely

9    adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10   F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.*,

11   2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski*,

12   2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms*, 2007

13   WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox*, 7 F.3d 1458,

14   1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th

15   Cir.2000).

16        Accordingly, the Discovery Master therefore declines to award sanctions

17   against MGA Entertainment.

18   **IV.    MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19        **REQUEST NOS. 526 AND 528**

20        In its motion, MGA seeks an order compelling Mattel to produce documents

21   responsive to two document requests (the "Requests") included in MGA's Fifth Set

22   of Requests for Production of Documents and Things dated August 3, 2007.

23   //

24

25   [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27   [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

## A.    The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

## B.    Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

Arent Fox LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 312

1    privileged.

2                    **1.      Overbreadth Objection**

3           Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4    RICO violations, misappropriation of trade secrets and unfair competition.  Mattel's

5    SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6    its trade secret and confidential information."  (SAAC, ¶ 53).  The SAAC further

7    details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8    de Mexico and suggests that Mattel communicated with the authorities regarding

9    their seizure of certain documents from MGA's office.  (*Id.*, ¶ 53).  Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75).  Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive.  (*Id.*, ¶

14   75).

15          Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement*."  (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21          Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28          Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 313

1   nonetheless argues in its Opposition that Request No. 526 is overbroad because

2   Mattel's civil claims are wholly separate and independent from any criminal relief

3   it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4   MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5       In so arguing, Mattel misses the point. The issue is not whether Mattel's

6   communications with law enforcement officials constitute the basis of Mattel's

7   claims. Rather, the issue is whether those communications are reasonably

8   calculated to lead to the discovery of admissible evidence regarding what Mattel

9   itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10   secret misappropriation. Mattel does not dispute that its subsequent

11   communications with law enforcement involve the same conduct that is the basis of

12   the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13   concurrently seeking relief through the criminal justice system and this civil action

14   based on the same documents allegedly stolen by MGA and confirmed that fact

15   during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16   judicial file in the criminal proceedings in Mexico" are among the "documents

17   *relating to Mattel's Counterclaims*."] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19   disclose what Mattel told the investigating authorities about what information was

20   taken, the people who have knowledge of the thefts, and any supposed criminal

21   intent on the part of MGA or the former Mattel employees who supposedly took the

22   information. Given this admitted overlap in subject matter, the communications

23   between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25   plaintiff permitted discovery of materials provided to law enforcement authorities

26   concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 314

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14        Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26        **2.     Work Product Objection**

27        Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 315

1    agencies, would violate the attorney work-product doctrine by revealing counsel's
2    strategy and mental processes.  (Mattel Opposition, p. 6).
3        To qualify for work-product protection under Federal Rule Civil Procedure
4    26, documents must meet two requirements:  (1) they must be "prepared in
5    anticipation of litigation or for trial," and (2) they must be prepared "by or for
6    another party or by or for that other party's representative."  *In re Cal. Pub. Utils.*
7    *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989).  In determining whether the
8    doctrine is applicable to a particular document, "the court must consider the
9    *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a
10   party's efforts in *preparing for litigation*.'"  *Johnson v. Finn*, 2007 WL 3232253,
11   *1 (E.D. Cal. Oct. 31, 2007) (emphasis added).  The authorities Mattel cites agree
12   that the purpose of the work product doctrine is "to establish a zone of privacy for
13   *strategic litigation planning*."  (Opposition, p. 6 quoting *United States v. Adlman*,
14   68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)
15       Here, Mattel does not demonstrate any connection between its
16   communications with law enforcement officials, on the one hand, and its litigation
17   strategy in the present civil case, on the other hand.  Rather, it appears that Mattel's
18   primary purpose in communicating with, and disclosing the disputed documents to,
19   various law enforcement officials was to instigate criminal prosecutions by
20   prosecutorial agencies, not pursue its civil claims against MGA.  Thus, to the extent
21   the selection of particular documents by Mattel's counsel reveals counsel's
22   impressions and mental processes, the window into counsel's thinking relates to
23   counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.
24   There is no showing that counsel's thinking regarding how best to achieve *that*
25   purpose would also reveal counsel's strategies and impressions in any matter
26   related to the current civil litigation.  In short, Mattel has made an insufficient
27   showing that the communications and documents at issue constitute work product
28   in *this* litigation.  Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 316

1      Further, even if the work-product doctrine somehow applied to Mattel's

2  communications with law enforcement agencies, Mattel waived it, in at least two

3  ways. First, Mattel admits that it has already produced some of those

4  communications to MGA. (See Alger Decl., ¶ 16.)

5      Second, to the extent Mattel's communications with law enforcement

6  officials disclose its conclusions and theories to law enforcement officials, such a

7  disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8  is waived when material is "voluntarily disclosed such that it may become readily

9  accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of . . . trial preparation.' Thus, disclosure in such a situation

14  results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary." *Id.*

21      Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based. Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNB)]
Page 317

1   when it provided the documents to law enforcement agencies that such production

2   "substantially increased the opportunities for potential adversaries to obtain the

3   information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4   reasonable expectation this material would remain protected.

5           **3.      Privilege Objections**

6           Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7   47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8   relief from Mattel based on the latter's communications with law enforcement

9   authorities. Consequently (Mattel reasons), those communications "are not

10  properly discoverable" in this action. (Mattel Opposition, p. 8).

11          That argument is based on a premise for which there is no support in the

12  record, namely that MGA seeks the subject documents in order to assert a claim

13  against Mattel arising from Mattel's allegedly privileged communications.

14  Proceeding from this unsupported assumption, Mattel then argues that such a non-

15  existent claim would be barred.

16          However, that speculative foray is entirely non-responsive to the MGA

17  Motion. The MGA Motion asserts that the documents should be produced not

18  because MGA intends to sue Mattel for communicating with law enforcement

19  authorities, but rather because Mattel itself injected the issue of the criminal

20  proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21  communicated with criminal authorities in various countries regarding the conduct

22  of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23  offers for seeking the subject documents.

24          Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25  position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26  the cases cited by Mattel demonstrate on their face that the subject privileges are

27  restricted to situations not present here. Those cases stand for the proposition that

28  parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNB)]

Exhibit 9
Page 318

1  *liability* under California tort law and federal anti-trust law, respectively – not that

2  such parties are immune from *discovery* in civil suits.

### a.      The Litigation Privilege

4       The California Supreme Court described the scope of the litigation privilege

5  in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6  According to Mattel, *Hagberg* stands for the proposition that a communication to

7  law enforcement officials about suspected criminal activity "enjoys an unqualified

8  privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9  addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative.  *Id.*

16       The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases....  [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

### b.      The *Noerr-Pennington* Doctrine

28  "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 9
Page 319

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach*. 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

12                    **c.      Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials. If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits. In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

20          **C.      Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of
    communications made to government agencies regarding suspected criminal activity. However, in that case (which

28  arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those
    communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
A TTORNEYS AT LAW
LOS ANGELES

- 18 -

## V.   DISPOSITION

1.     The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.     Mattel's request for sanctions is **DENIED**.

3.     The MGA Motion is **GRANTED**.

4.     All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.     All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.     The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.     All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:       March 13, 2009

By:     /s/ Robert C. O'Brien
           ROBERT C. O'BRIEN
           Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
Page 321