# EXHIBIT 13

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 13
Page 386
1-2

Exhibit 13
Page 387

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Exhibit 13
Page 388

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Exhibit *13*
Page 389

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

      J.   Mattel's Motion to Compel Production of Documents

      Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

      Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

Exhibit 13
Page 394

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's
Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process
and asks the Discovery Master to order the disposition of this motion in a manner consistent with
the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will
have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks
the Discovery Master to order Mattel not to revisit any of the requests that were the subject of
Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In
particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to
Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone
records and financial information because these records are protected by privacy rights. Lastly,
Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit
was filed.

III. DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues
raised in the instant motion. The parties met and conferred extensively and in good faith,
reaching compromises on virtually all categories of documents in dispute. Despite their efforts,
however, the parties were ultimately unable to execute a binding stipulation because they were
unable to agree on any provision to govern Mattel's future right to pursue additional discovery
from Bryant. It is clear that the parties deemed it necessary to include such a provision in the
draft stipulation in order to protect their respective positions. Because the parties did not execute
a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

> Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's
> Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

<u>Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA</u>

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce:  (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment.  Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad.  Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA.  In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims:  they will reveal what Mattel information Bryant shared with MGA, if any, and when.  The protective order is sufficient to address Bryant's confidentiality concerns.  It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records).  Therefore, Bryant is ordered to produce all non-

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit *13*
Page 402

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 13
Page 403

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

Exhibit 13
Page 404

# EXHIBIT 14

CONFORMED COPY
LODGED                                    FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE                 RIVERSIDE
BY                        BY

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California  94111
     Telephone:    (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                           EASTERN DIVISION

10

11   CARTER BRYANT, an individual,              CASE NO. C 04-09049 SGL (RNBx)
                                                JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                                    Consolidated with
                                                Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,      Case No. CV 05-2727

15              Defendant.                      **ORDER GRANTING MATTEL'S
                                                MOTION TO COMPEL PRODUCTION
16                                              OF DOCUMENTS AND
                                                INTERROGATORY RESPONSES BY
17   CONSOLIDATED WITH                          MGA**
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20                          I.  INTRODUCTION

21        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22   of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23   20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24   reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25   submission pending the parties' submission of a proposed protective order, which was received

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                    1

Exhibit 14
Page 405

1   on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

## II.  BACKGROUND

A.  Requests for Documents

In June of 2004, two months after Mattel filed suit against Bryant, and before MGA became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the court granted because of the short amount of time provided for compliance with the subpoena. The parties met and conferred in July of 2004, and reached an agreement to limit the scope of some of Mattel's requests.  In particular, the parties agreed to limit production to the "first generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

In 2005, the parties stipulated to supplementing their document productions on May 16, 2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

In September of 2006, MGA made a supplemental production of documents.  On February 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of documents to replace earlier produced documents with legibility problems.

Mattel now moves to compel MGA to produce documents responsive to its requests.  As a preliminary matter, Mattel contends that MGA's production is deficient because it contains redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with respect to essentially five categories of documents.  First, Mattel contends that MGA is withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel believes that MGA's production is incomplete based upon its review of documents that have been produced by third party Steven Linker.  According to Mattel, Linker's documents from October of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant previously represented.  Mattel also contends that MGA's responses to the document requests

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5    Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place.  In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10    documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12    such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13    ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14    discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15    employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16    a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs

18    Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19    be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20    explore whether such works and the profits from Bratz dolls other than the "first generation"

21    Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22    and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23    improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24    information as well as MGA's unfair competition claims.

25

26       [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

Exhibit 14
Page 407

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls."  According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel.  Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls.  Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12       Fourth, Mattel seeks documents relating to MGA's agreements with Bryant.  Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement.  In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17       Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel.  Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21       In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests.  In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70.  Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion.  In particular, MGA represents that it is diligently working to produce documents related

27

28

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10        MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21        Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3           Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18          Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26          [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

6

Exhibit 14
Page 410

1   Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2   files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3   MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4   in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5   MGA objects to producing documents relating to any testing performed to determine the date that

6   Bratz documents were created.  MGA contends that such discovery is premature and should not

7   proceed until experts are designated.

8   B. Interrogatories

9   On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10  however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12  Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections.  MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18  III. DISCUSSION

19  A. Rule 26 of the Federal Rules of Civil Procedure

20  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1 | opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2 | expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3 | the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4 | the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5 | 26(b)(2).

6 |     B.  Document Requests

7 |        1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8 |          34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9 |     The requests above seek discoverable information regarding the origins of Bratz and

10 | Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11 | response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is

12 | "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13 | and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14 | 14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15 | products and documents from MGA Hong Kong.

16 |     As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17 | its production to "relevant and responsive non-objectionable documents" or documents

18 | "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19 | might be excluding documents that are responsive to the request based upon its unilateral

20 | determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21 | document requests ordered herein without these restrictions.

22 |                 Design Documents for Unreleased Products

23 |     MGA's design documents for unreleased products are relevant to Mattel's claims and

24 | defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25 | parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26 | design documents for unreleased products that constitute trade secret information.  See Stipulation

27 |

28 | Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2  has been approved and entered as an order of the court. MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5              <u>Documents from MGA Hong Kong</u>

6              Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10             Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12  documents from MGA Hong Kong.

13             Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15                  2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,</u>

16                     <u>61, 63, 66, 67, 70, 88, 90, 91</u>

17             Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21             As stated previously, design documents for yet unreleased products are relevant and

22  discoverable. <u>See</u> Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25        //

26        //

27

28

9

Exhibit 14
Page 413

### 3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41.

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6           6. Documents Regarding Date-Testing (Request No. 92)

7           Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25          [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
    should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                    11

                                                                    Exhibit 14
                                                                    Page 415

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11    objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13    for confidential, proprietary or commercially sensitive information, or seeks information

14    protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15    it fails to provide the description of each person's role and the start and end dates of each person's

16    involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19    embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22    December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23    substantive information.

24    MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25    to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26    compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28    
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

Exhibit 14
Page 416

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4      Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7      Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10 substantive information.

11     The interrogatory seeks information relevant to establishing when Bryant first conceived

12 Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13 ordered to provide a complete response to Interrogatory No. 9.

14     Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15 was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16 which each such instance occurred, the location of each show or exhibit, and the identity of

17 persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18 objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19 about January 2001 and New York Toy Fair, New York, in or about February 2001.

20     Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21 potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22 incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23 to provide a complete response to Interrogatory No. 10.

24     Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25 including without limitation each office, home and cell phone number, in the name of, for the

26 benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28
   Bryant v Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                        13
                                                              Exhibit 14
                                                              Page 417

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                                   IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May 15, 2007

                                    HON. EDWARD A. INFANTE (Ret.)
                                          Discovery Master

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit 14
Page 418

## <u>PROOF OF SERVICE BY E-MAIL</u>

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

Exhibit 14
Page 419

# EXHIBIT 15

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:       CARTER BRYANT -v- MATTEL, INC.
             AND CONSOLIDATED ACTIONS
================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                          Theresa Lanza
        Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:     ENTERED
                               CLERK, U.S. DISTRICT COURT          DOCKETED ON CM
Dale M. Cendall
Patricia Glaser                     JUL - 5 2007                       JUL - 5 2007

PROCEEDINGS:   MINUTE ORDER   CENTRAL DISTRICT OF CALIFORNIA    BY _____ 164
                              EASTERN DIVISION    BY DEPUTY

        As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                    Initials of Deputy Clerk __jh__
CIVIL -- GEN                          1            Time: 01/15



Exhibit 15
Page 420

07|c2|c7

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____
Time: 01/15

Exhibit *15*
Page 421

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                                5

Initials of Deputy Clerk __jh_____
Time: 01/15

Exhibit *15*
Page 424

# EXHIBIT 16

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 17

CONFORMED COPY

FILED

2007 AUG 14 PM 1:18
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION
BY:_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12               Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15               Defendant.                **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO COMPEL PRODUCTION
                                           OF DOCUMENTS BY MGA;
17                                         DENYING REQUEST FOR
                                           MONETARY SANCTIONS**

18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21                              I.  INTRODUCTION

22        On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

23  Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions.  Mattel

24  seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

25  Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

26  Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                        Exhibit 17
                                                        Page 486

1  65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2  represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3  p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4  a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5  considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6  is granted in part and denied in part, and the request for sanctions is denied.

