# EXHIBIT 19

DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. #180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: dtorres@omm.com

DALE M. CENDALI (admitted pro hac vice)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: dcendali@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
Email: pglaser@chrisglase.com

Attorneys for Plaintiff
MGA Entertainment, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware Corporation, and DOES 1-10, Defendants. | Case No. CV 04-09049 SGL (RNBx) <br><br> **MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |

1  association with the names, "Cloe," "Sasha," "Jade," "Yasmin," and any other

2  released, or yet to be released, BRATZ BABYZ character or product theme.

3      9.    "BRATZ BOYZ" means and refers to each male image, character,

4  logo, doll, toy, accessory, product, packaging or other thing or matter that is or has

5  ever been manufactured, marketed or sold by MGA, or others under license, as part

6  of a line of goods or merchandise commonly known as, or sold and marketed under

7  the "Bratz" trademark or trade dress and commonly labeled, called, referred to,

8  named or identified as "BRATZ BOYZ," and specifically including, without

9  limitation, the images characters, dolls, playsets and other products and toys called

10  or referred to as, or named or marketed in association with the names "Cameron,"

11  "Dylan," "Eitan," "Koby," "Cade," "Mikko," "Colin," "Deavon," "Lakin,"

12  "Alek," "Zack," "Bratz Boyz Formal Funk," "Boyz Funk Out!," "Boyz Sun-

13  Kissed Summer," "Bratz Boyz Twiinz," "Bratz Boyz Prince," "Bratz Boyz Sportz

14  and any other released, or yet to be released BRATZ BOYZ character or product

15  theme.

16      10.    "BRYANT" means Carter Bryant.

17      11.    "COMMUNICATION[S]" means any transmission of information

18  from one person or entity to another, including, without limitation, by personal

19  meeting, conversation, letter, telephone, facsimile or electronic mail. Each request

20  that encompasses information relating in any way to communications to, from or

21  within a business or corporate entity is hereby designated to mean, and should be

22  construed to include, all communications by and between representatives,

23  employees, agents or servants of the business or corporate entity.

24      12.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

25  Civil Procedure 34, and shall be construed in the broadest sense to mean any and

26  all writings, tangible things and property, of any kind, that are now or that have

27  been in YOUR actual or constructive possession, custody or control, including, but

28  not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

1    punched, copied, recorded, transcribed, graphic or photographic matter of any kind

2    or nature, in, through, or from which information may be embodied, translated,

3    conveyed or stored, whether an original, a draft or copy, however produced or

4    reproduced, whether sent or received or neither, including, but not limited to,

5    notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals,

6    reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets,

7    work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost

8    sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase

9    orders, telephone records, telegrams, telexes, literature, invoices, contracts,

10    purchase orders, estimates, recordings, transcriptions of recordings, records,

11    books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs,

12    video, audio and digital recordings, television commercials, story boards, website

13    or other spot advertisements, movies, movie trailers, prototypes, products, diaries,

14    calendars, charts, drawings, sketches, messages, photographs and data contained in

15    or accessible through any electronic data processing system, including, but not

16    limited to, computer databases, data sheets, data processing cards, computer files

17    and tapes, computer disks, CD-ROMs, computer meta-data, microfilm,

18    microfiche, electronic mail, website and web pages and transcriptions thereof and

19    all other memorializations of any conversations, meetings and conference, by

20    telephone or otherwise. The term DOCUMENT also means every copy of a

21    DOCUMENT, where such copy is not an identical duplicate of the original,

22    whether because of deletions, underlinings, showing of blind copies, initialing,

23    signatures, receipt stamps, comments, notations, differences in stationery or any

24    other difference or modification of any kind.

25         13.    "MARKET RESEARCH" means any type of research, study, survey

26    or analysis of consumers or potential consumers of a product or potential product

27    including, without limitation, focus groups, consumer surveys, market analyses,

28    behavioral analyses and consumer research.

1      14.    "MATTEL," "YOU" or "YOUR" means MATTEL, Inc. and any of its
2  past or present officers, directors, agents, employees, representatives, consultants,
3  attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and
4  successors-in-interest, entities and persons acting in joint venture or partnership
5  relationships with YOU and any others acting on YOUR behalf, pursuant to
6  YOUR authority or subject to YOUR control.

