1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:   (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16 | Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 17 | | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND |
| 18 | AND CONSOLIDATED CASES | MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN |
| 19 | | |
| 20 | | [Declarations of Scott B. Kidman and Cyrus S. Naim and Notice of Lodging filed concurrently] |
| 21 | | |
| 22 | | Hearing Date:  TBA |
| 23 | | Time:             TBA<br>Place:           Arent Fox, LLP |
| 24 | | |
| 25 | | Phase 2<br>Disc. Cut-off:      December 11, 2009 |
| 26 | | Pre-trial Conf.:    March 1, 2010<br>Trial Date:         March 23, 2010 |
| 27 | | |
| 28 | | |

07209/2975169.2

MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR ADDITIONAL TIME TO CONDUCT THE
DEPOSITION OF ISAAC LARIAN

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2              Please take notice that, at a hearing before Discovery Master Robert C.

3    O'Brien that will occur on a date and at a time and location to be determined by the

4    Discovery Master, Mattel, Inc. ("Mattel") will, and hereby does, move for an order

5    granting Mattel an additional 21 hours to depose Isaac Larian.

6              This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26

7    and 30(d)(1) on the grounds that, since Larian's prior deposition in March 2008,

8    Mattel has filed a Third Amended Answer and Counterclaims (the "TAAC") setting

9    forth new claims and allegations, including against Larian personally, which by

10   MGA's and Larian's own account has "radically" expanded the scope of this case.  In

11   addition, since the Court lifted the Phase 2 discovery stay in January 2009, MGA

12   and Larian have produced tens of thousands of pages of documents, including

13   pursuant to the Orders of the Discovery Master's, that Mattel sought long before

14   Larian's March 2008 deposition and about which, through no fault of its own, Mattel

15   has had no opportunity to examine Larian.  Furthermore, due to the scope and

16   complexity of the issues even prior to the filing of the TAAC, as well as Larian's

17   obstructionist conduct at his prior deposition, Mattel did not have adequate time to

18   fairly examine Larian regarding its Phase 2 claims, let alone MGA's purported

19   "billion" dollar claims for unfair competition.

20             This Motion is based on this Notice of Motion and Motion, the

21   accompanying Memorandum of Points and Authorities, the Declarations of Scott B.

22   Kidman and Cyrus S. Naim, and the Notice of Lodging filed concurrently herewith,

23   the records and files of this Court, and all other matters of which the Court may take

24   judicial notice, and such further argument and evidence which may be presented at

25   or before the hearing.

26

27

28

-2-

1

## Certificate Of Compliance

2         Mattel and MGA met and conferred regarding continuing the

3   deposition of Isaac Larian on February 6, 2009 and at times thereafter, but were

4   unable to reach agreement regarding the issues raised in this motion.

5

6   DATED:  July 17, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8                  By /s/ Michael T. Zeller

9                     Michael T. Zeller
                  Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

4
MEMORANDUM OF POINTS AND AUTHORITIES............................................1

5
PRELIMINARY STATEMENT ....................................................................1

6
FACTUAL BACKGROUND..........................................................................3

7
ARGUMENT...............................................................................................13

8
9
10
I.     MATTEL IS ENTITLED TO ADDITIONAL TIME TO FAIRLY EXAMINE LARIAN REGARDING THE CLAIMS AND ALLEGATIONS THAT HAVE ARISEN SINCE THE PHASE 1 TRIAL ....................................................................................13

11
     A.    Mattel Is Entitled To Additional Time To Examine Larian Regarding The Newly Alleged Financial Transactions.......................13

12
     B.    Mattel Is Entitled To Additional Time To Examine Larian Regarding The New Perjury Allegations................................................19

13
14
     C.    Mattel Is Entitled To Additional Time To Examine Larian Regarding Mattel's Criminal Copyright Infringement Allegations ......19

15
16
II.    MATTEL IS ENTITLED TO ADDITIONAL TIME TO FAIRLY EXAMINE LARIAN REGARDING ALL OTHER PHASE 2 ISSUES .......20

17
     A.    Mattel Is Entitled To Additional Time To Examine Larian Regarding Mattel's Other Phase 2 Claims ...........................................20

18
          1.    The scope of Mattel's claims warrants additional time ..............20

19
20
          2.    MGA's and Larian's belated production of documents warrants additional time ............................................................23

21
          3.    Larian's obstruction warrants additional time............................24

22
     B.    Mattel Is Entitled To Additional Time To Examine Larian Regarding MGA's Phase 2 Unfair Competition Claims.......................25

23
CONCLUSION............................................................................................26

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### **Cases**

4

Benson v. Giordano,
  2007 WL 2355783 (D.S.D. Aug. 17, 2007) ........................................................ 13

5

Calderon v. Symeon,
  2007 WL 735773 (D. Conn. Feb. 2, 2007).......................................................... 24

6

Dunkin' Donuts Incorporated v. Mary's Donuts, Inc.,
  206 F.R.D. 518 (S.D. Fla. 2002) ................................................................... 13, 21

7

Greenly v. Lee,
  2007 WL 2221444 (E.D. Cal. Jul. 31, 2007) ..................................................... 23

8

Grill v. Costco Wholesale Corp.,
  2004 WL 2314639 (W.D. Wash. Oct. 7, 2004)................................................... 24

9

Keithly v. Homestore.com, Inc.,
  2006 WL 1646119 (N.D. Cal. Jun. 12, 2006) .................................................... 13

10

Rahman v. The Mith & Wollensky Restaurant Group,
  2009 WL 72441 (S.D.N.Y. Jan. 7, 2009) ........................................................... 15

11

Securities and Exchange Comm. v. Acqua Vie Beverage Corp.,
  2006 WL 2457525 (D. Idaho Aug. 23, 2006) .................................................... 15

12

13

14

15

### **Statute**

16

Fed. R. Civ. P. 30(d), 2000 Amendment ........................................................... 21, 24

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel brings this motion to obtain additional time to depose Isaac Larian. Since Larian's deposition in March 2008, Mattel has filed a Third Amended Answer and Counterclaims (the "TAAC") adding claims and allegations, including against Larian personally. These new claims and allegations have, as the Court described it, "dramatically" expanded the scope of the case. Larian is at the center of each and every one of these new claims and allegations. For example, the evidence shows that Larian orchestrated and funded the creation of Omni 808 and its acquisition of nearly $300 million of MGA debt from Wachovia. He also created and operates the IGWT entities, which purchased tens of millions of dollars in Bratz inventory for pennies on the dollar. Larian further testified during the Phase 1 trial that Carter Bryant told him, and that Larian believed, that Bryant had not created Bratz while employed by Mattel, which is at the heart of Mattel's newly alleged RICO predicate acts of perjury and obstruction of justice. Not only are such matters at issue in the new claims and allegations of the TAAC, but many of these events involving Larian occurred only after he was last deposed. MGA and Larian vigorously opposed Mattel's motion for leave to the TAAC on the ground that these new claims and allegations would "radically expand the scope of the litigation." Now that they are part of the case, Mattel is entitled to additional time to fairly examine Larian about them.

