# EXHIBIT 17

 

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

September 18, 2007

**VIA FACSIMILE AND U.S. MAIL**

William Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

Amman A. Khan, Esq.
Christensen, Glaser, Fink, Jacobs, Weil &
Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California  90067

Re:     Mattel, Inc. v. Bryant

Dear Counsel:

I write regarding MGA's recent statements that it does not intend to and/or may not produce Isaac Larian for additional deposition questioning in this case.

Mr. Larian earlier had likewise refused to sit for deposition in this case until he was ordered, twice, and then sanctioned by the Court to appear.  He eventually appeared for deposition in July 2006.  Contrary to MGA's recent statements to Judge Infante, and as MGA knows, MGA and Mattel agreed before that deposition -- including in writing -- that it would be limited to the Mattel v. Bryant case.  As is also reflected in the written correspondence, it was, in fact, *MGA* that originally had made that request for its benefit, and the parties expressly agreed that Mattel would be entitled to further deposition questioning of Mr. Larian relating to the MGA v. Mattel case at a later date.  We expect MGA to honor this agreement without the need for the Court's involvement.

Even apart from that agreement, additional time with Mr. Larian is unquestionably warranted.  It is well established that a party can be compelled to testify regarding new evidence that comes to light following his initial deposition.  When Mr. Larian's deposition was taken, MGA had

EXHIBIT __17__

PAGE __247__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

produced neither its initial disclosures nor any documents relating to its own claims. Indeed, MGA withheld what is now known to be many hundreds of thousands of pages of documents bearing on its purported claims until the Court compelled MGA to produce them -- all after Mr. Larian's July 2006 deposition.

In addition, Mattel is entitled to explore Mr. Larian's knowledge and information regarding the new claims that have been filed since he was deposed. Mattel has filed thirteen counterclaims against Larian, Bryant, MGA and others, including copyright infringement and RICO claims. Mr. Larian is obviously knowledgeable about the counterclaims Mattel has alleged against him. Under the law, witnesses may be deposed further on new claims filed after their initial depositions were taken. See, e.g., Keithley v. Homestore.com, Inc., 2006 WL 1646119, at *1 (N.D. Cal. 2006) (rejecting argument that witness should not have to be deposed again, "in light of the . . . additional claims that have been added since his [] deposition more than two years ago."); Tillery v. Darby-Rogers Co., 2006 WL 2735162, at *5 (M.D. Fla. 2006) ("The Court will allow Defendants to re-depose Plaintiffs regarding the new claims"); Collins v. International Dairy Queen, 189 F.R.D. 496, 498 (M.D. Ga. 1999) (granting defendants' request to reopen depositions of witnesses based on new claims in amended complaint: "Because of the time that has elapsed, the addition of new claims, and the evident knowledge of the witnesses in particular areas, re-examination of the two witnesses is likely to provide additional information not obtainable at the first depositions.").

Your recent assertion that Mr. Larian is immunized from further deposition questioning by his "apex" status is unavailing. MGA knew of his alleged "apex" status at the time it requested, and agreed, that Mr. Larian be deposed in July 2006 on only the Mattel v. Bryant matter and that he be deposed on the other issues in a subsequent session. Furthermore, Mattel's counterclaims and the documents attached as Exhibit C, just standing alone, more than amply demonstrate Mr. Larian's personal, unique knowledge regarding the allegations of Mattel's counterclaims.

Please confirm in writing that MGA will produce Mr. Larian for additional deposition questioning and provide proposed dates on which Mr. Larian will be made available. In the alternative, please consider this letter to be a request to meet and confer pursuant to the Order for the Appointment of a Discovery Master on a contemplated motion to compel Mr. Larian's deposition and for sanctions.

I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor /SB

B. Dylan Proctor

EXHIBIT __17__

PAGE __248__

# EXHIBIT 18

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

October 9, 2007

VIA FACSIMILE AND U.S. MAIL

Scott Gizer, Esq.
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

Re:    Mattel, Inc. v. Bryant

Dear Scott:

I write in response to your October 3, 2007 letter regarding the deposition of Isaac Larian, and
also regarding MGA's assertion that Mattel's request for a meet and confer regarding that
deposition somehow "violate Judge Infante's instructions."

First, we are pleased that MGA has now confirmed that it will indeed produce Mr. Larian for
deposition in the *MGA v. Mattel* case, as MGA agreed to do more than a year ago. However,
you state that MGA will not discuss setting Mr. Larian's deposition until all Phase One
depositions have been scheduled. That is improper. The Court has repeatedly held that
discovery in this case is not bifurcated, and Mr. Khan, of your office, explicitly acknowledged
the same at the last conference of counsel regarding deposition scheduling. Accordingly, MGA's
assertion that it can defer discussion of the scheduling of Mr. Larian's deposition indefinitely
because it is a Phase Two deposition is erroneous.

Moreover, your assertion that Mattel is improperly "piecemealing the meet and confer process"
and has somehow violates the Court's instructions is simply incorrect. Judge Infante stated that
he wanted the parties to meet and confer regarding deposition scheduling issues. Mattel has been
doing so and will continue to do so. However, where Defendants persist with their consistent
refusals to provide appropriate discovery and their obstructionism, Mattel fully intends to

EXHIBIT ___18___

PAGE ___249___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2248691.1

continue to pursue its right to discovery. Judge Infante never ordered or suggested that there should be no motion practice on depositions where, as is its habit, MGA stonewalls.

In all events, we are pleased that MGA has agreed to honor its prior commitment to make Mr. Larian available for deposition on the *MGA v. Mattel* case. We look forward to discussing the scheduling of that deposition in a mutually convenient fashion. Please do not hesitate to contact us if you have any questions.

Very truly yours,

B. Dylan Proctor

EXHIBIT _18_

PAGE _250_

# EXHIBIT 19

1 Hon. Edward A. Infante (Ret.)
JAMS
2 Two Embarcadero Center
Suite 1500
3 San Francisco, California  94111
Telephone:      (415) 774-2611
4 Facsimile:      (415) 982-5287

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11

12 CARTER BRYANT, an individual,            CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13                Plaintiff,

14         v.                              Consolidated with
                                           Case No. CV 04-09059
15                                         Case No. CV 05-2727
   MATTEL, INC., a Delaware corporation,
16                                         **ORDER GRANTING IN PART**
                Defendant.                 **MATTEL'S MOTION TO COMPEL**
17                                         **THE CONTINUED DEPOSITION OF**
                                           **ISAAC LARIAN**
18
   CONSOLIDATED WITH
19 MATTEL, INC. v. BRYANT and
   MGA ENTERTAINMENT, INC. v. MATTEL,
20 INC.

21

22                       I. INTRODUCTION

23       On January 22, 2008, Mattel, Inc. ("Mattel") submitted a "Motion to Compel the

24 Continued Deposition of Isaac Larian and to Overrule Instructions Not to Answer."  On January

25 31, 2008, Isaac Larian ("Larian"), MGA submitted an opposition.  On February 5, 2008, Mattel

26 submitted a reply.  Thereafter the parties were directed to meet and confer further regarding the

27 motion, which has been completed. The motion was heard on March 10, 2008.

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT __19__

PAGE __251__

3/10/08

## II. BACKGROUND

Mattel deposed Larian on July 18, 2006 for nearly six hours. Mattel contends that prior to the deposition, the parties agreed that the deposition would proceed on <u>Mattel v. Bryant</u> issues only and that Larian would be made available for another deposition on issues in the <u>MGA v. Mattel</u> suit. Mattel contends that Larian has refused to abide by his agreement, and accordingly seeks an order compelling Larian to appear for another seven hours of deposition. Moreover, Mattel contends that there is good cause to resume his deposition because he is a named party, a key witness and has unique personal knowledge regarding the underlying claims and defenses in the case. Mattel also contends that Larian's "apex" status does not immunize Larian from further questioning. Mattel also seeks an order overruling certain instructions not to answer.

