# EXHIBIT 30

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 31

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                              Date: May 21, 2009
Title:       MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                                    None Present
      Courtroom Deputy                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                        None Present

**PROCEEDINGS:**   **ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11 (DOCKET #5185)**

      **ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED ANSWER AND COUNTERCLAIMS (DOCKET #5143)**

      **ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING APPEAL (DOCKET #5396)**

      **ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009 PRODUCT LINE INFORMATION (DOCKET #5425)**

      **ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER APPOINTING MGA MONITOR**

      **ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND REQUIRING MANDATORY SETTLEMENT CONFERENCE**

These matters were heard on May 18, 2009.

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          1                      <u>Time: 03/02</u>

EXHIBIT **32**

PAGE **429**

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1]  Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __3ᴢ__

PAGE __430__

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit
rather than their general powers and that, in any event, the relevant time period to measure
managing agent status is not at the time of deposition but is rather at the time of the events giving
rise to the lawsuit. Although these arguments find some support, the Discovery Master's
conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law.
The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor,
which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities
regarding matters involved in the litigation. The cases cited by Mattel support its timing argument;
however, cases cited by the MGA parties establish that other cases favor a contrary position.
Neither side's authority is controlling, and the Court therefore concludes the position adopted by
the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to
conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor
reported, could provide substitute testimony to them is clear error. Mattel's ultimate point is that no
one can testify more accurately and more on point than can the two witnesses regarding their
alleged trade secret theft. Again, this is not an invalid point. Indeed, it is possible that if such theft
occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the
MGA parties and instead acted on their own accord (the MGA parties alternatively contend).   The
fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony
regarding any theft would not be on behalf of MGA at all. Who can or cannot testify about these
events that may or may not have occurred on behalf of any MGA party -- let alone who can testify
best -- is far from clear. This area of inquiry is fraught with uncertainty. The Discovery Master's
conclusion one way or another on this issue, therefore, cannot be said to be clear error. See
Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate
judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction
that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that
MGA Mexico's interests and the witnesses' interests are at odds. The witnesses are currently
employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been
subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they
have separately retained counsel to represent their interests. Additionally, the MGA parties have
maintained that if any trade secret theft occurred, it occurred without their knowledge or consent.
These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery
Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or
contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90
CIVIL -- GEN                                    3

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __32__

PAGE __431__

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

MINUTES FORM 90
CIVIL -- GEN                                        4

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT 32

PAGE 432

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

[T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __32__

PAGE __433__

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

MINUTES FORM 90                                      Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          6              Time: 03/02

EXHIBIT **32**

PAGE **434**

### III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18. For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

EXHIBIT __32__

PAGE __435__

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed
no later than Friday, May 29, 2009, at which time the Court will take the matter under submission
and issue an order as expeditiously as possible.

## IV.  EX PARTE APPLICATION RE DISCLOSURE OF
## 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex
parte application seeking production of the 2009 Bratz line and the new MGA products is moot,
and it is **DENIED** for that reason.  Nevertheless, because it is in the interest of all parties to
expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for
Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding
those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
## AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of
Permanent Receiver.  In response, the Temporary Receiver, the parties and the Court-appointed
Forensic Auditor have filed, and the Court has reviewed, the following documents: (1) The Report
and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of
Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the
Appointment of a Permanent Receiver and in opposition thereto, including the Statement of
Position filed by Omni 808.  In consideration of these filings, and after hearing on these matters, as
detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms
the expiration of the temporary receivership, orders the filing of an accounting of the temporary
receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

### A.    Expiration of Temporary Receivership

**IT IS ORDERED THAT:**

1.    The period of the Temporary Receivership imposed by this Court on April 27, 2009
      has expired;

2.    The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc.
      or MGA Hong Kong ("MGA");

3.    The Court reserves jurisdiction to appoint a Receiver in the future, as it deems
      appropriate;

4.    The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file
      with the Court a final report including a final accounting and application for fees and

EXHIBIT __32__

PAGE __436__

costs, on or before May 28, 2009;

5.   The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.   Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

**B.    Appointment of MGA Monitor**

1.   For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

   a.   The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6]   In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

   Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

   a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90
CIVIL -- GEN                                    9

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __32__

PAGE __437__

b.    The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.    The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.    The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.  All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.  All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.  All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.  All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.  All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g.  All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h.  "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7]  Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          10                 Time: 03/02

EXHIBIT 32

PAGE 438

e.      At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.      The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.      The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.      The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I.      The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.      The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8] The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL -- GEN                                    11

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __32__

PAGE __439__

k.    The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order. The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties. Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.    The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.    The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor. The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment. Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.    The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court. Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.    Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.    The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.    No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

EXHIBIT __32__

PAGE __440__

2.   Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.   MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.   No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.   For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.   Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.   All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI. IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009. The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

EXHIBIT **32**

PAGE **441**

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90
CIVIL -- GEN                                    14                    Initials of Deputy Clerk __cls_____
                                                                     Time: 03/02

EXHIBIT __32__

PAGE __442__

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT __32__

PAGE __443__

# EXHIBIT 33

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 27, 2009

**VIA FACSIMILE AND U.S. MAIL**

Thomas Nolan, Esq.
Jason Russell, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071

Re:    Mattel, Inc. v. MGA Entertainment, et al.

Dear Counsel:

I write pursuant to Paragraph 5 of the Discovery Stipulation to meet and confer in anticipation of a motion for leave to depose Isaac Larian for an additional 10 hours. Good cause exists for the further examination of Mr. Larian because Mattel has not had sufficient time to to fairly examine him regarding Phase 2 claims and defenses, including MGA's claimed unclean hands defense, and because the conduct of Mr. Larian at deposition interfered with his prior examinations. *See Fed. R. Civ. Pro.* 30(d)(1).

Although Mr. Larian has appeared for two prior deposition sessions (on July 18, 2006 and March 26, 2008), he did so only after forcing Mattel to file three motions to compel and being ordered to appear and sanctioned by the Court. The first deposition was--at Mr. Larian's request--limited to issues related to Phase 1 claims and defenses. The second session was a five hour session in which Mattel, for the first time, was able to question Larian about some of the millions of documents that MGA had produced since his prior deposition. During those five hours, during

EXHIBIT ___33___

**quinn emanuel urquhart oliver & hedges, llp**

PAGE ___444___

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

covers a wide range of issues and time period. It involves Mattel's trade secret and RICO claims, among others, against MGA as well as MGA's claims that 1) Mattel engaged in unfair competition and other unlawful acts in imitating and copying scores of MGA products, and 2) engaged in unfair competition by intimidating and coercing retailers, licensees, suppliers and other in the industry to limit if not prevent MGA from doing business with them. MGA asserts, for example, that Mattel has copied concepts, designs, products, and product packaging from over 400 MGA products. Moreover, MGA has identified Mr. Larian as a person with knowledge about MGA's claims and its defenses to Mattel's claims, including the alleged coercion of third-parties involved in the toy business. Additional time, therefore, is required in order to fairly examine Mr. Larian on these topics.

