# EXHIBIT 47

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7   MATTEL, INC.,                    )
                                     )
8                    Plaintiff,      )
                                     )
9          vs.                       )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. Al.,)
                                     )
11                   Defendants.     )  MOTIONS
    _____ )
12  AND CONSOLIDATED ACTIONS,        )
    _____ )

13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16           RIVERSIDE, CALIFORNIA

17          MONDAY, MAY 18, 2009

18              1:52 P.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
        Federal Official Court Reporter
24         3470 12th Street, Rm. 134            EXHIBIT __47__
         Riverside, California  92501
25             951-274-0844                     PAGE __615__
           www.theresalanza.com

Monday, May 18, 2009              Mattel vs. MGA, et. Al.

1   APPEARANCES:

2

    On behalf of Mattel, Inc.:
3

                          QUINN EMANUEL
4                         By:  JOHN QUINN
                               MICHAEL T. ZELLER
5                              DYLAN PROCTOR
                               SCOTT B. KIDMAN
6                         865 S. FIGUEROA STREET,
                          10th Floor
7                         Los Angeles, California  90017
                          213-624-7707
8

                          KLEE, TUCHIN, BOGDANOFF & STERN LLP
9                         BY:  DAVID M. STERN
                          1999 Avenue of the Stars
10                        Thirty-Ninth Floor
                          Los Angeles, CA  90067
11                        310-407-4025

12

13  On Behalf of MGA Entertainment/Isaac Larian:

14                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
15                             JASON RUSSELL
                               CARL ROTH
16                        300 South Grand Avenue
                          Los Angeles, California  90071-3144
17                        213-687-5000

18                        GLASER, WEIL, FINK, JACOBS
                          HOWARD & SHAPIRO, LLP
19                        BY:  PATRICIA GLASER
                          BY:  JOEL N. KLEVENS
20                        10250 Constellation Blvd.
                          Los Angeles, CA  90067
21                        310-553-3000

22                        MITCHELL SILBERBERG & KNUPP LLP
                          BY:  RUSSELL J. FRACKMAN
23                        11377 West Olympic Blvd.
                          Los Angeles, CA  90064-1683
24                        310-312-2000

                                         EXHIBIT 47
25  /  /  /
    /  /  /                              PAGE 616

3

```
 1  | APPEARANCES (cont'd):
 2  |
 3  | On Behalf of MGA Entertainment/Isaac Larian:
 4  |                         PACHULSKI STANG ZIEHL & JONES
    |                         BY:   JAMES I. STANG
 5  |                         BY:   RICHARD PACHULSKI
    |                         10100 Santa Monica Blvd.,
 6  |                         11th Floor
    |                         Los Angeles, CA  90067-4100
 7  |                         310-277-6910
 8  | On Behalf of Isaac Larian:
 9  |                         JEFFER MANGELS BUTLER & MARMARO LLP
    |                         BY:   JOSEPH A. EISENBERG
10  |                         1900 Avenue of the Stars
    |                         7th Floor
11  |                         Los Angeles, CA  90067-4308
    |                         310-203-8080
12  |
13  | On Behalf of Defendants Omni 808:
14  |                         BINGHAM McCUTCHEN LLP
    |                         BY:   TODD E. GORDINIER
15  |                         BY:   PETER N. VILLAR
    |                         600 Anton Boulevard,
16  |                         18th Floor
    |                         Costa Mesa, CA  92626-1924
17  |                         714-830-0622
18  |
19  | On Behalf of Crum & Forster:
20  |                         MUSICK, PEELER & GARRETT LLP
    |                         BY:   JENNIFER M. KOKES
21  |                         One Wilshire Boulevard
    |                         Los Angeles, CA  90017
22  |                         213-629-7618
23  | ALSO PRESENT:           Patrick A. Fraioli, Jr.,
    |                         Ambassador Pierre Prosper
24  |                         Robert O'Bryan
    |                         Michael J. Bidart
25  |
```

EXHIBIT __47__

PAGE __617__

18

1    the cases we cited, the Dubai Islamic Bank case, where the

2    employees there, like the employees here, were accused of being

3    part of the misconduct that was at issue in the lawsuit.  And

4    they were demoted.  They continued to be employed, and their

5    interests were found to still be aligned with the corporation.          02:09

6         THE COURT:  But what's not clear to the Court,

7    though, is exactly what role they play at present.

8         MR. KIDMAN:  Well, I think what the record shows is,

9    Mr. Vargas is still responsible for sales and Ms. Trueba is

10   still responsible for marketing and public relations.  But          02:09

11   there's been no evidence that their positions have changed,

12   other than characterizations of these people as being mid-level

13   employees by mere virtue of the fact that they happen to report

14   to somebody else.  As we submit, that's true of everyone but

15   the CEO.          02:10

16        On the alignment of interests issue, Mr. Klevens

17   referred to the fact that these individuals are represented by

18   separate counsel in Mexico.  We've been attempting to get --

19   and I believe there's court orders requiring them to produce

20   information as to who's paying those legal fees.  That          02:10

21   information hasn't been produced, despite court orders.

22        We think we know what the information will show.  But

23   the point being, they have not been deposed.  They have not

24   asserted the Fifth Amendment.  Speculation about what they

25   might do in the future, whether MGA may toss these people aside          02:10

EXHIBIT __47__

19

1   in the future and distance themselves, whether the witnesses

2   may choose to distance themselves, is not relevant for the

3   purposes of the inquiry today:  Are their interests aligned?

4   Their continued employment is sufficient on that point.

5              As I've mentioned, the law is clear that the          02:11

6   burden -- and Mr. Klevens talked about burden -- the burden is

7   a modest one for purposes of getting the deposition, which is a

8   different issue than under Rule 32, whether that testimony will

9   ultimately bind.

10             **THE COURT:**  I understand.                          02:11

11             Very well.  Thank you, Counsel.

12             The Court next wants to take up the motion -- again,

13  this is Mattel's motion -- for leave to file a third amended

14  answer and counterclaim.

15             I'm going to start with the defense on this.          02:11

16             The Court is tentatively of the mind, based on the

17  papers, that leave should be freely given in this case for the

18  amendment.  The Court, probably on its own oversight, although

19  nobody else raised it at the time of the scheduling conference

20  on this phase of the litigation, did not set a cutoff for       02:11

21  amending or adding parties.  We probably should have set a

22  cutoff, but looking back at the scheduling conference order, we

23  didn't.  So it would seem that the Rule 15 standard applies.

24             The defense does a very good job of explaining how

25  unquestionably the addition of the claims, the parties, and     02:12

Monday, May 18, 2009                    Mattel vs. MGA, et al.

EXHIBIT   47

PAGE   619

1    then, arguably, the necessary parties that would have to flow

2    from that would exceedingly complicate an already exceedingly

3    complicated case.

4         I don't know if that's really relevant to the issue

5    of whether or not amendments should be afforded.  It's a

6    complicated case to begin with.  It will be more complicated.

7    As much as I might like there to be, there's not a cutoff in

8    terms of complication, where I could just say, 'This is too

9    much; we're stopping here.'

10        So that's kind of where I am right now, Ms. Glaser.

11        I'm going to give you the first opportunity to

12   respond, given my tentative thoughts.

13        **MS. GLASER:**  Your Honor -- and I don't want to be

14   glib, because obviously, these are serious allegations being

15   made, which we believe 95 percent of them have no basis in fact

16   or law.

17        But, Your Honor, under your theory, if Mr. Larian

18   runs a stop sign out here in front of the courthouse tomorrow,

19   can we amend the complaint and include that as well, simply

20   because we have a Rule 15 and that rules -- the Court wishes

21   to --

22        **THE COURT:**  Well, no.  The Court doesn't have

23   jurisdiction over a stop sign out in front of the courthouse.

24        **MS. GLASER:**  My point is this -- and, again, let's

25   start with the RICO -- the predicate acts.

02:12

02:12

02:13

02:13

02:13

Monday, May 18, 2009                    Mattel vs. MGA, et. al.

EXHIBIT   **47**

PAGE   **620**

21

1          **THE COURT:**  The Court does have jurisdiction over

2     RICO.

3          **MS. GLASER:**  Thank you, Your Honor.

4          Under the rubric of a fraudulent conveyance, we have

5     a whole new theory, a whole new theory.  There is no legitimate          02:13

6     reason to add these claims to the lawsuit.  This is a separate

7     and distinct counterclaim, with 17 new individuals.  And to

8     blindly come in and tell Your Honor, in a reply brief, 'not to

9     worry, it's all alter ego anyway, so what's the problem,' is

10    offensive to everybody in this courtroom.  That is not the          02:14

11    appropriate standard.  And that is not the law.  And it's

12    certainly not the truth.

13         Again, each one of these people are entities; they

14    have to be served.  A number of them, presumably -- I don't

15    know that for a fact -- are going to object to jurisdiction.          02:14

16    There are alter-ego issues, by Mattel's own description.  At

17    least ten different entities are going to have to be litigated.

18    The 2008 financial transactions have no relationship whatsoever

19    to Mattel's other claims of predicate acts and RICO, et cetera.

20    There are no damages yet.  There is a contingent final          02:15

21    judgment, and there's an appeal.

22         It is no surprise to Your Honor that MGA doesn't

23    agree with the verdict, and we'll be appealing.

24         **THE COURT:**  I understand.

25         **MS. GLASER:**  That's contingent.          02:15

EXHIBIT __47__

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.
                                        PAGE __621__

125

1          MS. GLASER:  And we haven't had the benefit of that.

2     I think if we're paying -- at least temporarily, we at least

3     ought to see --

4          THE COURT:  Part of what will occur at this point is

5     a complete accounting of all money spent during the 20-day          05:05

6     temporary receivership.  You will be receiving that shortly

7     from Mr. Fraioli, which will account for all of the money

8     spent.  And on a going-forward basis, the Court will specify

9     how future payments are to be made.

10          And as I indicated before, at the end of the day,          05:05

11     everyone will have the opportunity to revisit the issue of cost

12     sharing.

13          MS. GLASER:  Thank you very much.

14          THE COURT:  Is there anything further?

15          MR. QUINN:  No, Your Honor.          05:06

16          THE COURT:  Have a good evening.

17          (Court is adjourned.)

18                    CERTIFICATE

19

20     I hereby certify that pursuant to section 753, title 28, United
       States Code, the foregoing is a true and correct transcript of
21     the stenographically recorded proceedings held in the above-
       entitled matter and that the transcript page format is in
22     conformance with the regulations of the Judicial Conference of
       the United States.
23

24     _____          May 29, 2009
       THERESA A. LANZA, CSR, RPR                _____
25     Federal Official Court Reporter                 Date

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT  47

PAGE  622

# EXHIBIT 48

 **REUTERS**

Print | Close this window

## MGA unwilling to share Bratz revenue with Mattel

Thu Sep 11, 2008 7:37pm EDT

By Gina Keating

LOS ANGELES (Reuters) - MGA Entertainment Inc will not share future revenue from its Bratz doll franchise with Mattel Inc (MAT.N: Quote, Profile, Research, Stock Buzz) to settle a copyright infringement lawsuit, MGA Chief Executive Isaac Larian told Reuters on Thursday.

"It's not true. I never said that," Larian said of a Wall Street Journal story, which cited him as saying that MGA would be willing to share future revenues from its Bratz doll franchise to end the federal court litigation.

"What I said was, that it is in the interest of MGA employees and I believe it is in the interest of Mattel shareholders and Mattel employees for the two companies to come to a settlement and move on," Larian said.

Wall Street Journal spokesman Robert Christie said on Thursday the newspaper stands behind its story.

Larian met this week with a mediator for a court-ordered settlement conference, but he said a royalty payment on future Bratz revenue was not on the table.

"We are never going to give the Bratz brand to Mattel or anybody else," Larian said. "A royalty for what? These are really speculations that are not realistic."

U.S. District Judge Stephen Larson ordered MGA and Mattel into mediation to work out the amount of damages MGA would pay Mattel for infringing on the original Bratz drawings and models that Mattel won in the court fight, as well as which company will control the franchise going forward.

A federal jury in Riverside, California awarded Mattel all but four drawings and models upon which the Bratz franchise was based, finding that former Barbie designer Carter Bryant had made them while under contract to Mattel and illegally sold them to MGA.

The jury also awarded Mattel up to $100 million in damages and lost profits during the two-phase summer trial, but the verdict did not conclude which company had the right to make the urban chic competitor to Barbie.

Mattel had argued that MGA owed it all revenues from Bratz -- about $2 billion -- plus punitive damages. MGA had contended that if the jury found that the dolls infringed at all on the drawings, damages should be limited to the first generation of dolls because later generations were substantially redesigned.

The jury appeared to side with MGA by awarding only $10 million on Mattel's copyright infringement claim and by asking the judge during deliberations if it could award damages based only on profits from the first generation of dolls.

Larian, who intends to appeal the final damages award, described his position going into the mediation as: "I want to come to a global settlement that each one of us goes our own way and competes where it really matters: in the marketplace."

EXHIBIT __48__

PAGE __623__

A Mattel spokesperson said the company was continuing to take part in the process.

"I don't want to spend another summer in Riverside (California). It took a toll on my family," Larian said. "My willingness for a settlement doesn't come from my weakness, it comes from my strength."

Mattel's shares closed up 8 cents at $19.40 on the New York Stock Exchange.

(Additional reporting by Aarthi Sivaraman in New York)

© Thomson Reuters 2008. All rights reserved. Users may download and print extracts of content from this website for their own personal and non-commercial use only. Republication or redistribution of Thomson Reuters content, including by framing or similar means, is expressly prohibited without the prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and disclosure of relevant interests.

EXHIBIT __48__

PAGE __624__

# EXHIBIT 49

RECEIVED

SEP 2 1 2007
BRL 2:02PM

1   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
2   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
3   Los Angeles, CA 90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   DALE M. CENDALI (admitted *pro hac vice*)
    O'MELVENY & MYERS LLP
6   400 South Hope Street
    Los Angeles, CA 90071-2899
7   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407

8

9   Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK) Limited, MGAE
10  de Mexico S.R.L. de C.V., and Isaac Larian

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA
                        EASTERN DISTRICT

14  CARTER BRYANT, an individual,    | Case No. CV 04-09049 SGL (RNBx)
                                     | (consolidated with CV 04-9059 & 05-2727)
15          Plaintiff,
                                     | MGA ENTERTAINMENT, INC.'S
16      v.                           | SUPPLEMENTAL DISCLOSURES
                                     | AND MGA ENTERTAINMENT (HK)
17  MATTEL, INC., a Delaware         | LIMITED, MGAE DE MEXICO
    Corporation,                     | S.R.L. DE C.V., AND LARIAN'S
                                     | INITIAL DISCLOSURES UNDER
18          Defendant.               | RULE 26(a)(1)

19  _____      | Judge: Hon. Stephen G. Larson
20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and       | Discovery Cut-Off:    March 3, 2008
21  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.

22

23

24

25

26                                      EXHIBIT ___49___

27

28                                      PAGE ___625___

1    MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited

2    ("MGA Hong Kong"), MGAE de Mexico S.R.L. de C.V. ("MGA Mexico"), and

3    Isaac Larian ("Larian") (collectively the "MGA Parties") hereby submit the

4    following initial disclosures to Mattel, Inc. ("Mattel"), pursuant to Rule 26(a) of the

5    Federal Rules of Civil Procedure.  The MGA Parties make these initial disclosures

6    based upon information reasonably available to them and reserve the right to

7    identify additional documents and witnesses hereafter, and otherwise to provide

8    supplemental disclosures as appropriate or necessary.  To the extent prior initial

9    disclosures have been made by one or more of the MGA Parties, the instant

10   disclosures serve to incorporate and supplement any such prior disclosures.

11   **Witnesses**

12        The MGA Parties' initial disclosure of the identities of potential witnesses is

13   based solely upon such information discovered thus far, as well as the MGA

14   Parties' present analysis of the case, and shall not, in any way, be deemed to be a

15   representation that additional witnesses do not exist.  Accordingly, this disclosure is

16   subject to the MGA Parties' identification of additional individuals with knowledge

17   of facts supporting any of the material allegations, claims or  in the Consolidated

18   Action.  By indicating the general subject matter or information these individuals

19   may possess, the MGA Parties are in no way limiting their right to call any

20   individual listed herein to testify concerning other subjects.

21        Subject to the foregoing, individuals who will likely have discoverable

22   information relevant to the disputed facts alleged in the pleadings and the subject

23   matter of the information are as follows:

24        1.     Arnold Artavia.  MGA believes that Mr. Artavia is a current

25   Mattel employee.  Mr. Artavia was deposed on September 21, 2006 and possesses

26   the information set forth in his deposition testimony.

27        2.     Erika Ashbrook.  MGA believes that Ms. Ashbrook is a current

28   Mattel employee.  Ms. Ashbrook may possess information relevant to Mattel's

EXHIBIT __49__          - 1 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
                                        MGA MEXICO, AND LARIAN'S INITIAL
PAGE **626**                            DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1    efforts to obtain undisclosed product information from MGA and to Mattel's

2    manipulation of MGA's retail displays.

3         3.      Schuyler Bacon. Ms. Bacon is responsible for MGA's

4    recruiting activities. Ms. Bacon may possess knowledge of facts in support of

5    MGA's defenses to Mattel's RICO and trade secret counterclaims. Ms. Bacon may

6    be contacted through MGA's counsel of record.

7         4.      Manmohan Bhuller. Mr. Bhuller is a former Mattel employee

8    and may possess knowledge of facts in support of MGA's claims of unfair

9    competition.

10         5.      Kevin Bloomfield. Mr. Bloomfield is a Games Manager at

11    MGA. Mr. Bloomfield may possess knowledge of the creation and design of

12    MGA's Alien Racers product line. Mr. Bloomfield may be contacted through

13    MGA's counsel of record.

14         6.      Matthew Bousquette. MGA believes that Mr. Bousquette is a

15    former President of Mattel Brands. Mr. Bousquette may possess knowledge of

16    Mattel's serial copying of MGA's distinctive trade dress, trademarks, product

17    packaging, themes, ideas, and advertising; Mattel's dilution of MGA's famous

18    marks; Mattel's interference with MGA's advertising efforts; Mattel's threats to

19    and intimidation of retailers, suppliers, licensees, distributors, manufacturers, and

20    former employees and freelancers; Mattel's improper influence of standard-setting

21    and industry organization; Mattel's manipulation of MGA's retail displays and

22    other aspects of Mattel's unclean hands.

23         7.      Ron Brawer. Mr. Brawer is MGA's President of Global Sales

24    and Planning. Mr. Brawer may possess information relevant to some aspect or

25    aspects of MGA's sales and marketing of its products (including, without

26    limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover Head,"

27    "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers"). Mr.

28    Brawer also has knowledge of facts in support of MGA's defenses to Mattel's

EXHIBIT __49__

PAGE __627__

- 2 -

1    RICO and trade secret counterclaims, Mattel's unfair competition and Mattel's

2    unclean hands. Mr. Brawer may be contacted through MGA's counsel of record.

3         8.        Janine Brisbois. Ms. Brisbois is an employee of MGA Canada.

4    Ms. Brisbois has knowledge of facts in support of MGA's defenses to Mattel's

5    RICO and trade secret counterclaims. Ms. Brisbois may be contacted through

6    MGA's counsel of record.

7         9.        Kerri Brode. Ms. Brode was deposed on January 19, 2007 and

8    August 15, 2007 and possesses the information set forth in her deposition

9    testimony. Ms. Brode may be contacted through MGA's counsel of record.

10        10.       Charnayne Brooks. Ms. Brooks is an employee of MGA. Ms.

11   Brooks was deposed on March 2, 2007 and possesses the information set forth in

12   her deposition testimony. Ms. Brooks may be contacted through MGA's counsel of

13   record.

14        11.       Carter Bryant. Carter Bryant possesses information relevant to

15   the creation of the original "Bratz" drawings and, to some extent, of the creation

16   and design by MGA of the first generation of "Bratz" dolls and timing thereof; the

17   nature and scope of his employment at Mattel; the nature and scope of his work for

18   and with MGA; and information relevant to his own defenses in this matter, as well

19   as knowledge of facts in support of MGA's defenses to Mattel's counterclaims.

20   Mr. Bryant may be contacted through his counsel of record.

21        12.       Janet Bryant. Ms. Bryant may be contacted through Carter

22   Bryant's counsel of record. Ms. Bryant possesses information concerning, among

23   other things, Mr. Bryant's general skills and talents as a designer and his

24   conception, creation, design and development of various matters when he was not

25   employed by Mattel.

26        13.       Tom Bryant. Tom Bryant may be contacted through Carter

27   Bryant's counsel of record. Tom Bryant possesses information concerning, among

28   other things, Mr. Bryant's general skills and talents as a designer and his

EXHIBIT __49__   - 3 -   MGA'S SUPP. DISCLOSURES AND MGA HK, MGA MEXICO, AND LARIAN'S INITIAL DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE __628__

1    conception, creation, design and development of various matters when he was not

2    employed by Mattel.

3          14.     Yuval Caspi. Mr. Caspi is MGA's Vice President, Boys Toys.

4    Mr. Caspi may possess knowledge of the creation and design of MGA's Alien

5    Racers product line, logo and advertising, Mattel's copying of same, and Mattel's

6    efforts to tamper with MGA retail displays. Mr. Caspi may be contacted through

7    MGA's counsel of record.

8          15.     Jorge Castilla. Mr. Castilla is an employee of MGA. Mr.

9    Castilla may possess knowledge of facts in support of MGA's defenses to Mattel's

10    RICO and trade secret counterclaims. Mr. Castilla may be contacted through

11    MGA's counsel of record.

12         16.     Elise Cloonan. Ms. Cloonan is a former Mattel employee and

13    may possess information relevant to the timing of the conception and creation of the

14    original "Bratz" artwork by Carter Bryant prior to MGA's acquisition of rights

15    therein. Ms. Cloonan may be contacted through her counsel, Larry McFarland.

16         17.     Dan Cooney. Mr. Cooney is MGA's Vice President of Sales,

17    National Accounts. Mr. Cooney may possess information about consumer

18    confusion between Mattel products. Mr. Cooney may be contacted through MGA's

19    counsel of record.

20         18.     Jamie Cygielman. MGA believes that Ms. Cygielman is a

21    former Mattel employee. Ms. Cygielman may possess information relevant to

22    Mattel's unfair competition and unclean hands.

23         19.     Richard De Anda. MGA believes that Mr. De Anda currently is

24    Mattel's V.P. of Worldwide Security and may possess information relevant to

25    Mattel's investigations of MGA, Bryant, Larian and "Bratz."

26         20.     Thomas Debrowski. MGA believes that Mr. Debrowski is a

27    current Mattel employee. Mr. Debrowski may possess information relevant to

28    Mattel's unfair competition and unclean hands.

EXHIBIT **49**    - 4 -

PAGE **629**

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1    21.    Sandrine de Raspide.  Ms. de Raspide is the former Licensing

2  Manager at MGA.  Ms. de Raspide has knowledge of facts in support of MGA's

3  unfair competition claims, including without limitation, threats to and intimidation

4  of licensees.  Ms. de Raspide may be contacted through MGA's counsel of record.

