# Exhibit 1

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,

14        v.                             Consolidated with
                                         Case No. CV 04-09059
15  MATTEL, INC., a Delaware             Case No. CV 05-2727
    corporation,
16                                       **PHASE 2 DISCOVERY MATTER**

              Defendant.
17                                       **AMENDED[1] ORDER NO. 11,
                                         REGARDING:**

18                                          **(1)  MOTION OF MATTEL, INC.
                                            TO COMPEL RESPONSES TO
19                                          INTERROGATORIES AND
                                            PRODUCTION OF DOCUMENTS
20                                          BY MGA ENTERTAINMENT, INC.
                                            AND ISAAC LARIAN; and**
21
                                            **(2)  MOTION OF MATTEL, INC.
22  CONSOLIDATED WITH                       TO COMPEL THE DEPOSITIONS
    MATTEL, INC. v. BRYANT and              OF PABLO VARGAS AND
23  MGA ENTERTAINMENT, INC. v.              MARIANA TRUEBA**
    MATTEL, INC.
24

25

26

27  ───────────────────────
    [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28  requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
    days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                        AMENDED ORDER NO. 11
                                              [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 2

1        This Order sets forth the Discovery Master's ruling on two motions filed by

2   Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3   production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4   ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5   to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6   (the "Deposition Motion") (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8   March 19, 2009.  All interested parties were represented by counsel and afforded

9   the opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

## I.    MATTEL'S WRITTEN DISCOVERY MOTION

13       In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[2] and provide answers to 12

15  different interrogatories.  (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[3]  (*Id.*, pp. 41 – 43 and 49 – 102).

19      **A.    Document Requests**

20          **1.    Document Requests Propounded On MGA**

21       Document Request Nos. 4 through 37 seek financial information from MGA

22

23  [2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels

24  Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written

25  Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document

26  Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer

27  to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

28  [3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    related to sales, revenues, costs, profits, customer returns, customer rebates and

2    customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3    sufficient to identify customers who purchased any Bratz Product from MGA or its

4    licensees.  (Watson Decl., Ex. 1 at pp. 7 – 12).

5         Document Request Nos. 43, 44 and 46 similarly seek financial information

6    from MGA related to the Bratz product line:

7         • Document Request No. 43 (erroneously numbered in Mattel's Separate

8          Statement as request number 42):  "All sales, profit and cash flow

9          projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10         BRATZ MOVIES, and BRATZ TELEVISION SHOWS."  (*Id.*, p. 13).

11        • Document Request No. 44 (erroneously numbered in Mattel's Separate

12         Statement as request number 43):  "All DOCUMENTS that REFER

13         OR RELATE TO the value of the Bratz brand."  (*Id.*).

14        • Document Request No. 46 (erroneously numbered in Mattel's Separate

15         Statement as request number 45):  "All DOCUMENTS that evidence,

16         reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17         fashion doll market, including, without limitation, the extent to which

18         Bratz has been or is gaining or losing market share in the fashion doll

19         market."  (*Id.*, p. 14).

20        Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23        • Document Request No. 40:  "All DOCUMENTS that describe YOUR

---

[4] Mattel defines the term "Bratz Product" as follows:

    'Bratz Product' means any product whether two-dimensional or three-dimensional,
    and whether in tangible, digital or electronic or other form: (i) that is or has ever
    been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
    line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES
    TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
    packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists
    of or REFERS OR RELATES TO BRATZ.

(Watson Decl., Ex. 1 at p. 3; *see also id.*, Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 4

1  cost allocation procedures." (*Id.*, p. 13).

2  • Document Request No. 41: "YOUR general ledgers from January 1,

3  1995 through the present." (*Id.*).

4  • Document Request No. 45 (erroneously numbered in Mattel's Separate

5  Statement as request number 44): "DOCUMENTS sufficient to

6  calculate YOUR net worth on a yearly basis for each year from 1999

7  to the present." (*Id.*).

8  **2.    Document Requests Propounded On Larian**

9  The three document requests propounded on Larian (i.e., Documents Request

10  Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11  bank accounts:

12  • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13  each account with any bank or financial institution that YOU have or

14  have had, or that YOU have or have had any legal or beneficial interest

15  in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16  • Document Request No. 208: "Documents sufficient to establish

17  YOUR gross income, and the sources of that gross income, for the

18  years 1999 through the present, inclusive." (*Id.*, p. 52).

19  • Document Request No. 269: "DOCUMENTS sufficient to calculate

20  YOUR net worth on a yearly basis for each year from 1999 to the

21  present." (*Id.*, p. 63).

22  **3.    Phase 1 Rulings**

23  This is not the first time that Mattel has moved to compel responses to the

24  document requests at issue.  Mattel previously filed two motions to compel that

25  asked the former discovery master to compel MGA and Larian (collectively, the

26  "MGA Parties") to, among other things, respond to the same 43 document requests

27  in dispute here.  (Watson Decl., Exs. 2 and 7).  The prior discovery master granted

28  both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 5

Case 2:04-cv-09049-DOC-RNB   Document 5994-3   Filed 07/22/09   Page 6 of 42   Page ID
#:196142
Case 2:04-cv-09049-SGL-RNB      Document 5093      Filed 03/31/2009      Page 5 of 41

1 the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2   Because the prior discovery master compelled MGA to produce information

3 responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4 Larian to produce information responsive to Document Request Nos. 207, 208 and

5 269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6 Civil Procedure 26 to supplement their prior productions, and (2) that the

7 information the MGA Parties "are withholding is relevant to the damages Mattel

8 seeks," (Written Discovery Motion, pp. 8 – 9).

