# EXHIBIT 1

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12   CARTER BRYANT, an individual,         CASE NO. CV 04-09049 SGL (RNBx)

13            Plaintiff,                    Consolidated with Case Nos. CV 04-
                                            9059 and CV 05-2727
14       vs.
                                            MATTEL, INC.'S SUPPLEMENTAL
15   MATTEL, INC., a Delaware              INTERROGATORIES
     corporation,
16
             Defendant.
17

18   AND CONSOLIDATED ACTIONS

19

20

21   PROPOUNDING PARTY:      Mattel, Inc.

22   RESPONDING PARTIES:     MGA Entertainment, Inc., Isaac Larian, Carter

23                           Bryant, MGA Entertainment (HK) Limited, MGAE

24                           de Mexico S.R.L. de C.V., and Carlos Gustavo

25                           Machado Gomez

26   SET NO.:                SUPPLEMENTAL

27

28

07209/2239571.2

**EXHIBIT** _____1_____

**PAGE** _____6_____

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2  ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3  Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and

4  Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")

5  individually answer the following Interrogatories separately and fully, in writing and

6  under oath, within 30 days after service hereof.  The Responding Parties shall be

7  obligated to supplement their responses to the Interrogatories at such times and to

8  the extent required by the <u>Federal Rules of Civil Procedure</u>.

9

10                              **Definitions**

11        1.    "YOU" and "YOUR" mean each of the Responding Parties.

12        2.    "MGA" means MGA Entertainment, Inc., any of its current or

13  former employees, officers, directors, agents, representatives, attorneys, experts,

14  divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any

15  other PERSON acting on its behalf, pursuant to its authority or subject to its control.

16  Without limiting the foregoing, "MGA" includes the entities known as ABC

17  International Traders or ABC International Traders, Inc.  For purposes of the these

18  Interrogatories, "MGA" does not include BRYANT.

19        3.    "MATTEL" means Mattel, Inc., its current employees, officers,

20  directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

21  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

22  PERSON acting on its behalf, pursuant to its authority or subject to its control.

23        4.    "AFFILIATES" means any and all corporations, proprietorships,

24  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

25  indirectly, in whole or in part, own or control, are under common ownership or control

26  with, or are owned or controlled by a PERSON, party or entity, including without

27  limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

28

07209/2239571.2

-2-

EXHIBIT ____1____

PAGE ____7____

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1    5.    "PERSON" or "PERSONS" means all natural persons, partnerships,
2    corporations, joint ventures and any kind of business, legal or public entity or
3    organization, as well as its, his or her agents, representatives, employees, officers and
4    directors and any one else acting on its, his or her behalf, pursuant to its, his or her
5    authority or subject to its, his or her control.

6    6.    "DESIGN" or "DESIGNS" means any and all representations,
7    whether two-dimensional or three-dimensional, and whether in tangible, digital,
8    electronic or other form, including but not limited to all works, designs, artwork,
9    sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
10   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
11   practice, developments, inventions and/or improvements, as well as all other items,
12   things and DOCUMENTS in which any of the foregoing are or have been expressed,
13   embodied, contained, fixed or reflected in any manner, whether in whole or in part.

14   7.    "BRATZ" means any project, product, doll or DESIGN ever known
15   by that name (whether in whole or in part and regardless of what such project, product
16   or doll is or has been also, previously or subsequently called) and any product, doll or
17   DESIGN or any portion thereof that is now or has ever been known as, or sold or
18   marketed under, the name or term "Bratz" (whether in whole or in part and regardless
19   of what such product, doll or DESIGN or portion thereof is or has been also, previously
20   or subsequently called) or that is now or has ever been sold or marketed as part of the
21   "Bratz" line, and each version or iteration of such product, doll or DESIGN or any
22   portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also
23   includes without limitation any names, fashions, accessories, artwork, packaging or any
24   other works, materials, matters or items included or associated therewith.  Without
25   limiting the generality of the foregoing, the term "BRATZ" does not and shall not
26   require that there be a doll existing at the time of the event, incident or occurrence that
27   is the subject of, or otherwise relevant or responsive to, the Interrogatories.

28

1    8.    "SOLD," "SELL" or "SALE" means to distribute, market, license,
2  sell, offer to sell, or convey or transfer in any way for compensation.

3    9.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
4  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
5  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
6  to, all writings and records of every type and description including, but not limited to,
7  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
8  ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
9  any kind, statements, reports, minutes, recordings, transcripts and summaries of
10 meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
11 discs, printouts and records of all types, studies, instruction manuals, policy manuals
12 and statements, books, pamphlets, invoices, canceled checks and every other device or
13 medium by which or through which information of any type is transmitted, recorded or
14 preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall
15 include all copies that differ in any respect from the original or other versions of the
16 DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
17 originals containing initials, comments, notations, insertions, corrections, marginal
18 notes, amendments or any other variation of any kind.

19    10.   "COMMUNICATION" or "COMMUNICATIONS" means and
20 includes any disclosure, transfer or exchange of information between two or more
21 PERSONS, whether orally or in writing, including without limitation, any conversation
22 or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,
23 telex, telecopier, electronic mail, or any other electronic or other medium, including
24 without limitation in written, audio or video form.

25    11.   "MACHADO" means Carlos Gustavo Machado Gomez, and all of
26 his current or former employees, agents, representatives, attorneys, accountants,
27 vendors, consultants, independent contractors, predecessors-in-interest and successors-
28

1  in-interest, and any other PERSON acting on his behalf, pursuant to his authority or
2  subject to his control.

3       12.    "TRUEBA" means Mariana Trueba Almada, and all of her current
4  or former employees, agents, representatives, attorneys, accountants, vendors,
5  consultants, independent contractors, predecessors-in-interest and successors-in-
6  interest, and any other PERSON acting on her behalf, pursuant to her authority or
7  subject to her control.

8       13.    "VARGAS" means Pablo Vargas San Jose, and all of his current or
9  former employees, agents, representatives, attorneys, accountants, vendors, consultants,
10  independent contractors, predecessors-in-interest and successors-in-interest, and any
11  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

12       14.    "BRAWER" means Ron Brawer, and all of his current or former
13  employees, agents, representatives, attorneys, accountants, vendors, consultants,
14  independent contractors, predecessors-in-interest and successors-in-interest, and any
15  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

16       15.    "CASTILLA" means Jorge Castilla, and all of his current or former
17  employees, agents, representatives, attorneys, accountants, vendors, consultants,
18  independent contractors, predecessors-in-interest and successors-in-interest, and any
19  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

20       16.    "COONEY" means Dan Cooney, and all of his current or former
21  employees, agents, representatives, attorneys, accountants, vendors, consultants,
22  independent contractors, predecessors-in-interest and successors-in-interest, and any
23  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

24       17.    "BRISBOIS" means Janine Brisbois, and all of her current or former
25  employees, agents, representatives, attorneys, accountants, vendors, consultants,
26  independent contractors, predecessors-in-interest and successors-in-interest, and any
27  other PERSON acting on her behalf, pursuant to her authority or subject to her control.

28

-5-
MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT ____1____

PAGE ____10____

1    18.    "RAE" means Ron Rae, and all of his current or former employees,
2  agents, representatives, attorneys, accountants, vendors, consultants, independent
3  contractors, predecessors-in-interest and successors-in-interest, and any other PERSON
4  acting on her behalf, pursuant to her authority or subject to his control.

5    19.    "CONTRERAS" means Nick Contreras, and all of his current or
6  former employees, agents, representatives, attorneys, accountants, vendors, consultants,
7  independent contractors, predecessors-in-interest and successors-in-interest, and any
8  other PERSON acting on her behalf, pursuant to her authority or subject to his control.

9    20.    "ABUNDIS" means Ricardo Abundis, and all of his current or
10  former employees, agents, representatives, attorneys, accountants, vendors, consultants,
11  independent contractors, predecessors-in-interest and successors-in-interest, and any
12  other PERSON acting on her behalf, pursuant to her authority or subject to his control.

13    21.    The "FORMER MATTEL EMPLOYEES" means MACHADO,
14  TRUEBA, VARGAS, BRAWER, CASTILLA, COONEY, BRISBOIS, CONTRERAS,
15  RAE, ABUNDIS, and any other former Mattel employee or contractor who
16  misappropriated Mattel trade secrets or violated his or her obligations to maintain the
17  confidentiality of Mattel's trade secrets.

18    22.    "REFER OR RELATE TO" a given subject matter means relate to,
19  refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,
20  state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,
21  or in any way pertain to that subject matter, either directly or indirectly.

22    23.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
23  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
24  therewith.

25    24.    "SLEEKCRAFT FACTORS" means those factors enumerated in
26  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), and includes specifically:
27  (1) strength of the mark; (2) similarity of the marks; (3) relatedness of the goods; (4)
28  marketing channels; (5) type of goods and purchaser's likely degree of care; (6)

EXHIBIT _____ \

PAGE _____ \ \

1 evidence of actual confusion; (7) likelihood of expansion of the product lines; and (8)
2 defendant's intent in selecting the mark.

