# EXHIBIT 20

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 21

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 22

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 23

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 25

3589

1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4                           - - -

5         HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                           - - -

7   MATTEL, INC.,                      )
                                       )
8                        PLAINTIFF,    )
                                       )
9              VS.                     )   NO. CV 04-09049
                                       )
10  MGA ENTERTAINMENT, INC., ET. AL.,  )
                                       )
11                     DEFENDANTS.     )   TRIAL DAY 17
                                       )   AFTERNOON SESSION
12  AND CONSOLIDATED ACTIONS,          )   PAGES 3589-3689
                                       )

13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                 TUESDAY, JUNE 24, 2008

18                        2:55 P.M.

19

20

21

22

23                  THERESA A. LANZA, RPR, CSR
                 FEDERAL OFFICIAL COURT REPORTER
24                 3470 12TH STREET, RM. 134
                 RIVERSIDE, CALIFORNIA   92501
25                      951-274-0844
                   WWW.THERESALANZA.COM

**CERTIFIED COPY**

TUESDAY, JUNE 24, 2008    EXHIBIT___25___   TRIAL DAY 17, AFTERNOON SESSION

PAGE___330___

3590

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                         QUINN EMANUEL
 4                       BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                         865 S. FIGUEROA STREET,
 7                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
12                             JASON RUSSELL
                               RAOUL SLOAN
13                             LAUREN AGUIAR
                               CARL ROTH
14                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
15                       213-687-5000

16

17   ON BEHALF OF THIRD-PARTY DEFENDANT PETER MARLOW:

18                       LAW OFFICE OF STEVEN M. GOLDSOBEL
                         BY:   STEVEN M. GOLDSOBEL
19                       1900 AVENUE OF THE STARS
                         SUITE 1800
20                       LOS ANGELES, CA  90067
                         310-552-4848
21

22

23

24

25
```

TUESDAY, JUNE 24, 2008   EXHIBIT ____25____   TRIAL DAY 17, AFTERNOON SESSION

PAGE ____331____

3591

1                          I N D E X

2                                                    PAGE

3    DEFENSE CASE (CONTINUED)......................... 3592

4    PLAINTIFF WITNESS................................ 3619

5

6    DEFENSE
     WITNESS           DIRECT      CROSS     REDIRECT      RECROSS
7    JACQUELINE PRINCE (VIA VIDEO DEPOSITION)

8    BY MR. ZELLER    3592

9

10   PLAINTIFF
     WITNESS           DIRECT      CROSS     REDIRECT      RECROSS
11   PETER MARLOW

12   BY MR. ZELLER     3619
     BY MS. AGUIAR                 3658
13

14

15
             EXHIBITS          RECEIVED
16
               61               3618
17             62               3618
             5723 (PP. 1,2)     3632
18           10034              3678

19

20

21

22

23

24

25

TUESDAY, JUNE 24, 2008   EXHIBIT ____ 25 ____   TRIAL DAY 17, AFTERNOON SESSION

PAGE ____ 332 ____

1   BY MR. ZELLER:

2   Q    MR. MARLOW, PLEASE TELL US, GENERALLY SPEAKING, WHAT IS

3   THIS DOCUMENT?

4   A    IT WAS A RECORD KEPT BY -- I BELIEVE BY PEDRO SALAZAR OR

5   MARIA ELANA SALAZAR, REGARDING WORK THAT WAS DONE BY ONE OR          03:46

6   BOTH OF THOSE PARTIES DURING THE PERIOD OF 10-13 TO 10-23-2000.

