# EXHIBIT 33

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 34

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 35

3320



1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3          EASTERN DIVISION

4          - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6          - - -

**CERTIFIED COPY**

7   MATTEL, INC.,                    )
                                     )
8                    PLAINTIFF,      )
                                     )
9          VS.                       )    NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)    TRIAL DAY 16
                                     )    AFTERNOON SESSION
11                   DEFENDANTS.     )    PAGES 3320-3468
                                     )
12  AND CONSOLIDATED ACTIONS,        )
                                     )
13  _____ )

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16          RIVERSIDE, CALIFORNIA

17          FRIDAY, JUNE 20, 2008

18          1:41 P.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25          951-274-0844
           WWW.THERESALANZA.COM

EXHIBIT  35

PAGE  421

1        **THE COURT:** VERY GOOD.

2        WHAT I THINK WE NEED TO DO WITH RESPECT TO -- LET'S

3  HAVE PETER MARLOW HERE ON TUESDAY. BUT I'M GOING TO DO WITH

4  HIM WHAT I WAS GOING TO DO WITH MR. LARIAN. AND THAT IS

5  REQUIRE MATTEL TO CALL HIM, IF THEY'RE GOING TO CALL HIM, AFTER   06:12

6  WE FINISH WITH MR. CUNNINGHAM.

7        AND YOU'VE ALREADY INDICATED THAT IT'S NO MORE THAN

8  15 MINUTES OF DIRECT; SO I'LL IMPOSE BOTH OF THOSE

9  REQUIREMENTS; SO THAT GIVES COUNSEL AN OPPORTUNITY TO PLAN.

10       AS TO HOW MUCH OF THAT 15 MINUTES YOU'RE ACTUALLY   06:12

11  GOING TO GET TO USE BASED ON THE OBJECTIONS, I'LL CONTINUE TO

12  WORK ON THIS AND THINK ABOUT THIS MYSELF OVER THE WEEKEND; AND

13  PERHAPS WE MAY DISCUSS THIS FURTHER ON MONDAY.

14        **MR. ZELLER:** AGAIN, THE 15 MINUTES IS DIRECT.

15        **THE COURT:** THE 15 MINUTES IS DIRECT.   06:13

16        SO, COUNSEL, I'M GOING TO HAVE TO ORDER YOU BACK HERE

17  ON TUESDAY, AND YOU'RE WELCOME TO COME MONDAY AT 3:00 TO GET A

18  CLEAR ORDER FROM THE COURT IN TERMS OF -- BUT I'M NOT REQUIRING

19  YOU TO COME BACK OUT; IT'S ENTIRELY UP TO YOU, BECAUSE

20  APPARENTLY, THERE ARE SEVERAL ATTORNEYS WHO ARE WELL CAPABLE OF   06:1:

21  ARGUING THIS PARTICULAR ISSUE.

22        BUT YOU AND MR. MCFARLAND AND MS. AGUIAR, YOU CAN ALL

23  COME IF YOU WANT.

24        **MR. GOLDSOBEL:** FOR TUESDAY, I WANT TO BRING MY

25  SCHEDULE TO THE ATTENTION OF THE COURT. I'LL BE BEFORE   06:1

EXHIBIT____35____

1  JUDGE KING FOR A HEARING ON TUESDAY AT 10:00, THAT I EXPECT

2  COULD LAST UP TO TWO HOURS; SO I'M UNAVAILABLE IN THE MORNING,

3  AND THROUGH NOON. AND THEN FROM DOWNTOWN, IT WOULD TAKE ME

4  TIME TO GET HERE.

5          **THE COURT:** SO I WON'T REQUIRE THAT IT GOES AFTER            06:13

6  MR. CUNNINGHAM.

7          AS SOON AS YOU GET HERE ON TUESDAY, I WANT YOU TO

8  NOTIFY MR. HOLMES, AND THE NEXT CHANGE IN WITNESS, MR. MARLOW

9  WILL GO, IF HE'S GOING.

10         **MR. GOLDSOBEL:** AND IF HE DOESN'T GO ON TUESDAY, IS         06:13

11  HE GOING TO BE DISMISSED AT THAT POINT?

12         **THE COURT:** YES.

13         **MR. GOLDSOBEL:** BECAUSE THE NEXT SEVERAL DAYS, I WILL

14  BE OUT OF TOWN.

15         **THE COURT:** WE DON'T HAVE MANY WITNESSES LEFT AT THIS       06:14

16  POINT.

17         **MR. MCFARLAND:** JUST ONE QUICK THING.

18         ON WEDNESDAY, WHEN WE WERE HERE, YOUR HONOR, TALKING

19  ABOUT THE VARIOUS WITNESSES, AND I HAD MENTIONED THE THREE,

20  MS. LEAHY, MS. MARLOW, AND MS. CLOONAN, I BELIEVE MR. ZELLER     06:14

21  SAID THEY WERE, QUOTE, "MGA-AFFILIATED WITNESSES," AND THEN HE

22  WENT ON TO SAY THAT MGA WAS PAYING FOR THE ATTORNEYS' FEES.

23  AND THAT WASN'T THE FOCUS OF THAT DISCUSSION. THE FOCUS WAS A

24  DISCUSSION ABOUT TIMING.

25         I DON'T WANT MY SILENCE TO BE INTERPRETED AS                   06:1·

EXHIBIT ___35___

1    AGREEMENT WITH THAT STATEMENT, BECAUSE HE KNOWS IT'S A MATTER

2    OF PUBLIC RECORD THAT THAT IS WRONG.

3            MR. MARLOW, MS. MARLOW, AND MS. CLOONAN ARE BEING

4    PAID FOR BY CARTER BRYANT, AND MS. LEAHY IS BEING PAID FOR BY

5    MGA.                                                            06:14

6            AND PURSUANT TO YOUR ORDER AND JUDGE INFANTE'S ORDER,

7    THAT INFORMATION WAS DISCLOSED IN DISCOVERY.

8            **THE COURT:**  VERY WELL.

9            **MR. MCFARLAND:**  SO I JUST WANT TO MAKE SURE MY

10   SILENCE IS NOT INTERPRETED AS AGREEMENT.                        06:15

11           MY LAST THING IS, THEY HAD ASKED MS. CLOONAN TO BE

12   HERE ON TUESDAY, AND MS. CLOONAN WAS UNABLE TO BE HERE -- I

13   MISSPOKE -- MS. LEAHY TO BE HERE ON TUESDAY.  SHE WAS

14   UNAVAILABLE ON FRIDAY.  I'M VERY CONCERNED.  AGAIN, SHE HAS

15   ARRANGED CHILD CARE FOR HER FOUR-YEAR-OLD FOR TUESDAY, BUT I'M  06:15

16   CONCERNED THAT SHE'S NOT GOING TO GET CALLED.

17           IS THERE ANY WAY WE CAN GET ANY KIND OF ASSURANCES

18   THAT IF SHE DOES GO TO THE TROUBLE TO COME HERE AND ARRANGE FOR

19   CHILD CARE, THAT THAT'S IT; YOU CALL HER OR --

20           **THE COURT:**  WITH RESPECT TO MR. MARLOW, WHO'S BEEN   06:1

21   OUT HERE SO MANY TIMES, I'M WILLING TO GIVE THAT ASSURANCE.  I

22   TRUST WE'LL GET TO MS. LEAHY AS WELL.

23           MR. ZELLER, DO YOU ANTICIPATE THAT BEING THE CASE?

24           **MR. ZELLER:**  YES, I DO, YOUR HONOR.

