1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12        Plaintiff, | Consolidated with Case No. CV 04-09059, Case No. CV 05-02727 |
| 13      vs. | **DISCOVERY MATTER** |
| 14  MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]** |
| 15        Defendant. | |
| 16 | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL MGA ENTERTAINMENT, INC. AND ISAAC LARIAN TO PRODUCE DOCUMENTS RESPONSIVE TO MATTEL'S FIRST SETS OF REQUESTS FOR DOCUMENTS (PHASE 2); AND |
| 17  AND CONSOLIDATED ACTIONS | |
| 18 | |
| 19 | |
| 20 | MEMORANDUM OF POINTS AND AUTHORITIES |
| 21    **PUBLIC REDACTED** | [Mattel, Inc.'s Notice of Lodging, and Declaration of Jon Corey filed concurrently herewith] |
| 22 | |
| 23 | |
| 24 | Hearing Date:    TBD |
| 25 | Time:            TBD |
| | Place:           Arent Fox, LLP |
| | | 555 West Fifth Street |
| 26 | | Los Angeles, CA 90013 |
| 27 | Phase 2: |
| | Disc. Cut-off:   Dec. 11, 2009 |
| 28 | Pre-trial Con.:  Mar. 1, 2010 |
| | Trial Date:      Mar. 23, 2010 |

07975/3022131.1

1 | TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

2 |     Please take notice that at a hearing before Discovery Master Robert C.

3 | O'Brien on a date and at a time to be determined by the Discovery Master,

4 | Mattel, Inc. ("Mattel") will, and hereby does, move for an order overruling

5 | objections by MGA Entertainment, Inc. ("MGA") and Isaac Larian (collectively, the

6 | "MGA Parties") and compelling the MGA Parties to produce documents responsive

7 | to Mattel's respective First Set of Requests for Documents and Things (Phase 2) (the

8 | "Requests") to each of them; and to the extent either party is withholding documents

9 | on the basis of privilege, to provide a privilege log.

10 |     This Motion is made pursuant to Rule 34 of the Federal Rules of Civil

11 | Procedure on the grounds that the requests seek discoverable information.

12 |     This Motion is based on this Notice of Motion and Motion, the accompanying

13 | Memorandum of Points and Authorities, the Notice of Lodging and Declaration of

14 | Jon Corey filed concurrently herewith, the records and files of this Court, and all

15 | other matters of which the Discovery Master may take judicial notice.

16 | **Certificate Of Compliance**

17 |     Despite Mattel's repeated efforts, MGA refused to meet and confer.  MGA took

18 | the position that the Discovery Master's March 10 Order directing certain third parties

19 | to produce documents "mooted" the requests made to them and relieved them of any

20 | obligation even to meet and confer to discuss their previously served objections.[1]

21 |

22 |

23 |

24 |

25 |

26 |

27 | [1] Declaration of Jon D. Corey ("Corey Dec."), ¶¶ 6-9; and Exhs. 5, 7, 8 to the Corey Dec.

28 |

-1-

DATED:  July 22, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
　　Michael T. Zeller
　　Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT ........................................................................................ 7

I.   MATTEL IS ENTITLED TO BROAD DISCOVERY INTO THE MGA PARTIES' FINANCES ............................................................. 7

    A.   Financial Condition And Net Worth Are Relevant to Phase 2 Damages and Liability ................................................................ 7

    B.   The Financial Documents Sought Here Are Directly Relevant to Isaac Larian's Credibility as a Witness in Phase 2 ................... 10

II.   MATTEL'S INDIVIDUAL REQUESTS SPECIFICALLY RELATE TO PHASE 2 ISSUES ................................................................... 11

    A.   Financial Statements and Related Documents Are Relevant to Determining Net Worth ............................................................. 11

    B.   Documents Related To The MGA Parties' Solvency Or Insolvency are Relevant to Phase 2 ............................................ 13

    C.   Documents Related To MGA's Debt Are Relevant To MGA's Financial Condition, Damages, And Mattel's Claim of Unfair Competition ............................................................................. 15

        1.   Documents Related To The MGA Parties Dealings With Omni Are Relevant To Net Worth, Disgorgement, Unfair Competition And RICO ............................................. 15

        2.   Documents Related To The MGA Parties' Dealings With Other Parties Related To Its Debt Acquisition Are Relevant To Damages, Unfair Competition, And Fraudulent Transfers .......................................................... 18

        3.   Documents Related To Other Debt Owed By MGA Are Relevant to Net Worth ..................................................... 19

    D.   Documents Related To The Transfer Of Assets To Larian Or His Family Members Are Relevant to Phase 2 Issues ................ 20

    E.   Documents Related To The Sale Of Bratz Products Are Relevant To Phase 2 Damages and Liability .......................................... 22

        1.   The Discovery Master Has Already Recognized The Relevance Of The Sale Of Bratz Products To The IGWT Parties ......................................................................... 22

|    |      |    |    |                                                                                          |     |
|----|------|----|----|------------------------------------------------------------------------------------------|-----|
|    |      | 2. |    | Documents Related To The Identity Of Managing Members And Owners Of The IGWT Parties      | 25  |
|    |      | 3. |    | Documents Related To The Sale Of Bratz Products To Other Entities                         | 25  |
| III. | MATTEL'S REQUESTS ARE RELEVANT TO MATTEL'S PHASE 2 RICO CLAIMS |    |    |                                      | 26  |
|    | A.   |    |    | Mattel Alleged A Wide-Ranging, Ongoing Criminal Enterprise, Justifying Similarly Broad Discovery | 26  |
|    | B.   |    |    | Mattel's Requests Are Relevant To Its RICO Claims                                         | 29  |
|    |      | 1. |    | Documents Related To The Direct Use of Mattel Property                                    | 29  |
|    |      | 2. |    | Documents Related To Additional RICO Predicates And The Pattern Of Racketeering           | 30  |
| IV. | THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED |    |    |                             | 32  |
|    | A.   |    |    | The Boilerplate Objections Are Improper                                                   | 32  |
|    | B.   |    |    | The January 7, 2009 Court Order Does Not Preclude Any Discovery                           | 32  |
|    | C.   |    |    | Mattel's Requests Do Not Impose an Undue Burden                                           | 33  |
|    | D.   |    |    | Confidentiality Is Assured by the Protective Order                                        | 33  |
| V.  | THE MGA PARTIES SHOULD PRODUCE ADEQUATE PRIVILEGE LOGS |    |    |                                       | 34  |
| CONCLUSION |    |    |    |                                                                                  | 35  |

# TABLE OF AUTHORITIES

**Page**

## Cases

Bible v. Rio Properties, Inc.,
  246 F.R.D. 614 (C.D. Cal. 2007)..................................................................8

Burke v. Dowling,
  944 F. Supp. 1036 (E.D.N.Y. 1995) ...........................................................16

Burks v. Poppy Const. Co.,
  57 Cal. 2d 463 (1962) ...................................................................................16

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,
  408 F.3d 1142 (9th Cir. 2005) .....................................................................34

Conopco, Inc. v. Wein,
  2007 WL 2119507 (S.D.N.Y. July 23, 2007)..............................................27

Eastman Kodak Co. v. Camarata,
  238 F.R.D. 372 (W.D.N.Y. 2006) ...............................................................27

Federal Rules of Civil Procedure. A. Farber and Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006).......................................................1, 32, 33

Goodman v. U.S.,
  369 F.2d 166 (9th Cir. 1966) .......................................................................32

H.J. Inc. v. Northwestern Bell Tel. Co.,
  492 U.S. 229 (1989)......................................................................................27

Halperin v. Berlandi,
  114 F.R.D. 8 (D. Mass. 1986) .....................................................................27

Heathman v. U.S. Dist. Court,
  503 F.2d 1032 (9th Cir. 1974) .......................................................................7

In re Heritage Bond Litigation,
  2004 WL 1970058 (C.D. Cal. 2004) ...........................................................33

Hilao v. Estate of Marcos,
  103 F.3d 767 (9th Cir. 1996)  (financial condition a relevant factor in awarding
  punitive damages)..........................................................................................8

Housing Rights Center v. Sterling,
  2005 WL 3320739 (C.D. Cal. 2005) ...........................................................22

JZ Buckingham Investments, LLC v. United States,
  78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ..............................................................32

Keith H. v. Long Beach Unified School District,
  228 F.R.D. 652 (C.D. Cal. 2005)..................................................................33

Korea Supply Co. v. Lockheed Martin Corp.,
  29 Cal. 4th 1134 (2003) .................................................................. 9

Kraus v. Trinity Management Servs., Inc.,
  23 Cal. 4th 116 (2000) .................................................................. 9

Microsoft Corp. v. Technology Enterprises, LLC,
  2008 WL 424613 (S.D. Ind. February 13, 2008) ................................. 22

New England Data Services, Inc. v. Becher,
  829 F.2d 286 (1st Cir. 1987) ..................................................... 28, 29

Northrop Corp. v. McDonnell Douglas Corp.,
  751 F.2d 395 (D.C. Cir. 1984) ......................................................... 33

Oppenheimer Fund, Inc. v. Sanders,
  437 U.S. 340 (1978) ...................................................................... 27

Panola Land Buyers Ass'n v. Shuman,
  762 F.2d 1550 (11th Cir. 1985) ....................................................... 32

Putnam v. Eli Lilly and Co.,
  508 F. Supp. 2d 812 (C.D. Cal. 2007) .............................................. 33

