1      I.      "REFERRING OR RELATING TO," "REFER OR RELATE
2  TO," "RELATING," "RELATING TO" or "REFERS TO" means any and all of the
3  following terms and their synonyms:  refer to, discuss, constitute, evidence, pertain
4  to, mention, support, undermine, disprove, refute, contradict, negate, bear on,
5  amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with,
6  concern, comment on, summarize, respond to, relate to, or describe.

7      J.      "PERSON," in the plural as well as the singular, means any
8  natural person, association, partnership, corporation, joint venture, government
9  entity, organization, limited liability company, trust, institution, proprietorship, or
10  any other entity recognized as having an existence under the laws in the United
11  States or any other nation.

12      K.      "ITEM OF VALUE," in the plural as well as the singular, means
13  any and all articles, units, goods, commodities, property, products, services,
14  assistance, shares, stocks, bonds, financial instruments, indebtedness, credit, capital,
15  and currency, in any form, or any other tangible or intangible matter that have
16  current, past or future material worth, monetary worth or use, of any type and in any
17  amount.  Gifts of individual units of manufactured MGA products that are not
18  intended for re-transfer, that were not and have not been re-transferred and that do
19  not exceed $500 in retail value in total may be excluded from this Definition.

20      L.      "IDENTIFY," "IDENTIFYING" OR "IDENTITY" means the
21  following:

22      (a)      With reference to an individual, means such individual's name,
23  current or last known business title, current or last known business affiliation,
24  current or last known relationship to YOU, current or last known residential and
25  business address, and current or last known telephone number.

26      (b)      With reference to an entity or entities, such entity's full name,
27  state (or country) of incorporation or organization, present or last known address,
28  and present or last known telephone number.

EXHIBIT 9
PAGE 305

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

1    (c)    With reference to any other DOCUMENT or DOCUMENTS,

2  means the date, identity of the author, addressee(s), signatories, parties, or other

3  PERSONS identified therein, its present location or custodian and a description of

4  its contents.

5    (d)    With reference to an account with a bank or financial institution,

6  means the name and address of the bank or financial institution, the account

7  number(s) for or otherwise associated with such account and the name of each

8  holder, including without limitation, each beneficial holder, of each such account.

9    M.    "OMNI 808 INVESTORS, LLC" means OMNI 808

10  INVESTORS, LLC and all current or former directors, officers, employees, agents,

11  contractors, attorneys, accountants, representatives, subsidiaries, divisions,

12  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

13  PERSON acting on its behalf, pursuant to its authority or subject to its control.

14    N.    "VISION CAPITAL, LLC" means VISION CAPITAL, LLC and

15  all current or former directors, officers, employees, agents, contractors, attorneys,

16  accountants, representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-

17  interest and successors-in-interest, and any other PERSON acting on its behalf,

18  pursuant to its authority or subject to its control.

19    O.    "LEXINGTON FINANCIAL" means LEXINGTON

20  FINANCIAL LIMITED, A NEVIS COMPANY and all current or former directors,

21  officers, employees, agents, contractors, attorneys, accountants, representatives,

22  subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-

23  interest, and any other PERSON acting on its behalf, pursuant to its authority or

24  subject to its control.

25    P.    "COMMUNICATION," in the plural as well as the singular,

26  means any transmittal and/or receipt of information, whether such was oral or

27  written, and whether such was by chance, prearranged, formal or informal, and

28  specifically includes, but is not limited to, conversations in person, telephone

07975/2826110.1

1  conversations, electronic mail (including instant messages and text messages),
2  voicemail, letters, memoranda, statements, media releases, magazine and newspaper
3  articles, and video and audio transmissions.

4         Q.     The singular form of a noun or pronoun includes within its
5  meaning the plural form of the noun or pronoun so used, and vice versa; the use of
6  the masculine form of a pronoun also includes within its meaning the feminine form
7  of the pronoun so used, and vice versa; the use of any tense of any verb includes
8  also within its meaning all other tenses of the verb so used, whenever such
9  construction results in a broader request for information; and "and" includes "or"
10 and vice versa, whenever such construction results in a broader disclosure of
11 documents or information.

12

13 **II.**    **INSTRUCTIONS**

14        A.     YOU are to produce all requested DOCUMENTS in YOUR
15 possession, custody or control.

16        B.     If YOU contend that YOU are not required to produce certain
17 DOCUMENTS called for by these Requests on the grounds of a privilege or
18 protection that YOU are not prepared to waive, IDENTIFY each such DOCUMENT
19 and provide the following information:

20          1.     the date and type of the DOCUMENT, the author(s) and all
21                 recipients;

22          2.     the privilege or protection that YOU claim permits YOU to
23                 withhold the DOCUMENT;

24          3.     the title and subject matter of the DOCUMENT;

25          4.     any additional facts on which YOU base YOUR claim of
26                 privilege or protection; and

27          5.     the IDENTITY of the current custodian of the original of the
28                 DOCUMENT.

EXHIBIT 9
PAGE 307

07975/2826110.1

-7-

1    C.    DOCUMENTS shall be produced in their original file folders, or
2 other native format. If the DOCUMENTS are in their original file folders, in lieu
3 thereof, any writing on the file folder from which each such DOCUMENT is taken
4 shall be copied and appended to such DOCUMENT and the PERSON for whom or
5 department, division or office for which the DOCUMENT or the file folder is
6 maintained shall be identified.

7    D.    The DOCUMENTS should be produced in their complete and
8 unaltered form. Attachments to DOCUMENTS should not be removed. The
9 DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for
10 any reason, including alleged nonrelevance. If emails are produced that had
11 attachments, the attachments shall be attached when produced.

12    E.    DOCUMENTS in electronic form shall be produced in that form.

13    F.    In the event that any DOCUMENT called for by these requests
14 has been destroyed or discarded, that DOCUMENT is to be identified by stating:

15    1.    the date and type of the DOCUMENT, the author(s) and all
16        recipients;

17    2.    the DOCUMENT's date, subject matter, number of pages, and
18        attachments or appendices;

19    3.    the date of destruction or discard, manner of destruction or
20        discard, and reason for destruction or discard;

21    4.    the PERSONS who were authorized to carry out such destruction
22        or discard;

23    5.    the PERSONS who have knowledge of the content, origins,
24        distribution and destruction of the DOCUMENT; and

25    6.    whether any copies of the DOCUMENT exist and, if so, the
26        name of the custodian of each copy.

27
28

EXHIBIT 9
PAGE 308

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

All YOUR audited and unaudited monthly, quarterly and annual financial statements covering or RELATING TO any period on or after January 1, 2007, including without limitation balance sheets, income statements, profit and loss statements, consolidated statements of operations, cash flow statements and statements of retained earnings.

REQUEST FOR PRODUCTION NO. 2:

All agreements and contracts with any lenders to or creditors of MGA covering, RELATING TO, in effect, dated or entered into on or after January 1, 2007, including without limitation loan agreements, credit agreements, financing agreements, lines of credit and promissory notes, and any amendments or modifications thereto, and any notices of default and COMMUNICATIONS REFERRING OR RELATING TO any such agreements and contracts.

REQUEST FOR PRODUCTION NO. 3:

To the extent not produced in response to any other Request, DOCUMENTS sufficient to IDENTIFY each other PERSON from whom YOU sought, solicited, requested, obtained, received or were denied credit, financing or funding on or after January 1, 2007 and sufficient to show the amount(s) and terms involved.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS REFERRING OR RELATING TO YOUR solvency or insolvency, or whether YOUR liabilities exceed YOUR assets, for any period on or after January 1, 2007 (excluding pleadings served by YOU on MATTEL in this action).

EXHIBIT __9__
PAGE __309__

07975/2826110.1

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

1  REQUEST FOR PRODUCTION NO. 5:

2          All DOCUMENTS REFERRING OR RELATING TO any

3  representation or statement made by YOU about YOUR solvency or insolvency, or

4  whether YOUR liabilities exceed YOUR assets, for any period on or after January 1,

5  2007 (excluding pleadings served by YOU on MATTEL in this action).

6

7  REQUEST FOR PRODUCTION NO. 6:

8          All DOCUMENTS REFERRING OR RELATING TO YOUR net

9  worth for any period on or after January 1, 2007 (excluding pleadings served by

10  YOU on MATTEL in this action).

11

12  REQUEST FOR PRODUCTION NO. 7:

13          All DOCUMENTS REFERRING OR RELATING TO ISAAC

14  LARIAN's net worth for any period on or after January 1, 2007 (excluding

15  pleadings served by YOU on MATTEL in this action).

16

17  REQUEST FOR PRODUCTION NO. 8:

18          All DOCUMENTS REFERRING OR RELATING TO orders,

19  including without limitation cancelled or held orders, for BRATZ products for

20  Spring 2009, and all COMMUNICATIONS with retailers and other prospective

21  purchasers REFERRING OR RELATING TO any such orders.

22

23  REQUEST FOR PRODUCTION NO. 9:

24          All DOCUMENTS REFERRING OR RELATING TO orders,

25  including without limitation cancelled or held orders, for BRATZ products for Fall

26  2009, and all COMMUNICATIONS with retailers and other prospective purchasers

27  REFERRING OR RELATING TO any such orders.

28

EXHIBIT  9
PAGE  310

-10-

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

1  REQUEST FOR PRODUCTION NO. 10:

2      All DOCUMENTS REFERRING OR RELATING TO the transfer of

3  any ITEM OF VALUE by MGA to, or for the benefit of, ISAAC LARIAN, any

4  member of ISAAC LARIAN's family or any entity controlled by ISAAC LARIAN

5  or any member of ISAAC LARIAN's family, since January 1, 2007.

6

7  REQUEST FOR PRODUCTION NO. 11:

8      All COMMUNICATIONS between YOU and any third-party,

9  including without limitation any retailer or distributor but excluding MATTEL and

10  any Court, REFERRING OR RELATING TO YOUR *ex parte* application for stay

11  pending appeal, filed December 11, 2008, including without limitation any

12  declaration, whether final, draft, proposed or requested, in connection therewith and

13  copies of all draft declarations in connection therewith.

