# Exhibit 40

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| | Case No. CV 04-09059 |
| vs. | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | DECLARATION OF DAVID ANTOLIN |
| AND CONSOLIDATED ACTIONS | |

Exhibit 40
Page 743

## DECLARATION OF DAVID ANTOLIN

I, David Antolin, declare as follows:

1.      I am employed as a process server by NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.      On January 12, 2009, I attempted to serve a subpoena on Vision Capital, LLC at 1525 South Broadway Street, Los Angeles, CA 90015. A true and correct copy of the subpoena is attached as Exhibit 1.

3.      When I arrived at 1525 South Broadway Street, I saw no sign on the building for Vision Capital, LLC, but I did see a sign on the outside of the building at that address for Neman Brothers & Associates, Inc. A true and correct copy of a photograph of the building at 1525 South Broadway showing the sign is attached as Exhibit 2.

4.      I proceeded to the reception desk of the building at 1525 South Broadway Street in an effort to serve the subpoena. When I inquired about service on Vision Capital, LLC, the receptionist made a phone call. After speaking with someone, the receptionist informed me that I was "in the wrong place" and that she had never heard of Vision Capital. The receptionist further stated to me that Neman Brothers & Associates, Inc. had been in this location for 25 years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 4, 2009, at Los Angeles, California.

_____
David Antolin

Exhibit 40
Page 744

Exhibit 40
Page 745

Exhibit 1

# EXHIBIT 1

Exhibit 10
Page 746

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

_____Central_____   _____California_____

CARTER BRYANT, an individual,

V.

MATTEL, INC., a Delaware corporation,

### SUBPOENA IN A CIVIL CASE

Case Number: [1]   CV 04-9049 SGL(RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: Vision Capital, LLC
    1525 South Broadway
    Los Angeles, CA 90015

[   ]   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

[   ]   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

[X]   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | January 26, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 |  |

[   ]   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Jon Corey /s/ | |
| Attorney for Plaintiff, Mattel, Inc. | January 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017  (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Exhibit 40
Page 747

AO-88

EXHIBIT _____1_____

PAGE _____2_____

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                              DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

**Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:**

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

---

Exhibit 40
Page 748

EXHIBIT _____ *1*

PAGE _____ *3*

## ATTACHMENT A

      1.     All documents referring or relating to agreements, contracts or transactions between MGA Entertainment, Inc. and Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

      2.     All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, and Lexington Financial, LLC, or any subsidiary or affiliate of Lexington Financial, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

      3.     All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, and Omni 808 Investors, LLC, or any subsidiary or affiliate of Omni 808 Investors, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

      4.     All documents containing financial information, including but not limited to historical and prospective financial performance, provided by MGA Entertainment, Inc. to Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, since January 1, 2007.

      5.     Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Vision Capital, LLC and (b) the dates of such person's affiliation with Vision Capital, LLC.

      6.     All documents referring or relating to the formation and governance of Vision Capital, LLC.

      7.     All documents detailing or setting forth the relationship between Vision Capital, LLC and OmniNet Capital, LLC, if any.

      8.     All documents detailing or setting forth the relationship between Vision Capital, LLC and Omni 808 Investors, LLC, if any.

      9.     All documents detailing or setting forth the relationship between Vision Capital, LLC and Lexington Financial, LLC, if any.

      10.     All documents detailing or setting forth the relationship between Vision Capital, LLC and MGA Entertainment, Inc., if any.

1

Exhibit 40
Page 749

EXHIBIT     1

PAGE     4

11.     All documents detailing or setting forth the relationship between Vision Capital, LLC and Isaac Larian or his family members, if any.

12.     All documents referring or relating to the source of funding or credit for Lexington Financial, LLC.

13.     All documents referring or relating to the source of funding or credit for Omni 808 Investors, LLC.

14.     All documents referring or relating to the source of funding or credit for MGA Entertainment, Inc. or any of its subsidiaries or affiliates.

15.     All documents referring or relating to all contributions, loans and any sources of funding for Vision Capital, LLC during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

16.     All documents showing detail of all loan facilities with an indication of creditor and relevant terms referring or relating to MGA Entertainment, Inc., OmniNet Capital, LLC, Omni 808 Investors, LLC, Lexington Financial, LLC or any subsidiary or affiliate of the foregoing, or to Isaac Larian or his family members.

17.     All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Vision Capital, LLC to Isaac Larian, his family members, or affiliates, or any other related party, including MGA Entertainment, Inc. .

18.     Any and all records that substantiate transfers of assets by Vision Capital, LLC to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

19.     All communications referring or relating to Omni 808 Investors, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian, Fred Mashian and/or Bratz.

20.     All documents referring or relating to the U.C.C. financing statement attached as Exhibit 1 and/or the security interest(s) allegedly reflected therein.

2

E          Exhibit 40         EXHIBIT _____ 1
P          Page 750           .GE _____ 5

# EXHIBIT 1

Exhibit 40
Page 751

EXHIBIT _____ /

PAGE _____ 6

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
FRED MASHIAN
3102747501

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 830
LOS ANGELES, CA 90069
USA

DOCUMENT NUMBER: 18230830002
FILING NUMBER: 00-7170419109
FILING DATE: 09/29/2008 14:33
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | | COUNTRY |
| 1525 SOUTH BROADWAY | LOS ANGELES | | CA | 90015 | | USA |
| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | | |
| | | LLC | DB | 4589295 | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 33-35 DAWS LANE | LONDON | | NW7 4SD | | GBR |

4. This FINANCING STATEMENT covers the following collateral:
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200823610026.

5. ALT DESIGNATION: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS   Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

Exhibit 40
Page 752

EXHIBIT ____1____
PAGE ____7____

Exhibit 40
Page 753

# EXHIBIT 2

Exhibit 40
Page 754



EXHIBIT 2
PAGE 8

Exhibit 40
Page 755

**EXHIBIT 41 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 42



1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10                           EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                                Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                  **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
17                                          MOTION TO COMPEL PRODUCTION
                                            OF DOCUMENTS BY ISAAC LARIAN;
18                                          DENYING REQUEST FOR
                                            SANCTIONS**
19

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
22

23

24                          I. INTRODUCTION

25        On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26   of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

27   an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28   Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

     Bryant v. Mattel, Inc.,                                              1
     CV-04-09049 SGL (RNBx)

                                            Exhibit 42
                                            Page 758

                    12-31

1  15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2  207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3  withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian

4  in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5  this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on

6  December 10, 2007. The matter was heard on December 14, 2007. Having considered the

7  motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8  part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

10  On June 13, 2007, Mattel propounded its First Set of Requests for Production of

11  Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007,

12  Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

13  Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

14  276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide

15  further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his

16  responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

17  76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

18  have not previously been produced." MGA's Opposition at pp. 1-2.

19  The remaining 32 Requests at issue can be grouped into ten categories: (1) personal

20  financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

21  telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

22  research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

23  arbitration; and (10) MGA Hong Kong and MGA Mexico.

24  //

25  _____

26  [1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim

27  statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

28

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 42
Page 760

3

1    he will do so. Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files." See Opposition at 2:2-3.

3        Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control." The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10    never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11    Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.

12    <u>Market Research for Products Not at Issue: Request Nos. 79-81</u>

13        In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14    Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports. In

15    his supplemental response, Larian agrees to produce the following documents, subject to his

16    general objections:

17       Larian will produce all documents within his possession, custody, or control that
18       relate to focus groups for "MGA contested products" and "Mattel contested
        products," as those terms are defined in Mattel's First Requests for Production
19       regarding Claims of Unfair Competition, if any, and that have not already been
        produced, that he discovers in the course of his reasonable search and diligent
20       inquiry, and to which no privilege or other protection applies, including without
        limitation, the attorney-client privilege or attorney's work product doctrine.

21

22    Mattel's Consolidated Separate Statement at pp. 20-21.

23        In Request No. 80, Mattel seeks all documents relating to any services or work performed

24    by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25    videotapes, summaries, notes and reports associated therewith. In his supplemental response,

26    Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27    the request and to which no privilege or other protection applies.

28

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his

2    supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3    Angel or Bryant that are responsive to the request and to which no privilege or other protection

4    applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6    information. More specifically, Mattel contends that Request No. 79 seeks documents that bear

7    directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8    and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that

9    MGA is guilty of copying Mattel's Barbie and My Scene products.

10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an

11    example, Larian points to Request No. 80, which requests all documents relating to any services

12    or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13    and defenses in the action or any of the products at issue. Larian similarly contends that Request

14    Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or
defense in this case.

15    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16    is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested

17    documents are relevant to several issues in the case, including the origin, conception and creation

18    of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's

19    supplemental response to Request No. 79 is unduly restrictive. Among other things, the

20    definitions of "contested MGA products" encompass only those products that provide a basis for

21    any claim by MGA against Mattel, and not claims by Mattel against MGA.

22    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23    80-81 is denied. These requests, as drafted, are clearly overbroad because they have no

24    reasonable limitations on subject matter or time. In particular, the requests are directed to L.A.

25    Focus and Alaska Momma without regard to whether the services or work the companies

26    provided has any relation to any product at issue.

27    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7        Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

11  credibility or bias.

12       As to Request No. 81, Mattel contends that the documents showing the relationship

13  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

14  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

15  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

16  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

17  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

18  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

19  the issues of bias and credibility. Mattel's supposition about the types of documents that might

20  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

21  not limited by either subject matter or time.

22       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

23  accordance with his supplemental responses.

24  <u>Bryant's Attorney and Niece: Request Nos. 113-115</u>

25       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 42
Page 763

6

1   Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies. Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6       Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12      Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

    Bryant may be relevant to the issues of credibility and bias.

16      Mattel contends that Request No. 115 seeks documents that are relevant to determine

17  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18  that had been installed and run on the hard drive. Bryant claims to have given his computer to his

19  niece. Mattel also contends that the requested documents are relevant to the issues of credibility

20  and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21  inadequate, because evidence of any communication between Larian and his niece, regardless of

22  subject matter, is significant.

23      Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24  because they lack any subject matter or time constraints. Further, Larian contends that the

25  requests constitute an improper fishing expedition and necessarily sweep in documents that are

26  not relevant to any claim or defense.

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

Exhibit 42
Page 764

7

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2    requests are overbroad because they are not focused on relevant subject matter and are untethered

3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7    responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8    accordance with his supplemental responses.

9    The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

10    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12   documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13   Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14   and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15   proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16   resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17   Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18   relating to Bratz that are responsive to the requests and to which no privilege or other protection

19   applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between

21   Larian and his brother are relevant because they involve, among other matters, the conception and

22   creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23   the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24   that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25   to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26   Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27   the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

1  example, profits from the sale and licensing of Bratz and other information that would impeach

2  Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the

3  requested documents may lead to evidence of the assessments or valuations of the net worth or

4  value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends

5  that settlement documents may contain information that bears on the merit of Farhad Larian's

6  claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to

7  motive, intent, bias and credibility.

8         Larian contends the instant requests are overbroad and unduly burdensome.  Further,

9  Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother.  Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17         Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations.  Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23         Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel.  For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

1    also within the scope of Larian's proposed limitation and would have to be produced. Documents

2    relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3    produced. Further, Larian's proposed limitation does not necessarily foreclose discovery

4    regarding the appraisal of MGA prepared by Mr. Dutcher. In particular, documents relating to

5    MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6    projections must be produced if such documents refer or relate to Bratz. Accordingly, Larian

7    shall produce documents responsive to Request Nos. 123-125 in accordance with his

8    supplemental responses.

