# EXHIBIT 9

# TO DECLARATION OF

# ANDREW C. SPITSER

EXHIBIT 9

TO DECLARATION OF

ANDREW C. SPITSER



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>vs.<br>MATTEL, INC., a Delaware corporation,<br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO MGA ENTERTAINMENT, INC.'S SECOND SET OF INTERROGATORIES |

PROPOUNDING PARTY: MGA ENTERTAINMENT, INC.

RESPONDING PARTY: MATTEL, INC.

SET NO.: TWO (2)

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

EXHIBIT 2
PAGE 296

3.5.08

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On March 5, 2008, I served true copies of the following documents described as:

**MATTEL, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO MGA ENTERTAINMENT, INC.'S SECOND SET OF INTERROGATORIES**

on the parties in this action as follows:

| | |
|---|---|
| Thomas J. Nolan<br>**Skadden, Arps, Slate, Meagher & Flom LLP**<br>300 South Grand Ave., Ste. 3400<br>Los Angeles, CA 90071 | Mark E. Overland<br>David C. Scheper<br>Alexander H. Cote<br>**Overland Borenstein Scheper & Kim LLP**<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071 |
| John W. Keker, Esq.<br>Michael H. Page, Esq.<br>Christina M. Anderson, Esq.<br>**Keker & Van Nest, LLP**<br>710 Sansome Street<br>San Francisco, CA 94111 | |

[√] **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on March 5, 2008, at Los Angeles, California.

Aliza Reder

EXHIBIT 2
PAGE 377

# EXHIBIT 10
# TO DECLARATION OF
# ANDREW C. SPITSER

EXHIBIT 10
TO DECLARATION OF
ANDREW C. SPITSER

Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@glaserweil.com
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: 310-553-3000
Facsimile: 310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: 310-312-2000
Facsimile: 310-312-3100

Attorneys for the MGA Parties For Phase Two

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware Corporation

Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-9049 SGL (RNBx)
Consolidated with: Case No. CV 04-9059; Case No. CV 05-2727

**DISCOVERY MATTER**
**[To Be Heard by Discovery Master Robert C. O'Brien Pursuant to Order of January 6, 2009]**

**MGA ENTERTAINMENT, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS FROM MGA'S SECOND AND FIFTH SETS OF REQUESTS FOR PRODUCTION AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**

Date: TBD
Time: TBD
Place: TBD

[Honorable Stephen G. Larson]
**Phase 2**
Discovery Cut-off: December 11, 2009
Pre-Trial Conference: March 1, 2010
Trial Date: March 23, 2010

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at a hearing before the Discovery Master Robert O'Brien, occurring at a date and time to be set by the Discovery Master, MGA Entertainment, Inc. ("MGA") will, and hereby does, move to compel Mattel, Inc. ("Mattel") to: (1) produce all documents and things responsive to Request Nos. 153, 154, 158, 174, 175, 176 177 and 178 of MGA's Second Set of Requests for Documents and Things and Request Nos. 486, 488 and 489 of its Fifth Set of Requests for Documents and Things; and (2) respond to interrogatories 20, 21, 22, 23, 28 and 29 of its Second Set of Interrogatories.

This Motion is made pursuant to Federal Rules of Civil Procedure 33, 34, and 37 and pursuant to the Court's January 6, 2009 Order Appointing Discovery Master.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Caroline H. Mankey filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

**Statement of Rule 37-1 Compliance**

The parties met and conferred regarding the issues in this Motion on March 25, 2009, March 31, 2009, April 13, 2009, April 16, 2009, April 17, 2009 and dates thereafter.

Dated: April 20, 2009

Patricia L. Glaser
Joel N. Klevens
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

Russell J. Frackman
MITCHELL, SILBERBERG & KNUPP, LLP

By: /s/ Joel N. Klevens
Joel N. Klevens
Attorneys for the MGA Parties for Phase Two

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........ 1
II. PROCEDURAL HISTORY ........ 1
III. STATEMENT OF RELEVANT FACTS ........ 2
A. Requests for Production of Documents and Things ........ 2
B. Interrogatories ........ 2
IV. ARGUMENT ........ 3
A. Mattel Must Produce *All* Responsive Documents ........ 3
1. Request for Production Nos. 148, 162, 486 and 489 ........ 4
2. Request for Production No. 154 ........ 5
3. Request for Production No. 178 ........ 6
B. Mattel Should Be Compelled to Comply with Its Obligations To the Extent It Has Not Done So Before the Hearing on This Motion ........ 6
C. Mattel's Response to Interrogatory No. 1 Is Not An Adequate Response to Interrogatory Nos. 20, 21, 22, 23 or 28 ........ 7
D. MGA Is Entitled to a Full and Complete Response to Interrogatory No. 29 ........ 10
C. Mattel's Boilerplate Objections Should Be Rejected ........ 12
V. CONCLUSION ........ 15

i

672844 MGA'S MOTION TO COMPEL RESPONSES TO MGA'S REQUESTS FOR PRODUCTION & SECOND SET OF INTERROGATORIES

EXHIBIT 6 PAGE 28
EXHIBIT 10 PAGE 155

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal 2006)....12

*Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646 (C.D. Cal. 1997)....13

*City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219 (N.D. Cal. 2003)....11

*Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524 (D. Nev. 1997)....12

*Keith H. v. Long Beach Unified School District*, 228 F.R.D. 652 (C.D. Cal. 2005)....14

*O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272 (C.D. Cal. 1999)....13

*Putnam v. Eli Lilly and Co.*, 508 F. Supp. 2d 812 (C.D. Cal. 2007)....14

*Swackhammer v. Sprint Corp PCS*, 225 F.R.D. 658 (D. Kan. 2004)....13

*Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584 (C.D. Cal. 1999)....12

### STATE CASES

*Bathija v. Panoff Pub., Inc.*, 2005 WL 2323298 (D. Alaska September 21, 2005)....11

[continued on next page]

**FEDERAL STATUTES**

Fed. R. Civ. P. 33(a)(2) .......... 9, 13

Fed. R. Civ. P. 33(b)(4) .......... 12

Federal Rule of Civil Procedure 11 .......... 11

Federal Rules of Civil Procedure 33, 34 .......... 1

**STATE STATUTES**

Cal. Civ. Code § 3426.1(d) .......... 8, 9

Cal. Civ. Code § 3426.1(d)(2) .......... 5,10

**MISCELLANEOUS**

Miller & Marcus, Fed. Prac. and Proc.: Civil § 2167 at 247 (2d ed.1994) .......... 13

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

## I. PRELIMINARY STATEMENT

By this motion to compel (the "Motion"), MGA Entertainment, Inc. ("MGA") seeks documents and interrogatory responses that are directly relevant to the claims and defenses as alleged in Mattel's Second Amended Answer and Counterclaims (the "SAAC"). The parties have met and conferred at length about these discovery requests. Although Mattel has agreed to provide further written responses and documents, MGA has a number of concerns which Mattel has not yet addressed. Accordingly, MGA brings this Motion in order to preserve its rights and ensure that Mattel complies with its representation that it will supplement its interrogatory responses, produce the documents at issue, and provide written confirmation that all responsive documents in Mattel's possession have been produced.

To the extent Mattel does not comply with its representations to provide further responses and documents by the time the Discovery Master hears this motion, MGA seeks an order compelling production within twenty-four hours of the Discovery Master's ruling.[1]

## II. PROCEDURAL HISTORY

This Motion concerns requests for production and interrogatories propounded by MGA upon Mattel between one-and-a-half and two years ago:

- MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things in Case No. 05-2727, dated March 27, 2007;
- MGA's Fifth Set of Requests for Production of Documents and Things in Case No. 05-2727, dated August 3, 2007; and
- MGA's Second Set of Interrogatories to Mattel, Inc., dated December 4, 2007.

(Declaration of Caroline H. Mankey ("Mankey Decl."), ¶ 2.) These requests that are the subject of this Motion all relate to MGA's defense of Mattel's Phase 2

1 The parties are still working to resolve these issues informally. Mattel has represented that it will provide supplementary responses and documents by May 14, 2009 in response to the subject requests for production and interrogatories. As a result, MGA shall withdraw all or portions of its Motion in the event the parties are able to reach an agreement as to the discovery at issue.

1
MGA'S MOTION TO COMPEL RESPONSES TO MGA'S REQUESTS FOR PRODUCTION & SECOND SET OF INTERROGATORIES
672844

EXHIBIT 6 PAGE 31
EXHIBIT 10 PAGE 158

counterclaims. Although Mattel initially refused to respond to these discovery requests and elected to make baseless objections instead, MGA was precluded from seeking enforcement by the Court due to the February 4, 2008 Order placing a stay on all Phase 2 discovery. (*Id.*) After the stay was lifted, MGA's Phase 2 counsel initiated the meet and confer process as required by Rule 37-1. Because Mattel has not committed to providing full and complete responses to MGA's discovery requests in a timely manner, MGA seeks the Discovery Master's assistance by bringing this Motion.

## III. STATEMENT OF RELEVANT FACTS

### A. Requests for Production of Documents and Things

Requests for Production 146, 148, 153, 154, 158, 160, 162, 174, 175, 176, 177, 178, 486, 488, 489 and 491 from MGA's Second and Fifth Sets of Requests for Production go to the heart of Mattel's counterclaims. Indeed, Mattel did not challenge any of these requests on the basis of relevance, but agreed to produce documents responsive to them and asserted that documents responsive to the others had either been produced already or do not exist in Mattel's possession, custody or control. (Mankey Decl., ¶¶ 8, 9, Exhs. F, G.)

During the meet and confer process, Mattel indicated that it would either produce non-privileged, responsive documents in its possession, custody or control or provide written confirmation that it is not in possession, custody, or control of responsive documents. (*Id.*) However, Mattel did not expressly state whether it will produce ***all*** such responsive documents or whether it intends to withhold any documents on the basis of any privilege or any purported objection. (Mankey Decl., ¶ 11, Exh. I.)

### B. Interrogatories

The interrogatories at issue also go to the heart of Mattel's counterclaims – most notably, its trade secret claims. Interrogatory No. 20 asks Mattel to identify each alleged trade secret that Mattel claims has been misappropriated by the MGA

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

Parties. (Mankey Decl., ¶ 4, Exh. B, Mattel's Responses to MGA's Second Set of Interrogatories, p. 13.) Interrogatory No. 21 seeks the identity of the people who had access to each alleged trade secret and the dates that these people had the access. (*Id.* at p. 14) Interrogatory Nos. 22 and 23 ask Mattel to state all facts that support Mattel's contentions: (1) that MGA misappropriated any alleged trade secret; and (2) that these alleged trade secrets are protectable. (*Id.* at pp. 15-16.) Interrogatory No. 28 seeks the complete factual basis for Mattel's counterclaims, including all facts, documents, and witnesses that refer or relate to those counterclaims. (*Id.* at p. 20) Finally, Interrogatory No. 29 asks Mattel to describe in detail any estimate or calculation of damage, loss, etc., as a result of the MGA Parties' purported wrongdoing, as alleged in Mattel's Counterclaims. (*Id.* at p. 21.)

Although Mattel has agreed to supplement its responses to these interrogatories, Mattel has not yet done so and has not withdrawn its objections. (*See* Mankey Decl., ¶¶ 10, 11, Exhs. H, I.) Thus, MGA seeks an order compelling a full and complete response to these interrogatories and an order overruling Mattel's objections.

## IV. ARGUMENT

### A. Mattel Must Produce *All* Responsive Documents

During the parties' meet and confer, Mattel sought clarification of the term "Mattel" because each set of requests for production defined the term slightly differently. In response, by letter dated April 14, 2009, MGA indicated that it will agree to apply one definition of "MATTEL" to all of MGA's requests for production currently at issue. (Mankey Decl., ¶ 9, Exh. G.) Specifically, MGA agreed to define "MATTEL" as follows:

> "MATTEL," "YOU" or "YOUR" means the party Mattel, Inc. and any of its past or present officers, directors, employees, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, and joint venture partners.

(*Id.*) Mattel has not indicated whether it agrees to this definition or whether it intends to withhold any documents from its production as a result of any objection to this definition.

In fact, although Mattel has indicated that it will produce documents responsive to Request for Production Nos. 146, 148, 153, 160, 162, 174, 175, 176, 178, 486, 488, 489 and 491, Mattel did not expressly state that it would produce ***all*** such responsive documents or whether it intends to withhold any documents on the basis of any privilege or objection (including to the definition of Mattel). (Mankey Decl., ¶¶ 10, 11, Exhs. H, I.) To the extent Mattel does not intend to produce all documents, MGA seeks an Order compelling Mattel to produce ***all*** non-privileged documents responsive to the subject requests for production.[2]

**1. Request for Production Nos. 148, 162, 486 and 489**

As to certain specific requests, Mattel has indicated that it will produce documents, but is vague as to the scope of documents it intends to produce in response to those requests. With respect to Request for Production Nos. 148, 162, 486 and 489, Mattel has indicated that it "will produce responsive, non-privileged documents regarding Mattel's ***communications with law enforcement personnel*** that are in Mattel's possession, custody, or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced." (Emphasis added.) (Mankey Decl., ¶ 10, Exh. H.) However, the scope of these requests is broader than just communications with law enforcement personnel. Request Nos. 148 and 486 seek all documents relating to Mattel's involvement and Mattel's agent's knowledge of or participation in the seizure, investigation or search of materials at MGA Mexico. (Mankey Decl., ¶ 11, Exh. I.) Request Nos. 162 and 489 seek all documents relating to Mattel's involvement and Mattel's agent's knowledge of or participation in the seizure by Canadian law enforcement authorities

[2] To the extent Mattel withholds any documents on the basis of privilege, it must provide a privilege log identifying those documents with sufficient detail.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

of a thumb drive from Brisbois. (Mankey Decl., ¶¶ 8, 11, Exhs. F, I.) Thus, MGA seeks all documents responsive to these Requests, and not just the narrowed scope of documents Mattel indicates it will produce and that the Discovery Master already ordered Mattel to produce in his Order No. 6:

> Given Mattel's allegations regarding the theft of its trade secrets, its communications with law enforcement officials, and the overlap between the civil and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a threshold matter, MGA has made a prima facie case that the Requests seeking the documents Mattel provided to law enforcement officials, as well as Mattel's communications with those officials, are reasonably calculated to lead to the discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

(Mankey Decl., ¶ 6, Exh. D, Phase 2 Discovery Matter Order No. 6, p. 11.)

**2. <u>Request for Production No. 154</u>**

It is unclear which documents Mattel will produce in response to Request for Production No. 154, which seeks all documents relating to persons "who had access to the 2004 Sales Plan referred to in paragraph 62" alleged in Mattel's counterclaims. (Mankey Decl., ¶ 8, Exh. F.) This Request is directly relevant to Mattel's claims that its 2004 Sales Plan, which Mattel contends was misappropriated by MGA, contains protectable trade secrets. *See* Cal. Civ. Code § 3426.1(d)(2) (requiring efforts to maintain the "secrecy" of purported trade secrets).

During meet and confer discussions, Mattel requested that MGA limit the temporal scope and definition of the term "access." (Mankey Decl., ¶ 10, Exh. H.) In response, MGA agreed to narrow the request temporally to apply only to documents predating the filing of Mattel's SAAC on July 12, 2007, so long as Mattel confirms that it has no claims relating to the 2004 Sales Plan after this date. (Mankey Decl., ¶ 11, Exh. I.) MGA also clarified that it seeks documents reflecting all persons to whom Mattel gave the ability or permission to access the 2004 Sales Plan, but does not seek information regarding persons who might have had access to the document while it was in the possession of a person or entity other than Mattel, such as government or court personnel, unless that access was given to them by Mattel. (*Id.*)

Documents reflecting the time period before Mattel filed its counterclaims and the people who had access to the 2004 Sales Plan are not only relevant, but critical to MGA's defense because they may show, for example, that Mattel did not maintain the 2004 Sales Plan as confidential and, thus, that it does not contain protectable trade secrets. Thus, Mattel should produce all non-privileged documents responsive to Request No. 154 as narrowed by MGA.

3. **Request for Production No. 178**

With respect to Request for Production No. 178, Mattel has indicated that it will produce non-privileged, responsive documents "relating to the discovery of MGA's thefts of trade secret and other confidential Mattel information . . . ." (Mankey Decl., ¶ 10, Exh. H.) However, the scope of this Request is much broader than that. Request for Production No. 178 seeks documents relating to "any investigation, surveillance, inspection, inquiry, survey or analysis into the activities, including but not limited to electronic and computer related activities," alleged in Mattel's counterclaims. (Mankey Decl., ¶ 11, Exh. I.) Mattel has offered no basis to limit its production, thus, MGA seeks an order compelling Mattel to produce ***all*** documents responsive to this Request.

**B. Mattel Should Be Compelled to Comply with Its Obligations To the Extent It Has Not Done So Before the Hearing on This Motion**

Mattel has agreed to produce non-privileged responsive documents in response to most of MGA's requests for production and/or supplement its responses in writing to confirm that it does not have any additional responsive documents in its possession, custody, or control that have not been produced. (Mankey Decl., ¶ 10, Exh. H.) To the extent Mattel fails to produce these documents and/or provide a written supplemental response confirming that it has produced all documents by the time the Discovery Master rules on the instant Motion, MGA seeks an order compelling Mattel to comply with its obligations within twenty-four hours of the Discovery Master's Order.

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

Mattel will not be prejudiced by such an order given its agreement to provide these documents and responses. Moreover, Mattel has had more than adequate notice of MGA's demands for these documents and written responses to be able to produce these responses and documents immediately. Not only were the requests for production served during Phase 1, but MGA's initial meet and confer letter was sent to Mattel on March 25, 2009. (Mankey Decl., ¶ 8, Exh. F.) Telephonic conferences were then held on March 31, April 13, and April 16, 2009, this motion is being filed on April 20, 2009, and this motion will not be heard until well after that, all of which gives Mattel plenty of time to assemble and produce the relevant documents and written responses that it has agreed to provide. (Mankey Decl., ¶ 12.)

Absent such an order, MGA would be highly prejudiced in the event of Mattel's failure to produce the agreed upon documents and written responses in a timely fashion because MGA would then have to file an entirely new motion to compel, months after having initiated the meet and confer process regarding these requests in March 2009. Indeed, such a failure by Mattel to produce documents and written responses after agreeing to do so would only encourage Mattel to employ such tactics in the future to avoid or delay its discovery obligations at MGA's expense and to MGA's detriment in connection with its ongoing discovery and preparation for trial.

### C. Mattel's Response to Interrogatory No. 1 Is Not An Adequate Response to Interrogatory Nos. 20, 21, 22, 23 or 28

During the meet and confer process, Mattel contended that its response to Interrogatory No. 1 was a complete answer to Interrogatory Nos. 20, 22, 23 and 28, which seek detailed information supporting each of Mattel's counterclaims. (Mankey Decl., ¶¶ 3, 9, Exhs. A, G.) Mattel also objected to these latter Requests on the basis that they are duplicative. (Mankey Decl., ¶ 5, Exh. C.) Although Mattel appears to have abandoned these objections by agreeing to provide further responses to these

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

interrogatories, MGA nonetheless seeks an order that the objections are overruled because Mattel has not expressly withdrawn them.

Interrogatory No. 1 asked Mattel to state all facts and identify all documents that support its contention that Mattel has suffered harm as a result of any act or omission of MGA. (Mankey Decl., ¶ 3, Exh. A.) As discussed below, Mattel's response to Interrogatory No. 1 is not responsive to Nos. 20, 22, 23 or 28.

The California Uniform Trade Secret Act ("CUTSA") defines a "trade secret" as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). The disputed Interrogatories all seek to vet Mattel's trade secret claims by requesting the type of information described by the statute.

Interrogatory No. 20 asks Mattel to identify "with specificity" each alleged trade secret referred to in the SAAC as well as any related documents. (Mankey Decl., ¶ 4, Exh. B.) Likewise, Interrogatory No. 23 seeks the complete factual basis for Mattel's contention that the trade secrets that MGA purportedly stole are protectable. (*Id.*) Finally, Interrogatory Nos. 22 and 28 request the factual bases for Mattel's contention that MGA misappropriated any alleged trade secret and for its counterclaims generally. (*Id.*)

Information responsive to these interrogatories would include, for example, the following types of facts: (1) each type of information that Mattel contends constitutes a trade secret; (2) the independent economic value that Mattel purportedly derives from keeping each of the alleged trade secrets from being generally known to the public; (3) any steps Mattel has taken to ensure the secrecy of the alleged trade

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

8

MGA'S MOTION TO COMPEL RESPONSES TO MGA'S REQUESTS FOR PRODUCTION & SECOND SET OF INTERROGATORIES

672844

EXHIBIT 6 PAGE 38

EXHIBIT 10 PAGE 165

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

secrets; and (4) individuals who had access to these purported trade secrets and whether they were obligated or could be trusted to keep this information confidential. Additionally, because MGA's Second Set of Interrogatories defines the term "factual basis" to include identification of documents and witnesses with relevant information, complete responses would provide this information as well. (Mankey Decl., ¶ 4, Exh. B.)