7  <center>II. BACKGROUND</center>

8      This consolidated action includes MGA's claims for unfair competition against Mattel.

9  Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13      After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23      On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 17
Page 487

1    Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2    defenses thereto.

3            In the meantime, MGA served its initial disclosures related to its unfair competition

4    claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5    disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6    wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7    more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8    Production.

9            MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10   MGA objected and refused to produce documents responsive to approximately two-thirds of

11   Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12   objectionable documents," subject to its General and Specific Objections.

13           Thereafter the parties met and conferred in person and exchanged a few letters. On

14   February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15   Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16   to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17   162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18   agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19   certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20   advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21   Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22   to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23   Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24   responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25   non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                    Exhibit *17*
                                                                3 Page 488

1    In its opening brief, Mattel contends that MGA has improperly refused to produce

2    documents relating to: the creation, origin, timing and ownership of the contested MGA products

3    and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4    17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5    by, among other things, targeting and recruiting current and former Mattel employees (Request

6    Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7    159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8    Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9    documents because they are directly relevant to the claims and defenses in the case. Mattel also

10   contends that MGA has improperly restricted the scope of its document production in response to

11   Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12   MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13   First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14   confer process. Second, Mattel is seeking documents that may be precluded by other motions

15   pending before the district court. Third, Mattel is seeking documents that constitute an

16   unreasonable and overbroad fishing expedition.

17   As to the first point, MGA contends that it has already agreed to produce documents

18   responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166. Moreover,

19   MGA represents that it has produced more than 110,000 pages of documents, including

20   documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21   Mattel with access to Bratz molds and sculpts. MGA also represents that it is continuing to

22   search for and produce documents responsive to Mattel's requests on a rolling basis.

23   MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24   further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25   custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28

Exhibit 17
Page 489

1   responsive to the following sixteen requests:  5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2   157-159."  MGA's Opposition at p. 3.

3          MGA also represents that it is prepared to produce documents responsive to Mattel's

4   Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5   employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6   order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7   2 and 6.

8          As to the second point, MGA contends that Mattel's motion to compel is premature with

9   respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10  things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11  Master issued an order compelling MGA to produce such documents in response to other Mattel

12  discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13  Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14  responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15         For the remaining requests, however, MGA stands by its objections.  More specifically,

16  MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17  and unduly burdensome.

18         In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19  documents do not obviate the need for an order compelling production for several reasons.  First,

20  Mattel contends that in many instances, MGA's purported agreements to produce responsive

21  documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22  and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23  documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24  certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26  _____

27  [1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

28

Exhibit *17*

5 Page 490

1   representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2   supplemental responses. For example, even though MGA stated earlier in its two meet and confer

3   letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4   48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5   objects and refuses to produce documents responsive to these requests. Third, Mattel contends

6   that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7   65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8   Mattel's counterclaims, and yet, MGA has failed to do so. Fourth, Mattel points out that MGA's

9   opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10   MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11   requests as overbroad and burdensome. See MGA's Opposition at pp. 3 and 8.

12       Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13   on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14   upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15   products. Accordingly, Mattel requests an order compelling production of documents all

16   documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17   any objections thereto.

18       With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19   that the requests seek documents relevant to Mattel's trade secret counterclaims. Mattel also

20   contends that MGA has failed to establish that complying with the requests would impose an

21   undue burden.

22                             <u>III. DISCUSSION</u>

23       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25   party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

26   permitted. See Fed.R.Civ.P. 26(b)(1); <u>Rivera v. NIBCO, Inc.</u>, 364 F.3d 1057, 1072 (9th Cir.

27

28  

1  2004) ("District courts need not condone the use of discovery to engage in 'fishing

2  expeditions.'"); <u>Bernstein v. Travelers Ins. Co.</u>, 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5  the phrase "subject matter involved in the pending action," were intended to prevent discovery

6  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7  litigate the issues presented by the pleadings but to develop new claims or defenses.).

8         Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  <u>Request Nos. 1, 3, 4, 13 and 18</u>

18         Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials."  Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS."  Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL."  Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28

Exhibit 17
7 Page 492

1  alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2  PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3  advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4  PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5  sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6  advertisements, brochures, displays and Internet publications."

7           During the meet and confer process, MGA agreed to produce documents responsive to

8  Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9  responses, however, MGA responded that it would produce responsive documents "visible to the

10  consuming public at the point of purchase," "made available to the public," or "presented to the

11  consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12           Mattel contends that the requested documents and items are relevant to MGA's claim of

13  "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14  the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15  Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16  claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17  and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18  directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19  similarity to MGA's products over time.

20           In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21  arguments above, relying instead on its argument that these requests are premature until Judge

22  Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23  requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24  MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25  3, 4, 13 and 18.

26  //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit *17*
8  Page 493

1    **Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159**

2            In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3    8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4    opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5    burdensome. See MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6    periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7    that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8    1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9    CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10   contends that these requests encompass, among other things, every single advertisement MGA

11   ever ran in connection with BRATZ or any of the other products at issue.

12           Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13   contain admissions relevant to various issues in the case, including admissions regarding the

14   origin and timing of the products at issue; the performance of the contested products or MGA as a

15   whole, which may undercut MGA's claims for damages; and statements that might reveal that

16   MGA had access to confidential Mattel information.

17           Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18   overbroad. They require MGA to produce every single advertisement MGA ever ran in

19   connection with all of the products at issue. The requests are not limited in any respect to the

20   subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21   Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22   seeks.

23           Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24   43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25   pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26   //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                9

Exhibit *17*
Page 494

**Request Nos. 9, 10, 12**

Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale and ownership of products and packaging" "that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is in the COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related "COMMUNICATIONS" (No. 12). During the meet and confer process, MGA agreed to produce "documents sufficient to show the timing of, and relevant facts" regarding the following products on the following topics:

- "First generation 'Bratz'" line, including packaging – invention, creation, origin, conception, authorship, design, development, sale and ownership;
- "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception, authorship and first sale;
- "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Petz," including packaging – invention, creation, origin, conception, authorship, and first sale;

1    • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2    authorship, and first sale;

3    • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4    sale;

5    • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6    first sale; and

7    • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8    sale.

9    Kidman Decl., Ex. 14. In response to Request No. 9, MGA also agreed to produce documents

10   containing development, production and sales information for the product(s) affected by the hair

11   shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12   regarding the shortage and its effect on MGA." Id. Thereafter, MGA asserted objections to these

13   requests in its May 31, 2007 supplemental responses. In opposition to Mattel's motion, however,

14   MGA restated that it would produce documents responsive to these requests consistent with its

15   prior meet and confer letter. MGA's Opposition at p. 5.

16       Mattel contends that MGA's agreement to produce documents is insufficient because

17   MGA has limited its production to documents "sufficient to show." MGA's opposition brief fails

18   to address Mattel's argument. Instead, MGA merely asserts that it agreed to produce documents

19   responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20   Mattel's motion should be denied as moot.

21       Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22   justify why its production should be limited to documents "sufficient to show." Therefore,

23   Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24   <u>Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166</u>

25       In its two meet and confer letters MGA agreed to produce, subject to its General and

26   Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                          11

Exhibit 17
Page 496

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9           In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10  Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11  Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12  these requests.

13  **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14          MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15  and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16  the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17  particular, the theft of trade secrets through targeting and hiring current and former Mattel

18  employees.

19          Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20  while the individual was employed by MATTEL." Although the request may encompass relevant

21  documents, it is overbroad insofar as it requires production of all communications, regardless of

22  subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23  equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24  to Rule 26(b)(2), Fed.R.Civ.P.

25          Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26  [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28

1   CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2   relevant documents, however it is overbroad, seeking all documents relating to any

3   communications by MGA with any news organization. Furthermore, the request seeks documents

4   that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5   Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6        Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7   about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8   advertising, media releases, and public relations material." This request is also overbroad in that

9   it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11       Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17       Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28

1    contractor RELATING TO the ownership of any idea, concept, design, or product. Unlike the

2    previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3    central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4    and former Mattel employees. MGA has not carried its burden of establishing that it would be

5    unduly burdensome to comply with these requests. Accordingly, Mattel's motion is granted as to

6    Request Nos. 60, 138, 139 and 140.

7            Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8    or indirectly) by [MGA] at any time since January 1, 1999." Request No. 161 seeks "[a]ll

9    DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10   other than MATTEL products that [MGA] purchased at retail." Request No. 164 seeks "[a]ll

11   DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12   any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13   CONTESTED MATTEL PRODUCTS." These three requests are also reasonably tailored to seek

14   documents that could support Mattel's allegations of trade secret theft. MGA has failed to

15   establish that it would be unduly burdensome to comply with these requests. Mattel's motion is

16   granted as to Request Nos. 160, 161 and 164.