7      15.    "MGA" means MGA Entertainment, Inc. and any of its past or present
8  officers, directors, agents, employees, representatives, consultants, attorneys,
9  parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-
10  in-interest, entities and persons acting in joint venture or partnership relationships
11  with MGA and any others acting on MGA's behalf, pursuant to its authority or
12  subject to its control.

13      16.    "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

14      17.    "MGA PRODUCTS" means any and all products offered for sale by
15  MGA Entertainment, Inc. including, without limitation, "Bratz," "4-Ever Best
16  Friends," "Alien Racers," and "Miuchiz."

17      18.    "MY SCENE" means and refers to each image, character, logo, doll,
18  toy, accessory, product, packaging or other thing or matter that is or has ever been
19  manufactured, marketed or sold by Mattel, or others under license by Mattel, as part
20  of a line of goods or merchandise commonly known as, or sold and marketed under
21  the name, "My Scene."

22      19.    "COMPLAINT" means the complaint filed April 13, 2005 in *MGA
23  Entertainment, Inc. v. Mattel, Inc.*, CV 05-02727.

24      20.    "ANSWER" means the answer filed May 13, 2005 in *MGA
25  Entertainment, Inc. v. Mattel, Inc.*, CV 05-02727.

26      21.    "PERSON" or "PERSONS" means all natural persons, partnerships,
27  corporations, joint ventures and any kind of business, legal or public entity or
28  organization, as well as its, his or her agents, representatives, employees, officers

1 **REQUEST NO. 85:**

2 DOCUMENTS, including but not limited to organizational charts, sufficient

3 to identify (by name and job function) all former MATTEL personnel who were

4 ever a member of the primary team that worked on the design and development of

5 "MY SCENE" products.

6 **REQUEST NO. 86:**

7 DOCUMENTS sufficient to describe fully MATTEL's document retention

8 policies (including its policies with respect to the retention or destruction of

9 physical documents, physical objects, samples or specimens, electronic mail and

10 other electronic documents) in effect at any time since January 2001.

11 **REQUEST NO. 87:**

12 DOCUMENTS sufficient to describe fully MATTEL's actions to preserve

13 DOCUMENTS in response to the COMPLAINT and the document retention letter

14 from Diana M. Torres, Esq. to Robert Normile, Esq. dated April 16, 2005.

15 **REQUEST NO. 88:**

16 DOCUMENTS sufficient to identify all DOCUMENTS REFERRING OR

17 RELATING TO "MY SCENE," "BRATZ," MGA or LARIAN that have been

18 destroyed or discarded since April 16, 2005.

19 **REQUEST NO. 89:**

20 All DOCUMENTS REFERRING OR RELATING TO

21 COMMUNICATIONS with or among third parties concerning this litigation, the

22 allegations in the COMPLAINT, Mattel's responses to or views on the allegations

23 in the COMPLAINT or any alleged improper conduct by MATTEL.

24 **REQUEST NO. 90:**

25 All DOCUMENTS REFERRING OR RELATING TO the commercial

26 success or recognition of "MY SCENE" including, without limitation, MARKET

27 RESEARCH.

28

- 25 -                MGA'S FIRST SET OF REQUESTS FOR THE
                     PRODUCTION OF DOCUMENTS AND THINGS

Page 539

**REQUEST NO. 111:**

All COMMUNICATIONS between YOU and any supplier REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates the appearance of "BRATZ."

**REQUEST NO. 112:**

All COMMUNICATIONS between YOU and any other third party REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates the appearance of "BRATZ".

**REQUEST NO. 113:**

Documents sufficient to identify those persons, by name and title, for the time period from October 1998 through the end of December 2000, associated with the originating telephone numbers contained in the documents produced by YOU in *Mattel v. Bryant,* now part of consolidated Case No. CV 04-09049 SGL (RNBx), with Bates numbers M0001825-M0012534.

**REQUEST NO. 114:**

All DOCUMENTS tending to support or refute any of the denials, allegations or statements in YOUR ANSWER, not produced in response to another Request.

**REQUEST NO. 115:**

All DOCUMENTS tending to support or refute YOUR affirmative defenses to the COMPLAINT, not produced in response to another Request.