Mattel is also entitled to additional time to fairly examine Larian about the many other claims and allegations in Phase 2 of this case. Even before the addition of the new claims and allegations in the TAAC, the Court described the Phase 2 case as "exceedingly complicated." Indeed, the Phase 2 claims in Mattel's Second Amended Answer and Counterclaims (the "SAAC") included no less than nine claims against MGA and Larian personally, including claims for RICO, conspiracy to violate RICO, theft of trade secrets, conversion and unfair competition. The

1  RICO claims alone alleged a widespread, ongoing criminal enterprise to steal
2  Mattel's confidential and proprietary information that spanned a ten year period of
3  time and that was carried out through, among other things, more than 200 separate
4  predicate acts of mail fraud and wire fraud.  Given the complexity and scope of the
5  issues to be covered, the five hours the former Discovery Master allotted Mattel to
6  examine Larian about all of Mattel's Phase 1 claims against Larian and the other
7  MGA parties as well as all Phase 2 claims turned out to be woefully inadequate.
8  Larian's obstructionist conduct at the deposition—which was clearly designed to run
9  out the clock on Mattel—only made matters worse.  Mattel had no time to fairly
10 examine Larian about the dozens of predicate acts of mail fraud, wire fraud, witness
11 tampering, destruction of evidence and commercial bribery he is alleged to have
12 personally been involved in, his solicitation of numerous former Mattel employees
13 who stole Mattel trade secrets and brought them with them to MGA, MGA's theft
14 and use of countless other Mattel trade secrets and the numerous acts of unfair
15 competition Larian is alleged to have personally engaged in, among other things.
16 Nor did Mattel have any opportunity to examine Larian about any of the more than
17 160,000 pages of documents that Mattel sought well before, but that MGA and
18 Larian did not produce until long after, Larian's March 2008 deposition.
19      MGA's "billion" unfair competition claims against Mattel by themselves
20 warrant a full day of deposition.  Indeed, MGA promised to produce Larian for a
21 full day of testimony about its unfair competition claims only to later renege on its
22 promise.  As it now stands, Mattel has had virtually no opportunity to examine
23 Larian about those claims even though MGA has confirmed that it intends to rely on
24 Larian's testimony at trial to support them.
25      Mattel should be given an additional three days to fairly examine Larian
26 about all of these issues.
27
28

1            **Factual Background**

2      ***The Prior Pleadings.*** Mattel filed its original Complaint on April 27, 2004,

3 alleging that a former Mattel design employee, Carter Bryant ("Bryant"), breached

4 his duties to Mattel by working with and assisting a Mattel competitor, MGA, while

5 employed by Mattel (the "Mattel v. Bryant case").[1] MGA intervened in that case on

6 December 7, 2004, asserting that its purported rights with respect to Bratz were at

7 stake.[2] Later, in April 2005, MGA filed an unfair competition complaint against

8 Mattel, alleging trade dress infringement and claims regarding alleged Mattel

9 business practices (the "MGA v. Mattel case").[3] According to Larian, MGA's unfair

10 competition claims against Mattel are worth "billions" of dollars.[4] The Court

11 subsequently consolidated the cases.[5]

12      ***At MGA's Request, Larian's Initial Deposition Is Limited To The Mattel v.***

13 ***Bryant Case.*** Mattel served MGA with a Notice of Deposition for Larian on

14 December 15, 2004.[6] MGA did not make Larian available for deposition

15 voluntarily. Instead, it took two Court Orders and an award of sanctions before

16 Larian would appear.[7] When MGA eventually did agree to produce Larian, it

17 requested that his deposition proceed only as to issues in the Mattel v. Bryant case

18

19    [1] Mattel's Complaint in Case No. 04-9059 SGL (RNBx), dated April 27, 2004,
attached to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec.")
20 as Exh. 1.
   [2] Stipulation Permitting MGA Entertainment to Intervene in Case No. 04-9059,
21 dated December 3, 2004, Kidman Dec., Exh. 2.
   [3] MGA's Complaint in Case No. CV 05-2727, dated April 13, 2005, Kidman
22 Dec., Exh. 3.
   [4] See Kidman Dec., Exh. 4.
23    [5] Order Consolidating Case Nos. CV 04-9049, CV-9059 and CV 05-2727, dated
24 June 19, 2006, Kidman Dec., Exh. 5.
   [6] Notice of Deposition of Isaac Larian, dated December 15, 2004, Kidman Dec.,
25 Exh. 6.
26    [7] Order dated March 23, 2005 at 2, Kidman Dec., Exh. 7; Order dated June 16,
2006, Kidman Dec., Exh. 8.
27

28

1  as an initial matter, promising Larian would appear for another day of deposition to

2  answer questions regarding issues in the MGA v. Mattel case at a later time.  Mattel

3  agreed to this proposal and confirmed in writing that the initial "deposition of Mr.

4  Larian will relate to *Mattel v. Bryant* issues only and Mr. Larian will be made

5  available on a separate, later day for deposition on issues in the *MGA v. Mattel*

6  suit."[8]  Larian's deposition went forward on July 18, 2006 and was limited to issues

7  in the Mattel v. Bryant case as agreed.

8       ***Mattel's Second Amended Answer and Counterclaims.***  On November 20,

9  2006, Mattel sought leave to file an amended complaint to add MGA, Larian and

10  three other defendants and nine new legal claims, including claims against MGA

11  and Larian for copyright infringement, violation of RICO, conspiracy to violate

12  RICO, misappropriation of trade secrets, unfair competition, intentional interference

13  with contract, aiding and abetting breaches of fiduciary duties and duty of loyalty

14  and conversion.  On January 12, 2007, the Court granted Mattel leave to file its

15  proposed amendments in the form of an amended answer and counterclaims in the

16  MGA v. Mattel case.[9]  On July 12, 2007, following a round of pleading motions

17  brought by Bryant and the MGA parties that were largely denied, Mattel filed its

18  Second Amended Answer and Counterclaims against MGA, MGA Entertainment

19  (HK) Limited, MGA de Mexico, S.R.L. de C.V., Carter Bryant, Isaac Larian, Carlos

20  Gustavo Machado Gomez, and DOES 4 through 10 (the "SAAC").[10]  In addition to

21  the claims related to the ownership of Bratz and infringement of Bratz copyrights,

22  the SAAC alleged, among other things, that the MGA parties and others have

23

24     [8]  Letter from Michael T. Zeller letter to Diana Torres, dated July 7, 2006,

25  Kidman Dec., Exh. 9.
     [9]  Court's Order allowing Mattel to file an Amended Answer and Counterclaims

26  in Case No. CV 05-2727, dated January 11, 2007, Kidman Dec., Exh. 10.

27     [10]  Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, dated July 12, 2007, lodged concurrently herewith.

28

1   engaged in an ongoing, widespread pattern of illegal acts targeting Mattel, including

2   without limitation by inducing Mattel employees to steal Mattel's trade secrets,

3   confidential information and other property and take them to MGA to further

4   MGA's business interests and to harm Mattel.[11]  The SAAC alleged that the MGA

5   parties and others have carried out their ongoing, illegal scheme through a pattern of

6   racketeering activity that includes repeated acts of mail fraud, wire fraud,

7   commercial bribery, evidence tampering and destruction and criminal copyright

8   infringement that continues to this day.[12]  The SAAC further alleged that the MGA

9   parties have engaged in other illegal practices in their efforts to compete unfairly

10  with Mattel, such as by making misrepresentations to retailers and others about

11  Mattel and its products.[13]

12      ***The Court Bifurcates The Proceedings***.  On February 12, 2007, the Court

13  bifurcated trial in this matter, generally putting claims related to Bryant's theft of

14  Bratz from Mattel, MGA's and Larian's complicity therein and the MGA parties'

15  infringement of Mattel's copyrights in the Bratz works in Phase 1.[14]  All remaining

16  claims, including Mattel's claims for theft of trade secrets, violations of RICO and

17  unfair competition, as well MGA's unfair competition claims against Mattel, were

18  put in Phase 2.[15]

19

20

_____

21  [11]  Id. at ¶¶ 1-5.