Larian contends that the motion should be denied because (1) he has already been deposed for the time permitted by Rule 30, Fed.R.Civ.P.; (2) Mattel made the tactical decision to depose him at the outset of fact discovery; (3) he is the Chief Executive Officer of MGA and an additional day of deposition would impose a significant burden on him and MGA; (4) Mattel refused to allow MGA to depose Mattel's Chief Executive Officer, Mr. Bob Eckert, for a complete day based on Mr. Eckert's "apex" status; (5) the January 28, 2008 discovery cut-off for Phase 1 discovery has passed; and (6) the Phase 1 trial has not been completed. In the alternative, Larian contends that his continued deposition should be limited in scope to Phase 2 issues; be limited in duration to two-hours; and occur only after the Phase 1 trial.

Further, Larian contends that most, if not all, of the challenged instructions not to answer were proper. Relying on <u>U.S. ex. rel. Bagley v. TRW, Inc.</u>, 212 F.R.D. 554, 564 (C.D. Cal. 2003) and other cases, Larian contends that whether his counsel showed him documents in preparation for his deposition, including how many and which documents counsel showed him, are protected by the work product doctrine.

## III. DISCUSSION

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed.R.Civ.P. 30(d)(1). Exceptions to the "one-day rule" are permitted only upon a

1   showing of good cause. Fed.R.Civ.P. 30(d)(2) Advisory Committee's Note (2000 Amend.)  In

2   assessing whether "good cause" exists, courts are guided by Rule 26(b)(2), Fed.R.Civ.P., which

3   provides that the court shall limit the frequency or extent of use of the discovery methods if the

4   court determines that, among other things, the party seeking discovery has had ample opportunity

5   to obtain the information sought, or if the burden or expense of the proposed discovery outweighs

6   its likely benefit. Fed.R.Civ.P. 26(b)(2).

7         Although Mattel made the tactical decision to depose Larian at the outset of discovery and

8   deposed him for nearly six hours, good cause exists to resume Larian's deposition promptly and

9   without subject matter limitations for a limited duration.  Larian's first deposition was limited to

10  Mattel v. Bryant issues and Larian's prior counsel agreed to produce Larian for another deposition

11  on issues in the MGA v. Mattel case.  Phase 1 discovery is defined more broadly than the Mattel

12  v. Bryant issues insofar as it includes a number of claims in the MGA v. Mattel case, such as

13  Mattel's claims of copyright infringement, conversion and intentional interference with contract.

14  Larian has not yet been deposed on the claims of copyright infringement, conversion and

15  intentional interference with contract.  Thus, Mattel has yet to complete its deposition of Larian

16  on all Phase 1 issues, much less Phase 2 issues.  Judge Larson's recent order confirms that

17  "individual depositions that may be related to both Phase 1 and Phase 2," such as Larian's

18  deposition, "may proceed."

19        Additional time to depose Larian is also warranted because Mattel alleges that Larian was

20  involved in virtually every aspect of the consolidated cases.  Furthermore, for many of the claims

21  in the consolidated cases, Larian's personal knowledge of the relevant facts is unique and superior

22  to other witnesses and sources of information.  Additional time is also warranted because Mattel

23  added new claims after Larian's deposition.

24                                          V. CONCLUSION

25        For the reasons set forth above, Mattel's motion to compel the continued deposition of

26  Larian is granted in part.  Larian shall appear for his continued deposition in Los Angeles no later

27  than March 31, 2008.  The deposition shall not exceed five (5) hours and is not limited in subject

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT   19

PAGE   253

matter.

Further, each of the instructions marked as "Overruled" in Attachment "A" hereto is overruled. Larian is ordered to answer those questions and reasonable follow-up questions at his deposition.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: March 10, 2008

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

4

EXHIBIT 19

PAGE 254

Attachment "A"

INSTRUCTIONS NOT TO ANSWER AT ISSUE DURING THE LARIAN DEPOSITION

| PAGE/LINE | ALLEGED BASES FOR INSTRUCTION | OVERRULED |
|---|---|---|
| 67:15-67:23 | Attorney-Client Privilege Work Product | Overruled |
| 68:17-68:21 | Attorney-Client Privilege | Overruled |
| 69:2-69:10 | Attorney-Client Privilege | Overruled |
| 69:23-70:15 | Attorney-Client Privilege Work Product | Overruled |
| 93:13-93:18 | Attorney-Client Privilege | Overruled |
| 93:20-95:25 | Attorney-Client Privilege | Overruled |
| 96:1-96:11 | Attorney-Client Privilege | Overruled |
| 165:19-166:13 | Work Product | Overruled |
| 167:2-168:7 | Attorney-Client Privilege | Overruled |
| 173:14-174:6 | Attorney-Client Privilege | Overruled |
| 174:8-174:13 | Attorney-Client Privilege | Overruled |
| 174:15-174:19 | Attorney-Client Privilege | Overruled |
| 174:21-174:24 | Attorney-Client Privilege | Overruled |
| 191:25-192:6 | Attorney-Client Privilege Work Product | Overruled |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT __19__

PAGE __255__

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on March 10, 2008, I served the attached:  (1) ORDER GRANTING IN PART MATTEL'S MOTION TO COMPEL THE CONTINUED DEPOSITION OF ISAAC LARIAN; (2) ORDER DIRECTING MATTEL TO SUBMIT DOCUMENT NOS. M0199767-68 AND M0199769-70 FOR IN CAMERA REVIEW; GRANTING MOTION TO COMPEL PRODUCTION OF "NHB" DOCUMENTS; (3) ORDER GRANTING CARTER BRYANT'S MOTION TO QUASH MATTEL'S SUBPOENA TO PEOPLES BANK OF THE OZARKS; AND (4) ORDER DENYING MATTEL'S MOTION TO COMPEL A COMPLETE RESPONSE TO MATTEL'S SUPPLEMENTAL INTERROGATORY RE TEST PROJECTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on March 10, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT ___19___

PAGE ___256___

# EXHIBIT 20

**THE EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 21

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10             EASTERN DIVISION
11

| 12 | MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
|----|---------------|--------------------------------|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 | MGA ENTERTAINMENT, | Hon. Stephen G. Larson |
| 16 | Defendant. | **FINAL VERDICT FORM AS GIVEN** |
| 17 | | |
| 18 | AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25                    EXHIBIT __21__
26
27                    PAGE __272__
28

07209/2554627.7

7-17

# VERDICT FORM

We answer the questions submitted to us as follows:

## Timing of Tangible Items

1.   For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|----|----|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

EXHIBIT ___21___

PAGE ___273___

-1-

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

07209/2554627.7

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

EXHIBIT __21__

PAGE __274__

07209/2554627.7

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|----|----|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT __21__

PAGE __275__

3.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

EXHIBIT __21__

PAGE __276__

-4-    Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

1       4.    For each of the items listed below, has Mattel proven by a

2   preponderance of the evidence that the item was "conceived or reduced to practice"

3   — that is, created — by Carter Bryant, alone or jointly with others, during the

4   period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

6                    **Trial Exhibit No.**           YES    NO

7       The Three Dimensional Item Presented at Pitch   X   _____

8                       Meeting

9

10                    Trial Exhibit 1136        X   _____

11

12                       **Timing of Ideas**

13

14       5.    Has Mattel proven by a preponderance of the evidence that Carter

15   Bryant conceived the "Bratz" characters while employed by Mattel?

16       Yes   X

17       No   _____

18

19

20       6.    Has Mattel proven by a preponderance of the evidence that Carter

21   Bryant conceived the name "Bratz" while employed by Mattel?

22           Yes   X

23           No   _____

24

25

26                                              EXHIBIT _____ 21

27

28                                             PAGE _____ 277

## Intentional Interference with Contractual Relations

7.   Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional interference with contractual relations?