Please let me know whether Mr. Larian will agree to be deposed for an additional 10 hours.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

cc:     Amman A. Khan (via facsimile)
        Glaser, Weil, Fink, Jacobs & Shapiro, LLP

EXHIBIT __33__

PAGE __445__

# EXHIBIT 34

LAW OFFICES

# GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD

NINETEENTH FLOOR

LOS ANGELES, CALIFORNIA 90067

(310) 553-3000

FAX (310) 556-2920

RECEIVED

FEB 1 0 2009

⊤⊤⊤ MERITAS LAW FIRMS WORLDWIDE

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

February 7, 2009

**VIA U.S. MAIL AND FACSIMILE (213) 443-3100**

Jon D. Corey, Esq.
QUINN, EMANUEL, URQUHART,
   OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   *Bryant v. Mattel, Inc. and Consolidated Actions*
      U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Jon:

This memorializes our agreements from earlier this afternoon during our meet and confer discussions on various Phase 2 discovery issues in the above-captioned matters.

First, you agreed to withdraw Mattel's January 26, 2009 Renewed Motion to Compel Documents and Things, filed with Discovery Master O'Brien based on MGA's agreement to execute a stipulation and order thereon to produce in 30 days all non-privileged documents responsive to (1) RFP No. 48 (Set One), concerning communications re Phase 2 claims and defenses between MGA and the 12 individuals identified in the Renewed Motion; (2) RFP Nos. 43-55 (Set Three), concerning Scooter Samantha; (3) RFP Nos. 56-75 (Set Three) concerning Space Babies / Scot Reyes.

Second, we agreed to re-visit on Monday February 9, 2009 our impasse regarding RFP Nos. 87 - 88 (Set Three), which seek the personnel and vendor files of approximately 100 individuals at MGA who formerly worked for or dealt with Mattel. Those requests violate the employees' privacy rights and are overbroad. MGA offered to produce documents from those files if Mattel would agree to limit the scope of the requests to documents related to products that Mattel contends were stolen by MGA, as the Discovery Master had previously limited such requests in the past (see e.g. April 14, 2008 Order, p. 7:3-6). You refused to so limit the requests and stated that privacy rights objections had been overruled in prior Orders issued by the Discovery Master and you agreed to provide me with those Orders in advance of our Monday meet and confer.

EXHIBIT   34

PAGE   446

666240

Jon D. Corey, Esq.
February 6, 2009
Page 2

Third, with respect to MGA's supplemental responses to Interrogatory Nos. 41, 43 and 44, we agreed that MGA would provide responses to Interrogatory No. 41 in 30 days. With respect to Interrogatory Nos. 43 and 44, we proposed that MGA should have until 30 days after the ruling on Mattel's anticipated Motion for Summary Judgment/Adjudication on MGA's trade dress claims, to respond. (Please see Jean Nogues 2/6/09 letter to you in this regard.) You stated that you would check with your client and get back to us. In addition, we stated that there was nothing in the February 15, 2008 Order that compelled any responses by MGA de Mexico. You stated that you disagreed and would get back to us with support for your position.

Fourth, with respect to MGA's supplemental response to Interrogatory No. 45 of Mattel's Sixth Set of Interrogatories, MGA's responses to Mattel's Supplemental Interrogatories; and Isaac Larian's responses to Mattel's Supplemental Interrogatories, we agreed that I would provide Scott Watson of your office with our position on each of these interrogatories on Monday February 9, 2009. Except, however, with respect to Interrogatory Nos. 51-55 and 64, we proposed that MGA should have until 30 days after the ruling on Mattel's anticipated Motion for Summary Judgment/Adjudication to respond (Please refer to Jean Nogues 2/6/09 letter to you in this regard). You stated that you would check with your client and get back to us on this proposal on Monday February 9, 2009.

Fifth, with respect to Mattel's request to depose Isaac Larian for a third time, and more specifically, to seek leave to depose Mr. Larian for an additional ten hours, we stated that we believed such request was overly burdensome and is, in effect, a motion for reconsideration of former Discovery Master Infante's March 10, 2008 Order which allotted Mattel five (5) hours to depose Mr. Larian on Phase 2 issues. You stated your disagreement with our position, and we both agreed that we were not likely to reach a compromise on this issue.

Sixth, with respect to Mattel's request to depose Ronald Brawer for a second time, we agreed that we would re-visit this issue on Monday and that we would try to ascertain whether Mr. Brawer was still located in London.

Seventh, with respect to Mattel's request for all communications from 1999 to the present between Mr. Larian and Mattel employees, we agreed that I will provide you with MGA's position on this issue on Monday.

Eighth, with respect to your request that MGA and MGA de Mexico identify the persons to be produced responsive to Mattel's Fourth FRCP 30(b)(6) deposition notice to MGA and Mattel's January 9, 2008 FRCP 30(b)(6) deposition notice to MGA de Mexico, you agreed to identify for me the deposition topics and provide me with the deposition notices.

Ninth, with respect your demand that Isaac Larian supplement his production of personal financial records responsive to RFP Nos. 207, 208 and 269 and that MGA supplement its production of financial documents responsive to RFP Nos. 4-37 and 40-45 in Mattel's Second Set of Requests for Production to MGA, you agreed that you would provide me with the actual requests at issue as well as the orders compelling production.

EXHIBIT __34__

PAGE __447__

Jon D. Corey, Esq.
February 6, 2009
Page 3

Tenth, you requested that MGA provide you with the last known address for former MGA employee Shirin Salemnia. You argued MGA has an obligation to provide Ms. Salemnia's last known address stemming from the parties most recent FRCP 26 disclosures. I disagreed and we agreed to revisit this issue on Monday.

Eleventh, we agreed that MGA would serve amended objections to Mattel's deposition notices for Pablo Vargas, Mariana Trueba and Shirin Salemnia, and that such amended objections would maintain all objections related to the invalidity of Mattel's deposition notices but withdraw MGA's objection that the depositions of Vargas, Trueba and Salmenia were barred because they were required to be completed prior to January 31, 2008.

Twelfth, we also agreed to discuss on Monday February 9, 2009, amendments to the parties' stipulation appointing a discovery master. Mattel seeks to do away with the requirement that the parties meet and confer in-person prior to filing discovery motions. MGA requests that the 5 court day deadline to file oppositions to any discovery motions be extended to 8 court days. We will raise these issues with our respective clients.