5    22.    Leon Djiguerian.  Mr. Djiguerian is a Product Manager at MGA.

6  Mr. Djiguerian may possess information relevant to some aspect or aspects the

7  design and packaging of MGA products, including "Bratz."   Mr. Djiguerian may

8  be contacted through MGA's counsel of record.

9    23.    Ann Driskill.  MGA believes that Ms. Driskill currently is a

10  Mattel employee.  Ms. Driskill was deposed on December 15, 2004 and July 12,

11  2007 and possesses the information set forth in her deposition testimony.

12    24.    Robert Eckert.  MGA believes that Mr. Eckert currently is the

13  CEO of Mattel.  Mr. Eckert may possess knowledge of Mattel's serial copying of

14  MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and

15  advertising; Mattel's dilution of MGA's famous marks; Mattel's interference with

16  MGA's advertising efforts; Mattel's threats to and intimidation of retailers,

17  suppliers, licensees, distributors, manufacturers, and former employees and

18  freelancers; Mattel's improper influence of standard-setting and industry

19  organization; and/or Mattel's manipulation of MGA's retail displays.

20    25.    Margo Eldridge.  Ms. Eldridge is a freelancer who formerly

21  worked for MGA producing commercials for "Bratz."  MGA believes that Ms.

22  Eldridge currently works as a freelancer for Mattel.  MGA believes that Ms.

23  Eldridge may possess knowledge relevant to some aspect or aspects of Mattel's

24  serial copying of MGA's advertising, Mattel's efforts to interfere with the

25  production of MGA's commercials; Mattel's efforts to improperly influence CARU

26  and Nickelodeon; and Mattel's efforts to disseminate false information to retailers.

27  Ms. Eldridge may also possess information relevant to Mattel's threats to and

28  intimidation of former employees and/or freelancers.

EXHIBIT __49__     - 5 -     MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE __630__

1       26.     Kevin Farr.  MGA believes that Mr. Farr is Mattel's Chief

2  Financial Officer.  Mr. Farr may possess information relevant to damages.

3       27.     Adrienne Fontanella.  MGA believes that Ms. Fontanella is the

4  former President of Girls at Mattel.  Ms. Fontanella may possess knowledge of

5  Mattel's serial copying of MGA's distinctive trade dress, trademarks, product

6  packaging, themes, ideas, and advertising; Mattel's dilution of MGA's famous

7  marks; Mattel's interference with MGA's advertising efforts; Mattel's threats to

8  and intimidation of retailers, suppliers, licensees, distributors, manufacturers, and

9  former employees and freelancers; Mattel's improper influence of standard-setting

10  and industry organization; and/or Mattel's manipulation of MGA's retail displays.

11       28.     Lissa Freed.  MGA believes that Ms. Freed currently is a Mattel

12  employee.  Ms. Freed was deposed on May 3, 2007 and possesses the information

13  set forth in her deposition testimony.

14       29.     Neil Friedman.  MGA believes that Mr. Friedman is President of

15  Mattel Brands.  Ms. Friedman may possess knowledge of Mattel's serial copying

16  of MGA's distinctive trade dress, trademarks, product packaging, themes, ideas,

17  and advertising; Mattel's dilution of MGA's famous marks; Mattel's interference

18  with MGA's advertising efforts; Mattel's threats to and intimidation of retailers,

19  suppliers, licensees, distributors, manufacturers, and former employees and

20  freelancers; Mattel's improper influence of standard-setting and industry

21  organizations; and/or Mattel's manipulation of MGA's retail displays.

22       30.     Jeanne Galvano.  Ms. Galvano possesses information relevant

23  to, among other things, the timing of the creation of the original "Bratz" drawings

24  by Carter Bryant and Mr. Bryant's general skills and talents as an artist.

25       31.     Paula Garcia.  Ms. Garcia is MGA's Vice President of Product

26  Design and Development and has been involved in the design and development of

27  MGA's "Bratz" dolls.  Ms. Garcia was deposed in May, 2007, and possesses the

28  information set forth in her deposition testimony.  Ms. Garcia may be contacted

1    through MGA's counsel of record.

2        32.    Marcy George. Ms. George is MGA's Domestic Director of

3    Licensing. Ms. George has knowledge of MGA's licensing of "Bratz" in the

4    United States. Ms. George may be contacted through MGA's counsel of record.

5        33.    Diane Goveia Gordon. Ms. Gordon is an employee of MGA

6    Canada. Ms. Gordon may possess knowledge of facts in support of MGA's

7    defenses to Mattel's RICO and trade secret counterclaims. Ms. Gordon may be

8    contacted through MGA's counsel of record.

9        34.    Sarah Halpern. Ms. Halpern is a freelance vendor who worked

10   for MGA on the fashions for certain "Bratz" products, including MGA's first

11   generation of "Bratz" dolls. Ms. Halpern may possess information relevant to some

12   aspect or aspects of the creation and design by MGA of the first generation of

13   "Bratz" dolls, in particular with respect to some aspect or aspects of the fashion

14   designs. Ms Halpern may be contacted through her attorney, Larry McFarland,

15   Esq.

16       35.    Rebecca Harris. Ms. Harris is a current MGA employee. She

17   was deposed in August 2007 and possesses the information set forth in her

18   deposition testimony. Ms. Harris may be contacted through MGA's counsel of

19   record.

20       36.    Connie Hibbert. MGA believes that Ms. Hibbert is a current

21   Mattel employee. Ms. Hibbert may possess information relevant to Mattel's

22   manipulation of MGA's retail displays.

23       37.    Martin Hitch. Mr. Hitch formerly worked as MGA's V.P. of

24   International Sales. Mr. Hitch may possess knowledge of sales of "Bratz"

25   including first generation "Bratz."

26       38.    Rob Hudnut. MGA believes that Mr. Hudnut is a current Mattel

27   employee. Mr. Hudnut was deposed on July 13, 2007 and August 20, 2008 and

28   possesses the information set forth in his deposition testimony.

EXHIBIT __49__    - 7 -    MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE __632__

1    39.    Jim Huntley.  Mr. Huntley is a former MGA employee.  He may

2    possess knowledge about MGA's marketing of its "Bratz" line of products after the

3    start of his employment at MGA.

4    40.    Richard Irmen.  Mr. Irmen is a personal acquaintance of Mr.

5    Bryant and possesses information relevant to, among other things, the timing of the

6    creation of the original "Bratz" drawings by Carter Bryant.

7    41.    Julia Jensen.  MGA believes that Ms. Jensen is a current Mattel

8    employee.  Ms. Jensen was deposed on June 8, 2007 and possesses the information

9    set forth in her deposition testimony.

10    42.    Fred Kawashima.  MGA believes that Mr. Kawashima is a

11    current Mattel employee.  Mr. Kawashima was deposed on January 17, 2007 and

12    June 19, 2007 and possesses the information set forth in his deposition testimony.

13    43.    Alan Kaye.  MGA believes that Mr. Kaye is Mattel's Senior

14    Vice President of Human Resources.  Mr. Kaye was deposed on December 10,

15    2004 and June 21, 2007 and possesses the information set forth in his deposition

16    testimony.

17    44.    Ellen Komatsu.  Ms. Komatsu is a Senior Designer at MGA.

18    Ms. Komatsu may possess information relevant to some aspect or aspects of the

19    design of MGA's "Bratz" dolls.  Ms. Komatsu may be contacted through MGA's

20    counsel of record.

21    45.    Susana Kuemmerle.  Ms. Kuemmerle is an employee of MGA

22    Mexico.  Ms. Kuemmerle has knowledge of facts in support of MGA's defenses to

23    Mattel's RICO and trade secret counterclaims.  Ms. Kuemmerle may be contacted

24    through MGA's counsel of record.

25    46.    Michael Kukar.  Mr. Kukar is an employee of MGA.  Mr. Kukar

26    may possess information relevant to the creation of "Bratz" character art.  Mr.

27    Kukar may be contacted through MGA's counsel of record.

28    47.    Timothy Kilpin.  MGA believes that Mr. Kilpin currently is

EXHIBIT  47

PAGE  633

- 8 -

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1   Senior VP Marketing and Design at Mattel. Mr. Kilpin may possess knowledge of

2   the announcement of Mattel's suit against Mr. Bryant, Mattel's serial copying of

3   MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and

4   advertising; Mattel's dilution of MGA's famous marks; and consumer confusion

5   between Mattel products and MGA products.

6           48.     Isaac Larian. Mr. Larian is MGA's President and Chief

7   Executive officer. Mr. Larian may possess information relevant to material

8   allegations in the Consolidated Action, including MGA's acquisition of rights to the

9   original "Bratz" drawings by Carter Bryant, some aspect or aspects of the creation,

10   design and development of the "Bratz" dolls, Mattel's serial copying of MGA's

11   products (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz

12   Funky Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little

13   Patient," and "Alien Racers"); Mattel's serial copying of MGA's distinctive trade

14   dress, trademarks, product packaging, themes, ideas, and advertising; Mattel's

15   dilution of MGA's famous marks; Mattel's interference with MGA's advertising

16   efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees,

17   distributors, manufacturers, and former employees and freelancers; Mattel's

18   improper influence of standard-setting and industry organization; Mattel's

19   manipulation of MGA's retail displays; damages suffered by MGA as a result of

20   Mattel's conduct; and facts in support of MGA's defenses to Mattel's

21   counterclaims. Mr. Larian may be contacted through his counsel of record.

22           49.     Margaret (Hatch) Leahy: Ms. Leahy is a former freelancer and

23   employee of MGA. She possesses information relevant to some aspect or aspects

24   of the sculpting of the first generation of "Bratz" dolls, and samples, prototypes and

25   prior iterations thereof. Ms. Leahy also may possess information relevant to some

26   aspect or aspects of the sculpting of the "4-Ever Best Friends" dolls, the "Bratz

27   Winter Wonderland" and "Bratz Formal Funk" themes, "Prayer Angels," and the

28   "Mommy's Little Patient" doll. Ms. Leahy may be contacted through her counsel

EXHIBIT __49__          - 9 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE __634__

1 | Larry McFarland, Esq.

2 | 50. Edmond Lee. Mr. Lee is the Managing Director of MGA

3 | Entertainment (HK) Limited. Mr. Lee may possess knowledge of some aspect or

4 | aspects of the development and manufacture of the "contested" MGA Products

5 | (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky

6 | Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and

7 | "Alien Racers") and "Prayer Angels;" Mattel's serial copying of MGA's products;

8 | Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors,

9 | manufacturers, and former employees and freelancers; and knowledge of facts in

10 | support of MGA's defenses to Mattel's counterclaims. Mr. Lee may be contacted

11 | through MGA's counsel of record.

12 | 51. Stephen Lee. Mr. Lee is the former managing director of MGA

13 | HK. Mr. Lee may possess information relevant to some aspect or aspects of

14 | MGA's creation, design and development of MGA's "Bratz" dolls, including the

15 | first generation of those dolls.

16 | 52. Steve Linker. Mr. Linker is a former Mattel employee and

17 | freelancer. He was deposed on September 13, 2006 and possesses the information

18 | set forth in his deposition testimony.

19 | 53. Diana Luna. Ms. Luna is MGA's Director of International

20 | Licensing. Ms. Luna has knowledge of MGA's licensing of "Bratz"

21 | internationally. Ms. Luna may be contacted through MGA's counsel of record.

22 | 54. Kris Lynch. Ms. Lynch is a former Mattel employee and may

23 | possess knowledge of Mattel's "Diva Starz" project and other non-Barbie products.

24 | 55. Carlos Gustavo Machado Gomez. Mr. Machado is an employee

25 | of MGA. Mr. Machado may possess knowledge of facts in support of MGA's

26 | defenses to Mattel's RICO and trade secret counterclaims. Mr. Machado may be

27 | contacted through his counsel of record.

28 | 56. Dave Malacrida. Mr. Malacrida is MGA's V.P. of Public

EXHIBIT __49__

PAGE __635__

- 10 -

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1   Relations. Mr. Malacrida was deposed in August, 2007, and possesses the

2   information set forth in his deposition testimony. Mr. Malacrida may be contacted

3   through MGA's counsel of record.

4        57.    Julia Marine. MGA believes that Ms. Marine is a current Mattel

5   employee. Ms. Marine was deposed on September 21, 2006, November 8, 2006

6   and June 27, 2007 and possesses the information set forth in her deposition

7   testimony.

8        58.    Veronica Marlowe. Ms. Marlowe formerly was a freelance

9   designer for MGA. Ms. Marlowe may possess information relevant to some aspect

10  or aspects of the creation and design of MGA's "Bratz" dolls; and Mattel's threats

11  to and intimidation of former employees and/or freelancers. Ms. Marlowe may be

12  contacted through her counsel Larry McFarland, Esq.

13       59.    Liliana Martinez. MGA believes that Ms. Martinez currently is

14  a Mattel employee. Ms. Martinez was deposed on May 20, 2005 and possesses the

15  information set forth in her deposition as well as information concerning Mattel's

16  creation, design and development of its "My Scene" line of fashion dolls.

17       60.    Mary Carmen Mendez. MGA believes that Ms. Mendez is a

18  former Mattel employee. Ms. Mendez may possess knowledge about Mattel's

19  unfair competitive practices.

20       61.    Jill Nordquist. MGA believes that Ms. Nordquist currently is a

21  Marketing Director at Mattel. Ms. Nordquist was deposed on July 31, 2007 and

22  possesses the information set forth in her deposition testimony.

23       62.    Victoria O'Connor. Ms. O'Connor formerly worked as MGA's

24  V.P. of Licensing. Ms. O'Connor possesses information relevant to some aspect or

25  aspects of the timing of MGA's acquisition of rights in the original "Bratz"

26  drawings by Bryant and the design and licensing by MGA of the first generation of

27  "Bratz" dolls. Ms. O'Connor also possesses information relevant to MGA's

28  negotiations with Bryant and his attorney for the acquisition of the rights in the

EXHIBIT **49**

PAGE **636**

- 11 -

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1  original "Bratz" drawings. Ms. O'Connor may also possesses information relevant

2  to some aspect of aspects of MGA's licensing of the "Bratz" concept; Mattel's

3  serial copying of MGA's distinctive trade dress, trademarks, product packaging,

4  themes, ideas, and advertising; and Mattel's threats to and intimidation of licensees.

5         63.      Colleen O'Higgins. Ms O'Higgins formerly worked as a

6  Product Manager at MGA. Ms. O'Higgins may possesses information relevant to

7  the timing or creation of "Bratz" and some aspect or aspects of the marketing of

8  "Bratz."

9         64.      Kislap Ongchango. MGA believes that Mr. Ongchango

10  currently is a Mattel employee. Mr. Ongchango was deposed on April 24, 2007

11  and possesses the information set forth in his deposition testimony.

12         65.      Rod Palmer. MGA believes that Mr. Palmer currently is a

13  Mattel employee. Mr. Palmer was deposed on June 26, 2007 and possesses the

14  information set forth in his deposition testimony.

15         66.      Ann Parducci. MGA believes that Ms. Parducci is a former

16  Mattel employee. Ms. Parducci may possess information relevant to Mattel's

17  practices regarding Mattel's creation, design and development of fashion dolls,

18  Mattel's reaction to "Bratz," Bryant's work at Mattel and Mattel's knowledge of

19  Bryant's involvement in the design of the first generation of MGA's "Bratz" dolls.

20         67.      Cassidy Park. MGA believes that Ms. Park is a current or

21  former Mattel employee. Ms. Park was deposed on March 2, 2005 and possesses

22  the information set forth in her deposition testimony.

23         68.      Tom Park. Mr. Park is a former MGA employee. Mr. Park may

24  possess knowledge of facts in support of MGA's defenses to Mattel's RICO and

25  trade secret counterclaims.

26         69.      Rene Pasko. MGA believes that Ms. Pasko currently is a Mattel

27  employee. Ms. Pasko was deposed on June 13, 2007 and possesses the information

28  set forth in her deposition testimony.

EXHIBIT **49**    - 12 -    MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE **637**

70.     Tina Patel. Ms. Patel was a Brand Manager for "Bratz" while employed by MGA and later became a Mattel employee but, to MGA's knowledge, is no longer a Mattel employee. Ms. Patel may possess information relevant to Mattel's investigation of MGA and its executives, employees and freelancers, and other aspects of Mattel's unfair competition and unclean hands.

71.     Ninette Pembleton. Ms. Pembleton is MGA's V.P. of Operations. Ms. Pembleton may possess knowledge of some aspect or aspects of the creation and design of MGA products, including "Mommy's Little Patient" and "Alien Racers"; Mattel's serial copying of MGA's products (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers"); and Mattel's serial copying of MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and advertising. Ms. Pembleton may be contacted through MGA's  counsel of record.

72.     Joni Pratt. MGA believes that Ms. Pratt currently is a Mattel employee. Ms. Pratt was deposed on June 1, 2007 and possesses the information set forth in her deposition testimony.

73.     Ramona Prince. Ms. Prince is a notary public and was deposed in 2004. She possesses information relevant to some aspect or aspects of the timing of Mr. Bryant's creation of the original "Bratz" drawings. Ms. Prince may be contacted through her counsel of record.

74.     Jesse Ramirez. Mr. Ramirez is the owner of South Bay Molds and may possess information relevant to the timing of MGA's design of the first generation of "Bratz" dolls, specifically with respect to the creation of molds therefor.

75.     David Rosenbaum. Mr. Rosenbaum is MGA's former counsel. He possesses information relevant to the negotiation of the MGA-Bryant contract.

76.     Ivy Ross. MGA believes that Ms. Ross is a former Mattel

EXHIBIT __49__        - 13 -        MGA'S SUPP. DISCLOSURES AND MGA HK, MGA MEXICO, AND LARIAN'S INITIAL DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE __638__

1   employee.  Ms. Ross may possess information relevant to Mattel's employment

2   policies and practices, practices regarding Mattel's creation, design and

3   development of fashion dolls, Bryant's work at Mattel, Mattel's investigation of

4   MGA and its executives, employees and freelancers and other aspects of Mattel's

5   unclean hands.

6         77.     Shirin Salemnia.  Ms. Salemnia is a Research Manager for

7   MGA.  Ms. Salemnia may possess information relevant to the packaging, themes,

8   ideas, advertising and market research related to MGA's products (including,

9   without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover

10  Head," "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers").

11  Ms. Salemnia may be contacted through MGA's counsel of record.

12        78.     Chuck Scothon.  MGA believes that Mr. Scothon currently is a

13  General Manager and Senior VP of Girls at Mattel Brands.  Mr. Scothon may

14  possess knowledge of Mattel's serial copying of MGA's distinctive trade dress,

15  trademarks, product packaging, themes, ideas, and advertising; Mattel's dilution of

16  MGA's famous marks; Mattel's interference with MGA's advertising efforts;

17  Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors,

18  manufacturers, and former employees and freelancers; Mattel's improper influence

19  of standard-setting and industry organization; and Mattel's manipulation of MGA's

20  retail displays.

21        79.     Shelly Shibata.  Ms. Shibata is MGA's Senior Director of New

22  Dolls and Toys.  Ms. Shibata may possess information relevant to licensing of and

23  style guides for MGA's "Bratz" dolls.  Ms. Shibata may be contacted through

24  MGA's counsel of record.

25        80.     Aileen Storer.  Ms. Storer currently is Creative Director of Bratz

26  & Dolls for MGA.  Ms. Storer may possess information relevant to some aspect or

27  aspects of the creation and design of packaging, logos and branding of MGA

28  products, including  without limitation the first generation of "Bratz" dolls..  Ms.

EXHIBIT __49__          - 14 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
                                        MGA MEXICO, AND LARIAN'S INITIAL
PAGE __639__                            DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1  Storer may be contacted through MGA's counsel of record.

2       81.    Steven Tarmichael. Mr. Tarmichael is a freelance hair rooter

3  and worked as such for MGA in connection with some of MGA's "Bratz" dolls.

4  Mr. Tarmichael may possess information relevant to some aspect or aspects of the

5  design of "Bratz" dolls, including without limitation the first generation of "Bratz"

6  dolls.

7       82.    Mariana Trueba. Ms. Trueba is an employee of MGA Mexico.

8  Ms. Trueba may possess knowledge of facts in support of MGA's defenses to

9  Mattel's RICO and trade secret counterclaims. Ms. Trueba may be contacted

10  through MGA's counsel of record.

11       83.    Pablo Vargas. Mr. Vargas is an employee of MGA Mexico.

12  Mr. Vargas may possess knowledge of facts in support of MGA's defenses to

13  Mattel's RICO and trade secret counterclaims. Mr. Vargas may be contacted

14  through MGA's counsel of record.

15       84.    Ann Wang. Ms. Wang may possess information relevant to the

16  negotiation of the MGA-Bryant contract.

17       85.    Mercedah Ward. MGA believes that Ms. Ward is a former

18  Mattel employee. Ms. Ward also is a former MGA employee. Ms. Ward possesses

19  information relevant to aspects of the creation, design and development of the first

20  generation of MGA's "Bratz" dolls, Mattel's serial copying of MGA's products

21  (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky

22  Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and

23  "Alien Racers"); Mattel's serial copying of MGA's distinctive trade dress,

24  trademarks, product packaging, themes, ideas, and advertising; and Mattel's

25  dilution of MGA's famous marks.

26       86.    Sandy Yonemoto. MGA believes that Ms. Yonemoto is the

27  Manager of Human Resources Communications at Mattel. Ms. Yonemoto was

28  deposed on May 30, 2007. She possesses the information set forth in her deposition

EXHIBIT __49__    - 15 -    MGA'S SUPP. DISCLOSURES AND MGA HK,
                                                   MGA MEXICO, AND LARIAN'S INITIAL

PAGE __640__                        DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1    transcript.

2         87.    Various present or former employees and contractors of MGA
3    are potential witnesses, including, but not limited to, those listed on MGA's Fourth
4    Supplemental Response to Interrogatory No. 1 of Mattel's First Set of
5    Interrogatories Re:  Claims of Unfair Competition.  Such current employees of
6    MGA may be contacted through MGA's counsel of record.  MGA is currently
7    unable to identify the specific witnesses and information such witnesses may
8    possess.

9         88.    Various present or former employees and contractors of Mattel
10   as well as its various present or former suppliers, licensees, distributors and
11   merchandisers are potential witnesses.  The identities, whereabouts and relevant
12   knowledge of such potential witnesses are best known by Mattel.

13        MGA reserves the right to further supplement its disclosures to identify
14   additional witnesses as they, or their relevance, become apparent or as otherwise
15   necessary or appropriate.