9    **4.**  **Objections Of MGA**

10   In their Opposition, the MGA Parties rely on two grounds for refusing to

11 supplement their prior document productions regarding Document Request Nos. 4 –

12 37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13 failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14 Parties argue that the requested information is not relevant to the claims and

15 defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16    **a.**  **Purported Failure To Meet And Confer**

17   Because it could dispose of the outstanding discovery issues related to the

18 document requests that are the subject of the present dispute, the Discovery Master

19 first addresses the MGA Parties' argument that Mattel failed to meet and confer

20 properly prior to filing its Written Discovery Motion.

21   The MGA Parties argue that Mattel's motion to compel should be denied

22 because Mattel failed to comply with the meet and confer requirements of Local

23 Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24 however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25 discovery disputes in this case.  The applicable meet and confer procedures are set

26 forth in the Court's order appointing a discovery master dated December 6, 2006

27 ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28 Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

1   requires that, before filing a motion to compel, the moving party must meet and

2   confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3          Because Rule 37 and the Discovery Master Order govern the meet and confer

4   process in this case, the Discovery Master construes the MGA Parties' meet and

5   confer argument in light of the good faith requirement embedded in Rule 37. The

6   MGA Parties claim that Mattel did not meet and confer in good faith because its

7   counsel sent them "a meet and confer letter inviting [them] to further meet and

8   confer on February 11, 2009" and then filed a motion to compel one "day before

9   the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10  2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11  [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12  provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13  However, the record available to the Discovery Master demonstrates that Mattel

14  made several prior attempts to meet and confer with the MGA Parties, including

15  engaging in the following:

16          • On January 6, 2009, Mattel's counsel sent a letter demanding that the

17            MGA Parties supplement their production concerning the document

18            requests by February 1, 2009, (Watson Decl., Ex. 17);

19          • Counsel for the MGA Parties never responded to Mattel's January 6,

20            2009 letter, (Written Discovery Motion, p. 6);

21          • Counsel for Mattel sent counsel for the MGA Parties a second copy of

22            the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23          • Counsel for Mattel and counsel for the MGA Parties then spoke on

24            February 6, 2009, and were supposed to discuss, among other things,

25            the document requests at issue, but counsel for the MGA Parties was

26            not prepared to discuss the requests at the appointed time, (Watson

27            Decl., ¶ 22); and

28          • Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    9, 2009 to discuss the document requests but counsel for the MGA

2    Parties was still not prepared to discuss the issues, (*Id.*).

3    In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party."  (Fed. R. Civ. P.

8    37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12                    **b.    Relevance Of The Document Requests To Phase 2**

13   The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17                    **(1)    Document Request Nos. 207, 208 And 269**

18   With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims.  (Opposition, p. 6).

21   Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true.  For example, Document Request

24   ────────────────────────────

25   [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the requested information following the filing of the Written Discovery Motion.  It is, therefore, unclear what could have been accomplished by an additional meet and confer on these issues.  Moreover, Mattel's counsel stated at oral

26   argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they still "had no answer to this question."  (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.

27   68:7-9).  Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery

28   procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 8

1   Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2   No. 269) and gross income (Request No. 208). Such information relates to Phase 2

3   damages issues, including, among other things, damages sought against Larian in

4   connection with Mattel's unfair competition cause of action as well as the

5   calculation of Larian's net worth for purposes of litigating the propriety of any

6   "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166). It is

7   therefore discoverable.

8        In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9   Mattel's employees for the express purpose of misappropriating Mattel's

10  confidential and proprietary information, and that the MGA Parties promised such

11  individuals increased salaries at MGA. (*See, e.g.,* SAAC, ¶¶ 69 and 77). Mattel's

12  request for documents sufficient to identify Larian's bank accounts (i.e., Request

13  No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14  evidence regarding the source of any payments that may have been made by Larian

15  to former Mattel employees.[7]

16            **(2)     Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                     **46**

18        Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19  37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20  financial information "related to Bratz dolls, which was a Phase 1 issue,"

21  (Opposition, p. 5). Specifically, the MGA parties argue that:

22            [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

---

24  [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he concludes that Larian should not be required to provide updated information concerning his net worth and gross income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase 2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by the verdict rendered in Phase 1 or recent economic conditions.

27  [7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to produce documents identifying his bank accounts as part of Phase 1.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 9

1            related financial information in order to establish its Phase

2            2 damages ignores the jury's Phase 1 damages award . . . .

3            Mattel sought disgorgement of all Bratz profits during

4            Phase 1 and the jury made its award.  Mattel may not

5            relitigate this issue in Phase 2.

6  (*Id.*, p. 6).

7       However, Document Request Nos. 40, 41 and 45[8] make no mention of

8  financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9  (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10  (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11  through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12  net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13  Therefore, MGA's argument does not apply to these document requests.

14       Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15  Separate Statement as request number 44) are further reasonably calculated to lead

16  to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17  the touchstone for determining whether a particular discovery request is reasonably

18  calculated to lead to the discovery of admissible evidence in this case is whether the

19  request bears some relation to the issues to be tried in Phase 2.  That standard is met

20  here, since MGA's general ledgers, net worth, and cost allocation procedures all

21  bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22  damages.