3      25.   "MATTEL DOCUMENTS" means any and all DOCUMENTS
4 stolen, obtained or taken from MATTEL by any PERSON, including but not limited to
5 the DOCUMENTS identified as Bates Numbers M 0019162-M 0019365, M 0019375-
6 M 0019491, M 0019492-M 0019586, M 0030576, M 0019587-M 0022008, M
7 0022009-M 0026076, M 0026077-M 0029024, M 0029025-M 0029042, M 0029043-M
8 0029044, M 0029045-M 0029050, M 0029051-M 0029053, M 0031471-M 0031473, M
9 0029054-M 0029255, M 0031474-M 0031485, M 0029226-M 0030163, M 0030164-M
10 0030173, M 0030174-M 0030183, M0030261-M 0030268, M 0030269-M 0030278, M
11 0030440-M 0030441, M 0030505-M 0030575, M 0030577-M 0030608, M 0019366-M
12 0019374, M 0030184-M 0030240, M 0030254-M 0030260, M 0030279-M 0030439, M
13 0030442-M 0030470, M 0030471-M 0030501, M 0030609, M 0030610-M 0030625, M
14 0030626-M 0030674, M 0030241-M 0030253, M 0030502-M 0030504, M 0030675-M
15 0030754, M 0030755-M 0030756, M 0030770-M 0030782, M 0030757-M 0030769, M
16 0030783-M 0030788, M 0030789-M 0030799, M 0030800-M 0030834, M 0030835, M
17 0030836-M 0030838, M 0030839-M 0030841, M 0030842-M 0030845, M 0030846-M
18 0030850, M 0030851- M 0030959, M 0030960-M 0030972, M 0030973-M 0031141,
19 M 0031142-M 0031153, M 0031154-M 0031162, M 0031163-M 0031172, M 0031173,
20 M 0031174-M 0031206, M 0031207-M 0031223, M 0031224-M 0031229, M
21 0031230-M 0031247, M 0031248-M 0031258, M 0031259-M 0031262, M 0031263-M
22 0031264, M 0031265, M 0031266, M 0031267, M 0031268, M 0031269, M 0031270-
23 M 0031278, M 0031279-M 0031280, M 0031281-M 0031282, M 0031283-M 0031291,
24 M 0031292-M 0031470, M 0032318, M 0031486-M 0031503, M 0031504-M 0031612,
25 M 0031613-M 0031860, M 0031863-M 0031864, M 0031865-M 0031919, M
26 0031861-M 0031862, M 0031925-M 0032000, M 0031920-M 0031924, M 0032001-M
27 0032009, M 0032010-M 0032057, M 0032058, M 0032059-M 0032070, M 0032071-M
28 0032288, M 0032289, M 0032290-M 0032317, M 0059836-M 0059837, M 0075253-M

EXHIBIT _____ 1 _____
PAGE _____ 12 _____

1  0075260, M 0075261-M 0075277, M 0075278-M 0075289, M 0075290-M 0075307, M

2  0075308-M 0075309, M 0075310-M 0075315, M 0075316-M 0075317, M 0075318-M

3  0075322, M 0075323-0075324, M 0075325, M 0075326-M 0075328, M 0075329-M

4  0075333, M 0075334-M 0075375, M 0075376-M 0075378, M 0075379-M 0075380, M

5  0075381-M 0075384, M 0075385, M 0075386-M 0075388, M 0075389, M 0075390,

6  M 0075391, M 0075392-M 0075398, M 0075399-M 0075400, M 0075401-M 0075407,

7  M 0075408, M 0075409-M 0075416, M 0075417-M 0075420, M 0075421, M

8  0075422-M 0075469, M 0075470-M 0075490, M 0075491-M 0075494, M 0075495-M

9  0075515, M 0075516-M 0075531, M 0075532-M 0075552, M 0075553-M 0075572, M

10  0075573, M 0075574-M 0075594, M 0075595-M 0075616, M 0075617, M 0075618-M

11  0075619, M 0075620-M 0075635, M 0075636-M 0075654, M 0075655-M 0075661, M

12  0075662-M 0075699, M 0075700-M 0075709, M 0075710-M 0075713, M 0075714-M

13  0075775, M 0075776-M 0075780, M 0075781-M 0075798, M 0075799-M 0075842, M

14  0075843-M 0075906, M 0075907-M 0075949, M 0075950-M 0076018, M 0076019, M

15  0076020-M 0076132, M 0076133-M 0076143, M 0076144-M 0076145, M 0076146-M

16  0076148, M 0076149-M 0076155, M 0076156-M 0076169, M 0076170-M 0076171, M

17  0076172-M 0076196, M 0076197-M 0076215, M 0076216-M 0076250, M 0076251-M

18  0076264, M 0076265-M 0076279, M 0076280, M 0076281-M 0076311, M 0076312-M

19  0076362, M 0076363-M 0076370, M 0076371, M 0076372-M 0076425, M 0076426-M

20  0076427, M 0076428-M 0076431, M 0076432- M 0076442, M 0076443-M 0076446,

21  M 0100646-M 0100653, M 0098687-M 0098688, M 0098689-M 0098697, M

22  0098698-M 0098723, M 0098724-M 0098771, M 0098772-M 0098832, M 0098833-M

23  0098846, M 0098847-M 0098865, M 0098866-M 0098879, M 0098880-M 0098883, M

24  0098884-M 0098933, M 0098934-M 0098936, M 0098937-M 0098971, M 0098972-M

25  0099436, M 0099437-M 0099439, M 0099440-M 0099448, M 0099449-M 0099461, M

26  0099462-M 0099471, M 0099472-M 0099476, M 0099477-M 0099493, M 0099494-M

27  0099529, M 0099530-M 0099594, M 0099595-M 0099597, M 0099598-M 0099601, M

28  0099602-M 0099618, M 0099619-M 0099628, M 0099629-M 0099656, M 0099657-M

07209/2239571.2

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT _____ 1

PAGE _____ 13

1  0099665, M 0099666-M 0099725, M 0099726-M 0100622, M 0100623-M 0100645, M
2  0100646-M 0100653, M 0100654-M 0100695, M 0100696-M 0100698, M 0100699-M
3  0100700, M 0100701-M 0100735, M 0100736-M 0100741, M 0100742-M 0100774, M
4  0100775-M 0100778, M 0100779-M 0100780, M 0100781, M 0100782, M 0100783-M
5  0100789, M 0100790-M 0100795, M 0100796-M 0100858, M 0100859-M 0100868, M
6  0100869-M 0100878, M 0100879-M 0100891, M 0100892-M 0100905, M 0100906-M
7  0100918, M 0100919-M 0100932, M 0100933-M 0100941, M 0100942-M 0100952, M
8  0100953, M 0100954-M 0100955, M 0100956-M 0100983, M 0100984-M 0101013, M
9  0101014-M 0101064, M 0101065 and M 0101069-M 0101128.

10      26.   "DIGITAL INFORMATION" means any information created or
11  stored digitally, including but not limited to electronically, magnetically or optically.

12      27.   "STORAGE DEVICE" means any computer hard drive, memory,
13  USB device, tape, storage array or any other device or medium that allows a user,
14  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,
15  retain, store or maintain DIGITAL INFORMATION.

16      28.   "SOURCE OF INFORMATION" means any medium containing
17  DOCUMENTS or other information, whether in paper, electronic or other form,
18  including but not limited to any STORAGE DEVICE, file, file cabinet or other any
19  other source of information or DOCUMENTS.

20      29.   "COLLECT," "COLLECTED" or "COLLECTION," with reference
21  to DOCUMENTS, means to collect, review, produce, request, seek, look for, search for,
22  analyze or in any other way collect or review or attempt to collect or review such
23  DOCUMENTS in connection with YOUR search for, review of and/or production of
24  DOCUMENTS in this ACTION.

25      30.   "IDENTIFY" or "IDENTITY" means the following:

26      (a)   with reference to an individual or individuals, means to state,
27  fully and separately as to each, such individual's full name, any known business title,
28  current or last known business affiliation, current or last known residential address,

07209/2239571.2

-9-

EXHIBIT _____ 1
PAGE _____ 14
MATTEL'S SUPPLEMENTAL INTERROGATORIES

1 | current or last known business address, current or last known relationship to MGA, and
2 | current or last known telephone number.

3 | (b) with reference to an entity or entities, means to state, fully and
4 | separately as to each, such entity's full name, state (or country) of incorporation or
5 | organization, present or last known address, and present or last known telephone
6 | number.

7 | (c) with reference to a SOURCE OF INFORMATION, means
8 | to describe and state, fully and separately as to each, the SOURCE OF
9 | INFORMATION so as to distinctly identify each such SOURCE OF INFORMATION
10 | and differentiate each such SOURCE OF INFORMATION from all other SOURCES
11 | OF INFORMATION, including without limitation by stating its nature (e.g., USB
12 | drive, computer hard drive, file cabinet, etc.), and any unique identifier information
13 | (such as hard drive serial number); the physical location(s), including full address
14 | information and full identifying computer network drive information if applicable, of
15 | each such SOURCE OF INFORMATION (as of the time of YOUR COLLECTION of
16 | DOCUMENTS from the SOURCE OF INFORMATION, regardless of whether such
17 | DOCUMENTS were thereafter moved elsewhere for the purpose of YOUR review); the
18 | IDENTITY of each natural person or individual who is, was or has been associated
19 | with each such SOURCE OF INFORMATION; the date(s) on which YOU
20 | COLLECTED DOCUMENTS from each such SOURCE OF INFORMATION in
21 | connection with this ACTION; and the IDENTITY of any DOCUMENTS, by Bates
22 | number, that YOU have produced from each such SOURCE OF INFORMATION to
23 | Mattel in this ACTION.

24 | (d) with reference to any other DOCUMENT or DOCUMENTS,
25 | means to describe each DOCUMENT by Bates number. In the event that a
26 | DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each
27 | such DOCUMENT, to provide a complete description of it such that it may be the
28 | subject of a request for the production of documents, including by stating the date,

1 | identity of the author, addressee(s), signatories, parties, or other PERSONS identified
2 | therein, its present location or custodian and a description of its contents.

3 | (e) with reference to the payment of money or other item of
4 | value, or any promise, agreement, proposal or offer to pay money or any item of value,
5 | means to state the amount of the payment or the value of the item, the IDENTITY of
6 | the payor, the IDENTITY of the payee, the IDENTITY of the PERSON on whose
7 | behalf it is being made, the IDENTITY of the PERSON on whose behalf it is being
8 | received, the date(s) on which such payment or item of value was paid, promised,
9 | agreed to be paid, proposed or offered, the nature of the method of payment (e.g., cash,
10 | check) and any identifying information accompanying such payment (e.g., check
11 | number), and the IDENTITY of each bank or financial institution involved therein.