7   Q    THE TIME CARD REFLECTS THE NAME OF MARIA ELANA SALAZAR.

8   A    YES.

9   Q    AND YOU DON'T HAVE ANY REASON TO DOUBT THAT SOME OR ALL OF

10  THIS TIME WAS TIME ACTUALLY PERFORMED OR EXPENDED BY                 03:46

11  MARIA SALAZAR ON THE BRATZ PROJECT IN THOSE TIMES IN OCTOBER OF

12  2000; IS THAT TRUE?

13  A    THAT'S TRUE.

14  Q    THIS IS BASICALLY A TIMEKEEPING RECORD OF THE HOURS THAT

15  SHE SPENT ON THE BRATZ PROJECT BACK IN OCTOBER OF 2000.             03:47

16  A    YES.

17  Q    AND THIS IS THE TIME CARD THAT RELATES TO SOME OF THAT

18  WORK THAT WAS ON THAT INVOICE, EXHIBIT 606, THAT YOU SENT TO

19  MGA FOR SERVICES PRIOR TO OCTOBER 20, 2000.

20  A    CORRECT.                                                        03:47

21  Q    AND I THINK IN TOTAL, IT SHOWS ABOUT 70 HOURS BEING DONE.

22        DO YOU HAVE ANY REASON TO DOUBT THAT WAS A CORRECT

23  FIGURE OF ABOUT THE AMOUNT OF TIME THAT SHE SPENT ON BRATZ?

24  A    IT LOOKS RIGHT.

25  Q    IN OTHER WORDS, YOU DON'T HAVE ANY REASON TO DOUBT THE          03:47

3634

1   TRUTH OR ACCURACY OF THIS; RIGHT?

2   A      CORRECT.

3   Q      IN FACT, YOU'LL SEE THAT THERE'S A REFERENCE HERE.   IT

4   SAYS "INVOICE G-000626" AT THE BOTTOM.

5   A      RIGHT.                                                          03:47

6   Q      THAT CORRESPONDS TO AN INVOICE NUMBER ON THAT EXHIBIT 606

7   THAT YOU SENT TO MGA THAT WE JUST TALKED ABOUT.

8   A      RIGHT.

9   Q      THE SERVICES THAT MS. SALAZAR PROVIDED ON BRATZ WHEN SHE

10  WAS A MATTEL EMPLOYEE WAS SOMETHING THAT WAS CALLED "SAMPLE          03:48

11  MAKING."

12  A      RIGHT.

13  Q      AND THAT'S BASICALLY MAKING DOLL CLOTHES; RIGHT?

14          MS. AGUIAR:   OBJECTION.   LACK OF FOUNDATION.

15          THE COURT:   SUSTAINED.                                       03:48

16  BY MR. ZELLER:

17  Q      PLEASE TELL US WHAT SAMPLE MAKING IS.

18  A      SEWING THE PIECES TOGETHER TO MAKE THE DOLL CLOTHES.

19  Q      ISN'T IT TRUE THAT MS. SALAZAR WAS PAID FOR THIS WORK THAT

20  SHE DID ON BRATZ WHEN SHE WAS A MATTEL EMPLOYEE?                     03:48

21  A      YES.

22  Q      AND MGA REIMBURSED YOU AND VERONICA MARLOW FOR THOSE

23  PAYMENTS MADE TO MS. SALAZAR FOR HER WORK ON BRATZ WHEN SHE WAS

24  A MATTEL EMPLOYEE; IS THAT TRUE?

25  A      YES.                                                           03:49

TUESDAY, JUNE 24, 2008   EXHIBIT _____ 25 _____   TRIAL DAY 17, AFTERNOON SESSION

PAGE _____ 334

1    Q    AND AT SOME POINT AFTER MS. SALAZAR WAS A MATTEL EMPLOYEE,

2    MS. SALAZAR GOT A JOB AS AN MGA EMPLOYEE; IS THAT TRUE?

3    A    YES.

4    Q    AND THAT WAS BACK IN 2003 WHEN SHE BECAME AN MGA EMPLOYEE?

5              MS. AGUIAR:  OBJECTION.  RELEVANCE; 403.                    03:49

6              THE COURT:  2003, YOU'RE ASKING, COUNSEL?

7              MR. ZELLER:  CORRECT.

8              THE COURT:  SUSTAINED.

9    BY MR. ZELLER:

10   Q    WELL, AT SOME POINT, MARIA SALAZAR BECAME AN MGA EMPLOYEE;      03:49

11   RIGHT?

12             MS. AGUIAR:  SAME OBJECTION.

13             THE COURT:  LET'S MOVE ALONG, COUNSEL.

14             NEXT QUESTION.

15   BY MR. ZELLER:

16   Q    AT ANY POINT DID VERONICA MARLOW PROVIDE ANY REFERENCE FOR

17   MS. SALAZAR IN CONNECTION WITH GETTING A JOB AT MGA?

18             MS. AGUIAR:  OBJECTION.  FOUNDATION; HEARSAY.

19             THE COURT:  SUSTAINED.

20             LAY A FOUNDATION, COUNSEL.                                 03:50

21   BY MR. ZELLER:

22   Q    YOU DO KNOW THAT AT SOME POINT, AS WE WERE TALKING ABOUT,

23   MS. SALAZAR AT LEAST APPLIED TO BECOME AN MGA EMPLOYEE?

24             MS. AGUIAR:  OBJECTION.  RELEVANCE; 403.

25             SAME OBJECTIONS AS THE LAST TWO TIMES.                     03:50

3636