25           IT SOUNDS LIKE WHAT'S GOING TO HAPPEN -- AND WE HAVE    06:1

EXHIBIT ____35____

```
 1   BEEN WORKING ON ALL OF THESE WITNESSES --

 2           THE COURT:  I KNOW.  I KNOW.

 3           MR. ZELLER:  WE THOUGHT THAT CERTAINLY THESE OTHER

 4   TWO WOULD GO TODAY.  THERE WERE ISSUES, WITH CONFERENCES AND

 5   EVERYTHING ELSE, THAT WERE UNANTICIPATED.  SO WE DO APOLOGIZE   06:15

 6   TO THE PEOPLE INVOLVED.

 7           THE COURT:  I KNOW.

 8           MR. ZELLER:  NOW, THE ISSUE ABOUT MARGARET LEAHY

 9   IS -- AND MR. PRICE IS GOING TO BE TAKING THAT EXAMINATION; IT

10   IS ALSO A 15-MINUTE --                                         06:16

11           MR. PRICE:  IT'S NOT MINE.  I WON'T BE HERE ON

12   TUESDAY, YOUR HONOR.

13           MR. ZELLER:  IN ANY EVENT, I THINK WE'RE PLANNING ON

14   THAT AS A 15-MINUTE EXAMINATION.

15           THE COURT:  YOU REALLY HAVE TO COME UP WITH ANOTHER     06:16

16   TIME PERIOD THAN 15 MINUTES.  AS MY PEOPLE WOULD SAY, IT TAKES

17   TEN MINUTES TO GET SOMEWHERE.

18           MR. PRICE:  I'M NOT DOING THE EXAMINATION, BUT I'VE

19   PREPARED IT.  IT'S ONE DOCUMENT.

20           THE COURT:  VERY WELL.                                 06:1

21           LET'S TRY TO GET THROUGH THESE AS QUICKLY AS WE CAN

22   ON TUESDAY.  AND I'LL REVIEW THE PETER MARLOW DEPOSITION OVER

23   THE WEEKEND.  BUT THE PARTIES SHOULD BE MINDFUL OF THE COURT'S

24   RULING ON THIS ISSUE, ON THE 404(B) ISSUES, AND THE MOTION

25   IN LIMINE.                                                     06:1
```

EXHIBIT    35

PAGE    425

```
 1                ALL GOOD THINGS HAVE TO COME TO AN END AT SOME POINT
 2    IN TIME.
 3                MR. QUINN:  WE HAVE TO DO A CROSS-EXAMINATION TOO.
 4                MR. NOLAN:  OF COURSE.
 5                MR. QUINN:  WE BELIEVE IN GOOD FAITH THAT WE ARE DOWN   06:18
 6    TO SOME WITNESSES WHO WILL BE PRETTY SHORT.  BUT I DON'T KNOW
 7    THAT WE CAN DO THEM AND ALSO DO MR. LYTER.
 8                THE COURT:  THE COURT IS CERTAINLY GOING TO BE AS
 9    FLEXIBLE WITH MGA AS IT HAS BEEN WITH MATTEL.
10                MR. NOLAN:  I APPRECIATE THAT.                          06:18
11                THE COURT:  VERY GOOD.
12                EVERYONE HAVE A GOOD WEEKEND.
13
14
15
16
17                            CERTIFICATE
18
19    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
      ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.
22
23
24    THERESA A. LANZA, RPR, CSR                        6-24-08
      OFFICIAL COURT REPORTER                           DATE
25
```

EXHIBIT _____ 35

FRIDAY, JUNE 20, 2008          TRIAL DAY 16, AFTERNOON SESSION

PAGE _____ 426



1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4                           - - -

5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                           - - -

7    MATTEL, INC.,                    )

8                    PLAINTIFF,       )

9              VS.                    )      NO. CV 04-09049

10   MGA ENTERTAINMENT, INC., ET. AL., )

11                   DEFENDANTS.       )      TRIAL DAY 17
                                      )      AFTERNOON SESSION
12   AND CONSOLIDATED ACTIONS,         )      PAGES 3589-3689

13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                  TUESDAY, JUNE 24, 2008

18                        2:55 P.M.

19

20

21

22

23                 THERESA A. LANZA, RPR, CSR
                FEDERAL OFFICIAL COURT REPORTER
24                 3470 12TH STREET, RM. 134
                RIVERSIDE, CALIFORNIA  92501
25                      951-274-0844
                   WWW.THERESALANZA.COM

**CERTIFIED COPY**

```
 1              MR. NOLAN:  THE ERRATA SHEET IS PART OF THE
 2    TRANSCRIPT.
 3              THE COURT:  IT'S OVERRULED.
 4    BY MR. ZELLER:
 5    Q    ALSO, YOUR LAWYER CLAIMED, AS RECENTLY AS THIS DEPOSITION    04:06
 6    YOU JUST HAD, THAT YOU AND MGA HAD SOMETHING THAT WAS CALLED A
 7    JOINT DEFENSE.
 8              DO YOU REMEMBER THAT?
 9              MS. AGUIAR:  OBJECTION.  RELEVANCE; CALLS FOR A LEGAL
10    CONCLUSION.                                                      04:07
11.             MR. ZELLER:  CREDIBILITY, YOUR HONOR.
12              THE COURT:  I KNOW.
13              OVERRULED.
14              WATCH THE SUBJECT MATTER, COUNSEL.
15              MR. ZELLER:  I CAN SHARPEN IT UP, YOUR HONOR.          04:07
16    BY MR. ZELLER:
17    Q    DURING THE COURSE OF YOUR DEPOSITION, DO YOU RECALL THAT
18    YOUR LAWYER FROM TIME TO TIME OBJECTED AND SAID, 'MR. MARLOW,
19    DON'T ANSWER THOSE QUESTIONS BECAUSE YOU HAVE SOMETHING CALLED
20    A JOINT DEFENSE.'                                                04:07
21              DO YOU REMEMBER THOSE WORDS BEING USED?
22    A    YES.
23    Q    AND YOU UNDERSTOOD THAT MEANT YOUR LAWYER WAS SAYING THAT
24    YOU AND MGA HAVE SIMILAR INTERESTS; IS THAT RIGHT?
25    A    I DON'T UNDERSTAND IT.                                      04:07
```