Ragge v. MCA/Universal Studios,
  165 F.R.D. 601 (C.D. Cal. 1995) ..................................................... 10

Robert L. Cloud & Associates v. Mikesell,
  69 Cal. App. 4th 1141 (1999) ........................................................... 9

Rubin v. Green,
  4 Cal. 4th 1187 (1993) .................................................................. 16

Saunders v. Superior Court,
  27 Cal. App. 4th 832 (Cal. App. 1994) ............................................. 16

Sebago, Inc. v. Beazer East, Inc.,
  18 F. Supp. 2d 70 (D. Mass. 1998) .................................................. 28

Sedima, S.P.R.L. v. Imrex Co., Inc.,
  473 U.S. 479 (1985) ...................................................................... 27

Southern California Housing Rights Center v. Krug,
  2006 WL 4122148 (C.D. Cal. 2006) ................................................... 9

Southwest Hide Co. v. Goldston,
  127 F.R.D. 481 (N.D. Tex. 1989) ..................................................... 27

Sullivan v. Prudential Ins. Co. of America,
  233 F.R.D. 573 (C. D. Cal. 2005) ...................................................... 8

U.S. v. City of Torrance,
  164 F.R.D. 493 (C.D. Cal. 1995) ..................................................... 10

Wallace v. Abramson,
     1988 WL 63065 (D.D.C. June 7, 1988)...............................................................28

Wells Fargo Bank, N.A. v. Konover,
     2009 WL 585434 (D. Conn. March 4, 2009) ........................................................21

## **Statutes**

18 U.S.C.
     § 157 ....................................................................................................................16
     § 1956 .............................................................................................................16, 30
     § 1957 ..................................................................................................................30
     § 2314 ..................................................................................................................30

Bus. & Prof. Code
     § 17200 ................................................................................................................16

Fed. R. Civ. P.

     Rule 26 ..............................................................................................................7, 8
     Rule 26(b) ..............................................................................................................7
     Rule 26(b)(1)...........................................................................................17, 20, 22
     Rule 34 ..................................................................................................................1

### Preliminary Statement

Time again, the MGA Parties sought to interfere with Mattel's right to discovery from third parties by arguing it "can get everything [it] needs . . . *from MGA.*"[2]  Yet in response to Mattel's first Phase 2 Requests for Production -- seeking information about MGA's and Larian's net worth, debts, capital contributions, transfers of assets, and transactions with related parties -- the MGA Parties have refused to produce even a single document.

Even though the Court, the former Discovery Master, and the present Discovery Master have all ruled that the financial condition and net worth of MGA and Larian are relevant to Mattel's Phase 2 claims, MGA and Larian will not produce any financial statements, projections of costs and profits from the sale of Bratz products, or other documents establishing their true net worth.  The MGA Parties refuse to disclose the sources and nature of the funding for Omni 808 Investors, LLC's ("Omni 808") purported acquisition of roughly $300 million in alleged MGA "debt" and its extension of millions of dollars of additional "credit" that MGA claims it must repay, even though that transaction is critical both to MGA's net worth and to Mattel's RICO claims, included in the Third Amended Answer and Counterclaims ("TAAC").  MGA has even refused to produce the very types of documents that the Discovery Master concluded were relevant under the standard applied to requests made to *third* parties *prior* to the amendments which made these transactions relevant to liability as well as damages.

Mattel also seeks documents related to transfers of money and items of value to Larian, his family, or entities controlled by them.  Such documents are clearly relevant because Mattel is entitled to the MGA Parties' ill-gotten gains even if the proceeds have been transferred to other parties.  These documents are also relevant

---

[2]   March 4, 2009 Hearing Transcript, at 84:6-7 (emphasis added), Corey Dec., Exh. 43.

1   to net worth, as funds looted from MGA must be allocated in any fair net worth
2   assessment.  As the Court also found in appointing the Temporary Receiver, "Good
3   cause exists to believe that the MGA parties . . . have engaged in, are engaging in, or
4   are about to engage in transactions, acts, practices and courses of business that
5   constitute fraudulent transfers of assets and violations of Mattel's ownership and
6   other rights in and to the Bratz Brand and Bratz assets."[3]  And lest there be any
7   doubt, the Court granted -- and Mattel has filed -- a Third Amended Answer and
8   Counterclaims, which expressly expanded the scope of the Phase 2 to include
9   Mattel's claims alleging fraudulent transfers and additional RICO violations based
10  upon the MGA Parties' financial misconduct.  The specific allegations of money
11  transfers, money laundering, and financial fraud including the Omni Parties, the
12  IGWT Parties, and related third-parties are now explicitly at issue in Phase 2.

13      MGA's refusal to provide even a single responsive page to any of these
14  requests cannot be squared with the prior rulings of the Discovery Master or the
15  Court.  Indeed, the Discovery Master granted in large part Mattel's Motion for
16  Reconsideration of Order No. 3, and compelled Omni 808 and other third parties to
17  produce additional documents in response to requests virtually identical to those
18  made to MGA because the information sought is relevant and discoverable.  MGA
19  and Larian should be compelled to produce.

20                         **Statement of Facts**

21          **Mattel Serves First Sets of Requests for Production on MGA and**
22  **Larian**.  On January 7, 2009, Mattel served its First Sets of Requests for Production

23
24
25
26  _____
27  [3]   May 21, 2009 Court Order, Corey Dec., Exh. 49; Third Amended Answer and
    Counterclaims, Corey Dec., Exh. 45.
28

1   regarding Phase 2 on MGA and Larian.[4]  The two sets of requests track each other
2   closely, seeking documents from the relevant periods relating to:

3       • MGA's and Larian's financial statements, including "audited and
4   unaudited" financial statements (No. 1);

5       • MGA's and Larian's financial condition, including "projected
6   revenue, costs, profits, or financial performance" (No. 13), and recent "capital
7   contributions" (No. 12);

8       • MGA's and Larian's "net worth" (Nos. 6-7);

9       • MGA's and Larian's "representations or statements" about their
10  "solvency or insolvency" (Nos. 4, 5, 11);

11      • MGA's debts, including "agreements and contracts with any lenders
12  to or creditors of MGA" (No. 2), Omni party documents (Nos. 24-27, 33-34, 43-49,
13  among others), persons from whom MGA sought or obtained credit (No. 3), and
14  Wachovia-related documents, (Nos. 22-23);

15      • The identity of MGA's purported debtors, including information
16  about the owners and managers of Omni 808, Lexington Financial, and Vision
17  Capital (Nos. 28-32, 35);

18      • Transfers of money and items of value, such as transfers to Larian,
19  his family, or entities controlled by them (Nos. 10, 14-18, 20-21), and identification
20  of relevant bank accounts involved in transfers (Nos. 38-41, 48-49); and

21
22
_____

23  [4]  First Set of RFPs re: Larian, Corey Dec., Exh. 1; First Set of RFPs re: MGA,
    Corey Dec., Exh. 2.  On March 13, 2009, Mattel served a new set of the same RFPs
24  in which one of the financing entity's names was corrected throughout in response to
    one of the third-party's refusal to produce relevant materials based on a
25  typographical error.  See March 13, 2009 letter from J. Corey to Amman Khan, and
26  attached First Set of Requests for Documents and Things to MGA, Inc. (Phase 2),
    and First Set of Requests for Documents and Things to Isaac Larian (Phase 2),
27  Corey Dec., Exh. 9.  The MGA Parties did not object to service of the amended set.

28

• Sales and disposition of Bratz products, including information related to the IGWT Parties (Nos. 16-21, 28-29, 35-36, 40-42), "orders" of "Bratz products" (Nos. 8-9), samples of recent Bratz products (No. 53), and information about "payments" from Bratz licensees (No. 51) and other items of value, such as Bratz and Jade trademarks (Nos. 54-57).[5]

MGA and Larian served objections on February 6, 2009.[6]

**Mattel Subpoenas Relevant Documents From Third Parties**.  After the Court lifted the Phase 2 discovery stay, Mattel also served subpoenas on the Omni Parties (Omni 808, Vision Capital, LLC, and Lexington Financial Limited) and the IGWT Group (IGWT 826 and IGWT Group, LLC ).  The MGA Parties filed a motion to quash the subpoenas, and Mattel filed a motion to compel.  At the hearing before the Discovery Master on March 4, MGA repeatedly invited Mattel to secure the documents in questions directly from MGA:

• "[I]f the argument is we want to know the impact on MGA, whether it's a cost to MGA, *they can get that from MGA*."[7]

• "*[A]nd they can get all that discovery from MGA*."[8]

• "*He can get everything he needs*, without any burden on a third party, *from MGA*."[9]

• "[I]f it is, in fact, relevant that MGA was paying on that note, *he can get that from MGA.  There's no question about that*."[10]

---

[5]   The Requests are Exhibits 1 and 2 to the Corey Dec.
[6]   MGA's Responses to Requests for Documents, Corey Dec., Exh. 3; Larian's Responses to Requests for Documents, Corey Dec., Exh. 4.
[7]   March 4, 2009 Hearing Transcript, at 41:10-12 (emphasis added), Corey Dec., Exh. 43.
[8]   Id. at 45:13-14 (emphasis added).
[9]   Id. at 84:6-7 (emphasis added).
[10]   Id. at 84:8-10 (emphasis added).