14

15  REQUEST FOR PRODUCTION NO. 12:

16      All DOCUMENTS REFERRING OR RELATING TO capital

17  contributions to MGA since January 1, 2007.

18

19  REQUEST FOR PRODUCTION NO. 13:

20      All DOCUMENTS showing MGA's projected revenue, costs, profits or

21  financial performance for any period since January 1, 2007.

22

23  REQUEST FOR PRODUCTION NO. 14:

24      All DOCUMENTS REFERRING OR RELATING TO any transfer of

25  any ITEM OF VALUE or other transaction between (i) MGA, and (ii) ISAAC

26  LARIAN, any ISAAC LARIAN family member, any PERSON controlled, directly

27  or indirectly by ISAAC LARIAN, or any PERSON controlled, directly or indirectly,

28  by any ISAAC LARIAN family member since January 1, 2007. EXHIBIT _9_

PAGE _3\_

07975/2826110.1

-11-

1 | REQUEST FOR PRODUCTION NO. 15:

2 |        All W-2s REFERRING OR RELATING TO any ISAAC LARIAN

3 | family member since January 1, 2007.

4 |

5 | REQUEST FOR PRODUCTION NO. 16:

6 |        All DOCUMENTS REFERRING OR RELATING TO any sale,

7 | distribution or transfer by MGA of BRATZ products having a retail value greater

8 | than $50,000 other than to retailers in the ordinary course of business since

9 | January 1, 2007.

10 |

11 | REQUEST FOR PRODUCTION NO. 17:

12 |        All DOCUMENTS REFERRING OR RELATING TO agreements,

13 | transactions, sales, shipments or the transfer of any ITEM OF VALUE between

14 | MGA and IGWT Group, LLC.

15 |

16 | REQUEST FOR PRODUCTION NO. 18:

17 |        All DOCUMENTS REFERRING OR RELATING TO the alleged

18 | transfer of product from MGA to IGWT Group, LLC pursuant to the Inventory

19 | Purchase Agreement dated July 7, 2008, including without limitation all audits or

20 | other valuations performed in connection with such product, any opinions

21 | RELATING TO the fairness or unfairness of such transfer, all MGA corporate or

22 | director resolutions or approvals of such transfer, all bids received or solicited in

23 | connection with the purported sale or offering for sale of such product, the terms of

24 | such bids and any other and all COMMUNICATIONS relating to any of the

25 | foregoing.

26 |

27 |

28 |

EXHIBIT  9
PAGE  312

07975/2826110.1

-12-

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS REFERRING OR RELATING TO the revenue generated by IGWT Group, LLC's sales, licensing, distribution or other transfer of BRATZ products and the transfer or disposition of such revenue.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS REFERRING OR RELATING TO agreements, contracts, transactions, sales, shipments or transfers of any ITEM OF VALUE between MGA and IGWT 826 Investments, LLC.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS REFERRING OR RELATING TO the revenue generated by IGWT 826 Investments, LLC's sales, licensing, distribution or other transfer of BRATZ products and the transfer or disposition of such revenue.

**REQUEST FOR PRODUCTION NO. 22:**

All agreements, contracts and written COMMUNICATIONS between MGA and Wachovia since January 1, 2007.

**REQUEST FOR PRODUCTION NO. 23:**

All agreements and contracts REFERRING OR RELATING TO any indebtedness owed to Wachovia or any credit extended by Wachovia since January 1, 2007, and any amendments or modifications thereto, and any COMMUNICATIONS RELATED TO any such agreements or contracts.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS REFERRING OR RELATING TO agreements, contracts or transactions between MGA and OMNI 808 INVESTORS, LLC, and

EXHIBIT _9_
PAGE _313_

1  any amendments or modifications thereto, and any COMMUNICATIONS

2  REFERRING OR RELATING TO any such agreements, contracts or transactions.

3

4  REQUEST FOR PRODUCTION NO. 25:

5          All DOCUMENTS containing financial information, including but not

6  limited to YOUR historical and prospective financial performance, provided by

7  YOU to OMNI 808 INVESTORS, LLC, VISION CAPITAL, LLC or LEXINGTON

8  FINANCIAL since January 1, 2008.

9

10  REQUEST FOR PRODUCTION NO. 26:

11          All DOCUMENTS REFERRING OR RELATING TO agreements,

12  contracts or transactions between LEXINGTON FINANCIAL and MGA or any

13  other PERSON, and any amendments or modifications thereto, and any

14  COMMUNICATIONS REFERRING OR RELATING TO any such agreements,

15  contracts or transactions.

16

17  REQUEST FOR PRODUCTION NO. 27:

18          All DOCUMENTS REFERRING OR RELATING TO agreements,

19  contracts or transactions between VISION CAPITAL, LLC and MGA or any other

20  PERSON, and any amendments or modifications thereto, and any

21  COMMUNICATIONS REFERRING OR RELATING TO any such agreements,

22  contracts or transactions.

23

24  REQUEST FOR PRODUCTION NO. 28:

25          DOCUMENTS sufficient to IDENTIFY each member, managing

26  member, holder of any ownership interest in, shareholder, officer and director of

27  IGWT Group, LLC.

28

EXHIBIT 9
PAGE 314

07975/2826110.1

-14-

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

REQUEST FOR PRODUCTION NO. 29:

DOCUMENTS sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director of IGWT 826 Investments, LLC.

REQUEST FOR PRODUCTION NO. 30:

DOCUMENTS sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director  of OMNI 808 INVESTORS, LLC.

REQUEST FOR PRODUCTION NO. 31:

DOCUMENTS sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director of VISION CAPITAL, LLC.

REQUEST FOR PRODUCTION NO. 32:

DOCUMENTS sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director of LEXINGTON FINANCIAL.

REQUEST FOR PRODUCTION NO. 33:

All DOCUMENTS RELATING TO any transfer of any funds, monies or any ITEM OF VALUE from, or any extension of credit or funding by, LEXINGTON FINANCIAL to YOU or LARIAN.

EXHIBIT ___9___
PAGE ___315___

1   REQUEST FOR PRODUCTION NO. 34:

2          All DOCUMENTS RELATING TO any transfer of any funds, monies

3   or any ITEM OF VALUE to or from, or any extension of credit or funding by or to,

4   LEXINGTON FINANCIAL, whether directly or indirectly.

5

6   REQUEST FOR PRODUCTION NO. 35:

7          DOCUMENTS sufficient to IDENTIFY each member, managing

8   member, holder of any ownership interest in, shareholder, officer and director of

9   IGWT Group, LLC.

10

11  REQUEST FOR PRODUCTION NO. 36:

12         DOCUMENTS sufficient to IDENTIFY each member, managing

13  member, holder of any ownership interest in, shareholder, officer and director of

14  IGWT 826 Investments, LLC.

15

16  REQUEST FOR PRODUCTION NO. 37:

17         DOCUMENTS sufficient to IDENTIFY each of YOUR bank accounts

18  since January 1, 2007.

19

20  REQUEST FOR PRODUCTION NO. 38:

21         DOCUMENTS sufficient to IDENTIFY each bank account to or from

22  which Isaac Larian has transferred or has had transferred any ITEM OF VALUE

23  since January 1, 2007.

24

25  REQUEST FOR PRODUCTION NO. 39:

26         DOCUMENTS sufficient to IDENTIFY each bank account to or from

27  which OMNI 808 INVESTORS, LLC has transferred or has had transferred any

28  ITEM OF VALUE since January 1, 2007.

EXHIBIT  9

PAGE  36

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

1 | REQUEST FOR PRODUCTION NO. 40:

2 |       DOCUMENTS sufficient to IDENTIFY each bank account to or from

3 | which IGWT Group, LLC has transferred or has had transferred any ITEM OF

4 | VALUE since January 1, 2007.

5 |

6 | REQUEST FOR PRODUCTION NO. 41:

7 |       DOCUMENTS sufficient to IDENTIFY each bank account to or from

8 | which IGWT 826 Investments, LLC has transferred or has had transferred any

9 | ITEM OF VALUE since January 1, 2007.

10 |

11 | REQUEST FOR PRODUCTION NO. 42:

12 |       All COMMUNICATIONS between or among YOU, IGWT 826

13 | Investments, LLC and/or IGWT Group, LLC REFERRING OR RELATING TO

14 | MATTEL and/or BRATZ.

15 |

16 | REQUEST FOR PRODUCTION NO. 43:

17 |       All COMMUNICATIONS between or among YOU, OMNI 808

18 | INVESTORS, LLC, VISION CAPITAL, LLC and/or LEXINGTON FINANCIAL

19 | REFERRING OR RELATING TO MATTEL, MGA, LARIAN and/or BRATZ.

20 |

21 | REQUEST FOR PRODUCTION NO. 44:

22 |       All COMMUNICATIONS between YOU and MASHIAN

23 | REFERRING OR RELATING TO OMNI 808 INVESTORS, LLC, VISION

24 | CAPITAL, LLC, LEXINGTON FINANCIAL, MATTEL, MGA, LARIAN and/or

25 | BRATZ.

26 |

27 |

28 |

EXHIBIT _a_
PAGE _3\7_

07975/2826110.1

-17-

1  REQUEST FOR PRODUCTION NO. 45:

2          All COMMUNICATIONS between YOU and Neil Kadisha

3  REFERRING OR RELATING TO OMNI 808 INVESTORS, LLC, VISION

4  CAPITAL, LLC, LEXINGTON FINANCIAL, MATTEL, MGA, LARIAN and/or

5  BRATZ.

6

7  REQUEST FOR PRODUCTION NO. 46:

8          All COMMUNICATIONS between YOU and OMNI 808

9  INVESTORS, LLC REFERRING OR RELATING TO VISION CAPITAL, LLC,

10  LEXINGTON FINANCIAL, MATTEL, MGA, LARIAN and/or BRATZ.

11

12  REQUEST FOR PRODUCTION NO. 47:

13          All COMMUNICATIONS REFERRING OR RELATING TO VISION

14  CAPITAL, LLC, LEXINGTON FINANCIAL and/or OMNI 808 INVESTORS,

15  LLC.

16

17  REQUEST FOR PRODUCTION NO. 48:

18          DOCUMENTS sufficient to IDENTIFY each bank account to or from

19  which VISION CAPITAL, LLC has transferred or has had transferred any ITEM

20  OF VALUE since January 1, 2007.

21

22  REQUEST FOR PRODUCTION NO. 49:

23          DOCUMENTS sufficient to IDENTIFY each bank account to or from

24  which LEXINGTON FINANCIAL has transferred or has had transferred any ITEM

25  OF VALUE since January 1, 2007.

26

27

28

EXHIBIT __9__
PAGE __318__

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

REQUEST FOR PRODUCTION NO. 50:

DOCUMENTS sufficient to IDENTIFY each licensee of any BRATZ product since January 1, 2007.