9

10    <u>Telephone Records:  Request Nos. 178-181</u>

11         In Request No. 178, Mattel seeks all documents relating to, including without limitation

12    phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

    from January 1, 1998 through January 1, 2001. Larian objects to this request.

13         In Request No. 179, Mattel seeks all documents relating to, including without limitation

14    phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15    from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel. In his supplemental

16    responses, Larian agrees to produce documents responsive to Request No. 179. In response to

17    this motion, however, Larian contends that he should be permitted to produce documents

18    responsive to Request No. 179 in redacted form as discussed more fully below.

19         In Request No. 180, Mattel seeks all documents relating to, including without limitation

20    phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21    from April 1, 2004 through June 1, 2004. Larian objects to this request.

22         In Request No. 181, Mattel seeks all documents relating to, including without limitation

23    phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24    at any time. In his supplemental response, Larian agrees to produce all documents pertaining to

25    communications made prior to January 1, 2001 that are responsive to the request and to which no

26    privilege or other protection applies.

27    //

28

Mattel contends that Request No. 178 seeks documents relevant to show Larian's communications with Bryant and other Mattel employees while such employees may still have been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them to steal Mattel trade secrets.

Further, Mattel contends that the requested documents regarding telephone records are relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent they show communications with current and former Mattel employees, including Machado, Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to burden, Mattel contends that it would be more burdensome to attempt to produce the requested records in redacted form, and further, that the protective order in place is sufficient to protect Larian's privacy concerns.

Larian contends that the requests regarding telephone records are overbroad, completely unbounded as to subject matter, and necessarily sweep in private information that is completely irrelevant to any of the claims or defenses in the case. Larian also points out that the court previously considered similar requests served on Bryant and allowed production of redacted copies of telephone records as long as Bryant provided a signed verification that none of his redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically, Bryant was permitted to produce redacted phone records as long as he provided a "signed verification that none of the telephone records that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA." Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents by Bryant). Larian contends that he should be permitted to redact responsive documents consistent with the court's prior order. During the meet and confer, Larian offered to provide redacted records and a signed verification that none of the redacted information was

1  relevant to the case, but Mattel did not respond to the offer.

2      Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3  relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4  request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5  private information that is completely irrelevant to the case. Larian should not be subjected to

6  such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7  the request to the communications, claims, and defenses identified above.

8      In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9  for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns. More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

    or that are otherwise relevant to the case.

16      Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22  179.

23      Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24  is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25  to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27  without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5          In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

    damages.

14         Larian contends that the requests are overbroad and unduly burdensome, particularly

15  because several of the requests seek publicly available information.  Further, Larian points out

16  that the court has already considered and rejected as overbroad a nearly identical request served

17  on MGA that called for all documents relating to any communications by MGA with any news

18  organization regarding the contested MGA products or the contested Mattel products.  Larian

19  contends that the same reasoning applies to the instant requests.

20         Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21  199 is denied.  Although several of the requests encompass potentially relevant documents, the

22  requests are overbroad and encompass documents that have little to no relevance to the claims and

23  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26  or damages.

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                    Exhibit 42
                                                    Page 770

                                                                                            13

1    Furthermore, many of these overbroad requests seek publicly available information that is

2  readily accessible to Mattel for which Larian should not be burdened. To the extent the requested

3  documents and information are not publicly available, such documents and information are

4  marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5  In either case, the burden and expense of searching for and producing responsive documents are

6  unjustified.

7

8  Communications With Mattel Employees:  Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual

10  while the individual was employed by Mattel. Mattel contends that this request is directly

11  relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

12  burden of production.

13    Larian contends that the request is overbroad and unduly burdensome because it is

14  unrestricted as to time and subject matter. Larian also points out that the court has previously

15  found a similar request overbroad. Larian further contends that employees in the toy industry are

16  likely to maintain contacts with other toy manufacturers, and that a large corporation such as

17  Mattel is likely to have a high number of employees communicating with MGA or its officers,

18  which makes the request more unduly burdensome and unreasonable than it appears on its face.

19    Unlike other requests regarding communications, Request No. 198 is reasonably tailored

20  to the specific and numerous allegations in the case regarding alleged trade secret theft. Although

21  the request is not limited by subject matter, it is limited in other respects to seek relevant

22  documents without imposing an undue burden. The request is limited to communications

23  between Larian (and not MGA or persons acting on his behalf) and individuals employed at

24  Mattel. The request is also limited to only those communications that took place while the

25  individuals were employed at Mattel.

26    Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

27  allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in

28  1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit 42
Page 771

1   No. 198 that are limited to the time frame 1999 to 2005.

2

3   Personal Financial Data:  Request Nos. 207-209 and 269

4         In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5   or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6   208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7   income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8   and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9   documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10  1999 to the present.

11        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12  information showing the timing of payments to Bryant and others, which in turn is relevant to the

13  timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14  208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15  condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16  information regarding the sources of Larian's income to determine whether they are attributable

17  to the alleged misconduct and thus subject to disgorgement.

18        Larian contends that the requested personal financial information is not relevant to the

19  claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20  banks nor his gross income have any bearing upon either compensatory or punitive damages or

21  Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22  Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23        Larian also contends that all three of the requests overlap substantially with requests

24  Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25  burden posed by these requests to him.  Further, Larian contends that the court has previously

26  found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27  no reason why the same result should not apply here.

28        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

1    requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2    several issues in the case.  For example, the requested information is likely to lead to information

3    regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4    the creation of Bratz.  The requested information is also likely to show Larian's income and net

5    worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6    unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7    information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8           Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9    Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10   and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11   returns.

12   <u>Storage Devices:  Request Nos. 222 and 224</u>

13          In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14   to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15   delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16   request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17   electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18   hard drives and other storage devices.

19          Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20   ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21   drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22   states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23   create a routine right of direct access to a party's electronic information system."  <u>See</u>

24   Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25   an inspection of his electronic devices because there is no allegation that he improperly deleted

26   documents.

27          Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

1   With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2   authorize the routine production of a party's electronic devices. Mattel attempts to justify

3   Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4   Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5   laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6   months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7   destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8   these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9   has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

16  copies of Bratz-related video and audio content, but that is what the request seeks.

17          Request No. 222 is also duplicative because it requests information that is sought in

18  numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

19  requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

20  with the requests, Larian was required to search for documents in both hard-copy and electronic

21  form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22  devices.

23          Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24  and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices: Request Nos. 225, 227 and 228

        In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

1  receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2      Larian contends that the requests are improperly directed to him because he does not have

3  personal possession of Bryant's hard drive or storage devices, or other information about those

4  devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5  requests are overbroad and unduly burdensome for the reasons discussed above in connection

6  with Request Nos. 222 and 224.

7      Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8  denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10 <u>MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273</u>

11     In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12 Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13 produce documents sufficient to show the ownership of these entities.

14     Mattel contends that the requests seek information relevant to refute MGA Mexico's

15 personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16 attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17 these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18 inadequate because it would allow Larian to withhold contradictory information and conceal the

19 true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20 the ownership of these entities at times when different allegedly wrongful acts took place and to

21 determine if the ownership structure changed as a means of concealing assets or concealing the

22 payments of commercial bribes.

23     Larian contends that these requests should not be made to him, but to the entities

24 themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25 Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26 served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27 burdensome, and that at most, he should only have to produce a list of owners.

28

Exhibit 42
Page 775

18

1     Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source. Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4     Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

8

### IV. CONCLUSION

9     For the reasons set forth above, it is hereby ordered as follows:

10    1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

11  produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

12  146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged

    documents that are responsive to these Requests.

13    2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14    A.    produce, without limitation, all non-privileged documents that are

15  responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and

16  269; and

17    B.    produce, in accordance with his supplemental responses, non-privileged

18  documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19  209.

20    C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21  181 in redacted form as provided herein.

22    D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23  209, 222, 224, 225, 227, 228, 272 and 273.

24    3.    Larian shall produce all non-privileged documents that are required by this Order

25  that are in his possession, custody or control and that have not already been produced no later

26  than January 11, 2008.

27    4.    Larian shall produce a privilege log no later than January 15, 2008.

28

Exhibit 42
Page 776

19

5.  Mattel's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: December 31, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Exhibit 42
Page 777

20

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_____
Sandra Chan

Exhibit 42
Page 778

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 1/3/2008 at 10:45 AM PST and filed on 1/3/2008

**Case Name:** Carter Bryant v. Mattel Inc
**Case Number:** 2:04-cv-9049
**Filer:** Mattel Inc
**Document Number:** 1439

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions filed by Defendant Mattel Inc re: MOTION to Compel [1092] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Emil W Herich    eherich@kmwlaw.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

Exhibit 42
Page 779

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmv@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Larian Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/3/2008] [FileNumber=5143390-0]
[5a2187944fc1d22750aedb257eb3d8e53a9b8728f71d46135a28ece1a78d4d01e2732
dde016f334ddcc72b8e691e63a2605761dac19ba72309568688b0698f2c]]

Exhibit 42
Page 780

# Exhibit 43

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

       Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED**
**COPY**

_____
AND CONSOLIDATED ACTIONS.
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479

Exhibit 43
Page 781



877.955.3855
www.sarnoffcourtreporters.com

IRVINE ▪ LOS ANGELES ▪ SAN FRANCISCO ▪ LAS VEGAS ▪ SAN DIEGO



SARNOFF
*Court Reporters and*
*Legal Technologies*

**TRANSCRIPT OF PROCEEDINGS**                           03/04/09

```
 1    transferee entities are single-purpose entities --

 2              MR. RUSSELL:  Yeah.  Let me do the best I can,

 3    though maybe something Mr. Gordinier and Mr. Valle can do

 4    better.  With respect to the transferee entities, the

 5    IGWT-type entities that purchased Bratz overstock

 6    inventory, I believe those are single-purpose entities.

 7    That wasn't what I was referring to, but I believe that is

 8    true.  With respect to certain of the Omni entities,

 9    Omni 808, in particular, I believe they are also single-

10    purpose entities, but there are several entities therein,

11    and the specifics of that, I'll let Mr. Gordinier get into

12    if you feel it's really important.  But for purposes of

13    the main entity, Omni 808, Omni 808 is a single-purpose

14    entity that purchased the Wachovia debt.

15              MR. O'BRIEN:  But Lexington, or some of these

16    others, you don't believe are --

17              MR. RUSSELL:  I don't believe are single-purpose

18    entities.  Lexington, as I understand it, was formed in

19    2006, and so clearly, since the transaction we're talking

20    about here was the purchase of Wachovia debt that wasn't

21    even extended until after this, I don't believe that this

22    could have been a single-purpose entity, but I'll allow

23    others to speak to that issue.

24              MR. O'BRIEN:  That's fine.  I apologize for

25    interrupting.                        EXHIBIT  43
                                           Exhibit 43
                                           Page 782
```