Mattel's response to Interrogatory No. 1 does not adequately respond to these interrogatories. As an initial matter, Mattel's response does not identify all documents or witnesses related to each of its contentions. (Mankey Decl., ¶3, Exh. A.) Moreover, the CUTSA statute is clear that the term "trade secret" refers to specific information, not simply the documents which might contain that information. *See* Cal. Civ. Code § 3426.1(d). Notwithstanding the fact that Mattel has provided a 20-page list of documents, MGA is not in a position to presume what trade secrets those documents purportedly contain. (Mankey Decl., ¶ 3, Exh. A.) Finally, as the Discovery Master has already ruled in relation to prior discovery disputes, if an interrogatory is truly duplicative of a prior request, the responding party "should be able to respond to the latest interrogatories by cutting and pasting its responses to the prior interrogatories." (Mankey Decl., ¶ 7, Exh. E, Phase 2 Discovery Matter Order No. 17, p. 22 n.10.)

Mattel also objects to Interrogatory No. 22, which asks for the complete factual basis underlying its contention that MGA misappropriated any alleged trade secret, on the basis that it seeks "facts that are known to or in the possession, custody or control" of MGA. (Mankey Decl., ¶ 5, Exh. C.) It is Mattel's burden to identify and establish trade-secret protection over the information that MGA purportedly misappropriated and it is Mattel's obligation to disclose such information in response to MGA's interrogatory. As discussed in further detail below, contention interrogatories are expressly authorized by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(a)(2). Mattel may not limit its discovery obligations by dictating what

information MGA is entitled to receive or by asserting that the facts are already known to MGA.

For the same reasons that MGA is entitled to the information sought by Interrogatories 20, 22, 23 and 28, MGA is also entitled to information regarding each person who has had access to each of Mattel's trade secrets and the dates upon which they had such access, as sought by Interrogatory No. 21. Such information is clearly relevant under the CUTSA statute, which requires efforts to maintain the "secrecy" of purported trade secrets. *See* Cal. Civ. Code § 3426.1(d)(2). A detailed list of individuals who had access (and when they had such access) to Mattel's alleged trade secrets is highly relevant to MGA's defense of Mattel's misappropriation claims as they may demonstrate that Mattel did not take efforts to maintain the secrecy of its purported trade secrets. This information is not provided in Mattel's supplemental response to Interrogatory No. 1 and should be disclosed to MGA. (Mankey Decl., ¶ 3, Exh. A.) Thus, Mattel's response to Interrogatory No. 1 does not fully respond to Interrogatories Nos. 20, 21, 22, 23 and 28.

### D. MGA Is Entitled to a Full and Complete Response to Interrogatory No. 29

Interrogatory No. 29 asks Mattel to describe in detail any estimate or calculation of damages, loss, etc., it purports to have sustained in connection with its counterclaims. (Mankey Decl., ¶ 4, Exh. B.) Even though Mattel has agreed to supplement its response, MGA seeks an order to ensure that Mattel fully and completely responds to this interrogatory.

Mattel initially refused to provide a responsive answer to this request because it claimed that it has not yet completed its calculation of damages and because it seeks information that is the subject of expert analysis and fact discovery from MGA that has not yet been conducted. (Mankey Decl., ¶ 9, Exh. G.) None of these objections absolves Mattel of its duty to provide responsive, non-privileged information that is currently known. The Discovery Master recently ruled that a party "cannot... assert

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

10

672844 MGA'S MOTION TO COMPEL RESPONSES TO MGA'S REQUESTS FOR PRODUCTION & SECOND SET OF INTERROGATORIES

EXHIBIT 6 PAGE 40

EXHIBIT 10 PAGE 167

that the objection [based on expert testimony] permits it to withhold information that is now available to it." (Mankey Decl., ¶ 7, Exh. E, Phase 2 Discovery Matter Order No. 17, p. 21.)

Notwithstanding its ability to supplement its response later, Mattel must still comply with its current discovery obligations to provide the full extent of information relating to its damages estimates and calculations that is currently in its possession, custody or control. *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (holding that plaintiff should provide its assessment of damages in light of the information currently available to it in sufficient detail); *Bathija v. Panoff Pub., Inc.*, 2005 WL 2323298, at *1-2 (D. Alaska September 21, 2005) (granting defendant's motion to compel because plaintiff must provide the specific facts on which it currently possesses and relies upon to support its allegations, even if plaintiff supplements its response at a later date).

Certainly, Mattel has made *some* kind of estimate of damages it contends that it has suffered as a result of the alleged acts of MGA and has *some* evidence to support that estimate. Federal Rule of Civil Procedure 11 requires Mattel to have had some basis for filing a counterclaim alleging damages purportedly caused by MGA. Mattel asserted its counterclaims in 2006 – more than two years ago – and has had ample time to assess its claim for damages. Certain of the information supporting Mattel's damages analysis is necessarily in Mattel's possession, and not MGA's, such as information regarding Mattel's purported lost profits, lost sales, decreased market share, and various other sales, marketing and financial data that may support any other alleged theory of damages. Mattel cannot withhold such evidence and information from MGA simply because Mattel has not completed its own discovery from MGA. MGA is entitled to all such information and evidence currently in Mattel's possession, custody or control, even if it is not final or complete. Thus, Mattel's supplemental response must provide a full and complete response to this interrogatory.

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

C. **Mattel's Boilerplate Objections Should Be Rejected**

In its written objections to Interrogatory Nos. 20, 21, 22, 23, 28 and 29, Mattel also makes a number of improper boilerplate objections (set forth below); none of which is substantiated with any level of detail. Because boilerplate objections are equivalent to "not making any objection at all" and because Mattel abandoned these objections by failing to raise them during the meet and confer process, such objections should be rejected and overruled by the Discovery Master.

Under the Federal Rules of Civil Procedure, "the grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Generic objections that fail to explain the basis for an objection with specificity are routinely rejected in the Central District. The courts have specifically held that "general or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal 2006). Stated another way, "boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). This constitutes waiver.

In fact, the Discovery Master has previously ruled that the failure to provide supporting evidence is fatal to an objection based on a claim of undue burden. (Mankey Decl., ¶ 7, Exh. E, Phase 2 Discovery Master Order No. 17, p. 23 (citing *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.").) The Discovery Master has further ruled that a party cannot complain that interrogatories are unduly burdensome when the request simply seeks information regarding the extent and details of the responding party's claims." (*See id.*)

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

Furthermore, interrogatories that require a responding party to substantiate its contentions are not objectionable on that basis alone. Fed. R. Civ. P. 33(a)(2) ("an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact...."); *see O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 280-281 (C.D. Cal. 1999) (interrogatory asking responding party to describe each injury "which you contend was caused by defendant's conduct" was proper). In fact, the courts have expressly held that under Rule 33, "there is no... automatic rule that an interrogatory must be disallowed merely because it calls for an opinion or contentions." *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997) (citing Wright, Miller & Marcus, Fed. Prac. and Proc.: Civil § 2167 at 247 (2d ed.1994)). Because such interrogatories seek information related to the responding parties own factual and legal contentions, "the burden [is] on the party opposing discovery rather than... the proponent of the contention interrogatories to justify their propoundment." *Id.* at 652. This policy is "consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint...." *Id.*

In response to Interrogatory Nos. 20, 21, 22, 23 28 and 29, Mattel has made various boilerplate objections:

- "unreasonably burdensome, [and] overbroad"
- "duplicative of other discovery requests propounded in this action"
- "compound"[3]

[3] Mattel's "compound" objection is restricted to Interrogatory Nos. 28 and 29. As with prior discovery disputes, the Discovery Master should reject these objections on the ground that such interrogatories "refer to one common theme and a common group, ...count as a single interrogatory," and are therefore proper. (Mankey Decl., ¶ 7, Exh. E, Phase 2 Discovery Matter Order No. 17, p. 21-22 (citing *Swackhammer v. Sprint Corp PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ("[a]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question")).)

- "calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges"
- "calls for the disclosure of confidential and/or proprietary information"
- "purports to require Mattel to summarize all facts on" one or more subjects

(Mankey Decl., ¶ 5, Exh. C.) In doing so, Mattel fails to:

- explain how a particular interrogatory is burdensome or overbroad;
- identify other discovery requests previously propounded by MGA that purportedly seek the same information;
- explain how a request is compound and, if true, why that is improper;
- describe how the attorney-client privilege or work-product doctrines are implicated by the interrogatory;
- articulate what Mattel means by "other applicable privileges;" or
- express how the interrogatory calls for the production of confidential or proprietary information.

Mattel's objection based on confidential and proprietary information is particularly frivolous because Mattel acknowledges in its objections that the parties have stipulated to, and the Court has entered, a Protective Order sufficient to protect these interests. (Mankey Decl., ¶ 5, Exh. C.) The applicable case law is clear that such protective orders alleviate any plausible concerns Mattel may have with respect to confidentiality. *See, e.g., Putnam v. Eli Lilly and Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (a protective order "can strike the appropriate balance between the need for the information and the privacy concerns" of a party opposing discovery); *Keith H. v. Long Beach Unified School District*, 228 F.R.D. 652, 658 (C.D. Cal. 2005) (compelling production of records in light of redactions and "a protective order to minimize any invasion of the students' privacy rights"). Accordingly, the parties to this action have already produced volumes of documents containing "confidential and/or proprietary information" under the designations "Confidential" and

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

14

MGA'S MOTION TO COMPEL RESPONSES TO MGA'S REQUESTS FOR PRODUCTION & SECOND SET OF INTERROGATORIES

672844

EXHIBIT 6 PAGE 44
EXHIBIT 10 PAGE 171

"Confidential – Attorneys' Eyes Only" as provided in the Protective Order. The interrogatories at issue here are no different.

## V. CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Discovery Master grant this motion in its entirety and order Mattel to: (1) produce documents and things responsive to MGA's Second Set of Requests for Documents and Things and Fifth Set of Requests for Documents and Things, and/or provide written confirmation that Mattel has no additional documents in its possession, custody, or control responsive to these requests, which have not been produced; and (2) provide full and complete supplemental responses to MGA's Second Set of Interrogatories.

Dated: April 20, 2009

Patricia L. Glaser
Joel N. Klevens
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

Russell J. Frackman
MITCHELL, SILBERBERG & KNUPP, LLP

By: /s/ Joel N. Klevens
Joel N. Klevens
Attorneys for the MGA Parties for Phase Two

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

15
MGA'S MOTION TO COMPEL RESPONSES TO MGA'S REQUESTS FOR PRODUCTION & SECOND SET OF INTERROGATORIES
672844

EXHIBIT 6 PAGE 45
EXHIBIT 10 PAGE 172

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On April 20, 2009, I served the foregoing document described as:

**MGA ENTERTAINMENT, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS FROM MGA'S SECOND AND FIFTH SETS OF REQUESTS FOR PRODUCTION AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☒ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒ (BY EMAIL) I caused such documents to be delivered via email to the addressee(s).

☐ (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 20rd day of April, 2009, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

ADIL M. KHAN

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**SERVICE LIST**

Robert C. O'Brien
Discovery Master
Arent Fox LLP
555 West 5th St., Suite 4800
Los Angeles, CA 90013
**[By Personal Service on April 21, 2009]**

John Quinn, Esq.
(johnquinn@quinnemanuel.com)
Jon D. Corey, Esq.
(joncorey@quinnemanuel.com)
Michael T. Zeller, Esq.
(michaelzeller@quinnemanuel.com)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
**[By Email Service]**

Russell J. Frackman, Esq.
(rjf@msk.com)
Patricia H. Benson, Esq.
(phb@msk.com)
Mitchell, Silberberg & Knupp, LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90067
(310) 312-2000
**[By Email Service]**

Thomas J. Nolan, Esq.
(tnolan@skadden.com)
Raoul D. Kennedy, Esq.
(rkennedy@skadden.com)
Jason D. Russell, Esq.
(Jason.russell@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
(213) 687-5000
**[By Email Service]**

Mark E. Overland, Esq.
moverland@obsklaw.com
Alexander H. Cote, Esq.
acote@obsklaw.com
Overland Borenstein Scheper & Kim LLP
601 W. 5th Street, 12th Floor
Los Angeles, CA 90017

**[By Email Service]**

# EXHIBIT 11
# TO DECLARATION OF
# ANDREW C. SPITSER

EXHIBIT 11
TO DECLARATION OF
ANDREW C. SPITSER

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>vs.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-9059 & CV 05-2727 |
| AND CONSOLIDATED ACTIONS | **DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**<br>MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS FROM MGA'S SECOND AND FIFTH SETS OF REQUESTS FOR PRODUCTION AND RESPONSES TO MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.<br>[DECLARATION OF DIANE C. HUTNYAN SUBMITTED CONCURRENTLY]<br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br>Phase 2:<br>Disc. Cut-off: December 11, 2009<br>Pre-trial Conf.: March 1, 2010<br>Trial Date: March 23, 2010 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

ARGUMENT ..... 7

I. MGA'S PRECIPITOUS FILING SHOULD BE SUMMARILY REJECTED ..... 7

A. As It Now Concedes, Most Issues Raised By MGA Have Already Been Resolved ..... 7

B. MGA's Requested Relief as to Its Interrogatories Is Inconsistent With Its Own Positions ..... 10

C. It Would Be Improper To Overrule Mattel's Objections ..... 12

II. AS TO THE REQUESTS IN DISPUTE, MGA'S MOTION SHOULD BE DENIED ON THE MERITS ..... 14

1. Requests for Production No. 148, 162, 486, and 489 ..... 14

2. Request for Production No. 178 ..... 16

3. Request for Production No. 154 ..... 17

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page

## Cases

Assam v. Assam-Metzler, 2002 WL. 31236300 (N.D.Ill. Oct. 1, 2002) .......... 9

Global Polymer Industries, Inc. v. C & A Plus, Inc., 2006 WL. 1344088 (D.S.D. May 15, 2006) .......... 9

Hua v. Boeing Corp., 2009 WL. 279018 (W.D.Wash. Feb. 5, 2009) .......... 10

New Hampshire v. Maine, 532 U.S. 742 (2001) .......... 13

Regan-Touhy v. Walgreen Co., 526 F.3d 641 (10th Cir. 2008) .......... 18

Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597 (9th Cir. 1996) .......... 13

07975/2908843.1

-ii-

Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 50

EXHIBIT 11 PAGE 177

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Preliminary Statement**

MGA's motion is premature and unnecessary. The requirement that parties meet and confer before filing discovery motions is not make-work -- the goal, where it can be achieved, is to resolve contemplated motions *before* they are brought, so the expense of motion practice and the burden it imposes on the Discovery Master and the Court is limited to genuine disputes. MGA's filing is designed to frustrate this process; granting it will reward those efforts.

After waiting months following the lifting of the stay on Phase 2 discovery (contradicting any current claims of urgency), MGA sent Mattel a six-page letter seeking to meet and confer about, by MGA's numbering, twenty-one requests for production and six interrogatories. The requests and interrogatories purport to seek, among other things, a "detailed" and "complete" description of the factual basis of each and every counterclaim Mattel has alleged, including the identification of "all" pertinent documents and witnesses, a "detailed" description of the "complete factual basis" for numerous Mattel contentions, again including the identification of "all" pertinent documents and witnesses, "detailed" estimates of all forms of damages incurred by Mattel, including "all" relevant facts, documents and witnesses, and vast quantities of documents responsive to over a dozen requests for production. The burden of compliance with such requests is clearly substantial. MGA specifically requested that Mattel supplement its responses and provide this information by May 14, 2009 -- more than two weeks from today.

Mattel met and conferred with MGA on these issues repeatedly. Of the twenty-one requests for production MGA initially put at issue, Mattel agreed in writing, to provide all documents responsive to eleven of them. Mattel also agreed, in writing, to provide all documents responsive to a narrowed version of eight additional requests, and addressed the remaining two requests such that MGA did not move on them. Mattel also agreed to supplement its responses to every single interrogatory MGA put

07975/2908843.1

-1- Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 51

EXHIBIT 11 PAGE 178

at issue. And Mattel agreed to make every effort to complete its production by the date MGA demanded. MGA now suggests that Mattel's positions were unclear in certain respects, but at no point did MGA request clarification or did Mattel refuse to provide it.

In fact, MGA did not even respond to Mattel's last letter on the subject. Instead, it filed this motion out of the blue, weeks before the agreed date for supplementation. MGA cannot demand compliance, obtain agreements to comply and then, before the deadline even approaches, short-circuit the entire process through a premature motion to compel.

MGA apparently recognized this two days ago. Two days ago, a week *after* it filed its motion, on the day Mattel's opposition was originally due, MGA finally responded to Mattel's last letter on the subject -- sent *before* MGA filed its motion -- that if the parties can reach agreement as to six requests for production where there may be ongoing disputes, "***MGA will withdraw its pending motion to compel,***" reserving its right to move to compel *after* Mattel voluntarily supplements its responses as agreed.[1] This motion to compel, as MGA now concedes, never should have been brought. MGA's gamesmanship has caused hours upon hours of needless work and delay -- hours that could have been spent working on the supplemental responses MGA has demanded.

As to the few requests where there is a genuine dispute on the merits, MGA's motion should be denied. MGA's Requests for Production Nos. 148, 162, 486, and 489 seek documents relating to Mattel's and its counsel's knowledge of seizures by Mexican and Canadian law enforcement authorities of Mattel trade secrets in MGA's possession. But such knowledge is not discoverable: this is not percipient witness information. MGA unreasonably refused to restrict the requests to percipient

[1] See April 27, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 2, Hutnyan Dec., Exh. 6.

07975/2908843.1

-2- Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 52

EXHIBIT 11 PAGE 179

knowledge, rendering them overbroad and improper. Similarly, in response to MGA's Request No. 154, Mattel offered documents about a trade secret up to the point of its alleged theft. MGA rejected this proposal (while conceding that the request, as drafted, is improper), but offers no reason or authority as to why it is entitled to the balance of an overbroad request. And with respect to Request No. 178, after MGA objected to the scope of Mattel's proposed production, Mattel agreed to broaden the scope in the way MGA wanted. Instead of indicating to Mattel what, if anything, was unsatisfactory, MGA responded by filing this motion.

**Statement of Facts**

On March 25, 2009, MGA wrote Mattel a six-page meet-and-confer letter identifying twenty-one requests for production and six interrogatories, the responses to which MGA asked Mattel to supplement.[2] Mattel promptly met and conferred as requested on March 31, and the dispute as to six of the Requests was resolved quickly. As to four of them, MGA had overlooked that Mattel had already agreed to produce responsive, non-privileged documents.[3] As to two more, Mattel pointed out that it had already provided the requested information in its Initial Disclosures and in earlier document productions and interrogatory responses.[4] This left fifteen requests for production and the six named interrogatories at issue.

The parties continued to meet and confer on April 13 and April 16, with confirming letters on April 14, April 16, April 17, and April 20.[5] Through this process, Mattel and MGA resolved most of the discovery issues by April 16. Mattel informed

[2] See March 25, 2009 letter from Caroline H. Mankey to Jon D. Corey, Hutnyan Dec., Exh. 4.

[3] See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 2, Hutnyan Dec., Exh. 1.

[4] Id.

[5] See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, Hutnyan Dec., Exh. 5; April 16, 2009 letter from Diane C. Hutnyan to Caroline H. (footnote continued)

07975/2908843.1

-3- Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 53

EXHIBIT 11 PAGE 180

MGA by letter that day that it would supplement all six named interrogatories at issue.[6] Mattel also agreed to supplement its responses to numerous requests for production (Nos. 146, 148, 153, 160, 162, 174-178 in the Second Set, and Nos. 468, 488, 489, 491 in the Fifth Set), which it did the next day.[7] In its written supplemental responses, Mattel responded that it would produce documents responsive to fourteen of the fifteen remaining requests. As to six of these fourteen, Mattel agreed to produce all responsive, non-privileged documents with no limitations as to the scope of the request.[8] For three others -- Nos. 153, 176, and 177 -- Mattel agreed to produce all non-privileged documents responsive to slightly narrowed versions of the Requests.[9] MGA has raised no issue with respect to those limitations. Nor did MGA object to or challenge Mattel's agreement to supplement its interrogatory responses in any way. Thus, by April 17, three days before this motion was filed, the dispute as to all but six requests for production had been amicably resolved. By letter that day, MGA expressly

---

Mankey, at 2, Hutnyan Dec., Exh. 1; April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1, Hutnyan Dec., Exh. 3.

[6] See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3, Hutnyan Dec., Exh. 1.

[7] Id.; see Mattel's Second Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 146, 148, 153, 160, 162, 174-178), dated April 17, 2009, Hutnyan Dec., Exh. 8; Mattel's Supplemental Responses to MGA's Fifth Set of Requests for Production (Nos. 468, 488, 489, 491), dated April 17, 2009, Hutnyan Dec., Exh. 9.