17                          IV. CONCLUSION

18           For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19   13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20   166, and denied as to Request Nos. 42, 54-56, 58, 59. MGA shall produce, without limitation, all

21   non-privileged responsive documents in accordance with this Order no later than August 30,

22   2007. Mattel's request for sanctions is denied.

23           Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24   Master, Mattel shall file this Order with the Clerk of Court forthwith.

25   Dated: August 13, 2007

26                                          HON. EDWARD A. INFANTE (Ret.)
                                                    Discovery Master

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                          14

Exhibit 17
Page 499

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

_____
Sandra Chan

Exhibit 17
Page 500

# EXHIBIT 18

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:  213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11  CARTER BRYANT, an individual,    Case No.  CV 04-09049 SGL (RNBx)

12              Plaintiff,
                                      Consolidated with
13          v.                        Case No. CV 04-09059
                                      Case No. CV 05-2727
14  MATTEL, INC., a Delaware
    corporation,                      **PHASE 2 DISCOVERY MATTER**
15
                                      **ORDER NO. 17, REGARDING:**
16              Defendant.
                                      **(1)  THE MGA PARTIES' MOTION**
17                                    **FOR A PROTECTIVE ORDER**
                                      **STAYING DISCOVERY ON**
18                                    **TRADE DRESS CLAIMS;**
19
                                      **(2)  MOTION OF MATTEL, INC. TO**
20                                    **ENFORCE PRIOR COURT ORDER**
                                      **AND TO COMPEL RESPONSES TO**
21                                    **INTERROGATORIES; and**
22
23
24  CONSOLIDATED WITH                 **(3)  *EX PARTE* APPLICATION**
    MATTEL, INC. v. BRYANT and        **FILED BY MATTEL, INC. FOR AN**
25  MGA ENTERTAINMENT, INC. v.        **ORDER TO SHOW CAUSE RE:**
    MATTEL, INC.                      **MGA ENTERTAINMENT, INC.'S**
26                                    **FAILURE TO COMPLY WITH**
                                      **COURT ORDER**
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                      ORDER NO. 17
                                      [Case No. CV 04-09049 SGL (RNBx)]

Exhibit **18**
Page 501

1    This Order sets forth the Discovery Master's ruling on the following

2    discovery matters:  (1) the motion for a protective order staying discovery on trade

3    dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,

4    MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")

5    ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.

6    ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")

7    to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental

8    Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and

9    (3) the *ex parte* application filed by Mattel for an order to show cause regarding

10   MGA's failure to comply with a prior court order ("Application") [Docket No.

11   4997] (collectively, the "Motions").

12       The Motions came on regularly for hearing before the Discovery Master on

13   April 14, 2009.  All interested parties were represented by counsel and afforded the

14   opportunity to present oral argument on the Motions.  The Discovery Master,

15   having considered the papers filed in support of and in opposition to the Motions,

16   and having heard oral argument, rules as set forth below.

17   **I.   THE TRADE DRESS DISCOVERY AT ISSUE**

18       All of the Motions concern discovery related to MGA's trade dress claims.

19       **A.   Interrogatory Nos. 43 And 44**

20       On October 23, 2007, Mattel served its Amended Fourth Set of

21   Interrogatories on MGA, including Interrogatory Nos. 43 and 44.  (Declaration of

22   Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at

23   pp. 7 – 8).   These interrogatories ask MGA to identify, for each design, product

24   and packaging that MGA contends Mattel copied, the date of conception and the

25   date it was first fixed in a tangible medium:

26       • Interrogatory No. 43:  "For each concept, design, product, product

27           packaging or other matter that YOU contend MATTEL copied or

28           infringed, including but not limited to those identified in MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 502

1    Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2    Unfair Competition, Response To Interrogatory No. 2 (and any

3    Supplemental Responses to such Interrogatory), state the date that each

4    such concept, design, product, product packaging or other matter was

5    conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6    DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,

7    Ex. 1 at p. 7).

8    • Interrogatory No. 44: "For each concept, design, product, product

9    packaging or other matter that YOU contend MATTEL copied or

10    infringed, including but not limited to those identified in MGA's

11    Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12    Unfair Competition, Response To Interrogatory No. 2 (and any

13    Supplemental Responses to such Interrogatory), state the date that each

14    such concept, design, product, product packaging or other matter was

15    first fixed in any tangible medium of expression (if ever), and

16    IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17    that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and

18    8).

19    MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20    November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21    supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On

22    December 20, 2007, Mattel moved to compel further responses to the

23    interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's

24    motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,

25    MGA served its second and third set of supplemental responses to Interrogatory

26    Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27    On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28    February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNB)]

Exhibit 18
Page 503

1   Mattel's motion to compel, finding that the "requested information is relevant to

2   Mattel's defense against the MGA [P]arties' claims that their products have been

3   copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –

4   12). The prior discovery master further ruled that the supplement responses

5   provided by MGA were deficient, reasoning as follows:

6          Although the MGA [P]arties served supplemental

7          responses after filing their opposition brief, the

8          supplemental responses do not include the requested

9          information. The MGA [P]arties have [also] failed to

10         establish that the interrogatories are unduly burdensome.

11   (Id., Ex. 8 at p. 12). The prior discovery master then ordered MGA to

12   supplement its responses "no later than February 26, 2008." (Id., Ex. 8

13   at p. 22).

14          On March 3, 2008, seven days after the deadline specified in the prior

15   discovery master's order, MGA supplemented its responses to Interrogatory Nos.

16   43 and 44 for a fourth time, objecting that the discovery in question related to

17   Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on

18   Phase 2 discovery on February 4, 2008. (Id., Ex. 9 at pp. 7 – 16). On April 22,

19   2008, the prior discovery master granted the MGA Parties' motion for clarification

20   concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation

21   to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby

22   stayed until further order of the district court lifting the stay on Phase 2 discovery."

23   (Id., Ex 10 at p. 3).

24       **B.    Supplemental Interrogatory Nos. 51 – 55 And 64**

25          On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55

26   and 64 on MGA. (Id., Ex 11 at p. 12 – 14 and 16). These interrogatories seek

27   information regarding MGA's allegations that Mattel copied, infringed or diluted

28   MGA's products:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 78
Page 504

- Supplemental Interrogatory No. 51: "For each concept, design, product, product packaging or other matter that YOU contend MATTEL has copied, infringed, or diluted, including but not limited to those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), describe, fully and separately, each and every concept, design, product, product packaging or other matter of or by MATTEL that YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s), product(s), product packaging or other matter. Your answer should describe the Mattel concept, design, product, product packaging or other matter with specificity and in detail (including without limitation by product name, product number, SKU, or bar code number), and specify those elements or attributes of YOUR claimed concept, design, product, product packaging or other matter that YOU contend were copied, infringed or diluted by MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).

- Supplemental Interrogatory No. 52: "For each trade dress that YOU contend MATTEL copied, infringed, or diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade dress and, for each such product, separately state (a) the number of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue received by YOU from such SALES of each such product; (c) all costs YOU have incurred in connection with each such product; including but not limited to YOUR cost of good sold, and (D) YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p. 13).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 505

1     • <u>Supplemental Interrogatory No. 53</u>: "For each MATTEL concept,

2     design, product, product packaging or other matter that YOU contend

3     is likely to cause confusion, to cause mistake, or to deceive as to

4     affiliation, connection, or association, or as to origin, sponsorship, or

5     approval, separately state all facts that support YOUR contention of

6     such, including but not limited to all facts that support YOUR

7     contention, if YOU so contend, that any of the SLEEKCRAFT

8     FACTORS weighs against MATTEL, and IDENTIFY all PERSONS

9     with knowledge of such facts, and all DOCUMENTS that REFER OR

10    RELATE TO such facts." (*Id.*).

11    • <u>Supplemental Interrogatory No. 54</u>: "For each concept, design,

12    product, product packaging or other matter that YOU contend

13    MATTEL copied, infringed or diluted, state all facts that support

14    YOUR contention, if YOU so contend, that such copying or

15    infringement was intentional or willful, and IDENTIFY all PERSONS

16    with knowledge of such facts, and all DOCUMENTS that REFER OR

17    RELATE TO such facts." (*Id.*).

18    • <u>Supplemental Interrogatory No. 55</u>: "State all facts which support the

19    allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL

20    has "caused and continues to cause blurring and dilution of the

21    distinctive look of MGA's products and trade dress," and IDENTIFY

22    all PERSONS with knowledge of such facts, and all DOCUMENTS

23    that REFER OR RELATE TO such facts." (*Id.*, Ex. 11 at p. 14).