Dated: November 22, 2006          O'MELVENY & MYERS LLP


                                  James P. Jenal
                                  Attorneys for MGA Entertainment, Inc.


- 30 -          MGA'S FIRST SET OF REQUESTS FOR THE
                PRODUCTION OF DOCUMENTS AND THINGS

Exhibit 19

Page 540

**PROOF OF SERVICE**

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On November 22, 2006, I served the within document(s):

**MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

☒ by causing to be personally served the document(s) listed above to the person(s) listed below.

John Quinn, Esq.
Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East,
Fifth Floor
Los Angeles, CA 90067

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on November 22, 2006, at Los Angeles, California.

_Karen A. Nakatsu_
Karen A. Nakatsu

LA2:817525.1

Exhibit 19
Page 541

# EXHIBIT 20

1

Hon. Edward A. Infante (Ret.)
2    JAMS
Two Embarcadero Center
3    Suite 1500
San Francisco, California 94111
4    Telephone:    (415) 774-2611
Facsimile:    (415) 982-5287
5

6

7

8

UNITED STATES DISTRICT COURT
9

CENTRAL DISTRICT OF CALIFORNIA
10

EASTERN DIVISION
11

12

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN GLASER FINK JACOBS WEIL & SHAPIRO LLP** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

13

14

15

16

17

18

19

20

21

22

23

## I. INTRODUCTION
24

On February 29, 2008, Mattel, Inc. ("Mattel") submitted a Motion to Compel Deposition
25
and Production of Documents of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro ("Christensen
26
Glaser").  Specifically, Mattel seeks an order compelling Christensen Glaser to appear for
27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1  deposition on Topic Nos. 1-3, 5, and 7-13 and to produce documents responsive to Request for

2  Production Nos. 1-6, 8, and 10-22 pursuant to a subpoena served January 18, 2008. On March 21,

3  2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

4  Mexico S.R.L. de C.V. (collectively "MGA") and Christensen Glaser submitted separate

5  oppositions. On March 28, 2008, the parties submitted a joint report in which they advised the

6  court that despite further meet and confer efforts, the parties were unable to resolve or narrow the

7  instant motion. On March 31, 2008, Mattel submitted a reply. Pursuant to Paragraph 5 of the

8  Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it

9  appropriate to take the motion under submission for decision without oral argument.

10                                II. BACKGROUND

11         Christensen Glaser has served as legal counsel to MGA and Isaac Larian in connection

12  with this action and a variety of other matters since 1999. Gizer Decl.¶2. Christensen Glaser was

13  trial counsel of record for MGA and Isaac Larian in this very action from the filing of the case in

14  April 2004 until October 2007. Id. Although Christensen Glaser is no longer trial counsel of

15  record, the firm continues to provide legal advice to MGA and Isaac Larian in connection with

16  this action and still represents them in other matters. Id. Christensen Glaser also represents

17  Farhad Larian in connection with this action. Christensen Glaser Opposition at p. 1.

18         On January 7, 2008, the district court granted Mattel leave to take Christensen Glaser's

19  deposition, along with approximately forty-five other individuals and entities. The district court

20  held that Mattel had "shown good cause to grant additional discovery given the complexity of the

21  case, the number of parties, recent developments related to the substitution of counsel, the

22  concerns regarding retention and spoliation of evidence, and the delay in receiving discovery

23  caused by numerous discovery disputes and a Court imposed stay requested by MGA upon

24  substitution of counsel." Albán Decl., Ex. 12.

25         Mattel served a subpoena on Christensen Glaser on January 18, 2008. The subpoena

26  contains twenty-two document requests and seeks, *inter alia*, information related to the Carter

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

Exhibit 2U
Page 543

1  Bryant-MGA Agreement, the origination of Bratz, MGA's document preservation efforts, fee and

2  indemnity agreements entered into by MGA, and the documents that Farhad Larian's former

3  counsel showed to Mattel. The subpoena contains fourteen deposition topics on the same subject

4  matters as the document requests. On January 28, 2008, Christensen Glaser served objections to

5  Mattel's subpoena.

6      On January 28, 2008, Mattel filed an *ex parte* application with the district court requesting

7  leave to take third party depositions, including Christensen Glaser's deposition, after the discovery