22  [12]  Id. at ¶¶ 88-93.

23  [13]  Id. at ¶¶ 78-81.

    [14]  Hearing Transcript dated February 12, 2007 at 3:11-4:12; 20:21-25, Kidman

24  Dec., Exh. 12.

25  [15]  Id.  On February 4, 2008, prior to the Phase 1 trial, the Court stayed all

    discovery related solely to Phase 2. (Civil Minutes - General, dated February 4,

26  2008, Kidman Dec., Exh. 13.)  On January 6, 2009, the Court lifted to stay on Phase

    2 discovery.  (Order Appointing Discovery Master, dated January 6, 2009, at 2,

27  Kidman Dec., Exh. 14.)

28

-5-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

*MGA Refuses To Produce Larian For A Second Day Of Deposition As Agreed.* On September 14, 2007, Mattel asked MGA to provide dates for the second day of Larian's deposition, as the parties had previously agreed.[16] Initially, MGA denied any knowledge of the promise to produce Larian for deposition in the MGA v. Mattel suit.[17] Mattel informed MGA that it expected MGA to honor its agreement to produce Larian for further deposition and, in any event, Mattel was entitled to examine Larian regarding the nine new claims that had been filed since he was first deposed, including the copyright infringement, RICO, theft of trade secret, conversion, interference with contract, aiding and abetting, and unfair competition claims pleaded against Larian personally.[18] MGA eventually acknowledged the parties' prior agreement but objected to Larian's deposition on a number of other specious grounds, including that Larian was immunized from further questioning by his alleged "apex" status even though Larian was a named defendant in nine newly alleged claims for relief, personally involved in many dozens of RICO predicate acts and a key witness regarding Mattel's claims for unfair competition and MGA had confirmed that it intended to rely on Larian's testimony to support its "billion" dollar unfair competition claims against Mattel, among other things.[19]

On January 22, 2008, after further meet and confer efforts failed, Mattel was forced to bring a motion to compel Larian to appear for additional deposition testimony. On March 10, 2008, the former Discovery Master issued an order

---

[16]   Letter Jon D. Corey to Amman Kahn, et al. dated September 14, 2007, Kidman Dec., Exh. 15.

[17]   Letter from B. Dylan Proctor to Amman A. Kahn dated October 1, 2007, Kidman Dec., Exh. 16.

[18]   Letter from B. Dylan Proctor to Amman A. Kahn and William Charron dated September 18, 2007, Kidman Dec., Exh. 17.

[19]   Letter from B. Dylan Proctor to Scott Gizer dated October 9, 2007, Kidman Dec., Exh. 18.

1  finding that Mattel had "yet to complete its deposition of Larian on all Phase 1

2  issues, much less Phase 2 issues."[20]  In particular, the Discovery Master found that

3  "additional time to depose Larian is warranted" because "Mattel alleges that Larian

4  was involved in virtually every aspect of the consolidated cases," "for many of the

5  claims . . . Larian's personal knowledge of the relevant facts is unique and superior

6  to other witnesses and sources of information" and "Mattel added new claims after

7  Larian's deposition."[21]  The former Discovery Master ordered Larian to appear for

8  an additional five hours of deposition no later than March 31, 2008.[22]

9       Larian's deposition went forward on March 26, 2008.  Mr. Larian's conduct at

10  the deposition impeded Mattel's examination.  For example, Larian repeatedly spent

11  inordinate amounts of time to read exhibits, even when directed to a specific portion

12  of the document,[23] and refused to give straightforward answers to straightforward

13  questions, thus requiring time consuming lines of follow up questions.[24]  All of this

14  appears to have been part of a deliberate strategy to run out the deposition clock.

15  When Bryant's counsel asked for a stipulation that she not have to repeat MGA's

16

17

18

19

20  [20]  Order Granting in Part Mattel's Motion to Compel the Continued Deposition

21  of Isaac Larian, dated March 10, 2008, at 3, Kidman Dec., Exh. 19.

   [21]  Id.

22  [22]  Id.  In addition to everything else, the five hours allotted to Mattel was to

23  include examining Larian about 15 questions the former discovery master found he
had improperly refused to answer at this initial deposition, and reasonable follow up

24  questions.  Id. at 4.

25  [23]  See Excerpts of the video of the deposition of Isaac Larian, taken March 26,
2008, attached as Exh. 1 to the concurrently filed Declaration of Cyrus S. Naim

26  ("Naim Dec."), at Clip Nos. 1-7 and Exhs. 6, 4, 2 and 3, 5, 8, 9, 7 (corresponding to
Clip Nos. 1-7, respectively).

27  [24]  Id., Exh. 1 at Clip Nos. 8-12.

28

1   objections, Larian's counsel tellingly stated, "██████████████████████
2   ██████"[25]

3       ***The Phase 1 Trial.***  In the Phase 1 trial, which commenced on May 27, 2008,
4   the jury found that Bryant conceived and created key Bratz inventions while he was
5   a Mattel employee.[26]  As a consequence, Mattel is the owner of the copyrights in the
6   Bratz doll designs, among other properties.[27]  The jury also found that MGA and
7   Larian tortiously interfered with the contractual duties Bryant owed to Mattel, aided
8   and abetted Bryant's breaches of his fiduciary duties and duty of loyalty to Mattel,
9   converted Mattel property to their own use and infringed Mattel's copyrights in the
10  Bratz works that Mattel owned.  The jury also found that MGA fraudulently
11  concealed the bases for Mattel's claims for intentional interference and conversion.
12  The jury awarded Mattel $100 million in damages.[28]  On December 3, 2008, the
13  Court issued Orders in connection with Mattel's claims for equitable relief granting
14  Mattel (1) a declaratory judgment of ownership, (2) a permanent injunction
15  enjoining MGA's further manufacture, distribution and sale of infringing Bratz dolls
16  and its further use of the "Bratz" name, and (3) a constructive trust over Bratz
17  marks.[29]  Those Orders became final on April 27, 2009.[30]

18  _____

19      [25]   Transcript of Deposition of Isaac Larian taken March 26, 2008 at 311:23-
20  312:4, Kidman Dec., Exh. 20.
21      [26]   See Final Verdict Form as Given, dated July 17, 2008, Kidman Dec., Exh. 21.
        [27]   See Order Granting Declaratory Judgment, dated December 3, 2008, Kidman
22  Dec., Exh. 22.
23      [28]   See Final Verdict Form as Given, dated July 17, 2008, Kidman Dec., Exh. 21;
    Phase B Verdict Form as Given, dated August 26, 2008, Kidman Dec., Exh. 23.
24      [29]   December 3, 2008 Order, Kidman Dec., Exh. 24.  The Court stayed the orders
25  pending its consideration of the parties' post-trial motions and pending further order
    of the Court.  Id. at 16.  On January 7, 2009, the Court modified the stay provision
26  in the injunction orders to allow the sale of Bratz products through the end of 2009.
    (Order dated January 7, 2009 at 1-2, Kidman Dec., Exh. 25.)  On April 27, 2009, the
27  Court issued an Order ruling on the post-trial motions.  Among other things, the
28      (footnote continued)