     Yes   _X_

     No    ___

8.   Is Isaac Larian liable to Mattel for intentional interference with contractual relations?

     Yes   _X_

     No    ___

## Aiding and Abetting Breach of Fiduciary Duty

9.   Is MGA liable to Mattel for aiding and abetting breach of fiduciary duty?

     Yes   _X_

     No    ___

10.  Is Isaac Larian liable to Mattel for aiding and abetting breach of fiduciary duty?

     Yes   _X_

     No    ___

## Aiding and Abetting Breach of the Duty of Loyalty

11.  Is MGA liable to Mattel for aiding and abetting breach of the duty of loyalty?

     Yes   _X_

     No    ___

EXHIBIT ___21___

PAGE ___278___

07209/2554627.7

-6-

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

12. Is Isaac Larian liable to Mattel for aiding and abetting breach of the duty of loyalty?

Yes  _X_

No  ____

**Conversion**

13. Is MGA liable to Mattel for conversion?

Yes  _X_

No  ____

14. Is Isaac Larian liable to Mattel for conversion?

Yes  _X_

No  ____

15. Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

Yes  _X_

No  ____

Once this verdict form is completed, the foreperson of the jury should sign and date on the lines below.

DATED: _July 17_, 2008

_____
Presiding Juror

EXHIBIT __21__

PAGE __279__

07209/2554627.7

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

# EXHIBIT 22

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-09049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>ORDER GRANTING DECLARATORY JUDGMENT |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT __22__

PAGE __280__

<u>ORDER</u>

1.    The Court hereby DECLARES that Mattel owns all right, title and
interest, including any and all copyright rights, in and to the Bratz-related works,
ideas, and concepts that Carter Bryant conceived or created while employed by
Mattel, as found by the jury in this case, including the idea for the name "Bratz" and
the idea for the "Bratz" characters, which are protectible property interests as a
matter of California state law, and the following works (identified by Trial Exhibit
(TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

07209/2641997.3

-2-

[PROPOSED] ORDER

EXHIBIT __22__

PAGE __281__

| | |
|---|---|
| 1 | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| 2 | TX 5-63, 758, 759, 760 |
| 3 | TX 5-64, 62-6, 795, 1152-14, 1750 |
| 4 | TX 5-65, 1152-7, 1152-8, 11789 |
| 5 | TX 5-66, 794, 1152-13 |
| 6 | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| 7 | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| 8 | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| 9 | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| 10 | TX 5-73, 741, 742 |
| 11 | TX 5-76, 706 |
| 12 | TX 5-77, 707 |
| 13 | TX 5-78, 10539, 18501 |
| 14 | TX 5-136, 711 |
| 15 | TX 10579, 18281 |
| 16 | TX 15172 |
| 17 | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| 18 | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| 19 | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| 20 | TX 3-5, 791, 1-8, 2-2 |
| 21 | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| 22 | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| 23 | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| 24 | TX 3-10, 735, 736 |
| 25 | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| 26 | TX 3-13, 793, 1-5, 2-3, 10-3 |
| 27 | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| 28 | TX 1-2 |
| | TX 3-11, |

[PROPOSED] ORDER

EXHIBIT __22__

PAGE __282__

| |
|---|
| TX 5-26, 712 |
| TX 5-27, 713 |
| TX 5-81, 720 |
| TX 5-82, 715 |
| TX 5-83, 723 |
| TX 3-4, 5-84, 716, 717 |
| TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| TX 5-80, 721, 722, 5-86 |
| TX 5-87, 5-108, 724, 725 |
| TX 5-34 |
| TX 5-89, 35-2, 323-32, 323-33 |
| TX 1107, 10638 |
| TX 1108, 10639 |
| TX 1109, 771 |
| TX 1110, 773 |
| TX 5-14, 10515 |
| TX 5-18, 10518 |
| TX 5-19, 10519 |
| TX 5-28, 10526 |
| TX 5-30 |
| TX 5-95 |
| TX 5-96 |
| TX 5-99 |
| TX 323-18 |
| TX 323-19 |
| TX 323-26 |
| TX 1136 |
| The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

-4-

[PROPOSED] ORDER

EXHIBIT __22__

PAGE __283__

1      2.    The Court further hereby DECLARES that MGA Entertainment Inc.
2  ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do
3  not have any right, title or interest in or to the works, ideas and/or concepts listed
4  above. Any purported assignment from Carter Bryant to MGA of the rights to the
5  works, ideas or concepts listed above, including any purported assignment of such
6  rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,
7  2000, was invalid, ineffectual and void ab initio.
8      3.    In addition, the Court hereby ORDERS that all copyright registrations
9  MGA has obtained in and for the Bratz works listed above, including Registration
10  Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-
11  218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491
12  (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have
13  been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such
14  registrations.
15      4.    The Court further hereby ORDERS that all Bratz-related works listed
16  in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that
17  Defendants shall deliver the originals of such works to Mattel forthwith.
18      IT IS SO ORDERED.
19
20
21  DATED:  December 3, 2008
22      Hon. Stephen G. Larson
    United States District Judge

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT 22

PAGE 284

# EXHIBIT 23

1
2
3
4
5
6
7
8      UNITED STATES DISTRICT COURT
9      CENTRAL DISTRICT OF CALIFORNIA
10     EASTERN DIVISION
11

| | |
|---|---|
| 12  MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13      Plaintiff, | Consolidated with |
| 14  vs. | Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx) |
| 15  MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16      Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27                                          EXHIBIT __23__
28                                          PAGE __285__

07209/2609529.2209/260
584.2

PHASE B VERDICT FORM AS GIVEN

## VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

### I.  Damages for Phase A Claims

(Answer all four questions in this section.)

#### Intentional Interference With Contractual Relations

1.     In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $   20 MILLION

As to Mr. Larian:  $   10  MILLION

#### Aiding and Abetting Breach of Fiduciary Duty

2.     In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $   20 MILLION

As to Mr. Larian:  $   10  MILLION

#### Aiding and Abetting Breach of the Duty of Loyalty

3.     In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $   20 MILLION

As to Mr. Larian:  $   10  MILLION

EXHIBIT **23**

PAGE **286**

-2-

PHASE B VERDICT FORM AS GIVEN

07209/2609529.2608584.1

## Conversion

4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:                    $ _31,500 PLUS 7% INTEREST_

As to Mr. Larian:            $ _0_       CALCULATED FROM

As to MGA Hong Kong: $ _0_       THE DATE MATTEL'S

PROPERTY WAS
CONVERTED.

EXHIBIT _23_

PAGE _287_

-3-

PHASE B VERDICT FORM AS GIVEN

## II. Copyright Infringement

5. Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

Yes    X

No    ____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6. Was MGA's copyright infringement willful?

Yes    ____

No    X

Answer Question 7.

7. Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

Yes    X

No    ____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8. Was Mr. Larian's copyright infringement willful?

Yes    ____

No    X

Answer Question 9.

9. Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

Yes    X

EXHIBIT __23__

PAGE __288__

-4-

PHASE B VERDICT FORM AS GIVEN

07209/2609529.2608584

1    No ____

2    If your answer is "yes," then answer Question 10.

3    If your answer is "no," then answer Question 11.

4

5    10.   Was MGA Hong Kong's copyright infringement willful?

6          Yes ____

7          No   X

8    Answer Question 11.

9

10   11.   What amount of damages, if any, should be awarded to Mattel for the

11   defendants' copyright infringement?