Please advise me in writing immediately if your understanding of our discussion differs from mine. Thank you very much.

Very truly yours,

Amman Khan
of GLASER, WEIL, FINK, JACOBS
& SHAPIRO, LLP

AMM/rs

cc:     Joel N. Klevens, Esq.
        Jason Russell, Esq.
        Patricia Benson, Esq.

EXHIBIT __34__

PAGE __448__

# EXHIBIT 35

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 8, 2009

**VIA FACSIMILE AND U.S. MAIL**

Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:    Mattel v. MGA Entertainment, Inc., et al.

Dear Amman:

I write in furtherance of our meeting of counsel of February 6, 2009 regarding various Phase 2 discovery issues.

First, regarding Mattel's Renewed Motion to Compel Production of Documents and Things by MGA Entertainment, Inc., filed January 26, 2008 and currently pending before the Discovery Master, you agreed that MGA would produce, within thirty days, all non-privileged documents responsive to Mattel's Request No. 48 from its First Set of RFPs for the twelve individuals indentified in Mattel's motion.  You also agreed to produce, within thirty days, all non-privileged documents responsive to Mattel's Request Nos. 43-75 from its Third Set of RFPs regarding "Scooter Samantha," "Space Babies" and Scott Reyes, as set forth in Mattel's motion.

As to Mattel's Request Nos. 87 and 88, regarding personnel files for former Mattel employees and vendors, you stated that your objections to producing the personnel files in their entirety arose from concerns over employee privacy.  As I stated at the conference, the prior Discovery Master and the Court have time and again held that the Protective Order in this case sufficiently ameliorates any such concerns.  As an example, I direct your attention to the attached Discovery Master's May 15, 2007 wherein he overruled similar privacy objections and ordered the production of personnel files.  See May 15, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Things, at 3, 9 (overruling MGA's privacy objections on behalf of

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT   **35**

PAGE   **449**

third parties and ordering production of responsive documents); see also id. at 11 n.4 ("The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate . . . privacy concern[s]."). Similarly, in another Order the Discovery Master overruled Bryant's objections based on the privacy of third parties because "the protective order is sufficient to address . . . confidentiality concerns." January 26, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Things, at 15.

I trust this adequately alleviates your concerns and that MGA will also produce these files. Separately, I explained that Mattel is not only interested in what may be in the personnel files, but what may not be in there, such as instances of no disciplinary action taken. Mattel will agree, however, to exclude from its request any health care specific information. Once MGA agrees to a stipulation so ordering the production of these documents, then Mattel will take its motion off-calendar.

Second, with regard to MGA's outstanding responses to a number of Mattel's Interrogatories, you agreed that MGA would respond to Interrogatory No. 41 within thirty days.

Regarding Mattel's Interrogatory Nos. 43, 44, 51-55 and 64, your colleague, Mr. Nouges proposed that, in light of Mattel's intention to seek summary adjudication of MGA's claims of trade dress infringement, MGA be permitted to delay its response to these interrogatories until thirty days after any ruling on Mattel's contemplated motion. I informed you that I would discuss your proposal with our client, but that I did not expect them to agree.

Additionally, you questioned whether MGAE de Mexico was bound by the Order compelling responses to Interrogatory Nos. 41-43. Both the original February 15, 2008 Order and the subsequent April 22, 2008 Clarification were directed to the "MGA Parties," including MGAE de Mexico. Moreover, as I stated at the conference, the interrogatories to MGAE de Mexico are identical to those that Mattel propounded upon MGA, and assuming MGAE de Mexico takes the same positions that were advanced by MGA and rejected by the Discovery Master, there is no reason MGAE should not be similarly bound by the logic of the Order. As you indicated that you did not have the requests at issue, I have attached Mattel's interrogatories to MGAE de Mexico.

Third, regarding Mattel's request to schedule the continued deposition of Isaac Larian on Phase 2 matters, you indicated that as MGA's CEO, any such deposition would be impermissibly burdensome. You asked me why additional time was justified. I told you that, at most, Mattel had five hours to depose Mr. Larian regarding Phase 2 issues, that he was a named defendant, that there are tens of thousands, if no hundreds of thousands, of pages of documents that he authored or related to him and the five hours (much of which was devoted to further Phase 1 issues given that MGA and Larian produced the vast majority of their documents amounting to millions of pages after Mr. Larian was first deposed). As such, further deposition is warranted. Because we were unable to reach an agreement on this issue, Mattel will seek an order form the Discovery Master compelling Mr. Larian's further deposition testimony.

Fourth, regarding Mattel's request to schedule the continued deposition of Ron Brawer on Phase 2 matters, you took the position that his deposition was unwarranted because he had already been

EXHIBIT 35

PAGE 450

deposed and because you did not see Mr. Brawer's continued relevance. Mr. Brawer is a key witness and/or actor at the core of Mattel's Phase 2 allegations. His deposition was never completed, and now that Phase 2 has begun, it should be scheduled immediately. You agreed that you would consider this issue and to provide a response on Monday.

Fifth, regarding Mattel's intention to file a motion for reconsideration of the order compelling Isaac Larian's communications with Mattel employees, but limiting the response to communications that occurred prior to 2005, you indicated that you needed more time to consider the issue because you claimed that your firm did not have the documents, and you needed to determine whether compliance with Mattel's request would be unduly burdensome. I informed you that it was not my understanding that the Discovery Master's time limitation was based on burden considerations. As we discussed, the Discovery Master's prior order limited the scope of Mattel's request based on misapprehension of Mattel's counterclaims. The temporal limitation was not an issue discussed at the hearing or briefed, but a decision made, *sua sponte*, by the Discovery Master. Plainly Mr. Larian's communications with Mattel's employees are highly relevant—indeed, more so, if there may be, as you initially suggested, that Mr. Larian has had so many communications with Mattel employees that responding to such a request would impose an undue burden upon Mr. Larian or upon MGA. We agreed that you would provide me with a firm position on Monday.

Sixth, regarding Mattel's 30(b)(6) deposition of MGAE de Mexico and MGA, you agreed that at the conference on Monday you would be in a position to state which employees would be designated for which topics and their dates of availability. To assist you, I've am attaching Mattel's January 9, 2008 Deposition Notices of MGAE de Mexico and MGA.

Seventh, regarding MGA's supplemental document production regarding financial information, as required by Rule 26(e)(1) and the Discovery Master's Orders of December 28 and 31, 2007, you indicated that you were not in a position to respond to Mattel's request at this time because you did not have the document requests or orders at issue. To assist you, I am attaching Mattel's Requests Nos. 207, 208, 209 and the relevant Discovery Master orders. Please be prepared to respond substantively to Mattel's request on Monday.