16   **Documents**

17        The MGA Parties' document identification to date is based solely upon such
18   information and documents that have been discovered thus far, as well as the MGA
19   Parties' present analysis of the case, and shall not in any way be deemed to be a
20   representation that additional documents do not exist.  Accordingly, the MGA
21   Parties reserve the right to amend this disclosure pursuant to Rule 26(e) if
22   additional documents are identified.  Furthermore, the MGA Parties reserve the
23   right to supplement or modify the disclosure based on information or documents
24   subsequently identified as pertinent to disputed facts.  To the extent that one or
25   more of the MGA Parties already has identified documents pursuant to Rule 26(a),
26   the documents identified herein serve to supplement such prior disclosures.

27        Subject to the foregoing, and subject to, as applicable, the designations of
28   confidentiality which have or may be made pursuant to the terms and provisions of

EXHIBIT __49__

PAGE __641__

- 16 -

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

the Stipulated Protective Order governing the disclosure of confidential material in this case, the MGA Parties identify the following documents:

    1.    Documents showing how long each of MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products have been sold to the public.

    2.    Documents showing where each of MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products are available and/or have been sold to the public.

    3.    Advertisements for MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products.

    4.    Promotional materials, in-store displays, and point of purchase displays for MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products.

    5.    Documents showing the nature, scope and extent of MGA's advertising program nationwide for MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products, including without limitation advertising expenditures.

    6.    Marketing documents and sales data for MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products.

    7.    Samples of MGA products and packaging that Mattel has infringed.

    8.    Copies of the commercials that Mattel has infringed.

    9.    Documents showing Mattel's infringing products, packaging, commercials and themes.

    10.    Press regarding MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products.

    11.    Market research concerning MGA's contested "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products.

EXHIBIT __49__    - 17 -

PAGE __642__

MGA'S SUPP. DISCLOSURES AND MGA HK, MGA MEXICO, AND LARJAN'S INITIAL DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1        12.    Documents showing actual confusion between MGA's products

2  and Mattel's products.

3        13.    Documents showing that Mattel was aware of MGA's contested

4  "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien Racers" products,

5  themes and/or advertising and knowingly imitated or copied them.

6        14.    Documents showing the creation, design and development of

7  MGA's first generation of "Bratz" dolls.

8        15.    Documents showing the creation and design of the Contested

9  Products, including "Bratz," "Mommy's Little," "4-Ever Best Friends," and "Alien

10  Racers" products.

11        16.    Documents showing the hiring and employment practices and

12  policies of Mattel, including but not limited to contracts employees are asked to

13  sign.

14        17.    Documents demonstrating Carter Bryant's inspiration for his

15  drawings he brought to MGA.

16        18.    Examples of Carter Bryant's non-Bratz artwork.

17        19.    Documents showing the sales and market share of Barbie dolls

18  over the last 10 years.

19        20.    Documents reflecting or evidencing Mattel's interference with

20  MGA's advertising efforts; Mattel's threats to and intimidation of retailers,

21  suppliers, licensees, distributors, manufacturers, and former employees and

22  freelancers; Mattel's improper influence of standard-setting and industry

23  organization; Mattel's manipulation of MGA's retail displays; Mattel's knowledge

24  of Bryant's involvement with Bratz and its investigation of MGA and its

25  executives, employees and freelance vendors; other aspects of Mattel's unclean

26  hands; and the damages suffered by MGA as a result of Mattel's conduct.

27        21.    MGA's admonitions to personnel hired from competitors,

28  including Mattel.

EXHIBIT **49**      - 18 -      MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE **643**

22.   MGA's pre-hire communications with Ron Brawer.

23.   MGA's pre-hire communications with Gustavo Machado, Pablo Vargas and Mariana Trueba.

24.   MGA's pre-hire communications with Janine Brisbois.

25.   MGA's pre-hire communications with Jorge Castilla.

26.   Documents showing publicly available sales and marketing data for Mattel and other toy companies.

27.   Documents showing MGA's efforts to expand sales and marketing in Mexico.

28.   Other documents not yet in MGA's possession, custody or control but believed to be in possession of or under the custody or control of Mattel, as described in MGA's various requests for production of documents and things and/or third party subpoenas.

**Damages**

MGA seeks damages arising out of Mattel's acts of false designation of origin or affiliation, dilution, and unfair competition and unfair business practices. MGA seeks disgorgement of all profits derived by Mattel for its acts of false designation of origin or affiliation, dilution, and unfair competition and unfair business practices. MGA seeks costs, expenses, and reasonable attorneys' fees in prosecuting this action. MGA seeks punitive and/or exemplary damages as a result of Mattel's willful and malicious conduct to the extent allowable by law.

MGA is unable to calculate the amount of damages at this time because discovery has not yet been completed and such calculation may require the services of an expert witness.

**Insurance**

The required disclosure regarding insurance is presently inapplicable.

EXHIBIT __49__

PAGE __644__

- 19 -

MGA'S SUPP. DISCLOSURES AND MGA HK, MGA MEXICO, AND LARIAN'S INITIAL DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1

2   Dated:      September 2? 2007                    O'MELVENY & MYERS LLP

3
                                                    By:
4
                                                    Attorneys for MGA Entertainment, Inc.,
5                                                   MGA Entertainment (HK) Limited,
                                                    MGAE de Mexico S.R.L. de C.V., and
6                                                   Isaac Larian

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __49__

PAGE __645__

- 20 -

# EXHIBIT 50

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                            Consolidated with
14        v.                                Case No. CV 04-09059
                                            Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                           **PHASE 2 DISCOVERY MATTER**
16
                Defendant.                  **ORDER NO. 34, REGARDING:**
17
                                               **MOTION TO COMPEL
18                                             PRODUCTION OF HARD DRIVES
                                               FROM COMPUTERS USED BY
19                                             ISAAC LARIAN AFTER
                                               FEBRUARY 27, 2008**
20

21   ┌─────────────────────────────────
     │ CONSOLIDATED WITH
22   │ MATTEL, INC. v. BRYANT and
     │ MGA ENTERTAINMENT, INC. v.
23   │ MATTEL, INC.
     └─────────────────────────────────
24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __50__

PAGE __646__

1    This Order sets forth the Discovery Master's ruling on the Motion to Compel

2    Production of Hard Drives from Computers used by Isaac Larian after February 27,

3    2008, for Supplemental Inspection filed by Mattel, Inc. ("Mattel") (the "Motion")

4    [Docket No. 5267].

5    The Discovery Master, having considered the papers filed in support of and

6    in opposition to the Motion, and having determined that oral argument is not

7    necessary, rules as set forth below.

8    **I.      FACTUAL BACKGROUND**

9    The present Motion addresses whether Isaac Larian ("Larian") is required to

10   produce for inspection certain hard drives he has used since February 27, 2008.

11   **A.     Document Request No. 222**

12   On or about June 13, 2007, Mattel served its First Set of Requests for

13   Documents and Things on Larian, which included Request No. 222 (the

14   "Request"). (Declaration of Marshall M. Searcy III in Support of the Motion

15   ("Searcy Decl."), Ex. 1 at p. 54). The Request asks Larian to produce for

16   inspection "Each STORAGE DEVICE that YOU have used to create, prepare,

17   generate, transmit, receive, delete or modify any DIGITAL INFORMATION

18   RELATING TO BRATZ, ANGEL or BRYANT."[1] (*Id.*)

19   **B.     The Prior Discovery Master's December 31, 2007 Order**

20   Claiming that the Request was overbroad, unduly burdensome, duplicative

21   and violated his privilege and privacy rights, Larian refused to produce any Hard

22   Drives[2] to Mattel. (*Id.*, Ex. 17 at p. 16). Mattel then moved to compel a response

23

24   [1] Mattel also references Request No. 225 in its Motion, (Motion, p. 1 and fn. 2), which asks Larian to produce for inspection "[e]ach STORAGE DEVICE that BRYANT has used to create, prepare, generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or MGA." (Search Decl., Ex. 1 at p. 55). However, Request No. 225 is not at issue, since Mattel only seeks to compel additional inspection of *Larian's* hard drives in the present Motion. (Notice of Motion, p. 1 [Mattel "move[s] for an order compelling Isaac Larian ('Larian') to produce for inspection any hard drives and other storage devices . . . within his possession, custody or control that were connected to any computer used by Isaac Larian since February 27, 2008 . . ."]).

25

26

27   [2] As used herein, "Hard Drives" refers to all "STORAGE DEVICES" as that term is defined in connection with the Request.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 50

PAGE 647

1    to the Request on October 11, 2007. (Searcy Decl., Ex. 2).  The prior discovery

2    master denied the motion on December 31, 2007, reasoning as follows:

3               With respect to Request No. 222, Larian correctly notes

4               that Rule 34 was not intended to authorize the routine

5               production of a party's electronic devices.  Mattel

6               attempts to justify Request No. 222 by pointing to various

7               instances of alleged destruction of evidence . . . However,

8               Mattel fails to explain how these alleged instances of

9               evidence destruction justify Request No. 222, other than

10              to assert that it has a right to inspect Larian's storage

11              devices to ensure that relevant information has not been

12              deleted or permanently destroyed.  Mattel's stated

13              purpose suggests instead that Mattel is launching a fishing

14              expedition in pursuit of new claims, which is not

15              permitted by the Federal Rules of Civil Procedure.

16              [Citation].  Furthermore, Mattel's stated purpose for

17              inspecting Larian's storage devices does not justify the

18              breadth of Request No. 222.  Among other things,

19              Request No. 222 encompasses every storage device that

20              Larian has used to copy digital information relating to

21              Bratz.  Mattel does not need every CD and DVD

22              containing copies of Bratz-related video and audio

23              content, but that is what the request seeks.  Request No.

24              222 is also duplicative because it requests information

25              that is sought in numerous other requests served on Larian

26              as well as MGA.  Mattel has served hundreds of requests

27              for documents and communications relating to Bratz,

28              Angel, and Bryant.  To comply with the requests, Larian

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-2-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  50

PAGE  648

1                was required to search for documents in both hard-copy

2                and electronic form.  Under the circumstances, it is

3                unnecessary for Larian to also produce the requested

4                storage devices.

5 (*Id.*, Ex. 17 at p. 17).

6        **C.**      **The Court's February 27, 2008 Order**

7        Thereafter, Mattel filed a Motion Objecting to Portions of the Discovery

8 Master's December 31, 2007 Order, including challenging the ruling regarding the

9 Request. (*Id.*, Ex. 18).  On February 27, 2008, the Court overruled the prior

10 discovery master's ruling ("February 27, 2008 Order").  (*Id.*, Ex. 19 at p. 2).

11 Specifically, the Court found that the decision was "clearly erroneous and contrary

12 to law" because "[d]estruction of evidence on hard drives is relevant to Mattel's

13 claims, including specific predicate acts alleged in Mattel's RICO counterclaims."

14 (*Id.*).  Consequently, the Court ordered Larian to produce the following:

15                All hard drives from, or that were at any time connected

16                to, any computer used by . . . Isaac Larian . . . at any time

17                from 1999 to the present and that contain or previously

18                contained any digital information referring or relating to

19                Bratz, Angel . . . or Bryant (as those terms are defined in

20                Mattel's Request[]).

21 (*Id.*).

22        **D.**      **Larian's Compliance With The Court's February 27, 2008 Order**

23        On or about April 22, 2008, Larian and Mattel entered into a written

24 agreement setting forth a protocol for Mattel's consultant to inspect Larian's Hard

25 Drives ("Letter Agreement").  (*Id.*, Ex. 25).  Among other things, the Letter

26 Agreement stated that Mattel's consultant would "not access the user generated

27 content of any active file that exists on the hard drive."[3]  (*Id.*, Ex. 25 at p. 3 of the

28

[3] An active file is one that is currently available for use on a hard drive or other storage device.

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   50

PAGE   649

1 | letter).

2 |     Approximately two months after the parties entered into the Letter

3 | Agreement, Larian produced all pre-February 28, 2008 Hard Drives responsive to

4 | the Request and permitted them to be inspected and forensically imaged. (Motion,

5 | p. 3).

6 |     **E.**    **Larian Refuses To Supplement His Prior Production**

7 |     On or about March 18, 2009, Mattel requested that Larian supplement his

8 | production of Hard Drives and permit the supplemental inspection of all Hard

9 | Drives he has used since February 27, 2008. (Searcy Decl., Ex. 20 at p. 1). Larian,

10 | acting through his counsel, responded that he had "fully complied" with the Court's

11 | February 27, 2008 Order and that "there is no nexus between the information

12 | currently on [his] hard drives and the Phase 2 claims . . ." (*Id.*).

13 | **II.**    **RELIEF SOUGHT BY MATTEL**

14 |     In its Motion, Mattel requests that "Larian be compelled to produce all

15 | unproduced hard drives within his possession, custody or control for supplemental

16 | inspection by Mattel's consultant." (Motion, p. 17). Mattel further seeks an order

17 | permitting the "inspection of all relevant, non-privileged documents and

18 | information, including 'active' user generated files and documents and information

19 | recovered by [its] experts." (*Id.*).

20 | **III.**    **LARIAN'S OPPOSITION**

21 |     Larian opposes Mattel's Motion on five grounds. First, Larian argues that

22 | the Motion seeks information that is not relevant to any Phase 2 issue because there

23 | is no allegation in Mattel's Second Amended Answer and Counterclaims ("SAAC")

24 | regarding ongoing destruction of evidence. (Opposition, pp. 3 and 12 – 13).

25 | Second, Larian argues that Mattel should not be permitted to engage in a fishing

26 | expedition to uncover evidence of alleged financial fraud, since the Request does

27 | not seek such information and the SAAC contains no allegations of such

28 | wrongdoing. (*Id.*, p. 15). Third, Larian argues that he has no duty to supplement

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __50__

PAGE __650__

1  his response because he "fully complied with the Court's February 27, 2008

2  Order . . ." (*Id.*, pp. 3; *see also id.* at pp. 11 – 12). Fourth, Larian argues that

3  "Mattel improperly asks the Discovery Master to expand the scope of [the Court's]

4  prior Order to allow Mattel unrestricted access to the content of information on

5  [his] hard drives, including access to 'active files' on the hard drives, which have

6  no relevance to any purported allegations of evidence destruction." (*Id.*, p. 4

7  [emphasis omitted]; *see also id.* at pp. 13 – 16). Finally, Larian argues that he

8  "should not be subjected to the burden and wholesale invasion of his privilege and

9  privacy rights that would result from producing his personal computer hard drives,

10  particularly when the same information may be obtained through a simple

11  document request."[4]  (*Id.*, p. 4; *see also id.* at p. 14).

12      Larian also seeks an award of sanctions against Mattel's counsel "for

13  improperly asking the Discovery Master to revisit and expand the scope of [the

14  Court's] prior Order with respect to Request No. 222 . . ." (*Id.*, pp. 16 – 17).

15  **IV.   ANALYSIS**

16      The present Motion raises two basic questions:  (1) does Larian have a duty

17  to supplement his previous production concerning the Request, and (2), in the event

18  a supplemental production is required, may active files be accessed by Mattel's

19  consultant during his or her inspection?  Each of these questions is addressed

20  below.

21  //

22  //

23  //

24

25  [4] Larian also argues that Mattel has misrepresented the facts regarding whether any spoliation of evidence has
   occurred in the past and that Mattel's failure to call the consultant who conducted the inspection of Larian's Hard

26  Drives in Phase I to testify at trial demonstrates that no spoliation took place. (Opposition, pp. 8 – 11). The question
   before the Discovery Master, however, is whether the Request relates to a Phase 2 claim or defense, not whether

27  Larian has (or has not) engaged in spoliation of evidence as a matter of fact. Therefore, the Discovery Master does
   not accept or reject Mattel's allegations of spoliation. Nor do I accept or reject Larian's disputation of those

28  allegations.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  50

PAGE  651

## A. Federal Rule Of Civil Procedure 26 Requires Larian To Supplement His Prior Production

### 1. Hard Drives That Larian Has Used Since February 27, 2008 Relate To Phase 2 Issues

With respect to the first question, the Court's February 27, 2008 Order found that "[d]estruction of electronic evidence on hard drives is relevant to Mattel's claims, including specific predicate acts alleged in Mattel's RICO counterclaims." (February 27, 2008 Order at p. 2). Based on that finding, the Court ordered Larian to produce all Hard Drives used by him "from 1999 to the present." (*Id.*). Larian construes this holding by the Court to mean that information currently contained on Hard Drives used by him after February 27, 2008 is not relevant to Mattel's Phase 2 claims since, according to him, there are no allegations that the actions alleged in Mattel's RICO claims are continuing and his only obligation with respect to the Request was to produce Hard Drives from 1999 to February 27, 2008 (i.e., the date the February 27, 2008 Order was issued by the Court). (Opposition, p. 12). This argument is unpersuasive for two reasons.

First, the plain language of the SAAC alleges that the conduct of each criminal RICO enterprise alleged therein is continuing. Specifically, Paragraph 92 of the SAAC alleges that "[t]he conduct of each enterprise continues through the date of this [SAAC] and is *ongoing* . . ." (SAAC, ¶ 92 [emphasis added]). Similarly, Paragraph 93 of the SAAC alleges that the pattern of racketeering activity "extends, up to and *beyond* the date of this" SAAC and includes "repeated acts of . . . destroying electronic and other evidence, including by destroying evidence previously contained on . . . Isaac Larian's computer hard drives." (*Id.*, ¶ 93 [emphasis added]).

Second, Larian's argument that the SAAC does not allege ongoing destruction of evidence has already been implicitly, if not expressly, rejected by the Court. If Larian were correct that the SAAC "only alleges prior acts of purported

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-6-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **50**

PAGE **652**

1    evidence destruction," (Opposition, p. 12), the Court would have limited any

2    production of Hard Drives to the date the SAAC was filed (i.e., July 12, 2007).

3    However, the Court held that Larian had to produce all Hard Drives he used "from

4    1999 to the present [i.e., up through and including February 27, 2008]." (February

5    27, 2008 Order at p. 2). Because the February 27, 2008 Order already required

6    Larian to produce Hard Drives that he used months after the SAAC was filed,

7    Larian's argument that the SAAC does not allege continuing destruction of

8    evidence is inconsistent with the Court's previous ruling and must be rejected.[5]

9         **2.    The Starting Point For Determining Whether Any**

10             **Supplementation Is Required Is The Request, Not The**

11             **Court's February 27, 2008 Order**

12   Larian next argues that he has no duty to supplement his prior production

13   because it was not incomplete or incorrect in any respect. (Opposition, p. 12).

14   Specifically, Larian contends that he fully complied with the Court's

15   February 27, 2008 Order by producing all Hard Drives that he used between 1999

16   and the date the order was issued (i.e., February 27, 2008). (*Id.*, pp. 3 and 11 – 12).

17   The problem with this argument, however, is that it ignores the starting point for

18   determining whether any supplemental production is required.

19        The issue is not whether Larian has fully complied with the *February 27,*

20   *2008 Order* but rather whether Larian is required to supplement the *discovery*

21   *response* in question (i.e., the Request). If Larian has used Hard Drives since

22   February 27, 2008 (and he does not dispute that he has done so), then there is

23   evidence in existence that renders his response to the Request incomplete.

24   Therefore, in the absence of some other valid objection, Larian must supplement his

25   production regarding the Request under Federal Rule of Civil Procedure 26. (Fed.

26

27   ───────────────

[5] Larian also argues that the Request is not relevant to any allegation of ongoing financial fraud. (Opposition, p. 15). The Discovery Master need not address this argument because the Request has been determined to be relevant to Mattel's RICO claims.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-7-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **50**

PAGE **653**

1    R. Civ. P. 26(e)(1)(A) [stating that the duty to supplement or correct a response

2    arises "if the party learns that in some material respect the . . . response is

3    incomplete or incorrect"]).

4            **3.**      **The Court's February 27, 2008 Order Does Not Exempt**

5                **Larian From Having To Comply With Federal Rule Of Civil**

6                **Procedure 26**

7          Larian's final argument against supplementation is that the Court's

8    February 27, 2008 Order somehow displaced the obligations he had to supplement

9    incomplete discovery responses under Rule 26.  (Opposition, p. 11).  Yet there is no

10   indication anywhere in the February 27, 2008 Order that the Court intended to

11   make Larian exempt from the requirements imposed by Rule 26.  In fact, the

12   February 27, 2008 Order never mentions Rule 26 at all, let alone indicates that

13   Larian need not comply with his duty to supplement going forward.  Nor is there

14   any reason to read such a limitation into the February 27, 2008 Order, since Larian

15   has not cited any legal authority, and the Discovery Master is aware of none,

16   supporting the proposition that a party need not supplement its discovery responses

17   based upon an order that simply requires the production of data for inspection

18   without referencing Rule 26.   Therefore, contrary to Larian's assertion, the

19   February 27, 2008 Order did not remove his duty to supplement his response to the

20   Request and he must fulfill that obligation now.

21       **B.**    **Mattel's Consultant May Not Access Active Files**

22         Having concluded that Larian must supplement his prior production of Hard

23   Drives and permit them to be inspected pursuant to Rule 26, the Discovery Master

24   now turns to the permissible scope of Mattel's inspection.

25         As explained above, Mattel argues that it "should be allowed to inspect all

26   relevant, non-privileged documents and information, including 'active user'

27   generated files . . . recovered by [its] experts."  (Motion, pp. 4 fn. 10 and 17; Reply,

28   pp. 9 – 11).  Mattel asserts that it is entitled to such information because the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **50**

PAGE **654**

1    February 27, 2008 Order "specifically stated that Mattel's expert 'shall have the

2    right to inspect any and all information on said hard drive to determine' whether

3    there was evidence of spoliation or attempted spoliation." (Reply, p. 10).  This

4    argument is unpersuasive for four reasons, each of which is sufficient by itself to

5    justify denying Mattel's request.

6         First, contrary to Mattel's assertion, the Court did not give Mattel

7    unrestricted access to the content of Larian's Hard Drives in its February 27, 2008

8    Order.  On the contrary, the Court expressly limited the scope of the inspection to

9    determining whether any electronic evidence had been destroyed.  Indeed, after it

10   stated that a consultant of Mattel's choosing would be allowed to make forensically

11   sound images of each Hard Drive used by Larian and would be permitted "the right

12   to inspect any and all information on said hard drive," the Court immediately

13   qualified its statement.  (Searcy Decl., Ex. 19 at pp. 2 – 3).  Specifically, the

14   February 27, 2008 Order declared that Mattel's forensic expert will have:

15              the right to inspect any and all information on said hard

16              drive to determine:  (a) whether, when, and by whom any

17              information was deleted, destroyed, written over, lost,

18              exported, moved, spoliated or otherwise rendered

19              inaccessible or unreadable; (b) whether, when and by

20              whom any attempts were made to delete, destroy, write

21              over, export, move, spoliate or otherwise render

22              inaccessible or unreadable any information on those hard

23              drives; (c) the current or past presence or use of any

24              hardware or software tool to accomplish any of the

25              actions identified above; (d) whether any information

26              deleted, destroyed, written over, lost, exported, moved,

27              spoliated or otherwise rendered inaccessible or unreadable

28              may be recovered; and (e) to recover any such

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   50

PAGE   655

1     information, in whole or in part.