23       As for the remainder of the document requests directed to MGA (i.e.,

24  Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

---

25  [8] Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26  [9] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27  [10] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28  [11] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 10

1   financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6        As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10        Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth."  (SAAC, ¶¶ 1, 88, 98, 106, and

19   163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25        Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (*See*

28   Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 11

1   Enterprise." (SAAC, ¶¶ 89 and 100).  The SAAC further expressly alleges that one

2   of the purported racketeering activities was the "altering [of] numerous original

3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)).  These allegations are

4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5   calculated to lead to the discovery of admissible evidence in Phase 2.

6          The Discovery Master cannot predict whether the Court will ultimately

7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9   presenting any evidence that it has been damaged by such misconduct at the Phase

10   2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11   Given that the discovery here need only appear reasonably calculated to lead to the

12   discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13   Master finds that the aforementioned document requests are sufficiently related to

14   Mattel's Phase 2 claims to be discoverable at this time.

15          **5.   Conclusion**

16          For all of the foregoing reasons, Mattel's motion to compel responses to

17   Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18   Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19          **B.   Interrogatories Propounded On MGA And Larian**

20          The second part of Mattel's Written Discovery Motion addresses various

21   interrogatories propounded on the MGA Parties.

22          **1.   Interrogatory No. 45 Propounded On MGA**

23   Interrogatory No. 45 asks MGA[13] to:

24          IDENTIFY each BRATZ PRODUCT that has been

25          SOLD by [MGA] or [its] licensees and, for each such

26

27   ───────────────
     [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written

28   Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Exhibit 1
Page 12

1    BRATZ PRODUCT, state . . . (a) the number of units of

2    each such BRATZ PRODUCT SOLD by [MGA] or [its]

3    licensees, (b) the gross and net revenue received by

4    [MGA] from such SALES of each such BRATZ

5    PRODUCT, (c) all costs [MGA] incurred in connection

6    with each such BRATZ PRODUCT, including but not

7    limited to [MGA's] costs of goods sold, and (d) [MGA's]

8    gross and net profits from each such BRATZ PRODUCT.

9    (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10   Written Discovery Motion, p. 9).

11                    **a.    Phase 1 Rulings**

12       As with the document requests discussed above, Mattel concedes that "MGA

13   identified and produced documents responsive to [Interrogatory No. 45] in

14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15   Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16   supplement its response" without justification. (*Id.*)

17                    **b.    Objections Of MGA**

18       In its Opposition, MGA argues that it does not have to provide the

19   information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20   like the document requests propounded on MGA, "Mattel's entitlement to gross and

21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23   (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24   identical to the documents sought by Document Request Nos. 21 (requesting

25   "DOCUMENTS sufficient to show the number of units of each BRATZ

26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 13

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above.  Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[14]

10          MGA also argues that it should not be required to provide the information

11   requested by Interrogatory No. 45 because it "has already provided information that

12   is current through the second fiscal quarter of 2008" and it would be unduly

13   burdensome to gather the documents necessary to update that information.

14   (Opposition, pp. 7 – 8).  MGA did not argue, however, in its Opposition that it

15   would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16   24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17   documents responsive to those requests and refer Mattel to those materials.  (*See*

18   Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19   examining . . . a party's business records . . . the responding party may answer by

20   specifying the records that must be reviewed . . ."]).

21          The MGA Parties' argument that it is overly burdensome to require MGA to

22   spend 320 hours to inform Mattel of the most recent sales figures concerning the

23   Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25   [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
     enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from

26   presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
     was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only

27   appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
     Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable

28   at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    information requested and the wide-ranging extent of the discovery to date.  As

2    explained above, the information sought is relevant to the constructive trust

3    imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4    claims.  Also, while 320 hours may be unduly burdensome in certain

5    circumstances, it is not unreasonable on its face here given that the MGA Parties

6    have already produced more than 4 million documents.[15]  (*See Cappacchione v.*

7    *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8    ["Requiring a responding party to perform extensive research or to compile

9    substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

### c.    Conclusion

14          For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

### 2.    Interrogatory Nos. 56 – 63 Propounded On MGA And Larian

19          Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22       • Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23          MGA has obtained, received, reviewed, copied, reproduced,

24          transmitted, requested, or used at any time since January 1, 1999, and

25          IDENTIFY all PERSONS with knowledge of such facts and all

26          DOCUMENTS that REFER OR RELATE TO such MATTEL

---

[15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  DOCUMENTS." (Separate Statement in Support of Written

2  Discovery Motion, p. 49).

3  • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4  OR RELATE TO any MATTEL product or plan that any of the

5  FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6  to, shared with or used on behalf of MGA at any time since January 1,

7  1999, and IDENTIFY all PERSONS with knowledge of such facts."

8  (*Id.*, p. 52).