12 | 31. "Any" as used in these interrogatories includes the word "all," and
13 | the word "all" as used in these interrogatories includes the word "any."

14 | 32. The singular form of a noun or pronoun includes within its meaning
15 | the plural form of the noun or pronoun so used, and vice versa; the use of the masculine
16 | form of a pronoun also includes within its meaning the feminine form of the pronoun so
17 | used, and vice versa; the use of any tense of any verb includes also within its meaning
18 | all other tenses of the verb so used, whenever such construction results in a broader
19 | request for information; and "and" includes "or" and vice versa, whenever such
20 | construction results in a broader disclosure of documents or information.

21 |
22 | **Instructions**
23 | A. When an interrogatory requests disclosure of a
24 | COMMUNICATION or other information as to which YOU claim any privilege or
25 | protection as a ground for nondisclosure, identify each PERSON who participated in or
26 | had knowledge of the COMMUNICATION or other information and provide the
27 | following:
28 | (i) the privilege or protection that YOU claim precludes disclosure;

U7209/2239571.2

-11-

EXHIBIT 1
PAGE 16

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1          (ii)   the subject matter of the COMMUNICATION or information
2                 (without revealing the content as to which the privilege is claimed);
3                 and

4          (iii)  any additional facts or grounds on which YOU base YOUR claim
5                 of privilege or protection.

6      B.    When an interrogatory requests that YOU provide information,
7  YOU are required to supply all information known by or available to YOU or YOUR
8  employees, officers, directors, agents, representatives, attorneys and experts. If YOU
9  cannot completely answer the interrogatory after making diligent efforts to do so,
10 please so state. Then describe in detail all efforts made to answer the interrogatory;
11 identify every PERSON involved in such efforts; and state the additional information
12 YOU need, if any, to respond completely to the interrogatory.

13

14                              **Interrogatories**

15

16 INTERROGATORY NO. 51:

17     For each concept, design, product, product packaging or other matter that
18 YOU contend MATTEL has copied, infringed or diluted, including but not limited to
19 those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re
20 Claims of Unfair Competition, Response to Interrogatory No. 2 (and any Supplemental
21 Responses to such Interrogatory), describe, fully and separately, each and every
22 concept, design, product, product packaging or other matter of or by MATTEL that
23 YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s),
24 product(s), product packaging or other matter. Your answer should describe the Mattel
25 concept, design, product, product packaging or other matter with specificity and in
26 detail (including without limitation by product name, product number, SKU, or bar
27 code number), and specify those elements or attributes of YOUR claimed concept,

28

1 | design, product, product packaging or other matter that YOU contend were copied,
2 | infringed or diluted by MATTEL.

3

4 | INTERROGATORY NO. 52:

5 |       For each trade dress that YOU contend MATTEL copied, infringed or
6 | diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that
7 | incorporates such trade dress and, for each such product, separately state (a) the number
8 | of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue
9 | received by YOU from such SALES of each such product; (c) all costs YOU have
10 | incurred in connection with each product, including but not limited to YOUR cost of
11 | good sold, and (d) YOUR gross and net profits from each such product.

12

13 | INTERROGATORY NO. 53:

14 |       For each MATTEL concept, design, product, product packaging or other
15 | matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as
16 | to affiliation, connection, or association, or as to origin, sponsorship, or approval,
17 | separately state all facts that support YOUR contention of such, including but not
18 | limited to all facts that support YOUR contention, if YOU so contend, that any of the
19 | SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
20 | with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
21 | such facts.

22

23 | INTERROGATORY NO. 54:

24 |       For each concept, design, product, product packaging or other matter that
25 | YOU contend MATTEL copied, infringed or diluted, state all facts that support
26 | contention, if YOU so contend, that such copying or infringement was intentional or
27 | willful, and IDENTIFY all PERSONS with knowledge of such facts and all
28 | DOCUMENTS that REFER OR RELATE TO such facts.

07209/2239571.2

-13-

EXHIBIT _____ 1

PAGE _____ 18

1

2 INTERROGATORY NO. 55:

3          State all facts which support the allegation in Paragraph 120 of YOUR

4 COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution

5 of the distinctive look of MGA's products and trade dress," and IDENTIFY all

6 PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

7 RELATE TO such facts.

8

9 INTERROGATORY NO. 56:

10          IDENTIFY all MATTEL DOCUMENTS that MGA has obtained,

11 received, reviewed, copied, reproduced, transmitted, requested or used at any time since

12 January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all

13 DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

14

15 INTERROGATORY NO. 57:

16          IDENTIFY all DOCUMENTS that REFER OR RELATE TO any

17 MATTEL product or plan that any of the FORMER MATTEL EMPLOYEES

18 provided, transmitted or disclosed to, shared with or used on behalf of MGA at any

19 time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such

20 facts.

21

22 INTERROGATORY NO. 58:

23          State all facts which support YOUR contention, if YOU so contend, that

24 YOU and/or MGA did not obtain any MATTEL DOCUMENTS through improper

25 means, and IDENTIFY all PERSONS with knowledge of such facts and all

26 DOCUMENTS that REFER OR RELATE TO such facts.

27

28

07209/2239571.2

-14-

EXHIBIT _____ 1

PAGE _____ 19

MATTEL'S SUPPLEMENTAL INTERROGATORIES

INTERROGATORY NO. 59:

State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS does not and/or did not derive independent economic value from not being generally known to the public or other PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 60:

State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE TO the foregoing.

INTERROGATORY NO. 61:

State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 62:

State all facts which support YOUR contention that YOUR use or disclosure of information in the MATTEL DOCUMENTS neither benefited YOU nor MGA nor harmed MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

-15-

EXHIBIT _____ 1

PAGE _____ 20

1 | INTERROGATORY NO. 63:

2 | State all facts which support YOUR contention, if YOU so contend, that

3 | YOU and/or MGA had, has or have any right to copy, possess, use or disclose any

4 | MATTEL DOCUMENT, and IDENTIFY all PERSONS with knowledge of such facts

5 | and all DOCUMENTS that REFER OR RELATE TO such facts.

6 |

7 | INTERROGATORY NO. 64:

8 | To the extent YOU have not previously disclosed such information in a

9 | prior interrogatory response YOU provided to Mattel, state all facts which support

10 | YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

11 | knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

12 | facts.

13 |

14 | INTERROGATORY NO. 65:

15 | Describe in detail each and every action YOU have taken, or directed be

16 | taken, to locate, maintain or preserve evidence which is, might be or could be relevant

17 | or potentially relevant to THIS ACTION.

18 |

19 | INTERROGATORY NO. 66:

20 | IDENTIFY each and every SOURCE OF INFORMATION from which

21 | YOU have COLLECTED DOCUMENTS for responsiveness and potential production

22 | in THIS ACTION.

23 |

24 | INTERROGATORY NO. 67:

25 | IDENTIFY fully and separately each and every payment of money or

26 | other item of value that YOU have made or given, or any promise, agreement, proposal

27 | or offer by YOU to pay money or give any item of value, to or on behalf of any

28 | PERSON identified in any of the parties' initial disclosures in this ACTION at any time

1   when such PERSON was not an employee of MGA, including without limitation with
2   respect to legal fees incurred by or on behalf of such PERSON.

3

4   INTERROGATORY NO. 68:

5           To the extent not disclosed in response to prior Interrogatories, IDENTIFY
6   fully and separately each and every payment of money or other item of value that MGA
7   has made, or any promise, agreement, proposal or offer by MGA to pay money or give
8   any item of value, to or on behalf of any of the FORMER MATTEL EMPLOYEES,
9   including without limitation with respect to legal fees incurred by or on behalf of any of
10  the FORMER MATTEL EMPLOYEES.

11

12  INTERROGATORY NO. 69:

13          To the extent not disclosed in response to prior Interrogatories, IDENTIFY fully
14  and separately each and every payment of money or other item of value that YOU have
15  made, or any promise, agreement, proposal or offer by YOU to pay money or give any
16  item of value, since January 1, 1998 to or on behalf of any PERSON who has been
17  employed by MATTEL (excluding ordinary salary and benefits paid to such PERSON
18  while an MGA employee), including without limitation with respect to legal fees
19  incurred by or on behalf of such PERSON and bonuses paid to such PERSON.

20

21

22  DATED: *January 9, 2008*          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
23

24                                    By_____
25                                        Michael T. Zeller
                                          Attorneys for Mattel, Inc.
26

27

28

07209/2239571.2

                                    -17-
EXHIBIT ____1____
                                    MATTEL'S SUPPLEMENTAL INTERROGATORIES
PAGE ____22____

**PROOF OF SERVICE**

1

2   I am employed in the County of Los Angeles, State of California. I am over

3   the age of eighteen years and not a party to the within action; my business address is

4   NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5   California 90026.

6   On January 9, 2008, I served true copies of the following documents

7   described as:

8   **MATTEL, INC.'S SUPPLEMENTAL INTERROGATORIES**

9   on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>   Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>Telephone: 213.687.5000<br>Facsimile: 213.687.5600 | **Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.*** |
| Overland Borenstein Scheper & Kim, LLP<br>   Mark E. Overland, Esq.<br>   David C. Scheper, Esq.<br>   Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |
| Keker & Van Nest, LLP<br>   John W. Keker, Esq.<br>   Michael H. Page, Esq.<br>   Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 | **Attorneys for *Carter Bryant*** |

23

24   [√]   **[PERSONAL]** by personally delivering the document listed above to

25   the person(s) at the address(es) set forth above.