```
 1              THE COURT:  COUNSEL, LET ME SEE YOU AT SIDE-BAR ON

 2    THIS.

 3              (WHEREUPON, THE FOLLOWING PROCEEDINGS

 4              WERE HELD AT SIDE-BAR:)

 5              THE COURT:  HOW IS WHAT SHE DOES IN 2003 REFLECT BACK      03:51

 6    ON 2000?  I ACCEPT THE PROPOSITION THAT AN INFERENCE CAN BE

 7    MADE; THAT'S WHY I SAID AT THE LAST SIDE-BAR THAT A JURY, BASED

 8    ON ALL OF THE EVIDENCE, MIGHT BE ABLE TO INFER FROM OTHER

 9    EVIDENCE THEY HAVE OF WHAT WAS GOING ON IN SEPTEMBER AND

10    OCTOBER OF 2000; THE TESTIMONY OF MR. LARIAN ABOUT BRATZ;          03:51

11    PAULA GARCIA ABOUT BRATZ, AND WHO WAS WORKING ON IT; ALL OF

12    THAT.  I UNDERSTAND THE INFERENCE.

13              BUT NOW YOU'RE GETTING INTO 2003 WHEN SHE GOES TO

14    WORK FOR MGA.  AND I'M NOT FOLLOWING.

15              MR. ZELLER:  WHAT I WILL SAY IS THAT SOME OF IT IS --     03:51

16    I CAN ONLY DO THIS ONE STEP AT A TIME.  I CAN ONLY PUT IN SO

17    MUCH AT A TIME.  BUT WHAT I WOULD SAY IS THIS:  THAT

18    ISAAC LARIAN DENIED, IN THE FACE OF THAT 2005 E-MAIL, KNOWING,

19    CERTAINLY, EVIDENCE THAT TWO YEARS BEFORE THAT -- BECAUSE HE'S

20    CLAIMED HE HAS NOT KNOWN THE ENTIRE TIME PERIOD; HE DIDN'T KNOW    03:52

21    IN 2000; HE DIDN'T KNOW ALL OF THE WAY UP THROUGH 2005.

22              THAT'S THE STATE OF THE RECORD.

23              THAT ONE OF THESE EMPLOYEES ACTUALLY WENT OVER TO MGA

24    AND IS AN AGENT THERE, OBVIOUSLY, IN 2003; THAT IS SOMETHING

25    THAT I THINK IS VERY POWERFUL EVIDENCE TO GIVE RISE TO AN          03:52
```

3637

1    INFERENCE THAT --

2            THE COURT:  I'M GOING TO SUSTAIN THE OBJECTION.

3            MOVE ALONG TO THE NEXT AREA.  WE'RE STAYING AWAY FROM

4    THE 2005 E-MAIL AS WELL.

5            MR. ZELLER:  I UNDERSTAND.  I'M STAYING AWAY FROM THE      03:52

6    2005 E-MAIL.  BUT THIS IS THE LINKAGE, YOUR HONOR.  THIS

7    CREATES REAL PROBLEMS TO ESTABLISH.  THEY ARE GOING TO ARGUE IN

8    CLOSING THERE'S NO EVIDENCE THAT MGA KNEW, EVEN THOUGH

9    ISAAC LARIAN ON THE STAND DENIED HE KNEW THAT IN 2005 AND THEY

10   HAD AT LEAST AN EMPLOYEE THERE FOR TWO, THREE YEARS.             03:52

11           THE COURT:  HE DENIED IT.  THAT'S WHY YOU'RE ABLE TO

12   USE THAT E-MAIL, AND THAT'S COME IN TO IMPEACH HIS CREDIBILITY.

13           MR. ZELLER:  I UNDERSTAND.  BUT THIS IS GUILTY

14   KNOWLEDGE; THIS IS INTENT.  IT'S CLASSIC PATTERN EVIDENCE.  YOU

15   CAN'T SAY WE DID THIS THREE, FOUR TIMES BY ACCIDENT.            03:53

16           I THINK THAT'S ULTIMATELY THE ARGUMENT.

17           THE COURT:  BUT AT THIS POINT -- AND THE DIFFERENCE

18   IS IN 2000 SHE WAS WORKING FOR MATTEL.  IN 2003 SHE'S NOT.

19   WHEN SHE ACTUALLY MAKES THE CLAIM.  AND THAT'S WHAT'S

20   DIFFERENT.  IF SHE WAS STILL -- IF SHE MADE A CROSSOVER FROM     03:53

21   MATTEL TO MGA IN 2003, EVEN THOUGH IT'S THREE YEARS AWAY, THEN

22   YOU'D HAVE AN ARGUMENT.  SHE'S FREE AND CLEAR.

23           I'M GIVING YOU FREE REIGN TO EXPLORE WHAT WAS GOING

24   ON IN 2000.  BUT 2003, I THINK WE'RE TOO FAR AWAY.

25           MR. ZELLER:  I'LL MAKE ONE MORE POINT, YOUR HONOR,       03:53

3638