EXHIBIT____35____

```
 1   Q    WELL, YOU HAD NO UNDERSTANDING OF WHAT A JOINT DEFENSE IS

 2   BETWEEN YOU AND MGA?

 3            MS. AGUIAR:   OBJECTION.  RELEVANCE.  AND IT WAS

 4   WITHDRAWN.

 5            THE COURT:   WAS IT WITHDRAWN, COUNSEL?              04:07

 6            MR. GOLDSOBEL:   YES.

 7            MR. ZELLER:   THIS IS, AGAIN, CREDIBILITY.  IT TIES TO

 8   MGA.

 9            THE COURT:   WAS THE OBJECTION WITHDRAWN?

10            MR. GOLDSOBEL:   YES, YOUR HONOR, IT WAS WITHDRAWN.   04:08

11            THE COURT:   LET'S MOVE ALONG.

12   BY MR. ZELLER:

13   Q    AND BY THE WAY, THAT MEETING THAT YOU HAD WITH MR. NOLAN

14   JUST THIS WEEKEND BEFORE LAST, HE TOLD YOU TO KEEP THOSE

15   DISCUSSIONS CONFIDENTIAL, DIDN'T HE?                         04:08

16   A    YES.

17   Q    YOU AND VERONICA MARLOW HAD, APPROXIMATELY, A SEVEN-YEAR

18   BUSINESS RELATIONSHIP WITH CARTER BRYANT; IS THAT TRUE?

19   A    YES.

20   Q    AND YOU AND VERONICA MARLOW HAVE RECEIVED MILLIONS OF    04:08

21   DOLLARS FROM MGA AND CARTER BRYANT OVER THE YEARS; IS THAT

22   TRUE?

23   A    YES.

24   Q    IN FACT, YOU'VE RECEIVED AT LEAST $2 TO $3 MILLION; IS

25   THAT TRUE?                                                   04:08
```

EXHIBIT _____ 35 _____

3650

1    A    YES.

2    Q    YOU AND YOUR WIFE LAST RECEIVED A PAYMENT FOR BRATZ AS

3    RECENTLY AS THREE OR FOUR MONTHS AGO.

4    A    A LITTLE LONGER.  I THINK ABOUT FOUR OR FIVE MONTHS AGO.

5    Q    AND YOU CERTAINLY HOPE YOU'LL GET MORE MONEY FROM THEM IN         04:09

6    THE FUTURE; IS THAT RIGHT?

7              MS. AGUIAR:  OBJECTION.  VAGUE AND AMBIGUOUS AS TO

8    WHO WAS MAKING THOSE PAYMENTS.

9              THE COURT:  SUSTAINED.

10   BY MR. ZELLER:

11   Q    DO YOU HAVE AN EXPECTATION THAT YOU'LL RECEIVE MONEY IN

12   THE FUTURE FROM THEM?

13             MS. AGUIAR:  OBJECTION.  SAME OBJECTIONS.

14             THE COURT:  FROM WHO, COUNSEL?  IT'S NOT CLEAR.

15             SUSTAINED.                                                    04:09

16   BY MR. ZELLER:

17   Q    ISN'T IT TRUE THAT DURING THE TIME THAT YOU AND

18   VERONICA MARLOW HAVE PROVIDED SERVICES TO MGA, YOU'VE DONE THAT

19   UNDER THE DIRECTION OF MGA AND CARTER BRYANT?

20             MS. AGUIAR:  OBJECTION.  FOUNDATION; ASSUMES FACTS            04:09

21   NOT IN EVIDENCE.

22             THE COURT:  LAY A FOUNDATION, COUNSEL.

23   BY MR. ZELLER:

24   Q    I TAKE IT THAT YOU HAVE PERSONALLY BEEN INVOLVED IN

25   COMMUNICATIONS WITH CARTER BRYANT AND MGA INSOFAR AS THEY              04:10

```
 1   PERTAIN TO WORK PERFORMED ON THE BRATZ PROJECT GOING BACK TO
 2   2000; RIGHT?
 3   A     CORRECT.
 4   Q     YOU HAVE PERSONAL KNOWLEDGE AS TO WHERE THOSE DIRECTIONS
 5   AND INSTRUCTIONS HAVE COME FROM; RIGHT?
 6   A     SOMETIMES.
 7   Q     AND THE ONES THAT YOU'RE AWARE OF, THOSE DIRECTIONS AND
 8   INSTRUCTIONS AS TO WHAT WORK TO DO, WHAT SERVICES TO PERFORM,
 9   THOSE HAVE COME FROM MGA AND CARTER BRYANT; IS THAT TRUE?
10   A     YES.
11   Q     AND CARTER BRYANT AND MGA HAVE HAD THE POWER TO APPROVE OR
12   DISAPPROVE THE WORK THAT YOU AND YOUR WIFE HAVE DONE ON BRATZ;
13   IS THAT TRUE?
14   A     YES.
15   Q     AND YOU AND VERONICA MARLOW HAVE, FROM TIME TO TIME, HELD
16   YOURSELVES OUT AS ACTING FOR MGA; IS THAT RIGHT?
17           MS. AGUIAR:  OBJECTION.  VAGUE; LACK OF FOUNDATION.
18           THE COURT:  EXPLAIN YOUR TERM, COUNSEL.
19   BY MR. ZELLER:
20   Q     HAVE YOU EVER TOLD ANYONE, OR HAS YOUR WIFE, TO YOUR
21   KNOWLEDGE, EVER TOLD ANYONE, THAT YOU AND SHE WERE WORKING OR
22   ACTING ON MGA'S BEHALF; IN OTHER WORDS, DOING SOMETHING FOR
23   MGA?
24   A     NO.
25   Q     THAT'S NEVER HAPPENED?
```

04:1C
04:1C
04:1C
04:11
04:11

3689

1          HAVE A GOOD WEEK.  I'LL SEE YOU NEXT TUESDAY.

2          **THE CLERK:**  COURT STANDS ADJOURNED.