1    • "[W]hile it is true that they're not required in the first instance to go

2    to MGA, *I think we should be sending a message here that that is what they should*

3    *do*."[11]

4    • "I didn't hear anything from Mr. Zeller that suggests why it is they

5    couldn't go to MGA in the first instance. *They can get the purchase information.*"[12]

6    • "What IGWT sold it for might be of interest, but it's still burdensome

7    because *that same information can be gotten directly from MGA*."[13]

8    • "*[T]hey should go to MGA first*."[14]

9    On March 10, 2009, the Discovery Master issued an order granting in part (as

10   to the IGWT Group) and denying in part (as to most of the requests to the Omni

11   Parties) Mattel's motion to compel.[15]  The Discovery Master concluded that MGA's

12   net worth was clearly relevant to damages, and that documents relating to the IGWT

13   Group, controlled by Isaac Larian, would be critical to determining net worth.  But

14   the Discovery Master declined to produce several categories of documents based on

15   Counsel's representation that neither MGA nor Larian had funded Omni 808's

16   alleged acquisition of the debt:

17   MR. GORDINIER:  What documents do we have that show that

18   either Mr. Larian or MGA paid money into this to purchase this debt?  *I*

19   *can tell you there are none. . . .  The allegations that were made and*

20   *were made publicly are unconscionable and can't be undone.*[16]

21   **The MGA Parties Deny Any Obligation to Meet and Confer or Produce.**

22   On March 4, 2009, counsel for Mattel wrote to counsel for the MGA Parties,

23

---

11   Id. at 86:1-4 (emphasis added).

24   12   Id. at 86:6-8 (emphasis added).

25   13   Id. at 86:14-15 (emphasis added).

     14   Id. at 88:7 (emphasis added).

26   15   March 10, 2009 Discovery Master Order No. 3, Corey Dec., Exh. 6.

27

28

1  requesting that the MGA Parties meet and confer to discuss their refusal to produce

2  any documents responsive to the January 7 requests.[17]  The MGA Parties' counsel

3  wrote back on March 11, 2009, claiming that the March 10 Order relieved MGA of

4  any obligation even to meet and confer.[18]  "[Y]our 'meet and confer' letter is

5  premature in light of the March 10, 2009 Order, which relates to and resolves many

6  of the issues set forth in your letter.  Your attempt to 'meet and confer' on those

7  issues is, at the very least, deficient because your letter fails to show how Mattel's

8  position with respect to each of the disputed Requests is supported, if at all, by the

9  recent March 10, 2009 Order."[19]  Mattel wrote again on March 13, pointing out that

10 the March 10 Order was made without prejudice to Mattel's right to seek discovery

11 from the MGA Parties and requesting times to meet and confer about the requests

12 "in the next day or two."  MGA never responded.[20]

13      **The Discovery Master Reconsiders Order No. 3 and Compels Third**

14 **Parties to Produce Additional Documents**.  On March 24, Mattel asked the

15 Discovery Master to reconsider his March 10 decision in light of recently produced

16 documents that indisputably establish Larian's and MGA's involvement in the

17 Wachovia debt acquisition transaction, and prove that the transaction was anything

18 but 'arm's length.'  On May 6, 2009, the Discovery Master heard Mattel's Motion to

---

19  [16]  March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Corey Dec., Exh.

20  43.

21  [17]  March 4, 2009 letter from J. Corey to A. Khan, Corey Dec., Exh. 5.

   [18]  The MGA Parties also claim in their objections that the requests violate Judge

22  Infante's May 7, 2008 Order in which he allegedly found that "similarly phrased

23  requests to third parties" were overly burdensome and improper.  First, the
   subpoenas at issue in the May 7, 2008 Order sought different information and went

24  to different issues than the present requests.  Second, Judge Infante made clear that

25  "[n]othing in this Order is intended to authorize or preclude Mattel from seeking
   documents from the non-parties identified herein as part of Phase 2 discovery, if

26  appropriate."  May 7, 2008 Order, at 13:5-6, Corey Dec., Exh. 39.

27  [19]  March 11, 2009 letter from A. Khan to Corey, Corey Dec., Exh. 7.

28

1   Reconsider Order No. 3  and -- based on the new information produced by other
2   third parties -- granted the motion in large part, compelling Omni 808 and Vision
3   Capital to produce documents they were not required to produce pursuant to Order
4   No. 3.[21]

5         **Mattel Files the Third Amended Answer and Counterclaims**.  On May 21,
6   2009, the Court granted Mattel's motion for leave to file a TAAC.  In granting
7   Mattel's motion, the Court recognized that the new pleading would "dramatically
8   expand the scope of the present litigation" by adding, among other things, further
9   RICO allegations.[22]  Mattel filed the TAAC on May 22, 2009.[23]  In addition to
10  expanding the scope of Mattel's claims and specifying the participation of relevant
11  third parties, Mattel added a claim for Avoidance of Intentional Constructive
12  Fraudulent Transfers Under Uniform Fraudulent Transfer Act.  The basis of the
13  additional claim is that MGA and Larian have "engaged in fraudulent transfers" to
14  the detriment of Mattel's status as a creditor of MGA and Larian.[24]

15

16                              **Argument**
17  **I.    MATTEL IS ENTITLED TO BROAD DISCOVERY INTO THE MGA**
18       **PARTIES' FINANCES**
19       **A.    Financial Condition And Net Worth Are Relevant To Phase 2**
20            **Damages And Liability**
21            Pursuant to Fed. R. Civ. P. 26(b)(1), "Parties may obtain discovery
22  regarding any non-privileged matter that is relevant to any party's claim or defense."
23

24  [20]   March 13, 2009 letter from J. Corey to Amman Khan, Corey Dec., Exh. 8.
25  [21]   May 6, 2009 Discovery Master Order No. 27 (Under Seal), Corey Dec., Exh. 50.
26  [22]   May 21, 2009 Order, at 6, Corey Dec., Exh. 49.
27  [23]   TAAC, Corey Dec., Exh. 45.
28  [24]   TAAC, ¶¶ 217-222, Corey Dec., Exh. 45.

The relevance standard set by Rule 26 "has a very broad meaning." Heathman v. U.S. Dist. Court, 503 F.2d 1032, 1035 (9th Cir. 1974). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." Bible v. Rio Properties, Inc., 246 F.R.D. 614, 617 (C.D. Cal. 2007) (internal quotations and citation omitted). Given the broad reach of Rule 26 discovery, the burden is on the party resisting discovery to show that it should not be allowed. Sullivan v. Prudential Ins. Co. of America, 233 F.R.D. 573, 575 (C. D. Cal. 2005). MGA cannot meet that burden.

Judge Larson, the former Discovery Master, and the present Discovery Master have all concluded that evidence going to Larian's and MGA's net worth is relevant and discoverable.[25] As Judge Larson recognized: "I can see tremendous overlap between, for example, discovery on financial condition of the company as it relates to damages in the [sic] Phase 2 and also issues that the receiver is looking at."[26] Similarly, the Discovery Master rejected the MGA Parties' argument that net worth and financial condition were irrelevant to Phase 2 and compelled Omni 808 and the IGWT Group to produce documents relevant to Mattel's Phase 2 damages claims.[27] The Discovery Master's March 31 Order, directed at MGA and Larian, also specifically references the relevance of net worth to "Phase 2 issues, including, among other things, damages sought against Larian."[28]

---

[25]   July 2, 2007 Order, at 5, Corey Dec., Exh. 15; March 10, 2009 Discovery Master Order No. 3, Corey Dec., Exh. 6.

[26]   February 11, 2009 Hearing Transcript, at 100:20-101:8, Corey Dec., Exh. 10 (emphasis added).

[27]   March 10, 2009 Discovery Master Order No. 3, at 19-20, 26-27, Corey Dec., Exh. 6.

[28]   March 31, 2009 Discovery Master Order No. 11 (Amended), at 7:2-6, Corey Dec., Exh. 44.

The law is clear that a defendant's net worth, financial condition, and ability to pay any award are all factors relevant to an award of punitive damages.[29] See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82 & n. 7 (9th Cir. 1996) (financial condition a relevant factor in awarding punitive damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of federal courts permit pretrial discovery of financial information about defendants without requiring the plaintiff to establish a prima facie case on the issue of punitive damages."); Robert L. Cloud & Associates v. Mikesell, 69 Cal. App. 4th 1141,1148-1152 (1999) (defendant's "ability to pay damage award" and "financial condition" were relevant to determining award of punitive damages for misappropriation of trade secrets).

Disgorgement, which Mattel is also seeking, properly requires documentation of all funds obtained through the wrongful conduct. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003), quoting Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116, 127 (2000) ("[D]isgorgement is a broader remedy than restitution. . . . [A]n order for disgorgement may compel a defendant to surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons"). Detailed records as to MGA's revenue are essential to determining what MGA should be required to disgorge.

The MGA Parties' disposition of assets and financial relationships are also relevant to establishing Mattel's claim of unfair competition. Records on these subjects may reveal aspects of MGA's and Larian's wide-ranging unfairly competitive actions, including the exploitation of stolen Mattel trade secrets, the hiring or bribery of present and former Mattel employees, improper transfers of

---

[29]   TAAC, ¶ 11 in Prayer for Relief, Corey Dec., Exh. 45.

1  MGA's assets to defraud Mattel, or the use of such assets to manipulate net worth
2  and fraudulently compete with Mattel or otherwise deprive Mattel of moneys due.
3  All of these are anti-competitive actions encompassed by California's unfair
4  competition laws.