REQUEST FOR PRODUCTION NO. 51:

DOCUMENTS sufficient to show the amount of payments made to YOU by each licensee of any BRATZ product since January 1, 2007.

REQUEST FOR PRODUCTION NO. 52:

A sample of each BRATZ product manufactured, sold, offered for sale, marketed or distributed by YOU since January 1, 2008.

REQUEST FOR PRODUCTION NO. 53:

To the extent not produced in response to any other Request, a sample of each core BRATZ female fashion doll manufactured, sold, offered for sale, marketed or distributed by YOU since January 1, 2008.

REQUEST FOR PRODUCTION NO. 54:

All registrations, and applications for registration, for any trademark or service mark that constitutes, includes or incorporates in any manner the term "BRATZ."

REQUEST FOR PRODUCTION NO. 55:

All registrations, and applications for registration, for any trademark or service mark that constitutes, includes or incorporates in any manner the term "Jade."

EXHIBIT 9
PAGE 319

1   <u>REQUEST FOR PRODUCTION NO. 56:</u>

2         All COMMUNICATIONS with any Trademark Office or governmental

3   entity REFERRING OR RELATING TO any registration, or application for

4   registration, for any trademark or service mark that constitutes, includes or

5   incorporates in any manner the term "BRATZ."

6

7   <u>REQUEST FOR PRODUCTION NO. 57:</u>

8         All COMMUNICATIONS with any Trademark Office or governmental

9   entity REFERRING OR RELATING TO any registration, or application for

10   registration, for any trademark or service mark that constitutes, includes or

11   incorporates in any manner the term "Jade."

12

13

14   DATED: January 7, 2009       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

15

16                     By _____

17                        Jon D. Corey
                       Attorneys for Mattel, Inc.

18

19

20

21

22

23

24

25

26

27

28

-20-

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO ISAAC LARIAN (Phase 2)

EXHIBIT _9_

PAGE _320_

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9               UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12   CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                Consolidated with
                                        Case No. CV 04-09059
14        vs.                           Case No. CV 05-02727

15   MATTEL, INC., a Delaware           MATTEL, INC.'S FIRST SET OF
     corporation,                       REQUESTS FOR DOCUMENTS AND
16                                       THINGS TO MGA
             Defendant.                 ENTERTAINMENT, INC. (PHASE 2)
17

18   AND CONSOLIDATED CASES

19

20

21   PROPOUNDING PARTY:  MATTEL, INC.

22   RESPONDING PARTY:    MGA ENTERTAINMENT, INC.

23   SET NO.:             FIRST (PHASE 2)

24

25

26

27                          EXHIBIT ___9___
28                          PAGE ___321___

2752004.1

────────────────────────────────────────────
MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1      Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>,
2   Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to
3   these document requests ("Requests") and make available for inspection and
4   copying originals of the following documents within 30 days of service at the
5   offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa
6   Street, 10th floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement
7   responses to these requests at such times and to the extent required by <u>Rule</u> 26(e) of
8   the <u>Federal Rules of Civil Procedure</u>.
9
10  **I.      DEFINITIONS**
11          A.      "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc.
12  and any PERSON acting directly or indirectly by, through, under or on behalf of
13  MGA Entertainment, Inc., including but not limited to, current or former directors,
14  officers, agents, attorneys, employees, partners, joint venturers, contractors,
15  accountants, or representatives of MGA Entertainment, Inc., and any current or
16  former corporation, partnership, association, trust, parent, subsidiary, division,
17  AFFILIATE, predecessor-in-interest and successor-in-interest of MGA
18  Entertainment, Inc., and any other PERSON acting on its behalf.
19          B.      "ISAAC LARIAN" or "LARIAN" means Isaac Larian and any
20  individual or entity acting directly or indirectly by, through, under or on behalf of
21  Isaac Larian, including but not limited to current or former directors, officers,
22  agents, attorneys, employees, partners, joint venturers, contractors, accountants, or
23  representatives of Isaac Larian or any entity under the control or direction of Isaac
24  Larian (including but not limited to MGA), and any corporation, partnership,
25  association, limited liability company, trust, predecessor-in-interest and successor-
26  in-interest, and any other PERSON acting on behalf of Isaac Larian or pursuant to
27  his authority or subject to his control.
28

EXHIBIT __9__
PAGE __322__

2752004.1

1       C.    "MATTEL" means Mattel, Inc. and all current or former

2 directors, officers, employees, agents, contractors, attorneys, accountants,

3 representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and

4 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

5 authority or subject to its control.

6       D.    "MASHIAN" means Fred Mashian and any individual or entity

7 acting directly or indirectly by, through, under or on behalf of Fred Mashian,

8 including but not limited to current or former directors, officers, agents, attorneys,

9 employees, partners, joint venturers, contractors, accountants, or representatives of

10 Fred Mashian or any entity under the control or direction of Fred Mashian, and any

11 corporation, partnership, association, limited liability company, trust, predecessor-

12 in-interest and successor-in-interest, and any other PERSON acting on behalf of

13 Fred Mashian or pursuant to his authority or subject to his control.

14       E.    "BRATZ" means any project, product, doll or DESIGN ever

15 known by that name (whether in whole or in part and regardless of what such

16 project, product or doll is or has been also, previously or subsequently called) and

17 any product, doll or DESIGN or any portion thereof that is now or has ever been

18 known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

19 in part and regardless of what such product, doll or DESIGN or portion thereof is or

20 has been also, previously or subsequently called) or that is now or has ever been

21 sold or marketed as part of the "Bratz" line, and each version or iteration of such

22 product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or

23 DESIGNS or any portion thereof" also includes without limitation any names,

24 fashions, accessories, artwork, packaging or any other works, materials, matters or

25 items included or associated therewith.  Without limiting the generality of the

26 foregoing, the term "BRATZ" does not and shall not require that there be a doll,

27 product or three-dimensional embodiment existing at the time of the event, incident

28

EXHIBIT ___9___

1   or occurrence that is the subject of, or otherwise relevant or responsive to, the

2   Requests herein.

3       F.    "DESIGN" or "DESIGNS" means any and all representations,

4   whether two-dimensional or three-dimensional, and whether in tangible, digital,

5   electronic or other form, including but not limited to all works, designs, artwork,

6   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

7   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

8   practice, developments, inventions and/or improvements, as well as all other items,

9   things and DOCUMENTS in which any of the foregoing are or have been

10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole

11  or in part.

12      G.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

13  "recordings" as those terms are defined in Rule 1001 of the Federal Rules of

14  Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all

15  writings, including but not limited to, handwriting, typewriting, printing, image,

16  photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

17  to) electronic mail (including instant messages and text messages) or facsimile,

18  video and audio recordings, and every other means of recording upon any tangible

19  thing, any form of COMMUNICATION or representation, and any record thereby

20  created, regardless of the manner in which the record has been stored, and all non-

21  identical copies of such DOCUMENTS, in the possession, custody, or control of

22  YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

23      H.    "AFFILIATES" means any and all corporations, limited liability

24  companies, associations, proprietorships, d/b/a's, partnerships, joint ventures and

25  business entities of any kind that, directly or indirectly, in whole or in part, own or

26  control, are under common ownership or control with, or are owned or controlled by

27  a PERSON, party or entity, including without limitation, each parent, subsidiary and

28  joint venture of such PERSON, party or entity.

EXHIBIT 9
PAGE 324

2752004.1

-4-
MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1        I.     "REFERRING OR RELATING TO," "REFER OR RELATE

2   TO," "RELATING," "RELATING TO" or "REFERS TO" means any and all of the

3   following terms and their synonyms:  refer to, discuss, constitute, evidence, pertain

4   to, mention, support, undermine, disprove, refute, contradict, negate, bear on,

5   amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with,

6   concern, comment on, summarize, respond to, relate to, or describe.

7        J.     "PERSON," in the plural as well as the singular, means any

8   natural person, association, partnership, corporation, joint venture, government

9   entity, organization, limited liability company, trust, institution, proprietorship, or

10   any other entity recognized as having an existence under the laws in the United

11   States or any other nation.

12        K.     "ITEM OF VALUE," in the plural as well as the singular, means

13   any and all articles, units, goods, commodities, property, products, services,

14   assistance, shares, stocks, bonds, financial instruments, indebtedness, credit, capital,

15   and currency, in any form, or any other tangible or intangible matter that have

16   current, past or future material worth, monetary worth or use, of any type and in any

17   amount.  Gifts of individual units of manufactured MGA products that are not

18   intended for re-transfer, that were not and have not been re-transferred and that do

19   not exceed $500 in retail value in total may be excluded from this Definition.

20        L.     "IDENTIFY," "IDENTIFYING" OR "IDENTITY" means the

21   following:

22        (a)     With reference to an individual, means such individual's name,

23   current or last known business title, current or last known business affiliation,

24   current or last known relationship to YOU, current or last known residential and

25   business address, and current or last known telephone number.

26        (b)     With reference to an entity or entities, such entity's full name,

27   state (or country) of incorporation or organization, present or last known address,

28   and present or last known telephone number.

EXHIBIT _9_

PAGE 325

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

2752004.1

1       (c)    With reference to any other DOCUMENT or DOCUMENTS,

2 means the date, identity of the author, addressee(s), signatories, parties, or other

3 PERSONS identified therein, its present location or custodian and a description of

4 its contents.

5       (d)    With reference to an account with a bank or financial institution,

6 means the name and address of the bank or financial institution, the account

7 number(s) for or otherwise associated with such account and the name of each

8 holder, including without limitation, each beneficial holder, of each such account.