40

```
 1             MR. RUSSELL:  That's okay.

 2             So going back to what I'll call the Omni

 3   entities, the entities that purchased the Wachovia debt.

 4   I just don't see the argument here, how that's relevant

 5   even under any theory that Mr. Zeller articulated, and,

 6   you know, when you put that against the burden -- and I do

 7   think if we're going to -- while it is true there is not

 8   the same standards of burden as in, say, New York, I think

 9   it is fair to look at the burden that is imposed on third

10   parties, particularly -- if the argument is we want to

11   know the impact on MGA, whether it's a cost to MGA, they

12   can get that from MGA.  They did get some of this

13   information from MGA during phase 1.  They were allowed to

14   take discovery on the Wachovia issues.  If they're

15   dissatisfied with what they got, they know how to file

16   motions to compel on further discovery as to MGA.  But

17   let's not burden Omni since -- whether or not Omni is a

18   viable entity or where Omni got its money has nothing to

19   do with the merits, even under their theory.  What's

20   happening here is they've got a nice story they want to

21   tell, mail drops, the Isle of Nevis, that sounds great,

22   it's irrelevant.  Taking everything they say as true, and

23   we dispute it, it's still irrelevant.  It has nothing to

24   do with it.  Who cares -- Mr. Zeller told you, it doesn't

25   matter who the holder of the debt is.  I couldn't agree
```

Exhibit 43
Page 783

**TRANSCRIPT OF PROCEEDINGS**                                    03/04/09

```
 1   more.  So on that piece, I just don't see, under any
 2   theory here articulated, and our papers speak volumes to
 3   this, how there can be any argument that the Omni-type
 4   entities should be subjected to this discovery.
 5            If there's any dispute, let's wait until after
 6   Mr. Durkin finishes up his analysis, and get it from MGA.
 7            And I'll note, parenthetically, that a lot of the
 8   allegations that have been laid against MGA have now been,
 9   in my view, cleared because Mr. Durkin has given an
10   interim report, having looked at all the domestic books
11   and records for MGA, and has determined that there was no
12   basis for a receiver based on these very allegations as to
13   Omni and as to IGWT.  So I think we can all breathe a
14   little easier.  And this is what our intention was in
15   allowing Mr. Durkin to be present in the first place.  So
16   a lot of what they're telling you has no merit.  And now
17   we can rely on Mr. Durkin and Mr. -- and Judge Larson's
18   interim rulings to this effect.
19            So with respect to Omni, I just don't see any
20   basis whatsoever for them to get the discovery.
21            With respect to the transferee entities, I think
22   the same analysis applies, and that is to say, in the
23   first instance, there's absolutely no nexus to the claims
24   that are plead in the complaint.  And whatever the size
25   and scope of the sales are -- one thing Mr. Zeller didn't
```

Exhibit 43
Page 784

42

TRANSCRIPT OF PROCEEDINGS                    03/04/09

```
 1          MR. O'BRIEN:  Correct.

 2          MR. RUSSELL:  I believe the transactions all

 3   occurred prior to that date, but I don't -- I'd have to go

 4   back and look for you.  I think Mr. Valle might speak to

 5   that issue.  I don't know.

 6          MR. O'BRIEN:  Okay.  Were some of these -- was

 7   all of the product that was sold to the IGWT entities

 8   Bratz related that would have been covered by these

 9   orders?  My understanding is there are some Bratz products

10   that are covered by the orders, there are other Bratz

11   products that are not covered by the orders.  Was it a

12   mix --

13          MR. RUSSELL:  My understanding is that there were

14   some non-Bratz-type products included in this inventory,

15   you know, like Little Tykes, or something like that,

16   completely non-Bratz.  But what we're talking here, and

17   what I think they care about, are Bratz-related products,

18   would those fall within the scope of the Judge's

19   December 3rd orders if not stayed?  I think the answer is

20   yes, they would.  But there was no prohibition, even under

21   his Honor's orders, from selling those products.  There's

22   no question that they were appropriate transactions as of

23   that time.  There may be questions in their mind or

24   others, I don't know, depending on the timing, as to

25   whether they're entitled to those proceeds or to trace
```

Exhibit 43
Page 785

PAGE                    44

**TRANSCRIPT OF PROCEEDINGS** 03/04/09

1  those proceeds.  I don't think so.  I think the answer is

2  no, there's no prohibition from MGA selling Bratz products

3  even today, or transferring or selling overstock.  Those

4  are all permitted until such time as the orders being

5  final.

6      But, I mean, again, so -- just break it down to

7  two component parts, as to Omni, since we're talking about

8  who the holder of the debt is, with no nexus whatever to

9  the claim, I don't see the relevance, and it doesn't seem

10  to fall within any phase 2 argument that Mr. Zeller made.

11      And with respect to the transferee entities,

12  again, it doesn't have any nexus to the claims, it's

13  massively removed in time, and they can get all that

14  discovery from MGA.  Again, I just don't see the basis for

15  that.  I think their motion to compel should be denied.

16      MR. O'BRIEN:  Thank you.  Mr. Gordinier?

17      MR. GORDINIER:  Yeah.  I won't go anywhere near

18  20 minutes, unless your questions go over it.

19      I represent the Omni entities, the lender

20  entities.

21      Let me go right to the substance of this, because

22  I think it's -- I think it's important that you, at this

23  point, get a handle on this process and this motion as

24  presented.  The motion to compel needs to be denied for

25  any number of substantive reasons.  Let me start with

Exhibit 43
Page 786

45

1    where Mr. Zeller was.  He's talking about the relevance

2    with respect to MGA's valuation, Mr. Larian's net worth.

3    Assuming for the sake of argument that that's a legitimate

4    phase 2 discovery subject at this point, and I'm not

5    conceding it, but assume for the sake of argument, there

6    isn't a single one, and I'd ask you to look, not a single

7    request to any of my clients that's narrowly tailored to

8    or even references Mr. Larian's net worth or MGA's value.

9    It's absolutely true that under these circumstances the

10   debt holder doesn't have anything to do with this.  If

11   they want to make a claim, and you picked right up on it,

12   if they want to make a claim somehow against MGA, the

13   place to go is to get that discovery from MGA.

14           I do disagree with Mr. Zeller, I'm new to this

15   action, but I have read at least one of the orders that

16   Judge Infante issued when he quashed the subpoenas, and he

17   did so correctly, and it applies directly here.  This

18   is -- this is -- apart from being horrifically overbroad

19   and not tailored to the discovery they say they want, it's

20   unreasonably duplicative and cumulative of information

21   they can, have already asked for from MGA.  I don't know

22   whether they've gotten everything they say they're

23   entitled to.  That's for you to decide.  But there isn't

24   anything here that relates to phase 2 that's properly

25   granted as part of this motion.

Exhibit 43
Page 787

I NUL

46

1   compel is improper and should be denied for both serious

2   substantive and procedural reasons.  If we're going to

3   have these rules, they have a purpose, they have to be

4   followed.  And the Court's very order, the Court's

5   standing order says if this isn't done, it won't be

6   considered.  They now are walking away from these other

7   orders and they want to rely on the discovery stipulation

8   and order which, of course, I had no knowledge of when we

9   were having this discussion.  As you're well aware of,

10  they didn't even comply with that.  Perhaps if they had,

11  and set out, as they're required to do in writing, what it

12  is they want, why they want it, let's talk about it, let's

13  sit down and discuss it, we could, perhaps, have narrowed

14  it.  In fact, both I and my colleague told Mr. Corey we

15  were pretty sure we could satisfy himself with respect to

16  the bona fides of the transaction.  That was rejected.

17          MR. O'BRIEN:  Let me ask you this question.

18  You've said the discovery's overbroad.  What narrow

19  request could Mattel make that you believe would be proper

20  under the circumstances here?  In other words, what kind

21  of request do you think would be, as a third party?  I

22  mean, I understand you don't want to respond to anything,

23  it's a burden.  But assuming there's always a burden in

24  responding to discovery, what narrow request, based on

25  your understanding of the issues in phase 2, would be

Exhibit 43
Page 788

1    proper for your -- that you wouldn't come in here and file

2    a motion to quash?

3          MR. GORDINIER:  What documents do we have that

4    show that either Mr. Larian or MGA paid money into this to

5    purchase this debt?  I can tell you there are none.  This

6    is a ready, fire, aim situation.  The allegations that

7    were made and were made publicly are unconscionable and

8    can't be undone.

9          MR. O'BRIEN:  What other areas?  For example,

10   would the payment history with respect to the debt from

11   MGA to 808, assuming there is one, I don't know if this is

12   a balloon payment or that sort of thing --

13         MR. GORDINIER:  I assume that's in MGA's

14   financial statements, but -- I mean, I assume that they've

15   made payments.  I don't know the answer to that, that's

16   reflected on their financial statements, which I'm

17   assuming have been exchanged, but I don't know that.

18         MR. O'BRIEN:  Mr. Russell said that there was

19   discovery that was taken of Wachovia in phase 1.  I was

20   not involved in the case.  I don't know what discovery was

21   taken of Wachovia.  But, presumably -- but it sounds like,

22   and I'll let Mr. Zeller answer this and Mr. Russell

23   address it as well, but if there was discovery in phase 1

24   that was proper as to Wachovia in establishing the debt

25   and looking at the payment terms, and all that sort of

51

TRANSCRIPT OF PROCEEDINGS                     03/04/09

1    thing, would that same sort of discovery be proper

2    vis-a-vis 808 --

3          MR. GORDINIER:  We absolutely offered -- we

4    offered, without knowing any of this, to give them the

5    deal documents.  Absolutely.  I don't know that it's

6    proper.  I think it's overbroad and I think it's

7    premature, but I'll just tell you, we offered to give them

8    the deal documents.  There's no secret there.  We did buy

9    the debt at a discount.  You've read the transcript.  I

10   told Judge Larson my client wants to make money at this,

11   and so he made a business decision that -- you know,

12   Wachovia has its own reasons for doing what it's doing

13   that we all can kind of guess -- but I don't know.  My

14   client had his own reasons for doing what he's doing.  The

15   only thing that seems to relate to all this is do they

16   have -- are there any documents that show the disgorgement

17   thing, or whatever he's trying to argue, and I'm not

18   familiar with the phase 2 -- but I have no problem

19   conceptually giving them the deal documents.  None at all.

20   But that doesn't entitle them to look at all records that

21   reflect all my nonparty entities, all documents detailing

22   or setting forth.  Read through them; they're overbroad

23   and they're improper.

24         MR. O'BRIEN:  What about performance, the

25   performance of the loan.

52

Exhibit 43
Page 790

1   specific when it's talking about the theft of property and

2   trade secret information.

3          And just so we're clear, when I make the timing

4   point, it's not as if Mattel filed this counterclaim with

5   the RICO allegations six years ago.  They filed it in

6   2007.  They asked for leave in November of 2006, I think

7   it was formally filed with the court in 2007.  They

8   certainly had plenty of opportunity and notice at that

9   point to make these allegations about shifting of funds

10  and all these kinds of things if they wanted to craft

11  their claim that way.  They didn't.  They chose to do what

12  they did and they should be held to the contours of their

13  claim.

14         And as the Asdourian case, A-s-d-o-u-r-i-a-n,

15  makes clear, this is their case, they've got to show an

16  interrelationship between the acts, the existence of a

17  pattern that's established by proof of temporal proximity

18  or common goals.

19         Their entire RICO claim is, as he says, the theft

20  of the ideas with Mr. Bratz (sic), allegedly, and then the

21  stealing of the machinery, if you will, to sell Bratz.

22  And that is really focused on MGA Mexico and foreign

23  operations.  That's what they're talking about.  It has

24  nothing to do with the transfer in or out of funds from

25  MGA.  And I didn't hear him respond, and I think it's

Exhibit 43
Page 791

83

1    clear that he can't respond, on the Omni point.  How is it

2    relevant who purchased the Wachovia debt?  He didn't tell

3    you, and he had a chance to, that the Wachovia debt's not

4    valid.  It is.  So why does it matter, whether he wants to

5    walk from what he said or not, why does it matter who

6    purchased Wachovia's debt?  He can get everything he

7    needs, without any burden on a third party, from MGA.  If

8    it is, in fact, relevant, I don't contend that it is, if

9    it is, in fact, relevant that MGA was paying on that note,

10   he can get that from MGA.  There's no question about that.