[8] Those are, specifically, Nos. 146, 160, 174, 175, 488, and 491. See Mattel's Second Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 146, 148, 153, 160, 162, 174-178), dated April 17, 2009, Hutnyan Dec., Exh. 8; Mattel's Supplemental Responses to MGA's Fifth Set of Requests for Production (Nos. 468, 488, 489, 491), dated April 17, 2009, Hutnyan Dec., Exh. 9.

[9] See Mattel's Second Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 146, 148, 153, 160, 162, 175-178), dated April 17, 2009, Hutnyan Dec., Exh. 8.

"acknowledge[d] the steps that Mattel has taken in agreeing to provide further written responses and documents responsive to MGA's discovery requests."[10]

Mattel also agreed to produce non-privileged documents responsive to a specifically identified, narrowed request as to five of the six remaining requests for production.[11] MGA had requested that Mattel supplement its discovery by May 14;[12] Mattel committed to endeavor to do so in that time frame.[13] Only as to Request No. 154, which is defective on its face, did Mattel not commit to produce responsive documents. Even as to that request, Mattel continued to work with MGA to try to narrow it appropriately and come to an agreement.[14]

MGA requested some clarifications from Mattel by letter dated April 17, 2009.[15] In a letter emailed and faxed to MGA's counsel at approximately 12:15 and 12:30 p.m. on April 20,[16] Mattel provided those clarifications, advising, *inter alia*, that where Mattel agreed to produce responsive documents in a stated category, it was agreeing to produce all of the responsive documents in the category.[17] Mattel also offered to produce documents responsive to a narrowed version of Request No. 154 -- the only request for which Mattel had not already provided such a commitment -- and explained why the narrowed scope of Request Nos. 148, 154, 162, 178, 486, and 489

---

[10] See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 1, Hutnyan Dec., Exh. 2.

[11] Id.

[12] See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 1, Hutnyan Dec., Exh. 5.

[13] See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3, Hutnyan Dec., Exh. 1.

[14] Id. at 2-3; See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 2, Hutnyan Dec., Exh. 2.

[15] See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, Hutnyan Dec., Exh. 2.

[16] See April 20, 2009 email from Diane C. Hutnyan to Caroline H. Mankey, Hutnyan Dec., Exh. 11; April 20, 2009 fax confirmation, Hutnyan Dec., Exh. 12.

that Mattel proposed was proper.[18] As of April 20, the dispute as to all of the interrogatories and all but six requests had thus been resolved, and the parties appeared well on their way towards resolving the remaining six requests.

Nevertheless, instead of responding to Mattel's letter to resolve the few remaining disputes, MGA filed its motion to compel five hours after receiving Mattel's clarifications.[19] MGA purports to move on every interrogatory in its initial request and on eleven or more of its requests for production (MGA's notice of motion lists eleven requests, but its motion discusses a total of 16).[20] MGA even moves on a request as to which Mattel long ago agreed, in writing, to produce responsive, non-privileged documents.[21]

A week later, on April 27, on the day Mattel's Opposition was originally due, MGA finally responded to Mattel's April 20 letter.[22] MGA concedes in the letter that "It appears that only a few issues remain in dispute."[23] Effectively conceding that the motion it filed was both unduly broad and premature, MGA offered to withdraw its motion entirely if those few issues (regarding the six requests for production) were resolved.[24] But it has refused to consider reasonable modifications to the scope of

---

[17] See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1, Hutnyan Dec., Exh. 3.

[18] Id. at 1-2.

[19] Hutnyan Dec., ¶¶ 12, 13, and 14. See also April 20, 2009 email, Hutnyan Dec., Exh. 13; April 20, 2009 email, Hutnyan Dec., Exh. 11; April 20, 2009 fax confirmation, Hutnyan Dec., Exh. 12.

[20] Compare Notice of Motion at 1:5-7 with Motion at 4:4-11. The Motion discusses Requests Nos. 146, 148, 160, and 162 (Second Set), and Request No. 491 (Fifth Set), none of which is listed in the Notice of Motion.

[21] See Mattel, Inc.'s Supplemental Objections and Responses to MGA Entertainment Inc.'s Second Set of Requests for Production of Documents and Things In Case No. 05-2727, dated June 22, 2007, at 43, Hutnyan Dec., Exh. 7 (No. 158).

[22] See April 27, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, Hutnyan Dec., Exh. 6.

[23] Id. at 1.

[24] Id. at 2.

those six requests.[25] Nevertheless, to clarify Mattel's position and ensure that MGA receives all documents to which it is even arguably entitled, Mattel has served today supplemental responses reflecting the documents responsive to five of those six requests.[26]

**Argument**

## I. MGA'S PRECIPITOUS FILING SHOULD BE SUMMARILY REJECTED

### A. As It Now Concedes, Most Issues Raised By MGA Have Already Been Resolved

As MGA conceded in its letter of two days ago, "It appears that only a few issues remain in dispute."[27] MGA then identified a handful of issues -- the definition of "Mattel," and six specific Requests for Production -- that it believes are still in dispute following Mattel's April 20 letter. MGA also wrote: "In the event that we can reach agreement on these remaining issues, MGA will withdraw its pending motion to compel."[28] Yet MGA chose to burden Mattel and the Discovery Master with a motion addressing far more than those few disputed requests, even though the dispute as to the balance of the issues in this motion was resolved well before the motion was filed. Indeed, MGA did not even acknowledge Mattel's April 20 letter in its motion, nor did it recognize that Mattel's letter of April 17 itself resolved most of the issues in MGA's motion. MGA's conduct has forced Mattel to spend the last week briefing resolved issues. It is unjustifiable.

---

[25] Id. at 1-2.

[26] See Mattel's Third Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 148, 162, and 178) In Case No. 05-2727, dated April 28, 2009, Hutnyan Dec., Exh. 21; Mattel's Second Supplemental Responses to MGA's Fifth Set of Requests for Production (Nos. 486 and 489), dated April 28, 2009, Hutnyan Dec., Exh. 22.

[27] See April 20, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 1, Hutnyan Dec., Exh. 3.

[28] Id., at 2.

MGA even had the audacity to assert in its motion that Mattel did not respond to important issues that were in fact addressed in the April 20 letter. For example, MGA acknowledges in its motion that Mattel agreed to produce documents responsive to sixteen of the Requests -- requests it still chose to move on -- but alleges that Mattel "did not expressly state that it would produce ***all*** such responsive documents or whether it intends to withhold any documents on the basis of any privilege or objection (including the definition of Mattel)." (Motion at 4:4-9). In fact, Mattel made that very representation in the April 20 letter that MGA chose to ignore.[29] MGA also asserts, with respect to Interrogatory No. 29, that "Mattel initially refused to provide a responsive answer to this request because it claimed that it has not yet completed its calculation of damages and because it seeks information that is the subject of expert analysis and fact discovery from MGA that has not yet been conducted." (Motion at 10:23-26). However, MGA does not mention what happened next: Mattel agreed to supplement its Response to Interrogatory No. 29, as it agreed to supplement every other named interrogatory at issue, days before MGA's motion was filed.[30]

Mattel specifically confirmed to MGA that it intended to produce all responsive documents by May 14, 2009, the date MGA had proposed, days before MGA filed its motion.[31] Mattel will still attempt to meet this commitment, although this unnecessary motion practice has obviously caused delay. But in any case, there is, at present, no discovery dispute with respect to virtually all of the items MGA has

---

[29] See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1, Hutnyan Dec., Exh. 3.

[30] See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3, Hutnyan Dec., Exh. 1. It is true that Mattel has not yet completed its calculations of damages; it would be impossible to do that at this point since MGA and related third parties have been obstructive in providing information about their financial transactions. The response will necessarily be incomplete at this point, but it will be supplemented.

[31] See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3, Hutnyan Dec., Exh. 1.

moved on, and there is no basis to grant a motion to compel discovery where there is no actual dispute. See Global Polymer Industries, Inc. v. C & A Plus, Inc., 2006 WL 1344088, *2 (D.S.D. May 15, 2006) (denying motion to compel as to Interrogatories and Requests for Production that were "not in dispute"); Assam v. Assam-Metzler, 2002 WL 31236300 (N.D.Ill. Oct. 1, 2002) (denying motion to compel where "[t]he discovery dispute is not a dispute but, apparently, a miscommunication."). MGA should not be rewarded for its misconduct by granting, as it improperly demands, an order compelling production of all documents and interrogatory responses "within 24 hours."

In fact, MGA should be sanctioned for its misconduct. Mattel met and conferred in good faith with MGA to provide it with the discovery it was entitled to receive. As MGA now admits, the parties had resolved the majority of the requests for production and all of the interrogatories well before MGA filed its motion. MGA then brought its overbroad motion anyway, only agreeing to withdraw it (if Mattel would capitulate as to improper requests) after Mattel had incurred the substantial costs of preparing its opposition as to the already-resolved issues. The Discovery Master has "admonished" the parties "to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion."[32] Such good faith "cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means."[33] "The meet and confer requirements . . . are intended to ensure that parties have an inexpensive and expeditious opportunity to resolve discovery disputes ***and that only genuine disagreements are brought before the Court.***" Hua v. Boeing Corp., 2009 WL 279018, *1 (W.D.Wash. Feb. 5, 2009) (emphasis added).

---

[32] See Discovery Master Order No. 3, dated March 10, 2009, at n. 12, Hutnyan Dec., Exh. 20.

MGA has willfully violated these requirements. Blessing its tactics will render the meet-and-confer process utterly pointless: there is no reason to spend time discussing the issues, much less voluntarily agreeing to provide discovery, if a motion to compel is going to follow in any case before the agreed due date. MGA should be ordered to reimburse at least a portion of the costs incurred by Mattel in opposing this motion, in the amount of $3,500, to deter such conduct in the future and to encourage good faith resolution of discovery disputes without costly intervention by the Discovery Master.[34]

**B. MGA's Requested Relief as to Its Interrogatories Is Inconsistent With Its Own Positions**

Although Mattel has agreed to provide supplemental responses to the interrogatories at issue in this motion, the flagrant inconsistencies in MGA's positions must be addressed. MGA seeks to uneven the playing field by compelling exhaustive responses to interrogatories that are far beyond what MGA has argued is appropriate in this litigation. Indeed, MGA has vehemently resisted attempts by Mattel to seek comparable discovery, and it has prevailed in those attempts.

MGA seeks to compel contention interrogatories asking for "all facts" (e.g., Nos. 28 and 29) and "the complete factual basis" (e.g., Nos. 22, 23, and 28) behind Mattel's contentions and Counterclaims. Yet MGA itself has argued that such contention interrogatories are "inherently improper," attacking "Mattel's attempt to compel MGA to provide a narrative account of every stitch of evidence supporting its defense of this action would render Mattel's contention interrogatories unduly burdensome and 'inherently improper.'"[35] Instead, MGA has urged that a party satisfies

---

[33] Id. at 11.

[34] See Hutnyan Dec., ¶ 24.

[35] See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, (footnote continued)

its discovery obligations by setting forth "sufficient facts, identified persons with knowledge, and identified documents to support [its] contentions."[36] Likewise, when Mattel moved to compel MGA to respond to interrogatories about MGA's trade dress contentions with complete answers, pointing to its own 133-page response to MGA's massive Interrogatory No. 1, MGA claimed it had satisfied its discovery obligations by providing Mattel with the "principal facts supporting its contentions."[37]

The Discovery Master shed light on this issue just yesterday, in his Discovery Matter Order No. 22. In that Order, the Discovery Master found that MGA complied with Rule 33 by "appris[ing] Mattel of the principal and material facts supporting MGA's trade dress claim."[38] The Discovery Master explained that "[n]othing more is required of the MGA Parties. There is always a greater degree of specificity that could be provided by an interrogatory response. If Mattel wishes to obtain the details behind each and every fact specified in the response to Interrogatory No. 50, Mattel may depose MGA's person most knowledgeable regarding these issues under Federal Rule of Civil Procedure 30(b)(6)."[39]

Mattel has agreed to provide supplemental responses to the MGA interrogatories at issue in this motion. Mattel fully intends to provide a reasonable supplementation that includes a fair recitation of responsive information of which it is aware at the time of supplementation. Once MGA receives those responses, if it feels

---

41, 42, 43, 44, 46, 47, 48, 49 and 50) by the MGA Parties, dated December 31, 2007, at 3, Hutnyan Dec., Exh. 17.

[36] See Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated February 15, 2008, at 17-18, Hutnyan Dec., Exh. 18.

[37] See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) by the MGA Parties, dated December 31, 2007, at 30, Hutnyan Dec., Exh. 17.

[38] Discovery Matter Order No. 22, dated April 28, 2009, at 53, Hutnyan Dec., Exh. 15.

they are inadequate Mattel will gladly meet and confer to address any such concerns. But MGA's demand that all of Mattel's objections be overruled *ex ante* -- and its demand that Mattel be held to a higher standard than MGA -- is improper. Mattel has never argued that every fact that could conceivably be responsive must be recited, chapter and verse, in an interrogatory response. Yet the blanket order that MGA demands could be misconstrued to require just that. If MGA seeks further information after Mattel provides the supplemental responses to which it has agreed, the parties (or the Discovery Master) can work out an approach that takes account of previous rulings in this case about how such interrogatories should be answered, and that provides for an even playing field.

**C. <u>It Would Be Improper To Overrule Mattel's Objections</u>**

As discussed, MGA seeks a blanket order overruling all of Mattel's objections, despite Mattel's voluntary agreement to provide discovery. Such an order would be improper.

As to the interrogatories, to the extent MGA actually seeks to require Mattel to recite the details of virtually every fact in this case in an interrogatory response, as it appears to demand, Mattel's undue burden objection is well taken. Mattel will supplement in good faith, but should not be held to a higher standard than MGA itself.

Also, Mattel's objection that it reserves the right to supplement its responses in the future, including based on expert discovery, is valid and does not render the responses inadequate, as the Discovery Master has ruled.[40] Mattel does not intend to withhold presently-known information based on this objection, but it is entitled under the Rules to supplement its responses as appropriate.

---

[39] <u>Id.</u>

[40] <u>See</u> Discovery Master Order No. 22, dated April 28, 2009, at 47, Hutnyan Dec., Exh. 15.

MGA apparently seeks to overrule even Mattel's privilege objections (Mtn. at 14:1-3), yet that would obviously be improper. MGA conceded as much during the meet and confer.[41] Mattel has agreed to produce specified responsive, non-privileged documents, and to respond to the interrogatories without waiving any applicable privilege. MGA offers no basis to "overrule" such legitimate objections.

MGA also seeks to overrule Mattel's "compound" objection to the interrogatories. (Motion at 13:22.) This too should be denied. Mattel is willing to answer the interrogatories now at issue as discussed, but they are in fact compound -- many of them count as far more than one interrogatory under the Rules. As the prior Discovery Master has held, interrogatories that address several discrete issues, such as discrete legal contentions or factual allegations, consist of discrete subparts, each of which counts as a discrete interrogatory.[42] MGA sought and obtained this legal ruling to avoid Mattel discovery; it is now estopped from arguing otherwise.[43] In any event, it would be improper and premature to address this Mattel objection (and Mattel's other objections) now in light of Mattel's agreement to respond to the interrogatories -- again, there is no current dispute that calls for a ruling. Mattel has agreed to supplement by an agreed date. MGA's motion seeking to compel those very responses is unripe.

---

[41] See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, Hutnyan Dec., Exh. 5.

[42] See Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories: Denying Mattel's Motion to Compel Interrogatory Responses, dated September 5, 2007, at 8; Hutnyan Dec., Exh. 16.

[43] The doctrine of judicial estoppel precludes a party from obtaining a ruling from the court and then attempting to gain advantage by taking a contrary position in the litigation. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The doctrine protects the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id.; see also Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 603 (9th Cir. 1996) (judicial estoppel "enables a court to protect itself from manipulation.").

## II. AS TO THE REQUESTS IN DISPUTE, MGA'S MOTION SHOULD BE DENIED ON THE MERITS

Mattel has met and conferred extensively with MGA to resolve the six remaining requests for production, and offered productions in response to narrowed requests. Neither in those meet and confer discussions nor in its motion has MGA justified the broader discovery it seeks or explained to Mattel why the production it has offered is inadequate. The motion to compel additional production in response to these Requests should be denied.

### 1. Requests for Production No. 148, 162, 486, and 489

These requests all relate to the seizures of Mattel trade secrets in MGA's possession in Mexico and Canada. They provide:

Request for Production No. 148: All DOCUMENTS REFERRING OR RELATING TO MATTEL's involvement in the seizure of materials at the facilities of MGAE de Mexico, S.R.L, de C.V. in Mexico City by Mexican authorities.

Request for Production No. 162: All DOCUMENTS REFERRING OR RELATING TO MATTEL's involvement in the seizure by Canadian law enforcement authorities of a thumb drive from BRISBOIS referenced in paragraph 75 of YOUR COUNTERCLAIMS.

Request for Production No. 486: All DOCUMENTS REFERRING OR RELATING TO YOUR or YOUR attorney's or agent's knowledge of or participation in the investigation or search of MGAE de Mexico, S.R.L. de C.V, in Mexico City.

Request for Production No. 489: All DOCUMENTS REFERRING OR RELATED TO YOUR or YOUR attorney's or agent's knowledge of or participation in the seizure of Brisbois' thumb drive by Canadian law enforcement.

Aspects of these requests are unobjectionable -- in fact, most responsive documents have already been produced, as Mattel has consistently advised MGA.[44] Mattel has served supplemental responses reciting exactly what it has agreed to, and will, produce, including:

Request for Production No. 148: responsive, non-privileged documents that refer or relate to Mattel's involvement, if any, in the seizure of materials at the facilities of MGAE de Mexico, S.R.L. de C.V. in Mexico City by Mexican authorities.[45]

Request for Production No. 162: responsive, non-privileged documents referring or relating to Mattel's involvement, if any, in the seizure by Canadian law enforcement authorities of a thumb drive from BRISBOIS.[46]

Request for Production No. 486: responsive, non-privileged documents referring or relating to Mattel's participation, if any, in the search of MGAE de Mexico, S.R.L. de C.V. in Mexico City, as well as Mattel's communications with Mexican law enforcement personnel.[47]

Request for Production No. 489: responsive, non-privileged documents referring or reflecting Mattel's participation, if any, in the seizure of Brisbois' thumb drive by Canadian law enforcement, as well as regarding Mattel's communications with Canadian law enforcement personnel.[48]

---

[44] See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1, Hutnyan Dec., Exh. 1; April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 1, Hutnyan Dec., Exh. 3.

[45] See Mattel's Third Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 148, 162, and 178) In Case No. 05-2727, dated April 28, 2009, at 4-5, Hutnyan Dec., Exh. 21.

[46] Id. at 5-6.

[47] See Mattel's Second Supplemental Responses to MGA's Fifth Set of Requests for Production (Nos. 486 and 489), dated April 28, 2009, at 5, Hutnyan Dec., Exh. 22.

[48] Id. at 6.

07975/2908843.1

-15-

Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 65

EXHIBIT 11 PAGE 192

Thus, Mattel has agreed to provide nearly all of what MGA seeks. However, two categories of documents sought by these requests should be denied.

First, the requests are defective and overbroad in asking for items relating to Mattel's agents and attorneys' "knowledge" without any reasonable temporal limitation. Obviously, many Mattel agents and attorneys, including outside counsel, *now* know many facts about the seizure of the thumb drive and the search of MGA Mexico. But this non-percipient, post-event knowledge is irrelevant, and searching for it would require a burdensome review of countless files, potentially including those of various outside Mattel counsel. MGA cannot justify its demand that Mattel's lawyers search for documents relating to their non-percipient knowledge, virtually all of which will be privileged or protected work product anyway. These request for documents reflecting Mattel's and its agents' and attorneys' "knowledge" should be rejected.

Second, as to Request No. 486, the demand that Mattel produce all documents relating to its and its counsel's knowledge of or participation in the "investigation" of MGA Mexico is vague and overbroad. Mattel does not even know what "investigation" MGA is referring to, let alone know how it might identify responsive documents or why they might be relevant. Mattel has already produced, pursuant to the Discovery Master's Order, over 3000 pages of documents consisting of, among other things, communications with law enforcement.[49] MGA has never explained the relevance of the unidentified additional "investigation" documents it now seeks. Mattel's supplemental responses provide MGA with all the documents to which it is entitled. Nothing further should be compelled.

**2. <u>Request for Production No. 178</u>**

Here, MGA selectively quotes Mattel's correspondence in order to manufacture a non-existent dispute. MGA's Request No. 178 seeks "All DOCUMENTS REFERRING OR RELATING TO any investigation, surveillance,

[49] <u>See</u> Hutnyan Dec., ¶25.