24    • <u>Supplemental Interrogatory No. 64</u>: "To the extent YOU have not

25    previously disclosed such information in a prior interrogatory response

26    YOU provided to Mattel, state all facts which support YOUR claims

27    against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

28    knowledge of such facts, and all DOCUMENTS that REFER OR

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 506

1    RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2    MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3    February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4    therefore stayed.  (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5    **C.    The Court Lifts The Stay On Phase 2 Discovery**

6    On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7    (Watson Decl., Ex. 13 at p. 2).  Mattel's counsel subsequently wrote to counsel for

8    MGA on January 20, 2009 to ask when MGA planned to serve the required

9    responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10    previously ordered answered. (*Id.*, Ex. 14).

11    Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12    parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64. (*Id.*,

13    Ex. 15 at pp. 2 – 3).  Counsel for the parties then spoke on February 6, 2009

14    regarding Mattel's eight trade dress interrogatories.  (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15    During the conference, MGA stated, that it would provide responses to

16    Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17    "not later than 30 days after the Court decides the trade dress summary judgment

18    motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19    On February 18, 2009, the parties met and conferred regarding Mattel's

20    contemplated summary judgment motion concerning MGA's trade dress claims and

21    again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22    Ex. 23 at p. 1).  The next day, MGA informed Mattel that it would not agree to

23    provide further responses to the interrogatories.  (*Id.*).  Rather, MGA said that it

24    planned to request a protective order to stay its obligation to respond and that it

25    would only provide responses:  (1) if their planned protective order was denied; or

26    (2) if the protective order is granted, 21 days after the Court decides Mattel's

27    summary judgment motion, to the extent any trade dress claims remain after that

28    decision. (*Id.*).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 18
Page 507

1    On February 26, 2009, the MGA Parties filed the Protective Order Motion.

2    Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application

3    on March 10, 2009.

4    **II.    THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER**

5        The Discovery Master first addresses the MGA Parties' Protective Order

6    Motion.

7        **A.    The Relief Sought By The MGA Parties**

8        The MGA Parties "seek a stay to defer responding to eight specific

9    interrogatories relating to MGA's trade dress claims until 21 days after the Court

10   rules on Mattel's [contemplated] summary judgment motion." (Motion for a

11   Protective Order, p. 5). "The MGA Parties also seek a stay of all discovery relating

12   to MGA's trade dress claims for the same period." (*Id.*).

13       **B.    Mattel's Opposition**

14       Mattel opposes the Protective Order Motion on five grounds.  First, Mattel

15   argues that the motion is inconsistent with the Court's January 6, 2009 order lifting

16   the stay on Phase 2 discovery. (Opposition, pp. 12 – 13).  Second, Mattel argues

17   that any request to stay discovery is not properly directed to the Discovery Master.

18   (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is

19   commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13

20   – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the

21   trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –

22   15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is

23   no corresponding undue burden placed on the MGA Parties. (*Id.*, pp. 16 – 20).

24       **C.    Legal Standard**

25       In general, parties may obtain discovery regarding any matter, not privileged,

26   that is relevant to the claim or defense of any party. (Fed. Rule Civ. P. 26(b)(1)).

27   The motion brought by the MGA Parties to stay discovery is made pursuant to

28   Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -                                    ORDER NO. 17
                        [Case No. CV 04-09049 SGL (RNB)]

Exhibit *18*

Page 508

1  Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2  protect a party or person from annoyance, embarrassment, oppression, or undue

3  burden or expense." (Fed. Rule Civ. P. 26(c)).

4      A district court is afforded considerable discretion in deciding whether to

5  issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6  130 (10th Cir. 1990). While it is within a district court's discretion to stay

7  discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8  F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9  *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10  June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11  discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12  296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13  discovery even though dispositive motions are pending."]).

14      The underlying principle in determining whether to grant or deny a stay is

15  that "[t]he right to proceed in court should not be denied except under the most

16  extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio*

17  *Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of

18  the normal proceedings of a court should be the exception rather than the rule.

19      Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20  may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21  689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22  result of the ruling thereon; where the facts sought through uncompleted discovery

23  would not affect the resolution of the motion, or where discovery on all issues of

24  the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25  298).

26      In deciding whether to stay discovery pending the resolution of a dispositive

27  motion, federal courts in California conduct the following inquiry: (1) Is the

28  pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit
Page 509

1 the issue at which discovery is directed," and, if so (2) can the pending dispositive

2 motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*

3 *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)). If the court

4 answers both questions in the affirmative, it may then analyze other factors,

5 including the likelihood that the dispositive motion will be granted, (*id.*), and/or

6 "(1) plaintiff's interests in proceeding expeditiously with the civil action and the

7 potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the

8 convenience to the court; (4) the interests of persons not parties to the civil

9 litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,

10 2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

**D.    Analysis**

12 The MGA Parties' primary argument in favor of the requested stay is that, in

13 the event Mattel's contemplated motion for summary judgment is granted, "the

14 Trade Dress Interrogatories may prove unnecessary or may be substantially

15 narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).

16 The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when

17 a dispositive motion, such as a summary judgment motion, 'would obviate the need

18 for discovery.'" (*Id.*, p. 11 (citation omitted)).

19 The Discovery Master finds this rationale unpersuasive for the following

20 reasons.

**1.    The Discovery Master Does Not Have the Power To Issue The Requested Stay**

23 First, the Discovery Master does not have authority to render a ruling that

24 could directly override the Court's scheduling order and delay the Phase 2 trial.

25 While the Discovery Master has been appointed to resolve "any and all . . .

26 discovery disputes in this case,"[1] and may issue orders that indirectly impact the

---

[1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master Order) and the Order appointing the current Discovery Master dated January 6, 2009.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 510

1   scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2   is nothing in the order appointing the Discovery Master that authorizes him to

3   override the scheduling order directly.[3] Indeed, the power to control scheduling in

4   this matter is vested with the Court, as evidenced by the scheduling order issued by

5   it on February, 11, 2009.[4] (Order dated February 11, 2009, p. 2). Because the

6   Court, not the Discovery Master, established the applicable discovery cut-off and

7   trial dates for Phase 2, (id.), the Discovery Master cannot issue a stay that overrides

8   that order.

9         **2.      The Court Previously Indicated That the Parties Should**

10                 **Proceed With Phase 2 Discovery.**

11       Second, the Court advised the Discovery Master on February 11, 2009 that

12   "[t]here is no stay on discovery. Period." (Reporter's Transcript of Proceedings,

13   February 11, 2009, p. 97:15). It further instructed the Discovery Master "in no

14   uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15   (*id.*, p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16   precluding *any* discovery that is properly sought for the trial that is scheduled," (*id.*,

17   p. 101:22:24 [emphasis added]). While these statements admittedly arose in the

18   context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19   nevertheless believes that they are instructive of the Court's view that any request

20

21   ───────────────────

22 [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's
ruling might impact upon the Court's scheduling order does not relieve the parties of following
this procedure.")

23

24 [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is
clear, because the requested stay is of an indefinite duration. Although the MGA Parties request a

25   stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,
(Protective Order Motion, p. 5), no such motion is pending before the Court. Nor is there a

26   hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be
able to issue a ruling disposing of it.

27

   [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the

28   current Discovery Master.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2   extraordinary circumstances not present here.

3             **3.**      **There Is No Dispositive Motion Pending**

4         Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5   because no dispositive motion is pending before the Court. The MGA Parties

6   concede in their moving papers and again in their Reply that Mattel has merely

7   represented that it will file a summary judgment motion at some point in the future.

8   (Protective Order Motion, p. 4; Reply, p. 4). In the absence of a *pending*

9   dispositive motion, there is no basis for granting the requested stay.[5]

10            **4.**      **Mattel's Contemplated Summary Judgment Motion Will**

11                   **Not Dispose Of MGA's Trade Dress Claims**

12         Even assuming a dispositive motion had been filed with the Court, the MGA

13

---

14   [5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case, the party seeking the discovery stay was the party who had brought the pending dispositive

15   motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some

16   documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to

17   dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,

18   alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for

19   summary judgment, properly sought and obtained a protective order staying discovery

20   propounded on it by plaintiffs.]; *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on discovery upheld in favor of party who raised immunity issue via a summary judgment motion];

21   *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the

22   MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend

23   to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary

24   judgment motion, which the MGA Parties believe should be denied, is resolved.