8  cut-off. During the hearing conducted on February 4, 2008, Christensen Glaser requested that the

9  Court clarify that the January 7, 2008 Order granted Mattel leave to depose Christensen Glaser on

10  only one issue. The district court responded as follows:

11      That is not the case, and the request is DENIED. Mattel has been granted relief
       from the numerical limitations that previously restricted its ability to depose those
12      individuals and entities addressed by the Court's January 7, 2008, Order,
       including its ability to depose Christensen, Glaser. Unless otherwise restricted by
13      the Discovery Master upon proper presentation of the issue to him, Mattel may
       depose Christensen, Glaser on any relevant, non-privileged matter.

14

15  March Decl., Ex. A.

16      Mattel contends that the deposition topics and document requests in the subpoena are all

17  relevant to central issues in the case. Mattel's motion, however, focuses on three general issues,

18  without reference to specific topics or document requests. First, Victoria O'Connor testified that

19  Isaac Larian ("Larian") instructed her to redact a Mattel facsimile identifier on the Bratz

20  agreement between MGA and Bryant (the "Agreement") and to send the Agreement to Patricia

21  Glaser of Christensen Glaser. Ms. O'Connor testified that she followed Larian's instructions and

22  sent the Agreement. Larian denies ever giving that instruction to Ms. O'Connor. Mattel seeks

23  documents and deposition testimony to explore Christensen Glaser's receipt of that Agreement,

24  which Mattel contends is relevant to show spoliation of evidence.

25      Second, Mattel seeks information about Farhad Larian, whom Christensen Glaser

26  represents in this action. According to Mattel, Farhad Larian admitted in late November 2005,

27

28

1    while he was on MGA's payroll as a consultant and while Christensen Glaser represented MGA,

2    he destroyed evidence directly relevant to this action with the express intent of keeping such

3    evidence from Mattel.

4        Further, Mattel emphasizes that Christensen Glaser threatened to disqualify Mattel's

5    counsel based on counsel's purportedly improper and unethical contact with Farhad Larian and his

6    counsel in connection with Mattel's review of documents in Farhad Larian's possession in the fall

7    of 2005. Farhad Larian destroyed most of the documents Mattel reviewed. Mattel contends that

8    information in Christensen Glaser's possession is relevant to Bratz, Farhad Larian's alleged

9    spoliation of evidence, and Mattel's defense to Christensen Glaser's disqualification threat.

10        Third, Mattel seeks information from Christensen Glaser about payments from MGA to

11    Bryant and other witnesses in this action. Mattel contends that evidence of payments is relevant

12    to bias and credibility of the witnesses.

13        Christensen Glaser contends that Mattel's subpoena does not satisfy the elements set forth

14    in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), which limits the depositions

15    of opposing counsel. Rather, Christensen Glaser contends that all of the documents and

16    information requested by the subpoena are either privileged or available from another source, and

17    are not crucial to Mattel's preparation of its case.

18        MGA also opposes Mattel's motion, contending that the subpoena is overly broad, invades

19    privileged matters, unnecessarily disrupts the adversarial process, and unreasonably burdens and

20    harasses MGA and its counsel. Moreover, MGA contends that Mattel fails to make the required

21    showing that there is no other means by which Mattel can obtain the information it seeks, or that

22    the information it seeks is crucial (or even necessary) to its case, as required under Shelton, supra.

23    MGA also contends that the information sought is duplicative and cumulative in view of prior

24    discovery Mattel has already sought and received in this case.

25    //

26    //

27

28

1  ### III. STANDARDS

2      In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is

3  relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). All discovery, however, is

4  subject to the limitations imposed by Rule 26(b)(2)(C), Fed.R.Civ.P., which provides that the

5  court must limit the frequency or extent of discovery otherwise allowed by the Federal Rules of

6  Civil Procedure or by local rule if it determines that: "(i) the discovery sought is unreasonably

7  cumulative or duplicative, or can be obtained from some other source that is more convenient,

8  less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to

9  obtain the information by discovery in the action; or (iii) the burden or expense of the proposed

10  discovery outweighs its likely benefit, considering the needs of the case, the amount in

11  controversy, the parties' resources, the importance of the issues at stake in the action, and the

12  importance of the discovery in resolving the issues."