-8-

1    ***Mattel Discovers New Information After The Phase 1 Trial Which Supports***
2    ***New Claims And Allegations Against MGA And Larian.***  In connection with
3    applications to stay the December 3, 2008 injunctive Orders, MGA represented to
4    this Court and to the Ninth Circuit that, as a result of this case, it has been unable to
5    obtain credit.[31]  Mattel learned, however, that since the Phase 1B verdict, Omni 808
6    Investors, LLC ("Omni 808") purported to take a security interest in certain of
7    MGA's assets.[32]  After Mattel brought the Omni 808 transaction to the Court's
8    attention (the MGA parties never disclosed it), and contrary to MGA's earlier, sworn
9    representations, MGA belatedly admitted that Omni 808 had extended it additional
10   funding.[33]  Mattel subsequently discovered a complex web of financial transactions
11   involving related entities—including Omni 808—that appear to be designed to
12   frustrate and thwart the Court's Orders by, among other things, attempting to (1)
13   have Larian become a secured creditor of MGA, allegedly with interests senior to
14   Mattel and other creditors, (2) transfer MGA assets to Larian or otherwise disguise
15   MGA equity as secured debt in order to thwart Mattel's ability to recover against
16   MGA, and (3) encumber Bratz assets by attempting to grant a purported security
17   interest in them to Larian controlled entities.  These transactions—which include
18   Omni 808's purported acquisition of nearly $300 million of MGA's secured debt

19   _____

20   Court vacated the stay of the December 3, 2008 injunctive Orders, except to the
21   extent specified in the Court's January 7 modification.  (Order dated April 27, 2009
      at 11, Kidman Dec., Exh. 26.)
22      [30]   Order dated April 27, 2009 at 11, Kidman Dec., Exh. 26.
23      [31]   See Declaration of Brian Wing in Support of the MGA Parties' Request for a
      Stay, dated December 11, 2008, at ¶ 13, Kidman Dec., Exh. 27.
24      [32]   UCC Financing Statement Amendment dated September 9, 2008, amending
25   prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to
      MGA with co-priority with Wachovia Bank, N.A., Kidman Dec., Exh. 49.
26      [33]   MGA Parties' Corrections to the Opposition to Mattel, Inc.'s Ex Parte
27   Application for Appointment of a Receiver or for Alternative Relief, dated
      December 31, 2008, at 1-2, Kidman Dec., Exh. 37.
28

-9-

1   from Wachovia at a massive discount and Larian's purchase through the IGWT

2   entities of tens of millions of dollars worth of Bratz product for pennies on the dollar

3   for apparent resale—have been the subject of extensive briefing to the Court and the

4   Discovery Master.  Ultimately, these transactions led the Court to conclude that "it

5   appears likely that the MGA parties, agents and related entities . . . are engaged in a

6   course of conduct with related parties designed to frustrate the Court's Orders,

7   Findings and Injunction herein"[34] and that Omni 808 has been "█████████████

8   ███████████████████████████████████████████████████████

9   ████████████████████████"[35]

10  ***Mattel's Third Amended Answer And Counterclaims.***  On April 8, 2009,

11  Mattel filed a motion for leave to file a Third Amended Answer and Counterclaims

12  (the "TAAC").[36]  In particular, Mattel sought to add a new counterclaim for

13  avoidance of intentional and constructive fraudulent transfers, based on MGA's and

14  Larian's transfer of tens of millions of dollars of Bratz inventory from MGA to the

15  Larian-controlled IGWT entities and other fraudulent transfers.  In addition, Mattel

16  sought to add new allegations regarding the Omni, IGWT and other related-party

17  transactions in support of its existing RICO and unfair competition claims against

18  MGA and Larian, including allegations regarding additional predicate acts of money

19  laundering, concealing assets, mail and wire fraud, and engaging in monetary

20  transactions involving property derived from unlawful activity.  Mattel sought to

21  add new allegations regarding additional predicate acts of commercial bribery,

22  destruction of evidence and obstruction of justice based on MGA's secret payments

23  to Mattel employees who worked on Bratz while employed by Mattel, Farhad

24

---

25   [34]   April 27, 2009 Order at 16-17, Kidman Dec., Exh. 26.

26   [35]   Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, at 9, Kidman Dec., Exh. 30.

27   [36]   See Mattel, Inc.'s Notice of Motion and Motion for Leave to File Third Amended Answer and Counterclaims dated April 8, 2009, Kidman Dec., Exh. 31.

28

1  Larian's destruction of documents and Isaac Larian's perjury at the Phase 1 trial and

2  other false statements regarding the origin of Bratz.  Mattel also sought to

3  specifically include allegations regarding the theft of trade secrets by Jorge Castilla,

4  a former Mattel employee, in support of its existing trade secret theft, RICO, unfair

5  competition and conversion claims, among others.

6        On May 21, 2009, the Court granted Mattel's motion for leave to file the

7  TAAC.  As the Court's Order explains:

8        [T]he TAAC adds one additional claim and a number of additional
         allegations.  First, Mattel asserts an additional claim pursuant to
9        California's version of the Uniform Fraudulent Transfers Act, found at
         Cal. Civ. Code §§ 3439 et seq.  Second, Mattel avers facts that fall into
10       the following broad categories:  (1) Allegations regarding certain 2008
         financial transactions that were the subject of the Forensic Auditor's
11       Report (the "Wachovia/Omni 808 Transactions"); (2) allegations
         regarding acts of commercial bribery relating to three Mattel
12       seamstresses who were employed by MGA contractor Veronica
         Marlow; (3) allegations regarding evidence tampering, including the
13       alleged destruction by Isaac Larian's brother Farhad of boxes of
         documents relating to the development of Bratz and Farhad's deletion
14       of emails from a USB device; (4) allegations that Isaac Larian and
         MGA perjured themselves during their Phase 1 testimony; and (5)
15       allegations setting forth additional predicate acts of racketeering
         activities, including money laundering, concealing assets, engaging in
16       monetary transactions involving property derived from unlawful
         activity, commercial bribery, destruction of evidence, and obstruction
17       of justice.[37]

18       The Order made clear that "the Court is fully aware, that the . . . amendments

19  will dramatically expand the scope of the present litigation" and that leave to amend

20  was granted despite that expansion.[38]

21       ***MGA And Larian Refuse To Give Mattel Time To Fairly Examine Larian.***

22  Shortly after the Court lifted the Phase 2 discovery stay on January 6, 2009, Mattel

23  requested that MGA and Larian agree to produce Larian for further deposition

24  testimony on the grounds that the five hours in March 2008 had not provided Mattel

25  a sufficient opportunity to fairly examine him on Phase 1 issues (including the

26

27  [37]  May 21, 2009 Order at 4, Kidman Dec., Exh. 32.
28  [38]  Id. at 6, Kidman Dec., Exh. 32.

claims for copyright infringement, conversion, interference with contract and aiding and abetting that had been alleged by Mattel against MGA and Larian since Larian's initial deposition in the <u>Mattel v. Bryant</u> case and their defenses thereto) **and** Phase 2 issues (including Mattel's claims against MGA and Larian for theft of trade secrets, violation of RICO, conspiracy to violate RICO and unfair competition, their defenses thereto **and** MGA's purported "billion" dollar claims against Mattel for unfair competition), particularly in view of Larian's conduct at the deposition which impeded Mattel's examination.[39]  They refused to produce Larian for any further examination.[40]  After the Court granted Mattel leave to file the TAAC, Mattel asked MGA and Larian to reconsider their position and agree to produce Larian for additional testimony, including with respect to the new claims and allegations in the TAAC.[41]  MGA and Larian then conceded that Mattel is entitled to additional time to depose Larian regarding the financial transactions alleged in the TAAC, but would only agree to produce him for an additional four hours and refused to produce him for further testimony regarding any other Phase 2 issues.[42]

---

[39]  Letter from Jon Corey to Thomas Nolan and Jason Russell dated January 27, 2009, Kidman Dec., Exh. 33.