12   (a)   Copyright Infringement by MGA

13         $   6 Million

14   (b)   Copyright Infringement by Isaac Larian

15         Distributions Mr. Larian received from MGA attributable to Bratz-

16         related works:

17         $   3 Million

18         Value of Mr. Larian's ownership percentage of MGA attributable to

19         Bratz-related works:

20         $   0

21   (c)   Copyright Infringement by MGA Hong Kong:

22         $   1 Million

23

24

25

26

27                                          EXHIBIT 23

28                                          PAGE 289

07209/2609529.2608584

-5-

PHASE B VERDICT FORM AS GIVEN

### III.  Punitive Damages

12.   Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

      Yes   ____

      No    X

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.   What amount of punitive damages, if any, should be awarded against MGA?

      $ _____ 0 _____

Answer Question 14.

14.   Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

      Yes   ____

      No    X

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.   What amount of punitive damages, if any, should be awarded against Mr. Larian?

      $ _____ 0 _____

Answer Question 16.

16.   Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

      Yes   ____

EXHIBIT **23**

PAGE **290**

-6-

PHASE B VERDICT FORM AS GIVEN

1      No    X

2      If your answer is "yes," then answer Question 17.

3      If your answer is "no," then answer Question 18.

4

5      17.    What amount of punitive damages, if any, should be awarded against

6    MGA Hong Kong?

7           $_____

8      Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              EXHIBIT **25**

28                                              PAGE **291**

PHASE B VERDICT FORM AS GIVEN

## IV.  Fraudulent Concealment

(Answer all five questions in this section.)

18.    Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

       Yes   _X_

       No   ____

19.    Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

       Yes   ____

       No   _X_

20.    Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

       Yes   _X_

       No   ____

21.    Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?.

       Yes   ____

       No   _X_

EXHIBIT _23_

PAGE _292_

07209/2609529.2608584

-8-

PHASE B VERDICT FORM AS GIVEN

1        22.     Has Mattel proven by a preponderance of the evidence that MGA Hong

2 Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3 until at least April 27, 2001?

4             Yes     ____

5             No     _X_

6

7        Once this verdict form is completed, the foreperson of the jury should sign

8 and date on the lines below.

9

10 DATED: *August 26, 2008*

                                       /s/

                              Jury Foreperson

EXHIBIT **23**

PAGE **293**

PHASE B VERDICT FORM AS GIVEN

07209/2609529.2608584

# EXHIBIT 24

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | CV 04-09049 SGL(RNBx) | Date: December 3, 2008 |
| Title: | MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al. | |

==========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

James Holmes                                    None Present
Courtroom Deputy Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                    None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

EXHIBIT 24

PAGE 294

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

EXHIBIT __24__

PAGE __295__

dolls while working as an employee of Mattel and while bound by the terms of an Inventions
Agreement, which provided that all rights to such property, and the property itself, belong to Mattel.
Moreover, the Court further finds, as did the jury, that the preponderance of the evidence
establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations
with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted
Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel.
Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the
MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion
dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA
parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel,
and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as
to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1)
lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v.
Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither
element.

Because the Court has already found that all the claims asserted against the MGA parties
were filed within the applicable limitations periods, the Court starts with the presumption that
laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.
2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has
already found, based on the undisputed evidence, that Mattel had no reason to know of its claims
against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA
and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE
intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004.
See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a
significantly protectable interest relating to the subject matter of the action, . . . and that MGA's
interest is not adequately represented by the existing parties."). Thereafter, the parties briefed
Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a
stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]   By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase
1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses
that they have not already expressly waived.

MINUTES FORM 90
CIVIL -- GEN                                3                    Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __296__

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN                                    4                         Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __297__

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90
CIVIL – GEN                                      5                          Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __298__

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.   Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL – GEN                                    6                        Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __299__

follows:  "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)).  However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.     § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]     Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

EXHIBIT __24__

PAGE __300__

Case 2:04-cv-09049-DOC-RNB   Document 5977-4   Filed 07/18/09   Page 49 of 101   Page ID
#:195744
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and
abetting breaches of fiduciary duty and the duty of loyalty, and conversion).  The jury's finding in
favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified
element of harm to Mattel and, as explained in more detail below, the Court is bound by that
implicit factual finding. <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th
Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the
plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act.
The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at
issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously
interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary
duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof.
Code § 17200.

### C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate
injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may
> be enjoined in any court of competent jurisdiction.  The court may make
> such orders or judgments, . . . as may be necessary to prevent the use
> or employment by any person of any practice which [either] constitutes
> unfair competition, . . . or as may be necessary to restore to any person
> in interest any money or property, real or personal, which may have
> been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to
restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified,
Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court
trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                    8                        Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __3o/__

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __302__

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's
damage award to a rug that, no matter which way one moved it, simply would not cover the floor.
See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion
or the other and, regardless of which conclusion was chosen, the jury's finding did not support an
injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money.  You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products.  And the jury has put that cap for
> us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound
by a jury's factual finding in a case where only two possible inferences -- both of which would lead
the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an
expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as
here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the
Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary
injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in
Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and
6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15,
2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the
sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive
elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is
rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the
only reasonable conclusion to draw is that the jury's infringement finding was limited to a small
universe of products, specifically the first generation Bratz dolls as clothed and packaged.")
(emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to
explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total
copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10
million total) rather than simply the $4 million] argued by MGA as profits for the first generation
may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million
revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings
can be inferred from the jury's copyright infringement award and why the Court is obligated to
make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN                                    10                    Initials of Deputy Clerk: jh

EXHIBIT __24__

PAGE __303__

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk: jh

EXHIBIT ___24___

PAGE ___304___

that hundreds of the MGA parties' products -- including all the currently available core female
fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties
have evinced an intention to continue marketing those dolls. This represents a wholesale inability
on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to
irreparable harm.  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir.
2005).

        MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v.
Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case
holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not
permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

                [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
                conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
                958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
                to control the use of its copyrighted materials, . . . irreparable harm
                inescapably flows from the denial of that right."   In substance, such
                language is nothing more than a disguised presumption, particularly
                with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
                on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor
court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably"
in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a
review of the Taylor case makes clear that the Eighth Circuit considered the implications of
allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a
request for injunctive relief could otherwise "amount to a forced license to use the creative work of
another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the
application of a "disguised presumption" of irreparable harm and closer to an actual finding of
irreparable harm.

        At least one district court within the Ninth Circuit is in accord with the Court's decision today,
as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of
future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008
WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

                Whatever else might be said against the propriety of a rule that holds
                that past infringement plus the threat of future infringement equals
                irreparable harm, it seems clear to this Court that such a rule would not
                run afoul of eBay's directives. First of all, the eBay Court did not
                address the showing necessary to establish "irreparable harm." It
                merely held that the plaintiff has the burden of proving it. Second, this
                two-part test does not resurrect the presumption of irreparable harm
                impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT __24__

PAGE ___305___

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright.*" 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.   Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.   Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT   24

PAGE   306

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern. However, there is also a strong public interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law. Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement. The injunction issued by the Court does no more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them. Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little. In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7] No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk: jh

EXHIBIT  24

PAGE  307

Case 2:04-cv-09049-DOC-RNB   Document 5977-4   Filed 07/18/09   Page 56 of 101   Page ID
#:195751
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 15 of 17

### 3.   Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.   Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT __24__

PAGE __3•8__

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT __24__

PAGE __309__

Case 2:04-cv-09049-DOC-RNB   Document 5977-4   Filed 07/18/09   Page 58 of 101   Page ID
#:195753
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 17 of 17

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

EXHIBIT __24__

PAGE __31 0__

# EXHIBIT 25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: January 7, 2009

Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

            Jim Holmes                          None Present
            Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:    **ORDER MODIFYING STAY OF PERMANENT INJUNCTION**

                **ORDER APPOINTING FORENSIC AUDITOR**

      After an initial hearing on December 30, 2008, and a sealed hearing on January 5, 2009, and after consideration of the parties' papers relating to the MGA parties' motion for stay pending appeal (which specific relief the Court denied for the reasons stated on the record), and after consideration of the parties' papers relating to Mattel's ex parte application to appoint a receiver, the Court issues the following Order modifying the stay set forth in the Court's December 3, 2008, Order, and appointing a forensic auditor.