Eighth, regarding Mattel's deposition notices of Mr. Vargas, Ms. Trueba and Ms. Salemnia, you agreed that MGA was no longer were objecting on the grounds that Judge Larson's January 7, 2008 order required all Phase 2 depositions to be completed by the end of January 2008. I requested, and you agreed, to provide by Monday, February 9, 2009, amended objections to those deposition notices with that objection omitted.

Ninth, regarding Ms. Salemnia's last known address, you indicated that you would be able to respond at our Monday conference.

Tenth, regarding the current procedures for discovery disputes, I had requested that MGA agree to amend the discovery master stipulation to reflect the parties' long-standing practice of conducting meetings of counsel telephonically. Further, we will take under consideration your request that we amend the procedures to allow a party extended time to file any opposition and reply.

EXHIBIT **35**

PAGE **451**

Finally, I must note that you were not adequately prepared to substantively discuss a number of issues which we had planned to address at last Friday's meeting of counsel. For a number of these disputes you did not even have the relevant pleadings or underlying orders. As a courtesy, I am providing you with those documents that you lack, but I am sure that your co-counsel has. We do not expect that your association in of this case will cause further delay in its prosecution or defense of this case. If the association of your firm was going to cause delay in any respect, then the time to raise that was with the Court upon the request for association. Your failure to do so does not justify any delay or excuses for not being fully prepared, particularly given that your firm is but one of MGA's counsel in this case.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Jon Corey

Enclosures

cc:     Jean P. Nogues, Esq. (via electronic mail w/ enclosures)

4

EXHIBIT __35__

PAGE __452__

# EXHIBIT 36

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 15, 2009

**Via Facsimile and U.S. Mail**

Amman A. Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:     Mattel v. MGA Entertainment, Inc., et al.

Dear Amman:

I am writing further in connection with our meet and confer efforts in anticipation of a motion for an order granting Mattel additional time to depose Isaac Larian.

Shortly after the Court lifted the Phase 2 discovery stay, Mattel requested that Mr. Larian agree to appear for additional deposition time regarding Phase 2 claims and defenses. After meeting and conferring, Mr. Larian refused to do so and Mattel stated that it would seek an order from the Discovery Master compelling Mr. Larian's further deposition testimony.

Since that time, the Court has granted Mattel's motion for leave to file a third amended answer and counterclaims. Among other things, the Third Amended Answer and Counterclaims ("TAAC") sets forth additional claims and allegations against Mr. Larian and the other MGA parties, including claims and allegations that arose after Mr. Larian was last deposed. As the Court's May 21, 2009 Order explains:

> [T]he TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject

EXHIBIT **36**

PAGE **453**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue. 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive. Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

of the Forensic Auditor's Report (the "Wachovia/Omni 808 Transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The Order further explains that "the Court is fully aware, that the . . . amendments will dramatically expand the scope of the present litigation." In light of these additional claims and allegations, as well as all of the reasons previously stated, there is ample good cause for Mr. Larian's further examination.

Please let me know if MGA and Mr. Larian will change their position as a result of the current circumstances and now agree to produce Mr. Larian for additional deposition time. In the event that no resolution can be reached, Mattel anticipates that it will move to compel Mr. Larian to appear for an additional three days of deposition. I also would be happy to discuss this matter further in the hopes of avoiding motion practice.

I look forward to hearing from you.

Very truly yours,

Scott B. Kidman

07975/2971133.1

2

EXHIBIT __36__

PAGE __454__

# EXHIBIT 37

LAW OFFICES

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

June 18, 2009

ᵀᴵᵀ MERITAS LAW FIRMS WORLDWIDE

**VIA U.S. MAIL & E-MAIL**

Scott B. Kidman, Esq.
Quinn, Emanuel, Urquhart,
 Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

      Re:   *Bryant v. Mattel, Inc. and Consolidated Actions*
           U.S.D.C. Eastern Division, Case No. CV04-09049 SGL (RNBx)

Dear Scott:

      This responds to Mattel, Inc.'s ("Mattel") demand to depose MGA's CEO, Isaac Larian, for an additional three days. Mattel's demand is extraordinarily abusive.

      The Federal Rules of Civil Procedure limit a party's right to take a deposition to one 7 hour day. Mattel previously deposed Mr. Larian twice and has had more than the allotted time. As you know, Mattel made a tactical decision to depose Mr. Larian at the outset of fact discovery, and 18 months later demanded an additional session. Although the prior Discovery Master allowed Mattel to take an additional session on both Phase 1 and Phase 2 issues, he expressly limited that additional session to five hours. With the exception of the financial transactions alleged in Mattel's recently filed Third Amended Answer and Counterclaims ("TAAC"), the additional matters alleged in the TAAC were known to Mattel and within the scope of inquiry that Mattel was permitted at the time it took the additional session of Mr. Larian's deposition. Mattel cannot now use the TAAC as a vehicle to do an end run around the prior Discovery Master's order limiting that additional session to five hours.

      Mr. Larian appeared previously for depositions on July 18, 2006 and March 26, 2008. During both depositions, Mattel had ample opportunity to depose him on all of the matters alleged in the TAAC except certain financial transactions, which had not yet allegedly occurred. Mattel is not entitled to repeatedly depose MGA's CEO about issues as to which it previously had the opportunity to examine him on. Accordingly, Mattel's demand for three additional days with Mr. Larian is unwarranted.

EXHIBIT **37**

PAGE **455**

Scott B. Kidman, Esq.
June 18, 2009
Page 2


  Mr. Larian will make himself available for one additional deposition that is not to exceed four hours.  This deposition will be limited in scope to the financial transactions alleged in the TAAC that occurred after Mr. Larian's March 26, 2008, deposition.

  I trust these terms address the discovery needs expressed in your June 15, 2009 letter. Please call me Monday, June 22, 2009 at 3:00 pm if you wish to discuss this further.


      Very truly yours,


      Amman Khan
    of GLASER, WEIL, FINK, JACOBS,
     HOWARD & SHAPIRO, LLP


AK:amk


cc: Joel N. Klevens, Esq.
  Jason Russell, Esq.
  Patricia Benson, Esq.