2   (*Id.*).  Because the Court expressly limited the inspection to determining whether

3   anyone had "deleted, destroyed, written over, lost, exported, moved, spoliated or

4   otherwise rendered inaccessible or unreadable" any information on the Hard Drives

5   and whether any such information was recoverable, there is no connection between

6   Mattel's claim that it is entitled to view *active files* and the inspection permitted by

7   the Court relating to *deleted files*.  By definition, an active file is one that is still in

8   existence.  Conversely, a file that has been destroyed is not accessible unless it can

9   somehow be recovered.  Therefore, the plain language of the February 27, 2008

10  Order precludes Mattel from accessing active files on the Hard Drives, because they

11  are not within the scope of the inspection authorized by the Court.[6]

12      Second, there has been no showing by Mattel that all of the active files that it

13  seeks to access are relevant to Phase 2 issues.  What Mattel is essentially requesting

14  is that it should be allowed to access any content on the Hard Drives whether or not

15  those active files have any relevance to a claim or defense in this case.  In the

16  absence of a showing that all active files on the Hard Drives are reasonably

17  calculated to lead to the discovery of admissible evidence regarding a Phase 2 issue,

18  the Discovery Master concludes that Mattel's request is overbroad and improperly

19  seeks to discover irrelevant information.

20      Third, the Discovery Master finds that Mattel does not have the right to rifle

21  through Larian's electronic files looking for unspecified information.  As Larian

22  persuasively argues, "Mattel has the right to ask [Larian] to produce specific [non-

23  privileged, relevant] documents; it does not have the right to go into [his] electronic

24  'drawers' to see what is there."  (Opposition, p. 2).  Because that is precisely the

25

---

[6] Mattel's request to inspect the active files on Larian's Hard Drives is also inconsistent with the Letter Agreement
26  entered into by the parties on April 22, 2008.  In relevant part, the Letter Agreement states that Mattel's consultant
"shall not access user generated content of any active file that exists on the hard drives." (Searcy Decl., Ex 25 at p. 3
27  of the letter).  The fact that Mattel's counsel agreed to this protocol following the issuance of the Court's February
27, 2008 Order suggests that even Mattel realizes the February 27, 2008 Order was not designed to allow it access to
28  active files on the Hard Drives.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -                          ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __50__

PAGE __656__

1  relief Mattel seeks, its request must be denied.

2      Finally, allowing Mattel unrestricted access to active files on the Hard Drives

3  would improperly permit it to discover attorney-client privileged information that

4  Larian alleges exists on those storage devices. Indeed, if Mattel is given access to

5  all active files on the Hard Drives, the Discovery Master cannot see how Larian can

6  protect his privileged information. This is true despite Mattel's statement that it

7  should only be "allowed to inspect all relevant, non-privileged documents and

8  information," because there is not a mechanism in place that would protect Larian's

9  privileged files from disclosure. Even assuming it is technologically possible to

10  encrypt all active files that contain privileged information so that they may not be

11  accessed by Mattel's consultant, Larian should not be burdened with undertaking

12  such a task because there are less intrusive means by which Mattel could obtain

13  non-privileged, relevant documents, namely through document requests.

14      **C.    Summary Of Ruling Regarding The Motion**

15      The Discovery Master finds that Larian must supplement his prior production

16  of Hard Drives pursuant to Federal Rule of Civil Procedure 26. However, in

17  conducting the inspection of any additional Hard Drives produced by Larian,

18  Mattel's consultant may not access any active files.

19      **D.    Larian's Request For Sanctions**

20      Having determined that Mattel advanced some meritorious arguments and

21  prevailed with respect to certain aspects of its Motion, the Discovery Master denies

22  Larian's request for sanctions.

23  **V.    DISPOSITION**

24      A.    The Motion is **GRANTED in part** and **DENIED in part**, as follows:

25          1.    Larian shall make available within forty-five (45) days of this

26  Order the following hard drives that are in his possession, custody or control:  All

27  Hard Drives from, or that were at any time connected to, any computer used by him

28  at any time from February 28, 2008 to the present and that contain or previously

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **50**

PAGE **657**

1   contained any digital information referring or relating to Bratz, Angel, or Bryant (as

2   those terms are defined in the Request).

3          2.      A consultant of Mattel's choosing, whom Mattel will identify

4   before the inspection, shall be allowed to inspect each of the Hard Drives produced

5   in connection with the preceding Paragraph.  Mattel's consultant shall be allowed to

6   make a forensically sound image of each hard drive produced.  The inspection may

7   take place at a location of Larian's choosing in this District, so long as the

8   minimum requirements necessary to inspect and create a forensically sound image

9   of the produced hard drives.  A consultant of Larian's choosing, whom Larian will

10  identify before the inspection, shall be allowed to observe the inspection and

11  imaging of the hard drives.

12         3.      Mattel's consultant shall have the right to inspect any and all

13  information on the produced Hard Drives to determine:  (a) whether, when, and by

14  whom any information was deleted, destroyed, written over, lost, exported, moved,

15  spoliated or otherwise rendered inaccessible or unreadable; (b) whether, when and

16  by whom any attempts were made to delete, destroy, write over, export, move,

17  spoliate or otherwise render inaccessible or unreadable any information on those

18  hard drives; (c) the current or past presence or use of any hardware or software tool

19  to accomplish any of the actions identified above; (d) whether any information

20  deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise

21  rendered inaccessible or unreadable may be recovered; and (e) to recover any such

22  information, in whole or in part.

23         4.      In conducting the above inspection regarding deleted files,

24  Mattel's consultant shall not access the user generated content of any active file that

25  //

26  //

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  **5°**

PAGE  **658**

1    exists on the Hard Drives.

2           B.      Larian's request for sanctions is **DENIED**.

3    Dated:       May 18, 2009

4

5                                                    By:        /s/ Robert C. O'Brien

6                                                               ROBERT C. O'BRIEN
                                                               Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                         - 13 -                        ORDER NO. 34
                                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  50

PAGE  659

# EXHIBIT 51

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                          Consolidated with
14           v.                           Case No. CV 04-09059
                                          Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                         **PHASE 2 DISCOVERY MATTER**
16
                Defendant.                **ORDER NO. 22, REGARDING:**
17
                                             **(1)  MOTION FOR ISSUANCE OF
18                                                LETTERS OF REQUEST;**

19
                                             **(2)  MOTION TO COMPEL
20                                                CONSENT TO PRODUCTION OF
                                                  ELECTRONIC MAIL MESSAGES;**
21
22
     CONSOLIDATED WITH                       **(3)  MOTION FOR
23   MATTEL, INC. v. BRYANT and                   RECONSIDERATION OF
     MGA ENTERTAINMENT, INC. v.                   DECEMBER 31, 2007 ORDER; and**
24   MATTEL, INC.
                                             **(4)  MOTION OBJECTING TO
25                                                PORTIONS OF FEBRUARY 15, 2008
                                                  ORDER**
26                                                         EXHIBIT __51__
27
28                                                         PAGE __660__

ARENT FOX LLP                                            ORDER NO. 22
ATTORNEYS AT LAW                              [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

1    This Order sets forth the Discovery Master's ruling on the following

2  discovery matters:  (1) the motion for issuance of letters of request filed by Mattel,

3  Inc. ("Mattel") ("Letter of Request Motion") [Docket No. 4721]; (2) the motion to

4  compel Carlos Gustavo Machado Gomez to consent to production of electronic

5  mail messages filed by Mattel ("Motion To Compel") [Docket No. 4884]; (3) the

6  motion for reconsideration of portions of the prior discovery master's December 31,

7  2007 order filed by Mattel ("Motion for Reconsideration") [Docket No. 4948]; and

8  (4) the motion objecting to portions of the prior discovery master's February 15,

9  2008 order regarding Mattel's motion to compel responses to interrogatories by

10  MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico,

11  S.R.L. De C.V. and Isaac Larian ('MGA Parties") filed by Mattel ("Objection

12  Motion") [Docket No. 4717] (collectively, the "Motions").

13    The Motions came on regularly for hearing before the Discovery Master on

14  April 27, 2009.  All interested parties were represented by counsel and afforded the

15  opportunity to present oral argument on the Motions.  The Discovery Master,

16  having considered the papers filed in support of and in opposition to the Motions,

17  and having heard oral argument, rules as set forth below.

18  **I.    MATTEL'S LETTER OF REQUEST MOTION**

19    The Discovery Master first addresses Mattel's Letter of Request Motion.

20  **A.    The Order Referring The Letter Of Request Motion To The**

21  **Discovery Master**

22    The Court referred Mattel's Letter of Request Motion to the Discovery

23  Master for disposition on or about March 12, 2009.  (*See* Minute Order dated

24  March 12, 2009).

25  **B.    The Relief Sought By Mattel**

26    Mattel requests that the Discovery Master issue an order recommending that

27  the Court execute a letter of request for international judicial assistance.  (*See*

28  Proposed Order filed in Support of the Letter of Request Motion).  Specifically,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **161**

- 1 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   Mattel seeks a letter of request "for the purpose of taking the deposition . . . of

2   Janine Brisbois ["Brisbois"] and MGA Canada." (Letter of Request Motion, p. 1).

3   "Mattel further requests [that] the Letter of Request provide for the production of

4   documents by . . . Brisbois and MGA Canada." (*Id.*).

5   **C.   The MGA Parties' Opposition**

6       The MGA Parties oppose the motion on two basic grounds. First, the MGA

7   Parties argue that Document Request Nos. 7, 9 and 10 concerning both Brisbois and

8   MGA Canada are overbroad and/or unduly burdensome. (Opposition to Letter of

9   Request Motion, pp. 2 – 5). Second, the MGA Parties argue that both of the

10  persons most knowledgeable categories directed at MGA Canada are

11  incomprehensible and inappropriate. (*Id.*, pp. 6 – 8).

12  **D.   Legal Standard**

13      Under Federal Rule of Civil Procedure 28(b)(1), a "deposition may be taken

14  in a foreign country . . . under a letter of request, whether or not captioned a 'letter

15  rogatory.'" Further, Rule 28 provides for the issuance of a letter of request "on

16  appropriate terms after an application and notice of it . . ." (Fed R. Civ. Pro.

17  28(b)(2)).

18  **E.   Analysis**

19      **1.   The MGA Parties Have Not Challenged Several Aspects Of**

20             **Mattel's Proposed Letter Of Request**

21      As a preliminary matter, the Discovery Master notes that the MGA Parties do

22  not question the authority of the Court to issue Mattel's proposed letter of request

23  under Rule 28. Nor do the MGA Parties object to the form of the letter concerning

24  the six categories on which Mattel proposes to examine Brisbois. The MGA Parties

25  likewise do not object to Document Request Nos. 1 – 6 and 8 with respect to either

26  Brisbois or MGA Canada. Because they have not challenged the aforementioned

27  aspects of Mattel's proposed letter of request, the MGA Parties have implicitly

28  conceded that a letter of request may be issued in some form.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **662**

-2-

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

**2.     The Document Requests Challenged By The MGA Parties**

The MGA Parties object to Document Request Nos. 7, 9 and 10 directed to Brisbois.  (Opposition to Letter of Request Motion, pp. 2 – 3).  Because they are almost identical to the same numbered requests for Brisbois, the MGA Parties also object to Document Request Nos. 7, 9 and 10 directed to MGA Canada.

**a.     Document Request No. 7 Directed To Brisbois And Document Request No. 7 Directed To MGA Canada**

Document Request No. 7 directed to Brisbois and the same numbered document request directed to MGA Canada request all personnel files created or maintained by MGA Canada concerning Brisbois.  Specifically, they request the following information:

- Request for Production No. 7 to Brisbois:  "A copy of each personnel file maintained or created by MGA RELATING TO Brisbois."  (Reply in Support of Letter of Request Motion, p. 2).
- Request for Production No. 7 to MGA Canada:  "A copy of each personnel file maintained or created by YOU RELATING TO Brisbois."  (*Id.*).

The two requests are collectively referred to below as "Document Request No. 7."

**(1)     Document Request No. 7 Seeks Information Relevant To Phase 2**

The MGA Parties first argue that Document Request No. 7 is overbroad because it "seek[s] private confidential information with no conceivable relevance to this case . . . ."  (Opposition to Letter of Request Motion, pp. 2 and 4).  However, the Discovery Master recently ruled that Mattel's request for personnel files of individuals who work at MGA Entertainment, Inc. ("MGA") and who formerly worked for Mattel were reasonably calculated to lead to the discovery of admissible evidence.  (Order No. 6, pp. 3 – 6).  The same reasoning supporting the Discovery

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __663__

- 3 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  Master's Order No. 6 applies to any personnel files MGA Canada created or
2  maintained for Brisbois.

3        The plain language of Mattel's Second Amended Answer and Counterclaims
4  ("SAAC") confirms that any personnel files MGA Canada created or maintained
5  concerning Brisbois bear some relation to the issues to be adjudicated in Phase 2.
6  Brisbois is expressly identified in the SAAC as one of the former Mattel employees
7  who allegedly misappropriated Mattel's trade secrets and other confidential
8  information. (*See, e.g.,* SAAC, ¶¶ 4, 71 – 76, 89, 90, 97, 99, 107 and 123). For
9  example, the SAAC alleges as follows:

10  • "In 2005, MGA needed help in Canada. So MGA, again operating from
11      its Southern California headquarters, hired Janine Brisbois from Mattel.
12      At that time, Ms. Brisbois was responsible for Mattel's account with Toys
13      'R Us ('TRU') and Wal-Mart. MGA gave her responsibility for those
14      same accounts, and she took from Mattel documents containing
15      proprietary advertising, project, sales, customer and strategy information
16      for not only Canada, but for the United States. Eliminating any doubt that
17      MGA then proceeded to use those stolen materials, Brisbois subsequently
18      accessed and modified certain of those documents while employed by
19      MGA." (*Id.,* ¶ 4).

20  • "Mattel subsequently learned that . . . four days before she resigned,
21      Brisbois copied approximately 45 Mattel documents on to a USB or
22      'thumb' drive with the volume label 'BACKPACK.' On information and
23      belief, Brisbois removed the thumb drive from Mattel's Canada office by
24      concealing it in her backpack or gym bag the last time that she left that
25      office. These documents contained Mattel trade secret and proprietary
26      information . . . ." (*Id.,* ¶ 74).

27  • "After Mattel discovered that Brisbois had copied these sensitive
28      documents to a thumb drive, Mattel notified Canadian law enforcement

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**
PAGE **664**
- 4 -
ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    authorities.  Canadian law enforcement authorities recovered from

2    Brisbois a thumb drive with the volume label 'BACKPACK' containing

3    the documents that Brisbois had copied from Mattel's computer system.

4    Mattel later learned that while she was working as a Vice President of

5    Sales at MGA, Brisbois accessed and modified documents on that thumb

6    drive."  (*Id.*, ¶ 75).

7    In light of these allegations, any personnel file created or maintained by

8  MGA Canada relating to Brisbois is relevant to Phase 2 and discoverable under

9  Federal Rule of Civil Procedure 26, subject to the limitations set forth below.

10                   **(2)     The MGA Parties' Privacy Objections Are**

11                            **Resolved By The Protective Order And Mattel's**

12                            **Limitation Of Its Requests**

13   The MGA Parties next claim Document Request No. 7 is overbroad because

14  it seeks "medical and insurance" information.  (Opposition to Letter of Request

15  Motion, pp. 2 and 4).  However, this contention is unpersuasive for two reasons.

16   First, a protective order has been entered in this case and will act as a

17  safeguard to protect any private information.  (*See, e.g., Nakagawa v. Regents of

18  Univ. of Cal.*, 2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) [ordering

19  production of personnel files and stating "[a]ny other privacy concerns defendant

20  may have should be addressed by a protective order"]; *Grinzi v. Barnes*, 2004 WL

21  2370639, *1 (N.D. Cal. Oct. 20, 2004) ["The proper mechanism for an employer to

22  use to protect an employee's privacy interest in his personnel file is to obtain, either

23  by stipulation or motion, a properly crafted protective order under Rule 26(c)"];

24  *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

25  30, 2007) ["The court has already analyzed these non-party privacy rights, and the

26  protective order should serve to remedy any concern in this regard."]; *Walton v. K-

27  Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ["In view of the

28  employees' privacy interests, documents shall be produced pursuant to an

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **665**

- 5 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  attorneys' eyes only protective order."]; *Keller-McIntrye v. Coll. Of Health &*

2  *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) [ordering

3  production of employee information, pursuant to a protective order, despite privacy

4  claims under California law]).

5  　　Second, and more importantly, Mattel has revised its letter of request to

6  specifically exclude "any portions [of Brisbois' personnel file] solely related to

7  medical or healthcare information." (Reply in Support of Letter of Request Motion,

8  p. 3 and Ex. A thereto at pp. 19 and 24). By virtue of this limitation, Mattel has

9  rendered the privacy objection raised by the MGA Parties moot.

10  　　Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master will further narrow Document Request

12  No. 7 to exclude any social security numbers, tax identification numbers, dates of

13  birth, indication of sexual orientation, bank account numbers, and checking account

14  numbers that may be included within the requested personnel file prior to

15  production, as Mattel has not made a showing at this time that such discrete

16  personal information is reasonably calculated to lead to the discovery of admissible

17  evidence.

18  　　　　**b.**　　**Document Request No. 9 Directed To Brisbois And**

19  　　　　　　**Document Request No. 9 Directed To MGA Canada**

20  　　The MGA Parties also object to Document Request No. 9 directed to Brisbois

21  and the same numbered document request directed to MGA Canada. (Opposition to

22  Letter of Request Motion, pp. 2 – 5). The requests seek the following information:

23  　　• Request for Production No. 9 to Brisbois: "ALL DOCUMENTS

24  　　　　RELATING TO COMMUNICATIONS between Brisbois, on the one

25  　　　　hand, and Toys 'R US or Wal-Mart on the other, or anyone acting on

26  　　　　behalf of Toys 'R Us or Wal-Mart, between September 7, 2005, and

27  　　　　January 1, 2007, including but not limited to her COMMUNICATIONS

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__　　　　- 6 -　　　　ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __666__

with Toys 'R Us or Wal-Mart about promotions of MGA products." (*Id.*, p. 2).

- <u>Request for Production No. 9 to MGA Canada</u>: "ALL DOCUMENTS RELATING TO COMMUNICATIONS between YOU, on the one hand, and Toys 'R US or Wal-Mart on the other, or anyone acting on behalf of Toys 'R Us or Wal-Mart, between September 7, 2005, and January 1, 2007, regarding Ms. Brisbois or Ms. Brisbois' responsibility for the Toys 'R Us or Wal-Mart promotions or advertising for MGA products." (*Id.*, p. 4).

The two requests are collectively referred to below as "Document Request No. 9."

### (1)   The Requests Are Not Overbroad

The MGA Parties assert that Document Request No. 9 is overbroad because it is not limited to products "at issue in this litigation." (*Id.*, pp. 2 and 4). But Mattel's Phase 2 claims are not linked to a single discrete product or even multiple products. As the Discovery Master explained in Order No. 6, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that MGA stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure." (SAAC, ¶ 20). Mattel further alleges in its SAAC that MGA:

- "engaged in a pattern of stealing and using [Mattel's] property and trade secrets," (*Id.*, ¶ 1);
- "stole Mattel trade secrets regarding Mattel's customers, sales, projects, advertising and strategy, not only for Canada, but the United States and the rest of the world," (*Id.*, ¶ 70);
- "took from Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States," (*Id.*, ¶ 4); and

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  **51**

PAGE  **667**

- 7 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1      • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

2          employees to steal Mattel's confidential information or other property and

3          take it with them to MGA," (*Id.*, ¶ 5).

4          Because this is not a case where Mattel has alleged that the MGA Parties

5  stole a specific product or group of products, but rather an instance where Mattel

6  alleges that the MGA Parties engaged in a massive and pervasive theft of Mattel's

7  proprietary information and trade secrets, Document Request No. 9 is reasonably

8  calculated to lead to the discovery of admissible evidence.

9                  **(2)    The Protective Order Resolves Any**

10                       **Confidentiality Issues**

11         The MGA Parties next assert that Document Request No. 9 seeks

12 confidential business information and trade secrets concerning MGA's products.

13 (Opposition to Letter of Request Motion, pp. 2 – 4).  But any such concern is

14 resolved by the protective order.

15                 **(3)    The Requests Seek Information Relevant To**

16                       **Phase 2**

17         Finally, the MGA Parties argue that Document Request No. 9 is overbroad

18 because it is "not linked to any of the legal or factual issues in this case." (*Id.*, pp. 3

19 and 4 [emphasis omitted]).  This contention is not supported by the record.  As

20 explained above, Brisbois is identified in the SAAC as one of the principal actors

21 engaged in MGA's alleged scheme of wrongdoing. (*See, e.g.,* SAAC, ¶¶ 4, 71 –

22 76, 89, 90, 97, 99, 107 and 123).  In fact, the SAAC alleges that MGA lured

23 Brisbois away from Mattel, gave her responsibility for the same accounts she was

24 previously handling there (i.e., Toys 'R Us and Wal-Mart), and misused "Mattel

25 documents containing proprietary advertising, project, sales, customer and strategy

26 information for not only Canada, but for the United States," (*id.*, ¶ 4), including

27 stealing Mattel documents that contained:

28         the price, cost sale plan and quantity of every Mattel product

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **668**

- 8 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1 ordered by every Mattel customer in 2005 and 2006; the BARBIE
2 television advertising strategy and information concerning sales
3 increase generated by television advertisements; competitive
4 analysis of Mattel vis-à-vis its competitors in Canada; an analysis
5 of Mattel's girls' business sales beginning in 2003 and the
6 forecasts through 2006; profit and loss reviews for Mattel's
7 products being sold in Wal-Mart, including margins and profits in
8 not only Canada but the United States and Mexico; and a
9 document containing product launch dates and related advertising
10 for all Mattel new products between Fall 2005 and Spring 2006.

11 (*Id.*, ¶ 74).  Therefore, Mattel's requests for Brisbois' communications with Toys

12 'R Us and Wal-Mart and the other information requested by Document Request No.

13 9 relates to Phase 2 issues and is discoverable.

14          c.       **Document Request No. 10 Directed To Brisbois And**
15                   **Document Request No. 10 Directed To MGA Canada**

16          The MGA Parties final set of document request objections relate to Document

17 Request No. 10 directed to Brisbois and the same numbered request directed to

18 MGA Canada.  These requests seek the following information:

19     •    Request for Production No. 10 to Brisbois:  "ALL DOCUMENTS,
20          including but not limited to all COMMUNICATIONS with any PERSON,
21          created by Brisbois while employed by MGA RELATED TO MGA's
22          marketing of products that compete with Mattel's products, recruiting or
23          attempting to recruit Mattel's employees, or the theft of Mattel trade
24          secrets, confidential or proprietary information."  (Reply in Support of
25          Letter of Request Motion, p. 7).