9  • Interrogatory No. 58: "State all facts which support YOUR

10  contention, if YOU so contend, that YOU and/or MGA did not obtain

11  any MATTEL DOCUMENTS through improper means, and

12  IDENTIFY all PERSONS with knowledge of such facts and all

13  DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14  54).

15  • Interrogatory No. 59: "State all facts which support YOUR

16  contention, if YOU so contend, that any information in the MATTEL

17  DOCUMENTS does not and/or did not derive independent economic

18  value from not being generally known to the public or other

19  PERSONS who can obtain economic value from its disclosure or use,

20  and IDENTIFY all PERSONS with knowledge of such facts and all

21  DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22  57).

23  • Interrogatory No. 60: "State all facts which support YOUR

24  contention, if YOU so contend, that any information in the MATTEL

25  DOCUMENTS was known to the public or to PERSONS who can

26  obtain economic value from its disclosure or use, and IDENTIFY all

27  PERSONS with knowledge of the foregoing and All DOCUMENTS

28  that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 16

1    • Interrogatory No. 61: "State all facts which support YOUR

2    contention, if YOU so contend, that YOU and/or MGA independently

3    developed, or did not otherwise use or disclose, any information in the

4    MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5    knowledge of such facts and all DOCUMENTS that REFER OR

6    RELATE TO such facts." (*Id.*, pp. 64 – 65).

7    • Interrogatory No. 62: "State all facts which support YOUR contention

8    that YOUR use or disclosure of information in the MATTEL

9    DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10   IDENTIFY all PERSONS with knowledge of such facts and all

11   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12   69).

13   • Interrogatory No. 63: "State all facts which support YOUR

14   contention, if YOU so contend, that YOU and/or MGA had, has or

15   have any right to copy, possess, use or disclose any MATTEL

16   DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17   facts and all DOCUMENTS that REFER OR RELATE TO such

18   facts." (*Id.*, p. 73).

19          **a.      Objections Of MGA And Larian**

20          In their Opposition, the MGA Parties rely on four basic grounds for refusing

21   to provide responses to Interrogatory Nos. 56 – 63.  First, the MGA Parties argue

22   that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome.  (Opposition. pp. 9

23   – 10).   Second, the MGA Parties argue that the interrogatories presuppose facts

24   that are not true.  (*Id.*, p. 8).  Third, the MGA Parties argue that all 8 interrogatories

25   are impermissibly compound and exceed the number of allotted interrogatories.

26   (*Id.*, pp. 10 – 11).  Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27   and 62 improperly ask them to establish a negative proposition.  (*Id.*, pp. 11 – 12).

28

Arent Fox LLP
Attorneys At Law
Los Angeles

- 15 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 1
Page 17

### (1)   Unduly Burdensome Objection

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10).  While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10).  Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party.  (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims.  (Tr., 37:9-12 ["We're not asking for something of marginal importance.  We're asking for  . . . their core contentions related to the trade secret claims."]).  As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20).  Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNB)]

Exhibit 1
Page 18

1   • stole "Mattel's plans, strategy and business information for the

2   Mexican market and materials related to Mattel's worldwide business

3   strategies," (*Id.*, ¶ 37);

4   • "directed [certain Mattel employees'] to steal virtually all Mattel

5   confidential and proprietary information that they could access and

6   bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7   type of document a competitor would need to enter the Mexican

8   market, and to unlawfully compete with Mattel in Mexico, in the

9   United States and elsewhere . . ." (*Id.*, ¶ 48);

10   • "targeted certain Mattel employees who have broad access to Mattel

11   proprietary information in an effort to induce and encourage them to

12   join MGA and to steal or otherwise wrongfully misappropriate Mattel

13   confidential information and trade secrets," including by "promising

14   these employees salaries 25 percent or more higher than they earn at

15   Mattel and stating to them that they should not be concerned by legal

16   action taken by Mattel to protect its trade secrets and its rights because

17   such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18   • "hired directly from Mattel's United States operations at least 25

19   employees, from Senior Vice-President level to lower level

20   employees," and that some of these individuals misappropriated

21   "Mattel confidential and proprietary information, including Mattel's

22   strategic plans; business operations; methods and systems; marketing

23   and advertising strategies and plans; future product lines; product

24   profit margins, and customer requirements." (*Id.*, ¶ 77).

25   Therefore, this is not a situation where Mattel has alleged that the MGA

26   Parties stole a handful of documents. The SAAC instead alleges that the MGA

27   Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28   "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

1   market, and to unlawfully compete with Mattel in Mexico, in the United States and

2   elsewhere . . ." (*Id.*, ¶ 48).  Because Mattel alleges that its claims against the MGA

3   Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4   19), including all of the documents that have been identified as the MATTEL

5   DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6   regarding whether or not those documents constitute trade secrets, particularly

7   given that such information is exclusively within the control of the MGA Parties.

8   As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9   accusing MGA and the other defendants of stealing all of these documents . . . and

10  [the MGA Parties are] going to have to articulate what their contentions are with

11  respect to whether or not these are trade secrets . . ."  (Tr., 36:24-37:3; *see also id.*

12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13  Mattel is going to be proceeding to trial on."]).

14          Also, the MGA Parties' claim of undue burden does not take into account the

15  vast scope of this litigation to date.  (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16  propounded 4,647 requests for admission, 2,889 requests for production, and 71

17  interrogatories in Phase 1]).  The MGA Parties do not provide any supporting

18  declaration or specific evidence to support their assertion of burden beyond their

19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20  For example, the MGA Parties have not provided the Discovery Master with details

21  regarding:  (1) a time estimate as to how long it would take to respond to the

22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23  extent to which any facts that must be set forth in answering the Interrogatories are

24  voluminous; or (4) an estimate of the number of documents and/or persons that may

25  have knowledge of such responsive facts.  Therefore, the Discovery Master finds

26  that the MGA Parties have not met their burden of demonstrating that answering

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

1   the requested interrogatories is overly burdensome.[16]   (*See Jackson v. Montgomery*

2   *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3   discovery request is unduly burdensome must allege specific facts which indicate

4   the nature and extent of the burden, usually by affidavit or other reliable

5   evidence."]).