26

27

28

07209/2347614.1

EXHIBIT _____ 1

PAGE _____ 23

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

1    I declare that I am employed in the office of a member of the bar of this court

2  at whose direction the service was made

3        Executed on January 9, 2008, at Los Angeles, California.

4

5

6                            David Quintana

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2347614.1                                          Case No. CV 04-9049 SGL (RNBx)
                                                              PROOF OF SERVICE

EXHIBIT _____ 1_____

PAGE _____ 24 _____

# EXHIBIT 2

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 3

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 4

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 5

| | |
|---|---|
| 1 | Robert C. O'Brien (SBN 154372)<br>ARENT FOX LLP |
| 2 | 555 West Fifth Street, 48th Floor<br>Los Angeles, CA  90013-1065 |
| 3 | Telephone:  213.629.7400<br>Facsimile:  213.629.7401 |
| 4 | obrien.robert@arentfox.com |
| 5 | Discovery Master |
| 6 | |
| 7 | |

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10    EASTERN DIVISION

| | | |
|---|---|---|
| 11 | | |
| 12 | CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) |
| 13 | Plaintiff, | |
| 14 | v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15 | MATTEL, INC., a Delaware<br>corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16 | Defendant. | **ORDER NO. 11, REGARDING:** |
| 17 | | |
| 18 | | **(1)  MOTION OF MATTEL, INC.<br>TO COMPEL RESPONSES TO<br>INTERROGATORIES AND** |
| 19 | | **PRODUCTION OF DOCUMENTS<br>BY MGA ENTERTAINMENT, INC.** |
| 20 | | **AND ISAAC LARIAN; and** |
| 21 | | **(2)  MOTION OF MATTEL, INC.<br>TO COMPEL THE DEPOSITIONS** |
| 22 | | **OF PABLO VARGAS AND<br>MARIANA TRUEBA** |
| 23 | | |
| 24 | CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and | |
| 25 | MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | |
| 26 | | |
| 27 | | |
| 28 | | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____168_____

1    This Order sets forth the Discovery Master's ruling on two motions filed by

2  Mattel, Inc. ("Mattel"): (1) a motion to compel responses to interrogatories and

3  production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4  ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5  to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6  (the "Deposition Motion") (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8  March 19, 2009. All interested parties were represented by counsel and afforded

9  the opportunity to present oral argument on the Motions. The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

12  **I.    MATTEL'S WRITTEN DISCOVERY MOTION**

13    In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[1] and provide answers to 12

15  different interrogatories. (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102). Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[2]  (*Id.*, pp. 41 – 43 and 49 – 102).

19    **A.    Document Requests**

20      **1.    Document Requests Propounded On MGA**

21    Document Request Nos. 4 through 37 seek financial information from MGA

22

---

[1] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45). (*Compare* Separate Statement in Support of the Written Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14). Because Mattel has in reality moved to compel responses to Document Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42. Moreover, any reference to a document request relating to MGA in this Order shall refer to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

[2] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____169_____

1    related to sales, revenues, costs, profits, customer returns, customer rebates and

2    customer credits regarding the Bratz Dolls or Bratz Product,[3] as well as documents

3    sufficient to identify customers who purchased any Bratz Product from MGA or its

4    licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5           Document Request Nos. 43, 44 and 46 similarly seek financial information

6    from MGA related to the Bratz product line:

7           • Document Request No. 43 (erroneously numbered in Mattel's Separate

8              Statement as request number 42): "All sales, profit and cash flow

9              projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10             BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

11          • Document Request No. 44 (erroneously numbered in Mattel's Separate

12             Statement as request number 43): "All DOCUMENTS that REFER

13             OR RELATE TO the value of the Bratz brand." (Id.).

14          • Document Request No. 46 (erroneously numbered in Mattel's Separate

15             Statement as request number 45): "All DOCUMENTS that evidence,

16             reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17             fashion doll market, including, without limitation, the extent to which

18             Bratz has been or is gaining or losing market share in the fashion doll

19             market." (Id., p. 14).

20          Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23          • Document Request No. 40: "All DOCUMENTS that describe YOUR

24   _____
[3] Mattel defines the term "Bratz Product" as follows:
25       'Bratz Product' means any product whether two-dimensional or three-dimensional,
         and whether in tangible, digital or electronic or other form:  (i) that is or has ever
26       been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
         line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES
         TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
27       packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists
         of or REFERS OR RELATES TO BRATZ.
28   (Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              - 2 -            ORDER NO. 11
                                                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____170_____

1   cost allocation procedures." (*Id.*, p. 13).

2   • Document Request No. 41: "YOUR general ledgers from January 1,

3   1995 through the present:" (*Id.*).

4   • Document Request No. 45 (erroneously numbered in Mattel's Separate

5   Statement as request number 44): "DOCUMENTS sufficient to

6   calculate YOUR net worth on a yearly basis for each year from 1999

7   to the present." (*Id.*).

8   **2.   Document Requests Propounded On Larian**

9   The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13   each account with any bank or financial institution that YOU have or

14   have had, or that YOU have or have had any legal or beneficial interest

15   in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish

17   YOUR gross income, and the sources of that gross income, for the

18   years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate

20   YOUR net worth on a yearly basis for each year from 1999 to the

21   present." (*Id.*, p. 63).

22   **3.   Phase 1 Rulings**

23   This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue. Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

- 3 -

EXHIBIT      5

PAGE      171

1   the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2          Because the prior discovery master compelled MGA to produce information

3   responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4   Larian to produce information responsive to Document Request Nos. 207, 208 and

5   269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6   Civil Procedure 26 to supplement their prior productions, and (2) that the

7   information the MGA Parties "are withholding is relevant to the damages Mattel

8   seeks," (Written Discovery Motion, pp. 8 – 9).

9                   **4.     Objections Of MGA**

10          In their Opposition, the MGA Parties rely on two grounds for refusing to

11   supplement their prior document productions regarding Document Request Nos. 4 –

12   37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13   failed to meet and confer in good faith. (Opposition, pp. 3 – 5).  Second, the MGA

14   Parties argue that the requested information is not relevant to the claims and

15   defenses at issue in Phase 2. (*Id.*, 5 – 7).

16                   **a.     Purported Failure To Meet And Confer**

17          Because it could dispose of the outstanding discovery issues related to the

18   document requests that are the subject of the present dispute, the Discovery Master

19   first addresses the MGA Parties' argument that Mattel failed to meet and confer

20   properly prior to filing its Written Discovery Motion.

21          The MGA Parties argue that Mattel's motion to compel should be denied

22   because Mattel failed to comply with the meet and confer requirements of Local

23   Rule 37-1. (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24   however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25   discovery disputes in this case.  The applicable meet and confer procedures are set

26   forth in the Court's order appointing a discovery master dated December 6, 2006

27   ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28   Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____

PAGE _____ 172 _____

1    requires that, before filing a motion to compel, the moving party must meet and
2    confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3        Because Rule 37 and the Discovery Master Order govern the meet and confer
4    process in this case, the Discovery Master construes the MGA Parties' meet and
5    confer argument in light of the good faith requirement embedded in Rule 37.  The
6    MGA Parties claim that Mattel did not meet and confer in good faith because its
7    counsel sent them "a meet and confer letter inviting [them] to further meet and
8    confer on February 11, 2009" and then filed a motion to compel one "day before
9    the proposed meet and confer session" was scheduled to occur (i.e., on February 10,
10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2
11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to
12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).
13   However, the record available to the Discovery Master demonstrates that Mattel
14   made several prior attempts to meet and confer with the MGA Parties, including
15   engaging in the following:

16       • On January 6, 2009, Mattel's counsel sent a letter demanding that the
17         MGA Parties supplement their production concerning the document
18         requests by February 1, 2009, (Watson Decl., Ex. 17);

19       • Counsel for the MGA Parties never responded to Mattel's January 6,
20         2009 letter, (Written Discovery Motion, p. 6);

21       • Counsel for Mattel sent counsel for the MGA Parties a second copy of
22         the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23       • Counsel for Mattel and counsel for the MGA Parties then spoke on
24         February 6, 2009, and were supposed to discuss, among other things,
25         the document requests at issue, but counsel for the MGA Parties was
26         not prepared to discuss the requests at the appointed time, (Watson
27         Decl., ¶ 22); and

28       • Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5 _____

PAGE _____ 173 _____

1    9, 2009 to discuss the document requests but counsel for the MGA

2    Parties was still not prepared to discuss the issues, (*Id.*).

3    In light of foregoing facts (which are not disputed by the MGA Parties), it is

4  clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5  plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6  for an order compelling . . . discovery . . . [if] the movant has in good faith

7  conferred or *attempted to confer* with the" the non-moving party."  (Fed. R. Civ. P.

8  37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9  the MGA Parties on at least two occasions (but was unable to do so because the

10  MGA Parties were not prepared to meet and confer during either of the agreed upon

11  times), Mattel satisfied its meet and confer obligations under Rule 37.[4]

12                    **b.      Relevance Of The Document Requests To Phase 2**

13    The MGA Parties also oppose Mattel's demand for a supplemental

14  production on the ground that none of the document requests as issue seek

15  information reasonably calculated to lead to the discovery of admissible evidence.

16  (Opposition, pp. 5 – 7).

17                         **(1)     Document Request Nos. 207, 208 And 269**

18    With respect to the three document requests directed to Larian (i.e.,

19  Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20  not relevant to any Phase 2 claims.  (Opposition, p. 6).

21    Each of the requests seeks information related to Larian's financial condition,

22  Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23  Answer and Counterclaim ("SAAC") are true.  For example, Document Request

24

[4] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the
25  requested information following the filing of the Written Discovery Motion. It is, therefore, unclear what could have
been accomplished by an additional meet and confer on these issues. Moreover, Mattel's counsel stated at oral
26  argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they
still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.
27  68:7-9). Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on
February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery
28  procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -                                ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5

PAGE _____ 174

1   Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2   No. 269) and gross income (Request No. 208). Such information relates to Phase 2

3   damages issues, including, among other things, damages sought against Larian in

4   connection with Mattel's unfair competition cause of action as well as the

5   calculation of Larian's net worth for purposes of litigating the propriety of any

6   "exemplary damages under Cal. Civ. Code § 3294."[5] (SAAC, ¶¶ 163 – 166). It is

7   therefore discoverable.