```
1   WHICH IS THAT ALSO, I MEAN, AND THIS GOES TO THE AGENCY POINT.
2   PART OF WHAT I DO WANT TO MAKE CLEAR THROUGH THIS EXAMINATION
3   IS THAT VERONICA MARLOW -- AND THIS IS KNOWN TO PETER MARLOW --
4   MADE EFFORTS TO GET ALL THREE OF THEM JOBS THERE AT MGA.
5            THE COURT:  WHEN?                                      03:54
6            MR. ZELLER:  CERTAINLY AT SOME POINT PRIOR TO 2005.
7   AND WITH MARIA SALAZAR, WE KNOW IT WAS NO LATER THAN 2003.
8   THIS GOES, AGAIN, TO THE AGENCY RELATIONSHIP; THIS GOES TO
9   THEIR RELATIONSHIP BETWEEN MGA AND THE MARLOWS.
10           THE COURT:  YOU CAN EXPLORE THAT IN THE CONTEXT OF     03:54
11  WHAT WAS GOING ON IN 2000, COUNSEL.  I'M GOING TO HOLD YOU TO
12  THAT TIME PERIOD.
13           MS. AGUIAR:  I WANT TO RESERVE THE RIGHT TO STRIKE
14  THE TESTIMONY THAT HAS BEEN RELATED TO THIS MOST RECENT EXHIBIT
15  BECAUSE HE HAS NOT TIED UP THAT MGA EVER GOT THAT TIME SHEET.   03:54
16           THE COURT:  THIS IS THE -- WE'RE --
17           MS. AGUIAR:  WE'RE ON THE TIME SHEET.
18           THE COURT:  IT DOESN'T NEED TO GO TO MGA.  I'M
19  ALLOWING INFERENCE ON THAT; SO I'LL OVERRULE THAT OBJECTION.
20  BUT I'M KEEPING THE 2003 STUFF OUT.                            03:54
21           MR. ZELLER:  THANK YOU.
22           (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)
23  BY MR. ZELLER:
24  Q    MR. MARLOW, MS. SALAZAR WAS NOT THE ONLY MATTEL EMPLOYEE
25  WHO WAS SECRETLY WORKING ON BRATZ, THE BRATZ CLOTHING, BACK IN 03:55
```

1    2000; IS THAT TRUE?

2           MS. AGUIAR:  OBJECTION.  FOUNDATION; RELEVANCE; 403;

3    ARGUMENTATIVE.

4           THE COURT:  OVERRULED.

5           YOU MAY ANSWER.                                    03:55

6           THE WITNESS:  THERE WAS ANOTHER MATTEL EMPLOYEE

7    WORKING ON BRATZ.

8    BY MR. ZELLER:

9    Q    ANA CABRERA WAS ANOTHER MATTEL EMPLOYEE WHO WAS WORKING ON

10   THE BRATZ PROJECT, WHILE A MATTEL EMPLOYEE, BACK IN 2000; IS   03:56

11   THAT RIGHT?

12   A    YES.

13   Q    AND SHE STARTED WORKING ON THE BRATZ PROJECT NO LATER THAN

14   THE NOVEMBER 2000 TIME PERIOD.

15   A    CORRECT.                                              03:56

16   Q    AND IT MIGHT HAVE BEEN EARLIER; YOU CAN'T ACTUALLY EXCLUDE

17   THAT IT WAS A LITTLE EARLIER; RIGHT?

18   A    I THINK I CAN.

19   Q    I'M SORRY?

20   A    I CAN EXCLUDE THAT IT WAS EARLIER.                    03:56

21   Q    HOW LONG DID MS. CABRERA WORK ON THE BRATZ PROJECT?

22   A    UNTIL ABOUT JUNE OF 2005.

23   Q    THE WORK THAT MS. CABRERA DID ON BRATZ WHEN SHE WAS A

24   MATTEL EMPLOYEE WAS SAMPLE MAKING.

25   A    YES.                                                  03:56

TUESDAY, JUNE 24, 2008   EXHIBIT   25      TRIAL DAY 17, AFTERNOON SESSION

                         PAGE   339

3640

1  Q    AND THE WORK THAT MS. CABRERA DID ON BRATZ WHEN SHE WAS A

2  MATTEL EMPLOYEE, SHE WAS PAID FOR THAT WORK.

3  A    YES.

4  Q    AND MGA REIMBURSED YOU AND VERONICA MARLOW FOR THOSE

5  PAYMENTS THAT WERE MADE TO HER FOR THAT WORK; IS THAT RIGHT?          03:56

6  A    PART OF IT, YES.

7  Q    AND THOSE WERE CHARGES YOU PASSED ON THROUGH INVOICES TO

8  MGA.

9  A    PARTIALLY.

10 Q    WHY DO YOU SAY PARTIALLY?                                        03:57

11 A    BECAUSE LATER ON, WE DIDN'T INVOICE SEPARATELY FOR

12 THIRD-PARTY SERVICES.

13 Q    IN ADDITION TO MS. SALAZAR AND MS. CABRERA, THERE WAS AT

14 LEAST ANOTHER MATTEL EMPLOYEE WHO AT SOME POINT WAS SECRETLY

15 WORKING ON BRATZ WHILE A MATTEL EMPLOYEE; IS THAT TRUE?              03:57

16          MS. AGUIAR:  OBJECTION.  RELEVANCE.

17          THE COURT:  OVERRULED ON RELEVANCE.

18          YOU'RE TALKING ABOUT THE 2000 TIME FRAME?

19          MS. AGUIAR:  NO, HE'S NOT.

20          MR. ZELLER:  2001, YOUR HONOR.                              03:57

21          THE COURT:  SUSTAINED.

22          THANK YOU, COUNSEL.

23 BY MR. ZELLER:

24 Q    TO YOUR KNOWLEDGE, DURING THE TIME THAT MS. SALAZAR WAS A

25 MATTEL EMPLOYEE, MATTEL WAS NOT AWARE THAT MS. SALAZAR WAS          03:57

```
 1   WORKING ON BRATZ AS A MATTEL EMPLOYEE; IS THAT CORRECT?
 2            MS. AGUIAR:  OBJECTION.  FOUNDATION; CALLS FOR
 3   SPECULATION.
 4            THE COURT:  LAY A FOUNDATION, COUNSEL.
 5   BY MR. ZELLER:                                              03:58
 6   Q    DID YOU EVER TELL MATTEL THAT MS. SALAZAR WAS WORKING ON
 7   BRATZ WHEN SHE WAS A MATTEL EMPLOYEE?
 8   A    NO.
 9   Q    TO YOUR KNOWLEDGE, DID ANYONE?
10   A    NO.                                                    03:58
11   Q    DID YOU EVER TELL MATTEL THAT MS. CABRERA WAS WORKING ON
12   BRATZ WHILE A MATTEL EMPLOYEE?
13   A    NO.
14   Q    TO YOUR KNOWLEDGE, DID ANYONE ELSE?
15   A    NO.                                                    03:58
16   Q    AT SOME POINT, ISN'T IT TRUE THAT IN THESE RECORDS THAT
17   YOU CREATED FOR WORK THAT MS. SALAZAR DID AND ANA CABRERA DID,
18   YOU USED FAKE NAMES FOR THEM, FOR THEIR WORK?
19            MS. AGUIAR:  OBJECTION.  RELEVANCE; 403.
20            THE COURT:  OVERRULED.                             03:59
21            THE WITNESS:  I'M SORRY.  REPEAT THE QUESTION.
22   BY MR. ZELLER:
23   Q    AT SOME POINT IN CONNECTION WITH THE RECORDS THAT YOU
24   CREATED FOR THE WORK THAT MARIA SALAZAR AND ANA CABRERA DID ON
25   THE BRATZ PROJECT WHILE THEY WERE STILL EMPLOYED BY MATTEL,   03:59
```

```
  1            THE COURT:  COUNSEL?