3

4

5

6

7

8

9

10                              CERTIFICATE

11

12   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
13   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
14   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

15

16

17   THERESA A. LANZA, RPR, CSR                    6-30-08
     OFFICIAL COURT REPORTER                        DATE

18

19

20

21

22

23

24

25

TUESDAY, JUNE 24, 2008     EXHIBIT____35____     TRIAL DAY 17, AFTERNOON SESSION

                           PAGE____432____

3033



1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                        - - -

4        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                        - - -

6    MATTEL, INC.,              :   PAGES 3033 - 3190
                                :
7              PLAINTIFF,        :
                                :
8        VS.                     :   NO. ED CV04-09049-SGL
                                :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,    :   CV04-9059 & CV05-2727]
     ET AL.,                     :
10                               :
               DEFENDANTS.       :
11   _____:

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17             WEDNESDAY, JUNE 18, 2008

18               JURY TRIAL - DAY 15

19                AFTERNOON SESSION

20

21

22                        MARK SCHWEITZER, CSR, RPR, CRR
                          OFFICIAL COURT REPORTER
23                        UNITED STATES DISTRICT COURT
                          181-H ROYBAL FEDERAL BUILDING
24                        255 EAST TEMPLE STREET
                          LOS ANGELES, CALIFORNIA 90012
25                        (213) 663-3494

CERTIFIED
COPY

EXHIBIT ____35____

PAGE ____433____

1   basic agreement was, but -- and it's 403, because if he gets

2   into this, we're going to have to get into all of the fee

3   arrangements because it didn't turn out to be 3 percent.  It

4   turned out to be much more.

5               THE COURT:  How much more ?

6               MR. NOLAN:  I don't know the percentage, but I can

7   tell you, Judge, that there's been an issue about legal fees

8   in this case for some period of time with the Keker, Van Nest

9   firm.  And Mr. --

10              THE COURT:  I guess my thought is that for

11  impeachment purposes, they are entitled to get into what the

12  arrangement was.  Because it goes to this whole issue of

13  credibility and the relationship between MGA and Carter

14  Bryant.  Obviously, this would be a lot easier if we could

15  just get a straight answer from Carter Bryant on this point.

16  If he doesn't remember, I understand that, then he may not

17  remember.

18              MR. NOLAN:  Could I ask the Court to have Mr. Price

19  ask the question that has not been asked, and that is what

20  was the basic agreement in this case.

21              THE COURT:  Okay.

22              MR. NOLAN:  And then -- because that hasn't been

23  asked.

24              THE COURT:  Fair enough.

25              MS. AGUIAR:  Could we get a clarification?

EXHIBIT _____ 35

PAGE_____ 434

1          THE COURT:  Yes.

2          MS. AGUIAR:  If we go ahead and ask these

3   questions, will we then be allowed to ask is that how it

4   actually ended up playing out?

5          THE COURT:  Sure.  That's fine.

6          **(CONCLUSION OF SIDEBAR CONFERENCE.)**

7          THE COURT:  You may proceed, Counsel.

8          MR. PRICE:  Thank you.

9   Q.   Mr. Bryant, was it the basic agreement between you and

10  MGA that you'd pay 3 percent of the attorneys' fees and MGA

11  pays the rest?

12  A.   I'm not exactly sure.

13         MR. PRICE:  May I read this, your Honor?

14         THE COURT:  You may.

15         MR. PRICE:  (Reading.)

16         "Question:  Who is paying your attorneys' fees?

17         "Answer:  My attorneys' fees are partly paid by MGA

18  and myself.

19         "Question:  You pay 3 percent, and MGA pays the

20  rest?

21         "Answer:  That's the basic arrangement."

22         THE WITNESS:  Okay.

23  Q.   BY MR. PRICE:  I'd like you to look, Mr. Bryant, at some

24  maps which you saw on your direct.  It's Exhibit 18507.  And

25  I want to call your attention to the last page in that,

EXHIBIT____35____

PAGE____435____

1   18507-004.

2          Do you recall you were shown this during your

3   examination; correct?

4   A.   Yes.

5   Q.   And this is where you lived in Kimberling City; correct?

6   A.   Yes.

7   Q.   And I think your testimony was that this 65 is an

8   interstate; correct?

9   A.   I think so, yes.

10  Q.   And 160 is a state road?

11  A.   I'm not sure what you call it.  It's a highway.

12  Q.   And I think your testimony was that if you took the

13  Battlefield Mall and took the route that takes you to 65,

14  you'd end up somewhere besides Kimberling City; correct?

15  A.   I believe so, yes.

16  Q.   But, sir, isn't it true that there's a place around

17  Highlandville where you go over and you get on the 65?

18  A.   I'm not sure.

19  Q.   As you're driving up 160, you don't notice a sign saying

20  interstate that-away?

21  A.   There could be.  I don't recall it.

22          MR. NOLAN:   Is that an offer of proof?  There's

23  lack of foundation.

24          THE COURT:   Overruled.

25  Q.   BY MR. PRICE:   I think when you showed us the

EXHIBIT ____ 35 ____

PAGE ____ 436 ____

3190

1

2 (Proceedings concluded at 5:50 P.M.)

3

4

5

6

7    **C E R T I F I C A T E**

8

9

10   I hereby certify that pursuant to Title 28,

11 Section 753 United States Code, the foregoing is a true and

12 correct transcript of the stenographically reported

13 proceedings in the above matter.

14   Certified on June 18, 2008.

15

16

17   MARK SCHWEITZER, CSR, RPR, CRR
    Official Court Reporter
18   License No. 10514

19

20

21

22

23

24

25

EXHIBIT _____ 35

PAGE _____ 437

4202



```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                       EASTERN DIVISION

 4                          - - -

 5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                          - - -

 7   MATTEL, INC.,                    CERTIFIED

 8                 PLAINTIFF,    )     COPY

 9        VS.                    )    NO. CV 04-09049

10   MGA ENTERTAINMENT, INC., ET. AL.,)

11                 DEFENDANTS.   )    TRIAL DAY 20
                                 )    MORNING SESSION
12   AND CONSOLIDATED ACTIONS,   )    PAGES 4202-4331
                                 )
13

14

15       REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                   RIVERSIDE, CALIFORNIA

17                 THURSDAY, JULY 3, 2008

18                      8:19 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              FEDERAL OFFICIAL COURT REPORTER
24               3470 12TH STREET, RM. 134
               RIVERSIDE, CALIFORNIA  92501
25                   951-274-0844
                  WWW.THERESALANZA.COM
```