5      The financial documents sought here are also relevant to Mattel's defenses to
6  MGA's claims.  MGA claims that it "has suffered and, unless abated, will continue
7  to suffer lost sales, lost licensing fees, lost contracts, lost relationships, lost business
8  opportunities and other damages and harm"[30] and that Mattel's actions have
9  "wrongfully diverted profits away from MGA and to Mattel" in an amount of "tens
10  of millions of dollars."[31]  Documents relating to MGA's sales, profits, costs, and
11  asset transfers are essential to testing those claims.

12      Finally, the MGA Parties' financial condition is relevant to Mattel's added
13  claims arising out of the Omni transaction.  Mattel's TAAC alleges that the MGA
14  Parties fraudulently transferred millions of dollars in assets in an attempt to evade
15  their obligations to Mattel.[32]  Documents related to the MGA Parties' financial
16  transactions, as well as to the relationship between the participants in the
17  transactions, are essential to establishing these claims.[33]

18      **B.**  **The Financial Documents Sought Here Are Directly Relevant To**
19      **Isaac Larian's Credibility As A Witness in Phase 2**

20      The requests seek documents relevant to the MGA parties' financial condition,
21  profitability, disposition of assets, and dealings with certain third parties, all of
22  which are relevant to Larian's credibility.  Larian will almost certainly be a key

23

24  [30]  MGA Complaint, ¶ 100, Corey Dec., Exh. 21.
25  [31]  Id., ¶ 115, Prayer for Relief, ¶ 2.
    [32]  TAAC, ¶¶ 217-222, Corey Dec., Exh. 45.
26  [33]  July 9, 2009 Order, at 4-5, 11-12 (noting that relationships between MGA
27  Parties and others to the transaction are relevant to claims in Mattel's TAAC), Corey
    Dec., Exh. 52.
28

1   witness in the Phase 2 trial, much as he was in Phase 1.  As the Discovery Master

2   has noted, discoverable information generally includes evidence relevant to the

3   credibility of a party or a key witness.  See Ragge v. MCA/Universal Studios, 165

4   F.R.D. 601, 604 (C.D. Cal. 1995) (granting motion to compel documents pertaining

5   "to the credibility of witnesses including the named defendants"); U.S. v. City of

6   Torrance, 164 F.R.D. 493, 495 (C.D. Cal. 1995) (granting motion to compel

7   discovery because, inter alia, "the information and documents may relate to the

8   credibility of a witness, such as defendant DeLadurantey").  MGA and Larian have

9   repeatedly misstated and misrepresented MGA's solvency and financial condition to

10  the District Court and the Ninth Circuit, including under oath.  Mattel is entitled to

11  document these intentional misrepresentations in light of the financial records

12  showing the truth as MGA personnel knew it at the time.  Mattel is entitled to

13  documents which bear directly on Larian's honesty and consistency, including

14  Request Nos. 1-5, 6-7, 10, 12-15, 19-24, 25, 26-34, 35-36, 38-42, 43-49.

## II.   MATTEL'S INDIVIDUAL REQUESTS SPECIFICALLY RELATE TO PHASE 2 ISSUES

### A.   Financial Statements and Related Documents Are Relevant To Determining Net Worth.

Many of the Requests seek documents explicitly related to financial statements or "net worth" documents maintained by MGA and Larian.

- Request No. 1 seeks "audited and unaudited monthly, quarterly and annual financial statements covering or RELATING TO any period on or after January 1, 2007...."

- Request No. 6 seeks documents relating to MGA's "net worth for any period on or after January 1, 2007."

- Request No. 7 seeks documents related to Isaac Larian's "net worth for any period on or after January 1, 1007."

- Request No. 12 seeks documents that refer or related to "capital contributions to MGA since January 1, 2007."

1

2

- Request No. 13 seeks documents "showing MGA's projected revenue, costs, profits or financial performance for any period since January 1, 2007."

3

4

- Request No. 17 seeks documents "showing MGA's projected revenue, costs, profits or financial performance for any period since January 1, 2007."

These requests are of obvious relevance in determining MGA's and Larian's net worth and financial condition.  The financial statements of MGA and Larian were prepared by and/or at the direction of MGA and Larian.  Documents related to "net worth," as well as those projecting "revenue, costs, profits, and financial performance," are essential to determining the MGA Parties' financial condition. They are relevant to calculating punitive damages and, because they reflect the MGA Parties' profits and sources of income, are relevant to Mattel's disgorgement remedy as well.  These documents are also relevant to Mattel's defenses against MGA's claims that they have suffered financial harm as a result of Mattel's alleged wrongdoing (false designation and unfair competition).[34]  Notably, the Discovery Master in the March 31 Order compelled the MGA Parties to produce documents relating to "sales, profit and cash flow," "net worth," and "financial condition," concluding that such documents were clearly relevant to Mattel's damages claim.[35]

MGA's and Larian's financial statements, revenue and cost projections, and net worth documents should also reveal whether the MGA Parties have engaged in the looting of MGA by the improper transfer of assets or unloading of Bratz products at below-market rates to sham entities controlled by MGA or Larian.  As the Discovery Master recognized, there is evidence that MGA and Larian's

---

[34]   The same is true for documents related to "capital contributions" provided to MGA since January 1, 2007. [Request No. 12].  Given the MGA Parties' shifting claims regarding its solvency and financial condition, documents showing large infusions of capital -- and at what terms -- are relevant to financial condition and net worth.

1  structuring of the Omni 808 transaction with the IGWT parties was intended ████

2  ████████████████████████████████████████████ ,"[36] The Discovery

3  Master has already found that "such alleged misconduct, if proven, could violate the

4  Unfair Competition Law" and compelled the production of responsive documents

5  from the IGWT Parties.[37]  MGA and Larian are surely no less obliged to produce.

      **B.**    <u>**Documents Related To The MGA Parties' Solvency Or Insolvency**</u>
<u>**Are Relevant To Phase 2**</u>

8        Mattel's Requests also seek documents related to MGA's and Larian's

9  "solvency or insolvency."  These Requests arise out of the MGA Parties'

10  representations to the Court and the Ninth Circuit in support of their requests for

11  stays, but are also independently relevant to Mattel's  Phase 2 claims.[38]

> • Request No. 4 seeks documents related to "solvency or insolvency, or whether YOUR liabilities exceed YOUR assets, for any period on or after January 1, 2007."

> • Requests No. 5 seeks "any representation or statement made by YOU about YOUR solvency or insolvency, or whether YOUR liabilities exceed YOUR assets, for any period on or after January 1, 2007."

> • Request No. 11 seeks documents related to communications between MGA or Larian and "any third-party, including without limitation any retailer or distributor but excluding MATTEL and any Court, REFERRING OR RELATING TO YOUR *ex parte* application for stay pending appeal, filed December 11, 2008, including without limitation any declaration, whether final, draft, proposed or requested, in connection

---

[35]  March 31, 2009 Discovery Master Order No. 11 (Amended), at 1:19-3:21, 6:12-10:18, Corey Dec., Exh. 44.

[36]  May 6, 2009 Discovery Master Order No. 27, at 10:1-3, 15-17, Corey Dec., Exh. 50.

[37]  March 10, 2009 Discovery Master Order No. 3, at 2:19-21, Corey Dec., Exh. 6.

[38]  Notably, the Court has ruled that, "There's no longer a Phase 1/Phase 2 distinction." February 11, 2009 Hearing Transcript, at 97:8-11, Corey Dec., Exh. 10.

-13-

MTC MGA AND LARIAN RFPS (PHASE 2)

1

therewith and copies of all draft declarations in connection therewith."[39]

2

The question of when -- and why -- MGA became insolvent is central to Mattel's

3

Phase 2 allegations, as well as to MGA's ability to pay damages. If the MGA parties

4

intentionally looted MGA and diverted profits that should have gone into further

5

Bratz development, Mattel is entitled to damages for such wrongdoing. Indeed,

6

transfers made after MGA's insolvency are specifically subject to Mattel's fraudulent

7

transfers claim.[40]

8

Request No. 11 likewise refers to MGA's "solvency" or "insolvency," in

9

seeking documents related to MGA's and Larian's communications with third parties

10

about their December 11 representations to the Court in connection with the

11

requested stay. The MGA Parties had solicited representations from third parties

12

about the supposed impact that the Court's December 3 Orders would have on

13

MGA's financial condition and their own willingness to do business with MGA.

14

Records of these communications, as well as related draft declarations and

15

comments on drafts exchanged with third parties (and therefore not privileged) are

16

likely to contain candid assessments about the MGA Parties' true financial

17

condition. As potential prior inconsistent statements, they are plainly

18

discoverable.[41]

19

20

21

22

23

24

25

[39]   By its requests, Mattel does not seek any documents that have already been served on it during Phases 1 or 2.

26

[40]   TAAC, ¶¶ 221-22, Corey Dec., Exh. 45.

27

[41]   March 13, 2009 Discovery Master Order No. 6., 12:18-26, Corey Dec., Exh. 51.