9       M.    "OMNI 808 INVESTORS, LLC" means OMNI 808

10 INVESTORS, LLC and all current or former directors, officers, employees, agents,

11 contractors, attorneys, accountants, representatives, subsidiaries, divisions,

12 AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

13 PERSON acting on its behalf, pursuant to its authority or subject to its control.

14       N.    "VISION CAPITAL, LLC" means VISION CAPITAL, LLC and

15 all current or former directors, officers, employees, agents, contractors, attorneys,

16 accountants, representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-

17 interest and successors-in-interest, and any other PERSON acting on its behalf,

18 pursuant to its authority or subject to its control.

19       O.    "LEXINGTON FINANCIAL" means LEXINGTON

20 FINANCIAL LIMITED, A NEVIS COMPANY and all current or former directors,

21 officers, employees, agents, contractors, attorneys, accountants, representatives,

22 subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-

23 interest, and any other PERSON acting on its behalf, pursuant to its authority or

24 subject to its control.

25       P.    "COMMUNICATION," in the plural as well as the singular,

26 means any transmittal and/or receipt of information, whether such was oral or

27 written, and whether such was by chance, prearranged, formal or informal, and

28 specifically includes, but is not limited to, conversations in person, telephone

EXHIBIT   9

PAGE   519

1 | conversations, electronic mail (including instant messages and text messages),

2 | voicemail, letters, memoranda, statements, media releases, magazine and newspaper

3 | articles, and video and audio transmissions.

4 |       Q.    The singular form of a noun or pronoun includes within its

5 | meaning the plural form of the noun or pronoun so used, and vice versa; the use of

6 | the masculine form of a pronoun also includes within its meaning the feminine form

7 | of the pronoun so used, and vice versa; the use of any tense of any verb includes

8 | also within its meaning all other tenses of the verb so used, whenever such

9 | construction results in a broader request for information; and "and" includes "or"

10 | and vice versa, whenever such construction results in a broader disclosure of

11 | documents or information.

12 |

13 | **II.**   **INSTRUCTIONS**

14 |       A.    YOU are to produce all requested DOCUMENTS in YOUR

15 | possession, custody or control.

16 |       B.    If YOU contend that YOU are not required to produce certain

17 | DOCUMENTS called for by these Requests on the grounds of a privilege or

18 | protection that YOU are not prepared to waive, IDENTIFY each such DOCUMENT

19 | and provide the following information:

20 |       1.    the date and type of the DOCUMENT, the author(s) and all

21 |            recipients;

22 |       2.    the privilege or protection that YOU claim permits YOU to

23 |            withhold the DOCUMENT;

24 |       3.    the title and subject matter of the DOCUMENT;

25 |       4.    any additional facts on which YOU base YOUR claim of

26 |            privilege or protection; and

27 |       5.    the IDENTITY of the current custodian of the original of the

28 |            DOCUMENT.

EXHIBIT _9_

PAGE _327_

2752004.1

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1      C.    DOCUMENTS shall be produced in their original file folders, or

2 other native format. If the DOCUMENTS are in their original file folders, in lieu

3 thereof, any writing on the file folder from which each such DOCUMENT is taken

4 shall be copied and appended to such DOCUMENT and the PERSON for whom or

5 department, division or office for which the DOCUMENT or the file folder is

6 maintained shall be identified.

7      D.    The DOCUMENTS should be produced in their complete and

8 unaltered form. Attachments to DOCUMENTS should not be removed. The

9 DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for

10 any reason, including alleged nonrelevance. If emails are produced that had

11 attachments, the attachments shall be attached when produced.

12      E.    DOCUMENTS in electronic form shall be produced in that form.

13      F.    In the event that any DOCUMENT called for by these requests

14 has been destroyed or discarded, that DOCUMENT is to be identified by stating:

15      1.    the date and type of the DOCUMENT, the author(s) and all

16          recipients;

17      2.    the DOCUMENT's date, subject matter, number of pages, and

18          attachments or appendices;

19      3.    the date of destruction or discard, manner of destruction or

20          discard, and reason for destruction or discard;

21      4.    the PERSONS who were authorized to carry out such destruction

22          or discard;

23      5.    the PERSONS who have knowledge of the content, origins,

24          distribution and destruction of the DOCUMENT; and

25      6.    whether any copies of the DOCUMENT exist and, if so, the

26          name of the custodian of each copy.

27

28

EXHIBIT 9

PAGE 328

27520041

-8-

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

All YOUR audited and unaudited monthly, quarterly and annual financial statements covering or RELATING TO any period on or after January 1, 2007, including without limitation balance sheets, income statements, profit and loss statements, consolidated statements of operations, cash flow statements and statements of retained earnings.

REQUEST FOR PRODUCTION NO. 2:

All agreements and contracts with any lenders to or creditors of MGA covering, RELATING TO, in effect, dated or entered into on or after January 1, 2007, including without limitation loan agreements, credit agreements, financing agreements, lines of credit and promissory notes, and any amendments or modifications thereto, and any notices of default and COMMUNICATIONS REFERRING OR RELATING TO any such agreements and contracts.

REQUEST FOR PRODUCTION NO. 3:

To the extent not produced in response to any other Request, DOCUMENTS sufficient to IDENTIFY each other PERSON from whom YOU sought, solicited, requested, obtained, received or were denied credit, financing or funding on or after January 1, 2007 and sufficient to show the amount(s) and terms involved.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS REFERRING OR RELATING TO YOUR solvency or insolvency, or whether YOUR liabilities exceed YOUR assets, for any period on or after January 1, 2007 (excluding pleadings served by YOU on MATTEL in this action).

EXHIBIT __9__

PAGE __329__

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1  REQUEST FOR PRODUCTION NO. 5:

2           All DOCUMENTS REFERRING OR RELATING TO any

3  representation or statement made by YOU about YOUR solvency or insolvency, or

4  whether YOUR liabilities exceed YOUR assets, for any period on or after January 1,

5  2007 (excluding pleadings served by YOU on MATTEL in this action).

6

7  REQUEST FOR PRODUCTION NO. 6:

8           All DOCUMENTS REFERRING OR RELATING TO YOUR net

9  worth for any period on or after January 1, 2007 (excluding pleadings served by

10 YOU on MATTEL in this action).

11

12 REQUEST FOR PRODUCTION NO. 7:

13          All DOCUMENTS REFERRING OR RELATING TO ISAAC

14 LARIAN's net worth for any period on or after January 1, 2007 (excluding

15 pleadings served by YOU on MATTEL in this action).

16

17 REQUEST FOR PRODUCTION NO. 8:

18          All DOCUMENTS REFERRING OR RELATING TO orders,

19 including without limitation cancelled or held orders, for BRATZ products for

20 Spring 2009, and all COMMUNICATIONS with retailers and other prospective

21 purchasers REFERRING OR RELATING TO any such orders.

22

23 REQUEST FOR PRODUCTION NO. 9:

24          All DOCUMENTS REFERRING OR RELATING TO orders,

25 including without limitation cancelled or held orders, for BRATZ products for Fall

26 2009, and all COMMUNICATIONS with retailers and other prospective purchasers

27 REFERRING OR RELATING TO any such orders.

28

EXHIBIT  9
PAGE  330

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1 | REQUEST FOR PRODUCTION NO. 10:

2         All DOCUMENTS REFERRING OR RELATING TO the transfer of

3 | any ITEM OF VALUE by MGA to, or for the benefit of, ISAAC LARIAN, any

4 | member of ISAAC LARIAN's family or any entity controlled by ISAAC LARIAN

5 | or any member of ISAAC LARIAN's family, since January 1, 2007.

6

7 | REQUEST FOR PRODUCTION NO. 11:

8         All COMMUNICATIONS between YOU and any third-party,

9 | including without limitation any retailer or distributor but excluding MATTEL and

10 | any Court, REFERRING OR RELATING TO YOUR *ex parte* application for stay

11 | pending appeal, filed December 11, 2008, including without limitation any

12 | declaration, whether final, draft, proposed or requested, in connection therewith and

13 | copies of all draft declarations in connection therewith.

14

15 | REQUEST FOR PRODUCTION NO. 12:

16         All DOCUMENTS REFERRING OR RELATING TO capital

17 | contributions to MGA since January 1, 2007.

18

19 | REQUEST FOR PRODUCTION NO. 13:

20         All DOCUMENTS showing MGA's projected revenue, costs, profits or

21 | financial performance for any period since January 1, 2007.

22

23 | REQUEST FOR PRODUCTION NO. 14:

24         All DOCUMENTS REFERRING OR RELATING TO any transfer of

25 | any ITEM OF VALUE or other transaction between (i) MGA, and (ii) ISAAC

26 | LARIAN, any ISAAC LARIAN family member, any PERSON controlled, directly

27 | or indirectly by ISAAC LARIAN, or any PERSON controlled, directly or indirectly,

28 | by any ISAAC LARIAN family member since January 1, 2007.

EXHIBIT 9
PAGE 331

1   REQUEST FOR PRODUCTION NO. 15:

2          All W-2s REFERRING OR RELATING TO any ISAAC LARIAN

3   family member since January 1, 2007.

4

5   REQUEST FOR PRODUCTION NO. 16:

6          All DOCUMENTS REFERRING OR RELATING TO any sale,

7   distribution or transfer by MGA of BRATZ products having a retail value greater

8   than $50,000 other than to retailers in the ordinary course of business since

9   January 1, 2007.

10

11  REQUEST FOR PRODUCTION NO. 17:

12         All DOCUMENTS REFERRING OR RELATING TO agreements,

13  transactions, sales, shipments or the transfer of any ITEM OF VALUE between

14  MGA and IGWT Group, LLC.

15

16  REQUEST FOR PRODUCTION NO. 18:

17         All DOCUMENTS REFERRING OR RELATING TO the alleged

18  transfer of product from MGA to IGWT Group, LLC pursuant to the Inventory

19  Purchase Agreement dated July 7, 2008, including without limitation all audits or

20  other valuations performed in connection with such product, any opinions

21  RELATING TO the fairness or unfairness of such transfer, all MGA corporate or

22  director resolutions or approvals of such transfer, all bids received or solicited in

23  connection with the purported sale or offering for sale of such product, the terms of

24  such bids and any other and all COMMUNICATIONS relating to any of the

25  foregoing.