11           I will point out when he says that the fact that

12   Wachovia was subpoenaed proves relevance in phase 2; far

13   from it.  What happened was -- and the reason why they

14   weren't -- prevented from getting the discovery on

15   Wachovia until that time was they hadn't shown any right

16   to it.  It's not as if -- this is even more true in

17   phase 2 than it was in phase 1.  In phase 1 there were

18   apportionment theories and they had punitive damages that

19   were allowed to go to the jury.  It was only in the middle

20   of trial that the judge said, okay, I'm going to let you

21   have punitive damage-type discovery.  Very similar to how

22   it'd work in State court under Civil Code 3295.  And I

23   would submit the same should apply here.  We don't get a

24   general relevance standard for financial condition of a

25   company at the beginning of the process.  It's at the end.

                                        Exhibit 43
                                        Page 792

```
 1   While 3295 doesn't apply in Federal court, the same
 2   rationale can apply, and you have discretion, and I would
 3   urge you to apply that discretion to limit them now.  If,
 4   in fact, they can show that their claims, as opposed to
 5   their damages theories, their claims have merits to the
 6   point that they can survive motions, then we can talk
 7   about the intrusive financial discovery that they want.
 8   But they cannot tie, and Mr. Zeller has failed, in my
 9   opinion, to tie the Omni, in particular, discovery to any
10   claims.  There's no nexus temporally or even reading the
11   pleadings as broadly as you would like to the claims.  And
12   that ends the analysis.  They are not entitled to that
13   discovery from Omni because it doesn't relate to any
14   claims.  Financial condition is not a basis for financial
15   -- for discovery at this stage of the case.  And I think
16   it's just as simple as that.
17          With respect to IGWT, again, your Honor -- I've
18   done it now, too -- Mr. O' Brien -- 1 for 1.  It was
19   inevitable.
20          MR. O'BRIEN:  I'm getting promoted.
21          MR. RUSSELL:  You've got my vote.  Maybe I should
22   hold it --
23          MR. GORDINIER:  We'll have to get him a robe.
24          MR. RUSSELL:  That's right.
25          Again, with respect to IGWT, I think the same
```

Exhibit 43
Page 793

TRANSCRIPT OF PROCEEDINGS                    03/04/09

```
 1   analysis can be said, that is to say, while it is true
 2   that they're not required in the first instance to go to
 3   MGA, I think we should be sending a message here that that
 4   is what they should do.  I mean, we should be preventing
 5   burden on third parties, unless there's some reason.
 6           I didn't hear anything from Mr. Zeller that
 7   suggests why it is they couldn't go to MGA in the first
 8   instance.  They can get the purchase information.  Their
 9   own experts are going to opine on fair market value, and
10   MGA (sic) clearly has the fair market value of products
11   for Bratz items in its possession.  There's no need to get
12   that from MGA.
13           What IGWT sold it for might be of interest, but
14   it's still burdensome because that same information can be
15   gotten directly from MGA.  And given there's, again, no
16   nexus to the claims, all we're hearing about is it's
17   relevant to financial condition, under the same standard,
18   I would submit there's no basis for that discovery as to
19   IGWT.  And even if there were, I think Mr. Valle's point
20   is very germane, let's wait and see what Mr. Durkin comes
21   up with.  You know, Mr. Zeller told you that Judge Larson
22   didn't say to rely upon the report.  I submit he said the
23   opposite.  He said let's see if there's anything to these
24   allegations as to IGWT and Omni, and if there is,
25   Mr. Zeller was the one who said, then we'd like to look
```

EXHIBIT
Exhibit 43
Page 794

```
 1   behind that and take discovery.  That makes sense to me,

 2   and I think certainly for third parties that makes a lot

 3   of sense.  If they want to come as to MGA right now, we

 4   can come back and talk about that, but for these third

 5   parties -- and we have heard, by the way, undisputed

 6   evidence of burden as to IGWT.  Mr. Zeller told you there

 7   wasn't any.  In fact, we have declarations of uncontested

 8   evidence of burden.  Let's wait, let's narrow discovery,

 9   let's take control of this in a meaningful way.  I think

10   this is just either premature or, in the first instance,

11   just not relevant.

12           MR. O'BRIEN:  All right.  Thank you.  I

13   understand the point with respect to Mr Durkin, and you

14   may want to respond, but I'm not going to -- we're not

15   going to stay any discovery or anything.  I don't have --

16   I can only deal with the discovery issues.  I'm not going

17   to deal with what the forensic accountant's doing and what

18   he may or may not come up with.  That may lead to

19   different discovery.  That's kind of outside of my

20   purview.  That's more of Judge Larson's purview in dealing

21   with what Mr. Durkin does.  So I'm not going to hold off

22   on any discovery issues.  It may be they are or are not

23   entitled to the discovery they're seeking here, but I'm

24   not going to make the ruling based on the Durkin report

25   coming out because I don't know when that is or what's
```

Exhibit 43
Page 795

```
 1   involved.  But I understand the point you're making.
 2            MR. RUSSELL:  Just so we're clear, I'm not
 3   suggesting to you that that would be a basis to deny the
 4   discovery.  I'm simply saying I don't believe they have
 5   any right to it, in the first instance, and even if
 6   there's a question in your mind, if it's a questionable
 7   relevance, they should go to MGA first and the receiver's
 8   report may give a basis to tailor the discovery, which is
 9   a complaint Mr. Zeller makes, and maybe that has validity,
10   why not allow them to tailor the discovery once they know
11   what the issues are from MGA.
12            I just don't think it's fair to fire off
13   extremely broad and burdensome discovery requests to these
14   third parties.  And as to Omni, they are truly a third
15   party.  There's no evidence that they are not independent.
16   And Mr. Gordinier has spoken to that issue repeatedly, and
17   Mr. Zeller keeps saying the contrary, but there's no
18   evidence that they are affiliated parties.  So they are
19   entitled to the benefits of being third parties and being
20   protected from that burden in the first instance.
21            MR. O'BRIEN:  Thank you.
22            MR. RUSSELL:  Thank you.
23            Cheryl, are you doing okay with your fingers?
24            THE REPORTER:  I'd like a break, if you wouldn't
25   mind.
```

Exhibit 43
Page 796

88

```
 1            MR. O'BRIEN:  Let me make you an offer here.

 2            (Discussion off the record.)

 3            MR. O'BRIEN:  Thank you.  I appreciate your hard

 4    work this morning.  I should have probably given you a

 5    break at some point.  I apologize for not doing so.

 6            Let me wrap up.  I'm going to take these motions

 7    under submission, and will issue a ruling probably no

 8    later than the middle of next week.  I'll try and get it

 9    to you sooner.  Unfortunately I have to fly back to the

10    snow tomorrow so -- but I will try and work on it Sunday

11    and Monday and get it out to you quickly.

12            I want to address the meet and confer issue.  I

13    don't want to get involved in the parties' meet and

14    confers.  I know some magistrates and some discovery

15    referees -- I'm in a case now where the retired judge

16    wants to be on for supervised meet and confers and to get

17    involved in those sorts of things.  I don't think that's

18    appropriate here.  There are serious legal issues that

19    ought to be teed up, and I'm not suggesting that we overdo

20    it with the motion practice, because it costs your clients

21    time and money, but I don't think supervised meet and

22    confers are necessary here.  And in the meet-and-confer

23    process, I'm not suggesting that you give up positions

24    that you think are important to your client so that you

25    can prove your case or defend your case.  But what I will
```

Exhibit 43
Page 797

89

1          I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11          Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15          I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:  MAR 0 9 2009

22

23                    *Cheryl R. Kamalski*
                   CHERYL R. KAMALSKI

24                   CSR No. 7113

25

Exhibit 43
Page 798

# Exhibit 44

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                           EASTERN DIVISION

11

12   CARTER BRYANT, an individual,     Case No. CV 04-09049 SGL (RNBx)

13             Plaintiff,
                                        Consolidated with
14        v.                            Case No. CV 04-09059
                                        Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                       **PHASE 2 DISCOVERY MATTER**
16
               Defendant.               **AMENDED[1] ORDER NO. 11,**
17                                       **REGARDING:**

18                                       **(1) MOTION OF MATTEL, INC.
                                         TO COMPEL RESPONSES TO**
19                                       **INTERROGATORIES AND
                                         PRODUCTION OF DOCUMENTS**
                                         **BY MGA ENTERTAINMENT, INC.**
20                                       **AND ISAAC LARIAN; and**

21                                       **(2) MOTION OF MATTEL, INC.
                                         TO COMPEL THE DEPOSITIONS**
22   CONSOLIDATED WITH                   **OF PABLO VARGAS AND
     MATTEL, INC. v. BRYANT and          MARIANA TRUEBA**
23   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
24

25

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28   requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
     days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                        AMENDED ORDER NO. 11
                                            [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 799

1   This Order sets forth the Discovery Master's ruling on two motions filed by

2   Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3   production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4   ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5   to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6   (the "Deposition Motion") (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8   March 19, 2009.  All interested parties were represented by counsel and afforded

9   the opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

12  **I.    MATTEL'S WRITTEN DISCOVERY MOTION**

13       In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[2] and provide answers to 12

15  different interrogatories.  (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[3]   (*Id.*, pp. 41 – 43 and 49 – 102).

19       **A.    Document Requests**

20            **1.    Document Requests Propounded On MGA**

21       Document Request Nos. 4 through 37 seek financial information from MGA

---

[2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

[3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 800

1    related to sales, revenues, costs, profits, customer returns, customer rebates and

2    customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3    sufficient to identify customers who purchased any Bratz Product from MGA or its

4    licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5        Document Request Nos. 43, 44 and 46 similarly seek financial information

6    from MGA related to the Bratz product line:

7        • Document Request No. 43 (erroneously numbered in Mattel's Separate

8           Statement as request number 42): "All sales, profit and cash flow

9           projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10          BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

11       • Document Request No. 44 (erroneously numbered in Mattel's Separate

12          Statement as request number 43): "All DOCUMENTS that REFER

13          OR RELATE TO the value of the Bratz brand." (Id.).

14       • Document Request No. 46 (erroneously numbered in Mattel's Separate

15          Statement as request number 45): "All DOCUMENTS that evidence,

16          reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17          fashion doll market, including, without limitation, the extent to which

18          Bratz has been or is gaining or losing market share in the fashion doll

19          market." (Id., p. 14).

20       Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21    information from MGA as a whole, not just financial data limited to the Bratz Dolls

22    or Bratz Product:

23       • Document Request No. 40: "All DOCUMENTS that describe YOUR

24    _____

[4] Mattel defines the term "Bratz Product" as follows:

25           'Bratz Product' means any product whether two-dimensional or three-dimensional,
             and whether in tangible, digital or electronic or other form: (i) that is or has ever

26           been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
             line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES

27           TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
             packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists

28           of or REFERS OR RELATES TO BRATZ.
      (Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 801

1                 cost allocation procedures." (*Id.*, p. 13).

2            •   Document Request No. 41: "YOUR general ledgers from January 1,

3                 1995 through the present." (*Id.*).

4            •   Document Request No. 45 (erroneously numbered in Mattel's Separate

5                 Statement as request number 44): "DOCUMENTS sufficient to

6                 calculate YOUR net worth on a yearly basis for each year from 1999

7                 to the present." (*Id.*).