07975/2908843.1

-16-

Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 66

EXHIBIT 11 PAGE 193

inspection, inquiry, survey or analysis into the activities, including but not limited to electronic and computer related activities, alleged in YOUR COUNTERCLAIMS."[50] MGA claims that the Discovery Master must intervene because Mattel has only agreed to produce non-privileged, responsive documents relating to the discovery of MGA's thefts of trade secret and other confidential Mattel information . . . ." (Motion at 6:4-10, citing Mankey Decl. ¶ 10, Exh. H). MGA's sole complaint is that the language does not encompass everything "alleged in Mattel's counterclaims." (Motion at 6:14-15). But MGA's quote is incomplete and does not reflect Mattel's complete agreement. The text of Mattel's April 20, 2009 letter -- omitted by MGA from the quote in favor of an ellipsis -- shows that Mattel agreed to *exactly* what MGA seeks: Mattel agreed to produce "all responsive, non-privileged documents relating to the discovery of MGA's thefts of trade secrets and other Mattel confidential information, **as well as other wrongful conduct alleged in Mattel's Counterclaims.**"[51] There is no dispute here. And to avoid any possible ambiguity, Mattel has amended its responses to confirm that it will produce "responsive, non-privileged documents relating to the discovery of MGA's thefts of trade secret and other confidential Mattel information, as well as other wrongful conduct alleged in Mattel's Counterclaims."[52] There is nothing to compel. MGA's motion as to Request No. 178 should be denied.

**3. Request for Production No. 154**

Request No. 154 seeks "All DOCUMENTS REFERRING OR RELATING TO PERSONS who had access to the 2004 Sales Plan referred to in

[50] See MGA's Second Set of Requests for the Production of Documents and Things in Case No. 05-2727, dated March 27, 2007, Hutnyan Dec., Exh. 14.

[51] See April 20, 2009 letter from Diane C. Hutnyan to Carol H. Mankey, at 2 (emphasis added), Hutnyan Dec., Exh. 3.

[52] See Mattel's Third Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Requests for Production of Documents and Things (Nos. 148, 162, and 178) In Case No. 05-2727, dated April 28, 2009, at 7, Hutnyan Dec., Exh. 21.

07975/2908843.1

-17- Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 67

EXHIBIT 11 PAGE 194

paragraph 62 of YOUR COUNTERCLAIMS." Mattel sought repeatedly to reach agreement with MGA as to a revised version of this overbroad request, but MGA refused. MGA now agrees that the Request, as phrased, is overly broad.[53] Having rejected Mattel's offers, MGA must live with its flawed phrasing, and its motion should be denied. Regan-Touhy v. Walgreen Co., 526 F.3d 641, 650 n.6 (10th Cir. 2008) (affirming denial of motion to compel as overbroad because "it is the parties' obligation to frame their own discovery requests and to seek to narrow any disputes with opposing counsel; the district court is obliged only to rule on the requests for enforcement or protection eventually presented to it, not to do the parties' work for them by editing discovery requests until they comply with the Federal Rules of Civil Procedure."). Its request is plainly improper on its face.

First, in demanding that Mattel produce all documents "REFERRING OR RELATING TO PERSONS who had access to the 2004 Sales Plan," MGA's request would sweep in an unknown and countless quantity of irrelevant documents. The request requires Mattel to produce every document, from any time, that relates to each and every person who had access to the sales plan. That is a preposterous requirement, potentially requiring production of tens of thousands of irrelevant documents relating to individuals who are not even involved in this case. The request is unjustified.

Second, "access" is ambiguous and undefined. For example, it could reflect people who accessed the plan or people who were given access but did not in fact access it. During the meet and confer process, MGA clarified that "access" means persons to whom Mattel gave the ability or permission to access the 2004 Sales Plan.[54]

[53] Motion at 5:20-23.

[54] MGA also agreed to narrow the request to encompass only documents sufficient to identify persons who had access to Mattel's 2004 Sales Plan. See April 14, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 2, Hutnyan Dec., Exh. 5. But again, having refused a reasonable compromise, MGA should be required to defend the request on which it has moved to compel.

Mattel agreed to that definition.[55] But since MGA refused to accept Mattel's agreement, the request as drafted controls, and it contains vague, undefined terms that render it improper.

Finally, the request is not limited by time, which renders it improper. During the meet and confer, Mattel proposed narrowing the time period of "access" to the 2004 Sales Plan to the date of the theft, April 19, 2004, or before. MGA has never shown how post-theft access could be relevant.[56] Nor can it. How Mattel treated the 2004 Sales Plan after it was already aware of its theft and disclosure to a primary competitor is not relevant to any of MGA's defenses or claims. Compelling such a response could require the disclosure of thousands of documents about in-house and outside counsel, paralegals, law clerks, word processors, consultants and others – a whole body of materials that MGA itself agreed during the meet and confer process should have been excluded from its Request.[57] MGA's motion as to Request No. 154 should be denied.

[55] See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 2, Hutnyan Dec., Exh. 3.

[56] See April 20, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 2, Hutnyan Dec., Exh. 3. MGA's Motion is similarly lacking in authority for this point. See Motion at 6:1-6.

[57] See April 17, 2009 letter from Caroline H. Mankey to Diane C. Hutnyan, at 2, Hutnyan Dec., Exh. 2. Before bringing its Motion, MGA had admitted that the Request was overbroad. Id.

07975/2908843.1

-19- Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 69

EXHIBIT 11 PAGE 196

**Conclusion**

For all the foregoing reasons, Mattel respectfully requests that the Discovery Master deny MGA's motion to compel.

DATED: April 29, 2009

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Diane C. Hutnyan
Diane C. Hutnyan
Attorneys for Mattel, Inc.

07975/2908843.1

-20-

Case No. CV 04-09049

MATTEL'S OPPOSITION TO MOT. TO COMPEL PROD. OF DOCS. (2ND/5TH SETS) AND RESP. TO 2ND SET ROGS

EXHIBIT 7 PAGE 70

EXHIBIT 11 PAGE 197

# EXHIBIT 12
# TO DECLARATION OF
# ANDREW C. SPITSER

EXHIBIT 12
TO DECLARATION OF
ANDREW C. SPITSER

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

Presently pending are two separate motions pertaining to Mattel's Third Set of Interrogatories: (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the Third Set of Interrogatories.[2] Having considered the motion papers and the comments of counsel at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel interrogatory responses is denied. MGA's request for sanctions in connection with Mattel's motion to compel interrogatory responses is also denied.[3]

## II. BACKGROUND

In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment, Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories. In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking Bryant four questions and MGA seven questions. Of these, three interrogatories to Bryant were identical to three interrogatories to MGA. In December of 2006, Mattel served MGA with its First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional interrogatories.

During a scheduling conference held on February 12, 2007, the district court imposed a limit on interrogatories of "50 for each side for both cases." February 27, 2007 Minute Order, Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7. When MGA asked whether all Defendants would count as one "side" under the court's order, the court confirmed that was its intent: "there's one party, essentially, on the other side, and [defendants] have two parties." Tr. of scheduling conference, Proctor Dec., Ex. 7. After MGA clarified that there were actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

---

1 Defendants submitted their joint motion on July 10, 2007. Mattel submitted its opposition on July 17, 2007. Defendants submitted their reply brief on July 20, 2007.

2 Mattel submitted its motion to compel on July 18, 2007. Defendants submitted an opposition on August 1, 2007. Mattel submitted its reply brief on August 6, 2007.

3 The Discovery Master determined that a hearing was not necessary.

interrogatories on Mattel in addition to MGA's interrogatories. Bryant stated that he probably would not. The court responded as follows:

> Let's try to work within the confines of the 50 interrogatories, and if you need more, again, the court is going to be forthcoming, if there's a need for it. And it's the type of order that if you can stipulate amongst yourselves, you're not going to need an order from the court.
>
> But if you're not agreeing amongst yourselves, then you're going to have to come back to the court before you bust those limits. Unlike every other order the court issues, where once the court issues an order and you need an order from the court to alter that, this is one that I will give you authority amongst yourselves to stipulate to a greater number. But [let's] be reasonable. I can't imagine you can't work this out. I just don't want to have open-ended numbers of interrogatories and experts.

Id. at 24:5-18. The court also directed the parties to return to court if they were unable to reach an agreement. Id. at 24:23.

On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" – MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant – asking each of these four defendants the same nineteen questions. On July 9, 2007, MGA, MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of Interrogatories and no responses. The parties met and conferred on July 10, 2007. Defendants refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty interrogatory limit and that the interrogatories were otherwise objectionable on several grounds. Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories that are compound and by serving interrogatories on multiple responding parties on the "same side." By Defendants' calculations, when each discrete subpart of each of Mattel's interrogatories served on each of the responding parties are counted separately, Mattel has served, at a minimum, 227 separate interrogatories. In contrast, Mattel contended that its interrogatories are not compound, and that each identical interrogatory it serves should be counted as one, regardless of how many parties it serves on the "other side." By Mattel's calculations, it has propounded a total of forty-three non-identical interrogatories. The parties

also discussed potentially stipulating to a greater number of interrogatories but apparently did not reach an agreement.

Defendants move for a protective order preventing Mattel from serving additional interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed by the district court. Mattel opposes the motion, contending that it has not exceeded the 50 interrogatory limit set by the district court. In a separate motion, Mattel moves to compel Defendants to provide responses to its Third Set of Interrogatories.

III. STANDARDS

Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "that the disclosure or discovery not be had."

IV. DISCUSSION

Defendants' motion for a protective order raises essentially three issues: (1) whether an identical interrogatory served on several Defendants should be counted as only one interrogatory or counted separately for each Defendant served with the identical interrogatory; (2) whether an interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of such facts," and "identify all documents" should be counted as a single interrogatory or three separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

A. The Fifty "Per Side" Limit

The district court limited interrogatories to fifty "per side." Although the district court's order does not speak directly to this issue, the most reasonable approach is to count one identical interrogatory served on all six of the Defendants as one interrogatory. Under this approach, Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants collectively may serve a total of 50 non-identical interrogatories on Mattel.

Defendants' alternative approach is not realistic because it would leave Mattel with far fewer interrogatories than the 50 permitted by the district court. Indeed, Defendants' approach would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under Rule 33(a), Fed.R.Civ.P. Under Defendants' approach, Mattel would be limited to approximately eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50 interrogatories on Mattel. Such an imbalance would be fundamentally unfair.

Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory served on all six of the Defendants is counted as one interrogatory.

B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with knowledge; and (3) identify all documents

Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be counted as separate interrogatories for purposes of the statutorily imposed limit on the number of interrogatories a party may serve upon any other party. Although Rule 33(a) does not define the term "discrete subparts," The Advisory Committee addresses this issue and provides the following guidance as to when subparts should and should not count as separate interrogatories:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Advisory Committee Notes for the 1993 Amendments to Rule 33. A leading treatise has explained that "it would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994). "Although there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

weight of authority interpreting Rule 33(a) requires examining whether the subparts are 'logically or factually subsumed within and necessarily related to the primary question.'" Chapman v. California Dept. of Education, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting Ginn v. Gemini Inc., 137 F.R.D. 320, 322 (D. Nev. 1991).

Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing whether an interrogatory constitutes one or more interrogatories if it asks the responding party to (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all documents referring or relating to such facts. On the one hand, for example, in United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc., 235 F.R.D. 521, 524 (D.C. Cir. 2006), the court explained that an "interrogatory may properly seek identification of documents and facts supporting a contention, but it may not do so in a single interrogatory." See also Nobles v. Jacobs IMC, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the responding party to state all facts regarding a particular issue and to identify all persons having knowledge of such information is two separate interrogatories); Chapman v. California Dept. of Education, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking disclosure of facts (including the identity of persons with knowledge) and documents as two separate interrogatories); Kendall v. GES Exposition Services, Inc., 174 F.R.D. 684, 685-86 (D. Nevada 1997) (determining that a subpart asking for documents in addition to facts should be treated as two subparts). On the other hand, for example, in Krawczyc v. City of Dallas, 2004 WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state facts supporting a contention and to identify persons with knowledge of those facts counts as one interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is "factually subsumed within and necessarily related to the primary question."

In the instant case, most of Mattel's interrogatories follow the same format, asking the responding party to state all facts supporting a contention or contentions, to identity persons with

knowledge, and to identify all documents that refer or relate to such acts. Notwithstanding caselaw to the contrary, these subparts are not discrete. Rather, the subparts are related and directed to the underlying details of a specifically identified contention (or contentions) in a manner similar to the example given in the Advisory Committee Notes: "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Therefore, subparts seeking facts supporting a contention, the identity of persons with knowledge, and documents are not counted separately for purposes of applying the 50 interrogatory limit.

C. Interrogatories Addressing Several Discrete Issues

Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are compound because they address discrete issues. For example, Mattel has propounded the following interrogatory:

> State all facts that support YOUR contention, if YOU so contend, that one or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.[4]

This interrogatory is directed to four separate and discrete defense theories: unclean hands, estoppel, waiver and consent. Therefore, the interrogatory is compound and each of the four discrete subparts should be counted as a separate interrogatory. See Safeco of America, 181 F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an interrogatory] concern different, separate, or discrete matters, however, the interrogatory should be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co., 2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

[4] Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

about all elements of a given claim was compound and explaining that each element of a claim is discrete and constitutes a separate interrogatory).

Mattel's next interrogatory is even more expansive, covering multiple legal theories and factual matters:

> State all facts that support YOUR contention, if YOU so contend, that YOU did not intentionally interfere with the INVENTIONS AGREEMENT or any other agreement or contract between MATTEL and BRYANT, or aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL, when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ or when BRATZ performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.[5]

This interrogatory includes three different legal contentions: (1) intentional interference with the Inventions Agreement; (2) intentional interference with any other agreement or contract between Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty owed by Bryant to Mattel.[6] In addition, this interrogatory asks the responding party to apply two different sets of factual allegations to the three different legal contentions. Therefore, the interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

The following additional interrogatories contain similar types of discrete and separate subparts: Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two discrete subparts), and No. 27 (2 discrete subparts). When all of these discrete subparts are taken into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

---

[5] Id. (No. 21).

[6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

propounded its Third Set of Interrogatories. Therefore, Defendants are entitled to a protective order.

V. CONCLUSION

For the reasons set forth above, Defendants' motion for a protective order is granted, and Mattel's motion to compel responses to the Third Set of Interrogatories is denied. Mattel may serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit imposed by the district court. MGA's request for sanctions in connection with Mattel's motion to compel interrogatory responses is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: September 5, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

# EXHIBIT 13

# TO DECLARATION OF

# ANDREW C. SPITSER

EXHIBIT 13

TO DECLARATION OF

ANDREW C. SPITSER

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 11, REGARDING:**<br><br>**(1) MOTION OF MATTEL, INC. TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS BY MGA ENTERTAINMENT, INC. AND ISAAC LARIAN; and**<br><br>**(2) MOTION OF MATTEL, INC. TO COMPEL THE DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 9 PAGE 81
EXHIBIT 13 PAGE 208

This Order sets forth the Discovery Master's ruling on two motions filed by Mattel, Inc. ("Mattel"): (1) a motion to compel responses to interrogatories and production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799] (the "Deposition Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 19, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument, rules as set forth below.

## I. MATTEL'S WRITTEN DISCOVERY MOTION

In its Written Discovery Motion, Mattel seeks to compel MGA to produce documents responsive to 40 separate document requests[1] and provide answers to 12 different interrogatories. (Separate Statement in Support of the Written Discovery Motion, pp. 1 – 41 and 45 – 102). Mattel further seeks to compel Larian to produce documents responsive to 3 separate document requests and provide answers to 11 different interrogatories.[2] (*Id.*, pp. 41 – 43 and 49 – 102).

### A. Document Requests

#### 1. Document Requests Propounded On MGA

Document Request Nos. 4 through 37 seek financial information from MGA

[1] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45). (*Compare* Separate Statement in Support of the Written Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14). Because Mattel has in reality moved to compel responses to Document Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42. Moreover, any reference to a document request relating to MGA in this Order shall refer to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

[2] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

related to sales, revenues, costs, profits, customer returns, customer rebates and customer credits regarding the Bratz Dolls or Bratz Product,[3] as well as documents sufficient to identify customers who purchased any Bratz Product from MGA or its licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

Document Request Nos. 43, 44 and 46 similarly seek financial information from MGA related to the Bratz product line:

- Document Request No. 43 (erroneously numbered in Mattel's Separate Statement as request number 42): "All sales, profit and cash flow projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS, BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (*Id.*, p. 13).
- Document Request No. 44 (erroneously numbered in Mattel's Separate Statement as request number 43): "All DOCUMENTS that REFER OR RELATE TO the value of the Bratz brand." (*Id.*).
- Document Request No. 46 (erroneously numbered in Mattel's Separate Statement as request number 45): "All DOCUMENTS that evidence, reflect, REFER OR RELATE TO the BRATZ DOLL's share of the fashion doll market, including, without limitation, the extent to which Bratz has been or is gaining or losing market share in the fashion doll market." (*Id.*, p. 14).

Document Request Nos. 40, 41 and 45, on the other hand, seek financial information from MGA as a whole, not just financial data limited to the Bratz Dolls or Bratz Product:

- Document Request No. 40: "All DOCUMENTS that describe YOUR

[3] Mattel defines the term "Bratz Product" as follows:

> 'Bratz Product' means any product whether two-dimensional or three-dimensional, and whether in tangible, digital or electronic or other form: (i) that is or has ever been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz' line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

(Watson Decl., Ex. 1 at p. 3; *see also id.*, Ex. 4 at p. 7).

cost allocation procedures." (*Id.*, p. 13).

- Document Request No. 41: "YOUR general ledgers from January 1, 1995 through the present." (*Id.*).
- Document Request No. 45 (erroneously numbered in Mattel's Separate Statement as request number 44): "DOCUMENTS sufficient to calculate YOUR net worth on a yearly basis for each year from 1999 to the present." (*Id.*).

**2. Document Requests Propounded On Larian**

The three document requests propounded on Larian (i.e., Documents Request Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and bank accounts:

- Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).
- Document Request No. 208: "Documents sufficient to establish YOUR gross income, and the sources of that gross income, for the years 1999 through the present, inclusive." (*Id.*, p. 52).
- Document Request No. 269: "DOCUMENTS sufficient to calculate YOUR net worth on a yearly basis for each year from 1999 to the present." (*Id.*, p. 63).

**3. Phase 1 Rulings**

This is not the first time that Mattel has moved to compel responses to the document requests at issue. Mattel previously filed two motions to compel that asked the former discovery master to compel MGA and Larian (collectively, the "MGA Parties") to, among other things, respond to the same 43 document requests in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted both motions (at least as they relate to the document requests that are the subject of

the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

Because the prior discovery master compelled MGA to produce information responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed Larian to produce information responsive to Document Request Nos. 207, 208 and 269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of Civil Procedure 26 to supplement their prior productions, and (2) that the information the MGA Parties "are withholding is relevant to the damages Mattel seeks," (Written Discovery Motion, pp. 8 – 9).

**4. Objections Of MGA**

In their Opposition, the MGA Parties rely on two grounds for refusing to supplement their prior document productions regarding Document Request Nos. 4 – 37, 40, 41, 43 – 46, 207, 208 and 269. First, the MGA Parties argue that Mattel failed to meet and confer in good faith. (Opposition, pp. 3 – 5). Second, the MGA Parties argue that the requested information is not relevant to the claims and defenses at issue in Phase 2. (*Id.*, 5 – 7).

**a. Purported Failure To Meet And Confer**

Because it could dispose of the outstanding discovery issues related to the document requests that are the subject of the present dispute, the Discovery Master first addresses the MGA Parties' argument that Mattel failed to meet and confer properly prior to filing its Written Discovery Motion.

The MGA Parties argue that Mattel's motion to compel should be denied because Mattel failed to comply with the meet and confer requirements of Local Rule 37-1. (*Id.*, pp. 3 – 5). As the Discovery Master has previously ruled, however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to discovery disputes in this case. The applicable meet and confer procedures are set forth in the Court's order appointing a discovery master dated December 6, 2006 ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R. Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

requires that, before filing a motion to compel, the moving party must meet and confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

Because Rule 37 and the Discovery Master Order govern the meet and confer process in this case, the Discovery Master construes the MGA Parties' meet and confer argument in light of the good faith requirement embedded in Rule 37. The MGA Parties claim that Mattel did not meet and confer in good faith because its counsel sent them "a meet and confer letter inviting [them] to further meet and confer on February 11, 2009" and then filed a motion to compel one "day before the proposed meet and confer session" was scheduled to occur (i.e., on February 10, 2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2 [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to provide us with MGA and Larian's position by Wednesday, February 11, 2009."]). However, the record available to the Discovery Master demonstrates that Mattel made several prior attempts to meet and confer with the MGA Parties, including engaging in the following:

- On January 6, 2009, Mattel's counsel sent a letter demanding that the MGA Parties supplement their production concerning the document requests by February 1, 2009, (Watson Decl., Ex. 17);
- Counsel for the MGA Parties never responded to Mattel's January 6, 2009 letter, (Written Discovery Motion, p. 6);
- Counsel for Mattel sent counsel for the MGA Parties a second copy of the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);
- Counsel for Mattel and counsel for the MGA Parties then spoke on February 6, 2009, and were supposed to discuss, among other things, the document requests at issue, but counsel for the MGA Parties was not prepared to discuss the requests at the appointed time, (Watson Decl., ¶ 22); and
- Counsel for Mattel and the MGA Parties then spoke *again* on February

9, 2009 to discuss the document requests but counsel for the MGA Parties was still not prepared to discuss the issues, (*Id.*).