       Further, the five cases cited by the MGA Parties all involved situations where a dispositive

25   motion had already been filed with the Court. (*Id.*)

       Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage.

26   Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*,

27   506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at 282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for

28   several years.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 512

1   Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2   of the entire case, or at least dispositive on the issue at which discovery is directed."

3   (*Qwest Communications Corp.*, 2007 WL 2288299, *2).  Mattel's contemplated

4   summary judgment motion will not dispose of MGA's trade dress claims because it

5   is undisputed that MGA's trade dress claims "concern products and other matters

6   that will not be the subject of Mattel's contemplated motion."  (Opposition, p. 15;

7   *see also* Reply p. 11 n.6).

8       The MGA Parties nevertheless argue in their Reply that "it would make far

9   more sense for MGA to compile responsive information once the summary

10  judgment motion is decided and the full scope of the trade dress claims is settled."

11  (Reply, p. 11 n. 6).  Phrased differently, the MGA Parties argue not that the

12  summary judgment motion may moot all of the requested discovery, but only that,

13  if granted, it would narrow the scope of the trade dress discovery.  Because

14  discovery will inevitably be required on certain portions of MGA's trade dress

15  claims, this is not a situation where the contemplated motion is potentially

16  dispositive of the issue at which the discovery is directed.  Accordingly, the stay

17  requested by the MGA Parties can be denied for that reason alone.

18       **5.     Other Factors Also Weigh Against Issuing The Requested**

19              **Stay**

20       Finally, many, if not all, of the other factors a court may consider in deciding

21  whether a stay is appropriate pending the resolution of a dispositive motion weigh

22  in favor of denying the requested stay.

23              **a.     The Merits Of The Dispositive Motion**

24       As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25  of the additional factors a court may consider is whether the merits of the pending

26  dispositive motion make it likely that the motion will be granted.  Although the

27  Discovery Master cannot perform such an analysis here (because no dispositive

28  motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 513

1   Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2   (Protective Order Motion, p. 13). In light of this statement, the MGA Parties are

3   precluded from arguing that it is likely Mattel's motion will be granted in order to

4   justify their request for a stay. Accordingly, the Discover Master finds that – based

5   on the record presented – this factor weighs against issuing the requested stay.[6]

6             **b.**    **Prejudice To Mattel**

7       Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8   delaying the ultimate resolution of the matter and increasing litigation costs. As

9   explained above, the stay requested by the MGA Parties is of an indefinite duration

10  and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11  after the stay is lifted. Moreover, Mattel could be forced to depose the same

12  witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13  trade dress claims and later with respect to those trade dress issues that remain

14  following the disposition of Mattel's contemplated summary judgment motion).

15  For these reasons, this factor weighs against staying the trade dress discovery.

16            **c.**    **The MGA Parties Have Not Demonstrated They Will**

17                          **Suffer Any Undue Burden**

18      While the MGA Parties claim that it will "be extremely difficult, time-

19  consuming and costly" to respond to the eight trade dress interrogatories at issue,

20  (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21  have to be taken regardless of the outcome of Mattel's anticipated summary

22  judgment motion. Further, while it is possible that Mattel's contemplated summary

23  judgment motion, if granted, could simplify the issues for trial and reduce the costs

24  imposed on the MGA Parties, it is also possible that the resolution of the motion

25  will not have any bearing on the scope of the discovery needed in this case.

26  Regardless, a party is always burdened with costs when it voluntarily chooses to

27

28

---

[6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated summary judgment motion.

Arent Fox LLP
Attorneys At Law
Los Angeles

- 13 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 18
Page 514

1   pursue a claim, whether the case ultimately is dismissed, summary judgment is

2   granted, the case is settled, or a trial occurs.  If the MGA Parties wish to avoid these

3   costs in connection with MGA's trade dress claims, MGA can always dismiss them.

4   Because any hardship that MGA might face is one of its own making, any burden

5   imposed on it in having to respond to the discovery is justified.  Accordingly, this

6   factor weighs against issuing the requested stay.

7           **d.      The Interests Of The Judiciary And The General**

8                      **Public**

9           The Court, using funds supplied by the general public, has already expended

10  a great deal of effort and resources in this matter, including conducting a lengthy

11  trial in Phase 1.  The Court further issued a scheduling order that established a

12  specific trial date and discovery cut-off for Phase 2.  Consequently, the general

13  interests of controlling the court's docket and the fair and speedy administration of

14  justice weigh heavily in favor of denying the requested stay.

15  **E.      Summary Of Ruling Regarding The Protective Order Motion**

16          For all of the foregoing reasons, the MGA Parties have failed to meet their

17  burden of demonstrating that good cause exists for issuance of a protective order

18  staying their obligation to respond to the subject discovery.

19  **III.    MATTEL'S MOTION TO COMPEL**

20          Having denied the Protective Order Motion, the Discovery Master now turns

21  to Mattel's Motion To Compel.

22  **A.      Interrogatory Nos. 43 and 44**

23          **1.      Orders Issued By The Prior Discovery Master**

24          As explained in Section I.A., above, this is not the first time that Mattel has

25  moved to compel responses to Interrogatory Nos. 43 and 44.  The prior discovery

26  master ordered MGA to supplement its responses to these interrogatories as part of

27  his February 15, 2008 order ("February 15, 2008 Order").  (Watson Decl., Ex. 8 at

28  pp. 11 – 12).  Seven days after the deadline specified in the February 15, 2008

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 515

1   Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2   served objections stating that the discovery in question related to Phase 2 and had

3   been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4   7 – 16). After having been advised of the stay imposed by the Court on

5   February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6   on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7   obligation to supplement their responses . . . [was] stayed until further order of the

8   district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

9               **2.     The Relief Sought By Mattel**

10           Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11   44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12   requests that the Discovery Master enforce the February 15, 2008 Order and require

13   MGA to supplement its responses. (Motion To Compel, pp. 9 – 10).

14               **3.     MGA's Opposition**

15           In its Opposition, MGA relies on two grounds for refusing to provide

16   responses to Interrogatory Nos. 43 and 44. First, MGA argues that it is not in

17   violation of the prior discovery master's February 15, 2008 Order because that

18   order was subsequently stayed by the April 22, 2008 Order, which "did not include

19   any specific date, or time period, after the Phase 2 stay was lifted within which

20   MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21   9 and 11). Second, MGA argues that it has not refused to answer Interrogatory

22   Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23   either provide further responses following the denial of that motion or, in the event

24   the motion is granted, after the Court decides Mattel's contemplated summary

25   judgment motion. (*Id.*, pp. 11 – 12).

26           The Discovery Master does not find either of these arguments persuasive.

27               **a.     The April 22, 2008 Order**

28           While MGA is correct that the prior discovery master temporarily stayed the

Arent Fox LLP
Attorneys At Law
Los Angeles

- 15 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 18
Page 516

1    enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2    argument that it does not have any obligation to supplement the responses to

3    Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4    time within which MGA had to provide responses is not supported by the record.

5        As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6    supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7    February 15, 2008 Order returned.  Indeed, the plain language of the prior

8    discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9    supplement their responses . . . are hereby stayed **until further order of the**

10   **district court lifting the stay on Phase 2 discovery.**" (Watson Decl., Ex. 10 at p.

11   3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12   January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13   of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14       Further, MGA had, at most, eleven days following the lifting of the stay on

15   Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16   (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17   15, 2008 Order required MGA to provide its supplemental responses within eleven

18   days of the order (i.e., on February 26, 2008).  (*Id.*, Ex. 8 at p. 22).  Giving MGA

19   the benefit of the doubt and assuming that all eleven of those days remained at the

20   time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21   provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22   plus 2 additional days because January 17, 2009 falls on a Saturday).  Because

23   more than three months have passed without a response, MGA has not complied

24   with the terms of the prior discovery master's February 15, 2008 Order.