13      Fed.R.Civ.P. 30(a) provides that depositions may be taken of "any person." There is no

14  express prohibition against deposing opposing counsel. See Shelton, 805 F.2d at 1327. Courts,

15  however, have cautioned that depositions of opposing counsel should be allowed only in limited

16  circumstances. In Shelton, the Eighth Circuit Court of Appeals explained the judicial attitude

17  toward such depositions as follows:

18      We do not hold that opposing trial counsel is absolutely immune from being
    deposed. We recognize that circumstances may arise in which the court should

19      order the taking of opposing counsel's deposition. But those circumstances
    should be limited to where the party seeking to take the deposition has shown that

20      (1) no other means exist to obtain the information than to depose opposing
    counsel, see e.g., Fireman's Fund Ins. Co. v. Superior Court, 72 Cal.App.3d 786,

21      140 Cal. Rptr. 677 (1977); (2) the information sought is relevant and
    nonprivileged; and (3) the information is crucial to the preparation of the case.

22  Shelton, 805 F.2d at 1327.[1]

23

24  ---
[1]  In its reply, Mattel contends that Shelton is not the law of this circuit, and asserts that this court should instead

25  follow the Second Circuit's reasoning in In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003).
In Friedman, the court held that the following factors should be considered when deciding whether the deposition of a

26  lawyer should take place:

27                                        (continued...)

28

1                              IV. DISCUSSION

2   A. Information re Carter Bryant's Agreement with MGA

3          The information Mattel seeks regarding the Agreement between MGA and Bryant is

4   relevant, and indeed crucial, to the claims and defenses in the case.  The Agreement is at the heart

5   of this case and is the very document by which Bryant purportedly assigned Bratz to MGA.  The

6   date and circumstances under which the Agreement was transmitted to Christensen Glaser are

7   relevant because they might disclose whether or not (a) Bryant and MGA finalized the Agreement

8   while Bryant still worked for Mattel and (b) MGA believed in good faith that Bryant had the

9   rights to Bratz -- an affirmative defense MGA has raised.

10         Further, the information Mattel seeks is relevant and crucial to Mattel's counterclaims,

11  which include a RICO claim that is predicated, in part, upon an allegation that defendants altered

12  Bryant's Agreement to conceal evidence that Bryant faxed the Agreement from the Barbie

13  Collectibles department of Mattel, using a fax machine owned by Mattel and while Bryant was

14  employed by Mattel.  The information Mattel seeks is also relevant and crucial to Mattel's

15  spoliation claim against MGA.[2]

16

17

18  (...continued)
        the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery
19      is sought and in relation to the pending litigation, the risk of encountering privilege and work-
        product issues, and the extent of discovery already conducted.... Under this approach, the fact that
20      the proposed deponent is a lawyer does not automatically insulate him or her from a deposition
        nor automatically require prior resort to alternative discovery devices, but it is a circumstance to
21      be considered.

22  Friedman, 350 F.3d at 72; see also Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007) (finding
    Second Circuit's reasoning in Friedman to be more persuasive than Shelton).

23
          The Ninth Circuit has not adopted Shelton, supra.  However, Shelton is generally regarded as the leading
24  case on deposing opposing counsel.  In any event, Rule 26(b)(2)(C), Fed.R.Civ.P., ultimately dictates the appropriate
    limits of discovery.

25
          [2] Arguably, Ms. O'Connor redacted the Agreement at a time when MGA was not under any duty to preserve
26  evidence.  Whether Mattel will ultimately prevail on its spoliation claim, however, is not the test for determining
    whether information is discoverable under Rule 26, Fed.R.Civ.P.

27

28
    Bryant v. Mattel, Inc.,                                                                          6
    CV-04-09049 SGL (RNBx)                                                               Exhibit 20
                                                                                        Page 547

1       Ms. O'Connor and Larian testified that Christensen Glaser received a version of the

2    Agreement.  Only Christensen Glaser can verify the condition of the Agreement Ms. O'Connor

3    faxed to its office.  Furthermore, MGA has failed to establish that the Agreement Ms. O'Connor

4    faxed to Christensen Glaser is privileged.  There is no evidence that the Agreement itself – as

5    compared to any communication that might have accompanied the Agreement – is privileged.