[40]  Letter from Amman Khan to Jon D. Corey dated February 7, 2009, Kidman Dec., Exh. 34; Letter from Jon Corey to Amman Khan dated February 8, 2009, Kidman Dec., Exh. 35.

[41]  Letter from Scott B. Kidman to Amman A. Khan dated June 15, 2009, Kidman Dec., Exh. 36.

[42]  Letter from Amman Khan to Scott B. Kidman dated June 18, 2009, Kidman Dec., Exh. 37; Email from Scott Kidman to Amman Khan dated June 19, 2009, Kidman Dec., Exh. 53; Kidman Dec., ¶ 56.

1          **Argument**

2    I.    **MATTEL IS ENTITLED TO ADDITIONAL TIME TO FAIRLY**

3          **EXAMINE LARIAN REGARDING THE CLAIMS AND**

4          **ALLEGATIONS THAT HAVE ARISEN SINCE THE PHASE 1 TRIAL**

5          A.    **Mattel Is Entitled To Additional Time To Examine Larian**

6                **Regarding The Newly Alleged Financial Transactions**

7          MGA and Larian do not dispute that Mattel is entitled to additional time to

8    depose Larian regarding the financial transactions that underlie the new claims and

9    allegations in the TAAC.  Nor could they.  These transactions had not yet even

10   occurred at the time of Larian's prior deposition in March 2008 and Mattel has

11   therefore had no opportunity to examine Larian about them at all.  <u>See</u> <u>Benson v.</u>

12   <u>Giordano</u>, 2007 WL 2355783, at *3 (D.S.D. Aug. 17, 2007) (good cause existed for

13   second deposition of defendant following plaintiff's filing amended complaint);

14   <u>Keithly v. Homestore.com, Inc.</u>, 2006 WL 1646119, at *1 (N.D. Cal. Jun. 12, 2006)

15   (compelling plaintiff to sit for deposition "in light of the . . . additional claims that

16   have been added since his . . . deposition more than two years ago.").

17         The four hours of testimony MGA has offered is inadequate.  Court's

18   routinely grant in excess of seven hours of deposition time where the issues on

19   which the witness is to be examined are complex.  <u>See</u> <u>Dunkin' Donuts Incorporated</u>

20   <u>v. Mary's Donuts, Inc.</u>, 206 F.R.D. 518, 522 (S.D. Fla. 2002) (granting plaintiff's

21   motion to extend deposition of corporate representative for fourteen hours "due to

22   the complexity of the deposition").  The transactions involving the Omni Parties are

23   nothing if not complex.  For example, Omni 808 purports to be owned and funded

24   by a company called Vision Capital, LLC which, like Omni 808, was formed during

25

26

27

28

the Phase 1B trial.[43]   Vision Capital, in turn, purportedly obtained funding from Lexington Financial Limited ("Lexington"), an offshore company registered in the Caribbean Island of Nevis, a country notorious for its corporate and banking secrecy laws.[44] Lexington lists its supposed business offices in London as being at the same location as a company that provides "virtual office" services, i.e., mail drop and answering service.[45]   Fred Mashian, an attorney, is identified as the Lexington contact on a UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with an ownership interest in Omni 808.[46]  Leon Neman is Isaac Larian's brother-in-law and has served as a director of MGA.[47]  1525 South Broadway in Los Angeles—the address for Vision Capital—is the address of Neman Brothers & Associates. [48]   Leon Neman is a principal of Neman Brothers & Associates and owns the building at 1525 Broadway.[49]  Mr. Mashian is the listed agent for several entities that Leon Neman claims to own.[50]  Rock-Hill Holdings,

---

[43]   See Vision Capital, LLC Certificate of Formation dated August 19, 2008, attached as Exhibit 2 to the Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, ("Zeller Dec."), lodged concurrently herewith.

[44]   See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5 (with Lexington taking a security interest in Vision Capital's ownership interest in Omni 808); see also "Offshore-Based Limited Liability Company (LLC)," as obtained from the website at www.offshore-protection.com/nevisLLC.html., Zeller Dec., Exh. 11.

[45]   See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5; December 12, 2008 letter from Registrar Clevelan Williams, Zeller Dec., Exh. 18. Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Zeller Dec., Exh. 10

[46]   See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5.

[47]   See Zeller Dec. ¶ 4.

[48]   See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.

[49]   See Zeller Dec., ¶ 6.

[50]   See Zeller Dec. ¶ 11.

1   LLC, a Leon Neman entity that lists Mashian as its registered agent, also has a

2   Delaware address that is the same as Vision Capital's alleged Delaware address.[51]

3   The very purpose of the structure of these transactions has been to conceal and make

4   it difficult to ascertain the source of funding of the Wachovia loan acquisition and

5   the purported ownership of the secured debt.  The court-appointed forensic auditor

6   spent months attempting to unravel these and other related party transactions, with

7   full access to MGA personnel and files; a mere four hours of deposition to question

8   a principal player in this scheme would be grossly inadequate.

9        Indeed, Larian's central role in all of this justifies far more time than the four

10  hours MGA and Larian have offered for his deposition.  Rahman v. The Mith &

11  Wollensky Restaurant Group, 2009 WL 72441, *4 (S.D.N.Y. Jan. 7, 2009) (granting

12  additional time for deposition because witness was "best source of information"

13  regarding relevant issues); Securities and Exchange Comm. v. Acqua Vie Beverage

14  Corp., 2006 WL 2457525, at *4 (D. Idaho Aug. 23, 2006) (witness' role as

15  "important player" in litigation justified additional time for deposition).  Despite the

16  repeated representations by counsel for Omni 808 that MGA and Larian had no

17  interest in Omni 808's acquisition of the Wachovia debt, the evidence shows that

18  Larian both funded Omni 808 and orchestrated its purported purchase of MGA's

19  debt from Wachovia.  For example, e-mails produced by Omni 808—after *twice*

20  being ordered to produce them, including after Mattel was forced to file an

21  application for an Order to Show Cause re Contempt—show ███████████████

22  ████████████████████████████████████████████████████

23  ███████████████████████████████████████████[52] ████

24

25  ────────────

26  [51]  See Zeller Dec. ¶ 12.

27  [52]  ██████, Bates-numbered OMNI0007346-47, Kidman Dec. Exh. 38;

28  (footnote continued)

07209/2975169.2



8   IGWT 826 was an entity created on August 27, 2008—the day after the Phase 1 trial

9   ended.[56] As the Discovery Master has found, IGWT is "affiliated with —if not

10   wholly owned by—Larian."[57]

14   . There is substantial

19   Bates-numbered OMNI0007353-56 at OMNI0007353, Kidman Dec., Exh. 52.

20   [53] Bates-numbered WACHOVIA 007599-007603, Kidman Dec., Exh. 39.