                **MODIFYING STAY OF PERMANENT INJUNCTION**

      Notwithstanding any previous Order of the Court, the December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4439), shall remain **STAYED**, ineffective and non-final, until further order of the Court.  Specifically, retailers and distributors will be permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009.

      In the event that the Court awards control over the rights to the Bratz products referenced in the Court's December 3, 2008, Order and the January 7, 2009 Stipulation and Order (regarding

MINUTES FORM 90                                      Initials of Deputy Clerk __jh_____
CIVIL -- GEN                      1

EXHIBIT **25**

PAGE **311**

the Spring and Fall 2009 lines) to a Court-appointed receiver or to Mattel, Inc., that award will be
subject to a requirement that retailers and distributors be permitted to purchase the Spring and
Fall 2009 lines up to and including December 31, 2009.

### APPOINTMENT OF FORENSIC AUDITOR

As discussed on the record, the Court **HOLDS IN ABEYANCE** Mattel's ex parte application
for appointment of a receiver pending a forensic audit of MGA Entertainment, Inc., Isaac Larian,
and MGA Entertainment Hong Kong.

For good cause shown, the Court hereby **APPOINTS** Ronald L. Durkin to serve as the
Court's forensic auditor (hereinafter referred to as "the Auditor"). Mr. Durkin's qualifications appear
in an attachment to this Order. The Court has provided the Auditor with the parties' attorneys'
contact information. The Auditor shall direct his initial communications to counsel.

Defendants MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment Hong Kong,
shall provide the Auditor with access to any and all MGA records, regardless of the medium or
media of the maintenance of those records, **including but not limited to the
"Document/Information Request List" attached to this Order,** that the Auditor deems
necessary to enable him to provide the Court with a report, in camera, regarding MGA's finances
sufficient to enable the Court to determine whether or not appointment of a receiver is warranted.
The audit shall extend to any and all related entities as the Auditor deems necessary. Defendants
shall also make available for interview individuals identified to them by the Auditor. Defendants
shall make its computer systems, physical premises, and offices, available to the Auditor upon his
reasonable request during normal business hours. Defendants shall permit the Auditor's
reasonable use of its office machines, such as copiers and fax machines, as may be necessary to
complete the audit.

The Auditor shall have the authority to seek the services of fellow professionals (as well as
para-professionals and support staff) necessary to accomplish the Court-appointed audit. The
provisions of this Order extend to the Auditor's delegatees as he so directs. The Auditor and his
delegatees shall be compensated at their reasonable customary hourly rates.

The expense of the forensic audit shall be borne, in the first instance, by Mattel. After the
Court considers the Auditor's report[s], the Court will consider whether the audit expenses should
be shared with, or shifted completely to, defendants, based on the equities. The Auditor and his
team shall submit periodic billing statements to Mattel to an address specified by Mattel's counsel.

All parties (and individuals and entities under their control) shall cooperate with the Auditor
so that he may report to the Court in an expeditious manner.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                      2                Initials of Deputy Clerk __jh_____

EXHIBIT __25__

PAGE __312__

i

### FORENSIC AUDITOR
### DOCUMENT/INFORMATION REQUEST LIST
### January 7, 2009

1.      Audited financial statements for the last three years.  If audited financial statements are not available, then the most current draft of financial statements for the last three years.

2.      Quarterly financial statements for the last three years.

3.      Detailed electronic monthly general ledgers and trial balances for the last three years. If electronic files are not available, then please produce in hard copies.

4.      Detailed electronic revenue or sales subsidiary ledgers for the last three years.  If electronic files are not available, then please produce the request in hard copies.

5.      Detailed electronic receipts or cash subsidiary ledgers for the last three years.  If electronic files are not available, then please produce in hard copies.

6.      Detailed electronic accounts payables and disbursements subsidiary ledgers for the last three years.  Details should include, but should not be limited to, vendor/payee ID, vendor/payee name, check/payment number, payment date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), payment amount, currency indicator (if other than US dollars), foreign exchange rate (if other than US dollars), invoice number, invoice date (Standard Mask, i.e. MM/DD/YY, MM/DD/YYYY; not Jan 1, 2005), invoice amount, comment or description, and any other information contained in the file. If electronic files are not available, then please produce in hard copies.

7.      Detailed electronic vendor master files of all active and inactive vendors for the last three years.  Details should include, but should not be limited to, vendor ID, vendor name, status (active/inactive), vendor address (including City, State, Zip, Country), date created, created by user ID. If electronic files are not available, then please produce in hard copies.

8.      Detailed electronic payroll files for the last three years.  Details should include, but not be limited to, employee ID, employee name, payment date, payment number, deductions (e.g. tax, contributions, etc.), gross payment amount, net payment amount, and any other information contained in the file.  If electronic files are not available, then please produce in hard copies.

9.      Any and all records that substantiate transfers of assets to other entities, individuals, and/or parties, within the US and outside of the US.

10.     Copies of all bank statements, canceled checks, wire instructions, and all other information and notices sent with bank statements for the last three years.

MINUTES FORM 90                            3                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN

EXHIBIT __25__

PAGE __313__

i

Case 2:04-cv-09049-SGL-RNB     Document 4657     Filed 01/0?/2009     Page 4 of 10

11.   Federal and state tax returns for the last three years.

12.   A summary of all contributions, loans and any sources of funding during the last twelve months.  Copies of agreements and/or contracts supporting these transactions.

13.   A summary of all related party transactions detailing any compensation, loans, advances, payments, fees or any other form of consideration paid to Isaac Larian, family members, or affiliates, or any other related party.

14.   Detail of all loan facilities with an indication of creditor and relevant terms.

15.   Copies of any notices from federal or state tax authorities regarding audits or audit adjustments during the last 3 years.

16.   All detailed corporate credit card statements for the last three years.  If electronic files are not available, then please produce in hard copies.

17.   Information and documents regarding expense reimbursement of owners, officers, employees, family members, or affiliates.

18.   Detailed human resources files (electronic) of all employee information (for all current and terminated employees to date) including but not limited to employee name, employee number, address, phone number, start date, termination date, status, position, social security number, and any other information contained in the files.  If electronic files are not available, then please produce in hard copies.

19.   Electronic files of all emails including attachments to the emails from the network server and from backup tapes (please identify dates of backup tapes in order for selection of time period).

20.   Forensic images of personal computer hard drives and PDAs of selected individuals.

Initials of Deputy Clerk __jh_____

EXHIBIT __25__

PAGE __314__





**Ronald L. Durkin**
CPA/CFF, CFE, CIRA

**Senior Managing Director**

619 481 5201

rdurkin@durkinforensic.com

701 B Street Suite 1310
San Diego, CA 92101

Ronald L. Durkin is a CPA with over 30 years combined experience in public accounting and as a Special Agent with the FBI. He has testified in accounting, financial, and bankruptcy matters in U.S. District Court, U.S. Bankruptcy Court, U.S. Tax Court and in various State courts. During his tenure with the FBI, Ron was responsible for investigations involving white collar crime, political and public corruption, money laundering, organized crime, labor racketeering, racketeer-influenced and corrupt organization statute (RICO) violations, and narcotics matters. Since leaving the FBI, he has assisted clients in matters involving fraud prevention, detection, and internal investigations. He has worked on cases involving Foreign Corrupt Practices Act, employee embezzlement, management fraud, financial statement fraud, conflict-of-interest, check kiting, bankruptcy fraud, money laundering, and Ponzi schemes.