EXHIBIT **37**

PAGE **456**

# EXHIBIT 38

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 39

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 40

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 41

# California Business Portal

## Secretary of State DEBRA BOWEN

DISCLAIMER: The information displayed here is current as of Jun 12, 2009 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT 826 INVESTMENTS, LLC | | |
| Number: 200824110196 | Date Filed: 8/27/2008 | Status: active |
| Jurisdiction: CALIFORNIA | | |
| Address | | |
| 156 COPLEY PL | | |
| BEVERLY HILLS, CA 90210 | | |
| Agent for Service of Process | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT ___41___

PAGE ___466___

# EXHIBIT 42

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,              **Consolidated with**
                                        **Case No. CV 04-09059**
14          v.                          **Case No. CV 05-2727**

15   MATTEL, INC., a Delaware           **PHASE II DISCOVERY MATTER**
     corporation,
16                                      **ORDER NO. 3, REGARDING:**
                Defendant.
17                                      **(1)  MOTION OF MGA**
                                        **ENTERTAINMENT, INC.,**
18                                      **ISAAC LARIAN AND MGA**
                                        **ENTERTAINMENT (HK)**
19                                      **LIMITED TO QUASH**
                                        **NON-PARTY SUBPOENAS; and**
20
                                        **(2)  MOTION OF MATTEL, INC.**
21                                      **TO COMPEL PRODUCTION OF**
                                        **DOCUMENTS RESPONSIVE TO**
22                                      **THE SAME NON-PARTY**
                                        **SUBPOENAS**
23

24   ┌─────────────────────────────┐
25   │ CONSOLIDATED WITH           │
     │ MATTEL, INC. v. BRYANT and  │
26   │ MGZ ENTERTAINMENT, INC. v.  │
     │ MATTEL, INC.                │
27   └─────────────────────────────┘

28   ─────────────────────────────────────────────────
     ARENT FOX LLP              1          ORDER NO. 3
     ATTORNEYS AT LAW                 [Case No. CV 04-09049 SGL (RNBx)]
     LOS ANGELES

EXHIBIT ___42___

PAGE ___467___

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2  MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3  (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4  and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5  documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6  4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8  March 4, 2009.  All interested parties were represented by counsel and afforded the

9  opportunity to present oral argument on the Motions.  The Discovery Master,

10 having considered the papers filed in support of and in opposition to the Motions,

11 and having heard oral argument thereon, rules as set forth below.

12 **I.    INTRODUCTION**

13

14 **A.    The Court's February 11, 2009 Ruling**

15   On February 11, 2009, the Court heard oral argument on various motions

16 filed by the parties.  During the proceedings, counsel took the opportunity to orally

17 request clarification by the Court regarding whether the parties' respective motions

18 relating to the subpoenas served by Mattel on various entities allegedly related to

19 MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20 prior orders.

21   In response, the Court stated: "I will instruct the Discovery Master this

22 afternoon, in no uncertain terms, that there is no stay on any discovery related to

23 this case at all."  (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24 99:8 – 10).  Counsel for MGA then referred to the fact that the Court had

25 previously declined to allow Mattel to serve certain discovery accompanying

26 Mattel's motion for a receiver and characterized the third-party subpoenas as an

27 attempt to circumvent the Court's ruling.  (Tr., 101:12 – 17).  In response, the Court

28 stated:

EXHIBIT   42

PAGE   468

1

2      Then the question becomes – and this is a question for the
       Discovery Master, not for this Court – whether or not the
3      discovery is related to Phase 2. If it is, it is. I'm not going to
       pass any judgment whatsoever. I'm going to leave that
4      completely up to the Discovery Master. ... The question for the
       [D]iscovery [M]aster will be whether or not the disputed
5      discovery request is related or relevant to the trial that has now
6      been scheduled for March [2010] or not.

7  (Tr., 101:18 – 22; 103:1 – 3).

8         The Discovery Master understands the Court's ruling as indicating that, in

9  deciding the motions relating to the Subpoenas, the Discovery Master should

10 consider whether there is a nexus between the information sought by the

11 Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

12 in March 2010, on the other hand. If the information sought by the Subpoenas is, to

13 use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

14 trial," then that information could potentially be the subject of appropriate

15 discovery requests by Mattel.[1]

16   **B.     Information Sought By The Subpoenas**

17        The information sought by Mattel's Subpoenas falls into two broad

18 categories. First, Mattel seeks documents from third parties Omni 808 Investors,

19 LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

20 Entities") involving, among other things, their internal ownership and operations

21 and their role in providing financing to MGA during the summer of 2008 (the

22

23 [1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
   nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
24 inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
   8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
25 claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate
   regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
26 in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant
   to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
27 Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
   below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
28 Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
   the Phase 2 trial.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -                    ORDER NO. 3
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___42___

PAGE ___469___

1  "Financing Discovery"). Based on the information presented at the February 11,

2  2009 hearing and in connection with the pending motions, it does not appear that

3  either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4  an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5      Second, Mattel seeks documents from third parties IGWT Group, LLC and

6  IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7  MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8  "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9  owned and/or controlled by Larian. (*See, e.g.,* MGA's Reply in support of its

10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11  inventory by the Transferee Entities as "Larian's purchase of those . . .

12  products . . . .").[3]

13  **II.   MGA's Motion To Quash**

14      Because it could dispose of all outstanding discovery issues related to the

15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16  February 3, 2009.

17      **A.   Legal Standard**

18      As the party moving to quash the Subpoenas, MGA bears the burden of

19  satisfying the standard set forth in Rule 45(b), which provides that the court may

20  "quash or modify the subpoena if it is unreasonable and oppressive."  (Fed. R. Civ.

21  P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24  ────────────

[2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25  Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26  legitimate Phase 2 issue, seek to obtain this information from MGA.

[3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including

27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28  of his sister.

EXHIBIT   42

PAGE   470

1  with the subpoena would be unreasonable and oppressive" (internal quotations

2  omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3  burden of proving that a subpoena is oppressive is on the party moving to quash];

4  *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5  burden is on the movant to establish that a subpoena duces tecum should be

6  quashed]). "The burden is particularly heavy to support a 'motion to quash as

7  contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City*

8  *of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9  supported by two affidavits]).

10      **B.      Arguments Made By MGA In Support Of Its Motion To Quash**

11          The sole argument set forth in MGA's Motion to Quash is that the Court's

12  January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13  information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14  But that argument fails for the reasons set forth above.  The Court made it clear at

15  the hearing on February 11, 2009 that:

16          There is no stay on discovery.  Period. . . . . [The forensic auditor

17          appointed by the Court] is acting at the Court's discretion to
         inform the Court of information. . . . That's an entirely separate

18          matter.  And I have not stayed any discovery and there should be

19          no reliance on that.  If that was misunderstood, it's clarified now.

20  (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21          Recognizing that its only argument has been rejected by the Court, MGA

22  argues for the first time in its Reply that its Motion to Quash should be granted

23  because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24  MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25  However, MGA did not make this argument in its opening brief.  It instead declared

26  in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27  is beside the point." (*Id.*, p. 5).  Because MGA did not address the relevance of the

28  subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __42__

PAGE __471__

1    consider the argument in connection with the Motion to Quash.