26     •    Request for Production No. 10 to MGA Canada:  "ALL DOCUMENTS,
27          including but not limited to all COMMUNICATIONS with any PERSON,
28          created by Brisbois while employed by MGA RELATED TO MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

EXHIBIT **51**

PAGE **669**

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1     marketing of products that compete with Mattel's products, recruiting or

2     attempting to recruit Mattel's employees, or the theft of Mattel trade

3     secrets, confidential or proprietary information." (*Id.*).

4     The two requests are collectively referred to below as "Document Request

5 No. 10."

6               **(1)**     **The Requests Are Not Overbroad Or Vague**

7     The MGA Parties initially contend that Document Request No. 10 is

8 overbroad and vague because it "seek[s] every document created by Brisbois

9 related to marketing" and "[n]ot every MGA product that may at some level

10 'compete' with some Mattel product is at issue in this case." (Opposition to Letter

11 of Request Motion, pp. 3 and 5). However, each of these arguments ignores a

12 critical component of the SAAC. The SAAC does not allege that MGA stole trade

13 secrets related to one specific product or even multiple products. Instead, it alleges

14 that MGA (through Brisbois and others) also stole Mattel's "proprietary business

15 methods, practices and information." (SAAC, ¶ 20). Given that the SAAC alleges

16 that the MGA Parties engaged in the wholesale theft of Mattel's trade secrets, not

17 just products, and Mattel alleges that such information was used unlawfully by

18 MGA to compete in Canada and elsewhere, (*see, e.g., id.*, ¶¶ 4 and 70), Mattel is

19 entitled to discover how MGA marketed its products through MGA Canada and the

20 methods it used to do so.

21     Document Request No. 10 is not only relevant to Phase 2 issues but

22 reasonably tailored to defeat any claim of vagueness or overbreadth, since the

23 request only seeks documents created by Brisbois when she worked for MGA

24 involving MGA's "marketing of products that compete with Mattel's products,

25 recruiting or attempting to recruit Mattel's employees, or the theft of Mattel trade

26 secrets, confidential or proprietary information." (Reply in Support of Letter of

27 Request Motion, p. 7). Because Document Request No. 10 is limited in time as

28 well as scope, and tied to a single individual, it "adequately describe[s] the

EXHIBIT **51**

PAGE **670**

- 10 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  requested materials." (*Boyer v. Gildea*, 2008 WL 4911267, *7 (N.D. Ind. Nov. 5,

2  2008).

3          **(2)**    **The Protective Order Resolves Any Trade**

4                **Secret Concerns**

5        The MGA Parties next assert that Document Request No. 10 seeks

6  confidential business information and trade secrets concerning MGA's products.

7  (*See* Opposition to Letter of Request Motion, pp. 3 and 5). Again, this objection is

8  defeated by the existence of the protective order.

9          **(3)**    **Document Request No. 10 Is Not Unduly**

10                **Burdensome**

11        The MGA Parties also argue that Document Request No. 10 is unduly

12  burdensome. (*Id.*). The Discovery Master finds this argument unpersuasive for

13  three reasons.

14        First, MGA cannot assert a claim of undue burden on behalf of a third party

15  (i.e., MGA Canada). (*See, e.g., G.K. Las Vegas Ltd. Partnership v. Simon Prop.*

16  *Group, Inc.*, 2007 WL 119148, *3 (D. Nev. Jan. 9, 2007) ["A party's objection that

17  the subpoena issued to the non-party . . . imposes an undue burden on the nonparty

18  are not grounds on which a party has standing to move to quash a subpoena issued

19  to a non-party . . ."]).

20        Second, MGA has not provided any evidence in connection with its

21  opposition to support its claim of burden. (*See Columbia Pictures Indus., Inc. v.*

22  *Bunnell*, 2007 WL 4916964, *5 (C.D. Cal. May 7, 2007) ["Defendant's 'unduly

23  burdensome' and harassing objection is overruled as such objection is conclusory,

24  and as defendants have provided no facts or evidence to support a finding that

25  production . . . would be unduly burdensome and/or harassing."]; *El-Shaddai v.*

26  *Wheeler*, 2009 WL 301824, *2 (E.D. Cal. Feb. 5, 2009) ["[F]ederal courts reject

27  claims of burdensomeness which are not supported by a specific, detailed showing,

28  usually by affidavit, of why weighing the need for discovery against the burden it

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **671**

- 11 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   will impose permits the conclusion that the court should not allow it."]; *Jackson v.*
2   *Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party
3   claiming that a discovery request is unduly burdensome must allege specific facts
4   which indicate the nature and extent of the burden, usually by affidavit or other
5   reliable evidence."]).

6        Finally, the MGA Parties fail to acknowledge the probative value of the
7   information sought by Document Request No. 10. (*See King v. Georgia Power
8   Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer
9   will be time-consuming, and probably costly, the information is crucial to the issues
10  of this suit, and is in the exclusive custody of the defendant."]).

11             **d.**    **Conclusion**
12       For all of the above reasons, the Discovery Master overrules the MGA
13  Parties' objections to the document requests directed to Brisbois and MGA Canada.

14         **3.**    **The Deposition Subjects Challenged By The MGA Parties**
15       Having addressed the MGA Parties' objections to the document requests, the
16  Discovery Master now turns to the MGA Parties' objections to the proposed
17  deposition of MGA Canada.

18       Mattel seeks to depose MGA Canada's person most knowledgeable on the
19  following subjects:

20      •  Category No. 1: "Knowledge of MGA Entertainment Canada's methods
21          and procedures regarding the access, use, reproduction, copying, storage,
22          transmission, transfer, disclosure, retention, destruction, deletion or use of
23          any documents, data and/or information, that were prepared, made,
24          created, generated, assembled or compiled by or for MATTEL and that
25          MGA received, directly or indirectly, from Janine Brisbois." (Opposition
26          to Letter of Request Motion, p. 6).

27      •  Category No. 2: "Knowledge of MGA Entertainment Canada's methods
28          and procedures regarding the access, use, reproduction, copying, storage,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**
PAGE **672**
- 12 -
ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    transmission, transfer, disclosure, retention, destruction, deletion or use of

2    any documents, data and/or information regarding MGA Entertainment

3    Canada's advertising, project, sales, customer or strategy information

4    related to any Bratz Product regardless of whether such information was

5    received directly or indirectly from Janine Brisbois." (*Id.*).

6          **a.    Category No. 1 Relates To Mattel's Phase 2 Claims**

7          The MGA Parties first contend that Category No. 1 is not limited to trade

8    secret information but rather "sweeps in such amorphous concepts as 'information

9    . . . prepared, made[,] created, generated, assembled or compiled by or for Mattel'"

10   that MGA received from Brisbois. (*Id.*). On its face, Category No. 1 is admittedly

11   broader than trade secret information provided by Brisbois to MGA. However, the

12   category is nonetheless relevant to Phase 2 claims. The SAAC alleges that MGA

13   not only misappropriated trade secrets but stole other "confidential and proprietary

14   information" belonging to Mattel. (SAAC, ¶ 1; *see also id.* ¶¶ 5, 20 and 48). The

15   SAAC expressly alleges that Brisbois was involved in this misconduct. (*Id.*, ¶ 74).

16   Consequently, Mattel is entitled to discover any information regarding the theft of

17   that other proprietary information it claims Brisbois took "to MGA to further

18   MGA's business interests and to harm Mattel." (*Id.*, ¶ 5).

19         **b.    Category Nos. 1 And 2 Are Not Incomprehensible**

20         Finally, the MGA Parties object to Category Nos. 1 and 2 on the ground that

21   they employ "extraordinarily vague, broad, and complex" language that renders

22   them incomprehensible, namely the language "knowledge of . . . methods and

23   procedures regarding the access, use, reproduction, copying, storage, transmission,

24   transfer, disclosure, retention, destruction, deletion or use of any documents, data

25   and/or information." (Opposition to Letter of Request Motion, p. 7). The MGA

26   Parties reason that "[w]hatever it is Mattel is asking about, it appears to relate to

27   every document and piece of data that relates in any way to Bratz, no matter how

28   much or how little, and no matter how irrelevant those documents are to the issues

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **673**

- 13 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   presented in this case." (*Id.*).  This argument is contradicted by the plain language

2   of the categories.

3        As the MGA Parties acknowledge in their Opposition, Category No. 2 is

4   limited to MGA Canada's person most knowledgeable "regarding MGA

5   Entertainment Canada's advertising, project, sales, customer or strategy information

6   related to the Bratz Products." (*Id.*).  Category No. 1 is similarly linked to

7   documents in some manner generated "for MATTEL and that MGA received,

8   directly or indirectly, from Janine Brisbois." (*Id.*, p. 6).  Accordingly, the language

9   of each category is specifically limited to certain categories of documents related to

10  the Bratz, such as advertising, sales and customer information.  In fact, Mattel

11  concedes that it "is not seeking *every* document that *in any way* relates to Bratz."

12  (Reply in Support of Letter of Request Motion, p. 13 [emphasis in original]).

13  Therefore, it is precluded from taking such a position at the subject deposition and

14  must confine its questioning to the limited categories of documents referenced in

15  Category Nos. 1 and 2.

16               **c.**    **Conclusion**

17       For all of the foregoing reasons, the Discovery Master overrules the MGA

18  Parties' objections to the deposition categories in the proposed letter of request

19  directed to MGA Canada.

20      **F.**    **Summary Of Ruling Regarding The Letter Of Request Motion**

21       Having considered all of the arguments presented by the parties, the

22  Discovery Master concludes that a letter of request should issue subject to the

23  additional limitations discussed in Section I.D.2.a.2. above.

24  **II.**    **MATTEL'S MOTION TO COMPEL**

25      **A.**    **Factual Background**

26            **1.**    **Machado Leaves Mattel To Work For MGA**

27       Defendant Carlos Gustavo Machado Gomez ("Machado") was employed by

28  Mattel until April 19, 2004, when he resigned to go to work for MGA.  One week

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **674**

- 14 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    later, on April 27, 2004, Mattel filed this action against Carter Bryant.

2        **2.    Machado Opens The E-Mail Account**

3        In June, 2005 (i.e., after he began working for MGA but before being named

4    as a counterclaim defendant in this action), Machado opened a Yahoo! e-mail

5    account named gus_cmt@yahoo.com (the "Account"). Machado and his attorney

6    (who substituted into this case in September, 2007) have submitted declarations

7    stating that they have used the Account to engage in confidential attorney-client

8    communications.

9        **3.    Mattel Serves Document Requests On Machado, And He**

10           **Invokes The Attorney-Client Privilege And The Fifth**

11           **Amendment**

12        In or about November, 2006, Mattel amended its counterclaim to add

13    Machado and others as counter-defendants.

14        In September, 2007, Mattel served a document request on Machado

15    specifying 85 categories of documents to be produced, encompassing, among other

16    things, various categories that would also be included in Mattel's forthcoming

17    subpoena to Yahoo!. Machado timely served responses and objections on October

18    15, 2007. (Supplemental Corey Decl., Ex. 3). Among other general objections,

19    Machado objected to producing any documents protected by the attorney-client

20    privilege (General Objection No. 2) or by his Fifth Amendment right against self-

21    incrimination (General Objection No. 3). Moreover, in his objection to several of

22    the specific requests, including requests that would be included in the subpoena to

23    Yahoo! (e.g., Request No. 4 seeking e-mails sent to or from any e-mail address that

24    includes the suffix <mattel.com>), Machado repeated his objection based on the

25    Fifth Amendment. Machado produced approximately 200 pages of documents in

26    response to the document request, but no e-mails.

27        **4.    Mattel Serves The Subpoena On Yahoo!**

28        On October 29, 2007, Mattel served a subpoena on Yahoo! (the "Subpoena")

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __675__

- 15 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

seeking documents relating to the Account.  (Supplemental Corey Decl., Ex. 2). The Subpoena contains 22 document requests, which fall into the following seven categories:

- Category No. 1:  Documents relating to the registration and ownership of the Account (Document Request Nos. 1 – 2);

- Category No. 2:  E-mail messages sent to or from, or mentioning, Mattel (Document Request Nos. 3 – 6);

- Category No. 3:  E-mail messages pre-dating April 20, 2004 or October 2, 2004, i.e., before Machado opened the Account (Document Request Nos. 7, 11 – 14, and 16);

- Category No. 4:  E-mail messages referring to Larian and other MGA personnel (Document Request Nos. 8 – 10 and 16 – 17);

- Category No. 5:  E-mail messages relating to the search by Mexican authorities of MGA's offices in Mexico (Document Request No. 15);

- Category No. 6:  Documents reflecting any other e-mail accounts used by Machado (Document Request Nos. 18 – 19); and

- Category No. 7:  Documents reflecting Yahoo! policies and procedures (Document Request Nos. 20 – 22).[1]

On the same day that Mattel served the Subpoena on Yahoo!, Mattel sent Machado a letter informing him that the Subpoena had been served and requesting his consent to the release of his e-mails pursuant to the Shared Electronic Communications Act.  The letter enclosed a form for Machado to sign indicating his consent.  On November 1, 2007, Machado's counsel responded.  Among other things, he asserted that the Subpoena was overbroad and *duplicative* of Mattel's document request propounded on Machado.  Counsel also inaccurately asserted that

---

[1] According to Machado, "Yahoo[!] has informed counsel for Mr. Machado that it would produce non-content documents in response to Mattel's subpoena."  (Cote Decl. in Support of Opposition to Motion to Compel, ¶ 4.). Machado asserts that "these non-content documents presumably satisfy Requests 1, 2 and 18 – 22 of Mattel's subpoena."  (Opposition to Motion to Compel, p. 3, fn. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **676**

- 16 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  Machado had already produced e-mails from the Account (but, in fact, no such e-

2  mails were among the documents Machado had produced).  Machado's counsel

3  further informed Mattel that Machado would not sign the consent form authorizing

4  Yahoo! to produce e-mails responsive to the Subpoena.

5       Having prevented Yahoo! from complying with the Subpoena by refusing to

6  sign the consent form and having previously objected to the duplicative document

7  requests served on him directly, Machado apparently did not deem it necessary to

8  serve separate objections to the Subpoena.  Mattel contends that this omission

9  constitutes a waiver, as discussed more fully below.

10       **5.     Mattel Seeks To Compel Machado's Consent**

11       Mattel then filed a motion to compel in November 2007 seeking to force

12  Machado to consent to the release of the e-mails requested by the Subpoena.

13  Machado filed his initial Opposition on November 26, 2007 and a Supplemental

14  Opposition on January 14, 2008.  In the latter pleading, Machado asserted, for the

15  first time in connection with the Subpoena, that communications responsive to the

16  Subpoena were privileged.  However, he did not provide a privilege log identifying

17  those communications.  Mattel's motion was still pending at the time the Court

18  imposed a stay on Phase 2 discovery on February 4, 2008.

19       Now that the stay has been lifted, Mattel renews its motion for an order

20  compelling Machado to give his consent to the release of the e-mails sought by the

21  Subpoena.

22       **B.     Relief Sought By Mattel**

23       The only item of relief sought by Mattel is an order directing Machado "to

24  provide his consent to the disclosure of relevant electronic mail messages" from the

25  //

26  //

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  **51**

PAGE  **677**

1    Account.[2] Because of the manner in which Mattel has framed its request for relief,

2    the Discovery Master is presented with the choice of giving Mattel "all or nothing."

3    Based on the record before him, the Discovery Master concludes that such relief is

4    not appropriate.  For the reasons explained below, the Discovery Master concludes

5    that the Subpoena seeks both discoverable and non-discoverable items, including

6    items which are potentially protected from disclosure by the attorney-client

7    privilege and Machado's right of privacy.  The Discovery Master cannot sever the

8    objectionable categories of documents from the permissible ones, requiring

9    Machado to consent only to the latter.

10         Accordingly, the "all or nothing" relief requested by Mattel would force the

11   Discovery Master to either (1) compel Machado to sign the release, in which case

12   Yahoo! would produce all requested e-mails, including confidential attorney-

13   communications or, alternately (2) deny Mattel's request to compel Machado's

14   consent, in which case Yahoo! would not have to produce any responsive e-mails,

15   including items which are potentially probative of Mattel's Phase 2 claims.

16         The Discovery Master does not believe that either alternative is in the

17   interests of justice.  Accordingly, as set forth below, the Discovery Master will

18   exercise his discretion to fashion relief that enforces Mattel's legitimate right to

19   discovery of Phase 2 evidence, on the one hand, while protecting Machado from the

20   disclosure of privileged communications with his attorney, on the other hand.

21         **C.    Analysis**

22         Machado relies on essentially three substantive arguments in his Opposition

23   //

24   _____

25   [2] Mattel's Notice of Motion states that Mattel seeks an order compelling Machado to provide his consent to the disclosure of relevant e-mail messages "from his internet service providers" in general, and, in the Memorandum of Points and Authorities references one other account, plot04@aol.com.  However, Mattel does not reference any

26   subpoena to AOL in its motion or supporting declarations, and consequently the Discovery Master understands that the present motion is limited to the Yahoo! account.  Mattel also asserts in its Memorandum of Points and

27   Authorities (but not in its Notice of Motion) that Machado should be compelled to identify each e-mail account he has used in the past five years. (Motion to Compel, p. 6:15 – 17).  Given the fact that there is no pending motion by

28   Mattel to enforce any such interrogatory to Machado, that issue has not been properly raised and is not addressed by this Order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT    51

PAGE    678

- 18 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   to the motion.[3]  First, he asserts that some of the e-mails sought by the Subpoena

2   contain communications protected by the attorney-client privilege and/or attorney

3   work product doctrine.  Second, he asserts that the Subpoena is overbroad because

4   it supposedly seeks every e-mail Machado has ever sent or received that concerns

5   MGA or certain employees at MGA, thereby violating his right of privacy.  Third,

6   Machado argues that requiring him to consent to the disclosure of the subject e-

7   mails violates his Fifth Amendment privilege against self-incrimination, since the

8   e-mails sought might be used by Mattel to prove its claims that Machado engaged

9   in criminal acts, including the criminal theft of Mattel's trade secrets.  Each of these

10  arguments is addressed in turn below.

11  **1.      Attorney-Client Privilege/Attorney Work Product**

12  **Protection**

13       Mattel does not dispute the evidence submitted by Machado and his counsel

14  that some, if not all, of the e-mail communications made using the Account are

15  confidential attorney-client communications.  Instead, Mattel argues that Machado

16  has waived any protections attaching to those communications by failing to provide

17  a privilege log.

18       In response, Machado, citing a ruling by the prior discovery master,[4] argues

19  that no privilege log is required for communications occurring after the

20  commencement of the litigation in 2004.  However, as Mattel points out, Machado

21  did not become a party to the lawsuit until approximately the end of 2006 and

22  therefore should not be able to avoid logging allegedly privileged e-mails occurring

23  before that date.  The Discovery Master agrees that this later date is the appropriate

24

25  [3] In addition to these substantive arguments, Machado also asserts that Mattel failed to sufficiently meet and confer
    regarding the waiver issue.  However, there is no indication that, given Machado's refusal to execute the release
26  form, it would have made any difference for Mattel to initiate discussions with Machado on Mattel's contention that
    Machado had waived his objections to the Subpoena.
27
    [4] *See* May 6, 2008 Order Denying Mattel's Motion for Protective Order Limiting the Temporal Scope of its Privilege
28  Log, attached as Exhibit A to the Declaration of Alexander H. Cote in Support of Opposition to the Motion to
    Compel.



EXHIBIT **51**

PAGE **679**

- 19 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    cut-off for requiring a privilege log from Machado.[5]  The issue before the

2    Discovery Master therefore is whether any attorney-client communications

3    Machado may have had with counsel between the time he opened the Account in

4    June, 2005, on the one hand, and his entry into the lawsuit in November, 2006, on

5    the other hand, should be deemed to have been waived as a result of Machado's

6    failure to provide a privilege log identifying those communications.

7        As explained above, Machado learned of the Subpoena by means of the letter

8    Mattel sent him on October 29, 2007.  He asserted the attorney client privilege for

9    the first time in connection with the Subpoena in his Supplemental Opposition to

10    Mattel's Motion to Compel on January 14, 2008 – about 10 weeks later.  However,

11    he did not – and to this date has not – provided any privilege log.

12            **a.**     **Legal Standard**

13        A party asserting privilege must promptly identify privileged documents.

14    The Ninth Circuit has ruled that, under certain circumstances, the failure to timely

15    identify privileged communications may be deemed a waiver of the privilege.

16    (*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir.

17    2005) [finding a waiver under the particular circumstances of that case but rejecting

18    a *per se* waiver rule that deems a privilege waived if a log is not produced within 30

19    days of service of a document request]).  The Advisory Committee notes to

20    Rule 26(b)(5) specifically anticipate waiver of privilege as a remedy for the failure

21    of a party to timely produce a privilege log.  (*See* Federal Rule Civil Procedure

22    26(b)(5) advisory committee's note (1993 Amendments) ["To withhold materials

23    without such notice is contrary to the rule, subjects the party to sanctions under

24    Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."]).

25        In determining whether a waiver has occurred, the Ninth Circuit has adopted

26

27

28

---

[5] According to Mattel, the cut-off for requiring a privilege log should begin on the date Mattel filed its motion to amend to add Machado as a party (i.e., November 20, 2006) rather than the date the Court granted the motion. (Reply in Support of Motion to Compel, p. 11).  The Discovery Master accepts Mattel's use of this date and finds that any e-mails between Machado and his counsel subsequent to November 20, 2006 are protected by the attorney-client privilege without the necessity of producing a detailed privilege log.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **680**

- 20 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   "a holistic reasonableness analysis, intended to forestall needless waste of time and

2   resources, as well as tactical manipulation of the rules and the discovery process."

3   (*Burlington*, 408 F.3d at 1149). Pursuant to this approach, district courts are to

4   conduct a case-by-case determination of whether the privilege was waived, taking

5   into account the following four factors: (1) the degree to which the objection or

6   assertion of privilege enables the litigant seeking discovery and the court to

7   evaluate whether each of the withheld documents is privileged; (2) the timeliness of

8   the objection and accompanying information about the withheld documents; (3) the

9   magnitude of the document production; and (4) other particular circumstances of

10   the litigation that make responding to the discovery unusually easy or unusually

11   hard. (*Id.*).

### b.   Application

13       Here, the first *Burlington* factor weighs in favor of a finding of waiver,

14   because Machado has failed to provide any information that would enable Mattel or

15   the Discovery Master to determine whether any particular e-mail is in fact protected

16   by the privilege.