6         While there is no specific evidence in the record demonstrating that the MGA

7   Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8   56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9   demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13   issue[17] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25         The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue. (Opposition, pp. 9 – 10).

28   [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  conceded in its Reply that it was not asking the MGA Parties "to provide

2  facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3  "specific contentions Defendants may make regarding the [allegedly] stolen

4  documents," (*id.*, p. 17).  Mattel's counsel reiterated this position again at oral

5  argument, wherein he declared that Mattel was not necessarily interested in "a

6  parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7  Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

### (2)    Purported Presuppositions Regarding Interrogatory Nos. 56 and 58 – 63.

10  The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11  objectionable because they require the MGA Parties to presuppose that they are "in

12  possession of documents stolen or taken from Mattel by former employees – a fact

13  that MGA denies." (Opposition, p. 8).  The MGA Parties further assert that "each

14  of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15  Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16  assertions . . . which make the interrogatories unanswerable and incomprehensible."

17  (*Id.*, p. 9).  However, the MGA Parties cite no legal authority, and the Discovery

18  Master has found none, standing for the proposition that a party may refuse to

19  respond to an interrogatory merely because the interrogatory assumes a fact the

20  responding party disputes.

### (3)    Compound And Excessive Objections

22  The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23  impermissibly compound and exceed the allotted number of interrogatories.

24  (Opposition, pp. 10 and 11).  Each of these contentions is unavailing.

25  As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26  _____

[18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
27  judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
28  its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
. . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2   the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3   Therefore, the MGA Parities waived any such objections to those interrogatories.

4   (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5   Cir. 1992) [stating that "failure to object to discovery requests within the time

6   period required constitutes a waiver of any objection."]).

7          As for the interrogatories where the objections were asserted, the MGA

8   Parties have not demonstrated that the interrogatories are compound or exceed the

9   allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10  and documents related to the MATTEL DOCUMENTS does not render the

11  interrogatories compound because the questions in each interrogatory refer to one

12  common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint*

13  *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14  subparts directed at eliciting details concerning a 'common theme' should generally

15  be considered a single question"]).  The prior discovery master applied this precise

16  rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17  supporting a contention, the identity of persons with knowledge, and documents are

18  not counted separately for the purposes of applying the . . . interrogatory limit."

19  (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                  **(4)     Establishing A Negative Proposition Objection**

21         As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22  Parties assert that three of the interrogatories improperly ask them to establish a

23  negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24  12).  The relevant question, however, is not whether an interrogatory may require a

25  party to prove a negative.  Rather, all of the cases cited by the parties concerning

26  this issue examine whether the interrogatory in question imposes an unreasonable

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 23

1   burden on the responding party.[19]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

4               **b.      Conclusion**

5        For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

8        **3.      Interrogatory Nos. 67 – 69 Propounded On MGA And**

9               **Larian**

10       Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

14       •   Interrogatory No. 67:  "IDENTIFY fully and separately each and every

15           payment of money or other item of value that YOU have made or

16           given, or any promise, agreement, proposal [o]r offer by YOU to pay

17           money or given any item of value, to or on behalf of any PERSON

18           identified in any of the parties' initial disclosures in this ACTION at

19           any time when such person was not an employee of MGA, including

20           without limitation with respect to legal fees incurred by or on behalf of

21           such PERSON."  (Separate Statement in Support of Written Discovery

22           Motion, p. 88).

23       •   Interrogatory No. 68:  "To the extent not disclosed in prior

24  ────────────────

25  [19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -
448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both

26  address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases
cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding

27  that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison
v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all

28  facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,
2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]
Exhibit 1
Page 24

1    Interrogatories, IDENTIFY fully and separately each and every

2    payment of money or other item of value that MGA has made, or any

3    promise, agreement, proposal or offer by MGA to pay money or given

4    any item of value, to or on behalf of any of the FORMER MATTEL

5    EMPLOYEES, including without limitation with respect to legal fees

6    incurred by or on behalf of any of the FORMER MATTEL

7    EMPLOYEES." (*Id.*, p. 91).

8    • Interrogatory No. 69: "To the extent not disclosed in prior

9    Interrogatories, IDENTIFY fully and separately each and every

10    payment of money or other item of value that YOU have made, or any

11    promise, agreement, proposal or offer by YOU to pay money or given

12    any item of value, since January 1, 1998 to or on behalf of any

13    PERSON who has been employed by MATTEL (excluding ordinary

14    salary and benefits paid to such PERSON while an MGA employee),

15    including without limitation with respect to legal fees incurred by or

16    on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17    p. 92).

18                    **a.      Objections Of MGA And Larian**

19         In their Opposition, the MGA Parties rely on two basic grounds for refusing

20    to provide responses to these three interrogatories.  First, the MGA Parties argue

21    that the interrogatories are impermissibly compound and exceed the number of

22    allotted interrogatories.  (*Id.*, pp. 10 – 11).  Second, the MGA Parties argue that

23    interrogatories are overly broad.  (*Id.*, pp. 12 – 14).