8      In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9   Mattel's employees for the express purpose of misappropriating Mattel's

10  confidential and proprietary information, and that the MGA Parties promised such

11  individuals increased salaries at MGA. (*See, e.g.,* SAAC, ¶¶ 69 and 77). Mattel's

12  request for documents sufficient to identify Larian's bank accounts (i.e., Request

13  No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14  evidence regarding the source of any payments that may have been made by Larian

15  to former Mattel employees.[6]

16                **(2)   Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                           **46**

18      Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19  37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20  financial information "related to Bratz dolls, which was a Phase 1 issue,"

21  (Opposition, p. 5). Specifically, the MGA parties argue that:

22        [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

24   [5] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he concludes that Larian should not be required to provide updated information concerning his net worth and gross

25   income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase 2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question

26   deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by

27   the verdict rendered in Phase 1 or recent economic conditions.

      [6] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to

28   produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5
PAGE _____ 175

Case 2:04-cv-09049-DOC-RNB   Document 5996-3   Filed 07/22/09   Page 36 of 67   Page ID #:196403

Case 2:04-cv-09049-SGL-RNB    Document 5088    Filed 03/30/2009    Page 9 of 40

1                   related financial information in order to establish its Phase

2                   2 damages ignores the jury's Phase 1 damages award . . . .

3       ·       Mattel sought disgorgement of all Bratz profits during

4                   Phase 1 and the jury made its award.  Mattel may not

5                   relitigate this issue in Phase 2.

6   (*Id.*, p. 6).

7       However, Document Request Nos. 40, 41 and 45[7] make no mention of

8   financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9   (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10   (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11   through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12   net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13   Therefore, MGA's argument does not apply to these document requests.

14       Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15   Separate Statement as request number 44) are further reasonably calculated to lead

16   to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17   the touchstone for determining whether a particular discovery request is reasonably

18   calculated to lead to the discovery of admissible evidence in this case is whether the

19   request bears some relation to the issues to be tried in Phase 2.  That standard is met

20   here, since MGA's general ledgers, net worth, and cost allocation procedures all

21   bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22   damages.

23       As for the remainder of the document requests directed to MGA (i.e.,

24   Document Request Nos. 4 – 37, 43,[8] 44,[9] and 46),[10] they are admittedly linked to

25   [7]  Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26   [8]  Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27   [9]  Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28   [10]  Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     5

PAGE     176

1   financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6          As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[11]

10         Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11  Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12  Separate Statement as request number 43), and 46 (erroneously numbered in

13  Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14  claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15  action, misappropriation of trade secrets claim, and unfair competition cause of

16  action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17  fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18  proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19  163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20  has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21  act[s] or practice[s]" in violation of California Business and Professions Code

22  section 17200 et seq.  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23  misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24  arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25         Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27  [11] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (See
    Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or
28  correct its disclosure or response . . . in a timely manner"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              - 9 -                    ORDER NO. 11
                                                           [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5
PAGE _____ 177

1   Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2   of the purported racketeering activities was the "altering [of] numerous original

3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5   calculated to lead to the discovery of admissible evidence in Phase 2.

6        The Discovery Master cannot predict whether the Court will ultimately

7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9   presenting any evidence that it has been damaged by such misconduct at the Phase

10  2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11  Given that the discovery here need only appear reasonably calculated to lead to the

12  discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13  Master finds that the aforementioned document requests are sufficiently related to

14  Mattel's Phase 2 claims to be discoverable at this time.

15            **5.    Conclusion**

16       For all of the foregoing reasons, Mattel's motion to compel responses to

17  Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18  Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19  **B.    Interrogatories Propounded On MGA And Larian**

20       The second part of Mattel's Written Discovery Motion addresses various

21  interrogatories propounded on the MGA Parties.

22            **1.    Interrogatory No. 45 Propounded On MGA**

23       Interrogatory No. 45 asks MGA[12] to:

24            IDENTIFY each BRATZ PRODUCT that has been

25            SOLD by [MGA] or [its] licensees and, for each such

26

27  [12] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
    Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
28  INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-10-                    ORDER NO. 11
                       [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___178___

1   BRATZ PRODUCT, state . . . (a) the number of units of
2   each such BRATZ PRODUCT SOLD by [MGA] or [its]
3   licensees, (b) the gross and net revenue received by
4   [MGA] from such SALES of each such BRATZ
5   PRODUCT, (c) all costs [MGA] incurred in connection
6   with each such BRATZ PRODUCT, including but not
7   limited to [MGA's] costs of goods sold, and (d) [MGA's]
8   gross and net profits from each such BRATZ PRODUCT.
9   (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*
10   Written Discovery Motion, p. 9).

11              **a.    Phase 1 Rulings**

12       As with the document requests discussed above, Mattel concedes that "MGA
13   identified and produced documents responsive to [Interrogatory No. 45] in
14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written
15   Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to
16   supplement its response" without justification. (*Id.*)

17              **b.    Objections Of MGA**

18       In its Opposition, MGA argues that it does not have to provide the
19   information requested by Interrogatory No. 45 for two reasons. First, it claims that,
20   like the document requests propounded on MGA, "Mattel's entitlement to gross and
21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and
22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."
23   (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually
24   identical to the documents sought by Document Request Nos. 21 (requesting
25   "DOCUMENTS sufficient to show the number of units of each BRATZ
26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS
27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ
28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above.  Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[13]

10      MGA also argues that it should not be required to provide the information

11  requested by Interrogatory No. 45 because it "has already provided information that

12  is current through the second fiscal quarter of 2008" and it would be unduly

13  burdensome to gather the documents necessary to update that information.

14  (Opposition, pp. 7 – 8).  MGA did not argue, however, in its Opposition that it

15  would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16  24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17  documents responsive to those requests and refer Mattel to those materials.  (*See*

18  Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19  examining . . . a party's business records . . . the responding party may answer by

20  specifying the records that must be reviewed . . ."]).

21      The MGA Parties' argument that it is overly burdensome to require MGA to

22  spend 320 hours to inform Mattel of the most recent sales figures concerning the

23  Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

---

25  [13] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
26  enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from
    presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
27  was previously litigated and resolved in Phase 1.  Nevertheless, in light of the fact that the discovery need only
    appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
28  Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable
    at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___5___

PAGE ___180___

1   information requested and the wide-ranging extent of the discovery to date. As

2   explained above, the information sought is relevant to the constructive trust

3   imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4   claims. Also, while 320 hours may be unduly burdensome in certain

5   circumstances, it is not unreasonable on its face here given that the MGA Parties

6   have already produced more than 4 million documents.[14] (*See Cappacchione v.*

7   *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8   ["Requiring a responding party to perform extensive research or to compile

9   substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13                               **c.      Conclusion**

14          For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17          **2.      Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                    **Larian**

19          Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22          •   Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23              MGA has obtained, received, reviewed, copied, reproduced,

24              transmitted, requested, or used at any time since January 1, 1999, and

25              IDENTIFY all PERSONS with knowledge of such facts and all

26              DOCUMENTS that REFER OR RELATE TO such MATTEL

27   _____

28   [14] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand
     (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                  - 13 -                    ORDER NO. 11
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____

PAGE _____ 181 _____

1  DOCUMENTS." (Separate Statement in Support of Written

2  Discovery Motion, p. 49).

3  • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4  OR RELATE TO any MATTEL product or plan that any of the

5  FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6  to, shared with or used on behalf of MGA at any time since January 1,

7  1999, and IDENTIFY all PERSONS with knowledge of such facts."

8  (Id., p. 52).

9  • Interrogatory No. 58: "State all facts which support YOUR

10  contention, if YOU so contend, that YOU and/or MGA did not obtain

11  any MATTEL DOCUMENTS through improper means, and

12  IDENTIFY all PERSONS with knowledge of such facts and all

13  DOCUMENTS that REFER OR RELATE TO such facts." (Id., p.

14  54).

15  • Interrogatory No. 59: "State all facts which support YOUR

16  contention, if YOU so contend, that any information in the MATTEL

17  DOCUMENTS does not and/or did not derive independent economic

18  value from not being generally known to the public or other

19  PERSONS who can obtain economic value from its disclosure or use,

20  and IDENTIFY all PERSONS with knowledge of such facts and all

21  DOCUMENTS that REFER OR RELATE TO such facts." (Id., p.

22  57).

23  • Interrogatory No. 60: "State all facts which support YOUR

24  contention, if YOU so contend, that any information in the MATTEL

25  DOCUMENTS was known to the public or to PERSONS who can

26  obtain economic value from its disclosure or use, and IDENTIFY all

27  PERSONS with knowledge of the foregoing and All DOCUMENTS

28  that REFER OR RELATE TO the foregoing." (Id., p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -                    ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____

PAGE _____ 182 _____

1         •   Interrogatory No. 61: "State all facts which support YOUR

2            contention, if YOU so contend, that YOU and/or MGA independently

3            developed, or did not otherwise use or disclose, any information in the

4            MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5            knowledge of such facts and all DOCUMENTS that REFER OR

6            RELATE TO such facts." (Id., pp. 64 – 65).

7         •   Interrogatory No. 62: "State all facts which support YOUR contention

8            that YOUR use or disclosure of information in the MATTEL

9            DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10          IDENTIFY all PERSONS with knowledge of such facts and all

11          DOCUMENTS that REFER OR RELATE TO such facts." (Id., p.

12          69).

13         •   Interrogatory No. 63: "State all facts which support YOUR

14            contention, if YOU so contend, that YOU and/or MGA had, has or

15            have any right to copy, possess, use or disclose any MATTEL

16            DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17            facts and all DOCUMENTS that REFER OR RELATE TO such

18            facts." (Id., p. 73).

19             **a.**     **Objections Of MGA And Larian**

20       In their Opposition, the MGA Parties rely on four basic grounds for refusing

21 to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22 that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23 – 10). Second, the MGA Parties argue that the interrogatories presuppose facts

24 that are not true. (Id., p. 8). Third, the MGA Parties argue that all 8 interrogatories

25 are impermissibly compound and exceed the number of allotted interrogatories.