  2            MS. AGUIAR:  YOUR HONOR, I THINK THAT YOU RULED AS TO

  3   THAT E-MAIL A COUPLE OF DIFFERENT TIMES.  AND IT CAME IN

  4   INITIALLY, REDACTED, FOR ISAAC LARIAN'S CREDIBILITY.

  5            THE COURT:  I UNDERSTAND.  ON THIS VERY ISSUE,            04:52

  6   THOUGH --

  7            MS. AGUIAR:  MR. LARIAN SAID -- HIS TESTIMONY -- HE'S

  8   TRYING TO CREATE A FACT ISSUE WHERE THERE ISN'T ONE.

  9   MR. LARIAN SAID HE DIDN'T KNOW.

 10            THE COURT:  THEY DON'T HAVE TO ACCEPT MR. LARIAN'S       04:52

 11   TESTIMONY.

 12            MS. AGUIAR:  WELL, NOW THIS WITNESS HAS SAID HE

 13   DIDN'T TELL ANYONE.

 14            THE COURT:  RIGHT.  BUT IT'S CONFLICTED.  THAT'S THE

 15   WHOLE QUESTION IS 'DID HE TELL SOMEBODY?'  AND THEIR ARGUMENT     04:53

 16   IS THAT E-MAIL DOES -- BOY, THAT DEPOSITION TRANSCRIPT, I

 17   ALMOST FELL OUT OF MY SEAT WHEN I SAW IT.  THIS WITNESS IS THE

 18   ONE THAT LINKED THAT E-MAIL IN THAT DEPOSITION TO A STATEMENT.

 19            YOU'VE GOT TO LAY A FOUNDATION FOR IT.

 20            DO YOU UNDERSTAND WHAT I MEAN BY THAT?                   04:53

 21            MR. ZELLER:  I BELIEVE I DO.

 22            THE COURT:  LAY A FOUNDATION WITH THIS WITNESS THAT

 23   HE UNDERSTANDS THAT E-MAIL TO BE TALKING ABOUT MATTEL.  AND

 24   YOU'VE GOT TO DO THAT WITHOUT EVER DISCLOSING THAT TO THE JURY

 25   IN ADVANCE OF IT.                                                 04:53
```

| | |
|---|---|
| 1 | I'LL BE LOOKING FOR FOUNDATIONAL OBJECTIONS. |
| 2 | MR. ZELLER:  SO THE COURT KNOWS, WHAT I WOULD -- |
| 3 | MAYBE IF I START WITH THE EMPLOYMENT, BECAUSE THAT MAY BE |
| 4 | THAT -- |
| 5 | THE COURT:  YOU CAN START WHEREVER YOU WANT.  I'M |
| 6 | JUST SAYING, BEFORE YOU GET TO THAT E-MAIL -- |
| 7 | MR. ZELLER:  INTO THE 2005 ONE. |
| 8 | THE COURT -- IT'S GOT TO BE THIS WITNESS'S |
| 9 | UNDERSTANDING THAT THAT'S WHAT HE WAS COMMUNICATING TO MGA. |
| 10 | MR. ZELLER:  AND THIS, OF COURSE, GOES TO |
| 11 | CREDIBILITY.  SHE ASKED THOSE QUESTIONS. |
| 12 | THE COURT:  I UNDERSTAND WHAT IT GOES TO, COUNSEL. |
| 13 | MR. ZELLER:  THANK YOU. |
| 14 | (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.) |
| 15 | THE COURT:  YOU MAY PROCEED, COUNSEL. |
| 16 | BY MR. ZELLER: |
| 17 | Q    YOU SAID, IN RESPONSE TO MGA'S COUNSEL'S QUESTIONS, IN |
| 18 | VARIOUS WAYS, THAT NEITHER YOU NOR YOUR WIFE EVER TOLD OR EVER |
| 19 | INFORMED MGA, IN WORDS OR SUBSTANCE, THAT THESE OTHER MATTEL |
| 20 | EMPLOYEES WERE SECRETLY WORKING ON BRATZ WHILE MATTEL |
| 21 | EMPLOYEES; IS THAT CORRECT? |
| 22 | A    CORRECT. |
| 23 | Q    SO THE RECORD IS CLEAR HERE AS WELL, THERE WAS ACTUALLY A |
| 24 | THIRD MATTEL EMPLOYEE WHO WAS SECRETLY WORKING ON BRATZ WHILE A |
| 25 | MATTEL EMPLOYEE AND WORKING ON THE BRATZ CLOTHING; IS THAT |

Timestamps in right margin: 04:53, 04:53, 04:53, 04:54, 04:54, 04:54, 04:54

3670

```
 1   TRUE?