EXHIBIT ___35___

PAGE ___438___

4264

1              THE WITNESS:  OF 2000.

2    BY MR. NOLAN:

3    Q    WAS THAT FIGURINE THAT YOU SCULPTED ON OCTOBER 6, 2000,

4    THE FINAL BRATZ SCULPT?

5              MR. PRICE:  OBJECTION.  IRRELEVANT.          09:46

6              THE COURT:  SUSTAINED.

7    BY MR. NOLAN:

8    Q    NOW, WE TALKED ABOUT THE FACT THAT YOUR HUSBAND WORKS AT

9    MATTEL; CORRECT?

10   A    CORRECT.                                         09:46

11   Q    YOU'RE REPRESENTED BY COUNSEL IN THIS CASE, AREN'T YOU?

12   A    YES.

13   Q    WHAT'S THE NAME OF YOUR COUNSEL?

14   A    LARRY MCFARLAND.

15   Q    AT SOME POINT IN TIME AFTER YOU DID THE SCULPTING ON     09:46

16   BRATZ, DID YOU BECOME AN EMPLOYEE OF MGA?

17   A    YES.

18   Q    WHAT PERIOD OF TIME WERE YOU EMPLOYED BY MGA?

19   A    IT WAS APRIL OF 2005 TO MARCH OF 2007.

20   Q    WHERE DID YOU GO TO WORK AFTER MGA?                09:47

21   A    I WENT TO THE DISNEY STORE.

22   Q    DID YOU RESIGN FROM MGA BEFORE YOU STARTED TO WORK AT

23   MATTEL?

24   A    AT THE DISNEY STORE?

25   Q    AT THE DISNEY STORE.  I'M SORRY.                  09:4

THURSDAY, JULY 3, 2008

EXHIBIT __35__

PAGE __439__

TRIAL DAY 20, MORNING SESSION

4265

```
 1   A    YEAH.   I RESIGNED FROM THEM BEFORE I STARTED EMPLOYMENT
 2   WITH THEM AS A FULL-TIME EMPLOYEE.
 3   Q    WERE YOU RECRUITED FROM MGA?
 4   A    YES, I WAS.
 5   Q    WHO RECRUITED YOU?                                        09:47
 6   A    A GUY NAMED -- HIS NAME WAS DAVID -- AND I'M DRAWING A
 7   BLANK ON HIS LAST NAME.  OH, DAVID HARRISON.
 8   Q    WAS IVY ROSS EMPLOYED AT THE DISNEY STORES AT THE TIME YOU
 9   WENT TO WORK THERE?
10   A    YES, SHE WAS.  I INTERVIEWED WITH HER.                    09:47
11   Q    DID YOU INTERVIEW WITH MS. ROSS AT THE DISNEY STORE WHILE
12   YOU WERE STILL EMPLOYED AT MGA?
13   A    YES, I DID.
14   Q    DID YOU INTERVIEW AT THE DISNEY STORE WITH THE PERMISSION
15   OF ANYBODY AT MGA?                                             09:48
16   A    NO.
17   Q    YOUR LAWYER, LARRY MCFARLAND, REPRESENTS YOU; CORRECT?
18   A    CORRECT.
19   Q    AND YOUR LEGAL FEES ARE BEING PAID BY MGA; CORRECT?
20   A    CORRECT.                                                  09:48
21   Q    DID YOU BELIEVE THAT THERE WAS ANYTHING INAPPROPRIATE
22   ABOUT THAT?
23            MR. PRICE:  OBJECTION.  IRRELEVANT.
24            WE'RE NOT CLAIMING THERE IS.
25            THE COURT:  AS PHRASED, SUSTAINED.                    09:4
```

EXHIBIT ___35___

```
 1   BY MR. NOLAN:
 2   Q    IN ANY EVENT, DID YOU EVER RECEIVE A PHONE CALL FROM A
 3   REPRESENTATIVE OF THE MATTEL LEGAL DEPARTMENT?
 4              MR. PRICE:  OBJECTION.  IRRELEVANT.
 5              - SIDE-BAR, YOUR HONOR?                              09:48
 6              THE COURT:  YES.
 7              (WHEREUPON, THE FOLLOWING PROCEEDINGS
 8              WERE HELD AT SIDE-BAR:)
 9              THE COURT:  WHERE IS THIS GOING?
10              MR. NOLAN:  MICHAEL MOORE, IN-HOUSE COUNSEL, CONTACTS  09:49
11   MS. LEAHY, PUTS IN A PRETEXT PHONE CALL, SAYING THAT HE'S
12   CALLING FOR MATTEL ABOUT WORK.  SHE'S AN OUTSIDE VENDOR.  HE
13   THEN ASKS HER A SERIES OF QUESTIONS ABOUT OFFERING COUNSEL FOR
14   HER.  WHEN SHE SAYS NO, THAT SHE IS ALREADY REPRESENTED BY
15   COUNSEL, THEY GO TO HER HUSBAND AT MATTEL.  THEY HAVE A MEETING  09:49
16   WITH HER HUSBAND -- I BELIEVE IT'S ON TWO OCCASIONS, BUT
17   CERTAINLY ON ONE -- WHERE THEY SAY THEY BELIEVE MS. LEAHY IS
18   NOT BEING REPRESENTED PROPERLY AND THEY WOULD LIKE HER TO
19   CHANGE COUNSEL.
20              THE COURT:  THEY SAY THIS TO HER HUSBAND?             09:50
21              MR. NOLAN:  YES.
22              AND THEN THIS LETTER IS WRITTEN THAT I'M NOW OFFERING
23   -- THERE'S AN EXHIBIT NUMBER, I DON'T HAVE IT HERE, BUT I
24   REPRESENT IT'S JANUARY 5, 2000, TO QUINN EMANUEL FROM THE LAW
25   FIRM OF SIDLEY AUSTIN WHICH THEY DIRECT TO MR. QUINN'S FIRM      09:50
```

EXHIBIT ___35___

```
 1              MR. NOLAN:  NO.  THAT'S THE POINT.

 2              IF I COULD HAVE EXHIBIT 1133 WHICH IS THE EXHIBIT

 3    THAT WAS USED AT THE DEPOSITION, THAT PORTION HAS BEEN

 4    REDACTED; SO 1132, MY UNDERSTANDING, IS NOT EXHIBIT.

 5              THE COURT:  I'M GOING TO EXCUSE THE JURY AND WE'RE      11:42

 6    GOING TO GET TO THE BOTTOM OF THIS.

 7              (WHEREUPON JURORS DEPART COURTROOM.)

 8              THE COURT:  COUNSEL, I'LL GIVE YOU A FEW CHANCES TO

 9    TALK ABOUT THIS AMONGST YOURSELVES.

10              (WHEREUPON A LUNCH RECESS WAS HELD.)                   11:43

11              (MORNING SESSION CONCLUDED.)

12

13

14

15

16

17                              CERTIFICATE

18

19    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
      ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.
22

23

24    THERESA A. LANZA, RPR, CSR                    7-7-08
      OFFICIAL COURT REPORTER                        DATE
25                                                                    11:47
```

EXHIBIT _____35_____

PAGE _____442_____

THURSDAY, JULY 3, 2008          TRIAL DAY 20, MORNING SESSION

# EXHIBIT 36

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 37

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 38

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 39

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,               Consolidated with
                                         Case No. CV 04-09059
14       v.                              Case No. CV 05-02727

15  MATTEL, INC., a Delaware             MATTEL, INC.'S FIRST SET OF
    corporation,                         REQUESTS FOR DOCUMENTS AND
16                                       THINGS RE CLAIMS OF UNFAIR
                Defendant.               COMPETITION TO MGA
17                                       ENTERTAINMENT, INC.