28

-14-

**C.** **Documents Related To MGA's Debt Are Relevant To MGA's Financial Condition, Damages, And Mattel's Claim of Unfair Competition**

    **1.** **Documents Related To The MGA Parties Dealings With Omni Are Relevant To Net Worth, Disgorgement, Unfair Competition And RICO**

The validity of the "debt" owed by MGA to the Omni Parties is critical to the determination of MGA's net worth, as well as to the allegations of wrongdoing specifically arising out of that transaction. The value of MGA cannot be determined absent review of that transaction. Mattel therefore served the following Requests on MGA and Larian:

> • Request No. 24 seeks documents relating to "agreements, contracts or transactions between MGA and OMNI 808 INVESTORS, LLC, and any amendments or modifications thereto, and any COMMUNICATIONS REFERRING OR RELATING TO any such agreements, contracts or transactions."

> • Request No. 25 seeks documents "containing financial information, including but not limited to YOUR historical and prospective financial performance, provided by YOU to OMNI 808 INVESTORS, LLC, VISION CAPITAL, LLC or LEXINGTON FINANCIAL since January 1, 2008."

> • Request No. 39 seeks documents "sufficient to IDENTIFY each bank account to or from which OMNI 808 INVESTORS, LLC has transferred or has had transferred any ITEM OF VALUE since January 1, 2007."

> • Request Nos. 30, 31, and 32 seek documents "sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director of" Omni 808, Vision Capital, and Lexington.

In his Order No. 3, the Discovery Master compelled production from third parties of documents related to "any debt owed" by MGA to Omni 808, finding that "any information evidencing MGA's indebtedness to Omni 808 from the purchase of

1   the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth

2   (and hence punitive damages)."[42]  In reconsidering Order No. 3, the Discovery

3   Master further compelled Omni 808 and Vision Capital to produce additional

4   documents related to the debt transaction.[43]  No less should be expected of the MGA

5   Parties themselves.  Mattel has yet to be given the documents that a transaction of

6   this magnitude would necessarily have required.  MGA should be compelled to

7   produce the full documentation of the Omni 808 transaction.

8          Documents related to alleged debt are also relevant to Mattel's unfair

9   competition claim.  In its March 10 Order, the Discovery Master determined that the

10  MGA Parties' possible manipulation of its sources of funding to acquire its own debt

11  could not be unfair competition because it did not involve the "marketing or sale of

12  anything" and "does not fall within the ambit of the Unfair Competition Law."[44]  As

13  the Discovery Master has recognized, however, new evidence subsequently

14  produced by Wachovia and the IGWT Parties undermines the distinction argued by

15  the parties between the IGWT Parties, who were compelled to produce under the

16  original Order, and Omni 808, which was not.[45]  Additionally, the allegations

17  encompassed by Mattel's unfair competition claim have expressly expanded under

18  the TAAC to include these matters.  Because new evidence establishes that Omni

19  808 was part of the same scheme as IGWT, documents related to the Omni Parties

20

21

22

23  [42]   March 10, 2009 Discovery Master Order No. 3, at 19:20-22, Corey Dec.,
    Exh. 6.  For the same reasons, the Discovery Master should compel responses to
24  Request Nos. 22 and 23, which seek documents related to MGA's debt obligations to
    Wachovia.
25  [43]   May 6, 2009 Discovery Master Order No. 27, Corey Dec., Exh. 50.
26  [44]   Match 10, 2009 Discovery Master Order No. 3, at 24:23-25, Corey Dec., Exh.
    6.  The Discovery Master repeated this statement in Order No. 27.
27  [45]   Id., at 27:7-28:15.

28

1  dealings with MGA and each other are critical to Mattel's unfair competition claim

2  and fraudulent transfers claim.[46]

3      Request Nos. 30, 31, and 32 seek documents sufficient to identify the owners

4  and managers of Omni 808, Vision Capital, and Lexington.  Judge Larson's recent

5  orders noted that such facts are plainly relevant to Mattel's claims.[47]  Also, whether

6  these entities are owned or controlled, directly or indirectly, by Larian, his family

7  members, his associates, MGA, or MGA's associates is information a financial

8  expert would rely on to determine the true book value of MGA.[48]  If, as the evidence

9  to date indisputably shows, Omni 808 is controlled by MGA or Larian, or if the

10  funds for the transaction were provided by MGA or Larian, as the evidence shows,

11  then the debt acquisition was not an arm's-length transaction and the purported debt"

12  is in fact a capital contribution that should not be deducted from MGA's net worth.

---

13  [46]   In any event, unfair competition is not limited to "marketing or sales," but

14  reaches a broad scope of activities, encompassing "any unlawful, unfair or

15  fraudulent business act or practice." Bus. & Prof. Code § 17200.  The UCL is

16  "sweeping, embracing anything that can properly be called a business practice and
that at the same time is forbidden by law." Rubin v. Green, 4 Cal. 4th 1187, 1200

17  (1993).  Here, it appears that MGA and Larian's transfer of funds through sham
entities to acquire its own debt obligation and gain priority over other creditors may

18  violate 18 U.S.C. § 157 (prohibiting scheme to defraud in relationship to a

19  bankruptcy proceeding). A person or entity can violate § 157 even if no bankruptcy
action is pending, so long as the "ultimate intent" is to commit fraud therein.  See

20  Burke v. Dowling, 944 F. Supp. 1036, 1065 (E.D.N.Y. 1995).  Further, if the MGA

21  Parties used ill-gotten gains from misconduct to acquire the debt, then their actions
may also be unlawful money laundering.  18 U.S.C. § 1956.  Setting up single-

22  purpose corporations and funneling funds in order to purchase debt obligations can

23  properly be called a "business practice," see Burks v. Poppy Const. Co., 57 Cal. 2d
463, 468 (1962), that could be found "fraudulent" within the meaning of the UCL.

24  Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (Cal. App. 1994).

25  [47]   July 9, 2009 Order, at 5, Corey Dec., Exh. 52 (noting that the filing of the
TAAC "heightens the relevancy of the ... the formation of" entities the Omni

26  entities).

27

28

1   Notably, the Discovery Master has already observed that there is evidence showing

2   "█████████████████████████████████████████████████████████

3   ███████████████████" and that "████████████████████████████

4   ██████████████████████████████████████████████████████████

5   █████████████████████"[49]  Request Nos. 30-32 should also be

6   compelled because they seek information relevant to determining the "identity and

7   location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

8   The identity of the principals of the Omni entities is plainly discoverable for this

9   reason as well.

10        **2.     Documents Related To The MGA Parties' Dealings With**

11                 **Other Parties Related To Its Debt Acquisition Are Relevant**

12                 **To Damages, Unfair Competition, And Fraudulent Transfers**

13        Mattel seeks documents related to "agreements, contracts or transactions" and

14   "transfer of any funds, monies or any item of value" and related communications

15   with the entities which purportedly funded the Omni 808 acquisition of debt and

16   extension of credit to MGA.

17        • Request Nos. 26 and 27 seek documents related to
        "agreements, contracts or transactions between" Lexington
18        Financial or Vision Capital and the MGA Parties.

19        • Request Nos. 33 and 34 seek documents related to "any
        transfer of any funds, monies or any ITEM OF VALUE
20        from, or any extension of credit or funding by" Lexington
        Financial or Vision Capital to the MGA Parties.

21
        • Request Nos. 43 through 46 seek communications
22        referring to MGA, Larian, and/or Bratz "between or
        among" various persons and entities, including Omni 808,
23        Vision Capital, Lexington Financial, Mashian, Kadisha.

24

25   [48]   Declaration of Michael Wagner ("Wagner Dec."), ¶ 14, Notice of Lodging,
26   Exh. 2.
        [49]   May 6, 2009 Discovery Master Order No. 27, at 7:19-21, 24-26, Corey Dec.,
27   Exh. 50.

28

                                               MTC MGA AND LARIAN RFPS (PHASE 2)

1
- Request No. 47 seeks communications relating to Vision Capital, Lexington Financial, and Omni 808.

2
3
4
- Request Nos. 48 and 49 seek documents "sufficient to IDENTIFY each bank account to or from which" Vision Capital or Lexington Financial "transferred or has had transferred" any item of value since January 1, 2007."

5 Request Nos. 26, 27, 33, and 34 seek documents related to MGA's or Larian's

6 business transactions with Vision Capital and Lexington, documents which plainly

7 relate both to the MGA Parties' financial condition and to the related party status of

8 the Omni transaction.[50] Request Nos. 43 through 47 seek communications among

9 parties involved in the acquisition of MGA's debt obligation from Wachovia --

10 Omni 808, Vision Capital, Lexington, Neil Kadisha (the CEO of Omni 808 who was

11 directly involved with the debt acquisition), and Fred Mashian (Larian's brother-in-

12 law, who was involved with the loan acquisition) -- regarding MGA, Larian or

13 Bratz, in order to determine both the validity of the underlying transaction and the

14 disposition of assets which may belong to Mattel. To the extent that such

15 documents bear on the MGA Parties' financial condition, they are also relevant to

16 Mattel's punitive damages and disgorgement claims. To the extent that they reveal

17 the use of ill-gotten gains to fund debt acquisition and new "credit," in order to gain

18 priority among creditors, they are relevant to Mattel's claims of unfair competition

19 and fraudulent transfers. Request Nos. 48 and 49 are designed to lead to the

20 discovery of evidence of such transfers among the purported "third parties" and

21 MGA.

22 ### 3. Documents Related To Other Debt Owed By MGA Are
23 ### Relevant to Net Worth

24 Mattel seeks documents more generally related to MGA's debt obligations.

25
26
- All agreements and contracts with any lenders to or creditors of MGA covering, RELATING TO, in effect, dated or entered into on or after January 1, 2007, including

27
28

[50] Wagner Dec., ¶ 14, Notice of Lodging, Exh. 2.

without limitation loan agreements, credit agreements, financing agreements, lines of credit and promissory notes, and any amendments or modifications thereto, and any notices of default and COMMUNICATIONS REFERRING OR RELATING TO any such agreements and contracts. [Request No. 2].