26

27

28

EXHIBIT   9
PAGE   332

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

2752004.1

1  REQUEST FOR PRODUCTION NO. 19:

2        All DOCUMENTS REFERRING OR RELATING TO the revenue

3  generated by IGWT Group, LLC's sales, licensing, distribution or other transfer of

4  BRATZ products and the transfer or disposition of such revenue.

5

6  REQUEST FOR PRODUCTION NO. 20:

7        All DOCUMENTS REFERRING OR RELATING TO agreements,

8  contracts, transactions, sales, shipments or transfers of any ITEM OF VALUE

9  between MGA and IGWT 826 Investments, LLC.

10

11  REQUEST FOR PRODUCTION NO. 21:

12        All DOCUMENTS REFERRING OR RELATING TO the revenue

13  generated by IGWT 826 Investments, LLC's sales, licensing, distribution or other

14  transfer of BRATZ products and the transfer or disposition of such revenue.

15

16  REQUEST FOR PRODUCTION NO. 22:

17        All agreements, contracts and written COMMUNICATIONS between

18  MGA and Wachovia since January 1, 2007.

19

20  REQUEST FOR PRODUCTION NO. 23:

21        All agreements and contracts REFERRING OR RELATING TO any

22  indebtedness owed to Wachovia or any credit extended by Wachovia since January

23  1, 2007, and any amendments or modifications thereto, and any

24  COMMUNICATIONS RELATED TO any such agreements or contracts.

25

26  REQUEST FOR PRODUCTION NO. 24:

27        All DOCUMENTS REFERRING OR RELATING TO agreements,

28  contracts or transactions between MGA and OMNI 808 INVESTORS, LLC, and

27520Q4.1

EXHIBIT ___9___
PAGE ___383___

1  any amendments or modifications thereto, and any COMMUNICATIONS

2  REFERRING OR RELATING TO any such agreements, contracts or transactions.

3

4  REQUEST FOR PRODUCTION NO. 25:

5           All DOCUMENTS containing financial information, including but not

6  limited to YOUR historical and prospective financial performance, provided by

7  YOU to OMNI 808 INVESTORS, LLC, VISION CAPITAL, LLC or LEXINGTON

8  FINANCIAL since January 1, 2008.

9

10  REQUEST FOR PRODUCTION NO. 26:

11          All DOCUMENTS REFERRING OR RELATING TO agreements,

12  contracts or transactions between LEXINGTON FINANCIAL and MGA or any

13  other PERSON, and any amendments or modifications thereto, and any

14  COMMUNICATIONS REFERRING OR RELATING TO any such agreements,

15  contracts or transactions.

16

17  REQUEST FOR PRODUCTION NO. 27:

18          All DOCUMENTS REFERRING OR RELATING TO agreements,

19  contracts or transactions between VISION CAPITAL, LLC and MGA or any other

20  PERSON, and any amendments or modifications thereto, and any

21  COMMUNICATIONS REFERRING OR RELATING TO any such agreements,

22  contracts or transactions.

23

24  REQUEST FOR PRODUCTION NO. 28:

25          DOCUMENTS sufficient to IDENTIFY each member, managing

26  member, holder of any ownership interest in, shareholder, officer and director of

27  IGWT Group, LLC.

28

EXHIBIT __9__
PAGE __334__

2752004.1

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1   REQUEST FOR PRODUCTION NO. 29:

2           DOCUMENTS sufficient to IDENTIFY each member, managing

3   member, holder of any ownership interest in, shareholder, officer and director of

4   IGWT 826 Investments, LLC.

5

6   REQUEST FOR PRODUCTION NO. 30:

7           DOCUMENTS sufficient to IDENTIFY each member, managing

8   member, holder of any ownership interest in, shareholder, officer and director of

9   OMNI 808 INVESTORS, LLC.

10

11  REQUEST FOR PRODUCTION NO. 31:

12          DOCUMENTS sufficient to IDENTIFY each member, managing

13  member, holder of any ownership interest in, shareholder, officer and director of

14  VISION CAPITAL, LLC.

15

16  REQUEST FOR PRODUCTION NO. 32:

17          DOCUMENTS sufficient to IDENTIFY each member, managing

18  member, holder of any ownership interest in, shareholder, officer and director of

19  LEXINGTON FINANCIAL.

20

21  REQUEST FOR PRODUCTION NO. 33:

22          All DOCUMENTS RELATING TO any transfer of any funds, monies

23  or any ITEM OF VALUE from, or any extension of credit or funding by,

24  LEXINGTON FINANCIAL to YOU or LARIAN.

25

26

27

28

EXHIBIT __9__

PAGE __335__

2752004.1

-15-

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS RELATING TO any transfer of any funds, monies or any ITEM OF VALUE to or from, or any extension of credit or funding by or to, LEXINGTON FINANCIAL, whether directly or indirectly.

REQUEST FOR PRODUCTION NO. 35:

DOCUMENTS sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director of IGWT Group, LLC.

REQUEST FOR PRODUCTION NO. 36:

DOCUMENTS sufficient to IDENTIFY each member, managing member, holder of any ownership interest in, shareholder, officer and director of IGWT 826 Investments, LLC.

REQUEST FOR PRODUCTION NO. 37:

DOCUMENTS sufficient to IDENTIFY each of YOUR bank accounts since January 1, 2007.

REQUEST FOR PRODUCTION NO. 38:

DOCUMENTS sufficient to IDENTIFY each bank account to or from which Isaac Larian has transferred or has had transferred any ITEM OF VALUE since January 1, 2007.

REQUEST FOR PRODUCTION NO. 39:

DOCUMENTS sufficient to IDENTIFY each bank account to or from which OMNI 808 INVESTORS, LLC has transferred or has had transferred any ITEM OF VALUE since January 1, 2007.

EXHIBIT 9
PAGE 336

2752004.1

-16-

1  REQUEST FOR PRODUCTION NO. 40:

2          DOCUMENTS sufficient to IDENTIFY each bank account to or from

3  which IGWT Group, LLC has transferred or has had transferred any ITEM OF

4  VALUE since January 1, 2007.

5

6  REQUEST FOR PRODUCTION NO. 41:

7          DOCUMENTS sufficient to IDENTIFY each bank account to or from

8  which IGWT 826 Investments, LLC has transferred or has had transferred any

9  ITEM OF VALUE since January 1, 2007.

10

11  REQUEST FOR PRODUCTION NO. 42:

12          All COMMUNICATIONS between or among YOU, IGWT 826

13  Investments, LLC and/or IGWT Group, LLC REFERRING OR RELATING TO

14  MATTEL and/or BRATZ.

15

16  REQUEST FOR PRODUCTION NO. 43:

17          All COMMUNICATIONS between or among YOU, OMNI 808

18  INVESTORS, LLC, VISION CAPITAL, LLC and/or LEXINGTON FINANCIAL

19  REFERRING OR RELATING TO MATTEL, MGA, LARIAN and/or BRATZ.

20

21  REQUEST FOR PRODUCTION NO. 44:

22          All COMMUNICATIONS between YOU and MASHIAN

23  REFERRING OR RELATING TO OMNI 808 INVESTORS, LLC, VISION

24  CAPITAL, LLC, LEXINGTON FINANCIAL, MATTEL, MGA, LARIAN and/or

25  BRATZ.

26

27

28

EXHIBIT   9
PAGE   337

2752004.1

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1 | REQUEST FOR PRODUCTION NO. 45:

2 |         All COMMUNICATIONS between YOU and Neil Kadisha

3 | REFERRING OR RELATING TO OMNI 808 INVESTORS, LLC, VISION

4 | CAPITAL, LLC, LEXINGTON FINANCIAL, MATTEL, MGA, LARIAN and/or

5 | BRATZ.

6 |

7 | REQUEST FOR PRODUCTION NO. 46:

8 |         All COMMUNICATIONS between YOU and OMNI 808

9 | INVESTORS, LLC REFERRING OR RELATING TO VISION CAPITAL, LLC,

10 | LEXINGTON FINANCIAL, MATTEL, MGA, LARIAN and/or BRATZ.

11 |

12 | REQUEST FOR PRODUCTION NO. 47:

13 |         All COMMUNICATIONS REFERRING OR RELATING TO VISION

14 | CAPITAL, LLC, LEXINGTON FINANCIAL and/or OMNI 808 INVESTORS,

15 | LLC.

16 |

17 | REQUEST FOR PRODUCTION NO. 48:

18 |         DOCUMENTS sufficient to IDENTIFY each bank account to or from

19 | which VISION CAPITAL, LLC has transferred or has had transferred any ITEM

20 | OF VALUE since January 1, 2007.

21 |

22 | REQUEST FOR PRODUCTION NO. 49:

23 |         DOCUMENTS sufficient to IDENTIFY each bank account to or from

24 | which LEXINGTON FINANCIAL has transferred or has had transferred any ITEM

25 | OF VALUE since January 1, 2007.

26 |

27 |

28 |

EXHIBIT __9__

PAGE __338__

27520O4.I

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

1  REQUEST FOR PRODUCTION NO. 50:

2         DOCUMENTS sufficient to IDENTIFY each licensee of any BRATZ

3  product since January 1, 2007.

4

5  REQUEST FOR PRODUCTION NO. 51:

6         DOCUMENTS sufficient to show the amount of payments made to

7  YOU by each licensee of any BRATZ product since January 1, 2007.

8

9  REQUEST FOR PRODUCTION NO. 52:

10        A sample of each BRATZ product manufactured, sold, offered for sale,

11  marketed or distributed by YOU since January 1, 2008.

12

13  REQUEST FOR PRODUCTION NO. 53:

14        To the extent not produced in response to any other Request, a sample

15  of each core BRATZ female fashion doll manufactured, sold, offered for sale,

16  marketed or distributed by YOU since January 1, 2008.

17

18  REQUEST FOR PRODUCTION NO. 54:

19        All registrations, and applications for registration, for any trademark or

20  service mark that constitutes, includes or incorporates in any manner the term

21  "BRATZ."