8               **2.**      **Document Requests Propounded On Larian**

9       The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12            •   Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13                 each account with any bank or financial institution that YOU have or

14                 have had, or that YOU have or have had any legal or beneficial interest

15                 in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16            •   Document Request No. 208: "Documents sufficient to establish

17                 YOUR gross income, and the sources of that gross income, for the

18                 years 1999 through the present, inclusive." (*Id.*, p. 52).

19            •   Document Request No. 269: "DOCUMENTS sufficient to calculate

20                 YOUR net worth on a yearly basis for each year from 1999 to the

21                 present." (*Id.*, p. 63).

22               **3.**      **Phase 1 Rulings**

23       This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue. Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -               AMENDED ORDER NO. 11
                               [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 802

1   the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2        Because the prior discovery master compelled MGA to produce information

3   responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4   Larian to produce information responsive to Document Request Nos. 207, 208 and

5   269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6   Civil Procedure 26 to supplement their prior productions, and (2) that the

7   information the MGA Parties "are withholding is relevant to the damages Mattel

8   seeks," (Written Discovery Motion, pp. 8 – 9).

9          **4.**    **Objections Of MGA**

10        In their Opposition, the MGA Parties rely on two grounds for refusing to

11   supplement their prior document productions regarding Document Request Nos. 4 –

12   37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13   failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14   Parties argue that the requested information is not relevant to the claims and

15   defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16          **a.**    **Purported Failure To Meet And Confer**

17        Because it could dispose of the outstanding discovery issues related to the

18   document requests that are the subject of the present dispute, the Discovery Master

19   first addresses the MGA Parties' argument that Mattel failed to meet and confer

20   properly prior to filing its Written Discovery Motion.

21        The MGA Parties argue that Mattel's motion to compel should be denied

22   because Mattel failed to comply with the meet and confer requirements of Local

23   Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24   however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25   discovery disputes in this case.  The applicable meet and confer procedures are set

26   forth in the Court's order appointing a discovery master dated December 6, 2006

27   ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28   Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 803

1   requires that, before filing a motion to compel, the moving party must meet and

2   confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3        Because Rule 37 and the Discovery Master Order govern the meet and confer

4   process in this case, the Discovery Master construes the MGA Parties' meet and

5   confer argument in light of the good faith requirement embedded in Rule 37. The

6   MGA Parties claim that Mattel did not meet and confer in good faith because its

7   counsel sent them "a meet and confer letter inviting [them] to further meet and

8   confer on February 11, 2009" and then filed a motion to compel one "day before

9   the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13   However, the record available to the Discovery Master demonstrates that Mattel

14   made several prior attempts to meet and confer with the MGA Parties, including

15   engaging in the following:

16        • On January 6, 2009, Mattel's counsel sent a letter demanding that the

17          MGA Parties supplement their production concerning the document

18          requests by February 1, 2009, (Watson Decl., Ex. 17);

19        • Counsel for the MGA Parties never responded to Mattel's January 6,

20          2009 letter, (Written Discovery Motion, p. 6);

21        • Counsel for Mattel sent counsel for the MGA Parties a second copy of

22          the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23        • Counsel for Mattel and counsel for the MGA Parties then spoke on

24          February 6, 2009, and were supposed to discuss, among other things,

25          the document requests at issue, but counsel for the MGA Parties was

26          not prepared to discuss the requests at the appointed time, (Watson

27          Decl., ¶ 22); and

28        • Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 804

1          9, 2009 to discuss the document requests but counsel for the MGA

2          Parties was still not prepared to discuss the issues, (*Id.*).

3      In light of foregoing facts (which are not disputed by the MGA Parties), it is

4  clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5  plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6  for an order compelling . . . discovery . . . [if] the movant has in good faith

7  conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8  37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9  the MGA Parties on at least two occasions (but was unable to do so because the

10  MGA Parties were not prepared to meet and confer during either of the agreed upon

11  times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12                    **b.      Relevance Of The Document Requests To Phase 2**

13      The MGA Parties also oppose Mattel's demand for a supplemental

14  production on the ground that none of the document requests as issue seek

15  information reasonably calculated to lead to the discovery of admissible evidence.

16  (Opposition, pp. 5 – 7).

17                    **(1)     Document Request Nos. 207, 208 And 269**

18      With respect to the three document requests directed to Larian (i.e.,

19  Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20  not relevant to any Phase 2 claims.  (Opposition, p. 6).

21      Each of the requests seeks information related to Larian's financial condition,

22  Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23  Answer and Counterclaim ("SAAC") are true.  For example, Document Request

24

---

25  [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the
requested information following the filing of the Written Discovery Motion.  It is, therefore, unclear what could have
been accomplished by an additional meet and confer on these issues.  Moreover, Mattel's counsel stated at oral

26  argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they

27  still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.
68:7-9).  Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on

28  February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery
procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2   No. 269) and gross income (Request No. 208). Such information relates to Phase 2

3   damages issues, including, among other things, damages sought against Larian in

4   connection with Mattel's unfair competition cause of action as well as the

5   calculation of Larian's net worth for purposes of litigating the propriety of any

6   "exemplary damages under Cal. Civ. Code § 3294."[6] (SAAC, ¶¶ 163 – 166). It is

7   therefore discoverable.

8         In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9   Mattel's employees for the express purpose of misappropriating Mattel's

10  confidential and proprietary information, and that the MGA Parties promised such

11  individuals increased salaries at MGA. (*See, e.g.,* SAAC, ¶¶ 69 and 77). Mattel's

12  request for documents sufficient to identify Larian's bank accounts (i.e., Request

13  No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14  evidence regarding the source of any payments that may have been made by Larian

15  to former Mattel employees.[7]

16                    **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                              **46**

18        Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19  37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20  financial information "related to Bratz dolls, which was a Phase 1 issue,"

21  (Opposition, p. 5). Specifically, the MGA parties argue that:

22              [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

24  [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he

25  concludes that Larian should not be required to provide updated information concerning his net worth and gross income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase 2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question

26  deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by

27  the verdict rendered in Phase 1 or recent economic conditions.

    [7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to

28  produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 7 -         AMENDED ORDER NO. 11
                                                        [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 806

1  related financial information in order to establish its Phase

2  2 damages ignores the jury's Phase 1 damages award . . . .

3  Mattel sought disgorgement of all Bratz profits during

4  Phase 1 and the jury made its award.  Mattel may not

5  relitigate this issue in Phase 2.

6  (*Id.*, p. 6).

7  However, Document Request Nos. 40, 41 and 45[8] make no mention of

8  financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9  (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10  (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11  through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12  net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13  Therefore, MGA's argument does not apply to these document requests.

14  Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15  Separate Statement as request number 44) are further reasonably calculated to lead

16  to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17  the touchstone for determining whether a particular discovery request is reasonably

18  calculated to lead to the discovery of admissible evidence in this case is whether the

19  request bears some relation to the issues to be tried in Phase 2.  That standard is met

20  here, since MGA's general ledgers, net worth, and cost allocation procedures all

21  bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22  damages.

23  As for the remainder of the document requests directed to MGA (i.e.,

24  Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

---

[8]  Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

[9]  Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

[10]  Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

[11]  Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 807

1   financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6        As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10        Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19   163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25        Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   ────────────

     [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (*See*
     Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or

28   correct its disclosure or response . . . in a timely manner"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 808

1    Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2    of the purported racketeering activities was the "altering [of] numerous original

3    Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4    sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5    calculated to lead to the discovery of admissible evidence in Phase 2.

6        The Discovery Master cannot predict whether the Court will ultimately

7    construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8    misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9    presenting any evidence that it has been damaged by such misconduct at the Phase

10   2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11   Given that the discovery here need only appear reasonably calculated to lead to the

12   discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13   Master finds that the aforementioned document requests are sufficiently related to

14   Mattel's Phase 2 claims to be discoverable at this time.

15       **5.    Conclusion**

16       For all of the foregoing reasons, Mattel's motion to compel responses to

17   Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18   Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19   **B.    Interrogatories Propounded On MGA And Larian**

20       The second part of Mattel's Written Discovery Motion addresses various

21   interrogatories propounded on the MGA Parties.

22       **1.    Interrogatory No. 45 Propounded On MGA**

23   Interrogatory No. 45 asks MGA[13] to:

24       IDENTIFY each BRATZ PRODUCT that has been

25       SOLD by [MGA] or [its] licensees and, for each such

26

27   _____
     [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
28   Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
     INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -                          AMENDED ORDER NO. 11
                               [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 809

1    BRATZ PRODUCT, state . . . (a) the number of units of
2    each such BRATZ PRODUCT SOLD by [MGA] or [its]
3    licensees, (b) the gross and net revenue received by
4    [MGA] from such SALES of each such BRATZ
5    PRODUCT, (c) all costs [MGA] incurred in connection
6    with each such BRATZ PRODUCT, including but not
7    limited to [MGA's] costs of goods sold, and (d) [MGA's]
8    gross and net profits from each such BRATZ PRODUCT.
9  (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*
10  Written Discovery Motion, p. 9).

11            **a.    Phase 1 Rulings**

12        As with the document requests discussed above, Mattel concedes that "MGA
13  identified and produced documents responsive to [Interrogatory No. 45] in
14  December 2007, and later supplemented th[at] production mid-trial . . ." (Written
15  Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to
16  supplement its response" without justification. (*Id.*)

17            **b.    Objections Of MGA**

18        In its Opposition, MGA argues that it does not have to provide the
19  information requested by Interrogatory No. 45 for two reasons. First, it claims that,
20  like the document requests propounded on MGA, "Mattel's entitlement to gross and
21  net profits from sales of Bratz products was an issue adjudicated in Phase 1, and
22  Mattel fails to explain how this discovery is relevant to or proper in Phase 2."
23  (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually
24  identical to the documents sought by Document Request Nos. 21 (requesting
25  "DOCUMENTS sufficient to show the number of units of each BRATZ
26  PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS
27  sufficient to show the revenue received by [MGA] from the sale of each BRATZ
28  PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 810

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above. Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[14]

10      MGA also argues that it should not be required to provide the information

11  requested by Interrogatory No. 45 because it "has already provided information that

12  is current through the second fiscal quarter of 2008" and it would be unduly

13  burdensome to gather the documents necessary to update that information.

14  (Opposition, pp. 7 – 8). MGA did not argue, however, in its Opposition that it

15  would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16  24 discussed above in Section I.A.4.b.2. Therefore, MGA can gather the

17  documents responsive to those requests and refer Mattel to those materials. (See

18  Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19  examining . . . a party's business records . . . the responding party may answer by

20  specifying the records that must be reviewed . . ."]).

21      The MGA Parties' argument that it is overly burdensome to require MGA to

22  spend 320 hours to inform Mattel of the most recent sales figures concerning the

23  Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25  [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
    enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from
26  presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
    was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only
27  appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
    Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable
28  at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 811

1   information requested and the wide-ranging extent of the discovery to date. As

2   explained above, the information sought is relevant to the constructive trust

3   imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4   claims. Also, while 320 hours may be unduly burdensome in certain

5   circumstances, it is not unreasonable on its face here given that the MGA Parties

6   have already produced more than 4 million documents.[15] (See *Cappacchione v.*

7   *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8   ["Requiring a responding party to perform extensive research or to compile

9   substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13              **c.**    **Conclusion**

14         For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17              **2.**    **Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                     **Larian**

19         Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22         •  Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23             MGA has obtained, received, reviewed, copied, reproduced,

24             transmitted, requested, or used at any time since January 1, 1999, and

25             IDENTIFY all PERSONS with knowledge of such facts and all

26             DOCUMENTS that REFER OR RELATE TO such MATTEL

27

28

---

[15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 812

1     DOCUMENTS." (Separate Statement in Support of Written

2     Discovery Motion, p. 49).

3     • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4       OR RELATE TO any MATTEL product or plan that any of the

5       FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6       to, shared with or used on behalf of MGA at any time since January 1,

7       1999, and IDENTIFY all PERSONS with knowledge of such facts."