In light of foregoing facts (which are not disputed by the MGA Parties), it is clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement. The plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move for an order compelling . . . discovery . . . [if] the movant has in good faith conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P. 37(a) [emphasis added]). Because it attempted to meet and confer with counsel for the MGA Parties on at least two occasions (but was unable to do so because the MGA Parties were not prepared to meet and confer during either of the agreed upon times), Mattel satisfied its meet and confer obligations under Rule 37.[4]

**b. Relevance Of The Document Requests To Phase 2**

The MGA Parties also oppose Mattel's demand for a supplemental production on the ground that none of the document requests as issue seek information reasonably calculated to lead to the discovery of admissible evidence. (Opposition, pp. 5 – 7).

**(1) Document Request Nos. 207, 208 And 269**

With respect to the three document requests directed to Larian (i.e., Document Request Nos. 207, 208 and 269), the Opposition contends that they are not relevant to any Phase 2 claims. (Opposition, p. 6).

Each of the requests seeks information related to Larian's financial condition, Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended Answer and Counterclaim ("SAAC") are true. For example, Document Request

[4] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the requested information following the filing of the Written Discovery Motion. It is, therefore, unclear what could have been accomplished by an additional meet and confer on these issues. Moreover, Mattel's counsel stated at oral argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p. 68:7-9). Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery procedures governing this case.

Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request No. 269) and gross income (Request No. 208). Such information relates to Phase 2 damages issues, including, among other things, damages sought against Larian in connection with Mattel's unfair competition cause of action as well as the calculation of Larian's net worth for purposes of litigating the propriety of any "exemplary damages under Cal. Civ. Code § 3294."[5] (SAAC, ¶¶ 163 – 166). It is therefore discoverable.

In its SAAC, Mattel also alleges that MGA, Larian and others hired former Mattel's employees for the express purpose of misappropriating Mattel's confidential and proprietary information, and that the MGA Parties promised such individuals increased salaries at MGA. (*See, e.g.,* SAAC, ¶¶ 69 and 77). Mattel's request for documents sufficient to identify Larian's bank accounts (i.e., Request No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible evidence regarding the source of any payments that may have been made by Larian to former Mattel employees.[6]

**(2) Document Request Nos. 4 – 37, 40, 41 And 43 – 46**

Regarding the requests directed to MGA (i.e., Document Request Nos. 4 – 37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek financial information "related to Bratz dolls, which was a Phase 1 issue," (Opposition, p. 5). Specifically, the MGA parties argue that:

> [a]ny claim by Mattel that it needs [supplemental] Bratz-

[5] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he concludes that Larian should not be required to provide updated information concerning his net worth and gross income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase 2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by the verdict rendered in Phase 1 or recent economic conditions.

[6] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to produce documents identifying his bank accounts as part of Phase 1.

Case 2:04-cv-09049-SGL-RNB Document 5088 Filed 03/30/2009 Page 9 of 40

> related financial information in order to establish its Phase 2 damages ignores the jury's Phase 1 damages award .... Mattel sought disgorgement of all Bratz profits during Phase 1 and the jury made its award. Mattel may not relitigate this issue in Phase 2.

(*Id.*, p. 6).

However, Document Request Nos. 40, 41 and 45[7] make no mention of financial information related to the Bratz Dolls or Bratz Product. They instead seek (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures," (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995 through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's] net worth on a yearly basis for each year from 1999 to the present," (*id.*). Therefore, MGA's argument does not apply to these document requests.

Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's Separate Statement as request number 44) are further reasonably calculated to lead to the discovery of admissible evidence. As the Discovery Master previously ruled, the touchstone for determining whether a particular discovery request is reasonably calculated to lead to the discovery of admissible evidence in this case is whether the request bears some relation to the issues to be tried in Phase 2. That standard is met here, since MGA's general ledgers, net worth, and cost allocation procedures all bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

As for the remainder of the document requests directed to MGA (i.e., Document Request Nos. 4 – 37, 43,[8] 44,[9] and 46),[10] they are admittedly linked to

[7] Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

[8] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

[9] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

[10] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

financial information related to the Bratz Dolls/Bratz Product. While the Discovery Master recognizes that many, if not all, of the issues related to the theft of the Bratz Dolls as well as any damages that may be recoverable by Mattel relating to such misconduct were litigated and resolved in Phase 1 that does not necessarily mean the information sought by Mattel is irrelevant.

As an initial matter, the Court's December 3, 2008 order imposes a constructive trust on the proceeds of MGA's sale of Bratz dolls. Continued sale of any such inventory is thus relevant to the Court's injunction and presumably must be made available to Mattel on that basis alone.[11]

Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2 claims. The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of action, misappropriation of trade secrets claim, and unfair competition cause of action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a fashion doll, from Mattel, and then continued stealing Mattel's confidential and proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and 163). The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA has, among other things,] . . . engaged in unlawful, unfair or fraudulent business act[s] or practice[s]" in violation of California Business and Professions Code section 17200 *et seq.* (SAAC, ¶ 165). Therefore, in addition to the alleged misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least arguably include evidence relating to the purported theft of the Bratz Dolls as well.

Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

[11] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner").

Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one of the purported racketeering activities was the "altering [of] numerous original Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably calculated to lead to the discovery of admissible evidence in Phase 2.

The Discovery Master cannot predict whether the Court will ultimately construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged misappropriation of the Bratz Dolls, or whether Mattel will be barred from presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue was previously litigated and resolved in Phase 1. Given that the discovery here need only appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the Discovery Master finds that the aforementioned document requests are sufficiently related to Mattel's Phase 2 claims to be discoverable at this time.

**5. Conclusion**

For all of the foregoing reasons, Mattel's motion to compel responses to Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

**B. Interrogatories Propounded On MGA And Larian**

The second part of Mattel's Written Discovery Motion addresses various interrogatories propounded on the MGA Parties.

**1. Interrogatory No. 45 Propounded On MGA**

Interrogatory No. 45 asks MGA[12] to:

> IDENTIFY each BRATZ PRODUCT that has been SOLD by [MGA] or [its] licensees and, for each such

[12] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

> BRATZ PRODUCT, state . . . (a) the number of units of each such BRATZ PRODUCT SOLD by [MGA] or [its] licensees, (b) the gross and net revenue received by [MGA] from such SALES of each such BRATZ PRODUCT, (c) all costs [MGA] incurred in connection with each such BRATZ PRODUCT, including but not limited to [MGA's] costs of goods sold, and (d) [MGA's] gross and net profits from each such BRATZ PRODUCT.

(Separate Statement in Support of the Written Discovery Motion, p. 45; *see also* Written Discovery Motion, p. 9).

**a. Phase 1 Rulings**

As with the document requests discussed above, Mattel concedes that "MGA identified and produced documents responsive to [Interrogatory No. 45] in December 2007, and later supplemented th[at] production mid-trial . . ." (Written Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to supplement its response" without justification. (*Id.*)

**b. Objections Of MGA**

In its Opposition, MGA argues that it does not have to provide the information requested by Interrogatory No. 45 for two reasons. First, it claims that, like the document requests propounded on MGA, "Mattel's entitlement to gross and net profits from sales of Bratz products was an issue adjudicated in Phase 1, and Mattel fails to explain how this discovery is relevant to or proper in Phase 2." (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually identical to the documents sought by Document Request Nos. 21 (requesting "DOCUMENTS sufficient to show the number of units of each BRATZ PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS sufficient to show the revenue received by [MGA] from the sale of each BRATZ PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's] profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its] licensees"), discussed above. Accordingly, MGA's relevancy argument regarding Interrogatory No. 45 is not persuasive for the same reasons discussed in Section I.A.4.b.2 above, namely that the information is relevant to the constructive trust imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also arguably relevant to Mattel's Phase 2 claims.[13]

MGA also argues that it should not be required to provide the information requested by Interrogatory No. 45 because it "has already provided information that is current through the second fiscal quarter of 2008" and it would be unduly burdensome to gather the documents necessary to update that information. (Opposition, pp. 7 – 8). MGA did not argue, however, in its Opposition that it would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and 24 discussed above in Section I.A.4.b.2. Therefore, MGA can gather the documents responsive to those requests and refer Mattel to those materials. (*See* Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by examining . . . a party's business records . . . the responding party may answer by specifying the records that must be reviewed . . ."]).

The MGA Parties' argument that it is overly burdensome to require MGA to spend 320 hours to inform Mattel of the most recent sales figures concerning the Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

[13] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable at this time.

information requested and the wide-ranging extent of the discovery to date. As explained above, the information sought is relevant to the constructive trust imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2 claims. Also, while 320 hours may be unduly burdensome in certain circumstances, it is not unreasonable on its face here given that the MGA Parties have already produced more than 4 million documents.[14] (*See Cappacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998) ["Requiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute an undue burden . . . Imposing such a burden is particularly proper where, as here, the information sought is crucial to the ultimate determination of a crucial issue and where the location of the documents is best known by the responding party."]).

**c. Conclusion**

For all of the foregoing reasons, Interrogatory No. 45 is reasonably calculated to lead to the discovery of admissible evidence regarding Mattel's Phase 2 claims and must be answered by MGA.

**2. Interrogatory Nos. 56 – 63 Propounded On MGA And Larian**

Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian. These interrogatories ask the MGA Parties to provide information regarding their alleged theft of certain Mattel documents:

- Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced, transmitted, requested, or used at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such MATTEL

[14] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

DOCUMENTS." (Separate Statement in Support of Written Discovery Motion, p. 49).

- Interrogatory No. 57:. "IDENTIFY all DOCUMENTS that REFER OR RELATE TO any MATTEL product or plan that any of the FORMER MATTEL EMPLOYEES provided, transmitted or disclosed to, shared with or used on behalf of MGA at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts." (*Id.*, p. 52).
- Interrogatory No. 58: "State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA did not obtain any MATTEL DOCUMENTS through improper means, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p. 54).
- Interrogatory No. 59: "State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS does not and/or did not derive independent economic value from not being generally known to the public or other PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p. 57).
- Interrogatory No. 60: "State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and All DOCUMENTS that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

- Interrogatory No. 61: "State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, pp. 64 – 65).
- Interrogatory No. 62: "State all facts which support YOUR contention that YOUR use or disclosure of information in the MATTEL DOCUMENTS neither benefited YOU nor harmed MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p. 69).
- Interrogatory No. 63: "State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA had, has or have any right to copy, possess, use or disclose any MATTEL DOCUMENT, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p. 73).

**a. Objections Of MGA And Larian**

In their Opposition, the MGA Parties rely on four basic grounds for refusing to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9 – 10). Second, the MGA Parties argue that the interrogatories presuppose facts that are not true. (*Id.*, p. 8). Third, the MGA Parties argue that all 8 interrogatories are impermissibly compound and exceed the number of allotted interrogatories. (*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59 and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

**(1) Unduly Burdensome Objection**

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10). While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10). Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party. (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal importance. We're asking for . . . their core contentions related to the trade secret claims."]). As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20). Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

- stole "Mattel's plans, strategy and business information for the Mexican market and materials related to Mattel's worldwide business strategies," (*Id.*, ¶ 37);
- "directed [certain Mattel employees'] to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor would need to enter the Mexican market, and to unlawfully compete with Mattel in Mexico, in the United States and elsewhere . . ." (*Id.*, ¶ 48);
- "targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets," including by "promising these employees salaries 25 percent or more higher than they earn at Mattel and stating to them that they should not be concerned by legal action taken by Mattel to protect its trade secrets and its rights because such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and
- "hired directly from Mattel's United States operations at least 25 employees, from Senior Vice-President level to lower level employees," and that some of these individuals misappropriated "Mattel confidential and proprietary information, including Mattel's strategic plans; business operations; methods and systems; marketing and advertising strategies and plans; future product lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

Therefore, this is not a situation where Mattel has alleged that the MGA Parties stole a handful of documents. The SAAC instead alleges that the MGA Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing "virtually every type of document a competitor would need to enter the Mexican

market, and to unlawfully compete with Mattel in Mexico, in the United States and elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-19), including all of the documents that have been identified as the MATTEL DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are regarding whether or not those documents constitute trade secrets, particularly given that such information is exclusively within the control of the MGA Parties. As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial accusing MGA and the other defendants of stealing all of these documents . . . and [the MGA Parties are] going to have to articulate what their contentions are with respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.* 81:9-10 [wherein Mattel's counsel states that these documents "are the ones that Mattel is going to be proceeding to trial on."]).

Also, the MGA Parties' claim of undue burden does not take into account the vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel propounded 4,647 requests for admission, 2,889 requests for production, and 71 interrogatories in Phase 1]). The MGA Parties do not provide any supporting declaration or specific evidence to support their assertion of burden beyond their statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents. For example, the MGA Parties have not provided the Discovery Master with details regarding: (1) a time estimate as to how long it would take to respond to the Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the extent to which any facts that must be set forth in answering the Interrogatories are voluminous; or (4) an estimate of the number of documents and/or persons that may have knowledge of such responsive facts. Therefore, the Discovery Master finds that the MGA Parties have not met their burden of demonstrating that answering

//

//

the requested interrogatories is overly burdensome.[15] (*See Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

While there is no specific evidence in the record demonstrating that the MGA Parties will inevitably suffer an undue burden in responding to Interrogatory Nos. 56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a demand for "all facts" relating to what could be thousands of different documents could be construed by Mattel in a manner that could place an unreasonable burden on the MGA Parties, particularly when that information is requested via a written interrogatory. The Discovery Master, thus, limits six of the interrogatories at issue[16] and requires that the MGA Parties identify all facts, documents and witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL documents did not derive independent economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use of the information in the MATTEL DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy, possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

The Discovery Master finds that this limitation is appropriate because Mattel

[15] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue. (Opposition, pp. 9 – 10).

[16] Interrogatory Nos. 56 and 57 must be answered as phrased.

conceded in its Reply that it was not asking the MGA Parties "to provide facts they have no knowledge of,"[17] (Reply, p. 17), but rather wanted to assess the "specific contentions Defendants may make regarding the [allegedly] stolen documents," (*id.*, p. 17). Mattel's counsel reiterated this position again at oral argument, wherein he declared that Mattel was not necessarily interested in "a parsing document by document," (Tr., 34:14-15), but instead "what [the MGA Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

**(2) Purported Presuppositions Regarding Interrogatory Nos. 56 and 58 – 63.**

The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are objectionable because they require the MGA Parties to presuppose that they are "in possession of documents stolen or taken from Mattel by former employees – a fact that MGA denies." (Opposition, p. 8). The MGA Parties further assert that "each of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded assertions . . . which make the interrogatories unanswerable and incomprehensible." (*Id.*, p. 9). However, the MGA Parties cite no legal authority, and the Discovery Master has found none, standing for the proposition that a party may refuse to respond to an interrogatory merely because the interrogatory assumes a fact the responding party disputes.

**(3) Compound And Excessive Objections**

The MGA Parties next assert that Interrogatory Nos. 56 – 63 are impermissibly compound and exceed the allotted number of interrogatories. (Opposition, pp. 10 and 11). Each of these contentions is unavailing.

As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

[17] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete . . ."]).

and 58 – 60 on the ground that they are compound. Nor did they object to any of the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63. Therefore, the MGA Parities waived any such objections to those interrogatories. (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) [stating that "failure to object to discovery requests within the time period required constitutes a waiver of any objection."]).

As for the interrogatories where the objections were asserted, the MGA Parties have not demonstrated that the interrogatories are compound or exceed the allotted limit. The fact that the interrogatories ask MGA to identify witnesses, facts and documents related to the MATTEL DOCUMENTS does not render the interrogatories compound because the questions in each interrogatory refer to one common theme and count as a single interrogatory. (*See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question"]). The prior discovery master applied this precise rule in Phase 1, concluding that interrogatories "with subparts seeking facts supporting a contention, the identity of persons with knowledge, and documents are not counted separately for the purposes of applying the . . . interrogatory limit." (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

**(4) Establishing A Negative Proposition Objection**

As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA Parties assert that three of the interrogatories improperly ask them to establish a negative proposition (i.e., Interrogatory Nos. 58, 59 and 62). (Opposition, pp. 11 – 12). The relevant question, however, is not whether an interrogatory may require a party to prove a negative. Rather, all of the cases cited by the parties concerning this issue examine whether the interrogatory in question imposes an unreasonable

//

//

burden on the responding party.[18] For the reasons explained above, there has been no showing by the MGA Parties that an undue burden exists here. (*See* Opposition, pp. 11 – 12).

**b. Conclusion**

For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63 are overruled and Mattel's motion to compel responses to the interrogatories is granted, subject to the limitations discussed above.

**3. Interrogatory Nos. 67 – 69 Propounded On MGA And Larian**

Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian. These interrogatories ask the MGA Parties to provide information regarding any payments they may have made to former Mattel employees and any persons identified in the parties' initial disclosures:

- Interrogatory No. 67: "IDENTIFY fully and separately each and every payment of money or other item of value that YOU have made or given, or any promise, agreement, proposal [o]r offer by YOU to pay money or given any item of value, to or on behalf of any PERSON identified in any of the parties' initial disclosures in this ACTION at any time when such person was not an employee of MGA, including without limitation with respect to legal fees incurred by or on behalf of such PERSON." (Separate Statement in Support of Written Discovery Motion, p. 88).
- Interrogatory No. 68: "To the extent not disclosed in prior

[18] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 - 448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both address the question of whether interrogatories are overly burdensome. The same analysis is applied in the cases cited by Mattel. (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*, 2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

Interrogatories, IDENTIFY fully and separately each and every payment of money or other item of value that MGA has made, or any promise, agreement, proposal or offer by MGA to pay money or given any item of value, to or on behalf of any of the FORMER MATTEL EMPLOYEES, including without limitation with respect to legal fees incurred by or on behalf of any of the FORMER MATTEL EMPLOYEES." (*Id.*, p. 91).

- Interrogatory No. 69: "To the extent not disclosed in prior Interrogatories, IDENTIFY fully and separately each and every payment of money or other item of value that YOU have made, or any promise, agreement, proposal or offer by YOU to pay money or given any item of value, since January 1, 1998 to or on behalf of any PERSON who has been employed by MATTEL (excluding ordinary salary and benefits paid to such PERSON while an MGA employee), including without limitation with respect to legal fees incurred by or on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*, p. 92).

**a. Objections Of MGA And Larian**

In their Opposition, the MGA Parties rely on two basic grounds for refusing to provide responses to these three interrogatories. First, the MGA Parties argue that the interrogatories are impermissibly compound and exceed the number of allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that interrogatories are overly broad. (*Id.*, pp. 12 – 14).

**(1) Compound And Excessive Objections**

Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the allotted number of interrogatories. (Opposition, pp. 10 and 11). But those arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

**(2) Overly Broad Objection**

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[19] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson,* 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

[19] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory No's. 68 and/or 69.

employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL EMPLOYEES as including specific individuals as well as each such person's "current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other Person acting on [his or her] behalf, pursuant to [his or her] authority or subject to [his or her] control." (Opposition, p. 13). While they assert these definitional objections, counsel for the MGA Parties nevertheless conceded at oral argument that to the extent "MGA paid . . . former Mattel employees, for other than their salary as MGA employees, I think that is a fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

Therefore, the Discovery Master orders the MGA Parties to identify fully and separately each and every payment of money or other item of value that they have made or offered to pay to or on behalf of any "former employee of Mattel" since January 1, 1998 but limits the definition of former Mattel employees to "all individuals that the MGA Parties are aware of that worked for Mattel and who received any payment (excluding ordinary salary and benefits paid to such person while an MGA employee) from the MGA Parties."[20]

**b. Conclusion**

For all of the foregoing reasons, Mattel's motion to compel is denied with respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's motion to compel responses to the interrogatories is granted, subject to the limitations discussed above.

**C. Summary Of Ruling Regarding The Written Discovery Motion**

Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part.**

[20] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a request is improper for that specific reason, but instead merely relied on the definitional argument discussed above. Accordingly, the Discovery Master does not need to resolve that particular issue.

## II. MATTEL'S DEPOSITION MOTION

### A. Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1. Background

The Witnesses are former employees of Mattel in Mexico[21] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004. Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business. Vargas currently serves as the Director of Sales for MGA Mex. In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex. Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex. She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

#### 2. Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles. In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses. On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[21] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

the Witnesses (as well as others). Mattel's application was stayed with other Phase 2 discovery and then denied without prejudice on September 23, 2008. After the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009. Once again, the MGA Defendants objected on the ground that neither of the Witnesses is an officer, director or managing agent of MGA Mex. After the parties were unable to resolve their dispute, Mattel filed the Deposition Motion.