25              b.    **MGA's Offer To Produce The Supplemental**

26                    **Responses Following The Disposition Of The**

27                    **Protective Order Motion**

28       The contention that MGA somehow remedied its failure to supplement its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 517

1   responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2   following the ruling on the Protective Order Motion is likewise unavailing. (*Id.*,

3   pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found

4   none, supporting the proposition that a party may refuse to respond to an

5   interrogatory after it has been ordered to do so by subsequently filing a motion for a

6   protective order. Nor would such a rule be logical, as it would permit the party

7   ordered to respond to thereby nullify the effect of the court order. Regardless, the

8   Discovery Master denied the Protective Order Motion and finds that it cannot be

9   used as a basis for failing to comply with the February 15, 2008 Order.

10              **4.      Conclusion**

11          For all of the foregoing reasons, MGA must promptly provide full and

12   complete responses to Interrogatory Nos. 43 and 44.

13      **B.      Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**

14              **And 44**

15          In its Motion To Compel, Mattel also requests that the Discovery Master

16   sanction MGA in the amount of $4,515 for failing to comply with the prior

17   discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In

18   response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19   "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20   only when, and MGA had already brought the 'when' question to the Discovery

21   Master one week before Mattel filed the instant motion to compel" as part of its

22   Protective Order Motion. (Opposition, p. 13). However, the fact that one party has

23   moved for a protective order does not prevent the party opposing that motion from

24   subsequently filing a motion to enforce a prior court order, particularly where the

25   latter motion requests that the Discovery Master compel MGA to provide responses

26   to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27   while the motion for a protective order indicates that MGA will respond to the

28   interrogatories, at the earliest, "within 21 days after" the denial of the Protective

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -                                        ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 518

1  Order Motion, (Protective Order Motion, p. 10).

2       MGA next argues that sanctions should be denied because its Protective

3  Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4  "it would be a perversion of every conceivable notion of economy and efficiency,

5  not to mention fairness . . . if a motion to compel could be used to sanction a party

6  for exercising its legal right to seek a protective order." (*Id.*, p. 14). But these

7  arguments are not persuasive for the same reasons discussed in Section II and

8  Section III.A.3.b., above, namely that the Protective Order Motion is not

9  meritorious and MGA has not cited any legal authority supporting the proposition

10  that a party may refuse to respond to an interrogatory after it has been ordered to do

11  so by subsequently filing a motion for a protective order.

12       Finally, MGA argues that it "has not appealed, challenged or otherwise

13  refused to obey" the prior discovery master's order, (*id.*), but merely requested that

14  the "Discovery Master temporarily defer the time to respond . . . based upon the

15  new, intervening circumstances that arose between the issuance of that order and

16  the lifting of the discovery stay," (*id.*, p. 15). However, this is just another way of

17  saying that MGA refused to supplement its responses as required by the prior

18  discovery master due to its mistaken belief that the Protective Order Motion

19  obviated the need to comply with the February 15, 2008 Order. Because that

20  argument has already been rejected, MGA has failed to show that it had substantial

21  justification for opposing the enforcement of the February 15, 2008 Order.

22  Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23      **C.**    **Supplemental Interrogatory Nos. 51 – 55 And 64**

24          **I.**    **The Relief Sought By Mattel**

25       Mattel next requests that the Discovery Master overrule MGA's objections

26  and compel it to provide full and complete responses to Supplemental Interrogatory

27  

---

[7] Having determined that MGA lacked substantial justification for failing to comply with the February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

28  

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit
Page 519

1   Nos. 51 – 55 and 64.  (Motion To Compel, pp. 12 – 21).

2          **2.    MGA's Opposition**

3        In its Opposition, MGA initially argues that Mattel failed to meet and confer

4   in good faith.  (Opposition, pp. 16 – 18).  It further argues that even if Mattel did

5   meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6   they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7   other interrogatories, (4) improperly seek expert witness information, privileged

8   information, and information better known to Mattel, and/or (5) impose an undue

9   burden) are meritorious and should be sustained.  (*Id.*, pp. 18 – 26).

10         **a.    Purported Failure To Meet And Confer**

11        Because it could dispose of the outstanding discovery issues related to

12   Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13   addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14   to filing its motion.

15        MGA argues that Mattel did not meet and confer in good faith because its

16   "meet and confer letter concerning these interrogatories is utterly devoid of any

17   reference whatsoever to the putative impropriety of the objections it now challenges

18   . . ." (Opposition, p. 17).  However, MGA admits that the parties did meet and

19   confer about certain issues regarding these interrogatories.  (*Id.*, p. 18 ["While the

20   parties did meet and confer about the timing of MGA's response to Interrogatory

21   Nos. 51 – 55 and 64 . . ." (emphasis omitted)]).   The record further reflects Mattel

22   sent a meet and confer letter and had multiple phone calls with MGA's counsel

23   about these specific interrogatories.  (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24   In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25   "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

27   [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson

28   Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and
     ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 18
Page 520

1    Interrogatories] based on . . . any other objections . . ." (Watson Decl., Ex. 15).

2    Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3    37's "good faith" meet and confer requirement.

**b.    Definitional Objections**

5    MGA's first substantive argument in opposition to Supplemental

6    Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7    ambiguous because of the manner in which the term "SALES" is defined.

8    (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9    – 55 are ambiguous because of the definition used for the term "MATTEL." (*Id.*,

10   pp. 19 – 20). However, MGA has not cited any legal authority in support of its

11   position.

12   Moreover, MGA did not set forth the grounds for its objections "with

13   specificity," at the time it objected to the interrogatories, as required by Federal

14   Rule of Civil Procedure 33(b)(4). To the contrary, it merely "incorporate[d]

15   General Objection Nos. 14 – 15 (regarding Definitions), including without

16   limitation its objection to the definition of the term 'MATTEL" for Supplemental

17   Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18   "SALES" with respect to Supplemental Interrogatory No. 52 (*id.*, pp. 5 – 6). This

19   incorporation by reference of a list of general objections is insufficient to preserve

20   an objection. (*Convertino v. U.S. Dept. of Justice*, 565 F.Supp.2d 10, 12 – 13

21   (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC*, 2008 WL 2714422, *2 (E.D.Va.

22   July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, *5

23   - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24   Regardless, the Discovery Master is not persuaded that MGA is unable to

25   understand the terms MATTEL and SALES. Accordingly, the definitional

26   objections are overruled. MGA must answer the interrogatories.[9]

27   _____

28   [9] The prior discovery master repeatedly required MGA to respond to discovery that used these definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit *18*
Page 521

1  **c.     Expert Witness Objection**

2      With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts

3  that it "has simply interposed an objection that preserves [its] right to rely on expert

4  testimony." (Opposition, p. 21).  Since that is the full extent of MGA's expert

5  witness objection, the Discovery Master agrees that the objection, as limited by

6  MGA, is valid.  What MGA cannot do is assert that this objection permits it to

7  withhold information that is now available to it.  Accordingly, the objection is

8  sustained to the extent that MGA's interrogatory response merely includes a

9  reservation of rights to supplement the response during expert discovery.

10          **d.     Objection That The Information Is Better Known By**

11              **Mattel**

12      Regarding Supplemental Interrogatory No. 51, MGA asserts that the request

13  for it to identify Mattel products by stock keeping number or bar code number is

14  objectionable because that information is better known to Mattel.  (*Id.*, p. 21).

15  However, MGA cannot withhold information on the ground that Mattel knows

16  which people have knowledge of Mattel's purported copying of MGA's intellectual

17  property.  Mattel is entitled to discover the information MGA possesses and the

18  factual bases of its trade dress claims.

19      As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks

20  it to identify all persons with knowledge of certain facts even though it does not

21  know everyone who may possess such information, (*id.*, pp. 21 – 22), it is

22  incumbent upon MGA to provide the information that is within its custody,

23  possession or control.  In fact, MGA concedes that it will provide "whatever

24  information it has." (*Id.*, p. 22).

25          **e.     Compound Objection**

26      MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are

27  impermissibly compound.  (Opposition, pp. 22 – 23).  This contention is

28  unavailing.  The questions in each interrogatory refer to one common theme and a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 522

1   common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*

2   *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing

3   subparts directed at eliciting details concerning a 'common theme' should generally

4   be considered a single question"]).  Accordingly, the objection is overruled.

### f.    Duplicative Objection

6   MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are

7   duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.

8   23 – 24).  But MGA has failed to demonstrate that this is the case.  As an initial

9   matter, MGA does not explain why Supplemental Interrogatory No. 51 is

10  duplicative of other interrogatories.  Rather, it simply states that Mattel "does not

11  take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel

12  addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.