6       MGA next contends that "merely disclosing the timing and other circumstances

7    surrounding MGA's transmittal of that contract to Christensen Glaser would divulge details about

8    a request by MGA for legal advice from its counsel, and would likely reveal legal strategies

9    surrounding one or more legal matters."  MGA's Opposition at p.13.  Mattel, however, represents

10    that it is not seeking privileged information from Christensen Glaser, but rather non-privileged

11    information regarding the date, time and manner of the Agreement's transmission, as well as the

12    form in which the Agreement was transmitted.  In view of Mattel's representation regarding the

13    limited nature of its inquiry, MGA's concerns regarding potential privileged information are

14    unfounded, and in any event, premature until Mattel poses a specific question to Christensen

15    Glaser that calls for the disclosure of privileged information.  If and when that occurs, MGA's

16    claims of privilege can be addressed on a question-by-question basis.

17       Therefore, Mattel's motion is granted to the extent Mattel seeks production of the

18    Agreement Ms. O'Connor faxed to Christensen Glaser.  Mattel's motion is also granted to the

19    extent Mattel seeks testimony regarding the date, time and manner of the Agreement's

20    transmission and the condition of the Agreement when it arrived at Christensen Glaser's office.

21    The information Mattel seeks is relevant and crucial to both Phase 1 and Phase 2 issues, and

22    accordingly Christensen Glaser's deposition should proceed without delay.

23       To the extent Mattel's subpoena seeks documents and testimony beyond the Agreement

24    itself and the date, time and manner of the Agreement's transmission and the condition of the

25    Agreement when it arrived at Christensen Glaser's office, Mattel's subpoena exceeds the bounds

26    of relevant discovery under Rule 26(b)(1), Fed.R.Civ.P., and intrudes, without justification, upon

27

28

1  MGA's attorney-client relationship and privileged communications with Christensen Glaser,

2  taking into consideration all of the factors in Rule 26(b)(2)(C), Fed.R.Civ.P. Mattel has had

3  ample opportunity to take discovery regarding Bryant's Agreement with MGA from multiple

4  sources. Other than the limited discovery of Christensen Glaser permitted by this Order, Mattel

5  has not shown that Christensen Glaser possesses non-privileged information beyond that which it

6  has already sought and obtained. The requested discovery is also cumulative and unduly

7  burdensome.

8  B. Information re Farhad Larian's Alleged Spoliation and Mattel's Threatened Disqualification

9       The information Mattel seeks regarding Farhad Larian's alleged destruction of evidence is

10  relevant and crucial to Mattel's allegations of spoliation. Farhad Larian has testified that he

11  destroyed documents and information related to Bratz with the express intent of keeping them

12  from Mattel. The documents Farhad Larian destroyed included: (1) MGA Bratz-related emails

13  from the 2000 and 2001 time period; (2) financial forecasts and shipping spreadsheets that

14  included Bratz; (3) signed and draft declarations of persons knowledgeable about Bratz during the

15  2000 time period; and (4) information from the Larian v. Larian matter.

16       Christensen Glaser was MGA's counsel and was involved in MGA's evidence preservation

17  efforts. Further, Christensen Glaser has represented Farhad Larian with respect to the instant

18  lawsuit. Given Christensen Glaser's involvement with MGA's evidence preservation efforts and

19  Christensen Glaser's representation of Farhad Larian, it is reasonable to infer that Christensen

20  Glaser possesses information potentially relevant to Mattel's allegations regarding spoliation of

21  evidence.[3]

22       Furthermore, the information Mattel is seeking about the documents Farhad Larian has

23  admitted he destroyed and regarding the factual bases for MGA's threatened disqualification of

24  Mattel's counsel appear to be uniquely within Christensen Glaser's possession. Mattel has a list of

25  _____

26       [3] In its opposition papers, Christensen Glaser neither admits nor denies involvement with or knowledge of
MGA's efforts, if any, to preserve potential evidence in Farhad Larian's possession.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

Exhibit 20
Page 549

1    the documents it inspected at the offices of Farhad Larian's attorneys in November 2005, but not

2    the documents themselves.  Farhad Larian no longer has the documents, and MGA has not

3    produced copies of those documents to date.