21   [54]   Bates-numbered OMNI0007314-15, Kidman Dec. Exh. 40 (emphasis added).

22   [55]   , attached as Exh. 6 to

23   the Second Supplemental Declaration of Michael T. Zeller ISO (1) Mattel's
Application for Receiver and (2) Mattel's Opposition to Omni 808's Application for

24   Leave to Intervene ("Second Supp. Zeller Dec."), lodged concurrently herewith.

25   [56] See IGWT 826 Investments, LLC registration information, Kidman Dec., Exh.
41.

26   [57]   Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 25, Kidman

27   Dec. Exh. 42.

  [58] See Second Supp. Zeller Dec. at ¶ 7 (c), Exhs. 5, 19, 20.

1   evidence ███████████████████████████████████████████

2   █████████████████████████████.[59]

3        Larian is also the central witness regarding the MGA's sale of tens of millions

4   of dollars in Bratz inventory to the IGWT entities which, among other things, is the

5   basis for Mattel's newly added claim under the Uniform Fraudulent Transfer Act.

6   IGWT Group was formed on June 26, 2008—during the Phase 1 trial—and

7   registered its place of business at Larian's home address.[60]  IGWT 826 is registered

8   at the home address of Shirin Makabi and Jahangir Eli Makabi, Isaac Larian's sister

9   and bother-in-law.[61]  An Inventory Purchase Agreement by which MGA sold Bratz

10  products with a retail value of more than $65 million for just $5.3 million was

11  signed by Larian on behalf of both MGA and IGWT Group.[62]  The IGWT entities'

12  production of over 100,000 pages of documents includes ████████████████

13  █████████████████████████.[63]

14       By the MGA parties' own account, the scope of these financial transactions

15  demonstrates that the four hours of deposition time they now propose is plainly

16  inadequate.  MGA and Larian vigorously opposed Mattel's motion to include the

17  claims and allegations based on the Omni and IGWT transactions in the TAAC on

18

19

20

---

21     [59]  See, e.g., Second Supp. Zeller Dec. at ¶¶ 7(a), 7(d), and Exhs. 6, 7; see also

22  Mattel's Memorandum Regarding the MGA/Omni 808 Transactions dated May 14,

23  2009 at 8-10, Kidman Dec., Exh. 43.
       [60]  IGWT Group, LLC's registration information, Kidman Dec., Exh. 44.

24     [61]  IGWT 826 Investments, LLC's registration information, Kidman Dec., Exh.

25  41.
       [62]  Exhibit B to the Declaration of John Woolard in Support of the MGA Parties'

26  Opposition to Mattel's Ex Parte Application for Receiver, dated December 30, 2008,

27  Kidman Dec., Exh. 45.
       [63]  Kidman Dec., ¶ 47.

28

1   the grounds that they would "radically expand the scope of the litigation."[64]  Among

2   other things, they argued that "the proposed UFTA and new RICO claims . . . add a

3   host of new issues . . . none of which is remotely raised by Mattel's current

4   counterclaims," "inject new allegations . . . that Isaac Larian is the alter ego of at

5   least five LLCs and at least five trusts," "allege an entirely new RICO enterprise [the

6   IGWT Enterprise] that is separate and distinct from the two alleged RICO

7   enterprises currently alleged in the SAAC" that will "effectively require a separate

8   trial, about a separate RICO enterprise, within the trial of the RICO counterclaim."[65]

9   In granting Mattel's motion, the Court expressly recognized that "the proposed

10  amendments will dramatically expand the scope of the present litigation"[66] and

11  "would exceedingly complicate an already exceedingly complicated case."[67]

12          These transactions are now part of the case and Mattel is entitled to far more

13  than four hours to depose Larian about them.  In many instances, Larian will be the

14  best, if not the only, witness available to Mattel to obtain the discovery it needs.

15  Lexington, for example, has thus far successfully resisted discovery altogether;

16  Mattel's ability to obtain discovery from certain other third-parties has been limited

17  as Mattel has been directed to pursue discovery directly from MGA and Larian in

18  the first instance.[68]  Even with a cooperative witness—which Larian is not—given

19  the nature and scope of the issues and the potential number of documents to be

20  covered, the deposition will of necessity be lengthy.

21

22

23      [64]   MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third
    Amended Answer and Counterclaims, dated April 27, 2009, at 5-10, Kidman Dec.,
24  Exh. 46.
        [65]   Id.
25      [66]   Order dated May 21, 2009 at 6, Kidman Dec., Exh. 32.
26      [67]   Hearing Transcript dated May 18, 2009 at 19:24-20:3, Kidman Dec., Exh. 47.
        [68]   See Phase 2 Discovery Matter Order No. 27 dated May 6, 2009, at 28, 35
27  n. 16, Kidman Dec., Exh. 30.
28

1
2

**B.   Mattel Is Entitled To Additional Time To Examine Larian Regarding The New Perjury Allegations**

3    Likewise, Mattel is entitled to additional time to depose Larian regarding the

4  newly alleged RICO predicate acts of perjury and conspiracy to commit perjury.

5  This includes Larian's repeated sworn testimony during the Phase 1 trial that Bryant

6  told him, and that Larian believed, that Bryant had not created Bratz while

7  employed by Mattel; MGA's and Larian's submission of false statements regarding

8  MGA's ability to receive outside funding in court pleadings; and numerous other

9  false statements regarding MGA's financial condition in this action.[69]  These

10 predicate acts arose after Larian's prior deposition, directly involve Larian

11 personally and are now part of Mattel's TAAC.  Mattel is entitled to additional time

12 to fairly examine Larian about them.

13
14

**C.   Mattel Is Entitled To Additional Time To Examine Larian Regarding Mattel's Criminal Copyright Infringement Allegations**

15    During the Phase 1 trial, Larian declared that MGA would continue to

16 produce and sell Bratz products no matter what the jury's verdict.  Many months

17 after trial, Larian continued to declare that "[w]e are never going to give the Bratz

18 brand to Mattel or anyone else."[70]  True to his word, Larian and MGA, undeterred

19 by the jury's findings that Mattel owns Bratz, the jury's findings of infringement and

20 the Court's Orders detailing the scope of MGA's infringement, Larian and MGA

21 continued their infringement post-verdict and continue to do so to this day.[71]  Mattel

22

23
24

[69]   See Mattel Inc.'s Third Amended Answer and Counterclaims, dated May 22, 2009 ("TAAC"), ¶¶ 104, 141(d)(ii)-(iii), lodged concurrently herewith.

25

[70]   Reuters, MGA Unwilling to Share Bratz Revenue With Mattel (Sept. 11, 2008), Kidman Dec., Exh. 48.

26
27

[71]   See Final Verdict Form as Given, dated July 17, 2008, Kidman Dec., Exh. 21; Phase B Final Verdict Form as Given, dated August 26, 2008, Kidman Dec., Exh. 23; Dec. 3 Order at 9-11, Kidman Dec., Exh. 24.

28

1 | is entitled to examine Larian regarding his and MGA's post-verdict intent in
2 | connection with the RICO claims and criminal copyright infringement predicate acts
3 | Mattel has alleged in the TAAC.