In 2008 Ron retired from KPMG. While at KPMG, Ron was the National Partner in Charge of the Fraud and Misconduct Investigations practice and served as the Western Region's forensic practice leader as well as the office coordinating partner for the Los Angeles office's forensic practice.

EXHIBIT 25

PAGE 315



## Service Lines

Fraud & Misconduct Investigations
Fraud Risk Management
Forensic in the Audit/Shadow Procedures

## Education and Certifications

Bachelor of Science, Accounting,
California State University, Sacramento

Masters of Business Administration
(Emphasis in Accounting), California
State University, Sacramento

Certified Public Accountant,
licensed in California, Arizona,
Nevada, and Washington

Certified in Financial Forensics

Certified Fraud Examiner

Certified Insolvency and
Restructuring Advisor

He is a frequent speaker at the FBI Academy and at the AIC-PA National Fraud Conference, California and other State CPA Societies, and he has made presentations to the IRS Criminal Investigative Division and the U.S. Postal Inspectors CPA seminars. He is a member of the AICPA National Accreditation Commission and a former member of the Business Valuation and Forensic Litigation Services Executive Committee. He is the former chair of the AICPA Anti-Fraud Programs and Controls Task Force and past chair of the AICPA Litigation and Dispute Resolution Services Subcommittee. Ron is also the Chair of the California Society of CPA's Litigation Services Steering Committee and the past Chair of the California Society of CPAs Fraud Section.

Ron was a 2003 AICPA Volunteer of the Year. Ron was also honored with the Distinguished Achievement Award by the AICPA in 2006 for his long time commitment to the AICPA. In 2007, Ron was awarded the first-ever FLS Lifetime Achievement Award by the AICPA.

EXHIBIT __25__

PAGE __316__

i



## Professional Associations

American Institute of Certified Public Accountants (Immediate Past Chair of Litigation & Dispute Resolution Services Subcommittee) – member since 1995

California Society of Certified Public Accountants (member of Steering Committee for statewide Litigation Services Sections and Chair of Fraud Section)

Association of Certified Fraud Examiners (Member of Faculty since 1995)

Association of Insolvency and Restructuring Advisors

Society of Former Special Agents of the FBI

Institute of Internal Auditors

## Investigative and Integrity Advisory Experience

On an International level, he has worked on a number of matters involving alleged Foreign Corrupt Practices Act (FCPA) violations. Working on behalf of U.S. based companies, Ron investigated allegations that members of management of foreign subsidiaries were involved in either bribing foreign officials, diverting corporate opportunities and funds, or conspiring with others to defraud U.S. based victims.

Conducted an investigation of certain allegations of political and public corruption surrounding an International sporting event that was to be held in the US. The allegations involved FCPA, bribery, and public corruption.

Conducted an investigation of an alleged kickback scheme on the part of a purchasing manager of a global technology company.

Conducted an internal investigation with a multi-national corporation regarding corruption involving a former manager in the accounts receivable department. The case was referred to the United States Attorney's Office and the FBI for prosecution.

EXHIBIT __25__

PAGE __317__



Conducted an internal investigation, on behalf of a publicly
traded company, regarding alleged diversion of funds with the
accounts payable department. The case was referred to the
United States Attorney's Office and the FBI for prosecution.

Investigated allegations of fraud in the real estate industry, in-
cluding new construction projects, as well as management and
operation of office buildings, apartment buildings and shop-
ping centers.

Investigated allegations of corruption by certain members of a
County Board of Supervisors who were indicted by a Federal
Grand Jury.

Served as an undercover agent in a case involving 35 State
Court Judges who were indicted and convicted of public corruption.

Conducted a number of investigations of cases involving Pyra-
mid and Ponzi schemes. He also has testified in U.S. District Court,
State Court, and Bankruptcy Court in several of these cases.

During career with the FBI and as a bankruptcy trustee, inves-
tigated allegations of fraud, corruption and organized crime
within the solid waste industry.

EXHIBIT __25__

PAGE __318__



As the Chapter 11 Trustee of two failed insurance agencies, he conducted investigations into allegations of fraud and mis-management on the part of senior management.

As a Chapter 7 Trustee, Chapter 11 Trustee, and Examiner in bankruptcy matters, has conducted hundreds of investigations where allegations of fraud have been alleged.

Served as a "keeper" for the Department of Corporations, investigated a State securities fraud matter.

Served as trustee of the parent of one of the largest financial institutions in California where securities fraud and other actions were alleged against senior management.

EXHIBIT __25__

PAGE __319__



## Publications

One of the principal authors of the AICPA Practice Aid 07-1 – "Forensic Accounting – Fraud Investigations" (2007)

Chair of the AICPA Forensic Procedures Task Force responsible for the writing of the "Forensic Procedures and Specialists: Useful Tools and Techniques" – AICPA Special Report, 2006

Chair of the AICPA Antifraud Programs and Controls Task Force responsible for the writing of "Management Override of Internal Controls: The Achilles' Heel of Fraud Prevention" – AICPA Practice Aid, 2005

Principal author – AICPA Technical Consulting Practice Aid 97-1 "Fraud Investigations in Litigation and Dispute Resolution Services"

Co-author – California Society of CPA "The Witness Chair" – SAS 99 – Is It Enough To Help Close the Expectation Chasm? (2003)

Author – "A Systematic Approach to Fraud Investigation" – The CPA Expert, Spring 2000 (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Co-author – "Defining the Practice of Forensic Accounting" The CPA Expert, 1999 Special Issue (AICPA Newsletter for providers of Business Valuation and Litigation Services)

Contributing and Reviewing author to Guide to Fraud Investigations published by Practitioners Publishing Company

Contributing author to Handbook of Litigation Services for John Wiley and Sons. The chapter written by Mr. Durkin is entitled "Criminal Cases and the Investigative Accountant."

Book review of Investigating White Collar Crime: Embezzlement and Financial Fraud for "CPA Management Consultant".

EXHIBIT __25__

PAGE __320__

i

# EXHIBIT 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=================================================================
PRESENT:    HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                          None Present
        Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
PLAINTIFFS:                        DEFENDANTS:

None Present                       None Present

PROCEEDINGS:    ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
                MATTER OF LAW (DOCKET #4498)

                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
                #4496)

                ORDER AMENDING IN PART ORDER RE FINDING OF
                LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
                (DOCKET #4441);

                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                MOTION FOR REMITTITUR (DOCKET #4495, #4523)

                ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

                ORDER FOR ACCOUNTING OF PROFITS OF
                BRATZ PRODUCTS

                ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1

EXHIBIT 26

PAGE 321

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11, 2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF PERMANENT RECEIVER**

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on [an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel acknowledges that the judgment it seeks would alter neither the jury's damages award nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an alternative basis for the relief it has already been awarded. Without ruling on the merits of the argument, the Court declines to adopt this alternative basis because it is not necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict, found that the Bratz dolls infringed Mattel's copyrights, but the scope of that infringement was not explicitly found by the jury. Even if the Court were to grant the relief sought by Mattel, the amount the jury awarded for copyright infringement, $10 million, would be unchanged. Moreover, the Court, sitting in equity, made an express factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore **DENIED**.