2         The Discovery Master, like the Court,[4] disfavors the insertion of new

3    arguments at the reply stage that could have been raised in the moving papers.  A

4    party filing a motion is required to raise all of its arguments in its opening brief to

5    prevent "sandbagging" of the non-moving party and to provide opposing counsel

6    the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7    Circuit.  (*See, e.g.*, *United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8    (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9    n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see

11   also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.

12   Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13        Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5]  (*See* Section III

17   below).

18        Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
     not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
25   change [its] ultimate conclusion."

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is
     conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to
27   Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA
     Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas
28   . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash."  (Mattel's Request to
     Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -                              ORDER NO. 3
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    42

PAGE    472

III.   **Mattel's Motions To Compel**

    A.   **The Purported Procedural Defects Barring Mattel's Motions To Compel**

        MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

        1.   **The Court's January 7, 2009 Order**

        As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas.  (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7).  But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

        2.   **Local Rule 37**

        The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]).  However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case.  Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation.  (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

EXHIBIT 42

PAGE 473

1  "all third parties subject to discovery requests . . . in this litigation shall be bound

2  by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3  order applies to the Financing Entities as well as the Transferee Entities, and its

4  procedures replace those set forth in Local Rule 37.  (Id., p. 4).

### 3.   Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7           The Financing Entities and MGA further argue that Mattel's Motion to

8  Compel should be denied because it exceeds the page limitations set forth in Local

9  Rule 11-6 and Paragraph 4(b) of the Court's Standing Order.  (See Financing

10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11  Mattel's Motion to Compel, pp. 18 - 19).  Each of these contentions is unavailing.

12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13  governs discovery disputes in this case, and it does not impose any page limit on

14  such motions.[7]  In fact, the Discovery Master Order dispenses with the formatting

15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16  even permits the parties to agree to alternative procedures, including, presumably,

17  filing briefs that are more than 25 pages in length.  (See Discovery Master Order, p.

18  4).  Thus, while the Discovery Master encourages the parties to be as efficient as

19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20  directly permitted under the Discovery Master Order (since no page limitation was

21  imposed by the Court) or implicitly allowed (since the parties may agree to

22  alternate procedures).  He further recognizes that the complex nature of this case

23  may periodically necessitate the filing of briefs that exceed 25 pages.[8]  For all of

24

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages.  (See Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   42

PAGE   474

1    these reasons, filings in excess of 25 pages are permitted.[9]

2            **4.      Local Rule 6-1**

3            The Financing Entities argue in passing that Mattel's motion to compel

4    should be denied because it violates Local Rule 6-1. (Financing Entities'

5    Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6    Order adopts a completely different set of deadlines than the Local Rules for the

7    filing of motions, oppositions and replies, and a different schedule for noticing

8    hearing dates. (Discovery Master Order, p. 4).  Therefore, Local Rule 6-1 has no

9    applicability here.

10           **5.      Failure To Name MGA In The Motion To Compel**

11           MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21           **6.      Mattel's Separate Statement**

22           MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19).  Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   _____

     [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific

28   page limitation.

EXHIBIT __42__

PAGE __475__

1   sets forth the various contentions of the parties, even if the information regarding

2   the various requests happens to be repetitive.  Regardless, MGA has not cited any

3   legal authority in support of its position and the Discovery Master finds no reason

4   to dispose of Mattel's Motion to Compel merely because it filed a separate

5   statement that contains duplicative arguments.[10]

6              **7.    Meeting And Conferring**

7        As their final procedural argument in opposition to the Motion to Compel,

8   the Transferee Entities and the Financing Entities assert that the motion should be

9   denied because Mattel failed to adequately meet and confer prior to filing the

10  motion.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12             **a.    Applicable Procedure**

13       Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

19             moving party shall first identify each dispute, state the relief
             sought, and identify the authority supporting the requested relief
20           in a meet and confer letter that shall be served on all parties by
             facsimile or electronic mail.  The parties shall have five court
21           days from the date of service of that letter to conduct an in-person
             conference to attempt to resolve the dispute.  If the dispute has
22           not been resolved within five court days after such service, the
             moving party may seek relief from the Discovery Master by
23           formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27  ─────────────────────
    [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28  separate statement to be submitted by the moving party.

EXHIBIT ___42

PAGE ___476

1                  **b.**      **Mattel's Meet And Confer Regarding The Financing**

2                              **Entities**

3            In challenging Mattel's meet and confer effort, the Financing Entities first

4 claim that Mattel violated the Discovery Master Order because no "in-person

5 meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6 p. 8). But that argument is without merit, since Mattel and the Financing Entities

7 agreed to an alternative procedure that disposed of the in-person meet and confer

8 requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9 Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10 2009 memorializing the parties' agreement and establishing a schedule whereby the

11 parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12 Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14 Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15 Entities' counsel received this letter and acted in accordance with its terms is

16 evidenced by, among other things, the fact that they served objections to the

17 Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18 letter) and started meeting and conferring with Mattel's counsel telephonically on

19 January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21 Entities in person since the parties had agreed to waive that obligation.

22            Nevertheless, Mattel still had an obligation to meet and confer with the

23 Financing Entities in good faith. Good faith cannot be shown merely through

24 perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25 attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26 ───────────────
[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the
27 Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in
person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties
28 involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery
Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good
faith.

EXHIBIT ___42___

PAGE ___477___

1   Proc. 37(a)(1)).

2        Because the evidence and declarations submitted by Mattel and the Financing

3   Entities are in conflict regarding what transpired during their respective meet and

4   confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7   doubt and concludes that it adequately met and conferred with respect to Omni 808

8   Investors, LLC and Vision Capital, LLC.

9        By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5).  No

14   "good faith" meeting could therefore have taken place.

15        Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC.  The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23             c.      **Mattel's Efforts To Meet And Confer Regarding The**

24                     **Transferee Entities**

25        Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   [12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   42

PAGE   478

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process. (*Id.*). In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8      **B.    Legal Standard Governing Enforcement Of The Subpoenas**

9      Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10  actions of "any matter, not privileged, which is relevant to the subject matter

11  involved . . . .. The information sought need not be admissible at the trial if the

12  information sought appears reasonably calculated to lead to the discovery of

13  admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14  discovery of all information reasonably calculated to lead to discovery

15  of admissible evidence; but the discoverable information need not be admissible at

16  the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17  250 (D.Kan.1993)).