17       With respect to the second factor (timeliness of the objection), Machado first

18   asserted the objection in connection with the Subpoena in his supplemental

19   Opposition to Mattel's motion to compel instead of serving timely objections to

20   Mattel's subpoena pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) (stating

21   that objections must be served before the earlier of the time specified for

22   compliance in the subpoena or 14 days after the subpoena is served). Still, although

23   untimely, the objection was asserted during the briefing of Mattel's motion, giving

24   Mattel an opportunity to address the objection. Moreover, the relatively brief delay

25   in Machado's assertion of the privilege does not appear to have resulted in any

26   prejudice to Mattel, especially in light of the Court's decision shortly thereafter to

27   stay all Phase 2 discovery for nearly one year. Finally, the Discovery Master notes

28   that Machado also raised an attorney-client privilege objection to the document

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **681**

- 21 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1  requests that were propounded directly on him and which contained similar requests

2  as the Subpoena. For all of these reasons, the Discovery Master concludes that this

3  factor weighs against a finding of waiver.

4       Turning to the third factor referenced in *Burlington*, there is no evidence in

5  the record regarding the number of e-mails in the Account. However, Machado has

6  not asserted that the universe of privileged e-mails is voluminous or that it would be

7  unduly burdensome for him to provide a log identifying those e-mails. Therefore,

8  this factor is either neutral or weighs in favor of a finding of waiver.

9       The fourth and final factor identified in *Burlington* likewise weighs in favor

10  of finding a waiver. The discovery at issue involves only a single e-mail account.

11  Machado apparently can readily review past e-mails in that Account, as

12  demonstrated by his declaration, in which he states that he first sent an e-mail from

13  the account on July 13, 2005   (Declaration of Carlos Gustavo Machado Gomez

14  dated February 27, 2009 in Support of Opposition to Motion to Compel ("Machado

15  Decl."), ¶ 4). Moreover, the fact that Machado was not named as a party to this

16  action until November, 2006 – nearly one and a half years after he opened the

17  Account – suggests that there would be few, if any privileged e-mails, at least with

18  respect to this case (although there may be privileged e-mails between Machado

19  and any attorney he may have retained in connection with his defense of criminal

20  proceedings in Mexico or elsewhere).

21       Although the four factors enumerated above on balance tend to weigh in

22  favor of finding a waiver, in *Burlington* the Ninth Circuit expressly cautioned

23  district courts against applying these factors mechanically, instead emphasizing that

24  the overriding consideration should be one of reasonableness within the context of

25  all the circumstances. (*Burlington*, 408 F.3d at 1149). Following this admonition,

26  the Discovery Master concludes that the harsh penalty of waiver is not warranted at

27  this time, and that, as set forth below, Machado should be accorded a short period

28  in which to provide a log of the e-mails allegedly protected by the attorney-client

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __682__

- 22 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]



1    privilege sent to and received from the Account that are responsive to any of the

2    categories set forth in the Subpoena.  Such a log will enable Mattel to request that

3    the Discovery Master review the e-mails *in camera* for the purpose of ascertaining

4    whether production of those e-mails should be compelled.

5                    **2.    Overbreadth**

6            As his second argument in opposition to Mattel's motion to compel,

7    Machado asserts that the Subpoena is overbroad:

8                    because it seeks every email Mr. Machado has ever sent

9                    or received that concerns Mattel, MGA, or certain

10                   employees at MGA.  [citation omitted].   Mattel is Mr.

11                   Machado's former employer, and MGA is his current

12                   employer.  Clearly emails that merely mention one of

13                   these companies or individuals will not be necessarily

14                   relevant to this matter.  Because Mattel's motion makes

15                   no effort to justify this overbroad subpoena, the motion

16                   should be denied.

17   (Opposition to Motion to Compel, p. 4).  This argument applies to fewer than half

18   of the 22 document requests set forth in the Subpoena, namely Document Request

19   Nos. 3 – 6 (e-mail messages sent to or from, or mentioning, Mattel) and Document

20   Request Nos. 8 – 10 and 16 – 17 (e-mail messages referring to Larian and other

21   MGA personnel).[6]

22           In response, Mattel argues that Machado waived his overbreadth objection

23   (as he did his other objections) by failing to timely assert it.  As noted above, it is

24   undisputed that Machado did not timely serve any objections to the Subpoena.

25   While the Discovery Master finds that this omission should not, under the

26   applicable case law and the circumstances presented here, be deemed a waiver of

27   

28   _____
[6] Although Mattel also seeks to discover e-mail communications made to certain other MGA employees, six of those requests are limited to the period before Machado claims to have opened the Account in 2005 and therefore do not request information that exists unless Machado actually opened the account prior to the stated time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **683**

- 23 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   *privileged* communications, the Discovery Master finds that it is appropriate to

2   deem this omission to be a waiver of other objections relating to *non-privileged*

3   documents, including Machado's overbreadth objection..

### 3.   Fifth Amendment Protection Against Self-Incrimination

5       As his final argument, Machado argues that consenting to the release of the

6   subject e-mails would, to the extent any incriminating information is contained in

7   those e-mails, constitute a violation of his Constitutional right against self-

8   incrimination:

9               As made clear in its motion, Mattel alleges that Mr.

10              Machado and others used the plot04@aol.com account, as

11              well as other unspecified accounts, in furtherance of

12              criminal acts, including the criminal theft of Mattel's

13              trade secrets.  [citation omitted]  And Mattel has

14              instigated criminal prosecutions in Mexico against Mr.

15              Machado for his alleged criminal use of his email

16              accounts, and he is at risk of prosecution in the United

17              States for the same alleged criminal conduct.

18  (Opposition to Motion to Compel, p. 9).

19      In response, Mattel argues that compelling Machado to sign the consent form

20  does not infringe Machado's Fifth Amendment rights because:  (1) Machado

21  waived his right to assert it; and (2) the Fifth Amendment does not apply in the

22  present circumstances.

23      At the outset, the Discovery Master notes that, in their briefs, the parties

24  appear to be arguing different applications of the Fifth Amendment privilege.

25  Mattel argues that compelling Machado to sign the release form, and the attendant

26  production of responsive e-mails, would not violate Machado's Fifth Amendment

27  rights. (Motion to Compel, p. 6).  By contrast, Machado appears to argue only that

28  the Fifth Amendment precludes the Discovery Master from ordering him to *identify*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__      - 24 -

PAGE __684__

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   the e-mail accounts he has used for the past five years.  (Opposition to Motion to

2   Compel, p. 9).  At the April 27, 2009 telephonic hearing on the Motion to Compel,

3   counsel for Machado further stated that Machado was not asserting his Fifth

4   Amendment rights as to the Account.  Nevertheless, given the parties' differing

5   understanding of the scope of relief sought by Mattel, the Discovery Master will

6   proceed to analyze the applicability of the Fifth Amendment to the production of e-

7   mails from the Account.

8                          a.      **Waiver**

9           As set forth above, Machado failed to assert his Fifth Amendment rights in

10  response to the Subpoena Mattel served on Yahoo!.  However, he did assert his

11  Fifth Amendment rights in connection with Mattel's document request which

12  Mattel served on him two months prior to the Subpoena (and which, as Mattel

13  admits, seeks many of the same e-mails sought by the Subpoena).  Accordingly,

14  Mattel was on notice that Machado objected to the production of those e-mails on

15  the ground that producing them (or allowing a third party to produce them) could

16  incriminate him.

17                         b.      **Applicability Of The Fifth Amendment**

18          The Fifth Amendment provides individuals with a privilege against self-

19  incrimination.  A violation of that privilege occurs when "the accused is compelled

20  to make a Testimonial Communication that is incriminating."  (*Fisher v. United*

21  *States*, 425 U.S. 391, 408 (1976); *see also United States v. Authement*, 607 F.2d

22  1129, 1131 (5th Cir.1979) (articulating the three factor test of (1) compulsion,

23  (2) testimonial communication, and (3) incrimination)).

24          Generally, "a person inculpated by materials sought by a subpoena issued to

25  a third party cannot seek shelter in the Self-Incrimination Clause of the Fifth

26  Amendment."  (*S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) ("*Jerry T.*

27  *O'Brien*")).  The Ninth Circuit has applied *Jerry T. O'Brien* to overrule the

28  assertion of the Fifth Amendment privilege in situations where the documents

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__        - 25 -          ORDER NO. 22
                                      [Case No. CV 04-09049 SGL (RNBx)]

PAGE __685__

1   sought are in the possession and custody of a third party.  (*In re Grand Jury*

2   *Subpoena (Maltby)*, 800 F.2d 981, 983 (9th Cir. 1986)).  There, the Ninth Circuit

3   upheld enforcement of a subpoena seeking records from a police department over

4   the objections of the person to whom the records pertained, noting that "[a] party is

5   privileged from producing the evidence [himself] but not from its production." (*Id.*

6   [internal citation omitted]).

7       In this case, there is, however, one element that was not present in the above-

8   referenced cases: unlike the aforementioned cases, the production of documents by

9   the third party here apparently cannot be effected without the consent of the

10  individual asserting the Fifth Amendment privilege (i.e., Machado).  Therefore, the

11  documents are effectively in Machado's exclusive control.  So long as he refuses to

12  consent to their release, the only way to obtain them – according to Mattel – is by

13  compelling Machado to consent to their release.  Thus, the question becomes

14  whether ordering Machado to consent to the production of the subject e-mails can

15  be deemed "self-incrimination."

16      In *United States v. Doe*, 465 U.S. 605, 610 (1984) ("*Doe*"), the Supreme

17  Court barred enforcement of a subpoena issued to a small business owner in

18  connection with a grand jury investigation into corruption in the awarding of county

19  and municipal contracts.  The court drew a distinction between the contents of the

20  underlying documents sought by a subpoena and the act of compelling the person

21  controlling the documents to produce them, stating, "[a]lthough the contents of a

22  document may not be privileged, the act of producing the document may be." (*Id.*,

23  at 612).  Applying that distinction, the court found that the underlying business

24  records sought by the subpoena were not protected by the Fifth Amendment

25  because they were not prepared involuntarily or under compulsion.  However, the

26  court also found that the act of producing the records was privileged because such

27  an act would constitute a tacit admission by the subpoenaed party that the

28  documents exist and are responsive to the categories set forth in the subpoena and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**      - 26 -                    ORDER NO. 22
                                 [Case No. CV 04-09049 SGL (RNBx)]
PAGE **686**

1   would further obviate the need for the government to authenticate the documents.

2   (*Id.*). Accordingly, the court held that the Fifth Amendment shielded the subpoena

3   recipient from responding to the subpoena, on the grounds that such a response

4   would constitute a compelled testimonial act of self incrimination.

5       Here, as in *Doe*, the contents of the documents sought by the Subpoena are

6   clearly not protected by the Fifth Amendment, since there is no showing that

7   Machado wrote the subject e-mails involuntarily. The only question is whether the

8   act of signing a consent form authorizing the production of the e-mails by Yahoo!

9   would constitute compelled testimonial self-incrimination. For the reasons set forth

10  below, the Discovery Master concludes that it would not. Machado's compelled

11  execution of the consent form would not have the same effect as the "tacit

12  admission" in *Doe*, because the documents would not be produced by Machado but

13  rather by Yahoo!. Accordingly, Machado's conduct would not give rise to any

14  inference that the documents actually produced by Yahoo! are authentic or

15  responsive to the Subpoena. (*Id.*, at 613). In other words, Machado's consent,

16  while compelled, would not be testimonial in nature.

17      This conclusion is confirmed by *United States v. Browne*, 624 F.Supp. 245

18  (N.D.N.Y. 1985) and *United States v. Ghidoni*, 732 F.2d 814 (11th Cir. 1984)

19  ("*Ghidoni*"), cases in which the court enforced orders compelling a defendant to

20  execute a consent directive releasing subpoenaed documents. In answering the

21  question of whether the signing of a consent form required to permit a bank to

22  release account information constitutes a compelled testimonial self-incrimination,

23  the *Ghidoni* Court, in language directly applicable here, distinguished *Doe* as

24  follows:

25          The subpoena duces tecum in *Doe* required the taxpayer,

26          a sole proprietor, to produce certain records in his

27          possession, thereby establishing existence, possession or

28          control, and authenticity, and removing the taxpayer's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __687__

- 27 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    ability to present arguments to the contrary.  Conversely,

2    Ghidoni has to produce only a directive, which contains

3    no testimony regarding the existence of bank accounts or

4    his control of them.  The account records, if they exist, are

5    held by the bank and any testimony on the existence,

6    control, or authentication elements of the records would

7    have to come from the records themselves and the bank

8    officials.  After executing the directive, Ghidoni can still

9    maintain that the records do not exist, that he does not

10   control them, and that they are not authentic.  These

11   factors demonstrate the nontestimonial nature of the

12   consent directive.

13   (*Ghidoni*, 732 F.2d at 819).  Accordingly, the court in *Ghidoni* held that the order

14   requiring the respondent to sign the bank consent form was not testimonial, but

15   merely required him "to waive a barrier to permit [a third party] to produce

16   documents." (*Id.* at 819 fn.12).  That same reasoning applies here, defeating

17   Machado's claim that an order compelling him to sign the requested consent form

18   would constitute compelled *testimonial* self-incrimination.

19       Moreover, even if Machado could somehow demonstrate that signing the

20   consent form would constitute a compelled, testimonial act, he would still not be

21   able to satisfy the third prong of the test required to successfully invoke the Fifth

22   Amendment, namely showing that the compelled, testimonial act constitutes self-

23   incrimination.  A claim of Fifth Amendment privilege may be asserted only if there

24   are "'substantial hazards of self-incrimination that are real and appreciable, not

25   merely imaginary and unsubstantial,' that information sought" could be used as

26   evidence of criminal liability. (*U.S. v. Drollinger*, 80 F.3d 389, 392 (9th Cir. 1996)

27   (quoting *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir.1984)); *see also*

28   *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.1980)).  In order to successfully

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__          - 28 -          ORDER NO. 22
                                  [Case No. CV 04-09049 SGL (RNBx)]

PAGE __688__

1   defeat a request for information, the party asserting the privilege "must have

2   'reasonable cause to apprehend [such] danger from a direct answer' to questions

3   posed to him." (*Id.* [internal citation omitted]).  Moreover, in order for a trial court

4   to determine whether the Fifth Amendment protection applies to a given request, it

5   must determine "whether a real and appreciable danger of incrimination exists" by

6   "examin[ing] 'the questions, their setting, and the peculiarities of the case.'" (*Id.*

7   [quoting *Neff,* 615 F.2d at 1240]).

8        Here, Machado asserts that, because Mattel has instigated criminal

9   proceedings against him in Mexico and is attempting to persuade law enforcement

10  officials in the United States to prosecute him, Mattel would likely use any relevant

11  e-mails to establish his criminal liability.  (Opposition to Motion to Compel, p. 9).

12  Machado reasons that, given this factual background, "the identification of

13  [Machado's] e-mail accounts is a direct link to potentially incriminating evidence."

14  (*Id.*).  Although Machado does not expressly so argue, the same reasoning would

15  presumably apply to individual e-mails contained in the Account that is the subject

16  of this motion.

17       Even conceding that point, Machado does not take the necessary next step of

18  making an offer of proof identifying specific e-mails that might be deemed

19  incriminating so that the Discovery Master could test the claim.[7]  Machado appears

20  to assume – incorrectly – that merely raising the general, abstract possibility that

21  *some* of the e-mails might be incriminating is sufficient to carry his burden of

22  establishing that the Fifth Amendment applies to bar production of *any and all* of

23  the e-mails.  Such an assumption is contrary to the law in this Circuit.  As Mattel

24  correctly points out:

25           [Machado's objection] on Fifth Amendment grounds . . .

26

---

27  [7] *See United States v. Bodwell,* 66 F.3d 1000, 1002 (9th Cir. 1995) ["In this case … [the respondent] presented his Fifth Amendment claim and made an offer of proof in the district court contempt proceedings."]; *United States v. Argomaniz,* 925 F.2d 1349, 1355 (11th Cir. 1991) [remanding case to district court for *in camera* proceeding to determine, on a question-by-question basis, whether the respondent could properly invoke the Fifth Amendment]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  51                     - 29 -                              ORDER NO. 22
                                                          [Case No. CV 04-09049 SGL (RNBx)]

PAGE  687

1    [is] an improper blanket assertion of the privilege

2    preventing Mattel from even testing whether particular

3    documents are or are not subject to the privilege.  See

4    *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977)

5    (Party cannot invoke a blanket Fifth Amendment claim).

6    Rather, … any Fifth Amendment claim must be tested on

7    a document-by-document basis.

8    (Reply in Support of Motion to Compel, pp. 4 – 5).

9       Applying this standard here, Machado has failed to sufficiently identify any

10   potentially incriminating evidence contained in the subject e-mails.  In the absence

11   of such a showing, the Discovery Master cannot make the required determination of

12   "whether a real and appreciable danger of incrimination exists" (*Drollinger*, 80

13   F.3d at 392) such that the Fifth Amendment protection applies.

14   **D.    Machado's Request For Sanctions**

15      Machado contends that "Mattel's motion was wholly baseless and based on

16   misrepresentations and bad faith omissions designed to mislead the special master,"

17   and, on that basis requests sanctions of $3,000.  (Opposition to Motion to Compel,

18   p. 10).  After a careful review of the record, the Discovery Master finds that the

19   alleged "misrepresentations and omissions" alleged by Machado are illusory.

20   Taken as a whole, the Motion to Compel fairly and accurately reflects the record.

21   Instead of only attaching the Subpoena and relevant correspondence, Mattel has

22   provided the Discovery Master with additional documents necessary to allow him

23   to evaluate the circumstances and context surrounding the service of the Subpoena,

24   including Mattel's prior document requests to Machado and Machado's responses

25   and objections to the same.  These latter documents benefitted Machado by

26   enabling the Discovery Master to rule in Machado's favor on the issue of waiver of

27   the attorney-client privilege, and to otherwise provide a complete and balanced

28   evaluation of the parties' contentions.  Accordingly, there is no basis for Machado's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __690__

- 30 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   claim that Mattel engaged in any conduct warranting sanctions.

2       **E.      Summary Of Ruling Regarding The Motion To Compel**

3           While Mattel requests that the Discovery Master compel Machado to sign a

4   consent form permitting Yahoo! to release all documents responsive to the

5   Subpoena, including e-mails protected by the attorney-client privilege and attorney

6   work-product doctrine, the Discovery Master finds that it is not reasonable or

7   equitable, under the facts and circumstances presented here, to deem Machado to

8   have waived those protections.

9           On the other hand, the Discovery Master does not believe that, simply

10  because there may be some privileged communications among the e-mails

11  responsive to the Subpoena, Machado should be able to shield *other* unprivileged e-

12  mails that are potentially probative of Mattel's Phase 2 claims from discovery.

13  Moreover, it is neither fair nor reasonable to require Mattel to accept Machado's

14  unsubstantiated, unilateral determination that no unprivileged, responsive e-mails

15  exist.

16          Accordingly, the Discovery Master will order Machado to sign a consent

17  form permitting that Yahoo! produce directly to the Discovery Master the

18  documents requested in the Subpoena.  The Discovery Master will direct his staff to

19  Bates number the documents produced by Yahoo! and will then forward them to

20  counsel for Machado.  Upon receipt of those documents, Machado shall prepare a

21  log and identify by bates range only all e-mails exchanged with his attorneys after

22  November 20, 2006.  Machado shall further prepare a log:  (1) identifying by date,

23  sender, recipient and subject matter, each and every e-mail in the Account that was

24  created prior to November 20, 2006 and claimed to be protected by the attorney

25  client privilege or attorney work product doctrine; and (2) setting forth a brief

26  explanation of the facts supporting that assertion.  Machado shall submit that log to

27  the Discovery Master and Mattel's counsel and shall simultaneously produce all

28  documents not identified in the log to Mattel.  As to those documents identified in

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__          - 31 -                    ORDER NO. 22
PAGE __691__                                [Case No. CV 04-09049 SGL (RNBx)]

1   the log as privileged, Mattel may request that the Discovery Master conduct an *in*

2   *camera* review of those documents to determine whether any further production is

3   warranted.

4   **III.   MATTEL'S MOTION FOR RECONSIDERATION**

5       **A.   Factual Background**

6           **1.   Mattel Serves The Subject Document Request**

7           On June 13, 2007, Mattel propounded its First Set of Requests for Production

8   of Documents and Things to Isaac Larian ("Larian"). That set of document

9   requests included Document Request No. 198, which requests "All

10  COMMUNICATIONS between YOU and any individual while the individual was

11  employed by MATTEL." Document Request No. 198 is hereinafter referred to as

12  the "Request." Larian objected to the Request and did not produce any responsive

13  documents. On October 11, 2007, Mattel moved to compel the production of

14  documents responsive to the Request (together with other requests in the same set

15  of requests for production). Neither party proposed or briefed any temporal limit

16  on the request for Larian's communications with Mattel employees.

17          **2.   The Prior Discovery Master's December 31, 2007 Order**

18          The prior discovery master ruled on Mattel's motion in an order dated

19  December 31, 2007 (the "Prior Order"). With respect to the Request, the prior

20  discovery master found that the Request "is reasonably tailored to the specific and

21  numerous allegations in the case regarding alleged trade secret theft." At the same

22  time, however, he *sua sponte* limited the request to the time period of 1999 through

23  2005 based on his understanding that this was the only time period during which

24  Mattel had alleged trade secret theft by MGA:

25          Nevertheless, an additional temporal limitation is appropriate to

26          tailor the request to Mattel's allegations of trade secret theft. The

27          alleged trade secret theft began with Bryant's conduct in 1999

28          and continued to 2005. Accordingly, Larian shall produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **692**

- 32 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    documents responsive to Request No. 198 that are limited to the

2    time frame 1999 to 2005.

3    Mattel argues that, in so ruling, the prior discovery master misconstrued the

4    scope of Mattel's counterclaims. Mattel points out that, in connection with its

5    RICO claims, Mattel alleged that the MGA Parties, including Larian, are engaged

6    in an ongoing, open-ended conspiracy that includes the theft of Mattel's trade

7    secrets. (SAAC, ¶¶ 89 – 93 and 99 – 102). In addition to the RICO allegations,

8    Mattel also argues that the SAAC alleges that in recent years MGA and Larian have

9    engaged in a pattern of targeting and recruiting Mattel employees with access to

10   Mattel's trade secret, confidential and proprietary information and that certain of

11   these employees copied and took Mattel information and disclosed it to MGA. (*Id.*,

12   ¶ 77).

13   Mattel further emphasizes that it has obtained evidence of various post-2005

14   instances of MGA's wrongdoing through the discovery process, including MGA's

15   alleged solicitation of Mattel employees to copy and disclose Mattel trade secrets to

16   MGA. (Motion for Reconsideration, pp. 4 – 5).

### 3.    Mattel Seeks Reconsideration Of The Prior Order

18   On January 16, 2008, Mattel filed a motion for reconsideration seeking to

19   amend the Prior Order to include Larian's post-2005 communications with Mattel

20   employees. The motion was stayed with other Phase 2 discovery, then denied

21   without prejudice by a September 23, 2008 order in which the Court denied all

22   pending motions without prejudice for reasons of administrative convenience.