24                    **(1)      Compound And Excessive Objections**

25         Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26    that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27    allotted number of interrogatories.  (Opposition, pp. 10 and 11).  But those

28    arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

### (2) Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[20] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson,* 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNB)]

Exhibit 1
Page 26

Case 2:04-cv-09049-DOC-RNB   Document 5994-3   Filed 07/22/09   Page 27 of 42   Page ID
#:196163
Case 2:04-cv-09049-SGL-RNB      Document 5093      Filed 03/31/2009      Page 26 of 41

1   employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2   EMPLOYEES as including specific individuals as well as each such person's

3   "current or former employees, agents, representatives, attorneys, accountants,

4   vendors, consultants, independent contractors, predecessors-in-interest and

5   successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6   to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7   While they assert these definitional objections, counsel for the MGA Parties

8   nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9   Mattel employees, for other than their salary as MGA employees, I think that is a

10  fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11          Therefore, the Discovery Master orders the MGA Parties to identify fully and

12  separately each and every payment of money or other item of value that they have

13  made or offered to pay to or on behalf of any "former employee of Mattel" since

14  January 1, 1998 but limits the definition of former Mattel employees to "all

15  individuals that the MGA Parties are aware of that worked for Mattel and who

16  received any payment (excluding ordinary salary and benefits paid to such person

17  while an MGA employee) from the MGA Parties."[21]

18                    **b.      Conclusion**

19          For all of the foregoing reasons, Mattel's motion to compel is denied with

20  respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's

21  motion to compel responses to the interrogatories is granted, subject to the

22  limitations discussed above.

23          **C.      Summary Of Ruling Regarding The Written Discovery Motion**

24          Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25  **part**.

26  _____

27  [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
    Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a
28  request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.
    Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)] Exhibit 1
Page 27

## II.   MATTEL'S DEPOSITION MOTION

### A.   Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1.   Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business.  Vargas currently serves as the Director of Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex.  She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

#### 2.   Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses.  On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    the Witnesses (as well as others).  Mattel's application was stayed with other Phase

2    2 discovery and then denied without prejudice on September 23, 2008.  After the

3    Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4    depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5    Once again, the MGA Defendants objected on the ground that neither of the

6    Witnesses is an officer, director or managing agent of MGA Mex.  After the parties

7    were unable to resolve their dispute, Mattel filed the Deposition Motion.

8         **B.    Discussion**

9         Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles.  Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights.  In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico.  The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[23]  According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24        **1.    Legal Standard**

25        If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27

28   _____

[23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   managing agent to be deposed and noticing that person's deposition under Rule

2   30(b)(1). Notice alone is enough to compel the managing agent to attend the

3   deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4   *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of

5   compelling a corporate officer's deposition, courts do not recognize a distinction

6   between an "apex" official or director and other high corporate officials. (*Resort*

7   *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8   Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9   ["There is slight warrant for the present distinction between officers and managing

10  agents on the one hand and directors on the other."]).

11       The case law provides somewhat ambiguous guidance with respect to the

12  burden of proof for demonstrating managing agent status. Generally, the burden is

13  on the discovering party to establish the status of the witness. (See *Sugarhill*

14  *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15  *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same

16  time, however (and as Mattel points out in its papers), courts resolve doubts in

17  favor of the examining party, at least during the discovery phase. (See *Sugarhill*,

18  105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19  (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of

20  providing enough evidence to show that it is at least a close question whether the

21  proposed deponent is a managing agent." (*United States of America v. Afram Lines*

22  *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23       The identification of a managing agent in any given case is fact-sensitive.

24  "[B]ecause of the vast variety of factual circumstances to which the concept must

25  be applied, the standard . . . remains a functional one to be determined largely on a

26  case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27  *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the

28  question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 30

1    pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2    C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3    citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)).  Whether a

4    proposed deponent falls into a particular category of employee or agent is therefore

5    less relevant than the individual's specific functions and authority.

6         As both parties acknowledge, federal courts have formulated a set of factors

7    to assist in determining whether person is a party's "managing agent," and therefore

8    subject to deposition under Rule 30(b)(1):

9         1)    whether the individual is invested with general powers allowing him to

10              exercise judgment and discretion in corporate matters;

11        2)    whether the individual can be relied upon to give testimony, at his

12              employer's request, in response to the demands of the examining

13              party;

14        3)    whether any person or persons are employed by the corporate

15              employer in positions of higher authority than the individual

16              designated in the area regarding which the information is sought by the

17              examination;

18        4)    the general responsibilities of the individual "respecting the matters

19              involved in the litigation;" and

20        5)    whether the individual can be expected to identify with the interests of

21              the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23        According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)).  Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 31

1    day-to-day operations.  (Deposition Motion, p. 13).  Accordingly (Mattel reasons),

2    the Witnesses are managing agents of MGA Mex.

3        Mattel's emphasis on the employee's loyalty as the main test for determining

4    his or her status is unwarranted.  Federal courts have effectively challenged the

5    notion that the employee's loyalty to the employer is entitled to special weight.

6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)).  As the

7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8    apparent fidelity to the principal's interests, because it would apply to many agents

9    and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent."  (*Id.,* at 350).  Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies.  Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15       In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees.  Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness.  This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial.  (*Id.*)  On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27       However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 32

1   ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2   employee of an adversary corporation in his individual capacity and may

3   nonetheless still seek to impeach that testimony.  In other words, characterizing a

4   particular witness as a "managing agent" no longer provides any substantive

5   advantage to the deposing party, only procedural advantages (i.e., the ability to take

6   the deposition without a subpoena).