26 (Id., pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27 and 62 improperly ask them to establish a negative proposition. (Id., pp. 11 – 12).

28

EXHIBIT_____5_____

PAGE_____183_____

1        **(1)   Unduly Burdensome Objection**

2        The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 –

3   63 is that each of the seven interrogatories that references the term "MATTEL

4   DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome.

5   (Opposition, p. 9 – 10). While the MGA Parties do concede that the interrogatories

6   "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because

7   they claim that the interrogatories require them "to state all facts, identify all

8   documents and identify all witnesses, supporting contentions for over 8 boxes of

9   documents . . ." (Opposition, pp. 9 – 10). Whether an undue burden exists,

10  however, depends on, among other things, the value of the information sought

11  versus the burden alleged by the responding party. (*See King v. Georgia Power

12  Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer

13  will be time-consuming, and probably costly, the information is crucial to the issues

14  of this suit, and is in the exclusive custody of the defendant."]).

15       Applying this test here, the Discovery Master finds that Interrogatory Nos.

16  56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2

17  trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal

18  importance. We're asking for . . . their core contentions related to the trade secret

19  claims."]). As the Discovery Master has previously explained, the issues to be

20  litigated in Phase 2 include, among other things, Mattel's claim that the MGA

21  Parties stole "a vast array of trade secrets and other confidential information that

22  comprise Mattel's intellectual infrastructure," including, among other things,

23  stealing "Mattel's proprietary business methods, practices and information."

24  (SAAC, ¶ 20). Indeed, Mattel alleges in its SAAC that the MGA Parties:

25       • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

26         employees to steal Mattel's confidential information or other property

27         and take it with them to MGA," (*Id.*, ¶ 5);

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -                              ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___184___

1    • stole "Mattel's plans, strategy and business information for the

2         Mexican market and materials related to Mattel's worldwide business

3         strategies," (*Id.*, ¶ 37);

4    • "directed [certain Mattel employees'] to steal virtually all Mattel

5         confidential and proprietary information that they could access and

6         bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7         type of document a competitor would need to enter the Mexican

8         market, and to unlawfully compete with Mattel in Mexico, in the

9         United States and elsewhere . . ." (*Id.*, ¶ 48);

10   • "targeted certain Mattel employees who have broad access to Mattel

11        proprietary information in an effort to induce and encourage them to

12        join MGA and to steal or otherwise wrongfully misappropriate Mattel

13        confidential information and trade secrets," including by "promising

14        these employees salaries 25 percent or more higher than they earn at

15        Mattel and stating to them that they should not be concerned by legal

16        action taken by Mattel to protect its trade secrets and its rights because

17        such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18   • "hired directly from Mattel's United States operations at least 25

19        employees, from Senior Vice-President level to lower level

20        employees," and that some of these individuals misappropriated

21        "Mattel confidential and proprietary information, including Mattel's

22        strategic plans; business operations; methods and systems; marketing

23        and advertising strategies and plans; future product lines; product

24        profit margins, and customer requirements." (*Id.*, ¶ 77).

25        Therefore, this is not a situation where Mattel has alleged that the MGA

26   Parties stole a handful of documents. The SAAC instead alleges that the MGA

27   Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28   "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 17 -                    ORDER NO. 11
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT        5

PAGE           185

1  market, and to unlawfully compete with Mattel in Mexico, in the United States and
2  elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA
3  Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-
4  19), including all of the documents that have been identified as the MATTEL
5  DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are
6  regarding whether or not those documents constitute trade secrets, particularly
7  given that such information is exclusively within the control of the MGA Parties.
8  As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial
9  accusing MGA and the other defendants of stealing all of these documents . . . and
10  [the MGA Parties are] going to have to articulate what their contentions are with
11  respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*
12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that
13  Mattel is going to be proceeding to trial on."]).

14      Also, the MGA Parties' claim of undue burden does not take into account the
15  vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel
16  propounded 4,647 requests for admission, 2,889 requests for production, and 71
17  interrogatories in Phase 1]). The MGA Parties do not provide any supporting
18  declaration or specific evidence to support their assertion of burden beyond their
19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.
20  For example, the MGA Parties have not provided the Discovery Master with details
21  regarding: (1) a time estimate as to how long it would take to respond to the
22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the
23  extent to which any facts that must be set forth in answering the Interrogatories are
24  voluminous; or (4) an estimate of the number of documents and/or persons that may
25  have knowledge of such responsive facts. Therefore, the Discovery Master finds
26  that the MGA Parties have not met their burden of demonstrating that answering
27  //
28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5
PAGE _____ 186

1    the requested interrogatories is overly burdensome.[15] (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6            While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory. The Discovery Master, thus, limits six of the interrogatories at

13   issue[16] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25           The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [15] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their
     position on this issue. (Opposition, pp. 9 – 10).

28   [16] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5
PAGE _____ 187

1    conceded in its Reply that it was not asking the MGA Parties "to provide

2    facts they have no knowledge of," [17] (Reply, p. 17), but rather wanted to assess the

3    "specific contentions Defendants may make regarding the [allegedly] stolen

4    documents," (*id.*, p. 17).  Mattel's counsel reiterated this position again at oral

5    argument, wherein he declared that Mattel was not necessarily interested in "a

6    parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7    Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8                      **(2)     Purported Presuppositions Regarding**

9                             **Interrogatory Nos. 56 and 58 – 63.**

10       The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11   objectionable because they require the MGA Parties to presuppose that they are "in

12   possession of documents stolen or taken from Mattel by former employees – a fact

13   that MGA denies." (Opposition, p. 8).  The MGA Parties further assert that "each

14   of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15   Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16   assertions . . . which make the interrogatories unanswerable and incomprehensible."

17   (*Id.*, p. 9).  However, the MGA Parties cite no legal authority, and the Discovery

18   Master has found none, standing for the proposition that a party may refuse to

19   respond to an interrogatory merely because the interrogatory assumes a fact the

20   responding party disputes.

21                         **(3)     Compound And Excessive Objections**

22       The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23   impermissibly compound and exceed the allotted number of interrogatories.

24   (Opposition, pp. 10 and 11).  Each of these contentions is unavailing.

25       As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

---

26   [17] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
27   judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
     information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
     its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
28   . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 5

PAGE _____ 188

1    and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2    the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3    Therefore, the MGA Parities waived any such objections to those interrogatories.

4    (See, e.g., Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th

5    Cir. 1992) [stating that "failure to object to discovery requests within the time

6    period required constitutes a waiver of any objection."]).

7        As for the interrogatories where the objections were asserted, the MGA

8    Parties have not demonstrated that the interrogatories are compound or exceed the

9    allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10   and documents related to the MATTEL DOCUMENTS does not render the

11   interrogatories compound because the questions in each interrogatory refer to one

12   common theme and count as a single interrogatory.  (See Swackhammer v. Sprint

13   Corp. PCS, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14   subparts directed at eliciting details concerning a 'common theme' should generally

15   be considered a single question"]).  The prior discovery master applied this precise

16   rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17   supporting a contention, the identity of persons with knowledge, and documents are

18   not counted separately for the purposes of applying the . . . interrogatory limit."

19   (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                    (4)    Establishing A Negative Proposition Objection

21        As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22   Parties assert that three of the interrogatories improperly ask them to establish a

23   negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24   12).  The relevant question, however, is not whether an interrogatory may require a

25   party to prove a negative.  Rather, all of the cases cited by the parties concerning

26   this issue examine whether the interrogatory in question imposes an unreasonable

27   //

28   //

EXHIBIT      5

PAGE      189

1   burden on the responding party.[18]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

4                        b.    **Conclusion**

5        For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

8            **3.    Interrogatory Nos. 67 – 69 Propounded On MGA And**

9                 **Larian**

10       Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

14       •   Interrogatory No. 67: "IDENTIFY fully and separately each and every

15            payment of money or other item of value that YOU have made or

16            given, or any promise, agreement, proposal [o]r offer by YOU to pay

17            money or given any item of value, to or on behalf of any PERSON

18            identified in any of the parties' initial disclosures in this ACTION at

19            any time when such person was not an employee of MGA, including

20            without limitation with respect to legal fees incurred by or on behalf of

21            such PERSON."  (Separate Statement in Support of Written Discovery

22            Motion, p. 88).

23       •   Interrogatory No. 68: "To the extent not disclosed in prior

24 ────────────────────────────────

[18] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -
25  448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both
     address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases
26  cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding
     that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]; *Tennison*
27  *v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all
     facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,
28  2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

EXHIBIT         5
PAGE            190

1   Interrogatories, IDENTIFY fully and separately each and every
2   payment of money or other item of value that MGA has made, or any
3   promise, agreement, proposal or offer by MGA to pay money or given
4   any item of value, to or on behalf of any of the FORMER MATTEL
5   EMPLOYEES, including without limitation with respect to legal fees
6   incurred by or on behalf of any of the FORMER MATTEL
7   EMPLOYEES." (*Id.*, p. 91).

8   • Interrogatory No. 69: "To the extent not disclosed in prior
9   Interrogatories, IDENTIFY fully and separately each and every
10   payment of money or other item of value that YOU have made, or any
11   promise, agreement, proposal or offer by YOU to pay money or given
12   any item of value, since January 1, 1998 to or on behalf of any
13   PERSON who has been employed by MATTEL (excluding ordinary
14   salary and benefits paid to such PERSON while an MGA employee),
15   including without limitation with respect to legal fees incurred by or
16   on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,
17   p. 92).

18   **a.    Objections Of MGA And Larian**

19   In their Opposition, the MGA Parties rely on two basic grounds for refusing
20   to provide responses to these three interrogatories. First, the MGA Parties argue
21   that the interrogatories are impermissibly compound and exceed the number of
22   allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that
23   interrogatories are overly broad. (*Id.*, pp. 12 – 14).