 2   A    CORRECT.

 3   Q    AND THAT WAS BEATRIZ MORALES?

 4   A    CORRECT.

 5   Q    SO WE HAVE THE TIME FRAMES CLEARLY IN MIND, MARIA SALAZAR,    04:54

 6   WHILE A MATTEL EMPLOYEE, WORKED ON THE BRATZ CLOTHING FROM AT

 7   LEAST THE 2000 AND 2001 TIME PERIOD; CORRECT?

 8   A    CORRECT.

 9   Q    ANA CABRERA DID THAT AS WELL, FROM THE 2000 TO 2005 TIME

10   PERIOD; IS THAT CORRECT?                                          04:55

11   A    CORRECT.

12   Q    AND BEATRIZ MORALES DID THAT FROM AT LEAST THE 2001

13   THROUGH THE 2005 TIME PERIOD; CORRECT?

14   A    CORRECT.

15   Q    SO THERE WERE AT LEAST ANOTHER THREE MATTEL EMPLOYEES WHO     04:55

16   WORKED FOR YEARS, SECRETLY, ON BRATZ AND WERE PAID BY YOU AND

17   YOUR WIFE AND REIMBURSED BY MGA TO WORK ON BRATZ; IS THAT TRUE?

18   A    CORRECT.

19   Q    IF I UNDERSTAND IT, THIS WENT ON FOR YEARS AND YEARS, WITH

20   ALL THREE OF THEM, WITHOUT ANY INKLING, ANY HINT, TO MGA AS TO    04:55

21   WHAT WAS GOING ON; IS THAT RIGHT?

22   A    CORRECT.

23   Q    NOW, ISN'T IT TRUE THAT MARIA SALAZAR, IN FACT, BECAME

24   EMPLOYED BY MGA BACK IN 2003?

25   A    CORRECT.                                                      04:56
```

1    Q    AND CERTAINLY, SHE KNEW THAT SHE HAD BEEN SECRETLY WORKING

2    ON BRATZ WHILE A MATTEL EMPLOYEE; CORRECT?  SO SHE HAD TO HAVE

3    KNOWN.

4              MS. AGUIAR:  OBJECTION AS TO TIME FRAME, YOUR HONOR.

5              THE COURT:  SUSTAINED.                                    04:56

6              REPHRASE YOUR QUESTION.  JUST CLARIFY AS TO THE TIME

7    PERIOD IN QUESTION.

8              MR. ZELLER:  YES, YOUR HONOR.

9    BY MR. ZELLER:

10   Q    PRIOR TO THE TIME THAT MARIA SALAZAR ACTUALLY BEGAN AS AN    04:56

11   EMPLOYEE THERE AT MGA IN THE 2003 TIME PERIOD, OBVIOUSLY SHE

12   HAD ALREADY KNOWN SHE HAD BEEN SECRETLY WORKING ON BRATZ AS A

13   MATTEL EMPLOYEE FOR A COUPLE OF YEARS BEFORE THAT; RIGHT?

14             MS. AGUIAR:  OBJECTION.  MISSTATES THE TESTIMONY AND

15   INACCURATE TIME FRAME.                                             04:56

16             THE COURT:  REPHRASE, COUNSEL.

17   BY MR. ZELLER:

18   Q    MARIA SALAZAR, OF COURSE, BY YOUR UNDERSTANDING, KNEW WHAT

19   SHE HAD DONE ON BRATZ; THAT IS, SECRETLY WORK ON IT WHILE A

20   MATTEL EMPLOYEE; RIGHT?                                            04:57

21   A    CORRECT.

22   Q    AND SHE KNEW THAT PRIOR TO 2003; IS THAT TRUE?

23   A    CORRECT.

24   Q    AND SHE KNEW THAT, THEREFORE, WHEN SHE BEGAN AS AN

25   EMPLOYEE AT MGA.                                                   04:57

1              HAVE A GOOD WEEK.   I'LL SEE YOU NEXT TUESDAY.

2              **THE CLERK:**   COURT STANDS ADJOURNED.

3

4

5

6

7

8

9

10                           CERTIFICATE

11

12    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
13    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
      ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
14    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.

15

16                                                      6-30-08

17    THERESA A. LANZA, RPR, CSR                          DATE
      OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25

TUESDAY, JUNE 24, 2008    EXHIBIT _____ 25 _____ TRIAL DAY 17, AFTERNOON SESSION

                          PAGE _____ 346

# EXHIBIT 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

     Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED
COPY**

_____
AND CONSOLIDATED ACTIONS.
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, March 19, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106487

EXHIBIT _____ 26
PAGE _____ 347

```
 1                 UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
 2                      EASTERN DIVISION

 3

 4    CARTER BRYANT, an individual,

 5             Plaintiff,

 6        vs.                        No. CV 04-9049 SGL (RNBx)
                                     Consolidated with
 7    MATTEL, INC., a Delaware       Nos. CV 04-9405 and
      corporation,                   05-2727
 8
               Defendants.
 9

10

11    _____
      AND CONSOLIDATED ACTIONS.
12    _____

13

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS, taken at

17    555 West Fifth Street, 48th Floor, Los Angeles,

18    California, beginning at 10:05 a.m. and ending at

19    12:37 p.m. on Thursday, March 19, 2009, before

20    CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
```

2

```
1    APPEARANCES:

2

3    Discovery Master:

4         ROBERT C. O'BRIEN
          Attorney at Law
5         555 West Fifth Street, Suite 4800
          Los Angeles, California 90013-1065
6         (213) 629-7400

7    For Defendant Mattel, Inc.:

8         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:   MICHAEL T. ZELLER
9         BY:   JON COREY
          Attorneys at Law
10        865 South Figueroa Street, 10th Floor
          Los Angeles, California 90017
11        (213) 624-7707

12        MATTEL, INC.
          BY:   JILL E. THOMAS
13        Assistant General Counsel
          333 Continental Boulevard
14        El Segundo, California 90245-5012
          (310) 252-2000