18  AND CONSOLIDATED CASES.

19

20

21         Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,

22  Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these

23  document requests ("Requests") and make available for inspection and copying

24  originals of the following documents within 30 days of service at the offices of

25  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

26  floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement responses to

27  these requests at such times and to the extent required by Rule 26(e) of the Federal

28  Rules of Civil Procedure.

## I.   **DEFINITIONS**

For purposes of these Requests, the following definitions apply:

A.   The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.   The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.   The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

1   specifically includes, but is not limited to, conversations in person, telephone
2   conversations, electronic mail (including instant messages and text messages),
3   voicemail, letters, memoranda, statements, media releases, magazine and newspaper
4   articles, and video and audio transmissions.

5        E.    "EMBODIMENT" means any representation of the identified
6   product or its retail packaging, whether two-dimensional or three-dimensional, and
7   whether in tangible, digital, electronic or other form, including but not limited to all
8   works, designs, artwork, sketches, drawings, illustrations, representations,
9   depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,
10  samples, reductions to practice, developments, inventions and/or improvements, as
11  well as all other items, things and DOCUMENTS in which any of the foregoing are
12  or have been expressed, embodied, contained, fixed or reflected in any manner,
13  whether in whole or in part.

14       F.    "CONTESTED MGA PRODUCTS" means the CONTESTED
15  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the
16  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the
17  CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED
18  MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS
19  PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has
20  ever been known as, or sold, offered for sale, licensed, offered for license or
21  marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's
22  Little," "Alienracers," or any derivative thereof, that provides a basis for any claim
23  by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz
24  Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed
25  Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best
26  Friends," "Mommy's Little Patient," and "Alienracers."

27       G.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of
28  the following that provides a basis for any claim by YOU against MATTEL: (i) any

07975/1928319.2

1  EMBODIMENT or project ever known by the name "Bratz" or any derivative

2  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3  project is or has been also, previously or subsequently called) and any doll or any

4  portion thereof that is now or has ever been known as, or sold, offered for sale,

5  licensed, offered for license or marketed under, the name or term "Bratz" or any

6  derivative thereof (whether in whole or in part and regardless of what such doll is or

7  has been also, previously or subsequently called), and all prototypes, models,

8  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9  playset and accessory that YOU distribute under the name "Bratz" or any derivative

10  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11  promotional materials or other thing or item or material manufactured, produced,

12  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13  imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14  on YOUR behalf under the name "Bratz" or any derivative thereof.

15      H.    "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16  following that provides a basis for any claim by YOU against MATTEL: (i) any

17  EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19  project is or has been also, previously or subsequently called) and any toy pet or any

20  portion thereof that is now or has ever been known as, or sold, offered for sale,

21  licensed, offered for license or marketed under, the name or term "Bratz" or any

22  derivative thereof (whether in whole or in part and regardless of what such toy pet is

23  or has been also, previously or subsequently called), and all prototypes, models,

24  samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25  any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26  derivative thereof; and/or (iii) any and all other goods, product packaging,

27  advertisements, promotional materials or other thing or item or material

28  manufactured, produced, printed, ordered, marketed, advertised, promoted,

1 | displayed, distributed, shipped, imported, exported, licensed, offered for license,

2 | sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

3 | any derivative thereof.

4 |         I.     "CONTESTED BRATZ FUNKY FASHION MAKEOVER

5 | HEAD" means any of the following that provides a basis for any claim by YOU

6 | against MATTEL: (i) any EMBODIMENT or project ever known by the name

7 | "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

8 | or in part and regardless of what such EMBODIMENT or project is or has been

9 | also, previously or subsequently called) and any styling head or any portion thereof

10 | that is now or has ever been known as, or sold, offered for sale, licensed, offered for

11 | license or marketed under, the name or term "Bratz" or any derivative thereof

12 | (whether in whole or in part and regardless of what such styling head is or has been

13 | also, previously or subsequently called), and all prototypes, models, samples and

14 | versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

15 | accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

16 | Head" or any derivative thereof; and/or (iii) any and all other goods, product

17 | packaging, advertisements, promotional materials or other thing or item or material

18 | manufactured, produced, printed, ordered, marketed, advertised, promoted,

19 | displayed, distributed, shipped, imported, exported, licensed, offered for license,

20 | sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

21 | Fashion Makeover Head" or any derivative thereof.

22 |         J.     "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

23 | any of the following that provides a basis for any claim by YOU against MATTEL:

24 | (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

25 | any derivative thereof (whether in whole or in part and regardless of what such

26 | EMBODIMENT or project is or has been also, previously or subsequently called)

27 | and any doll or any portion thereof that is now or has ever been known as, or sold,

28 | offered for sale, licensed, offered for license or marketed under, the name or term

1   "4-ever Best Friends" or any derivative thereof (whether in whole or in part and

2   regardless of what such doll is or has been also, previously or subsequently called),

3   and all prototypes, models, samples and versions of such EMBODIMENT, doll or

4   any portion thereof; (ii) any playset and accessory that YOU distribute under the

5   name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other

6   goods, product packaging, advertisements, promotional materials or other thing or

7   item or material manufactured, produced, printed, ordered, marketed, advertised,

8   promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

9   license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever

10  Best Friends" or any derivative thereof.

11          K.      "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"

12  means any of the following that provides a basis for any claim by YOU against

13  MATTEL: (i) any EMBODIMENT or project ever known by the name "Mommy's

14  Little Patient" or similar name or any derivative thereof (whether in whole or in part

15  and regardless of what such EMBODIMENT or project is or has been also,

16  previously or subsequently called) and any doll or any portion thereof that is now or

17  has ever been known as, or sold, offered for sale, licensed, offered for license or

18  marketed under, the name or term "Mommy's Little Patient" or similar name or any

19  derivative thereof (whether in whole or in part and regardless of what such doll is or

20  has been also, previously or subsequently called), and all prototypes, models,

21  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

22  playset and accessory that YOU distribute under the name "Mommy's Little Patient"

23  or similar name or any derivative thereof; and/or (iii) any and all other goods,

24  product packaging, advertisements, promotional materials or other thing or item or

25  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

26  displayed, distributed, shipped, imported, exported, licensed, offered for license,

27  sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's

28  Little Patient" or similar name or any derivative thereof.

07975/1928319.2

EXHIBIT ____39____

PAGE ____625____

-6-

1        L.    "CONTESTED ALIENRACERS PRODUCTS" means any of

2    the following that provides a basis for any claim by YOU against MATTEL: (i) any

3    EMBODIMENT or project ever known by the name "Alienracers" or any derivative

4    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5    project is or has been also, previously or subsequently called) and any toy vehicle,

6    character, or any portion thereof that is now or has ever been known as, or sold,

7    offered for sale, licensed, offered for license or marketed under, the name or term

8    "Alienracers" or any derivative thereof (whether in whole or in part and regardless

9    of what such toy is or has been also, previously or subsequently called), and all

10   prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

11   character, or any portion thereof; (ii) any playset and accessory that YOU distribute

12   under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other

13   goods, product packaging, advertisements, promotional materials or other thing or

14   item or material manufactured, produced, printed, ordered, marketed, advertised,

15   promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

16   license, sold or offered for sale by YOU or on YOUR behalf under the name

17   "Alienracers" or any derivative thereof.