• To the extent not produced in response to any other Request, DOCUMENTS sufficient to IDENTIFY each other PERSON from whom YOU sought, solicited, requested, obtained, received or were denied credit, financing or funding on or after January 1, 2007 and sufficient to show the amount(s) and terms involved. [Request No. 3].

MGA's manipulation of its debt in the period after January 1, 2007 relates directly to the financial condition and net worth issues already recognized as relevant to Phase 2 issues, since net worth calculations properly include a full and honest account of all "debt."  Here, we know that Larian made a number of ostensible ██████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████ ████████.[51]  Mattel is entitled to documents related to these transactions (and any others) that are relevant to MGA's debt obligations and, therefore, its net worth, and may lead to  the identification of potential witnesses knowledgeable about these issues. Fed. R. Civ. P. 26(b)(1).

**D.   <u>Documents Related To The Transfer Of Assets To Larian Or His Family Members Are Relevant to Phase 2 Issues</u>**

Mattel seeks documents related to the transfer of assets from MGA and Larian to Larian himself, members of his family, entities controlled by Larian, or other parties.

• Request No. 10 seeks documents related to "the transfer of any ITEM OF VALUE by MGA to, or for the benefit of, ISAAC LARIAN, any member of ISAAC LARIAN's

---

[51]   Omni 808-Wachovia Master Assignment and Exchange Agreement, at 003374, Corey Dec., Exh. 19.

1   family or any entity controlled by ISAAC LARIAN or any member of ISAAC LARIAN's family, since January 1, 2007."

2

3   • Request No. 14 seeks documents related to "any transfer of any ITEM OF VALUE or other transaction between (i) MGA, and (ii) ISAAC LARIAN, any ISAAC LARIAN family member, any PERSON controlled, directly or indirectly by ISAAC LARIAN, or any PERSON controlled, directly or indirectly, by any ISAAC LARIAN family member since January 1, 2007."

4

5

6

7   • Request No. 15 seeks "All W-2s REFERRING OR RELATING TO any ISAAC LARIAN family member since January 1, 2007."

8

9      The documents related to the transfer of assets to and from MGA and Larian

10 are related to MGA's and Larian's net worth and financial condition, which are

11 relevant to Mattel's Phase 2 damages. Further, Mattel seeks disgorgement of all ill-

12 gotten gains realized by MGA and Larian by way of their misconduct as alleged by

13 Mattel's Counterclaims, including misappropriating Mattel's trade secrets and unfair

14 competition and fraudulent transfers. To the extent MGA or Larian have attempted

15 to conceal or shelter their ill-gotten gains by transferring them to Larian or affiliates

16 or relatives of Larian, Mattel is entitled to the imposition of a constructive trust to

17 regain those transferred assets for a proper accounting of profits. The Discovery

18 Master has already recognized that the financial dealings of MGA and Larian with

19 Larian's family members and affiliates are properly discoverable. In its March 10

20 Order, the Discovery Master compelled the production of ownership interests,

21 funding by, and payments to, "Larian, his spouse, his children, his siblings, or their

22 spouses, or any entity or person affiliated with them."[52]

23      Mattel also seeks documents related to MGA's and Larian's bank accounts:

24   • Request No. 38 seeks documents "sufficient to IDENTIFY each bank account to or from which Isaac Larian has transferred or has had transferred any ITEM OF VALUE since January 1, 2007."

25

26

27   [52]  March 10, 2009 Discovery Master Order No. 3, at 29:16-30:4, 30:5-19, Corey Dec., Exh. 6.

28

07975/3022131.1

-21-

1  Documents responsive to Request No. 38 should be compelled because the ability to

2  trace the money among the various Larian and Larian-affiliated entities is essential

3  to the issues in Phase 2, including net worth and disgorgement, as well as the

4  substantive claims and defenses.  This includes documents related to MGA's and

5  Larian's net worth and therefore Mattel's punitive damages claim, the transfer of

6  value of what may be Mattel's property under its claims seeking disgorgement,

7  payments to Mattel employees which may be related to misappropriation of trade

8  secrets claims, fraudulent transfers, and MGA losses which it claims were inflicted

9  by Mattel.  <u>Wells Fargo Bank, N.A. v. Konover</u>, 2009 WL 585434, *9 (D. Conn.

10  March 4, 2009) (compelling production of information related to "common cash"

11  account used by defendants"); <u>Microsoft Corp. v. Technology Enterprises</u>, LLC,

12  2008 WL 424613, *2 (S.D. Ind. February 13, 2008) (denying motion to quash

13  subpoena of party's bank account because of relevance to "transactions alleged in

14  the complaint"); <u>Housing Rights Center v. Sterling</u>, 2005 WL 3320739, *3 (C.D.

15  Cal. 2005) (finding financial information relevant to disgorgement claim).  Such

16  Requests also properly seek information that will reveal other sources of

17  information and witnesses, including the identities of relevant banks.  <u>Fed. R. Civ.</u>

18  <u>P.</u> 26(b)(1).

19      **E.**    **<u>Documents Related To The Sale Of Bratz Products Are Relevant</u>**

20          **<u>To Phase 2 Damages and Liability</u>**

21          **1.**    **<u>The Discovery Master Has Already Recognized The</u>**

22              **<u>Relevance Of The Sale Of Bratz Products To The IGWT</u>**

23              **<u>Parties</u>**

24      Many of Mattel's requests seek documents related to the sale of Bratz

25  products to the IGWT Parties.  Larian created IGWT Group (said to be "In God We

26  Trust") on June 26, 2008 -- during the Phase 1 trial -- and registered its place of

27

28

business as his home address.[53]  Larian also created a company called IGWT 826 Investments on August 27, 2008 -- the day after the Phase 1 trial ended.[54]  IGWT 826 is registered at the home address of Shirin Makabi (Isaac Larian's sister) and Eli Makabi (Isaac Larian's brother-in-law and an MGA shareholder).[55]  The Discovery Master previously determined that the IGWT Parties are "single purpose entities created and controlled by Larian."[56]

The MGA Parties have not been forthcoming about IGWT.  In stay filings in the District Court and the Ninth Circuit, MGA relied on claims about Bratz inventory, but made no mention of the IGWT Parties significant inventory transactions nor disclosed on what terms they were obtaining Bratz inventory.[57] After Mattel brought IGWT to the Court's attention, MGA admitted that it ████████ ████████████████████████████████████████████████████████ ████████[58] the few pages of documents MGA then provided to the Court showed that it was ████████████████████████████.[59]  As the Discovery Master recognized, the documents produced by Wachovia and IGWT 826 ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████.[60]

Mattel served Requests on MGA and Larian seeking related documents:

_____

[53]  IWGT Group, LLC registration information, Corey Dec., Exh. 37.

[54]  IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 38.

[55]  Id.

[56]  March 10, 2009 Discovery Master Order No. 11, at 26:4, Corey Dec., Exh. 6.

[57]  Corey Dec., ¶ 37.

[58]  See MGA Parties' Opposition to Mattel, Inc.'s Ex Parte Application For Appointment of a Receiver, dated December 30, 2008, at 10, Corey Dec., Exh. 22.

[59]  See Declaration of Cyrus Naim in Support of Mattel's Ex Parte Application For Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Corey Dec., Exh. 41.

[60]  May 6, 2009 Discovery Master Order No. 27, Corey Dec., Exh. 50.

- Request Nos. 17 and 20 seek documents related to "agreements, transactions, sales, shipments or the transfer of any ITEM OF VALUE" between MGA and IGWT Group or IGWT 826 Investments.

- Request No. 18 seeks documents related to the "transfer of product from MGA to IGWT Group, LLC pursuant to the Inventory Purchase Agreement dated July 7, 2007."

- Request Nos. 19 and 21 seek documents related to "the revenue generated by" the IGWT Group's or IGWT Investments' "sales, licensing, distribution or other transfer of BRATZ products and the transfer or disposition of such revenue."

- All COMMUNICATIONS between or among YOU, IGWT 826 Investments, LLC and/or IGWT Group, LLC REFERRING OR RELATING TO MATTEL and/or BRATZ. [Request No. 42].

- Request Nos. 40 and 41 seek documents "sufficient to IDENTIFY each bank account to or from which" IGWT 826 Investments or IGWT Group "has transferred or has had transferred any ITEM OF VALUE since January 1, 2007."

- Request No. 51 seeks documents "sufficient to show the amount of payments made to YOU by each licensee of any BRATZ product since January 1, 2007."

As the Discovery Master has already determined, documents related to the MGA Parties' financial dealings with the IGWT Parties are relevant to Mattel's Phase 2 damages claim and unfair competition claim. They are also relevant to Mattel's defenses to the MGA Parties' damages claims, which necessarily implicate MGA's earnings, profitability, and financial condition, and to Mattel's disgorgement claim. And because these documents will show whether MGA and Larian are transferring assets to other parties to shield them from recovery by Mattel, they are relevant to Mattel's disgorgement claim and claim for fraudulent transfers. Request Nos. 40 and 41 are especially important in light of recently produced evidence that MGA and Larian used IGWT 826 as a conduit to fund Omni 808's lending purported acquisition of MGA debt and its provision of a loan to MGA.