22

23  REQUEST FOR PRODUCTION NO. 55:

24        All registrations, and applications for registration, for any trademark or

25  service mark that constitutes, includes or incorporates in any manner the term

26  "Jade."

27

28

EXHIBIT __9__
PAGE __339__

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

2752004.1

1  REQUEST FOR PRODUCTION NO. 56:

2         All COMMUNICATIONS with any Trademark Office or governmental

3  entity REFERRING OR RELATING TO any registration, or application for

4  registration, for any trademark or service mark that constitutes, includes or

5  incorporates in any manner the term "BRATZ."

6

7  REQUEST FOR PRODUCTION NO. 57:

8         All COMMUNICATIONS with any Trademark Office or governmental

9  entity REFERRING OR RELATING TO any registration, or application for

10  registration, for any trademark or service mark that constitutes, includes or

11  incorporates in any manner the term "Jade."

12

13

14  DATED:  January 7, 2009            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
15

16                          By_____

17                            Jon D. Corey
                              Attorneys for Mattel, Inc.
18

19

20

21

22

23

24

25

26

27

28

2752004.1

-20-

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS TO MGA ENTERTAINMENT (Phase 2)

EXHIBIT 9
PAGE 340

# EXHIBIT 10

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7    MATTEL, INC.,                  )
                                    )
8                   Plaintiff,      )
                                    )
9         vs.                       )   No. CV 04-09049
                                    )
10   MGA ENTERTAINMENT, INC., ET. AL., )
                                    )
11                  Defendants.     )
     _____)
12   AND CONSOLIDATED ACTIONS,      )   Motions
                                    )
13   _____)

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Riverside, California

17          Wednesday, February 11, 2009

18                 10:03 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter
24            3470 12th Street, Rm. 134
          Riverside, California  92501
25                 951-274-0844
            WWW.THERESALANZA.COM

EXHIBIT  1D
PAGE  341

```
 1 | APPEARANCES:
 2 | ON BEHALF OF MATTEL, INC.:
 3 |                           QUINN EMANUEL
   |                           By:  JOHN QUINN
 4 |                                DYLAN PROCTOR
   |                                MICHAEL T. ZELLER
 5 |                           865 S. FIGUEROA STREET,
   |                           10TH FLOOR
 6 |                           LOS ANGELES, California  90017
   |                           213-624-7707
 7 |
 8 | ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
   | (Outgoing)
 9 |                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   |                           BY:  THOMAS J. NOLAN
10 |                                .JASON RUSSELL
   |                           300 SOUTH GRAND AVENUE
11 |                           LOS ANGELES, CALIFORNIA  90071-3144
   |                           213-687-5000
12 |
13 | ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
   | (Incoming)
14 |                           GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
   |                           BY:  JOEL KLEVENS
15 |                           10250 Constellation Boulevard
   |                           Los Angeles, California  90067
16 |                           310-553-3000
17 |                           MITCHELL, SILBERBERG & KNUPP LLP
   |                           BY:  RUSSELL J. FRACKMAN
18 |                           11377 West Olympic Boulevard,
   |                           Los Angeles, California  90064-1683
19 |                           310-312-2000
20 |
   | ON BEHALF OF DEFENDANT GUSTAVO MACHADO:
21 |
   |                           OVERLAND BORENSTEIN SCHEPER & KIM LLP
22 |                           BY:  ALEXANDER H. COTE
   |                           601 West Fifth Street,
23 |                           12th Floor
   |                           Los Angeles, California  90071
24 |                           213-613-4660
25 | /  /  /
```

EXHIBIT  10
PAGE  342

3

```
 1                    I N D E X (Continued)

 2

 3    APPEARANCES (continued):

 4

      On behalf of OMNI 808:
 5

 6                    BINGHAM McCUTCHEN LLP
                      BY:  Todd E. Gordinier
 7                    600 Anton Boulevard
                      Costa Mesa, CA  92626-1924
 8                    714-830-0622

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT __10__

PAGE __343__

:dnesday, February 11, 2009                    Mattel vs. MGA Entertainme:

4

```
 1                          I N D E X

 2                                               Page

 3       Motions......................................     4

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT ___10___
PAGE ___314___

dnesday, February 11, 2009                    Mattel vs. MGA Entertainme

5

1    Riverside, California; Wednesday, February 11, 2009; 10:03 A.M.

2                          -oOo-

3           **THE CLERK:**  Calling calendar item one, in the matter

4    of Mattel Incorporated versus MGA Entertainment Incorporated,

5    Case Number CV 04-9049.                                        00:03

6           Counsel, please state your appearances for the

7    record.

8           **MR. QUINN:**  John Quinn, Mike Zeller, Dylan Proctor

9    for Mattel.

10          **MR. NOLAN:**  Tom Nolan, Jason Russell,               00:03

11   Jennifer del Castillo on MGA and Isaac Larian's post trial

12   chamber on motions and motion for remittitur on Phase 1.

13          **MR. COTE:**  Alexander Cote on behalf of

14   Gustavo Machado.  I'll be sitting back in the gallery.

15          **MR. KLEVENS:**  Joel Klevens of Glaser Weil for the MGA  00:03

16   defendants.

17          **MR. FRACKMAN:**  Russell Frackman of Mitchell,

18   Silberberg & Knupp for the MGA defendants.

19          **MR. GORDINIER:**  Todd Gordinier for Omni 808.

20          **THE COURT:**  Counsel, good morning.                  00:04

21          We have several matters on calendar this morning to

22   take up.  I have the judgment as a matter of law by Mattel; I

23   have a motion for judgment as a matter of law from MGA; I have

24   MGA's motion for remittitur; I have the ex-parte application by

25   Omni 808 to intervene for limited purpose; I have MGA's request  00:04

EXHIBIT ___10___
PAGE ___345___

 1   follow the logical reason, their full amount of damages, based

 2   on the instructions that they were provided and the evidence

 3   that they were given, comes out to a consistent verdict.

 4           THE COURT:  I do understand your argument.  Thank

 5   you, Counsel.

 6           MR. ZELLER:  Your Honor --

 7           THE COURT:  No.  I've allowed the moving party to

 8   speak first and last, and let's stick to that.  You have well

 9   briefed these things.

10           I next want to take up Omni 808's ex-parte            01:34

11   application to intervene for limited purposes.

12           Mr. Gordinier.

13           MR. GORDINIER:  Thank you for offering me the

14   opportunity to address the Court.

15           We've set out in our papers, really, what we're       01:34

16   looking for here.  The transaction by which Omni 808 acquired

17   its interest and stepped into the shoes of Wachovia was

18   straightforward and it was at arm's length.  And I, frankly,

19   although naively, believed that if we would get stipulated to

20   be a party to the proceeding going forward, to the extent the  01:35

21   Court --

22           THE COURT:  Where do those funds come from?

23           MR. GORDINIER:  Mr. Kadisha, Your Honor, is a very

24   substantial individual.  Mr. Kadisha, Neil Kadisha, who is the

25   president and CEO of Omni 808, was one of the founders of      01:35

EXHIBIT __10__

PAGE ___346___

1  Qualcomm.  With everything that's gone on in the market in the

2  last six or seven months, I don't want to make any

3  representations, but Mr. Kadisha has from time to time appeared

4  on the Forbes 400 list.  I don't know what his net worth is.

5         What happened, Your Honor, is, Wachovia called the      01:35

6  note.  I don't know why.  I've been involved in these cases

7  where everybody feels like the world revolves around what's

8  happening in this courtroom.  As the Court knows, Wachovia had

9  other issues.

10        Wachovia and its syndicate wanted it off its balance     01:35

11 sheet, and MGA needed relief from the immediate need to pay

12 money they did not have.  And my client was approached and put

13 together people and bought the indebtedness and assumed the

14 debt at a discount, at a substantial discount; and he expects

15 to make money.                                                  01:36

16        THE COURT:  You're representing to the Court, though,

17 that this was not MGA's money; that this was -- from wherever

18 it came from, it came from someplace else.

19        MR. GORDINIER:  Your Honor, two things.  I've never

20 met Mr. Larian, and I know less about MGA than almost everybody  01:36

21 else.

22        THE COURT:  I'm not asking about what you know from

23 MGA but of what you know from your client.

24        MR. GORDINIER:  What I know from my client is, he put

25 in many millions of dollars.  He had a couple of investors with  01:36

EXHIBIT __10__

PAGE ___347___

1   him to put in many millions of dollars.

2           THE COURT:  Those investors and that money did not

3   come from MGA?

4           MR. GORDINIER:  That's the best of my understanding,

5   Your Honor.  That's true.                           01:36

6           And the best way to resolve that is what the Court

7   has already done.  The Court did exactly the right thing and

8   set up Mr. Durkin, who's very accomplished, to look at MGA's

9   books.  Step number one, he can tell the Court what their

10   balance sheet is, what their income statement is, and also the   01:37

11   sources and uses of cash.

12           And if there are any issues -- and, by the way, I'm

13   happy to talk to Mr. Durkin or have Mr. Durkin talk to my

14   client.  This is not intended to be -- this wasn't a fraudulent

15   transaction, Your Honor.  We negotiated -- we -- I didn't do   01:37

16   it -- Omni 808 negotiated with Davis Polk on behalf of Wachovia

17   and bought at a discount; and Omni 808 expects to and would

18   like to make money on its investment, and will not be able to

19   do so, obviously, if MGA goes out of business.  So our interest

20   here is in protecting Omni 808's investment.  And part of that   01:38

21   is wanting a say in how MGA's business on this receiver issue

22   is dealt with.

23           THE COURT:  The interest to intervene is focused, as

24   you indicate in your papers, on the receivership issue?

25           MR. GORDINIER:  That's correct, Your Honor.  That's   01:38

EXHIBIT __10__

PAGE __348__

73

1    correct.

2              THE COURT:  Very well.

3              Does anyone wish to be heard in opposition to the

4    ex-parte application?

5              MR. ZELLER:  Yes, Your Honor.                          01:38

6              I don't know that we've been -- and maybe the Court

7    heard it differently, but I still do not hear anything that

8    certainly approaches evidence that this was, in fact, an arm's

9    length transaction.