8       (*Id.*, p. 52).

9     • Interrogatory No. 58: "State all facts which support YOUR

10      contention, if YOU so contend, that YOU and/or MGA did not obtain

11      any MATTEL DOCUMENTS through improper means, and

12      IDENTIFY all PERSONS with knowledge of such facts and all

13      DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14      54).

15    • Interrogatory No. 59: "State all facts which support YOUR

16      contention, if YOU so contend, that any information in the MATTEL

17      DOCUMENTS does not and/or did not derive independent economic

18      value from not being generally known to the public or other

19      PERSONS who can obtain economic value from its disclosure or use,

20      and IDENTIFY all PERSONS with knowledge of such facts and all

21      DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22      57).

23    • Interrogatory No. 60: "State all facts which support YOUR

24      contention, if YOU so contend, that any information in the MATTEL

25      DOCUMENTS was known to the public or to PERSONS who can

26      obtain economic value from its disclosure or use, and IDENTIFY all

27      PERSONS with knowledge of the foregoing and All DOCUMENTS

28      that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 813

1    • Interrogatory No. 61: "State all facts which support YOUR

2    contention, if YOU so contend, that YOU and/or MGA independently

3    developed, or did not otherwise use or disclose, any information in the

4    MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5    knowledge of such facts and all DOCUMENTS that REFER OR

6    RELATE TO such facts." (*Id.*, pp. 64 – 65).

7    • Interrogatory No. 62: "State all facts which support YOUR contention

8    that YOUR use or disclosure of information in the MATTEL

9    DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10    IDENTIFY all PERSONS with knowledge of such facts and all

11    DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12    69).

13    • Interrogatory No. 63: "State all facts which support YOUR

14    contention, if YOU so contend, that YOU and/or MGA had, has or

15    have any right to copy, possess, use or disclose any MATTEL

16    DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17    facts and all DOCUMENTS that REFER OR RELATE TO such

18    facts." (*Id.*, p. 73).

19        a.    **Objections Of MGA And Larian**

20        In their Opposition, the MGA Parties rely on four basic grounds for refusing

21    to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22    that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23    – 10).   Second, the MGA Parties argue that the interrogatories presuppose facts

24    that are not true. (*Id.*, p. 8).   Third, the MGA Parties argue that all 8 interrogatories

25    are impermissibly compound and exceed the number of allotted interrogatories.

26    (*Id.*, pp. 10 – 11).   Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27    and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT
Exhibit 44
Page 814

1    **(1)    Unduly Burdensome Objection**

2       The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 –

3   63 is that each of the seven interrogatories that references the term "MATTEL

4   DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome.

5   (Opposition, p. 9 – 10).  While the MGA Parties do concede that the interrogatories

6   "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because

7   they claim that the interrogatories require them "to state all facts, identify all

8   documents and identify all witnesses, supporting contentions for over 8 boxes of

9   documents . . ." (Opposition, pp. 9 – 10).  Whether an undue burden exists,

10  however, depends on, among other things, the value of the information sought

11  versus the burden alleged by the responding party.  (*See King v. Georgia Power

12  Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer

13  will be time-consuming, and probably costly, the information is crucial to the issues

14  of this suit, and is in the exclusive custody of the defendant."]).

15       Applying this test here, the Discovery Master finds that Interrogatory Nos.

16  56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2

17  trade secret claims.  (Tr., 37:9-12 ["We're not asking for something of marginal

18  importance.  We're asking for . . . their core contentions related to the trade secret

19  claims."]).  As the Discovery Master has previously explained, the issues to be

20  litigated in Phase 2 include, among other things, Mattel's claim that the MGA

21  Parties stole "a vast array of trade secrets and other confidential information that

22  comprise Mattel's intellectual infrastructure," including, among other things,

23  stealing "Mattel's proprietary business methods, practices and information."

24  (SAAC, ¶ 20).  Indeed, Mattel alleges in its SAAC that the MGA Parties:

25       • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

26          employees to steal Mattel's confidential information or other property

27          and take it with them to MGA," (*Id.*, ¶ 5);

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 815

1     • stole "Mattel's plans, strategy and business information for the

2        Mexican market and materials related to Mattel's worldwide business

3        strategies," (*Id.*, ¶ 37);

4     • "directed [certain Mattel employees'] to steal virtually all Mattel

5        confidential and proprietary information that they could access and

6        bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7        type of document a competitor would need to enter the Mexican

8        market, and to unlawfully compete with Mattel in Mexico, in the

9        United States and elsewhere . . ." (*Id.*, ¶ 48);

10    • "targeted certain Mattel employees who have broad access to Mattel

11       proprietary information in an effort to induce and encourage them to

12       join MGA and to steal or otherwise wrongfully misappropriate Mattel

13       confidential information and trade secrets," including by "promising

14       these employees salaries 25 percent or more higher than they earn at

15       Mattel and stating to them that they should not be concerned by legal

16       action taken by Mattel to protect its trade secrets and its rights because

17       such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18    • "hired directly from Mattel's United States operations at least 25

19       employees, from Senior Vice-President level to lower level

20       employees," and that some of these individuals misappropriated

21       "Mattel confidential and proprietary information, including Mattel's

22       strategic plans; business operations; methods and systems; marketing

23       and advertising strategies and plans; future product lines; product

24       profit margins, and customer requirements." (*Id.*, ¶ 77).

25       Therefore, this is not a situation where Mattel has alleged that the MGA

26    Parties stole a handful of documents. The SAAC instead alleges that the MGA

27    Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28    "virtually every type of document a competitor would need to enter the Mexican

Exhibit 44
Page 816

1   market, and to unlawfully compete with Mattel in Mexico, in the United States and
2   elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA
3   Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-
4   19), including all of the documents that have been identified as the MATTEL
5   DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are
6   regarding whether or not those documents constitute trade secrets, particularly
7   given that such information is exclusively within the control of the MGA Parties.
8   As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial
9   accusing MGA and the other defendants of stealing all of these documents . . . and
10  [the MGA Parties are] going to have to articulate what their contentions are with
11  respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*
12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that
13  Mattel is going to be proceeding to trial on."]).

14       Also, the MGA Parties' claim of undue burden does not take into account the
15  vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel
16  propounded 4,647 requests for admission, 2,889 requests for production, and 71
17  interrogatories in Phase 1]). The MGA Parties do not provide any supporting
18  declaration or specific evidence to support their assertion of burden beyond their
19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.
20  For example, the MGA Parties have not provided the Discovery Master with details
21  regarding: (1) a time estimate as to how long it would take to respond to the
22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the
23  extent to which any facts that must be set forth in answering the Interrogatories are
24  voluminous; or (4) an estimate of the number of documents and/or persons that may
25  have knowledge of such responsive facts. Therefore, the Discovery Master finds
26  that the MGA Parties have not met their burden of demonstrating that answering
27  //
28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 817

1    the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6          While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13   issue[17] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25          The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue. (Opposition, pp. 9 – 10).

28   [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 818

1   conceded in its Reply that it was not asking the MGA Parties "to provide

2   facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3   "specific contentions Defendants may make regarding the [allegedly] stolen

4   documents," (*id.*, p. 17). Mattel's counsel reiterated this position again at oral

5   argument, wherein he declared that Mattel was not necessarily interested in "a

6   parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7   Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8                   (2)     **Purported Presuppositions Regarding**

9                           **Interrogatory Nos. 56 and 58 – 63.**

10          The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11   objectionable because they require the MGA Parties to presuppose that they are "in

12   possession of documents stolen or taken from Mattel by former employees – a fact

13   that MGA denies." (Opposition, p. 8). The MGA Parties further assert that "each

14   of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15   Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16   assertions . . . which make the interrogatories unanswerable and incomprehensible."

17   (*Id.*, p. 9). However, the MGA Parties cite no legal authority, and the Discovery

18   Master has found none, standing for the proposition that a party may refuse to

19   respond to an interrogatory merely because the interrogatory assumes a fact the

20   responding party disputes.

21                   (3)     **Compound And Excessive Objections**

22          The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23   impermissibly compound and exceed the allotted number of interrogatories.

24   (Opposition, pp. 10 and 11). Each of these contentions is unavailing.

25          As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

---

26   [18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
27   judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
28   its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 819

1    and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2    the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3    Therefore, the MGA Parities waived any such objections to those interrogatories.

4    *(See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5    Cir. 1992) [stating that "failure to object to discovery requests within the time

6    period required constitutes a waiver of any objection."]).

7         As for the interrogatories where the objections were asserted, the MGA

8    Parties have not demonstrated that the interrogatories are compound or exceed the

9    allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10   and documents related to the MATTEL DOCUMENTS does not render the

11   interrogatories compound because the questions in each interrogatory refer to one

12   common theme and count as a single interrogatory.  *(See Swackhammer v. Sprint*

13   *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14   subparts directed at eliciting details concerning a 'common theme' should generally

15   be considered a single question"]).  The prior discovery master applied this precise

16   rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17   supporting a contention, the identity of persons with knowledge, and documents are

18   not counted separately for the purposes of applying the . . . interrogatory limit."

19   (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                        **(4)    Establishing A Negative Proposition Objection**

21        As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22   Parties assert that three of the interrogatories improperly ask them to establish a

23   negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24   12).  The relevant question, however, is not whether an interrogatory may require a

25   party to prove a negative.  Rather, all of the cases cited by the parties concerning

26   this issue examine whether the interrogatory in question imposes an unreasonable

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 820

1   burden on the responding party.[19]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

4                        **b.   Conclusion**

5        For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

8              **3.   Interrogatory Nos. 67 – 69 Propounded On MGA And**

9                   **Larian**

10       Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11   These interrogatories ask the MGA Parties to provide information regarding any

12   payments they may have made to former Mattel employees and any persons

13   identified in the parties' initial disclosures:

14       • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15           payment of money or other item of value that YOU have made or

16           given, or any promise, agreement, proposal [o]r offer by YOU to pay

17           money or given any item of value, to or on behalf of any PERSON

18           identified in any of the parties' initial disclosures in this ACTION at

19           any time when such person was not an employee of MGA, including

20           without limitation with respect to legal fees incurred by or on behalf of

21           such PERSON."  (Separate Statement in Support of Written Discovery

22           Motion, p. 88).

23       • Interrogatory No. 68: "To the extent not disclosed in prior

24   _____

25   [19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -
     448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both
26   address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases
     cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding
     that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison
27   v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all
     facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,
28   2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 821

1   Interrogatories, IDENTIFY fully and separately each and every
2   payment of money or other item of value that MGA has made, or any
3   promise, agreement, proposal or offer by MGA to pay money or given
4   any item of value, to or on behalf of any of the FORMER MATTEL
5   EMPLOYEES, including without limitation with respect to legal fees
6   incurred by or on behalf of any of the FORMER MATTEL
7   EMPLOYEES." (*Id.*, p. 91).