**B. Discussion**

Mattel argues that (1) the Witnesses are directors and/or managing agents of MGA Mex, and (2) that MGA Mex must produce them for deposition in Los Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are acting in bad faith and without justification to frustrate Mattel's legitimate discovery rights. In response, the MGA Defendants argue that (1) the Witnesses are merely mid-level employees who cannot be deemed to act for MGA Mex, and (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The MGA Defendants seek sanctions against Mattel, contending that Mattel failed to adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan ("Khan") and then served a redacted version of the Deposition Motion on a different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she was out of town.[22] According to MGA Mex, Mattel only served a complete, unredacted copy of the Deposition Motion on counsel for the MGA Defendants two days before the deadline for the Opposition.

**1. Legal Standard**

If a corporation is a party to an action, any other party may take the deposition of that corporation by identifying a specific officer, director, or

[22] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

managing agent to be deposed and noticing that person's deposition under Rule 30(b)(1). Notice alone is enough to compel the managing agent to attend the deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. & Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of compelling a corporate officer's deposition, courts do not recognize a distinction between an "apex" official or director and other high corporate officials. (*Resort Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D. Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes ["There is slight warrant for the present distinction between officers and managing agents on the one hand and directors on the other."]).

The case law provides somewhat ambiguous guidance with respect to the burden of proof for demonstrating managing agent status. Generally, the burden is on the discovering party to establish the status of the witness. (See *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985); *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same time, however (and as Mattel points out in its papers), courts resolve doubts in favor of the examining party, at least during the discovery phase. (See *Sugarhill*, 105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of providing enough evidence to show that it is at least a close question whether the proposed deponent is a managing agent." (*United States of America v. Afram Lines (USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

The identification of a managing agent in any given case is fact-sensitive. "[B]ecause of the vast variety of factual circumstances to which the concept must be applied, the standard . . . remains a functional one to be determined largely on a case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the question of whether a particular person is a 'managing agent' is to be answered

pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)). Whether a proposed deponent falls into a particular category of employee or agent is therefore less relevant than the individual's specific functions and authority.

As both parties acknowledge, federal courts have formulated a set of factors to assist in determining whether person is a party's "managing agent," and therefore subject to deposition under Rule 30(b)(1):

1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters;
2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party;
3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination;
4) the general responsibilities of the individual "respecting the matters involved in the litigation;" and
5) whether the individual can be expected to identify with the interests of the corporation.

(*Sugarhill*, 105 F.R.D. at 170).

According to Mattel, the most important of these factors is "whether the witness can be expected to identify with the employer corporation's interest as opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)). Applying that test, Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that they helped to found the company and part of the "tight" group that manages its

day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons), the Witnesses are managing agents of MGA Mex.

Mattel's emphasis on the employee's loyalty as the main test for determining his or her status is unwarranted. Federal courts have effectively challenged the notion that the employee's loyalty to the employer is entitled to special weight. (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the *Libbey Glass* court explained, that view "overstates the role of the deponent's . . . apparent fidelity to the principal's interests, because it would apply to many agents and employees who do not function with the degree of authority over a company's affairs connoted by the term 'managing' agent." (*Id.*, at 350). Moreover, the *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a rationale that no longer applies. Specifically, the court traced the rule to *Newark Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the analytical underpinning of the "loyalty" factor.

In that case, the court was concerned with the evidentiary problem facing a litigant seeking to obtain and use the testimony of an adversary corporation's most senior employees. Under the then-existing rule, a litigant could not call such an employee to testify at trial in his or her individual capacity without waiving the right to impeach the witness. This presented a problem for the party seeking to elicit the testimony, because, as the court reasoned, a corporation's ranking employee having possession of pertinent information will always "give his testimony in the light most favorable to the principal," but would, at the same time, be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that an adversary should be able to obtain such testimony from the employee in his or her capacity as the representative of the corporation (who could, therefore, be subject to impeachment).

However, as the court in *Libbey Glass* noted, the concerns expressed in *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

("Rule 607").[23] Under that rule, a party may take the deposition of a senior employee of an adversary corporation in his individual capacity and may nonetheless still seek to impeach that testimony. In other words, characterizing a particular witness as a "managing agent" no longer provides any substantive advantage to the deposing party, only procedural advantages (i.e., the ability to take the deposition without a subpoena).

Having discarded the notion that the witness' loyalty to his employer is the main factor to be considered in ascertaining his status as a managing agent, the court in *Libbey Glass* instead focused on "the nature of the deponent's activities on behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,* 197 F.R.D. at 350). The court reasoned:

> For the purpose of determining whether an individual is a 'managing agent' within the meaning of the discovery rules, the alter ego theory provides a useful analogy. As in the arena of corporate liability, the focus begins with the character of the individual's control. In addition, we can profitably examine both the degree to which the interests of the individual and the corporation converge, and how helpful the individual will be in fact finding on the matter at issue, in comparison to others associated with the corporation. As in all matters appertaining to discovery, it is the ends of justice that are to be served.

(*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1453 (D.C. Cir. 1986)). The Discovery Master finds that the analysis set forth in *Libbey Glass* and the authorities cited therein to be the most practical and well-reasoned test for determining whether the Witnesses are managing agents of MGA Mex, and applies that test below.

[23] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

**2. Analysis Of The Witnesses' Job Functions And Managerial Authority**

**a. The Nature Of The Witnesses' Activities On Behalf Of, And Control Over, MGA Mex.**

In accordance with the approach outlined in *Libbey Glass*, the Discovery Master begins his analysis by examining the Witnesses' activities on behalf of, and managerial control over the operations of, MGA Mex.

Mattel relies heavily on documentary evidence regarding the role of Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery Master finds that this evidence, which is limited to events that occurred five years ago, to be only minimally probative of the *current scope* of the Witnesses' activities and authority.[24] The only evidence presented by the parties concerning the Witnesses' current role in the company is the testimony of Kuemmerle. That testimony derives from three sources: (1) her declaration filed on February 27, 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

The relevant portion of Kuemmerle's first declaration is Paragraph 6, which states in its entirety:

> All of the day to day operations of MGA Mexico are managed locally in Mexico. For example, MGA Mexico's Finance Director, Sales Director and Marketing Director are all based in Mexico and all of the marketing and finance functions are handled in Mexico.

(First Kuemmerle Decl., ¶ 6).

[24] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents? And the answer, of course, is now." (Tr., 21:14-16).

There are two main excerpts from Kuemmerle's deposition transcript cited by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that pricing for the products sold by MGA Mex is set by means of a "combined team effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr., p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[25] Kuemmerle testifies that these individuals (which apparently include the Witnesses) continue to set the pricing of MGA Mex products in the same manner to this day. (*Id.*).

Second, Mattel relies on a passage of Kuemmerle's deposition in which she testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so tight of a group, not enough employees, that we were all forced to multitask." (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

In her second declaration, Kuemmerle testifies regarding the chain of command at MGA Mex. Specifically, she testifies that Vargas reports directly to her and that Trueba reports to Machado, who in turn reports to Kuemmerle. (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the functions performed by, or general authority exercised by, either of the Witnesses. Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at all at MGA De Mexico." (*Id.*, ¶ 4). Kuemmerle does not state whether Vargas supervises anyone. (*Id.*, ¶ 3).

In the absence of any evidence directly addressing the Witnesses' current role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are managing agents based on the Witnesses' job titles and past participation in the "tight group" that made operational decisions for the fledgling company several years ago. However, such an inference is not supported by the scant evidence before the Discovery Master. For instance, the Discovery Master cannot attribute

[25] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

such status to Trueba, who supervises no employees, and whose scope of responsibility is circumscribed to public relations.[26]

Likewise, although Mattel emphasizes that Vargas supervises approximately 8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl., p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the necessary context by identifying the number of total MGA Mex employees. If, for instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9 employees would tend to indicate he does not have such authority.[27] Because the necessary contextual information is not provided, the Discovery Master is unable to assess the significance (if any) of the evidence that is provided regarding Vargas' current role at MGA Mex.

In sum, the evidence currently before the Discovery Master is insufficient to allow him to determine that the Witnesses' functions on behalf of, and control over, MGA Mex is such that they can be deemed its "managing agents."

**b. Other Factors**

Since there is virtually no evidence addressing the critical factor governing whether the Witnesses are managing agents of their employer (see Section II.B.2.a, above), the five factors enumerated by the *Sugarhill* Court have marginal relevance, at best. Even if all those factors were satisfied – which they are not – the record would still be insufficient to enforce the deposition notices at issue here. However, in order to create a complete record and to address the arguments made by the parties, the Discovery Master nonetheless briefly discusses those factors below.

As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[26] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing." (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[27] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion. Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

on the issue of whether an employee is a managing agent is whether he or she "is invested with *general* powers allowing him to exercise judgment and discretion in corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the current scope of Trueba's authority appears to be the opposite of "general:" she is responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15 attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat broader than that of Trueba, appears to be confined primarily to sales. (Second Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any authority over such things as internal administrative functions, budgeting, contracts with vendors, and various other aspects of running a business.

The second *Sugarhill* factor (whether the individual can be relied upon to give testimony at the employer's request) is satisfied, since the Witnesses are current employees of MGA Mex who will presumably cooperate in their employer's defense of Mattel's counterclaims by providing testimony at a deposition.

Turning to the third *Sugarhill* factor (whether there are other MGA Mex employees in positions of higher authority than the Witnesses in the area regarding which the information is sought), the Discovery Master finds that the undisputed testimony of Kuemmerle demonstrates that there are such MGA Mex employees: Kuemmerle supervises Vargas and (through Machado) Trueba. (Second Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that the Witnesses are "managing agents."

With respect to fourth factor (the general responsibilities of the Witnesses respecting the matters involved in the litigation), Mattel's papers demonstrate that the Witnesses do oversee aspects of MGA Mex which are directly addressed by Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

Witnesses to be managing agents.

The last factor is the "loyalty" inquiry discussed above, namely whether the Witnesses can be expected to identify with the interests of MGA Mex. Because they are being subjected to investigation in Mexico, have their own lawyers and the MGA Defendants may take the position that if any Mattel documents were taken, the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily align with the MGA Defendants in this matter. It is unclear on this record whether this factor weighs in favor of or against deeming the Witnesses to be managing agents.

**C. Summary Of The Discovery Master's Findings In Connection With The Deposition Motion**

At this stage, Mattel has not met its initial burden to demonstrate that the Witnesses are managing agents of MGA Mex. The presumption in favor of the party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases. (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this is not such a case.[28]

Nevertheless, it is clear to the Discovery Master that the Witnesses have information relating to several Phase 2 issues and that Mattel is entitled to take their depositions.[29] Accordingly, Mattel may promptly prepare letters rogatory and submit them to the Discovery Master, who will see that the letters rogatory are expeditiously issued by the Court.

**D. Sanctions**

**1. Mattel's Request For Sanctions**

Having found that the MGA Defendants have articulated a meritorious legal

[28] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[29] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities. However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

and factual basis for their objections to the subject deposition notices, the Discovery Master concludes that the refusal of the MGA Defendants to produce the Witnesses was justified. Accordingly, Mattel's request for sanctions is **DENIED**.

**2. The MGA Defendants' Request For Sanctions**

The MGA Defendants request an award of sanctions against Mattel for conduct related to Mattel's service of the Deposition Motion. First, the MGA Defendants contend that Mattel should have served the Deposition Motion on Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's counsel had been communicating regarding the subject depositions. The MGA Defendants complain that, instead of doing so, Mattel served the Deposition Motion on Kahn's colleague, Glaser, while the latter was out of town. However, the MGA Defendants do not explain why other attorneys in their office who were assigned to the matter were not notified of the delivery of the Deposition Motion given Ms. Glaser's absence. Further, Mattel has submitted the declaration of its counsel, Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel served the Deposition Motion on all three law firms representing the MGA Defendants at the same time (February 6, 2009) that the motion was filed. (See Suppl. Zeller Decl., Exh. E).

Second, the MGA Defendants argue that Mattel only served a redacted version of the Deposition Motion on them at some later point, leaving them only two days to draft and file opposing papers, and refused Kahn's request for a reasonable extension of time. (Kahn Decl., ¶¶ 3 - 4). However, the Kahn Decl. is vague regarding the date and manner in which Mattel is alleged to have belatedly served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery Master is unable to ascertain whether Kahn's belated receipt of the motion was caused by some conduct of Mattel, or instead, caused by internal delays within Glaser Weil in routing the papers to the appropriate attorney.

Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

## III. DISPOSITION

A. Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

1. Document Request Nos. 207, 208 and 269 directed to Larian: The Motion is **GRANTED**.

2. Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA: The Motion is **GRANTED**.

3. Interrogatory No. 45 directed to MGA: The Motion is **GRANTED**.

4. Interrogatory Nos. 56 – 63 directed to MGA and Larian:

a. The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

b. Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations: The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL documents did not derive independent economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use of the information in the MATTEL DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

Parties had or have a right to copy, possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

5. Interrogatory No. 67 directed to MGA and Larian: The Motion is **DENIED**.

6. Regarding Interrogatory Nos. 68 and 69 directed to MGA and Larian, the Motion is **GRANTED** subject to the following limitations: The MGA Parties are ordered to identify fully and separately each and every payment of money or other item of value that they have made or offered to pay to or on behalf of any former employee of Mattel since January 1, 1998, with the definition of former Mattel employees re-defined as "all individuals that the MGA Parties are aware of that worked for Mattel and who received any payment (excluding ordinary salary and benefits paid to such person while an MGA employee) from the MGA Parties."

**B.** Mattel's Deposition Motion:

1. Mattel's Deposition Motion is **DENIED**.

2. Mattel's request for sanctions is **DENIED**.

3. The MGA Defendants' request for sanctions is **DENIED**.

Dated: March 30, 2009

By: /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

# EXHIBIT 14
# TO DECLARATION OF
# ANDREW C. SPITSER

EXHIBIT 14
TO DECLARATION OF
ANDREW C. SPITSER

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, Plaintiff, vs. MATTEL, INC., a Delaware corporation, Defendant. | CASE NO. CV 04-9049 SGL (RNBx) |
| AND CONSOLIDATED ACTIONS | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |

**DISCOVERY MATTER**
**[To Be Heard By Discovery Master Robert O'Brien]**

[REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE ORDER COMPELLING MGA TO PROVIDE DISCOVERY, TO COMPEL RESPONSES TO CONTENTION INTERROGATORIES BY MGA AND FOR SANCTIONS; AND

MEMORANDUM OF POINTS AND AUTHORITIES

[Declaration of Scott Watson and Separate Statement filed concurrently]

Date: TBD
Time: TBD
Place: TBD

**Phase 2**
Discovery December 11; 2009
Pre-trial Conference: March 1, 2010
Trial Date: March 23. 2010

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at time and place of hearing to be set by Discovery Master Robert O'Brien, Mattel, Inc. ("Mattel") will, and hereby does, move the Discovery Master for an order:

(1) enforcing the prior Discovery Master's Order compelling MGA Entertainment, Inc. ("MGA") to answer Interrogatory Nos. 43 and 44 of Mattel's Amended Fourth Set of Interrogatories;

(2) compelling MGA to provide full and complete responses to Mattel's Interrogatories seeking MGA's contentions regarding its claims against Mattel, specifically Interrogatory Nos. 43 and 44 of Mattel's Amended Fourth Set of Interrogatories and Interrogatory Nos. and 51 through 55 and 64 of Mattel's Supplemental Interrogatories;

(3) overruling all MGA objections to these interrogatories; and

(4) imposing sanctions in the amount of $4515.

This Motion is made pursuant to Federal Rules of Civil Procedure 33(b)(5) and 37(a) on the grounds that Mattel's requests seek discoverable information, MGA's objections lack merit and MGA is in violation of a prior Court Order to provide responses.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Scott L. Watson and Separate Statement filed concurrently, the records and files of this Court, and all other matters of which the Court may take judicial notice.



**Statement of Rule 37-1 Compliance**

The parties met and conferred regarding this Motion on February 6, 2009 and times thereafter.

DATED: March 6, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Scott L. Watson
Scott L. Watson
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 9

I. MGA IS IN VIOLATION OF THE PRIOR ORDER COMPELLING IT TO SUPPLEMENT INTERROGATORY NOS. 43 AND 44 .......... 9

- A. The Discovery Master Should Enforce the Prior Order And Compel MGA to Supplement Its Responses to Interrogatory Nos. 43 and 44 .......... 9
- B. The Discovery Master Should Impose Sanctions on MGA For Its Refusal to Comply With The Prior Discovery Master's Order .......... 10

II. THE DISCOVERY MASTER SHOULD COMPEL MGA TO PROVIDE FULL AND COMPLETE RESPONSES TO INTERROGATORY NOS. 51 THROUGH 55 AND 64 .......... 12

- A. MGA Admits That Mattel's Interrogatories Seek Relevant, Discoverable Phase 2 Information .......... 12
- B. MGA's Unilateral Limits to Mattel's Definitions Should be Overruled .......... 13
- C. MGA's Remaining Objections Should Be Overruled .......... 16
  1. The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information That May Be The Subject of Expert Witness Analysis .......... 16
  2. The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information That Is Better Known to Mattel .......... 17
  3. The Discovery Master Should Overrule MGA's Compound Objections .......... 18
  4. The Discovery Master Should Overrule MGA's Objection That Mattel's Interrogatories Are Duplicative .......... 19
  5. The Discovery Master Should Overrule MGA's Undue Burden Objections .......... 20
     - (a) Interrogatory No. 51 is not Unduly Burdensome .......... 20
     - (b) Interrogatory No. 52 is Not Unduly Burdensome .......... 21

(c) Interrogatory No. 53 is Not Unduly Burdensome ........... 23

(d) Interrogatory No. 64 is Not Unduly Burdensome ........... 24

6. The Discovery Master Should Overrule MGA's Boilerplate Privilege Objections ........... 25

CONCLUSION ........... 26

# TABLE OF AUTHORITIES

Page

## Cases

Am. Oil Co. v. Penn. Petro. Co., 23 F.R.D. 680 (D.R.I. 1959) .....20

Braley v. Campbell, 832 F.2d 1504 (10th Cir. 1987) .....11

Burton Mechanical Contractors, Inc. v. Foreman, 148 F.R.D. 230 (N.D. Ind. 1992) .....21

Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486 (W.D.N.C. 1998) .....23, 24

Chapman v. California Dept. of Educ., 2002 WL 32854376 (N.D. Cal. February 6, 2002) .....14

Convergent Business Systems, Inc. v. Diamond Reporting, Inc., 1989 WL 92038 (E.D.N.Y. 1988) .....25

Hyde & Drath v. Baker, 24 F.3d 1162 (9th Cir. 1994) .....11

Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524 (D. Nev. 1997) .....21

King v. E.F. Hutton & Co., Inc., 117 F.R.D. 2 (D.D.C. 1987) .....16, 25

King v. Georgia Power Co., 50 F.R.D. 134 (N.D. Ga. 1970) .....22, 24

Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94 (W.D.N.Y. 2000) .....14, 20

Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, 2005 WL 318811 (N.D. Cal. January 5, 2005) .....18

RTC v. Dabney, 73 F.3d 262 (10th Cir. 1995) .....11

Roberts v. Heim, 130 F.R.D. 424 (N.D. Cal. 1989) .....17

Seff v. General Outdoor Advertising Co., 11 F.R.D. 597 (N.D. Ohio 1951) .....23, 24

Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658 (D. Kan. 2004)....18

## Statutes

28 U.S.C. § 1927....11

Fed. R. Civ. P. 33(a)(2)....18, 23, 25

Fed. R. Civ. P. 33(b)(4)....14, 20

Fed. R. Civ. P. 37(a)(4)....10, 11

Fed. R. Civ. P. 37(b)(2)(C)....11

Fed. R. Civ. P 72(a)....9

## Miscellaneous

8A Federal Practice & Procedure § 2167....20

Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261)....18

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA asserted claims against Mattel in April 2005, accusing Mattel of unfair competition. Almost four years later, MGA still has yet to respond to Mattel's interrogatories seeking such basic information as what Mattel products MGA claims that Mattel infringes. Mattel propounded interrogatories to discover the basis for MGA's trade dress claims, facts related to the defense of those claims, and facts related to Mattel's own claims of unfair competition and misappropriation of trade secrets. MGA has refused and continues to refuse to respond. Indeed, MGA is currently in violation of the prior Discovery Master's order compelling MGA to provide supplemental responses to Interrogatory Nos. 43 and 44 (an order that they did not challenge). The MGA Parties have admitted that all of this information is directly relevant to Phase 2. Mattel is entitled to it.

The MGA Parties, however, continue their efforts to delay revealing the basis for the claims. Indeed, in direct contravention of the Court's Order lifting the Phase 2 Stay and its unequivocal statements at the February 11, 2009 hearing that "there is no stay on discovery. Period," the MGA Parties have asked the Discovery Master to ignore those orders and to issue a protective order staying all discovery regarding MGA's trade dress claims. On the basis of that improper motion, MGA is refusing to comply with an existing Discovery Master Order compelling responses to two of these interrogatories.