13  19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory

14  No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts

15  regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel

16  products it contends copied, infringed, or diluted MGA's products by SKU number,

17  as requested by Interrogatory 51."]).  Because it has not analyzed Interrogatory No.

18  51, MGA's objection to that interrogatory is overruled.

19  MGA's claim that Supplemental Interrogatory No. 52 is duplicative of

20  Interrogatory No. 45 is also unpersuasive.  Supplemental Interrogatory No. 52 seeks

21  MGA profit, costs and revenue associated with each trade dress MGA contends

22  Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas

23  Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and

24  to identify the profits, costs and revenue associated with each such product.

25  The questions are therefore not the same.[10]  Accordingly, the objections are

26

_____

27  [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be
    able to respond to the latest interrogatories by cutting and pasting its responses to the prior

28  interrogatories.  However, as discussed below, MGA alleges that responding to Supplemental
    Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are
    not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 523

1   overruled.

2            **g.**     **Undue Burden Objection**

3        MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4   unduly burdensome.

5        However, MGA has not provided any evidence in connection with its Motion

6   To Compel to support its claim of burden. (*See Jackson,* 173 F.R.D. at 528-9 ["The

7   party claiming that a discovery request is unduly burdensome must allege specific

8   facts which indicate the nature and extent of the burden, usually by affidavit or

9   other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10  are unduly burdensome when Mattel merely seeks information regarding the extent

11  of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12  products, Mattel has the right to discover the scope of the alleged claims.

13  Accordingly, the objections are overruled.

14           **h.**     **Privilege Objection**

15       Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16  that it asserted a privilege objection merely to "preserve [its] ability to protect,

17  privileged documents and information . . . . [and to make] clear that it was not

18  waiving the attorney-client privilege . . .." (Opposition, p. 25).   Since that is the

19  full extent of MGA's privilege objection, the Discovery Master agrees that

20  objection as so limited is valid.  Accordingly, the objection is sustained on that

21  limited ground.

22        **3.**     **Conclusion**

23       For all of the foregoing reasons, MGA must promptly provide full and

24  complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25  limited above.

26      **D.**     **Summary Of Ruling Regarding The Motion To Compel**

27       Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 524

1   request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2   granted.

3   **IV.   MATTEL'S *EX PARTE* APPLICATION**

4        Several days after Mattel filed its Motion to Compel on March 6, 2009,

5   Mattel filed its Application for issuance of an order to show cause regarding

6   contempt. The Application addresses Interrogatory Nos. 43 and 44 (the

7   "Interrogatories") and is based on the same facts summarized above with respect to

8   the Motion to Compel and Protective Order Motion. However, unlike the Motion

9   to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10   Master is not authorized to issue contempt sanctions. By order dated March 12,

11   2009, the Court referred the Application to the Discovery Master, who was

12   instructed to review it in the first instance and recommend a disposition to the

13   Court. (Order dated March 12, 2009, p. 1).

14        **A.   Basis For The Application**

15           **1.   Circumstances Warranting *Ex Parte* Relief.**

16        In the introductory section of its Application preceding the Memorandum of

17   Points and Authorities, Mattel sets forth the following grounds for *ex parte* relief:

18           [F]or two months, MGA failed and refused to produce Phase 2

19           discovery, including such discovery that was previously ordered.

20           MGA also has a history of flouting Court Orders, but remains

21           undeterred by prior warnings and prior awards of sanctions.

22           Absent prompt intervention by this Court, MGA will continue to

23           block even ordered Phase 2 discovery. Furthermore, MGA's

24           conduct is a direct challenge to the authority of the court and the

25           Discovery Master, and additional delay would inappropriately

26           reward MGA for its refusals to comply with the [prior discovery

27           master's February 15, 2008] Order.

28   (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 525

1        In its Reply, Mattel offers the following as a further justification for bringing

2    the matter on an *ex parte* basis:

3            MGA has repeatedly employed the procedural tactic of refusing

4            to comply with discovery requests and forcing Mattel to return to

5            court for multiple successive orders and sanctions compelling

6            discovery.  In so doing, MGA effectively halts the discovery

7            process and deprives Mattel of crucial information to which it is

8            entitled. … Requiring Mattel to repeat the process of filing a

9            regularly noticed motion would unduly reward MGA for its

10           refusal to comply with the [February 15, 2008] Order and

11           enhance MGA's ability to perpetually deprive Mattel of crucial

12           time in which to conduct discovery.

13   (Reply, pp. 3-4).

14           **2.     Circumstances Warranting Issuance Of An Order To Show**

15                 **Cause**

16       In its Application, Mattel argues that, although MGA has improperly refused

17   to respond to all of the discovery referenced in the Motion to Compel (including the

18   Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to

19   the Interrogatories, because MGA had already been ordered to provide responses to

20   those Interrogatories pursuant to the prior discovery master's February 15, 2008

21   Order.  Mattel therefore argues that MGA's failure to provide responses to the

22   Interrogatories should be singled out for special treatment as contempt of the Court.

23           **3.     Relief Sought**

24       MGA seeks issuance of an order to show cause that MGA is in contempt, a

25   finding of contempt, and the following monetary relief:

26       •  An award of coercive sanctions against MGA in the amount of $5,000

27           for each day that MGA fails to produce full and complete responses to

28           Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 526

1    event that MGA does not comply within five days of the Court's

2    Order, the amount of coercive sanctions should be increased to

3    $10,000 per day (with all such per diem fine amounts being paid to the

4    Court); and

5    • An award of monetary sanctions against MGA in the amount of

6    $7,000, which represents a portion of the costs incurred by Mattel in

7    bringing the Application.

8    (Application, pp. i - ii).

9    **B.    Discussion**

10    **1.    *Ex Parte* Relief Is Not Justified**

11    As MGA notes, the Court's standing order indicates that *ex parte*

12    applications are "solely for extraordinary relief." This directive was underscored

13    by the Court's Discovery Master Order, which requires that a party applying for *ex*

14    *parte* relief must show that "good cause" exists for hearing any dispute "on

15    shortened time" and that it will "be prejudiced absent prompt resolution" of the

16    issue. (Discovery Master Order, pp. 4 – 5).

17    This standard is not satisfied here. Mattel does not adequately demonstrate

18    that it will be prejudiced if the underlying motion is heard according to regularly

19    noticed motion procedures. The discovery cut-off is still eight months in the future

20    (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21    argues that it would be unfair to require Mattel to seek relief by means of a

22    regularly noticed motion, given the relevant history:

23    Mattel *already* followed this course of action and already

24    obtained an Order that MGA produce amended interrogatory

25    responses. MGA refuses to obey that [February 15, 2008] Order.

26    Requiring Mattel to repeat the process of filing a regularly

27    noticed motion would unduly reward MGA for its refusal to

28    comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1              ability to perpetually deprive Mattel of crucial time in which to

2              conduct discovery.

3  (Reply, p. 4, emphasis in original).

4       Mattel's frustration is understandable; Mattel has already been through this

5  process twice (counting the pending motion to compel) with respect to the identical

6  interrogatories which are the subject of the Application. However, Mattel's

7  assertion that it should be allowed to dispense with a noticed motion ignores one

8  important point: the Application seeks relief which both parties acknowledge is

9  entirely different in character than an award of ordinary monetary sanctions for

10  discovery abuses. Unlike its motions to compel, the Application seeks a finding

11  that MGA has deliberately disobeyed a Court order and should be punished by an

12  award of coercive sanctions until it complies with the order. This is the first time

13  Mattel has sought such relief, and MGA has never previously been provided the

14  opportunity to oppose the requested relief in connection with a regularly noticed

15  motion. Thus, while Mattel's above quoted argument might have some application

16  if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not

17  justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.

18       Moreover, the chronology of events tends to negate the assertion that Mattel

19  is suffering immediate and irreparable prejudice from the delay occasioned by

20  MGA's failure to respond to the Interrogatories. MGA has refused to respond to

21  the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,

22  2009. Nevertheless Mattel did not file its Application until two months later, after

23  MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel

24  MGA to respond to the outstanding trade dress discovery, including providing

25  responses to the Interrogatories. The timing of these events undermines Mattel's

26  argument that expedited relief is necessary.

27       In the absence of some exigency, the Discovery Master believes that the

28  severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNB)]

Exhibit
Page 528

1   the time and opportunity to present their arguments in the context of a regularly

2   noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3   *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4   regularly noticed motion and because the Discovery Master is not inclined to

5   recommend that the Court grant the relief Mattel seeks at this time, I address the

6   substantive issues raised by the Application below.