4         MGA and Christensen Glaser have asserted valid concerns regarding the potential

5    intrusion upon privileged information and work product.  These concerns do not automatically

6    insulate Christensen Glaser from Mattel's subpoena, particularly because of the gravity of the

7    spoliation allegations and the lack of alternative sources for the documents Farhad Larian has

8    admitted he destroyed.  Further, the privilege issues cannot be addressed in a vacuum but must

9    await the outcome of Christensen Glaser's document production and deposition.

10        However, to the extent Mattel's subpoena seeks documents and testimony beyond

11   document preservation efforts relating to Farhad Larian and Mattel's threatened disqualification,

12   the subpoena exceeds the bounds of relevant discovery under Rule 26(b)(1), Fed.R.Civ.P., and

13   intrudes, without justification, upon MGA's attorney-client relationship with Christensen Glaser

14   and privileged communications, taking into consideration all of the factors in Rule 26(b)(2)(C),

15   Fed.R.Civ.P.

16   C. Payments to Witnesses

17        Lastly, Mattel seeks information regarding payments made to witnesses to this lawsuit.

18   The information sought is clearly relevant to credibility and bias, but not crucial to Mattel's

19   preparation of its case.  Furthermore, Mattel has had ample opportunity to pursue such discovery,

20   and indeed has obtained such discovery from many other sources.  The requested information is

21   also duplicative and cumulative of other discovery Mattel has sought and received, and unduly

22   burdensome, taking into consideration all of the factors set forth in Rule 26(b)(2)(C)(iii),

23   Fed.R.Civ.P.

24                                        V. CONCLUSION

25        For the reasons set forth above, Mattel's motion to compel the deposition of Christensen

26   Glaser and for documents is granted in part and denied in part as follows:

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

9

Exhibit 20
Page 550

1.  No later than May 15, 2008, Christensen Glaser shall produce all non-privileged documents that are responsive to the following requests: Nos. 1 (limited to the Agreement that Ms. O'Connor testified she sent to Christensen Glaser), 17, 21(limited to documents sought by or the subject of Request Nos. 1(as limited above) and 17) and 22 (limited to documents sought by or the subject of Request No. 17). Documents withheld on the basis of privilege must be identified on a privilege log, which shall be produced to Mattel no later than May 15, 2008.

2.  Christensen Glaser shall appear for deposition and testify regarding Topic Nos. 8 and 13. Topic No. 13 is limited to the Agreement Ms. O'Connor testified she sent to Christensen Glaser, the date, time and manner of the Agreement's transmission, and the condition of the Agreement when it arrived at Christensen Glaser's office. The deposition shall proceed at a place and time mutually convenient to all parties and witness(es), and shall be completed no later than May 20, 2008.

3.  All claims of privilege are preserved. Nothing in this Order is intended to authorize or preclude any party from asserting claims of privilege with respect to specific documents and/or deposition questions, if appropriate.

4.  Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., Mattel's motion is denied with respect to all topics and document requests set forth in the subpoena that are not specifically identified in paragraphs 1 and 2 above.

5.  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 1, 2008

_____/S/_____

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

Exhibit _____
Page 551

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 1, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PARTMATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN GLASER FINK JACOBS WEIL & SHAPIRO LLP in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Patricia L. Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgenthaler@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 1, 2008, at San Francisco, California.

_____
Anthony Sales

Exhibit 20
Page 552

# EXHIBIT 21

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
12              Plaintiff,               Case Nos. CV 04-09059 & CV 05-2727

13        vs.