4 | **II.   MATTEL IS ENTITLED TO ADDITIONAL TIME TO FAIRLY**
5 | **EXAMINE LARIAN REGARDING ALL OTHER PHASE 2 ISSUES**

6 | **A.   Mattel Is Entitled To Additional Time To Examine Larian**
7 | **Regarding Mattel's Other Phase 2 Claims**

8 | **1.   The scope of Mattel's claims warrants additional time**

9 | Even before the addition of the new claims and allegations in the TAAC, the
10 | Court described the Phase 2 case as "exceedingly complicated."[72]  The five hours
11 | the former Discovery Master allotted Mattel to examine Larian on the six Phase 1
12 | claims Mattel had alleged against Larian and the other MGA parties since Larian's
13 | initial deposition as well as all then-alleged Phase 2 claims turned out to be
14 | insufficient.  Indeed, Mattel was left with little time to examine Larian on any of its
15 | Phase 2 claims, let alone MGA's "billion" dollar unfair competition claims.

16 | Even based on the SAAC, Mattel's Phase 2 claims included nine claims
17 | against MGA and Larian individually, including claims for violation of RICO,
18 | conspiracy to violate RICO, theft of trade secrets, conversion and unfair
19 | competition.[73]  As set forth in the SAAC, Mattel's RICO claims allege a widespread,
20 | ongoing criminal enterprise to steal Mattel's confidential and proprietary
21 | information that spans a ten year time period and that was carried out through,

22 |

23 | [72]  Hearing Transcript dated May 18, 2009 at 19:24-20:3, Kidman Dec., Exh. 47.
24 | [73]  Phase 2 has also included since the filing of the SAAC claims against MGA
25 | and Larian individually for intentional interference with contract, aiding and
abetting breach of fiduciary duty and aiding and abetting breach of duty of loyalty
26 | arising out of the hiring of numerous former Mattel employees (other than Bryant)
who took Mattel's trade secret information and provided it to MGA.  See SAAC at
27 | ¶¶ 122-128; 136-141; 149-154.
28 |

1  among other things, no less than 200 separate predicate acts of mail fraud and wire

2  fraud.[74]  See Fed. R. Civ. P. 30(d), 2000 Amendment to Rule 30(d) ("If the

3  examination will cover events occurring over a long period of time, that may justify

4  allowing additional time."); Dunkin' Donuts, 206 F.R.D. at 522 (seven year period

5  and complexity of issues justified additional time to depose witness).  Larian

6  himself was involved in dozens of predicate acts of mail fraud and wire fraud as

7  well as predicate acts of witness tampering, destruction of evidence and commercial

8  bribery.[75]  Larian is alleged to have personally solicited many former Mattel

9  employees who stole Mattel's trade secrets and brought them to MGA, including

10  Gustavo Machado, Pablo Vargas, Mariana Trueba, Janine Brisbois and others.[76]

11  Larian is also alleged to have personally engaged in numerous acts of unfair

12  competition including by making repeated misrepresentations about Mattel in e-

13  mails and telephone calls to Mattel's customers and in false and misleading press

14  releases.[77]

15       Mattel had little or no opportunity to fairly examine Larian about these and

16  other issues raised by its Phase 2 claims.  For example, Mattel had no opportunity to

17  examine Larian about the dozens of predicate acts of mail fraud and wire fraud he is

18  alleged to have personally committed in furtherance of the ongoing RICO

19  enterprises, Larian's false and misleading statements to retailers and in press releases

20  about Mattel and its products, MGA's hiring of Ron Brawer and his theft of Mattel

21  trade secrets, MGA's theft and use of countless other Mattel trade secrets, including

22  product line lists, product themes and product concepts just to name a few or MGA's

23  unclean hands and other affirmative defenses for which Larian has been identified as

24

25  [74]  SAAC at ¶¶ 88-97, and Exhibit C thereto.

26  [75]  Id. at ¶ 93 and Exhibit C.

27  [76]  Id. at ¶¶ 41-44, 54, 74-77.
    [77]  Id. at ¶¶ 78-81.

28

07209/2975169.2

a witness.[78]  Nor did Mattel have the opportunity to fairly examine Larian about the predicate acts of commercial bribery relating to three Mattel Design Center employees who were employed by MGA through its contractor Veronica Marlow and the destruction of evidence by Isaac Larian's brother, Farhad Larian, which are now specifically alleged in the TAAC.  Mattel had time to ask only the most basic questions about Larian's targeting and solicitation of other former Mattel employees—such as Vargas, Trueba and Brisbois—who stole Mattel trade secrets and gave them to MGA in violation of their contractual and fiduciary duties.

Even if the five hours allotted by the former Discovery Master had been sufficient at the time of Larian's March 2008 deposition to fairly examine Larian regarding all the claims that then had to be covered—and it clearly was not— Mattel's RICO and unfair competition claims are, as the Discovery Master has held in multiple orders, ongoing to the present day.[79]  By virtue of the Court's phasing order, the Phase 1 trial and the stay of Phase 2 discovery, more than 15 months has passed since Larian's last deposition.  Mattel has had no opportunity to examine

---

[78]  MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE De Mexico S.R.L. De C.V., and Larian's Initial Disclosures Under Rule 26(a)(1) dated September 21, 2007, Kidman Dec., Exh. 49.

[79]  See Phase 2 Discovery Matter Order No. 34 at 6, Kidman Dec., Exh. 50 (ordering Larian to produce hard drives used since February 27, 2008 and finding that "the plain language of the SAAC alleges that the conduct of each criminal RICO enterprise alleged therein is continuing" and "Larian's argument that the SAAC does not allege ongoing destruction of evidence has already been implicitly, if not expressly, rejected by the Court."); Phase 2 Discover Matter Order No. 22 at 33-35 and 56, Kidman Dec., Exh. 51 (ordering Larian to produce communications with Mattel employees from 1999 to the present because Mattel's RICO allegations are "ongoing"); Phase II Discovery Matter Order No. 3 at 27-28 (Kidman Dec., Exh. 42) (compelling production of documents by IGWT entities and finding that "Mattel phrased its allegations [in the SAAC] broadly enough to potentially encompass subsequent acts of unfair competition which perpetuate or extend the misconduct alleged in the Counterclaims").

1  Larian regarding MGA's and Larian's ongoing use of Mattel's trade secrets, any

2  intervening acts of trade secret theft, unfair competition or destruction of evidence

3  or other RICO predicate acts.  The additional time afforded Mattel for Larian's

4  deposition should account for the need to do so.

5            **2.        MGA's and Larian's belated production of documents**

6                        **warrants additional time**

7        MGA and Larian have produced more than 160,000 pages of documents since

8  Larian's deposition in March 2008.[80]  They include, without limitation:

9    •    47,000 pages of documents relating MGA's conception of "Scooter
          Samantha" and "Space Babies" products, both of which are products
10         relevant to Mattel's theft of trade secret claims, and MGA's non-
          privileged communications about the claims in this lawsuit with certain
11         individuals, including Brawer, Machado, Vargas, Trueba, Brisbois and
          Castilla.  Mattel first requested these documents and, when MGA
12         refused to produce them, moved to compel long before Larian's March
          2008 deposition.  After the Court stayed Phase 2 discovery, the former
13         Discovery Master declined to rule on Mattel's motions because he
          found the documents requested related to Phase 2 issues.  Only when
14         Mattel renewed its motions to compel after the Court lifted the Phase 2
          discovery stay did MGA produce the documents.[81]

15   •    MGA's vendor and personnel files for more than 100 former Mattel
16         employees that Mattel also first requested and moved to compel the
          production of well before Larian's March 2008 deposition.  The former
17         Discovery Master likewise declined to rule on Mattel's motion to
          compel in view of the Phase 2 discovery stay because the documents
18         related "primarily to Phase 2 issues."  When Mattel renewed its motion
          to compel after the Court lifted the Phase 2 discovery stay, the
19         Discovery Master granted Mattel's motion (subject to certain limited
          personal information) on the grounds that the documents were

20

21

22

23  [80]   Kidman Dec., ¶ 57.