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __322__

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt.  This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate.  Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate.  This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows: MGA Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

MINUTES FORM 90
CIVIL -- GEN                                          3

Initials of Deputy Clerk __cls_____

EXHIBIT __26____

PAGE __323__

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of
loyalty. Relatedly, they also seek judgment as a matter of law that the damages
awarded as to the state-law claims are precluded as preempted because they represent
damages awarded under the theory of disgorgement, which was also awarded as part
of copyright damages. The Court has previously rejected the argument that copyright
law preempts the two aiding and abetting claims, and the Court leaves undisturbed its
previous holding on this issue. As for the related argument regarding damages, to
accept the MGA parties' argument, the Court would have to reject the current, firmly
established standard for determining if a state-law claim is preempted in favor of a new
standard that would find preemption any time the relief sought by the state-law claim is
also redressable by a copyright claim. This Court must follow the enunciated standard
for copyright law preemption, and it therefore rejects the MGA parties' argument
regarding this issue. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding
and abetting breach of fiduciary duty and the duty of loyalty is preempted by the
California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial
conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415
F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its
damages as to each of its state-law claims. Mattel proceeded on a theory of recovery
that sought disgorgement of the MGA parties' profits rather than another measure of
damages; there was ample evidence presented by both sides regarding the MGA
parties' profits. The Court has previously rejected, and does not now revisit, the MGA
parties' contention that the proper measure of damages for aiding and abetting Carter
Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by
Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim,
as set forth infra, the Court has remitted the monetary damages awarded by the jury in
favor of the equitable relief awarded by the Court in the form of return of the original
drawings.[3] This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that
the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach
thereof. Admittedly, there is an absence of direct evidence, such as an admission by
Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's
fiduciary duty or breach thereof. But the indirect evidence relevant to this issue
admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had
an understanding that Carter Bryant had such an obligation as well as the parameters of
such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk ___cls_____

EXHIBIT __26__

PAGE __324__

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz." To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits. The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement. California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls. Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument. The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

EXHIBIT 26

PAGE 325

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *__after__* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

EXHIBIT __26__

PAGE __326__

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00.  The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings.  The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard."  D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).  One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur.  Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence.  If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . .  But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __327__

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365.  The standard is exceptionally deferential to the jury's findings.  If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative.  This is not a completely unappealing argument.  For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian.  Totaled, this award is $90 million.  Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times.  Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation.  The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount.  The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5]  A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v. Asbury Automotive Group, LLC  2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6]  The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __328__

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **_must_** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **_meant_** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __329__

Order and the jury's specific findings supports the MGA parties' position that the $10
million awarded as to Isaac Larian for the claim of intentional interference with
contractual relations should be remitted because, in the absence of a fraudulent
concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court
that its legal conclusion regarding the non-application of the discovery rule to tortious
interference claims was in error and was, in fact, not an argument advanced by the
parties in their summary judgment papers. Only very rarely will a court entertain an oral
motion for reconsideration; rarer still are those occasions when such a motion is
granted. However, such a result is warranted here where the Court's previous legal
conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for
"intentional interference with a contract accrues no later than the date of the contract's
breach," implying – at least in the Court's view at the time of its review of the motion –
that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The
authority they cite supports the general rule regarding the accrual date of a tortious
interference claim, but the authority does not support the Court's more specific
conclusion that the discovery rule is inapplicable to claims for tortious interference. See
Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule
to a tortious interference claim but doing so on the basis that the plaintiff made judicial
admissions that were inconsistent with the application of the rule); Trembath v. Digardi,
43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious
interference claim as to an attorney-client contingency fee contract extended beyond
the date of the breach to the suggested accrual date of the client's actual recovery, but
not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531
(N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim
because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox
Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious
interference claim in relation to when damages are incurred and when a plaintiff may
seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228
Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the
discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply
the discovery rule because the facts of the case do not warrant it; these cases do not
stand for the broader conclusion reached by the Court in its prior order that the
discovery rule is inapplicable to **all** tortious interference claims, regardless of the factual
circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of
America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion
claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to
toll the statute, it has only been when the defendant in a conversion action fraudulently
conceals the relevant facts or where the defendant fails to disclose such facts in

MINUTES FORM 90
CIVIL -- GEN                                    10                    Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __330__

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

EXHIBIT __26__

PAGE __331__

The Permanent Injunction Order contemplates the Court's appointment of a
Special Master to resolve issues and disputes relating to the enforcement of the
Permanent Injunction Order.  At this point, in the absence of any such disputes, the
Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation
as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment
Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on
August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties'
equitable claims and equitable relief (especially the Court's Omnibus Order defining the
parameters of the scope of copyright infringement, the Court's Order Granting Mattel's
Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for
Constructive Trust), and in light of this Order rejecting in all material respects the MGA
parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's
legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court,
and serve on all parties, no later than thirty days from the entry of this Order, a full
accounting of all profits that have resulted from all sales, occurring after August 26,
2008, of all products that fall within any of the Court's December 3, 2008, Orders
referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a
joint status report setting forth the position of all interested parties on how they wish to
proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order,
Mattel and the MGA parties jointly lodged a laptop computer from which the Court could
easily access the Phase 1A and 1B trial transcripts.  Counsel are advised to contact the
courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously
sealed record in these consolidated cases.  That Order related only to documents filed
on or before May 27, 2008.  Certain specific documents, identified by the parties by
docket number and found by the Court to have good cause to remain sealed, were not
unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and
confer process to significantly narrow, if not eliminate the under seal nature of the filings

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            12

EXHIBIT __26__

PAGE __332__

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90
CIVIL -- GEN

13

Initials of Deputy Clerk __cls_____ .

EXHIBIT **26**

PAGE **333**

status as a secured creditor of MGA."  See Ex Parte Application to Intervene (docket #4761) at 1.  This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene.  The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id.  The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements.  Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id.  Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation.").  However, this particular request for intervention is not one that falls into this general category.  Rather, it is an intervention for a very limited

EXHIBIT __26__

PAGE ___334___

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

EXHIBIT 26

PAGE 335

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds as follows:

1.  The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.  As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.  Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.  Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __336__

and related entities (as defined below) are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunction herein;

5.   Good cause exists to believe that the MGA parties, agents, and related entities (as defined below) will continue to engage in such transactions, acts, practices, and courses of conduct and business to the immediate and irreparable loss and damage to Mattel, and contrary to the interests of justice, unless restrained and enjoined.

6.   It is appropriate and in the interests of justice that, pursuant to L.R. 66, that a Temporary Receiver be appointed and that an Order to Show Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.   Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to L.R. 66 for the MGA entities to manage, supervise and oversee the assets of the MGA entities and the Bratz Brand and all Bratz Assets as these terms are defined herein (the "Temporary Receiver").

2.   The Temporary Receiver is appointed and is hereby directed and ordered to take full and exclusive control over, and to manage, preserve, and maximize the profits of, the MGA entities and the Bratz Brand and Bratz Assets as of the date hereof, including, without limitation, by locating, taking possession and ownership of, preserving, protecting, managing, supervising and overseeing the Bratz Assets.

3.   The Temporary Receiver is further directed to investigate the financial affairs of the MGA entities, and specifically investigate transfers and transactions made by the MGA entities from and after July 17, 2008.