18      The broad scope of discovery described in subsection (b)(1) is tempered by

19  provisions protecting the responding party from undue burden. Rule 26(b)(2)

20  provides that the frequency or extent of discovery otherwise allowed by the Rules

21  must be limited if the court determines that "(i) the discovery sought is

22  unreasonably cumulative or duplicative, or is obtainable from some other source

23  that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24  discovery has had ample opportunity by discovery in the action to obtain the

25  information sought; or (iii) the burden or expense of the proposed discovery

26  outweighs its likely benefit, taking into account the needs of the case, the amount in

27  controversy, the parties' resources, the importance of the issues at stake in the

28  litigation, and the importance of the proposed discovery in resolving the issues."

EXHIBIT __42__

PAGE __479__

1      Moreover, the Federal Rules distinguish between discovery from non-parties

2   to a lawsuit (governed under Rule 45) and discovery from parties (governed

3   generally by Rule 26), based in part on the recognition that the former is inherently

4   more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5   *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6   significant when determining whether compliance with a discovery demand would

7   constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8   F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9   is one factor that the Court may weigh in determining whether the discovery

10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11   have interpreted these rules to afford non-parties special heightened protection

12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13   *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14      Accordingly, requests for documents that pertain to a party and that can be

15   more easily and inexpensively obtained from that party also impose an undue

16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17   Further, if the documents sought are neither relevant nor calculated to lead to the

18   discovery of admissible evidence, "then any burden whatsoever imposed upon the

19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20   *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21      Each of the moving parties bears the burden of establishing the basis for the

22   relief it seeks. As the party moving to compel compliance with the Subpoenas,

23   Mattel bears the burden of "establishing that the information sought is relevant and

24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25   *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26      Finally, in deciding whether to enforce a subpoena, the Discovery Master

27   must balance "the relevance of the discovery sought, the requesting party's need,

28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

EXHIBIT __42__

PAGE __480__

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3        **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4        As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10  finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone*."] (emphasis added)).

12       However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19       Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23       Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties*.  Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___42

PAGE ___481

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

5    **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6    **Phase 2**

7    **1.    Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10    **a.    Mattel's RICO Counterclaim**

11    Mattel first asserts in its Motion to Compel that the discovery it seeks is

12    relevant to its RICO counterclaim because "Mattel alleges that the counter-

13    defendants have operated a widespread criminal enterprise that has engaged in

14    numerous acts of mail and wire fraud and other predicate acts in violation of the

15    RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16    non-operating entities" is "a continuation of that pattern of racketeering activity."

17    (Motion, p. 18).

18

---

19    [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing

20    Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has

21    been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties.

22    [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's

23    Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to

24    Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*

25    Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As

26    for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to

27    when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to

28    strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  42

PAGE  482

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]   Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17   At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
     improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
     enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
     because they are "designed to and did unlawfully acquire the confidential business information and property of
27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
     business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
     Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
     defendants "schemed to defraud Mattel and steal its property and trade secret information"].

EXHIBIT __42__

PAGE __483__

1    transactions Mattel seeks to investigate here.[16]

2         Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10        In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16              **b.      Mattel's Disgorgement Remedy**

17        Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372

23   (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated, among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the

24   Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of

25   this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and

26   depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their nature, source and location – that is, by transferring funds between defendants and between various accounts

27   maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has

28   not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   42

PAGE   484

> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of the Financing Entities is alleged to have "received money that properly belonged to Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of MGA. Therefore, Mattel has not demonstrated how any of the categories of documents sought from the Financing Entities would aid it in ascertaining the amount defendants must disgorge.

### c.    Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they "seek documents relevant to MGA's financial condition" and other "factors relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22). Depending on the particular scope of the document request, such discovery from Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages).[17] As the Court noted in its February 11, 2009 ruling:

> I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT   42

PAGE   485

1      financial condition of the company as it relates to damages in the
       Phase 2 and also issues that the receiver is looking at. And
2      without making a ruling on any of this, I would not suggest for a
       moment that these are mutually exclusive categories.
3
       (Tr., 101:3 - 8)
4
5          Mattel argues that the necessary connection between the Financing

6      Discovery and Phase 2 damages exists because the Financing Entities have acquired

7      a security interest in MGA's assets, which, in turn, affects MGA's financial

8      condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

9          directly involved in providing funding to MGA in exchange for a
           security interest. Such funding, and security interests, are in and
10         of themselves directly relevant to the financial condition of the
           MGA Parties, including the amount of the security interests, the
11         terms and conditions of the funding, and the rate of funding. . . .

12     (Motion to Compel, p. 22: 13 – 17).

13         The Discovery Master agrees that such limited information, as it relates to

14     the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15     Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16     evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17     for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18     compel responses from Omni 808 Investors, LLC is granted with respect to

19     documents relating to (1) the existence of any debt owed by MGA Entertainment,

20     Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21     Investors, LLC and the MGA parties regarding any such indebtedness.

22         The problem, however, is the vast majority of the document requests set forth

23     in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24     to obtain information demonstrating the amount and nature of MGA's indebtedness

25     (and hence net worth) or communications regarding any such debt,[19] but instead

26     _____
       [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27     deferred discovery regarding the Wachovia debt until the middle of the Phase 1 trial. (Reporter's Transcript of
       Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28     from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

       [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                         - 20 -        ORDER NO. 3
                                                                  [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  42

PAGE  486

1 would require the Financing Entities to produce virtually every document in their

2 possession regarding their formation, operations, and history of transactions.

3 Among other things, the Subpoenas to the Financing Entities seek:

4       •      All records that "substantiate transfers of assets" by the Financing

5              Entities "to other entities, individuals, and/or parties, within the U.S.

6              and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7              of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8              Motion To Compel Production of Documents Responsive to Third-

9              Party Subpoenas, Attachment A, ¶ 16);

10      •      All documents "detailing or setting forth the relationship" between

11             each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12      •      All documents referring or relating to the "all contributions, loans and

13             any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14      •      All documents referring or relating to the "source of funding" of other

15             non-parties (*Id.* at ¶ 16);

16      •      All documents showing detail of "all loan facilities" referring or

17             relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18      •      All documents referring or relating to "transactions involving any

19             compensation, loans, advances, payments, fees or any other form of

20             consideration" paid to other non-parties (*Id.* at ¶ 15);

21      •      All "communications" referring or relating to the Financing Entities

22             and other non-parties (*Id.* at ¶ 17).

23             Accordingly, the Discovery Master concludes that most of the categories of

24 documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25 the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26 Section IV below (entitled "Disposition").

27 //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __42

PAGE __487

#### d.   Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  42

PAGE  488

1  linking those categories of documents to prior or anticipated testimony of MGA's

2  witnesses. Simply stating that credibility evidence is discoverable does nothing

3  toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4  here is reasonably calculated to lead to the discovery of such evidence.