23   The Court lifted the stay on Phase 2 discovery on January 6, 2009. Three

24   weeks later, on January 28, 2009, Mattel sent a letter to Larian's counsel requesting

25   a further meet and confer before filing this renewed motion for reconsideration. On

26   February 11, 2009, Larian agreed to produce his post-2005 communications with

27   Mattel employees. Larian subsequently served Mattel with a verified supplemental

28   response to the Request stating that no responsive post-2005 documents exist.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__     - 33 -     ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __693__

1    However, Larian declined Mattel's demand that he stipulate to amend the Court's

2    prior order excusing him from producing such communications. Mattel then filed

3    the present Motion for Reconsideration.

4    **B.    Relief Sought By Mattel**

5        Mattel requests that the Discovery Master amend the Prior Order to require

6    Larian to produce his post-2005 communications with Mattel employees.

7    **C.    Analysis**

8        MGA advances two arguments in opposition to the Motion. First, MGA

9    argues that Larian's post-2005 communications with Mattel employees are not

10   relevant to Mattel's RICO claims:

11           Mattel's RICO allegations are based entirely on trade

12           secret misappropriation by former Mattel employees

13           Machado, Trueba, Vargas, Brawer, and Brisbois,

14           allegations that are limited to pre-2006 conduct. (SAAC

15           ¶¶ 91 – 92). In addition, Mattel's SAAC does not allege

16           that there are any post-2006 instances of trade secret theft

17           by former Mattel employees, only that there has been an

18           alleged 'continuing use' of the previously 'stolen' trade

19           secrets by MGA post-2006 which constitutes an on-going

20           conspiracy. (SAAC ¶¶ 91 – 92).

21   (Opposition to Motion for Reconsideration, pp. 3 – 4).

22       MGA's reading of the SAAC is too narrow. Paragraph 92 of the SAAC

23   alleges as follows:

24           The MGA Criminal Enterprise and Bratz Criminal

25           Enterprise as described herein are … continuing

26           enterprises because, among other reasons, each is

27           designed to … unlawfully acquire the confidential

28           business information and property of Mattel . . . .The

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __674__

- 34 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    conduct of each enterprise continues through the date of

2    this Second Amended Answer and Counterclaims and is

3    ongoing by virtue of MGA's continuing use of Mattel's

4    information and property . . .

5    (SAAC, ¶ 92). Contrary to MGA's assertion, Mattel does not allege that the *only*

6    reason the alleged criminal enterprise is "ongoing" is because MGA continues to

7    use Mattel's information and property. Additionally, Mattel alleges that the

8    purpose of the alleged criminal enterprises is to "*acquire* the confidential business

9    information and property of Mattel," and that this conduct "continues through the

10   date of [the SAAC (i.e., July 12, 2007)]."

11          Second, MGA argues that the Motion for Reconsideration is moot because

12   Larian has agreed to produce any responsive post-2005 documents and has served a

13   supplemental response stating that he has been unable to locate any such

14   documents. Mattel rejects that contention, arguing that the supplemental response

15   improperly seeks to "resurrect numerous general and specific objections that were

16   previously rejected by [the prior discovery master] in his December 31, 2007

17   Order." (Reply in support of Motion for Reconsideration, p. 3). According to

18   Mattel, this "litany of objections and limitations that render illusory any suggestion

19   by MGA that it is actually agreeing to produce the documents Mattel seeks." (*Id.*,

20   pp. 3 – 4).

21          Because of these allegedly improper qualifications and objections, Mattel

22   contends that Larian's supplemental response is unreliable. Mattel further argues

23   that "only an order can modify an order," (*id.*, p. 1), and suggests that MGA's

24   refusal to submit to court-ordered compliance is to "enable MGA to withhold

25   documents based on spurious or hidden limitations or caveats." (*Id.*)

26          The Discovery Master finds these arguments persuasive. Given the

27   allegations of the SAAC, Larian's compliance with the Request should not have

28   been limited to documents pertaining to communications before 2006.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**          - 35 -          ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE **695**

### D. Summary Of Ruling Regarding The Motion For Reconsideration

For all of the above reasons, the Discovery Master grants the relief requested by Mattel and amends the Prior Order to remove the temporal restriction imposed by the prior discovery master.

## IV. MATTEL'S OBJECTION MOTION

Mattel's Objection Motion involves three interrogatories related to MGA's trade dress claims.

### A. Interrogatory Nos. 48 – 50

On October 25, 2007, Mattel served its Seventh Set of Interrogatories on the MGA Parties, including Interrogatory Nos. 48, 49 and 50 (the "Interrogatories"). (Declaration of Jon Corey in Support of Mattel's Supplemental Memorandum concerning the Objection Motion ("Corey Decl."), Ex. 1 at p. 7). The Interrogatories ask the MGA Parties to identify (1) each trade dress that has been infringed by Mattel, (2) the allegedly infringing Mattel products, and (3) all facts supporting MGA's contention that the trade dress is protectable:

- Interrogatory No. 48: "Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or dilute or that is otherwise the subject of YOUR claims, defenses or allegations in this action." (Id.)

- Interrogatory No. 49: "For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packing or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted." (Id.).

- Interrogatory No. 50: "For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectable, all

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **696**

- 36 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    DOCUMENTS that REFER OR RELATE to the foregoing and all

2    PERSONS with knowledge of the foregoing." (*Id.*).

3    **B.    The MGA Parties' Responses To The Interrogatories**

4    The MGA Parties initially responded to the Interrogatories with only

5    objections. (*Id.*, Ex. 3 at pp. 6 – 8, 12 – 14 and 17 – 19). On November 30, 2007,

6    the MGA Parties supplemented their responses to the Interrogatories. (*Id.*, Ex. 3 at

7    pp. 8 – 11, 14 – 16 and 19 – 22). The substantive portion of the responses stated as

8    follows:

9    • Supplemental Response to Interrogatory No. 48: ". . . Subject to and

10    without waiving the foregoing objections, MGA provides the following

11    supplemental response:  The unique and distinctive trade dress of MGA's

12    'Bratz' line of dolls that Mattel has copied, infringed, and diluted is

13    comprised of the following elements:  the unique, unusual geometric-

14    shaped packaging, with increased transparency including transparent open

15    sides, and with a 'flying banner' style slogan; the proportions and special

16    arrangements of the eyes, noses, and mouths and hairlines; the shape of

17    the eyes, faces, heads and lips; the unique face paint, design, and color

18    scheme depicting facial features; the disproportionately oversized heads;

19    the oversized shoes; and the trendy, hip clothing and hair styles. The

20    unique and distinctive trade dress of MGA's 'Bratz Petz' line of dolls that

21    Mattel has copied, infringed, and diluted is comprised of the following

22    elements:  the open box packaging with no top cover and with partial side

23    panels that slope from a narrow front panel to a higher back panel; the

24    large, humanlike, artfully made-up eyes with long eyelashes that sweep

25    out and away from the outer corner of the eye; the disproportionately

26    oversized heads; and the trendy human clothing." (*Id.*, Ex. 3 at pp. 10 –

27    11).

28    //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **677**

- 37 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

- Supplemental Response to Interrogatory No. 49: ". . . Subject to and without waiving the foregoing objections, MGA provides the following supplemental response:  Each of Matte's 'My Scene' fashion dolls copied, infringed and diluted:  the unique, unusual geometric-shaped packaging, with increased transparency including transparent open sides, and with a 'flying banner' style slogan; the proportions and special arrangements of the eyes, noses, and mouths and hairlines; the shape of the eyes, faces, heads and lips; the unique face paint, design, and color scheme depicting facial features; the disproportionately oversized heads; the oversized shoes; and the trendy, hip clothing and hair styles.  Each of Mattel's 'My Scene' pet dolls copied, infringed, and diluted:  the large, humanlike, artfully made-up eyes with long eyelashes that sweep out and away from the outer corner of the eye; the disproportionately oversized heads; the trendy human clothing; and the open box packaging with no top cover and with partial side panels that slope from a narrow front panel to a higher back panel." (*Id.*, Ex. 3 at p. 16).

- Supplemental Response to Interrogatory No. 50: ". . . Subject to and without waiving the foregoing objections, MGA provides the following supplemental response:  That the elements of MGA's trade dress in its 'Bratz' and 'Bratz Petz' lines are aesthetic and non-functional is apparent from an examination of the Bratz products and packaging, compared to other leading fashion dolls.  That MGA's packaging was and is inherently distinctive is apparent from a comparison of said packaging to the state of fashion doll packaging when Bratz was introduced in 2001, the fact that following the Bratz introduction competitors have copied significant, innovative elements of the Bratz packaging, and the fact that the packaging has won industry awards.  MGA's trade dress has also acquired secondary meaning as a source indicator for 'Bratz' as a result of the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __698__

- 38 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

enormous success of the Bratz dolls in the market, and the marketing and promotional efforts employed by MGA to support Bratz. Documents evidencing the market strength of the Bratz trade dress features include documents evidencing (i) sales totals; (ii) package awards; (iii) package related designs patents; (iv) publicity given to the Bratz dolls and their success; and (v) documents evidencing industry awards given to MGA on account of the success of the Bratz dolls and/or their innovative packaging, and the fact that said packaging has been copied and mimicked by competitors. Persons with knowledge of the packaging issues include Steffen Smith (Director of Structural Engineering/Creative Package Development), Leon Djiguerian (in Product Development), Samir Khare, and Aileen Storer (Creative Director of Bratz & Dolls). Such issues also fall within the scope of expert discovery. Many individuals are knowledgeable of the striking similarities between the protected trade dress of Bratz and features of My Scene Barbie dolls and packaging. These include Carter Bryant and Paula Garcia. That the unique aspects of the Bratz dolls heads/facial features have acquired secondary meaning falls within the scope of expert testimony." (*Id.*, Ex. 3 at pp. 20 – 21).

## C. Mattel's Motion To The Prior Discovery Master

Unsatisfied with the MGA Parties' supplemental responses, Mattel moved to compel further responses to the Interrogatories on December 20, 2007. (Declaration of Jon Corey in Support of Mattel's Supplemental Reply concerning the Objection Motion ("Supplemental Corey Decl."), Ex. 7 at p. 39). Mattel argued, among other things, that with respect to Interrogatory Nos. 48 and 49 the MGA Parties "merely provided what [they] claim[] are the 'basic facts,' without any details." (*Id.*, Ex. 7 at p. 24). Mattel further asserted that the MGA Parties have "no basis for failing to provide full and complete responses to Interrogatory

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **699**

- 39 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   Nos. 48 and 49." (*Id.*, Ex. 7 at p. 25).

2   Mattel similarly argued that the MGA Parties' response to Interrogatory No.

3   50 contained only basic facts without any specific detail. (*Id.*, Ex. 7 at p. 29).

4   Mattel further argued that the response to Interrogatory No. 50 was artificially

5   limited by the MGA Parties' interpretation of Mattel's defined terms and

6   objections, and did not identify specific documents as required. (*Id.*, Ex. 7 at pp. 29

7   – 30 and 32). Finally, Mattel argued that the "Court should overrule MGA's

8   objections" and compel a complete response to Interrogatory No. 50. (*Id.*, Ex. 7 at

9   p. 32).

10      **D.   The Opposition The MGA Parties Filed With The Prior Discovery**

11          **Master**

12          The MGA Parties filed their opposition to Mattel's motion to compel on

13   December 31, 2007. (*Id.*, Ex. 5, p. 33). The MGA Parties' opposition was based

14   entirely on three arguments. First, MGA argued that the Interrogatories related to a

15   Phase 2 issue. (*Id.*, Ex. 5 at p. 30). Second, they argued that the substantive

16   responses they had provided to Mattel gave Mattel "the principal facts supporting

17   [their] contentions regarding Mattel's trade dress infringement, in compliance with

18   [their] Rule 33 obligations." (*Id.*) Finally, the MGA Parties argued that they were

19   permitted to reserve the right to supplement the Interrogatories during expert

20   discovery. (*Id.*, Ex. 5 at pp. 30 – 31). The MGA Parties did not argue that the

21   Interrogatories were objectionable on any other ground. (*Id.*).

22      **E.   The Reply Mattel Filed With The Prior Discovery Master**

23          On January 7, 2008, Mattel filed its reply in support of its motion to compel

24   and responded to each of the arguments raised by the MGA Parties in their

25   opposition. (*Id.*, Ex. 8 at pp. 27 – 28 and 37).

26      **F.   The Prior Discovery Master's February 15, 2008 Order**

27          On February 15, 2008, the prior discovery master denied Mattel's motion to

28   compel concerning the Interrogatories ("February 15, 2008 Order"), finding as

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 51

PAGE 700

- 40 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

follows:

> The MGA parties are in substantial compliance with Rule
> 33, having identified numerous elements of the trade
> dress they contend Mattel has infringed.  More
> specifically, the MGA parties' responses identify Mattel's
> 'My Scene' fashion and pet dolls as the Mattel products
> that infringe their trade dress.  The MGA parties also set
> forth the principal facts supporting their contention that
> their trade dress is protectible [sic] under the applicable
> trade dress legal principles, including that the trade dress
> is aesthetic and non-functional, inherently distinctive, and
> has acquired a secondary meaning.  That the interrogatory
> responses include a reservation of rights to supplement
> during expert discovery does not render the responses
> inherently improper or inadequate.  Mattel does not
> contest that the identification of the elements and products
> subject to trade dress infringement will be a subject of
> expert discovery.

(Corey Decl., Ex. 5 at p. 13.

### G. Mattel Appeals The Prior Discovery Master's February 15, 2008 Order

On March 3, 2008, Mattel appealed the February 15, 2008 Order to the Court ("Appeal").  (Corey Decl., Exh. 6, p. 25).  Although it affirmed the February 15, 2008 Order in most respects, the Court declined to rule on the Interrogatories because they were directed at Phase 2 issues and such discovery had been stayed. (Corey Decl., Ex. 6 at p. 3).  Nevertheless, the Court made it clear that Mattel could "raise the issue again" once the stay on Phase 2 discovery was lifted.  (*Id.*)

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__   - 41 -   ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __701__

**H.   The Court Lifts The Stay On Phase 2 Discovery**

On January 6, 2009, the Court vacated the stay on Phase 2 discovery.  (Order dated January 6, 2009).  Mattel then renewed its Appeal by filing the Objection Motion on January 20, 2009.  (Corey Decl., Ex. 8).  The Objection Motion indicated that Mattel would "lodge copies of the relevant portions of papers filed in connection with" the Appeal.  (Objection Motion, p. 4).

**I.   Order Referring Mattel's Objection Motion To The Discovery Master**

On March 12, 2009, the Court referred Mattel's Objection Motion to the Discovery Master.  (*See* Order dated March 12, 2009 attached to the Corey Decl. as Ex. 9).  The Court instructed the Discovery Master to "consider the issues presented by the motion for review as if presented to him in the first instance . . ." (*Id.*).

**J.   The Relief Sought By Mattel's Objection Motion**

In its Objection Motion, Mattel requests that the Discovery Master overrule all of the MGA Parties' objections to the Interrogatories.  (*See* Supplemental Memorandum in Support of Objection Motion, p. 16).  Mattel also seeks an order requiring the MGA Parties "to provide complete responses to" the Interrogatories.  (*Id.*).  However, this latter request was narrowed by Mattel in other parts of its pleadings, at least with respect to Interrogatory Nos. 48 and 49.  Specifically, Mattel indicated in its Supplemental Reply that, assuming the objections are overruled, Mattel merely seeks a supplemental response by the MGA Parties that "*confirm*[s] that [they have] provided a full and complete response to" Interrogatory No. 48.  (*See* Supplemental Reply, p. 9 [emphasis added]; *see also* Supplemental Memorandum, p. 5).  Mattel further stated that the response to Interrogatory No. 49 is only inadequate because "it is unclear what information [the] MGA [Parties are] holding back [due to their] meritless objections."  (Supplemental Reply, p. 10).

**K.   The MGA Parties' Opposition To The Objection Motion**

The MGA Parties oppose the Objection Motion on three grounds.  (*See*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **702**

- 42 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

MGA's Supplemental Opposition, pp. 9 – 23).  First, the MGA Parties argue that Mattel waived its right to challenge the validity of their objections to the Interrogatories.  (*Id.*, pp. 16 – 18).  Second, the MGA Parties argue that all of their objections to the Interrogatories are meritorious.  (*Id.*, pp. 18 – 24).  Finally, the MGA Parties argue that the substantive responses they provided are adequate.  (*Id.*, pp. 9 – 16).

L.   **Analysis**

1.   **The MGA Parties Abandoned The Vast Majority Of Their Objections**

Both the MGA Parties and Mattel devote a significant portion of their briefs to the topic of waiver.  The MGA Parties initially raised the issue in their Supplemental Opposition, claiming that Mattel waived any right to have the objections they asserted to the Interrogatories overruled by not making such an argument in its original Appeal of the February 15, 2008 Order.  (*Id.*, pp. 16 – 18).  In response, Mattel argues that it not only preserved its right to challenge the objections but that the MGA Parties waived their right to argue the majority of the objections should be enforced by failing to assert them in their opposition to Mattel's original motion to compel submitted to the prior discovery master.  (Supplemental Reply, p. 13 – 15).

The Discovery Master finds that Mattel has the more persuasive argument.  While the MGA Parties claim that "Mattel did not address any of MGA's objections to Interrogatories 48 through 50 in its original Appeal" to the Court, (Supplemental Opposition, p. 17), the sequence of events leading up to the Appeal establish that Mattel did not need to make any such argument as part of the Objection Motion.

In its motion submitted to the prior discovery master, Mattel argued that "the Court should overrule MGA's objections and compel [a] complete response[] to Interrogatory No[.] . . . 50."  It further argued that "MGA had *no basis* for failing to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT   51

- 43 -

PAGE   703

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   provide complete and full responses to Interrogatory Nos. 48 and 49."

2   (Supplemental Corey Decl., Exh. 7, pp. 24 -25 [emphasis added]).   By directly

3   challenging the MGA Parties' objections to Interrogatory No. 50 and by stating that

4   they had "no basis" for refusing to provide more complete responses to

5   Interrogatories Nos. 48 and 49, Mattel placed the burden on the MGA Parties to

6   justify any objections that they wished to rely on to resist the discovery in their

7   opposition.   (*Marshall v. Rain*, 2008 WL 2186184, *1 (S.D. Cal. May 23, 2008)

8   ["the burden of resisting discovery is on the party opposing discovery"]; *El-

9   Shaddai v. Wheeler*, 2009 WL 301824, *2 (E.D. Cal. February 5, 2009) ["The party

10   opposing discovery has the burden of showing that discovery should not be

11   allowed, and of clarifying, explaining and supporting its objections"]).

12         As explained in one of the cases cited by the MGA Parties (i.e., *Moses v.

13   Halstead*), "[w]hen ruling on a motion to compel, the Court will consider only

14   those objections that have been (1) timely asserted, *and* (2) *relied upon in response

15   to the* motion to compel." (236 F.R.D. 667, 672 n. 8 (D. Kan. 2006) [emphasis

16   added]; *see also Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n. 15

17   (D.Kan.2005)). "Objections initially raised but not relied upon in response to the

18   motion to compel will be deemed abandoned." (*Moses*, 236 F.R.D. 672 n. 8). Put

19   another way, a party who fails to assert its objections in its opposition to a motion

20   to compel cannot later invoke the objections to resist the discovery. (*Morgenstern

21   v. Int'l Alliance of Theatrical Stage Empl.*, 2006 WL 2385233, *2 n. 5 (N.D. Cal.

22   August 17, 2006) ["When originally responding to plaintiff's requests, defendant

23   apparently raised several objections based on third person privacy and freedom of

24   association.  These objections, however, are not raised in defendant's opposition to

25   plaintiff's current motion and are therefore waived."]; *Fleet Systems, Inc. v. Federal

26   Coach, LLC*, 2007 WL 2264618, *3 n. 2 (D.Neb. August 6, 2007) ["To the extent

27   the defendant made other objections in its response, the defendant did not argue

28   such objections continued to be applicable in its brief in opposition to the motion to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**          - 44 -

PAGE **704**

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    compel.  Accordingly, such objections are deemed waived."]; *Eidukonis v. SE*

2    *Pennsylvania Transp. Auth.*, 1987 WL 16321, *5 (E.D. Pa. August 27, 1987)

3    [finding that plaintiff had waived all arguments and objections not made in

4    opposition to earlier discovery motion]; *see also Diapluse Corp. of America v.*

5    *Curtis Publishing Co.*, 374 F.2d 442, 445 (2d Cir. 1967) ["Any other 'conditions'

6    [not requested by plaintiff in opposition to defendant's motion to require production

7    of documents for discovery] are clearly afterthoughts which were waived by

8    plaintiffs failure to request them in opposition to defendant's motion"]).

9            Here, the MGA Parties did not assert the vast majority of their objections in

10   the opposition they submitted to the prior discovery master.  (*See* Supplemental

11   Corey Decl., Ex. 5 at pp. 29 – 31).  Specifically, they did not invoke any privilege

12   objection, compound objection, or unduly burdensome objection,[8] or claim that the

13   requested information has already been produced or is more readily accessible to

14   Mattel.  (*Id.*).  The only objection the MGA Parties raised in their opposition to the

15   prior discovery master regarding the Interrogatories was their ability to supplement

16   their responses "during expert discovery."[9]  (*Id.*, p. 30).  Accordingly, the MGA

17   Parties abandoned every other objection by failing to raise them in their original

18

19   [8] In the opposition it submitted to the prior discovery master, the MGA Parties admittedly did assert an unduly

20   burdensome objection to some of "Mattel's contention interrogatories." (Supplemental Corey Decl., Ex. 5 at pp. 19 –
21).  However, that objection was never directly linked to any of the Interrogatories at issue.  (*Id.*, Ex. 5 at pp. 19 –

21   21 and 29 – 31).  Even assuming such a connection had been made, the MGA Parties failed to provide any evidence
     to support their claim of burden regarding the Interrogatories, meaning any such objection could have been overruled

22   on that ground.  (*See Columbia Pictures Indus.*, 2007 WL 4916964, *5 ["Defendant' 'unduly burdensome' and
     harassing objection is overruled as such objection is conclusory, and as defendants have provided no facts or

23   evidence to support a finding that production . . . would be unduly burdensome and/or harassing."); *El-Shaddai*, 2009
     WL 301824, *2 ["F]ederal courts reject claims of burdensomeness which are not supported by a specific, detailed

24   showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the
     conclusion that the court should not allow it."); *Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery

25   request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually
     by affidavit or other reliable evidence."]).

26   [9] Notably, the sole objection that the prior discovery master addressed regarding the Interrogatories in his February

27   15, 2008 Order was the MGA Parties claim that they had the right to supplement their responses following expert
     discovery.  (Corey Decl., Ex. 5 at pp. 12 – 13 ["That the interrogatory responses include a reservation of rights to

28   supplement during expert discovery does not render the responses inherently improper or inadequate. Mattel does
     not contest that the identification of the elements and products subject to trade dress infringement will be a subject of
     expert discovery."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **705**

- 45 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    opposition.