7          Having discarded the notion that the witness' loyalty to his employer is the

8   main factor to be considered in ascertaining his status as a managing agent, the

9   court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11  197 F.R.D. at 350).  The court reasoned:

12          For the purpose of determining whether an individual is a

13          'managing agent' within the meaning of the discovery rules, the

14          alter ego theory provides a useful analogy.  As in the arena of

15          corporate liability, the focus begins with the character of the

16          individual's control.  In addition, we can profitably examine both

17          the degree to which the interests of the individual and the

18          corporation converge, and how helpful the individual will be in

19          fact finding on the matter at issue, in comparison to others

20          associated with the corporation.  As in all matters appertaining to

21          discovery, it is the ends of justice that are to be served.

22  (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25  practical and well-reasoned test for determining whether the Witnesses are

26  managing agents of MGA Mex, and applies that test below.

27

28  ───────────────

[24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 33

1  **2.   Analysis Of The Witnesses' Job Functions And Managerial**

2  **Authority**

3  **a.   The Nature Of The Witnesses' Activities On Behalf**

4  **Of, And Control Over, MGA Mex.**

5  In accordance with the approach outlined in *Libbey Glass*, the Discovery

6  Master begins his analysis by examining the Witnesses' activities on behalf of, and

7  managerial control over the operations of, MGA Mex.

8  Mattel relies heavily on documentary evidence regarding the role of

9  Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10  Master finds that this evidence, which is limited to events that occurred five years

11  ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12  and authority.[25]  The only evidence presented by the parties concerning the

13  Witnesses' current role in the company is the testimony of Kuemmerle.  That

14  testimony derives from three sources:  (1) her declaration filed on February 27,

15  2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16  deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17  Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18  Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19  The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20  states in its entirety:

21  All of the day to day operations of MGA Mexico are managed

22  locally in Mexico.  For example, MGA Mexico's Finance

23  Director, Sales Director and Marketing Director are all based in

24  Mexico and all of the marketing and finance functions are

25  handled in Mexico.

26  (First Kuemmerle Decl., ¶ 6).

27

28  [25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now." (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 34

1    There are two main excerpts from Kuemmerle's deposition transcript cited

2  by Mattel in support of its Deposition Motion.  In the first, Kuemmerle testifies that

3  pricing for the products sold by MGA Mex is set by means of a "combined team

4  effort" among a group that counsel refers to as "the four of you."  (Kuemmerle Tr.,

5  p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26]  Kuemmerle testifies that these

6  individuals (which apparently include the Witnesses) continue to set the pricing of

7  MGA Mex products in the same manner to this day.  (*Id.*).

8    Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9  testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10  tight of a group, not enough employees, that we were all forced to multitask."

11  (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12    In her second declaration, Kuemmerle testifies regarding the chain of

13  command at MGA Mex.  Specifically, she testifies that Vargas reports directly to

14  her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15  (Second Kuemmerle Decl., ¶¶ 3 – 4).  Kuemmerle is entirely silent regarding the

16  functions performed by, or general authority exercised by, either of the Witnesses.

17  Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18  all at MGA De Mexico."  (*Id.*, ¶ 4).  Kuemmerle does not state whether Vargas

19  supervises anyone.  (*Id.*, ¶ 3).

20    In the absence of any evidence directly addressing the Witnesses' current

21  role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22  managing agents based on the Witnesses' job titles and past participation in the

23  "tight group" that made operational decisions for the fledgling company several

24  years ago.  However, such an inference is not supported by the scant evidence

25  before the Discovery Master.  For instance, the Discovery Master cannot attribute

26

27  [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring.  However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 35

1   such status to Trueba, who supervises no employees, and whose scope of

2   responsibility is circumscribed to public relations.[27]

3          Likewise, although Mattel emphasizes that Vargas supervises approximately

4   8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5   p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6   necessary context by identifying the number of total MGA Mex employees.  If, for

7   instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8   employees would tend to indicate he does not have such authority.[28]  Because the

9   necessary contextual information is not provided, the Discovery Master is unable to

10   assess the significance (if any) of the evidence that is provided regarding Vargas'

11   current role at MGA Mex.

12          In sum, the evidence currently before the Discovery Master is insufficient to

13   allow him to determine that the Witnesses' functions on behalf of, and control over,

14   MGA Mex is such that they can be deemed its "managing agents."

15                    **b.      Other Factors**

16          Since there is virtually no evidence addressing the critical factor governing

17   whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18   above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19   at best.  Even if all those factors were satisfied – which they are not – the record

20   would still be insufficient to enforce the deposition notices at issue here.  However,

21   in order to create a complete record and to address the arguments made by the

22   parties, the Discovery Master nonetheless briefly discusses those factors below.

23          As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

24   [27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she
25   submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to
    dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing."  (Deposition
26   Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

27   [28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 –
    16), but there is no admissible evidence before the Discovery Master to support such an assertion.  Further, such a
28   contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees
    at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 36

1  on the issue of whether an employee is a managing agent is whether he or she "is

2  invested with *general* powers allowing him to exercise judgment and discretion in

3  corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]).  Here, the

4  current scope of Trueba's authority appears to be the opposite of "general:" she is

5  responsible for handling media and public relations.  (Kuemmerle Tr., p. 97:14 – 15

6  attached as Exh. 9 to Kahn Decl.).  Likewise, Vargas' authority, although somewhat

7  broader than that of Trueba, appears to be confined primarily to sales.  (Second

8  Kuemmerle Decl., ¶ 3).  There is no evidence that either of the Witnesses has any

9  authority over such things as internal administrative functions, budgeting, contracts

10  with vendors, and various other aspects of running a business.