24   **(1)    Compound And Excessive Objections**

25   Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend
26   that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the
27   allotted number of interrogatories. (Opposition, pp. 10 and 11). But those
28   arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -
ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
PAGE 191

1     **(2)    Overly Broad Objection**

2         The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is

3     that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is

4     overbroad because it seeks information regarding payments by MGA to any persons

5     identified in the initial disclosures, not just former Mattel employees. (Opposition,

6     pp. 12 – 13).

7         While a payment to a potential witness could be relevant to the issue of bias

8     and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281,

9     283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which

10    may simply relate to the credibility of a witness or other evidence in the case."]),

11    the SAAC merely alleges that the MGA Parties bribed former Mattel employees —

12    not every single witness in this case. In the absence of an allegation suggesting that

13    other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not

14    relevant at this time.[19] Accordingly, Mattel's motion to compel a response to

15    Interrogatory No. 67 is denied at this stage.

16        As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the

17    "burden and expense of determining whether each individual contemplated by these

18    interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely

19    benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no

20    evidence to support such a claim. (*See Jackson,* 173 F.R.D. at 528-9 ["The party

21    claiming that a discovery request is unduly burdensome must allege specific facts

22    which indicate the nature and extent of the burden, usually by affidavit or other

23    reliable evidence."]).

24        The MGA Parties only remaining complaint is that Interrogatory No. 69

25    seeks information regarding payments to "or on behalf of" any person who has been

26    [19] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties'
27    initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent
      Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the
28    Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any
      payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ANENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___192___

1  employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL
2  EMPLOYEES as including specific individuals as well as each such person's
3  "current or former employees, agents, representatives, attorneys, accountants,
4  vendors, consultants, independent contractors, predecessors-in-interest and
5  successors-in-interest, and any other Person acting on [his or her] behalf, pursuant
6  to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).
7  While they assert these definitional objections, counsel for the MGA Parties
8  nevertheless conceded at oral argument that to the extent "MGA paid . . . former
9  Mattel employees, for other than their salary as MGA employees, I think that is a
10  fair inquiry." (Tr., 63:17-20; id., 61:21 - 64:4).

11  Therefore, the Discovery Master orders the MGA Parties to identify fully and
12  separately each and every payment of money or other item of value that they have
13  made or offered to pay to or on behalf of any "former employee of Mattel" since
14  January 1, 1998 but limits the definition of former Mattel employees to "all
15  individuals that the MGA Parties are aware of that worked for Mattel and who
16  received any payment (excluding ordinary salary and benefits paid to such person
17  while an MGA employee) from the MGA Parties."[20]

18  **b.    Conclusion**

19  For all of the foregoing reasons, Mattel's motion to compel is denied with
20  respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's
21  motion to compel responses to the interrogatories is granted, subject to the
22  limitations discussed above.

23  **C.    Summary Of Ruling Regarding The Written Discovery Motion**
24  Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**
25  **part**.

26
27  [20] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a request is improper for that specific reason, but instead merely relied on the definitional argument discussed above. Accordingly, the Discovery Master does not need to resolve that particular issue.
28

EXHIBIT    5
PAGE    193

1   ## II.   MATTEL'S DEPOSITION MOTION

2   ### A.   Introduction

3   As indicated above, the Deposition Motion addresses the motion of Mattel to

4   compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba

5   Almada ("Trueba") (collectively, the "Witnesses").

6   #### 1.   Background

7   The Witnesses are former employees of Mattel in Mexico[21] who, along with

8   another former Mattel manager and named defendant, Carlos Gustavo Machado

9   Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico

10   operation, defendant MGA De Mexico ("MGA Mex"), in 2004. Mattel alleges that

11   Machado and the Witnesses stole Mattel trade secrets.

12   The Witnesses are Mexican nationals who reside in Mexico, where MGA

13   Mex has its principal place of business. Vargas currently serves as the Director of

14   Sales for MGA Mex. In that capacity, he supervises approximately 8 or 9

15   employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of

16   MGA Mex. Trueba currently serves as the Marketing Manager of Special Projects

17   for MGA Mex. She does not manage or supervise any employees of MGA Mex.

18   Trueba reports directly to Machado, who is MGA Mex's Director of Marketing.

19   Machado, in turn, reports to Kuemmerle.

20   #### 2.   Procedural History

21   On January 10, 2008, Mattel served deposition notices pursuant to Federal

22   Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for

23   January 24, 2008 in Los Angeles. In response, MGA and its affiliated parties to

24   this action (the "MGA Defendants") asserted that neither of the Witnesses is a

25   "managing agent," and therefore Mattel must subpoena the Witnesses. On

26   January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

27

28   [21] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    5

PAGE    194

1    the Witnesses (as well as others).  Mattel's application was stayed with other Phase

2    2 discovery and then denied without prejudice on September 23, 2008.  After the

3    Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4    depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5    Once again, the MGA Defendants objected on the ground that neither of the

6    Witnesses is an officer, director or managing agent of MGA Mex.  After the parties

7    were unable to resolve their dispute, Mattel filed the Deposition Motion.

8            **B.     Discussion**

9            Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles.  Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights.  In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico.  The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[22]  According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24           **1.     Legal Standard**

25           If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27   _____

28   [22] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including
     MGA Mex.

EXHIBIT _____5_____

PAGE _____195_____

1    managing agent to be deposed and noticing that person's deposition under Rule

2    30(b)(1). Notice alone is enough to compel the managing agent to attend the

3    deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4    *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of

5    compelling a corporate officer's deposition, courts do not recognize a distinction

6    between an "apex" official or director and other high corporate officials. (*Resort*

7    *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8    Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9    ["There is slight warrant for the present distinction between officers and managing

10    agents on the one hand and directors on the other."]).

11       The case law provides somewhat ambiguous guidance with respect to the

12    burden of proof for demonstrating managing agent status. Generally, the burden is

13    on the discovering party to establish the status of the witness. (See *Sugarhill*

14    *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15    *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same

16    time, however (and as Mattel points out in its papers), courts resolve doubts in

17    favor of the examining party, at least during the discovery phase. (See *Sugarhill*,

18    105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19    (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of

20    providing enough evidence to show that it is at least a close question whether the

21    proposed deponent is a managing agent." (*United States of America v. Afram Lines*

22    *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23       The identification of a managing agent in any given case is fact-sensitive.

24    "[B]ecause of the vast variety of factual circumstances to which the concept must

25    be applied, the standard . . . remains a functional one to be determined largely on a

26    case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27    *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the

28    question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-28-

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____196_____

1    pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2    C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3    citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)). Whether a

4    proposed deponent falls into a particular category of employee or agent is therefore

5    less relevant than the individual's specific functions and authority.

6        As both parties acknowledge, federal courts have formulated a set of factors

7    to assist in determining whether person is a party's "managing agent," and therefore

8    subject to deposition under Rule 30(b)(1):

9        1)    whether the individual is invested with general powers allowing him to

10             exercise judgment and discretion in corporate matters;

11       2)    whether the individual can be relied upon to give testimony, at his

12             employer's request, in response to the demands of the examining

13             party;

14       3)    whether any person or persons are employed by the corporate

15             employer in positions of higher authority than the individual

16             designated in the area regarding which the information is sought by the

17             examination;

18       4)    the general responsibilities of the individual "respecting the matters

19             involved in the litigation;" and

20       5)    whether the individual can be expected to identify with the interests of

21             the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23       According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)). Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -                ORDER NO. 11
                     [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5

PAGE _____ 197

1    day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),
2    the Witnesses are managing agents of MGA Mex.

3         Mattel's emphasis on the employee's loyalty as the main test for determining
4    his or her status is unwarranted. Federal courts have effectively challenged the
5    notion that the employee's loyalty to the employer is entitled to special weight.
6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the
7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .
8    apparent fidelity to the principal's interests, because it would apply to many agents
9    and employees who do not function with the degree of authority over a company's
10   affairs connoted by the term 'managing' agent." (*Id.*, at 350). Moreover, the
11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a
12   rationale that no longer applies. Specifically, the court traced the rule to *Newark*
13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the
14   analytical underpinning of the "loyalty" factor.

15        In that case, the court was concerned with the evidentiary problem facing a
16   litigant seeking to obtain and use the testimony of an adversary corporation's most
17   senior employees. Under the then-existing rule, a litigant could not call such an
18   employee to testify at trial in his or her individual capacity without waiving the
19   right to impeach the witness. This presented a problem for the party seeking to
20   elicit the testimony, because, as the court reasoned, a corporation's ranking
21   employee having possession of pertinent information will always "give his
22   testimony in the light most favorable to the principal," but would, at the same time,
23   be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that
24   an adversary should be able to obtain such testimony from the employee in his or
25   her capacity as the representative of the corporation (who could, therefore, be
26   subject to impeachment).

27        However, as the court in *Libbey Glass* noted, the concerns expressed in
28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5

PAGE _____ 198

1    ("Rule 607").[23]  Under that rule, a party may take the deposition of a senior

2    employee of an adversary corporation in his individual capacity and may

3    nonetheless still seek to impeach that testimony.  In other words, characterizing a

4    particular witness as a "managing agent" no longer provides any substantive

5    advantage to the deposing party, only procedural advantages (i.e., the ability to take

6    the deposition without a subpoena).

7        Having discarded the notion that the witness' loyalty to his employer is the

8    main factor to be considered in ascertaining his status as a managing agent, the

9    court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10   behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11   197 F.R.D. at 350).  The court reasoned:

12            For the purpose of determining whether an individual is a

13            'managing agent' within the meaning of the discovery rules, the

14            alter ego theory provides a useful analogy.  As in the arena of

15            corporate liability, the focus begins with the character of the

16            individual's control.  In addition, we can profitably examine both

17            the degree to which the interests of the individual and the

18            corporation converge, and how helpful the individual will be in

19            fact finding on the matter at issue, in comparison to others

20            associated with the corporation.  As in all matters appertaining to

21            discovery, it is the ends of justice that are to be served.

22   (*Id.,* quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23   802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24   analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25   practical and well-reasoned test for determining whether the Witnesses are

26   managing agents of MGA Mex, and applies that test below.