15

16   For Defendant MGA:

17        GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
          BY:   JOEL KLEVENS
          Attorney at Law
18        10250 Constellation Boulevard, Nineteenth Floor
          Los Angeles, California 90067
19        (310) 553-3000

20   Also Present:

21        CRAIG HOLDEN

22

23

24

25
```

26

349

1  and every payment of money or item of value or any

2  promise, agreement, proposal or offer by you to pay money

3  or give any item of value to or on behalf of any person

4  identified in any of the parties' initial disclosures in

5  this action at any time when such person was not an

6  employee of MGA.

7       And they say well, this will help us decide

8  whether MGA is attempting to bribe witnesses in the case.

9  They concede that it's not tailored to former Mattel

10  employees.

11      Well, if that's a proper interrogatory, then

12  certainly MGA can ask Mattel, by the same token, you know,

13  on the same kind of fishing expedition, tell us every

14  payment you have ever made to anybody on the list of

15  either party at any time who was not an employee of

16  Mattel.  Because if you grant this, you're saying it's

17  okay to have a fishing expedition to see if anybody bribed

18  a witness.

19      That's not what the second amended counterclaim

20  is.  And it's possible in every litigation that one party

21  or the other is trying to bribe witnesses.  And I suppose

22  if that's a relevant question, in this blunderbuss way,

23  then we will draft such an interrogatory for Mattel

24  because it's certainly no less relevant going the other

25  way.  It's simply a fishing expedition, maybe we'll get

24

350

1   something, maybe something good will show.  If that's a

2   legitimate interrogatory, I don't see it.

3           MR. O'BRIEN:  Let me interrupt you and ask you a

4   question, because I had a question relating to that issue.

5           Are you aware of any case -- and this is

6   certainly a question that Mr. Corey can respond to when he

7   has the opportunity, as well -- in which this type of a

8   discovery request, this sort of interrogatory relating to

9   initial disclosures, as opposed to specific employees, has

10  been -- any, at least, written opinion in which a court

11  has ordered the disclosure or granted a motion to compel

12  under these circumstances?

13          MR. KLEVENS:  I'm not.  But, you know, I have to

14  be honest, I mean, I would only know such a thing if I

15  read it in these papers.  I have not conducted the legal

16  research, so I'm not in a position to tell you I've

17  conducted exhaustive research and I can tell you there are

18  no such cases.  I've read Mattel's papers, I've read our

19  papers.  But I think this is a problem.  And I think it's

20  one that Mattel has not addressed.

21          And I think there is also a problem with No. 68

22  that we've addressed.  And I think it is a fair criticism

23  and one, again, that Mattel has designed to harass.

24          I think it is appropriate for them to ask us for

25  every payment of money we have made to the former Mattel

61

EXHIBIT _____ 26

PAGE _____ 351

1    employees.  And they've listed 10 former Mattel employees.

2    But then they've said --

3              MR. O'BRIEN:  Let me interrupt you again, I'm

4    sorry, Mr. Klevens.  That's interrogatory 69?

5              MR. KLEVENS: 68.

6              MR. O'BRIEN:  But you said it's appropriate if

7    they ask money paid to former Mattel employees, and I

8    think that's exactly what they do ask in interrogatory 69.

9              MR. KLEVENS:  Yeah.  The question is whether 69

10   contains the same definition.  The definition, when they

11   describe an employee, is the employees and their current

12   and former employees, agents, representatives, any person

13   acting by or on their behalf, any attorney.  In other

14   words, how is MGA to gather that information?

15             MR. O'BRIEN:  Well, I mean, it would seem to me

16   that there is some agreement that, putting aside the issue

17   of the breadth of the definition, there's some subset of

18   that definition that even you would agree they're entitled

19   to with respect to 69, just based on --

20             MR. KLEVENS:  I don't object to fair and

21   appropriate phase 2 discovery, stuff that's related to

22   phase 2.  And I can see that whether MGA made payments to

23   former Mattel employees, other than MGA salary payments,

24   is a fair question.  It simply can't be one that includes

25   every conceivable kind of person that that person may deal

EXHIBIT _____ 26

PAGE _____ 352

1   with, which is the way they've designed it, and that was

2   the subject of the meet and confer, and that was the

3   decision by Mattel, we're not changing this, because

4   Mattel never changes anything, and then they make a

5   motion, and then if it's denied, they make a motion for

6   reconsideration, and if that's denied, they ask the judge.

7   That's the pattern.  That's the way it works.

8          MR. O'BRIEN:  Well, I haven't seen that pattern

9   yet.

10         MR. KLEVENS:  Welcome to our world.

11         MR. O'BRIEN:  Anyway, but I did want to -- so it

12  sounds like, at least on 69, there's some level of

13  agreement that Mattel would be entitled to those

14  documents, and that's all I was trying to pin down.

15         I've interrupted you there, so why don't you go

16  on with your argument.

17         MR. KLEVENS:  Yeah.  I mean, to the extent that

18  MGA paid Mattel employees, former Mattel employees, for

19  other than their salary as MGA employees, I think that is

20  a fair inquiry.

21         MR. O'BRIEN:  Very well.

22         MR. KLEVENS:  So long as it's properly limited as

23  to time in relation to the allegations in the case.  If

24  it's ever and requires you to figure out whether some

25  person ever got some money, who turned out to be some

63

EXHIBIT       26

PAGE          353

1         I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3         That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11        Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [   ] was [   ] was not requested.