18       M.    "CONTESTED MATTEL PRODUCTS" means the

19   CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED

20   MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY

21   SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the

22   CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the

23   CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy,

24   portion thereof, or version thereof that is now or has ever been known as, or sold,

25   offered for sale, licensed, offered for license or marketed under the name or terms

26   "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof,

27   that provides a basis for any claim by YOU against MATTEL, including but not

28   limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

EXHIBIT ___39___

PAGE ___626___

-7-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1 Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"
2 "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene
3 Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"
4 and "Mattel Acceleracers."

5         N.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"
6 means any of the following that provides a basis for any claim by YOU against
7 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene"
8 or any derivative thereof (whether in whole or in part and regardless of what such
9 EMBODIMENT or project is or has been also, previously or subsequently called)
10 and any doll or any portion thereof that is now or has ever been known as, or sold,
11 offered for sale, licensed, offered for license or marketed under, the name or term
12 "My Scene" or any derivative thereof (whether in whole or in part and regardless of
13 what such doll is or has been also, previously or subsequently called), and all
14 prototypes, models, samples and versions of such EMBODIMENT, doll or any
15 portion thereof; (ii) any playset and accessory that MATTEL distributes under the
16 name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,
17 product packaging, advertisements, promotional materials or other thing or item or
18 material manufactured, produced, printed, ordered, marketed, advertised, promoted,
19 displayed, distributed, shipped, imported, exported, licensed, offered for license,
20 sold or offered for sale by MATTEL under the name "My Scene" or any derivative
21 thereof.

22         O.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS"
23 means any of the following that provides a basis for any claim by YOU against
24 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene
25 Pets" or any derivative thereof (whether in whole or in part and regardless of what
26 such EMBODIMENT or project is or has been also, previously or subsequently
27 called) and any toy pet or any portion thereof that is now or has ever been known as,
28 or sold, offered for sale, licensed, offered for license or marketed under, the name or

EXHIBIT _____ 39

PAGE _____ 627

-8-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1 term "My Scene" or any derivative thereof (whether in whole or in part and

2 regardless of what such toy pet is or has been also, previously or subsequently

3 called), and all prototypes, models, samples and versions of such EMBODIMENT,

4 toy pet or any portion thereof; (ii) any playset and accessory that MATTEL

5 distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)

6 any and all other goods, product packaging, advertisements, promotional materials

7 or other thing or item or material manufactured, produced, printed, ordered,

8 marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,

9 licensed, offered for license, sold or offered for sale by MATTEL under the name

10 "My Scene Pets" or any derivative thereof.

11         P.     "CONTESTED MATTEL MY SCENE STYLING HEAD"

12 means any of the following that provides a basis for any claim by YOU against

13 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene

14 Styling Head" or any derivative thereof (whether in whole or in part and regardless

15 of what such EMBODIMENT or project is or has been also, previously or

16 subsequently called) and any styling head or any portion thereof that is now or has

17 ever been known as, or sold, offered for sale, licensed, offered for license or

18 marketed under, the name or term "My Scene" or any derivative thereof (whether in

19 whole or in part and regardless of what such styling head is or has been also,

20 previously or subsequently called), and all prototypes, models, samples and versions

21 of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that

22 MATTEL distributes under the name "My Scene Styling Head" or any derivative

23 thereof; and/or (iii) any and all other goods, product packaging, advertisements,

24 promotional materials or other thing or item or material manufactured, produced,

25 printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

26 imported, exported, licensed, offered for license, sold or offered for sale by

27 MATTEL under the name "My Scene Styling Head" or any derivative thereof.

28

EXHIBIT ___39___

PAGE ___628___

-9-

1          Q.      "CONTESTED MATTEL WEE-3 PRODUCTS" means any of

2   the following that provides a basis for any claim by YOU against MATTEL:  (i) any

3   EMBODIMENT or project ever known by the name "Wee-3" or any derivative

4   thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5   project is or has been also, previously or subsequently called) and any doll or any

6   portion thereof that is now or has ever been known as, or sold, offered for sale,

7   licensed, offered for license or marketed under, the name or term "Wee-3" or any

8   derivative thereof (whether in whole or in part and regardless of what such doll is or

9   has been also, previously or subsequently called), and all prototypes, models,

10  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

11  playset and accessory that MATTEL distributes under the name "Wee-3" or any

12  derivative thereof; and/or (iii) any and all other goods, product packaging,

13  advertisements, promotional materials or other thing or item or material

14  manufactured, produced, printed, ordered, marketed, advertised, promoted,

15  displayed, distributed, shipped, imported, exported, licensed, offered for license,

16  sold or offered for sale by MATTEL under the name "Wee-3" or any derivative

17  thereof.

18          R.      "CONTESTED MATTEL LITTLE MOMMY DOLL

19  PRODUCTS" means any of the following that provides a basis for any claim by

20  YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the

21  name "Little Mommy" or any derivative thereof (whether in whole or in part and

22  regardless of what such EMBODIMENT or project is or has been also, previously or

23  subsequently called) and any doll or any portion thereof that is now or has ever been

24  known as, or sold, offered for sale, licensed, offered for license or marketed under,

25  the name or term "Little Mommy" or any derivative thereof (whether in whole or in

26  part and regardless of what such doll is or has been also, previously or subsequently

27  called), and all prototypes, models, samples and versions of such EMBODIMENT,

28  doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

EXHIBIT    39

-10-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

PAGE    629

1 | under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all
2 | other goods, product packaging, advertisements, promotional materials or other
3 | thing or item or material manufactured, produced, printed, ordered, marketed,
4 | advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,
5 | offered for license, sold or offered for sale by MATTEL under the name "Little
6 | Mommy" or any derivative thereof.

7 |        S.    "CONTESTED MATTEL ACCELERACERS PRODUCTS"
8 | means any of the following that provides a basis for any claim by YOU against
9 | MATTEL: (i) any EMBODIMENT or project ever known by the name
10 | "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless
11 | of what such EMBODIMENT or project is or has been also, previously or
12 | subsequently called) and any toy vehicle, character, or any portion thereof that is
13 | now or has ever been known as, or sold, offered for sale, licensed, offered for
14 | license or marketed under, the name or term "AcceleRacers" or any derivative
15 | thereof (whether in whole or in part and regardless of what such toy is or has been
16 | also, previously or subsequently called), and all prototypes, models, samples and
17 | versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)
18 | any playset and accessory that MATTEL distributes under the name "AcceleRacers"
19 | or any derivative thereof ; and/or (iii) any and all other goods, product packaging,
20 | advertisements, promotional materials or other thing or item or material
21 | manufactured, produced, printed, ordered, marketed, advertised, promoted,
22 | displayed, distributed, shipped, imported, exported, licensed, offered for license,
23 | sold or offered for sale by MATTEL under the name "AcceleRacers" or any
24 | derivative thereof.