-24-

### 2.   Documents Related To The Identity Of Managing Members And Owners Of The IGWT Parties

Mattel also served requests seeking documents "sufficient to identify each managing member, holder of any ownership interest in, shareholder, officer and director of IGWT Group, LLC and IGWT 826 Investments, LLC." (Request Nos. 28, 29, 35, and 36).  The Discovery Master has already compelled broad production of documents by the IGWT Parties, noting that they are "affiliated with -- if not wholly owned by -- Larian," and that the documents relate to Phase 2 issues, including damages and unfair competition.[61]  Further, Mattel's TAAC specifically alleges that IGWT Group has been a conduit for fraudulent transfers aimed at frustrating Mattel's status as a creditor of MGA and Larian.[62]

### 3.   Documents Related To The Sale Of Bratz Products To Other Entities

Mattel's Requests also seek documents and tangible items related to the sale of Bratz products to others.

- Request No. 16 seeks documents related to "any sale, distribution or transfer by MGA of BRATZ products having a retail value greater than $50,000 other than to retailers in the ordinary course of business since January 1, 2007."

- Request Nos. 8 and 9 seek documents related to "orders, including without limitation cancelled or held orders, for BRATZ products" for the Spring and Fall of 2009.

- Request No. 53 seek "samples" of core Bratz female fashion dolls "manufactured, sold, offered for sale, marketed or distributed" since January 1, 2008.

- Request No. 51 seeks documents "sufficient to show the amount of payments made to YOU by each licensee of any BRATZ product since January 1, 2007."

- Request Nos. 54 through 57 seek documents, including communications, related to the registration or application

---

[61]  March 10, 2009 Discovery Master Order No. 3, at 26:4, Corey Dec., Exh. 6.
[62]  TAAC, ¶ 222, Corey Dec., Exh. 45

1    for any trademark or service mark that "constitutes,
     includes or incorporates in any manner" the terms
2    "BRATZ" and "Jade."

3    The documents and tangible items requested are related to the MGA Parties'

4   net worth and financial condition, and thus are relevant to Mattel's Phase 2 punitive

5   damages and disgorgement claims.  As the Discovery Master recognized in his

6   March 10, 2009 Order, Mattel has an "ownership interest" in the sale of MGA assets

7   "pursuant to the Court's December 3, 2008 ruling."[63]  The Court and the Discovery

8   Master have held that Mattel's interest in Bratz is "directly related to this litigation"

9   and should therefore be a basis for discovery.[64]  These documents are directly

10  relevant to the damages suffered by Mattel, as the rightful owner of Bratz, because

11  of MGA's wrongdoing.  Furthermore, the Requests seek information relating to

12  MGA's infringement of Mattel's rights in Bratz.  Such infringement are alleged to be

13  RICO predicate acts in the TAAC,[65] as discussed further below.

14  **III.   MATTEL'S REQUESTS ARE RELEVANT TO MATTEL'S PHASE 2**

15  **RICO CLAIMS**

16  Each of the documents and tangible items sought by Mattel is also

17  relevant to Mattel's RICO claims.[66]

18  **A.   Mattel Alleged A Wide-Ranging, Ongoing Criminal Enterprise,**

19  **Justifying Similarly Broad Discovery**

20  The Discovery Master's March 10, 2009 Order found that the third-party

21  discovery Mattel sought was not relevant to Mattel's RICO claims.[67]  Since that

22

23  [63]  March 10, 2009 Discovery Master Order No. 3, at 25:20-22, Corey Dec., Exh. 6.

24  [64]  April 27, 2009 Order, at 15, Corey Dec., Exh. 46; May 6, 2009 Discovery

25  Master Order No. 27, at 4:5-14, Corey Dec., Exh. 50.
    [65]  TAAC, ¶ 141(i), Corey Dec., Exh. 45.

26  [66]  The Court heard Mattel's motion to amend on May 18, 2009.

27  [67]  March 10, 2009 Discovery Master Order No. 3, at 17:1-4, Corey Dec., Exh. 6.

28

1   time, however, the Court granted Mattel's motion for leave to file the TAAC, noting

2   that it would "dramatically expand the scope of the present litigation" by adding,

3   among other things, additional RICO allegations which directly challenge the

4   transactions as to which Mattel now seeks evidence.[68]  Mattel filed its TAAC on

5   May 22, 2009,[69] alleging acts of "money laundering, concealing assets, engaging in

6   monetary transactions involving property derived from unlawful activity,

7   commercial bribery, destruction of evidence, and obstruction of justice."[70]

8          Mattel's requests clearly seek information relevant to its RICO claims. as

9   alleged in the TAAC. "RICO is to be read broadly." Sedima, S.P.R.L. v. Imrex

10  Co., Inc., 473 U.S. 479, 497 (1985). "[C]onduct forms a pattern if it embraces

11  criminal acts that have the same or similar purposes, results, participants, or

12  methods of commission, or otherwise are interrelated by distinguishing

13  characteristics and are not isolated events." H.J. Inc. v. Northwestern Bell Tel. Co.,

14  492 U.S. 229, 239 (1989).  RICO discovery must be commensurately broad.

15  Relevance is to be interpreted broadly to "encompass any matter that bears on, or

16  that reasonably could lead to other matter that could bear on, any issue that is or

17  may be in the case." Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 374

18  (W.D.N.Y. 2006), quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

19  (1978). See also Southwest Hide Co. v. Goldston, 127 F.R.D. 481, 487 (N.D. Tex.

20  1989) ("The Defendants' argument attempts to define relevance in terms of a prima

21  facie case, which is not supportable."). Discovery in RICO cases encompasses all

22  matters related to the alleged pattern of criminal activity, including unpled predicate

23  acts.

24

25

26  [68]   May 21, 2009 Order, at 6, Corey Dec., Exh. 49.

27  [69]   TAAC, Corey Dec., Exh. 45.
    [70]   Id. at 4.

28

                                            MTC MGA AND LARIAN RFPS (PHASE 2)

1   "[I]t is unambiguously clear that a pattern is best proven by linking as many

2   acts together over as long a period of time as possible." Halperin v. Berlandi, 114

3   F.R.D. 8, 13 (D. Mass. 1986) (RICO claim based on kickbacks relating to one

4   particular building justified discovery into finances of other buildings).  The acts

5   need not have even damaged a plaintiff (as Mattel was damaged here):  "[T]here is

6   no requirement that the pattern of racketeering activity be established by acts

7   proximately related to the harm suffered by plaintiffs." Id. at 13.[71]  See Conopco,

8   Inc. v. Wein, 2007 WL 2119507 *3 (S.D.N.Y. July 23, 2007) (rejecting argument by

9   RICO defendant that a subpoena into her financial affairs was irrelevant "because

10  there is no reference or allegation in the First Amended Complaint to the financial

11  affairs of [defendant] and her companies, and the fraud alleged is unrelated to [her]

12  financial affairs;" the money that defendant "either invests in or receives from the

13  alleged RICO conspiracy may be evidence of how the enterprise operates, and of the

14  role [defendant] plays in the enterprise. The subpoena is therefore 'reasonably

15  calculated to lead to the discovery of admissible evidence.'"); Sebago, Inc. v. Beazer

16  East, Inc., 18 F.Supp.2d 70, 80 (D. Mass. 1998) (acknowledging that further

17  discovery "may provide additional instances" of alleged RICO violations -- thus

18  relevant to establishing predicate acts, relatedness and continuity); Wallace v.

19  Abramson, 1988 WL 63065, at *2, 4 (D.D.C. June 7, 1988) (in RICO case,

20  defendant's loan from a third-party lender, even though it caused "no injury to

21  plaintiff," relevant to the continuing pattern, and was thus discoverable). See also

22  New England Data Services, Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987)

23

---

24  [71]   In that same case, the plaintiffs sought tax returns from an entity alleged to

25  have been created by some of the defendants "for the purpose of serving as a conduit
    for the alleged illegal payments connected with the Milk Street project *as well as*

26  *'suspicious' payments from Glinsky to Berlandi in other contexts."* Id., at 15-16
    (emphasis added).  The Court found this evidence relevant to the effort to establish a

27  pattern of racketeering activity and granted the motion to compel. Id., at 16.

28

1   (district court abused its discretion in denying further discovery when plaintiff had

2   "provided an outline of the general scheme to defraud and established an inference

3   that the mail or wires was used to transact this scheme").  Discovery here properly

4   includes information relevant to all related acts by the broadly defined enterprises.

### B.   Mattel's Requests Are Relevant To Its RICO Claims

#### 1.   Documents Related To The Direct Use of Mattel Property

7        Mattel's requests for information about manufacture, orders, sales, marketing,

8   transfer, or distribution of Bratz and other MGA products seeks relevant discovery.