10             THE COURT:  I have a representation from respected     01:38

11   counsel.

12             MR. ZELLER:  Well, he said -- Your Honor, the

13   Court -- all he said was to the best of his knowledge.  He

14   didn't say it didn't come from it.

15             Second, the Court asked MGA; it didn't ask from        01:39

16   Larian, Larian's brother-in-law, his wife -- there are other

17   family members involved in this, and their fingerprints are on

18   this.  So, certainly, I want to be very clear, Your Honor, we

19   have not gone so far as to say, this is a fraud, this is a

20   sham, or so on.  The fact is that there are substantial         01:39

21   questions here as to the bona fides of this transaction and

22   whether or not this has been papered in a way to basically

23   create debt and credit, where, in fact, it would simply be

24   treated by the tax code, by the bankruptcy code, by the courts,

25   for every other purpose, as, in fact, being nothing but a loan,  01:39

EXHIBIT __10__

PAGE __349__

dnesday, February 11, 2009                    Mattel vs. MGA Entertainme

1    even as to things that were compelled before the stay. They

2    have been taking the position that the Court's orders of

3    January 6th and January 7th effectively stayed our ability to

4    get financial discovery.

5            I would ask the Court to make a ruling on this.          02:36

6            I regret having to raise it, but we are going to lose

7    at least another month, if not another two months, in getting

8    financial information which is absolutely critical for our

9    ability to prepare for this. And this is one reason why I was

10   suggesting as long as I was.                                      02:36

11           THE COURT: I understand, Counsel.

12           MR. ZELLER: But, the idea that there's a stay in

13   place is --

14           THE COURT: I thought I made it clear that I lifted

15   all stays on discovery, but perhaps not.                         02:36

16           MR. KLEVENS: The system the Court has set up cannot

17   work if counsel are allowed to come to the Court and give some

18   distorted view of what they think the dispute is about and not

19   leave it to the Discovery Master to look at and resolve and

20   give the parties the opportunity to brief.                       02:36

21           I'm not going to respond to what he says. I don't

22   agree with a word that he said. But I'm not going to

23   respond to it.

24           THE COURT: I think you have responded, Counsel, and

25   I take your response at its value.                               02:37

EXHIBIT ___10

PAGE ___350

97

1          For the record, I previously indicated that all stays

2     on discovery have been lifted.  All discovery matters should

3     rightfully be referred to the Discovery Master.  And I'll let

4     it go at that.

5          MR. ZELLER:  And that no discovery issues or no          02:37

6     requests for discovery are premature at this point, because

7     that's the other term they are using on this.

8          THE COURT:  I will instruct the Discovery Master this

9     afternoon, in no uncertain terms, that there is no stay on any

10    discovery related to this case at all.  There's no longer a     02:37

11    Phase 1/Phase 2 distinction.

12         As I indicated, I thought that I made this clear

13    before.  If it's not, it will be expressly set forth in the

14    minutes coming out of today's hearing.

15         There is no stay on discovery.  Period.                    02:37

16         MR. ZELLER:  And we're fully entitled to the

17    financial information that --

18         THE COURT:  Lets leave it at that, Counsel.

19         Thank you, Mr. Zeller.

20         MR. RUSSELL:  Could I say one thing, since                 02:38

21    Mr. Zeller injected this.

22         When he's talking about this stay -- and this is the

23    twilight between Phase 1 and Phase 2 counsel -- they

24    promulgated a series of receiver-related discovery which we

25    contend and run your Honor's orders saying let's talk it out of  02:38

EXHIBIT __10
PAGE __351

:dnesday, February 11, 2009                    Mattel vs. MGA Entertainme:

1    discovery, let's let Mr. Durkin handle this.  And that's what
2    he's talking about.

3            There may be other issues, but a major component --
4    and I would not want Your Honor to paint with too broad a
5    brush -- it is MGA's position as to Phase 1 receiver-related          02:38
6    issues, that Your Honor appropriately, at our request, took out
7    of discovery the financial discovery issues.

8            THE COURT:  Mr. Durkin is acting at the Court's
9    direction to inform the Court of information.  I may or may not
10   release any of the information that Mr. Durkin provides; so no         02:38
11   one, neither side, should be relying upon the information that
12   Mr. Durkin is gathering for purposes of litigating this case.
13   That's an entirely separate matter.  And I have not stayed any
14   discovery, and there should be no reliance on that.

15           If that was misunderstood, it's clarified now.                 02:39

16           MR. RUSSELL:  Just so I can make sure I'm clear, Your
17   Honor, because I really, since we were the ones at the hearing
18   when this was discussed, and we asked Your Honor for this
19   precise relief, which is to say the financial discovery, the
20   allegations against Omni and IGWT and the like, and I thought I        02:39
21   heard Your Honor to say that it made sense for Mr. Durkin to
22   get to the base of it.  And if, then, there were any merit to
23   it, we could allow this discovery to go forward.

24           THE COURT:  Wait a second.

25           You're adding something in there.  I didn't say                02:39

EXHIBIT ___/0___

PAGE ____352____

1   anything about discovery not going forth.  I have not ruled on

2   any discovery issues.  I ruled on the ex-parte application for

3   the appointment of the receiver that before I ruled on that,

4   that I wanted to have Mr. Durkin's report.  That's exactly what

5   I'm doing.  I took an interim report last night.  I'll await          02:39

6   the final report.  But that's for the Court's purposes.

7          Depending on how the receivership issue plays out, it

8   may or may not be released to some or all of the attorneys.  It

9   may very well be that at the end of the day, after my final

10  meeting with Mr. Durkin, that it never reaches the light of          02:40

11  day.

12          MR. RUSSELL:  Just so we're clear, Your Honor, Mattel

13  attached the very discovery they are now promulgating to other

14  parties to their receiver application and asked for leave to

15  serve it.  Your Honor did not grant that leave.  And then what       02:40

16  happened was they said, Well, we can't go down this avenue,

17  we'll launch a series of subpoenas.

18          THE COURT:  Then the question becomes -- and this is

19  a question for the Discovery Master, not for this Court --

20  whether or not the discovery is related to Phase 2.  If it is,       02:40

21  it is.  I'm not going to pass any judgment whatsoever.  I'm

22  going to leave that completely up to the Discovery Master.

23          MR. RUSSELL:  That's all we're asking for.  Rather

24  than painting with a broad brush, saying all discovery is

25  permitted, there's some discovery that does fall within the          02:40

EXHIBIT ___ /D

PAGE ___ 323

100

1  scope of what Your Honor refused to give them.  Let's let the

2  discovery master rule on it.  It can always come back to you.

3          THE COURT:  Okay.

4          But I guess, Mr. Russell, I'm not sure of the

5  characterization that you're making.                          02:41

6          I handled the receivership application and request

7  made thereunder in the way that I'm handling the receivership

8  application; that should not be taken one way or the other as a

9  discovery ruling.

10         MR. RUSSELL:  I guess, Your Honor, the question is if  02:41

11 there was, as part of that application, and there's an

12 assumption built in that we'd like to have the Discovery Master

13 resolve, is it just receiver discovery or is it Phase 2?  That

14 seems like a question that Mr. O'Bryan should answer.  But I

15 assume, since you don't have any of the briefs and you don't    02:41

16 have the discovery and this has just been dropped on you,

17 assume for the sake of this discussion, that it is solely

18 related to the receiver; that it is, as we pause it, identical

19 to the discovery submitted.

20         THE COURT:  I guess where I would distinguish,        02:41

21 counsel, is this notion of receiver discovery, or that phrase,

22 that's not a phrase the Court has used.  Not that I can recall

23 using.  If I did, I certainly did not intend to.  I'm not

24 designating that as a separate and severable part of the

25 discovery.                                                     02:42

EXHIBIT   10
PAGE   354

1           The question for the discovery master will be whether

2      or not the disputed discovery request is related or relevant to

3      the trial that has now been scheduled for March or not.  I can

4      see tremendous overlap between, for example, discovery on

5      financial condition of the company as it relates to damages in     02:42

6      the Phase 2 and also issues that the receiver is looking at.

7      And without making a ruling on any of this, I would not suggest

8      for a moment that these are mutually exclusive categories.

9           MR. RUSSELL:  They may not be, Your Honor.  That's

10     the reason why Mr. O'Bryan in the first instance should deal       02:42

11     with it.  Because if you take it the way we take it, this might

12     not be Phase 2 discovery.

13          THE COURT:  You can make that argument to

14     Mr. O'Bryan.

15          MR. RUSSELL:  Thank you, Your Honor.                          02:43

16          MR. ZELLER:  And just so it's clear, what Mr. Russell

17     is articulating is a basis as to why MGA has refused to give us

18     any financial --

19          THE COURT:  Mr. Zeller, I'm going to cut you off

20     here.  Take that up with the Discovery Master.  I don't mean to    02:43

21     cut you off, but I think I made my position as clear as I can

22     today that there is nothing from this Court which is precluding

23     any discovery that is properly sought for the trial that is

24     scheduled.

25          Whatever has happened has happened and we need to            02:43

EXHIBIT ___10___

PAGE ___335___

1  move forward.

2          MR. ZELLER:  Thank you, Your Honor.

3          THE COURT:  Thank you, counsel.

4          MR. FRACKMAN:  I'm last, and I think I'll be the

5  shortest.  On the issue of streamlining discovery, I've read          02:43

6  the Court's prior orders concerning the number of depositions,

7  for example, and I confess, I'm a bit confused.

8          We would request from the Court that there be a

9  reasonable limit placed on Phase 2 depositions.  I don't know

10  whether that comes to Your Honor or whether that goes to the          02:44

11  discover referee.

12          THE COURT:  In the first instance, that would go to

13  the discovery referee.  The limits that were placed were limits

14  that were placed on the earlier discovery phase.

15          To be clear again, I have placed no limits, no          02:44

16  restrictions, other than what is set forth in the rules of

17  civil procedure and in local rule 37 on discovery from this

18  point until March 23rd.

19          If the parties wish to stipulate, they may.  If the

20  parties think that the Court needs to be involved in this in          02:44

21  the first instance, that needs to go to the Discovery Master.