8   • Interrogatory No. 69: "To the extent not disclosed in prior
9   Interrogatories, IDENTIFY fully and separately each and every
10   payment of money or other item of value that YOU have made, or any
11   promise, agreement, proposal or offer by YOU to pay money or given
12   any item of value, since January 1, 1998 to or on behalf of any
13   PERSON who has been employed by MATTEL (excluding ordinary
14   salary and benefits paid to such PERSON while an MGA employee),
15   including without limitation with respect to legal fees incurred by or
16   on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,
17   p. 92).

18   **a.   Objections Of MGA And Larian**

19   In their Opposition, the MGA Parties rely on two basic grounds for refusing

20   to provide responses to these three interrogatories. First, the MGA Parties argue

21   that the interrogatories are impermissibly compound and exceed the number of

22   allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that

23   interrogatories are overly broad. (*Id.*, pp. 12 – 14).

24   **(1)   Compound And Excessive Objections**

25   Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26   that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27   allotted number of interrogatories. (Opposition, pp. 10 and 11). But those

28   arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 822

### (2)   Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[20] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 823

1   employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2   EMPLOYEES as including specific individuals as well as each such person's

3   "current or former employees, agents, representatives, attorneys, accountants,

4   vendors, consultants, independent contractors, predecessors-in-interest and

5   successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6   to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7   While they assert these definitional objections, counsel for the MGA Parties

8   nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9   Mattel employees, for other than their salary as MGA employees, I think that is a

10   fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11       Therefore, the Discovery Master orders the MGA Parties to identify fully and

12   separately each and every payment of money or other item of value that they have

13   made or offered to pay to or on behalf of any "former employee of Mattel" since

14   January 1, 1998 but limits the definition of former Mattel employees to "all

15   individuals that the MGA Parties are aware of that worked for Mattel and who

16   received any payment (excluding ordinary salary and benefits paid to such person

17   while an MGA employee) from the MGA Parties."[21]

18                     **b.   Conclusion**

19       For all of the foregoing reasons, Mattel's motion to compel is denied with

20   respect to Interrogatory No. 67.  Regarding Interrogatory Nos. 68 and 69, Mattel's

21   motion to compel responses to the interrogatories is granted, subject to the

22   limitations discussed above.

23       **C.   Summary Of Ruling Regarding The Written Discovery Motion**

24       Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25   **part.**

26   _____

27   [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a

28   request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.
Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 824

## II. MATTEL'S DEPOSITION MOTION

### A. Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1. Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004. Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business. Vargas currently serves as the Director of Sales for MGA Mex. In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex. Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex. She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

#### 2. Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles. In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses. On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

Exhibit 44
Page 825

1   the Witnesses (as well as others). Mattel's application was stayed with other Phase

2   2 discovery and then denied without prejudice on September 23, 2008. After the

3   Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4   depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5   Once again, the MGA Defendants objected on the ground that neither of the

6   Witnesses is an officer, director or managing agent of MGA Mex. After the parties

7   were unable to resolve their dispute, Mattel filed the Deposition Motion.

8           **B.      Discussion**

9           Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights. In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[23] According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24           **1.      Legal Standard**

25           If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27   _____

28   [23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 826

1   managing agent to be deposed and noticing that person's deposition under Rule

2   30(b)(1). Notice alone is enough to compel the managing agent to attend the

3   deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4   *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of

5   compelling a corporate officer's deposition, courts do not recognize a distinction

6   between an "apex" official or director and other high corporate officials. (*Resort*

7   *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8   Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9   ["There is slight warrant for the present distinction between officers and managing

10   agents on the one hand and directors on the other."]).

11         The case law provides somewhat ambiguous guidance with respect to the

12   burden of proof for demonstrating managing agent status. Generally, the burden is

13   on the discovering party to establish the status of the witness. (See *Sugarhill*

14   *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15   *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same

16   time, however (and as Mattel points out in its papers), courts resolve doubts in

17   favor of the examining party, at least during the discovery phase. (See *Sugarhill*,

18   105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19   (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of

20   providing enough evidence to show that it is at least a close question whether the

21   proposed deponent is a managing agent." (*United States of America v. Afram Lines*

22   *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23         The identification of a managing agent in any given case is fact-sensitive.

24   "[B]ecause of the vast variety of factual circumstances to which the concept must

25   be applied, the standard . . . remains a functional one to be determined largely on a

26   case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27   *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the

28   question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 827

1   pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2   C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3   citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)).  Whether a

4   proposed deponent falls into a particular category of employee or agent is therefore

5   less relevant than the individual's specific functions and authority.

6       As both parties acknowledge, federal courts have formulated a set of factors

7   to assist in determining whether person is a party's "managing agent," and therefore

8   subject to deposition under Rule 30(b)(1):

9       1)    whether the individual is invested with general powers allowing him to

10          exercise judgment and discretion in corporate matters;

11      2)    whether the individual can be relied upon to give testimony, at his

12          employer's request, in response to the demands of the examining

13          party;

14      3)    whether any person or persons are employed by the corporate

15          employer in positions of higher authority than the individual

16          designated in the area regarding which the information is sought by the

17          examination;

18      4)    the general responsibilities of the individual "respecting the matters

19          involved in the litigation;" and

20      5)    whether the individual can be expected to identify with the interests of

21          the corporation.

22  (*Sugarhill*, 105 F.R.D. at 170).

23      According to Mattel, the most important of these factors is "whether the

24  witness can be expected to identify with the employer corporation's interest as

25  opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26  *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)).  Applying that test,

27  Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28  they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 828

1    day-to-day operations.  (Deposition Motion, p. 13).  Accordingly (Mattel reasons),

2    the Witnesses are managing agents of MGA Mex.

3         Mattel's emphasis on the employee's loyalty as the main test for determining

4    his or her status is unwarranted.  Federal courts have effectively challenged the

5    notion that the employee's loyalty to the employer is entitled to special weight.

6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)).  As the

7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8    apparent fidelity to the principal's interests, because it would apply to many agents

9    and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent." (*Id.,* at 350).  Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies.  Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15        In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees.  Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness.  This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial.  (*Id.*)  On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27        However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

Exhibit 44
Page 829

1  ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2  employee of an adversary corporation in his individual capacity and may

3  nonetheless still seek to impeach that testimony.  In other words, characterizing a

4  particular witness as a "managing agent" no longer provides any substantive

5  advantage to the deposing party, only procedural advantages (i.e., the ability to take

6  the deposition without a subpoena).

7       Having discarded the notion that the witness' loyalty to his employer is the

8  main factor to be considered in ascertaining his status as a managing agent, the

9  court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11  197 F.R.D. at 350).  The court reasoned:

12       For the purpose of determining whether an individual is a

13       'managing agent' within the meaning of the discovery rules, the

14       alter ego theory provides a useful analogy.  As in the arena of

15       corporate liability, the focus begins with the character of the

16       individual's control.  In addition, we can profitably examine both

17       the degree to which the interests of the individual and the

18       corporation converge, and how helpful the individual will be in

19       fact finding on the matter at issue, in comparison to others

20       associated with the corporation.  As in all matters appertaining to

21       discovery, it is the ends of justice that are to be served.

22  (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25  practical and well-reasoned test for determining whether the Witnesses are

26  managing agents of MGA Mex, and applies that test below.

27

28  [24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 830

2.     **Analysis Of The Witnesses' Job Functions And Managerial Authority**

   a.     **The Nature Of The Witnesses' Activities On Behalf Of, And Control Over, MGA Mex.**

In accordance with the approach outlined in *Libbey Glass*, the Discovery Master begins his analysis by examining the Witnesses' activities on behalf of, and managerial control over the operations of, MGA Mex.

Mattel relies heavily on documentary evidence regarding the role of Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery Master finds that this evidence, which is limited to events that occurred five years ago, to be only minimally probative of the *current scope* of the Witnesses' activities and authority.[25]  The only evidence presented by the parties concerning the Witnesses' current role in the company is the testimony of Kuemmerle.  That testimony derives from three sources:  (1) her declaration filed on February 27, 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

The relevant portion of Kuemmerle's first declaration is Paragraph 6, which states in its entirety:

> All of the day to day operations of MGA Mexico are managed
> locally in Mexico.  For example, MGA Mexico's Finance
> Director, Sales Director and Marketing Director are all based in
> Mexico and all of the marketing and finance functions are
> handled in Mexico.

(First Kuemmerle Decl., ¶ 6).

---

[25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now." (Tr., 21:14-16).

Exhibit 44
Page 831

1    There are two main excerpts from Kuemmerle's deposition transcript cited

2    by Mattel in support of its Deposition Motion.  In the first, Kuemmerle testifies that

3    pricing for the products sold by MGA Mex is set by means of a "combined team

4    effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5    p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26]  Kuemmerle testifies that these

6    individuals (which apparently include the Witnesses) continue to set the pricing of

7    MGA Mex products in the same manner to this day.  (*Id.*).

8        Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9    testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10   tight of a group, not enough employees, that we were all forced to multitask."

11   (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12       In her second declaration, Kuemmerle testifies regarding the chain of

13   command at MGA Mex.  Specifically, she testifies that Vargas reports directly to

14   her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15   (Second Kuemmerle Decl., ¶¶ 3 – 4).  Kuemmerle is entirely silent regarding the

16   functions performed by, or general authority exercised by, either of the Witnesses.

17   Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18   all at MGA De Mexico."  (*Id.*, ¶ 4).  Kuemmerle does not state whether Vargas

19   supervises anyone.  (*Id.*, ¶ 3).

20       In the absence of any evidence directly addressing the Witnesses' current

21   role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22   managing agents based on the Witnesses' job titles and past participation in the

23   "tight group" that made operational decisions for the fledgling company several

24   years ago.  However, such an inference is not supported by the scant evidence

25   before the Discovery Master.  For instance, the Discovery Master cannot attribute

26

27   [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring.  However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and

28   Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 832

1   such status to Trueba, who supervises no employees, and whose scope of

2   responsibility is circumscribed to public relations.[27]

3       Likewise, although Mattel emphasizes that Vargas supervises approximately

4   8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5   p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6   necessary context by identifying the number of total MGA Mex employees. If, for

7   instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8   employees would tend to indicate he does not have such authority.[28] Because the

9   necessary contextual information is not provided, the Discovery Master is unable to

10   assess the significance (if any) of the evidence that is provided regarding Vargas'

11   current role at MGA Mex.

12       In sum, the evidence currently before the Discovery Master is insufficient to

13   allow him to determine that the Witnesses' functions on behalf of, and control over,

14   MGA Mex is such that they can be deemed its "managing agents."

15          **b.**   **Other Factors**

16       Since there is virtually no evidence addressing the critical factor governing

17   whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18   above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19   at best. Even if all those factors were satisfied – which they are not – the record

20   would still be insufficient to enforce the deposition notices at issue here. However,

21   in order to create a complete record and to address the arguments made by the

22   parties, the Discovery Master nonetheless briefly discusses those factors below.

23       As set forth above, the first factor identified by the *Sugarhill* Court bearing

24

---

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she
25   submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to
dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing." (Deposition
26   Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 –
27   16), but there is no admissible evidence before the Discovery Master to support such an assertion. Further, such a
contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees
28   at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

Exhibit 44
Page 833

1    on the issue of whether an employee is a managing agent is whether he or she "is

2    invested with *general* powers allowing him to exercise judgment and discretion in

3    corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4    current scope of Trueba's authority appears to be the opposite of "general:" she is

5    responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6    attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7    broader than that of Trueba, appears to be confined primarily to sales. (Second

8    Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9    authority over such things as internal administrative functions, budgeting, contracts

10   with vendors, and various other aspects of running a business.