Each of MGA's objections to these interrogatories is without merit. The MGA Parties recognize as much, as the only objection they pursue in their motion for protective order is a frivolous undue burden objection. For example, MGA asserts that it is unduly burdensome for it to identify to Mattel which Mattel products, designs, or packaging that ***MGA claims*** are infringing because if "does not have a complete listing of every single Mattel product which copied or infringed

MGA's trade dress" and "attempting to compile such information presents another herculean task."[1] MGA is the master of its claims, and its self-serving proclamations of burden are solely the result of MGA's own contentions. If it contends that hundreds of Mattel products allegedly infringe, then it must be prepared to provide discovery related to hundreds of products. Indeed, it will be required to do so at trial. Moreover, it is inconceivable that that almost four years after MGA asserted these claims, MGA cannot identify each of the Mattel products it bases its trade dress claims on and therefore is suing on.

For the reasons set forth below and in Mattel's concurrently filed Opposition to the MGA Parties' Motion for Protective Order Staying Discovery on Trade Dress claims, the Discovery Master should enforce the prior Discovery Master Order and compel MGA to provide promptly full and complete responses to these interrogatories.

**Statement of Facts**

MGA's Complaint. In April 2005, MGA filed a lawsuit against Mattel alleging unfair competition claims.[2] In its complaint, MGA asserts that Mattel has engaged in "serial copycatting" of Bratz dolls, Bratz Petz and other Bratz products, Bratz television commercials, Bratz packaging, MGA's "4-Ever-Best-Friends" dolls, MGA's "Mommy's Little Patient" dolls and MGA's "AlienRacers" toy racing vehicles.[3] MGA's complaint also asserted various other unfair competition claims, including trade dress dilution, and alleges unjust enrichment.[4]

---

[1] See MGA Parties' Motion for Protective Order Staying Discovery on Trade Dress Claims, dated February 27, 2009, at 14.

[2] MGA Entertainment, Inc.'s Complaint in Case no. 05-02727, Watson Dec., Exh. 24.

[3] Id. at, e.g., ¶¶ 7, 33, 41, 59.

[4] Id. at ¶¶ 101-125.

Mattel's Second Amended Answer. In July 2007, Mattel filed its Second Amended Answer and Counterclaims.[5] Mattel alleges in its Second Amended Answer that:

- Over the course of several years, MGA stole massive amounts of Mattel trade secrets in the U.S., Mexico and Canada, including Mattel's forward-looking, international business plans that MGA then used illegally to damage Mattel in the U.S. and global marketplaces. The trade secret theft included luring away Mattel executives employees to work for MGA and exploiting their access to sensitive Mattel information to steal Mattel trade secrets.[6]
- By encouraging Mattel employees to join MGA and steal Mattel's confidential information on their way out, MGA has unlawfully obtained valuable trade secrets relating to Mattel's business in the United States and worldwide.[7]
- MGA bribed then-Mattel employees (in addition to Bryant) to secretly provide services to MGA while they were still employed by Mattel, in violation of contractual and fiduciary obligations and in violation of duties of loyalty, and otherwise interfered with Mattel's contractual relationships.[8]
- MGA is in violation of the RICO statute by virtue of its participation in an on-going enterprise that has engaged in numerous predicate acts, including without limitation acts of mail and wire fraud, conspiracy to commit perjury, commercial bribery, trade secret theft and criminal copyright infringement in violation of the RICO statute.[9]

---

5 Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, dated July 12, 2007, Watson Dec., Exh. 25.
6 Id. at ¶¶ 37-77.
7 Id. at ¶¶ 37-77.
8 Id. at ¶¶ 55-69.
9 Id. at ¶¶ 88-105.

These allegations also comprise part of Mattel's defense to MGA's claims. Contrary to MGA's allegations that Mattel has imitated aspects of Bratz dolls and other MGA products, such as alleged MGA "themes,"[10] many of the claimed MGA product attributes were in fact first conceived by Mattel and implemented by MGA only after MGA had stolen that information from Mattel. For this reason, as the former Discovery Master recognized, MGA misconduct that is the subject of Mattel's claims also serves as a defense to MGA's claims.[11]

Mattel's Amended Fourth Set of Interrogatories. On October 23, 2007, Mattel served its Amended Fourth Set of Interrogatories on MGA.[12] Interrogatories Nos. 43 and 44 of the Amended Fourth Set ask MGA to identify, for each design, product and packaging that MGA contends Mattel copied, the date of conception and the date it was first fixed in a tangible medium.[13] MGA responded on November 15, 2007, providing only objections and a response that MGA was willing to meet and confer with Mattel regarding the interrogatories.[14] On November 30, 2007, MGA supplemented its responses.[15] For its responses to Interrogatory No. 43, MGA added that "

."[16] For its response to Interrogatory No. 44, MGA added that "

[10] MGA Complaint at, e.g., ¶¶ 33-73, Watson Dec., Exh. 24.

[11] See Order of January 25, 2007, at 14:13-17, ("Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims."), Watson Dec., Exh. 39.

[12] Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated October 23, 2007, Watson Dec., Exh. 1.

[13] Id. at 7-8 (Nos. 43 and 44).

[14] MGA Entertainment Inc.'s Objections and Responses to Mattel Inc's Amended Fourth Set of Interrogatories, dated November 15, 2007, Watson Dec., Exh. 2.

[15] MGA Entertainment Inc.'s Supplemental Responses to Mattel Inc.'s Amended Fourth Set of Interrogatories, dated November 30, 2007, Watson Dec., Exh. 3.

[16] Id.

[REDACTED] "[17]

On December 20, 2007, Mattel moved to compel on Interrogatory Nos. 43 and 44.[18] The MGA Parties filed an opposition on December 31, 2007.[19] On January 7, 2008, MGA supplemented its responses yet again, but did not change its responses to Interrogatory Nos. 43 and 44.[20] MGA supplemented its responses for a third time on January 28, 2008, but again failed to change its previous responses to Interrogatory Nos. 43 and 44.[21]

The prior Discovery Master granted Mattel's motion to compel on February 15, 2008, ordering the MGA Parties to provide further responses to Interrogatory Nos. 43 and 44 because the "requested information is relevant to Mattel's defense against the MGA parties' claims that their products have been copied or infringed by certain Mattel products."[22] The Discovery Master ruled that the MGA Parties' existing supplemental *and* second supplemental responses were insufficient: "Although the MGA parties served supplemental responses after filing their opposition brief, the supplemental responses do not include the requested information. The MGA parties have failed to establish that the interrogatories are unduly burdensome."[23]

---

[17] Id.

[18] Mattel, Inc.'s Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated December 20, 2007, Watson Dec., Exh. 4.

[19] MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated December 31, 2007, Watson Dec., Exh. 5.

[20] MGA's Second Supplemental Responses to Mattel Inc.'s Amended Fourth Set of Interrogatories, dated January 7, 2008, Watson Dec., Exh. 6.

[21] MGA Entertainment, Inc.'s Third Supplemental Responses to Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated January 28, 2008, Watson Dec., Exh. 7.

[22] Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated February 15, 2008, Watson Dec., Exh. 8.

[23] Id.

On March 3, 2008, MGA supplemented its responses for a fourth time.[24] MGA refused once again to respond to the interrogatories, objecting that they related to Phase 2 and were therefore stayed pursuant to the Phase 2 discovery stay.[25] On April 22, 2008, the Discovery Master stayed the MGA Parties' obligation to supplement their responses to Interrogatory Nos. 43 and 44, until further the Phase 2 discovery stay was lifted.[26]

Mattel's Supplemental Interrogatories. On January 9, 2008, Mattel served Supplemental Interrogatories on MGA.[27] These interrogatories seek basic discovery regarding MGA's allegations that Mattel copied, infringed, or diluted MGA products.[28] MGA responded on February 8, 2008, providing only objections to the majority of the Supplemental Interrogatories on the grounds that Phase 2 discovery was stayed until further order of the Court.[29]

The Court Lifts the Stay on Phase 2 Discovery. On January 6, 2009, the Court vacated the stay on Phase 2 discovery.[30] On January 20, Mattel wrote to counsel for MGA to ask when MGA planned to serve the supplemental responses to Mattel's Amended Fourth Set of Interrogatories ordered by the Discovery Master

---

[24] MGA Entertainment, Inc.'s Fourth Supplemental Responses to Interrogatory Nos. 43-44 of Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated March 3, 2008, Watson Dec., Exh. 9.

[25] Id.

[26] Order Granting MGA Parties' Motion for Clarification Regarding Portions of February 15, 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated April 22, 2008, Watson Dec., Exh. 10.

[27] Mattel's Supplemental Interrogatories, dated January 9, 2008, Watson Dec., Exh. 11.

[28] Id.

[29] MGA's Objections and Responses to Mattel's Supplemental Set of Interrogatories, dated February 8, 2008 (Nos. 56-63, 67-69) ("Pursuant to Judge Larson's February 4, 2008 Order, Phase Two discovery is stayed until further order of the Court. Accordingly, MGA will not respond to this interrogatory until the stay of Phase Two discovery is lifted by the Court"), Watson Dec., Exh. 12.

[30] Order Appointing Discovery Master, dated January 6, 2009, at 2, Watson Dec., Exh. 13.

eleven months earlier.[31] Mattel also wrote to MGA on January 28, 2009, requesting that the parties meet and confer regarding MGA's responses to Mattel's Supplemental Interrogatories.[32]

Mattel's Anticipated Motion for Summary Judgment. On January 8, Mattel informed the MGA Parties of its intent to file a summary judgment motion on MGA's trade dress and other claims relating to Bratz.[33] In short, a key basis for the anticipated motion is that, as a result of the Phase 1 proceedings (once they are finalized by the Court), MGA does not and cannot own trade dress or any other rights in Bratz as a matter of law, since Bratz is Mattel's intellectual property.[34]

The Parties Meet and Conferred. The parties met and conferred on February 6, 2009 regarding Mattel's discovery requests.[35] During the conference, MGA acknowledged that its objections to Mattel's interrogatories based on the Phase 2 discovery stay were no longer viable.[36] MGA proposed providing responses to Mattel's Interrogatories 43, 44, 51 through 55, and 64, "not later than 30 days after the Court decides the trade dress summary judgment motion which Mattel has indicated it will be bringing."[37] MGA refused to discuss its specific objections to these interrogatories or whether it would be standing on its remaining objections

---

31 Letter from Jon Corey to Jason Russell and Robert J. Herrington, dated January 20, 2009, Watson Dec., Exh. 14.

32 Letter from Scott Watson to Thomas Nolan and Jason Russell, dated January 28, 2009, Watson Dec., Exh. 15.

33 Letter from Michael T. Zeller to Thomas Nolan, dated January 8, 2009, Watson Dec., Exh. 16.

34 Id.

35 Watson Dec., at ¶ 18; see also Letter from Scott Watson to Amman Khan, dated February 6, 2009, Watson Dec., Exh. 17.

36 Id.

37 Letter from Jean Pierre Nogues to Jon Corey, dated February 6, 2009, Watson Dec., Exh. 18.

when it did provide responses.[38] Mattel informed MGA that this proposal was not acceptable.[39]

The Court Sets The Phase 2 Trial Schedule And Reiterates That There Is No Stay On Discovery. At a hearing on February 11, 2009, the Court set Phase 2 discovery cut-off for December 11, 2009 and Phase 2 trial for March 23, 2010.[40] The Court also stated: "I will instruct the Discovery Master this afternoon, in no uncertain terms, that there is no stay on any discovery related to this case at all. There's no longer a Phase 1/Phase 2 distinction. As I indicated, I thought that I made this clear before. If it's not, it will be expressly set forth in the minutes coming out of today's hearing. ***There is no stay on discovery. Period.***"[41] As the Court later reiterated, "there is nothing from this Court which is precluding any discovery that is properly sought for the trial that is scheduled."[42]

MGA Continues Its Refusal to Respond to Discovery Regarding Its Trade Dress Claims. On February 12, 2009, in light of the Court's remarks on the record, Mattel asked MGA to confirm whether MGA would provide complete responses to Mattel's interrogatories regarding MGA's trade dress claims against Mattel.[43] The next day, counsel for MGA responded that it was premature to respond to the February 12 letter until after the scheduled meet and confer concerning Mattel's intended motion for summary judgment on MGA's trade dress claims.[44]

---

38 Watson Dec., at ¶ 18.
39 Letter from Jon Corey to Amman Khan, dated February 8, 2009, Watson Dec., Exh. 19.
40 Hearing Transcript, dated February 11, 2009, at 94:25-95:7, Watson Dec., Exh. 20.
41 Id. at 97:8-14 (emphasis added).
42 Id. at 101:21-24.
43 Letter from Jon Corey to Jean Pierre Nogues, dated February 12, 2009, Watson Dec., Exh. 21.
44 Letter from Jean Pierre Nogues to Jon Corey, dated February 13, 2009, Watson Dec., Exh. 22.

On February 18, the parties met and conferred regarding the trade dress motion for summary judgment and the trade dress interrogatories.[45] The next day, MGA informed Mattel that it would not agree to provide supplemental responses to Interrogatory Nos. 43 and 44 or respond to Interrogatory Nos. 51 through 55 and 64 by February 27, 2009.[46] Instead, MGA stated that it would only respond to these interrogatories: (1) if their planned protective order is denied; or (2) if the protective order is granted, 21 days after the Court decides Mattel's summary judgment motion, to the extent any trade dress claims remain after that decision.[47] On February 26, the MGA Parties moved for a protective order to stay discovery on MGA's trade dress claims.

## Argument

### I. MGA IS IN VIOLATION OF THE PRIOR ORDER COMPELLING IT TO SUPPLEMENT INTERROGATORY NOS. 43 AND 44

#### A. The Discovery Master Should Enforce the Prior Order And Compel MGA to Supplement Its Responses to Interrogatory Nos. 43 and 44

MGA is in violation of the Order compelling it to supplement its responses to Interrogatory Nos. 43 and 44.[48] MGA did not challenge that order, and it became an order of the Court. Fed. R. Civ. P 72(a); Discovery Master Order ¶ 6 (treating Discovery Masters orders as rulings of Magistrate Judges), Watson Dec., Exh. 38. Although the prior Discovery Master stayed MGA's obligation to supplement its responses until the District Court vacated the stay on Phase 2

---

45 See Letter from Jean Pierre Nogues to Jon Corey, dated February 19, 2009, Watson Dec., Exh. 23.

46 Id.

47 Id.

48 Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated February 15, 2008, Watson Dec., Exh. 8.

discovery,[49] the District Court vacated the stay two months ago.[50] MGA's continuing refusal to provide the compelled responses is in direct violation of the Order. The Discovery Master should enforce the prior Discovery Master's order and compel MGA to provide responses to these interrogatories without further delay.

Interrogatory No. 43 asks MGA to state, for each product MGA contends Mattel copied or infringed, the date the product was conceived.[51] Interrogatory No. 44 seeks the date each product was first fixed in any tangible medium of expression.[52] As the prior Discovery Master held, these interrogatories are directly "relevant to Mattel's defense against the MGA parties' claims that their products have been copied or infringed by certain Mattel products."[53] In the face of this ruling, MGA continues to assert its frivolous relevance objections.[54] The dates MGA conceived or fixed in a tangible medium of expression its products, packaging, and concepts that it contends Mattel copied are clearly relevant. It could reveal that Mattel was the first to conceive the concepts MGA contends Mattel copied, and thus, that it was MGA, and not Mattel, that copied. The Discovery Master should reject MGA's rehashed, and improper, relevance objections and compel an immediate response.

**B. <u>The Discovery Master Should Impose Sanctions on MGA For Its Refusal to Comply With The Prior Discovery Master's Order</u>**

<u>Rule</u> 37(a)(4) of the <u>Federal Rules of Civil Procedure</u> provides that a party forced to bring a motion to compel is entitled to the "reasonable expenses

---

49 <u>Id.</u>
50 Order Appointing Discovery Master, dated January 6, 2009, at 2, Watson Dec., Exh. 13.
51 Mattel's Amended Fourth Set of Interrogatories (No. 43), Watson Dec., Exh. 1.
52 <u>Id.</u> (No. 44).
53 <u>Id.</u>
54 MGA's Fourth Supplemental Responses to Interrogatory Nos. 43-44 of Mattel's Amended Fourth Set of Interrogatories, dated March 3, 2008, Watson Dec., Exh. 9.

incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4). Likewise, fees may be awarded for a party's violation of a Court Order. Fed. R. Civ. P. 37(b)(2)(C). The burden of establishing substantial justification is on the party being sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

Here, the Discovery Master should impose sanctions on MGA for its failure to comply with the prior Discovery Master's Order. The stay on Phase 2 discovery was lifted two months ago, and there is no justification for MGA's stonewalling. Mattel therefore requests that MGA be ordered to pay $4515 as partial reimbursement for the fees and costs that Mattel has incurred in bringing this motion.

## II. THE DISCOVERY MASTER SHOULD COMPEL MGA TO PROVIDE FULL AND COMPLETE RESPONSES TO INTERROGATORY NOS. 51 THROUGH 55 AND 64

### A. MGA Admits That Mattel's Interrogatories Seek Relevant, Discoverable Phase 2 Information

MGA concedes that Interrogatory Nos. 51 through 55 and 64 are relevant to MGA's Phase 2 trade dress claims.[55] In fact, the sole reason MGA provides for its refusal to respond to these interrogatories until after the Court decides Mattel's summary judgment motion regarding MGA's trade dress claims is that all of these interrogatories "*deal with MGA's trade dress claims*."[56] As discussed more fully in Mattel's Opposition to the MGA Parties' Motion for a Protective Order Staying Discovery of Trade Dress Claims filed concurrently, MGA's refusal to respond to these interrogatories due to a summary judgment motion on MGA's Bratz-based trade dress claims that Mattel has not even filed is untenable. That is all the more so in light of Judge Larson's repeated rejections of MGA's contentions that Phase 2 discovery was, has been or should be stayed in some manner. At the February 11, 2009 hearing, and even though by then MGA was fully aware of Mattel's intent to bring a Phase 2 summary judgment motion at some point, MGA made no suggestion to Judge Larson that Mattel's contemplated motion should have any effect on the schedule. To the contrary, *MGA* advocated that Phase 2 discovery and trial should be completed in short order. And, at the March 4, 2009 hearing, the Court made clear that there was no stay and that, indeed, stay requests were not properly directed to the Discovery Master.

---

[55] Letter from Jean Pierre Nogues to Jon Corey, dated February 6, 2009 (proposing to delay response to Interrogatory Nos. 43, 44, 51-55, and 64 because they all "deal with MGA's trade dress claims"), Watson Dec., Exh. 18.

[56] Id. (emphasis added).

Not only is MGA's position groundless on its face, but it fails to even arguably explain MGA's refusal to answer the interrogatories. These interrogatories are also relevant to MGA's *non*-Bratz based claims,[57] such as its claims that Mattel has copied or infringed its "4-Ever-Best-Friends" fashion dolls and packaging, "Mommy's Little..." line of dolls and "Alien Racers" toy racing vehicles.[58] Mattel's contemplated (and unfiled) Phase 2 motion for summary judgment has nothing to do with those matters.

These interrogatories are also relevant to Mattel's Phase 2 claims. For example, Interrogatory No. 52 asks MGA to identify, for each trade dress that MGA contends Mattel copied, the number of units and profits for each product that incorporates such trade dress.[59] This information is key to Mattel's claims that MGA used stolen Mattel trade secrets to market and sell MGA's products.[60] The revenues and profits MGA received for its products are therefore relevant to Mattel's damages theories. MGA's groundless objections should be overruled.[61]

**B. MGA's Unilateral Limits to Mattel's Definitions Should be Overruled**

In its responses to Mattel's Supplemental Interrogatories, MGA objects that each of the defined terms "SOLD," "SELL," "SALE," and "MATTEL," are vague, ambiguous, overly broad and unduly burdensome.[62] Even MGA does not believe these objections have merit. MGA made the same objections to Supplemental Interrogatory Nos. 56-63 and 67-69, which are the subject of Mattel's

---

[57] See, e.g., Mattel's Supplemental Interrogatories (No. 52), Watson Dec., Exh. 11.

[58] MGA Entertainment, Inc.'s Complaint in Case No. 05-02727, dated April 13, 2005, at, e.g., ¶¶ 7, 33, 41, 59, Watson Dec., Exh. 24.

[59] Mattel's Supplemental Interrogatories (No. 52), Watson Dec., Exh. 11.

[60] E.g., Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, at 52-53 (discussing My Scene My Bling Bling), Watson Dec., Exh. 25.

[61] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (No. 52), Watson Dec., Exh. 12.

pending motion to compel.[63] Mattel specifically asked the Discovery Master to overrule these objections and MGA's unilaterally imposed counter-definitions in its pending motion, and MGA did not defend them.[64] MGA, however still has not withdrawn its improper objections and counter-definitions.