7           **2.      MGA's Alleged Disobedience Of The Prior Order**

8                   **a.      Legal Standard**

9          As the Ninth Circuit has observed:

10                 Courts are invested with inherent powers that are 'governed not

11                 by rule or statute but by the control necessarily vested in courts to

12                 manage their own affairs so as to achieve the orderly and

13                 expeditious disposition of cases.'

14   (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15   F.2d 363,368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16   with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17   *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18   Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19   discovery order as contempt.

20          The Ninth Circuit has further observed that "courts have strictly adhered to

21   the principle that the power to punish for contempt is limited to '(t)he least possible

22   power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23   Cir. 1980) (citations omitted)).

24          Mattel acknowledges that it must meet an exacting standard in order to

25   prevail on its Application.  Specifically, the party seeking imposition of civil

26   contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27   contemnors violated a *specific and definite* order of the court." (*United States v.*

28   *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit
Page 529

1   *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)).  Further, any doubts

2   as to whether the requirements for civil contempt have been met in a particular case

3   must be resolved in favor of the party accused of civil contempt.  (*In re Chief*

4   *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5        In accordance with this standard, contempt sanctions will not be imposed

6   unless the language of the order allegedly violated is clear and unambiguous.

7   (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8   1982) (affirming district court's denial of applications to hold defendants in

9   contempt for violating terms of consent judgment where, among other things,

10  certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11  *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12  and for sanctions where the discovery at issue was open to interpretation: "Any

13  ambiguities or uncertainties in the court order must be read in a light favorable to

14  the person charged with contempt. ... Contempt power should not be used where

15  there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16  power of the court to punish for contempt should be used with caution and

17  deliberation.")).

18                    **b.    Application To The Facts**

19        Mattel argues that MGA violated the February 15, 2008 Order, and that it

20  continued to do so for two months before the prior discovery master stayed MGA's

21  obligation to respond to the Interrogatories on April 22, 2008.  (Application, p. 13).

22  That assertion is not accurate.  In granting MGA's motion for clarification of the

23  February 15, 2008 Order, the prior discovery master in essence retroactively found

24  that MGA should not have been ordered to immediately provide supplemental

25  responses because the Interrogatories involved Phase 2 issues and were therefore

26  subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27  the February 15, 2008 Order.

28        When the stay was lifted, on January 6, 2009, the Court did not set a new

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 530

1   deadline for MGA to provide supplemental responses in compliance with the

2   February 15, 2008 Order, nor did Mattel request that either the Court or the current

3   Discovery Master do so.  However, one month after the stay was lifted, Mattel did

4   meet and confer with MGA in an attempt to obtain responses.  At that time, MGA

5   took the position that it would provide responses to the Interrogatories "not later

6   than 30 days after the Court decides the trade dress summary judgment motion

7   which Mattel has indicated it will be bringing."  (Ex. 16 to Watson Decl. in support

8   of Application).  Three weeks later, MGA filed the Protective Order Motion

9   seeking a stay of its obligation to respond to the Interrogatories.

10        As set forth above, the Discovery Master finds that, in pursuing this course of

11   conduct instead of responding to the Interrogatories and other discovery that is the

12   subject of Mattel's Motion to Compel, MGA acted without substantial justification

13   and therefore grants Mattel's Motion To Compel and also awards sanctions against

14   MGA.  The question raised by the Application is whether MGA should *also* be

15   ordered to appear and show cause why it should not be held in contempt and subject

16   to further sanctions for failing to comply with the February 15, 2008 Order.

17        Since Mattel, as the moving party, has the burden of demonstrating by clear

18   and convincing evidence that MGA has committed civil contempt and should be

19   punished, Mattel must, in the first instance, identify the existence of a "specific and

20   definite" provision of the February 15, 2008 Order which MGA has violated.

21   (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22        The Discovery Master's [February 15, 2008] Order directed

23        MGA to provide full, complete and updated responses to

24        Interrogatories Nos. 43 and 44 within eleven days.  MGA did not

25        comply with that Order and refused to do so for two months

26        before the Discovery Master stayed MGA's obligation to respond

27        while the Court's Phase 2 stay was in place.

28   (Application, p. 13).  However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 78
Page 531

1    responses specified in the February 15, 2008 Order cannot reasonably be viewed to

2    be a violation of that order during the period of February 15, 2008 to April 22, 2008

3    because the prior discovery master himself retracted the portion of his ruling

4    requiring MGA to comply in response to MGA's motion for clarification. In other

5    words, the prior discovery master found, in effect, that MGA had *properly* withheld

6    supplemental responses on the ground that the subject Interrogatories sought Phase

7    2 discovery, which had been stayed by the Court nearly two weeks *before* the prior

8    discovery master issued the February 15, 2008 Order. Given the prior discovery

9    master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can

10    hardly be deemed to have been in violation of the February 15, 2008 Order while

11    the Court's stay of Phase 2 discovery was in place. A party who believes a ruling is

12    in error has the right to seek clarification or reconsideration, and doing so is not

13    equivalent to willfully disobeying the court.

14       Mattel also argues that MGA "resumed" its violation of the February 15,

15    2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on

16    January 6, 2009. While the Discovery Master does not agree that any violation

17    resumed on January 6, 2009, as set forth above, I do agree that MGA should have

18    promptly complied with the February 15, 2008 Order once the stay was lifted by

19    serving supplemental responses within 11 days of the lifting of the stay. *Lucero v.*

20    *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all

21    objections to interrogatories served before a stay was issued by failing to respond

22    within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240

23    (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be

24    complied with promptly.'").

25       However, today's ruling that MGA should have promptly provided responses

26    to the Interrogatories upon the stay being lifted by the Court is not equivalent to a

27    finding that MGA deliberately violated a "specific and definite" provision in the

28    February 15, 2008 Order. That order arguably does not contemplate the situation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit
Page 532

1    which ensued after the order was issued, namely, the prior discovery master's

2    decision to suspend MGA's obligation to respond to the Interrogatories without

3    setting a new deadline to run from the lifting of the stay.

4        While it is reasonable to conclude, as the Discovery Master has done, that the

5    same 11-day deadline imposed by the February 15, 2008 Order would apply once

6    the stay was lifted, an inference, however reasonable, is not the same thing as an

7    express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8    (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9    proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10    within list of activities expressly forbidden by earlier protective order]; *Independent*

11    *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12    defendant's supposed "understanding," based on oral comments by the Court that

13    he was being ordered to request that search engines discontinue using infringing

14    phrase, was not the same as express provision of injunction and could not serve as

15    basis for civil contempt]). Further, as noted above, any doubts regarding

16    disobedience of a court order are to be resolved in favor of the party charged with

17    contempt. Accordingly, the Discovery Master declines, under the applicable case

18    law and on the record presented, to find that MGA deliberately disobeyed the

19    Court, thereby meriting sanctions for civil contempt. The Discovery Master also

20    declines to recommend that the Court issue the requested order to show cause.

21        However, as set forth in the Disposition section below, the Discovery

22    Master's ruling today *does* contain an express deadline by which MGA must

23    respond fully and without objection to the Interrogatories (as well as the other

24    discovery that is the subject of Mattel's Motion to Compel). If MGA fails to

25    comply with the express, definite deadline imposed by this Order, the Discovery

26    Master reserves the right to recommend that the Court impose appropriate sanctions

27    from the date of MGA's non-compliance should Mattel renew its request for an

28    order to show cause regarding contempt by filing a noticed motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 18
Page 533

## V.   **DISPOSITION**

A.    MGA's Protective Order Motion is **DENIED.**

B.    Mattel's Motion To Compel is **GRANTED**, except as limited above. MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10) days of this Order, subject to any applicable confidentiality designations available under the Protective Order. MGA's responses to Supplemental Interrogatories Nos. 51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

C.    Mattel's request for sanctions against MGA in connection with its Motion To Compel is **GRANTED**. MGA shall pay $4515 to Mattel within ten (10) days of this Order.

D.    MGA's request for sanctions in connection with Mattel's Motion To Compel is **DENIED**.

E.    Mattel's Application for issuance of an order to show cause regarding contempt is **DENIED,** without prejudice to any noticed motion for an order to show cause regarding contempt that Mattel may deem appropriate in the event that MGA fails to comply with any provision of the present Order.

Dated: April 14, 2009

By:   /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 18
Page 534