14  MATTEL, INC., a Delaware             [PROPOSED] ORDER GRANTING
    corporation,                         MATTEL, INC.'S MOTION OBJECTING
15                                       TO PORTIONS OF DISCOVERY
                Defendant.               MASTER'S DECEMBER 31, 2007 ORDER
16                                       REGARDING HARD DRIVES

17  AND CONSOLIDATED ACTIONS            **Phase 1**
                                         Discovery Cut-Off:   January 28, 2008
18                                       Pre-Trial Conference: May 5, 2008
                                         Trial Date:          May 27, 2008
19

20

21

22

23

24

25

26

27

28

07209/2414052.3

1                                      [PROPOSED] ORDER

2

3              Having considered Mattel, Inc.'s Motion Objecting To Portions Of

4  Discovery Master's December 31, 2007 Order Regarding Hard Drives and all

5  supporting papers, all papers submitted in opposition to the Motion, and having

6  considered the arguments of counsel, the Court finds good cause to grant the Motion

7  and to overrule in part the Discovery Master's Order Granting in Part and Denying

8  in Part Mattel's Motion to Compel Production of Documents by Isaac Larian;

9  Denying Request for Sanctions, dated December 31, 2007, as to Request Nos. 222

10 and 225:

11             IT IS HEREBY ORDERED THAT the Discovery Master's Order is

12 overruled as to Request Nos. 222 and 225. Destruction of electronic evidence on

13 hard drives is relevant to Mattel's claims, including specific predicate acts alleged in

14 Mattel's RICO counterclaims. The Discovery Master's Order denying such evidence

15 to Mattel was clearly erroneous and contrary to law.

16             IT IS FURTHER ORDERED THAT Isaac Larian shall make available

17 within ten (10) calendar days the following hard drives that are in his possession,

18 custody, or control for inspection and copying:

19     1.    All hard drives from, or that were at any time connected to, any

20            computer used by either Isaac Larian or Carter Bryant at any time from

21            1999 to the present and that contain or previously contained any digital

22            information referring or relating to Bratz, Angel, MGA or Bryant (as

23            those terms are defined in Mattel's Requests).

24 A consultant of Mattel's choosing, who Mattel will identify before the inspection,

25 shall be allowed to inspect each of the hard drives produced. Mattel's consultant

26 shall be allowed to make a forensically sound image of each hard drive produced.

27 The inspection may take place at a location of Larian's choosing in this District, so

28 long as the location has the minimum requirements necessary to inspect and create a

1  forensically sound image of the produced hard drives. A consultant of Larian's

2  choosing, who Larian will identify before the inspection, shall be allowed to observe

3  the inspection and imaging of the hard drives.

4          IT IS FURTHER ORDERED THAT Mattel's consultant shall have the

5  right to inspect any and all information on said hard drives to determine:

6          (a)    whether, when and by whom any information was deleted,

7  destroyed, written over, lost, exported, moved, spoliated or otherwise rendered

8  inaccessible or unreadable;

9          (b)    whether, when and by whom any attempts were made to delete,

10  destroy, write over, export, move, spoliate or otherwise render inaccessible or

11  unreadable any information on those hard drives;

12          (c)    the current or past presence or use of any hardware or software

13  tool to accomplish any of the actions identified above;

14          (d)    whether any information deleted, destroyed, written over, lost,

15  exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be

16  recovered; and

17          (e)    to recover any such information, in whole or in part.

18

19  DATED:      2 /27          , 2008          _____

20                                             Hon. Stephen G. Larson
                                               United States District Judge

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE HARD DRIVES

Exhibit 21
P. 23

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On July 15, 2009, I served true copies of the following document(s) described as **DECLARATION OF MARSHALL M. SEARCY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS IN RESPONSE TO MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGAE DE MEXICO, S.R.L. DE C.V. (PHASE 2)** on the parties in this action as follows:

Thomas J. Nolan, Esq.
Jason D. Russell, Esq.
Skadden Arps Slate Meagher & Flom
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
thomas.nolan@skadden.com
jason.russell@skadden.com

Melinda Haag
Annette L. Hurst
Warrington S. Parker III
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
mhaag@orrick.com
ahurst@orrick.com
wparker@orrick.com

William A. Molinski
Orrick, Herrington & Sutcliffe, LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
wmolinski@orrick.com

Mark E. Overland, Esq.
Alexand H. Cote, Esq.
Overland Borenstein Scheper & Kim LLP
601 West Fifth Street, 125th Floor
Los Angeles, CA 90071
moverland@scheperkim.com
acote@scheperkim.com

Todd E. Gordinier
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626
todd.gordinier@bingham.com

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from cyrusnaim@quinnemanuel.com on July 15, 2009, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 15, 2009, at Los Angeles, California.

/s/ Cyrus Naim
Cyrus Naim

07975/3005518.1