24  [81]   See Order Granting in Part and Denying in Part Mattel's Motion to Compel

25  Production of Documents and Things by MGA, dated April 14, 2008, at 6, Docket
    No. 3094; Mattel, Inc.'s Notice of Motion and Renewed Motion to Compel

26  Production of Documents and Things By MGA Entertainment, Inc. as Called for By
    Mattel's First Set of RFPs No. 48, and Third Set of RFPs Nos. 43 Through 75, 87

27  and 88, dated January 26, 2009, Docket No. 4741.

28

"reasonably calculated to lead to the discovery of admissible evidence regarding Mattel's Phase 2 claims."[82]

• Hundreds of pages of financial documents relating to Larian's purported net worth that were requested long before Larian's March 2008 deposition but not produced until after the Phase 1 trial was underway. Larian's net worth is highly relevant to Mattel's Phase 2 punitive damages claims.[83]

Through no fault of its own, Mattel has had no opportunity to examine Larian about any of these documents. This, too, provides ample justification for granting Mattel additional time to examine Larian regarding Mattel's Phase 2 claims. See Greenly v. Lee, 2007 WL 2221444, at *2 (E.D. Cal. Jul. 31, 2007) (granting an additional six hours of deposition time "due to the withholding" of documents prior to the examination"); Grill v. Costco Wholesale Corp., 2004 WL 2314639, at *1 (W.D. Wash. Oct. 7, 2004) (granting additional time for examination where "during the deposition it became apparent that not all relevant documents had been produced").

### 3.    Larian's obstruction warrants additional time

When Mattel attempted to examine Larian about a handful of the documents it did have, Larian turned his purported "review" of the exhibits into his own version of the four-corners offense by attempting to run out the deposition clock with dead air. For example, Larian consumed more than 30 minutes of what little time Mattel had by purporting to review six exhibits, including a two page email print out, certain Bratz drawings he had seen before, a Newsweek article about Bratz in which he was quoted and an affidavit he had executed even though he was specifically told

---

[82]   See Phase 2 Discovery Matter Order No. 6, dated March 13, 2009, at 8-9, Docket No. 5018.

[83]   Mattel, Inc.'s Notice of Motion and Motion to Compel Responses to Interrogatories and Production of Documents By MGA Entertainment, Inc., and Isaac Larian, dated February 11, 2009, at 4-5, Docket No. 4839.

1    that he would be questioned about only two paragraphs in particular.[84]  He was also

2    deliberately evasive, forcing Mattel's counsel to spend inordinate amounts of time

3    attempting to obtain answers to straightforward questions.[85]  Larian's conduct at his

4    prior deposition warrants additional time.  Rule 30(d), 2000 Amendment ("[I]f the

5    deponent or another person impedes or delays the examination, the court must

6    authorize extra time."); see also Calderon v. Symeon, 2007 WL 735773, *1-2 (D.

7    Conn. Feb. 2, 2007) (granting additional time to depose "uncooperative,

8    interruptive" witness even though deposition was not "waste of time").  There is no

9    reason to believe he will behave any differently at the next session of his deposition,

10   which of necessity will be document intensive.  This, too, should be factored into

11   the time allotted for his examination.

12       **B.    Mattel Is Entitled To Additional Time To Examine Larian**

13             **Regarding MGA's Phase 2 Unfair Competition Claims**

14        MGA alleged its "billion" dollar unfair competition claims in a separately

15   filed lawsuit.  But for the Court's consolidation of that lawsuit with the Mattel v.

16   Bryant lawsuit, Mattel would have been entitled to examine Larian for at least 7

17   hours on MGA's unfair competition claims alone.  Even after the Court consolidated

18   the two matters, MGA promised to produce Larian for a separate day of deposition

19   on its unfair competition claims, only to later renege on its promise.  As it presently

20   stands, Mattel has had almost no time to depose Larian regarding these claims.

21        MGA's unfair competition claims include sweeping allegations of serial

22   copying of MGA's products, trade dress, trademarks, product packaging, themes,

23   ideas, advertising not only with respect to Bratz and Bratz Petz, but also for

24

25       [84]  Naim Dec., Exh. 1 (Clip Nos. 1-4 and 7) and Exhs. 6, 4, 2-3, 5, and 7
     (corresponding to Clip Nos. 1-4 and 7, respectively); see also Naim Dec., Exh. 1
26   (Clip Nos. 5 and 6), and Exhs. 8 and 9 (corresponding to Clip Nos. 5 and 6,
     respectively).
27       [85]  Id., Exh. 1 (Clip Nos. 8-12).

28

1   numerous other product lines such as "4-Ever Best Friends," Mommy's Little

2   Patient" and "Alien Racers."[86]  MGA further alleges that Mattel has engaged in a

3   series of other unfair and anti-competitive business practices designed to damage

4   MGA, such as threatening former employees and potential licensees, intimidating

5   retailers and distributors, tampering with retail displays, making false statements to

6   retailers and exerting undue influence over industry organizations.[87]

7          MGA has identified Larian as a witness with knowledge regarding all of these

8   issues, including the alleged "damages suffered by MGA as result of Mattel's

9   conduct,"[88] and has expressly confirmed that it intends to rely on Larian's testimony

10  at trial to support its claims.  Except for a handful of general questions regarding the

11  basis for Larian's statement at his deposition that ███████████████████

12  █████,[89] Mattel had no time to examine Larian about any of these claims in the five

13  hours allotted for his March 2008 deposition.  Mattel should be given additional

14  time to fairly examine Larian about MGA's claims for unfair competition.

15                                        **Conclusion**

16         For the foregoing reasons, Mattel respectfully requests that its motion be

17  granted in its entirety and Isaac Larian be ordered to appear for an additional 21

18  hours of deposition testimony.

19

20

21

22

23  [86]  MGA's Unfair Competition Complaint, ¶¶ 67-72, Kidman Dec., Exh. 3.
    [87]  Id. at ¶¶ 74-100, Kidman Dec., Exh. 3.

24  [88]  MGA Entertainment, Inc.'s Supplemental Disclosures and MGA

25  Entertainment (HK) Limited, MGAE De Mexico S.R.L. De C.V., and Larian's
    Initial Disclosures Under Rule 26(a)(1) dated September 21, 2007, Kidman Dec.,

26  Exh. 49.
    [89]  Transcript of Deposition of Isaac Larian taken March 26, 2008 at 305:19-

27  308:25, Kidman Dec., Exh. 20.

28

                                        -26-

1

2    DATED:  July 17, 2009                     QUINN EMANUEL URQUHART OLIVER &
                                               HEDGES, LLP
3

4                                              By /s/ Michael T. Zeller
                                                  Michael T. Zeller
5                                                 Attorneys for Mattel, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28