4.   The Temporary Receiver shall have the power to take any and all action which may be necessary, appropriate or advisable to effectuate the purposes of the Temporary Receivership, including, but not limited to, the power to:

   a.   take custody, control and possession of the assets of the MGA entities and Bratz Assets in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __337__

agents, and related entities") whether or not claimed to be
encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the
Bratz Assets and perform all acts necessary or advisable to
preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities
and the Bratz Assets and products for profit, including, without
limitation, by selling Bratz-branded dolls and other goods through
appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities
and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable
to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and
ordinary expenses incurred by the receivership, provided, however,
that the Temporary Receiver shall maintain and shall not distribute,
disburse or pay to anyone any receivership funds except as needed
to satisfy the reasonable and ordinary expenses incurred by the
receivership;

g.    open bank accounts in the name of the Temporary Receiver and
transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to
collect and maintain, monies owed by virtue of the sale, licensing,
or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon
such terms and conditions as the Temporary Receiver deems
necessary or advisable to carry out the Temporary Receiver's
mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into
modifications to or amendments of such agreements and contracts,
as the Temporary Receiver deems necessary or advisable to carry
out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds,
assignments or other instruments necessary or advisable to carry

MINUTES FORM 90                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN               18

EXHIBIT __26__

PAGE __338__

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

EXHIBIT 26

PAGE 339

except insofar as the Court orders or invites the Temporary
Receiver to do so; and,

s.    perform such further and additional acts as the Temporary Receiver
deems necessary or advisable to preserve the Bratz Assets,
maximizing the profits derived therefrom, ensure the successful
manufacture, delivery and marketing of Bratz-branded dolls and
products for the spring and fall 2009 seasons and otherwise carry
out the Temporary Receiver's mandate under this Order, including,
without limitation, any acts which could be lawfully carried out by a
corporation in the state of California.

5.    The Temporary Receiver, the Temporary Receiver's employees
and agents as well as any and all of the professionals employed by
the Temporary Receiver, are entitled to compensation for services
rendered at their normal hourly rates and reimbursement for all
expenses incurred by them on behalf of the receivership estate.
The Temporary Receiver shall serve written notice upon counsel of
record for the parties of the amount to be paid to each payee, with
an itemization of the services rendered or expenses incurred.
Upon service of said notice, the itemized fees and expenses may
be paid by the Temporary Receiver on an interim basis.  In the
event that extraordinary services are performed by the Temporary
Receiver, he shall be entitled to extraordinary compensation
according to proof and approval of this Court.  All interim fees paid
shall be subject to final review and approval by this Court.  This
Court retains jurisdiction to award a greater or lesser amount as the
full, fair and final value of such services.  In the event there are
insufficient funds in the receivership estate to fully compensate the
Temporary Receiver and his professionals, the Court retains
jurisdiction to allocate the costs and expenses of this receivership
against Mattel, as the party who sought the appointment of the
Temporary Receiver, and/or Isaac Larian, as the principal owner
and beneficiary of the MGA entities.

6.    Upon service of a copy of this Order, all banks, broker-dealers,
savings and loans, escrow agents, title companies, commodity
trading companies, or other financial institutions shall cooperate
with all reasonable requests of the Temporary Receiver regarding
implementation of this Order, including transferring funds at his
direction and producing records related to the assets of the MGA
entities.

7.    The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                       20

EXHIBIT __26__

PAGE __340__

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN

21

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __341__

brand.

    g.    All Bratz-related items referenced at Paragraph 3 and Paragraph 8
(at lines 15-19) of the Court's Order granting Mattel's Motion for
Permanent Injunction (docket #4443).

8.    The Temporary Receiver shall hereby be vested with, and is authorized,
directed and empowered to exercise, all of the rights, powers or
authorizations of the MGA entities, their officers, directors, general
partners or persons who exercise similar powers and perform similar
duties, including without limitation the sole authority and power to file or
cause to be filed any suit or action in any court or arbitration tribunal other
than this court, and filing, or causing to be filed, a petition for relief under
the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA
entities, their officers, agents, employees, representatives, directors,
successors-in-interest, attorneys in fact and all persons acting in concert
or participating with them are hereby divested of, restrained, enjoined, and
barred from exercising, any of the rights, powers or authorities vested
herein in the Temporary Receiver, including but not limited to filing, or
causing to be filed, any suit or action in any court or arbitration tribunal
other than this court, and/or filing, or causing to be filed, a petition for relief
under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the
MGA entities, except as otherwise specified herein or by further order of
this Court.

9.    As set forth above, the Court leaves undisturbed the stay set forth in the
Court's January 7, 2009, Order.  Moreover, the stay is hereby
supplemented (a) to enable the Temporary Receiver to take the actions
specified herein, and (b) to permit retailers who receive Bratz products
pursuant to the authority of the Temporary Receiver, and who pay the
Temporary Receiver monies due and owing for such Bratz products, to not
remove such products from the shelves until January 10, 2010, at which
time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's
December 3, 2008, Order granting Mattel's Motion for Permanent
Injunction (docket #4443) shall become effective as to such retailers.  The
supplemental stay provisions shall not eliminate, alter or amend the
obligations of any retailer, distributor, seller or other person or entity,
including, without limitation, the MGA parties, who do not meet the
foregoing requirements, to earlier recall or earlier obtain the recall of Bratz
products as required by the mandatory provisions of Paragraphs 4, 6 and
7 the Court's Order granting Mattel's Motion for Permanent Injunction
(docket #4443).  The supplemental stay provisions shall not apply to permit,
enable or authorize enjoined conduct by any enjoined party,
except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90
CIVIL -- GEN

22

Initials of Deputy Clerk __cls_____

EXHIBIT 26

PAGE 342

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10.   Additional Provisions.

a.   In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures.  Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

b.   The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

c.   The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court.  Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

d.   During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand.  All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

e.   Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90
CIVIL -- GEN                                        23                          Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __343__

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.   To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.   The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.   No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.   It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.   In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90
CIVIL -- GEN

24

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __344__

et seq. for the MGA entities without prior permission of this Court.

k.  The MGA entities are ordered to cooperate fully with the Temporary
    Receiver, including without limitation providing all   financial and
    other documentation requested by the Temporary Receiver.

l.  The Temporary Receiver is authorized to contact the
    Court-appointed Forensic Auditor, Ronald Durkin, and may utilize
    the findings and conclusions reached by Mr. Durkin as the
    Temporary Receiver deems appropriate.

m.  The Temporary Receiver is hereby ordered and directed to prepare
    and provide to this court a report setting forth preliminary
    conclusions, findings and recommendations in accordance with the
    schedule set forth below.

11. Order to Show Cause.  All interested parties, and any interested creditor,
    shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to
    show cause, if there be any, why a permanent receiver should not be
    appointed in the same scope and manner as the Court's appointment of
    the Temporary Receiver.  Any declarations, affidavits, points and
    authorities or other submissions in support of, or in opposition to, the
    appointment of a Permanent Receiver shall be filed with the Court and
    served on all parties no later than May 14, 2009.

12. Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be
    served on all known creditors of the MGA entities within three days of the
    date of this Order.

13. The Temporary Receiver shall file a report and recommendation
    concerning all actions taken as well as recommendations for further action
    no later than Monday, May 11, 2009.  This report shall be filed with the
    Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**

Initials of Deputy Clerk __cls_____

EXHIBIT __26__

PAGE __345__

# EXHIBIT 27

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 28

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

08-71714107
09/09/2008 16:03

FILED

CALIFORNIA
SECRETARY OF STATE

18335690005

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE # 06-7090317861    10/30/06

2. ☐ TERMINATION

3. ☐ CONTINUATION

4. ☒ ASSIGNMENT (full)

5. AMENDMENT (PARTY INFORMATION)

6. CURRENT RECORD INFORMATION:

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
OMNI 808 Investors LLC, as Agent

7c. MAILING ADDRESS: 9420 Wilshire Blvd., Suite 400
CITY: Beverly Hills  STATE: CA  POSTAL CODE: 90212  COUNTRY: USA

7d. TYPE OF ORGANIZATION: Limited Liability Company
JURISDICTION: California

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT
9a. ORGANIZATION'S NAME
Wachovia Bank, National Association, as Agent

10. OPTIONAL FILER REFERENCE DATA
Debtor: MGA Entertainment (Mexico), Inc.    CA-SOS

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV 07/29/98)

EXHIBIT 28
PAGE 352

# EXHIBIT 29

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**