### e.   MGA's Unclean Hands

6     Mattel next argues in its Motion to Compel that MGA has asserted an

7  unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8  Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9  sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.) But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16     Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." "(*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

EXHIBIT   42

PAGE   489

1    1996)).

2        Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA).  Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11            f.     **Mattel's Unfair Competition Counterclaim**

12       As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all.  Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   42

PAGE   490

1          **g.**    **Summary Of The Discovery Master's Findings With**

2                  **Respect To The Subpoenas Directed To The Financing**

3                  **Entities**

4 For the foregoing reasons, the Discovery Master finds that, based on the

5 record before him, Mattel has failed to sufficiently articulate the necessary

6 connection between most of the Financing Discovery and any Phase 2 issue.

7 Moreover, while there is a connection between the Financing Discovery and some

8 of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9 Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10 Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11 discovery is permissible in light of the case law interpreting Rules 26 and 45.

12 Accordingly, Mattel's motion to compel the Financing Entities to comply

13 with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14        **2.**    **Subpoenas To The Transferee Entities**

15 In their briefs regarding the enforceability of the Subpoenas, Mattel and

16 MGA do not, as a general rule, make a distinction between the Financing Entities

17 and the Transferee Entities, but rather direct the same arguments to both groups

18 collectively. However, there are important distinctions between the two groups,

19 including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20 with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21 sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22 pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23 documents relevant to Phase 2 issues which presumably cannot be obtained from

24 MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25 parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas

26 directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27 parties' above-referenced arguments differs, as follows.

28 //

EXHIBIT **42**

PAGE **491**

### a.   Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation.  Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties.  The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7).  The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.   Relevance To Phase 2 Issues

#### 1.   Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues.  However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest.  Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities.  This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT **42**

PAGE **492**

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

6                   **2.      Mattel's Unfair Competition Counterclaim**

7         Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10  Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11  practice within the meaning of the Unfair Competition Law and the scope of

12  Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13  imposes a constructive trust on the proceeds of MGA's sale of the subject

14  inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15  Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16  Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17  such conduct would constitute an unlawful attempt to circumvent the Court's order

18  and arguably render the transaction between MGA and the Transferee Entities an

19  anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20  manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21  could violate the Unfair Competition Law.

22        Moreover, although Mattel asserted its counterclaim for violation of the

23  Unfair Competition Law prior to the alleged misconduct (and long before the

24  Transferee Entities came into existence), Mattel phrased its allegations broadly

25  _____

26  [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27  Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their

28  spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -                    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  42

PAGE   493

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples.  (Counterclaims, p. 74, ¶ 165).

8          Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct.  Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16              c.      **Summary Of The Discovery Master's Findings With**

17                      **Respect To The Subpoenas Directed To The**

18                      **Transferee Entities**

19          As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  IV.  **Disposition**

24          1.      The Motion to Quash filed by MGA is **DENIED**.

25          2.      Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28          3.      Mattel's Motion to Compel Omni 808 Investors, LLC to produce

EXHIBIT ___42___

PAGE ___494___

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2   **DENIED** in part, as follows:

3           a.     Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4   with respect to documents relating to (1) the existence of any debt owed by MGA

5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8   regarding any other documents sought by these requests.

9           b.     Requests 4 through 12, 14 and 18:  The Motion is denied.

10       4.    Mattel's Motion to Compel the Transferee Entities to produce

11   documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12   IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13       5.    Mattel's Motion to Compel the Transferee Entities to produce

14   documents responsive to the Subpoenas is **GRANTED,** as follows:

15                           **<u>Subpoena To IGWT Group LLC</u>**

16           a.     Request 1:  The Motion is granted with respect to documents

17   relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18   including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19   or their spouses, or any entity or person affiliated with them.

20           b.    Request 2:  The Motion is granted

21           c.     Request 3:  The Motion is granted with respect to documents

22   relating to any ownership interest by Larian, his spouse, his children, his siblings,

23   or their spouses, or any entity or person affiliated with them.

24           d.    Request 4:  The Motion is granted with respect to documents

25   relating to any sources of funding by Larian, his spouse, his children, his siblings,

26   or their spouses, or any entity or person affiliated with them.

27           e.     Request 5:  The Motion is granted with respect to documents

28   relating to any compensation, loans, advances, payments, fees or any other form of

EXHIBIT __42__

PAGE __495__

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his
2  siblings, or their spouses, or any entity or person affiliated with them.
3          f.    Request 7:  The Motion is granted.
4                **Subpoena To IGWT 826 Investments LLC**
5          a.    Request 1:  The Motion is granted with respect to documents
6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items
7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his
8  siblings, or their spouses, or any entity or person affiliated with them.
9          b.    Request 2:  The Motion is granted
10         c.    Request 3:  The Motion is granted with respect to documents
11 relating to any ownership interest by Larian, his spouse, his children, his siblings,
12 or their spouses, or any entity or person affiliated with them.
13         d.    Request 4:  The Motion is granted with respect to documents
14 relating to any sources of funding by Larian, his spouse, his children, his siblings,
15 or their spouses, or any entity or person affiliated with them.
16         e.    Request 5:  The Motion is granted with respect to documents
17 relating to any compensation, loans, advances, payments, fees or any other form of
18 consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his
19 children, his siblings, or their spouses, or any entity or person affiliated with them.
20         f.    Request 7:  The Motion is granted.
21    5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,
22 shall be produced within 30 days of this Order, subject to any applicable
23 confidentiality designations available under the Protective Order.
24    6.    Nothing in this Order should be deemed to prevent Mattel from
25 seeking discovery from the MGA parties of documents encompassed by the
26 Subpoenas upon the showing of a sufficient nexus between the particular discovery
27 requests and legitimate Phase 2 issues, and subject to any applicable objections.
28 //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __42__

PAGE __496__

1 | Dated:  March 10, 2009

2

3

4 |                                              By:        /s/ Robert C. O'Brien

5 |                                                         ROBERT C. O'BRIEN
                                                           Discovery Master

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -                         ORDER NO. 3
                               [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  42

PAGE  497

# EXHIBIT 43

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 44

California Business Search

# California Business Portal

Secretary of State **DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of Jun 12, 2009 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT GROUP, LLC | | |
| **Number:** 200817910004 | **Date Filed:** 6/26/2008 | **Status:** active |
| **Jurisdiction:** CALIFORNIA | | |
| | **Address** | |
| 237 NORTH CAROL WOOD DRIVE | | |
| LOS ANGELES, CA 90077 | | |
| **Agent for Service of Process** | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT __44__

PAGE __524__

EXHIBIT 45

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 46

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**