2          Because the MGA Parties abandoned their privilege, compound and unduly

3    burdensome objections to the Interrogatories, as well as any claim that the

4    requested information had already been produced or is more readily accessible to

5    Mattel, *before* Mattel filed the Appeal of the February 15, 2008 Order, Mattel had

6    no affirmative obligation to challenge those objections in its Appeal or as part of its

7    renewed application comprising the Objection Motion.  Nor are the objections

8    revived by Mattel's superfluous decision requesting that the Discovery Master

9    overrule them in connection with the Objection Motion, since the obligation to

10   preserve the objections rested with the MGA Parties and they did not raise them in

11   connection with their opposition to Mattel's initial motion.

12         The decision to consider the objections abandoned is supported by the MGA

13   Parties' understanding of the Court's order referring the Objection Motion to the

14   Discovery Master.  As the MGA Parties state, "[w]hile the Court directed the

15   Discovery Master to consider [the Objection Motion] as if presented to him in the

16   first instance . . . it did not give Mattel [and by implication the MGA Parties] free

17   reign to make objections to the February 15, 2008 Order that were not made or

18   preserved when Mattel filed its original Appeal in 2008."[10]  (Supplemental

19   Opposition, p. 17).  Because the MGA Parties did not properly preserve the vast

20   majority of their objections to the Interrogatories, they cannot rely on the objections

21   now.[11]

22         **2.      The MGA Parties' Expert Discovery Objection Is Valid**

23         Having concluded that the MGA Parties abandoned most of their objections

24

25   [10] The Court's March 12, 2009 Order referring the Objection Motion to the Discovery Master further states that
     "[t]his procedure – in which the Phase 2 Discovery Master may review prior discovery orders – shall apply only to
26   motions seeking review of discovery orders issued previously by the Phase 1 Discovery Master to which timely
     objections were made <u>prior</u> to the imposition of the stay as to Phase 2 discovery." (Order dated March 12, 2009
27   [emphasis in original]).

28   [11] For the reasons set forth in Section IV.L.3.a below, the MGA Parties may continue to assert their privilege
     objection in connection with Interrogatory No. 50.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **706**

- 46 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   to the Interrogatories, the Discovery Master turns to the lone objection that they did

2   preserve (i.e., the expert discovery objection). The MGA Parties claim in their

3   Supplemental Opposition that they "simply noted that 'MGA's trade dress and

4   other legal concepts that may be relevant) will be the subject of expert testimony at

5   trial," and interposed an objection that preserves their right to supplements their

6   responses to include information from their experts. (Supplemental Opposition,

7   pp. 22 – 23). Since that is the full extent of the expert discovery objection, the

8   Discovery Master agrees that the objection is valid.[12] Consequently, the Discovery

9   Master finds that the fact that the "responses include a reservation of rights to

10  supplement during expert discovery does not render the responses inherently

11  improper or inadequate." (Corey Decl., Ex. 5 at p. 13).

12          **3.      The MGA Parties' Supplemental Responses Are Inadequate**

13          The Discovery Master next addresses the MGA Parties' substantive

14  responses to the Interrogatories.

15                  **a.      The MGA Parties' Responses Include Abandoned**

16                                      **Objections**

17          As a preliminary matter, the Discovery Master notes that the MGA Parties'

18  supplemental responses are inadequate because they include objections that have

19  been abandoned (e.g., privilege objections, compound objections, undue burden

20  objections, and any claim that the information sought is equally or more readily

21  available to Mattel). Accordingly, the Discovery Master orders the MGA Parties to

22  withdraw all objections to the Interrogatories except for the expert discovery

23  objection.

24          The MGA Parties may also continue to assert their attorney-client

25  privilege/attorney work product objection to Interrogatory No. 50, because that

26  interrogatory asks them to identify all documents that "REFER OR RELATE TO"

27

28  ───────────────────────
[12] What the MGA Parties cannot do (and have not done) is assert that this objection permits them to withhold information that is currently known to them.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**          - 47 -          ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE **707**

1    certain facts and the Discovery Master finds that the waiver of this objection is too

2    severe of a penalty to the extent privileged documents are (or could subsequently

3    be) requested by Mattel as a result of the objection being abandoned.  The analysis

4    is necessarily different with respect to Interrogatory Nos. 48 and 49, because those

5    interrogatories do not ask about documents and the Discovery Master finds that

6    they do not request any privileged information.

7         No other objections may be interposed by the MGA Parties in connection

8    with the Interrogatories.

9                    **b.    Interrogatory No. 48**

10        The Discovery Master has already addressed Mattel's demand that "MGA's

11   meritless objections" to Interrogatory No. 48 be overruled.  (Supplemental

12   Memorandum, p. 5).  In light of the Discovery Master's ruling on those issues and

13   given the statements made by Mattel in its pleadings, the Discovery Master

14   understands that Mattel merely wants the MGA Parties to "*confirm* that [they have]

15   provided a full and complete response to" Interrogatory No. 48.  (*See* Supplemental

16   Reply, p. 9 [emphasis added]; *see also* Supplemental Memorandum, p. 5 ["MGA's

17   meritless objections should be overruled, and MGA should confirm that it has

18   provided a full and complete response to this interrogatory."]).  Since that is the

19   extent of the remaining relief requested by Mattel concerning Interrogatory No. 48,

20   the Discovery Master finds the request is justified.

21        MGA's trade dress claims have been pending for several years and it is

22   reasonable to require MGA to identify the trade dress at issue, subject to the expert

23   discovery objection discussed above.  In fact, requiring the MGA Parties to state

24   that their response is full and complete is consistent with their statement that they

25   have described "particular and itemized common elements of [the] 'Bratz' and

26   'Bratz Petz' lines of dolls and packaging [MGA] contends Mattel copied."

27   (Supplemental Opposition, p. 9; *see also id.* at p. 13 ["MGA has identified in its

28   Response to Interrogatory No. 48 the common elements of all Bratz dolls which *it*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  **51**

PAGE  **708**

- 48 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   *claims are its protectable trade dress that Mattel, copied, infringed or diluted.*"]

2   (emphasis added)).  If the MGA Parties have already set forth the trade dress

3   elements they "contend[] Mattel copied," they can easily supplement their response

4   to include a statement that the trade dress identified constitutes the full scope of

5   MGA's claims against Mattel, subject to their right to supplement the response in

6   connection with expert discovery.[13]

7                    **c.    Interrogatory No. 49**

8            Regarding Interrogatory No. 49, Mattel first argued in its pleadings that

9   "MGA only generally identified Mattel MY SCENE dolls (which is an entire line

10  consisting of dozens of dolls) and refused to specifically identify any particular

11  Mattel product that allegedly infringes its purported trade dress."[14]  (Supplemental

12  Memorandum, p. 5).  In its Supplemental Opposition, the MGA Parties countered

13  that Mattel's

14              assertion misses the point.  MGA's contentions are not

15              limited to 'single' products:  MGA contends that the trade

16              dress elements common to **all** Bratz and Bratz pets dolls

17              and packaging were copied and are infringed by **all** of

18              Mattel's 'My Scene' dolls and 'My Scene' pet dolls and

19              packaging.  That is what MGA said in its responses, and

20              that is more than adequate to answer the questions asked.

21  (Supplemental Opposition, p. 10 [emphasis in original]).

22          Mattel responded to this contention by stating in its Supplemental Reply that,

23  while "MGA claims that it has fully answered [Interrogatory No. 49] because *all* of

24  Mattel's 'My Scene' dolls and 'My Scene' pet dolls, as well as their packaging,

25

---

26  [13] Mattel is not entitled to any broader statement because, as the prior discovery master found, it "does not contest
27  that the identification of the elements and products subject to trade dress infringement will be a subject of expert
    discovery." (Corey Decl., Ex. 5 at p. 13).

28  [14] Mattel also claimed that the MGA Parties did not "identify the elements of trade dress that any specific product
    allegedly infringed." (Supplemental Memorandum, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**          - 49 -          ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE **709**

1  purportedly infringe *all* of the 'common' elements of MGA's products that are

2  listed in [Interrogatory No. 48]," it is nonetheless "unclear what information MGA

3  is holding back because it continues to assert meritless objections" to Interrogatory

4  No. 49. (Supplemental Reply, p. 10 [emphasis in original]).  But any such issue is

5  remedied by the Discovery Master's above ruling requiring the MGA Parties to

6  withdraw all of their objections to Interrogatory No. 49 except for the expert

7  discovery objection.[15]

8      Mattel's argument that "if there are any elements of MGA's claimed trade

9  dress that are infringed by only some Mattel products or packaging, MGA should

10 specifically identify the particular products and the trade dress that they allegedly

11 infringe, (Supplemental Reply, p. 10), is also unpersuasive.  The MGA Parties have

12 expressly stated that their "contentions are not limited to 'single' products" but

13 rather that "the trade dress elements common to all Bratz and Bratz pets dolls and

14 packaging were copied and are infringed by all of Mattel's 'My Scene' dolls and

15 'My Scene' pet dolls and packaging." (Supplemental Opposition, p. 10 [emphasis

16 omitted]).  Therefore, the Discovery Master orders the MGA Parties to supplement

17 their response to indicate that it is full and complete, subject to its right to

18 supplement during expert discovery.[16]

19          **d.    Interrogatory No. 50**

20      Mattel claims that the response to Interrogatory No. 50 is inadequate because

21 it "is conclusory" and constitutes a "circular pronouncement[] that the trade dress

22 that MGA seeks to assert is protectable . . ." (Supplemental Memorandum, p. 6).

23 Mattel further contends that such a response provides it no guidance and explains

24

25 [15] Mattel is not entitled to have the expert discovery objection stricken because it "does not contest that the
   identification of the elements and products subject to trade dress infringement will be a subject of expert discovery."
26 (Corey Decl., Ex. 5 at p. 13).

27 [16] Once again, it should be easy for the MGA Parties to confirm the full scope of the allegedly infringing items since
   they alleges in their pleadings "that Mattel's 'My Scene' dolls and 'My Scene' pet dolls and their packaging are *the*
28 *products and items* which improperly copy MGA's trade dress . . ." (Supplemental Opposition, p. 9 [emphasis
   added]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 50 -                                        ORDER NO. 22
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  51

PAGE  719

1   why the MGA Parties represented to the prior discovery master that they would

2   supplement their responses to the Interrogatories in the course of Phase 2

3   Discovery." (*Id.*)

4   　　　However, Mattel takes the MGA Parties' statement to the prior discovery

5   master out of context.  While the record reflects that the MGA Parties informed the

6   prior discovery master that they would "supplement these responses in the course of

7   Phase 2 discovery," (Corey Decl., Ex. 4 at p. 30), that statement came *after* Mattel

8   had argued in its moving papers that the MGA Parties were not entitled to reserve

9   their right to supplement the response during expert discovery in Phase 2.

10   (Supplemental Corey Decl., Ex. 7 at p. 25).  Further, when it made the statement,

11   the MGA Parties stated on the very same page that:

12   　　　　　Mattel contends that it is improper to reserve the right to

13   　　　　　supplement this interrogatory during expert discovery.

14   　　　　　Mattel is wrong.  Indeed, Mattel has stated in many of its

15   　　　　　interrogatory responses that the response may be

16   　　　　　supplemented in the course of expert discovery.  Mattel

17   　　　　　does not contest that the identification of the elements and

18   　　　　　products subject to trade dress infringement will be a

19   　　　　　subject of expert testimony. . . . If, in the course of their

20   　　　　　analysis, MGA's experts identify other MGA products or

21   　　　　　elements of MGA products that have been infringed by

22   　　　　　Mattel, MGA will supplement its interrogatory responses

23   　　　　　to identify those products or elements.

24   (Corey Decl., Ex. 4 at pp. 30 – 31).  In light of the foregoing facts, the Discovery

25   Master finds that the statement made by the MGA Parties was linked to their expert

26   discovery objection and not a promise that they would supplement their responses

27   immediately upon the lifting of the stay on Phase 2 discovery due to deficiencies in

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __51__

PAGE __711__

- 51 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   the responses.[17]  Regardless, Mattel has not cited any authority, and the Discovery

2   Master has found none, supporting the proposition that a promise to supplement a

3   response is sufficient to justify a motion to compel if the existing response is

4   adequate.

5       As support for its claim that the MGA Parties' response to Interrogatory No.

6   50 is inadequate, Mattel next alleges that the MGA Parties should be required to do

7   three things:  (1) to state more facts concerning why MGA's trade dress is

8   protectable, (2) to identify every person with knowledge of those facts, and (3) to

9   identify all documents that refer or relate to those facts.

10      Like the prior discovery master, I find that the MGA Parties have complied

11  with Federal Rule of Civil Procedure 33 by identifying the facts supporting MGA's

12  contention that its "trade dress is protectable under the applicable trade dress legal

13  principles, including that the trade dress is aesthetic and non-functional, inherently

14  distinctive, and has acquired a secondary meaning." (Corey Decl., Ex. 5 at p. 13).

15  The relevant language of the MGA Parties' substantive response states as follows:

16          That the elements of MGA's trade dress in its 'Bratz' and

17          'Bratz Petz' lines are aesthetic and non-functional is

18          apparent from an examination of the Bratz products and

19          packaging, compared to other leading fashion dolls.  That

20          MGA's packaging was and is inherently distinctive is

21          apparent from a comparison of said packaging to the state

22          of fashion doll packaging when Bratz was introduced in

23          2001, the fact that following the Bratz introduction

24          competitors have copied significant, innovative elements

25          of the Bratz packaging, and the fact that the packaging

26          has won industry awards.  MGA's trade dress has also

27

28  ──────────────
[17] This finding also applies to Mattel's claim that the MGA Parties promised to supplement their responses to Interrogatory Nos. 48 and 49.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**      - 52 -      ORDER NO. 22
                                [Case No. CV 04-09049 SGL (RNBx)]

PAGE ___**712**___

1          acquired secondary meaning as a source indicator for

2          'Bratz' as a result of the enormous success of the Bratz

3          dolls in the market, and the marketing and promotional

4          efforts employed by MGA to support Bratz.

5    (*Id.*, Ex. 4 at pp. 20 – 21).

6          This language is sufficient to apprise Mattel of the principal and material

7    facts supporting MGA's trade dress claim. (*See, e.g., Moses*, 236 F.RD. at 674;

8    *Hiskett v. Wal-Mart Stores*, Inc., 180 F.R.D. 403, 404-05 (D.Kan. 1998)

9    ["Interrogatories . . . may properly ask for the principal or material facts which

10   support an allegation or defense."]; *Grynberg v. Total, S.A.*, 2006 WL 1186836, *5

11   (D. Colo. May 3, 2006 ["It is proper, of course, to inquire about the material facts

12   supporting specific factual matters raised in the pleadings."]; *IBP, Inc. v.*

13   *Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D.Kan. 1998) ["An interrogatory

14   may reasonably ask for the material or principal facts which support a

15   contention"]); *see also Clean Earth Remediation & Constr. Servs. V. American*

16   *Intern. Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) ("[A] number of cases

17   have held that interrogatories seeking identification of all facts supporting a

18   particular allegation are inherently improper."). Nothing more is required from the

19   MGA Parties. There is always a greater degree of specificity that could be provided

20   by an interrogatory response. If Mattel wishes to obtain the details behind each and

21   every fact specified in the response to Interrogatory No. 50, Mattel may depose

22   MGA's person most knowledgeable regarding these issues under Federal Rule of

23   Civil Procedure 30(b)(6).

24         Although the MGA Parties' response regarding the trade dress "facts"

25   requested by Interrogatory No. 50 is adequate, their identification of witnesses with

26   knowledge of those facts and supporting documents is not. For example, the

27   response initially states that "[*m*]*any* individuals are knowledgeable of the striking

28   similarities between the protected trade dress of Bratz and features of My Scene

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**    - 53 -

PAGE **713**

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    Barbie dolls and packaging," and then proceeds to identify just two individuals (i.e.,

2    Carter Bryant and Paula Garcia). (Corey Decl., Ex. 3 at p. 21 [emphasis added]).

3    This is insufficient. The MGA Parties must identify each and every person that

4    they are aware of who have knowledge of the facts they have set forth in response

5    to Interrogatory No. 50.

6        Likewise, in identifying documents that refer or relate to such facts, the

7    MGA Parties have only described general categories. (Corey Decl., Ex. 3 at p. 21

8    ["Documents evidencing the market strength of the Bratz trade dress features

9    include documents evidencing (i) sales totals; (ii) package awards; (iii) package

10    related designs patents; (iv) publicity given to the Bratz dolls and their success; and

11    (v) documents evidencing industry awards given to MGA on account of the success

12    of the Bratz dolls and/or their innovative packaging, and the fact that said

13    packaging has been copied and mimicked by competitors."]). Again, this is

14    inadequate, since documents identified in response to an interrogatory must be

15    identified with specificity. (*See, e.g., Gaeta v. Perrigo Pharmaceuticals Co.*, 2007

16    WL 3343043, *6 (N.D. Cal. November 9, 2007) ["To the extent plaintiff finds that

17    references to specific documents are responsive to interrogatory no. 3, plaintiff shall

18    set forth with specificity the relevant documents, records and literature."]; *see also*

19    Fed. R. Civ. P. 33(d) [stating that if records are used to answer an interrogatory

20    they must be set forth "in sufficient detail to enable the interrogating party to locate

21    and identify them as readily as the responding party could"]).

22        Accordingly, the MGA Parties must supplement their response to

23    Interrogatory No. 50 to identify (1) everyone they are currently aware of who has

24    knowledge of why MGA's trade dress is protectable and (2) all documents that

25    refer or relate to those facts with specificity.[18]

26    **M.    Summary Of Ruling Regarding The Objection Motion**

27        The Discovery Master concludes the MGA Parties must supplement their

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[18] Again, the MGA Parties need not identify any privileged documents when responding to Interrogatory No. 50.

EXHIBIT **51**    - 54 -    ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1    answers to the Interrogatories in the manner specified above.

2    **V.    DISPOSITION**

3         **A.**    Mattel's Letter of Request Motion is **GRANTED**.  Within fifteen (15)

4    days of this Order, Mattel shall submit a revised letter of request reflecting the

5    additional limitations requested by the Discovery Master concerning Document

6    Request No. 7, namely to exclude any social security numbers, tax identification

7    numbers, dates of birth, indication of sexual orientation, bank account numbers, and

8    checking account numbers that may be included within the requested personnel

9    files prior to production.  Upon submission of the revised letter of request, the

10    Discovery Master will promptly issue an order recommending that the Court

11    execute the revised letter of request on behalf of Mattel.

12         **B.**    Mattel's Motion to Compel Machado to sign the consent form

13    permitting Yahoo! to comply with the Subpoena is **GRANTED,** provided that

14    Mattel serve an amended Subpoena on Yahoo! requiring that production of

15    responsive documents be made directly to the Discovery Master.

16         1.    Upon receiving the documents produced by Yahoo! pursuant to

17    the Subpoena, the Discovery Master will have them Bates numbered and then

18    forward them to counsel for Machado.  Upon receipt of the documents Bates-

19    numbered by the Discovery Master, Machado is **ORDERED**, within thirty (30)

20    days, to prepare and submit to the Discovery Master and counsel for Mattel a log:

21    (1) identifying by Bates number, date, sender, recipient and subject matter, each

22    and every e-mail in the Account that was created prior to November 20, 2006 and

23    claimed to be protected by the attorney-client privilege or attorney work product

24    doctrine; and (2) setting forth a brief explanation of the facts supporting that

25    assertion (the "Log").  The Log shall also identify, by Bates number only, all e-

26    mails after November 20, 2006 which are claimed to be protected by the attorney-

27    client privilege or attorney work product doctrine.

28         2.    Machado's failure to timely provide the Log in a form that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **715**

- 55 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1 | satisfies all of the requirements set forth in Paragraph 1 above shall be deemed a

2 | waiver by him of any applicable privileges.

3 |      3.     Simultaneously with his submission of the Log to the Discovery

4 | Master and counsel for Mattel, Machado is **ORDERED** to produce to Mattel all

5 | documents not identified in the Log.

6 |      4.     In the event Mattel wishes the Discovery Master to conduct an

7 | *in camera* review of any documents identified in the Log to determine the

8 | applicability of the attorney-client privilege or attorney work product doctrine,

9 | Mattel shall provide a notice to the Discovery Master, with a copy to Machado,

10 | identifying those documents to be reviewed.  The Discovery Master shall then

11 | conduct the requested review and, if warranted, order Machado to produce

12 | additional documents identified in the Log.

13 |      5.     Machado's request for sanctions in connection with the Motion

14 | to Compel is **DENIED**.

15 |     **C.**     Mattel's Motion for Reconsideration is **GRANTED**.

16 |      1.     The Prior Order shall be, and hereby is, amended with respect to

17 | Document Request No. 198 as follows:

18 |      ~~Nevertheless, an additional temporal limitation is~~

19 |      ~~appropriate to tailor the request to Mattel's allegations of~~

20 |      ~~trade secret theft~~.  The alleged trade secret theft began

21 |      with Bryant's conduct in 1999 ~~and continued to 2005~~.

22 |      Accordingly, Larian shall produce documents responsive

23 |      to Request No. 198 that are limited to the time frame 1999

24 |      to ~~2005~~ *the present*.

25 |      2.     In accordance with the foregoing amendment, Larian shall,

26 | within thirty (30) days of this Order and without objection or limitation, produce

27 | any documents not already produced by him responsive to Request No. 198.

28 |     **D.**     Mattel's Objection Motion is **GRANTED**.  The MGA Parties must

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **716**

- 56 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

1   supplement their answers to the Interrogatories within fifteen (15) days of this

2   Order.  Specifically, they must:

3          1.      Withdraw all of the objections they abandoned (except for the

4   privilege objection to Interrogatory No. 50);

5          2.      Confirm that each supplemental response to the Interrogatories

6   is full and complete except for their reservation of its rights to supplement during

7   expert discovery;

8          3.      Identify all persons they are currently aware of who possess

9   knowledge of the facts set forth in Interrogatory No. 50; and

10          4.      Identify all documents that refer or relate to the facts set forth in

11   Interrogatory No. 50 with specificity.

12

13   Dated:       April 28, 2009

14

15                                      By:       /s/ Robert C. O'Brien

16                                                ROBERT C. O'BRIEN
                                                Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **51**

PAGE **717**

- 57 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

# EXHIBIT 52

**THE EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 53

## Scott Kidman

**From:** Scott Kidman
**Sent:** Friday, June 19, 2009 12:48 PM
**To:** akhan@glaserweil.com
**Subject:** Mattel v. MGA Entertainment, Inc., et al.

Dear Amman:

I have received your letter dated June 18, 2009 regarding Mattel's request for additional time to depose Isaac Larian. The proposal in your letter is inadequate. I will call you on Monday, June 22 at 3:00 p.m. to discuss this further.

Best regards,

**Scott B. Kidman**
*Partner,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3162 Direct
213.443.3000 Main Office Number
310-376-3412 FAX
scottkidman@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT ___53___

PAGE ___722___