11      The second *Sugarhill* factor (whether the individual can be relied upon to

12  give testimony at the employer's request) is satisfied, since the Witnesses are

13  current employees of MGA Mex who will presumably cooperate in their

14  employer's defense of Mattel's counterclaims by providing testimony at a

15  deposition.

16      Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17  employees in positions of higher authority than the Witnesses in the area regarding

18  which the information is sought), the Discovery Master finds that the undisputed

19  testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20  Kuemmerle supervises Vargas and (through Machado) Trueba.  (Second

21  Kuemmerle Decl., ¶¶ 3 and 4).  Accordingly, this factor weighs against finding that

22  the Witnesses are "managing agents."

23      With respect to fourth factor (the general responsibilities of the Witnesses

24  respecting the matters involved in the litigation), Mattel's papers demonstrate that

25  the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26  Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27  contends, MGA Mex conducts using stolen Mattel trade secrets).  (Deposition

28  Motion, pp. 4 – 7).  Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 37

1   Witnesses to be managing agents.

2       The last factor is the "loyalty" inquiry discussed above, namely whether the

3   Witnesses can be expected to identify with the interests of MGA Mex.  Because

4   they are being subjected to investigation in Mexico, have their own lawyers and the

5   MGA Defendants may take the position that if any Mattel documents were taken,

6   the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7   align with the MGA Defendants in this matter.  It is unclear on this record whether

8   this factor weighs in favor of or against deeming the Witnesses to be managing

9   agents.

10       **C.**    **Summary Of The Discovery Master's Findings In Connection**

11              **With The Deposition Motion**

12       At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex.  The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540).  Given the current state of the evidence presented, this

16   is not such a case.[29]

17       Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30]  Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22       **D.**    **Sanctions**

23              **1.**    **Mattel's Request For Sanctions**

24       Having found that the MGA Defendants have articulated a meritorious legal

---

[29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities.  However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 38

1   and factual basis for their objections to the subject deposition notices, the Discovery

2   Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3   was justified.  Accordingly, Mattel's request for sanctions is **DENIED**.

### 2.   The MGA Defendants' Request For Sanctions

5   The MGA Defendants request an award of sanctions against Mattel for

6   conduct related to Mattel's service of the Deposition Motion.  First, the MGA

7   Defendants contend that Mattel should have served the Deposition Motion on

8   Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9   counsel had been communicating regarding the subject depositions.  The MGA

10  Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11  on Kahn's colleague, Glaser, while the latter was out of town.  However, the MGA

12  Defendants do not explain why other attorneys in their office who were assigned to

13  the matter were not notified of the delivery of the Deposition Motion given Ms.

14  Glaser's absence.  Further, Mattel has submitted the declaration of its counsel,

15  Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16  served the Deposition Motion on all three law firms representing the MGA

17  Defendants at the same time (February 6, 2009) that the motion was filed.  (See

18  Suppl. Zeller Decl., Exh. E).

19  Second, the MGA Defendants argue that Mattel only served a redacted

20  version of the Deposition Motion on them at some later point, leaving them only

21  two days to draft and file opposing papers, and refused Kahn's request for a

22  reasonable extension of time.  (Kahn Decl., ¶¶ 3 - 4).  However, the Kahn Decl. is

23  vague regarding the date and manner in which Mattel is alleged to have belatedly

24  served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25  Master is unable to ascertain whether Kahn's belated receipt of the motion was

26  caused by some conduct of Mattel, or instead, caused by internal delays within

27  Glaser Weil in routing the papers to the appropriate attorney.

28  Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

III.    **DISPOSITION**

    A.    Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

    1.    Document Request Nos. 207, 208 and 269 directed to Larian:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    2.    Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    3.    Interrogatory No. 45 directed to MGA:  The Motion is **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    4.    Interrogatory Nos. 56 – 63 directed to MGA and Larian:

        a.    The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

        b.    Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations:  The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 38 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 40

1    MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2    (ii) that the information in the MATTEL documents did not derive independent

3    economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4    DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5    Parties independently developed, or did not otherwise use or disclose, any

6    information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7    the MGA Parties have not benefited by their use of the information in the MATTEL

8    DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9    Parties had or have a right to copy, possess, use or disclose any MATTEL

10   DOCUMENT (Interrogatory No. 63).

11            c.      The MGA Parties responses to interrogatories numbered

12   56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13   applicable confidentiality designations available under the Protective Order.

14            5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

15   is **DENIED**.

16            6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18   Parties are ordered to identify fully and separately each and every payment of

19   money or other item of value that they have made or offered to pay to or on behalf

20   of any former employee of Mattel since January 1, 1998, with the definition of

21   former Mattel employees re-defined as "all individuals that the MGA Parties are

22   aware of that worked for Mattel and who received any payment (excluding ordinary

23   salary and benefits paid to such person while an MGA employee) from the MGA

24   Parties."  The MGA Parties responses to these interrogatories shall be served within

25   30 days of the original Order No. 11, subject to any applicable confidentiality

26   designations available under the Protective Order.

27   **B.**      Mattel's Deposition Motion:

28            1.      Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 41

1    2.  Mattel's request for sanctions is **DENIED**.

2    3.  The MGA Defendants' request for sanctions is **DENIED**.

3

4 Dated:  March 31, 2009

5

6             By:   /s/ Robert C. O'Brien

7                 ROBERT C. O'BRIEN
                  Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                 - 40 -   AMENDED ORDER NO. 11
                    [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 1
Page 42