27   _____

28   [23] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the
     witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                      - 31 -                    ORDER NO. 11
                                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT          5

PAGE          199

1          **2.**    **Analysis Of The Witnesses' Job Functions And Managerial**

2                 **Authority**

3               **a.**    **The Nature Of The Witnesses' Activities On Behalf**

4                     **Of, And Control Over, MGA Mex.**

5     In accordance with the approach outlined in *Libbey Glass*, the Discovery

6 Master begins his analysis by examining the Witnesses' activities on behalf of, and

7 managerial control over the operations of, MGA Mex.

8     Mattel relies heavily on documentary evidence regarding the role of

9 Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10 Master finds that this evidence, which is limited to events that occurred five years

11 ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12 and authority.[24] The only evidence presented by the parties concerning the

13 Witnesses' current role in the company is the testimony of Kuemmerle. That

14 testimony derives from three sources: (1) her declaration filed on February 27,

15 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16 deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17 Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18 Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19     The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20 states in its entirety:

21         All of the day to day operations of MGA Mexico are managed

22         locally in Mexico.  For example, MGA Mexico's Finance

23         Director, Sales Director and Marketing Director are all based in

24         Mexico and all of the marketing and finance functions are

25         handled in Mexico.

26 (First Kuemmerle Decl., ¶ 6).

27

---

28  [24] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this
question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now." (Tr., 21:14-16).

EXHIBIT _____ 5

PAGE _____ 200

1    There are two main excerpts from Kuemmerle's deposition transcript cited

2    by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3    pricing for the products sold by MGA Mex is set by means of a "combined team

4    effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5    p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[25] Kuemmerle testifies that these

6    individuals (which apparently include the Witnesses) continue to set the pricing of

7    MGA Mex products in the same manner to this day. (Id.).

8    Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9    testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10   tight of a group, not enough employees, that we were all forced to multitask."

11   (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12   In her second declaration, Kuemmerle testifies regarding the chain of

13   command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14   her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15   (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16   functions performed by, or general authority exercised by, either of the Witnesses.

17   Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18   all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19   supervises anyone. (Id., ¶ 3).

20   In the absence of any evidence directly addressing the Witnesses' current

21   role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22   managing agents based on the Witnesses' job titles and past participation in the

23   "tight group" that made operational decisions for the fledgling company several

24   years ago. However, such an inference is not supported by the scant evidence

25   before the Discovery Master. For instance, the Discovery Master cannot attribute

26

27   [25] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel
is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and
Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9

28   to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-33-

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT          5

PAGE          201

1  such status to Trueba, who supervises no employees, and whose scope of
2  responsibility is circumscribed to public relations.[26]

3      Likewise, although Mattel emphasizes that Vargas supervises approximately
4  8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,
5  p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the
6  necessary context by identifying the number of total MGA Mex employees. If, for
7  instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9
8  employees would tend to indicate he does not have such authority.[27] Because the
9  necessary contextual information is not provided, the Discovery Master is unable to
10 assess the significance (if any) of the evidence that is provided regarding Vargas'
11 current role at MGA Mex.

12     In sum, the evidence currently before the Discovery Master is insufficient to
13 allow him to determine that the Witnesses' functions on behalf of, and control over,
14 MGA Mex is such that they can be deemed its "managing agents."

### b.    Other Factors

16     Since there is virtually no evidence addressing the critical factor governing
17 whether the Witnesses are managing agents of their employer (see Section II.B.2.a,
18 above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,
19 at best. Even if all those factors were satisfied – which they are not – the record
20 would still be insufficient to enforce the deposition notices at issue here. However,
21 in order to create a complete record and to address the arguments made by the
22 parties, the Discovery Master nonetheless briefly discusses those factors below.

23     As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

24 [26] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she
25 submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to
   dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing." (Deposition
26 Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

27 [27] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 –
   16), but there is no admissible evidence before the Discovery Master to support such an assertion. Further, such a
28 contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees
   at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     5
PAGE     202

1  on the issue of whether an employee is a managing agent is whether he or she "is
2  invested with *general* powers allowing him to exercise judgment and discretion in
3  corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the
4  current scope of Trueba's authority appears to be the opposite of "general:" she is
5  responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15
6  attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat
7  broader than that of Trueba, appears to be confined primarily to sales. (Second
8  Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any
9  authority over such things as internal administrative functions, budgeting, contracts
10  with vendors, and various other aspects of running a business.

11     The second *Sugarhill* factor (whether the individual can be relied upon to
12  give testimony at the employer's request) is satisfied, since the Witnesses are
13  current employees of MGA Mex who will presumably cooperate in their
14  employer's defense of Mattel's counterclaims by providing testimony at a
15  deposition.

16     Turning to the third *Sugarhill* factor (whether there are other MGA Mex
17  employees in positions of higher authority than the Witnesses in the area regarding
18  which the information is sought), the Discovery Master finds that the undisputed
19  testimony of Kuemmerle demonstrates that there are such MGA Mex employees:
20  Kuemmerle supervises Vargas and (through Machado) Trueba. (Second
21  Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that
22  the Witnesses are "managing agents."

23     With respect to fourth factor (the general responsibilities of the Witnesses
24  respecting the matters involved in the litigation), Mattel's papers demonstrate that
25  the Witnesses do oversee aspects of MGA Mex which are directly addressed by
26  Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel
27  contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition
28  Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

EXHIBIT _____ 5

PAGE _____ 263

1  Witnesses to be managing agents.

2      The last factor is the "loyalty" inquiry discussed above, namely whether the
3  Witnesses can be expected to identify with the interests of MGA Mex.  Because
4  they are being subjected to investigation in Mexico, have their own lawyers and the
5  MGA Defendants may take the position that if any Mattel documents were taken,
6  the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily
7  align with the MGA Defendants in this matter.  It is unclear on this record whether
8  this factor weighs in favor of or against deeming the Witnesses to be managing
9  agents.

10      C.     Summary Of The Discovery Master's Findings In Connection
11             With The Deposition Motion

12      At this stage, Mattel has not met its initial burden to demonstrate that the
13  Witnesses are managing agents of MGA Mex.  The presumption in favor of the
14  party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.
15  (*Honda*, 168 F.R.D. at 540).  Given the current state of the evidence presented, this
16  is not such a case.[28]

17      Nevertheless, it is clear to the Discovery Master that the Witnesses have
18  information relating to several Phase 2 issues and that Mattel is entitled to take their
19  depositions.[29]  Accordingly, Mattel may promptly prepare letters rogatory and
20  submit them to the Discovery Master, who will see that the letters rogatory are
21  expeditiously issued by the Court.

22      D.     Sanctions

23             1.     Mattel's Request For Sanctions

24      Having found that the MGA Defendants have articulated a meritorious legal

---

[28] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[29] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities.  However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

EXHIBIT 5
PAGE 204

1   and factual basis for their objections to the subject deposition notices, the Discovery

2   Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3   was justified. Accordingly, Mattel's request for sanctions is **DENIED.**

4                **2.**     **The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6   conduct related to Mattel's service of the Deposition Motion. First, the MGA

7   Defendants contend that Mattel should have served the Deposition Motion on

8   Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9   counsel had been communicating regarding the subject depositions. The MGA

10   Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11   on Kahn's colleague, Glaser, while the latter was out of town. However, the MGA

12   Defendants do not explain why other attorneys in their office who were assigned to

13   the matter were not notified of the delivery of the Deposition Motion given Ms.

14   Glaser's absence. Further, Mattel has submitted the declaration of its counsel,

15   Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16   served the Deposition Motion on all three law firms representing the MGA

17   Defendants at the same time (February 6, 2009) that the motion was filed. (See

18   Suppl. Zeller Decl., Exh. E).

19        Second, the MGA Defendants argue that Mattel only served a redacted

20   version of the Deposition Motion on them at some later point, leaving them only

21   two days to draft and file opposing papers, and refused Kahn's request for a

22   reasonable extension of time. (Kahn Decl., ¶¶ 3 - 4). However, the Kahn Decl. is

23   vague regarding the date and manner in which Mattel is alleged to have belatedly

24   served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25   Master is unable to ascertain whether Kahn's belated receipt of the motion was

26   caused by some conduct of Mattel, or instead, caused by internal delays within

27   Glaser Weil in routing the papers to the appropriate attorney.

28        Accordingly, the MGA Defendants' request for sanctions is **DENIED.**

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___205___

**III.    DISPOSITION**

     A.     Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

         1.     Document Request Nos. 207, 208 and 269 directed to Larian: The Motion is **GRANTED.**

         2.     Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA: The Motion is **GRANTED.**

         3.     Interrogatory No. 45 directed to MGA: The Motion is **GRANTED.**

         4.     Interrogatory Nos. 56 – 63 directed to MGA and Larian:

             a.     The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

             b.     Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations: The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL documents did not derive independent economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use of the information in the MATTEL DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5
PAGE _____ 266

1   Parties had or have a right to copy, possess, use or disclose any MATTEL

2   DOCUMENT (Interrogatory No. 63).

3           5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

4   is **DENIED**.

5           6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

6   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

7   Parties are ordered to identify fully and separately each and every payment of

8   money or other item of value that they have made or offered to pay to or on behalf

9   of any former employee of Mattel since January 1, 1998, with the definition of

10  former Mattel employees re-defined as "all individuals that the MGA Parties are

11  aware of that worked for Mattel and who received any payment (excluding ordinary

12  salary and benefits paid to such person while an MGA employee) from the MGA

13  Parties."

14      **B.**     Mattel's Deposition Motion:

15          1.      Mattel's Deposition Motion is **DENIED**.

16          2.      Mattel's request for sanctions is **DENIED**.

17          3.      The MGA Defendants' request for sanctions is **DENIED**.

18

19  Dated:  March 30, 2009

20

21                          By:      /s/ Robert C. O'Brien

22                                   ROBERT C. O'BRIEN
                                     Discovery Master
23

24

25

26

27

28

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___207___