15        I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:    MAR 2 0 2009

22

23            _Cheryl R. Kamalski._
              CHERYL R. KAMALSKI

24            CSR No. 7113

25

EXHIBIT ___26___

PAGE ___354___

# EXHIBIT 27

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: March 12, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Cindy Sasse                        None Present
          Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:   **ORDER REFERRING EX PARTE APPLICATION FOR ORDER TO SHOW
               CAUSE (DOCKET #4997) TO DISCOVERY MASTER**

       The Court has received and reviewed Mattel's Ex Parte Application for an Order to Show
Cause (docket #4997). Because the issues presented therein implicate matters previously
addressed, properly presented, and, in part, currently pending before the Discovery Master, the
Court refers this application to the Discovery Master.

       The Discovery Master may issue an appropriate disposition of the application. Should the
Discovery Master find that contempt proceedings are appropriate, he may so report and
recommend to this Court.

       Unless the parties have already done so, the parties shall, within twenty-four hours of
service of this Order, serve the Discovery Master with copies of the filings relevant to this ex parte
application.

       **IT IS SO ORDERED.**

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          1

EXHIBIT _____27_____
PAGE _____355_____

# EXHIBIT 28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

    Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

    Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED
COPY**

AND CONSOLIDATED ACTIONS.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, March 19, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106487

EXHIBIT ___28___
PAGE ___356___

1 the motions that are scheduled for April 21, I will

2 certainly be amenable to it. But I also -- I'm not going

3 to change the schedule unilaterally, unless we can get

4 some agreement among the parties on the issue.

5 MR. KLEVENS: That's fine.

6 MR. O'BRIEN: So I just encourage you -- it

7 sounds like it may be in both of your interests to have

8 this issue decided one way or the other. And the sooner I

9 decide it, if it's an issue that's going to go to

10 Judge Larson after I decide it, the sooner I decide, the

11 sooner you can get in front of Judge Larson on both sides,

12 whoever doesn't like my resolution of the issue, if it's

13 that big of an issue that it may impact how the case is

14 litigated between now and trial. So I'll make myself

15 available. But I do suggest that, with the Mitchell

16 Silberberg folks, you get together and try and work out a

17 date, otherwise we'll leave it on the 21st.

18 MR. ZELLER: What I would request is that we will

19 certainly attempt to see if we can agree. I will tell you

20 right now we will be there for any time. I'm not so

21 optimistic given that -- frankly, from our perspective,

22 part of the reason why that motion was brought was to

23 avoid discovery. We want this resolved promptly. I

24 would, therefore, ask that if we cannot reach agreement

25 with MGA's counsel as to an earlier date on that hearing,

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
EXHIBIT 28 877.955.3855

PAGE 357

1    that the Discovery Master rule upon our ex parte.

2           MR. O'BRIEN:  Okay.

3           MR. ZELLER:  We are asking for an order to show

4    cause to be issued, that is independent, there are grounds

5    that are independent of the resolution of those motions.

6    We had initially filed it with Judge Larson, because it

7    does seek, among other relief in order to coerce

8    compliance with the Court's order, a contempt.

9    Technically in order to show cause, why contempt sanctions

10   should not be imposed, and Judge Larson referred it to the

11   Discovery Master, which we certainly have no objections to

12   and are fine with.  It's really a matter of who, in the

13   first instance, has the authority to do such a thing.

14          MR. O'BRIEN:  I don't have contempt power, as you

15   know, but what I can do is make a recommendation to the

16   judge.  So I will take your request under consideration,

17   but I'm not going to rule on it now.  I do encourage the

18   parties to meet and confer on it.

19          Anything further from either side?

20          MR. KLEVENS:  No.  Thank you.

21          MR. COREY:  Actually, there is one thing that I

22   neglected to do.  This is a Notice of Errata.  I'm happy

23   to provide the Court with a courtesy copy.  There were

24   some deposition pages that were referenced in one of the

25   briefs that were inadvertently omitted from one of the

EXHIBIT ____28____

PAGE ____358____

1    exhibits.  So I'm happy to hand this to you as a courtesy

2    copy.

3              MR. O'BRIEN:  I think I saw it.  Didn't we get a

4    copy already?  Wasn't there a copy electronically filed or

5    provided already?  I thought I saw a copy.

6              MR. COREY:  I believe so.  I asked someone to

7    provide it to you as soon as possible this morning.

8              MR. O'BRIEN:  Has the Notice of Errata been

9    served on Mr. Klevens?

10             MR. COREY:  Yes.  It was served electronically

11   last night.

12             MR. KLEVENS:  He handed this paper to me when I

13   walked in.

14             MR. O'BRIEN:  I will accept the courtesy copy.

15   Thank you.

16             Let me -- I see your client -- is it Mr. Holden

17   or Holder?

18             MR. KLEVENS:  Holden.  Holder is the Attorney

19   General.

20             MR. O'BRIEN:  I promoted him after --

21             MR. KLEVENS:  He had to leave, unfortunately,

22   so --

23             MR. O'BRIEN:  Since he's not here, I'm going

24   state it for the record, and please make it available to

25   him and have him pass it around to his colleagues, I want

95

EXHIBIT    28

PAGE    359

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11          Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15          I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:     MAR 2 0 2009

22

23          _Cheryl R. Kamalski._
            CHERYL R. KAMALSKI

24          CSR No. 7113

25

EXHIBIT ____28____

PAGE ____360____