25 |        T.    The term "PERSON," in the plural as well as the singular, means
26 | any natural person, association, partnership, corporation, joint venture, government
27 | entity, organization, trust, institution, proprietorship, or any other entity recognized
28 | as having an existence under the laws in United States or any other nation.

EXHIBIT __39__

PAGE __630__

-11-

1       U.      The term "RELATING TO" means any and all of the following

2    terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

3    mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

4    identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

5       V.      "COMPLAINT" means the Complaint for False Designation of

6    Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

7    Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

8    California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

9    § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

10   about April 13, 2005.

11

12   **II.    INSTRUCTIONS**

13       A.      YOU are to produce all requested DOCUMENTS in YOUR

14   possession, custody or control.

15       B.      If YOU contend that YOU are not required to produce certain

16   DOCUMENTS called for by these Requests on the grounds of a privilege or

17   protection that YOU are not prepared to waive, identify each such DOCUMENT

18   and provide the following information:

19          1.              the date and type of the DOCUMENT, the author(s) and

20                          all recipients;

21          2.              the privilege or protection that YOU claim permits YOU

22                          to withhold the DOCUMENT;

23          3.              the title and subject matter of the DOCUMENT;

24          4.              any additional facts on which YOU base YOUR claim of

25                          privilege or protection; and

26          5.              the identity of the current custodian of the original of the

27                          DOCUMENT.

28

07975/1928319.2

EXHIBIT    39

PAGE    031

-12-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1        C.    DOCUMENTS shall be produced in their original file folders, or

2    in lieu thereof, any writing on the file folder from which each such DOCUMENT is

3    taken shall be copied and appended to such DOCUMENT and the PERSON for

4    whom or department, division or office for which the DOCUMENT or the file

5    folder is maintained shall be identified.

6        D.    The DOCUMENTS should be produced in their complete and

7    unaltered form.  Attachments to DOCUMENTS should not be removed.  The

8    DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for

9    any reason, including alleged nonrelevance.  If emails are produced that had

10   attachments, the attachments shall be attached when produced.

11       E.    DOCUMENTS in electronic form shall be produced in that form.

12       F.    In the event that any DOCUMENT called for by these requests

13   has been destroyed or discarded, that DOCUMENT is to be identified by stating:

14       1.    the date and type of the DOCUMENT, the author(s) and

15       all recipients;

16       2.    the DOCUMENT's date, subject matter, number of pages,

17       and attachments or appendices;

18       3.    the date of destruction or discard, manner of destruction

19       or discard, and reason for destruction or discard;

20       4.    the PERSONS who were authorized to carry out such

21       destruction or discard;

22       5.    the PERSONS who have knowledge of the content,

23       origins, distribution and destruction of the DOCUMENT;

24       and

25       6.    whether any copies of the document exist and, if so, the

26       name of the custodian of each copy.

27

28

EXHIBIT ___39___

PAGE ___032___

-13-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1 │ REQUEST FOR PRODUCTION NO. 74:

2 │       All DOCUMENTS, including but not limited to all

3 │ COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation

4 │ from Mattel.

5 │

6 │ REQUEST FOR PRODUCTION NO. 75:

7 │       All DOCUMENTS, including but not limited to all

8 │ COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9 │ or any other item of value paid to Machado, whether directly or indirectly, by YOU.

10 │

11 │ REQUEST FOR PRODUCTION NO. 76:

12 │       All DOCUMENTS received by YOU, directly or indirectly, from

13 │ Machado RELATING TO any MATTEL product or plan.

14 │

15 │ REQUEST FOR PRODUCTION NO. 77:

16 │       All DOCUMENTS, including but not limited to all

17 │ COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18 │ reproduction, copying, storage, transmission, transfer, retention, destruction,

19 │ deletion or use of any DOCUMENTS, data and/or information, including but not

20 │ limited to any compilation of information, that was prepared, made, created,

21 │ generated, assembled or compiled by or for MATTEL and that YOU received,

22 │ directly or indirectly, from Machado.

23 │

24 │ REQUEST FOR PRODUCTION NO. 78:

25 │       A copy of each personnel file maintained or created by YOU

26 │ RELATING TO Machado.

27 │

28 │

1  REQUEST FOR PRODUCTION NO. 84:

2          All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 85:

7          All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 86:

12          All DOCUMENTS received by YOU, directly or indirectly, from

13  Trueba RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 87:

16          All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Trueba.

23

24  REQUEST FOR PRODUCTION NO. 88:

25          A copy of each personnel file maintained or created by YOU

26  RELATING TO Trueba.

27

28

REQUEST FOR PRODUCTION NO. 94:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 96:

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 97:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

REQUEST FOR PRODUCTION NO. 98:

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

1  REQUEST FOR PRODUCTION NO. 104:

2          All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 105:

7          All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 106:

12          All DOCUMENTS received by YOU, directly or indirectly, from

13  Brisbois RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 107:

16          All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Brisbois.

23

24  REQUEST FOR PRODUCTION NO. 108:

25          A copy of each personnel file maintained or created by YOU

26  RELATING TO Brisbois.

27

28

EXHIBIT ___39___

07975/1928319:2

-35-

PAGE ___636___        MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  REQUEST FOR PRODUCTION NO. 114:

2        All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 115:

7        All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

10

11 REQUEST FOR PRODUCTION NO. 116:

12       All DOCUMENTS received by YOU, directly or indirectly, from

13 Brawer RELATING TO any MATTEL product or plan.

14

15 REQUEST FOR PRODUCTION NO. 117:

16       All DOCUMENTS, including but not limited to all

17 COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18 reproduction, copying, storage, transmission, transfer, retention, destruction,

19 deletion or use of any DOCUMENTS, data and/or information, including but not

20 limited to any compilation of information, that was prepared, made, created,

21 generated, assembled or compiled by or for MATTEL and that YOU received,

22 directly or indirectly, from Brawer.

23

24 REQUEST FOR PRODUCTION NO. 118:

25       All DOCUMENTS RELATING TO the existence or extent of

26 competition or substitution between any of the CONTESTED MGA PRODUCTS

27 and any of the CONTESTED MATTEL PRODUCTS.

28

EXHIBIT __39__

PAGE __037__

07975/1928319.2

1  REQUEST FOR PRODUCTION NO. 166:

2        To the extent not produced in response to any other Request for

3  Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4  upon in this action.

5

6  DATED:  December 18, 2006          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
7

8                                      By
9                                         Timothy L. Alger
10                                        Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/1928319.2

EXHIBIT __39__

PAGE __638__

-47-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)