9   They are pertinent to commercial activities that are the subject of Mattel's criminal

10  copyright predicate acts and to Mattel's remedies, including for disgorgement and as

11  illicit proceeds that are subject to the Court's constructive trust orders.  The Requests

12  also directly relate to the results of the trade secret theft, to the alleged "continuing

13  use of Mattel's information and property" and to the incorporation of Mattel's

14  property into MGA's business to allow it to compete illegally with Mattel.  The

15  RICO claims in the TAAC also include allegations that the MGA Parties and the

16  Bratz Criminal Enterprise continues to use and infringe Mattel's information,

17  property and rights and to use the ill-gotten gains from such thefts to the detriment

18  of Mattel.[72]  For example:

- Request Nos. 8, 9 and 11 (orders and cancellations of orders for 2009 Bratz products);

- Request Nos. 16 (sale, distribution and transfer of Bratz products since January 2007);

- Request Nos. 17, 18, 20 (agreements, sale, transfer of items of value from MGA to IGWT Group and IGWT 826);

- Request No. 42 (communications between MGA, IGWT Group and/or IGWT 826 regarding Mattel or Bratz);

---

[72]  Id., ¶ 140.

- Request No. 53 (samples of Bratz female fashion dolls manufactured, sold, marketed, etc. since January 2008); and

- Request No. 51 (amount of licensee payments for Bratz products since January 2007).

- Request Nos. 54 through 57 seek documents relating to the registration or application for the Bratz and Jade trademarks and servicemarks.

### 2.   Documents Related To Additional RICO Predicates And The Pattern Of Racketeering

Discovery of any MGA transactions resulting in the concealment, transfer or deflation of MGA assets are directly relevant to a host of RICO issues.  For example, any efforts to disguise capital contributions as phony debt to artificially deflate MGA's net worth may be predicate acts in themselves (for example, 18 U.S.C. § 1956 (prohibiting the "conceal[ment] or disguise [of] the nature, the location, the source, the ownership, or the control of the proceeds" derived from unlawful activity); 18 U.S.C. § 1957 (use of unlawful funds); 18 U.S.C. § 2314 (transportation of converted funds).  Discovery of the facts surrounding such efforts is also likely to provide useful information showing the relatedness and continuity of the pattern of misconduct, the control exercised by the perpetrators, and the overall intent or purpose of the RICO enterprise.[73]

Some of the potential RICO issues the individual requests are relevant to include:

Request No. 28, 29, 35, 36, 40-42 seek information on the identity of individuals associated with the IGWT Group; these are relevant to determining the identity and role of the members of the enterprise and its scope; and to establishing the manipulation of MGA's net worth in an effort to defraud Mattel.

---

[73]   Additional allegations regarding mail fraud, wire fraud, money laundering, concealment of assets, and fraudulent transactions are plead in Mattel's TAAC RICO claim.  Id., ¶ 140.

1        Request Nos. 24, 26 and 27 seek information on agreements and transactions
2  related to the debt obligation undertaken by Omni 808, Vision Capital and
3  Lexington for the MGA Parties; these are relevant to the exploitation and laundering
4  of ill-gotten proceeds to further defraud Mattel, to further acts of mail or wire fraud
5  and to manipulation of MGA's net worth.

6        Request No. 25 seeks information on what MGA provided to Omni, Vision
7  Capital or Lexington in connection with such transactions since January 2008 and is
8  thus relevant to establishing the intent and purpose of the RICO enterprise, who
9  controlled its operations, how assets were concealed and other steps taken to benefit
10  MGA and Larian at Mattel's expense.

11        Request Nos. 39, 48 and 49 seek information on accounts used for the transfer
12  of assets to and from Omni 808, Lexington and Vision Capital since January 2007
13  and are thus relevant to the pre-bankruptcy transfer of assets, to the potential
14  laundering of ill-gotten proceeds, and to the contribution of capital to MGA under
15  the guise of supposedly arms-length debt.

16        Request Nos. 33 and 34 seek information on the transfer of funds, credit or
17  funding between Lexington and MGA; this is relevant to establishing Larian's
18  control of the enterprise, its scope and purpose, and its efforts to manipulate MGA's
19  net worth.

20        Request Nos. 2, 3, 22, 23, and 43-47 seek information on agreements,
21  contracts and written communications between MGA and Wachovia since January
22  2007, on agreements with any other MGA lenders or creditors, on any other MGA
23  efforts to solicit credit, financing or funding since January 2007, and on
24  communications among MGA, Larian and the financing entities; these
25  communications are relevant to establishing the scope and operation of the
26  enterprise; to showing how it manipulated MGA's finances and net worth to defraud
27  Mattel; and to proving Larian's control of it.

28

Request No. 12 seeks information on capital contributions to MGA since January 2007, and is thus relevant to the scope of the enterprise, its ongoing acts of fraud, and the control exercised by Larian and others.

Request Nos. 30-32 seek information on the identity of those controlling, managing, or running any of the Omni Parties. These requests are relevant to the scope of the enterprise, Larian's control of it, to the intent and purpose of the financing transactions, and to the use or exploitation of MGA assets to disguise equity as debt in order to defraud Mattel and other legitimate creditors.

## IV.   THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED

### A.   The Boilerplate Objections Are Improper

The MGA Parties assert a host of general boilerplate objections, which they then repeat in their specific objections. They assert that Mattel's document requests (including Mattel's definitions) are irrelevant, overbroad, ambiguous, harassing, cumulative, and unduly burdensome. Such summary, boilerplate objections are improper under the Federal Rules of Civil Procedure. A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (overruling defendant's boilerplate objections as improper and ordering production of documents). See also Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (holding that court did not have discretion to limit discovery on basis of boilerplate objections).

### B.   The January 7, 2009 Court Order Does Not Preclude Any Discovery

The MGA Parties also object that the requests are "designed to circumvent the Court's January 7 Order appointing a forensic auditor." This argument was rejected by the Court at the February 11, 2009 hearing, and by the Discovery Master in its March 10, 2009 Order. The Court lifted the stay of discovery on January 6, 2009 and placed no limitations on its subject matter.

C.   **Mattel's Requests Do Not Impose an Undue Burden**

The MGA Parties object that the requests are unduly burdensome and that the burden and expense outweigh the documents' relevance.  Objecting parties bear the burden of proving undue burden by "specific and compelling" proof; conclusory assertions are insufficient.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966). "The party must provide specific and compelling proof that the burden is undue." JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct. 2007) (denying motion to quash); see also Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403-04 (D.C. Cir. 1984) (reversing district court's decision quashing subpoena).  As both the prior and the current Discovery Master have repeatedly held, the  failure to provide specific evidence of burden is fatal to such an objection.[74]  The MGA Parties do not even try to prove how much time or effort it would take them to comply with the production of documents they clearly have in their possession and control, or how costly it would be to do so.

D.   **Confidentiality Is Assured by the Protective Order**

The MGA Parties object on the grounds that Mattel seeks documents containing trade secrets and confidential information protected by third-parties' rights of privacy.  Because the Court has entered a Protective Order in this action, alleged concerns about confidentiality do not justify withholding documents from production.  See, e.g., Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a protective order "can strike the appropriate balance between the need for the information and the privacy concerns" of the party opposing production of employee information); Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 658 (C.D. Cal. 2005) (compelling production of student records because of slight redactions and "a protective order to minimize any

---

[74]   May 16, 2007, at 12-13, Order, Corey Dec., Exh. 47; August 13, 2007 Discovery Master Order, at 14, Corey Dec., Exh. 48.

1  invasion of the students' privacy rights"); In re Heritage Bond Litigation, 2004 WL
2  1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have in
3  their bank records and related financial statements are adequately protected by the
4  protective order, and are not sufficient to prevent production in this matter");
5  A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("P]laintiff's need for defendant
6  Garber's financial documents outweighs defendant Garber's claim of privacy,
7  especially when the 'impact' of the disclosure of the information can be protected by
8  a 'carefully drafted' protective order").

9      Indeed, the former Discovery Master repeatedly ruled that the Protective
10  Order is sufficient to alleviate any ostensive privacy concerns,[75] and the District
11  Court agreed, finding that the entry of a protective order justified compelling
12  production of even "sensitive documents" to MGA's "fierce competitor."[76] More
13  recently, the Discovery Master compelled the production of MGA employee files
14  over the privacy objections of the MGA Parties, after noting that the Protective
15  Order in this matter "is crucial in analyzing the privacy concerns raised by MGA."[77]
16  The confidentiality objections should be overruled.

17  **V.    THE MGA PARTIES SHOULD PRODUCE ADEQUATE PRIVILEGE**
18  **LOGS**

19      To the extent the MGA Parties withhold documents on the basis of privilege,
20  they must provide a timely privilege log.  See Burlington N. & Santa Fe Ry. Co. v.
21  U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1147-50 (9th Cir. 2005)
22  (affirming district court's holding that party waived privilege objections by failing to
23  provide privilege log at the time it served discovery responses).  Accordingly, the

24
25

---

26  [75]  Order Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 20.
27  [76]  Order Dated July 2, 2007, at 3, Corey Dec., Exh. 15.
     [77]  March 13, 2009 Discovery Master Order No. 3, at 7:6-7, Corey Dec., Exh. 6.
28

1 | Discovery Master should order the MGA Parties to log documents withheld on the
2 | basis of any privilege assertion.

3 | ### Conclusion

4 |     For the reasons set forth above, and for those set forth in the Mattel's Separate
5 | Statement, Mattel respectfully requests that MGA and Larian be compelled to
6 | produce all documents sought by the Requests and to produce a privilege log for any
7 | documents withheld on the basis of privilege.

8 |

9 | DATED:  July 22, 2009            QUINN EMANUEL URQUHART OLIVER &
10 |                         HEDGES, LLP

11 |

12 |                         By /s/ Michael T. Zeller
13 |                            Michael T. Zeller
                           Attorney for Mattel, Inc.