22          MR. FRACKMAN:  I think we're prepared to follow the

23  federal rules, Your Honor.  Thank you.

24          THE COURT:  Very good.

25          MR. ZELLER:  I feel like I'm being more difficult at          02:44

EXHIBIT __10__

PAGE __356__

105

1    we'll go from there.

2              MR. ZELLER:   Thank you.

3              THE COURT:   Anything further?

4              Thank you.   Good day.

5

6

7

8

9

10                        CERTIFICATE

11

12   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
13   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.
15

16   _____              2-13-09
     THERESA A. LANZA, CSR, RPR                 Date
17   Federal Official Court Reporter

18

19

20

21

22

23

24

25                                      EXHIBIT ___10___
                                        PAGE ___357___

**EXHIBIT 11 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 12 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 13 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 14 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 15

**PRIORITY SEND**
& ENTERED

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                      Date:  July 2, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                          Theresa Lanza
          Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER        ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                        John B. Quinn
                                     Brett Dylan Proctor
                                     Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:    ┌─────────────────────┐   ┌──────────────────┐
                             │       ENTERED        │   │ DOCKETED ON CM   │
Dale M. Cendali              │ CLERK, U.S. DISTRICT COURT │   │                  │
Patricia Glaser              │  ┌───────────────┐  │   │   JUL - 5 2007    │
                             │  │  JUL - 5 2007  │  │   │                  │
PROCEEDINGS:   MINUTE ORDER  │  └───────────────┘  │   │ BY      164      │
                             │ CENTRAL DISTRICT OF CALIFORNIA │   └──────────────────┘
                             │ EASTERN DIVISION   BY DEPUTY │
          As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                      Initials of Deputy Clerk _jh_
CIVIL – GEN                                          Time: 01/15
                        EXHIBIT  15          1
                        PAGE     400



regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

2

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ___15___
PAGE ___401___

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT 15
PAGE 402

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)    MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL – GEN

4

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT __15__
PAGE __403__

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)   Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ___15___
PAGE ___464___

# EXHIBIT 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                              Date: December 3, 2008
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         James Holmes                          None Present
         Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90
CIVIL -- GEN                              1                    Initials of Deputy Clerk: jh

EXHIBIT  16
PAGE     405

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

Initials of Deputy Clerk: jh

EXHIBIT ___16___
PAGE ___406___

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]   By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

MINUTES FORM 90
CIVIL -- GEN                                    3

Initials of Deputy Clerk: jh

EXHIBIT __|6__
PAGE __407__

interlocutory appeal.  After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005.  The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006.  Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties.  On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice.  MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights.  The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner).  Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

**B.     Estoppel**

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them.  To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN                                        4                    Initials of Deputy Clerk: jh

EXHIBIT ___16___
PAGE ___408___

Case 2:04-cv-09049-DOC-RNB  Document 6007-5  Filed 07/23/09  Page 70 of 86  Page ID
#:197315
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 12/03/2008  Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk: jh

EXHIBIT  16
PAGE ___409___

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 71 of 86   Page ID
#:197316
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.     Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]   The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

Initials of Deputy Clerk: jh

EXHIBIT ___16___
PAGE ___410___

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

### B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]    Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN                                           7

Initials of Deputy Clerk: jh

EXHIBIT  16
PAGE  411

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 73 of 86   Page ID
#:197318
Case 2:04-cv-09049-SGL-RNB     Document 4439     Filed 12/03/2008     Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion).  The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding.  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act.  The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.     § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV.  Motion for Permanent Injunction (docket #4306)

### A.     Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                    8                    Initials of Deputy Clerk: jh

EXHIBIT 16
PAGE 412

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk: jh

EXHIBIT 16
PAGE 413

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 75 of 86   Page ID
#:197320
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 10 of 17

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5] Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101. Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money. You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products. And the jury has put that cap for us.

Id. Although colorful, counsel's metaphor is not helpful. Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it. But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well. See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk: jh

EXHIBIT 16
PAGE 414

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 76 of 86   Page ID
#:197321
Case 2:04-cv-09049-SGL-RNB       Document 4439       Filed 12/03/2008       Page 11 of 17

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                    11                    Initials of Deputy Clerk: jh

EXHIBIT  16
PAGE    415

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 77 of 86   Page ID
#:197322
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 12 of 17

that hundreds of the MGA parties' products -- including all the currently available core female
fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties
have evinced an intention to continue marketing those dolls. This represents a wholesale inability
on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to
irreparable harm.   Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir.
2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v.
Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case
holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not
permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right."   In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor
court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably"
in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a
review of the Taylor case makes clear that the Eighth Circuit considered the implications of
allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a
request for injunctive relief could otherwise "amount to a forced license to use the creative work of
another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the
application of a "disguised presumption" of irreparable harm and closer to an actual finding of
irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today,
as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of
future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008
WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

Initials of Deputy Clerk: jh

EXHIBIT __16__
PAGE __416__

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 78 of 86   Page ID
#:197323
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 13 of 17

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

Case 2:04-cv-09049-DOC-RNB   Document 6007-5   Filed 07/23/09   Page 79 of 86   Page ID
#:197324
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 14 of 17

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), <u>accord</u>, <u>Cadence Design Systems, Inc. v.
Avanti Corp.</u>, 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities
favor Mattel.

### 4.      Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern.  However, there is also a strong public
interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law.  Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement.  The injunction issued by the Court does no
more than that.

### C.      Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.      Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act.  <u>See</u> 17 U.S.C. § 503(a).  The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little.  In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.      Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers.  <u>See</u> <u>CyberMedia, Inc. v. Symantec Corp.</u>, 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]  No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

EXHIBIT 16
PAGE 418

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

## V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto
## (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

## VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations
## (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

Initials of Deputy Clerk: jh

EXHIBIT  16
PAGE   419

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT 16
PAGE 420

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

### XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

### XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

EXHIBIT __16__
PAGE __421__

# EXHIBIT 17

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Duane R. Lyons (Bar No. 125091)
(duanelyons@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

                                    Plaintiff,

              v.

MATTEL, INC., a Delaware
corporation,

                                    Defendant.

MGA ENTERTAINMENT, INC. a
California corporation,

                                    Plaintiff,

              v.

MATTEL, INC., a Delaware
corporation, and DOES 1-10,

                                    Defendants.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated With Case No. 04-9059 and
Case No. 05-2727

MATTEL, INC.'S SECOND AMENDED
ANSWER IN CASE NO. 05-2727 AND
COUNTERCLAIMS FOR:

1.  COPYRIGHT INFRINGEMENT;
2.  VIOLATION OF THE
    RACKETEER INFLUENCED AND
    CORRUPT ORGANIZATIONS
    ACT;
3.  CONSPIRACY TO VIOLATE THE
    RACKETEER INFLUENCED AND
    CORRUPT ORGANIZATIONS
    ACT;
4.  MISAPPROPRIATION OF TRADE
    SECRETS;
5.  BREACH OF CONTRACT;
6.  INTENTIONAL INTERFERENCE
    WITH CONTRACT;
7.  BREACH OF FIDUCIARY DUTY;
8.  AIDING AND ABETTING
    BREACH OF FIDUCIARY DUTY;
9.  BREACH OF DUTY OF
    LOYALTY;

CONFIDENTIAL FILED UNDER
SEAL, PURSUANT TO
PROTECTIVE ORDER

Volume I

EXHIBIT 17

PAGE 422

SECOND AMENDED ANSWER AND COUNTERCLAIMS

CONFORMED COPY

CLERK, U.S. DISTRICT COURT
JUL 12 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

209/2154363.3

| 1 | MATTEL, INC., a Delaware corporation, | 10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY; |
|---|---|---|

1    MATTEL, INC., a Delaware
     corporation,

2                                    Counter-claimant,

3         v.

4    MGA ENTERTAINMENT, INC., a
5    California corporation; ISAAC
     LARIAN, an individual; CARTER
6    BRYANT, an individual; MGA
     ENTERTAINMENT (HK) LIMITED,
7    a Hong Kong Special Administrative
     Region business entity; MGAE DE
8    MEXICO, S.R.L. DE C.V., a
     Mexico business entity; CARLOS
9    GUSTAVO MACHADO GOMEZ, an
     individual; and DOES 4 through 10,

10                                   Counter-defendants.

11

12   AND CONSOLIDATED CASES

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

EXHIBIT  17
PAGE  423

SECOND AMENDED ANSWER AND COUNTERCLAIMS

09/2154363.3

1            **SECOND AMENDED ANSWER**

2          Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

3 Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment,

4 Inc. ("Complaint") as follows:

5              Preliminary Statement

6          The Complaint in this case contravenes Rule 8(a) of the Federal Rules

7 of Civil Procedure in multiple respects. For example, in many places, the Complaint

8 improperly mixes factual averments with argumentative rhetoric. The Complaint

9 also includes a selective recitation of alleged historical facts and "rumor," much of

10 which is both irrelevant and inflammatory in tone and content. In addition, many of

11 the allegations of the Complaint are overly broad, vague or conclusory and include

12 terms which are undefined and which are susceptible to different meanings.

13 Accordingly, by way of a general response, all allegations are denied unless

14 specifically admitted, and any factual averment admitted is admitted only as to the

15 specific facts and not as to any conclusions, characterizations, implications or

16 speculations which are contained in the averment or in the Complaint as a whole.

17 These comments and objections are incorporated, to the extent appropriate, into

18 each numbered paragraph of this Second Amended Answer.

19          Mattel further submits that the use of the headings throughout the

20 Complaint is improper, and therefore no response to them is required. In the event

21 that a response is required, Mattel denies those allegations.

22          The Complaint also contains many purported photographs of various

23 items, and it uses one or more headings purporting to describe, either individually or

24 in groups, these various photographs. The images of these photographs contained in

25 the Complaint are all relatively small and some are of less than optimal quality,

26 making it difficult to evaluate the adequacy of the photographs or their fairness and

27 accuracy in depicting what they purport to represent. The Complaint also does not

28 describe the circumstances or time frame in which these photographs were taken,

2154363.2

EXHIBIT 17

PAGE 424