11   The second *Sugarhill* factor (whether the individual can be relied upon to

12   give testimony at the employer's request) is satisfied, since the Witnesses are

13   current employees of MGA Mex who will presumably cooperate in their

14   employer's defense of Mattel's counterclaims by providing testimony at a

15   deposition.

16   Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17   employees in positions of higher authority than the Witnesses in the area regarding

18   which the information is sought), the Discovery Master finds that the undisputed

19   testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20   Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21   Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22   the Witnesses are "managing agents."

23   With respect to fourth factor (the general responsibilities of the Witnesses

24   respecting the matters involved in the litigation), Mattel's papers demonstrate that

25   the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26   Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27   contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28   Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 834

1   Witnesses to be managing agents.

2   The last factor is the "loyalty" inquiry discussed above, namely whether the

3   Witnesses can be expected to identify with the interests of MGA Mex. Because

4   they are being subjected to investigation in Mexico, have their own lawyers and the

5   MGA Defendants may take the position that if any Mattel documents were taken,

6   the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7   align with the MGA Defendants in this matter. It is unclear on this record whether

8   this factor weighs in favor of or against deeming the Witnesses to be managing

9   agents.

10   **C.    Summary Of The Discovery Master's Findings In Connection**

11   **With The Deposition Motion**

12   At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex. The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this

16   is not such a case.[29]

17   Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30] Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22   **D.    Sanctions**

23   **1.    Mattel's Request For Sanctions**

24   Having found that the MGA Defendants have articulated a meritorious legal

---

25   [29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is

26   unnecessary for him to reach the question of where the depositions may be taken.

27   [30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities. However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have

28   authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 835

1  and factual basis for their objections to the subject deposition notices, the Discovery

2  Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3  was justified.  Accordingly, Mattel's request for sanctions is **DENIED**.

4          **2.  The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6  conduct related to Mattel's service of the Deposition Motion.  First, the MGA

7  Defendants contend that Mattel should have served the Deposition Motion on

8  Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9  counsel had been communicating regarding the subject depositions.  The MGA

10  Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11  on Kahn's colleague, Glaser, while the latter was out of town.  However, the MGA

12  Defendants do not explain why other attorneys in their office who were assigned to

13  the matter were not notified of the delivery of the Deposition Motion given Ms.

14  Glaser's absence.  Further, Mattel has submitted the declaration of its counsel,

15  Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16  served the Deposition Motion on all three law firms representing the MGA

17  Defendants at the same time (February 6, 2009) that the motion was filed.  (See

18  Suppl. Zeller Decl., Exh. E).

19        Second, the MGA Defendants argue that Mattel only served a redacted

20  version of the Deposition Motion on them at some later point, leaving them only

21  two days to draft and file opposing papers, and refused Kahn's request for a

22  reasonable extension of time. (Kahn Decl., ¶¶ 3 - 4).  However, the Kahn Decl. is

23  vague regarding the date and manner in which Mattel is alleged to have belatedly

24  served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25  Master is unable to ascertain whether Kahn's belated receipt of the motion was

26  caused by some conduct of Mattel, or instead, caused by internal delays within

27  Glaser Weil in routing the papers to the appropriate attorney.

28        Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

Exhibit 44
Page 836

## III. DISPOSITION

    **A.** Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

    1. Document Request Nos. 207, 208 and 269 directed to Larian: The Motion is **GRANTED**. All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    2. Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA: The Motion is **GRANTED**. All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    3. Interrogatory No. 45 directed to MGA: The Motion is **GRANTED**. MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

    4. Interrogatory Nos. 56 – 63 directed to MGA and Larian:

        a. The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

        b. Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations: The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

Exhibit 44
Page 837

1   MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2   (ii) that the information in the MATTEL documents did not derive independent

3   economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4   DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5   Parties independently developed, or did not otherwise use or disclose, any

6   information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7   the MGA Parties have not benefited by their use of the information in the MATTEL

8   DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9   Parties had or have a right to copy, possess, use or disclose any MATTEL

10   DOCUMENT (Interrogatory No. 63).

11   c.   The MGA Parties responses to interrogatories numbered

12   56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13   applicable confidentiality designations available under the Protective Order.

14   5.   Interrogatory No. 67 directed to MGA and Larian:  The Motion

15   is **DENIED**.

16   6.   Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18   Parties are ordered to identify fully and separately each and every payment of

19   money or other item of value that they have made or offered to pay to or on behalf

20   of any former employee of Mattel since January 1, 1998, with the definition of

21   former Mattel employees re-defined as "all individuals that the MGA Parties are

22   aware of that worked for Mattel and who received any payment (excluding ordinary

23   salary and benefits paid to such person while an MGA employee) from the MGA

24   Parties."  The MGA Parties responses to these interrogatories shall be served within

25   30 days of the original Order No. 11, subject to any applicable confidentiality

26   designations available under the Protective Order.

27   **B.**   Mattel's Deposition Motion:

28   1.   Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 39 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 838

1          2.      Mattel's request for sanctions is **DENIED**.

2          3.      The MGA Defendants' request for sanctions is **DENIED**.

3

4    Dated:  March 31, 2009

5

6                                          By:        /s/ Robert C. O'Brien
                                                      ROBERT C. O'BRIEN
7                                                     Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 40 -                                          AMENDED ORDER NO. 11
                                         [Case No. CV 04-09049 SGL (RNBx)]

Exhibit 44
Page 839

# Exhibit 45



FILED

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

2009 MAY 22  PM 4:44

CLERK. U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

                    Plaintiff,

          v.

MATTEL, INC., a Delaware
corporation,

                    Defendant.

_____

AND CONSOLIDATED CASES

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated With Case No. 04-9059 and Case No. 05-2727

MATTEL, INC.'S THIRD AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR:

1. COPYRIGHT INFRINGEMENT;
2. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
3. CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
4. MISAPPROPRIATION OF TRADE SECRETS;
5. BREACH OF CONTRACT;
6. INTENTIONAL INTERFERENCE WITH CONTRACT;
7. BREACH OF FIDUCIARY DUTY;
8. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;
9. BREACH OF DUTY OF LOYALTY;

**PUBLIC REDACTED**

**Volume I**

THIRD AMENDED ANSWER AND COUNTERCLAIMS

CONFORMED COPY

Exhibit 45
Page 840

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION;
13. AVOIDANCE OF INTENTIONAL AND CONSTRUCTIVE FRAUDULENT TRANSFERS UNDER UNIFORM FRAUDULENT TRANSFER ACT; AND
14. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

00505.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

Exhibit 45
Page 841

1

## THIRD AMENDED ANSWER

2      Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA

3 Entertainment, Inc. ("Complaint") as follows:

4

### Preliminary Statement

5      The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules</u>

6 <u>of Civil Procedure</u> in multiple respects.  For example, in many places, the Complaint

7 improperly mixes factual averments with argumentative rhetoric.  The Complaint

8 also includes a selective recitation of alleged historical facts and "rumor," much of

9 which is both irrelevant and inflammatory in tone and content.  In addition, many of

10 the allegations of the Complaint are overly broad, vague or conclusory and include

11 terms which are undefined and which are susceptible to different meanings.

12 Accordingly, by way of a general response, all allegations are denied unless

13 specifically admitted, and any factual averment admitted is admitted only as to the

14 specific facts and not as to any conclusions, characterizations, implications or

15 speculations which are contained in the averment or in the Complaint as a whole.

16 These comments and objections are incorporated, to the extent appropriate, into

17 each numbered paragraph of this Third Amended Answer.

18      Mattel further submits that the use of the headings throughout the

19 Complaint is improper, and therefore no response to them is required.  In the event

20 that a response is required, Mattel denies those allegations.

21      The Complaint also contains many purported photographs of various

22 items, and it uses one or more headings purporting to describe, either individually or

23 in groups, these various photographs.  The images of these photographs contained in

24 the Complaint are all relatively small and some are of less than optimal quality,

25 making it difficult to evaluate the adequacy of the photographs or their fairness and

26 accuracy in depicting what they purport to represent.  The Complaint also does not

27 describe the circumstances or time frame in which these photographs were taken,

28 and in many cases does not identify, or does not sufficiently or properly identify, the

-1-

1  item depicted in the photographs. All of these factors, as well as the use of these

2  photographs and headings out of context, or with an insufficient context, impair the

3  ability of Mattel to fully respond to these photographs and headings, or to any

4  purported allegations involving, or relying upon, the use of such photographs and

5  accompanying headings. By way of a general response, Mattel therefore does not

6  admit the authenticity of any photograph, or the accuracy or adequacy of any

7  heading, nor does it admit any allegation or inference that is based on, or purports to

8  be based on, any photograph or accompanying heading in the Complaint. Mattel

9  reserves the right to challenge the authenticity of any photograph and the accuracy

10  or adequacy of any heading (either as included in the Complaint or in the context of

11  additional material not included). Further, with reference to all photographs and

12  accompanying headings, or any averments based on the Complaint's use of such

13  photographs and headings, which might be offered into evidence, Mattel specifically

14  reserves its right to object to any use of such photographs, headings, and averments,

15  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

16  　　　　To the extent that Mattel has endeavored to answer any particular

17  allegation containing any such photographs and headings, any admission concerning

18  the item purported to be depicted in such photograph, or described in such headings,

19  shall not constitute an admission that the photograph is authentic, adequate, or

20  admissible, nor that any heading is accurate, adequate, or admissible. All such items

21  purportedly depicted in such photographs, and described in such headings, "speak

22  for themselves." Accordingly, to the extent that any such referenced materials are

23  deemed allegations against Mattel, they are denied.

24  　　　　　　　　　　　　　Responses

25  　　　　1.　　Answering paragraph 1 of the Complaint, Mattel admits that

26  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

27  corporation with a principal place of business in Van Nuys, California.

28

00505.07209/2875224.1

-2-

1      2.      Answering paragraph 2 of the Complaint, Mattel admits that

2   Mattel is a Delaware corporation with a principal place of business in El Segundo,

3   California.

4      3.      Answering paragraph 3 of the Complaint, Mattel denies that

5   there has been wrongful conduct on its part and states that it is without knowledge

6   or information sufficient to form a belief as to the truth or falsity of the remaining

7   allegations set forth therein and, on that basis, denies them.

8      4.      Answering paragraph 4 of the Complaint, Mattel admits that

9   plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10  (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11  and Professions Code § 14330 and California common law, denies that plaintiff is

12  entitled to any relief thereunder and denies the truth of the remaining allegations set

13  forth in paragraph 4.

14     5.      Answering paragraph 5 of the Complaint, Mattel admits that it is

15  subject to personal jurisdiction in this District and denies the truth of the remaining

16  allegations set forth in paragraph 5.

17     6.      Answering paragraph 6 of the Complaint, Mattel admits that

18  venue is proper in this District and denies the truth of the remaining allegations set

19  forth in paragraph 6.

20     7.      Answering paragraph 7 of the Complaint, Mattel admits that

21  MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22  set forth in paragraph 7.

23     8.      Answering paragraph 8 of the Complaint, Mattel states that it is

24  without knowledge or information sufficient to form a belief as to the truth or falsity

25  of the allegations regarding MGA's history set forth therein and, on that basis,

26  denies them, states that MGA has made conflicting representations, including in

27  sworn statements, that are at odds with the allegations of the Complaint and denies

28  the truth of the remaining allegations set forth in paragraph 8.

00505.07209/2875224.1

-3-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

Exhibit 45
Page 844