Moreover, MGA has offered no evidence that responding to interrogatories with these defined terms would be unduly burdensome, and the definitions are not vague. MGA's boilerplate objections to Mattel's defined terms should be overruled for this reason. Fed. R. Civ. P. 33(b)(4) (grounds for objecting to an interrogatory must be stated "with specificity"); Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize basis for objection).

For each of these terms, MGA interjects its own, more limited definitions, so that any response would provide Mattel only a portion of the information Mattel is entitled to and allow MGA to cherry-pick discovery. This is improper. Chapman v. California Dept. of Educ., 2002 WL 32854376, at * 3 (N.D. Cal. February 6, 2002) ("The proponent of discovery is the master of its terms. So long as the information sought is within the broad bounds of relevancy as set forth in Rule 26 and is otherwise properly discoverable, the respondent may not unilaterally reshape or rephrase the discovery request.").[65]

---

62 Id.

63 Id.; see also Mattel, Inc.'s Motion to Compel Responses to Interrogatories and Production of Documents by MGA Entertainment, Inc., and Isaac Larian, dated February 10, 2009, Watson Dec., Exh. 26.

64 Id. at 14-16; see also MGA Entertainment, Inc. and Isaac Larian's Opposition to Mattel, Inc.'s 2/10/09 Motion to Compel Responses to Interrogatories and Production of Documents, dated February 18, 2009, Watson Dec., Exh. 27 (not opposing Mattel's motion to overrule MGA's and Larian's unilateral definitions).

65 As discussed above, Mattel's interrogatories seek information that is directly relevant to the party's claims and defenses in this case.

MGA complains that Mattel's definitions of the terms "SOLD," SELL," and "SALE" include concepts such as distribution, licensing, and marketing.[66] Thus, they assert that any response they provide will "[REDACTED] ."[67] This contention is both speculative and baseless, as even MGA does not dispute that Mattel is entitled to discover information relating to the distribution, licensing, and marketing of the MGA products at issue. Moreover, MGA has not explained why using the terms as Mattel has defined them would render their responses vague, ambiguous, or unduly burdensome. If anything, MGA's unilateral interpretation of the terms are more likely to render their responses vague and ambiguous, as MGA's definition provides zero specificity.

MGA also objects to Mattel's definition of the term "MATTEL."[68] MGA asserts that it will interpret the term "[REDACTED]"[69] This interpretation excludes, without justification, anyone who has held themselves out to be Mattel directors, representatives, attorneys, parents, "AFFILIATES, predecessors-in-interest, successors-in-interest, and any other PERSON acting on Mattel's behalf, pursuant to its authority or subject to its control."[70] There is no legitimate basis for such a limit. To the contrary, as noted above, given that Mattel's requests clearly seek discoverable information, the law precludes MGA from cherry-picking the discovery it will disclose and from unilaterally reshaping or rephrasing Mattel's discovery requests. MGA's objections and limitations to Mattel's defined terms should be overruled.

---

66 MGA's Objections and Responses to Mattel's Supplemental Interrogatories, at 7 and No. 52, Watson Dec., Exh. 12.
67 Id. at 7.
68 Id. at Nos. 51-55.
69 Id. at 8.
70 Mattel's Supplemental Interrogatories, at 2, Watson Dec., Exh. 11.

C. **MGA's Remaining Objections Should Be Overruled**

1. **The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information That May Be The Subject of Expert Witness Analysis**

MGA's objection that Interrogatory Nos. 51, and 53 seek information that "[REDACTED]"[71] is without merit and has been rejected by the Court previously. The interrogatories properly seek the factual basis on which MGA bases its claims and defenses. Interrogatory No. 51, for example, asks MGA to identify every concept, design, product, or packaging of Mattel that MGA contends is a copy of, infringes or dilutes MGA's concepts, designs, products, or packaging.[72] MGA cannot be permitted to withhold this factual information merely based on its unilateral suggestion that an expert may also testify about such matters. Indeed, if that were a sufficient basis for MGA to stonewall discovery, then it would never have to provide discovery until it deigned to make expert disclosures. Yes, as the law makes clear, interrogatories requesting factual information are not objectionable even on the basis that the responding party would need to consult with an expert to clarify relevant facts. See King v. E.F. Hutton & Co., Inc., 117 F.R.D. 2, 5 (D.D.C. 1987) ("while an expert on stockbroker operations and investments may be necessary to refine the evidence of their losses, the plaintiffs must have had some factual basis for concluding they had sustained losses at the time the complaint was filed . . . It is no answer for plaintiffs to assert that they will need . .. to consult with an expert to determine their losses. They should have answered the interrogatories with such information as they then possessed, and pursuant to Rule 26(e) . . . supplement their answers . . . to reflect refinements or corrections to the factual representations as to their asserted losses");

[71] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 51, 53), Watson Dec., Exh. 12.

Roberts v. Heim, 130 F.R.D. 424, 429-30 (N.D. Cal. 1989) (plaintiffs' response to defendants' interrogatory, in which plaintiffs objected to the interrogatory on the ground that the response was dependent, in part, on expert testimony, required plaintiffs to answer the interrogatory and state whether the answer to the interrogatory contained all the factual information in the plaintiffs' possession independent of that to be provided by plaintiffs' experts and also required plaintiffs to provide any other factual information independent of that to be provided by their expert). In fact, in this case, Judge Larson held that this very objection by MGA was not a proper basis for withholding discovery.[73]

MGA's objections on this basis should be rejected.[74]

**2. The Discovery Master Should Overrule MGA's Objections That Mattel's Interrogatories Seek Information That Is Better Known to Mattel**

MGA objects to Interrogatory Nos. 51 and 54 on the basis that they seek information that is uniquely or better known to Mattel.[75] This objection is also without merit. These interrogatories seek the factual basis for *MGA's* own contentions regarding which Mattel products copied MGA's products and whether

---

[72] Mattel's Supplemental Interrogatories (No. 51), Watson Dec., Exh. 11.

[73] Civil Minutes, dated July 2, 2007, at 5 ("That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6)"), Watson Dec., Exh. 41.

[74] MGA also objects to Interrogatory Nos. 43-44 of Mattel's Amended Fourth Set because "the invention, creation, conception, or reduction to practice of Bratz" will be the subject of expert testimony. MGA's Fourth Supplemental Responses to Interrogatory Nos. 43-44 of Mattel's Amended Fourth Set of Interrogatories at 11, Watson Dec., Exh. 9. The Court should also overrule these objections because they are no longer applicable, as the invention of Bratz was adjudicated in Phase 1. Moreover, these interrogatories are not limited to MGA's Bratz-based claims. They also seek to discover the dates of conception for the other products MGA contends Mattel copied or infringed, including MGA's "4-Ever Best Friends," "Mommy's Little Patient," and "AlienRacers." MGA Entertainment, Inc.'s Complaint in Case No. 05-02727, dated April 13, 2005, at 24-26, Watson Dec., Exh. 24.

[75] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 51 and 54), Watson Dec., Exh. 12.

such copying was willful.[76] Mattel cannot be expected to divine MGA's contentions. This information is almost exclusively in MGA's possession. Only it knows which Mattel products it contends infringe MGA's claimed intellectual property and the basis for its contention that such infringement was willful. In any event, a key purpose of discovery is to avoid trial by ambush and surprise. MGA should be required to disclose the factual bases for its contentions. See Fed. R. Civ. P. 33(a)(2).

### 3. The Discovery Master Should Overrule MGA's Compound Objections

MGA objects that Interrogatory Nos. 51 and 52 are compound. However, each of these interrogatories refers to only one common theme and thus, counts only as one interrogatory. See Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question."); Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, 2005 WL 318811, at * 7 (N.D. Cal. January 5, 2005) (interrogatory that asked the "same question regarding a common group of people" was not compound) (citing Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261).

Here, Interrogatory No. 51 asks details about one common group: MGA products, concepts, and designs that MGA contends Mattel infringed, and Interrogatory No. 52 asks for sales information for those products.[77] Neither of these interrogatories is compound.

---

[76] Id.
[77] Mattel's Supplemental Interrogatories (Nos. 51, 52), Watson Dec., Exh. 11.

4. **The Discovery Master Should Overrule MGA's Objection That Mattel's Interrogatories Are Duplicative**

MGA's objection that Interrogatory No. 52 is duplicative of No. 45 in Mattel's Sixth Set of Interrogatories is also without merit. Interrogatory No. 45 of Mattel's Sixth Set of Interrogatories asks MGA to identify each Bratz product that MGA or its licensees have sold, and to identify the profits, costs, and revenue associated with each such product.[78] Interrogatory No. 52, however, seeks this information with respect to each trade dress MGA contends Mattel copied, infringed, or diluted.[79] While MGA may contend that Mattel copied, infringed, or diluted certain Bratz products, it needs to identify which Bratz products it contends Mattel copied in response to Interrogatory No. 52. Moreover, MGA has also alleged that Mattel has copied, infringed, and diluted other MGA products, such as MGA's 4-Ever Best Friends, Mommy's Little Patient, and AlienRacers.[80] Interrogatory No. 52 covers these products, while 45 does not.[81]

---

[78] Mattel, Inc.'s Sixth Set of Interrogatories, dated October 23, 2007, Watson Dec., Exh. 28.

[79] Mattel's Supplemental Interrogatories (No. 52), Watson Dec., Exh. 11.

[80] MGA's Complaint in Case No. 05-02727, dated April 13, 2005 at 24-26, Watson Dec., Exh. 24.

[81] MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory No. 6 in Mattel's First Set of Interrogatories Re Unfair Competition and Interrogatory No. 49 in Mattel's Seventh Set of Interrogatories. MGA's Objections and Responses to Mattel's Supplemental Interrogatories (No. 51), Watson Dec., Exh. 12. Although Interrogatory Nos. 6 and 49 also address the facts regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel products it contends copied, infringed, or diluted MGA's products by SKU number, as requested by Interrogatory No. 51. See MGA's Supplemental Responses to Mattel, Inc.'s Seventh Set of Interrogatories, dated November 30, 2007 at 14-16, Watson Dec., Exh. 29; MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition at 32-37, dated March 6, 2007, Watson Dec., Exh. 30.

5.     **The Discovery Master Should Overrule MGA's Undue Burden Objections**

　　　(a)     **Interrogatory No. 51 is not Unduly Burdensome**

MGA objects that Interrogatory Nos. 51-53 and 64 are unduly burdensome.[82] These objections are without merit. At the outset, MGA provided no explanation as to why Interrogatory No. 51 is unduly burdensome. This objection should be overruled for this reason alone. Fed. R. Civ. P. 33(b)(4) (grounds for objecting to an interrogatory must be stated "with specificity"); Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize basis for objection). Now, MGA asserts in its Motion for Protective Order that Interrogatory No. 51 is unduly burdensome because MGA "does not have a complete listing of every single Mattel product which copied or infringed MGA's trade dress" and "attempting to compile such information presents another herculean task."[83] MGA is the master of its claims. If it contends that hundreds of Mattel products or more allegedly infringe, then a consequence of that claim is discovery related to hundreds of products or more. The burden claim is completely created by and under the control of MGA. As courts have recognized, there can be no undue burden in requiring a party to identify its own claims. See 8A Federal Practice & Procedure § 2167 (citing Am. Oil Co. v. Penn. Petro. Co., 23 F.R.D. 680, 683 (D.R.I. 1959) ("Since the information sought here will undoubtedly be assembled by the defendant prior to trial in the preparation of its defenses, it cannot be said that these interrogatories are objectionable as being burdensome.")).

---

[82] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 51-53, 64), Watson Dec., Exh. 12.
[83] See MGA Parties' Motion for Protective Order Staying Discovery on Trade Dress Claims, dated February 27, 2009, at 14.

Moreover, it is inconceivable that that almost four years after MGA asserted these claims, MGA does not have a list of each of the Mattel products it bases its trade dress claims on. Indeed, MGA is unable to provide any proof to support its assertion, as the law requires and the former Discovery Master has ruled. Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.") (citing Burton Mechanical Contractors, Inc. v. Foreman, 148 F.R.D. 230, 233 (N.D. Ind. 1992)); Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 14 ("Once again, MGA has failed to substantiate any of its objections with supporting declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to provide a full response to Interrogatory No. 11), Watson Dec., Exh. 37. Even if MGA did not have a list of the Mattel products it claims copied MGA's trade dress, it would not be unduly burdensome for it to compile such a list.

Mattel is entitled to know MGA's claims, and it is MGA's duty to provide that information. The Discovery Master should reject MGA's burden objections to Interrogatory No. 51.

**(b) Interrogatory No. 52 is Not Unduly Burdensome**

MGA next complains that Interrogatory No. 52 is unduly burdensome because "[REDACTED]."[84] MGA cites in its Motion for Protective Order the Wing declaration,[85] but Mr. Wing's statements are contradicted by MGA's own Rule

---

[84] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (No. 52), Watson Dec., Exh. 12.

[85] See MGA Parties' Motion for Protective Order Staying Discovery on Trade Dress Claims, dated February 27, 2009, at 14.

30(b)(6) witness and by documents produced by MGA in this action. MGA's Rule 30(b)(6) designee has previously testified that MGA regularly maintains reports containing revenue, profit, and cost information on a product-by-product basis,[86] and MGA has previously produced such reports. In fact, in the midst of trial, MGA produced this type of information for the month ending June 2008 in mid-July 2008.[87] MGA cannot substantiate any credible complaints of burden, as even the little evidence it provided is belied by MGA's own Rule 30(b)(6) designee and MGA's document production in this case.

Even if (contrary to fact) MGA truly lacks readily available financial information on a product-by-product basis, it would not render this interrogatory unduly burdensome. As discussed above, this information is highly relevant to Mattel's Phase 2 claims and defenses against MGA. MGA itself has asserted that the Phase 2 claims are worth "billions."[88] The burden of compiling this financial information is not undue in light of the stakes and the scale of claims in this litigation and the importance this information holds to the claims at issue in Phase 2. See King v. Georgia Power Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) (overruling defendant's objection that interrogatory was burdensome and oppressive, even though preparation of answer would be time-consuming and costly, because

---

[86] Deposition of Lisa Tonnu, dated January 17, 2008 ("Tonnu Depo."), Watson Dec., Exh. 31, at 747:9-15 (in preparation for her deposition, Tonnu reviewed documents regarding Bratz sales broken down by product SKU numbers generated by MGA employee), 871:17-874:11 (sales information on a product-by-product basis can be obtained from MGA's accounting system); 750:2-22 (Tonnu reviewed reports on cost of sales by product SKU number generated by MGA employee); 878:19-879:23 (MGA tracks as a matter of course the number of products invoiced to customers by product SKU number); 893:20-894:17 (Tonnu reviewed reports on returns broken down by product SKU number); 900:23-902:1 (MGA calculates cost of sales by product SKU number); 902:21-903:6 (MGA calculates royalty expenses by product SKU number).

[87] See E-mail from Ryan Weinstein to Jon Corey, dated July 22, 2008, Watson Dec., Exh. 32; see also MGA 3896239, Watson Dec., Exh. 42; Letter from Weinstein to Corey, dated July 31, 2008, Watson Dec., Exh. 33.

[88] Transcript from "Nightline," dated December 22, 2006, at 5, Watson Dec., Exh. 40.

information was crucial to the issues of the suit and in exclusive custody of defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951) (overruling "overly burdensome" objection because value of information to plaintiff clearly outweighed any annoyance or expense involved in disclosure by defendant); Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 491 (W.D.N.C. 1998) ("Requiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute an undue burden... Imposing such a burden is particularly proper where, as here, the information sought is crucial to the ultimate determination of a crucial issue and where the location of the documents is best known by the responding party.").

**(c) Interrogatory No. 53 is Not Unduly Burdensome**

MGA's complaint that Interrogatory No. 53 is unduly burdensome is likewise without merit. This interrogatory asks MGA to state all facts that support its contention that Mattel's products were likely to cause confusion as to their origin, including the facts that support MGA's contention, if it so contends, that any of the well-known Sleekcraft likelihood of confusion factors weighs against Mattel.[89] MGA asserts that this interrogatory is unduly burdensome because it "[REDACTED]"[90] However, Mattel is entitled to ask interrogatories that require the application of law to fact. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to . . . the application of law to fact.").[91] Mattel is also entitled to discover the factual basis

---

[89] Mattel's Supplemental Interrogatories (No. 53), Watson Dec., Exh. 11.
[90] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (No. 53), Watson Dec., Exh. 12.
[91] See also Order Granting Mattel's Motion to Compel MGA to Answer Requests for Admission, dated August 20, 2007 at 7 (overruling legal conclusion objections in the context of RFAs), Watson Dec., Exh. 34.

for MGA's contention that Mattel products caused confusion. The fact that a false designation of origin claim consists of several factors, and the fact that MGA has alleged that several Mattel products caused confusion, do not render this interrogatory unduly burdensome. Any burden imposed by this interrogatory is warranted by the nature of MGA's claims in this litigation. See King, 50 F.R.D. at 136; Seff, 11 F.R.D. at 598; Capacchione, 182 F.R.D. at 491.

(d) **Interrogatory No. 64 is Not Unduly Burdensome**

Last, MGA asserts that Interrogatory No. 64 is overly broad, unduly burdensome and "[redacted]."[92] Interrogatory No. 64 asks MGA to state all facts which support its claims against Mattel in this action, and identify all persons with knowledge of such facts and all documents that refer or relate to such facts, to the extent MGA has not previously disclosed such information to Mattel in a prior interrogatory response.[93] MGA's burden objection is without merit, as Defendants have propounded numerous comparable interrogatories to Mattel,[94] to which Mattel has provided responses to.[95] Furthermore, MGA clearly must know what other facts and witnesses ostensibly support its claims. MGA should not be allowed to withhold that information in order to sandbag Mattel, but instead should be required to disclose that information to Mattel.

---

[92] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (No. 64), Watson Dec., Exh. 12.

[93] Mattel's Supplemental Interrogatories (No. 64), Watson Dec., Exh. 11.

[94] See, e.g., MGA's First Set of Interrogatories to Mattel, dated February 4, 2005 (No. 1) ("State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU have suffered harm as a result of any act or omission of MGA."), Watson Dec., Exh. 35.

[95] Indeed, Mattel's response to this interrogatory was 62 pages long. Supplemental Responses to MGA's First Set of Interrogatories to Mattel, dated December 12, 2007, at 4-66, Watson Dec., Exh. 36.

6. <u>**The Discovery Master Should Overrule MGA's Boilerplate Privilege Objections**</u>

Finally, MGA objects to Interrogatory Nos. 52, 53, 55, and 64 on the grounds that they "[REDACTED]."[96] This boilerplate objection is improper.

Most of the interrogatories at issue here are contention interrogatories. Parties are required to answer interrogatories that ask them to state their contentions about facts or the application of law to facts. <u>Fed. R. Civ. P.</u> 33(a)(2). Mattel is entitled to learn the facts in defendants' possession which they believe support their own contentions. Mattel is also entitled to learn which documents and persons relate to or are knowledgeable about such facts. The law is clear that a party cannot avoid responding to contention interrogatories by claiming that they call for a legal conclusion or by invoking the attorney-client privilege or the work product doctrine. <u>Convergent Business Systems, Inc. v. Diamond Reporting, Inc.</u>, 1989 WL 92038, at *1 (E.D.N.Y. 1988) ("Seeking the facts and documents which support a particular allegation in a complaint violates neither the attorney-client or work product privileges."); <u>King v. E.F. Hutton & Co., Inc.</u>, 117 F.R.D. 2, 5 n.3 (D.D.C. 1987) (interrogatories seeking the factual specifics which a party contends supports a contention do not implicate the attorney work product doctrine: "If this elementary principle were not applicable, contention interrogatories would not exist. As the Advisory Committee Note reflects, as to requests for even opinions or contentions that call for the application of law to fact, they are permissible and can be most

---

[96] MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 52, 53, 55, 64), Watson Dec., Exh. 12.

useful in narrowing and sharpening the issues, which is the major purpose of discovery.").

Each of MGA's objections should be overruled, and MGA should be compelled to respond to Mattel's interrogatories in full.[97]

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master enforce the prior Discovery Master's Order, overrule each of MGA's objections and compel MGA to respond to Nos. 43-44 of Mattel's Amended Fourth Set of Interrogatories and Nos. 51-55 and 64 of Mattel's Supplemental Interrogatories. In addition, Mattel requests that the Discovery Master impose sanctions in the amount of $4515 to reimburse Mattel for at least a portion of the fees it has been forced to incur to obtain discovery that the Discovery Master already ruled that Mattel entitled to.

DATED: March 6, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By/s/ Scott L. Watson
Scott L. Watson
Attorneys for Mattel, Inc.

[97] MGA also asserts the same privilege objections to Interrogatory Nos. 43 and 44. MGA's Fourth Supplemental Responses to Interrogatory Nos. 43-44 of Mattel's Amended Fourth Set of Interrogatories (Nos. 43-44), Watson Dec., Exh. 9. Those objections should be overruled for the same reasons.